IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[____] (____)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER APPROVING THE APPOINTMENT OF XROADS CASE MANAGEMENT SERVICES, LLC, AS CLAIMS AND NOTICING AGENT PURSUANT TO SECTION 156(c) OF THE JUDICIAL CODE AND RULE 2002-1(f) OF THE LOCAL RULES

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by

and through the undersigned counsel, hereby submit this motion (the "Motion") for entry of an

order pursuant to section 156(c) of title 28 of the United States Code (the "Judicial Code") and

Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing and approving the

appointment of XRoads Case Management Services, LLC ("XRoads") as claims and noticing

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

agent in these cases.  In support of the Motion, the Debtors rely on the Declaration of John

Vander Hooven in Support of Motion of the Debtors and Debtors in Possession for an Order

Approving the Appointment of XRoads Case Management Services, LLC as Claims and

Noticing Agent Pursuant to Section 156(c) of the Judicial Code and Rule 2002-1(f) of the Local

Rules (the "Vander Hooven Declaration"), a copy of which is attached hereto as Exhibit A, and

respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND[2]

2.      New Century Financial Corporation, a Maryland corporation ("NCF") and

publicly owned real estate investment trust, is one of the largest specialty mortgage finance

businesses in the United States.  Through its subsidiaries and its primary holding company

subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and

together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases,

sells, and services mortgage loans nationwide.  NCF historically focused on "subprime" lending,

or lending to individuals whose borrowing needs were generally not fulfilled by traditional

financial institutions because they did not satisfy the credit, documentation or other underwriting

standards prescribed by conventional mortgage lenders and loan buyers.  In September 2005,

NCF through some of its subsidiaries also began offering conventional mortgage loans,

including:  "Alt-A" mortgage loans, loans insured by the Federal Housing Administration

---

[2] The facts and circumstances supporting this Motion are set forth in the Declarations of Monika McCarthy and Holly Etlin in support of Chapter 11 Petitions and Request for First Day Relief.

2

("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased[3] approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

3.      On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

4.      On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

5.      These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby

---

3

threatening their viability.  During the following week, the Warehouse Lenders made margin

calls in excess of $150 million, which the Debtors were unable to satisfy fully.  Thereafter, the

Warehouse Lenders began restricting and ultimately ceased providing funding for loans

originated by the Debtors.  Each of the Warehouse Lenders has declared the Debtors in default

under its credit facility.

　　　　　6.　　　As a result of the defaults, the Warehouse Lenders have exercised

remedies under their agreements with the Debtors, including asserting control of the cash flow

from the loans they financed and in some instances exercising strict foreclosure or commencing

foreclosure sales of the Debtors' loans.  The lack of cash flow from these loans has further

exacerbated the Debtors' liquidity situation.

　　　　　7.　　　Although the Debtors have not had sufficient resources or access to credit

to originate loans, the Debtors continue to operate their mortgage loan servicing business in

accordance with their historically high standards and comply with their obligations under their

agreements with indenture trustees and other parties to provide servicing for mortgage loans.

Because their financing for servicing advances has also been terminated, the Debtors' liquidity

has been additionally constrained by their being required to provide necessary loan servicing

advances from their own working capital.

　　　　　8.　　　During the weeks leading up to the Petition Date (as defined below), the

Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co.

LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital,

or a sale of their businesses to a strategic or financial investor.

　　　　　9.　　　The Debtors' inability to originate loans and the exercise of remedies by

the Warehouse Lenders have left the Debtors in a severe liquidity crisis.  Without a prompt sale

4

of the Debtors' mortgage loan servicing business and loan origination platform, those businesses

will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced

these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other

assets for the benefit of the Debtors' stakeholders.

10.    Although the Debtors have been unsuccessful in obtaining financing that

would permit them to continue originating loans, Debtors were successful in obtaining debtor in

possession financing of up to $150 million, which they expect will provide sufficient working

capital to maintain and stabilize their businesses through the sale of the Debtors' operating

businesses and other assets.

11.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant

petitions for relief. Further, a motion for joint administration of the Debtors' bankruptcy cases is

pending before the Court. The Debtors are operating their business and managing their affairs as

debtors and debtors in possession.

## RELIEF REQUESTED

12.    Pursuant to this Motion, the Debtors request the entry of an order

authorizing the retention and employment of XRoads as the claims and noticing agent in these

chapter 11 cases to, among other things:  (i) maintain, process and docket claims filed in the

case; (ii) transmit notices to appropriate parties as required by the Bankruptcy Code, the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules; (iii) assist the

Debtors with the dissemination of solicitation materials relating to a plan of reorganization; and

(iv) assist the Debtors with the preparation of their schedules and statements.

13.    The Debtors respectfully submit that the retention of XRoads as the claims

and noticing agent in these cases will promote the economical and efficient administration of

5

their estates. Utilizing XRoads as the claims and noticing agent in these cases will allow the Debtors to avoid duplication in claims administration and in providing notices to their creditors. Additionally, the large number of creditors and other parties in interest involved in the Debtors' chapter 11 cases may impose heavy administrative and other burdens upon the Court and the Office of the Clerk of the Court (the "Clerk's Office"). To relieve the Court and the Clerk's Office of these burdens, the Debtors propose to engage XRoads as the claims and noticing agent (the "Claims and Noticing Agent") in their chapter 11 cases.

