**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[____] (___)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | |

**MOTION OF THE DEBTORS AND THE DEBTORS IN POSSESSION FOR AN ORDER
AUTHORIZING THE DEBTORS TO PAY PREPETITION USE TAX PURSUANT TO
SECTIONS 105(a), 363 AND 507(a) OF THE BANKRUPTCY CODE**

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court for entry of an order under sections 105(a), 363 and 507(a) of title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code"), authorizing, but not directing, the Debtors to pay prepetition use tax (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b).

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

RLF1-3133712-2

2. The statutory predicates for the relief requested herein are sections 105, 363 and 507(a) of the Bankruptcy Code.

## BACKGROUND[2]

3. New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4. On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered

---

[2] The facts and circumstances supporting this Motion are set forth in the Declarations of Monika McCarthy and Holly Etlin in Support of Chapter 11 Petitions and Request for First Day Relief.

that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

5. On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

6. These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

7. As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

8. Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

9. During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co. LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

10. The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

11. Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

12. On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. Further, a motion for joint administration of the Debtors' bankruptcy cases is

pending before the Court. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

## RELIEF REQUESTED

13. By this Motion, the Debtors seek, <u>inter alia</u>, entry of an order pursuant to sections 105, 363 and 507(a) of the Bankruptcy Code that authorizes, but does not direct, the Debtors to pay undisputed prepetition use tax obligations (the "Taxes") owed to the appropriate taxing authorities (the "Taxing Authorities") in the ordinary course of business, on an unaccelerated basis, as payments become due and payable and to the extent adequate funds are available to make such payments. To the extent that any check payable to a Taxing Authority issued prior to the Petition Date had not cleared the bank as of the Petition Date, the Debtors also seek entry of an order (i) authorizing the Debtors' banks to honor such checks and/or any prepetition wire transfer requests and (ii) authorizing the Debtors to issue replacement checks, submit replacement fund transfer requests or provide other means of payment to the Taxing Authorities to the extent necessary to pay all undisputed prepetition use tax obligations.

## BASES FOR RELIEF REQUESTED

14. On a periodic basis, the Debtors pay to the Taxing Authorities all use tax collected by funds drawn by check or by means of an electronic funds transfer. Generally, the Debtors incur use tax when goods from a vendor are sent to the Debtors' headquarters in Irvine, and then are shipped from Irvine to locations in another state. The Debtors pay use tax to the states where the goods are sent and used. Accordingly, prior to submitting payment to the appropriate Taxing Authority for a given period, the Debtors may hold a balance of collected but unremitted Taxes.

15. As of the Petition Date, the Debtors' financial records indicate that the Debtors are substantially current on their payment of Taxes to all Taxing Authorities. Therefore,

the Debtors seek this relief out of an abundance of caution and to the extent that any Taxes accrued prepetition were not paid prepetition, paid in an amount that is less than actually owed, or if any payments sought to be made prepetition are rejected, lost or otherwise not received in full by any Taxing Authority. On an annual basis the Debtors pay approximately $33,000 in Taxes. The Debtors estimate that the total amount of Taxes collected prepetition but not yet paid is under $3000 and will come due by April. These amounts represent a very small fraction of the Debtors' total assets. The Debtors are seeking only to pay Taxes as they become due in the ordinary course of the Debtors' businesses and consistent with prepetition business practices.

16. The Debtors believe that the failure to pay the Taxes could have a material adverse impact on their ability to operate in the ordinary course of business. The Debtors are licensed to do business in all 50 states, and any tax disputes that impair their ability to conduct business in a particular jurisdiction could affect the Debtors' business as a whole. Furthermore, the Debtors believe that many Taxing Authorities may cause the Debtors to be audited if certain of the Taxes are not paid, and such audits will unnecessarily divert the Debtors' attention from their business operations and reorganization. The payment of the Taxes is also necessary to avoid potential administrative difficulties. Withholding of payment of the Taxes will likely cause the Taxing Authorities to take immediate action, including an increase in state audits and lien filings or motions for relief from stay. Prompt and regular payment of the Taxes will help avoid these unnecessary government actions. Given the potential harm if the Taxes are not timely paid, and the fact that the Debtors intend to pay all Taxes in full, there is no reason why the relief requested herein should not be granted.

17. There is ample authority for allowing payment of the Taxes in the ordinary course. Section 105(a) of the Bankruptcy Code provides that "(t)he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. §105(a). The purpose of section 105(a) is "to assure the bankruptcy court'[s] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01, at 105-5 to 105-6 (15th ed. rev. 2006). Thus, section 105 essentially codifies the Bankruptcy Court's inherent equitable powers. See Management Tech. Corp. v. Pardo, 56 B.R. 337, 339 (Bankr. D. N.J. 1985) (noting court's equitable power derived from section 105).

18. Numerous courts have used their section 105 equitable powers under the "necessity of payment doctrine" to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the paramount purpose of a chapter 11 reorganization, which is to prevent the debtor from going into liquidation and preserve the debtor's potential for rehabilitation. See In re Lehigh & New England Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989) (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)). This doctrine, first articulated by the United States Supreme Court in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 311-312 (1882), recognizes the existence of judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.

19. Moreover, under section 105(a) of the Bankruptcy Code, this Court has authorized debtors in possession to pay a variety of prepetition claims of creditors, including claims similar to the Taxes herein. See e.g. In re Advanced Marketing Services, Inc., et al., Bankruptcy Case No. 06-11480 (CSS) (Bankr. D. Del. December 29, 2006); In re Dura Automotive Systems, et al., Bankruptcy Case No. 06-11202 (KJC) (Bankr. D. Del. October 30, 2006); In re Magnolia Energy, L.P., et al., Bankruptcy Case No. 06-11069 (MFW) (Bankr. D. Del. September 29, 2006). Further, tax collections in various jurisdictions are treated as trust

fund taxes and are not property of the Debtors' estates. Texas Comptroller of Public Accounts v. Megafoods Stores, Inc. (In re Megafoods), 163 F.3d 1063, 1067 (9th Cir. 1998).

## NOTICE

20. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; and (4) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served as required by Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

21. The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

## NO PRIOR REQUEST

22. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other further relief the Court deems just and proper.

Dated:  April 2, 2007
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[____] (___)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

## ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION TO PAY PREPETITION USE TAXES PURSUANT TO SECTIONS 105(a), 363 AND 507(a) OF THE BANKRUPTCY CODE

This matter coming before the Court on the Motion for an Order Authorizing the Debtors to Pay Prepetition Use Taxes Pursuant to Section 105(a) of the Bankruptcy Code (the "Motion"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); the Court having reviewed the Motion; the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); (c) notice of the Motion was sufficient under the circumstances and that no other or further notice need be provided; and (d) capitalized terms not otherwise defined herein have the meaning given to them in the Motion; and the Court having considered the Declarations of Taj Bindra and Holly Etlin in Support of Chapter 11 Petitions and First-Day Relief; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

RLF1-3133712-2

the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Debtors are authorized, but not directed, to pay all undisputed prepetition use tax obligations due and owing to state and local taxing authorities (the "Taxing Authorities") in the ordinary course of business, on an unaccelerated basis.

3. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition transfer requests, in replacement of any checks or fund transfer requests in respect of prepetition use tax obligations dishonored or rejected as of the commencement of these chapter 11 cases.

4. Nothing in this Order or the Motion shall be construed as prejudicing the Debtors' rights to contest the amount or basis of any use tax obligations allegedly due any Taxing Authority, or a waiver of any right to assert property rights in such funds.

5. The Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

6. This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2007  
Wilmington, Delaware        _____  
                            UNITED STATES BANKRUPTCY JUDGE