IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[____] (___)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

**MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN
ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE
AUTHORIZING THE DEBTORS (A) TO HONOR PREPETITION OBLIGATIONS
TO CUSTOMERS PURSUANT TO THE CUSTOMER PROGRAMS AND
(B) TO CONTINUE THE CUSTOMER PROGRAMS**

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by

and through their undersigned counsel, hereby submit this motion (the "Motion") for entry of an

order pursuant to section 105(a) of chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code") authorizing, but not directing, the Debtors (a) to perform and honor their

prepetition obligations related to certain of the Debtors' Customer Programs (as defined below)

as they see fit, and (b) to continue, renew, replace, implement new, and/or terminate such

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Customer Programs (as defined below) as the Debtors see fit, in the ordinary course of business, without further application to the Court. In support of this Motion, the Debtors respectfully state as follows:[2]

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2.      The basis for the relief requested herein is Bankruptcy Code § 105(a).

## BACKGROUND

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year

---

[2] The facts and circumstances supporting this Motion are set forth in the Declarations Monika McCarthy and Holly Etlin in Support of Chapter 11 Petitions and Request for First Day Relief.

ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.      On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

5.      On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

3

6.      These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business.  Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability.  During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully.  Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors.  Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

7.      As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans.  The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

8.      Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans.  Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

9.      During the weeks leading up to the Petition Date (as defined below), the

4

Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co.

LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital,

or a sale of their businesses to a strategic or financial investor.

10.    The Debtors' inability to originate loans and the exercise of remedies by

the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale

of the Debtors' mortgage loan servicing business and loan origination platform, those businesses

will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced

these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other

assets for the benefit of the Debtors' stakeholders.

11.    Although the Debtors have been unsuccessful in obtaining financing that

would permit them to continue originating loans, Debtors were successful in obtaining debtor in

possession financing of up to $150 million, which they expect will provide sufficient working

capital to maintain and stabilize their businesses through the sale of the Debtors' operating

businesses and other assets.

12.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant

petitions for relief. Further, a motion for joint administration of the Debtors' bankruptcy cases is

pending before the Court. The Debtors are operating their business and managing their affairs as

debtors and debtors in possession.

## RELIEF REQUESTED

13.    By this Motion, the Debtors respectfully request entry of an order pursuant

to section 105(a) of the Bankruptcy Code, that authorizes, but does not direct, the Debtors, in

their business judgment, (a) to perform and honor their prepetition obligations related to the

Customer Programs (as defined below) as they see fit, and (b) to continue, renew, replace,

5

implement new, and/or terminate such of those Customer Programs (as defined below) as they see fit, in the ordinary course of business, without further application to the Court.

14.    Prior to the Petition Date, the Debtors were providing certain services to its customers, including, but not limited to a consumer restitution plan (the "Consumer Restitution Plan"), the funding of manufactured home loans (the "Manufactured Home Loan Funding") under a program regulated by the Federal Housing Authority ("FHA") and transferring pipeline loans to other lenders or brokers (the "Transferring Pipeline Loans," together with the Consumer Restitution Plan and the Manufactured Home Loan Funding, the "Customer Programs"). The Customer Programs are described in detail below:

A.    Consumer Restitution Plan. The Debtors entered into the Consumer Restitution Plan in order to mitigate the damages to its customers after the Warehouse Lenders ceased providing funding for loans originated by the Debtors. Prior to the cutoff, certain customers had entered into agreements and paid fees to the Debtors, including, but not limited to, appraisal fees, fees for credit reports and application fees, in anticipation of receiving mortgage loans. The Consumer Restitution Plan proposes to make whole these customers who were damaged as a result of the Debtors' liquidity crisis. Fees received from the customers are in an escrow account so that refund checks may be generated for the customers. In addition, the Debtors propose to set up an escrow account to make equitable restitution payments to the customers who closed a loan with the Debtors and who either received inferior funding from an alternative lender or who were not able to obtain any alternative loan.

B.    Manufactured Home Loan Funding. One of the products the Debtors

6

sell in the ordinary course of business is loans for manufactured homes (the
"Manufactured Home Loans"). The Manufactured Home Loans are provided by the
Debtors through their FHA approval. These loans are funded through a series of
advances, provided at various stages, such as at the time of the purchase of land, the
construction of the home, and the attachment of the home to the foundation and to
sewer and water lines.

Should the Debtors fail to make the remaining advances on the
Manufactured Home Loans, they risk losing their FHA approval. Moroever, should
the Debtors cease making further advances, the value of the entire amount of these
loans will be lost, as the underlying collateral for these loan will be worthless. The
Debtors estimate that the amount of Manufactured Home Loans remaining unfunded
is $2.5 million, and hereby request that this court grant the Debtors the authority to
continue funding these loans.

C.          Transferring Pipeline Loans. In connection with its efforts to mitigate
the impact on its customers resulting from the Warehouse Lenders' actions to cut-off
financing, and consistent with its obligations with the various state regulators, the
Debtors have made a concerted effort to reduce the number of mortgage loans in their
pipeline that were ready for funding or in other stages of processing, but that had not
been funded. The Debtors' efforts included returning most of the loans in its pipeline
to the mortgage brokers that submitted the loan applications so that the loans could be
placed with other lenders. With respect to its retail division, the Debtors contacted
other lenders and mortgage brokers and, with the borrower's consent, transferred their
file information to the other lenders and mortgage brokers for further processing.

7

State regulators also assisted in reducing the pipeline by providing the Debtors with referrals of lenders who were willing to assist the Debtors in disposing of their loan inventory. On March 12, 2007, a few days after the Debtors stopped taking loan applications, the Debtors had slightly over 27,000 loans or loan applications in its pipeline. As a result of the efforts taken by the Debtors and their personnel, as of April 2, 2007, the Debtors have disposed of all loans in its pipeline. Out of an abundance of caution, the Debtors request authority to continue transferring pipeline loans to other lenders and mortgage brokers for further processing.

15.    The relief requested by this Motion is necessary in order to alleviate the concerns of the regulators and the Debtors customers, and to preserve the Debtors' reputation and ability to operate. Continued compliance with regulators is critical to the preservation of the Debtors' licenses to operate. The preservation of the licenses is necessary to preserve the going concern value of the Debtors mortgage loan servicing business and loan origination platforms. Without the necessary licenses to operate, those businesses will lose substantial, if not all, value. Moreover, the Debtors believe that the bankruptcy filing and the Debtors' failure to fulfill the prepetition promises made to its customers through the Customer Programs, could further negatively influence consumers' attitudes and behavior toward the Debtors' services unless the Debtors can take the measures requested by this Motion. For these and for the other reasons set forth herein, it is in the best interests of the Debtors, their estates and their creditors to honor prepetition obligations under the Customer Programs and to continue the Customer Programs as they see fit in the ordinary course of business.

## **BASIS FOR RELIEF**

16.    The Debtors seek authorization, pursuant to section 105(a) of the

8

Bankruptcy Code, to continue the Customer Programs and honor the related prepetition

obligations to their customers and to others necessary to maintain the existence of the Customer

Programs. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).

      17.     Since mid-March, the Debtors have been subject to various actions by

state regulators, including cease and desist orders or suspensions. The services provided by the

Debtors through the Customer Programs are largely the result of agreements reached with many

of the state regulators in order for the Debtors to continue to operate with regulatory approval.

The Debtors are engaged in ongoing discussions with state regulators regarding the Debtors'

funding constraints and the impact on customers who are in various stages of the loan origination

process. The Debtors have advised these regulators that it has ceased accepting loan

applications. In addition, the Debtors have advised these regulators that the Debtors are unable

to fund any mortgage loans, including mortgage loans for those customers who were already in

the loan origination process with the Debtors. The Debtors have been and continue to work

cooperatively with these regulators to mitigate the impact on the affected customers, including

transferring pending loans and loan applications to other mortgage lenders and implementing the

other Customer Programs.

      18.     Similar relief to the type herein requested, i.e. the protection of customers,

has been authorized in other chapter 11 cases. See, e.g., In re Zany Brainy, Inc. et al., Case No.

9

01-1749 (SLR) (Bankr. D. Del. 2001); In re Home Place of America, Inc., Case No. 01-181

(PJW) (Bankr. D. Del 2001); In re Converse, Inc., Case No. 01-223 (SLR) (Bankr. D. Del.

2001); In re Just For Feet, Inc., Case No. 99-4110 (PJW) (Bankr. D. Del. 1999);  In re

Montgomery Ward Holding Corp., et al., Case No. 97-1409 (PJW) (Bankr. D. Del. 1997); In re

Silas Creek Retail, Inc., et al., Case No. 97-1239 (HSB) (Bankr. D. Del. 1997); In re Grossman's

Inc., et al., Case No. 97-695 (PJW) (Bankr. D. Del. 1997);  In re Strawberries Inc., et al., Case

No. 309 (RRM) (D. Del. 1997);  In re CM Holdings, Inc., et al., Case No. 96-1247 (PJW)

(Bankr. D. Del. 1996).

       19.     The Debtors believe that the requested relief is necessary to continue to

comply with regulators, to operate in the ordinary course of business, and preserve the value of

the estates.  "The ability of the Bankruptcy Court to authorize the payment of prepetition debt

when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."

In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  This equitable common

law principle "was first articulated by the United States Supreme Court in Miltenberger v.

Logansport, C & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed 117 (1882) and is commonly

referred to as either the 'doctrine of necessity' or the 'necessity of payment' rule."  In re

Ionosphere Clubs, Inc., 98 B.R. at 176.  "The Supreme Court, the Third Circuit and the District

of Delaware all recognize the court's power to authorize payment of pre-petition claims when

such payment is necessary for the debtor's survival during chapter 11."  In re Just for Feet, Inc.,

242 B.R. 821, 825 (D. Del. 1999).  "The necessity of payment doctrine recognizes that paying

certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful

reorganization." Id. at 825-26.

20.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay certain critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. See In re Columbia Gas System, 136 B.R. 930, 939 (Bankr. D. Del. 1992) citing In re Lehigh & New England Rwy Co., 657 F.2d 570, 581 (3rd Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'").

21.     Authorization to provide equitable payments under the Customer Programs will not be deemed to constitute postpetition assumption or adoption of any agreement pursuant to Bankruptcy Code Section 365 or otherwise, and the Debtors hereby reserve all of their rights under the Bankruptcy Code with respect to any such agreement. Moreover, authorization to make payments under the Customer Programs will not affect the Debtors' right to contest the amount or validity of any such payments, in whole or in part.

22.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interest of the Debtors and all parties in interest.

## NOTICE

23.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed postpetition secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; and (4) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served as required by Local

11

Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

24.     The Debtors submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

## NO PRIOR REQUEST

25.     No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other further relief the Court deems just and proper.

Dated:  April 2, 2007                          Respectfully submitted,
        Wilmington, Delaware

                                               _____
                                               Mark D. Collins (No. 2981)
                                               Michael J. Merchant (No. 3854)
                                               RICHARDS, LAYTON & FINGER, P.A.
                                               One Rodney Square
                                               P.O. Box 551
                                               Wilmington, Delaware 19899
                                               (302) 651-7700

                                                      -and-

                                               Suzanne S. Uhland
                                               Ben H. Logan
                                               Victoria Newmark
                                               Emily R. Culler
                                               O'MELVENY & MYERS LLP

12

275 Battery Street
San Francisco, California 94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

13

**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[_____] (___)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

**ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE
AUTHORIZING THE DEBTORS (A) TO HONOR CERTAIN PREPETITION
OBLIGATIONS TO CUSTOMERS PURSUANT TO THE CUSTOMER
PROGRAMS AND (B) TO CONTINUE THE CUSTOMER PROGRAMS.**

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), the

Court having reviewed the Motion; the Court finding that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A), (c) notice of this Motion having been provided to, inter alia, the Office of the

United States Trustee for the District of Delaware, counsel to Greenwich Capital Financial

Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT") the Debtors'

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

proposed senior secured lenders, the 50 largest unsecured creditors for the Debtors on a

consolidated basis as identified in the Debtors' chapter 11 petitions, and all parties who have

timely filed requests for notice under Bankruptcy Rule 2002, and (d) capitalized terms not

otherwise defined herein have the meanings given to them in the Motion; and the Court having

considered the Declarations of Taj Bindra and Holly Etlin in Support of Chapter 11 Petitions and

Request for First Day Relief; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein and the Court having

determined that the relief sought in the Motion is in the best interests of the Debtors and their

estates; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized but not directed (a) to perform and honor their

prepetition obligations related to the Customer Programs as they see fit, and (b) to continue,

renew, replace, implement new, and/or terminate such of the Customer Programs as they see fit,

in the ordinary course of business, without further application.

3.      Nothing herein or in the Motion shall be deemed to constitute an

assumption of an executory contract, whether under 11 U.S.C. §365 or otherwise.

4.      The Debtors, their officers, employees and agents, are authorized to take

or refrain from taking such acts as are necessary and appropriate to implement and effectuate the

relief granted herein.

2

      5.     This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Date: _____, 2007
        Wilmington, Delaware            _____
                                          UNITED STATES BANKRUPTCY JUDGE

3