## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Objection Deadline: April 17, 2007 @ 4:00 p.m. |
| | : | Hearing Date: April 24, 2007 @ 2:30 p.m. |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 365 AND 554 OF THE BANKRUPTCY CODE(A) AUTHORIZING AND APPROVING THE REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (B) AUTHORIZING AND APPROVING PROCEDURES FOR THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PERSONAL AND NON-RESIDENTIAL REAL PROPERTY

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby file their motion with the Court (the "Motion") for an order (a) authorizing the Debtors to immediately reject, nunc pro tunc to the date of this Motion, certain unexpired leases of nonresidential real property listed on Exhibit A attached hereto and incorporated by this reference; (b) authorizing the Debtors to reject, with rejection effective as of April 30, 2007, certain unexpired leases of nonresidential real property

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership

listed on Exhibit B attached hereto and incorporated by this reference and (c) authorizing and
approving procedures for rejecting executory contracts other than Servicing Agreements (as
defined below) and unexpired leases of personal and non-residential real property. In support of
this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and
1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined
in 28 U.S.C. § 157(b)(2).

2.      The bases for the relief requested herein are sections 105, 363 and 365(a)
of title 11 of the United States Code, (as amended from time to time the "Bankruptcy Code").

## BACKGROUND[2]

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and
publicly owned real estate investment trust, is one of the largest specialty mortgage finance
businesses in the United States. Through its subsidiaries and its primary holding company
subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and
together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases,
sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending,
or lending to individuals whose borrowing needs were generally not fulfilled by traditional
financial institutions because they did not satisfy the credit, documentation or other underwriting
standards prescribed by conventional mortgage lenders and loan buyers. In September 2005,
NCF through some of its subsidiaries also began offering conventional mortgage loans,
including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration

---

[2] The facts and circumstances supporting this Motion are set forth in the Declarations of Monika McCarthy
and Holly Etlin in support of Chapter 11 Petitions and Request for First Day Relief

("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.      On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

5.      On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

6.      These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin

3

calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

7.    As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

8.    Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

9.    During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co. LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

10.    The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses

4

will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

      11.     Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

      12.     On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. Further, a motion for joint administration of the Debtors' bankruptcy cases is pending before the Court. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

### RELIEF REQUESTED

      13.     The Debtors are in the process of reorganizing and restructuring their operations, which requires exiting non-core and unprofitable locations, returning unnecessary equipment, and terminating burdensome contracts in order to minimize costs and strengthen the business. In connection therewith, the Debtors seek to reject certain real property leases listed on Exhibit A, nunc pro tunc, to the date of this motion and to reject certain real property leases listed on Exhibit B, with rejection effective as of April 30, 2007. The Debtors further anticipate that, in a very short time, they will seek to reject a number of additional real property leases, personal property leases, and executory contracts. Absent expedited procedures for managing this process, the Debtors will inevitably suffer delays and resulting administrative costs, which could be significant. Accordingly, by this Motion and pursuant to sections 365 and 554 of the

5

Bankruptcy Code, the Debtors seek this Court's approval of an order (a) authorizing the Debtors to immediately reject the nonresidential real property leases set forth on Exhibit "A" attached hereto, with such rejection to be effective nunc pro tunc to the date of this Motion; (b) authorizing the Debtors to reject the nonresidential real property leases set forth on Exhibit "B" attached hereto, with such rejection to be effective April 30, 2007; and (c) authorizing and approving an expedited procedure for rejecting executory contracts other than the Servicing Agreements (as defined below) and unexpired leases of personal and non-residential real property.

14.    The Debtors, principally through New Century Mortgage Corporation ("NCMC"), perform loan servicing as "servicer" or "master servicer" on behalf of a number of securitization trusts under the terms and conditions of a series of servicing agreements, pooling and servicing agreements, indentures and related documents (collectively, the "Securitization Documents"). In addition, when the Debtors sell loans in whole loan sales, the purchaser often contracts with the Debtors to provide loan servicing, sometimes on an interim basis and sometimes on a longer term basis, particularly when the purchaser does not have the capacity to service loans. These agreements (the "Agreements," together with the Securitization Documents, the "Servicing Agreements") are typically documented in a servicing agreement with NCMC which has many of the features of the sort of servicing agreements with securitization trusts. The Debtors are not seeking an expedited procedure for rejection of any Servicing Agreements. If the Debtors seek to reject a Servicing Agreement, the Debtors will file a separate motion and give notice and an opportunity to be heard by the trustees under such Securitization Document and the effective date of rejection of a Servicing Agreement shall be

6

not earlier than thirty (30) days after the order approving such rejection becomes final unless the Court shortens such time.

## BASES FOR RELIEF

### A.    Rejection of the Leases

15.    The Debtors are party to the 44 nonresidential real property leases set forth on Exhibit A attached hereto (the "Exhibit A Leases") and the 108 nonresidential real property leases set forth on Exhibit B attached hereto (the "Exhibit B Leases", together with the Exhibit A Leases the "Leases"). Prior to the Petition Date, the Debtors engaged in a comprehensive review of all their real property lease obligations and determined that the Leases were of no value to the Debtors. The locations at the premises encompassed by the Exhibit A Leases are no longer operational and to reduce losses, the Debtors have already ceased possession of the properties that are the subject of the Exhibit A Leases. The Debtors are currently in the process of vacating the properties that are the subject of the Exhibit B Leases.

16.    The Debtors have further determined that, based on current market conditions, it would be difficult if not impossible for the Debtors to recruit tenants to sublease the spaces, even if they were offered to prospective tenants at substantially lower rental rates than those currently due under the Leases. Accordingly, the Debtors have concluded that no possible benefit can be obtained from retaining the Leases and that it is in their best interests and the best interests of the estates and creditors to reject the Leases on the schedules requested herein.

17.    In the absence of rejection on the schedules requested herein, the Leases will cause the estates to incur substantial amounts of rent and other charges and result in significant expenses with no commensurate benefit to the Debtors, their estates or their creditors.

The aggregate monthly rent due under the Exhibit A Leases is in excess of $335,736.52 and the aggregate monthly rent due under the Exhibit B Leases is in excess of $516,736.27. Any such amounts due post-petition will be directly charged to and immediately payable by the Debtors' estates as administrative expenses pursuant to Bankruptcy Code section 365(d)(3).

18.     Pursuant to Bankruptcy Code Section 365(a), a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" upon the approval of the court. 11 U.S.C. § 365(a). A debtor should be authorized to reject an executory contract or unexpired lease where it appropriately exercises its "business judgment." See e.g. In re Sharon Steel Corp., 872 F.2d 36, 39-40 (3rd Cir. 1989); In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2nd Cir. 1993); In re Chi-Feng Huang, 23 B.R. 798, 800 (9th Cir. BAP 1982). A debtor exercises appropriate business judgment absent bad faith or an abuse of business discretion. See e.g. In re Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985); In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

19.     An important factor in determining whether a debtor has exercised appropriate business judgment in deciding to reject an executory contract or unexpired lease is whether the rejection will benefit the estate and its creditors. Thus, where a debtor determines that the estate will obtain a net benefit from the rejection of an executory contract or unexpired lease, the rejection should be authorized. See e.g. Sharon Steel, 872 F.2d at 39-40 (citing Wheeling-Pittsburgh, 72 B.R. at 846); Orion Pictures, 4 F.3d at 1098.

20.     Here, the Debtors have exercised reasonable business judgment in determining that it is appropriate to reject the Leases. As noted above, prior to the Petition Date

8

the Debtors engaged in a comprehensive review of all their real property lease obligations and determined that the Leases were of no value or were substantially unused by the Debtors.

21.    The Debtors have also determined that rejection of the Leases would result in a net benefit the Debtors, the estates and creditors. After a review of the economic terms of the Leases and the general economic conditions prevailing in the markets where the real estate is located, it is clear that subletting the Leases is not a viable option, even at substantially lower rental rates, and that no possible benefit can be obtained from retaining the Leases. Rejection of the Leases will allow the estates to avoid incurring large amounts of rent and other charges that would result in significant administrative expenses payable by the estate, an amount estimated to be in excess of $852,472.79 per month. Finally, rejection of the Leases will allow the Debtors to focus their attention, resources, and efforts on their reorganization and will greatly simplify business operations.

22.    The Debtors respectfully request that the Court authorize their rejection of the Leases on the schedules set forth herein pursuant to Bankruptcy Code Section 365(a) as an appropriate exercise of their business judgment.

B.    **Retroactive Rejection of the Leases**

23.    The Debtor requests authority to reject the Exhibit A Leases nunc pro tunc effective as of April 2, 2007. Courts in this District and elsewhere have authorized the rejection of nonresidential real property leases prior to the date of the hearing on the applicable motion or approval thereof when the equities so dictate. See In re HQ Global Holdings, Inc., No. 02-10760 (MFW) (Bankr. D. Del.) (transcript of May 2, 2002 hearing, at 50) (adopting test articulated in Namco Entertainment, infra, for effective date of rejection of real property leases); In re Namco Entertainment, Inc., No. 98-173 (PJW) (Bankr. D. Del.) (transcript of April 15, 1998 hearing, at 34-36); see also In re SCS Co. v. Peter J. Schmitt Co., Inc., No. 94 125 RRM (D. Del. May 15,

9

1995) (unreported Order Affirming in Part Order of Bankruptcy Court); In re Jamesway Corp.,

179 B.R. 33, 38 (S.D.N.Y. 1995) (bankruptcy court could select "a retroactive date for the

effective date of rejection" of a lease); In re Joseph C. Spiess Co., 145 B.R. 597, 606 (N.D. Ill.

1992) (rejection of lease is retroactive to date that debtor took affirmative steps to reject lease

such as serving notice of motion to reject); In re CCI Wireless, LLC, 279 B.R. 590, 595 (Bankr.

D. Colo. 2002) (approving rejection of unexpired nonresidential real property lease retroactive to

date on which rejection motion was filed).

24.    Here, under the foregoing precedents, the equities plainly weigh in favor

of rejection effective as of April 2, 2007: (i) by April 2, 2007, the Debtor will have surrendered

the premises encompassed by the Exhibit A Leases and the keys to said premises with an

unequivocal statement to the applicable landlord of surrender; (ii) the Debtor waives its right to

withdraw this Motion with respect to the Exhibit A Leases, except in the instance where an

agreement has been reached with the applicable landlord in respect of the relief requested in the

Motion; and (iii) any effective date of rejection later than April 2, 2007 would force the Debtor

to pay additional rent associated with the Exhibit A Leases, causing the estates to incur

substantial charges, thereby damaging the Debtors' estates. Accordingly, the proposed rejection

of the Exhibit A Leases should be approved, effective as of April 2, 2007.

## C.    Procedure for Rejecting Executory Contracts and Unexpired Leases

25.    The Debtors also request that the following procedures (the "Rejection

Procedures") be approved in connection with the rejection of any executory contract (other than

the Servicing Agreements), lease, sublease, or interest in such lease or sublease during the course

of the Debtors' bankruptcy proceedings:

a    The Debtors will file a notice to reject any such executory contract,

lease or sublease, or interest in such lease or sublease, pursuant to section 365 of the

10

Bankruptcy Code (the "Notice"), and will serve the Notice via overnight delivery service upon (i) United States Trustee; (ii) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (iii) counsel to the Official Committee of Unsecured Creditors (the "Creditors Committee") (if any); (iv) the contract counter-party or landlord(s) affected by the Notice; and (v) any other parties in interest to the executory contract or lease, including subtenants, if any, sought to be rejected by the Debtors, (collectively, the "Service Parties"), advising such parties of the Debtors' intent to reject the specified executory contract, lease, sublease or interest, as well as the deadlines and procedures for filing objections to the Notice (as set forth below). If the Notice is issued by the Debtors prior to the effective date of a plan of reorganization, the affected executory contract, lease, sublease or interest in such lease or sublease shall be deemed to be subject to a motion to reject for all purposes.

        b.      The Notice shall be substantially in the form of Exhibit C hereto, and shall set forth the following information, to the best of the Debtors' knowledge, as applicable: (i) the street address of the real property underlying the lease and/or sublease, the interest in such personal property lease or sublease or the type of executory contract which the Debtors seek to reject; (ii) the Debtors' monthly payment obligation, if any, under the contract, lease or sublease or interest in such lease or sublease; (iii) the remaining term of the contract, lease or sublease or interest in such lease or sublease; (iv) the name and address of the contract counter-party, landlord and/or subtenant; (v) a general description of the terms of the executory contract or lease; and (vi) a disclosure describing the procedures for filing objections, if any.

c.      Should a party in interest object to the proposed rejection by the

Debtors of an executory contract, lease or sublease, or interest in such lease, or sublease,

such party must file and serve a written objection so that such objection is filed with this

Court and is actually received by the following parties (collectively, the "Notice Parties")

no later than ten (10) days after the date the Debtors serve the Notice:  (i) counsel to the

Debtors:  O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California

90071-2899, Attn: Suzzanne S. Uhland, Esq. and Emily R. Culler, Esq., and Richards,

Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware

19801, Attn: Mark D. Collins, Esq. (ii) counsel to the Creditors' Committee, if any; and

(iii) the Office of the United States Trustee.

d.      Absent an objection being filed in compliance with subparagraph

(c) of this paragraph, the rejection of such executory contract, lease or sublease, or

interest in such lease or sublease, shall become effective ten (10) days from the date the

Notice was served on the Service Parties (the "Rejection Date") without further notice,

hearing or order of this Court; provided, however, that with respect to leases or subleases

for non-residential real property, such rejection shall become effective on the later of (x)

the Rejection Date or (y) the date the Debtors unequivocally relinquished control of the

premises to the affected landlord by turning over keys or "key codes" to the affected

landlord (the "NRP Lease Rejection Date").

e.      If a timely objection is filed that cannot be resolved, the Court will

schedule a hearing to consider the objection only with respect to the rejection of any

executory contract, lease or sublease, or interest in such lease or sublease, as to which an

objection is properly filed and served.  If the Court upholds the objection and determines

12

the effective date of rejection of such executory contract, lease or sublease, or interest in such lease or sublease, that date shall be the rejection date. If such objection is overruled or withdrawn or the court does not determine the date of rejection, the rejection date of such lease, sublease or interest shall be deemed to have occurred on the Rejection Date or NRP Lease Rejection Date, as applicable.

> f.    If the Debtors have deposited monies with a lessor or contract counter-party as a security deposit or other arrangement, such lessor or contract counter-party may not setoff or otherwise use such deposit without the prior authority of the Court.

> g.    With respect to any personal property of the Debtors located at any of the premises subject to any Notice, the Debtors shall remove such property prior to the expiration of the period within which a party must file and serve a written objection pursuant to section (c) above. If the Debtors determine that the value of the property at a particular location has a de minimis value or cost of removing the property exceeds the value of such property, the Debtors shall generally describe the property in the Notice and, absent a timely objection, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, where is, effective as of the date of the rejection of the underlying unexpired lease.

26.    The Debtors further request that counter-parties to executory contracts, leases or subleases, or interests in such leases and subleases, that are rejected pursuant to the Rejection Procedures be required to file a proof of claim relating to the rejection of such executory contract, lease or sublease, or interest in such lease or sublease, if any, by the later of

13

(a) the claims bar date established in these reorganization cases, if any; and (b) thirty (30) days after the Rejection Date.

27.     The Debtors believe that these Rejection Procedures provide a fair and efficient manner for rejecting contracts, leases, subleases, and interests in leases and subleases. These procedures will enable the Debtors to minimize their unnecessary post-petition obligations while also providing parties in interest with adequate notice of lease and contract rejections and an opportunity to object to such relief within a definitive time period.

28.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may … reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The decision to assume or reject an executory or unexpired lease is a matter within the "business judgment" of the debtor. See National Labor Relations Board v. Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of would benefit the estate, the 'business judgment' test"); See also, In re Taylor, 913 F.2d 102 (3d Cir. 1990); In re Buckhead America Corp., 180 B.R. 83 (Bankr. D. Del. 1995).  The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice.  See Lubrizol Enters v. Richmond Metal Finishes, 756 F.2d 1043, 1047 (4th Cir. 1980), cert. denied, 475 U.S. 1057 (1986).  Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." Stewart Title Guaranty Co. v. Old Republic National Title Company, 83 F.3d. 735, 741 (5th Cir. 1996), citing In re Murexco Petroleum, Inc., 15 F.3d 60, 62 (5th Cir. 1994).

29.     The Debtors submit that adoption of the Rejection Procedures represents the sound exercise of the Debtors' business judgment and a fair balancing of the need of a lessor

14

or contract counter-party for certainty with the Debtors' need to move quickly and to cut off the needless accrual of administrative rent and other post-petition charges.

30.     The Debtors are parties to a substantial number of leases and executory contracts. As the Debtors continue to review these agreements, it is certain that they will identify a number of agreements which will need to be rejected. Establishing the Rejection Procedures will minimize the Debtors' post-petition obligations if the Debtors determine, in their sole discretion, that such lease or contract is unlikely to yield sufficient value to justify the expense of maintaining the lease or contract. The Rejection Procedures also afford parties in interest the opportunity to appear and be heard with respect to the rejection of the leases and contracts. In addition, the Rejection Procedures will save substantial legal expense and Court time that would otherwise be incurred if multiple hearings were held on separate motions with respect to every lease or contract that the Debtors determine should be rejected. Similar rejection procedures have been approved in similar contexts by this and other Courts. See e.g. In re Dura Automotive Systems, Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Dec. 22, 2006); In re Three A's Holdings, L.L.C., Case No. 06-10886 (BLS) (Bankr. D. Del. Sept. 26, 2006); In re Tower Automotive, Inc., Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Mar. 14, 2005); In re Wherehouse Entertainment, Inc., Case No. 03-10224 (PJW) (Bankr. D. Del. Feb. 13, 2003). Accordingly, the Debtors believe adoption of the Rejection Procedures is in the best interest of their estates.

## NOTICE

31.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc.

15

("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (4) the non-Debtor parties to each of the Exhibit A Leases and Exhibit B Leases; and (5) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

No prior request for the relief sought in this Motion has been made to this or any other court.

16

WHEREFORE, the Debtors request entry of an order, substantially in the form

attached hereto as Exhibit D, granting the relief requested herein and such other further relief the

Court deems just and proper.

Dated:  April 2, 2007
        Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

17