# EXHIBIT A

ASSET PURCHASE AGREEMENT

between

NEW CENTURY FINANCIAL CORPORATION,

THE SELLING SUBSIDIARIES NAMED HEREIN

and

GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.

Dated as of April 2, 2007

## TABLE OF CONTENTS

Page

ARTICLE 1 Definitions ..................................................................................................... 1

ARTICLE 2 Purchased Assets .......................................................................................... 6

ARTICLE 3 Purchase Price .............................................................................................. 7

ARTICLE 4 Representations and Warranties of the Sellers ............................................. 8

ARTICLE 5 Representations and Warranties of the Purchaser ........................................ 9

ARTICLE 6 Additional Agreements .............................................................................. 10

ARTICLE 7 Closing ........................................................................................................ 12

ARTICLE 8 Transfer of Servicing .................................................................................. 17

ARTICLE 9 Termination ................................................................................................. 19

ARTICLE 10 Survival of Representations and Warranties ............................................. 21

ARTICLE 11 Notices ...................................................................................................... 21

ARTICLE 12 Miscellaneous ........................................................................................... 22

i

## SCHEDULES

SCHEDULE 1          LNFA Mortgage Schedule
SCHEDULE 2          Residuals Schedule
SCHEDULE 3          Selling Subsidiaries
SCHEDULE 4.5        Litigation Schedule

## EXHIBITS

EXHIBIT A          Bidding Procedures Order
EXHIBIT B          Sale Order
EXHIBIT C          Form of Power of Attorney

K&E 11712482.8

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is made as of April 2, 2007, by and among New Century Financial Corporation, a Maryland corporation (the "Company"), the Subsidiaries of the Company owning Purchased Assets (as defined below), which are named on Schedule 3 hereof (the "Selling Subsidiaries"), and Greenwich Capital Financial Products, Inc. ("Greenwich" or the "Purchaser"). The Company and the Selling Subsidiaries are collectively referred to herein as the "Sellers" and, individually, as a "Seller." The Sellers and the Purchaser are collectively referred to herein as the "Parties" and, individually, as a "Party."

WHEREAS, the Sellers have filed Chapter 11 petitions to commence cases under Title 11 of the United States Code (the "Bankruptcy Code") on April 2, 2007 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and are currently operating as debtors and debtors-in-possession under Sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, on the terms and subject to the conditions set forth in this Agreement, the Purchaser desires to purchase from the Sellers, and the Sellers desire to sell to the Purchaser, the Purchased Assets, in a sale authorized by the Bankruptcy Court pursuant to, inter alia, Sections 105 and 363 of the Bankruptcy Code;

WHEREAS, the Sellers have also sought approval of the Bankruptcy Court to obtain debtor-in-possession financing pursuant to the Debtor-in-Possession Loan and Security Agreement Dated, by and among New Century Mortgage Corporation, as debtor and debtor-in-possession, certain of its Affiliates (as defined below), as debtors and debtors-in-possession, Greenwich Capital Financial Products, Inc., as Administrative Agent, and The CIT Group/Business Credit, Inc., as Documentation Agent (the "DIP Agreement").

NOW, THEREFORE, in consideration of the premises and mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, the Parties hereby agree as follows:

### ARTICLE 1

### DEFINITIONS

1.1    For purposes of this Agreement, the following terms shall have the meanings set forth below:

"Accrued and Unpaid Interest" means, with respect to any Loan, as of any date, the interest, fees, premiums, consignment fees, costs, advances and other charges that have accrued on such Loan (whether or not such fees, costs or charges have been billed) but have not been paid by the Obligor on such Loan or otherwise collected by offset, recourse to collateral or otherwise.

"Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the

possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities or otherwise.

"Agreement" shall have the meaning set forth in the preamble.

"Assignment Deadline" shall have the meaning set forth in Section 6.9(a).

"Auction" means the auction conducted by the Sellers pursuant to the Bidding Procedures Order.

"Bankruptcy Code" shall have the meaning set forth in the recitals.

"Bankruptcy Court" shall have the meaning set forth in the recitals.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

"Bidding Procedures" shall have the meaning set forth in Section 6.6.

"Bidding Procedures Order" means the order of the Bankruptcy Court: (a) establishing procedures for the submission of higher and better offers for the Purchased Assets; (b) prescribing the form and manner of notice of the proposed sale of the Purchased Assets to creditors and other interested parties, including but not limited to publication notice; (c) authorizing and approving the payment of the Break-Up Fee to the Purchaser in the event it becomes due under this Agreement, without the need for any further order; and (d) otherwise approving and implementing the provisions of Section 6.6 hereof, such Bidding Procedures Order to be satisfactory to the Purchaser substantially in the form of Exhibit A attached hereto.

"Break-Up Fee" shall have the meaning set forth in Section 9.2 hereof.

"Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banking institutions in the States of California, Delaware and New York are authorized or obligated by law or executive order to be closed.

"Chapter 11 Cases" shall have the meaning set forth in the recitals.

"Claim" shall have the meaning as defined in Section 101(5) of the Bankruptcy Code.

"Closing" shall have the meaning set forth in Section 7.1.

"Closing Date" shall having the meaning set forth in Section 7.1.

"Company" shall have the meaning set forth in the preamble.

"Contract" means any contract, license, sublicense, franchise, permit, mortgage, deed to secured debt or deed of trust, purchase order, indenture, loan agreement, note, lease, sublease, agreement, obligation, commitment, understanding, instrument or other arrangement or any commitment to enter into any of the foregoing (in each case, whether written or oral).

2

"Cut-off Date" shall mean for each LNFA Mortgage Loan, the date listed for each Loan on the LNFA Mortgage Schedule as the cut-off date.

"Designation Rights" shall have the meaning set forth in Section 6.9(a).

"DIP Agreement" shall have the meaning set forth in the recitals.

"Files" means, whether in paper or electronic form, books; records; customer and vendor lists; correspondence; files; advertising, marketing and sales materials; financial records and statements; correspondence, reports and examinations of Governmental Authorities and legal proceedings materials.

"Final Order" means an Order as to which the time to file an appeal, a motion for rehearing or reconsideration (excluding any motion under F.R.C.P. 60(b)) or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"Finance Laws" means the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Home Mortgage Disclosure Act, the Consumer Credit Protection Act, the Right to Financial Privacy Act, the Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Homeowners Ownership and Equity Protection Act, the Federal Trade Commission Act, the Fair Debt Collection Practices Act and other Laws regulating lending.

"First Priority Loans" means those LNFA Mortgage Loans secured by a first priority Lien in favor of the applicable Seller who is a Party to the Loan or owns by assignment.

"GAAP" means United States generally accepted accounting principles consistently applied.

"Governmental Authority" means any United States federal, state or local or any foreign government, governmental regulatory or administrative authority, agency or commission or any court, tribunal or judicial or arbitral body.

"Grantor Trust" means a fixed investment trust, as defined in Section 301.7701-4(c) of the Treasury Regulations or any entity or arrangement that has purported to be such a fixed investment trust, irrespective of whether such entity or arrangement qualifies as a fixed investment trust under Section 301.7701-4(c) of the Treasury Regulations.

"Greenwich" shall have the meaning set forth in the preamble.

"Holdback" shall have the meaning set forth in Section 3.2.

"Holdback Period" shall have the meaning set forth in Section 3.2.

"Income Tax" means all federal, state, local, or foreign taxes based upon, measured by, or calculated with respect to (i) gross or net income or gross or net receipts or profits (including, but not limited to, any capital gains, minimum taxes and any taxes on items of tax preference, but not including sales, use, goods and services, real or personal property transfer or other similar taxes); (ii) multiple bases (including, but not limited to, corporate franchise,

3

doing business or occupation taxes) if one or more of the bases upon which such tax may be based upon, measured, or calculated with respect to, is described in clause (i); or (iii) withholding taxes, measured by, or calculated with respect to, any payments or distributions (other than wages).

"Insurance Policies" means those policies of insurance which the Sellers maintain with respect to their assets and operations.

"IRS" means the Internal Revenue Service, or any successor agency.

"Lien" means any mortgage, deed to secured debt or deed of trust, pledge, security interest, encumbrance, Claim, tax, equitable interest, participation interest, negative pledge, lien or charge of any kind (including, without limitation, any conditional sale or other title retention agreement or lease in the nature thereof) or any agreement to file any of the foregoing, any sale of receivables with recourse against the Sellers or any of their Affiliates, any filing or agreement to file a financing statement as debtor under the UCC or any similar statute and all claims (including, but not limited to, all "claims" within the meaning of section 101(5) of the Bankruptcy Code).

"LNFA Mortgage Loans" means all of the Sellers' rights, title, and interest in the mortgage Loans on a servicing-released basis (to one or more third-party servicers) as scheduled on the LNFA Mortgage Schedule, including all legal, credit and servicing files related thereto, and all Seller-collected Accrued and Unpaid Interest, late fees and all other proceeds related thereto, including any proceeds realized by the Sellers in connection with a release and satisfaction of such Loan, received on or after the Cut-Off Date for such Loan as set forth on Schedule 1 hereto and all proceeds of the foregoing.

"LNFA Mortgage Schedule" shall mean Schedule 1 hereto.

"Loans" shall mean all loans, or other extensions of credit, either purchased by a Seller from Third Parties or pursuant to which any of the Sellers have lent money, in each case, which are owned by the Sellers or subject to repurchase by or similar Contract of a Seller, including, but not limited to, (a) loans which have been partially or fully charged off, (b) interests in loan participations and assignments, (c) legally binding commitments and obligations to extend credit (including any unfunded or partially funded revolving loans, lines of credit or similar arrangements).

"Obligations" shall have the meaning set forth in the DIP Agreement.

"Obligor" means, with respect to any Loan, the Person(s) obligated to make payments with respect to such Loan, including, without limitation, the applicable borrower, or any guarantor, co-signer, surety or other obligor therefor.

"Order" means any decree, order, injunction, rule, judgment, consent of or by any Governmental Authority.

"Organizational Documents" means certificates of incorporation, by-laws, certificates of formation, limited liability company operating agreements, limited liability

4

partnership agreements, partnership or limited partnership agreements or other formation or governing documents of a particular entity.

"Parties" shall have the meaning set forth in the preamble.

"Party" shall have the meaning set forth in the preamble.

"Person" means an individual, a partnership, a limited liability company, a corporation, a cooperative, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or a Governmental Authority.

"Petition Date" shall mean April 2, 2007.

"Post Cut-off Date Collections" shall have the meaning set forth in Section 8.3(d).

"Purchase Price" shall have the meaning set forth in Article 3 hereof.

"Purchased Assets" means the LNFA Mortgage Loans and the Residuals.

"Purchaser" shall have the meaning set forth in the preamble or shall mean Third Party Purchaser, as applicable.

"Residuals" means all of the Sellers' interests, rights, and title to the residuals set forth on the Residuals Schedule, the related securitization clean-up calls (only to the extent the clean-up calls are held by the owner of the Residuals) and all proceeds related to the foregoing received after their respective distribution dates in March 2007.

"Residuals Schedule" means Schedule 2 attached hereto.

"Sale Hearing" means the hearing of the Bankruptcy Court to approve this Agreement and the transactions contemplated herein.

"Sale Order" means the order of the Bankruptcy Court authorizing and approving the sale of the Purchased Assets to the Purchaser under the terms of this Agreement free and clear of any Liens, claims, or other encumbrances of any kind or nature pursuant to section 363 of the Bankruptcy Code substantially in the form of Exhibit B hereof.

"Second Priority Loans" means those LNFA Mortgage Loans secured by a second priority Lien in favor of the applicable Seller who is a Party to the Loan or owns by assignment.

"Sellers" shall have the meaning set forth in the preamble.

"Selling Subsidiaries" shall have the meaning set forth in the preamble.

"Servicer Expenses" shall have the meaning set forth in Section 8.1

"Servicing Transfer Date" shall have the meaning set forth in Section 8.1.

"Tax Code" means the Internal Revenue Code of 1986 as amended from time to time.

"Tax Return" means any return, declaration, report, claim for refund, information return, amended return or other documents (including any related or supporting schedules, statements or information) filed or required to be filed in connection with the determination, assessment or collection of Taxes of any Person or the administration of any laws, regulations or administrative requirements relating to any Taxes.

"Third Party" means any Person other than the Parties or any of their Affiliates.

"Third Party Purchaser" shall have the meaning set forth in Section 6.9(a).

"Third Party Purchaser Notice" shall have the meaning set forth in Section 6.9(a).

"Transaction Documents" means this Agreement and any other agreement, certificate, consent, waiver, document or instrument to be executed and/or delivered at Closing, including, but not limited to, those agreements, certificates, consents, waivers, documents and other instruments required to be delivered by or on behalf of a Person under Article 7 hereof.

"Treasury Regulation" means a regulation promulgated by the Treasury Department under the Tax Code, including a temporary regulation and a proposed regulation to the extent that, by reason of their actual or proposed effective date, would or could, as of the date of any determination or opinion as to the tax consequences of any action or proposed action or transaction, be applied to the Purchased Assets.

"UCC" means the Uniform Commercial Code.

## ARTICLE 2

## PURCHASED ASSETS

2.1     On the terms and subject to the conditions contained in this Agreement, on the Closing Date, the Sellers will sell, convey, transfer, assign and deliver to the Purchaser, and the Purchaser will purchase and take assignment and delivery from the Sellers of all of the legal and beneficial right, title and interest of the Sellers in the Purchased Assets free and clear of any Lien of any kind whatsoever.  For the avoidance of doubt, the Purchaser is not assuming any obligation or liability of any of the Sellers (whether accrued, absolute, contingent, unliquidated or otherwise, whether due or to become due and regardless of when asserted) arising out of any transactions entered into at or prior to the date hereof, or any action or inaction at or prior to the date hereof, or any state of facts existing at or prior to the date hereof, whether related to the Purchased Assets or otherwise.

6

## ARTICLE 3

### PURCHASE PRICE

3.1    Purchase Price.  In consideration of the sale of the Purchased Assets from the Sellers to the Purchaser on the Closing Date, the Purchaser agrees to pay the Sellers the amount of $50,000,000 (the "Purchase Price"), subject to the Holdback, which is comprised of (i) satisfaction of any Obligations outstanding under the DIP Agreement as of the Closing up to the Purchase Price, and (ii) the balance, if any, in cash.

3.2    Holdback.  From the Purchase Price to be paid by the Purchaser to the Sellers on the Closing Date, the Purchaser may hold for forty-five (45) days from the Closing Date (the "Holdback Period") up to $3,000,000 (the "Holdback") from which the Purchaser may deduct to the extent (a) the Purchaser discovers during such Holdback Period that the LNFA Mortgage Loan has been released, satisfied or discharged in whole or in part by the Sellers at any time prior to the transfer of servicing for which (i) the Purchaser has not received the proceeds of the LNFA Mortgage Loan payoff, or (ii) the release, satisfaction or discharge of the LNFA Mortgage Loan resulted in proceeds to the Purchaser less than the Purchase Price for the LNFA Mortgage Loan (in which case the Purchaser may deduct the difference between the Purchase Price and the amount of proceeds received by the Purchaser) or (b) the foreclosure process of any state in which a mortgaged property underlying a LNFA Mortgage Loan is situated is materially adversely affected by any law, rule or regulation which was enacted or became effective after March 30, 2007 and prior to the Closing Date or (c) the servicing of such LNFA Mortgage Loan is not transferred to the third-party servicer designated by the Purchaser as a result of the action or inaction of the Sellers.  For purposes of calculating the Holdback deductions pursuant to this Section 3.2(a)(ii), (b) and (c), the Purchase Price in respect of any LNFA Mortgage Loan shall be as set by the Purchaser pursuant to previous mutual agreement with the Sellers.  The balance of the Holdback after deduction of amounts, if any, as described above shall be paid to the Sellers on the first Business Day following the Holdback Period.  In the event that the Holdback is insufficient to cover the amount of the deductions, the Sellers shall pay to the Purchaser the amount by which the deductions exceed the Holdback on the first Business Day following the Holdback Period.  If such payment is not made, such amount shall automatically be added to the outstanding Obligations under the DIP Agreement up to the Maximum Credit (as defined in the DIP Agreement) as and when availability exists under the DIP Agreement if the DIP Agreement has not been terminated.  If the DIP Agreement has been terminated, such amount shall be an administrative expense of the Sellers with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code until paid to the Purchaser by the Sellers.  Purchaser agrees to return promptly to Sellers any documents received on account of any LNFA Mortgage Loan for which a Purchase Price adjustment has been made pursuant to Section 3.2(b) or (c), and such LNFA Mortgage Loan shall not be deemed a Purchased Asset upon such Purchase Price adjustment being made.

7

## ARTICLE 4

## REPRESENTATIONS AND WARRANTIES OF THE SELLERS

As a material inducement to the Purchaser to enter into this Agreement, the Sellers hereby represent and warrant to the Purchaser the following:

4.1     <u>Organization and Power</u>.     The Company is a Maryland corporation duly organized, validly existing and in good standing under the laws of Maryland. Each of the Sellers is duly organized, validly existing and in good standing under the laws of its state of incorporation or organization (as applicable). Each of the Sellers is qualified to do business and is in good standing as a corporation or entity (as applicable) in their respective jurisdictions of incorporation or organization, as applicable. The Sellers have the requisite corporate or other entity power and authority to own the Purchased Assets.

4.2     <u>Corporate Authority</u>.  Subject to entry of the Sale Order, the execution, delivery and performance of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby to be consummated by the Sellers, have been duly and validly authorized by all necessary corporate or other entity action (as applicable) on the part of each of the Sellers. This Agreement has been, and each of the Transaction Documents after execution and delivery thereof at the Closing will have been, duly and validly executed and delivered by the Sellers, as applicable, and, subject to any necessary authorization from the Bankruptcy Court, this Agreement constitutes, and each of the Transactions Documents will constitute, its legal, valid and binding obligation, enforceable in accordance with its terms.

4.3     <u>Absence of Conflicts; Required Consents, Approvals and Filings</u>.  Subject to entry of the Sale Order, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions contemplated hereby and thereby by the Sellers do not and shall not (a) constitute a material breach or violation of or default under any Law, governmental permit or license of the Sellers or to which any of the foregoing is subject, including but not limited to state usury laws, state laws requiring licenses to engage in consumer lending, consumer finance, mortgage lending and the other businesses of the Sellers, or the Finance Laws, which breach, violation or default would prevent or materially delay the Sellers from being able to perform their obligations under this Agreement and the other Transaction Documents to which they are a party, or (b) constitute a breach or violation of or default under the Organizational Documents of the Sellers, which breach, violation or default would prevent or materially delay the Sellers from being able to perform their obligations under this Agreement and the other Transaction Documents to which they are a party.

4.4     <u>Good Title</u>.  Subject to entry of the Sale Order, each Seller has good and valid title to and the power and authority to sell, transfer and assign to the Purchaser the Purchased Assets it is conveying to the Purchaser hereunder, free and clear of all Liens.

4.5     <u>Litigation</u>.  Except as set forth in <u>Schedule 4.5</u> hereto, there is no action, suit, proceeding in equity or at law, arbitration or administrative or other proceeding by or before (or, to the knowledge of the Purchaser, any investigation by) any Person (including, without

8

limitation, any Governmental Authority) pending or, to the knowledge of the Purchaser, threatened against or affecting the Sellers or the Purchased Assets which, if adversely determined, would prevent the Company or the Sellers from performing their obligations under this Agreement or conveying the Purchased Assets to the Purchaser as contemplated therein. Sellers shall deliver a preliminary Schedule 4.5 to Purchaser by April 4, 2007 and a final Schedule 4.5 by April 14, 2007.

4.6    Closing Date:  All of the representations and warranties contained in this Article 4 and elsewhere in this Agreement are true and correct on the date of this Agreement and shall be true and correct on the Closing Date as though then made and as though the Closing

4.7    No Consents.  None of the Contracts included within the Purchased Assets requires the consent of any party thereto, and the assignment to the Purchaser will not result in a modification of any rights or obligations of any party thereto or would provide any party thereto any remedy (including rescission or liquidated damages) as a result of the consummation of the transactions contemplated hereby.

4.8    Residuals.  The Residuals on the Residuals Schedule are the legal, valid and binding interests of the Sellers and are enforceable in accordance with their terms.

4.9    LNFA Mortgage Loans.

(a)    The LNFA Mortgage Schedule is accurate in all material respects with respect to the LNFA Mortgage Loans as of the Cut-off Date.

(b)    The LNFA Mortgage Loans are the legal, valid and binding obligations of the Obligor thereunder and are enforceable in accordance with their terms and the related mortgages are valid and subsisting First Priority Liens or Second Priority Liens on the property described therein.

(c)    Neither the LNFA Mortgage Loans nor the underlying mortgage has been released, subordinated, canceled or rescinded, in whole or in part as of the Cut-off Date and to the extent released, subordinated, canceled or rescinded, in whole or in part thereafter, the proceeds thereof have been or shall be remitted to the Purchaser or will be applied pursuant to Section 3.2 hereof.

## ARTICLE 5

## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

The Purchaser hereby represents and warrants to the Sellers that:

5.1    Corporate Status.  The Purchaser is duly organized and a subsisting legal entity under the laws of the jurisdiction of its formation.

5.2    Corporate Authority.  The execution, delivery and performance of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated

9

hereby and thereby to be consummated by the Purchaser, has been duly and validly authorized by all necessary corporate or other entity action (as applicable) on the part of the Purchaser. This Agreement has been, and each of the Transaction Documents after execution and delivery thereof at the Closing will have been, duly and validly executed and delivered by the Purchaser, and, this Agreement constitutes, and each of the Transaction Documents will constitute, its legal, valid and binding obligation, enforceable in accordance with its terms.

     5.3    Closing Date. All of the representations and warranties contained in this Article 5 and elsewhere in this Agreement and all information delivered in any schedule, attachment or Exhibit hereto or in any writing delivered by the Purchaser to the Sellers are true and correct on the date of this Agreement and shall be true and correct on the Closing Date as though then made and as through the Closing

# ARTICLE 6

## ADDITIONAL AGREEMENTS

     6.1    True Sale. Each of the Parties acknowledges and agrees that a true sale of the Purchased Assets is intended pursuant to this Agreement, the Purchaser will have legal and equitable title to all Purchased Assets upon payment of the Purchase Price, and there is no intent by any Party to create a lending relationship between the Purchaser and the Sellers. Upon the sale of the Purchased Assets, the Sellers shall have no legal or equitable title or interest whatsoever in the Purchased Assets or any collections thereunder, and the Sellers shall have no right to redeem any of the Purchased Assets.

     6.2    Access to Information and Facilities. The Sellers shall, upon reasonable prior notice, afford to the Purchaser and the Purchaser's financial advisors, legal counsel, accountants, consultants, financing sources, and other authorized representatives designated by the Purchaser in writing, reasonable access during normal business hours prior to the Closing Date to the books, records, properties, and personnel of the Sellers that pertain to the Purchased Assets and, during such period, shall furnish as promptly as practicable to the Purchaser all such information as the Purchaser reasonably may request pertaining to the Purchased Assets.

     6.3    Conduct Prior to Closing. Except as otherwise expressly contemplated by this Agreement or the DIP Agreement (including without limitation the filing of the Chapter 11 Cases and the solicitation of competing bids from other Persons pursuant to the Bidding Procedures) or with the prior written consent of the Purchaser, prior to the Closing, the Sellers shall not take any action inconsistent with this Agreement or with the consummation of the Closing.

     6.4    Restrictions on Certain Actions. The Sellers shall not, without the prior written consent of the Purchaser:

          (a)    mortgage, pledge, assign, grant any participation or security interest in or otherwise further encumber any of the Purchased Assets, except for the Liens under the DIP Agreement;

10

     (b)    sell, transfer, liquidate, or otherwise impair the Purchased Assets except as contemplated by this APA;

     (c)    make any changes in servicing, billing or collection operations or policies as it may affect the LNFA Mortgage Loans, other than changes that could not reasonably be expected to have a material adverse effect on any such LNFA Mortgage Loans or the collectibility of amounts due thereunder.

    6.5    <u>Approvals of Third Parties; Satisfaction of Conditions to Closing</u>. Subject to the terms of this Agreement, the Parties will use commercially reasonable efforts to cause the Closing to occur, and will cooperate with one another, to secure any necessary consents, approvals, authorizations and exemptions from Governmental Authorities and other Third Parties. The Parties will use their commercially reasonable efforts to obtain the satisfaction of the conditions specified in <u>Article 7</u>. The Parties shall cooperate in preparing, submitting, filing, updating and publishing (as applicable), as expeditiously as possible, any applications, notifications and other filings as may be required by or may be advisable under applicable Laws with respect to the transactions contemplated by this Agreement, including, without limitation, those of any state or Federal agency with regulatory authority over the Purchased Assets. The Parties shall use their commercially reasonable efforts to make any such filings as promptly as practicable following the date hereof. The Parties will use their commercially reasonable efforts to obtain such approvals and accomplish such actions as expeditiously as possible.

    6.6    <u>Bankruptcy Actions</u>. The Sellers shall obtain the entry of the Bidding Procedures Order, including approval of the Bidding Procedures and Break-Up Fee, in substantially the form attached hereto as <u>Exhibit A</u> on the Bankruptcy Court's docket no later than April 10, 2007. The Sellers shall obtain entry of the Sale Order in substantially the form attached hereto as <u>Exhibit B</u>. The Sellers shall file no later than two (2) Business Days after the Petition Date, all pleadings with the Bankruptcy Court as are necessary or appropriate to secure entry of the Bidding Procedures Order and the Sale Order. Upon entry of the Bidding Procedures Order, the Sellers shall serve all parties entitled to notice pursuant to the Bidding Procedure Order under applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable local rules including, but not limited to, all parties to all Governmental Authorities having or asserting jurisdiction over the Sellers or the Purchased Assets and publish notice of the Bidding Procedures, Auction and Sale Hearing in the national edition of the <u>Wall Street Journal</u> (as more fully set forth in the Bidding Procedures Order) with notice of all pleadings necessary for approval of the Sale Order and shall diligently pursue the approval and entry of the Sale Order.

    6.7    <u>Post-Closing Deliverances</u>. If, after the Closing Date, the Company or a Seller (or any other Person acting on its behalf) comes into possession of any additional documentation, books and records relating to the LNFA Mortgage Loan, such additional documentation shall be deemed to have been received and held in trust for the benefit of the Purchaser and promptly shall be delivered to the Purchaser or such other Person as the Purchaser may direct. The Company shall fully cooperate with the Purchaser from and after the Closing to take all other actions necessary or appropriate to effect the transfer of, and vest in the Purchaser, all right, title and interest in and to the Purchased Assets.

11

6.8     Further Actions.  Following the Closing, the Company and the Sellers agree not to take any action in the Chapter 11 Cases, including, but not limited to, any action in connection with proposing or confirming any plan of reorganization that would, in any material respect, limit, impair or alter the Purchaser's rights under this Agreement.

6.9     Designation Rights; Assignment and Transfer of Purchased Assets.

(a)     The Purchaser shall have the right (the "Designation Rights") to assign its rights and obligations hereunder with respect to any Purchased Assets to one or more third parties (each, a "Third Party Purchaser").  The Purchaser may, by one or more notices (each, a "Third Party Purchaser Notice") to the Sellers, designate one or more Third Party Purchasers and the Purchased Assets to be transferred by the Sellers to each such Third Party Purchaser.  The Purchaser may deliver a Third Party Purchaser Notice to a Seller from the date hereof and up to seven (7) Business Days prior to the Sale Hearing (the "Assignment Deadline").

(b)     In order to facilitate the acquisition of Purchased Assets by one or more Third Party Purchasers, the Sellers shall, if requested by the Purchaser, execute one or more necessary transfer documents or amendments to this Agreement (each in a form reasonably acceptable to the Sellers) making such Third Party Purchasers parties hereto in respect of a portion of the Purchased Assets and permitting such Third Party Purchasers to assume all rights, obligations and interests of the Purchaser under this Agreement in respect of such Purchased Assets, and the Third Party Purchaser shall be entitled to all benefits of the Sale Order.  The Purchaser shall, if necessary, execute such documents and/or otherwise cause such documents to be executed by such Third Party Purchaser (which shall in any event be consistent with the terms hereof and on terms no less favorable to the Sellers as this Agreement).

(c)     Nothing in this Section 6.9 shall relieve the Purchaser of its obligations hereunder with respect to the payment of the Purchase Price or its obligations with respect to any Purchased Assets that are not transferred to Third Party Purchasers.

6.10     Mail Forwarding.  For a period of six (6) months after the Closing Date, the Company and the Sellers shall maintain adequate staff or engage an outside service at their own expense to accept and forward to the Purchaser all mail and other communications received by the Company and the Sellers relating to the Purchased Assets.

## ARTICLE 7

## CLOSING

7.1     Closing.  Subject to satisfaction or waiver of the conditions contained in this Agreement, the closing of the purchase and sale of the Purchased Assets shall take place at 10:00

12

a.m., Pacific Daylight Savings Time at the offices of O'Melveny & Meyers, New York, on the first Business Day following the satisfaction or waiver of the conditions of the Parties' obligations set forth in Sections 7.2 and 7.3 hereof, or such other place or time as the Parties may agree to in writing, but in no event later than May 18, 2007 (the "<u>Closing Date</u>").

7.2    <u>Conditions Precedent to the Purchaser's Obligations</u>.    The obligation of the Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment of the following conditions as of the Closing Date:

(a)    <u>Representations and Warranties; Covenants; Certificates</u>.

(i)    The representations and warranties of the Sellers contained in this Agreement, and in any agreement, instrument, or document executed and delivered by them in connection with the Closing, shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date, except as affected by transactions permitted by this Agreement and except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct in all material respects as of such specified date.

(ii)    The Sellers shall have performed and complied in all material respects with all agreements, obligations, covenants and conditions required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

(iii)    The Purchaser shall have received a certificate, dated as of the Closing Date, signed by authorized officers of the Company and the Sellers to the effect that such conditions set forth in Section 7.2 hereof have been satisfied in all material respects.

(b)    <u>Bankruptcy Condition</u>.    The Bankruptcy Court shall have entered the Sale Order, which shall be a Final Order which has not been reversed, modified, rescinded or stayed as of the Closing Date.

(c)    <u>No Injunction</u>.    There shall be in effect no pending injunction, decree or order of, or any other action or proceeding before, any Governmental Authority that (a) prevents the consummation of the transactions contemplated hereby, (b) causes the transactions to be rescinded following the consummation thereof or (c) has a material adverse effect on the Purchased Assets.

(d)    <u>Approvals</u>.    All authorizations, permits, licenses, certificates of authority, consents, Orders, filings, notices and approvals necessary to permit the Company and the Sellers to perform the transactions contemplated hereby and required for the Purchaser to own the Purchased Assets shall have been duly obtained, made or given, shall be in form and substance

13

reasonably satisfactory to the Purchaser, shall not be subject to the satisfaction of any material condition that has not been satisfied or waived and shall be in full force and effect. All terminations or expirations of waiting periods imposed by any Governmental Authority necessary for the transactions contemplated under this Agreement, if any, shall have occurred.

(e)     <u>Instruments of Conveyance and Transfer; Title</u>. The Sellers shall have delivered to the Purchaser such bills of sale, deeds, endorsements, assignments and other good and sufficient instruments of conveyance and transfer in form and substance, reasonably satisfactory to the Purchaser and its counsel, as are necessary to vest in the Purchaser good and marketable title to all of the interest of the Sellers in the Purchased Assets, free and clear of all Liens. With respect to the Residuals, the Purchaser or its designee shall have been made the registered owner of such Residuals pursuant to the terms of the related governing documents. As of the date hereof, to the extent any such original certificate(s) of Residuals are not in the Sellers' possession at the time of Closing, the Sellers shall take all action necessary to have replacement certificates issued before the Closing Date.

(f)     Any condition specified in this Section 7.2 may be waived by the Purchaser; <u>provided</u>, <u>however</u>, that no such waiver shall be effective unless it is set forth in a writing executed by the Purchaser.

7.3     <u>Conditions Precedent to the Sellers' Obligations</u>. The obligation of the Company and the Sellers to consummate the transactions contemplated by this Agreement is subject to the fulfillment of the following conditions as of the Closing Date:

(a)     <u>Representations and Warranties; Covenants; Certificates</u>.

(i)     The representations and warranties of the Purchaser contained in this Agreement, shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date, except as affected by transactions permitted by this Agreement and except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct in all material respects as of such specified date.

(ii)    The Purchaser shall have performed and complied in all material respects with all agreements, obligations, covenants and conditions required by this Agreement to be performed or complied with by it on or prior to the Closing.

(iii)   The Company and the Sellers shall have received a certificate, dated as of the Closing Date, signed by authorized officers of the

14

Purchaser to the effect that such conditions set forth in Section 7.3 hereof have been satisfied in all respects.

(iv)    The Bankruptcy Court shall have entered the Sale Order, which shall be a Final Order which has not been reversed, modified, rescinded or stayed as of the Closing Date.

(b)    Approvals. The authorizations, permits, licenses, certificates of authority, consents, notices, filings, orders and approvals necessary to permit the Purchaser to perform the transactions contemplated hereby and required for the Purchaser to own the Purchased Assets shall have been duly obtained, made or given, shall be in form and substance reasonably satisfactory to the Company and the Sellers, shall not be subject to the satisfaction of any material condition that has not been satisfied or waived and shall be in full force and effect. All terminations or expirations of waiting periods imposed by any Governmental Authority necessary for the transactions contemplated under this Agreement, if any, shall have occurred.

(c)    Any condition specified in this Section 7.3 may be waived by the Company and the Sellers; provided that no such waiver shall be effective against the Sellers unless it is set forth in a writing executed by the Sellers.

7.4    Closing Deliverables. The closing documents to be delivered on or prior to the Closing Date (the "Closing Documents") shall consist of each of the following:

(a)    The Sellers shall convey all of the Purchased Assets to the Purchaser and shall deliver to the Purchaser such appropriately executed instruments of sale, transfer, assignment, conveyance and delivery, certificates duly registered in the Purchaser's name (or as otherwise specified by the Purchaser) representing the Residuals, and all other instruments of conveyance which are necessary or desirable to effect transfer to the Purchaser of good and marketable title to the Purchased Assets free and clear of all Liens, Claims or encumbrances (and in the case of Residuals, sufficient documentation to permit the transfer agent to register title to the Residuals in the name of the Purchaser and issue a certificate in the Purchaser's name or its designee as set forth in Section 7.2(e)).

(b)    The original certificates on account of the Residuals, together with fully executed assignments with medallion signature guaranteed, or if original certificates are not available, an unqualified opinion of counsel or other acceptable equivalent such as an order of the Bankruptcy Court that Sellers have conveyed good and marketable title to the Residuals despite the absence of an original certificate acceptable to Purchaser.

(c)    Irrevocable instructions to the trustee or the indenture trustee, as applicable, for the transaction in which the Residuals were issued directing

15

that any rights of the Sellers to receive distributions in respect of the Residuals made after the Closing Date be made to the Purchaser or its designee.

(d) The Sellers and the Purchaser shall deliver all other Transaction Documents required to be delivered by or on behalf of such Person, as applicable.

(e) The Company shall deliver, or cause to be delivered, at the Closing, to the Purchaser or to such Person as the Purchaser may designate (including, without limitation, any custodian(s) appointed by the Purchaser to hold such items) all Files and documentation and other items pertaining to the LNFA Mortgage Loans customarily held in the applicable custodial file, including, without limitation, original notes (with appropriate endorsements) (or if the Company or custodian is not in possession of such original notes, a lost note affidavit), guarantees, mortgages and other security agreements and all assignments, assumptions, modifications, consolidations and extensions thereof, UCC financing statements, if any, or such other evidence of perfection of a security interest in the applicable collateral in the relevant jurisdictions, powers of attorney, certificates of title, all evidence of title insurance policies and all other documentation related to the loan Files associated with the applicable LNFA Mortgage Loan.

(f) The Sellers shall execute and deliver to the Purchaser ten (10) originals of a power of attorney in the form attached hereto as Exhibit C (the "Power of Attorney").

(g) The Sellers will deliver, or cause to be delivered, to the Purchaser as of the Closing Date, the original mortgage, promissory notes, contracts and certificates that evidence the LNFA Mortgage Loans with evidence of recording thereon, or if the original mortgage has not yet been returned from the recording office, a true copy of the mortgage which has been delivered for recording in the appropriate recording office of the jurisdiction in which the real property has been delivered, and executed assignments of mortgage showing a complete chain of assignment of mortgage to the Purchaser; provided that if any LNFA Mortgage Loans are registered on the MERS system, the Parties will mutually agree on the application of this paragraph prior to Closing.

(h) The Sellers shall deliver certificates executed on behalf of the Sellers by a duly authorized officer certifying as to the incumbency, and authenticating the signatures of, officers executing this Agreement and certificates delivered hereunder on behalf of the Sellers, and certifying as to the adoption and continuing effect of appropriate resolutions authorizing the Sellers' execution, delivery and performance of this Agreement.

16

## ARTICLE 8

### TRANSFER OF SERVICING

8.1     The LNFA Mortgage Loans are being sold on a servicing released basis.  On a date, not to exceed thirty (30) days from the Closing Date, or such other date as the Parties shall agree in writing (the "Servicing Transfer Date"), the Purchaser, or its designee, shall assume all servicing responsibilities related to the LNFA Mortgage Loans.  Prior to the Servicing Transfer Date, the LNFA Mortgage Loans shall be serviced by New Century Mortgage Corporation in accordance with its customary servicing procedures.  The Purchaser shall reimburse the Sellers for out-of-pocket third-party expenses (for example, fees and expenses of foreclosure attorneys and property repair contractors) paid by the servicer ("Servicer Expenses") from the date of this Agreement through the Servicing Transfer Date for each applicable LNFA Mortgage Loan to the extent that such Servicer Expenses are incurred in accordance with standards approved by the Purchaser, including but not limited to, for example, approval for all proposed property liquidations and deed-in-lieu transactions and all proposed servicer advances over $2,500.  For the avoidance of doubt, the Sellers shall remain responsible for the payment of any Servicing Expenses incurred and unpaid up to the date hereof.

8.2     The Sellers shall take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the related LNFA Mortgage Loans to the Purchaser, or its designee, including, but not limited to the following:

(a)     Notices to Obligors.  Within two (2) Business Days after the Closing Date, the Company shall prepare, and transmit to each Obligor on each Loan that is part of the Purchased Assets, a notice in a form satisfying the requirements, as applicable, of Regulation X of the Department of Housing and Urban Development under the Real Estate Settlement Procedures Act, as well as all other applicable legal requirements, and reasonably acceptable to the Purchaser, to the effect that the Loan and, as applicable, the servicing of the Loan, will be transferred to the Purchaser and directing that payments be made after the Closing Date to the Purchaser at any address of the Purchaser specified by the Purchaser, with the Purchaser's name as payee on any checks or other instruments used to make such payments.  With respect to all such Loans on which payment notices or coupon books have been issued, the Purchaser shall have the opportunity to prepare new payment notices or coupon books reflecting the name and address of the Purchaser as the Person to whom and the place at which payments are to be made and to have such new payment notices or coupon books included with the notices prepared and transmitted by the Company.

(b)     Notice to Taxing Authorities and Insurance Companies.  As soon as practicable following the Closing Date, transmit to the applicable taxing authorities and insurance companies (including primary mortgage insurance policy insurers, if applicable) and/or agents, notification of the transfer of the servicing to the Purchaser, or its designee, and instructions

17

to deliver all notices, tax bills and insurance statements, as the case may be, to the Purchaser from and after the Servicing Transfer Date.

8.3     The Sellers shall provide or cause to be provided to the Purchaser the following:

(a)     Delivery of Servicing Records.  On the Servicing Transfer Date, the Sellers shall ship via overnight courier to the Purchaser, or its designee, all servicing records, the servicing File and the mortgage File in the possession of Sellers or their agents relating to each related LNFA Mortgage Loan including, if contained in Debtors' records, the appraisal, loan application and underwriting file obtained in connection with the origination of the related LNFA Mortgage Loan, as well as a payment history for the related LNFA Mortgage Loan for the past five (5) years or in the case of a LNFA Mortgage Loan originated within the past five (5) years, since the origination of such LNFA Mortgage Loan, and all other related documents in the servicing File not transferred to the Purchaser as of the Closing Date including hazard or flood insurance policies, loan applications, closing statements, credit reports, appraisals, surveys, disclosure statements, sales contracts, tax and insurance receipts, verification statements delivered by the borrowers.

(b)     Escrow Payments.  No later than five (5) Business Days following the Servicing Transfer Date, provide the Purchaser, or its designee, with an accounting statement of the escrow and other payments, for taxes, governmental assessments, insurance premiums, security deposits, water, sewer and municipal charges, and suspense balances and loss.

(c)     Payoffs and Assumptions.  On the Servicing Transfer Date, provide to the Purchaser, or its designee, copies of all assumption and payoff statements generated with respect to the LNFA Mortgage Loans from the period beginning from the Closing Date through the Servicing Transfer Date.

(d)     Payments Received After the Cut-off Date and Prior to the Closing Date. All payments received by the Sellers on any LNFA Mortgage Loan from the Cut-off Date through the Closing Date (the "Post Cut-off Date Collections") shall (i) be properly applied by the Sellers to the account of the particular Obligor, and (ii) be held for the benefit of the Purchaser and transferred to the Purchaser on the Servicing Transfer Date.  Any unapplied funds and suspense payments shall be transferred to the Purchaser on the Servicing Transfer Date and shall be applied by the Purchaser in accordance with the applicable LNFA Mortgage Loan requirements.

(e)     Payments Received After the Closing Date.  The amount of any payments received by the Sellers after the Closing Date with respect to the LNFA Mortgage Loans shall (i) in the case of payments received prior to the Servicing Transfer Date, be properly applied by the Sellers to the account

18

of the related Obligor and forwarded to the Purchaser or its designee on the Servicing Transfer Date and (ii) in the case of payments received within thirty (30) days of the Servicing Transfer Date, be forwarded to the Purchaser by overnight mail or courier on the date of receipt and (iii) in the case of payments received thereafter, be forwarded to the Purchaser on a weekly basis for up to one hundred eighty (180) days following the Servicing Transfer Date (and if such payment is received by the Sellers for the purposes of a full payoff shall be forwarded to the Purchaser by courier or overnight mail within two (2) Business Days of receipt). The Sellers shall notify the Purchaser of the particulars of such payment, which notification requirements shall be satisfied if the Sellers forward with the payment sufficient information to permit appropriate processing of the payment by the Purchaser and shall provide necessary and appropriate legal application of such payments which shall include, but not be limited to, endorsement of such payment to the Purchaser or equivalent substitute payment with the particulars of the payment such as the account number, dollar amount, date received and any special application instructions.

(f)     Misapplied Payments.    Misapplied payments shall be processed as follows:

   (i)     All parties shall cooperate in correcting misapplication errors; and

   (ii)    The party receiving notice of a misapplied payment occurring prior to the Closing Date shall immediately notify the other party.

(g)     IRS Forms.    Filed as and when required by law, all IRS forms 1099, 1099A, 1098 or 1041 and K-1 in relation to the servicing and ownership of the LNFA Mortgage Loans for the portion of such year the LNFA Mortgage Loans were serviced by a Seller.

(h)     Payment Histories.    On the Servicing Transfer Date, the Seller shall provide to the Purchaser or its designee an electronic transmission of payment history for each LNFA Mortgage Loan for the past twelve (12) months.

## ARTICLE 9

## TERMINATION

9.1     Termination Prior to Closing.    This Agreement may be terminated prior to the Closing Date as follows:

(a)     by mutual written agreement of the Purchaser and the Company;

(b)     by the Purchaser or the Company, if there shall be in effect a Final Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement;

19

(c)    by the Purchaser (provided that the Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach of any of the representations or warranties of the Sellers or a material breach of any of the covenants set forth in this Agreement on the part of the Sellers, which breach is not cured within ten (10) Business Days following written notice to the Company;

(d)    by the Company (provided that none of the Sellers is then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach of any of the representations or warranties or a material breach of any of the covenants set forth in this Agreement on the part of the Purchaser, which breach is not cured within ten (10) Business Days following written notice to the Purchaser;

(e)    by the Purchaser if the Bidding Procedures Order, including the Bidding Procedures, is not entered by the Bankruptcy Court on or before April 10, 2007;

(f)    by the Purchaser or the Company, if the Sellers consummate a sale of all or a material portion of the Purchased Assets with a Third Party other than the Purchaser;

(g)    by the Purchaser, if the Company accepts a higher and better offer for the Purchased Assets in accordance with the Bankruptcy-Court approved Bidding Procedures; or

(h)    by the Purchaser, if the Closing has not occurred by May 18, 2007, provided such failure of the Closing to occur is not caused by a breach of this Agreement by the Purchaser.

9.2    <u>Break-Up Fee</u>. If this Agreement is terminated pursuant to Section 9.1(f) or (g), the Company and the Sellers shall, jointly and severally, pay to the Purchaser in immediately available funds a cash fee equal to $1,000,000 (the "<u>Break-Up Fee</u>"), such fee to be paid upon the closing of such sale to a Third Party other than the Purchaser. The Break-Up Fee shall constitute an administrative expense of the Sellers with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code until paid. The Parties hereby acknowledge that the amounts payable pursuant to this Section 9.2 are commercially reasonable and necessary to induce the Purchaser to enter into and consummate the transactions contemplated by this Agreement.

9.3    <u>Termination</u>. Upon any termination of this Agreement pursuant to Section 9.1, this Agreement shall be void and have no effect, without any liability on the part of any party hereto or any shareholders, directors or officers thereof; <u>provided</u> <u>however</u> that Section 9.2 hereof shall survive for all purposes.

20

## ARTICLE 10

## SURVIVAL OF REPRESENTATIONS AND WARRANTIES

10.1    <u>Survival of Representations</u>.  The respective representations and warranties of the Parties contained herein and in any Transaction Document or in any other agreement, certificate, instrument or other document delivered pursuant thereto or hereto shall survive until the one (1) year anniversary of the Closing Date.

10.2    Except as otherwise provided herein, the respective covenants of the Parties contained in this Agreement, the Transaction Documents or in any other agreement, certificate, instrument or other document delivered pursuant hereto or thereto shall survive the Closing.

## ARTICLE 11

## NOTICES

All demands, notices and communications under this Agreement shall be in writing and shall be deemed to have been duly given if (i) mailed by registered or certified mail, return receipt requested or by overnight delivery service, addressed to the appropriate party hereto at the address set forth below or (ii) transmitted by facsimile transmission or by electronic mail with acknowledgment, to the appropriate party hereto at the facsimile number or the electronic mail address set forth below.  Any such demand, notice or communication shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced by the date noted on the return receipt or overnight delivery receipt).

        (i)    Sellers

            New Century Financial Corporation
            18400 Von Karman, Suite 1000
            Irvine, CA  92612
            Facsimile: (949) 440-7035
            Attn: _____

      with a copy to:

            Thatcher Proffitt & Wood LLP
            2 World Financial Center
            New York, NY  10281
            Facsimile: (212) 9120-2751
            Attention:  Richard Horowitz

            O'Melveny & Myers LLP
            275 Battery Street, Suite 2600
            San Francisco, CA  94111
            Facsimile: (415) 984-8701
            Attention:  Suzanne Uhland, Esq.
                     C. Brophy Christensen, Esq.

21

(ii)    Purchaser

Greenwich Capital Financial Products, Inc.
600 Steamboat Road
Greenwich, CT  06830
Facsimile: (203) 422-4478
Attention:  Jon Stapleton

with a copy to:

Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, California 90017
Facsimile: (213) 680-8500
Attention:  Bennett L. Spiegel, Esq.
Shirley S. Cho, Esq.

## ARTICLE 12

## MISCELLANEOUS

12.1    Expenses.  Except as otherwise specifically provided in this Agreement, the Sellers and the Purchaser will each pay all costs and expenses incurred by each of them, or on their behalf respectively, in connection with the performance of this Agreement and the transactions contemplated hereby, including fees and expenses of their own financial consultants and counsel.

12.2    Amendment and Waiver.  This Agreement may be amended and any provision of this Agreement may be waived, provided that any such amendment or waiver shall be binding upon a Party hereto only if such amendment or waiver is set forth in a writing executed by such Party.  No course of dealing between or among any persons having any interest in this Agreement shall be deemed effective to modify, amend or discharge any part of this Agreement or any rights or obligations of any Party hereto under or by reason of this Agreement.

12.3    Binding Agreement.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.   Neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by the Sellers without the prior written consent of the Purchaser or by the Purchaser without the prior written consent of the Sellers.

12.4    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

12.5    Construction.  The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction

22

shall be applied against any Person. Any reference to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context otherwise requires. The word "including" shall mean "including without limitation."

12.6    Captions. The captions used in this Agreement are for convenience of reference only and do not constitute a part of this Agreement and shall not be deemed to limit, characterize or in any way affect any provision of this Agreement, and all provisions of this Agreement shall be enforced and construed as if no caption had been used in this Agreement.

12.7    Entire Agreement. The annexes, exhibits and schedules identified in this Agreement are incorporated herein by reference. This Agreement and the documents referred to herein (including the Confidentiality Agreement) contain the entire agreement between the Parties and supersede any prior understandings, agreements or representations by or between the Parties, written or oral, which may have related to the subject matter hereof in any way.

12.8    Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

12.9    Governing Law. All questions concerning the construction, validity and interpretation of this Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York, without giving effect to any choice of law or conflict of law provision (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

12.10    Parties in Interest. Nothing in this Agreement, express or implied, is intended to confer on any Person other than the Parties and their respective successors and assigns any rights or remedies under or by virtue of this Agreement.

12.11    Consent to Jurisdiction. THE PARTIES AGREE THAT JURISDICTION AND VENUE IN ANY ACTION BROUGHT BY ANY PARTY PURSUANT TO THIS AGREEMENT SHALL PROPERLY (BUT NOT EXCLUSIVELY) LIE IN ANY FEDERAL OR STATE COURT LOCATED IN NEW YORK, NEW YORK AND IN THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY WITH RESPECT TO SUCH ACTION. THE PARTIES IRREVOCABLY AGREE THAT VENUE WOULD BE PROPER IN SUCH COURT, AND HEREBY WAIVE ANY OBJECTION THAT SUCH COURT IS AN IMPROPER OR INCONVENIENT FORUM FOR THE RESOLUTION OF SUCH ACTION. THE PARTIES FURTHER AGREE THAT THE MAILING BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, OF ANY PROCESS REQUIRED BY ANY SUCH COURT SHALL CONSTITUTE VALID AND LAWFUL SERVICE OF PROCESS AGAINST THEM, WITHOUT NECESSITY FOR SERVICE BY ANY OTHER MEANS PROVIDED BY STATUTE OR RULE OF COURT.

12.12    Delivery by Facsimile. This Agreement and any Transaction Document, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile

23

machine, shall be treated in all manner and respects as an original Contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. At the request of any Party hereto or to any such Contract, each other Party hereto or thereto shall re-execute original forms thereof and deliver them to all other parties. No Party hereto or to any such Contract shall raise the use of a facsimile machine or electronic mail to deliver a signature or the fact that any signature or Contract was transmitted or communicated through the use of a facsimile machine or electronic mail as a defense to the formation of a Contract and each such Party forever waives any such defense.

12.13 <u>Disclosure Schedules</u>. All schedules attached hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. The description or listing of a matter, event or thing within the schedules (whether in response for a description or listing of material items or otherwise) shall not be deemed an admission or acknowledgment that such matter, event or thing is "material" for any purpose. In addition, matters reflected in the schedules are not necessarily limited to matters required by this Agreement to be reflected in such schedules. Such additional matters are set forth for informational purposes only and do not necessarily include other matters of a similar nature.

24

IN WITNESS WHEREOF, the Sellers and the Purchaser have executed this Agreement under seal by their respective authorized officers as of the date first above written.

**BY THE SELLERS:**

NEW CENTURY FINANCIAL CORPORATION

Name: Stergios Theologides
Title: EVP & General Counsel

**BY THE PURCHASER:**

GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.

Name:
Title:

IN WITNESS WHEREOF, the Sellers and the Purchaser have executed this
Agreement under seal by their respective authorized officers as of the date first above written.

**BY THE SELLERS:**

NEW CENTURY FINANCIAL
CORPORATION

_____

Name:
Title:

**BY THE PURCHASER:**

GREENWICH CAPITAL FINANCIAL
PRODUCTS, INC.

_____

Name: Jonathan Stapleton
Title:    Senior Vice President

## EXHIBIT A

Bidding Procedures Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | **Re: Docket No. __** |
| | : | |

### ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH AUCTION OF CERTAIN ASSETS, (B) SCHEDULING HEARING TO CONSIDER PROPOSED SALE OF CERTAIN ASSETS AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF

This matter coming before the Court on the Emergency Motion for (i) an Order

(a) Approving Bidding Procedures and Bid Protections in Connection With Auction of Certain

Assets, (b) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving

Form and Manner of Notice Thereof and (c) Granting Related Relief and (ii) an Order (a)

Approving the Proposed Sale and (b) Granting Related Relief (the "Bidding Procedures

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O Corp., a California corporation; New Century R E O II Corp., a California corporation; New Century R E O III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P , a Delaware limited partnership.

Motion")[2], filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); after due deliberation and sufficient cause appearing, it is hereby

### FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over the Bidding Procedures Motion pursuant to 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this proceeding and the Bidding Procedures Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Due and proper notice of the Bidding Procedures Motion has been given and no further notice is required.

C.    The Bidding Procedures, substantially in the form annexed hereto as Exhibit A, are fair, reasonable and appropriate and are designed to maximize the recovery of the Purchased Assets.

D.    The Debtors have demonstrated that the payment of the Break-Up Fee to Greenwich Capital Financial Products, Inc. (the "Purchaser" or "Stalking Horse Bidder"), as set forth in the Bidding Procedures Motion and the Asset Purchase Agreement with Purchaser (the "APA"), is supported by a compelling and sound business justification and is in the best interests of the Debtors and their respective estates pursuant to section 363 of the Bankruptcy Code because, among other things:

---

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Bidding Procedures Motion or the APA

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

(i)  the break-up fee in the amount of $1,000,000, i.e., 2.0% of the Purchase Price,

(the "Break-Up Fee") is the product of arm's-length, good-faith negotiations

among the Selling Debtors and Purchaser;

(ii)  the Break-Up Fee is a material component of, and condition to, the

Purchaser's offer for the Purchased Assets;

(iii)  approval of the Break-Up Fee will encourage fair and competitive bidding by

enabling the Debtors to file and serve notice of a motion to approve the sale of the

Purchased Assets to Purchaser and thereby to set a floor on bidding while

subjecting Purchaser's offer to a competitive bidding process through the auction

process; and

(iv)  the amount of the Break-Up Fee is fair and reasonable under the

circumstances because it is equal to 2.0% of the anticipated sale price for the

Purchased Assets.

     E.     The Debtors' proposed notice of the Sale, Sale Hearing, Auction, and

Bidding Procedures as set forth in the Sale Notice attached hereto as Exhibit B (the "Sale

Notice") is reasonably calculated to provide all interested parties with timely and proper notice

of the Sale, Sale Hearing, Auction, and Bidding Procedures.

     F.     The entry of this Order is in the best interests of the Debtors and their

estates, creditors and interest holders; and it is therefore

**ORDERED THAT:**

     1.     The Bidding Procedures Motion is approved on the terms set forth herein.

3

2.    All objections to the Bidding Procedures Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.    The Bidding Procedures, substantially in the form attached hereto as Exhibit A, are approved in all respects. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.    The Bid Deadline upon which date and time all Qualified Bids must be submitted as set forth in the Bidding Procedures is 5:00 p.m. (Prevailing Eastern Time) on April 26, 2007.

5.    If a Qualifying Bid is received other than the APA, the Debtors shall conduct an Auction for the Purchased Assets in accordance with the Bidding Procedures. The Auction shall take place at 10:00 a.m. (Prevailing Eastern Time), during the week of April 30, 2007, at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, or at such other time, date or place as may be designated by the Debtors. Only parties submitting Qualified Bids and their advisors, and representatives of the Official Committee of Unsecured Creditors, are entitled to attend the Auction.

6.    The APA is a Qualified Bid and Purchaser is a Qualified Bidder for all purposes.

## Break-Up Fee

7.    In consideration of the Purchaser's entry into the APA and the time and expense that the Purchaser has spent and incurred in connection with the negotiation of the APA, as well as for the risk associated with acting as the stalking horse, and in recognition of the benefits which it provides Sellers in seeking to sell the Purchased Assets for the highest and best

4

offer at the Auction, Sellers agree that Sellers shall pay the Purchaser the Break-Up Fee in cash by Sellers to Purchaser if Sellers consummate a sale of all or a material portion of the Purchased Assets with a third party other than Purchaser. The Break-Up Fee shall be paid as an administrative expense of the Sellers with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code. The Break-Up Fee shall survive termination of the APA and entry of the Bidding Procedures Order by the Bankruptcy Court.

8.    The Debtors are authorized to take all necessary actions pursuant to the terms of the APA and Bidding Procedures to pay the Break-Up Fee to Purchaser should it become due and payable, and are authorized to pay such Break-Up Fee without further Order of the Court.

9.    Solely for the purposes of determining a Successful Bid, any overbid submitted by Purchaser shall be deemed to include the full amount of the Break-Up Fee potentially payable by the Debtors.

10.    The following provisions of the APA regarding payments to Purchaser, are approved and the Debtors are authorized and directed to perform thereunder as applicable: (i) the entirety of Article 9, entitled "Termination" and (ii) Section 9.2 entitled "Break-Up Fee."

### The Sale Hearing and Notice Thereof

11.    The Sale Hearing to approve the Successful Bid shall be held before this Court at _____ __.m. (Prevailing Eastern Time), on _____, 2007, or such other date and time as may be convenient to the Court, or as may be announced at the Sale Hearing without further notice.

5

12.    The form of the notice of the Sale Hearing attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>") is approved in all respects. The Debtors shall serve the Sale Notice by first class mail, postage prepaid, no later than three days after entry of this Order to: (i) all parties known or reasonably believed to have asserted a Lien in the Purchased Assets; (ii) all state or federal governmental agencies having jurisdiction over the Purchased Assets; (iii) relevant entities that have issued a license or permit to the Selling Debtors; and (iv) all creditors of the Selling Debtors listed on the master mailing matrix.

13.    The Debtors shall publish the Sale Notice once in the national edition of the <u>Wall Street Journal</u> as soon as practicable after entry of this Order.

14.    Objections, if any, to the sale of the Purchased Assets shall be filed on before _____, 2007 at 4:00 p.m. (Prevailing Eastern Time) with a courtesy copy to the Court and served on (i) counsel to the Debtors, O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Attention: Suzzanne Uhland, Esq. and O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071, Attention: Ben H. Logan, Esq.; (ii) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551 Wilmington, Delaware 19899, Attention Mark D. Collins, Esq.; (iii) counsel to the Purchaser, Kirkland & Ellis LLP, 777 South Figueroa Street, Los Angeles, California 90017, Attention: Shirley S. Cho and Pachulski Stang Ziehl Young Jones & Weintraub, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899, Attention: Laura Davis Jones, Esq.; (iv) counsel to the Official Committee of Unsecured Creditors; and (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801. Only those objections that are timely filed, served and received will be considered by the Court at the Sale Hearing.

## Miscellaneous

15.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

16.    Notwithstanding the possible applicability of Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of effectiveness or execution of this Order.

Dated: _____ , 2007
      Wilmington, Delaware

      _____
      UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**BIDDING PROCEDURES**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Re: Docket No. __** |
| | : | |

## BIDDING PROCEDURES FOR THE SALE OF CERTAIN LOANS AND RESIDUALS

The following bidding procedures, which were approved by order of the Bankruptcy Court dated April __, 2007 (the "Bidding Procedures") shall govern the auction process for the LNFA Mortgage Loans and Residuals[2] (the "Purchased Assets") as set forth in the Asset Purchase Agreement between New Century Financial Corporation, the Selling Subsidiaries Named Herein and Greenwich Capital Financial Products, Inc. Dated as of April 2 , 2007 (the "APA"). The Sellers will seek entry of an order from the Bankruptcy Court authorizing and approving the sale of the Purchased Assets free and clear of liens, claims, and encumbrances to Greenwich Capital Financial Products, Inc., or its designee (the "Purchaser") or such other Successful Bidder (defined below) as may be made at the Auction (defined below).

1.    Approvals. The proposed sale shall in all respects be subject to approval by the Bankruptcy Court and the compliance with (i) the applicable provisions of the Bankruptcy Code; (ii) the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (iii) other applicable rules and law; and (iv) the terms of the APA.

2.    Assets to be Sold. The Auction shall consist of all of the Purchased Assets free and clear of claims, interests, liens, and encumbrances.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R E O Corp , a California corporation; New Century R E O II Corp., a California corporation; New Century R E O III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APA.

3.    <u>Confidentiality Agreements</u>. Upon execution of a confidentiality agreement, in form and substance satisfactory to the Sellers, any party that wishes to conduct due diligence on the Purchased Assets may be granted access to all material information that has been or will be provided to the Purchaser and other bidders.

4.    <u>Determination of "Qualifying Bidder" Status</u>. In order to participate in the bidding process and be deemed a "Qualifying Bidder," each potential bidder other than the Purchaser must deliver to the Sellers, with copies to the Official Committee of Unsecured Creditors (the "OCUC"), a written and binding offer that:

(a)    states such bidder, on its own or together with other Qualified Bidder(s), offers to purchase all of the Purchased Assets upon the terms and conditions substantially as set forth in the APA;

(b)    states such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Purchased Assets on terms and conditions no less favorable to the Sellers than the terms and conditions contained in the APA;

(c)    be accompanied by a clean and duly executed APA (the "Modified APA") and a marked Modified APA reflecting the variations from the APA executed by the Purchaser;

(d)    states such bidder is financially capable of consummating the transactions contemplated by the Modified APA;

(e)    states such Qualifying Bidder's offer is irrevocable until the closing of the purchase of the Purchased Assets if such bidder is the Successful Bidder or the Back-up Bidder (as defined below);

(f)    contains such financial and other information that will allow the Sellers to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code (if applicable) in a form requested by the Sellers to allow the Sellers to serve within one business day after receipt of such information on counter-parties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

(g)    identifies with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing;

(h)    does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

2

(i)    fully discloses the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(j)    is likely to result in a value to the Sellers, in the Sellers' reasonable judgment after consultation with their financial and legal advisors, that is more than the aggregate of the value of the sum of: (A) the Purchase Price of $50,000,000, plus (B) the amount of the Break-Up Fee or $500,000; plus (C) $500,000;

(k)    (i) does not contain any due diligence or financing contingencies of any kind; and (ii) contains evidence that the bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Purchased Assets, which evidence is reasonably satisfactory to the Sellers;

(l)    includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA; and

(m)    is accompanied by a cash deposit of at least $1,000,000 (the "Good Faith Deposit").

A competing bid meeting the above requirements shall constitute a "Qualifying Bid" and such bidder shall be a "Qualifying Bidder." The Sellers may aggregate separate bids from Qualified Bidders to create a Qualified Bid. The Sellers shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 5:00 p.m. (prevailing Eastern time) on April 30, 2007. The Purchaser is deemed a Qualifying Bidder and the APA constitutes a Qualifying Bid for all purposes.

5.    Bid Deadline. All Qualified Bids must be submitted no later than 5:00 p.m. (prevailing Eastern time) on April 26, 2007 (the "Bid Deadline") to:

(i)    Sellers

Lazard Freres & Co. LLC
30 Rockefeller Plaza
New York, NY 10020
Facsimile:  (212) 830-3647
Email:  Evan.Geller@lazard.com
Attention:    Evan Geller

with a copy to:

3

O'Melveny & Myers LLP
275 Battery Street, Suite 2600
San Francisco, California 94111
Facsimile: (415) 984-8701
Email: bchristensen@omm.com
Attention:   Suzzanne Uhland, Esq.
             C. Brophy Christensen, Esq.

-and-

Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899
Facsimile: (302) 651-7701
Email: ramos@rlf.com
Attention:      Mark D. Collins, Esq.
                Marcos A. Ramos, Esq.

(ii)     Greenwich Capital

Greenwich Capital Financial Products, Inc.
600 Steamboat Road
Greenwich, CT  06830
Facsimile: (203) 422-4478
Attention: Jon Stapleton

with a copy to:

Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, California 90017
Facsimile: (213) 680-8500
Attention:   Bennett L. Spiegel, Esq.
             Shirley S. Cho, Esq.

(iv)     Official Committee of Unsecured Creditors

[to be determined]

     6.    <u>No Qualifying Bids</u>. If no timely, conforming Qualifying Bids are submitted by the Bid Deadline, the Sellers shall not hold an Auction and instead shall request at the Sale Hearing that the Court approve the APA with the Purchaser.

4

7.    Auction. In the event that the Sellers timely receive one or more Qualifying Bids other than the APA, the Sellers shall conduct an auction with respect to the Purchased Assets (the "Auction"). The Auction will take place starting on a date and at a time during the week of April 30, 2007 selected by the Sellers, which date and time will be identified in the notice identifying the Qualifying Bidders. The Auction will be conducted at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, or such other location as designated by the Debtors in a notice to all Qualified Bidders. The Auction shall be governed by the following procedures:

(a)    Only representatives of the Sellers, Purchaser, Qualifying Bidders, and the OCUC shall be entitled to be present at the Auction;

(b)    Only the Purchaser and Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

(c)    Purchaser may make a credit bid at the Auction pursuant to section 363(k) of the Bankruptcy Code and may credit bid the amount of the Breakup Fee at the Auction;

(d)    Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(e)    The Purchaser and the Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

(f)    Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

(g)    Qualifying Bidders may then submit successive bids in increments of at least $100,000 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $100,000 higher than the previous bid;

(h)    All Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the APA or Modified APA, as applicable, at the Auction; and

(i)    The Auction will be conducted so that each Qualified Bidder will be informed of the terms of the previous bid;

(j)    The Auction shall continue until there is only one offer that the Sellers determine, subject to Court approval, is the highest and best offer from among the Qualifying Bidders and the Purchaser submitted at the Auction (the "Successful Bid"). In making this decision, the Sellers may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the APA requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser,

5

as set forth in the applicable Modified APA. For purposes of determining the Successful Bid, any overbid submitted by Purchaser shall be deemed to include the full amount of the Breakup Fee. Within three days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. Bids made after the close of the Auction shall not be considered by the Court.

8.    Back-Up Bidder and Return of Deposits. If an Auction is conducted, the party with the next highest or otherwise best Qualifying Bid, as determined by the Sellers in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-up Bidder") and keep such bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern time) on the third business day following the conclusion of the Auction or the closing of the sale transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder will be deemed to be the new Successful Bid, and the Sellers will be authorized, but not required, to consummate the Sale with the Back-up Bidder without further order of the Bankruptcy Court.

Except as otherwise provided herein, the Good Faith Deposits shall be returned to each bidder not selected by the Sellers as the Successful Bidder or the Back-up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-up Bidder shall be held by the Sellers until the earlier of _____, 2007 or 24 hours after the closing of the sale transaction with the Successful Bidder.

9.    Sale Hearing. The Successful Bid (or the APA, if no Qualifying Bid other than that of the Purchaser is received or accepted) will be subject to approval by the Bankruptcy Court. Please be advised that the hearing to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Hearing") will take place on _____, 2007 at __:__ _.m. (prevailing Eastern time), or at such time thereafter as counsel may be heard, before the Honorable _____, United States Bankruptcy Court, District of Delaware. The Sale Hearing may be adjourned with the consent of the Successful Bidder from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

10.    Payment Of Breakup Fee. In consideration of the Purchaser's entry into the APA and the time and expenses that the Purchaser has spent and incurred in connection with the negotiation of the APA, as well as for the risk associated with acting as the stalking horse, and in recognition of the benefits which it provides Sellers in seeking to sell the Purchased Assets for the highest and best offer at the Auction, Sellers agree that Sellers shall pay the Purchaser the "Breakup Fee" as set forth in the APA. The Breakup Fee shall be paid as an administrative expense of the Sellers with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code. The Sellers hereby acknowledge that the Breakup Fee shall survive termination of the APA and entry of the Bidding

6

Procedures Order by the Bankruptcy Court shall bind all Sellers' senior secured lenders to the treatment of the Breakup Fee.

**EXHIBIT B**

Sale Notice

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEW CENTURY TRS HOLDINGS, INC., | ) | Case No. 07-10416 (KJC) |
| a Delaware corporation, et al.,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors | ) | |

## NOTICE OF SALE HEARING

      PLEASE BE ADVISED that the certain of the above captioned debtor and debtors in possession (the "Debtors") have entered into an asset purchase agreement (the "APA") to sell the Purchased Assets[2] to Greenwich Capital Financial Products, Inc ("Purchaser" or "Stalking Horse Bidder"), as more fully set forth in the Debtors' motion filed with the Bankruptcy Court on April 2, 2007 (the "Motion") for orders (i) approving bidding procedures and bid protections in connection with the Auction of the Purchased Assets and (ii) approving the APA  The Debtors seek to sell to Purchaser the Purchased Assets free and clear or any claims, liens, interests and/or other encumbrances pursuant to section 363(f) of title 11 of the United States Code

      PLEASE BE FURTHER ADVISED that on April __, 2007, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") approving the bidding procedures (the "Bidding Procedures"), which set key dates and times relating to the sale of the Purchased Assets. *All interested bidders should carefully read the Bidding Procedures*. To the extent there are any inconsistencies between the Bidding Procedures and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

      PLEASE BE FURTHER ADVISED that, pursuant to the Bidding Procedures, an Auction of the Purchased Assets will take place starting on a date and at a time during the week of April 30, 2007 selected by the Sellers, which date and time will be identified in the notice identifying the Qualifying Bidders. The Auction will be conducted at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, or such other date, time or location as designated by the Debtors in a notice to all Qualified Bidders. Only representatives of the Official Committee of Unsecured Creditors and Qualified Bidders, as defined in the Bidding Procedures, and their advisors are permitted to attend and bid at the Auction

      PLEASE BE FURTHER ADVISED that, pursuant to the Bidding Procedures, all Qualified Bids must be submitted no later than 5:00 p.m. (prevailing Eastern time) on April 26, 2007 (the "Bid Deadline") and served on the parties indicated in the Bidding Procedures and comply with all requirements set forth in the Bidding Procedures in order to become a Qualified Bid

      PLEASE BE FURTHER ADVISED that the hearing to approve any Qualified Bid accepted by the Debtors at the Auction and sale of the Purchased Assets will be held at _____ a m (Prevailing Eastern Time), on _____, 2007, in the United States District Court for the District of Delaware, located at 844 King Street, Wilmington, Delaware 19801, or at such time thereafter as counsel may be heard or at such time as the Bankruptcy Court may determine  Any objection to the proposed sale must set forth, in writing, with particularity, the grounds for such objection or position and must be filed with the Bankruptcy Court and served in such a manner that it is underlined actually received on or before 4:00 p.m. (Prevailing Eastern Time), on _____, 2007. Any objection not conforming to the foregoing will not be considered by the Bankruptcy Court.

      PLEASE BE FURTHER ADVISED that if the sale of the Purchased Assets is approved any party that believes it may have a claim, lien, or other interest or encumbrance against, on, in or otherwise relating to any of the assets shall be forever barred from enforcing such claim, lien, interest or other encumbrance against Purchaser or such other Successful Bidder as the Selling Debtors may choose at the Auction

      PLEASE BE FURTHER ADVISED that, all requests for information concerning the sale of the Purchased Assets should be directed to the undersigned counsel for the Debtors.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R E O Corp, a California corporation; New Century R E O II Corp, a California corporation; New Century R E O III Corp, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L P, a Delaware limited partnership

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Bidding Procedures Motion

Wilmington, Delaware
Dated: April [\_\_], 2007

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Ben H. Logan
Suzzanne S. Uhland
Austin K. Barron
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

Counsel for the Debtors and Debtors in Possession

RLF1-3134257-1

## EXHIBIT B

Sale Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-[____] (___)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Re: Docket No. __** |
| | : | |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT BY AND AMONG
NEW CENTURY FINANCIAL CORPORATION, GREENWICH CAPITAL FINANCIAL
PRODUCTS, INC. AND THE OTHER PARTIES NAMED THEREIN,
(B) AUTHORIZING SALE OF CERTAIN LOANS AND RESIDUALS TO PURCHASER
OR ITS DESIGNEE(S), FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS AND (C) GRANTING RELATED RELIEF**

This matter coming before the Court on the Emergency Motion for (i) an Order

(a) Approving Bidding Procedures and Bid Protections in Connection With Auction of Certain

Assets, (b) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving

Form and Manner of Notice Thereof and (c) Granting Related Relief and (ii) an Order (a)

Approving the Proposed Sale and (b) Granting Related Relief (the "Motion") filed by the above-

captioned debtors and debtors in possession (collectively, the "Debtors"); and upon the Order of

this Court dated April __, 2007 (a) Approving Bidding Procedures and Bid Protections in

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT,
Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a
Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage
Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital
Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com,
Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a
California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership;
NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New
Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New
Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort
Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage,
Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a
Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a
Delaware limited partnership.

LA3:1131307.2

Connection With Auction of Certain Assets, (b) Scheduling Hearing to Consider Proposed Sale

of Certain Assets and Approving Form and Manner of Notice Thereof and (c) Granting Related

Relief (the "Bidding Procedures Order"); and a hearing having been held on May __, 2007 in

connection with the Motion (the "Sale Hearing"); and all parties in interest having been heard, or

having had the opportunity to be heard, regarding the Sale; and the Court having considered (x)

the Motion, (y) the objections to the Motion having been overruled on the merits with prejudice,

and (z) the arguments made and evidence proffered or adduced in support of approval of the Sale

at the Sale Hearing; and it appearing from the affidavits of service filed with the Court that due

and sufficient notice of the Motion and the relief granted by this Order, have been provided to all

parties affected thereby (the "Sale Notice"); and it further appearing that no other or further

notice hereof is required; and upon the Court record of these cases; and the Court having

received evidence in support of the approval of that certain the Asset Purchase Agreement

between certain of the Debtors and Greenwich Capital Financial Products, Inc. Dated as of April

2, 2007 (the "APA")[2] attached hereto as Exhibit A and such other agreements to be entered into

among the parties thereto as contemplated therein and the Sale; and it appearing that the relief

requested in the Motion and approved hereby is in the best interests of the Debtors, their estates,

creditors, and other parties-in-interest; and upon the record of the Sale Hearing and these chapter

11 cases including the decision of the Court to approve the Motion, APA, and Sale as reflected

on the record of the Sale Hearing; and after due deliberation and good and sufficient cause

appearing therefor, this Court hereby makes the following findings of fact and conclusions of

law:

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
APA (as defined herein) and the Sale Motion, and to the extent of any inconsistency, the APA shall govern.

I.    __FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]__:

        A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

        B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), the parties may consummate the Sale immediately upon entry of this Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

        C.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014 and in substantial compliance with the Bidding Procedures Order.

        D.    Actual written notice of the Sale Hearing, the Motion, and the Sale and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all parties in interest in these cases, including, but not limited to: (i) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (ii) counsel to the Administrative Agent for the Debtors' post-petition secured lenders; (iii) counsel to Purchaser; (iv) all Potential Bidders and any party who has expressed in writing to acquire the Purchased Assets; (v) the United States Trustee; (vi) any entity that has filed a notice of

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. _See_ Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the

appearance and demand for service of papers in these bankruptcy cases pursuant to Bankruptcy Rule 2002; (vii) all of the parties that have filed UCC-1 financing statements against the Debtors; (viii) all state or federal governmental agencies having jurisdiction over the Purchased Assets; (ix) relevant entities that have issued a license or permit to the Selling Debtors; and (x) all creditors of the Debtors listed on the master mailing matrix.

E.    The Sale Notice was published in the National Edition of the Wall Street Journal substantially in the form approved by the Bidding Procedures Order as soon as practicable after the approval of the Sale Notice.

F.    The Debtors have complied with all obligations to provide notice of the Motion, Auction, and Sale Hearing, required by the Bidding Procedures Order and such notice was good and sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, or the Sale is required.

G.    The disclosures made by the Debtors concerning the APA, the Sale and the Sale Hearing were good, complete and adequate.

H.    The Third Party Purchasers closing on the Closing Date are set forth on Exhibit B attached hereto and are deemed to be a Purchaser under the APA to the extent of their Purchased Assets and all references to Purchaser herein also include Third Party Purchasers.

I.    The Purchaser is not affiliated with the Debtors.

J.    The terms of the Sale, as set forth in the APA, are fair and reasonable under the circumstances of these chapter 11 cases.

K.    The Purchaser has negotiated the terms and conditions of the Sale in good faith and at arm's length, is entering into the Sale in good faith and is a good faith purchaser

---

Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order to the extent not inconsistent herewith.

within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale at any time after the entry of this Order, including immediately after its entry. The Court has found that the Purchaser has acted in good faith in all respects in connection with these chapter 11 cases and the Sale in that, among other things:

(1)    the Purchaser recognized that the Debtors were free to negotiate with any other party that expressed qualified interest in purchasing the Purchased Assets;

(2)    the Purchaser agreed to subject the APA to the competitive Bidding Procedures set forth in the Bidding Procedures Order;

(3)    the Purchaser in no way induced, caused, or required the commencement of the chapter 11 filings of the Debtors;

(4)    all payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser with the Selling Debtors in connection with the Sale have been disclosed;

(5)    there is no evidence that either Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction;

(6)    no common identity of directors or controlling stockholders exists between any of Purchaser and any of the Debtors; and

(7)    the negotiation and execution of the APA and all other aspects of the Sale were conducted in good faith.

L.    [No other Qualified Bid was received as of the Required Bid Deadline. Therefore, in accordance with the Bidding Procedures Order and the Bidding Procedures, no Auction was required or held.] or [The Auction was duly noticed and conducted in a non-collusive, fair, and good-faith manner in accordance with the Bidding Procedures.]

M.    The APA constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative. The Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Selling Debtors' business judgment.

N.    The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these Chapter 11 Cases. No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than Purchaser.

O.    The consideration provided for the Purchased Assets pursuant to the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

P.    The transfer of each of the Purchased Assets to Purchaser is or will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, encumbrances, offset rights, and other interests accruing, arising or relating to any time prior to the Closing Date.

Q.    The Debtors may sell the Purchased Assets free and clear of all Liens, encumbrances, offset rights, and other interests against the Debtors or their estates because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, encumbrances, offset rights or interests against the Debtors or their estates who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such encumbrances or interests who did object fall within one or more of the

other subsections of section 363(f) and are adequately protected by having their encumbrances or interests, if any, in each instance against the Debtors or their estates, attach to the cash proceeds of the Sale ultimately attributable to the property in which they allege an interest.

R.    The Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to a chapter 11 plan in that, among other things, the value of the Purchased Assets is extremely time-sensitive and the threatened continued erosion of these relationships, and that any sale taking place after the time contemplated by the parties would likely yield markedly less value than the Sale contemplated hereby.

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:

1.    The relief requested in the Motion is granted and approved as set forth in this Order, and the Sale contemplated thereby is hereby approved as set forth in this Order.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.    The APA, all other ancillary documents to the APA (including the Transaction Documents) and all of the terms and conditions thereof are hereby approved in their entirety. To the extent of any conflict or inconsistency between the provisions of this Order and the terms and conditions of the APA, as applicable, this Order shall govern and control.

4.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to Purchaser pursuant to and in accordance with the terms and conditions of the APA, (ii) close the Sale as contemplated in the APA and this

Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, and to take all further actions as may be reasonably requested in accordance with the APA by Purchaser as the case may be, for the purpose of assigning, transferring, granting, conveying, and conferring to Purchaser, or reducing to possession, the Purchased Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA or such other ancillary documents.

      5.     The terms and provisions of this Order shall be binding in all respects upon Purchaser, the Debtors and their estates, any trustees thereof, their estates, all creditors and shareholders of any of the Selling Debtors, all interested parties, and their respective successors and assigns, including, but not limited to, all non-debtor parties to the LNFA Mortgage Loans and Residuals.

      6.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to Purchaser upon the Closing Date and, as of such Closing Date, any such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and shall be free and clear of (a) all Liens and encumbrances, (b) all offset rights, and (c) all other interests, including without limitation, any and all Claims, obligations, demands, guaranties, options, debts, rights, contractual commitments, restrictions, and matters of any kind and nature, whether direct or indirect, monetary or non-monetary, absolute or contingent, matured or unmatured, liquidated or unliquidated, of, by or against the Debtors, their estates or such Purchased Assets, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, (i) claims and encumbrances that purport to give to any party a

right or option to effect any forfeiture, diminution, modification or termination of the interest of the Debtors in such Purchased Assets, (ii) claims and encumbrances in respect of taxes, or (iii) any claim, that Purchaser or any of their Affiliates is a successor to the Debtors arising under federal, state or local law, rule, regulation or at equity), with all such encumbrances and interests to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect that they now have as against such Purchased Assets.

7.      Purchaser shall have no liability or responsibility for any encumbrance, offset right or interest arising, accruing, or relating to a period prior to the Closing Date. All persons and entities holding Liens or interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, the transfer of the Purchased Assets to Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property, the Purchased Assets, such persons' or entities' Liens or interests in and to the Purchased Assets.

8.      On the Closing Date, each creditor of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release encumbrances, offset rights or interests on the Purchased Assets, if any, as provided for herein, as such encumbrances, offset rights, or interests may have been recorded or may otherwise exist.

9.      This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrar of certificates, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any of the Purchased Assets. On the Closing Date, all Liens, encumbrances, offset rights, or other interests against the Debtors' estates of record as of the date of this Order shall forthwith be removed and stricken as against the Purchased Assets, without further order of the Court or act of any party. Upon the Closing Date, the entities listed above in this paragraph are authorized and specifically directed to strike all such recorded Liens, encumbrances, offset rights or other interests against the Purchased Assets as provided for herein from their records, official and otherwise.

10.    Each and every federal, state, and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Purchased Assets to Purchaser and such agency or department may rely upon this Order in consummating the transactions contemplated by the APA.

11.    If any person or entity that has filed a financing statement, mortgage, mechanic's lien, lis pendens, or other document or agreement evidencing an encumbrance or interest in the Purchased Assets that are being transferred free and clear, as provided herein, of such encumbrance or interest, shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, a termination statement, instrument of satisfaction, release of all such encumbrances or interests which such person or entity has with respect to the Purchased Assets or otherwise, the Debtors or Purchaser are hereby authorized to execute and file such statement, instrument, release, or other document on behalf of such person or entity with respect to the Purchased Assets.

12.    All entities who are presently, or on or before the Closing Date may be, in possession of some or all of the Purchased Assets to be transferred as of such Closing Date are hereby directed to surrender possession of the Purchased Assets to Purchaser on the Closing Date at that entity's sole expense.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser, in each case in accordance with the terms of the APA and this Order.

14.     The Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets. The Purchaser shall not be liable for any claims against the Debtors, or any of their predecessors or affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the APA for the benefit of the holders of Liens. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in the Debtors, any of the Purchased Assets.

15.     The terms and provisions of the APA, and Transition Documents, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including the Debtors, any trustees thereof, their estates, their creditors, their shareholders, and all interested parties, administrative agencies, governmental units, secretaries of state, federal, state and local officials, including any such administrative or governmental authorities maintaining any authority relating to environmental, health, or safety laws, and their respective successors or assigns, and upon any persons asserting an encumbrance against or interest on any

of the Purchased Assets to be sold and assigned to Purchaser.

16.    Any amounts that become payable by the Debtors to Purchaser pursuant to the APA shall constitute administrative expenses of the Debtors' estates under sections 503(b) or 507(b) of the Bankruptcy Code with priority over all other administrative expenses and shall be paid by the Debtors in the time and manner provided for in the APA without further Court order.

17.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these chapter 11 cases, (ii) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (iii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the APA or the terms of this Order. Unless otherwise agreed to by Purchaser, the Debtors agree that (x) their obligations hereunder and under the APA shall not be discharged by the entry of an order confirming a chapter 11 plan of reorganization in any of the Debtors' chapter 11 cases and (y) the relief and protections granted to Purchaser pursuant to this Order shall not be affected in any manner by the entry of an order confirming a chapter 11 plan of reorganization in any of the Debtors' chapter 11 cases. This Order shall be binding upon and enforceable against, among others, the Debtors, their estates and any and all chapter 7 and chapter 11 trustees thereof.

18.    This Court retains jurisdiction, even after the closing of these chapter 11 cases, to:

    (a)    interpret, implement and enforce the terms and provisions of this Order and the terms of the APA, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

    (b)    protect Purchaser or any of the Purchased Assets against any of the encumbrances or other interests, as provided herein, including to enjoin

12

the commencement or continuation of any action seeking to impose successor liability;

(c)     enter orders in aid or furtherance of the Sale;

(d)     compel delivery of all Purchased Assets to Purchaser; and

(e)     re-open the Debtors' chapter 11 cases to enforce the provisions of this Order.

19.     Purchaser is not a joint employer, single-employer, co-employer, or successor employer with any of the Debtors by virtue of the APA, the consummation of the Sale, or the entry of this Order.

20.     Purchaser may consummate the Sale at any time after entry of the Order (including immediately thereafter) by waiving any and all closing conditions set forth in the APA that have not been satisfied and by proceeding to close the Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest.

21.     The Sale is undertaken by Purchaser in good faith (as that term is used in section 363(m) of the Bankruptcy Code), and Purchaser shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the Sale, even if such closing occurs immediately upon entry of this Order. Accordingly, the reversal or modification on appeal of the authorization to consummate the Sale provided herein shall not affect the validity of the Sale to Purchaser unless such authorization is duly stayed prior to closing of the Sale pending such appeal. Purchaser is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

22.     As of the date hereof, the Purchaser has joined the Third Party Purchasers on Exhibit B hereof as the purchaser of those Purchased Assets as may be more specifically set

forth in the agreement(s) between Purchaser and such Third Party Purchasers. Such Third Party Purchasers shall be entitled to the full benefits of this Order as if such Third Party Purchasers were the Purchaser herein to the extent of their respective Purchased Assets.

        23.    The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by the Parties and the Debtors in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is not material.

        24.    The provisions of this Order are non-severable and mutually dependent.

        25.    Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

Dated: Wilmington, Delaware
       April \_\_\_, 2007

       _____

       UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

## Asset Purchase Agreement

## EXHIBIT B

### Third Party Purchasers

1. TCIF, LLC, a Delaware Limited Liability Company

## EXHIBIT C

Form of Power of Attorney

Exhibit C - Page 1

## LIMITED POWER OF ATTORNEY FOR LNFA MORTGAGE LOANS

KNOW ALL MEN BY THESE PRESENTS, that THE SELLERS. (the "Sellers") for the sole and exclusive purpose of endorsing those certain LNFA Mortgage Loans set forth and described in that certain Asset Purchase Agreement effective DATE (hereinafter "Agreement"), between the Sellers and Greenwich Capital Financial Products, Inc. [(the "Purchaser")] [under which _____ was designated a Purchaser (hereinafter "Purchaser")] hereby names, constitutes and appoints Purchaser, or any of its authorized agents, employees or representatives, its duly authorized attorney and agent with limited power and authority to endorse the LNFA Mortgage Notes and assign any mortgages and/or deed of trust or real estate conveyances in the Sellers' name (or in the name of any of its affiliates whose assets may be included as financial assets) as its attorney-in-fact, and to do these acts incident to such Agreement referenced above, which the undersigned has had or was entitled to exercise as the owner of said LNFA Mortgage Loans as follows:

Pay to the order of:


Name:
Title:

EXECUTED on this the [ ]th day of [ ] 2007

[ ]


BY: _____
NAME:
TITLE:

STATE OF [ ]
COUNTY OF [ ]

This instrument was acknowledged before me on this the [ ]th day of [ ], 2007, on behalf of said corporation.


_____
Notary Public, State of [ ]


My Commission Expires_____

[POWER OF ATTORNEY RE RESIDUALS TO COME]

Exhibit C - Page 1