IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-10416 (KJC) |
| | Jointly Administered |
| Debtors. | Related to Doc. No. 8 |

**ORDER GRANTING MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION (A) AUTHORIZING THE CONTINUED USE OF THE DEBTORS' CENTRALIZED CASH MANAGEMENT SYSTEM, INCLUDING OPERATION OF SERVICER TRUST ACCOUNTS, (B) AUTHORIZING MAINTENANCE OF DEBTORS' EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (C) EXTENDING THE DEBTORS' TIME TO COMPLY WITH SECTION 345 OF THE BANKRUPTCY CODE**

This matter coming before the Court on the Motion of the Debtors and Debtors in Possession for an Order (a) Authorizing the Continued Use of the Debtors' Centralized Cash Management System, including the continued operation of trust accounts that are maintained by the Debtors as servicers for loans, (b) Authorizing Maintenance of Debtors' Existing Bank Accounts and Business Forms, and (c) Extending the Debtors' Time to Comply With Section 345 of the Bankruptcy Code (the "Motion"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); the Court having reviewed the Motion; the Court

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (c) notice of this Motion having been sufficient under the circumstances and (d) capitalized terms not otherwise defined herein have the meanings given to them in the Motion; and the Court having considered the Declarations of Taj Bindra and Holly Etlin in Support of Chapter 11 Petition and First-Day Relief; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Debtors are authorized and empowered to continue to manage their cash pursuant to the cash management system maintained by the Debtors immediately prior to the commencement of these chapter 11 cases.

3. The Debtors are directed to maintain records of all transfers within the cash management system so that all transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the commencement of these chapter 11 cases.

4. The Debtors are authorized, but not directed, to: (i) designate, maintain, and continue to use any or all of their existing Bank Accounts in the names and with the account numbers existing immediately prior to the commencement of the Debtors' chapter 11 cases; provided, however, that the Debtors may close certain of such bank accounts and open new debtor-in-possession accounts as may be necessary, in the Debtors' business judgment, to

facilitate the Debtors' chapter 11 cases; (ii) deposit funds in and withdraw funds from such accounts by all usual means including, without limitation, checks, wire transfers, automated clearinghouse transfers and other debits; and (iii) treat their prepetition bank accounts for all purposes as debtor-in-possession accounts.

5. All intercompany claims arising after the commencement of these chapter 11 cases, owed by one Debtor to another Debtor incurred in connection with the post-petition operation of the Debtors' Centralized Cash Management System shall be accorded priority as administrative expenses in these cases of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

6. All banks with which the Debtors maintained bank accounts as of the commencement of these chapter 11 cases are authorized and directed to continue to maintain, service and administer such Bank Accounts as accounts of a Debtor as debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, ACH files and other instructions and drafts drawn or directed on such Bank Accounts after the Petition Date by the holders, makers or other parties entitled to issue instructions with respect thereto or thereof, as the case may be; provided, however, that (except with respect to checks drawn on or amounts transferred from Custodial Accounts) any check, advice or other notification that a Debtor advises the bank to have been drawn or issued by the Debtor before the Petition Date may be honored by any bank only if specifically authorized by order of this Court.

7. Certain existing arrangements, described in the Motion, between Union Bank of California and one or more of the Debtors and the other banks at which any one or more of the Debtors maintain the Bank Accounts (each a "Bank" and collectively, the "Banks") for the

transfers to and from and the funding of the Bank Accounts shall continue to govern the postpetition cash management relationship between the applicable Debtor and each of the Banks. Provided, however, that nothing in this paragraph shall prevent the Debtors, the Banks and the DIP Lenders from entering into new arrangements or modifying the existing arrangements; *provided further that the Debtors shall provide notice of any new or modified arrangement to the United States Trustee.*

8. The Debtors and each of the Banks may, without further order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts with notice to the United States Trustee, DB and DB Trust, Wells Fargo, the affected Bank, the Debtors' DIP lenders and counsel to any official committee appointed in this case.

9. In the course of providing cash management services to the Debtors, each Bank is authorized, without further Order of this Court, to continue to deduct from the appropriate accounts of the Debtors, the Bank's customary fees and expenses associated with the nature of the deposit, cash management and custodial services rendered to the Debtor. The Debtors are further authorized to pay any customary prepetition banking and custody fees owed to any of their banks. Any such customary postpetition banking and custody fees will have administrative priority.

10. No later than the close of business on the 3rd business day following entry of this Order, the Debtors shall make reasonable efforts to provide to each applicable Bank a list (the "Prepetition Check List") of applicable checks (except with respect to checks drawn on or amounts transferred from Custodial Accounts) that have not been honored prior to the Petition Date (the "Prepetition Checks"), designate whether or not such Prepetition Checks should be honored pursuant to any orders entered by the Court, and that a Bank's reasonable reliance on the Prepetition Check List in connection with its honoring or dishonoring of a Prepetition Check,

4

as the case may be, shall not constitute a violation of this Order and shall have no liability for a prepetition check or other item drawn on any account that is the subject of this Order.

11. CB Richard Ellis Corporate Facilities Management, Inc. ("CBRE") is authorized to prepare and sign checks on Union Bank Account No. 9081001845 as directed by the Debtors pursuant to ordinary past business practices between CBRE and the Debtors.

12. Each Bank that maintains a disbursement account shall implement reasonable handling procedures designed to effectuate the terms of this Order, and no Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Order either (i) at the direction of the Debtors to honor such prepetition check or item, (ii) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed in violation of this Order and shall have no liability for a prepetition check or other item drawn on any account that is the subject of this Order.

13. The Debtors may continue to fund their businesses and operations, through the Bank Accounts.

14. The Debtors shall maintain records in accordance with their normal and customary practices reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Debtors' Cash Management System. In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be ascertained, traced and recorded properly on the applicable accounts.

15. Nothing contained herein shall prevent the Debtors from opening any new

bank accounts or closing any existing bank accounts as they may deem necessary and appropriate with notice to the United States Trustee, DB and DB Trust, Wells Fargo and to any official committee appointed in this case; provided, however, that any new account shall be with a bank that is insured by the Federal Deposit Insurance Corporation and organized under the laws of the United States or any state therein.

16. Each Bank is authorized to process, reverse and debit deposits which are returned by payor banks in the ordinary course of business, honor and pay all prepetition checks and transfers relating to the P&I Funds, the T&I Funds or otherwise made in the ordinary course of the loans serviced by the Debtors.

17. Subject to section 553 of the Bankruptcy Code, all banks at which the Bank Accounts are maintained are prohibited from offsetting, affecting or otherwise impeding any funds of the Debtors deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank against the Debtors that arose before the Petition Date, absent further order of the Court; provided, however, that the banks that are subject to this order shall not be deemed to have waived any such rights of set off and the Debtors shall not have waived any defenses to any such asserted rights of set off, so that all such rights are reserved. To the extent such right of set off existed on the Petition Date and at such later date as is appropriate such right is lost or diminished because of a lack of the Debtors' funds against which to set off, such banks shall be granted, as adequate protection therefore, an administrative expense allowed under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

18. The Debtors are authorized, but not directed, to maintain and continue to use any and all existing stationery, correspondence, business forms and checks printed from their

check printing software, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials and other business forms, substantially in the forms existing immediately prior to the commencement of these chapter 11 cases, without reference to the Debtors' status as debtors in possession.

19. The Debtors are authorized, but not directed, to continue utilizing their Cash Management System (as described in the Motion) to manage their cash and pay intercompany payables, including certain prepetition payables referenced in the Motion, in a manner consistent with the Debtors' prepetition practice.

20. The Debtors are authorized to continue operating as mortgage servicer in the ordinary course of business, including, but not limited to, operating the Custodial Accounts in connection with the Securitization Appointments and otherwise.

21. The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform Indemnification Obligations without further application to, or order of, this Court. In addition, the Debtors request that the parties to the securitization transactions be authorized, free and clear of any constraints imposed by the Bankruptcy Code, including, without limitation, Bankruptcy Code section 362, to continue any customary pre-petition practices of billing, reporting or otherwise making demands on each other as to amounts due and, to the extent that the relevant parties continue to agree to do so, of "netting" amounts concurrently due to and from such parties.

22. Pursuant sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, any

claims against any one or more of the Debtors arising from the post-petition performance of the Securitization Servicing Functions shall be afforded priority as an expense of administration.

23. Pursuant to section 553 of the Bankruptcy Code, to the extent any trustees under each Securitization Document are entitled to a right of set off, such right shall be preserved, including, without limitation, the right to recover from Debtors funds held by the trustee on the petition date and released to Debtors pursuant to the operative documents, and such counterparties shall not be deemed to have waived any such rights of set off against such released funds and the Debtors shall not have waived any defenses to any such asserted rights of set off, so that all such rights are reserved. To the extent such right of set off existed on the Petition Date and at such later date as is appropriate such right is lost or diminished because of a lack of the Debtors' funds against which to set off, such banks shall be granted, as adequate protection therefore, an administrative expense allowed under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

24. The trustees under each Securitization Document for each Securitization Appointment shall be afforded reasonable access, through their employees or designated agents, to Debtors' facilities, personnel and record-keeping systems in order to allow them to monitor Debtors' compliance with the Servicing Functions and to make contingency plans in the event that the Debtors seek to reject any of the Securitization Documents which may constitute executory contracts. The Debtors shall cause their servicing and accounting personnel to be reasonably available to, and to cooperate reasonably with, trustee representatives in the conduct of such efforts. Such access and cooperation shall be subject to reasonable limitations as to time, place and manner, as the Debtors may prescribe to avoid undue burden to their business operations. In addition, upon request of the trustee under any Securitization Document, the

servicing Debtor entity shall cause any other depositary institution (including Union Bank) holding funds or accounts established pursuant to, or in implementation of, the Securitization Documents, to afford such trustee reasonable electronic access to view and monitor transactions and balances in such accounts. The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trusts reimbursable under the Indemnification Obligations.

25. Nothing in this order shall be deemed to limit any right of any trustee under any Securitization Documents to seek relief from the automatic stay to terminate the Debtor servicing entities' Securitization Appointments in accordance with the Securitization Documents; nor shall anything in this order be deemed to waive or impair any right of the Debtors to oppose any such motion for relief from the stay.

26. Subject to paragraph 24 above, the Debtors shall continue to perform all Securitization Servicing Functions for each Securitization Appointment until the effective date of any rejection of the relevant servicing agreement under which such Securitization Appointment arises, which effective date shall be not earlier than thirty (30) days after the order approving such rejection becomes final unless the Court shortens such time, upon request by the Debtors after notice and an opportunity to be heard by the trustees under such Securitization Document, and a showing by the Debtors of adequate cause therefore and a balancing of the harm that will be suffered by the Debtors compared to the harm that will be suffered by the trustees under such Securitization Document, the underlying trusts or investors therein, as well as the underlying mortgagors (the "Termination Date"). All claims accruing prior to the Termination Date shall have the priority afforded by paragraph 21 above. Nothing in this Order shall impair the Debtors' rights to seek to assume or to assume and assign any servicing agreements.

27. The Debtors are granted an additional sixty (60) days from the Petition Date to come into compliance with section 345 of the Bankruptcy Code. If the Debtors determine that it is unable to comply with the requirements of section 345 within the sixty (60) day period, the Debtors may file a motion seeking authority to deviate from such requirements.

28. The Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

29. Nothing herein or in the Motion shall be deemed to constitute an assumption of an executory contract, whether under section 365 of the Bankruptcy Code or otherwise.

30. This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: April 3, 2007
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

31. No rights of any entity in connection with a contract or transaction of the kind listed in § 561(a) of the Bankruptcy Code, whatever they might or might not be, are affected by the entry of this Order.

32. The interim order approving the Debtors' motion for debtor in possession financing shall include a carve out from the liens granted to the DIP Lenders of up to $440,000 for the cash management fees and expenses of Union Bank of California.

33. All of the provisions of this Order which pertain to the Debtors' performance or transfer of servicing functions with respect to securitizations are equally applicable to the Debtors' performance or transfer of servicing functions with respect to the Repurchase Agreements.