# EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |
| | : | |

## ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 6006 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) APPROVING BIDDING PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT PAYABLE TO CARRINGTON MORTGAGE SERVICES, LLC FOR SALE OF DEBTORS' SERVICING BUSINESS; (II) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING AND APPROVING NOTICE THEREOF; AND (III) APPROVING PROCEDURES TO FIX CURE AMOUNTS RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND APPROVING NOTICE THEREOF

This matter coming before the Court on the Emergency Motion of Debtors and Debtors

in Possession for (I) An Order (A) Approving Bidding Procedures and Bid Protections in

Connection with the Proposed Sale of Assets used in their Loan Servicing Business,

(B) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and

Manner of Notice thereof and (C) Granting Related Relief and (II) An Order (A) Approving the

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Proposed Sale and (B) Granting Related Relief, dated _____ __, 2007 (the "<u>Motion</u>"), filed by

New Century Financial Corporation ("<u>New Century</u>") and its affiliated debtors and debtors-in-

possession (collectively, the "<u>Debtors</u>"), for an order pursuant to Sections 105(a), 363, 365, 503

and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004,

6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for

approval of (i) the sale of the Debtors' mortgage loan servicing business as more fully described

in the Motion (the "<u>Servicing Business</u>")[2] to Carrington Capital Management, LLC and

Carrington Mortgage Services, LLC (collectively, "<u>Carrington</u>") under the terms of the Asset

Purchase Agreement, dated as of April 2, 2007 between the Debtors and Carrington, as purchaser

(the "<u>APA</u>"), free and clear of liens, claims, encumbrances, and interests (except for the

Permitted Encumbrances (as such term is defined in the APA)), (ii) the institution of bidding

procedures (the "<u>Bidding Procedures</u>," attached hereto as Schedule 1), including a break-up fee

(as such term is defined in the APA, the "<u>Break-Up Fee</u>") and expense reimbursement (as such

term is defined in the APA, the "<u>Expense Reimbursement</u>") payable to Carrington, and (iii) the

assumption and assignment of certain executory contracts and unexpired leases of the Debtors

(the "<u>Assumed Contracts</u>") to Carrington or alternatively to the Successful Bidder for the

Servicing Business; and it appearing that notice of the Motion was good and sufficient under the

circumstances and that no other or further notice need be given; and the Court having reviewed

the Motion and all objections thereto, if any, and having heard the statements in support of the

relief requested therein at a hearing before the Court (the "<u>Hearing</u>"); and it appearing that entry

of this order is in the best interests of the Debtors, their estates, and all parties in interest; and

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

2

upon the Motion and the record of the Hearing and all other proceedings had before the Court; and after due deliberation and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Reasonable notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein have been afforded to all interested persons and entities.

D.    The Debtors, with the aid of their advisor, Lazard, have been marketing the Servicing Business for sale. The APA represents the best offer that the Debtors have received to date as a result of such marketing efforts.

E.    The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures in their entirety, including (i) the payment of the Break-Up Fee and Expense Reimbursement to Carrington (if necessary) in accordance with the terms of the APA, (ii) the scheduling of a bid deadline, auction, and sale hearing for the sale of the Servicing Business, and (iii) the establishment of procedures to fix the cure amounts (the "Cure Amounts") to be paid under section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

3

F.      The Break-Up Fee and Expense Reimbursement to be paid in accordance with the terms of the APA (i) are not tainted by self-dealing, (ii) were negotiated by the parties in good faith and at arm's length, (iii) will not hamper bidding for the Servicing Business, and (iv) are reasonable in light of the size and nature of the proposed transaction, the commitments that have been made by Carrington, and the efforts that have been and are expected to be expended by Carrington.  The Break-Up Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, commensurate to the real and substantial benefit conferred upon the Debtors' estates by Carrington, and necessary to induce Carrington to continue to pursue the purchase of the Servicing Business.

G.      The APA and its terms were negotiated by the Debtors and Carrington in good faith and in an arm's-length manner.

H.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the return from the proposed sale of the Servicing Business.

I.      The form and scope of Notices (as defined below) are reasonable and appropriate and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and Local Rules for the United States Bankruptcy Court for the District of Delaware.

J.      The entry of this order (the "Bidding Procedures Order") is in the best interests of the Debtors' estates and their creditors.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion, as it pertains to the matters addressed herein, is GRANTED.

4

2.      The Bidding Procedures, which are incorporated herein by reference, are approved and shall govern all bids and bid proceedings relating to the sale of the Servicing Business. Each of the Debtors is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.      Payment of the Break-Up Fee and the Expense Reimbursement under the circumstances set forth and in accordance with the terms of the APA is approved and directed, and Carrington shall be entitled to the Break-Up Fee and Expense Reimbursement to the extent set forth in the APA. If the APA is terminated for any reason and if payment of the Expense Reimbursement and/or the Break-Up Fee is triggered under the terms of the APA, each of the Debtors is authorized and directed, without need for any application, motion, or further order of this Court, to pay to Carrington the Break-Up Fee and Expense Reimbursement in the manner and upon the terms set forth in the APA. The Break-Up Fee and Expense Reimbursement shall be paid out of New Century's estate in the first instance, and any claim or claims of Carrington to payment of either or both of the Break-Up Fee and Expense Reimbursement shall constitute an allowed superpriority administrative expense claim arising in the chapter 11 case of New Century and each other Debtor under sections 105, 503(b) and 507(a)(2) of the Bankruptcy Code. If the Auction results in the selection of a Successful Bidder other than Carrington, New Century shall pay the Break-Up Fee and Expense Reimbursement to Carrington pursuant to the terms of the APA (to the extent not already paid) directly from the cash proceeds of any sale of the Servicing Business to such other Successful Bidder, regardless of any other competing liens on or claims to such sale proceeds.

4.      As further described in the Bidding Procedures, the deadline for submitting bids for the Servicing Business (the "Bid Deadline") shall be April 26, 2007, at 5:00

5

p.m. (prevailing Eastern Time). No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

       5.      In the event that New Century receives at least one Qualified Topping Bid (as defined in the Bidding Procedures) that it reasonably considers to be a higher and better bid than that represented by the APA, New Century, on behalf of the Debtors, shall conduct an auction for the Servicing Business (the "Auction") on a date or dates and time during the week of April 30, 2007, to be designated by the Debtors, or at such later time or place as New Century shall notify all Qualified Bidders who have submitted Qualified Topping Bids. In connection with the Auction, Carrington is a Qualified Bidder and the APA is a Qualified Bid.  In the event Carrington elects to participate in the Auction, Carrington shall not be required to submit any Good Faith Deposit(s) in addition to the Deposit Amount (as defined in the APA), if any, and the Deposit Amount shall be forfeited only in accordance with the terms of the APA. Carrington may include the Break-Up Fee and Expense Reimbursement in the amount of any subsequent bid that Carrington makes in the Auction, and, in the event Carrington is the Successful Bidder (as defined in the Bidding Procedures) as a result of a subsequent bid made at the Auction, Carrington shall be entitled to credit the amount of Break-Up Fee and Expense Reimbursement against the purchase price of such subsequent bid payable at Closing.

       6.      In the event that New Century does not receive, on or before the Bid Deadline, a Qualified Topping Bid that New Century reasonably considers to be a higher and better bid for the Servicing Business than that represented by the APA, New Century shall not conduct the Auction, but instead the Debtors shall seek approval of the sale of the Servicing

6

Business to Carrington pursuant to the provisions of the APA at the Sale Hearing (as such term is defined below).

       7.     The Court shall hold a sale hearing (the "Sale Hearing") commencing on [May 7], 2007 at __:00 _.m. (prevailing Eastern Time), at which time, the Court will consider approval of the sale of the Servicing Business, including the Debtors' assumption and assignment of any Assumed Contracts, to Carrington, or alternatively, in the event that an Auction was held pursuant to the provisions of this Bidding Procedures Order, to the Successful Bidder under the Bidding Procedures (the "Sale"). The Debtors shall mail notice of the Bid Deadline, Auction, and Sale Hearing (the "Notice of Bid Deadline, Auction, and Sale Hearing," substantially in the form attached hereto as Schedule 2) as provided in paragraph 14 herein.

       8.     New Century, on behalf of the Debtors, shall send notice (the "Notice of Assumption and Assignment"), substantially in the form attached hereto as Schedule 3 to all of the non-debtor counterparties to the Assumed Contracts. The Notice of Assumption and Assignment will set forth (i) the intent of the Debtors to assume the Assumed Contracts and assign them to Carrington or alternatively to the Successful Bidder under the Bidding Procedures, and (ii) the Cure Amounts associated with the assumption and assignment of each Assumed Contract.

       9.     All objections to the sale of the Servicing Business, the assumption and assignment of any Assumed Contracts, or the Cure Amounts, must be filed and served so as to be received by (i) the United States Trustee for the District of Delaware, Attention: _____, Esq.; (ii) O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Attention: Suzanne S. Uhland, Esq. and Brophy Christensen, Esq., and O'Melveny & Myers, LLP, 400 So. Hope Street, Los Angeles, CA 90071, Attention: Ben H. Logan, Esq. (attorneys for

7

the Debtors); (iii) Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, DE

19899, Attention:  Mark D. Collins, Esq. (Delaware counsel for the Debtors);  (iv)

_____, Attention: _____, Esq. (attorneys for the statutory committee of

unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee")); (v)

Mayer, Brown, Rowe & Maw LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attention:

Thomas S. Kiriakos, Esq. and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue,

Suite 1501, Wilmington, DE  19801, Attention: Steven K. Kortanek, Esq. (attorneys for

Carrington); and (vi) any parties entitled to notice under any case management procedures order,

if any, entered in these cases prior to the date of such objection; all so as to be received no later

than May 2, 2007 at 4:00 p.m. (prevailing Eastern Time).  All objections must state with

specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

10.    If an objection challenges a Cure Amount, the objection must set forth the

cure amount being claimed by the objecting party (the "Claimed Cure Amount") with

appropriate documentation in support thereof.  Upon receipt of an objection to a Cure Amount,

New Century, on behalf of the pertinent Debtor, may, in its sole discretion, hold an amount equal

to the Claimed Cure Amount in reserve pending further order of the Court or agreement between

the pertinent Debtor and the objecting party.  So long as New Century, on behalf of the pertinent

Debtor, holds the Claimed Cure Amount in reserve and otherwise satisfies the requirements for

assumption under section 365 of the Bankruptcy Code, the pertinent Debtor can, without further

delay, assume and assign the Assumed Contract that is the subject of an objection relating to that

Assumed Contract's Cure Amount.

11.    If no objection to the Cure Amount or the proposed assumption and

assignment of an Assumed Contract is timely filed and served, the pertinent Debtor may assume

8

and assign the Assumed Contract to Carrington, or subject to the next paragraph, alternatively to the Successful Bidder for the Servicing Business, and the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective non-debtor party to the Assumed Contract for all purposes in such Debtor's chapter 11 case. The respective non-debtor party shall be forever barred from objecting to the assumption and assignment of the relevant Assumed Contract and/or the Cure Amount, including, without limitation, the right to assert any condition to assignment and/or any additional cure or other amount with respect to their respective Assumed Contract.

12.    In the event that an Auction is held pursuant to the provisions of this Bidding Procedures Order and Carrington is not the Successful Bidder, non-debtor parties to the Assumed Contracts may raise objections to adequate assurance of future performance under the Assumed Contracts at the Sale Hearing.

13.    The effective date of any assumption and assignment of any Assumed Contract shall be the date of Closing (as defined in the APA). Accordingly, any Cure Amounts to be paid under any Assumed Contract will also be paid upon Closing or as soon thereafter as the Cure Amount is fixed by the Court or agreed upon by the parties.

14.    The notices described in subparagraphs (a)-(d) below (collectively, the "Notices") shall be good and sufficient, and no other or further notice shall be required if given as follows:

a.    New Century, on behalf of the Debtors, shall serve, within two (2) business days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight courier, electronic mail or same-day messenger delivery, copies of the Bidding Procedures Order upon: (i) the United States Trustee for the District of Delaware, (ii) the attorneys for the Creditors' Committee, (iii) the attorneys for Carrington, (iv) any party who, in the past three months, expressed in writing to New Century an interest in acquiring the Servicing Business, and who New Century and its representatives reasonably and in good faith determine potentially

9

have the desire and financial wherewithal to effectuate the transaction contemplated in the APA, (vii) all parties who are known to possess or assert a secured claim against the Servicing Business, (viii) the Internal Revenue Service, (ix) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, (x) all applicable state and local taxing authorities, and (xi) any parties entitled to notice under Local Rule 2002-1(b), or who are entitled to notice under any case management procedures order, if any, entered in these cases prior to the Mailing Deadline.

b.    On or before the Mailing Deadline, New Century (or its agent), on behalf of the Debtors, shall serve, by regular US mail, the Notice of Bid Deadline, Auction and Sale Hearing Notice upon each of the service parties identified in subparagraphs a. and c. of this paragraph.

c.    On or before the Mailing Deadline, New Century (or its agent) shall serve, by overnight courier, electronic mail or same-day messenger delivery, the Notice of Assumption and Assignment upon all known non-debtor parties to the Assumed Contracts.

d.    On the Mailing Deadline, or as soon as practicable thereafter, New Century will publish the Notice of Bid Deadline, Auction, and Sale Hearing in The Wall Street Journal (National Edition).

15.    The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the Debtors' assumption and assignment of any Assumed Contract, or the consummation and performance of the Sale as contemplated by the terms of the APA, or alternatively by the terms of the respective APA Markup with the Successful Bidder (including the transfer free and clear of all liens, claims, encumbrances, and interests (other than the Surviving Permitted Encumbrances (as such term is defined in the APA) of the Servicing Business transferred as part of the sale in the case of the assets of the Debtors).

16.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order. Each of the Debtors is hereby authorized and empowered to take such steps, expend such sums of money, and do such

10

other things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

17.    Notwithstanding the potential applicability of Bankruptcy Rule 6004(h) or other rule, this Bidding Procedures Order shall not be stayed for ten (10) days after the entry hereof and shall be effective and enforceable immediately upon signature hereof

Dated:    _____ __, 2007
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

11

**Schedule 1**

**Bidding Procedures**

**Bidding Procedures**

1. Set forth below are procedures (the "<u>Bidding Procedures</u>") to be used by New Century Financial Corporation ("<u>New Century</u>" and, together with its affiliated debtors and debtors-in-possession, the "<u>Debtors</u>"), for the sale of the certain of the Debtors' assets, including certain of the Debtors' mortgage service rights, all as more fully described in the Asset Purchase Agreement discussed below (the "<u>Servicing Business</u>"). The sale will be subject to the opportunity for competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2. By agreement dated as of April 2, 2007, New Century and certain of the other Debtors entered into an Asset Purchase Agreement (the "<u>APA</u>") with Carrington Capital Management, LLC and Carrington Mortgage Services, LLC (collectively, "<u>Carrington</u>"), pursuant to which Carrington agreed to purchase the Purchased Assets (as defined in the APA for (i) approximately $139 million, subject to adjustment as set forth in the APA and (ii) the assumption of the Assumed Liabilities (as defined in the APA). Each subsequent reference in these Bidding Procedures to the "Servicing Business" or the "Servicing Business Assets" in relation Carrington or to the APA shall be deemed to be reference to the Purchased Assets (as defined in the APA.)

3. On April 4, 2007, the Debtors filed a motion (the "<u>Motion</u>") pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code seeking approval of, among other things, (i) the sale of the Servicing Business, pursuant to the APA, free and clear of all liens, claims, and encumbrances, (ii) the institution of Bidding Procedures, including a break-up fee of 3% of the Purchase Price set forth in the APA (as such term is defined in the APA, the "<u>Break-Up Fee</u>") and expense reimbursement in an amount not to exceed $1,500,000.00 in the aggregate (as such term is defined in the APA, "<u>Expense Reimbursement</u>") payable to Carrington in certain circumstances, and (iii) the assumption of and assignment of certain executory contracts and unexpired leases of the Debtors in connection with and as part of such sale. On _____, 2007, the Bankruptcy Court entered an order approving the Bidding Procedures (the "<u>Bidding Procedures Order</u>"). The Bidding Procedures Order also provided that the Bankruptcy Court will conduct a hearing commencing on [May 7, 2007] at _____ .m (the "<u>Sale Hearing</u>") to approve the sale of the Servicing Business.

| **Assets to be Sold** |
| --- |

| 4. | The Debtors are offering the Servicing Business for sale. |
| --- | --- |
| 5. | Subject to Carrington's rights under the APA, New Century, on behalf of the Debtors, reserves the right to offer all or a portion of the Servicing Business for sale in any manner whatsoever as New Century, on behalf of the Debtors, determines will result in the highest or otherwise best price for the Servicing Business. Subject to Carrington's rights under the APA, the Debtors retain all rights to the Servicing Business that are not subject to a bid accepted by New Century, on behalf of the Debtors, and approved by the Bankruptcy Court at the Sale Hearing. |

| **Indications of Interest** |
| --- |

| 6. | New Century, on behalf of the Debtors, shall send a form of confidentiality agreement (the "Confidentiality Agreement"), which, in the aggregate, shall be no less favorable to the Debtors than the confidentiality agreement with Carrington, to any person indicating an interest in participating in the auction for the Servicing Business (the "Auction") and requesting information about the Servicing Business who has not previously signed a confidentiality agreement. |
| --- | --- |

| **Selection of Qualified Bidders** |
| --- |

| 7. | Each potential purchaser (or purchaser group) shall complete and execute the Confidentiality Agreement and provide New Century with (i) evidence of its financial ability to purchase the Servicing Business and (ii) such other information New Century reasonably requests to demonstrate the potential purchaser's ability to purchase the Servicing Business and timely consummate its bid. No later than April 30, 2007, New Century and its professionals will qualify potential purchasers who may continue with the bidding process (the "Bidding Process"). New Century shall notify potential purchasers who have returned an executed Confidentiality Agreement, who have satisfactory financial qualifications, and who New Century has selected, in its sole discretion, as qualified bidders (the "Qualified Bidders"). Any person who wishes to participate in the Bidding Process with respect to the assets that comprise the Servicing Business (the "Servicing Business Assets") must be a Qualified Bidder with respect to the relevant Servicing Business Assets. New Century and its representatives shall not be obligated to furnish any information of any kind whatsoever relating to the Servicing Business to any person who is not a Qualified Bidder. Except as set forth in paragraphs 19, 22, 23, and 24, New Century, in its sole discretion, may amend the rules set forth herein for the Bidding Process or adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process. Carrington shall be deemed a Qualified Bidder. |
| --- | --- |

2

| **Form of Asset Purchase Agreement and Due Diligence** |
| :--- |

8.  New Century shall send to each Qualified Bidder a copy of the APA. Each Qualified Bidder submitting a bid shall produce a markup of the APA (each, a "<u>APA Markup</u>") containing the terms of its bid, including the amount of and any other terms of consideration offered for the Servicing Business Assets to be purchased. New Century will provide Qualified Bidders with reasonable access to the Debtors' books, records, and executives for the purpose of conducting due diligence. Any interested purchaser of the Servicing Business should contact Evan Geller, Lazard Frères & Co, LLC, 212-632-6574, evan.geller@lazard.com, to express its interest in acquiring the Servicing Business, or to seek to become a Qualified Bidder and, thereafter, to request information in connection with due diligence, including access to the electronic dataroom established by the Debtors.

| **Submission of Bids/Deposit** |
| :--- |

9.  All bids must be in writing and accompanied by an executed APA Markup. Each Qualified Bidder must submit a "clean," executed version of the APA Markup together with a blackline, which reflects the proposed changes to the terms and conditions of the APA. **IF ANY BID IS CONDITIONED ON THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THEN SUCH BIDDER SHALL BE REQUIRED TO PROVIDE EVIDENCE OF ITS ABILITY TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF SUCH CONTRACTS OR LEASES ALONG WITH THE BID (AN "<u>ADEQUATE ASSURANCE PACKAGE</u>").** Except as otherwise set forth in the APA with respect to Carrington, all APA Markups shall be accompanied by a good faith deposit (the "<u>Good Faith Deposit</u>") equal to $10,000,000 in the form of a certified check or wire transfer payable to an account designated by New Century. All APA Markups and Adequate Assurance Packages must be submitted in writing so that they are actually received by no later than April 26, 2007 at 5:00 p.m. (prevailing Eastern Time) (the "<u>Bid Deadline</u>") by New Century with copies to the follow parties: (i) O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Attention: Suzzanne S. Uhland, Esq. and Brophy Christensen, Esq., and O'Melveny & Myers, LLP, 400 So. Hope Street, Los Angeles, CA 90071, Attention: Ben H. Logan, Esq. (attorneys for the Debtors); (ii) Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, DE 19899, Attention: Mark D. Collins, Esq. (attorneys for the Debtors), (iii) _____, Attention: _____, Esq. (attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Creditors' Committee</u>")); (iv) Mayer, Brown, Rowe & Maw LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attention: Thomas S. Kiriakos, Esq. and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801, Attention: Steven K. Kortanek, Esq. (attorneys for Carrington).

3

10. By submitting a signed Stalking Horse Markup with a Good Faith Deposit (or in the case of Carrington, the APA and Deposit Amount), a Qualified Bidder irrevocably offers, for a period of 3 business days following the Sale Hearing, to purchase the Servicing Business pursuant to the terms of the Qualified Bidder's APA or APA Markup if such Qualified Bidder's bid was selected the next highest or otherwise best Qualified Bid (the "Runner-Up Bid") at the Sale Hearing.

11. Bids must: (i) specify the portion of consideration to be paid in cash and the portion to be paid in any other form of value and be comprised of at least the same amounts of cash or cash equivalents (which, for the avoidance of doubt, includes, among other things, marketable securities) as the Purchase Price; (ii) if any consideration is to be provided in a form other than cash, provide such bidder's opinion as to such consideration's cash equivalent amount and the methodology used in deriving such amount, to permit New Century to assess accurately the value of such consideration; (iii) provide sufficient indicia that such prospective bidder or representative is legally empowered, by power of attorney or otherwise, and financially capable to (A) bid on behalf of the bidder, and (B) to complete and sign, on behalf of the bidder, a binding and enforceable asset purchase agreement; (iv) identify with particularity each and every executory contract or unexpired lease the assumption and assignment of which is a condition to closing; (v) provide, at a minimum, for aggregate consideration (including cash and non-cash consideration) to the Sellers' estates of at least 110% of the Purchase Price (the "Minimum Bid Amount"); and (vi) not be (A) subject to a condition based on the outcome of due diligence, or similar review, or corporate or other approval; (B) subject to procurement of financing or funding of financing; (C) subject to conditions, representations or terms unacceptable to the Sellers in their sole and absolute discretion or (D) subject to the bidder receiving any break-up fee, termination fee, expense reimbursement or similar type of buyer protection payment.

12. A bid that New Century determines in its sole discretion meets all the foregoing requirements constitutes a "Qualified Topping Bid." Any bid that does not comply with the foregoing requirements, New Century may not consider.

13. Except as set forth herein, all bids shall be kept confidential with access restricted to the Debtors, the Creditors' Committee, and their respective professionals. New Century may request additional information from a bidder to evaluate the bidder's ability to consummate a transaction and to fulfill its obligations in connection therewith, or to clarify any issues related to the foregoing, and such bidder shall be obligated to provide such information as a precondition to participating further in the Auction.

4

| **"As Is, Where Is"** |
| --- |

14. The sale of any Servicing Business Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estate, except to the extent set forth in the APA or in the Debtors' agreement(s) with the Successful Bidder(s). Except as otherwise provided in the APA, all of the right, title and interest in and to the Servicing Business Assets of the Debtors to be acquired shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Transferred Liens"), such Transferred Liens to attach to the net proceeds of the sale of such assets (except that the payment in full of the Servicer Advance Facility (as defined in the APA) or the portion of the DIP Loan facility that financed servicer advances at closing is a condition of the APA), subject to any claim of Carrington to such proceeds for payment of the Break-up Fee and Expense Reimbursement (which shall be a prior and superior claim to such proceeds, to the extent such amounts have not yet been paid).

15. Each bidder, other than Carrington (whose acknowledgements and representations are contained in the APA), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the relevant Servicing Business Assets to be acquired and to conduct any and all due diligence regarding the relevant Servicing Business Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Servicing Business Assets, or the completeness of any information provided in connection with the Bidding Process, in each case except as expressly stated in the APA or APA Markup, as applicable.

LA3:1131372 1
RLF1-3134677-1

| **Auction** |
|---|
| 16. If at least one Qualified Topping Bid with respect to the Servicing Business Assets has been received from at least one Qualified Bidder other than Carrington, and if New Century reasonably determines that such Qualified Topping Bid constitutes a higher and better bid for the Servicing Business, New Century shall conduct the Auction with respect to the Servicing Business. The Auction shall take place during the week of April 30, 2007 at such date and time to be announced by the Debtors to all Qualified Bidders, at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York, 10036, or such later time or other place as New Century shall notify to all Qualified Bidders who have submitted a Qualified Topping Bid with respect to the Servicing Business and expressed their intent to participate in the Auction, as set forth above. New Century shall provide reasonable notice of any adjournment and the time and place for the resumption of the Auction to all Qualified Bidders. All Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative. Only Carrington and any bidders who have made a Qualified Topping Bid shall be entitled to make further bids for the relevant Servicing Business at the Auction. No later than two (2) business days prior to the Auction, New Century shall provide copies of the Qualified Topping Bid it considers the highest and otherwise best Qualified Topping Bid to Carrington and any such bidders. No later than one (1) business day prior to the Auction, each such bidder must inform New Century whether it intends to participate in the Auction. |
| 17. Subsequent overbids in excess of the Minimum Bid Amount (or such amount equal to the highest and best Qualified Topping Bid in excess of the Minimum Bid Amount) shall be in an amount of at least $500,000 in excess of the prior bid. |
| 18. The Debtors will take the Break-up Fee and/or Expense Reimbursement into account in determining the highest and/or best bid in each round of bidding and, in the event Carrington is the Successful Bidder (defined below) as a result of a subsequent bid made at the Auction, Carrington shall be entitled to credit the amount of the Break-Up Fee and Expense Reimbursement against the purchase price of such subsequent bid payable at Closing. No matching bids will be permitted. |
| 19. Notwithstanding anything contained herein to the contrary, to the extent that the Auction is conducted, all bids at the Auction shall be made in a room with the opportunity for all Qualified Bidders to be present; provided that the Debtors will be free to meet separately with any Qualified Bidder for such purposes as seeking clarification of a bid. |
| 20. Before the start of the Auction, New Century shall inform the Qualified Bidders participating in the Auction of the manner in which the Auction will be conducted. Notwithstanding anything contained herein to the contrary, to the extent that an Auction is conducted, during the course of the Auction, New Century shall inform each participant which Qualified Bid then reflects the highest or otherwise best offer. |

6

21. After the conclusion of the Auction, New Century, in consultation with its financial and other advisors, shall determine, in good faith, the highest or otherwise best offer for the Servicing Business (to the extent such bid(s) is acceptable to New Century in its sole discretion, the "Successful Bid" and, the bidder making such bid, the "Successful Bidder"). As set forth below, New Century has scheduled the Sale Hearing on a date after the Bid Deadline and, if applicable, after the Auction, whereupon New Century shall present the Successful Bid(s) to the Bankruptcy Court for approval.

**No Auction if a Higher and Better Qualified Bid is Not Received; APA to Then be Submitted for Approval at the Sale Hearing**

22. In the event that New Century does not receive, on or before the Bid Deadline, a Qualified Topping Bid that New Century reasonably considers to be a higher and/or better bid for the Servicing Business than that represented by the APA, New Century shall not conduct the Auction, but instead shall proceed to the Sale Hearing and shall seek approval at the Sale Hearing of the sale of the Servicing Business to Carrington.

**The Sale Hearing**

23. The Sale Hearing is presently scheduled to commence on [May 7], 2007 at __:00 _.m. (prevailing Eastern Time) before the Honorable _____, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the District of Delaware, _____. In New Century's sole discretion, but subject to Carrington's rights under the APA, the Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

24. Following the Sale Hearing approving the sale of the Servicing Business to Carrington or alternatively, the Servicing Business to a Successful Bidder, if Carrington or any such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of Carrington or such Successful Bidder, the Runner-Up Bid, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid with respect to the relevant Servicing Business Assets and New Century shall be authorized but not obligated to effectuate such sale without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by Carrington or the Successful Bidder, Carrington's or the Successful Bidder's Deposit Amount or Good Faith Deposit, as the case may be, shall be forfeited to New Century and New Century specifically reserves the right to pursue any and all remedies against the breaching bidder subject, with respect to Carrington, to the provisions of the APA.

7

**Closing**

25. The closing of the sale of the Servicing Business (the "<u>Closing Date</u>") to the Successful Bidder(s) shall occur in accordance with the terms of the APA Markup and/or, if Carrington is the Successful Bidder in accordance with the terms of the APA (including any amendments or modifications), or if there is no Auction and if the transaction set forth in the APA is approved at the Sale Hearing, pursuant to the terms of the APA.

**Creditors' Committee Participation**

26. New Century shall endeavor to consult with the Creditors' Committee on a timely basis concerning all acts, decisions or determinations that New Century makes, or proposes to make, pursuant to or in connection with these Bidding Procedures and the transactions contemplated hereby. In the event that New Century and the Creditors' Committee disagree as to the appropriate resolution of any such matter, New Century shall have the authority to decide the matter unless New Century's decision is at odds with the express provisions of this Order, with the Bankruptcy Court to have jurisdiction to hear and resolve any such dispute.

8

**Schedule 2**

**Notice of Bid Deadline, Auction, and Sale Hearing**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |
| | : | |

## NOTICE OF BID DEADLINE, AUCTION, AND SALE
## HEARING IN CONNECTION WITH THE SALE OF
## <u>NEW CENTURY'S SERVICING BUSINESS</u>

NOTICE IS HEREBY GIVEN, as follows:

        1.      On _____ __, 2007, New Century Financial Corporation ("<u>New Century</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") filed a motion (the "<u>Motion</u>") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") seeking approval of, among other things, (i) the institution of bidding procedures (the "<u>Bidding Procedures</u>") in connection with the sale of certain of the Debtors' assets, including certain of its mortgage loan servicing business, all as more fully described in the Motion (the "Servicing Business"), including a break-up fee and expense reimbursement payable to Carrington Capital Management, LLC and  Carrington Mortgage Services, LLC ( collectively, "<u>Carrington</u>"), and (ii) the scheduling of a bid deadline, auction date, and/or sale hearing (the "<u>Bidding Schedule</u>"). On _____ __, 2007, the United States Bankruptcy Court (the "<u>Court</u>") entered an order (the "<u>Bidding Procedures Order</u>") approving, among other things, the Bidding Procedures and Bidding Schedule.

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc ), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Mortgage Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L P., a Delaware limited partnership

2.     New Century and New Century Mortgage Corporation, as sellers, and Carrington, as purchaser have entered into the Asset Purchase Agreement, dated [_____ \_\_\_], 2007 (the "APA") for the sale of the Servicing Business, but, as set forth in the Bidding Procedures, the sale of the Servicing Business remains subject to competing offers from any prospective qualified bidder.

3.     All interested parties are invited to make offers to purchase the Servicing Business in accordance with the terms of the Bidding Procedures and Bidding Procedures Order, available upon faxed written request from Lazard Frères & Co. LLC, 30 Rockefeller Plaza, New York, NY 10020, facsimile: (212) 830-3647 Attention: Evan Geller Esq. (Debtors' financial advisors) or O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Facsimile: (415) 984-8701, Attention Brophy Christensen, Esq. (attorneys to the Debtors'). The deadline to submit bids for the Servicing Business (the "Bid Deadline") is April 26, 2007 at 5:00 p.m. (prevailing Eastern Time). Pursuant to the Bidding Procedures Order, if New Century receives a bid that constitutes a higher and/or better bid for the Servicing Business than that represented by the APA (a "Qualified Topping Bid"), New Century will conduct an auction (the "Auction") for the sale of the Servicing Business during the week of April 30, 2007. The Debtors will advise all Qualified Bidders of the exact dates and times of the Auction. The Auction will be conducted at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York, 10036. The Debtors reserve the right to change the date or the place of the Auction, and will notify Qualified Bidders if they do so.

4.     If New Century does not receive a Qualified Topping Bid for the Servicing Business on or before the Bid Deadline, New Century shall seek approval at the Sale Hearing of the sale of the Servicing Business to Carrington pursuant to the provisions of the APA.

5.     The Bidding Procedures Order further provides that a Sale Hearing will be held following the Auction (if one should take place) commencing on [May 7] 2007 at \_\_:00 \_.m. (prevailing Eastern Time) before the Honorable _____, United States Bankruptcy Judge, in Room \_\_\_\_ of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801

6.     At the Sale Hearing, the Debtors shall request that the Court enter an order, among other things, approving the prevailing bid of the successful bidder for the Servicing Business, pursuant to which New Century will transfer the Servicing Business.

7.     At the Sale Hearing, the Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these chapter 11 cases. Objections, if any, to the sale of the Servicing Business pursuant to the terms of the agreement reached between New Century and the successful bidder for the Servicing Business shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against New Century's estate or properties, the basis for the objection and the specific grounds therefor, and shall be served upon (i) the United States Trustee for the District of Delaware; (ii) O'Melveny & Meyers LLP, 400 So. Hope St., Los Angeles, CA 90071, Attention: Ben H. Logan, Esq. and O'Melveny & Meyers

2

LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111 (attorneys for the Debtors); (iii) Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, DE 19899, Attention: Mark D. Collins, Esq., (attorneys for the Debtors); (iv) _____, Attention: _____, Esq. (attorneys for the Creditors' Committee); (v) Mayer, Brown, Rowe & Maw LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attention: Thomas S. Kiriakos, Esq. and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801, Attention: Steven K. Kortanek, Esq. (attorneys for Carrington); and (vi) any parties entitled to notice under Local Rule 2002-1(b) or who are entitled to notice under any case management procedures order, if any, entered in these cases prior to the Mailing Deadline, so as to be actually received no later than _____ __, 2007 at __:00 _.m. (prevailing Eastern Time).

        8.    A copy of the APA is attached as Exhibit A to the Motion. All requests for information concerning the sale of the Servicing Business should be directed by request to Evan Geller, Lazard Frères & Co. LLC, evan.geller@lazard.com, 212-632-6574.

LA3:1131372 1
RLF1-3134677-1

Dated:  April _, 2007
        Wilmington, Delaware

_____

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

        -and-

Suzanne S. Uhland
Ben H. Logan
Brian Metcalf
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

4

**Schedule 3**

**Notice of Assumption and Assignment**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |
| | : | |

**NOTICE OF NEW CENTURY'S INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
THE PROPOSED SALE OF ITS SERVICING BUSINESS
AND THE FIXING OF CURE COSTS ASSOCIATED THEREWITH**

NOTICE IS HEREBY GIVEN, as follows:

1.      On April __, 2007, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure in the above-captioned chapter 11 cases of New Century Financial Corporation ("New Century"), and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the assumption and assignment of certain executory contracts, unexpired leases, and other agreements of the Debtors (the "Assumed Contracts" listed on Exhibit A attached hereto) in connection with the sale of New Century's Servicing Business (as defined in the Bidding Procedures Order). Certain of the Debtors will assume the Assumed Contracts and assign them to Carrington Mortgage Services, LLC ("Carrington") under the terms of the Asset Purchase Agreement, dated as of April 2, 2007 between the Debtors party thereto (the "Sellers") and Carrington (the "APA"), or alternatively to

---

[1]  The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc ), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

the "Successful Bidder" for the Servicing Business under the bidding procedures (the "<u>Bidding Procedures</u>") approved by the Bankruptcy Court in the Bidding Procedures Order.

2.     The Debtors believe that any and all defaults (other than the filing of these chapter 11 cases) under the Assumed Contracts can be cured by the payment of the Cure Amounts listed on Exhibit A attached hereto.

3.     Any objections to (i) the assumption and assignment of an Assumed Contract, or (ii) the amount asserted as the Cure Amount (each, an "<u>Assumption and/or Cure Objection</u>"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assumed Contract (the "<u>Claimed Cure Amount</u>").

4.     To be considered a timely Assumption and/or Cure Objection, the Assumption and/or Cure Objection must be filed with the Bankruptcy Court and served upon (i) the United States Trustee for the District of Delaware; (ii) O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Attention: Suzzanne S. Uhland, Esq. and Brophy Christensen, Esq., and O'Melveny & Myers, LLP, 400 So. Hope Street, Los Angeles, CA 90071, Attention: Ben H. Logan, Esq. (attorneys for the Debtors); (iii) Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, DE 19899, Attention: Mark D. Collins, Esq. (attorneys for the Debtors); (iv) _____, Attention: _____, Esq. (attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Creditors' Committee</u>")); (v) Mayer, Brown, Rowe & Maw LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attention: Thomas S. Kiriakos, Esq. and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, DE  19801, Attention: Steven K. Kortanek, Esq. (attorneys for Carrington); all to be actually received no later than May 2, 2007 at 4:00 p.m. (prevailing Eastern Time); *provided* that in the event Carrington is not the Successful Bidder, non-debtor parties to the Assumed Contracts may raise objections to adequate assurance of future performance under the Assumed Contracts at the "Sale Hearing" (as defined in the Bidding Procedures Order) to be held commencing on [May 7], 2007 at __:00 _.m. (prevailing Eastern Time) before the Honorable _____, United States Bankruptcy Judge, in Room _____ of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

5.     If an Assumption and/or Cure Objection is timely filed, a hearing with respect to that objection shall be held before the Honorable _____, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, _____. A hearing regarding the Cure Amount(s), if any, for any Assumed Contracts may be continued at the sole discretion of New Century until after the Closing (as defined in the APA).

6.     Unless the Assumption and/or Cure Objection is timely filed and served, the assumption and assignment of the applicable Assumed Contract will proceed without further notice at the hearing to approve the sale of the Servicing Business.

7.     Parties that fail to file and serve timely Assumption and/or Cure Objections shall be deemed to have waived and released any and all rights to assert cure amounts

different from the Cure Amounts listed on Exhibit A hereto and shall be forever barred and estopped from asserting or claiming against the pertinent Debtor, Carrington, or any assignee of any Assumed Contract that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under such Assumed Contract.

        8.    If no cure amounts are due under the Assumed Contract, and the non-debtor party to the Assumed Contract does not otherwise object to the pertinent Seller assumption and assignment of the Assumed Contract, no further action need to be taken on the part of that non-debtor party.

        9.    Assumption and/or Cure Objections that object solely to the Cure Amount may not prevent or delay the pertinent Seller's assumption and assignment of any Assumed Contracts. If a party objects solely to a Cure Amount, the pertinent Seller may, in its sole discretion, hold the Claimed Cure Amount in reserve pending further order of the Court or mutual agreement of the parties. So long as the pertinent Seller holds the Claimed Cure Amount in reserve, and there are no other unresolved objections to assumption and assignment, the pertinent Seller can, without further delay, assume and assign the Assumed Contract that is the subject of the objection. At that point, the objecting party's recourse is limited to the funds held in reserve.

        10.    A pertinent Seller's decision to assume and assign to Carrington the Assumed Contracts is subject to Court approval and the Closing. Accordingly, absent such Closing, any of the Assumed Contracts shall not be deemed assumed nor assigned, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Assumed Contracts shall not constitute or be deemed to be a determination or admission by any Seller or Carrington that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: April __, 2007
      Wilmington, Delaware

 

                                          _____

                                          Mark D. Collins (No. 2981)
                                          Michael J. Merchant (No. 3854)
                                          Marcos A. Ramos (No. 4450)
                                          RICHARDS, LAYTON & FINGER, P.A.
                                          One Rodney Square
                                          P.O. Box 551
                                          Wilmington, Delaware 19899
                                          (302) 651-7700

                                               -and-

                                          Suzzanne S. Uhland
                                          Ben H. Logan

3

Brian Metcalf
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

4