# EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |
| | : | |

**ORDER PURSUANT TO SECTIONS 105, 363 AND 365
OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 6006
AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING (i) THE SALE OF DEBTORS' SERVICING BUSINESS
TO CARRINGTON CAPITAL MANAGEMENT, LLC AND  CARRINGTON
MORTGAGE SERVICES, LLC PURSUANT TO THE
ASSET PURCHASE AGREEMENT, DATED AS OF APRIL 2, 2007 FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS , AND (ii)
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO CARRINGTON AS PART OF SUCH SALE**

Upon the motion, dated April __, 2007 (the "Motion"), of New Century Financial

Corporation ("New Century") and its affiliated debtors and debtors-in-possession (collectively,

the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the

"Bankruptcy Code") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for approval of (i) the sale of New Century's mortgage loan

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc ), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R E.O  Corp , a California corporation; New Century R E.O. II Corp , a California corporation; New Century R E.O  III Corp , a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L P , a Delaware limited partnership.

servicing business (the "Servicing Business")[2] to Carrington Capital Management, LLC and

Carrington Mortgage Services, LLC ( collectively "Carrington") under the terms of the Asset

Purchase Agreement, dated [_____ __], 2007 between New Century Financial Corporation and

New Century Mortgage Corporation, as Sellers, and Carrington, as Purchaser (the "APA"), or to

a successful bidder through an alternate transaction, free and clear of liens, claims,

encumbrances, and interests (except for the Surviving Permitted Encumbrances (as such term is

defined in the APA)), (ii) the institution of bidding procedures (the "Bidding Procedures"),

including a break-up fee (as such term is defined in the APA, the "Break-Up Fee") and expense

reimbursement (as such term is defined in the APA, the "Expense Reimbursement") payable to

Carrington, and (iii) the assumption and assignment of certain executory contracts and unexpired

leases of the Debtors (the "Assumed Contracts") to Carrington or alternatively to the successful

bidder for the Servicing Business as part of such sale; and the Court having entered an order on

[April __, 2007] (the "Bidding Procedures Order") approving, among other things, the Bidding

Procedures with respect to the sale of the Servicing Business and notice thereof; and pursuant to

the Bidding Procedures, **[the Debtors' not having received any other Qualified Topping Bid**

**for the Servicing Business that constituted a higher and better offer for the Servicing**

**Business than that represented by the APA and the Debtors' proceeding to seek approval**

**of the sale of the Servicing Business to Carrington pursuant to] [or] [the Debtors' having**

**received at least one Qualified Topping Bid for the Servicing Business that constituted a**

**higher and better bid for the Servicing Business than that represented by the APA but**

**Carrington's still having prevailed at the Auction as ultimately having the highest and**

**otherwise best bid for the Servicing Business based on]** the APA (together with the exhibits

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

and schedules thereto and incorporated by reference therein, the "Carrington Agreement"), a

copy of which is attached hereto, exclusive of exhibits and certain schedules, as Exhibit A; and a

hearing having been held on _____ __, 2007 (the "Hearing") to consider approval of the sale

of the Servicing Business to Carrington pursuant to the terms and conditions of the Carrington

Agreement; and it appearing that notice of the Motion was good and sufficient under the

circumstances and that no other or further notice need be given; and the Court having reviewed

the Motion and all objections thereto, and having heard the statements in support of the relief

requested therein at the Hearing; and it appearing that entry of this Order is in the best interests

of the Debtors, their estates, and all parties in interest; and upon the Motion and the record of the

Hearing and all other proceedings had before the Court, at which, among other things, the

withdrawal or resolution of all objections to the Motion, as approved by this Order, was

confirmed; and after due deliberation and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      The Court has jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Time is of the essence in consummating the transactions contemplated by

the Carrington Agreement and a sale of the Servicing Business within the time constraints set

forth in the Motion is in the best interests of the Debtors and their estates. The terms of the

Carrington Agreement are the best terms that have been offered for sale of the Servicing

Business. (Each subsequent reference in this Sale Order to "Servicing Business" or "Servicing

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Business Assets" in relation to Carrington and/or the Carrington Agreement shall be deemed to be a reference to the Purchased Assets (as defined in the Carrington Agreement)).

        C.      Upon the closing of the Carrington Agreement, the assets to be sold and the interests to be assigned will have been acquired by Carrington in good faith and as the result of arm's-length negotiations.

        D.      The sale of the Servicing Business is necessary to the consummation of any chapter 11 plan of reorganization or liquidation that may be proposed by the Debtors and confirmed by the Court.

        E.      Reasonable notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion as it pertains to the sale of the Servicing Business has been afforded to all interested persons and entities, including, but not limited to: (i) the United States Trustee for the District of Delaware, (ii) the attorneys for the Debtors, (iii) the attorneys for the Creditors' Committee, (iv) the attorneys for Carrington, (v) any party, who, in the past three months, expressed in writing to New Century an interest in acquiring the Servicing Business, and who New Century and its representatives reasonably and in good faith determined potentially to have the financial wherewithal to effectuate the transaction contemplated in the Carrington, (vi) all parties who are known to possess or assert a Lien against, or control over, any assets of the Servicing Business, (vii) the Internal Revenue Service, (viii) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, (ix) all applicable state and local taxing authorities, and (x) any other parties entitled to notice under Local Rule 2002-1(b), or who were entitled to notice under any case management procedures order, if any, entered in these cases prior to the date of notice of the Motion.

F.     Notice, as specified in the preceding paragraph and as evidenced by the

affidavits of service and affidavits of publication filed with the Bankruptcy Court, has been in the

form and manner specified in the Motion and required by the Bidding Procedures Order, and

such notice is reasonable and adequate.

G.     No consents or approvals are required for the Debtors to consummate the

sale of the Servicing Business other than the consent and approval of this Court and those set

forth in the Carrington Agreement.  Neither the execution of the Carrington Agreement nor the

consummation of the sale of the Servicing Business in accordance with its terms will constitute a

violation of any provision of the organizational documents of any Debtor or any other

instrument, law, regulation or ordinance by which any Debtor is bound.

H.     The Bidding Procedures have been complied with in all material respects

by New Century, on behalf of the Sellers, and Carrington.

I.     Upon entry of this Order (the "Sale Order"), the Debtors shall have full

power and authority to consummate the sale contemplated by the Carrington Agreement.  The

Carrington Agreement and the sale have been duly and validly authorized by all necessary action

of the Debtors and no shareholder vote, board resolution or other corporate action is required of

the Debtors for the Debtors to consummate such sale or the other transactions contemplated in

the Carrington Agreement.

J.     This Sale Order and the consummation of the contemplated transactions

are supported by good business reasons, and will serve the best interests of the Debtors, their

estates and creditors by maximizing the values to be obtained from the Servicing Business.

K.     The Carrington Agreement was negotiated, proposed and entered into by

Carrington without collusion, in good faith and from an arm's-length bargaining position.  The

relation of affiliates of Carrington and the Debtors has been fully disclosed.  The Debtors and Carrington have not engaged in any conduct that would cause or permit the Carrington Agreement to be avoided under section 363(n) of the Bankruptcy Code.

    L.  Carrington is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Carrington recognized that the Debtors were free to deal with any other party interested in acquiring the Debtors' Servicing Business; (b) Carrington agreed to provisions in the Carrington Agreement which would enable the Debtors to accept a higher and better offer for the Servicing Business; (c) other than with respect to conditions contained in the agreement requiring the commencement of this case, Carrington in no way induced or caused the chapter 11 filing of the Debtors; (d) all payments to be made by Carrington and other agreements or arrangements entered into by Carrington in connection with the transactions have been disclosed; and (e) the negotiation and execution of the Carrington Agreement and any other agreements or instruments related thereto was in good faith and an arm's-length transaction between the Carrington and the Debtors.

    M.  The consideration to be provided by Carrington pursuant to the Carrington Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Servicing Business; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions.

N.      The approval of the Carrington Agreement and the contemplated transactions is fair and reasonable.

O.      The Carrington Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

P.      The consummation of the sale pursuant to the Carrington Agreement will be a legal, valid, and effective sale of the Purchased Assets to Carrington, and, in the case of the assets of the Debtors, vests or will vest Carrington with all right, title, and interest in and to those Purchased Assets free and clear of Liens (except for the Surviving Permitted Encumbrances (as defined in the Carrington Agreement)) in accordance with section 363(f) of the Bankruptcy Code because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  All parties with Liens against the Purchased Assets of the Debtors, if any, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against Carrington, Carrington's affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against New Century, any of the other Debtors, or any of their respective affiliates (except that the payment in full of the Servicer Advance Facility (as defined in the Carrington Agreement) or Tranche B of the Debtor in Possession Loan Agreement at closing is a condition of the Carrington Agreement and New Century is hereby authorized to make such payment). Failure to sell the Purchased Assets of the Debtors free and clear of Liens (other than the Surviving Permitted Encumbrances) and the Retained Liabilities would be substantially less benefit to, and would adversely affect, the Debtors' estates.

Q.     By virtue of the Carrington Agreement or otherwise, Carrington will not acquire any liabilities of the Debtors, other than the Assumed Liabilities.

R.     Without limiting the generality of the foregoing, Carrington would not have entered into the Carrington Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets to Carrington and the assignment of the Assumed Contracts to Carrington were not, except the Assumed Liabilities, free and clear of all claims, liens, or interests of any kind or nature whatsoever, or if Carrington would or in the future could, be liable for any of claims, liens, or interests including, but not limited to (1) any employment or labor agreements; (2) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation claims that might otherwise arise under or pursuant to (A) the Employee Retirement, Income, Security Act of 1974, as amended, (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Worker Adjustment and Retraining Act of 1988, (G) the Age Discrimination and Employee Act of 1967, or (H) the Consolidated Omnibus Budget Reconciliation Act of 1985; (4) any products liability or similar claims, whether pursuant to any state or federal laws or otherwise, including without limitation, asbestos claims; (5) environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response,

Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. or similar state statute (except solely

to the extent of any liability to any governmental entity under police, regulatory, or other

statutory requirements to which any entity would be subject as the owner or operator of property

constituting part of the Purchased Assets after the Closing unless and to the extent previously

compromised), (6) any bulk sales or similar law; and (7) any tax statutes or ordinances,

including, without limitation, the Internal Revenue Code of 1986, as amended.

        S.      The Carrington Agreement is a valid and binding commitment by

Carrington to purchase the Purchased Assets, and is enforceable according to its terms.

        T.      No objection thereto having been filed with the Bankruptcy Court **[or]**

**[All objections thereto having been resolved]**, the amounts set forth on Exhibit A to the Notice

of Assumption and Assignment, dated _____ __, 2007 **[or] [on Exhibit B hereto]** (the "Cure

Amounts"), are deemed the amounts necessary to "cure" (within the meaning of section

365(b)(1) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the

Bankruptcy Code).

        NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

        1.      The Motion is granted and approved in all respects (other than with

respect to matters already addressed by the Bidding Procedures Order).

        2.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the sale,

conveyance and assignment of the Purchased Assets of and by the Debtors, including the

assignment of the Assumed Contracts of the Debtors, pursuant to the Carrington Agreement (the

"Sale"), is approved, and each Debtor is authorized and directed to execute any and all

documents, instruments and papers and to take all actions necessary and appropriate to

effectuate, implement and consummate the transactions contemplated by the Carrington

Agreement in consideration of the purchase price specified therein, including assigning and

transferring to Carrington or its designees all of the Debtors' right, title and interest (including

common law rights) in and to all of the Debtors' tangible and intangible property included

among the Purchased Assets except as otherwise explicitly provided by the Carrington

Agreement. Without limiting the foregoing, each of the Debtors is authorized and directed to

close and consummate the Carrington Agreement and all other agreements and documents

related to and contemplated thereby (collectively, the "Disposition Documents"), which

agreements and documents hereby are authorized and approved in all respects.

        3.      The transfer(s) of the Purchased Assets of and by the Debtors to

Carrington or one or more of its designees are legal, valid and effective transfers and shall vest

Carrington or its designees with all right, title and interest of the Debtors in and to the Purchased

Assets pursuant to section 363(f) of the Bankruptcy Code free and clear of any and all liens,

security interests, pledges, hypothecations, encumbrances or other interests or claims (including

but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code,

including any and all warranty claims and any and all of the other Retained Liabilities, including

those described in Paragraph R of this Sale Order) and any and all rights and claims under any

bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and

whether arising before, on or after the date on which this chapter 11 case was commenced (other

than Surviving Permitted Encumbrances), whether known or unknown, including Liens of any of

the creditors, vendors, suppliers, employees, or lessors of any of the Debtors or any other third

party. Any and all such Liens shall attach to the proceeds of the Sale, with the same priority,

validity, force and effect as they now have against the Purchased Assets (except that the payment

in full of the Servicer Advance Facility (as defined in the Carrington Agreement) and/or Tranche B of the Debtor in Possession Loan Agreement  at closing is a condition of the Carrington Agreement and New Century is hereby authorized to make such payment).

4.      The Sale pursuant to this Sale Order and the Disposition Documents shall be binding upon the Debtors, Carrington, all creditors, members, and owners of the Debtors, all persons having or asserting a claim or Lien against, or an interest in, the Debtors or the Purchased Assets of the Debtors, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Debtors to sell, assign and convey the Purchased Assets or that seek to enjoin any such sale, assignment or conveyance.

5.      Any party having the right to consent to the assumption or assignment of the Assumed Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

6.      Adequate assurance of future performance has been demonstrated by or on behalf of Carrington with respect to the Assumed Contracts.

7.      There shall be no rent accelerations, assignment fees, increases or any other fees charged to Carrington or its affiliates or designees as a result of the assumption or assignment by the Debtors to Carrington or its designees of the Assumed Contracts, and the validity of such assumption or assignment shall not be affected by any dispute between any of the Debtors or any of their respective affiliates and any counterparty to any Assumed Contract and the Assumed Contracts, upon assignment to Carrington or its designees, shall be deemed valid and binding and in full force and effect in accordance with their terms.

8.    Without limiting the generality of the provisions of the Carrington Agreement or the other provisions of this Sale Order, Carrington shall not be deemed to have assumed any liability under, or otherwise be deemed liable in any manner whatsoever with respect to any, contract or lease of any Debtor that is not explicitly designated as an Assumed Contract, absent Carrington's written agreement as to the subsequent inclusion of any specifically identified contract or lease as an Assumed Contract and the satisfaction of the requirements of Section 365 of the Bankruptcy Code with respect to any such contract or lease. Specifically, Carrington shall assume no liability whatsoever under or otherwise with respect to any Collective Bargaining Agreements or Benefit Plans, the rejection of which being an express condition precedent to Carrington's obligations to perform under the Carrington Agreement.

9.    The contemplated transactions have been undertaken by Carrington and the Sellers at arm's-length, without collusion, and Carrington will acquire the Purchased Assets pursuant to the Carrington Agreement and the Disposition Documents, in good faith, within the meaning of section 363(m) of the Bankruptcy Code and is, and shall be, entitled to all of the protections in accordance therewith.

10.    The consideration provided by Carrington for the Purchased Assets under the Carrington Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

11.    **[Reserved for insertion of directed distribution of net sale proceeds, if required, pursuant to any final debtor-in-possession financing order or cash collateral order entered by the Court.]**

12.    Compliance with the so-called "bulk-sale" laws in all applicable jurisdictions are waived or such laws are inapplicable as to the contemplated transactions and the

transactions contemplated in the Carrington Agreement are hereby deemed to be under or in contemplation of a plan to be confirmed under section 1129 of the Bankruptcy Code.

13.    The provisions of this Sale Order are nonseverable and mutually dependent.

14.    This Sale Order and all provisions of the Disposition Documents shall be binding upon any successors and assigns of the Debtors, including without limitation, any trustee appointed for any of the Debtors in its chapter 11 case or in any superseding proceeding under chapter 7 of the Bankruptcy Code.

15.    Nothing contained in any chapter 11 plan confirmed in the chapter 11 case of any Debtor or any order of this Court confirming such plan or any other order entered in these chapter 11 cases shall conflict with or derogate from the provisions of the Carrington Agreement, to the extent modified by this Sale Order, or the terms of this Sale Order.

16.    The Carrington Agreement, the Disposition Documents, or other instruments relating thereto may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or their estates.

17.    From and after the date hereof, each Debtor shall act in accordance with the terms of the Carrington Agreement, and each Debtor, to the extent it already has not done so, shall execute the Carrington Agreement (or any related agreement or instrument) at or prior to Closing.

18.    The failure specifically to include any particular provisions of the Carrington Agreement or the Disposition Documents in this Sale Order shall not diminish or

impair the effectiveness of such provisions, it being the intent of the Court that the Carrington Agreement and the Disposition Documents be authorized and approved in their entirety.

19.     To the extent of any inconsistency between the provisions of the Carrington Agreement, any documents executed in connection therewith, and this Sale Order, the provisions contained herein shall govern.

20.     All objections, if any, to the entry of this Sale Order, to the extent not waived or resolved, are overruled.

21.     Without limiting in any manner the effect of the other provisions of this Order (including, without limitation, the effect of the provisions of Paragraph 3 of this Order), any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing or otherwise asserting a Lien in, to, or against the Purchased Assets shall be, and hereby is, directed to deliver to the Debtors prior to Closing, in proper form for filing after Closing and executed by the appropriate parties, termination statements, instruments of satisfaction, mortgage or deed of trust releases, or similar instruments as appropriate to cause the release of any such Lien as of record, and, in the event that any such person or entity fails to comply with the direction set forth in this Paragraph, then, at the option of Carrington, Carrington either may seek to have such person or entity held in contempt of this Court or shall be hereby authorized without the requirement of any further action (including any further Order of this Court) either to execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted Lien in, to, or against the Purchased Assets or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such Lien in, to, or against the Purchased Assets.

22.     Consistent with, but not in limitation of, the foregoing, each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated with Carrington Agreement and the Disposition Agreements.

23.     All persons or entities who or that are in possession of some or all of the Purchased Assets of the Debtors on the Closing are hereby directed to surrender possession of those Purchased Assets to Carrington at the Closing.

24.     Without limiting the generality of the other provisions of this Sale Order, and except solely to the extent provided by other U.S. federal law, Carrington under no circumstances shall be deemed to be a successor of the Debtors (and Carrington expressly has disclaimed in the Carrington Agreement any such liability with respect to the Debtors). Accordingly, Carrington shall have no successor or vicarious liabilities of any kind or character with respect to the Purchased Assets or otherwise with respect to the Servicing Business except solely to the extent provided by superseding U.S. federal law, and all persons and entities shall be hereby enjoined from asserting any such claims against Carrington.

25.     The Bankruptcy Court shall retain exclusive jurisdiction to interpret, construe and enforce the provisions of the Carrington Agreement, the Disposition Documents, and the Sale Order in all respects and, further, to hear and determine any and all disputes between any Debtor and/or Carrington, as the case may be, and any non-seller party to, among other things, any Assumed Contracts, concerning inter alia, assignment thereof by the pertinent Debtor to Carrington or its designees under the Carrington Agreement, and any claims against any Debtor or any creditor or other third party arising under any agreements relating to Retained Liabilities and any dispute between Carrington and any Debtor as to their respective obligations

with respect to any asset or liability of or claim against any Debtor or otherwise arising
hereunder.

26.    The automatic stay of Section 362(a) of the Bankruptcy Code shall not
apply to and otherwise shall not prevent the exercise or performance by any party of its rights or
obligations under the Carrington Agreement, including, without limitation, with respect to any
cash held in escrow pursuant to the provisions thereof.

27.    Any claim under the Carrington Agreement against the Debtors not
satisfied pursuant to Sections 9.2(b) and 11.9 of the Carrington Agreement shall constitute an
allowed superpriority administrative claim under Sections 105, 503(b) and 507(a)(2) of the
Bankruptcy Code and shall be treated with such priority in any subsequent or superseding
bankruptcy case (including any bankruptcy case under chapter 7 of the Bankruptcy Code);
provided, however, if any such claim is not known by Carrington as of the time of confirmation
of any plan of reorganization for any Debtor, such claim shall not be discharged pursuant to the
confirmation of any such plan of reorganization but instead shall continue as a liability of the
reorganized entity, subject in all respects to the time limitations on any such claim set forth in the
Carrington Agreement.

28.    This Sale Order shall take effect immediately and shall not be stayed
pursuant to Bankruptcy Rules 6004(g), 6006(d), 7062 or otherwise.

Dated: _____ __, 2007
        Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Carrington Agreement**

LA3:1131371 1
RLF1-3134936-2

**[Exhibit B]**

**[List of Cure Amounts]**