IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | |

EMERGENCY MOTION OF THE DEBTORS AND
DEBTORS IN POSSESSION FOR AN ORDER SHORTENING NOTICE
PERIOD AND APPROVING THE FORM AND MANNER OF NOTICE

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court for an order, pursuant to Rules 2002 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court District of Delaware (the "Local Rules"), (i) approving the form and manner of notice of the Sale Motion (defined below) and (ii) scheduling a hearing for April 12, 2007, to consider the Bidding Procedures (defined below) requested in the Sale Motion. In further support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

I. **The Debtors' Sale Motion Seeks Immediate Relief Which is Necessary to Preserve and Maximize the Value of the Assets**

1. Today, the Debtors have filed their Emergency Motion for (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection With the Proposed Sale of Assets Used in their Loan Servicing Business, (B) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and Manner of Notice Thereof and (C) Granting Related Relief and (II) an Order (A) Approving the Proposed Sale and (B) Granting Related Relief (the "Sale Motion"). A copy of the Sale Motion (without exhibits) is attached hereto as Exhibit A.

2. As more fully described in the Sale Motion, the Debtors have moved the Court to approve certain sale procedures, including bidding procedures, stalking horse bid protections and procedures for the Debtors to assume and assign certain executory contracts and leases, in connection with an auction of certain assets related to the Debtors' mortgage loan servicing businesses (the "Assets"). The Debtors also have asked the Court to set a Sale Hearing to consider approval of the Sale Transaction and the Sale Notice, and grant related relief.[2]

3. As noted in the Sale Motion, the Debtors' mortgage loan servicing business is among the most substantial of the Debtors' operations being offered for sale, as loan servicing has been and remains a very profitable part of the Debtors' businesses. The Debtors presently service approximately $19 billion of loans owned by third parties. This loan servicing business is also among the most fragile of the Debtors' operations. It is a service business that depends on maintaining a stable and motivated workforce, particularly since servicing loans, especially subprime loans in default, requires sophistication concerning the legal and practical issues that affect proper loan servicing. It also requires the Debtors to maintain ordinary course

---

[2] Terms not otherwise defined shall have the meaning accorded to such terms in the Sale Motion

2

relationships with the Debtors' loan servicing customers -- largely the securitization trusts. Moreover, loan servicing is a licensed and regulated industry and the Debtors need to maintain an ongoing dialogue with their regulators.

4. Prior to commencing these cases, the Debtors expended significant effort to maintain and preserve the loan servicing business and to continue to service loans up to the Debtors' historic high standards. Moreover, working with their investment banker, Lazard Freres & Co. LLC ("Lazard"), the Debtors also marketed their businesses. This resulted in expressions of interest, bids and committed offers for various assets and components of their businesses.

5. As described more fully in the Sale Motion, the cornerstone of the Debtors' efforts to realize value for their stakeholders from the Assets is the proposed sale to Carrington Capital Management, LLC and Carrington Mortgage Services, LLC (collectively, "Carrington"), or an alternative bidder that submits a higher and/or better offer. In addition to Carrington, Lazard had advanced discussions with six other potential buyers for the Assets who conducted diligence and explored a purchase, a number of whom made offers. Of these, the Debtors, in consultation with their advisors, determined that Carrington's offer was the best offer and the most appropriate stalking horse bid for the Assets.

6. Carrington is an obvious potential buyer for the Assets. Carrington and its affiliates own the primary interests in 12 securitization trusts established from 2004-2006 (the "Carrington Securitization Trusts") which hold approximately $8.6 billion of mortgage loans that the Debtors originated and sold to these securitization trusts. NCMC is the servicer of the mortgage loans held in the Carrington Securitization Trusts, so the Carrington Securitization Trusts provide a significant portion of the revenue realized by the Debtors' loan servicing

3

business. At the same time, Carrington has been adamant that appropriate steps be taken to stabilize this servicing arrangement, and insisted and conditioned its offer for the Assets on reaching an agreement with the Debtors, subject to court approval and overbids, <u>before</u> the Debtors filed for bankruptcy protection. Carrington's offer also required the Debtors to file the Sale Motion promptly upon commencing these cases, because as explained by Carrington, the economics of the transaction for Carrington depended largely on the ability of the Debtors to provide a clear message to their employees, customers (including Carrington) and their regulators that there is an orderly sale process in place. Carrington also required the Debtors to seek the Court's approval for entry of the Bidding Procedures (defined below) by April 13, 2007.

       7.      As noted above, the parties contemplate that Carrington's offer to purchase the Assets will be subject to higher and/or better offers as determined by the Debtors pursuant to the sale procedures described in the Sale Motion. As more fully described in the Sale Motion, these procedures include the (i) notice procedures applicable to the Debtors' auction (if any) of the Assets; (ii) standards for interested parties to become a Qualified Bidder at any auction; (iii) deadline for the submission of any Qualified Bids for the Assets; (iv) procedures to govern the Debtors' conduct of the auction of the Assets and their determination of the highest and/or best offer for the Assets; (v) notice and other procedures to govern the Debtors' assumption and assignment of certain executory contracts and leases, and objections, if any, by interested parties to the Debtors' notice of intent to assume and assign any such contracts or leases; and (vi) Court's approval of Carrington as the stalking-horse bidder for the Assets, including (but not limited to) the terms governing Carrington's right to the Breakup Fee and Expense Reimbursement provided for in the APA. Collectively, these procedures hereafter are referred to as the Bidding Procedures.

8.     The Debtors concur that it is essential to sell the Assets rapidly and that being able to announce a stalking horse bid at the outset of these cases provides an enormous benefit to the Debtors and their estates. The Debtors also believe that their ability to provide prompt direction to their regulators regarding the operation and disposition of the Debtors' loan servicing business will be an important reassuring factor for their regulators.

## II.     The Court Should Consider the Bidding Procedures at a Hearing On April 12, 2007

9.     In short, the Debtors believe that the Sale Transaction offers the best opportunity for the Debtors to preserve and maximize the value of the Assets and that the relief sought by the Sale Motion and this Motion is not only reasonable, but necessary, to obtain maximum value for the Debtors and their estates. However, in order for the Debtors to maximize the value of their estates, the Debtors require the Court to consider the Bidding Procedures requested in the Sale Motion as soon as possible. As noted in the Sale Motion, the Debtors have asked the Court to schedule a separate hearing on or about May 7, 2007, for the Court to consider approval of the Successful Bid (or the APA, if no Qualifying Bid other than that of Carrington is received or accepted), the Debtors' assumption and assignment of executory contracts and leases and objections, if any, thereto, and the Sale Transaction.

10.     Local Rule 9006-1(c) requires that all motion papers shall be filed and served at least fifteen (15) days prior to a hearing date scheduled for such motion, and eighteen (18) days if notice is given by mail, unless the Bankruptcy Rules state otherwise. Bankruptcy Rule 2002(a) requires that parties in interest shall receive twenty days' notice of a proposed use, sale, or lease of property of the estate other than in the ordinary course of business. The Debtors respectfully submit, however, that for the reasons discussed herein the Court's consideration of the Bidding Procedures requested in the Sale Motion at a hearing scheduled on or before April

12, 2007 (the "Hearing"), is reasonable and appropriate under the circumstances. Moreover, the Debtors intend to serve the Sale Motion today upon: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (4) counsel to Carrington; (5) all parties who are known to possess or assert a secured claim against the Servicing Business; (6) the Internal Revenue Service; and (7) all parties entitled to notice under Local Rule 2002-1(b).

        11.     Local Rule 9006-1(c) also requires that the objection deadline with respect to motions be scheduled to permit all objections to be filed and served at least five (5) business days before the hearing date. The Debtors hereby request approval of an objection deadline for any party to submit a written objection to the Bidding Procedures of no later than 4:00 p.m. (Eastern Time) on the calendar day immediately preceding the Hearing. Due to the emergency nature of the Debtors' need for the Court to consider the Bidding Procedures, the Debtors believe that this objection deadline will afford interested parties sufficient time to consider and appropriately respond to the Bidding Procedures requested in the Sale Motion while affording the Court and the Debtors time to review and consider any objections filed with respect thereto. Accordingly, the Debtors submit that this objection deadline is appropriate and necessary under the circumstances.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit B: (i) granting this Motion; (ii) approving the shortened notice period requested herein and the form, manner and sufficiency of notice of the Sale Motion and Bidding Procedures; (iii) scheduling the Hearing; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: April 4, 2007
       Wilmington, Delaware

*/s/ Marcos A. Ramos*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION