# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-[____] (___) |
| INC., a Delaware corporation, et al.,[1] | : |  |
|  | : | Jointly Administered |
|  | : |  |
| Debtors. | : |  |

### MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by

and through their undersigned counsel, hereby submit this motion (the "Motion") for the entry of

interim and final orders: (a) prohibiting the Utility Providers (defined below) from altering,

refusing or discontinuing service; (b) deeming the Utility Providers adequately assured of future

performance; (c) establishing procedures for determining additional adequate assurance of future

payment and authorizing the Debtors to provide adequate assurance of future payment to utility

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O Corp , a California corporation; New Century R.E.O II Corp , a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L P , a Delaware limited partnership

Date: 4-2-07
Docket No. 5

providers pursuant to section 366(b) of Title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code"); and (d) scheduling a final hearing thereon. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b).

2.    The basis for the relief requested herein is section 366(b) of the Bankruptcy Code.

## BACKGROUND[2]

3.    New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year

---

[2] The facts and circumstances supporting this Motion are set forth in the Declarations of Monika McCarthy and Holly Etlin in Support of Chapter 11 Petitions and Request for First Day Relief.

2

ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.    On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

5.    On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

6.    These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the

3

Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

7.    As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

8.    Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

9.    During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co. LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

10.    The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced

4

these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

      11.    Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

      12.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. Further, a motion for joint administration of the Debtors' bankruptcy cases is pending before the Court. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

## RELIEF REQUESTED

      13.    In the normal course of their business, the Debtors have relationships with certain utility providers (each, a "Utility Provider" and, collectively, the "Utility Providers") for the provision of natural gas, electricity, telephone, sewer, sanitation and other services (the "Utility Services"). The Utility Providers include, without limitation, the entities set forth on the list attached hereto as Exhibit A.[3] The Utility Providers service the Debtors' operations throughout the United States.

      14.    Prior to the Petition Date, the Utility Providers provided Utility Services to the Debtors at various locations throughout the United States. Ordinarily, upon receipt of a monthly invoice, the Debtors pay each of the Utility Providers directly for the Utility Services provided during the immediately preceding month. To the best of their knowledge, the Debtors

---

[3] The Debtors reserve the right to argue that any of the entities now or hereafter listed on Exhibit A are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code

have not had significant defaults or arrearages with respect to their undisputed invoices for Utility Services, other than payment interruptions that may be caused by the commencement of these chapter 11 cases.

15.    Because uninterrupted Utility Services are critical to the Debtors' ongoing operations, the Debtors, by this Motion and pursuant to sections 105(a) and 366 of the Bankruptcy Code, seek entry of interim and final orders: (a) prohibiting the Utility Providers from altering, refusing, or discontinuing Utility Services on account of unpaid prepetition invoices; (b) providing that the Utility Providers have "adequate assurance of payment" by virtue of a supplemental two week deposit (a "Utility Deposit") calculated upon the basis of the average bill over the preceding twelve months;[4] (c) establishing procedures for determining requests for additional adequate assurance of payment; (d) providing that if a Utility Provider timely requests in writing additional adequate assurance that the Debtors believe is unreasonable, then, at the request of the Utility Provider and following a reasonable period for discussion and negotiation, the Debtors shall promptly file a motion for determination of adequate assurance of payment (the "Determination Motion") and set such motion for a hearing (the "Determination Hearing"); (e) providing that any Utility Provider that does not timely request additional adequate assurance of payment, as provided for herein, shall be deemed to have adequate assurance; and (f) providing that, in the event that a Determination Motion is filed or a Determination Hearing is scheduled, any objecting Utility Provider shall be deemed to have adequate assurance of payment without the need for payment of additional deposits or other securities until an order of the Court is entered to the contrary in connection with such Determination Motion or Determination Hearing.

---

[4]    A twelve month payment history was not available for services provided by all Utility Providers. The Debtors calculated the average monthly bill based on the information available.

6

16.    In order to provide adequate assurance of payment for future services to their Utility Providers, the Debtors propose to make a Utility Deposit equal to two weeks of the Debtors' estimated cost of their utility consumption to each Utility Provider, unless a Utility Provider received adequate assurance of payment for future services prior to the Petition Date.[5] The amount of the Utility Deposits totals approximately $118,016.27 in aggregate deposits for the Utility Providers listed on Exhibit A hereto. The Debtors propose to make Utility Deposits to each of the Utility Providers promptly after the entry of an interim order granting this Motion, pending further order of the Court, for the purpose of providing each Utility Provider with adequate assurance of payment of its postpetition services to the Debtors.

17.    In addition, the Debtors seek to establish reasonable procedures (the "Procedures") by which a Utility Provider may request additional adequate assurance of future payment, in the event that such Utility Provider believes that its Utility Deposit does not provide it with satisfactory adequate assurances. Such Procedures, in particular, would provide that:

(a)    If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors, the Utility Provider must serve a written request (the "Request") upon the Debtors setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtors' payment history on each account, and an explanation of why the Utility Deposit is inadequate assurance of payment;

(b)    The Request must be actually received by Debtors' counsel, Suzzanne S. Uhland, Esq. and Emily Culler, Esq., O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071-2899 within forty-five (45) days of the date of the order (the "Order") granting this Motion (the "Request Deadline");

(c)    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if the Debtors, in their discretion, determine that the Request is reasonable;

---

[5] On March 14, 2007, the Debtors paid Southern California Edison $157,590 as adequate assurance of future performance.

(d)    If the Debtors believe that a Request is unreasonable, then they shall, within thirty (30) days after the Request Deadline date, file a Determination Motion pursuant to section 366(c)(3) of the Bankruptcy Code seeking a determination from the Court that the Utility Deposit, plus any additional consideration offered by the Debtors, constitutes adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors or recover or setoff against a prepetition deposit; and

(e)    The Utility Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make a timely Request.

18.    In addition, the proposed form of Order also allows the Debtors to supplement the list of Utility Providers. The Debtors reserve the right, without further order of the Court, to supplement the list if any Utility Provider has been inadvertently omitted. If the Debtors supplement the list subsequent to the filing of this Motion, the Debtors will serve a copy of this Motion and the signed Order on any Utility Provider that is added to the list by such a supplement (the "Supplemental Service"). In addition, the Debtors will also provide a Utility Deposit in the amount equal to the estimated cost of two weeks of utility consumption for the added Utility Provider. Concurrently with the Supplemental Service, the Debtors will file with the Court a supplement to Exhibit A adding the name of the Utility Provider so served. The added Utility Provider shall have thirty (30) days from the date of service of this Motion and the Order to make a Request.

19.    Finally, the Debtors request that the Order provide that Utility Providers must immediately refund any Utility Deposit in the event that the Debtors terminate the services of any Utility Provider. The Debtors believe that the immediate refund of a Utility Deposit by a Utility Provider whose services are terminated is fair and appropriate under the circumstances because the Utility Provider would no longer require adequate assurances of future performance by the Debtors.

8

## BASIS FOR RELIEF

20.    Section 366(a) of the Bankruptcy Code protects a debtor against the immediate termination of utility services after it files for bankruptcy.[6]  Pursuant to this section, a utility may not, during the first thirty (30) days of the case, alter, refuse, or discontinue services to a debtor in a chapter 11 case solely because of unpaid prepetition amounts.  However, the utility may do so thereafter unless the debtor (as the Debtors are doing pursuant to this Motion) furnishes "adequate assurance" of payment, in the form of a deposit or otherwise, for postpetition services in a form "satisfactory" to the utility within 20 days of the Petition Date.

21.    Under the recently enacted section 366(c) of the Bankruptcy Code, in a chapter 11 case, a utility provider may alter, refuse, or discontinue utility service if within 30 days after the commencement of the chapter 11 case the utility provider does not receive

---

[6]  Section 366 states in pertinent part:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.  On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

***

(c)(2) subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(c)(3)    (A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) in making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider —

(i) the absence of security before the date of the filing of the petition;

(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

(iii) the availability of an administrative expense priority

11 U.S.C. § 366.

9

adequate assurance in a form that is "satisfactory" to the utility provider, subject to the Court's ability to modify the amount of adequate assurance. Furthermore, under section 366(c), in making a determination of whether an assurance of payment is adequate, the Court may not consider (i) the absence of security before the petition date, (ii) the debtor's history of timely payment or (iii) the availability of an administrative expense priority to the utility provider.

22.    While the form of adequate assurance of payment may be limited under subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court. It is well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment.

23.    Here, the Debtors propose to make Utility Deposits in order to provide adequate assurance to their Utility Providers. Under the circumstances of these cases, the Debtors believe that the proposed Utility Deposits constitute adequate assurance of payment under section 366(c) of the Bankruptcy Code.

24.    The Debtors propose to further protect the Utility Providers by establishing the Procedures provided herein, under which any Utility Provider can request additional adequate assurance in the event that it can demonstrate facts and circumstances with respect to its providing postpetition services to the Debtors that would merit greater protection.

25.    The Debtors cannot continue to operate without uninterrupted Utility Services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption could have a devastating impact on the Debtors' business operations, revenues and ultimately affect the

10

Debtors' ability to remain going concerns. In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all postpetition utility charges. It is therefore critical that Utility Services continue uninterrupted.

26.     This Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01, at 105-5 to 105-6 (15th rev. ed. 2006). The proposed Procedures protect the Debtors without materially prejudicing the Utility Providers. Therefore, the proposed Procedures implement section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

27.     This Court has granted relief similar to that requested herein after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See, e.g., In re Pliant, No. 06-10001 (MFW) (Bankr. D. Del. Jan. 5, 2006) (two-week deposit for utilities constituted adequate assurances of future performance under section 366 of the Bankruptcy Code); In re Nobex Corporation, No. 05-20050 (MFW) (Bankr. D. Del. Dec. 21, 2005); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Dec. 2, 2005). Moreover, the rights of the Utility Providers will not be prejudiced should the relief requested herein be granted because the Utility Providers are permitted to come before this Court and seek relief according to the Procedures established herein.

11

## NOTICE

28.    No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (4) the Utility Providers; and (5) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served as required by Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended from time to time, the "Local Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

29.    Following entry of the interim Order, the Debtors shall serve by United States mail, first class postage pre-paid, copies of the interim Order and a notice of hearing (the "Final Hearing") to consider entry of the final Order (the "Final Hearing Notice") to be held in accordance with Local Rule 4001-2(c) on (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (4) the Utility Providers; and (5) parties requesting special notice.

12

WHEREFORE, the Debtors respectfully request that this Court (i) immediately enter an interim Order, substantially in the form attached hereto as Exhibit B, and set a date for the Final Hearing, (ii) at the Final Hearing, enter a final Order granting the relief requested herein and (iii) grant such other and further relief as this Court deems appropriate.

Dated: April 2, 2007
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

13

## EXHIBIT A

EXHIBIT A

| Utility Co | Account Number(s) | Average Monthly Payment | Pre-Petition Deposit | Proposed Deposit (2Weeks) |
|---|---|---|---|---|
| Accessline Communications | 10101963726<br>10102048769 | 83 00 | 0 00 | 38 73 |
| Alabama Gas Corporation | 6002-076-196-001 | 275 00 | 0 00 | 128 33 |
| Alabama Power | 59293-97030 01 | 125 00 | 0 00 | 58 33 |
| Allied Waste Services | 1-0717-3411097 | 238 00 | 0 00 | 111 07 |
| Alltel | 40744737444<br>072174080555 | 850 00 | 0 00 | 396 67 |
| AmerenIP | NA | 1.500 00 | 0 00 | 700 00 |
| APS | 965804289<br>113975289<br>435663283 | 875 00 | 0 00 | 408 33 |
| Arch Wireless | 7964836-6 | 600 00 | 0 00 | 280 00 |
| AT&T | 20524897550010500<br>20598283620010542<br>33421336650010537<br>82835082703196<br>61533288581120400<br>61533288581120472<br>61533289470010473<br>91269148010013100<br>31852422410020020511<br>404R239070070<br>770 435-3342 108 1883<br>8033430326 001 1892<br>8033435101 209 1692 | 2.500 00 | 0 00 | 1.166 67 |
| Atmos Energy | 656974<br>608955 | 250 00 | 0 00 | 116 67 |
| Avista | 182232 | 485 00 | 0 00 | 226 33 |
| Cable One | 23404-405354-02-5<br>23406-15477-03-7 | 220 00 | 0 00 | 102 67 |
| Cable One | 23404406970028 | 50.00 | 0 00 | 23 33 |
| Cablevision | 40004 | 572 00 | 0 00 | 266 93 |
| Cascade Natural Gas | 574 0140-7 2<br>7444726-48<br>744472564 | 900 00 | 0 00 | 420 00 |
| CC Communications | 00012811998 | 300 00 | 0 00 | 140 00 |
| C-Com | B7204880575 | 100 00 | 0 00 | 46-67 |
| CCT Telecommunications | 4962 | | 0 00 | 0 00 |
| Centerpoint Energy | 63166805122906 | 90 00 | 0 00 | 42 00 |

EXHIBIT A

| | | | |
|---|---|---|---|
| Chelan County Public Utility | 4185985914 | 60 00 | 0 00 | 28 00 |
| Cincinnati Bell | 5136832200040 | 80,000 00 | 0 00 | 37,333 33 |
| City of Corpus Christi | 451207-391498 | 58 00 | 0 00 | 27 07 |
| City of Granite City | 02-081795-00 | 95 00 | 0 00 | 44 33 |
| City of Moses Lake | 05-0020 00 | 90 00 | 0 00 | 42 00 |
| City of Sherman | 2-09-603-04 | 67 00 | 0 00 | 31 27 |
| City of Ukiah | 68619-6 | 150 00 | 0 00 | 70 00 |
| City of Victorville | 14137-1 | 445 00 | 0 00 | 207 67 |
| City of Wenatchee | 01-14700-05 | 75 00 | 0 00 | 35 00 |
| Columbia Gas of PA | 172123600010006 | 3,200 00 | 0 00 | 1,493 33 |
| Comcast | 8770-35-042-0291155 | 293.00 | 0.00 | 136.73 |
| ComEd | 4077336035<br>4077380015<br>7865026050<br>1995103002<br>7362719049<br>3965119030 | 10,500 00 | 0 00 | 4,900 00 |
| Consolidated Communications | | 500 00 | 0 00 | 233 33 |
| Cox Communications | 17601043959601<br>17601045565501<br>18610 079635902 | 275 00 | 0 00 | 128 33 |
| Cox Communications | 18620102300001 | 47 00 | 0 00 | 21 93 |
| CYPRESS COMM | 890C3802404C3801Y | 4,000 00 | 0 00 | 1,866 67 |
| DIRECTV | 22558454<br>008505831 | 100 00 | 0 00 | 46 67 |
| Dominion East Ohio | 4 5000 2074 4499 | 85 00 | 0 00 | 39 67 |
| Embarq | 5419946198825<br>7176309725630<br>7176320653588 | 5,000 00 | 0 00 | 2,333 33 |
| Eschelon | 5040905<br>005043475<br>005044013 | 4,000 00 | 0 00 | 1,866 67 |
| FDN Communications | 2041970 | 100 00 | 0 00 | 46 67 |
| Florida Power & Light | 76860-77590 | 330 00 | 0 00 | 154 00 |
| Frontier Communications | 91668338330404000<br>92871871120310065<br>92885494000404025 | 1,500 00 | 0 00 | 700 00 |

EXHIBIT A

| | | | |
|---|---|---|---|
| Georgia Power Company | 72179-15017<br>75179-15017<br>623055601509<br>1048248005<br>59883-75001<br>37465-66015<br>62305-56015 | 1.400 00 | 0 00 | 653 33 |
| Global Crossing | 633111<br>640346 | 2.500 00 | 0 00 | 1.166 67 |
| GlobalCom | 5000466 | 500 00 | 0 00 | 233 33 |
| Grant County Public Utility | 3919913740 | 175 00 | 0 00 | 81 67 |
| Gulf Telecom | 2813333343020920 | 200 00 | 0 00 | 93 33 |
| Hawaiian Telecom | 100923845000010<br>104025161700010<br>106025766100010<br>107400043000010<br>101523219100010<br>225244106025766100<br>225244107400043002<br>103800106000<br>226245100923845002<br>808-521-7102<br>105223387200010<br>109614907900010<br>108123633700010 | 1.000 00 | 0 00 | 466 67 |
| HORIZON TELEPHONE | 182559<br>0182586 | 400 00 | 0.00 | 186 67 |
| Idaho Power | 6238393823 | 80 00 | 0 00 | 37 33 |
| Imperial Irrigation District | 50214795 | 400 00 | 0 00 | 186 67 |
| Intermountain Gas | 66408748-275-1 | 600 00 | 0 00 | 280 00 |
| Irvine Ranch Water District | 20-105967-02-8<br>30-001436-07-7 | 350 00 | 0 00 | 163 33 |
| Kaua'l Island Utility Cooperative | 425013224-001 | 875.00 | 0,00 | 408.33 |
| Keyspan | 52820-15644 | 650 00 | 0 00 | 303 33 |
| LIPA | 9550517353<br>9550517501<br>9950517451 | 1.200 00 | 0 00 | 560 00 |
| Logix | 43779365 | 157 00 | 0 00 | 73 27 |
| M Power Communications | 379039 | 0 00 | 0 00 | 0 00 |
| Macke Water Systems | 135910 | 150 00 | 0 00 | 70 00 |
| Maui Electric Co MECO | 87008332010 | 725.00 | 0.00 | 338.33 |
| MCI | 8690726600<br>6000044063X26 | 1.500 00 | 0 00 | 700 00 |
| Met-Ed | 804560851 | 90 00 | 0 00 | 42 00 |

EXHIBIT A

| | | | | |
|---|---|---|---|---|
| Metrocall | 0340747-5 | 8 00 | 0 00 | 3 73 |
| National Grid | 185032216300<br>132102188401<br>132102243103<br>129110553603 | 7.500 00 | 0 00 | 3.500 00 |
| Nevada Power | 3000155517217120000<br>3000226644918622754 | 410 00 | 0 00 | 191 33 |
| NorthWestern Energy | 1475392-5 | 550 00 | 0 00 | 256 67 |
| NSTAR Electric | 2675 296 1016 | 3.500 00 | 0 00 | 1.633 33 |
| NUVOX | 174965 | 600 00 | 0.00 | 280 00 |
| NW Natural | 244922-1 | 1.070 00 | 0 00 | 499 33 |
| Ohio Edison | 1100 47 4938 2 7<br>11 00 40 8717 7 1 | 100 00 | 0 00 | 46 67 |
| Oklahoma Gas&Elec | 127239901-3<br>127239902-1<br>292-1645455014<br>211317796 1981889 | 31 00 | 0 00 | 14 47 |
| Pacific Power | 79965539-0018<br>21719975-0027 | 175 00 | 0 00 | 81 67 |
| Pepco | 0105 7171 69 | 300 00 | 0 00 | 140 00 |
| PG&E | 6785865722<br>7656768477-0<br>2130369450-5<br>1671330800-1<br>1712997464-2<br>9173462907-3<br>8816540866-2<br>6345802964 | 2.750 00 | 0 00 | 1.283 33 |
| Premiere Global Services | 6658285 | 15.000 00 | 0 00 | 7.000 00 |
| Progress Energy | 5763474508 | 525 00 | 0 00 | 245 00 |

EXHIBIT A

| | | 41.500 00 | 0 00 | 19,366 67 |
|---|---|---|---|---|
| Qwest | 2069231837557 | | | |
| | 2083275586436 | | | |
| | 2083787319122 | | | |
| | 2087362963091B | | | |
| | 3602606979863 | | | |
| | 3608839731778 | | | |
| | 4067212451127 | | | |
| | 4254534700103 | | | |
| | 4254550569698 | | | |
| | 4257095540593 | | | |
| | 4808970318363 | | | |
| | 4808976565721 | | | |
| | 5036558125047 | | | |
| | 5053271455160B | | | |
| | 5058780511800 | | | |
| | 5058885480382 | | | |
| | 5097541950805 | | | |
| | 5097659790305 | | | |
| | 5206224385250 | | | |
| | 5206257100774 | | | |
| | 5413427576627 | | | |
| | 5413888181618 | | | |
| | 5414167480916 | | | |
| | 5415040178228 | | | |
| | 5417528888580 | | | |
| | 6022167600373 | | | |
| | 6028630067184 | | | |
| | 7193923500701 | | | |
| | 7195424100436 | | | |
| | 7195765580938 | | | |
| | 7195765626654 | | | |
| | 7195799010003 | | | |
| | 7202005800871 | | | |
| | 9282268266431 | | | |
| | 9284458652310 | | | |
| | 9705134456079 | | | |
| | 9706680829032B | | | |
| | 9706681681894 | | | |
| | 206T315757594 | | | |
| | 2084428272339B | | | |
| | 2084548726 833B | | | |
| | 3032208387224M | | | |
| | 3032208079 269B | | | |
| | 3032210366 395B | | | |
| | 3032534713672B | | | |
| | 3033000946207B | | | |
| | 3037790800 225B | | | |
| | 3037798049 395B | | | |
| | 3602534713672B | | | |
| | 3602542610216B | | | |
| | 3603572210791B | | | |
| | 4062522756918B | | | |
| | 425-452-8133 328B | | | |
| | 4256375113295B | | | |
| | 4804196554 731B | | | |
| | 4804832188136B | | | |
| | 4807060394520B | | | |

EXHIBIT A

| | | | | |
|---|---|---|---|---|
| | ·· ····· ···· <br> 4807680389284B <br> 4807756768285B <br> 4809880310 096B <br> 5032412391361B <br> 5032831441 048B <br> 5036522662967B <br> 5037624810424B <br> 503B117862523 <br> 5058780200364B <br> 5094667788203B <br> 5205841923162B <br> 520-745-1227 263B <br> 5413185500356B <br> 602-404-2443 <br> 602749170037 <br> 720 200-2682 2 <br> 928777874091 <br> 952-835-6624 <br> J60294364433 <br> J60294364443 <br> 480775676828 <br> 602955006328 | | | |
| Reliant Energy | 4 477 625-0 <br> 5705637-6 <br> 5 492 514-4 <br> 54927736 <br> 654 309-4 <br> 27254036 <br> 51353613 <br> 56748171 <br> 5135 362-1 <br> 1 929 542-7 <br> 5 954 544-2 | 14.000 00 | 0 00 | 6.533 33 |
| Republic Services | 3820-06-001203-9 | 111 00 | 0 00 | 51 80 |
| Republic Waste | 3421-10-039515-4 | 173 00 | 0 00 | 80 73 |
| Riverside Public Utilities | 224120-153139 | 750 00 | 0 00 | 350 00 |
| San Diego Gas & Electric | 3626 770 717 2 | 5.000 00 | 0 00 | 2.333 33 |

EXHIBIT A

| | | | | |
|---|---|---|---|---|
| SBC | 837533723<br>073 085-2644<br>217-S66-5860 874<br>281-461-2550 530<br>281-488-2228<br>317-253-7651 467<br>339-341-6395<br>339-342-7317<br>405-848-2209 161<br>630-250-0640 795<br>630-285-8216 390<br>714-368-96382439<br>734-542-6907 569<br>775-824-2940 211<br>806-794-2007 731<br>847-517-1012 991<br>858-486-1813 051 2<br>915-629-7149 292<br>920-759-9900<br>949-757-1759<br>960-551-2263 555<br>960-732-9079 555<br>972-380-9544 331<br>NV300022<br>829284741 | 300 00 | 0 00 | 140 00 |
| SCANA Energy | 5-3101-1092-7708 | 300 00 | 0 00 | 140 00 |
| SCE&G | 7-2100-7087-4578 | 1.600 00 | 0 00 | 746 67 |
| Sierra Pacific | 1000014509201800000 | | 0 00 | 0 00 |
| Southern California Edison | 2-27-700-8330<br>2-24-756-2796<br>2-24-722-9172<br>2-23-266-4599<br>2-23-595-4500<br>2280045147 | 37.000 00 | 157.590 00 | 0 00 |
| Southwest Gas Corp | 121039-4089028<br>121039-4675027<br>211-4733411-003 | 700 00 | 0 00 | 326 67 |
| Southwestern Electric Power Co | 969-329-761-1-9<br>961-615-782-1-4<br>968-638-761-2-2 | 1.200 00 | 0 00 | 560 00 |
| SRP | 425-571-004<br>625-571-004<br>708-231-003 | 550 00 | 0 00 | 256 67 |
| Surewest | 559419-0001 | $125 00 | 0 00 | 58 33 |
| The Gas Company | 070 563 0662 9<br>09883508658<br>150 909 5441 1<br>022 564 2244 1 | 650 00 | 0 00 | 303 33 |
| Time Warner | 257843 | 4.500 00 | 0 00 | 2.100 00 |
| Truckee Meadows Water | 1549484 | 35 00 | 0 00 | 16 33 |
| TXU Energy | 862-7983-96-1<br>7306651964<br>933-9559-97-4<br>659-9019-95-4 | 1.500 00 | 0 00 | 700 00 |

EXHIBIT A

| | | | | |
|---|---|---|---|---|
| Unisource | 10510717<br>3813755<br>4205324<br>3116282<br>3145885 | 1,200.00 | 0.00 | 560.00 |
| Unisource Energy | 10510717<br>6979751 | 900.00 | 0.00 | 420.00 |
| Verizon | 440000084115<br>856931404475411<br>012519128332558609<br>12547111B16955800<br>012549126044655708<br>012573123139401308<br>012581126805886610<br>012820124505110508<br>012865121035297402<br>030003104168225504<br>030003109168225906<br>30104107250727300<br>30107106240586300<br>30107106240586302<br>030246102290267900<br>030260102395604704<br>030270106461813809<br>030301108943086901<br>030478109979683006<br>030557101440781908<br>30559104095343300<br>030606105798231801<br>6105244271617182Y<br>78174080603550084<br>105236284956523700<br>105464283565824000<br>105610287108473504<br>105668288707628109<br>105680283955566208<br>105680289255262106<br>151461063265915000<br>454402392930851701<br>00074319614785Y<br>00091220760796Y<br>0125731103184343 09<br>1054402884057928 04 | 4,200.00 | 0.00 | 1,960.00 |

EXHIBIT A

| | | | |
|---|---|---|---|
| | 50883002191510000<br>562 862-4400 020124<br>11421111517416000<br>717737082973422Y<br>717737024016769Y<br>7608379407 060619<br>760962 6860 020611<br>6000044063 X26<br>9036700576 020403<br>909 944-1100 040414<br>972 423-8661 961114<br>9739B9699235252Y<br>201-930-8722<br>202-223-6236<br>212 704-4246<br>425 844-6080 050914<br>50830333558020079<br>631-249-4191<br>000047627562<br>781-932-4211<br>781-283-5878<br>805-981-1990<br>813-872-6038<br>845-735-5640<br>972-434-7733<br>9725099067<br>973-605-1123<br>000703108623<br>972-434-7733<br>9725099067<br>973-605-1123<br>000703108623 | | | |
| Victor Valley water District | 33269-55138 | 20 00 | 0 00 | 9 33 |
| Victorville | NA | 20.00 | 0.00 | 9.33 |
| Village of Libertyville | 0109316100-01 | 275 00 | 0 00 | 128 33 |
| Waste Management of Orange County | 313-2741384-2515-3 | 1.956 00 | 0 00 | 912 80 |
| Western Waste Services | n/a | 255 00 | 0 00 | 119 00 |
| Xcel Energy | 5376922899 | 618 00 | 0 00 | 288 40 |
| XO Communications | NA | 4.000 00 | 0 00 | 1.866 67 |

**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    :    **Chapter 11**
                                          :
NEW CENTURY TRS HOLDINGS,                 :    Case No. 07-[_____] (___)
INC., a Delaware corporation, et al.,[1]  :
                                          :    Jointly Administered
                                          :
                      Debtors.            :

**INTERIM ORDER PURSUANT TO SECTION 366 OF THE BANKRUPTCY
CODE (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING,
REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES
ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

This matter coming before the Court on the Motion for Interim and Final Orders

Authorizing the Debtors to Provide Adequate Assurance of Payment to Utility Providers

Pursuant to Section 366(b) of the Bankruptcy Code (the "Motion"), filed by the above-captioned

debtors and debtors in possession (collectively, the "Debtors"); the Court having reviewed the

Motion; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (c)

notice of this Motion having been provided to, inter alia, the Office of the United States Trustee

for the District of Delaware; counsel to Greenwich Capital Financial Products, Inc.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R E O Corp, a California corporation; New Century R E O II Corp, a California corporation; New Century R E O III Corp, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L P, a Delaware limited partnership

("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; the Utility Providers; and all parties who have filed timely requests for notice under Bankruptcy Rule 2002, and (d) capitalized terms not otherwise defined herein have the meaning given to them in the Motion; and the Court having considered the Declarations of Taj Bindra and Holly Etlin in Support of Chapter 11 Petitions and Request for First Day Relief; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED on an interim basis.

2. Until the entry of a subsequent order of this Court, to be considered at the Final Hearing, the Debtors are authorized, but not directed, to pay on a timely basis in accordance with their prepetition practices all undisputed invoices in respect of postpetition Utility Services rendered by the Utility Providers to the Debtors.

3. Unless any Utility Provider received adequate assurance of payment for future services prior to the Petition Date, promptly after the date of entry of this Order, but in no event later than 20 days after the Petition Date, the Debtors shall furnish Utility Providers adequate assurance of payment for postpetition date services by making a deposit (a "Utility Deposit") equal to two weeks of the Debtors' estimated costs, totaling approximately $118,016.27 in aggregate deposits, of their utility consumption to each Utility Provider for the purpose of providing such Utility Provider with adequate assurance of payment of its

postpetition date services to the Debtors.

4.     Except in accordance with the procedures set forth below, absent further order of the Court, each Utility Provider is prohibited from (a) altering, refusing or discontinuing service to, or discriminating against the Debtors solely on the basis of the commencement of these cases or on account of any unpaid invoice for services provided before the Petition Date and (b) requiring the payment of any additional deposit or other security in connection with the Utility Providers' continued provision of utility services, including the furnishing of gas, electricity, telephone or sanitation services, or any other utility service of like kind to the Debtors.

5.     If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors in the Motion, then the Utility Provider must serve a written request (the "Request") upon the Debtors setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtors' payment history on each account, and an explanation of why the Utility Deposit is inadequate assurance of payment.

6.     The Request must be actually received by Debtors' counsel, Suzzanne S Uhland, Esq. and Emily Culler, Esq., O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071-2899, within forty-five (45) days of the date of this Order (the "Request Deadline").

7.     Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if the Debtors in their sole discretion determine that the Request is reasonable

8.    If the Debtors believe that a Request is unreasonable, the Debtors within thirty (30) days after the receipt of the Request shall file a motion pursuant to section 366(c)(2) of the Bankruptcy Code (a "Determination Motion"), seeking a determination from the Court that the Utility Deposit paid to the objecting Utility Provider, plus any additional consideration offered by the Debtors, constitutes adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors or recover or setoff against a prepetition deposit.

9.    The Utility Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make a timely Request.

10.    The Debtors may supplement the list of Utility Providers on Exhibit A to the Motion. If the Debtors supplement the list subsequent to the filing of the Motion, the Debtors will serve a copy of the Motion and this Order on any Utility Provider that is added to the list by such a supplement (the "Supplemental Service"). In addition, the Debtors will send a sum equal to two weeks of the estimated cost of utility consumption as a Utility Deposit for the added Utility Provider. Any subsequently added Utility Provider set forth on a supplement to Exhibit A to the Motion will fall within the scope of this Order from the date of the filling of the supplemental Exhibit A. If such an added Utility Provider makes a request, the Debtors and such Utility Provider shall be bound by the Procedures set forth herein, as applicable.

11.    The Debtors may terminate the services of any Utility Provider by providing written notice (a "Termination Notice"). Upon receipt of a Termination Notice by a Utility Provider, the Utility Provider shall immediately refund any unused Utility Deposit to the Debtors.

12.    Nothing in this Order shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Provider as provided by sections 362 and 365 of the Bankruptcy Code or other applicable law, and nothing herein or in the Motion shall constitute postpetition assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code, nor shall anything herein be deemed a waiver by the Debtors or any other party of any rights with respect to the assumption or rejection of an executory contract.

13.    A Final Hearing to consider the Motion is scheduled for _____, 2007 at _____ m. before the undersigned United States Bankruptcy Judge. Any objections to the relief requested in the Motion must be filed with the Clerk of the Bankruptcy Court and served upon and received by counsel to the Debtors; counsel to Greenwich Capital Financial Products, Inc ("Greenwich") and The CIT Group/Business Credit, Inc ("CIT"), the Debtors' proposed post-petition senior secured lenders; the Office of the United States Trustee for the District of Delaware; and counsel to any statutory committee(s) appointed in these cases on or before _____, 2007 at ____ p.m. EDT.

14.    Pursuant to Bankruptcy Rule 4001(b), the Debtors shall serve a copy of this Order by United States mail, first class postage pre-paid, on the Office of the United States Trustee for the District of Delaware; counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; the Utility Providers; all persons requesting special notice herein, and counsel for any statutory committee(s), if one has been appointed or, if not, on 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions, on or before _____, 2007.

15.    This Court shall retain jurisdiction over all matters arising from or related

to the interpretation or implementation of this Order

      16.    The Debtors, their officers, employees and agents, are authorized to take

or refrain from taking such acts as are necessary and appropriate to implement and effectuate the

relief granted herein.

Dated: _____, 2007
       Wilmington, Delaware

                                    _____
                                      UNITED STATES BANKRUPTCY JUDGE