## EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| | : | |
| Debtors. | : | **Related to Doc. No. 12** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362 AND 364 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 4001 AND 9014 (A) APPROVING DEBTOR-IN-POSSESSION FINANCING WITH ADMINISTRATIVE EXPENSE SUPERPRIORITY AND SECURED BY LIENS, (B) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE CLAIM, (C) GRANTING OTHER RELIEF AND (D) SETTING FINAL HEARING**

Upon the Emergency Motion of Debtors and Debtors in Possession for Interim and Final Orders (a) Approving Debtor-in-Possession Financing with Administrative Expense Superpriority and Secured by Senior Liens, (b) Granting Liens and Superpriority Administrative Expense Claim, (c) Granting Other Relief and (d) Setting Final Hearing (the "Motion") dated April 2, 2007 of New Century Financial Corporation ("New Century") and the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed in the above-captioned cases (collectively, the "Cases") to, inter alia:

(i)    Obtain secured credit pursuant to sections 105 and 364(c) of title 11 of the United States Code (11 U.S.C. § 101 et seq., as amended, the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Rules"), from Greenwich Capital Financial Products, Inc. in its capacity as Lender and Administrative Agent[2], ("Greenwich") and The CIT Group/Business Credit, Inc. in its capacity as Lender and Documentation Agent ("CIT") (collectively, the "Secured Parties") pursuant to that certain Debtor-in-Possession Loan and Security Agreement Dated as of April 2, 2007 by and among New Century Mortgage Corporation, as debtor and debtor-in-possession, certain of its Affiliates, as debtors and debtors-in-possession, Greenwich Capital Financial Products, Inc., as Administrative Agent, and The CIT Group/Business Credit, Inc., as Documentation Agent substantially in the form attached as Exhibit A hereto and the related Loan Documents (collectively, the "DIP Loan Agreement") by and among the Debtors and the Secured Parties, in the aggregate principal amount outstanding from time to time of up to [$150,000,000] (the "DIP Facility"); and

(ii)     requesting, pursuant to Bankruptcy Rule 4001, that an emergency interim hearing (the "Emergency Interim Hearing") be held before this Court on an emergency basis to consider entry of this interim order authorizing the Debtors to obtain the financing contemplated in the DIP Loan Agreement (the "Interim Order"), and further requesting that a final hearing (the "Final Hearing") thereafter be held before this Court to consider entry of a final order (the "Final Order") authorizing the financing contemplated by the DIP Loan Agreement, as set forth in the Motion and the DIP Loan Agreement;

The Emergency Interim Hearing having been held on April ——,3, 2007, upon all of the pleadings filed with the Court and upon the record of the Emergency Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the DIP Loan Agreement.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW[3]:**

      A.    **Petition.**  On April 2, 2007 (the "Filing Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code .  The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108.  Pursuant to order of this Court, the Debtors' cases are being jointly administered under the case number above.

      B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    **Necessity of Financing**.  The Debtors submit that the proposed financing pursuant to the DIP Loan Agreement will allow them to continue the operations of their businesses and administer, preserve and increase the value of their estates.  The ability of the Debtors to finance their operations requires the availability of additional working capital, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors and the possibility for the Debtors' successful reorganization.  Entry of this Interim DIP Order approving the DIP Facility will benefit the Debtors and their estates and creditors.

      D.    **Willingness to Lend.**  The Secured Parties are willing to make the DIP Facility available and to make the loans and advances thereunder pursuant to the terms of the DIP Loan Agreement, only upon the condition that the Secured Parties are granted with respect to the Obligations as provided herein and in the DIP Loan Agreement, (i) pursuant to

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Emergency Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order to the extent not inconsistent herewith.

section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim in each Chapter 11 Case and (ii) Liens on and security interests in the Collateral pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code in the priority set forth herein and in the DIP Loan Agreement (collectively, the "Secured Parties' Liens").

E.    **No Credit Available on Other Terms**. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a) and 364(b) of the Bankruptcy Code.

F.    **Business Judgment and Good Faith**. ~~The~~Based on the record before the Court, the terms of the DIP Facility (including the DIP Loan Agreement) are fair, just, and reasonable under the circumstances, are appropriate for secured financing to a debtor in possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. ~~The~~Based on the record before the Court, the terms of the DIP Facility have been negotiated in good faith and at arms' length by and between the parties, with all parties represented by counsel. ~~Any~~Based on the record before the Court, any credit extended under the terms of the DIP Facility shall be extended in good faith by the Secured Parties as that term is used in section 364(e) of the Bankruptcy Code. Based on the record before the Court, Secured Parties will also be acting in good faith within the meaning of section 364(e) of the Bankruptcy Code in closing the transactions contemplated in the DIP Loan Agreement at any time after the entry of this Interim Order. Based on the record before the Court, Secured Parties are not "insiders" or "affiliates" of any of the Debtors (as such terms are defined in the Bankruptcy Code).

G.    **No Representations or Reliance**. The Debtors stipulate that the Agents, Secured Parties and the Indemnified Parties have made no representations, offered no opinions, and have taken no positions, either individually or collectively, regarding the value

of any portion of the Collateral, and, in determining the value of the Collateral, the Debtors have not relied upon any representation, opinion or position of the Agents or the Secured Parties in regard thereto.

H.    **Property of the Estate**.  Each item of the Collateral constitutes property of the estate of at least one Debtor.

I.    **Good Cause.**  The DIP Facility and relief requested in the Motion are necessary, essential, appropriate and in the best interest of the Debtors, their creditors, and their Estates, as its implementation will, among other effects, provide Debtors with the necessary liquidity (a) to minimize disruption to Debtors' businesses and on-going operations, (b) to preserve and maximize the value of the Estates for the benefit of all creditors of Debtors, and (c) to avoid immediate irreparable harm to Debtors, their creditors, their businesses, their employees, and their assets.

J.    **Notice.**  Pursuant to Bankruptcy Rule 4001(c), notice by facsimile of the Emergency Interim Hearing has been given to (i) the United States Trustee, (ii) counsel for the Secured Parties, (iii) all known holders of Liens, encumbrances, or security interests in the Collateral, and (iv) the twenty largest unsecured creditors of the Debtors.  Based on the record made by the Debtors, the Court finds that appropriate notice of the Emergency Interim Hearing has been given.

Based on the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.    The Motion is granted in accordance with the terms of this Interim Order.  The Debtors are immediately authorized and, pursuant to the terms of this Interim Order and the terms and conditions of the DIP Loan Agreement, empowered to borrow funds under the DIP Facility in such amount or amounts as may be available to or for the benefit of the Debtors from Secured Parties, which shall not exceed the aggregate amount of

[$150,000,000] for the purposes permitted under the DIP Loan Agreement and this Interim Order.

2.      Any objections to the Motion with respect to entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

3.      Except as set forth in this Interim Order, the terms and conditions of the DIP Loan Agreement are hereby approved in all respects. All provisions in the DIP Loan Agreement are binding and enforceable in full even if not expressly referenced in this Interim Order. The Debtors and the Secured Parties with respect to the DIP Loan Agreement may finalize, amend, modify, supplement or waive any provision of the DIP Loan Agreement if such amendment, modification, supplement or waiver is permitted under the terms of the DIP Loan Agreement and is not material (in the good faith judgment of the Secured Parties and the Debtors) without any need to apply to, or receive further approval from, the Court.

4.      The Debtors are hereby authorized to (a) do and perform all acts and to make, execute, and deliver all instruments and documents which may be requisite or necessary for the performance by the Debtors under the DIP Loan Agreement, and (b) pay all principal, interest, reasonable fees and other expenses which may be required or necessary for the Debtors to perform all of their Obligations under this Interim Order and the DIP Loan Agreement (collectively, the "DIP Obligations"). Each officer of each Debtor, and each such other individual as may be so authorized by the Board of Directors of such Debtor, acting singly, is hereby authorized to execute and deliver any and all of the DIP Loan Agreement and related documents, such execution and delivery to be conclusive of their respective authority to act in the name and on behalf of the Debtors.

5.      The Debtors are hereby authorized and directed to pay the fees as they come due under the DIP Loan Agreement to Secured Parties without further Court order,

including without limitation, the Commitment Fee, the Facility Fee (including the Interim Fee Amount), and all reasonable out-of-pocket costs and expenses of the Secured Parties (including reasonable attorney's fees and expenses) as provided for under the DIP Loan Agreement. The Debtors shall send copies of invoices received by them for such costs and expenses (including attorneys' fees and expenses) to (i) counsel for the United States Trustee, and (ii) counsel to any official committee appointed in these cases.

6.    In providing for the advancement of post-petition financing under the DIP Loan Agreement, each of the Debtors and Secured Parties acknowledges, stipulates and agrees that, in entering into the DIP Loan Agreement, and as consideration therefor:

(a)    all of the Debtors have obtained all authorizations, consents and approvals necessary from, and have made all filings with and given all notices (if any such notice was required) to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Agreement to which each Debtor is a party; and

(b)    the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Loan Agreement, the Debtors shall not in any way prime or otherwise adversely affect the Secured Parties' Liens granted under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to sections 364(d) or 507(b) of the Bankruptcy Code or otherwise; and

(c)    the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Loan Agreement, the Debtors shall not in any way grant junior encumbrances on the Collateral upon which the Secured Parties possess Liens provided to

them under this Interim Order; and further, the Debtors agree that the Debtors shall not otherwise encumber otherwise unencumbered assets.

## COLLATERAL SECURITY

7.     Pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and as protection to the Secured Parties and to secure the repayment of the DIP Obligations, the Administrative Agent, for the benefit of the Secured Parties, shall have and is hereby granted a valid, binding, and enforceable perfected security interest in and to and Lien on all the Collateral, whether now owned or hereafter acquired, now existing or hereafter created and wherever located; provided, however, that for the purposes of this Interim Order the Liens granted by this paragraph shall only attach to actions available to the Debtors or their bankruptcy estates pursuant to Sections 544, 545, 547, 548, 550, 551, 553(b) or 724(a) of the Bankruptcy Code and the proceeds thereof (collectively, the "Avoidance Actions") subject to theupon entry of the Final Order approving such relief.

8.     The Lien in favor of the Administrative Agent for the benefit of the Secured Parties pursuant to section 364(c)(2) of the Bankruptcy Code shall be a valid, binding, and enforceable first priority perfected security interest in and to and Lien on all the Collateral that is included in the Borrowing Base, whether now owned or hereafter acquired, now existing or hereafter created and wherever located, subject as to priority, in the case of the security interest in and to and Lien on all the Collateral that is included in the Tranche B Borrowing Base, only to the Liens securing the Obligations (as defined in the Citibank Servicer Advance Facility Agreement).

9.     The Lien in favor of the Administrative Agent for the benefit of the Secured Parties pursuant to section 364(c)(3) of the Bankruptcy Code shall be a valid, binding, and enforceable first priority perfected security interest in and to and Lien on all of its right, title and interest in, to and under all the Collateral except for Collateral subject to

Liens existing on the Filing Date securing the Senior Claims; provided however that should

any such Lien securing such a Senior Claim be voided, extinguished or determined not to be

valid, the Liens granted to the Secured Parties hereunder shall, notwithstanding anything to

the contrary in Section 551 of the Bankruptcy Code, be deemed perfected first priority liens

without any further action by the Secured Parties or this Court.

   10. The Liens and security interests granted to the Secured Parties under

this Interim Order and the DIP Loan Agreement shall continue to be at all times first and

senior in priority to all other Liens or security interest of every kind and shall not be

subordinate or pari passu with any other Lien or security interest or right of setoff, and no

Lien or security interest shall be permitted which shall be senior to or pari passu with the

Liens and security interests granted to the Secured Parties hereby or under the DIP Loan

Agreement; provided, however that the Secured Parties' Liens shall be junior and shall be

subject only to the valid, binding, and enforceable Liens securing and setoff, netting and

recoupment rights with respect to the Senior Claims as of the Filing Date, the Carve Out, and

up to $440,000 of ordinary course fees and charges owed to Union Bank of California as the

Debtors' cash management bank, conditioned upon Union Bank of California promptly

allowing the Debtors immediate access to accounts maintained with Union Bank of

California pursuant to the Court's order approving the maintenance of the cash management

system.  Notwithstanding anything herein to the contrary, the liens and security interests

granted to the Secured Parties shall not extend to accounts maintained by the Debtors as

custodians or that are not property of the estates. and the Carve Out.

   11. The above-described Secured Parties' Liens and security interests

granted to the Secured Parties herein shall not (i) be subject to any lien or security interest

that is avoided and preserved for the benefit of the Debtors' estates as a result of any

Avoidance Actions, or (ii) be subordinated to or made pari passu with any other lien or
security interest under section 364(d) of the Bankruptcy Code or otherwise.

   12. This Interim Order shall be sufficient and conclusive evidence of the
validity, perfection, and priority of the Secured Parties' Liens upon the Collateral, without
the necessity of filing or recording any financing statement or other instrument or document
which may otherwise be required under the law of any jurisdiction or the taking of any other
action to validate or perfect the Secured Parties' Liens on and its security interests in the
Collateral or to entitle the Secured Parties to the priorities granted herein.  The Secured
Parties shall not be required to file any financing statements, mortgages, notices of lien or
similar instruments in any jurisdiction or filing office, or to take any other action in order to
perfect the Secured Parties' Liens and security interests granted by or pursuant to this Interim
Order or the DIP Loan Agreement.

   13. ~~Subject to the~~Upon entry of the Final Order, pursuant to sections
364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license,
contract or other agreement that requires the consent or approval of one or more parties, or
requires the payment of any fees or obligations to any governmental entity, in order for any of
the Debtors to pledge, grant, sell, or otherwise transfer any such interest or the proceeds
thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of
the Bankruptcy Code and shall have no force and effect with respect to the transactions
granting the Secured Parties a senior security interest in such interest or the proceeds of any
assignment and/or sale thereof by any of the Debtors in favor of the Secured Parties in
accordance with the terms of the DIP Loan Agreement.

   14. Should the Secured Parties, in their sole discretion (but not as a
requirement hereunder), from time to time choose to file financing statements, mortgages,
notices of lien or similar instruments, take possession of any Collateral, or take any other

action to validate or perfect any such security interests or Liens, the Debtors and their officers are hereby directed to execute any such documents or instruments as the Secured Parties may reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of the entry of this Interim Order.

15.    The Secured Parties may, in their discretion, file a copy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and, in such event, the applicable filing or recording officer or registrar is authorized to file or record such copy of this Interim Order.

16.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted to grant the Secured Parties' Liens and security interests to the Secured Parties contemplated by the DIP Loan Agreement and this Interim Order, and is further lifted to the extent of the exercise by the Secured Parties of any rights or remedies under the DIP Loan Agreement, subject only to the notice requirement set forth in paragraph 21 herein.

## ADMINISTRATIVE CLAIM

17.    As further protection to the Secured Parties and to secure the repayment of the DIP Obligations, all of the DIP Obligations shall have the status of allowed superpriority administrative expense claims, in accordance with section 364(c)(1) of the Bankruptcy Code, and shall have priority over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, any adequate protection-related claims and any administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code to the extent permitted by applicable law.

18.    Notwithstanding the foregoing provisions of this Interim Order, the following amounts shall be payable from and chargeable against the Collateral (and prior to the Secured Parties' Liens) (the "Carve-Out"):

(a)    amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/Clerk Fees"); and

(b)    allowed fees and expenses of attorneys, accountants, and other professionals retained in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code (except to the extent such fees and expenses incurred for services rendered in connection with the prosecution of actions, claims or causes of action against the Secured Parties or in improperly preventing or hindering or unreasonably delaying, whether directly or indirectly, the Secured Parties' assertion or enforcement of the Secured Parties' Liens or realization upon the Collateral) (the "Priority Professional Expenses"), but the amount entitled to priority under this sub-clause shall not exceed $7,000,000 outstanding in the aggregate at any time ~~for~~ (the "Carve-Out Amount"), which sublimits shall be as follows: (i) Priority Professional Expenses (inclusive of any holdbacks required by the Court) accruing after an Event of Default~~, which~~ shall not exceed $4,000,000 in the aggregate ~~and;~~ (ii) any unpaid Priority Professional Expenses accrued prior to an Event of Default~~, which~~ shall not exceed $3,000,000 in the aggregate ~~(the "Carve-Out Amount");~~ and (iii) Union Bank of California fees shall not exceed $440,000, conditioned upon Union Bank of California promptly allowing the Debtors immediate access to accounts maintained with Union Bank of California pursuant to the Court's order approving the maintenance of the cash management system; provided, however, that after the Secured Parties have provided notice to New Century of the occurrence of an Event of Default or a default hereunder by the Debtors in any of their obligations under this Interim Order, any payments actually made to such professionals after the occurrence of such Event of Default or default hereunder, under

sections 330 and 331 of the Bankruptcy Code or otherwise, to the extent allowed by final

order of the Court, shall reduce the Carve-Out Amount on a dollar-for-dollar basis. Nothing

contained herein shall be construed as consent to the allowance of any fees and expenses

referred to above and shall not affect any right of the Secured Parties to object to the

reasonableness of such amounts. For the avoidance of doubt, the Carve-Out Amount shall

not exceed $7,000,000 in the aggregate, irrespective of the sublimits established in this

paragraph 18.

19.     So long as an Event of Default shall not have occurred, Debtors shall

be permitted to pay the Priority Professional Expenses of the kind specified in Section 503(b)

of the Bankruptcy Code incurred in the ordinary course of business of the Debtors or

otherwise permitted hereunder and allowed under Sections 330 and 331 of the Bankruptcy

Code, as the same may be due and payable, within the parameters of this Interim Order and

the amounts to be advanced pursuant to the DIP Loan Agreement; provided that the aggregate

of any such payments made on or after the occurrence of a Default or Event of Default to

professionals shall not exceed the Carve-Out Amount. The Debtors shall not be permitted

under any circumstance to pay, from the Carve-Out Amount or otherwise, any fees or

expenses incurred by any party, including the Debtors or the Creditors' Committee, in

connection with the filing and prosecution or defense of any claims, causes of action,

adversary proceedings or other litigation against the Secured Parties, including, without

limitation, challenging the amount, validity, priority or enforceability of, or asserting any

defense, counterclaim, or offset to, the DIP Obligations or the Secured Parties' Liens in

respect thereof.

20.     No other Liens or priority status, other than Permitted Liens, shall have

priority superior to or pari passu with that granted by this Interim Order to Secured Parties, or

shall be granted while any portion of the DIP Obligations under the DIP Loan Agreement remains outstanding, absent the express written consent of the Secured Parties.

21.    Notwithstanding the provisions of section 362 of the Bankruptcy Code and without any further order of, or application or motion to, this Court, in the event of the occurrence of an Event of Default, and at all times thereafter, and without any restriction or restraint by any stay under section 362 of the Bankruptcy Code against the enforcement of the Liens and security interests or any other rights granted to the Secured Parties pursuant to the DIP Loan Agreement, the Secured Parties may, by written notice to the Debtors, (i) terminate forthwith all or any portion of the DIP Facility and the Secured Parties' obligation to make any further loans or advances, (ii) declare the DIP Obligations to be immediately due and payable, and (iii) take any and all actions and exercise any and all rights and remedies allowed under the DIP Loan Agreement, which the Secured Parties may deem appropriate. Notwithstanding the foregoing, but without limiting any of the Secured Parties' rights or remedies, the Secured Parties shall not consummate foreclosure on the Collateral or otherwise seize control of assets of the Debtors' estates absent three (3) business days' prior written notice of an Event of Default to the Debtors, any official committee appointed in these Cases and the Office of the United States Trustee.

22.    ~~Subject to~~Upon entry of the Final Order, neither the Collateral nor Secured Parties shall be subject to surcharge, pursuant to sections 506(c) or 105 of the Bankruptcy Code or otherwise, by any of the Debtors or any other party in interest, until all DIP Obligations are indefeasibly paid in full to the Secured Parties in cash, and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Parties in these Cases, including but not limited to funding of the Debtors' ongoing operations by the Secured Parties. In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

## MISCELLANEOUS PROVISIONS

23.    ~~Subject to~~Upon entry of the Final Order and upon satisfaction of all

DIP Obligations, the Secured Parties solely in their capacity as secured lenders, and each of

their respective participants, agents, officers, directors, affiliates, employees, attorneys,

professionals, trustees, representatives, successors, and assigns, shall be forever released and

discharged from any claims, rights, demands, damages, actions, causes of action, costs,

expenses, whether known or unknown, of or by any person or entity and each of its

participants, agents, officers, directors, affiliates, employees, attorneys, professionals,

trustees, representatives (including any Creditors' Committee), successors, and assigns,

arising from or relating to the DIP Loan Agreement, the application of Collateral to the DIP

Obligations, or any claim or assertion of a right, interest, or claim in or to the Collateral.

24.    As more fully set forth in Section 11.04 of the DIP Loan Agreement,

each Borrower shall hold each Agent, each Lender-Related Party and each Participant (each

Agent, each Lender-Related Party and each Participant, an "Indemnified Party") harmless

from and indemnify any Indemnified Party, on an after-Tax basis, against all liabilities,

losses, damages, judgments, costs and expenses of any kind which may be imposed on,

incurred by or asserted against such Indemnified Party (collectively, the "Indemnified

Liabilities") relating to or arising out of this Interim Order, the DIP Loan Agreement, the

Note, any other Loan Document or any transaction contemplated hereby or thereby, or any

amendment, supplement or modification of, or any waiver or consent under or in respect of,

the Loan Agreement, the Note, any other Loan Document or any transaction contemplated

hereby or thereby. Without limiting the generality of the foregoing, each Borrower agrees to

hold any Indemnified Party harmless from and indemnify such Indemnified Party against all

Indemnified Liabilities with respect to all Mortgage Loans relating to or arising out of any

violation or alleged violation of any environmental law, rule or regulation or any consumer

credit laws, including without limitation laws with respect to unfair or deceptive lending

practices and predatory lending practices, the Truth in Lending Act or the Real Estate

Settlement Procedures Act.

25.     Nothing in this Interim Order, the DIP Facility, or any other documents

related to these transactions shall in any way be construed or interpreted to impose or allow

the imposition upon the Secured Parties any liability for any claims arising from the pre-

petition or post-petition activities of the Debtors in the operation of their business, or in

connection with their restructuring efforts. So long as the Secured Parties comply with their

obligations under the DIP Loan Agreement (including Section 4.11 thereof) and their

obligations, if any, under applicable law (including the Bankruptcy Code), (i) the Secured

Parties shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the

Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from

any cause, (C) any diminution in the value thereof, or (D) any act or default of any carrier,

servicer, bailee, custodian, forwarding agency or other person, and (ii) all risk of loss, damage

or destruction of the Collateral shall be borne by the Debtors.

26.  The Secured Parties are each hereby relieved of the requirement to file

proofs of claim in the Cases with respect to any DIP Obligations and any other claims or liens

granted hereunder or created hereby.

26.     27. The Secured Parties' Liens, security interests, administrative

priorities and other rights and remedies granted to the Secured Parties by the provisions of

this Interim Order and any actions taken pursuant hereto, as well as the Debtors' obligations

to allow access to the Secured Parties' representatives, provide information and otherwise

comply with its undertakings and agreements set forth in the DIP Loan Agreement and this

Interim Order, shall continue beyond and survive the expiration of this Interim Order, and, to

the extent permitted by applicable law, shall not be modified, altered or impaired in any manner by (a) any other financing or extension of credit or incurrence of indebtedness by any of the Debtors under section 364 of the Bankruptcy Code or otherwise (except as contemplated by the DIP Loan Agreement), (b) the entry of an order or orders confirming any plan or plans of reorganization in the Cases, or (c) the entry of an order converting these Cases to cases under chapter 7 of the Bankruptcy Code or dismissing these Cases.

27.    28. The terms and provisions of this Interim Order and the DIP Loan Agreement, and the Secured Parties' Liens and security interests granted to the Secured Parties and the superpriority status of the administrative claims and payment provisions contained in this Interim Order and the DIP Loan Agreement shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, and DIP Loan Agreement is terminated.

28.    29. The Debtors shall not request any order dismissing or converting these Cases under section 1112 of the Bankruptcy Code unless each and every DIP Obligation of the Debtors to the Secured Parties shall have been paid indefeasibly in full in cash and completely satisfied prior to the entry thereof.  The Debtors shall not seek entry of an order providing for the sale of the Collateral under section 363 of the Bankruptcy Code unless either:  (i) all DIP Obligations shall have been paid indefeasibly in full in cash and completely satisfied as part of such transaction; or (ii) the Secured Parties expressly consent to said transaction.

29.    30. To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Agreement, the Motion, any other order of this Court, or any other agreements and the terms and provisions of this Interim Order, unless such term or provisions herein is phrased in terms of "as defined in" or "as described in," the terms and provisions of this Interim Order shall govern.

30. 31. New Century is hereby authorized to act on behalf of each other Debtor with respect to the Debtors' rights and obligations under the DIP Loan Agreement. Any notice given to, or demand made on, New Century by the Secured Parties, pursuant to this Interim Order or the DIP Loan Agreement shall constitute notice to, or demand on, all Debtors.

31. 32. This Interim Order and DIP Loan Agreement shall be valid, binding and enforceable by the Secured Parties against the Debtors, their respective successors and assigns, including, without limitation, any chapter 11 or chapter 7 trustee appointed as a representative of any of the Debtors' Estates; provided, however, that the Secured Parties shall have no obligation to extend any financing to any such chapter 11 or chapter 7 trustee or similar person.

32. 33. The Debtors are authorized and directed to maintain their cash management system in a manner consistent with the DIP Loan Agreement and any order of the Court with respect to the same.

33. 34. If any provision of this Interim Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity and priority of any of the DIP Obligations incurred under this Interim Order and the DIP Loan Agreement, and prior to the effective date of any such modification, vacation, reversal or stay, the validity, enforceability or priority of the DIP Obligations shall be governed in all respects by the original provisions of this Interim Order, and the Secured Parties shall be entitled to all the rights, privileges and benefits granted herein. The transactions contemplated by the DIP Facility have been entered into by the Secured Parties in good faith, and, as a result, the Secured Parties are entitled to the protections afforded by Section 364(e) of the Bankruptcy Code in the event of any reversal or modification of this Interim Order.

34.    35. The security interests and Secured Parties' Liens granted to or for the benefit of the Secured Parties hereunder and the rights of the Secured Parties pursuant to this Interim Order shall not be altered, modified, extended, impaired or affected by any plan of reorganization or other order of the Debtors and shall continue after confirmation and consummation of any plan until the DIP Obligations are indefeasibly paid in full.

35.    36. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before this Court.

36.    37. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

37.    38. The Final Hearing on the Motion and DIP Loan Agreement shall be heard before this Court on the _____ day of _____, 2007 at _____ __.m. in Courtroom ___ at 824 Market Street, Wilmington, Delaware 19801. Any party-in-interest objecting to the relief sought in the Final Order shall file with the Court (with a courtesy copy to chambers) its written objection and serve such objection (so as to be received) no later than _____, 2007 by 4:00 p.m. local Delaware time (the "Objections Deadline"), on the Notice Parties. Debtors shall mail copies of this Interim Order and notice of the Final Hearing (including the Objections Deadline) to counsel for the Debtors, counsel for the Secured Parties, the United States Trustee and any counsel chosen to represent any official committee appointed in these Cases.

38.    39. Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

39.    Notwithstanding anything herein to the contrary, the liens and security interests granted to the Secured Parties shall not extend to accounts maintained by the Debtors in trust or as custodians for the benefit of parties other than a Debtor, or to other assets that are not property of the estates.

40.    Notwithstanding anything to the contrary in the DIP Loan Agreement, it shall not be an Event of Default under the DIP Loan Agreement if the Debtors are not permitted to retain AlixPartners or Lazard Freres & Co., so long as (an)other financial advisor(s) reasonably acceptable to the Secured Parties is/are retained.

41.    No rights of any entity in connection with a contract or transaction of the kind listed in § 561(a) of the Bankruptcy Code, whatever they might or might not be, are affected by the entry of this Order.

Dated: _____, 2007
_____
        Wilmington, Delaware            THE HONORABLE KEVIN J. CAREY
                                        UNITED STATES BANKRUPTCY JUDGE

Document comparison done by DeltaView on Wednesday, April 04, 2007 4:54:17 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://IM-DMS1/RLF1/3133920/3 |
| Document 2 | interwovenSite://IM-DMS1/RLF1/3135060/4 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | Count |
|---|---|
| Insertions | 31 |
| Deletions | 41 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 80 |