IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>New Century TRS Holdings, Inc., et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 07-10416 (KJC) |
| UBS Real Estate Securities Inc.,<br><br>Plaintiff,<br><br>v.<br><br>New Century Mortgage Corporation, NC Asset Holding, L.P., Home123 Corporation, New Century Credit Corporation and New Century Financial Corporation<br>Defendants. | Adv. No. _____ (___) |

## COMPLAINT

UBS Real Estate Securities Inc. ("UBS"), by and through its undersigned counsel, as and for its Complaint against New Century Mortgage Corporation, NC Asset Holding, L.P., Home123 Corporation, New Century Credit Corporation, and New Century Financial Corporation (collectively, the "Repurchasing Debtors"), alleges as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, L.L.C., a Delaware limited liability company, and NCoral, L.P., a Delaware limited partnership.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1409 in that (a) the above-captioned chapter 11 cases to which this action is related are pending in this District before this Court and (b) none of the exceptions set forth in 28 U.S.C. § 1409 apply to this action.

**Nature of the Action**

4. This action involves claims of breach of contract, conversion, and breach of fiduciary duty, and seeks the imposition of a constructive trust, an accounting and permanent injunction based upon the wrongful conduct of the Repurchasing Debtors.

5. This action arises from an agreement entered into between the parties involving a master repurchase agreement, a prevalent funding tool in the mortgage industry whereby one party (usually the mortgage loan originator) sells, and a counterparty buys and becomes the full owner of, mortgage loans, subject to the rights of the original selling party to "repurchase" the loans at a later date under specified terms.

6. Under the terms of a master repurchase agreement entered into between UBS and the Repurchasing Debtors, the Repurchasing Debtors agreed to collect and deposit into a third-party custodial account borrower mortgage payments (principal and interest) for the benefit of UBS, pending the repurchase of the underlying mortgage loans by the Repurchasing Debtors.

7. The Repurchasing Debtors, however, failed to deposit into the custodial account millions of dollars of mortgage payments that they received from borrowers on loans

purchased and owned by UBS. In addition, the Repurchasing Debtors failed to account for missing escrow payments made by borrowers on loans purchased by UBS. As such, the Repurchasing Debtors have misappropriated UBS's money and escrow money being held for borrowers.

### The Parties

8. The plaintiff, UBS Real Estate Securities Inc., is a Delaware corporation with a place of business at 1251 Avenue of the Americas, New York, New York 10020. As part of its business, UBS provides financing to originators of residential mortgage loans.

9. Upon information and belief, defendant, New Century Mortgage Corporation, is a California corporation with its principal place of business at 18400 Von Karman, Suite 1000, Irvine, California 92612. New Century Mortgage Corporation is an originator and servicer of residential mortgage loans.

10. Upon information and belief, defendant, NC Asset Holding, L.P., is a Delaware limited partnership with its principal place of business at 18400 Von Karman, Suite 1000, Irvine, California 92612. NC Asset Holding, L.P. is an originator of residential mortgage loans.

11. Upon information and belief, defendant, Home123 Corporation, is a California corporation with its principal place of business at 18400 Von Karman, Suite 1000, Irvine, California 92612. Home123 Corporation is an originator of residential mortgage loans.

12. Upon information and belief, defendant, New Century Credit Corporation, is a California corporation with its principal place of business at 18400 Von Karman, Suite 1000, Irvine, California 92612. New Century Credit Corporation is an originator of residential mortgage loans.

13. Upon information and belief, defendant, New Century Financial Corporation, is a publicly traded Maryland corporation with its principal place of business at 18400 Von Karman, Suite 1000, Irvine, California 92612. New Century Financial Corporation is a real estate investment trust, or REIT. Upon information and belief, the other defendants are under the common control of New Century Financial Corporation.

14. On April 2, 2007 (the "Petition Date"), New Century Mortgage Corporation and fourteen of its affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

15. On April 4, 2007, the Court entered an amended order directing the joint administration of the Debtors' cases.

16. The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). No trustee, examiner or committee of unsecured creditors has been appointed in these cases.

**Factual Allegations**

17. Until recent financial distress disrupted its operations and ultimately resulted in their filing voluntary petitions for relief in this Court, the Repurchasing Debtors originated and serviced residential mortgage loans. Funding for the loans was provided by investment banks and other financial institutions such as UBS.

18. Pursuant to a Master Repurchase Agreement dated as of June 23, 2006 (the "Agreement"), UBS agreed to purchase loans originated or purchased by the Repurchasing Debtors (thus providing the funding for the loans), and the Repurchasing Debtors agreed to repurchase those loans at a later date. In this regard, the Repurchasing Debtors transferred all of their rights, title and interest in and to certain subprime residential mortgage loans to UBS.

19. Until very recently, the Repurchasing Debtors acted as the servicer of the loans purchased by UBS under the Agreement. In their capacity as loan servicer, the Repurchasing Debtors were responsible for collecting payments from the mortgage borrowers. As defined in the Agreement, such payments include payments of principal and interest and any other payments or distributions made with respect to the mortgage loans (collectively the "Payments"). In addition, the Repurchasing Debtors also collected escrow payments (taxes and insurance payments) from the mortgage borrowers ("Escrow Funds").

20. Under the terms of the Agreement, all Payments received by the Repurchasing Debtors on loans funded by UBS are UBS's property. In the case of Escrow Funds, the Repurchasing Debtors held the payments for the benefit of, and in trust for, UBS and the mortgage borrowers.

21. Under the terms of the Agreement, the Repurchasing Debtors are required to deposit all Payments into a custodial account at Deutsche Bank National Trust Company, known as the "Blocked Account," (account number 35071), no later than three days after receipt. The mortgage borrowers' Escrow Funds were required to be held in a separate escrow account.

22. On or about March 12, 2007, UBS declared an Event of Default under the Agreement and notified the Repurchasing Debtors that it would not be renewing their servicing contract, which expired on April 2, 2007.

23. After issuing the Notice of an Event of Default, UBS directed and the Repurchasing Debtors agreed to transfer the servicing of all loans funded and owned by UBS to Countrywide Home Loans Servicing LP (the "New Servicer"), effective as of March 31, 2007 (the "Transfer Date"). In order to assist in the transfer of the servicing, the Repurchasing Debtors mailed letters ("good-bye"/"hello" letters) to the mortgage borrowers indicating that the

Repurchasing Debtors were no longer servicing the loans, that no further Payments should be sent to the Repurchasing Debtors, and that all Payments should be sent to the New Servicer.

24. On information and belief, the Repurchasing Debtors received at least $3 million in scheduled principal and interest payments in March 2007 for the mortgage borrowers' March 1, 2007 mortgage obligations.

25. In addition, as of March 31, 2007, the Repurchasing Debtors had collected $4,502,695.74 from borrowers who had prepaid their loans in full. This amount plus the scheduled principal and interest payments for the mortgage borrowers' March 1, 2007 mortgage obligations total approximately $7.6 million.

26. Pursuant to the Agreement, these Payments are the property of UBS and should have been deposited into the Blocked Account for UBS.

27. The Repurchasing Debtors have deposited only $3,845,645.01 into the Blocked Account.

28. On information and belief, the Repurchasing Debtors have therefore misappropriated at least $3.8 million.

29. As of March 31, 2007, the Repurchasing Debtors had received $1,772,076.12 in Escrow Funds from borrowers whose loans were purchased by UBS pursuant to the Agreement.

30. All Escrow Funds held by the Repurchasing Debtors are to be held in a separate escrow account for the benefit of, and in trust for, UBS and the mortgage borrowers.

31. On numerous occasions, UBS requested that the Repurchasing Debtors provide a reconciliation and accounting of all Payments received on behalf of UBS from mortgage borrowers whose loans were purchased by UBS pursuant to the Agreement. In

addition, UBS requested that the Repurchasing Debtors cooperate and transfer all Escrow Funds received from mortgage borrowers whose loans were purchased by UBS pursuant to the Agreement to the New Servicer. Despite UBS's requests, the Repurchasing Debtors have failed to comply.

32. As of April 4, 2007, the Repurchasing Debtors have not transferred any Escrow Funds that they received to the New Servicer.

### First Cause of Action
### (Breach of Contract)

33. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34. UBS has performed its obligations under the Agreement.

35. Under the terms of the Agreement, Payments received on behalf of UBS by the Repurchasing Debtors belong to UBS and are to be held by the Repurchasing Debtors for the benefit of, and in trust for, UBS.

36. The Repurchasing Debtors have failed or refused to deposit Payments into the Blocked Account.

37. By failing or refusing to deposit Payments into the Blocked Account, the Repurchasing Debtors have breached the Agreement.

38. Under the terms of the Agreement, all Escrow Funds received from borrowers whose loans were purchased by UBS pursuant to the Agreement are to be held in a separate escrow account.

39. By failing or refusing to transfer Escrow Funds to the New Servicer, the Repurchasing Debtors have breached the Agreement.

40. As a result of the Repurchasing Debtors' breach, UBS has suffered damages.

### Second Cause of Action
(Conversion)

41. Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42. Under the terms of the Agreement, Payments received on behalf of UBS by the Repurchasing Debtors belong to UBS and are to be held by the Repurchasing Debtors for the benefit of, and in trust for, UBS.

43. UBS has demanded that the Repurchasing Debtors deposit all Payments in their possession into the Blocked Account.

44. The Repurchasing Debtors have failed or refused to deposit Payments into the Blocked Account.

45. Under the terms of the Agreement, Escrow Funds received by the Repurchasing Debtors belong to the mortgage borrowers and are to be held by the Repurchasing Debtors for the benefit of, and in trust for, UBS and the mortgage borrowers.

46. UBS has demanded that the Repurchasing Debtors transfer all Escrow Funds to the New Servicer.

47. The Repurchasing Debtors have failed or refused to comply with UBS's demands to transfer Escrow Funds to the New Servicer and deposit Payments into the Blocked Account.

48. By failing or refusing to deposit Payments into the Blocked Account and by failing or refusing to transfer Escrow Funds to the New Servicer, the Repurchasing Debtors have retained possession of such Payments and Escrow Funds without authorization.

49. By failing or refusing to deposit Payments into the Blocked Account and by failing or refusing to transfer Escrow Funds to the New Servicer, the Repurchasing Debtors have unlawfully exercised dominion or a right of ownership over property belonging to UBS and the mortgage borrowers.

50. By failing or refusing to comply with UBS's demands, the Repurchasing Debtors have unlawfully converted property owned by UBS and mortgage borrowers, which has caused injury to UBS and the mortgage borrowers.

### Third Cause of Action
### (Breach of Fiduciary Duty)

51. Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52. Under the terms of the Agreement, Payments received on behalf of UBS by the Repurchasing Debtors belong to UBS and are to be held by the Repurchasing Debtors for the benefit of, and in trust for, UBS.

53. Under the terms of the Agreement, Escrow Funds received by the Repurchasing Debtors belong to the mortgage borrowers and are to be held by the Repurchasing Debtors for the benefit of, and in trust for, UBS and the mortgage borrowers.

54. Accordingly, the Repurchasing Debtors were and are acting in a fiduciary capacity with respect to the receipt of Payments and Escrow Funds.

55. As a fiduciary to UBS and the borrowers, the Repurchasing Debtors owed a duty of undivided loyalty with respect to the handling of such Payments and Escrow Funds.

56. The Repurchasing Debtors have failed or refused to deposit Payments into the Blocked Account and have failed or refused to transfer the Escrow Funds to the New Servicer.

57. By failing or refusing to deposit Payments into the Blocked Account and by failing or refusing to transfer the Escrow Funds to the New Servicer, the Repurchasing Debtors have breached their fiduciary duties.

58. As a result of the Repurchasing Debtors' breach, UBS and the mortgage borrowers have suffered damages.

## Fourth Cause of Action
### (Imposition of a Constructive Trust)

59. Paragraphs 1 through 58 are incorporated by reference as if fully set forth herein.

60. The Repurchasing Debtors were and are acting in a fiduciary capacity for UBS and the mortgage borrowers with respect to the receipt of Payments and Escrow Funds.

61. The Repurchasing Debtors promised to deposit Payments into the Blocked Account and comply with any instruction regarding the transfer of Escrow Funds in accordance with the terms of the Agreement.

62. In reliance on that and other promises, UBS provided a repurchase facility to the Repurchasing Debtors in accordance with the terms of the Agreement.

63. The Repurchasing Debtors have failed or refused to deposit Payments into the Blocked Account and have failed or refused to transfer the Escrow Funds to the New Servicer.

64. By retaining possession of Payments that should have been deposited into the Blocked Account and by failing or refusing to transfer Escrow Funds to the New Servicer, the Repurchasing Debtors have been unjustly enriched.

65. Accordingly, UBS and the mortgage borrower are entitled to the imposition of a constructive trust over such Payments and Escrow Funds.

### Fifth Cause of Action
### (Accounting)

66. Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67. The Repurchasing Debtors were and are acting in a fiduciary capacity with respect to the receipt of Payments and Escrow Funds.

68. As a fiduciary, the Repurchasing Debtors owed UBS and the mortgage borrowers a duty to account for the Payments and Escrow Funds they received on UBS's behalf.

69. UBS has demanded an accounting and/or information necessary to perform account reconciliations.

70. The Repurchasing Debtors have failed or refused to comply with UBS's demand.

71. Accordingly, UBS is entitled to an accounting from the Repurchasing Debtors.

### Sixth Cause of Action
### (Permanent Injunction)

72. Paragraphs 1 through 71 are incorporated by reference as it fully set forth herein.

73. Due to the Repurchasing Debtors' insolvency, UBS lacks an adequate remedy at law.

74. Accordingly, UBS is entitled to an injunction permanently enjoining the Repurchasing Debtors from wrongfully retaining and/or commingling Payments and Escrow Funds, or otherwise breaching their contractual and fiduciary obligations with respect to the receipt and disposition of such payments.

### Prayer for Relief

**WHEREFORE**, UBS respectfully requests the following relief:

(a) By way of specific performance, an order compelling the Repurchasing Debtors to (i) immediately deposit Payments received on behalf of UBS under the Agreement prior to the Transfer Date into the Blocked Account, and (ii) immediately transmit Payments received on behalf of UBS under the Agreement on or after the Transfer Date to the New Servicer;

(b) By way or specific performance, an order compelling the Repurchasing Debtors to immediately transfer all Escrow Funds to the New Servicer.

(c) An order permanently enjoining the Repurchasing Debtors from wrongfully retaining and/or commingling Payments and Escrow Funds, or otherwise breaching their contractual and fiduciary obligations with respect to the receipt and disposition of such future Payments and Escrow Funds;

(d) An accounting with respect to Payments and Escrow Funds received by the Repurchasing Debtors on or after March 1, 2007, such accounting performed at least once every two business days.

(e) Imposition of a constructive trust over Payments and Escrow Funds received by the Repurchasing Debtors and not deposited into the Blocked Account or transmitted to the New Servicer;

(f) Restitution of Payments and Escrow Funds received by the Repurchasing Debtors and not deposited into the Blocked Account or transmitted to the New Servicer;

  (g)  Disgorgement of (i) Payments and Escrow Funds received by the Repurchasing Debtors and not deposited into the Blocked Account or transmitted to the New Servicer, and (ii) any servicing or other fees collected by the Repurchasing Debtors;

  (h)  Money damages;

  (i)  Punitive damages;

  (j)  Interest;

  (k)  Costs;

  (l)  Attorney's fees; and

  (m)  Such other and further relief as the Court deems just and proper.

Dated: April 5, 2007

Respectfully submitted,

*[signature]*

William P. Bowden (DE No. 2553)
Gregory A. Taylor (DE No. 4008)
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899
Tel: (302) 654-1888
Fax: (302) 654-2067

- and -

Richard A. Chesley (IL No. 6240877)
Kimberly D. Newmarch (DE No. 4340)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Tel: (312) 499-6000
Fax: (312) 499-6100

- and -

Keith W. Miller (NY No. 2421717)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Tel: (212) 318-6000
Fax: (212) 319-4090

***Co-Counsel to UBS Real Estate Securities Inc.***

179493.3