IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **NEW CENTURY TRS HOLDINGS,** | : Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,**[1] | : |
| | : Jointly Administered |
| **Debtors.** | : |
| | : Hearing Date: 4/24/07 at 2:30 P.M. |
| | : Objection Deadline: 4/17/07 at 4:00 P.M. |

**MOTION OF DEBTORS AND DEBTORS IN
POSSESSION FOR AN ORDER GRANTING EXTENSION
OF TIME TO FILE SCHEDULES AND STATEMENTS**

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby submit this motion (the "Motion"), pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules") and Rule 1007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended from time to time, the "Local Rules"), for entry of an order extending the time within which the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Debtors must file their Schedules and Statements (as defined below). In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2. The bases for the relief requested herein are sections 105(a), 1107(a) and 1108 of Title 11 of the United States Code and Bankruptcy Rule 1007.

## BACKGROUND

3. New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the

Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.     On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

5.     On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

6.     These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default

under its credit facility.

7. As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

8. Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

9. During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co. LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

10. The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

11. Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

12. On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Debtors are operating their business and managing their affairs as debtors and debtors in possession. The Debtors' chapter 11 cases are being jointly administered and have been consolidated for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

## REQUEST FOR RELIEF

13. Pursuant to Bankruptcy Rule 1007(a)(3), unless the court orders otherwise, within 15 days after the entry of the order for relief, a chapter 11 debtor must file a list setting forth the names and addresses of its equity security holders, as well as the class, number and kind of interests registered in the name of each such holder.

14. Pursuant to Bankruptcy Rules 1007(b) and (c), a chapter 11 debtor must file with its voluntary petition, or within 15 days thereafter if the petition is accompanied by a Creditor List, schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases and a statement of financial affairs (collectively, the "Schedules and Statements"). Pursuant to Local Rule 1007-1(b), the deadline for filing the Schedules and Statements automatically is extended for an additional 15 days if the debtor has more than 200 creditors and if the petition is accompanied by a Creditor List. Because the Debtors filed the Creditor List on the Petition Date and have more than 200 creditors, Bankruptcy Rule 1007(c) and Local Rule 1007-1(b) require the Debtors to file their Schedules and Statements within 30 days after the Petition Date.

RLF1-3124841-1

15. The Debtors have approximately 100,000 creditors (including current and former employees). Further, the conduct and operation of the Debtors' business operations require the Debtors to maintain voluminous books and records and complex accounting systems. Given the size and complexity of their business operations, the number of creditors, and the fact that certain prepetition invoices have not yet been received, the Debtors were unable to compile all of the information required to complete the Schedules and Statements prior to the Petition Date.

16. Moreover, given the urgency with which the Debtors sought chapter 11 relief and the numerous critical operational matters that the Debtors' staff of accounting and legal personnel must address in the early days of these cases, the Debtors will not be in a position to complete the Schedules and Statements within the time specified in Bankruptcy Rule and Local Rule 1007-1(b). Completing the Debtors' Schedules and Statements will require the Debtors and their advisors to collect, review, and assemble information from multiple locations throughout the United States. Nevertheless, recognizing the importance of the Schedules and Statements in these chapter 11 cases, the Debtors intend to complete the Schedules and Statements as quickly as possible under the circumstances.

17. Accordingly, the Debtors respectfully request that the Court extend by an additional 90 days, for a total of 120 days, until July 31, 2007, the date by which the Schedules and Statements must be filed, pursuant to Bankruptcy Rule 1007 and Local Rule 1007-1(b). Bankruptcy Rule 1007(c) authorizes the Court to grant an extension of the date by which the Schedules and Statements must be filed "on motion for cause shown." See also Del. Bankr. L.R. 1007-1(b) (allowing extensions "for cause"). In view of the substantial size, scope and complexity of these cases and the volume of material that must be compiled and reviewed by the

Debtors' limited staff in order to complete the Schedules and Statements for each Debtor during the initial days of these chapter 11 cases there is more than ample "cause" for granting the requested extension.

18. Courts routinely have granted similar relief in other cases in this District and elsewhere.[2] Accordingly, the Debtors' request for a 90 day extension of time to file the Schedules and Statements is appropriate and warranted under the circumstances.

## NOTICE

19. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; and (4) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

20. The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and

---

[2] See, e.g., In re Pillowtex, Inc., No. 00-4211 (SLR) (D. Del. Nov. 14, 2000) (order granting minimum 30-day extension of time for filing schedules and statements with provision under which debtors and the United States trustee ultimately agreed to an additional 56-day extension); In re Loewen Group Int'l, Inc., No. 99-1244 (PJW) (D. Del. June 1, 1999) (Farnan, J.) (order granting 165-day extension of time for filing schedules and statements); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 5, 2002) (order granting 90-day extension of time for filing schedules and statements); In re NationsRent, Inc., No. 01-11628 (PJW) (Bankr. D. Del. Jan. 18, 2002) (order granting 90-day extension of time for filing schedules and statements); In re USG Corp., No. 01-2094 (JKF) (Bankr. D. Del. July 31, 2001) (Newsome, J.) (order granting 90-day extension of time for filing schedules and statements in case involving 11 debtors); In re The Imperial Home Decor Group, Inc., No. 00-19 (MFW) (Bankr. D. Del. Jan. 5, 2000) (order granting 60-day extension of time for filing schedules and statements in case involving 5 debtors); In re Three A's Holdings, L.L.C. No. 06-10886 (BLS) (Bankr. D. Del. Sept. 14, 2006) (order granting 60-day extension of time for filing schedules and statements); In re Advanced Marketing Services, Inc., No. 06-11480 (CSS) (Bankr. D. Del. Jan. 24, 2007) (order granting 60-day extension of time for filing schedules and statements). Because of the voluminous nature of the unreported orders cited herein, they are not attached to this Motion.

Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Local District Court Rule 7.1.2(a).

## NO PRIOR REQUEST

21. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A,: (i) extending the time within which the Debtors must file the Schedules and Statements by an additional 90 days, for a total of 120 days after the Petition Date, through and including July 31, 2007; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: April 5, 2007
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION