IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | Hearing Date: 4/24/07 at 2:30 P.M. |
| | : | Objection Deadline: 4/17/07 at 4:00 P.M |

**APPLICATION OF THE DEBTORS AND DEBTORS IN POSSESSION
FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
RICHARDS, LAYTON & FINGER, P.A. AS CO-COUNSEL
TO THE DEBTORS *NUNC PRO TUNC* TO THE
PETITION DATE PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE**

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through the undersigned counsel, hereby submit this application (the "Application") for entry of an order pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), authorizing the Debtors to retain and employ Richards, Layton & Finger, P.A. ("RL&F") as bankruptcy co-counsel *nunc pro tunc* to the Petition Date (as defined herein) (the "Application"). In support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

### Jurisdiction

The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

1. New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

2. On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered

that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits

3. On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

4 These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

5 As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further

exacerbated the Debtors' liquidity situation.

6  Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

7.  During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor

8  The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders

9  Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

10    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Court has entered an order authorizing the joint administration of the Debtors' chapter 11 cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

### Retention of Richards, Layton & Finger, P.A.

11.    Subject to approval of this Court, the Debtors wish to employ RL&F as their co-counsel in connection with the commencement and prosecution of their chapter 11 cases (the "Chapter 11 Cases")  Pursuant to section 327(a) of the Bankruptcy Code, the Debtors request that the Court approve the employment of RL&F under a general retainer, as their co-counsel, to perform the extensive legal services that will be necessary during the Chapter 11 Cases

12.    In addition to RL&F, by separate application, the Debtors are seeking to employ and retain, pursuant to section 327(a) of the Bankruptcy Code, the law firm of O'Melveny & Myers LLP ("OMM") as co-counsel in the Chapter 11 Cases  The Debtors submit that it is essential for them to employ co-counsel in the Chapter 11 Cases. Moreover, pursuant to Rule 83 5(e) of the Local Rules of the United States District Court for the District of Delaware, the Debtors are required to retain Delaware counsel. OMM and RL&F have discussed a division of responsibilities regarding representation of the Debtors and will make every effort to avoid and/or minimize duplication of services in the Chapter 11 Cases

13.    The Debtors have selected RL&F as their co-counsel because of the firm's extensive experience and knowledge in the field of debtors' and creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code and because of its expertise, experience, and knowledge in practicing before this Court, its proximity to the Court

5

and its ability to respond quickly to emergency hearings and other emergency matters in this Court. Moreover, since March 8, 2007, RL&F has rendered legal services and advice to the Debtors. During the course of this representation, RL&F has acquired knowledge of the Debtors' business, financial affairs and capital structure. The Debtors believe that RL&F is both well qualified and uniquely able to represent them in the Chapter 11 Cases in a most efficient and timely manner.

14. The services of RL&F are necessary to enable the Debtors to execute faithfully their duties as debtors in possession. Subject to further order of this Court, RL&F will be required to render the following professional services:

> (a) to advise the Debtors of their rights, powers and duties as debtors and debtors in possession;
>
> (b) to take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;
>
> (c) to prepare on behalf of the Debtors all necessary motions, applications, answers, orders, reports and papers in connection with the administration of the Debtors' estates; and
>
> (d) to perform all other necessary legal services in connection with the Chapter 11 Cases.

15. It is necessary for the Debtors to employ attorneys under a general retainer to render the foregoing professional services.

16. RL&F has stated its desire and willingness to act in these cases and to render the necessary professional services as co-counsel to the Debtors.

17. To the best of the Debtors' knowledge, the directors and associates of RL&F do not have any connection with or any interest adverse to the Debtors, their creditors, or

any other party in interest, or their respective attorneys, except as set forth herein and in the contemporaneously filed affidavit of Michael J. Merchant, a director of RL&F (the "Merchant Affidavit"), a copy of which is attached hereto as Exhibit A

18. RL&F intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, propose to pay RL&F its customary hourly rates in effect from time to time as set forth in the Merchant Affidavit. The Debtors submit that these rates are reasonable.

### Evergreen Retainer Requested

19. Prior to the Petition Date, the Debtors paid RL&F a total retainer of $275,000.00 (the "Retainer") in connection with and in contemplation of the Debtors' chapter 11 filings. The Debtors propose that the retainer monies paid to RL&F and not expended for prepetition services and disbursements be treated as an evergreen retainer to be held by RL&F as security throughout the Chapter 11 Cases until RL&F's fees and expenses are awarded by final order and payable to RL&F.

20. The general security retainer is appropriate for several reasons in these cases. First, these types of retainer agreements reflect normal business terms in the marketplace. See In re Insilco Technologies, Inc., 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("the practice [of receiving security retainers] in this district has been engaged in since at least the early 1990's"). Second, RL&F and the Debtors are sophisticated business entities that have negotiated the

7

RLF1-3128584-3

retainer at arm's length. Finally, although the Debtors' postpetition financing arrangement provides a carve-out for professional claims (the "Carve-Out"), there is no assurance that the Carve-Out will be sufficient to pay the claims of all professionals. The Retainer secures RL&F's fees and expenses for work performed in connection with the Chapter 11 Cases. Accordingly, as the Debtors' bankruptcy co-counsel, even following the exhaustion of the Carve-Out, RL&F may still be required to perform services and incur expenses. Thus, under the standards articulated in the Insilco decision, the facts and circumstances of these cases support the approval of the security retainer requested herein.

### Notice

21. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Application has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; and (4) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

22. The Debtors submit that this Application does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Local District Court Rule 7.1.2(a).

1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Local District Court Rule 7.1.2(a).

### No Prior Request

23. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, granting the relief requested herein and such other and further relief the Court deems just and proper.

Dated: April 5, 2007

Respectfully submitted,

New Century TRS Holdings, Inc., on behalf of New Century Financial Corporation, New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp., New Century R.E.O. II Corp., New Century R.E.O. III Corp., New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., as Debtors and Debtors in Possession

By: _____
Name: Monika L. McCarthy
Title: SVP & Assistant General Counsel