IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

Objection Deadline: 4/17/07 @ 4:00 p.m.
Hearing Date: 4/24/07 @ 2:30 p.m.

**APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRERES & CO. LLC AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014, AND DEL. BANKR. LR 2014-1**

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors") hereby file this application (the "Application") for entry of an order authorizing the employment and retention of Lazard Frères & Co. LLC ("Lazard") as financial advisor to the Debtors pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Bankr. P. 2014, and Del. Bankr. LR 2014-1, nunc pro tunc to April 2, 2007. In support of this Application, the Debtors submit the Affidavit in Support of Debtors' Application for an Order Authorizing the Employment and Retention of Lazard

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Frères & Co. LLC as Financial Advisor to the Debtors and Debtors-in-Possession Pursuant to 11

U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014, and Del. Bankr. LR 2014-1, (the "Kurtz

Affidavit"), filed concurrently herewith and incorporated herein by reference. In further support

of this Application, the Debtors respectfully state as follows:

### Jurisdiction

The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a

core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the

relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Rules 2014(a)

and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background[2]

1    New Century Financial Corporation, a Maryland corporation ("NCF") and

publicly owned real estate investment trust, is one of the largest specialty mortgage finance

businesses in the United States. Through its subsidiaries and its primary holding company

subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and

together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases,

sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending,

or lending to individuals whose borrowing needs were generally not fulfilled by traditional

financial institutions because they did not satisfy the credit, documentation or other underwriting

standards prescribed by conventional mortgage lenders and loan buyers. In September 2005,

NCF through some of its subsidiaries also began offering conventional mortgage loans,

---

[2] The facts and circumstances supporting this Motion are set forth in the Declarations of Monika McCarthy and Holly Etlin in support of Chapter 11 Petitions and Request for First Day Relief.

2

including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

2.      On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

3.      On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

4.      These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby

3

threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

5.    As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

6.    Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

7.    During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard, sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

8.    The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale

RLF1-3135635-2

of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

9.    Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

10.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Debtors are operating their business and managing their affairs as debtors and debtors in possession. The Debtors chapter 11 cases are being jointly administered and have been consolidated for procedural purposes only pursuant to Bankruptcy Rule 1015b.

## Relief Requested

11    By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Bankruptcy Rules, authorizing the employment and retention of Lazard as financial advisor to the Debtors in accordance with the terms and conditions of the engagement letter between the Debtors and Lazard dated as of March 29, 2007, a copy of which is attached hereto as Exhibit A (the "Engagement Letter") and the related indemnification and contribution agreement of even date therewith, a copy of which is attached hereto as Exhibit B (the "Indemnification Letter") [3]

---

[3] As stated in the Engagement Letter, the engagement letter and related indemnification and contribution agreement, each dated as of March 29, 2007, supercede in their entirety that certain engagement letter and related

RLF1-3135635-2

## Lazard's Qualifications

12.     Lazard is an investment banking firm focused on providing financial and investment banking advice and transaction execution on behalf of its clients. Lazard's broad range of corporate advisory services includes services pertaining to general financial advice, corporate restructurings, domestic and cross-border mergers and acquisitions, divestitures, privatization, special committee assignments, takeover defenses, and strategic partnerships/joint ventures.

13.     Lazard is a registered broker-dealer and investment adviser registered with the United States Securities and Exchange Commission.

14.     The Debtors have selected Lazard as their financial advisor based upon (i) Lazard's extensive experience in providing financial advisory and investment banking services in large and complex chapter 11 cases, and (ii) Lazard's excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

15.     The professionals of Lazard have been employed as financial advisors in a number of troubled company situations, including the chapter 11 cases in the District of Delaware of Hayes Lemmerz, Gentek, Owens Corning, Fruit of the Loom, Vlasic Foods International, Armstrong Worldwide Industries, Kaiser Aluminum, Meridian Automotive Systems, and Sun Healthcare Group, among others.

16.     The resources, capabilities, and experience of Lazard in advising the Debtors are crucial to the Debtors' successful restructuring. An experienced financial advisor such as Lazard fulfills a critical need that complements the services offered by the Debtors' other

---

indemnification and contribution agreement, each dated as of March 8, 2007.

6

restructuring professionals. Broadly speaking, Lazard will concentrate its efforts on formulating strategic alternatives, negotiating with the Debtors' creditor constituencies and assisting the Debtors to develop and implement an asset or other sale strategy and/or a viable chapter 11 reorganization plan. For these reasons, the Debtors require the services of a capable and experienced financial advisory firm such as Lazard.

17    Prior to retaining Lazard, the Debtors' senior management interviewed senior personnel of and considered proposals from other investment banking firms. The Debtors evaluated each firm on a number of criteria, including: the overall restructuring experience of each firm and their professionals; the overall financial advisory and investment banking capabilities of such firm; the firm's experience in advising large companies in chapter 11; the likely attention of the senior personnel of the firm; and the compensation to be charged. After due consideration of the above and as an exercise of their business judgment, the Debtors concluded that Lazard was best qualified to provide financial advisory and investment banking services to the Debtors at a reasonable level of compensation.

18.    The compensation arrangement provided for in the Engagement Letter and the provisions of the Indemnification Letter are consistent with and typical of arrangements entered into by Lazard and other investment banking firms in connection with rendering similar services to clients such as the Debtors. The Debtors believe that Lazard is well qualified and able to represent their interests in a cost-effective, efficient and timely manner. Lazard has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of this Court.

### Services to be Rendered

19.    As mentioned above, the terms and conditions of Lazard's engagement by the Debtors are governed by the Engagement Letter and the Indemnification Letter, which were

7

negotiated between the Debtors and Lazard. The terms of the Engagement Letter reflect the Debtors' and Lazard's mutual agreement as to the substantial efforts that will be required of Lazard in this engagement. Under the Engagement Letter, in consideration for the compensation contemplated thereby, Lazard has agreed to advise the Debtors in connection with a variety of financial matters, including a review of the Debtors' financial position and obligations, and a review and evaluation of possible strategic alternatives, liquidity alternatives and transactions. Moreover, Lazard has agreed to advise the Debtors in connection with any Restructuring, Bankruptcy Sale Transaction, Alternative Transaction or Non-Bankruptcy Sale Transaction pursued by the Debtors, and has already provided the Debtors with certain advice in this regard.[4]

20.     The services that Lazard will provide to the Debtors (the "Services") are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the Services will not duplicate the efforts of other professionals retained by the Debtors in these chapter 11 cases because Lazard (i) will provide unique services to the Debtors and (ii) will coordinate efforts with the other professionals to avoid unnecessary duplication of services.

### Lazard's Disinterestedness

21.     To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Kurtz Affidavit, (a) Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest adverse to their Debtors or their estates in connection with the matters for which Lazard is to be retained by the Debtors; and (b) Lazard has

---

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Engagement Letter.

8

no connection with the Debtors, their creditors, the U.S. Trustee, or other parties in interest in these chapter 11 cases.

22. The Debtors do not owe Lazard any amount for any services performed or expenses incurred prior to the Petition Date. Accordingly, Lazard is not a prepetition creditor of the Debtors.[5]

23. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based upon, and made in reliance on, the Kurtz Affidavit. To the extent that Mr. Kurtz discovers any additional facts bearing on the matters described herein during the period of Lazard's retention, Lazard will supplement the information contained in the Kurtz Affidavit.

**Proposed Compensation Terms**

24. As set forth in the Engagement Letter, the Debtors and Lazard have agreed to the following compensation structure (the "Fee and Expense Structure") in consideration for the Services to be rendered by Lazard in these chapter 11 cases:

a) A retainer of $1,000,000 (the "Retainer") that was paid upon the execution of the Engagement Letter. Payment of the Retainer shall be credited (without duplication) against a Strategic Advisory Fee, as defined below in (d), a Bankruptcy Sale Fee, as defined below in (e), or an Alternative Transaction Fee, as defined below in (f);

b) A monthly financial advisory fee (the "Monthly Fee") of $200,000 payable upon the 1st day of each month during the term of the engagement, with the first such payment due on April 1, 2007 (which such first Monthly Fee was paid prior to the Petition Date). All Monthly Fees paid shall be credited (without duplication) against a Strategic Advisory Fee, an Alternative Transaction Fee or a Bankruptcy Sale Fee;

c) A fee equal to $2,000,000 (an "Announcement Fee"), payable upon announcement of, or the execution of a definitive agreement for. a Non-Bankruptcy Sale Transaction, Restructuring or Bankruptcy Sale Transaction

---

[5] As further described herein, Lazard has been paid a total of $1,200,000 in fees, and has been provided $100,000 towards the reimbursement of expenses, prior to the Petition Date.

9

RLF1-3135635-2

An Announcement Fee shall be credited (without duplication) against a
Strategic Advisory Fee, an Alternative Transaction Fee or a Bankruptcy Sale
Fee;

d)  A fee equal to $5,000,000, payable upon the consummation of a Non-
    Bankruptcy Other Assets Sale, and a fee equal to $7,000,000, payable upon
    the consummation of either a Full Non-Bankruptcy Sale or a Non-Bankruptcy
    Control Sale (each of such fees, a "Strategic Advisory Fee");

e)  A fee equal to $5,000,000, payable upon the consummation of a Bankruptcy
    Other Assets Sale, and a fee equal to $7,000,000, payable upon the
    consummation of a Full Bankruptcy Sale (each of such fees, a "Bankruptcy
    Sale Fee"); and

f)  A fee to be mutually agreed in good faith (an "Alternative Transaction Fee"),
    payable in connection with any Alternative Transaction, which will
    appropriately compensate Lazard in light of the magnitude and complexity of
    the Alternative Transaction and the fees customarily paid to investment
    bankers of similar standing for similar transactions. Any Alternative
    Transaction Fee shall be credited (without duplication) against a Strategic
    Advisory Fee or a Bankruptcy Sale Fee.

25.     Lazard and the Debtors have agreed that the aggregate fees to be paid to

Lazard under the Engagement Letter shall not exceed $7,000,000. The Debtors have also agreed

to reimburse Lazard for all its reasonable expenses incurred in connection with the performance

of the engagement, including travel costs, document production and other expenses of this type,

and also including the reasonable expenses of outside counsel and other professional advisors;

provided. however, that Lazard may not retain outside counsel or other professional advisors the

reasonable expenses of which it would be entitled to reimbursement under the Engagement

Letter without the prior consent of the Debtors, which consent shall not be unreasonably

withheld. In addition to the compensation payable to Lazard pursuant to the Engagement Letter,

the Debtors have also agreed to the provisions of the Indemnification Letter.

26.     The overall compensation structure described above is comparable to

compensation generally charged by investment banking firms of similar stature to Lazard and for

comparable engagements, both in and out of court.

27.     In order to induce Lazard to do business with the Debtors in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Lazard expects to undertake and the potential for failure.

28.     The Debtors acknowledge and agree that Lazard's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Lazard's engagement, were important factors in determining the amount of the Retainer, Monthly Fee, Announcement Fee, Bankruptcy Sale Fee, Alternative Transaction Fee, and Strategic Advisory Fee and that the ultimate benefit to the Debtors of Lazard's services could not be measured merely by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.

29.     The Debtors also acknowledge and agree that the contingent Announcement Fee, Bankruptcy Sale Fee, Alternative Transaction Fee, and Strategic Advisory Fee have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Lazard and that the actual time and commitment required of Lazard and its professionals to perform services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

30.     In addition, given the numerous issues which Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagements of this nature in an out-of-court context, as well as in chapter

RLF1-3135635-2

11, the Debtors agree that the fee arrangements in the Engagement Letter (including the contingent Announcement Fee, Bankruptcy Sale Fee, Alternative Transaction Fee and Strategic Advisory Fee) are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

31.    Lazard also will seek reimbursement for reasonable expenses, including reasonable expenses of counsel, if any. Lazard will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors.

32.    As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to the indemnification and contribution obligations as described in the Indemnification Letter.[6] Lazard and the Debtors believe that such provisions are customary and reasonable for financial advisory and investment banking engagements in chapter 11.

33.    Lazard will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any applicable orders of the Court. Lazard will submit time records in a summary format which shall set forth a description of the services rendered by each

---

[6] The Indemnification Letter provides that the Debtors will indemnify Lazard and the other Indemnified Persons (as defined in the Indemnification Letter), except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's gross negligence or bad faith. In connection with this filing, Lazard has agreed to certain modifications to the Indemnification Letter, which are included in the attached form of order.

restructuring professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

34. The Fee and Expense Structure described above is consistent with Lazard's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined. Lazard and the Debtors also believe that the foregoing Fee and Expense Structure is reasonable and market-based.

35. Lazard has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of Lazard in accordance with section 504 of the Bankruptcy Code.

### Lazard's Engagement Under Section 328 is Reasonable and Appropriate Under the Circumstances

36. Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) therefore permits the Court to approve the terms of Lazard's engagement as set forth in the Engagement Letter, including the Fee and Expense Structure, and the terms of the Indemnification Letter.

37. The Fee and Expense Structure appropriately reflects the nature of the Services to be provided by Lazard and is consistent with the fee structures typically utilized by leading financial advisors which do not bill their clients on an hourly basis. Similar monthly fee and transaction fee arrangements have been approved and implemented in other large chapter 11 cases in this district and elsewhere. See, e.g., In re Burlington Industries, Inc., No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003); In re Oakwood Homes Corporation, No. 02-13396 (PJW)

13

(Bankr D. Del. July 21, 2003); <u>In re Kaiser Aluminum Corporation, et al.</u>, No. 02-10429 (JKF) (Bankr. D. Del. March 19, 2002) (authorizing retention of Lazard Frères & Co. LLC and subjecting compensation to same standard of review); <u>In re Trans World Airlines, Inc.</u>, No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); <u>In re Covad Communications Group, Inc.</u>, No. 01-10167 (JJF) (Bankr. D. Del. November 21, 2001) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in Section 328(a)); <u>In re Harnischfeger Industries, et al.</u>, No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as financial advisors to debtors); <u>In re Casual Male Corp.</u>, No. 01-41404 (REG) (Bankr. S.D.N.Y. March 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to section 328(a) standard of review).

38.    Notwithstanding approval of its engagement under section 328 of the Bankruptcy Code, Lazard intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 (the "<u>Fee Guidelines</u>"), the Local Rules, and applicable orders of this Court.

**Proposed Indemnification Provisions**

39.    The Indemnification Letter provides that the Debtors will indemnify, hold harmless, defend and provide contribution to Lazard and its affiliates and its and their respective directors, officers, members, employees, agents, and controlling persons (collectively, the "<u>Indemnified Parties</u>") under certain circumstances. The terms of the Indemnification Letter are standard engagement provisions, both in chapter 11 cases and outside chapter 11, and reflect the

14

qualifications and limits on such terms that are customary for Lazard and other similar financial advisors as approved in this and other jurisdictions.

40.     The Debtors and Lazard believe that the terms of the Indemnification Letter are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 proceedings. See, e.g., In re United Artists Theatre Company, No 00-3514-SLR (Bankr. D Del. Dec 1, 2000) (order authorizing indemnification of Houlihan, Lokey by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec 6, 2000); In re Comdisco, Inc., No 02-C-1174 (N.D. Ill. September 23, 2002) (affirming order authorizing indemnification of Lazard Frères & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors). The terms of the Indemnification Letter are similar to indemnification terms that have previously been approved by bankruptcy courts in this District and elsewhere. See, e.g., In re Burlington Industries, Inc., No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (order authorizing retention of MBLY on similar terms); In re Oakwood Homes Corporation, No. 02-13396 (PJW) (Bankr D. Del July 21, 2003) (order authorizing retention of MBLY on similar terms); In re PC Landing Corp., No 02-12086 (PJW) (Bankr. D. Del October 10, 2002) (same); In re Worldcom, Inc., 02-13533 (AJG) (Bankr S.D.N.Y. January 14, 2003) (order authorizing retention of Lazard Frères & Co. LLC under similar terms); In re Metrocall, Inc., No. 02-11579 (RB) (Bankr D. Del July 8, 2002) (order authorizing retention of Lazard Frères & Co. LLC under similar terms); In re Kaiser Aluminum Corporation, No 02-10429 (JKF) (Bankr D. Del March 19, 2002) (same); In re Adelphia Communications Corporation, 02-41729 (REG) (Bankr. S.D.N.Y. September 27, 2002) (same); In re W.R. Grace & Co., No 01-01139 (JJF) (Bankr D. Del June 22, 2001) (order authorizing retention of Blackstone Group under indemnification terms similar to the

15

Indemnification Letter). Accordingly, the Debtors respectfully submit that the terms of the

Indemnification Letter are reasonable and customary and should be approved in these cases.

## Notice

41.     No trustee, examiner or creditors' committee has been appointed in these

chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States

Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc.

("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed post-

petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a

consolidated basis as identified in the Debtors' chapter 11 petitions; and (4) all parties who have

timely filed requests for notice under Rule 2002 of the Bankruptcy Rules. In light of the nature

of the relief requested herein, the Debtors submit that no other or further notice is required.

42.     The Debtors submit that this Motion does not present any novel issues of

law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and

Procedure of the United States District Court for the District of Delaware (as amended from time

to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b),

the Debtors respectfully request that the Court set aside the briefing schedule set forth in Local

District Court Rule 7.1.2(a).

## No Prior Request

43.     No prior request for the relief sought in this Motion has been made to this

or any other court.

WHEREFORE, the Debtors hereby respectfully request that the Court enter an

order. in substantially the form attached hereto as Exhibit C, (i) approving the employment and

retention of Lazard as financial advisor to the Debtors pursuant to sections 327(a) and 328(a) of

RLF1-3135635-2

the Bankruptcy Code and pursuant to the terms and conditions reflected herein and in the

Engagement Letter and Indemnification Letter, and (ii) granting such other and further relief as

may be just and proper.

Dated: April 5, 2007                        Respectfully submitted,


New Century TRS Holdings, Inc., on behalf of New Century Financial Corporation ,New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp., New Century R.E.O. II Corp., New Century R.E.O. III Corp., New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., as Debtors and Debtors in Possession

By: _____

Name: Monika L. McCarthy
Title:  SVP & Assistant General Counsel

17