UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, *et al.*,[1] | : | Case Number 07-10416 (KJC) |
| Debtors. | : | (Jointly Administered) |

Hearing Date: April 10, 2007 at 3:30 P.M.

**RESPONSE OF THE UNITED STATES TRUSTEE TO THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE (DOCKET ENTRY # 10)**

In support of her response to the motion of the Debtors and Debtors-in-possession for an order authorizing the Debtors to pay prepetition wages, compensation, and employee benefits pursuant to sections 105(a) and 363 of the Bankruptcy Code (the "Motion"), Kelly Beaudin Stapleton, United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a/ Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

## INTRODUCTION

1.  Under (i) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a) and (ii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion.

2.  Under 28 U.S.C. § 586, the U.S. Trustee has an overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and the issues raised in this response.

## GROUNDS/BASIS FOR RELIEF

4.  In Paragraph 21 of the Motion, the Debtors state:

    Additionally, for most of the Debtors' Employees involved in loan origination, their compensation is largely earned through commission based plans, including a Wholesale Division and Regional Manager Incentive Compensation Plan, a Wholesale Executive Management Incentive Compensation Plan, a Collateral Analyst Incentive Compensation Bonus Plan and a Company Bonus Plan (the "Incentive Plans"). Employee compensation earned pursuant to the Incentive Plans are in the nature of commissions and are paid concurrently with the Debtors' other payroll obligations. Compensation earned pursuant to an Incentive Plan is paid semi-monthly, monthly or quarterly, depending on the plan. Commissions are earned based on the amount of mortgage loans funded. As compensation paid to the Employees and earned pursuant to the Incentive Plans vary each pay period based on the mortgage loans that are funded, the Debtor is unable to provide a realistic estimate for its future obligations that stem from the Incentive Plans. The

Incentive Plans are ordinary course business expenses, and Employees expect to receive payments pursuant to the Incentive Plans as a portion or all of their salaries. The Debtors seek authorization, but not direction, to honor prepetition amounts earned under the Incentive Plans in the ordinary course of business.

5. In Paragraph 22 of the Motion, the Debtors state:

Because the Debtors stopped funding loans in mid-March, Employees who ordinarily earn their salaries as a percentage of loans funded under the Incentive Plans would not be paid. Based on the very nature of the loan origination business, each of the employees is key to the creation of revenue for the Debtors. In order to retain certain key commission-based Employees while the Debtors sought financing and a potential buyer, the Debtors instituted two incentive plan protection plans (the "Retention Plans"). The Debtors agreed to pay eligible employees for the months of March 2007 and April 2007 the greater of the amount earned under an Incentive Plan or seventy-five percent (75%) of their average monthly income earned under the Incentive Plans during the months of December 2006 through February 2007. The Debtors agreed to pay fifty percent of amounts earned under the Retention Plans on the 20th and the other fifty percent on the final day of the following month. In other words, the Debtors agreed to pay fifty percent of the March 2007 payments on April 20, 2007 and the remaining fifty percent of the March 2007 Retention Plan payments on April 30, 2007. Employees are not eligible for payment under the Retention Plans unless they are actively employed by the Debtors on the payment dates. After giving effect to the recent reduction in force, approximately 1300 employees will be entitled to payment under the Retention Plans. The Debtors estimate that the total aggregate amount to be paid for March 2007 under the Retention Plans will be approximately $7,343,000, all of which is for pre-petition amounts earned by Employees. The Debtors seek authorization, but not direction, to honor prepetition amounts earned under the Retention Plans in the ordinary course of business.

6. 11 U.S.C. § 503(c) provides:

Notwithstanding subsection (b) [allowing the payment of administrative expenses in certain circumstances], there shall neither be allowed, nor paid –

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to

remain with the debtor's business, absent a finding by the court based upon evidence in the record that –

    (A)  the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

    (B)  the services provided by the person are essential to the survival of the business; and

    (C)  either

        (i)  the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

        (ii)  if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless –

    (A)  the payment is part of a program that is generally applicable to all full-time employees; and

    (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of filing of the petition.

    7.    Based upon the disclosures contained in paragraphs 21 and 22 of the Motion, the U.S. Trustee does not believe that the Debtors have clearly established that the relief referenced therein comports with 11 U.S.C. § 503(c).  The U.S. Trustee leaves the Debtors to their burden to establish that the relief referenced in paragraphs 21 and 22 comports with 11 U.S.C. § 503(c).

## **CONCLUSION**

WHEREFORE the UST requests that this Court issue an order consistent with this response.

        Respectfully submitted,

        **KELLY BEAUDIN STAPLETON**
        **UNITED STATES TRUSTEE**


        **BY:**  /s/ Joseph J. McMahon, Jr.
             Joseph J. McMahon, Jr., Esquire (# 4819)
             Trial Attorney
             United States Department of Justice
             Office of the United States Trustee
             J. Caleb Boggs Federal Building
             844 King Street, Room 2207, Lockbox 35
             Wilmington, DE  19801
             (302) 573-6491
             (302) 573-6497 (Fax)

Date:  April 9, 2007