## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : |  |
|  | : | **Jointly Administered** |
| Debtors. | : |  |
|  | : | **Hearing Date: TBD** |
|  | : | **Objection Deadline: TBD** |

**EMERGENCY MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH AUCTION OF LOAN ORIGINATION PLATFORM ASSETS, (B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) SCHEDULING HEARING TO CONSIDER PROPOSED SALE OF LOAN ORIGINATION PLATFORM ASSETS AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (D) GRANTING RELATED RELIEF AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE AND (B) GRANTING RELATED RELIEF**

New Century TRS Holdings, Inc., a Delaware corporation, New Century

Financial Corporation, a Maryland corporation, and their direct and indirect subsidiaries, each as

a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned

counsel, hereby submit this emergency motion (the "Motion") pursuant to sections 105(a), 363

and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"),

and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

"Bankruptcy Rules"), for the entry of (i) an order (a) approving bidding procedures in connection with an auction of certain of the Debtors' assets related to their loan origination platform (the "Loan Origination Platform"), (b) establishing certain procedures relating to the assumption and assignment of certain executory contracts and unexpired leases in connection with a proposed sale of the Loan Origination Platform (the "Sale"), (c) scheduling a hearing (the "Sale Hearing") to consider approval of the Sale and approving the form and manner of notice thereof (the "Sale Notice") and (d) granting certain related relief (the "Bidding Procedures Order") and (ii) an order approving the Sale, including the assumption and assignment of executory contracts and unexpired leases in connection therewith, and granting related relief (the "Sale Order"). In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought in this Motion are Bankruptcy Code Sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014.

## BACKGROUND[2]

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation, NCF originates,

---

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Monica McCarthy and Holly Etlin in support of Chapter 11 Petitions and Request for First Day Relief.

2

purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.     On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

5.     On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

3

6.     These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

7.     As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

8.     Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

9.     During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co.

4

LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

10.     The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

11.     Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, the Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

12.     On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief and the Debtors' bankruptcy cases are being jointly administered pursuant to an order of the Court. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

### RELIEF REQUESTED

13.     The Debtors hereby request, pursuant to Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 6004 and 6006 that the Court enter orders facilitating the prompt auction of the Loan Origination Platform. Specifically, the Debtors seek the entry of the Bidding Procedures Order that approves bidding procedures in connection with an auction of the Loan Origination Platform, approves certain procedures relating to the assumption and assignment of certain executory contracts and unexpired leases in connection with a proposed

5

Sale of the Loan Origination Platform, approves the form of the Sale Notice and sets a Sale Hearing to consider approval of the Sale and grants related relief. In addition, the Debtors seek the entry of a Sale Order that authorizes and approves the Sale of the Loan Origination Platform and grants related relief.

## NEED FOR IMMEDIATE SALE

14.    The Debtors have commenced these bankruptcy cases in order to downsize their operations, reduce expenses, promptly market their businesses and consummate sales of assets as soon as practicable. Prior to commencing these cases, the Debtors, working with Lazard, marketed their businesses. This resulted in expressions of interest, bids and committed offers for various assets and components of their businesses.

15.    Prior to filing this Motion, the Debtors and Lazard pursued a number of possible bidders for the Loan Origination Platform, which comprises the national network of individuals and the supporting infrastructure through which the Debtors have originated a substantial volume of mortgage loans. For example, the Debtors and Lazard contacted potential strategic and industry buyers for the Loan Origination Platform. While some potential purchasers expressed interest in the Loan Origination Platform, none have submitted a bid or a definitive purchase agreement. The Debtors believe that development and Court approval of the auction and bidding procedures described below is the best available means to encourage interested parties to submit binding bids for the Loan Origination Platform.

16.    The nature of the Loan Origination Platform and the current status of the Debtors' business operations makes the timing of an auction absolutely critical. If the Debtors are to auction and sell the Loan Origination Platform for maximum or even substantial appreciable value, there is a narrow window of opportunity. Indeed, because the Debtors have ceased originating loans and require a buyer to resume those business activities, the more time

6

that elapses prior to selling the Loan Origination Platform is likely to cause the value of Loan

Origination Platform to deteriorate. In fact, if the business activities of the Loan Origination

Platform are not resumed in the short term future, the individuals upon which it is based will

seek opportunities elsewhere and the ability of a buyer to originate mortgage loans through the

network will be diminished if not eliminated altogether. In sum, there is an exigent and

immediate need for approval of the bidding procedures requested herein. Consequently, the

Debtors believe, in the exercise of their business judgment, that the relief sought by this Motion

is not only reasonable, but also necessary under the circumstances of this case to maximize the

value of the estates for creditors.

## THE LOAN ORIGINATION PLATFORM

17.    The Debtors are the nation's fourth largest wholesale originator and

purchaser of first mortgage loans and were one of the fastest-growing sub-prime lenders in the

nation. The Debtors originate and purchase mortgage loans through two divisions, a wholesale

division (the "Wholesale Division") and a retail division (the "Retail Division").

18.    The Wholesale Division, which is contained within New Century

Mortgage Corporation, originates and purchases loans through a network of independent

mortgage brokers and correspondent lenders. These regional operating centers are generally

staffed by regional managers, regional sales managers, operations managers, account executives

and other employees that utilize next-generation customized proprietary technology and

streamlined electronic workflows to originate mortgage loans at lower costs. As of after their

Petition Date, the Wholesale Division (i) had approved more than 57,000 independent mortgage

brokers for submission of loan applications, (ii) operated through 11 regional operating centers

located in 6 states and (iii) employed approximately 1,182 employees. The broker's role in this

process is to identify the applicant, assist in completing the loan application form, gather

7

necessary information and documents and serve as the Debtors' liaison with the borrower. Correspondent lenders are independent mortgage bankers and financial institutions that sell loans that have already been funded. For 2006, the Wholesale Division was responsible for approximately 85% of the loans produced by the Debtors, which were approximately $50.7 billion.

19.    The Retail Division, which operates under Home123 Corporation, originated loans through direct contact with consumers, including through referrals from builders, realtors and other third parties. As of after their Petition Date, the Retail Division was supported by 24 branch offices and three central telemarketing units employing approximately 676 retail loan officers. For 2006, the Retail Division originated approximately 15% of the loans produced by the Debtors.

20.    The Loan Origination Platform generally consists of the foregoing nationwide loan origination network and all of the assets involved in its operation, including but not limited to the human and intellectual capital, supporting infrastructure such as proprietary technology and risk management practices and other physical assets upon which it is based.

21.    The Debtors intend to sell some or all of the Loan Origination Platform assets to the highest and best bidder or combination of bidders at auction (the "Successful Bidder") free and clear of any liens, claims or interests, with any valid liens on the assets sold will attach to the sale proceeds. The price to be paid by the Successful Bidder(s) for the Loan Origination Platform assets and the terms and conditions for the sale of such assets will be established at the auction.

22.    The Debtors believe that the proposed bidding procedures and auction will generate the highest and best bid for the Loan Origination Platform assets and provide a fair opportunity for open and spirited bidding. The Debtors reserve the right not to proceed to or at

8

auction or to declare a successful bidder if they determine in their sole discretion that no

adequate bids or offers have been made for the Loan Origination Platform.

## THE BIDDING PROCEDURES

23.    As set forth in greater detail in Exhibit A attached hereto, the Debtors have

developed the following proposed procedures and deadlines for the contemplated auction and

sale of the Loan Origination Platform (the "Bidding Procedures"):[3]

> A.    Notice:
>
> The Debtors, in consultation with Lazard, have developed a list of parties whom the Debtors believe may potentially be interested in and whom the Debtors reasonably believe would have the financial resources to consummate a purchase of the Loan Origination Platform. The list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party," and collectively, the "Contact Parties").
>
> Within three business days of the entry of the Bidding Procedures Order, the Debtors and their advisors will send notice of the proposed Sale, the process for obtaining diligence materials, the process for qualifying as a bidder, the due date for bids and the proposed time and date of the Auction (as defined below) to Contact Parties and other parties in interest and prospects that have or may be identified as potential bidders for the Loan Origination Platform. The Debtors will also publish notice of the proposed sale and bidding procedures in the Wall Street Journal (National Edition).
>
> B.    Data Room and Access to Information:
>
> Information relevant to the Loan Origination Platform for evaluation by interested parties, including certain books and records, material contracts and other financial and operational information for due diligence investigation, will be made available via an online data room on intralinks to bidders who have executed a valid nondisclosure agreement. Specific information for accessing the dataroom will be provided after execution of such agreements. The Debtors may, in their sole discretion, schedule management presentations and make management otherwise available to

---

[3]    The following is intended for summary purposes only. To the extent the description in this Motion is inconsistent in any way from the Bidding Procedures, the terms of the Bidding Procedures shall govern.

9

selected bidders prior to the Bid Deadline (as defined below). The diligence period will take place from April 12, 2007 through May 2, 2007.

C.    Qualified Bidders:

To be eligible to participate in the Auction and be deemed a "Qualified Bidder," each potential bidder must submit a binding written offer to purchase some or all of the Loan Origination Platform to the Debtors, with copies to any Official Committee of Unsecured Creditors appointed in these cases, that satisfies each of the following conditions:

I.    States that the bidder, on its own or together with another Qualified Bidder, offers to purchase some or all of the assets comprising the Loan Origination Platform.

II.    States that the bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Loan Origination Platform upon the terms and conditions substantially as set forth in a draft asset purchase agreement (an "APA") submitted by the Debtors to potential bidders.

III.    Is accompanied by a clean and duly executed asset purchase agreement (a "Modified APA") and a marked Modified APA reflecting any variations from the APA submitted by the Debtors.

IV.    States that the bidder is financially capable of consummating the transactions contemplated by the Modified APA.

V.    States that such Qualified Bidder's offer is irrevocable until the closing of the purchase of the Loan Origination Platform if the Qualified Bidder is the Successful Bidder or the Back-up Bidder (as those terms are defined below).

VI.    Contains such financial and other information that will allow the Debtors to make a reasonable determination in their sole discretion of the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including without limitation such financial and other information setting forth adequate assurance of future performance under Bankruptcy Code Section 365 (if applicable) in a form requested by the Debtors to allow the Debtors to serve within one business day after receipt of such information on counterparties to

any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information.

VII.     States that such Qualified Bidder's offer shall be subject to, and comply with, the provisions of the Gramm-Leach Bliky Financial Services Modernization Act, if applicable, or other consumer protection act or statute if applicable.

VIII.    Identifies with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing.

IX.    Does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment.

X.    Fully discloses the identity of each entity that will be bidding for the Loan Origination Platform or otherwise participating in connection with such bid, and the complete terms of any participation.

XI.    Does not contain any due diligence, financing, or other conditions or contingencies of any kind (other than the conditions specified in the APA), and does contain evidence that the bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Loan Origination Platform, which evidence is reasonably satisfactory to the Debtors.

XII.    Includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA.

XIII.    Is accompanied by a cash deposit of at least $3,000,000 (the "Good Faith Deposit").

XIV.    Is in an amount that the Debtors deem in their sole discretion to be a sufficient offer for the Loan Origination Platform assets.

A bid meeting the above requirements shall constitute a "Qualified Bid" and such bidder shall be a "Qualified Bidder." The Debtors may aggregate separate bids from Qualified Bidders to create a Qualified Bid. The Debtors shall make a determination regarding whether a bid is a

11

Qualified Bid and shall notify bidders when their bids have been determined to be qualified by no later than 5:00 p.m. (prevailing Eastern time) on May 7, 2007.

D.    Deadline for Submission of Bids:

All Qualified Bids must be submitted by no later than 5:00 p.m. (prevailing Eastern time) on May 2, 2007 (the "Bid Deadline") to:

I.    The Debtors:

Lazard Freres & Co. LLC
30 Rockefeller Plaza
New York, NY 10020
Facsimile: (212) 830-3647
Email: richard.puccio@lazard.com
Attention:    Richard Puccio

with a copy to:

O'Melveny & Myers LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Facsimile: (415) 984-8701
Email: bchristensen@omm.com
Attention:    Suzanne Uhland, Esq.
              C. Brophy Christensen, Esq.

and

Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899
Facsimile: (302) 651-7701
Email: ramos@rlf.com
Attention:    Mark D. Collins, Esq.
              Marcos A. Ramos, Esq.

II.    Official Committee of Unsecured Creditors

[to be determined]

E.    Auction:

In the event that the Debtors timely receive one or more Qualified Bids that they deem in their sole discretion to constitute a sufficient bid for the

12

Loan Origination Platform assets, the Debtors shall conduct an auction (the "Auction") with respect to the Loan Origination Platform assets. The Auction will take place starting on May 10, 2007 at a time selected by the Debtors which will be identified in the notice identifying the Qualified Bidders. The Auction will be conducted at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, or such other time, date or location as designated by the Debtors in a notice to all Qualified Bidders. The Auction shall be governed by the following procedures:

I.      Only representatives of the Debtors, Qualified Bidders and the Official Committee of Unsecured Creditors shall be entitled to be present at the Auction.

II.      Only Qualified Bidders shall be entitled to make bids at the Auction.

III.      Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

IV.      Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

V.      Bidding shall commence at the amount of the highest Qualified Bid submitted by the Qualified Bidders prior to the Auction.

VI.      Qualified Bidders may then submit successive bids in increments of at least $250,000 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $250,000 higher than the previous bid, subject to the Debtors' discretion to modify the amount of such increments.

VII.      All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their Modified APA at the Auction.

VIII.      The Auction will be conducted so that each Qualified Bidder will be informed of the terms of the previous bid.

The Auction shall continue until there is only one offer or combination of offers that the Debtors determine, subject to Court approval, is the highest and best offer from among Qualified Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the Debtors may weigh a number of considerations including, without limitation, the amount of the

purchase price, the form of the consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the APA requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified APA. Within three (3) days after the adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. Bids made after the close of the Auction shall not be considered by the Court.

F.    Back-Up Bidder and Return of Deposits

If an Auction is conducted, the party with the next highest or otherwise Qualified Bid, as determined by the Debtors in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-up Bidder") and keep such bid open and irrevocable until after the closing of the sale transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consumate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-up Bidder without further order of the Court.

Except as otherwise provided in the Bidding Procedures, the Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-up Bidder shall be held by the Debtors until twenty-four (24) hours after the closing of the Sale with the Successful Bidder.

## HEARING TO CONSIDER THE SALE AND DEBTORS' ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND NOTICE THEREOF

24.    The Debtors request that the Court schedule a Sale Hearing on or about

May 15, 2007 to consider approval of the Successful Bid and the Sale. At the Sale Hearing, the

Debtors will seek the entry of the Sale Order authorizing and approving the sale of the Loan

Origination Platform assets to the Qualified Bidder pursuant to the terms and conditions set forth

14

in the Modified APA, and the Debtors' assumption and assignment of certain executory contracts and/or leases in connection therewith.

        25.      Bankruptcy Rule 6004 provides that "[n]otice of a proposed use, sale, or lease of property, other than case collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k) and, if applicable, in accordance with §363(b)(2) of the code." Fed. R. Bankr. P. 6004(a). Essentially, Bankruptcy Rule 2002 requires the Debtors to give all creditors and certain other parties "at least 20 days' notice by mail" of the Sale. Bankruptcy Rule 6004 also provides that objections to the proposed Sale "shall be filed and served not less than five days before the proposed action or within the time fixed by the court." Fed. R. Bankr. P. 6004(b). Bankruptcy Rule 6006(a) provides that a "proceeding to assume, reject or assign an executory contract or unexpired lease other than as part of a plan is governed by Rule 9014." Fed. B. Bankr. P. 6006(a).

        26.      The timing of the auction and sale process and the proposed date for the Sale Hearing requested by the Debtor is well within the notice procedures mandated by the Bankruptcy Rules as they will be providing at least twenty days notice required by the Bankruptcy Rules. Scheduling the Sale Hearing on or about May 15, 2007 is also reasonable given the marketing performed by the Debtors and Lazard prior to commencing these cases. These marketing efforts were diligently pursued by them and, while this process was underway, the Debtors continued to experience significant financial and liquidity difficulties. Under the circumstances facing the Debtors, and the significant and carefully targeted marketing prior to the Petition Date, the Debtors believe that the reasonableness of the proposed auction and sale process is evident. Finally, and perhaps most significantly, it is necessary to obtain the maximum recovery for creditors.

27.    Accordingly, the Debtor requests that the Sale Hearing to approve the sale of the Loan Origination Platform and to consider any properly submitted objections be held on May 15, 2007. The Debtors intend to provide notice of the Sale Hearing by service and publication of the notice attached hereto as Exhibit B. The Debtors also intend to publish notice of the Sale Hearing in the National Edition of *The Wall Street Journal,* prior to the Sale Hearing.

28.    Further, to facilitate the Sale and the assumption and assignment of any executory contracts and leases, the Debtors ask the Court to approve the following procedures pursuant to Bankruptcy Rule 6006 and 9014. First, within three business days after the Court enters the Bidding Procedures Order, the Debtors will serve on the counterparties to these contracts and leases a Notice of Assumption and Assignment in the form attached as Exhibit 3 to the proposed Bidding Procedures Order. That Notice of Assumption and Assignment will advise these counterparties of the Debtors' intent to assume and to assign to the Successful Bidder the contract or lease. Thereafter, within 15 days prior to the Sale Hearing, the Debtors will advise these counterparties of any cure amounts associated with the Debtors' assumption and assignment of any contract or lease. Second, any counterparty to a contract or lease who objects to the assignment to the Successful Bidder or disputes the cure amount must file an objection stating the basis, including the nature of any dispute over the cure amount. The Debtors propose that any such objections be due at the same time as any other objection to the sale, which objection deadline the Debtors propose to set for at least five (5) days prior to the Sale Hearing. If there is a dispute concerning a cure amount, the pertinent Debtor may, in its sole discretion, hold an amount equal to the claimed cure amount in reserve pending further order of the Court or agreement among the parties. So long as the Debtors hold this disputed cure amount in reserve, the Debtors will be able to assume and assign the contract or lease without delay.

16

29.    The Debtors further request that, pursuant to Bankruptcy Rule 9014, objections, if any, to the Sale or the Debtors' Notice of Assumption and Assignment: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (c) be filed with the Clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, at least five (5) days prior to the Sale Hearing and (d) with a copy served on and received by: (i) counsel for the Debtors, O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Attention: Suzzanne Uhland, Esq. and O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071, Attention: Ben H. Logan, Esq.; (ii) counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551 Wilmington, Delaware 19899, Attention: Mark D. Collins, Esq., (iii) counsel to the Successful Bidder [to be determined]; (iv) counsel to the Official Committee of Unsecured Creditors [to be determined]; and (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

## APPROVAL OF AUCTION PROCESS AND SALE OF ASSETS

30.    Bankruptcy Code Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he Court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

31.    A sale of a debtor's assets should be authorized pursuant to Bankruptcy Code Section 363 where the transaction represents an exercise of the debtor's sound business judgment.  See, e.g., In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3rd Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson

17

Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines. Inc., No. 01-0056, 2001
Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

      32.    Courts typically consider the following factors in determining whether a
proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale,
(b) whether adequate and reasonable notice of the sale was given to interested parties, (c)
whether the sale will produce a fair and reasonable price for the property and (d) whether the
parties have acted in good faith. See Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix
Steel Corp., 82 B.R. 334, 335-36 (D. Del. 1987); In re United Healthcare Sys.. Inc., No. 97-
21785, 1997 U.S. Dist LEXIS 5090, at * 13-14 and n.2 (D. N.J. Mar. 26, 1997).

      33.    A sound business purpose for the sale of a debtor's assets outside the
ordinary course of business may be found where such a sale is necessary to preserve the value of
assets for the estate, its creditors or interest holders.  See e.g. In re Abbotts Dairies of
Pennsylvania, 788 F.2d 143 (3rd Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983).
In fact, the paramount goal in any proposed sale of property of the estate is to maximize the
proceeds received by the estate.  See In re Food Barn Stores. Inc., 107 F.3d 558, 564-65 (8th Cir.
1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the
estate at hand"); Integrated Resources, 147 B.R. at 659 ("It is a well-established principle of
bankruptcy law that the ... [debtors'] duty with respect to such sales is to obtain the highest price
or greatest overall benefit possible for the estate.") (quoting In re Atlanta Packaging Products,
Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

      34.    Courts also uniformly recognize that procedures intended to enhance
competitive bidding are consistent with the goal of maximizing the value received by the estate
and therefore are appropriate in the context of bankruptcy sales.  See In re Montgomery Ward
Holding Corp., Case No. 97-1409 (P.JW) (Bankr. D. Del. Aug. 6, 1997); In re Fruehauf Trailer

Corp., Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26,1997); Integrated Resources, 147 B.R.

at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets");

In re Financial News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed

rules for the disposition of assets ... [should] provide an adequate basis for comparison of offers,

and [should] provide for a fair and efficient resolution of bankrupt estates").

35.    The Debtors submit that the proposed auction and sale of the Loan

Origination Platform to a Successful Bidder satisfies the "sound business reason test." The

prompt sale of the Loan Origination Platform presents the best opportunity to maximize the

value of the Loan Origination Platform for the estates. The Debtors believe that, absent a prompt

sale, the value of the Loan Origination Platform will rapidly decline. In addition, the Debtors

believe that the Bidding Procedures and Sale Notice are the best method by which it can obtain

the best price for the Loan Origination Platform and provide interested persons with accurate and

reasonable notice of the Sale. The Bidding Procedures will allow the Debtors to conduct the

Auction in a controlled, fair and open fashion that will encourage participation by financially

capable bidders who demonstrate the ability to close a transaction, thereby increasing the

likelihood that the Debtors will receive the best possible consideration for the Loan Origination

Platform by helping ensure a competitive and fair bidding process. They also allow the Debtors

to undertake the Auction process in as expeditious a manner as possible, which the Debtors

believe is essential to maintaining and maximizing the value of their estates.

## SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS

36.    The Debtors further submit that it is appropriate to sell the Loan

Origination Platform free and clear of claims, interests, liens and encumbrances pursuant to

Bankruptcy Code Section 363(f), with any such claims, interests, liens and encumbrances

attaching to the net sale proceeds of the Loan Origination Platform to the extent applicable.

19

37.    Bankruptcy Code Section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if (i) applicable nonbankruptcy law permits sale of such property free and clear of such interests, (ii) such entity consents, (iii) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property, (iv) such interest is in bona fide dispute (v) or such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

38.    Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Loan Origination Platform "free and clear" of liens and interests. In re Dundee Equity Corp., 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); In re Wolverine Radio Co., 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

39.    The Debtors believe that one or more of the tests of Bankruptcy Code Section 363(f) are easily satisfied with respect to any Sale involving the Loan Origination Platform. In particular, the Debtors believe that any lienholder will be adequately protected by having their liens, if any, attach to the cash proceeds ultimately attributable to the Loan Origination Platform in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

20

40.    Although Bankruptcy Code Section 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor JV, 209 F.3d 252, 257 (3rd Cir. 2000). In the case of In re Trans World Airlines, Inc., 322 F.3d 283, 288-89 (3rd Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" Id. at 289. As determined by the Fourth Circuit in In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in Folger, supra, the scope of Bankruptcy Code Section 363(f) is not limited to in rem interests. Thus, the Third Circuit in Folger stated that Leckie held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." Folger, 209 F.3d at 258.

41.    Courts have consistently held that a buyer of a debtor's assets under Bankruptcy Code Section 363 takes the assets free from successor liability resulting from pre-existing claims. See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); In re New England Fish Co., 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); In re

21

Hoffman, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any

interest permissible even though the estate had unpaid taxes); American Living Systems v.

Bonapfel (In re All Am. Of Ashburn, Inc.), 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product

liability claims precluded on successor doctrine in a sale of assets free and clear); WBO

Partnership v. Virginia Dept. of Medical Assistance Services (In re WBQ Partnership), 189 B.R.

97, 104-05 (Bankr. E.D. Va. 1995) (Commonwealth of Virginia's right to recapture depreciation

is an "interest" as used in section 363(f)).[4]

      42.     The purpose of an order purporting to authorize the transfer of assets free

and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a

basis to assert claims against the purchaser arising from the Debtors' pre-sale conduct. Under

Bankruptcy Code Section 363(f), a Successful Bidder is entitled to know that the Loan

Origination Platform does not have attached latent claims that will be asserted against them after

the Sale is completed. Accordingly, and consistent with the above-cited case law, the Sale Order

should state that the purchaser will not be liable as a successor under any theory of successor

liability, for claims that encumber or relate to the Loan Origination Platform.

## ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS AND LEASES

      43.     Bankruptcy Code Section 365(b) authorizes a debtor in possession to

assume and assign an executory contract or unexpired lease subject to Court approval. It

requires a debtor in possession to satisfy certain requirements at the time of assumption if a

default exists under the contract to be assumed, and the standard that is applied by the Third

Circuit in determining whether an executory contract or unexpired lease should be assumed is the

---

[4] Even courts concluding that Bankruptcy Code section 363(f) does not empower them to convey assets
free and clear of claims nevertheless find that Bankruptcy Code section 105(a) provides such authority. See In re
White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority
to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's
equitable powers when necessary to carry out the provisions of title 11).

debtor's "business judgment" that the assumption is in its economic best interests. See Sharon

Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3rd Cir. 1989); See also NLRB

v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing business judgment test as

"traditional") (superseded in part by 11 U.S.C. § 1113); In re III Enterprises, Inc. V, 163 B.R.

453, 469 (Bankr. E.D. Pa. 1994) (citations omitted), aff'd, 169 B.R. 551 (E.D. Pa. 1994).

    44.  The Debtors believe that any proposed assumption and assignment of

executory contracts and unexpired leases as part of a sale of the Loan Origination Platform will

constitute a sound exercise of the Debtors' business judgment and should be approved.  The

Loan Origination Platform, including any related contracts and leases, are valuable assets of the

estates.  Upon consummation of a sale to the Successful Bidder, the Debtors will no longer

continue to operate the Loan Origination Platform and will therefore have no use for any

contracts and leases utilized in that business.  Accordingly, to the extent that the Debtors can sell

any related executory contracts and unexpired leases to a third party in connection with the sale

of the Loan Origination Platform, they will be able generate cash to satisfy claims against the

estates.

## FINDING OF GOOD FAITH

    45.  Bankruptcy Code Section 363(m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Seventh

Circuit in In re Andy Frain Services, Inc., 798 F.2d 1113 (7th Cir. 1986), held that:

> The requirement that a purchaser act in good faith . . . speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

798 F.2d at 1125 (emphasis omitted) (quoting In re Rock Industries Machinery Corp., 572 F.2d

1195, 1198 (7th Cir. 1978).

      46.     The Debtors believe that the Auction and competitive bidding

environment it will foster will result in a transaction negotiated at arm's-length between all

parties involved acting in good faith. The Debtors therefore intend to present evidence to show

that such Successful Bidder is entitled to the same finding under Bankruptcy Code Section

363(m).

## FINALITY OF ORDER

      47.     The Debtors further request that, pursuant to Bankruptcy Rules 6004(h)

and 6006(d), the order approving the Sale and assumption and assignment of any executory

contracts and unexpired leases not be stayed for any period of time after the entry of such orders.

      48.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,

or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless

the court orders otherwise." Bankruptcy Rule 6006(d) provide that an "order authorizing the

trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 10

days after the entry of the order unless the court orders otherwise." The Debtors request that any

order approving the sale of the Loan Origination Platform or the Debtors' assumption and

assignment of executory contracts and unexpired leases be effective immediately by providing

that the 10-day stay under Bankruptcy Rules 6006(h) and 6006(d) are waived.

24

49.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide

sufficient time for an objecting party to appeal before an order can be implemented.  See

Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy

Rule 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court

should "order otherwise" and eliminate or reduce the 10-day stay period, the leading treatise on

bankruptcy suggests that the 10-day stay period should be eliminated to allow a sale or other

transaction to close immediately "where there has been no objection to the procedure."  10

Collier on Bankruptcy, ¶ 6004.10 (15th rev. ed. 2006).  Further, it suggests that if an objection is

filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may

be reduced to the amount of time actually necessary to file such appeal.  Id.

50.     The Debtors hereby request that any order approving the sale of the Loan

Origination Platform and the assumption and assignment of any related contracts and leases be

effective immediately upon entry by providing that the 10-day stay under Bankruptcy Rules

6004(h) and 6006(d) is waived or, in the alternative, if an objection to the sale of the Loan

Origination Platform is filed, reduce the stay period to the minimum amount of time needed by

the objecting party to file its appeal.

## NOTICE

51.     No trustee, examiner or creditors' committee has been appointed in these

chapter 11 cases.  Notice of this Motion has been provided to: (1) the Office of the United States

Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc.

and The CIT Group/Business Credit, Inc., the Debtors proposed post-petition senior secured

lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as

identified in the Debtors' chapter 11 petitions; (4) all parties who are known to possess or assert

a secured claim against the Loan Origination Platform; (5) the Internal Revenue Service; and (6)

25

all parties entitled to notice under Local Rule 2002-1(b).  In light of the nature of the relief

requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors request that the Court (i) grant the Motion; (ii) enter

an order substantially in the form attached as Exhibit C hereto, approving the Bidding

Procedures and scheduling a hearing to consider and approve the Sale; (iii) after final hearing,

approve the Sale Order in a form to be submitted to the Court; and (iv) grant such other and

further relief as is just and appropriate.

Dated:  April 9, 2007
        Wilmington, Delaware

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION