IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Case No. 07-10416 (KJC) |
| | : | Jointly Administered |
| Debtors. | : | |

EMERGENCY MOTION OF THE DEBTORS AND
DEBTORS IN POSSESSION FOR AN ORDER SHORTENING NOTICE
PERIOD AND APPROVING THE FORM AND MANNER OF NOTICE

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court for an order, pursuant to Rules 2002 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving the form and manner of notice of the Sale Motion (defined below) and (ii) scheduling a hearing for April 17, 2007, or as soon thereafter as the Court's schedule permits, to consider the Bidding Procedures (as defined below) requested in the Sale Motion. In further support of this Motion, the Debtors respectfully

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

RLF1-3136167-2

represent as follows:

## I. The Debtors' Sale Motion Seeks Immediate Relief Which is Necessary to Preserve and Maximize the Value of the Loan Origination Platform

1. On April 9, 2007, the Debtors filed their Emergency Motion for (I) an Order (A) Approving Bidding Procedures in Connection With the Auction of Loan Origination Platform Assets, (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (C) Scheduling Hearing to Consider Proposed Sale of Loan Origination Platform Assets and Approving Form and Manner of Notice Thereof and (D) Granting Related Relief and (II) an Order (A) Approving the Proposed Sale and (B) Granting Related Relief (the "Sale Motion").[2] As more fully described in the Sale Motion, the Debtors have moved the Court to approve certain bidding, auction and sale procedures, and other procedures for the Debtors to assume and assign certain executory contracts and leases, in connection with the Debtors' auction and sale of certain assets related to their loan origination platform (the "Loan Origination Platform"). The Debtors also have asked the Court to set a Sale Hearing[3] to consider approval of the Sale Transaction and the Sale Notice, and grant related relief.

2. The Debtors are the nation's fourth largest wholesale originator and purchaser of first mortgage loans and were one of the fastest-growing sub-prime lenders in the nation. The Debtors originate and purchase mortgage loans through two divisions, a wholesale division (the "Wholesale Division") and a retail division (the "Retail Division").

3. The Wholesale Division, which is contained within New Century Mortgage Corporation, originates and purchases loans through a network of independent

---

[2] A copy of the Sale Motion (without exhibits) is attached hereto as Exhibit A.

[3] Terms not otherwise defined shall have the meaning accorded to such terms in the Sale Motion.

mortgage brokers and correspondent lenders. These regional operating centers are generally staffed by regional managers, regional sales managers, operations managers, account executives and other employees that utilize next-generation customized proprietary technology and streamlined electronic workflows to originate mortgage loans at lower costs. As of after their Petition Date, the Wholesale Division (i) had approved more than 57,000 independent mortgage brokers for submission of loan applications, (ii) operated through 11 regional operating centers located in 6 states and (iii) employed approximately 1,182 account executives. The broker's role in this process is to identify the applicant, assist in completing the loan application form, gather necessary information and documents and serve as the Debtors' liaison with the borrower. Correspondent lenders are independent mortgage bankers and financial institutions that sell loans that have already been funded. For 2006, the Wholesale Division was responsible for approximately 85% of the loans produced by the Debtors, which were approximately $50.7 billion.

4. The Retail Division, which operates under Home123 Corporation, originated loans through direct contact with consumers, including through referrals from builders, realtors and other third parties. As of after their Petition Date, the Retail Division was supported by 24 branch offices and three central telemarketing units employing approximately 676 retail loan officers. For 2006, the Retail Division originated approximately 15% of the loans produced by the Debtors.

5. In order to finance the origination of mortgage loans, the Debtors entered into a series of master repurchase agreements (the "Master Repurchase Agreements") with financial institutions (each a "Warehouse Lender"). Pursuant to the Master Repurchase Agreements, each Warehouse Lender provided a line of credit to the Debtors. In the ordinary

3

course of their business, the Debtors used each Warehouse Lender's line of credit, together with the Debtors' own equity, to fund the origination of mortgage loans. Under these arrangements, the Warehouse Lenders typically funded 98% of the loan amount and had the right to require, each time funds were advanced to fund a mortgage loan originated by the Debtors, that the Debtors use a portion of its own equity to cushion the Warehouse Lender against nonperforming mortgage loans.

6. Over the past year, increased interest rates and stagnating home prices resulted in a decreased demand for mortgages, heightened pricing competition and an increase in early payment defaults. This deterioration contributed to the decreased demand and pricing in the secondary market for subprime mortgages. In addition, and as a result of the foregoing crises, shortly prior to the Debtors' petition date the Warehouse Lenders effectively terminated the ability of the Debtors to borrow under the Master Repurchase Agreements.

7. Without access to credit, the Debtors have been unable to continue funding the loans they originate and, because the Debtors lack the ability to find alternative financing sources to fund loans, they have ceased originating loans. While the Loan Origination Platform still has substantial value, unless it resumes operations and originating loans it is more than likely that the human and intellectual capital on which it is based and the surrounding infrastructure will be depleted. Consequently, the Debtors believe it is necessary to promptly sell the Loan Origination Platform in order to preserve and maximize its value.

8. The Loan Origination Platform generally consists of the foregoing nationwide loan origination network and all of the assets involved in its operation, including but not limited to the human and intellectual capital, supporting infrastructure such as proprietary technology and risk management practices and other physical assets upon which it is based. As

described more fully in the Sale Motion, the Debtors intend to sell the Loan Origination Platform assets to the highest and best bidder at auction (the "Purchaser") free and clear of any liens, claims or interests, with any valid liens on the assets sold to attach to the sale proceeds. The price to be paid by Purchaser for the Loan Origination Platform and the terms and conditions for the sale of such assets will be established at the auction. The Debtors believe that the proposed bidding procedures and auction will generate the highest and best bid for the Loan Origination Platform assets and provide a fair opportunity for open and spirited bidding.

9. The procedures proposed by the Debtors for their auction and sale of the Loan Origination Platform include the (i) notice procedures applicable to the Debtors' auction of the Loan Origination Platform; (ii) standards for interested parties to become a Qualified Bidder at any auction; (iii) deadline for the submission of any Qualified Bids for the Loan Origination Platform; (iv) procedures to govern the Debtors' conduct of the auction of the Loan Origination Platform and their determination of the highest and/or best offer for the Loan Origination Platform; and (v) notice and other procedures to govern the Debtors' assumption and assignment of certain executory contracts and leases and proposed cure amounts, and objections, if any, by interested parties to the Debtors' assumption and assignment of any such contracts or leases. Collectively, these procedures hereafter are referred to as the Bidding Procedures.[4]

10. The nature of the Loan Origination Platform and the current status of the Debtors' business operations makes timing of an auction absolutely critical. If the Debtors are to auction and sell the Loan Origination Platform for maximum value, there is a narrow window of opportunity. Indeed, it might be difficult to pursue and complete a sale of the Loan Origination Platform after early May because the Debtors have ceased originating loans. Accordingly, the

---

[4] The Debtors' discussion herein of the Bidding Procedures is qualified in its entirety by the terms of the Bidding Procedures set forth in the Sale Motion, Bidding Procedures and Bidding Procedures Order.

5

RLF1-3136167-2

Debtors require a prompt sale process in order to attract a buyer to acquire the Loan Origination Platform and resume those business activities, thus preserving the value of the Debtors' Loan Origination Platform. In sum, there is an exigent and immediate need for approval of the Bidding Procedures requested herein.

### II. The Court Should Consider the Bidding Procedures at a Hearing on April 17, 2007, or as Soon Thereafter as the Court's Calendar Permits

11. The Debtors believe that the Sale Transaction offers the best opportunity for the Debtors to preserve and maximize the value of the Loan Origination Platform and that the relief sought by the Sale Motion is not only reasonable, but necessary, to obtain maximum value for the Debtors and their estates. However, in order for the Debtors to maximize the value of their estates, the Debtors require the Court to consider the Bidding Procedures requested in the Sale Motion as soon as possible.

12. Bankruptcy Rule 2002(a)(2), read in conjunction with Rule 9006-1(e) of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, requires that a motion proposing the use, sale or lease of property of the estate other than in the ordinary course of business be filed and served at least twenty (20) days prior to the proposed hearing date unless the Court for cause shown shortens the time or directs another method of giving notice. Additionally, Local Rule 9006-1(c) provides that objection deadlines be set at least five (5) business days before a hearing date.

13. The Debtors respectfully submit, however, that for the reasons discussed herein, the Court's consideration of the Bidding Procedures requested in the Sale Motion at a hearing scheduled for April 17, 2007, or as soon thereafter as the Court's calendar permits (the "Hearing"), is reasonable and appropriate under the circumstances. As noted in the Sale Motion, the Debtors have asked the Court to schedule a separate hearing for May 15, 2007, for the Court

6

to consider approval of the Successful Bid, the Debtors' assumption and assignment of executory contracts and leases and objections, if any, thereto, and the Sale

14. Further, the Debtors hereby request approval of an objection deadline for any party to submit a written objection to the Bidding Procedures of no later than 4:00 p.m. (Eastern Time) on the calendar day immediately preceding the Hearing. Due to the emergency nature of the Debtors' need for the Court to consider the Bidding Procedures, the Debtors believe that this objection deadline will afford interested parties sufficient time to consider and appropriately respond to the Bidding Procedures requested in the Sale Motion while affording the Court and the Debtors time to review and consider any objections filed with respect thereto. Accordingly, the Debtors submit that this objection deadline is appropriate and necessary under the circumstances.

15. The Debtors intend to serve the Sale Motion and this Motion today upon: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors post-petition senior secured lenders; (3) the 50 largest unsecured creditors for the Debtors on a consolidated basis as identified in the Debtors' chapter 11 petitions; (4) all parties who are known to possess or assert a secured claim against the Loan Origination Platform; (5) the Internal Revenue Service; and (6) all parties entitled to notice under Local Rule 2002-1(b).

*[Remainder of Page Intentionally Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit B: (i) granting this Motion; (ii) approving the shortened notice period requested herein and the form, manner and sufficiency of notice of the Sale Motion and Bidding Procedures; (iii) scheduling the Hearing; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: April 9, 2007
       Wilmington, Delaware

*/s/ Marcos A. Ramos*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION