UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| *In re* | | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | | |
| INC., a Delaware corporation, *et al.*,[1] | : | |
| | | Case Number 07-10416 (KJC) |
| Debtors. | : | (Jointly Administered) |

**Hearing Date:  April 12, 2007 at 3:00 P.M.**

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE EMERGENCY MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE PROPOSED SALE OF THEIR ASSETS USED IN LOAN SERVICING BUSINESS, (B) SCHEDULING HEARING TO CONSIDER PROPOSED SALE OF CERTAIN ASSETS AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF
(DOCKET ENTRY # 70)**

In support of her objection to the emergency motion of the Debtors and Debtors-in-possession for (I) an order (a) approving bidding procedures and bid protections in connection with the proposed sale of their assets used in loan servicing business, (b) scheduling a hearing to consider the proposed sale of certain assets and approving the form and manner of notice thereof, and (c) granting related relief (the "Motion"), Kelly Beaudin Stapleton, United States Trustee for Region

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a/ Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

3 ("U.S. Trustee"), by and through her counsel, avers:

## INTRODUCTION

1.     Under (i) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a) and (ii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion.

2.     Under 28 U.S.C. § 586, the U.S. Trustee has an overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.   *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.     Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and the issues raised in this objection.

## GROUNDS/BASIS FOR RELIEF

*Consumer Privacy Under 11 U.S.C. § 363(b)(1)*

4.     The Motion does not provide sufficient information for the U.S. Trustee to determine whether a consumer privacy ombudsman needs to be appointed to protect personally identifiable information about individuals.  11 U.S.C. § 363(b)(1) provides:

> (b)(1)  The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell

or lease personally identifiable information[2] to any person unless –
    (A) such sale or lease is consistent with such policy; or
    (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease –
        (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
        (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

5.    Under Section 2.1(c) of the Asset Purchase Agreement ("APA"), New Century Financial Corporation and New Century Mortgage Corporation (together, "Sellers") are selling their "Servicing Rights." The "Servicing Rights," in turn, are defined as including "the right of ownership, possession, control and use of any and all Servicing Files and Mortgage Loan Documents[3] pertaining to the servicing of the Mortgage Loans as provided in the Servicing

---

[2]

"Personally identifiable information" is defined in 11 U.S.C. § 101(41A) as meaning

    (A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes –
    (i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;
    (ii) the geographical address of a physical place of residence of such individual;
    (iii) an electronic address (including an e-mail address) of such individual;
    (iv) a telephone number dedicated to contacting such individual at such physical place of residence;
    (v) a social security account number issued to such individual; or
    (vi) the account number of a credit card issued to such individual; or

    (B) if identified in connection with 1 or more of the items of information specified in subparagraph (A) --
    (i) a birth date, the number of a certificate of birth or adoption, or a place of birth; or
    (ii) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically.

[3]

The term "Mortgage Loan Documents" is defined as including all documents related to the loan's origination, and the term "Servicing File" includes the "Mortgage Loan Documents." One or more of the Mortgage Loan Documents typically contain "personally identifiable information" (i.e., the name and address of the mortgagor).

Agreements." APA § 1.1. Notwithstanding the fact that the definition of "Servicing Rights" encompasses ownership interests in Servicing Files and Mortgage Loan Documents, the Sellers do not appear to be transferring any Mortgage Loans which the Sellers directly own under Section 2.1 of the APA; the U.S. Trustee expects that the transfer of any ownership interests in Servicing Files and Mortgage Loan documents would be incident to the transfer of such Mortgage Loans. Accordingly, the U.S. Trustee is unable to determine whether "personally identifiable information" is being sold pursuant to the APA.

6.      The U.S. Trustee will report to the Court on this issue at the hearing on the Motion and, to the extent necessary, the related matter of whether a consumer privacy ombudsman should be appointed.

*Initial Overbid*

7.      The Debtors propose an initial overbid of 110% of the Purchase Price. Based upon the description of the Purchase Price contained in paragraph 12 of the Motion, that figure is approximately $13.9 million. The requested break-up fee and expense reimbursement will not exceed approximately $5.7 million. Mot. ¶ 38(E). Bids subsequent to the initial overbid are proposed to be in $500,000 increments. Mot. ¶ 38(G). Notwithstanding the U.S. Trustee's position regarding the propriety of awarding the requested bid protections (see below), the initial overbid should be reduced substantially. A sizeable initial overbid may discourage potential bidders from participating in the proposed auction. *See In re Mama's Original Foods, Inc.*, 234 B.R. 500, 505 (Bankr. C.D. Cal. 1999) (minimum overbid amounting to 11.3% of "stalking horse" bid was excessive; court found that 2.2% initial overbid was reasonable).

*Break-Up Fee and Expense Reimbursement Provisions*

8.    Through the Motion, the Debtors seek to pay Carrington Mortgage Services, LLC

("Purchaser") a break-up fee in the amount of $3 million.  Section 9.2(a) of the APA states:

> If one or more Sellers sell, transfer, lease or otherwise dispose of,
> directly or indirectly, including through an asset sale, stock sale,
> merger or other similar transaction, all or substantially all of the
> Business or the Purchased Assets in a transaction or a series of
> transactions with one or more Persons other than Purchaser *in any
> circumstance, including in accordance with the Bidding Procedures*
> (such event being an "<u>Alternative Transaction</u>"), Sellers shall pay to
> Purchaser, within two Business Days after the consummation of the
> Alternative Transaction, an amount in cash equal to 3% of the
> Purchase Price (the "<u>Break-Up Fee</u>"). (Italics added).

Similarly, as more specifically described in Section 9.2(b) of the APA, if the APA is terminated

upon the occurrence of certain events detailed in that Section and the termination was not caused

by the Purchaser's conduct, then the Purchaser is entitled to payment of its "reasonable, actual out-

of-pocket fees and expenses, including reasonable attorneys' fees, expenses of its financial advisors,

and expenses of other consultants, incurred in connection with the transactions contemplated by [the

APA]" in an amount not to exceed $1.5 million.

9.    In *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien

Environmental Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999), the United States Court of Appeals for

the Third Circuit made the following observation:

> [E]ven if the purpose for the break-up fee is not impermissible, the
> break-up fee may not be needed to effectuate that purpose.  For
> example, in some cases a potential purchaser will bid whether or not
> break-up fees are offered.  This can be expected to occur whenever
> a potential purchaser determines that the cost of acquiring the debtor,
> including the cost of making the bid, is less than the estimated value
> the purchaser expects to gain from acquiring the company.  In such
> cases, the award of a break-up fee cannot be characterized as
> necessary to preserve the value of the estate.

181 F.3d at 535.

10.    In paragraph 23 of the Motion, the Debtors describe Carrington Capital Management, LLC ("Carrington") as "an obvious potential buyer."  Carrington holds the primary interests in the securitization trusts which own $8.6 billion of $19 billion in loans (47%) owned by third parties and serviced by the Debtors.  Mot. ¶¶ 14, 23.  The Debtors hold a 36.75% membership interest in Carrington; Carrington is an "affiliate" of the Debtors as that term is defined in 11 U.S.C. § 101(2). Given these facts, Carrington is representative of the type of bidder which, referring to the *O'Brien* text, will bid without bid protections.

11.    The U.S. Trustee believes that the request for approval of the bid protections should be denied.  However, in the event this Court determines that a bid protection is appropriate, the only appropriate protection is a capped amount for actual, necessary, and reasonable expenses.  Bruce A. Markell, *The Case Against Breakup Fees in Bankruptcy*, 66 AM. BANKR. L.J. 349, 369 (1992). Additionally, in the event that this Court approves all or part of the bid protections, Section 9.2(a) should be restricted to sales in accordance with the Bidding Procedures; by way of hypothetical example, the Debtors' estates should not be paying a break-up fee for a liquidation sale of the Purchased Assets which closes six months from now if the Debtors' cases eventually convert to cases under chapter 7.

12.    Furthermore, there is no legal basis for granting the proposed bid protections superpriority administrative expense status.  Proposed Order ¶ 3.  11 U.S.C. §§ 364(c) and 507(b) are the only sections of the Code which authorize superpriority claim status, and those sections address (i) the obtaining or incurring of debt in the event that the debtor-in-possession/trustee is unable to obtain unsecured credit and (ii) adequate protection of a secured claim which later proves

to be inadequate.  *See* 11 U.S.C. §§ 364(c), 507(b).  Clearly, 11 U.S.C. §§ 364(c) and 507(b) do not apply to the bid protections which the Debtors propose to pay.  Absent authority supporting the argument that this Court has the authority to elevate bid protections to superpriority administrative expense status, this Court should reject the Debtors' proposal.  Additionally, through the proposed form of order, the Debtors seek authority to pay the bid protections from the sale proceeds "regardless of any other competing liens on or claims to such sale proceeds."  Proposed Order ¶ 3. The legal authority supporting this request is unclear.

*11 U.S.C. § 363(o)*

13.    Added to the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), 11 U.S.C. § 363(o) provides as follows:

> Notwithstanding [11 U.S.C. § 363(f)], if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

14.    Both the bid procedures order and ultimately the sale order should acknowledge that the sale proposed by the Debtors will not be free and clear of claims and defenses that are related to a consumer credit transaction subject to the Truth in Lending Act or any consumer credit contract as defined by Section 363(o) of the Bankruptcy Code.  Further, the bid procedures order should clarify that neither its provisions nor those in the sale order will abridge or modify the newly-added

protections of this subsection of the Bankruptcy Code.

## **CONCLUSION**

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Motion or granting other relief consistent with this objection.

Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**

**BY:**  /s/ Joseph J. McMahon, Jr.
          Joseph J. McMahon, Jr., Esquire (# 4819)
          Trial Attorney
          United States Department of Justice
          Office of the United States Trustee
          J. Caleb Boggs Federal Building
          844 King Street, Room 2207, Lockbox 35
          Wilmington, DE  19801
          (302) 573-6491
          (302) 573-6497 (Fax)

Date:  April 11, 2007