IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| NEW CENTURY TRS HOLDINGS, | : |
| INC., a Delaware corporation, et al.,[1] | : |
| | : Case No. 07-10416 (KJC) |
| | : |
| Debtors. | : Jointly Administered |
| | : |
| | : **Related to Dkt. No. 25** |

**LIMITED OBJECTION OF CITIGROUP GLOBAL MARKETS REALTY CORP. TO EMERGENCY MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE PROPOSED SALE OF ASSETS USED IN THEIR LOAN SERVICING BUSINESS, (B) SCHEDULING HEARING TO CONSIDER PROPOSED SALE OF CERTAIN ASSETS AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE AND (B) GRANTING RELATED RELIEF**

TO THE HONORABLE KEVIN J. CAREY,
UNITED STATES BANKRUPTCY COURT JUDGE:

Citigroup Global Markets Realty Corp. ("*Citigroup*") hereby submits this limited objection (the "*Limited Objection*") to the emergency motion of the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") for (i) an order (a) approving bidding procedures and bid protections in connection with the proposed sale of assets used in their loan

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware corporation; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

servicing business, (b) scheduling hearing to consider proposed sale of certain assets and approving form and manner of notice thereof, and (c) granting related relief and (ii) an order (a) approving the proposed sale and (b) granting related relief [Doc. No. 70] (the "**Sale Motion**"). In support of the Objection, Citigroup respectfully represents as follows:

1. Citigroup files this Limited Objection to ensure that proceeds from the proposed sale of the Debtors' Servicing Business Assets (as defined below) will be used to satisfy all obligations due and owing to Citigroup under the Servicer Advance Facility (as defined below). Following discussions with Debtors' counsel, Citigroup believes it has reached an agreement with both the Debtors and the proposed purchaser of the Servicing Business Assets to clarify the proposed asset purchase agreement and any proposed order entered in connection therewith, and specifically provide for repayment of any and all obligations due and owing to Citigroup under the Servicer Advance Facility.

2. As part of the Debtors' loan servicing business, and in order to finance advances (the "**Advances**") required to be made in connection therewith,[2] New Century Mortgage Corporation ("**NCMC**") and Citigroup entered into that certain Servicer Advance Financing Facility Agreement, dated August 28, 2003 (as amended from time to time, the "**Servicer Advance Facility**") and that certain Amended and Restated Guaranty dated as of

---

[2] Loan servicing typically involves collecting and remitting loan payments received from borrowers, making Advances and, in certain circumstances, contacting delinquent borrowers and supervising foreclosure actions and property dispositions following unremedied defaults. As noted in the Debtors' motion, dated April 2, 2007 [Doc. No. 12] (the "**DIP Motion**"), seeking approval of secured postpetition financing (the "**DIP Loan Agreement**"), servicing contracts require the servicer to advance principal, interest and other costs with respect to delinquent mortgage loans, and these Advances "receive a priority of payment" from the securitization trusts that receive such Advances. *See* DIP Motion, at ¶ 26. The DIP Loan Agreement provides the Debtors with a revolving credit facility of up to $150 million, which will be advanced in two tranches: (i) Tranche A is a revolving loan facility with a borrowing base keyed to a variety of the Debtors' unencumbered assets and has an initial commitment level of $50 million, which can be increased to $100 million; (ii) Tranche B is a revolving loan facility designed to finance the advances required by the Debtors to service loans and to fund working capital needs ("**Tranche B**"). On April 5, 2007, the Court entered an interim order approving the DIP Loan Agreement [Doc No. 89].

October 1, 2004 (as amended from time to time, the "***Guaranty***") by New Century Financial Corporation ("***NCF***") in favor of Citigroup Realty in support of the Servicer Advance Facility. As of the petition date of these chapter 11 cases, NCMC owed Citigroup the aggregate principal amount of approximately $32 million secured by these Advances.[3]

        3.      NCF and NCMC have entered into an agreement (the "***APA***") to sell all of the assets used in their mortgage loan servicing business (the "***Servicing Business Assets***") to Carrington Capital Management, LLC and Carrington Mortgage Services, LLC (together, "***Carrington***"). Assets to be sold to Carrington pursuant to the APA include the Debtors' mortgage servicing rights ("***MSRs***") contained in servicing agreements with 28 securitization trusts, and the right to be reimbursed for certain servicing Advances made by the Debtors under the Debtors' MSRs. *See* Sale Motion, ¶ 29.

        4.      The APA provides that a portion of the purchase price for the Servicing Business Assets is to "be used to satisfy *any outstanding obligations* on the Debtors' Servicer Advance Facility with Citigroup Global Markets Realty Corp. (which balance was approximately $31,500,000 as of March 25, 2007) or the Tranche B Advances under the DIP Loan Agreement, if the DIP Loan is used to takeout the Service Advance Facility) . . . ." *Id.* at ¶ 32 (emphasis added); *see also* APA, § 4.1(a). The APA itself conditions Carrington's purchase of the Servicing Business Assets on use of sale proceeds "to pay in full all amounts owing under the Servicer Advance Facility . . . and the Servicer Advance Facility shall have terminated and all Liens thereunder shall no longer be of any force and effect." APA, § 8.3(l).

---

[3] On March 8, 2007, Citigroup sent to NCMC and NCF that certain Notice of Default pursuant to section 9.2 of the Servicer Advance Facility, notifying NCMC and NCF that in light of various events of default under the Servicer Advance Facility, the aggregate principal amount of $31,928,880.13, together with interest, fees, expenses and other charges as provided in the Servicer Advance Facility and Guarantee, were immediately due and payable. Further, pursuant to section 9.2 of the Servicer Advance Facility, Citigroup indicated that it would no longer entertain requests for funding under the Servicer Advance Facility or otherwise.

**LIMITED OBJECTION**

5.	To the extent Tranche B of the DIP Loan Agreement is *not* used to satisfy all obligations due and owing to Citigroup under the Servicer Advance Facility,[4] Citigroup appreciates that it will be paid in full all amounts due and owing under the Servicer Advance Facility at the closing of the sale of the Debtors' Servicing Business Assets. Citigroup files this Limited Objection because the APA, unlike the DIP Loan Agreement, does not capture all of the Obligations owed to Citigroup, including principal, interest, fees, expenses and other charges as provided under the Servicer Advance Facility.

6.	Indeed, the definition in the APA of "Servicer Advance Facility Amount," which is the amount the Debtors intend to pay to Citigroup to satisfy all amounts due and owing under the Servicing Advance Facility (and thereby terminate Citigroup's existing first priority liens in the Advances), simply includes "the aggregate outstanding principal amount plus accrued but unpaid interest thereon, under the Servicer Advance Facility . . . ." APA, § 1.1; *see also* APA, § 4.2(a) ("On the Closing Date, the Servicer Advance Facility Amount shall be set forth on the Servicer Advance Facility Schedule and shall equal the then current outstanding principal amount, plus accrued but unpaid interest, under the Servicer Advance Facility . . . ."). Accordingly, while the Sale Motion notes that all amounts due and owing to Citigroup under the Servicer Advance Facility will be paid in full, the APA is less than clear on this point.

7.	In light of the foregoing, and to the extent Tranche B of the DIP Loan is *not* used to satisfy all Obligations due and owing to Citigroup under the Servicer Advance

---

[4] Tranche B of the DIP Loan was specifically designed to, among other things, "take out the amounts" owed to Citigroup under the Servicer Advance Facility. *See* DIP Motion, ¶ 27. Indeed, the DIP Loan Agreement expressly provides that "[p]rior to, or concurrently with, the initial Tranche B Advance, the Obligations (as defined in the Citigroup Servicer Advance Facility Agreement) shall have been paid in full . . ." DIP Loan Agreement, § 5.03 (a).

Facility, Citigroup seeks a clarification from the Debtors in the APA (and any order entered by the Court in connection therewith) that the proceeds from the sale of the Debtors' Servicing Business Assets will be used to satisfy in full all Obligations due and owing to Citigroup under the Servicer Advance Facility.

WHEREFORE, Citigroup respectfully requests that the Court enter an order (a) clarifying the APA (and any order related thereto) to provide for repayment of all Obligations due and owing to Citigroup under the Servicer Advance Facility and (b) granting such other and further relief as is just.

DATED: April 11, 2007
Wilmington, Delaware

_____
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
Kathleen Campbell Davis (No. 4229)
CAMPBELL & LEVINE, LLC
800 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

-and-

Paul M. Basta
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

ATTORNEYS FOR CITIGROUP GLOBAL
MARKETS REALTY CORP.