# Exhibit A

# MORTGAGE LOAN
## PURCHASE AND SALE AGREEMENT
### (Servicing Released)

THIS MORTGAGE LOAN PURCHASE AND SALE AGREEMENT, is made and entered into as of **February 28, 2007,** (hereinafter referred to as the "Agreement"), by and between **NC Capital Corporation,** as seller (hereinafter referred to as "Seller"), and **ALASKA SEABOARD PARTNERS LIMITED PARTNERSHIP,** as buyer (hereinafter referred to as "Buyer").

In consideration of the premises and of the mutual agreements contained herein, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, on a whole loan basis, servicing released, certain Mortgage Loans and Real Estate Owned assets as described herein.

## ARTICLE I
## DEFINITIONS

**Section 1.1 Definitions.** All words and phrases shall have the respective meanings specified in this Article I for all purposes of this Agreement.

"*Assignment of Mortgage*" means an assignment of the Mortgage "in blank", in recordable form (absent the book and page references for the recorded Mortgage), notice of transfer or equivalent instrument sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale and assignment of all of Seller's right, title and interest in and to the related Mortgage to Buyer, to be prepared and executed by Seller (absent the book and page references for the recorded Mortgage) in connection with each Mortgage Loan purchased by Buyer hereunder.

"*Closing Date*" means the dates agreed to by Seller and Buyer and set forth in the Purchase Commitment when the Mortgage Loans and Real Estate Owned assets shall be conveyed.

"*Custodial Loan Files*" means the files relating to the Mortgage Loans that are held by the Custodian containing the related Mortgage Loan documents set forth in Section 4.2(a).

"*Custodian*" means Deutsche Bank as third party document custodian.

"*Cut-Off Date*" means the dates specified in the related Purchase Commitments when the Buyer shall be entitled to the payments from the Mortgage Loans.

"*Deed*" means a quitclaim or limited warranty deed or equivalent instrument from Seller to Purchaser in recordable form under the laws of the jurisdiction in which the related Real Estate Owned asset is located to reflect the sale of the Real Estate Owned asset from Seller to Buyer.

"*Defect*" means any representation, warranty or covenant made by Seller with respect to a Mortgage Loan, Real Estate Owned, Loan Documents, or the Mortgage Loan Schedule made a part of this Agreement that is untrue or incorrect in any material respect, resulting in a material and adverse affect on the value of the related Mortgage Loan or Real Estate Owned asset.

"*Interim Servicing Period*" the period during which Seller shall service the Mortgage Loans for the Buyer pursuant to the terms of this Agreement, which period shall commence on the related Closing Date and end on the related Servicing Transfer Date.

"*Loan Documents*" means with respect to a Mortgage Loan, the original or certified copies of all of the agreements, certificates, legal opinions or other documents evidencing or related to such Mortgage Loan, that are required under Seller's underwriting guidelines to document the underwriting, origination and servicing of such Mortgage Loan, including copies of the Custodial Loan File, the loan application, appraisal report, the Obligor's credit report and the title report for the related Mortgaged Property.

"*Mortgage*" means with respect to a Mortgage Loan, the instrument, including a mortgage or deed of trust, securing such Mortgage Loan that creates a lien on the related mortgaged property, including all attachments and improvements thereto.

"*Mortgage Loan*" means an individual mortgage loan sold by Seller and purchased by Buyer pursuant to this Agreement that is identified in the Mortgage Loan Schedule attached to the Purchase Commitment delivered on or prior to such Closing Date, which mortgage loan includes the rights and obligations of a holder thereof and payments thereon and proceeds therefrom received.

"*Mortgage Loan Schedule*" means with respect to a Closing Date the schedule, either in written or electronic form, attached to the related Purchase Commitment and delivered by Seller to Buyer, which identifies the Mortgage Loans and Real Estate Owned assets being sold by Seller to Buyer on such Closing Date, and includes certain information regarding such Mortgage Loans and Real Estate Owned assets, as of the Cut-Off Date specified therein, in a format that is reasonably acceptable to Buyer. This information to be provided shall include the name of the obligor, unpaid principal balance of the Mortgage Loan, the property address of the Mortgaged Property, Seller's

account number, the ranking of the Mortgage and other information requested by Buyer.

"*Mortgage Note*"  means with respect to a Mortgage Loan, the promissory note or other evidence of the obligation to repay such Mortgage Loan.

"*Mortgaged Property*"  means the underlying real property securing a Mortgage Loan, including the attachments and all improvements described in the Mortgage or located on the Property.

"*Mortgagor*"  means any person who is indebted under the related Mortgage Note on a Mortgage Loan, or any Person who has assumed the Mortgage in accordance with its terms.

"*Purchase Commitment*"  means with respect to a Closing Date, the Purchase Commitments substantially in the form of Exhibit A attached hereto from Seller to Buyer under which Seller agrees to sell and Buyer agrees to purchase Mortgage Loans and/or Real Estate Owned assets pursuant to this Agreement that are identified on a Mortgage Loan Schedule attached to such Purchase Commitment.

"*Purchase Price*"  means the amount equal to the (i) Purchase Price Percentage multiplied by the unpaid principal balance of the Mortgage Loans as of the Cut-Off Date.

"*Purchase Price Percentage*"  means with respect to a Mortgage Loan, and as agreed to by Seller and Buyer, the price set forth in the related Purchase Commitment, expressed as a percentage, used to calculate the Purchase Price to be paid for such Mortgage Loan on the related Closing Date.

"*Real Estate Owned*" means property acquired by Seller before the Closing Date by foreclosure or other means that may have been Mortgaged Property, and is sold by Seller and purchased by Buyer pursuant to this Agreement, and is identified in the Mortgage Loan Schedule attached to the Purchase Commitment.

"*Successor Servicer*"  means the party designated by Buyer who has agreed to service the Mortgage Loans on behalf of the Buyer after the Servicing Transfer Date.

"*Servicing Loan File*"  means with respect to a Mortgage Loan, the file containing originals or copies of all Loan Documents, except for those Loan Documents included in the related Custodial Loan File.

"*Servicing Transfer Date*"  means with respect to the purchase of Mortgage Loans on a Closing Date, the date set forth in the related Purchase Commitment, not to exceed 30 days after the Closing Date, on which the servicing functions for such Mortgage Loans shall be transferred from Seller to the Buyer or its designated

Successor Servicer.

## ARTICLE II
## PURCHASE AND SALE OF THE MORTGAGE LOANS

**Section 2.1 Agreement to Sell and Purchase the Mortgage Loans.**
On February 28, 2007 (the "Final Closing Date"), Buyer will purchase the
Mortgage Loans identified in the Mortgage Loan Schedule attached to the related
Purchase Commitment . The Mortgage Loan Schedule will be agreed to by the parties
no later than February 27, 2007, and the Purchase Price Percentage shall be established
by the Buyer after conducting its review of the Mortgaged Property. The terms of the
related Purchase Commitment datedFebruary 28, 2007, will determine the Purchase
Price to be paid on the Final Closing Date.

The Mortgage Loan Schedule shall be agreed to by the parties and attached to
the Purchase Commitment.  The Purchase Price for the Mortgage Loans shall be
determined by the parties after their review of the Mortgaged Property.. In addition,
the Purchase Price will provide a credit for any liens, charges, expenses, costs due or
delinquent property taxes and other assessments accrued and owing with respect to the
Mortgage Loans and Real Estate Owned as of the Cut-Off Date.

If the Buyer has any Mortgage Loans included in the Initial Closing Date of
January 31, 2007, between the parties that have been submitted for repurchase
pursuant to the terms of that Master Mortgage Loan Purchase and Sale Agreement,
then the Purchase Price shall provide a credit for this amount. The list of Mortgage
Loans submitted for repurchase shall be submitted to Seller on February 27, 2007.

On the related Closing Date, Seller agrees to sell, transfer, assign and convey to
Buyer, without recourse, except as provided in this agreement, and Buyer agrees to
purchase, at the Purchase Price, all the right, title and interest of Seller in and to (i) the
Mortgage Loans set forth in the related Mortgage Loan Schedule, including the security
interests created by the related Mortgages, (ii) all payments on and collections from
such Mortgages Loan that are received after the applicable Cut-Off Date, (iii) all rights
and benefits of the mortgagee with respect to any title, flood and fire, hazard and
extended coverage insurance policies that insure the related Mortgaged Properties, (iv)
the related Loan Documents, including the Custodial Loan Files and Servicing Loan
Files, (v) all rights, benefits and responsibilities related to the servicing of the Mortgage
Loans, (vi) the Real Estate Owned set forth in the related Mortgage Loan Schedule,
including the property rights, and (vii) all proceeds in any way derived from any of the
foregoing, all upon the terms and conditions set forth herein.

All payments received by Seller for the Mortgage Loans after the Cut-Off Date shall belong to Buyer and the interest portion thereof shall be sent by Seller to Buyer within five (5) business days after the Servicing Transfer Date.

### Section 2.2 Interim Servicing and Transfer of Servicing.

(a)    *Servicing Released.*  On the related Closing Date, Seller shall sell and convey the Mortgage Loans to Buyer on a whole loan basis with servicing released to Buyer.

(b)    *Collection of Mortgage Payments.*  Seller agrees to Service the Mortgage Loans after the related Closing Date until the Servicing Transfer Date. Seller agrees to service the loans sold to Buyer in the manner which is consistent with the terms of the agreement and applicable law. Seller shall advise Buyer of any action necessary to enforce the Buyer's rights in the Mortgage Loans. Within ten (10) days after the Servicing Transfer Date, Seller shall deliver a report reflecting all collections of interest and principal received by Seller on account of the Mortgage Loans during the Interim Servicing Period. All of the amounts collected or received during the Interim Servicing Period shall be held for the benefit of the Buyer and Seller shall distribute funds collected or received during such period to Buyer. As of the Servicing Transfer Date the collection and receipt of all proceeds, interest and principal due on the Mortgage Loans and actual performance of servicing shall pass to the Buyer, and Seller shall be discharged from all duties and obligations arising from such servicing. If the Seller receives any proceeds or payments for the Mortgage Loans after the Servicing Transfer Date, the Seller shall hold the same in trust for the Buyer to be distributed within five (5) business days to Buyer.

(c)    *Escrow Accounts; Payment of Taxes and Insurance.*  Through the Servicing Transfer Date, with respect to Mortgage Loans that have a positive escrow balance, Seller shall pay property taxes, hazard insurance premiums and other assessments that are due and payable, and will become delinquent on or before the related Servicing Transfer Date, in accordance with servicing practices of prudent mortgage lending institutions and applicable law, and all collected and undisbursed escrow balance amounts relating to the Mortgage Loans shall be administered by Seller. If Real Estate Owned is included, Seller shall be responsible for all property taxes, liens or assessments against the property that are due and payable, and will become delinquent as of the Cut-Off Date.   Taxes, insurance, water charges and other assessments paid by Seller on or before the related Cut-off Date for periods that extend beyond the Cut-off Date shall be prorated and adjusted as of the Cut-off Date and reconciled on the Servicing Transfer Date, and Buyer agrees to promptly reimburse Seller for such amounts within five (5) business days following receipt of an invoice relating to such items from Seller.  Notwithstanding anything to the contrary in this Agreement, Seller shall have no obligation to advance funds for the payment of property taxes, hazard insurance, water charges, ground rents or other assessments

during the Interim Servicing Period for any Mortgage Loan that has insufficient funds in the escrow account, is not escrowed or has a negative escrow account; and as of the Cut-off Date Seller shall, with respect to such Mortgage Loans, forward any billing statements for such items to Buyer for payment.    Seller or Servicer shall pay over and/or deliver escrow funds to Buyer on the Servicing Transfer Date.  Buyer shall have no obligation to reimburse Seller for negative escrow balances or negative suspense balances and shall be entitled to all positive escrow balances and positive suspense balances as of the Servicing Transfer Date.  Seller shall not offset the negative escrow balances against the positive escrow balances.

Except as otherwise provided in this Agreement, Seller shall service the property taxes, hazard insurance premiums, water charges, assessments and ground rents which shall be paid pursuant to the terms set forth in Section 2.2(c). As of the Closing Date, Seller shall forward to the Buyer all statements and invoices for fees, costs and expenses relating to the Mortgage Loans or Real Estate Owned accruing after the related Cut-off Date, including but not limited to fees, costs and expenses for foreclosure actions, eviction actions, broker fees, marketing costs and property maintenance.

(d)    **Servicing Transfer.**    Buyer    shall    provide    the    information reasonably requested by Seller to facilitate the transfer of servicing to Buyer or the Successor Servicer, including the name, address and contact information for the Successor Servicer sufficient for Seller to send a "goodbye letter" to each borrower and to notify vendors of the transfer of servicing to the Successor Servicer.

**Section 2.3 Expenses.**    Seller shall be responsible for all liens, charges, expenses, costs, due or delinquent property taxes and other assessments accrued and owing with respect to the Mortgage Loans and Real Estate Owned as of the Cut-Off Date. Buyer shall verify these amounts due and provide the information to Seller.  The amounts due shall be paid by Seller or deducted from the Purchase Price paid by Buyer for the Mortgage Loans and Real Estate Owned on the Final Closing Date.

## ARTICLE III
## REPRESENTATIONS, WARRANTIES AND COVENANTS

**Section 3.1 Representations, Warranties and Covenants.**    As of the Closing Date and as an inducement to purchase and sell the Mortgage Loans and the Real Estate Owned assets on such Closing Date, Seller and Buyer represent, warrant and covenant to the other that:

Seller is a corporation duly organized, validly existing and in good standing under the Laws of the State of California.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Alaska.  Both parties

are duly qualified and in good standing to transact business, and possesses all requisite authority, power, licenses, permits and franchises to execute, deliver and comply with its obligations under this Agreement. The execution, delivery and the consummation of the transactions contemplated by this Agreement have been duly authorized by all necessary corporate action, and do not require the consent of or approval of any other agency, person or entity.

**Section 3.2. Representations, Warranties and Covenants Relating to Mortgage Loans.** As of the Closing Date and with respect to the Mortgage Loans being purchased by Buyer on such Closing Date, Seller makes to Buyer the representations, warranties and covenants with respect to each such Mortgage Loan, as set forth in <u>Exhibit B</u> attached hereto and incorporated herein by reference.

## Section 3.3 Remedies for Breach of Representations and Warranties.

The representations and warranties set forth in this Section 3 shall survive the sale of the Mortgage Loans to Buyer and shall inure to the benefit of Buyer for a period of one (1) year after the related Closing Date, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage File. Buyer shall give prompt written notice to Seller of a breach of any of the foregoing representations and warranties by Seller, and in no event shall Buyer provide such notice more than 60 days after Buyer's discovery or notice of a breach.

(a)  **Cure of Defective Mortgage Loans.** For a period of one year following the Closing Date related to the purchase of such Mortgage Loan, if there is a Defect with any representation, warranty or covenant of Seller set forth in this Agreement with respect to a Mortgage Loan as of the date made, then Seller shall cure such Defect within a period of sixty (60) days from the time it discovers or receives notice from Buyer of the existence of such Defect or such shorter period as may be required by Law or this Agreement.

(b)  **Repurchase of Defective Mortgage Loans.** If any Defect cannot be cured pursuant to Section 3.3(a) hereof within the sixty (60) day period provided therein or such shorter period as applicable, then within thirty (30) days after the expiration of such cure period Seller shall repurchase the related Mortgage Loan from Buyer at a price equal to (A) the unpaid principal balance of such Mortgage Loan, multiplied by (B) the applicable Purchase Price Percentage. The repurchase proceeds for a Mortgage Loan repurchased pursuant to this Section shall be remitted by Seller on the date of repurchase as instructed by Buyer, with notice to Buyer of the amount of such remittance and the Mortgage Loan concerned.

(c)     **Reconveyance of Repurchased Mortgage Loans.**  At the time of repurchase of any Mortgage Loan, Buyer shall immediately (i) reassign the repurchased Mortgage Loan to the Seller by delivering an executed Assignment of Mortgage "in blank" in recordable form or, with respect to repurchased Real Estate Owned assets, deliver a deed conveying the property from Buyer to Seller and (ii) deliver to the Seller all of the documents held by Buyer or the Successor Servicer on account of the Mortgage Loan or Real Estate Owned asset, as applicable, including all servicing records.  Furthermore, as of the repurchase date, Buyer shall make the representations and warranties set forth in items (3)-(6), (9) and (12) of Exhibit B to Seller, and in the event any such representation or warranty is defective, Seller shall have no obligation to repurchase the affected Mortgage Loan notwithstanding anything to the contrary herein.

**Section 3.4     Representations Relating to Real Estate Owned.**  Buyer and Seller to this *Agreement* acknowledge that this sale may include certain accounts that are Real Estate Owned as of the Closing Date.  Seller represents, warrants and covenants to Buyer that the title to the Real Estate Owned is held in its name free and clear of all liens, except for permitted encumbrances, including but not limited to the lien of real property taxes not yet due and payable.  Seller shall transfer title to Buyer that is clear and merchantable, without defect or qualification.  Seller warrants that all property taxes, liens or other assessments against the Real Estate Owned that are due and payable, and will become delinquent on or before the Cut-off Date have been paid.  Buyer may, at its option, pay the amount due for property taxes that were delinquent as of the Cut-off Date and recover the amount from Seller upon providing the tax bill or other proof of taxes as issued by the tax authority.

If the title to the Real Estate Owned is not merchantable or in the event the title is not free and clear of any encumbrances, liens, assessments or other interests, except as permitted herein, and cannot be made so within the sixty (60) days following written notice from Buyer to Seller, then Seller agrees to repurchase this account represented by the real estate owned at the original purchase price.

**Section 3.5 Indemnification.**      In addition to any cure or repurchase obligations set forth in this Section, Seller shall defend, indemnify and hold harmless Buyer from and against any and all damages, losses, liabilities, penalties, fines, forfeitures, claims, causes of action, judgments, costs and expenses (including reasonable attorney's fees) resulting from (i) the breach of any representation and warranty made herein, or (ii) negligent acts or omissions of Seller, or (iii) any Defect in the Mortgage Loans that may be alleged by the Mortgagor or third party.

## ARTICLE IV
## CLOSING OF PURCHASE OF MORTGAGE LOANS

**Section 4.1 Payment.**   On the related Closing Date, and in consideration for the sale of the Mortgage Loans and Real Estate Owned as identified in the related Mortgage Loan Schedule attached to the Purchase Commitment on such Closing Date, Buyer shall pay to Seller the amount of the Purchase Price with respect to the Mortgage Loans and Real Estate Owned being sold on such Closing Date less the credits as provided herein by wire transfer of immediately available funds to the bank account that is designated by Seller in writing.   The Purchase Price shall be reduced by the amounts applied as credits for taxes and repurchases.   The payment of such Net Proceeds by Buyer shall be subject to the satisfaction of all of the conditions precedent set forth in this Agreement.

### Section 4.2 Assignment and Delivery of Loan Documents.

(a)   ***Custodial Loan File.***   On or before the related Closing Date, Seller shall deliver to the Custodian, the following documents with respect to each Mortgage Loan sold to Buyer on such Closing Date; or with respect to Real Estate Owned assets, a Deed, which documents shall be released by Seller and held in trust by the Custodian for the Buyer's benefit following Seller's receipt of the Purchase Price:

> (i)    The original Mortgage Note, endorsed **"Pay to the order of _____"** and signed, by facsimile or manual signature, in the name of Seller by an authorized agent of Seller, or Lost Note Affidavit with an allonge, with all prior and intervening endorsements showing a complete chain of endorsement from the originator to Seller, if Seller was not the originator;

> (ii)   Either: (A) the original Mortgage, with evidence of recording thereon, (B) a copy of the Mortgage certified as a true copy by the Seller, the title company or closing agent/attorney if the original has been transmitted for recording, until such time as the original is returned by the public recording office, or (C) a copy of the Mortgage certified by the public recording office in those instances where the original recorded Mortgage has been lost or retained by the public recording office;

> (iii)  An original Assignment of Mortgage from Seller to "blank" in recordable form (absent book and page references to the recorded Mortgage); and

> (iv)   If applicable, either: (A) originals of all recorded intervening assignments, if any, showing the ultimate transfer of title from the

originator to Seller, with evidence of recording thereon, (B) copies of any recorded assignments certified as true copies by an authorized agent of Seller, if the originals have been submitted for recording until such time as the originals are returned by the public recording officer, or (C) copies of any recorded assignments certified by the public recording office in any instances where the original recorded assignments have been lost or retained by the public recording office.

(v)     If Real Estate Owned, the origin or a recorded copy of the Deed or conveyance document showing the Property to be held in the name of Seller; and

(vi)    If Real Estate Owned, the original Deed from Seller to Buyer in recordable form.

(b)     ***Servicing Loan File.***  On the Servicing Transfer Date, Seller shall deliver all Loan Documents (other than the Custodial Loan File) with respect to the related Mortgage Loans to Buyer in electronic format.  In the event Buyer requests physical copies of the Loan Documents, Buyer shall pay the shipping costs incurred by Seller for delivery of said documents.

(c)     With respect to the Mortgage Loans, if the Seller fails to deliver any of the Custodian Loan File, Servicing Loan File or Loan Documents as provided in this Section, the Seller shall repurchase the related Mortgage Loan in accordance with Section 3.3.

(d)     Buyer shall promptly record each Assignment of Mortgage and Deed, with respect to each Real Estate Owned after the related Closing Date to evidence the transfer of ownership of each Mortgage Loan or Real Estate Owned (as applicable) from Seller to Buyer.  In the event Buyer fails to record such Assignment of Mortgage or conveyance deed, as applicable, as required herein, Buyer shall indemnify and promptly reimburse Seller for any and all costs, fees and expenses incurred by Seller as a result thereof (including attorneys fees).

**Section 4.3 Additional Conditions to Closing.**  With respect to the related Closing Date, Buyer's obligation to consummate the purchase of the Mortgage Loans and Real Estate Owned that are being sold on such Closing Date pursuant to this Agreement shall be subject to the satisfaction of the following conditions:

(i)     The related Purchase Commitment shall have been entered into between Seller and Buyer; and

(ii)    Seller shall provide to Buyer the Mortgage Loan Schedule agreed to by the parties.

**Section 4.4 Preparation of Forms 1098 and 1099.**    Seller shall prepare and distribute to each Mortgagor, in the name of Seller, forms relating to interest paid by the Mortgagor on the related Mortgage Loan and, to the extent that moneys are paid to such Mortgagor, forms relating to interest paid to the Mortgagor, and shall report the same to the Internal Revenue Service with respect to the periods prior to and including the Servicing Transfer Date.    Buyer will prepare and distribute to each Mortgagor, in the name of Buyer, forms relating to interest paid by or to such Mortgagor on the related Mortgage Loan and shall report the same to the Internal Revenue Service with respect to the periods after the Servicing Transfer Date.

## ARTICLE V
## MISCELLANEOUS PROVISIONS

**Section 5.1 Governing Law.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAWS RULES OR PRINCIPLES.**

**Section 5.2 Assignment.**  Seller acknowledges that after the related Closing Date Buyer may transfer any Mortgage Loan or Real Estate Owned at any time.  All of the terms of this Agreement shall be binding upon and inure to the benefit of Buyer and Seller and their respective successors and assigns.

**Section 5.3 Mortgage Electronic Registration System.**    Where the Mortgaged Loans purchased by the Buyer are (i) registered in the Mortgage Electronic Registration System ("MERS"), or (ii) the Buyer notifies Seller that certain Mortgage Loans will be registered on the MERS, then the Seller shall provide the required loan transfer information to the appropriate agent as designated by the Buyer prior to the Closing Date.

**Section 5.4 Notices.**    All notices, requests and other communications hereunder shall be in writing and be deemed to have been given when sent and received by fax transmission (if receipt by the named recipient is confirmed by telephone or if a copy is delivered by overnight courier service the next day) or by overnight courier service (all fees prepaid) to the appropriate Notice Address.  Buyer or Seller may designate, by notice given hereunder, any further or different address to which subsequent notices, certificates and other communications shall be sent.

**Section 5.5 Integrated Agreement.**  The related Purchase Commitment and this Agreement and the documents, instruments and agreements executed and delivered pursuant to this Agreement, constitute the entire agreement between the

parties with respect to the purchase and sale of a pool of Mortgage Loans and/or Real Estate Owned assets, and supersede all prior letters or agreements with respect thereto.   In the event of a conflict between the terms set forth in a Purchase Commitment and the terms set forth in this Agreement, the terms of the Purchase Commitment shall control the purchase and sale of the applicable Mortgage Loans and Real Estate Owned assets set forth on the Mortgage Loan Schedule attached to the related Purchase Commitment.

**Section 5.6 Counterparts.**  This Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

### Section 5.7 Confidentiality

Each party understands that information that has been furnished and shall be furnished in connection with the transactions contemplated under this Agreement is confidential and proprietary, and each party agrees that, with respect to such information and any information required by applicable law (including, without limitation, the Gramm Leach Bliley Act, as amended, and the regulations promulgated thereunder) to be kept confidential, such party shall maintain the confidentiality of such information and shall not, without the written consent of the party furnishing such information, (i) disclose it to third parties, or (ii) use it except in connection with the transactions contemplated by this Agreement or as permitted by applicable law, provided, however, that any disclosure made to the employees of the receiving party shall be made on a need to know basis to allow them to perform under this Agreement after informing such employees of the confidential nature of the information and the requirements for confidentiality under this Agreement.   The parties agree that the following items, without limitation, shall be deemed confidential for purposes of this Section 5.8: (a) each completed Purchase Price Commitment/Settlement, (b) the terms of this Agreement, and (c) any financial statements, whether audited or unaudited, that are not publicly available.   The parties agree that the following items shall not be deemed confidential for purposes of this Section 5.7, unless otherwise required by applicable law: (i) information generally known in the industry concerning a party, (ii) information disclosed on a non-confidential basis to the receiving party by a third party, and (iii) information that is required to be disclosed by law, or regulatory or judicial process.

Section 5.8   Termination

The representations, warranties, indemnities, covenants and agreements of the parties provided in this Agreement and the parties' obligations hereunder shall survive the execution, delivery, termination or expiration of this Agreement.

IN WITNESS WHEREOF, each of the undersigned parties has caused to be duly executed in its name by its duly authorized officer this MORTGAGE LOAN PURCHASE AND SALE AGREEMENT.

**NC CAPITAL CORPORATION, as Seller**

By: _____

Name: _____Warren Licata_____
Title: ___Senior Vice President___
Address:    18400  Von  Karman,  Suite 1000
            Irvine, CA 92612
Attention:  Kevin Cloyd
Phone: (949) 440-7030
Fax: (949) 440-7033
Email:    kcloyd@ncen.com


**ALASKA SEABOARD PARTNERS LIMITED PARTNERSHIP, as Buyer**

By: _____
Name: ___William A. Fogleman___

Title: ___Agent_____

Address: 4150 S. Sherwood Forest Blvd.
         Baton Rouge, LA 70816
Attention: William A. Fogleman
Phone: (225) 293-0095
Fax: (916) 231-2500
Email: bfoglema@snsc.com

EXHIBIT A

**Purchase Commitment**

**ALASKA SEABOARD PARTNERS LIMITED PARTNERSHIP**
4150 S. Sherwood Forest Blvd.
Baton Rouge,, LA 70816
Attention: William A. Fogleman
Fax: (916) 231-2500

Re:    ***Mortgage Loan Purchase and Sale Agreement dated as of
February 28, 2007 (the "Agreement") by and between NC Capital
Corporation, as Seller, and ALASKA SEABOARD PARTNERS LIMITED
PARTNERSHIP, as Buyer***

Buyer hereby confirms its agreement to purchase and Seller hereby confirms its
agreement to sell certain mortgage loans ("Mortgage Loans") and/or real estate owned
assets ("Real Estate Owned") described in the attached Mortgage Loan Schedule on a
servicing released basis, on the terms and conditions set forth below:

| | |
|---:|---|
| Closing Date: | February 28, 2007 |
| Servicing Transfer Date: | March 21, 2007 |
| Cut-Off Date: | February 21, 2007 |
| Mortgage Loans: | 322 |
| Outstanding Principal Balance of the Mortgage Loans and Real Estate Owned as of the Cut-Off Date: | $42,875,167.55 |
| Purchase Price Percentage: | 49.02% |
| Total Purchase Price: | $21,015,549.65 |
| Credit for Taxes and Repurchase: | -$2,673,228.92 |
| Net Proceeds after Credit for Taxes and Repurchase: | $18,342,320.73 |

Seller hereby agrees that the Mortgage Loans and the Real Estate Owned
described in the attached Mortgage Loan Schedule shall comply with the
representations, warranties and covenants set forth in the Agreement. On the Closing
Date and upon receipt by Seller or its agent of the aggregate Purchase Price for such
Mortgage Loans and Real Estate Owned by wire transfer of immediately available funds
to the bank account set forth above, Seller shall sell, transfer, assign and convey to

A - 1

Buyer all of the right, title and interest of Seller in and to such Mortgage Loans and Real Estate Owned, and Seller agrees to transfer and deliver to Buyer or its Custodian the Loan Documents for such Mortgage Loans and Real Estate Owned as required under the Agreement.

Subject to the terms of the Agreement, the parties hereto confirm the terms of the agreement of Seller to sell the Mortgage Loans and/or Real Estate Owned described in the attached Mortgage Loan Schedule (i) by signing this original and two duplicate originals of this Purchase Commitment, with any changes to the above terms that Buyer and Seller shall mutually agree upon and as so indicated below or otherwise in writing attached hereto, and (ii) by delivering by fax a copy of an executed original hereof, with confirmation sent by the delivery of two duplicate originals by overnight courier to the undersigned.

**This Purchase Commitment shall be deemed in effect when a fully executed counterpart thereof is received by the Buyer and shall be deemed to have been made in the State of California. The Purchase Commitment shall be construed in accordance with the substantive laws of the State of California without regard to conflicts of law principles.**

IN WITNESS WHEREOF, the undersigned, as a duly authorized officer and on behalf of Seller, has executed this PURCHASE COMMITMENT/SETTLEMENT.

Seller:

**NC CAPITAL CORPORATION**

By: _____
Name:      Warren Lienta
Title:       Senior Vice President


Receipt and affirmation of this agreement is
hereby acknowledged:

**ALASKA SEABOARD PARTNERS LIMITED PARTNERSHIP**

By:_____
Name:
Title:
Date: February 28, 2007

A - 2

A - 3

EXHIBIT B

## Mortgage Loan Representations and Warranties

Reference is hereby made to the Mortgage Loan Purchase and Sale Agreement dated as of **February 28, 2007** (the "Agreement") between **NC Capital Corporation,** as Seller, and **ALASKA SEABOARD PARTNERS LIMITED PARTNERSHIP**, as Buyer.   With respect to each Mortgage Loan sold under the Agreement, Seller represents and warrants to the Buyer, as of the related Closing Date for the Mortgage Loan, that:

(1)    The information pertaining to each Mortgage Loan set forth in the Mortgage Loan Schedule was true and correct in all material respects as of the Cut-Off Date.

(2)    There was no fraud or material misrepresentation committed in connection with the origination of such Mortgage Loan.

(3)    Immediately prior to the sale, transfer and assignment to Buyer, Seller will have good and indefeasible legal title to the Mortgage Loan, including the related Mortgage Note and Mortgage.  Seller has the full right, power and authority to transfer such Mortgage Loan, including related Mortgage Note and related Mortgage, and at the time of the transfer Seller will be the sole owner thereof, subject to no liens, pledges, charges, mortgages, encumbrances or rights of others.

(4)    Except as otherwise disclosed by Seller to Buyer, the Mortgage has not been modified, satisfied, canceled, subordinated, or rescinded, in whole or in part, and the Mortgaged property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would result in any such modification, release, cancellation, subordination or recession.

(5)    The terms of the Note and the related Mortgage have not been impaired, waived, altered or modified in any material respect, except by written instruments which have been provided to Buyer.

(6)    The Mortgage is a valid, existing and enforceable lien on the Mortgaged Property, including all improvements on the Mortgaged Property, having the priority indicated in the Mortgage Loan Schedule.

(7)    The Mortgage Note is genuine and is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms.

(8)    The related Mortgage Note or Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including realization by judicial or,

B - 1

if applicable, non-judicial foreclosure, and there is no homestead or other exemption available to the Mortgagor which would interfere with such right to foreclose.

(9)     The Mortgaged Property is held in the name of the Mortgagor and has not been transferred, sold or assigned to another party. The Mortgagor has title to, and is the sole owner, of the Mortgaged Property and it has not been sold for delinquent taxes, charges or assessments.  Seller shall pay any sums required to redeem or satisfy such assessments against the property.

(10)    Seller has no actual knowledge that any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, the Federal Truth-In-Lending Act, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have not been complied with in all material respects by Seller in its origination, servicing and collection practices.  None of the Mortgage Loans are in violation of any predatory or abusive lending laws.

(11)    To the best of the Seller's knowledge there are no actions, suits or proceedings pending or threatened pertaining to the Mortgaged Property or the Mortgage Loan before any Court or governmental department, commission, board, bureau, agency or instrumentality which, if determined adversely would have a material adverse effect on the value of the Mortgage Loan or Mortgaged Property.

(12)    To the Seller's knowledge, none of the Mortgage Loans are (a) Mortgage Loans subject to 12 CFR Part 226.31, 12 CFR Part 226.32 or 226.34 of Regulation Z, the regulation implementing TILA, or (b) subject to the requirements of the Home Ownership and Equity Protection Act of 1994, as amended, or (c) classified and/or defined, as a "high cost", "threshold", "predatory" "high risk home loan" or "covered" loan (or a similarly classified loan using different terminology under a law imposing additional legal liability for mortgage loans having high interest rates, points and or/fees) under any other applicable state, federal or local law including, but not limited to, the District of Columbia and the States of Georgia, New York, North Carolina, Arkansas, Maine, Nevada, Florida, Kentucky or New Mexico or (d) defined as a "High Cost Home Loan" or "Covered Home Loan" in any federal, state or local act that would cause the mortgage Loan to be subject to its provisions.

(13)    To Seller's knowledge, without making special inquiry or investigation, each Mortgaged Property and Real Estate Owned asset is in material compliance with all applicable environmental laws and there exists no violation thereof giving rise to a governmental mandate to the mortgagee, with respect to Mortgage Loans, or to the Buyer, with respect to Real

B - 2

Estate Owned assets, to remediate said violation at the mortgagee's or Buyer's, as applicable, cost and expense.