IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Case No. 07-10416 (KJC) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objection Deadline: April 30, 2007 @ 4:00 p.m. |
| | : | Hearing Date: May 7, 2007 @ 10:00 a.m. |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER AUTHORIZING THE RETENTION OF PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS PURSUANT TO SECTIONS 327 AND 328 OF THE BANKRUPTCY CODE

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby request the entry of an order authorizing the Debtors to retain professionals utilized in the ordinary course of business pursuant to sections 327 and 328 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

## **GENERAL BACKGROUND**

1.  New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

2.  On February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding

NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

3. On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP, NCF's independent auditors, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

4. These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

5. As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

6.      Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained by their being required to provide necessary loan servicing advances from their own working capital.

7.      During the weeks leading up to the Petition Date (as defined below), the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co. LLC ("Lazard"), sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

8.      The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors have commenced these chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

9.      Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, Debtors were successful in obtaining debtor in possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

10.     On April 2, 2007 (the "Petition Date"), the Debtors filed the instant

petitions for relief. The Court has entered an order authorizing the joint administration of the Debtors' chapter 11 cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

## SPECIFIC BACKGROUND

11. The Debtors are involved in hundreds of foreclosure-related proceedings around the country relating to mortgage loans that the Debtors have either (i) originated but have yet to sell in the secondary mortgage market through whole loan sales or in the form of securitizations or (ii) repurchased pursuant to their obligations under purchase agreements. The Debtors, in the ordinary course of their business, retain attorneys and various other professionals to represent them in connection with these foreclosure proceedings (collectively, the "Foreclosure Professionals").[2] In addition the Foreclosure Professionals, in the day-to-day performance of their duties, the Debtors regularly call upon certain professionals, including attorneys, accountants, and other professionals to assist them in carrying out their assigned responsibilities. A non-exhaustive list of these professionals (including the Foreclosure Professionals) is attached hereto as Exhibit A (collectively, the "Ordinary Course Professionals").

12. The Debtors seek to continue the employment of such Ordinary Course Professionals postpetition without the necessity of filing formal applications for employment and

---

[2] The Debtors also provide loan servicing activities designed and implemented to ensure that the borrowers repay each loan in a mortgage servicing portfolio in accordance with its terms. These servicing activities often include contacting delinquent borrowers and supervising foreclosures and property dispositions in the event of unremedied defaults. Where the underlying mortgage loans are not owned by the Debtors, the Debtors are not parties to these foreclosure proceedings, but, in their capacity as servicer, often serve as an intermediary between the owners of the mortgage loans (typically a securitization trust) and their professionals through the advancement of fees and expenses that are ultimately reimbursed by the owners of the mortgage loans. As these professionals are not retained by the Debtors' estates, the Debtors submit that such professionals need not be retained by the Debtors and accordingly are not identified on Exhibit A as Ordinary Course Professionals. The Debtors have authority to continue making the necessary payments and advances to such professionals, in their capacity as servicer, pursuant to the first-day cash management order entered in these chapter 11 cases.

5

compensation by each professional pursuant to sections 327, 328, 329 and 330 of the Bankruptcy Code.[3] To request each Ordinary Course Professional to apply separately for approval of their employment and compensation would be unwieldy and burdensome on both the Debtors and this Court. The Debtors also submit that the uninterrupted service of the Ordinary Course Professionals is vital to the Debtors' continuing operations and their ability to move forward with the chapter 11 cases.

## RELIEF REQUESTED

13. By this Motion, the Debtors seek the entry of an order, pursuant to sections 327 and 328 of the Bankruptcy Code, authorizing the Debtors to retain, employ and pay the Ordinary Course Professionals, without further order of the Court, in accordance with the procedures set forth below.

14. The Debtors propose that no law firm that is an Ordinary Course Professional will receive payment for postpetition services rendered until such firm files an affidavit with the Court, pursuant to section 327(e) of the Bankruptcy Code, setting forth that such Ordinary Course Professional does not represent or hold any interest adverse to the Debtors or their estates with respect to matters for which the firm seeks retention (the "Retention Affidavit").

15. The Debtors propose that all Retention Affidavits be served, by first-class mail, on the following parties (collectively, the "Notice Parties"): (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' proposed

---

[3] Nothing in this Motion shall affect or alter the Debtors' obligations under the stipulation between the Debtors and the the State of Ohio, ex rel. Marc Dann and the Ohio Attorney General relating to any delinquency, foreclosure proceedings or evictions in the State of Ohio

6

post-petition senior secured lenders; (3) counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"); and (4) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

16. The Debtors also seek to reserve the right to employ Ordinary Course Professionals in addition to those listed on the attached Exhibit A by serving a notice of such employment upon the Notice Parties. This notice shall identify a proposed Monthly Cap (as defined herein) for the respective professional and include the Retention Affidavit. The Notice Parties shall have 10 days in which to serve an objection to such employment on the Debtors' counsel. If none of the Notice Parties object to the employment of the Ordinary Course Professional, such employment is authorized in accordance with the order approving this Motion, without the need for a further order of the Court. If an objection is served, the parties shall attempt to resolve their differences or submit the proposed employment to the Court for consideration.

17. The Debtors propose the following procedures for the retention and payment of the Ordinary Course Professionals:

    a. The Debtors shall be authorized to pay, without formal application to the Court by any Ordinary Course Professional, one hundred percent (100%) of the interim fees and disbursements to each of the Ordinary Course Professionals, after submission to the Debtors of a Retention Affidavit, and upon the submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date, provided that such interim fees, excluding costs, do not exceed the amounts identified on Exhibit A under the column titled "Monthly Cap" per month (the "Monthly Cap").[4]

---

[4] The Monthly Caps shall only apply to fees incurred by the Ordinary Course Professionals on behalf of the Debtors and their estates. Accordingly, the Monthly Caps shall not limit the amounts of any advances or payments made by the Debtors solely in their capacity as servicer of any mortgage loans or mortgage loan portfolios not owned by the Debtors. See infra fn. 2.

7

b.  In the event that any professional's disbursements exceed the Monthly Cap, then the payments to such professional for such excess amounts shall be subject to the approval of the Court in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Fee Guidelines promulgated by the Executive Office of the United States Trustee and any order entered by the Court governing the payment of compensation and reimbursement of expenses in these chapter 11 cases. The Debtors propose to reserve their rights, or the rights of any other party with standing, to seek a further order of this Court increasing or decreasing the Monthly Cap prospectively.

c.  Every 90 days (commencing on the first day of the month following the 90th day after the entry of an order approving the relief requested herein), the Debtors shall file with the Court and serve on the Notice Parties a statement with the Court certifying the Debtors' compliance with the terms of the relief requested herein, which statement shall include the following information: (i) the name of each Ordinary Course Professional and the aggregate amount paid as compensation for services rendered and as reimbursement of expenses incurred by each Ordinary Course Professional during the preceding 90 days, and (ii) a list of any additional Ordinary Course Professionals that are retained or utilized after the Petition Date and who are not listed on Exhibit A hereto (the "Quarterly Statement"). The Debtors propose that each Quarterly Statement be served, by first-class mail, on the Notice Parties.

18. The Debtors reserve the right to supplement the list of Ordinary Course Professionals from time to time, as necessary. In such event, the Debtors propose to file a supplemental list with this Court and serve it on the Notice Parties.

19. Unless otherwise stated in the relevant retention application, the proposed ordinary course retention and payment procedures set forth herein will not apply to those professionals for whom the Debtors have filed separate applications for approval of employment.

20. The proposed employment of the Ordinary Course Professionals and the payment of compensation on the bases set forth herein is in the best interests of the Debtors' estates and their creditors.

## BASIS FOR RELIEF REQUESTED

21. In connection with the normal operation of their business, the Debtors employ and compensate the Ordinary Course Professionals in a variety of discrete matters involving issues requiring legal, accounting and related professional representation. The Debtors believe that the failure to employ and compensate the Ordinary Course Professionals would have a material adverse impact on their ability to operate in the ordinary course of business. While some of the Ordinary Course Professionals may wish to continue to work for the Debtors, others may be unwilling or unable to do so if they are not paid on a regular basis.

22. The Ordinary Course Professionals provide an array of experience and knowledge to the Debtors in their respective areas of expertise; if any of the Ordinary Course Professionals cease providing services to the Debtors, the Debtors will incur additional and unnecessary expenses retaining professionals without the experience, background and expertise of the Ordinary Course Professionals employed prior to the Petition Date. It is in the best interests of the Debtors' estates and their creditors that the Debtors avoid any disruption in the professional services required by the day-to-day operation of their businesses.

23. The Ordinary Course Professionals will not be involved in the administration of these chapter 11 cases. Rather, they will provide services in connection with the Debtors' ongoing business operations or services ordinarily provided internally. As a result, the Debtors do not believe that all of the Ordinary Course Professionals are "professionals," as that term is used in section 327 of the Bankruptcy Code, whose retention must be approved by the Court.[5] Nevertheless, out of an abundance of caution, the Debtors seek the relief requested in

---

[5] See, e.g., Elstead v. Nolden (In re That's Entertainment Mkt'g Group, Inc.), 168 B.R. 226, 230 (N.D. Cal. 1994) (only the retention of professionals whose duties are central to the administration of the estate require prior court approval under section 327); In re Madison Management Group, Inc., 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992) (same); In re Sieling Assocs. Ltd. Partnership, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (same); In re

9

this Motion to avoid any subsequent controversy as to the Debtors' employment and payment of the Ordinary Course Professionals during the pendency of these chapter 11 cases. The Debtors shall seek specific Court authority under section 327 of the Bankruptcy Code to employ any other professional involved in the actual administration of these chapter 11 cases.

24. Moreover, it is necessary to have separate Monthly Caps for each of the Ordinary Course Professionals. The Debtors submit that the monthly fees for all but a handful of the Ordinary Course Professionals will not exceed $35,000.00. A few of the Ordinary Course Professionals require a higher Monthly Cap because of the nature of work that they do or their expected case load. A few of the Foreclosure Professionals either represent the Debtors on a national level or are the only Foreclosure Professional representing the Debtors in a particular state or jurisdiction. As such, the expected monthly billings of such professionals are higher simply because of the number of proceedings they are expected to handle. It would be wasteful, however, to require the Debtors to file separate applications for such professionals, as the services they will be providing are not unique to these chapter 11 cases and are part of the ordinary day-to-day operation of the Debtors' business. The Debtors also reserve their right to seek higher Monthly Caps for any additional Ordinary Course Professionals that they make seek to retain in accordance with the procedures proposed herein.

25. The Debtors and their estates would be well served by authorizing the

---

Riker Indus., Inc., 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (no need for section 327 approval of fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case"); In re D'Lites of Am., Inc., 108 B.R. 352, 353 (Bankr. N.D. Ga. 1989) (section 327 approval is not necessary for "one who provides services to debtor that are necessary regardless of whether petition was filed"); In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those professionals involved in the actual reorganization effort, rather than debtors' ongoing business, require approval under section 327); In re Pacific Forest Indust., Inc., 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989) (same); In re Babcock Dairy Co., 70 B.R. 691, 692 (Bankr. N.D. Ohio 1987) (holding that an expert witness was not a "professional person" under section 327 because his testimony did not measurably affect the administration of the estate); In re Johns-Manville Corp., 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327).

retention of the Ordinary Course Professionals because of such professionals' past relationships and experiences with the Debtors and their operations. It is in the best interest of all of the parties and the creditors to avoid any disruption in the professional services rendered by the Ordinary Course Professionals in the day-to-day operations of the Debtors' businesses.

## NOTICE

26. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich and CIT, the Debtors' proposed post-petition senior secured lenders; (3) counsel to the Creditors' Committee; and (4) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

27. The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

## NO PRIOR REQUEST

28. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit B, authorizing the Debtors to employ and compensate certain Ordinary Course Professionals on the terms and conditions set forth above and grant such other relief as the Court deems just and proper.

Dated: April 16, 2007
Wilmington, Delaware

Respectfully submitted,

*/s/ Christopher M. Samis*

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Austin K. Barron
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

12