UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, *et al.*,[1] | : | Case Number 07-10416 (KJC) Jointly Administered |
| Debtors. | : | |

**Hearing Date: To be determined**
**Objection Deadline: To be determined**

**MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, AN EXAMINER**

In support of her motion for an order directing the appointment of a chapter 11 trustee, or, in the alternative, an examiner, Kelly Beaudin Stapleton, United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a/ Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

## PRELIMINARY STATEMENT

There is cause for the appointment of a chapter 11 trustee in these cases. On February 7, 2007, New Century Financial Corporation ("New Century") disclosed accounting and financial statement irregularities in the operation of its business. New Century acknowledged that it must restate its March 31, June 30, and September 30, 2006 consolidated financial results to correct errors in its application of generally accepted accounting principles ("GAAP") and that there were "material weaknesses in its internal control over financial reporting for 2006." These misstatements concealed weaknesses in New Century's financial performance from New Century's creditors, its equity security holders, and the financial markets for many months. When these weaknesses finally came to light, New Century's ensuing collapse threatened to cause major losses to New Century's creditors and investors. The failure by current management of New Century to ensure accurate financial accounting and to institute adequate internal controls constitutes cause mandating the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1).[2]

In the event a chapter 11 trustee is not appointed, under 11 U.S.C. § 1104(c)(2) this Court must direct the appointment of an examiner to conduct an appropriate investigation of New Century because New Century has the requisite level and type of debt to warrant the appointment.

[2] The U.S. Trustee has been advised by New Century that the report of the internal investigation being performed on behalf of the audit committee will be forthcoming during the week of April 23, 2007. Because the results of that investigation might inform the determination of the issues raised by this motion, the U.S. Trustee will not seek an expedited hearing on this motion.

## INTRODUCTION

Under an applicable order of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a) and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this motion.

Under 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

In situations where there is "cause" to remove the debtor's management, the U.S. Trustee may seek appointment of a chapter 11 trustee. *See, e.g., In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 473 (3d Cir. 1998). Under 11 U.S.C. § 1104(a)(1), cause includes, but is not limited to, fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case.

## BACKGROUND

### A. The Debtors' Cases

On April 2, 2007, (the "Petition Date,"), New Century Financial Corporation and a group of affiliated entities filed the petitions which initiated the above-captioned cases. By order dated April 3, 2007, this Court directed that the cases be jointly administered under case number 07-10416.

**B. Statement of Facts**

New Century was founded in 1995 by Robert K. Cole, Brad A. Morrice, and Edward F. Gotschall, all of whom continue to serve as directors or officers of New Century. New Century is a real estate investment trust ("REIT") which, prior to the Petition Date, originated and purchased first mortgage loans through various subsidiaries and affiliates. It focused on lending to individuals whose borrowing needs are generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. New Century's primary market is generally referred to as the "sub-prime market." On June 26, 1997, New Century went public. Its shares were initially traded on the NASDAQ, and on October 1, 2004, its shares began trading on the New York Stock Exchange ("NYSE").

When New Century made a loan, it usually pledged the loan to one of a number of a major financial institutions that provide a "warehouse" for the loans until they could be repackaged and sold to hedge funds and institutional investors. Decl. of Monika L. McCarthy, Docket no. 2, filed April 2, 2007 ("McCarthy Decl.") at 3-4. Even after the loans were sold to investors, New Century could be forced to repurchase certain loans if borrowers default early on their payments or if New Century violates certain covenants, representations and warranties connected with the loans. McCarthy Decl. at 4. Losses resulting from these forced repurchases are called "loan repurchase losses." As is required by GAAP, New Century established reserve funds to protect itself from loan repurchase losses. McCarthy Decl. at 11.

On February 7, 2007, New Century announced that it would have to restate its reported financial results for the first three quarters of 2006 for violations of GAAP. Specifically, New Century admitted in its February 7, 2007 News Release that:

> The company establishes an allowance for repurchase losses on loans sold, which is a reserve for expenses and losses that may be incurred by the company due to the potential repurchase of loans resulting from early-payment defaults by the underlying borrowers or based on alleged violations of representations and warranties in connection with the sale of these loans. When the company repurchases loans, it adds the repurchased loans to its balance sheet as mortgage loans held for sale at their estimated fair values, and reduces the repurchase reserve by the amount the repurchase prices exceed the fair values. During the second and third quarters of 2006, the company's accounting policies incorrectly applied Statement of Financial Accounting Standards No. 140 – Accounting for Transfers and Servicing of Financial Assets and Extinguishment of Liabilities. Specifically, the company did not include the expected discount upon disposition of loans when estimating its allowance for loan repurchase losses.
>
> In addition, the company's methodology for estimating the volume of repurchase claims to be included in the repurchase reserve calculation did not properly consider, in each of the first three quarters of 2006, the growing volume of repurchase claims outstanding that resulted from the increasing pace of repurchase requests that occurred in 2006, compounded by the increasing length of time between the whole loan sales and the receipt and processing of the repurchase request.
>
> . . . .
>
> In light of the pending restatements, the company's previously filed condensed consolidated financial statements for the quarters ended March 31, June 30, and September 30, 2006 and all earnings-related press releases for those periods should no longer be relied upon. . . . The company . . . expects that the errors leading to these restatements constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006.

A copy of New Century's February 7 News Release is attached as Exhibit A.

On March 13, 2007, New Century announced that the NYSE had determined that its securities were "no longer suitable for continued listing on the NYSE and will be suspended immediately. The NYSE made this decision based upon New Century's recent filings with the

Securities and Exchange Commission (SEC) regarding the uncertainly of its current liquidity position." A copy of New Century's March 13 News Release is attached as Exhibit B.

Since New Century's February 7, 2007 News Release, at least 19 class action lawsuits have been filed against New Century and corporate officers and directors in federal court alleging violations of federal securities laws, and at least eight derivative lawsuits have been filed against New Century's corporate officers and directors in state and federal courts alleging breach of fiduciary duty and gross mismanagement, among other causes of action. McCarthy Decl. at 12-13. New Century has also acknowledged that it is under investigation by a federal grand jury and by the SEC. McCarthy Decl. at 13-14.

## GROUNDS FOR RELIEF

### A. Appointment of a trustee is required upon finding of cause.

11 U.S.C. § 1104(a)(1) provides:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. . . .

11 U.S.C. § 1104(a)(1).

Through section 1104(a)(1) of the Bankruptcy Code, Congress has mandated that a chapter 11 debtor-in-possession, who acts as a fiduciary of the bankrupt estate, be an honest broker. *See Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) (willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to

carry out the fiduciary responsibilities of a trustee"); *In re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) ("The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, [s]ection 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.") (cited with approval in *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)).

Section 1104(a)(1) allows the United States Trustee to move the Court, as it has done in the instant motion, for the appointment of a trustee.[3] If "current management" is found to have engaged in "fraud, dishonesty, incompetence, or gross mismanagement" due to acts or omissions which occurred prior to the Petition Date, this Court, pursuant to 1104(a)(1), must direct the appointment of a trustee. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence and gross mismanagement.").[4] Furthermore, pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995) (holding that even

---

3 11 U.S.C. § 1104(e) provides that the United States trustee "shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting."

4 A number of courts have indicated that grounds for the appointment of a trustee must be established by "clear and convincing" evidence. *See In re G-I Holdings, Inc.*, 385 F.3d 313 (3rd Cir. 2004). In light, however, of Supreme Court precedent and the recent addition of § 1104(e) to the Bankruptcy Code, the better view is that the appropriate burden of proof should be "preponderance of the evidence." *See Tradex Corp. v. Morse*, 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

though there was no evidence of a post petition breach of fiduciary duty, pre-petition conduct of debtor's management warranted appointment of a trustee under § 1104(a)(1)).

While it appears that some members of New Century's management may have changed roles in the last year, and that one or more directors have recently resigned, no doubt exists that the management team in control of New Century as of the filing of this motion was in control of Company at the time the accounting irregularities occurred.[5] According to New Century's website, six of New Century's eight current executive officers served throughout the first three calendar quarters of 2006. All nine current members of New Century's board of directors have served in that capacity since at least 2005. Among those directors are New Century's three founders. A chart identifying New Century's executive management and board of directors is attached as Exhibit C. These accounting irregularities therefore took place on the watch of "current management" as that phrase is used in § 1104(a)(1) of the Bankruptcy Code.

**B. New Century's disclosures alone are sufficient to require a trustee appointment.**

New Century's February 7 News Release revealed the following material facts:

- New Century had not complied with GAAP;

- New Century's methodology for estimating the volume of repurchase claims to be included in the repurchase reserve calculation was improper;

- New Century's three previously filed condensed consolidated financial statements, for the quarters ended March 31, June 30, and September 30, 2006 and every earnings-related press releases for those same periods should not be relied upon by the investing public; and

[5] Despite acknowledging filing erroneous financial statements, being under investigation by the federal grand jury and the SEC, and retaining essentially the same Board and executive leadership that was in charge when the erroneous financial reports were filed, New Century has recently proposed paying almost $3.5 million in bonuses to its top executives and asked the Court to approve those bonuses on an expedited basis.

• The errors leading to these restatements constituted material weaknesses in its internal controls over financial reporting for the year ended December 31, 2006.

At a minimum, New Century's disclosures that it had to "correct errors . . . in its application of generally accepted accounting principles regarding the company's allowance for loan repurchase losses" and that the errors leading to the restatements "constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006," clearly reflect that New Century's board of directors and executive officers failed properly to fulfill their fiduciary roles. The seriousness of the accounting irregularities can be judged by the precipitous decline of New Century's fortunes that followed the February 7 disclosure. New Century's counsel has publicly acknowledged that, as a result of the upcoming restatement of earnings, New Century will be entitled to a refund of the approximately $90 million in estimated federal taxes it paid for calendar year 2006. While the ultimate scope of the restatement remains closely guarded, it therefore seems likely that New Century will ultimately disclose that it made little or no money during calendar year 2006. McCarthy Decl. at 11.

Courts have found cause to order the appointment of a chapter 11 trustee where current management is responsible for a failure to "institute formal internal accounting controls and effective, responsible management practices." *In re State Capital Corp.*, 51 B.R. 400, 403 (Bankr. M.D. Fla. 1985); *In re New Orleans Paddlewheels, Inc.*, 350 B.R. 667, 679-680 (Bankr. E.D. La. 2006) (holding that the debtor's failure to properly maintain books and records, among other factors, warranted appointment of a trustee); *In re McCorhill Publ'g., Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987); ("when a debtor fails to maintain complete and accurate financial records, or fails to substantiate undocumented transactions, so that there appears to be a confusion in the debtor's accounting system, the courts have viewed these facts as gross mismanagement and have directed

the appointment of a Chapter 11 trustee"). Because New Century's admissions in the February 7 press release conclusively establish that current management of New Century has failed to fulfill its duties, this Court must direct the appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1).

**C. In the alternative, an examiner must be appointed to investigate New Century.**

If the Court concludes that cause does not exist for the appointment of a chapter 11 trustee, this Court must direct the appointment of an examiner to conduct a broad investigation of affairs of New Century. Under 11 U.S.C. § 1104(c)(2), if the court does not order the appointment of a trustee, the court is required to order the appointment of an examiner

> to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if --
>
> . . .
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)(2). New Century is liable on two unsecured junior subordinated notes due in 2036 – one for $51,545,000 to New Century Capital Trust I and another for $36,100,000 to New Century Capital Trust II. Because these debts clearly exceed the $5 million threshold of § 1104(c)(2), the appointment of an examiner under that section to investigate the affairs of New Century is mandatory. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*(6th Cir.1990); *In re Loral Space & Communications, Ltd.,* 2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004) (reversing 313 B.R. 577 (Bankr. S.D.N.Y 2004)); *In re UAL Corp.,* 307 B.R. 80 (Bankr. N.D. Ill. 2004); *In re Mechem Fin. of Ohio, Inc.*, 92 B.R. 760 (Bankr. N.D. Ohio 1988); *In re The Bible Speaks*, 74 B.R.

511 (Bankr. D. Mass.1987); *In re 1243 20th Street, Inc.*, 6 B.R. 683 (Bankr. D.C. 1980); *In re Lenihan*, 4 B.R. 209 (Bankr. D.R.I. 1980).

While an examiner in these cases should have a broad scope of examination pursuant to §§ 1106(b) and (a)(3), clearly one major topic of the examiner's investigation should be the accounting and financial statement irregularities described above. An examiner's report on those irregularities filed pursuant to § 1106(a)(4) will enable the Court and parties in interest to evaluate the genesis of those irregularities and to identify persons against whom the estate might have claims or rights of action.

**[Continued on next page – space intentionally left blank]**

**RESERVATION OF RIGHTS/CONCLUSION**

The U.S. Trustee reserves the right to amend or to supplement this motion.

The U.S. Trustee reserves the right to conduct discovery in connection with this motion.

WHEREFORE the U.S. Trustee requests that this Court issue an order directing the appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) or, in the alternative, directing the appointment of an examiner pursuant to 11 U.S.C. § 1104(c)(2).

Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**

**BY:** /s/ Joseph J. McMahon, Jr.

Joseph J. McMahon, Jr., Esquire (# 4819)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)

Date: April 17, 2007