# EXHIBIT A



**Property Management, Inc.**

August 25, 2005                    Sent Via Fax 713-895-3849

RBC Mortgage
Attn: Stephanie Loving
13100 Northwest Freeway, Suite 200
Houston, TX 77040

RE:    Assignment and Assumption of Lease
       7401 – 104th Avenue, Suite 160, Kenosha, WI 53142

Dear Ms. Loving:

While Mills Enterprises, LLC (the Landlord) agrees to the assignment to New Century, Home 123 Corporation (Assignee), we have stricken paragraph 7 – Consent of the Landlord. In accordance with the original lease under section 23 Assignment and Subletting, Landlord holds RBC Mortgage Company (Lessee) liable throughout the remaining term of the lease.

However, Landlord will fully release Lessee of all future obligations and look solely to the Assignee upon receipt of two (2) months rent in the amount of $26,092.54.

Please contact me if you have any questions at 262-697-9616.

Sincerely,

Leonard J. Browne
Controller

Enclosure

4015 - 80th Street  •  Kenosha, Wisconsin 53142  •  (262) 697-9616  •  Fax (262) 697-9856

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS AGREEMENT OF ASSIGNMENT AND ASSUMPTION OF LEASE (the "Agreement"), made and entered into as of this 8th day of July, 2005, by and between RBC Mortgage Company, an Illinois Corporation, having an address at 13100 Northwest Freeway, Suite 200, Houston, Texas 77040 (the "Assignor"), HOME123 Corporation, a California corporation, having an address at 18400 Von Karman Avenue, Suite 1000, Irvine, California 92612 (the "Assignee"), and Mills Enterprises, LLC, having an address at 4015 80th Street, Attn: Stephen Mills, Kenosha, WI  53142 (the "Landlord").

### RECITALS

WHEREAS Assignor is the tenant under a certain Lease Agreement, dated July 15, 2004, by and between Landlord and Assignor (the "Lease"), as amended or modified from time to time, with respect to the property located at 7401 104th Avenue, , Kenosha, WI (the "Property").

WHEREAS, Assignor and Assignee are parties to that certain Purchase and Assumption Agreement, dated May 27, 2005 (the "Purchase Agreement"), by and among RBC Holdco Corporation, Home123 Corporation ("Home123") and Assignee, pursuant to which Home123 and Assignee agreed to purchase certain assets of Assignor, including all of its right, title and interest in the Lease (the "Asset Purchase").

WHEREAS, in connection with the Asset Purchase (a) Assignor is required to assign, transfer and convey to Assignee all of Assignor's right, title and interest in, to and under the Lease, and (b) Assignee is required to accept such assignment, and to assume Assignor's obligations under the Lease from and after the Effective Date (as defined below).

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto covenant and agree as follows:

(1)    Effective Date.  This Agreement shall be effective as of the closing date of the Asset Purchase (the "Effective Date").

(2)    Assignment.  Assignor hereby assigns and transfers unto Assignee all of Assignor's right, title and interest in and to the Lease.

(3)    Assumption.  As of the Effective Date, Assignee hereby accepts the aforesaid assignment and transfer of the Lease, and agrees to be bound by the Lease, and to fully perform all of the covenants, stipulations, agreements and obligations of Assignor arising under the Lease from and after the Effective Date, with the same force and effect as if Assignee had originally executed the Lease as tenant.

(4)    <u>Ratification</u>.  Landlord, Assignor and Assignee hereby ratify the terms and provisions of the Lease and confirm that the same hereby is and shall remain in full force and effect and Landlord, Assignor, and Assignee agree that the terms and provisions of the Lease shall govern and control the obligations of the parties under such Lease unless such terms and provisions have been expressly modified by the terms of this Agreement.

(5)    <u>Acknowledgment</u>.  Assignor and Assignee acknowledge and agree that Landlord is neither subject to nor bound by the terms of any agreement made between Assignor and Assignee in connection with the Lease or the assignment or assumption thereof including, without limitation, the Purchase Agreement.

(6)    <u>Landlord Acknowledgment</u>.  Landlord agrees and acknowledges that, to the best of its knowledge, Assignor has performed all of its material obligations under the Lease, and Landlord has no knowledge of any event which after the giving of notice, the passage of time or both would constitute a default by Assignor under the Lease.  Landlord further acknowledges that it is in possession of a security deposit in the amount of $16,560.00, and agrees that after the Effective Date such security deposit shall remain in place for the benefit of Assignee in accordance with the terms and conditions of the Lease.

(7)    ~~Consent of the Landlord.  Notwithstanding anything to the contrary contained in the Lease or pursuant to applicable law, Landlord hereby unconditionally and irrevocably consents to this Agreement and releases and discharges Assignor from all claims, demands, damages, losses, costs and expenses of any kind whatsoever arising out of or in connection with the Lease to the extent assumed by Assignee hereunder.~~ 

(8)    <u>Binding Effect</u>.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns, and the obligations assumed by Assignee hereunder shall inure to the benefit of Landlord.

(9)    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State where the Property is located.

(10)    <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which so executed and delivered shall be an original; but all such counterparts shall together constitute only one and the same instrument.  Execution hereof may also be made by facsimile transmission.

*[Next page is a signature page]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date and year first above written.

Assignor:

RFC MORTGAGE COMPANY

By:
Name: Jonathan Threadgill
Title: President and CEO

Assignee:

HOME123 CORPORATION

By:
Name: Elise Luckham
Title: Vice President, Corporate Services

———The rest of this page is intentionally left blank———

NYI2532:367737.5

3

Landlord:

Mills Enterprises, LLC

By:

Name: _Stephe_ C. Mecis_

Title: _Member_

Assignment and Assumption of Lease accepted this 25th day of August 2005 subject to the deletion of paragraph 7 - Consent of the Landlord.

# Lease Commencement Agreement

**RBC Mortgage Company** ("Lessee"), by its duly authorized agent, pursuant to the terms and conditions of the **Cornerstone Commons II Lease** ("the Lease"), by and between Lessee and **Mills Enterprises, LLC** ("Lessor") dated July 15th, 2004, hereby agrees and acknowledges as follows:

1. That Lessee accepts delivery of the Premises described in the Lease from Lessor and later amended as Suite 160.

2. That the Lease is presently in full force and effect in accordance with its terms.

3. That all provisions of the Lease concerning completion of Lessor's work have been met and satisfied.

4. That any and all other prerequisites to the Lessee's occupancy have been met and satisfied.

5. That the commencement date of the lease term is November 15, 2004 and the lease expiration date is November 30, 2009.

IN WITNESS WHEREOF, the parties have caused this Lease Commencement Agreement to be executed effective the date last signed by a party hereto.

LESSOR:  Mills Enterprises, LLC

Dated: **12-7-04**    By: _____
                              Stephen C. Mills – Member

LESSEE:  RBC Mortgage Company

Dated: 12/2/04    By: _____
                            Jonathan B. Threadgill, President

Witness: _____

## AMENDMENT TO THE LEASE FOR CORNERSTONE COMMONS II

This Amendment is made by and between the undersigned Lessor and Lessee.

WHEREAS, Lessor and Lessee have heretofore entered into a lease agreement dated July 15, 2004, by the terms of which the Lessor leased to the Lessee a portion of the building located at 7401 104th Avenue, Suite 170, Kenosha, Wisconsin, which shall hereinafter be referred to as the "Premises"; and

WHEREAS, the parties desire to amend said Lease agreement as hereinafter set forth.

NOW, THEREFORE, in consideration hereof, the parties hereto agree as follows:

The suite number for the Premises is hereby changed to be **Suite 160**.

Ratification. Except as set forth herein, all other terms and conditions of the original Lease agreement between the parties hereto are ratified and shall remain in full force and effect
IN WITNESS WHEREOF, the parties have caused this Amendment to be executed effective the date last signed by party hereto.

LESSOR: MILLS ENTERPRISES, LLC

By: _____  1/33/04
Martha L. Mills Member        Date

LESSEE: RBC Mortgage Company

By: _____  11/10/04
Jonathan B. Threadgill, President    Date

CORNERSTONE COMMONS II
LEASE

In consideration of the mutual promises and covenants contained in this Lease, Lessor and Lessee agree as follows:

1.    <u>Fundamental Lease Provisions, Definitions and Exhibits.</u>

| | |
|---|---|
| "LESSOR": | Mills Enterprises, LLC |
| "LESSOR'S ADDRESS FOR NOTICE": | 4011 80th Street, Kenosha, WI 53142<br>Attention: Stephen Mills |
| "MANAGEMENT AGENT: | Bear Property Management, Inc.<br>4011 80th Street, Kenosha, WI 53142<br>Phone: (262)697-9616 |
| "LESSEE": | RBC Mortgage Company |
| "LESSEE'S ADDRESS" | RBC Mortgage Company<br>attn: President<br>13100 Northwest Freeway, Suite 200<br>Houston, Texas 77040 |
| With copy to: | RBC Mortgage Company<br>attn: Pam Hinz<br>222 Merchandise Mart Plaza, Suite 550<br>Chicago, Illinois 60654 |

Additional copy to be sent to subject premises:

| | |
|---|---|
| "BUILDING": | The Building located at 7401 104th Avenue, Kenosha, Wisconsin, known as Cornerstone Commons II. |
| "PROJECT": | Cornerstone Commons, a commercial center development in which the Building is located. |
| "PREMISES": | Suites _____170_____, 7401 104th Avenue Kenosha, WI 53142, as depicted on Exhibit A attached hereto consisting of 5,031 Rentable Square Feet. |

"LEASE TERM":          Five (5) years
"COMMENCEMENT
DATE":                 _____November 1_____, 2004

"TERMINATION DATE":    _____October 31_____, 2009

"LEASE YEAR":          The    twelve-month    period    beginning
                       _____November 1____ and ending ___October 31___

"PERMITTED USE":       Mortgage banking and loan offices

"BASE RENT":

| Lease Years | $ Per Rentable Sq. Ft. | Total Annual | Monthly Installment |
|---|---|---|---|
| 1 | $19.75 | $99,362.25 | $8,280.19 |
| 2 | $20.34 | $102,330.54 | $8,527.55 |
| 3 | $20.95 | $105,399.45 | ~~$7,783.29~~ $ 8,783.25 |
| 4 | $21.58 | $108,568.98 | $9,074.42 |
| 5 | $22.23 | $111,839.13 | $9,319.93 |

"ADDITIONAL
IMPROVEMENT RENT":     An amount equal to Lessor's costs of finishing
                       the build out of the Premises, including but not
                       limited to construction, architectural and
                       engineering costs, after the "white box"
                       improvements, to Lessee's specifications
                       amortized over a 5-year term at an interest rate
                       of 9% per annum.

"ADDITIONAL CAM
RENT":                 Approximately $2,171.72 per month (5,031 sq. ft.
                       x $5.18 ÷ 12) based on actual expense incurred.

"RENTABLE SQUARE
FEET":                 As to the Premises, the Building and the Project,
                       the respective measurements of floor area as may
                       from time to time be subject to lease by Lessee
                       and all lessees of the Project, as determined by
                       Lessor and applied on a consistent basis
                       throughout the Project.

"LESSEE"S
PERCENTAGE":           ____41.37____%, which is the percentage of
                       Rentable Square Feet in the Building represented
                       by the Premises.

"SECURITY DEPOSIT":    $_____16,560

"EXHIBITS":    The following exhibits are attached to this Lease and incorporated herein by reference:
Exhibit A - Plan of the Premises
Exhibit B - Rules and Regulations
Exhibit C - Lessor's Improvement Work

2.    <u>Lease of Premises</u>. Lessor hereby leases the Premises to Lessee, and Lessee hereby leases the Premises from Lessor, for the term and upon the conditions set forth in this Lease.

3.    <u>Condition of Premises</u>. Except for the Lessor's Improvement Work, if any, described in Exhibit C attached hereto, Lessee accepts the Building and Premises as is represented in the plans and specifications initialed by the parties at the time of execution hereof.

Lessor shall give Lessee notice when the Lessor's Improvement Work has been substantially completed. Lessee shall then have seven (7) days to inspect the Premises. If, as a result of such inspection, Lessee discovers minor exceptions or variations from Exhibit C of a nature commonly found on a "punch list" (as that term is used in the construction industry), Lessee shall notify Lessor of such exceptions in writing within such seven (7) day period. Lessor shall correct or remedy actual exceptions within a reasonable time. The existence of such punch list items shall not postpone the Commencement Date nor the obligation of Lessee to pay rent or other charges due under the Lease unless they of such a nature to interfere with Lessee's occupying the premises. Lessee's occupancy of the Premises shall be conclusive evidence that Lessee has accepted the Lessor's Improvement Work, subject to any punch list items.

Lessor shall use its best efforts to substantially complete any Lessor's Improvement Work on or before the Commencement Date set forth in section 1 of this Lease. If Lessor, through no fault of Lessee, has not substantially completed the Lessor's Improvement Work by the Commencement Date, the Commencement Date shall be postponed until such work is substantially completed. If Lessor, through no fault of Lessee, has not substantially completed the Lessor's Improvement Work within sixty (60) days after the Commencement Date set forth in section 1 of this Lease, Lessee may terminate this Lease by giving written notice to Lessor within five (5) days after the end of such 60-day period, whereupon this Lease shall terminate and Lessor shall return any amounts paid by Lessee under this Lease; provided, however, that Lessor's time for completing the Lessor's Improvement Work shall be extended for a time period equal to the duration of any delay caused by strike, labor dispute, or inability to obtain labor, materials, or equipment which is beyond the control of Lessor. Termination of this Lease shall be Lessee's sole remedy and Lessee shall have no other rights or claims hereunder at law or in equity. If the Lessor's Improvement Work is substantially completed and Lessee occupies the Premises prior to the scheduled Commencement Date, the Commencement Date shall be the date of occupancy.

3 .



In the event that Lessee fails to take possession of the Premises following execution of this Lease for any reason other than Lessor's failure to substantially complete the Lessor's Improvement Work, Lessee shall reimburse Lessor promptly upon demand for all costs incurred by Lessor in connection with entering into this Lease including, but not limited to, brokerage commissions, sums paid for the preparation of floor and/or space plans for the Premises, costs incurred in performing the Lessor's Improvement Work pursuant to Exhibit C, loss of rental income, attorney's fees and costs, and any other damage for breach of this Lease established by Lessor.

4.    <u>Common Areas</u>.  Lessee shall be entitled to the reasonable nonexclusive use of the parking areas, driveways, sidewalks and additional common areas serving the Project, all as they may from time to time exist, but such use shall be in common with Lessor and all others to whom Lessor has or may hereafter grant rights to use the same, and such use shall be subject to such rules and regulations ("Rules and Regulations") as Lessor may from time to time adopt governing the same.  Rules and Regulations now in force are attached hereto as Exhibit B and made a part hereof.  Lessor shall at all times have full control, management and direction of the common areas, and shall maintain and repair same.  Lessor reserves the right to reduce, increase, enclose, or otherwise change from time to time the configuration, size, number, location and nature of the common areas and facilities and the other tenancies in the Project, construct additional improvements,  and to place signs on the Building and the Project; except such shall not materially interfere with Lessee's access to or use of the premises.

5.    <u>Term of Lease/Option to Renew</u>.

5.1.    <u>Initial Term</u>.  The Lease Term shall commence on the Commencement Date and expire on midnight on the Termination Date unless sooner terminated as hereinafter provided.

5.2.    <u>Lessee Renewal Option</u>.  Lessee shall have the right, to be exercised as provided below, to extend or renew the term of this Lease for two (2) five (5) year terms on the following terms and conditions:

(1)    That no material monetary default is existing or continuing in the performance of any of the terms of this Lease; and

(2)    That each extended or renewal term shall be on the same terms, covenants and conditions as are provided in this Lease except (i) for adjustment of Base Rent as herein provided, (ii) that no Additional Improvement Rents shall be payable and (iii) that there shall be no privilege to extend or renew the term of this Lease for any period of time beyond the expiration of the second extended or renewal term.

5.3.    <u>Exercise Renewal Option</u>.  Lessee shall exercise its right to an extension or renewal in the following manner:

4

(1)     At least six (6) months prior to the expiration of the initial term (and at least six [6] months prior to the initial renewal term), Lessee shall notify Lessor in writing of its election to exercise the right to extend or renew the term of this Lease for the first (or a subsequent) extended or renewal term (as the case may be).

(2)     On the giving of such notice of election, this Lease, subject to the terms of this provision, shall be deemed to be extended or renewed and the term thereof extended or renewed for a period of five (5) years from the date of expiration of the initial term (or from the date of expiration of the initial extended or renewal term) during which such notice is given (as the case may be) without the execution of any further lease or instrument.

(3)     In the absence of a written agreement of the Lessor and Lessee to the contrary, the annual base rent for each year of the renewal or extended term shall be increased by three percent (3%) over the annual rent for the previous lease year.

6.     <u>Early Termination</u>.  Notwithstanding the provisions of this Lease as to the Lease Term, Lessee shall have the option to terminate this Lease at the end of the third Lease year (the "Early Termination Date") in the following manner:

(1)     At least six (6) months prior to the Early Termination Date, Lessee shall notify Lessor in writing of its election to exercise the right to terminate the term of this Lease at the end of the third Lease year.

(2)     On or prior to the Early Termination Date, Lessee shall pay to Lessor an amount equal to the Additional Improvement Rent (as hereinafter defined), plus commissions paid by Lessor to Equis Corporation for the final two (2) years of the initial term.

7.     <u>Holding Over</u>.  If Lessee shall retain possession of the Premises after termination or expiration of this Lease, then (a) for each day, or part thereof the Lessee so retains possession of the Premises without Lessor's consent, Lessee shall pay Lessor 1 ½ times the amount of the daily rate of Rent and other charges payable by Lessee as Rent during the calendar month immediately preceding such termination or expiration together with any damages sustained by Lessor as a result thereof.  If such retention of the Premises is with the express or implied consent of Lessor, such tenancy shall be from month to month and, in no event, from year to year or any period longer than month to month at the rental rate in effect before the expiration of the Lease term or such rate agreed to by the parties.

8.     <u>Rent</u>.  Lessee covenants and agrees to pay to Lessor, in accordance with the Rent Payment Instructions set forth in section 1 of this Lease, or at such other place

5



designated by Lessor, without prior demand and without deduction or set off, rent ("Rent") for the Premises consisting of the Base Rent and Additional Rent (which shall include "Additional CAM Rent" and "Additional Improvement Rent") as provided in sections 8.1, 8.2 and 8.3, and any other additional payments due under this Lease. Such payments shall be made in advance on or before the first day of each month, or as otherwise provided in this Lease. Base Rent, Additional Rent and any other payments for any partial month at the beginning or end of the term of this Lease shall be prorated based upon the actual number of days of such month included in the term of this Lease. Lessee shall pay Lessor the first monthly installment of the Base Rent upon execution of this Lease.

8.1    <u>Operating Costs and Real Estate Taxes</u>.

8.1.1. For any calendar year falling partly or wholly within the term of this Lease, Lessee shall pay to Lessor, as Additional CAM Rent, Lessee's Percentage of Operating Costs (as hereafter defined).

8.1.2. As used in this Lease, the term "Operating Costs" shall mean any and all expenses, costs and disbursements (other than Real Estate Taxes) of any kind and nature whatsoever incurred by Lessor in connection with the ownership, management, operation, maintenance and repair of the Premises, the Building, the Project and the parcel of land on which they are located, which Lessor shall pay or become obligated to pay during a year, regardless of when such Operating Costs were incurred. Operating Costs shall include, without limitation, fire insurance (including but not limited to fire and such other endorsements to a fire policy as Lessor may, in its discretion, determine to be desirable); public liability insurance; water and sewer charges for common areas; repairs and maintenance of the Project, including costs of materials and supplies used in connection therewith; costs incurred in connection with the operation, inspection and servicing (including outside maintenance contracts) of electrical, plumbing and mechanical equipment for common areas, and the cost of materials and supplies in connection therewith; repairs, resurfacing and restriping of the driveways and parking areas; the cost of snow plowing, snow and ice removal, landscaping and lawn mowing; property management fees (not to exceed 7 percent of Base Rent); and other costs necessary in Lessor's reasonable judgment for the maintenance of the common areas, the Building and the Project in a good and attractive condition. Operating Costs shall not include the following:

a.    costs of alterations of Lessee's premises;

b.    depreciation;

c.    interest and principal payments on mortgages, and other debt costs or ground lease payments;

6



d.    the portion of any cost or expenditure (or portion thereof) for which Lessor is reimbursed, whether by insurance proceeds or otherwise; and

e.    the cost of any service furnished to any other occupant of the Project which Lessor does not provide to Lessee hereunder. Notwithstanding anything contained herein to the contrary, the reasonable annual amortization, with interest, of any capital improvements made after the Lease Commencement Date which are intended to reduce Operating Costs or which are required under any governmental laws, regulations, or ordinances which were not applicable to the Project at the time it was constructed, shall be included in Operating Costs.

Lessor reserves the right to separately meter any rentable area of the Project for heating, ventilating and air conditioning ("HVAC") and for water and sewer services. Notwithstanding anything in this section 8.1.2 to the contrary, if any rentable area of the Project is separately metered for such services, then (i) the Lessee in that space shall contract with and pay the public utility or utilities directly for the measured consumption of services for that space, (ii) the charges for the remainder of the Project shall be included in the calculation of Operating Costs only for the other lessees (the "Nonmetered Lessees"), and (iii) any costs charged to the Nonmetered Lessees shall be allocated in the proportion that the Lessee's Percentage for each Nonmetered Lessee bears to the Total Lessee's Percentage for all Nonmetered Lessees.

f.    Federal or state income taxes

8.1.3. For any calendar year falling partly or wholly within the term of this Lease, Lessee shall pay to Lessor, as Additional CAM Rent, Lessee's Percentage of Real Estate Taxes (as hereafter defined).

8.1.4. As used in this Lease, the term "Real Estate Taxes" shall mean:

a.    any and all taxes, charges and assessments (general or special, ordinary or extraordinary) levied with respect to the Building, the parcel of land on which it is located, the Project or the land on which the Building or Project is located;

b.    any taxes levied or assessed in addition to or in lieu of, in whole or in part, such taxes and assessments;

c.    costs and expenses incurred by Lessor in connection with the attempt to reduce any of the foregoing, whether by negotiation or contest.

7



8.1.5. During December of each year, or as soon thereafter as practicable, Lessor shall give Lessee written notice of its estimate of amounts payable under this section 8.1 for the following year. On or before the first day of each month thereafter, Lessee shall pay to Lessor as additional rent one-twelfth (1/12) of such estimated amounts, provided that if such notice is not given in December, Lessee shall continue to pay on the basis of the prior year's estimate until the first day of the month after the month in which such notice is given. If, at any time, it appears to Lessor that the actual amounts payable hereunder for the then current year will vary from its estimate by more than five percent (5%), Lessor may, by written notice to Lessee, revise its estimate for such year, and subsequent payments by Lessee for such year shall be based upon such revised estimate.

8.1.6. By April 15 of each year during the term of this Lease, or as soon thereafter as practicable, Lessor shall deliver to Lessee a written statement ("Statement") setting forth the total amount of Operating Costs for the preceding year, the total amount of the Real Estate Taxes for the preceding year, and the Lessee's Percentage thereof. If Lessee's Percentage of Operating Costs and Real Estate Taxes for such year exceeds the estimated Additional Rent paid by Lessee pursuant to this section 8.1, Lessee shall pay the amount of such excess to Lessor, as Additional Rent, within thirty (30) days of receipt of such Statement by Lessee. If such Statement shows an amount due from Lessee that is less than the payments previously paid by Lessee, the amount of such overpayment by Lessee shall be credited by Lessor to the next accruing Base Rent or Additional CAM Rent payable by Lessee.

8.1.7. Lessee or its representatives shall have the right to examine Lessor's books and records of Operating Expenses and Real Estate Taxes during normal business hours within sixty (60) days following the furnishing of the Statement to Lessee. Unless Lessee takes written exception to any item within seventy-five (75) days following the furnishing of the Statement to Lessee (which item shall be paid in any event), such Statement shall be considered as final and accepted by Lessee. In the event that an audit shows Lessor overcharged Lessee by an amount greater than five percent (5%), Lessor shall pay for all reasonable charges associated with the cost of performing said audit.

8.1.8. For the years in which this Lease commences and terminates, Lessee shall pay only that proportion of the amount otherwise payable under this section 8.1 which the number of days of the term of the Lease falling within such year bears to 365 days, based upon the actual amounts due for the year of commencement and the estimated amounts due pursuant to section 8.1.5 for the year of termination.

8



8.2. <u>Additional Improvement Rent</u>. During the initial five (5) year Lease Term, Lessee shall pay to Lessor Additional Improvement Rent in an amount as determined hereunder.

8.3. <u>Additional Rent</u>. Lessee shall pay, as Additional Rent, all sums of money or charges required to be paid by Lessee under this Lease. If such amounts and charges are not paid at the time provided in this Lease, they shall be collectable as Additional Rent with the next installment of Rent thereafter becoming due, but nothing contained herein shall be deemed to limit any other remedy of Lessor.

9.    <u>Security Deposit</u>. As security for the full and faithful performance of every covenant and condition of this Lease to be performed by Lessee, Lessee shall, upon execution of this Lease, pay to Lessor the Security Deposit specified in section 1. If Lessee shall default with respect to any covenant or condition of this Lease including, but not limited to, the payment of Base Rent or Additional Rent, Lessor may apply all or any part of the Security Deposit to the payment of any sum in default, or any other sum which Lessor may be required to spend or incur by reason of Lessee's default, or any other sum which Lessee may, in its reasonable discretion, deem necessary to spend or incur on Lessee's behalf or by reason of Lessee's default.  In such event, Lessee shall, upon demand, reimburse Lessor the amount so applied. If Lessee shall have fully complied with all of the covenants and conditions of this Lease, but not otherwise, the amount of the Security Deposit then held by Lessor shall be repaid to Lessee within thirty (30) days after the expiration or sooner termination of this Lease. In the event of Lessee's default, Lessor's right to retain the Security Deposit shall be deemed to be in addition to any and all other rights and remedies at law or in equity available to Lessor for Lessee's default under this Lease.

10.    <u>Use</u>. The Premises shall be used and occupied for the Permitted Use only.

10.1. <u>Nonrepresentation of Lessor</u>.  Lessee acknowledges that Lessor has made no representations or warranties as to the suitability of the demised premises for the conduct of Lessee's business, other than its warranty that the intended use is consistent with permitted uses and zoning for the Premises.

10.2. <u>Lessor's Permission for Additional Use</u>. The Premises may not be used for any purpose, except as found above, without Lessor's prior, express and written consent, which shall not be unreasonably delayed or withheld.

10.3. <u>Interference with Tenant's Rights</u>.  Lessee shall not do or permit anything to be done in or about the Leased Premises that will obstruct or interfere with the rights of other Project tenants, or injure, or interfere with their use of the common areas, or allow the Premises to be used for any immoral or unlawful purpose; nor shall Lessee cause, maintain, or permit any nuisance in, on, or about the Premises or common areas.

9



11.    <u>Maintenance and Repair</u>.

11.1. <u>Lessee's Obligations</u>. Lessee shall maintain in good condition and repair the Premises and the fixtures therein and shall reimburse Lessor for all repairs thereto or to the Project which are made necessary as a result of any misuse or neglect by Lessee or any of its employees, contractors, agents, customers, or guests. For purposes of this section 11, the term Premises shall be deemed to include all items and equipment installed by or for the benefit of or at the expense of Lessee including, without limitation, (a) plumbing, HVAC and electrical equipment located within the Premises and (b) the interior surfaces of the ceilings, walls, floors and doors and interior and exterior windows.

11.2. <u>Lessor's Obligations</u>. Lessor shall maintain in good condition and repair the structural portions of the Project, excluding the plumbing, HVAC and electrical systems exclusively serving the Premises; and shall maintain the common areas of the Project in good condition and repair. Lessor shall not be liable for any failure to make any repairs or to perform any maintenance unless such failure shall persist for an unreasonable time after written notice of the need for such repairs or maintenance is given to Lessor by Lessee. Except as provided in section 19 hereof, there shall be no abatement of rent and no liability of Lessor by reason of any injury to or interference with Lessee's business arising from the making of any repairs, alterations, or improvements in or to any portion of the Project, including the Premises, or in or to the fixtures and equipment therein; provided, however, that in making such repairs, alterations, or improvements, Lessor shall interfere as little as reasonably practicable with the conduct of Lessee's business in the Premises.

12.    <u>Utilities and Services</u>.

12.1. <u>Basic Services</u>. Lessor shall:

12.1.1. Furnish electricity to the common areas.

12.1.2. Provide water service to the common areas.

12.2. <u>Extraordinary Services</u>. Should Lessee require special services from time to time, Lessor shall, upon reasonable advance notice by Lessee, furnish such additional service and Lessee agrees to pay to Lessor, within ten (10) days after being billed therefor, as additional rent, Lessor's cost of labor, materials supplied and utilities consumed in providing such additional service plus ten percent (10%) of such cost. The amount of such payment and expenses shall be excluded from the determination of Operating Expenses.

12.3. <u>Lessor Not Liable</u>. Lessor does not warrant that any of the services referred to in this Lease, or any other services which Lessor may supply, shall be free from interruption, curtailment, or suspension. Lessee acknowledges that any one or



more of such services may be suspended by reason of accident or repairs, alterations or improvements, or by reason of causes beyond the reasonable control of Lessor. No interruption, curtailment, or suspension of service shall be deemed an eviction or disturbance of Lessee's use and possession of the Premises or any part thereof, or render Lessor liable to Lessee for damages, or relieve Lessee from the full and complete performance of all Lessee's obligations under this Lease, nor shall there be any abatement of Rent or other charges.

13.   <u>Lessee's Utility Service</u>.  Lessee agrees to contract with and pay the public utility directly for the measured consumption of electricity, gas, sewer and water for the Premises.  Lessor shall not be liable or responsible to Lessee for any loss, damage, or expense which Lessee may sustain or incur if the quantity or character of utility service is changed or is no longer available or is no longer suitable for Lessee's requirements.

14.   <u>Lessee's Covenants</u>.  Lessee agrees that it shall, at its expense:

14.1.   <u>Rules and Regulations</u>.  Observe the Rules and Regulations and any amendments thereto as may be adopted by Lessor from time to time for the general safety, comfort and convenience of Lessor, tenants and occupants of the Project. Lessor shall not be responsible to Lessee for the noncompliance by any other tenant of the Project with any of the Rules and Regulations, and any failure by Lessor to enforce any Rules and Regulations against either Lessee or any other tenant in the Project shall not constitute a waiver hereof.

14.2.   <u>Lessor Access</u>.  Give Lessor, its employees, contractors, agents and any other person or persons authorized by Lessor, access to the Premises at all reasonable times without charge or diminution of rent, to enable them to examine the Premises and to make such repairs, alterations and improvements as Lessor may deem advisable, or to enter, view, show and inspect the Premises, provided it is done, if possible, in a manner so as not unduly to interfere with the conduct of Lessee's business.

14.3.   <u>Signage</u>.  Not place any signs or any other projection upon the Project or the Premises or any lettering on the windows or doors thereof except pursuant to Lessor's written consent which shall not be unreasonably delayed or withheld.

14.4.   <u>Compliance with Laws</u>.  Comply with all laws, regulations, ordinances and orders of federal, state, county and municipal authorities and with any direction made pursuant to law of any public officer, relating to Lessee's use of the Premises.

14.5.   <u>Hazardous Substances</u>.  Not permit the use, storage, or disposal of any Hazardous Substances at the Premises.  "Hazardous Substances" means any hazardous waste, substance, or toxic materials regulated under any federal, state, or local environmental law or regulation including, without limitation, asbestos containing materials, PCBs and petroleum products.  The foregoing shall not apply

11



to items used in Lessee's business so long as said items are handled in accordance with all applicable rules and regulations, as well as industry standards.

14.6. _Personal Property Taxes_. Pay, before delinquency, any and all taxes levied or assessed and which become payable during the term hereof upon Lessee's fixtures, equipment, furniture and other personal property located in the Premises.

14.7. _Surrender of Premises_. Upon the termination of this Lease for any reason, remove Lessee's fixtures, equipment, furniture and other personal property and those of any other persons claiming under Lessee, and quit and deliver up the Premises to Lessor peaceably and quietly in as good order and condition as the same are at the Commencement Date of this Lease or thereafter may be improved by Lessor and Lessee, reasonable use and wear excepted. Items not removed by Lessee at the termination of this Lease shall be considered abandoned and Lessor may dispose of the same as it deems expedient, but Lessee shall promptly reimburse Lessor for any reasonable expenses incurred by Lessor in connection therewith (net of any salvage value received by Lessor) including, without limitation, the cost of removal thereof and of repairing any damage occasioned by such removal.

15.    _Lessor's Covenant of Quiet Enjoyment_. Lessor covenants that if Lessee shall pay the Rent and observe and perform all the terms, covenants and conditions of this Lease on its part to be observed and performed, Lessee may peaceably and quietly enjoy the Premises subject to the terms and conditions of this Lease.

16.    _Insurance_.

16.1. _Lessor's Obligation_. During the term of this Lease, Lessor shall keep in full force and effect, as an Operating Expense, insurance against fire, vandalism, malicious mischief and such other perils as are from time to time included in a standard extended coverage endorsement insuring the Project in an amount of not less than one hundred percent (100%) of its replacement value.

16.2. _Lessee's Obligation_. During the term of this Lease, Lessee shall keep in full force and effect, at its expense: (a) a policy of general liability insurance covering the Premises, with a combined single limit of not less than $1 million (or such higher amount as Lessor may from time to time require of all tenants); and (b) insurance against fire, vandalism, malicious mischief, and such other perils as are from time to time included in a standard extended coverage endorsement, insuring Lessee's fixtures, equipment, furniture and all other items of personal property of Lessee located on or within the Premises in an amount not equal to less than their full replacement value. All policies of insurance to be carried by Lessee shall: (a) name Lessor, Management Agent, Lessee and any other parties in interest designated by Lessor as additional insureds; (b) contain such endorsements as Lessor may from time to time reasonably require; and (c) shall be in form and substance reasonably satisfactory to Lessor. A copy of the paid up policies evidencing such insurance or



certificates of insurers certifying to the issuance of such policies shall be delivered to Lessor prior to the commencement date of this Lease and upon renewals not less than thirty (30) days prior to the expiration of such coverage.

16.3.   Waiver of Subrogation.  Notwithstanding anything in this Lease to the contrary, Lessor shall not be liable to Lessee for loss arising out of damage or destruction of the Premises or Lessee's fixtures of personal property if such damage or destruction is caused by a peril included within a standard form of fire insurance policy, with full extended coverage endorsement added, as from time to time issued in Wisconsin.  Lessee shall carry insurance on its fixtures and personal property located in the Premises at its own expense, and Lessee shall look to its insurer for reimbursement of any loss, and the insurer involved shall have no subrogation rights against Lessor.  Lessee shall advise its insurance company of this release and such policy shall, if necessary, contain a waiver of subrogation by the insurer against Lessor.

17.   Signage.  The parties acknowledge that the Premises are part of an integrated and uniform commercial center and that control of exterior signs by Lessor on the Property is essential to maintain uniformity and aesthetic value in the Property.  Lessee may not erect and maintain any signs on the exterior of the Building Premises without the advance, written consent of Lessor, which consent shall not be unreasonably withheld, conditioned, or delayed.  Such signage must be in accordance with Lessor's specifications and contracted through a sign contractor approved in advance by Lessor.  Installation of all door and window signage shall be subject to Lessor's advance, written approval and the Rules and Regulations for the Project.

18.   Alterations and Improvements.  Lessee may not make any alterations or improvements ("Improvements") to the Premises without the prior written approval of Lessor which shall not be unreasonably delayed or withheld. Improvements by Lessee shall be made at Lessee's sole expense.  Lessee shall obtain all necessary permits from governmental authorities and provide Lessor with copies thereof prior to commencement of construction. All Improvements shall be made in a good and workmanlike manner and in compliance with all governmental requirements. Lessee shall promptly repair any damage and perform any necessary cleanup resulting from any Improvements made by Lessee. All Improvements (except fixtures, equipment and furniture belonging to Lessee which are removable without causing damage to the Building) shall be Lessor's property and shall remain upon the Premises at the termination of this Lease, all without compensation to Lessee. Lessee agrees not to create or permit any lien against the premises or the Project by reason of any Improvement and Lessee agrees to hold Lessor harmless from and against any such lien claim. At its expense, Lessee shall cause to be discharged, within thirty (30) days after the filing thereof, any construction lien claim filed against the premises or the Project for work claimed to have been done for, or materials claimed to have been furnished to, or on behalf of Lessee.



19.    Damage or Destruction. In case of damage to the Premises or the Building by fire, vandalism, malicious mischief, or any other casualty, Lessor shall (unless this Lease shall be terminated as hereinafter provided) diligently proceed to make all the repairs necessary to restore the Premises (excluding any property of Lessee or improvements installed by Lessee) and the Building to substantially the condition in which they existed immediately prior to such destruction or damage subject to delays which may arise by reason of adjustment of loss under insurance policies and delays beyond the reasonable control of Lessor. To the extent that the premises are rendered unrentable, the Rent shall proportionately abate unless such damage was caused by the negligent act or omission of Lessee, its employees, contractors, agents, customers, or guests, in which case, there shall be no abatement of Rent. If the Premises or the Building are damaged to such an extent that (a) Lessor, in its sole discretion, determines not to rebuild or repair or (b) Lessee's ability to conduct business in the Premises is materially impaired, then either Lessor or Lessee may terminate this Lease upon written notice thereof to the other within sixty (60) days after the date of such damage in which event this Lease shall terminate as of the date of such damage, the Rent shall be adjusted to the date of such damage, and Lessee shall thereupon promptly vacate the Premises.

20.    Eminent Domain.

20.1. In the event the entire Premises or Building are lawfully condemned or taken in any manner for any public or quasi-public use or purpose, or sold or conveyed in lieu of condemnation, this Lease shall terminate as of the date of such taking or conveyance and Lessee shall have no interest in any award resulting from such taking except for moving expenses and Improvements included in the award which shall have been installed and paid for by Lessee.

20.2. In the event only a portion of the Premises or Building is taken or conveyed, the Base Rent and Lessee's Percentage shall be equitably adjusted, unless Lessor or Lessee shall elect to terminate this Lease as of the date of such taking or conveyance, provided Lessee's right to terminate this Lease as a result of a partial taking shall only arise if such partial taking materially impairs the conduct of Lessee's business from the Premises. Lessee may terminate this Lease upon written notice thereof within thirty (30) days of such taking or conveyance. Lessor shall notify Lessee of such equitable adjustment or its election to terminate this Lease within sixty (60) days of such taking or conveyance.

21.    Indemnification. Except as covered by insurance to be provided by Lessee, Lessee shall defend and indemnify Lessor and save it harmless from and against any and all liability, damages, costs, or expenses, including attorneys' fees, arising from any act, omission, or negligence of Lessee or its employees, contractors, agents, customers, or guests in or about the Premises or the Project, or arising from any breach or default under this Lease by Lessee.



22.    <u>Lessor's Liability</u>.  Lessor shall not be liable to Lessee except for liability, damages, costs, or expenses, except for the gross negligence or willful misconduct of Lessor..  In no event shall Lessor be liable to Lessee or anyone claiming under Lessee for any damage to the Premises or for any loss, damage, or injury to any property of Lessee located in the Premises caused by bursting, rupture, leakage, or overflow of any plumbing or other pipes (including without limitation, water, steam, or refrigerant lines), sprinklers, tanks, drains, drinking fountains, or wash stands, the failure of any systems or facilities in the Premises or the Building or other similar cause. Except for Lessor's gross negligence or willful misconduct, Lessor shall not be liable for any loss or damage to person or property sustained by Lessee or anyone claiming under Lessee, which may be caused by the Premises or the Project or other improvements being out of repair, or by theft, or by vandalism, or by any act or neglect of any lessee or any other occupant of the Project, or of any other person, or by any other cause whatsoever.

Anything in this Lease to the contrary notwithstanding, the covenants, undertakings and agreements herein made on the part of Lessor are made and intended not as personal covenants, undertakings and agreements or for the purpose of binding Lessor personally or the assets of Lessor except Lessor's interest in the Premises and the Project, as the same may from time to time be encumbered. Except for gross negligence or willful misconduct, no personal liability or personal responsibility is assumed by, nor shall at any time be asserted or enforceable against Lessor or its officers or their respective heirs, legal representatives, successors and assigns arising from this Lease or Lessor's obligations with respect to the Premises and the Project, or arising from any covenant, undertaking, or agreement of Lessor contained in this Lease.

23.    <u>Assignment and Subletting</u>.

23.1.  <u>Assignment of Sublease</u>.  Except to an affiliate of Lessee, Lessee shall not voluntarily, involuntarily, or by operation of law assign, transfer, mortgage, or encumber this Lease, nor sublease the whole or any part of the Premises, without first obtaining Lessor's written consent, which shall not be unreasonably delayed or withheld. No such assignment or sublease shall relieve Lessee of any liability under this Lease. Consent to any such assignment or sublease shall not operate as a waiver of the necessity of a consent to any subsequent assignment or sublease, and the terms of such consent shall be binding upon any person holding by, under, or through Lessee.

23.2.  <u>Assignee Obligations</u>.  Any assignee or subtenant approved by Lessor shall assume all obligations of Lessee and shall be jointly and severally liable with Lessee for the payment of Base Rent and Additional Rent and performance of all terms, covenants and conditions of this Lease. In connection with any sublease or assignment, Lessee shall provide Lessor with copies of all assignments, subleases and assumption instruments.



23.3.  <u>Administrative Fee</u>.  Lessee shall pay Lessor, in advance, an administrative fee of Five Hundred Dollars ($500.00) for processing any request for consent to assignment or sublease.

24.  <u>Default by Lessee and Rights of Lessor</u>.

24.1. <u>Defaults</u>.  If Lessee:

a.  Fails to pay any installment or Rent or other charges due hereunder within five (5) days after written notice from Lessor; or

b.  Fails to perform any other covenant, term, agreement, or condition of this Lease within thirty (30) days after written notice of such failure from Lessor; provided, however, that if the nature of Lessee's default is such that more than thirty (30) days are reasonably required for its cure, then it shall not be deemed to be a breach of this Lease by Lessee if Lessee commences such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion; then, in either case, Lessor, in addition to all other rights and remedies available to Lessor at law or in equity or by other provisions hereof, may immediately re-enter the Premises and remove all persons and property, and, at Lessor's option, terminate this Lease or terminate Lessor's right to possession of the Premises without terminating this Lease.  Lessor further agrees that in case of any such termination, Lessee will indemnify Lessor against all loss of rents and other damage which Lessor may incur by reason of such termination including, but not limited to, costs of restoring and repairing the Premises and putting the same in rentable conditions, costs of renting the Premises to another occupant (including brokerage commissions and rent concessions), loss or diminution of Rent and other damage which Lessor may incur by reason of such termination.  Lessee hereby agrees to pay Lessor and to indemnify Lessor for all reasonable attorneys' fees and expenses incurred in enforcing any of the terms of this Lease or any other rights or remedies of Lessor.  Neither acceptance of Rent or other charges by Lessor, with or without knowledge of breach or default, nor failure of Lessor to take action on account of any breach or default hereof or to enforce its rights hereunder shall be deemed a waiver of any breach or default, and absent specific written notice or consent to the contrary, said breach or default shall be a continuing one.

24.2.  <u>Right of Lessor to Cure Defaults</u>.  If Lessee shall default in the observance or performance of any term or covenant of this Lease, or if Lessee shall fail to pay any sum of money, other than Base Rent and Additional Rent, required to be paid by Lessee hereunder, Lessor may, without waiving or releasing Lessee,



remedy such default at the expense of Lessee, immediately and without notice in case of emergency, or in any other case only upon Lessee's failure to remedy such default within thirty (30) days after written notice to Lessee. If Lessor makes any expenditures or incurs any obligations for the payment of money in connection with Lessee's default including, but not limited to, attorneys' fees, Lessee shall pay to Lessor as Additional Rent such sums paid or obligations incurred, with costs and interest at the rate of eighteen percent (18%) per year.

24.3.  <u>Unpaid Sums and Late Charge</u>.  If any payment of Base Rent or Additional Rent is not paid within five (5) days of the date when due, Lessee shall pay a late charge equal to ten percent (10%) of the amount of such overdue payment per month or portion thereof as liquidated damages for Lessor's extra expense in handling such past due account.

24.4. <u>Bankruptcy and Insolvency</u>. If, at the Lease Commencement Date or at any time during the term of this Lease, there shall be filed by or against Lessee in any court pursuant to any statute either of the United States or of any state, a petition in bankruptcy or insolvency or for liquidation, reorganization or involuntary dissolution or for the appointment of a receiver or trustee of all or a portion of Lessee's property, or if Lessee makes an assignment for the benefit of creditors or petitions for or enters into an arrangement with creditors, this Lease, at the option of Lessor, exercised within a reasonable time after notice of the happening of any one or more of such events, may be cancelled and terminated and, in which event, neither Lessee nor any person claiming through or under Lessee by virtue of any statute or of an order of any court, shall be entitled to possession or to remain in possession of the Premises, but shall forthwith quit and surrender the same, and Lessor, in addition to the other rights and remedies Lessor has by virtue of this Lease or any statute or rule of law, may retain as security for its damages any Base Rent, Additional rent, or monies received by Lessor from Lessee or others on behalf of Lessee.

25.    <u>Sale or Mortgage of Lessor's Interest</u>.

25.1.  <u>Conveyance of Lessor's Interest</u>.  Lessor may sell, assign, or otherwise transfer, in whole or in part, its interest in this Lease and its reversion hereunder. Lessor shall require the transferee to accept the interest transferred subject to this Lease.  The transfer shall release Lessor from any further liability to Lessee hereunder and, after any such transfer, Lessee shall look solely to the transferee for the performance of the obligations of the party who from time to time is the lessor under this Lease.  If Lessor transfers to such a transferee any security deposit Lessor holds for performance of Lessee's obligations hereunder, Lessor shall have no further liability to Lessee concerning such security and Lessee shall henceforth look solely to the transferee.



25.2. <u>Estoppel Certificate</u>. Within ten (10) days after written request from Lessor, Lessee shall execute, acknowledge and deliver to Lessor an estoppel certificate in form and content acceptable to Lessor, which shall include at a minimum: (a) certification that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease as so modified, is in full force and effect), the dates to which rent and any other charges payable by Lessee hereunder are paid in advance, if any, and the amount of the Security Deposit; (b) acknowledgment that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor hereunder or specifying such defaults if any are claimed; and (c) in case of a transfer of Lessor's interest, an agreement to attorn to the transferee. Lessee's failure to deliver such estoppel certificate to Lessor within said 10-day period shall conclusively evidence Lessee's representation and agreement that: (i) this Lease is in full force and effect, without modification, except as Lessor may represent; (ii) there are no uncured defaults in Lessor's performance hereunder; and (iii) Lessee has not paid more than one month's rent in advance nor made a Security Deposit in excess of one month's rent.

26.    <u>Subordination</u>. This Lease, and the term and estate hereby granted, and all of the rights of Lessee hereunder, are subject and subordinate the liens of any mortgage or mortgages now or hereafter in force against the Project, as well as to any and all zoning laws, ordinances and regulations, conditions and agreements affecting said real estate at any time, and Lessee shall execute such further instruments subordinating this Lease to the lien or liens of any such lease or mortgage as shall be requested by Lessor; provided, however, that this subordination and any such further instruments shall not, so long as Lessee is not in default in the performance of any of the terms, covenants and conditions of this Lease, terminate or modify this Lease or any of the rights of Lessee hereunder.

27.    <u>Miscellaneous Provisions</u>.

27.1. <u>No Accord and Satisfaction</u>. No payment by Lessee or receipt by Lessor of a lesser amount than the Base Rent, Additional Rent and other charges stipulated in this Lease shall be deemed to be other than on account of the earliest stipulated Base Rent, Additional Rent, or other charges, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Lessor shall accept such check or payment without prejudice to Lessor's right to recover the balance of such Base Rent, Additional Rent and other charges or pursue any other remedy in this Lease.

27.2. <u>Non-Waiver</u>. Waiver by Lessor of any breach of any term, covenant, or condition contained in this Lease shall not be deemed to be a waiver of such term, covenant, or condition of this Lease.

27.3. <u>Time of the Essence</u>. Time is of the essence as to the payment of rent and the performance of all other obligations of Lessee under this Lease.

18



27.4. <u>Entire Agreement</u>. This Lease constitutes the entire agreement between the parties and no modification shall be binding unless in writing and signed by both parties.

27.5. <u>Successors and Assigns</u>. The rights and obligations of the parties hereto shall inure to the benefit of and be binding upon their heirs, executors, personal representatives, successors and assigns.

27.6. <u>Notices</u>. All notices under this Lease shall be deemed properly given or made if mailed by first-class mail, postage prepaid, or by personal delivery, to the Lessor's or Lessee's Address for Notice as set forth in section 1 of this Lease, or at such other address as either party may from time to time provide to the other by a written notice complying with this section. A notice that is mailed shall be effective upon deposit in the U.S. Mail.

27.7. <u>Governing Law</u>. It is agreed that this Lease shall be governed by, construed and enforced in accordance with the laws of the State of Wisconsin.

27.8. <u>Lessee's Agreement to Defend</u>. If Lessor is named as a defendant in any suit brought against Lessee in connection with or arising out of Lessee's occupancy of the Premises under this Lease, Lessee shall pay to Lessor Lessor's costs and expenses incurred in such suit and any appeal of the suit including reasonable attorney fees and costs, except where such suit relates to the negligent or willful misconduct of Lessor, its agents, representatives, or employees.

27.9. <u>Paragraph Headings</u>. The titles to the paragraphs of this Lease are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of this Lease.

27.10. <u>Recording</u>. Neither Lessor nor Lessee shall record this Lease nor a short form memorandum of this Agreement without the written consent of the other, which consent shall not be unreasonably withheld, conditioned, or delayed.

27.11. <u>Counterparts</u>. This Lease may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, each party to this Lease has caused it to be executed by one duly authorized, to be effective on the last date signed by a party hereto.

LESSOR:

MILLS ENTERPRISES, LLC



Dated: **7.15.04**    By: _____
Stephen C Mills

LESSEE:

RBC MORTGAGE COMPANY

Dated: 7/14/04    By: _____
Jonathan B. Threadgill, President

00063261.WPD



# Exhibit A







EXHIBIT B

RULES AND REGULATIONS

The following rules and regulations have been adopted by Lessor:

1.     The driveways, sidewalks, parking lot, exits and entrances shall not be obstructed by Lessee or used for any purpose other than for ingress to and egress from its respective premises. Lessor shall, in all cases, retain the right to control and prevent access by all persons whose presence, in the judgment of Lessor, shall be prejudicial to the safety, character, reputation and interests of the Project and its tenants, provided that nothing herein contained shall be construed to prevent such access to persons with whom the tenants normally deal in the ordinary course of business, unless such persons are engaged in illegal activities. Lessee shall not and no employees and invitees of any tenant shall go upon the roof of the Project.

2.     No sign shall be attached to or placed in windows without Lessor's prior written approval. No awning or shade shall be affixed or installed over or in the windows of the exterior of the Premises. The windows of the Project shall not be covered or obstructed.

3.     Except as is customary in an office and/or shop environment:

A.     Electric and computer wiring of any kind shall be introduced and connected as directed by Lessor and no boring or cutting for wires will be allowed except with the consent of Lessor; and

B.     The location of telephone service facilities, call boxes, etc., shall be prescribed by Lessor.

4.     No additional lock or locks shall be placed by Lessee on any door in the Project if prohibited by local fire department or governmental agency, rule, or regulation and unless written consent of Lessor shall have first been obtained; which consent shall not be unreasonably withheld.

5.     Lessee shall cause its employees to park in areas designated from time to time for employee parking.

6.     No aerial or antenna (including "dish" antennas) shall be erected on the roof or exterior walls of the Premises, or on the grounds, without in each instance, the written consent of Lessor.

7.     All garbage, refuse, or trash shall be placed by Lessee in the receptacles provided by Lessor for that purpose.

8.    Lessee agrees that it shall comply with all fire and security regulations that may be issued from time to time by Lessor, and Lessee also shall provide Lessor with the name of a designated responsible employee to represent Lessee in all matters pertaining to such fire or security regulations.

9.    Lessee shall see that the doors of the Premises are closed and securely locked before leaving the Premises

10.    The requirements of Lessee will be attended to only upon application to the Management Agent.

11.    Lessor reserves the right, by written notice to Lessee, to add to, rescind, alter, or waive these Rules and Regulations at any time prescribed for the Project when, in Lessor's reasonable judgment, it is necessary, desirable, or proper for the best interest of the Project and its tenants, provided that no such addition, revocation, alteration, or waiver will adversely affect the use of the premises as then carried on by Lessee unless required by governmental authority or regulation.  No assent or consent to any waiver of any part hereof by Lessor in spirit or letter shall be deemed or taken as made except when the same is done in writing and attached to or endorsed hereon by Lessor.

12.    Lessee shall not disturb, solicit, or canvass any occupant of the Project and shall cooperate to prevent same.

13.    Lessee, its servants, employees, customers, invitees and guests shall, when using the common parking facilities in and around the Project, observe and obey all signs regarding fire lanes and no parking zones, and when parking, always park between the designated lines.  Lessor reserves the right to tow away, at the expense of the owner, any vehicle which is improperly parked or parked in a no parking zone.  All vehicles shall be parked at the sole risk of the owner, and Lessor assumes no responsibility for any damage to or loss of vehicles.

14.    All city and county ordinances shall be observed by tenants in the use of this Project and leased Premises.

In the event of any conflict between these rules and regulations or any further or modified rules and regulations from time to time issued by Lessor and the Lease provisions, the Lease provisions shall govern and control.

00063266.WPD



## EXHIBIT C

## LESSOR'S IMPROVEMENT WORK

Lessor, at Lessor's cost, will improve the Premises to a "white box" condition which includes the following:

Concrete. Interior floor to consist of: 4" concrete, 4" stone, 6" x 6" wire mesh, vapor barriers, 6 bag mix. Price includes an allowance for inside placement of stone and concrete. PLEASE NOTE: No finished flooring provided.

Carpentry. Rough-in and fur-out exterior walls and party wall in preparation for insulation and drywall.

Lumber Materials. Rough-in lumber for exterior walls and party wall.

Drywall. All exterior walls and party wall to have drywall installed per proposed unit. Demising walls will be painted to an agreed upon color.

Insulation. Per plans and specifications.

HVAC. Furnish one (1) high efficiency 90 PLUS AFUE rated gas furnace, and one (1) 3 ton, air conditioner with "A" coil. The units will be set in place and the refrigerant lines connected. HVAC distribution system shall be included as per state approved plans.

Plumbing. Labor and materials to extend water and sewer to unit.

Rest Room. Suite rest room will be included as per state code mandates.

Electrical. Provide (1) 200 AMP service. Wire furnaces and air conditioners. Electrical outlets as per state approved plans will be included.

Ceiling. Ceiling grid and acoustical tile provided.

Fire Protection. Per local codes and ordinances.

Cleaning and Scrapping. Scrapping at completion of rough in.

Miscellaneous Expenses. (1) Dumpster and (1) portable toilet, if needed.

In addition, Lessor will complete finished build out of the Premises to Lessee's written specifications and at such terms as are agreed upon by Lessor and Lessee in advance. The total cost of the finished build out shall be paid by Lessor and shall be the basis for the computation of the Additional Improvement Rent provided for herein.

00063269.WPD