# EXHIBIT A

RLF1-3139638-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | Chapter 11 |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |

### AFFIDAVIT OF FRANK B. GLASSNER IN SUPPORT OF THE MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 327(e) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014, 2016 AND 5002 AS COMPENSATION SPECIALISTS FOR THE DEBTORS *NUNC PRO TUNC* AS OF THE PETITION DATE

Frank B. Glassner makes this Affidavit under 28 U.S.C. § 1746, and states:

1.   I am the Chief Executive Officer of Compensation Design Group, Inc. ("CDG"), which is located at 101 California Street, Suite 2820, San Francisco, CA 94111, with additional offices in Chicago, Illinois and New York, New York. CDG's core focus is providing compensation consulting through the design and management of compensation, benefits, and human resource programs. CDG's professionals have particular expertise in working with: (i) executive compensation; (ii) wage and salary determination and administration; (iii) sales and marketing compensation; (iv) incentive compensation and performance management; (v)

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

performance appraisal and development; (vi) surveys on compensation and organizational practices within specialized industries; (vii) studies linking organizational strategy and compensation programs to business strategy and performance objectives; and (viii) public offering, merger and acquisitions defensive and offensive strategies, and capital market assistance.

2. I submit this affidavit in support of the Debtors' application (the "Application") for an order under 11 U.S.C. §§ 327(e) and 328 authorizing the employment of CDG as compensation specialists for the Debtors *nunc pro tunc* to the Petition Date.

3. I am duly authorized to make and submit this Affidavit on behalf of CDG in connection with the Application. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.

### CDG'S PROFESSIONAL QUALIFICATIONS

4. I and the other compensation professionals employed at CDG are well qualified to act as compensation specialists to the Debtors. CDG has broad-based experience in providing advice and analysis with respect to a wide range of employment and compensation related issues. The professionals at CDG have served as compensation consultants for many years, and have extensive experience in advising major corporations with regard to issues concerning compensation, benefits, healthcare, retirement plans, strategic human resources program, and capital market transactions.

5. In the course of preparing to serve as compensation specialists to the Debtors in connection with these chapter 11 cases, CDG has become familiar with the main aspects of the Debtors' business affairs, especially in regard to compensation issues.

6. The Debtors and CDG contemplate that CDG will render various services,

including, but not limited to, the following (all of which constitute services, as defined herein):

    a.    analysis and review of executive pay issues, including, but not limited to issues relating to compensation of Board members;

    b.    analysis, review, and assistance with unwinding Debtors' long-term incentive plans;

    c.    analysis and review, as necessary, of all of Debtors' compensation and benefit plans;

    d.    analysis and review of Debtors' Board of Directors' compensation plans;

    e.    analysis and assistance with disposition of deferred compensation plans, supplemental executive retirement plans, asset disposition incentive plans, and other similar plans;

    f.    at the Debtors' request, advise the Debtors with regard to remaining workforce salary and benefit issues, and key employee incentive and retention plans (the "Incentive Plans");

    g.    at the Debtors' request, provide truthful and independent expert witness testimony regarding its analyses, assessments or recommendations;

    h.    at the Debtors' request, create a summary report combining all of the above work and setting forth its findings, conclusions and recommendations; and

    i.    such other services as are customary in engagements of this type contemplated hereby and as may be reasonably agreed upon by the Debtors and CDG.

### DISINTERESTEDNESS AND ELIGIBILITY

7.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with these cases, neither I, nor CDG, nor any of its managing directors, employees, agents or affiliates, have any connection with the Debtors, their creditors, the United States Trustee, or any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants, except as set forth below:

a. CDG is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

b. From time to time, CDG has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these chapter 11 cases.

c. CDG provides services in connection with numerous cases, proceedings and transactions unrelated to these chapter 11 cases. These unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in these cases, or may represent such parties.

d. CDG's personnel may have business associations with certain creditors of the Debtors unrelated to these chapter 11 cases. In addition, in the ordinary course of its business, CDG may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in these cases.

e. CDG has completed a recent search of its client database for a period including the past five years to determine whether it has had or has any relationships with the following entities (collectively, the "Interested Parties"):

   i. the Debtors and their affiliates;

   ii. the Debtors' directors and officers and certain of their most significant business affiliations, as provided to CDG by the Debtors;

   iii. the Debtors' largest secured creditors, as provided to CDG by the Debtors;

   iv. the Debtors' largest fifty (50) unsecured creditors, as provided to CDG by the Debtors; and

   v. various other potential parties-in-interest, as identified by the Debtors.

8. Based on this search, CDG knows of no fact or situation that would represent a conflict of interest for CDG with regard to the Debtors. CDG submits that it holds no adverse interest as to the matters for which it has been employed by the Debtors.

9. In the event that CDG discovers additional information that requires disclosure, CDG will file a supplemental disclosure with the Court. CDG reserves the right to supplement this Affidavit in the event that CDG discovers any facts bearing on matters described in this Affidavit regarding CDG's employment by the Debtors.

## DISCLOSURE OF COMPENSATION

10. Pursuant to the Engagement Letters, CDG will receive a $50,000 monthly fee in connection with its performance of the General Compensation Services, and a $10,000 monthly fee in connection with its performance of the Executive Compensation Services. To the extent that CDG is asked to provide assistance outside the scope of the services set forth in the Engagement Letters, CDG's compensation for such additional services shall be based on its normal hourly rates.

11. The majority of the services contemplated by this retention will be performed by Frank B. Glassner and Jason Taylor, a Senior Principal at CDG. Mssrs. Glassner's and Taylor's hourly rates are set forth below, as well as the hourly rates of other CDG professionals that may render services in connection with this engagement.

| Role | Rate |
| --- | --- |
| Frank B. Glassner | $700 |
| Jason Taylor | $500 |
| Principal | $225 - $425 |
| Senior Consultant | $200 - $325 |
| Consultant | $150 - $250 |
| Associates | $100 - $200 |

12. In addition to the hourly rates set forth above, the Debtors shall reimburse CDG for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges.

13. Additionally, CDG will receive an administrative overhead charge equal to 14%

of the professional fees to cover expenses, including secretarial assistance, phone, copying and mailing expenses (the "Overhead Charge").

14. The amounts paid to CDG as the Overhead Charge will not exceed the cost of providing such expenses. Moreover, the amounts recovered through the Overhead Charge on account of copying charges shall not exceed the amount permitted by Local Rule 2016-2.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Frank B. Glassner
Chief ~~Operating~~ Executive Officer

Executed this 17th day of April 2007