IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| | : | |

**ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF
THE BANKRUPTCY CODE AND RULES 2002, 6004, 6006 AND 9014
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
(I) APPROVING BIDDING PROCEDURES, INCLUDING BREAK-UP
FEE AND EXPENSE REIMBURSEMENT PAYABLE TO CARRINGTON
MORTGAGE SERVICES, LLC FOR SALE OF DEBTORS' SERVICING
BUSINESS; (II) SCHEDULING BID DEADLINE, AUCTION DATE,
AND SALE HEARING AND APPROVING NOTICE THEREOF;
AND (III) APPROVING PROCEDURES TO FIX CURE AMOUNTS
RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND APPROVING NOTICE THEREOF**

This matter coming before the Court on the Emergency Motion of Debtors and Debtors

in Possession for (I) An Order (A) Approving Bidding Procedures and Bid Protections in

Connection with the Proposed Sale of Assets used in their Loan Servicing Business,

(B) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and

Manner of Notice thereof and (C) Granting Related Relief and (II) An Order (A) Approving the

---

[1]  The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Proposed Sale and (B) Granting Related Relief, dated April 4, 2007 (the "Motion"), filed by New

Century Financial Corporation ("New Century") and its affiliated debtors and debtors-in-

possession (collectively, the "Debtors"), for an order pursuant to Sections 105(a), 363, 365, 503

and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004,

6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for

approval of (i) the sale of the Debtors' mortgage loan servicing business as more fully described

in the Motion (the "Servicing Business")[2] to Carrington Capital Management, LLC and

Carrington Mortgage Services, LLC (collectively, "Carrington") under the terms of the Amended

and Restated Asset Purchase Agreement, dated as of April 19, 2007 between the Debtors and

Carrington, as purchaser (as amended, the "APA"), free and clear of liens, claims,

encumbrances, and interests (except for the Permitted Encumbrances (as such term is defined in

the APA)), (ii) the institution of bidding procedures (the "Bidding Procedures," attached hereto

as Schedule 1), including a break-up fee in the amount of $2,000,000 (as such term is defined in

the APA, the "Break-Up Fee") and expense reimbursement in an amount not to exceed

$2,000,000 in the aggregate (as such term is defined in the APA, the "Expense Reimbursement")

payable to Carrington, and (iii) the assumption and assignment of certain executory contracts and

unexpired leases of the Debtors (the "Assumed Contracts") to Carrington or alternatively to the

Successful Bidder for the Servicing Business; and it appearing that notice of the Motion was

good and sufficient under the circumstances and that no other or further notice need be given;

and the Court having reviewed the Motion and all objections thereto, if any, and having heard the

statements in support of the relief requested therein at a hearing before the Court (the

"Hearing"); and it appearing that entry of this order is in the best interests of the Debtors, their

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

2

estates, and all parties in interest; and upon the Motion and the record of the Hearing and all other proceedings had before the Court; and after due deliberation and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Reasonable notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein have been afforded to all interested persons and entities.

D.    The Debtors, with the aid of their advisor, Lazard, have been marketing the Servicing Business for sale. The APA represents the best offer that the Debtors have received to date as a result of such marketing efforts.

E.    The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures in their entirety, including (i) the payment of the Break-Up Fee and the Expense Reimbursement to Carrington (if necessary) in accordance with the terms of the APA, (ii) the scheduling of a bid deadline, auction, and sale hearing for the sale of the Servicing Business, and (iii) the establishment of procedures to fix the cure amounts (the "Cure Amounts") to be paid under section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

3

F.      The Break-Up Fee and Expense Reimbursement to be paid in accordance with the terms of the APA (i) are not tainted by self-dealing, (ii) were negotiated by the parties in good faith and at arm's length, (iii) will preserve the value of the Debtors' estates, (iv) are not calculated to hamper bidding for the Servicing Business, and (v) are reasonable in light of the size and nature of the proposed transaction, the commitments that have been made by Carrington, and the efforts that have been and are expected to be expended by Carrington. The Break-Up Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, commensurate to the real and substantial benefit conferred upon the Debtors' estates by Carrington, and necessary to induce Carrington to continue to pursue the purchase of the Servicing Business.

G.      The APA and its terms were negotiated by the Debtors and Carrington, with the active involvement of the Official Committee of Unsecured Creditors, in good faith and in an arm's-length manner.

H.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the return from the proposed sale of the Servicing Business.

I.      The form and scope of Notices (as defined below) are reasonable and appropriate and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and Local Rules for the United States Bankruptcy Court for the District of Delaware.

J.      The entry of this order and the attached Schedules (together, the "Bidding Procedures Order" or "this Order") is in the best interests of the Debtors' estates and their creditors.

4

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

    1.    The Motion, as it pertains to the matters addressed herein, is GRANTED.

    2.    The Bidding Procedures, which are incorporated herein by reference, are

approved and shall govern all bids and bid proceedings relating to the sale of the Servicing

Business. Each of the Debtors is authorized to take any and all actions necessary or appropriate

to implement the Bidding Procedures.

    3.    Payment of the Break-Up Fee and the Expense Reimbursement under the

circumstances set forth and in accordance with the terms of the APA is approved and directed,

and Carrington shall be entitled to the Break-Up Fee and Expense Reimbursement to the extent

set forth in the APA. If the APA is terminated for any reason and if payment of the Expense

Reimbursement and/or the Break-Up Fee is triggered under the terms of the APA, each of the

Debtors is authorized and directed, without need for any application, motion, or further order of

this Court, to pay to Carrington the Break-Up Fee and Expense Reimbursement in the manner

and upon the terms set forth in the APA. The Break-Up Fee and Expense Reimbursement shall

be paid out of New Century's estate in the first instance, and any claim or claims of Carrington

to payment of either or both of the Break-Up Fee and Expense Reimbursement shall constitute

an allowed administrative expense claim arising in the chapter 11 case of New Century and each

other Debtor under sections 503(b) and 507(a)(1) of the Bankruptcy Code. If the Auction results

in the selection of a Successful Bidder other than Carrington, New Century shall pay the Break-

Up Fee and Expense Reimbursement to Carrington pursuant to the terms of the APA (to the

extent not already paid) directly from the cash proceeds of any sale of the Servicing Business to

CHDBO4 13377074 3  19-Apr-07 12:56

such other Successful Bidder, regardless of any other competing liens on or claims to such sale proceeds.

4.      As further described in the Bidding Procedures, the deadline for submitting bids for the Servicing Business (the "Bid Deadline") shall be May 10, 2007, at 5:00 p.m. (prevailing Eastern Time).  No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

5.      In the event that New Century receives at least one Qualified Topping Bid (as defined in the Bidding Procedures) that it reasonably considers to be a higher and better bid than that represented by the APA, New Century, on behalf of the Debtors, shall conduct an auction for the Servicing Business (the "Auction") on May 16, 2007 at such time to be announced by the Debtors to all Qualified Bidders who have submitted a Qualified Topping Bid, at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York, 10036, or other place as New Century shall notify all Qualified Bidders who have submitted a Qualified Topping Bid.  In connection with the Auction, Carrington is a Qualified Bidder and the APA is a Qualified Bid.   In the event Carrington elects to participate in the Auction, Carrington shall not be required to submit any Good Faith Deposit(s) in addition to the Deposit Amount (as defined in the APA), if any, and the Deposit Amount shall be forfeited only in accordance with the terms of the APA. Carrington may include the amount of the Break-Up Fee and the maximum Expense Reimbursement in the amount of any subsequent bid that Carrington makes in the Auction, and, in the event Carrington is the Successful Bidder (as defined in the Bidding Procedures) as a result of a subsequent bid made at the Auction,

6

Carrington shall be entitled to credit the amount of Break-Up Fee and the maximum Expense Reimbursement against the purchase price of such subsequent bid payable at Closing.

6.      In the event that New Century does not receive, on or before the Bid Deadline, a Qualified Topping Bid that New Century reasonably considers to be a higher and better bid for the Servicing Business than that represented by the APA, New Century shall not conduct the Auction, but instead the Debtors shall seek approval of the sale of the Servicing Business to Carrington pursuant to the provisions of the APA at the Sale Hearing (as such term is defined below).

7.      The Court shall hold a sale hearing (the "Sale Hearing") commencing either on May 18, 2007 at 10:00 a.m. (in the event that New Century does not receive at least one Qualified Topping Bid on or before the Bid Deadline) or on May 21, 2007 at 10:00 a.m. (prevailing Eastern Time) (if the Debtors timely receive such a Qualified Topping Bid from a Qualified Bidder), at which time, the Court will consider approval of the sale of the Servicing Business, including the Debtors' assumption and assignment of any Assumed Contracts, to Carrington, or alternatively, in the event that an Auction was held pursuant to the provisions of this Bidding Procedures Order, to the Successful Bidder under the Bidding Procedures (the "Sale"). The Debtors shall mail notice of the Bid Deadline, Auction, and Sale Hearing (the "Notice of Bid Deadline, Auction, and Sale Hearing," substantially in the form attached hereto as Schedule 2) as provided in paragraph 14 herein.

8.      New Century, on behalf of the Debtors, shall send notice (the "Notice of Assumption and Assignment"), substantially in the form attached hereto as Schedule 3 to all of the non-debtor counterparties to the Assumed Contracts. The Notice of Assumption and Assignment will set forth (i) the intent of the Debtors to assume the Assumed Contracts and

7

assign them to Carrington or alternatively to the Successful Bidder under the Bidding

Procedures, and (ii) the Cure Amounts associated with the assumption and assignment of each

Assumed Contract.

        9.     All objections to the sale of the Servicing Business, the assumption and

assignment of any Assumed Contracts, or the Cure Amounts (other than as to adequate assurance

of future performance), must be filed and served so as to be received no later than May 14, 2007

at 4:00 p.m. (prevailing Eastern Time), by (i) the United States Trustee for the District of

Delaware, Attention: Joseph J. McMahon, Jr., Esq.; (ii) O'Melveny & Myers LLP, 275 Battery

Street, Suite 2600, San Francisco, CA 94111, Attention: Suzzanne S. Uhland, Esq. and Brophy

Christensen, Esq., and O'Melveny & Myers, LLP, 400 So. Hope Street, Los Angeles, CA 90071,

Attention: Ben H. Logan, Esq. (attorneys for the Debtors); (iii) Richards, Layton & Finger, P.A.,

One Rodney Square, Wilmington, DE 19899, Attention: Mark D. Collins, Esq. (Delaware

counsel for the Debtors); (iv) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY

10022, Attention: Mark T. Power, Esq. and Blank Rome, LLP, Chase Manhattan Centre, 1201

Market Street, Suite 800, Wilmington, DE 19801, Attention: Bonnie Glantz Fatell, Esq.

(attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases

(the "Creditors' Committee")); (v) Mayer, Brown, Rowe & Maw LLP, 71 South Wacker Drive,

Chicago, Illinois, 60606, Attention: Thomas S. Kiriakos, Esq. and Womble Carlyle Sandridge &

Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801, Attention: Steven K.

Kortanek, Esq. (attorneys for Carrington); and (vi) any parties entitled to notice under any case

management procedures order, if any, entered in these cases prior to the date of such objection

(collectively, the "Objection Service List"). In addition, non-debtor parties to the Assumed

Contracts must file and serve objections, if any, to adequate assurance of future performance

8

under the Assumed Contracts so as to be received no later than May 17, 2007 at 4:00 p.m. (prevailing Eastern Time) by the Bankruptcy Court and all parties on the Objection Service List. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

10.    If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of an objection to a Cure Amount, New Century, on behalf of the pertinent Debtor, may, in its sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the pertinent Debtor and the objecting party. So long as New Century, on behalf of the pertinent Debtor, holds the Claimed Cure Amount in reserve and otherwise satisfies the requirements for assumption under section 365 of the Bankruptcy Code, the pertinent Debtor can, without further delay, assume and assign the Assumed Contract that is the subject of an objection relating to that Assumed Contract's Cure Amount.

11.    If no objection to the Cure Amount or the proposed assumption and assignment of an Assumed Contract is timely filed and served, the pertinent Debtor may assume and assign the Assumed Contract to Carrington, or subject to the next paragraph, alternatively to the Successful Bidder for the Servicing Business, and the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective non-debtor party to the Assumed Contract for all purposes in such Debtor's chapter 11 case. The respective non-debtor party shall be forever barred from objecting to the assumption and assignment of the relevant Assumed Contract and/or the Cure Amount, including, without limitation, the right to assert any

9

CHDB04 13177074.3 19-Apr-07 12:56

condition to assignment and/or any additional cure or other amount with respect to their respective Assumed Contract.

        12.    [Intentionally omitted.]

        13.    The effective date of any assumption and assignment of any Assumed Contract shall be the date of Closing (as defined in the APA). Accordingly, any Cure Amounts to be paid under any Assumed Contract will also be paid upon Closing or as soon thereafter as the Cure Amount is fixed by the Court or agreed upon by the parties (including the Committee, so long as the Closing has been permitted to proceed). In the event that the parties cannot reach such an agreement, a sufficient amount shall be reserved so that the closing can occur.

        14.    The notices described in subparagraphs (a)-(d) below (collectively, the "Notices") shall be good and sufficient, and no other or further notice shall be required if given as follows:

    a.    New Century, on behalf of the Debtors, shall serve, within two (2) business days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight courier, electronic mail or same-day messenger delivery, copies of the Bidding Procedures Order upon: (i) the United States Trustee for the District of Delaware, (ii) the attorneys for the Creditors' Committee, (iii) the attorneys for Carrington, (iv) any party who, in the past three months, expressed in writing to New Century an interest in acquiring the Servicing Business, and who New Century and its representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the transaction contemplated in the APA, (vii) all parties who are known to possess or assert a secured claim against the Servicing Business, (viii) the Internal Revenue Service, (ix) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, (x) all applicable state and local taxing authorities, and (xi) any other parties who have timely filed requests for notice under Bankruptcy Rule 2002 or who are entitled to notice under any case management procedures order, if any, entered in these cases prior to the Mailing Deadline.

    b.    On or before the Mailing Deadline, New Century (or its agent), on behalf of the Debtors, shall serve, by regular US mail, the Notice of Bid Deadline, Auction and Sale Hearing Notice upon each of the service parties identified in subparagraphs a. and c. of this paragraph.

c.    On or before the Mailing Deadline, New Century (or its agent) shall serve, by overnight courier, electronic mail or same-day messenger delivery, the Notice of Assumption and Assignment upon all known non-debtor parties to the Assumed Contracts.

d.    On the Mailing Deadline, or as soon as practicable thereafter, New Century will publish the Notice of Bid Deadline, Auction, and Sale Hearing in The Wall Street Journal (National Edition).

15.    The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the Debtors' assumption and assignment of any Assumed Contract, or the consummation and performance of the Sale as contemplated by the terms of the APA, or alternatively by the terms of the respective APA Markup with the Successful Bidder (including the transfer free and clear of all liens, claims, encumbrances, and interests (other than the Surviving Permitted Encumbrances (as such term is defined in the APA) of the Servicing Business transferred as part of the sale in the case of the assets of the Debtors).

16.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order. Each of the Debtors is hereby authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

17.    Notwithstanding the potential applicability of Bankruptcy Rule 6004(h) or other rule, this Bidding Procedures Order shall not be stayed for ten (10) days after the entry hereof and shall be effective and enforceable immediately upon signature hereof.

18.    Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley") asserts that certain residual interests (the "Morgan Stanley Residual Interests") in certain securitization trusts (the "NC Securitization Trusts") relating to the New Century Portfolio-Related Assets (as such

CHIDB04 13377074 3  19-Apr-07 12:56

term is defined in the APA) were sold by the Debtors to Morgan Stanley pursuant to that certain Master Repurchase Agreement dated as of December 12, 2005, as amended (the "Morgan Stanley Agreement"). The Purchased Assets include the servicing rights related to the mortgage loans owned by the NC Securitization Trusts. In the event that:

(a)    Morgan Stanley and the Debtors agree to an arrangement whereby the Morgan Stanley Residual Interests are to be sold at an auction (the "MS Residual Interests Auction"),

(b)    on or before April 30, 2007, this Court has entered an order (the "MS Residual Interests Auction Order") providing for the auction of the MS Residual Interests so that an auction of the MS Residual Interests can be coordinated with, and shall occur on the same day as, the Auction,

(c)    on or before the Bid Deadline, the Debtors have received a Qualified Topping Bid in accordance with the provisions of this Bidding Procedures Order (it being understood that a bid that is expressly conditioned upon such bidder's being declared the successful bidder at the conclusion of both Auctions for both the Morgan Stanley Residual Interests and the Purchased Assets (as defined in the APA) by virtue of having made the highest and best bid for each of the Morgan Stanley Residual Interests and the Purchased Assets, but that otherwise satisfies the definition of Qualified Topping Bid, shall constitute a Qualified Topping Bid for the purposes of this paragraph 18) and such bid has not been subsequently withdrawn or disqualified, and

(d)    this Bidding Procedures Order has not been amended or modified, including, without limitation, as to (i) the definition of Qualified Topping Bid (as modified by the provisions of this paragraph 18) or (ii) the established May 10, May 16,

12

and May 21, 2007 dates/deadlines, respectively, for the Bid Deadline, the Auction (if one

is to be held pursuant to the provisions of this Order) and the Sale Hearing, without the

written consent of Carrington,

then, the Bidding Procedures set forth in this Bidding Procedures Order shall be modified as set

forth in the balance of this paragraph 18. The MS Residual Interests Auction and the Auction

shall be held at the same place, with the Auction being conducted and completed first and the

MS Residual Interests Auction being conducted and completed second. The Auction shall be

closed before the start of the MS Residual Interests Auction and may not and shall not be re-

opened. The Sale Hearing shall then be conducted on May 21, 2007 as a hearing on the approval

of the Purchased Assets. Any creditor or other party in interest (including Carrington) may

assert any objection under applicable law as to the proposed sale of the Purchased Assets,

including, without limitation, any objection based on the failure to comply with the applicable

provisions of this Bidding Procedures Order. After the conclusion of the Sale Hearing, and if

appropriate, a hearing may be held on the approval of the sale of the MS Residual Interests.

Nothing in this Order shall obligate Morgan Stanley to agree to any procedures for the sale of the

MS Residual Interests. Without limiting the generality of any of the foregoing, in no event shall

the Debtors be authorized to declare a bid on the Purchased Assets to be the Successful Bid

unless such bid, standing alone, is the highest and best bid received at the Auction for the

Purchased Assets.

Dated:    April 19, 2007
          Wilmington, Delaware

4-20-07

UNITED STATES BANKRUPTCY JUDGE

13