**Schedule 1**

**Bidding Procedures**

## Bidding Procedures

1.  Set forth below are procedures (the "Bidding Procedures") to be used by New Century Financial Corporation ("New Century" and, together with its affiliated debtors and debtors-in-possession, the "Debtors"), for the sale of the certain of the Debtors' assets, including certain of the Debtors' mortgage service rights, all as more fully described in the Asset Purchase Agreement discussed below (the "Servicing Business"). The sale will be subject to the opportunity for competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.  By agreement dated as of April 2, 2007, New Century and certain of the other Debtors entered into an Asset Purchase Agreement (as amended and restated as of April 19, 2007, the "APA") with Carrington Capital Management, LLC and Carrington Mortgage Services, LLC (collectively, "Carrington"), pursuant to which Carrington agreed to purchase the Purchased Assets (as defined in the APA) for (i) the Purchase Price set forth in Section 4.1 thereof, subject to adjustment as set forth in the APA and (ii) the assumption of the Assumed Liabilities (as defined in the APA). Each subsequent reference in these Bidding Procedures to the "Servicing Business" or the "Servicing Business Assets" in relation Carrington or to the APA shall be deemed to be reference to the Purchased Assets (as defined in the APA.)

3.  On April 4, 2007, the Debtors filed a motion (as modified, the "Motion") pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code seeking approval of, among other things, (i) the sale of the Servicing Business, pursuant to the APA, free and clear of all liens, claims, and encumbrances, (ii) the institution of Bidding Procedures, including a break-up fee of $2,000,000 (as such term is defined in the APA, the "Break-Up Fee") and expense reimbursement in an amount not to exceed $2,000,000.00 in the aggregate (as such term is defined in the APA, "Expense Reimbursement") payable to Carrington in certain circumstances, and (iii) the assumption of and assignment of certain executory contracts and unexpired leases of the Debtors in connection with and as part of such sale. On April 19, 2007, the Bankruptcy Court entered an order approving the Bidding Procedures (the "Bidding Procedures Order"). The Bidding Procedures Order also provided that the Bankruptcy Court will conduct a hearing commencing either on May 18, 2007 at 10:00 a.m. (prevailing Eastern Time) (in the event that New Century does not receive at least one Qualified Topping Bid on or before the Bid Deadline) or on May 21, 2007 at 10:00 a.m. (prevailing Eastern Time) (if the Debtors timely receive such a Qualified Topping Bid from a Qualified Bidder) to approve the sale of the Servicing Business.

| |
|---|
| **Assets to be Sold** |
| 4.   The Debtors are offering the Servicing Business for sale. |
| 5.   Subject to Carrington's rights under the APA, the Debtors retain all rights to the Servicing Business that are not subject to a bid accepted by New Century, on behalf of the Debtors, and approved by the Bankruptcy Court at the Sale Hearing. |
| **Indications of Interest** |
| 6.   New Century, on behalf of the Debtors, shall send a form of confidentiality agreement (the "Confidentiality Agreement"), which, in the aggregate, shall be no less favorable to the Debtors than the confidentiality agreement with Carrington, to any person indicating an interest in participating in the auction for the Servicing Business (the "Auction") and requesting information about the Servicing Business who has not previously signed a confidentiality agreement. |
| **Selection of Qualified Bidders** |
| 7.   Each potential purchaser (or purchaser group) shall complete and execute the Confidentiality Agreement and provide New Century with (i) evidence of its financial ability to purchase the Servicing Business and (ii) such other information New Century reasonably requests to demonstrate the potential purchaser's ability to purchase the Servicing Business and timely consummate its bid. No later than May 3, 2007, New Century and its professionals will qualify potential purchasers who may continue with the bidding process (the "Bidding Process"). New Century shall notify potential purchasers who have returned an executed Confidentiality Agreement, who have satisfactory financial qualifications, and who New Century has selected, in its sole discretion, as qualified bidders (the "Qualified Bidders"). Any person who wishes to participate in the Bidding Process with respect to the assets that comprise the Servicing Business (the "Servicing Business Assets") must be a Qualified Bidder with respect to the relevant Servicing Business Assets. New Century and its representatives shall not be obligated to furnish any information of any kind whatsoever relating to the Servicing Business to any person who is not a Qualified Bidder. Except as set forth in paragraphs 19, 22, 23, 24, 27 and 28, New Century, in its sole discretion, may amend the rules set forth herein for the Bidding Process or adopt such other rules for the Bidding Process that will better promote the goals of the Bidding Process. Carrington shall be deemed a Qualified Bidder. |

CHDB04 13377074.3  19-Apr-07 12:56

| **Form of Asset Purchase Agreement and Due Diligence** |
|---|

| 8. | New Century shall send to each Qualified Bidder a copy of the APA. Each Qualified Bidder submitting a bid shall produce a markup of the APA (each, a "APA Markup") containing the terms of its bid, including the amount of and any other terms of consideration offered for the Servicing Business Assets to be purchased. New Century will provide Qualified Bidders with reasonable access to the Debtors' books, records, and executives for the purpose of conducting due diligence. Any interested purchaser of the Servicing Business should contact Evan Geller, Lazard Frères & Co, LLC, 212-632-6574, evan.geller@lazard.com, to express its interest in acquiring the Servicing Business, or to seek to become a Qualified Bidder and, thereafter, to request information in connection with due diligence, including access to the electronic dataroom established by the Debtors. |
|---|---|

| **Submission of Bids/Deposit** |
|---|

| 9. | All bids must be in writing and accompanied by an executed APA Markup. Each Qualified Bidder must submit a "clean," executed version of the APA Markup together with a blackline, which reflects the proposed changes to the terms and conditions of the APA. **IF ANY BID IS CONDITIONED ON THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THEN SUCH BIDDER SHALL BE REQUIRED TO PROVIDE EVIDENCE OF ITS ABILITY TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF SUCH CONTRACTS OR LEASES ALONG WITH THE BID (AN "ADEQUATE ASSURANCE PACKAGE").** In addition, in connection with the intended assumption of any servicing agreement, each Qualified Bidder shall provide, on or before the Bid Deadline, to the counterparty to such agreement such information as such Qualified Bidder believes will satisfy the adequate assurances of future performance standard and shall further provide such counterparty with such additional information as such counterparty shall reasonably request. Except as otherwise set forth in the APA with respect to Carrington, all APA Markups shall be accompanied by a good faith deposit (the "Good Faith Deposit") equal to $10,000,000 in the form of a certified check or wire transfer payable to an account designated by New Century. All APA Markups and Adequate Assurance Packages must be submitted in writing so that they are actually received by no later than May 10, 2007 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline") by New Century with copies to the follow parties: (i) O'Melveny & Myers LLP, 275 Battery Street, Suite 2600, San Francisco, CA 94111, Attention: Suzzanne S. Uhland, Esq. and Brophy Christensen, Esq., and O'Melveny & Myers, LLP, 400 So. Hope Street, Los Angeles, CA 90071, Attention: Ben H. Logan, Esq. (attorneys for the Debtors); (ii) Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, DE 19899, Attention: Mark D. Collins, Esq. (attorneys for the Debtors), (iii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attention: Mark T. Power, Esq. and Blank Rome, LLP, Chase Manhattan Centre, 1201 Market Street, Suite 800, Wilmington, DE 19801, Attention: Bonnie Glantz Fatell, Esq. (attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee")); |
|---|---|

3

(iv) Mayer, Brown, Rowe & Maw LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attention: Thomas S. Kiriakos, Esq. and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801, Attention: Steven K. Kortanek, Esq. (attorneys for Carrington).

10. By submitting a signed Stalking Horse Markup with a Good Faith Deposit (or in the case of Carrington, the APA and Deposit Amount), a Qualified Bidder irrevocably offers, for a period of 3 business days following the Sale Hearing, to purchase the Servicing Business pursuant to the terms of the Qualified Bidder's APA or APA Markup if such Qualified Bidder's bid was selected the next highest or otherwise best Qualified Bid (the "Runner-Up Bid") at the Sale Hearing.

11. Bids must: (i) specify the portion of consideration to be paid in cash and the portion to be paid in any other form of value and be comprised of at least the same amounts of cash or cash equivalents (which, for the avoidance of doubt, includes, among other things, marketable securities) as the Purchase Price; (ii) if any consideration is to be provided in a form other than cash (or the form of non-cash consideration set forth in section 4.1(b) of the APA), provide such bidder's opinion as to such consideration's cash equivalent amount and the methodology used in deriving such amount, to permit New Century to assess accurately the value of such consideration; (iii) provide sufficient indicia that such prospective bidder or representative is legally empowered, by power of attorney or otherwise, and financially capable to (A) bid on behalf of the bidder, and (B) to complete and sign, on behalf of the bidder, a binding and enforceable asset purchase agreement; (iv) identify with particularity each and every executory contract or unexpired lease the assumption and assignment of which is a condition to closing; (v) provide, at a minimum, for aggregate consideration (including cash and non-cash consideration) to the Sellers' estates of at least the sum of (A) the Purchase Price (as such term is defined in the APA), plus (B) $5,000,000 (the "Minimum Bid Amount"); and (vi) not be (A) subject to a condition based on the outcome of due diligence, or similar review, or corporate or other approval; (B) subject to procurement of financing or funding of financing; (C) subject to conditions, representations or terms unacceptable to the Sellers in their sole and absolute discretion or (D) subject to the bidder receiving any break-up fee, termination fee, expense reimbursement or similar type of buyer protection payment. In determining whether a bid satisfies the Minimum Bid Amount, the Debtors shall take into account any increase or decrease in liabilities, including any increased administrative costs to the Debtors' estate from any contemplated partial or complete shutdown of the Servicing Platform as a result of such bid, to the Debtors' estate based upon any proposed modifications of the terms of the APA. Carrington and the Committee reserve the right to contest the Debtors' estimation of the value of such bid, including whether it constitutes a Minimum Bid Amount in light of such anticipated increased liabilities.

12. A bid that New Century determines in its sole discretion meets all the foregoing requirements constitutes a "Qualified Topping Bid." Any bid that does not comply with the foregoing requirements, New Century may not consider.

13. Except as set forth herein, all bids shall be kept confidential with access restricted to the Debtors, the Creditors' Committee, and their respective professionals. New Century may request additional information from a bidder to evaluate the bidder's ability to consummate a transaction and to fulfill its obligations in connection therewith, or to clarify any issues related to the foregoing, and such bidder shall be obligated to provide such information as a precondition to participating further in the Auction.

**"As Is, Where Is"**

14. The sale of any Servicing Business Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estate, except to the extent set forth in the APA or in the Debtors' agreement(s) with the Successful Bidder(s). Except as otherwise provided in the APA, all of the right, title and interest in and to the Servicing Business Assets of the Debtors to be acquired shall be sold free and clear, to the maximum extent permitted by applicable law, of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Transferred Liens"), such Transferred Liens to attach to the net proceeds of the sale of such assets (except that the payment in full of the Servicer Advance Facility (as defined in the APA) or the portion of the DIP Loan facility that financed servicer advances at closing is a condition of the APA), subject to any claim of Carrington to such proceeds for payment of the Break-up Fee and Expense Reimbursement (which shall be a prior and superior claim to such proceeds, to the extent such amounts have not yet been paid).

15. Each bidder, other than Carrington (whose acknowledgements and representations are contained in the APA), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the relevant Servicing Business Assets to be acquired and to conduct any and all due diligence regarding the relevant Servicing Business Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Servicing Business Assets, or the completeness of any information provided in connection with the Bidding Process, in each case except as expressly stated in the APA or APA Markup, as applicable.

CHDB04 133770714.3  19 Apr 07 12:56

**Auction**

16. If at least one Qualified Topping Bid with respect to the Servicing Business Assets has been received from at least one Qualified Bidder other than Carrington, and if New Century reasonably determines that such Qualified Topping Bid constitutes a higher and better bid for the Servicing Business, New Century shall conduct the Auction with respect to the Servicing Business. The Auction shall take place on May 16, 2007 at such time to be announced by the Debtors to all Qualified Bidders who submitted Qualified Topping Bids, at the offices of O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York, 10036, or other place as New Century shall notify to all Qualified Bidders who have submitted a Qualified Topping Bid with respect to the Servicing Business and expressed their intent to participate in the Auction, as set forth above. All Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative. Only Carrington and any bidders who have made a Qualified Topping Bid shall be entitled to make further bids for the relevant Servicing Business at the Auction. No later than two (2) business days prior to the Auction, New Century shall provide copies of the Qualified Topping Bid it considers the highest and otherwise best Qualified Topping Bid to Carrington and any such bidders. No later than one (1) business day prior to the Auction, each such bidder must inform New Century whether it intends to participate in the Auction.

17. Subsequent overbids in excess of the Minimum Bid Amount (or such amount equal to the highest and best Qualified Topping Bid in excess of the Minimum Bid Amount) shall be in an amount of at least $500,000 in excess of the prior bid.

18. The Debtors will take the amount of the Break-up Fee and the maximum Expense Reimbursement into account in determining the highest and/or best bid in each round of bidding and, in the event Carrington is the Successful Bidder (defined below) as a result of a subsequent bid made at the Auction, Carrington shall be entitled to credit the amount of the Break-Up Fee and the maximum Expense Reimbursement against the purchase price of such subsequent bid payable at Closing. No matching bids will be permitted.

19. Notwithstanding anything contained herein to the contrary, to the extent that the Auction is conducted, all bids at the Auction shall be made in a room with the opportunity for all Qualified Bidders to be present; provided that the Debtors will be free to meet separately with any Qualified Bidder for such purposes as seeking clarification of a bid.

20. Before the start of the Auction, New Century shall inform the Qualified Bidders entitled to participate and who have elected to participate in the Auction of the manner in which the Auction will be conducted. Notwithstanding anything contained herein to the contrary, to the extent that an Auction is conducted, during the course of the Auction, New Century shall inform each participant which Qualified Bid then reflects the highest or otherwise best offer.

6

21. After the conclusion of the Auction, New Century, in consultation with its financial and other advisors, shall determine, in good faith, the highest and otherwise best offer for the Servicing Business (to the extent such bid(s) is acceptable to New Century in its reasonable discretion, the "Successful Bid" and, the bidder making such bid, the "Successful Bidder"). As set forth below, New Century has scheduled the Sale Hearing on a date after the Bid Deadline and, if applicable, after the Auction, whereupon New Century shall present the Successful Bid to the Bankruptcy Court for approval.

**No Auction if a Higher and Better Qualified Bid is Not Received; APA to Then be Submitted for Approval at the Sale Hearing**

22. In the event that New Century does not receive, on or before the Bid Deadline, a Qualified Topping Bid that New Century reasonably considers to be a higher and/or better bid for the Servicing Business than that represented by the APA, New Century shall not conduct the Auction, but instead shall proceed to the Sale Hearing on May 18, 2007 at 10:00 a.m. and shall seek approval at the Sale Hearing of the sale of the Servicing Business to Carrington.

**The Sale Hearing**

23. The Sale Hearing is presently scheduled to commence either on May 18, 2007 at 10:00 a.m. (prevailing Eastern Time) (in the event that New Century does not receive at least one Qualified Topping Bid on or before the Bid Deadline) or on May 21, 2007 at 10:00 a.m. prevailing Eastern Time) (if the Debtors timely receive such a Qualified Topping Bid from a Qualified Bidder) before the Honorable Kevin J. Carey, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the District of Delaware, Room #5, 824 North Market Street, Wilmington, Delaware 19801.

24. Following the Sale Hearing approving the sale of the Servicing Business to Carrington or alternatively, the Servicing Business to a Successful Bidder, if Carrington or any such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of Carrington or such Successful Bidder, the Runner-Up Bid, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid with respect to the relevant Servicing Business Assets and New Century shall be authorized but not obligated (unless Carrington proves to be the Runner-Up and elects to proceed to closing) to effectuate such sale without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by Carrington or the Successful Bidder, Carrington's or the Successful Bidder's Deposit Amount or Good Faith Deposit, as the case may be, shall be forfeited to New Century and New Century specifically reserves the right to pursue any and all remedies against the breaching bidder subject, with respect to Carrington, to the provisions of the APA.

CHDB04 13377074.3  19-Apr-07 17:56

| **Closing** |
|---|
| 25.    The closing of the sale of the Servicing Business (the "Closing Date") to the Successful Bidder(s) shall occur in accordance with the terms of the APA Markup and/or, if Carrington is the Successful Bidder in accordance with the terms of the APA (including any amendments or modifications), or if there is no Auction and if the transaction set forth in the APA is approved at the Sale Hearing, pursuant to the terms of the APA. |

| **Creditors' Committee Participation** |
|---|
| 26.    New Century shall consult with the Creditors' Committee on a timely basis concerning all acts, decisions or determinations that New Century makes, or proposes to make, pursuant to or in connection with financial qualifications of bidders, or valuation of bids or anything else under these Bidding Procedures and the transactions contemplated hereby. In the event that New Century and the Creditors' Committee disagree as to the appropriate resolution of any such matter, New Century shall have the authority to decide the matter and the Committee reserves the right to object to such decision, with the Bankruptcy Court to have jurisdiction to hear and resolve any such dispute. |

CHDB04 13377074.3  19-Apr-07 12:56

**MS Residual Interests Auction**

27. Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley") asserts that certain residual interests (the "Morgan Stanley Residual Interests") in certain securitization trusts (the "NC Securitization Trusts") relating to the New Century Portfolio-Related Assets (as such term is defined in the APA) were sold by the Debtors to Morgan Stanley pursuant to that certain Master Repurchase Agreement dated as of December 12, 2005, as amended (the "Morgan Stanley Agreement"). The Purchased Assets include the servicing rights related to the mortgage loans owned by the NC Securitization Trusts. In the event that:

      (a)    Morgan Stanley and the Debtors agree to an arrangement whereby the Morgan Stanley Residual Interests are to be sold at an auction (the "MS Residual Interests Auction"),

      (b)    on or before April 30, 2007, this Court has entered an order (the "MS Residual Interests Auction Order") providing for the auction of the MS Residual Interests so that an auction of the MS Residual Interests can be coordinated with, and shall occur on the same day as, the Auction,

      (c)    on or before the Bid Deadline, the Debtors have received a Qualified Topping Bid in accordance with the provisions of this Bidding Procedures Order (it being understood that a bid that is expressly conditioned upon such bidder's being declared the successful bidder at the conclusion of both Auctions for both the Morgan Stanley Residual Interests and the Purchased Assets (as defined in the APA) by virtue of having made the highest and best bid for each of the Morgan Stanley Residual Interests and the Purchased Assets, but that otherwise satisfies the definition of Qualified Topping Bid, shall constitute a Qualified Topping Bid for the purposes of this paragraph 27) and such bid has not been subsequently withdrawn or disqualified, and

      (d)    this Bidding Procedures Order has not been amended or modified, including, without limitation, as to (i) the definition of Qualified Topping Bid (as modified by the provisions of this paragraph 18) or (ii) the established May 10, May 16, and May 21, 2007 dates/deadlines, respectively, for the Bid Deadline, the Auction (if one is to be held pursuant to the provisions of this Order) and the Sale Hearing, without the written consent of Carrington,

then, the Bidding Procedures set forth in this Bidding Procedures Order shall be modified as set forth in paragraph 28.

28. In the event the requirements in the preceding paragraph are satisfied, the MS Residual Interests sale and the Auction shall be held at the same place, with the Auction being conducted and completed first and the MS Residual Interests Auction being conducted and completed second. The Auction shall be closed before the start of the MS Residual Interests Auction and may not and shall not be re-opened. The Sale Hearing shall then be conducted on May 21, 2007 as a hearing on the approval of the Purchased Assets. Any creditor or other party in interest (including Carrington) may assert any objection under applicable law as to the proposed sale of the Purchased Assets, including, without limitation, any objection based on the failure to comply with the applicable provisions of this Bidding Procedures Order. After the conclusion of the Sale Hearing and, if appropriate, a hearing may be held on the approval of the sale of the MS Residual

9

Interests. Nothing in this Order shall obligate Morgan Stanley to agree to any procedures for the sale of the MS Residual Interests. Without limiting the generality of any of the foregoing, in no event shall the Debtors be authorized to declare a bid on the Purchased Assets to be the Successful Bid unless such bid, standing alone, is the highest and best bid received at the Auction for the Purchased Assets.

10