IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, <u>et al.</u>, | : | |
| | : | Jointly Administered |
| | : | |
| | : | Objection deadline: 4/23/07 @ 4:00 p.m. |
| | : | Hearing date: 4/24/07 @ 1:30 p.m. |
| Debtors. | : | |
| | : | |

**OBJECTION OF GOLDMAN SACHS MORTGAGE COMPANY TO THE
SALE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT
TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002 AND 6004 FOR AN ORDER AUTHORIZING
THE ACCESS SALE AND GRANTING RELATED RELIEF (D.I. 231)**

Goldman Sachs Mortgage Company ("GSMC"), by and through its undersigned counsel, hereby files this objection to the Motion of New Century TRS Holdings, Inc. ("New Century TRS"), New Century Financial Corporation ("NCF") and their direct and indirect subsidiaries, debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), for an order authorizing the Access sale and granting similar relief (D.I. 231) (the "Sale Motion"). In support of its objection, GSMC respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. GSMC objects to the relief sought in the Sale Motion as overbroad and beyond the Court's jurisdiction. GSMC takes no position regarding the soundness of New Century Warehouse Corporation's ("Warehouse") pursuit of the sale transaction at this time. As a non-debtor, Warehouse may exercise its business judgment to sell some or all of its assets to Access Holdings Corporation ("Access Holdings") or other buyers, subject to general non-

bankruptcy law standards. That said, it is beyond the scope of this Court's jurisdiction to approve the proposed sale agreement and transactions thereunder, and to make protective findings in support of the proposed sale. The Debtors cannot invoke this Court's jurisdiction to approve the actions of a non-debtor affiliate through findings reserved solely for debtor transactions, including that:

- the terms of the proposed sale agreement are fair and reasonable and provide fair value for the acquired assets,

- the transfer of the assets will be a "legal, valid and effective transfer" and will vest Access Holdings with all "right, title and interest" of Warehouse to the assets,

- Access Holdings is a good faith buyer entitled to the protections afforded by Bankruptcy Code section 363(m),

- negotiations have been fair and arms' length, and no party has engaged in conduct that would cause the sale to be avoided under Bankruptcy Code section 363(n),

- the transaction contemplated by the Sale Motion does not dictate the terms of any future chapter 11 plan, impermissibly restrict the rights of creditors, require creditors to vote for any plan, or attempt to circumvent the disclosure requirements of chapter 11, and

- all "interested parties and entities" have been given a reasonable opportunity to object to the Sale Motion approving the sale.

The Debtors can properly seek an order under section 363 approving their decision to support the sale by that non-debtor affiliate. But this Court has the jurisdiction only

to make the type of broad rulings sought on the propriety of the seller's conduct (and that of proposed purchaser) for companies that have accepted the full jurisdiction of the Court through the filing of a bankruptcy case. The sale of certain assets by one non-debtor to another non-debtor is simply outside of this Court's purview. The mere fact that Access Holdings has imposed Bankruptcy Court approval of the transaction as a condition to the sale does not change this conclusion.

The Debtors' improper attempt to expand the jurisdiction of this Court to approve the proposed sale of non-debtor assets is particularly problematic given that it is not clear whether and how the proposed sale affects GSMC's rights against Warehouse or the Debtors. Although the Debtors state in the Sale Motion that the proposed sale does not affect the claims or rights between Warehouse or the Debtors, on the one hand, and GSMC, on the other hand, Warehouse has failed to respond to GSMC's repeated requests for information regarding the location of certain mortgage loans that GSMC owns, which mortgage loans Warehouse has failed to deliver to GSMC pursuant to a Warehouse Repurchase Agreement (as defined below) between Warehouse and GSMC.

**BACKGROUND**

2.  On April 2, 2007 (the "Petition Date"), the Debtors, including New Century TRS and NCF, filed their petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Warehouse did not file a petition for relief, and is currently not a debtor.

3.  On April 13, 2007, the Debtors filed the Sale Motion. The Sale Motion, brought pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, facially purports to seek an order (1) authorizing New Century TRS to cause Warehouse to enter into and to perform under a proposed Asset

Purchase Agreement by and among Warehouse and Access Holdings, (2) approving the form and manner of notice of the sale under the Asset Purchase Agreement, (3) waiving the 10-day stay under Federal Rule of Bankruptcy Procedure 6004(h), and (4) granting other relief as the Court deems necessary and appropriate. In fact, the proposed order also contemplates that the Court make several findings beyond those necessary to authorize New Century TRS to cause its subsidiary to enter into the proposed agreement. See Sale Motion Exhibit 2 at 3 (Debtors' Proposed Order).

        4.        According to the terms of the proposed Asset Purchase Agreement, Access Holdings would acquire substantially all of the assets of Warehouse used in its business, and assume certain warehouse loan facilities and other related liabilities. The Asset Purchase Agreement excludes from the definition of Pledged Loans to be transferred to Access Holdings "any Loan financed, pledged, sold or assigned in connection with any warehouse loan facility or similar funding arrangement between Seller and Goldman Sachs."[1] Sale Motion Exhibit 1 at 5 (Asset Purchase Agreement).

        5.        According to the Sale Motion, Access Holdings is a corporate shell recently created by David Fleig, the Warehouse principal, for the sole purpose of acquiring the assets of Warehouse. Access Holdings has no affiliation with or corporate relation to any of the Debtors. See Sale Motion, ¶ 15.

        6.        Pursuant to the Asset Purchase Agreement, Access Holdings would pay Warehouse 60% of the net proceeds realized on the sale of the Pledged Loans it acquires. Additionally, Access Holding would pay New Century $76,058.44 in cash. See Sale Motion, ¶¶ 16-17.

---

[1] Notably, the Debtors do not specify which mortgage loans purportedly constitute such Loans. Sale Motion, ¶ 15 n.5.

## GSMC'S CLAIMS AGAINST WAREHOUSE[2]

7. GSMC financed loans originated or purchased by Warehouse through a Warehouse Repurchase Agreement, dated as of February 15, 2006 (as amended, the "Warehouse Repurchase Agreement"). Pursuant to the Warehouse Repurchase Agreement GSMC purchased mortgage loans from Warehouse, and Warehouse simultaneously agreed to repurchase the mortgage loans at a future date. NCF guaranteed Warehouse's repurchase obligation.

8. Under the terms of the Warehouse Repurchase Agreement, if the value of the mortgage loans subject to the Warehouse Repurchase Agreement fell, GSMC had the right to make a margin call, whereby Warehouse would be required to deliver cash to GSMC to account for the drop in the value of the mortgage loans.

9. On March 8, 2007, after Warehouse failed to meet a margin call, GSMC declared Warehouse in default under the Warehouse Repurchase Agreement, and accelerated the repurchase obligation under the Warehouse Repurchase Agreement and demanded immediate repurchase of the mortgage loans subject to the Warehouse Repurchase Agreement, all in accordance with its contractual rights under the Warehouse Repurchase Agreement.

10. After Warehouse failed to repurchase the loans, GSMC credited the market value of the loans to the amounts owing under the Warehouse Repurchase Agreement. Under the terms of the Warehouse Repurchase Agreement, GSMC was not obligated to account for any excess of the market value over amounts owing under the Warehouse Repurchase Agreement. To the extent GSMC was so obligated, it applied, in accordance with the terms of the Warehouse Repurchase Agreement, such surplus to amounts owed by NC Capital Corporation (a debtor) under a Purchase Price and Terms Agreement dated September 14, 2006.

---

[2] This recitation is provided for background purposes only. GSMC acknowledges that Warehouse and/or the Debtors may disagree with the statements herein, and agrees that such "open issues" are beyond the scope of this Sale Motion. See Sale Motion ¶ 9.

11.     After these actions were taken, GSMC determined that Warehouse had failed to deliver to GSMC documents for certain loans previously sold to GSMC pursuant to the Warehouse Repurchase Agreement. In particular, twelve "wet-ink" mortgage loans previously subject to the Warehouse Repurchase Agreement have not been delivered to GSMC (the "Wet Ink Loans"). GSMC also has received conflicting information as to whether Warehouse is in possession of two additional mortgage loans owned by GSMC that were previously delivered to New Century Mortgage Corporation pursuant to a "bailee letter" (the "Delivered Mortgage Loans"). (A "bailee letter" obligates the recipient – a prospective buyer – to hold the loans for the sender of the letter until it pays the purchase price to such sender.) Warehouse and its counsel have not responded to GSMC's numerous requests for the return of the Wet Ink Loans and Delivered Mortgage Loans (or the proceeds of such loans, if they were sold). Warehouse also has not confirmed whether it possesses these mortgage loans and, if such loans have been sold, that Warehouse holds any proceeds of such sales not already sent to GSMC in trust for GSMC.

## ARGUMENT

### A.     The Court Lacks Jurisdiction to Approve the Asset Sale

12.     For purposes of this objection, GSMC takes no position as to whether Warehouse may lawfully sell its assets, as to whether such a sale is in the best interests of Warehouse or its creditors, or as to whether such a sale is a proper exercise of Warehouse's business judgment under non-bankruptcy creditors' rights laws and other applicable law. GSMC does object, however, to the sale of Warehouse's assets under the imprimatur of the Court, because both Warehouse and the proposed buyer (a shell corporation formed by Warehouse's principal) are non-debtors. Quite simply, the Court lacks jurisdiction to approve the sale in the manner the Sale Motion seeks. Moreover, as discussed in Point B below, GSMC is particularly

6

troubled by the filing of the Sale Motion given that Warehouse has failed repeatedly to give GSMC information necessary to confirm Debtors' representations that the proposed sale does not affect any of GSMC's mortgage loans or otherwise affect GSMC's rights against Warehouse or the Debtors.

13.     The Debtors seek approval of the proposed sale pursuant to sections 105 and 363 of the Bankruptcy Code. See Sale Motion ¶ 2. Section 363(b)(1) provides that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1) (emphasis added). The Debtors concede that the assets subject to the proposed sale transaction "are assets of a non-debtor subsidiary and are thus not property of the estates . . ." Sale Motion ¶ 28 (emphasis added). Despite this fact, the Debtors purport to seek authorization "out of an abundance of caution because the Seller is a wholly owned subsidiary of a Debtor." Id. GSMC appreciates that the Debtors are proceeding cautiously in filing the Sale Motion, and does not oppose the entry of a narrowly tailored order that holds that from the perspective of the Debtors there is a sound business reason to allow their subsidiary to pursue the sale. That said, Warehouse and the proposed purchaser are not entitled to findings in their favor under section 363 or any other section of the Bankruptcy Code.[3]

14.     Precedent compels this conclusion. In a case similarly involving the sale of non-debtor assets, a bankruptcy court rejected the attempt by a non-debtor affiliate of debtors to obtain court approval for a sale of its property to an unaffiliated non-debtor. See In re Murchison, 54 B.R. 721 (Bankr. N.D. Tex. 1985). Murchison involved two debtors, Clinton W. Murchison and Tecon Realty Corporation, who owned or controlled a complex network of companies. Texas Plaza Partners, one such entity indirectly affiliated with the debtors and which

---

[3] Section 105 of the Bankruptcy Code is of no help to Warehouse or Access Holdings in this regard, as section 105 can only be used as a basis to enter an order necessary or appropriate to carry out other provisions of the Bankruptcy Code, not as an independent basis for relief. See 11 U.S.C. § 105(a).

7

had not filed for bankruptcy, sought bankruptcy court approval for a sale of property to Belgian American Investments, a non-debtor lacking any affiliation with the debtors, and a finding as to the fairness of the proposed price.

15. The <u>Murchison</u> court was confronted with the threshold question "whether this Court has jurisdiction over the sale of property owned by a *nondebtor entity* in which a debtor has a remote and fractional partnership or shareholder interest." <u>Id.</u> at 724 (emphasis in original). In terms that compel rejection of the Sale Motion here, the court concluded:

> One may not bring a proceeding in a bankruptcy court to dispose of assets which are not property of any estate and which are being sold and purchased by nondebtors, simply because the selling entity is a corporate relative of a debtor. The entity holding title to the property in question here, and the entity seeking to buy that property, are both nondebtors. The property is not an asset of either the [debtors'] estate. <u>Accordingly, any attempt by this Court to exercise jurisdiction over that property, or approve the sale thereof, is not voidable, but void</u>.

<u>Id.</u> at 728 (emphasis added).

16. The <u>Murchison</u> court further explained that the debtor did not have an interest in the property, but rather held only "an equitable interest in the entities which owned other entities, and so on, which ultimately owned an equitable interest in the partnership holding title to the property." <u>Id.</u> at 725. Indeed, where the debtor is a mere shareholder (even a shareholder controlling one-hundred percent of the non-debtor's stock), "[the debtor] cannot claim a property right in specific assets of a subsidiary." <u>Id.</u> at 728. The court further concluded that because there is "no authorization in § 363, or elsewhere, for a debtor in possession or trustee to sell property in which the estate has no interest, it must be concluded that the application [for approval of the sale] is not based upon any provision in the Bankruptcy Code." <u>Id.</u> at 725.

17. The holding in <u>Murchison</u> is directly applicable to this case. As mere shareholders of Warehouse, the Debtors lack proprietary interests in Warehouse's assets that

would serve as the basis for the Court to exercise jurisdiction over the proposed transaction and enter the proposed order. The fact that Warehouse is a wholly-owned subsidiary of New Century TRS does not change the result that the Court lacks jurisdiction to make the broad proposed findings sought under section 363 in furtherance of the sale. The Debtors concede as much in acknowledging the assets being sold are not property of their estates. The fact that in Murchison the sale motion was filed by the non-debtor seller rather than its debtor affiliates is also a distinction without a difference, as it is the Court's lack of jurisdiction over the non-debtor assets, not the non-debtor itself, that would make any such order void. As the Murchison court concluded, "[i]t is not the purpose of this Court to assuage the fears and calm the apprehensions of those who seek to sell or buy assets held by an entity which, albeit related to a debtor, is not itself in bankruptcy." Id. at 724.

       18.    It is unsurprising that in other contexts, courts repeatedly have similarly concluded that they lack jurisdiction to grant relief with respect to assets that are not property of a debtor's estate. See, e.g., In re Mariner Post-Acute Network, Inc., 267 B.R. 46, 60 (Bankr. D. Del. 2001) ("[T]he issue is whether we could have (and did) transfer property in which the Debtors had no equitable interest to another. The answer . . . is no."); see also Rutherford Hospital, Inc. v. RNH Partnership, 168 F.3d 693, 699 (4th Cir. 1999) ("[A] bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate."); In re Funneman, 155 B.R. 197, 200 (Bankr. S.D. Ill. 1993) ("[T]he Court has no jurisdiction over specific partnership property when a partner – rather than the partnership itself – is in bankruptcy."); Maryland Nat'l Indus. Fin. Corp. v. Gold Dust Coal Co., 49 B.R. 288 (Bankr. N.D. Ill. 1985)

(finding that the bankruptcy court does not have core jurisdiction over assets of nondebtor wholly owned subsidiary).[4]

19.   To be clear, GSMC does not take any position on the proposed sale transaction.  GSMC takes no position regarding whether the proposed sale – an expedited sale of substantially all the assets of Warehouse (other than loans related to Warehouse's Warehouse Repurchase Agreement with GSMC) to a shell corporation owned by a Warehouse insider – is in the best interests of Warehouse, its creditors or its shareholder, New Century TRS.  GSMC merely objects to any effort by the Debtors, Warehouse or Access Holdings to have the Court make findings regarding these issues, as contemplated by the Asset Purchase Agreement and the proposed sale order.  Warehouse is not in bankruptcy.  The Debtors do not purport to have given all its creditors notice of the proposed sale even though the debtor may well try to use the proposed findings, if entered, in subsequent actions involving those creditors.  Questions such as whether the sale provides "fair value," the sale is a "legal, valid and effective transfer of the [assets]," Access Lending (owned by an insider of Warehouse) is a "good faith buyer," "[t]he transactions . . . were negotiated and entered into at arm's length and in good faith, without collusion," and "there are no facts or circumstances that would make the transactions . . . void or voidable" are issues that must be left for another day, to be made (if necessary) by a court with proper jurisdiction.  Sale Motion Exhibit 2 at 3-4 (Debtors' Proposed Order).  This Court does not have the responsibility, or the jurisdiction, to do so.

   **B.    Need for Clarification Regarding GSMC Loans**

20.   The Debtors state that the Sale Motion does <u>not</u> seek to affect any claims or rights between Warehouse or the Debtors, on the one hand, and GSMC, on the other hand.

---

[4] Even if the Court were to conclude it has jurisdiction to make limited findings with respect to the proposed sale, the Debtors have not offered any evidentiary basis for such findings.

The Asset Purchase Agreement provides that the Pledged Loans to be sold thereunder do not include "any Loan financed, pledged, sold or assigned in connection with any warehouse loan facility or similar funding arrangement between [Warehouse] and Goldman Sachs." Sale Motion Exhibit 1 at 5 (Asset Purchase Agreement).

21. GSMC has repeatedly requested information from Warehouse regarding the location of the Wet Ink Loans and Delivered Mortgage Loans, which requests have gone unanswered. GSMC requests that, prior to the entry of any order by the Court related to the proposed sale, Warehouse be required to (i) confirm whether it is in possession of the Wet Ink Loans or the Delivered Loans, (ii) confirm if it has sold or transferred any of these mortgage loans, and, if so, identify the entity or entities to which they were transferred, and (iii) to the extent Warehouse has sold any of the loans, confirm that the proceeds of such sales are being held in escrow for GSMC's benefit. Such information is necessary for GSMC to confirm that Warehouse does not intend to transfer any of these loans, or to otherwise affect GSMC's rights against it or any of the Debtors.

WHEREFORE, Goldman Sachs Mortgage Company respectfully requests that the Court deny entry of the proposed order approving the Sale Motion Of The Debtors And Debtors In Possession Pursuant To Sections 105 And 363 Of The Bankruptcy Code And Bankruptcy Rules 2002 And 6004 For An Order Authorizing The Access Sale And Granting Related Relief.

Dated: April 23, 2007  
      Wilmington, Delaware

KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, LLP

*/s/ Christopher A. Ward*  
Christopher A. Ward (Del. Bar No. 3877)  
919 Market Street, Suite 1000  
Wilmington, Delaware 19801  
Telephone: (302) 426-1189  
Fax: (302) 426-9193  
cward@klehr.com

– and –

CLEARY GOTTLIEB STEEN & HAMILTON LLP  
One Liberty Plaza  
New York, NY 10006  
(212) 225-2000

Attorneys for Goldman Sachs Mortgage Company