IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : : : : : : : : : : | Chapter 11<br><br>Case No. 07-10416 (KJC)<br>Jointly Administered<br><br>Objection Deadline: April 23, 2007 @4:00 PM<br>Hearing Date: April 24, 2007 @1:30 PM<br><br>**Related Docket No. 231** |
| NEW CENTURY TRS HOLDINGS,<br>INC., a Delaware corporation, et al.,<br><br>Debtors. |

**OBJECTION OF DEUTSCHE BANK NATIONAL TRUST COMPANY TO MOTION OF THE
DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTION 105 AND 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 FOR AN ORDER
AUTHORIZING THE ACCESS SALE AND GRANTING RELATED RELIEF**

Deutsche Bank National Trust Co. ("DBNTC") hereby files an objection to the Motion of the Debtors and Debtors in Possession Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 for an Order Authorizing the Access Sale and Granting Related Relief (the "Access Sale Motion"). DBNTC believes that the relief being requested in the Access Sale Motion exceeds the authority of this Court because the proposed sale is of the assets of a non-debtor entity. Furthermore, there has not been sufficient time to determine whether the terms of the proposed sale are fair, reasonable and in the best interests of the estate and its creditors let alone fair to the creditors of New Century Warehouse Corporation d/b/a Access Lending ("Access Lending") and its creditors. In further support of its Objection, DBNTC represents the following:

**Background**

1. DBNTC is a national banking association and acts as the main trustee for the debtors' mortgage loan securitization transactions. In addition to its role as securitization trustee, DBNTC also serves as document custodian for a number of warehouse lending facilities

#8515057 v1

pursuant to which New Century Financial Corporation ("NCF"), or one of its direct or indirect subsidiaries, borrowed funds from various financial institutions to finance its business of originating, acquiring and selling mortgage loans.

3. Of particular relevance to the instant motion, DBNTC serves as a custodian for the warehouse facility with Goldman Sachs Mortgage Company ("Goldman") that is referred to in Paragraph 9 of the Access Sale Motion and, as a result, is involved in the dispute described therein between the Debtors, Access Lending and Goldman. The dispute concerns certain loans (the "Disputed Loans") which Access Lending purported to sell to a third-party purchaser (the "Third-Party Purchaser") on March 9, 2007. According to the Access Sale Motion, the Disputed Loans had previously been financed by Goldman pursuant to its warehouse repurchase facility. DBNTC is informed that pursuant to written instructions from Access Lending, the Third-Party Purchaser wired the purchase price of the Disputed Loans (approximately $7.245 million) to Access Lending on March 9, 2007. DBNTC is further informed that Access Lending allegedly failed to remit such amount to Goldman and thereby failed to obtain Goldman's release of its interest in the Disputed Loans. Goldman contends that it did not receive the purchase price and that it continues to own the Disputed Loans. The Third-Party Purchaser contends that it is a holder in due course of the instruments evidencing the Disputed Loans and has acquired the Disputed Loans. Thus, depending on which institution is adjudged to be the owner of the Disputed Loans, the other party will have a claim against Access Lending for the purchase price of the Disputed Loans and possibly interest and costs.[1]

---

[1] In addition, to the extent Access Lending transferred the funds representing the Purchase Price to a Debtor entity, Access Lending or the other parties involved in the transaction would appear to have a claim against that Debtor entity.

**Specific Objections**

<u>This Court lacks Jurisdiction to Grant the Requested Relief</u>

4.      The Access Sale Motion requests that this Court enter a proposed form of Order

attached to the Access Sale Motion as Exhibit B.  That proposed form of Order (the "Access Sale

Order") has been drafted with the content of an order approving a sale of assets of a chapter 11

debtor pursuant to Section 363 of the Bankruptcy Code.   For example, the Asset Purchase

Agreement attached to the Access Sale Motion as Exhibit 1 includes as a Closing Condition at

Section 4.3 thereof a requirement that "This Agreement and the Transactions contemplated

hereby shall have been approved by the Federal Bankruptcy Court in Delaware;…"   Apparently

in furtherance of that requirement of the Asset Purchase Agreement, the Access Sale Motion and

the proposed Order request that this Court make the following findings:

- 'The transfer of the Acquired Assets to the Buyer will be a legal, valid and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title and interest of Seller to the Acquired Assets.'

- "The Buyer is a good faith buyer entitled to the protections afforded by Bankruptcy Code section 363(m) such that the reversal or modification on appeal of this Order shall not affect the validity of the sale Acquired Assets as contemplated hereunder, negotiations have been fair and arms' length, and no party has engaged in any conduct that would cause the sale to be avoided under Bankruptcy Code section 363(n)."

In addition, the Access Sale Order contains the following ordered provisions:

- "The Access Sale, on the terms and conditions set forth in the Purchase Agreement, is hereby authorized."

- "The transactions for which authorization has been sought by the Motion were negotiated at arm's length and in good faith, without collusion, and the Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code, to the full extent provided therein."

- "There are no facts or circumstances that would make the transactions approved herein void or voidable under section 363(n) of the Bankruptcy Code."

- The ten (10) day stay under Bankruptcy Rule 6004(h) is hereby waived, and this Order shall be effective immediately."

5.  However, Access Lending, which is the seller of the assets that are the subject of the Access Sale Motion, is not a debtor or debtor in possession in these chapter 11 cases. Accordingly, the assets of Access Lending which are the subject of the proposed sale are not property of the Debtors' estates pursuant to Section 541 of the Bankruptcy Code.  Since Section 363 of the Bankruptcy Code, pursuant to which the Debtors are seeking the requested relief, applied only to property which is property of the estate, the requested relief is not within the jurisdiction of this Court to provide.

6.  The maximum relief that the Court should consider granting is to authorize the Debtor which holds the equity of Access Lending to vote its shares of stock in Access Lending to approve the sale in accordance with applicable non-bankruptcy law.  Those shares of stock are property of the estate of that Debtor.[2]  The Debtors' statement at Paragraph 28 of the Access Sale Motion that they are seeking "authorization out of an abundance of caution because the Seller is a wholly owned subsidiary of a Debtor" is simply not a basis upon which this Court can or should grant relief that is only appropriate for property of the estate.

---

[2] Of course, the Access Sale Motion does not seek this Court's authority to sell the shares of stock in Access Lending, the only asset that is property of the estate and over which this Court does have jurisdiction.

<u>The Access Sale Motion does not adequately explain or delineate the assets to be Sold or protect DBNTC regarding the Goldman/ Third-Party Purchaser Transaction</u>

7. The Access Sale Motion does not provide any relevant financial information concerning Access Lending from which creditors or the Court can determine the extent of the assets that are proposed to be transferred to the purchaser. For example, DBNTC is unable to determine if Access Lending has any cash on hand, rights to money, accounts receivable or any causes of action that would be included in the "Acquired Assets".

8. To the extent that the proposed sale to the purchaser leaves Access Lending with insufficient assets with which to resolve the dispute between the Third-Party Purchaser and Goldman regarding the Disputed Loans, the proposed transaction is not fair or reasonable and should not be approved. While the Access Sale Motion purports to "not seek to affect any claims or rights between New Century Warehouse [i.e. Access Lending] or the Debtors, on the one hand, and Goldman, on the other hand" and provides that "[a]ll rights of the parties with respect to these matters are fully reserved and are not affected by the relief sought in this Motion", the transfer of funds, rights to money and/or causes of action from Access Lending to the purchaser in accordance with the Access Sale Order, may nonetheless impact the ability to resolve the issues that revolve around the Disputed Loans.

9. At a minimum, certain protections should be afforded to the parties to the Disputed Loan transaction in connection with the proposed sale. For example, the funds provided by Third-Party Purchaser to Access Lending should be escrowed and not transferred to the purchaser as part of the sale. Furthermore, any party to the dispute should be able to obtain access to the Access Lending records that will be transferred to the purchaser as part of the sale so that those records can be used to resolve the issues that revolve around the Disputed Loans.

#8515057 v1

## Conclusion

For the reasons set forth above, DBNTC respectfully requests that this Court grant it the following relief:

1. Deny the relief requested in the Access Sale Motion.

2. If this Court decides to grant the relief requested in the Access Sale Motion, condition that relief on the following measures to protect DBNTC:

   - Access Lending shall hold in trust an amount not less than $7,318,000, which represents approximately 101% of the purchase price of the affected loans in a segregated interest bearing account (the "Disputed Loan Reserve").  The Disputed Loan Reserve shall be applied solely to: (a) effect the release of such loans to the Third-Party Purchaser through payment to Goldman or any other party with an interest therein, (b) refund the purchase price, plus applicable pre-judgment interest and costs, to the Third-Party Purchaser or its designee, or (c) to the extent not needed to effect the foregoing clauses (a) or (b), to be remitted or applied as are otherwise directed by this Court.  To the extent that the Purchase Price is or has been transferred to a debtor entity, such debtor entity shall hold the amount of the Disputed Loan Reserve in trust and apply it as provided in the foregoing sentence.

3. Require that the Access Lending records to be transferred to the purchaser be made available to the parties to assist in resolving the issues that revolve around the Disputed Loans.

#8515057 v1

4. Grant it such other and further relief as may be just.

Dated: April 23, 2007

  /s/ David B. Stratton
David B. Stratton (No. 960)
PEPPER HAMILTON, LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390

and

Mark N. Berman, Esq.
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-6037
Facsimile: (617) 382-5868

and

Dennis Drebsky, Esq.
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111

*Counsel for Deutsche Bank National Trust Company*