## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416(KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Hearing Date: 5/15/07 @ 1:30 P.M. (EDT)** |
| | : | **Objection Deadline: 5/8/07 @ 4:00 P.M. (EDT)** |

## MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363 ESTABLISHING PROCEDURES GOVERNING MISCELLANEOUS ASSET SALES

New Century Financial Corporation, a Maryland corporation, New Century TRS

Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as debtor

and debtor in possession in the above-captioned chapter 11 cases (collectively, "Debtors"),

respectfully file this Motion requesting that the Court enter an Order establishing certain

procedures (described in this Motion) by which the Debtors may market and consummate the

sales of office furniture, equipment and other miscellaneous personal property of a relatively *de*

*minimus* value to the Debtors, not to exceed $100,000 in consideration on account of each

individual sale.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

## JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.    New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

3.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Court has entered an order authorizing the joint administration of the

2

Debtors' bankruptcy cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

4.      The Debtors commenced these chapter 11 cases to pursue an expedited sale of their businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders. In an effort to maximize the value of the estates, the Debtors are completing the prepetition process of downsizing their operations and pursuing sales of their businesses as a going concern.

5.      Concurrently with the filing of these cases, the Debtors moved the Court for authority to reject certain real property leases under which the Debtors lease office space and other locations and for approval of a procedure to reject additional leases. The Debtors obtained approval to reject certain leases and will shortly turnover additional locations in an orderly process as they are vacated, in order to limit rent claims asserted in connection with those leases.

6.      The Debtors are in the process of removing from these locations papers, equipment (including leased equipment) and other materials pertinent to the continued operations or to the reorganization of their business, and transporting these materials to other locations. Additionally, the Debtors maintain in many of these locations office furniture, equipment and other miscellaneous personal property which is no longer necessary for the operation or reorganization of their business. The real property leases under which the Debtors lease locations typically contain provisions requiring that the locations be turned over to landlords in "broom clean" or similar condition.

7.      Pre-petition, the Debtors, in the ordinary course of business, periodically concluded lease terms and turned over locations to landlords. In connection with this process,

the Debtors typically sold their miscellaneous personal property at a location (other than personal property leased by the Debtors from third-party lessors) to either: (a) third party tenants taking possession of the vacated location; or (b) various entities in the business of acquiring, transporting and re-selling office furniture and other property and assisting to turn over a location in broom clean condition. It is the Debtors' business practice to solicit three or more offers with respect to a location, and to select the highest or otherwise best offer.

8.      As noted above, the Debtors wish to turnover locations as soon as practicable following rejection of a related real property lease. In addition, the Debtors wish to dispose of miscellaneous personal property at these locations (other than personal property leased by the Debtors from third parties) in a manner that is most economical and beneficial to the estates. Consequently, the Debtors have limited options available to them. They can "abandon" the property under Bankruptcy Code section 554. Alternatively, they can transfer the property to other locations, or to facilities to warehouse the property, but this will be prohibitively expensive and will decrease the value that the Debtors will ultimately receive for the property. Finally, the Debtors can continue their prepetition practice and sell the property as they periodically reject real property leases and turnover locations during the course of these cases. The Debtors have already begun receiving, without solicitation, offers to purchase property in connection with a number of their locations, and believe that, by far, this is the most economical and beneficial alternative.

9.      The Debtors believe that these sales will involve assets that are not essential to their business and that, in most cases, are of relatively *de minimis* value compared to the Debtors' total asset base – typically between $5,000 and $10,000 with respect to the sale of assets at a location, and occasionally up to as much as $100,000 at certain of the Debtors'

4

larger locations.  The Debtors anticipate that, in total, these sales will bring roughly in excess of $2 million to the estates.

10.     Filing a separate motion and obtaining Court approval under Title 11 of the United States Code ("Bankruptcy Code") section 363(b)(1) of each miscellaneous, *de minimus* asset sale would be burdensome to the Court and costly to the Debtors' estates and creditors.  In some cases, the cost and delay associated with seeking Court approval could entirely eliminate the economic benefits of the transactions.  The Debtors accordingly request that the Court approve certain procedures described below ("Miscellaneous Sale Procedures"), designed to streamline the sales of miscellaneous assets in an expeditious and cost-effective manner, while nevertheless maintaining review by the Court and the key constituencies in these cases.

## THE MISCELLANEOUS SALE PROCEDURES

11.     <u>Transactions Subject to these Procedures</u>.  These Miscellaneous Sale Procedures will apply only to asset sales, in each instance, involving the sale of office furniture, equipment and other assets of no more than $100,000, as measured by the total cash and other consideration received by the Debtors on account of the assets.

12.     <u>Notice of Proposed Sales</u>.  After the Debtors enter into a contract or contracts contemplating a transaction that is subject to these Miscellaneous Sale Procedures, or otherwise anticipate a transaction that is subject to these procedures ("Proposed Sale"), the Debtors will file with the Court a notice of such Proposed Sale ("Sale Notice") and serve the Sale Notice by overnight delivery, facsimile or electronic mail on the following parties: (a) counsel to the Official Unsecured Creditors' Committee appointed in these cases; (b) the Debtors' postpetition senior secured lenders; (c) all known parties holding or asserting liens, claims, encumbrances or other interests in the assets that are the subject of the Proposed Sale

5

and their respective counsel, if known; and (d) the Office of the United States Trustee.

13.    <u>Contents of Sale Notice</u>.  The Sale Notice will include the following information:

- A description of the assets that are the subject of the Proposed Sale, the location of the assets and the economic terms of the sale.

- The identity of any nondebtor party to the Proposed Sale and any relationship between the party and the Debtors.

- The identity of any party holding liens, claims, encumbrances or other interests in the assets, and a statement indicating that all such liens, claims, encumbrances or interests are capable of monetary satisfaction or that the parties have consented to the Proposed Sale.

- The procedures by which parties may object to the Proposed Sale (described immediately below).

14.    <u>Objection Procedures</u>.  Interested parties will have 5 business days following service of the Sale Notice to file with the Court and serve by overnight delivery, facsimile or electronic mail on the parties listed in Paragraph 12 of this Motion an objection to the Proposed Sale.  Any such objection must be in writing and must state with specificity the grounds for the objection.

15.    If an objection to a Proposed Sale is properly filed and served then: (a) the objection will be deemed to be a request for a hearing on the Proposed Sale at the next scheduled omnibus hearing in these cases that is at least 10 days after service of the Objection; and (b) the Proposed Sale may not proceed absent written withdrawal of the Objection or entry of a Court Order specifically approving the Proposed Sale.

16.   If no objection is properly filed and served consistent with these Miscellaneous Sale Procedures within the time provided for in these procedures, then the Proposed Sale will be deemed fully authorized by the Court and the Debtors may consummate the Proposed Sale, and no further notice or Court approval will be required.  The Debtors may consummate a Proposed Sale prior to the expiration of the notice period described in these Miscellaneous Sale Procedures where they have obtained written consent to the Proposed Sale by each of the parties listed in Paragraph 12 of this Motion.

17.   <u>Conditions of Sale</u>.  All buyers will acquire assets sold by the Debtors pursuant to these Miscellaneous Sale Procedures "AS IS–WHERE IS," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any other purpose; provided, however, that buyers will take title to the assets free and clear of liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363(f), with all such liens, claims, encumbrances and other interests, if any, to attach to the proceeds of the sale of the assets.

## LEGAL ARGUMENT

A.   **Approval of the Miscellaneous Sale Procedures Is Reasonable and Appropriate and Consistent with Previous Orders of this Court.**

18.   Bankruptcy Code section 363(b)(1) provides that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

19.   This Court has previously held that a sale outside the ordinary course of business in a chapter 11 case is appropriate where the Court finds the following elements present: "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith." <u>In re Phoenix Steel Corp.</u>, 82 B.R. 334,

7

335-36 (Bankr. D. Del. 1987).

20.    Similarly, Appellate-level courts have repeatedly held that authority to sell property under section 363(b)(1) is appropriate whenever the request is supported by a rational, articulated business purpose. Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Lionel Corporation, 722 F.2d 1063, 1066 (2d Cir. 1983). Where a debtor proffers a rational justification for the sale, there is a strong presumption that the decision was made in good faith and in the debtor's best interest. Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992).

21.    Federal Rule of Bankruptcy Procedure 2002(a)(2) generally requires a minimum of 20 days' notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

22.    The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including Court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing. 11 U.S.C. § 102(1).

23.    Similarly, this Court in In re Lomas Fin. Corp. held that notice is appropriate under Bankruptcy Code section 102(1) where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 212 B.R. 46, 54 (Bankr. D. Del. 1997) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

24.    The Debtors believe that the notice and objection procedures contained in

8

the Miscellaneous Sale Procedures are justified under the circumstances. These procedures are

designed to maximize the value realized from the sales of office furniture, equipment and other

property that must quickly be removed from the Debtors' office and other locations as the

Debtors obtain Court approval to reject real property leases and vacate the locations. Because

the asset sales are of a relatively *de minimus* value, the usual process of obtaining Court approval

of each, individual sale would impose unnecessary administrative burdens on the Court; would

be prohibitively expensive to the Debtors' estates; and in some instances may hinder the

Debtors' ability to take advantage of sale opportunities that are available only for a limited time.

25.    Additionally, the Debtors believe that the manner of notice proposed in the

Miscellaneous Sale Procedures is more than appropriate and preserves parties' due process

rights. The Debtors will serve notice of each Proposed Sale on the Official Unsecured Creditors'

Committee, the Debtors' postpetition senior secured lenders, any party asserting an interest in the

property to be sold, and the Office of the United States Trustee. As such, all of the key

constituencies in these cases and any party whose rights may be effected by a sale will receive

adequate notice.

26.    Finally, as noted above, the "notice and a hearing" requirement contained

in Bankruptcy Code section 363(b)(1) is satisfied absent a hearing where there is an opportunity

for a hearing and no party in interest timely requests a hearing. 11 U.S.C. § 102(1).

27.    Recognizing the demonstrable benefits resulting from streamlined

procedures to sell small assets, this Court and others have approved procedures substantially

similar to the Miscellaneous Sale Procedures proposed in this Motion. See, e.g., In re Exodus

Communications, Inc., No. 01-10539 (SLR) (Bankr. D. Del. Nov. 15, 2001) (approving similar

procedures for sales of assets up to $125,000 and *post hoc* approval for sales of assets up to

9

$125,000); In re USG Corporation, No. 01-2094 (RJN) (Bankr. D. Del. Sept. 20, 2001)

(approving similar procedures for sales of assets up to $1,000,000 ); In re Comdisco, Inc., No.

01-24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2001) (approving similar procedures for sales of assets

up to $1,000,000).

       28.     The Debtors submit that the sale Miscellaneous Sale Procedures are fair

and equitable, that sound business justifications necessitate approval of the procedures, and that

the procedures have been proposed in good faith.

**B.**      **The Debtors May Sell Miscellaneous Assets Free and Clear of Interests.**

       29.     Bankruptcy Code section 363(f) permits a debtor to sell estate property

free and clear of another party's interest in the property where:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

       30.     Under the Miscellaneous Sale Procedures, assets encumbered by interests

held by other parties may be sold only if the interests are capable of monetary satisfaction or the

holders of the interests consent to the Proposed Sale. As such, the requirements of Bankruptcy

Code section 363(f) will be satisfied for any Proposed Sale free and clear of liens, claims,

encumbrances and other interests. Moreover, as noted above, the Debtors propose that such

interests attach to the proceeds of the sales.

C.   **The Court Should Waive the 10-Day Stay Typically Applicable to an Order Authorizing the Sale of Property Under Fed. R. Bankr. P. 6004(h).**

31.   Federal Rule of Bankruptcy Procedure 6004(h) provides that an order authorizing the sale of property of the estate "is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

32.   As noted above, the Debtors wish to turnover certain locations as soon as practicable following the rejection of the related real property leases, and anticipate that this process will begin immediately following Court approval of the Debtors' motion requesting authority to reject leases. Additionally, the Debtors have already begun to receive, without solicitation, offers for their office furniture and other property at certain locations. As such, sound business reasons mandate waiving the stay typically applicable to a sale of assets.

### NOTICE

33.   No trustee or examiner has been appointed in these cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee; (2) the Official Unsecured Creditors' Committee appointed in these cases; (3) the Debtors' secured lenders; and (4) all parties who have properly filed requests for notice. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

34.   The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice of the United States District Court for the District of Delaware, incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a).

11

WHEREFORE, the Debtors request entry of an Order substantially in the form attached hereto as Exhibit A: (1) approving the Miscellaneous Sale Procedures and other sale procedures proposed in the Motion; (2) waiving the 10-day stay typically applicable to sale of property under Federal Rule of Bankruptcy Procedure 6004(h); and (3) granting such further relief as the Court deems just and proper.

Dated:  April 25, 2007
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

12