## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, *et al.*, [1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

**Hearing Date: May 18, 2007 at 10:00 a.m.**
**Objection Deadline: May 11, 2007 at 4:00 p.m.**

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING EXAMINATIONS AND THE PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULES 2004 AND 9016

The Official Committee of Unsecured Creditors (the "Committee") of New Century TRS

Holdings, Inc., *et al.* (the "Debtors"), by and through their proposed co-counsel, Blank Rome

LLP and Hahn & Hessen LLP, moves this Court for entry of an order pursuant to Rules 2004 and

9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the

examination of and production of documents by the Debtors and their non-debtor subsidiaries

---

[1]   The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation; New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

(collectively referred to as the "Subsidiaries")[2] with respect to the matters set forth herein (the "Motion"). In support of the Motion, the Committee states as follows:

## SUMMARY OF REQUESTED RELIEF

The Committee seeks authorization to conduct examinations of and obtain documents from the Debtors and their Subsidiaries.

## BACKGROUND[3]

1.     On April 2, 2007 (the "Petition Date"), the Debtors commenced voluntary cases (the "Cases") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court, which Cases are being jointly administered pursuant to an order of this Court. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases (the "Chapter 11 Cases").

2.     On April 9, 2007, the Office of the United States Trustee appointed the following members to the Committee: (i)Credit-Based Asset Servicing and Securitization LLC, (ii) Residential Funding Company, LLC, (iii) Credit Suisse First Boston Mortgage Capital LLC, (iv) Deutsche Bank National Trust Co., (v) Wells Fargo Bank, N.A., as indenture trustee, (vi) Fidelity National Information Services, Inc., and (vii) Maguire Properties – Park Place, LLC.  On

---

[2]     The term "Subsidiaries" refers to collectively and individually, non-debtor subsidiaries including New Century Mortgage Securities LLC, New Century Mortgage Securities, Inc., New Century Funding SB-1, New Century Funding A, Von Karman Funding Trust, Home 123.ocm, Inc., eConduit Corporation, NC Residual Corporation, NCMC Insurance Corporation, North American Real Estate Solutions, Inc., New Century Funding I, NC Insurance Services, Inc., New Century Warehouse Corporation, Anyloan Financial Corporation, Access Investments II, LLC, Capital Standard Origination Company, Realtor Builder V, Inc., Realtor Builder IV, Inc., CSOC XIV, Inc., CSOC XXV, Inc., CSOC XXXVIII, Inc., Realtor Builder I, Inc., CSOC XI, Inc., CSOC XXXVII, Inc., CSOC XXXII, Inc., Realtor Builder II, Inc., Realtor Builder III, Inc., Realtor Builder VI, Inc., CSOC XXVII, Inc., and CSOC XXIII, Inc.

[3]     The Background is based on, among other things, the Debtors' Declarations, publicly-available articles and reports, public filings, press releases, United States Securities and Exchange Commission ("SEC") filings, and other matters of public record.

the same date, the Committee selected Blank Rome LLP and Hahn & Hessen LLP as its co-counsel and FTI Consulting, Inc. as its financial advisor.

3.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought herein are Bankruptcy Rules 2004 and 9016. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## Relevant Facts

### A.     The Debtors' History

4.     New Century Financial Corporation ("New Century") is a real estate investment trust ("REIT") that, until in or about February 2007, was one of the nation's largest mortgage companies. Through its operating subsidiaries, New Century originated and purchased residential mortgage loans, most of were sold through whole loan sales and/or securitizations, and serviced residential mortgage loans, a substantial portion of which are sub-prime loans. The Debtors retained residual economic interest in the residuals of certain loan securitizations. Funding for the loans was provided through credit facilities by a group of investment banks and other financial institutions, which facilities prior to February 7, 2007, totaled approximately $17.4 billion of committed and uncommitted borrowing capacity.

5.     New Century's predecessor-in-interest, New Century TRS Holdings, Inc. ("New Century TRS"), was formed by Edward Gotschall, Brad Morrice and Robert K. Cole and began originating and purchasing loans in 1996. In the fourth quarter of 2004, the Board of Directors of New Century TRS approved a plan to change the company's capital structure to enable it to qualify as a REIT for U.S. federal income tax purposes. On April 12, 2004, New Century TRS formed New Century Financial Corporation.

6.      Pursuant to the merger that implemented the restructuring of New Century TRS,
New Century became the publicly-traded parent listed on the New York Stock Exchange
("NYSE") that succeeded to and continued to operate substantially all of the existing business of
New Century TRS and its subsidiaries.

7.      Prior to the bankruptcy filing, New Century ceased originating mortgage loans.
New Century and its subsidiaries intend to sell their assets, including the origination and
servicing platforms through the Chapter 11 proceedings.

## B.      The Alleged Accounting Irregularities

8.      In November 2006, following New Century's third quarter earnings press release,
Center for Financial Research and Analysis analyst Zach Gast noted that the company for the
first time lumped together two categories of reserves, one for losses on defaulted loans and a
second for losses on real estate that had been acquired through foreclosure. Mr. Gast wrote that
combining these two categories allowed the company to show a small increase in reserves from a
quarter earlier, which in actuality, masked a decline of 8.7% in the reserve for losses on bad
loans, to $191.6 million, by his calculations. Had New Century maintained reserves at levels
comparable with the second quarter, Mr. Gast estimated that earnings per share would have been
at least 50% lower than reported.

9.      On February 7, 2007, after the close of the market, New Century issued a press
release announcing it would have to restate its financial results for the quarters ending March 31,
June 30 and September 30, 2006, due to insufficient reserves associated with its sub-prime
lending business and material weaknesses in its internal control function. Specifically, New
Century said it lost track of and failed to account properly for the frequency with which sub-
prime borrowers defaulted on their mortgages.

10. On March 2, 2007, New Century filed a form 12b-25 ("Form 12b-25") with the SEC reporting that it was unable to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2006. In its Form 12b-25, New Century advised that the Audit Committee of the company's Board of Directors, assisted by outside counsel and forensic accountants, had "initiated its own independent investigation into issues giving rise to the Company's need to restate its 2006 interim financial statement as well as issues pertaining to the Company's valuation of residual interests in securitizations in 2006 and prior periods." New Century stated that it would file the 2006 Form 10-K after the completion of the Audit Committee's investigation.

11. That same day (March 2, 2007), New Century disclosed that, on February 27, 2007, it had received notification from the U.S. Attorneys' Office for the Central District of California that it was conducting a criminal inquiry into the Company's reported accounting errors regarding New Century's allowance for repurchase losses as well as trading in the company's securities before the restatement was disclosed to the public. New Century advised that the U.S. Attorneys' Office had subpoenaed "certain documents" in furtherance of its investigation.

12. On March 12, 2007, New Century received a grand jury subpoena related to the criminal inquiry.

13. On March 13, 2007, New Century disclosed that the SEC opened a formal investigation into New Century's restatement and trading in New Century's securities prior to its February 7 announcement. The SEC requested a meeting with New Century to discuss the events leading up to the announcement of the restatement as well as its request for production of certain documents. That same day, the NYSE delisted New Century's stock.

14.    According to the Debtors, the public disclosure of these events precipitated a crisis of confidence among the Debtors' lenders. In New Century's SEC filings on March 12 and 13, 2007, the company disclosed that all of its lenders under its short-term repurchase agreements and aggregation credit facilities had discontinued their financing or had notified New Century of their intent to do so. Certain of these lenders also had purported to terminate the company's servicing rights and their respective financing agreements.

15.    In addition, New Century received notices from certain of its lenders asserting that the company and/or its subsidiaries were in default of the parties' financing agreements. As a result, certain of these lenders accelerated the company's obligation to repurchase all outstanding mortgage loans financed under these agreements. New Century reported that it did not have sufficient liquidity to satisfy the outstanding repurchase obligations sought by the warehouse lenders under its existing financing arrangements.

16.    As a result of the default notices and termination of loans to New Century, the Company was unable to fund a portion of its loan originations, leading to a significant number of states issuing Cease and Desist orders and/or the Debtors entering into Consent Agreements to, among other things, restrain the Debtors from taking new applications for mortgage loans.

17.    Additionally, several shareholder-derivative and other complaints were filed against one or more of the Debtors, as well as several of New Century's officers and directors, alleging, among other things, breaches of contract, breaches of fiduciary duty and violations of federal securities laws by issuing false and misleading statements and failing to disclose material facts, which resulted in artificially inflated market prices of the company's common stock.

18.    The foregoing events culminated in the filing of the Chapter 11 Cases on April 2, 2007.

127340.01600/40168556v.1

## **FOCUS OF INVESTIGATION**

19.     The Committee currently seeks authorization to obtain the examinations of and production of documents from the Debtors and their Subsidiaries concerning, *inter alia*,(i) the property of the Debtors; (ii) assets, liabilities and financial condition of the Debtors; (iii) matters that may affect the administration of the Debtors' estates; (iv) the identification and prosecution of certain potential claims against third parties, including officers and directors, outside auditors and advisors; (v) asset values; (vi) prepetition transactions; (vii) the facts that led to the Company's decision to restate its 2006 financial statements and the resulting harm to the company and its creditors; and (viii) the role of senior management in the events that led to the restatement of 2006 financial statements. The Committee seeks entry of an order substantially in the form attached hereto (the "Proposed Order").

20.     While the Committee desires to conduct a thorough examination of the Debtors' material prepetition activities and relationships, it currently only seeks document discovery from the Debtors and their Subsidiaries but reserves the right to serve supplemental and additional document requests as identified by the Committee during the course of the investigation. In addition, as the Committee receives and reviews the documents requested, the Committee will seek authorization to conduct depositions of the Debtors and their Subsidiaries' officers, directors, employees and third parties as necessary to complete its investigation.

21.     The Committee expressly reserves the right to seek additional documents and/or discovery from (a) the Debtors, (b) their Subsidiaries, (c) the Debtors and their Subsidiaries' employees, officers, and directors, and (d ) third parties.

## **A.     Areas of Requested Discovery**

22.     The Committee desires to investigate the prepetition activities of the Debtors particularly (but not limited to) with respect to:

a.    the Debtors' financial reports and condition for the years 2004 to the present,

b.    the Debtors' cash management system and intercompany transfers for the years 2004 to the present,

c.    the Debtors' accounting system and regulatory policies,

d.    the Debtors' policies and procedures to comply with Federal and State regulations governing the Debtors' businesses,

e.    the Debtors' internal controls, processes and procedures,

f.    the Debtors' methods for valuing its assets,

g.    the Debtors' accounting for losses on defaulted repurchased loans,

h.    the Debtors' accounting irregularities as announced by New Century on February 7, 2007, which would require a restatement for results for March 31, June 30, and September 30, 2006,

i.    facts relating to the Debtors' March 2, 2007 announcement that New Century's Board of Directors had obtained outside counsel and forensic accountants to assist in its investigation of accounting irregularities,

j.    all forms of compensation, forgiveness of indebtedness and/or other payments or transfers to or for the benefit of certain current and former officers and directors of New Century,

k.    the practices of the Board of Directors in carrying out their fiduciary duties to the company and its stockholders,

l.    review of the investigation commenced by New Century's Board of Directors regarding New Century's accounting irregularities and related matters, and any other investigation or review undertaken by the Board of Directors,

m.    criminal and SEC investigations commenced regarding Debtors and their present and former officers and directors,

n.    various civil actions, including but not limited to, class actions and derivative actions, commenced in 2006 and thereafter,

o.    review of Debtors' financial transactions and dealings with their lenders,

p.    review of an initial public offering of stock by New Century in or about 2005-2006,

q.    review of the sale of the Debtors' stock by any insiders of the Debtors and their subsidiaries,

r.    review potential claims against insiders and third parties, and

s.    any other areas or issues that may arise during the investigation.

23.    The discovery requested in this Motion is intended to provide the Committee with information it requires to discharge properly its duties to unsecured creditors under Section 1103(c) of the Bankruptcy Code. As a matter of law, the Committee is entitled to seek and obtain discovery regarding these and other matters relating to the acts, conduct, property, liabilities and financial condition of the Debtors and their estates.

## Basis For Relief Requested

24.    Bankruptcy Rule 2004 authorizes any party in interest, with court approval, to examine any entity and request documents relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed.R.Bankr.P. 2004(b). Bankruptcy Rule 2004(c) further provides that "[t]he attendance of an entity for examination and for the production of documents ... may be compelled as provided in Rule 9016 for the attendance of witnesses at a hearing or trial."

25.    The scope of a Bankruptcy Rule 2004 examination is "very broad" and may be "legitimately compared to a fishing expedition". In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). The examination is "designed to bring the Debtor's

affairs to light, not to hide them." In re PRS Ins. Group, Inc., 274 B.R. 381, 385 (Bankr. D. Del. 2001).

26.     A Bankruptcy Rule 2004 examination may "properly extend to creditors and third parties who have had dealings with the debtor." In re Fearn, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989). See also In re Johns-Manville Corporation, 42 B.R. 362, 364 (S.D.N.Y. 1984) (a Rule 2004 examination may "cut a broad swath through the debtors' affairs, those associated with him, and those who might have had dealings with him").

27.     Further, a Bankruptcy Rule 2004 examination of third parties may be used as a pre-litigation device to investigate the merits of potential causes of action. In re Oliver's Stores, Inc., 79 B.R. 588, 591-592 (Bankr. D.N.J. 1987).

28.     The standard for determining the propriety of discovery under Bankruptcy Rule 2004 is "good cause." See, e.g., In re Graybill Corp., 109 B.R. 329, 334 (Bankr. N.D. Ill 1989). The movant needs to show only a reasonable basis for the examination. Here, there is good cause for allowing the requested discovery because it is necessary to determine the facts and circumstances relating to, *inter alia*, New Century's accounting irregularities, the propriety of certain securities trading preceding the disclosure of New Century's accounting irregularities, the propriety of the prepetition actions taken or not taken by the Debtors' senior officers and board of directors, potential causes of actions against present and former officers and directors and third parties, the need to identify and maximize the value of estate assets and various financing transactions.

29.     Notice of this Motion has been given to (i) counsel for the Debtors; (ii) the United States Trustee; and (iii) all parties that have filed notices of appearance and demanded service of

papers pursuant to Bankruptcy Rule 2002. Under the circumstances, the Committee submits that

such notice will be adequate and sufficient and therefore no other or further notice is required.

## NO PRIOR APPLICATION

30.     No previous application for the relief sought herein has been made to this or any

other Court.

31.     The Committee expressly reserves its right at any time to supplement or amend

this Motion and the relief requested herein including, without limitation, the Proposed Order.

## DEL. BANKR. L.R. 2004-1 CERTIFICATION

32.     Pursuant to Del. Bankr. L.R. 2004-1, the undersigned hereby certifies the

following. The Committee has informed the Debtors of the sum and substance of this Motion

and has provided the Debtors with a copy of the Proposed Order (including its Schedule A) in

advance of filing this Motion. The Debtors' have agreed to cooperate with the Committee with

respect to the document requests described herein. The Debtors have not had ample time to

review the Proposed Order and its Schedule A. To the extent the Debtors have issues with the

Proposed Order, the Committee will work with the Debtors to attempt to reach a consensual form

of order approving this Motion in advance of any hearing on this Motion.

**WHEREFORE**, the Committee respectfully requests that the Court (a) enter an Order in

the form substantially in the form attached hereto authorizing production of documents by the

Debtors and their Subsidiaries; and (b) grant such other and further relief as the Court deems just

and proper.

Dated: April 27, 2007

BLANK ROME LLP

Bonnie Glantz Fatell (No. 3809)
Regina Stango Kelbon
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

-and-

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Telephone:    (212) 478-7200
Facsimile:    (212) 478-7400
Attention:    John P. McCahey
              Mark T. Power

*Proposed Co-Counsel to the Official*
*Committee of Unsecured Creditors of*
*New Century TRS Holdings, Inc., et al.*