UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, *et al.*,[1] | : |  |
|  |  | Case Number 07-10416 (KJC) |
| Debtors. | : | (Jointly Administered) |

Hearing Date:  May 7, 2007 at 10:00 A.M.

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE EMERGENCY MOTION OF GREGORY J. SCHROEDER, *ET AL.* FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN OFFICIAL COMMITTEE OF PLAN BENEFICIARIES PURSUANT TO 11 U.S.C. § 1102(a)(2)
(DOCKET ENTRY # 307)**

In support of her objection to the emergency motion of Gregory J. Schroeder, *et al.* (the "Plan Beneficiaries") for an order directing the United States Trustee to appoint an official committee of plan beneficiaries pursuant to 11 U.S.C. § 1102(a)(2) (the "Motion"), Kelly Beaudin Stapleton, United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a/ Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

**PRELIMINARY STATEMENT**

The appointment of an official committee of plan beneficiaries is not necessary to provide adequate representation of the moving parties for several reasons. First, the moving parties have not averred that there presently exists a disabling conflict of interest or other impediment which prevents the OCUC from fulfilling its fiduciary obligations. Second, the interests of the moving parties and the remainder of the estates' creditors are commonly aligned towards the goal of maximizing the value of the Debtors' assets. Finally, there are sufficient funds segregated to pay the moving parties' claims in full, and issues relating to the disposition of such funds will not be aided by giving the moving parties their own official committee.

In the unlikely event that this Court finds that an additional committee is necessary to provide adequate representation of the moving parties' interests, this Court should exercise its discretion and decline to appoint the committee. In these cases, the moving parties are seeking the appointment of the committee for the exclusive purpose of passing their litigation costs to the Debtors' estates. This Court should deny the relief requested in the Motion and allow the moving parties to reserve their rights to seek reimbursement under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) – that result strikes a better balance between the interests of the moving parties and the Debtors' estates.

**INTRODUCTION**

1. Under (i) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a) and (ii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion.

2. Under 11 U.S.C. § 1102(a)(1), the U.S. Trustee is obligated to form an official

committee of unsecured creditors in each chapter 11 case and "may appoint additional committees of creditors or of equity security holders as the [U.S. Trustee] deems appropriate." The U.S. Trustee's authority under 11 U.S.C. § 1102(a)(1) supports the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and the issues raised in this objection.

**BACKGROUND**

4. On April 2, 2007 (the "Petition Date"), the Debtors filed the petitions which initiated the above-captioned cases.

5. On April 9, 2007, the U.S. Trustee held a meeting to form an official committee of unsecured creditors (the "OCUC") in the above-captioned cases.

6. Gregory J. Schroeder ("Schroeder") appeared at the meeting through his authorized proxy holder and expressed interest in serving on the OCUC personally or on behalf of the interests of an entity titled "Ad Hoc Committee of Beneficiaries of Certain Retirement and/or Deferred Compensation Plans" (the "Ad Hoc Committee").

7. Ultimately, the U.S. Trustee appointed a committee of unsecured creditors consisting of seven members. Neither Schroeder nor any other Ad Hoc Committee members were appointed to the OCUC. A copy of the Notice of Appointment of the OCUC dated April 9, 2007 is attached

as Exhibit A.

8.  On April 11, 2007, counsel to the Plan Beneficiaries forwarded a letter to the office of the U.S. Trustee requesting that the U.S. Trustee appoint an official committee of plan beneficiaries in the above-captioned cases. A copy of the April 11 letter is attached as Exhibit B.

9.  At the invitation of the U.S. Trustee, the OCUC responded to the April 11 letter requesting the appointment of an official committee of plan beneficiaries. A copy of the OCUC's response (dated April 20, 2007) is attached as Exhibit C.

10. On April 18, 2007, before the U.S. Trustee could respond to the Plan Beneficiaries' request, the Plan Beneficiaries filed the Motion.

## **GROUNDS/BASIS FOR RELIEF**

11. 11 U.S.C. § 1102(a)(2) provides:

> On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders *if necessary to assure adequate representation of creditors* or of equity security holders. The United States trustee shall appoint any such committee. (Emphasis added).

12. Evaluation of the Plan Beneficiaries' request involves two separate issues. The first issue is whether an additional committee is necessary to assure that the Plan Beneficiaries are adequately represented. If this Court determines that an additional committee is necessary, the Court must decide whether it will exercise its discretion and direct the appointment of the committee. *See* 11 U.S.C. § 1102(a)(2) (use of word "may"); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (citing *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996)), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997), *aff'd sub nom. Mirant Americas Energy Mktg, L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02 Civ. 6274 (GBD),

2003 WL 22327118 (S.D.N.Y. 2003)).

13.   "As a general rule, 'adequate representation exists through a single committee so long as the diverse interests of the various creditor groups are represented on and have participated in the committee.'"  *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 WL 523129, at * 3 (quoting *In re Sharon Steel Corp.*, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989)).  Accordingly, "ordering the appointment of additional committees, particularly given that the matter is often first reviewed and addressed by the U.S. Trustee, is an extraordinary remedy." *Enron*, 279 B.R. at 685.  "Courts generally will not authorize an additional committee of unsecured creditors unless the current committee is 'hopelessly divided, unable to take a position on important matters and ineffective . . . .'" *Id.* (quoting *Enron*, 279 B.R. at 686).  The Plan Beneficiaries bear the burden of proving that the OCUC does not adequately represent their interests.  *See id.*

14.   Courts have developed multiple-factor inquiries to determine (i) whether appointment of an official committee is necessary to assure adequate representation of creditor interests in cases where an OCUC has been appointed and (ii) if appointment of an additional committee is necessary to assure adequate representation, whether the court will exercise its discretion to make the appointment.  In regards to the former inquiry, without exclusion to other considerations, courts have focused on three factors: the ability of the committee to function, the nature of the case, and the standing/desires of the various constituencies.  *See Enron*, 279 B.R. at 685 (citing *In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987)).  The discretionary considerations involved in the latter inquiry include the following factors: the cost associated with the appointment, the time of the application, the potential for added complexity, and the presence of other avenues for creditor participation.  *See id.* at 685 (citations omitted).

### A. Adequate Representation

15. Appointment of an official committee of plan beneficiaries is not necessary to ensure adequate representation of the Plan Beneficiaries' interests. In the Motion, the Plan Beneficiaries do not aver that there presently exists a disabling conflict of interest or other impediment *within the OCUC* which prevents the OCUC from fulfilling its fiduciary obligations. Rather, the Plan Beneficiaries argue that, because the OCUC "will be looking for a way to access the funds in the Plans for the general benefit of the Debtors' estates," appointment of a separate committee is warranted to counteract the OCUC's efforts in that direction. Mot. ¶ 12.

16. This argument must fail. The fact that the interests of individual creditors may be (or are) adverse to the OCUC's interests does not justify the appointment of an additional committee. *See Garden Ridge*, 2005 WL 523129, at *4 ("The Official Committee is simply not intended to represent individual creditor interests. Mere conflict between members of the Official Committee is no basis for the appointment of an additional committee of creditors"). Typically, the OCUC represents two or more classes of unsecured creditors with different viewpoints about the direction of the cases. Such conflicts are an inherent and inevitable part of complex chapter 11 cases. *See Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02 Civ. 6274 (GBD), 2003 WL 22327118, at * 7 (S.D.N.Y. 2003) (quoting *Sharon Steel*, 100 B.R. at 770). Notwithstanding such differences, however, chapter 11 cases commonly have one committee of unsecured creditors. *See In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 858 (Bankr. M.D. Fla. 2005) ("The issue is whether the Plan Participants' interests are adequately represented, not whether they are exclusively represented.").

17. Second, neither the nature of the Debtors' cases nor the standing of the various

constituencies calls for the appointment of an official committee of plan beneficiaries. The Plan Beneficiaries submit that the above-captioned cases "are complicated, involving multiple business divisions and complex lending relationships with warehouse lenders and securitizations . . . ." Mot. ¶ 14. Virtually every "mega-case" that files for bankruptcy protection in this Court involves multiple business divisions and complex lending relationships – the key question is, how does the complex nature of the above-captioned cases support the asserted need for an additional committee? Given the narrow focus of the Plan Beneficiaries' asserted need for their own official committee – to have the Debtors' estates pay them to argue that the plan assets are not property of the Debtors' estates – the Plan Beneficiaries do not attempt to (and cannot) establish a link between the nature and/or complexity of these cases and their purported need for their own committee.

18.    The nature of the Debtors' cases and the common interests of creditors in a successful liquidation militate against the appointment of an official committee. These cases are liquidating chapter 11 cases where the majority of the asset disposition effort will be completed within ninety days after the Petition Date. Accordingly, these cases do not involve difficult issues which normally follow complex balance-sheet or operational restructurings. The Plan Beneficiaries' averred need for their own official committee does not hinge upon, for example, whether the Debtors have one or fourteen business divisions. The interests of the Plan Beneficiaries and all creditors are commonly aligned towards the goal of maximizing the value of the Debtors' assets. In the end, there will be a pot of money – the proceeds from the liquidation – and those funds will likely not be enough to satisfy allowed claims in full.

19.    Finally, there is no exigency which necessitates appointment of an additional committee in these cases. In evaluating the need for an additional committee, courts have

considered factors unique to the moving parties. *See Winn-Dixie*, 326 B.R. at 857 (court considered whether moving parties' position was "unique"). In these cases, the Debtors have segregated 110% of the funds necessary to satisfy employee claims against the plan trust. Mot. ¶ 6 ("Upon information and belief, the funds are currently held in a segregated account at Wells Fargo, and the Plan has been funded to 110% of the claims against it."). At the hearing held on April 19 in these cases, the Debtors committed to leaving those funds in the segregated account pending the hearing on the Motion.

20. At some point in the future, the Plan Beneficiaries will likely initiate litigation to protect their interests in the event that they cannot reach an acceptable agreement with the Debtors' estates regarding the treatment of the plan assets. The question of whether the funds should remain segregated beyond the May 7 hearing on the Motion is an issue properly addressed in the context of such litigation if it is not resolved by agreement of the parties. In sum, this Court should not direct the appointment of an official committee of plan beneficiaries as a form of additional security. This Court's resolution of issues relating to segregation of the plan assets will not be aided by the appointment of an official committee of plan beneficiaries. Rather, equipped with their own committee and, by extension, access to estate funds to advance their cause, the Plan Beneficiaries will be more aggressive, and the bankruptcy process will suffer as a result.

**B.     Discretionary Considerations**

21. At bottom, the issue before the Court is whether the Debtors' estates will pay the Plan Beneficiaries to fight with the estates over the plan assets. In *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853 (Bankr. M.D. Fla. 2005), certain retired employees participating in non-qualified retirement plans moved for an order directing the appointment of an official committee to represent

their interests. *See id.* at 855-57. The bankruptcy court denied the motion and made some observations that are applicable to the Plan Beneficiaries' request:

> The Court recognizes that these cases are large and complex. However, the Court finds that appointing an additional committee would not facilitate a more harmonious resolution of the cases but would instead engender discord, litigation and delay. The Court finds that an additional committee would not provide a benefit to the overall administration of the estate. The singular goal of a committee representing the Plan Participants would be to ensure the assumption of the Non-Qualified Plans. The Court does not find it appropriate for the estates to fund litigation regarding the assumption or rejection of a particular contract. The Court finds that the additional costs, especially those associated with the retention of experts, militate against the appointment of an additional committee. The Court finds that the Plan Participants' interests are already being represented by the Creditors' Committee. To the extent that the Non-Qualified Plans are rejected and the Plan Participants have unsecured claims, they will have the same interest as every other unsecured creditor, maximizing the value of the Debtors' estates.

*Id.* at 857-58.

22.     In these cases, the Plan Beneficiaries are seeking an official committee with a "singular goal:" to litigate the issue of whether the plan assets are property of the Debtors' estates. While the Plan Beneficiaries contend that there will be "no unreasonable . . . cost," Mot. ¶ 15, the concept of having the Debtors' estates pay for their litigation is entirely unreasonable. For the same reasons described by the *Winn-Dixie* court, the Motion should be denied, with the Plan Beneficiaries reserving their rights to seek reimbursement for their expenses consistent with 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) in the event that subsequent litigation produces a "substantial contribution" in the cases. *See generally Lebron v Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994).

## **CONCLUSION**

WHEREFORE the UST requests that this Court issue an order denying the Motion.

        Respectfully submitted,

        **KELLY BEAUDIN STAPLETON**
        **UNITED STATES TRUSTEE**


**BY:** /s/ Joseph J. McMahon, Jr.
        Joseph J. McMahon, Jr., Esquire (# 4819)
        Trial Attorney
        United States Department of Justice
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 King Street, Room 2207, Lockbox 35
        Wilmington, DE  19801
        (302) 573-6491
        (302) 573-6497 (Fax)

Date:  April 30, 2007