IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC.,** | : | **Case No. 07-10416 (KJC)** |
| **a Delaware corporation, et al.,** | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Hearing Date: May 30, 2007 @ 2:30 p.m. |
| | : | Objection Deadline: May 23, 2007 @ 4:00 p.m. |
| | : | |

**APPLICATION FOR ORDER PURSUANT TO SECTION 327(e) OF
THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, AS SPECIAL
CORPORATE AND LITIGATION COUNSEL TO THE
DEBTORS *NUNC PRO TUNC* AS OF APRIL 2, 2007**

New Century TRS Holdings, Inc., *et al.*,[1] the debtors and debtors-in-possession

herein (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit

this application (the "Application") for entry of an order in substantially the form attached hereto

as Exhibit A, pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Debtors and New Century Warehouse Corporation ("New Century Warehouse"),

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

a wholly-owned non-debtor subsidiary of New Century TRS Holdings, Inc., to retain and employ Sheppard, Mullin, Richter & Hampton LLP ("SMRH") as special corporate and litigation counsel to the Debtors and to New Century Warehouse in these chapter 11 cases, *nunc pro tunc* to April 2, 2007. In support of this Application, the Debtors respectfully represent and state as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014.

### BACKGROUND

2.      New Century Financial Corporation ("NCF"), a Maryland corporation and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers.

3.      As discussed in more detail below, on February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

-2-

4.    On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG, NCF's independent auditor, could not complete its audit of NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee.  NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

5.    These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business.  Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability.  During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully.  Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors.  Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

6.    As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans.  The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

7.    On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief.  Further, the court entered an order approving the joint administration of the Debtors' chapter 11 cases for procedural purposes only.  The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

## RELIEF REQUESTED

8.    By this Application, the Debtors seek the entry of an order, substantially in

-3-

the form attached hereto as <u>Exhibit A</u>, pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014, authorizing the Debtors and New Century Warehouse to retain and employ SMRH in accordance with the terms of the form of retainer letter annexed hereto as <u>Exhibit C</u> (the "<u>Retainer Letter</u>") in connection with litigation, general corporate legal work, and related legal matters such as (a) labor and employment matters, including the defense of the pending lawsuit entitled *Daniel J. Rubio v. New Century Mortgage Corporation* (the "<u>Rubio Litigation</u>"), (b) corporate governance and SEC matters, (c) regulatory matters, (d) mergers and acquisitions and asset sales, including the pending sale by New Century Warehouse of substantially all of its assets to Access Holdings Corporation.

## FACTS RELEVANT TO THE RELIEF REQUESTED

9.    SMRH has been providing legal services to various of the Debtors since roughly March of 2004.   On February 7, 2007, New Century Financial Corporation, New Century Mortgage Corporation, Home 123 Corporation, NC Capital Corporation, and certain of their affiliates entered into a comprehensive Retainer Letter setting forth the terms and conditions on which SMRH would continue to be engaged to serve as their counsel with respect to litigation, general corporate legal work and related legal matters such as labor and employment matters, corporate governance and SEC matters, regulatory issues, and mergers and acquisitions.   The terms of this Retainer Letter superseded all prior engagement agreements between the parties.

10.    In December 2005, New Century Warehouse, a shell company wholly owned by New Century TRS, entered into an agreement to acquire substantially all of the assets of Access Lending Corporation ("<u>Access Lending</u>").   New Century Warehouse was represented by SMRH in connection with this transaction (the "<u>Initial Access Transaction</u>").   Access Lending was in the business of financing residential mortgage loans originated by a network of loan brokers and smaller financial institutions.   Access Lending provided financing to these loan originators that was used, in turn, by these originators to fund the loans provided to individual borrower/customers of the originators.   Access Lending, in turn, obtained its financing from

-4-

three warehouse lenders who entered into various receivable purchase agreements, credit agreements and repurchase agreements (collectively, the "Warehouse Loan Facilities"). Since this acquisition, New Century Warehouse has operated largely independently of the Debtors. However, the Debtors' financial difficulties triggered cross-defaults under New Century Warehouse's Warehouse Loan Agreements.

11.    One of these warehouse lenders, Goldman Sachs Mortgage Corporation ("Goldman") declared an event of default under a Master Repurchase Agreement dated as of February 15, 2006, as amended (the "Goldman-Access Lending Warehouse Loan Agreement"). New Century Warehouse's other Warehouse Lenders were willing to work with the company. New Century Warehouse has entered into forbearance agreements with Galleon Capital, LLC, State Street Global Markets, LLC, and State Street Bank and Trust Company (collectively, "State Street") and Guaranty Bank.  These forbearance agreements have allowed New Century Warehouse to continue to operate.  However, they expire on April 27, 2007.  If State Street and Guaranty Bank exercise their remedies, it is possible that there will be no value for any other creditors or shareholders in New Century Warehouse.  Moreover, the employees of New Century Warehouse would be likely to quit and New Century Warehouse could cease functioning as an operating business.

12.    Commencing on or about March 29, 2007, SMRH was engaged to represent New Century Warehouse in structuring and negotiating a sale of substantially all of its assets.  Given the exigencies of this case, SMRH has (at the direction and with the knowledge of the Debtors) expended considerable time and effort with respect to these sale efforts both prior to, and following, the commencement of chapter 11 cases by the Debtors.   With SMRH's assistance, New Century Warehouse has reached an agreement to sell substantially all of its assets as a going concern, which transaction (the "Sale Transaction") also included a release that was negotiated for the benefit of the Debtors. (The Sale Transaction is described in greater detail in the *Motion of the Debtors and Debtors in Possession Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 for an Order Authorizing the Access*

*Sale and Granting Related Relief.*)

13    On March 21, 2005, Daniel J. Rubio, John Hicks, David Vizcarra, individually and on behalf of themselves, all others similarly situated, and the general public commenced a lawsuit against New Century Mortgage Corporation ("New Century") entitled *Daniel J. Rubio v. New Century Mortgage Corporation*, Orange County Superior Court Case No. 05CC00063.  In May of 2005, New Century retained SMRH to represent it in connection with the Rubio Litigation, together with any related claims and proceedings.

14.    SMRH is well-qualified to continue to represent the Debtors and New Century Warehouse in connection with the Sale Transaction, general corporate legal work, litigation, labor and employment matters such as the Rubio Litigation, corporate governance and SEC matters, regulatory issues, mergers and acquisitions, and related legal matters inasmuch as SMRH has a long-standing relationship with the Debtors and is already readily familiar with the various corporate and litigation issues faced by the company, and the Debtors desire to continue SMRH's engagement with respect to these matters.

*SMRH's Qualifications*

15.    As indicated by the biographical summaries annexed hereto as Exhibit B, SMRH is highly qualified to serve as special corporate and litigation counsel in these chapter 11 cases.  SMRH has experience in virtually all aspects of the law that may arise in connection with the proposed representation.

16.    Among other things, SMRH has significant expertise providing ongoing general and specialized corporate advice on all aspects of operations and business strategy to private and public businesses of all sizes, particularly those known as "middle market" companies.  SMRH has particular expertise representing mortgage companies involved in the creation and distribution of financial products and financial services in a wide variety of transactions, including formation and initial capitalization, executive compensation and regulatory compliance matters, Internet and e-commerce arrangements (including co-branding, licensing and other strategic transactions), various forms of equity and debt offerings (public and

-6-

private), strategic alliances and partnerships, and merger and acquisitions.

17.    SMRH also has extensive experience representing clients in the defense of employment and benefit related class action suits.  SMRH has represented clients in a broad spectrum of collective and class actions, including disputes under the Fair Labor Standards Act and state wage/hour laws involving employee classification and exemption matters, overtime and other compensation matters; work place safety such as exposure to toxic or hazardous substances; discrimination in hiring and recruiting, performance and promotion, compensation and termination; meals and rest periods; vacation pay; and commission disputes.  SMRH has also represented clients in class action matters pertaining to the Employee Retirement Income Securities Act.  These cases have ranged in size and complexity from claims for benefits and breach of fiduciary duty to retiree medical benefits and disputes over vesting provisions.

18.    SMRH has stated its desire and willingness to act in these cases and render the necessary professional services as special corporate and litigation counsel for the Debtors.

*Services to Be Provided by SMRH*

19.    The Debtors propose that SMRH be employed to represent the Debtors and New Century Warehouse, in accordance with the terms of the Retainer Letter, to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

Representing the Debtors in connection with litigation, general corporate legal work, and related legal matters such as:

(a)    labor and employment matters, specifically the defense of the Rubio Litigation;

(b)    corporate governance and SEC matters;

(c)    regulatory matters; and

(d)    mergers and acquisitions and asset sales, including the pending Sale Transaction.

20.    The Debtors do not intend for SMRH to be responsible for the provision of substantive legal advice outside of litigation and corporate legal work noted in Paragraph 19

of this Application, including advice in such areas as patent, trademark, taxation, criminal or real estate law. Further, the Debtors do not intend for SMRH to be required to devote attention to, form professional opinions as to, or advise the Debtors with respect to its disclosure obligations under federal securities or other nonbankruptcy laws or agreements.

*The Effectiveness of SMRH's Employment*

21.    As discussed above, SMRH has been providing legal services to various of the Debtors for over three years. In February 2007, and following a comprehensive review by New Century Financial Corporation and New Century Mortgage Corporation and their financial consultants, New Century Financial Corporation, New Century Mortgage Corporation, Home 123 Corporation, NC Capital Corporation, and certain of their affiliates (the "New Century Entities") entered into a comprehensive Retainer Letter setting forth the terms and conditions on which SMRH would continue to be engaged to serve as their corporate and litigation counsel. This Retainer Letter superseded and replaced all prior engagement letters to which the New Century Entities and SMRH were a party.

22.    As noted above, SMRH represented New Century Warehouse in connection with the Initial Access Transaction. Commencing on or about March 29, 2007 SMRH was engaged to represent New Century Warehouse in structuring and negotiating a sale of substantially all of its assets. Given the immediate financial challenges faced by the Debtors and by New Century Warehouse, SMRH has expended considerable time and effort with respect to the Sale Transaction both prior to, and following, the commencement of chapter 11 cases by the Debtors. With SMRH's assistance, New Century Warehouse has successfully negotiated an Asset Purchase Agreement between New Century Warehouse and Access Lending with respect to the Sale Transaction, and on or about April 13, 2007 the Debtors filed a motion with this Court seeking authority to authorize New Century Warehouse to enter into and perform under the Asset Purchase Agreement. This motion was granted on April 24, 2007

23.    SMRH was engaged by the Debtors to defend the Rubio Litigation on March 19, 2007. On the Petition Date, plaintiffs Daniel J. Rubio, John Hicks and David Vizcarra

-8-

filed their *Plaintiff's Notice of Motion and Motion for Leave to File Fifth Amended Complaint* in violation of the automatic stay applicable in the Litigation by operation of Section 362 of the Bankruptcy Code. In response, on April 9, 2007 SMRH prepared and filed the Debtors' *Notice of Filing of Chapter 11 Petitions and Imposition of Automatic Stay; Opposition to Motion for Leave to File a Fifth Amended Complaint.* This was followed by the filing of an *Ex Parte Application by Plaintiffs to: Place This Case on Active Status, Allow This Case to Proceed Against Non-Bankrupt Co-Defendants, and to Reset Hearing on Plaintiff's Motion for Leave to File Fifth Amended Complaint as to Non-Bankrupt Co-Defendants.* SMRH prepared and filed a response to this *ex parte* application, on an emergency basis, on April 18, 2007.

24.    Because of the expedited timetable within which SMRH was required to provide services in connection with the Sale Transaction and the Rubio Litigation, SMRH has continued to represent the Debtors and New Century Warehouse following the Petition Date, and the Debtors were unable to obtain this Court's approval of SMRH's retention as special corporate and litigation counsel to the Debtors prior to the commencement of postpetition work by SMRH. The Debtors have worked diligently with SMRH and filed this Application as soon as practicable. Thus, the Debtors submit that approving SMRH's retention in these cases *nunc pro tunc* to April 2, 2007, is appropriate under the circumstances.

### *Disclosure Concerning Conflicts of Interest*

25.    To check and clear potential conflicts of interest in these cases, and based upon information known on or near the date of this Application, SMRH researched its client database to determine whether it has any relationships with the following entities (collectively, the "Interested Parties"):

      a.     the Debtors (using both current and former names);

      b.     the 50 largest unsecured creditors for the Debtors on a consolidated bases as identified in the Debtors' chapter 11 petitions;

      c.     the Debtors' secured creditors;

      d.     the Debtors' current directors and senior employees;

      e.     the Debtors' significant shareholders of NCF; and

f.      professionals that the Debtors have identified as involved in these chapter 11 cases.

26.     The identities of the Interested Parties were provided to SMRH by the Debtors and are set forth on <u>Schedule 1</u>[2] to the Declaration of David H. Sands, a partner of SMRH (the "<u>Sands Declaration</u>"), a copy of which is annexed hereto as <u>Exhibit D</u>, and incorporated herein by reference. SMRH has advised the Debtors that it has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases. SMRH has further advised the Debtors that, to the extent its research of its relationships with the Interested Parties indicated that it has represented, or currently represents, any Interested Party in matters <u>unrelated</u> to these chapter 11 cases, the identities of such Interested Party (and, for current SMRH clients, a brief description of the type of work performed) are set forth below.

27.     To the best of the Debtors' knowledge and belief, insofar as the Debtors have been able to ascertain after reasonable inquiry and except as may be described herein and in the Sands Declaration, neither SMRH nor any of the attorneys employed by it have any connection with the Debtors, their creditors, the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), the Office of the U.S. Trustee, any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants. As disclosed in the Sands Declaration, among other things:

a.      SMRH has not represented, and does not and will not represent, any entity other than the Debtors and New Century Warehouse in matters related to these chapter 11 cases.

b.      SMRH formerly represented the following Interested Parties in matters unrelated to these chapter 11 cases:

(i)      AMERITECH Credit Corporation;

---

[2] The Interested Parties identified on Schedule 1 include NC Capital Corporation (a Debtor entity) and New Century Funding A, New Century Funding I, and New Century Mortgage Securities, Inc. (non-Debtor affiliates) as UCC parties on account of certain intercompany liabilities. The existence of an intercompany liability does not preclude joint representation by a single professional. *See, e.g., In re BH & P Inc*, 949 F.2d 1300, 1215-16 (3d Cir. 1991) (holding that courts must take a "flexible" approach in considering employment of professionals and that "the existence of interdebtor claims is     no longer an automatic ground for disqualification of counsel . . . .") The Debtors believe that there is no current conflict between the Debtor entities or Debtor affiliates with respect to the matters covered by SMRH's engagement, and if any actual conflict should arise, the Debtors and SMRH will seek authority from this Court for SMRH to withdraw from its representation of one or more of the Debtor entities or affiliates as is needed to alleviate the conflict.

RLF1-3144401-1

       (ii)     Bank of the West;

       (iii)    Barclays Bank, PLC;

       (iv)    Greenwich Capital Financial Products, Inc.; and

       (v)     Nomura Securities

c.    Certain attorneys who are currently employed by, or are partners of, SMRH formerly represented the Barclays Bank, PLC in matters unrelated to these chapter 11 cases.

d.    SMRH currently represents the following Interested Parties in matters unrelated to these chapter 11 cases:

       (i)     Bank of America, NA (major firm client; various matters);

       (ii)     Bank of the West (trust administration);

       (iii)    Barclays Bank, PLC (entertainment, intellectual property, antitrust matters);

       (iv)    Countrywide Home Loans, Inc. (major firm client; various matters);

       (v)     Credit Suisse First Boston Mortgage Capital LLC (creditor rights);

       (vi)    Deutsche Bank Trust Company Americas (creditor rights and finance);

       (vii)   General Electric Capital Corporation, aka GECC (major firm client; various matters);

       (viii)  GMAC Commercial Financial LLC (major firm client; various matters);

       (ix)    Goldman Sachs Mortgage Company (creditor rights);

       (x)     U.S. Bancorp Equipment Finance, Inc. (corporate trust);

       (xi)    U.S. Bank National Association (major firm client; various matters);

       (xii)   Aurora Loan Services; (corporate matters)

       (xiii)  HSBC Bank USA, N.A. (finance, regulatory, and litigation matters);

       (xiv)  INDY MAC Bank, FSB (major firm client; various matters);

       (xv)   JP Morgan Chase Bank, N.A. (creditor rights and finance);

       (xvi)  Lehman Brothers Bank FSB (corporate matters);

       (xvii)  Pricewaterhouse Coopers LLP (creditor rights and finance);

       (xviii) Guaranty Bank (major firm client); and

       (xix)  Washington Mutual Bank, FA (major firm client; various matters).

e.    SMRH also represents, or has represented, entities that might be affiliated with, or related to, various of the Interested Parties, as set forth in more detail below. SMRH's representation of these affiliated or related entities pertains to matters unrelated to these chapter 11 cases:

       (i)     SMRH currently represents Citigroup. CDC Holdings, Inc. is an affiliate of Citigroup, and CDC Holdings, Inc. might also be

affiliated with  or related to **CDC Mortgage Capital, Inc.** and/or **Citigroup Global Markets Realty Corp.**

(ii)    SMRH currently represents CIT Communications, Media and Entertainment Finance and the CIT Group, which appear to be affiliated with **CIT Communications Finance Corporation.**

(iii)   SMRH currently represents Citigroup, which is an affiliate of **Citigroup Global Markets Realty Corp.**

(iv)   Credit Suisse Leasing is related to the client in a chapter 11 matter that SMRH is handling for Windpower Partners 1993 LP, and Credit Suisse Leasing appears to be affiliated with **Credit Suisse First Boston Mortgage Capital LLC.**

(v)    Credit Suisse is related to the client in a matter that SMRH is handling for Swiss American Corporation, and Credit Suisse appears to be affiliated with **Credit Suisse First Boston Mortgage Capital LLC.**

(vi)   SMRH currently represents Deutsche Financial Services and formerly represented Deutsche Bank Securities, Inc., both of which appear to be affiliates of **Deutsche Bank Trust Company Americas.**

(vii)  SMRH formerly represented Gemini Partners, Inc., which might be an affiliate of **Gemini Securitization Corp., LLC.**

(viii) SMRH currently represents Goldman Sachs Specialty Lending Group, L.P.,  which appears to be an affiliate of **Goldman Sachs Mortgage Company.**

(ix)   Kurt Johnson is related to the client in a matter that SMRH is handling for Mobile Sonar, Inc., and "Kurt Johnson" might be related to, or the same as, "**Kurt F. Johnson.**"

(x)    SMRH currently represents Morgan Stanley & Co. and Morgan Stanley/US Real Estate Investing Division,  which appear to be affiliates of **Morgan Stanley Mortgage Capital, Inc.**

(xi)   State Street Bank & Trust Company, which might be an affiliate of **State Street Global Markets**, is the ultimate parent of SSB Realty.   SMRH currently represents SSB Realty, and SMRH previously represented State Street Bank & Trust Company.

(xii)  SMRH currently represents Bear Stearns & Company, Inc. and Bear Stearns Commercial Mortgage, Inc., and Bear Stearns Merchant Manager II LLC is the ultimate parent in a matter that SMRH is handling for Tap Operating Company LLC (collectively, the "Bear Stearns Entities").   **EMC Mortgage Corporation** appears to be an affiliate of one or more of the Bear Sterns Entities.

(xiii) SMRH currently represents Household Commercial Financial Services, Inc. and Metris Companies, Inc., whose ultimate parent is **HSBC Bank USA, N.A.**, and HSBC Bank USA, N.A. is related to another SMRH client, The Hong Kong and Shanghai Banking Corporation Limited, Shanghai Branch.   SMRH also currently represents Wells Fargo HSBC Trade Bank, N.A., which appears to be an affiliate of HSBC Bank USA, N.A.

(xiv) JP Morgan Chase Bank is the ultimate parent in a matter SMRH is handling for Chase Home Finance, LLC. SMRH currently represents JP Morgan Partners, LLC, JP Morgan Securities, Inc., JP Morgan Chase, and JP Morgan Private Bank, which appear to be affiliates of **JP Morgan Chase Bank, N.A.**

(xv) SMRH represents Lehman Brothers, which is an affiliate of **Lehman Brothers Bank FSB** and **Aurora Loan Services**.

(xvi) Lehman Brothers is also related to the client in a matter SMRH is handling for Mission Place, LLC and in a matter SMRH is handling for CleanBrands, LLC.

(xvii) Lehman Brothers and Lehman Brothers Bank FSB are related to the client in a matter SMRH is handling for Financial Freedom Senior Funding Group.

(xviii) Lehman Brothers Holdings, Inc. is the ultimate parent in a matter SMRH is handling for BNC Mortgage, Inc. and in another matter that SMRH is handling for Wilton Partners Forest Hills, LLC., *et. al.*

(xix) Lehman Brothers is the ultimate parent in a matter SMRH is handling for Aurora Loan Service and in another matter SMRH is handling for Integral Partners, LLC.

(xx) SMRH previously represented Price Waterhouse & Co. and Price Waterhouse S.A., which appear to be related to **Pricewaterhouse Coopers LLP.**

(xxi) SMRH represents Sprint Nextel, which appears to be related to **Sprint.**

(xxii) SMRH previously represented Sun Trust Banks of Florida, Inc., which may be related to **Suntrust.**

(xxiii) Anthony L. Meola, Esq. is the contact person in a matter that SMRH is handling for Dictaphone Corporation, and it is possible that "Anthony L. Meola" is the same as "**Anthony Meola.**"

(xxiv) SMRH represents GMAC Commercial Finance, LLC, which is an affiliate of **Residential Funding Corporation.**

(xxv) SMRH formerly represented an official committee of creditors in connection with an unrelated Chapter 11 case whose general unsecured creditors included **PriceWaterhouse Coopers LLP.**

28.  In the future, SMRH may serve as counsel to certain other Interested Parties in matters unrelated to these cases. In the event that SMRH is so retained, SMRH will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

29.  To the best of the Debtors' knowledge, information and belief, SMRH represents no interest adverse to the Debtors in the matters for which SMRH is proposed to be

retained. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Sands Declaration. The employment of SMRH as special corporate and litigation counsel to the Debtors is appropriate and necessary to enable the Debtors to adequately defend themselves in the Rubio Litigation and to complete the Sale Transaction. The Debtors submit that the employment of SMRH as set forth in this Application would be in the best interests of the Debtors' respective estates.

### *Disclosure of Compensation*

30.    With respect to SMRH's services as special corporate and litigation counsel, the Debtors request that all legal fees and related costs and expenses incurred by the Debtors on account of services rendered by SMRH to the Debtors and New Century Warehouse in connection with these cases be paid as administrative expenses of the estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code. Subject to the Court's approval, on an interim basis, SMRH will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered. SMRH has informed the Debtors that its billing rates for attorneys in its corporate and labor departments currently vary from $300 per hour to $615 per hour, and from $195 to $225 for paralegals and clerks. SMRH has agreed to give the Debtors advance written notice of any upward adjustments in the rates and acknowledges that the Debtors' consent thereto in writing is required before such rate increases become effective.[3] The range of billing rates set forth above reflects, among other things, differences in experience levels within classifications and differences between types of services being provided. A list of the guideline hourly rates for those members of SMRH that are expected to render substantial and material services to the Committee is included in the biographical summaries annexed hereto as Exhibit B.

31.    The Debtors have been billed, and will continue to be billed, at SMRH's

---

[3] SMRH has agreed to give the Debtors advance written notice of any upward adjustments in the rates and acknowledges that the Debtors' consent thereto in writing is required before such rate increases become effective

customary billing rates for matters of this type, together with reimbursement of all reasonable costs and expenses incurred by SMRH in connection herewith. Such expenses include, but are not limited to, charges for messenger services, air couriers, photocopying, postage, long distance telephone service, outgoing facsimile service, computerized legal research facilities (including the time billed for such legal research), process service, investigative searches, and other charges customarily invoiced by law firms. The Debtors propose to pay SMRH at such rates and to reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable orders of this Court. Moreover, the Debtors understand that SMRH hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

32.    Prior to the Petition Date, SMRH performed services for the Debtors in connection with its retention as litigation and general corporate counsel, and the Debtors made approximately $373,879.16 in payments, in aggregate, to SMRH for services provided during the 90 days prior to the Petition Date. As of the Petition Date, the Debtors owed to SMRH approximately $48,124.56 for unpaid legal services and unreimbursed expenses incurred prior to the Petition Date, and SMRH accordingly believes that it is entitled to assert a $48,124.56 claim against the Debtors' estates.

33.    SMRH has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Sands Declaration. Further, SMRH has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

34.    The Debtors, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, propose to pay SMRH its

-15-

customary hourly rates for services rendered, as set forth above, and to reimburse SMRH according to its customary reimbursement polices, and submit that such rates are reasonable.

## NOTICE

35.    The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to Greenwich Capital Financial Products, Inc., and The CIT Group/Business Credit, Inc., the Debtors' postpetition senior secured lenders; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, in accordance with Del. Bankr. L.R. 2002-1(b).   The Debtors submit that no other or further notice is necessary or required.

## NO PRIOR REQUEST

36.    No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE,** the Debtors respectfully request that the Court grant this Application in all respects and grant such other and further relief as is just and proper.

Dated: May *1*, 2007          Respectfully submitted,

Wilmington, Delaware

New Century Financial Corporation, and on behalf of New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp., New Century R.E.O. II Corp., New Century R.E.O. III Corp., New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., as Debtors and Debtors in Possession

By: _____
    Name  Monika L. McCarthy
    Title:  SVP and Assistant General Counsel

-16-