# EXHIBIT C



February 2, 2007

**CONFIDENTIAL**
**ATTORNEY CLIENT COMMUNICATION**

Greg S. Labate
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive
Fourth Floor
Costa Mesa, CA 92626

Re:   Legal Representation

Dear Mr. Labate:

We are pleased to retain Sheppard Mullin Richter & Hampton LLP (the "Firm") to act as counsel to New Century Financial Corporation, New Century Mortgage Corporation, Home 123 Corporation, NC Capital Corporation and their affiliates listed on Exhibit "A" (collectively the "Company" or "New Century") in connection with the matters described in this letter and as directed by in-house counsel of New Century Mortgage Corporation. By agreement of the parties, this letter shall supersede all prior engagement agreements between the parties and shall be deemed jointly drafted by the parties.

**Scope of Engagement.** The Company is engaging the Firm to act as counsel for New Century in connection with litigation, general corporate legal work and related legal matters as directed in writing by in-house counsel of New Century Mortgage Corporation.

**Current Hourly Rate.** We have agreed that these attorneys will be handling the bulk of the legal work for the Company:

**Labor and Employment**

| Attorney | Title | Non-Discounted Hourly Rate |
|---|---|---|
| Greg Labate | Partner | $480 |
| Ryan McCortney | Partner | $480 |
| Kelly Hensley | Partner | $480 |
| Jason Gasper | Partner | $480 |
| David Paik | Partner | $550 |
| Geoff DeBoskey | Associate | $435 |
| Michael Chan | Associate | $355 |



#### Corporate Governance / SEC

| Attorney | Title | Non-Discounted Hourly Rate |
|---|---|---|
| Peter Menard | Partner | $615 |
| Ethan Feffer | Partner | $595 |
| Su Lian Lu | Senior Associate | $465 |

#### Regulatory

| Attorney | Title | Non-Discounted Hourly Rate |
|---|---|---|
| David Sands | Partner | $540 |
| Sherwin Root | Senior Attorney | $450 |
| Donna Hueckel | Senior Attorney | $380 |
| Charlotte Grissom | Associate | $300 |

#### Secondary Marketing

| Attorney | Title | Non-Discounted Hourly Rate |
|---|---|---|
| David Sands | Partner | $595 |
| Bill Wyatt | Partner | $595 |
| Alan Martin | Partner | $595 |
| Sherwin Root | Senior Attorney | $445 |
| Charbel Lahoud | Senior Associate | $445 |
| Charlotte Grissom | Associate | $300 |

#### Mergers and Acquisitions

| Attorney | Title | Non-Discounted Hourly Rate |
|---|---|---|
| David Sands | Partner | $595 |
| Ethan Feffer | Partner | $595 |
| Will Chuchawat | Associate | $385 |
| Matthew Richardson (Tax work) | Partner | $615 |

Paralegals may be used at the current hourly rate of $225 and law clerks may be used at the current hourly rate of $195. Time will be billed by the 1/10th of the hour and recorded for actual time spent on the Company's legal work. No hourly rates will change unless agreed to in writing by the Company.

**Costs.** Costs incurred for amounts under $500 will be advanced by the Firm and included on the Company's monthly invoice for the particular matter in which they were incurred. Expert costs and out-of-town travel for experts and attorneys will be pre-approved in writing by the Company.

**Other Business Terms.** Pursuant to the terms of Firm's Request for Proposal (RFP) and other submissions and negotiations throughout the Firm selection process, Firm agrees to the following:



    a. The rates set forth above will be discounted as follows:
- 10% off Mergers and Acquisitions
- 12% off Corporate Governance / SEC
- 12% off Labor and Employment
- 12% off Regulatory Compliance
- 10% off Secondary Marketing

    b. Firm agrees to lock quoted hourly rates until December 31, 2007

    c. Firm agrees to an annual increase cap of 3% starting January 1, 2008 and ending December 31, 2009

    d. Firm will agree to provide an estimated budget on all matters to Company's in-house counsel

    e. Firm agrees to keep Company apprised of the status of the budget at certain intervals, including once the budget has been exceeded. Those intervals include the following: 50%, 75%, 100%, 110%, 120% etc.

    f. Firm will provide, upon request, a written explanation as to the reasons for the overage so Company can determine is such a budget overage is warranted.

**Termination.** The Company may terminate the Firm's representation at any time, with or without cause, by notifying the Firm. If such termination occurs, the entire original file will be returned to the Company promptly and the Firm may make copies of its own files pertaining to the case at its expense if it so chooses. The Company's termination of the Firm's services will not affect the Company's responsibility for payment of legal services rendered and out-of-pocket costs incurred before termination and in connection with an orderly transition of the matter.

The Company understands that the Firm is subject to certain rules of professional responsibility that identify several types of conduct or circumstances that require or allow the Firm to withdraw from representing the Company, for example, nonpayment of fees or costs, misrepresentation or failure to disclose material facts. The Firm will try to identify in advance and discuss with the Company any situation that may lead to withdrawal; and if withdrawal ever becomes necessary, the Firm will immediately give the Company written notice of its intent to withdraw and will only withdraw in a manner that will not prejudice the Company. The Firm specifically agrees to be bound by the California Rules of Professional Conduct, including Rule 3-700 regarding termination.

**Privacy.** Professionals who advise on personal financial matters, such as attorneys, are required by federal law to notify their clients about their policies on privacy. The Firm understands the Company's concern for privacy. As attorneys, the Firm acknowledges that it has been and will continue to be bound by professional standards of confidentiality that are even more stringent than those required by this federal law. Consequently, the Firm has always protected its clients' right to privacy.



In the course of representing the Company, the Firm may receive non-public information about New Century or its customers. The Firm will not disclose any non-public information about current or former clients, or their customers, except as expressly or impliedly authorized by its clients to enable the Firm to represent them or as required or authorized by law or other applicable rules governing your professional and ethical conduct as attorneys.

The Firm retains records relating to the professional services that it provides so that it is better able to assist clients with their professional needs and to comply with professional guidelines or requirements of law. In order to guard clients' nonpublic personal information, this will confirm that the Firm maintains physical, electronic, and procedural safeguards that comply with applicable professional standards.

**Disputes/Governing Law.** Our attorney-client relationship will be governed by California law, including the California Rules of Professional Conduct. All legal actions between the Firm, or any professional acting on behalf of the Firm, and the Company arising out of or related to services provided by the Firm to the Company must be initiated in Orange County, California.

**Outside Counsel Policy.** This will confirm that the Firm agrees to be bound by New Century's Policy Statement Regarding Use of Outside Counsel (a copy of which is attached to this letter).

If the terms of the Firm's representation as set out in this letter are acceptable, then please indicate the Firm's approval by signing the enclosed copy of this letter and return it to us.

Thank you for agreeing to represent New Century and for your attention to this matter. We look forward to working with you.

Sincerely,

Monika L. McCarthy
General Counsel, New Century Mortgage Corporation
Assistant General Counsel, New Century Financial Corporation



AGREED TO AND ACCEPTED
THIS 1st DAY OF February, 2007:

Sheppard, Mullin, Richter & Hampton LLP

By:_____
   Name: David H. Sands
   Title: Partner



# NEW CENTURY FINANCIAL CORPORATION AND SUBSIDIARIES

## POLICY STATEMENT REGARDING USE OF OUTSIDE COUNSEL

Through the legal department, New Century engages and manages the legal services provided by numerous law firms. This Policy Statement is intended to describe the approach we have developed to establish and maintain productive relationships with outside counsel and to address some specific issues which arise from time to time. It should be considered an integral part of the terms under which outside counsel are engaged to represent the Company.

## MANAGEMENT ISSUES

### Case Management

Each legal matter involving the Company is assigned to the legal department, and we assume responsibility for engaging and managing any outside counsel on that matter. Once we have engaged a firm to render legal services, we expect our outside counsel, after consultation with our office, to abide by our decisions concerning the objectives of representation and the means by which those objectives are to be pursued. In this regard, our outside counsel can anticipate that they will be guided by our office on such matters as (i) the level of effort desired for a particular assignment; (ii) the time frame for the completion of work; and (iii) the method of reporting results. In addition, our outside counsel will increasingly be expected to develop a comprehensive case or project strategy statement at the outset and a preliminary case or project budget which will be revised periodically or as significant developments occur.

### Dealing Directly with Company Personnel

Because we have a decentralized management philosophy, we, at times, allow designated management personnel to coordinate directly with outside counsel depending upon the materiality and difficulty of the matter. We will confirm all such instances. We also recognize that it can be more efficient for outside counsel to work directly with Company personnel, especially in developing the necessary facts to support the Company's position in a matter. The legal department should be kept advised of the nature of any direct discussions and must be copied on all related correspondence.

### Staffing Matters

We favor the practice of using experienced junior lawyers or paralegals to work on our matters whenever it is possible to do so without in effect having a more senior lawyer rework the project. We disfavor having more than one attorney from one law firm attend the same proceeding, unless approval to do so is obtained in advance. We are also



generally skeptical about charges for conferencing or "strategizing" among lawyers within the firm and about numerous lawyers spending considerable time "reviewing the file."

No expert witnesses or consultants are to be engaged to work on a matter without our prior approval.

Billing Rates

Billing rates for each person working on a matter must be agreed to at the time the firm is engaged. Rate changes will not be accepted without prior written notice and our written concurrence.

Administrative Time

We do not expect to be charged for time spent identifying, communicating or resolving issues pertaining to conflict of interests or for time spent preparing bills.

Budget (Fees and Disbursements)

For all matters to be billed on an hourly basis, outside counsel must, at the outset of the engagement, provide an estimate (within a reasonable range) of the fees and disbursements for the matter and include such estimate (and the assumptions upon which such estimate is based) in the budget. The Company recognizes that an initial estimate will probably require revision over time because of changes in circumstances, delays or other factors which cannot be anticipated at the outset of the engagement. However, aggressive opposing counsel and extensive discovery law and motion practice should be anticipated in litigation matters other than routine single asset litigation matters. The appropriate in-house attorney must approve any material variance from a previously agreed estimate. Any proposal by the law firm to use a non-hourly method of billing (such as contingency or fixed fee arrangements or billing premiums) must be discussed and agreed upon in writing at the outset of the matter by the General Counsel.

Outside Counsel Responsibility

Though we are a "hands on" client, we cannot stress enough that we consider it to be a matter within outside counsel's professional responsibility to render legal services efficiently as well as effectively. To us, that means that even if we do not ask all the right questions about how to staff a particular project and so forth, outside counsel on his or her own initiative should anticipate choices which could be made regarding the manner in which legal services are performed and should bring them to our attention. Particularly on major matters, we may ask the firm to separately state time spent on various aspects of work performed for us, such as legal research or preparation of pleadings or contracts. We expect outside counsel to have the capability to generate such information for us to review. We also expect to receive copies of all internal research memoranda produced in the course of the firm's work on a matter for us. Furthermore, we expect that our outside



counsel will continually work to improve their firm's internal controls to ensure that the appropriate level of effort and experience are brought to bear, that fees billed are reasonable in relation to the services performed, and that invoices for services rendered are clear and complete and comply with these guidelines. We encourage our outside counsel to discuss these issues with us from time to time.

## BILLING PROCEDURES

Unless otherwise directed, all invoices for services must be sent to the legal department in Irvine, California. Invoices received from outside counsel will be promptly reviewed by our office for consistency with the requirements and procedures set forth below and elsewhere in this Policy Statement. Our office will discuss questions they may have about billing directly with the outside attorney rendering services on a particular matter or with the outside attorney responsible for billing. Please be sure that all bills, as well as any computer-generated billing detail furnished along with the bills, are accurate, as errors will cause delay in our approval and payment procedures. Payments generally will be made by the entity for which the services are performed.

<u>To Whom Bills Should Be Directed</u>

Bills should be directed to the billing coordinator in our Legal Department:

New Century Mortgage Corporation
c/o Daniel Paik
18400 Von Karman, Suite 1000
Irvine, CA 92612
(949) 255-6735

<u>Frequency of Bills</u>

In order to prepare accurate interim financial statements, we need to accurately track outstanding legal expenses. We have determined that the best method to avoid surprises is for outside counsel to bill promptly for all services rendered. Ordinarily, bills should be submitted within 20 days following the end of each month during which services were performed or disbursements incurred. If the bill on a matter for a particular month would be less than $500, however, that bill should be carried over to the next month unless it is identified as the final bill for the matter.

<u>Multiple Matters</u>

When multiple matters are covered by a single bill, each item should be separately grouped so that all monthly charges relative to each matter are clearly identifiable. Alternatively, you may send separate bills for separate matters.



Information Required in a Bill

- General Description of the Matter

    Include the name of the Company subsidiary, if not indicated in the title of the matter, for which the legal services were performed and a general description of the matter (e.g., John Doe v. New Century Mortgage Corporation - Wrongful Termination).

- Description of Legal Services

    Provide a reasonably specific description of services performed (by attorney or paralegal) by day showing the amount of time spent on such services. The description must be sufficiently itemized to allocate time within a matter to such categories of effort as (i) legal research, (ii) fact-gathering, (iii) internal conferences, (iv) communications with the client, (v) drafting particular documents, and (vi) court appearances. All governmental application and court filing fees should be separately and specifically identified. The description should be in chronological sequence for the month covered. Time billed for work performed while traveling must be identified as such.

- Disbursements and Backup Documentation

    Identify the out-of-pocket expenses attributable to the matter in the manner described in the Disbursements section of this Policy Statement.

- Summary Information

    At the end of each bill, a summary should be included, by timekeeper, showing each timekeeper's hourly billing rate, the number of hours each timekeeper worked, and the total fee reflected in the bill. In addition, each monthly statement should show the aggregate billing for the matter from the commencement of the matter to date.

## DISBURSEMENTS

General

Reasonable and proper out-of-pocket expenses are properly characterized as disbursements. Disbursements must be identified and charged to the appropriate matter. Firms are expected neither to gain nor lose financially on disbursements. Thus, disbursements should be charged at the firm's actual costs, without any premium or margin to the firm. For purposes of this Policy, actual costs are those costs incurred directly as a result of performing a service (such as the cost of paper used in photocopying or the long distance phone charged for taxes) and exclude indirect costs more

4



appropriately characterized as "overhead" (such as charges for any allocable portions of the building, utilities, typical law firm equipment, and support staff used in performing the service).

Documentation

Documentation provided should be sufficient to enable our office to quickly understand the time, nature, purpose and appropriateness of the disbursement being billed. For air travel, car rental, lodging or meal expenses, indicate on the bill by whom the expenses were incurred, where, when, the purpose and amount. For such expenses that are individually in excess of $250, we expect to receive a photocopy of the receipt.

Specific Disbursement Categories

Below are some examples of disbursement categories that are of particular concern and the basis upon which we will reimburse such disbursements:

- Photocopying Charges. Reimbursement will be made for charges at the firm's actual cost of photocopying (but in no event more than 10¢ per page). Any charges in excess of that amount must be authorized in writing by our office. Large individual projects (anticipated to be in excess of $250 of billable copying costs) must be reviewed with our office prior to being commenced. Any charges in excess of that amount must be authorized by our office.

- Facsimile Charges. Reimbursement will be made for charges at the actual cost of faxing (in no event more than 10¢ per page), provided that long distance phone calls for faxes are itemized.

- Long Distance Phone Charges. Reimbursement will be made for charges at the firm's actual cost (but in no event more than 6¢ per minute).

- Support Staff Charges. Generally, no charges will be paid for use of the firm's support staff, secretarial overtime, word processing, document production, messengers, etc. With the prior written approval of our office, however, exceptions may be made for extremely time sensitive matters that require extraordinary support staff assistance (where support staff hours are required on a basis substantially disproportionate to attorney/paralegal hours).

- Non-Reimbursable Items. The Company does not reimburse for interest on invoices or bill preparation time.

- Computer-Aided Research Charges. The reasonable use of Lexis® or Westlaw® to assist in approved research projects will be reimbursed at the firm's actual direct cost.



Large individual projects (anticipated to be in excess of $250 of billable computer-aided research costs) must be reviewed with our office prior to being commenced.

- Third-Party Courier Charges. Third-party courier charges will be reimbursed at the firm's actual direct cost.

- Data Input and Computer Use Charges for Case Management, Document Indexing, Etc.
  These charges will be paid only if our office has previously authorized in writing the computerization of the data.

- Travel. In general, outside counsel are expected to travel in a prudent, cost-effective manner, comparable to the way in which the Company's executives are accustomed to traveling. Extravagant meals, lodging or transportation will not be reimbursed. Air travel should be booked as far in advance as possible, selecting the lowest logical fare. Coach travel is required unless other arrangements have been approved in advance by writing our office. "Standard" single room accommodations are expected at moderately priced hotels.

- Meals and Entertainment. These charges will be reimbursed only if our office has authorized in writing in advance the specific expense.

- Media Relations. All media inquiries must be referred to the Company's Vice President, Corporate Communications. Outside counsel is not authorized to discuss legal matters with the media without prior authorization.

We believe that these policies are fair and appropriate and that adhering to them in all respects should not be difficult for any outside law firm engaged to represent the Company. Our selection and retention of outside counsel will necessarily be influenced by a particular firm's commitment to complying with these policies. We encourage each firm engaged by us to make sure that every attorney in the firm who works on a matter for us receives and reviews a copy of this statement. We also encourage outside counsel who have comments about these policies in general, or suggestions about how to better address particular aspects of our professional relationship, to share their thoughts with us.

| Entity Name | Entity Type | Entity Status | Jurisdiction | Formation Date |
|---|---|---|---|---|
| Anyloan Financial Corporation | Corporation | Active - Non Dormant | Delaware | 10/07/1999 |
| Austin Mortgage, L.P. | Limited Partnership | Active - Non Dormant | Texas | 12/05/2003 |
| Capital Pacific Home Loans, L.P. | Limited Partnership | Active - Non Dormant | Texas | 01/24/2004 |
| Capital Standard Origination Company | Corporation | Active - Non Dormant | Texas | 10/08/1993 |
| Compufund Mortgage Company, Ltd. | Limited Partnership | Active - Non Dormant | Texas | 08/29/1997 |
| CSOC XI, Inc. | Corporation | Active - Non Dormant | Texas | 04/14/1997 |
| CSOC XIV, Inc. | Corporation | Active - Non Dormant | Texas | 07/16/1997 |
| CSOC XXV, Inc. | Corporation | Active - Non Dormant | Texas | 05/28/1999 |
| CSOC XXVII, Inc. | Corporation | Active - Non Dormant | Texas | 05/28/1999 |
| CSOC XXXII, Inc. | Corporation | Active - Non Dormant | Texas | 10/30/2001 |
| CSOC XXXVII, Inc. | Corporation | Active - Non Dormant | Texas | 07/29/2002 |
| CSOC XXXVIII, Inc. | Corporation | Active - Non Dormant | Texas | 07/29/2002 |
| eConduit Corporation | Corporation | Active - Dormant | California | 09/23/2002 |
| Home123 Corporation | Corporation | Active - Non Dormant | California | 04/30/1999 |
| Kingston Mortgage Company, Ltd. | Limited Partnership | Active - Non Dormant | Texas | 06/10/1997 |
| Loan Partners Mortgage, Ltd. | Limited Partnership | Active - Non Dormant | Texas | 12/07/1993 |
| NC Asset Holding, L.P. | Limited Partnership | Active - Non Dormant | Delaware | 12/20/2005 |
| NC Capital Corporation | Corporation | Active - Non Dormant | California | 10/30/1998 |
| NC Deltex, LLC | Limited Liability Company | Active - Non Dormant | Delaware | 12/20/2005 |
| NC Insurance Services, Inc. | Corporation | Active - Non Dormant | California | 03/19/2004 |
| NC Participation Corporation | Corporation | Active - Non Dormant | Delaware | 12/13/2006 |
| NC Residual Corporation | Corporation | Active - Non Dormant | Delaware | 03/20/1998 |
| NC Residual III Corporation | Corporation | Active - Non Dormant | Delaware | 02/25/2002 |
| NC Residual IV Corporation | Corporation | Active - Non Dormant | Delaware | 09/10/2004 |
| NCMC Insurance Corporation | Corporation | Active - Non Dormant | Hawaii | 10/21/2004 |
| NCoral, L.P. | Limited Partnership | Active - Non Dormant | Delaware | 12/20/2005 |
| New Century Capital Services, Inc. | Corporation | Active - Non Dormant | California | 02/13/2007 |
| New Century Credit Corporation | Corporation | Active - Non Dormant | California | 02/23/1999 |
| New Century Financial Corporation | Corporation | Active - Non Dormant | Maryland | 04/12/2004 |
| New Century Financial Corporation Foundation | Corporation | Active - Non Dormant | California | 09/21/2005 |
| New Century Funding A | Corporation | Active - Non Dormant | Delaware | 05/13/2002 |
| New Century Funding SB-1 | Corporation | Active - Non Dormant | Delaware | 05/21/2002 |
| New Century Mortgage Corporation | Corporation | Active - Non Dormant | California | 08/03/1995 |
| New Century Mortgage Securities, Inc. | Corporation | Active - Non Dormant | Delaware | 03/25/1999 |
| New Century Mortgage Securities, LLC | Limited Liability Company | Active - Non Dormant | Delaware | 09/07/2004 |

| Name | Entity Type | Status | State | Date |
|---|---|---|---|---|
| New Century Mortgage Ventures, LLC | Limited Liability Company | Active - Non Dormant | Delaware | 10/05/2004 |
| New Century R.E.O. Corp. | Corporation | Active - Non Dormant | California | 08/26/1998 |
| New Century R.E.O. II Corp. | Corporation | Active - Non Dormant | California | 07/28/2006 |
| New Century R.E.O. III Corp. | Corporation | Active - Non Dormant | California | 01/31/2007 |
| New Century TRS Holdings, Inc. | Corporation | Active - Non Dormant | Delaware | 11/17/1995 |
| New Century Warehouse Corporation | Corporation | Active - Non Dormant | California | 09/22/2003 |
| NewVensure, LLC | Limited Liability Company | Active - Non Dormant | Pennsylvania | 06/26/2003 |
| North American Real Estate Solutions, Inc. | Corporation | Active - Non Dormant | California | 03/06/2002 |
| Peachtree Residential Mortgage, L.P. | Limited Partnership | Active - Non Dormant | Texas | 12/16/1999 |
| Realtor Builder I, Inc. | Corporation | Active - Non Dormant | Texas | 11/05/2003 |
| Realtor Builder II, Inc. | Corporation | Active - Non Dormant | Texas | 11/12/2003 |
| Realtor Builder VI, Inc. | Corporation | Active - Non Dormant | Texas | 11/01/2004 |
| Residential Prime Lending Limited Partnership | Limited Partnership | Active - Non Dormant | Texas | 09/18/2000 |
| Sutter Buttes Mortgage, L.P. | Limited Partnership | Active - Non Dormant | Texas | 11/06/2002 |
| Team Home Lending, Ltd. | Limited Partnership | Active - Non Dormant | Texas | 09/05/2002 |
| Von Karman Funding Trust | Other | Active - Non Dormant | Delaware | 09/04/2003 |