# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| **NEW CENTURY TRS HOLDINGS INC., a Delaware corporation, et al.,**[1] | : | Case No. 07-10416 (KJC) |
| | : | |
| | : | **Jointly Administered** |
| Debtors. | | |
| | : | Hearing Date: 5/7/07 @ 10:00 a.m. Objection Deadline: 4/30/07 @ 4:00 p.m. |
| | : | Re: Docket No. 185 |
| | : | |
| | : | |

## AMENDMENT TO DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF (i) SALE-RELATED INCENTIVE PAY TO SENIOR MANAGEMENT AND (ii) RETENTION PAY TO CERTAIN EMPLOYEES PURSUANT TO SECTIONS 105(a), 363(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc, ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), hereby submit this amendment ("Amendment") to "Emergency Motion for Order Authorizing Payment of (i) Sale-Related Incentive Pay to Senior Management and (ii) Retention and Incentive Pay to Certain Employees Pursuant to Sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy

Code" (the "Motion"). The Motion is incorporated herein by this reference, as amended hereby.

In order to incentivize and reward the performance of critical employees for the benefit of these estates, the Board of Directors of NCF approved the formation of two sale-incentive and retention plans (the "Initial Plans").[2] As set forth in the Motion, the participants in the Initial Plans are key employees of the Servicing Business, legal, human resources, information technology and other core functions of the Debtors. As a result of developments in the asset sale process and the present posture of employee compensation matters, the Debtors continue in the strong belief that a targeted sales-incentive and retention program is essential to stem attrition and to bolster the morale of the Debtors' remaining employees during the sale process. Accordingly, in an effort to facilitate approval of the program, the Debtors have conducted discussions with the Official Committee of Unsecured Creditors (the "Creditors' Committee") and - while the Debtors dispute the U.S. Trustee's position on the standards under Section 503(c)(1) - revisited the overall structure of the Initial Plans in light of concerns raised by the U.S. Trustee with respect to the Debtors' other employee programs. As a result, the Board of Directors of NCF has approved restructured plan guidelines, copies of which are attached hereto as Exhibit A (New Century Financial Corporation Key Employee Incentive Plan (the "KEIP")) and Exhibit B (New Century Financial Corporation Key Employee Incentive Retention Plan (the "KEIRP" and, together with the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L. P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

KEIP, the "Restructured Plans")).

Under the Restructured Plans, the overall targeted cost of the sale-incentive and retention program that the Debtors propose to implement has been reduced by more than 50% and "guaranteed" payments to employees solely for remaining employed by the Debtors during the sale process have been reduced from approximately $2.8 million to $1.2 million. Additionally, the KEIP includes the six employees of the Loan Origination Platform who were not in the Initial Plans as discussed below. Further, certain other structural changes have been made to the Initial Plans as described in the Restructured Plans to focus the needs of the estates on the sale process as it has developed and to reduce overall cost. Blacklines comparing the provisions of the Initial Plans and the Restructured Plans are attached hereto as Exhibit C. In summary, the material changes to the terms of the Initial Plans under the Restructured Plans are as follows:

A.      **Replacement of the EIP by the "KEIP".**

The most significant structural change under the Restructured Plans is the replacement of the EIP by the KEIP. As set forth in the Motion, under the EIP, all eight members of the Debtors' executive management team were eligible for incentive pay to the extent that certain minimum threshold levels for disposition of the Debtors' assets are met. As with the prior plan, incentive eligibility under the KEIP is contingent on the Debtors satisfying certain key metrics in the asset sale process - the Debtors are not permitted to make any payments under the KEIP unless the related threshold metric is satisfied. Under the Restructured Plans, there are now 34 participants in the KEIP such that the plan is now targeted primarily at incentives for the Debtors' non-executive employees with only limited executive level participation. In addition, the restructuring of the KEIP satisfies the concerns raised by the U.S. Trustee as to the standards applicable to "retention payments" to "insiders" under Section 503(c). As discussed below, the Debtors dispute the U.S.

3

Trustee's reading of that statute, but believe that in all events the Restructured Plans go well beyond addressing these concerns.

**First**, participation in the KEIP by the Debtors' executive management team is now limited to the following four participants: Executive Vice President of Production, Anthony Meola; Executive Vice President and Chief Operating Officer of New Century Mortgage Corporation, Joseph Eckroth; Senior Vice President of Leadership and Organizational Development, Robert Lambert; and Executive Vice President of Corporate Affairs and General Counsel, Stergios Theologides (the "Executive Management Participants"). As under the prior plan, the Debtors may not pay <u>any</u> incentives to the Executive Management Participants unless certain minimum threshold levels are met for disposition of the Debtors' assets. <u>See</u> KEIP ("Plan Pools"). The amount payable if <u>all</u> sales targets are achieved at threshold levels is $400,000 in the aggregate.

**Second**, the KEIP includes six key employees of the Debtors' Loan Origination Platform who were not in the Initial Plans - one executive vice president and five senior vice presidents (the "Production Participants"). Although the individuals are officers at New Century Mortgage Corporation, not NCF, and are not active in policy-making, in light of prior rulings by the Court, they are being treated consistently with the Debtors' senior employees and will not be paid retention payments. With respect to four of these six Production Participants, they are eligible for incentives under the KEIP only if the liquidation price for the WRO Assets Sale Consideration (as defined in the KEIP) equals or exceeds the WRO Assets Sale Price (as defined in the KEIP). <u>See</u> KEIP (Eligible Employees). The aggregate targeted incentive for the Production Participants is $473,750.

**Third**, the KEIP now includes 24 additional employees formerly eligible for incentives under the KEIRP who, due to their job description and/or rank, may be involved in

4

policy-making and compensation decisions for the Debtors (the "Policy Participants" and, together with the Executive Management Participants and the Production Participants, the "KEIP Participants").[3] While the Debtors do not believe that the Policy Participants are "insiders" within the meaning of Section 503(c), in an abundance of caution, they have been moved from the KEIRP to the KEIP based on the following criteria: (1) the participant is a board or CEO appointed "officer" under the bylaws of NCF, (2) the participant is a Senior Vice President or officer of higher rank of any of the other Debtors and/or (3) the participant works in human resources, legal or finance departments of the Debtors who, due to job description and level of responsibility, may be involved in company policy or compensation decision-making. Eligibility for incentives for the Policy Participants is 100% contingent on the Debtors satisfying applicable threshold metrics in the asset sales. See KEIP (Plan Pools).

**B.    Reduction of Payments Under the KEIRP.**

Primarily due to the restructuring of the EIP and replacement of the EIP by the KEIP described above, the number of KEIRP Participants has been reduced from 123 to 92.[4] In addition, due to the elimination of higher-ranking employees from the KEIRP, the per-employee cost of the KEIRP has been reduced. Further, as noted above, "guaranteed" payments to KEIRP Participants solely for remaining employed by the Debtors during the sale process have been reduced from approximately $2.8 million to $1.2 million.

**THE RESTRUCTURED SALES INCENTIVE AND RETENTION PLANS
SHOULD BE AUTHORIZED BECAUSE THEY HAVE A SOUND BUSINESS PURPOSE**

---

[3] The Debtors will provide to the U.S. Trustee, the Creditors' Committee and the SEC a list identifying each Policy Participant and setting forth the amount of incentive bonus that each Policy Participant is qualified to receive under the KEIP.

[4] The Debtors will provide to the U.S. Trustee, the Creditors' Committee and the SEC an updated list identifying each KEIRP Participant and setting forth the amount of incentive and/or retention bonuses that each KEIRP Participant is qualified to receive under the KEIRP.

The Restructured Plans should be approved under Sections 363(b) and 503(c) because they have a sound business purpose. The Debtors are losing employees to attrition and diminishing morale. As the Debtors press forward with the sale process - not only the slated auctions but also the marketing and sale of the Debtors' other remaining assets - motivating employees is critical. As noted in the Motion, this is key with respect to employees of the Servicing Business where the stalking horse bidder has expressly conditioned the transaction on a certain level of employee retention. To accomplish this, the participants, target thresholds, incentive amounts and other terms of the Restructured Plans were thoroughly considered by members of the Debtors' Management Compensation Committee with input from the Debtors' executive management team, the Debtors' financial advisors, AlixPartners, and outside compensation consultants, Compensation Design Group. The Debtors believe that the compensation provided in the Restructured Plans, together with the base annual salaries of the Plan Participants, are fair and within market standards for the industry.

### THE REQUIREMENTS UNDER SECTIONS 503(c)(1) AND (c)(2) DO NOT APPLY TO THE RESTRUCTURED PLANS

The requirements under Sections 503(c)(1) and (c)(2) do not apply to the Restructured Plans. As set forth in the Motion, courts in this jurisdiction hold that sale-incentive plans like the KEIP do not constitute "retention payments" or "severance" under Sections 503(c)(1) and (c)(2). Thus, Sections 503(c)(1) or (c)(2) do not apply to the KEIP.

With respect to the KEIRP, Sections 503(c)(1) and (c)(2) expressly do not apply to the KEIRP because those sections apply only to payments to "insiders". Section 101(31) defines an insider as, in pertinent part, a director, an officer, or a person in control of the debtor. See 11 U.S.C. § 101(31). None of the KEIRP Participants are insiders. To begin with, none of the KEIRP Participants are members of the Debtors' board of directors. In addition, the KEIRP Participants are

6

not "officers" or "persons in control" of the Debtors within the meaning of section 101(31). While some of the KEIRP Participants are Vice Presidents or lower ranking "officers" under the corporate bylaws and exercise certain supervisory authority in the scope of their duties, their degree of participation in and influence over corporate action and policies, including employee compensation, is limited as discussed below.

Each KEIRP Participant is employed by New Century Mortgage Corporation ("NCM") or Home123 Corporation ("Home123"), which are both wholly owned subsidiaries of NCF. NCM currently employs approximately 2,100 employees primarily in the Servicing Business, the Wholesale Division of the Loan Origination Platform and in corporate affairs. Home123 currently employs approximately 500 employees in the Retail Division of the Loan Origination Platform.

NCM and Home123 has each designated several officers in accordance with their bylaws. At NCM currently, there are approximately eight Executive Vice Presidents, 22 Senior Vice Presidents, 65 Vice Presidents, 35 Assistant Vice Presidents and a Director of Tax Compliance. At Home123, there are approximately four Executive Vice Presidents, eight Senior Vice Presidents, nine Vice Presidents, six Assistant Vice Presidents and a Director of Tax Compliance. The Board of NCM and Home123, as appropriate, each ratifies the appointment of its officers on an annual basis.

Of the 92 KEIRP Participants, 15 are Vice Presidents and 13 are Assistant Vice Presidents of either NCM or Home123. None of the KEIRP Participants holds a rank that is senior to Vice President of any of the Debtors.

The KEIRP Participants do not exercise control or policy-making functions of the Debtors. Control and strategic policy decision-making authority for the Debtors generally rests in

7

RLF1-3145859-1

the hands of several high-ranking individuals employed by the Debtors. These high-ranking individuals sit on a number of policy committees, including the Credit Committee, the Pricing Committee, the Fair Lending Committee and the Management Compensation Committee, among others. In addition, the Executive Management Committee (the "EMC") is an umbrella policy committee of the Debtors comprised of seven executive officers of the Debtors, each of whom has the title of Executive Vice President or Senior Vice President at NCF. The EMC reports to the CEO on matters within its purview. There is no separate EMC or other policy committee responsible solely for any one of the Debtors. Rather, the EMC and other policy committees consist of senior executives of both NCM and Home123 who sit on the committees as representatives of the business division in which they work.

The KEIRP Participants do not serve on any of the policy committees. Rather, employees of the Debtors who are Vice Presidents or subordinate in rank, such as the KEIRP Participants, report to other employees who are immediately senior in rank in their business division.

The legislative history of section 101(31) indicates that "an insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." S.Rep. No. 95-989, 95th Cong.2d Sess., reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5810. In determining whether a party is an insider, courts focus on the closeness between the third party and the debtor, the degree of control or influence the third party exerts over the debtor, and whether the transactions were conducted at arm's length. OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corporation), 340 B.R. 510, 523-24 (Bankr. D. Del. 2006) (citing cases). The KEIRP Participants were appointed to work as vice presidents and in operations positions, not as senior

management, and do not report directly to the board of NCF. Though certain of the KEIRP Participants are titled "officers" under the bylaws of each of NCM and Home123, as noted above, these employees generally do not exercise general control over corporate affairs or policy. In addition, they have not been involved in developing the Restructured Plans or other policies affecting their compensation. The members of the senior management team that sets company policy are not eligible for awards under the KEIRP. Further, the KEIRP Participants' base compensation and incentive awards under the KEIRP are within market industry standards for employees at their level of experience and responsibility. Therefore, closer scrutiny reserved for non-arm's length payments is not warranted. See, e.g., In re NMI Systems, Inc., 179 B.R. 357, 371 (Bankr. D.C. 1995); In re Public Access Technology.com, Inc., 307 B.R. 500, 506 (Bankr. E.D. Va. 2004) (same). This is the case even to the extent that certain KEIRP Participants are designated "officers" pursuant to the bylaws of NCM or Home123; as discussed above, such formal officer designation by the Debtors does not go hand-in-hand with significant policy-making authority or power to take corporate action and thus does not automatically confer "officer" status for the purpose of section 503(c). In re CEP Holdings, LLC, 2006 Bankr. LEXIS 3305 (Bankr. N.D. Ohio November 28, 2006). Accordingly, sections 503(c)(1) and (c)(2) should not apply to the KEIRP.

The Debtors believe that the sale-incentive and retention program, as restructured, ensures that the Debtors' available resources are devoted to the Debtors' most critical workforce retention and incentive needs as they press forward with the sale process, and should be approved. The Debtors believe that the Restructured Plans strike the correct balance of targeted incentives and economy for the estates and satisfy the applicable legal standards. The Debtors hereby request that the Court approve the Restructured Plans as having a sound business purpose pursuant to Sections 105(a), 363(b) and 503(c) of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto as Exhibit D, granting the relief requested in the Motion, as amended hereby, and such other and further relief as may be just and proper.

Dated: May 1, 2007
      Wilmington, Delaware

Respectfully submitted,

*/s/ Christina M. Houston*

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Ben H. Logan
Suzzanne S. Uhland
Victoria A. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION