IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | | Hearing Date: May 30, 2007 @ 2:30 p.m. |
| | | Objection Deadline: May 23, 2007 @ 4:00 p.m. |

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HELLER EHRMAN LLP AS SPECIAL COUNSEL TO THE AUDIT SUBCOMMITTEE *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTIONS 327(e) AND 1107(b) OF THE BANKRUPTCY CODE

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors") hereby apply (the "Application") for an order, pursuant to sections 327(e) and 1107(b) of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to retain and employ Heller Ehrman LLP ("Heller Ehrman") as special counsel to the Special Investigation Subcommittee of the Independent Audit Committee of NCF's Board of Directors (the "Audit Subcommittee") *nunc pro tunc* to April 2, 2007 (the "Petition Date"). The Declaration of Neal

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

RLF1-3145825-1

Brockmeyer (the "Brockmeyer Decl.") is being filed concurrently herewith and is incorporated herein. In support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

1. NCF, a Maryland corporation and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA") and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

2. On February 7, 2007, NCF announced that it would restate its consolidated financial results for the quarters ended March 31, June 30 and September 30, 2006, to correct errors it discovered in its application of generally accepted accounting principles regarding its allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

3. On March 2, 2007, NCF announced in a Form 12b-25 that was filed with the Securities and Exchange Commission ("SEC") that, among other things, (i) it could not timely file its Annual Report on Form 10-K; (ii) the Audit Committee of its Board of Directors (the "Audit Committee"), advised by independent counsel who were assisted by forensic accountants, had initiated its own independent investigation into the issues giving rise to NCF's need to restate its interim financial statements, as well as issues pertaining to its valuation of residual interests in securitizations in 2006 and prior periods; (iii) the 2006 Form 10-K would be filed after this investigation is complete; and (iv) KPMG LLP, NCF's independent registered public accounting firm, informed NCF that, among other matters, it would need to be informed of the results of the Audit Committee's investigation before completing its audit. NCF also announced that the SEC had requested a meeting with NCF to discuss these events and that on February 28, 2007 it received a letter from the United States Attorney's Office for the Central District of California (the "U.S. Attorney's Office")-indicating that it was conducting a criminal inquiry under the federal securities and/or other laws in connection with trading in NCF's securities as well as accounting errors regarding its allowance for loan losses.

4. These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short term credit facilities that the Debtors need to originate and purchase loans (each

a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy in full. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

5. As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

6. Although the Debtors have not had sufficient resources or access to credit to originate loans, the Debtors continue to operate their mortgage loan servicing business in accordance with their historically high standards and to comply with their obligations under their agreements with indenture trustees and other parties to provide servicing for mortgage loans. Because their financing for servicing advances has also been terminated, the Debtors' liquidity has been additionally constrained as a result of the need to provide necessary loan servicing advances from their own working capital.

7. During the weeks leading up to the Petition Date, the Debtors, aided by their professional advisors, including investment bank Lazard Frères & Co. LLC, sought sources of additional financing, infusions of debt and/or equity capital, or a sale of their businesses to a strategic or financial investor.

8. During this same period, the composition of the Audit Committee was expanded with the addition of two other independent directors, an engagement letter dated March

14, 2007, a copy of which is annexed hereto as Exhibit A (the "Engagement Letter"), was executed to confirm the engagement of Heller Ehrman, and the Audit Subcommittee was formed to continue the investigation. The scope of the engagement of Heller Ehrman as set forth in the Engagement Letter was to conduct an independent investigation of (i) certain accounting matters in connection with entries on NCF's books, records and financial statements, which included the issues giving rise to NCF's need to restate its 2006 interim financial statements and its valuation of residual interests in securitizations, and (ii) sales of stock by NCF insiders other than Michael Sachs (the "Investigation").

9. The Debtors' inability to originate loans and the exercise of remedies by the Warehouse Lenders have left the Debtors in a severe liquidity crisis. Without a prompt sale of the Debtors' mortgage loan servicing business and loan origination platform, those businesses will not be viable and the value will be destroyed. Accordingly, the Debtors commenced these Chapter 11 cases to pursue an expedited sale of these businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

10. Although the Debtors have been unsuccessful in obtaining financing that would permit them to continue originating loans, the Debtors were successful in obtaining debtor-in-possession financing of up to $150 million, which they expect will provide sufficient working capital to maintain and stabilize their businesses through the sale of the Debtors' operating businesses and other assets.

11. On the Petition Date, the Debtors filed their petitions for relief. The Court has entered an order approving the joint administration of the Debtors' bankruptcy cases. The Debtors are operating their business and managing their affairs as debtors and debtors in possession. No trustee, examiner or committee has been appointed in these cases.

## RELIEF REQUESTED

12.     Pursuant to section 327(e) of the Bankruptcy Code, the Debtors request that the Court authorize the retention and employment of Heller Ehrman as special counsel to the Audit Subcommittee in these Chapter 11 cases with respect to the Investigation. The Debtors request that such employment be effective as of the Petition Date, in accordance with the terms set forth in this Application, the Brockmeyer Decl., a copy of which is annexed hereto as Exhibit B, the Engagement Letter, and any other applicable orders of this Court.

13.     As disclosed above, prior to the Petition Date, the Audit Subcommittee had undertaken the Investigation. In this connection, Heller Ehrman has reviewed documents, interviewed relevant personnel, advised the Audit Subcommittee, communicated with the SEC and the U.S. Attorney's Office, and performed related tasks.

14.     Prior to the work performed in connection with the Investigation, Heller Ehrman had been retained to represent the Audit Committee under the terms of an engagement letter dated September 29, 1998 (the "Initial Engagement Letter"), a copy of which is annexed hereto as Exhibit C. The Audit Committee had selected Heller Ehrman as counsel to the Audit Committee because of the firm's reputation and extensive experience and knowledge, and in particular, its national reputation and recognized expertise in the field of securities and corporate governance law. Sometime subsequent to that engagement, Heller Ehrman began representing the Governance and Nominating Committee of the Board of Directors of NCF, which under NYSE rules also consisted of independent directors, and from time to time handled other corporate governance matters on behalf of the independent directors. At no time did Heller Ehrman purport to represent NCF, although it was the source of the firm's fees.

15.     In connection with its representation of the Audit Subcommittee in the Investigation, Heller Ehrman has become familiar with the factual and legal issues relevant to the

Investigation. The Debtors therefore believe that Heller Ehrman is both well-qualified and uniquely able to continue to represent the Audit Subcommittee in connection with the Investigation. The Debtors further believe that Heller Ehrman will provide the most effective and efficient representation available to the Audit Subcommittee.

## BASIS FOR RELIEF

16. The Debtors submit that Heller Ehrman's proposed retention meets all the prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel that has represented the Debtors prior to the commencement of their Chapter 11 cases for a "specified special purpose" if such employment is in the best interest of the Debtors. Because Heller Ehrman is the proposed special counsel to the Audit Subcommittee, but not the proposed bankruptcy counsel in these Chapter 11 cases, section 327(e) does not require that Heller Ehrman and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code. Rather, section 327(e) instead requires that Heller Ehrman not represent or hold any interest adverse to the Audit Subcommittee or the Debtors or their estates with respect to the matters on which Heller Ehrman is to be retained and employed herein. As discussed below, the retention and employment of Heller Ehrman as special counsel is in the best interests of the Audit Subcommittee and the Debtors and their estates.

**The Employment Of Heller Ehrman Is In The Best Interests Of The Estates.**

17. Heller Ehrman will serve as special counsel to the Audit Subcommittee during these Chapter 11 cases. Heller Ehrman performed work for the Audit Subcommittee prior to the Petition Date and is therefore familiar with the Debtors' businesses and operations and certain regulatory issues affecting the Debtors. In particular, Heller Ehrman is especially attuned to the unique issues that have arisen and may arise with respect to the Investigation. Heller

7

Ehrman has also been communicating with the SEC and the U.S. Attorney's Office with respect to the progress of the Investigation.

18. Heller Ehrman is a full-service, international law firm of more than 700 attorneys with offices in New York, Los Angeles, San Francisco, San Diego, Washington, DC, and eight other locations worldwide. Heller Ehrman provides legal services in virtually every major practice area, including corporate, business restructuring and insolvency, trial and appellate litigation, intellectual property, banking, tax, labor and employment, and international trade. Most importantly for present purposes, Heller Ehrman has extensive experience in securities law, and regulatory and financial matters and, in particular, special investigations. Accordingly, the Debtors believe that Heller Ehrman is well-qualified to serve the Audit Subcommittee as special counsel in these Chapter 11 cases in an efficient and effective manner.

19. The Debtors believe that the employment of Heller Ehrman will enhance and will not duplicate the efforts of O'Melveny & Myers LLP ("OMM") and Richards, Layton & Finger, P.A. ("RLF"), the Debtors' general bankruptcy counsel, Skadden, Arps, Slate, Meagher & Flom, the Debtors' special regulatory counsel, and the other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by Heller Ehrman as special counsel to the Audit Subcommittee herein. The Debtors understand that Heller Ehrman will work with the other professionals retained by the Debtors to avoid any such duplication.

**Services To Be Rendered By Heller Ehrman.**

20. As set forth in the Prepetition Engagement Letter and the Brockmeyer Decl., the Debtors wish to engage Heller Ehrman to provide legal services to the Audit Subcommittee in connection with the Investigation. The Debtors anticipate that such services will include the following:

(a) reviewing documents, interviewing relevant personnel, and reporting to the Audit Subcommittee regarding the Investigation;

(b) communicating with the SEC and the U.S. Attorney's Office concerning the progress of the Investigation; and

(c) performing the full range of services normally associated with matters such as those identified above, as special counsel.

21. Heller Ehrman has indicated its desire and willingness to represent the Audit Subcommittee as set forth herein and to render the necessary professional services as special counsel.

22. The Audit Subcommittee may request that Heller Ehrman undertake specific matters beyond the scope of the responsibilities set forth above. Should Heller Ehrman agree in its discretion to undertake any such matter, the Debtors shall seek further order of this Court.

**Heller Ehrman's Connections To Parties-In-Interest.**

23. As required by Bankruptcy Rule 2014(a), the Brockmeyer Decl. filed in support of this Application sets forth information concerning Heller Ehrman's connections with the Audit Subcommittee, the Debtors, and certain other parties-in-interest in these Chapter 11 cases.

24. To the best of the Debtors' knowledge, and based on the information in the attached Brockmeyer Decl., neither Heller Ehrman nor any of its shareholders or associates holds or represents any interest adverse to the Audit Subcommittee or the Debtors or their estates with respect to the matters on which Heller Ehrman is to be retained and employed.

25. As set forth in detail in the Brockmeyer Decl., Heller Ehrman has in the past represented, currently represents, and will likely in the future represent certain creditors and other parties-in-interest herein in matters unrelated to the Audit Subcommittee or the Debtors or their Chapter 11 cases. Heller Ehrman does not believe that the foregoing raises any actual or

potential conflict of interest of Heller Ehrman relating to its retention and employment as special counsel for the Audit Subcommittee in these Chapter 11 cases, but such connections are disclosed out of an abundance of caution.

26. The Debtors understand that to vitiate any actual or potential conflicts of interest, Heller Ehrman will not assist the Audit Subcommittee or the Debtors in connection with their analysis, negotiations, and litigation, if any, with parties with whom Heller Ehrman has existing client relationships, and that OMM or RLF (or other counsel if OMM or RLF has a conflict), instead, will handle these tasks.

**Professional Compensation**

27. Heller Ehrman intends to apply to this Court for compensation and reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, applicable guidelines established by the U.S. Trustee (the "Guidelines"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and orders of this Court. Heller Ehrman acknowledges that all compensation will be subject to this Court's final review and approval, following notice and opportunity for a hearing.

28. In the 90 days leading up to the Petition Date, NCF paid Heller Ehrman $438,719.00 in fees and $1,084.50 in expenses to satisfy invoices covering services performed and costs incurred by Heller Ehrman through and including March 22, 2007. In addition, NCF paid Heller Ehrman $110,000 on March 30, 2007 in partial satisfaction of fees and expenses incurred, but not yet invoiced to NCF, during the period from March 23, 2007 through March 30, 2007, in connection with and in contemplation of the Debtors' Chapter 11 filings. NCF authorized Heller Ehrman to treat this $110,000 payment as "earned upon receipt."

29. During the period from March 23 through the Petition Date, the time value of Heller Ehrman's services actually totaled $256,699.00 and related expenses totaled $18,044.32. Thus, Heller Ehrman's recorded and outstanding fees and costs for that period exceeded the $110,000 payment by a total of $167,743.32, and Heller Ehrman has a prepetition claim in that amount (the "Prepetition Claim").[1] Because Heller Ehrman does not believe this Prepetition Claim has been scheduled by the Debtors, Heller Ehrman intends to file a proof of claim in these bankruptcy cases.

30. The Debtors propose to pay Heller Ehrman its standard hourly rates for matters of this type and to reimburse Heller Ehrman for its expenses according to Heller Ehrman's reimbursement policies, subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, the Local Rules and orders of this Court.

31. Heller Ehrman's hourly rates for matters of this type range from $315 to $865 for attorneys, and from $60 to $320 for most categories of paraprofessionals. As indicated in the Prepetition Engagement Letter, Heller Ehrman's hourly rates are adjusted from time to time.

32. No arrangement is proposed between Heller Ehrman and the Debtors or the Audit Subcommittee for compensation to be paid in these Chapter 11 cases other than as set forth above, in the Prepetition Engagement Letter, and in the Brockmeyer Decl.

33. At the Audit Subcommittee's request, Heller Ehrman has continued to conduct the Investigation since the Petition Date and hence, the Debtors request that Heller Ehrman's retention be effective *nunc pro tunc* to the Petition Date.

---

[1] Due to an inadvertent error, Heller Ehrman did not apply the $110,000 earned retainer to the unpaid fees and costs until April 30, 2007.

11

RLF1-3145825-1

## MEMORANDUM OF LAW

The Debtors submit that this Application does not present any novel issues of law requiring briefing. Therefore, pursuant to Local Rule 7.1.2, incorporated by reference into Local Rule 1001(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Local Rule 7.1.2(a).

## NOTICE

The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to Greenwich Capital Financial Products, Inc., and The CIT Group/Business Credit, Inc., the Debtors' postpetition senior secured lenders; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, in accordance with Del. Bankr. L.R. 2002-1(b). The Debtors submit that no other or further notice is necessary or required.

## NO PRIOR REQUEST

No prior request for the relief sought in this Application has been made to this or any other court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtors submit that the retention and employment of Heller Ehrman as special counsel to the Audit Subcommittee on the terms set forth herein is in the best interests of the Debtors and their estates. The Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit D, granting the relief requested herein and such other and further relief the Court deems just and proper.

RLF1-3145825-1

Dated: May 1, 2007  
Wilmington, Delaware

Respectfully submitted,

New Century Financial Corporation, and on behalf of New Century TRS Holdings, Inc , New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp , New Century R.E.O. II Corp., New Century R.E.O. III Corp , New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L P., as Debtors and Debtors in Possession

By: _____
Name: Monika L. McCarthy
Title: SVP and Assistant General Counsel

RLF1-3145825-1