IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | Chapter 11 |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC.,** | : | Case No. 07-10416-KJC |
| a Delaware corporation, et al.,[1] | : | |
| | : | Hearing Date: 5/30/07 at 2:30 p.m. |
| **Debtor.** | : | Objection Deadline: 5/23/07 at 4:00 p.m. |

### APPLICATION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO § 327(e) OF THE BANKRUPTCY CODE

New Century TRS Holdings, Inc., a Delaware corporation, et al., hereby request the entry of an order, pursuant to § 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), authorizing the Debtors to employ Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") as special finance counsel *nunc pro tunc* to April 2, 2007 (the "Petition Date") (the "Application"). In support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

## JURISDICTION

1. This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory and rule predicates for the relief requested herein are § 327 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9014.

## BACKGROUND

2. New Century Financial Corporation, a Maryland corporation ("NCF") and publicly-owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers.

3. As discussed in more detail below, on February 7, 2007, NCF announced that it would restate its quarterly financial statements for the first, second, and third quarters of 2006 after the Debtors discovered that there may be errors in the application of generally accepted accounting principles regarding NCF's allowance for loan repurchase losses. The announcement resulted in the filing of various securities class action lawsuits and shareholder derivative suits.

4. On March 2, 2007, NCF announced that it could not timely file its Annual Report on Form 10-K and that KPMG LLP (NCF's independent auditors) could not complete its audit of

NCF's 2006 financial statements until after completion of the internal investigation by NCF's audit committee. NCF also announced that the Securities and Exchange Commission had requested a meeting with NCF to discuss these events and that the United States Attorney's Office had commenced a criminal inquiry.

5. These announcements, together with increased borrower defaults that have adversely affected the subprime mortgage market nationwide, had a devastating impact on the Debtors' business. Shortly after the March 2, 2007 announcement, the financial institutions that provide the short-term credit facilities that the Debtors need to originate and purchase loans (each a "Warehouse Lender"), commenced exercising remedies against the Debtors, thereby threatening their viability. During the following week, the Warehouse Lenders made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Warehouse Lenders began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Warehouse Lenders has declared the Debtors in default under its credit facility.

6. As a result of the defaults, the Warehouse Lenders have exercised remedies under their agreements with the Debtors, including asserting control of the cash flow from the loans they financed and in some instances exercising strict foreclosure or commencing foreclosure sales of the Debtors' loans. The lack of cash flow from these loans has further exacerbated the Debtors' liquidity situation.

7. On April 2, 2007, the Debtors filed their petitions for relief. On April 4, 2007, this Court entered its order (amended) for the joint administration of the cases, and on April 9, 2007, an official committee of unsecured creditors was appointed. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

## RELIEF REQUESTED

8. Subject to approval of this Court, the Debtors wish to employ Allen Matkins as special finance counsel. Such employment will be pursuant to 11 U.S.C. § 327(e).

9. Allen Matkins is to be employed as special finance counsel to the Debtors. Specifically, Allen Matkins has represented and will represent the Debtors with respect to the various Warehouse Lender facilities, see paragraph 5 above, the postpetition financing facility that is pending before this Court, and similar financing matters.[2]

10. The Debtors have selected Allen Matkins to perform these services because Allen Matkins provided the same or similar services prepetition, and during the course of such representation, has acquired necessary knowledge of the Debtors' business affairs. Further, Allen Matkins possesses the requisite expertise to advise the Debtors in these matters. Allen Matkins is willing to render the necessary professional services as special finance counsel to the Debtor.

11. John E. Stoner is the corporate-finance partner at Allen Matkins who will have primary responsibility for rendering services to the Debtors. A copy of his resume is attached hereto as Exhibit A.

12. To the best of the Debtors' knowledge, the attorneys at Allen Matkins have no connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys, except as set forth herein and in the contemporaneously filed affidavit of John E. Stoner (the "Stoner Affidavit"), a copy of which is attached hereto as Exhibit B. Based on the Stoner Affidavit, it appears that Allen Matkins is a disinterested person, even if such status is not required for its employment under § 327(e) of the Code, and that Allen

---

[2] For several years before the Petition Date, Allen Matkins represented the Debtors in certain employment-law and real estate leasing matters. That non-finance work had wound down by the Petition Date, and Allen Matkins is not being employed for such other ancillary matters.

Matkins does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which Allen Matkins is to be employed.

13. Allen Matkins conducted an internal conflict check that includes the names of the Debtors, those entities shown as secured parties, buyers, or lessors on filed UCC1 financing statements, the 50 largest unsecured creditors, the largest shareholders of New Century Financial Corporation (those directly or indirectly owning more than 5% of the shares), the directors and senior employees, and the professionals employed by the Debtors (the "Potential Parties in Interest"). A copy of the list of such parties, provided by Debtors' bankruptcy counsel, is attached hereto as Exhibit C.

14. The Allen Matkins conflict check revealed the following connections that may require highlighted disclosure. *See the Stoner Affidavit for further details.* In summary, Allen Matkins has represented in the past or now represents several Potential Parties in Interest in matters unrelated to the Debtors and unrelated to finance work. In a few instances, Allen Matkins represented a client (landlord) directly with respect to a Debtor (tenant). Although Allen Matkins continues to represent such client on other matters, Allen Matkins will of course not represent such other client with respect to the Debtors, because Allen Matkins would not be permitted to do so. No Potential Party in Interest (including known affiliates) represented more than 2% of the firm's revenues for the fiscal year ending June 30, 2006, the latest period for which the relevant measurements have been prepared.

a. Allen Matkins does a substantial amount of office leasing, usually on behalf of landlords, and has from time to time represented landlords in leases to some of the Debtors. *This is the only set of matters with respect to which Allen Matkins has represented any entity specifically with respect to the Debtors.* In 2005 and 2006, Allen

Matkins represented Kilroy Realty Corp. or affiliates, landlords, in connection with leases of real property to some of the Debtors. Kilroy is a substantial client of the firm.

b. Allen Matkins does a substantial amount of real estate finance work for the entities commonly referred to as Greenwich Capital Markets, or Greenwich Capital Financial Products, Inc. ("GCFP"), which is the "Administrative Agent" under the Court-approved debtor-in-possession financing. The Allen Matkins work for GCFP is largely limited to the origination of real estate loans; Allen Matkins does not represent GCFP in the subsequent sale or securitization of those loans. In addition, Allen Matkins does not represent GCFP in connection with personal-property finance, other than the ancillary personal-property collateral involved in a real estate loan. Allen Matkins also frequently represents borrowers seeking loans from GCFP. GCFP is a significant firm client.

c. Allen Matkins does a substantial amount of real-estate finance work for HSBC Bank USA and its affiliates. The Allen Matkins work for HSBC is largely limited to the origination of real estate loans; Allen Matkins does not represent HSBC in the subsequent sale or securitization of those loans. Allen Matkins has recently begun similar mortgage-loan origination work for Deutsche Bank Mortgage Capital, LLC.

d. Allen Matkins represents Washington Mutual (FA) ("WaMu") in many leasing and related real-estate matters. WaMu is a substantial Allen Matkins client.

e. Allen Matkins represents Lehman Brothers Bank, FSB, on a variety of defaulted loans and concomitant workouts, modifications, and litigation.

f. Commencing 2006, Allen Matkins has represented one "Robert Lambert," as one of several owners of a piece of real property held by tenancy in common. Allen Matkins is unable to confirm whether this Robert Lambert is the Robert Lambert

identified as a Potential Party in Interest and in an abundance of caution discloses the relationship here. The Allen Matkins Robert Lambert was one of approximately 30 co-tenants. Lambert is not the firm's primary contact or the party from whom the firm takes immediate direction.

## COMPENSATION TO ALLEN MATKINS

15. Allen Matkins intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, including sections 328, 330, and 331 thereof, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and will submit applications in accordance with this Court's Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals. For timekeeping purposes, because virtually all of the Allen Matkins services will relate to financing, Allen Matkins has recorded and proposes to continue to record its time under one project category.

16. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, propose to pay Allen Matkins their customary hourly rates in effect from time to time as set forth in the Stoner Affidavit. The Debtors submit that these rates are reasonable.

17. Between March 22, 2007 and March 30, 2007 (i.e., before the April 2, 2007 Petition Date), the Debtors paid Allen Matkins $137,000.00 to provide a retainer ("Retainer") in connection with and in contemplation of the Debtors' chapter 11 filings, more specifically the work being done by Allen Matkins on the postpetition financing facility.[3] On March 30, 2007,

---

[3] The Debtors also paid Allen Matkins $155,869.44 on March 8, 2007, for services rendered. Allen Matkins has received no other payments from the Debtors.

the Retainer amount was drawn down by $67,370.00 to pay an invoice for services provided March 1, 2007, through approximately March 21, 2007. The balance of the Retainer amount — approximately $69,630 — was left as an estimate for services already performed and expected to be performed March 22, 2007, through the commencement of the cases, expected to be around April 2, 2007. This amount represented a good-faith estimate of the fees and expenses associated with the firm's services to the Debtors, including both items already posted in the Allen Matkins billing system and those not yet posted. Allen Matkins will in due course submit to the Court a reconciliation to the actual prepetition fees and expenses. Any portion of that allocation that is not attributed to actual prepetition fees and expenses will be added to the Retainer balance, currently around $25,000. Upon appropriate order of this Court, Allen Matkins will apply the Retainer against postpetition fees.

## NOTICE

18. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to Greenwich Capital Financial Products, Inc., and The CIT Group/Business Credit, Inc., the Debtors' postpetition senior secured lenders; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, in accordance with Del. Bankr. L.R. 2002-1(b). The Debtors submit that no other or further notice is necessary or required.

## MEMORANDUM OF LAW

19. The Debtors submit that this Application does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District

Court Rules"), incorporated by reference into Local Rule 1001(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

## NO PRIOR REQUEST

20. No prior request for the relief sought in this Application has been made to this or any other Curt.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit D, granting the relief requested herein and such other and further relief the Court deems just and proper.

Dated: May 2, 2007  
Wilmington, Delaware

Respectfully submitted,

New Century Financial Corporation, and on behalf of New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp., New Century R.E.O. II Corp., New Century R.E.O. III Corp., New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., as Debtors and Debtors in Possession

By: _____  
Name: Monika L. McCarthy  
Title: SVP and Assistant General Counsel