## ARTICLE XI

### ENFORCEMENT OF TRUST AGREEMENT

11.1  The Company shall have the right to enforce any provisions of this Trust Agreement. In any action or proceedings affecting the Fund the only necessary parties shall be the Company and the Trustee and, except as provided in Section 12.1 hereof or as otherwise required by applicable law, no other person shall be entitled to any notice or service of process. Any judgment entered in such an action or proceeding shall be binding and conclusive on all persons having or claiming to have any interest in the Trust Fund.

## ARTICLE XII

### AMENDMENTS

12.1  Subject to the provisions of Section 12.3 hereof, the Company may, from time to time, amend or modify, in whole or in part, any or all of the provisions of this Trust Agreement, except to make it revocable, to increase the duties of the Trustee without its written consent or to take any action that would have a material adverse affect on a Participant or beneficiary unless the Participant or beneficiary consents in writing. The Trustee and the Participants shall receive written notice of any such amendment including any amendment under Section 12.3 hereof.

12.2  The Company and the Trustee shall execute such supplements to, or amendments of, this Trust Agreement as shall be necessary to give effect to any such amendment or modification.

12.3  To the extent that the terms hereof are inconsistent with the terms of any Plan, the latter shall control as if the terms hereof had been amended accordingly, except that the terms of this Agreement will control with respect to the responsibilities of the Trustee. Further, upon a Change of Control of the Company, the Company and its affiliates shall be precluded from amending (i) this Agreement, or (ii) any of the Plans with respect to any benefit (including any form of benefit or benefit determination) of the Participant that had accrued on or prior to the Change of Control of the Company or is funded pursuant to the provisions of Article XVI hereof but has not been completely distributed to the Participants or beneficiaries, unless, in either such event, the Participant or beneficiary, as applicable, consents, in writing, to such amendment. Upon a Change of Control, this Section 12.3 shall be deemed to supersede any provision of any such Plan which permits amendments of such Plan inconsistent with the terms hereof and this Section 12.3 shall constitute an amendment to such Plan. Notwithstanding anything in this Section 12.3 to the contrary, the Company shall have, both before and after any Change of Control, the right to terminate the Plan and this Agreement pursuant to Section 12.1 of the Plan.

## ARTICLE XIII

### TERMINATION OF THE TRUST

13.1  Except as provided in Sections 4.2 or 16.2 hereof, no part of the corpus or income of the Trust Fund shall be paid to the Company or be used for any purpose other than for the exclusive purpose of providing benefits to the Participants or beneficiaries prior to the satisfaction of all liabilities under the Plans; provided, however, that nothing in this Article shall be deemed to limit or otherwise prevent the payment from the Trust Fund of expenses, taxes, and other charges as provided in Article VIII hereof or the return of surplus as provided in this Article and Article IV. The Trust may be prospectively

discontinued by written instrument of the Company at any time, but the Trust may not be liquidated until the payment of all amounts accrued for the Participant (or beneficiary) under the terms of the Plans as of the date of such termination whether or not then due. In no event shall the termination of the Trust accelerate the payment of a Participant's benefit under a Plan.

13.2   Upon the liquidation of the Trust Fund after all payments required by Section 13.1 have been made to the Participant(s) (or beneficiary(ies)), any and all funds remaining in the Trust Fund shall be paid to the Company and the Trustee shall promptly take such action as shall be necessary to transfer such assets to the Company.

## ARTICLE XIV

### NON-ALIENATION

14.1   Except to the extent otherwise required by law, (i) no amount payable to or in respect of the Participant at any time under the Trust Fund and no interest that the Participant has in the Trust Fund shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind, and any attempt to so alienate, sell, transfer, assign, pledge, attach, charge or otherwise encumber any such amount, whether presently or thereafter payable, shall be void; and (ii) the Trust Fund shall in no manner be liable for or subject to the debts or liabilities of the Participant.

14.2   No provision of this Trust Agreement shall be interpreted as conferring upon the Participant any rights in any Trust Fund established hereunder other than those of a general creditor of the Company.

## ARTICLE XV

### COMMUNICATIONS

15.1   Communications to the Company shall be addressed to it at 18400 Von Karman, Suite 1000, Irvine, CA 92612, with a copy to the General Counsel; provided, however, that upon the written request of the Company, such communications shall be sent to such other address as the Company may specify.

15.2   Communications to the Trustee shall be addressed to it at Institutional Trust Group, MAC 2818-101, 707 Wilshire Boulevard, 10th Floor, Los Angeles, CA 90017, provided, however, that upon the Trustee's written request, such communications shall be sent to such other address as the Trustee may specify.

15.3   No communication shall be binding on the Trustee until it is received by the Trustee, and no communication shall be binding on the company until it is received by the Company.

15.4   Any action of the Company or the CEO or President (or his authorized representative) pursuant to this Trust Agreement, including all orders, requests, directions, instructions, approvals and objections of the Company to the Trustee, shall be in writing signed on behalf of the Company by any duly authorized officer of the Company or by the CEO, the President or the CEO's or President's delegate. The Trustee may rely on, and will be fully protected with respect to any such action taken or omitted in good faith in reliance on, any information, order, request, direction, instruction, approval, objection and list

APR-11-2006 08:03 AM    WELLS FARGO ITS SANDIEGO    858 622 5844    P.13

delivered to the Trustee by the Company consistent with the terms of this Trust Agreement.

## ARTICLE XVI

### CHANGE OF CONTROL

16.1    Upon a Change of Control of the Company, the CEO, the President, or the authorized representative of either, or the Company's Chief Financial Officer (the "CFO") shall notify the Trustee and shall immediately cause to be remitted to the Trustee as a contribution to the Trust Fund the amount, if any, accrued for the Participants (including any interest or earnings due on such accrual) for the current year or for any prior year to the extent not theretofore already contributed as well as an amount to the Fee Account estimated to be sufficient to pay all fees and expenses that may thereafter become due. Such contribution shall also include any life insurance policy(ies) purchased to be used to provide benefits under any of the Plans and the Company shall cause the ownership of such policy(ies) to be transferred to the Trustee in its capacity as trustee under this Trust Agreement as well as an amount sufficient such that at any time thereafter, the Trust will have sufficient funds, on a current basis, to provide the benefits due, or which may become due based on the facts then extant, to the Participant (or his designated beneficiary) under the Plan in any of the benefit forms permitted under the Plan. The CEO, President or CFO shall be obligated to continue to cause additional contributions to be made as may be necessary from time to time to insure that at all times the Trust contains sufficient funds, on a current basis, to provide the entire benefit due to the Participant (or his designated beneficiary) under the Plan. The Trustee shall be under no duty to determine the sufficiency, or to enforce the making, of such contributions.

16.2    In the event that a member of the Board, the CEO, the President or the CFO determines that, for purposes of this Trust Agreement, a Change of Control of the Company is imminent, the CEO, President or the CFO shall notify the Trustee and shall cause the Company to make the payments to the Trustee specified in Section 16.1. If a Change of Control shall not have occurred within 120 days of the contributions made pursuant to this Section 16.2 and the Board adopts a resolution to the effect that, for purposes of this Trust Agreement, a Change of Control is not imminent, any amounts added to the Trust Fund pursuant to this Section 16.2, together with any earnings thereon, shall be paid by the Trustee to the Company.

16.3    Change in Control" means any of the following:

(i) Approval by the stockholders of the Company of the dissolution or liquidation of the Company;

(ii) Consummation of a merger, consolidation, or other reorganization, with or into, or the sale of all or substantially all of the Company's business and/or assets as an entirety to, one or more entities that are not subsidiaries of the Company (a "Business Combination"), unless (A) as a result of the Business Combination at least 50% of the outstanding securities voting generally in the election of directors of the surviving or resulting entity or a parent thereof (the "Successor Entity") immediately after the reorganization are, or will be, owned, directly or indirectly, by stockholders of the Company immediately before the Business Combination; and (B) no "person" (as such term is defined for purposes of clause (iii) below and excluding the Successor Entity) beneficially owns, directly or indirectly more than 50% of the outstanding shares of the combined voting power of the outstanding voting securities of the Successor Entity, after giving effect to the Business Combination, except to the extent that such ownership existed prior to the Business Combination;

(iii) any "person" as such term is used in Sections 13(d) and 14(d) of the

Exchange Act) becomes the beneficial owner (as defined in Rule 13d-3 under the Exchange Act), directly or indirectly, of securities of the Company representing more than 50% of the combined voting power of the Company's then outstanding securities entitled to then vote generally in the election of directors of the Company;

(iv) During any period not longer than two consecutive years, individuals who at the beginning of such periods constituted the Board of Directors of the Company (the "Board") cease to constitute at least a majority thereof, unless the election, or the nomination for election by the Company's stockholders, of each new Board member was approved by a vote of at least two-thirds of the Board members then still in office who were Board members at the beginning of such period (including for these purposes, new members whose election or nomination was so approved), but excluding for this purpose, any such individual whose initial assumption of office occurs as a result of an actual or threatened election contest with respect to the election or removal of directors or other actual or threatened solicitation of proxies or consents by or on behalf of a person other than the Board.

Notwithstanding the foregoing, prior to the occurrence of any of the events described in clause (ii) or (iii) above, the Board may determine that such an event shall not constitute a Change in Control for purposes of the Plan.

## ARTICLE XVII

### MISCELLANEOUS PROVISIONS

17.1   This Trust Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be performed therein, exclusive of any conflict of laws provision. It shall be binding upon and inure to the benefit of the Company and the Trustee and their respective successors and assigns.

17.2   All titles and Article headings herein have been inserted for convenience of reference only and shall in no way modify, restrict or affect the meaning or interpretation of any of the terms or provisions of this Trust Agreement.

17.3   This Trust Agreement is intended as a complete and exclusive statement of the agreement of the parties hereto, and supersedes all previous agreements or understandings among them.

17.4   The term "Trustee" shall include any successor trustee. If a Trustee or custodian hereunder is a bank or trust company, any corporation resulting from any merger, consolidation or conversion to which such bank or trust company may be a party, or any corporation otherwise succeeding generally to all or substantially all of the assets or business of such bank or trust company, shall be the successor to it as Trustee hereunder without the execution of any instrument or any further action on the part of any party hereto or the Participant hereunder; provided, however, that, except as provided in the preceding clause, any successor to the original Trustee must be a Replacement Trustee.

17.5   If any provision of this Trust Agreement shall be invalid and unenforceable, the remaining provisions hereof shall continue to be effective.

17.6   Any reference hereunder to the Participant shall expressly be deemed to include, where relevant, a beneficiary of such Participant duly designated under the terms of the Plans. The Participant shall cease to have such status once any and all amounts due him under the Plans have been satisfied.

17.7   Whenever used herein, and to the extent appropriate, the masculine, feminine or neuter

3

APR-11-2005  08:24 AM    WELLS FARGO ITS SANDIEGO    858 622 5844        P.15

gender shall include the other two genders, the singular shall include the plural and the plural shall include the singular.

17.8   This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be the original, and said counterparts shall constitute but one and the same instrument.

17.9   Benefits payable to Plan Participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

17.10   The Company, and the Trust Fund (to the extent permitted by applicable law) agree to indemnify and hold harmless the Trustee, its directors, officers, employees and agents from and against all liabilities, losses, expenses and claims (including reasonable attorney's fees and costs of defense) arising out of the Company's performance of its duties or any breach or alleged breach of its duties with respect to the Plan and this Trust, or arising out of or relating to any action, suit or proceeding to which the Trustee is a party or otherwise involved by reason of its serving as Trustee pursuant to this Trust Agreement and complying with its terms, except where the Trustee has been found to have been negligent or to have breached its duties under this Trust Agreement or Part 4 of Title I to ERISA by a final judgment of a court of competent jurisdiction.

## ARTICLE XVIII

### DEFINITIONS

18.1   "Affiliate" shall mean any firm, partnership, or corporation that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company. "Affiliate" also includes any other organization similarly related to the Company that is designated as such by the Board.

18.2   "Beneficial Owner, Beneficially Owns and Beneficial Ownership" shall have the meanings ascribed to such terms for purposes of Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and the rules thereunder, except that, for purposes of this definition, "Beneficial Ownership" (and the related terms) shall include Voting Securities that a Person has the right to acquire pursuant to any agreement, or upon exercise of conversion rights, warrants, options or otherwise, regardless of whether any such right is exercisable within 60 days of the date as of which Beneficial Ownership is to be determined.

18.3   "Board" shall mean the Company's Board of Directors.

18.4   "CEO" shall mean the Chief Executive Officer of the Company.

18.5   "CFO" shall mean the Chief Financial Officer of the Company.

18.6   "Change of Control" shall mean a transaction described in Section 16.3.

18.7   "Code" shall mean the Internal Revenue Code of 1986, as amended.

18.8   "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended.

18.9   "Fee Account" shall mean a separate account under the Trust to provide a source for

14

APR-11-2005 08:24 AM   WELLS FARGO ITS SANDIEGO   858 622 6344   P.15

payment of any fees, including legal fees, incurred by the Trustee in the administration of the Trust or by participants in enforcing their rights under the Trust Agreement.

18.10 "Insolvent" shall mean (I) the inability of the Company to pay its debts when they mature or (ii) the Company is subject as a debtor to a pending proceeding under the Federal Bankruptcy Code.

18.11 "Participant" shall mean each participant in the Plans designated by the Company of the date hereof or, thereafter, added by the CEO or President from time to time.

18.12 "Person" shall have the meaning ascribed for purposes of Section 13(d) of the Exchange Act and the rules thereunder.

18.13 "Plans" shall mean certain employment, retirement and welfare benefit agreements and plans listed on Exhibit A attached hereto as of the date hereof or, thereafter, added by the CEO or President.

18.4 "Related Party" shall mean (I) a majority-owned subsidiary of the Company; or (ii) a trustee or other fiduciary holding securities under an employee benefit plan of the Company or any majority-owned subsidiary of the Company; or (iii) a corporation owned directly or indirectly by the shareholders of the Company in substantially the same proportion as their ownership of Voting Securities.

18.15 "Trust" shall mean the irrevocable trust fund created by the Company and the Trustee under the Trust Agreement with respect to designated participants in the Plans.

18.16 "Trust Agreement" shall mean the trust agreement with the Trustee effective as of January 1, 1999, adopted for the purpose of providing a funding source for the Plans.

18.17 "Trustee" shall mean Wells Fargo Bank, N.A., a national banking association organized and existing under the laws of the United States, and any successor thereto.

18.18 "Trust Fund" shall mean collectively all money and other property, all investments and reinvestments made therewith or proceeds thereof and all earnings and profits (less losses) thereon, less all payments and charges as authorized herein, for the Trust.

18.19 "Trust Surplus" shall mean that a "benefit consultant" appointed by the Company at any time prior to a Change of Control, or such a consultant appointed by the Trustee following a Change of Control, has determined that the fair market value of Trust assets exceeds 110%, 140% following a Change of Control, or the present value of accrued benefit obligations under the Plans. The amount of such excess over 110%, or 140%, as applicable, shall be the "Trust Surplus."

18.20 "Voting Securities" shall mean any securities of the Company which carry the right to vote generally in the election of directors.

APR-11-2005 08:25 AM    WELLS FARGO ITS SANDIEGO    858 622 5344                P.17

IN WITNESS WHEREOF, this Trust Agreement has been duly executed by the parties hereto as of the day and year first above written.

NEW CENTURY FINANCIAL CORPORATION

By: _____
Name: Patrick Flanagan
Title: Executive Vice President

Assistant Secretary (Seal)

Attest:

WELLS FARGO BANK, N.A.
(As Trustee)

By: _____
Name: JONATHAN L. ANDERSON
Title: Vice President

Secretary (Seal)