EXHIBIT "A"

Centerbank Mortgage Company
1 Jefferson Sq.- P.O.Box 10300
Waterbury, Connecticut 06726-0300



———————————— [Space Above This Line For Recording Data] ————————————

State of New York               **MORTGAGE**          FHA Case No.
                                                      3722592656  7՚↩

THIS MORTGAGE ("Security Instrument") is given on August 2, 1996
The Mortgagor is
DARLENE MARIE BLAKE

whose address is 169 CADY ST
         ROCHESTER, NY 14611
("Borrower"). This Security Instrument is given to CENTERBANK MORTGAGE COMPANY

MONROE COUNTY CLERK   96 AUG -2 PM 3:50   RECORDED

which is organized and existing under the laws of CONNECTICUT                                   , and
whose address is ONE JEFFERSON SQ., PO BOX 10300, WATERBURY, CT 06726-0300
                                           ("Lender"). Borrower owes Lender the principal sum of
Seventy-Five Thousand Five Hundred and No/100
                                           Dollars (U.S. $   75,500.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on August 1, 2026
          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA New York Mortgage - 4/96
@-4R(NY) (9604)
   VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8                    Initials: DMB

## SCHEDULE A

ALL THAT TRACT OR PARCEL OF LAND, situate in the City of Rochester, County of Monroe and State of New York, bounded and described as follows:

Known and distinguished as Lot No. 52 of the South Park Tract as shown on a map thereof made by W.R. Storey, Surveyor, and filed in Liber 9 of Maps at page 55 in the Monroe County Clerk's Office

Said Lot No. 52 fronts 49 feet on the west side of Fairview Avenue and extends back of the same width 120 feet according to said map.

*Smu + amly*

*135.40-1-15*

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in **MONROE** County, New York:

**SEE SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of **95 FAIRVIEW AVE, ROCHESTER,** [Street, City], New York **14619** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

-4R(NY) (9804)                          Page 2 of 8                          Initials: DMB

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

-4R(NY) (0604)                          Page 4 of 8                                    Initials: DMB

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

-4R(NY) (9604)   Page 5 of 8   Initials: DmP

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of the Borrower's remaining rights in the Property and have the Property sold. At this sale, Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount owed Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under paragraph 9.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

20. **Agreements about New York Lien Law.** Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower received and which Borrower has a right to receive from Lender under the Note as a "trust fund;" and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider             ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

-4R(NY) (8604)        Page 7 of 8        Initials: DMB

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _Darlene M. Blake_____(Seal)
                                   DARLENE MARIE BLAKE      -Borrower

_____    _____(Seal)
                                                            -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                   -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                   -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                   -Borrower

STATE OF NEW YORK,    Monroe                County ss:

On this  2  day of  August, 1996  ,             , before me personally came

Darlene Marie Blake

to me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

My Commission Expires:

_____
Notary Public

SUSAN M. SPAGNOLA
NOTARY PUBLIC, State of N.Y., Monroe Co.
My Commission Expires June 23, 19_98_

-4R(NY) (9604)                Page 8 of 8

Multistate    COPY    NOTE   5007 8200    FHA Case No. 3722592656 703

August 2, 1996
[Date]
95 FAIRVIEW AVE, ROCHESTER., NY 14619

[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
**CENTERBANK MORTGAGE COMPANY**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
**Seventy-Five Thousand Five Hundred and No/100**

Dollars (U.S. $ 75,500.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Eight and One-Half** per cent ( 8.5000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **September 1, 1996**. Any principal and interest remaining on the first day of **August 1 2026**, will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at **ONE JEFFERSON SQ., PO BOX 10300, WATERBURY, CT 06726-0300**
or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of $ 580.53 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.

Page 1 of 2    FHA Multistate Fixed Rate Note - 2/91
VMP-1R (9103).02    VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291    Initials: PMB

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four per cent ( 4 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Darlene Marie Blake_ (Seal) _____ (Seal)
DARLENE MARIE BLAKE   -Borrower                     -Borrower

_____ (Seal)   WITHOUT RECOURSE            _____ (Seal)
            -Borrower   PAY TO THE ORDER OF         -Borrower

CENTERBANK MORTGAGE COMPANY

_signature_

SCOTT W. BOWDEN
VICE PRESIDENT

DATE_____

-1R (9103).02          Page 2 of 2

# NEW YORK

## ASSIGNMENT OF MORTGAGE

SW04
8020277          10 2480027

248309
473924

COUNTY OF MONROE
LOAN NO. 8020277
POOL NO.

Loan # 0102480027
MIN # 100025400002522325
VRU # 1-888-679-6377

When Recorded Return To:
Aurora Loan Services Inc.
601 5th Avenue
P.O. Box 1706
Scottsbluff, NE 69363-1706
Attn: Darline Dietz

KNOW THAT **FIRST UNION MORTGAGE CORPORATION, A NORTH CAROLINA CORPORATION**

located at **1100 CORPORATE CENTER DRIVE, RALEIGH, NORTH CAROLINA, 27607**
(ASSIGNOR), in consideration of TEN DOLLARS ($10.00) paid by _____

hereby assigns unto the (ASSIGNEE) _

Mortgage Electronic Registration Systems, Inc.
G 4318 Miller Road, Flint, MI 48507

located at ,
A certain Mortgage dated the **2nd** day of **AUGUST 1996** made by **DARLENE MARIE BLAKE**

to **CENTERBANK MORTGAGE COMPANY**
in the principal sum of **75,500.00**
and recorded on the **2nd** day of **AUGUST 1996**
in Liber/Reel number **13049** of Mortgage Page **0170**
Document Number **199608020892** Serial no. **CN 11567**
in the office of **MONROE** County New York more
particularly described hereinafter as follows:
  AS DESCRIBED ON SAID MORTGAGE REFERRED TO HEREIN. TAX ID 13540-1-15
Section _____ Block _____ Lot **52**
**PROPERTY ADDRESS: 95 FAIRVIEW AVE, ROCHESTER, NY 14619**

Loan No.

Assignment-Interv.-Recorded

J=FM915.S.00286
Page 1 of 2

(NMRI.NY)

Loan No. 8020277

TOGETHER with the bond or note or obligation described in said mortgage and the monies due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

This assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the assignor has duly executed this assignment this __12th__ day of __APRIL 2001_____,
but effective the _____ day of _____.


BY _____
MICHAEL T. OLIVER
SECRETARY

FIRST UNION MORTGAGE CORPORATION

BY _____
DANE F. BAYAG
VICE PRESIDENT

STATE OF _NORTH CAROLINA_ )
                          ) ss
COUNTY OF _WAKE_          )

On the _12th_ day of _APRIL 2001_____ before me, the undersigned, personally appeared _DANE F. BAYAG_____ and _MICHAEL T. OLIVER_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of _____ _WAKE_____, State of _____ _NORTH CAROLINA_____ .


_____
DEVRA L. BRANCH  (COMMISSION EXP. 10-24-05)
NOTARY PUBLIC

PREPARED BY SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
.
.
.
ATTN .

(NMRI.NY)
C=S.115.0005
P=S.001.286                              J=FM915.S.00286

Page 2 of 2

MONROE COUNTY CLERK'S OFFICE
County Clerk's Recording Page

Return To:

AURORA LOAN SERVICES INC
601 5TH AVENUE
PO BOX 1706 ATTN DARLINE DIETZ
SCOTTSBLUFF NE 69363-1706

Index   ASSIGNMENTS OF MTGS

Book   01433   Page   0610

No. Pages   0003

Instrument   ASGT OF MTG

Date :   5/06/2002

Time :   12:58:00

Control #   200205060542

FIRST UNION MORTGAGE CORPORATION
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

MTG#      M# CN   011567

REF#

Employee ID KG

MORTGAGE TAX

| | | | | | |
|---|---|---|---|---|---|
| FILE FEE-S | $ | 4.75 | MORTGAGE AMOUNT | $ | .00 |
| FILE FEE-C | $ | 5.75 | | | |
| REC FEE | $ | 9.00 | BASIC MORTGAGE TAX | $ | .00 |
| | $ | .00 | | | |
| | $ | .00 | SPEC ADDIT MTG TAX | $ | .00 |
| | $ | .00 | | | |
| | $ | .00 | ADDITIONAL MTG TAX | $ | .00 |
| | $ | .00 | | | |
| | $ | .00 | Total | $ | .00 |
| Total: | $ | 19.50 | | | |

STATE OF NEW YORK
MONROE COUNTY CLERK'S OFFICE

TRANSFER AMT

WARNING - THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH.

TRANSFER AMT $           .00

TRANSFER TAX $           .00

Maggie Brooks, County Clerk

A014330610

RECORDED
2006 AUG 29 PH 1:23

Prepared By and Return to:
Lesley Niblett
MidFirst Bank
2730 North Portland Avenue
Oklahoma City, OK 73107

Phone (405)426-1615
Loan # 50078200
Pool #

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc., (MERS) A Delaware Corporation, P.O. Box 2026, Flint, MI 48501-2026, (hereinafter called the "Assignor"), does hereby grant, convey, assign, transfer, and set over to: **MIDFIRST BANK**, A Federally Chartered Savings Association, 999 NW Grand Boulevard, Suite 100, Oklahoma City, OK 73118, (hereinafter called the "Assignee"), its successors and assigns, all of the Assignor's rights, title and interest, in and to:

1. The Promissory Note (herein called the "Note"), evidencing the indebtedness secured by the Mortgage.

2. The Mortgage/Deed of Trust dated 8/2/96 executed by Darlene Marie Blake, to *Centerbank Mortgage Company., and recorded on 8/2/96 in Liber 13049 Page 170, Modified on 1/21/06 in Book 20312 Page 0212 on 2/27/06 in the Office of the Recorder, County of Monroe, State of New York, and covers the following real property and all improvements:   CN 611567

Property Address: 95 Fairview Ave., Rochester, New York 14619
Mortgage Amount: $75,500.00

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTION 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGNMENT WITHIN THE SECONDARY MORTGAGE MARKET.

In Witness Whereof, the undersigned corporation has caused this instrument to be executed this 18th day of July, 2006.

ATTEST:

Mortgage Electronic Registration Systems, Inc., (MERS)

_Jeri Bassett_
VICE PRESIDENT    Jeri Bassett

State of Oklahoma    }
County of Oklahoma   }

On the 18th day of July, 2006, before me, personally appeared, Jeri Bassett, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on this instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in Oklahoma County, Oklahoma.

_Jo Clark_
Notary Public    Jo Clark
My Commission Expires: 5/11/10

*Said mortgage was assigned to mortgage Electronic Registration Systems, Inc. by assignment recorded 8/6/02 in liber 1433 at page 610

*And assigns mortgage given to Darlene Marie Blake to Mortgage Electronic Registration Systems, Inc. dated 1/21/06 and recorded 2/27/06 in liber 20312 at page 212 $8,420.22. Said mortgage is consolidated with mortgage recorded in liber 13049 at page 170 to form a single lien of $76,921.74

# DEED

THIS INDENTURE, made the 29 day of July, 1996.

BETWEEN

MICHAEL D'ARIES and HANNELORE D'ARIES, his wife, residing at 17 Ainsworth Lane, Rochester, New York 14624,

grantor,

AND

DARLENE MARIE BLAKE, residing at 169 Cady Street, Rochester, New York 14611,

grantee,

WITNESSETH, the grantor, in consideration of One and more---------- Dollars ($1.00), paid by the grantee, hereby grants and releases unto the grantee, her heirs or successors and assigns of the grantee forever.

ALL THAT TRACT OR PARCEL OF LAND, situate in the City of Rochester, County of Monroe and State of New York, bounded and described as follows: Known and distinguished as Lot No. 52 of the South Park Tract as shown on a map thereof made by W.R. Storey, Surveyor, and filed in Liber 9 of Maps at page 55 in the Monroe County Clerk's Office.

SAID LOT No. 52 fronts 49 feet on the west side of Fairview Avenue and extends back of the same width 120 feet according to said map.

Intending to convey same premises as described in deed dated June 21, 1988 and recorded in the Monroe County Clerk's Office on July 1, 1988 in Liber 7375 of Deeds at page 52.

Subject to all covenants, easements and restrictions, if any, now in effect.

Tax Account #: 135.400-1-15
Property Address: 95 Fairview Avenue, Rochester, New York 14619
Property Billing Address: Dome

PLEASE RECORD + RETURN TO:
ROZETTE DARBY MCDOWELL, ESQUIRE
115 CLEARVIEW DR., PITTSFORD, NY 14534

98 AUG -2 PH 3:50
MONROE COUNTY CLERK
RECORDED

MONROE COUNTY CLERK'S OFFICE

Return To:

   MIDFIRST BANK
   2730 NORTH PORTLAND AVENUE
   OKLAHOMA CITY OK 73107

Index  ASSIGNMENTS OF MTGS

Book  01549    Page  0195

No. Pages   0003

Instrument  ASGT OF MTG

Date :   8/29/2006

Time :   1:23:00

Control #   200608290673

MORTGAGE ELECTRONIC REGISTRATI
ON SYSTEMS INC
MIDFIRST BANK

MTG#      M# CN  011567

REF#

Employee ID  NB40

### MORTGAGE TAX

| | | |
|---|---|---|
| FILE FEE-S | $ 19.00 | MORTGAGE AMOUNT $ .00 |
| FILE FEE-C | $ 8.50 | |
| REC FEE | $ 9.00 | BASIC MORTGAGE TAX $ .00 |
| | $ .00 | |
| | $ .00 | SPEC ADDIT MTG TAX $ .00 |
| | $ .00 | |
| | $ .00 | ADDITIONAL MTG TAX $ .00 |
| | $ .00 | |
| | $ .00 | Total $ .00 |
| Total: | $ 36.50 | |

STATE OF NEW YORK
MONROE COUNTY CLERK'S OFFICE

WARNING - THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

### TRANSFER AMT

TRANSFER AMT $   .00

TRANSFER TAX $   .00

   Cheryl Dinolfo
   Monroe County Clerk


A015490195