IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416(KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Hearing Date: May 15, 2007 at 1:30 p.m. |
| | : | Re: Docket No. 278 |

## NEW CENTURY FINANCIAL CORPORATION'S OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, AN EXAMINER

### PRELIMINARY STATEMENT

After New Century management has engaged in extensive strategic planning and preparation to sell the company's most vital remaining assets, after management has successfully sold one of those assets for $58 million and is now on the threshold of selling the remaining assets, and with the Creditors' Committee that the United States Trustee itself selected adamantly in opposition, the U.S. Trustee seeks to remove the management of New Century and appoint a Chapter 11 trustee to step in and assume control of a complex process at this most critical time. The U.S. Trustee does so despite a burden of clear and convincing evidence that she does not come close to meeting.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership

What the U.S. Trustee proffers as the basis of this extraordinary motion is that New Century's leadership is guilty of mismanagement because of accounting errors in the first three quarters of 2006, specifically with respect to New Century's accounting for repurchase reserves and the valuation of its residual interests in securitized loan pools previously sold. The U.S. Trustee ignores the complexity of New Century's regulated business and the accounting involved; the fact that the accounting was incorporated in financial statements reviewed by New Century's independent outside auditors; the changes that New Century management has made in the finance department previously involved in the company's accounting; and the additional measures that management has taken to ensure the accurate, efficient, and orderly administration of the company, the sale of its regulated businesses, the wind-down of its operations, and the administration of the estates through the Chapter 11 process. The Creditors' Committee that the U.S. Trustee appointed, a body charged with maximizing New Century's assets for the benefit of all creditors, opposes the U.S. Trustee's motion and believes that New Century's management should stay in place.

If the U.S. Trustee were to succeed on her motion, then the rule would be established that any publicly traded company that has announced a restatement of its earnings before entering the Chapter 11 process must automatically suffer the imposition of a Chapter 11 trustee without any further analysis or consideration. That is not the law.

The U.S. Trustee's continued pursuit of the proposed alternative, the appointment of an examiner, should also be rejected. The Creditors' Committee already has commenced its own examination process and the management of New Century is cooperating in that effort. The appointment of another examiner would duplicate those efforts as well as the efforts of the United States Securities and Exchange Commission and the United States Attorney's Office. Again the U.S. Trustee fails to meet her burden of proof and seeks to impose an unnecessary and unwarranted expense on the estate, to the detriment of the estate itself and the interests of creditors.

The U.S. Trustee's motion should be denied in all respects. The relief sought

contravenes the facts, the law, and perhaps most significantly, the well-being of creditors.

## STATEMENT OF FACTS

I.  **NEW CENTURY MANAGEMENT'S DISCOVERY OF ACCOUNTING ERRORS AND THE SWIFT REMEDIAL ACTIONS IT TOOK**

On February 7, 2007, debtor New Century Financial Corporation ("New Century")

announced that its financial results for the first three quarters of 2006 would be restated to

correct errors in the application of Generally Accepted Accounting Principles regarding New

Century's allowance for loan repurchase losses. (Mtn. at 2.) New Century also stated in that

same disclosure that such errors likely would "constitute material weaknesses in its internal

control over financial reporting for the year ended December 31, 2006." (Ex. A to Mtn.)

The United States Trustee (the "U.S. Trustee") seeks the appointment of a Chapter 11

trustee based solely on these accounting and internal control errors. (Mtn. at 8-10.) The U.S.

Trustee disregards the actions that New Century's Board of Directors (the "Board") and

management took to address the accounting issues once those issues came to their attention.[2]

  •  *The Audit Committee swiftly initiated an independent internal investigation.*

Shortly after New Century's February 7, 2007 announcement, the Audit Committee of

the Board of Directors (the "Audit Committee"), through its independent counsel and with the

assistance of forensic accountants, initiated an independent internal investigation relating to the

underlying causes of the need to restate the 2006 interim financial statements and other issues.

(Decl. of Monika L. McCarthy in Support of Chapter 11 Petitions and First Day Relief, Docket

no. 2, filed Apr. 2, 2007 ("McCarthy Decl.") ¶ 42.) A Special Investigation Subcommittee of the

Audit Committee undertook responsibility for the internal investigation.

  •  *The Board, before any investigative results were known, removed supervisorial authority from accounting personnel who potentially could be involved in the prior accounting issues.*

The Board and management did not wait until the completion of the independent

investigation to ensure that the integrity of the current accounting controls of the company were

---

[2] The U.S. Trustee also mischaracterizes the reasons for New Century's financial decline.

beyond reproach. Prior to filing for bankruptcy, the Board confirmed that the company's former

Chief Financial Officer ("CFO") did not retain any decision-making or supervisory role within

the accounting or finance functions. The Board took this step even though the accounting

function now reports to New Century's new CFO, Tajvinder Bindra, who joined New Century on

November 6, 2006 -- after the end of the third quarter of 2006 -- and who became CFO on

November 15, 2006 -- after the filing of the third quarter Form 10-Q containing New Century's

quarterly financial statements. Mr. Bindra had nothing to do with any of the financial statements

needing restatement and, in fact, helped facilitate the discovery of the accounting issues that led

to the restatement. Mr. Bindra is currently focusing his efforts on the restatement and is thus a

vital part of the company's remediation process.

Similarly, before the investigative results were known and prior to the filing of the

bankruptcy petitions, New Century's Board removed the company's former Controller from any

decision-making or supervisory role in any portion of New Century's accounting function. This

was done so there would be no question as to the integrity of the company's current accounting

controls.

- *The Board hired outside experts to take control of the company's cash management, financial reporting to creditors, reconciliation of amounts owed to warehouse lenders, and reporting to this Court, the United States Trustee, and the Creditors' Committee.*

This Court previously has heard the testimony of Holly Etlin of AP Services, LLC. The

Board hired Ms. Etlin and her company to assume complete control of the company's cash

management function, including all disbursements. Ms. Etlin and her company have done so.

They also have, at the Board's direction, taken control of the company's financial reporting to

creditors, the reconciliation of amounts owed to warehouse lenders, and all reporting to this

Court, to the U.S. Trustee, and to the Creditors' Committee. The Board took this action to fill

the vacancy created by the removal of New Century's Controller. The Board and management

have filed their motion seeking this Court's approval to designate Michael G. Tinsley of AP

Services, LLC as temporary Vice President and Controller. (Mtn. for an Order under 11 U.S.C.

§§ 105 and 363 Authorizing the Employment of AP Services, LLC as Crisis Managers for the
Debtors *Nunc Pro Tunc* to April 2, 2007, Docket no. 414, filed Apr. 26, 2007 ("AP Servs. Mtn.)
¶ 15.) Mr. Tinsley and his firm are well-regarded professional crisis managers who had no role
in the restatement of the company's financial statements. The Board and management of New
Century seek this Court's approval of the March 22, 2007 agreement to retain AP Services to
assist with the cash management function, cost initiatives, general accounting and financial
reporting function, and financial statements, schedules, and other regular reports required by this
Court. (*Id.*) AP Services is qualified to supervise and lead the accounting function as New
Century proceeds expeditiously to liquidate its assets. (*Id.* ¶ 13.)

- *The Board took steps to ensure the company's immediate and full cooperation
  with the government investigations.*

The Board directed New Century to cooperate with the SEC's and the United States
Attorney's Office for the Central District of California's respective investigations of the
restatement issues. New Century has cooperated and will continue to cooperate with these
investigations and to maintain open lines of communication with both investigating offices.
(McCarthy Decl. ¶¶ 47 & 49.)

- *The Board has worked cooperatively with the Creditors' Committee.*

The Board and management have cooperated and worked closely with the Creditors'
Committee on virtually all aspects of these cases, including the Committee's motion for an
examination and production of documents. (Mtn. of the Official Comm. of Unsecured Creditors
for an Order Authorizing Examinations and the Production of Documents Pursuant to
Bankruptcy Rules 2004 and 9016, Docket no. 448, filed Apr. 27, 2007, ¶ 32.)

- *The Board has devoted itself to achieving maximum value from the sale of the
  company's assets.*

The Board and management have collectively spent thousands of hours in their efforts to
sell New Century's assets, including developing the strategy for the sale of those assets, making
presentations to prospective bidders, engaging in discussions and negotiations with prospective

bidders, and participating in the due diligence process.

The Board and management of New Century well understand their obligations in the Chapter 11 process and have honored those obligations throughout. No legitimate interest of any stakeholder would be furthered by the addition of a Chapter 11 trustee. And, the addition of yet another investigator could severely prejudice and delay the Board's and management's efforts to sell the company's assets as quickly and efficiently as possible in order to maximize the value of the assets for the benefit of creditors.

## II.    NEW CENTURY'S BOARD AND MANAGEMENT HAVE SUBSTANTIAL EXPERIENCE WITH NEW CENTURY AND THE INDUSTRY

The U.S. Trustee criticizes the current Board members and certain executive officers who were at New Century during the first three quarters of 2006. The U.S. Trustee does so because the financial statements for the first three quarters of 2006 need to be restated. This broad and sweeping attack on well-respected executives is unjustified. As described above, members of the Board and management acted swiftly and properly once the accounting issues surfaced. To tar all company executives -- particularly those who had no role in accounting -- with a broad brush and without any evidence that they knew or had reason to know of the accounting issues is unwarranted. The conclusion that all company executives are incompetent simply because of an accounting readjustment during their tenure with the company is classic *ipse dixit*.

The experience and continued involvement of both the Board and the management team is essential to maximizing the recoveries on assets for New Century's stakeholders.

### A.    The Experience of New Century Management

New Century's Chief Executive Officer, Brad Morrice, has been with New Century since its inception more than ten years ago.[3] New Century's General Counsel, Stergios Theologides, joined New Century approximately nine years ago. Kevin Cloyd, an Executive Vice President, joined New Century in 2001. Joseph Eckroth, the Chief Operating Officer of New Century

---

[3] Information about the New Century management team can be found at http://investorrelations.ncen.com by following the "Company Information" and "Management and Board" links.

Mortgage Corporation, and Robert Lambert, the Senior Vice President of Leadership and Organizational Development, joined in 2005. These officers have, collectively, more than 25 years of experience with New Century. Anthony Meola, who joined New Century last year as the Executive Vice President in charge of Production, has more than 19 years of experience at the senior management level in the mortgage industry. Taj Bindra, New Century's current CFO, has more than 13 years of experience in the mortgage industry.

This team is aggressively pursuing the sale of the company in an effort to maximize the recoveries for stakeholders. Derailing their efforts by interjecting a Chapter 11 trustee would only penalize creditors. Moreover, missing from the U.S. Trustee's motion is a single piece of evidence that any of these individuals had any contemporaneous knowledge of the accounting issues related to the restatement. None of the current senior management team was part of the accounting team that reported to the CFO during the first three quarters of 2006. In fact, with the exception of Mr. Bindra, New Century's current CFO, none of these officers has any accounting responsibility.

### B.   The Experience of the New Century Board

Nowhere in her motion does the U.S. Trustee present a single piece of evidence that the Board had any inkling about the accounting errors at issue. New Century is unaware of any such evidence. Like the members of New Century management identified above, the current Board consists of individuals with significant business expertise and experience with New Century specifically. The current directors collectively have more than 70 years of experience serving on the New Century Board and many of them have significant experience in the mortgage industry.[4] In addition, the Board is made up of individuals who have served in the capacities of CEO, President, or CFO of public and private companies or who have had experience in academia. Many of the Board members have also served on the boards of other public companies.

This experience is key to the successful efforts to maximize the value of the estate. New

---

[4] Brief biographical information on each of the Directors is attached hereto as Exhibit A.

Century is a complex business in a complicated, regulated industry. New Century has more than thirty direct and indirect subsidiaries consisting of business trusts, corporations, and partnerships. (McCarthy Decl. ¶¶ 23-36.) New Century and its subsidiaries engaged in originating, selling, and servicing loans. Each of these business components had its unique set of issues and challenges. New Century engaged in securitized loan transactions that carried different obligations depending on whether the retained interest was a residual interest or the full value of the securitized loan portfolio. (*Id.* ¶¶ 9-11.) New Century and its subsidiaries also maintain approximately 354 open bank accounts and a large, complex, and efficient cash management system. (Decl. of Holly Etlin in Support of Chapter 11 Petitions and Request for First Day Relief, Docket no. 3, filed Apr. 2, 2007, ¶¶ 73-99.)

As noted above, the Board and management of New Century collectively have spent thousands of hours in New Century's efforts to sell its assets at maximum value. The appointment of a Chapter 11 trustee at this critical juncture is both unwarranted and perilous.

## III.    NEW CENTURY DOES NOT OWE MORE THAN $5 MILLION OF THE TYPE OF DEBT IDENTIFIED IN § 1104 OF THE BANKRUPTCY CODE.

In its alternative request for an examiner, the U.S. Trustee erroneously asserts that the Debtors owe more than the $5 million threshold for the type of debt identified in Section 1104(c)(2) of the Bankruptcy Code. Specifically, the U.S. Trustee asserts that more than $86 million is owed to two entities -- New Century Capital Trust I ("Trust I") and New Century Capital Trust II ("Trust II") (collectively, the "New Century Trusts"). The New Century Trusts, however, are "insiders" under the Bankruptcy Code.

In late 2006, New Century formed the New Century Trusts as wholly-owned subsidiaries. The New Century Trusts are statutory business trusts formed in the state of Delaware, and the sole beneficial common security holder of each is New Century.

## ARGUMENT

The U.S. Trustee seeks appointment of a Chapter 11 trustee pursuant to Bankruptcy Code § 1104(a)(1). That section provides in relevant part that upon motion "the court shall order the

appointment of a trustee . . . for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after commencement of the case . . . ."

The U.S. Trustee's motion is based on New Century's disclosure that three quarterly financial statements should be restated due to accounting errors and that such errors may constitute material weaknesses in the company's financial internal controls. (Mtn. at 8.) Such allegations are insufficient to establish cause warranting the appointment of a Chapter 11 trustee.[5] Unlike the cases cited by the U.S. Trustee in support of her motion, here there are no allegations or evidence of suspect transactions, diverted income, siphoned funds or assets, conflicts of interest, post-petition filing of false documents with the Court, disabling acrimony between the Debtors and the Creditors' Committee, or conduct leading the Court to question the veracity of New Century's management.

The Motion disregards or misstates the applicable law in other material and significant respects. Contrary to binding Third Circuit precedent, the U.S. Trustee argues in a footnote that this Court should ease the clear-and-convincing burden of proof that she is required to meet. The U.S. Trustee argues this Court should instead apply the lesser preponderance-of-the-evidence burden when evaluating whether cause for the appointment of a Chapter 11 trustee has been established. (Mtn. at 7 n.4.) In so doing, the U.S. Trustee's motion fails to acknowledge and account for the strong presumption against appointing a Chapter 11 trustee and the discretion vested with this Court in determining whether cause exists.

Applying the correct burden of proof to the facts of this case compels the conclusion that the U.S. Trustee has failed to meet her burden by clear and convincing evidence that cause exists

---

[5] The motion is ambiguous as to whether the U.S. Trustee views the accounting errors as constituting fraud, dishonesty, incompetence, or gross mismanagement. Although it cites to § 1104(e) (which discusses actual fraud, dishonesty or criminal conduct) in a footnote, the U.S. Trustee provides not one shred of evidence from which actual fraud, dishonesty, or criminal conduct could be inferred.

to appoint a Chapter 11 trustee.[6]

Because the U.S. Trustee similarly cannot satisfy the standard for the appointment of an examiner, this Court should also reject the U.S. Trustee's alternative request.

## I.    CAUSE DOES NOT EXIST TO APPOINT A TRUSTEE

### A.    There Is A Strong Presumption Against Appointing A Chapter 11 Trustee

A strong presumption exists against appointing a Chapter 11 trustee, *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998), and the party moving for such appointment must prove its need by "clear and convincing evidence." *In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3d Cir. 2004) (Alito, J.) (rejecting preponderance of the evidence standard).[7] "It is settled that appointment of a trustee should be the exception, rather than the rule." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989). This strong presumption is based on the understanding that the debtor-in-possession is best able to operate the business through reorganization due to its familiarity with the business and the industry in which it operates. *Marvel*, 140 F.3d at 471. It is also recognized that a Chapter 11 trustee is usually not necessary because upon filing a petition, the debtor-in-possession becomes a fiduciary of the creditors, with "an obligation to refrain from acting in a manner that could damage the estate." *Id.*

The strong presumption against appointment of a Chapter 11 trustee stems, in part, from the recognition that creditors and the estate benefit from the continuation of the debtor-in-possession, whose familiarity with the business enables it to best operate and maximize the value of the assets during reorganization. Further, the continuation of a debtor-in-possession avoids the additional expense and cost of appointing a Chapter 11 trustee. As the Third Circuit has observed, the appointment of a Chapter 11 trustee "creates immense cost[]" due to the statutory

---

[6] In fact, the U.S. Trustee's attempted naked reliance on the company's need to restate the financial statements of three prior quarters would not even meet the lower preponderance standard that the U.S. Trustee hopes to have this Court apply in disregard of controlling precedent.

[7] In arguing for a preponderance of the evidence standard, the U.S. Trustee relies on an out-of-circuit case that expressly rejected Third Circuit precedent. *See Tradex Corp. v. Morse*, 339 B.R. 823 (D. Mass 2006). Of course, this Court does not have the discretion to cavalierly disregard decisions of the Third Circuit Court of Appeals.

fees to which trustees are entitled, and the "cost implicit in replacing current management with a team that is less familiar with the debtor specifically and the market generally." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003).

The strong presumption against the appointment of a Chapter 11 trustee is central to the structure of Chapter 11 proceedings. Whether management should generally be left in place absent a strong showing of actual fraud or ***gross*** mismanagement was one of the central debates that framed the passage of the Bankruptcy Code in 1978. And some foreign insolvency systems, and the prevailing practice in the United States for public companies prior to 1978, was to displace management of failed companies with a trustee by default. But in Congress's view that system was inefficient and largely penalized creditors. The system of a debtor-in-possession was viewed as radical in 1978, but it was the clear choice of Congress. Over the years this system has attracted increasing international accord as a better way to maximize value for creditors. In short, Congress made a very conscious decision to leave the management of a debtor in place. *See* 7-1104 *Collier on Bankruptcy* (15th Ed. Rev.) ¶ 1104.LH[1][e] (describing House Report addressing initial House version of § 1104(a)). In doing so, Congress made a radical break from the pre-1978 practice in which trustees were mandatory for large public companies seeking bankruptcy protection. *See id.* ¶ 1104.LH (discussing pre-1978 bankruptcy law). As noted in the House report, and echoed in the case law, "very often the creditors will be benefited by continuation of the debtor in possession, both because the expense of a trustee will not be required, and the debtor, who is familiar with his business, will be better able to operate it during the reorganization case." *Id.* ¶ 1104.LH[1][e] (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 232-33 (1977)).[8]

---

[8] Congress has also had ample opportunity, even as recently as 2005, to reconsider the strong presumption against the appointment of a trustee and has not done so. In fact, although Congress passed § 1104(e) requiring the U.S Trustee to move for the appointment of a trustee where there is reasonable suspicion of actual fraud, dishonesty, or criminal conduct, that "provision changes neither the United States trustee's ability to seek an order for the appointment of a trustee *nor the standards for granting such an order*." *See* 7-1104 *Collier on Bankruptcy* ¶ 1104 02[4][a] (emphasis added).

Given this strong presumption against appointing a Chapter 11 trustee, courts have

routinely rejected the notion that conduct that could be characterized as mismanagement is

sufficient to warrant the appointment of a Chapter 11 trustee for cause. "Since one would expect

to find some degree of incompetence or mismanagement in most businesses which have been

forced to seek the protection of chapter 11, the court must find something more aggravated than

simple mismanagement in order to appoint a trustee." *In re Clinton Centrifuge, Inc.*, 85 B.R. 980,

984 (Bankr. E.D. Pa. 1988) (citation and quotation marks omitted); *see also In re James Philip*

*Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (mere mismanagement does not constitute

cause) (citation and quotation marks omitted); *In re Gen. Oil Distrib., Inc.*, 42 B.R. 402, 409

(Bankr. E.D.N.Y. 1984) ("The language of subsection (a)(1) represents tacit recognition that

some degree of mismanagement exists in virtually every insolvency case.") (quoting 5 *Collier on*

*Bankruptcy* ¶ 1104.01[c] at 1104-21 (15th ed. 1983)). To hold otherwise would require courts to

appoint a trustee in almost all Chapter 11 cases, *Gen. Oil*, 42 B.R. at 409, which would run

counter to the well-established rule that the appointment of Chapter 11 trustees is the exception,

rather than the rule, *Sharon Steel*, 871 F.2d at 1225.

### B.    The United States Trustee Has Failed to Show That Cause Exists To Appoint A Chapter 11 Trustee

In determining whether cause exists to appoint a Chapter 11 trustee, this Court should be

guided by the "policy of flexibility [that] pervades the bankruptcy code with the ultimate aim of

protecting creditors . . . ." *Comm. of Dalkon Shield Claimants v. A. H. Robins, Co.*, 828 F.2d 239,

242 (4th Cir. 1987). Given the reasons for the presumption against the appointment of a trustee,

in exercising its discretion, the Court should require "aggravated" conduct before appointing a

Chapter 11 trustee. *See Clinton Centrifuge*, 85 B.R. at 984. As the *Dalkon Shield* court stated:

> The concepts of incompetence, dishonesty, gross mismanagement
> and even fraud all cover a wide range of conduct. . . . Implicit in a
> finding of incompetence, dishonesty, etc., for purposes of section
> 1104(a)(1), is whether the conduct shown rises to a level sufficient
> to warrant the appointment of a trustee. Obviously, to require the
> appointment of a trustee, regardless of the consequences, in the

event of an act of dishonesty by the debtor, however slight or
immaterial, could frustrate the purpose of the Bankruptcy Act.
Section 1104(a)(1), therefore must be construed, if possible, to
make it harmonious with the Act in its entirety. Such a
construction requires that the courts be given discretionary
authority to determine whether conduct rises to the level of
"cause."

*Dalkon Shield*, 828 F.2d at 242 (citation and internal quotations marks omitted); *cited with*

*approval in Marvel*, 140 F.3d at 472; *Sharon Steel*, 871 F.2d at 1226. Because the U.S. Trustee

points to no aggravated misconduct, the Court should reject the U.S. Trustee's efforts for the

appointment of a trustee.

    The U.S. Trustee contends that New Century's disclosure of accounting errors constitutes

cause warranting appointment of a Chapter 11 trustee, arguing that "[c]ourts have found cause . . .

where the current management is responsible for a failure to 'institute formal internal accounting

controls and effective, responsible management practices.' " (Mtn. at 9, quoting *In re State*

*Capital Corp.*, 51 B.R. 400, 403 (Bankr. M.D. Fla. 1985).) However, the cases upon which the

U.S. Trustee relies in support of this proposition, and in the motion generally, do not support the

extraordinary relief that the U.S. Trustee seeks. Instead, these cases -- *State Capital*, *In re New*

*Orleans Paddlewheels, Inc.*, 350 B.R. 667 (Bankr. E.D. La. 2006), and *In re McCorhill Publ'g,*

*Inc.*, 73 B.R. 1013 (Bankr. S.D.N.Y. 1987) -- reveal that "something more appear[ed] to be

afoot" in those cases that compelled the courts to appoint a Chapter 11 trustee. *See New Orleans*

*Paddlewheels*, 350 B.R. at 679. These cases show that accounting errors, without more, do not

rise to the level of aggravated conduct that warrants appointment of a Chapter 11 trustee.

    In *State Capital* there were "serious questions of possible wrongdoings" and "dishonest

conduct." 51 B.R. at 403. The debtors' suspect conduct included several unexplained

transactions between the debtor entities and non-debtor entities owned or controlled by "Mr.

Bergleson" (who also directly or indirectly owned the debtor entities), the existence of a general

ledger entry for $2 million "entitled 'Due to Bergleson,'" and payment of amounts to one of the

debtor entities inappropriately made payable to Bergleson. *Id.* The debtors failed to file federal

income tax returns and shifted funds off the books to various non-corporate entities. In addition, the debtors made erroneous filings with the Bankruptcy Court, leading the court to question the honesty of the debtor. *Id.* at 404. Given the highly suspicious transactions and the debtors' questionable veracity, the court explained that it would be naïve to think that the debtors would investigate such transactions and attempt to recover potentially voidable transfers. A Chapter 11 trustee was therefore necessary. *Id.*

No such misconduct is alleged or evidenced here. The U.S. Trustee does not allege or present any evidence that New Century's current management engaged in questionable financial transactions involving the company's assets or misappropriated those assets. And, in contrast to the view in *State Capital* that the debtor there was unlikely to investigate the transactions that the court found to be questionable, New Century identified the accounting issues, publicly disclosed them, and New Century's Board on its own initiative swiftly retained experienced counsel and forensic accountants and commenced an independent investigation of the accounting errors. Moreover, at the direction of the Board, New Century continues to cooperate with the SEC and the United States Attorney's Office in those agencies' respective investigations.

Serious doubts regarding "the veracity of management" and illicit conduct led the court to appoint a Chapter 11 trustee in *New Orleans Paddlewheels*. 350 B.R. at 692. The debtors' conduct in that case involved "diverted income," "'off the books' income," significant undisclosed intercompany obligations, and the submission of false schedules to the court. *Id.* With respect to the debtors' honesty, the court explained:

> On more than one occasion debtor's management has represented to the Court that intercompany obligations were not due to the debtor and that a full accounting was underway. At the trial on the merits of these motions, the Court discovered otherwise. [¶] Debtor's management has a history of promoting half truths. . .

*Id.* at 692. The court also found that after six years of litigation, management's relationship with the opposing equity interests was so acrimonious that it was highly unlikely that management could work with those interests to gain consent for its plan. *Id.* In short, the *New Orleans*

*Paddlewheels* court concluded that the debtors' president was "dragging out the day of reckoning" by his conduct, had "fail[ed] to disclose even [the] existence" of certain assets, and as such, had "significant[ly] breach[ed] his duties to the Court and creditors." *Id* at 680. Here, in contrast, the U.S. Trustee does not argue or provide any evidence that New Century engaged in such wrongful conduct or that any member of management has breached his or her duty to the creditors or to this Court. In fact, in satisfying their fiduciary duty to the creditors, New Century's management has worked in close cooperation with the Creditors' Committee.

Nor do the facts of *McCorhill Publishing* support the U.S. Trustee's motion. In that case, the court was compelled to appoint a trustee due to the "siphon[ing] off" of the debtors' funds to pay the expenses of affiliated entities in which debtors' principals had a financial interest, the "undocumented transactions" leading to "confusion in the debtor's accounting system," the "questionable inter-company financial transfers," the "undocumented loans" to debtor's principals, the lack of financial records and information, the "closely intertwined" affairs of debtor and affiliated entities, and the principals' conflicting interests in affiliated entities. *McCorhill Publ'g.*, 73 B.R. at 1017. There are no allegations, much less evidence, of such conduct in this case.

Other cases cited by the U.S. Trustee are similarly inapposite because they involve findings of cause based on the same egregious conduct described above. In *Sharon Steel*, the court described the "systemic siphoning of . . . assets to other companies under common control" on the "eve of bankruptcy," a failure to file post-petition profit and loss statement, and the failure to pursue rights against voidable transfers. 871 F.2d at 1228. In *Marvel Entertainment*, the court described "extreme acrimony" between the debtor-in-possession and creditors. 140 F.3d at 472-73. A Chapter 11 trustee was appointed in *In re Rivermeadows Associates, LTD.*, 185 B.R. 615 (Bankr. D. Wyo. 1995), due to undocumented transfers of debtor's assets and a debtor who could not even attend the hearing on the motion to appoint a Chapter 11 trustee "for fear he [would] be arrested."

As is patently clear, the egregious conduct of the debtors-in-possession found to warrant

the appointment of a Chapter 11 trustee in the above cases is simply missing with respect to New Century management and its Board. *Cf. In re Matter of Intercat, Inc.*, 247 B.R. 911 (Bankr. S.D. Ga. 2000) (providing the following six factors courts have considered in determining existence of cause: materiality of misconduct, evenhandedness in dealing with creditors and insiders, existence of prepetition voidable preferences or fraudulent transfers, unwillingness to pursue estate causes of action, conflicts of interest, and self-dealing). The only evidence upon which the U.S. Trustee relies -- New Century's accounting errors -- is not the type of clear and convincing evidence the courts above found to require the appointment of a Chapter 11 trustee for cause.

Indeed, if one were to accept the U.S. Trustee's premise, a Chapter 11 trustee would be mandatory in every case in which the debtor restated a financial statement. That result is not stated in the Bankruptcy Code nor countenanced by applicable law, and it would have a potentially devastating impact on creditors in cases such as this.

C.     **Appointing a Chapter 11 Trustee Would Be Contrary to the Best Interests of the Creditors and the Estate**

The Creditors' Committee's decision to oppose the U.S. Trustee's motion is telling. The appointment of a Chapter 11 trustee would greatly harm the creditors' interests without providing them a benefit. *See Dalkon Shield*, 828 F.2d at 242 (noting court's discretion to determine existence of cause); *Gen. Oil*, 42 B.R. at 409-10 (explaining court is not prohibited from considering harm and other factors in deciding whether cause exists).

It is essential that the Debtors be afforded a chance to dispose of their businesses quickly and, to the extent possible, as going concerns. That premise has been the foundation of the most significant motions the Debtors have filed to date, of the rulings of this Court, and of the positions that the Creditors' Committee has taken. To interject the complications inherent in displacing the Debtors at this critical juncture would likely destroy substantial value. The supposed benefit -- yet another party to investigate the financial restatement -- is suspect at best and pales in comparison to the harm that would be inflicted on creditors.

Even accepting, *arguendo*, the U.S Trustee's unfounded characterization that senior

executives who had no accounting function and Board members who were not responsible for the everyday operation of New Century mismanaged the company because accounting personnel made certain errors, the senior executives and Board members have taken numerous steps to address the situation. Several examples are illustrative:

- The Special Investigation Subcommittee of the Audit Committee retained experienced counsel and forensic accountants and conducted an independent investigation of the accounting errors.

- The Board and management removed supervisors who potentially could be tainted by the accounting errors from their supervisory roles over the accounting and finance function of the company and are seeking this Court's approval to place independent, expert personnel in charge of that function.

- New Century is cooperating with the investigations conducted by the United States Attorney's Office and the SEC. And,

- New Century is working cooperatively with the Creditors' Committee.

It is difficult to discern what benefit could be derived by the creditors or the estates from the appointment of a Chapter 11 trustee at this critical time. The U.S. Trustee has failed to meet her heavy burden of proving that there is cause for the appointment of a Chapter 11 trustee and, considering the harm that such an appointment would inflict on the creditors and the estates, this Court should decline to appoint a Chapter 11 trustee.

## II.    THE UNITED STATES TRUSTEE FAILS TO MEET HER BURDEN FOR THE APPOINTMENT OF AN EXAMINER

### A.    The Debtors Do Not Owe More Than $5 Million of Fixed, Liquidated, Unsecured Debts to Outsiders

Bankruptcy Code § 1104(c) provides that if the court does not appoint a Chapter 11 trustee then it

> shall order the appointment of an examiner to conduct such an
> investigation of the debtor as is appropriate, including an
> investigation of any allegations of fraud, dishonesty, incompetence,

misconduct, mismanagement, or irregularity in the management of
the affairs of the debtor of or by current or former management if --

> (1) such appointment is in the interests of the creditors, any
> equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts other
> than debts for goods, services, or taxes, or owing to an
> insider exceed $5,000,000.

The U.S. Trustee argues that this Court is required to appoint an examiner simply because of
"two unsecured junior subordinated notes . . . one for $51,545,000 to New Century Capital Trust
I and another for $36,100,000 to New Century Capital Trust II." (Mtn. at 10). As the names of
these trusts suggest, both are "insiders" within the meaning of § 1104(c)(2). *Cf.* 11 U.S.C. §
101(31) (providing non-exclusive list of type of insiders under the Bankruptcy Code). New
Century owns all the common securities issued by the New Century Trusts and, further, is
defined as the beneficial owner of the New Century Trusts. The U.S. Trustee does not present
any other evidence of any outstanding non-trade debts to outsiders greater than $5 million. As
such, § 1104(c)(2) is inapplicable.

### B.    The Appointment of an Examiner Is Not Appropriate or in the Best Interest of Creditors or the Estates

Independent of the fact that the New Century Trusts are "insiders" within the meaning of
§ 1104(c)(2), the appointment of an examiner is not appropriate or in the best interest of the
estates' stakeholders. Section 1104(c) prescribes that the Court only may appoint "an examiner
to conduct such an investigation of the debtor *as is appropriate* [emphasis added]." The U.S.
Trustee disregards the appropriateness standard clearly articulated in the statute. That standard is
not met here.

In her motion, the U.S. Trustee identifies only one area of proposed inquiry for an
examiner -- the accounting and financial statement errors that the company announced on
February 7, 2007. (Mtn. at 11.) Long before the U.S. Trustee filed her motion, New Century's
Special Investigation Subcommittee, which contains only outside directors, began an

independent investigation of the accounting and financial statement issues. The Creditors'
Committee, which is in the best position to evaluate the creditors' interests, has requested
authority to conduct an examination of various areas, including the accounting and financial
statement errors at issue. Lastly, the United States Attorney's Office for the Central District of
California and the SEC each has commenced its own investigation of the accounting and
financial statement issues. New Century is cooperating with these government agencies.

The U.S. Trustee fails to identify how a fifth examiner would bring value rather inflict
harm. Adding yet another investigation is not only unnecessary but wasteful, needlessly adding
costs, diverting the attention of New Century's remaining employees, and defeating the efficient
maximization of the estates' assets. *See In re Gilatech, Inc.*, 305 B.R. 832, 836 (Bankr. N.D.
Ohio 2004) (holding the appointment of an examiner must be in the interests of all creditors and
equity holders); *In re Gilman Servs.*, 46 B.R. 322, 327-28 (Bankr. D. Mass. 1985) (holding the
benefit of appointing an examiner must outweigh the cost to the estate, consistent with
congressional intent).

Courts have held that the "appropriate" requirement in § 1104(c) changes the mandatory
nature of § 1104(c)(2) when the appointment of an examiner would interfere with the case or the
plan. *E.g.*, *In re Rutenberg*, 158 B.R. 230, 233 (Bankr. M.D. Fla. 1993) (denying a motion for an
examiner designed to delay the case as inappropriate); *In re Shelter Res. Corp.*, 35 B.R. 304, 305
(Bankr. N.D. Ohio 1983) ("[T]o slavishly and blindly follow the so-called mandatory dictates of
Section 1104[c](2) is needless, costly and non-productive and would impose a grave injustice on
all parties herein."); *but see In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990) (finding the
requirement of an examiner mandatory where the statutory minimum of outside debt is present).

Under the current circumstances, examinations are already being conducted by the U.S.
Attorney's Office, the SEC, the Creditors' Committee, and New Century's Special Investigation
Subcommittee. No further examination is required and it would instead prove unjustifiably
costly and otherwise harmful. The U.S. Trustee's request for the appointment of an examiner

should be denied.[9]

## CONCLUSION

For the foregoing reasons, Debtors respectfully submit that neither a Chapter 11 trustee nor an examiner would be in the best interest of the creditors, debtors, or the estate and, accordingly, the U.S. Trustee's motion should be denied in its entirety.

Dated: May 8, 2007
      Wilmington, Delaware

Respectfully submitted,


*Christopher M. Samis*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Alejandro N. Mayorkas
Suzzanne S. Uhland
Victoria A. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

---

[9] Under § 1104(c)(1), an examiner can be appointed if it would be in the best interests of the creditors, equity holders, and estate. The U.S. Trustee does not even argue that the appointment of an examiner would be in the best interest of any of these stakeholders. And, for the reasons described herein, it is clear that such an appointment is not in anyone's best interest.