UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>New Century TRS Holdings, Inc., et al.<br><br>                          Debtors. | Chapter 11<br>Case No. 07-10416 (KJC)<br>(Jointly Administered)<br><br>Hearing Date: May 15, 2007 at 1:30 p.m.<br>Objection Deadline: May 8, 2007 |

### DB STRUCTURED PRODUCTS, INC.'S MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE AND JOINDER TO MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE AN EXAMINER [DOCKET NO. 278]

DB Structured Products, Inc. ("DBSP"), a creditor and party in interest, files this Motion for appointment of a Chapter 11 Trustee and joinder to the Motion of the United States Trustee for an Order Directing the Appointment of a Chapter 11 Trustee or, in the Alternative, an Examiner [Docket No. 278] (the "Trustee Motion"). In support, DBSP states as follows:

#### I.    PERTINENT BACKGROUND

1. DBSP is a party to two Master Repurchase Agreements respectively dated September 2, 2005 and April 17, 2006, and related agreements (as amended the "Repurchase Agreements"), with certain of the Debtors.[1] Pursuant to a Guarantee Agreement (the "Guarantee"), Debtor New Century Financial Corporation (together with the Debtor parties to the Repurchase Agreements the "Repo Debtors") has guaranteed the obligations of the Debtor parties to the Repurchase Agreements.

2. Pursuant to the Repurchase Agreements, a Repo Debtor would sell to DBSP certain mortgage loans at a price set by the Repurchase Agreements, and on a specific date,

---

[1] The Debtor parties to the September 2, 2005 Master Repurchase Agreement are New Century Mortgage Corporation, New Century Credit Corporation, Home123 Corporation, and NC Capital Corporation. Those same Debtors, other than New Century Credit Corporation, are parties to the April 17, 2006 Master Repurchase Agreement.

DBSP agreed to resell, and the Repo Debtors agreed to repurchase, the mortgage loans at a price in excess of what DBSP paid for the loans.

3. On or about February 7, 2007, the Debtors' current management announced that it would be required to restate reported financial results for the first three quarters of 2006 as a result of violations of GAAP.

4. Following such announcement, on or about March 14 and 15, 2007, DBSP exercised its rights to terminate the Repurchase Agreements and to accelerate the repurchase obligations of the Debtors thereunder.

5. The Debtors' have failed to honor their contractual repurchase obligations, and as a result, DBSP currently owns and holds title to hundreds of millions of dollars worth of mortgage loans that it purchased from the Repo Debtors pursuant to the Repurchase Agreements (the "Purchased Loans").

6. On April 2, 2007, New Century Financial Corporation and a group of affiliated entities filed the petitions which initiated the above-captioned cases. By order dated April 3, 2007, this Court directed that the cases be jointly administered under Case No. 07-10416.

7. On April 17, 2007, the Office of the United States Trustee filed the Trustee Motion.

## II. ARGUMENT

8. DBSP hereby moves for the appointment of a Chapter 11 Trustee and joins in the Trustee Motion. The appointment of a Chapter 11 Trustee in these cases pursuant to 11 U.S.C. § 1104(a)(1) is warranted for the reasons set forth by the United States Trustee in the Trustee Motion, and DBSP incorporates the arguments in the Trustee Motion by reference as if fully set forth herein.[2]

---

[2] By adopting the argument of the United States Trustee, DBSP is not accepting the United States Trustee's language that loans transferred pursuant to the terms of repurchase agreements with DBSP were "pledged". The Repurchase Agreements are "repurchase agreements" and "securities contracts" as defined in Bankruptcy Code §§ 101(47) and 741(7) and are entitled to all of the rights and protections afforded to such agreements by the Bankruptcy Code.

9.  In further support, DBSP alleges as follows:

a.  The prepetition accounting misstatements by Debtors' current management were the precipitating cause of the termination of the Repurchase Agreements, and upon information and belief, this is true with respect to numerous other similarly situated financial counter-parties to the Debtors;

b.  Since the bankruptcy filing, DBSP has identified at least seven Purchased Loans with an aggregate outstanding principal value of $1.13 million for which the Repo Debtors have informed DBSP that they have no servicing records. The absence of records for these loans suggests that the they never existed in the first place (in fact, the Debtors have confirmed that one of the loans never closed) and, therefore, that the Repo Debtors, either knowingly or recklessly, accepted funds from DBSP for sales of fictitious loans;

c.  Despite repeated requests, the Repo Debtors are either unwilling or unable to provide DBSP with a complete accounting of payments they have collected on the Purchased Loans. Based upon the incomplete information provided by the Debtors and its own investigation of the records to which it does have access, DBSP currently estimates that the Repo Debtors have failed to turn over to DBSP in excess of $1.3 million of principal, interest and principal curtailments paid on the Purchased Loans through April. These are funds that belong to DBSP and were collected in trust by the Debtors;

d.  Current management's inability to turn over records and account for funds belonging to third parties, and the possibility that significant amounts that the Debtors held in trust for DBSP and other parties similarly situated are still not accounted for by the Debtors, further support the need for the appointment of a Chapter 11 Trustee in these cases;

e.  Other than efforts to liquidate assets, Debtors' ongoing business operations have all but ceased. Accordingly, the need for current management to remain in control of the Debtors' business operations is minimal. A Chapter 11 Trustee can oversee the liquidation of the Debtors' assets at least as well as, if not better, than current management.

Moreover, a Trustee is certainly better positioned than current management to examine all potential claims, including possible claims against current management.

WHEREFORE, for the reasons set forth above, and in the Trustee Motion, DBSP respectfully requests that the Court enter an Order appointing a Chapter 11 Trustee in these cases pursuant to 11 U.S.C. § 1104(a)(1).

Dated: Wilmington, Delaware
       May 8, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6660
Facsimile: (302) 571-1253

-and-

BINGHAM McCUTCHEN LLP
Robert M. Dombroff, Esq.
399 Park Avenue
New York, New York 10022-4689
Telephone: (212) 705-7000
Facsimile: (212) 752-5378

-and-

BINGHAM McCUTCHEN LLP
Andrew J. Gallo, Esq.
150 Federal Street
Boston, Massachusetts 02110
Telephone: (617) 951-8000
Facsimile: (617) 951-8736

*Attorneys for DB Structured Products, Inc.*
