IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, *et al.*,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Re: Docket No. 329 |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE APPLICATION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF COMPENSATION DESIGN GROUP, INC. AS COMPENSATION SPECIALIST TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTIONS 327(e) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014, 2016 AND 5002

The Official Committee of Unsecured Creditors of New Century TRS Holdings, Inc., *et al*. (the "Debtors"), by its proposed co-counsel, Blank Rome LLP and Hahn & Hessen LLP, hereby objects (the "Objection") to the *Application of the Debtors and Debtors-In-Possession for an Order Authorizing the Retention and Employment of Compensation Design Group, Inc. as Compensation Specialist to the Debtors Nunc Pro Tunc to the Petition Date Pursuant to Sections 327(e) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 5002* (the "Application"), and respectfully states as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation; New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

**SUMMARY**

1. By their Application, the Debtors seek authorization to retain Compensation Design Group, Inc. ("CDG") as their compensation specialist effective *nunc pro tunc* to the Petition Date[2] to consult with and advise the Debtors and the Debtors' Board of the Directors with respect to compensation arrangements for the Debtors' employees, management, board of directors and executives. The Debtors, who are in the process of selling substantially all of their assets, have failed to demonstrate any need for a compensation specialist in these Cases and should not be authorized to retain yet another professional and burden the estates with an additional layer of unnecessary professional fees. Although the Debtors have neglected to identify any specific tasks proposed to be performed by CDG, the Committee sees no reason why one or more of the Debtors' thirteen other sets of professionals cannot, along with the Committee's professionals, handle any employee compensation issues that typically arise in a chapter 11 case. This question is particularly glaring in light of the fact that the Committee has been having ongoing discussions with the Debtors' crisis managers with respect to compensation issues and have not, to date, had any such discussions with the CDG professionals.

2. If, however, this Court is inclined to find that the retention of a compensation specialist is warranted, the Committee submits that CDG's fee and reimbursement structure, which currently seeks a minimum fee of $420,000, reimbursement for out-of-pocket expenses, and an overhead expense fee equal to 14% of CDG's professional fees, is excessive and unjustifiable and must be modified in order to meet the reasonableness standards under section 328 of the Bankruptcy Code.

---

[2] Unless otherwise defined herein, capitalized terms used in this Objection have the meanings ascribed to them in the Application and Exhibits thereto. As to any conflict with respect to terms used in this Objection and the Application, the meanings contained in this Objection will govern.

3. Lastly, there are a number of ambiguities and/or issues imbedded in the Application and the Engagement Letters that need to be clarified and/or modified as described below. The proposed order should, at the very least be modified to reflect such clarifications and/or modifications.

**BACKGROUND**

4. On April 2, 2007 (the "Petition Date"), the Debtors commenced with this Court voluntary cases (the "Cases") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), which Cases are being jointly administered pursuant to an order of this Court. The Debtors are continuing their business and managing their affairs as debtors and debtors in possession.

5. On April 9, 2007, the Office of the United States Trustee for the District of Delaware appointed the following seven (7) of the Debtors' largest unsecured creditors to the Official Committee of Unsecured Creditors (the "Committee"): Credit Suisse First Boston Mortgage Capital LLC, Credit-Based Asset Servicing and Securitization LLC, Residential Funding Company, LLC, Deutsche Bank National Trust Co., Wells Fargo Bank, N.A. as Indenture Trustee, Fidelity National Information Services, Inc., and Maguire Properties – Park Place, LLC. Since its formation, the Committee has appointed Kodiak Funding LP as an ex officio member of the Committee.

6. Hahn & Hessen LLP and Blank Rome LLP were selected by the Committee to serve as co-counsel to the Committee, and FTI Consulting, Inc. was selected by the Committee to serve as financial advisor to the Committee.

7. Since the Petition Date, the Debtors have sought to retain numerous professionals to assist and advise the Debtors on various matters throughout the course of these Cases. More

specifically, the Debtors have retained (i) Richards, Layton & Finger, P.A. as bankruptcy co-counsel, (ii) O'Melveny & Meyers LLP as bankruptcy co-counsel, (iii) Lazard Freres & Co. as financial advisor, (iv) Hennigan, Bennett & Dormann LLP as special litigation counsel, and (v) XRoads Case Management Services, LLC as claims and noticing agent, which retentions have been approved by this Court. Additionally, the Debtors currently have motions pending before this Court to retain (i) Sheppard, Mullin Richter & Hampton LLP as special corporate and litigation counsel, (ii) Heller Ehrman LLP as special counsel to the audit subcommittee, (iii) Manatt, Phelps & Phillips, LLP as special securitization counsel, (iv) AP Services, LLC ("APS") as crisis managers, (v) PricewaterhouseCoopers, LLP as accountants, (vi) Allen Matkins Leck Gamble Mallory & Natsis LLP as special counsel, (vii) Grant Thoorton LLP as tax accountant, and (viii) ICP Consulting LLC, as special asset valuation and liquidation advisors.

## THE DEBTORS' APPLICATION TO RETAIN CDG

8.  The Debtors seek to retain CDG as their compensation specialist to (1) consult with and advise the Debtors in connection with employment and compensation related issues, including, but not limited to, base salary, annual incentives, long-term incentives, benefits and perquisites provided to the Debtors' management, employees, and Board of Directors (defined in the Application as the "General Compensation Services"), and (2) consult with and advise the Debtors' Board of Directors concerning executive and Board compensation arrangements (defined in the Application as the "Executive Compensation Services," and together with the General Compensation Services, the "Services"). The terms of CDG's proposed engagement are set forth in two separate engagement letters dated March 9, 2007 (the "Engagement Letters"), which are attached as exhibits to the Application.

9.      The Engagement Letters and the Application provide for the payment to CDG of a Monthly Fee of $60,000 ("Monthly Fee"), $50,000 of which is for the General Compensation Services while the remaining $10,000 is compensation for the Executive Compensation Services. The Application further provides that CDG will perform additional services, as agreed to by the parties, on an hourly basis in accordance with its customary hourly rates. The definition of additional services and the terms of compensation for such are not clearly stated in the Engagement Letters.

10.     In addition to its fees, under its proposed engagement CDG would be entitled to payment for administrative overhead at a flat rate equal to 14% of CDG's professional fees, which is intended by CDG to cover overhead expenses including, but not limited to, secretarial assistance, copying charges and mailing expenses (the "Overhead Charge"). CDG would also be entitled to reimbursement for actual out-of-pocket expenses.

11.     Finally, the Engagement Letters provide that the engagement of CDG shall continue until December 31, 2007, unless previously terminated by either party by giving 180 days written notice to the other party. Therefore, pursuant to the terms of the Engagement Letters, even if the Debtors were to immediately give written notice of termination to CDG, CDG would be entitled to continue collecting its Monthly Fee and Overhead Charge for at least an additional 180 days, regardless of whether CDG performs any services to the Debtors during that time.

**OBJECTION**

12. "[I]t is clear that the Court is guided by a standard of reasonableness when analyzing the terms and conditions of engagement of professionals." <u>In re Insilco Techs., Inc.</u>, 291 B.R. 628, 633 (Bankr. D. Del. 2003). Factors considered by the courts in determining reasonableness include (1) whether the terms reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention provisions; and (5) whether, given the size, circumstances and posture of the case, the retention provisions are reasonable. <u>Id</u>. "The Court must be persuaded that the terms and conditions are in the interest of the estate." <u>In re Gillett Holdings, Inc.</u>, 137 B.R. 452, 455 (Bankr.D.Colo. 1991) (<u>quoting</u> <u>In re C & P Auto Transport, Inc.</u>, 94 B.R. 682, 686 (Bankr.E.D.Cal. 1988)). The Committee submits that the proposed retention of CDG as a compensation specialist is unnecessary, wasteful, and not in the best interests of the Debtors' estates. Additionally, the Committee submits that, even if the retention of a compensation specialist could be justified in any way, the Monthly Fees are excessive and the Overhead Charge is wholly inappropriate. Therefore, at the very least, the terms of the retention would have to be modified accordingly.

**1.    Retention of a Compensation Specialist is Unnecessary and a Burden on the Estate**

13. First, the retention of a compensation specialist is not warranted in light of the posture of these Cases as well as the numerous professionals already advising the Debtors. Adding an additional layer of professional fees at this time is wasteful and presents nothing more than a burden to the Debtors' estates. As the Debtors are in the process of marketing and auctioning off substantially all of their assets, the instant Cases are being administered to

effectuate a liquidation of the Debtors' estates rather than a reorganization. Accordingly, although a company such as CDG may add value and properly serve a company attempting to develop a restructuring plan and emerge from bankruptcy, the Committee fails to see what possible value CDG's retention can add to the administration of these Cases that are on a fast track to liquidation.

14. Additionally, APS, who, as crisis managers, have significant experience in negotiating and implementing employee compensation plans in chapter 11 cases, have been working with the Debtors since prior to the Petition Date and have been actively involved in negotiating the employee incentive and retention plans, which were approved by this Court at the May 7, 2007 hearing (the "Employee Plans"). Although the engagement letter and retention application for APS do not specifically list any services to be rendered in connection with developing a compensation plan, the Committee had, in fact, been working closely with the APS professionals in discussing and negotiating the Employee Plans while, on the contrary, the Committee has had absolutely no discussions with any CDG professional regarding these issues.

15. Not only is the retention of a compensation specialist not warranted in these Cases, but it is also not justified given the amount of time and effort that was required from the Committee's professionals and the APS professionals in negotiating and restructuring such plans. More specifically, as originally proposed by the Debtors, the Employee Plans were primarily retention based plans that did not meet the requirements of the Bankruptcy Code and were not likely to add value to the Debtors' estates. However, after approximately a month of discussions and negotiations, the APS Professionals and the Committee's Professionals were able to restructure the Employee Plans, which are currently designed to incentivize the employees to maximize the value of the Debtors' estates.

16.     As the Debtors have failed to demonstrate any need or justification for a compensation specialist at this time and the Committee sees no value in retaining CDG, the Court should deny the Debtors' Application.

**2.      The Monthly Fees and Overhead Charge Are Excessive and Unjustifiable**

17.     If this Court were inclined to allow the Debtors to retain CDG as a compensation specialist, the Committee submits that the fee structure proposed in the Application and the Engagement Letters is excessive and burdensome to the Debtors' estates.  Neither the Application nor the Engagement Letters attempt to demonstrate how the Monthly Fee of $60,000 was calculated and determined to be an appropriate Monthly Fee for CDG's proposed services.  As the Monthly Fee is not tied to any clearly delineated tasks to be performed by CDG, there is no basis by which to gauge the reasonableness of a $60,000 monthly fee.

18.     Moreover, the proposed terms of the retention provide that the engagement shall terminate on December 31, 2007 unless either party terminates with 180 days prior notice.  Under these terms, if this Court were to approve the retention of CDG *nunc pro tunc* to the Petition Date as proposed, CDG would be entitled to receive no less than $420,000 in fees as the Debtors would be required to pay CDG the $60,000 Monthly Fee, regardless of whether any services are performed in a given month, for the time elapsed since the Petition Date (approximately one month) and an additional 180 days, even if notice of termination is given by the Debtors immediately after CDG's retention is approved.  There is absolutely no basis for burdening the estates with such an exorbitant fee for services that add no apparent value.

19.     In addition to its Monthly Fees, potential hourly fees, and reimbursement for out-of-pocket expenses, the terms of CDG's retention provide that CDG shall receive the Overhead Charge equal to 14% of CDG's professional fees to cover certain overhead expenses such as

secretarial assistance, telephone charges, and copying and mailing expenses.  Reimbursement for these type of overhead expenses has been denied repeatedly by courts that have considered it. See In re Fibermark, Inc., 349 B.R. 385, 400 (Bankr. D. Vt. 2006) ("A professional's overhead will be denied reimbursement categorically.  Overhead expenses are those incurred day to day by a professional's office regardless of whom it represents or what services it renders.  Overhead expenses typically include rent, insurance, taxes, utilities, secretarial and clerical pay, library, computer costs . . . office supplies, local postage and telephone charges, and local travel." ); In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) ("expenses that are part of the 'day-to-day operating costs' of the attorney's business are considered overhead and should not be paid for by the estate"); In re Beck-Rumbaugh Associates, Inc., 68 B.R. 882, 888 (Bankr. E.D. Pa. 1987) ("We also believe that costs such as postage, copying, and travel are necessary costs of doing business or overhead, which we will not compensate."); In re Thacker, 48 B.R. 161, 164 (Bankr. N.D. Ill. 1985) ("In determining whether a particular expense is chargeable to the debtor's estate, the court must distinguish between 'overhead' expenses, which are not reimbursable, and 'out-of-pocket' expenses, which are.").

20.   It is completely inappropriate for CDG to expect the Debtors' estates to pick up any portion of its overhead charges and it is particularly egregious to request such reimbursement at a rate of 14% of its professional fees.  Based solely on the $60,000 Monthly Fee, the Debtors would be required to pay CDG an additional $8,400 per month for the Overhead Charge.  This Overhead Charge would result at minimum in an additional $58,800 to be paid to CDG over the approximately 7 months that would be required under the proposed terms of CDG's retention.  Given the posture of these Cases, the Debtors' failure to demonstrate that the retention of a compensation specialist is necessary at all and the Debtors' failure to demonstrate that the terms

of the proposed retention are reasonable, the Court should deny the Application or, in the alternative, require a modification of the terms in accordance with this Objection.

3. **Certain Other Terms of the Retention are Unclear and/or Objectionable**

21. The first ambiguity relating to the proposed retention arises from the fact that the Engagement Letters were executed on March 9, 2007, but the Debtors only seek retention *nunc pro tunc* to April 2, 2007. It is unclear whether CDG began to render services to the Debtors immediately upon execution of the Engagement Letters and, if so, whether CDG was compensated for such services prepetition or continues to hold a prepetition claim against the Debtors for such services.

22. Next, the Engagement Letters and the Application fail to define with reasonable specificity the core tasks to be performed by CDG as part of its engagement. The Engagement Letters and the Application each state in general terms that CDG will provide assistance to the Debtors regarding total compensation arrangements, which shall include, base salary, annual incentives, long-term incentives and benefits. However, nowhere do the Engagement Letters or the Application specify the individual tasks to be performed by CDG in providing such assistance. These tasks should be spelled out, particularly given the multiple professionals already retained by the Debtors, many of which can also provide assistance to the Debtors regarding these compensation arrangements.

23. Another issue arising from the lack of specificity in defining CDG's role, is the issue of what falls within the scope of duties to be compensated by the $60,000 Monthly Fee as opposed to the "additional services" for which CDG will separately bill the Debtors on an hourly basis. The Engagement Letters are more convoluted than the Application on this point. Where the Application seems to draw a distinction merely between the services to be rendered in

connection with compensation issues, which will be compensated by the Monthly Fee, and "additional services" outside of that scope, which will be compensated on an hourly basis, the Engagement Letters seem to draw three such distinctions. The Engagement Letters refer to (i) the Services, which will be compensated by the Monthly fee, (ii) the additional services pertaining to transactional or Capital Markets matters, which shall be provided on an hourly fee basis, and (iii) all other additional services that do not pertain to transactional or Capital Markets matters, which shall be memorialized in writing to be effective.

24. Finally, any disputes and claims between CDG and the Debtors should be resolved by the Bankruptcy Court, and should not be subject to arbitration, as set forth in the Engagement Letters.

[Remainder of page left blank]

**WHEREFORE**, the Committee respectfully requests (i) that the Application be denied in its entirety, (ii) that, if this Court is inclined to approve the retention of CDG, the terms of such retention be modified in accordance with this Objection, and (iii) that the Court grant such other and further relief as it deems appropriate.

Dated:   May 9, 2007

            BLANK ROME LLP

            */s/  David W. Carickhoff*
            Bonnie Glantz Fatell (No. 3809)
            Regina Stango Kelbon
            David W. Carickhoff (No. 3715)
            1201 Market Street, Suite 800
            Wilmington, Delaware 19801
            Telephone:    (302) 425-6400
            Facsimile:      (302) 425-6464

            -and-

            HAHN & HESSEN LLP
            Mark S. Indelicato
            Mark T. Power
            488 Madison Avenue
            New York, New York 10022
            Telephone:    (212) 478-7200
            Facsimile:      (212) 478-7400

            *Proposed Co-Counsel to the Official*
            *Committee of Unsecured Creditors of*
            *New Century TRS Holdings, Inc., et al.*