IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NEW CENTURY TRS HOLDINGS, INC., | : Case No. 07-10416 (KJC) |
| a Delaware corporation, et al.,[1] | : |
| | : Jointly Administered |
| Debtors. | : |
| | : Hearing Date: May 15, 2007 at 1:30 p.m. |
| | : Objection Deadline: May 9, 2007 |

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN OPPOSITION TO MOTION OF UNITED STATES TRUSTEE TO APPOINT CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, AN EXAMINER**

TO THE HONORABLE KEVIN J. CAREY,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (the "Debtors"), by its undersigned proposed counsel, for its Response in Opposition to the motion (the "Motion") of the Office of the United States Trustee (the "U.S. Trustee") to appoint a Chapter 11 trustee, or, in the alternative, an

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation; New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

examiner in these cases (Docket No. 278), respectfully submits:

## PRELIMINARY STATEMENT

1. The U.S. Trustee relies on admitted prepetition accounting irregularities as the sole basis for the Court to appoint a Chapter 11 trustee. The Committee submits that this fact alone cannot satisfy the statutory requirements for appointment of a trustee. A debtor is entitled to remain in possession absent a showing of "cause" under Section 1104(a) of the Bankruptcy Code, and no court has held that "cause" can be shown simply by the movant alleging voluntary admissions of accounting errors made by a debtor in nine months of its pre-petition public SEC filings. The U.S. Trustee's fallback position, that in lieu of the appointment of a Chapter 11 trustee the Court immediately appoint an examiner, is at a minimum premature, because the U.S. Trustee has not established that such an appointment is proper, let alone appropriate under Section 1104(c)(2) of the Bankruptcy Code, and in any event because the proposed examiner's role, unlimited in scope and potential expense, is too broad. The Committee and its professionals have initiated a program to ensure increased scrutiny of the Debtors' operations and financial transactions and believes that any consideration of appointing a trustee should be deferred until such program has been fully implemented. Furthermore, the Debtors' Board has, on information and belief, charged its Audit Committee, together with independent counsel and forensic accountants, with an internal review of the restatement, and such Audit Committee is expected to issue its report soon. What remedial measures, if any, the Audit Committee intends to recommend have not yet been acted upon. Accordingly, the Committee submits that at the present time the Motion should be denied in its entirety.

127340.01600/40168811v.3

## BACKGROUND

2. On April 2, 2007 (the "Petition Date"), the Debtors sought Chapter 11 relief in this Court. Since that time, the Debtors have continued in the operation of their businesses and management of their properties as debtors in possession.

3. Thereafter, at an organizational meeting held on April 9, 2007, the U.S. Trustee formed the Committee to act as a fiduciary for the creditor body pursuant to Section 1102 of the Bankruptcy Code, selecting from approximately twenty-five candidates willing to serve in that capacity. The Committee consists of seven members: Fidelity National Information Services, Inc., Wells Fargo Bank, N.A. as Indenture Trustee, Credit-Based Asset Servicing and Securitization LLC, Residential Funding Company, LLC, Credit Suisse First Boston Mortgage Capital LLC, Deutsche Bank National Trust Co. and Maguire Properties – Park Place, LLC. The Committee thereafter selected the laws firms of Hahn and Hessen LLP and Blank Rome as its counsel and FTI Consulting, Inc. as its financial advisors. Given their short tenure, the Committee and its professionals have been active participants in these cases, particularly respecting the orderly liquidation of the Debtors' assets.

## THE U.S. TRUSTEE'S MOTION

4. The U.S. Trustee filed the Motion on April 17, 2007, just fifteen days after the Petition Date and just after she had selected the Committee. The Motion was not made on an emergency basis, and no ongoing fraud or exigent circumstances was alleged.

5. The U.S. Trustee moved pursuant to Sections 1104(a)(1) and (c)(2) of the Bankruptcy Code, which taken together leave open the possibility of the appointment of an examiner by the Court if it finds no cause has been shown to warrant the appointment of a Chapter 11 trustee. The sole basis for the Motion is that earlier this year the Debtors publicly announced that they would be restating their earnings for the first nine months of 2006, and

-3-

127340.01600/40168811v.3

thereafter the New York Stock Exchange delisted the Company's stock, the SEC and a United States Attorney announced investigations, and civil litigation was brought. The press release issued by the Debtors is the basis for the relief the U.S. Trustee seeks.

## ARGUMENT

6. By proceeding under Sections 1104(a)(1) and (c)(2), and not under Sections 1104(a)(2) and (c)(1), the U.S. Trustee is in effect seeking to exclude consideration of the interests of creditors and equity holders -- the holders of the only economic interests in the case. By arguing that, as a matter of law, the voluntary disclosure of a restatement of nine months' earnings, without more, is sufficient to show "cause" for what has historically been viewed as an extraordinary remedy, the U.S. Trustee appears to be attempting to undercut the burden of proof required for those seeking to oust management in Chapter 11 cases. Taken together, this two-pronged approach would appear to be an effort by the U.S. Trustee to re-order the priorities and structure of large, complex Chapter 11 cases in ways not contemplated by Congress or the many courts which have considered these matters.[2] The Committee believes that the U.S. Trustee's position is incorrect and inapposite to the Chapter 11 process.

### I.   THE U.S. TRUSTEE HAS FAILED TO MAKE ITS CASE FOR A TRUSTEE BASED UPON THE PRESENT RECORD BEFORE THE COURT

#### A.   Appointment of a Trustee is an Extraordinary Remedy and the Burden of Proof is Accordingly High

7. There is a "strong presumption against appointing an outside trustee." In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998). Indeed, the appointment of

---

[2] Until 1978, the appointment of trustees in large public company reorganizations was automatic. Because such trusteeships were viewed by the bankruptcy bar as wasteful and not beneficial to the reorganization process, in practice Chapter X was avoided if at all possible in favor of the more flexible Chapter XI, where debtors were allowed to remain in possession. In adopting the Bankruptcy Code in 1978, Congress rejected the Chapter X model in favor of the former Chapter XI. The U.S. Trustee's approach here is more akin to old Chapter X law than the current Bankruptcy Code.

-4-

127340.01600/40168811v.3

a Chapter 11 trustee is an "extraordinary remedy," see, e.g., Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 576 (3d Cir. 2003), one that is considered "the exception, rather than the rule." In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3d Cir. 1989); see also Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.), 285 B.R. 148, 158-160 (Bankr. D. Del. 2002) (denying motion to appoint trustee, recognizing that "appointing a trustee must be considered a last resort"); 4 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2d (2006) ("NORTON"), § 79:1, at 79-3, and cases cited.

8. A determination of "cause" lies "within the discretion of the court." In re Marvel Entertainment Group, Inc., 140 F.3d at 472; see also In re Adelphia Communications Corp., 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006) ("The decision to appoint a trustee in a chapter 11 case is a factual determination left to the discretion of the bankruptcy judge."). Such determinations are made on "a case-by-case basis." In re Sharon Steel Corp., 871 F.2d at 1226. In making this determination, a court "must find something more aggravated than simple mismanagement in order to appoint a trustee." Schuster v. Dragone (In re Dragone), 266 B.R. 268, 272 (D. Conn. 2001).

9. A party seeking the appointment of a trustee carries the burden of showing by clear and convincing evidence that the appointment of a trustee is warranted. See, e.g., In re G-I Holdings, Inc., 385 F.3d 313, 320 (3d Cir. 2004); In re W.R. Grace & Co., 285 B.R. 148, 157 (Bankr. D. Del. 2002).

10. Because the appointment of a trustee typically has a significant impact on the operation and resolution of a Chapter 11 case:

> when determining whether to appoint a Chapter 11 trustee, the court generally should defer in the first instance to the positions of

> those constituencies with an economic interest in the case (e.g., creditors, equity security holders). Where these constituencies are not adequately represented or where there is clear fraud or abuse that the private parties have failed to address, the United States Trustee should step into the void.

NORTON, supra, § 79:3, at 79-9, citing Executive Office for United States Trustee's "Policy Statement Regarding Administration of Chapter 11 cases" issued March 26, 1993. It is rare that, absent extraordinary circumstances, a trustee will be appointed just after the petition has been filed. "[C]onventional wisdom generally would hold that a motion for appointment of a trustee early in a case will rarely be successful." NORTON, supra, § 79:1.

11. When the creditors committee is actively participating in the chapter 11 process, there may in fact be little or no benefit to the appointment of a trustee. See In re Royster Co., 145 B.R. 88, 90 (Bankr. M.D. Fla. 1992) (denying appointment of trustee, where Debtors were operating under watchful eye of a "very active" creditors' committee and committee opposed appointment of trustee).

12. At present, that is the situation here, particularly respecting the on-going asset sales which have properly been the Committee's main focus at the outset of these cases. The Committee, as selected by the U.S. Trustee, is the fiduciary representative of creditor interests, and its members are knowledgeable about the subprime lending business in which the Debtors were engaged. Both law firms engaged by the Committee have familiarity with the subprime lending business (each, for example, has recently been selected to act as counsel for committees of unsecured creditors in other subprime lender Chapter 11 cases in this District) and the Committee's financial advisors have been selected by four such committees in subprime lender Chapter 11 cases during 2007 alone. All of the professionals have extensive experience in conducting investigations in the Chapter 11 context.

127340.01600/40168811v.3

13. Consistent with the express mandate embodied in Bankruptcy Code Section 1103(c)(2), the Committee is in the process of commencing a full and complete investigation into the Debtors' acts, conduct, and property, and has sought comprehensive discovery under Bankruptcy Rule 2004. The Committee and its professionals are fully competent to undertake such an investigation, just as they are fully competent to take appropriate action if warranted upon completion of the investigation. As a major first step in such process, the Committee has insisted on a number of safeguards designed to increase scrutiny of the Debtors' operations and their financial transactions. At this early stage in these cases, the parameters and details of such program are still under discussions, but the Committee anticipates that it will be in place very soon. If, during the course of the Committee's investigation it uncovers information which leads it to conclude that the appointment of a Chapter 11 trustee or examiner is in the best interests of creditors, the Committee will so move.

### B. The Debtors' Financial Restatement Standing Alone is Not Clear and Convincing Evidence of Fraud or Mismanagement

14. The U.S. Trustee alleges three apparent grounds for the relief it seeks:

    A. On February 7, 2007, the Debtors' public parent "announced that it would have to restate its reported financial results for the first three quarters of 2006 for violations of GAAP." Motion at 5.

    B. On March 13, 2007, the Debtors' public parent "announced that the NYSE had determined that its securities were 'no longer suitable for continued listing on the NYSE and will be suspended immediately. The NYSE made this decision based upon New Century's [the public parent] recent filings with the Securities and Exchange Commission (SEC) regarding the uncertainty of its current liquidity position.'" Motion at 5-6.

    C. Monika L. McCarthy, the Senior Vice President and General Counsel of New Century Mortgage Corporation, as part of her seventeen page Declaration sworn to April 2, 2007, and filed by the Debtors in support of their Chapter 11 petitions, stated that since the February 7, 2007, announcement at least nineteen class action and eight derivative lawsuits have been filed against the public parent

127340.01600/40168811v.3

and/or its officers and directors alleging violation of federal securities laws and breach of fiduciary duty and gross mismanagement, among other causes of action. In addition, Ms. McCarthy stated that the Debtors are being investigated by the SEC and the U.S. Attorney's Office in California. See Motion at 6.

15. It is the position of the U.S. Trustee that these voluntary disclosures by the Debtors, in and of themselves, are sufficient as a matter of law to justify the appointment of a Chapter 11 trustee. The Committee respectfully disagrees.

16. As noted, the three grounds alleged by the U.S. Trustee for the relief it seeks are in reality only one -- the admitted need to restate nine months of financial results. The actions taken by the NYSE, and the class and derivative litigation, are reactions to or consequences of the contemplated financial restatement, and neither can possibly constitute "cause" for the appointment of a trustee.

17. A variety of factors have been found to constitute "cause" under Section 1104. Fraud, dishonesty, incompetence, and gross mismanagement are expressly cited in the statute and are obvious examples of "cause". "Cause" has been found to exist when, for example, the debtor refused to pursue valuable claims, was unable or unwilling to proceed with a plan, or violated court orders. See generally, NORTON, supra, § 79:4, at 79-16. Here the U.S. Trustee has not alleged anything other than the Debtors' announced need to restate nine months of its financials.

18. The failure to do so condemns the Motion. "It is important for anyone seeking the appointment of a trustee to appreciate that the court views such a remedy as particularly harsh." NORTON, supra, § 79:4, at 79-16. The U.S. Trustee has failed to justify the imposition of such a "harsh" remedy.

19. The U.S. Trustee's position in essence is that an announced need for a financial restatement conclusively implies fraud or mismanagement. However, it is not unusual for a

public company to restate its financials. In the July 24, 2006, letter to Senator Paul Sarbanes which accompanied the initial version of its report on financial restatements, the United States Government Accountability Office ("GAO") stated that from January 1997 through June 2002, 845 public companies announced restatements, and the market capitalization of those companies decreased $100 billion in the days surrounding the announcements. See GAO Report, Letter to Senator Paul S. Sarbanes, at 1. On March 5, 2007, it issued an amended version of its July 2006 report to the Ranking Minority Member, Committee on Banking, Housing, and Urban Affairs, United States Senate (relevant portions of the several hundred page GAO Report are annexed hereto as Exhibit A). The GAO Report found that less than 6% of all restatements during the period in question were due to fraud. See GAO Report at 28. As the GAO noted "most restatements . . . are not symptomatic of financial reporting fraud." GAO Report at 53.

20.  The U.S. Trustee advocates that this Court find, as a matter of law, that the mere announcement of a financial restatement mandates the appointment of a trustee in a Chapter 11 case. Yet, the GAO, the non-partisan audit, evaluation and investigative arm of Congress, has concluded that financial restatements more often than not were not due to fraud or mismanagement:

> [O]f the restatements identified, cost- or expense-related issues were the primary reason for restatements during this period and most were prompted by internal parties, such as management or internal auditors.

GAO Report at 4. It follows ineluctably that the mere fact that a restatement occurred is not sufficient by itself to support the inference that fraud or mismanagement existed. Yet that is all that the U.S. Trustee has alleged.

21.  If the U.S. Trustee's position is adopted, then a trustee would have to displace management in virtually every Chapter 11 case commenced by a public company which had

127340.01600/40168811v.3

announced a need to restate earnings.[3] Such appointment would have to be made at the outset of all such cases, regardless of whether the beneficial owners of the company (creditors and shareholders) agreed, or if such relief was warranted or appropriate. The voluntary disclosures which the U.S. Trustee believes, without more, requires the appointment of a Chapter 11 trustee are not unusual in large Chapter 11 cases. Chapter 11 debtors often are forced to restate financial statements, they invariably run out of money and are delisted, and their officers and directors are often the subject of shareholder derivative suits. In the post-Enron world, it is all but given that there will be investigations by the SEC and even the local attorney general.

22. On the present record the U.S. Trustee has failed to carry her heavy burden of proof.

C. **The Authorities Upon Which The U.S. Trustee Relies Are Not on Point**

23. The U.S. Trustee cites to In re Rivermeadows Associates, Ltd., 185 B.R. 615 (Bankr. D. Wy. 1995) for the proposition that prepetition conduct alone is sufficient to warrant appointment of a trustee. The facts of Rivermeadows Associates render it easily distinguishable. There the debtor engaged in questionable prepetition transfers of $15 million in assets (without any paper trail) and had shown a pattern of disregard for judicial authority which resulted in two arrest warrants being issued against him. Absenting himself from the jurisdiction of the court, he could not be present to manage the affairs of the debtor for fear of arrest. As the court noted, the

> bankruptcy estate is jeopardized by haphazard records and Mr. Albrecht's disregard for the separate legal entities involved with the debtor. His pattern of intermingling funds and of expedient transfers, and the absence of proper record keeping, all support the conclusion that there is a lack of sound business management. Such conduct is adverse to the chapter 11 process and is a detriment to the ongoing business of this chapter 11 case.

---

[3] Appendix V to the GAO Report lists over 300 public companies making financial statement announcements from the period October 1, 2005 through June 30, 2006 alone. (See, Exhibit B)

Id. at 619.

24. The other authority relied upon by the U.S. Trustee similarly is of no application. In In re State Capital Corp., 51 B.R. 400 (Bankr. M.D. Fla. 1985), the court found that the appointment of a trustee was warranted where management engaged in multiple unexplained transactions, totaling over $7 million, that raised serious questions of wrongdoing and that management would not undertake to pursue these matters against themselves or attempt to recover the transfers.

25. In In re New Orleans Paddlewheels, Inc., 350 B.R. 667 (Bankr. E.D. La. 2006), the appointment of a trustee was based on management's duplicitous and self-serving actions where it failed to disclose the existence of significant intercompany obligations and other assets, was unlikely to pursue claims against its sister companies for some $1.6 million in improperly diverted funds, and created a relationship with opposing equity interests that was so acrimonious as to make it impossible for them to work with the very people who must consent to approve a plan of reorganization. A trustee was needed to break a deadlock of the board of directors and allow for the completion of the case.

26. In In re McCorhill Publishing, Inc., 73 B.R. 1013 (Bankr. S.D.N.Y. 1987), the court found that appointment of a trustee was warranted where the debtor engaged in questionable intercompany financial transfers (without any records or financial information with respect thereto) to entities with whom management occupied conflicting positions as well as unauthorized postpetition transfers of estate assets on prepetition obligations.

27. The authorities cited by the U.S. Trustee can hardly be considered analogous to the Debtors' cases, as each of those cited involves questionable transfers and an inability of the debtor in possession to pursue and recover such transfers. The U.S. Trustee's assertion that the "admissions" of the Debtors that they have to restate certain financial statements and that such

-11-

restatements, "conclusively establish that current management of New Century had failed to fulfill its duties, sufficient to establish cause," Motion at 10, is simply not supported by the authorities upon which the U.S. Trustee relies.

28. Moreover, the Debtors have made no attempt to conceal the issues regarding their accounting procedures or their decision to make financial restatements, but instead, affirmatively disclosed them to their shareholders and the public. (Compare to Savino, supra, noting, among other things, that "[s]ignificantly, the existence of the [shell entity where the asset was concealed] and its arrangement with the debtor was not made known to the Court until many months after commencement of the Chapter 11 case, and then not by the Debtor – but as a result of papers filed by the Creditors' Committee.").

29. Finally, the Committee is concerned that appointment of a trustee at this critical and early stage of the cases may cause disruption to the ongoing orderly liquidation of assets as the asset sales process is moving forward swiftly and the sales of the major assets are expected to be completed by mid-June. In addition, the Committee is itself in the process of commencing an investigation of the Debtors' affairs and implementing a program to scrutinize the Debtors' operations and financial transactions, and accordingly, the Committee believes that the U.S. Trustee's Motion should be denied.

II. **THE U.S. TRUSTEE HAS FAILED TO PROVE THAT AN EXAMINER SHOULD BE APPOINTED PURSUANT TO SECTION 1104(c)(2)**

30. In moving for an examiner under Section 1104(c)(2), the U.S. Trustee is seeking an examiner because the Debtors' "fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. § 1104(c)(2). The U.S. Trustee has elected not to seek an examiner on the grounds that such an appointment would be in the best interest of creditors, equity security holders, or other interest in the estates. See 11

U.S.C. § 1104(c)(1). Given the narrow legal basis under which the Motion has made, if the amount of the Debtors' applicable debts do not exceed $5 million an examiner cannot be appointed.[4]

31.  The U.S. Trustee alleges that the statutory minimum is easily met because New Century Financial Corporate ("New Century") is liable on two notes (the "Notes") aggregating $86.8 million. According to the Debtors, (i) the owner and holder of the Notes are Delaware statutory trusts (the "Trusts"); (ii) New Century is the sole owner of the common interests of the Trusts; and (iii) the Trusts sold preferred interests in the Trusts to third parties, and the proceeds of such sales were used to purchase the Notes, which were issued by New Century. The Debtors argue that New Century is required to make periodic payments to the Trusts pursuant to the Notes, and such proceeds are then delivered to the holders of the preferred interests. Under these circumstances, the Debtors have maintained that as a technical matter the Trusts are insiders and any claim they possess against New Century is expressly excluded from consideration in determining whether the Section 1104(c)(2) dollar threshold has been met. See 11 U.S.C. § 1104(c)(2) (claims of insiders not to be considered). The Debtors further maintain that any claim of the holders of the preferred interests in the Trusts against New Century would in that case be contingent and also excluded. Id. Upon information and belief, according to the

---

[4]  The Courts appear to be split on whether the appointment of an examiner is mandatory in the event the $5,000,000 threshold is reached. For example, in In re S.A. Telecommunications, Inc., while denying the appointment of an examiner based on a finding that such appointment was not in the best interests of the estate, Bankruptcy Judge Walsh of this Court further opined that appointment order 11 U.S.C. § 1104(c)(2) was not mandatory. As the Court explained,

> [M]y view is that (c)(2) is not mandatory and for the same reasons I've already given I'll deny the relief to the extent it is premised on (c)(2).

Nos. 97-2395 through 97-2401 (PJW), March 27, 1988 Hr'g Tr. at 82:21-22. [Attached as part of Exhibit C] On the other hand, Bankruptcy Judge Newsome, sitting by designation in Delaware, held to the contrary in In re Acands, Inc., No. 02-12687 (RJN) (Bankr. D. Del. December 19, 2002) [Order and transcript excerpts attached as Exhibit C.]

127340.01600/40168811v.3

Debtors' petitions, the amount of claims against the Debtors other than those expressly excluded from consideration under the plain language of section 1104(c)(2) does not exceed $5 million. In re Tyler, 18 B.R. 574, 578-579 (Bankr. S.D. Fla. 1982) (denying appointing of examiner where movant failed to "clearly establish" statutory debt threshold.)

32. Although, on information and belief, under certain circumstances the holders of the preferred interests in the Trusts may assert certain direct rights under their indenture, the Debtors maintain that the claim is still technically held by an insider and so may not be counted under the plain reading of the statute to meet the $5 million threshold. While the Committee does not take a position as to the accuracy of the Debtors' analysis and refers the Court to the underlying documents for their full terms, the Committee notes that it is the U.S. Trustee's burden to prove that the $5 million threshold has been met to satisfy the requirements of section 1104(c)(2). The Committee does not believe that the U.S. Trustee has satisfied that burden based upon her moving papers, so the request for an examiner must be denied. At a minimum, further discovery on the issue may be required and this part of the Motion should be adjourned accordingly.

33. As noted, the U.S. Trustee did not move under the alternate basis for the appointment of an examiner, § 1104(c)(1). That provision requires a showing that such an appointment is in the "interests of creditors, any equity security holders and other interests of the estate." Since the Committee, which represents creditors with actual pecuniary interests in the outcome of these cases, is in the process of commencing its investigation, any investigation by a different fiduciary at this time would be wasteful and redundant.

127340.01600/40168811v.3

## III. IF AN EXAMINER IS APPOINTED, ITS ROLE SHOULD BE LIMITED IN SCOPE AND DURATION

34. Notwithstanding the foregoing, if the Court were to determine that the appointment of an examiner is mandated here, the Court should limit the scope of the examiner's role so as not to interfere with these ongoing Chapter 11 cases, particularly the sale of the Debtors' assets and the Committee's own investigation on behalf of those who have a financial stake in a successful outcome. See, e.g., In re Revco D.S., Inc., 898 F.2d 498, 501 (6th Cir. 1990) ("[T]he bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration."); Loral Stockholders Protective Comm. v. Loral Space & Communications, Ltd. (In re Loral Space & Communications, Ltd.), No. 04-8645, 2004 U.S. Dist. LEXIS 25681, at *16 (S.D.N.Y. December 23, 2004) ("Indeed, it is that court's duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings. To that end, the Bankruptcy Court may exercise its discretion to limit the scope of the examiner's investigation and the compensation and expenses available to the examiner."); In re Acands, Inc., No. 02-12687 (RJN) (Bankr. D. Del. December 19, 2002) (D.I. 234) (appointing "standby" examiner who was not to perform any duty or incur any cost to the estate without further order of the Court); In re Cityscape Financial Corp., No. 98-22569 through 98-22570 (ASH) (Bankr. S.D.N.Y. October 20, 1998) (D.I. 79) (appointing examiner but limiting scope, duration (1 month) and cost of investigation ($100,000)).

35. Part of the fiduciary duty of the Committee is to recover assets for the benefit of creditors. To this end, of necessity, the Committee must conduct a wide ranging investigation into the Debtors' acts, conduct, and property, a job for which it is well equipped. To appoint an examiner for such tasks would simply be duplicative (appointing "stand by" examiner "to ensure that the Committee is allowed to proceed with its investigation . . . and that those matters be

127340.01600/40168811v.3

completed before putting yet another cop on the beat in this case.") In re Acands, Inc., No. 02-12687 (RJN) (Bankr. D. Del. November 18, 2002) Hr'g Tr. at 131:13-17.

36. Accordingly, if the Court were to determine that the appointment of an examiner for some limited purpose might be appropriate here, the Committee would request that the Court defer such order for at least 120 days pending further discussion among the Committee, the U.S. Trustee, and other appropriate parties concerning the role and budget of such examiner.

## CONCLUSION

37. The appointment of a Chapter 11 trustee requires this Court to find "cause" for such an appointment exists under section 1104(a). Nothing the U.S. Trustee has alleged in the Motion reaches the level of "cause" which would merit the appointment of a Chapter 11 trustee. The mere public restatement of financial results in and of itself is not "cause" for the appointment of a Chapter 11 trustee as a matter of law. Nor should it be, as such a ruling would create a non-discretionary basis for the appointment of a Chapter 11 trustee which Congress clearly did not intend and which makes no sense based on the Congress' own accountability experts, the GAO.

38. Similarly, on the basis of the allegations made in the Motion, the U.S. Trustee has failed to prove that an examiner should be appointed under 11 U.S.C. §1104(c)(2), and that request should be denied as well. If an examiner is appointed, its role should be limited.

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court (a) deny the U.S. Trustee's Motion for the appointment of a Chapter 11 trustee or an examiner be denied in all respects and (b) grant such other and further relief as may be just and proper.

Dated:   Wilmington, Delaware
         May 9, 2007

          **BLANK ROME LLP**

*/s/ Bonnie Fatell*

Bonnie Glantz Fatell (No. 3809)
Regina Stango Kelbon
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

-and-

**HAHN & HESSEN LLP**
Mark S. Indelicato, Esq.
Mark T. Power, Esq.
Jeffrey L. Schwartz, Esq.
488 Madison Avenue
New York, New York 10022
Telephone:  (212) 478-7200
Facsimile:  (212) 478-7400

Proposed Counsel for The Official Committee of Unsecured Creditors of New Century TRS Holdings, Inc., et al.

127340.01600/40168811v.3