# EXHIBIT "A"

United States Government Accountability Office

# GAO

Report to the Ranking Minority Member, Committee on Banking, Housing, and Urban Affairs, U.S. Senate

July 2006

# FINANCIAL RESTATEMENTS

## Update of Public Company Trends, Market Impacts, and Regulatory Enforcement Activities

On March 5, 2007, this report was reissued to amend our economic analysis and selected company shares outstanding (see next page for more details). It also incorporates our August 2006 correspondence (GAO-06-1053R) as appendix V.



G A O
Accountability ★ Integrity ★ Reliability

GAO-06-678



**GAO**
Accountability · Integrity · Reliability

# Highlights

Highlights of GAO-06-678, a report to the Ranking Minority Member, Committee on Banking, Housing, and Urban Affairs, U.S. Senate

July 2006

# FINANCIAL RESTATEMENTS

## Update of Public Company Trends, Market Impacts, and Regulatory Enforcement Activities

## Why GAO Did This Study

In 2002, GAO reported that the number of restatement announcements due to financial reporting fraud and/or accounting errors grew significantly between January 1997 and June 2002, negatively impacting the restating companies' market capitalization by billions of dollars. GAO was asked to update key aspects of its 2002 report (GAO-03-138). This report discusses (1) the number of, reasons for, and other trends in restatements; (2) the impact of restatement announcements on the restating companies' stock prices and what is known about investors' confidence in U.S. capital markets; and (3) regulatory enforcement actions involving accounting- and audit-related issues. To address these issues, GAO collected restatement announcements meeting GAO's criteria, calculated and analyzed the impact on company stock prices, obtained input from researchers, and analyzed selected regulatory enforcement actions.

## What GAO Recommends

GAO recommends that SEC investigate potential noncompliance with current Form 8-K filing requirements and make consistent the guidance to registrants concerning required disclosures regarding certain restatements. SEC stated that it would examine the instances of potential non-compliance and carefully consider harmonizing guidance concerning Form 8-Ks.

www.gao.gov/cgi-bin/getrpt?GAO-06-678.

To view the full product, including the scope and methodology, click on the link above. For more information, contact Orice M. Williams at (202) 512-5837 or williamso@gao.gov.

## What GAO Found

While the number of public companies announcing financial restatements from 2002 through September 2005 rose from 3.7 percent to 6.8 percent, restatement announcements identified grew about 67 percent over this period. Industry observers noted that increased restatements were an expected byproduct of the greater focus on the quality of financial reporting by company management, audit committees, external auditors, and regulators. GAO also observed the following trends: (1) cost- or expense-related reasons accounted for 35 percent of the restatements, including lease accounting issues, followed in frequency by revenue recognition issues; and (2) most restatements (58 percent) were prompted by an internal party such as management or internal auditors. In the wake of increased restatements, SEC standardized disclosure requirements by requiring companies to file a specific item on the Form 8-K when a company's previously reported financials should no longer be relied upon. However, between August 2004-September 2005, about 17 percent of the companies GAO identified as restating did not appear to file the proper disclosure when they announced their intention to restate. These companies continued to announce intentions to restate previous financial statements results in a variety of other formats.

Although representing about 0.2 percent of the market capitalization of the major exchanges, which was $17 trillion in 2005, the market capitalization of companies announcing restatements between July 2002 and September 2005 decreased over $36 billion when adjusted for market movements (nearly $18 billion unadjusted) in the days around the initial restatement announcement. Researchers generally agree that restatements can negatively affect overall investor confidence, but it is unclear what effects restatements had on confidence in 2002-2005. Some researchers noted that investors might have grown less sensitive to the announcements. Others postulated that investors had more difficulty discerning whether restatements represented a response to aggressive or abusive accounting practices, complex accounting standards, remediation of past accounting deficiencies, or technical adjustments. Although researchers generally agree that restatements can have a negative effect on investor confidence, the surveys, indexes, and other proxies for investor confidence that GAO reviewed did not indicate definitively whether investor confidence increased or decrease since 2002.

As was the case in the 2002 report, a significant portion of SEC's enforcement activities involved accounting- and auditing-related issues. Enforcement cases involving financial fraud- and issuer-reporting issues ranged from about 23 percent of total actions taken to almost 30 percent in 2005. Of the actions resolved between March 1, 2002, and September 30, 2005, about 90 percent were brought against public companies or their directors, officers, and employees, or related parties; the other 10 percent involved accounting firms and individuals involved in the external audits of these companies.

_____**United States Government Accountability Office**



**United States Government Accountability Office**
**Washington, D.C. 20548**

July 24, 2006

The Honorable Paul S. Sarbanes
Ranking Minority Member
Committee on Banking, Housing, and Urban Affairs
United States Senate

Dear Senator Sarbanes:

Public confidence in financial reporting is critical to the effective functioning of the securities markets. However, restatements have resulted in billions of dollars of lost market capitalization, as markets react to news that companies plan to restate their prior financial statements or earnings reports. For example, in a 2002 report, we estimated that restatements of financial statements or other financial information resulted in approximately $100 billion decline in market capitalization in the days surrounding the restatement announcement.[1] Moreover, we found that from January 1997 through June 2002, 845 public companies announced the need to restate their financial information because of financial reporting fraud and/or accounting errors.[2]

Responding to corporate failures and the financial reporting fraud that resulted in substantial losses to institutional and individual investors, Congress passed the Sarbanes-Oxley Act in 2002 (Sarbanes-Oxley Act).[3] The act contains provisions affecting the financial reporting of public companies, including management assessment and auditor attestation

---

[1]GAO, *Financial Statement Restatements: Trends, Market Impacts, Regulatory Responses, and Remaining Challenges*, GAO-03-138 (Washington, D.C.: Oct. 4, 2002). For the purposes of our 2002 report and this report (1) a restatement occurs when a company, either voluntarily or prompted by auditors or regulators, revises public financial information that was previously reported; and (2) the restatement announcement is considered the market event whose effect is to be measured. Market capitalization is the value of a company as determined by the market price of its issued and outstanding common stock (the number of shares outstanding multiplied by the current market price of a share).

[2]Financial reporting fraud generally is defined as an instance in which a company intentionally misstates its financial statements or intentionally misapplies an accounting pronouncement. Accounting errors generally are unintentional mistakes in a transaction or application of an accounting principle that results in the financial statements not being fairly presented in conformity with generally accepted accounting principles. Our analysis includes both financial reporting fraud and accounting errors. In our 2002 report, we referred to financial reporting fraud and accounting errors as accounting irregularities.

[3]Pub. L. No. 107-204, 116 Stat. 745 (July 30, 2002).

about the effectiveness of internal controls. Industry observers expected that the number of public companies restating their financial statements would increase for some period of time because of increased scrutiny of internal controls over financial reporting, and then eventually level off as companies improved their controls.

You asked that we update our 2002 report on restatements. In this report, we (1) determine the number of, reasons for, and other trends in restatements of previously reported financial information; (2) analyze the impact of restatement announcements on the restating companies' stock market capitalization; (3) research available data to determine the impact of restatements on investors' confidence in the existing U.S. system of financial reporting and capital markets; and (4) analyze Securities and Exchange Commission (SEC) enforcement actions involving accounting- and audit-related issues.

To identify restatements, we used Lexis-Nexis, an online information service, to systematically search for restatement announcements using variations of "restate" and other relevant words. We then identified and collected information on 1,390 restatements announced by 1,121 public companies—984 of which were listed companies on the New York Stock Exchange (NYSE), Nasdaq, and American Stock Exchange (Amex)—from July 1, 2002, to September 30, 2005, that involved corrections of previously reported financial results.[4] Throughout the report, we refer to the subset of companies with stock listed on NYSE, Nasdaq, and Amex as "listed." Our database generally excludes announcements involving stock splits, changes in accounting principles, and other announced restatements that were not made to correct errors in the application of accounting principles.[5] We classified each of the 1,390 announced restatements we identified into one of nine categories: revenue recognition; cost- or expense; acquisitions and mergers; in-process research and development (IPR&D); reclassification; related-party transactions; restructuring, assets, or inventory; securities related; and "other" restatements. This classification process involved some degree of judgment and other

---

[4]The number of announcements exceeds the number of public companies because some companies announced restatements more than once.

[5]Because numerous revisions to the Financial Accounting Standards Board's Financial Interpretation No. 46, *Consolidation of Variable Interest Entities*, were issued over a short span, we generally excluded restatements made to comply with such guidance, unless the compliance was not timely.

researchers could interpret certain restatements differently. While several other studies have used a similar methodology, we know of no publicly available restatement list against which to compare the completeness of our list. However, we did review companies' SEC filings and Web sites to verify the accuracy of particular restatement announcement dates and reasons. We also compared some qualitative features of our database with proprietary information provided by financial consulting firms. We also compared companies in our database with a list of companies that had filed Form 8-K, Item 4.02, disclosures with SEC between August 2004 and September 2005 to identify companies that warranted further review concerning how they disclosed their restatement announcements.

To determine the immediate impact on stock prices, as in our prior report, we used the standard event study methodology, which is widely accepted in the academic literature. We were able to analyze 1,061 of the 1,390 restatements that were announced from July 1, 2002, through September 30, 2005; we also collected information on other characteristics of restatement trends. We were unable to include 329 in our primary analysis because (1) they involved stocks not listed on NYSE, Nasdaq, or Amex; or (2) they were missing data for the relevant period for causes including trading suspensions, bankruptcies, and mergers. For the 1,061 cases, we analyzed the company's stock price from the trading day before through the trading day after the announcement date to assess the immediate impact and calculate the change in market capitalization. We analyzed the intermediate impact (20 trading days before and after the restatement announcement date) for 991 of the 1,390 restatements to capture any potential information leakage concerning potential restatements.[6] We also analyzed the longer-term impact (60 trading days before and after the restatement announcement date) for 928 of the 1,390 restatements to gauge whether the company's stock prices rebounded over time.[7] In the immediate-, intermediate-, and longer-term calculations, we adjusted for overall market movements. Additionally, we performed a separate immediate impact analysis of the 329 announcements that we were unable to analyze in the primary event study, which was limited to a simple assessment of any changes in unadjusted market capitalization. To analyze

[6]There were fewer restatements analyzed over the intermediate period than restatements analyzed in the immediate impact analysis because of missing longer-term data.

[7]There were even fewer restatements analyzed over the longer-term period than restatements analyzed in the intermediate and immediate impact analysis due to missing longer-term data.

GAO-06-678 Financial Restatements

the impact of restatements on investor confidence, we identified a number of indexes, reviewed quantitative research on the issue, conducted structured interviews with (and collected information) from experts in accounting and financial markets, and collected data on a variety of proxy measures.

To obtain information about the recent enforcement actions SEC has taken involving accounting- and auditing-related issues, which may or may not involve a restatement, we collected information on SEC's enforcement process, reviewed available SEC information, and collected enforcement case data from over 800 Accounting- and Auditing-Related Enforcement Releases (AAER) issued from March 1, 2002, through September 30, 2005 posted on SEC's Web site as of July 1, 2006. We also interviewed officials from SEC and the Public Company Accounting Oversight Board (PCAOB), which was established by the Sarbanes-Oxley Act to oversee the audits of public companies subject to the securities laws.

We conducted our work between June 2005 and August 2006 in accordance with generally accepted government auditing standards. For additional information on our scope and methodology, see appendix I.

## Results in Brief

While the number of companies announcing financial restatements from 2002 through September 2005 rose from 3.7 percent to 6.8 percent, restatement announcements identified grew about 67 percent over this period. Of the restatements identified, cost- or expense-related issues were the primary reason for restatements during this period and most were prompted by internal parties, such as management or internal auditors. Some industry observers commented that increased restatements were the expected byproduct of the greater focus—by company management, audit committees, external auditors, and regulators—on the quality of financial reporting. The cumulative totals were 919 restatements over a 66-month period that ended June 30, 2002, and 1,390 restatements over the 39-month period that ended September 30, 2005. Over the period of January 1, 2002, through September 30, 2005, the total number of restating companies (1,084) represents 16 percent of the average number of listed companies from 2002 to 2005, as compared to almost 8 percent during the 1997-2001 period. The median size (by market capitalization) of restating companies increased from $277 million in 2002 to $682 million in 2005. For the July 2002 through September 2005 period, the 1,121 restating companies we identified (accounting for 1,390 restatement announcements) announced that they would restate their financial information for many reasons—for

example, to adjust revenue, costs or expense, or address securities-related issues. Cost- or expense-related issues were the primary reason for restatements, which included numerous lease accounting issues in early 2005; overall cost- or expense related issues accounted for 35 percent of the 1,390 announced restatements during this period. Internal parties (e.g., management or internal auditors) prompted a majority (58 percent) of the announced restatements, while external parties (e.g., external auditors or regulators) prompted nearly one-quarter (24 percent) of them; we were unable to identify the prompter in the remaining 18 percent.

The market capitalization of the companies—those we were able to analyze from among the listed companies that we identified as announcing restatements of previously reported information between July 2002 and September 2005—decreased an estimated $36 billion when adjusted for overall market movements (nearly $18 billion unadjusted) in the days around the initial restatement announcement.[8] For the restating companies we analyzed, stock prices fell almost 2 percent on average (market adjusted) from the trading day before through the trading day after an initial restatement announcement. This short-term impact ($36 billion), if realized, may have been significant for the companies and shareholders involved, but represents about 0.2 percent of the combined total market capitalization of NYSE, Nasdaq, and Amex, which was $17 trillion in 2005. Although capturing the impact of a restatement announcement over intermediate and longer periods (20 and 60 trading days before and after the event, respectively) is more difficult, our analyses suggest that restatement announcements have had a somewhat negative effect on stock prices beyond their immediate impact. The announced reasons for restatements also were a factor in how great an impact a restatement announcement had on stock prices. In a change from our previous report, cost- or expense-related issues were the most frequently cited reasons for restating and had the greatest impact on market capitalization in dollar terms, but as was the case in our previous report, restatements involving revenue issues and financial reporting fraud and/or accounting errors generally led to greater market losses than restatements for other reasons.

---

[8]These results are based on our event study and include only those stocks listed on NYSE, Nasdaq, and Amex at the time the companies announced restatements. Adjusting for market movements is important in general because the impact of negative (or positive) company-specific news can be dampened (or bolstered) on a day when the overall market is moving higher, and vice versa. Failing to control for market movements can result in attributing a greater or smaller impact to an event than is warranted.

Although researchers generally agree that restatements can have a negative effect on investor confidence, the surveys, indexes, and other proxies for investor confidence that we reviewed did not indicate definitively whether investor confidence increased or decreased since 2002. To illustrate, some researchers noted that, since 2002, investors may have had more difficulty discerning whether a restatement represented a response to: aggressive or abusive accounting practices, the complexity of accounting standards, the remediation of past accounting deficiencies, or technical adjustments. However, several survey-based indexes and other proxies for investor sentiment did not indicate a consensus on the direction of investor confidence since 2002. For example, a periodic UBS/Gallup survey, aimed at measuring investor confidence indicated that while concerns over corporate accounting practices still existed, overall investor confidence remained low primarily because of concerns such as high energy prices and the federal budget deficit. In contrast, the Yale confidence indexes, which found investor confidence levels were largely unaffected by the accounting scandals prior to 2003, more recently showed that institutional investors have slightly more confidence in the stock market—but results for individual investors were unclear.[9] Finally, other measures and proxies for investor confidence indicated that increased financial restatements may not have had a negative impact on overall confidence or, if they had, any negative impact had been counterbalanced by other, more positive forces.

The number of SEC enforcement cases involving financial fraud and issuer reporting issues increased from 79 in fiscal year 1998 to 185 in fiscal year 2005—a more than a 130 percent increase. Moreover, in fiscal year 2005, cases involving financial fraud and issuer reporting issues constituted the largest category of enforcement actions. The resources SEC devoted to enforcement grew as well. The financial debacles of the late 1990s and early 2000s spurred Congress to increase SEC's resources to help SEC better manage its increased workload. This resulted in a 22 percent increase in SEC's enforcement resources between fiscal years 2002 and 2003. Of the enforcement actions SEC resolved between March 1, 2002, and September 30, 2005, SEC brought about 90 percent against public companies or their directors, officers, and employees; the other 10 percent of the cases involved accounting firms and individuals affiliated with accounting firms. To address such violations, SEC sought a variety of penalties against these companies and individuals, including monetary

---

[9]The four Yale indexes are (1) the One-Year Confidence Index, (2) the Buy on Dip Confidence Index, (3) the Crash Confidence Index, and (4) the Valuation Confidence Index.

sanctions, cease-and-desist orders, and bars on individuals appearing before SEC or serving as officers or directors in public companies. In addition, the newly created PCAOB also has broad investigative and disciplinary authority over public accounting firms that have registered with it and persons associated with such firms; PCAOB has initiated several enforcement actions since its inception.

This report includes recommendations to SEC to help ensure compliance with its Form 8-K reporting requirements and make consistent existing SEC guidance on public company disclosures of restatements that result in non-reliance on previously issued financial statements. This would include investigating the instances of potential noncompliance that we identified and take any necessary actions to correct them. Moreover, to improve the consistency and transparency of information provided to markets about restatements, we recommend that SEC harmonize existing instructions and guidance concerning Item 4.02 by amending the instructions to Form 8-K and other relevant periodic filings to clearly state that an Item 4.02 disclosure on Form 8-K is required for all determinations of non-reliance on previously issued financial statements (Item 4.02), irrespective of whether such information has been disclosed on a periodic report or elsewhere.

We requested comments on a draft of this report from the Chairmen of SEC and PCAOB. SEC and PCAOB provided written comments. In response to our recommendations, SEC noted that it would (1) continue its practice of examining instances of potential noncompliance and take appropriate actions, and (2) carefully consider our recommendation that it harmonize certain instructions and guidance related to restatements. PCAOB noted that as the overseer of the audit of public companies, it is very interested in the trends in financial restatements identified in the report and the impact on public companies and investors and thinks that the report will advance an understanding of this important issue. We reprinted SEC's and PCAOB's written comments in appendixes II and III, respectively, and discuss them in greater detail near the end of this report. Both SEC and PCAOB provided technical comments that were incorporated into the report as appropriate. We also obtained comments from officials at several of the companies selected as case studies in this report and have incorporated their comments as appropriate.

## Background

Public confidence in the reliability of financial reporting is critical to the effective functioning of the securities markets, and various federal laws and entities help ensure that the information provided meets such

<sup>c</sup>SEC has recognized the accounting standards set by the Financial Accounting Standards Board (FASB) to be "generally accepted" for the purposes of the securities laws.

<sup>d</sup>EITF refers to FASB's Emerging Issues Task Force.

## The Number of Restatements Has Continued to Grow and New Trends Have Emerged

Although the number of public companies restating their publicly reported financial information due to financial reporting fraud and/or accounting errors remained a relatively small percentage of all publicly listed companies, the number of restatements has grown since 2002. For example, 314 companies announced restatements in 2002 and 523 announced restatements in 2005 (through September). In addition, of the 1,390 announced restatements we identified, the percentage of large companies announcing restatements has continued to grow since 2002.[11] While large and small companies restate their financial results for varying reasons, change in cost- or expense-related items, which includes lease accounting issues, was the most frequently cited reason for restating. While both internal and external parties could prompt restatements, internal parties such as company management or internal auditors prompted the majority of restatement announcements. Finally, we found that, despite SEC's efforts to create a more transparent mechanism for disclosing restatements through revisions to Form 8-K, some companies had not properly filed such disclosures and continued to announce intentions to restate previous financial statements results in a variety of other formats.

## The Number of Restatement Announcements Grew since 2002, as Did the Number of Listed Companies Restating

The number of annual announcements of financial restatements generally increased, from 314 in 2002 to 523 in 2005 (through September)—an increase of approximately 67 percent (see fig. 2). This constituted a nearly five-fold increase from 92 in 1997 to 523 in 2005. Furthermore, from July 2002 through September 2005, a total of 1,121 public companies made 1,390 restatement announcements.[12] Some industry observers noted that several factors may have prompted more U.S. publicly traded companies to restate

---

[11]See appendix V, *Financial Restatement Database*, GAO-06-1053R (Washington, D.C.: Aug. 31, 2006), for a detailed listing of restatement announcements we identified July 2002 through September 2005, and additional information. This correspondence also includes a listing of restatement announcements we identified from October 2005 through June 2006. The database is available electronically at http://www.gao.gov/cgi-bin/getrpt?GAO-06-1079sp. For the purpose of this report, we define a large company as having over $1 billion in total assets.

[12]The number of announcements exceeds the number of public companies because some companies announced more than one restatement.

previously reported financial results, including (1) the financial reporting requirements of the Sarbanes-Oxley Act, especially the certification of financial reports required by Section 302 and the internal controls provisions of Section 404; (2) increased scrutiny from the newly formed PCAOB through its inspections of registered public accounting firms; and (3) increased staffing and review by SEC.

**Figure 2: Total Number of Restatement Announcements Identified, January 1997– September 2005**



Source: GAO analysis of relevant press releases and SEC filings.

Notes: Includes restatement announcements by larger public companies traded on the Over-the-Counter (OTC) Bulletin Board and on the National Quotation Service Bureau's Pink Sheets (Pink Sheets).

As the number of restatement announcements rose, the numbers of listed companies making the announcements increased as well. While the average number of companies listed on NYSE, Nasdaq, and Amex decreased about 10 percent from 7,144 in 2002 to 6,473 in 2005, the number of listed companies restating their financial results increased from 265 in 2002 to 439 in 2005 (through September), representing about a 67 percent increase (see table 1). On a yearly basis, the proportion of listed companies restating grew from 3.7 percent in 2002 to 6.8 percent in 2005. Over the period of January 1, 2002, through September 30, 2005, the total number of

**GAO-06-678 Financial Restatements**

restating companies (1,084) represents 16 percent of the average number of listed companies from 2002 to 2005, as compared to almost 8 percent during the 1997-2001 period.

**Table 1: Number of Listed Restating Companies as a Percentage of Average Listed Companies, 2002–September 2005**

| Year | Number of companies listed[a] | Number of listed companies restating[b] | Percent of listed companies restating |
|------|------|------|------|
| 2002 | 7,144 | 265 | 3.7 |
| 2003 | 6,780 | 237 | 3.5 |
| 2004 | 6,729 | 294 | 4.4 |
| 2005 | 6,473 | 439 | 6.8 |

Sources: GAO analysis of restatement announcements; NYSE, Nasdaq and SEC.

[a]The numbers of listed companies (NYSE-, Nasdaq-, and Amex-listed companies) for each year from 2002 to 2004 are based on year-end totals. The number of NYSE- and Amex-listed companies for 2005 is through March. The number of Nasdaq- listed companies for 2005 is through June.

[b]Companies that restated more than one time are counted only once in the yearly total. Also, note that the number of listed companies restating differs from the total number of restatements because not all companies that restated were listed on NYSE, Nasdaq, or Amex, and some companies restated multiple times. For example, in 2004, there were 370 restatements; however, 46 were attributed to companies not listed on a major exchange. There were 294 listed companies that were responsible for 324 of the restatement announcements in 2004, with some companies announcing more than once.

A number of other researchers also found that restatements had increased since calendar year 2002. The researchers used somewhat different search methodologies to identify companies that restate previously reported financial information and included slightly different criteria for inclusion but arrived at similar conclusions. The Huron Consulting Group (HCG) identified 1,067 financial statement restatements from 2002 to 2004 and noted that the increase was significant from 2003 to 2004.[13] Also, Glass, Lewis & Co. LLC (Glass Lewis) identified 2,319 restatements of previously issued financial information by U.S. public companies from 2003 to 2005 and also found an increase in the number of restatements over that period.[14] Unlike our work, which included a limited number of companies traded OTC Bulletin Board or on Pink Sheets, the Glass Lewis study also

[13]Huron Consulting Group, "A Study of Restatement Matters," (Chicago: Huron Consulting Group, 2005).

[14]Glass, Lewis & Co. LLC, "Getting It Wrong the First Time," (Denver: Glass, Lewis & Co. LLC, 2006).

included hundreds of smaller companies quoted on the OTC Bulletin Board or on Pink Sheets that generally lacked analyst coverage. See appendix VI for a comparison of various restatements studies.

**The Percentage of Large Companies Restating Has Continued to Grow**

For the restatements we identified, the number of large companies announcing restatements of their previously reported financial information due to financial reporting fraud and/or accounting errors has increased. More specifically, large companies (i.e., companies having over $1 billion in total assets), as a percentage of the total restating companies have increased from about 30 percent in 2001 to over 37 percent in 2005. Likewise, the average market capitalization of a company announcing a restatement (for which we had data) has grown from under $3 billion (with a median of $277 million) in the latter half of 2002 to over $10 billion (with a median of $682 million) through September 2005. While the average size of listed companies increased about 68 percent from 2002 to 2005, the average size of companies restating their financials grew almost 300 percent.

Another indication that large public companies announcing restatements has continued to increase, is the number of companies identified as announcing restatements that are listed on the NYSE, which has more large companies than the other U.S. stock exchanges.[15] For example, between 2002 and September 2005, the number of NYSE-listed companies announcing restatements had increased 64 percent from 114 to 187.[16] During the same time, the number of Nasdaq-listed companies announcing restatements increased 55 percent from 137 to 212, and the number of Amex-listed restating companies increased more than 175 percent from 14 to 40.[17]

[15]The average market capitalization of companies restating their financial statements for which we had data was $924 million for those listed on Nasdaq, and $7.2 billion for those listed on NYSE. The Nasdaq totals include National Market System and Small Cap Venue-listed companies.

[16]Companies restating multiple times in one year are counted only once in this analysis. For example, in 2003 there were 110 restatements attributable to NYSE-listed companies; however there were only 103 companies restating—some more than once.

[17]Because our methodology reflects a focus on the impact of restatement announcements on market capitalization, we do not capture a large number of small public companies, many of which are not traded on the listed markets. See appendix I.

While more Nasdaq-listed companies announced restatements than NYSE-listed companies, the proportion of NYSE-listed companies restating (relative to the total number of companies listed on the NYSE) surpassed Nasdaq-listed companies over the period 2002–2005.[18] As figure 3 illustrates, for the announced restatements we identified, in 2002, about 4 percent of NYSE-listed companies announced restatements for financial reporting fraud and/or accounting errors, whereas this percentage rose to more than 7 percent by September 2005. During the same period, the percentage of Nasdaq-listed restating companies rose from less than 4 percent to almost 7 percent. From 2002 to 2005, the percentage of NYSE- and Nasdaq-listed companies restating essentially mirrored each other in movement throughout the period by declining and then increasing. However, the percentage of Amex-listed restating companies rose each year during the 2002 to September 2005 period from about 2.0 percent to almost 5.5 percent.

---

[18]In 2005, Nasdaq had almost 900 more companies listed than NYSE.

**Figure 3: Percentage of Listed Companies Restating, 2002–September 2005**



Source: GAO analysis of NASDAQ and SEC data on listed companies.

Note: The 2005 figures are based on restatement announcements collected through September 2005.

| Restatement Announcements Most Frequently Were Made for Cost- or Expense-Related Reasons | Although public companies restate their financial results for a variety of reasons, cost- or expense-related issues accounted for more than one-third of the 1,390 restatement announcements identified from July 2002 through September 2005 (see fig. 4). We classified cost- or expense-related restatements generally to include a company understating or overstating costs or expenses, improperly classifying expenses, or any other mistakes or improprieties that led to misreported costs. Lease accounting issues that surfaced in early 2005 were also included in this category. |
|---|---|

Figure 4:  Restatements by Reason, January 1997–June 2002 and July 2002–September 2005



Source: GAO analysis of initial restatement announcements.

Note:  Our database includes announced restatements that were being made to correct material misstatements of previously reported financial information. Therefore, our database excludes announcements involving stock splits, changes in accounting principles, and other restatements that were not made to correct mistakes in the application of accounting standards. For this report, we found only one restatement announcement resulting from IPR&D.

Our analysis also shows a significant drop in restatements announced for revenue recognition reasons, which had accounted for almost 38 percent of the restatements in our 2002 report. Cost- or expense-related issues surpassed revenue recognition issues as the most frequently identified cause of restatements primarily because of a large number of announcements made in early 2005 to correct accounting for leases by the retail/restaurant industry and tax-related issues. For example, 135 public companies announced restatements involving issues solely related to accounting for leases in 2005 after SEC chief accountant's February 7, 2005, letter regarding the treatment of certain leases and leasehold improvements.[19] However, revenue recognition remained the second most frequently identified reason for restatements from July 2002 through September 2005, accounting for 20 percent of all the restatements. Actions that we classified under "revenue recognition" included a company recognizing revenue sooner or later than would have been allowed under GAAP, or recognizing questionable or invalid revenue. (See table 2 for a description of each reason.)

---

[19]A lease is a document granting possession of a property for a given period without conferring ownership. The lease document specifies the terms and conditions of occupancy by the tenant, including a period of occupancy, rent payable, etc. A leasehold improvement is an expense incurred for the permanent improvements to rented facilities. Leasehold improvements are considered fixed assets and depreciate over the leased period.

GAO-06-678 Financial Restatements

**Table 2: Financial Restatement Category Descriptions**

| Category | Description |
| --- | --- |
| Cost or expense | Restatements due to improper accounting for costs or expenses. This category generally includes a company understating or overstating costs or expenses, improperly classifying expenses, or any other number of mistakes or improprieties that led to misreported costs. It also includes improper treatment of expenses related to tax liabilities and tax reserves. In addition, it includes improper treatment of financing arrangements, such as leases, when a related asset was improperly capitalized or expensed as part of the financing arrangement. Improperly reserved litigation restatements are also included in this category. |
| Revenue recognition | Restatements due to improper revenue accounting. This category includes instances in which: revenue was improperly recognized, questionable revenues were recognized, or any number of other mistakes or improprieties that led to misreported revenue. Also included in this category are transactions with non-related parties that artificially inflate volume and revenues, through the simultaneous purchase and sale of products between colluding companies. These are known as round-trip transactions. |
| Securities-related | Restatements due to improper accounting for derivatives, warrants, stock options and other convertible securities. |
| Restructuring, assets, or inventory | Restatements due to asset impairment, errors relating to accounting treatment of investments, timing and amount of asset write-downs, goodwill and other intangibles, restructuring activity and inventory valuation, and inventory quantity issues. |
| Reclassification | Restatements due to improperly classified financial statement items, i.e., current liabilities classified as long-term debt on the balance sheet, or cash flows from operating activities classified as cash flows from financing activities on the statement of cash flows. |
| Other | Any restatement not covered by the listed categories. Includes restatements due to inadequate loan-loss reserves, delinquent loans, loan write-offs, or other allowances for doubtful accounts or accounting estimates; and restatements due to fraud or accounting errors that were left unspecified. |
| Acquisition and merger | Restatements due to improper accounting for—or a complete lack of accounting for—acquisitions or mergers. These include instances in which the wrong accounting method was used, or losses or gains related to the acquisition were understated or overstated. |
| Related-party transaction | Restatements due to inadequate disclosure or improper accounting of revenues, expenses, debts, or assets involving transactions or relationships with related parties. |
| In-process research and development | Restatements resulting from instances in which improper accounting methodologies were used to value in-process research and development at the time of an acquisition. |

Source: GAO.

Note: We excluded announcements involving stock splits, changes in accounting principles, and other financial statement restatements that were made for reasons other than correcting for financial reporting fraud and/or accounting errors.

## Internal Parties Prompted the Majority of Restatements Announced from 2002 through 2005

While both internal and external parties—such as the restating company's management or internal auditor, an external auditor, SEC, or others—can prompt restatements, about 58 percent of the 1,390 announced restatements were prompted by internal parties. This was an increase from about 49 percent in our 2002 report. However, in both our prior report and this report, external parties may have been involved in discovering some of these misstatements, even if the companies may not have made that information clear in their restatement announcements or SEC filings. The external auditor, SEC, or some other external party such as the media (as in the case of an August 2002 restatement announcement by AOL Time Warner Inc. (AOL)), was identified as prompting the restatement in 24 percent of the announcements (compared to 16 percent in our 2002 report). In the remaining 18 percent of the announcements (compared with 35 percent in our 2002 report), we were not able to determine who prompted the restatement because the announcement or SEC filing did not clearly state who discovered the misstatement of the company's prior financial results.

**Figure 5:  Who Prompted Restatements, January 1997–June 2002 versus July 2002–September 2005**



Source: GAO analysis of GAO-identified initial restatement announcements.

GAO-06-678 Financial Restatements

We also conducted a separate analysis of the immediate impact of restatement announcements for the 329 announcements that we were unable to analyze in the primary event study. This group included 159 announcements that were attributed to companies with stock not listed on the exchanges. We limited this additional analysis to a simple assessment of the unadjusted change in market capitalization over the three trading days surrounding the restatement announcement, generally relying on data we obtained from SEC's and Nasdaq's Web sites. We were able to gather sufficient data to analyze 242 of the 329 announcements (114 announcements made by listed companies and 128 announcements made by unlisted companies).[25] We estimated that, on average, these restatement announcements resulted in an average decline in market capitalization of 1.5 percent from the trading day before the announcement through the trading day after the announcement, reflecting an unadjusted decline of about $3.7 billion in addition to the nearly $18 billion decline estimated in the primary event study.

## Reasons That Could Involve Reporting Fraud or Other Unspecified Issues, and Revenue Recognition Issues Continued to Significantly Impact Market Capitalization; but Cost or Expense Issues Produced Greater Dollar Losses

Announcements made for reasons that could involve financial reporting fraud or other unspecified causes, which we classified in the Other category, as well as restructuring and revenue recognition-related issues, had the largest negative impact on market capitalization when adjusted for the size of a restating company (see fig. 6); however, when measured in dollars, cost- or expense-related restatement announcements accounted for more of the immediate decline in market capitalization than each of the other reasons, over our analysis period.[26] These results are different from the findings in our earlier report, suggesting that the nature of the market response to restatements may have changed in some respects. (We discuss how different types of restatements may have affected investor confidence in another section of this report.) To assess the immediate market impact of a given type of restatement on a restating company's market capitalization, we computed the ratio of the estimated change in the company's market capitalization to the company's total market

---

[25]We were unable to analyze 87 announcements due to companies merging with or being acquired by other companies, companies filing for Chapter 11 bankruptcy protection, companies deregistering their stock, and companies for which we were unable to find any additional information.

[26]In this section we focus on market-adjusted results; the unadjusted results were qualitatively similar.

capitalization over the 3 trading days surrounding the announcement of a restatement. We then averaged these impacts for each reason.

**Figure 6: Immediate Market-Adjusted Impact on Market Capitalization of Restating Companies by Restatement Reason, July 2002–September 2005**

| Reason | Change in market capitalization as a percentage of company size | Frequency of reason (percent) |
|---|---|---|
| Related-party transactions | -3.76 | 1.8 |
| Other | -2.87 | 6.1 |
| Restructuring, assets, or inventory | -2.13 | 11.6 |
| Revenue recognition | -2.05 | 19.4 |
| Cost or expense | -1.25 | 37.6 |
| Securities related | -.77 | 12.8 |
| Acquisitions and mergers | -.49 | 3.7 |
| Reclassification | +.04 | 6.9 |

Not statistically significantly different from zero at the 5 percent level

Sources: GAO analysis of initial restatement announcements; NYSE TAQ, and SEC data.

Notes: Company size is measured by market capitalization. This figure illustrates the average change in market capitalization (the immediate impact) as a percentage of restating company market capitalization. The single observation categorized as IPR&D was omitted from this figure.

While restatement announcements involving related-party transactions, which can revolve around revenue issues, appeared to have the largest negative impact, this result was not statistically different from zero. This category accounted for a relatively small number of restatements, and the results were heavily influenced by three announcements that had sizeable market reactions.[27]

---

[27]For example, the three restatements attributable to related-party transactions with the largest negative responses (in excess of 18 percent of market capitalization) involved misreported sales between affiliates (at Digital Video Systems, Inc. in April 2003), unspecified intercompany transactions (at Ionics, Inc. in Nov. 2002), and failure to disclose and account for a compensation arrangement with a former CEO (at Nara Bancorp, Inc. in March 2005).

In contrast to our previous report, in which positive responses to two large restatements attributed to restructuring, asset impairment, and inventory issues led to market gains in that category, restatements made for these reasons in 2002–2005 represented about 29 percent of the market-adjusted market capitalization losses. These reasons accounted for about 11 percent of the cases we analyzed, and the median size of a company restating for these reasons was $504 million.

The effect of restatements announced for revenue recognition issues on market capitalization initially appeared weaker than in our previous report. Restatements involving revenue recognition accounted for almost 20 percent of the cases, but only around 10 percent of the market-adjusted market capitalization losses. The median size of a company restating for this reason was $321 million; thus it appears that companies announcing restatements for revenue recognition reasons tended to be smaller. However, when adjusted by the size of the restating company, restatement announcements involving revenue recognition issues (more than many other reasons) resulted in an average loss that represented a larger percentage of a restating company's market capitalization.

Cost- or expense-related restatements had a greater effect on market capitalization than in our previous report, and were distinguished from restatements for other reasons in three ways. First by dollars, cost- or expense-related restatement announcements accounted for more of the immediate declines in market capitalization than other reasons over our analysis period. More specifically, cost- or expense-related restatement announcements accounted for $15.2 billion, or about 42 percent, of the $36.5 billion in total losses (market-adjusted) over our analysis period. This decline was driven in large part by the January 9, 2004, restatement announcements by Shell Transport and Trading Company, plc, and Royal Dutch Petroleum Company, which represented a decline in estimated market capitalization attributed to the cost- or expense category of over $4 billion. Second, when measured by median market capitalization, companies announcing restatements involving cost or expense issues were the largest. The median size of a company restating for cost or expense

reasons was $632 million. Furthermore, of the 1,061 cases analyzed, cost or expense was the most frequently cited reason for restating (38 percent).[28]

Finally, the market did not perceive all restatements negatively. We found that announcements involving the acquisition and merger category—with a median company size of $318 million—resulted in an overall increase of over $1.5 billion in market capitalization. The positive results are in significant contrast to our previous report, in which we attributed more than $19 billion in market capitalization decline to this category.

## Restatement Announcements Continued to Have Some Longer-Term Impact on the Market Capitalization of Restating Companies

Our analysis of restatement announcements showed mixed results over intermediate and longer periods, but these announcements overall tended to have some longer-term impacts. On a market-adjusted basis, from 20 trading days before through 20 trading days after a restatement announcement (the intermediate impact), we estimated that the stock prices of restating companies declined by nearly 2 percent on average, and their market capitalization declined by over $78 billion in aggregate; whereas, on an unadjusted basis, the market capitalization of restating companies decreased around $5 billion (see table 5).[29] This suggests that the reaction was more negative than expected given the movement in the overall market.

---

[28]As noted earlier, a large number of public companies announced restatements involving accounting for leases recently. We found that of the 1,390 restatement announcements that we captured, 151 were due solely to the lease accounting issue. We were able to analyze 131 of these 151 announcements and found that, on a market-adjusted basis, the stock prices of these companies declined by around 0.5 percent on average and their market capitalization decreased by $2.1 billion from the trading day before through the trading day after the announcement. We found that the average (median) immediate market-adjusted impact on market capitalization for these announcements was -$15.8 million (-$0.3 million). This is in comparison to the average (median) immediate market-adjusted impact on market capitalization of -$34.4 million (-$1.4 million) for all of the 1,061 announcements that we analyzed in the primary event study.

[29]In our 2002 report, we specified the intermediate impact as 60 trading days before through 60 trading days after the announcement. For purposes of this report, we have specified 20 trading days before through 20 trading days after the announcement as the intermediate impact and the longer-term impact as 60 trading days before through 60 trading days after the announcement.

Appendix I

# Objectives, Scope, and Methodology

As agreed with your staff, our objectives were to (1) determine the number of, reasons for, and other trends in restatements since our 2002 report; (2) analyze the impact of restatement announcements on the restating companies' stock market capitalization; (3) research available data to determine the impact of restatements on investors' confidence in the existing U.S. system of financial reporting and capital markets; and (4) analyze the Securities and Exchange Commission (SEC) enforcement actions involving accounting- and auditing-related issues.

## Identifying the Number of and Reasons for Restatements

To determine the number of and reasons for restatements since 2002, we employed substantially the same methodology used in our prior report, in which we analyzed the period from January 1997 through June 2002.[1] We identified restatements of previously reported financial results announced from July 1, 2002, through September 30, 2005, using the Lexis-Nexis online information service to search for press releases and other media coverage on restatements. When developing our search methodology for identifying restatements for our prior report, we reviewed the approaches used in several academic and nonacademic research papers.[2] Our search methodology was constructed to maximize the number of potentially relevant articles (and minimize the potentially irrelevant articles) for our consideration, given the focus of our research. Using the Lexis-Nexis "Power Search" command and the "US Newspapers and Wires" database, we performed keyword searches using variations of "restate" as well as the terms, "adjust," "amend," and "revise"—all within 50 words of "financial statement" or "earning."

As was the case in our prior report, to our knowledge, no comprehensive, authoritative database of financial statement restatement announcements exists that is publicly available. While several researchers have constructed and maintained their own financial statement restatement databases, these lists are generally proprietary and are not publicly available. Moreover, these researchers may have a different focus from ours and may use different methods and criteria for constructing their databases, as well as

---

[1]GAO, *Financial Statement Restatements: Trends, Market Impacts, Regulatory Responses, and Remaining Challenges*, GAO-03-138 (Washington, D.C.: Oct. 4, 2002).

[2]In addition to sources cited in our 2002 report, we also relied on Huron Consulting Group (HCG), 2005, "2004 Annual Review of Financial Reporting Matters"; Glass, Lewis & Co., LLC (2005), "Restatements – Traversing Shaky Ground: and Glass, Lewis & Co., LLC (2006), "Getting It Wrong the First Time."

different sample periods, making it difficult to directly compare the database of restatements that we constructed with the databases that others have compiled. However, we were able to compare descriptive statistics from our database with proprietary information provided by Huron Consulting Group (HCG) and Glass, Lewis & Co. LLC (Glass Lewis). In comparing our list to Glass Lewis' database of actual restatement filings, it is clear that our database, while providing a comprehensive list of companies listed on the major exchanges, excludes a large number of small, over-the-counter companies with limited analyst and press coverage (see app. V). As a result, our database, which included 1,390 restatement announcements, should be viewed as a sample of restatements by publicly traded companies identified using our particular search methodology, and the results of our analysis should be viewed in this context. Specifically, users of this report should note that our figures likely do not reflect the number of smaller public companies that have restated over the 2002-2005 period. Our database was constructed using a methodology that reflects our focus on the impact on companies' market capitalization.[3] In many cases, the report discusses statistics as they pertain to publicly listed companies, since our database is fairly comprehensive in this regard. We reviewed filings in SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system, and companies' Web sites, to verify the accuracy of particular restatement announcement dates and reasons.

Although there are many reasons for restatements, most restatements involve more routine reporting issues (such as a merger or stock split) and are not symptomatic of financial reporting fraud. Consistent with our prior report, we generally specified financial reporting fraud and accounting errors—previously referred to as accounting irregularities in our prior report—to include so-called "aggressive" accounting practices, intentional and unintentional misuse of facts applied to financial statements, oversight or misinterpretation of accounting rules, and fraud. Given the general change in attitude toward what issues may warrant restatements in the post Sarbanes-Oxley Act environment, we also included restatements that involved computational errors—a departure from our prior report. Exclusion of such restatements likely had a negligible impact on our prior report's results since we encountered very few such instances. Also, we included in our database each restatement that met our criteria, regardless of its impact (positive or negative) on the restating company's financials.

---

[3]Publicly listed companies make up over 97 percent of the total market capitalization of publicly traded companies.

We excluded restatement announcements that resulted from normal corporate activity or simple presentation issues—unless we determined that there was some financial reporting fraud and/or accounting errors involved. For example, we excluded financial statement restatements resulting from mergers and acquisitions, discontinued operations, stock splits, issuance of stock dividends, currency-related issues (for example, converting from Japanese yen to U.S. dollars), changes in business segment definitions, changes due to transfers of management, changes made for presentation purposes, general accounting changes under generally accepted accounting principles (GAAP), and litigation settlements. As a general rule, we also excluded restatements resulting from accounting policy changes.[4] We excluded these financial statement restatements because they did not necessarily reveal previously undisclosed, economically meaningful data to market participants.

Consistent with our prior report, once a relevant restatement was identified, we classified it into one or more of nine categories—(1) acquisition and merger related, (2) cost- or expense related, (3) in-process research and development related, (4) reclassification related, (5) related-party transaction related, (6) restructuring, assets, or inventory related, (7) revenue recognition related, (8) securities related, and (9) other.[5] Our classification, as developed for our prior report, closely resembles that employed by the Financial Executives International and Wu (2001) and HCG (2002).

---

[4]We included restatement announcements that stemmed from the issuance of SEC clarification about revenue recognition (SEC Staff Accounting Bulletin No. 101) and accounting for leases (Feb. 5, 2005, letter from SEC's Chief Accountant to the American Institute of Certified Public Accountants clarifying SEC staff's interpretation of certain operating lease-related accounting issues and their application under GAAP).

[5]Some restatement announcements cited multiple accounting issues (for example, improper revenue recognition, improper recording of cost of goods sold, and improper valuation of inventory). In these cases, we included the restatement in all applicable categories, and in the analyses involving stratification by restatement reason, we assigned equal fractional weights to the reasons. For the above example, we would assign each reason (revenue, cost-or- expense, and restructuring, assets, or inventory) a weight of one-third when calculating the market capitalization loss.