1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 07-10416

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


NEW CENTURY TRS HOLDINGS, INC.,


          Debtor.


- - - - - - - - - - - - - - - - - - - -x




                824 Market Street

                Wilmington, Delaware


                April 24, 2007

                1:42 PM


B E F O R E:

HON. KEVIN J. CAREY

U.S. BANKRUPTCY JUDGE

2

1

2   A P P E A R A N C E S :

3   RICHARDS LAYTON & FINGER

4        Attorneys for Debtor and Debtors in Possession

5        One Rodney Square

6        9200 North King Street

7        Wilmington, DE 19899

8

9   BY:   MARK COLLINS, ESQ.

10        MARCOS RAMOS, ESQ.

11        CHRISTOPHER SAMIS, ESQ.

12

13

14  O'MELVENY & MYERS

15        Attorneys for Debtor

16        400 South Hope Street

17        Los Angeles, CA

18

19  BY:   BEN LOGAN, ESQ.

20

21

22

23

24

25

1

2  O'MELVENY & MYERS

3        Attorneys for Debtor

4        Embarcadero Center West

5        275 Battery Street

6        San Francisco, CA  94111

7

8

9  BY:  SUZZANNE S. UHLAND, ESQ.

10        (TELEPHONICALLY)

11

12

13  HAHN & HESSEN

14        Attorneys for the Committee

15        488 Madison Avenue

16        New York, NY 10022

17

18  BY:  MARK POWER, ESQ.

19

20

21

22

23

24

25

4

1

2    MONZACK & MONACO, P.A.

3          Attorneys for RBC

4          1201 North Orange Street

5          Wilmington, DE 19899

6

7    BY:   RACHEL B. MERSKY, ESQ.

8

9

10   LANDIS RATH & COBB

11         Attorneys for Stoney Point East

12         919 Market Street

13         Wilmington, DE 19801

14

15   BY:   MATT MCGUIRE, ESQ.

16

17

18   EDWARDS ANGELL PALMER & DODGE LLP

19         Attorneys for GMAC CF & Countrywide

20         919 North Market Street

21         Wilmington, DE 19801

22

23   BY:   WILLIAM CHIPMAN , ESQ.

24

25

5

1

2  STEVENS & LEE

3        Attorneys for Deferred Comp. Claimants

4        1105 North Market Street

5        Wilmington, DE 19801

6

7  BY:   JOSEPH H. HUSTON, ESQ.

8        JOSEPH GREY, ESQ.

9

10

11  LAW OFFICES OF PATRICK SCANLON, P.A.

12        Attorney for Canpro Investments

13        203 NE Front Street

14        Milford, DE 19963

15

16  BY:   PATRICK SCANLON, ESQ.

17

18

19  CAMPBELL & LEVINE

20        Attorneys for Citigroup Global Markets and Realty

21        800 North King Street

22        Wilmington, DE 19801

23

24  BY:   MARK T. HURFORD, ESQ.

25

6

1

2   US DEPARTMENT OF JUSTICE

3   OFFICE OF THE US TRUSTEE

4          844 King Street

5          Suite 2207

6          Wilmington, DE 19801

7

8   BY:   JOSEPH MCMAHON, ESQ.

9

10

11  BLANK ROME

12         Attorneys for the Committee

13         1201 Market Street

14         Wilmington, DE 19801

15

16  BY:   BONNIE FATELL, ESQ.

17

18

19  MUNSCH HARDT KOPF & HARR

20         Attorneys for Positive Software

21         3800 Lincoln Plaza

22         Dallas, TX 75201

23

24  BY:   MARK RALSTON, ESQ.

25

7

1

2   FOX ROTHSCHILD

3           Attorneys for Positive Software

4           919 North Market Street

5           Wilmington, DE 19801

6

7   BY:   ANTHONY SACCULLO, ESQ.

8

9

10  KAYE SCHOLER LLP

11          Attorneys for Bank of America

12          425 Park Avenue

13          New York, NY 10022

14

15  BY:   NICHOLAS CREMONA, ESQ.

16          (TELEPHONICALLY)

17

18  PAUL HASTINGS JANOFSKY & WALKER LLP

19          Attorneys for UBS Real Estate Securities, Inc.

20          Park Avenue Tower

21          75 East 55th Street

22          New York, NY  10022

23

24  BY:   KIMBERLY NEWMARCH, ESQ.

25          (TELEPHONICALLY)

8

1

2  BINGHAM MCCUTCHEN, LLP

3       Attorneys for Deutsche Bank

4       One State Street

5       Hartford, CT 06103

6

7  BY:   RICHARD AGINS, ESQ.

8       (TELEPHONICALLY)

9

10  MAYER BROWN ROWE & MAW, LLP

11       Attorneys for State Street Bank & Trust Co.

12       71 South Wacker Drive

13       Chicago, IL 60606

14

15  BY:   RICHARD G. ZIEGLER, ESQ.

16       (TELEPHONICALLY)

17

18

19  KIRKLAND & ELLIS

20       Attorneys for Greenwich Capital Financial Products, Inc.

21       777 South Figueroa Street

22       Los Angeles, CA 90017

23

24  BY:   SHIRLEY CHO, ESQ.

25       (TELEPHONICALLY)

9

1

2    GEBHARDT & SMITH

3         Attorneys for General Electric

4         901 Market Street

5         Wilmington, DE 19801

6

7    BY:   MICHAEL GALLERIZZO, ESQ.

8

9

10   NIXON PEABODY LLP

11        Attorneys for Deutsche Bank

12        100 Summer Street

13        Boston, MA 02110

14

15   BY:   MARK BERMAN, ESQ.

16

17

18   CLEARY GOTTLIEB STEEN & HAMILTON, LLP

19        Attorneys for Goldman Sachs Mortgage Company

20        One Liberty Plaza

21        New York, NY 10006

22

23   BY:   LISA SCHWEITZER, ESQ.

24

25

1

2   HEARING re Motion of the Debtors and Debtors in Possession for

3   Interim and Final Orders Pursuant to Section 366 of the

4   Bankruptcy Code (A) Prohibiting Utility Providers from

5   Altering, Refusing or Discontinuing Service, (B) Deeming

6   Utilities Adequately Assured of Future Performance, and (C)

7   Establishing Procedures for Determining Adequate of Payment.

8

9   HEARING re Motion of Debtors and Debtors in Possession for an

10  Order Granting Extension of Time to File Schedules and

11  Statements.

12

13  HEARING re Application of the Debtors and Debtors in Possession

14  for an Order Authorizing the Retention and Employment of

15  Richards, Layton & Finger, P.A. as Co-Counsel to the Debtors

16  Nunc Pro Tunc to the Petition Date Pursuant to Section 327(a)

17  of the Bankruptcy Code.

18

19  HEARING re Motion of the Debtors and Debtors in Possession for

20  an Order Providing that Creditors' Committees Are Not

21  Authorized or Required to Provide Access to Confidential

22  Information of the Debtors or to Privileged Information.

23

24  HEARING re Motion of the Debtors and Debtors in Possession for

25  Administrative Order Establishing Procedures for Interim

1  Compensation and Reimbursement of Expenses of Professionals.

2

3  HEARING re Application for an Order Authorizing the Employment

4  and Retention of Lazard Freres & Co. LLC as Financial Advisor

5  to the Debtors and Debtors-In-Possession.

6

7  HEARING re Application of the Debtors and Debtors in Possession

8  for an Order Authorizing the Retention and Employment of

9  O'Melveny & Myers LLP as Co-Counsel to the Debtors Pursuant to

10  Section 327(a) of the Bankruptcy Code.

11

12  HEARING re Motion of the Debtors and Debtors in Possession

13  Pursuant to Sections 105 and 363 of the Bankruptcy Code and

14  Bankruptcy Rules 2002 and 6004 for an Order Authorizing the

15  Access Sale and Granting Related Relief.

16

17  HEARING re Emergency Motion of Debtors and Debtors in

18  Possession for Interim and Final Orders Pursuant to 11 U.S.C.

19  Sections 105, 362, and 364 and Federal Rules of Bankruptcy

20  Procedure 2002, 4001 and 9014 (A) Approving Debtor-in-

21  Possession Financing with Administrative Expense Superpriority

22  and Secured by Liens, (B) Granting Liens and Superpriority

23  Administrative Claim, (C) Granting Other Relief and (D) Setting

24  Final Hearing.

25

1    HEARING re Motion of the Debtors and Debtors in Possession for

2    Entry of an Order Pursuant to Sections 365 and 554 of the

3    Bankruptcy Code (A) Authorizing and Approving the Rejection of

4    Certain Unexpired Leases of Nonresidential Real Property and

5    (B) Authorizing and Approving Procedures for the Rejection of

6    Executory Contracts and Unexpired Leases of Personal and Non-

7    Residential Real Property.

8

9    HEARING re Emergency Motion of Debtors and Debtors in

10   Possession for (I) an Order (A) Approving Bidding Procedures in

11   Connection with Auction of Loan Origination Platform Assets,

12   (B) Establishing Procedures Relating to the Assumption and

13   Assignment of Certain Executory Contracts and Unexpired Leases,

14   Including Notice of Proposed Cure Amounts, (C) Scheduling

15   Hearing to Consider Proposed Sale of Loan Origination Platforms

16   Assets and Approving Form and Manner of Notice Thereof and (D)

17   Granting Related Relief and (II) and Order (A) Approving the

18   Proposed Sale and (B) Granting Related Relief.

19

20

21

22

23

24   Transcribed by Penina Wolicki

25

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon, all.

3              MR. COLLINS:  Good afternoon, Your Honor.  Your

4     Honor, for the record, Mark Collins of Richards Layton & Finger

5     on behalf of the debtors.  Your Honor, we have a number of

6     matters on today's agenda.  If I could, I'd like to simply walk

7     through them as they are set forth in the agenda?

8              THE COURT:  Very well.

9              MR. COLLINS:  Your Honor, the first item on the

10    agenda is our final hearing on our 366 utility motion.  While

11    no objections have been filed to that motion, we have prepared

12    a final form of order which makes no material changes other

13    than converting it from the interim order into a final order.

14    And if I could hand up a black-line as well as a clean copy of

15    that order?

16             THE COURT:  Very well.  Does anyone else care to be

17    heard in connection with this motion?  I hear no response.

18             THE COURT:  The order has been signed.

19             MR. COLLINS:  Thank you, Your Honor.  Agenda item

20    number 2 is the debtor's motion from order granting the

21    extension time to file schedules and statements of financial

22    affairs.  Your Honor, we have been in contact with Mr. McMahon

23    regarding this matter.  We have agreed to extend that time

24    until May 31 without limitation to the debtor's right to seek

25    further extensions thereafter.

14

1          THE COURT:  Does anyone else care to be heard in

2     connection with this motion?  I hear no response.  I think

3     that's an appropriate resolution of the US Trustee's objection.

4          MR. COLLINS:  Thank you, Your Honor.  May I approach?

5          THE COURT:  Yes.  Thank you.  That order has been

6     signed.

7          MR. COLLINS:  Thank you, Your Honor.  Agenda item

8     number 3 is the debtor's application to retain Richards, Layton

9     & Finger.  Your Honor, we did receive informal comments from

10    United States Trustee which then caused us to file a

11    supplemental affidavit clarifying a number of items that were

12    raised by the US Trustee.  Has Your Honor had a chance to

13    review that supplemental affidavit?

14          THE COURT:  I have.  And there are three tabs, three

15    exhibit tabs attached, but there are only actually exhibits

16    behind tabs 1 and 3.  Exhibit 2 is not referenced in the

17    supplemental affidavit.  So it appears as if it might not be

18    missing anything, but because it was there I thought I'd at

19    least raise it and say is that right?

20          MR. COLLINS:  Your Honor, I will -- I don't have the

21    supplemental affidavit in front of me.  If I could -- have one

22    moment?  Your Honor, may I approach with Exhibit --

23          THE COURT:  Yeah.

24          MR. COLLINS:  -- 2?

25          THE COURT:  Thank you.  Okay.

1          MR. COLLINS:  Your Honor, that -- that -- the US

2     Trustee asked us to run a supplemental conflict check on all

3     parties that have executed confidentiality agreements in

4     connection with the potential transaction with the debtors.

5     Exhibit 1, I believe, lists all the current clients of those

6     entities, and Exhibit 2 are former clients related to those --

7     those executing parties.

8          THE COURT:  Very well.  Anyone else care to be heard

9     in connection with this application?  I hear no response.  I

10    have no questions.

11         MR. COLLINS:  Thank you, Your Honor.

12         THE COURT:  No other questions.  Thank you.  That

13    order's been signed.

14         MR. COLLINS:  Thank you.  Agenda item number 4, Your

15    Honor, is the debtor's motion for an order providing that the

16    creditors' committee are not authorized or required to provide

17    access to confidential information of the debtors or to provide

18    privileged information.  And, Your Honor, we did receive some

19    comments from the office of the United States Trustee, and we

20    have made some changes.  May -- may I approach with the black-

21    line of that order?

22         THE COURT:  Yes.

23         MR. COLLINS:  The material order that -- one of the

24    important changes is in paragraph 3 which now allows for

25    additional parties to obtain confidential information, provided

1    that the debtors consent to that request and that the creditor

2    executes an acceptable form of confidentiality agreement.

3              THE COURT:  I see that it directly addresses the two

4    grounds that the US Trustee had raised.

5              MR. COLLINS:  Yes, Your Honor.

6              THE COURT:  Is there anyone else who cares to be

7    heard in connection with this motion?  I hear no response.

8    That order has been signed.

9              MR. COLLINS:  Thank you, Your Honor.  Your Honor,

10   agenda item number 5 is the debtor's motion for administrative

11   order establishing procedures for interim compensation and

12   reimbursement.  Your Honor, I think the only change to this

13   form of order, and I'll hand it up in a moment, is adding the

14   creditors' committee's professionals as notice parties in

15   connection with this order.

16             THE COURT:  All right.  Does anyone else care to be

17   heard in connection with this motion?  I did.  Bring the order

18   up.

19             MR. COLLINS:  Okay.

20             THE COURT:  And that's to say that I think this is

21   probably the size of a case that warrants appointment of a P-

22   auditor.  So I'd like the parties to consult with each other

23   and give me no more than three names, let's say, within the

24   next week or so of who they recommend.  And it can be a joint

25   submission or it can be individual submissions.  Make sure I

1    get chambers copies.  And if you disagree, given the course of

2    the case that that's appropriate, let me know that too.

3              MR. COLLINS:  Okay.  When would you like those

4    submissions, Your Honor?

5              THE COURT:  Next week or so.

6              MR. COLLINS:  Okay.  Thank you, Your Honor.

7              MR. MCMAHON:  Your Honor, good afternoon, Joseph

8    McMahon.  Just to -- to be clear for the record, would that

9    consultation include consultation with our office?

10             THE COURT:  Yes.

11             MR. MCMAHON:  Thank you.

12             MR. COLLINS:  That's fine, Your Honor.

13             THE COURT:  I'm assuming that might even be the first

14   call, Mr. McMahon.

15             MR. COLLINS:  Your Honor, agenda item number 7 is the

16   application to retain O'Melveny & Myers.  Discussions are still

17   taking place with the office of the United States Trustee

18   asking some informal questions.  As a result, Your Honor, we'd

19   like to carry that matter to May 7th, and the US Trustee's

20   objection deadline will be continued to May 2nd, I believe.

21   Yes.

22             THE COURT:  Very well.

23             MR. COLLINS:  Your Honor, and that brings us to

24   agenda item number 8, and Mr. Logan of O'Melveny & Myers will

25   present that matter.

1          MR. LOGAN:  Thank you, Your Honor.  I'd like to give

2   just a little bit of background about the transaction and --

3   and the need for bringing it to the Court on an expedited basis

4   and the importance to the estate of the transaction even though

5   it is a sale by a non-debtor entity.  And then advise the Court

6   of a number of resolutions to deal with some objections, and,

7   quite frankly, some changes to the economics of the deal which

8   are beneficial to the estate that our friends of the creditors'

9   committee were able to negotiate with the buyer, which I'll

10  turn over to creditors' committee counsel to describe, and then

11  finally deal with the -- with what may be a handful of

12  remaining objections, largely which I think don't relate to

13  this particular transaction, but to other issues that may be

14  before the Court at another time.

15          To begin with, this is a transaction that involves a

16  non-debtor's subsidiary of the debtors.  One of the debtors,

17  New Century TRS Holdings, is the one hundred percent

18  shareholder of a company known as New Century Warehouse

19  Corporation.  It's also known as Access Lending.  New Century

20  acquired Access Lending through an asset purchase agreement

21  that was consummated in February 2006.  The entity that's

22  commonly called Access Lending is a bit of a niche player.

23  It's a smaller enterprise based in Sugarland, Texas.  It itself

24  provides warehouse financing to a network of smaller brokers,

25  brokers that -- and one of the originators which deal with

19

1  consumers, so Access Lending loans money to its customers

2  pursuant to repurchase agreements and in turn finances that

3  historically through three warehouse loan facilities Access

4  Lending had itself, all of which predated the acquisition by

5  New Century.  Those were with Goldman Sachs, State Street Bank

6  and certain of its affiliates, and with Guaranty Bank.

7           That entity has transactions with its customers

8  pursuant to which Access Lending provides financing typically

9  with a commitment, or at least an identification, of who will

10  take out that warehouse loan, who will take out the basic

11  underlying loan.  And typically it included, in a very large

12  number of cases, New Century.  New Century had transactions

13  with this entity where many of the loans that were originated

14  by Access Lending were ultimately going to be taken out by New

15  Century Mortgage Corporation.  And the agreements with the

16  customers, with Access Lending's customers, typically

17  identified a goodly number of those as being subject to being

18  taken out by New Century Mortgage Corporation.  Well, lo and

19  behold, when New Century Mortgage Corporation's financial

20  problems came upon it and it stopped originating loans, it was

21  not able to perform under those facilities, and it stopped

22  taking out the loans that had been identified for Access

23  Lending.

24           New Century Mortgage Corporation's financial problems

25  also triggered cross-defaults under each of the warehouse loan

1    facilities that Access Lending had.  One of those warehouse

2    lenders, Goldman Sachs, proceeded to exercise remedies.

3    Goldman Sachs purported to take the loans that it had financed

4    and give Access Lending credit for those loans based upon what

5    it determined to be the fair market value of those loans, which

6    happened to exceed, by about a million and a half dollars, the

7    amounts that were owed -- that were owed to Goldman Sachs under

8    its warehouse loan facility.  That balance, which under a

9    normal scenario might have been paid back to Access Lending,

10   Goldman Sachs credited instead against obligations by New

11   Century Capital Corporation on account of some loans -- other

12   loans that Goldman Sachs had purchased.

13            And as a result, as far as Access Lending was

14   concerned, Goldman Sachs was essentially out of the picture.

15   We may have issues with Goldman Sachs down the road, but for

16   present purposes, which to our view is quite strongly that that

17   is an interesting historic backdrop but has nothing whatsoever

18   to do with the transaction before the Court today.

19            Two of the other warehouse -- the other two warehouse

20   lenders, Guaranty Bank and State Street, were willing to stand

21   behind Access Lending.  But on a very short-term basis.

22   Representatives from Guaranty Bank are here, and I believe

23   representatives from State Street are on the phone.  They gave

24   Access Lending short-term forbearances.  At the time we filed

25   the motion, the short-term forbearance was going to expire on

1   April 23.  They've been persuaded to extend that so at least we

2   could get to today's hearing, but they've been very clear that

3   unless something happens, and happens quickly, they feel

4   compelled to exercise their remedies and to start to foreclose

5   on the loans which are either their collateral or their

6   property, depending upon one's view of how a repurchase

7   facility works.

8              Meanwhile, Access Lending has been struggling to keep

9   its workforce together.  It's a very chaotic time for them.

10  They've been struggling to keep their customer relations

11  together.  One thing -- that's very important.  One thing I

12  mentioned, that I want to come back to -- I mentioned earlier

13  that I want to come back to.  Access Lending's relations with

14  its customers typically provided that the loans that Access

15  Lending was financing or purchasing were going to be taken out

16  by some identified investors, a large portion of which was New

17  Century Mortgage Corporation.  That's not happening.  And as a

18  result, Access Lending's ability to hold its customer base

19  together and to hold its customers to their obligations to make

20  up any shortfall that results in these loans because of

21  consumers defaulting, that relationship is tenuous and has to

22  be maintained from the debtor's perspective through a going

23  concern arrangement involving this company.

24             Before the debtors filed the petition, the debtors

25  explored various ways to deal with Access Lending.  That

1    included extensive marketing of the company through Lazard, and

2    through the debtor's own efforts and through Access Lending's

3    own efforts.  Sixteen potential investors were contacted.  We

4    have in the court, and we'll get to it in a proffer later, Mr.

5    Meola, who's an executive vice president of New Century and who

6    can testify about that effort.  The long and short of it is

7    despite good faith substantial efforts to identify a buyer for

8    this business as a going concern, it didn't produce anything.

9    There were two potential buyers that expressed some interest,

10   National Century, if I remember correctly, being the one that

11   was most substantial or mo -- had the greatest interest, but

12   ultimately they took a pass.

13           And the debtor was faced with a situation where it

14   either would try to orchestrate the best possible liquidation

15   it could for this company or try to negotiate maintaining it as

16   a going concern which would involve some sort of transaction

17   with Mr. Fleig, who is the CEO and the chairman of Access

18   Lending and the person who is the founder, the principal of the

19   company that the debtors had bought in February of 2006.  The

20   debtors analyzed the liquidation value that they thought they

21   could realize from just liquidating this company in the most

22   orderly fashion possible.  I will get into the details when we

23   turn to the proffer, but the long and short of it is that

24   ranged from zero, with a possibility that it might be less than

25   zero, because the two warehouse lenders have guarantees from

23

1   New Century Financial Corporation, the ultimate parent, so

2   ranging from zero or perhaps less than zero to up to about

3   three and a half million dollars.

4           And as a result, on a very expedited basis, Mr.

5   Meola, on behalf of the debtors, with assistance from

6   professionals and financial advisors and the like, negotiated

7   extensively with Mr. Fleig over a possible transaction.  The

8   transaction has been approved based upon the efforts of the

9   creditors' committee, but as we file -- at the time we filed

10  the motion it basically contemplated that about $75,000 in cash

11  would be paid at the closing, but most of the consideration

12  would come in the form of maintaining this entity as a going

13  concern, and having sixty percent of the amounts realized for

14  the benefit of the, let's see how I phrase this properly, the

15  value over and above what was owed to State Street and to -- to

16  Guaranty Bank.  Sixty percent of that equity, if you will, on

17  the loans, would be paid to the debtors and to incentivize the

18  new company, the buyer, to maximize that amount;  forty percent

19  would be available for the buyer.

20          The debtors anticipate that about six and a half

21  million dollars should be realized through that arrangement.

22  No assurances, but approximately six and a half million

23  dollars.  The debtors compare that to a likely liquidation

24  scenario of zero, and, quite frankly, the debtors believe zero

25  is the more likely, up to a best case of about three and a half

1    million dollars, and concluded that this transaction was fair

2    and the best likely result for the estates.

3              The creditors' committee worked with us, has worked

4    with us very closely.  We did bring this on an expedited basis,

5    and we apologize for bringing yet another thing on an expedited

6    basis, but this is a company that unless we do something

7    quickly, we are firmly convinced the going concern value will

8    disappear.  The creditors' committee worked with us to probe

9    that premise.  They worked with us to probe the economics of

10   the transaction.  We provided to the committee a very

11   substantial body of information about -- about this particular

12   transaction and about Access Lending and its financials, and as

13   a result, they did ask for some improvements in the

14   transaction.  They include having the buyer assume

15   responsibility for essentially all normal working capital

16   liabilities, whether they accrued pre or post to closing.  That

17   includes employee vacation pay or wages, that is to the extent

18   that the company that's left, Access Lending, New Century

19   Warehouse Corporation does not have the wherewithal to pay it.

20   We made very clear that the buyer is not getting any

21   appreciable cash, certainly no proceeds related to any of the

22   transactions involving Goldman Sachs or -- or IXIS Bank, that

23   I'll return to later when we turn to the objections, none of

24   that is going.  None of those loans, none of the proceeds of

25   those loans are being transferred in this transaction.  And

1    perhaps most importantly, the creditors' committee was able to

2    change one of the things I mentioned, which was that the way

3    the debtors had negotiated the deal there was no guarantee that

4    any amount would come in on that sixty percent.  They, in fact,

5    did negotiate for a floor of four and a half million dollars

6    and have secured that.  And I probably, at this point, should

7    relinquish the podium to Mr. Power, who can elaborate on the

8    various changes that were negotiated by the creditors'

9    committee.

10             MR. POWER:  Thank you, Your Honor.  Mark Power from

11   Hahn & Hessen, counsel to committee.  Your Honor, Mr. Logan has

12   correctly described, I think, the process we've gone through to

13   try to assure the Court and the creditors that this is a sale

14   that's in the best interests of this estate.  We basically have

15   spent a fair amount of time and have looked at a lot of

16   information.  And basically, Your Honor, the committee is -- is

17   as follows.  With respect to the issue regarding the marketing

18   of the business, we've just simply asked debtor's counsel to

19   present on the record evidence that it is properly marketed, so

20   that that issue is satisfied.  With respect to the issue of

21   insuring the creditors in this Court that we think this is

22   really maximizing value here, and in no event less than the

23   liquidation value, what we've insisted, and we've put in our

24   objection yesterday, and what we've been negotiating with Mr.

25   Fleig and the buyer as of just a little while ago, was a floor.

1     And I think counsel correctly put it at $4.5 million.

2          We basically had analyzed what -- from -- the

3     financial advisors of the committee analyzed what we thought we

4     reasonably could expect to get on a liquidation basis.  And

5     there's a lot of give and take, as Your Honor might expect,

6     understanding that this company not only has assets to

7     liquidate but also debts to pay, including employees, including

8     severance, including leases, including expenses of the banks.

9     But based on our analysis, we think a $4.5 million floor is

10    very reasonable.  We thank the buyer for negotiating in good

11    faith with us to reach that number.  And we think that number

12    assures the creditors and the Court that -- that basically this

13    business is being transferred with an assurance that we'll get

14    not less than liquidation.

15          We've agreed also, as a second term of that, that the

16    obligation to pay that minimum 4.5 million will be secured by a

17    security interest in the buyer -- in the owner's stock of the

18    buyer.  In other words, so that the owner would lose his

19    business that we're basically selling to him if he can't get us

20    that mara -- guaranteed minimum amount.  But if he gets it,

21    then we've established ourselves that we've gotten the best we

22    could under these circumstances.

23          I think, Your Honor, with respect to the emergency

24    nature of this business, the committee agrees with the debtor

25    and the debtor's business judgment that this, like the other

1   cases, Your Honor, seem, including this case, if you shut off

2   the pipeline of these mortgage loans with the brokers and the

3   people who are out there trying to get their home financed or

4   refinanced, you in essence kill the relationships that exist in

5   that going business.  And I think the committee and the debtor

6   both agree that that pipeline has to be maintained.  What's

7   happened here is the two warehouse lenders, particularly

8   Guaranty, is continuing on a day-to-day basis, funding those

9   loans on an application by application basis.  Even though

10  the -- in essence the guarantee from New Century is now in

11  question since we're in bankruptcy.  And they've done that

12  basically to try to preserve the status quo, keep the business

13  in place, and basically forbeared from exercising their rights

14  like Goldman did.  And I think from our -- from the committee's

15  point of view or from the debtor's point of view, that has

16  basically helped maintain this business to try to preserve

17  whatever value's there.

18          The alternative is basically to shut off the

19  pipeline, to have a number of angry customers, basically the

20  lenders would seek probably to foreclose on the collateral, and

21  then we would have arguments later, maybe litigation about

22  whether fair value was obtained for the loans and whether there

23  was equity in those loans.  That is our one scenario, or the

24  sale is the other.  And I think the committee, after viewing

25  the debtor and getting the information, believes that the

1    business judgment of the debtor is correct in that analysis;

2    that this transaction makes sense for the estate based on that

3    analysis and with these additional assurances.

4         Your Honor, we did negotiate, or as the buyer might

5    say, re-traded a number of the issues on the asset purchase

6    agreement regarding the buyer's agreement to pick up what we

7    call PTO, pay time off vacation pay, basically roll that over

8    into the new entity.  Basically, Mr. Fleig himself has agreed

9    that he will not be compensated out of the debtor's assets for

10   any accrued payroll that he's owed as of the closing date, so

11   he's basically ready to for -- waive that.  We've also agreed

12   to get releases from the employees to make sure that they don't

13   have residual claims against the estate so that when we think

14   we're done with those claims, we know we're done.

15        Lastly, Your Honor, we -- we're trying to tweak and

16   define the definitions of some of the assets to make sure that

17   the types of claims that we want to make sure stay with the

18   estate and the subsidiary are not being sold.  Particularly if

19   there's claims against, for example, Goldman Sachs or other

20   parties.  We preserve those rights.  And I think the parties

21   generally agree to the concepts.  And with those changes, the

22   committee supports the sale and would ask Your Honor to

23   approve, basically the debtor approving the sale, of the whole

24   non-debtor's subsidiary.

25        THE COURT:  And how about finalizing the document?

1    Has that been done or -- what -- how long --

2            MR. POWER:  No, Your Honor.  Literally an hour ago we

3    were still negotiating.  What we were going to propose is give

4    us a day or so to work -- rework the documents, finalize them,

5    get everything done, and then we would submit it for

6    certification of counsel, assuming Your Honor is on board after

7    today's hearing, a form of order with an asset purchase

8    agreement and final documents.  I think it's fair to say the

9    banks are day to day watching the progress and we promised that

10   we'll get this done as soon as we can, within a few days.

11           THE COURT:  Now, I'll hear from the objectors at some

12   point, but there is a threshold issue which, as you imagine,

13   I'm sure is of concern to the Court, and that is the

14   jurisdictional arguments that have been made, and specifically

15   that the bankruptcy court doesn't have authority to approve a

16   transaction between two non-debtors.

17           MR. LOGAN:  Your Honor, let me address that.  And

18   there is a form of order that I think that addresses, that

19   pulls out an awful lot, or essentially everything that the

20   parties complained about along -- along those lines.  The

21   objections were essentially that the debtor, as the sole

22   shareholder, New Century Warehouse Corporation, DBA, Access

23   Lending, can vote as a shareholder to approve the transaction,

24   and, indeed, that's undoubtedly necessary as a matter of

25   corporate law.  But the debtor, since the debtor is not the

1    owner of the access -- of the assets, cannot conduct a sale

2    under 363 that's free and clear of liens, and we can't get the

3    363(m)-type protection wiped.  We agree with that.  We do think

4    that it's a transaction under 363 because 363 governs the sale

5    or use of property, and here it's the use of the stock of New

6    Century Warehouse Corporation.  The debtors are voting the

7    stock to make that -- that occur.  But the provisions of the

8    order that drew fire have been deleted, the provisions about

9    how the Court's making findings under 363 are -- is free and

10   clear of 363(m), they're stricken, and there'll be a form of

11   order that deals with that and some of the Goldman/Deutsche

12   Bank issues that I want to turn to in a second also that --

13   that I hope will resolve all those issues.  Because, quite

14   frankly, I -- we agree.  We agree with the contention.  But I

15   think everybody's in agreement that it's appropriate for the

16   Court to pass on the transaction because after all, the debtors

17   are exercising business judgment in concluding that this is a

18   transaction as shareholders that they should vote in favor of,

19   and they will only do that if they think it's a fair reasonable

20   transaction that maximizes value for the debtor's estates.  And

21   so, therefore, we think it is appropriate to bring it before

22   the Court, not worded up with some of the 363 language that was

23   in the original proposed order.

24            Your Honor, that probably gets me then to the

25   proffer.  And I'd like to go through that now if that's

1    appropriate, if that's agreeable to the Court.

2            THE COURT:  Go ahead.

3            MR. LOGAN:  In the courtroom is Mr. Anthony T. Meola,

4    M-E-O-L-A.  If called to testify, Mr. Meola would testify that

5    he had joined New Century in May of 2006 as the executive vice

6    president for production.  That's the role he serves in today.

7    His responsibilities include Access Lending.  Mr. Fleig, as the

8    chairman and CEO of Access Lending, reports to Mr. Meola.

9    Fortunately for Mr. Meola, that's not his only responsibility.

10   Mr. Meola is in charge of the basic production operation for

11   the debtors.

12           Among Mr. Meola's more recent responsibilities has

13   been trying to figure out what to do with Access Lending.  So

14   he has personally been involved in the transaction we're

15   talking about and can testify from firsthand knowledge.  Prior

16   to joining New Century, Mr. Meola would testify that he was the

17   executive vice president of mortgage banking production for

18   Washington Mutual's consumer group.  And that was part of a

19   nineteen year prior history in the mortgage banking business in

20   which he served in various senior positions.  I believe a lot

21   of this was put on the record about a week ago, and I'll --

22   quite frankly, I'll try to shorten up a bit.  He has very

23   substantial -- he would testify to various substantial

24   experience in the mortgage banking industry.

25           He would testify that prior to the commencement of

1    the bankruptcy case, as the debtors were trying to figure out

2    what to do with Access Lending, they aggressively tried to

3    market the company as a going concern, and asked the debtor's

4    investment bankers of Lazard to contact interested buyers.  He

5    would testify that that effort involved contacting sixteen

6    different entities, including National City Corporation, the

7    Winter Group, Option One, Credit Suisse, Deutsche Bank

8    Securities, Merrill Lynch, Morgan Stanley, Impact, Lone Star

9    Funds, Laminar Capital, Main Street Capital, Capital Point

10   Partners, Milestone Merchant Partners, American Capital

11   Strategies, Fortress, and Aladdin Capital.

12            He would testify that none of these entities was

13   going to make an offer.  Two of them expressed some interest,

14   National City Corporation and the Winter Group.  But after

15   doing diligence and looking at the transaction, they passed.

16   They passed.  They declined to make an offer.  Given that

17   situation, Mr. Meola would testify that the debtors analyzed

18   their alternatives as basically two.  Either liquidate the

19   company and try to do it in the most orderly fashion possible

20   in an effort to try to maximize value for the estates, or try

21   to negotiate a going concern transaction which reserved going

22   concern value and which inevitably would require some sort of

23   transaction with existing management and the prior owners of

24   Access Lending.

25            He would testify that as the debtors assessed the

33

1   liquidation value, they realized that approximately ten to

2   $11,000,000 was the maximum amount of equity in the loans over

3   and above what was owed to State Street and to Guaranty Bank.

4   He would testify that the debtors assessed the prospects of

5   realizing that as suspect, that if in fact a liquidation was

6   commenced it's highly likely that, without any admissions, but

7   it would be highly likely that State Street and Guaranty would

8   take the position that they're repurchase participants and not

9   bound of the automatic stay, even if we filed for Access

10   Lending, and therefore free to liquidate their loans.

11          And he would testify based on his experience, if that

12   was the situation, it is likely, not certain, but likely that

13   the estates would realize no value from the assets of Access

14   Lending.  And it's indeed possible that those two entities

15   would assert guarantee claims for deficiencies against New

16   Century Financial Corporation, for their loans are guaranteed

17   by New Century Financial Corporation.

18          He would testify that a better case, perhaps not as

19   realistic, but a better case would be that some sort of orderly

20   liquidation of these loans could perhaps be negotiated with

21   State Street and Guaranty Bank, but if that occurred and the

22   transaction -- the liquidation transpired, it's extremely

23   likely that the customers of Access Lending would assert that

24   they are not obligated to make up the likely shortfall on these

25   loans which will result from consumer defaults.  And that

34

1    number is approximately $5.9 million .  He would testify that

2    approximately 4,000,000 of that, indeed, is identifiable and

3    traceable to loans that New Century Mortgage Corporation had

4    identified as loans that they were going to take out but did

5    not take out.  And, again, without any admission, Mr. Meola

6    would testify that one has to realistically assess that the

7    customers of Access Lending would assert defenses based upon

8    New Century Mortgage Corporation's failure to take out those

9    loans.  And, accordingly, from the approximately 10 or

10   $11,000,000 to start with, on best case realizable proceeds one

11   should subtract about $5.9 million, anywhere down to about 4 to

12   $5,000,000 of proceeds before one starts deducting cost.

13           He would testify that as one started to deduct cost,

14   even assuming an Access Lending bankruptcy case, one would need

15   to subtract attorneys' fees, obviously, in trying to pursue

16   some of the loan collections.  One would need to subtract the

17   amount that would be owed on a lease rejection claim, capped

18   under section 502, but a lease rejection claim owed to the

19   landlord of the facility, a lease claim that, by the way, is

20   guaranteed by New Century Mortgage Corporation.  But that

21   amount would equal approximately $142,000 under the 502 cap.

22           He would testify that even under the 502 cap Mr.

23   Fleig would have an employment claim of approximately $617,000

24   under his employment agreement, and he would testify that after

25   one went through all of this analysis the estate would

1  conclude -- he would include, the debtors concluded that a best

2  case, absolutely best case scenario for an orderly liquidation

3  would be approximately three and a half million dollars.  But

4  again, he would underscore that that's a best case situation,

5  and a situation that assumes that the sun shines and things

6  work out well with State Street and Guaranty Bank, and that a

7  more likely scenario would be substantially less than that.

8          He would conclude by testifying that based upon all

9  of the factors above, the debtors believe that a transaction,

10  certainly one with the four and a half million dollar guarantee

11  that was negotiated by the creditors' committee, is a

12  preferable outcome.  It's better than a liquidation scenario.

13  It maintains going concern value and realizes for the estates a

14  substantial portion of that going concern value far in excess

15  of what would likely be realized if this company was liquidated

16  on an orderly basis, and substantially in excess of what would

17  be realized if it was liquidated on a more of a fire-sale basis

18  or secured remedy -- secured lender remedy basis, foreclosure

19  basis.  That's the end of the proffering.

20          THE COURT:  Anyone like to examine Mr. Meola?

21          MR. POWER:  Yes.  I have a few questions.

22          THE COURT:  Very well.

23      (Witness is duly sworn)

24          THE CLERK:  Please state your full name for the

25  record.

36

1        THE WITNESS: Anthony T. Meola, M-E-O-L-A.

2    DIRECT EXAMINATION BY

3    MR. POWER:

4    Q.    Thank you.  Mr. Meola, I have a couple of questions about

5    the Access Lending transaction.  First of all, were you the

6    party -- the principal person on behalf of the debtor who

7    negotiated the terms of this deal?

8    A.    Yes, I was.

9    Q.    And are you satisfied that this deal represents the best

10   interests of the estate to prove it?

11   A.    Yes, I was.

12   Q.    To your knowledge, does any officer of the debtor have a

13   ownership interest with the buyer?

14   A.    Could you repeat that, please?

15   Q.    Does any -- to your knowledge, does any officer, current

16   officer of the debtor or former officer, have an ownership

17   interest in the buyer under Access Lending transaction?

18   A.    Officer of New Century?

19   Q.    Yes.

20   A.    David Fleig.

21   Q.    The individual you're selling to.  Does any other officer

22   of New Century have an ownership interest, to your knowledge?

23   A.    Not to my knowledge, no.

24   Q.    Does any director of the debtor have an ownership interest

25   in the buyer, to your knowledge?

1    A.    No, not to my knowledge.

2    Q.    To your knowledge, is there any insider currently with New

3    Century, besides Mr. Fleig, who's going with the buyer, have an

4    interest at all in this transaction, personally?

5    A.    No, sir.

6              MR. POWER:  That's all, Your Honor.

7              THE COURT:  Anyone else care to examine Mr. Meola?  I

8    hear no response.  Is there any redirect?

9              MR. LOGAN:  No, those were good questions, Your

10   Honor.

11             THE COURT:  All right.  Thank you, sir.  You may step

12   down.

13             THE WITNESS:  Thank you, Your Honor.

14             MR. LOGAN:  And, Your Honor, that then brings me to

15   the objections that were filed by -- by Deutsche Bank and

16   Goldman.  I think that I've at least dealt with the others that

17   were -- seemed to be universal about 363.  As I mentioned

18   earlier, Goldman did provide warehouse financing to New Century

19   Warehouse Corporation/Access Lending.  It terminated that

20   relationship when we petitioned, and purported to take

21   ownership, I guess, really take ownership of the loans that had

22   either been pledged or sold to it before and give a credit to

23   New Century.  One of those loans is a transaction that Deutsche

24   Bank complains about, and it's a -- involves a sale to NETIXIS

25   Bank or IXIS Bank as people tend to call it.  There is some

1  confusion and some issues and, quite frankly, a number of

2  issues between the debtors and Deutsche Bank involving not only

3  that transaction but a variety of other transactions.  For

4  today's purposes, I think the simple answer is that none of

5  what we are doing today affects any of that.

6          The proceeds of the transactions in question are not

7  being sold to the buyer.  We are not selling to the buyer any

8  of the loans that Goldman financed or that IXIS thinks it

9  bought, or that Goldman thinks it didn't buy, or that Deutsche

10 Bank thinks somebody bought but didn't get the money.  All of

11 those proceeds were commingled in Access Lending.  They have

12 been segregated out from this sale.  The debtors are holding

13 them as they were commingled.  And, quite frankly, that is a

14 topic for another day.  We have reached out to Deutsche Bank to

15 try to resolve that, and some other various serious issues that

16 affect New Century, where New Century thinks that it has some

17 claims against Deutsche Bank.  I don't want to get into those.

18 If counsel forces me to I will, but I really don't think that

19 those are relevant today -- for today's hearing, and as the

20 red-line to order will indicate, we're making it crystal clear

21 that the assets being sold to the buyer in this proposed

22 transaction don't include any proceeds of those trans -- those

23 loans, do not include any of the loans, and all of those issues

24 are    for -- for another day.

25          THE COURT:  All right.  Does anyone else care to be

1    heard?

2            MR. BERMAN:  Good afternoon, Your Honor.  Mark Berman

3    from Nixon Peabody here on behalf of Deutsche Bank National

4    Trust Company, here in its capacity as custodian with regard to

5    the Goldman Sachs warehouse facility.  I have an objection on

6    file.  As Mr. Logan stated, we have talked about resolving our

7    issues.  He has told me that the revised form of asset purchase

8    agreement and revised form of order will accommodate many of

9    the issues we have about the underlying transaction.  Because I

10   have not seen the asset purchase agreement yet, I can't speak

11   to those resolutions.  Essentially, what I'm trying to do is to

12   make sure that certain assets are not transferred.  I've been

13   told that those assets will not be transferred, and if I can

14   confirm that with the document, I will be satisfied in that

15   regard.

16           The second portion of our problem is the extent of

17   the Court's jurisdiction, and with regard to that I have

18   examined the form of revised order that has not yet been

19   submitted.  I should tell you that I do have problems with it

20   because I believe it goes beyond the Court being asked to

21   approve the debtor exercising its rights as the sole

22   stockholder of the non-debtor whose transaction is being

23   analyzed.  And therefore I would -- I can go into the problems

24   with the revised form of order now, I can deal with those in a

25   break if you would rather, or because they've said that -- the

1   debtor and the creditors' committee have said that they expect

2   to present you a form of order with a certification of counsel

3   in the next few days, I can deal with it in the next few days

4   with them, whatever is your pleasure.

5            THE COURT:  Well, provided it's not going to cause an

6   undue delay in today's proceedings, and assuming for the moment

7   that the issues you have are resolvable --

8            MR. BERMAN:  Yes.

9            THE COURT:  -- I'd just as soon, while you're here --

10   while everyone's here, to have you try to resolve them.

11            MR. BERMAN:  Happy to do that, Your Honor.

12            THE COURT:  Assuming, again, they can be addressed in

13   a reasonably short period of time.  All right.  Thank you.

14            MR. BERMAN:  You're welcome.

15            MS. SCHWEITZER:  Good afternoon, Your Honor.  I'm

16   Lisa Schweitzer from Cleary Gottlieb Steen & Hamilton, LLP for

17   Goldman Sachs Mortgage Company.  I -- it's funny to come before

18   the Court and talk about everything that everyone is telling me

19   is not before the Court today.  So I think it's worth taking

20   one second to agree and disagree with things that have been

21   said up to now.  As set forth in our -- Goldman Sachs'

22   objection, Goldman Sachs does disagree with certain of the

23   debtor's characterizations regarding the repurchase agreement,

24   the closeout, the repurchase agreement with Warehouse.  That

25   said, Goldman Sachs does agree with debtor's counsel that

1   that's not before the Court today because that's a transaction

2   with a non-debtor and that's not what the debtors are seeking

3   relief for as a determination with anything -- with respect to

4   those underlying transactions.  So to that extent, I think that

5   we all agree we're here to consider on the merits what the

6   debtor can get approved with respect to the Access sale.

7           That said, I -- it's a little bit troubling to

8   Goldman Sachs that even as of this time, we're getting

9   inconsistent, and certainly incomplete information from, I'll

10  say debtor's counsel, which is also New Century Warehouse's

11  counsel, because I'm not sure what hat I'm getting that

12  information from, regarding the -- it's sixteen, now probably

13  down to fourteen, loans that Goldman has in dispute.  Debtor's

14  counsel just again made a rec -- presentation that -- that

15  proceeds of the Goldman loans or the NETIXIS loans are not

16  being sold and the proceeds were commingled at different

17  points.  I think that the debtors are completing different

18  dockets of loans that are in dispute, and I don't want to go

19  into the details of tha, other than to let the Court know that

20  we've made several requests for this information to O'Melveny &

21  Myers, you know, as counsel for Warehouse, and haven't gotten

22  information.  So therefore Goldman Sachs, to this time, cannot

23  confirm, and we have to rely on Warehouse's representation that

24  its loans -- Goldman Sachs' loans are not being affected by

25  this transaction, and Goldman -- the proceeds, to the extent

1    that those loans were sale -- sold, even though they shouldn't

2    have been sold, the proceeds are not being transferred in this

3    transaction.  We're not asking Your Honor for rulings on that,

4    but I just want to make the record clear that we've been given

5    incomplete and inconsistent information.  We again set forth

6    all the information that we wanted in our mo -- in our

7    objection, and we're going to -- we reserve all our rights, but

8    we would req -- again request in this forum, if for no other

9    better place, that we would certainly like better information

10   to the extent we can get it from Warehouse's counsel.

11              Third, I think that there's still, as with Deutsche

12   Bank, there's still disputes regarding the form of order that

13   the debtors are proposing, and we can go into those in more

14   detail.  But to give the 30,000 foot perspective of what the

15   dispute is, is the debtors are asking for findings that would

16   go to the benefit of Warehouse, or the purchaser, that are not

17   necessary or within this Court's jurisdiction to make.  And I

18   think Mr. Logan said exactly what he said is what they're

19   seeking for, is exactly what the motion sh -- or the proposed

20   order should state, which is that the debtors determined that

21   the transaction is fair and the best likely result for the

22   debtor's estate from the debtor's perspective.  I don't, you

23   know, that's not something that we're agreeing with or

24   disagreeing with, but that what the Court has jurisdiction to

25   order.  The proposed order is -- still contains findings and --

1    just findings that go beyond that as far as approving the sale,

2    as opposed to the debtor's willingness to enter into the sale;

3    regarding the fair price being given for the sale; regarding

4    certain notice provisions and people's -- that the nego -- that

5    the transactions were arm's length, good faith, no collusion,

6    the typical 363 type language.  We're happy to work through

7    these issues with the debtor's counsel and Warehouse's counsel

8    and narrow the order, but I disagree with Mr. Logan's statement

9    that they are no longer seeking 363 type relief and 363 type

10   protections in the order.

11            THE COURT:  Well, after having read the objections,

12   and I'll hear yet from anyone else who wants to be heard, and

13   considering the jurisdictional issue, it seems to me if there's

14   jurisdiction here it's predicated upon the assumption that the

15   debtor, in whatever form, is undertaking a sale outside of the

16   ordinary course of business, and arguably quite properly has

17   sought Court approval for that.  And if that's -- if that's

18   true, then it seems to me a condition of the Court's approval

19   has to be the Abbots findings, which include good faith and

20   adequate price at a minimum.  Now, whether bells and whistles

21   beyond that ought to be included in the order I know has been

22   the subject of some discussion.  And debtor's counsel's

23   indicated a lot of the bells and whistles have come out.  I

24   haven't seen a form -- I haven't seen a redone form of order.

25   It may be that more bells and whistles need to come out.  All

44

1    right.  Let me hear from others.

2              MS. SCHWEITZER:  Your -- could I address that point

3    for --

4              THE COURT:  Sure.

5              MS. SCHWEITZER:  I would respectfully disagree with

6    your conclusion as to the basis for what the debtors are

7    seeking relief for from the Court.  The debtors, in their

8    motion, concede that they are not seeking the sale of debtor

9    property.  They concede this is non-debtor property.  The

10   363(b) standards talk about selling property of the estate.

11   What I would posit, Your Honor, is that the debtors are seeking

12   approval from the Court to -- to use their property in a non-

13   ordinary course way, and they call this a comfort order.  And

14   the use of their property is the exercise of their discretion

15   as shareholders of a non-debtor corporation to authorize that

16   non-debtor corporation to dispose of its non-debtor assets in a

17   specific manner.  And that the finding should be as the debtors

18   themselves proposed in the motion.  And the motion facially

19   doesn't seek this expanded relief.  The motion says that the

20   debtors, in their exercise of their own sound business

21   judgment, think that they should approve their subsidiary

22   entering into this order -- into this transaction.  I think

23   that isn't in dispute by anyone in the courtroom.  I think it's

24   that -- to go to the Abbots finding is a 363 sale of debtor

25   assets.  And I think that's where we would make the

1    distinction.

2            THE COURT:  I understand the distinction.  I'm not

3    sure that in substance it makes a difference.  Not that

4    jurisdictional issues should be mushed.  All right.  Thank you.

5    Let me hear from anyone else --

6            MS. SCHWEITZER:  Thank you.

7            THE COURT:  -- who cares to be heard before I go back

8    to the debtor.

9            MR. MCMAHON:  Your Honor, good afternoon.  Joe

10   McMahon for the United States Trustee.  I'm not going to

11   belabor the point, Your Honor.  We still have a -- what we call

12   scope issues with respect to the proposed form of order,

13   consistent with what -- the comments of prior counsel.  We'll

14   make an effort to try to get those pinned down during a break

15   or some other time.

16           THE COURT:  Okay.  Thank you.

17           MR. LOGAN:  Your Honor, I respectfully agree with

18   Your Honor on the findings and the appropriateness of those.  I

19   think as the debtors -- I wouldn't call it a comfort order.  As

20   the debtors use their property, the stock of New Century

21   Warehouse Corporation, that's appropriate if, in fact, the

22   transaction is a fair transaction at a fair price for the

23   estates. And after all, the estates are the stakeholders here

24   and if there's no collusion.  So I think it absolutely

25   appropriate that that finding be there.  Maybe the right course

46

1    I have given to opposing counsel -- to counsel for Goldman and

2    for Deutsche Bank, the proposed form of the order in the black-

3    line format, and if appropriate I'd like to approach the Court

4    and hand up the order, because I think that the issue that they

5    have raised is going to be very fundamental.  I've been told by

6    Guaranty Bank, and Guaranty Bank is going to insist on that

7    finding, and I think it's absolutely appropriate.  If the

8    debtors did not believe that this was a fair transaction we

9    wouldn't be bringing it up before the Court.  So if I may

10   approach?

11            THE COURT:  Yes.  Thank you.  Mr. Logan, are you

12   telling me that you think further discussion among the parties

13   would be to no avail?

14            MR. LOGAN:  I'm afraid so, Your Honor.  I'm always

15   willing to entertain, but at least what they indicated the

16   issue was, was exactly the issue Your Honor put your finger on,

17   and that we've discussed with Guaranty Bank before and we just

18   discussed in court.

19            THE COURT:  All right.

20            MR. BERMAN:  Your Honor, before I had given you the

21   three options as to how to deal with the order, and we'd chosen

22   to deal with it at a break.  Mr. Logan says we can't do that,

23   so I now have to address you as to the form of order.

24            THE COURT:  It seems so.

25            MR. BERMAN:  You have a copy of it.  I would ask you

47

1   to turn to page 5 where the ordered paragraphs are set forth.

2   It seems to me that the proper way for the Court to exercise

3   its jurisdiction is to modify the very first ordered paragraph

4   to say that the motion is granted to the extent necessary to

5   authorize the debtor to vote its stock in favor of the

6   transaction described in the motion.  I would suggest to you

7   that once that order has -- is provided that the next one, two,

8   three, four, five -- the next six provisions are not necessary.

9   They are typical of 363 sales.  Everybody agrees this is not a

10  363 sale.  Everybody agrees that at most this is a 363 use

11  which doesn't implicate the other 363 provisions.  And,

12  therefore, I think, that revised paragraph 1 will accommodate

13  everything.  I'm perfectly comfortable with 7 -- with

14  renumbered 7, 8, 9, and 10.

15              THE COURT:  Thank you.

16              MR. BERMAN:  Thank you, Your Honor.

17              THE COURT:  Do Goldman Sachs care to be heard?

18              MS. SCHWEITZER:  Your Honor, Lisa Schweitzer again

19  for Goldman Sachs.  I think that it -- just to put on the

20  record our comments, recognizing that you might disagree with

21  some of them already.

22              THE COURT:  No.  No offense is taken.

23              MS. SCHWEITZER:  I realize.  I just don't want you to

24  think I hadn't listened.  On page -- I'm working off of a

25  black-line order.  It's on page 4 paragraph F of this finding

48

1    that the terms of the purchase agreement are fair and

2    reasonable and provide fair value for the acquired Access --

3    acquired assets.  I think that if you made a finding that the

4    debtors have concluded in their business judgment that as

5    respect to them they think that the sale is fair, that's fine.

6    Or that, you know, it's business judgment for them to approve

7    the sale, but I think to find that the actual transactions are

8    giving fair value is a finding that's really beneficial to

9    Warehouse.  And the purchaser, who is, you know, it's David

10   Fleig who sold the company to Warehouse, who's buying it back

11   now.  So this is, you know, that's who being protected here.

12   In paragraph J, I'm fine with the language as long as it's

13   clear that the -- the exercise of sound business judgment being

14   referred to there is the debtor's sound business judgment and

15   not the subsidiary.

16            THE COURT:  That's what it says.

17            MS. SCHWEITZER:  Yes.  No.  I'm just being clear.

18   And that the motion is in the interest of the debtor's

19   creditors, stakeholders, and other parties and interests, that

20   those parties and interests are parties and interests in the

21   debtor's cases rather than, you know -- given that there's a

22   non-debtor I'm not sure what other parties they would determine

23   to be an interest.  In paragraph L, again, as long as everyone

24   is under the understanding that this is -- this language

25   talking about dictating terms of the Chapter 11 plan, it's in

49

1   the debtor's cases and not any future cases that might be

2   filed.  And I'm not quite sure what the language of "that

3   impermissively restricting the rights of creditors" means,

4   because I don't see how the rights of the debtor's creditors

5   are affected by this order or the relief sought.  So I would

6   ask that that be stricken.

7           Turning to the -- the relief being granted, I agree

8   with Georgia Banks' comments that the motion should be granted

9   to the extent necessary for the debtor to vote his stock in

10   favor of the transaction, or to the extent of approving the

11   debtor's -- the debtor's authorization of the transaction.

12   Again, paragraph 3 is talking about Chapter 11 plans in the

13   debtor's case that I don't think is applicable at all.

14   Chapter -- I'm sorry, paragraph 4 is talking, again, about

15   arm's length, good faith and collusion, and if you'll notice,

16   they struck out the language of the 363(m), as they were

17   required to do, but I think that this is just a thinly veiled

18   attempt to get the benefit of 363(m) without the cite to it.

19   So I would have that paragraph stricken as well.  Again, the

20   paragraph 5 where it says "the manner in notice of the debtors

21   of the Access sale was proper," again, they do make reference

22   to Bankruptcy Rule 2002, but what they really should be having

23   is a finding in that the manner and notice of the debtor's

24   motion was proper, not the sale, because I'm not quite sure who

25   else should have gotten notice of the sales as opposed to the

50

1    motion.

2          And then as -- as a drafting error, I think,

3    according to my black-line it -- unless I'm reading it wrong,

4    it looks like paragraph 8 and paragraph 10 are redundant, and

5    so I would delete one of them if not both of them.  But I'll

6    take one.  Those are our comments.

7          THE COURT:  Thank you.  Mr. McMahon?

8          MR. MCMAHON:  I will adopt the comments, Your Honor,

9    of the first objector, and with the deletion that the second

10   objection mentioned with regard to finding F as in Frank.  I

11   think those would address our concerns.  Our primary concerns

12   of the form of order, Your Honor, go to finding F as in Frank,

13   and as it's currently numbered, ordered paragraph 4 dealing

14   with the arm's length, good faith finding.

15         THE COURT:  All right.  Thank you.  Does anyone else

16   care to be heard in connection with the form of order?  All

17   right.  Let me ask the debtor if it wishes to make any more

18   modifications based upon the views expressed just now.

19         MR. LOGAN:  I'm sorry, I couldn't hear, Your Honor.

20         THE COURT:  I'd like to know whether the debtor

21   wishes to make any further changes to the proposed form of

22   order based upon the views that have just been expressed?

23         MR. LOGAN:  Yes, sir, Your Honor.  We'd like to

24   delete the redundant paragraph.  We'll strike paragraph number

25   8 in the black-line so it's only in there once.  And, Your

1  Honor, I concur that paragraph number 5 in the black-line, the

2  manner in notice of the motion is probably a more accurate way

3  to phrase it.  Strike Access sale and put in motion.

4  Otherwise, Your Honor, I think all the other comments go to the

5  in essence of what we talked about and that is that for the

6  debtor to act as the debtor under 363, and the rules we cite

7  also apply to the use of property, it's only appropriate that

8  the Court conclude that it's a fair transaction, a nonclusive

9  transaction.  And evidence was educed on that subject, thanks

10  in part to counsel for the creditors' committee.  And there's a

11  record and its appropriate finding.  And it's essential to

12  having this transaction go forward, from what I'm told from

13  Guaranty Bank.

14        THE COURT:  All right.  Thank you.  The Court needs

15  to, I think, guard the limits, especially a federal court of

16  this jurisdiction, carefully.  But in my view, based upon the

17  record that's made here, this is clearly a transaction that

18  would and does have a direct affect on the administration of

19  the debtor's estate and the debtor's estate.  The underlying

20  transaction, while it does not involve the sale of the debtor's

21  assets, it's the sale of all of the assets, or virtually all of

22  the assets, I take it, of a wholly owned subsidiary.  It's the

23  substantive equivalent of something outside of the ordinary

24  course, whether you look at it as an asset sale or whether it

25  would be a stock sale.

1          And in seeking the Court's approval, which I think it

2     was appropriate for the debtor to do, the Court has to impose a

3     standard and in doing so, look at the underlying transaction,

4     which is a sale.  And I think in order to get to that place,

5     the Court has to make findings concerning the good faith

6     element that's required by Ebbets, and the adequacy of the

7     price, the extent of the marketing, and I think this record

8     supports granting the relief on that basis.  The only -- other

9     than the changes the debtor has suggested, the only additional

10    change I might be inclined to make is in paragraph 2 of the

11    decretal portion of the order.  To make it clear that the

12    debtors authorized under the terms and conditions set forth in

13    the purchase agreement to cause its subsidiary to complete the

14    sale, whatever that might be.  But with that, I'm prepared to,

15    upon submission of the appropriate revised form of order,

16    certificate of counsel and final version of an asset purchase

17    agreement, approve the sale.  Are there any questions about

18    what should go into the order?

19          MR. COLLINS:  No, Your Honor.

20          THE COURT:  All right.

21          MR. COLLINS:  If we could now turn back to agenda

22    item number 6, and that is the debtor's application to retain

23    Lazard as their financial advisors.  I'd like to advise the

24    Court that there had been a number of discussions going on

25    between the creditors' committee and Lazard over the terms of

1    the economic components of the engagement.  And I'll turn the

2    podium over to Mr. Power to put on the record least -- at least

3    briefly, what those principal modifications are.  And I would

4    expect that we would submit a revised form of order that lays

5    out, in more detail, those economic terms by certification of

6    counsel.

7             THE COURT:  All right.

8             MR. POWER:  Good afternoon, Your Honor.  Mark Power,

9    Hahn & Hessen, cocounsel to creditors' committee in this case.

10   Your Honor, debtor's counsel, Mr. Collins, is correct.  We have

11   been negotiating with Lazard to try to modify the retention --

12   the terms of the retention for Lazard.  Your Honor, I basically

13   want to give you the revised economic terms, but I -- do you

14   want me to go through what the prior deal was and then what the

15   changes are, or just --

16            THE COURT:  I know what the prior deal was.

17            MR. POWER:  Okay.  So we'll just go right to the

18   heart of the matter.  Your Honor, we basically modified three

19   terms -- the components of the prior deal.  First, with respect

20   to the Granite sale, which is the $50,000,000 stock in this

21   price on the residuals and the loans, and then with respect

22   with the Carrington.  That's a total consideration of

23   approximately, I think, a hundred and seventy some million

24   dollars.  The prior deal was basically a $5,000,000 cash

25   component flat fee.  We have negotiated a deal where it will be

54

1    four point -- $4,250,000 fee upon the consummation of those

2    sales, plus additional consideration of 5 percent of the

3    consideration above the stalking horse bids.  Cap, those two

4    components are capped at a total, a sub-limit of $6,000,000.

5    So, in essence, what we've done is we've reduced the cash

6    component and given them an additional incentive to increase

7    the price and get additional consideration if the price goes

8    up, and put a cap on that to make sure it's not unlimited.  And

9    that was the first major component, economically, with the

10   deal.

11           The second is with respect to the origination

12   platform.  The prior deal was basically a flat fee of

13   $2,000,000 if it was sold.  That has now been reduced to the

14   greater of $1,000,000 or 5 percent of the consideration.  The

15   negotiations were extensive, but bottom line, Your Honor, we're

16   not sure exactly what the consideration will be on the sale of

17   that.  We've reduced the cash, again, but we've given them the

18   ability to earn more if we get a significant price for that

19   origination platform.

20           THE COURT:  Did the overall cap change?

21           MR. POWER:  The overall cap has not changed, Your

22   Honor, and that's $7,000,000.  There is another of

23   components -- credits in terms of the initial retainer of the

24   monthly cash fees that are still going to be in place as a

25   credit to the overall cap, and those still remain in place.  We

55

1    are working out language right now in terms of exactly under

2    what circumstances the fees are earned, and when they are

3    earned, and we are still negotiating as of right now.  But

4    hopefully we'll have that worked out and be able to submit an

5    order that reflects these changes.  And with that, the

6    committee would support Lazard's retention, Your Honor.

7         THE COURT:  All right.  Does anyone else care to be

8    heard on this issue?

9         MR. MCMAHON:  Your Honor, good afternoon. Joe McMahon

10   for United States Trustee.  We communicated some concerns to

11   Lazard with respect to the application and were able to receive

12   in a consensual -- achieve a consensual resolution to those

13   concerns.  I'm happy to put those on the record now, Your

14   Honor, or just indicate that the form of order that is

15   submitted to the Court will -- will adequately address those.

16        THE COURT:  You can tell me briefly now, if you like.

17        MR. MCMAHON:  Okay.  Your Honor, with respect to the

18   fees that Lazard will seek, our office is being granted the

19   ability to review those fees under Section 330, as opposed to

20   Section 328.  The language regarding Lazard's timekeeping has

21   changed.  Lazard will be granted a limited waiver from the

22   local rules requirement to keep time records in half hour

23   increments, but that's it.  The indemnification, we'll call it,

24   rider that -- or that -- is in the order, as opposed to

25   attached to the engagement letter.  We have added language

1    that -- which indicates that -- carves out breach of contract,

2    is what I would describe it as, although I would defer to the

3    order -- the language specifically reads, the debtors will not

4    have an indemni -- an obligation to indemnify Lazard for a

5    contractual dispute in which the debtor has alleged the breach

6    of Lazard's contractual obligations unless the Court determines

7    that indemnification contribution of reimbursement would be

8    permissible pursuant to United Artists.  So that point was

9    addressed, Your Honor.

10            There was a provision in the engagement letter

11   entitling Lazard to reimbursement of fees of counsel or other

12   professional advisors.  That's come out.  There was a paragraph

13   in the engagement letter saying that fees paid to other

14   professionals won't affect us.  There is an ordered paragraph

15   in the proposed form of order which says that that language in

16   the engagement letter, paragraph 4 thereof, will not be

17   construed so as to prohibit disgorgement in the event of

18   administrative insolvency.  And finally, Your Honor, to the

19   extent that there was any conflict between the engagement

20   letter or the indemnification letter and the form of order, it

21   has been made clear that consistent with United Companies, this

22   Court has primary jurisdiction over matters relating to

23   Lazard's retention and employment.  With those changes, Your

24   Honor, we're agreeable to form of order.

25            THE COURT:  Thank you.

57

1          MR. MCMAHON:  Thank you.

2          THE COURT:  Anyone else care to be heard?  I hear no

3    response.  All right.  Well I'll expect a submission of an

4    order under certification.

5          MR. COLLINS:  We will do that, Your Honor.  Thank

6    you.  Your Honor, as noted on the agenda, agenda item number 9

7    has been continued by consent of the parties to the hearing on

8    May 7th.  And that then turns us to agenda item number 10,

9    which is the debtor's motion to reject various executory

10   contracts and unexpired leases pursuant to section 365 of the

11   bankruptcy code.  Your Honor, we did receive several

12   objections, and I can tell Your Honor that we've made a number

13   of changes, or at least the changes are very material to the

14   relief being sought by the debtors.  And if I can approach with

15   a black-line form of order?

16         THE COURT:  Thank you.

17         MR. COLLINS:  There are several of the objections

18   objected to the nunc pro tunc rejection back to April 2.  After

19   consulting more with the debtors, we have decided to make all

20   of the rejections for those leases identified on Exhibit A to

21   be effective as of April 24th, which is today, hope -- if Your

22   Honor does in fact sign the order.  We also modi -- moved

23   several of the leases that used to be on Exhibit A to Exhibit

24   B.  And Exhibit B are those leases that will be rejected the

25   later of April 30th or the date that we in fact tender

1   possession back to the landlords.  We have also made clear that

2   if the debtors tender possession back to the landlords they

3   will have first removed any personal property that is subject

4   to a third-party lease, that we'll remove any files that we're

5   required to remove given the other investigations that are

6   going on.  And then any property remaining in those locations

7   that is property of the debtors would be deemed abandoned to

8   the landlords at the time possession is tendered back.  That

9   way the landlord knows that they can do whatever they would

10   like to do with that property:  to dispose of it, to keep it,

11   and obviously to simply dispose it and they incur obligations

12   as a result of that.  Whatever rights they have to submit a

13   claim for those expenses are preserved.  And, Your Honor, I

14   think that those changes are noted in paragraph 2, 4, and 7 of

15   the black-line form of order.  I do think that resolves the

16   objections, based upon my conversations with each of the

17   objecting parties, but I'd ask them to confirm on the record.

18           THE COURT:  All right.

19           MS. MERSKY:  Good afternoon, Your Honor.  Rachel

20   Mersky on behalf of RBC.  The vast majority of the objections

21   of RBC have, in fact, been resolved.  In fact, the only

22   additional issues, I think, will be readily resolvable with the

23   debtor.  Specifically, RBC is an assignor of leases.  They were

24   an assignor of twenty-six leases of which fifteen leases will

25   be rejected pursuant to this order.  However, there are eleven

1    additional leases, and this order attempts to set up a

2    procedure for future rejections.  We just want to make sure

3    that as assignor, RBC is given notice.  And I think that that

4    was the intent of a portion of the order, but we just wanted to

5    make that clear on the record.  Also, there's just one

6    difficulty in connection with paragraph -- the new paragraph

7    5d, which refers to a rejection date on the Exhibit B leases,

8    and the end of that refers to when the debtor unequivocally

9    relinquishes control of the premises in case it's later than

10   the April 30th date.  There needs to be some kind of mechanism

11   because that's asking for a dispute and a future problem,

12   because frequently the landlord or assignor and the debtor

13   don't agree when that has been accomplished.  And so to the

14   extent that that's a final date, it should be subject to any

15   assignor or landlord objecting to -- having a right to object

16   to that date that the debtor believes it relinquished control.

17   When the keys are handed over is always an issue.

18        THE COURT:  I don't -- I don't view the language as

19   foreclosing quick resolution of a dispute.

20        MS. MERSKY:  No.  It's just saying that the rejection

21   date shall be the later of, and one of the dates is the date

22   the debtor unequivocally relinquishes control.  So if it's not

23   April 30th, perhaps they've relinquished control May 30th, but

24   the landlord believes that they actually relinquished control

25   June 30th.  There needs to be some mechanism for that dispute

60

1    to be resolved.  And as -- these are minor issues compared to

2    what has already been resolved.

3              MR. COLLINS:  Your Honor, that last point, I think,

4    is fairly easy to resolve.  Nothing in this order approves or

5    requires that it be the debtor's determination of when they did

6    that.  If the landlord believes it was later, they have the

7    right to file a claim for those administrative costs associated

8    with the extended time period of the lease, and we can deal

9    with that at another day.

10             THE COURT:  Yeah, I don't -- as I said, I don't view

11   the language of this order as foreclosing either that vehicle

12   or some other way that the landlord could bring a dispute to

13   the Court's attention for resolution.

14             MR. COLLINS:  That's correct, Your Honor.

15             THE COURT:  All right.

16             MS. MERSKY:  And, Your Honor, just to request that

17   the debtor clarify on the record that it agrees that this

18   language includes notice to the assignor of the leases.

19             MR. COLLINS:  Yes, Your Honor.  That would be fine so

20   long as they provide us with a list of each and every one of

21   those agreements just so we have a record of that and we will

22   coordinate.

23             MS. MERSKY:  We already have.  But we'll do it again.

24             MR. COLLINS:  Okay.  Thank you.

25             THE COURT:  Thank you.  Does anyone else care to be

1    heard?  I hear no response.  All right.  That order has been

2    signed.

3            MR. COLLINS:  Thank you, Your Honor.  All right, that

4    brings us, I believe, to agenda item number 11, and that's the

5    debtor's motion to establish bid procedures with respect to the

6    sale of its loan origination platform.

7            THE COURT:  Let me just say preliminarily, that at

8    the request of the parties involved in this motion, meaning

9    those who filed pleadings, at the request of those parties I

10   met with them earlier in the afternoon in conference so that

11   the parties could bring me up to date on the status of the

12   various objections and to provide me with a -- at least what

13   was then the most current revised form of order for my review

14   so that I could see that prior to the hearing.  And I just

15   wanted to let all those gathered to know that.  You may

16   proceed.

17           MR. COLLINS:  Thank you, Your Honor.  Your Honor,

18   we -- we have proposed a number of changes to these bid

19   procedures to take into account both the circumstances that the

20   companies currently find them in as well as a number of

21   comments that we received from the creditors' committee, the US

22   Trustee and the various objecting parties.  And I believe Your

23   Honor may have a copy of that black-line?

24           THE COURT:  I do.

25           MR. COLLINS:  Okay.  And I believe we have extra

62

1   copies up here if parties have not yet received a copy of the

2   black-line.  Your Honor, turning to the black-line, in -- first

3   with respect to revised footnote 2, and I think we noticed this

4   on the agenda so the Court was aware of it before the hearing.

5   The company has decided to proceed solely with respect to the

6   wholesale division and all of the assets related to the

7   wholesale division, and have decided not to include for sale,

8   and in the defined term the loan origination platform, those

9   assets that relate to the retail division.  I think that may

10   have resolved some of the concerns raised by certain of the

11   objecting parties.

12          Your Honor, in paragraph 2, to resolve certain of the

13   objections raised, we have made clear that as soon as

14   practicable, and we'll add in, but not later than one business

15   days prior to the bid deadline, the debtor shall inform GECC,

16   Countrywide and RBC with information as to whether or not their

17   respective collateral may be included as part of the loan

18   origination platform sale.  And all of the remaining objections

19   would be carried to any sale hearing that we may have in the

20   future.

21          Your Honor, turning to page 4 to the black-line.

22   First, the footnote down on paragraph 4 was placed in this form

23   of order at the request of the creditors' committee.  And it

24   goes with res -- it goes to the issue of consultation with the

25   Official Committee of Unsecured Creditors regarding this

63

1    ongoing sale process.  And given, Your Honor, that we do not

2    yet have a stalking horse, and we have not yet reached the bid

3    deadline, the committee does have concerns, as do the debtors,

4    with respect to the ongoing costs associated with maintaining

5    the going concern values associated with the wholesale

6    division.  As a result, Your Honor, to the extent the interest

7    of the committee and the debtors diverge with respect to what

8    is the -- in the best interests of the estate concerning the

9    ongoing sale process, that we would come back to Your Honor.

10   And I believe that we're asking that the Court set May 3 as a

11   date that we could come back to Your Honor and have a status

12   with respect to the sale process itself, because that would be

13   one business day following the bid deadline.

14           THE COURT:  All right.  I have a slot available on

15   2:30 on that date.

16           MR. COLLINS:  That would be terrific, Your Honor.

17   Thank you.  With respect to other dates, Your Honor, we are

18   requesting -- oh, Your Honor, while we're on that, if we

19   could -- I believe there's a date by which we have to notify

20   parties as to whether or not the May 3 hearing date will be

21   going forward.  Given that the bid deadline we're proposing is

22   May 2, it may make sense to do it either very late on May 2 or

23   very early on May 3.

24           THE COURT:  Well, let me ask you this.  Is there any

25   room for -- if we moved up the bid deadline for an hour, could

64

1      we make that, like, 4 o'clock on May 2nd, and then the notice

2      for 6 o'clock on May 2nd?

3              MR. COLLINS:  That's fine, Your Honor.

4              THE COURT:  Does that work?

5              MR. COLLINS:  That works.  So May 2 at 4 o'clock for

6      bid deadline, and May 2 at 6 o'clock for notification as to

7      whether the hearing will go forward?  Your Honor, I'm turning

8      to paragraph 6, we would ask that the Court hold a hearing on

9      or about May 11th, Friday, May 11th to consider approval of any

10     successful bid that may be submitted?

11             THE COURT:  I will not be here Friday May 11th.

12             MR. COLLINS:  Okay.  Then I think we would have to

13     push -- then, Your Honor, to the following Monday or Tuesday,

14     the 14th or 15th?

15             THE COURT:  Well, we have a hearing set for the 15th

16     at 1:30 in this case.

17             MR. COLLINS:  That would be acceptable to the

18     debtors, Your Honor.  Thank you, Your Honor.  In paragraph 9,

19     Your Honor, we have modified fairly substantially the notice

20     with respect to assumed contracts.  And what we have done is

21     this, following receipt of the bids to the extent any of the

22     bidding parties have identified contracts that they deem

23     conditions to closing, or material contracts, we will, within

24     two business days, send out a notice of intent to assume and

25     assign that particular contract to the contracting party along

65

1    with financial information that would establish adequate

2    assurance of future performance.  That way the contract party

3    would know almost immediately after the bid deadline, or as

4    soon thereafter as we can get it out the door, but not later

5    than two business days, that their contract is in play with

6    respect to the sale process.  And we've also modified the DIP

7    procedures to now require the bidders to include that type of

8    information that we can then send off to the various

9    contracting parties.

10                THE COURT:  All right.

11                MR. COLLINS:  In addition, Your Honor, in paragraph

12   9, if at the auction a successful bidder designates additional

13   contracts that they had not previously identified, it's the

14   same process.  We will very quickly, it says as promptly as

15   possible after the conclusion of the auction, send off to that

16   party a notice of assumption and assignment along with that

17   bidder's financial information.  We have also included in

18   paragraph 10, given the nature of this transaction, that we

19   reserve our rights to file future motions with respect to

20   additional executory contracts and unexpired leases that were

21   not previously identified by the bidders.  We have added in

22   additional notice parties and --

23                THE COURT:  Well, I'll tell you what.

24                MR. COLLINS:  Yes.

25                THE COURT:  Can we put a deadline in there for that?

66

1          MR. COLLINS:  Sure, Your Honor.  I think we were

2     talking thirty to forty-five days.  It would really be

3     additional time for due diligence by the buyer to determine

4     what additional contracts they may want.

5          THE COURT:  That's fine.  I'm open to any reasonable

6     suggestion --

7          MR. COLLINS:  You could say forty-five days, Your

8     Honor.

9          THE COURT:  All right.  Does anyone care to comment

10    on that?  I'll ask for anyone to be heard who wishes, after we

11    go through the order.

12          MR. COLLINS:  Very good, Your Honor.

13          THE COURT:  All right.

14          MR. COLLINS:  Paragraph 11, we've simply added the

15    creditors' committee as additional parties to receive

16    objections.  Now that, Your Honor, the debt -- the hearing date

17    is now on May 15th, we can set the objection deadline, say, at

18    the end of business on May 11th?

19          THE COURT:  That's okay with me.

20          MR. COLLINS:  Your Honor, we have included that the

21    last sentence of that paragraph, that any objection based upon

22    adequate assurance of future performance may be presented at

23    the sale hearing.  We had that in there where we were looking

24    at the end of the week of May 11th, and that was a very short

25    period of time.  I don't know if Your Honor would entertain

67

1    objections at the hearing itself with respect to that or

2    whether you would now like to set a specific deadline given

3    that we've pushed into the following week.

4              THE COURT:  I'm open to either.

5              MR. COLLINS:  Okay.  Maybe, Your Honor, if we could

6    set May 14th at noon as that kind of -- that objection

7    deadline, so at least the Court and the debtors would know how

8    to prepare for the hearing?

9              THE COURT:  Okay.

10             MR. COLLINS:  Thanks.

11             THE COURT:  So long as the chambers copies are

12   promptly delivered.

13             MR. COLLINS:  Absolutely, Your Honor, and I do

14   apologize for that mishap last week.  In paragraph 12, we've

15   made clear that cure amounts will be determined in a process

16   following the sale hearing.  So that we need not try to set up

17   a whole list of what the cure amounts are and require executory

18   contract parties to respond to that in a short period of time.

19   Your Honor, I believe that those are the material changes to

20   the form of order, again, with the idea of making this as -- an

21   easy a process as possible, notwithstanding that this is an

22   expedited sale process without, at this point, a stalking horse

23   bidder.

24             THE COURT:  All right.  Does anyone else care to be

25   heard in connection with this motion?

68

1          MR. GALLERIZZO:  Good afternoon, Your Honor.  Mike

2   Gallerizzo for General Electric Capital Corporation.  I just

3   want the record to be clear that the entry of this bidding

4   procedures order by agreement between the parties will not

5   affect credit bidding rights of creditors such as General

6   Electric Capital Corporation.  We are -- we retain the right to

7   credit bid at this auction in the event we'd like to do so.

8   Secondly, by agreement with the debtor, General Electric and

9   other creditors who may wish to credit bid do not need to post

10  the cash deposit required by the bidding procedures order.  I

11  just want the record to reflect that.

12          THE COURT:  All right.

13          MR. COLLINS:  Yes, Your Honor, the procedures do

14  allow bids in whole or in part, and there's nothing in this

15  order that prohibits parties' rights under section 363(k).

16  Obviously, the debtors reserve all rights at the sale hearing

17  to state that anybody who does submit a bid under 363(k) either

18  is not a qualified bid, given the value to be obtained by it,

19  or that a bulk bid creates greater value and as a result the

20  363(k) rights for cause shown should not be enforced.

21          THE COURT:  All right.

22          MR. COLLINS:  Your Honor, I also -- with respect to

23  363(k), I want to turn your attention for a moment to the bid

24  procedures themselves.  Can I have one moment, Your Honor?

25          THE COURT:  Yes.

69

1          MR. COLLINS:  Your Honor, page 4 of the black-line of

2     the bid procedures.

3          THE COURT:  Yes.

4          MR. COLLINS:  In the first full paragraph that

5     starts -- the paragraph starts a bid meeting?  The second

6     sentence, actually the third sentence we've included, it says

7     for the purpose of clarity, any bid which is comprised in whole

8     or in part of a credit bid shall not constitute a determination

9     of or evidence of the value of the subject property for any

10    purposes or proceedings in the debtor's bankruptcy cases.  This

11    way it allows the bids to be submitted but it does not have any

12    ongoing effect in the bankruptcy case itself with respect to

13    the ultimate value determination over that collateral.

14         THE COURT:  Well, I guess on the other hand, should

15    there be some valuation for -- decision for -- to be made

16    later.  It wouldn't foreclose the Court from considering such

17    evidence.

18         MR. COLLINS:  We understand, Your Honor.

19         THE COURT:  All right.

20         MR. CHIPMAN:  Your Honor, for the record, William

21    Chipman, Edwards Angell Palmer & Dodge on behalf of GMAC, CF

22    and Countrywide.  Your Honor, we would like to reserve our

23    same -- same rights that GECC did with regard to credit

24    bidding.  And we understand that's fine with the debtors.  Your

25    also -- Your Honor, also I spoke with Mr. Collins.  I believe

1    he was going to put on some evidence as to the marketing that

2    has been going on, I guess, pre-petition and up until this

3    point, to support the compressed time frame.  We obviously

4    support a sale.  We support getting the maximum value.  We just

5    need some evidence to show, you know, some support for the

6    shortened time frame.  We also understand that -- we will

7    provide documents to Mr. Collins, probably today, setting forth

8    our -- our agreement, security interest loans so that they can

9    provide us a list with the -- our collateral that's potentially

10   being sold.

11          THE COURT:  Okay.

12          MR. CHIPMAN:  Your Honor, and we reserve the rest of

13   our objections for the sale hearing.  Thank you.

14          THE COURT:  Thank you.

15          MR. RALSTON:  Good afternoon, Your Honor.  Mark

16   Ralston of Munsch Hardt Kopf & Harr on behalf of Positive

17   Software Solutions Inc.  Your Honor, based on my conversation

18   with Mr. Collins earlier this afternoon, I believe that we've

19   reached a ten -- I guess an agreement that gets us by today,

20   but part of that agreement is that we would stipulate into the

21   record regarding the reservation of rights that we have in

22   connection with the bid procedures.  And if I may, if permitted

23   right now --

24          THE COURT:  Go ahead.

25          MR. RALSTON:  -- to read what I think is that

1   agreement.  Your Honor, it being stipulated that the objection

2   filed by Positive Software Solutions to the sale of any

3   intellectual property by the debtors is carried to the sale

4   hearing as defined in -- in the debtor's motion.  And that the

5   provision contained in the proposed bid procedures which is

6   going to be attached as Exhibit 1 to the order approving the

7   bid procedures providing for the proposed sale of the wholesale

8   loan origination platform is without prejudice to Positive

9   Software's objection and its rights, including its right to

10  enforce its intellectual property rights, as to any potential

11  purchaser of the platform and its right to seek recourse as to

12  the proceeds of this sale based on what it believes to be its

13  property to be conveyed.

14          Second, Your Honor, the stipulation to pass our

15  objection shall not be construed as a waiver of any right that

16  Positive Software may have under orders issued by the United

17  States District Court for the Northern District of Texas in

18  joining and prohibiting use of Positive Software's loan for

19  software and derivative software.  In that regard, Your Honor,

20  the debtors have represented that the -- our concern being that

21  what is contained in the data room and what's being used in

22  connection with the proposed data room not be a use of Positive

23  Software's intellectual property rights, which is no longer

24  authorized.  Mr. Collins and other counsel have informed me

25  that to the best of their knowledge, all the information that

1    is contained has been collected by the financial advisors, so

2    based on that we're willing to at least forego any action at

3    this time to preclude the data room from going into effect.

4            The third stipulation, Your Honor.  Debtor shall

5    provide Positive Software with the asset purchase agreement

6    with respect to any bid for the intellectual property.  And

7    this is sort of along the lines that GMAC and the other secured

8    lenders are asking for as far as knowing whether, in their case

9    collateral, in our case what we believe to be ours is being

10   conveyed to a potential purchaser.  And I'll let Mr. Collins

11   address as to whether that stipulation accurately reflects our

12   communication.

13           MR. COLLINS:  There was quite a bit there, Your

14   Honor.  And if I could try to, in part, summarize it.  The

15   debtors stipulate that nothing in this order affects any right

16   that his client may have to object at the sale hearing itself.

17   This is simply a procedural mechanism, sets dates and sets a

18   process at which we can come back to your court and see -- to

19   Your Honor, and seek substantive relief under section 363.  So

20   nothing here today is causing this entity to lose its rights to

21   object to the sale of any asset that may be sought to be sold

22   free and clear, whatever interest they may have in that

23   property.  Also, Your Honor, nothing in this order is affecting

24   whatever rights they may have under the preliminary injunction

25   order.  The data room, as we understand it, does not violate in

1   any way the terms of the preliminary injunction order, and the

2   company is aware of its obligations under that order and

3   intends to continue to comply with its obligations.  And we

4   will provide them with a copy of the -- any executed APA that

5   may come down in the future.

6           THE COURT:  Very well.

7           MR. RALSTON:  And, Your Honor, one comment to the

8   order.  I'm sure Mr. Collins can address how he would like to

9   resolve it.  Just technically speaking, the order itself

10  appears to provide that any objections that aren't otherwise

11  addressed in the form of order are essentially disallowed, as I

12  read it.  You know, I guess we could go ahead and re-file the

13  same objection just to -- as a prophylactic --

14          THE COURT:  That won't be necessary.

15          MR. RALSTON:  Okay, Your Honor.  I just wanted to

16  clarify that.  Thank you, Your Honor.

17          MR. COLLINS:  Just for the record, Your Honor, we

18  will carry that objection to any sale hearing and we'll list it

19  as such in the agenda.

20          THE COURT:  All right.

21          MR. MCMAHON:  Your Honor, Joe McMahon for the United

22  States Trustee.  We filed a response raising two points.

23  First, with respect to 363 language.  I believe we have an

24  agreement with the debtors that such language would be inserted

25  into the order.  With respect to the consumer privacy issue, I

1    believe our understanding is that what to -- if and to the

2    extent that bids are submitted, qualified bids are submitted by

3    the bid deadline, that our office would be notified within a

4    reasonable time thereafter, not to exceed twenty-four hours.

5    As to -- and provided copies with those bids so we can asses

6    whether personally identifiable information is implicated.  And

7    the debtors are also going to communicate their position on

8    that issue to our office, given that we don't -- while our

9    office prefers to address this issue at the bid procedure

10   stage, Your Honor, given that we don't have a stalking horse,

11   we don't know what's being sold.  It's a bit difficult to do

12   that today.

13             THE COURT:  If not impossible.

14             MR. COLLINS:  And -- and we consent to that, Your

15   Honor.

16             THE COURT:  All right.

17             MS. FATELL:  Good afternoon, Your Honor.  Bonnie

18   Fatell from Blank Rome for the creditors' committee.  The

19   creditors' committee supports this sale.  They have worked very

20   hard with the debtors to try to get comfortable with selling

21   the loan origination platform, and they're very concerned about

22   the costs associated with that.  And, consequently, most of the

23   changes that are -- appear in the -- in the revised order and

24   the procedures reflect serious negotiations between the

25   creditors' committee and the debtors to try to make sure that

1    the committee is involved in the process, that the costs don't

2    run away from us, and that we are not running down a path that

3    we can't withdraw from.  And so we have negotiated the hearing

4    on the 3rd, and we appreciate Your Honor's giving us an

5    opportunity to come in if we are not able to agree with the

6    debtors that the qualified bids that have come in do not

7    warrant going forward with an auction, and we don't agree on

8    that, then we will be before the Court to try and -- and get

9    the Court's view on that.

10           We -- we did want to point out the consultation with

11   the committee, at paragraph -- at footnote 4 is again something

12   that we've worked very hard with the debtor to establish so

13   that it is not just some language in an order but something

14   that we will take very seriously as we know the debtor will as

15   well.  We also wanted to point out that the retention order

16   that was -- the retention wages that were approved recently,

17   and I believe brought before the Court at the last hearing,

18   there was approximately $7.3 million that was asked to be

19   approved for April compensation to be paid in May to those

20   employees associated with the -- commissioned employees

21   associated with the loan origination platform.  The committee

22   had conditionally approved that subject to reaching an

23   agreement with the debtors on these issues regarding the sale

24   process.  We have reached that agreement, however, I want to

25   just point out that because the consumer direct platform is no

1    longer a part of this bundle of assets being sold, we believe

2    that 7.3 million should come down by approximately a million

3    dollars, since it won't affect all of the employees.

4            And lastly, I did want to add one more thing.  In

5    paragraph 6 of the order, at the very end where it says that

6    the debtor shall have the right to elect not to conduct the

7    auction or proceed with the auction if they determine in their

8    sole discretion after consultation with the creditors'

9    committee that no bids have been submitted for the loan

10   origination platform assets that offers sufficient value for

11   such assets, we want to insert after "that no bids have been

12   submitted," after -- that no bids alone or in the aggregate

13   have been submitted.  Again, Your Honor, this -- these assets

14   have been marketed as a going concern and while there may be

15   some bids in the aggregate that would come up with a going

16   concern value, if it's determined that either bids alone or

17   bids collectively are not sufficient, again, we would reserve

18   the right to not move forward.  Thank you, Your Honor.  And

19   with that, we do support the sale and urge the Court to enter

20   the order.  Thank you.

21           THE COURT:  Thank you.  Does anyone else care to be

22   heard?  All right.  Are you prepared to make a record in

23   support of the motion?

24           MR. COLLINS:  Yes, Your Honor.

25           THE COURT:  All right.

1          MR. COLLINS:  Very briefly, Your Honor, I would like

2     to make a proffer in support of the motion.  Your Honor, in the

3     courtroom is Ari Lefkovits, of Lazard Freres, of the company's

4     investment banker.  And he has been involved in the ongoing

5     sale process relating to the loan origination platform.  And if

6     called to testify, he would state that the prompt sale of the

7     loan origination platform presents the best opportunity to

8     maximize the value of this platform for the estates.  He

9     believes that absent a prompt sale, the value of this platform

10    will rapidly decline.  In addition, he believes that the

11    bidding procedures and the sale notice are the best method by

12    which the companies can obtain the best price for this platform

13    and provide interested persons with accurate and reasonable

14    notice.

15          He would further testify that the bid procedures will

16    allow the debtors to conduct the auction in a controlled, fair

17    and open fashion that will encourage participation by

18    financially capable bidders who demonstrate the ability to

19    close a transaction, thereby increasing the likelihood the

20    debtors will receive the best possible consideration for the

21    loan origination platform by helping insure a competitive and

22    fair bidding process.  He would also testify that the

23    debtors -- that these procedures will allow the debtors to

24    undertake the auction process in as expeditious a manner as

25    possible, which the debtors believe is essential to maintaining

78

1    and maximizing the value of their estates and in also obtaining

2    the consent of the creditors' committee for the ongoing

3    incurrence of expenses associated with maintaining going

4    concern values for the loan origination platform.  He would

5    also testify that marketing of the loan origination platform

6    has been ongoing since April 9th; that a number of parties have

7    been contacted.  A number of parties are in discussions with

8    the investment bankers and this process will continue, at least

9    until the bid deadline.

10              THE COURT:  All right.  Does anyone care to examine

11   Mr. Lefkovits?

12              MR. POWER:  Your Honor, I have a few questions. I'd

13   like to indulge the Court, if it's all right?

14              THE COURT:  All right.

15         (Witness duly sworn)

16              THE CLERK:  Please state your full name for the

17   record.

18              THE WITNESS:  Ari Nathan Lefkovits, L-E-F-K-O-V-I-T-

19   S.

20   DIRECT EXAMINATION BY

21   MR. POWER:

22   Q.   Mr. Lefkovits, the purpose of my questions is just to

23   clarify exactly what Lazard has done to try to market these

24   assets, and what it hasn't done, so that we can be clear on the

25   record given the order that's been entered.  Is it correct,

1   sir, that you have basically been marketing the origination

2   platform as a going concern sale?

3   A.   Yes, that's correct.

4   Q.   And the potential buyers you've identified and notice are

5   buyers who would buy, hopefully, as a going concern?

6   A.   That's correct.  We've contacted a number of financial and

7   strategic buyers, both with that understanding.

8   Q.   Has Lazard done any efforts to identify buyers for the

9   individual pieces of assets as opposed to the operating

10  business?

11  A.   No.  Our efforts have been primarily focused on a going

12  concern transaction.

13  Q.   So if you were to -- based on your experience as an

14  investment banker, if you would try to sell the individual

15  pieces of equipment, for example, that the debtor is using in

16  the operations platform, would that be a different marketing

17  group than what Lazard has done in this procedure's order?

18  A.   Yes.  That -- that would be a different group.

19  Q.   And do you have a view as to what exactly what would have

20  to be done to maximize the value of the individual pieces?

21       MR. POWER:  Excuse me, strike that.

22  Q.   Do you have a view as to what would have to be done in the

23  marketing efforts to maximize the potential bids received on

24  individual pieces of assets that are part of this origination

25  platform?

1    A.   Well, I think it would be an entirely different marketing

2    process, as we just discussed earlier.

3    Q.   Briefly, what would that entail?

4    A.   Well, that would entail looking at each of the individual

5    assets separately, identifying a target group of buyers for

6    each of those assets, and running each of those, you know, sale

7    process -- processes individually, so.

8    Q.   And it's fair to say that that --that scenario, the

9    separate analysis of the assets and identifying separate

10   processes is not being done as part of this procedure's order?

11   A.   That -- that is correct.

12   Q.   So in your view, does this proce -- does any bid received

13   on individual assets, would that reflect what you would think

14   would be a fair value for those assets if they -- if those bids

15   were received?

16   A.   I -- you know, I don't know.

17            MR. BERMAN:  Objection, Your Honor.

18            THE COURT:  Sustained.

19            MR. POWER:  I'll withdraw the question, Your Honor.

20   Your Honor, no more questions.

21            THE COURT:  All right.  Does anyone else care to

22   examine this witness?

23            MR. CHIPMAN:  Your Honor, a couple questions for the

24   record.  William Chipman, Edwards Angell Palmer & Dodge on

25   behalf of GMAC, CF and Countrywide.

81

1  DIRECT EXAMINATION BY

2  MR. CHIPMAN:

3  Q.   You said a number of parties had been contacted?

4  A.   That's correct.  I think we've contacted approximately

5  twenty-five to thirty parties.

6  Q.   That was my next question.  How many -- how many of the

7  twenty-five to thirty parties that you've contacted have

8  expressed an interest in further talking about the sale of

9  these assets?

10  A.   A significant number.  I'd say fifteen to twenty have

11  expressed interest.

12  Q.   Are you requiring these parties to fi -- to sign

13  confidentiality agreements?

14  A.   Yes.  We have required each of them to do so in order

15  to -- to receive the detailed information on the assets.

16  Q.   And how many of these parties have returned signed

17  confidentiality agreements?

18  A.   I think approximately twelve to fifteen parties have done

19  so.

20  Q.   Have any of these parties begun due diligence?

21  A.   They have, yes.

22  Q.   Is there a data room set up on these assets?

23  A.   Yes.  Yes, there's an online data room that any interested

24  party can -- can access.

25  Q.   All right.  Does this data room contain a list of the

82

1    assets available for sale?

2    A.   I believe that it does.

3    Q.   Is there any reason why you couldn't provide that list to

4    the objectors here today?

5    A.   Well, I think the -- the list of assets available for sale

6    is -- is more of a general list of assets.  It's not a detailed

7    assets schedule, you know, listing out each specific asset.

8    Q.   Can I ask the question again?  Is there any reason why the

9    objectors cannot get access to that list, whether or not it be

10   general or specific?

11   A.   Well, I think that any -- anyone, you know, any schedule

12   that we have is not, you know, is not fully formed yet, and

13   we're still going through the process of identifying the

14   specific assets.  So that's the reason why.

15   Q.   Maybe -- maybe I'll ask the question another way.  I

16   understand that the list is not complete.  Is there any reason

17   why, for example, my clients cannot get access to that list so

18   they could begin to start understanding what assets are for

19   sale?

20   A.   I, you know, we can, you know -- I think, you know, we

21   can -- we can provide you with any information that we have

22   currently, but I don't think that we've developed that -- that

23   list of assets fully yet.

24   Q.   Okay.  But you're expecting -- and you think that you'll

25   have bids by May 2nd, given the procedures you're going

83

1   through?

2   A.    That's correct.

3          MR. CHIPMAN:  Okay.  No further questions at this

4   time, Your Honor.

5          THE COURT:  All right.  Does any else care to examine

6   this witness?

7          MR. RALSTON:  I have a couple questions.

8   DIRECT EXAMINATION BY

9   MR. RALSTON:

10  Q.    Mr. Lefkovits, are you familiar with the software program

11  that's part of the wholesale loan platform?

12  A.    Not -- I mean, not generally.  I mean I'm aware that we,

13  you know, that we have, you know, FastCall and other software

14  programs.

15  Q.    That was good, that was my next question.  You anticipated

16  me.  Do you know the names of any of the software programs

17  being used?

18  A.    Not -- you know, not specifically.  No.

19         MR. COLLINS:  Your Honor, I'd like to object to the

20  relevance of these questions.  We have carried the objection

21  and I've already stipulated that nothing in this order is

22  affecting their rights.  And we have proffered him as a witness

23  with respect to the sale process, not with respect to the

24  individual software that the company is utilizing.

25         MR. RALSTON:  It may just be relevant, Your Honor, to

84

1    what's being sold.  And I'll just -- if I may just have one

2    more question, I won't take up any more time.

3              THE COURT:  You have one more question.

4    BY MR. RALSTON:

5    Q.   Who would be familiar within your organization as to the

6    software that's being sold as part of the platform?

7    A.   Well, I think, our -- we're not necessarily familiar with,

8    you know, with the software itself.  We're selling the -- the

9    operations as a -- as a going concern.  I think that we're --

10   so we're proficient in understanding the business generally and

11   explaining it to buyers, but, you know, we haven't done a

12   detailed evaluation of -- of the software as part of that

13   process.

14   Q.   Thank you.

15             MR. RALSTON:  Thank you, Your Honor.

16             THE COURT:  Anyone else care to examine Mr.

17   Lefkovits?  I hear no response.  One moment.  Is there any

18   redirect?

19             MR. COLLINS:  No, Your Honor.

20             THE COURT:  All right.  Thank you, sir.  You may step

21   down.

22             THE WITNESS:  Thanks.

23             MR. COLLINS:  Your Honor, that's all that we have

24   with respect to this cite, and we would respectfully request

25   approval of the order once we amended it to fix the various

1   dates and everything else that's been established by Your

2   Honor.

3            THE COURT:  All right.  I'm prepared to approve the

4   procedures, particularly in light of either withdrawal or

5   reservation or resolution of the various objections, the

6   support of the committee and based on the record that was here

7   today.  So I'll expect an order to be submitted under

8   certification.

9            MR. COLLINS:  Thank you, Your Honor.

10            THE COURT:  All right.  Is there anything else for

11   today?

12            MR. LOGAN:  Yes, Your Honor.  One housekeeping

13   matter.  Last Thursday there was a hearing on the bidding

14   procedures for the servicing business, and the Court entered an

15   order on Friday approving those bidding procedures.  Paragraph

16   18 to that order contemplated that there could be a supplement

17   or an adjunct, if you will, if an agreement was reached with

18   Morgan Stanley, and contemplated that if one was agreed the

19   Court would be entering an order with the deadline of this

20   coming Friday to basically provide for a coordinated sale

21   process for the servicing business and some residual interest

22   that Morgan Stanley has -- asserts lien in, or asserts have

23   been sold to them under a repurchase agreement.  And just to

24   advise the Court, we are very close, I'm pleased to say, in

25   cutting a deal with Morgan Stanley which will allow for that

1    sort of coordinated bidding.  The existing order does

2    contemplate that that would be submitted as an adjunct with the

3    Friday deadline, and just a heads-up that hopefully we will be

4    submitting a proposed adjunct to the order, if you will,

5    hopefully either later today or tomorrow.  And we would

6    anticipate, again, the certification process so that assuming

7    there are no objections that the order could be entered by the

8    deadline on Friday.

9            THE COURT:  That's fine just so long as if you want

10   it docketed Friday just make sure it doesn't come in at 4

11   o'clock.

12           MR. LOGAN:  We would -- we are striving our best to

13   get in far in advance of that.

14           THE COURT:  All right.  Thank you.

15           MR. LOGAN:  Thank you.

16           THE COURT:  Anything further for today?

17           MR. COLLINS:  We have.

18           MR. RAMOS:  Your Honor, Marcos Ramos, Richards,

19   Layton & Finger.  With the Court's indulgence, I'd just like to

20   update the Court regarding one matter that was addressed at

21   last Thursday's hearing.  Specifically, it was the Alaska

22   Seaboard adversary proceeding.  The Court had scheduled an

23   objection deadline of this Wednesday and a hearing for this

24   Friday on the application for a TRO.  I'm pleased to inform the

25   Court that the parties have finalized a form of stipulation.

1   We intend to file that later today on the docket and under

2   cover of certification of counsel.  The stipulation

3   contemplates that the -- subject to the approval of the Court,

4   that the Wednesday deadline for responding to the TRO

5   application will be continued as would the currently scheduled

6   Friday hearing date.  The parties have set forth in this

7   stipulation, subject to Your Honor's approval, a continued

8   hearing date of May 30th, which I believe is the omnibus

9   hearing date at the very end of May, at 2:30, if I remember

10  correctly, Your Honor.

11           THE COURT:  That's correct.

12           MR. RAMOS:  And obviously that would be subject to

13  your Court's approval.  And they've otherwise set forth in the

14  stipulation a mechanism to continue the discussions and try to

15  resolve the matter, hopefully before then.  So we would

16  anticipate filing that later this afternoon, and obviously

17  delivering a copy to your -- to chambers under cover of

18  certification.

19           THE COURT:  Is that the only matter scheduled for

20  hearing in this case on Friday, or are there others?

21           MR. RAMOS:  I believe that is -- I believe that is

22  correct, Your Honor, but I will check on that and advise the

23  Court if that's otherwise.

24           THE COURT:  All right.  Thank you.

25           MR. RAMOS:  Thank you.

88

1          MR. COLLINS:  The only other matter, Your Honor, is

2     the wage order that we have spoke -- have spoken about a little

3     bit today with respect to the April wages that would be paid in

4     May with respect to those employees associated with the loan

5     origination platform.  We will be submitting that order, Your

6     Honor, by certification of counsel, in the next day or so.  And

7     I just wanted Your Honor to be aware that that order is still

8     out there and it does need to be proffered to the Court.

9          THE COURT:  What specifically will that provide?

10          MR. COLLINS:  Your Honor, it will provide, generally,

11     that the payments that -- or the compensation obligations that

12     are incurred in April with respect to certain of the employees

13     in the loan origination platform can be paid in May.  The prior

14     order allowed only for the March wages to be paid in April, so

15     this would be a continuation of that -- that relief.  It does

16     carve out in accordance with Your Honor's ruling at the last

17     hearing that those holding the title of senior vice president

18     or higher would not be included in the receipt of such

19     payments.  And that would be the sum and substance of the

20     order, Your Honor.  The one issue that we do need to talk to

21     the committee about is -- is with respect to those employees in

22     the platform, whether or not that includes the employees on the

23     retail side as well as the wholesale side, given that we have

24     now separated out that process.  So we need to consult with our

25     clients on that matter.

89

1           THE COURT:  All right.

2           MR. COLLINS:  And that's all we have, Your Honor.

3           THE COURT:  Mr. McMahon, did you have any comment on

4    that?

5           MR. MCMAHON:  Your Honor, given that the -- the six

6    persons holding the title of Senior vice president of -- or

7    higher have been carved out, we don't have comment.

8           THE COURT:  All right.

9           MR. MCMAHON:  Thank you.

10          THE COURT:  Anyone else care to be heard on that

11   issue?  I hear no response.  All right.  Thank you all.  That

12   concludes this hearing.  Court is adjourned.

13          (Proceedings concluded at 3:36 PM)

14

15

16

17

18

19

20

21

22

23

24

25

90

**I N D E X**

**T E S T I M O N Y**

| WITNESS | EXAMINATION BY | PAGE |
|---------|----------------|------|
| Mr. Meola | Mr. Power | 36 |
| Mr. Lefkovits | Mr. Power | 78 |
| Mr. Lefkovits | Mr. Chipman | 81 |
| Mr. Lefkovits | Mr. Ralston | 83 |

91

1

2                        C E R T I F I C A T I O N

3

4       I, Penina Wolicki, court approved transcriber, certify that the

5       foregoing is a correct transcript from the official electronic

6       sound recording of the proceedings in the above-entitled

7       matter.

8

9       _____ May 2, 2007_____

10      Signature of Transcriber               Date

11

12      Penina Wolicki_____

13      typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

| A | | | |
|---|---|---|---|
| **abandoned** 58:7 | 28:3 52:9 54:2,6,7 | 14:7 15:14 16:10 | 25:15 26:20 33:2 |
| **Abbots** 43:19 44:24 | 58:22 59:1 65:12 | 17:15,24 52:21 | 34:17,21 |
| **ability** 21:18 54:18 | 65:20,22 66:3,4,15 | 57:6,6,8 61:4 62:4 | **amounts** 12:14 20:7 |
| 55:19 77:18 | **address** 29:17 44:2 | 73:19 | 23:13 67:15,17 |
| **able** 18:9 19:21 25:1 | 46:23 50:11 55:15 | **aggregate** 76:12,15 | **analysis** 26:9 28:1,3 |
| 55:4,11 75:5 | 72:11 73:8 74:9 | **aggressively** 32:2 | 34:25 80:9 |
| **above-entitled** 91:6 | **addressed** 40:12 | **AGINS** 8:7 | **analyzed** 22:20 26:2 |
| **absent** 77:9 | 56:9 73:11 86:20 | **ago** 25:25 29:2 31:21 | 26:3 32:17 39:23 |
| **absolutely** 35:2 | **addresses** 16:3 | **agree** 27:6 28:21 | **Angeles** 2:17 8:22 |
| 45:24 46:7 67:13 | 29:18 | 30:3,14,14 40:20 | **Angell** 4:18 69:21 |
| **acceptable** 16:2 | **adequacy** 52:6 | 40:25 41:5 45:17 | 80:24 |
| 64:17 | **adequate** 10:7 43:20 | 49:7 59:13 75:5,7 | **angry** 27:19 |
| **access** 10:21 11:15 | 65:1 66:22 | **agreeable** 31:1 | **answer** 38:4 |
| 15:17 18:19,20,22 | **adequately** 10:6 | 56:24 | **Anthony** 7:7 31:3 |
| 19:1,3,8,14,16,22 | 55:15 | **agreed** 13:23 26:15 | 36:1 |
| 20:1,4,9,13,21,24 | **adjourned** 89:12 | 28:8,11 85:18 | **anticipate** 23:20 |
| 21:8,13,14,18,25 | **adjunct** 85:17 86:2,4 | **agreeing** 42:23 | 86:6 87:16 |
| 22:2,17 24:12,18 | **administration** | **agreement** 16:2 | **anticipated** 83:15 |
| 29:22 30:1 31:7,8 | 51:18 | 18:20 28:6,6 29:8 | **anybody** 68:17 |
| 31:13 32:2,24 33:9 | **administrative** | 30:15 34:24 39:8 | **APA** 73:4 |
| 33:13,23 34:7,14 | 10:25 11:21,23 | 39:10 40:23,24 | **apologize** 24:5 67:14 |
| 36:5,17 38:11 41:6 | 16:10 56:18 60:7 | 48:1 52:13,17 68:4 | **appear** 74:23 |
| 48:2 49:21 51:3 | **admission** 34:5 | 68:8 70:8,19,20 | **appears** 14:17 73:10 |
| 81:24 82:9,17 | **admissions** 33:6 | 71:1 72:5 73:24 | **applicable** 49:13 |
| **accommodate** 39:8 | **adopt** 50:8 | 75:23,24 85:17,23 | **application** 10:13 |
| 47:12 | **advance** 86:13 | **agreements** 15:3 | 11:3,7 14:8 15:9 |
| **accomplished** 59:13 | **adversary** 86:22 | 19:2,15 60:21 | 17:16 27:9,9 52:22 |
| **account** 20:11 61:19 | **advise** 18:5 52:23 | 81:13,17 | 55:11 86:24 87:5 |
| **accrued** 24:16 28:10 | 85:24 87:22 | **agrees** 26:24 47:9,10 | **apply** 51:7 |
| **accurate** 51:2 77:13 | **Advisor** 11:4 | 60:17 | **appointment** 16:21 |
| **accurately** 72:11 | **advisors** 23:6 26:3 | **ahead** 31:2 70:24 | **appreciable** 24:21 |
| **achieve** 55:12 | 52:23 56:12 72:1 | 73:12 | **appreciate** 75:4 |
| **acquired** 18:20 48:2 | **affairs** 13:22 | **Aladdin** 32:11 | **approach** 14:4,22 |
| 48:3 | **affect** 38:16 51:18 | **Alaska** 86:21 | 15:20 46:3,10 |
| **acquisition** 19:4 | 56:14 68:5 76:3 | **alleged** 56:5 | 57:14 |
| **act** 51:6 | **affidavit** 14:11,13 | **allow** 68:14 77:16,23 | **appropriate** 14:3 |
| **action** 72:2 | 14:17,21 | 85:25 | 17:2 30:15,21 31:1 |
| **actual** 48:7 | **affiliates** 19:6 | **allowed** 88:14 | 45:21,25 46:3,7 |
| **add** 62:14 76:4 | **afraid** 46:14 | **allows** 15:24 69:11 | 51:7,11 52:2,15 |
| **added** 55:25 65:21 | **afternoon** 13:2,3 | **Altering** 10:5 | **appropriateness** |
| 66:14 | 17:7 39:2 40:15 | **alternative** 27:18 | 45:18 |
| **adding** 16:13 | 45:9 53:8 55:9 | **alternatives** 32:18 | **approval** 43:17,18 |
| **addition** 65:11 | 58:19 61:10 68:1 | **amended** 84:25 | 44:12 52:1 64:9 |
| 77:10 | 70:15,18 74:17 | **America** 7:11 | 84:25 87:3,7,13 |
| **additional** 15:25 | 87:16 | **American** 32:10 | **approve** 28:23 29:15 |
| | **agenda** 13:6,7,10,19 | **amount** 23:18 25:4 | 29:23 39:21 44:21 |

48:6 52:17 85:3
**approved** 23:8 41:6
  75:16,19,22 91:4
**approves** 60:4
**approving** 11:20
  12:3,5,10,16,17
  28:23 43:1 49:10
  71:6 85:15
**approximately**
  23:22 33:1 34:1,2
  34:9,21,23 35:3
  53:23 75:18 76:2
  81:4,18
**April** 1:18 21:1
  57:18,21,25 59:10
  59:23 75:19 78:6
  88:3,12,14
**arguably** 43:16
**arguments** 27:21
  29:14
**Ari** 77:3 78:18
**arm's** 43:5 49:15
  50:14
**arrangement** 21:23
  23:21
**Artists** 56:8
**asked** 15:2 25:18
  32:3 39:20 75:18
**asking** 17:18 42:3
  42:15 59:11 63:10
  72:8
**assert** 33:15,23 34:7
**asserts** 85:22,22
**asses** 74:5
**assess** 34:6
**assessed** 32:25 33:4
**asset** 18:20 28:5
  29:7 39:7,10 51:24
  52:16 72:5,21 82:7
**assets** 12:11,16 26:6
  28:9,16 30:1 33:13
  38:21 39:12,13
  44:16,25 48:3
  51:21,21,22 62:6,9
  76:1,10,11,13
  78:24 79:9,24 80:5

80:6,9,13,14 81:9
  81:15,22 82:1,5,6
  82:7,14,18,23
**assign** 64:25
**assignment** 12:13
  65:16
**assignor** 58:23,24
  59:3,12,15 60:18
**assistance** 23:5
**associated** 60:7 63:4
  63:5 74:22 75:20
  75:21 78:3 88:4
**assume** 24:14 64:24
**assumed** 64:20
**assumes** 35:5
**assuming** 17:13 29:6
  34:14 40:6,12 86:6
**assumption** 12:12
  43:14 65:16
**assurance** 26:13
  65:2 66:22
**assurances** 23:22
  28:3
**assure** 25:13
**Assured** 10:6
**assures** 26:12
**attached** 14:15
  55:25 71:6
**attempt** 49:18
**attempts** 59:1
**attention** 60:13
  68:23
**Attorney** 5:12
**attorneys** 2:4,15 3:3
  3:14 4:3,11,19 5:3
  5:20 6:12,20 7:3
  7:11,19 8:3,11,20
  9:3,11,19 34:15
**auction** 12:11 65:12
  65:15 68:7 75:7
  76:7,7 77:16,24
**auditor** 16:22
**authority** 29:15
**authorization** 49:11
**authorize** 44:15
  47:5

**authorized** 10:21
  15:16 52:12 71:24
**Authorizing** 10:14
  11:3,8,14 12:3,5
**automatic** 33:9
**avail** 46:13
**available** 23:19
  63:14 82:1,5
**Avenue** 3:15 7:12,20
**aware** 62:4 73:2
  83:12 88:7
**awful** 29:19

---

## B

**B** 1:21 4:7 10:5
  11:22 12:5,12,18
  57:24,24 59:7
**back** 20:9 21:12,13
  45:7 48:10 52:21
  57:18 58:1,2,8
  63:9,11 72:18
**backdrop** 20:17
**background** 18:2
**balance** 20:8
**Bank** 7:11 8:3,11
  9:11 19:5,6 20:20
  20:22 23:16 24:22
  30:12 32:7 33:3,21
  35:6 37:15,24,25
  37:25 38:2,10,14
  38:17 39:3 42:12
  46:2,6,6,17 51:13
**banker** 77:4 79:14
**bankers** 32:4 78:8
**banking** 31:17,19,24
**bankruptcy** 1:2,23
  10:4,17 11:10,13
  11:14,19 12:3
  27:11 29:15 32:1
  34:14 49:22 57:11
  69:10,12
**banks** 26:8 29:9
  49:8
**base** 21:18
**based** 18:23 20:4
  23:8 26:9 28:2

33:11 34:7 35:8
  50:18,22 51:16
  58:16 66:21 70:17
  71:12 72:2 79:13
  85:6
**basic** 19:10 31:10
**basically** 23:10
  25:14,16 26:2,12
  26:19 27:12,13,16
  27:18,19 28:7,8,11
  28:23 32:18 53:12
  53:18,24 54:12
  79:1 85:20
**basis** 18:3 20:21
  23:4 24:4,6 26:4
  27:8,9 35:16,17,18
  35:19 44:6 52:8
**Battery** 3:5
**begun** 81:20
**behalf** 13:5 23:5
  36:6 39:3 58:20
  69:21 70:16 80:25
**behold** 19:19
**belabor** 45:11
**believe** 15:5 17:20
  20:22 23:24 31:20
  35:9 39:20 46:8
  61:4,22,25 63:10
  63:19 67:19 69:25
  70:18 72:9 73:23
  74:1 75:17 76:1
  77:25 82:2 87:8,21
  87:21
**believes** 27:25 59:16
  59:24 60:6 71:12
  77:9,10
**bells** 43:20,23,25
**BEN** 2:19
**beneficial** 18:8 48:8
**benefit** 23:14 42:16
  49:18
**Berman** 9:15 39:2,2
  40:8,11,14 46:20
  46:25 47:16 80:17
**best** 22:14 23:25
  24:2 25:14 26:21

34:10 35:1,2,4
36:9 42:21 63:8
71:25 77:7,11,12
77:20 86:12
**better** 33:18,19
35:12 42:9,9
**beyond** 39:20 43:1
43:21
**bid** 61:5,18 62:15
63:2,13,21,25 64:6
64:10 65:3 68:7,9
68:17,18,19,23
69:2,5,7,8 70:22
71:5,7 72:6 74:3,9
77:15 78:9 80:12
**bidder** 65:12 67:23
**bidders** 65:7,21
77:18
**bidder's** 65:17
**bidding** 12:10 64:22
68:3,5,10 69:24
77:11,22 85:13,15
86:1
**bids** 54:3 64:21
68:14 69:11 74:2,2
74:5 75:6 76:9,11
76:12,15,16,17
79:23 80:14 82:25
**BINGHAM** 8:2
**bit** 18:2,22 31:22
41:7 72:13 74:11
88:3
**black** 15:20 46:2
**black-line** 13:14
47:25 50:3,25 51:1
57:15 58:15 61:23
62:2,2,21 69:1
**Blank** 6:11 74:18
**board** 29:6
**body** 24:11
**Bonnie** 6:16 74:17
**Boston** 9:13
**bottom** 54:15
**bought** 22:19 38:9
38:10
**bound** 33:9

**breach** 56:1,5
**break** 39:25 45:14
46:22
**briefly** 53:3 55:16
77:1 80:3
**bring** 16:17 24:4
30:21 60:12 61:11
**bringing** 18:3 24:5
46:9
**brings** 17:23 37:14
61:4
**brokers** 18:24,25
27:2
**brought** 75:17
**BROWN** 8:10
**bulk** 68:19
**bundle** 76:1
**business** 22:8 25:18
26:13,19,24,25
27:5,12,16 28:1
30:17 31:19 43:16
44:20 48:4,6,13,14
62:14 63:13 64:24
65:5 66:18 79:10
84:10 85:14,21
**buy** 38:9 79:5
**buyer** 18:9 22:7
23:18,19 24:14,20
25:25 26:10,17,18
28:4 36:13,17,25
37:3 38:7,7,21
66:3
**buyers** 22:9 32:4
79:4,5,7,8 80:5
84:11
**buyer's** 28:6
**buying** 48:10

----

### C
**C** 2:2 10:6 11:23
12:14 13:1 91:2,2
**CA** 2:17 3:6 8:22
**call** 17:14 28:7
37:25 44:13 45:11
45:19 55:23
**called** 18:22 31:4

77:6
**CAMPBELL** 5:19
**Canpro** 5:12
**cap** 34:21,22 54:3,8
54:20,21,25
**capable** 77:18
**capacity** 39:4
**capital** 8:20 20:11
24:15 32:9,9,9,10
32:11 68:2,6
**capped** 34:17 54:4
**care** 13:16 14:1 15:8
16:16 37:7 38:25
47:17 50:16 55:7
57:2 60:25 66:9
67:24 76:21 78:10
80:21 83:5 84:16
89:10
**carefully** 51:16
**cares** 16:6 45:7
**CAREY** 1:22
**carried** 62:19 71:3
83:20
**Carrington** 53:22
**carry** 17:19 73:18
**carve** 88:16
**carved** 89:7
**carves** 56:1
**case** 1:4 16:21 17:2
23:25 27:1 32:1
33:18,19 34:10,14
35:2,2,4 49:13
53:9 59:9 64:16
69:12 72:8,9 87:20
**cases** 19:12 27:1
48:21 49:1,1 69:10
**cash** 23:10 24:21
53:24 54:5,17,24
68:10
**cause** 40:5 52:13
68:20
**caused** 14:10
**causing** 72:20
**Center** 3:4
**Century** 1:8 18:17
18:18,19 19:5,12

19:12,15,18,19,24
20:11 21:17 22:5
22:10 23:1 24:18
27:10 29:22 30:6
31:5,16 33:16,17
34:3,8,20 36:18,22
37:3,18,23 38:16
38:16 41:10 45:20
**CEO** 22:17 31:8
**certain** 12:4,13 19:6
33:12 39:12 40:22
43:4 62:10,12
88:12
**certainly** 24:21
35:10 41:9 42:9
**certificate** 52:16
**certification** 29:6
40:2 53:5 57:4
85:8 86:6 87:2,18
88:6
**certify** 91:4
**CF** 4:19 69:21 80:25
**chairman** 22:17
31:8
**chambers** 17:1
67:11 87:17
**chance** 14:12
**change** 16:12 25:2
52:10 54:20
**changed** 54:21
55:21
**changes** 13:12 15:20
15:24 18:7 25:8
28:21 50:21 52:9
53:15 55:5 56:23
57:13,13 58:14
61:18 67:19 74:23
**chaotic** 21:9
**Chapter** 48:25
49:12,14
**characterizations**
40:23
**charge** 31:10
**check** 15:2 87:22
**Chicago** 8:13
**Chipman** 4:23 69:20

69:21 70:12 80:23
80:24 81:2 83:3
90:7
**CHO** 8:24
**chosen** 46:21
**CHRISTOPHER**
2:11
**circumstances**
26:22 55:2 61:19
**cite** 49:18 51:6
84:24
**Citigroup** 5:20
**City** 32:6,14
**claim** 11:23 34:17
34:18,19,23 58:13
60:7
**Claimants** 5:3
**claims** 28:13,14,17
28:19 33:15 38:17
**clarify** 60:17 73:16
78:23
**clarifying** 14:11
**clarity** 69:7
**clean** 13:14
**clear** 17:8 21:2
24:20 30:2,10
38:20 42:4 48:13
48:17 52:11 56:21
58:1 59:5 62:13
67:15 68:3 72:22
78:24
**clearly** 51:17
**Cleary** 9:18 40:16
**CLERK** 35:24
78:16
**client** 72:16
**clients** 15:5,6 82:17
88:25
**close** 77:19 85:24
**closely** 24:4
**closeout** 40:24
**closing** 23:11 24:16
28:10 64:23
**COBB** 4:10
**cocounsel** 53:9
**code** 10:4,17 11:10

11:13 12:3 57:11
**collateral** 21:5 27:20
62:17 69:13 70:9
72:9
**collected** 72:1
**collections** 34:16
**collectively** 76:17
**Collins** 2:9 13:3,4,9
13:19 14:4,7,20,24
15:1,11,14,23 16:5
16:9,19 17:3,6,12
17:15,23 52:19,21
53:10 57:5,17 60:3
60:14,19,24 61:3
61:17,25 63:16
64:3,5,12,17 65:11
65:24 66:1,7,12,14
66:20 67:5,10,13
68:13,22 69:1,4,18
69:25 70:7,18
71:24 72:10,13
73:8,17 74:14
76:24 77:1 83:19
84:19,23 85:9
86:17 88:1,10 89:2
**collusion** 43:5 45:24
49:15
**come** 21:12,13 23:12
25:4 40:17 43:23
43:25 56:12 63:9
63:11 72:18 73:5
75:5,6 76:2,15
86:10
**comfort** 44:13 45:19
**comfortable** 47:13
74:20
**coming** 85:20
**commenced** 33:6
**commencement**
31:25
**comment** 66:9 73:7
89:3,7
**comments** 14:9
15:19 45:13 47:20
49:8 50:6,8 51:4
61:21

**commingled** 38:11
38:13 41:16
**commissioned** 75:20
**commitment** 19:9
**committee** 3:14 6:12
15:16 18:9,10 23:9
24:3,8,10 25:1,9
25:11,16 26:3,24
27:5,24 28:22
35:11 40:1 51:10
52:25 53:9 55:6
61:21 62:23,25
63:3,7 66:15 74:18
74:19,25 75:1,11
75:21 76:9 78:2
85:6 88:21
**Committees** 10:20
**committee's** 16:14
27:14
**commonly** 18:22
**communicate** 74:7
**communicated**
55:10
**communication**
72:12
**Comp** 5:3
**companies** 56:21
61:20 77:12
**company** 9:19 18:18
21:23 22:1,15,19
22:21 23:18 24:6
24:18 26:6 32:3,19
35:15 39:4 40:17
48:10 62:5 73:2
83:24
**company's** 77:3
**compare** 23:23
**compared** 60:1
**compelled** 21:4
**compensated** 28:9
**compensation** 11:1
16:11 75:19 88:11
**competitive** 77:21
**complained** 29:20
**complains** 37:24
**complete** 52:13

82:16
**completing** 41:17
**comply** 73:3
**component** 53:25
54:6,9
**components** 53:1,19
54:4,23
**compressed** 70:3
**comprised** 69:7
**concede** 44:8,9
**concepts** 28:21
**concern** 21:23 22:8
22:16 23:13 24:7
29:13 32:3,21,22
35:13,14 63:5
71:20 76:14,16
78:4 79:2,5,12
84:9
**concerned** 20:14
74:21
**concerning** 52:5
63:8
**concerns** 50:11,11
55:10,13 62:10
63:3
**conclude** 35:1,8 51:8
**concluded** 24:1 35:1
48:4 89:13
**concludes** 89:12
**concluding** 30:17
**conclusion** 44:6
65:15
**concur** 51:1
**condition** 43:18
**conditionally** 75:22
**conditions** 52:12
64:23
**conduct** 30:1 76:6
77:16
**conference** 61:10
**confidential** 10:21
15:17,25
**confidentiality** 15:3
16:2 81:13,17
**confirm** 39:14 41:23
58:17

conflict 15:2 56:19
confusion 38:1
connection 12:11
   13:17 14:2 15:4,9
   16:7,15,17 50:16
   59:6 67:25 70:22
   71:22
consensual 55:12,12
consent 16:1 57:7
   74:14 78:2
consequently 74:22
consider 12:15 41:5
   64:9
consideration 23:11
   53:22 54:2,3,7,14
   54:16 77:20
considering 43:13
   69:16
consistent 45:13
   56:21
constitute 69:8
construed 56:17
   71:15
consult 16:22 88:24
consultation 17:9,9
   62:24 75:10 76:8
consulting 57:19
consumer 31:18
   33:25 73:25 75:25
consumers 19:1
   21:21
consummated 18:21
consummation 54:1
contact 13:22 32:4
contacted 22:3 78:7
   79:6 81:3,4,7
contacting 32:5
contain 81:25
contained 71:5,21
   72:1
contains 42:25
contemplate 86:2
contemplated 23:10
   85:16,18
contemplates 87:3
contention 30:14

continuation 88:15
continue 73:3 78:8
   87:14
continued 17:20
   57:7 87:5,7
continuing 27:8
contract 56:1 64:25
   65:2,5 67:18
contracting 64:25
   65:9
contracts 12:6,13
   57:10 64:20,22,23
   65:13,20 66:4
contractual 56:5,6
contribution 56:7
control 59:9,16,22
   59:23,24
controlled 77:16
conversation 70:17
conversations 58:16
converting 13:13
conveyed 71:13
   72:10
convinced 24:7
coordinate 60:22
coordinated 85:20
   86:1
copies 17:1 62:1
   67:11 74:5
copy 13:14 46:25
   61:23 62:1 73:4
   87:17
corporate 29:25
corporation 18:19
   19:15,18 20:11
   21:17 23:1 24:19
   29:22 30:6 32:6,14
   33:16,17 34:3,20
   44:15,16 45:21
   68:2,6
Corporation's 19:19
   19:24 34:8
Corporation/Access
   37:19
correct 28:1 53:10
   60:14 78:25 79:3,6

80:11 81:4 83:2
   87:11,22 91:5
correctly 22:10
   25:12 26:1 87:10
cost 34:12,13
costs 60:7 63:4
   74:22 75:1
counsel 18:10 25:11
   25:18 26:1 29:6
   38:18 40:2,25
   41:10,11,14,21
   42:10 43:7,7 45:13
   46:1,1 51:10 52:16
   53:6,10 56:11
   71:24 87:2 88:6
counsel's 43:22
Countrywide 4:19
   62:16 69:22 80:25
couple 36:4 80:23
   83:7
course 17:1 43:16
   44:13 45:25 51:24
court 1:2 13:2,8,16
   13:18 14:1,5,14,23
   14:25 15:8,12,22
   16:3,6,16,20 17:5
   17:10,13,22 18:3,5
   18:14 20:18 22:4
   25:13,21 26:12
   28:25 29:11,13,15
   30:16,22 31:1,2
   35:20,22 37:7,11
   38:25 39:20 40:5,9
   40:12,18,19 41:1
   41:19 42:24 43:11
   43:17 44:4,7,12
   45:2,7,16 46:3,9
   46:11,18,19,24
   47:2,15,17,22
   48:16 50:7,15,20
   51:8,14,14,15 52:2
   52:5,20,24 53:7,16
   54:20 55:7,15,16
   56:6,22,25 57:2,16
   58:18 59:18 60:10
   60:15,25 61:7,24

62:4 63:10,14,24
   64:4,8,11,15 65:10
   65:23,25 66:5,9,13
   66:19 67:4,7,9,11
   67:24 68:12,21,25
   69:3,14,16,19
   70:11,14,24 71:17
   72:18 73:6,14,20
   74:13,16 75:8,17
   76:19,21,25 78:10
   78:13,14 80:18,21
   83:5 84:3,16,20
   85:3,10,14,19,24
   86:9,14,16,20,22
   86:25 87:3,11,19
   87:23,24 88:8,9
   89:1,3,8,10,12
   91:4
courtroom 31:3
   44:23 77:3
Court's 30:9 39:17
   42:17 43:18 52:1
   60:13 75:9 86:19
   87:13
cover 87:2,17
Co-Counsel 10:15
   11:9
creates 68:19
credit 20:4 32:7
   37:22 54:25 68:5,7
   68:9 69:8,23
credited 20:10
creditor 16:1
creditors 10:20
   15:16 16:14 18:8
   18:10 23:9 24:3,8
   25:1,8,13,21 26:12
   35:11 40:1 48:19
   49:3,4 51:10 52:25
   53:9 61:21 62:23
   62:25 66:15 68:5,9
   74:18,19,25 76:8
   78:2
credits 54:23
CREMONA 7:15
cross-defaults 19:25

**crystal** 38:20
**CT** 8:5
**cure** 12:14 67:15,17
**current** 15:5 36:15
  61:13
**currently** 37:2 50:13
  61:20 82:22 87:5
**custodian** 39:4
**customer** 21:10,18
**customers** 19:1,7,16
  19:16 21:14,19
  27:19 33:23 34:7
**cutting** 85:25

**D**

**D** 11:23 12:16 13:1
  90:2
**Dallas** 6:22
**data** 71:21,22 72:3
  72:25 81:22,23,25
**date** 10:16 28:10
  57:25 59:7,10,14
  59:16,21,21 61:11
  63:11,15,19,20
  66:16 87:6,8,9
  91:10
**dates** 59:21 63:17
  72:17 85:1
**David** 36:20 48:9
**day** 29:4,9,9 38:14
  38:24 60:9 63:13
  88:6
**days** 29:10 40:3,3
  62:15 64:24 65:5
  66:2,7
**day-to-day** 27:8
**DBA** 29:22
**DE** 2:7 4:5,13,21 5:5
  5:14,22 6:6,14 7:5
  9:5
**deadline** 17:20
  62:15 63:3,13,21
  63:25 64:6 65:3,25
  66:17 67:2,7 74:3
  78:9 85:19 86:3,8
  86:23 87:4

**deal** 18:6,7,11,25
  21:25 25:3 36:7,9
  39:24 40:3 46:21
  46:22 53:14,16,19
  53:24,25 54:10,12
  60:8 85:25
**dealing** 50:13
**deals** 30:11
**dealt** 37:16
**debt** 66:16
**debtor** 1:10 2:4,15
  3:3 22:13 26:24
  27:5,25 28:1,23
  29:21,25,25 36:6
  36:12,16,24 39:21
  40:1 41:6 43:15
  44:8,24 45:8 47:5
  49:9 50:17,20 51:6
  51:6 52:2,9 56:5
  58:23 59:8,12,16
  59:22 60:17 62:15
  68:8 72:4 75:12,14
  76:6 79:15
**debtors** 2:4 10:2,2,9
  10:9,13,13,15,19
  10:19,22,24,24
  11:5,7,7,9,12,12
  11:17,17 12:1,1,9
  12:9 13:5 15:4,17
  16:1 18:16,16
  21:24,24 22:19,20
  23:5,17,20,23,24
  25:3 30:6,16 31:11
  32:1,17,25 33:4
  35:1,9 38:2,12
  41:2,17 42:13,15
  42:20 44:6,7,11,17
  44:20 45:19,20
  46:8 48:4 49:20
  52:12 56:3 57:14
  57:19 58:2,7 63:3
  63:7 64:18 67:7
  68:16 69:24 71:3
  71:20 72:15 73:24
  74:7,20,25 75:6,23
  77:16,20,23,23,25

**Debtors-In-Posses...**
  11:5
**debtor's** 13:20,24
  14:8 15:15 16:10
  21:22 22:2 25:18
  26:25 27:15 28:9
  30:20 32:3 40:23
  40:25 41:10,13
  42:22,22 43:2,7,22
  48:14,18,21 49:1,4
  49:11,11,13,23
  51:19,19,20 52:22
  53:10 57:9 60:5
  61:5 69:10 71:4
**Debtor-in** 11:20
**debts** 26:7
**decided** 57:19 62:5,7
**decision** 69:15
**decline** 77:10
**declined** 32:16
**decretal** 52:11
**deduct** 34:13
**deducting** 34:12
**deem** 64:22
**deemed** 58:7
**Deeming** 10:5
**defaulting** 21:21
**defaults** 33:25
**defenses** 34:7
**defer** 56:2
**Deferred** 5:3
**deficiencies** 33:15
**define** 28:16
**defined** 62:8 71:4
**definitions** 28:16
**Delaware** 1:3,16
**delay** 40:6
**delete** 50:5,24
**deleted** 30:8
**deletion** 50:9
**delivered** 67:12
**delivering** 87:17
**demonstrate** 77:18
**DEPARTMENT**
  6:2
**depending** 21:6

**deposit** 68:10
**derivative** 71:19
**describe** 18:10 56:2
**described** 25:12
  47:6
**designates** 65:12
**despite** 22:7
**detail** 42:14 53:5
**detailed** 81:15 82:6
  84:12
**details** 22:22 41:19
**determination** 41:3
  60:5 69:8,13
**determine** 48:22
  66:3 76:7
**determined** 20:5
  42:20 67:15 76:16
**determines** 56:6
**Determining** 10:7
**Deutsche** 8:3 9:11
  32:7 37:15,23 38:2
  38:9,14,17 39:3
  42:11 46:2
**developed** 82:22
**dictating** 48:25
**difference** 45:3
**different** 32:6 41:16
  41:17 79:16,18
  80:1
**difficult** 74:11
**difficulty** 59:6
**diligence** 32:15 66:3
  81:20
**DIP** 65:6
**direct** 36:2 51:18
  75:25 78:20 81:1
  83:8
**directly** 16:3
**director** 36:24
**disagree** 17:1 40:20
  40:22 43:8 44:5
  47:20
**disagreeing** 42:24
**disallowed** 73:11
**disappear** 24:8
**Discontinuing** 10:5

| | | | |
|---|---|---|---|
| **discretion** 44:14 76:8 | **61:**10 70:18 80:2 | **entail** 80:3,4 | 63:8 |
| **discussed** 46:17,18 80:2 | **early** 63:23 | **enter** 43:2 76:19 | **estates** 24:2 30:20 32:20 33:13 35:13 |
| **discussion** 43:22 46:12 | **earn** 54:18 | **entered** 78:25 85:14 86:7 | 45:23,23 77:8 78:1 |
| **discussions** 17:16 52:24 78:7 87:14 | **earned** 55:2,3 | **entering** 44:22 85:19 | **evaluation** 84:12 |
| **disgorgement** 56:17 | **East** 4:11 7:21 | **enterprise** 18:23 | **event** 25:22 56:17 68:7 |
| **dispose** 44:16 58:10 58:11 | **easy** 60:4 67:21 | **entertain** 46:15 66:25 | **Everybody** 47:9,10 |
| **dispute** 41:13,18 42:15 44:23 56:5 59:11,19,25 60:12 | **Ebbets** 52:6 | **entirely** 80:1 | **everybody's** 30:15 |
| | **economic** 53:1,5,13 | **entities** 15:6 32:6,12 33:14 | **everyone's** 40:10 |
| | **economically** 54:9 | | **evidence** 25:19 51:9 69:9,17 70:1,5 |
| **disputes** 42:12 | **economics** 18:7 24:9 | **entitling** 56:11 | **exactly** 42:18,19 46:16 54:16 55:1 |
| **distinction** 45:1,2 | **educed** 51:9 | **entity** 18:5,21 19:7 19:13 23:12 28:8 72:20 | 78:23 79:19 |
| **District** 1:3 71:17,17 | **Edwards** 4:18 69:21 80:24 | | **EXAMINATION** 36:2 78:20 81:1 |
| **diverge** 63:7 | **effect** 69:12 72:3 | **entry** 12:2 68:3 | 83:8 90:4 |
| **division** 62:6,7,9 63:6 | **effective** 57:21 | **equal** 34:21 | **examine** 35:20 37:7 78:10 80:22 83:5 |
| **docket** 87:1 | **effort** 22:6 32:5,20 45:14 | **equipment** 79:15 | 84:16 |
| **docketed** 86:10 | **efforts** 22:2,3,7 23:8 79:8,11,23 | **equity** 23:16 27:23 33:2 | **examined** 39:18 |
| **dockets** 41:18 | **either** 21:5 22:14 32:18 37:22 60:11 63:22 67:4 68:17 76:16 85:4 86:5 | **equivalent** 51:23 | **example** 28:19 79:15 82:17 |
| **document** 28:25 39:14 | | **error** 50:2 | **exceed** 20:6 74:4 |
| **documents** 29:4,8 70:7 | **elaborate** 25:7 | **especially** 51:15 | **excess** 35:14,16 |
| **Dodge** 4:18 69:21 80:24 | **elect** 76:6 | **ESQ** 2:9,10,11,19 3:9,18 4:7,15,23 5:7,8,16,24 6:8,16 6:24 7:7,15,24 8:7 8:15,24 9:7,15,23 | **Excuse** 79:21 |
| | **Electric** 9:3 68:2,6,8 | | **executed** 15:3 73:4 |
| **doing** 32:15 38:5 52:3 | **electronic** 91:5 | | **executes** 16:2 |
| **dollar** 35:10 | **element** 52:6 | | **executing** 15:7 |
| **dollars** 20:6 23:3,21 23:23 24:1 25:5 35:3 53:24 76:3 | **eleven** 58:25 | **essence** 27:4,10 51:5 54:5 | **executive** 22:5 31:5 31:17 |
| | **ELLIS** 8:19 | **essential** 51:11 77:25 | **executory** 12:6,13 57:9 65:20 67:17 |
| **door** 65:4 | **Embarcadero** 3:4 | **essentially** 20:14 24:15 29:19,21 39:11 73:11 | **exercise** 20:2 21:4 44:14,20 47:2 |
| **drafting** 50:2 | **emergency** 11:17 12:9 26:23 | | 48:13 |
| **drew** 30:8 | **employee** 24:17 | **establish** 61:5 65:1 75:12 | **exercising** 27:13 30:17 39:21 |
| **Drive** 8:12 | **employees** 26:7 28:12 75:20,20 76:3 88:4,12,21,22 | **established** 26:21 85:1 | **exhibit** 14:15,16,22 15:5,6 57:20,23,23 57:24 59:7 71:6 |
| **due** 66:3 81:20 | | **establishing** 10:7,25 12:12 16:11 | |
| **duly** 35:23 78:15 | **employment** 10:14 11:3,8 34:23,24 56:23 | **estate** 7:19 18:4,8 25:14 28:2,13,18 34:25 36:10 42:22 44:10 51:19,19 | **exhibits** 14:15 |
| **E** | **encourage** 77:17 | | **exist** 27:4 |
| **E** 1:21,21 2:2,2 13:1 13:1 90:2,3 91:2 | **enforce** 71:10 | | **existing** 32:23 86:1 |
| **earlier** 21:12 37:18 | **enforced** 68:20 | | **expanded** 44:19 |
| | **engagement** 53:1 55:25 56:10,13,16 56:19 | | |

| | | | |
|---|---|---|---|
| **expect** 26:4,5 40:1 53:4 57:3 85:7 | 27:22 29:8 30:19 42:21 43:3 45:22 | **finalizing** 28:25 | **following** 63:13 64:13,21 67:3,16 |
| **expecting** 82:24 | 45:22 46:8 48:1,2 | **finally** 18:11 56:18 | **follows** 25:17 |
| **expedited** 18:3 23:4 24:4,5 67:22 | 48:5,8 51:8 77:16 77:22 80:8,14 | **financed** 20:3 27:3 38:8 | **foot** 42:14 |
| **expeditious** 77:24 | **fairly** 60:4 64:19 | **finances** 19:2 | **footnote** 62:3,22 75:11 |
| **Expense** 11:21 | **faith** 22:7 26:11 | **financial** 8:20 11:4 | **forbearance** 20:25 |
| **expenses** 11:1 26:8 58:13 78:3 | 43:5,19 49:15 50:14 52:5 | 13:21 19:19,24 23:1,6 26:3 33:16 | **forbearances** 20:24 |
| **experience** 31:24 | **familiar** 83:10 84:5 | 33:17 52:23 65:1 | **forbeared** 27:13 |
| 33:11 79:13 | 84:7 | 65:17 72:1 79:6 | **forces** 38:18 |
| **expire** 20:25 | **far** 20:13 35:14 43:1 | **financially** 77:18 | **foreclose** 21:4 27:20 69:16 |
| **explaining** 84:11 | 72:8 86:13 | **financials** 24:12 | **foreclosing** 59:19 |
| **explored** 21:25 | **fashion** 22:22 32:19 | **financing** 11:21 | 60:11 |
| **expressed** 22:9 | 77:17 | 18:24 19:8 21:15 | **foreclosure** 35:18 |
| 32:13 50:18,22 | **FastCall** 83:13 | 37:18 | **forego** 72:2 |
| 81:8,11 | **Fatell** 6:16 74:17,18 | **find** 48:7 61:20 | **foregoing** 91:5 |
| **extend** 13:23 21:1 | **favor** 30:18 47:5 | **finding** 44:17,24 | **form** 12:16 13:12 |
| **extended** 60:8 | 49:10 | 45:25 46:7 47:25 | 16:2,13 23:12 29:7 |
| **extension** 10:10 | **February** 18:21 | 48:3,8 49:23 50:10 | 29:18 30:10 39:7,8 |
| 13:21 | 22:19 | 50:12,14 51:11 | 39:18,24 40:2 |
| **extensions** 13:25 | **federal** 11:19 51:15 | **findings** 30:9 42:15 | 42:12 43:15,24,24 |
| **extensive** 22:1 54:15 | **fee** 53:25 54:1,12 | 42:25 43:1,19 | 45:12 46:2,23 |
| **extensively** 23:7 | **feel** 21:3 | 45:18 52:5 | 50:12,16,21 52:15 |
| **extent** 24:17 39:16 | **fees** 34:15 54:24 | **fine** 17:12 48:5,12 | 53:4 55:14 56:15 |
| 41:4,25 42:10 47:4 | 55:2,18,19 56:11 | 60:19 64:3 66:5 | 56:20,24 57:15 |
| 49:9,10 52:7 56:19 | 56:13 | 69:24 86:9 | 58:15 61:13 62:22 |
| 59:14 63:6 64:21 | **fi** 81:12 | **finger** 2:3 10:15 | 67:20 73:11 86:25 |
| 74:2 | **fifteen** 58:24 81:10 | 13:4 14:9 46:16 | **format** 46:3 |
| **extra** 61:25 | 81:18 | 86:19 | **formed** 82:12 |
| **extremely** 33:22 | **Figueroa** 8:21 | **fire** 30:8 | **former** 15:6 36:16 |
| | **figure** 31:13 32:1 | **fire-sale** 35:17 | **forth** 13:7 40:21 |
| **F** | **file** 10:10 13:21 | **firmly** 24:7 | 42:5 47:1 52:12 |
| **F** 1:21 47:25 50:10 | 14:10 23:9 39:6 | **first** 13:9 17:13 36:5 | 70:7 87:6,13 |
| 50:12 91:2 | 60:7 65:19 87:1 | 47:3 50:9 53:19 | **Fortress** 32:11 |
| **faced** 22:13 | **filed** 13:11 20:24 | 54:9 58:3 62:2,22 | **Fortunately** 31:9 |
| **facially** 44:18 | 21:24 23:9 33:9 | 69:4 73:23 | **forty** 23:18 |
| **facilities** 19:3,21 | 37:15 49:2 61:9 | **firsthand** 31:15 | **forty-five** 66:2,7 |
| 20:1 | 71:2 73:22 | **five** 47:8 | **forum** 42:8 |
| **facility** 20:8 21:7 | **files** 58:4 | **fix** 84:25 | **forward** 51:12 63:21 |
| 34:19 39:5 | **filing** 87:16 | **flat** 53:25 54:12 | 64:7 75:7 76:18 |
| **fact** 25:4 33:5 45:21 | **final** 10:3 11:18,24 | **Fleig** 22:17 23:7 | **founder** 22:18 |
| 57:22,25 58:21,21 | 13:10,12,13 29:8 | 25:25 28:8 31:7 | **four** 25:5 35:10 47:8 |
| **factors** 35:9 | 52:16 59:14 | 34:23 36:20 37:3 | 54:1 |
| **failure** 34:8 | **finalize** 29:4 | 48:10 | **fourteen** 41:13 |
| **fair** 20:5 24:1 25:15 | **finalized** 86:25 | **floor** 25:5,25 26:9 | **FOX** 7:2 |
| | | **focused** 79:11 | |

**frame** 70:3,6
**Francisco** 3:6
**Frank** 50:10,12
**frankly** 18:7 23:24
   30:14 31:22 38:1
   38:13
**free** 30:2,9 33:10
   72:22
**frequently** 59:12
**Freres** 11:4 77:3
**Friday** 64:9,11
   85:15,20 86:3,8,10
   86:24 87:6,20
**friends** 18:8
**front** 5:13 14:21
**full** 35:24 69:4 78:16
**fully** 82:12,23
**fundamental** 46:5
**funding** 27:8
**Funds** 32:9
**funny** 40:17
**further** 13:25 46:12
   50:21 77:15 81:8
   83:3 86:16
**future** 10:6 49:1
   59:2,11 62:20 65:2
   65:19 66:22 73:5

———————
**G**
**G** 8:15 13:1
**Gallerizzo** 9:7 68:1
   68:2
**gathered** 61:15
**GEBHARDT** 9:2
**GECC** 62:15 69:23
**general** 9:3 68:2,5,8
   82:6,10
**generally** 28:21
   83:12 84:10 88:10
**Georgia** 49:8
**getting** 24:20 27:25
   41:8,11 70:4
**give** 16:23 18:1 20:4
   26:5 29:3 37:22
   42:14 53:13
**given** 17:1 32:16

42:4 43:3 46:1,20
48:21 54:6,17 58:5
59:3 63:1,21 65:18
67:2 68:18 74:8,10
78:25 82:25 88:23
89:5
**giving** 48:8 75:4
**Global** 5:20
**GMAC** 4:19 69:21
   72:7 80:25
**go** 30:25 31:2 39:23
   41:18 42:13,16
   43:1 44:24 45:7
   50:12 51:4,12
   52:18 53:14,17
   64:7 66:11 70:24
   73:12
**goes** 39:20 54:7
   62:24,24
**going** 19:14 20:25
   21:15,22 22:8,16
   23:12 24:7,24 27:5
   29:3 32:3,13,21,21
   34:4 35:13,14 37:3
   40:5 42:7 45:10
   46:5,6 52:24 54:24
   58:6 63:5,21 70:1
   70:2 71:6 72:3
   74:7 75:7 76:14,15
   78:3 79:2,5,11
   82:13,25 84:9
**Goldman** 9:19 19:5
   20:2,3,7,10,12,14
   20:15 24:22 27:14
   28:19 37:16,18
   38:8,9 39:5 40:17
   40:21,22,25 41:8
   41:13,15,22,24,25
   46:1 47:17,19
**Goldman/Deutsche**
   30:11
**good** 13:2,3 17:7
   22:7 26:10 37:9
   39:2 40:15 43:5,19
   45:9 49:15 50:14
   52:5 53:8 55:9

58:19 66:12 68:1
70:15 74:17 83:15
**goodly** 19:17
**gotten** 26:21 41:21
   49:25
**Gottlieb** 9:18 40:16
**governs** 30:4
**Granite** 53:20
**granted** 47:4 49:7,8
   55:18,21
**granting** 10:10
   11:15,22,23 12:17
   12:18 13:20 52:8
**greater** 54:14 68:19
**greatest** 22:11
**Greenwich** 8:20
**GREY** 5:8
**grounds** 16:4
**group** 31:18 32:7,14
   79:17,18 80:5
**guarantee** 25:3
   27:10 33:15 35:10
**guaranteed** 26:20
   33:16 34:20
**guarantees** 22:25
**Guaranty** 19:6
   20:20,22 23:16
   27:8 33:3,7,21
   35:6 46:6,6,17
   51:13
**guard** 51:15
**guess** 37:21 69:14
   70:2,19 73:12

———————
**H**
**H** 5:7
**Hahn** 3:13 25:11
   53:9
**half** 20:6 23:3,20,22
   23:25 25:5 35:3,10
   55:22
**Hamilton** 9:18
   40:16
**hand** 13:14 16:13
   46:4 69:14
**handed** 59:17

**handful** 18:11
**happened** 20:6 27:7
**happening** 21:17
**happens** 21:3,3
**happy** 40:11 43:6
   55:13
**hard** 74:20 75:12
**Hardt** 6:19 70:16
**Harr** 6:19 70:16
**Hartford** 8:5
**HASTINGS** 7:18
**hat** 41:11
**heads-up** 86:3
**hear** 13:17 14:2 15:9
   16:7 29:11 37:8
   43:12 44:1 45:5
   50:19 57:2 61:1
   84:17 89:11
**heard** 13:17 14:1
   15:8 16:7,17 39:1
   43:12 45:7 47:17
   50:16 55:8 57:2
   61:1 66:10 67:25
   76:22 89:10
**hearing** 10:2,9,13,19
   10:24 11:3,7,12,17
   11:24 12:1,9,15
   13:10 21:2 29:7
   38:19 57:7 61:14
   62:4,19 63:20 64:7
   64:8,15 66:16,23
   67:1,8,16 68:16
   70:13 71:4 72:16
   73:18 75:3,17
   85:13 86:21,23
   87:6,8,9,20 88:17
   89:12
**heart** 53:18
**helped** 27:16
**helping** 77:21
**Hessen** 3:13 25:11
   53:9
**higher** 88:18 89:7
**highly** 33:6,7
**historic** 20:17
**historically** 19:3

**history** 31:19
**hold** 21:18,19 64:8
**holding** 38:12 88:17
  89:6
**Holdings** 1:8 18:17
**home** 27:3
**HON** 1:22
**Honor** 13:3,4,5,9,19
  13:22 14:4,7,9,12
  14:20,22 15:1,11
  15:15,18 16:5,9,9
  16:12 17:4,6,7,12
  17:15,18,23 18:1
  25:10,11,16 26:5
  26:23 27:1 28:4,15
  28:22 29:2,6,17
  30:24 37:6,10,13
  37:14 39:2 40:11
  40:15 42:3 44:11
  45:9,11,17,18
  46:14,16,20 47:16
  47:18 50:8,12,19
  50:23 51:1,4 52:19
  53:8,10,12,18
  54:15,22 55:6,9,14
  55:17 56:9,18,24
  57:5,6,11,12,22
  58:13,19 60:3,14
  60:16,19 61:3,17
  61:17,23 62:2,12
  62:21 63:1,6,9,11
  63:16,17,18 64:3,7
  64:13,18,18,19
  65:11 66:1,8,12,16
  66:20,25 67:5,13
  67:19 68:1,13,22
  68:24 69:1,18,20
  69:22,25 70:12,15
  70:17 71:1,14,19
  72:4,14,19,23 73:7
  73:15,16,17,21
  74:10,15,17 76:13
  76:18,24 77:1,2
  78:12 80:17,19,20
  80:23 83:4,19,25
  84:15,19,23 85:2,9

85:12 86:18 87:10
  87:22 88:1,6,7,10
  88:20 89:2,5
**Honor's** 75:4 87:7
  88:16
**hope** 2:16 30:13
  57:21
**hopefully** 55:4 79:5
  86:3,5 87:15
**horse** 54:3 63:2
  67:22 74:10
**hour** 29:2 55:22
  63:25
**hours** 74:4
**housekeeping** 85:12
**hundred** 18:17
  53:23
**HURFORD** 5:24
**HUSTON** 5:7

_____
**I**

**idea** 67:20
**identifiable** 34:2
  74:6
**identification** 19:9
**identified** 19:17,22
  21:16 34:4 57:20
  64:22 65:13,21
  79:4
**identify** 22:7 79:8
**identifying** 80:5,9
  82:13
**II** 12:17
**IL** 8:13
**imagine** 29:12
**immediately** 65:3
**Impact** 32:8
**impermissively** 49:3
**implicate** 47:11
**implicated** 74:6
**importance** 18:4
**important** 15:24
  21:11
**importantly** 25:1
**impose** 52:2
**impossible** 74:13

**improvements**
  24:13
**incentive** 54:6
**incentivize** 23:17
**inclined** 52:10
**include** 17:9 24:14
  31:7 35:1 38:22,23
  43:19 62:7 65:7
**included** 19:11 22:1
  43:21 62:17 65:17
  66:20 69:6 88:18
**includes** 24:17 60:18
  88:22
**including** 12:14 26:7
  26:7,8,8 27:1 32:6
  71:9
**incomplete** 41:9
  42:5
**inconsistent** 41:9
  42:5
**increase** 54:6
**increasing** 77:19
**increments** 55:23
**incur** 58:11
**incurred** 88:12
**incurrence** 78:3
**indemni** 56:4
**indemnification**
  55:23 56:7,20
**indemnify** 56:4
**indicate** 38:20 55:14
**indicated** 43:23
  46:15
**indicates** 56:1
**individual** 16:25
  36:21 79:9,14,20
  79:24 80:4,13
  83:24
**individually** 80:7
**indulge** 78:13
**indulgence** 86:19
**industry** 31:24
**inevitably** 32:22
**inform** 62:15 86:24
**informal** 14:9 17:18
**information** 10:22

10:22 15:17,18,25
  24:11 25:16 27:25
  41:9,12,20,22 42:5
  42:6,9 62:16 65:1
  65:8,17 71:25 74:6
  81:15 82:21
**informed** 71:24
**initial** 54:23
**injunction** 72:24
  73:1
**insert** 76:11
**inserted** 73:24
**insider** 37:2
**insist** 46:6
**insisted** 25:23
**insolvency** 56:18
**insure** 77:21
**insuring** 25:21
**intellectual** 71:3,10
  71:23 72:6
**intend** 87:1
**intends** 73:3
**intent** 59:4 64:24
**interest** 22:9,11
  26:17 32:13 36:13
  36:17,22,24 37:4
  48:18,23 63:6 70:8
  72:22 81:8,11
  85:21
**interested** 32:4
  77:13 81:23
**interesting** 20:17
**interests** 25:14
  36:10 48:19,20,20
  63:8
**interim** 10:3,25
  11:18 13:13 16:11
**investigations** 58:5
**investment** 32:4
  77:4 78:8 79:14
**Investments** 5:12
**investors** 21:16 22:3
**involve** 22:16 51:20
**involved** 31:14 32:5
  61:8 75:1 77:4
**involves** 18:15 37:24

**involving** 21:23
24:22 38:2
**issue** 25:17,20,20
29:12 43:13 46:4
46:16,16 55:8
59:17 62:24 73:25
74:8,9 88:20 89:11
**issued** 71:16
**issues** 18:13 20:15
28:5 30:12,13 38:1
38:2,15,23 39:7,9
40:7 43:7 45:4,12
58:22 60:1 75:23
**item** 13:9,19 14:7
15:14 16:10 17:15
17:24 52:22 57:6,8
61:4
**items** 14:11
**IXIS** 24:22 37:25
38:8

**J**

**J** 1:22 48:12
**JANOFSKY** 7:18
**Joe** 45:9 55:9 73:21
**joined** 31:5
**joining** 31:16 71:18
**joint** 16:24
**Joseph** 5:7,8 6:8
17:7
**JUDGE** 1:23
**judgment** 26:25
28:1 30:17 44:21
48:4,6,13,14
**June** 59:25
**jurisdiction** 39:17
42:17,24 43:14
47:3 51:16 56:22
**jurisdictional** 29:14
43:13 45:4
**JUSTICE** 6:2

**K**

**KAYE** 7:10
**keep** 21:8,10 27:12
55:22 58:10
**KEVIN** 1:22

**keys** 59:17
**kill** 27:4
**KIMBERLY** 7:24
**kind** 59:10 67:6
**King** 2:6 5:21 6:4
**KIRKLAND** 8:19
**know** 17:2 28:14
41:19,21 42:23
43:21 48:6,9,11,21
50:20 53:16 61:15
65:3 66:25 67:7
70:5 73:12 74:11
75:14 80:6,16,16
82:7,11,12,20,20
82:20 83:13,13,16
83:18 84:8,11
**knowing** 72:8
**knowledge** 31:15
36:12,15,22,23,25
37:1,2 71:25
**known** 18:18,19
**knows** 58:9
**Kopf** 6:19 70:16

**L**

**L** 48:23
**Laminar** 32:9
**LANDIS** 4:10
**landlord** 34:19 58:9
59:12,15,24 60:6
60:12
**landlords** 58:1,2,8
**language** 30:22 43:6
48:12,24 49:2,16
55:1,20,25 56:3,15
59:18 60:11,18
72:23,24 75:13
**large** 19:11 21:16
**largely** 18:12
**lastly** 28:15 76:4
**late** 63:22
**law** 5:11 29:25
**lays** 53:4
**Layton** 2:3 10:15
13:4 14:8 86:19
**Lazard** 11:4 22:1

32:4 52:23,25
53:11,12 55:11,18
55:21 56:4,11 77:3
78:23 79:8,17
**Lazard's** 55:6,20
56:6,23
**lease** 34:17,18,19
58:4 60:8
**leases** 12:4,6,13 26:8
57:10,20,23,24
58:23,24,24 59:1,7
60:18 65:20
**LEE** 5:2
**Lefkovits** 77:3 78:11
78:18,22 83:10
84:17 90:6,7,8
**left** 24:18
**lender** 35:18
**lenders** 20:2,20
22:25 27:7,20 72:8
**Lending** 18:19,20,22
19:1,4,8,14,23
20:1,4,9,13,21,24
21:8,15,25 22:18
24:12,18 29:23
31:7,8,13 32:2,24
33:10,14,23 34:7
34:14 36:5,17
37:19 38:11
**Lending's** 19:16
21:13,18 22:2
**length** 43:5 49:15
50:14
**letter** 55:25 56:10
56:13,16,20,20
**let's** 16:23 23:14
**LEVINE** 5:19
**liabilities** 24:16
**Liberty** 9:20
**lien** 85:22
**liens** 11:22,22 30:2
**light** 85:4
**likelihood** 77:19
**limitation** 13:24
**limited** 55:21
**limits** 51:15

**Lincoln** 6:21
**line** 15:21 46:3
54:15
**lines** 29:20 72:7
**liquidate** 26:7 32:18
33:10
**liquidated** 35:15,17
**liquidating** 22:21
**liquidation** 22:14,20
23:23 25:23 26:4
26:14 33:1,5,20,22
35:2,12
**Lisa** 9:23 40:16
47:18
**list** 60:20 67:17 70:9
73:18 81:25 82:3,5
82:6,9,16,17,23
**listened** 47:24
**listing** 82:7
**lists** 15:5
**Literally** 29:2
**litigation** 27:21
**little** 18:2 25:25 41:7
88:2
**LLC** 11:4
**LLP** 4:18 7:10,18
8:2,10 9:10,18
11:9 40:16
**lo** 19:18
**loan** 12:11,15 19:3
19:10,11,25 20:8
34:16 61:6 62:8,17
71:8,18 74:21
75:21 76:9 77:5,7
77:21 78:4,5 83:11
88:4,13
**loans** 19:1,13,20,22
20:3,4,5,11,12
21:5,14,20 23:17
24:24,25 27:2,9,22
27:23 33:2,10,16
33:20,25 34:3,4,9
37:21,23 38:8,23
38:23 41:13,15,15
41:18,24,24 42:1
53:21 70:8

local 55:22
locations 58:6
Logan 2:19 17:24
  18:1 25:11 29:17
  31:3 37:9,14 39:6
  42:18 45:17 46:11
  46:14,22 50:19,23
  85:12 86:12,15
Logan's 43:8
Lone 32:8
long 22:6,23 29:1
  48:12,23 60:20
  67:11 86:9
longer 43:9 71:23
  76:1
look 51:24 52:3
looked 25:15
looking 32:15 66:23
  80:4
looks 50:4
Los 2:17 8:22
lose 26:18 72:20
lot 25:15 26:5 29:19
  31:20 43:23
Lynch 32:8
L-E-F-K-O-V-I-T
  78:18

**M**

M 90:3
MA 9:13
Madison 3:15
Main 32:9
maintain 27:16
maintained 21:22
  27:6
maintaining 22:15
  23:12 63:4 77:25
  78:3
maintains 35:13
major 54:9
majority 58:20
making 30:9 38:20
  67:20
management 32:23
manner 12:16 44:17

49:20,23 51:2
  77:24
mara 26:20
March 88:14
Marcos 2:10 86:18
Mark 2:9 3:18 5:24
  6:24 9:15 13:4
  25:10 39:2 53:8
  70:15
market 1:15 4:12,20
  5:4 6:13 7:4 9:4
  20:5 32:3 78:23
marketed 25:19
  76:14
marketing 22:1
  25:17 52:7 70:1
  78:5 79:1,16,23
  80:1
Markets 5:20
material 13:12
  15:23 57:13 64:23
  67:19
MATT 4:15
matter 1:6 13:23
  17:19,25 29:24
  53:18 85:13 86:20
  87:15,19 88:1,25
  91:7
matters 13:6 56:22
MAW 8:10
maximize 23:18
  32:20 77:8 79:20
  79:23
maximizes 30:20
maximizing 25:22
  78:1
maximum 33:2 70:4
MAYER 8:10
MCCUTCHEN 8:2
MCGUIRE 4:15
McMahon 6:8 13:22
  17:7,8,11,14 45:9
  45:10 50:7,8 55:9
  55:9,17 57:1 73:21
  73:21 89:3,5,9
mean 83:12,12

meaning 61:8
means 49:3
mechanism 59:10
  59:25 72:17 87:14
meeting 69:5
mentioned 21:12,12
  25:2 37:17 50:10
Meola 22:5 23:5
  31:3,4,8,9,10,16
  32:17 34:5 35:20
  36:1,4 37:7 90:5
Meola's 31:12
Merchant 32:10
merits 41:5
Merrill 32:8
Mersky 4:7 58:19
  58:20 59:20 60:16
  60:23
met 61:10
method 77:11
MICHAEL 9:7
Mike 68:1
Milestone 32:10
Milford 5:14
million 20:6 23:3,21
  23:22 24:1 25:5
  26:1,9,16 34:1,11
  35:3,10 53:23
  75:18 76:2,2
minimum 26:16,20
  43:20
minor 60:1
mishap 67:14
missing 14:18
mo 22:11 42:6
modi 57:22
modifications 50:18
  53:3
modified 53:18
  64:19 65:6
modify 47:3 53:11
moment 14:22 16:13
  40:6 68:23,24
  84:17
MONACO 4:2
Monday 64:13

money 19:1 38:10
monthly 54:24
MONZACK 4:2
Morgan 32:8 85:18
  85:22,25
mortgage 9:19
  19:15,18,19,24
  21:17 27:2 31:17
  31:19,24 34:3,8,20
  40:17
motion 10:2,9,19,24
  11:12,17 12:1,9
  13:10,11,17,20
  14:2 15:15 16:7,10
  16:17 20:25 23:10
  42:19 44:8,18,18
  44:19 47:4,6 48:18
  49:8,24 50:1 51:2
  51:3 57:9 61:5,8
  67:25 71:4 76:23
  77:2
motions 65:19
move 76:18
moved 57:22 63:25
Munsch 6:19 70:16
mushed 45:4
Mutual's 31:18
Myers 2:14 3:2 11:9
  17:16,24 41:21
M-E-O-L-A 31:4
  36:1

**N**

N 2:2 13:1 90:2,3
  91:2
name 35:24 78:16
  91:13
names 16:23 83:16
narrow 43:8
Nathan 78:18
National 22:10 32:6
  32:14 39:3
nature 26:24 65:18
NE 5:13
necessarily 84:7
necessary 29:24

42:17 47:4,8 49:9
73:14
**need** 18:3 34:14,16
43:25 67:16 68:9
70:5 88:8,20,24
**needs** 51:14 59:10
59:25
**nego** 43:4
**negotiate** 18:9 22:15
25:5 28:4 32:21
**negotiated** 23:6 25:3
25:8 33:20 35:11
36:7 53:25 75:3
**negotiating** 25:24
26:10 29:3 53:11
55:3
**negotiations** 54:15
74:24
**NETIXIS** 37:24
41:15
**network** 18:24
**new** 1:8 3:16 7:13,22
9:21 18:17,18,19
19:5,12,12,14,18
19:19,24 20:10
21:16 22:5 23:1,18
24:18 27:10 28:8
29:22 30:5 31:5,16
33:15,17 34:3,8,20
36:18,22 37:2,18
37:23 38:16,16
41:10 45:20 59:6
**NEWMARCH** 7:24
**niche** 18:22
**NICHOLAS** 7:15
**nineteen** 31:19
**Nixon** 9:10 39:3
**non** 12:6 44:12
**nonclusive** 51:8
**Nonresidential** 12:4
**non-debtor** 18:5
39:22 41:2 44:9,15
44:16,16 48:22
**non-debtors** 29:16
**non-debtor's** 18:16
28:24

**noon** 67:6
**normal** 20:9 24:15
**North** 2:6 4:4,20 5:4
5:21 7:4
**Northern** 71:17
**noted** 57:6 58:14
**notice** 12:14,16
16:14 43:4 49:15
49:20,23,25 51:2
59:3 60:18 64:1,19
64:24 65:16,22
77:11,14 79:4
**noticed** 62:3
**notification** 64:6
**notified** 74:3
**notify** 63:19
**notwithstanding**
67:21
**number** 13:5,20
14:8,11 15:14
16:10 17:15,24
18:6 19:12,17
26:11,11 27:19
28:5 34:1 38:1
50:24 51:1 52:22
52:24 57:6,8,12
61:4,18,20 78:6,7
79:6 81:3,10
**numbered** 50:13
**nunc** 10:16 57:18
**NY** 3:16 7:13,22
9:21

─────────
**O**
─────────
**O** 1:21 13:1 90:3
91:2
**object** 59:15 72:16
72:21 83:19
**objected** 57:18
**objecting** 58:17
59:15 61:22 62:11
**objection** 14:3 17:20
25:24 39:5 40:22
42:7 50:10 66:17
66:21 67:6 71:1,9
71:15 73:13,18

80:17 83:20 86:23
**objections** 13:11
18:6,12 24:23
29:21 37:15 43:11
57:12,17 58:16,20
61:12 62:13,18
66:16 67:1 70:13
73:10 85:5 86:7
**objector** 50:9
**objectors** 29:11 82:4
82:9
**obligated** 33:24
**obligation** 26:16
56:4
**obligations** 20:10
21:19 56:6 58:11
73:2,3 88:11
**obtain** 15:25 77:12
**obtained** 27:22
68:18
**obtaining** 78:1
**obviously** 34:15
58:11 68:16 70:3
87:12,16
**occur** 30:7
**occurred** 33:21
**offense** 47:22
**offer** 32:13,16
**offers** 76:10
**office** 6:3 15:19 17:9
17:17 55:18 74:3,8
74:9
**officer** 36:12,15,16
36:16,18,21
**OFFICES** 5:11
**official** 62:25 91:5
**oh** 63:18
**okay** 14:25 16:19
17:3,6 45:16 53:17
55:17 60:24 61:25
64:12 66:19 67:5,9
70:11 73:15 82:24
83:3
**omnibus** 87:8
**once** 47:7 50:25
84:25

**one's** 21:6
**ongoing** 63:1,4,9
69:12 77:4 78:2,6
**online** 81:23
**open** 66:5 67:4
77:17
**operating** 79:9
**operation** 31:10
**operations** 79:16
84:9
**opportunity** 75:5
77:7
**opposed** 43:2 49:25
55:19,24 79:9
**opposing** 46:1
**Option** 32:7
**options** 46:21
**Orange** 4:4
**orchestrate** 22:14
**order** 10:10,14,20
10:25 11:3,8,14
12:2,10,17 13:12
13:13,13,15,18,20
14:5 15:15,21,23
16:8,11,13,15,17
29:7,18 30:8,11,23
38:20 39:8,18,24
40:2 42:12,20,25
43:25 43:8,10,21
43:24 44:13,22
45:12,19 46:2,4,21
46:23 47:7,25 49:5
50:12,16,22 52:4
52:11,15,18 53:4
55:5,14,24 56:3,15
56:20,24 57:4,15
57:22 58:15,25
59:1,4 60:4,11
61:1,13 62:23
66:11 67:20 68:4
68:10,15 71:6
72:15,23,25 73:1,2
73:8,9,11,25 74:23
75:13,15 76:5,20
78:25 79:17 80:10
81:14 83:21 84:25

85:7,15,16,19 86:1
86:4,7 88:2,5,7,14
88:20
**ordered** 47:1,3
50:13 56:14
**orderly** 22:22 32:19
33:19 35:2,16
**orders** 10:3 11:18
71:16
**order's** 15:13
**ordinary** 43:16
44:13 51:23
**organization** 84:5
**original** 30:23
**originated** 19:13
**originating** 19:20
**origination** 12:11,15
54:11,19 61:6 62:8
62:18 71:8 74:21
75:21 76:10 77:5,7
77:21 78:4,5 79:1
79:24 88:5,13
**originators** 18:25
**ought** 43:21
**outcome** 35:12
**outside** 43:15 51:23
**overall** 54:20,21,25
**owed** 20:7,7 23:15
28:10 33:3 34:17
34:18
**owned** 51:22
**owner** 26:18 30:1
**owners** 32:23
**ownership** 36:13,16
36:22,24 37:21,21
**owner's** 26:17
**o'clock** 64:1,2,5,6
86:11
**O'Melveny** 2:14 3:2
11:9 17:16,24
41:20

**P**

**P** 2:2,2 13:1 16:21
**page** 47:1,24,25
62:21 69:1 90:4

**paid** 20:9 23:11,17
56:13 75:19 88:3
88:13,14
**Palmer** 4:18 69:21
80:24
**paragraph** 15:24
47:3,12,25 48:12
48:23 49:12,14,19
49:20 50:4,4,13,24
50:24 51:1 52:10
56:12,14,16 58:14
59:6,6 62:12,22
64:8,18 65:11,18
66:14,21 67:14
69:4,5 75:11 76:5
85:15
**paragraphs** 47:1
**parent** 23:1
**Park** 7:12,20
**part** 31:18 51:10
62:17 68:14 69:8
70:20 72:14 76:1
79:24 80:10 83:11
84:6,12
**participants** 33:8
**participation** 77:17
**particular** 18:13
24:11 64:25
**particularly** 27:7
28:18 85:4
**parties** 15:3,7,25
16:14,22 28:20,20
29:20 46:12 48:19
48:20,20,22 57:7
58:17 61:8,9,11,22
62:1,11 63:20
64:22 65:9,22
66:15 67:18 68:4
68:15 78:6,7 81:3
81:5,7,12,16,18,20
86:25 87:6
**Partners** 32:10,10
**party** 36:6 64:25
65:2,16 81:24
**pass** 22:12 30:16
71:14

**passed** 32:15,16
**path** 75:2
**PATRICK** 5:11,16
**PAUL** 7:18
**pay** 24:17,19 26:7
26:16 28:7,7
**Payment** 10:7
**payments** 88:11,19
**payroll** 28:10
**Peabody** 9:10 39:3
**Penina** 12:24 91:4
91:12
**people** 27:3 37:25
**people's** 43:4
**percent** 18:17 23:13
23:16,18 25:4 54:2
54:14
**perfectly** 47:13
**perform** 19:21
**performance** 10:6
65:2 66:22
**period** 40:13 60:8
66:25 67:18
**permissible** 56:8
**permitted** 70:22
**person** 22:18 36:6
**personal** 12:6 58:3
**personally** 31:14
37:4 74:6
**persons** 77:13 89:6
**perspective** 21:22
42:14,22
**persuaded** 21:1
**petition** 10:16 21:24
**petitioned** 37:20
**phone** 20:23
**phrase** 23:14 51:3
**pick** 28:6
**picture** 20:14
**pieces** 79:9,15,20,24
**pinned** 45:14
**pipeline** 27:2,6,19
**place** 17:17 27:13
42:9 52:4 54:24,25
**placed** 62:22
**plan** 48:25

**plans** 49:12
**platform** 12:11
54:12,19 61:6 62:8
62:18 71:8,11
74:21 75:21,25
76:10 77:5,7,8,9
77:12,21 78:4,5
79:2,16,25 83:11
84:6 88:5,13,22
**Platforms** 12:15
**play** 65:5
**player** 18:22
**Plaza** 6:21 9:20
**pleadings** 61:9
**please** 35:24 36:14
78:16
**pleased** 85:24 86:24
**pleasure** 40:4
**pledged** 37:22
**plus** 54:2
**PM** 1:19 89:13
**podium** 25:7 53:2
**point** 4:11 25:6
27:15,15 29:12
32:9 44:2 45:11
54:1 56:8 60:3
67:22 70:3 75:10
75:15,25
**points** 41:17 73:22
**portion** 21:16 35:14
39:16 52:11 59:4
**posit** 44:11
**position** 33:8 74:7
**positions** 31:20
**Positive** 6:20 7:3
70:16 71:2,8,16,18
71:22 72:5
**possession** 2:4 10:2
10:9,13,19,24 11:7
11:12,18,21 12:1
12:10 58:1,2,8
**possibility** 22:24
**possible** 22:14,22
23:7 32:19 33:14
65:15 67:21 77:20
77:25

**post** 24:16 68:9
**potential** 15:4 22:3
  22:9 71:10 72:10
  79:4,23
**potentially** 70:9
**Power** 3:18 25:7,10
  25:10 29:2 35:21
  36:3 37:6 53:2,8,8
  53:17 54:21 78:12
  78:21 79:21 80:19
  90:5,6
**practicable** 62:14
**pre** 24:16
**preclude** 72:3
**predated** 19:4
**predicated** 43:14
**preferable** 35:12
**prefers** 74:9
**prejudice** 71:8
**preliminarily** 61:7
**preliminary** 72:24
  73:1
**premise** 24:9
**premises** 59:9
**prepare** 67:8
**prepared** 13:11
  52:14 76:22 85:3
**present** 17:25 20:16
  25:19 40:2
**presentation** 41:14
**presented** 66:22
**presents** 77:7
**preserve** 27:12,16
  28:20
**preserved** 58:13
**president** 22:5 31:6
  31:17 88:17 89:6
**previously** 65:13,21
**pre-petition** 70:2
**price** 43:3,20 45:22
  52:7 53:21 54:7,7
  54:18 77:12
**primarily** 79:11
**primary** 50:11
  56:22
**principal** 22:18 36:6

53:3
**printed** 91:13
**prior** 31:15,19,25
  32:23 45:13 53:14
  53:16,19,24 54:12
  61:14 62:15 88:13
**privacy** 73:25
**privileged** 10:22
  15:18
**pro** 10:16 57:18
**probably** 16:21 25:6
  27:20 30:24 41:12
  51:2 70:7
**probe** 24:8,9
**problem** 39:16
  59:11
**problems** 19:20,24
  39:19,23
**proce** 80:12
**procedural** 72:17
**procedure** 11:20
  59:2 74:9
**procedures** 10:7,25
  12:5,10,12 16:11
  61:5,19 65:7 68:4
  68:10,13,24 69:2
  70:22 71:5,7 74:24
  77:11,15,23 82:25
  85:4,14,15
**procedure's** 79:17
  80:10
**proceed** 61:16 62:5
  76:7
**proceeded** 20:2
**proceeding** 86:22
**proceedings** 40:6
  69:10 89:13 91:6
**proceeds** 24:21,24
  34:10,12 38:6,11
  38:22 41:15,16,25
  42:2 71:12
**process** 25:12 63:1,9
  63:12 65:6,14
  67:15,21,22 72:18
  75:1,24 77:5,22,24
  78:8 80:2,7 82:13

83:23 84:13 85:21
  86:6 88:24
**processes** 80:7,10
**produce** 22:8
**production** 31:6,10
  31:17
**Products** 8:20
**professional** 56:12
**professionals** 11:1
  16:14 23:6 56:14
**proffer** 22:4,23
  30:25 77:2
**proffered** 83:22
  88:8
**proffering** 35:19
**proficient** 84:10
**program** 83:10
**programs** 83:14,16
**progress** 29:9
**prohibit** 56:17
**prohibiting** 10:4
  71:18
**prohibits** 68:15
**promised** 29:9
**prompt** 77:6,9
**promptly** 65:14
  67:12
**proper** 47:2 49:21
  49:24
**properly** 23:14
  25:19 43:16
**property** 12:4,7 21:6
  30:5 44:9,9,10,12
  44:14 45:20 51:7
  58:3,6,7,10 69:9
  71:3,10,13,23 72:6
  72:23
**prophylactic** 73:13
**propose** 29:3
**proposed** 12:14,15
  12:18 30:23 38:21
  42:19,25 44:18
  45:12 46:2 50:21
  56:15 61:18 71:5,7
  71:22 86:4
**proposing** 42:13

63:21
**prospects** 33:4
**protected** 48:11
**protection** 30:3
**protections** 43:10
**prove** 36:10
**provide** 10:21 15:16
  15:17 37:18 48:2
  60:20 61:12 70:7,9
  72:5 73:4,10 77:13
  82:3,21 85:20 88:9
  88:10
**provided** 15:25
  21:14 24:10 40:5
  47:7 74:5
**Providers** 10:4
**provides** 18:24 19:8
**providing** 10:20
  15:15 71:7
**provision** 56:10 71:5
**provisions** 30:7,8
  43:4 47:8,11
**PTO** 28:7
**pulls** 29:19
**purchase** 18:20 28:5
  29:7 39:7,10 48:1
  52:13,16 72:5
**purchased** 20:12
**purchaser** 42:16
  48:9 71:11 72:10
**purchasing** 21:15
**purported** 20:3
  37:20
**purpose** 69:7 78:22
**purposes** 20:16 38:4
  69:10
**pursuant** 10:3,16
  11:9,13,18 12:2
  19:2,8 56:8 57:10
  58:25
**pursue** 34:15
**push** 64:13
**pushed** 67:3
**put** 25:23 26:1 31:21
  46:16 47:19 51:3
  53:2 54:8 55:13

65:25 70:1
**P.A** 4:2 5:11 10:15

---
### Q

**qualified** 68:18 74:2
  75:6
**question** 27:11 38:6
  80:19 81:6 82:8,15
  83:15 84:2,3
**questions** 15:10,12
  17:18 35:21 36:4
  37:9 52:17 78:12
  78:22 80:20,23
  83:3,7,20
**quick** 59:19
**quickly** 21:3 24:7
  65:14
**quite** 18:7 20:16
  23:24 30:13 31:22
  38:1,13 43:16 49:2
  49:24 72:13
**quo** 27:12

---
### R

**R** 1:21 2:2 13:1 91:2
**Rachel** 4:7 58:19
**raise** 14:19
**raised** 14:12 16:4
  46:5 62:10,13
**raising** 73:22
**Ralston** 6:24 70:15
  70:16,25 73:7,15
  83:7,9,25 84:4,15
  90:8
**Ramos** 2:10 86:18
  86:18 87:12,21,25
**ranged** 22:24
**ranging** 23:2
**rapidly** 77:10
**RATH** 4:10
**RBC** 4:3 58:20,21
  58:23 59:3 62:16
**reach** 26:11
**reached** 38:14 63:2
  70:19 75:24 85:17
**reaching** 75:22
**read** 43:11 70:25

73:12
**readily** 58:22
**reading** 50:3
**reads** 56:3
**ready** 28:11
**Real** 7:19 12:4,7
**realistic** 33:19
**realistically** 34:6
**realizable** 34:10
**realize** 22:21 33:13
  47:23
**realized** 23:13,21
  33:1 35:15,17
**realizes** 35:13
**realizing** 33:5
**really** 25:22 37:21
  38:18 48:8 49:22
  66:2
**Realty** 5:20
**reason** 82:3,8,14,16
**reasonable** 26:10
  30:19 48:2 66:5
  74:4 77:13
**reasonably** 26:4
  40:13
**rec** 41:14
**receipt** 64:21 88:18
**receive** 14:9 15:18
  55:11 57:11 66:15
  77:20 81:15
**received** 61:21 62:1
  79:23 80:12,15
**recognizing** 47:20
**recommend** 16:24
**record** 13:4 17:8
  25:19 31:21 35:25
  42:4 47:20 51:11
  51:17 52:7 53:2
  55:13 58:17 59:5
  60:17,21 68:3,11
  69:20 70:21 73:17
  76:22 78:17,25
  80:24 85:6
**recording** 91:6
**records** 55:22
**recourse** 71:11

**redirect** 37:8 84:18
**redone** 43:24
**reduced** 54:5,13,17
**redundant** 50:4,24
**red-line** 38:20
**reference** 49:21
**referenced** 14:16
**referred** 48:14
**refers** 59:7,8
**refinanced** 27:4
**reflect** 68:11 74:24
  80:13
**reflects** 55:5 72:11
**Refusing** 10:5
**regard** 39:4,15,17
  50:10 69:23 71:19
**regarding** 13:23
  25:17 28:6 40:23
  41:12 42:12 43:3,3
  55:20 62:25 70:21
  75:23 86:20
**reimbursement**
  11:1 16:12 56:7,11
**reject** 57:9
**rejected** 57:24 58:25
**rejection** 12:3,5
  34:17,18 57:18
  59:7,20
**rejections** 57:20
  59:2
**relate** 18:12 62:9
**related** 11:15 12:17
  12:18 15:6 24:21
  62:6
**relating** 12:12 56:22
  77:5
**relations** 21:10,13
**relationship** 21:21
  37:20
**relationships** 27:4
**releases** 28:12
**relevance** 83:20
**relevant** 38:19 83:25
**relief** 11:15,23 12:17
  12:18 41:3 43:9
  44:7,19 49:5,7

52:8 57:14 72:19
  88:15
**relinquish** 25:7
**relinquished** 59:16
  59:23,24
**relinquishes** 59:9,22
**rely** 41:23
**remain** 54:25
**remaining** 18:12
  58:6 62:18
**remedies** 20:2 21:4
**remedy** 35:18,18
**remember** 22:10
  87:9
**remove** 58:4,5
**removed** 58:3
**renumbered** 47:14
**repeat** 36:14
**reports** 31:8
**representation**
  41:23
**representatives**
  20:22,23
**represented** 71:20
**represents** 36:9
**repurchase** 19:2
  21:6 33:8 40:23,24
  85:23
**req** 42:8
**request** 16:1 42:8
  60:16 61:8,9 62:23
  84:24
**requesting** 63:18
**requests** 41:20
**require** 32:22 65:7
  67:17
**required** 10:21
  15:16 49:17 52:6
  58:5 68:10 81:14
**requirement** 55:22
**requires** 60:5
**requiring** 81:12
**res** 62:24
**reservation** 70:21
  85:5
**reserve** 42:7 65:19

---

68:16 69:22 70:12
76:17
**reserved** 32:21
**Residential** 12:7
**residual** 28:13 85:21
**residuals** 53:21
**resolution** 14:3
55:12 59:19 60:13
85:5
**resolutions** 18:6
39:11
**resolvable** 40:7
58:22
**resolve** 30:13 38:15
40:10 60:4 62:12
73:9 87:15
**resolved** 58:21 60:1
60:2 62:10
**resolves** 58:15
**resolving** 39:6
**respect** 25:17,20
26:23 41:3,6 45:12
48:5 53:19,21
54:11 55:11,17
61:5 62:3,5 63:4,7
63:12,17 64:20
65:6,19 67:1 68:22
69:12 72:6 73:23
73:25 83:23,23
84:24 88:3,4,12,21
**respectfully** 44:5
45:17 84:24
**respective** 62:17
**respond** 67:18
**responding** 87:4
**response** 13:17 14:2
15:9 16:7 37:8
57:3 61:1 73:22
84:17 89:11
**responsibilities** 31:7
31:12
**responsibility** 24:15
31:9
**rest** 70:12
**restricting** 49:3
**result** 17:18 20:13

21:18 23:4 24:2,13
33:25 42:21 58:12
63:6 68:19
**results** 21:20
**retail** 62:9 88:23
**retain** 14:8 17:16
52:22 68:6
**retainer** 54:23
**retention** 10:14 11:4
11:8 53:11,12 55:6
56:23 75:15,16
**return** 24:23
**returned** 81:16
**review** 14:13 55:19
61:13
**revised** 39:7,8,18,24
47:12 52:15 53:4
53:13 61:13 62:3
74:23
**rework** 29:4
**re-file** 73:12
**re-traded** 28:5
**RICHARD** 8:7,15
**Richards** 2:3 10:15
13:4 14:8 86:18
**rider** 55:24
**right** 13:24 14:19
16:16 37:11 38:25
40:13 44:1 45:4,25
46:19 50:15,17
51:14 52:20 53:7
53:17 55:1,3,7
57:3 58:18 59:15
60:7,15 61:1,3
63:14 65:10 66:9
66:13 67:24 68:6
68:12,21 69:19
70:23 71:9,11,15
72:15 73:20 74:16
76:6,18,22,25
78:10,13,14 80:21
81:25 83:5 84:20
85:3,10 86:14
87:24 89:1,8,11
**rights** 27:13 28:20
39:21 42:7 49:3,4

58:12 65:19 68:5
68:15,16,20 69:23
70:21 71:9,10,23
72:20,24 83:22
**road** 20:15
**Rodney** 2:5
**role** 31:6
**roll** 28:7
**Rome** 6:11 74:18
**room** 63:25 71:21,22
72:3,25 81:22,23
81:25
**ROTHSCHILD** 7:2
**ROWE** 8:10
**Rule** 49:22
**rules** 11:14,19 51:6
55:22
**ruling** 88:16
**rulings** 42:3
**run** 15:2 75:2
**running** 75:2 80:6

—————————
**S**
**S** 2:2 3:9 13:1 78:19
90:3
**SACCULLO** 7:7
**Sachs** 9:19 19:5 20:2
20:3,7,10,12,14,15
24:22 28:19 39:5
40:17,21,22,25
41:8,22,24 47:17
47:19
**sale** 11:15 12:15,18
18:5 25:13 27:24
28:22,23 30:1,4
37:24 38:12 41:6
42:1 43:1,2,3,15
44:8,24 47:10 48:5
48:7 49:21,24 51:3
51:20,21,24,25
52:4,14,17 53:20
54:16 61:6 62:7,18
62:19 63:1,9,12
65:6 66:23 67:16
67:22 68:16 70:4
70:13 71:2,3,7,12

72:16,21 73:18
74:19 75:23 76:19
77:5,6,9,11 79:2
80:6 81:8 82:1,5
82:19 83:23 85:20
**sales** 47:9 49:25
54:2
**SAMIS** 2:11
**San** 3:6
**satisfied** 25:20 36:9
39:14
**saying** 56:13 59:20
**says** 44:19 46:22
48:16 49:20 56:15
65:14 69:6 76:5
**SCANLON** 5:11,16
**scenario** 20:9 23:24
27:23 35:2,7,12
80:8
**schedule** 82:7,11
**scheduled** 86:22
87:5,19
**schedules** 10:10
13:21
**Scheduling** 12:14
**SCHOLER** 7:10
**Schweitzer** 9:23
40:15,16 44:2,5
45:6 47:18,18,23
48:17
**scope** 45:12
**Seaboard** 86:22
**second** 26:15 30:12
39:16 40:20 50:9
54:11 69:5 71:14
**Secondly** 68:8
**section** 10:3,16
11:10 34:18 55:19
55:20 57:10 68:15
72:19
**Sections** 11:13,19
12:2
**secured** 11:22 25:6
26:16 35:18,18
72:7
**Securities** 7:19 32:8

security 26:17 70:8
see 16:3 23:14 49:4
  61:14 72:18
seek 13:24 27:20
  44:19 55:18 71:11
  72:19
seeking 41:2 42:19
  43:9 44:7,8,11
  52:1
seen 39:10 43:24,24
segregated 38:12
sell 79:14
selling 26:19 36:21
  38:7 44:10 74:20
  84:8
send 64:24 65:8,15
senior 31:20 88:17
  89:6
sense 28:2 63:22
sentence 66:21 69:6
  69:6
separate 80:9,9
separated 88:24
separately 80:5
serious 38:15 74:24
seriously 75:14
served 31:20
serves 31:6
Service 10:5
servicing 85:14,21
set 13:7 40:21 42:5
  47:1 52:12 59:1
  63:10 64:15 66:17
  67:2,6,16 81:22
  87:6,13
sets 72:17,17
setting 11:23 70:7
seventy 53:23
severance 26:8
sh 42:19
shareholder 18:18
  29:22,23
shareholders 30:18
  44:15
shines 35:5
SHIRLEY 8:24

short 22:6,23 40:13
  66:24 67:18
shorten 31:22
shortened 70:6
shortfall 21:20
  33:24
short-term 20:21,24
  20:25
show 70:5
shown 68:20
shut 27:1,18
side 88:23,23
sign 57:22 81:12
Signature 91:10
signed 13:18 14:6
  15:13 16:8 61:2
  81:16
significant 54:18
  81:10
simple 38:4
simply 13:6 25:18
  58:11 66:14 72:17
sir 37:5,11 50:23
  79:1 84:20
situation 22:13
  32:17 33:12 35:4,5
six 23:20,22 47:8
  89:5
sixteen 22:3 32:5
  41:12
sixty 23:13,16 25:4
size 16:21
slot 63:14
smaller 18:23,24
SMITH 9:2
software 6:20 7:3
  70:17 71:2,16,19
  71:19 72:5 83:10
  83:13,16,24 84:6,8
  84:12
Software's 71:9,18
  71:23
sold 28:18 37:22
  38:7,21 41:16 42:1
  42:2 48:10 54:13
  70:10 72:21 74:11

76:1 84:1,6 85:23
sole 29:21 39:21
  76:8
solely 62:5
Solutions 70:17 71:2
somebody 38:10
soon 29:10 40:9
  62:13 65:4
sorry 49:14 50:19
sort 22:16 32:22
  33:19 72:7 86:1
sought 43:17 49:5
  57:14 72:21
sound 44:20 48:13
  48:14 91:6
South 2:16 8:12,21
speak 39:10
speaking 73:9
specific 44:17 67:2
  82:7,10,14
specifically 29:14
  56:3 58:23 83:18
  86:21 88:9
spent 25:15
spoke 69:25 88:2
spoken 88:2
Square 2:5
stage 74:10
stakeholders 45:23
  48:19
stalking 54:3 63:2
  67:22 74:10
stand 20:20
standard 52:3
standards 44:10
Stanley 32:8 85:18
  85:22,25
Star 32:8
start 21:4 34:10
  82:18
started 34:13
starts 34:12 69:5,5
state 8:4,11 19:5
  20:20,23 23:15
  33:3,7,21 35:6,24
  42:20 68:17 77:6

78:16
stated 39:6
statement 43:8
statements 10:11
  13:21
States 1:2 14:10
  15:19 17:17 45:10
  55:10 71:17 73:22
status 27:12 61:11
  63:11
stay 28:17 33:9
Steen 9:18 40:16
step 37:11 84:20
STEVENS 5:2
stipulate 70:20
  72:15
stipulated 71:1
  83:21
stipulation 71:14
  72:4,11 86:25 87:2
  87:7,14
stock 26:17 30:5,7
  45:20 47:5 49:9
  51:25 53:20
stockholder 39:22
Stoney 4:11
stopped 19:20,21
strategic 79:7
Strategies 32:11
Street 1:15 2:6,16
  3:5 4:4,12,20 5:4
  5:13,21 6:4,13 7:4
  7:21 8:4,11,21 9:4
  9:12 19:5 20:20,23
  23:15 32:9 33:3,7
  33:21 35:6
stricken 30:10 49:6
  49:19
strike 50:24 51:3
  79:21
striving 86:12
strongly 20:16
struck 49:16
struggling 21:8,10
subject 19:17 43:22
  51:9 58:3 59:14

69:9 75:22 87:3,7
87:12
**submission** 16:25
52:15 57:3
**submissions** 16:25
17:4
**submit** 29:5 53:4
55:4 58:12 68:17
**submitted** 39:19
55:15 64:10 69:11
74:2,2 76:9,12,13
85:7 86:2
**submitting** 86:4
88:5
**subsidiary** 18:16
28:18,24 44:21
48:15 51:22 52:13
**substance** 45:3
88:19
**substantial** 22:7,11
24:11 31:23,23
35:14
**substantially** 35:7
35:16 64:19
**substantive** 51:23
72:19
**subtract** 34:11,15,16
**sub-limit** 54:4
**successful** 64:10
65:12
**sufficient** 76:10,17
**Sugarland** 18:23
**suggest** 47:6
**suggested** 52:9
**suggestion** 66:6
**Suisse** 32:7
**Suite** 6:5
**sum** 88:19
**summarize** 72:14
**Summer** 9:12
**sun** 35:5
**Superpriority** 11:21
11:22
**supplement** 85:16
**supplemental** 14:11
14:13,17,21 15:2

**support** 55:6 70:3,4
70:4,5 76:19,23
77:2 85:6
**supports** 28:22 52:8
74:19
**sure** 16:25 28:12,16
28:17 29:13 39:12
41:11 44:4 45:3
48:22 49:2,24 54:8
54:16 59:2 66:1
73:8 74:25 86:10
**suspect** 33:5
**Sustained** 80:18
**SUZZANNE** 3:9
**sworn** 35:23 78:15

——————

**T**

**T** 5:24 31:3 36:1
90:3,3 91:2,2
**tabs** 14:14,15,16
**take** 19:10,10 20:3
26:5 33:8 34:4,5,8
37:20,21 50:6
51:22 61:19 75:14
84:2
**taken** 19:14,18
21:15 47:22
**talk** 40:18 44:10
88:20
**talked** 39:6 51:5
**talking** 31:15 48:25
49:12,14 66:2 81:8
**target** 80:5
**technically** 73:9
**TELEPHONICA...**
3:10 7:16,25 8:8
8:16,25
**tell** 39:19 55:16
57:12 65:23
**telling** 40:18 46:12
**ten** 33:1 70:19
**tend** 37:25
**tender** 57:25 58:2
**tendered** 58:8
**tenuous** 21:21
**term** 26:15 62:8

**terminated** 37:19
**terms** 36:7 48:1,25
52:12,25 53:5,12
53:13,19 54:23
55:1 73:1
**terrific** 63:16
**testify** 22:6 31:4,4
31:15,16,23,25
32:5,12,17,25 33:4
33:11,18 34:1,6,13
34:22,24 77:6,15
77:22 78:5
**testifying** 35:8
**Texas** 18:23 71:17
**tha** 41:19
**thank** 13:19 14:4,5,7
14:25 15:11,12,14
16:9 17:6,11 18:1
25:10 26:10 36:4
37:11,13 40:13
45:4,6,16 46:11
47:15,16 50:7,15
51:14 56:25 57:1,5
57:16 60:24,25
61:3,17 63:17
64:18 70:13,14
73:16 76:18,20,21
84:14,15,20 85:9
86:14,15 87:24,25
89:9,11
**thanks** 51:9 67:10
84:22
**thereof** 12:16 56:16
**thing** 21:11,11 24:5
76:4
**things** 25:2 35:5
40:20
**think** 14:2 16:12,20
18:12 25:12,21
26:1,9,11,23 27:5
27:14,24 28:13,20
29:8,18 30:3,15,19
30:21 37:16 38:4
38:18 40:19 41:4
41:17 42:11,18
44:21,22,23,25

45:19,24 46:4,7,12
47:12,19,24 48:3,5
48:7 49:13,17 50:2
50:11 51:4,15 52:1
52:4,7 53:23 58:14
58:15,22 59:3 60:3
62:3,9 64:12 66:1
70:25 80:1,13 81:4
81:18 82:5,11,20
82:22,24 84:7,9
**thinks** 38:8,9,10,16
**thinly** 49:17
**third** 42:11 69:6
72:4
**third-party** 58:4
**thirty** 66:2 81:5,7
**thought** 14:18 22:20
26:3
**three** 14:14,14 16:23
19:3 23:3,25 35:3
46:21 47:8 53:18
**threshold** 29:12
**Thursday** 85:13
**Thursday's** 86:21
**time** 10:10 13:21,23
18:14 20:24 21:9
23:9 25:15 28:7
40:13 41:8,22
45:15 55:22 58:8
60:8 66:3,25 67:18
70:3,6 72:3 74:4
83:4 84:2
**timekeeping** 55:20
**title** 88:17 89:6
**today** 20:18 31:6
38:5,19 40:19 41:1
57:21 70:7,19
72:20 74:12 82:4
85:7,11 86:5,16
87:1 88:3
**today's** 13:6 21:2
29:7 38:4,19 40:6
**told** 39:7,13 46:5
51:12
**tomorrow** 86:5
**topic** 38:14

**total** 53:22 54:4
**Tower** 7:20
**traceable** 34:3
**trans** 38:22
**transaction** 15:4
  18:2,4,13,15 20:18
  22:16 23:7,8 24:1
  24:10,12,14,25
  28:2 29:16,23 30:4
  30:16,18,20 31:14
  32:15,21,23 33:22
  35:9 36:5,17 37:4
  37:23 38:3,22 39:9
  39:22 41:1,25 42:3
  42:21 44:22 45:22
  45:22 46:8 47:6
  49:10,11 51:8,9,12
  51:17,20 52:3
  65:18 77:19 79:12
**transactions** 19:7,12
  24:22 38:3,6 41:4
  43:5 48:7
**Transcribed** 12:24
**transcriber** 91:4,10
**transcript** 91:5
**transferred** 24:25
  26:13 39:12,13
  42:2
**transpired** 33:22
**tried** 32:2
**triggered** 19:25
**TRO** 86:24 87:4
**troubling** 41:7
**TRS** 1:8 18:17
**true** 43:18
**Trust** 8:11 39:4
**Trustee** 6:3 14:10,12
  15:2,19 16:4 17:17
  45:10 55:10 61:22
  73:22
**Trustee's** 14:3 17:19
**try** 22:14,15 25:13
  27:12,16 31:22
  32:19,20,20 38:15
  40:10 45:14 53:11
  67:16 72:14 74:20

74:25 75:8 78:23
  79:14 87:14
**trying** 27:3 28:15
  31:13 32:1 34:15
  39:11
**Tuesday** 64:13
**tunc** 10:16 57:18
**turn** 18:10 19:2
  22:23 24:23 30:12
  47:1 52:21 53:1
  68:23
**turning** 49:7 62:2,21
  64:7
**turns** 57:8
**tweak** 28:15
**twelve** 81:18
**twenty** 81:10
**twenty-five** 81:5,7
**twenty-four** 74:4
**twenty-six** 58:24
**two** 16:3 20:19,19
  22:9,25 27:7 29:16
  32:13,18 33:14
  47:7 54:3 64:24
  65:5 73:22
**TX** 6:22
**type** 43:6,9,9 65:7
**typed** 91:13
**types** 28:17
**typical** 43:6 47:9
**typically** 19:8,11,16
  21:14

———————
            **U**
**UBS** 7:19
**UHLAND** 3:9
**ultimate** 23:1 69:13
**ultimately** 19:14
  22:12
**underlying** 19:11
  39:9 41:4 51:19
  52:3
**underscore** 35:4
**understand** 45:2
  69:18,24 70:6
  72:25 82:16

**understanding** 26:6
  48:24 74:1 79:7
  82:18 84:10
**undertake** 77:24
**undertaking** 43:15
**undoubtedly** 29:24
**undue** 40:6
**unequivocally** 59:8
  59:22
**unexpired** 12:4,6,13
  57:10 65:20
**United** 1:2 14:10
  15:19 17:17 45:10
  55:10 56:8,21
  71:16 73:21
**universal** 37:17
**unlimited** 54:8
**Unsecured** 62:25
**update** 86:20
**urge** 76:19
**use** 30:5,5 44:12,14
  45:20 47:10 51:7
  71:18,22
**Utilities** 10:6
**utility** 10:4 13:10
**utilizing** 83:24
**U.S** 1:23
**U.S.C** 11:18

———————
            **V**
**vacation** 24:17 28:7
**valuation** 69:15
**value** 20:5 22:20
  23:15 24:7 25:22
  25:23 27:22 30:20
  32:20,22 33:1,13
  35:13,14 48:2,8
  68:18,19 69:9,13
  70:4 76:10,16 77:8
  77:9 78:1 79:20
  80:14
**values** 63:5 78:4
**value's** 27:17
**variety** 38:3
**various** 21:25 25:8
  31:20,23 38:15

57:9 61:12,22 65:8
  84:25 85:5
**vast** 58:20
**vehicle** 60:11
**veiled** 49:17
**version** 52:16
**vice** 22:5 31:5,17
  88:17 89:6
**view** 20:16 21:6
  27:15,15 51:16
  59:18 60:10 75:9
  79:19,22 80:12
**viewing** 27:24
**views** 50:18,22
**violate** 72:25
**virtually** 51:21
**vote** 29:23 30:18
  47:5 49:9
**voting** 30:6

———————
            **W**
**Wacker** 8:12
**wage** 88:2
**wages** 24:17 75:16
  88:3,14
**waive** 28:11
**waiver** 55:21 71:15
**walk** 13:6
**WALKER** 7:18
**want** 21:12,13 28:17
  30:12 38:17 41:18
  42:4 47:23 53:13
  53:14 59:2 66:4
  68:3,11,23 75:10
  75:24 76:4,11 86:9
**wanted** 42:6 59:4
  61:15 73:15 75:15
  88:7
**wants** 43:12
**warehouse** 18:18,24
  19:3,10,25 20:1,8
  20:19,19 22:25
  24:19 27:7 29:22
  30:6 37:18,19 39:5
  40:24 41:21 42:16
  45:21 48:9,10

**Warehouse's** 41:10 41:23 42:10 43:7
**warrant** 75:7
**warrants** 16:21
**Washington** 31:18
**watching** 29:9
**way** 25:2 34:19 44:13 47:2 51:2 58:9 60:12 65:2 69:11 73:1 82:15
**ways** 21:25
**Wednesday** 86:23 87:4
**week** 16:24 17:5 31:21 66:24 67:3 67:14
**welcome** 40:14
**went** 34:25
**West** 3:4
**we'll** 22:4 26:13 29:10 45:13 50:24 53:17 55:4,23 58:4 60:23 62:14 73:18
**we're** 26:19 27:11 28:14,14,15 34:19 38:20 41:5,8 42:3 42:7,23 43:6 54:15 56:24 58:4 63:10 63:18,21 72:2 82:13 84:7,8,9,10
**we've** 25:12,18,23 25:23,24 26:15,21 26:21 28:11 41:20 42:4 46:17 54:5,5 54:17,17 57:12 65:6 66:14 67:3,14 69:6 70:18 75:12 79:6 81:4 82:22
**whatsoever** 20:17
**wherewithal** 24:19
**whistles** 43:20,23,25
**wholesale** 62:6,7 63:5 71:7 83:11 88:23
**wholly** 51:22
**William** 4:23 69:20

**willing** 20:20 46:15 72:2
**willingness** 43:2
**Wilmington** 1:16 2:7 4:5,13,21 5:5 5:22 6:6,14 7:5 9:5
**Winter** 32:7,14
**wiped** 30:3
**wish** 68:9
**wishes** 50:17,21 66:10
**withdraw** 75:3 80:19
**withdrawal** 85:4
**witness** 35:23 36:1 37:13 78:15,18 80:22 83:6,22 84:22 90:4
**Wolicki** 12:24 91:4 91:12
**worded** 30:22
**words** 26:18
**work** 29:4 35:6 43:6 64:4
**worked** 24:3,3,8,9 55:4 74:19 75:12
**workforce** 21:9
**working** 24:15 47:24 55:1
**works** 21:7 64:5
**worth** 40:19
**wouldn't** 45:19 46:9 69:16
**wrong** 50:3

**X**

**x** 1:5,12 90:2

**Y**

**Y** 90:3
**Yeah** 14:23 60:10
**year** 31:19
**yesterday** 25:24
**York** 3:16 7:13,22 9:21

80:24

**Z**

**zero** 22:24,25 23:2,2 23:24,24
**ZIEGLER** 8:15

**$**

**$1,000,000** 54:14
**$11,000,000** 33:2 34:10
**$142,000** 34:21
**$2,000,000** 54:13
**$4,250,000** 54:1
**$4.5** 26:1,9
**$5,000,000** 34:12 53:24
**$5.9** 34:1,11
**$50,000,000** 53:20
**$6,000,000** 54:4
**$617,000** 34:23
**$7,000,000** 54:22
**$7.3** 75:18
**$75,000** 23:10

**0**

**02110** 9:13
**06103** 8:5
**07-10416** 1:4

**1**

**1** 14:16 15:5 47:12 71:6
**1:30** 64:16
**1:42** 1:19
**10** 34:9 47:14 50:4 57:8 65:18
**100** 9:12
**10006** 9:21
**10022** 3:16 7:13,22
**105** 11:13,19
**11** 11:18 48:25 49:12 61:4 66:14
**11th** 64:9,9,11 66:18 66:24
**1105** 5:4
**12** 67:14
**1201** 4:4 6:13

**14th** 64:14 67:6
**15th** 64:14,15 66:17
**18** 85:16
**19801** 4:13,21 5:5,22 6:6,14 7:5 9:5
**19899** 2:7 4:5
**19963** 5:14

**2**

**2** 13:20 14:16,24 15:6 52:10 57:18 58:14 62:3,12 63:22,22 64:5,6 91:9
**2nd** 17:20 64:1,2 82:25
**2:30** 63:15 87:9
**2002** 11:14,20 49:22 31:5
**2006** 18:21 22:19 31:5
**2007** 1:18 91:9
**203** 5:13
**2207** 6:5
**23** 21:1
**24** 1:18
**24th** 57:21
**275** 3:5

**3**

**3** 14:8,16 15:24 49:12 63:10,20,23
**3rd** 75:4
**3:36** 89:13
**30th** 57:25 59:10,23 59:23,25 87:8
**30,000** 42:14
**31** 13:24
**327(a)** 10:16 11:10
**328** 55:20
**330** 55:19
**36** 90:5
**362** 11:19
**363** 11:13 30:2,4,4,9 30:22 37:17 43:6,9 43:9 44:24 47:9,10 47:10,11 51:6 72:19 73:23

**363(b)** 44:10
**363(k)** 68:15,17,20
  68:23
**363(m)** 30:10 49:16
  49:18
**363(m)-type** 30:3
**364** 11:19
**365** 12:2 57:10
**366** 10:3 13:10
**3800** 6:21

**4**

**4** 15:14 34:11 47:25
  49:14 50:13 56:16
  58:14 62:21,22
  64:1,5 69:1 75:11
  86:10
**4,000,000** 34:2
**4.5** 26:16
**400** 2:16
**4001** 11:20
**425** 7:12
**488** 3:15

**5**

**5** 16:10 47:1 49:20
  51:1 54:2,14
**5d** 59:7
**502** 34:18,21,22
**55th** 7:21
**554** 12:2

**6**

**6** 52:22 64:2,6,8 76:5
**6004** 11:14
**60606** 8:13

**7**

**7** 17:15 47:13,14
  58:14
**7th** 17:19 57:8
**7.3** 76:2
**71** 8:12
**75** 7:21
**75201** 6:22
**777** 8:21
**78** 90:6

**8**

**8** 17:24 47:14 50:4
  50:25
**800** 5:21
**81** 90:7
**824** 1:15
**83** 90:8
**844** 6:4

**9**

**9** 47:14 57:6 64:18
  65:12
**9th** 78:6
**90017** 8:22
**901** 9:4
**9014** 11:20
**919** 4:12,20 7:4
**9200** 2:6
**94111** 3:6