IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-10416 (KJC) |
| | Jointly Administered |
| Debtors. | Hearing Date: May 30, 2007 @ 2:30 p.m.<br>Objection Deadline: May 23, 2007 @ 4:00 p.m. |

**APPLICATION FOR ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF IRELL & MANELLA LLP, AS SPECIAL LITIGATION, EMPLOYEE BENEFITS AND INSURANCE COUNSEL TO THE DEBTORS *NUNC PRO TUNC* AS OF APRIL 20, 2007**

New Century TRS Holdings, Inc., et al., the debtors and debtors-in-possession herein (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this application (the "Application") for entry of an order in substantially the form attached hereto as Exhibit A, pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to retain and employ Irell & Manella LLP ("I&M"), as special litigation, employee benefits and insurance counsel to the Debtors in these chapter 11 cases *nunc pro tunc* to April 20, 2007. In support of this Application, the Debtors respectfully represent and state as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

2. New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers.

3. On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief. Further, the court entered an order approving the joint administration of the Debtors' chapter 11 cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

4. On or about April 17, 2007, a class action lawsuit relating to the Debtors' alleged violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et. seq. and California Civil Code §§ 1400, et seq. (collectively, the "WARN Act"), was filed in the Debtors' bankruptcy cases, commencing adversary proceeding 07-50970 (KJC) (the "WARN

Class Action." The WARN Class Action relates to various pre-petition employee terminations. The WARN Class Action plaintiffs seek allowance of a claim for sixty days of wages and benefits for each employee so terminated, and attorneys' fees and costs, on an administrative priority claim basis.

5. In addition to defense of the WARN Class Action, the Debtors are in need of advice relating to possible additional employee terminations.

6. Moreover, the Debtors have requested that I&M provide advice relative to certain insurance matters that arise from time to time. In early 2005, I&M performed an insurance policy review for certain of the Debtors. Upon its retention, I&M will again review the Debtors' insurance policies and be in a position to provide advice to the Debtors regarding their insurance policies.

7. Finally, on May 8, 2007, the Debtors requested that I&M provide the Debtors with representation in employee benefit matters, including with respect to the wind-up of the Debtors' benefit plans, and issues concerning the Debtors' COBRA obligations.

## RELIEF REQUESTED

8. By this Application, the Debtors seeks the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014, to retain and employ I&M (a) as special litigation, insurance and employee benefits counsel in accordance with the terms of the form of retainer letter annexed hereto as Exhibit C (the "Retainer Letter"), as described more fully below, relating to defending the Debtors' interests in the WARN Class Action and providing advice relative to WARN Act issues; (b) providing advice regarding insurance matters; (c) providing advice and assistance

- 3 -

with respect to benefit plan issues.[2] Because of the urgent need to retain special litigation, employee benefits and insurance counsel, the Debtors request authority to retain I&M immediately.

## FACTS RELEVANT TO THE RELIEF REQUESTED

9. Subsequent to the initiation of the WARN Class Action, the Debtors decided to retain I&M as its special litigation counsel in order to avail itself of I&M's expertise regarding class action defense. In addition, the Debtors decided to retain I&M in connection with insurance matters in which I&M also has considerable expertise and a prior relationship (which ended in 2005) with the Debtors with respect thereto.[3] Further, as described below, the Debtors have requested that I&M assist them with respect to employee benefit matters.

*I&M's Qualifications*

10. As indicated by the biographical summaries annexed hereto as Exhibit B, I&M is highly qualified to serve as special litigation, employee benefits and insurance counsel in these chapter 11 cases. I&M has experience in virtually all aspects of the law that may arise in connection with the proposed representation. I&M has served as counsel in other large class action litigation matters, including, but not limited to: Broadcom Securities Class Action; Cheesecake Factory Securities Class Action; Charter Communications Securities Class Action; Global Crossing Securities Class Action; Metricom Securities Class Action; Coldiron v. Pizza Hut; Fraker v. KFC Corp.; Bates v. Rubio's Restaurants, Inc.; and Puchalski v. Taco Bell.

11. I&M also has served as litigation counsel, insurance litigation counsel and/or bankruptcy counsel in many other bankruptcy cases throughout the country, including: In re First

---

[2] Because Debtors' request for assistance with employee benefit matters followed the execution of I&M's engagement letter, the Debtors and I&M have agreed that the terms of the engagement letter also shall extend to such newly requested services so that further delay in filing this Application does not result.

[3] As described in more detail below, I&M assisted the Debtors with limited real estate, insurance and contract matters from approximately 2004 through January 6, 2006. Other than one-half hour billed in 2006, I&M's work for the Debtors effectively ceased in November 2005.

- 4 -

Alliance Mortgage Company (bankruptcy, insurance and litigation counsel); In re Peregrine Systems (post-confirmation litigation counsel); In re Imperial Credit Industries, Inc. (Trustee's bankruptcy and litigation counsel); In re Chi-Chi's Inc., (litigation and bankruptcy counsel); In re Nimitz Partners (litigation counsel); In re Med Diversified Inc. (litigation counsel for creditors' trust); In re The Flintkote Company (insurance and insurance litigation counsel); and In re Medieval Times (bankruptcy counsel).

12. I&M also has significant expertise in matters concerning almost every type of employee benefit plan, including 401k plans, welfare plans and COBRA obligations. I&M's experience extends to the winding up of such plans in bankruptcy matters. Recently, I&M provided such assistance in In re First Alliance Mortgage Company; In re Chevys; and In re Furrs Supermarkets.

13. I&M has stated its desire and willingness to act in these cases and render the necessary professional services as special bankruptcy litigation, employee benefits and insurance counsel for the Debtors.

*Services to Be Provided by I&M*

14. Subject to further Order of the Court, the Debtors propose that I&M be employed to represent the Debtors, in accordance with the terms of the Retainer Agreement, to provide, among other things, ordinary and necessary legal services as may be required in connection with the following:

    a. The WARN Class Action;

    b. Employee benefit matters, including issues relating to the wind down of the Debtors' benefit plans and their COBRA obligations;

    c. Insurance matters;

- 5 -

15. As indicated in the Retainer Letter, however, the Debtors do not intend for I&M to be responsible for the provision of substantive legal advice outside of those areas of expertise for which I&M is being expressly retained (when and as requested by the Debtors), including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law. Further, the Debtors do not intend for I&M to be required to devote attention to, form professional opinions as to, or advise the Debtors with respect to its disclosure obligations under federal or state securities or other nonbankruptcy laws or agreements.

*The Effectiveness of I&M's Employment*

16. On or about April 15, 2007, counsel to the Debtors made initial contact with I&M regarding this engagement. A call was convened shortly after such initial contact to discuss the WARN Class Action and I&M's interest in serving as special litigation counsel to the Debtors. Shortly thereafter, I&M determined, after conducting a preliminary check for conflicts, that it could accept the representation and the Debtors decided to retain I&M. The terms of I&M's retention were finalized on May 1, 2007, and I&M's engagement letter was executed by the Debtors on May 3, 2007.[4]

17. Because of the nature of the class action and the Debtors' sensitivity to employee related issues, I&M immediately began reviewing the class action complaint and additional documents relative to WARN Act issues.[5] At the same time, I&M began preparing retention paperwork, including this Application, which was filed as promptly as possible after I&M accepted the retention.

18. Because of the short amount of time between the filing of the WARN Class Action complaint and the Debtors' consideration of a response thereto (and consideration of

---

[4] This Application was ready to be filed when the Debtors contacted I&M regarding employee benefit representation assistance on May 8, 2007, and was subsequently modified.

[5] Nonetheless, I&M will not bill the estates for work performed before April 20, 2007.

- 6 -

additional employee-related issues), the Debtors were unable to obtain this Court's approval of I&M's retention prior to the commencement of work by I&M to represent and protect the Debtors' interests. The Debtors worked diligently with I&M and filed this Application as soon as practicable. Thus, the Debtors submit that approving I&M's retention in these cases *nunc pro tunc* to April 20, 2007, is appropriate under the circumstances.

*Disclosure Concerning Conflicts of Interest*

19. To check and clear potential conflicts of interest in these cases, and based upon information known on or near the date of this Application, I&M researched its client database to determine whether it had any relationships with the following entities (collectively, the "Interested Parties"):

    a. the Debtors (using both current and former names);

    b. the 50 largest unsecured creditors for the Debtors on a consolidated bases as identified in the Debtors' chapter 11 petitions;

    c. the Debtors' secured creditors;

    d. the Debtors' current directors and senior employees;

    e. significant shareholders of NCF; and

    f. professionals that the Debtors have identified as involved in these chapter 11 cases.

20. The identities of the Interested Parties were provided to I&M by the Debtors and are set forth on Schedule 1 to the Declaration of Jeffrey M. Reisner, a partner of I&M (the "Reisner Declaration"), a copy of which is annexed hereto as Exhibit D, and incorporated herein by reference. I&M has advised the Debtors that it has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases. I&M has further advised the Debtors that, to the extent its research of its relationships with the Interested Parties indicated that it has represented in the past several years, or currently represents, any Interested

Party in matters <u>unrelated</u> to these chapter 11 cases, the identities of such Interested Party are set forth below.

21. To the best of the Debtors' knowledge and belief, insofar as the Debtors have been able to ascertain after reasonable inquiry and except as may be described herein and in the Reisner Declaration, neither I&M nor any of the attorneys employed by it have any material connection with the Debtors, their creditors, the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), the Office of the U.S. Trustee, any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants. As disclosed in the Reisner Declaration, among other things:

> a. I&M has not represented, and, does not and will not represent any entity other than the Debtors in matters related to these chapter 11 cases.
>
> b. As described in paragraph 26 below, I&M has not performed any services for the Debtors since January 6, 2006 and is not a creditor of the Debtors or their estates.[6]
>
> c. I&M currently represents affiliates of creditors UBS Real Estate Group; Citigroup Global Markets Realty Corporation; J.P. Morgan Chase & Co.; GMAC Commercial Finance and General Electric Capital Corporation in matters unrelated to these cases.[7] Nonetheless, I&M does not, and will not, represent any of these entities or their affiliates in matters relating to the Debtors or their chapter 11 cases.[8]
>
> d. I&M recently served as counsel to creditor Lowermybills, Inc. and affiliates of creditor Credit Suisse First Boston Mortgage Capital Corporation LLC in matters unrelated to these cases. Nonetheless, I&M does not, and will not, represent any of these entities or their affiliates in matters relating to the Debtors or their chapter 11 cases.[9]
>
> e. From time to time I&M serves as counsel to, is represented by, and refers representations to other professional firms. I&M does not represent and is not represented by any of the other professional firms employed in the Debtors' chapter 11 cases with respect to these chapter 11 cases. I&M does not and will not represent any of

---

[6] With the exception of one-half hour entry in 2006, I&M's work for the Debtors ceased in November 2005.

[7] In many instances, I&M also represents other clients against the entities that are creditors of the Debtors rather than above-mentioned affiliates.

[8] On occasion, I&M files amicus briefs on behalf of industry groups in which various Interested Parties are participants. I&M filed such a brief in connection with the Enron case and several Interested Parties were members of the securities industry group on whose behalf the brief was filed. The Intrested Parties were not and did not become clients of I&M by virtue of such work, however.

[9] I&M is now adverse to Credit Suisse in other matters.

- 8 -

the other professional firms engaged in the Debtors' bankruptcy cases in any matters relating to the Debtors or their chapter 11 cases, but may otherwise represent such professional firms in unrelated matters.

  f. In the future, I&M may serve as counsel to certain other Interested Parties in matters unrelated to these cases. In the event that I&M is so retained, I&M will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

  g. I&M also serves or has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties were adverse to I&M's clients, or where I&M attorneys served as mediators in mediations involving Interested Parties. I&M has agreed to provide a detailed schedule of such entities upon request.

  h. Several attorneys of the Firm have spouses, parents, children, siblings, fiancés, fiancées, who are attorneys at other law firms, companies, and government agencies which may or may not be Interested Parties. I&M has strict policies against disclosing confidential information to anyone outside the Firm, including to spouses, parents, children, siblings, fiancés and fiancées.

  22. To the best of the Debtors' knowledge, information and belief, I&M represents no interest adverse to the Debtors in the matters for which I&M is proposed to be retained. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Reisner Declaration. The employment of I&M as special litigation, employee benefits and insurance counsel to the Debtors is appropriate and necessary to enable the Debtors to adequately defend themselves in the WARN Class Action and other similar actions that may be brought against the Debtors during the pendency of these chapter 11 cases. In addition, the Debtors are in need of advice regarding both insurance and employee benefit matters. The Debtors submit that its employment of I&M would be in the best interests of the Debtors' respective estates.

*Disclosure of Compensation*

  23. With respect to I&M's services as special litigation, employee benefits and insurance counsel, the Debtors request that all legal fees and related costs and expenses incurred by the Debtors on account of services rendered by I&M in these cases be paid as administrative

expenses of the estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code. Subject to the Court's approval, on an interim basis, I&M will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered. I&M has informed the Debtors that its billing rates currently vary from $275 to $805 per hour for attorneys and from $110 to $350 for litigation support, paralegals and legal assistants, and are adjusted periodically, typically on January 1 of each year.[10] The range of billing rates set forth above reflects, among other things, differences in experience levels within classifications and differences between types of services being provided.

24. A list of the guideline hourly rates for those members of I&M that are expected to render substantial and material services to the Debtor's is reflected in a schedule included in Exhibit B.

25. The Debtors have been billed, and will continue to be billed, at I&M's customary billing rates for matters of this type, together with reimbursement of all reasonable costs and expenses incurred by I&M in connection herewith. Such expenses include, but are not limited to, charges for messenger services, air couriers, photocopying, postage, long distance telephone service, outgoing facsimile service, computerized legal research facilities (including the time billed for such legal research), process service, investigative searches, and other charges customarily invoiced by law firms. The Debtors propose to pay I&M at such rates and to reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable

---

[10] I&M submits that the aforementioned rates be revised to the hourly rates that will be in effect from time to time. Changes in I&M's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

orders of this Court. Moreover, the Debtors understand that I&M hereinafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

26. Since January 6, 2006, I&M has not performed any services for the Debtors and the Debtors timely paid I&M for such services. Accordingly, I&M does not have a prepetition claim against the Debtors.

27. I&M has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Reisner Declaration. Further, I&M has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

28. The Debtors, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, propose to pay I&M its customary hourly rates for services rendered, as set forth above, and to reimburse I&M according to its customary reimbursement polices, and submit that such rates are reasonable.

## NOTICE

29. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to Greenwich Capital Financial Products, Inc., and The CIT Group/Business Credit, Inc., the Debtors' postpetition senior secured lenders; and (d) those parties timely requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, in accordance with Del.

Bankr. L.R. 2002-1(b) The Debtors submit that no other or further notice is necessary or required

## NO PRIOR REQUEST

30. No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court grant this Application in all respects and grant such other and further relief as is just and proper.

Dated: May 11, 2007
Wilmington, Delaware

Respectfully submitted,

New Century Financial Corporation, and on behalf of New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp., New Century R.E.O. II Corp., New Century R.E.O. III Corp., New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., as Debtors and Debtors in Possession

By: _____
Name: Monika L. McCarthy
Title: SVP and Assistant General Counsel