# EXHIBIT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| | : | |
| Debtors. | : | |

**DECLARATION OF JEFFREY M. REISNER IN SUPPORT OF
APPLICATION FOR ORDER PURSUANT TO SECTION 327(e)
OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF
IRELL & MANELLA LLP AS SPECIAL LITIGATION, EMPLOYEE BENEFITS AND
INSURANCE COUNSEL TO THE DEBTORS NUNC PRO TUNC AS OF APRIL 20, 2007**

I, JEFFREY M. REISNER, hereby declare as follows:

1.    I am a member in good standing of the Bar of the State of California. I am admitted to practice before, among other courts, the United States District Courts for the Central, Northern, Southern and Eastern Districts of California, and the Court of Appeals for the Ninth Circuit.

2.    I am a partner of Irell & Manella LLP ("I&M"), proposed special litigation and insurance counsel to New Century TRS Holdings, Inc., et al., the debtors and debtors in possession herein (the "Debtors").

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

3.    This Declaration is submitted in support of "Application For Order Pursuant To Section 327(e) Of The Bankruptcy Code Authorizing Employment Of Irell & Manella LLP As Special Litigation, Employee Benefits and Insurance Counsel To The Debtors *Nunc Pro Tunc* to April 20, 2007" (the "Application") filed by the Debtors. Except where otherwise indicated below, I have personal knowledge of the facts set forth in this Declaration. If called and sworn as a witness, I could and would testify competently such facts. This Declaration is made pursuant to Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4.    With respect to the facts set forth in this background section, I am informed and believe that such facts are true and correct.

5.    New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers.

6.    On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief. Further, the court entered an order approving the joint administration of the Debtors' chapter 11 cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors-in-possession.

7.    On or about April 17, 2007, a class action lawsuit relating to the Debtors' alleged violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et. seq. and California Civil Code §§ 1400, et seq. (collectively, the "WARN Act"), was filed in the Debtors' bankruptcy cases, commencing adversary proceeding 07-50970 (KJC) (the "WARN

Class Action." The WARN Class Action relates to various pre-petition employee terminations. The WARN Class Action plaintiffs seek allowance of a claim for sixty days of wages and benefits for each employee so terminated, and attorneys' fees and costs, on an administrative priority claim basis.

8.      The Debtors are in need of counsel to represent them in the defense of the WARN Class Action relating to possible additional employee terminations and desire to employ I&M for such purposes. The Debtors have further requested that I&M provide advice relative to certain insurance matters that arise from time to time. In early 2005, I&M performed an insurance policy review for certain of the Debtors. Upon its retention, I&M will again review the Debtors' insurance policies and be in a position to provide advice to the Debtors regarding their insurance policies. Moreover, the Debtors have requested that I&M provide the Debtors with representation in employee benefit matters, including with respect to the wind-up of the Debtors' benefit plans, and issues concerning the Debtors' COBRA obligations.

## I&M'S QUALIFICATIONS

9.      As indicated by the biographical summaries annexed to the Application as Exhibit B, I&M is highly qualified to serve as special litigation, employee benefits and insurance counsel in these chapter 11 cases. I&M has experience in virtually all aspects of the law that may arise in connection with the proposed representation. I&M has served as counsel in other large class action litigation matters, including, but not limited to: Broadcom Securities Class Action; Cheesecake Factory Securities Class Action; Charter Communications Securities Class Action; Global Crossing Securities Class Action; Metricom Securities Class Action; Coldiron v. Pizza Hut; Fraker v. KFC Corp.; Bates v. Rubio's Restaurants, Inc.; and Puchalski v. Taco Bell.

10.     I&M also has served as litigation counsel, insurance litigation counsel and/or bankruptcy counsel in many other bankruptcy cases throughout the country, including: In re First Alliance Mortgage Company (bankruptcy, insurance and litigation counsel); In re Peregrine

Systems (post-confirmation litigation counsel); In re Imperial Credit Industries, Inc. (Trustee's

bankruptcy and litigation counsel); In re Chi-Chi's Inc., (litigation and bankruptcy counsel); In re

Nimitz Partners (litigation counsel); In re Med Diversified Inc. (litigation counsel for creditors'

trust); In re The Flintkote Company (insurance and insurance litigation counsel); and In re

Medieval Times (bankruptcy counsel).

11.    I&M also has significant expertise in matters concerning almost every type of

employee benefit plan, including 401k plans, welfare plans and COBRA obligations. I&M's

experience extends to the winding up of such plans in bankruptcy matters. Recently, I&M

provided such assistance in In re First Alliance Mortgage Company; In re Chevys; and In re

Furrs Supermarkets.

12.    I&M has stated its desire and willingness to act in these cases and render the

necessary professional services as special bankruptcy litigation, employee benefits and insurance

counsel for the Debtors.

## SERVICES TO BE PROVIDED BY I&M

13.    Subject to further Order of the Court, the Debtors propose that I&M be employed

as their special litigation, insurance and employee benefits counsel in accordance with the terms

of the Retainer Agreement, in defending the Debtors' interests in the WARN Class Action and

providing advice relative to WARN Act issues, providing advice regarding insurance matters,

providing advice and assistance with respect to benefit plan issues and to perform all other

necessary or appropriate legal services in connection with these chapter 11 cases as the Debtors

request. The services I&M will provide, among, other things, are the ordinary and necessary

legal services as may be required in connection with the following:

- The WARN Class Action;

- Employee benefit matters, including issues relating to the wind down of the Debtors' benefit plans and their COBRA obligations;

- Insurance matters; and

- Providing such other advice and representation as may be necessary or appropriate in these chapter 11 cases relating to the foregoing.

14.    As indicated in the Retainer Letter, however, the Debtors do not intend for I&M to be responsible for the provision of substantive legal advice outside of those areas of expertise for which I&M is being expressly retained (when and as requested by the Debtors), including advice in such areas as patent, securities, trademark, corporate, taxation, labor, criminal or real estate law. Further, the Debtors do not intend for I&M to be required to devote attention to, form professional opinions as to, or advise the Debtors with respect to its disclosure obligations under federal or state securities or other nonbankruptcy laws or agreements.

## THE EFFECTIVENESS OF I&M'S EMPLOYMENT

15.    On or about April 15, 2007, counsel to the Debtors made initial contact with I&M regarding this engagement. A call was convened shortly after such initial contact to discuss the WARN Class Action and I&M's interest in serving as special litigation counsel to the Debtors. Shortly thereafter, I&M determined, after conducting a preliminary check for conflicts, that it could accept the representation and the Debtors decided to retain I&M. The terms of I&M's retention were finalized on May 1, 2007, and I&M's engagement letter was executed by the Debtors on May 3, 2007.[2]

16.    Because of the nature of the Class Action and the Debtors' sensitivity to employee related issues, I&M immediately began reviewing the Class Action complaint and additional

---

[2] This Application was ready to be filed when the Debtors contacted I&M regarding employee benefit representation assistance on May 8, 2007, and was subsequently modified.

documents relative to WARN Act issues.[3]  At the same time, I&M began preparing retention

paperwork, including this Application, which was filed as promptly as possible after I&M

accepted the retention.

17.    Because of the short amount of time between the filing of the WARN Class

Action complaint and the Debtors' consideration of a response thereto (and consideration of

additional employee-related issues), the Debtors were unable to obtain this Court's approval of

I&M's retention prior to the commencement of work by I&M to represent and protect the

Debtors' interests.  The Debtors worked diligently with I&M and filed this Application as soon

as practicable.  Thus, the Debtors submit that approving I&M's retention in these cases *nunc pro*

*tunc* to April 20, 2007, is appropriate under the circumstances.

## DISCLOSURE CONCERNING CONFLICTS OF INTEREST

18.    To check and clear potential conflicts of interest in these cases, and based upon

information known on or near the date of this Application, I&M researched its client database to

determine whether it had any relationships with the following entities (collectively, the

"Interested Parties"):

        a.    the Debtors (using both current and former names);

        b.    the 50 largest unsecured creditors for the Debtors on a consolidated
bases as identified in the Debtors' chapter 11 petitions;

        c.    the Debtors' secured creditors;

        d.    the Debtors' current directors and senior employees;

        e.    the Debtors' significant shareholders of NCF; and

        f.    professionals that the Debtors have identified as involved in these
chapter 11 cases.

19.    The identities of the Interested Parties were provided to I&M by the Debtors and

are set forth on Schedule 1 annexed hereto and incorporated herein by this reference.   I&M has

advised the Debtors that it has not, does not, and will not represent any Interested Party with

---

[3] Nonetheless, I&M will not bill the estates for work performed before April 20, 2007.

respect to matters related to the Debtors' chapter 11 cases. I&M has further advised the Debtors

that, to the extent its research of its relationships with the Interested Parties indicated that it has

represented in the past several years, or currently represents, any Interested Party in matters

<u>unrelated</u> to these chapter 11 cases, the identities of such Interested Party are set forth below.

20.    To the best of the Debtors' knowledge and belief, insofar as the Debtors have

been able to ascertain after reasonable inquiry and except as may be described herein, neither

I&M nor any of the attorneys employed by it have any material connection with the Debtors,

their creditors, the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), the Office of

the U.S. Trustee, any other party with an actual or potential interest in these chapter 11 cases, or

their respective attorneys or accountants. Among other things:

a.    I&M has not represented, and, does not and will not represent any entity other than the Debtors in matters related to these chapter 11 cases.

b.    As described in paragraph 25 below, I&M has not performed any services for the Debtors since January 6, 2006 and is not a creditor of the Debtors or their estates.[4]

c.    I&M currently represents affiliates of creditors UBS Real Estate Group, Citigroup Global Markets Realty Corporation; J.P. Morgan Chase & Co.; GMAC Commercial Finance and General Electric Capital Corporation in matters unrelated to these cases.[5] Nonetheless, I&M does not, and will not, represent any of these entities or their affiliates in matters relating to the Debtors or their chapter 11 cases.[6]

d.    I&M recently served as counsel to creditor Lowermybills, Inc. and affiliates of creditor Credit Suisse First Boston Mortgage Capital Corporation LLC in matters unrelated to these cases. Nonetheless, I&M does not, and will not, represent any of these entities or their affiliates in matters relating to the Debtors or their chapter 11 cases.[7]

e.    From time to time I&M serves as counsel to, is represented by, and refers representations to other professional firms. I&M does not represent and is not represented by any of the other professional firms employed in the Debtors' chapter 11

---

[4] With the exception of one-half hour entry in 2006, I&M's work for the Debtors ceased in November 2005.

[5] In many instances, I&M also represents other clients against the entities that are creditors of the Debtors rather than above-mentioned affiliates

[6] On occasion, I&M files amicus briefs on behalf of industry groups in which various Interested Parties are participants. I&M filed such a brief in connection with the Enron case and several Interested Parties were members of the securities industry group on whose behalf the brief was filed. The Interested Parties were not and did not become clients of I&M by virtue of such work, however.

[7] I&M is now adverse to Credit Suisse in other matters.

cases with respect to these chapter 11 cases. I&M does not and will not represent any of the other professional firms engaged in the Debtors' bankruptcy cases in any matters relating to the Debtors or their chapter 11 cases, but may otherwise represent such professional firms in unrelated matters.

        f.      In the future, I&M may serve as counsel to certain other Interested Parties in matters unrelated to these cases. In the event that I&M is so retained, I&M will file supplementary disclosures with this Court regarding the nature of such representation of an Interested Party.

        g.      I&M also serves or has served as counsel in matters unrelated to these chapter 11 cases where certain of the Interested Parties were adverse to I&M's clients, or where I&M attorneys served as mediators in mediations involving Interested Parties. I&M has agreed to provide a detailed schedule of such entities upon request.

        h.      Several attorneys of the Firm have spouses, parents, children, siblings, fiancés, fiancées, who are attorneys at other law firms, companies, and government agencies which may or may not be Interested Parties. I&M has strict policies against disclosing confidential information to anyone outside the Firm, including to spouses, parents, children, siblings, fiancés and fiancées.

      21.      To the best of the Debtors' knowledge, information and belief, I&M represents no interest adverse to the Debtors in the matters for which I&M is proposed to be retained. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Reisner Declaration. The employment of I&M as special litigation, employee benefits and insurance counsel to the Debtors is appropriate and necessary to enable the Debtors to adequately defend themselves in the WARN Class Action and other similar actions that may be brought against the Debtors during the pendency of these chapter 11 cases. In addition, the Debtors are in need of advice regarding both insurance and employee benefit matters. The Debtors submit that its employment of I&M would be in the best interests of the Debtors' respective estates.

## DISCLOSURE OF COMPENSATION

      22.      With respect to I&M's services as special litigation and insurance counsel, the Debtors request that all legal fees and related costs and expenses incurred by the Debtors on account of services rendered by I&M in these cases be paid as administrative expenses of the

estates pursuant to, among other things, sections 330(a), 331 and 503(b) of the Bankruptcy Code.

Subject to the Court's approval, on an interim basis, I&M will charge for its legal services on an

hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such

services are rendered. I&M has informed the Debtors that its billing rates currently vary from

$275 to $805 per hour for attorneys and from $110 to $350 for litigation support, paralegals and

legal assistants, and are adjusted periodically, typically on January 1 of each year.[8] The range of

billing rates set forth above reflects, among other things, differences in experience levels within

classifications and differences between types of services being provided.

    23.    A list of the guideline hourly rates for those members of I&M that are expected to

render substantial and material services to the Debtor's is reflected in a schedule annexed to the

Application as Exhibit B.

    24.    The Debtors have been billed, and will continue to be billed, at I&M's customary

billing rates for matters of this type, together with reimbursement of all reasonable costs and

expenses incurred by I&M in connection herewith. Such expenses include, but are not limited

to, charges for messenger services, air couriers, photocopying, postage, long distance telephone

service, outgoing facsimile service, computerized legal research facilities (including the time

billed for such legal research), process service, investigative searches, and other charges

customarily invoiced by law firms. The Debtors propose to pay I&M at such rates and to

reimburse it for such expenses, subject to the provisions of the Bankruptcy Code, the Federal

Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and applicable

orders of this Court. Moreover, the Debtors understand that I&M hereinafter intends to apply to

---

[8] I&M submits that the aforementioned rates be revised to the hourly rates that will be in effect from time to time. Changes in I&M's regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered by this Court establishing interim compensation procedures for all services performed and expenses incurred after the Petition Date.

25.     Since January 6, 2006, I&M has not performed any services for the Debtors and the Debtors timely paid I&M for such services. Accordingly, I&M does not have a prepetition claim against the Debtors.

26.     I&M has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code. Further, I&M has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

27.     The Debtors, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and further Orders of the Court, propose to pay I&M its customary hourly rates for services rendered, as set forth above, and to reimburse I&M according to its customary reimbursement polices, and submit that such rates are reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 11, 2007, at Newport Beach, California.

        /s Jeffrey M. Reisner_____
        Jeffrey M. Reisner