## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., | : | Case No. 07-10416 (KJC) |
| a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: May 30, 2007 @ 2:30 p.m.** |
| | | **Objection Deadline: May 23, 2007 @ 4:00 p.m.** |

## DEBTORS' APPLICATION FOR AN ORDER UNDER 11 U.S.C. §§ 327(e) AND 328 AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS SPECIAL REGULATORY COUNSEL <u>FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE</u>

New Century Financial Corporation and certain of its subsidiaries and affiliates,

debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"),

hereby submit this application ("Application") for entry of an order under 11 U.S.C. §§ 327(e)

and 328 authorizing the employment of Skadden, Arps, Slate, Meagher & Flom LLP and its

affiliated law practice entities (collectively, "Skadden, Arps" or the "Firm") as special regulatory

counsel on certain matters for the Debtors effective as of the Petition Date (defined below). In

support of this Application, the Debtors rely on the declaration of Eric M. Davis (the "Davis

---

[1]       The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership.

Declaration"), a copy of which is attached at Exhibit A. In further support, the Debtors respectfully state as follows:

### Background

1.      On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions in this Court under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The factual background regarding the Debtors, including their business operations, their debt structure and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of Monika L. McCarthy in Support of Chapter 11 Petitions and First Day Relief (Docket No. 2) (the "First Day Declaration"), and is incorporated herein. The Debtors continue to manage and administer their properties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108.

2.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(e) and 328.

### Relief Requested

3.      By this Application, the Debtors seek entry of an order authorizing the employment of Skadden, Arps as their special regulatory counsel effective as of the Petition Date. The Debtors request that Skadden, Arps be retained to perform the services described in this Application and on the terms set forth herein.

### Basis For Relief

4.      The Debtors need to retain counsel to assist them with various regulatory and enforcement actions arising out of the Debtors' alleged failure to file requisite financials and alleged inability to fund residential mortgage loans.

2

5.    The Debtors submit that the proposed retention of Skadden, Arps meets all the requirements for retention of special counsel under Bankruptcy Code section 327(e). This section permits a debtor in possession, with court approval, to employ counsel for a "specified special purpose" if such employment is in the best interests of the estates. As Skadden, Arps is the proposed special counsel for the limited purpose of advising and assisting the Debtors on certain regulatory and enforcement matters, Bankruptcy Code section 327(e) does not require that Skadden, Arps be "disinterested persons" as defined in Bankruptcy Code section 101(14). Rather, Bankruptcy Code section 327(e) requires only that Skadden, Arps not represent or hold any interest adverse to the Debtors or to the estates with respect to the matters on which Skadden, Arps is to be employed.

6.    As discussed below, Skadden, Arps' retention is in the best interests of the Debtors and their estates, and Skadden, Arps does not represent or hold any interest adverse to the Debtors or their estates on the matters on which Skadden, Arps is to be employed.

### The Employment Of Skadden, Arps Is In The
### Best Interests Of The Debtors And Their Estates

7.    Since 2003, Skadden, Arps has been representing the Debtors and their non-debtor entities (collectively, the "Company") regarding certain compliance and regulatory matters. In March 2007, the Debtors contacted Skadden, Arps and engaged Skadden, Arps to assist them in various regulatory and enforcement actions.[2] As detailed in the First Day Declaration and in filings with the Securities and Exchange Commission, the Debtors became unable to fund residential mortgage loans due to the Debtors' liquidity shortages. This, in turn, triggered numerous actions by state agencies. In these actions, the state agencies alleged that the

---

[2]    For the entire period from June 2003 to March 2007, Skadden, Arps' representation of the Company was limited, resulting in total fees and expenses billed to the Debtors and paid by the Debtors of less than $110,000

Company engaged in violations of applicable state law by failing to (a) fund mortgage loans after a mortgage closing, (b) meet certain financial requirements and (c) notify state regulators of defaults and terminations under certain of its financing arrangements.

8.      As of March 23, 2007, the Debtors had received cease and desist orders from regulators in nine states (Massachusetts, New Hampshire, New Jersey, New York, Connecticut, Maryland, Rhode Island, Tennessee, and California (the "C&D Orders")). Moreover, the Debtors had entered into consent agreements with regulators from eight states (Pennsylvania, Florida, Washington, Iowa, Maine, Michigan, Wyoming, and Idaho (the "Agreements"))

9.      Further, the Attorney General of Massachusetts had issued a Civil Investigative Demand ("CID") against the Debtors and the Attorney General of Ohio had commenced a civil action against the Debtors, which resulted in entry of a stipulated preliminary injunction ("Stipulated Preliminary Injunction").[3]

10.      The C&D Orders, Agreements and Stipulated Preliminary Injunction prevent the Debtors from taking certain actions, including the acceptance of new mortgage loan applications. Certain of the C&D Orders and Agreements, as well as the Stipulated Preliminary Injunction, require the Debtors to take affirmative actions. Some of these affirmative actions include the creation of an escrow account for the purpose of holding funds to be disbursed as refunds of upfront fees collected in connection with mortgage loan applications, the transfer of outstanding mortgage applications and unfunded loans to third parties and the provision of regular information to state regulators. Skadden, Arps actively advised and represented the Debtors in responding to the Regulatory Actions.

_____

[3]      The C&D Orders, the Agreements, the CID and the Stipulated Preliminary Injunction are referred to herein as the "Regulatory Actions".

11.     The Debtors' chapter 11 cases do not stay the Regulatory Actions. See 11 U.S.C. § 362(b)(25). The Regulatory Actions are ongoing. Because these actions raise numerous and complex regulatory and enforcement issues, the Debtors require counsel to advise and represent them.[4]

12.     The Debtors believe that Skadden, Arps' continued representation is critical. Skadden, Arps is one of the largest law firms in the world, employing over 1700 attorneys in 10 domestic offices and 13 international offices. Skadden, Arps provides legal services in virtually every practice area. The Debtors selected Skadden, Arps due to the Firm's extensive expertise in regulatory and enforcement matters and because of the Firm's prior representation of the Company.

13.     Skadden, Arps is well qualified and properly situated to handle the complex representation in a most efficient and timely manner. Due to Skadden, Arps' familiarity with the Debtors and the Regulatory Actions, Skadden, Arps' retention in these cases will likely result in savings for the estates.

14.     The Debtors firmly believe that the retention of Skadden, Arps is necessary and in the best interests of their estates and their creditors.

---

[4]     Notwithstanding that the Debtors are in the process of selling their business and liquidating, the Regulatory Actions are ongoing. The Debtors require counsel to advise and assist them with these actions as well as with other regulatory and enforcement issues and related litigation

## Services To Be Provided By Skadden, Arps

15. Subject to further order of this Court, Skadden, Arps will perform the

following services:

(a) advising and representing the Debtors in connection with the Regulatory Actions, including responding on behalf of the Debtors to information requests and appearing before state and federal agencies or governments as to the Regulatory Actions; and

(b) advising and representing the Debtors in connection with any other consumer lending practices regulatory issue, enforcement matter or related litigation.

Skadden, Arps is able and willing to provide the above services. The Debtors may request

additional services of Skadden, Arps. Should Skadden, Arps agree to undertake any such

additional services, the Debtors shall seek further order of the Court.

16. Due to Skadden, Arps' limited role, the Debtors do not believe that the

services of Skadden, Arps will be duplicative of services performed by other professionals in

these cases.

## Connections Of Skadden, Arps

17. The Davis Declaration discloses Skadden, Arps' connections to the

Debtors and parties in interest in these cases and is incorporated herein by reference. As set forth

in the Davis Declaration, Skadden, Arps has in the past represented, currently represents and

likely in the future will represent certain parties in interest in these chapter 11 cases in matters

unrelated to the Debtors, the Debtors' bankruptcy cases or such entities' claims against or

interests in the Debtors, or the matters for which Skadden, Arps is to be employed under this

Application.

6

18.     Further, as set forth in the Davis Declaration, under various waivers granted by the Debtors to Skadden, Arps, Skadden, Arps is advising certain clients in matters related to the Company. These matters, however, are unrelated to the matters on which Skadden, Arps is to be employed as special counsel in these cases. These clients include: (a) Ellington Management Group, LLC, (b) D.E. Shaw & Co. and Hegemon Capital, LLC, (c) Maguire Properties (as defined in the Davis Declaration) and (d) Edward Gotschall.

19.     Notwithstanding Skadden, Arps' representation of the above parties, the Debtors' retention of Skadden, Arps is appropriate under the Bankruptcy Code. As discussed in the Davis Declaration, none of the representations concern the matters on which Skadden, Arps is to be employed as special counsel.

20.     To the best of the Debtors' knowledge, Skadden, Arps does not hold or represent any interest adverse to the Debtors or to their estates on the matters on which Skadden, Arps is to be employed.

### Professional Compensation

21.     Skadden, Arps will be providing professional services to the Debtors under its bundled rate structure. A copy of the Firm's bundled rate structure is attached at Exhibit B. Skadden, Arps' fees for professional services in this structure are based upon its standard bundled hourly rates, which are periodically adjusted. Therefore, Skadden, Arps will not be seeking to be separately compensated for certain staff, clerical and resource charges. Presently, the hourly rates under Skadden, Arps' bundled rate structure range from $630-$875 for partners and of counsel, $595-$665 for counsel and special counsel, $315-$585 for associates, and $160-$250 for legal assistants and support staff. These hourly rates are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of a particular professional.

22.    The Debtors have agreed that, consistent with Skadden, Arps' policy regarding its other clients, Skadden, Arps will continue to charge the Debtors for other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include costs for long distance telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings. Charges and disbursements are invoiced under Skadden, Arps' Policy Statement Concerning Charges and Disbursements, a copy of which is also included at Exhibit B.

23.    In accordance with that Policy Statement, copying costs will be charged at $0.10 per page (for black and white copies), computerized research and long distance telephone calls will be billed at provider cost without reference to Skadden, Arps' internal capital costs or overhead, and document production, overtime meals, and overtime travel allowances will not be charged for separately on an incurrence basis but are included within the bundled rate structure.[5]

24.    On March 21, 2007, Skadden, Arps received a retainer in the amount of $100,000 (the "Initial Retainer") for professional services rendered or to be rendered and expenses incurred or to be incurred by Skadden, Arps regarding the Regulatory Actions. Skadden, Arps received an additional $100,000 on both March 26 and 30, respectively (the "Additional Retainer" and with the "Initial Retainer," the "Retainer"). At no time prior to the Petition Date did Skadden, Arps' outstanding fees and expenses for its representation of the Debtors exceed the amount of the Retainer. The Debtors and Skadden, Arps agreed that the Firm will apply the Retainer to prepetition fees and expenses and that any remaining amount would be held by Skadden, Arps as a postpetition retainer and applied to the final bill in these cases.

---

[5]    Further, in accordance with the Local Rules of this Court, non-working travel time will be billed at 50% of regular hourly rates.

25.    As of the Petition Date, based on prepetition fees and expenses that have been identified and accounted for or estimated as of the date hereof, and assuming application of all such fees and expenses against the Retainer, Skadden, Arps has approximately $18,000 remaining in the Retainer. Those remaining funds will be applied by Skadden, Arps to pay prepetition fees and costs that are subsequently identified and accounted for. Any balance existing after all such applications will be treated as a postpetition retainer and applied to the final bill in these cases as allowed by this Court.[6]

26.    Skadden Arps intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

27.    Skadden, Arps has informed the Debtors that the Firm will accept as compensation such sums as may be allowed by this Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in these cases.

28.    Additionally, Skadden, Arps has informed the Debtors that the Firm will also seek compensation for all time and expenses associated with its retention as a Bankruptcy Code section 327(e) professional, including the preparation of this Application, the Davis

---

[6]    For the twelve months preceding the Petition Date, there were no outstanding fees or expenses owed to Skadden, Arps by the Debtors, except as discussed herein and in the Davis Declaration.

Declaration and related documents, as well as any monthly fee statements and/or interim and final fee applications.

29.    The Debtors believe that the compensation structure and other terms and conditions, including the Retainer, are reasonable terms and conditions of employment and should be approved under Bankruptcy Code section 328(a).

30.    Other than as set forth above, no arrangement is proposed between the Debtors and Skadden, Arps for compensation to be paid in these cases.

31.    Except for sharing arrangements among Skadden, Arps and its affiliated law practice entities and their respective members, Skadden, Arps has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

### Notice

32.    The Debtors have provided notice of this Application to:  (a) the office of the United States Trustee, (b) counsel to the official committee of unsecured creditors, (c) counsel to Greenwich Capital Financial Products, Inc., and The CIT Group/Business Credit, Inc., the Debtors' postpetition senior secured lenders and (d) those parties timely requesting notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure, in accordance with Del. Bankr. L.R. 2002-1(b).  The Debtors submit that no other or further notice is necessary or required.

### No Prior Request

33.    No previous application for the relief sought herein has been made to this Court or any other court.

10

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court (a) enter an order

granting the relief requested herein and (b) grant such other and further relief as is just and

proper.

Dated:  May 11, 2007
       Wilmington, Delaware

Respectfully submitted,

New Century Financial Corporation, and on behalf
of New Century TRS Holdings, Inc., New Century
Mortgage Corporation, NC Capital Corporation,
Home123 Corporation, New Century Credit
Corporation, NC Asset Holding, L.P., NC Residual
III Corporation, NC Residual IV Corporation, New
Century R.E.O. Corp., New Century R.E.O. II
Corp., New Century R.E.O. III Corp., New Century
Mortgage Ventures, LLC, NC Deltex, LLC, NCoral,
L.P., as Debtors and Debtors in Possession

By: _____
    Name:  Monika L. McCarthy
    Title:    SVP and Assistant General Counsel