IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-10416(KJC) |
| | Jointly Administered |
| Debtors. | Hearing Date: May 30, 2007 at 2:30 p.m. |
| | Objection Deadline: May 23, 2007 at 4:00 p.m. |

## SECOND MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS (A) TO HONOR ADDITIONAL PREPETITION OBLIGATIONS TO CUSTOMERS PURSUANT TO THE CUSTOMER PROGRAMS AND (B) TO CONTINUE THE CUSTOMER PROGRAMS

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this motion (the "Motion") for entry of an order pursuant to section 105(a) of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") authorizing, but not directing, the Debtors (a) to perform and honor their prepetition obligations related to certain of the Debtors' Customer Programs (as defined below)

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

as they see fit, and (b) to continue, renew, replace, implement new, and/or terminate such Customer Programs (as defined below) as the Debtors see fit, in the ordinary course of business, without further application to the Court. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2. The basis for the relief requested herein is Bankruptcy Code § 105(a).

## BACKGROUND

3. New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year

2

ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4. On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Court has entered an order authorizing the joint administration of the Debtors' bankruptcy cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

5. On the Petition Date, the Debtors filed a Motion for an Order Pursuant to Section 105(a) of the Bankruptcy Code Authorizing the Debtors (A) to Honor Certain Prepetition Obligations to Customers Pursuant to the Customer Programs and (B) to Continue the Customer Programs (the "Initial Customer Motion"). The Initial Customer Motion requested relief to continue certain pre-petition services the Debtors were providing to their customers, including, but not limited to a consumer restitution plan (the "Consumer Restitution Plan"), the funding of manufactured home loans (the "Manufactured Home Loan Funding") under a program regulated by the Federal Housing Authority ("FHA") and transferring pipeline loans to other lenders or brokers. The Court granted the relief requested in the Initial Customer Motion and capped the amounts paid under the Consumer Restitution Plan at $90,0000 and amounts paid under the Manufactured Home Loan Funding at $2.5 million.

6. The Debtors have identified additional customer programs that are necessary to retain their licenses during the transition of their businesses to the purchaser of the servicing platform. The Debtors further seek authority to pay Customer Restitution Plan

payments in excess of the $90,000 cap established in the order granting the Initial Customer Motion.

## RELIEF REQUESTED

7.  By this Motion, the Debtors respectfully request entry of an order pursuant to section 105(a) of the Bankruptcy Code, that authorizes, but does not direct, the Debtors, in their business judgment, (a) to perform and honor their prepetition obligations related to the Customer Programs (as defined below) as they see fit, and (b) to continue, renew, replace, implement new, and/or terminate such of those Customer Programs (as defined below) as they see fit, in the ordinary course of business, without further application to the Court. The Customer Programs are described in detail below:

>   A.  <u>Consumer Restitution Plan</u>. In the Initial Consumer Motion, the Court granted the Debtors the authority to pay up to $90,000 for monies due to consumers under the Consumer Restitution Plan. As explained in the Initial Consumer Motion, the intent of the Consumer Restitution Plan is to order to mitigate the damages to its customers after the Warehouse Lenders ceased providing funding for loans originated by the Debtors. Prior to the cutoff, certain customers had entered into agreements and paid fees to the Debtors, including, but not limited to, appraisal fees, fees for credit reports, lock, and application fees, in anticipation of receiving mortgage loans. The Consumer Restitution Plan proposes to make whole these customers who were damaged as a result of the Debtors' liquidity crisis. Fees received from the customers are in an escrow account so that refund checks may be generated for the customers. In addition, the Debtors propose to set up an escrow account to make equitable restitution

4

payments to the customers who closed a loan with the Debtors and who either received inferior funding from an alternative lender or who were not able to obtain any alternative loan. The Debtors seek authority to continue paying amounts that arise under the Consumer Restitution Plan in excess of $90,000. As of the beginning of May, the Debtors have received requests for an additional $15,000 but believe refund requests will be ongoing and request authority to pay up to an additional $50,000 under the Consumer Restitution Plan.

B.     <u>FHA and VA Insurance</u>. Prior to the Petition Date, the Debtors funded loans sponsored by the Department of Housing and Urban Development ("FHA") and Department of Veterans Affairs ("VA"). FHA and VA require the Debtors to meet strict fee and underwriting guidelines to secure FHA or VA insurance or guarantees. In the ordinary course of business, FHA and VA audit the fees charged by the Debtors to borrowers for FHA and VA loans. If the audit concludes that the Debtors charged fees outside of the guidelines, the Debtors must return the fees to the customer or FHA or VA may not insure or guarantee the loan. FHA and VA recently notified the Debtors that they must refund approximately $6,500 for fees charged and the Debtors anticipate additional refund demands from FHA and VA.

C.     <u>Escrow Holdbacks</u>. In the ordinary course of the Debtors' origination business, the Debtors routinely held back a portion of the funds loaned to a customer for the purchase of property in escrow with the closing agent. Generally the escrowed amounts are earmarked for construction improvements or upgrades that the seller has agreed to complete in the purchase

contract. The escrow agent would hold the escrowed amounts until the Debtors would direct the escrow agent to release the funds, generally when the construction was completed and inspected to the Debtors' satisfaction. While the Debtors believe that escrowed amounts are generally not property of the estate, out of an abundance of caution, the Debtors request authority to return escrowed amounts to the borrower. The Debtors have already received requests for approximately $40,000 for escrowed amounts.

D.    State Regulatory Audit Refunds. State Regulators routinely audit loans originated in prior years by the Debtors. During these audits, the state may conclude that the Debtor has charged an unallowable fee under state law, In those instances, the state directs the Debtors to refund unallowable fees charged by Debtors to borrowers. Compliance with these audits is necessary for the Debtors to maintain their licenses in certain states.

8.    The relief requested by this Motion is necessary in order to alleviate the concerns of the regulators and the Debtors' customers and to preserve the Debtors' licenses while the sale process is concluded. Continued compliance with regulators is critical to the preservation of the Debtors' licenses to operate. The preservation of the licenses is necessary to preserve the going concern value of the Debtors' servicing platform. Moreover, the Debtors believe that the bankruptcy filing and the Debtors' failure to fulfill the prepetition promises made to its customers through the Customer Programs, could further negatively influence customers' attitudes and behavior toward the Debtors' services unless the Debtors can take the measures requested by this Motion. For these and for the other reasons set forth herein, it is in the best interests of the Debtors, their estates and their creditors to honor prepetition obligations under the

6

Customer Programs and to continue the Customer Programs as they see fit in the ordinary course of business.

## BASIS FOR RELIEF

9. The Debtors seek authorization, pursuant to section 105(a) of the Bankruptcy Code, to continue the Customer Programs and honor the related prepetition obligations to their customers and to others necessary to maintain the existence of the Customer Programs. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

10. Since mid-March, the Debtors have been subject to various actions by state regulators, including cease and desist orders or suspensions. The services provided by the Debtors through the Customer Programs are largely the result of agreements reached with many of the state regulators in order for the Debtors to continue to operate with regulatory approval. The Debtors are engaged in ongoing discussions with state regulators regarding the Debtors' funding constraints and the impact on customers who were in various stages of the loan origination process. The Debtors have advised these regulators that it has ceased accepting loan applications. In addition, the Debtors have advised these regulators that the Debtors are unable to fund any mortgage loans, including mortgage loans for those customers who were already in the loan origination process with the Debtors. The Debtors have been and continue to work cooperatively with these regulators to mitigate the impact on the affected customers, including

implementing the other Customer Programs.

11. Similar relief to the type herein requested, i.e. the protection of customers, has been authorized in other chapter 11 cases. See, e.g., In re Zany Brainy, Inc. et al., Case No. 01-1749 (SLR) (Bankr. D. Del. 2001); In re Home Place of America, Inc., Case No. 01-181 (PJW) (Bankr. D. Del 2001); In re Converse, Inc., Case No. 01-223 (SLR) (Bankr. D. Del. 2001); In re Just For Feet, Inc., Case No. 99-4110 (PJW) (Bankr. D. Del. 1999); In re Montgomery Ward Holding Corp., et al., Case No. 97-1409 (PJW) (Bankr. D. Del. 1997); In re Silas Creek Retail, Inc., et al., Case No. 97-1239 (HSB) (Bankr. D. Del. 1997); In re Grossman's Inc., et al., Case No. 97-695 (PJW) (Bankr. D. Del. 1997); In re Strawberries Inc., et al., Case No. 309 (RRM) (D. Del. 1997); In re CM Holdings, Inc., et al., Case No. 96-1247 (PJW) (Bankr. D. Del. 1996).

12. The Debtors believe that the requested relief is necessary to continue to comply with regulators, to operate in the ordinary course of business, and preserve the value of the estates. "The ability of the Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). This equitable common law principle "was first articulated by the United States Supreme Court in Miltenberger v. Logansport, C & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed 117 (1882) and is commonly referred to as either the 'doctrine of necessity' or the 'necessity of payment' rule." In re Ionosphere Clubs, Inc., 98 B.R. at 176. "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying

certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful reorganization." Id. at 825-26.

13. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay certain critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. See In re Columbia Gas System, 136 B.R. 930, 939 (Bankr. D. Del. 1992) citing In re Lehigh & New England Rwy Co., 657 F.2d 570, 581 (3rd Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.").

14. Authorization to provide equitable payments under the Customer Programs will not be deemed to constitute postpetition assumption or adoption of any agreement pursuant to Bankruptcy Code Section 365 or otherwise, and the Debtors hereby reserve all of their rights under the Bankruptcy Code with respect to any such agreement. Moreover, authorization to make payments under the Customer Programs will not affect the Debtors' right to contest the amount or validity of any such payments, in whole or in part.

15. Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interest of the Debtors and all parties in interest.

## NOTICE

16. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' postpetition secured lenders; (3) the Official Committee of General Unsecured Creditors; and (4) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. As this Motion is seeking first day relief,

notice of this Motion and any order entered hereon will be served as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

17. The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

## NO PRIOR REQUEST

18. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other further relief the Court deems just and proper.

Dated: May 11, 2007
       Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION