IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NEW CENTURY TRS HOLDINGS, INC., a | : Case No. 07-10416 (KJC) |
| Delaware corporation, et al.,[1] | : |
| | : Re: Docket No. 70 |
| Debtors. | : |
| | : Objection Deadline: May 14, 2007 at 4:00 p.m. |
| | : Hearing Date: May 21, 2007 at 10:00 a.m. |

**OBJECTION OF C-BASS REGARDING PROVISION OF AUDIT
REPORTS WITH RESPECT TO EMERGENCY MOTION OF DEBTORS
AND DEBTORS IN POSSESSION FOR (I) AN ORDER (A) APPROVING
BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION
WITH THE PROPOSED SALE OF THEIR ASSETS USED IN LOAN
SERVICING BUSINESS, (B) SCHEDULING HEARING TO CONSIDER
PROPOSED SALE OF CERTAIN ASSETS AND APPROVING FORM
AND MANNER OF NOTICE THEREOF AND (C) GRANTING RELATED
RELIEF AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE
AND (B) GRANTING RELATED RELIEF**

Credit-Based Asset Servicing and Securitization LLC ("_C-BASS_"), by counsel, submits the following as its objection (the "_Objection_") to the Emergency Motion of Debtors and Debtors in Possession for (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Proposed Sale of Their Assets Used in Loan Servicing Business, (B) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Manner of Notice Thereof and (C) Granting Related Relief and (II) an Order (A) Approving the Proposed Sale and (B) Granting Related Relief (Docket No. 70) (the "*Motion*"):

## Preliminary Statement

1. If a party other than Carrington Mortgage Services, LLC (the "*Initial Bidder*") is the winner at the auction (the "*Winner*"), or the eventual purchaser (the "*Purchaser*"), of the Debtors' servicing business (the "*Servicing Business*"), the Initial Bidder should be required to provide the audit reports regarding the Servicing Business (the "*Audit Reports*") to the Debtors, the Winner and the Purchaser. To do otherwise would be manifestly unjust. Moreover, absent the provision of the Audit Reports under such circumstances, the Initial Bidder should not be reimbursed for the expenses incurred related to the Audit Reports.

## Background

2. On April 2, 2007 (the "*Petition Date*"), New Century TRS Holdings, Inc., and its affiliated debtors and debtors in possession (collectively, the "*Debtors*") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "*Bankruptcy Code*").

3. On April 4, 2007, the Debtors filed the Motion. In the Motion, the Debtors requested approval of (i) bidding procedures and overbid protections, including an expedited sale process, and (ii) the sale of the Servicing Business.

4. On April 19, 2007, the Debtors filed that certain Amended and Restated Asset Purchase Agreement between (among others) New Century Financial Corporation and Carrington Capital Management, LLC (the "*APA*").

5. Section 4.2(c) of the APA provides, in pertinent part, that the Initial Bidder

> has retained and shall continue to retain, at its own cost, an independent accounting firm to audit prior to the Closing Date the calculation, as of fifteen days prior to the Closing Date (the "Pre-Closing Audit Report"), as of the Cut-Off

>  Date (the "Cut-Off Date Audit Report") and as of the Closing Date (the "Closing Date Audit Report" and, together with the Pre-Closing Audit Report and the Cut-Off Date Audit Report, the "Audit Reports"), of (i) the outstanding stated principal balance of all Mortgage Loans under the Servicing Agreements in the Mortgage Loan Schedule, the Cut-off Date Mortgage Loan Schedule and the Closing Date Mortgage Loan Schedule, (ii) the Servicer Advance Facility Amount, and (iii) the Advances Amount, in each case including the calculation of collections and distributions pursuant to the Servicing Agreements and the Servicer Advance Facility used in calculating such amounts.

APA, § 4.2(c). As described more fully in the APA, subject to the parties' rights to dispute the Audit Reports, the Audit Reports, and in particular the Closing Date Audit Report, will affect the eventual purchase price for the Servicing Business, perhaps substantially. *See, e.g.*, APA, § 4.2; 4.3.

6. In addition, the APA provides that upon certain contingencies, which include the Servicing Business not being sold to the Initial Purchaser, the Debtors are to pay the Initial Purchaser for the Initial Purchaser's reasonable, actual out-of-pocket fees and expenses, including fees and expenses of attorneys, financial advisors and other consultants, in an aggregate amount not to exceed $2 million (the "*Expense Reimbursement*"). See APA, § 9.2(b).

7. On April 20, 2007, the Court entered the Order (I) Approving Bidding Procedures, Including Break-Up Fee and Expense Reimbursement Payable to Carrington Mortgage Services, LLC for Sale of Debtors' Serving Business; (II) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Notice Thereof; and (III) Approving Procedures to Fix Cure Amounts Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Approving Notice Thereof (the "*Procedures Order*").

8. On May 10, 2007, C-BASS submitted a bid to purchase the Servicing Business.

9. C-BASS holds substantial claims against the Debtors and is a member of the Official Committee of Unsecured Creditors (the "*Committee*"). In fact, the Debtors listed C-

BASS on the consolidated List of Creditors Holding 50 Largest Unsecured Claims against the Debtors.

### Argument

10. If a party other than the Initial Bidder is the Winner or the Purchaser, the Initial Bidder should be required to provide the Audit Reports to the Debtors, the Winner and the Purchaser no later than one business day following receipt of the Audit Reports by the Initial Bidder. Further, the Initial Bidder should be required to provide the Audit Reports to the Debtors, the Winner and the Purchaser in the same format in which the Initial Bidder receives the Audit Reports.

11. The APA contemplates that the Initial Bidder will provide the Audit Reports to the Debtors as soon as the Initial Bidder receives the Audit Reports. *See* APA, § 4.2(c). Specifically, the APA states "Purchaser shall provide Sellers with each of the Audit Reports as promptly as possible after Purchaser receives such Audit Reports from the auditor and Sellers shall have the right to dispute all matters included in each Audit Report." *Id.*

12. Despite this language, if the Initial Bidder is not the Winner or the Purchaser, the Initial Bidder could take the position that the APA no longer requires the Initial Purchaser to obtain and provide the Audit Reports. More particularly, if the Initial Bidder is not the Winner or the Purchaser, the Initial Bidder may tell the auditor to stop working on the Audit Reports or simply not provide the Audit Reports once the auditor delivers them.

13. Consequently, any order approving the Motion should expressly state that to the extent the Initial Bidder is not the Winner or the Purchaser, the Initial Bidder must obtain the Audit Reports and provide the Audit Reports to the Debtors, the Winner and the Purchaser in the same format in which the Initial Bidder receives the Audit Reports. Absent such a requirement,

the Debtors may be forced to incur substantial additional expenses, to the detriment of the Debtors' estates, to obtain reports similar to the Audit Reports.

14. Moreover, in such circumstances the Initial Bidder should be compelled to obtain and provide the Audit Reports because the Initial Bidder will expect to be paid for the expenses it has incurred regarding the Audit Reports as part of the Expense Reimbursement under the APA. It would be the height of inequity, and contrary to the requirements of the Bankruptcy Code for the approval of administrative expenses, to permit the Initial Bidder to be reimbursed for the costs incurred with respect to the Audit Reports without a corresponding benefit to the Debtors' bankruptcy estates. *See Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (noting that the party requesting an administrative expense bears "the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets"). Accordingly, the Court should require the Initial Bidder to provide the Audit Reports to the Debtors, the Winner and the Purchaser.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## Conclusion

WHEREFORE, C-BASS respectfully requests that, to the extent the Initial Bidder is not the Winner and the Purchaser, this Court deny the Debtors' Motion unless and until the proposed order is modified to require the Initial Bidder to obtain the Audit Reports and provide the Audit Reports to the Debtors, the Winner and the Purchaser.

Dated: May 14, 2007

Eckert, Seamans, Cherin & Mellot, LLC.

_____
Michael Busenkell (DE Bar No. 3933)
300 Delaware Avenue
Suite 1210
Wilmington, Delaware 19801

and

HUNTON & WILLIAMS LLP

Peter S. Partee (PP-0766)
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

and

J.R. Smith (Va. Bar No. 41913)
Jason W. Harbour (DE Bar No. 4176, Va. Bar No. 68220)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

Counsel to *Credit-Based Asset Servicing and Securitization LLC*

U0006513