IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | § | Chapter 11 |
| | § | |
| **NEW CENTURY TRS HOLDINGS, INC.,** | § | Case No. 07-10416 (KJC) |
| a Delaware corporation, *et al.*, | § | |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | Related to Docket Nos. 340, 420 |
| | § | Objection Deadline: 5/14/07 at 4:00 p.m. |

**OBJECTION OF AFFILIATED COMPUTER SERVICES, INC.
AND ACS COMMERCIAL SOLUTIONS, INC. TO NOTICE OF
INTENT TO ASSUME AND ASSIGN AND FIXING OF CURE AMOUNTS**

Affiliated Computer Services, Inc. and ACS Commercial Solutions, Inc. (collectively, "ACS"), by their undersigned attorneys, files this Objection to Debtors' Notice of Intent to Assume and Assign and Fixing of Cure Amounts (the "Notice") [Docket No. 340] and in support thereof avers as follows:

### I. PROCEDURAL BACKGROUND

1. New Century TRS Holdings, Inc., along with its affiliated companies (the "Debtors") filed their respective Chapter 11 cases on April 2, 2007 (the "Petition Date"). The Debtors are managing their assets and businesses as debtors-in-possession.

2. On April 4, 2007, the Debtors filed their Emergency Motion of Debtors and Debtors in Possession for (I) an Order (a) Approving Bidding Procedures and Bid Protections in Connection with the Proposed Sale of Assets Used in Their Loan Servicing Business, (b) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and Manner of Notice Thereof and (c) Granting Related Relief and (II) an Order (a) Approving the Proposed Sale and (b) Granting Related Relief (the "Sale Motion"). In the Sale Motion, the

Debtors sought approval to establish bid procedures and bid protections, hold an auction and to approve a sale of their loan servicing business.

3. On April 19, 2007, the Bankruptcy Court entered an order establishing bid procedures (the "Bid Procedures Order"). Under the terms of the Bid Procedures Order, procedures were established to govern the sale and potential auction of the Debtors' loan servicing business. The Bid Procedures Order also required the Debtors to send a Notice of Assumption and Assignment to non-debtor counterparts of executory contracts setting forth the Debtors' intention to assume and assign certain executory contracts to the winning bidder and proposed cure amounts.

4. On or about April 24, 2007, the Debtors mailed the Notice of New Century's Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases in Connection with the Proposed Sale of Its Servicing Business and the Fixing of Cure Costs Associated Therewith ("Notice of Assumption and Assignment"). The Debtors' Agreement with ACS is listed on Exhibit "A" thereto as a proposed contract to be assumed and assigned to the winning bidder and the cure amount is listed as "zero".

## II. THE ACS CONTRACT

5. Prior to the Petition Date, ACS and the Debtors entered into that certain Master Services Agreement (the "Agreement") dated April 28, 2006, by and between New Century Mortgage Corporation and ACS Commercial Solutions, Inc. A copy of the Agreement is attached hereto as **Exhibit "1"**. Pursuant to the Agreement, ACS provides services necessary to receive, inventory, prep, scan, index and commit base loan files and other loan documentation to an electronic database. ACS also maintains a searchable database of the loan documentation, which contains several hundred million pages of documents. Maintenance of such loan

documentation in an accessible and searchable form is critical to Debtors' loan servicing business as the ability to access and search the loans which are being serviced is vital to the Debtors' operations.

### III. OBJECTION TO ASSIGNMENT AND ASSUMPTION OF CONTRACT AND PROPOSED CURE AMOUNT

6. Section 365 of the Bankruptcy Code affords a debtor in possession the opportunity to preserve the value of executory contracts by assuming and assigning such agreements to a buyer. However, to the extent a default exists under the contracts, the debtor in possession is required to (a) cure or provide adequate assurance that it will promptly cure such default; (b) compensate or provide adequate assurance that it will promptly compensate a non debtor party for actual pecuniary loss resulting from such default; and (c) provide adequate assurance of future performance by the assignee. See 11 U.S.C. §365(b)(1); *In re Rickel Home Centers, Inc.*, 209 F.3d 291 (3rd Cir. 2000).

7. ACS objects to the proposed assumption and assignment of the Agreement because a substantial monetary default exists and the Debtors have not recognized the amount owed much less provided any adequate assurance that the Debtors will promptly cure such default.

8. Further, ACS objects to the proposed cure amount of "zero" because it is simply not correct. Interestingly, on the Debtors' Top 50 List of Unsecured Creditors, the Debtors list $1,139,676.28 as the amount owed to ACS although the Notice of Assumption and Assignment reflects "zero" as the amount owed to ACS. A review of ACS' books and records reflects that ACS has not been paid for services beginning on December 28, 2006 and continuing through the present. The invoices outstanding through April 27, 2007 total $1,741,995.00. Copies of the four unpaid invoices are attached hereto as **Exhibit "2"**. In addition, ACS estimates based on

3

the volume that it is currently performing for the Debtors that an additional $220,000.00 will accrue by May 15, 2007 leaving a total cure amount of $1,961,995.00. The amounts owed will continue to accrue as ACS provides post-petition services to the Debtors, as required by the Agreement and as requested by the Debtors. Depending on the date of closing, these additional amounts will need to be added to calculate the final cure amount. In addition, ACS may be entitled to attorneys' fees and other costs as well.

9. Under the Agreement, the Debtors pay for each item imaged. ACS images and maintains a substantial volume of documents each month. For example (and as detailed on the ACS invoices), from the period of December 2006 through January 2007, ACS imaged and stored over seven (7) million documents. From the period from February 27, 2007 to March 28, 2007, ACS imaged and stored over four (4) million documents.

10. The Debtors are permitted to assume and assign leases and executory contracts. However, the Debtors may not assume until any defaults have been cured. Here the Debtors are not proposing to pay the cure amount in full as required by the Bankruptcy Code. Accordingly, absent payment in full of the cure amount, the Debtors should not be permitted to assume and assign the contract.

11. ACS also preserves its rights concerning adequate assurance and reserves the right to object to adequate assurance of future performance as the identities of the bidders become known.

12. ACS also has certain ownership rights of certain intellectual property as defined in the Agreement. ACS also preserves its rights concerning such property.

WHEREFORE, ACS respectfully requests that the assignment of the contract as requested in the Bid Procedures Order and the Notice of Assumption and Assignment be denied unless the cure amount is paid in full as detailed herein and for such and other further relief as may be justly entitled.

Dated: May 14, 2007

CONNOLLY BOVE LODGE & HUTZ LLP

Karen C. Bifferato, Esquire (#3279)
Christina M. Thompson (#3976)
1007 North Orange Street
Post Office Box 2207
Wilmington, DE 19899
Telephone: (302) 888-6221
Facsimile: (302) 658-5614

- and -

Larry A. Levick
Texas Bar No. 12252600
Michelle E. Shriro
Gerard Singer Levick, P.C.
Delaware Bar No. 3219
16200 Addison Road, Suite 140
Addison, Texas 75001
Telephone: (972) 380-5533
Facsimile: (972) 380-5748
Attorneys for Affiliated Computer Services, Inc. and ACS Commercial Solutions, Inc.

#538917