IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 07-10416 (KJC) |
| NEW CENTURY TRS HOLDINGS, INC. | : | Jointly Administered |
| a Delaware corporation, *et al.*, | : | |
| | : | **Objection Deadline: May 14, 2007 at 4:00 p.m.** |
| Debtors. | : | **Hearing Date: May 21, 2007 at 10:00 a.m.** |
| | : | |
| | : | **Related to Docket No. 526** |

## OBJECTION OF WASHINGTON MUTUAL TO THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR A PROCEDURE TO GRANT RELIEF FROM THE AUTOMATIC STAY FOR CERTAIN FORECLOSURE PROCEEDINGS PURSUANT TO SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE

Washington Mutual and its affiliates and subsidiaries ("WaMu"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Motion of the Debtors and Debtors In Possession for a Procedure to Grant Relief from the Automatic Stay for Certain Foreclosure Proceedings Pursuant to Sections 105(a) and 362 of the Bankruptcy Code* [Docket No. 526] (the "Motion"), and in support thereof, respectfully represents as follows:

### Background

1.  On or about April 2, 2007 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.  Prior to the Petition Date, the Debtors sold certain loans that the Debtors originated, to WaMu pursuant to various agreements. Typically, pursuant to the applicable agreements, the Debtors retained a junior lien on the properties that secured the loans that were sold to WaMu, and WaMu was assigned a senior lien on such properties. In certain cases, the borrowers on such loans have defaulted under the loans, and, in order to protect its interests,

WaMu needs to and is permitted to, under the applicable documents, foreclose on the applicable property. However, because the Debtors have filed for bankruptcy, WaMu is not able to foreclose on such properties without first obtaining relief from the automatic stay set forth in section 362(a) of the Bankruptcy Code.

3. On May 3, 2007, the Debtors filed the Motion, which seeks an order approving certain procedures (the "Procedures") to modify the automatic stay to allow foreclosures of senior liens where the Debtors hold junior liens and the fee interest is not property of the Debtors' estates. Among other things, the proposed Procedures require that all senior lien holders must pay the Debtors $1,000.00 (the "Payment") for each foreclosure, and that foreclosures may not occur until 45 days have passed from the date the senior lien holder provides certain information to the Debtors. In addition, it is unclear as to whether the Procedures will apply to cases where foreclosure actions were not already pending as of the Petition Date, but where foreclosures might be appropriate in the future.

**Objection and Basis Therefore**

4. WaMu objects to the Motion because (i) the Payment is unfair and unjust, (ii) the 45 day period between the date that the senior lien holder provides the requested information and the date by which the foreclosures can proceed, is too long, and (iii) the Procedures should be revised so as to make it clear that they apply not only to foreclosure proceedings that were pending as of the Petition Date, but also to all cases where foreclosures by the senior lien holder are permitted under the applicable loan documents. Lastly, WaMu seeks a clarification as to certain information required to be provided in the Notice (as defined in the Motion).

5. First, the Payment to be made by the senior lien holders to the Debtors for each Notice is an unfair and unjust payment that the Debtors are seeking to extort from the senior lien

holders. It appears that the Debtors are attempting to use the Procedures as a money making mechanism by extorting money from senior lien holders who are only attempting to exercise the remedies that they are permitted to exercise under the applicable loan documents.

6.  The Debtors attempt to justify the Payment by stating that "[t]he senior lien holder will be treated fairly by either receiving a prompt reinstatement of its debt or relief from the automatic stay without incurring the costs of adducing appraisal testimony or litigating these disputes which is likely to far exceed the $1,000 cost it must pay to get this treatment." *See* Motion ¶ 10, at 6. However, this argument is wholly untenable because although the senior lien holder may save some expense by not being required to file a lift stay motion, it still has to spend the time and money associated with compiling and distributing the relevant information, then wait additional time to proceed with its foreclosure. It is actually the Debtors who will be saving time and money by the approval of the Procedures, and so providing the Debtors with an extra $1,000.00 per foreclosure, would be providing them with a windfall. Moreover, although procedures similar to the Procedures have been adopted in several other cases, in neither of the "other cases" that the Debtors cite to in the Motion, was any payment required to be made by the senior lien holders to the debtors.

7.  Next, pursuant to the Procedures, the senior lien holders must wait 45 days from when they provide the Notice, assuming that the Debtors do not reinstate the senior lien debt, to proceed with the applicable foreclosure. Given that most of the applicable borrowers have already been defaulting for several months, WaMu requests that this timeframe be shortened to 30 days. A shorter time period is more appropriate in order to limit the loss suffered by the senior lien holders, and 30 days is enough time within which the Debtors and other interested parties can examine the information required in the Notice. In the *Conseco* case cited by the

Debtors in the Motion, although the debtors had requested a 45 day period to object to the proposed foreclosure, the Court shortened the time frame to 30 days.

8. In addition, WaMu requests that the Procedures apply to all foreclosure proceedings that are permitted under the applicable loan documents, whether or not they were commenced prior to the Petition Date. Lastly, as stated previously, WaMu seeks a clarification as to certain information required to be provided in the Notice. In the Motion, the Debtors propose that the Notice include, among other things, evidence regarding the value of the senior lien and the position and value of any other known liens. *See* Motion ¶ 8(a)(ii)(b) and (c), at 4. Typically, the best evidence that lenders such as WaMu possess regarding the value of the senior lien and any other liens on a particular property, is a copy of the applicable title policy and/or a copy of the recorded mortgage or deed of trust. WaMu requests that the foregoing documentation be deemed sufficient for purposes of satisfying the Notice requirements that are set forth in ¶ 8(a)(ii)(b) and (c) of the Motion.

WHEREFORE, WaMu respectfully requests that the Court enter an order that denies the Motion or, in the alternative, that modifies the relief granted to the Debtors as requested herein. WaMu further requests that the Court grant to it such further and additional relief as the Court may deem just and proper.

Dated: May 14, 2007
Wilmington, Delaware

Karen C. Bifferato (No. 3279)
Christina M. Thompson (No. 3976)
Marc J. Phillips (No. 4445)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141

*Attorneys for Washington Mutual and its affiliates and subsidiaries*

#538872v1