

# NCMC - Walz
# Outsource Service Agreement

*Form: WSO-CD1*

Walz Postal Solutions, Inc. also known as Walz Secured Outsourcing ("Walz") located at 43234 Business Park Drive, Suite 107 Temecula, California 92590-3604 will provide printing and/or mailing and/or digital imaging and/or return processing services "Services") for New Century Mortgage Corporation ("NCMC"), located at 18400 Von Karman, Suite 1000, Irvine, Ca 92612 in accordance with the terms and conditions and Confidentiality requirements of the "NCMC- Walz Outsource Agreement ("Agreement") as set forth in the terms and conditions below.

## GENERAL TERMS AND CONDITIONS

### Services
Walz and NCMC will perform the Services required as per the "Walz Outsource Project Requirements" attached as Exhibit A on a non-exclusive basis, and with no minimum requirements. Services will be performed on business days excluding weekends and holidays. Walz will complete it Services within twenty four (24) hours of receipt or other term specified in Exhibit A. Generally, all services, provided by Walz, will be performed the same day that they are submitted or received, subject to delays caused by data not being received in a timely manner or any reasonable unforeseen event(s) that would cause the Services not to be performed that day. Other than the requirements specified in Exhibit A and this Agreement, the methods and techniques used to fulfill the aforementioned Services will be at the reasonable and sole discretion of Walz.

### Consideration
In return for its Services provided herein, Walz will be compensated at a rate as outlined in Exhibit B "Consideration For Services". (See Other Costs below).

### USPS Costs
The costs associated with USPS postage and/or permit and/or P.O. Box, if any, are to be pre-paid by NCMC . In the event that Walz must utilize its own postage funds, due to insufficient postage funding or in the case of a customer owned USPS Permit, failing to meet the minimum requirement, Walz may, at its option, charge a 10% surcharge for advanced postage and NCMC will reimburse Walz for these costs within 10 business days of receipt of invoice.

### Other Costs
In the event that Walz had processed items transmitted by NCMC and NCMC communicates with Walz, after the processing, that all or some of the items are not to be processed, Walz reserves the right to bill for any material costs incurred. Walz also will include on its monthly invoice all costs relating to the shipping of items covered under this Agreement.

### Invoices
Walz will invoice NCMC monthly for all Services performed during the month, as well as for all other associated costs as outline in this Agreement. Each invoice from Walz must be accompanied by, agreed upon, sufficient detail to allow NCMC to determine the accuracy of the invoice.   Invoices shall be sent to the address specified by NCMC, and shall be payable within 30 days after receipt of the invoice. Walz reserves the right to charge allowable interest, at a maximum rate of 1.0% per month, in the event of delinquent payments by NCMC.



# NCMC - Walz
# Outsource Service Agreement

### Confidentiality
Walz and NCMC acknowledge that each will acquire knowledge, information and/or materials about the other and that all such knowledge, information and/or materials acquired or developed, shall be the confidential, proprietary information of the source of such knowledge, information and/or materials ("Confidential Information"). Walz and NCMC agree to hold each other's Confidential Information in strictest confidence, not to disclose it to others or to use it in any way inconsistent with the terms of this Agreement.

Confidential Information includes, but is not limited to, business procedures, trade secrets, and computer systems-related information. Except for information which is in the public domain, all such information is the property of the party having such Confidential Information.

Each party agrees that they shall not use Confidential Information for any purpose other than as expressly allowed in this Agreement. Each party shall take all steps necessary to maintain the confidentiality of Confidential Information. Each party shall restrict distribution of Confidential Information to only those persons directly involved in performing the prescribed obligations under this Agreement and to authorized representatives of government agencies responsible for the regulation of Walz or NCMC. Each party agrees not to reproduce in any manner or allow reproduction of Confidential Information except as unavoidably necessary for the performance of their respective duties pursuant to this Agreement.

Upon termination of this Agreement, Each party shall immediately return to the other party any Confidential Information, including all reproductions of documentation, if any. In no event shall either party retain the other party's Confidential Information in any form, except that which is reasonably necessary for tax, audit, policyholder servicing and legal requirements.

Each party agrees that the other party will suffer irreparable harm in the event that one party fails to comply with its obligations under this provision and that monetary damages alone will be inadequate to compensate the aggrieved party for such breach. Accordingly, each party agrees that in addition to all other remedies which may be available to it in law or in equity, the aggrieved party shall be entitled to seek injunctive relief and such costs associated with seeking injunctive relief shall be borne by party violating the provisions hereof.

Each party agrees to notify the other party promptly and fully in writing of circumstances surrounding any known possession, use or knowledge of any Confidential Information by anyone other than persons authorized by this Agreement to have access to such Confidential Information. Such notification shall include, but not be limited to, the names and addressees of such unauthorized persons.

In the event either party is required in a judicial, administrative or governmental proceeding to disclose any information, material, records and files or customer lists which are obtained or furnished as a result of this Agreement, such party will provide the other party with prompt notice of such request(s) so that such other party may seek an appropriate protective order or waive compliance with the provisions of this Agreement.

### Warranty for Services
Walz warrants that it shall perform the Services under this Agreement in a professional manner, by qualified personnel, in accordance with all applicable industry standards, in full compliance with applicable rules, laws and regulations, and in accordance with the terms of this Agreement. NCMC warrants that it will comply with any reasonable requests regarding the transmission of data between NCMC and Walz and that the data will be formatted in a manner as agreed by both parties.

### Disclaimer of Warranties
EXCEPT FOR THE EXPRESS WARRANTIES MADE OR REFERENCED IN THIS AGREEMENT, NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.



# NCMC - Walz
# Outsource Service Agreement

**Limitation of Liability**
Neither party shall be liable to the other for any special, consequential or indirect damages, including damages for any lost profits or lost data in connection with this Agreement, even if such party was advised of or could have foreseen the possibility of such damages. The foregoing shall not limit both parties' obligations to each other under the paragraph of this Agreement entitled "Indemnification." Further, with the exception of a party's indemnification obligations or a breach of the paragraph tiled "Warranty for Services", neither party's aggregate liability under this Agreement shall exceed the amounts paid from NCMC to Walz during the first six (6) months under this Agreement.

**Indemnification**
If any third party asserts a claim against NCMC because of a breach by Walz of its obligations under this Agreement, Walz shall defend or settle such claim at its sole expense and shall pay any damages and other monetary relief (including costs or expenses) awarded against NCMC by a court or arbitrator if the claim is not settled; provided that Walz shall have no obligation to defend NCMC if such third party claim is in any way caused by NCMC. If any customer or third party asserts a claim against Walz because of NCMC's breach of its obligations under this Agreement, NCMC shall defend or settle such claim at its sole expense and shall pay any damages and other monetary relief (including costs or expenses) awarded against Walz by a court or arbitrator if the claim is not settled; provided, however, that NCMC will have no obligation to defend Walz if the third party claim is any way caused by the actions or omission of Walz. This indemnification provision shall not be deemed to waive or limit any other rights.

**Right to Cure**
If any party believes that the other party has breached this Agreement, it shall notify such other party in writing of the particulars of the alleged breach. If such party cures such breach to the satisfaction of the non-breaching party within 10 calendar days after the date of such notice, the breach shall not be considered material.

**Disclosure Required by Law**
If any party believes it is required by law (including securities laws) or by a subpoena or court order to disclose any of another party's confidential or proprietary information, it shall promptly notify such other party prior to any disclosure and shall make all reasonable efforts to allow that party an opportunity to seek a protective order or other judicial relief.

**Dispute Resolution**
In the event of any dispute arising out of or relating to this Agreement, the parties agree to attempt in good faith to resolve the dispute first by direct negotiation and then, if that is not successful, by mediation with a neutral third-party mediator acceptable to both parties. The parties will share mediation expenses equally. In the event that mediation fails, then both parties reserve the right to use legal remedies to resolve the issues. This paragraph is not intended to limit Walz's ability to pursue legal remedies in collection of any legitimate invoiced Services.

**Partial Invalidity**
If any provision of this Agreement is held to be unenforceable, the remaining provisions shall continue in full force and effect. The parties affected by such provision shall in good faith negotiate a mutually acceptable and enforceable substitute for the unenforceable provision, which substitute shall be as consistent as possible with the original intent of the parties.

**Assignment**
No party's rights or obligations under this Agreement (except the right to receive money) shall be assigned, whether voluntarily, involuntarily or by operation of law, without the written consent of the other parties, except that upon 30 days' advance written notice to the other parties, any party may without such consent assign this Agreement to a party which it: (a) owns or controls; or (b) is owned or controlled by; or (c) is under common ownership or control with. Any consent required by this paragraph shall not be unreasonably withheld, conditioned or delayed.

**Successors and Assigns**
This Agreement shall inure to the benefit of and be binding upon the respective successors and assigns, if any, of the parties. Nothing in this paragraph shall be construed to permit any attempted assignment, which would be unauthorized pursuant to any other provision of this Agreement.

**Good Faith**
Both parties will act in good faith in the execution of the Services called for in this Agreement and will agree to communicate, in a timely, clear manner on any issues that may arise and cooperate fully with each other in a fair and equitable manner to meet the requirements of this Agreement.



# NCMC - Walz
# Outsource Service Agreement

**Entire Agreement**
This Agreement includes the attached exhibit(s) referenced herein and constitutes the entire agreement between the parties. This Agreement may be altered only by a written amendment clearly identified as an amendment to this master Agreement and signed by authorized personnel of both parties. All such amendments to this Agreement shall be binding on both parties despite any lack of consideration.

**Governing Law**
This Agreement and each Addendum shall be governed by the laws of the state of California, without reference to conflict of law principles.

**Notices**
All notices required by this Agreement to be in writing shall be delivered by hand, by overnight courier, or by certified mail. Notices required to be in writing shall be deemed given only upon receipt by the transmitting party of confirmation of receipt of a facsimile, or on the date of actual delivery when the written notice is not sent by facsimile. All notices shall be directed to the contact persons listed below at the respective addresses and facsimile numbers listed below. Either party may from time to time send written notice to the other party designating a different address, facsimile number or contact person for notices to itself.

**Contacts Regarding this Agreement**

Jim Hutchinson
Walz Secured Outsourcing, LLC
43234 Business Park Drive, Suite 107
Temecula, CA 92590-3604
909-491-6800
909-491-6599 Fax
jhutchinson@walzgroup.com

New Century Mortgage Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612
Attn: Murray Jansen
(949) 797-5004
(949) 471-1609

THE PARTIES HAVE READ THIS AGREEMENT, UNDERSTAND IT, AND BY SIGNING BELOW AGREE TO BE BOUND BY IT. EACH PARTY REPRESENTS THAT THE INDIVIDUAL SIGNING ON ITS BEHALF HAS FULL AUTHORITY TO BIND SUCH PARTY.

| Walz Postal Solutions, Inc. | |
|---|---|
| By: | *[signature]* J. Hutchins |
| Printed Name: | Jim Hutchinson |
| Title: | GENERAL MANAGER |
| Date: | 30-SEP-2004 |

| New Century Mortgage Corporation | |
|---|---|
| By: | *[signature]* |
| Printed Name: | ERIC HAINES |
| Title: | SENIOR VICE PRESIDENT |
| Date: | September 27, 2004 |



# NCMC - Walz
# Outsource Service Agreement

## EXHIBIT A

### NCMC - Walz
### Outsource Project Requirements

Updated: 09/15/04

| Item 1 | Data Transmission | By secure VPN |
|---|---|---|
| Item 2 | Data Transmitted to Walz | Supply Walz with the following:<br>1. Letter type<br>2. Customer Name<br>3. Customer Address<br>4. Pertinent dates<br>5. Pertinent dollar amounts (if applicable)<br>6. Customer Reference#<br>7. Other (to be determined) |
| Item 3 | Letter/Form Type | Describe letter/form type to be used. |
| Item 4 | Letter Process Description | Describe the process to be used. |
| Item 5 | Pre-paid Postage Instructions | Place a check mark below:<br>1) ☒ Pre-pay to Walz Postage Account<br>*Make checks payable to: "Walz Client Postage Account"*<br><br>2) ☐ Use Customer Owned Permit |
| Item 6 | USPS PO Box/Caller Service (Optional)<br><br>Yes ☒  No ☐ | NCMC to obtain a PO Box and Caller Service in Temecula, CA for the purpose of receiving returned items (Return Receipts, unclaimed mail pieces, etc.). NCMC will provide USPS in Temecula, CA with a letter authorizing Walz to act as agent in picking up the mail on behalf of NCMC. |
| Item 7 | 3877 Firm Mailing Book (Optional)<br><br>Yes ☒  No ☐ | Walz will print a USPS Form 3877 Firm Mailing Book each day that will accompany the mail pieces and be 'round dated" and signed by the USPS upon deposit of the mail in the USPS. Round dated 3877 will be sent to NCMC. |
| Item 8 | Electronic Manifest (Optional)<br><br>Yes ☒  No ☐ | Daily, Walz will send an electronic version of the Form 3877 to NCMC, via VPN and/or burned CD, in a format to be agreed upon. |



# NCMC - Walz
# Outsource Service Agreement

| Item 9 | Return Address | Specify Return Address here |
|---|---|---|
| Item 10 | "Returned" Return Receipts and Mail Pieces (Optional)<br><br>Yes ☒   No ☐ | Walz retrieves all items from the post office, processes them through its system indicating the "return" Result (Return Receipt Signed, Mail Piece Unclaimed), date of receipt back at Walz. Walz will make every effort to process the returned items in the same day. Certain days may have high volumes that may require some of the volume moving to the next day. Walz will bundle all "returned" items and return them to NCMC. |
| Item 11 | "Returned" Manifest (Optional)<br><br>Yes ☒   No ☐ | Daily, Walz will send to NCMC an electronic manifest, via VPN and/or burned CD, of all 'returned' green cards as well as in tact items returned to sender. The manifest will contain: data to be determined |
| Item 12 | "Returned" Statistics (Optional) | Rules: (check below)<br>☐ Signed:<br>☐ Signed With Forwarding Address:<br>☐ Unclaimed:<br>☐ Unclaimed with Forwarding Address: |
| Item 13 | USPS Address Correction and FastForwarding (Optional) | Options: (check below)<br>☐ Mail to Original Address<br>☐ Mail to Corrected Address<br>☐ Mail to Forwarding Address<br>☐ Transmit Forwarding Address |

WPS Initials:

NCMC Initials:



> **Preliminary Cost Estimate**
> **Full Service**

Walz Secured Outsourcing
(*A Division of Walz Postal Solutions, Inc.*)

December 10, 2003

Diana Cook
Servicing Operations   Project Administrator
New Century Mortgage
210 Commerce
Irvine, CA 92602

Based upon the information you have provided to date, and on certain positive assumptions about your ability to forward the documents and data according to normal and reasonable data guidelines, the following is an estimate of the Walz fees to process your work. We anticipate that, virtually <u>all current labor and materials costs</u> associated with your letter/notice production and <u>returns processing, will be eliminated</u>. Additionally, using the FastForwarding feature is estimated to increase delivery speed, on those items, by 3-7 days.

## Transaction Fee:   $0.70

**Transaction: Defined as a singular mail piece rate based upon volumes and mixes from Note1 below.**
Note1: Estimate based upon Sample Month volume indicated in the "Letter Code Table" provided by client.
Note2: Estimate based upon a return (Unclaimed mail pieces) rate of 10%.
Note3: Return Processing requires client to have a P.O. Box with Caller service.
Note4: If FastForwarding not required, Transaction Fee: $0.67
Note5: No samples of data or letter templates have been provided to Walz and no color printing is indicated.
Note6:  See WSO flash presentation: http://www.walzoutsource.com/outsource/wso-pres.htm

<u>Includes</u>
- Data assurance checking.
- Application of Address Correction and FastForwarding to names and addresses.
- All media and materials costs (paper, envelopes, ink, toner etc.)
- Printing and mailing the item
- Printing the USPS Firm Mail Book and acquiring of the postal signature, proving deposit in US Mail.
- Digital imaging of outbound letters.
- Digital imaging of the USPS Firm Mailing Book
- Transmission of transactional data  (USPS Article#, Date Mailed, Delivery Results, etc.) to client.
- Processing "returned" mail (Return Receipts and Unclaimed mail pieces)
- Digital imaging of the "returned" mail.
- Transmission of all digital images to client
- Records management: bundling of "returned' items and shipping these and the USPS Firm Mail Book to client.
- Secured Web connection to your records including daily status of updates from the USPS Delivery Tracking System regarding the tracking events within USPS (Certified Mail only).

<u>Miscellaneous Costs</u>
- Shipping Returns: (4 times per month) @ $20 each.(approx)
- USPS P.O.Box and Caller service: $72 per month (paid semi-annually)
- USPS Permit: $150 Annual Fee

1588 S Mission Rd., Ste 110, Fallbrook, CA  92028-4112
(877) 325-3800 Toll Free • (760) 728 0565 PDT • (760) 728 3266 – Fax •   rwalz@walzgroup.com

**MUTUAL NON-DISCLOSURE AGREEMENT**

This Non-Disclosure Agreement (the "**Agreement**") is entered into as of December 18, 2003 (the "**Effective Date**"), by and between New Century Mortgage Corporation, a California corporation ("**New Century**"), having its principal place of business at 18400 Von Karman, Suite 1000, Irvine, CA 92612, and Walz Postal Solutions, Inc., a California corporation ("**Walz**"), having a business address at 1588 S. Mission Road, Suite 110, Fallbrook, CA 92028-4112. Each of New Century and Walz shall be a "Receiving Party" and a "Disclosing Party" for purposes of this Agreement.

W I T N E S S E T H:

**WHEREAS**, the Receiving Party wishes to enter into discussions with the Disclosing Party concerning a possible business arrangement or transaction between them (the "**Discussions**");

**WHEREAS**, in connection with the Discussions, the Receiving Party may acquire certain confidential information relating to the Disclosing Party's current and/or future business, including, without limitation, financial and customer information, business information, technical information, know-how, product and marketing strategies, business methods, and processes, each as it relates to Disclosing Party's current business and/or future business plans; and

**WHEREAS**, the parties hereto wish to set forth their understanding with respect to such confidential information.

**NOW, THEREFORE**, in consideration of the foregoing Recitals and for good and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, New Century and Walz hereby agree as follows:

Section 1. Confidential Information. Except as provided below, "**Confidential Information**" means any proprietary and confidential information, including, without limitation, any proprietary and confidential technical, marketing or financial information and any information relating to the present and future business operations or financial condition of the Disclosing Party and any of its subsidiaries and affiliates, whether such information is written, oral or in electronic, digital, magnetic or other tangible form, whether such information was provided prior or subsequent to the execution of this Agreement, which is disclosed by the Disclosing Party to the Receiving Party, whether designated as confidential by the Disclosing Party or otherwise, in connection with the Discussions; It is understood that the term "Confidential Information" does not include information which the Receiving Party can establish:

(a) has been published or is now in the public domain, or in the future becomes published or in the public domain through no action of the Receiving Party;

(b) subsequent to disclosure hereunder, is received by the Receiving Party from a third party not known by the Receiving Party to be under an obligation of confidentiality to the Disclosing Party;

(c) is independently developed by the Receiving Party without reference to the Confidential Information; or

(d) is disclosed with the prior written approval of the Disclosing Party.

Section 2. Non-Disclosure.

2.1. The Confidential Information shall (a) be kept confidential by the Receiving Party, (b) not be used by the Receiving Party in any way detrimental to the Disclosing Party, and (c) not be used by the Receiving Party other than in connection with the Discussions. The Receiving Party may disclose the Confidential Information only to those of its and its subsidiaries' and affiliates' directors, officers, agents, employees or representatives (collectively, the "**Representatives**") who need to know the Confidential Information in connection with the Discussions. The Receiving Party will (i) inform each of its Representatives receiving Confidential Information of the confidential nature of the Confidential Information and of this Agreement, (ii) direct its Representatives to treat the Confidential Information confidentially and not to use it other than in connection with the Discussions, and (iii) be responsible for any improper use of the Confidential Information by the Receiving Party or its Representatives (including without limitation, its Representatives who, subsequent to the first date of disclosure of Confidential Information hereunder, become its former Representatives). Further, neither the Receiving Party nor its Representatives shall modify, enhance, supplement, create derivative works from, reverse assemble, reverse compile or otherwise attempt to reverse engineer the design and function of any of the Confidential Information. Without the prior written consent of the Disclosing Party, the Receiving Party will not, and will direct its Representatives not to, disclose to any person that the Confidential Information has been made available to it or that the Discussions are taking place.

2.2. If either party is requested or required (by a court having jurisdiction, oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any Confidential Information supplied to them by the other party pursuant to this Agreement, that party shall provide the Disclosing Party with prompt written notice of such request(s) so that the Disclosing Party may seek an appropriate protective order and/or waive compliance with the provisions of this Agreement. Receiving Party agrees to cooperate with the Disclosing Party, at the Disclosing Party's expense, in obtaining such protective order. If the Disclosing Party does not obtain such protective order or provide a waiver of this obligation within a reasonable time after such notice, the Receiving Party may disclose such Confidential Information pursuant to the request without liability hereunder, provided that the Receiving Party has complied with the notice provisions of this Agreement, and provided further that, if so requested by Disclosing Party and at Disclosing Party's expense, the Receiving Party has received an opinion of counsel that concludes that such disclosure is legally required.

Section 3. <u>Safe Return of Confidential Information.</u> The Receiving Party shall use the same care to avoid disclosure or unauthorized use of the Confidential Information as it generally uses to protect its own proprietary information, but in no event less than reasonable care. Upon the written request of the Disclosing Party, the Receiving Party shall return to the Disclosing Party, or in the case of electronic, magnetic or digital media, to erase or render unreadable, all materials which contain Confidential Information of the Disclosing Party (including without limitation, documents, drawings, models, prototypes, sketches, designs, lists, papers, magnetic media and other tangible media) and, if requested by the Receiving Party, shall deliver a certificate of an officer of the Receiving Party to the Disclosing Party to the effect that the foregoing has been done; provided that the Receiving Party may retain its work product incorporating or reflecting Confidential Information if required by applicable law or regulation.

Section 4. <u>No Licenses.</u> Neither the execution of this Agreement nor the furnishing of any Confidential Information under this Agreement shall be construed as granting the Receiving Party or any of its subsidiaries, affiliates or Representatives, either expressly or by implication, estoppel or otherwise, any license or right to use any Confidential Information for its own benefit (other than in connection with the Discussions) or the benefit of any other person, firm or entity, and each party expressly agrees not to so use any such information. Nothing contained in this Agreement shall be construed as conferring on the Receiving Party any rights, by license or otherwise, to any patent, invention, idea, discovery, or improvement of the other party, whether made, conceived or acquired prior to, during or after the date of this Agreement.

Section 5. <u>Governing Law; Remedies.</u> This Agreement shall be governed by the internal laws of the State of California without reference to principles of conflict of laws. Each party hereby acknowledges that it may be difficult to estimate damages resulting from such a breach and, consequently, the non-breaching party shall be entitled to seek injunctive or other equitable relief to prevent a breach or continued breach of this Agreement, and to secure the enforcement of this Agreement, without foregoing any legal relief to which the Disclosing Party may be otherwise entitled.

Section 6. <u>Term.</u> The term of this Agreement shall be three (3) years, commencing on the Effective Date; provided, however, that the obligations to keep the Confidential Information confidential as more particularly described herein shall continue in perpetuity irrespective of the status of the Discussions.

Section 7. <u>Competitive Activities.</u> The Receiving Party shall not, during the term of this Agreement and for a period of six (6) months thereafter, use the Confidential Information to seek out and induce any person (by offering such person employment or otherwise) who is an employee of the Disclosing Party to terminate his or her employment with the Disclosing Party or any of its affiliates.

Section 8. <u>Indemnification.</u> The Receiving Party shall at all times indemnify and hold the Disclosing Party and its subsidiaries and affiliates, and their respective officers, directors, agents and employees harmless from and against any and all claims, damages (including consequential damages), liabilities, costs and expenses, including reasonable counsel fees and expenses (whether incurred in an action or proceeding between the parties or otherwise), arising out of or relating to any material breach or alleged breach by the Receiving Party of any

3

representation, warranty or undertaking made herein; provided that the Disclosing Party shall give prompt written notice, cooperation and assistance to the Receiving Party relative to any such claim or suit; provided, further, that no settlement of any such claim or suit (other than between the parties) shall be made without the prior written consent of the Receiving Party, which consent shall not be unreasonably withheld.

Section 9. <u>Further Agreements.</u> It is understood and agreed that the disclosure by the Disclosing Party of the Confidential Information hereunder shall not result in any obligation on the part of either party to enter into any further agreement with the other with respect to the Discussions or otherwise.

Section 10. <u>No Assignment.</u> Neither party may assign, pledge or otherwise transfer this Agreement or any right or obligations hereunder without the prior written authorization of the other party.

Section 11. <u>Non-Circumvention.</u> The parties agree that no effort shall be made to circumvent the letter or spirit of this Agreement.

Section 12. <u>Notices.</u> Any notice required or permitted by this Agreement shall be in writing and shall be deemed sufficient upon receipt, when delivered personally or by courier, overnight delivery service or confirmed facsimile, or forty-eight (48) hours after being deposited in the regular mail as certified or registered mail (airmail if sent internationally) with postage prepaid, if such notice is addressed to the party to be notified at such party's address or facsimile number as set forth above in this Agreement.

Section 13. <u>Severability.</u> Every provision of this Agreement shall be construed, to the extent possible, so as to be valid and enforceable. If any provision of this Agreement so construed is held by a court of competent jurisdiction to be invalid, illegal or otherwise unenforceable, such provision shall be deemed severed from this Agreement, and all other provisions shall remain in full force and effect.

Section 14. <u>Entire Agreement.</u> This Agreement represents the entire Agreement between the parties with respect to the Discussions, superseding all previous oral or written communications, representations or agreements and shall be binding on and shall inure to the benefit of the successors and assigns of each party. This Agreement may be modified only by a writing signed by both parties. This Agreement may be signed in one or more counterparts, each of which shall constitute an original.

**Remainder of Page Intentionally Left Blank**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the Effective Date.

**NEW CENTURY MORTGAGE CORPORATION**

By: *[signature]*
Name: Eric Haines
Title:  Senior Vice President


**WALZ POSTAL SOLUTIONS, INC.**


By: *[signature]*

Name: Rod Walz
Title:  CEO



| | |
|---|---|
| | **Preliminary Cost Estimate**<br>**Full Service** |

Walz Secured Outsourcing
(*A Division of Walz Postal Solutions, Inc.*)

December 10, 2003

Diana Cook
Servicing Operations   Project Administrator
New Century Mortgage
210 Commerce
Irvine, CA 92602

Based upon the information you have provided to date, and on certain positive assumptions about your ability to forward the documents and data according to normal and reasonable data guidelines, the following is an estimate of the Walz fees to process your work. We anticipate that, virtually <u>all current labor and materials costs</u> associated with your letter/notice production and <u>returns processing, will be eliminated</u>. Additionally, using the FastForwarding feature is estimated to increase delivery speed, on those items, by <u>3-7 days.</u>

## Transaction Fee: $0.70

**Transaction: Defined as a singular mail piece rate based upon volumes and mixes from Note1 below.**
Note1: Estimate based upon Sample Month volume indicated in the "Letter Code Table" provided by client.
Note2: Estimate based upon a return (Unclaimed mail pieces) rate of 10%.
Note3: Return Processing requires client to have a P.O. Box with Caller service.
Note4: If FastForwarding not required, Transaction Fee: $0.67
Note5: No samples of data or letter templates have been provided to Walz and no color printing is indicated.
Note6:  See WSO flash presentation: http://www.walzoutsource.com/outsource/wso-pres.htm

<u>Includes</u>
- Data assurance checking.
- Application of Address Correction and FastForwarding to names and addresses.
- All media and materials costs (paper, envelopes, ink, toner etc.)
- Printing and mailing the item
- Printing the USPS Firm Mail Book and acquiring of the postal signature, proving deposit in US Mail.
- Digital imaging of outbound letters.
- Digital imaging of the USPS Firm Mailing Book
- Transmission of transactional data  (USPS Article#, Date Mailed, Delivery Results, etc.) to client.
- Processing "returned" mail (Return Receipts and Unclaimed mail pieces)
- Digital imaging of the "returned" mail.
- Transmission of all digital images to client
- Records management: bundling of "returned' items and shipping these and the USPS Firm Mail Book to client.
- Secured Web connection to your records including daily status of updates from the USPS Delivery Tracking System regarding the tracking events within USPS (Certified Mail only).

<u>Miscellaneous Costs</u>
- Shipping Returns: (4 times per month) @ $20 each.(approx)
- USPS P.O.Box and Caller service: $72 per month (paid semi-annually)
- USPS Permit: $150 Annual Fee

**From:** Rod Walz
**Sent:** Monday, November 10, 2003 4:01 PM
**To:** James Wray; 'Diana Cook'
**Subject:** Pricing Estimate for Budget

Hi Dianna,

Here is the estimate to the best I can figure on short notice: We assume a volume of about 20,000 overall. Use the prices below and apply it to your monthly volume.

## Included

1. Walz creates templates for all your letters. Daily, New Century submits variable data to Walz.
2. Receipt and data washing of imported data.
3. Printing, Mailing, Imaging of First Class letters
4. Printing, Mailing Certified Mail with Form 3877 Firm Mailing Book, Imaging
5. Printing, Mailing Certified Mail with Return Receipt with Form 3877 Firm Mailing Book, Imaging
6. Walz sends "mailed data" back to New Century in a format to be determined.
7. Walz sends "scanned images" of letters, notices, returned items, Firm Mail Books back to New Century in a format to be determined

## Estimate based on Mail Type

First Class (one page): $.46

First Class (two page) : $.58

Certified (two page): $1.00

Certified with Return Receipt (two page): $1.15

Hope that this will suffice, I did the best I could in the rush.

Rod

-----Original Message-----
**From:** James Wray
**Sent:** Mon 11/10/2003 11:55 AM
**To:** 'Diana Cook'
**Cc:** Rod Walz
**Subject:** RE: Pricing Estimate for Budget

Hi Diana... Nothing was attached to this email. Could you please forward us the spreadsheet mentioned and we'll get started right away.

**From:** Diana Cook [mailto:DiCook@ncen.com]
**Sent:** Monday, November 10, 2003 11:41 AM
**To:** James Wray; Rod Walz
**Subject:** Pricing Estimate for Budget

Attached is a spreadsheet showing our letters and how they are sent. Would you please give me an estimate on how much it would cost per letter based on this data? We must have some information in by the end of today in order to budget the outsourcing of letters. Sorry for the short notice but again this is just an estimate for the budget. Once we have more time we can give more detail for the contract once it is decided which company we will be using. Also please include the estimated cost for the post office box we would need to maintain.

Please call me if you have any questions.

Diana M. Cook
Servicing Operations
    Project Administrator
New Century Mortgage
Dicook@ncen.com
949-797-5227

New Century: Worksheet for Quotation

**Included**

1. Walz creates templates for all your letters. Daily, New Century submits variable data to Walz.
2. Receipt and data washing of imported data.
3. Printing, Mailing, Imaging of First Class letters
4. Printing, Mailing Certified Mail with Form 3877 Firm Mailing Book, Imaging
5. Printing, Mailing Certified Mail with Return Receipt with Form 3877 Firm Mailing Book, Imaging
6. Walz sends "mailed data" back to New Century in a format to be determined.
7. Walz sends "scanned images" of letters, notices, returned items, Firm Mail Books back to New Century in a format to be determined

**Estimate based on Mail Type**

First Class (one page): $.46 x 7,239 = **$3,329**  **Pressure Seal**

First Class (two page) : $.58 x 8,177 = **$4,742**

Certified (two page): $1.00 x 54 = **$54**

Certified with Return Receipt (two page): $1.15 x 3,079 = **$3,540**

First Class (three page) : $..62 x 900 = **$558**

Certified with Return Receipt (three page): $1.19 x 154 = **$183**

**Total Fees: $12,406**

**Total Volume: 20,507**

**Average Fee: $0.61**

**Average Fee with FastForwarding: $0.64**

# Letter Code Table

| Letter ID | Description | File Type | No. of Pgs | Duplexed | Mail Code | Envelope Code | Volume |
|---|---|---|---|---|---|---|---|
| CS381 | Payment Forwarded to New Servicer | | 1 | No | F | C | L | 3,500 |
| CS504 | Welcome Letter | | 1 | no | F | C | L | 600 |
| CO504 | Welcome Letter | | 1 | No | F | C | L | 2,895 |
| CO519 | BPTP - if prev contact =w/PTP (31+) | | 1 | No | F | C | L | 106 |
| CO538 | Forebearance solicitation Income Data | | 1 | No | F | C | L | 0 |
| CO539 | Forebearance solicitation Fincl. Data | | 1 | No | F | C | L | 0 |
| CO540 | Forebearance solicitation, Nat. Disaster FM | | 1 | No | F | C | L | 87 |
| LM705 | Loss Mitigation Initial Contact | | 1 | No | F | C | L | 0 |
| LM711 | FB Information Follow Up | | 1 | No | F | C | L | 0 |
| LM712 | Broken FB Plan Notice | | 1 | No | F | C | L | 2 |
| LM713 | FB Plan Payment Due Notice | | 1 | No | F | C | L | 0 |
| LM722 | FB Plan Payment Follow Up | | 1 | No | F | C | L | 0 |
| LM731 | Short Sale Info Request Follow Up | | 1 | No | F | C | L | 0 |
| LM741 | DIL Info Request Follow Up | | 1 | No | F | C | L | 0 |
| LM762 | Hardship Package Follow Up | | 1 | No | F | C | L | 49 |
| **Total Volume for Single Page Letters** | | | | | | | | **7,239** |
| CO501 | 1st No Contact letter - softy | | 2 | No | F | C | L | 1,346 |
| CO502 | 2nd No Contact Letter | | 2 | No | F | C | L | 460 |
| CO503 | 1st Notice Payment not rcvd. | | 2 | No | F | C | L | 1 |
| CO505 | Reminder Notice/Phone Pay Solicit | | 2 | No | F | C | L | 48 |
| CO506 | 2nd N/C, No good #s/Prop insp. Warn | | 2 | No | F | C | L | 1,309 |
| CO507 | 2nd No Contact/ L/C Assessed | | 2 | No | F | C | L | 63 |
| CO508 | PTP Confirmation | | 2 | No | F | C | L | 116 |
| CO509 | BPTP - if prev contact =w/PTP (0-30) | | 2 | No | F | C | L | 347 |
| CO510 | 31+ No Partial Payment | | 2 | No | F | C | L | 266 |
| CO511 | Notice of NOI Expiration | | 2 | No | F | C | L | 4 |
| CO512 | Less than TAD Recvd May be Returned | | 2 | No | F | C | L | 1 |
| CO513 | Default, $ owed brkdwn, insp. Warn. | | 2 | No | F | C | L | 171 |
| CO514 | Loan often delp, partl recvd, need cure. | | 2 | No | F | C | L | 23 |
| CO515 | Hang-up letter 0-30 | | 2 | No | F | C | L | 205 |
| CO516 | Hang-up letter 31+ | | 2 | No | F | C | L | 1 |
| CO518 | Last letter before F/C | | 2 | No | F | C | L | 390 |
| CO521 | 31+, NOI already exp, F/C Warning | | 2 | No | F | C | L | 270 |
| CO522 | Return Check | | 2 | No | F | C | L | 14 |
| CO523 | Return Speedpay | | 2 | No | F | C | L | |
| CO530 | 0-30 Suspense letter | | 2 | No | F | C | L | |
| CO531 | Shorted to post payment | | 2 | No | F | C | L | 4 |
| CO532 | L/C has been waived | | 2 | No | F | C | L | 5 |
| CO535 | Refinance/ Payment still required | | 2 | No | F | C | L | |
| CO536 | Payment arrangement confirmation letter | | 2 | No | F | C | L | |
| CO537 | Forebearance solicitation letter | | 2 | No | F | C | L | |
| CO541 | Loss Mit Solicitation | | 2 | No | F | C | L | |
| CO542 | Request to pay outstanding fees | | 2 | No | F | C | L | 2,257 |
| CO565 | Standard NOI - Property Address | | 2 | No | FCR | C | L | 579 |
| CO566 | Standard NOI - Mailing Address | | 2 | No | FCR | C | L | 221 |
| CO567 | Texas NOI - Property Address | | 2 | No | FCR | C | L | 22 |
| CO568 | Texas NOI - Mailing Address | | 2 | No | FC | C | L | 30 |
| CO569 | OK NOI - Mailing Address | | 2 | No | FC | C | L | 2 |
| CO570 | WV NOI - Mailing Address | | 2 | No | FC | C | L | 14 |
| CO571 | Maine NOI - Property Address | | 2 | No | FC | C | L | 8 |
| CO572 | Maine NOI - Mailing Address | | 2 | No | FC | C | L | |
| **Total Volume for 2 page letters** | | | | | | | | **8,177** |
| CO533 | Updated info letter | | 3 | No | F | C | L | 738 |
| CO551 | NJ NOI - Mailing | | 3 | No | FCR | | L | 14 |
| CO552 | NJ NOI - Property | | 3 | No | FCR | | L | 140 |

| LETTER ID | DESCRIPTION | FILE TYPE | # PAGES | DUPLEXED | MAIL CODE | CARRIER ENV | FORM CODE | INSERTS |
|---|---|---|---|---|---|---|---|---|
| CO553 | PA NOI - Mailing Act 6 | | 3 | No | FPR | | | |
| CO554 | PA NOI - Mailing Act 91 | | 6 | No | FPR | | | |
| CO555 | PA NOI - Property Act 6 | | 3 | No | FPR | L | L | |
| CO556 | PA NOI - Property Act 91 | | 6 | No | FPR | L | L | |

Total Volume for 3 Page letters         900
Total Volume for 6 page letters          13

TOTAL MONTHLY VOLUME    16,316

### Field Definitions

| | |
|---|---|
| LETTER ID | Defined letter identification |
| DESCRIPTION | Description of letter id |
| FILE TYPE | Fixed format or data only file |
| # PAGES | Total number of pages per each letter id |
| DUPLEXED | Allows program to print on backside of pages |
| MAIL CODE | Type of mail handling (valid values) |
| | F= First Class mail only |
| | C = Certified only w/o Return Receipt |
| | CR = Certified only with Return Receipt |
| | FC = First Class & Certified w/o Return Receipt |
| | FCR = First Class & Certified with Return Receipt |
| | FPR = First Class Proof of Mailing |
| CARRIER ENV | Type of mailing envelope (valid values) |
| | C = Custom Single Window |
| | D= Generic Double Window |
| | CDW = Certified Double Window |
| FORM CODE | type of form/stock to use (valid values) |
| | L= Letterhead 8.5 x 11 |
| | G= Generic Stock 8.5 x 11 |
| INSERTS | List all enclosures/inserts relating to package |
| CURRENT/ FUTURE | Intent to use currently (C) or in Future (F) |

*[signature/initials]*