**Exhibit D**

**Exhibit D**

**Currently Determined Damages**

1. The defaults of the Debtors have contributed to excessive and delayed foreclosures and unnecessary losses incurred upon the eventual liquidation of delinquent loans. Defaults by the Debtors have also led to shortfalls in the interest income that otherwise would have been received by the trusts bondholders. They have increased the Trusts' exposure to lawsuits from individual borrowers, leaving the Trustee to face substantial legal costs.

2. Damages resulting from the existing defaults of the Debtors can be currently categorized into two very broad components: (a) excessive losses suffered on the disposition of delinquent loans and (b) inadequate interest income provided to the Trusts and their underlying bondholders. A third component of damages is that the Trusts have incurred and are likely to continue to incur, reimbursable legal costs and expenses, including costs resulting from individual mortgage holder litigation. The Trusts, and their underlying bondholders, will also continue in the future to suffer inadequate recoveries of principal and inadequate income as a consequence of the Debtors defaults, even if servicing operational deficiencies are cured in the future.

3. Information regarding losses on the liquidation of loans is readily available for 20 of the 23 total trusts.[1] These 20 trusts originally contained $32.77 billion in principal balance of loans, a total of 175,824 individual mortgage loans. They represent well over 95 percent of the loans in all 23 trusts, which had over $34 billion of original principal balance. As of the April 25, 2007 distribution date, a total of 3,544 loans of the original 175,824 had

---

[1] Source: Detusche Bank Trust and Security Services, Investor Reporting web site (www.tss.db.com)

been liquidated, resulting in $274.54 million in proceeds and $171.75 million of losses. This represents a 38% loss ratio on the outstanding principal balance of loans being liquidated, an average $48,4621 loss per loan. The total $171.75 million of losses are 0.5 percent of the $32.77 billion original principal balance.

4. These massive losses were no doubt due to a variety of factors, including potential loan fraud when the loans were first put into the trusts. Issues such as inflated appraisals, inaccurately reported income, manipulated FICO scores, lack of loan quality review prior to approval and a variety of high pressure sales tactics that have been well documented[2] may very well have contributed significantly to the enormous losses suffered.

5. However, the Debtors' deficiencies with respect to servicing delinquent loans have added materially to the losses ultimately incurred on liquidated loans. By failing to promptly and properly work with delinquent borrowers, loans were foreclosed that otherwise might have been restructured. Failing to move loans promptly through the foreclosure and liquidation process has resulted in delayed sales of properties, resulting in further losses. The Debtors are currently believed to be taking an average of approximately 17 months to liquidate loans from the first delinquent payment. In contrast, a more typical foreclosure takes approximately 9 months from the first delinquent payment until the property is listed for sale.[3] Even allowing for a number of months to market and sell a property, the Debtors' deficient servicing operation has clearly led to assets being liquidated over excessively long periods of time.

---

[2] See for example, The Washington Post, May 7, 2007 "Pressure at Mortgage Firm Led To Mass Approval of Bad Loans"
[3] See March 12, 2007 research report by Credit Suisse, "Mortgage Liquidity du Jour: Underestimated No More", Exhibit 36.

6. The Debtors' servicing operation appears to be deficient in numerous ways that contribute to the overall excessive amount of time taken to liquidate loans. For example, the Debtors are believed to take an excessive amount of time to submit loans to foreclosure action after the expiration of the Notice of Intent to Foreclose provided to the Borrower. Information reviewed suggests that it is currently taking the servicer, on average, one full month from the time a property is vacant until it is placed in the real estate listing system for sale.

7. Typically, the longer a loan takes to reach foreclosure and the property liquidated, athe higher the loss suffered by the lender. For example, a limited review of the Debtor's recently closed loans suggests that loans liquidated within one year of delinquency incurred a 38% loss on principal balance. Loans with delinquencies in excess of 12 months but less than 18 months incurred a 48% loss. Loans with delinquencies in excess of 18 months but less than 24 months incurred a 65% loss. Loans with delinquencies in excess of 24 months incurred a 72% loss.

8. As properties take longer and longer to liquidate, costs increase due to numerous factors, such as physical deterioration in the property (sometimes deliberately from the owners, who realize that they are soon going to be evicted). Time and additional repair costs are then required to rehabilitate the property prior to placing it up for resale. Even if the property does not physically deteriorate, the buying market generally recognizes that banks are not in the business of selling homes, resulting in reduced sales prices. The longer the process, the less likely of purchasers paying top dollar. In addition, there is a pernicious impact on housing values from homes in the process of being foreclosed. Deterioration in the physical asset and distressed sales prices contribute to an overall

decline in market values, which in turn contributes to a further increase in loss upon liquidation.

9. The Debtor's excessively lengthy time to resolve delinquent loans has also occurred as the overall residential real estate market has deteriorated. Housing prices have been declining as inventories have risen and financing options have disappeared. Thus the longer it takes to liquidate a property in the current market environment, the greater the probability of achieving a lower sales price.

10. For the purposes of calculating damages, the Debtors are believed to have taken, on average, up to six months longer than necessary or expected, to have resolved the 3,544 loans known to be liquidated in the 20 trusts for which information is readily available. Had they performed their servicing duties as contractually obliged, and worked with borrowers at an earlier stage, some percentage of these loans likely would have been cured or restructured and not have resulted in a liquidation and resulting loss. Economic studies demonstrate that borrowers who enter into repayment plans experience significant reductions in the likelihood of losing their home. [4]

11. The impact of this delay is believed to have increased the loss by approximately ten percent. Average losses per loan would have therefore decreased by $4,846 per loan, or in excess of $17 million of losses on the over 3,500 loans liquidated to date. This amount does not include losses on the three other trusts for which information is not readily available. Those trusts included loans with an initial principal balance of over $1 billion and likely incurred an additional $0.5 million of damages, assuming they also

---

[4] See for example Freddie Mac Working Paper 04-03; http://wwwhrn.freddiemac.com/news/pdf/fmwp_0403_servicing.pdf

experienced an actual 0.5% loss on the original principal balance and that such loss was also excessive by ten percent. In total, the first component of damages, excessive losses suffered upon the disposition of delinquent loans, are currently estimated at $17.5 million.

12. A second component of damages has been incurred due to inadequate interest income being provided to the Trusts and the underlying bondholders. As a consequence of the Debtors failure to resolve delinquent loans in a timely manner, the Trusts and their underlying bondholders received less interest income. The failure to restructure some portion of the delinquent mortgages, which generated no interest income, into performing loans clearly would have created additional interest income for the trusts and their underlying bondholders. However, even if none of these loans had been restructured, simply accelerating the pace of liquidation would have resulted in a more rapid recovery of principal, which would have been returned to the investors allowing them to redeploy the cash flow into new investments.

13. This "time value of money" damage is estimated using the total $275 million of principal that was actually returned to the trusts upon the liquidation of the 3,544 loans. Assuming that principal would have been returned six months earlier than actual, the investors could have reinvested the $275 million of cash at an assumed 7.0 percent annual rate of return. The additional interest that would have been received is $9.6 million.

14. A third component of damages, reimbursable legal fees and expenses incurred to date, are showen on Schedule 1 attached to this Exhibit D and total $1.38 million.

15. Total damages due to the defaults of the Debtors are therefore currently estimated at approximately $28.5 million, consisting of $17.5 million due to excessive losses, $9.6 million due to forgone interest and $1.4 million from reimbursable legal fees and expenses.

16. The above items are estimates only and based on the extremely limited information provided to date. Additional components of damages may be identified after receipt of additional information. For example, it appears that the Debtor's accounting systems may have been sufficiently deficient so as to generate inaccurate investor reports, inaccurate records for mortgage borrowers and incorrect payments to the various trusts for which it serviced loans. Costs required to reconstruct the Debtors' books and records, as well as the financial consequences from any identified inaccuracies, would likely be significant.

SCHEDULE 1
TO
EXHIBIT "D" TO OBJECTION OF DEUTSCHE BANK NATIONAL TRUST COMPANY

ESTIMATED FEES AND EXPENSES ARISING FROM KNOWN DEFAULTS OF SERVICER OBLIGATIONS (SELLER/SERVICER TRUSTS)

NOTE: FEES AND EXPENSES ARISING FROM EXISTING DEFAULTS WILL CONTINUE TO ACCRUE THROUGH THE "CLOSING DATE"

| | | |
|---|---|---|
| 1. Legal Fees and Disbursements (Lead and Delaware Cou | 1,100,000.00 | estimated through 5/8 |
| 2. Trustee Fees for Extraordinary Se Default Management | 105,000.00 | estimated through 5/8 |
| Additional Staffing Ex | 50,000.00 | estimated through 5/8 |
| 3. Outstanding Invoices for Tax Services | 3,200.00 | |
| 4. Other experts (primarily accounting) | 125,000.00 | estimated through 5/8 |
| TOTAL ESTIMATED THROUGH 5/8 | 1,383,200.00 | |

This schedule does not include fees and expenses in connection with DBNTC's custodial services for New Century's warehouse lines. Such fees and expenses currently exceed $600,000.
This schedule does not include fees and expenses in connection with custodial services rendered to the Carrington/Wells Fargo Trusts for which DBNTC has not received any assumption notice.