# **EXHIBIT A**



# MASTER SERVICES AGREEMENT

This Master Services Agreement ("Agreement") is entered into as of February 24, 2006 (the "Effective Date"), and is made by and between Symantec Corporation ("Symantec") and New Century Mortgage Corporation ("Client") and those Subsidiaries, as defined below.

1. **Term; Termination.** The term ("Term") of this Agreement will begin on the Effective Date and continue until termination. This Agreement and/or an SOW may be terminated at any time by either party: (i) upon 30 days' prior written notice without cause, or (ii) upon written notice if the other party breaches any material term of this Agreement and such breach remains uncorrected for 15 business days following written notice from the other party. Upon any termination, Symantec shall be entitled to be paid for all work performed, including fees and expenses, up to the effective date of termination.

2. **Statements of Work/Subsidiaries.** During the Term, Symantec and Client may agree in writing upon descriptions of services to be performed ("Services") and deliverables ("Deliverables") as defined in a statement of work or quote hereunder ("SOW"), fees, duration of the Services, and other responsibilities undertaken by Client and/or Symantec. Symantec and Client and/or Symantec and Client's subsidiary organizations listed in Exhibit A attached hereto that are more than fifty percent (50%) owned or controlled by Client (each a "Subsidiary", collectively "Subsidiaries") may purchase Services under the terms of this Agreement. All Subsidiaries will be deemed to have accepted the terms and conditions of this Agreement by submitting a SOW which references this Agreement and Symantec and Client are each responsible for compliance hereto by Subsidiaries. Client may add or remove Subsidiaries listed in Exhibit A by written notice to Symantec. The terms of this Agreement shall be deemed incorporated into and shall govern each SOW. Any changes to a SOW shall be agreed upon in writing by both parties. The parties agree that this Agreement and the applicable SOW(s) shall govern and supersede any terms and conditions stated on any purchase order or other ordering document submitted by Client, the terms of which, except for terms describing price and quantity, are null and void with respect to this Agreement, regardless of mutual execution of any purchase order at any time. In the event of any conflict between this Agreement and a SOW, this Agreement will control.

3. **Warranty.** In consideration of the fees stated in the SOW ("Fees"), Symantec will provide the Services and Deliverables described in the SOW in a good and workmanlike manner and in accordance with generally accepted industry standards. CLIENT AGREES THAT REMEDIES, OBLIGATIONS AND WARRANTIES HEREIN ARE EXCLUSIVE AND IN LIEU OF ANY OTHER REPRESENTATION, REMEDY OR WARRANTY INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

4. **Acceptance.** For Services other than managed security services: Client shall accept or reject the Service and/or Deliverable (if any) in writing within five (5) business days from receipt thereof. Acceptance of Services will be based upon completion of the Deliverables and/or Service (for time and materials) in accordance with the criteria set forth in the SOW. If Client does not accept or reject in writing as set forth above, the Service and/or Deliverable shall be considered to be accepted by Client. Client shall clearly state in writing the reasons for any rejection. Within five (5) business days of any notice of rejection, Symantec shall present a corrective plan of action to Client. Symantec, at no additional expense to Client, shall then make the corrections (and Client shall permit Symantec to make such corrections) and, where applicable, Symantec shall resubmit the corrected Service or Deliverable to Client.

5. **Fees; Payment; Taxes.** Client shall pay Symantec or its authorized reseller ("Reseller") the Fees for the Services as set forth in the fee schedule contained in the applicable SOW or as agreed between Client and Reseller, respectively. Payment for Services hereunder is not contingent upon the delivery or performance of any Symantec software licenses. Client shall also pay the reasonable travel and living expenses of Symantec's employees that are incurred in the course of Symantec's performance of Services, as agreed between Client and Symantec or Reseller in advance. Client shall pay invoiced amounts within 30 days of receipt of an invoice. Client shall also be responsible for taxes arising out of this Agreement, except for taxes imposed on Symantec's income or arising from the employment relationship between Symantec and its personnel. If any sum payable to Symantec under this Agreement is in arrears for more than thirty (30) days from the due date, Symantec reserves the right, without prejudice to any other remedy, to (a) charge interest on such overdue sum on a day to day basis from the due date until paid in full at the rate of one percent (1%) per month; and/or (b) suspend the provision of the Services until such time as payment is received.

6. **Confidentiality.** To the extent that confidential and proprietary information of each party ("Confidential Information") is exchanged and received in connection with the Services, whether received orally or in writing, and whether or not marked as Confidential Information, each party agrees not to use the other party's Confidential Information except in the performance of, or as authorized by, this Agreement or an SOW, and not to disclose, sell, license, distribute or otherwise make available such information to third parties. Use by third party contractors of a party may be permitted so long as such contractor has a need to know and is required to maintain the confidentiality of such information as required by this Section 6, and the party disclosing such Confidential Information to third party contractor remains fully responsible for such third party contractor's use of the Confidential Information. "Confidential Information" includes (but is not limited to) Symantec Information (as defined in Section 7(b) below), and does not include: (i) information that was publicly available at the time of disclosure or that subsequently becomes publicly available other than by a breach of this provision, (ii) information previously known by or developed by the receiving party independent of the Confidential Information or (iii) information that the receiving party rightfully obtains without restrictions on use and disclosure.

7. **Rights in Deliverables.**
(a) Subject to Sections 7(b) and (c) below, all Deliverables created specifically for and provided to Client by Symantec under an SOW shall be the property of Client for Client's internal use.
(b) Any Symantec proprietary or Confidential Information used to perform the Services, or included in any Deliverable, including but not limited to software, appliances, methodologies, code, templates, tools, policies, records, working papers, knowledge, data or other intellectual property, written or

otherwise, and any derivatives, modifications and/or enhancements (collectively, "Symantec Information"), shall remain the exclusive property of Symantec. To the extent that Symantec incorporates any Symantec Information into the Deliverables, Symantec hereby grants to Client a non-exclusive, non-transferable license to use such Symantec Information at no additional charge solely for Client's internal business purposes, in accordance with the limitations set forth in this Agreement and any applicable SOW.

(c) Client acknowledges that Symantec provides similar services to other clients and that nothing in this Agreement shall be construed to prevent Symantec from carrying on such business. Symantec agrees that it shall not distribute, disclose or create derivative works from Client's Confidential Information that is incorporated into any Deliverable. Notwithstanding Section 7(a), Client acknowledges that the Deliverable is not a "work made for hire" and Client shall not sell, transfer, publish, disclose, display or otherwise make available the Symantec Information.

8. **Indemnification.**

(a) Symantec shall defend and indemnify Client against any costs, liabilities or damages (including attorney's fees) arising from a claim that Client's authorized use of any Deliverable infringes any patent, copyright, trademark or trade secret, provided that Client promptly notifies Symantec in writing of any such claim or suit. Notwithstanding the foregoing, Client's failure to so notify Symantec shall not diminish Symantec's indemnity obligations hereunder except to the extent such delay prejudices Symantec's defense of such matter. Symantec shall have sole control of any such suit (including without limitation the right to settle on behalf of Client), and Client shall reasonably cooperate with Symantec in connection with its defense at the reasonable expense of Symantec. If Client is enjoined from using any Deliverable, or if Symantec believes that any Deliverable is likely to become the subject of an infringement claim, Symantec shall (i) obtain the right for Client to continue to use such Deliverable or (ii) replace or modify the Deliverable so as to make it non-infringing and substantially comparable in functionality. If after using commercially reasonable efforts Symantec is unable to do either (i) or (ii) above, such Deliverable shall be returned to Symantec and Symantec's sole liability shall be to promptly refund Client the amount paid to Symantec for such item or portion thereof. Notwithstanding the foregoing, Symantec will have no liability for any infringement claim based on: (i) use of a Deliverable other than in accordance with applicable documentation or instructions provided by Symantec, (ii) modification of any Deliverable other than by Symantec, (iii) the use or combination of any Deliverable with materials not supplied by Symantec, (iv) information supplied by Client to Symantec that is included in any Service or Deliverable, or (v) Client's use of a superseded version of the Deliverable if the infringement could have been avoided by using the latest version of the Deliverable provided by Symantec.

(b) In the event that any willful misconduct or grossly negligent act or omission of either party or its employees during the performance of Services on Client's premises causes or results in the (i) loss, damage to or destruction of physical property of the other party or third parties, and/or (ii) death or injury to any person, then such party shall indemnify, defend and hold the other party harmless from and against any and all resulting claims, damages, liabilities, costs and expenses (including reasonable attorney's fees), subject to Section 9.

9. **Limitation of Liability.**

IN NO EVENT SHALL EITHER PARTY OR ITS SUPPLIERS BE LIABLE, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR INDIRECT DAMAGES, LOSSES, EXPENSES OR COSTS OF ANY KIND COSTS OF PROCUREMENT OF SUBSTITUTE OR REPLACEMENT GOODS OR SERVICES, LOST BUSINESS PROFITS OR REVENUE OR LOST OR CORRUPTED DATA ARISING OUT OF THIS AGREEMENT OR USE OF THE SERVICES OR DELIVERABLES, EVEN IF ADVISED OF THE POSSIBILITY. SYMANTEC'S OR IT'S SUPPLIERS' TOTAL LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO THE FEES PAID BY CLIENT FOR THE SERVICES GIVING RISE TO THE LIABILITY. NOTHING IN THIS AGREEMENT SHALL LIMIT SYMANTEC'S LIABILITY FOR ANY DAMAGE THAT CANNOT BE EXCLUDED BY LAW.

10. **Compliance with Law.** This Agreement will be governed in accordance with the substantive laws of California without giving effect to its conflict of laws provisions. Client agrees to comply with applicable export and import and use restrictions, including the U.S. Department of Commerce, Export Administration Regulations (see www.bxa.doc.gov).

11. **Miscellaneous.** While on Client's premises, Symantec will ensure that its personnel follow all reasonable instructions, as such are provided to Symantec prior to the performance of the Services. Symantec is an independent contractor and shall not be deemed an employee or agent of Client. All notices hereunder shall be provided to the signatory at the address below, unless otherwise specified herein. This Agreement, including all exhibits and any SOWs, contains the complete agreement between the parties relating to the Services and supersedes any previous or contemporaneous agreement, proposal, commitment, representation, or other communication, whether oral or written. This Agreement may be executed in multiple counterparts (including facsimile copies), each of which shall be deemed a single original instrument. All notices shall be in writing and shall be deemed to have been duly given upon personal delivery three days after being mailed by registered or certified mail and shall be sent to the addresses set forth below the signature lines hereof with a copy to each party's corporate headquarter address, Attn: General Counsel. This Agreement is not assignable, except that it shall inure to the benefit of successors in interest to either party. No person other than a party to this Agreement shall be entitled to enforce any term of it except as expressly provided herein. Neither party is responsible for its inability to perform due to causes beyond such party's reasonable control. Notwithstanding the expiration or termination of this Agreement or any extension or renewal period, it is acknowledged and agreed that those rights and obligations which by their nature are intended to survive such expiration or earlier termination shall survive, including, but not limited to, Sections 5 through 11.

Symantec acknowledges that Client may be using products or services similar to those offered by Symantec and that Symantec provides services to Client on a non-exclusive basis and that there are no minimum purchase requirements under this Agreement except as required under a SOW and agreed upon by both parties.

12. **Arbitration.** Any controversy or claim related to or arising out of this Agreement and/or the Services to be provided by Symantec shall be settled by arbitration conducted on a confidential basis under the U. S. Arbitration Act and the then-current Commercial Arbitration Rules of the American Arbitration Association (the "AAA"). Any arbitration shall be held before a disinterested arbitrator selected by the AAA provided that any arbitrator shall have experience with software services agreements. The arbitrator shall have no authority to award damages expressly precluded under this Agreement. The arbitrator shall apply governing law and shall provide written

COMPANY proprietary and confidential information. Do not copy or release without the express written authorization of Symantec Corporation.

findings of fact and law. The arbitrator shall not be authorized to award equitable relief unless specifically provided herein. Notwithstanding the foregoing, these Dispute resolution procedures are not intended to be used for Disputes: i) regarding termination by Symantec for non-payment; ii) concerning actual or alleged violations of each party's confidentiality obligations under the Agreement or other intellectual property rights; and iii) under which equitable relief is sought by either party, including temporary injunctive relief. Nothing in this Article shall prohibit either party from seeking injunctive or other equitable relief from a court of competent jurisdiction as expressly permitted hereunder.

CLIENT: New Century Mortgage Corporation
By: _____
Name: Larry R Gussel
Title: V.J. CJO
Date: 2/22/06
Address: 13373 Park Place #100
         Irvine CA 92612

SYMANTEC CORPORATION
By: _____
Name: Mark Perry
Title: VP
Date: 3-9-06
Address: 20330 Stevens Creek Boulevard
Cupertino, CA 95014 USA

[SYMANTEC CORP. LEGAL DEPT. APPROVED stamp]