# EXHIBIT A

**SUBLEASE**

**THIS SUBLEASE AGREEMENT,** dated the  day of January, 2006, is entered into by and between ADT Security Services, Inc., a Delaware corporation ("Sublandlord") and Mortgage Lenders, a (insert form of ownership & applicable state) ("Subtenant").

**1.    PARTIES**

<blockquote>

(A) SUBLANDLORD:    ADT Security Services, Inc.
1 Town Center Road
Boca Raton, FL 33486
Attn: Real Estate Administration

(B) SUBTENANT:    Mortgage Lenders Network USA, Inc.
213 Court Street Middletown, CT 06457
Attn: Facilities Dept.

</blockquote>

**2.    PREMISES**

The Premises are located at 10 Research Parkway, Wallingford, CT and consist of approximately 4,000 square feet.  The Premises are located within the Master Lease Premises specified in Section 3, below.  A diagram of the Premises is attached hereto as Exhibit "B", and is incorporated into this Sublease as if set forth in full.  Subtenant shall have the non-exclusive right, in common with Sublandlord and other tenant, its proportionate share of the parking facilities.

**3.    MASTER LEASE**

Sublandlord, as Tenant, has previously entered into a lease agreement (as amended from time to time) (collectively, the "Master Lease") with respect to the Master Lease Premises with 10 Research Parkway, LLC, as Landlord.  The Master Lease Premises consist of approximately 31,128 square feet.  A copy of the Master Lease is attached hereto as Exhibit "A", and is incorporated into this Sublease as if set forth in full.  The Termination Date of the Master Lease is December 31, 2008.

**4.    EXCEPTIONS TO MASTER LEASE**

Subtenant will not do, or fail to do, anything that is a breach of the Master Lease or which will cause Sublandlord to be in breach of the Master Lease.

5.    **DEMISE OF SUBLEASE PREMISES**

Sublandlord, for and in consideration of the rents, covenants and agreements contained in this Sublease Agreement, hereby leases, lets and demises unto Subtenant, and Subtenant does hereby take and hire, subject to the terms and conditions contained in this Sublease Agreement, the Premises.

6.    **TERM**

The term of this Lease ("Term") shall begin on January 1, 2006 ("Commencement Date"), and shall end on December 31, 2007 ("Termination Date").

7.    **RENT**

Subtenant shall pay to Sublandlord as rent for the Premises in advance on the first day of each calendar month of the Term of this Sublease, as follows:

| Initial Term | Annual Gross Rent | Monthly Gross Rent |
|---|---|---|
| 01/01/06 to 12/31/06 | $68,000.00 | $5,666.67 |
| 01/01/07 to 12/31/07 | $70,000.00 | $5,833.33 |
| Option Term | | |
| 01/01/08 to 12/31/08 | FMV | FMV |

If the rent (or any other charge payable hereunder) is not paid by the tenth (10th) day of the month, Subtenant shall pay to Sublandlord a one-time late fee equal to Five Ten Percent (510%) of the amount. of the amount due for each month the rent (or other sum) is late. per year or maximum allowed by law. due plus interest at the rate of one percent (1%) per month . If the Term commences on other than the first day of a month or ends other than on the last day of a month, the rent shall be prorated accordingly. Rent shall be paid at the address of Sublandlord stated in Section 1 or at any other address specified by Sublandlord in writing. Unless otherwise set forth elsewhere in this Sublease herein, the payments made pursuant to this Section shall be the only payments due and owing to Sublandlord by Subtenant during the Initial Term and if applicable, the Option Term.

8.    **SECURITY DEPOSIT**

Upon execution hereof, Subtenant shall deposit with Sublandlord a sum equal to one month's rent (initially, $5,666.67) to secure Subtenant's performance under this Sublease.  In the event Subtenant fulfills all of its obligations under this Sublease, Sublandlord shall promptly return the security deposit in full, without

Interest, to Subtenant within fourteen (14) days after ~~on the~~ ~~day representing the~~
final date of the Term of this Sublease.

## 9.    PERMITTED USE

The Premises shall be used by Subtenant for the operation of general office
purposes and for no other purpose without the prior written consent of
Sublandlord.

## 10.    POSSESSION

Sublandlord shall deliver possession of the Premises to Subtenant on or before
the Commencement Date.  In the event Sublandlord is not able to deliver
Possession of the Premises to Subtenant on the Commencement Date,
Subtenant shall not be obligated to pay rent until possession of the Premises is
tendered to Subtenant.

## 11.    CONDITION OF THE PREMISES

Subtenant has subleased the Premises after a full and complete examination
thereof and its present uses and non-uses, and except as otherwise expressly
provided in this Section, Subtenant accepts the same without any representation
or warranty, express or implied in fact or by law, by Sublandlord and without
recourse to Sublandlord, as to the nature, condition or usability thereof or the use
or uses to which the Premises or any part thereof may be put. Except as
otherwise expressly provided in this Article, commencing on the Commencement
Date and continuing throughout the term of this Sublease, Sublandlord shall not
be required to furnish any services or facilities or to make any repairs or
alterations, irrespective of cause or severity, in or to the Premises. Subtenant
hereby assumes the full and sole responsibility for the condition, operation,
repair, replacement, maintenance and management of the entire Premises.

## 12.    SUBTENANT ALTERATIONS

Subtenant shall not make any alterations to the Premises without Sublandlord's
prior written consent and if required under the Master Lease, without Landlord's
prior written request.  Prior to the termination of this Sublease, if required by
Sublandlord or Landlord, Subtenant, at Subtenant's expense, shall remove all
alterations made by Subtenant to the Premises and shall repair any damage
caused by removal of said alterations.

## 13.    SUBTENANT'S TRADE FIXTURES

Subtenant may install to the Premises, without Sublandlord's consent, any trade
fixtures required by Subtenant to conduct its business.  All trade fixtures shall
remain the property of Subtenant and Subtenant, at Subtenant's expense, shall

remove its trade fixtures at the termination of this Sublease and shall repair any damage caused by removal of said trade fixtures.

## 14.    SUBTENANT'S MAINTENANCE RESPONSIBILITIES

Subtenant shall, at its own expense, maintain the interior walls and floors, plate glass and Subtenant's improvements made upon the Premises. Further, Subtenant shall, at its own expense, repair any damage caused to the Premises by Subtenant.

## 15.    SUBTENANT'S COMPLIANCE WITH LAWS

Subtenant shall, at its own expense, operate its business and possess the Premises in full compliance with all laws, orders, regulations, building codes, ordinances, etc., of federal, state, county, local and municipal authorities during the Term.

## 16.    SUBTENANT'S RESPONSIBILITY FOR UTILITIES

Subtenant shall pay, prior to delinquency, the cost of all utilities consumed or used on the Premises, including but not limited to, the cost of water, gas, electric and telephone.

## 17.    ASSIGNMENT

Subtenant shall not have the right to assign this Sublease or sublet any portion of the Premises.

## 18.    INSURANCE

Subtenant, at its own expense, shall maintain a policy of commercial general liability insurance insuring the leased Premises for both Sublandlord and Subtenant, with limits equal to the greater of:

    $1,000,000 for injury/death to one person
    $5,000,000 for injury/death to two or more persons
    $1,000,000 for property damage

        or

    the limits stated in the Master Lease.

Prior to Subtenant's taking possession of the premises and thereafter at Sublandlord's written request, Subtenant shall provide Sublandlord with a Certificate of Insurance ("Certificate") showing Landlord as additional insured. The Certificate shall provide for a thirty (30) day written notice to Sublandlord in

the event of cancellation.  Subtenant, at its own expense, shall maintain a policy of insurance covering loss or damage to Subtenant's fixtures, equipment and other personal property located on the Premises.  To the maximum extent permitted by insurance policies which may be owned by Sublandlord or Subtenant, Subtenant, Sublandlord and Subtenant, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.

## 19.    INDEMNIFICATION

Subtenant shall indemnify Sublandlord and Landlord and hold them harmless from any claims or demands arising from:

(A)    Subtenant's use or possession of the Premises and the conduct of any business by Subtenant on the property and anything done or permitted by Subtenant in or about the Premises, or any of them;

(B)    Any default of Subtenant under this Sublease;

(C)    The negligence of Subtenant and its agents, employees, contractors invitees or guests or any of them;

(D)    Any damage to property of the Subtenant or others or injury to any person about the Premises from any cause;

(E)    Any legal or administrative proceeding against Subtenant in which Sublandlord or Landlord are made a party without their fault;

(F)    All costs and expenses incurred by Sublandlord or Landlord in connection with items indemnified against by Subtenant.  Subtenant shall defend any legal action or proceeding resulting from a claim or demand indemnified against by Subtenant at Subtenant's expense by attorneys satisfactory to Sublandlord or Landlord on receipt of written notice from Sublandlord or Landlord to do so.

The obligations of Subtenant under this Section shall survive any termination or expiration of this Sublease and any permitted transfer or assignment by Sublandlord or Subtenant of this Sublease or any interest therein. substances or related materials, petroleum and petroleum

## 20.    SUBLANDLORD'S INSPECTION OF PREMISES

Provided Sublandlord's entry does not substantially interfere with Subtenant's use of the Premises, Subtenant shall permit Sublandlord to enter the Premises at reasonable times and upon reasonable notice, for the purpose of inspecting, maintaining or repairing the same.   In the event of an emergency, Sublandlord may enter at any time without prior notice.

## 21.    DAMAGE TO PREMISES

(A)    If the Premises or any part thereof shall be damaged by fire or other casualty, Subtenant shall give immediate notice thereof to Sublandlord and this Sublease shall continue in full force and effect except as hereinafter set forth.

(B)    In the event that the Building , or any substantial part thereof, shall be destroyed or damaged by fire or other casualty to the extent that the same is not tenantable by Subtenant and in the event that Landlord elects to cancel the Master Lease pursuant to Section 21 thereof, then this Sublease shall terminate on the same day the Master Lease terminates, whereupon this Sublease shall terminate and the obligations of Subtenant shall cease.

(C)    In the event that the Building, or any substantial part thereof, shall be destroyed or damaged by fire or other casualty to the extent that the same is not tenantable by Subtenant and in the event that Landlord elects to restore the Premises (exclusive of Subtenant's fixtures, equipment, signs, Subtenant or Sublandlord improvements, and any items installed in or affixed to the Premises as the result of Subtenant's work, which shall be promptly repaired, replaced, or restored by Subtenant, at Subtenant's sole cost and expense) pursuant to Section 21 of the Master Lease and the amount of rental payable by Sublandlord under the Master Lease shall be abated for the period during which the Premises shall be untenantable by Subtenant, then the amount of rental payable by Subtenant under this Sublease shall be abated for the same period.

(D)    If only a portion of the Premises is rendered untenantable by any casualty, Subtenant shall continue to use the tenantable portion while the untenantable portion is being repaired and, until the entire Premises is again tenantable, Subtenant shall pay rent apportioned to the number of square feet of the Premises which is tenantable.

(E)    As used herein, the term "casualty" shall have the same meaning as defined in Section 21 of the Master Lease.

(F)    Nothing contained hereinabove shall relieve Subtenant from liability that may exist as a result of damage from fire or other casualty caused by Subtenant.

## 22.    SUBLANDLORD'S DEFAULT

In the event Sublandlord fails to perform any of its obligations under the Master Lease or this Sublease, Sublandlord shall be entitled to a reasonable period of time after written notice from Subtenant to cure such default not to exceed thirty (30) days unless the default, by its nature, cannot be cured in fewer than thirty (30) days and Sublandlord, during such thirty (30) day period, commences to

cure and diligently pursues such cure to completion. In the event Sublandlord does not cure its default within the time allowed, Subtenant may, at its option, cure Sublandlord's default and deduct the reasonable costs thereof from the following month's rent. In the event Sublandlord's default materially affects Subtenant's use and enjoyment of the Premises, Subtenant may, without prejudice to any other remedy available at law or in equity, terminate this Lease upon written notice to Sublandlord. Unless specifically set forth in this Lease, Subtenant shall not be liable for the obligations of Sublandlord under the Master Lease.

## 23.    SUBTENANT'S DEFAULT

(A)    The occurrence of any one or more of the following shall constitute an "Event of Default" hereunder: (i) failure of Subtenant to pay any amount required hereunder within ten (10) days after receipt by Subtenant of written notice of such failure to pay; (ii) failure of Subtenant to perform any other covenant, condition, agreement or provision contained herein or in the Master Lease within thirty (30) days after receipt of written notice of such failure, unless the default by its nature, cannot be cured in fewer than thirty (30) days and Subtenant during such thirty (30) day period, commences to cure and diligently pursues to cure to completion, or (iii) commencement of bankruptcy, insolvency, assignment for the benefit of creditors or receivership proceedings in respect of Subtenant.

(B)    Upon the occurrence and continuance of an Event of Default, Sublandlord may, at its option and without any obligation to do so, elect any one or more of the following remedies: (i) terminate and cancel this Sublease; (ii) withhold performance under this Sublease until such time as such Event of Default is cured; (iii) cure such Event of Default and recover the costs thereof, together with interest thereon at the lesser of Twenty-five Percent (25 %) or the maximum legal rate permitted by applicable law, from Subtenant; or (iv) pursue any other remedy now or hereafter available under the laws of the state in which the Premises are situated.

## 24.    NOTICES

All notices or other communications required or permitted under this Lease shall be in writing and shall be deemed to have been properly given when made by personal delivery, courier, overnight delivery, certified mail return receipt requested, with postage prepaid, addressed as follows:

To Sublandlord:                              To Subtenant:

ADT Security Services, Inc.                  At the Premises
Real Estate Administration
One Town Center Road

Boca Raton, FL 33486

All notices shall be effective upon delivery (or as of the date of refusal if delivery is attempted and acceptance is refused). Either party may change its notice address upon written notice to the other party.

## 25.    CONDEMNATION AND EMINENT DOMAIN

In the event of condemnation or eminent domain of all or part of the Premises, or property of which it forms a part, either Sublandlord or Subtenant shall have the option of terminating this Sublease as of the date of taking. In the event this Sublease is not terminated, Subtenant's rent shall be abated in proportion to the portion of the Premises taken and Sublandlord shall make all necessary repairs to the building resulting from the taking. If this Sublease is terminated pursuant to this Section, nothing contained herein shall be construed to preclude Subtenant from prosecuting any claim directly against the condemning authority for loss of business, and/or depreciation, damage, cost of removal, loss, and/or value of (or to) trade fixtures, furniture and other personal property belonging to Subtenant.

## 26.    ENVIRONMENTAL

(A)    As used herein, the term "Hazardous Substances" shall include, without limitation, flammable materials, explosives, radioactive materials, asbestos, polychlorinated biphenyls (PCBs), chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances or related materials, petroleum and petroleum products and substances declared to be hazardous or toxic under any law or regulation now or hereafter enacted or promulgated by any governmental authority. This Section shall not apply to any acts and omission of third persons in possession or control of space adjacent to the Premises, as well as any of the public who uses the facilities of the Premises, or any utility that uses the Premises. Subtenant shall be held harmless and indemnified by Sublandlord from any liability arising from acts or omissions of Sublandlord or any of its Subtenants or licensees prior to or after the term of this Sublease.

(B)    Subtenant shall not cause or permit to occur (a) any violation of any federal, state, or local law, ordinance, or regulation now or hereafter enacted, related to environmental conditions on, under, or about the Premises arising out of conditions occurring subsequent to the date of the Sublease, or arising from Subtenant's use or occupancy of the Premises, including, but not limited to, soil and ground water conditions; or (b) the use, generation, release, manufacture, refining, production, processing, storage, or disposal of any Hazardous Substance on, under, or about the Premises, or the transportation to or from the Premises of any Hazardous Substance.

(C)    Subtenant shall, at Subtenant's own expense, comply with all laws regulating Subtenant's use, generation, storage, transportation, or disposal of Hazardous Substances ("Laws").

(D)    Subtenant shall, at Subtenant's own expense, make all submissions to, provide all information requested by, and comply with all requirements of all governmental authorities (the "Authorities") under the Laws.

(E)    Should any Authority or any third party demand that a cleanup plan be prepared and that a clean-up be undertaken because of any deposit, spill, discharge, or other release of Hazardous Substances that occurs during the term of this Sublease, at or from the Premises, or which arises at any time from Subtenant's use or occupancy of the Premises, then Subtenant shall, at Subtenant's own expense, prepare and submit the required plans and all related bonds and other financial assurances; and Subtenant shall carry out all such cleanup plans. ,

(F)    Subtenant shall promptly provide all information regarding the use, generation, storage, transportation or disposal of Hazardous substances that is requested by Sublandlord. If Subtenant fails to fulfill any duty imposed under this Section within a reasonable time, Sublandlord may do so, and in such case, Subtenant shall cooperate with Sublandlord in order to prepare all documents Sublandlord deems necessary or appropriate to determine the applicability of the Laws to the Premises and Subtenant's use thereof, and for compliance therewith, and Subtenant shall execute all documents promptly upon Sublandlord's request. No such action by Sublandlord and no attempt made by Sublandlord to mitigate damages under any Law shall constitute a waiver of any of Subtenant's obligations under this Section.

(G)    Subtenant shall indemnify, defend and hold harmless Sublandlord, the manager of the property, and their respective officers, directors, beneficiaries, shareholders, partners, agents and employees from all fines, suits, procedures, claims, and actions of every kind, and all costs associated herewith (including attorneys' and consultants' fees) arising out of or in any way connected with any deposit, spill, discharge, or other release of Hazardous Substances that occurs during the term of this Sublease, or at the Premises, or which arises at any time from Subtenant's use or occupancy of the Premises, or from Subtenant's use or occupancy of the Premises, or from Subtenant's failure to provide all information, make all submissions, and take all steps required by all authorities under the Laws and all other environmental laws except as otherwise required by any law which holds Sublandlord liable therefore.

(H)    Subtenant's obligations and liabilities under this Section shall survive the expiration or earlier termination of this Sublease.

**27.    LIENS**

Subtenant shall not cause any liens or encumbrances to be placed upon the Premises. In the event any lien is placed upon the Premises, Subtenant shall cause the same to be removed or bonded against within thirty (30) days after Subtenant is served with notice of said Lien.

**28.    SUBORDINATION**

This Sublease is subject and subordinated to all existing and future liens, encumbrances, mortgages or deeds of trust against the Property which the Premises is a part of.

**29.    OPTION TO EXTEND**

Subtenant shall have one (1) option to extend the term of this Sublease for a period of one (1) year exercisable by Subtenant giving written notice to Sublandlord by October 1, 2007 of its intent to extend. The rental due for the option term shall be at Fair Market Value.

**30.    FORCE MAJURE**

If the performance of any covenant, agreement, obligation or undertaking required under the Sublease is delayed, hindered or prevented by reason of strikes, lock-outs, labor troubles, wars, civil commotions, Acts of God, disasters, governmental restrictions or regulations or interferences, fires or other casualty, or any circumstance beyond the control of the party obligated or permitted under the terms hereof to do or perform the same, the performance of such covenant, agreement, obligation or undertaking shall be excused and extended and shall not be an event of default for the period of such delay, hindrance or prevention.

**31.    BROKER'S COMMISSION**

Sublandlord and Subtenant represent and warrant that there are no claims for broker, finder or leasing fees and/or commissions, in connection with the execution of this Sublease, except as listed below. Any Broker listed below will be paid by Sublandlord pursuant to a separate commission/listing agreement. Each of the parties agree to indemnify the other against all liabilities, costs, etc., arising out from any such claim (including, reasonable attorney's fees and all court costs).

    For Sublandlord: TrammellCrow Company

    For Subtenant  CB Richard Ellis/New England

**32.    QUIET ENJOYMENT**

Sublandlord covenants and agrees with Subtenant that so long as Subtenant is not in default of this Sublease or if applicable, the Master Lease, Subtenant shall be entitled to quietly enjoy the use and occupancy of the Premises, free and clear of all claims of all persons whosoever.

## 33.    SURRENDER OF PREMISES

Upon expiration or other termination of this Sublease, Subtenant shall surrender possession of the Premises, together with any improvements made to the Premises, in a broom clean condition and in substantially the same condition as on the Commencement Date, ordinary wear and tear and damage due to fire and other casualty excepted.

## 34.    HOLDING OVER

It is expressly agreed and understood that any holding,  continued use or occupancy of the Premises by Subtenant after the expiration or other termination of this Sublease, shall operate and be construed as a tenancy from month to month at a rental rate of two hundred percent (200%) of the then current rental rate.  Acceptance by Sublandlord of rent after the termination of this Sublease shall not constitute a consent to a holdover or result in a renewal or extension of this Sublease.

## 35.    ACCEPTANCE OF LESSER SUM

No acceptance by Sublandlord of a lesser sum that the full amount of the rent (or amount due) shall be deemed to be other than on account of the earliest amount of such rental due nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction or compromise and settlement.  Landlord may accept such check or payment without prejudice to Sublandlord's right to recover the balance of the amount due or pursue any other remedy provided for in this Sublease.

## 36.    CONSENT OF SUBLANDLORD

Not required.

## 37.    ATTORNEY'S FEES

In the event of any default by the Sublandlord or Subtenant under the terms of this Sublease and either party institutes institutes a legal proceeding to cure such default, in addition to any other requirements under this Sublease, the non-prevailing party shall be responsible for the payment of all costs attributable to such proceedings, including, but not limited to, reasonable attorney's fees and court costs incurred by the prevailing party.

**38.    HEIRS, SUCCESSORS, ASSIGNS**

This Sublease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

**39.    PARTIAL INVALIDITY**

If any term or provision of this Sublease or the application thereof to any person or circumstances shall, to any extent be invalid or unenforceable, the remainder of this Sublease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Sublease shall be valid and be enforced to the fullest extent permitted by law.

**40.    INTERPRETATION**

This Sublease shall be construed and enforced in accordance with the laws of the State in which the Premises are located

**41.    STRICT PERFORMANCE**

Failure of Sublandlord or Subtenant, as the case may be, to insist upon the strict performance by Subtenant or Sublandlord, as the case may be, of any term, condition or covenant on Subtenant's or Sublandlord's, as the case may be, part to be performed pursuant to the terms of this Sublease or to exercise any option, right, power, or remedy of Sublandlord or Subtenant, as the case may be, contained in this Sublease shall not be or be deemed to be a waiver of such performance or relinquishment of such, right now or at any time subsequent hereto. The receipt by Sublandlord of any minimum monthly rent or additional rent required to be paid by Subtenant hereunder with knowledge of any Event of Default by Subtenant shall not be or be deemed to be a waiver of such Event of Default; nor shall any endorsement or statement on any check or any letter accompanying any check or payment of minimum monthly rent or additional rent be deemed an accord and satisfaction and Sublandlord may accept any such check or payment without prejudice to Sublandlord's right to recover the balance of such minimum monthly rent or additional rent or to pursue any other right or remedy of Sublandlord herein provided or provided at law or in equity. No waiver by Sublandlord or Subtenant, as the case may be, of any provision of this Sublease shall be or be deemed to have been made unless expressed in writing and signed by Sublandlord or Subtenant, as the case may be.

**42.    COUNTERPARTS**

This Sublease may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

### 43.    PRIOR AGREEMENTS

This Sublease contains the entire and only agreement between the Sublandlord and Subtenant concerning the Premises and no prior oral or written statements or representations, if any, of any party hereto or any representative of any party hereof, not contained in this instrument, shall have any force or effect. This Sublease shall not be modified in any way, except by a writing, executed by Sublandlord and Subtenant, and no oral agreements or representations for rental shall be deemed to constitute a Sublease other than this Agreement. This Agreement shall not be binding until it shall have been executed by Sublandlord and Subtenant.

### 44.    TIME IS OF THE ESSENCE

Time is of the essence of this Sublease. Whenever a day certain is provided for the payment of any sum of money or the Performance of any act or thing, the same enters into and become a part of the consideration for this Sublease.

### 46.    CONFLICT BETWEEN MASTER LEASE AND THIS SUBLEASE

Between Sublandlord and Subtenant, in the event of a conflict between this Sublease and the Master Lease, this Sublease shall control.

### 47.    TERMS

The term "Sublandlord" shall be interchangeable with "Sublessor" and the term "Subtenant" shall be interchangeable with "Sublessee". Words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires. The term "Sublandlord shall include Sublandlord's agents, employees, contractors, subcontractors, invitees, guests and visitors. The term "Subtenant" shall include Subtenant's agents, employees, Subtenants, contractors, subcontractors, invitees, guests and visitors. However, in no event shall either party have any liability for the acts or omissions of an invitee, guest or visitor of said party unless such act or omission occurs while that party has or should have control over such invitee, guest or visitor.

### 48.    HEADINGS

The headings contained in this Sublease are for convenience only and shall have no effect on the meaning, context or interpretation of the Sublease.

**SIGNATURE PAGE FOLLOWS**

**IN WITNESS WHEREOF,** the parties have executed this Sublease on the day and year first above written.

**SUBLANDLORD:**

By:
Title:

**SUBTENANT:**

By: Michael S. Simeone
Title: Senior Vice President

## EXHIBIT A

*Master Lease is attached.*

## EXHIBIT "B"

*Diagram of Premises is attached.*



## SUBLEASE LISTING AGREEMENT

SUBLEASE LISTING AGREEMENT, made this 4th day of January, 2000 between _ADT SECURITY SERVICES INC._, a _DELAWARE CORPORATION_ Corporation, having its principal office at _BOCA RATON FLORIDA_ "Lessee" and O;R&L REALTORS, "Broker" a Connecticut Corporation, having and office at 2 Summit Place, Branford, CT  06405.

### W I T N E S S E T H

WHEREAS, Lessee leases certain premises located at 10 Research Parkway, Wallingford, CT, more particularly described on Exhibit A (Property"); and

WHEREAS, Lessee desires to engage the services of Broker to assist in the consummation of a lease for a portion ("Premises") of the Property described in the Master Lease shown in Exhibit B attached hereto, and the Broker desires to perform such services, as on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein, the sufficiency of which is hereby acknowledged, the parties hereto have agreed as follows:

### 1.  APPOINTMENT OF BROKER

Lessee hereby grants Broker and the broker hereby accepts, the exclusive right to act as Lessee 's Broker to show the Premises and to locate and solicit offers to sublease the Premises ("Transaction") during the term of the agreement.

### 2.  TERM

2.1  The term of this Agreement shall be for a period commencing ~~January 1~~, 2000 _March 15_ through and including ~~June~~ 30, 2000 unless sooner terminated by either party in accordance with Section 3 ("End Date").  The term of this Agreement shall be extended only by written agreement.

### 3.  TERMINATION

3.1  Either Lessee or Broker may terminate this Agreement at any time for any or no reason by giving the other party verbal notice followed by at least thirty (30) days prior written notice which shall set forth the effective End Date, subject to the obligations set forth in subparagraphs 4.2 and 6.2.  After receiving verbal notice, Broker shall not perform further services except as outlined in subparagraph 3.2 below or as directed by Lessee in writing.

2 Summit Place
Branford, CT  06405
Telephone:  (203) 488-1555
Facsimile:  (203) 315-4046




2340 Silas Deane Highway
Rocky Hill, CT  06067
Telephone:  (860) 721-0033
Facsimile:  (860) 721-7882

3.2  In the event Lessee terminates this Agreement for any reason other than Broker's breach, misrepresentation of acts of fraud, in which case termination shall be immediate, Brokers shall have thirty (30) days from date of termination to pursue the closing of any subleasing prospects that Broker is actively engaged in pursuing as long as Broker registers such subleasing prospect with Lessee within ten (10) days of Lessee verbal notice to terminate.  During the thirty (30) day period as described above, Broker must demonstrate to Lessee reasonable satisfaction that Broker is active in their pursuit of closing of a sublease between Lessee and Broker's registered prospect.  Notwithstanding the following, in the event Lessee terminates this Agreement due to its decision to remove the Premises from the market for sublease, Broker shall stop all efforts to market the Premises further.

Effective on the End Date, each party shall be released from any further obligation hereunder except as set forth in subparagraph 9.5.

### 4.  DUTIES OF BROKER

4.1  Broker agrees to diligently investigate and develop offers and inquires and to canvas, solicit, and otherwise employ its services to locate a *bona fide* party to sublet the Premises as Lessee and Broker may from time to time mutually agree upon in writing.  Broker shall promptly submit all offers to Lessee.

4.2  Broker, at Broker's expense, ~~not exceed $500 and subject to reimbursement as hereinafter provided in paragraphs 4.2.1 and 4.2.2,~~ shall prepare and distribute flyers and other advertising material.  Broker shall not at any time, in any flyer or other advertising material use the name of Lessee or any of its parent, subsidiaries or affiliates or any variation thereof without the prior written consent of Lessee. 

4.2.1  ~~In the event Broker is paid a commission, Broker shall not seek reimbursement from Lessee for Broker's expenses up to $500.  If however, Broker's expenses exceed $500, then Lessee will reimburse the costs over $500 if the following occurs:  a.) commissions have been paid; b.) Broker submits to Lessee an invoice with supporting documentation reasonably satisfactory to Lessee; and c.) Broker has received written approval by Lessee prior to incurring any costs exceeding the $500 limit.~~ 

2 Summit Place
Branford, CT 06405
Telephone:  (203) 488-1555
Facsimile:  (203) 315-4046


OR
&L
REALTORS
CORE

2340 Silas Deane Highway
Rocky Hill, CT 06067
Telephone:  (860) 721-0033
Facsimile:  (860) 721-7882

4.2.2  In the event Lessee terminates this Agreement for any other reason excepting a breach of Broker of Broker's material obligations hereunder, Lessee shall reimburse Broker for the actual expenses paid to third parties by Broker in connection with the performance of this Agreement within thirty (30) days after the End Date, provided Broker submits to Lessee an invoice thereafter together with supporting documentation reasonably satisfactory to Lessee. In no event shall Lessee be responsible Broker's expenses beyond $500, unless Lessee has given Broker prior written approval to before incurring any costs that will exceed the $500 limit.

## 5.  APPROVAL OF TERMS

The Premises shall be sublet on such terms as may be authorized by Lessee in Lessee's sole and absolute discretion. Broker shall have no authority to make representations on Lessee's behalf, to execute documents on behalf of Lessee or to bind or create obligations for Lessee in any manner whatsoever and Broker shall not act inconsistently with such limitation on its authority.

## 6.  COMMISSION AND PAYMENT

6.1  If as and when the conditions set forth in this subparagraph 6.1 have been satisfied, Broker shall have earned and Lessee shall pay Broker a commission computed in accordance with the Schedule of Commissions set forth on Schedule I, whether or not Broker is the procuring cause of the applicable transaction. The parties agree that the payments due Broker described on Schedule I and subparagraph 4.2 shall be the only compensation to which Broker is entitled under this Agreement.

6.2  One hundred percent (100%) of the commission shall be paid on the later to occur of; a.) the day the sublease is fully executed; b.) the day the Landlord consents in writing to such sublease; or c.) the day Lessee executes and delivers a buyout agreement with the Landlord releasing Lessee from further obligation under the Lease.

6.3  Upon full payment of the commission payable under this Agreement or the reimbursement of expenses set forth in subparagraph 4.2, Broker does hereby forever release Lessee from any claims and demands whatsoever for commissions or any other compensation, and shall indemnify and hold Lessee harmless from and defend Lessee against anyone claiming or demanding any commissions, fees, expenses or other compensation from Lessee as a result of any misrepresentations made by, or any act or omission of Broker.



2 Summit Place
Branford, CT 06405
Telephone: (203) 488-1555
Facsimile: (203) 315-4046

2340 Silas Deane Highway
Rocky Hill, CT 06067
Telephone: (860) 721-0033
Facsimile: (860) 721-7882

### 7. COOPERATING BROKERS

7.1 Broker may utilize the services of other real estate brokers or real estate brokerage firms ("Outside Brokers"). Any agreements with Outside Brokers shall be solely between the particular Outside Broker and Broker individually and not in agency or representative capacity with Lessee. Outside Broker shall not be agents of Lessee and shall not have any relationships whatsoever with Lessee. Broker shall be solely liable for any commissions or other amounts payable to Outside Brokers and such sums shall be paid out of the commission paid to Broker hereunder. Lessee shall have no liability for such commissions or other amount payable to Outside Brokers.

### 8. NOTICE

8.1 Any notice or demand shall be in writing and shall be considered delivered when mailed or, in the case of express mail, when received. Any notice or demand by Lessee to Broker shall be served personally, by registered or certified mail (return receipt requested), or sent by a nationally recognized overnight courier service, addressed to Owens, Renz and Lee Company at 2 Summit Place, Branford, CT 06405, until otherwise directed in writing by Broker, and in any notice or demand by Broker Lessee shall be addressed ADT SECURITY SERVICES INC ONE TOWN CENTER ROAD, BOCA RATON, FL 33486, with copies to: ATTN: REAL ESTATE ADMINISTRATION

### 9 MISCELLANEOUS

9.1 Broker hereby warrants and represents that it a.) is a real estate brokerage firm or broker duly licensed under and otherwise in compliance in all material respects with the licensing laws of the State of Connecticut, and b.) shall perform the services set forth in this Agreement in accordance with such licensing laws and all other applicable laws, regulations and codes of conduct.

9.2 This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and may not be changed, rescinded or modified orally but only by written instrument duly signed by the parties hereto.

9.3 This Agreement shall be construed and interpreted in accordance with laws of Connecticut, without reference to its conflict of law rules.

9.4 Each of the parties hereto represent and warrant to the other that it has the right and authority to enter into this Agreement.

<table>
<tr><td>2 Summit Place<br>Branford, CT 06405<br>Telephone: (203) 488-1555<br>Facsimile: (203) 315-4046</td><td></td><td>2340 Silas Deane Highway<br>Rocky Hill, CT 06067<br>Telephone: (860) 721-0033<br>Facsimile: (860) 721-7882</td></tr>
</table>

9.5 The provisions of subparagraph 6.3 of this Agreement shall survive the expiration or earlier termination of this Agreement and, if applicable, shall survive the signing of a mutually acceptable sublease agreement.

9.6 The article heading herein contained are for purposes of identification only and shall not be considered in construing this Agreement.

IN WITNESS WHEREOF, the parties hereunto have executed this Agreement as of the day and year first above written.

ADT SECURITY SERVICES INC

By: _____
Name: JOHN CURLEW
Title: V.P. ADMINISTRATION

O.R.&L.

By _____
Name
Title



2 Summit Place
Branford, CT 06405
Telephone: (203) 488-1555
Facsimile: (203) 315-4046

REALTORS
CORE

2340 Silas Deane Highway
Rocky Hill, CT 06067
Telephone: (860) 721-0033
Facsimile: (860) 721-7882

## SCHEDULE I

### SCHEDULE OF COMMISSIONS

Lessee agrees to pay Broker a commission for securing a sublease of the space or a cash incentive for assisting Lessee in buying out of its remaining obligation under the Lease using the following formulas:

1.  Sublease Commission. If Broker, through its services secures a sublease of the space Lessee agrees to pay Broker a commission equal to five percent (5%) of the Gross Lease Value for in the sublease. Gross Lease value shall be defined as the aggregate price per square foot times the rentable square feet. The aggregate price per square foot includes base rent and common area maintenance charges (CAM), but does not include any leasehold improvement costs or cash incentives paid for by Lessee and amortized into the Gross Rent amount. Broker agrees to accept such commissions as full compensation for the services rendered under Section 6 of the Agreement.

2.  Buyout Incentive Fee. If Broker through its efforts to sublease the space, motivates the Landlord to allow Lessee to cancel the Lease early and buyout of the remaining Lease obligation at a discount below the amount owing at the time of the buyout, Lessee agrees to pay Broker a commission equal to ten percent (10%) of the Gross Rent savings realized by the buyout.



2 Summit Place
Branford, CT 06405
Telephone: (203) 488-1555
Facsimile: (203) 315-4046

2340 Silas Deane Highway
Rocky Hill, CT 06067
Telephone: (860) 721-0033
Facsimile: (860) 721-7882

**EXHIBIT "A"**

PROPERTY DESCRIPTION: 4000.00 FT DESIGNATED AS THE "ADDITIONAL SPACE" IN THE FIRST AMENDMENT TO LEASE DATED MARCH 31, 1999.



2 Summit Place
Branford, CT 06405
Telephone: (203) 488-1555
Facsimile: (203) 315-4046

2340 Silas Deane Highway
Rocky Hill, CT 06067
Telephone: (860) 721-0033
Facsimile: (860) 721-7882