# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Proposed Hearing Date: May 30, 2007 at 2:30 p.m. |
| | : | Proposed Objection Deadline: May 25, 2007 at 4:00 p.m. |

## NOTICE OF MOTION AND HEARING

PLEASE TAKE NOTICE that on May 16, 2007, the above-captioned

debtors and debtors in possession (the "Debtors") filed the **Debtors' Motion for Order**

**to Provide Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361,**

**362 and 363(b)(1)** (the "Motion") with the United States Bankruptcy Court for the

District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (the

"Bankruptcy Court").

PLEASE    TAKE    FURTHER    NOTICE    that    the    Debtors

contemporaneously filed a *Motion of Debtors and Debtors in Possession to Shorten*

*Notice and Objection Periods for Debtors' Motion for Order to Provide Adequate*

*Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1)* (the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Date filed: 5-16-07

Docket #: 736

"Notice Motion") with the Bankruptcy Court. The proposed hearing date and objection deadline set forth herein are consistent with the dates proposed in the Notice Motion.

PLEASE TAKE FURTHER NOTICE that the Debtors have proposed that any responses or objections to the Motion must be in writing, filed with the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel on or before **4:00 p.m. on May 25, 2007 (EDT)**.

PLEASE TAKE FURTHER NOTICE that if any objections or responses are received the Debtors have proposed that a hearing with respect to the Motion be held on **May 30, 2007 at 2:30 p.m. (EDT)** before the Honorable Kevin J. Carey at the United States Bankruptcy Court, 824 Market Street, 5th Floor, Courtroom #5, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE that once a hearing date and objection deadline have been established, the Debtors will provide notice of such dates to all parties in interest.

IF NO OBJECTIONS TO THE MOTION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: May 16, 2007
      Wilmington, Delaware

                            Mark D. Collins (Bar No. 2981)
                            Michael J. Merchant (Bar No. 3854)
                            Christopher M. Samis (Bar No. 4909)
                            RICHARDS, LAYTON & FINGER, P.A.
                            One Rodney Square
                            920 North King Street
                            Wilmington, Delaware  19801
                            Telephone:  (302) 651-7700
                            Facsimile:  (302) 651-7701

                            - and -

Ben H. Logan
Suzzanne S. Uhland
Victoria H. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC., a** | : | **Case No. 07-10416(KJC)** |
| **Delaware corporation, et al.,** [1] | : | |
| | : | |
| **Debtors.** | : | **Jointly Administered** |
| | : | |
| | : | **Proposed Hearing Date: May 30, 2007 at 2:30 p.m.** |
| | : | **Proposed Objection Deadline: May 25, 2007 at 4:00 p.m.** |

## DEBTORS' MOTION FOR ORDER TO PROVIDE ADEQUATE PROTECTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361, 362 AND 363(b)(1)

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby request the entry of an order authorizing the Debtors to provide adequate protection to a series of counter parties (the "Repurchase Counterparties") to master repurchase agreements and similar documents, plus purchasers of loans originated by the Debtors who replaced the Debtors as servicer prior to the Petition Date

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

("Loan Purchasers"),[2] with respect to collections received prior to the Petition Date on loans in which they claim an interest. Events that have transpired during the approximately one month since these cases were filed have led to the growing realization that the issues involved are more complex and the amounts involved are significantly greater than the Debtors appreciated when these cases were filed. Moreover, the history of one-off litigation that has characterized these issues to date has led to inefficient dedication of estate, creditor and Court resources with the risk that parties that engage in a race to the courthouse will be rewarded. Thus, the Debtors file the instant motion (the "Motion") in order to provide the parties claiming an interest in property held by the Debtors on the Petition Date adequate protection and to protect the interests of the parties, including the rights of the Official Committee of Unsecured Creditors (the "Committee") and the Debtors, to participate in resolution of these issues that go to the heart of the disparate interests of various claimants. The Debtors have communicated their intent to file this Motion with a number of the Repurchase Counterparties and are optimistic that many of them will support the relief sought herein, although they also will insist on a reservation of their rights as set forth in the proposed order. The Debtors are also advised that the Committee will support the relief sought herein.

## JURISDICTION

1.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b).

---

[2] Nothing in this Motion is intended to affect the servicing of loans that Debtors performed as of the Petition Date or subsequently. All such servicing will continue to be performed in accordance with the applicable agreements.

2

2.      The bases for the relief requested herein are sections 105(a), 361, 362 and 363(b) of the Bankruptcy Code.

## BACKGROUND

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States.   Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation ("New Century TRS" and together with NCF and the other debtor subsidiaries, the "Debtors"), NCF originated, purchased, sold, and serviced mortgage loans nationwide.   NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers.   In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including:   "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA").   During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market.   Since their inception, the Debtors have issued or enabled over $220 billion in loans.   These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.      On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief.   The Court has entered an order authorizing the joint administration of the Debtors' bankruptcy cases for procedural purposes only.   The Debtors are operating their

3

business and managing their affairs as debtors and debtors in possession.

5.    The Debtors commenced these chapter 11 cases largely to pursue an expedited sale of their businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

6.    The Debtors funded their operations pre-petition largely through a series of master repurchase agreements (the "Repurchase Agreements"). Under these facilities the Debtors contracted to sell certain mortgage loans to the Repurchase Counterparties, coupled with the Debtors' agreement, inter alia, to repurchase these loans on a maturity date, an obligation to pay the Repurchase Counterparties a regular (usually monthly) "Price Differential" (an amount calculated based on multiplying the overall repurchase obligation times an interest rate) and periodically to satisfy margin calls when the determined value of the mortgage loans subject to the Repurchase Agreement was less than the total repurchase obligations. The Debtors assert that these short-term facilities functioned much like standard secured revolving credit facilities with regular payments of interest and principal payments required to keep the facility within a borrowing base.

7.    Shortly before the Petition Date, the Repurchase Counterparties commenced exercising remedies against the Debtors. The Repurchase Counterparties made margin calls in excess of $150 million, which the Debtors were unable to satisfy fully. Thereafter, the Repurchase Counterparties began restricting and ultimately ceased providing funding for loans originated by the Debtors. Each of the Repurchase Counterparties also declared the Debtors in default under its facility.

8.    As a result of the defaults, many of the Repurchase Counterparties have exercised remedies under their agreements with the Debtors, including asserting control of the

4

cash flow from the mortgage loans subject to their Repurchase Agreements and in some instances crediting the asserted value of these mortgage loans against the Debtors' repurchase obligation and/or reselling these mortgage loans to third parties.

9.    The Repurchase Counterparties contend that these agreements are repurchase agreements as defined in Bankruptcy Code section 101(47) or security agreements as defined in Bankruptcy Code section 741(c). Accordingly, they assert that they are subject to certain special rights and privileges under Bankruptcy Code section 561, inter alia, which allow them to realize on the mortgage loans without relief from the automatic stay.

10.    In addition, the Repurchase Counterparties generally contend that the agreements required the Debtors to hold collections on the mortgage loans received prior to the Petition Date in trust. The agreements vary as to this sort of trust language and whether or not the funds in question were to be deposited into designated accounts, whether the Debtors were free to withdraw funds from those accounts or whether the Debtors were free to utilize such funds for general corporate purposes. The Debtors assert that, in practice, for many years, they have received payments of regularly scheduled principal and interest on the mortgage loans subject to the Repurchase Agreements in the Debtors' general corporate accounts with the acquiescence, if not the express understanding, of the Repurchase Counterparties. Monthly interest (generally styled "Price Differentials") computed on the total amount of the repurchase obligations was paid to the Repurchase Counterparties, but these payments were generally less than the interest received on the mortgage loans, and the spread was retained by the Debtors.

11.    Since filing these cases, some of the Repurchase Counterparties have commenced adversary proceedings seeking, inter alia, that funds collected on mortgage loans prior to the exercise of their remedies, be held in trust and turned over to them. UBS Real Estate

5

Securities Inc. v. New Century Mortgage Corp., et. al, Adv. No. 07-50875 (KJC) (the "UBS Adversary Proceeding"); DB Structured Products, Inc. v. New Century Mortgage Corp., et. al., Adv. No. 07-51269 (KJC) (the "DB Adversary Proceeding"). Other Repurchase Counterparties have been more patient, but the Debtors appreciate that their patience will be tested as they watch their brethren file litigation with the risk that the litigious among them will gain an advantage.

        12.    The Debtors have been working to reconcile the amounts at issue, which is an enormous undertaking given the thousands of loans involved and the fact that the Repurchase Counterparties either established blocked accounts for the first time in mid- to late March 2007 or blocked existing accounts at that time. Some of the Repurchase Counterparties have been less patient than others. For example, UBS Real Estate Securities Inc. ("UBS") has asserted that it is entitled to approximately $2.7 million in addition to over $5.7 million turned over by the Debtors to UBS since the Petition Date. Similarly, DB Structured Products ("DB") recently filed a pleading in which it asserts that $1.3 million is owed to DB.[3] See "DB Structured Products, Inc.'s Motion for Appointment of a Chapter 11 Trustee and Joinder to Motion of the United States Trustee for an Order Directing the Appointment of a Chapter 11 Trustee or, In the Alternative, an Examiner"; May 8, 2007.

---

[3] On April 25, 2007 (i.e., approximately 3 weeks after the Petition Date), DB advised the Debtors that it had exercised remedies under its Repurchase Agreement by crediting the repurchase obligations DB asserts are owed to it by the Debtors by $819,302,173.00. DB asserted that it was free then to resell the mortgage loans without paying to the Debtors any surplus realized over this amount credited and was still entitled to assert a deficiency claim against the Debtors. In addition, DB and the Debtors are in litigation over whether in early March DB properly took mortgage loans with a principal amount of approximately $50 million. Despite the current status of litigation, the Debtors have been and remain more than willing to have settlement discussions with DB.

6

13.    In addition, the Debtors have been attempting to work with the Repurchase Counterparties to maximize the amounts realized on the disposition of the loans that are subject to the Warehouse Loan Agreements. The stipulation among the Debtors, the Committee and Morgan Stanley that the Court approved on April 26, 2007 is the best example. The mortgage loans and residual interests in securitization trusts in which Morgan Stanley asserts an interest will be auctioned pursuant to procedures worked out between the Debtors, Morgan Stanley and the Committee in auctions scheduled for May 17 and 18, 2007. It is entirely possible that these auctions may moot all issues with Morgan Stanley. If the preliminary indications of interest are a guide, the amounts to be realized could well exceed the amount of Morgan Stanley's claims so that Morgan Stanley will be paid in full (subject to a full reservation of rights) and the estates will realize equity in these assets. The Debtors believe that the Morgan Stanley procedures might serve as a useful template for other Repurchase Counterparties. But whether or not the sort of coordinated and cooperative auction that is planned by Morgan Stanley is carried out with others, if the Repurchase Counterparties are able to realize full value from the mortgage loans in which they claim an interest, the issues involved in the current disputes could well be mooted, or at least reduced significantly.

14.    To be clear, the Debtors have turned over substantial sums to the Repurchase Counterparties since the inception of these cases -- over $27.4 million. The Repurchase Counterparties have generally transferred servicing of the loans in which they assert an interest to a servicer other than the Debtors and have been controlling the cash collected on these mortgage loans for some time now. The Debtors have cooperated in the transfer of this servicing and nothing in this Motion seeks to prevent the Repurchase Counterparties from continuing to collect payments on these mortgage loans, or to stop the Debtors from continuing

7

to turn over to the Repurchase Counterparties any moneys received by the Debtors on account of these mortgage loans subsequent to the Petition Date.

15.    With respect to collections on mortgage loans that the Debtors received prior to the Petition Date, there could be serious issues as to whether these amounts, particularly collections of regular monthly principal and interest payments prior to the blockage of accounts, are either cash collateral or property of the estates.    Certain of the Repurchase Counterparties assert that their Repurchase Agreements give them a basis to establish constructive trusts for such property -- i.e., the money that was not held in trust as of the Petition Date should have been.    This argument raises a number of legal and factual issues, including whether a constructive trust could be avoided and tracing supposed trust funds.    Such tracing issues inherently pit lender against lender as they vie for the same funds held in the Debtors' general corporate accounts on the Petition Date.

16.    In addition, prior to the Petition Date, the Debtors received some payments from borrowers under the underlying mortgage loans with respect to loans that had been sold to certain whole loan purchasers (a "Loan Purchaser") where the purchaser had replaced the Debtors as loan servicer.    These funds were paid by the borrowers into the Debtors' general corporate accounts so similar Section 544 and tracing issues might arise with respect to the receipt of any such funds the Debtors received prepetition.

17.    The purpose of this motion is not to resolve any of these issues.    The Debtors acknowledge that the Repurchase Counterparties and the Loan Purchasers adamantly maintain contrary positions.    These issues will be resolved either through consensual resolutions, a chapter 11 plan, or litigation with the relevant parties.    The Debtors' purpose in filing this Motion is simply to provide the Repurchase Counterparties and Loan Purchasers with adequate

8

protection so that these issues can be resolved in a rational manner without favoring those who win the race to the courthouse, and at the same time providing them adequate protection.

18.    With the wisdom of perfect hindsight, the Debtors' preference would have been for these issues to have been brought to a head earlier, rather than having to deal with the sort of one-off litigation that has transpired during the approximately one month that these cases have been pending. But the Debtors have to deal with the facts now before us, and the purpose of this Motion is to provide adequate protection to the parties claiming an interest in property held by the Debtors on the Petition Date, and at the same time allowing the estates to proceed with the sale of their businesses so as to maximize distribution to whomever is entitled to it, and preserving the rights of the Debtors and the Committee to litigate, or to resolve consensually, the issues at hand.

## **RELIEF REQUESTED**

19.    By this Motion, the Debtors seek, <u>inter alia</u>, the entry of an order (the "Order") pursuant to sections 105(a), 361, 362 and 363 of the Bankruptcy Code, providing adequate protection to all Repurchase Counterparties and Loan Purchasers who assert an interest in property held by the Debtors on the Petition Date. This adequate protection will take the form of (i) a superadministrative priority granted under Bankruptcy Code section 507(b) senior to any administrative priorities under Bankruptcy Code section 503(b)(1) but junior to the superadministrative priority granted to the lenders under the Debtor-In-Possession Loan and Security Agreement dated as of April 13, 2007 (the "DIP Loan Agreement"), (ii) a lien junior to the liens granted to the lenders under the DIP Loan Agreement and any valid, unavoidable and existing liens on all assets of the Estates other than First Lien Collateral (as defined in the DIP Loan Agreement), and (iii) once all obligations under the DIP Loan Agreement have been

9

satisfied in full, a lien on all assets of the estates, subject to any existing valid, unavoidable and

existing liens[4] (collectively the "Adequate Protection Liens and Priorities"). The Adequate

Protection Liens and Priorities will in all cases be subject to the Carve Out provided for in the

DIP Loan Agreement, will not encumber avoiding powers or their proceeds ("Avoidance Action

Claims") and will provide protection only to the extent that a Repurchase Counterparty or Loan

Purchaser is determined to have a valid, unavoidable interest in property held by the Debtors as

of the Petition Date. Such determinations will be made as of the Petition Date so as to avoid any

prejudice to Repurchase Counterparties or Loan Purchasers with respect to the use of this

property since the Petition Date -- i.e., the parties' rights will be determined as of the Petition

Date. The granting of these Adequate Protection Liens and Priorities will also be without

prejudice to the rights of the Debtors, the Committee and other appropriate parties in interest to

challenge the entitlement of the recipients to this adequate protection -- i.e., all rights will be

reserved with respect to the basic issues outlined above.

20.    The relief sought in this Motion has been developed by the Debtors

working closely with the Committee. As sales of the Debtors' businesses are consummated,

auctions of loans held by the Repurchase Counterparties proceed, reconciliations are completed

and the issues at hand gain greater clarity, the Debtors may seek to provide other forms of

adequate protection to the Repurchase Counterparties and Loan Purchasers.

## APPLICABLE AUTHORITY

21.    Adequate protection can be provided by a number of different methods.

---

[4] Section 7.13 of the DIP Loan Agreement prohibits the granting of any liens on First Lien Collateral until
the obligations under the DIP Loan Agreement are satisfied in full. The DIP Loan Agreement matures in mid-July
2007; i.e., 90 days after the Closing Date, if not terminated earlier.

See e.g. 11 U.S.C. § 361. Pursuant to section 361 of the Bankruptcy Code, adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3).

      22.    What constitutes adequate protection is determined on a case-by-case basis. See MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F. 2d 1393, 1396-97 (10th Cir. 1987); In re Martin, 761 F. 2d 472 (8th Cir. 1985). However, regardless of how adequate protection is provided, the focus of the requirement is to protect a party in interest from diminution in value of its interest in the property during the period of use by the debtor. See In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); Delbridge v. Production Credit Ass'n & Fed. Land Bank, 104 B.R. 824, 827-28 (E.D. Mich. 1989); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

      23.    In other words, adequate protection is necessary only to the extent the use of the party in interests' property will result in a decrease in "the value of such entity's interest in such property."[5] 11 U.S.C. §§ 361, 363(e); see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370-73 (1988). As the court in In re Megan-Racine

---

[5] Thus, if a secured creditor's interest in the value of its collateral is not diminished by a debtor's use, sale or lease of the collateral, the secured creditor's interest in the collateral is adequately protected.

11

Assoc., Inc., 202 B.R. 660 (Bankr. N.D.N.Y. 1996) noted:

> Adequate protection . . . is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of the debtor's reorganization that is due to the imposition of the stay or is traceable to the use of such property.

Id. at 663.

24.     On the facts at hand, there are issues as to whether the Repurchase Counterparties or Loan Purchasers are entitled to any form of adequate protection or how much. But in order to avoid litigation of such issues, the Debtors seek to grant them essentially a blanket lien and/or superadministrative priority to secure any entitlement to which they are entitled. To the extent that they are entitled to recoveries from essentially any or all assets of the estates ahead of unsecured creditors, their interests will be fully protected. But to the extent that the unsecured creditors have contrary rights, the rights of unsecured creditors will also be preserved.

## NOTICE

25.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to:  (1) the Office of the United States Trustee for the District of Delaware, (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' post-petition senior secured lenders; (3) the Official Committee of General Unsecured Creditors; (4) all known Repurchase Counterparties and Loan Purchasers, (5) all other parties known to the Debtors who assert that property held by the Debtors on the Petition Date may not be property of the estates, and (6) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

12

26.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

**NO PRIOR REQUEST**

27.    No previous motion for the relief sought herein has been made to this or any other Court.

13

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit "A", granting the relief requested herein and such other further relief the Court deems just and proper.

Dated: May 16, 2007
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

14

## EXHIBIT A

15

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

## ORDER GRANTING ADEQUATE PROTECTION PURSUANT TO
## BANKRUPTCY CODE SECTIONS 105(a), 361, 362 AND 363(b)(1)

This matter coming before the Court on the Debtors' Motion For Order to Provide

Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) (the

"Motion") filed by the above-captioned debtors and debtors in possession (collectively, the

"Debtors"), and the Court having reviewed the Motion and having heard the statements of

counsel regarding the relief requested in the Motion at a hearing before the Court (the

"Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); (c)

due and sufficient notice of the Motion having been given under the particular circumstances;

and it appearing that no other or further notice need be provided; and it appearing that the relief

requested by the Motion is in the best interests of the Debtors, their estates, their creditors, and

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LW (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefore;[2]

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is hereby GRANTED.

2.      To the extent that a Repurchase Counterparty or a Loan Purchaser is determined to have a valid, perfected, enforceable and nonavoidable interest in property held by the Debtors as of the Petition Date,  as adequate protection for the use of any such property by the Debtors, and to the extent that such use diminished a Repurchase Counterparty's or a Loan Purchaser's interests in such property, such Repurchase Counterparty or Loan Purchaser is granted pursuant to sections 361, 362 and 363 of the Bankruptcy Code, (i) a lien junior to the liens granted to the lenders under the Interim Order Approving Debtor-In-Possession Financing entered April 5, 2007 (the "Interim DIP Order"), Final Order Approving Debtor-In-Possession Financing entered May 7, 2007 (the "Final DIP Order" and together with the Interim DIP Order, the "DIP Orders"), or the Debtor-In-Possession Loan and Security Agreement dated as of April 13, 2007 (the "DIP Loan Agreement") and any valid, unavoidable and existing liens on all assets of the Debtors and their estates other than assets that are "First Lien Collateral" as defined in the DIP Loan Agreement, and (ii) once all obligations under the DIP Loan Agreement have been satisfied in full, a lien on all assets of the estates, without duplication, subject to any existing valid, unavoidable and existing liens (the "Adequate Protection  Liens"); provided, however, (y) such liens shall not attach to any actions available to the Debtors' estate pursuant to Sections 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code ("Avoidance Actions") or the proceeds thereof, and (z) the attachment of such liens to any claims and/or causes of action of the Debtors' estate that are not Avoidance Actions, or proceeds thereof, shall not vest the lienholder

---

[2] Capitalized terms not defined herein shall have the meanings given to them in the Motion.

with any rights of control or consent with respect to the litigation, including without limitation settlement, of such claims or causes of action (assets subject to the Adequate Protection Liens hereinafter referred to as the "Collateral"). Such Adequate Protection Liens shall be (i) in continuation of and in addition to all liens, security interests or property interests now existing in favor of a Repurchase Counterparty or a Loan Purchaser and not in substitution therefor; (ii) effective as of the date on which the Debtors filed their petitions for relief; and (iii) deemed duly perfected without the necessity of filing in any county or state recorders office or elsewhere, any additional documents or notices to perfect such postpetition liens and security interests. Such Adequate Protection Liens granted pursuant to this Order shall be subject to (x) any prepetition, valid and perfected unavoidable liens, if any, existing prior to the Petition Date, and (y) the Carve Out.

3.    To the extent that a Repurchase Counterparty or a Loan Purchaser is determined to have a valid, perfected, enforceable and nonavoidable interest in property held by the Debtors as of the Petition Date, as adequate protection for the use of any such property by the Debtors, and to the extent that such use diminished a Repurchase Counterparty's or a Loan Purchaser's interests in such property, such Repurchase Counterparty or Loan Purchaser is granted the protections afforded by section 507(b) of the Bankruptcy Code (the "Superpriority Claims"); provided, however, that any such super administrative priority shall be subject and subordinate to (i) the superpriority administrative expense claims granted to the lenders under the DIP Orders, and (ii) the Carve Out.

4.    Notwithstanding the foregoing provisions of this Order, the amounts set forth in paragraphs 18(a) and (b) of the Final DIP Order shall be payable from and chargeable against the Collateral (and prior to the Adequate Protection Liens) (the "Carve-Out").

3

5.     To the extent that any lien or super-priority claim granted to a Repurchase Counterparty or a Loan Purchaser pursuant to this Order arising from any one Debtor's having held property as of the Petition Date (a "Funds-Holding Debtor"), and such lien and/or super-priority claim is repaid from and/or satisfied by the assets of any other Debtor (a "Repaying Debtor"), then such Repaying Debtor shall be deemed to have an allowed claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code against such Funds-Holding Debtor for the amount of such repayment and/or satisfaction of such lien or super-priority claim, which allowed claim of such Repaying Debtor shall be junior to the super-priority claim granted to the lenders under the DIP Loan Agreement and shall be junior to the super-priority claims granted to the Warehouse Lenders and Loan Purchasers pursuant to this Order.

6.     Nothing in this Order or the Motion shall in any way prejudice the rights of any Repurchase Counterparty or Loan Purchaser with respect to (i) the characterization of the Repurchase Counterparty's and/or Loan Purchaser's agreements with the Debtors or any of their rights thereunder or under applicable law, (ii) whether property in which the Repurchase Counterparties and/or Loan Purchasers claim an interest is property of the estates, or (iii) the rights of any Repurchase Counterparty or Loan Purchaser to assert senior liens with respect to any property in which such party claims an interest.

7.     All rights of the Debtors, the Committee and any other parties in interest are preserved with respect to the Repurchase Counterparties and Loan Purchasers, including any claims that property held by the Debtors is property of the estates or to contest the enforceability, extent, validity, priority or perfection of any and all liens or other interests in property of the Debtors' estates asserted by any party in these cases.    All rights of the Repurchase Counterparties, the Loan Purchasers and their successors and assigns under the Repurchase

4

Agreements, all related agreements and under applicable law are preserved with respect to the Debtors and their affiliates. All rights of the Debtors and their affiliates and their successors and assigns under the Repurchase Agreements, all related agreements and under applicable law are preserved with respect to the Repurchase Counterparties and the Loan Purchasers.

8.      Nothing contained in this Order shall preclude the Repurchase Counterparties and the Loan Purchasers from exercising their respective rights and remedies in accordance with their respective agreements with the Debtors, to the extent that any such exercise or rights ad remedies would not violate the automatic stay of Bankruptcy Code Section 362 or other applicable law. Nothing contained herein is intended to modify or supercede any of the Debtors' obligations arising under the Order Granting Motion Of The Debtors And Debtors In Possession (A) Authorizing The Continued Use Of The Debtors' Centralized Cash Management System, Including Operation Of Servicer Trust Accounts, (B) Authorizing Maintenance Of Debtors' Existing Bank Accounts And Business Forms, And (C) Extending The Debtors' Time To Comply With Section 345 Of The Bankruptcy Code entered on April 11, 2007, which Order remains in full force and effect.

9.      As soon as reasonably practicable, the Debtors and the Committee shall conduct good faith negotiations in respect of the various issues described in the Motion as between the Debtors and the Committee on the one hand and each of the Repurchase Counterparties and the Loan Purchasers on the other hand. Nothing contained herein shall preclude the resolution of issues involving individual Repurchase Counterparties or Loan Purchasers.

10.    This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

SO ORDERED,

this ___ day of ___, 2007

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

6