### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware Corporation, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Re: Docket No. 450 |
| | : | |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDER (I) AUTHORIZING THE REINSTATEMENT OR EXTENSION OF CANCELLATION NOTICE PERIOD OF PREPETITION SURETY BONDS, (II) AUTHORIZING POSTING SECURITY FOR SURETY BONDS AND CREDIT, (III) AUTHORIZING THE EXTENSION OF POSTPETITION SECURED SURETY CREDIT, (IV) GRANTING POSTPETITION LIENS, JUNIOR SUPER-PRIORITY ADMINISTRATIVE CLAIMS AND ADMINISTRATIVE CLAIMS AND (V) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors (the "**Committee**"), by and through its proposed undersigned counsel, hereby objects to the motion (the "**Bonding Motion**") of New Century TRS Holdings, Inc. and its affiliated debtors and debtors-in-possession (the "**Debtors**") for entry of an order authorizing the Debtors to enter into an extraordinary postpetition bonding arrangement with the Debtors' prepetition surety provider, Hartford Fire Insurance Company ("**Hartford**"), and respectfully represents as follows:

### INTRODUCTION

1.     Prepetition, Hartford and/or its subsidiaries and affiliates issued various bonds to secure the Debtors' compliance with various state regulations and licensing requirements. Just prior to the bankruptcy filing, Hartford allegedly sent notices of termination with respect to certain surety bonds in the face amount of approximately $21 million. At the time of the filing of the Bonding Motion, the Debtors believed they needed to maintain approximately $2.85

1

million and $3.85 million of the bonds to preserve licenses related to the Debtors' loan origination and loan servicing businesses, respectively. As a condition to the reinstatement of such bonds, Hartford has demanded $5 million cash collateral, first-priority liens and superpriority administrative claims. Hartford apparently demanded these extraordinary protections to secure repayment of both **prepetition** and postpetition obligations under the prepetition bonds, including those that have been or will be surrendered.

2.       Since the filing of the Bonding Motion, it has become apparent that the Debtors no longer need the bonds relating to the Debtors' loan origination platform. In light of this, as well as concerns raised by the Committee to the inappropriate relief requested by Hartford, the Debtors have solicited offers from alternative surety providers and have received at least one competitive bid. The Debtors have advised that they will be filing an amended Bonding Motion to seek approval of the Hartford transaction or a more favorable proposal.

3.       The Committee has numerous objections to the Bonding Motion as it pertains to the Hartford proposal. First, the Committee opposes Hartford's apparent attempt to bootstrap its potentially $21 million prepetition unsecured claim into a postpetition claim secured by cash collateral, liens and superpriority claims. Second, the Committee does not believe that the Hartford transaction represents an appropriate use of estate assets to the extent it contemplates the reinstatement of bonds that are no longer needed. Third, the Bonding Motion does not contain sufficient procedures and safeguards governing the return of the postpetition collateral and the payment of reimbursement amounts to Hartford. Finally, in light of these deficiencies, as well as recent developments, the Committee believes that the Hartford proposal is decidedly **not** in the best interests of the Debtors' estates and creditors.

4.       The Committee has not yet had an adequate opportunity to assess any alternative

2

proposals, or their potential impact on the Debtors' estates and creditors, and reserves all rights with respect to any such proposals.

## GENERAL BACKGROUND

### A.     The Bankruptcy Filing

5.     On April 2, 1007 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and are continuing to operate their businesses and manage their affairs as debtors and debtors in possession.

### B.     The Committee

6.     On April 9, 2007, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**"). The Committee is comprised of: (i) Credit-Based Asset Servicing and Securitization, LLC, (ii) Residential Funding Corporation, (iii) Credit Suisse First Boston Mortgage Capital, LLC, (iv) Deutsche Bank National Trust Co., (v) Fidelity National Information Services, Inc., (vi) Wells Fargo Bank, N.A. and (vii) Maguire Properties. Since its formation, the Committee has appointed Kodiak Funding LP as an *ex officio* member of the Committee.

7.     The Committee has retained Hahn & Hessen LLP and Blank Rome LLP as its co-counsel and FTI Consulting Inc. as its financial advisors, subject to Court approval.

### C.     The Debtors' Sale Efforts

8.     Prior to the Petition Date, the Debtors' businesses included originating, purchasing, selling and servicing mortgage loans nationwide. The Debtors shut down their loan origination platform prior to filing and are now in the process of winding down and selling their remaining businesses and assets. To that end, the Debtors filed motions seeking to establish bid procedures for, and the approval of, sales of their loan origination platform assets and servicing

3

business.

9.    Pursuant to this Court's order, dated April 25, 2007 [Dkt. No. 404], bids for the Debtors' loan origination platform assets were due by May 2, 2007. An auction for those assets was scheduled for May 9, 2007. The Debtors did not receive bids for the loan origination platform assets and thus did not convene the auction.

10.    The Debtors obtained a stalking horse bid from Carrington Capital Management, LLC ("**Carrington**") for their loan servicing business. Pursuant to this Court's order, dated April 20, 2007 [Dkt. No. 340], additional bids for the Debtors' servicing business were due by May 10, 2007. An auction for the loan servicing business was convened on May 16, 2007, and Carrington was deemed to have submitted the highest and best bid. If approved by this Court, the Carrington sale is scheduled to close on or about June 4, 2007.

## THE DEBTORS' PREPETITION RELATIONSHIP WITH HARTFORD

11.    Prior to the Petition Date, Hartford and/or its subsidiaries and affiliates issued on behalf of one or more of the Debtors approximately 360 licensed lender bonds, mortgage banker/broker bonds and related bonds to secure compliance with various state regulations and licensing requirements (the "**Prepetition Bonds**"). (Bonding Mot. ¶ 8.) The face amount of the Prepetition Bonds was approximately $21 million. (Bonding Mot. ¶ 8.) On information and belief, all or substantially of the Prepetition Bonds were "occurrence based" as opposed to "claims made" bonds, meaning that valid claims made against the Prepetition Bonds would be entitled to payment, regardless of termination, as long as the acts or omissions giving rise to the claims occurred prior to termination.

12.    On information and belief, the Debtors' repayment obligations with respect to the Prepetition Bonds are governed by a prepetition indemnity arrangement with Hartford that

127340.01600/40168910v.3

entitled Hartford to indemnification and reimbursement for all payments made in respect of the Prepetition Bonds. (Bonding Mot. ¶ 6.) It is unclear which particular Debtors were indemnitors with respect to the Prepetition Bonds. There is no allegation in the Bonding Motion or elsewhere that the Debtors' indemnification and reimbursement obligations under the indemnity arrangement were secured by collateral.

13. Hartford asserts that the relevant agreements allowed it to terminate the Prepetition Bonds for any reason on 30 or 60 days notice. (Bonding Mot. ¶ 5.) The Debtors have asserted that, shortly before the Petition Date, Hartford sent notices of non-renewal or cancellation that purported to cancel some of the Prepetition Bonds, effective in late April through mid-May. (Bonding Mot. ¶¶ 5, 7.) The Debtors also maintain that some of the Prepetition Bonds were scheduled to expire by their own terms postpetition. (Bonding Mot. ¶ 5.)

## THE BONDING MOTION

14. On April 27, 2007, the Debtors filed the Bonding Motion, by which the Debtors seek approval of a surety credit agreement with Hartford to reinstate, for a limited period of time, 60 of the Prepetition Bonds having a face amount of approximately \$6.7 million (the "**Proposed Reinstated Bonds**").[1] (Bonding Mot. ¶ 8.) The Debtors assert in the Bonding Motion that these bonds, which will remain in effect for only 120 days or until September 21, 2007, are necessary

---

[1] The title of the Bonding Motion includes a request to supplement this Court's first-day order authorizing the Debtors to (i) continue all insurance policies and agreements relating thereto and (ii) continue certain premium financing arrangements relating thereto, and (iii) honor certain obligations in respect thereof pursuant to 11 U.S.C. §§ 105(a) and 363(b). It is unclear what relief the Debtors are seeking in this respect. While the Debtors suggest that the first-day order "arguably" authorizes the relief requested in the Bonding Motion, they have not requested in the Bonding Motion any specific changes to the first-day order. Further, the proposed form of order attached to the Bonding Motion does not reference the first-day order or propose any changes to it. For obvious reasons, the Committee does not agree that the first-day order authorized the Debtors to grant postpetition liens and superpriority claims to its surety providers and opposes any attempt by the Debtors to expand the present scope of that order.

5

to enable them to pursue going concern sales of their loan servicing and wholesale loan origination businesses. (Bonding Mot. ¶ 8.) The Debtors either have surrendered or will surrender the balance of the Prepetition Bonds (the "**Surrendered Prepetition Bonds**"). (Bonding Mot. ¶ 14.)

15.    Hartford has demanded and the Debtors propose to grant to Hartford cash collateral and various other protections as a condition to reinstatement. Specifically, the Debtors are requesting:

- authority to provide Hartford with $5 million of cash collateral (the "**Postpetition Collateral**") to serve as collateral for any reimbursement obligations under the Proposed Reinstated Bonds **and** the Surrendered Prepetition Bonds;

- that the Debtors' obligations under the Proposed Reinstated Bonds **and** the Surrendered Prepetition Bonds be joint and several obligations of all of the Debtors;

- that the Debtors' obligations under the Proposed Reinstated Bonds **and** the Surrendered Prepetition Bonds be secured by first priority liens in the Postpetition Collateral pursuant to section 364(c)(2) of the Bankruptcy Code; and

- that Hartford's claims for reimbursement be entitled to super administrative priority under section 364(c)(1) of the Bankruptcy Code, with priority over all other administrative claims other than the super administrative claims granted to the Debtors' postpetition lenders.

In addition, the proposed surety credit agreement attached as Exhibit A to the Bonding Motion (the "**Surety Credit Agreement**") reveals that the Debtors propose to reimburse Hartford for all costs and expenses incurred by Hartford in connection with the prepetition indemnity agreement, including without limitation all fees and expenses of Hartford's outside counsel incurred postpetition in connection with "all of the matters described herein." (Surety Credit Agreement ¶ 10.) The Debtors further propose that they be permitted to pay such fees and expenses "upon

6

accrual, without further order of Court and without the filing of any application, request for payment or claim." (Surety Credit Agreement ¶ 10.)

16.    It is unclear from the Bonding Motion when all, or, if claims are asserted, the balance of the Postpetition Collateral, will be released by Hartford and returned to the Debtors. The Surety Credit Agreement provides that Hartford has no obligation to release any of the Postpetition Collateral until Hartford "has received reasonable proof, reasonably acceptable to Hartford, that Hartford's obligations under the [Proposed Reinstated] Bonds . . . have been expressly released and discharged from all past, present or future claims or liability." (Surety Credit Agreement ¶ 7.) The Surety Credit Agreement also appears to contemplate that Hartford will retain the Postpetition Collateral until "the applicable suit limitation period has expired." (Surety Credit Agreement ¶ 7.)

17.    On information and belief, since the filing of the Bonding Motion, the Debtors have determined they no longer need all 60 of the Proposed Reinstated Bonds. The Committee has been informed that approximately $2.85 million of the Proposed Reinstated Bonds relate exclusively to the Debtors' loan origination business. Because the Debtors were unable to sell their loan origination assets as a going concern, the Debtors no longer have a need for these Proposed Reinstated Bonds.

18.    The Debtors have advised the Committee that they intend to file an amended Bonding Motion, pursuant to which the Debtors will seek authority to approve the proposed arrangement with Hartford or a more favorable transaction. The Committee has been informed that the Debtors have obtained at least one competitive quote from an alternative source since the Bonding Motion was filed. On information and belief, the quote is in a reduced face amount and will require the Debtors to post only $3.8 million in cash collateral. It is unclear whether and to

7

what extent this alternative transaction will involve the granting of liens, superpriority administrative claims and other extraordinary protections.

## OBJECTIONS

### A. Hartford Is Not Entitled to Extraordinary Cross-collateralization Protections.

19. The Hartford proposal appears to contemplate the transformation of Hartford's prepetition, unsecured indemnification and reimbursement claims against certain of the Debtors into postpetition superpriority claims against all of the Debtors secured by $5 million of Postpetition Collateral.[2] The facts and circumstances in this case do not justify granting such extraordinary cross-collateralization protections.

20. On information and belief, all or substantially all of the Prepetition Bonds are "occurrence based" bonds. Thus, to the extent any acts or omissions giving rise to claims under the Prepetition Bonds arose prior to the Petition Date or the termination of such bonds, Hartford is required to honor the draws and may assert general unsecured claims against the appropriate Debtor. Further, the amount of the Debtors' prepetition indemnification and reimbursement obligations potentially could be as high as $21 million – the face amount of the Prepetition Bonds. Such liability would exhaust the Postpetition Collateral and, in light of the joint and several liability requirement, expose **each** of the Debtors' estates to significant superpriority administrative claims. The scant consideration Hartford is providing the Debtors by agreeing to reinstate a fraction of the Prepetition Bonds for a relatively short period of time certainly does not justify the potential windfall that Hartford may receive if the Bonding Motion is approved, nor does it justify the potential prejudice to certain estates that may result from the imposition of

---

[2]     The Committee questions whether the Bonding Motion adequately discloses the Debtors' request to grant cross-collateralization protections to Hartford and otherwise complies with Del. Bankr. L.R. 4001-2.

8

127340.01600/40168910v.3

joint and several liability.

21.     For these reasons, the Bonding Motion should be denied. At a minimum, the Committee requests that that proposed form of order be revised to make clear that any indemnification or reimbursement obligations owing to Hartford for draws relating to acts and omissions that occurred prepetition, or prior to the approval of the Bonding Motion, be relegated to prepetition, unsecured claims against the appropriate Debtor or Debtors.

## B.     The Motion Should Be Denied To The Extent It Seeks Authority To Reinstate And/Or Secure Obligations Under Bonds That Are No Longer Needed.

22.     Many of the Proposed Reinstated Bonds are no longer needed and have no bearing on the success of these chapter 11 cases. Indeed, $2.85 million of the Proposed Reinstated Bonds apparently relate exclusively to the Debtors' loan origination business. As previously noted, the Debtors ceased originating loans prepetition, and their efforts to sell the loan origination assets as a going concern proved unsuccessful. Consequently, the Debtors no longer have a need to maintain or reinstate Prepetition Bonds to secure compliance with state regulations and licensing requirements governing loan origination.

23.     The Debtors should not be authorized to post cash collateral to secure reimbursement obligations, or grant other protections to Hartford, for bonds that simply are not needed. At a minimum, the Committee requests that the amount of the Postpetition Collateral be reduced by $2.85 million to account for the unnecessary bonds.

9

C.   **The Bonding Motion Lacks Appropriate Procedures And
     Safeguards With Respect To The Postpetition Collateral And
     The Reimbursement Of Hartford.**

24.   The Bonding Motion does not contain or contemplate adequate procedures and safeguards concerning the return of the Postpetition Collateral and the payment of reimbursement amounts to Hartford.

25.   The Bonding Motion appears to contemplate that Hartford will have the right to retain the Postpetition Collateral until it determines that (a) its obligations have been "released and discharged" and/or (b) the applicable statutes of limitation have expired. The Committee should not be forced to speculate as to how long the Postpetition Collateral will remain in Hartford's possession.

26.   In order to enable the Committee to adequately assess the impact of the Hartford proposal on the Debtors and their estates, Hartford should clarify whether creditor claims that are not asserted in accordance with, or prior to the deadlines established in, orders of this Court, including without limitation bar-date, rejection and/or confirmation orders, will be deemed to be "released and discharged" within the meaning of the Surety Credit Agreement. Hartford also should be required to identify the applicable statutes of limitations and the limitation periods prescribed by such statutes.

27.   In addition, the Committee requests that the form of order be revised to make clear that the Debtors, the Committee and/or their successors shall be entitled to proceed, in their discretion, by motion **or** adversary proceeding to seek the return of all or any portion of the Postpetition Collateral.

28.   The Bonding Motion also appears to contemplate that the Debtors will have the right, in their sole discretion, to pay all costs and expenses incurred by Hartford in connection with the prepetition indemnity agreement, including, potentially, all pre- and postpetition

10

127340.01600/40168910v.3

attorneys' fees and expenses incurred by Hartford. Hartford does not claim to have been a
prepetition secured creditor and is not entitled to payment of prepetition fees and expenses under
section 506(b) of the Bankruptcy Code. Hartford is entitled, at most, to assert a general
unsecured claim for fees and expenses incurred prior to the date of any order approving the
Bonding Motion. Further, all fees and expenses requested by Hartford, including without
limitation attorneys' fees, must be reasonable. The proposed form of order should be revised
accordingly.

29.    Finally, the Committee should be entitled to notice of, and afforded an
opportunity to object to, any request by Hartford for reimbursement or indemnity. Accordingly,
the Committee requests that the form of order be amended to (a) require that Hartford serve any
such request on Committee counsel, (b) afford the Committee ten (10) business days to respond
to a request and (c) provide that if no agreement is reached between Hartford and the Committee,
Hartford will be required to file with the Court a formal application for payment of any disputed
portion of the amounts requested by Hartford.

## D.    The Hartford Proposal Is Not In The Best Interests Of the Debtors' Estates And Creditors.

30.    The Hartford transaction, as presently proposed, is not in the best interests of the
Debtors' estates and creditors. As discussed above, the current Hartford proposal:

- will result in an unwarranted windfall to Hartford;
- has the potential to result in substantial superpriority administrative claims;
- will prejudice the estates of Debtors that have no loan servicing operations;
- will require the Debtors to post collateral to secure obligations under bonds that are no longer needed;
- will restrict the Debtors' ability to access $5 million of cash for an indefinite period of time; and

11

- will permit the Debtors to remit payments to Hartford, including reimbursement of attorneys' fees and expenses, with no Committee or Court oversight.

For these reasons, the Hartford proposal is clearly overreaching and inappropriate. Further, in light of recent developments, it appears that the Hartford proposal is not the best alternative available to the Debtors at this time. Accordingly, the Hartford proposal, as it is currently structured, should not be approved.

## RESERVATION OF RIGHTS

31.    The Debtors have not yet filed their amended Bonding Motion, and the Committee has not yet had an adequate opportunity to assess the alternative transactions that may be contemplated therein, or the potential impact such transactions may have on the Debtors' estates and creditors. The Committee leaves the Debtors to their burdens and reserve all rights with respect to any and all proposals for which the Debtors may seek approval at the hearing on the Bonding Motion.

12

**WHEREFORE**, the Committee respectfully requests that this Court deny the Bonding

Motion for the reasons set forth above and grant such other and further relief as if just and

proper.

Dated:   May 17, 2007

BLANK ROME LLP

Jasın Stail

Bonnie Glantz Fatell (No. 3809)
Jason W. Staib (No. 3779)
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:     (302) 425-6400
Facsimile:      (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Mark T. Power
488 Madison Avenue
New York, New York 10022
Telephone:     (212) 478-7200
Facsimile:      (212) 478-7400

*Proposed Co-Counsel to the Official
Committee of Unsecured Creditors of
New Century TRS Holdings, Inc., et al.*

13