# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., | : | Case No. 07-10416(KJC) |
| a Delaware corporation, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Related Docket No. 493 |
| | : | |
| | : | Hearing Date: 5/21/07 @ 10 a.m. (EDT) |
| | | Objection Deadline Extended to 5/17/07 |
| | | By Consent |

## LIMITED OBJECTION BY CREDITOR FIDELITY NATIONAL INFORMATION SERVICES, INC. TO DEBTORS' NOTICE OF NEW CENTURY'S INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE PROPOSED SALE OF ITS SERVICING BUSINESS AND THE FIXING OF CURE COSTS ASSOCIATED THEREWITH

Fidelity National Information Services, Inc., which includes, among others, Fidelity Field Services, Fidelity National Credit Services, Inc., Fidelity National Data Services, FNIS Real Estate Tax Services, LSI Title Company, LSI Credit, FIS Flood Services, LSI Appraisal, LLC, Hansen, RealEC, IDM and New Invoice (collectively, "FIS"), creditor and interested party in the above-captioned jointly administered cases, by and through its undersigned counsel, submits this limited objection ("Limited Objection") to the Debtors' Notice of Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases in Connection with the Proposed Sale of Its Servicing Business and the Fixing of Cure Costs Associated Therewith ("Cure Notice"). In support of this Limited Objection, FIS states as follows:

I.      **INTRODUCTION AND BACKGROUND**

Through the Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and

Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (I) Approving Bidding Procedures, Including Break-Up Fee and Expense Reimbursement Payable to Carrington Mortgage Services, LLC For Sale of Debtors' Servicing Business; (II) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Notice Thereof; and (III) Approving Procedures to Fix Cure Amounts Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Approving Notice Thereof (DKT 340) ("Bidding Procedures Order"), the Debtors seek to assume and assign certain contracts with FIS and its related entities (collectively, "FIS") identified in the Cure Notice.

In general, FIS has no objection to the Debtors' sale of the servicing business and may have no objection to the assumption and, ultimately, assignment of those contracts between FIS, on the one hand, and the Debtors, on the other, to the buyer. However, as set forth in further detail below, there are certain obstacles which prevent the Debtors from obtaining the relief sought as it relates to FIS, and FIS specifically reserves its rights as set forth below. They include:

- The identity of the eventual buyer/successful bidder is unknown, such that FIS cannot evaluate whether the assignee is suitable or capable of demonstrating adequate assurance of future performance;
- In certain instances, the Cure Notice includes FIS as a counterparty to multiple agreements but fails to provide any additional description or identifier so as to allow FIS to identify the specific contract to be assumed;
- Although a cure amount is identified for some of the FIS agreements, FIS believes that said cure amounts are understated and that it is owed no less than $2,493,182.99 from one or more of the Debtors; and
- The Bankruptcy Code precludes assumption and assignment of agreements involving licensed software because applicable non-bankruptcy law requires FIS's express consent to any assignment of such intellectual property.

## II. ARGUMENT

### A. The Ultimate Buyer/Assignee Cannot Be Identified and FIS Cannot Therefore Evaluate the Impact

Section 365(b) of the Bankruptcy Code sets forth specific prerequisites that must be met before a debtor in possession can assume and assign an executory contract. These prerequisites include, among other things, (1) curing any default under the contract, and (2) providing adequate assurance of future performance under the contract. The Debtors will not know until after the deadline to file this Limited Objection the identity of the purchaser/assignee.

FIS will continue to object to the Debtors' proposed assignment until the auction is completed, a successful bidder is identified, and a determination is made that the successful bidder can provide adequate assurance of future performance under the affected contracts. With the limited information provided, FIS cannot evaluate whether any of the prerequisites of 11 U.S.C. § 365(b) can be met, or how its pecuniary and proprietary interest may be affected by the sale.

In order to ensure adequate assurance of future performance by the successful bidder, FIS requests that the successful bidder first provide to FIS, at a minimum: (1) bona fide financials and (2) an executed agreement setting forth the terms of any assignment. As it now stands, FIS is unable to determine the creditworthiness or suitability/ability of a potential assignee to perform adequately, or whether the property involved can be assumed or assigned.

**B.     FIS Objects With Respect to the FIS Contract(s) Because the Cure Notice Fails to Provide for Payment of the Appropriate Cure Amount and Fails to Provide an Adequate Description of The Contract(s) to be Assumed and Assigned.**

As set forth in Exhibit "A"[1] attached hereto and incorporated herein by this reference, the Debtors owe FIS not less than $2,493,182.99 as part of the assumption. This sum, at a minimum, is a required cure amount that must be satisfied as a prerequisite to the assumption of the Debtors' contracts with FIS. *See* 11 U.S.C. § 365(b)(1). The Debtors cannot assume the relevant FIS contracts, if at all, at least until the appropriate cure amount is tendered.

**1.     The Debtors Mischaracterize, and/or Fail to Identify the Contracts with FIS That They Propose to Assume and Assign**

The Debtors' effort to assume and assign certain contracts with FIS suffers from a lack of precision in correctly and completely describing the contracts involved. As set forth in Exhibit "A," FIS has attempted to reconcile its internal records with the contracts listed by the Debtors in the Cure Notice. In some instances, FIS believes that, despite the inadequate information provided by the Debtors, FIS was able to correctly identify the relevant contract to be assumed. However, in other instances, the Cure Notice is too vague to be helpful, or to constitute notice. It fails to provide any additional description or identifying point. In some instances, no specific contract or ordering document is identified, making the reference too vague to be of any value. The description of these contracts is inadequate and omits critical information necessary to evaluate the propriety of the proposed assumption and assignment. FIS therefore is unable to identify, with certainty, which contracts the Debtors propose to assume and assign, and thus must object to the assumption and assignment.

---

[1] Because of the limited time and, in some instances, the inadequate description provided by the Debtors, FIS reserves its right to supplement or modify Exhibit "A" in order to add additional contracts and/or to modify the cure amounts set forth therein. FIS also assumes that the Debtors' intend to assume all contracts/agreements with FIS and its related entities.

### 2. FIS is Unable to Determine the Accuracy of the Cure Amount With Precision Due to the Inadequate Contract Descriptions

FIS demonstrated above that the Debtors have failed to identify specifically which contracts will be assumed and assigned. With the information provided, FIS is unable to confirm the accuracy of the cure amount in the Cure Notice. However, FIS believes that the current cure amount is no less than $2,493,182.99.[2] This amount, or a greater amount according to proof, must be paid prior to the assumption and assignment of contracts with FIS.

### C. The Debtors Cannot Assume or Assign Intellectual Property Agreements Over the Objection of the Owner

#### 1. FIS Has Not Consented to Assumption or Assignment

The Debtors may not assign the contracts involving intellectual property absent the consent of FIS to the Carrington Mortgage Services LLC (or any other third party acquirer) because "applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and ... such party does not consent to such assumption or assignment[.]" 11 U.S.C. §365(c)(1). *See In re Access Beyond Tech., Inc.*, 237 B.R. 32 (Bankr.D.Del. 1999); *In re Patient Educ. Media, Inc.*, 210 B.R. 237 (Bankr. S.D.N.Y. 1997). Moreover, a Chapter 11 debtor cannot assign its nonexclusive license to use copyrighted or patented materials without the licensor/owner's consent, even though such assignment would maximize assets available to creditors. *Id.* at 242-3.

---

[2] Because of the inadequacy of the contract descriptions provided by the Debtors in the Cure Notice, FIS cannot definitely state whether any breaches, other than a payment breach, exists under each of the contracts set forth on the attachment to this Objection. FIS reserves its right to assert any other breaches that may have occurred under each relevant agreement and reserves its right to withhold consent on the assumption/assignment of intellectual property rights.

As previously stated, FIS cannot determine to its satisfaction at this point whether it will consent to any assumption or assignment. Nevertheless, FIS has not and does not hereby consent to the assignment of any of the FIS contracts, including without limitation those contracts listed in the Cure Notice, involving FIS licensed software to any third party purchaser.

### 2. Assumption or Assignment Should be Rejected if the Debtors Cannot Satisfy Section 365

In these cases, some or all of the FIS contracts include the grant of a license of the software that is owned by FIS and is protected under Title 17 or Title 35 of the United States Code, and other applicable nonbankruptcy law. These laws mandate FIS's consent to the assignment of such intellectual property before the Court may authorize assumption or assignment of any of the FIS contracts that include the license of any of the software. *See In re Access Beyond Tech., Inc.*, 237 B.R. 32, 48 (Bankr.D.Del. 1999).

FIS may withhold its consent to any assumption or assignment of such contracts, or grant such consent on whatever terms it may determine in its sole discretion is appropriate under the circumstances. FIS has not consented (and hereby does not consent) to the assignment of any of the contracts, or the assumption and/or assignment of any of the licensed software in conjunction with the proposed sale of the Debtors' Servicing Business as referenced in the Cure Notice.

In the event the Court declines to deny or modify the assumption and assignment of the FIS contracts as discussed herein, FIS requests that the Court enter its order directing the Debtor to file and serve additional pleadings that include the following information: (1) the identity of the specific Agreements between the FIS entities (as referenced in the attached Exhibit "A") that Debtors desire to assume and assign, including the date of such contract and other information pertinent to identifying such contract; (2) an express notice of any intent by Debtors to assume and/or assign any of the FIS contracts affecting the FIS licensed software or a disclaimer of any

intent to assume and/or assign any such contracts, and (3) the legal authority by which Debtors contend they are authorized to assume/assign any or all of the FIS contracts.

If any of the FIS contracts are not assumed and assigned pursuant to FIS's consent (including curing defaults), FIS contends that such executory contract (and license granted therein) should be definitively rejected no later than ten (10) days after entry of the order approving the sale. FIS seeks this relief because it is concerned that if such contract or license is not promptly rejected, the Debtors and the Successful Bidder acquiring any assets that include the licensed software may effect a *de facto* assignment. Put another way, the Debtors, without complying with the prerequisites imposed on any assumption of intellectual property, would continue to reap the benefits under these agreements (*i.e.*, use of the licensed software) and pass such benefits through to the Successful Bidder in derogation of FIS's right to control the parties that utilize its licensed software and to receive payment for such license. This *de facto* assignment would circumvent all the requirements of §365 by permitting the Purchaser to receive all of the benefits of the licenses for as long as it chooses without ever having to become liable on the contract.

## III. CONCLUSION

The Debtors have failed to comply with the statutory prerequisites for assumption and assignment of the FIS contracts by (1) failing to identify the ultimate assignee, (2) failing to correctly identify the contracts and resultant cure payment required, (3) failing to provide adequate assurance of future performance, and (4) failing to obtain consent as to assumption/assignment of intellectual property. FIS also reserves its rights respecting assumption or assignment of any intellectual property rights. For these reasons, and all of those set forth above, FIS respectfully requests that the Court sustain this Objection, pending the

- 8 -

satisfaction of those issues set forth herein, to the extent that the Debtors seek to assume and assign Debtors' contracts with FIS, and grant FIS such other relief as appropriate.

Dated:  May 17, 2007

SMITH, KATZENSTEIN & FURLOW LLP

*/s/ Kathleen M. Miller*

Kathleen M. Miller (DE ID No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
302-652-8400
302-652-8405 Fax
kmiller@skfdelaware.com

- and -

Donald A. Workman (DC Bar # 443778)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036
Telephone:  (202) 861-1602
Facsimile:  (202) 861-1783