**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC., a** | : | **Case No. 07-10416 (KJC)** |
| **Delaware corporation, et al.,**[1] | : | |
| | : | **Re: Docket No. 70** |
| **Debtors.** | : | |
| | : | **Objection Deadline:  May 17, 2007 at 4:00 p.m.** |
| | : | **Hearing Date:  May 21, 2007 at 10:00 a.m.** |

**OBJECTION OF WELLS FARGO BANK N.A. TO ADEQUATE
ASSURANCE OF FUTURE PERFORMANCE IN CONNECTION WITH
EMERGENCY MOTION OF DEBTORS AND DEBTORS IN
POSSESSION FOR (I) AN ORDER (A) APPROVING BIDDING
PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE
PROPOSED SALE OF THEIR ASSETS USED IN LOAN SERVICING
BUSINESS, (B) SCHEDULING HEARING TO CONSIDER PROPOSED
SALE OF CERTAIN ASSETS AND APPROVING FORM AND MANNER
OF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF AND
(II) AN ORDER (A) APPROVING THE PROPOSED SALE AND (B)
GRANTING RELATED RELIEF**

Wells Fargo Bank N.A., as trustee, paying agent, registrar, and transfer agent ("*Wells*

*Fargo*") in connection with (i) Carrington Mortgage Loan Trust, Series 2006-NC1 Asset-Backed

Pass-Through Certificates; (ii) Carrington Mortgage Loan Trust, Series 2006-NC2 Asset-Backed

Pass-Through Certificates; (iii) Carrington Mortgage Loan Trust, Series 2006-NC3 Asset-

---

[1]     The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a California corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Backed Pass-Through Certificates; (iv) Carrington Mortgage Loan Trust, Series 2006-NC4 Asset-Backed Pass-Through Certificates; and (v) Carrington Mortgage Loan Trust, Series 2006-NC5 Asset-Backed Pass-Through Certificates (collectively, the "_Wells Securitization Trusts_"), by counsel, submits the following as its objection (the "_Objection_") to the adequate assurance of future performance provided to Wells Fargo, as trustee and on behalf of the securityholders of the Wells Securitization Trusts (the "_Securityholders_"), in connection with the Emergency Motion of Debtors and Debtors in Possession for (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Proposed Sale of Their Assets Used in Loan Servicing Business, (B) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and Manner of Notice Thereof and (C) Granting Related Relief and (II) an Order (A) Approving the Proposed Sale and (B) Granting Related Relief (Docket No. 70) (the "_Motion_"):

### Preliminary Statement

1.      Carrington Mortgage Services, L.L.C. (the "_Proposed Purchaser_") should not be approved as the purchaser of the mortgage loan servicing business (the "_Servicing Business_") of New Century TRS Holdings, Inc., and its affiliated debtors and debtors in possession (collectively, the "_Debtors_") because the Proposed Purchaser is not a qualified successor servicer under the requirements of those certain Pooling and Servicing Agreements, listed on the attached Exhibit A (collectively, the "_Pooling and Servicing Agreements_"), governing the Wells Securitization Trusts.  Specifically, despite Wells Fargo's efforts to seek clarification from the Proposed Purchaser, which was also the stalking horse bidder under the Motion, upon information and belief:

- the Proposed Purchaser is not currently, and has not provided Wells Fargo with adequate assurances that it will become in the future, qualified as a servicer by the Federal National Mortgage Association (Fannie Mae) or

the Federal Home Loan Mortgage Corporation (Freddie Mac).  Further, the Debtors themselves no longer are qualified as servicers by Fannie Mae or Freddie Mac;

- the Proposed Purchaser has not confirmed that, as a result of the Proposed Purchaser's assumption of the obligations of the servicer, the ratings agencies that rate the relevant securities (the "*Rating Agencies*") will not qualify, reduce or withdraw their ratings for the securities issued by the Wells Securitization Trusts;

- the Proposed Purchaser is not currently, and has not provided Wells Fargo with adequate assurances that in the future it will become, licensed to operate as a servicer in accordance with the applicable state laws in the required states.  Further, the Debtors themselves no longer have the licenses required to service mortgage loans under applicable state laws in a number of states, and the Proposed Purchaser also does not have these licenses; and

- the Proposed Purchaser has failed to provide evidence that it meets the minimum net worth requirements to act as successor servicer.[2]

2.    The Debtors themselves currently do not meet the servicer eligibility standards of the Pooling and Servicing Agreements, and the Proposed Purchaser has not provided adequate assurance, whether through the acquisition of the Debtors' Servicing Business or otherwise, that it will meet the servicer eligibility standards in the future.  Thus, the approval of the Proposed Purchaser as a successor servicer under the Pooling and Servicing Agreements would result in both an immediate breach of the Pooling and Servicing Agreements and the violation of numerous state laws.

3.    Further, the Proposed Purchaser's offer is materially deficient because it purportedly attempts to relieve the Proposed Purchaser of certain obligations under the Pooling

---

[2]    The requirements for the successor servicer under the Pooling and Servicing Agreements are set forth in two sections of the Pooling and Servicing Agreements, one related to appointment stemming from a default and the other related to mergers or consolidations.  The requirements identified in this list apply to both of these sections, except for the net worth requirement, which only applies to the extent the successor servicer is appointed under the default section.  While Wells Fargo believes that the requirements of the default section apply, to the extent they do not, all of the requirements other than the net worth requirement remain applicable.

and Servicing Agreements, thereby impermissibly modifying the Pooling and Servicing Agreements and failing to provide Wells Fargo with adequate assurance that all servicer liabilities and obligations under the Pooling and Servicing Agreements will be performed in the future.

## General Background

4.      On April 2, 2007 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "*Bankruptcy Code*").

5.      On April 4, 2007, the Debtors filed the Motion.  In the Motion, the Debtors requested approval of (i) bidding procedures and overbid protections, including an expedited sale process, and (ii) the sale of the Servicing Business.

6.      On April 9, 2007, the Office of the United States Trustee appointed the members of the Official Committee of Unsecured Creditors (the "*Committee*").

7.      On April 19, 2007, the Debtors filed that certain Amended and Restated Asset Purchase Agreement between (among others) New Century Financial Corporation, the Proposed Purchaser and Carrington Capital Management, LLC (the "*APA*").

8.      On April 20, 2007, the Court entered the Order (I) Approving Bidding Procedures, Including Break-Up Fee and Expense Reimbursement Payable to Carrington Mortgage Services, LLC for Sale of Debtors' Serving Business; (II) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Notice Thereof; and (III) Approving Procedures to Fix Cure Amounts Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Approving Notice Thereof (the "*Procedures Order*").

9.      On May 14, 2007, Wells Fargo filed the Objection of Wells Fargo Bank N.A. to Cure Amounts in Connection With Emergency Motion of Debtors and Debtors in Possession for

(I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Proposed Sale of Their Assets Used in Loan Servicing Business, (B) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and Manner of Notice Thereof and (C) Granting Related Relief and (II) an Order (A) Approving the Proposed Sale and (B) Granting Related Relief (the "*Cure Objection*").  In the Cure Objection, Wells Fargo objected to the Motion because, *inter alia*, the cure amounts proposed by the Debtors for the Pooling and Servicing Agreements are inadequate.  The Cure Objection is incorporated by reference herein.

10.    On May 16, 2007, the Debtors held an auction for the sale of the Servicing Business (the "*Auction*").  At the conclusion of the Auction, the Debtors concluded that the Proposed Purchaser had submitted the highest and best bid for the Servicing Business.

### Securitization Generally

11.    "Securitization" is a process in which income-producing assets such as mortgage loans or accounts receivable are pooled, then sold to a trust or other "bankruptcy remote" special purpose entity that issues non-recourse securities collateralized or otherwise "backed" by the pool of income-producing assets.  Payments on the securities are made with income collected on the assets, and the purchase price for the assets is funded with the proceeds from the issuance of such securities.

12.    Frequently, the originator/seller in a securitization retains the right to service the income-producing assets following their sale.  Because the originator/seller sells the pool of income-producing assets in a transaction that constitutes a "true sale," however, the originator/seller does not retain an equitable ownership interest in such assets.  Accordingly, upon a bankruptcy of the originator/seller, only the originator/seller's retained servicing rights constitute property of the debtor's bankruptcy estate under section 541(a)(1) of the Bankruptcy

Code; the equitable ownership interest in the income-producing assets itself is excluded from the bankruptcy estate under section 541(d) of the Bankruptcy Code.

13.     Securitization thus isolates the creditworthiness of the income-producing assets from the bankruptcy risk of the originator/seller, enabling nationally recognized statistical credit rating agencies such as Standard & Poor's Ratings Group and Moody's Investor Services, Inc. to assign credit ratings to the securities backed by the income-producing assets based exclusively on the credit quality of the assets themselves without reference to the originator/seller's credit rating.  This promotes access to the capital markets at a lower cost of funds.

## The Wells Securitization Trusts

14.     Wells Fargo is trustee, *inter alia*, for the Wells Securitization Trusts.   In this capacity, it has a contractual obligation to act on behalf of and in the best interests of the Securityholders.  This obligation includes (i) ensuring that only qualified servicers service the mortgage loans held by the Wells Securitization Trusts and (ii) enforcing liabilities and obligations of other parties regarding the Pooling and Servicing Agreements, such as potential repurchase obligations of the originator/seller, depositor or servicer upon certain breaches of representations and warranties under the Pooling and Servicing Agreements and the related mortgage loan purchase agreements described below.

15.     Pursuant to the Pooling and Servicing Agreements, the Debtors securitized five separate pools of subprime residential mortgage loans (each, a "*Mortgage Loan*"; collectively, the "*Mortgage Loans*") for which Wells Fargo serves as the trustee, paying agent, registrar, and transfer agent.  The Debtors either originated or purchased each of the Mortgage Loans prior to securitization.

16.     The Debtors effected these securitizations by selling the respective Mortgage Loans to certain entities affiliated with each of Carrington Capital Management, LLC ("*Carrington*") and the Proposed Purchaser, which then sold such Mortgage Loans and transferred certain related rights, pursuant to the Pooling and Servicing Agreements, to securitizations trusts for which Wells Fargo acts as trustee.

17.     More particularly, under certain mortgage loan purchase agreements listed on the attached Exhibit B (collectively, the "*Wells MLPAs*"), Carrington Securities, LP (the "*Seller*"), an affiliate of Carrington and the Proposed Purchaser, first sold the respective Mortgage Loans to Stanwich Asset Acceptance Company, L.L.C. (the "*Depositor*"), another affiliate of Carrington and the Proposed Purchaser.  Under the Wells MLPAs, both the Seller and Debtor NC Capital Corporation (the "*Responsible Party*") made certain representations and warranties about the Mortgage Loans and the completeness of the related Mortgage Loan files.

18.     Under the Pooling and Servicing Agreements, the Depositor then sold the Mortgage Loans to Wells Fargo in its capacity as trustee and on behalf of the Securityholders.  In addition, under the Pooling and Servicing Agreements, the Depositor assigned its ability to enforce the Mortgage Loan document delivery requirements and the various representations and warranties under the Wells MLPAs to Wells Fargo in its capacity as trustee.  Consequently, Wells Fargo has the right to enforce the Mortgage Loan document delivery requirements and representations and warranties under the Wells MLPAs.

19.     Pursuant to each of the Pooling and Servicing Agreements, the related Wells Securitization Trusts issued a series of mortgage-backed securities (collectively, the "*Securities*") to the Securityholders, the purchasers of the Securities.  The payments due on each series of

Securities are funded, directly or indirectly, by payments of principal and interest by obligors on the Mortgage Loans.

20.    The Pooling and Servicing Agreements provide that New Century Mortgage Corporation ("*NC Mortgage*"), one of the Debtors, retains the right to service the Mortgage Loans.  In this capacity, NC Mortgage collects payments from obligors on the Mortgage Loans, remits payments to Wells Fargo, in its capacity as trustee, provides delinquency and other informational reports, deals with delinquent obligors on the Mortgage Loans and when necessary, forecloses and otherwise enforces the Mortgage Loans on behalf of the Wells Securitization Trusts for the benefit of the Securityholders.  As compensation for servicing, NC Mortgage receives fees calculated as a percentage of the outstanding balance of the Mortgage Loans and other ancillary income such as late payment charges and assumption fees.

21.    The servicing of the Mortgage Loans has a direct and material effect on the financial performance of the Wells Securitization Trusts.  Consequently, the Pooling and Servicing Agreements provide minimum standards for qualified servicers to ensure that the Mortgage Loans are adequately serviced in accordance with industry standards.  Thus, the qualifications of the servicer and its demonstrated ability to perform the servicing obligations are critically important to preserving the value of the investments of the Securityholders, to whom Wells Fargo owes contractual duties.

22.    NC Mortgage's servicing rights to the Wells Securitization Trusts are among the assets the Debtors are attempting to sell through the Motion.  Accordingly, by the Motion the Debtors seek authority to sell their respective servicing rights under, *inter alia*, the Pooling and Servicing Agreements free and clear of all liens and other encumbrances.  By the Motion, the Debtors also seek authority to assume their obligations and to assign all of their rights, including

without limitation the servicing rights, under the Pooling and Servicing Agreements to the purchaser of the Servicing Business pursuant to section 365 of the Bankruptcy Code.

### Argument

23.     The Proposed Purchaser should not be approved as the purchaser of the Servicing Business because it does not meet the requirements for a successor servicer under the terms of the Pooling and Servicing Agreements.   In particular, despite Wells Fargo's efforts to seek clarification from the Proposed Purchaser,

- the Proposed Purchaser is not currently, and has not provided Wells Fargo with adequate assurances that it will become in the future, qualified as a servicer by Fannie Mae or Freddie Mac.  Further, the Debtors themselves no longer are qualified as servicers by Fannie Mae or Freddie Mac;

- the Proposed Purchaser has not confirmed that, as a result of the Proposed Purchaser's assumption of the obligations of the servicer, the Ratings Agencies will not qualify, reduce or withdraw their ratings for the Securities issued by the Wells Securitization Trusts;

- the Proposed Purchaser is not currently, and has not provided Wells Fargo with adequate assurances that in the future it will become, licensed to operate as a servicer in accordance with the applicable state laws in the required states. Further, the Debtors themselves no longer have the licenses required to service mortgage loans under applicable state laws in a number of states, and the Proposed Purchaser also does not have these licenses; and

- the Proposed Purchaser has failed to provide evidence that it meets the minimum net worth requirements to act as successor servicer.

24.     Thus, the approval of the Proposed Purchaser as a successor servicer under the Pooling and Servicing Agreements would result in both an immediate breach of the Pooling and Servicing Agreements and the violation of numerous state laws.   Moreover, the Proposed Purchaser's offer is deficient because it purportedly attempts to relieve the Proposed Purchaser of certain obligations under the Pooling and Servicing Agreements, thereby impermissibly modifying the Pooling and Servicing Agreements and failing to provide adequate assurance that

all servicer liabilities and obligations under the Pooling and Servicing Agreements will be performed in the future.

25.     Prior to assigning the Pooling and Servicing Agreements to the Proposed Purchaser as successor servicer, the Debtors must provide Wells Fargo with adequate assurance of future performance of the Proposed Purchaser under the Pooling and Servicing Agreements. *See* 11 U.S.C. 365(f)(2)(B); *see, e.g.*, *Cinicola v. Scharffernberger*, 248 F.3d 110, 120 (3d Cir. 2001). Although the term 'adequate assurance of future performance' is not defined in the Bankruptcy Code, the Third Circuit has indicated that 'adequate assurance of future performance' is "intended to be given a practical, pragmatic construction." *Cinicola*, 248 F.3d at 120 n.10 (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir. 1985)).

26.     More particularly, the term 'adequate assurance of future performance' is taken from Section 2-609 of the Uniform Commercial Code, and the Commentaries to the Uniform Commercial Code note that "adequate assurance is to be defined by commercial rather than legal standards." *Cinicola*, 248 F.3d at 120 n.10 (quoting *Richmond Leasing*, 762 F.2d at 1309-10 (internal quotations omitted)). Moreover, under the Uniform Commercial Code, "[w]hat constitutes 'adequate assurance' is to be determined by factual conditions; the seller must exercise food faith and observe commercial standards; his satisfaction must be based on reason and must not be arbitrary or capricious." *Cinicola*, 248 F.3d at 120 n.10 (quoting *Richmond Leasing*, 762 F.2d at 1309-10).

27.     Applying the *Cinicola* standard to this context, the factual conditions and commercial standards for future performance are established by the terms of the Pooling and Servicing Agreements, terms that are reflective of well-established industry standards and

applicable state law.  Based on the facts before the Court, the Proposed Purchaser has not complied with the successor servicer requirements of the Pooling and Servicing Agreements, and thus, has not carried its burden of demonstrating adequate assurance of future performance.

### A.    The Proposed Purchaser Is Not an Appropriate Purchaser

28.    The Pooling and Servicing Agreements contain eligibility requirements for entities that service the Mortgage Loans in the Wells Securitization Trusts.  The Proposed Purchaser does not meet these eligibility requirements for a servicer under the Pooling and Servicing Agreements.  In particular, the Proposed Purchaser (i) is not approved as a mortgage loan servicing institution by Fannie Mae or Freddie Mac; (ii) has failed to confirm that the Proposed Purchaser becoming the servicer will not cause the Ratings Agencies to qualify, reduce or withdraw their ratings regarding the Securities; (iii) has failed to confirm that it is or will be licensed, and therefore, authorized to service the Mortgage Loans under the applicable state laws; and (iv) has failed to provide evidence of its net worth.

29.    Moreover, upon information and belief, prior to the Petition Date NC Mortgage itself ceased to be an eligible servicer under the terms of the Pooling and Servicing Agreements because it no longer was an approved Fannie Mae or Freddie Mac servicer, and it had its mortgage loan servicing license revoked in several states.  Accordingly, the Proposed Purchaser cannot rely on the rights it would obtain upon the acquisition of the Servicing Business to comply with the eligibility requirements of the Pooling and Servicing Agreements.

30.    Based on the Proposed Purchaser's failure to comply with the eligibility requirements of the Pooling and Servicing Agreements, Wells Fargo has no assurance that the Proposed Purchaser will be able to service the Mortgage Loans in accordance with the Pooling and Servicing Agreements and industry standards, which will have a materially adverse effect on the value of the Securities.

31.     In addition, Wells Fargo solicited information from the Proposed Purchaser with respect to its adequate assurance of future performance.  The Proposed Purchaser, however, has failed to adequately provide the information requested by Wells Fargo.

32.     Specifically, on April 16, 2007, Wells Fargo sent a letter to the Proposed Purchaser and Carrington requesting information regarding its adequate assurance of future performance (the "*April 16th Letter*").  In the April 16th Letter, Wells Fargo asked for a detailed description of the Proposed Purchaser's plans and timing for the acquisition of the Servicing Business, including the following:

    a.    copies of all final schedules and exhibits to the asset purchaser agreement between the Debtors and the Proposed Purchaser,

    b.    a description of the servicing facilities, personnel and systems to be acquired by the Proposed Purchaser, including a functional organizational chart and any plans to engage the Debtors or any other party as an interim servicer or subservicer,

    c.    plans and timetable for securing required licenses and approvals to act as servicer under the pooling and servicing agreements,

    d.    satisfaction of net worth and all other requirements of successor servicer under the pooling and servicing agreements (e.g. a copy of the audited financial statements of Carrington and its affiliates for the last fiscal year),

    e.    a copy of any servicer assessment and attestation provided by either the Debtors or the Proposed Purchaser for the calendar year 2006 or any portion thereof in accordance with Item 1122(d) of SEC Regulation AB and an explanation of any exceptions detailed therein and related remedial actions, and

    f.    capitalization and financing plans for the Proposed Purchaser's servicing operations.

33.     As of May 16, 2007, a month after sending the April 16th Letter, other than the schedules filed with the APA, the only substantive response from the Proposed Purchaser or

Carrington to Wells Fargo's requests was a letter dated April 18, 2007 (the "*April 18th Letter*").[3] Neither the schedules filed with the APA nor the April 18th Letter identified the specific information regarding assurances of future performance requested by Wells Fargo. As a result, Wells Fargo has not received the specific assurances of future performance it requested from the Proposed Purchaser.

34.     Consequently, not only has the Proposed Purchaser failed to comply with the servicing eligibility requirements of the Pooling and Servicing Agreements, but the Proposed Purchaser has chosen not to supply Wells Fargo with the assurances of future performance which Wells Fargo specifically requested.

### B.     The Proposed Purchaser's Offer Is Deficient

35.     Additionally, the Proposed Purchaser's offer materially is deficient because it purports to relieve the Proposed Purchaser of certain obligations under the Pooling and Servicing Agreements, thereby impermissibly modifying the Pooling and Servicing Agreements. Not only are such modifications impermissible under section 365 of the Bankruptcy Code, but any such modifications clearly would result in Wells Fargo not receiving adequate assurance of future performance.

36.     As set forth more fully in the Cure Objection, the APA purports to attempt to relieve the servicer, or other parties, from certain liabilities and obligations under the Pooling and Servicing Agreements, including liabilities and obligations that may exist as of the closing date of the sale of the Servicing Business. To the extent the APA purports to attempt to relieve the

---

[3]     In the April 18th Letter, Carrington indicated that it was furnishing the information therein on the condition that Wells Fargo's Corporate Trust Services Department not share the April 18th Letter, directly or indirectly, with anyone else employed by Wells Fargo in other departments. As a result, Wells Fargo has not attached the April 18th Letter to this Objection. Upon the consent of Carrington, Wells Fargo will provide copies of the April 18th Letter to parties upon request.

servicer, or any other parties, from liabilities and obligations under the Pooling and Servicing Agreements and the Wells MLPAs, Wells Fargo will not receive adequate assurance of future performance because the APA would not provide any assurance that the relieved liabilities and obligations would be performed.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **Conclusion**

WHEREFORE, Wells Fargo respectfully requests that this Court (a) deny the Motion unless and until the order approving the Motion is amended to address the issues raised herein and any issues raised at the hearing scheduled to be held on April 21, 2007, ensuring that any successor to the Servicing Business will be able to provide adequate assurance of future performance as required by 11 U.S.C. § 365; or (b) at a minimum (i) require the Proposed Purchaser to report to the Court that it has met the servicer eligibility requirements of the Pooling and Servicing Agreements by the closing date on the sale of the Servicing Business, (ii) require the Proposed Purchaser to provide weekly updates to Wells Fargo that detail the Proposed Purchaser's progress to date in meeting, and the steps the Proposed Purchaser intends to take that week to meet, the servicer eligibility requirements of the Pooling and Servicing Requirements and (iii) require the Debtors to escrow a reasonable amount of the proceeds from the sale of the Servicing Business to compensate Wells Fargo, as trustee and on behalf of the Securityholders, for its expenses in connection with ensuring that any successor servicer meets the minimum eligibility requirements of the Pooling and Servicing Requirements.

Dated:  May 17, 2007

Respectfully submitted,

HUNTON & WILLIAMS LLP

/s/ Jason W. Harbour
Peter S. Partee (PP-0766)
200 Park Avenue, 53rd Floor
New York, New York  10166-0136
(212) 309-1000

and

Benjamin C. Ackerly (Va. Bar No. 09120)
J.R. Smith (Va. Bar No. 41913)
Jason W. Harbour (DE Bar No. 4176, Va. Bar No. 68220)

15

Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219-4074
(804) 788-8200

and

Michael Busenkell (DE Bar No. 3933)
Eckert, Seamans, Cherin & Mellot, LLC.
300 Delaware Avenue
Suite 1210
Wilmington, Delaware  19801

Counsel to *Wells Fargo Bank N.A.*

16