## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416(KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Hearing Date: May 21, 2007 at 10:00 a.m.** |
| | : | |
| | : | **Re: Docket No. 450** |

## AMENDMENT TO MOTION FOR ORDER (I) AUTHORIZING THE PURCHASE OF SURETY BONDS, (II) AUTHORIZING POSTING SECURITY FOR SURETY BONDS AND CREDIT, (III) AUTHORIZING THE EXTENSION OF POSTPETITION SECURED SURETY CREDIT, AND (IV) GRANTING ADMINISTRATIVE CLAIMS AND TO SUPPLEMENT ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION TO (I) CONTINUE ALL INSURANCE POLICIES AND AGREEMENTS RELATING THERETO AND (II) CONTINUE CERTAIN PREMIUM FINANCING ARRANGEMENTS RELATING THERETO, AND (III) HONOR CERTAIN OBLIGATIONS IN RESPECT THEREOF PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by

and through their undersigned counsel, hereby request the entry of an order authorizing NCF and

New Century Mortgage Corporation ("NCMC") to enter into certain post-petition bonding

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

arrangements pursuant to section 105(a) and 364(c) of Title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code") and supplementing the Order (the "First Day Order") Authorizing the Debtors and Debtors-In-Possession to (I) Continue All Insurance Policies and Agreements Relating Thereto, (II) Continue Certain Premium Financing Arrangements Relating Thereto, and (III) Honor Certain Obligations in Respect Thereof Pursuant to 105(a) and 363(b) of the Bankruptcy Code. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.       This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b).

2.       The bases for the relief requested herein are sections 105(a), 363(b) and 364(c) of the Bankruptcy Code.

## BACKGROUND

3.       On April 27, 2007, the Debtors filed the Motion for Order (I) Authorizing the Reinstatement or Extension of Cancellation Notice Period of Prepetition Surety Bonds, (II) Authorizing Posting Security for Surety Bonds and Credit, (III) Authorizing the Extension of Postpetition Secured Surety Credit, and (IV) Granting Postpetition Liens, Junior Super-Priority Administrative Claims and Administrative Claims and to Supplement Order Authorizing the Debtors and Debtors in Possession to (I) Continue all Insurance Policies and Agreements Relating Thereto and (II) Continue Certain Premium Financing Arrangements Relating Thereto, and (III) Honor Certain Obligations in Respect Thereof Pursuant to Sections 105(a) and 363(b)

2

of the Bankruptcy Code (the "Initial Motion"). The Debtors filed the Initial Motion in order to obtain surety bonds that are essential to continuing to operate its servicing (and at the time, loan origination) businesses. Without these surety bonds, the Debtors would lose their state licenses to conduct these businesses and the going concern auctions of these operations would be extremely difficult if not impossible. Thus, it was critical that the Debtors develop a means to keep in place surety bonds, and hence licenses, pending a close of the proposed sales of their servicing and loan origination businesses. In the Initial Motion, the Debtors sought approval to enter into the Bond Reinstatement Agreement (as defined in the Initial Motion) with Hartford Fire Insurance Company and its subsidiaries ("The Hartford") to reinstate or extend certain bonds so that the Debtors can maintain licenses to operate their servicing and loan origination platforms pending sale. The Hartford was willing to extend the critical surety bonds through September 21, 2007 in return for cash collateral of $5,000,000, a postpetition lien and junior administrative claim all pursuant to a proposed Bond Reinstatement Agreement. In addition, The Hartford insisted that this cash collateral and administrative priority support not only the new bonds it would issue, but also its prepetition bonds.

4.       After filing the Initial Motion, the Debtors attempted to auction their loan origination platform as a going concern but did not attract any bidders. As a result, the Debtors no longer need to maintain licenses to support their loan origination business. This reduced the Debtors' bonding requirement from approximately $6,900,000 to approximately $3,700,000. The Debtors approached The Hartford to revise the Bond Reinstatement Agreement to reflect the Debtors' reduced need for surety bonds. Initially, the Hartford was unwilling to reinstate or extend the surety bonds after May 21, 2007 for less than $5,000,000 in cash collateral.

3

5.    As a result, the Debtors sought alternative sources of the surety bonds needed to maintain the servicing platform licenses. The Debtors contacted bond brokers and surety companies and believe that, through a bond broker Willis of Arizona, Inc. ("Willis") they have located a viable and superior alternative. Bond Safeguard Insurance Company and Lexon Insurance Company ("Bond Safeguard") have agreed to provide the needed surety bonds in exchange for a cash deposit equal to the face amount of the bonds -- approximately $3,700,000[2] -- and an administrative claim. In addition, the bonds that Bond Safeguard proposes to issue will have a one year expiry date, which will give the Debtors greater flexibility if the winner of the auction of their servicing business needs to have the Debtors provide transition services beyond September 21, 2007. Since Bond Safeguard did not issue any prepetition bonds, its proposal is not tied to providing support for any existing bonds.

6.    Between now and the hearing, the Debtors intend to continue to explore alternative approaches with The Hartford, Bond Safeguard, Willis and perhaps others. The Debtors have consulted with the Committee of Unsecured Creditors (the "Committee") regarding these developments and will continue to work closely with the Committee. Of paramount importance, the Debtors will do their utmost to ensure that they maintain their bonding and therefore licenses critical to closing a sale of their servicing business. But the Debtors hereby seek authority to present at the hearing a superior proposal for achieving that objective.

## RELIEF REQUESTED

7.    By this amendment to the Motion, the Debtors seek, *inter alia*, the entry of

---

[2] The Debtors are continuing to work with state regulators to ensure that bonds are needed to maintain licenses for the servicing business in each of the states on the schedule. It is possible that some of the bonds may be dropped if the Debtors receive confirmation that no bond is required. If that occurs, there will be a corresponding reduction in the cash delivered to support the bonds.

an order (the "Order") pursuant to sections 105(a), 363(b) and 364(c) of the Bankruptcy Code, authorizing NCF and NCMC to enter into agreements that provide the optimal means of obtaining the bonds needed to operate the Debtors' loan servicing business pending sale, including agreements with The Hartford described in the Initial Motion or a superior alternative, including agreements with Bond Safeguard. If the Bond Safeguard alternative proves optimal, the Debtors will seek entry of an order:  (i) authorizing NCF and NCMC to enter into the Collateral Trust Agreement (the "Agreement") substantially in the form attached hereto as Exhibit "A" to purchase the bonds listed on the attachment to the Agreement (the "Bonds"), (ii) authorizing NCF and NCMC to enter into the General Agreement of Indemnity (the "Indemnity Agreement") substantially in the form attached hereto as Exhibit "B", (iii) authorizing NCF and NCMC to post security for surety bonds and credit, (iv) authorizing NCF and NCMC to extend postpetition secured surety credit and (v) granting administrative claims.  In the First Day Order, the Court authorized the Debtors to enter into new bonds.  It is arguable that entering into the Agreement would be authorized by the First Day Order.  But in order to ensure that it receives the benefit of the Agreement, Bond Safeguard understandably requested that the Debtors obtain an order approving the Agreement.

        8.      The Debtors will surrender and/or terminate all other bonds that are not necessary for it to remain licensed to service mortgage loans in those states where a license is required (the "Surrendered Bonds").  All such Surrendered Bonds would be cancelled upon the earlier of (i) May 21, 2007 per previous agreement with The Hartford, and (ii) the cancellation date set forth in cancellation notices previously sent by The Hartford and as shown on Schedule B of the Hartford Agreement.

5

9.      If Bond Safeguard's proposal is implemented, New Century's obligations to reimburse Bond Safeguard for any draws under the Bonds would be (i) entitled to administrative priority under Bankruptcy Code section 364(b) and 503(b)(1), and (ii) approximately $3.726 million of cash will be deposited with Bond Safeguard to support NCF and NCMC's reimbursement obligations for any draws under these Bonds.

10.      Clearly, the Debtors need to maintain the Bonds in order to maximize the value of the estates' assets through the proposed going-concern sale of their servicing business.

## APPLICABLE AUTHORITY

11.      The Debtors set forth the applicable authority in the Initial Motion and do not burden the Court with a repetition of it here.

## NOTICE

12.      No trustee  has been appointed in these chapter 11 cases and the appointment of an examiner awaits the entry of an order and the selection of an examiner, which will occur after the hearing on this Motion.  Notice of this Amendment to the Initial Motion has been provided to:  (1) the Office of the United States Trustee for the District of Delaware, (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' post-petition senior secured lenders; (3) the Official Committee of General Unsecured Creditors; (4) The Hartford, (5) Bond Safeguard, (6) Willis, and (7) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

6

13.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

### NO PRIOR REQUEST

14.    Other than the Initial Motion, which is hereby amended, no previous motion for the relief sought herein has been made to this or any other Court.

7

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit "C", granting the relief requested herein and such other further relief the Court deems just and proper.

Dated:  May 17, 2007
        Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

8