## EXHIBIT B

Bond Safeguard Insurance Company
Lexon Insurance Company
Lombard, Illinois

**GENERAL AGREEMENT OF INDEMNITY**

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and/or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois herein called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the Company to execute such bonds, and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable considerations, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising therefrom, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Contractor to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with cosureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, cosureties, and reinsurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMITORS— SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH

IN TESTIMONY WHEREOF, the Indemnitors have hereunto set their hands and affixed their seals this

_____ day of _____ 2007.

Addresses:

New Century Financial Corporation

18400 Von Karman, Suite 1000
Irvine, CA 92612                    By:_____(L.S.)
                                        Bradley Alexander Morrice, President and CEO

New Century Mortgage Corporation

18400 Von Karman, Suite 1000
Irvine, CA 92612                    By:_____(L.S.)
                                        Bradley Alexander Morrice, President, Chief Executive
                                        Officer and Director