## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Related Docket Nos. 70. 670 & 754 |
| | : | |

### RESPONSE OF CARRINGTON CAPITAL MANAGEMENT, LLC AND CARRINGTON MORTGAGE SERVICES, LLC TO (I) OBJECTION OF WELLS FARGO BANK N.A. TO CURE AMOUNTS; AND (II) OBJECTION OF WELLS FARGO BANK N.A. TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

Carrington Capital Management, LLC ("CCM") and Carrington Mortgage Services, LLC ("CMS", and together with CCM, "Carrington"), by and through their undersigned attorneys, respectfully submit the following response to: (i) the Objection of Wells Fargo[2] to Cure Amounts in Connection with the Emergency Motion (the "Sale Motion") of Debtors and Debtors in Possession for: (i) an Order (a) Approving Bidding Procedures and Bid Protections in Connection With the Proposed Sale of Their Assets Used in Loan Servicing Business, (b) Scheduling Hearing to Consider Proposed Sale of Certain Assets and Approving Form and Manner of Notice Thereof and (C) Granting Related Relief and (II) and Order (A) Approving the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

[2] Defined terms not expressly defined herein shall have the same meaning given to them in the Wells Fargo Objections.

Proposed Sale and (B) Granting Related Relief (the "Cure Objection") [Docket No. 670]; and (ii) the Objection of Wells Fargo to Adequate Assurance in connection with the Sale Motion (the "Adequate Assurance Objection" and, together with the Cure Objection, the "Wells Fargo Objections") [Docket No. 754].

## PRELIMINARY STATEMENT

1. Since the Petition Date, and even in the weeks preceding it, Carrington has expended enormous time and effort to review and familiarize itself with all the material aspects of the Debtors' Servicing Business.  A key aspect of that process has been Carrington's comprehensive review of each of the Pooling and Servicing Agreements (the "PSAs") and other servicing agreements, pursuant to which New Century Mortgage Corporation ("NCMC") currently acts as servicer, so that Carrington could determine what steps need to be taken, as a contractual matter, for Carrington to acquire of the Servicing Business and consequently step into the role of servicer under the PSAs.  Because Carrington contemplates acquiring all or substantially all of the assets of NCMC as servicer under the merger or consolidation provisions of the related transaction documents, this is not a successor servicer situation (which Wells Fargo appears to misapprehend in its objections).  Accordingly, Carrington is required to satisfy only the provisions of Section 6.02 of the various PSAs; a representative example of Section 6.02 is attached as Exhibit A hereto.  Carrington is highly confident that it will meet such criteria on or before the closing date, as it has communicated repeatedly to both the Debtors and the Committee and to Wells Fargo.

2. However, Carrington has not simply relied on the fact that it need only meet these contractual requirements.  Instead, it also has reached out to the two indenture trustees, Wells Fargo and Deutsche Bank National Trust Company ("DBNTC" and, together with Wells Fargo, the "Trustees"), who represent the interests of the holders of the Securities issued pursuant to the

2

various New Century-related securitizations, on several occasions to provide additional financial and operational information about Carrington to the Trustees. In a letter to Wells Fargo dated April 18, 2007 (the "April 18 Letter"), Carrington provided Wells Fargo with, among other things: (i) the plan and timetable for CMS to secure the licenses and approvals to act as servicer under the PSAs; (2) summary financials from CCM and Carrington Investment Partners, LP, the fund for which CCM acts as general partner; and (3) the proposed functional organizational chart for the Carrington entities. If any objection from the Trustees to assumption and assignment is not resolved prior to the May 21st hearing[3], Carrington will be prepared to introduce evidence at the May 21st hearing as to the current status of such matters. Carrington submits that such showing will clearly demonstrate adequate protection of future performance and that any such objection from the Trustees should be overruled, particularly in light of the significant progress that Carrington has made with respect to the licensing and ratings matters to date and the fact none of the issues raised by Wells Fargo will be an impediment to Carrington's ability to operate as servicer when the sale of the Servicing Business closes.

3.  With respect to Wells Fargo's Cure Objection, Carrington notes that it appears that Wells Fargo misapprehends the extent of the contracts to be assumed and assigned to Carrington in conjunction with its purchase of the Servicing Business.[4] While Wells Fargo's objection ostensibly is one to the Debtors' proposed cure amounts for each of the PSAs, the Cure Objection fails to identify any amounts owed by New Century or the Debtors <u>under those specific agreements</u>. Instead, the Objection focuses mainly on the Debtors' alleged liability as

---

[3] Unlike Wells Fargo, DBNTC has sought to discuss any concerns with Carrington before filing any objection and whether or not DBNTC files a formal objection before the hearing, Carrington is hopeful it can reach a consensual resolution of any such objections and Carrington, though the Debtors and the Committee is also pursuing a possible consensual resolution of the Wells Fargo objection.

[4] Thus, although the Cure Amounts under each of the PSAs remain the responsibility of the Debtors, Carrington believes that it was necessary to respond to this objection as well.

originator of the Mortgage Loans and on alleged defaults under certain mortgage loan repurchase agreements (the "Wells MLPAs").  Although related to the PSAs, the Wells MLPAs are separate and distinct agreements that the Debtors are not seeking to assume and that Carrington is in no manner seeking to have assigned to it at closing.  Such liabilities will remain with the estate, and Wells Fargo's attempts to shoehorn any claims under the MLPAs into its objection to the assignment of the PSAs should be dismissed out of hand.  Simply put, Wells Fargo has failed to identify any cure amounts now due and owing under the PSAs – the only Wells Fargo agreements that are to be assumed and assigned to Carrington – and consequently the Cure Objection should be overruled.

## BACKGROUND

4. On April 2, 2007, Carrington and the Debtors originally entered into a definitive agreement for the sale of the Servicing Business on the terms set forth in the Asset Purchase Agreement filed contemporaneously with the Debtors' Sale Motion (the "Original APA").

5. After the Bidding Procedures Motion was filed on April 4, 2007, and following extensive negotiations with the Debtors and the Official Committee of Unsecured Creditors appointed in these cases (the "Committee"), Carrington agreed to a number of additional terms (including a variety of material concessions), culminating in an Amended and Restated Asset Purchase Agreement (the "APA").

6. The auction (the "Auction") for the Servicing Business was held on May 16, 2007, and Carrington was the winning bidder at the Auction. Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley") and Carrington remained in the Auction through nearly a dozen rounds of bidding.  During such bidding, the Debtors (after consultation with the Committee) agreed, in order to induce further bidding from Morgan Stanley, to exercise their discretion, pursuant to

Paragraph 24 of the Bidding Procedures, not to require Morgan Stanley to close as the Runner-Up Bidder in the event that Carrington does not close under its APA. Despite this inducement, and after further bidding, Carrington nonetheless prevailed at the Auction and was determined to have made the highest and otherwise best bid for the Servicing Business (as determined by the Debtors, after consultation with their investment banking firm, Lazard Freres & Co. and the Committee). The bid includes total cash consideration to the Debtors' estates of approximately $184 million

7.  Pursuant to the terms of the Bidding Procedures, the Debtors and Carrington will be seeking approval of the Second Amended and Restated Asset Purchase Agreement, to be dated as of May 21, 2007 (which as so amended and restated together with the exhibits and schedules thereto and incorporated by reference therein, will reflect the results of the Auction and the definitive terms of the parties' agreement) at the Sale Hearing on May 21, 2007.

## RESPONSE

### A.  The Adequate Assurance Objection Should Be Overruled

8.  In the Adequate Assurance Objection, Wells Fargo asserts that Carrington is not a proper purchaser of the Loan Servicing Business because, among other things, Carrington: "(iii) has failed to confirm that it is or will be licensed, and therefore, authorized to service the Mortgage Loans under the applicable state laws; and (iv) has failed to provide evidence of its net worth [to satisfy the requirements to act as a successor servicer]." *See* Adequate Assurance Objection at ¶ 28.

9.  With respect to state licensing, Carrington has been in discussion with all of the applicable state licensing agencies in the six weeks since entering into the Original APA and has submitted applications in all but two of the thirty-three states in which NCMC currently operates as servicer, and will finalize those remaining applications in the next several days. While

Carrington expects to have many if not all of the required licenses by the closing of the sale of the Servicing Business, Carrington also has identified exemptions in the various states that will allow it to act as an agent or as a fiduciary with respect the servicing of the Mortgage Loans prior to obtaining state licenses. The APA further contemplates that Carrington will enter into a Transition Services Agreement for an interim period during which NCMC may continue to service while Carrington bears the costs and expenses of such interim operations. Thus, Carrington believes that the state licensing process presents no obstacle to the Court's approval of NCMC's assumption (and assignment to Carrington) of the PSAs.

10. Finally, Carrington's net worth is not an issue because Carrington is not seeking to become a "successor" servicer under the PSAs. Instead, because Carrington will acquire substantially all of the assets of the Servicing Business, its operation as servicer will occur pursuant to the "merger and consolidation" provisions set forth in Section 6.02 of the PSAs; CMS, as the surviving entity, will remain as the "servicer". Nevertheless, as noted above, Carrington has provided summary financial information to Wells Fargo to give it comfort on CMS' and CCM's financial wherewithal not only to close the transaction but to operate the Servicing Business without any anticipated need for CMS to raise additional capital post-closing. To the extent necessary, Carrington will be prepared to introduce evidence thereof under seal at the May 21st hearing in the event that the objection is not consensually resolved prior to the hearing.

11. In light of the foregoing, Carrington submits that it clearly has demonstrated to Wells Fargo, and will be able to demonstrate to the Court in the event that the objection is not consensually resolved prior to the hearing, adequate protection of future performance.

Accordingly, the Adequate Assurance Objection, to the extent not withdrawn, should be overruled.

B.  **The Cure Objection Should Be Overruled**

12. In arguing that cure amounts are due under the PSAs, the Cure Objection conflates the PSAs with the Wells MLPAs and muddles the various roles and obligations of the debtor-parties to those agreements. The multitude of obligations, liabilities and breaches that the Cure Objection alleges exist with respect to the Debtors as originator, seller or "Responsible Party" under the MLPAs – whether any actually exist or not – do not relate to the PSAs and thus are irrelevant.

13. In its Cure Objection, Wells Fargo alleges that as a result of certain deficiencies in the documents related to the Mortgage Loans (the "Mortgage Loan Documents"), the Mortgage Loans may have to be repurchased and that the repurchase obligations could exceed $1 billion. As a result, Wells Fargo concludes that the cure amount for the PSAs may also be in excess of $1 billion. *See* Cure Objection at ¶ 23. However, the Cure Objection itself refutes any such conclusion.

14. The Cure Objection identifies one debtor party with potential liability arising out of the alleged deficiencies in the Mortgage Loan Documents: NC Capital Corporation, the "Responsible Party" under the Wells MLPA, which allegedly made certain representations and warranties regarding the Mortgage Loans and allegedly could be required to repurchase the Mortgage Loans. The Cure Objection does not identify any obligation or liability (potential or otherwise) of NCMC, the debtor entity that is acting as servicer under the PSAs.

15. Similarly, paragraph 24 of the Cure Objection lists a number of "breaches", but each of these alleged breaches arises "[u]nder the Wells MLPAs." *See* Objection at ¶ 24. As noted above, the Debtors are not seeking to assume and assign the Wells MLPAs to Carrington.

The only agreements at issue are the PSAs. Any alleged "breaches" under the Wells MLPAs or the other Mortgage Loan Documents could not give rise to any cure obligation under the PSAs and are, thus, irrelevant.

16. In its Cure Objection, Wells Fargo also objects to assumption on the grounds that the APA could potentially limit the liabilities under the PSAs. DBNTC, the trustee under the other securitization trusts related to the Servicing Business, similarly raised concerns related to the APA's effect on post-closing obligations under the PSAs. DBNTC was concerned that the language in the APA limiting Carrington's liability for pre-closing liabilities would operate to relieve Carrington of its obligations under the PSAs on a going-forward (post-closing) basis in the event any of those contractual obligations related to events that occurred prior to closing. In order to address those concerns Carrington, the Debtors and DBNTC have agreed to included the following language in the APA and the Sale Order:

> Nothing contained herein shall be construed to limit [Carrington's] obligation to perform the obligations of the servicer under the [PSAs] from and after the Closing Date based on the Mortgage Loans' servicing status at that time; provided, however, that nothing contained herein shall be deemed to cause Purchaser to assume any liability for any act or omission of the Sellers (whether as originator, servicer or otherwise) or any other Person arising on or before the Closing Date.

This additional language was sufficient to address DBNTC's concerns regarding the effect of that the language of the APA might have on Carrington's obligations under the PSAs, and the Court similarly should deem it sufficient for Wells Fargo.

8

## CONCLUSION

WHEREFORE, Carrington respectfully requests that this Court overrule the Wells Fargo Objections and grant such further relief as may be appropriate under the circumstances.

Dated: May 18, 2007
Wilmington, Delaware

                                                    /s/ Steven K. Kortanek
Steven K. Kortanek (Del. Bar No. 3106)
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Ph: (302) 252-4363
Fax: (302) 661-7728
skortanek@wcsr.com

- and -

MAYER, BROWN, ROWE & MAW LLP
Thomas S. Kiriakos
Sean T. Scott
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL  60606
Ph: 312-701-8310
Fax: 312-706-8482
tkiriakos@mayerbrownrowe.com
stscott@mayerbrownrowe.com

Counsel to Carrington Mortgage Services, LLC and
Carrington Capital Management, LLC