**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416(KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Re: Docket Nos. 450 and 759 |
| | : | |

**ORDER (I) AUTHORIZING CERTAIN DEBTORS TO OBTAIN SURETY BONDS, (II) AUTHORIZING POSTING SECURITY FOR SURETY BONDS AND CREDIT, (III) AUTHORIZING THE EXTENSION OF POSTPETITION SECURED SURETY CREDIT, AND (IV) GRANTING ADMINISTRATIVE CLAIMS**

This matter having come before the Court upon the Amended Motion of Debtors and Debtors in Possession,[2] seeking entry of an order pursuant to sections 105(a) and 364(c) of the Bankruptcy Code (i) authorizing the purchase of surety bonds, (ii) authorizing the posting of security for surety bonds and credit, (iii) authorizing the extension of postpetition secured surety credit, and (iv) granting administrative claims (the "Motion") and to supplement the Order Authorizing the Debtors and Debtors-In-Possession to (I) Continue All Insurance Policies and Agreements Relating Thereto, (II) Continue Certain Premium Financing Arrangements Relating

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

LA3:1133088.5
RLF1-3153538-1

1

Thereto, and (III) Honor Certain Obligations in Respect Thereof Pursuant to 105(a) and 363(b) of the Bankruptcy Code (the "First-Day Insurance Order"); and the Court having considered the submissions and arguments of counsel in support of the Motion, and the opposition thereto, if any; and it appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that notice of the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' post-petition senior secured lenders (collectively, the "DIP Lenders"); (iii) the Official Committee of General Unsecured Creditors; and (iv) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure and that no other or further notice need be given; and for sufficient cause shown, it is

THE COURT FINDS AND DETERMINES THAT:

A.  Notice of the Motion and of the Hearing with respect thereto is sufficient and adequate under the circumstances and satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules, including sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

B.  In order to avoid irreparable harm, the Debtors require authorization to obtain postpetition surety credit.

C.  Bond Safeguard Insurance Company and Lexon Insurance Company ("Bond Safeguard") have indicated their willingness to extend financial accommodations on behalf of NCF and NCMC in the form of Postpetition Surety Credit solely to the extent and as expressly provided by this Order. In consideration of this extension of surety credit, NCF and NCMC have agreed to indemnify Bond Safeguard as provided, and under the same terms, set forth in the

General Agreement of Indemnity attached to the Motion as Exhibit "B" (hereafter referred to as "Indemnity Agreement"), as though the Indemnity Agreement was entered into between NCF, NCMC and Bond Safeguard as of the date of the approval of this Order as an obligation binding on NCF and NCMC, which obligation is secured by the collateral and priority claims approved in this Order.

D.     The issuance of the Bonds, which are financial accommodations that cannot be assumed by NCF and NCMC, is the most cost effective and expedient means for NCF and NCMC to obtain surety credit required for the continuation of the Debtors' business following the Petition Date. The Debtors have attempted but have been unable to obtain surety credit on an (a) unsecured basis pursuant to sections 364(a) and (b) of the Bankruptcy Code.

E.     The terms pursuant to which Bond Safeguard has agreed to provide NCF and NCMC with Postpetition Surety Credit were negotiated and entered into by Bond Safeguard and NCF and NCMC in good faith as contemplated by section 364(e) of the Bankruptcy Code. Bond Safeguard is therefore entitled to the benefits of section 364(e) of the Bankruptcy Code.

F.     Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize the significant disruption to the Debtors' businesses pending possible sale and will avoid immediate and irreparable harm to and is in the best interests of the Debtors, their creditors and these estates.

Based on the foregoing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.     The Motion is granted to the extent set forth in this Order.

2.     Nothing in this Order shall expand the scope of or affect in any way the Insurance Order.

3.  NCF and NCMC are authorized and directed to enter into, perform, execute and deliver all documents, and take all actions, necessary to immediately continue and fully meet their obligations under the terms of the Indemnity Agreement, the Collateral Agreement and the terms of this Order.

4.  The delivery by NCF and NCMC to Bond Safeguard of cash in the aggregate amount of up to $2.3 million (the "Postpetition Collateral") in order to secure NCF and NCMC's obligations to Bond Safeguard under the Indemnity Agreement and for reimbursement in respect of all outstanding Bonds is hereby authorized. Bond Safeguard may direct NCF and NCMC to deliver such cash to its designee for, *inter alia*, the purchase of securities to hold in a collateral trust; any such securities shall also constitute Postpetition Collateral. NCF and NCMC will not deposit any further amount as collateral for the Bonds secured by the Postpetition Collateral or any additional bonds without further Court approval.

5.  NCF and NCMC are authorized to purchase the Bonds set forth on Exhibit A hereto. If Bond Safeguard refuses to provide any such Bonds, ten days notice must be provided to the Debtors and the Official Committee of Unsecured Creditors (the "Creditors' Committee"). The Debtors may obtain additional bonds without posting addition Postpetition Collateral without further Court approval but no bonds may be issued except upon request of the Debtors and approval of the Creditors' Committee.

6.  The Debtors may not assign, transfer or set over to Bond Safeguard any right, including under any right under contract, except as provided in this Order without further approval of the Court. Bond Safeguard may not take possession of any property of the estates other than the Postpetition Collateral and as specifically authorized in this Order.

7.  NCF and NCMC are authorized to deposit cash directly with state regulatory agencies or to enter into other arrangements appropriate to maintain the licenses needed to operate their servicing business so long as the total aggregate amount of cash utilized for these purposes and transferred to Bond Safeguard as security does not exceed the amount of the Postpetition Collateral.

8. The Postpetition Collateral may be used by Bond Safeguard to satisfy draws under the Bonds identified on the attachment to and as set forth in the Collateral Trust Agreement by and between NCF and NCMC and Lexon Insurance Company and Bond Safeguard Insurance Company (the "Collateral Agreement"). Prior to using the Postpetiton Collateral to reimburse itself for draws under the Bonds, Bond Safeguard must provide ten days written notice to the Debtors and the Creditors' Committee.

9. All claims of Bond Safeguard in respect of amounts owed under or in connection with the Indemnity Agreement or by reason of Bond Safeguard's right of reimbursement shall be entitled to administrative expense priority pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code.

10. The interests granted to Bond Safeguard pursuant to the terms of this Order shall continue and remain in effect and Bond Safeguard shall have no obligation to (a) release any Postpetition Collateral held by it or delivered to it pursuant to the terms hereof or (b) turnover or otherwise transfer the proceeds thereof until Bond Safeguard has received reasonable proof, reasonably acceptable to Bond Safeguard, that Bond Safeguard's obligations under the Bonds secured by such Postpetition Collateral have been expressly released and discharged from all claims or liability, without a loss on a bond or as described in the Indemnity Agreement and only after reimbursement of Bond Safeguard of all losses. NCF, NCMC, their successor or assigns and the Creditors' Committee can request a reduction and return of collateral by Bond Safeguard, and Bond Safeguard shall have an obligation to consider such request in good faith. NCF, NCMC, their successor or assigns and the Creditors' Committee may pursue the return of the Postpetition Collateral or any portion thereof by motion or adversary proceeding.

11. Each and every cost, expense or right to payment incurred by, or in favor of Bond Safeguard under the Indemnity Agreement and the Collateral Agreement, including without limitation, the reasonable fees and expenses of Bond Safeguard's outside counsel

incurred from and after the Petition Date in connection with all of the matters described herein, shall be an allowed expense and obligation of the NCF and NCMC and their estates upon accrual if after ten days written notice to the Debtors and the Creditors' Committee no objection has been served on Bond Safeguard, without further order of Court and without the filing of any application, request for payment or claim.

12. NCF and NCMC shall reasonably cooperate with Bond Safeguard in any claim matter and shall use its commercially reasonable efforts to assist Bond Safeguard with any claim investigation including, without limitation, providing reasonable access to the relevant books and records of the Debtors, and providing any information that Bond Safeguard may reasonably request with respect to any claim under any Bond.

13. The Indemnity Agreement is a valid, binding agreement and obligation of NCF and NCMC.

14. NCF and NCMC agree to do and perform all acts and to make, execute and deliver all instruments and documents including the execution of the Indemnity Agreement referenced as Exhibit "B" to the Motion and those instruments and documents which may be reasonably requested by Bond Safeguard to the extent consistent with the terms of this Order to effectuate the terms hereof or required under the terms hereof or the Indemnity Agreement; provided, however, that Bond Safeguard's request or NCF and NCMC's performance or delivery of same shall not be, nor construed as, a waiver of any rights or terms of this Order.

15. Notwithstanding any law or regulation that requires a mortgage loan servicer to be licensed/registered, NCF and/or NCMC may service mortgage loans in any such jurisdiction without being licensed/registered (and, where applicable, bonded) where that jurisdiction provides for an exemption from licensing/registration where such servicing activity is performed under a court order. The Court intends for this Order to be construed as permitting NCF and/or NCMC to meet the requirements of any such exemption.

16. Any notice to be given or other written matter to be delivered pursuant to this Order shall be deemed validly served either upon personal delivery thereof via a nationally

recognized courier service or upon written acknowledgment of receipt if transmitted via facsimile transmission:

    To the Debtors:

    O'Melveny & Myers LLP
    Suzzanne S. Uhland
    Ben H. Logan
    Victoria Newmark
    Emily R. Culler
    275 Battery Street
    San Francisco, California 94111
    Fax: (415) 984-8701

    To the Creditors' Committee:
    Blank Rome LLP
    Attn: Regina Stango Kelbon
    One Logan Sq, 130 N 18th St
    Philadelphia, PA 19103-6998
    Fax: (215)832-5507

    To the DIP Lenders:

    Kirkland & Ellis LLP
    777 S. Figueroa St., Suite 3700
    Los Angeles, CA 90017
    Attn:   Bennett L. Spiegel, Esq.
            Shirley S. Cho, Esq.
    Fax: (213) 680-8500

    To Bond Safeguard:

    Bond Safeguard Insurance Company
    Attn: David E. Campbell, President
    256 Jackson Meadows Drive, Suite 201
    Hermitage, TN 37076

    To Willis of Arizona, Inc., as agent:

    Willis of Arizona, Inc.
    Attn: David Jensen
    11201 N. Tatum Blvd. #300
    Phoenix, AZ 85028

17. The terms and conditions of the Indemnity Agreement and any actions taken pursuant thereto are binding upon and shall inure to the benefit of NCF and NCMC, their creditors, any representatives of their estates, including, but not limited to, a trustee appointed under the Bankruptcy Code or any creditors' committee, Bond Safeguard and its successors and assigns.

18. The validity, interests, priorities, rights to payment and all other rights granted to Bond Safeguard under this Order may not, and shall not, be affected, modified, altered impaired or amended by, and shall survive without modification in any way: (a) the dismissal of any of these Chapter 11 Cases, (b) the conversion of any of these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (c) the confirmation of any plan of reorganization or liquidation any of these Chapter 11 Cases, whether filed by one or more of the Debtors or a party in interest, (d) any order confirming such a plan for the Debtors, (e) absent the prior written consent of Bond Safeguard, by any other financing or extensions of credit, whether made pursuant to section 364 of the Bankruptcy Code or otherwise, and (f) the occurrence and continuance of an Event of Default (as defined in the DIP Credit Agreement).[3]

19. If there are any inconsistencies between the terms of this Order, the terms of the Indemnity Agreement, the Collateral Agreement, and any ancillary agreements, the terms of this Order shall govern.

20. This Order is a final order of the Bankruptcy Court. Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Order shall be (a) effective and immediately enforceable upon its entry pursuant to Bankruptcy Rule 8005 and (b) shall not be stayed absent (i) an application by a party in interest for such stay in accordance with Bankruptcy

---

[3] The DIP Credit Agreement is the Debtor-in-Possession Loan and Security Agreement Dated as of April 13, 2007 by and among New Century Mortgage Corporation, as debtor and debtor-in-possession, certain of its Affiliates, as debtors and debtors-in-possession, Greenwich Capital Financial Products, Inc., as Administrative Agent, and The CIT Group/Business Credit, Inc., as Documentation Agent substantially (the "DIP Credit Agreement), as such agreement may be amended, modified, supplemented, restated, refinanced or replaced, in whole or in part, from time to time.

Rule 8005 and (ii) a hearing upon notice to the Debtors, counsel to the Creditors' Committee, counsel to the DIP Lenders and Bond Safeguard.

21. If any or all of the provisions of this Order are reversed, modified, vacated or stayed then such reversal, stay, modification or vacation shall not affect (a) the validity of any right, interest, obligation, indebtedness or liability or (b) the validity and enforceability of any priority granted to any interest, obligation, indebtedness or liability incurred, authorized or created hereunder prior to the receipt of notice by Bond Safeguard of such reversal, modification, vacation or stay, and any such indebtedness, obligation or liability shall be governed in all respects by the original provisions of this Order and the Indemnity Agreement.

22. Notwithstanding the terms of the Indemnity Agreement and the Collateral Agreement, this Court shall retain exclusive jurisdiction to hear all matters arising out of, relating to or in connection with this Order, the Indemnity Agreement, the Bonds and the Postpetition Collateral.

Dated: May 21, 2007
Wilmington, Delaware

The Honorable Kevin J. Carey
United States Bankruptcy Judge