IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al. | Case No. 04-10416 (KJC) |
| | Jointly Administered |
| Debtors. | Objection deadline: May 25, 2007 at 4:00 p.m. Hearing date: May 30, 2007 at 2:30 p.m. |
| | Re: Docket No. 736 |

**OBJECTION OF NATIXIS REAL ESTATE CAPITAL INC. TO DEBTORS' MOTION FOR ORDER TO PROVIDE ADEQUATE PROTECTION PURSUANT TO BANKRUPTCY CODE SECTION 105(a), 361, 362 AND 363(b)(1)**

Natixis Real Estate Capital Inc. ("Natixis") objects to the Debtors' Motion for Order to Provide Adequate Protection Pursuant to Bankruptcy Code Section 105(a), 361, 362 and 363(b)(1) (the "Adequate Protection Motion") and respectfully represents as follows.

## PRELIMINARY STATEMENT

1. Natixis is one of the Repurchase Counterparties[1] to whom the Debtors propose to provide "adequate protection" while they "reconcile" amounts due to Natixis.[2] The Debtors hold in trust for the benefit of Natixis approximately $1.6 million of regularly scheduled principal and interest payments on the mortgage loans subject to a repurchase obligation as defined herein (the "Natixis Trust Funds"). These monies are not property of the Debtors' estates and are subject to the safe harbor provisions of sections 559 and 561 of the Bankruptcy Code.

---

[1] Terms not otherwise defined herein shall have the meaning set forth in the Adequate Protection Motion.

[2] Adequate protection may be given to a secured creditor for the debtors' continued use of the collateral to protect against a diminution in value during the pendency of the proceeding. 11 U.S.C. §362(d). The proposal to provide "adequate protection" in the context herein is novel because the funds in question are not cash collateral that is property of the estate, but funds held in trust by the Debtors.

661097-1

2.  The Debtors' offer of "protection" to the Repurchase Counterparties is illusory and inadequate. The Debtors provide no information as to the total amount of Repurchase Counterparties' claims that will be secured by the Debtors' property, nor do they proffer any information regarding the value of the Debtors' property that would secure the Repurchase Counterparties' claims. Further, the Debtors limit the protection offered to pre-petition monies the Debtors have collected, and are silent as to the disposition of post-petition funds.

3.  Natixis believes there is no legal basis for the Debtors to use the Natixis Trust Funds it holds, notwithstanding the offer of adequate protection, and that the Debtors should be directed to remit the Natixis Trust Funds to Natixis immediately. In any event, if the Court is inclined to provide the Debtors with additional time to reconcile payments received on its mortgage repurchase agreement obligations, the relief should be premised on the conditions that the Debtors (a) complete the reconciliation and payment of the Natixis Trust Funds within 30 days; (b) confirm that the Repurchase Counterparties' trust funds are not property of the estate and are otherwise governed by the safe-harbor provisions of sections 101(47), 559 and 561 of the Bankruptcy Code; and (c) provide information as to the value of the claims and property subject to the Adequate Protection Motion.

## BACKGROUND

### A.  The Debtors' Chapter 11 Cases

4.  On April 2, 2007 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Court has entered an order authorizing the joint administration of the Debtors' bankruptcy cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors in possession.

661097-1

5.      On April 9, 2007, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

**B.     The Repurchase Agreements and Accounts**

6.      On November 10, 2006, IXIS Real Estate Capital, Inc. ("IXIS"), the predecessor of Natixis, entered into a Fifth Amended and Restated Master Repurchase Agreement (the "Repurchase Agreement") by and among IXIS, as buyer and New Century Mortgage Corporation, NC Asset Holding, L.P., NC Capital Corporation, New Century Credit Corporation and Home 123 Corporation, as Sellers (the "Sellers"). See Repurchase Agreement attached hereto as Exhibit A.[3] In addition, IXIS obtained an Amended and Restated Guarantee, dated November 10, 2006, made by the Guarantor, New Century Financial Corporation (the "Guarantor"), on behalf of the Sellers in favor of the Buyer (the "Guarantee"). The Repurchase Agreement was consented and agreed to by the Guarantor.

7.      In conjunction with the Repurchase Agreement, Sellers also entered into (a) an Amended and Restated Custodial and Disbursement Agreement, dated as of November 10, 2006 (the "Custodial Agreement"), between the Sellers and Deutsche Bank National Trust Company, as custodian and disbursement agent (the "Custodian"); and (b) an Amended and Restated Account Agreement (the "Account Agreement"), dated November 10, 2006 among the Buyer, the Sellers and Union Bank of California, N.A. (the "Account Bank") (the Repurchase Agreement, the Guarantee, the Custodial Agreement, and the Account Agreement, collectively, the "Repurchase Documents").

---

[3] Due to the size of Exhibit A, the Repurchase Agreement, paper copies of such exhibit are being provided only to counsel to the Debtors, counsel to the Committee, and the Office of the United States Trustee. If other parties in interest wish to receive a copy of Exhibit A, they can obtain a copy by contacting the undersigned counsel.

8. Section 5(c) of the Repurchase Agreement addresses the ownership of the principal and interest payments on the mortgage repurchase agreement obligations:

> The Seller shall hold or cause to be held for the benefit of, and in trust for, the Buyer all Income, including without limitation all Income received by or on behalf of the Seller with respect to such Purchased Assets. All such Income shall be held in trust for the Buyer, shall constitute the property of the Buyer <u>and shall not be commingled with other property of the Seller</u>, any affiliate of the Seller or the applicable the Servicer except as expressly permitted above in this Section 5. Funds deposited in the Collection Account during any month shall be held therein, <u>in trust for the Buyer</u>.

<u>See</u> Exhibit A, Repurchase Agreement Section 5(c) (emphasis added).

9. Section 5(a) of the Repurchase Agreement provides for the disposition of principal and interest payments on the mortgage repurchase agreement obligations upon an Event of Default:

> Upon notice of a Default or an Event of Default to the Seller hereunder or to the Servicer pursuant to a Servicer Notice, the Seller shall, and pursuant to the Servicer Notice, the Servicer shall be required to, deposit promptly all income in a deposit account (the title of which shall indicate that the funds therein are being held in trust for the Buyer) (the "Collection Account") with the Bank and which is subject to the Account Agreement. All funds in the Collection Account may be withdrawn by the Buyer and applied as determined by the Buyer. The Seller may not give any instruction with respect to the Collection Account after an Default or Event of Default.

<u>See</u> Exhibit A, Repurchase Agreement Section 5(a).

10. Section 13(a)(2)(A) of the Repurchase Agreement further provides that, upon an Event of Default:

> (i) the Seller's obligations in such Transactions to repurchase all Purchased Assets, at the Repurchase Price therefor on the Repurchase Date, and to pay all other amounts owed by the Seller hereunder, shall thereupon become immediately due and payable, (ii) all Income paid after such exercise or deemed exercise shall be retained by the Buyer and applied to the aggregate unpaid Repurchase Prices and any other amounts owed by the Seller

4

> hereunder, and (iii) the Seller shall immediately deliver to the Buyer any Purchased Assets subject to such Transactions then in [the Seller's] possession or control.

See Exhibit A, Repurchase Agreement Section 13(a)(2)(A).

11. On March 8, 2007, IXIS sent a Notice of Default and Reservation of Rights to the Sellers. The letter informed the Sellers that "certain Events of Default have occurred and are continuing under the Repurchase Agreement." See Notice of Default and Reservation of Rights attached hereto as Exhibit B. The letter also notified the Sellers that:

> Pursuant to Section 5 of the Repurchase Agreement, the Seller shall deposit all Income into the following account at the Bank subject to the Account Agreement: Account No. GLA 111569, account name SER, Bank of New York, ABA No, 021000018, Attn: Eric Seyffer. Pursuant to Sections 13(a)(3) and 24 of the Repurchase Agreement, the Buyer hereby (a) terminates Seller as Servicer and appoints Saxon Mortgage Services, Inc. ("Saxon") as Servicer and instructs Seller to transfer servicing to Saxon, (b) directs the Seller immediately to deliver to the Buyer all of the Servicing Records and (c) directs the Seller to immediately deliver to the Buyer any Purchased Assets subject to such Transactions then in NCCC's, NCAH's, NCMC's, New Century's or HOME123's possession or control.

See Exhibit B, Notice of Default and Reservation of Rights.

12. On March 8, 2007, IXIS sent a Notice of Default and Exercise of Control to the Custodian. See Notice of Default and Exercise of Control attached hereto as Exhibit C. The letter notified the Custodian that because Events of Defaults had occurred and were continuing under the Repurchase Agreement, the Custodian "shall not transfer funds from the Settlement Account or the Disbursement Account except at the written direction of the Buyer or to the following account at Union Bank of California: Account No. GLA 111569, account name SER, Bank of New York, ABA no. 021000018, Attn: Eric Seyffer." See Exhibit C, Notice of Default and Exercise of Control. On that same day, IXIS sent a Notice of Default and Exercise of Control to the Account Bank. See Notice of Default and Exercise of Control attached hereto

as Exhibit D. The letter notified the Account Bank that, because Events of Defaults had occurred and were continuing under the Repurchase Agreement, the Account Bank "shall not (a) transfer funds from the Collection Account to the Seller or any other person other than pursuant to the Buyer's direction, (b) act on the instruction of the Seller or any person other than the Buyer or (c) cause or permit withdrawals from the Collection Account in any manner not approved by the Buyer in writing." See Exhibit D, Notice of Default and Exercise of Control.

13.    The Debtors currently hold Natixis Trust Funds in the amount of at least $1,690,804.62, consisting of $621,254.63 in principal and $1,069,549.99 in interest.

C.    **The Adequate Protection Motion**

14.    The Adequate Protection Motion purports to offer protection for amounts collected on mortgage loans by the Debtors on behalf of Natixis while the Debtors reconcile amounts due various Repurchase Counterparties. The Adequate Protection Motion, however, does not acknowledge these funds are property of the Repurchase Counterparties. For example, the Debtors describe the Repurchase Counterparties' assertion of rights as a "contention" that the agreements in question are repurchase agreements as defined in Bankruptcy Code section 101(47). Adequate Protection Motion at ¶ 9. The Debtors also state that the Repurchase Counterparties "assert" that they are subject to "certain special rights and privileges under Bankruptcy Code section 561, inter alia, which allow them to realize on the mortgage loans without relief from the automatic stay." Adequate Protection Motion at ¶ 9. The Debtors suggest that unspecified Repurchase Counterparties had previously acquiesced to the trust fund monies being deposited into the general corporate accounts of the Debtors. Adequate Protection Motion at ¶ 10. Moreover, the Debtors state that "there could be serious issues as to whether these amounts [collections on the mortgage loans], particularly collections of regular monthly principal and interest prior to the blockage accounts, are either cash collateral or property of the

estate," and add that the Debtors seek to protect the right of the Committee to "participate in the resolution of these issues." Adequate Protection Motion at ¶ 15.

15. The "adequate protection" for the Debtors' use of trust funds are liens junior to the debtor in possession financing lien ("DIP") and other existing liens that the Debtors claim will serve to protect the Repurchase Counterparties during the period of time in which the Debtors are reconciling payments on loans. The Debtors do not provide any additional facts regarding the aggregate amount of Repurchase Counterparties' claims or the value of the collateral that is proposed to secure the liens. It is not possible on the record before the Court to determine if the liens are of any value whatsoever, and there is no basis in the record for the Court to find that the liens are "adequate protection" for the use of the Natixis Trust Funds.

## ARGUMENT

**A.    The Repurchase Agreement of Natixis Clearly Falls Within the Safe-Harbor Provisions of the Bankruptcy Code**

16. The Repurchase Documents are within the ambit of section 101(47) and are entitled to the protection afforded in the safe-harbor provisions of sections 559 and 561 of the Bankruptcy Code. Section 101(47) defines repurchase agreements as agreements that provide for the transfer of:

> mortgage loans, interests in mortgage securities or mortgage loans
> . . . with a simultaneous agreement by such transferee to transfer to
> the transferor thereof . . . mortgage loans, or interests of the kind
> described in this clause, at a date certain not later than 1 year after
> such transfer or on demand, against the transfer of funds.

11 U.S.C. §101(47).

17. Further, Section 559 of the Bankruptcy Code provides that parties to repurchase agreements can exercise certain rights, notwithstanding the automatic stay:

> The exercise of a contractual right of a repo participant . . . to
> cause the liquidation, termination or acceleration of a repurchase

agreement because of a condition of the kind specified in section 365(e)(1) of this title shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by order of a court . . . .

11 U.S.C. § 559.

18. Section 561 further provides that a party to a repurchase agreement can exercise any contractual right to cause the termination, liquidation or acceleration of, or to offset or net termination values, payment amounts or other transfer obligations arising under or in connection with one or more repurchase agreements. 11 U.S.C. § 561.

19. The Repurchase Agreement provides that upon an Event of Default, the Seller is obligated to pay all amounts owed and income collected by the Seller to the Buyer. See Exhibit A, Repurchase Agreement, Section 13(a)(2)(A). The safe-harbor provisions of the Bankruptcy Code protect the Seller from interference by the Debtors with the payment of income on the mortgage loans subject to the Repurchase Agreements.

20. Further, there can be no doubt that the trust funds are not property of the Debtors' estates. Pursuant to Section 5(c) of the Repurchase Agreement, the Natixis Trust Funds are property of Natixis and not property of the Debtors' estates. Payments on mortgage loans subject to the Repurchase Agreement received in trust for Natixis are not subject to the protections of the automatic stay. See City of Farrell v. Sharon Steel Corporation, 41 F.3d 92, 95 (3rd Cir. 1994) (property held in trust is not property of the estate).

21. Accordingly, any relief granted to the Debtors should be conditioned upon the acknowledgement by the Debtors that Natixis Trust Funds are not property of the estate, and are subject to the safe- harbor protections of sections 101(47), 559 and 561 of the Bankruptcy Code.

661097-1

B.  **The Natixis Trust Funds Should Be Reconciled Promptly**

22. The Debtors contend that the process of determining how much is owed to the various Repurchase Counterparties is an "enormous undertaking." Natixis disputes this contention. The Debtors assigned mortgage loan identification numbers to all loans and the Debtors historically have been capable of promptly processing payments of principal and interest on those loans. The delay in turning trust funds over to the Repurchase Counterparties does not appear justified by any true reconciliation issue.

23. Further, the Repurchase Documents make clear that the funds are held by the Debtors in trust for Natixis and should not be commingled with any other funds. After an Event of Default, the process of identifying the trust funds should be even easier as funds are to be directed into a special account. See Exhibit B, Notice of Default and Reservation of Rights; Exhibit C, Notice of Default and Exercise of Control; Exhibit D, Notice of Default and Exercise of Control.

24. Natixis submits that any relief granted under this motion should be conditioned upon completion of the reconciliation process within 30 days.

C.  **The Adequate Protection Motion Does Not Make Clear What Protection is Offered**

25. The protection the Debtors offer is not adequate. First, the Adequate Protection Motion offers protection to the Repurchase Counterparties for monies held by the Debtors "as of the Petition Date." See Adequate Protection Motion at ¶ 19. The Adequate Protection Motion does not address trust funds the Debtors hold on account of post-petition collections that have not been remitted. No reason is provided by the Debtors for this limitation.

26. Further, the Adequate Protection Motion does not provide any information regarding whether there is value in the Debtors' estates that could provide protection for the

Repurchase Counterparties. The Adequate Protection Motion also fails to state the aggregate amount of claims of the Repurchase Counterparties that are subject to the adequate protection liens. Because the proposed adequate protection liens offered are subordinate to the DIP and certain pre-petition liens, the value in the Debtors to secure the Repurchase Counterparties is uncertain. Without more information regarding the value of the Debtors' estates, it is impossible to determine whether any protection is actually being provided by the Debtors.

27. Accordingly, the Court should also condition any relief hereunder upon the Debtors' demonstration of the amount of claims at issue, and the value of the adequate protection liens.

## CONCLUSION

For all the foregoing reasons, this Court should require the Debtors to (a) complete the reconciliation and payment of the Repurchase Counterparties' trust funds within 30 days; (b) confirm that the Repurchase Counterparties' trust funds are not property of the estate and are otherwise governed by the safe-harbor provisions of sections 101(47), 559 and 561 of the Bankruptcy Code; (c) provide information as to the value of the claims and property subject to the Adequate Protection Motion; and (d) provide such other and further relief as is just and proper.

Dated: May 25, 2007  
       Wilmington, DE

THE BAYARD FIRM

By: _____  
Neil B. Glassman (No. 2087)  
Steven M. Yoder (No. 3885)  
Eric M. Sutty (No. 4007)  
222 Delaware Avenue, Suite 900  
Wilmington, DE 19801  
Tel: (302) 655-5000  
Fax: (302) 658-6395

-and-

661097-1

Gregory Petrick
Angela J. Somers
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
Tel:    (212) 504-6000
Fax:    (212) 504-6666