**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware Corporation, *et al.*, | Case No. 07-10416 (KJC) |
| | (Jointly Administered) |
| Debtors. | Hearing Date: May 30, 2007, at 2:30 p.m. |
| | Relates to Docket No. 736 |

**OBJECTION OF BARCLAYS BANK PLC TO DEBTORS'**
**MOTION FOR ORDER TO PROVIDE ADEQUATE**
**PROTECTION PURSUANT TO BANKRUPTCY CODE**
**SECTIONS 105(a), 361 AND 363(b)(1) (DOCKET #736)**

Barclays Bank PLC ("Barclays"), by its undersigned counsel, hereby submits this Objection to the Debtors' Motion For Order To Provide Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361 and 363(b)(1), dated May 16, 2007 (Docket Entry No. 736) (the "Motion"), and in support of this Objection respectfully represents as follows:

**BACKGROUND**

1.  On various dates prior to the commencement of these cases, Barclays, for itself and as agent for certain other buyers, purchased from the Debtors four separate loan pools containing in excess of 17,000 mortgage loans. One such pool consists of approximately 6,000 mortgage loans (the "Barclays' Loans") purchased on March 16, 2007 pursuant to an agreement dated as of the same date (the "Purchase and Release Agreement").[1]

2.  The Purchase and Release Agreement, among other things, governs: (i) Barclays' acquisition of the Barclays' Loans and the rights to receive all payments on account thereof from

---

[1] The loans included in the foregoing portfolios are subject to periodic trading in accordance with Barclays' trading and investing practices. As of the date hereof, the Debtors act as servicer for only 13 of the more than 17,000 mortgage loans included in these portfolios.

March 1, 2007, (ii) the resolution of rights under a Master Repurchase Agreement, dated March 31, 2006 (the "Repurchase Agreement"), (iii) the termination, as of March 8, 2007, of all of the Debtors' servicing rights in respect of the Barclays' Loans, and (iv) the orderly transfer of the servicing of such loans to HomeEq Servicing Corporation ("HomeEq"). The Purchase and Release Agreement also contains the Debtors' express release of "any and all claims or payments under, or distributions on or proceeds of any of the [Barclays Loans]."

3. Pursuant to the Purchase and Release Agreement, Barclays also provides the Debtors a conditional release of claims relating to the Repurchase Agreement, which release is "automatically and irrevocably" extinguished and all Barclays' claims and disputes arising under the Repurchase Agreement are restored if the Debtors fail to turnover to HomeEq, "all further collections, moneys, checks, proceeds and other documents and instruments received from time to time, as and when, and in the same form as, received by [the Debtors]".[2]

## OBJECTION

4. Based on the data available to Barclays, it appears that the Debtors hold or control funds in the aggregate amount of approximately $2,470,989.92, which represent payments made during March 2007 by the mortgagors on the Barclays' Loans (collectively, the "Mortgage Payments") that have not been turned over to Barclays in accordance with the Purchase and Release Agreement.[3] The Debtors have no interest in the Mortgage Payments and have no right to use these funds.

---

[2]   A rescission of this release may have occurred and Barclays hereby expressly reserves all of its rights and remedies under the Purchase and Release Agreement and the Repurchase Agreement, including, without limitation, Barclays' right to assert any and all claims for damages arising under the Repurchase Agreement.

[3]   Historically, the Debtors provided Barclays with loan-level reporting that allowed Barclays to readily determine the source and application of mortgage payments. The Debtors have not provided such reporting for the Mortgage Payments, although Barclays has no reason to believe

5.      The Debtors ask this Court to assume there was commingling of all mortgage loan payments with the Debtors' funds and no accounting procedures in place to allow parties to identify their payments. They state that "tracing issues might arise …" Motion at ¶16. On the basis of these *assumed* facts and *possible* tracing problems, this Court is asked to deem, as a matter of law, that all mortgage payments are now property in which the estates have an interest and which the Debtors can use by offering junior liens and junior administrative claim status. The notion that *possible* tracing issues and *possible* disputes among repurchase counterparties and whole loan purchasers can transform their property into property of the Debtors' estates is novel at best.

6.      The Third Circuit Court of Appeals has already rejected the contention that administrative convenience is sufficient to demonstrate hopeless commingling. *In re Owens Corning,* 419 F.3d 195, 215 (3d Cir. 2005). Barclays has no reason to believe that its Mortgage Payments cannot be identified, or that the Debtors have not maintained accurate records of their servicing activities.

7.      The Mortgage Payments are not property of the Debtors' estates and the Debtors cannot acquire an interest in the funds or deem the funds to be property of the estates by proposing "adequate protection". This Court should be loath to countenance the Debtors' unusual request. Barclays submits that the Motion should be denied or at least adjourned for a sufficient period of time to allow Barclays and other similarly situated parties to examine the Debtors' books and records to determine the extent to which cash held by the Debtors can be tied to specific loans or pools. In the interim, the Debtors should be prohibited from using or otherwise distributing third party funds. Otherwise, a short fall will almost certainly occur.

---

such data is not available. Barclays continues to review data regarding all loans purchased from the Debtors and hereby reserves all of its rights, claims, and actions in respect thereof.

#8588518 v1

## LEGAL BASIS FOR OBJECTION

**The Mortgage Payments Are Not Property of the Debtors' Estates.**

8.     The Debtors have offered no evidence that they hold any equitable interest in the Mortgage Payments. The Debtors no longer act as loan servicer for the Barclays Loans. Even if the Debtors held some interest in the Mortgage Payments, the Debtors expressly released any claims or interests in the Mortgage Payments as of March 1, 2007 pursuant to the Purchase and Release Agreement.

9.     Moreover, if the Debtors were still servicing the Barclays' Loans, section 541(d) of the U.S. Bankruptcy Code makes clear that the Debtors' estates would include only the legal title to the notes, mortgages and payments and would not include any equitable interest that might entitle the Debtors to use this property. The definition of "property of the estate" under section 541(a) is qualified by section 541(d). *See Beiger v. IRS*, 496 U.S. 53, 59 (1990) (citing to section 541(d) and concluding that "[b]ecause the debtor does not own an equitable interest in property which he holds in trust for another, that interest [i.e., equitable interest] is not "property of the estate."); *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (recognizing that Congress intended exclusion created by section 541(d) to include funds held in express or constructive trusts), *cert. denied*, 510 U.S. 1110 (1994); *Universal Bonding Insurance Co. v. Gittens and Sprinkle Enterprises, Inc.*, 960 F.2d 366, 371 (3d Cir.1992) (citing to section 541(d) for proposition that "property in which the debtor holds only legal title, and does not hold an equitable interest, such as trust funds, is included in the [debtor's] estate only to the extent of the debtor's legal title to the property and not to the extent of any [beneficial] interest in the property that the debtor does not hold[.]"); *see also Skilled Nursing Professional Services v. Sacred Heart Hospital*, 175 B.R. 543, 549 (Bankr. E.D. Pa. 1994) (recognizing that while section

541(d) "was included in the Bankruptcy Code at the insistence of the secondary mortgage industry in order to protect such mortgagees from insolvent mortgage servicers, the section applies equally well to a situation where a debtor holds property in trust for another generally.").

10.     The Mortgage Payments are Barclays' property. These funds can only be distributed to Barclays and cannot be used by the Debtors. *See Marrs-Winn Company, Inc. v. Giberson Electric, Inc.*, 103 F.3d 584, 590 (7th Cir. 1996) (since debtor who holds money in trust for another acquires only bare legal title to the trust proceeds and maintains no equitable interest therein, "those trust proceeds can only be distributed to trust beneficiaries, and not to the creditors of the bankruptcy estate."). Providing adequate protection cannot transform the Mortgage Payments to become property of the estates, and this Court should deny the Debtors' effort to simply deem such funds to be property of the estates.

**Convenience Is Not Evidence of Hopeless Commingling;**
**Barclays Is Entitled To Its Equitable Rights and Remedies.**

11.     In *In re Owens Corning Inc.*, 419 F.3d 195, 214-15 (3d Cir. 2005), the Third Circuit Court of Appeals rejected the argument that administrative convenience and efficiency are evidence of hopeless commingling that might warrant extraordinary relief like the "deemed" consolidation of the debtors' estates. Similarly, the Debtors have failed to present evidence of hopeless commingling of the Mortgage Payments and other third party funds. The entirety of the Debtors' argument for the unusual relief requested relies almost exclusively on their assertion that the Debtors deposited third party funds "in their general corporate accounts", and their supposition that this created "legal and factual issues, including whether a constructive trust could be avoided and tracing supposed trust funds." Motion at ¶¶10,15. There is no legal basis to support the relief requested where the Debtors hold no interest in the Mortgage Payments. This Court, Barclays and all similarly situated parties deserve more than the Debtors'

hypothetical abstractions regarding potential "tracing issues" before this Court denies Barclays' equitable interests in the Mortgage Payments and allows the Debtors to deem these funds to be property of the estates.

12. In assessing any possible difficulties in tracing, it is important to note that the law of this Circuit does not require exact results. The Third Circuit has found there is "no reason to doubt that 'perfection is not the standard'" when confronting financial entanglement and commingling. *Owens Corning*, 419 F.3d at 215. In *Owens Corning*, the Third Circuit rejected the contention that financial entanglement alone means there are no alternatives to consolidation. "Neither the impossibility of perfection in untangling the affairs of the [debtors] nor the likelihood of some inaccuracies in efforts to do so" is sufficient to justify the extraordinary relief requested. *Id.* at 214. The *Owens Corning* Court denied consolidation on the basis of hopeless commingling, noting that financial entanglement issues can be resolved when, "all the relevant accounting data ... still exist[ed]," and only a "reasonable review to make any necessary adjustments [was] required." *Id.* at 215 (citations omitted). Indeed, the Third Circuit has sanctioned the bankruptcy courts' use of various legal constructs to overcome problems relating to the commingling of funds. *See, e.g., In re Columbia Gas Systems Inc.*, 997 F.2d at 1063 (3rd Cir. 1993) (approving the bankruptcy court's use of the lowest intermediate balance test, one of several available legal constructs that "aids beneficiaries in tracing trust property.").

**The Repurchase Agreement Is Not A Secured Financing.**

13. The Debtors contend that their various master repurchase agreements or "facilities" are tantamount to "standard secured revolving credit facilities with regular payments of interest and principal payments required to keep the facility within a borrowing base." Motion at ¶6. The Mortgage Payments are not subject to a repurchase agreement and therefore the Debtor's analysis in this regard is not relevant to Barclays. But, even if the funds related to mortgages subject to repurchase agreements, the outcome should be the same. It is now settled that repurchase agreements are purchases and sales of assets. "Unlike a lender taking collateral for a secured loan, a [repurchase] buyer 'take[s] title to the securities received and can trade, sell or pledge them.'" *Granite Partners, L.P. v. Bear Stearns & Co., Inc.*, 17 F.Supp.2d. 275, 298 (S.D.N.Y. 1998) (*quoting in part*, *SEC v. Drysdale, Sec. Corp.*, 785 F.2d 38, 41 (2d Cir. 1986)). "The key to the inquiry as to whether the repos ... should be characterized as purchase and sale agreements or secured loans lies in the intention of the parties." *Granite Partners*, 17 F.Supp.2d. at 300. "The objective intent of the parties 'expressed or apparent in the writing controls' the agreement's interpretation, while the 'undisclosed, subjective intent of the parties has no bearing' on the construction of the contract." *Id.* (citations omitted).

**CONCLUSION**

14. The Debtors have no interest in the Mortgage Payments and these funds are not and cannot be deemed to be property of the estates. The Mortgage Payments are Barclays' property, which the Debtors cannot use for any purpose. For the reasons set forth above, as may be supplemented at oral argument during the hearing to consider the Motion and this Objection, this Court should deny the Motion or at least adjourn consideration of the Motion until such time

that Barclays and similarly situated parties have had a reasonable opportunity to assess the extent to which their funds ─ not the Debtors' ─ can be identified.

WHEREFORE, Barclays respectfully requests this Court to deny the Motion or at least adjourn the Motion to allow Barclays and other similarly situated parties the opportunity to review the Debtors' books and records to determine the extent that their funds can be identified, and to grant such other relief as is just and proper.

Dated: May 25, 2007
Wilmington, Delaware

PEPPER HAMILTON LLP

 /s/ Evelyn J. Meltzer
Henry Jaffe (No. 2987)
Evelyn J. Meltzer (No. 2987)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302) 777-6575
Facsimile: (302) 421-8390

ALLEN & OVERY LLP
Ken Coleman
Daniel J. Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

Attorneys for Barclays Bank PLC

#8588518 v1