IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY TRS HOLDINGS,<br>INC., a Delaware corporation,<br>et al.,<br><br>　　　　　　Debtors. | Chapter 11<br>Case No. 07-10416 (KJC)<br>Jointly Administered<br>**RE: D.I. 736** |

**RESPONSE OF MORGAN STANLEY MORTGAGE CAPITAL INC.
TO DEBTORS' MOTION FOR ORDER TO PROVIDE ADEQUATE
PROTECTION PURSUANT TO BANKRUPTCY CODE SECTIONS
105(a), 361, 362, AND 363(B)(1) AND CROSS MOTION
OF MORGAN STANLEY MORTGAGE CAPITAL INC.
FOR ENTRY OF AN ORDER PROVIDING ADEQUATE
PROTECTION OF ITS INTEREST IN PARTICULAR
MORTGAGE LOAN PAYMENTS BY (1) PROHIBITING
THE DEBTORS FROM USING SUCH PAYMENTS AND
(2) REQUIRING THE DEBTORS TO SEGREGATE
AND ACCOUNT FOR SUCH PAYMENTS**

Morgan Stanley Mortgage Capital Inc. ("MSMCI"), both in its individual capacity and as agent under the MRA (as defined below), hereby (I) responds (the "Response") to Debtors' Motion For Order To Provide Adequate Protection Pursuant To Bankruptcy Code Sections 105(a), 361, And 363(b)(1), dated May 16, 2007 (D.I. 736) (the "Adequate Protection Motion") and (II) cross moves (the "Cross Motion")[1] for the entry of an order, pursuant to sections 105(a), 361, and 363(a), (c), and (e) of title 11 of the United States

---

[1] On May 8, 2007, MSMCI provided the Debtors and the Creditors' Committee (as defined below) with a draft of this Cross Motion, thereby giving both parties ample notice of the relief sought herein.

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), providing MSMCI with adequate protection of its interest in particular mortgage loan payments (the "Payments") received and held by one or more of the debtors in the above-captioned chapter 11 cases of New Century TRS Holdings, Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by (1) prohibiting the Debtors from using the Payments and (2) requiring the Debtors to segregate and account for the Payments.  Based on the Declaration of Peter Woroniecki (the "Woroniecki Declaration"), a copy of which is attached hereto as Exhibit 1, and in support of the Response and Cross Motion, MSMCI respectfully represents as follows:

**BACKGROUND**

1.    Commencement of Cases.  On April 2, 2007 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.  The official committee of unsecured creditors (the "Creditors' Committee") was appointed on April 9, 2007.

2.    Joint Administration.  On April 4, 2007, this Court entered an order directing the joint administration of

the Debtors' cases under case number 07-10416 (KJC) for procedural purposes only.

3.   Jurisdiction.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. § 157(b)(2).

4.   Statutory Predicates.  The statutory predicates for the relief sought in this Cross Motion are sections 105(a), 361, and 363(a), (c), and (e) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 4001(a).

## THE MASTER REPURCHASE AGREEMENT AND MSMCI'S INTEREST IN THE MORTGAGE LOANS

5.   The Master Repurchase Agreement.  MSMCI is a party to (a) a Master Repurchase Agreement, dated as of December 12, 2005 (as amended, restated, supplemented or otherwise modified and in effect from time to time, the "MRA"),[2] (a copy of which has been provided to counsel to the Debtors and the Creditors' Committee), by and among (i) NC Capital Corporation, New Century Mortgage Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, Home123 Corporation, New Century Credit Corporation (the "Sellers"), each of which is a Debtor, (ii) the buyers from time to time parties thereto (the "Buyers"), including MSMCI, and (iii) MSMCI, as agent for the Buyers (the

"Agent"); and (b) a related Guaranty, dated December 12, 2005 (as amended, restated, supplemented or otherwise modified and in effect from time to time) made by New Century Financial Corporation (the "Guarantor"), which is a also a Debtor.

6.    MSMCI's Interest in the Mortgage Loans. Pursuant to the terms of the MRA, (a) the Sellers agreed to sell to the Buyers, and the Buyers agreed to buy from the Sellers, specified types of property (the "MRA Property"), including mortgage loans (the "Mortgage Loans") with (b) a simultaneous agreement by the Buyers to sell to the Sellers, and the Sellers to repurchase from the Buyers, such MRA Property against payment by the Sellers of a specified repurchase price.  The Payments at issue in respect of this Cross Motion consist of principal and interest payments and paid-in-full monies paid by individual borrowers in connection with particular Mortgage Loans that were part of the MRA Property.  Woroniecki Declaration ¶ 4.

7.    The MRA (a) states that the Sellers, the Buyers, and the Agent intend that the transactions under the MRA be sales and not loans, and also (b) grants MSMCI a "protective" security interest in the MRA Property, including the Mortgage Loans and their proceeds.  See, e.g., MRA § 4.01.

---

[2]    Capitalized terms used but not defined in this Motion have the meanings given to them in the MRA.

MSMCI perfected this security interest in the Mortgage Loans by (x) having the Custodian take possession of the promissory notes in connection with the Mortgage Loans and (y) filing Uniform Commercial Code financing statements in California and Delaware.  Woroniecki Declaration ¶ 5.

8.    The Debtors' Obligations Upon an Event of Default.  The MRA provides that, if an Event of Default shall occur and be continuing, all proceeds of MRA Property, including proceeds of the Mortgage Loans, received by any Seller consisting of cash, checks, and other near-cash items shall be (a) held by such Seller in trust for the Agent for the benefit of the Buyers, (b) segregated from other funds of such Seller, and (c) forthwith upon receipt by such Seller, turned over to the Agent in the exact form received by such Seller (duly endorsed by such Seller to the Agent, if required).  MRA § 4.06.

9.    The MRA also provides that, at any time while an Event of Default has occurred and is continuing, upon notice from the Agent at the direction of the Buyers, the Sellers shall promptly deliver to the Agent all proceeds of the MRA Property, including the Mortgage Loans.  MRA § 2.05(d).  In addition, the MRA provides the Buyers with significant remedies upon the occurrence of an Event of Default.  MRA § 9.01.

## THE PRE-PETITION DATE NOTICE OF DEFAULT AND DEMAND TO REMIT

10.  <u>The Notice Of Default</u>.  On March 9, 2007, MSMCI
sent to the Sellers and the Guarantor a written "Notice of
Event of Default, Acceleration and Exercise of Remedies" (the
"Notice of Default") in which MSMCI, among other things,
stated that (a) Events of Default had occurred and were
continuing under the MRA, (b) the obligation of MSMCI to enter
into any additional Transactions pursuant to the MRA was
terminated, and (c) the Purchase Price of all then-outstanding
Transactions was immediately due and payable, together with
other specified amounts.  Woroniecki Declaration ¶ 6.

11.  <u>The Demand to Remit</u>.  On March 27, 2007, MSMCI
sent to the Sellers and the Guarantor a written "Demand To
Remit Payments" (the "Demand To Remit") in which MSMCI, among
other things, (a) noted that, notwithstanding the Notice of
Default and the requirements of the MRA, the Sellers had
failed to remit proceeds of the Mortgage Loans to the Buyers;
(b) stated MSMCI's understanding that, as of that date, the
Sellers had failed to remit the total amount of $15,060,429.16
in connection with Mortgage Loans; and (c) demanded that the
Sellers (i) immediately and continuously segregate all
proceeds of the Mortgage Loans received, and (ii) forthwith

remit such proceeds to a designated account maintained by the Agent.  Woroniecki  Declaration ¶ 7.

12.  Based on additional information made available to MSMCI subsequent to it sending the Demand to Remit, including information provided by the Debtors, the Debtors received, and did not remit to MSMCI, Payments in a total amount of at least $45,172,510.89.  Woroniecki Declaration ¶ 8.  MSMCI is unable to ascertain whether this sum represents the universe of Payments retained by the Debtors or what (if anything) the Debtors did with the Payments after receiving them, because the Debtors have failed or refused to provide MSMCI with a detailed accounting of the Payments.

## THE ADEQUATE PROTECTION MOTION

13.  On May 16, 2007, the Debtors filed the Adequate Protection Motion seeking entry of an order providing adequate protection in the form of a first priority lien on all assets of the estates with super administrative priority status (other than the "First Lien Collateral" as defined in the DIP Loan Agreement) to all Repurchase Counterparties and Loan Purchasers (as those terms are defined in the Adequate Protection Motion) who assert an interest in property held by the Debtors on the Petition Date.

**RESPONSE TO ADEQUATE PROTECTION MOTION AND RELIEF REQUESTED**

14.   MSMCI does not object conceptually to the
relief sought in the Adequate Protection Motion subject to
certain important caveats.  Specifically, the Adequate
Protection Motion fails to provide that MSMCI will be entitled
to interest (at the contract rate) on the Payments from the
date on which the Debtors first failed to transfer Payments to
MSMCI through the date on which the Payments are eventually
transferred to MSMCI (which would occur after this Court makes
a determination that MSMCI is entitled to the Payments).
Indeed, if this Court were to eventually determine that the
Debtors were wrongfully withholding the Payments from MSMCI,
MSMCI will effectively have been in the position of being an
involuntary lender to the Debtors and should be compensated as
such by the Debtors.  In addition, MSMCI believes that the
Adequate Protection Motion should only be granted if all
parties similarly situated to MSMCI (upon information and
belief, there are fewer than ten (10) such parties) are
subject to a collective process with respect to liquidation
and/or reconciliation of the so-called "trust fund" claims.
Indeed, if some of the similarly situated parties are to
proceed on their own timetable, the Adequate Protection Motion
becomes pointless.  The Court should direct that all "trust
fund" claims be tried and determined at the same time given

that all "trust fund" claimants are asserting competing claims to the same asset.

15.   Accordingly, any order entered granting the Adequate Protection Motion should provide that MSMCI will be entitled to interest (at the contract rate) on the Payments from the date on which the Debtors first failed to transfer Payments to MSMCI through the date the Payments are actually transferred to MSMCI and establish a special bar date and procedure for the filing of "trust fund" claims and the liquidation and/or reconciliation of such "trust fund" claims against the Debtors' assets.   To the extent this Court does not modify any such order as set forth above, MSMCI requests, through the Cross Motion, entry of an order, substantially in the form attached to this Cross Motion as <u>Exhibit 2</u>, providing MSMCI with adequate protection of its interest in the Payments by (a) prohibiting the Debtors from using the Payments and (b) requiring the Debtors to segregate and account for the Payments.

<u>**BASIS FOR RELIEF REQUESTED**</u>

16.   Section 363(e) of the Bankruptcy Code mandates the provision of adequate protection if requested by a party with an interest in property:

> Notwithstanding any other provision of this
> section, at any time, on request of an entity

9

> that has an interest in property used . . . or
> proposed to be used . . . by the trustee [or
> debtor in possession], the court, with or
> without a hearing, shall prohibit or condition
> such use . . . as is necessary to provide
> adequate protection of such interest.

11 U.S.C. § 363(e).

17.    Section 361 of the Bankruptcy Code outlines --
in a nonexclusive manner -- the various forms of adequate
protection available to a secured creditor, and provides, in
part, that when adequate protection is required under section
363 of the Bankruptcy Code, it may be provided by

> granting such other relief, other than
> entitling such entity to compensation allowable
> under section 503(b)(1) of this title as an
> administrative expense, as will result in the
> realization by such entity of the indubitable
> equivalent of such entity's interest in such
> property.

11 U.S.C. § 361(3); see, e.g., 3 Collier On Bankruptcy ¶
361.02 (15th rev. ed. 2006) ("An entity is entitled to
adequate protection as a matter of right, not merely as a
matter of discretion . . . when the estate proposes to use,
sell or lease property in which the entity has an interest")
(citing H.R. Rep. No. 95-595, at 340, 343-44 (1977) ("House
Report"); S. Rep. No. 95-989, at 52-53 (1978) ("Senate
Report")).

18.    The concept of adequate protection is derived
from the Fifth Amendment protection of property interests as

enunciated by the United States Supreme Court in cases such as
Wright v. Union Central Life Ins. Co., 311 U.S. 273 (1940) and
Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555
(1935). Senate Report at 83 (1978). Adequate protection
under the Bankruptcy Code, however, has been held to require
an even higher level of protection against the uncompensated
taking of creditor rights than does the Fifth Amendment. See
In re Sheehan, 38 B.R. 859, 865 (Bankr. D.S.D. 1984)
("Whatever adequate protection is or must be, this Court is
convinced that it compels a stricter standard than that
imposed by the Fifth Amendment").

    19.  Sections 363(c)(2) and (4) of the Bankruptcy
Code, moreover, mandate, automatically and without the request
of any party in interest, provision of adequate protection with
respect to "cash collateral," as defined in section 363(a) of
the Bankruptcy Code.  Section 363(c)(2) and (4) provide:

> (2)  The trustee may not use, sell, or lease
> cash collateral . . . unless--
>
>     (A)  each entity that has an interest in
> such cash collateral consents; or
>
>     (B)  the court, after notice and a
> hearing, authorizes such use, sale, or lease in
> accordance with the provisions of this section.
>
>     . . .
>
> (4)  Except as provided in paragraph (2) of this
> subsection, the trustee shall segregate and
> account for any cash collateral in the
> trustee's possession, custody, or control.

11 U.S.C. § 363(c)(2) and (4).

20. Regardless of whether MSMCI is characterized as an owner or a pledgee of the Mortgage Loans[3] -- a point that need not be decided in connection with this Cross Motion -- MSMCI has an interest in the Mortgage Loans and their proceeds, including the Payments, which is superior to that of the Sellers. See UCC §§ 9-203(f), -315; 11 U.S.C. § 552(b). The Payments are MSMCI's cash collateral under section 363(a) of the Bankruptcy Code, see House Report at 344-45 (under section 363(a), "interest" includes "a lien or a co-ownership interest"); Senate Report at 55 (same), and MSMCI is entitled to have its interest in them protected in accordance with the provisions of the MRA and the Bankruptcy Code.

---

[3]    The Uniform Commercial Code applies similar terminology and concepts to both buyers and pledgees of property such as the Mortgage Loans.  Under the Uniform Commercial Code, a "'[s]ecurity interest' means an interest in personal property or fixtures which secures payment or performance of an obligation."  UCC § 1-201(37); cf. 11 U.S.C. § 101(36) (defining "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation").  But "[t]he term [security interest] also includes any interest of a . . . buyer of . . . a payment intangible . . . or a promissory note in a transaction that is subject to Article 9."  UCC § 1-201(37).  Article 9 of the Uniform Commercial Code applies both to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract," id. § 9-109(a)(1), and to "a sale of . . . payment intangibles . . . or promissory notes," id. § 9-109(a)(3); see id. § 9-102(72)(D) ("secured party" includes "a person to which . . . payment intangibles . . . or promissory notes have been sold").  "This approach generally has been successful in avoiding difficult problems of distinguishing between transaction in which [particular property] secures an obligation and those in which [such property] has been sold outright.  In many commercial financing transactions the distinction is blurred."  Id. § 9-109 official cmt. 4.

21. Accordingly, to the extent this Court does not modify any order approving the Adequate Protection Motion as set forth in paragraph 15 above, in accordance with the provisions of both the MRA and the Bankruptcy Code, this Court should enter an order (a) prohibiting the Debtors from using the Payments and (b) requiring the Debtors to segregate and account for the Payments.

## NOTICE

22. Notice of this Response and Cross Motion has been given to the (a) the Debtors, (b) United States Trustee, (c) attorneys for the Creditors' Committee, and (d) Debtors' postpetition financing lenders. In light of the relief requested herein and the Bankruptcy Code's authority that adequate protection may be granted "with or without a hearing," MSMCI submits that no other or further notice is required.

## NO PREVIOUS REQUEST

23. No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, MSMCI respectfully requests that this Court modify any order entered granting the Adequate Protection Motion to (1) provide that MSMCI will be entitled to interest (at the contract rate) on the Payments from the date on which the Debtors first failed to transfer Payments to

13

MSMCI through the date the Payments are actually transferred to MSMCI and (2) establish a special bar date and procedure for the filing of "trust fund" claims and the liquidation of such "trust fund" claims against the Debtors' assets.  To the extent this Court does not modify any such order as set forth above, MSMCI respectfully requests entry of an order providing MSMCI with adequate protection of its interest in the Payments by (a) prohibiting the Debtors from using the Payments and (b) requiring the Debtors to segregate and account for the Payments and granting MSMCI such other relief as is just and proper.

Dated:  Wilmington, Delaware
        May 25, 2007

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                    _____
                    Robert J. Dehney (No. 3578)
                    Gregory W. Werkheiser (No. 3553)
                    Daniel B. Butz (No. 4227)
                    1201 North Market Street
                    P.O. Box 1347
                    Wilmington, Delaware 19899-1347
                    Telephone: (302) 658-9200
                    Facsimile: (302) 658-3989

                    And

                    Luc A. Despins
                    Wilbur F. Foster, Jr.
                    Milbank, Tweed, Hadley & McCloy LLP
                    One Chase Manhattan Plaza
                    New York, New York 10005-1413
                    Telephone: (212) 530-5000
                    Facsimile: (212) 530-5219

And

CADWALADER, WICKERSHAM & TAFT LLP
Howard R. Hawkins, Jr.
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Attorneys for Morgan Stanley Mortgage
Capital Inc.*