## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | :  Chapter 11 |
| | : |
| New Century TRS Holdings, Inc., et al.[1] | :  Case No. 07-10416 (KJC) |
| | :  (Jointly Administered) |
| Debtors. | : |
| | :  **Hearing Date: 5/30/07 @ 2:30 p.m.** |
| | :  **Re: Docket No. 736** |

### LIMITED RESPONSE OF UBS REAL ESTATE SECURITIES INC. TO DEBTORS' MOTION FOR ORDER TO PROVIDE ADEQUATE PROTECTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361, 362 AND 363(b)(1)

UBS Real Estate Securities Inc. ("UBS"), by and through its undersigned counsel, hereby files this limited response to the Debtors' Motion for Order to Provide Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) [Dkt. No. 736] (the "Adequate Protection Motion").  In support of its limited response, UBS respectfully represents as follows:

### BACKGROUND

**A.    General**

1.      On April 2, 2007 (the "Petition Date"), New Century Mortgage Corporation and fourteen of its affiliated entities (collectively, the "Repurchasing Debtors") filed voluntary

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, L.L.C., a Delaware limited liability company, and NCoral, L.P., a Delaware limited partnership.

petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.      On April 4, 2007, the Court entered an amended order directing the joint administration of the Repurchasing Debtors' cases.

3.      The Repurchasing Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.      The UBS Adversary Proceeding**

4.      On April 5, 2007, UBS filed a complaint against the Repurchasing Debtors alleging breach of contract, conversion and breach of fiduciary duty, and seeking imposition of a constructive trust, an accounting and a permanent injunction with respect to the turnover of property misappropriated from UBS (the "Complaint").

5.      Concurrently with the filing of the Complaint, UBS filed UBS's Motion for a Temporary Restraining Order and Preliminary Injunction [Adv. Dkt. No. 3] (the "Injunction Motion") accompanied by a Memorandum of Law in Support of UBS Real Estate Securities Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction [Adv. Dkt. No. 5], seeking, among other things, to compel the Repurchasing Debtors to turn over certain funds belonging to UBS that are wrongfully being held by the Repurchasing Debtors.

6.      On April 12, 2007, the Court was scheduled to conduct a hearing on the Injunction Motion.  At that time, the parties indicated to the Court that they had reached an interim agreement with respect to the Injunction Motion.  Specifically, the Repurchasing Debtors agreed to provide two reconciliations with respect to funds received by the Repurchasing Debtors during March and April 2007 and to turn over all undisputed funds then held or later received by the Repurchasing Debtors with respect to the loans owned by UBS (the "Property").

7.      On April 20, 2007 and April 26, 2007, the Repurchasing Debtors provided purported reconciliations to UBS with respect to the March and April 2007 payments received from underlying borrowers, but these purported reconciliations were incomplete, inaccurate and completely unreliable.

8.      On May 3, 2007, UBS filed its Supplemental Memorandum of Law in Support of UBS Real Estate Securities Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction [Adv. Dkt. No. 23].  On May 4, 2007, the Court entered an Order Granting Expedited Motion For (A) Extension of Time to File (I) Supplemental Memorandum of Law in Support of UBS Real Estate Securities Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction, and (II) Affidavit of Arnold Cohn in Connection Therewith, and (B) Authority to File an Amended Hearing Agenda [Adv. Dkt. No. 29].

9.      On May 7, 2007, the Court held a further hearing on the Injunction Motion.  At the hearing, the Repurchasing Debtors agreed to put $2.67 million into an escrow account maintained by their counsel, Richards, Layton & Finger P.A., pending further order of the Court or written agreement among UBS, the Repurchasing Debtors and the Official Committee of Unsecured Creditors.  On May 15, 2007, the Court approved the parties' agreement and entered a Stipulated Scheduling Order Regarding UBS Real Estate Securities Inc.'s Motion for Temporary Restraining Order and Temporary Injunction [Adv. Dkt. No. 36].

10.      Subsequent to the hearing on May 7, 2007, the Repurchasing Debtors filed the Motion to Dismiss, Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint [Adv. Dkt. No. 32] and Declaration of Music Sprouse in Support of Defendants' Motion to Dismiss Complaint [Adv. Dkt. No. 31].  On May 21, 2007, UBS filed the Answering Brief of UBS Real Estate Securities Inc. with Respect to Defendants' Motion to Dismiss

Complaint and Memorandum in Support Thereof [Adv. No. 07-50875, Adv. Dkt. No. 37] (the "Answering Brief").

**RELIEF REQUESTED AND BASIS THEREFORE**

11.    On May 16, 2007, the Repurchasing Debtors filed the Adequate Protection Motion seeking to provide "adequate protection" to various counter-parties to master repurchase agreements entered into by the Repurchasing Debtors prior to the Petition Date.    UBS is a counter-party to one such master repurchase agreement.

12.    Pursuant to the Adequate Protection Motion the Repurchasing Debtors seek to provide the counter-parties to the master repurchase agreements with (i) super-administrative priority under section 507(b) of the Bankruptcy Code that is senior to any other administrative priorities set forth in section 503(b)(1) of the Bankruptcy Code, but junior to the super-administrative priority granted to the Repurchasing Debtors' lender (the "DIP Lender") pursuant to that Debtor-In-Possession Loan and Security Agreement dated as of April 13, 2007 (the "DIP Loan Agreement"), (ii) a lien junior to the liens granted to the DIP Lender and any unavoidable, valid, existing liens, on all assets of the Debtors' estates (other than certain First Lien Collateral defined in the DIP Loan Agreement), and (iii) a lien on all assets of the Debtors' estates, subject to any unavoidable, valid, existing liens, once all of the obligations under the DIP Loan Agreement have been paid in full (collectively, the "Adequate Protection").[2]

---

[2]  All of these liens and claims are subject to the "Carve Out" provided for in the DIP Loan Agreement and will not encumber any avoidance actions available to the Repurchasing Debtors under the Bankruptcy Code.  In addition, such liens and claims will only provide protection to the extent a counter-party to a master repurchase agreement is determined to have a valid and unavoidable interest in property of the Repurchasing Debtors as of the Petition Date.

13.     According to the Adequate Protection Motion, the Repurchasing Debtors are seeking to provide the counter-parties with protection so that the Repurchasing Debtors can resolve issues related to the master repurchase contracts in a "rational manner" rather than having to deal with the "one-off litigation" that has arisen during the first two months of these cases. *See* Adequate Protection Motion at pp. 8-9.

14.     While UBS agrees that it is necessary for the Repurchasing Debtors to provide protection to UBS in connection with the Repurchasing Debtors' failure to turn over funds that are UBS's Property (and potentially to other counter-parties with respect to their master repurchase agreements), UBS objects to the Adequate Protection Motion to the extent that the Repurchasing Debtors are in any way asserting that the adversary proceeding commenced by UBS on April 5, 2007 [Adv. No. 07-50875] (the "Adversary Proceeding") should now be delayed or stayed because of the proposed Adequate Protection.[3]

15.     The Repurchasing Debtors indicate in the Adequate Protection Motion that there may be a variety of disputes as to whether certain of the counter-parties are entitled to any funds that are currently held by the Repurchasing Debtors. The Repurchasing Debtors, however, have yet to raise any substantive defense with respect to UBS's Complaint that would indicate that the Repurchasing Debtors have any right to hold the funds they have received from the underlying borrowers on account of UBS's loans.

16.     As has been previously noted by UBS in its pleadings filed in the Adversary Proceeding, the legislative history makes it clear that Congress intended for counter-parties to repurchase agreement to be able to liquidate their property without delay. *See, e.g.,* S. Rep. No.

---

[3] UBS wishes to make it clear that to the extent the Repurchasing Debtors make use of the phrase "adequate protection" with the intent of asserting that UBS is simply a secured creditor with respect to the Property, UBS objects to such assertion. As set forth herein and in the pleadings it has filed in the Adversary Proceeding, UBS is the owner of the Property, and thus, is much more than a secured creditor.

98-65, at 45 (parties investing in the repurchase markets must be protected against losses that arise from the insolvency of the counter-party to the repurchase agreement); H.R. Rep. No. 109-31, pt. 1, 109th Cong., at 130 (2005) (the addition of the term "financial participant" was added to "limit the potential impact of insolvencies upon major market participants").

17.    As noted by UBS in the Answering Brief, because the Repurchasing Debtors have steadfastly refused to provide an accurate accounting of the funds they received in connection with servicing UBS's Property, UBS has been unable to determine which of the underlying mortgage borrowers are in default of their loan agreements, and thus UBS is unable to liquidate its Property.  Moreover, underlying mortgage borrowers who have made timely payments may not have received credit for those payments, making it appear as though they are in default.[4]  In addition, UBS has been forced to pay Countrywide Home Loans Servicing LP ("Countrywide") (the new servicer of the loans) funds sufficient to cover all missing payments because the cash flow from the underlying loans has not been what was expected based upon the historical servicing information available for such loans.  Accordingly, the Repurchasing Debtors have already begun to do exactly what Congress intended to prevent; namely, delay the liquidation of UBS's property and disrupt the normal operation of the repurchase markets.  They must not be allowed to continue to do so.

18.    In addition to the aforementioned concerns, UBS notes that it is impossible to even tell whether the Adequate Protection offered by the Repurchasing Debtors is in fact real protection for the counter-parties to the master repurchase agreements.  Nowhere in their

---

[4] UBS notes that because the Repurchasing Debtors have failed to provide complete and accurate reconciliations for the funds that have been received by the Repurchasing Debtors in March and April 2007, UBS and Countrywide (as defined herein) may not have been able to properly credit the accounts of the underlying mortgage borrowers.  Thus, despite the fact that such underlying mortgage borrowers may have made payments on their loans to the Repurchasing Debtors, due to the Repurchasing Debtors refusal to provide the necessary information to either UBS or Countrywide, Countrywide may not be able to accurately report the payment histories for the underlying mortgage borrowers to the credit reporting agencies.

Adequate Protection Motion do the Repurchasing Debtors indicate the aggregate amount that the counter-parties assert is due to be turned over to them in connection with the master repurchase agreements. Thus, it is impossible to even know if granting the counter-parties administrative claim status provides them with the protection alleged by the Repurchasing Debtors. It is conceivable that, depending on the amount of such claims, the protection offered by the Repurchasing Debtors might not make the counter-parties whole if these cases were to convert to ones under chapter 7 at some point in the future.

19.    As set forth above, UBS agrees that the Repurchasing Debtors should provide protection to UBS in connection with the Repurchasing Debtors' failure to turn over UBS's Property (and potentially to other counter-parties with respect to their master repurchase agreements). However, the Repurchasing Debtors must not be allowed to delay or stay the proceedings with respect to the Injunction Motion or the Complaint as a result of the proposed Adequate Protection.

[remainder of page intentionally left blank]

WHEREFORE, UBS respectfully requests that the Court deny the Adequate Protection Motion to the extent the relief requested by the Repurchasing Debtors seeks to stay or in any way delay resolution of the Injunction Motion or the Complaint.

Dated:  May 25, 2007

ASHBY & GEDDES, P.A.

_(signature)_

William P. Bowden (DE No. 2553)
Gregory A. Taylor (DE No. 4008)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware  19899
Tel:    (302) 654-1888
Fax:    (302) 654-2067

- and -

Richard A. Chesley (IL No. 6240877)
Kimberly D. Newmarch (DE No. 4340)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Tel: (312) 499-6000
Fax:  (312) 499-6100

- and -

Keith W. Miller (NY No. 2421717)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York  10022
Tel: (212) 318-6000
Fax:  (212) 319-4090

***Co-Counsel to UBS Real Estate Securities Inc.***

180942.1