IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : **Chapter 11** |
| | : |
| **NEW CENTURY TRS HOLDINGS** | : **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : |
| | : **Jointly Administered** |
| Debtors. | : Re: Dkt. No. 635 |
| | : |

## DEBTORS' RESPONSE TO MOTION OF DANIEL J. RUBIO, JOHN HICKS, DAVID VIZCARA, INDIVIDUALS ON BEHALF OF THEMSELVES, ALL OTHERS SIMILARLY SITUATED, AND THE GENERAL PUBLIC, FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

The above-captioned debtors and debtors-in-possession (the "Debtors" or "New Century")

hereby respond and object (the "Objection") to the motion (the "Motion") of Daniel J. Rubio, John

Hicks and David Vizcara, individuals, on behalf of themselves and all others similarly situated

("Plaintiffs") for an order granting relief from the automatic stay (Dkt. No. 635). In support of

their Objection, the Debtors respectfully represent as follows.

### INTRODUCTION

Since the chapter 11 case was filed, New Century and its management have been engaged

in extensive strategic planning and preparation for selling the Debtors' most vital remaining assets,

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L. P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

have closed one sale and are now on the threshold of selling additional assets. During the initial several weeks of the case, New Century also has been immersed in various other pressing, complex matters, including securing post-petition financing, addressing vendor demands, and attending to employee retention issues. New Century has also executed major reductions in its workforce. In order to sustain the momentum that is necessary to successfully administer this complex case, it is critical that New Century follow an orderly and cohesive case strategy. There remains much to be done before New Century is ready to develop a chapter 11 plan and liquidate claims of individual creditors.

By the instant motion, Plaintiffs seek relief from the automatic stay to continue pre-petition litigation in the federal district court in California against New Century and/or certain former employees regarding New Century's pre-petition practices concerning overtime wages and meal and rest periods. Plaintiffs only come to this Court after two attempts to continue litigation in the district court without relief from the automatic stay, despite being instructed both times by the district court judge that the action must stop without this Court's permission. New Century does not presently have indemnity for fees in the action. Thus, by persisting in their attempts to liquidate their claims against New Century, Plaintiffs already have caused the bankruptcy estate to incur attorneys' fees and have distracted vital and limited resources within New Century's legal department.

With limited exceptions, litigants in pre-petition lawsuits must file a proof of claim to be adjudicated in the bankruptcy court in due course like other pre-petition claims. The stay of pre-petition litigation and eventual liquidation of claims in the bankruptcy court is essential for large liquidating estates like New Century, where there are a number of actions pending in venues across the country in which the debtor is a party, and the debtors no longer have the same

2

workforce as when it was operating. Through the claims process, matters generally can be resolved efficiently and on a level playing field with other creditors after development of a chapter 11 plan.

Movants seeking to lift the automatic stay to litigate in an alternative forum must demonstrate sufficient "cause" to alter this process. As discussed below, it is not enough that Plaintiffs prefer to liquidate their claim in an alternative forum. In addition, the fact that there *might* be available insurance to cover a judgment does not establish cause to lift the automatic stay where, as here, (i) the magnitude of the potential judgment which Plaintiffs, on behalf of the class, seek, could exhaust policy limits, and (ii) there is a significant doubt as to whether coverage actually exists, which means that even defense costs might not be covered (and are not currently being covered) and will be borne by the bankruptcy estates. Both the bankruptcy case and Plaintiffs' litigation are in their early stages, and there are no complex novel issues that have been developed in the federal court. Accordingly, the policies of the automatic stay and balance of harms weigh strongly against granting relief from the stay here.

New Century respectfully submits that Plaintiffs have failed to establish sufficient "cause" to lift the stay. Furthermore, by continuing to litigate post-petition in the district court without permission by the Court, Plaintiffs come to this Court with unclean hands and should not be granted relief on this basis. For the foregoing reasons, and as discussed in greater detail below, New Century requests that the Motion be denied.

## THE RUBIO ACTION

Plaintiffs, who are former employees of New Century on behalf of themselves and others similarly situated, commenced a suit styled *Daniel J. Rubio, et al. v. New Century Mortgage Corporation* (the "Rubio Action") in March 2005 in the Superior Court of California, County of

3

Orange against New Century Mortgage Corporation.[2]  The Complaint alleges that New Century

failed to pay overtime, provide adequate meal periods and paid rest periods, took illegal paycheck

deductions, and failed to maintain proper records for loan officers under the California Labor Code

(the "Labor Code") and Fair Labor Standards Act (the "FLSA") as a predicate violation of the

California Unfair Competition Law.  The Plaintiffs seek unspecified monetary damages, including

wages, statutory penalties, interest and attorneys fees.

On August 29, 2006, the Rubio Action was removed from the state court to the United

States District Court for the Central District of California (the "District Court") and assigned case

number SACV-06-811 CJC.

On September 28, 2006, the Honorable Cormac J. Carney, United States District Judge,

granted New Century's motions to dismiss and to strike portions of the Plaintiffs' Second

Amended Complaint, with leave to amend.  See Docket No. 16.  In the order disposing of the

motions, the District Court ruled, *inter alia*, that in accordance with precedent recoveries under

Labor Code § 226.7 are penalties and not wages, and that the statute of limitations was improperly

defined in the Second Amended Complaint under California law.  Id.  On October 18, 2006, the

Plaintiffs filed the Third Amended Complaint.  In a motion to strike portions of the Third

Amended Complaint, New Century requested that the District Court strike the Plaintiffs' plea for

punitive damages as the Plaintiffs' causes of action are statutory, not tort-based, and thus the

Plaintiffs' recovery is limited to statutory penalties.  The District Court granted New Century's

motion to strike the punitive damages plea without leave to amend.  See Exhibit A hereto.

Pursuant to stipulation of the parties, on January 4, 2007, the Plaintiffs filed the Fourth Amended

---

[2] The Complaint does not identify the number of class members.  In the motion for relief from stay, the
Plaintiffs state that the number of class members is approximately 1,600.  See Motion, ¶ 5

RLF1-3157598-1

Complaint, striking the plea for punitive damages and adding two additional employees as named Plaintiffs and purported class members.

On November 7, 2006, the District Court set a deadline of May 5, 2007 for the Plaintiffs to file their class certification motion pursuant to Federal Rules of Civil Procedure ("FRCP") 23. The Plaintiffs propounded and obtained written discovery from New Century and took depositions pertaining to the evidentiary requirements for class certification. However, the Plaintiffs contend that New Century had not yet provided all of the requisite evidence. Accordingly, on March 29, 2007, the District Court agreed to extend the deadline for the Plaintiffs to file their class certification motion from May 5, 2007 to June 18, 2007 pursuant to stipulation of the parties. See Exhibit B hereto.

The District Court has not set a discovery cutoff, scheduled hearings on summary judgment motions nor set a trial date in the action. In addition, the Plaintiffs have not filed their class certification motion.

On April 2, 2007 (the "Petition Date"), New Century filed the bankruptcy case. On the Petition Date, New Century's counsel explicitly advised the Plaintiffs' counsel of the filing of New Century's bankruptcy case. Shortly thereafter, despite actual knowledge of the bankruptcy filing, Plaintiffs filed a Motion for Leave to File Fifth Amended Complaint. See Docket No. 56. By that motion, the Plaintiffs sought to add as Defendants two additional debtors: New Century Financial Corporation and Home123 Corporation. In addition, the Plaintiffs also sought to add as Defendants five former employees of New Century (the "Potential Individual Defendants").

On April 11, 2007, the District Court issued an order taking all proceedings off calendar and instructing the parties to advise the District Court when the bankruptcy case has been completed. See Exhibit C hereto. However, on April 16, 2007, the Plaintiffs filed an *ex parte*

application with the District Court seeking an order that the Rubio Action could proceed against the Potential Individual Defendants because such individuals are not Debtors. On April 25, 2007, the District Court denied the *ex parte* application on the grounds that New Century's interests would be intertwined in the outcome of the action and thus such litigation is barred by the automatic stay absent relief from this Court.  See Exhibit D hereto. New Century retained pre-petition counsel of record to defend the *ex parte* application.

## INSURANCE

In the Motion, the Plaintiffs allege that "upon information and belief" New Century possesses liability insurance that is sufficient to cover losses to the extent that New Century and/or the Potential Individual Defendants are adjudged liable in the Rubio Action. The sole basis for the Plaintiffs' speculation appears to be a portion of New Century's first day motion requesting permission to pay premiums for policies to be maintained by the bankruptcy estate during the chapter 11 case for employee benefits, legal liability, commercial umbrella liability, directors and officers liability and employment practices liability, among others. However, these policies do not cover losses in the Rubio Action. The only potentially relevant policy, New Century's employment practices liability insurance ("EPLI"), did not extend coverage to wage and hour disputes like the Rubio Action during the pertinent policy periods. Indeed, the Debtors tendered the Rubio Action to the EPLI insurance carrier, but the carrier did not provide a defense. New Century also carried directors and officers insurance ("D&O") during the relevant timeframe, but no claim has been tendered under that policy for the Rubio Action because as of the Petition Date, the complaint named only New Century, not directors and officers, as defendants. To the extent that Potential Individual Defendants are eventually added as parties to the litigation, actual D&O recovery would be subject to a determination of whether the Potential Individual Defendants are D&O insureds. In addition, D&O coverage limits, reporting requirements and other factors could

6

affect the Plaintiffs' recovery, and there may be other Plaintiffs making claims under these limited policies.

Prior to the Petition Date, New Century also maintained a wholly owned insurance subsidiary, NCMC Insurance Corporation, Inc., a.k.a. the "Captive", which served as an employment practices liability insurance program to assist in indemnification of a portion of the Debtors' applicable insurance policy deductible and/or self-insured retention. However, a substantial question exists as to whether the Captive would provide coverage for the Rubio Action, particularly in light of the facts that (i) the Captive is self-funded, (ii) New Century's Captive insurance EPLI policy excludes coverage of multiple claimants wage and hour disputes, and (iii) New Century's EPLI carrier has not provided a defense in response to the Debtors' tendering the claim to the carrier, in light of the policy's exclusion of wage and hour claims.

## "CAUSE" DOES NOT EXIST TO LIFT THE STAY FOR THE RUBIO ACTION

"Cause" does not exist to lift the stay for the Rubio Action to proceed in the District Court. The Rubio Action is a typical wage and hour dispute that this Court is as well-suited to determine as the District Court. While the District Court has adjudicated limited issues of law, the Rubio Action is still in its early stages. The District Court has not been required to delve into the merits of the action or of the Plaintiffs' class certification motion. In addition, if relief from stay is granted, insurance limits may be exhausted. The Motion threatens to disrupt the orderly administration of the estate, diminish estate assets and provide unequal treatment of creditors. As discussed below, this is precisely the scenario that the automatic stay is intended to prevent, and thus, the Motion should be denied.

## I.    BANKRUPTCY CODE 362.

Bankruptcy Code section 362(a) stays the commencement or continuation of litigation against the debtor and stays any attempt to obtain possession of (or control over) estate assets. See

7

11 U.S.C. § 362(a).[3]  The Code's automatic stay provision "is one of the fundamental debtor protections provided by the bankruptcy laws." S. Rep. No. 95-989, 95 Cong., 2d Sess. 54-55, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840-41 (1978). The automatic stay is designed "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." In re Continental Airlines, 177 B.R. 475, 479 (D. Del. 1993) (quoting A. H. Robins Co. v. Piccinin, 788 F. 2d 994, 998 (4th Cir.), cert. denied, 479 U.S. 876 (1986)).

The automatic stay is not absolute. A bankruptcy court may grant relief from the automatic stay where sufficient "cause" is present. See 11 U.S.C. § 362(d). There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. Rather, in resolving motions for relief for "cause" from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant. In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993) (citing Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.), 938 F. 2d 731, 734-37 (7th

---

[3]  Section 362(a) provides, in relevant part:

(a)    Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . operates as a stay, applicable to all entities, of –

(1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . .

(3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate .

11 U.S.C. § 362(a)

Cir. 1991)); In re Peregrine Systems, 314 B.R. 31, 47 (Bankr. D. Del. 2004), aff'd in part, rev'd in part; In the Matter of Rexene Products Company, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

Sufficient "cause" to grant relief from stay to allow completion of litigation in an alternative forum is typically found where the litigation has already proceeded for an extended period of time and is at an advanced stage prior to the filing of a bankruptcy petition – for example, where substantial discovery has been completed and the case is prepared for or on the eve of trial – and therefore can be more expeditiously resolved in the alternative forum. See, e.g., Robbins v. Robbins (In re Robbins), 964 F. 2d 342, 345-46 (4th Cir. 1992); Packerland Packing Co., Inc. v. Griffith Brokerage Co. (In re Kemble), 776 F. 2d 802 (9th Cir. 1985); Piombo Corp. v. Castlerock Properties (In re Castlerock Properties), 781 F. 2d 159 (9th Cir. 1986); In re Blan, 237 B.R. 737 (8th Cir. BAP 1999). Similarly, courts have found "cause" justifying relief from stay where the claims subject to litigation are extremely complex and based on specialized, novel or undetermined issues of state law that are best addressed in the alternative forum. See, e.g. Robbins, 964 F.2d at 346.

However, where the alternative forum is unable to efficiently determine the claims subject to litigation (or the bankruptcy court can determine such claims with equal efficiency), or allowing the litigation to proceed in such forum will result in duplicative litigation and interfere with or delay the administration of the bankruptcy case, courts routinely refuse to grant relief from stay. See e.g. Sonnax Industries v. Tri Component Products Corp. (In re Sonnax Industries, Inc.), 97 F. 2d 1280 (2nd Cir. 1990); In re Wintroub, 283 B.R. 743 (Bankr. 8th Cir. 2002); In re Eagle Enterprises, Inc., 265 B.R. 671 (Bankr. E.D. Pa. 2001); In re Paxson Electric Co., 242 B.R 67 (Bankr. M.D. Fla. 1999). For example, where the litigation involves claims that will be discharged in the bankruptcy case, it is appropriate to deny relief from stay in order to promote judicial economy and minimize duplicative and unnecessary litigation. See Benedor Corp. v. Conejo

Enterprises, Inc. (In re Conejo Enterprises, Inc.), 96 F. 3d 346 (9th Cir. 1996). Likewise, where applicable state law is not complicated or unsettled with respect to the claim and it can be readily adjudicated by the bankruptcy court, relief from stay should be denied. See e.g. In re Nexus Communications, Inc., 55 B.R. 596 (Bankr. E.D.N.C. 1985).

Here, the balancing of competing interests and policy considerations weighs against a finding of cause to lift the stay with respect of the Rubio Action.

## II.    THE BALANCE OF COMPETING INTERESTS WEIGHS AGAINST GRANTING THE MOTION.

The balance of competing interests weighs against granting the Motion. In balancing the competing interests of the debtor and the movant, courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. Id. The initial burden of proof is on the movant to establish a prima facie case that the test has been satisfied, which, if established, may be refuted by the debtor. In re Rexene, 141 B.R. at 577; In the Matter of Pursuit Athletic Footwear, Inc., 193 B.R. 713, 720 (Bankr. D. Del. 1996).

### A.    Lifting the Stay Would Seriously Prejudice New Century.

Lifting the stay would seriously prejudice New Century. While any judgment or indemnification claims would be only general unsecured claims against the bankruptcy estate, a settlement or judgment in the magnitude sought by the Plaintiffs would be substantial given the potential number of employees in the purported class. The potential existence of insurance does not moot the issue, as (i) coverage is uncertain at best, (ii) even if coverage applies, it is subject to a very large self insured retention, and (iii) given the potential size of the class, an adverse judgment could exhaust policy limits. Accordingly, New Century needs to be prepared to actively defend its interests in the matter.

10

Defending the Rubio Action would be a substantial undertaking. As discussed above, the Rubio Action is in its initial stages. No discovery cutoff, summary judgment hearings or trial date have been set, and the class certification issue has not been briefed or adjudicated. Thus, if New Century does need to defend, litigating the action will involve fact investigation and analysis, trial preparation and legal briefing.

New Century's legal department is already stretched thin by the demands of Chapter 11 case administration and asset sales. In addition, permitting this case to go forward in the District Court would invite further relief from stay motions with respect to other pre-petition lawsuits in which New Century is a party. Defending against multiple motions for relief from stay and litigating in jurisdictions across the country would be a major drain on both New Century's internal resources and any available insurance. At this juncture of the chapter 11 case, the company's employees must focus on matters that are critical to all stakeholders, including remaining asset sales and the development of a chapter 11 plan.

In addition, even if there ultimately is insurance on this claim through the EPL policy (which, as set forth above, is unlikely, given that the EPLI policy excludes wage and hour actions and D&O insurance is currently inapplicable because directors and officers have not been named), such coverage would be subject to a very large self-insured retention. The practical result is that the Debtors would bear the defense costs, which will be expensive, all to liquidate an unsecured claim. That results is not in the best interests of the estate.

B.      **The Balance of Hardships Weighs Against Granting the Motion.**

The balance of hardships weighs against granting the Motion. The Plaintiffs' sole basis for cause is that the documents, counsel and witnesses are in California, such that they will incur additional expense and inconvenience if they are eventually forced to litigate in Delaware. See Motion ¶ 24. That argument fails for multiple reasons. First, it cannot possibly justify stay relief

11

now, because the Debtors have not yet asked this Court to adjudicate the Rubio Action. Although

the Debtors certainly reserve the right to do so in the future, their only current request is to

maintain the stay. Accordingly, even if Plaintiffs argument ever would be persuasive, it currently

is not ripe.  Second, the Plaintiffs are not precluded from using in a future bankruptcy court

proceeding documents that they have already obtained in the Rubio Action. Thus, the location of

documents is irrelevant.  Third, the Plaintiffs have already retained local bankruptcy counsel in

Delaware to represent them in connection with the Motion.  Balanced against the estate's interest

in the orderly administration of the case -- as well as conservation and fair distribution of any

insurance proceeds to the extent available -- New Century submits that the balance of hardships

weighs against granting the Motion.

C.    **The Plaintiffs Have Not Demonstrated Probability of Success On the Merits.**

The Plaintiffs have not demonstrated probability of success on the merits.  As discussed

above, there has been no summary judgment motion or any issues tried in the District Court that

demonstrate likelihood of success on the merits.  Where, as here, there is no evidence of the

slightest probability of success on the merits, it is inappropriate to lift the stay.  See In re Peregrine

Systems, 314 B.R. at 47.

D.    **Policies Underlying The Automatic Stay Also Weigh Against A Finding Of "Cause".**

Policies underlying the automatic stay also weigh against a finding of "cause".  The

automatic stay is designed to relieve the debtor "of the financial pressures that drove him into

bankruptcy," see Borman v. Raymark Indus., Inc., 946 F. 2d 1031, 1033 (3rd Cir. 1991) (quoting

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)), to protect the bankruptcy estate from

being whittled away by creditors' lawsuits, see Maritime Elec. Co. v. United Jersey Bank, 959 F.

2d 1194, 1204 (3rd Cir. 1991), and to implement a system where all creditors will be treated

12

equally.  University Med. Center v. Sullivan (In re Univ. Med. Center), 973 F. 2d 1065, 1074 (3rd Cir. 1992).  New Century respectfully submits that lifting the stay to enable the Plaintiffs to litigate the Rubio Action and to collect available insurance, if any, is not in accord with these policies.

Lifting the stay for the Rubio Action would increase financial pressures on New Century and whittle away the bankruptcy estate.  While a judgment or settlement would be only a general unsecured claim against the bankruptcy estate, to the extent that there is available insurance a judgment or settlement would cause that asset to be diminished and potentially exhausted to the exclusion of other claimants.  In addition, while attorneys fees incurred by New Century prior to the Petition Date are also a general unsecured claim against the bankruptcy estate, if New Century is forced to defend in the District Court going forward, the bankruptcy estate would incur post-petition attorneys fees entitled to administrative priority, because even if any insurance policy or captive provides indemnity on the Rubio claims, the self-insured retention is so large that defense costs, for all intents and purposes, will not be indemnified.  In addition, authorizing the Plaintiffs to resolve the Rubio Action immediately in their choice of forum while other creditors are forced to wait and liquidate their claims in bankruptcy court causes unequal treatment of creditors.  Equalizing the situation for all creditors would necessitate lifting of the stay in other pending matters, thereby exacerbating the attendant drain on estate resources.

Finally, as discussed above, the Rubio Action does not appear to present novel or complicated issues, and the case is still in the early stages.  Thus, the Bankruptcy Court is equally well-positioned as the District Court to adjudicate disputes.  Accordingly, judicial economy will not be served by granting relief from stay.

13

III.    **THE MOTION SHOULD BE DENIED BECAUSE THE PLAINTIFFS HAVE UNCLEAN HANDS.**

The Motion should be denied because the Plaintiffs have unclean hands. The Supreme Court has long recognized that bankruptcy courts are equitable tribunals that apply equitable principles in the administration of bankruptcy proceedings. See Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S. Ct. 695 (1934) ("[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity."). While the enactment of the Code in 1978 increased the degree of regulation Congress imposed upon bankruptcy proceedings, it did not appear to alter bankruptcy courts' fundamental nature. See H.R. Rep. No. 95-595, at 359 (1977) (stating that, under the Bankruptcy Code, "[t]he bankruptcy court will remain a court of equity") (citing Local Loan Co., 292 U.S. at 240, 54 S. Ct. 695). A string of post-enactment Supreme Court decisions is consistent that bankruptcy courts are fundamentally equitable in nature -- see Young v. United States, 534 U.S. 43, 50, 122 S. Ct. 1036 (2002) ("[B]ankruptcy courts ... are courts of equity and 'apply the principles and rules of equity jurisprudence.'") (quoting Pepper v. Litton, 308 U.S. 295, 304, 60 S. Ct. 238 (1939)); United States v. Energy Resources Co., 495 U.S. 545, 549, 110 S. Ct. 2139 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships.") -- and by the Bankruptcy Code itself. See 11 U.S.C. § 105(a) ("The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.").

It is an ancient and established maxim of equity jurisprudence that he who comes into equity must come with clean hands. The equitable doctrine of clean hands expresses the principle that where a party comes into equity for relief he or she must show that his or her conduct has been fair, equitable, and honest as to the particular controversy in issue. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S. Ct. 146 (1933); Johnson v. Yellow Cab Transit 16

14

Co., 321 U.S. 383, 387, 64 S. Ct. 622 (1944); 27A Am. Jur. 2d Equity § 126. A complainant will not be permitted to take advantage of his or her own wrong. Bishop v. Bishop, 257 F. 2d 495, 500 (3rd Cir. 1958), cert. denied, 359 U.S. 914, 79 S. Ct. 578; Ohio Oil Co. v. Sharp, 135 F. 2d 303 (10th Cir. 1943); Batesville Truck Line, Inc. v. Martin, 219 Ark. 603, 243 SW 2d 729 (1951). If a party seeks relief in equity, he must be able to show that on his part there has been honesty and fair dealing. Wheeler v. Sage, 68 U.S. 518, 529, 17 L. Ed. 646 (1863).

This maxim is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion" of the court. Keystone Driller v. General Excavator, 290 U.S. at 246, 54 S. Ct. at 148. Further: "[O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim...." Bishop v. Bishop, 257 F. 2d at 500.

Here, the Plaintiffs' repeated continuation of their litigation in the District Court, in knowing violation of the automatic stay, constitutes unclean hands which bars them from being entitled to now seek relief from the automatic stay. The Plaintiffs concede that they filed a motion to amend their complaint in the District Court after the bankruptcy case was filed. See Motion, ¶ 10. In that post-petition motion, the Plaintiffs sought to add as defendants *two debtors* as well as the five Potential Individual Defendants. Id. The Plaintiffs contend that they did not have knowledge of the chapter 11 petition when they filed the motion. However, New Century's counsel of record in the Rubio Action contacted the Plaintiffs' counsel before the motion was filed and informed them of the bankruptcy filing. There were press reports about the bankruptcy filing in all the major newspapers, and press reports during the weeks leading up to the bankruptcy filing

15

indicated that New Century had hired bankruptcy counsel and was preparing for an imminent filing.

Even if the Plaintiffs had no knowledge of the bankruptcy filing when they filed the motion to amend, the Plaintiffs continued litigating in the District Court for weeks after the case was filed. As noted above, on April 11, 2007, the District Court issued an order taking all proceedings in the Rubio Action off calendar and specifically instructed the Plaintiffs that the action would be inactive due to the bankruptcy case. Still, the Plaintiffs continued to litigate in the District Court, filing an *ex parte* application for an order permitting the Plaintiffs to continue the Rubio Action against the Potential Individual Defendants. This application was denied with a second instruction that the action would not proceed in violation of the automatic stay. Only after the District Court has repeatedly directed the Plaintiffs to stop litigation in that forum have the Plaintiffs finally come to this Court for relief. In so doing, the Plaintiffs argue that they should be able to continue to litigate in the District Court to the detriment of the estate. New Century respectfully submits that this conduct on the part of the Plaintiffs, which together with the instant motion has already caused New Century to incur attorneys fees and distraction of members of the in-house legal department, should not be condoned by the Court by now granting stay relief.

16

## CONCLUSION

For the foregoing reasons, New Century respectfully asserts that cause has not been shown

to lift the stay with respect to the Rubio Action and requests that the Motion by denied.

Dated: May 30, 2007
      Wilmington, Delaware

Respectfully submitted,


Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Ben H. Logan
Suzzanne S. Uhland
Victoria A. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

RLF1-3157598-1