## Exhibit A

## THE STIPULATION

# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | : |
| | : Case No. 07-10416 (KJC) |
| | : |
| Debtors. | : Jointly Administered |

## STIPULATION AND AGREEMENT AMONG THE DEBTORS AND CITIGROUP GLOBAL MARKETS REALTY CORP. WITH RESPECT TO THE PAYMENT OF CASH COLLATERAL

The above-referenced debtors and debtors in possession (collectively, the "*Debtors*") and Citigroup Global Markets Realty Corp. ("*Citigroup*"), by and through their respective undersigned counsel, hereby stipulate and agree as follows:

RECITALS:

A.  On April 2, 2007, the Debtors each commenced a case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware corporation; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Prevention and Consumer Protection Act of 2005 (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

B. An active and profitable part of the Debtors' business is its servicing platform, which is conducted largely through New Century Mortgage Corporation ("***NCMC***"). Loan servicing typically involves collecting and remitting loan payments received from borrowers, making required advances (the "***Advances***") and, in certain circumstances, contacting delinquent borrowers and supervising foreclosure actions and property dispositions following unremedied defaults.

C. The Debtors presently service approximately $19 billion of loans owned by third parties. The Debtors' mortgage servicing rights are generally established in servicing contracts (the "***Servicing Contracts***") with securitization trusts or third party whole loan purchasers.

D. With respect to Advances, servicing contracts generally require the servicer to advance principal, interest, and certain "property protection" costs (such as taxes and insurance), and other amounts, with respect to delinquent mortgage loans, unless such amounts are determined to be unrecoverable from the related loans. Advances typically receive a priority of payment in the securitization trust documents.

E. To finance Advances before the Petition Date, NCMC and Citigroup entered into that certain Servicer Advance Financing Facility Agreement, dated August 28, 2003 (as amended from time to time, the "***Servicer Advance Facility***") and that certain Amended and Restated Guaranty dated as of October 1, 2004 (as amended from time to time, the "***Guaranty***")

2

RLF1-3154112-1

by New Century Financial Corporation ("*NCF*") in favor of Citigroup in support of the Servicer Advance Facility.

F. Citigroup assets that Section 3.1 of the Servicer Advance Facility provides that NCMC pledged and granted to Citigroup as security for the prompt and complete payment and performance of all Obligations (as defined in the Servicer Advance Facility) under the Servicer Advance Facility, a security interest in and assignment of all of NCMC's right, title and interest in various property and interests in property (collectively, the "*Collateral*"), including, among other things, all of NCMC's rights to receive reimbursement of Advances. Citigroup alleges that the security interest granted to Citigroup includes all Advances. The Debtors and the Committee dispute whether the security interest granted to Citigroup includes all Advances or is limited only to certain Advances for principal and interest and taxes and insurance. Citigroup and the Debtors desire to enter into this Stipulation subject to a full reservation on these, and other issues, as set forth in Section 7 below.

G. Citigroup asserts that it properly perfected its security interest in the Collateral by filing with the Secretary of State of California a Form UCC-1 Financing Statement on or about September 10, 2003.

H. In a letter dated March 8, 2007 from Citigroup to NCMC and NCF, Citigroup declared an event of default under the Servicer Advance Facility, indicating the aggregate principal amount of $31,928,880.13, together with interest, fees, expenses and other charges as provided in the Servicer Advance Facility and Guarantee, were immediately due and payable, and further indicated that Citigroup would no longer entertain requests for funding under the Servicer Advance Facility or otherwise.

I.  The Debtors have not sought authority to use collections on Advances in existence on the Petition Date or thereafter, which Citigroup asserts is its cash collateral (the "*Citigroup Cash Collateral*"). Further, Citigroup has formally notified the Debtors that it does not consent to the use of the Citigroup Cash Collateral.

J.  Pending repayment of the Obligtions, Citigroup asserts that interest will continue to accrue under the Servicer Advance Facility.

K.  The parties hereto desire to resolve the matters with respect to the Citigroup Cash Collateral in accordance with the following terms and conditions:

AGREEMENT:

1.  Within five (5) business days after the Stipulation Effective Date (as hereinafter defined) and without further order of the Bankruptcy Court or other action, the Debtors shall pay to Citigroup an amount equal to the collections on all Advances in existence on the Petition Date through and including the Stipulation Effective Date in accordance with the instructions included in paragraph three (3) below (the "*Initial Payment*"). The Debtors shall provide written notice to the Official Committee of Unsecured Creditors (the "*Committee*") at least one (1) business day prior to the making of the Initial Payment stating the date the Initial Payment is being made and the amount of the Initial Payment. The foregoing notice shall be accompanied by appropriate reconciliation/accounting documentation indicating that the Initial Payment represents only collections on postpetition Advances, including information allocating the collections represented by the Initial Payment to Advances pledged to Citigroup under the Servicer Advance Facility.

2.  Following payment of the Citigroup Cash Collateral in accordance with paragraph (1) hereof, and pending repayment in full of all Obligations (as defined in the Servicer

4

Advance Facility) due and owing to Citigroup under the Servicer Advance Facility that are allowed under the Bankruptcy Code and other applicable law, the Debtors shall pay to Citigroup all subsequent collections on Advances in existence on the Petition Date as and when collected in accordance with the instructions included in paragraph three (3) below on a weekly basis following payment of the Initial Payment, up to an amount equal to (i) the principal balance due and owing under the Servicer Advance Facility as of the Petition Date plus (ii) the amount of unpaid interest that was accrued and owing under the Servicer Advance Facility as of the Petition Date (the "***Petition Date P&I Amount***"). Such weekly payments shall be due within 5 Business Days of the cutoff for calculating the amount due, such that (absent agreement to the contrary), payments will normally be made each Friday for postpetition collections on Advances received by the Debtors through the prior Friday. Postpetition collections on the Citigroup Cash Collateral received by the Debtors in excess of the Petition Date P&I Amount and up to the amount asserted by Citigroup as interest computed at the default rate and Citigroup's reasonable estimate of postpetition fees and costs incurred under the Servicer Advance Facility shall be segregated and held by the Debtors pending an agreement or final order of the Bankruptcy Court as to the amount of Citigroup's total allowed claim with respect to the Servicer Advance Facility. No later than one (1) Business Day before each such payment is made pursuant to this paragraph, the Debtors shall provide a written notice to the Committee stating the date such payment is being made and the amount of such payment, including information allocating the collections represented by such payment to particular Advances.

3. Payments of Citigroup Cash Collateral made to Citigroup pursuant to paragraphs one (1) and two (2) hereof shall be made by wire transfer in accordance with the following instructions:

        Bank:      Chase Manhattan Bank
        ABA:      021-000-021
        A/C:       066-612-187
        A/C Name:  Citigroup Global Markets Realty Corp.
        Re:       New Century Servicing Advances
        Attn:     Mortgage Operations (212-615-7725)

4. Within five (5) Business Days after the Stipulation Effective Date, the Debtors shall provide Citigroup and the Committee with an accounting of all Advances collected since the Petition Date and the underlying mortgage loans related thereto.

5. Pursuant to section 13 of the Servicer Advance Facility, Citigroup shall be entitled to engage an independent third party to perform an audit and/or due diligence review with respect to the Collateral on or after June 20, 2007 if (i) the Debtors have not closed the sale on the servicing business assets, as contemplated in the Bankruptcy Court's order dated April 20, 2007 [Doc. No. 340], on or prior to June 20, 2007, and (ii) payment in full of all Obligations due and owing to Citigroup under the Servicer Advance Facility has not been made on or before June 20, 2007.

6. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified upon the occurrence of the Stipulation Effective Date, solely to the extent necessary to permit the Debtors to comply with the terms and conditions of this Stipulation.

7. Nothing herein shall determine or be deemed to be an admission by any party as to the extent, amount, validity, enforceability, perfection or priority of any claim or lien asserted by Citigroup, including any claims to and/or liens on the Citigroup Cash Collateral and/or the Advances. All rights of all parties with respect to such issues are reserved for subsequent challenge. Further, Citigroup's interest in and ability to recover collections on

Advances received by the Debtors prior to the Petition Date is expressly reserved. The Bankruptcy Court shall retain jurisdiction to determine all such issues.

8. The parties hereto shall cooperate with one another and take all action reasonably necessary to effectuate the intent and purpose of this Stipulation.

9. This Stipulation contains the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements and undertakings between the parties relating to the subject matter hereof.

10. This Stipulation can only be amended or otherwise modified by a signed writing executed by the parties hereto with the prior written consent of the Committee.

11. Each person who executes this Stipulation represents that he or she is duly authorized to execute this Stipulation on behalf of the respective parties hereto and that each party had full knowledge of and has consented to this Stipulation.

12. This Stipulation may be executed in counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument and it shall constitute sufficient proof of this Stipulation to present any copy, copies or facsimiles signed by the parties hereto to be charged.

13. The terms of this Stipulation shall be binding on the parties and their respective successors and assigns.

14. This Stipulation is subject to the approval of the Bankruptcy Court and shall be of no force and effect until such approval is obtained. The date on which an order is entered by the Bankruptcy Court approving this Stipulation shall be the "Stipulation Effective Date."

Dated: May 22, 2007

| | |
|---|---|
| Mark D. Collins (No. 2981) | Marla R. Eskin (No. 2989) |
| Michael J. Merchant (No. 3854) | Mark T. Hurford (No. 3299) |
| Marcos A. Ramos (No. 4450) | CAMPBELL & LEVINE, LLC |
| RICHARDS, LAYTON & FINGER, P.A. | 800 North King Street, Suite 300 |
| One Rodney Square | Wilmington, Delaware 19801 |
| P.O. Box 551 | Telephone: (302) 426-1900 |
| Wilmington, Delaware 19899 | Facsimile: (302) 426-9947 |
| Telephone: (302) 651-7700 | |
| Facsimile: (302) 651-7701 | |
| -and- | -and- |
| Suzzanne S. Uhland | Paul M. Basta |
| Ben H. Logan | KIRKLAND & ELLIS LLP |
| O'MELVENY & MYERS LLP | Citigroup Center |
| 275 Battery Street | 153 East 53rd Street |
| San Francisco, California 94111 | New York, New York 10022-4611 |
| Telephone: (415) 984-8700 | Telephone: (212) 446-4800 |
| Facsimile: (415) 984-8701 | Facsimile: (212) 446-4900 |
| ATTORNEYS FOR DEBTORS AND DEBTORS AND IN POSSESSION | ATTORNEYS FOR CITIGROUP GLOBAL MARKETS REALTY CORP. |

Christopher M. Samis (No. 4909)