IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Hearing Date: 6/21/07 at 2:00 p.m. |
| | : | Objection Deadline: 6/15/07 at 4:00 p.m. |
| | : | |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER (A) APPROVING THE SALE OF CERTAIN TECHNOLOGY ASSETS, (B) APPROVING AND ESTABLISHING PROCEDURES RELATED TO THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH AND (C) GRANTING RELATED RELIEF

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"),

hereby submit this motion (the "Motion") pursuant to sections 105(a), 363 and 365 of title 11 of

the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), and Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

for the entry of an order (a) approving the sale of certain technology related assets (the "Technology Assets") used by the Debtors in their loan origination businesses, (b) approving and establishing procedures related to the sale of the Technology Assets and the assumption and assignment of certain executory contracts and unexpired leases in connection therewith and (c) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought in this Motion are Bankruptcy Code Sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014.

## BACKGROUND[2]

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, is one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation, NCF originates, purchases, sells, and services mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering

---

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Monica McCarthy and Holly Etlin in support of Chapter 11 Petitions and Request for First Day Relief.

conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal

Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA").

During the fiscal year ending December 31, 2006, the Debtors originated or purchased

approximately $60 billion of mortgage loans, most of which were sold in the secondary market.

Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans

have helped millions of homebuyers and homeowners across the nation access credit and realize

the benefits of home ownership, including many who might not otherwise have been able to do

so.

4.      On April 2, 2007, the Debtors filed the instant petitions for relief and the

Debtors' bankruptcy cases are being jointly administered pursuant to an order of the Court. The

Debtors are operating their business and managing their affairs as debtors and debtors in

possession.

5.      By order entered on May 23, 2007, the Court authorized the sale of the

Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an

affiliate of Carrington Capital Management, LLC ("Carrington"). At the closing of the

Carrington Sale, Carrington will transfer the sale proceeds to the Debtors and the Debtors will

enter into an agreement with Carrington to transition the servicing business. The Debtors will

continue operating the servicing business in the ordinary course while it is transitioned to

Carrington. The Debtors estimate that the transition period could take up to six months but may

be continued upon request from Carrington from time to time.

## RELIEF REQUESTED

6.      The Debtors hereby request, pursuant to Bankruptcy Code Sections 105,

363, and 365 and Bankruptcy Rules 6004 and 6006, that the Court (a) approve the proposed sale

of the Technology Assets that the Debtors will auction and seek to sell to the highest and best

bidder pursuant to the process described below, (b) approve and establish procedures related to the sale of the Technology Assets, including procedures related to the assumption and assignment of certain executory contracts and unexpired leases and (c) grant related relief.

## THE TECHNOLOGY ASSETS AND SALE PROCESS

7.    In order to operate their loan origination business, the Debtors internally developed certain technology that was utilized and employed in the wholesale loan origination platform and in supporting architecture.  However, given that the Debtors no longer conduct their loan origination business (which this technology was designed to support), and the Technology Assets could provide significant value to a prospective buyer that operates a loan origination business, the Debtors seek to auction and sell such assets to the party offering the highest and best bid.

8.    The Technology Assets the Debtors seek to sell consists of technology utilized in their wholesale loan origination business, including custom proprietary software applications (including source code and documentation), databases containing historical broker performance and quality data, fully operational primary and recovery data centers and an application support organization.[3]  Included among these custom proprietary applications are (i) an online broker portal providing loan submission, pre-approval, pricing and tracking functionality (referred to as "FastQual"), (ii) an intranet portal and repository for sales, (iii) a loan origination system (referred to as "Empower"), (iv) an automated underwriting and pricing system, (v) customer relationship management tools and (vi) a data warehouse acting as a central repository of data for all business units and a source of information for operational and analytical

---

[3] The Debtors do not believe that the databases include confidential consumer or personally identifiable information; however, they will exercise caution to not disclose any consumer data or information and intend to comply with any applicable privacy policies and regulations with respect thereto.

reporting. The Technology Assets also include the network hardware for the data center (e.g., servers, ethernet switches, power supplies and routers), hardware used in the operation of the data center (e.g., laptop and desktop computers, monitors, printers and phone systems, projectors, scanners and facsimile machines) and office furniture (e.g., book cases, chairs, desks, file cabinets and tables) located at the data centers in California and Illinois.[4]

9.　　In addition, because certain of the technology operates in connection with software licensed to the Debtors by third parties, the Debtors may seek to assume and assign such licenses to the buyer as part of the Technology Assets.[5] The Technology Assets may also include certain trademarks and internet domain names related to the technology and a nonresidential real property lease for the premises that houses the databases and supporting hardware in Irvine, California- the Debtors believe that a prospective purchaser may find such assets a valuable component of the Technology Assets.

10.　　The Debtors further believe that an auction will result in the highest and best offer for the Technology Assets and that any delay in pursuing the auction and sale of the Technology Assets could potentially diminish their value. Indeed, the Debtors currently obtain little value from simply holding the Technology Assets, and there is a risk that their value may decrease with time and that critical employees with the knowledge to support and operate the technology will leave their employment with the Debtors. Moreover, the Technology Assets were previously marketed as part of the loan origination platform that the Debtors sought to sell earlier in these cases. Indeed, the Debtors are essentially following process similar to that

---

[4] The Debtors do not believe any equipment that will be sold as part of the Technology Assets is financed or leased from any party

[5] Contemporaneous with the filing of this Motion the Debtors are filing and serving notice to the counterparties to executory contracts and leases that their contracts and leases may be assumed and assigned in connection with the sale of the Technology Assets.

approved by the Court in connection with the attempted sale of the loan origination platform.

11.     As a result, the Debtors intend to request that the Court approve the sale of the Technology Assets without the need for pre-approved bidding procedures or a stalking horse bidder.  Simply put, the Debtors believe that holding an auction for the Technology Assets followed by a hearing to approve their sale represents the best option for promptly and efficiently obtaining maximum value for the estates, in particular in light of the foregoing circumstances.

12.     The Debtors intend to employ the following procedures and dates in connection with the contemplated auction and sale of the Technology Assets.  To be clear, however, the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), reserve the right not to proceed to or at auction or to declare a successful bidder (or seek to approve the sale of the Technology Assets) if they determine in their sole discretion that no adequate bids or offers have been made for all or part of the Technology Assets.

A.     Marketing of Technology Assets and Notice of Auction:

The Debtors and Lazard have developed a list of contact parties and have been actively marketing the Technology Assets and have prepared related presentation materials to solicit interest in and offers for the Technology Assets (subject to execution of confidentiality agreements).  As of the date of this Motion, approximately twenty-five different parties have been contacted regarding the Technology Assets, including mortgage finance companies, technology vendors, and logical financial buyers, and five parties have commenced active on-site diligence (with another party scheduling a visit to the Debtors).  A number of other parties are reviewing the presentation and data room materials.

Information relevant to the Technology Assets for evaluation by interested parties, including certain books and records and material contracts and other operational information for due diligence investigation, is being made available to bidders who have executed a valid nondisclosure agreement.  The Debtors may also be scheduling management presentations and make management otherwise available to selected bidders.

In addition, the Debtors will provide each prospective buyer with a form asset purchase agreement (the "APA") for the Technology Assets.

The Debtors and Lazard will further inform each prospective buyer of the dates set forth herein, and of the procedures they will employ in connection with the auction, and will also continue aggressively marketing the Technology Assets through the date by which they will require prospective buyers to submit their bids (as set forth below).

Moreover, the Debtors are providing with this Motion a schedule of executory contracts and leases that they contemplate may be assumed and assigned in connection with the sale of the Technology Assets, including proposed cure amounts. The Debtors are serving the Motion and schedule on the counterparties to such contracts and leases so they receive notification of the potential assumption and assignment of their contracts and leases and proposed cure amounts.

As discussed below, because the identity of the buyer (and thus the assignee) will not be determined until the Auction (as defined below) has occurred, and the Debtors will not know with certainty which contracts and leases the buyer will desire to have assumed and assigned, the Debtors will also seek approval of additional procedures related to the assumption and assignment of executory contracts and leases.

B.      Bid Deadline and Characteristics of Initial Bids:

In order to attend and bid at the Auction, the Debtors will require prospective buyers to submit an initial bid for some or all of the Technology Assets by no later than 12:00 p.m. (prevailing Pacific Standard Time) on June 13, 2007 (the "Bid Deadline") to:

I.      The Debtors:

Lazard Freres & Co. LLC
30 Rockefeller Plaza
New York, NY 10020
Facsimile: (212) 830-3647
Email: evan.geller@lazard.com
Attention:      Evan Geller

with a copy to:

O'Melveny & Myers LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Facsimile: (415) 984-8701

Email:  bchristensen@omm.com
Attention:      Suzzanne Uhland, Esq.
                C. Brophy Christensen, Esq.

-and-

Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899
Facsimile:  (302) 651-7701
Email:  ramos@rlf.com
Attention:      Mark D. Collins, Esq.
                Marcos A. Ramos, Esq.

II.        Official Committee of Unsecured Creditors:

Hahn & Hessen LLP
488 Madison Avenue
New York NY 10022
Facsimile: (212) 478-7400
Email: mindelicato@hahnhessen.com
Attention:      Mark S. Indelicato, Esq.

-and-

Blank Rome LLP
Chase Manhattan Centre
1201 North Market Street
Suite 800
Wilmington, DE 19801
Facsimile: (302) 425-6464
Email: fatell@blankrome.com
Attention:      Bonnie G. Fatell, Esq.

Such bids must constitute a binding written offer to purchase some or all of the Technology Assets and must (i) state that the bidder, on its own or together with another bidder, offers to purchase some or all of the Technology Assets, (ii) state that the bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Technology Assets as set forth in the APA, (iii) be accompanied by a clean and duly executed asset purchase agreement (a "Modified APA") and a marked Modified APA reflecting any variations from the APA, (iv) state that the bidder is financially capable of consummating the transactions contemplated by the APA or Modified APA, (v) state that the offer is irrevocable until the closing of the purchase of the Technology Assets, (vi) contain such financial and other

information that will allow the Debtors to make a reasonable determination of the bidder's financial and other capabilities to consummate a transaction and other information setting forth adequate assurance of future performance under Bankruptcy Code Section 365 (if applicable), (vii) identify each executory contract and unexpired lease to be acquired as part of the Technology Assets, the assumption and assignment of which is a condition to closing, (viii) not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment, (ix) fully disclose the identity of each entity that will be bidding for the Technology Assets or otherwise participating in connection with such bid, and the complete terms of any participation, (x) not contain due diligence, financing, or other conditions or contingencies of any kind (other than the conditions specified in the APA), (xi) include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the sale.

In addition to the foregoing, each initial bid must be accompanied by a cash deposit equal to 10% of the bid amount. The Debtors will return such deposits in the event the Auction does not proceed or the bidders providing such deposits do not submit the highest and best offer or offers at the Auction.

C.    Auction:

In the event that the Debtors receive by the Bid Deadline one or more bids that they deem in their discretion, in consultation with the Committee, to constitute a sufficient bid or bids for the Technology Assets the Debtors may conduct an auction (the "Auction") with respect to the Technology Assets. The Auction would take place starting on June 18, 2007 at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, or such other location as designated by the Debtors in a notice to all parties submitting bids for the Technology Assets.

Only representatives of the Debtors, the Committee and those parties submitting initial qualified bids shall be entitled to be present at the Auction. Among other things, each bidder will also be required to (i) confirm that it has not engaged in any collusion with respect to the bidding or the sale of the Technology Assets and (ii) appear in person at the Auction or through a duly authorized representative.

The Debtors and Lazard, in consultation with the Committee, will develop additional rules governing the conduct of the Auction at the time of the Auction, including the amount at which the bidding shall commence, incremental amounts of successive overbids and the method by which each round of bidding will be conducted.

The Auction shall continue until there is only one offer or combination of offers that the Debtors determine, in consultation with the Committee and subject to Court approval, is the highest and best offer for the Technology Assets (the "Successful Bid"). In making this decision, the Debtors, in consultation with the Committee, will have the discretion to weigh multiple considerations including, without limitation, the amount of the purchase price, the form of the consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the APA requested by each bidder and the net benefit to the Debtors' estates.

D.    Sale Hearing:

In the event the Debtors, in consultation with the Committee, determine to proceed with the sale of all or part of the Technology Assets the hearing on such sale shall be held on June 21, 2007 at 2:00 p.m. (the "Sale Hearing") as set forth in the caption of this Motion.

At the Sale Hearing, the Debtors will seek the entry of an order approving the sale of all or part of the Technology Assets pursuant to the terms and conditions set forth in an asset purchase agreement, and approving the procedures described below related to the assumption and assignment of certain executory contracts and leases in connection therewith.

E.    Procedures Related to Assumption and Assignment of Executory

Contracts and Leases:

Because the Debtors will have served with this Motion a schedule of executory contracts and leases that they contemplate may be assumed and assigned in connection with the sale of the Technology Assets on the counterparties to such contracts and leases, including proposed cure amounts, any party objecting to the potential assumption and assignment of its contract or leases on any grounds must file such objection by June 15, 2007 (the deadline to object to the Motion).

In the event the Debtors proceed with a sale of the Technology Assets and no timely objection is made to the assumption and assignment of an executory contract or lease, the counterparties to such contracts and leases shall be deemed to have consented to the assumption and assignment of such contracts and leases, including without limitation the cure amounts proposed by the Debtors.

The Debtors recognize that the parties to the executory contracts and leases that may be assumed and assigned will not know the identity of the proposed assignee by the objection deadline and may have concerns about adequate assurance of future performance. The Debtors similarly recognize that, as a result, precautionary adequate assurance objections may be asserted by such parties.

Thus, if an Auction is conducted, the Debtors will serve notice of the auction results, including the identity of the proposed buyer or buyers of the Technology Assets, on the counterparties to the executory contracts and leases that may be assumed and assigned to such proposed buyer or buyers by June 19, 2007.

The Debtors propose that, if any party has timely asserted an objection to the sufficiency of assurance of future performance by the proposed assignee and such objection is not been withdraw or resolved by the date of the sale hearing on June 21, 2007, the Court conduct a further hearing on any such adequate assurance objections on June 27, 2007.

13.     As noted above, the Debtors, in consultation with the Committee, are reserving the right not to proceed with or at the Auction, or to declare a successful bidder or seek to approve the sale of the Technology Assets, if they determine in their sole discretion that no adequate bids or offers have been made for all or part of the Technology Assets. In addition, they are reserving the right to modify and amend any procedures or rules related to the conduct of the Auction, including prior to and at the Auction.

## APPROVAL OF SALE OF ASSETS

14.     Bankruptcy Code Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he Court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

15.     A sale of a debtor's assets should be authorized pursuant to Bankruptcy Code Section 363 where the transaction represents an exercise of the debtor's sound business

judgment. See e.g. In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re

Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson

Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines. Inc., No. 01-0056, 2001

Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

      16.    Courts typically consider the following factors in determining whether a

proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale,

(b) whether adequate and reasonable notice of the sale was given to interested parties, (c)

whether the sale will produce a fair and reasonable price for the property and (d) whether the

parties have acted in good faith. See Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix

Steel Corp., 82 B.R. 334, 335-36 (D. Del. 1987); In re United Healthcare Svs., Inc., No. 97-

21785, 1997 U.S. Dist LEXIS 5090, at * 13-14 and n.2 (D. N.J. Mar. 26, 1997).

      17.    A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business may be found where such a sale is necessary to preserve the value of

assets for the estate, its creditors or interest holders. See e.g. In re Abbotts Dairies of

Pennsylvania, 788 F.2d 143 (3rd Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). In

fact, the paramount goal in any proposed sale of property of the estate is to maximize the

proceeds received by the estate. See In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir.

1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the

estate at hand"); In re Integrated Resources, Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a

well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such

sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting In

re Atlanta Packaging Products, Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

18.    Courts also uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. See In re Montgomery Ward Holding Corp., Case No. 97-1409 (P.JW) (Bankr. D. Del. Aug. 6, 1997); In re Fruehauf Trailer Corp., Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26,1997); Integrated Resources, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); In re Financial News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

19.    The Debtors submit that the proposed auction and sale of the Technology Assets to a successful bidder will satisfy the "sound business reason test." The auction and sale of the Technology Assets presents the best opportunity to maximize their value and, absent a sale, the assets provide little value for the Debtors because they are no longer operating the businesses in which the Technology Assets were employed - the origination of loans. In addition, the Debtors believe that the proposed auction and sale process, backed by the marketing efforts of the Debtors and Lazard, is the best method by which the highest and best offer will be obtained for the Technology Assets and provide interested persons with accurate and reasonable notice of the sale. The Auction will be conducted in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best consideration for the Technology Assets - as well as ensuring a competitive and fair bidding process. Finally, the proposed sale process will allow the Debtors to conduct the Auction in an efficient and expeditious manner, which the Debtors believe is essential to maintaining and maximizing the

value of their estates.

## SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS

20.      The Debtors further submit that it is appropriate to sell the Technology

Assets free and clear of claims, interests, liens and encumbrances pursuant to Bankruptcy Code

Section 363(f), with any such claims, interests, liens and encumbrances attaching to the net sale

proceeds of the Technology Assets to the extent applicable.

21.      Bankruptcy Code Section 363(f) authorizes a debtor to sell assets free and

clear of liens, claims, interests and encumbrances if (i) applicable nonbankruptcy law permits

sale of such property free and clear of such interests, (ii) such entity consents, (iii) such interest

is a lien and the price at which such property is to be sold is greater than the value of all liens on

such property, (iv) such interest is in bona fide dispute (v) or such entity could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f).

22.      Because Bankruptcy Code section 363(f) is drafted in the disjunctive,

satisfaction of any one of its five requirements will suffice to permit the sale of the Technology

Assets "free and clear" of liens and interests.  In re Dundee Equity Corp., 1992 Bankr. LEXIS

436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that

the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have

been met.");  In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same);  In re

Wolverine Radio Co., 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code

section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and

clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

23.      The Debtors believe that one or more of the tests of Bankruptcy Code

Section 363(f) are easily satisfied with respect to any sale of the Technology Assets.  In

particular, the Debtors believe that any lienholder will be adequately protected by having their liens, if any, attach to the cash proceeds ultimately attributable to the Technology Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

24.    Although Bankruptcy Code Section 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor JV, 209 F.3d 252, 257 (3d Cir. 2000). In the case of In re Trans World Airlines, Inc., 322 F.3d 283, 288-89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" Id. at 289. As determined by the Fourth Circuit in In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in Folger, supra, the scope of Bankruptcy Code Section 363(f) is not limited to in rem interests. Thus, the Third Circuit in Folger stated that Leckie held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." Folger, 209 F.3d at 258.

25.    Courts have consistently held that a buyer of a debtor's assets under Bankruptcy Code Section 363 takes the assets free from successor liability resulting from pre-existing claims. See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and

clear of any interest that could be brought against the bankruptcy estate during the bankruptcy);

MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94

(2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear

under section 363(f) of the Bankruptcy Code); In re New England Fish Co., 19 B.R. 323, 329

(Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of

Title VII employment discrimination and civil rights claims of debtor's employees); In re

Hoffman, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any

interest permissible even though the estate had unpaid taxes); American Living Systems v.

Bonapfel (In re All Am. Of Ashburn, Inc.), 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product

liability claims precluded on successor doctrine in a sale of assets free and clear); WBQ

Partnership v. Virginia Dept. of Medical Assistance Services (In re WBQ Partnership), 189 B.R.

97, 104-05 (Bankr. E.D. Va. 1995) (state's right to recapture depreciation is an "interest" as used

in section 363(f)).[6]

      26.    The purpose of an order purporting to authorize the transfer of assets free

and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a

basis to assert claims against the purchaser arising from the Debtors' pre-sale conduct. Under

Bankruptcy Code Section 363(f), a successful bidder is entitled to know that the Technology

Assets do not have attached latent claims that will be asserted after a sale is completed.

Accordingly, and consistent with the above-cited case law, the sale order should state that the

purchaser will not be liable as a successor under any theory of successor liability, for claims that

encumber or relate to the Technology Assets.

---

[6] Even courts concluding that Bankruptcy Code section 363(f) does not empower them to convey assets free and clear of claims nevertheless find that Bankruptcy Code section 105(a) provides such authority  See In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority

## ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND RELATED PROCEDURES

27.     Bankruptcy Code Section 365(b) authorizes a debtor in possession to assume and assign an executory contract or unexpired lease subject to Court approval.  It requires a debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed, and the standard that is applied by the Third Circuit in determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment" that the assumption is in its economic best interests.  See Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113); In re III Enterprises, Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted), aff'd, 169 B.R. 551 (E.D. Pa. 1994).

28.     The Debtors believe that any proposed assumption and assignment of executory contracts and unexpired leases as part of a sale of the Technology Assets will constitute a sound exercise of the Debtors' business judgment and should be approved.  The Technology Assets, including any related contracts and leases, are valuable assets of the estates.  The Debtors do not currently operate the loan origination platform and therefore have little use for the Technology Assets and any contracts and leases utilized in that business.  Accordingly, to the extent that the Debtors can sell any related executory contracts and unexpired leases to a third party in connection with the sale of the Technology Assets, they will be able generate cash to satisfy claims against the estates.

---

to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11).

RLF1-3159667-1

29.    Because the Debtors are serving a schedule of executory contracts and leases that they contemplate may be assumed and assigned in connection with the sale of the Technology Assets on the counterparties to such contracts and leases, including proposed cure amounts, the Debtors further believe it is reasonable to require any party objecting to the assumption and assignment of its contract or lease to file such objection by the deadline to object to the Motion - June 15, 2007. The Debtors believe that such notice is sufficient under the circumstances and consistent with the time periods set forth in the Federal Rules of Bankruptcy Procedure.

30.    As acknowledged above, the Debtors understand that parties to the executory contracts and leases that may be assumed and assigned will not know the identity of the proposed assignee by the objection deadline and may assert precautionary adequate assurance objections. The Debtors believe that serving notice on counterparties to executory contracts and leases of the identity of the proposed assignee on June 19, 2007 (the first day after the conclusion of the Auction), and providing the objecting parties with the opportunity to address any unresolved adequate assurance objections at a hearing on June 27, 2007, is also sufficient under the circumstances. Giving parties additional notice and the opportunity for a further hearing on remaining adequate assurance issues will provide the Debtors and any objecting parties with an opportunity to fairly investigate and develop facts regarding the willingness and ability of any assignee to perform under contracts to be assumed and assigned. It will also provide the Court and parties the opportunity to evaluate and, if necessary, challenge the ability of the assignee to provide adequate assurance of future performance.

31.    Finally, the Debtors believe that it is reasonable (and in fact typical) to deem the counterparties to have consented to the assumption and assignment of their executory

contracts and leases, including without limitation to the cure amounts proposed by the Debtors, in the absence of timely objections.

## **FINDING OF GOOD FAITH**

32.    Bankruptcy Code Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Seventh Circuit in In re Andy Frain Services, Inc., 798 F.2d 1113 (7th Cir. 1986), held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

798 F.2d at 1125 (emphasis omitted) (quoting In re Rock Industries Machinery Corn., 572 F.2d 1195, 1198 (7th Cir. 1978).

33.    The Debtors believe that the Auction and the competitive bidding environment it will foster will result in a transaction negotiated at arm's-length between all parties involved acting in good faith.  The Debtors therefore intend to present evidence to show that the successful bidder will be entitled to the same finding under Bankruptcy Code Section 363(m).

## FINALITY OF ORDER

34.    The Debtors further request that, pursuant to Bankruptcy Rules 6004(h) and 6006(d), the order approving the sale of the Technology Assets and any related assumption and assignment of any executory contracts and unexpired leases not be stayed for any period of time after the entry of such orders.

35.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Bankruptcy Rule 6006(d) provide that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 10 days after the entry of the order unless the court orders otherwise." The Debtors request that any order approving the sale of the Technology Assets or the Debtors' assumption and assignment of executory contracts and unexpired leases be effective immediately by providing that the 10-day stay under Bankruptcy Rules 6006(h) and 6006(d) are waived.

36.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rule 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, the leading treatise on bankruptcy suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶ 6004.10 (15th rev. ed. 2006). Further, it suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

37.    The Debtors request that any order approving the sale of the Technology Assets and the assumption and assignment of any related contracts and leases (pursuant and subject to the procedures described herein) be effective immediately upon entry by providing that the 10-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived or, in the alternative, if an objection to the sale of the Technology Assets is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## NOTICE

38.    No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. and The CIT Group/Business Credit, Inc., the Debtors post-petition senior secured lenders; (3) the Committee; (4) all parties who are known to possess or assert a secured claim against the Technology Assets; (5) the counterparties to executory contracts and leases that the Debtors currently contemplate may be assumed and assigned as part of the sale of the Technology Assets; (6) the Internal Revenue Service; (7) contact parties that the Debtors and Lazard have identified as potential buyers of the Technology Assets; and (8) all parties entitled to notice under Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court (i) grant the Motion; (ii) enter an order substantially in the form attached as Exhibit A hereto; and (iii) grant such other and further relief as is just and appropriate.

Dated:  June 1, 2007
       Wilmington, Delaware

                                    /s/ Marcos A. Ramos

                                      Mark D. Collins (No. 2981)
                                      Michael J. Merchant (No. 3854)
                                      Marcos A. Ramos (No. 4450)
                                      RICHARDS, LAYTON & FINGER, P.A.
                                      One Rodney Square
                                      P.O. Box 551
                                      Wilmington, Delaware 19899
                                      (302) 651-7700

                                      -and-

                                      Suzzanne S. Uhland
                                      Ben H. Logan
                                      Victoria Newmark
                                      Emily R. Culler
                                      O'MELVENY & MYERS LLP
                                      275 Battery Street
                                      San Francisco, California  94111
                                      (415) 984-8700

                                      ATTORNEYS FOR DEBTORS AND
                                      DEBTORS IN POSSESSION