## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | |
| | : | |
| **GENERAL ELECTRIC CAPITAL** | : | |
| **CORPORATION** | : | **Hrg. Date: 6/15/07 @ 10:00 a.m.** |
| | : | |
| **v.** | : | **Obj. Deadline: 6/7/07**[2] |
| | : | |
| | : | **Re: Dkt. No. 630** |
| **NEW CENTURY MORTGAGE** | : | |
| **CORPORATION, et al.** | : | |

## OPPOSITION OF DEBTORS AND DEBTORS IN POSSESSION TO GENERAL ELECTRIC CAPITAL CORPORATION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

New Century Financial Corporation, a Maryland corporation, New Century TRS

Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as debtor

and debtor in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),

hereby file this Opposition to General Electric Capital Corporation's ("GECC") Motion for

---

[1]   The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

[2]   The Debtors received an extension from General Electric Capital Corporation to file this opposition by June 7, 2007.

Relief from the Automatic Stay [Dkt. No. 630] (the "Motion"). In support of this Opposition, the

Debtors represent as follows:

## OPPOSITION

1.     Extending its campaign to force the early payment of alleged claims,

GECC now requests that the automatic stay be lifted in order to forcibly repossess certain

equipment that is either purportedly leased from GECC or ostensibly financed by GECC under

prepetition secured financing agreements and related promissory notes (the "Equipment").

According to GECC, it is entitled to relief from stay because the "Debtors have no equity in the"

Equipment, the Equipment is not "necessary for an effective reorganization" and GECC's

alleged interest in the Equipment "is not adequately protected." Motion at pp. 4-5. As discussed

below, the Motion - which lacks reference to necessary facts and is substantially devoid of legal

argument - lacks merit and must be denied for a multitude of reasons.

2.     As an initial matter, the Motion must be denied because GECC has made

no effort whatsoever to establish or prove the value of any Equipment that is subject to a

purported security interest, including whether the Debtors have any equity in such Equipment.

See 11 U.S.C. § 362(g)(1) (party moving for relief from stay "has the burden of proof on the

issue of the debtor's equity in property"); see also e.g. Collier on Bankruptcy, ¶ 362.10, at p.

362-117 (15th ed. rev. 2006) (the party moving for relief from stay "first must establish its prima

facie case. Failure to prove a prima facie case requires denial of the requested relief."). In the

absence of providing any evidence regarding the Debtors' equity in the Equipment, GECC

cannot establish it is entitled to relief from stay under Bankruptcy Code Section 362(d)(2). See

11 U.S.C. § 362(d)(2)(A), (B) (relief from stay under Bankruptcy Code Section 362(d)(2) may

be granted where "the debtor does not have an equity in such property" and "such property is not

2

necessary to an effective reorganization").

        3.      Moreover, GECC's claim that the Debtors do not need any of the

Equipment is incorrect, as is its implied contention that Bankruptcy Code Section 362(d)(2)(B)

requires a debtor to continue business operations rather than liquidate. As numerous courts have

recognized, the term "reorganization" in Bankruptcy Code Section 362(d)(2)(B) is intended to

refer to confirmation of a plan by the debtor, and it is well-established that a debtor may propose

and confirm a plan of liquidation.[3] See e.g. United Sav. Ass'n of Texas v. Timbers of Inwood

Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 371 n. 14 (5th

Cir. 1987) ("Because a plan of reorganization under Chapter 11 can, at least since 1978, consist

of a liquidation of the debtor, there may be circumstances under which the debtor is able to

satisfy the 'effective reorganization' test of § 362(d)(2) by showing that the property at issue is

necessary to an effective liquidation of the debtor under Chapter 11, as distinguished from an

effective rehabilitation of the debtor."), aff'd 484 U.S. 365 (1988); see also e.g. In re Paolino, 72

B.R. 555, 559 (Bankr. E.D. Pa. 1987) (denying relief from stay motion in liquidating chapter 11

case and stating that under Bankruptcy Code Section 362(d)(2)(B) a "reorganization may be

based on a liquidating plan"); In re Dormer Enterprises, Inc., 62 B.R. 176, 178 (Bankr. D. Ne.

1987) (same and noting that under Bankruptcy Code Section 362(d)(2)(B) debtor has the "right

to treat a liquidating plan as a reorganization plan"); In re Associated Investors Joint Venture,

Inc., 91 B.R. 555, 558 (Bankr. C.D. Cal. 1988) (same and holding that Bankruptcy Code Section

362(d)(2)(B) may be satisfied by liquidating plan).

---

[3] GECC's assertion that relief from stay is appropriate whenever the debtor is liquidating because its assets "are not necessary for an effective reorganization" is virtually indistinguishable from claiming that a debtor simply cannot use the chapter 11 "reorganization" process to liquidate or propose a liquidating plan. If GECC's claim was accepted, a liquidating debtor (in particular one with a blanket lien on substantially all of its assets) would in many circumstances be unable to retain any property subject to a lien from the day it filed for bankruptcy - regardless of

LA3:1133476 2
RLF1-3162378-1

4.      Simply stated, the Debtors cannot effectively liquidate and continue to sell their assets without basic office equipment such as phones, computers, printers, monitors and similar items that comprise the Equipment.  For example, the Debtors must be able communicate with their counsel and advisors, as well as numerous other parties (such as those acquiring the Debtors' assets).  Similarly, much of the data and information related to the Debtors' assets and business operations - e.g., financial and accounting information - is stored on or generated by the use of the Equipment.  As the Debtors' investment banking advisor testified at the hearing to approve procedures in connection with the going concern sale of the Debtors' loan servicing business (the "Loan Servicing Business"), the Debtors must have the Equipment in order to carry out necessary business tasks, such as the continued servicing of loans in the Loan Servicing Business.[4]  See Transcript of April 19, 2007 Hearing ("4/19 Tr.") at pp. 79:6 - 80:4 (relevant portions of the 4/19 Tr. are attached hereto as Exhibit A).

5.      Indeed, it is quite remarkable to assert that the Debtors do not need any of the Equipment when it is being used by the Debtors as well as sold as part of going concern businesses that are generating substantial recoveries for creditors.  As GECC is well aware, some of the Equipment is being sold as part of the Loan Servicing Business to Carrington Capital Management, LLC and Carrington Mortgage Services, LLC (together, "Carrington").  The Debtors anticipate that the sale of the Loan Servicing Business will shortly close.  In the

---

whether it could use such property to sell assets, maximize recoveries for creditors, wind up its affairs and confirm a liquidating plan.  In short, it would defeat many of the underlying principles and goals of the Bankruptcy Code.

[4] At the same hearing, where the Court found cause to prohibit GECC from submitting a credit bid for Loan Servicing Business assets, see 4/19 Tr. at pp. 83:18 - 84:8, the Debtors' investment banking advisor also testified it was his opinion that GECC's pursuit of the opportunity to credit bid was motivated by "tactics and leverage" rather than a sincere interest in ensuring the realization of fair market value for the equipment. See 4/19 Tr. at p. 82:3-14.

4

LA3:1133476 2
RLF1-3162378-1

meantime, it is critical for the Debtors to use the Equipment so they may continue to perform the transition services they are obligated to provide to Carrington and keep the Loan Servicing Business operating as a going concern. The Debtors are also cooperating with GECC to identify property that may be sold with the Loan Servicing Business and, on June 4, 2007, the Debtors provided GECC with a list of the Equipment which the Debtors currently believe will be sold as a part of the Loan Servicing Business. At the same time, the Debtors further intend to cooperate with GECC to identify Equipment which they believe may not be sold as part of any contemplated asset dispositions so that GECC may retrieve the Equipment at its own cost and expense (and in satisfaction of any claims it may assert against such Equipment).

6.      Even if GECC had made a nominal attempt to satisfy its burden of proof on the fundamental issue of the Debtors' equity in the Equipment as required by Bankruptcy Code Section 362(d)(2), it cannot demonstrate that relief from stay would be appropriate under Bankruptcy Code Section 362(d)(1). See 11 U.S.C § 362(d)(1) (relief from stay under Bankruptcy Code Section 362(d)(1) may be granted for "cause" including where there is a "lack of adequate protection of an interest in property"); see also e.g. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d 1990) ("Section 362(d)(1) requires an initial showing of cause by the movant . . . If the movant fails to make an initial showing of cause, however, the court should deny the relief without requiring any showing from the debtor that it is entitled to continued protection.").

7.      Here, GECC makes absolutely no showing that its alleged interest in the Equipment "is not adequately protected" and it cannot do so. Pursuant to the order entered by the Court on May 23, 2007 approving the sale of the Debtors' loan servicing business to Carrington (the "Sale Order"), the Debtors are establishing a reserve in the full amount of

LA3:1133476 2
RLF1-3162378-1

GECC's alleged prepetition secured claim - a sizeable $7,558,887.80 in cash - with GECC to

have a lien against such reserve. As set forth in the Sale Order, there is already in place a

mechanism to pay any secured claims of GECC related to the Equipment:

> The Debtors further shall reserve from the proceeds of the sale
> (i) the outstanding balance as of the Petition Date due to General
> Electric Capital Corporation ("GECC") under the Master Security
> Agreement and related promissory notes relating to the Purchased
> Assets, which balance as of the petition date totaled $7,558,887.80
> . . . Consistent with the foregoing, the Liens of GECC . . . shall
> also attach to the Secured Claim Reserve with the same priority,
> validity, force and effect as they now have against the Purchased
> Assets. Such Secured Claim Reserve will otherwise remain free
> and clear of all other Liens, and shall not be the subject of any
> distributions, pending agreement of the Debtors, the Committee
> and GECC . . . or further order of the Court.

Sale Order at ¶ 3.

8.      This reserve was demanded by GECC as the method to protect any interest

it may have in any Equipment that is subject to a secured financing arrangement. Having

requested and received a reserve consisting of cash in the full amount of its alleged prepetition

secured claim, as well as a lien against the reserve, GECC cannot now credibly argue that its

alleged interest in the Equipment "is not adequately protected."[5] See e.g. 11 U.S.C. §§ 361, 363.

---

[5] Indeed, if GECC still asserts that any interest it may have in the Equipment is not adequately protected notwithstanding the reserve - again, which would cover the entire amount of GECC's alleged prepetition secured claim - it amply demonstrates that the real purpose of the Motion is to pressure the Debtors into paying GECC's asserted claims, and likely in amounts that exceed the actual value of any financed Equipment. For example, in connection with the Debtors' earlier effort to sell their loan origination platform GECC submitted a credit bid of $3.1 million for virtually all of the Equipment - far less than the amount of the reserve. While GECC's credit bid is not determinative of the value of the Equipment, it does provide insight itno GECC's view on the subject - and, if anything, demonstrates that in GECC's mind it is substantially oversecured by the reserve. Importantly, the Sale Order did not determine or resolve the amount of any secured claim held by GECC, which the Debtors believe must be determined in a later proceeding in accordance with, among other things, Bankruptcy Code Sections 502 and 506. The Debtors believe that another motive for the Motion is for GECC to circumvent the claim determination and allowance process, including disputes involving valuation of the Equipment and issues related to whether purported leases are disguised financings or any security interests are enforceable. This is made evident by GECC's request to both liquidate the Equipment "at one or more public or private auctions or sales" and apply "all proceeds arising

9.      A further defect of the Motion lies in GECC's failure to discriminate between the Equipment that is allegedly leased and that which is purportedly financed, which are governed by separate legal standards under the Bankruptcy Code. If GECC wishes to repossess leased Equipment, then its remedy is to file a motion to compel assumption or rejection of the relevant leases under Bankruptcy Code Section 365(a). Assuming GECC brought such a motion and prevailed in its effort (although the Debtors do not believe GECC is entitled to or could obtain such relief), the rejection of the leases would constitute a breach under Bankruptcy Code Section 365(g) and GECC could be entitled to recover the related Equipment. Relief from stay, however, is a procedurally and substantially inappropriate method by which to obtain possession of any leased Equipment.[6]

10.      Finally, GECC's request for relief from stay - even if it had some factual or legal basis - is premature and unwarranted at this juncture. As noted above, GECC has already been provided adequate protection for any interest in the Equipment by having a lien against a reserve with the full amount of its alleged prepetition secured claim. Thus, it is protected against any diminution in the value of the Equipment, whether by the passage of time or the use of such Equipment or otherwise. The Debtors are also still using the Equipment in order to perform the various functions and tasks necessary to liquidate and sell their assets, including the various services necessary to operate the Loan Servicing Business as a going concern. Granting the relief from stay requested by GECC at this stage of the Debtors' cases -

---

therefrom to reduce the indebtedness that is owed by the Debtors to GE" without providing the Debtors (or even the creditors' committee) any opportunity to investigate and possibly contest GECC's claims. Motion at ¶ 13.

[6] GECC also provides no support for its assertion that "in excess of $1,270,000 . . . exclusive of attorneys' fees, costs and expenses and other sums which are also due and owing" are currently outstanding under the leases it identifies. Motion at ¶ 8. To the contrary, the Debtors believe they have timely performed their postpetition obligations under any purported leases with GECC, and do not believe there are any outstanding unpaid amounts currently owed to GECC. In making such payments, the Debtors have not and do not concede that such purported

7

which would include repossession of the Equipment, the ability "to exercise and enforce its various rights and remedies . . . including liquidating the [Equipment]" and application of "all proceeds arising therefrom to reduce the indebtedness" supposedly owed to it – would be incredibly disruptive, threaten the sale of the Loan Servicing Business to Carrington, possibly cause the Debtors to lose significant amounts of relevant and critical information, make it extremely difficult (if not impossible) to efficiently liquidate and maximize the value of assets and harm the interests of creditors generally.  While this is, of course, precisely the type of leverage GECC seeks to obtain through the Motion, its meritless request for relief from stay should not be employed as a gambit to further unrelated self-interest such as the early payment of claims.

[<em>Remainder of Page Intentionally Blank</em>]

---

leases are true leases (rather than disguised financing agreements), and reserve all rights and remedies with respect to such leases, including the right to seek recovery of any payments made to GECC.

8

WHEREFORE, the Debtors respectfully request that the Court deny the Motion in its entirety.

Dated:  June 7, 2007
        Wilmington, Delaware

                                    _____
                                    Mark D. Collins (No. 2981)
                                    Michael J. Merchant (No. 3854)
                                    Marcos A. Ramos (No. 4450)
                                    RICHARDS, LAYTON & FINGER, P.A.
                                    One Rodney Square
                                    P.O. Box 551
                                    Wilmington, Delaware 19899
                                    (302) 651-7700

                                    -and-

                                    Suzzanne S. Uhland
                                    Ben H. Logan
                                    Victoria Newmark
                                    Emily R. Culler
                                    O'MELVENY & MYERS LLP
                                    275 Battery Street
                                    San Francisco, California  94111
                                    (415) 984-8700

                                    ATTORNEYS FOR DEBTORS AND
                                    DEBTORS IN POSSESSION

9