## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Hearing Date: June 27, 2007 at 10:00 a.m.** |
| | : | **(Requested)** |
| | : | **Objection Deadline: June 20, 2007 at 4:00 p.m.** |
| | : | **(Requested)** |

**MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN
ORDER (A) APPROVING SUPPLEMENT NO. 1 TO THE ASSET
PURCHASE AGREEMENT BY AND AMONG NEW CENTURY FINANCIAL
CORPORATION AND CERTAIN OF ITS SUBSIDIARIES AND ELLINGTON
MANAGEMENT GROUP, L.L.C. ON BEHALF OF ITS CLIENT FUNDS,
(B) AUTHORIZING SALE OF CERTAIN LOANS TO PURCHASER OR ITS
DESIGNEE(S), FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS AND (C) GRANTING RELATED RELIEF**

New Century TRS Holdings, Inc., a Delaware corporation, New Century

Financial Corporation, a Maryland corporation, and their direct and indirect subsidiaries, each as

a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned

counsel, hereby submit this motion (the "Motion") pursuant to sections 105(a) and 363 of title 11

of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), and Rules 2002,

6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the

entry of (i) an order (a) approving Supplement No. 1 to the Asset Purchase Agreement (the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a

"Supplement") by and among New Century Financial Corporation and certain of its subsidiaries

and Ellington Management Group, L.L.C. on behalf of its Client Funds ("Ellington" or the

"Purchaser"), (b) authorizing the sale of certain mortgage loans and assets to the Purchaser or its

designee(s), free and clear of all liens, claims encumbrances and interests (the "Sale") and (c)

granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Motion pursuant

to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought in this Motion are

Bankruptcy Code Sections 105(a) and 363 and Bankruptcy Rules 2002, 6004 and 9014.

## BACKGROUND

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and

publicly owned real estate investment trust, is one of the largest specialty mortgage finance

businesses in the United States. Through its subsidiaries and its primary holding company

subsidiary, New Century TRS Holdings, Inc., a Delaware corporation, NCF originates,

purchases, sells, and services mortgage loans nationwide. NCF historically focused on

"subprime" lending, or lending to individuals whose borrowing needs were generally not

fulfilled by traditional financial institutions because they did not satisfy the credit,

documentation or other underwriting standards prescribed by conventional mortgage lenders and

loan buyers. In September 2005, NCF through some of its subsidiaries also began offering

conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal

Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA").

---

Delaware limited partnership.

2

During the fiscal year ending December 31, 2006, the Debtors originated or purchased

approximately $60 billion of mortgage loans, most of which were sold in the secondary market.

Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans

have helped millions of homebuyers and homeowners across the nation access credit and realize

the benefits of home ownership, including many who might not otherwise have been able to do

so.

       4.      On April 2, 2007 (the "Petition Date"), the Debtors filed the instant

petitions for relief and the Debtors' bankruptcy cases are being jointly administered pursuant to

an order of the Court. The Debtors are operating their business and managing their affairs as

debtors and debtors in possession.

       5.      On the Petition Date, the Debtors filed a motion to approve bidding

procedures and the sale of a pool of approximately 2,200 unencumbered mortgage loans with an

unpaid balance of $173 million and mortgage-backed residual interests in securitization trusts

(the "LNFA") to Greenwich Capital Financial Products, Inc. ("Greenwich") for $50 million.

Prior to the hearing on the sale procedures motion, the Debtors, their investment banker Lazard

Freres & Co. LLC ("Lazard"), the Official Committee of General Unsecured Creditors (the

"Creditors' Committee") and Greenwich continued to discuss the financial terms and other

aspects of the proposed transaction. Among other things, the parties determined that the face

value of the LNFA was $170 million instead of $173 million and therefore, adjusted the purchase

price to $47.25 million. Greenwich further agreed to lower its break up fee to $945,000 and cap

its auction related expenses. Pursuant to an order entered by the Court on April 12, 2007, the

Debtors held an auction of the LNFA in New York on May 2, 2007 (the "Auction"). After

extensive marketing of the LNFA and aggressive pursuit of bids and prospective purchasers, five

qualified bidders emerged and attended the Auction. Ellington was the ultimate winner at the

Auction, bidding $58 million for the LNFA. After a hearing arguments and considering the evidenced proffered in support of the sale, on May 7, 2007, the Court entered an order approving the sale of the LNFA to Ellington (the "First LNFA Sale") pursuant to the Asset Purchase Agreement by and among NCF and certain of its subsidiaries and Ellington dated May 16, 2007 (the "Original APA").

6.    The Debtors now seek to supplement the Original APA to sell an additional approximately 180 unencumbered loans with an unpaid balance of approximately $17 million and 6 real properties obtained in foreclosures of such mortgage loans (the "LNFA Mortgage Assets") as set forth in the Supplement which incorporates the terms of the Original APA. The Debtors were not able to include the LNFA Mortgage Assets in the First LNFA Sale because the documents and files related to the LNFA Mortgage Assets were not sufficient or complete at the time. After discussions with the Creditors' Committee, the Debtors concluded that it was in the best interest of estates to try to sell the additional LNFA Mortgage Assets to Ellington by supplementing the Original APA for the same price on the same terms and conditions reached after extensive marketing and negotiations at the Auction.

7.    By order entered on May 23, 2007, the Court authorized the sale of the Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an affiliate of Carrington Capital Management, LLC ("Carrington"). At the closing of the Carrington Sale, Carrington will transfer the sale proceeds to the Debtors and the Debtors will enter into an agreement with Carrington to transition the servicing business. The Debtors will continue operating the servicing business in the ordinary course while it is transitioned to Carrington. The Debtors estimate that the transition period could take up to six months but may be continued upon request from Carrington from time to time. The Debtors are in the process of liquidating additional technology and other assets of the estates.

4

## RELIEF REQUESTED

8.    The Debtors hereby request, pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rule 6004 that the Court enter an order approving the Sale of the LNFA Mortgage Assets to the Purchaser as set forth in the Supplement and granting related relief.

## THE SUPPLEMENT AND THE LNFA MORTGAGE ASSETS

9.    The Debtors propose to sell the LNFA Mortgage Assets to Ellington (or such other third party as Ellington may designate) free and clear of all liens, claims and encumbrances for an aggregate purchase price of $4,446,901.48.[2] This purchase price will be paid by satisfying any obligations outstanding under the DIP Financing at the time of the closing, up to the amount of the purchase price, with the remaining balance (if any) to be paid in cash (subject to a holdback for certain contingent costs and a potential proportionate deduction in the event the unpaid principal balance of the LNFA Mortgage Assets as of closing is lower than the current unpaid principal balance).[3]

10.    The Supplement contains certain minimal representations and warranties and provides for a $309,625.00 45-day holdback, subject to terms substantially similar to the holdback provisions of the Original APA, to cover such matters as (i) the Debtors releasing the borrower on a loan that was sold to Ellington, (ii) material changes in the foreclosure laws of the state in which the property is located and (iii) the Debtors' failure to transfer servicing of these loans to a servicer selected by the buyer. This holdback is subject to proportionate reduction if the aggregate purchase price is reduced as described above.

---

[2] The proposed sale of the LNFA Mortgage Assets is contingent upon approval by the Board of Directors and this Court.

[3] The description of the Supplement provided herein is an overview of certain of the significant terms of the Sale. The Court and interested parties should refer to the Supplement, substantially in the form attached hereto as Exhibit A, for complete and detailed terms thereof. To the extent the description of the sale described in this Motion is inconsistent in any way from the terms of the Supplement, the terms of the Supplement shall prevail.

11.    The LNFA Mortgage Assets generally consists of mortgage loans and the real property securing mortgage loans as set forth on Schedule 1 of the Supplement. Prior to the Petition Date, the Debtors originated mortgage loans and then generally sold the loans to securitization trusts and whole loan buyers. The pool of LNFA Mortgage Assets include some loans that the Debtors had not yet disposed of prior to the Petition Date. The pool may also consist of some loans sold to securitization trusts or to whole loan buyers but repurchased by the Debtors pursuant to the terms of these agreements when the borrowers on these loans defaulted soon after the disposition occurred.

12.    The Debtors request Court approval to sell the LNFA Mortgage Assets to Ellington free and clear of any liens, claims or interests with any valid liens on the assets sold attaching to the sale proceeds. Ellington has offered to pay $4,446,901.48 for the LNFA Mortgage Assets on the terms and conditions set forth on the Supplement, substantially in the form attached hereto as Exhibit "A". The Debtors believe that the proposed Sale is the highest and best offer obtainable for the LNFA Mortgage Assets.

## APPROVAL OF SALE OF ASSETS

13.    Bankruptcy Code Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Bankruptcy Rule 6004 provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k) and, if applicable, in accordance with §363(b)(2) of the code." Fed. R. Bankr. P. 6004(a). Essentially, Bankruptcy Rule 2002 requires the Debtors to give all creditors and certain other parties "at least 20 days' notice by mail" of the Sale "unless the court for cause shown shortens the time or directs another method of giving notice". Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he

6

Court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

14.    A sale of a debtor's assets should be authorized pursuant to Bankruptcy Code Section 363 where the transaction represents an exercise of the debtor's sound business judgment. See, e.g., In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3rd Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines. Inc., No. 01-0056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

15.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. See Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (D. Del. 1987); In re United Healthcare Svs., Inc., No. 97-21785, 1997 U.S. Dist LEXIS 5090, at * 13-14 and n.2 (D. N.J. Mar. 26, 1997).

16.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. See e.g. In re Abbotts Dairies of Pennsylvania, 788 F.2d 143 (3rd Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Integrated Resources, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest

7

price or greatest overall benefit possible for the estate.") (quoting In re Atlanta Packaging Products, Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

17.     The Debtors submit that the proposed Sale of the LNFA Mortgage Assets to Ellington satisfies the "sound business reason test." The prompt sale of the LNFA presents the best opportunity to maximize the value of the LNFA Mortgage Assets for the estates. The Debtors have already tested the market price for the LNFA Mortgage Assets at the auction held for similar assets on May 2, 2007. Ellington has agreed to purchase the LNFA Mortgage Assets at the same price and on the same terms and conditions as the First LNFA Sale. Selling the LNFA Mortgage Assets without another auction protects the estates from further decline in the value of the LNFA Mortgage Assets due to additional defaults and foreclosures on subprime loans, the inherent risks of selling property at auction and further transaction costs of marketing the assets and holding an auction. The Debtors believe that the Sale is the best method by which it can obtain the best price for the LNFA Mortgage Assets and provide interested persons with accurate and reasonable notice of the Sale.

## SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS

18.     The Debtors further submit that it is appropriate to sell the LNFA Mortgage Assets free and clear of claims, interests, liens and encumbrances pursuant to Bankruptcy Code Section 363(f), with any such claims, interests, liens and encumbrances attaching to the net sale proceeds of the LNFA Mortgage Assets to the extent applicable.

19.     Bankruptcy Code Section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interests, (ii) such entity consents, (iii) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on

8

such property, (iv) such interest is in bona fide dispute (v) or such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

20.    Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the LNFA Mortgage Assets "free and clear" of liens and interests. In re Dundee Equity Corp., 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); In re Wolverine Radio Co., 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

21.    The Debtors believe that one or more of the tests of Bankruptcy Code Section 363(f) are easily satisfied with respect to the Sale of the LNFA Mortgage Assets. In particular, the Debtors believe that any lienholder will be adequately protected by having their liens, if any, attach to the cash proceeds ultimately attributable to the LNFA Mortgage Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

22.    Although Bankruptcy Code Section 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor JV, 209 F.3d 252, 257 (3rd Cir. 2000). In the case of In re Trans World Airlines, Inc., 322 F.3d 283, 288-89 (3rd Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem

9

interests in property," the trend in modern cases is towards "a more expansive reading of

'interests in property' which 'encompasses other obligations that may flow from ownership of

the property.'" Id. at 289. As determined by the Fourth Circuit in In re Leckie Smokeless Coal

Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third

Circuit in Folger, supra, the scope of Bankruptcy Code Section 363(f) is not limited to in rem

interests. Thus, the Third Circuit in Folger stated that Leckie held that the debtors "could sell

their assets under § 363(f) free and clear of successor liability that otherwise would have arisen

under federal statute." Folger, 209 F.3d at 258.

23.     Courts have consistently held that a buyer of a debtor's assets under

Bankruptcy Code Section 363 takes the assets free from successor liability resulting from pre-

existing claims. See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716,

732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and

clear of any interest that could be brought against the bankruptcy estate during the bankruptcy);

MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94

(2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear

under section 363(f) of the Bankruptcy Code); In re New England Fish Co., 19 B.R. 323, 329

(Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of

Title VII employment discrimination and civil rights claims of debtor's employees); In re

Hoffman, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any

interest permissible even though the estate had unpaid taxes); American Living Systems v.

Bonapfel (In re All Am. Of Ashburn, Inc.), 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product

liability claims precluded on successor doctrine in a sale of assets free and clear); WBO

Partnership v. Virginia Dept. of Medical Assistance Services (In re WBQ Partnership), 189 B.R.

97, 104-05 (Bankr. 22 E.D. Va. 1995) (Commonwealth of Virginia's right to recapture

depreciation is an "interest" as used in section 363(f)).[4]

24.    The purpose of an order purporting to authorize the transfer of assets free

and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a

basis to assert claims against the purchaser arising from the Debtors' pre-sale conduct. Under

Bankruptcy Code Section 363(f), the Purchaser is entitled to know that the LNFA Mortgage

Assets does not have attached latent claims that will be asserted against them after the Sale is

completed. Accordingly, and consistent with the above-cited case law, the Sale Order should

state that the purchaser will not be liable as a successor under any theory of successor liability,

for claims that encumber or relate to the LNFA Mortgage Assets.

## FINDING OF GOOD FAITH

25.    Bankruptcy Code Section 363(m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Seventh

Circuit in In re Andy Frain Services, Inc., 798 F.2d 1113 (7th Cir. 1986), held that:

> The requirement that a purchaser act in good faith . . . speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

---

[4] Even courts concluding that Bankruptcy Code section 363(f) does not empower them to convey assets free and clear of claims nevertheless find that Bankruptcy Code section 105(a) provides such authority. See In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11).

11

798 F.2d at 1125 (emphasis omitted) (quoting <u>In re Rock Industries Machinery Corn.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978).

26.    The negotiation and execution of the terms and conditions of the Sale and the Supplement were conducted in good faith and at arm's length. The Sale price and the terms and conditions of the Supplement are nearly identical to the First LNFA Sale and were determined based upon the outcome of the Auction. The Supplement, substantially in the form attached hereto as Exhibit "A", incorporates the terms of the Original APA and replicates the price, terms and conditions of the First LNFA Sale. The Purchaser in no way induced, caused, or required the commencement of the chapter 11 filings of the Debtors and no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors. All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser with the Debtors in connection with the Sale have been disclosed. There is no evidence that the Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction. Ellington is entering into the Sale in good faith and is a good faith purchaser and is entitled to such finding under Bankruptcy Code Section 363(m).

## FINALITY OF ORDER

27.    The Debtors further request that, pursuant to Bankruptcy Rule 6004(h), the order approving the Sale not be stayed for any period of time after the entry of such orders.

28.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that any order approving the Sale of the LNFA Mortgage Assets be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6004(h) is waived.

LA3:1133695.7
RLF1-3164423-1

29.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, the leading treatise on bankruptcy suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶ 6004.10 (15th rev. ed. 2006). Further, it suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

30.    The Debtors hereby request that any order approving the sale of the LNFA Mortgage Assets be effective immediately upon entry by providing that the 10-day stay under Bankruptcy Rule 6004(h) is waived or, in the alternative, if an objection to the Sale of the LNFA Mortgage Assets is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

**NOTICE**

31.    No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to the Examiner; (3) counsel to Greenwich Capital Financial Products, Inc. and The CIT Group/Business Credit, Inc., the Debtors post-petition senior secured lenders; (4) counsel to the Official Committee of Unsecured Creditors; (5) all of the parties that have filed UCC-1 financing statements against the Debtors; (6) the Internal Revenue Service; and (7) all parties entitled to notice under Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

13

WHEREFORE, the Debtors request that the Court (i) grant the Motion; (ii) enter an order substantially in the form attached as Exhibit "B" hereto and (iii) grant such other and further relief as is just and appropriate.

14

Dated: June 12, 2007
       Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

LA3:1133695.7
RLF1-3164423-1