# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 573-6272

July 1, 1999

Robert J. Rosenberg, Esq.
Roland S. Young, Esq.
Latham & Watkins
885 Third Avenue
New York, NY  10022

Dave P. Adams, Esq.
Office of the United States Trustee
601 Walnut Street, Suite 950-W
Philadelphia, PA  19106

Laura Davis Jones, Esq.
Edwin J. Harron, Esq.
Michael R. Nestor, Esq.
M. Blake Cleary, Esq.
Young, Conaway, Stargatt
& Taylor
11th Floor, Rodney Square North
P.O. Box 391
Wilmington, DE  19899-0391

Eric D. Schwartz, Esq.
Gregory W. Werkheiser, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Robert D. Albergotti, Esq.
Stephen M. Pezanosky, Esq.
Scott W. Everett, Esq.
Haynes and Boone, L.L.P.
901 Main Street, Suite 3100
Dallas, TX  75202-3789

Steven R. Gross, Esq.
Michael E. Wiles, Esq.
Debevoise & Plimpton
875 Third Avenue
New York, NY  10022

RE:  Dailey International, Inc.
     Case No. 99-1233 (PJW)

Dear Counsel:

        This  is  the  Court's  ruling  with  respect  to  the
application (the "Application") of Dailey International Inc. and

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 2
July 1, 1999

its affiliates (the "Debtors") to retain Ernst & Young, L.L.P.

("Ernst & Young") as Accountants, Auditors, Tax Advisors, and

Financial Advisory Services Providers for the Debtors (Doc. # 16).

For the reasons stated below, the Application will be denied.

On May 28, 1999, the Debtors filed voluntary petitions

for relief under Chapter 11 of the United States Bankruptcy Code.

The Debtors filed the Application on the same day, seeking to

employ Ernst & Young under the terms and conditions of a letter of

understanding dated May 28, 1999 (the "Engagement Letter") attached

to the Application as Exhibit B.  The lengthy Engagement Letter

contains the following unusual provisions:

> Any controversy or claim, other than the allowance
> of fees, arising out of or relating to this Agreement or
> any of the services provided by Ernst & Young pursuant
> thereto (including any such matter involving any parent,
> subsidiary, affiliate, successor in interest, or agent of
> the Company or of Ernst & Young) shall be submitted first
> to voluntary mediation; and, if mediation is not
> successful, then to binding arbitration, in accordance
> with the dispute resolution procedures attached to this
> Agreement.  Judgment on any arbitration award may be
> entered in any court having proper jurisdiction.  In the
> event that, for any reason, this arbitration requirement
> is declared null and void, any controversy or claim

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 3
July 1, 1999

arising out of or relating to this Agreement shall be resolved solely by a federal court with jurisdiction over such controversy or claim, and, as to any such federal court proceeding, the parties expressly waive their right to a jury trial. [This paragraph hereinafter referred to as the "ADR Provision."]

As to the tax, consulting and financial services which the Company has requested and Ernst & Young has agreed to provide as set forth in the Agreement (the "Non-Attestation Services"), the total aggregate liability to the Company of E & Y whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, under this Agreement shall be limited to the fees paid by the Company to E & Y pursuant to the Agreement under which any such liability arises. In no event will E & Y be liable to the Company for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, even if advised of the likelihood of such damages. The Company's recourse with respect to any liability or obligation of E & Y hereunder shall be limited to the assets of E & Y, and the Company shall have no recourse against, and shall bring no claim against, any partner of E & Y or any of the assets thereof.

The Company shall have no recourse against, and shall bring no claim (in the nature of contribution or otherwise) against E & Y or its partners and employees with respect to (i) any third-party claim (from all causes of action of any kind, including contract, tort or

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 4
July 1, 1999

      otherwise) against the Company or its subsidiaries or affiliates related to or arising out of the Non-Attestation Services provided hereunder, or (ii) any losses, liabilities, damages or expenses (including attorneys' fees and expenses) incurred by the Company or its subsidiaries or affiliates as a result of any such third-party claim.  In addition, the Company shall indemnify and hold harmless E & Y, its partners and employees ("E & Y Indemnitees") from and against (i) all claims and causes of action of any kind, including contract, tort or otherwise, by any third party related to or arising out of the Non-Attestation Services provided hereunder, and (ii) any losses, liabilities, damages and expenses (including, but not limited to, reasonable attorneys' fees and expenses incurred by the E & Y Indemnitees in any action or proceeding between an E & Y Indemnitee and any third party or otherwise) that are incurred by the E & Y Indemnitees as a result of any such claims or causes of action.  The Company shall reimburse the E & Y Indemnitees for such Indemnified Costs as they are incurred by the E & Y Indemnitees.  The Company's subsidiaries and affiliates are deemed a third party as that term is used herein. [The two paragraphs immediately above hereinafter referred to as the "Risk Allocation Provisions."]

      The consideration for approval of both the ADR Provision and the Risk Allocation Provisions is a matter of first impression for this Court, as Ernst & Young's counsel acknowledged at the June 2, 1999 hearing.  See Doc. # 51 at 27 (When queried as to whether any other bankruptcy court had approved a professional retention

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 5
July 1, 1999

application embodying such provisions, Ernst & Young's counsel

responded: "I believe you have the distinct honor of having this

presented to you first as the standard form of engagement letter

going forward."). Subsequent to the June 2, 1999 hearing, the

Debtors and Ernst & Young filed memoranda in support of the

Application. The United States Trustee (the "Trustee") and the

Official Committee of Unsecured Creditors (the "Committee") filed

substantial memoranda in opposition to the Application, setting

forth numerous arguments against the propriety of the above-quoted

provisions. Ernst & Young filed a reply memorandum in response to

the Trustee's and Committee's oppositions. For the most part, I

find the arguments of the Trustee and the Committee to have

considerable merit.[1]

At the June 2, 1999 hearing, Ernst & Young's counsel

contended that the ADR Provision and the Risk Allocation Provisions

are "standard in the marketplace outside of bankruptcy." Doc # 51

_____

[1] Due to time constraints, I address only a limited number of
the arguments regarding the subject provisions.

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 6
July 1, 1999

at 28; see also Doc. # 51 at 27, 28 (characterizing the Engagement

Letter as "the standard market-based, nonbankruptcy engagement

letter" and the ADR Provision and Risk Allocation Provisions as

"out-of-court normal procedure"). However, these contentions are

not borne out by the affidavit (the "Affidavit") of A. Zuard

Renkey, associate general counsel of Ernst & Young, which Ernst &

Young subsequently filed in support of the Application.    In

reference to the ADR Provision, Renkey states in the Affidavit

that:

> Th[e] ADR provision, including the attached procedures,
> are _similar to_ those which are included in other
> engagement letters entered into by E & Y and its clients.
> Additionally, it is the _policy_ of E & Y _to seek_ to
> include such ADR provisions in _virtually all_ of its
> engagement letters, including engagement letters for both
> bankruptcy and non-bankruptcy related services.

Affidavit at 2 (emphasis added).

In reference to the Risk Allocation Provisions, Renkey

states in the Affidavit that:

> The[] risk allocation provisions are identical _or similar
> to_ those which are included in other engagement letters
> entered into by E & Y and its clients.  Specifically, E

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 7
July 1, 1999

> & Y _seeks_ to _include_ for non-attestation consulting
> services these liability cap and exclusion provisions in
> _most_ of its engagement letters and nonrecourse and
> indemnity provisions in _many_ of its engagement letters.

_Id._ (emphasis added).

Obviously, the Affidavit fails to provide credible evidence to support Ernst & Young's contention that the ADR Provision and the Risk Allocation Provisions are "standard in the marketplace outside of bankruptcy." Ernst & Young has failed to provide information as to the frequency with which other substantial clients have agreed to either the ADR Provision or the Risk Allocation Provisions. With regard to the ADR Provision, Renkey states that "similar" provisions have been included in other engagement letters and that Ernst & Young "seeks" to include such provisions in "virtually all" of its engagement letters. With regard to the Risk Allocation Provisions, Renkey asserts that Ernst & Young "seeks to include" the Risk Allocation Provisions in "many" or "most" of its engagement letters. However, Ernst & Young has not stated when its "policy" was adopted and has failed to provide

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 8
July 1, 1999

evidence of a single engagement letter, either inside or outside of bankruptcy, which contains the ADR Provision or Risk Allocation Provisions set forth in the Engagement Letter. In fact, according to the Committee, Ernst & Young did not seek the Risk Allocation Provisions from the Debtors in the prepetition April 30, 1999 engagement letter with the Debtors for tax services.

Regardless of Ernst & Young's "policy" or what it purports to be the standard practice outside of bankruptcy, I find that the ADR Provision and the Risk Allocation Provisions are not appropriate terms and conditions for the retention of professionals in bankruptcy pursuant to 11 U.S.C. §§ 327 and 328.

The ADR Provision denies the Court the ability to hear potential claims by the Debtors, or its successors or other parties in interest, against Ernst & Young arising out of its performance pursuant to its court-approved retention. It seems to me that such claims would be core proceedings as those claims would relate to the "administration of the estate." See 28 U.S.C. § 157(b)(2)(A); see also Southmark Corp. v. Coopers & Lybrand (In re Southmark

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 9
July 1, 1999

Corp.), 163 F.3d 925 (5th Cir. 1999) (holding that professional malpractice claims against court-appointed professionals are core matters).    Furthermore, such claims would likely involve the meaning and effect of the very contract for Ernst & Young's retention which is solely within the jurisdiction of this Court to approve.   See 11 U.S.C. §§ 327, 328.  In addition, as the Committee points out, the limiting procedures set forth in the ADR Provision are inimical to procedural rights and remedies in an adversary proceeding in a bankruptcy case.   Without discussing these in detail, I observe that the Committee's point is well-taken.

In its reply, Ernst & Young argues that just because this Court may have jurisdiction to hear disputes involving statutorily retained professionals does not necessarily mean that a bankruptcy court has exclusive jurisdiction over such matters.  While this may be so, I do not believe it serves as a legitimate argument for ousting the bankruptcy court from jurisdiction over such matters.

Ernst & Young's reliance on the "strong federal policy encouraging arbitration", citing the Federal Arbitration Act,

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 10
July 1, 1999

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987) and

related cases, is misplaced.   The policy on which Ernst & Young

relies favors the enforcement of arbitration clauses which are

already effective and binding in existing contracts.   The issue in

the case at bar is not whether an arbitration clause in a valid

contract should be enforced, but whether this Court--acting

pursuant to broad administrative authority over reorganizations and

claims resolutions--should approve the proposed ADR Provision in

the first place.   Ernst & Young has cited no federal policy which

favors the execution of arbitration provisions akin to the ADR

Provision in the Engagement Letter which seeks to sidestep a

bankruptcy court's conventional jurisdiction.

        With regard to the Risk Allocation Provisions, Ernst &

Young states that "indemnity provisions are routinely included in

engagement letters between debtors and investment banks acting as

advisors to such debtors and are approved by this Court."   Doc. #

36 at 11.   Indeed, I have approved limited forms of indemnity

provisions in engagement letters for investment bankers and

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 11
July 1, 1999

financial advisors (these provisions typically exclude from
coverage the gross negligence or willful misconduct of the
indemnitee). For an example cited by Ernst & Young, see In re Long
John Silver, Inc., Case No. 98-1164 Doc. # 91 (application to
retain Donaldson Lufkin & Jenrette Securities Corp. as investment
bankers). For more recent examples, see In re Loewen Group Int'l,
Case No. 99-1244 Doc. # 22 (application to retain Wasserstein
Perella & Co. as financial advisors); In re Hechinger Co., Case No.
99-2261 Doc. # 23 (application to retain Policano & Manzo, L.L.C.
as special financial advisor and bankruptcy consultant); In re
Harnischfeger Indus., Inc., Case No. 99-2171 Doc. # 16 (application
to retain PriceWaterhouse Coopers Securities LLC as financial
advisor); In re Willcox & Gibbs, Inc., Case No. 99-928 Doc. # 13
(application to retain Peter J. Solomon Co. as financial advisor
and investment banker).

However, in sharp contrast to the indemnification
provisions which this Court has approved in prior cases involving
similar professional services, by its Risk Allocation Provisions

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 12
July 1, 1999

Ernst & Young seeks to (i) limit its damages for all claims relating to "Non-Attestation Services" to the fees that Ernst & Young is paid for such services; (ii) require the Debtors to waive all claims to recover consequential, incidental, indirect, punitive or special damages regardless of the nature of the claims asserted; (iii) bar any claim for contribution or indemnification from Ernst & Young without regard to the nature of the claim that might be asserted or the wrongdoing by Ernst & Young that contributed to or gave rise to the claim; (iv) require the Debtors to indemnify Ernst & Young against all legal costs and damages associated with "all claims and causes of action of any kind, including contract, tort or otherwise, by any third party related to or arising out of the Non-Attestation Services."  Obviously, the Risk Allocation Provisions which Ernst & Young seeks go _far_ beyond the limited indemnification provisions for investment bankers and financial advisors which this Court has heretofore allowed.[2]

---

[2] Ernst & Young's damage limitation provision reminds me of the type of limited liability of photo film developers: No matter what happens to the customer's film or prints, the developer's

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 13
July 1, 1999

In its reply, Ernst & Young argues that the Committee is attempting to preclude Ernst & Young from entering into an agreement with the Debtor which both Ernst & Young and the Debtor find acceptable and appropriate.  According to Ernst & Young,

> the Trustee and the Committee do not wish to have
> sophisticated parties negotiate engagement letters at
> all.  Instead they wish to create absolute rules which
> strictly govern the form of engagement letters.  In
> effect, they wish to have this Court create another
> "official bankruptcy form" which sets forth what is
> permitted in engagement letters and what is not.

(Doc. # 92 at 14)

Ernst & Young misses the point.  It is patently clear from §§ 327 and 328 that sophisticated parties are not entitled to dictate the terms and conditions of the engagement of professionals.  Those terms and conditions are subject to the approval of the bankruptcy court in making reasoned determinations as to what is in the best interest of the estate.  In this regard, I should note that there is a distinct benefit to having uniformity on certain important

---

liability is limited to the cost of the roll of film.  However appropriate that may be in the commercial arena of film processing, I find it inappropriate in the arena of professional services.

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 14
July 1, 1999

terms and conditions of the retention of professionals.    Absent

such uniformity, a good argument can be made that retention of

professionals should not be included in "first day" motions, but

rather should be reserved to a later date when other parties,

including statutory committees, will have an opportunity to debate

the merits of "customized" proposed terms and conditions for

retentions.

In its reply, Ernst & Young points out that in <u>In re</u>

<u>Favorite Brands Int'l Holding Corp.</u>, Case No. 99-726 (Bankr. D.

Del. May 28, 1999), this Court approved the retention of an

investment banker as financial advisor under an engagement letter

which include an indemnification provision, a damage limitation

provision and a waiver of certain claims.    Having reviewed that

engagement letter in the <u>Favorite Brands</u> case, I find the risk

allocation provisions not as sweeping as those proposed here by

Ernst & Young, and if given the opportunity to reconsider the

engagement letter in the <u>Favorite Brands</u> case, I believe I would be

inclined to reconsider the allowance of certain of its terms and

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 15
July 1, 1999

conditions.   Indeed, having reread that engagement letter, I am
inclined to believe at this time that that retention may have been
improvidently granted.

Ernst & Young contends that because the Risk Allocation
Provisions are enforceable under state law, such provisions are
reasonable and appropriate in a bankruptcy context.   However, the
issue in not whether indemnification and other risk allocation
provisions should be enforced when present in a valid contract;
rather, the issue is whether such provisions should be approved in
a professional's retention application in a bankruptcy forum.
Ernst & Young fails to cite any policy in favor of approving the
particular Risk Allocation Provisions in a Chapter 11 bankruptcy
case.   To allow such provisions here would be a dramatic departure
from this Court's policies governing professionals' retentions and
I see no benefit to the administration of reorganization cases
resulting from the adoption of such provisions.

Furthermore, I find the provision of the Engagement
Letter confusing and ambiguous.   The limitation of liability that

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 16
July 1, 1999

Ernst & Young seeks applies to "tax, consulting and financial services," which Ernst & Young defines as the "Non-Attestation Services." Although I understand that these services do not include auditing services, the description of "tax, consulting and financial services" appears to me to include rather conventional outside accountant's services. When these three services are compared with the services to be performed which are identified on the first page of the Engagement Letter--"audit services; due-diligence-related services; loaned staff services; tax outsourcing and consultation services and; financial advisory services"--it is unclear how the three services mentioned in the Risk Allocation Provisions fit into the description of services on the first page of the Engagement Letter. It is not at all clear that the Risk Allocation Provisions operate to exclude conventional outside accountant's services from such liability limitations.

In its reply, Ernst & Young takes a fallback position on the indemnification. Specifically, Ernst & Young states that it "does not seek indemnification for claims or causes of action

Robert J. Rosenberg, Esq.
Dave P. Adams, Esq.
Laura Davis Jones, Esq.
Robert D. Albergotti, Esq.
Eric D. Schwartz, Esq.
Steven R. Gross, Esq.
Page 17
July 1, 1999

arising from gross negligence or wilfull misconduct and will agree to a modification of the engagement letter to so specify." (Doc. # 92 at 12)   While this is an improvement, I do not view it as adequately addressing the many objectionable features of the Engagement Letter as discussed above.

I am aware of the multi-million dollar settlement payment which Ernst & Young recently agreed to with the Chapter 7 trustee in the Merry-Go-Round Enterprises, Inc. litigation.   Ernst & Young's efforts to avoid similar liability exposure in the future is understandable; however, I find its apparent efforts in that regard in the instant case as overreaching and not consonant with the public policy design embodied in the Bankruptcy Code.

For the reasons stated above, the Debtors' Application (Doc. # 16) is DENIED.

Very truly yours,

Peter J. Walsh

PJW:vw