only if such Estimate exceeds both the approved Preliminary Cost Estimate and the amount of the Landlord's Contribution. Tenant shall have five (5) days from the receipt thereof to approve or disapprove the Working Drawings and Specifications and (if delivered to Tenant) the Final Cost Estimate. Tenant shall not unreasonably withhold or delay its approval, and any disapproval or requested modification shall be limited to items not contained in the approved Preliminary Plan or Preliminary Cost Estimate. Should Tenant disapprove the Working Drawings and Specifications and the Final Cost Estimate, such disapproval shall be accompanied by a detailed list of revisions. Any revision requested by Tenant and accepted by Landlord shall be incorporated into a revised set of Working Drawings and Specifications and Final Cost Estimate, and Tenant shall approve same in writing within five (5) days of receipt without further revision. Tenant's failure to comply in a timely manner with any of the requirements of this paragraph shall constitute a Tenant Delay. Without limiting the rights of Landlord for Tenant Delays as set forth herein, in the event Tenant has not approved both the Working Drawings and Specifications and the Final Cost Estimate within sixty (60) days following the date of this Lease, then Landlord may, at its option, elect to terminate this Amendment by written notice to Tenant. In the event Landlord elects to effect such a termination, Tenant shall, within ten (10) days following demand by Landlord, pay to Landlord any costs incurred by Landlord in connection with the preparation or review of plans, construction estimates, price quotations, drawings or specifications under this Work Letter and for all costs incurred in the preparation and execution of this Amendment, including any leasing commissions.

E. In the event that Tenant requests in writing a revision in the approved Working Drawings and Specifications ("Change"), Landlord shall advise Tenant by written change order as soon as is practical of any increase in the Completion Cost and/or any Tenant Delay such Change would cause. Tenant shall approve or disapprove such change order in writing within two (2) days following its receipt from Landlord. Tenant's approval of such Change shall be accompanied by Tenant's payment of any increase in the Completion Cost in excess of Landlord's Contribution resulting from such Change. Landlord shall have the right to decline Tenant's request for a Change for any of the reasons set forth in Article I.C above for Landlord's disapproval of a Non-Standard Improvement. It is understood that Landlord shall have no obligation to interrupt or modify the Tenant Improvement work pending Tenant's approval of a change order.

F. Notwithstanding any provision in the Lease to the contrary, if Tenant fails to comply with any of the time periods specified in this Work Letter, fails otherwise to approve or reasonably disapprove any submittal within five (5) days, fails to approve in writing both the Preliminary Plan and Preliminary Cost Estimate for the Tenant Improvements by the Plan Approval Date, fails to provide all of the Programming Information requested by Landlord by the Plan Approval Date, fails to approve in writing the Working Drawings and Specifications or the Final Cost Estimate within the time provided herein, requests any Changes, furnishes inaccurate or erroneous specifications or other information, or otherwise delays in any manner the completion of the Tenant Improvements (including without limitation by specifying materials that are not readily available) or the issuance of an occupancy certificate (any of the foregoing being referred to in this Lease as a "Tenant Delay"), then Tenant shall bear any resulting additional construction cost or other expenses, and the Commencement Date for Suites 100 and 250 shall be deemed to have occurred for all purposes, including Tenant's obligation to pay rent, as of the date Landlord reasonably determines that it would have been able to deliver Suites 100 and 250 to Tenant but for the collective Tenant Delays. In no event, however, shall such date be earlier than the Estimated Commencement Date for Suites 100 and 250 set forth in the attached Amendment. Notwithstanding the foregoing, no Tenant Delay shall be deemed to have occurred unless and until Landlord has given Tenant written notice of the act or omission which constitutes the basis for such Tenant Delay and such act or omission is not cured within one (1) complete business day after Tenant's receipt of such notice. Should Landlord determine that the Commencement Date for Suites 100 and 250 should be advanced in accordance with the foregoing, it shall so notify Tenant in writing. Landlord's determination shall be conclusive unless Tenant notifies Landlord in writing, within fifteen (15) days thereafter, of Tenant's election to contest same by arbitration with JAMS in Orange County, California. Pending the outcome of such arbitration proceedings, Tenant shall make timely payment of all rent due under this Lease based upon the Commencement Date for Suites 100 and 250 set forth in the aforesaid notice from Landlord.

G. Landlord shall permit Tenant and its agents to enter Suites 100 and 250 prior to the Commencement Date for Suites 100 and 250 in order that Tenant may perform any work to be performed by Tenant hereunder through its own contractors, subject to Landlord's prior written approval, and in a manner and upon terms and conditions and at times satisfactory to Landlord's representative. The foregoing license to enter Suites 100 and 250 prior to the Commencement Date for Suites 100 and 250 is, however, conditioned upon Tenant's contractors and their subcontractors and employees working in harmony and not interfering with the work being performed by Landlord. If at any time that entry shall cause disharmony or interfere with the work being performed by Landlord, this license may be withdrawn by Landlord upon twenty-four (24) hours written notice to Tenant. That license is further conditioned upon the compliance by Tenant's contractors with all requirements imposed by Landlord on third party contractors, including without limitation the maintenance by Tenant and its contractors and subcontractors of workers' compensation and public liability and property damage insurance in amounts and with companies and on forms satisfactory to Landlord, with certificates of such insurance being furnished to Landlord prior to proceeding with any such entry. The entry shall be deemed to be under all of the provisions of the Lease except as to the covenants to pay rent. Landlord shall not be liable in any way for any injury, loss or damage which may occur to any such work being performed by Tenant, the same being solely at Tenant's risk. In no event shall the failure of Tenant's contractors to complete any work in Suites 100 and 250 extend the Commencement Date of for Suites 100 and 250.

H. Tenant hereby designates William Dodge, Telephone No. (949) 224-5714, as its representative, agent and attorney-in-fact for the purpose of receiving notices, approving submittals and issuing requests for Changes, and Landlord shall be entitled to rely upon authorizations and directives of such person(s) as if given directly by Tenant. Tenant may amend the designation of its construction representative(s) at any time upon delivery of written notice to Landlord.

II. COST OF TENANT IMPROVEMENTS

A. Landlord shall complete, or cause to be completed, the Tenant Improvements, at the construction cost shown in the Final Cost Estimate (subject to the provisions of this Work Letter), in accordance with final Working Drawings and Specifications approved by both Landlord and Tenant. Landlord shall pay towards the final construction costs ("Completion Cost") as incurred a maximum of Five Hundred Seventy Four Thousand Five Hundred Forty-Six Dollars ($574,546.00) ("Landlord's Contribution"), based on $25.00 per usable square foot of Suites 100 and 250, and Tenant shall be fully responsible for the remainder ("Tenant's Contribution"). Landlord's Contribution shall only be used for construction and installation of Standards incorporated into a Preliminary Plan approved by Landlord and for other costs outlined below. Tenant shall have no right to receive any credit, refund or allowance of any kind for any unused portion of the Landlord's Contribution nor shall Tenant be allowed to make revisions to an approved Preliminary Plan, Working Drawings and Specifications or request a Change in an effort to apply any unused portion of Landlord's Contribution.

B. The Completion Cost shall include all costs of Landlord in completing the Tenant Improvements in accordance with the approved Working Drawings and Specifications, including but not limited to the following: (i) payments made to architects, engineers, contractors, subcontractors and other third party consultants in the performance of the work, (ii) salaries and fringe benefits of persons, if any, in the direct employ of Landlord performing any part of the construction work, (iii) permit fees and other sums paid to governmental agencies, and (iv) costs of all materials incorporated into the work or used in connection with the work. The Completion Cost shall also include an administrative/supervision fee to be paid to Landlord or to Landlord's management agent in the amount of five percent (5%) of all such costs.

C. Prior to start of construction of the Tenant Improvements, Tenant shall pay to Landlord in full the amount of the Tenant's Contribution set forth in the Final Cost Estimate. If the actual Completion Cost of the Tenant Improvements is less than the Final Cost Estimate, any portion of the Tenant's Contribution paid by Tenant but not expended towards the Completion Cost shall be refunded to Tenant in the form of a check payable to Tenant. If the actual Completion Cost is greater than the Final Cost Estimate because of modifications or extras not reflected on the approved Working Drawings and Specifications which are requested by Tenant, or because of Tenant Delays, then Tenant shall be responsible for all such additional costs. The balance of any sums not otherwise paid by Tenant shall be due and payable on or before the Commencement Date for Suites 100 and 250. If Tenant defaults in the payment of any sums due under this Work Letter, Landlord shall (in addition to all other remedies) have the same rights as in the case of Tenant's failure to pay rent under the Lease.

## FIRST AMENDMENT TO LEASE

I. **PARTIES AND DATE.**

This Amendment to Lease (the "Amendment") dated _____, 2000, is by and between THE IRVINE COMPANY ("Landlord"), and NEW CENTURY FINANCIAL CORPORATION, a Delaware corporation ("Tenant").

II. **RECITALS.**

Landlord and Tenant entered into an undated lease ("Lease") for space in two (2) buildings located at 340 Commerce ("340 Commerce Premises") and 350 Commerce, Suite 200 ("350 Commerce Premises") in Irvine, California.

Landlord and Tenant each desire to modify the Lease to add approximately 25,277 rentable square feet of space within the building located at 350 Commerce, which is more particularly described on EXHIBIT A attached to this Amendment and herein referred to as "Suites 100 and 250", extend the Lease Term as to the 350 Commerce Premises (but not as to the 340 Commerce Premises), adjust the Basic Rent, and make such other modifications as are set forth in "III. MODIFICATIONS" next below.

III. **MODIFICATIONS.**

A. <u>Basic Lease Provisions</u>. The Basic Lease Provisions are hereby amended as follows:

1. Item 1 is hereby deleted in its entirety and substituted therefor shall be the following:

"1. Premises: The Premises (more particularly described in Section 2.1) consists of space located in two (2) buildings, commonly known as:

"Building 1 - 340 Commerce, Irvine, California
"Building 2 - 350 Commerce, Suites 100, 200 and 250, Irvine, California"

2. Item 5 is hereby amended to extend the Term of this Lease as to the 350 Commerce Premises (but not as to the 340 Commerce Premises) to that date (the "New Expiration Date") which is sixty (60) months, plus such additional days as may be required to cause this Lease to terminate on the final day of the calendar month, from and after the "Commencement Date for Suites 100 and 250" (as defined in Article III.C of this Amendment). The Term of this Lease as to the 340 Commerce Premises shall not be extended to the New Expiration Date but instead shall expire on the original Expiration Date of the Lease.

Subject to the terms and conditions of Section 3.3 of the Lease, Tenant shall have two (2) separate rights to extend the Term of this Lease for single extension periods of sixty (60) months each, one (1) of such extension periods as to the 340 Commerce Premises, and one (1) of such periods as to the 350 Commerce Premises and Suites 100 and 250, collectively. Tenant's right to extend the Term as to the 340 Commerce Premises shall be as set forth in Section 3.3 of the Lease, without amendment. Consequently, Tenant's 9 to 12 month window for exercising of its option as to the 340 Commerce Premises contained in the first paragraph of Section 3.3(a) shall be not less than nine (9) months or more than twelve (12) months prior to the original Expiration Date of the Lease, and Tenant's 12 to 15 month "window" for requesting a rental quote from Landlord for the 340 Commerce Premises contained in the first paragraph of Section 3.3(b) shall be not less than twelve (12) months or more than fifteen (15) months prior to the original Expiration Date.

Notwithstanding the provisions of the last sentence of Section 3.3(c) of the Lease, Tenant's right to extend the Term provided in Section 3.3(a) as to the 350 Commerce Premises and as to Suites 100 and 250 shall extend from and after the New Expiration Date. Consequently, Tenant's 9 to 12 month "window" for exercising of its option as to the 350 Commerce Premises and Suites 100 and 250 contained in the first paragraph of Section 3.3(a) shall be not less than nine (9) months or more than twelve (12) months prior to the New Expiration Date, and Tenant's 12 to 15 month "window" for requesting a rental quote for the 350 Commerce Premises and for Suites 100 and 250 from Landlord contained in the first paragraph of Section 3.3(b) shall be not less than twelve (12) months or more than fifteen (15) months prior to the New Expiration Date.

3. Item 6 is hereby amended by adding the following:

"Basic Rent for Suites 100 and 250: Commencing on the Commencement Date of Suites 100 and 250, the Basic Rent for Suites 100 and 250 shall be Forty Thousand Four Hundred Forty-Three Dollars ($40,443.00) per month, based on $1.60 per rentable square foot.

Basic Rent for Suites 100 and 250 is subject to adjustment as follows:

Commencing twelve (12) months following the Commencement Date of Suites 100 and 250, the Basic Rent for Suites 100 and 250 shall be Forty One Thousand Seven Hundred Seven Dollars ($41,707.00) per month, based on $1.65 per rentable square foot.

Commencing twenty-four (24) months following the Commencement Date of Suites 100 and 250, the Basic Rent for Suites 100 and 250 shall be Forty Two Thousand Nine Hundred Seventy-One Dollars ($42,971.00) per month, based on $1.70 per rentable square foot.

Commencing thirty-six (36) months following the Commencement Date of Suites 100 and 250, the Basic Rent for Suites 100 and 250 shall be Forty Four Thousand Two Hundred Thirty-Five Dollars ($44,235.00) per month, based on $1.75 per rentable square foot.

Commencing forty-eight (48) months following the Commencement Date of Suites 100 and 250, the Basic Rent for Suites 100 and 250 shall be Forty Five Thousand Four Hundred Ninety-Nine Dollars ($45,499.00) per month, based on $1.80 per rentable square foot.

Basic Rent for the 340 Commerce Premises and for the 350 Commerce Premises shall continue to be payable during Term as extended by this Amendment in accordance with the schedule set forth in Item 6 of Basic Lease Provisions of the Lease."

4. Effective as of the Commencement Date for Suites 100 and 250, Item 8 shall be deleted in its entirety and substituted therefor shall be the following:

"8. Floor Area of Premises: Approximately 92,558 rentable square feet, broken down as follows:

340 Commerce Premises - 53,360 rentable square feet

350 Commerce Premises - 13,921 rentable square feet

Suites 100 and 250 - 25,277 rentable square feet"

     5.    Item 9 is hereby deleted in its entirety and substituted therefor shall be the following:

"9. Security Deposit: $183,266.00"

     6.    Effective as of the Commencement Date for Suites 100 and 250, Item 14 shall be deleted in its entirety and substituted therefor shall be the following:

"14. Vehicle Parking Spaces: Three Hundred Seventy-Three (373)"

    B.    **Security Deposit**. Concurrently with Tenant's delivery of this Amendment, Tenant shall deliver the sum of Fifty Thousand Forty Nine Dollars ($50,049.00) to Landlord, which sum shall be added to the Security Deposit presently being held by Landlord in accordance with Section 4.3 of the Lease.

    C.    **Building 2 Signage**. Landlord confirms and agrees that the non-exclusive building-top sign on Building 2 referred to in the second sentence of Section 5.2 of the Lease is available for Tenant, and that, subject to that occupancy requirement therein contained, Tenant shall have the right to install such building-top signage in lieu of Tenant's existing exterior eyebrow sign on Building 2. Further, the fourth sentence of Section 5.2 is amended to add "Loan Trader" to the list of names which may appear on Tenant's building-top signage (provided that such entity is in fact conducting business within the Premises).

    D.    **Floor Plan of Suites 100 and 250**. As used herein, "Suites 100 and 250" shall mean the space described on **Exhibit A** attached to this Amendment. From and after the date of this Amendment, Suites 100 and 250 collectively with the 340 Commerce Premises described on EXHIBIT A attached to the Lease and the 350 Commerce Premises described on EXHIBIT A-1 attached to the Lease, shall constitute the "Premises" as defined in Section 2.1 of the Lease.

    E.    **Tenant Improvements**. Landlord hereby agrees to complete the Tenant Improvements for Suites 100 and 250 in accordance with the provisions of **Exhibit X-1**, Work Letter, attached to this Amendment. Landlord estimates that this Lease as to Suites 100 and 250 shall commence on or about July 14, 2000 (the "Estimated Commencement Date for Suites 100 and 250"), but Landlord makes no representation or warranty as to such date, and this Lease as to Suites 100 and 250 shall commence on the actual Commencement Date for Suites 100 and 250, as hereinafter defined. As used herein, "Commencement Date for Suites 100 and 250" shall mean the earlier of (a) Landlord's tender of possession of Suites 100 and 250 to Tenant with the "Tenant Improvements" (as defined in the Work Letter attached hereto) for Suites 100 and 250 substantially completed but for minor punch list items, or (b) the date Tenant acquires possession or commences use of Suites 100 and 250 for its business operations. Within ten (10) days after possession of Suites 100 and 250 is tendered to Tenant, the parties shall memorialize on a form provided by Landlord the actual Commencement Date for Suites 100 and 250, provided that Tenant's failure to execute that form shall not affect the validity of Landlord's determination of said date.

    If for any reason other than "Tenant Delays" (as defined in the Work Letter attached to this Amendment) or other matters beyond Landlord's reasonable control, the Commencement Date for Suites 100 and 250 has not occurred by the date that is ninety (90) days following the Estimated Commencement Date for Suites 100 and 250, then Tenant may, by written notice to Landlord given at any time thereafter but prior to the actual occurrence of the Commencement Date for Suites 100 and 250, elect to terminate this Amendment. Notwithstanding the foregoing, if at any time during the construction period, Landlord reasonably believes that the Commencement Date for Suites 100 and 250 will not occur on or before ninety (90) days following the Estimated Commencement Date for Suites 100 and 250, Landlord shall notify Tenant in writing of such fact and of a new outside date on or before which the Commencement Date for Suites 100 and 250 will occur, and Tenant must elect within ten (10) days of receipt of such notice to either terminate this Amendment or waive its right to terminate this Amendment provided the Commencement Date for Suites 100 and 250 occurs on or prior to

C:\TEMP\-6289108.WPD
April 25, 2000            3

the new outside date established by Landlord in such notice to Tenant. Tenant's failure to elect to terminate this Amendment within such ten (10) day period shall be deemed Tenant's waiver of its right to terminate this Amendment as provided in this paragraph as to the previous outside date, but not as to the new outside date established by said notice.

F. Right of First Refusal. Section 2.4 Right of First Refusal of the Lease is hereby deleted in its entirety and shall have no further force or effect.

IV. GENERAL.

A. Effect of Amendments. The Lease shall remain in full force and effect except to the extent that it is modified by this Amendment.

B. Entire Agreement. This Amendment embodies the entire understanding between Landlord and Tenant with respect to the modifications set forth in "III. MODIFICATIONS" above and can be changed only by a writing signed by Landlord and Tenant.

C. Counterparts. If this Amendment is executed in counterparts, each is hereby declared to be an original; all, however, shall constitute but one and the same amendment. In any action or proceeding, any photographic, photostatic, or other copy of this Amendment may be introduced into evidence without foundation.

D. Defined Terms. All words commencing with initial capital letters in this Amendment and defined in the Lease shall have the same meaning in this Amendment as in the Lease, unless they are otherwise defined in this Amendment.

E. Corporate and Partnership Authority. If Tenant is a corporation or partnership, or is comprised of either or both of them, each individual executing this Amendment for the corporation or partnership represents that he or she is duly authorized to execute and deliver this Amendment on behalf of the corporation or partnership and that this Amendment is binding upon the corporation or partnership in accordance with its terms.

F. Attorneys' Fees. The provisions of the Lease respecting payment of attorneys' fees shall also apply to this Amendment.

V. EXECUTION.

Landlord and Tenant executed this Amendment on the date as set forth in "I. PARTIES AND DATE." above.

LANDLORD:

THE IRVINE COMPANY

By /s/ Robert E. Williams, Jr.
Robert E. Williams, Jr., President,
Irvine Industrial Company, a division
of The Irvine Company

By /s/ Nancy E. Trujillo
Nancy E. Trujillo,
Assistant Secretary

TENANT:

NEW CENTURY FINANCIAL CORPORATION,
a Delaware corporation

By /s/ [illegible]

Title VICE CHAIRMAN

By /s/ [illegible]

Title SECRETARY



EXHIBIT A



**EXHIBIT A**

## SECOND AMENDMENT TO LEASE

I. **PARTIES AND DATE.**

This Second Amendment to Lease (the "Amendment") dated _____June 17_____, 2002, is by and between THE IRVINE COMPANY ("Landlord"), and NEW CENTURY FINANCIAL CORPORATION, a Delaware corporation ("Tenant").

II. **RECITALS.**

Landlord and Tenant entered into an undated lease for space in two (2) buildings located at 340 Commerce and 350 Commerce, Suite 200 in Irvine, California, which lease was amended by a First Amendment to Lease dated May 1, 2002 (as amended, the "Lease").

On or before the date of this Amendment, Landlord and New Century Mortgage Corporation have executed two (2) new leases, one (1) lease for premises located at 210 Commerce, Irvine, California (the "210 Commerce Lease") and one (1) lease for premises located at 200 Commerce, Irvine, California (the "200 Commerce Lease).

Landlord and Tenant each desire to modify the Lease to make such other modifications as are set forth in "III. MODIFICATIONS" next below.

III. **MODIFICATIONS.**

A. <u>Basic Lease Provisions</u>. The Basic Lease Provisions are hereby amended as follows:

1. Item 9 is hereby deleted in its entirety and substituted therefore shall be the following:

"9. Security Deposit: $94,140.00"

2. Item 12 is hereby deleted in its entirety and substituted therefore shall be the following:

"12. Address for Payments and Notices:

LANDLORD

THE IRVINE COMPANY
c/o Insignia/ESG, Inc.
8105 Irvine Center Drive, Suite 350
Irvine, CA 92618

with a copy of notices to:

THE IRVINE COMPANY
dba Office Properties
8105 Irvine Center Drive, Suite 300
Irvine, CA 92618
Attn: Senior Vice President, Operations
Office Properties

TENANT

NEW CENTURY FINANCIAL CORPORATION
18400 Von Karman, Suite 1000
Irvine, CA 92612
Attention: Garrison W. Jaquess

B. <u>Security Deposit</u>. Landlord currently holds a Security Deposit in the amount of One Hundred Eighty Three Thousand Two Hundred Sixty-Six Dollars ($183,266.00) under this Lease. Landlord and Tenant agree to apply portions of said Security Deposit as follows: (i) Fifty Two Thousand Five Hundred Forty-Three Dollars ($52,543.00) of the Security Deposit shall be transferred and held by Landlord as the "Security Deposit" under the 210 Commerce Lease, and (ii) Thirty Six Thousand Five

Hundred Eighty-Three Dollars ($36,583.00) of the Security Deposit shall be transferred and held by Landlord as the "Security Deposit" under the 200 Commerce Lease. Tenant shall have no further right or interest in said portions of the Security Deposit so transferred. Following such transfer, Landlord shall retain the remaining Security Deposit in the sum of Ninety Four Thousand One Hundred Forty Dollars ($94,140.00) as security under this Lease.

IV. **GENERAL.**

A. <u>Effect of Amendments</u>. The Lease shall remain in full force and effect except to the extent that it is modified by this Amendment.

B. <u>Entire Agreement</u>. This Amendment embodies the entire understanding between Landlord and Tenant with respect to the modifications set forth in "III. MODIFICATIONS" above and can be changed only by a writing signed by Landlord and Tenant.

C. <u>Counterparts</u>. If this Amendment is executed in counterparts, each is hereby declared to be an original; all, however, shall constitute but one and the same amendment. In any action or proceeding, any photographic, photostatic, or other copy of this Amendment may be introduced into evidence without foundation.

D. <u>Defined Terms</u>. All words commencing with initial capital letters in this Amendment and defined in the Lease shall have the same meaning in this Amendment as in the Lease, unless they are otherwise defined in this Amendment.

E. <u>Corporate and Partnership Authority</u>. If Tenant is a corporation or partnership, or is comprised of either or both of them, each individual executing this Amendment for the corporation or partnership represents that he or she is duly authorized to execute and deliver this Amendment on behalf of the corporation or partnership and that this Amendment is binding upon the corporation or partnership in accordance with its terms.

F. <u>Attorneys' Fees</u>. The provisions of the Lease respecting payment of attorneys' fees shall also apply to this Amendment.

V. **EXECUTION.**

Landlord and Tenant executed this Amendment on the date as set forth in "I. PARTIES AND DATE." above.

LANDLORD:

THE IRVINE COMPANY

By: _____
Thomas A. Greubel, Vice President
Leasing, Office Properties

By: _____
Christopher Popma, Vice President
Asset Management, Office Properties

TENANT:

NEW CENTURY FINANCIAL CORPORATION, a Delaware corporation

By: _____
Name: Brad Morrice
Title: COO

By: _____
Name: _____
Title: _____