## SEVENTH AMENDMENT TO LEASE

I.     **PARTIES AND DATE.**

      This Seventh Amendment to Lease (the "Amendment") dated _October 12_, 2004, is by and between THE IRVINE COMPANY ("Landlord"), and NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation ("Tenant").

II.     **RECITALS.**

      Landlord and Tenant have entered into an undated lease, which lease has been amended by: (i) a First Amendment to Lease dated May 1, 2000, (ii) by Second Amendment to Lease dated June 17, 2002, (iii) by a Third Amendment to Lease dated September 12, 2002, (iv) by a Fourth Amendment to Lease dated October 14, 2003 (the "Fourth Amendment"), (v) by a Fifth Amendment to Lease dated February 5, 2004, and (vi) by a Sixth Amendment to Lease dated September 20, 2004 (said lease, as so amended, is hereinafter referred to as the "Lease").

      Landlord and Tenant each desire to further modify the Lease to extend the Lease Term solely as to the leased Premises located at 340 Commerce, Irvine, California (the "340 Commerce Premises"), to adjust the Basic Rent for the 340 Commerce Premises, and to make such other modifications as are set forth in "III. MODIFICATIONS" next below.

III.     **MODIFICATIONS.**

      A.  <u>Basic Lease Provisions</u>. The Basic Lease Provisions are hereby amended as follows:

          1.    Item 5 is hereby amended by adding the following:

             "<u>Lease Term as to the 340 Commerce Premises</u>: The Term of this Lease as to the 340 Commerce Premises shall expire at midnight on March 31, 2005"

          2.    Item 6 is hereby amended by adding the following:

             "Commencing February 1, 2005, the Basic Rent for the 340 Commerce Premises shall be One Hundred Twenty Thousand Sixty Dollars ($120,060.00) per month, based on $2.25 per rentable square foot."

          3.    Item 12 is hereby amended by deleting Landlord's address for payments and notices and substituted therefor shall be the following:

             "LANDLORD

             THE IRVINE COMPANY
             550 Newport Center Drive
             Newport Beach, CA 92660
             Attn: Senior Vice President, Operations
             Irvine Office Properties

             with a copy of notices to:

             THE IRVINE COMPANY
             550 Newport Center Drive
             Newport Beach, CA 92660
             Attn: Vice President, Operations
             Irvine Office Properties, Technology Portfolio"

IV. **GENERAL.**

   A. <u>Effect of Amendments</u>. The Lease shall remain in full force and effect except to the extent that it is modified by this Amendment.

   B. <u>Entire Agreement</u>. This Amendment embodies the entire understanding between Landlord and Tenant with respect to the modifications set forth in "III. MODIFICATIONS" above and can be changed only by a writing signed by Landlord and Tenant.

   C. <u>Counterparts</u>. If this Amendment is executed in counterparts, each is hereby declared to be an original; all, however, shall constitute but one and the same amendment. In any action or proceeding, any photographic, photostatic, or other copy of this Amendment may be introduced into evidence without foundation.

   D. <u>Defined Terms</u>. All words commencing with initial capital letters in this Amendment and defined in the Lease shall have the same meaning in this Amendment as in the Lease, unless they are otherwise defined in this Amendment.

   E. <u>Corporate and Partnership Authority</u>. If Tenant is a corporation or partnership, or is comprised of either or both of them, each individual executing this Amendment for the corporation or partnership represents that he or she is duly authorized to execute and deliver this Amendment on behalf of the corporation or partnership and that this Amendment is binding upon the corporation or partnership in accordance with its terms.

   F. <u>Attorneys' Fees</u>. The provisions of the Lease respecting payment of attorneys' fees shall also apply to this Amendment.

V. **EXECUTION.**

   Landlord and Tenant executed this Amendment on the date as set forth in "I. PARTIES AND DATE." above.

LANDLORD:

THE IRVINE COMPANY

By /s/ Steven M. Case
Steven M. Case, Senior Vice President
Leasing, Office Properties

By /s/ Danielle M. Sim
Danielle M. Sim
Senior Vice President, Operations

TENANT:

NEW CENTURY TRS HOLDINGS, INC.
a Delaware corporation

By /s/ Patrick J. Flanagan
Name __PATRICK J. FLANAGAN__
Title __PRESIDENT__

By /s/ Skylos Theoyida
Name __Skylos Theoyida__
Title __Corporate Secretary__

## EIGHTH AMENDMENT TO LEASE     ORIGINAL

### I. PARTIES AND DATE.

This Eighth Amendment to Lease (the "Amendment") dated March 22, 2005, is by and between THE IRVINE COMPANY ("Landlord"), and NEW CENTURY FINANCIAL CORPORATION., a Delaware corporation ("Tenant").

### II. RECITALS.

Landlord and Tenant have entered into an undated lease, which lease has been amended by: (i) a First Amendment to Lease dated May 1, 2000, (ii) by Second Amendment to Lease dated June 17, 2002, (iii) by a Third Amendment to Lease dated September 12, 2002, (iv) by a Fourth Amendment to Lease dated October 14, 2003 (the "Fourth Amendment"), (v) by a Fifth Amendment to Lease dated February 5, 2004, (vi) by a Sixth Amendment to Lease dated September 20, 2004, and (vii) by a Seventh Amendment to Lease dated October 1,2 2004 (said lease, as so amended, is hereinafter referred to as the "Lease").

Landlord and Tenant each desire to further modify the Lease to extend the Lease Term solely as to the leased Premises located at 340 Commerce, Irvine, California (the "340 Commerce Premises"), and to make such other modifications as are set forth in "III. MODIFICATIONS" next below.

### III. MODIFICATIONS.

A. <u>Basic Lease Provisions</u>. The Basic Lease Provisions are hereby amended as follows:

    1. Item 5 is hereby amended by adding the following:

"<u>Lease Term as to the 340 Commerce Premises</u>: The Term of this Lease as to the 340 Commerce Premises shall expire at midnight on May 31, 2005"

### IV. GENERAL.

A. <u>Effect of Amendments</u>. The Lease shall remain in full force and effect except to the extent that it is modified by this Amendment.

B. <u>Entire Agreement</u>. This Amendment embodies the entire understanding between Landlord and Tenant with respect to the modifications set forth in "III. MODIFICATIONS" above and can be changed only by a writing signed by Landlord and Tenant.

C. <u>Counterparts</u>. If this Amendment is executed in counterparts, each is hereby declared to be an original; all, however, shall constitute but one and the same amendment. In any action or proceeding, any photographic, photostatic, or other copy of this Amendment may be introduced into evidence without foundation.

D. <u>Defined Terms</u>. All words commencing with initial capital letters in this Amendment and defined in the Lease shall have the same meaning in this Amendment as in the Lease, unless they are otherwise defined in this Amendment.

E. <u>Corporate and Partnership Authority</u>. If Tenant is a corporation or partnership, or is comprised of either or both of them, each individual executing this Amendment for the corporation or partnership represents that he or she is duly authorized to execute and deliver this Amendment on behalf of the corporation or partnership and that this Amendment is binding upon the corporation or partnership in accordance with its terms.

F. <u>Attorneys' Fees</u>. The provisions of the Lease respecting payment of attorneys' fees shall also apply to this Amendment.

V. **EXECUTION.**

Landlord and Tenant executed this Amendment on the date as set forth in "I. PARTIES AND DATE." above.

LANDLORD:

THE IRVINE COMPANY

By _____
Steven M. Case, Senior Vice President
Leasing, Office Properties

By _____
Christopher J. Popma, Vice President
Operations, Office Properties

TENANT:

NEW CENTURY FINANCIAL CORPORATION,
a Delaware corporation

By _____
Name  Pat Flanagan
Title  Executive Vice President

By _____
Name  Jennifer Jewitt
Title  VP, Corporate Counsel &
       Asst. Secretary

# NINTH AMENDMENT TO LEASE

**ORIGINAL**

## I. PARTIES AND DATE.

This Ninth Amendment to Lease (the "Amendment") dated ~~March~~ *April 5*, 2005 is by and between THE IRVINE COMPANY ("Landlord"), and NEW CENTURY FINANCIAL CORPORATION, a Delaware corporation ("Tenant").

## II. RECITALS.

Landlord and Tenant have entered into an undated lease, which lease has been amended by: (i) a First Amendment to Lease dated May 1, 2000, (ii) by Second Amendment to Lease dated June 17, 2002, (iii) by a Third Amendment to Lease dated September 12, 2002, (iv) by a Fourth Amendment to Lease dated October 14, 2003, (v) by a Fifth Amendment to Lease dated February 5, 2004, (vi) by a Sixth Amendment to Lease dated September 20, 2004, (vii) by a Seventh Amendment to Lease dated October 12 2004, and (viii) by an Eighth Amendment to Lease dated March 22, 2005 (said lease, as so amended, is hereinafter referred to as the "Lease").

Landlord and Tenant now desire to further modify the Lease to conditionally extend the Term as to a portion of the 320 Commerce Premises and make such other modifications as are set forth in "III. MODIFICATIONS" next below.

## III. MODIFICATIONS.

A. <u>Reduction of 320 Commerce Premises</u>. Effective as of the April 1, 2005, the 320 Commerce Premises is reduced to the approximately 10,482 rentable square foot portion of the first floor of 320 Commerce outlined on Exhibit A attached to this Amendment ("Suite 150"). Tenant shall vacate the balance of the first floor of the 320 Commerce Building (such portion is hereinafter referred to as "Suite 100") prior to 12:00 midnight on March 31, 2005 (the "320 Commerce Expiration Date"). In the event Tenant fails to vacate Suite 100 prior to the 320 Commerce Expiration Date, Tenant shall be deemed to be occupying all of the 320 Commerce Premises on a holdover basis and the provisions of Section 15.1 of the Lease shall apply to such occupancy.

B. <u>Extension of Term as to Suite 150</u>. Provided Tenant complies with the terms and conditions of this Amendment, the term of the Lease for Suite 150 shall be extended to May 31, 2005. The period from April 1, 2005 through May 31, 2005 is referred to herein as the "320 Commerce Extension Period".

C. <u>Basic Rent</u>. Tenant's Basic Rent for the Suite 150 for 320 Commerce Extension Period shall be Sixteen Thousand Two Hundred Forty Seven Dollars ($16,247.00) per month. Tenant shall continue to pay Operating Expenses during the 320 Extension Period pursuant to the terms of the Lease.

D. <u>Interim Occupancy</u>. Provided Tenant has complied with its obligations under the Lease as amended, for the period from the 320 Commerce Expiration Date until 5:00pm on April 15, 2005, Tenant shall have the right to maintain its personal property, fixtures and equipment in the portion of Suite 100 identified with cross hatching on Exhibit A attached hereto (the "Equipment Room"). Tenant acknowledges that its continued use of the Equipment Room is an accommodation by Landlord and that Landlord shall incur increased construction costs as a result. Therefore, Tenant shall pay to Landlord concurrently with the execution of this Amendment the sum of Seven Thousand Dollars ($7,000.00) to compensate Landlord for additional construction costs. Tenant shall not receive any credit towards Basic or additional rent for such payment.

E. <u>Access for Tenant Improvements</u>. Tenant shall grant Landlord and its contractors full and complete access to the Equipment Room and Suite 150 when and as needed so that Landlord may construct tenant improvements in Suite 100. While Landlord agrees to employ

construction practices reasonably intended to minimize disruptions to the operation of Tenant's business in the Suite 150, Tenant acknowledges and agrees that some disruptions may occur during the course of construction. Tenant agrees to assume all risk of injury, loss or damage to Tenant, its business operations, personal property and/or equipment including without limitation telephone and computer equipment, resulting from the construction of tenant improvements by Landlord. Tenant shall pay for and cause Tenant's furniture and other equipment (including computers) to be moved as necessary so as to facilitate the tenant improvements work.

IV. **GENERAL.**

A. <u>Effect of Amendments</u>. The Lease shall remain in full force and effect except to the extent that it is modified by this Amendment.

B. <u>Entire Agreement</u>. This Amendment embodies the entire understanding between Landlord and Tenant with respect to the modifications set forth in "III. MODIFICATIONS" above and can be changed only by a writing signed by Landlord and Tenant.

C. <u>Counterparts</u>. If this Amendment is executed in counterparts, each is hereby declared to be an original; all, however, shall constitute but one and the same amendment. In any action or proceeding, any photographic, photostatic, or other copy of this Amendment may be introduced into evidence without foundation.

D. <u>Defined Terms</u>. All words commencing with initial capital letters in this Amendment and defined in the Lease shall have the same meaning in this Amendment as in the Lease, unless they are otherwise defined in this Amendment.

E. <u>Corporate Authority</u>. Each individual executing this Amendment in his or her capacity as a corporate officer represents that he or she is duly authorized to execute and deliver this Amendment on behalf of such corporation and that this Amendment is binding upon such corporation in accordance with its terms.

F. <u>Attorneys' Fees</u>. The provisions of the Lease respecting payment of attorneys' fees shall also apply to this Amendment.

V. **EXECUTION.**

Landlord and Tenant executed this Amendment on the date as set forth in "I. PARTIES AND DATE." above.

LANDLORD:

THE IRVINE COMPANY, INC.,
a Delaware corporation

By: _____
Steven E. Case, Senior Vice President
Leasing, Office Properties

By: _____
Christopher J. Popma, Vice President
Operations, Office Properties

TENANT:

NEW CENTURY FINANCIAL CORPORATION,
a Delaware corporation

By: _____
Name: Kevin Cloyd
Its: EVP

By: _____
Name: Jennifer Jewett
Its: VP, Corp Counsel and Asst. Secretary

C:\DATA\NEW CENTURY\9TH LEASE AMENDMENT 02.DOC
March 30, 2005

2

#  THE IRVINE COMPANY

## 320 Commerce



Stevenson Systems, Inc.
©1985-2004 All Rights Reserved

## TENTH AMENDMENT TO LEASE

I. **PARTIES AND DATE.**

This Tenth Amendment to Lease (the "Amendment") dated _May 23_, 2005, is by and between THE IRVINE COMPANY ("Landlord"), and NEW CENTURY FINANCIAL CORPORATION, a Delaware corporation ("Tenant").

II. **RECITALS.**

Landlord and Tenant have entered into an undated lease, which lease has been amended by: (i) a First Amendment to Lease dated May 1, 2000, (ii) by a Second Amendment to Lease dated June 17, 2002, (iii) by a Third Amendment to Lease dated September 12, 2002, (iv) by a Fourth Amendment to Lease dated October 14, 2003, (v) by a Fifth Amendment to Lease dated February 5, 2004, (vi) by a Sixth Amendment to Lease dated September 20, 2004, (vii) by a Seventh Amendment to Lease dated October 12, 2004, (viii) by an Eighth Amendment to Lease dated March 22, 2005, and (ix) by a Ninth Amendment to Lease dated April 5, 2005 (said lease, as so amended, is hereinafter referred to as the "Lease").

Landlord and Tenant each desire to further modify the Lease to extend the Term as to a portion of the Premises and to make such other modifications as are set forth in "III. MODIFICATIONS" next below.

III. **MODIFICATIONS.**

A. <u>Premises</u>. Effective November 1, 2005, the "Premises" shall consist of the approximately 26,680 rentable square foot portion of the first floor of the building located at 350 Commerce, Irvine, CA (the "350 Commerce Building"), which portion of the first floor is more particularly described as <u>EXHIBIT A</u> attached to this Amendment ("Suite 100"). Tenant shall surrender possession of the balance of the 350 Commerce Building not later than midnight on October 31, 2005 in the condition provided in Section 15.3 of the Lease. Tenant shall remove all of its cabling from the risers in each of the Buildings on or prior to the expiration of the Lease as to such Building.

B. <u>Extension of Term</u>. The Term of the Lease as to Suite 100 only shall be extended to May 31, 2009.

C. <u>Basic Rent</u>. Effective November 1, 2005, Tenant's Basic Rent shall be as follows:

Commencing November 1, 2005, the Basic Rent for Suite 100 shall be Forty Four Thousand Twenty-Two Dollars ($44,022.00) per month, based on $1.65 per rentable square foot.

Commencing November 1, 2006, the Basic Rent for Suite 100 shall be Forty Five Thousand Three Hundred Fifty-Six Dollars ($45,356.00) per month, based on $1.70 per rentable square foot.

Commencing November 1, 2007, the Basic Rent for Suite 100 shall be Forty Six Thousand Six Hundred Ninety Dollars ($46,690.00) per month, based on $1.75 per rentable square foot.

Commencing November 1, 2008, the Basic Rent for Suite 100 shall be Forty Eight Thousand Twenty-Four Dollars ($48,024.00) per month, based on $1.80 per rentable square foot."

D. <u>Security Deposit</u>. Effective as of November 1, 2005, Landlord shall not require Tenant to provide a security deposit under the Lease. Landlord shall return to Tenant any amounts currently being held by Landlord as security under the Lease in the form of a credit(s)

against Basic Rent next coming due against this Lease.

E. Parking. Effective November 1, 2005, Tenant shall be entitled to utilize not more than Ninety-Six (96) vehicle unreserved and unassigned parking spaces.

F. Right to Extend the Lease.

(a) Provided that no Event of Default has occurred under any provision of the Lease, either at the time of exercise of the extension right granted herein or at the time of the commencement of such extension, and provided further that Tenant or an "Affiliate (as defined in Section 9.4 of the Lease) is occupying the entire Premises and has not assigned or sublet any of its interest in the Lease (other than to an Affiliate), then Tenant may extend the Term of the Lease for one (1) period of thirty-six (36) months. Tenant shall exercise its right to extend the Term by and only by delivering to Landlord, not less than nine (9) months or more than twelve (12) months prior to the expiration date of the Term, Tenant's irrevocable written notice of its commitment to extend (the "Commitment Notice"). The Basic Rent payable under the Lease during any extension of the Term shall be determined as provided in the following provisions.

If Landlord and Tenant have not by then been able to agree upon the Basic Rent for the extension of the Term, then within one hundred twenty (120) and ninety (90) days prior to the expiration date of the Term, Landlord shall notify Tenant in writing of the Basic Rent that would reflect the prevailing market rental rate for a 36-month renewal of comparable space in the Project (together with any increases thereof during the extension period) as of the commencement of the extension period ("Landlord's Determination"). Should Tenant disagree with the Landlord's Determination, then Tenant shall, not later than twenty (20) days thereafter, notify Landlord in writing of Tenant's determination of those rental terms ("Tenant's Determination"). Within ten (10) days following delivery of the Tenant's Determination, the parties shall attempt to agree on an appraiser to determine the fair market rental. If the parties are unable to agree in that time, then each party shall designate an appraiser within ten (10) days thereafter. Should either party fail to so designate an appraiser within that time, then the appraiser designated by the other party shall determine the fair market rental. Should each of the parties timely designate an appraiser, then the two appraisers so designated shall appoint a third appraiser who shall, acting alone, determine the fair market rental for the Premises. Any appraiser designated hereunder shall have an MAI certification with not less than five (5) years experience in the valuation of commercial industrial buildings in the vicinity of the Project.

Within thirty (30) days following the selection of the appraiser and such appraiser's receipt of the Landlord's Determination and the Tenant's Determination, the appraiser shall determine whether the rental rate determined by Landlord or by Tenant more accurately reflects the fair market rental rate for the 36-month renewal of the Lease for the Premises, as reasonably extrapolated to the commencement of the extension period. Accordingly, either the Landlord's Determination or the Tenant's Determination shall be selected by the appraiser as the fair market rental rate for the extension period. In making such determination, the appraiser shall consider rental comparables for the Project (provided that if there are an insufficient number of comparables within the project, the appraiser shall consider rental comparables for similarly improved space within the vicinity of the Project with appropriate adjustment for location and quality of project), but the appraiser shall not attribute any factor for market tenant improvement allowances or brokerage commissions in making its determination of the fair market rental rate. At any time before the decision of the appraiser is rendered, either party may, by written notice to the other party, accept the rental terms submitted by the other party, in which event such terms shall be deemed adopted as the agreed fair market rental. The fees of the appraiser(s) shall be borne entirely by the party whose determination of the fair market rental rate was not accepted by the appraiser.

(b) Notwithstanding the provisions of Subsection (a) above, if at any time during the period between fifteen (15) and twelve (12) months prior to expiration date of the Term (but prior to the delivery of a Commitment Notice), Tenant may request from Landlord a rental quote upon which Landlord is willing to lease the Premises for the extension term to Tenant (an "Extension Term Rental Offer"). Tenant shall have the right for a period of ten (10) business

days after receipt of the Extension Term Rental Offer to accept that offer by written notice to Landlord which notice would constitute Tenant's exercise of its right to extend the Term upon the terms and conditions of this Lease but at the rental rate set forth in the Extension Term Rental Offer. If Tenant fails to request an Extension Term Rental Offer or fails to accept the Extension Term Rental Offer within ten (10) business days after receipt thereof, Tenant shall have no further rights under this Subsection (b) and provisions of Subsection (a) above shall govern the determination of fair market rental for the extension Term if Tenant elects to extend the Term in accordance with the provisions of this Section III.F.

(c)  In the event Tenant elects to extend this Lease pursuant to either Subsections (a) or (b) above, then within twenty (20) days after the determination of the fair market rental, Landlord shall prepare an appropriate amendment to this Lease for the extension period, and Tenant shall execute and return same to Landlord within twenty (20) days after Tenant's receipt of same. Should the fair market rental not be established by the commencement of the extension period, then Tenant shall continue paying rent at the rate in effect during the last month of the initial Term, and a lump sum adjustment shall be made promptly upon the determination of such new rental.

If Tenant fails to timely exercise the extension right granted herein within the time period expressly set forth for exercise by Tenant in the initial paragraph of this Section III.F, Tenant's right to extend the Term shall be extinguished and the Lease shall automatically terminate as of the expiration date of the Term, without any extension and without any liability to Landlord. Any attempt to assign or transfer any right or interest created by this Section III.F (other than an Affiliate) shall be void from its inception. Tenant shall have no other right to extend the Term beyond the single thirty-six (36) month extension period created by this Section III.F. Unless agreed to in a writing signed by Landlord and Tenant, any extension of the Term, whether created by an amendment to this Lease or by a holdover of the Premises by Tenant, or otherwise, shall be deemed a part of, and not in addition to, any duly exercised extension period permitted by this Section III.F.

G. Signage.  Effective November 1, 2005, Section 5.2 of the Lease is hereby deleted in its entirety and substituted therefor shall be the following:

> "SECTION 5.2.  SIGNS. Provided Tenant continues to occupy the entire Premises, Tenant shall have the non-exclusive right to one (1) exterior eye brow sign on the 350 Commerce Building for Tenant's name and graphics in a location designated by Landlord, subject to Landlord's right of prior approval that such exterior signage is in compliance with the Signage Criteria (defined below). Landlord shall further provide Tenant with Landlord's standard suite and directory signage. Except as provided in the foregoing, Tenant shall have no right to maintain signs in any location in, on or about the Premises, the 350 Commerce Building or the Project and shall not place or erect any signs that are visible from the exterior of the 350 Commerce Building. The size, design, graphics, material, style, color and other physical aspects of any permitted sign shall be subject to Landlord's written determination, as determined solely by Landlord, prior to installation, that signage is in compliance with any covenants, conditions or restrictions encumbering the Premises and Landlord's signage program for the Project, as in effect from time to time and approved by the City in which the Premises are located ("Signage Criteria"). Prior to placing or erecting any such signs, Tenant shall obtain and deliver to Landlord a copy of any applicable municipal or other governmental permits and approvals and comply with any applicable insurance requirements for such signage. If requested by Tenant, Landlord shall reasonably cooperate with Tenant in obtaining the foregoing permits and approvals, but at no cost to Landlord. Tenant shall be responsible for the cost of any permitted sign, including the fabrication, installation, maintenance and removal thereof and the cost of any permits therefor. If Tenant fails to maintain its sign in good condition, or if Tenant fails to remove same upon termination of this Lease and repair and restore any damage caused by the sign or its removal, Landlord may do so at Tenant's expense. Landlord shall have the

right to temporarily remove any signs in connection with any repairs or maintenance in or upon the 350 Commerce Building. The term "sign" as used in this Section shall include all signs, designs, monuments, displays, advertising materials, logos, banners, projected images, pennants, decals, pictures, notices, lettering, numerals or graphics."

H. <u>Utilities and Services</u>. The following provisions are hereby added to the end of the initial paragraph of Section 6.1 of the Lease entitled "Utilities and Services":

"Tenant shall also pay to Landlord as an item of additional rent, within ten (10) days after receipt of Landlord's statement or invoice therefor, a reasonable charge (which shall be in addition to the electricity charge paid to the utility provider) for Tenant's "after hours" usage of each HVAC unit servicing the Premises. If the HVAC unit(s) servicing the Premises also serve other leased premises in the Building, "after hours" shall mean usage of said unit(s) before or after the hours of 6:00 A.M. to 6:00 P.M. on Mondays through Fridays, and for more than four (4) hours at any time during any weekend period (that is, from midnight on Friday through midnight on Sunday), subject to reasonable adjustment of said hours by Landlord. If the HVAC unit(s) serve only the Premises, "after hours" shall mean more than two hundred eighty-three (283) hours of usage during any month during the Term. "After hours" usage shall be determined based upon the operation of the applicable HVAC unit during each of the foregoing periods on a "non-cumulative" basis (that is, without regard to Tenant's usage or nonusage of other unit(s) serving the Premises, or of the applicable unit during other periods of the Term). Tenant acknowledges that the costs incurred by Landlord related to providing above-standard utilities to Tenant, including, without limitation, telephone lines, may be charged to Tenant."

I. <u>Generator</u>. Tenant shall have the right to install in a location designated by Landlord one (1) generator (the "Generator") in the Common Areas of the Project (subject to Landlord's approval as to location) to supply back-up electrical power to the Premises in the event of a reduction or interruption in the supply of normal electrical power to the Premises, and to install cables from the Generator pad to the mechanical room of the 350 Commerce Building. Tenant's rights to install the Generator shall be subject to the following additional terms and provisions: (a) the exercise of Tenant's rights under this Section shall be subject to Tenant's compliance, at its sole cost and expense, with all laws and acquisition of all approvals and permits required, from applicable governmental authorities; (b) the installation, maintenance, repair, monitoring and removal of the Generator shall be at Tenant's sole cost and expense; (c) any parking areas taken up by the Generator shall be counted towards the parking spaces allocated to Tenant pursuant to Section III.D above; (d) Tenant shall comply with any reasonable requirements imposed by Landlord in connection with the screening of the Generator and operational issues relating to the use of Hazardous Materials in connection therewith, and shall provide Landlord with evidence of such compliance in such form and at such times as Landlord reasonably requires; (e) Tenant shall maintain and repair the Generator and shall be responsible for all reporting, monitoring, clean up and remediation activities and costs pertaining to the Generator (including, without limitation, the obligations under Section 5.3 of the Lease respecting Hazardous Materials used, stored and/or released from the Generator); (f) Tenant shall remove the Generator and all supporting equipment and facilities installed by Tenant at the expiration or earlier termination of the Lease in accordance with the provisions of Section 15.3 of the Lease (and shall obtain a customary closure certificate, if required, from applicable governmental authorities in connection with such removal), and shall repair any damage to the 350 Commerce Building or Common Areas that occurs in connection with such removal; and (g) Tenant shall install an enclosure, reasonably acceptable to Landlord, for said Generator not later than December 31, 2005.

J. <u>Maintenance and Repair</u>. Sections 7.1 and 7.2 of the Lease are hereby amended to provide that Landlord's obligation to provide service, maintenance and repair to air conditioning, heating and ventilating equipment servicing the Premises shall not apply to supplemental HVAC system(s), if any, installed by Tenant and servicing only the Premises, and that Landlord shall maintain in good repair, as a "Project Cost," all Building exterior glass.

K. <u>Common Areas</u>. Not later than October 31, 2005, Tenant shall remove all of Tenant's personal property, fixtures, equipment and signage from the lobby of the 350 Commerce Building and the repair of all damage arising therefrom.

L. <u>Acceptance of Premises</u>. Tenant acknowledges that the lease of the Premises pursuant to this Amendment shall be on an "as-is" basis without further obligation on Landlord's part as to improvements whatsoever.

IV.   **GENERAL.**

A. <u>Effect of Amendments</u>. The Lease shall remain in full force and effect except to the extent that it is modified by this Amendment.

B. <u>Entire Agreement</u>. This Amendment embodies the entire understanding between Landlord and Tenant with respect to the modifications set forth in "III. MODIFICATIONS" above and can be changed only by a writing signed by Landlord and Tenant.

C. <u>Counterparts</u>. If this Amendment is executed in counterparts, each is hereby declared to be an original; all, however, shall constitute but one and the same amendment. In any action or proceeding, any photographic, photostatic, or other copy of this Amendment may be introduced into evidence without foundation.

D. <u>Defined Terms</u>. All words commencing with initial capital letters in this Amendment and defined in the Lease shall have the same meaning in this Amendment as in the Lease, unless they are otherwise defined in this Amendment.

E. <u>Corporate and Partnership Authority</u>. If Tenant is a corporation or partnership, or is comprised of either or both of them, each individual executing this Amendment for the corporation or partnership represents that he or she is duly authorized to execute and deliver this Amendment on behalf of the corporation or partnership and that this Amendment is binding upon the corporation or partnership in accordance with its terms.

F. <u>Attorneys' Fees</u>. The provisions of the Lease respecting payment of attorneys' fees shall also apply to this Amendment.

V.   **EXECUTION.**

Landlord and Tenant executed this Amendment on the date as set forth in "I. PARTIES AND DATE." above.

LANDLORD:

THE IRVINE COMPANY

By _____
Steven M. Case, Senior Vice President
Leasing, Office Properties

By _____
Christopher J. Popma, Vice President
Operations, Office Properties

TENANT:

NEW CENTURY FINANCIAL CORPORATION,
a Delaware corporation

By _____
Name   Pat Flanagan
Title   EVP

By _____
Name   Jennifer Jewett
Title   VP + Secretary



# THE IRVINE COMPANY

## 350 Commerce
## Suite 100



Exhibit A