UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
                                  .
IN RE:                            .        Chapter 11
                                  .
New Century TRS Holdings,         .
Inc., et al.,                     .
                                  .
        Debtor(s).                .     Bankruptcy #07-10416 (KJC)
.......................................................
```

Wilmington, DE
May 4, 2007
3:00 p.m.

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For The Debtor(s):              Suzzanne S. Uhland, Esq.
                                O'Melveny & Myers, LLP
                                275 Battery Street
                                San Francisco, CA 94111

                                Robert J. Stern, Jr., Esq.
                                Richards Layton & Finger, PA
                                One Rodney Square
                                Wilmington, DE 19801

                                Michael J. Merchant, Esq.
                                Richards Layton & Finger, PA
                                One Rodney Square
                                Wilmington, DE 19801

                                Marcos A. Ramos, Esq.
                                Richards Layton & Finger, PA
                                One Rodney Square
                                Wilmington, DE 19801

                                Mark D. Collins, Esq.
                                Richards Layton & Finger, PA
                                One Rodney Square
                                Wilmington, DE 19801

```
                                    Christopher M. Samis, Esq.
                                    Richards Layton & Finger, PA
                                    One Rodney Square
                                    Wilmington, DE 19801

For The Official Committee:         Mark Indelicato, Esq.
of Unsecured Creditors              Hahn & Hessen, LLP
                                    488 Madison Ave.
                                    New York, NY 10022

                                    Mark Power, Esq.
                                    Hahn & Hessen, LLP
                                    488 Madison Ave.
                                    New York, NY 10022

                                    Bonnie Glantz Fatell, Esq.
                                    Blank Rome, LLP
                                    One Logan Sq.
                                    130 N. 18th St.
                                    Philadelphia, PA 19103

For UBS:                            Keith W. Miller, Esq.
                                    Paul Hastings
                                    Park Ave. Tower
                                    75 E. 55th St-1st Fl.
                                    New York, NY 10022

                                    Richard Chesley, Esq.
                                    Paul Hastings
                                    191 N. Wacker Drive
                                    Chicago, IL 60606

                                    A. Brent Truitt, Esq.
                                    Hennigan Bennett & Dorman, LLP
                                    245 Park Ave.
                                    New York, NY 10167

For Deutsche Bank                   Andrew J. Gallo, Esq.
Structured Products                 Bingham McCutchen, LLP
                                    150 Federal Street
                                    Boston, MA 02110

For Bank of America:                Nicholas J. Cremona, Esq.
                                    Kaye Scholer, LLP
                                    425 Park Ave.
                                    New York, NY 10022
```

```
For Bingham McCutchen, LLP:      Tracey B. Pastan, Esq.
                                 Bingham McCutchen, LLP
                                 399 Park Ave.
                                 New York, NY 10022

For RBC:                         Rachel B. Mersky, Esq.
                                 Monzack & Monaco, PA
                                 1201 N. Orange Street
                                 Wilmington, DE 19899

For                              Eric M. Sutty, Esq.
                                 The Bayard Firm
                                 222 Delaware Ave.-Ste. 900
                                 Wilmington, DE 19899

For Kodiak Funding:              Matthew Botica, Esq.
                                 Winston & Strawn, LLP
                                 35 W. Wacker Drive
                                 Chicago, IL 60601

For Morgan Stanley Mortgage:     Daniel Butz, Esq.
                                 Morris Nichols Arsht
                                 & Tunnell, LLP
                                 Chase Manhattan Centre
                                 1201 N. Market Ste.
                                 Wilmington, DE 19899

For Safeco Financial:            Don Beskrone, Esq.
                                 Ashby & Geddes
                                 500 Delaware Ave.-8th Fl.
                                 Wilmington, DE 19899

For The U.S. Trustee:            Joseph McMahon, Esq.
                                 Office of the United States
                                 Trustee
                                 844 King St.-Ste. 2207
                                 Lockbox 35
                                 Wilmington, DE 19801

Audio Operator:                  Jason Smith

Transcribing Firm:               Writer's Cramp, Inc.
                                 6 Norton Rd.
                                 Monmouth Jct., NJ 08852
                                 732-329-0191
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1            THE COURT:  On the record Jason.

2            THE CLERK:  Yes, Sir.

3            THE COURT:  The Court is now in session.  This is

4   Judge Carey.  I have asked counsel to make themselves available

5   for this telephone conference to address two pleadings that

6   were filed today; first was the Motion of the United States

7   Trustee -- well, three pleadings -- of the United States

8   Trustee to Continue the Debtor's Motion for Sale-Related

9   Incentive Pay and other matters and the Motion to Limit and

10  Shorten Notice in connection therewith, as well as the

11  Expedited Motion of UBS for an Extension of Time to File the

12  Supplemental Memorandum of Law, along with the accompanying

13  documents.  Let's address, first, the U.S. Trustee's motion.

14           MR. MCMAHON:  Your Honor, good afternoon.  Joseph

15  McMahon for the United States Trustee.  I apologize, I was

16  disconnected from the call and had to hop back on.  Your Honor,

17  the U.S. Trustee's motion, filed yesterday evening, requests

18  that the Court continue the hearing on the Incentive Retention

19  Compensation Motion pending the hearing on the United States

20  Trustee's Motion to Appoint a Chapter 11 Trustee or Examiner.

21      Your Honor, to give you some background, some of which is

22  in the motion, the initial motion, the Incentive Retention Pay

23  Motion, was filed on April 11th, 2007.  And we subsequently

24  filed our Motion for Appointment of a Chapter 11 Trustee on the

25  17th, about a week later.  Your Honor, on last Thursday

1  evening, I believe it was on April 26th, we were advised by

2  Debtor's counsel that they were in the process of restructuring

3  the compensation plans that were the subject of the Incentive

4  Retention Motion, and we were given a extension of the

5  objection deadline, from the Debtor's standpoint, to review and

6  object to those plans pending their filing.  The restructure

7  plans were filed on May 1st, and they reflected a fairly

8  substantial restructuring of the proposed Incentive Retention

9  Plans.  Some people were shifted from one plan to the other.

10 Certain persons were added to the plans.

11      Your Honor, with respect to the request that we've made,

12 we believe that in light of our review of the plan as

13 restructured that it would be fitting for the relief that's

14 requested in the motion to be tabled pending the consideration

15 of the Trustee Examiner Motion.

16      THE COURT:  And that's scheduled for hearing on May

17 15th at 1:30?

18      MR. MCMAHON:  That is correct.  Such that the hearing

19 on the Trustee Examiner could go forward, and Your Honor, the

20 reason why we believe it would be appropriate is as follows.

21 Our Trustee Examiner Motion relays -- does raise issues with

22 respect to the fitness of current management to be leading the

23 Chapter 11 cases going forward and, in the alternative, seeks

24 an independent person to look at issues relating to certainly

25 the accounting and financial statement irregularities which

1  occurred pre-petition.  And also, it contemplates potentially a

2  broader focus for the examination.

3      Your Honor, certainly one of the things that we believe

4  that either a Chapter 11 Trustee or an Examiner will be doing

5  or should be doing, if and when appointed, is to review the

6  necessity and the propriety of awarding the bonuses that have

7  been requested, certainly looking at the benchmarks for payment

8  of what the bonuses that have been proposed and other issues

9  specific to the plans.  And in light of -- and other attendant

10 issues.  And, Your Honor, we believe that that review is

11 entirely appropriate, given the -- especially in the case of a

12 Chapter 11 Trustee would have control of the operations of the

13 Debtors.  And it would be an appropriate role for an Examiner

14 to play in light of the allegations that have been raised with

15 respect to the pre-petition accounting and financial statement

16 irregularities.

17     Your Honor, there have been some other developments in the

18 case which certainly factor into the U.S. Trustee's concerns

19 with respect to the plans and the timing of this Court's

20 consideration of it.  Your Honor, the Debtors have failed to

21 receive what we call a qualifying bid to sell the wholesale

22 origination platform as a going concern and have publically

23 announced that they will be conducting another RIF or reduction

24 in force of a substantial number of employees; that is, they

25 have laid off a substantial number of employees since the

1    petition date, and in light of the -- both the pre-petition

2    irregularities and the continuing reductions in force which the

3    Debtors are implementing, we believe that the, you know, the

4    integrity of the process and the system at this point demands

5    that these bonus plans like the ones that are proposed get the

6    review of an independent fiduciary or an independent examiner,

7    to the extent that this Court is inclined to grant that relief

8    on the 15th

9         THE COURT:  Thank you.  Does anyone else care to be

10   heard?

11        MS. UHLAND:  Yes, this is Suzzanne Uhland from

12   O'Melveny & Myers for the company, for New Century.  Well, you

13   know, just for many of the reasons that were just -- or the

14   facts and circumstances that have just been explained by the

15   U.S. Trustee, that is, you know, the very reason we cannot

16   afford to delay this matter.

17        First, Your Honor, the, you know, the original plan had

18   been -- you know, the concepts of the plan was set on regular

19   notice by the time we set it for hearing on the 7th, and the

20   Debtors have been working very hard, have been in dialog with

21   the Creditors Committee, and have been working to take into

22   account the prior rulings in this case and the prior concerns

23   addressed by the United States Trustee to create a very

24   deliberate process to restructure their plans to gain the

25   support of the Creditors Committee and to avoid disputes of

1   the United States Trustee with respect to the scope of 503.

2       What we filed, it did take a deliberate process, and when

3   we were still engaged with Creditors Committee in these

4   discussions, but determined on Monday or on Tuesday to file the

5   plans that we had to the extent that we had restructured them.

6   And then further, since Tuesday, we've continued to work with

7   Creditors Committee to make further economic -- selected

8   economic reductions in the plan, and actually further

9   responding to some of the issues raised by the Trustee.  So

10  that we are now at a point, as of this morning, we have reached

11  agreement with the Committee on the terms in accordance with

12  the structure set out in the amendment, again with some changes

13  further reducing the economics with benefit of the estate.

14      The process that's lead to this point has been, you know,

15  a healthy dialog and debate, with the Committee pressing the

16  Debtor on the business need for these plans.  But more

17  importantly, these plans, like all these retention plans, lose

18  their effectiveness every day that they're not approved.  The

19  massive downsizing did occur, or is occurring.  You know, 2,000

20  employees were being RIF'd and this is just going to make -- I

21  guess I don't understand how that weighs into delaying these

22  plans because now these key people that are necessary to

23  completing the other transactions and maximizing the value of

24  the unsold loan platform technology and other assets are at

25  greater risk in light of the massive disruption that occurred

1  when we, as we had committed to the Creditors we would, engaged

2  in a major downsizing to reduce operating costs when we did not

3  receive a timely platform bid.

4      So the Debtors have been, you know, engaging and managing

5  this process as we are responsive to the Creditors' concern

6  and, frankly, responsive to their own known duties to maximize

7  value, reduce cost.  And they've been working hard, not only

8  with an independent compensation consultant, but with Alex

9  Partners, who's had a major role as a sort of an independent

10  advisor helping structure these plans and access the personnel

11  needs to accomplish the remaining substantial tasks ahead of

12  them, again, at a very difficult situation in light of the, you

13  know, first the initial reduction in force, but this very

14  substantial reduction of force that is being processed right

15  now.

16      Accordingly, Your Honor, we, with the Creditors Committee,

17  having reached our agreement with the Creditor's Committee --

18  they can address you on their concurrence on the absolute

19  business need to, you know -- for the plans and for the plans,

20  you know, the lessening of the efficacy of these plans with

21  every day of delay.  So we believe that the changes to the

22  plans do -- certainly do not warrant a continuation of the

23  hearing, and we cannot withstand a business, you know, on the

24  business basis, the further continuance.

25      With respect to the Trustee Motion, you know, that -- you

1  know, if the proposal is to ask these individuals to wait

2  around, not only 'til the 15th, but until a Trustee is

3  appointed, would have an opportunity to go back and review the

4  essentially, you know, what the Alex Partners professionals

5  have already reviewed in business judgment, what the Creditors

6  Committee has already reviewed as the business judgment, you

7  know, that is in effect denying the plans and truly

8  jeopardizing this process because that now creates, you know,

9  such an uncertain future for these individuals who we've been

10  able to retain most of them to date.  We're not retaining

11  everybody even that we've already promised an incentive and

12  retention payment to just because of the difficulty of this

13  case.  But that would be a very negative -- you know, have a

14  very negative impact on the goals of the Debtor and the

15  Committee and the -- you know, to reach -- to maximize the

16  values and retain these employees to do so.

17          THE COURT:  Thank you.  Does anyone else care to be

18  heard?

19          MR. INDELICATO:  Yes, Your Honor.  This is Mark

20  Indelicato from Hahn & Hessen on behalf of the Committee.

21      Your Honor, I would echo many of the comments made by

22  Debtor's counsel.  The Court -- and I did not expect or intend

23  to argue the merits of the motion, but I think the Court needs

24  to understand a little bit of the flavor of how this motion

25  started and where it's ending up.

1    This was a motion, Your Honor, that was filed in which

2    they sought payments in excess of $7 million to a variety of

3    their employees.  The Committee initially told the Debtors that

4    they had significant problems with that.  We've worked with

5    them and gotten it to the point where they've filed an amended

6    one, which was still, in the Committee's mind, too rich.  We

7    went back with them and we negotiated further, and we've got

8    significant additional reductions, which we can go through with

9    the Court on Monday at the appropriate hearing.

10    To lead this Court to believe that there's no independent

11    fiduciary who's watching over this estate for the benefit of

12    Creditors, I won't say I take offense to it, but I believe it's

13    a misnomer.  The Committee has been actively involved in every

14    step of this case and has clearly been watching out for the

15    benefit of Creditors, and they are fiduciaries and they have

16    been acting responsibly.

17    With respect to the U.S. Trustee's motion, Your Honor, one

18    of the things that has concerned the Creditors Committee is the

19    fact that, as Debtor's counsel stated, every day that we wait

20    more people are leaving.  We are approaching the sale of what

21    may be the most significant asset of this estate, the servicing

22    platform, and in fact, a lot of potential bidders have

23    expressed concern to us that a lot of the employees are

24    leaving, which is one of the reasons we put this incentive plan

25    in place so that we make sure that the employees are around and

1  we can establish our conditions under the Carrington

2  transaction.

3      Your Honor, this transaction -- the -- at least having the

4  motion heard on Monday is important for the very reasons Mr.

5  McMahon doesn't want to have it heard.  As he pointed out,

6  2,000 employees were RIF'd yesterday and that was in

7  consultation with the Creditors Committee.  We had put some

8  very strict guidelines in place with the Debtor to ensure that

9  if there was anybody out there to purchase the origination

10 platform that it would be a real bid and that we would not be

11 wasting estate's assets.  We have made a determination with the

12 Debtor that, in fact, there were no realistic bids, and

13 unfortunately, those employees had to be terminated.  But that

14 only, you know, exemplifies why this motion needs to be heard

15 sooner than later.  Because if we delay it any longer, I'm

16 fearful that more people will leave, and it could affect the

17 value of the remaining assets.

18     The Committee's position here is -- well, you know, very

19 one sided, Your Honor.  We want to maximize the value of these

20 estates and these assets.  We can fight about a lot of the

21 other stuff later, but right now we got sales on the horizon,

22 we need the employees to get it done.  We think the U.S.

23 Trustee's Motion to Adjourn the Hearing should be denied.  Let

24 us go forward with the motion and the offer of proof on Monday.

25 I think the Court will understand why this is needed.  They

1  will understand the role the Committee has played in skinning

2  down this plan and that the benefits the estates will receive

3  in going forward.  So for those reasons, Your Honor, we believe

4  we should have this hearing on Monday.

5      With respect to the U.S. Trustee's motion and how the two

6  play into this, I don't think that is appropriate.  As I said,

7  I believe as fiduciaries we have done our job and represented

8  the interests of Creditors in this estate, and the U.S.

9  Trustee's motion will be dealt with in, you know, in an

10  appropriate manner.

11          MR. MCMAHON:  Your Honor, may I respond?

12          THE COURT:  Well, let me just ask if anyone else cares

13  to be heard.

14          ALL:  (No verbal response).

15          THE COURT:  All right, go ahead.

16          MR. MCMAHON:  Your Honor, briefly.  First, one of the

17  arguments said by both the Debtors and the Committee is the

18  negative impact that it will have on the Debtor's employees.

19  Well, there are three key sales that are -- have been the

20  subject of proceedings before this Court in the past month.

21  The wholesale origination sale is off to the side for now.  The

22  LONFA residual sale, which an auction was held on this week and

23  there will be a sale hearing next week, Your Honor, that -- the

24  need to have employees around to sell those or, you know,

25  whatever employee expectations were with respect to the plan

1    are now effectively by the wayside, meaning that those sales

2    have concluded.  There would be absolutely no prejudice in

3    pushing the hearing on this motion off pending a hearing on the

4    Trustee Examiner Motion with respect to the employees involved

5    in assisting in that sale.

6         With respect to the servicing, Your Honor, the promise of

7    those employees having a job when this process is gone is the

8    important consideration here because they are effectively

9    making a decision whether to stay or go based upon that and not

10   based upon whether or not they're getting a bonus.  The effect

11   of the relief that the U.S. Trustee is requesting would have no

12   less a deterrent or, say, a negative effect upon the employees

13   than good faith negotiations between the Committee and the

14   Debtors over the relief that's been requested.  If the plans

15   started at X and have effectively been reduced significantly,

16   meaning the compensation proposed under it, then certainly

17   whatever expectations that certain employees had with respect

18   to the plan as was initially filed have already been

19   frustrated.  And I'm not saying that that necessarily, Your

20   Honor, that that result, you know, with respect to those plans

21   where we're at now means that it's not a consideration for the

22   servicing employees.  I would submit, Your Honor, that it's not

23   the primary concern.  It couldn't be because the relief that

24   the U.S. Trustee is requesting on this teleconference is no

25   different than the effect that the good faith negotiations that

1  the Committee's having with the Debtors would have on the

2  process.

3      With respect to the independence of the corporate

4  consultant and Alex Partners, the independent compensation

5  consultant answers to the Board.  In fact, it's been retained

6  to provide consulting services to the Board, and Alex Partners

7  is -- the retention is proposed, the 363 retention, where an

8  Alex Partner's person would be serving as an officer with

9  certain support staff.  They are not independent in the sense

10  that they do not ultimately answer or consult with the Debtors-

11  in-Possession.

12      And Your Honor, with respect to the independent fiduciary

13  argument, our point was not to suggest that the Committee does

14  not have a role to play in the process or that the Committee is

15  not independent certainly.  But the critical thing to remember

16  is that the Debtors are the entities that are coming forward

17  with the request for relief.  They're the ones that are seeking

18  to pay the bonuses.  This motion was not proposed by the

19  Committee, and the issue is we're talking about review of an

20  action of the Debtor-in-Possession.  And that's an important

21  distinction to make when we're talking about what is being

22  proposed here.

23      So for all of the reasons which I initially described,

24  Your Honor, and certainly in this reply, we urge the Court to

25  continue the hearing pending consideration of a Trustee

1  Examiner Motion.

2       THE COURT:  All right.  Mr. McMahon, what I'm going to

3  do is schedule the hearing, the U.S. Trustee's Motion --

4  hearing on the U.S. Trustee's Motion to Continue the Hearing on

5  the Debtor's motion and schedule it for hearing on Monday.  And

6  here's what I envision.  Both sides, I think, make arguments

7  that have merit.  So let me see what record is developed in

8  support of the Debtor's motion on Monday.  Let me see what

9  opportunity the U.S. Trustee either has or hasn't had to review

10  the latest iteration of that to which the Committee and the

11  Debtor and perhaps others have agreed and then make a decision

12  about whether to consider granting substantive relief or

13  whether it should be delayed further.

14      Look, the case came in with warts that we've talked about

15  before, so I think the U.S. Trustee is right to say, "Wait a

16  minute, you know, these things need to be looked at."  On the

17  other hand, I agree with the Committee and the Debtor that the

18  most immediate concern is that in a business that is and has

19  from the beginning said it intends to liquidate, making sure

20  that whatever is left in the way of value be maximized.  And I

21  don't think until I see or hear the record -- and I think we

22  need to do something more than just a proffer, on this motion

23  in any event -- I'm not going to know which way to go, whether

24  to decide on the merits or whether to postpone for the reasons

25  that the U.S. Trustee has argued, or perhaps for other reasons.

1  So I'm going to sign the order scheduling the U.S. Trustee's

2  Motion to Continue the Hearing for Monday at 10 o'clock.  Are

3  there any questions?

4          MS. UHLAND:  No, Your Honor.  Thank you.

5          THE COURT:  All right.  Let's turn to the second

6  matter, and that is UBS' Motion for Extension of Time to File

7  Supplemental Memorandum, et cetera.  I'll hear from UBS.

8          MR. MILLER:  Your Honor, this is Keith Miller from

9  Paul Hastings.  With me is Richard Chesley.  Your Honor, we --

10 by way of background, on May 5th UBS filed a complaint and a

11 Motion Seeking a Temporary Restraining Order.  Prior to the

12 hearing on April 12th, the Debtors -- the Defendant Debtors,

13 along with UBS, entered into an agreement to adjourn the TRO

14 Motion at that time.  At the April 12th hearing, we put on --

15 into the record the terms of that agreement.  Namely they were

16 that the Debtors would provide UBS with two reconciliations;

17 one being a reconciliation of payments that they had received

18 for UBS loans during the month of March, and the other a

19 reconciliation with respect to payments that they received from

20 April 2nd through April 12th, the date of the hearing.  And

21 further, they agreed that to the extent there was these

22 reconciliations showed that payments were made on behalf of

23 UBS' loans, they would -- and they were not transferred to UBS,

24 that they would transfer those funds within -- shortly

25 thereafter, within 1 or 2 business days.

1     We did receive two reconciliations from the Debtors; one

2   what we claim to be post-petition, one is pre-petition.  The

3   way we look at it is the pre-petition would be the March

4   reconciliation.  The post-petition is the reconciliation

5   between April 1st and April 12th.  In reviewing the pre-

6   petition reconciliation, we quickly noticed that not all of the

7   loans that were supposed to be on that reconciliation were

8   accounted for.  Specifically -- and we were able to determine

9   this in a half a day.  Specifically, the reconciliation was

10  missing over 1,000 loans that we knew, based on the trial

11  balance that was provided to the new servicer, Countrywide,

12  that the Debtors had received payment on.  We quickly tried to

13  speak to the Debtor and tried to get a better understanding of

14  why these loans were not on a reconciliation.  Unfortunately,

15  because I think of a number of scheduling problems, we were not

16  able to have that conversation until yesterday afternoon.

17     During yesterday late afternoon, we heard for the first

18  time that the reason the loans were not on the reconciliation

19  is because I think the position the Debtors are now taking for

20  the first time that these funds were co-mingled.  And

21  therefore, since they were co-mingled, their position is that

22  they're not necessarily UBS' property any longer.  We obviously

23  have a difference of opinion on that.  The fact -- the mere

24  fact that the Debtor co-mingled the funds doesn't destroy the

25  aspect that -- of the trust that was clearly, expressly

1  provided for in the Repurchase Agreement and the other

2  documents.

3      So unfortunately, we felt that there was a need to explain

4  the situation and explain what has been happening.  And

5  therefore, we filed these papers yesterday for Your Honor's

6  consideration.

7          THE COURT:  Let me hear from the Debtor.

8          MR. TRUITT:  Yes, Your Honor, this is Brent Truitt of

9  Hennigan, Bennett & Dorman for the Debtor Defendants.  First of

10  all, these supplemental filings came as a complete surprise to

11  us last night.  There was no effort to discuss them with us,

12  which is contemplated by Local District Rule 7.1.1., even

13  though we were in discussions with UBS yesterday afternoon.

14  What they filed was 20 or so pages of entirely new arguments

15  and allegations and testimony, including a new witness or

16  affiant that was not included in their original papers.

17      Now, these papers do require a response because we believe

18  they do not accurately describe either the process that has

19  taken place since the April 12th hearing or the results of the

20  reconciliation.  And we do need some time to gather the facts

21  from those who are actually involved in that process, which are

22  primarily the accounting people, and to respond in writing.

23  They even acknowledge in their motion that these -- that their

24  filings are not technically replies.  In fact, what they are --

25  they go beyond what is contemplated by reply deadlines that

1  they've already missed.  They call the sections in their brief

2  supplemental statement of facts and supplemental argument.

3  It's entirely new material that we're seeing for the first

4  time.

5       However, even if it were a reply, it would be untimely

6  under Local Rule 7071, which we believe does apply.  We are in

7  an adversary proceeding context.  And their order scheduling --

8  the expedited order scheduling a hearing on the TRO, which was

9  on consent, did not contemplate a reply.  They filed a Notice

10  of Completion of Briefing which did not include any reply or

11  any mention that one was forthcoming.

12       So Your Honor, what we ask for is a short adjournment of

13  Monday's hearing so that we be given an opportunity to respond

14  to the supplemental papers in writing, not just for us, but for

15  the Court to have time to review their papers, as well as any

16  response we might submit.  Absent that, an adjournment, we

17  would object to the filing of the untimely papers and ask that

18  they be stricken from the record.

19       THE COURT:  Well, let me ask this of the Debtor.

20  Assuming that I'd be inclined to push this hearing off to the

21  15th, what assurance could you give UBS that the -- just to be

22  plain about it -- the bad things that have happened won't be

23  worse by the 15th?

24       MR. TRUITT:  Well, first of all, Your Honor, I -- we

25  dispute that bad things have happened, and I think they would

1   agree that discussions are ongoing as late as yesterday.  We

2   will attempt to resolve any differences, but I cannot give

3   assurance that we will be successful.  But I can give them

4   assurances that we will continue in good faith to attempt to

5   resolve them.  Meanwhile, we would have enough time to

6   adequately respond to this latest filing.

7          THE COURT:  Well, let me ask the question another way.

8   UBS says, among other things, you have our money.  What

9   assurance can they have and could you give the Court that

10  between now and then, if in fact it is their money, it won't be

11  spent?

12         MR. TRUITT:  Well, I think, Your Honor, the affidavit

13  that we put in with our responsive papers answers that

14  question, which is there are adequate funds, if they do

15  establish that it is their money and they do establish,

16  notwithstanding any co-mingling, that they're entitled to it.

17  I think we -- the evidence that we have already submitted to

18  the Court shows that if at the time of the hearing that

19  determination is made, there will be adequate resources to pay

20  them.

21         THE COURT:  Does UBS have any reply briefly?

22         MR. MILLER:  Your Honor, I think under the

23  circumstances -- and we have asked the Debtors if they'd be

24  willing to do this, and that is under the circumstances to --

25  given the fact that there are a number of motions that are

1    pending regarding payment of bonuses, we are quite concerned

2    that money may not be there if this gets continued.  We've

3    asked the Debtors if they'd be willing to put in an escrow

4    account the approximately 3.2 million that we think is, at this

5    point in time, is missing, pending a resolution.  They have

6    told us that they would not do that.  I think under the

7    circumstances that that is something that the Court should

8    consider.

9           MR. TRUITT:  Well -- Your Honor, may I be heard?

10          THE COURT:  Go ahead.

11          MR. TRUITT:  Whether or not those discussions have

12   taken place, and I was not personally party to any such

13   discussion, that is a new request of the Court, which is not

14   properly before the Court, nor have we had time to adequately

15   respond to that.  So that's not a pending motion before the

16   Court, Your Honor.  Right now the only thing before the Court

17   is their request to file late some papers for a hearing that's

18   scheduled to take place on Monday morning.

19          THE COURT:  Well, which I am inclined to grant.  But

20   as a consequence to that, the Debtor has said, well, it's new

21   information and we want time to reply.  And that's a fair

22   request.  But I think what follows from that is the Court's

23   concern, and I'm sure UBS', that it's not prejudiced in any

24   way, given the volatility of the situation at the Debtor, you

25   know, in connection with the financial condition.  And I think

1  it's a fair concern.  So even if UBS had not raised it, the

2  Court would have.  So, I mean, there's the choice.  I guess

3  I'll leave it to the Debtor.  I mean, one way to approach it is

4  for me to grant the relief and that if the Debtor wants more

5  time to consider the new information, it needs to convince me

6  that UBS will not be harmed by the delay.  Now, whether that

7  means escrowing funds or something else, I won't say.  So

8  here's what I'm going to do.  I'll put the -- I am going to

9  grant the relief that's been requested, but at Monday's

10  hearing, if the Debtor provides, at least to the Court's

11  satisfaction or an arrangement with which UBS otherwise agrees,

12  that it won't suffer prejudice as a result of a delay, I'll put

13  the hearing over to the 15th or some future date if the parties

14  agree.

15       So here's what I'm going to do.  Okay, I'll sign the order

16  setting -- granting the relief that UBS has requested with

17  respect to filing the supplemental memorandum, but understand

18  it's without prejudice to the Debtor to press its request that

19  the hearing be further postponed because of the filing of the

20  new information.  If the Debtor wishes to file a reply, it's

21  free to do so, but from the Court's standpoint, it's not

22  presently necessary.  Are there any questions?

23            MR. TRUITT:  No, Your Honor.

24            THE COURT:  Okay.  Is there anything further for

25  today?

1          MR. MCMAHON:  No, Your Honor.

2          MR. TRUITT:  No.

3          THE COURT:  All right.  Counsel, thank you all for

4   making yourselves available on such short notice.  I appreciate

5   it.

6          UNIDENTIFIED SPEAKER:  Your Honor?  Thank you, Your

7   Honor.

8          THE COURT:  And I will see you Monday.  That concludes

9   this hearing.  Court is adjourned.

10       (Court adjourned)

11

12                       CERTIFICATION
13   I certify that the foregoing is a correct transcript from the
14   electronic sound recording of the proceedings in the above-
15   entitled matter.
16
17   *Lewis Parham*                          5/18/07
18   _____        _____
19   Signature of Transcriber                Date