# EXHIBIT C

APR-11-2005 08:18 AM   WELLS FARGO ITS SANDIEGO   858 522 6844         P.02

NEW CENTURY FINANCIAL CORPORATION
SUPPLEMENTAL BENEFIT
AND DEFERRED COMPENSATION TRUST AGREEMENT

THIS TRUST AGREEMENT is made and entered into as of January 1, 1999 by and between New Century Financial Corporation, a corporation organized and existing under the laws of the State of Delaware (the "Company"), and Wells Fargo Bank, N.A., a national banking association organized and existing under the laws of the United States (the "Trustee").

## WITNESSETH:

WHEREAS, the Company wishes to establish a trust agreement with the trustee, to be called the "Supplemental Benefit and Deferred Compensation Trust Agreement," for the purpose of providing a funding source for certain new benefit plans recently adopted and listed on Exhibit A attached hereto as of the date hereof or, as thereafter added prior to a Change of Control, as defined below, (hereinafter referred to collectively as the "Plans" and individually as a "Plan"), as designated by the Company's Chief Executive Officer, or the individual acting as the Chief Executive Officer, (the "CEO") or the Company's President (the "President"); and

WHEREAS, the Plans may provide benefits to employees, former employees or directors of other affiliates of the Company which the Company wishes to fund under the terms of the Trust Agreement; and

WHEREAS, the Company wishes to establish an irrevocable trust fund (the "Trust") with respect to designated participants in the Plans, though, prior to a Change of Control, the Trust may not necessarily hold sufficient assets to satisfy all of the benefits to be provided under the Plans;

WHEREAS, the Company also wishes to establish a separate account to provide a source for payment of any fees, including legal fees, incurred by the Trustee in the administration of the Trusts or by participants in enforcing their rights hereunder (the "Fee Account");

WHEREAS, the Company wishes to contribute to the Trust assets, either on the date hereof or as determined by the CEO or the President after the date hereof, that shall be held therein, to serve as a source of funds to assist the Company and its affiliates in meeting their respective liabilities under the Plans, subject to the claims of creditors in the event the Company becomes Insolvent, until paid to Plan participants and their beneficiaries in such manner and at such times as specified hereunder or in the Plans;

WHEREAS, contributions to the Trust shall be held by the Trustee and invested, reinvested and distributed in accordance with the provisions of this Trust Agreement;

WHEREAS, the Trust established by this Trust Agreement is intended to be a "grantor trust" with the result that the corpus and income of the Trust is treated as assets and income of the Company pursuant to Sections 671 through 679 of the Code.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Company and the Trustee, intending to be legally bound, adopt the Trust Agreement as of January 1, 1999, and declare and agree as follows:

**EXHIBIT C**

APR-11-2005 09:19 AM    WELLS FARGO ITS SANDIEGO    858 622 5844    P.03

## ARTICLE I

### ESTABLISHMENT

1.1    The Company hereby establishes with the Trustee a separate, and subject to Sections 4.2, 4.7, 13.2 and 16.2 hereof, irrevocable Trust on behalf of all of the participants in the Plan designated by the Company as of the date of this Trust Agreement or added hereafter by the CEO or the President from time to time (a "Participant"). The Company also hereby establishes with the Trustee the Fee Account. The Trust so established shall be governed by the terms of this Trust Agreement. The Trust is intended to be exempt from substantially all of the provisions of ERISA by reason of the provisions of Sections 201(2), 301(3) and 401(1) thereof, as applicable, and the Company shall immediately notify the Trustee should such exempt status change for any reason.

1.2    The Trust shall consist of such sums of money and other property, including insurance contracts, acceptable to the Trustee as is credited to the Trust as of the date hereof and as from time to time shall be paid or delivered to the Trustee by the Company immediately following the date hereof or from time to time in the future, as determined by the CEO or the President. Except as provided in Sections 4.2, 4.7, 13.2, and 16.2 hereof, the Trust shall be irrevocable for the Participants for which it is established and the Company shall have no right to direct the Trustee to return or divert any Trust assets before the payment of all benefits under the Plans to the Participant. All such money and other property, all investments and reinvestment made therewith or proceeds thereof and all earnings and profits (less losses) thereon, less all payments and charges as authorized herein, are hereinafter collectively referred to as the "Trust Fund." The Trust Fund shall be held by the Trustee and shall be dealt with in accordance with the provisions of this Trust Agreement as a single trust fund for purposes of investing the assets of the Trust. Prior to a Change of Control, the Company shall maintain, or cause its delegate to maintain, records sufficient to determine the interest of each Participant in the Trust Fund. In the event of a Change of Control, the Trustee shall maintain, or cause there to be maintained, sufficient records to satisfy the requirements of this Section.

1.3    The Company may contribute such sums of money or property, including insurance contracts, to the Trust Fund, from time to time, as it determines appropriate in its sole discretion. Participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust Fund. Any rights created under the Plans and this Trust Agreement shall be mere unsecured contractual rights of Participants and their beneficiaries against the Company and its affiliates, as applicable. Any assets held by the Trust Fund will be subject to the claims of the Company's general creditors under federal and state law in the event of Insolvency, as defined in Section 4.2 herein.

## ARTICLE II

### TRUSTEE ACCEPTANCE

2.1    The Trustee accepts the Trust established under this Trust Agreement on the terms and subject to the provisions set forth herein, and it agrees to discharge and perform fully and faithfully all of the duties and obligations imposed upon it under this Trust Agreement.

APR-11-2005 08:19 AM   WELLS FARGO ITS SANDIEGO   858 612 5844   P.04

## ARTICLE III

## PLANS AS PART OF TRUST AGREEMENT

3.1 The Plans are expressly incorporated herein and made a part hereof with the same force and effect as if fully set forth at length. Copies of each of the Plans shall be attached hereto as Exhibit B on or before any amounts are contributed hereunder by the Company to provide funding with respect to that Plan. All terms defined in the Plans shall have the same meanings when used herein unless expressly provided to the contrary herein. The Company will promptly deliver to the Trustee copies of all amendments and exhibits to the Plans and copies of any additional plans to be covered by this Agreement after the date first above written.

3.2 The terms of the Plans shall govern the amount, form and timing of benefit payments under the plans to which a Participant is entitled.

3.3 Subject to the provisions of Section 12.3 hereof, the incorporation of the Plans into this Trust shall not cause the Plans to become irrevocable under the provisions of Section 1.2 of this Trust Agreement.

3.4 The Trustee shall have no right or obligations with respect to any of the provisions of the Plans relating to the funding of benefits or the funding of the Fee Account.

## ARTICLE IV

## TRUST FUND

4.1 It is intended that the Trust constitute a grantor trust under Code Sections 671 through 679, with the assets of the Trust Fund being treated as assets of the Company for purposes of Federal, state and local income tax laws. The creation of the Trust Fund shall not cause any of the Plans to be treated as funded plans for purposes of Title I of ERISA.

4.2 The assets of the Trust Fund shall at all times be subject to the claims of the general creditors of the Company under Federal and state law. The Trustee shall suspend payments to each Participant from the Trust Fund if the Trustee receives timely written notification from the Company's Board of Directors (the "Board") and its CEO or President that the Company is Insolvent. It shall be the duty of the Board and the CEO or President to provide the Trustee with timely written notification of such events. Under any such circumstance, the Trustee shall suspend payments from the Trust Fund to the Participants and shall pay the assets held in the Trust Fund only as a court of competent jurisdiction shall direct to satisfy claims of general creditors of the Company. It is intended that the rights of the general creditors of the Company to enforce the provisions of this Article in the event of the Company's Insolvency be enforceable with respect to the Trust Fund at the time of Insolvency under both Federal and state law. It is also intended that no provision of this Trust Agreement shall in any way affect the Participants' rights as general creditors of the Company.

4.3 If a person claiming to be a creditor of the Company alleges in writing to the Trustee that the Company has become Insolvent, the Trustee shall determine whether the Company is Insolvent and, pending such determination, in accordance with Section 4.4, the Trustee shall discontinue payment of benefits to Participants or beneficiaries.

APR-11-2005 06:19 AM   WELLS FARGO ITS SANDIEGO   858 622 5844                    P.05

4.4 Unless the Trustee has actual knowledge of the Company's Insolvency, or has received notice from the Company or a person claiming to be a creditor alleging that the Company is Insolvent, the Trustee shall have no duty to inquire whether the Company is Insolvent. The Trustee may in all events rely on such evidence concerning the Company's Insolvency as may be furnished to the Trustee and that provides the Trustee with a reasonable basis for making a determination concerning the Company's Insolvency.

4.5 The Trustee shall resume the payment of benefits to the Participants or beneficiaries in accordance with Article VII of this Trust Agreement only after the Trustee has determined that the Company is not Insolvent (or is no longer Insolvent) based on such evidence as the Trustee determines to be sufficient for such purpose such as a report from the Company's independent auditors or certification to the Trustee from the CEO or President, if the Company is not subject to a bankruptcy proceeding, or if the Company is subject to a bankruptcy proceeding, an order from a court of competent jurisdiction.

4.6 Provided that there are sufficient assets, if the Trustee discontinues the payment of benefits from the Trust Fund pursuant to this Article and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to the Participants or beneficiaries under the terms of the Plans for the period of such discontinuance, less the aggregate amount of any payments made to the Participants or beneficiaries by the Company in lieu of the payments provided for hereunder during any such period of discontinuance.

4.7 Except as provided in this Section 4.7 and in Sections 4.2, 13.2, and 16.2, the Company shall have no right or power to direct the Trustee to pay to the Company or to divert to others any of the Trust assets before all payments of benefits have been made to the Participants and their beneficiaries pursuant to the terms of the Plans. Notwithstanding any provision of this Agreement to the contrary, in the event that a "benefit consultant" appointed by the Company determines at any time prior to a Change of Control, or such a consultant appointed by the Trustee determines at any time following a Change of Control, that the fair market value of Trust assets exceeds 110% (140% following a Change of Control) of the present value of accrued benefit obligations under the Plans (the amount of such excess over 110%, or 140%, as applicable, referred to hereinafter as "Trust Surplus"), then the Company may direct the Trustee to transfer and convey to the Company such assets as shall be designated by the Company prior to a Change of Control or by the Trustee following a Change of Control, provided that the aggregate fair market value of such assets shall not exceed the Trust Surplus.

## ARTICLE V

### INVESTMENTS

5.1 If a Plan provides for the deemed designation of investments by the Company in accordance with instructions of each Participant, the investment powers of the Trustee shall be governed by this Section 5.1. The Trustee shall invest and reinvest the principal and income of the Trust Fund and keep the Trust Fund invested, without distinction between principal and income, only in those investment vehicles that have been selected by the Company as being consistent with the deemed investments specifically designated by each Participant pursuant to the applicable provisions of the Plan; provided, however, that any such designation shall be solely for the purpose of determining the amount to be paid to the Participant under the Plan and shall in no way alter the characterization of the assets of Trust Fund as assets of the Company in accordance with Section 4.1 hereof.

5.2 (a) If a Plan does not provide for the deemed designation of investments by the Participant, the investment powers of the Trustee shall be governed by this Section 5.2. The Trustee shall invest and reinvest the principal and income of the Trust Fund as directed by the CEO or President in writing, which directions may be changed from time to time; provided, however, that any such directions from the Company may not be changed on or after a Change of Control of the Company. In the absence of direction, the Trustee shall invest and reinvest the principal and income of the Trust Fund in a money-market mutual fund.

(b) Specifically, but not by way of limitation, the Trustee is authorized and empowered to invest all or any part of the Trust Funds in any common or collective trust fund or pooled investment fund, including, without limitation, mutual funds presently or hereafter maintained by the Trustee as the same may be amended from time to time; and the declaration of trust establishing such common or collective fund is hereby made a part hereof as if set forth at length herein, the assets of the fund invested in said common or collective trusts shall be held and administered by the Trustee strictly in accordance with the terms of the instrument, and the combining of assets of the Trust Fund with assets of other trusts in such common or collective trust fund is specifically authorized hereby.

(c) The Trustee in its discretion may keep such portion of the Trust Fund in cash or cash balances or hold all or any portion of the Trust Fund in savings accounts, certificates of deposit, and other types of time or demand deposits with any financial institution or quasi-financial institution, either domestic or foreign (including any such institution operated or maintained by the Trustee in its corporate capacity) as the Trustee may from time to time determine to be in the best interests of the Trust Fund.

5.3 If any portion of the Trust Fund is invested in a life insurance contract or policy on the life of a Participant, the Trustee shall hold legal title to the contract or policy and shall serve as custodian. Prior to a Change of Control, the Company shall have the power to execute insurance contract or policy applications and death claims, as well as to transfer assets between or among the separate accounts available within each insurance contract. Further, the Company reserves the right to designate the address of record for all notices involving such insurance contracts or policies and their administration, and shall provide the Trustee, on at least an annual basis, an accounting of all actions occurring to or within each such insurance contract or policy. Prior to the closing of any transaction that would result in a Change of Control, the Company shall provide the Trustee with written instructions pursuant to Section 7.2 hereof as to the person that will serve as agent for the Trustee with respect to any such insurance contracts following a Change of Control and such instructions shall not thereafter be amended by the Company. Following a Change of Control, the Trustee may substitute or replace the agent for good cause shown. The Company shall have the right at any time, and from time to time, subject to the approval of the Trustee which shall not be unreasonably withheld, to substitute cash or cash equivalents equal to the fair market value of any assets held by the Trust.

## ARTICLE VI

### ADDITIONAL POWERS AND DUTIES OF THE TRUSTEE

6.1 The Trustee shall have the following additional powers and authority with respect to all property constituting part of the Trust Fund:

(a) To sell, exchange, convey or transfer any such property at public or private sale for

cash or on credit and grant options for the purchase or exchange thereof; provided, however, that following a Change of Control in no event (other than pursuant to Section 3.1, and in such case no greater than the deemed investment elections made by Participants) may the Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by the Company or its affiliates, other than a de minimis amount held in common investment vehicles in which the Trustee invests or securities held prior to the Change of Control or securities converted from such securities. No person dealing with the Trustee shall be bound to see to the application of the purchase money or other property delivered to the Trustee or to inquire into the validity, expedience or propriety of any such sale or other disposition.

(b) To participate in any plan of reorganization, consolidation, merger, combination, liquidation or other similar plan relating to any such property, and to consent to or oppose any such plan or any action thereunder, or any contract, lease, mortgage, purchase, sale or other action by any corporation or other entity.

(c) To deposit any such property with any protective, reorganization or similar committee; to delegate discretionary power to any such committee; and to pay part of the expenses and compensation of any such committee and any assessments levied with respect to any property so deposited.

(d) To exercise any conversation privilege or subscription right available in connection with any such property; to oppose or to consent to the reorganization, consolidation, merger or readjustment of the finances of any corporation, company or association, or to the sale, mortgage, pledge or lease of the property of any corporation, company or association any of the securities of which may at any time be held in the Fund and to do any act with reference thereto, including the exercise of options, the making of agreements or subscriptions and the payment of expenses, assessments or subscriptions, which may be deemed necessary or advisable in connection therewith, and to hold and retain any securities or other property which it may so acquire.

(e) To commence or defend suits or legal proceedings and to represent the Trusts and the Trust Fund in all suits or legal proceedings; to settle, compromise or submit to arbitration any claims, debts or damages due or owing to or from the Trust Fund; and to pay all reasonable expenses arising from any such action from the Fee Account if not paid by the Company.

(f) To exercise, personally or by general or limited power of attorney, any right, including the right to vote, appurtenant to any securities or other such property.

(g) If the Company consents, to borrow money from any lender in such amounts and upon such terms and conditions as shall be deemed advisable or proper to carry out the purposes of the Trust and to pledge any securities or other property for the repayment of any such loan.

(h) To engage any legal counsel, including inside counsel, reasonably satisfactory to the Company, or any other suitable accounting, clerical or other agents, reasonably satisfactory to the Company, to consult with such counsel or agents with respect to the construction of this Trust Agreement, the duties of the Trustee hereunder, the transactions contemplated by this Trust Agreement or any act which the Trustee proposes to take or omit, to rely upon the advice of such counsel or agents, and to pay the reasonable fees, expenses and compensation from the Fee Account if not paid by the Company.

(i) To register any securities held by it in its own name or in the name of any custodian of such property or of its nominee, including the nominee of any system for the central handling of securities, with or without the addition of words indicating that such securities are held in a fiduciary capacity; to deposit or arrange for the deposit of any such securities with such a system and to hold any securities in bearer form; provided, that the books and records of the Trustee shall show that all such investments are part of the Trust Fund.

(j) To make, execute and deliver, as the Trustee, any and all deeds, leases, notes, bonds,

guarantees, mortgages, conveyances, contracts, waivers, releases or other instruments in writing necessary or proper for the accomplishment of any of the foregoing powers.

(k) To exercise all powers conferred on the Trustee by local law, unless otherwise specifically provided herein, including the right to borrow against an insurance policy for purposes of the Plan or to distribute the proceeds to the Company subject to the provisions of Section 4.7; provided, however, that if an insurance policy is held as an asset of the Trust, the Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor trustee, or to loan to any person other than the Company the proceeds of any borrowing against such policy; provided, further, that the Trustee may make an IRC Sec. 1035 exchange of any such policy with the consent of the insured as to insurability.

(l) To do all other acts although not specifically mentioned herein, as the Trustee may deem necessary to carry out any of the foregoing powers and the purposes of this Trust Agreement.

## ARTICLE VII

### PAYMENTS BY THE TRUSTEE

7.1   If, prior to a Change of Control, a Participant or beneficiary does not receive a payment(s) to which he believes he has become entitled under the Plan, he shall notify the Plan Administrator in writing in accordance with the terms of the applicable Plan. After a Change of Control, such a Participant or beneficiary may notify the Trustee in writing of his claimed entitlement under the Plan.

7.2   The Trustee shall make payments to a Participant or beneficiary in accordance with written instructions given at the time of payment or in advance of such payment, consistent with the terms of the Plan, to the Trustee from the CEO or President as to the manner and timing of payments hereunder and the Trustee shall have no responsibility to determine the amount of such payments. No change to such instructions may be effected on or after notification or knowledge of a Change of Control of the Company with respect to benefits accrued to date.

7.3   The Trustee shall deduct from each payment any Federal withholding taxes or charges which the Company, or its agent, informs the Trustee that it is required to deduct under applicable laws and transmit the required amount of funds to the Company for deposit with the appropriate taxing authorities.

7.4   The insufficiency of assets in the Trust Fund shall not relieve the Company or its affiliates of their respective obligations or liabilities to make benefit payments otherwise due to a Participant or beneficiary under the terms of the Plans.

7.5   The Company may make payment of benefits directly to Participants or their beneficiaries as they become due under the terms of the Plans and, upon submission of proof of payment, be reimbursed from the Trust Fund in the amount of such payment (and the amount of any applicable withholding taxes). The Company shall notify the Trustee of its decision to make payment of benefits directly prior to the time amounts are payable to Participants or their beneficiaries. In addition, if the principal of the Trust Fund is not sufficient to make payments of benefits in accordance with the terms of the Plans, the Company shall make the balance of each such payment as it falls due. The Trustee shall notify the Company where principal and earnings of the Trust are not sufficient.

## ARTICLE VIII

## TAXES, EXPENSES AND COMPENSATION

8.1   The Company shall from time to time pay taxes of any and all kinds which are lawfully levied or assessed upon or becomes payable in respect of the Trust Fund, the income or any property forming a part thereof, or any security transaction pertaining thereto. To the extent that any taxes lawfully levied or assessed upon the Trust Fund are not paid by the Company, the Trustee shall pay such taxes out of the Fee Account, or, to the extent that the Fee Account is insufficient, from the Trust. The Trustee shall at the expense and direction of the Company contest the validity of such taxes in any manner deemed appropriate by the Company or its counsel or the Company may itself contest the validity of any such taxes.

8.2   Any other reasonable expenses incurred by the Trustee in the performance of its duties under this Trust Agreement, including but not limited to reasonable legal fees and consulting fees, shall be charged against and paid from the Fee Account to the extent that the Company does not pay such expenses, or, to the extent that the Fee Account is insufficient, from the Trust.

8.3   The Company shall pay the Trustee such reasonable compensation for its services as may be agreed upon in writing from time to time by the Company and the Trustee. Such compensation shall be paid directly by the Company. In the event such compensation is not paid by the Company, it shall be charged against the Fee Account, or, to the extent that the Fee Account is insufficient, from the Trust.

## ARTICLE IX

## ADMINISTRATION AND RECORDS

9.1   The Trustee shall keep or cause to be kept accurate and detailed accounts of any investments, receipts, disbursements and other transactions hereunder, and all accounts, books and records relating thereto shall be open to inspection and audit at all reasonable times by any person designated by the Company. All such accounts, books and records shall be preserved (in the original form, or on microfilm, magnetic tape or any other similar process) for such period as the Trustee may determine, but in any event at least 7 years. Thereafter, the Trustee may destroy such accounts, books and records unless the Company specifies otherwise in writing prior to the end of such period, but will make a good faith effort to first notify the Company in writing of its intention to do so and transfer to the Company any of such accounts, books and records requested.

9.2   Within 60 days after the close of each calendar year, and within 60 days after the removal or resignation of the Trustee or of the termination of the Trust, the Trustee shall file with the Company (and, provide a copy thereof to the Participants, upon a written request) a written accounting setting forth all investments, receipts, disbursements and other transactions effected by it during the preceding calendar year and, if applicable, during the current calendar year to the date of such removal, resignation or termination, including a description of all investments and securities purchased and sold with the cost or net proceeds of such purchases or sales and showing all cash, securities and other property held at the end of such calendar year or other period and the fair market value thereof.

9.3   The Trustee shall from time to time permit employees and agents of the Company and its affiliates to have reasonable access during ordinary business hours to such records as may be necessary to audit the Trustee's accounts.

9.4   Nothing contained in this Trust Agreement shall be construed as depriving the Trustee or the Company of the right to have a judicial settlement of the Trustee's accounts, and upon any proceeding for a judicial settlement of the Trustee's accounts or for instructions, the only necessary party thereto in

9

APR-11-2005 08:22 AM WELLS FARGO ITS SANDIEGO    858 622 6344    P.10

addition to the Trustee shall be the Company.

9.5 In the event of the removal or resignation of the Trustee, the Trustee shall deliver to the successor trustee all records which shall be required by the successor trustee to enable it to carry out the provisions of this Trust Agreement.

9.6 In addition to any returns required of the Trustee by law, such as income tax reporting, the Trustee shall prepare and file such tax reports and other returns as the Company and the Trustee may from time to time agree upon in writing.

## ARTICLE X

### REMOVAL OR RESIGNATION OF THE TRUSTEE AND DESIGNATION OF SUCCESSOR TRUSTEE

10.1 The Company may remove the Trustee with or without cause, upon at least 60 days' notice in writing to the Trustee; provided, however, that following a Change of Control of the Company, the Trustee may be removed only for good cause shown. For such purposes "good cause" shall include gross negligence or breach of fiduciary duty by the Trustee.

10.2 The Trustee may resign at any time upon at least 60 days' notice in writing to the Company.

10.3 In the event of such removal or resignation, the Trustee shall duly file with the Company a written accounting, at least 60 days in advance, as provided in Section 9.2 hereof for the period since the last previous annual accounting, listing the investments of the Trust and any uninvested cash balance thereof, and setting forth all receipts, disbursements, distributions and other transactions respecting the Trust not included in any previous accounting, and if written objections to such accounting are not filed as provided in Section 9.2 hereof, the Trustee shall to the maximum extent permitted by applicable law be forever released and discharged from all liability and accountability with respect to the propriety of its acts and transactions shown in such accounting.

10.4 Within 60 days after any such notice of removal or resignation of the Trustee, the Company shall designate a successor trustee qualified to act here under, which shall in any event be a major financial institution located in the United States with assets of at least $5.0 billion. In no event may the Company, an affiliate of the Company or of any Participant serve as the successor trustee. Each such successor trustee, during such period as it shall act as such, shall be bound by all of the provisions hereof as well as any instructions provided by the CEO or President pursuant to the provisions hereof, shall have the powers and duties herein conferred upon an individual trustee, and the word "Trustee" wherever used herein, except where the context otherwise requires, shall be deemed to include any successor trustee.

10.5 Upon designation of a successor trustee and delivery to the resigned or removed Trustee of written acceptance by the successor trustee of such designation, such resigned or removed trustee shall promptly assign, transfer, deliver and pay over to such successor trustee, in conformity with the requirements of applicable law, the funds and properties in its control or possession then constituting the Trust Fund. If, by the resignation or removal date, the Company has not notified the Trustee in writing as to whom the assets and cash are to be transferred and delivered, the Trustee may bring an appropriate action or proceeding for leave to deposit the assets and cash in a court of competent jurisdiction. The Trustee shall be reimbursed by the Fee Account for all costs and expenses of the action or proceeding including, without limitation, reasonable attorney's fees and disbursements if not paid directly by the Company, or, to the extent that the Fee Account is insufficient, from the Trust.

3

## ARTICLE XI

### ENFORCEMENT OF TRUST AGREEMENT

11.1     The Company shall have the right to enforce any provisions of this Trust Agreement. In any action or proceedings affecting the Fund the only necessary parties shall be the Company and the Trustee and, except as provided in Section 12.1 hereof or as otherwise required by applicable law, no other person shall be entitled to any notice or service of process. Any judgment entered in such an action or proceeding shall be binding and conclusive on all persons having or claiming to have any interest in the Trust Fund.

## ARTICLE XII

### AMENDMENTS

12.1     Subject to the provisions of Section 12.3 hereof, the Company may, from time to time, amend or modify, in whole or in part, any or all of the provisions of this Trust Agreement, except to make it revocable, to increase the duties of the Trustee without its written consent or to take any action that would have a material adverse affect on a Participant or beneficiary unless the Participant or beneficiary consents in writing. The Trustee and the Participants shall receive written notice of any such amendment including any amendment under Section 12.3 hereof.

12.2     The Company and the Trustee shall execute such supplements to, or amendments of, this Trust Agreement as shall be necessary to give effect to any such amendment or modification.

12.3     To the extent that the terms hereof are inconsistent with the terms of any Plan, the latter shall control as if the terms hereof had been amended accordingly, except that the terms of this Agreement will control with respect to the responsibilities of the Trustee. Further, upon a Change of Control of the Company, the Company and its affiliates shall be precluded from amending (i) this Agreement, or (ii) any of the Plans with respect to any benefit (including any form of benefit or benefit determination) of the Participant that had accrued on or prior to the Change of Control of the Company or is funded pursuant to the provisions of Article XVI hereof but has not been completely distributed to the Participants or beneficiaries, unless, in either such event, the Participant or beneficiary, as applicable, consents, in writing, to such amendment. Upon a Change of Control, this Section 12.3 shall be deemed to supersede any provision of any such Plan which permits amendments of such Plan inconsistent with the terms hereof and this Section 12.3 shall constitute an amendment to such Plan. Notwithstanding anything in this Section 12.3 to the contrary, the Company shall have, both before and after any Change of Control, the right to terminate the Plan and this Agreement pursuant to Section 12.1 of the Plan.

## ARTICLE XIII

### TERMINATION OF THE TRUST

13.1     Except as provided in Sections 4.2 or 16.2 hereof, no part of the corpus or income of the Trust Fund shall be paid to the Company or be used for any purpose other than for the exclusive purpose of providing benefits to the Participants or beneficiaries prior to the satisfaction of all liabilities under the Plans; provided, however, that nothing in this Article shall be deemed to limit or otherwise prevent the payment from the Trust Fund of expenses, taxes, and other charges as provided in Article VIII hereof or the return of surplus as provided in this Article and Article IV. The Trust may be prospectively

discontinued by written instrument of the Company at any time, but the Trust may not be liquidated until the payment of all amounts accrued for the Participant (or beneficiary) under the terms of the Plans as of the date of such termination whether or not then due. In no event shall the termination of the Trust accelerate the payment of a Participant's benefit under a Plan.

13.2    Upon the liquidation of the Trust Fund after all payments required by Section 13.1 have been made to the Participant(s) (or beneficiary(ies)), any and all funds remaining in the Trust Fund shall be paid to the Company and the Trustee shall promptly take such action as shall be necessary to transfer such assets to the Company.

## ARTICLE XIV

### NON-ALIENATION

14.1    Except to the extent otherwise required by law, (i) no amount payable to or in respect of the Participant at any time under the Trust Fund and no interest that the Participant has in the Trust Fund shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind, and any attempt to so alienate, sell, transfer, assign, pledge, attach, charge or otherwise encumber any such amount, whether presently or thereafter payable, shall be void; and (ii) the Trust Fund shall in no manner be liable for or subject to the debts or liabilities of the Participant.

14.2    No provision of this Trust Agreement shall be interpreted as conferring upon the Participant any rights in any Trust Fund established hereunder other than those of a general creditor of the Company.

## ARTICLE XV

### COMMUNICATIONS

15.1    Communications to the Company shall be addressed to it at 18400 Von Karman, Suite 1000, Irvine, CA 92612, with a copy to the General Counsel; provided, however, that upon the written request of the Company, such communications shall be sent to such other address as the Company may specify.

15.2    Communications to the Trustee shall be addressed to it at Institutional Trust Group, MAC 2818-101, 707 Wilshire Boulevard, 10th Floor, Los Angeles, CA 90017, provided, however, that upon the Trustee's written request, such communications shall be sent to such other address as the Trustee may specify.

15.3    No communication shall be binding on the Trustee until it is received by the Trustee, and no communication shall be binding on the company until it is received by the Company.

15.4    Any action of the Company or the CEO or President (or his authorized representative) pursuant to this Trust Agreement, including all orders, requests, directions, instructions, approvals and objections of the Company to the Trustee, shall be in writing signed on behalf of the Company by any duly authorized officer of the Company or by the CEO, the President or the CEO's or President's delegate. The Trustee may rely on, and will be fully protected with respect to any such action taken or omitted in good faith in reliance on, any information, order, request, direction, instruction, approval, objection and list

delivered to the Trustee by the Company consistent with the terms of this Trust Agreement.

## ARTICLE XVI

## CHANGE OF CONTROL

16.1    Upon a Change of Control of the Company, the CEO, the President, or the authorized representative of either, or the Company's Chief Financial Officer (the "CFO") shall notify the Trustee and shall immediately cause to be remitted to the Trustee as a contribution to the Trust Fund the amount, if any, accrued for the Participants (including any interest or earnings due on such accrual) for the current year or for any prior year to the extent not theretofore already contributed as well as an amount to the Fee Account estimated to be sufficient to pay all fees and expenses that may thereafter become due. Such contribution shall also include any life insurance policy(ies) purchased to be used to provide benefits under any of the Plans and the Company shall cause the ownership of such policy(ies) to be transferred to the Trustee in its capacity as trustee under this Trust Agreement as well as an amount sufficient such that at any time thereafter, the Trust will have sufficient funds, on a current basis, to provide the benefits due, or which may become due based on the facts then extant, to the Participant (or his designated beneficiary) under the Plan in any of the benefit forms permitted under the Plan. The CEO, President or CFO shall be obligated to continue to cause additional contributions to be made as may be necessary from time to time to insure that at all times the Trust contains sufficient funds, on a current basis, to provide the entire benefit due to the Participant (or his designated beneficiary) under the Plan. The Trustee shall be under no duty to determine the sufficiency, or to enforce the making, of such contributions.

16.2    In the event that a member of the Board, the CEO, the President or the CFO determines that, for purposes of this Trust Agreement, a Change of Control of the Company is imminent, the CEO, President or the CFO shall notify the Trustee and shall cause the Company to make the payments to the Trustee specified in Section 16.1. If a Change of Control shall not have occurred within 120 days of the contributions made pursuant to this Section 16.2 and the Board adopts a resolution to the effect that, for purposes of this Trust Agreement, a Change of Control is not imminent, any amounts added to the Trust Fund pursuant to this Section 16.2, together with any earnings thereon, shall be paid by the Trustee to the Company.

16.3    Change in Control" means any of the following:

(i)    Approval by the stockholders of the Company of the dissolution or liquidation of the Company;

(ii)    Consummation of a merger, consolidation, or other reorganization, with or into, or the sale of all or substantially all of the Company's business and/or assets as an entirety to, one or more entities that are not subsidiaries of the Company (a "Business Combination"), unless (A) as a result of the Business Combination at least 50% of the outstanding securities voting generally in the election of directors of the surviving or resulting entity or a parent thereof (the "Successor Entity") immediately after the reorganization are, or will be, owned, directly or indirectly, by stockholders of the Company immediately before the Business Combination; and (B) no "person" (as such term is defined for purposes of clause (iii) below and excluding the Successor Entity) beneficially owns, directly or indirectly more than 50% of the outstanding shares of the combined voting power of the outstanding voting securities of the Successor Entity, after giving effect to the Business Combination, except to the extent that such ownership existed prior to the Business Combination;

(iii)    Any "person" as such term is used in Sections 13(d) and 14(d) of the

Exchange Act) becomes the beneficial owner (as defined in Rule 13d-3 under the Exchange Act), directly or indirectly, of securities of the Company representing more than 50% of the combined voting power of the Company's then outstanding securities entitled to then vote generally in the election of directors of the Company;

(iv) During any period not longer than two consecutive years, individuals who at the beginning of such periods constituted the Board of Directors of the Company (the "Board") cease to constitute at least a majority thereof, unless the election, or the nomination for election by the Company's stockholders, of each new Board member was approved by a vote of at least two-thirds of the Board members then still in office who were Board members at the beginning of such period (including for these purposes, new members whose election or nomination was so approved), but excluding for this purpose, any such individual whose initial assumption of office occurs as a result of an actual or threatened election contest with respect to the election or removal of directors or other actual or threatened solicitation of proxies or consents by or on behalf of a person other than the Board.

Notwithstanding the foregoing, prior to the occurrence of any of the events described in clause (ii) or (iii) above, the Board may determine that such an event shall not constitute a Change in Control for purposes of the Plan.

## ARTICLE XVII

### MISCELLANEOUS PROVISIONS

17.1   This Trust Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be performed therein, exclusive of any conflict of laws provision. It shall be binding upon and inure to the benefit of the Company and the Trustee and their respective successors and assigns.

17.2   All titles and Article headings herein have been inserted for convenience of reference only and shall in no way modify, restrict or affect the meaning or interpretation of any of the terms or provisions of this Trust Agreement.

17.3   This Trust Agreement is intended as a complete and exclusive statement of the agreement of the parties hereto, and supersedes all previous agreements or understandings among them.

17.4   The term "Trustee" shall include any successor trustee. If a Trustee or custodian hereunder is a bank or trust company, any corporation resulting from any merger, consolidation or conversion to which such bank or trust company may be a party, or any corporation otherwise succeeding generally to all or substantially all of the assets or business of such bank or trust company, shall be the successor to it as Trustee hereunder without the execution of any instrument or any further action on the part of any party hereto or the Participant hereunder; provided, however, that, except as provided in the preceding clause, any successor to the original Trustee must be a Replacement Trustee.

17.5   If any provision of this Trust Agreement shall be invalid and unenforceable, the remaining provisions hereof shall continue to be effective.

17.6   Any reference hereunder to the Participant shall expressly be deemed to include, where relevant, a beneficiary of such Participant duly designated under the terms of the Plans. The Participant shall cease to have such status once any and all amounts due him under the Plans have been satisfied.

17.7   Whenever used herein, and to the extent appropriate, the masculine, feminine or neuter

APR-11-2005 08:24 AM   WELLS FARGO ITS SANDIEGO   858 622 5944   P.15

gender shall include the other two genders, the singular shall include the plural and the plural shall include the singular.

17.8. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be the original, and said counterparts shall constitute but one and the same instrument.

17.9 Benefits payable to Plan Participants and their beneficiaries under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

17.10 The Company, and the Trust Fund (to the extent permitted by applicable law) agree to indemnify and hold harmless the Trustee, its directors, officers, employees and agents from and against all liabilities, losses, expenses and claims (including reasonable attorney's fees and costs of defense) arising out of the Company's performance of its duties or any breach or alleged breach of its duties with respect to the Plan and this Trust, or arising out of or relating to any action, suit or proceeding to which the Trustee is a party or otherwise involved by reason of its serving as Trustee pursuant to this Trust Agreement and complying with its terms, except where the Trustee has been found to have been negligent or to have breached its duties under this Trust Agreement or Part 4 of Title I to ERISA by a final judgment of a court of competent jurisdiction.

## ARTICLE XVIII

## DEFINITIONS

18.1 "Affiliate" shall mean any firm, partnership, or corporation that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company. "Affiliate" also includes any other organization similarly related to the Company that is designated as such by the Board.

18.2 "Beneficial Owner, Beneficially Owns and Beneficial Ownership" shall have the meanings ascribed to such terms for purposes of Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and the rules thereunder, except that, for purposes of this definition, "Beneficial Ownership" (and the related terms) shall include Voting Securities that a Person has the right to acquire pursuant to any agreement, or upon exercise of conversion rights, warrants, options or otherwise, regardless of whether any such right is exercisable within 60 days of the date as of which Beneficial Ownership is to be determined.

18.3 "Board" shall mean the Company's Board of Directors.

18.4 "CEO" shall mean the Chief Executive Officer of the Company.

18.5 "CFO" shall mean the Chief Financial Officer of the Company.

18.6 "Change of Control" shall mean a transaction described in Section 16.3.

18.7 "Code" shall mean the Internal Revenue Code of 1986, as amended.

18.8 "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended.

18.9 "Fee Account" shall mean a separate account under the Trust to provide a source for

-4-

payment of any fees, including legal fees, incurred by the Trustee in the administration of the Trust or by participants in enforcing their rights under the Trust Agreement.

18.10 "Insolvent" shall mean (I) the inability of the Company to pay its debts when they mature or (ii) the Company is subject as a debtor to a pending proceeding under the Federal Bankruptcy Code.

18.11 "Participant" shall mean each participant in the Plans designated by the Company of the date hereof or, thereafter, added by the CEO or President from time to time.

18.12 "Person" shall have the meaning ascribed for purposes of Section 13(d) of the Exchange Act and the rules thereunder.

18.13 "Plans" shall mean certain employment, retirement and welfare benefit agreements and plans listed on Exhibit A attached hereto as of the date hereof or, thereafter, added by the CEO or President.

18.4 "Related Party" shall mean (I) a majority-owned subsidiary of the Company; or (ii) a trustee or other fiduciary holding securities under an employee benefit plan of the Company or any majority-owned subsidiary of the Company; or (iii) a corporation owned directly or indirectly by the shareholders of the Company in substantially the same proportion as their ownership of Voting Securities.

18.15 "Trust" shall mean the irrevocable trust fund created by the Company and the Trustee under the Trust Agreement with respect to designated participants in the Plans.

18.16 "Trust Agreement" shall mean the trust agreement with the Trustee effective as of January 1, 1999, adopted for the purpose of providing a funding source for the Plans.

18.17 "Trustee" shall mean Wells Fargo Bank, N.A., a national banking association organized and existing under the laws of the United States, and any successor thereto.

18.18 "Trust Fund" shall mean collectively all money and other property, all investments and reinvestments made therewith or proceeds thereof and all earnings and profits (less losses) thereon, less all payments and charges as authorized herein, for the Trust.

18.19 "Trust Surplus" shall mean that a "benefit consultant" appointed by the Company at any time prior to a Change of Control, or such a consultant appointed by the Trustee following a Change of Control, has determined that the fair market value of Trust assets exceeds 110%, 140% following a Change of Control, or the present value of accrued benefit obligations under the Plans. The amount of such excess over 110%, or 140%, as applicable, shall be the "Trust Surplus."

18.20 "Voting Securities" shall mean any securities of the Company which carry the right to vote generally in the election of directors.

APR-11-2005 08:25 AM    WELLS FARGO ITS SANDIEGO    858 622 6344    P.17

    IN WITNESS WHEREOF, this Trust Agreement has been duly executed by the parties hereto as of the day and year first above written.

NEW CENTURY FINANCIAL CORPORATION

By: _____
Name: Patrick Flanagan
Title: Executive Vice President

Assistant Secretary (Seal)

Attest:

WELLS FARGO BANK, N.A.
    (As Trustee)

By: _____
Name: JONATHAN W. ANDERSON
Title: Vice President

Secretary (Seal)

J:\SHARED\Legal\UKnem\Deferred Compensation Plan\Trust Agreement v1.doc