UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          )   Case No. 07-10416-KJC
                                )   Chapter 11
NEW CENTURY TRS HOLDINGS INC.,)
                                )   Courtroom No. 5
                                )   824 Market Street
                    Debtor.   )   Wilmington, Delaware 19801
                                )
                                )   June 15, 2007
                                )   10:04 A.M.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:          Richards Layton & Finger, PA
                          By:  MICHAEL MERCHANT, ESQ.
                               RUSS SILBERGLIED, ESQ.
                          One Rodney Square, P.O. Box 551
                          Wilmington, Delaware 19899

                          O'Melveny & Myers LLP
                          By:  SUZZANNE UHLAND, ESQ.
                          400 South Hope Street
                          Los Angeles, California 90071

For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  JOSEPH J. McMAHON, JR., ESQ.
                          844 King Street
                          Wilmington, Delaware 19899

ECRO:                     Jason Smith

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

# TRANSCRIPTS PLUS

**435 Riverview Circle, New Hope, Pennsylvania 18938**
e-mail CourtTranscripts@aol.com

**215-862-1115     (FAX) 215-862-6639**

**Appearances:**
**(Continued)**

| | |
|---|---|
| **For Bank of America:** | Potter Anderson & Corroon, LLP<br>By: GABRIEL MACDONAILL, ESQ.<br>Hercules Plaza, P.O. Box 951<br>1313 N. Market Street<br>Wilmington, Delaware 19899-0951 |
| | Kaye Scholer<br>By:  MARGO SCHONHOLTZ, ESQ.<br>    NICHOLAS CREMONA, ESQ.<br>425 Park Avenue<br>New York, New York 10022-3598 |
| **For Deutsche Bank**<br>**Structured Products:** | Bingham McCutchen LLP<br>By:  ANDREW GALLO, ESQ.<br>One State Street<br>Hartford, Connecticut 06103-3178 |
| **For Examiner:** | Saul Ewing, LLP<br>By:  MARK MINUTI, ESQ.<br>222 Delaware Avenue, Suite 1200<br>P.O. Box 1266<br>Wilmington, Delaware 19899 |
| | Kirkpatrick & Lockhart Preston<br>Gates Ellis LLP<br>By:  MICHAEL  MISSAL, ESQ.<br>    EDWARD FOX, ESQ.<br>    REBECCA KLINE DUBHILL, ESQ.<br>1601 K Street, NW<br>Washington, DC, 20006-1600 |
| **For N.Y.S. Teachers**<br>**Retirement System:** | Lowenstein Sandler PC<br>By:  MICHAEL ETKIN, ESQ.<br>65 Livingston Avenue<br>Roseland, New Jersey 07068 |
| **For Fidelity National**<br>**Information Services**<br>**et al.:** | Baker & Hostetler LLP<br>By:  JACK FITZGERALD, ESQ.<br>45 Rockefeller Plaza<br>New York, New York 10111 |

Appearances:
(Continued)


For Greenwich Capital        Pachulski Stang Ziehl Young
Financial:                   Jones & Weintraub
                             By:  TIM CAIRNS, ESQ.
                             919 North Market Street, 16th Fl.
                             Post Office Box 8705
                             Wilmington, Delaware 19899-8705

                             Kirkland & Ellis
                             By:  SHIRLEY CHO, ESQ.
                                  BENNETT SPIEGEL, ESQ.
                             200 East Randolph Drive
                             Chicago, Illinois 60601


For Daniel Rubio, et al:     Connolly Bove Lodge & Hutz, LLP
                             By:  KAREN BIFFERATO, ESQ.
                             The Nemours Building
                             1007 North Orange Street
                             P.O. Box 2207
                             Wilmington, Delaware 19899

                             Trush Law Firm
                             By:  JIM TRUSH, ESQ.
                             Suite 300, 2424 S.E. Bristol Street
                             Newport Beach, California 92660

For the Committee:           Blank Rome, LLP
                             By:  JASON STAIB, ESQ.
                             Chase Manhattan Centre
                             1201 Market Street, Suite 800
                             Wilmington, Delaware 19801

                             Hahn & Hessen LLP
                             By:  MARK POWER, ESQ.
                                  MARK INDELICATO, ESQ.
                             488 Madison Avenue
                             14th and 15th Floors
                             New York, New York 10022

**Appearances:**
**(Continued)**

| | |
|---|---|
| Appearing: | Rosenthal, Monhait & Goddess, P.A., |
| | By:  EDWARD ROSENTHAL, ESQ. |
| | 919 Market Street, Suite 1401 |
| | P.O. Box 1070 |
| | Wilmington, Delaware 19899-1070 |
| For Murray Capital | Murray Capital Management, Inc. |
| Management, Inc.: | By:  MARTI MURRAY |
| For David J. Stern: | David J. Stern, P.A. |
| | By:  FREDERIC J. DISPIGNA, ESQ. |
| | Suite 500, 801 South University Drive |
| | Plantation, Florida 33324-3314 |
| For UBS Real Estate | Paul Hastings Janofsky & Walker |
| Securities, Inc.: | By:  KIMBERLY NEWMARCH, ESQ. |
| | 191 N. Wacker Drive |
| | 30th Floor |
| | Chicago, Illinois |
| For Manatt Phelps & | Manatt Phelps & Phillips |
| Phillips: | By:  IVAN L. KALLICK, ESQ. |
| | ELLEN MARSHALL, ESQ. |
| For Credit Suisse | Chadbourne & Park, LLP |
| First Boston, et al: | By:  DOUGLAS E. DEUTSCHE, ESQ. |
| | 30 Rockefeller Plaza |
| | New York, New York 10112 |
| For Carrington Capital | Mayer, Brown, Rowe & Maw LLP |
| Management, LLC: | by:  THOMAS KIRIAKOS, ESQ. |
| | SEAN SCOTT, ESQ. |
| | 71 S. Wacker |
| | Chicago, Illinois 60606-4637 |
| For ICP Consulting, | ICP Consulting, LLC |
| LLC: | By:  MIKE FLYNN |

Appearances:
(Continued)


For TRS Holdings, Inc.:    Irell & Manella LLP
                           By:  JEFF REISNER, ESQ.
                           Suite 900, 1800 Avenue of the Stars
                           Los Angeles, California 90067-4276

For Union Bank of          Jeffer, Mangels, Butler & Marmaro LLP
California:                 By:  BARRY FREEMAN, ESQ.
                            1900 Avenue of the Stars
                           Seventh Floor
                           Los Angeles, California 90067

For Skadden, et al:        Skadden Arps Slate Meagher & Flom
                           By:  ERIC DAVIS, ESQ.
                           One Rodney Square, P.O. Box 636
                           Wilmington, Delaware 19899-0636

1          THE COURT:  Good morning, all.

2          UNIDENTIFIED ATTORNEY:  Good morning, Your Honor.

3          MR. MERCHANT:  Good morning, Your Honor.  Mike

4  Merchant from Richards Layton and Finger on behalf of the

5  debtors.

6          Your Honor, I think we'd like to take the last matter

7  on the agenda first, which is the status report regarding the

8  first meeting with the examiner.

9          THE COURT:  Very well.

10          MS. UHLAND:  Good morning, Your Honor.  Suzzanne

11  Uhland of O'Melveny and Myers for the debtors.  And why don't

12  you --

13          MR. MISSAL:  Good morning, Your Honor.  Mike Missal.

14          MR. FOX:  Good morning, Your Honor.  Edward Fox from

15  Kirkpatrick and Lockhart Preston Gates Ellis as proposed

16  counsel for the examiner.

17          THE COURT:  Good morning and welcome.

18          MR. FOX:  Thank you, sir.

19          MS. UHLAND:  Your Honor, we met yesterday.  The

20  counsel for the debtors, the counsel for the Creditors'

21  Committee and the examiner, his counsel, and members of the

22  Office of the United States Trustee.  We had an initial meeting

23  yesterday to discuss things as sort of some of the mechanics on

24  privilege issues and confidentiality, as well as to provide the

25  examiner an overview of the issues so that they could start

1  thinking about different discovery or, you know, pacing

2  (sic/phonetic) items.

3        We had a very productive meeting.  One benefit as a

4  result of the prior investigation, New Century has already been

5  developing a document database that's coded by issues, and

6  we're working to get the examiner and his counsel access today

7  so they can start having the same access to the document

8  information that we have on file.

9        We're also working to coordinate with the companies

10  counsel to the independent counsel that conducted the company's

11  investigation to provide that work product to the examiner,

12  both to accelerate the process and to hopefully reduce expense

13  to the estates as part of that investigation.

14        On a -- on a mechanic, taking actually from other

15  cases where there's been an examiner order, and I think the

16  parties have a chance to sit down and talk and reflect on some

17  -- what some of the issues might be, the parties will be

18  working together with the Trustee's Office, the Committee and

19  Examiner to have a sort of modest request to the have the Court

20  a further stipulation or a further order really to address

21  three issues:

22        First, the mechanics of how we'll be filing our

23  proposal and -- on -- how we'll file the Court's order.  What

24  we intend to do is have it filed -- have the examiner file it

25  under seal with a motion to unseal whatever -- all or whatever

1  portions the examiner believes should be unsealed.  That was a

2  process that I believe the Trustee's Office worked through in

3  the -- was it the Revco (phonetic) case, Joe?  I think it was -

4  - one of the cases that -- that represented to the Trustee's

5  Office I had previous had experience in.

6          MR. McMAHON:  Your Honor, good morning.  Joseph

7  McMahon for the United States Trustee.

8          We did discuss this idea in concept yesterday where

9  the Examiner's report would be filed under seal, but the --

10  with a motion to unseal filed by either our Office or the

11  Examiner, we'll work out the logistics.

12          But the -- the burden to -- with respect to 107 would

13  remain on the objecting parties.  In other words, it would just

14  be like a reverse mechanic designed to ensure that the report

15  is filed with the Court actually before parties in interest get

16  to see the final work product.

17          And with respect to the issues that debtors' counsel

18  is discussing, we had a discussion about concepts yesterday,

19  Your Honor.  My understanding is that the debtors' counsel has

20  taken the laboring oar insofar as drafting up the order as to

21  the specific issues that Ms. Uhland is outlining.

22          We would obviously like to take a look at the order

23  and reserve the right to be heard on that at the appropriate

24  time.

25          MS. UHLAND:  Yes, Your Honor.  I envision that we'll

1  have a -- a certificate of counsel that -- or a certification

2  of counsel that it's completely consensual, or we obviously

3  will come back.  But that's the plan.

4          The other two issues, I think, were simpler:

5          One, we wanted to make sure that the work product of

6  the Examiner was maintained as confidential, sort of post

7  filing the report within issues -- uh -- in other cases where

8  civil litigants have sought to get the examiner's work papers.

9          And then we would like to have some -- I think we've

10  been sort of sorting the privilege issues, just a more -- a

11  refined language to ensure that the privilege is protected and

12  the debtors and the Committee, to the extent they share

13  privileged information, the Examiner can be assured of their

14  protection.

15          Like I said, I envision this to be a rather short

16  order and we'll be circulating drafts of that to the parties

17  early next week.

18          And I think that's all I had to report on from the

19  meeting.  I don't know whether Examiner's counsel had any

20  further reports.

21          MR. MISSAL:  Yes, Your Honor.  I'd just like to

22  underscore what was said about the meeting.  I found it very

23  productive and helpful.  Everybody is cooperating very well at

24  this point.

25          We also met separately with counsel for the

1 Creditors' Committee to discuss their specific concerns, as

2 well.  I think we had a good dialogue and I believe we're off

3 to a good start.

4 　　　　THE COURT:  Very well.  Thank you.

5 　　　　MS. UHLAND:  Thank you, Your Honor.

6 　　　　　　　　(Pause)

7 　　　　MR. MERCHANT:  Your Honor, Mike Merchant again, for

8 the record.

9 　　　　If we could walk through the agenda on the other

10 items:

11 　　　　Agenda Items 1 through 6 have been continued.

12 　　　　And on Agenda Items 7 through 12, CNOs were filed and

13 I believe Your Honor has entered orders on all of those.

14 　　　　THE COURT:  I have.

15 　　　　MR. MERCHANT:  Agenda Item Number 16 is the motion to

16 retain A.P. Services, LLC as crisis managers.  This was before

17 Your Honor at the last hearing at which we told you that we

18 were working on a consensual form of order.  It took a while to

19 get there, but we've gotten there.

20 　　　　We have an agreed form of order with the Office of

21 the United States Trustee that resolves their concerns.  And

22 perhaps the best thing for me to do would -- would hand up a

23 clean copy and a black line of the order and walk Your Honor

24 through the changes.

25 　　　　THE COURT:  Very well.

1          (Pause)

2          MR. MERCHANT:  Your Honor, there have been --

3          (Pause)

4          MR. MERCHANT:  If I may have one moment, Your Honor.

5          THE COURT:  All right.

6          (Pause)

7          MR. MERCHANT:  Your Honor, there have been two

8  amendments to the engagement letter.  The first amendment was

9  filed prior to the last hearing, and I think is included in the

10 hearing binder.

11          The second amendment to the engagement letter was

12 just filed yesterday.  It was just entered into this week, and

13 I don't know whether Your Honor's seen it.  I have a copy of it

14 with me, if I may approach.

15          THE COURT:  Notice of second amendment?

16          MR. MERCHANT:  Yes.

17          THE COURT: I have that.

18          MR. MERCHANT:  Okay.  I don't know if Your Honor's

19 had an opportunity to review it.  But sort of the concept set

20 forth in that second amendment are incorporated into the form

21 of order, and the United States Trustee wanted me to just point

22 that out to Your Honor.

23          THE COURT:  All right.  Why don't you -- before we go

24 through the order, why don't you give me a current report on

25 the status of debtors' management?

1          MR. MERCHANT:  Ms. Uhland can provide it.

2          THE COURT:  Thank you.

3          MS. UHLAND:  Thank you, Your Honor.  The debtors are,

4  prior to these turnover -- the current turnover, was managed

5  largely by their CEO, Brad Morrice, as well as their CFO, Taj

6  Bindra.

7          And then in addition there's what they call an

8  Executive Management Committee, which includes the general

9  counsel, Joseph Eckroth, the Chief Operating Officer, and those

10  that I would say would be the four primary officers on the EMC,

11  which also included the -- the head of Human Resources, Robert

12  Lambert and the head of Loan Production, Anthony Meola, who

13  this Court has -- has seen in court, as well as the head of

14  Capital Markets, Kevin Cloyd.  As head of Capital Markets, that

15  really his role also included head of Servicing -- or does

16  include head of Servicing.

17          So, what has happened is the CFO, Mr. Bindra, who's a

18  public company CFO, resigned.   His services have been replaced

19  by Michael Tinsley of AlixPartners, given that the role of CFO

20  is largely a bankruptcy reporting function at this point.  The

21  company felt that it was more appropriate to bring in a

22  restructuring person simply and -- and since Michael Tinsley

23  had been the controller.

24          The head of Loan Production, Mr. Meola, really once

25  the -- the platform sale did not go forward, his usefulness to

1 the company and the efforts, it was not longer apparent, and

2 didn't really have much function at the company.  So, we've

3 been trying to, as the company has been shrinking, trying to

4 identify the more expensive officers and relieving them of

5 their duties.

6           So, Mr. Meola and Mr. Morrice, who's the CEO, were

7 both terminated on last Friday.

8           Holly Etlin, who had been appointed recently as CRO

9 was also appointed CEO.

10          What we expect going forward is that the core

11 leadership will be Holly running as the CEO, serving really as

12 a CRO to finish the asset sales and take the company through

13 the Chapter 11, supported by Michael Tinsley as her CFO.

14          The core -- I'll call core business competencies that

15 are remaining are the former general -- the current general

16 counsel, Terry Theologides is still with the company, and still

17 in management.  We expect him to be sort of -- through our next

18 phase of getting through this transition, he's going to be

19 taking on a leadership role with that.

20          And Kevin Cloyd, who's the head of Capital Markets,

21 who's been helpful in the servicing sale and the person who is

22 sort of leading the sales of the LNF -- the LNFA sales and

23 these remaining asset sales is also sort of the industry expert

24 who is sort of staying on in senior management to guide us

25 through this next phase.

1          And then our head of H.R. -- and our H.R. Department

2    is still pretty complete because of the continuing employee

3    issues that we're seeing there.

4          And, as well, our COO is remaining, certainly through

5    the sale of some of this technology.  But, again, as a large

6    high level CF -- COO, you know, it's -- I expect at some point

7    this summer, he'll also be transitioning.  And we'll be really

8    staying with, like I said, these -- the two -- the general

9    counsel and head of Capital Markets as our core industry

10   specialists.

11          THE COURT:  Thank you.

12          MR. MERCHANT:  With that, Your Honor, I can walk Your

13   Honor through the changes in the form of order, the material

14   changes.

15          THE COURT:  All right.

16          MR. MERCHANT:  If Your Honor will look to the recital

17   paragraph, there is references to the two amendments to the

18   engagement letter.  Like I said, both of them were filed with

19   the Court.

20          Paragraph 3 makes clear that the success fee is not

21   being approved by this order.  That's being put off for a later

22   day and all rights of the Committee and the U.S. Trustee to

23   object to the nature and amount of any success fee are fully

24   reserved.

25          In Paragraph 4, APS has agreed to waive the break

1  fee, which is contemplated under Paragraph 4 of Schedule 1 to

2  their engagement letter.

3          Paragraph 5 relates to the indemnification of APS

4  employees serving in officer roles.  That makes clear that they

5  shall not provide -- the debtor shall not provide

6  indemnification to employees not serving in officer roles.

7          And Paragraph 7 makes clear that the retainer

8  provided to APS is not a replenishing retainer.  It will be

9  drawn down as the case moves on.

10         Paragraph 8 makes clear that personnel serving in

11 officer capacity are subject to the same fiduciary duties and

12 obligations as are applicable to other persons serving in such

13 capacity as corporate officers under applicable law.

14         And Paragraph 9 contain a number of other provisions

15 that were lifted directly from the JayAlix protocol.

16         I think that summarizes all the changes to your -- to

17 the order, Your Honor.  The U.S. Trustee is standing, he may

18 have further comment.

19         THE COURT:  Mr. McMahon?

20         MR. McMAHON:  Your Honor, good morning.  We're

21 satisfied with the form of order.  And just to underscore one

22 point in that last section regarding the JayAlix protocol.

23 Consistent with the protocol, neither Ms. Etlin nor any other

24 A.P. Services personnel will be assuming a position on the

25 debtors' Board of Directors.  That's to maintain a clear

1  division between the people who would serve as the function and

2  the officers who are operating the company.

3          THE COURT:  Very well.  Thank you.  Does anyone else

4  care to be heard in connection with this motion or the proposed

5  form of order as it's been modified?

6                      (No audible response heard)

7          THE COURT:  I hear no response.

8                          (Pause)

9          THE COURT:  The order's been signed.

10         MR. MERCHANT:  Thank you, Your Honor.  Your Honor,

11  Agenda Item 17 is the application to retain Sheppard Mullin

12  Richter and Hampton, LLP.

13         There were concerns raised to that application by the

14  U.S. Trustee and the Committee.  We've been able to resolve

15  those concerns through a consensual form of order.

16         Sheppard Mullin will serve as special counsel and

17  litigation counsel to the debtors, which will include defense

18  in the Rubio litigation, which Your Honor will hear a little

19  bit more about today; counsel with respect to the sale of non-

20  debtor New Century Warehouse's assets, which Your Honor has

21  already previously approved.  And they'll also provide limited

22  services incident to corporate matters on which they were

23  working on prior to the petition date.

24         Like I said, Your Honor, there is a revised form of

25  order.  If I may approach, I can walk Your Honor through the

1  changes.

2          THE COURT:  I'll tell you what.  Before you do that,

3  I'd rather address this in the big picture.

4          MR. MERCHANT:  Sure.

5          THE COURT:  The Committee filed an omnibus objection.

6          MR. MERCHANT:  Yes.

7          THE COURT:  Obviously in a concern which is shared by

8  the Court, that the case not be suffocated by the weight of its

9  professional.  And that is not a criticism of any professional,

10  and I'm aware of the -- you know, the breadth of the company's

11  operations and the need for certain specialized assistance.

12          But give me the big picture on how this was resolved

13  with the various --

14          MR. MERCHANT:  Sure.

15          THE COURT:  -- proposed professionals.  And then --

16  and then we can deal with them on an individual basis.  And if

17  the Committee also wants to respond to that, I would appreciate

18  it.

19          MR. MERCHANT:  Sure.  Your Honor, we heard the

20  Committee's concerns, and it's a valid concern.  And I think

21  we've -- we've addressed that in two ways:

22          We've worked with the Office of the United States

23  Trustee and we've worked with the Committee to be very specific

24  in these orders as to the discreet matters that these

25  professionals will be working on.

1          In addition to that, we had a number of calls with

2    the Committee.  And as a result of those calls, in-house

3    counsel to New Century prepared a description of what each

4    professional is working on and a range of their anticipated

5    fees and costs with respect to the work that they will be

6    doing.

7          Based on that sort of fee forecast that we provided

8    to the Committee, they came back to us with proposed caps,

9    either monthly or case caps, or going forward caps with respect

10   to the work that those professionals will be working on based

11   on where the Committee views things as going.  We took those

12   caps to the professionals, and I think most of the orders that

13   you're going to see have caps.

14         So, now the Committee, you know, can rest assured

15   that absent us coming back to the Court, you know, the fees or

16   expenses for a certain professional will not exceed the capped

17   amount on a monthly or a case basis.  And that's how we've

18   resolved most of the concerns.

19         THE COURT:  All right.  Does the Committee wish to be

20   heard?

21         MR. INDELICATO:  Good morning, Your Honor.  Mark

22   Indelicato from Hahn and Hessen on behalf of the Committee.

23         Your Honor, let -- let me just take you back a step

24   and so you'll understand where the Committee came from.  The

25   Court asked before for an update on the management of the

1  debtor, and Ms. Uhland gave you a synopsis of where we are

2  today.

3         But what we didn't go through was the role that the

4  Committee has been playing.  The Committee is very concerned,

5  and you're going to hear that deemed throughout, with the costs

6  in the case and the costs associated with the professionals and

7  with the operations and with the debtors' management.  And so

8  we've been working with the debtor and Ms. Uhland and Ms. Etlin

9  to work down a wind down scenario and budget and procedure so

10 that we can control the cost.

11        When we -- when we looked at all of the

12 professionals that were being retained, the Committee had a

13 number of issues:

14        One is we have very reputable firms in -- in -- in

15 Ms. Uhland's and in RLF, why can't they do a lot of these

16 things?  And in that regard, we asked the debtors' in-house

17 counsel to provide us an analysis of what was being done, why

18 it needed to be done by this particular firm, and what the

19 costs would be.

20        And to the extent there was a firm that was doing --

21 winding down its operations, limiting its fees going forward,

22 or was related to an asset that was going to be recovered, the

23 Committee focused on that.

24        You -- there's going to be two items, Irell and

25 Manella and ICP, which the Committee hasn't yet really gotten

1  their hands around and become comfortable with the fees being

2  charged.

3         So, we're going to adjourn those and we'll get to

4  that and sort of maybe take those in steps and pieces and see

5  if we can resolve the Committee's concerns.  And if not, we'll

6  be back to the Court.

7         So, what we did is to the extent there was a finite

8  function, that they were providing either for the servicing of

9  the servicing platform or the sale of the assets, we defined

10 those -- the parameters, we asked them what they were going to

11 be going forward, and we put a monthly cap and an overall cap

12 on the fees.  So, that to the extent you're going to see -- and

13 there are a lot of firms being retained, but we felt with the

14 institutional knowledge that they had, and the caps that we put

15 in place, at least we felt, although we weren't thrilled with

16 the number of firms and the potential for the duplication of

17 efforts, we felt that we would put a harness around that with

18 the fee caps on a monthly basis and an overall cap.

19        So, that was the Committee's way of saying, okay, we

20 hear what the debtor is saying, we understand these -- these

21 firms have institutional knowledge, but we're just not going to

22 open the checkbook and let it, you know, every firm that wants

23 to get retained in this case be retained without some collars.

24 So, -- and we'll go through them more specifically as we go

25 through the individuals, but that was the parameters under

1   which the Committee's approached its objection and approached

2   the resolution.

3            THE COURT:  Thank you.

4            MR. INDELICATO:  You're welcome.

5            THE COURT:  Anyone else care to be heard

6   preliminarily?

7                   (No audible response heard)

8            THE COURT:  All right.  Let's proceed.

9            MR. MERCHANT:  And Mr. Indelicato is correct, we --

10  you know, we're only going forward today with respect to the

11  professionals where we were able to get them comfortable, and

12  we have an agreed form of order.  Wherever there's an

13  outstanding issue, we're going to continue that to a later

14  hearing and continue to work with them.

15           So, if I may approach, Your Honor, I have a clean and

16  a black line of the Sheppard Mullin order.

17           THE COURT:  I'll tell you what, can you give me --

18  give them all -- all to me together?

19           MR. MERCHANT:  Absolutely.

20           THE COURT:  Not that I want to deprive you of any

21  exercise, but maybe it's more efficient that way.

22           MR. MERCHANT:   I have separate folders for each

23  professional.  Each contains a clean, each contains a black

24  line.

25           THE COURT:  All right.  Thank you.

1          MR. MERCHANT:  If Your Honor looks at the black line

2  of the Sheppard Mullin order, the second so ordered paragraph

3  specifically defines the discreet matters that Sheppard Mullin

4  will be working on.

5          It also includes a monthly fee cap of twenty-five

6  hundred dollars for corporate matters on which they were

7  working on prior to the petition date.

8          The fourth so ordered paragraph, Your Honor, contains

9  a -- well, provides that the aggregate amount of fees from June

10  1st, 2007 going forward shall not exceed $35,000.  And that's

11  not inclusive of the twenty-five hundred dollar monthly cap on

12  the corporate matters.

13          Your Honor, I'll also point out that Sheppard Mullin

14  filed a supplemental affidavit of Mette Kurth addressing

15  certain conflicts and disclosure issues raised by the Office of

16  the United States Trustee.

17          That was filed late yesterday, Your Honor.  I do have

18  a copy, if Your Honor would like to view it.

19          THE COURT:  No, that won't be necessary.  All right.

20  Anyone else care to be heard in connection with this

21  application?

22          MR. INDELICATO:  Your Honor, Mark Indelicato from

23  Hahn and Hessen again.

24          And I just -- I think -- I'll say this once, and I

25  don't think we need to say it for each one.  But the Committee

1 has agreed to monthly caps and fee caps.  Obviously that's

2 subject to the Committee's review for reasonableness.  We have

3 put all of the professionals on warning that we want to make

4 sure there's no duplication of effort.

5          To the extent there are discreet matters that they

6 need to handle, they will be paid for it.  But -- but we are

7 going to look at these fee applications very carefully.

8          THE COURT:  Yeah, and I -- I'm still reviewing the

9 second set of recommendations for fee auditor in this case.

10 And I, hopefully within the next week, will have one appointed.

11          And I will ask the fee auditor to give particular

12 attention to possible duplication of services.  You know, not

13 just limited to when the lawyers are talking to each other, but

14 to anything else that might fall into that category.

15          MR. INDELICATO:  Thank you, Your Honor.

16          THE COURT:  All right.

17                    (Pause)

18          THE COURT:  That order has been signed.

19          MR. MERCHANT:  Thank you, Your Honor.  The next

20 application, Agenda Item 18, is the application to retain

21 Manatt, Phelps and Phillips, LLP as special securitization

22 counsel to the debtors.

23          Their work includes reviewing and analyzing the

24 agreements under which mortgage loan servicing is performed for

25 loans owned by Securitization Trust and other third persons,

1 and interfacing with bankruptcy counsel regarding the

2 aforementioned contracts and industry practice relating to such

3 contracts, and providing advice and services relating to the

4 sale of such assets in connection with these Chapter 11 cases.

5          Again, we've revised the order to address concerns

6 raised by Office of the United States Trustee and the

7 Committee.

8          THE COURT:  Does anyone else care to be heard in

9 connection with this application?

10              (No audible response heard)

11          THE COURT:  I hear no response.

12                  (Pause)

13          THE COURT:  That order has been signed.

14          MR. MERCHANT:  Thank you, Your Honor.  Agenda Item

15 Number 19 is the application to retain ICP Consulting.  Your

16 Honor, we have continued this to the omnibus hearing scheduled

17 for June 27th at 10 A.M.

18          Agenda Item 20 is the Committee's application to

19 retain Hahn and Hessen.  Your Honor, that was mistakenly put on

20 the agenda.  I believe it was approved at the last hearing.

21 So, we've strucken it from the amended agenda.

22          THE COURT:  All right.

23          MR. MERCHANT:  Agenda Item 21 is the stay relief

24 motion filed by Midfirst Bank.  I don't believe there have been

25 any objections filed to that, but I can cede the podium to

1  Midfirst Bank's counsel.

2            THE COURT:  All right.

3                      (Pause)

4            THE COURT:  Apparently not.  I didn't see a form of

5  order in the papers.  Is there one somewhere?  Did I just miss

6  it?

7            MR. MERCHANT:  I honestly don't recall, Your Honor.

8  It's not our motion, but I don't think our client has a problem

9  with the relief requested in the motion.

10            THE COURT:  All right.  Well, will you follow-up with

11  movant's counsel then?

12            MR. MERCHANT:  I will.

13            THE COURT:  All right.

14            MR. MERCHANT:  I will.  Agenda Item 22 is the

15  application to retain Irell and Manella.  Your Honor, this is

16  another application where we're still working with the

17  Committee.  We'd like to continue this to a further date.

18            Irell and Manella has -- has asked -- they've

19  inquired as to whether there's a possibility of the application

20  being continued to the June 21st hearing.  That's not an

21  omnibus date.  It's a special hearing.  I think there's one

22  motion on for that hearing at this point.

23            THE COURT:  That's fine.

24            MR. REISNER:  Thank you, Your Honor.

25            MR. POWER:  Your Honor, Mark Power from Hahn and

1  Hessen.

2          That motion's going to move to the 27th.  So, this

3  would be the only thing on for the 21st.  And respectfully, you

4  know, we'd prefer if it could move to the 27th because --

5          THE COURT:  I thought that other matters was still

6  on.

7          MR. POWER:  We're --

8          THE COURT:  But that's going to be moved?

9          MR. POWER:  I'm going to tell you a little bit, we're

10  going to move that to the 27th.

11          THE COURT:  Okay.  Then, yes, let's move this matter

12  to the 27th, as well.

13          MR. POWER:  Maybe counsel could appear by phone if

14  that's necessary.

15          THE COURT:  Yes, that's fine with me.

16          MR. REISNER:  Your Honor, this is Jeffrey Reisner of

17  Irell and Manella.

18          THE COURT:  Yes.

19          MR. REISNER:  We appreciate the Court's calendar and

20  related issues.

21          We also should report to the Court that we have an

22  agreement with the Committee that in the event that our

23  application's ultimately disapproved by the Court, that we will

24  be -- that we will be entitled to fees subject to

25  reasonableness, of course, through the date that the Court

1  makes that decision.

2          The reason that's very important is Irell continues

3  to actively assist the debtor with respect to defense of the

4  WARN Act litigation and with respect to certain employee

5  benefit matters.  That assistance is needed now.  It's been on

6  -- it's been ongoing.  And it's the only way to really prevent

7  further prejudice potentially to Irell.

8          MR. INDELICATO:  Your Honor, this is Mark Indelicato

9  from Hahn Hessen again.

10         They are correct.  We had a discussion last night.

11 When we were unable to come to a resolution on the overall

12 retention application, what I did commit to them is to the

13 extent they've incurred fees that are reasonable and necessary

14 and to protect the estate, particularly even for the adjourned

15 hearing, that to the extent ultimately the application is not

16 allowed, subject to the reasonableness, we would not oppose the

17 payment of their fees just because their ultimate application

18 was not approved.

19         We do have some concerns, again, and this is one.

20 And we've addressed our concerns with them.  We're going to try

21 and they're going to provide us with information to give us

22 budgets on a piecemeal basis for each stage of the litigation

23 so that we understand what the cost is going to be going

24 forward.

25         And we understand, and we think the Court

1 understands, that although there is a WARN Act litigation out

2 there, as WARN Acts are treated outside of bankruptcy, they are

3 treated much differently in bankruptcy, and we just want to

4 make sure that to the extent there is any liability, we're not

5 sure there is any, we use the estate funds to settle it as

6 opposed to litigate it and conserve estate assets.

7         So, that's really what we're focusing on with this.

8 We had told them, subject to the Court's calendar, we would try

9 and get it on next week because of their issue.  But we will

10 still commit to them that we will work next week to try and get

11 it resolved.  And if we come to a resolution, either we will

12 come back on the 27th and maybe submit it under certification

13 of counsel, whichever the parties agree.  But we have agreed

14 that their fees will be paid to the extent it's reasonable, and

15 we will work to come to some resolution on some discreet

16 budgets on the phases of the litigation.

17         THE COURT:  Thank you.

18         MR. McMAHON:  Your Honor, good morning.  Joseph

19 McMahon for the United States Trustee.

20         We are not taking the position with respect to Irell

21 and Manella's qualification to be employed.  That is whether or

22 not they hold an interest adverse and consistent with Section

23 327(e).  But the only, I guess, qualified objection that I

24 would have to the Committee's proposal is that in the event

25 that this Court were to find that there was a problem in that

1  regard, then I think that the -- I guess paying the -- Irell

2  and Manella for that stub period would become an issue.

3         I don't, you know, I guess, come to the podium to

4  create an issue, but just merely to identify our concern with

5  respect to the proposed resolution in that regard.

6         THE COURT:  All right.  Well, the Court need make no

7  ruling on that today.  And so I'll leave that to a later day.

8  All right.

9         MR. REISNER:  Your Honor --

10         MR. McMAHON:  Thank you.

11         MR. REISNER:  -- this is Jeffrey Reisner.  May I be

12  excused?

13         THE COURT:  You may.

14         MR. REISNER:  Thank you.

15         MR. MERCHANT:  Your Honor, Agenda Item Number 23 is

16  the application to retain Skadden Arps Slate Meagher and Flom,

17  LLP as special regulatory counsel.

18         Again, Your Honor, we've reached agreement and a

19  consensual form of order.  There are basically two changes to

20  the form of order:

21         The effective date of -- the retention has been

22  revised to April 16th, 2007 as opposed to the petition date.

23         And Skadden has agreed to an aggregate case cap of

24  $230,000 with the understanding that the cap will be revised if

25  litigation in connection with the regulatory action in the

1 State of Ohio is to heat up.

2         MR. INDELICATO:  The only point being, Your Honor, is

3 if it's revised, it's going to be revised subject to Court

4 order, and all parties reserve their rights to then reexamine

5 the issue.

6         THE COURT:  All right.  I do have a question or two

7 about this one.  And that is in light of the other

8 representations that the firm has in connection or related to

9 the bankruptcy, I'd like specifically to know what, if any,

10 other ongoing representations in connection with the bankruptcy

11 Skadden intends to maintain, other than the representation of

12 the debtor?

13         MR. INDELICATO:  Your Honor, I'll let Skadden answer

14 that question.  But I will tell the Court that this was an

15 issue that was of particular concern to the Committee.  And in

16 the interest of full disclosure, one of the members of the

17 Committee is represented by Skadden.  They were not involved in

18 the discussions, they did recuse themselves.

19         We have asked the question of whether appropriate

20 ethical walls have been established.  And we've been assured

21 that since the inception of the case and the inception of the

22 representations of the various parties, appropriate ethical

23 walls have been established.

24         We also spoke to the debtor about the need for

25 Skadden with respect to this item.  We have been assured by

1  debtors' in-house counsel that on these issues, not only has

2  Skadden been involved for some period of time, it has enormous

3  institutional knowledge, but that also they are the premier

4  experts on this issue in this area.

5          And that given the constraints of the budgets that

6  we've put in place, the debtors' representations, Skadden's

7  representations regarding the ethical walls, the Committee felt

8  is was the best use of the estate's funds to sort of let them

9  be retained to finalize what they're doing.  And then if

10  anything else comes up, we reserve the right to sort of

11  reexamine that.

12          THE COURT:  Very well.

13          MR. DAVIS:  Good morning, Your Honor.  Eric Davis

14  from Skadden Arps Slate Meagher and Flom LLP.

15          At this point, let me just explain the ethical walls

16  that we've created, Your Honor, and then with -- to your

17  pointed question, Mr. Baker represents McGuire, which is on the

18  Committee.  And Mr. Durrer, who's been before this Court

19  before, represents Ellington.

20          There is -- there was another purchaser that was

21  interested at one point, but I do not believe that's ongoing.

22  That was D.E. Shaw.  And the other representation in there that

23  was related to the case involved a former director of the --

24  the company.  But that is, again, not in connection with New

25  Century.  It's in connection with his involvement with some

1 Federal matters, and not -- not with respect to New Century.

2 It's not a representation of New Century or against New

3 Century.

4         We actually began the process back in March, Your

5 Honor, when we took on representations that would be related to

6 the New Century matter.  We created ethical walls within the

7 firm, specifically setting up teams that were divested from

8 each other.

9         The point about the Skadden representation in New

10 Century is only related to State Regulatory matters.  There

11 were I think, 12 matters in the beginning.  It's a very small

12 team out of -- out of D.C., and they have no involvement in the

13 bankruptcy case.  I'm the only actual bankruptcy attorney

14 involved on the New Century side, and that's just for retention

15 purposes.

16         Otherwise, there are no bankruptcy attorneys at

17 Skadden involved in the case and we're not providing any type

18 of advice with respect to the bankruptcy case.  It's all just

19 with respect to State Regulatory matters at this point.

20         THE COURT:  Well, are there -- for example, are there

21 any ongoing sale related representations?  And whether -- in

22 the pipeline or which have been approved or which have closed,

23 but which might require further or might give rise to further

24 regulatory issues?  See, one concern I have is you might be on

25 both sides of that fence.

1         MR. DAVIS:  We haven't been on both sides of that

2    mess at all.  I don't believe so.  The Ellington representation

3    is the only one that's actually before this Court with respect

4    to assets at this time.

5         I saw that -- again, I stayed so far apart from that

6    process that I just read in the DDR that there's going to be a

7    further sale of assets to Ellington of about four -- a little

8    over $4 million.  But there's no involvement at all -- no due

9    diligence or anything from the Skadden Arps team that handled

10   regulatory matters for New Century.  They're not asked by the

11   debtors to provide information.

12        What they do is they interact with the State

13   Regulatory agencies with respect to the origination business,

14   and they're not involved in the asset process at all in that

15   end.

16        THE COURT:  All right.

17        MR. DAVIS:  So, there's no both sides of the issue,

18   Your Honor, on that.

19        THE COURT:  All right.  Or in connection with any

20   other matter.

21        MR. DAVIS:  Not that I'm aware of.

22        THE COURT:  All right.

23        MR. POWER:  Your Honor, it's Mark Power from Hahn and

24   Hessen, counsel for the Committee.

25        I should mention, Skadden definitely is involved I --

1  with buyers and potential buyers of asset sales that are

2  currently before the Court, and that will be going forward.  I

3  am not aware of any regulatory matters in connection with those

4  asset sales that they would then be representing the debtor on

5  the other side.

6          I should also report that the sale that Ellington did

7  prevail on which was the 170 million LNFA's.  Previously taken

8  out of that sale were the Ohio based loans that were not

9  purchased by Ellington.  And Skadden, on behalf of the debtor,

10  is assisting the debtor in the regulatory matters in Ohio.

11          So, I believe that issue, which clearly would have

12  been a conflict, I think, from the Committee's point of view,

13  and probably from the Court's, has been separated because

14  Ellington basically carved that out of what they acquired.  So,

15  they're not on both sides of that transaction.  And that's the

16  only one that I'm aware of, which would have that kind of

17  problem.

18          THE COURT:  All right.

19          MR. DAVIS:  And just to be totally clear, we're not

20  going to be on both sides of any transaction with respect to

21  regulatory matters, Your Honor.

22          The -- the lawyers involved out of D.C. are not

23  involved in M and A transactions.  They are regulatory

24  attorneys handling State Regulatory matters with respect to

25  doing business in particular jurisdictions.  They're not

1  involved in drafting A.P.'s or anything along that line.

2          THE COURT:  All right.  Thank you, Mr. Davis.  Mr.

3  McMahon?

4          MR. McMAHON:  Your Honor, we had a -- a discussion

5  with Skadden regarding the very issue that you -- the Court

6  identified with respect to the conflict concern.

7          And after speaking with Skadden, reviewing the

8  application, and considering, I guess, the -- what the

9  possibilities would be if we were to raise that issue

10  specifically with the Court, we did arrive at a -- some -- a

11  resolution, in part, with Skadden reflected in the start date

12  for the employment.  There are economic consequences to that.

13  And I just wanted to note that for the Court.

14          THE COURT:  All right.  Thank you.  Does anyone else

15  care to be heard in connection with this application?

16          MS. UHLAND:  Your Honor, just briefly.  Skadden

17  reflected that they were involved in the regulatory matters for

18  the loan origination platform.  But because they're also, in

19  effect, involved in all of the regulatory matters, in effect,

20  for the servicing licenses, and as the Court knows, we are --

21  we are planning to have a transition services arrangement with

22  Carrington, so the maintenance of these -- this ability to

23  service our loans is critical, and that's one of the reasons

24  the debtors and the Creditors' Committee are so -- feel it's so

25  important that we continue this retention.

1          THE COURT:  All right.  Thank you.

2                    (Pause)

3          THE COURT:  That answers my questions.  The order has

4  been signed.

5          MR. MERCHANT:  Thank you, Your Honor.  The next

6  matter on the agenda is Agenda Item Number 24, it's the

7  application to retain Howrey LLP, special outside counsel to

8  the Special Investigative Committee, Subcommittee of the Audit

9  Committee of the Board of Directors.

10          Again, we've revised the form of order to address

11  certain issues raised by the Office of the United States

12  Trustee and the Committee.  I'm happy to walk Your Honor

13  through those changes.

14          THE COURT:  If you would.

15          MR. MERCHANT:  If Your Honor looks at the third so-

16  ordered paragraph, it makes clear that the compensation to be

17  paid to Howrey is subject to the applicable sections of the

18  Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any

19  administrative order of this Court.

20          The fourth so ordered paragraph, Your Honor, makes

21  clear that to the extent the debtors seek to retain either of

22  the professionals mentioned in Paragraph 3 of the retainer

23  agreement, and those are entities related to Howrey, the

24  debtors will file further applications with the Court.  And I

25  don't think there's any anticipation that we will be seeking to

1  retain those professionals.

2          If Your Honor looks at the fifth so ordered

3  paragraph, it makes clear that the debtors are not waiving any

4  future undisclosed connections Howrey may have with any

5  interested party.

6          The sixth so ordered paragraph makes clear that the

7  Court shall have jurisdiction over any issues relating to

8  Howrey's employment or compensation.

9          And the seventh so ordered paragraph provides a

10 $25,000 aggregate cap for all fees incurred from June 1st, 2007

11 going forward.

12         THE COURT:  Does anyone else care to be heard in

13 connection with this application?

14         MR. INDELICATO:  Your Honor, both with respect to

15 Howrey and Hillarim (phonetic), and which we'll hear from

16 later, these are counsel that was retained by the debtors -- of

17 the Board of Directors Audit Committee to conduct a special

18 investigation.  Howrey was conducted for a very specific person

19 -- to investigate a very specific issue and individual.

20         The Committee agreed to the increase in cap, the

21 $25,000, reluctantly.  But the reason they agreed it is

22 apparently we've been informed that they haven't made their

23 presentations yet, and they're going to make their

24 presentations to the Board and to the Committee and to the

25 Examiner, and that's why we've agreed to it.

1          But with respect to both of them, and we've made this

2    point to the debtor, and we'd like to make it to the Court is

3    that our view is that the Audit Committee has done their job.

4    They are needed to transfer the information to the Examiner.

5    To the extent the Audit Committee believes there is any

6    additional investigations going forward, the Committee would

7    object to that unless we had consented to it, and maybe the

8    Examiner is required to consent, as well, and bring it to this

9    Court.

10          So, we have agreed to it, and we've dealt with that

11    in the orders in the caps.  But that's really our concern with

12    those -- those entities going forward.

13          THE COURT:  Thank you.

14          MS. UHLAND:  And just to confirm, Your Honor, from

15    the debtors' point of view, we completely agree with the

16    Committee.

17          Our view is that the Audit and the -- the Special

18    Investigation Committee and this additional Subcommittee should

19    report to the Committee at this point exactly where they are,

20    what their work product is, and if the Committee and the

21    Examiner collectively feel that in the cost benefit -- on a

22    cost benefit basis it makes more sense for them to complete

23    something, and they all agree on that, then that's appropriate.

24    And otherwise, the goal is to, in effect, transition --

25    transition this to the Committee and the examiner.

1          THE COURT:  All right.  Thank you.

2                    (Pause)

3          THE COURT:  The order's been signed.

4          MR. MERCHANT:  Tank you, Your Honor.  I believe the

5    last retention application today is the application to retain

6    Grant Thornton, LLP as tax accountant for the debtors.

7          The Office of the United States Trustee did file a

8    formal objection to the application.  The issues raised by the

9    Office of the United States Trustee have been revised to -- a

10   revised -- have been addressed through a revised form of order

11   and the filing of a supplemental affidavit.

12         I can walk Your Honor through the changes to the form

13   of order.

14         THE COURT:  Yes, please.

15         MR. MERCHANT:  Most of the changes are in Paragraph 3

16   to the order, Your Honor.

17         With respect to the tax compliance services,

18   Paragraph 2 of the Attachment A in their engagement letter will

19   be deleted in its entirety.  And that relates to

20   indemnification and limitation of liability provisions.

21         With respect to tax consulting services, Paragraphs

22   2A and 2C of Attachment A will be deleted in their entirety.

23         And Paragraph 2B will be modified by the language

24   contained in the order, which basically subjects those

25   provisions to the Planet Hollywood language.

1          In addition to those changes to your order -- to the

2  order, Your Honor, we've also filed a supplemental affidavit of

3  Donald Dahl, which attaches a payment run for the 90 days

4  preceding the petition date, and sets forth the agreement of

5  Grant Thornton to pay back $6,770 relating to an invoice that

6  the United States Trustee believes is arguably preferential.

7          The affidavit also contains the agreement of Mr. Dahl

8  to waive any claim relating to that repaid amount.

9          THE COURT:  All right.

10         MR. MERCHANT:  And I believe that addresses all of

11  the U.S. Trustee's concerns, Your Honor.

12         THE COURT:  Does anyone else care to be heard in

13  connection with this application?

14              (No audible response heard)

15         THE COURT:  I hear no response.  I've reviewed it.

16  And based upon the changes that have been made, have no

17  questions.

18         MR. MERCHANT:  Thank you, Your Honor.

19         THE COURT:  Other than I don't know why I keep seeing

20  applications that parties know I'm not going to approve over

21  the objection of the U.S. Trustee that have these provisions in

22  them.

23         MR. MERCHANT:  I understand, Your Honor.  A number of

24  those engagement letters were entered into pre-petition before

25  we had an opportunity to voice our opinions.  So --

1              THE COURT:  All right.

2              MR. MERCHANT:  We knew there were issues, and we

3    worked with the U.S. Trustee on them.

4              THE COURT:  Thank you.

5              MR. MERCHANT:  Agenda Item Number 26, Your Honor, is

6    the motion of GECC for relief from stay.  We've continued that

7    to the June 27th hearing.

8              THE COURT:  All right.

9              MR. MERCHANT:  And Agenda Item Number 27 is the

10   motion of Daniel J. Rubio and others for relief from stay.  And

11   I believe there may be some form of agreement on a continuance

12   there, but I will cede the podium to my colleague, Mr.

13   Silberglied, and the movant, to address those issues.

14             THE COURT:  Very well.

15             MS. BIFFERATO:  Good morning, Your Honor.  Karen

16   Bifferato on behalf of the Rubio plaintiffs.  I wanted to

17   introduce my co-counsel, Jim Trush from the Trush Law Firm.

18   He's previously in this case been admitted pro hac vice.

19             THE COURT:  Welcome.

20             MR. TRUSH:  Good morning, Your Honor.  James Trush of

21   the Trush Law Office, counsel in the Rubio action in the

22   Central District of California, and appearing here pro hac

23   vice, along with co-counsel, Karen Bifferato.

24             MR. SILBERGLIED:  Your Honor, for the record, Russ

25   Silberglied, Richards Layton and finger.

1          We -- I hate to do this after Your Honor has prepared

2    for the hearing.  Um -- uh -- while the hearing had already

3    started this morning, we were made a settlement proposal --

4    settlement, not on the case itself, but on the stay relief

5    motion.

6          I have no authority whatsoever to accept that stay

7    relief motion.  It's not even business hours in California yet.

8    I haven't talked to the Creditors' Committee about the

9    proposal.

10          I don't know whether it's something that we will

11    entertain or not, but at the minimum, it makes sense to

12    continue the hearing so we could consider this and talk to our

13    client and talk to the Creditors' Committee about it.

14          We don't like to do that anymore because I actually

15    have a witness here who was ready to go and came in from

16    California, but with Your Honor's permission, we would put this

17    over to the hearing on the 27th.

18          THE COURT:  All right.  Does anyone else care to be

19    heard on this request?

20               (No audible response heard)

21          MR. SILBERGLIED:  The stay will stay in effect

22    pursuant to this agreement until we've considered this, talked

23    to the Creditors' Committee, and come back to the Court either

24    way.

25          MR. TRUSH:  Your Honor, James Trush for the movants.

1 We had a couple details of the continuance proposal that may be

2 appropriate for putting on the record.  We had proposed that

3 Mr. Silberglied's witness provide us with a proffered testimony

4 so that if we could potentially stipulate to that and the

5 witness wouldn't have to come back next time.

6        And the other proposal was I think we agreed that

7 there weren't going to be any further response or opposition

8 filed by the debtor in advance of the next time that this

9 matter's heard if it's not settled prior to that.  I believe

10 that was our agreement.

11        MR. SILBERGLIED:  Well, I certainly agree to the

12 latter, and it's in compliance with the Local Rules, which

13 don't permit me to file a surreply.  So, we had no intention of

14 doing so.

15        With respect to the former in providing him with

16 proposed proffered testimony, I think I said I'd consider it.

17 I'm not sure I agreed to it.

18        THE COURT:  Well, sounds like you did --

19        MR. SILBERGLIED:  Certainly if we can stipulate the

20 facts, we would like to do so.

21        THE COURT:  Sounds like you didn't agree to it yet.

22        MR. SILBERGLIED:  Yes.  We would certainly like to

23 agree to stipulate to facts, if possible.  But how much we're

24 going to do so, I -- we have not yet determined.

25        THE COURT:  Yeah.  And I'd prefer not to get into

1  evidentiary presentations now, especially if he who is offering

2  the witness isn't inclined to do so.

3           All right.   Thank you.

4           MR. SILBERGLIED:   Thank you, Your Honor.

5           THE COURT:   Put it over to the 27th.

6           MR. MERCHANT:   Your Honor, Agenda Number 28 is the

7  omnibus relief from stay motion filed by the law office of

8  David J. Stern, P.A.   This matter was continued from the last

9  omnibus hearing.

10          I -- I believe movant's counsel is on the phone.   But

11 I can report that they provided us with information in advance

12 of the last hearing.   We took that information back to our

13 client.   My client has informed me that we have no objection

14 to the requested stay relief with respect to any of the 206

15 loans.

16          So, we would be fine with movant submitting a form of

17 order under certification of counsel.

18          THE COURT:   All right.

19          MR. DISPIGNA:   Frederic Dispigna, Your Honor, on

20 behalf of the movant.

21          THE COURT:   Yes, do you wish to be heard?

22          MR. DISPIGNA:   No, that's fine.

23          THE COURT:   All right.

24          MR. DISPIGNA:   I'll -- I'll have a -- a proposed

25 order by, uh, Mr. Merchant.

1             THE COURT:  Very well.  Thank you.

2             MR. DISPIGNA:  Thank you.  May I be excused?

3             THE COURT:  Yes.

4             MR. INDELICATO:  Your Honor, that --

5             THE COURT:  Oops.  That -- I'm sorry.

6             MR. INDELICATO:  Too quick.  That's all right.  Your

7     Honor, the only thing the Committee would request if the debtor

8     has done an analysis, if they would just share that with the

9     Committee so that we are comfortable that they have no interest

10    in any of the 260 (sic) loans, then we could, you know, consent

11    to the entry of the order.  But we haven't seen their analysis,

12    so we'd like to see that before we make a determination.

13            THE COURT:  All right.

14            MR. INDELICATO:  Thank you.

15            MR. MERCHANT:  Your Honor, Agenda Item Number 29 is

16    the adequate protection motion.  That was continued to the

17    hearing on the 21st.  But I believe Mr. Power has indicated

18    that that's going to be continued to the omnibus date scheduled

19    for the 27th.

20            MR. POWER:  Good morning, Your Honor.  Mark Power

21    from Hahn and Hessen.

22            I'm shocked we're going to be done today on Friday by

23    11, I think.  But this matter, Your Honor, is a moving target.

24    We have been in -- the debtor and the Committee have worked

25    closely.  But we did provide counsel for a number of the

parties involved in this a draft order. They have given back --
they have worked together actually and assisted us in giving
back collective comments on that order which were extensive and
we got that back a few days ago.

Given the amount of parties involved and the amount
of issues involved, and the logistics of the parties, what
we've decided to do is the debtor and the Committee have
committed to provide these parties a response to that order on
Monday -- by Monday.

And the -- we're trying to save the Court and all the
parties a tremendous amount of expense dealing with the tracing
issues that are involved in this matter, which can be
tremendous, by trying to work with the debtors to have can be
produced and what's feasible.  And we've had some productive
conversations in that regard with debtors' counsel and
Committee's counsel and some of the people.

We would anticipate trying to work through a
consensual order next week.  We decided -- originally we were
going to go to the 21st for this continued hearing.  But when
we looked at the logistics, we decided it was more practical to
put this on for the 27th.

I have been in communication with all the counsel and
basically advised them of this and I am not aware of anybody
objecting to the adjournment to the 27th of this matter.

We will -- the debtor has agreed and the Committee

1  has agreed to certain conditions as a part of that adjournment:

2          First, that this does not end up pushing off the

3  reconciliation deadline of June 29.  In other words, we

4  originally advised your Court that we were going to try to --

5  the debtor was going to try to get the reconciliations done,

6  and the Committee review it.  We're going to stick with that

7  deadline.

8          Second, the Committee and the debtor have agreed that

9  when the for Carrington closes, funds will be escrowed from

10 that.  And we will continue to agree to that, we're not

11 changing our position.

12         So, when that sale, which is scheduled to close

13 before the end of June, those monies will be escrowed, if not

14 sooner.  Depending on what happens in the case.

15         Third is we've committed to certain deadlines to try

16 to move this forward, and we've done that.  And I think we're

17 going to try to have a meeting next week in New York and then

18 hopefully resolve it.

19         The fourth item, Your Honor, is if the parties do

20 have a consensual order that everyone can agree to, and we can

21 submit a certification, we will try to do that by the end of

22 next week.  And, therefore, not need a hearing before Your

23 Honor on the 27th, God willing.  But we're working towards that

24 goal.

25         I should give Your Honor forewarning, and this is a

1   moving target.  But the order basically provides for the escrow

2   and the adequate protection.  Provides for the production of

3   information to the parties.  And then in essence, the parties

4   have a period to come back and respond and try to work out

5   those issues so we don't litigate over, you know, thousands of

6   entries and back accounts.

7        And then the parties are supposed to have a stay

8   period in which they will try to meet, lay out the legal

9   positions of everybody and see if they can resolve the matter

10   consensually before we get into the next round, which would

11   either be litigation or some form of alternative dispute

12   resolution mechanism.

13        We haven't agreed to that now.  So, what we've agreed

14   to is stay everything.  Everybody will freeze.  And then we'll

15   see where we go.

16        I should mention also, not to -- UBS is part of these

17   discussions.  They have a separate piece, but it's related to

18   this.  And they have been intimately involved in the whole

19   negotiation.  So, it may be that we can fold all that in.

20        So, that's an update I've -- I told counsel that I

21   would provide the Court.  And that's why we were happy to tell

22   the Court we don't think we'll need the hearing for the 21st,

23   so Your Honor can mark that off the calendar, and we'll move it

24   to the 27th.

25        THE COURT:  Very well.  Thank you.

1        MR. MERCHANT:  Your Honor, I believe that's all we

2  have for today.  Agenda Item Number 30 has also been continued

3  to the hearing on the 27th.  So, there's nothing further.

4        THE COURT:  All right.  Well, given how the 27th is

5  shaping up, anybody have any notion of what kind of time you

6  will need on that day.  I know that there are things which are

7  in process, which may affect the answer, but just as an initial

8  matter.

9        MS. UHLAND:  Your Honor, I think we're going to

10  require substantial time.  If the Rubio motion goes forward,

11  that's an evidentiary matter.  I would say hour and a half.

12        We've moved the technology sale motion.  There's a

13  number of contracts to be signed there.  So, there could be --

14  I think it's been taking us an hour and a half to two hours,

15  kind of on average on our record on that.  And then this

16  adequate protection matter based on preference agreements is

17  another --

18           (Attorneys conferring off-the-record)

19        MS. UHLAND:  -- another transact -- another hour and

20  a half.  And then we have a further asset sale motion that we

21  sought on shortened time.

22        THE COURT:  All right.

23        MS. UHLAND:  So, we're starting at ten, aren't we?

24        THE COURT:  Yes, we are.

25        MS. UHLAND:  Oh, good.  Okay.

50

1          THE COURT:  And I've scheduled nothing else.

2          MS. UHLAND:  All right.  Thank you, Your Honor.

3          THE COURT:  All right.  Anything further for today?

4               (No audible response heard)

5          THE COURT:  Thank you, all.  That concludes this

6  hearing.  Court will stand in recess.

7          (Proceedings Adjourn at 10:59 A.M.)

8

9

10               C E R T I F I C A T I O N

11

12     I, Karen Hartmann, certify that the foregoing is a

13  correct transcript to the best of my ability, from the

14  electronic sound recording of the proceedings in the above-

15  entitled matter.

16

17   /s/  Karen Hartmann                Date:  June 24, 2007

18  TRANSCRIPTS PLUS

19

20

21

22

23

24

25