**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION**

**THIS EXTENSION OF CREDIT HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION**

## 2 YEAR RATE LOCK
# TEXAS HOME EQUITY
# FIXED/ADJUSTABLE RATE NOTE
## [LIBOR 6 Month Index (As Published in The Wall Street Journal) - Rate Caps]
### (First Lien)

Loan No.:    **0001086187**

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST
RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY
ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

Place of Execution:

**October 27, 2003**          **ODESSA**                          **TEXAS**
[Date]                        [City]                             [State]
**4214 STILLWOOD LANE, ODESSA, TX 79762**
[Property Address]

NOTE

### 1.    BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $    **70,400.00** (this amount is called "Principal"), plus interest, to the order of the Lender.    Lender is

**NEW CENTURY MORTGAGE CORPORATION**

I will make all payments under this Note in the form of cash, check or money order. I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

### 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **9.8500** %. The interest rate I will pay may change in accordance with Section 4 of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Initials: ⬤

3. **PAYMENTS**

   (A) **Time and Place of Payments**

   I will pay principal and interest by making a payment every month.

   I will make my monthly payments on the first day of each month beginning on **December 1** , **2003** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2033** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at **18400 VON KARMAN, SUITE 1000 IRVINE, CA 92612**
   or at a different place if required by the Note Holder.

   (B) **Amount of My Initial Monthly Payments**

   Each of my initial monthly payments will be in the amount of U.S. $  **610.03** . This amount may change.

   (C) **Monthly Payment Changes**

   Changes in my monthly payment will reflect changes in the unpaid principal of the Extension of Credit and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (A) **Change Dates**

   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **November** , **2005** and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

   (B) **The Index**

   Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) **Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding    **Six** percentage point(s) (  **6.0000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

   (D) **Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Change Date will not be greater than  **11.3500** % or less than  **9.8500** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one and one half percentage points from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than  **16.8500** % or less than  **9.8500** %.

   (E) **Effective Date of Changes**

   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   (F) **Notice of Changes**

   The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Texas Home Equity Adjustable Rate Note
NCMC
(LIBOR 6 Month)(Cash Out - First Lien)
RE-210

Initials: _____

(Page 2 of 5 pages)

0001086187

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates or amounts of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES AND FEES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Pepayment. **My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document related to this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement, if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 6 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

Initials: _(illegible) DR_

0001086187

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 9 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond or deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _[handwritten initials]_

12.    **APPLICABLE LAW**

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

13.    **NO ORAL AGREEMENTS**

**THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**


WITNESS THE HAND(S) OF THE UNDERSIGNED.


**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

| | | | |
|---|---|---|---|
| _Veronica L Rodriguez_ | | _David Rodn_ | |
| VERONICA L. RODRIGUEZ | Borrower | DAVID RODRIGUEZ | Borrower |
| | | | |
| | Borrower | | Borrower |

Return To:

**NEW CENTURY MORTGAGE CORPORATION**
**18400 VON KARMAN, SUITE 1000**
**IRVINE, CA 92612**

This is a true and
certified copy.

By_____

Prepared By:

**NEW CENTURY MORTGAGE CORPORATION**
**18400 VON KARMAN, SUITE 1000**
**IRVINE, CA 92612**

———————————— [Space Above This Line for Recording Data] ————————————

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **October 27, 2003**
together with all Riders to this document.
**(B) "Borrower"** is
**VERONICA L. RODRIGUEZ    AND DAVID  RODRIGUEZ  , WIFE AND HUSBAND**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is
   **NEW CENTURY MORTGAGE CORPORATION**
Lender is a **CORPORATION**
organized and existing under the laws of  **CALIFORNIA**

**0001086187**
**TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**
-8036(TX) (0010)
        **Form 3044.1 1/01**
Page 1 of 17        Initials: _____
   VMP MORTGAGE FORMS - (800)521-7291

CMTG

Lender's address is **18400 VON KARMAN, SUITE 1000**
**IRVINE, CA 92612**
Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
**ELDON L. YOUNGBLOOD**                                      . Trustee's address is

**1700 PACIFIC AVENUE, SUITE 4100, DALLAS, TEXAS 75201**
(E) "Note" means the promissory note signed by Borrower and dated **October 27, 2003**                    .
The Note states that Borrower owes Lender **Seventy Thousand, Four Hundred and No/100 ----**
**----------------------------------------------** Dollars
(U.S. $ **70,400.00**              ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2033**                    .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Extension of Credit" means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Texas Home Equity Condominium Rider        ☒ Other:
☐ Texas Home Equity Planned Unit Development Rider.  **Texas Home Equity ARM Rider**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**0001086187**

●-8036(TX) (0010)            Page 2 of 17          DiR●:●●●      **Form 3044.1 1/01**

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the **COUNTY** of **ECTOR** :

[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

BEING LOT 7, BLOCK 12, FAIR OAKS ADDITION, 3RD FILING, AN ADDITION TO THE CITY OF ODESSA, ECTOR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN VOLUME 13, PAGE 32, PLAT RECORDS ECTOR COUNTY TEXAS.

Parcel ID Number: **R15098**                                              which currently has the address of
**4214 STILLWOOD LANE**                                                                          [Street]
**ODESSA**                                                        [City], Texas **79762**          [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

        Borrower and Lender covenant and agree as follows:

        **1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may

**0001086187**

-8036(TX) (0010)                    Page 3 of 17           Initials: _____     Form 3044.1  1/01



require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish

to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails

0001086187

Initials:

-8036(TX) (0010)     Page 8 of 17     Form 3044.1  1/01

to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). **Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, with any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials:

0001086187

Form 3044.1  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in

in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of. any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____          _____ (Seal)
                                   VERONICA L. RODRIGUEZ    -Borrower

_____          _____ (Seal)
                                   DAVID   RODRIGUEZ        -Borrower

_____ (Seal)    _____ (Seal)
                -Borrower                             -Borrower

_____ (Seal)    _____ (Seal)
                -Borrower                             -Borrower

_____ (Seal)    _____ (Seal)
                -Borrower                             -Borrower

0001086187

**STATE OF TEXAS**
County of    ECTOR

Before me    *Diana Woodruff*    on this day personally appeared

VERONICA L. RODRIGUEZ and DAVID RODRIGUEZ

known to me (or proved to me on the oath of _____
or through DL *Driver's License* ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this *27th* day of *Oct* *2003*

(Seal)

_____
Notary Public



DIANA WOODRUFF
Notary Public, State of Texas
My Commission Expires 8-21-2007

My Commission Expires:

Initials: ___    **0001086187**

                    **Form 3044.1  1/01**

-8036(TX) (0010)                Page 17 of 17

**THIS EXTENSION OF CREDIT HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION**
**2 YEAR RATE LOCK**

Loan No.:   **0001086187**

# TEXAS HOME EQUITY
# FIXED/ADJUSTABLE RATE RIDER

**[LIBOR 6 Month Index (As Published in The Wall Street Journal) - Rate Caps]**
**(First Lien)**

THIS TEXAS HOME EQUITY FIXED/ADJUSTABLE RATE RIDER is made this **27th** day of **October** , **2003** and is incorporated into and shall be deemed to amend and supplement the Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's Texas Home Equity Fixed /Adjustable Rate Note (the "Note") to **NEW CENTURY MORTGAGE CORPORATION** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**4214 STILLWOOD LANE, ODESSA, TX  79762**
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of   **9.8500%**. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of   **November** , **2005**   and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Initials: _____

Texas Home Equity Fixed/Adjustable Rate Rider
NCMC
(LIBOR 6 Month Index)(Cash Out - First Lien)
RE-2111 (0101)

(Page 1 of 2 pages)

0001086187

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage point(s) ( **6.0000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0. 125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.3500** % or less than **9.8500** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one and one-half percentage point(s)( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **16.8500** %, or less than **9.8500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Texas Home Equity Fixed/Adjustable Rate Rider.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____          _____
VERONICA L. RODRIGUEZ (Borrower)          DAVID RODRIGUEZ        (Borrower)

_____          _____
(Borrower)                                (Borrower)