# EXHIBIT B

**(Blackline)**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| **NEW CENTURY TRS HOLDINGS,** | : | Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,[1]** | : |  |
|  | : | Jointly Administered |
|  | : |  |
| Debtors. | : | Re: Docket No. ⎯1064 |
|  | : |  |

## ORDER (A) APPROVING THE SALE OF CERTAIN TECHNOLOGY ASSETS, (B) APPROVING AND ESTABLISHING PROCEDURES RELATED TO THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, (C) AUTHORIZING THE SALE OF CERTAIN LOAN AND BROKER DATA AND (CD) GRANTING RELATED RELIEF

This matter coming before the Court on the Motion of the Debtors and Debtors in

Possession Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy

Rules 2002, 6004, 6006 and 9014 for an Order (A) Approving the Sale of Certain Technology

Assets, (B) Approving and Establishing Procedures Related to the Sale and the Assumption and

Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and

(C) Granting Related Relief (the "Motion"); the Court finding that (a) the Court has jurisdiction

over this matter pursuant to 28 U.S.C. sections 157 and 1334, (b) this is a core proceeding

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Purchasers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

pursuant to 28 U.S.C. section 157(b)(2), (c) notice of this Motion having been provided to, *inter alia*, the Office of the United States Trustee for the District of Delaware, counsel to the Official Committee of General Unsecured Creditors, and all parties who have timely filed requests for notice under Bankruptcy Rule 2002, and (d) capitalized terms not otherwise defined herein have the meanings given to them in the Motion; and the Court having determined that due notice of the Motion and Hearing have been given and no other or further notice need be given, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

pursuant to 28 U.S.C. section 157(b)(2), and (c) notice of this Motion having been provided to,

inter alia, the Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee"), counsel to the Official Committee of General Unsecured Creditors (the "Committee"),

and all parties who have timely filed requests for notice under Bankruptcy Rule 2002; the

Debtors, after consultation with the Committee, having decided in their business judgment not to

sell pursuant to the Motion the Debtors' data centers or any computer equipment contained

therein (the "Data Centers and Equipment"), but to go forward with the auction for the sale of

the Debtors' (i) proprietary software, intellectual property and computer software codes and data

used in connection with its wholesale loan origination business (the "Technology Assets"), (ii)

broker data ("Broker Data"), and (iii) loan performance data and attributes thereto presented in a

merged format (the "Loan Data" and, together with the Technology Assets and the Broker Data,

the "Assets"); the Debtors having received three bids from financially qualified bidders for the

Technology Assets and the Broker Data and/or the Loan Data from (i) EquiFirst Corporation, an

affiliate of Barclays Bank, PLC ("EquiFirst"), (ii) Wachovia Bank, N.A. ("Wachovia"), and (iii)

RMC Asset Acquisition LLC ("RMC", collectively with EquiFirst and Wachovia, the "Qualified

Bidders"), an affiliate of Citadel Investment Group, L.L.C.; and separate offers, either on an

exclusive or non-exclusive basis, from other bidders to only purchase either or both of the

Broker Data and Loan Data; and the Debtors, after consultation with their professionals and the

Committee and its professionals, having determined that, after certain clarifying changes to such

bids, to proceed with the auction sale on June 22, 2007 (the "Auction") based on the bids

received from EquiFirst, Wachovia and RMC; the Debtors, after consultation with the

Committee, having determined that the opening bid of EquiFirst was the highest and best initial

bid at the inception of the Auction and having advised the Qualified Bidders of that

RLF1 315936431712112-26

determination at the Auction; and the Debtors' investment banking firm, Lazard Freres & Co., having then conducted the Auction; and the Debtors (after consultation with the Committee), after the submission of multiple rounds of bidding, having declared EquiFirst as the successful bidder at the Auction with the highest and otherwise best bid for the Purchased Assets, as defined in the Asset Purchase Agreement by and among New Century Financial Corporation, New Century Mortgage Corporation and EquiFirst dated as of June 29, 2007 (as may be amended and restated together with the exhibits and schedules thereto and incorporated by reference therein, the "EquiFirst Agreement"), a copy of which is attached hereto, exclusive of exhibits and certain schedules, as Exhibit A, which EquiFirst Agreement, with all exhibits and schedules, is incorporated by reference herein, providing for total cash consideration to the Debtors' estates of approximately $8.05 million, plus certain other benefits valued by the Debtors at $500,000 plus the assumption of any cure costs associated with the assumption and assignment of any executory contracts or licenses EquiFirst elected to assume, based on the EquiFirst Agreement; and the last bid of Wachovia providing for total cash consideration to the Debtors' estates of approximately $8.2 million, plus certain other benefits valued by the Debtors at $500,000 and certain deductions calculated at $250,000, plus the assumption of any cure costs associated with the assumption and assignment of any executory contracts or licenses Wachovia elected to assume, for a net value to the estate of $8.45 million based on the form of Asset Purchase Agreement submitted by Wachovia with its initial bid, as modified prior to and at the Auction and on the record at the Auction having been declared to be the backup second bid (collectively, the "Wachovia Backup Bid"); and a hearing having been held before this Court on June 27, 2007 (the "Hearing") to consider approval of the sale of the Purchased Assets to EquiFirst pursuant to the terms and conditions of the EquiFirst Agreement; and the Court having

RLF1-3159364-3171211-26

reviewed the Motion and all objections thereto, and having heard the statements in support of the relief requested therein at the Hearing; and it appearing that entry of this Order is in the best interests of the Debtors, their estates, and all parties in interest; and upon the Motion and the record of the Hearing and all other proceedings had before the Court, at which, among other things, the withdrawal or resolution of all objections to the Motion, as approved by this Order, was confirmed; and after due deliberation and good cause appearing therefor,

IT IS HEREBY FOUND THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    A. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. sections 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. section 157(b)(2).  Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. sections 1408 and 1409.

C.    B. The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code.  In addition, the relief requested in the Motion is appropriate under Bankruptcy Rules and Bankruptcy Rules 2002, 6004, 6006 and 9014.

D.    C. Reasonable notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion as it pertains to the sale of the Technology Purchased Assets[2] has been afforded to all interested persons and entities, including, but not limited to:  (i) the

---

[2] Capitalized terms not otherwise defined shall have the meaning accorded to such terms in the Motion.

5

United StatesU.S. Trustee for the District of Delaware; (ii) the attorneys for the Debtors; (iii) the attorneys for the Creditors' Committee; (iv) all parties who are known to possess or assert a Lien against, or control over, any Technology Assets; (v) the Internal Revenue Service; (vi)  Contract Counterparties (as defined in the Motion), other than the notice to be provided to CrownPeak (as defined herein) in accordance with Paragraph 4 of this Order; and (vii) all other parties entitled to notice under Local Rule 2002-1(b).

E.      In accordance with the procedures proposed in the Motion, the Debtors filed and served on the Contract Counterparties the Debtors' First and Second Notice of Debtors' Intent to (a) Assume, Assign and Sell Certain Executory Contracts and Unexpired Leases in Connection with the Sale of Certain Technology Assets, and (B) Proposed Cure Amounts in Connection Therewith [Docket No. 1189] (the "Assumption/Cure Notices") identifying certain contracts and leases that could potentially be assumed and assigned in connection with the sale of the Assets and/or Data Centers and Equipment and any cure costs associated with the assumption and assignment of such contracts and leases.

F.      On June 28, 2007, the day following the hearing, iLOG, Inc. ("iLOG"), one of the parties to the Assumed Contracts (as defined herein), served counsel to the Debtors with an objection (the "iLOG Objection") to the proposed assumption and assignment of that certain iLOG Software License Agreement between New Century Mortgage Corporation and iLOG, Inc., dated September 5, 2003 (the "iLOG Agreement").  The iLOG Objection has not been filed with the Court.

G.      D. Notice, as specified in the preceding paragraphparagraphs and as evidenced by the affidavits of service filed with the Bankruptcy Court, has been in the form and manner specified in the Motion, and such notice is reasonable and adequate.

H.    E. The Debtors are authorized to consummate and implement the transactions that are the subject of the Motion.  No further consents or approvals are required for the Debtors to consummate the sale of the Technology Assets other than the consent and approval of this Court, set forth herein.  Neither the execution of the APAEquiFirst Agreement nor the consummation of the sale of the TechnologyPurchased Assets² in accordance with its terms and this Order will constitute a violation of any provision of the organizational documents of any Debtor or any other instrument, law, regulation or ordinance by which any Debtor is bound.

I.    F. The terms of the APAEquiFirst Agreement are fair and reasonable and provide fair value for the TechnologyPurchased Assets and the sale of the TechnologyPurchased Assets to the purchaserEquiFirst under the terms set forth in the APAEquiFirst Agreement is in the best interest of the Debtors, their creditors and their chapter 11 estates.

J.    G. The Debtors' support for the relief requested in the Motion reflects the exercise of sound business judgment, and approval of the Motion is in the interests of the Debtors' creditors, stakeholders and other parties in interest.  The Debtors have demonstrated both sound business purpose and compelling business circumstances in support of the transaction contemplated in the Motion and within the timeframe requested by Debtors.  There can be no assurance that the value of the TechnologyPurchased Assets or the Data (as defined herein) would be maintained if any undue delay in consummation of the transactions contemplated by the Motion were to occur.  There can be no assurance that the purchaserEquiFirst or RMC would be willing to complete the transactions if delay in consummation of the transactions were to occur.

K.    EquiFirst and Barclays Bank PLC have at all times acted in good faith in

---

² Capitalized terms not otherwise defined shall have the meaning accorded to such terms in the EquiFirst Agreement.

RLF1-31593643171211-26

connection with the sale of the Purchased Assets and the EquiFirst Agreement is the result of arms-length negotiations.

L.      The Debtors have represented to this Court that they are not selling, leasing or otherwise transferring personally identifiable information under the Motion or the EquiFirst Agreement.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the sale, conveyance and assignment of the ~~Technology~~Purchased Assets of and by the Debtors, including the assumption and assignment of ~~certain~~the executory contracts and unexpired leases ~~in connection therewith~~of the Debtors listed on Schedule 1.2(a) of the EquiFirst Agreement (the "Assumed Contracts") ~~of the Debtors (subject only to the Court's resolution of any Adequate Assurance Objection as defined in paragraph 6 below)~~, pursuant to the ~~APA~~EquiFirst Agreement (the "Sale"), is approved, and each Debtor is authorized to execute any and all documents, instruments and papers and to take all actions necessary and appropriate to effectuate, implement and consummate the transactions contemplated by the ~~APA~~EquiFirst Agreement in consideration of the purchase price specified therein, including assigning and transferring to ~~the purchaser~~EquiFirst or its designees all of the Debtors' right, title and interest (including common law rights) in and to all of the Debtors' tangible and intangible property included among the ~~Technology~~Purchased Assets except as otherwise explicitly provided by the ~~APA~~EquiFirst Agreement or this Order; provided, however, that the assumption and assignment of the CrownPeak Services Agreement between New Century Mortgage Corporation and CrownPeak Technology, dated April 12, 2004 (the "CrownPeak Agreement") and the iLOG Agreement shall

be subject to the procedures set forth in Paragraphs 4 and 5 of this Order.  Without limiting the foregoing, each of the Debtors is authorized to close and consummate the APAEquiFirst Agreement and all other agreements and documents related to and contemplated thereby (collectively, the "Disposition Documents"), which agreements and documents hereby are authorized and approved in all respects.

3.      The Debtors are authorized to assign the Assumed Contracts to EquiFirst or its designees, subject to Paragraphs 4 and 5 of this Order, pursuant to section 365 of the Bankruptcy Code; provided, however, that EquiFirst is not required to assume any of the Assumed Contracts.  The assumption and assignment of the Assumed Contracts shall be effective upon Closing and the payment by EquiFirst of any cure costs associated with the assumption and assignment of the Assumed Contracts in the amounts set forth in the Assumption/Cure Notices which represent the amounts necessary to cure defaults under the contracts set forth in Schedule 1.2(a), except for the CrownPeak Agreement which shall be determined in accordance with the procedures in Paragraph 4 hereof.

4.      The Debtors shall file and serve on CrownPeak Technology ("CrownPeak") a notice which attaches a copy of this Order and (i) identifies the CrownPeak Agreement as an Assumed Contract under Section 1.2(a) of the EquiFirst Agreement and indicates the Debtors' intent to assume and assign the CrownPeak Agreement to Equifirst or one or more of its designees in connection with the terms of the EquiFirst Agreement; and (ii) identifies any proposed cure costs associated with the assumption and assignment of the CrownPeak Agreement.  CrownPeak shall have twenty (20) days to file and serve an objection to the proposed assumption and assignment of the CrownPeak Agreement (the "CrownPeak Objection Deadline").  In the event that CrownPeak fails to file an objection prior to the

CrownPeak Objection Deadline, the Debtors may assume and assign the CrownPeak Agreement to EquiFirst or one or more of its designees pursuant to the terms of this Order upon the filing of a certificate of no objection with no further order of the Court being required.  Any cure amount will be in the amount set forth in the notice provided by the Debtors pursuant to this Paragraph.  In the event that CrownPeak does timely file an objection to the proposed assumption and assignment prior to the CrownPeak Objection Deadline, the Court shall consider the objection at the first omnibus hearing that is scheduled in these cases, provided that such hearing shall be no sooner than five (5) business days following the CrownPeak Objection Deadline.

5.    The Court shall consider the iLOG Objection at the omnibus hearing scheduled in these cases for July 16, 2007 (the "iLOG Hearing") or such other hearing date as to which the parties agree.  The rights of the Debtors, the Committee and/or EquiFirst to raise any and all responses that they may have with respect to the iLOG Objection are hereby reserved, including the right to argue that the iLOG Objection should be overruled on the basis that it is untimely.  In the event that the Court overrules the iLOG Objection at the iLOG Hearing or the parties reach a separate agreement with respect to the assumption and assignment of the iLOG Agreement, the Debtors shall be authorized to assume and assign the iLOG Agreement in accordance with the terms of this Order with no further order of the Court being required.

6.    Adequate assurance of future performance has been demonstrated by or on behalf of EquiFirst with respect to all Assumed Contracts.

7.    The Purchased Assets being sold pursuant to the EquiFirst Agreement shall not include any data centers, hardware, computers, office furniture or other equipment or collateral that General Electric Capital Corporation ("GECC") or GMAC Commercial Finance LLC ("GMAC") holds a lien against; provided, however, to the extent that EquiFirst has the

10

right, pursuant to Section 5.10(h) of the EquiFirst Agreement, to acquire the Reference Copy (as defined in the EquiFirst Agreement) and the hardware upon which such Reference Copy operates, such hardware, to the extent encumbered by a valid and enforceable lien or security interest, may be acquired under Section 5.10(h) of the EquiFirst Agreement only by consent of the applicable lien holder or by further order of the Court entered after notice to the applicable lien holder.  Further, to the extent that any collateral of GECC or GMAC is inadvertently sold pursuant to this Order, nothing in this Order or the EquiFirst Agreement shall be determinative of the portion of the purchase price to be allocated to such collateral.

8.    3.  The transfer(s) of the TechnologyPurchased Assets of and by the Debtors to the purchaserEquiFirst or one or more of its designees are legal, valid and effective transfers and shall vest the purchaserEquiFirst or its designees with all right, title and interest of the Debtors in and to the TechnologyPurchased Assets pursuant to section 363(f) of the Bankruptcy Code free and clear of any and all liens, security interests, pledges, hypothecations, encumbrances orand other interests orand claims (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code, including any and all warranty claims and any and  any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether arising before, on or after the date on which thisthese chapter 11 case wascases were commenced, whether known or unknown, including Liens of any of the creditors, vendors, suppliers, employees, or lessors of any of the Debtors or any other third party.  Any and all such Liens shall attach to the proceeds of the Sale, with the same priority, validity, force and effect as they now have against the TechnologyPurchased Assets.

9.    4.  The Sale pursuant to this Sale Order and the Disposition Documents

11

shall be binding upon the Debtors, the purchaserEquiFirst, RMC, all creditors, members, and owners of the Debtors, all persons having or asserting a claim or Lien against, or an interest in, the Debtors or the TechnologyPurchased Assets and/or the Data (as defined herein) of the Debtors, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Debtors to sell, assign and convey the Technology Assets and the Data or that seek to enjoin any such sale, assignment or conveyance.

10.    5.  Any party having the right to consent to the assumption or assignment of the Assumed Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.  Except as set forth below in paragraph 6, any objectionAny and all objections to the Debtors' assumption or assignment of the Assumed Contracts (other than an Adequate Assurance Objection) is, to the extent not withdrawn prior to or at the Hearing, are hereby overruled.

6.    To the extent that any objection or response to the sufficiency of the assurance of future performance by the proposed assignee of the Assumed Contracts (an "Adequate Assurance Objection") was not withdrawn or resolved prior to the hearing, then the Court shall consider any Adequate Assurance Objection at hearing on June 27, 2007, at 10:00 a.m.

11.    If a contract with a party having the right to consent to the assumption or assignment under the Bankruptcy Code §365(c) or applicable non-bankruptcy law is not assumed as part of the Sale, such party shall retain all of its rights under the contract status quo ante.  The Debtors and EquiFirst shall not be entitled to use such party's intellectual property licensed under such unassumed contract by a de facto assignment or otherwise except by

12

agreement with such party.  The objections of Fidelity National Information Services, Inc. ("FIS"), BasePoint Analytics and Oracle USA, Inc are overruled as moot as their respective contracts are not included as Assumed Contracts under Schedule 1.2(a) of the EquiFirst Agreement, without prejudice to their right to seek immediate rejection of their respective contracts or such other relief as appropriate, and the Debtors' and Committee right to oppose such requested relief.  Notwithstanding anything to the contrary in this Order, the EquiFirst Agreement, the Assumption/Cure Notices or the DPA Agreement (as defined herein), none of the FIS, Basepoint Analytics or Oracle licenses, contracts or agreements are being assigned or sold to Equifirst.

12.    7.  All defaults of the Debtors under the Assumed Contracts shall be deemed cured upon occurrence of assumption and assignment as provided in the APAEquiFirst Agreement.  EquiFirst shall be responsible for paying all cure costs associated with the assumption and assignment of the Assumed Contracts in the amounts set forth in the Assumption/Cure Notices, except with respect to the CrownPeak Agreement which shall be determined in accordance with Paragraph 4 hereof.  The Debtors shall have no liability with respect to any Assumed Contract except to the extent that such contract is assumed and assigned as provided in the APA; the, including cure costs associated with such Assumed Contract.  The Debtors in no event shall have any liability for any default or breach occurring under or with respect to any such contract prior to the effective date of such assumption and assignment, and any party to any Assumed Contract is forever barred from asserting against the Debtors any claim related to any such breach or default.  EquiFirst's liability under such contracts for the period prior to the Closing Date shall be limited to the cure amounts set forth on the Assumption/Cure Notices for those contracts it elects to assume; provided, however, that

EquiFirst shall be liable for all obligations under the contracts arising on and after the Closing Date.

13.    8.    The contemplated transactions have been undertaken by ~~the purchaser~~EquiFirst and the ~~Sellers~~Debtors at arm's-length, without collusion, and ~~the purchaser~~EquiFirst will acquire the ~~Technology~~Purchased Assets pursuant to the ~~APA~~EquiFirst Agreement and the Disposition Documents, in good faith, within the meaning of section 363(m) of the Bankruptcy Code and is, and shall be, entitled to all of the protections in accordance therewith.

14.    9.    The consideration provided by ~~the purchaser~~EquiFirst for the ~~Technology~~Purchased Assets under the ~~APA~~EquiFirst Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

15.    The sale of the Data (as defined herein) to RMC is hereby approved subject to mutually agreeable documentation.

16.    In addition to the Sale to EquiFirst, the Debtors are authorized to consummate and implement one or more non-exclusive licensed sales of the Broker Data and/or the Loan Data (the "Data"), at a price to be set by the Debtors and approved by the Committee, to certain third parties (collectively, the "Data Purchasers") pursuant to the terms of a data purchase agreement mutually acceptable to the parties thereto (the "DPA") (the "Data Sales"). With respect to each such Data Sale,

a.    Each such Data Sale is hereby approved.  No consents or approvals are required for the Debtors to consummate the Data Sales other than as provided in this Order.  Neither the execution of the DPA in accordance with its terms nor the consummation of the Data Sales will constitute a

violation of any provision of the organizational documents of any Debtor or any other instrument, law, regulation or ordinance by which any Debtor is bound;

b.      The transfer(s) of the Data of and by the Debtors to the Data Purchaser or one or more of its designees are legal, valid and effective transfers of the non-exclusive use of such data and shall vest the Data Purchaser or its designees with the rights and interest of the Debtors in and to the Data to the extent specified in the DPA pursuant to section 363(f) of the Bankruptcy Code free and clear of any and all liens, security interests, pledges, hypothecations, encumbrances and other interests or claims (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code, including any and all warranty claims and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, whether known or unknown, including Liens of any of the creditors, vendors, suppliers, employees, or lessors of any of the Debtors or any other third party.  Any and all such Liens shall attach to the proceeds of the Data Sale, with the same priority, validity, force and effect as they now have against the Data.

c.      While no further order of the Court is necessary to approve the Data Sales, in the event a Data Purchaser desires the entry of an order approving certain factual findings relating to its sale, upon the filing and submission

15

of a certification of counsel attesting to the necessary factual background, the Court may enter an order that approves the proposed Data Sale and contains the following findings:

    i.    The contemplated transactions have been undertaken by the Debtors and each Data Purchaser are at arm's-length, without collusion, and each Data Purchaser will acquire the rights to use the Data pursuant to the DPA, in good faith, within the meaning of section 363(m) of the Bankruptcy Code and is, and shall be, entitled to all of the protections in accordance therewith.

    ii.    The consideration to be provided by each Data Purchaser for the Data under the DPA is hereby deemed to be fair and reasonable, and the Data Sale may not be avoided under section 363(n) of the Bankruptcy Code.

    d.    With respect to the proposed Data Sale to RMC, the Court hereby finds based on the record made at the Hearing, without the need for any further order of the Court, that:

    i.    The transfer(s) of the Data of and by the Debtors to RMC or one or more of its designees is a legal, valid and effective transfer of the non-exclusive use of such data and shall vest RMC or its designees with the rights and interests of the Debtors in and to the Data to the extent specified in the DPA pursuant to section 363(f) of the Bankruptcy Code free and clear of any and all liens, security interests, pledges, hypothecations, encumbrances and other

16

interests or claims (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code, including any and all warranty claims and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, whether known or unknown, including Liens of any of the creditors, vendors, suppliers, employees, or lessors of any of the Debtors or any other third party. Any and all such Liens shall attach to the proceeds of the Data Sale, with the same priority, validity, force and effect as they now have against the Data.

    ii.    The contemplated transactions have been undertaken by the Debtors and RMC at arm's-length, without collusion, and RMC will acquire the rights to use the Data pursuant to the DPA, in good faith, within the meaning of section 363(m) of the Bankruptcy Code and is, and shall be, entitled to all of the protections in accordance therewith.

    iii.    The consideration to be provided by RMC for the Data under the DPA is hereby deemed to be fair and reasonable, and the Data Sale may not be avoided under section 363(n) of the Bankruptcy Code.

17.    The Debtors are authorized to sell the Data to EquiFirst in accordance with the terms and conditions of Section 1.6 of the EquiFirst Agreement.

18.   ~~10.~~ The provisions of this Sale Order are nonseverable and mutually

dependent.

19. 11. This Sale Order and all provisions of the Disposition Documents shall be binding upon any successors and assigns of the Debtors, including without limitation, any trustee appointed for any of the Debtors in its these chapter 11 case cases or in any superseding proceeding proceedings under chapter 7 of the Bankruptcy Code.

20. 12. Nothing contained in any chapter 11 plan confirmed in the chapter 11 case of any Debtor or any order of this Court confirming such plan or any other order entered in these chapter 11 cases shall conflict with or derogate from the provisions of the APA EquiFirst Agreement, to the extent modified by this Sale Order, the DPA or the terms of this Sale Order.

21. 13. The APA EquiFirst Agreement, the Disposition Documents, or and other instruments relating thereto may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or their estates.

22. 14. The failure specifically to include any particular provisions of the APA EquiFirst Agreement or the Disposition Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA EquiFirst Agreement and the Disposition Documents be authorized and approved in their entirety.

23. 15. To the extent of any inconsistency between the provisions of the APA EquiFirst Agreement, any documents executed in connection therewith, and this Sale Order, the provisions contained herein shall govern.

24. 16. All objections, if any, to the entry of this Sale Order, to the extent not waived or resolved, are overruled.

25.    17. Without limiting in any manner the effect of the other provisions of this Order, any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing or otherwise asserting a Lien in, to, or against the ~~Technology~~Purchased Assets shall be, and hereby is, directed to deliver to the Debtors prior to Closing, in proper form for filing after Closing and executed by the appropriate parties, termination statements, instruments of satisfaction, mortgage or deed of trust releases, or similar instruments as appropriate to cause the release of any such Lien as of record, and, in the event that any such person or entity fails to comply with the direction set forth in this Paragraph, then, at the option of ~~the purchaser, the purchaser~~EquiFirst, EquiFirst either may seek to have such person or entity held in contempt of this Court or shall be hereby authorized without the requirement of any further action (including any further Order of this Court) either to execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted Lien in, to, or against the ~~Technology~~Purchased Assets or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such Lien in, to, or against the ~~Technology~~Purchased Assets.

26.    18. Consistent with, but not in limitation of, the foregoing, each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated with ~~APA~~EquiFirst Agreement and the Disposition Agreements.

27.    19. All persons or entities who or that are in possession of some or all of the ~~Technology~~Purchased Assets of the Debtors on the Closing are hereby directed to surrender possession of those ~~Technology~~Purchased Assets to ~~the purchaser~~EquiFirst at the Closing.

28.    20. Without limiting the generality of the other provisions of this Sale Order, and except solely to the extent provided by other U.S. federal law, the purchaser each Data Purchaser and EquiFirst under no circumstances shall be deemed to be a successor of the Debtors (and the purchaser EquiFirst and each Data Purchaser, including RMC, expressly has disclaimed in the APA EquiFirst Agreement and DPA, respectively, any such liability with respect to the Debtors).  Accordingly, the purchaser neither a Data Purchaser nor EquiFirst shall have no successor or vicarious liabilities of any kind or character with respect to the Technology Assets except solely to the extent provided by superseding U.S. federal law, Purchased Assets and all persons and entities shall be hereby enjoined from asserting any such claims against the purchaser them.

29.    21. The automatic stay of Section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the APA, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof. DPA or the EquiFirst Agreement.

30.    Notwithstanding any provision of the EquiFirst Agreement, including Section 5.5 thereof, the Disposition Documents or this Order, to the contrary, EquiFirst  shall retain or return to the Debtors all information, data and books and records (collectively, "Records") transferred pursuant to the EquiFirst Agreement, in any form, including electronic form.  Furthermore, notwithstanding any provision of the EquiFirst Agreement, including Section 5.5 thereof, the Disposition Documents or this Order, to the contrary, EquiFirst shall not destroy any Records, including, but not limited to, Records inadvertently delivered to EquiFirst, without first providing written notice to counsel for the New York State Teachers' Retirement System  ("NYSTRS"), or such other person as may be designated by NYSTRS, no less than

thirty (30) days prior to any scheduled destruction of such Records, which notice shall specify with particularity the contents of the Records to be destroyed.  NYSTRS shall have thirty (30) days from receipt of said notice to object in writing to the destruction of such Records (the "Objection") by delivering the Objection to the parties entitled to notice under the EquiFirst Agreement. Should NYSTRS deliver such Objection in the manner described above, no Records shall be destroyed absent agreement of the parties to the EquiFirst Agreement and NYSTRS or determination by a court of competent jurisdiction.

   31.  22. The ten (10) day stay under Bankruptcy Rules 6004(h) and 6006(d) are hereby waived, and this Order shall be effective immediately.

   32.  23. The Debtors and their affiliates, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

   33.  24. The Bankruptcy Court shall retain exclusive jurisdiction to interpret, construe and enforce the provisions of the APADPA, the EquiFirst Agreement, the Disposition Documents, and the Salethis Order in all respects and, further, to hear and determine any and all disputes between any Debtor and/or the purchasereach Data Purchaser or EquiFirst, as the case may be, and any non-seller party to, among other things, any Assumed Contracts, concerning inter alia, assignment thereof by the pertinent Debtor to the purchaserEquiFirst or its designees under the APAEquiFirst Agreement, and any claims against any Debtor or any creditor or other third party arising in connection with any dispute between the purchasera Data Purchaser or EquiFirst and any Debtor as to their respective obligations with respect to any asset or liability of or claim against any Debtor or otherwise arising hereunder.

   34.  Wachovia is the backup bidder to the EquiFirst bid pursuant to the terms

of the Wachovia Backup Bid and shall be obligated to close on and be bound by the terms of such bid in the event that the Debtors and EquiFirst fail to close on the Sale by the outside date set forth in the EquiFirst Agreement.  In such event, the Debtors and Wachovia will submit to the Court a further order authorizing the Debtors to consummate and close the sale with Wachovia pursuant to the terms of the Wachovia Backup Bid and subject to all the terms and conditions thereof.

Dated: July        , 2007
            Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

22

RLF1-3159364 3171211-26

Document comparison done by DeltaView on Monday, July 02, 2007 3:39:21 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://IM-DMS1/RLF1/3159364/2 |
| Document 2 | interwovenSite://IM-DMS1/RLF1/3171211/6 |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 149 |
| Deletions | 124 |
| Moved from | 5 |
| Moved to | 5 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 283 |