**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | CASE NO. 07-10416-KJC |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC., | § | Chapter 11 |
| *ET. AL.,* | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Hearing Date:  August 7, 2007 at 1:30 p.m.** |
| | § | **Objection Deadline:  July 31, 2007 at 4:00 p.m.** |

**MOTION OF POSITIVE SOFTWARE SOLUTIONS, INC. FOR RELIEF**
**FROM THE STAY REGARDING COPYRIGHT INFRINGEMENT LITIGATION**

TO THE HONORABLE KEVIN J. CAREY, U.S. BANKRUPTCY JUDGE:

In accordance with Bankruptcy Code section 362(d), Positive Software Solutions, Inc. ("Positive Software") moves for relief from the automatic stay to permit the continuation of a pending software and copyright infringement lawsuit brought in 2003 against certain of the Debtors in this Bankruptcy Case.

## I.    SUMMARY OF RELIEF REQUESTED

1.      Positive Software developed and owns a software application and data storage system commonly known as LoanForce (further defined below).  LoanForce is designed for and used by mortgage lenders to market mortgage loan products and to otherwise facilitate the origination of mortgage loans.

2.      Positive Software entered into the License Agreement (defined below) with debtor New Century Mortgage Corporation ("New Century"), under which Positive Software granted a non-exclusive license of LoanForce to New Century under strict use terms and conditions.

3.      During license renewal negotiations, Positive Software uncovered evidence that New Century was engaging in a concerted plan to create its own software platform using

LoanForce coding and design aspects.  Among other things, in violation of Positive Software's statutory copyright protections and the express terms of the License Agreement, New Century engaged in efforts to reverse engineer LoanForce so that it could incorporate much of LoanForce as part of its alleged "proprietary" software platform.

4.    To halt New Century from continuing to use software derived from LoanForce and to recover for damages caused by New Century's wrongful actions, in February 2003, Positive Software sued New Century in the federal district court for the Northern District of Texas (the "Texas District Court"), initiating a case referenced as Civil Action No. 3:03-CV-0257-N (the "District Court Action"). Among other things, Positive Software sought monetary damages and injunctive relief to redress (among other things) New Century's breach of the License Agreement, and for its theft and conversion of and infringement on Positive Software's copyrights and trade secrets.  In that suit, the Texas District Court issued a preliminary injunction against New Century and a protective order in favor of Positive Software.[1]  The Texas District Court also found that New Century knowingly and repeatedly violated the terms of its injunction and protective orders, and that Positive Software had shown a substantial likelihood of success on the merits of its infringement and related claims against New Century.

5.    Initially, the Texas District Court issued injunctive relief and protective orders in favor of Positive Software.  Then the Texas District Court referred Positive Software's claims to arbitration.

6.    Despite the findings made by the Texas District Court that Positive Software had demonstrated a likelihood of success on its infringement claims, the arbitrator subsequently

---

[1]    The Texas District Court's preliminary injunction order, which is still in force, establishes that there is substantial likelihood that New Century's current loan origination software infringes on Positive Software's copyrights.

issued an award rejecting those claims and levying attorneys fees and other damages in New Century's favor.

7.    Positive Software then discovered that the arbitrator had various prior contacts with New Century's legal team. The arbitrator had failed to disclose any of those contacts as required under the arbitration rules. Positive Software, for its part, was completely unaware of the contacts at the time it participated in the selection of the arbitrator to hear and determine its claims against New Century. Thus, when New Century moved to have the arbitration award confirmed, Positive Software opposed the motion and sough to have the award vacated.

8.    Texas District Court held for Positive Software and vacated the award based upon the arbitrator's failure to disclose the prior contacts.  Noting prior rulings in which it found that New Century had acted wrongfully in connection with the court and arbitration proceedings, the Texas District Court found that the conduct would likely constitute independent grounds for vacating the arbitration award.

9.    New Century appealed the Texas District Court's ruling to the Fifth Circuit.  The appellate panel affirmed the Texas District Court's vacatur.  Earlier this year, however, the full Fifth Circuit reversed the panel on the grounds, according to the majority opinion, that the arbitrator's prior contacts with New Century's legal team were not objectively material.  Positive Software subsequently filed a petition for a writ of certiorari with the Supreme Court.  That petition was recently denied and, absent the automatic stay, the case is subject to remand to the Texas District Court for further adjudication on the arbitration award and Positive Software's alternate grounds for seeking vacatur of the award.

10.    Positive Software requests relief from the automatic stay: (a) to permit the District Court Action to proceed and to permit all claims in that proceeding to be fully adjudicated; (b) if

a monetary award is entered in Positive Software's favor, to permit Positive Software to take action to recover on that award against any applicable commercial liability insurance issued to New Century and any persons who are not Debtors in this Bankruptcy Case who may be co-liable on Positive Software's claims; and (c) to enforce the terms of any injunctive relief rendered by the Texas District Court in Positive Software's favor.  Positive Software does not seek to recover on any monetary award rendered against New Century or related Debtors except through the claims administration process to be conducted in this Bankruptcy Case and/or from liability insurance policies issued to New Century.

11.    Relief from the automatic stay is warranted for three reasons.  First, as the claims at issue must be adjudicated, requiring New Century to do so in before the Texas District Court does not prejudice New Century or its estate.  Second, Positive Software will suffer hardship if the relief it requests is not granted.  Among other things, Positive Software's ability to recover against possible insurance policies may be adversely affected if it is not permitted to pursue its claims. Also, the costs of pursuing those claims in any forum other than the Texas District Court would result in significantly greater cost and expense.  And third, Positive Software has already demonstrated that its claims are likely meritorious.

12.    Relief from the stay will also further principles of comity and judicial economy. The claims at issue involve the interpretation and application of federal copyright laws to a degree that withdrawal of the reference would be mandated upon motion by either party. The Texas District Court, having heard extensive evidence and having made significant rulings as to Positive Software's claims, is eminently familiar with the facts and legal issues upon which Positive Software's claims are based and has had the opportunity to evaluate the credibility of various fact witnesses.

## II.    JURISDICTION

13.    On April 2, 2007 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), thereby initiating this Bankruptcy Case.  The Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## III.    FACTUAL BACKGROUND

### A.    THE PARTIES' BUSINESS DEALINGS

14.    Positive Software is in the business of developing and licensing computer software, including a copyrighted software product called "LoanForce".  Among other things, LoanForce: (i) includes built-in loan application; (ii) includes built-in Fannie Mae Standards and mortgage tools; (iii) can transfer customer records dynamically from telemarketers to loan officers; and (iv) automatically matches customer records to telemarketers, loan officers, and customer representatives, and information concerning the customer automatically appears, including such things as credit history, contact information, value of homes, and information concerning all previous calls.

15.    In 2000, Positive Software and New Century entered into a certain Software Subscription Agreement (the "License Agreement"), under which Positive Software licensed the LoanForce software under a non-exclusive basis and with strict usage terms and conditions.  (A true and correct copy of the License Agreement is attached hereto as Exhibit "A".) In the License Agreement, and as held by the Texas District Court, New Century acknowledged that LoanForce was Positive Software's property and agreed to return all proprietary information concerning LoanForce to Positive Software at the termination of the License Agreement.  The License

Agreement gave New Century *no* rights other than a limited ability to use LoanForce as provided therein, and it conferred on New Century no rights to use the intellectual property underlying LoanForce or to make derivative works.

16.     In late 2002 and early 2003, however, Positive Software became aware that New Century was using a new software package, which it called LoanTrack, together with associated databases called LF_Moon and LTK_Moon.  LoanTrack was an interim product being used by New Century as New Century developed a product it called "LoanTrack2 and "MLAS."  New Century alleged that it, with the assistance of an outside firm, developed LoanTrack independently from LoanForce.  As described in further detail below, however, the Texas District Court expressly found that New Century improperly derived LoanTrack from LoanForce.

**B.     THE DISTRICT COURT ACTION**

17.     On February 6, 2003, Positive Software terminated the License Agreement and filed the District Court Action in the Texas District Court against New Century and certain other related parties (including other debtors in this Bankruptcy Case). Positive Software asserted claims and causes of action against New Century and the other related defendants for, among other things, copyright infringement, misappropriation of trade secrets, misappropriation of intellectual property, breach of contract, fraud, and conversion.  Among other things, Positive Software alleged that LoanTrack, LF_Moon, LTK_Moon, LoanTrack2, MLAS, and related and derivate products (collectively, the "Disputed Property") were all derived by New Century through its infringement and theft of Positive Software's intellectual property and copyrights.

18.     On April 28, 2003, the Texas District Court entered its *Memorandum Opinion and Order* [District Court Action Docket No. 88], thereby issuing a preliminary injunction (the

"Preliminary Injunction") prohibiting and enjoining New Century and any persons acting in concert with New Century from "any use of the LoanForce software, the LoanForce database, LoanTrack-1, LF_Moon, and LTK_Moon." *See* Preliminary Injunction at p. 17. (A true and correct copy of the Preliminary Injunction is attached hereto as Exhibit "B".) The Texas District Court found in the Preliminary Injunction that Positive Software owned the rights and copyrights to LoanForce and that New Century was no longer entitled to use LoanForce, but rather obligated New Century to return LoanForce to Positive Software. Additionally, the Texas District Court found that, based on "the fact that LoanTrack-1 contained substantial verbatim or near-verbatim copying of" Positive Software's intellectual property, Positive Software had "shown a substantial likelihood of success on the merits of its claim that LoanTrack-1 (including the associated LFMoon and LTKMoon components) infringed Positive Software's copyrights in LoanForce." *See* Preliminary Injunction at pp. 7 & 9.

## C.    THE ARBITRATION AWARD AND THE VACATUR ORDER

19.    Concurrently with its entry of the Preliminary Injunction, the Texas District Court ordered the dispute to arbitration. Arbitration followed, and the arbitrator issued an award (the "Arbitration Award") substantially against Positive Software and in favor of New Century. Positive Software, however, soon discovered that the arbitrator had undisclosed relationships with New Century's counsel. Positive Software then objected to confirmation of the Arbitration Award and instead moved that the Texas District Court vacate the award.

20.    On September 28, 2004, the Texas District Court entered its *Memorandum Opinion and Order* [District Court Action Docket No. 372] (the "Vacatur Order"). (A true and correct copy of the Vacatur Order is attached hereto as Exhibit "C".) The Texas District Court: (i) granted Positive Software's motion to vacate the Arbitration Award based on the arbitrator's

undisclosed prior contacts with New Century's counsel; (ii) denied New Century's motion to confirm the Arbitration Award; and (iii) found that New Century had violated the Texas District Court's protective orders (though it declined to sanction New Century on the ground that the order was not sufficiently specific).

21.     In an amendment to its motion to vacate, Positive Software brought to the District Court's attention the fact that New Century had falsely claimed that it did not have the original November 2000 script for the LoanForce database (which Positive Software requested for purposes of analyzing similarities between LoanForce and LoanTrack 2 and other Disputed Property) and had, therefore, fraudulently and wrongfully withheld production of that script.  Of additional significance, the Texas District Court found that "[i]f the Court were to address that motion on the merits, it likely would … grant the amended motion to vacate for, *inter alia*, New Century's failure to produce the November 2000 Script."  *See* Vacatur Order pp. 42-43, n. 24.

22.     Moreover, in connection with the issue of New Century's continuing "pervasive", but prohibited, accessing of LoanForce, the Texas District Court noted that the accessing "would appear to be a difficulty for New Century's 'clean room' defense of LoanTrack2."  *See* Vacatur Order p. 9, n. 7.  Thus, the Texas District Court has indicated that New Century's principal defense to Positive Software's infringement claims is likely without merit.

**D.     APPELLATE PROCEEDINGS**

23.     New Century appealed the Vacatur Order to the Fifth Circuit which, in January, 2006, substantially affirmed the Texas District Court's ruling by published opinion.  *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 436 F.3d 495 (5th Cir. 2006).

24.     In January 2007, the full Fifth Circuit reversed the panel's earlier decision (with five of the sixteen members of the bench dissenting).  In that reversal, the Fifth Circuit majority

ruled that the Texas District Court had not properly applied the correct legal standard in determining that the arbitrator's failure to disclose required that the Arbitration Award be vacated. Thus, the Fifth Circuit ordered that the case be remanded to the Texas District Court for further proceedings. *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278 (5th Cir. 2007).[2]

25.    In light of, among other things, a split in circuit court rulings on arbitration disclosure requirements (which the Fifth Circuit majority recognized in its own ruling), Positive Software filed a petition for a writ of certiorari with the Supreme Court. That petition was recently denied. Consequently, the Fifth Circuit's order remanding the District Court Action back to the Texas District Court has become effective. Further proceedings before the Texas District Court are currently stayed, however, in accordance with Bankruptcy Code section 362(a)(1). The matters which will need to be determined by the Texas District Court include, among other things: (i) whether the Arbitration Award should be vacated for fraud, discovery abuse, and/or other misconduct by New Century and its counsel (and the Texas District Court has appeared to indicate) or other grounds (including newly-discovered evidence of additional contacts between the arbitrator and New Century's legal team); and (ii) if so, (a) whether Positive Software's claims are meritorious and, (b) the amount of damages and the nature of any permanent injunctive relief which should be granted in favor of Positive Software.

## IV.    ARGUMENTS AND AUTHORITIES

26.    Cause exists under Bankruptcy Code section 362(d) to modify the automatic stay and to permit the District Court Action to proceed. First, there is no material prejudice (and

---

[2]    The crux of the Fifth Circuit majority's opinion concerned whether the Supreme Court's *Commonwealth Coatings Corp. v. Continental Cas. Co.* opinion required vacatur of an arbitration award based on the arbitrator's lack of full disclosure of potential conflicts, regardless of whether evident or actual partiality was actually proven.

possibly real benefit) to the Debtors and their estates in doing so. The claims brought by Positive Software and the counter-claims brought by New Century need to be adjudicated in some forum and it is the Texas District Court, which has heard significant evidence in this matter and made many material rulings, that is best positioned to do so.

27.     Second, the hardship faced by Positive Software if the stay is not lifted at this time outweighs any hardship that might result to New Century. Among other things, New Century may be insured against the claims asserted by Positive Software and Positive Software could be prejudiced in obtaining insurance compensation if litigation of its claims is further delayed. Also, adjudication of Positive Software's claims in any other forum other than the Texas District Court presents the possibility that New Century will be able to avoid adverse findings and rulings which the Texas District Court has made or has indicated that it would likely make against New Century.

28.     Third, relief from the automatic stay should be granted because Positive Software is likely to prevail against New Century on its copyright infringement claims. And fourth, permitting those claims to be adjudicated by the Texas District Court is in the interests of judicial efficiency and comity and is supported by other recognized factors in determining if cause exists to grant relief from the automatic stay.

A.     RELIEF FROM THE AUTOMATIC STAY FOR CAUSE

29.     This Court may grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). "'Cause' is not defined in the Code; it must be determined on a case-by-case basis." *Izzarelli v. Rexene Prods. Co. (In the Matter of Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). As further explained by this Court:

> The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. *It will often be more appropriate to permit proceedings to continue in their place of origin*, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

*Id*. at 576 (internal quotations omitted) (emphasis added).

30.     Thus, relief from the stay is freely and routinely granted to permit advanced prepetition litigation to continue postpetition in a non-bankruptcy forum.  *See, e.g., Universal Life Church Inc. v. United States (In re Universal Life Church Inc.)*, 127 B.R. 453, 455 (E.D. Cal. 1991) ("[t]he automatic stay in this case should be modified to permit the tax court to finish what it had nearly completed. That forum has special expertise in deciding difficult and contested tax issues.  The tax issues raised in this case are presumptively difficult otherwise it would not have taken three years to prepare the case for trial ... .  The interests of judicial economy weigh overwhelmingly in favor of returning the 1978-1980 tax issues to tax court"); *In the Matter of Rexene Prods. Co.)*, 141 B.R. at 577; ("[o]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources.  All indications are that the lawsuit will come to trial quickly in Texas, in a court that has jurisdiction over all the defendants.  If the lawsuit were moved to this court, it is not clear whether it would go to trial in this court or the District Court"); *In re Hunt*, 95 B.R. 442, 448 (Bankr. N.D. Tex. 1989).

31.     This Court generally considers three factors in analyzing whether to grant relief from the stay to permit prepetition litigation to continue: "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *American*

*Airlines Inc. v. Continental Airlines Inc. (In re Continental Airlines Inc.)*, 152 B.R. 420, 424 (D.

Del. 1993). *Accord Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P. (In re Levitz*

*Furniture Inc.)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000); *In the Matter of Rexene Prods. Co.*,

141 B.R. at 576.

32.      The Bankruptcy Code places the initial burden of showing that cause exists on the

moving party, but after that initial showing is made the burden of proof passes to the debtor. *See*

*In the Matter of Rexene Prods. Co.*, 141 B.R. at 577.[3]  Positive Software contends that the very

record of the District Court Action establishes cause to grant the relief it requests. Thus, the

Debtors here bear the burden of demonstrating that cause does not exist for granting that relief.

**1.      <u>No Prejudice to the New Century Estate.</u>**

33.      Permitting the District Court Action to proceed will not prejudice the Debtors'

estates.  The dispute between Positive Software and New Century will have to be addressed in

some forum, meaning that New Century will have to incur litigation costs to resolve the claims

asserted by Positive Software. As New Century has already engaged capable counsel in Texas

that is intimately familiar with the dispute.  And New Century's costs would be minimized by

permitting the District Court Action to proceed, as opposed to having the parties (including New

Century) bear the expense of educating a new judge on the facts and the various issues in

question.  Of course, if New Century believes that it is actually entitled to monetary damages

against Positive Software (as it urged in the original arbitration and as the arbitrator determined),

---

[3] Section 362 (g) provides:

> **(g)** In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act
> under subsection (a) of this section—
>> **(1)** the party requesting such relief has the burden of proof on the issue of the debtor's equity in
>> property; and
>> **(2)** the party opposing such relief has the burden of proof on all other issues.

then permitting the District Court Action to proceed may actually be to the benefit of New Century and its bankruptcy estate.

34.     The alternative to permitting the District Court Action to move forward is, for many reasons, problematic.  First, in light of the nature of the dispute between Positive Software and New Century, this court cannot and should not adjudicate the claims at issue. The District Court Action is a complicated action concerning federal non-bankruptcy law and affecting interstate commerce.  As such, it is the type of matter contemplated under 28 U.S.C. § 157(d) to be heard by a federal district court.  Also, in light of the extensive proceedings to-date in the Texas District Court, it would appear appropriate for this Court (or the Delaware District Court) to abstain from adjudicating the dispute under 28 U.S.C. § 1334(c)(1) insofar as doing so will further the goals of judicial economy and consistency.

35.     Also, because Positive Software agrees that it will seek to recover on any monetary judgment granted in its favor from New Century only through the bankruptcy claims process and/or insurance policies issued for New Century's benefit (the proceeds of which would otherwise not be available to the general creditor body), the requested relief will not provide Positive Software with any advantage over the general creditor body.

2.     **Hardship to Positive Software.**

36.     The continued maintenance of the automatic stay may severely prejudice Positive Software. Among other things, prejudice to a movant may be shown where, as here, the continuing imposition of the automatic stay divests the movant of a valuable remedy.  *See In re Levitz Furniture Inc.*, 267 B.R. at 523.  To the extent that New Century may have commercial liability insurance policies that covers some or all of the claims asserted by Positive Software, delay in adjudicating Positive Software's claims may reduce or eliminate Positive Software's

ability to recovery against those insurance policies.  To wit, if New Century's insurance coverage is exhausted by satisfying or otherwise resolving other covered commercial claims asserted against New Century, Positive's software right and ability to recover the proceeds of those policies will be effectively eliminated.

37.     As noted in *Collier on Bankruptcy*:

> Where the claim is one covered by **insurance** or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff.   Finally, the liquidation of a claim may be more conveniently and speedily determined in another forum.

2 *Collier on Bankruptcy,* ¶ 362.07 [3] (15th ed. 1980) (footnotes omitted) (emphasis added).

38.     Regardless of the availability of insurance policy proceeds to satisfy Positive Software's claims, Positive Software would suffer significant prejudice in increased litigation costs and expenses if it were required to cease litigation before the Texas District Court and have to commence the same complex litigation in this Court or, if the reference is withdrawn, the Delaware District Court.

39.     Finally, Positive Software would face prejudice to the extent that having to litigate its claims before this Court or the Delaware District Court might permit New Century to effectively rehabilitate itself from the misconduct in which it and its professionals engaged in the underlying arbitration proceeding and in the District Court Action itself. As has been previously described above, the Texas District Court has already indicated that it would likely vacate the Arbitration Award based on that same misconduct.  The Texas District Court further noted that that same misconduct has put into question one of New Century's principal defenses – that the LoanTrack2 software was developed in a "clean room" and that its software developers could not have had access to Positive Software's LoanForce software.

Case 07-10416-BLS    Doc 1877    Filed 07/10/07    Page 15 of 18

3.       **Positive Software is Likely to Prevail.**

40.      This factor has been described as requiring a showing that "the creditor has some chance of prevailing."  *In re Levitz Furniture Inc.*, 267 B.R. at 523.  The movant need not show a likelihood or a substantial likelihood of success on the merits.  Rather, it need only show "some chance" of success.  *Id*.

41.      As previously noted above, there is well more than "some chance" that Positive Software will ultimately prevail on its claims.  Among other things, the Texas District Court found, in issuing its Preliminary Injunction, that Positive Software had shown a substantial likelihood of success on the merits of its claims against New Century.  As a matter of law, therefore, Positive Software has considerably more than merely "some chance" of prevailing in the Texas District Court, having already demonstrated a likelihood of prevailing on its claims against New Century.

4.       **Other Factors.**

42.      Courts from other jurisdictions consider several factors in addition to, or as subsets of, the three factors found relevant by the Delaware Court, including:

- whether relief would result in a partial or complete resolution of the issues;

- whether litigation in another forum would prejudice the interests of other creditors;

- the interests of judicial economy and the expeditious and economical resolution of litigation; and

- whether the parties are ready for trial in the other proceeding

*See, e.g., In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111, 130 (Bankr. D. N.J. 2003).

43.      Here, other recognized factors favor granting Positive Software the relief it requests.   Most notably, the interests of judicial economy can only be served by permitting Positive Software's claims to go forward in the District Court Action, insofar as the Texas

WM1A 102769v1 07/10/07

District Court is well versed in the specific facts and issues of that litigation and which has already issued material findings and orders in the case.

## V.    CONCLUSION

44.    The Texas District Court, having an intimate familiarity of the various legal and factual issues involved in the parties' dispute, is the most appropriate forum to adjudicate the parties' competing rights and interests in the most efficient and economical manner possible. Consequently, the automatic stay should be modified so that the parties can proceed on the claims brought by Positive Software and so that Positive Software may enforce any monetary judgment it obtains against: (i) the Debtors through the bankruptcy claims administration process; (ii) any commercial liability insurance policies providing coverage for the claims asserted; and (iii) non-Debtor parties that may be co-liable with New Century and other Debtors on Positive Software's claims.

## VI.    <u>REQUEST FOR RELIEF</u>

Positive Software respectfully requests that the Court enter an order: (i) granting this Motion; (ii) modifying the automatic stay to permit the District Court Action to proceed to a final adjudication, including any future injunctive, arbitration, or appellate proceedings that may be involved; (iii) permitting Positive Software to seek recovery on any monetary judgment granted in its favor from non-Debtor sources of recovery, including commercial liability polices held by New Century or other Debtors and from non-Debtor third-parties that may be co-liable with the Debtors (if any); and (iv) granting Positive Software such other and further relief to which it may be justly entitled.

RESPECTFULLY SUBMITTED this 10th day of July 2007.

FOX ROTHSCHILD LLP

By:   /s/ Carl D. Neff
       Daniel K. Astin, Esquire (Del. No. 4068)
       Anthony M. Saccullo, Esquire (Del. No. 4141)
       Carl D. Neff, Esquire (Del. No. 4895)
       Citizens Bank Center, Suite 1300
       919 N. Market Street, P.O. Box 2323
       Wilmington, Delaware  19899-2323
       Tel (302) 654-7444/Fax (302) 656-892
       dastin@foxrothschild.com
       asaccullo@foxrothschild.com
       cneff@foxrothschild.com

       -and-

Mark H. Ralston, Esq.
Texas Bar No. 16489460
Admission *pro hac vice* pending
Davor Rukavina, Esq.
Texas Bar No. 24030781
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Counsel to Positive Software Solutions, Inc.