# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | |
| INC., a Delaware corporation, et al.,[1] | : | Case No. 07-10416 (KJC) |
| | : | (Jointly Administered) |
| Debtors. | : | |

Hearing Date: July 16, 2007, at 1:30 p.m.
Response Deadline: July 11, 2007, at 4:00 p.m.

**DECLARATION OF FORMER AUDIT SUBCOMMITTEE CHAIRMAN DONALD E. LANGE IN SUPPORT OF RESPONSE TO LIMITED OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF HELLER EHRMAN LLP AS SPECIAL COUNSEL TO THE AUDIT SUBCOMMITTEE *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTIONS 327(e) AND 1107(b) OF THE BANKRUPTCY CODE**

Donald E. Lange declares:

1. Since 1999, I have been the President and Chief Executive Officer of Pacific Financial Services, a mortgage banking and specialty finance company. From March 2001 to February 2002, I served as President and Chief Executive Officer of OptiFI, a private company

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

specializing in prepayment analytics. Previously, I served as the President and Chief Executive Officer of several specialty finance subsidiaries of Weyerhaeuser Company, including Weyerhaeuser Financial Services, Weyerhaeuser Mortgage Company and Weyerhaeuser Venture Company. I served as a director of Mortgage Electronic Registration System (MERS) from 1995 until 2002. In addition, I was a director of Pacific Gulf Properties from 1998 until 2001 and a director of Pedestal from 1999 until 2001. I was the President of the Mortgage Bankers Association of America in 1999.

2. This declaration supports the Debtors' Application for Order Authorizing the Retention and Employment of Heller Ehrman LLP As Special Counsel to the Audit Subcommittee *Nunc Pro Tunc* to the Petition Date pursuant to Sections 327(e) and 1107(b) of the Bankruptcy Code (the "Application"), filed May 1, 2007.

3. I have served on the Board of Directors of debtor New Century Financial Corporation ("NCF" or the "Company") since November 2002. I was appointed to the Audit Committee of the Board shortly after I joined the Board in November 2002 and was a member of that committee until my resignation from that committee on June 22, 2007. To the best of my knowledge, I have been present in person or by telephone at all Audit Committee meetings[1] that have involved the internal investigation referred to in ¶ 5 of this declaration. I know the matters stated herein of my own personal knowledge, except for those matters stated on information and belief, and as to those matters, I believe them to be true. I am competent to testify if called upon to do so.

---

[1] Shortly after the investigation began, a subcommittee of the Audit Committee was formed to carry on the investigation. For convenience, this declaration refers to the Audit Committee as a shorthand for the board committee responsible for the investigation, initially the Audit Committee and then its subsequently formed investigation subcommittee.

2

4. Upon information and belief, Heller Ehrman LLP has represented the Audit Committee since 1998. In connection with the Company's announcement on February 7, 2007, that it would restate its financial results for three quarters in 2006, the Audit Committee asked Heller Ehrman to direct an assessment of the Company's internal controls. Shortly thereafter, Heller Ehrman engaged PricewaterhouseCoopers LLP ("PwC") to assist in that effort.

5. By early March 2007, the Audit Committee determined it was necessary and appropriate to expand the assessment of the Company's internal controls into an internal investigation of (i) certain accounting matters in connection with entries on NCF's books, records and financial statements, which included the issues giving rise to NCF's need to restate its 2006 interim financial statements and its valuation of residual interests in securitizations, and (ii) sales of stock by NCF insiders. As a result, Neal Brockmeyer, Esq., the Audit Committee's primary contact at Heller Ehrman, suggested that the Audit Committee speak to Michael J. Shepard, Esq. of Heller Ehrman because Mr. Shepard has extensive experience in conducting internal investigations into accounting irregularities and other potential violations of federal securities and other laws at companies both large and small.

6. Early on in the process, Heller Ehrman disclosed that it represented KPMG LLP, the Company's auditor (until its resignation on April 27, 2007) in matters unrelated to NCF. Heller Ehrman informed us that that relationship would not prevent the firm from performing a thorough internal investigation, including collecting and reviewing KPMG documents and interviewing KPMG witnesses, but that Heller Ehrman would be unable to identify, advise about or pursue any claims against KPMG should the need arise.

7. The Audit Committee decided it was cost effective, efficient and in the best interests of the Company for the Audit Committee to retain Heller Ehrman to perform the

investigation, after considering and weighing a number of factors, including the purpose of the investigation (i.e., to ascertain facts and not to pursue claims), relevant time constraints, Mr. Shepard's credentials as a former prosecutor, Heller Ehrman's extensive experience in conducting investigations of the type we needed to have performed on an expedited basis, the substantial quality work Heller Ehrman had already performed for the Audit Committee, its understanding of NCF and its business operations, the limited relationship Heller Ehrman had with KPMG (we were advised that less than one percent of Heller Ehrman's revenues in 2006 were derived from its representation of KPMG), the inevitable delay that would result from bringing another firm up to speed regarding the Company's business operations, internal procedures and processes investigation, and the additional cost that would be associated with that process.

8. I executed on behalf of the Audit Committee a formal engagement letter with Heller Ehrman dated March 14, 2007, a copy of which is attached hereto as Exhibit A. That engagement letter formally disclosed that Heller Ehrman has represented and continues to represent KPMG on matters unrelated to the Company or the investigation. The only limitation Heller Ehrman's representation of KPMG imposed on the investigation was that Heller Ehrman could not, and did not, advise the Audit Committee or the Company on whether or how to proceed against KPMG, or to pursue claims or take any action against KPMG.

9. When the Company filed its bankruptcy petition on April 2, 2007 (the "Petition Date"), the Audit Subcommittee evaluated whether, in light of the Company's limited resources and the need to maximize the value of the Debtors' estates, it was necessary and in the best interest of the Company to continue the investigation postpetition. The Audit Subcommittee determined that the investigation should continue for the benefit of the Debtors' estates, and that

Heller Ehrman was in a unique position to continue and efficiently and expeditiously complete the investigation it had started, for the same reasons described in paragraph 7 above and in view of its ongoing communications with the relevant government authorities regarding the investigation.

10. Based upon my ongoing awareness of Heller Ehrman's efforts in the investigation, oral reports made to the Audit Committee by Heller Ehrman lawyers, and the many documents and e-mails made available to us which are significant to the issues under investigation, I believe that Heller Ehrman made every effort to determine the facts concerning not only internal employees' roles but also that of KPMG in connection with the subject matter of the investigation.

11. The Audit Subcommittee believes that Heller Ehrman has performed an appropriate, competent, unbiased investigation into the accounting matters and insider trading issues it was retained to investigate.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on July 11, 2007.

*[signature]*
Donald E. Lange