14.    XRoads is a firm that specializes in claims processing, noticing and other administrative tasks in chapter 11 cases. XRoads has substantial experience in the matters upon which it is to be engaged. XRoads has provided identical or substantially similar services in other chapter 11 cases, including among others: In re APX Holdings, L.L.C., Case No. 06-10875 (Bankr. C.D. Cal. 2006); In re Nellson Nutraceutical, Inc., Case No. 06-10072 (Bankr. D. Del. 2006); In re Gardenburger, Inc., Case No. 05-19539 (Bankr. N.D. Cal. 2005); In re Fresh Choice Inc., Case No. 04-54318 (Bankr. N.D. Cal. 2004); In re Factory 2-U Stores, Inc., Case No. 04-10111 (Bankr. D. Del. 2004). The Debtors seek to engage XRoads to, inter alia, (i) transmit certain designated notices, (ii) maintain copies of all proofs of claim and proofs of interest filed in these cases, and (iii) maintain the official claims registers. The Debtors propose to retain XRoads on the terms and conditions set forth in the agreement attached hereto as Exhibit B (the "XRoads Agreement").

15.    XRoads, at the request of the Debtors or the Clerk's Office, will provide the following services as the Claims and Noticing Agent pursuant to the terms of the XRoads Agreement:

6

(a)    prepare, in conjunction with Debtors' counsel, and serve certain

required notices in the chapter 11 cases, including:

        (i)    notice of the commencement of the chapter 11 cases and the
initial meeting of creditors under section 341(a) of the
Bankruptcy Code;

        (ii)    notice of the claims bar date;

        (iii)    notice of objections to claims;

        (iv)    notice of any hearings on a disclosure statement and
confirmation of a plan; and

        (v)    other miscellaneous notices to any entities, as the Debtors
or the Court may deem necessary or appropriate for an
orderly administration of the chapter 11 cases;

(b)    within five (5) days after the mailing of a particular notice, file

with the Clerk's Office a certificate or affidavit of service that includes a copy of the notice

involved, an alphabetical list of persons to whom the notice was mailed and the date of mailing;

(c)    maintain copies of all proofs of claim and proofs of interest filed;

(d)    maintain official claims registers by docketing all proofs of claim

and proofs of interest on claims registers, including the following information:

        (i)    the name and address of the claimant and any agent thereof,
if the proof of claim or proof of interest was filed by an
agent;

        (ii)    the date received;

        (iii)    the claim number assigned; and

        (iv)    the asserted amount and classification of the claim;

(e)    assist the Debtors in the preparation of their bankruptcy schedules

and statements, including the creation and administration of a claims database based upon a

review of the claims against the Debtors' estates and the Debtors' books and records;

7

(f)     implement necessary security measures to ensure the completeness and integrity of the claims registers;

(g)     transmit to the Clerk's Office a copy of the claims registers upon request by the Clerk's Office;

(h)     maintain an up-to-date mailing list for all entities that have filed a proof of claim or proof of interest, which list shall be available upon request of a party in interest or the Clerk's Office;

(i)     provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours;

(j)     record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e);

(k)     comply with applicable federal, state, municipal and local statutes, ordinances, rules, regulations, orders and other requirements;

(l)     provide temporary employees to process claims, as necessary; and

(m)     promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

16.     As set forth in the Vander Hooven Declaration, XRoads represents, among other things, that:

(a)     XRoads will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(b)     by accepting employment in these chapter 11 cases, XRoads waives any rights to receive compensation from the United States government;

8

(c)     in its capacity as the Claims and Noticing Agent in these chapter

11 cases, XRoads will not be an agent of the United States and will not act on behalf of the

United States; and

(d)     XRoads will not employ any past or present employees of the

Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases.

17.     In addition to the foregoing, the Debtors seek to employ XRoads to assist

with, among other things:  (a) the preparation of amendments to the master creditor lists;

(b) administrative tasks relating to the reconciliation and resolution of claims; and (c) the

preparation, mailing and tabulation of ballots for the purpose of voting to accept or reject a plan

or plans of reorganization.

18.     The compensation to be provided by the Debtors to XRoads for services

rendered is set forth in the fee schedule included in Exhibit B attached hereto.  The Debtors

believe that such compensation is fair and reasonable.  No fee applications or other filings with

this Court will be required for payment of XRoads' fees and expenses consistent with the fee

schedule in Exhibit B attached hereto.

19.     Pursuant to section 156(c) of the Judicial Code, the Court is empowered to

utilize outside agents and facilities for these purposes, provided that the Debtors' estates pay the

cost of such services.[4]  The Debtors have identified approximately 100,000 potential creditors.

Accordingly, appointing a claims agent in these cases is mandated by Local Rule 2002-1(f)

---

[4] 28 U.S.C. § 156(c) provides:

Any court may utilize facilities or services, either on or off the court's premises, which
pertain to the provision of notices, dockets, calendars, and other administrative information to
parties in cases filed under the provisions of title 11, United States Code, where the cost of such
facilities or services are paid for out of the assets of the estate and are not charged to the United
States.  The utilization of such facilities or services shall be subject to such conditions and
limitations as the pertinent circuit council may prescribe.

which requires that in all cases with over 200 creditors the debtor file a motion to retain a claims

agent on the first day of the case or within ten days thereafter.

        20.     For all of the foregoing reasons, the Debtors believe that the retention of

XRoads as the Claims and Noticing Agent is in the best interests of the Debtors, their estates and

creditors.

**NOTICE**

        21.     No trustee, examiner or creditors' committee has been appointed in these

chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States

Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc.

("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-

petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a

consolidated basis as identified in the Debtors' chapter 11 petitions; and (4) all parties who have

timely filed requests for notice under Rule 2002 of the Bankruptcy Rules. As this Motion is

seeking first day relief, notice of this Motion and any order entered hereon will be served as

required by Rule 9013-1(m) of the Local Rules. In light of the nature of the relief requested

herein, the Debtors submit that no other or further notice is required.

        22.     The Debtors submit that this Motion does not present any novel issues of

law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and

Procedure of the United States District Court for the District of Delaware (as amended from time

to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b),

the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule

7.1.2(a) of the Local District Court Rules.

## NO PRIOR REQUEST

23.     No prior request for the relief sought in this Motion has been made to this

or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C, approving the appointment of XRoads as claims and noticing agent in these chapter 11 cases and such other and further relief the Court deems just and proper.

Dated:  April 2, 2007
          Wilmington, Delaware

Respectfully submitted,


Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

                    -and-

Suzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## Exhibit A

**[Vander Hooven Declaration]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[____] (___)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |
| | : | |

**DECLARATION OF JOHN VANDER HOOVEN IN SUPPORT OF
MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER
APPROVING THE APPOINTMENT OF XROADS CASE MANAGEMENT SERVICES,
LLC AS CLAIMS AND NOTICING AGENT PURSUANT TO SECTION 156(c)
OF THE JUDICIAL CODE AND RULE 2002-1(f) OF THE LOCAL RULES**

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) SS: |
| COUNTY OF ORANGE | ) |

JOHN VANDER HOOVEN declares under penalty of perjury as follows:

1.    I am a Managing Director at XRoads Case Management Services, LLC

("XRoads"), located at 1821 East Dyer Road, Suite 225, Santa Ana, California.  I submit this

declaration in support of the motion (the "Motion"), filed by the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), for an order authorizing and approving the

---

[1]  The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

appointment of XRoads as claims and noticing agent (the "Claims and Noticing Agent") in these chapter 11 cases.

2.      XRoads specializes in providing consulting and administrative services related to the orderly administration of pending chapter 11 bankruptcy cases.  XRoads employs personnel experienced in the field of bankruptcy and bankruptcy procedures.  XRoads has served as Claims and Noticing Agent in a number of cases, including among others:  In re APX Holdings, L.L.C., Case No. 06-10875 (Bankr. C.D. Cal. 2006); In re Nellson Nutraceutical, Inc., Case No. 06-10072 (Bankr. D. Del. 2006); In re Gardenburger, Inc., Case No. 05-19539 (Bankr. N.D. Cal. 2005); In re Fresh Choice Inc., Case No. 04-54318 (Bankr. N.D. Cal. 2004); In re Factory 2-U Stores, Inc., Case No. 04-10111 (Bankr. D. Del. 2004).  Accordingly, I submit that XRoads is qualified and competent to serve as Claims and Noticing Agent in these chapter 11 cases.

3.      The Debtors propose to employ XRoads on the terms set forth in that certain agreement for services by and between the Debtors and XRoads, entered into as of March 8, 2007 (the "XRoads Agreement"), a copy of which is attached to the Motion as Exhibit B.  The services to be performed by XRoads as Claims Agent are described in the Motion.

4.      The fees to be charged by XRoads are set forth in the XRoads Agreement. Most clerical/administrative services are priced on a unit basis.  To the extent that the Debtors require the assistance of XRoads to perform technical support services or other claims-related consulting services, such services shall be priced on a per-hour basis ranging from $40.00 to $325.00.

5.      The Debtors have proposed, subject to the Court's approval, that the fees and expenses incurred by XRoads be treated as an administrative expense to the Debtors' chapter

2

11 estates and be paid by the Debtors in accordance with the terms of the XRoads Agreement,

without the necessity of XRoads filing interim or final fee applications or otherwise complying

with the monthly, quarterly or final compensation procedures applicable to professionals.

   6.  To the best of my knowledge, neither XRoads, nor any of its professional

personnel, has any relationship with the Debtors, or any potential party in interest, that would

impair XRoads' ability to serve as the official Claims and Noticing Agent. The following

indirect relationships are disclosed in good faith and have no bearing on XRoads ability to serve

as the official Claims and Noticing Agent:

     a.  O'Melveny & Myers LLP ("O'Melveny") has previously
represented clients of the parent entity of XRoads – XRoads
Solutions Group, LLC ("XSG") and parties adverse and non-
adverse to XSG clients in unrelated matters. In addition,
O'Melveny currently represents XSG in an unrelated matter and
has previously represented XSG in other unrelated matters. Hunter
Simon, son of Dennis Simon (XSG's Managing Principal), is an
associate at O'Melveny in their Los Angeles, California,
Transactions Department. Hunter Simon has not and is not
expected to be involved in the Debtors' case.

     b.  The son of one of XSG's Principals is employed by the Debtors as
a Junior Account Executive in the Debtors' Reno, Nevada offices.

   7.  XRoads is not employed by the United States and shall not seek any

compensation from the United States. By accepting employment in these cases, XRoads waives

any rights to receive compensation from the United States with respect to the services provided

in these chapter 11 cases. XRoads is not an agent of the United States and is not acting on behalf

of the United States. XRoads will not misrepresent facts to the public.

   8.  XRoads does not consider itself to be a professional for purposes of

section 327 of the Bankruptcy Code, but to the extent that it may be deemed to be such a

3

professional, XRoads believes that it is a "disinterested person," as that term is defined in 11

U.S.C. § 101(14), in that XRoads, its management and staff:

      a.    are not creditors, equity security holders or insiders of the Debtors;

      b.    are not and were not, within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, directors, officers or employees of the Debtors; and

      c.    do not hold or represent an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

9.    XRoads has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases. If this Court approves XRoads' proposed retention, XRoads will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases. XRoads may, however, provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

10.    XRoads will not withdraw from providing services as the Claims and Noticing Agent in these cases unless authorized by an order of this Court.

I declare under penalty that the foregoing is true and correct. Executed this \_\_\_\_ day of April, 2007.

_____
John Vander Hooven

4

# Exhibit B

**[XRoads Agreement]**



**X Roads**
CASE MANAGEMENT SERVICES

1821 East Dyer Road, Suite 225
Santa Ana, CA 92705

main  949 567 1600
fax    949 567 1655
www.xroadscms.com

March 8, 2007

Ms. Monika Lemhoefer McCarthy
Senior Vice President
Assistant General Counsel
New Century Financial Corporation
18400 Von Karman Avenue, Suite 1000
Irvine, CA 92612

RE:    XRoads Case Management Services, LLC / New Century Financial Corporation
       Case Management Services Engagement Agreement

Dear Monika:

This letter agreement (the "Agreement") sets forth the services to be provided by XRoads
Case Management Services, LLC ("CMS" or "XRoads") to New Century Financial
Corporation and its subsidiaries and affiliates (collectively the "Company" or the "Debtor")
and the terms and conditions under which such services will be performed (the
"Engagement"). All references in this Agreement to CMS shall include CMS's officers,
employees and agents. If appropriate in connection with performing its services for the
Company hereunder, CMS may utilize the services of one or more of its affiliates, in which
case the references herein to CMS shall include such affiliates.

1.  **Scope of Services.**

        a.  CMS's client in this matter shall be the Company. John D. VanderHooven, or
a suitable replacement as determined by CMS and acceptable to the Company, shall be
the Managing Director-in-Charge of the Engagement.

        b.  CMS is hereby engaged to provide bankruptcy preparation support and
administrative services as described on Schedule A attached hereto and which Schedule
A is made a part of this Agreement by this reference. CMS's services to the Company to
assist it and its counsel in preparing the necessary filings to be made to a Bankruptcy
Court and/or United States Trustee, ("UST"), including, but not limited to:

                i.  Schedules & Statement of Financial Affairs.  CMS will assist the Company
                    and its counsel in the preparation of Debtor's Schedules of Assets and
                    Liabilities and the Statement of Financial Affairs. This is a collaborative
                    process between the Company, XRoads and Debtor's counsel during which
                    the Company will be asked to provide downloads of accounting information
                    from its accounting system. XRoads will provide guidance with respect to
                    the information that should be included on each of the schedules, and will

                                                                    Initial
                                                              _____ Here

XRoads CMS New Century v3 doc

MAR-11-07    10:41AM    FROM-xroads solutions group              9495671655              T-498   P 002    F-655



**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 2 of 13

provide the software and database management required to generate the Schedules to be filed with a Bankruptcy Court. Initial drafts as well as all final work product will be delivered to the Company and its counsel for review, comment and filing with a Bankruptcy Court.

ii. <u>Initial Reporting Package.</u> CMS shall assist the Debtor and its counsel in the preparation of the initial reporting package for the UST.

c.      In the event the Company elects to file for protection under the United States Bankruptcy Code, and the Company requests CMS to provide bankruptcy case support and administrative services during the Company's bankruptcy case(s), then CMS may provide the additional services set forth below:

i. <u>Monthly Operating Reports.</u> CMS shall assist the Debtor and its counsel in the preparation of Monthly Operating Reports ("MORs").

ii. <u>Claims Management.</u> CMS shall:

- Design, maintain and administer the claims database; ensure the accuracy and integrity of the claims process by tracking known and potential creditors with scanning and bar-coding technology that will allow claims received to be added promptly to our database and be accessible to authorized users via the internet;

- Offer the administrative support necessary for the preparation of claims objections, including generating the necessary exhibits and reports;

- Provide designated users with access to the claims database to track claims activity, to view claims-related documents in PDF format and create reports;

- Send out acknowledgement cards to creditors confirming receipt of their proofs of claim;

- Record assignments of claims to third parties.

iii. <u>Noticing And Document Management.</u> CMS shall provide copy and notice services consistent with the applicable Local Rules of the United States Bankruptcy Court and as requested by the Company and/or the Court, including acting as the official claims agent in lieu of the Bankruptcy Court in:

- serving notices to parties in interest;


Initial
Here

MAR-11-07    10:42AM    FROM-xroads solutions group          9495671655          T-498   P 003    F-655



**X Roads**
CASE MANAGEMENT SERVICES

- maintaining all proofs of claim and proof of interests filed and received in the bankruptcy case(s) (collectively, the "Claims");

- docketing the Claims;

- maintaining and transmitting to the Clerk's office the official claims register(s);

- maintaining current mailing lists of all entities that have filed claims and notices of appearance it receives;

- providing the public access for examination to the Claims at CMS's premises during regular business hours and without charge; and

- recording all transfers received by CMS receives, pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

2. **Fees**.

a. CMS shall provide the services described in Sections 1.b. and c. above at the rates set forth on Schedule A attached hereto (the "BK Admin Charges"). Prior to the Company's filing of a petition(s) for bankruptcy protection, CMS's BK Admin Charges shall be invoiced bi-weekly and shall be payable within three (3) days after receipt of invoice, provided however CMS's invoices for its pre-bankruptcy petition services shall be fully paid prior to the Company's filing of a petition(s) for bankruptcy protection. In the event CMS provides services to the Debtor following the filing of a bankruptcy petition(s), CMS's Bankruptcy Administration Charges shall be invoiced monthly and shall be payable within seven (7) days after the Debtor's receipt of invoice.

b. The Company shall pay all expenses reasonably incurred by CMS for services related to the Engagement (e.g., actual out of pocket expenses such as communications incurred in connection with the Engagement, travel, meals and living expenses incurred by CMS). CMS will submit periodic invoices for these expenses, which invoices shall be payable upon receipt. Notwithstanding the above, prior to any mailing to the creditors, a cost estimation of the postage and production of said mailing will be submitted to the Debtor for approval and payment prior to the commencement of such mailing. Further, CMS's expenses associated with its pre-bankruptcy petition services shall be fully paid prior to the Company's filing of a petition for bankruptcy protections.

c. The Company shall pay CMS for the travel time spent by CMS hourly personnel while traveling for this Engagement ("Travel Time"). Travel Time will be (i) non-working commuting time measured from the time CMS personnel leave the location from which he or she departs until arrival at the Company designated location, (ii) billed at one-half the rate charged by CMS for each specified personnel. Travel Time fees are


Initial
_____ Here

MAR-11-07    10:42AM    FROM-xroads solutions group          9495671655          T-498   P 004/013   F-655



**XRoads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 4 of 13

payable at the same time other fees and expenses are payable to CMS pursuant to this Agreement.

d. XRoads requires an initial retainer in the amount of $25,000 (the "Initial Retainer"). The Company shall send XRoads the Initial Retainer within one (1) business day after execution of this Agreement via wire transfer in accordance with the instructions set forth in sub-section f. below. The Initial Retainer will be applied to XRoads' fees and expenses incurred prior to the Company's filing of bankruptcy petitions. Prior to the filing of bankruptcy petitions by the Company, we will require the Debtors to "top off" and increase the Initial Retainer to $50,000 (the "Bankruptcy Retainer"). All retainers will be held in XRoads' pooled non-interest bearing retainer account until earned. The Initial Retainer will be considered to be "earned" at the time any fees and expenses are incurred. The Bankruptcy Retainer will be treated as an "evergreen" retainer and applied to our final bill in this matter. The Bankruptcy Retainer will be considered to be "earned" at the time that any of XRoads' post-bankruptcy petition fees and expenses are incurred which are not paid on a monthly basis. To the extent that we do not use the entire retainers (i.e., the retainers exceed the amount of our final bill) we will refund the unearned retainer balance to the Debtors (without interest) at the conclusion of this matter. To the extent that our fees and expenses exceed the retainer amount, CMS will bill you for the excess.

e. Failure of the Company to promptly pay amounts due for services rendered, for reimbursement of expenses or for retainer(s) shall constitute justification for CMS to immediately terminate this Engagement.

f. CMS's preferred method of payment hereunder is by wire transfer. Set forth below are CMS/XRoads' wire transfer instructions:

        Bank Name: Comerica Bank
        Bank Address: 611 Anton Blvd; Costa Mesa, CA 92626
        Bank Phone: Phone (800) 888-3595
        ABA Routing: ABA: 121137522
        Account Name: XRoads Solutions Group, LLC
        Account No: 189-311-8065
        Contact Person: J.Simon / E.Lyons

Payments made by mail should be sent to XRoads Solutions Group, LLC, P.O. Box 515032, Los Angeles, CA 90051-5032.

f. CMS's rates are adjusted on January 1 and July 1 of each year to reflect the advancing experience, capabilities, and seniority of our professionals as well as general economic factors. Accordingly, the rates referenced herein or in Schedule A, may be changed on such dates during the course of the Engagement, but shall not increase by more than 5% on each review date.

Initial

_____ Here



**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 5 of 13

3.    **Term of Engagement**. The term of the Engagement shall commence as of March 8, 2007. Either the Company or CMS may terminate this Agreement upon fifteen (15) days advance written notice, with payment due to CMS for services rendered and expenses incurred through the termination. CMS may withdraw for good cause without the Company's consent. Good cause includes the Company's breach of this Agreement (including the Company's failure to pay any appropriate invoice or indemnity obligation when due), the Company's failure or refusal to cooperate with CMS, or any fact or circumstance that would render CMS's continuing representation unlawful or unethical.

4.    **Work Performed**. CMS's work for the Company will be performed on a "level-of-effort" basis; that is, the depth of our analyses and extent of our authentication of the information on which our advice to the Company will be predicated, may be limited in some respects due to the extent and sufficiency of available information, time constraints dictated by the circumstances of the Engagement, and other factors. Moreover, we do not contemplate examining any such information in accordance with generally accepted auditing or attestation standards. Rather, it is understood that, in general, we are to rely on information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of its accuracy and validity.

5.    **Reports**. CMS will submit oral and/or written reports, at the request of the Company, summarizing our evaluations and analyses based on our work pursuant to this Agreement. Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objective of our Engagement. However, because of the time and scope limitations implicit in our Engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to the Company may be based. In addition, we have no obligation to and will not update our reports or extend our activities beyond the scope set forth herein unless the Company requests and we agree to do so.

6.    **Disclosures**. CMS has represented, and will in the future represent, many different clients with various business interests in numerous industries. These clients are often referred to CMS by intermediaries such as lawyers, investment bankers, lenders and accountants ("Referral Sources"). In undertaking the Engagement on behalf of the Company, CMS' objective is to provide services for the Company to the best of its ability, but without precluding CMS from representation of other clients or from accepting referrals from or making referrals to Referral Sources. Since CMS wants the Company to be comfortable with the retention of CMS in light of other client and Referral Sources relationships, CMS has undertaken a reasonable review of our records to determine CMS's professional relationships with the persons or entities you identified. We are not aware of any conflicts of interest or



Initial
____ Here

MAR-11-07    10:44AM    FROM-xroads solutions group              9495671655          T-498   P 006/013   F-655



New Century Financial Corporation
March 8, 2007
Page 6 of 13

relationships that would preclude us from performing the above work for you or you or the Company.

CMS agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with the Company are identified by the Company, in writing, to CMS.

7.    **Entire Agreement, Waiver, Modification, and Notices**.  This Agreement, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties.    This Agreement may be amended, modified, supplemented or waived only by a written instrument signed by both parties.  No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the United States mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission.  Notices to you shall be sent to the address set forth on page one of this Agreement.  Notices to CMS shall be sent to the address set forth below:

> XRoads Case Management Services Group, LLC
> Attn: General Counsel
> 1821 East Dyer Road, Suite 225
> Santa Ana, CA 92705
> Fax (949) 567-1702

Either party may give written notice of a change of address by certified mail, return receipt requested, and after notice of such change has been received, any notice shall be given to such party in the manner above described at such new address.

8.    **Authority**.  The Company has all requisite corporate power and authority to enter into this Agreement.  The Company and CMS have fully reviewed this Agreement, have obtained counsel on its terms, and have participated in the drafting of this Agreement such that it shall not be construed against any one party.  This Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

**THE ADDITIONAL TERMS AND CONDITIONS ATTACHED TO THIS AGREEMENT ARE HEREBY MADE PART OF THIS AGREEMENT AS THOUGH FULLY SET FORTH HEREIN.**


Initial
____ Here

MAR-11-07    10:44AM    FROM-xroads solutions group                9495671655                T-498   P 007/013   F-655



New Century Financial Corporation
March 8, 2007
Page 7 of 13

     If you agree to the terms and conditions set forth above, please indicate your acceptance and approval by signing this letter in the space provided below and on the duplicate copy attached. Please return one fully executed original to the undersigned for our files.

                                Very truly yours,

                                **XRoads Case Management Services, LLC**

                                Joel M. Simon
                                Manager

**AGREED AND ACCEPTED:**

**New Century Financial Corporation**

By: _____        Date: _3.9.07_____
   Ms. Monika Lemhoefer McCarthy
   Senior Vice President
   Assistant General Counsel

MAR-11-07    10:45AM    FROM-xroads solutions group                9495671655              T-498   P 008/013   F-655



New Century Financial Corporation
March 8, 2007
Page 8 of 13

## ADDITIONAL TERMS AND CONDITIONS

**Amounts Not Paid.** All amounts not paid when due will bear interest at an annual rate of 12% or the maximum rate allowed by law, whichever is less.

**Agreement Not to Employ.** CMS' business is in part centered on its ability to identify and secure the services of talented personnel for its client companies. Absent an agreement with CMS providing it fair compensation, CMS would suffer serious economic harm were its client companies to hire directly or through other companies CMS' employees. Company, agrees that during the term of this Agreement and for twelve months thereafter it shall not, directly or indirectly, knowingly solicit, offer employment to or hire any employee of CMS with whom Company has had contact as a result of this Engagement. If Company and CMS agree that Company may hire a CMS' employee or independent contractor, notwithstanding the prohibition in the immediately preceding sentence, and such hiring occurs within twelve months after the termination of this Agreement, Company shall pay CMS an amount equal to the particular individual's standard hourly rate at CMS multiplied by an assumed annual billing of 2,000 hours as liquidated damages. Any such payment shall be made on the date the CMS' employee or independent contractor begins work for Company. This paragraph shall not preclude Company from making general employment solicitations not specifically aimed at CMS' employees.

**Warranties and Indemnification.** CMS neither expresses nor implies any warranties of its work nor predicts results of the Engagement. CMS has not offered any assurances that the efforts to resolve the financial, structural or management issues facing the Company can or will be successful.

CMS shall not be subject to any liability to the Company for any act or omission relating to, in connection with or arising out of services rendered hereunder, unless CMS' acts or omissions constitute willful malfeasance, gross negligence or the reckless disregard of CMS' obligations or duties hereunder. In furtherance of the foregoing, the Company agrees and covenants that it will not initiate any legal or administrative proceedings whatsoever against CMS relating to, in connection with or arising from the services rendered hereunder seeking more than the amount of the fees actually paid to CMS for the Engagement. The Company acknowledges and agrees that the allocation of risk provided by this paragraph is fair and reasonable.

The Company releases, indemnifies and holds CMS harmless from and against any losses, claims, damages or liabilities ("Losses") to which CMS may become subject and shall promptly reimburse CMS for any legal or other expenses (including the cost of any investigations and the hiring of any accountant or other experts) reasonably incurred by CMS relating to, in connection with or arising from the services rendered hereunder, whether or not resulting in any liability, unless such Losses resulted from CMS' willful malfeasance, gross negligence or the reckless disregard of its obligations or duties hereunder.

_____ Initial
_____ Here



**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 9 of 13

**Legal Proceedings**. If after the termination of the Engagement CMS is requested and agrees or is required to participate in any manner in legal or administrative proceedings regarding the Company, compensation shall be paid to CMS for time spent in preparation, travel, attendance at and work related thereto, all at CMS' then current hourly rates for the relevant personnel involved. CMS shall be further entitled to such compensation in the event CMS is required to participate in any manner in legal or administrative proceedings concerning the Company during the Engagement, if such participation requires work outside the scope of services to be performed under this Engagement. For individuals no longer employed by CMS, at the time of such participation, payment shall be made to such individuals directly or to their employers, as applicable.

**Accuracy of Information**. The Company will use reasonable efforts to assure that all information, financial or otherwise, provided by or on behalf of the Company with respect to the Engagement (the "Information") to CMS will, as of its respective dates, be accurate and complete in all its material respects. The Company understands that CMS will not be responsible for independently verifying the accuracy of the Information. The Company assumes full responsibility for inaccuracies in any Information provided by or on behalf of the Company to CMS or any third party. The Company will reasonably cooperate with CMS in all phases of CMS' services under the Engagement. Specifically, without limiting the generality of the foregoing, if at any time during the Engagement, the Company discovers that any of the Information is inaccurate in any material respect it will immediately notify CMS.

**Work Output**. CMS' work processes used, prepared or assembled by CMS during the Engagement, including CMS' proprietary methodology, know-how and computer models ("Work Processes") shall be the exclusive property of CMS. The Company shall not be entitled to the Work Processes. CMS shall retain copies of the Work Processes pursuant to its document retention policy as in effect from time to time. Upon the conclusion of the Engagement, CMS shall deliver to the Company any data, reports, or runs assembled or prepared by CMS for the Engagement specifically and for the benefit of the Company. The data, reports and runs shall be the property of the Company.

**Future Engagements**. CMS has offices throughout the United States. CMS is or expects to be engaged by other clients from time to time and cannot assure that, following the Engagement, an engagement will not be accepted elsewhere for an interested party.

**Independent Contractor**. The Company acknowledges that CMS is being retained as an independent contractor to the Company and no employment relationship, partnership, joint venture or other association shall be deemed created by this Agreement.

**Confidentiality**. During the term of the Engagement and for a period of twelve (12) months thereafter, CMS shall keep secret and retain in strictest confidence, any and all confidential information relating to the Company or which CMS shall obtain knowledge of

Initial
_____ Here



**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 10 of 13

by reason of the Engagement, including, without limitation, trade secrets, customer lists, financial plans or projections, pricing policies, marketing plans or strategies, business acquisition or divestiture plans, new personnel acquisition plans, technical processes and other research projects. CMS shall not, except in connection with the performance of its duties hereunder, disclose any such information to anyone outside the Company, other than to CMS' legal counsel, as required by applicable law (provided prior written notice thereof is given by CMS to the Company) or with the Company's prior written consent, which shall not be unreasonably withheld or delayed. The obligations of CMS in this paragraph shall not apply to information which is (i) known generally to the public; (ii) known to CMS prior to the date of this Agreement; (iii) lawfully disclosed to CMS by a third party; (iv) generally known in the industry in which the Company is engaged; or (v) required by law to be disclosed by CMS, in which event CMS shall provide the Company with prompt notice thereof.

### Agreement to Mediate/Arbitrate:

a.      **Mediation.**  The parties shall mediate all disputes and claims between them arising out of or related to the Engagement or any resulting transaction (a "Dispute") before resorting to arbitration.  Selection of a mediator shall occur within ten days of a demand for mediation.  If the parties cannot agree on the selection of a mediator within ten days, either or both party shall request the JAMS mediators and arbitrators to appoint one for them within fifteen days.  The mediation shall take place within ten days of the date of the selection or appointment of the mediator and shall take place in Orange County, California.  Mediation fees, if any, shall be divided equally among the parties involved and prepaid.  If any party commences an arbitration based on a Dispute without first attempting to resolve the matter through mediation or initiates an unauthorized court action, then that party shall be required to pay the other party's attorneys' fees, expert costs and other expenses in connection with the arbitration or unauthorized court action.  The parties agree that any Dispute which is not settled through mediation shall be decided by neutral, binding arbitration and not by court action, except as provided by law for judicial review and enforcement of arbitration proceedings and awards and as provided in subsection c. below.

b.      **Arbitration.**  The arbitration shall be conducted in accordance with JAMS Expedited Procedures for arbitration (unless the parties agree in writing to use JAMS Commercial Arbitration Rules) and shall be conducted in Orange County, California.  The parties have no right to discovery and the arbitrator(s) shall have no power to allow discovery unless the parties agree in writing to modify this limitation.  Except as provided above, each party shall be responsible for its own attorneys' fees and costs.  The arbitrator shall apply California law as the applicable state law governing the Dispute, without reference to choice of law principles, applying California rules of evidence as applicable in a court of law.  The award of the arbitrator shall be final and binding upon the parties without right of appeal or judicial review.  Application may be had by any party to any court of general jurisdiction for

Initial
Here

MAR-11-07    10:46AM    FROM-xroads solutions group          9495671655          T-498   P 011/013   F-655



**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 11 of 13

entry and enforcement of judgment based on said award. Such judgment shall be binding, final and non-appealable.

      c.     <u>**Provisional Remedies**</u>. Notwithstanding the above, either party may, without waiving any remedy under this Agreement, seek from any court having jurisdiction, any interim or provisional relief available under applicable law that is necessary to protect the rights, property or remedies of that party, pending the outcome of the mediation and/or arbitration, including but not limited to, applications for injunctive relief, writs of attachment or possession.

      <u>**Use of Name**</u>. The Company agrees that CMS shall have the right to use the Company's name and logo in a description of the services provided by CMS under the Agreement.

      <u>**Applicable Law; Headings**</u>. The Agreement shall be governed in accordance with the laws of the State of California, without giving effect to the principles of conflicts of laws. The paragraph headings in the Agreement and the Additional Terms and Conditions are for informational purposes only.

END OF DOCUMENT



Initial
_____ Here

MAR-11-07    10:47AM    FROM-xroads solutions group          9495671655          T-498   P 012/013   F-655



**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 12 of 13

**Schedule A**

## XRoads Case Management Services
Price List

| Description of Services | Price |
|---|---|
| **Hourly Rates for Consulting Services** | |
| Director/Managing Director (engagement manager) | $225 - $325 per hr. |
| Consultant/Sr. Consultant | $125 - $225 per hr. |
| Accounting and Document Management | $125 - $195 per hr. |
| Programming and Technical Support | $125 - $195 per hr. |
| Clerical - data entry | $40 - $65 per hr. |
| **One time setup - data base configuration** | |
| Configuration and customization of database for client's needs based on initial conference | waived |
| **Claim Processing** | |
| Printing of Initial Customized Proof of Claim Forms | $ 15 Each |
| Proof of Claim Input | $1.00 Each |
| Scanning | $.25/page |
| Verification | $35 per hr. |
| **Claims Docket Management** | |
| Monthly Data Storage | .10 per Creditor |
| **Remote Internet Access** | |
| Initial training for system use, set up security with user codes & passwords | $1,000.00 |
| Monthly Access Fees | $250 per month per debtor |
| | plus $35 per month per user |
| **Noticing** | |
| Electronic noticing (no attachment) | $150 per 1,000 |
| Document/Mail File Production Setup | up to $25 per file |
| Notice Printing | Quote prior to mailing |

Initial Here

MAR-11-07    10:47AM    FROM-xroads solutions group          9495671655          T-498    P 013/013    F-655

**X Roads**
CASE MANAGEMENT SERVICES

New Century Financial Corporation
March 8, 2007
Page 13 of 13

| | |
|---|---|
| Legal Notice Publishing | Quote prior to printing |
| Printing / photocopying | $.15 per image |
| Creating customized documents with creditor information inserted | $.15 per piece |
| Document folding and inserting | $.05 per piece |
| **Balloting Services and Fees** | |
| Ballots Tabulated | Lesser of $1.25 each or $75/hr |
| Base Charge for Voting and Tabulation Reports | $50 per report |
| Plus:  line printing charge | $2 per 1,000 lines |
| **Distribution Agent** | |
| Check Issuance | $1,250/check run plus $.15 per check |
| **Expenses and Support Services** | |
| Postage | Actual Cost |
| Faxes - Incoming | No charge |
| Faxes - Outgoing | $.50 per page |
| Labels | $.10 per label |
| Envelopes | Price varies w/size |
| Photocopies and Printing | $.15 per page |
| Monthly data storage and maintenance | $300 + $.10 per creditor |
| Document folding and inserting | .05 per piece |
| Case-specific voice mailbox for creditor inquiries | $50 per month |
| Travel | Actual Cost |



Initial
Here

**Exhibit C**

**[Proposed Order]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[\_\_\_\_] (\_\_\_)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |

## ORDER APPROVING THE APPOINTMENT OF
## XROADS CASE MANAGEMENT SERVICES, LLC
## AS CLAIMS AND NOTICING AGENT PURSUANT TO SECTION 156(c)
## OF THE JUDICIAL CODE AND RULE 2002-1(f) OF THE LOCAL RULES

This matter coming before the Court on the Motion of the Debtors and Debtors in

Possession for an Order Approving the Appointment of XRoads Case Management Services,

LLC ("XRoads") as Claims and Noticing Agent pursuant to Section 156(c) of the Judicial Code

and Rule 2002-1(f) of the Local Rules (the "Motion"), filed by the above-captioned debtors and

debtors in possession (the "Debtors"); the Court having reviewed the Motion and any objections

or responses related thereto; the Court finding that (a) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A), (c) notice of the Motion was sufficient under the circumstances and that no other

or further notice need be provided; and the Court having considered the Declaration of John

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Vander Hooven in Support of Motion of the Debtors and Debtors in Possession for an Order

Approving the Appointment of XRoads Case Management Services, LLC as Claims and

Noticing Agent Pursuant to Section 156(c) of the Judicial Code and Rule 2002-1(f) of the Local

Rules (the "Vander Hooven Declaration"); and (d) capitalized terms otherwise defined shall have

the meanings given to them in the Motion; and the Court having determined that the legal and

factual bases set forth in the Motion and the Vander Hooven Declaration establish just cause for

the relief granted herein; and the Court having determined that the relief sought in the Motion is

in the best interests of the Debtors and their estates; and after due deliberation and sufficient

cause appearing therefore,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    The Debtors are hereby authorized to retain XRoads as the Claims and

Noticing Agent in these chapter 11 cases, pursuant to section 156(c) of title 28 of the United

States Code and Local Rule 2002-1(f), as provided in the Motion, on the terms and conditions set

forth in the XRoads Agreement. In assisting the Debtors with the preparation of their bankruptcy

schedules and statements, XRoads shall not perform any services involving the exercise of

professional judgment without further order of the Court.

3.    The Debtors, their officers, employees and agents, are authorized to take

or refrain from taking such acts as are necessary and appropriate to implement and effectuate the

relief granted herein.

4.    This Court shall retain exclusive jurisdiction to enforce and interpret the

terms of this Order.

Dated: _____, 2007
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE