# EXHIBIT A

## Correa, Michaeline

| | |
|---|---|
| **From:** | Samis, Christopher M. [Samis@RLF com] |
| **Sent:** | Wednesday, May 23, 2007 5:55 PM |
| **To:** | Brockmeyer, Neal |
| **Cc:** | Correa, Michaeline; Merchant, Michael |
| **Subject:** | OUST Comments on Retention Application |

**Attachments:** retentionapps.debtorsissues.pdf

Neal and Miki,

Attached please find the United States Trustee's comments to your retention application.  We should consider continuing the application to the next omnibus hearing (6/15 at 10:00 a.m.) and addressing the UST's comments informally to avoid a formal objection.  Please review these comments and contact me tomorrow via the information provided below.  Thanks

Best regards,

Chris Samis
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7845
Facsimile:  (302) 498-7845
mailto: samis@rlf.com

---

Richards, Layton and Finger, P.A. is not providing any advice with respect to any federal tax issue in connection with this matter.

The information contained in this e-mail message is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

---

*In re* **New Century TRS Holdings, Inc.,** *et al.*
**07-10417 (KJC) (Bankr. D. Del.)**
**OUST Inquiries re:  Debtors' Professional Employment Applications**

    A.    Heller Ehrman LLP

        1.     Please provide our office with a "payment run" for the $438,179 in fees and $1,084.50 in expenses received pre-petition.  Appl. ¶ 28.  The "run" should be in the format of a grid or spreadsheet which contains the following information:  invoice date, date(s) of service covered by invoice, payment date, and payment amount.  Retainer payments and draws upon such retainer payments should be noted on the grid or spreadsheet.

        2.     Please provide additional detail regarding the services presently provided to Michael Sachs and KPMG LLP.

    B.    Allen Matkins

        1.     The scope of the proposed engagement includes matters relating to debtor-in-possession financing.  Financing matters are not properly within the scope of a special counsel engagement under 11 U.S.C. § 327(e), given that such matters are matters within the conduct of the Debtors' cases.  The fact that Greenwich is a substantial firm client highlights the importance of this issue.

        2.     Which parties in interest represented more than 1% of the firm's fees billed during fiscal year 2006?

        3.     The application is procedurally inappropriate insofar as it fails to comply with Bankr. Del. L.R. 2016-2(g), which requires that a request to waive information requirements relating to fee applications be made in the caption of the application.  Further, we object to the request to keep time records under a single project category.

    C.    Manatt, Phelps

        1.     Why can't O'Melveny & Myers LLP or Richards, Layton & Finger, P.A. provide the services which are the subject of this application?

        2.     With regard to scope, parts of the proposed engagement (specifically, paragraphs 14(a) and 14(d)) appear to be matters which are not properly within the scope of a special counsel engagement under 11 U.S.C. § 327(e).  We do not understand what paragraph 14(b) of the application encompasses – please explain.  We object to the catch-all paragraph 14(e) as being impermissibly broad.

1

D.    Irell & Manella LLP

1.    On Exhibit B to the application, there is a list of guideline hourly rates. The average rate for the attorneys listed on that schedule is $627.14. Again, why is there a need to bring another law firm in to do this work – why can't O'Melveny & Myers LLP or Richards, Layton & Finger, P.A. do the work?

2.    The scope of the engagement referenced in the 5/1/07 engagement letter needs to be pared down – ". . . any other matter the Firm may agree to take on the Client's behalf[]" is too broad.

3.    The language in the engagement letter describing the client's consent to/waiver of conflicts of interest will need to be reined in. Additionally, the "standard terms" paragraphs 1, 2, and 22 will have to be modified. Paragraphs 1 and 2 of the "standard terms" fundamentally inconsistent with the Local Rules of the Bankruptcy Court, and paragraph 22 (without more) is inconsistent with Chief Judge Walrath's decision in *United Companies* addressing Bankruptcy Court jurisdiction over disputes relating to a professional's engagement.

E.    Grant Thornton LLP

1.    Please provide our office with a "payment run" for the $943,250 received pre-petition. Appl. ¶ 22. The "run" should be in the format of a grid or spreadsheet which contains the following information:  invoice date, date(s) of service covered by invoice, payment date, and payment amount. Retainer payments and draws upon such retainer payments should be noted on the grid or spreadsheet.

2.    Paragraph 2 of both engagement letters should be deleted in their entirety.

3.    Paragraph 4 of the proposed form of order should expressly reference section 330 of the Bankruptcy Code.

F.    ICP Consulting LLC

1.    The application contains limitation of liability provisions in several areas which need to be deleted. Any indemnification would have to be subject to "Planet Hollywood" restrictions in form acceptable to our office, with breach of contract being carved out of the events triggering an obligation to indemnify.

2.    What effect does the failed attempt to auction off the origination platform have on ICP's work, if any – should the fee structure be adjusted downward as a result?

2

3.    Paragraph 10 of the application contains a conclusion without supporting disclosure of connections. Please (i) run a conflicts check for parties in interest and (ii) disclose the results of that check.

4.    The application is procedurally inappropriate insofar as it fails to comply with Bankr. Del. L.R. 2016-2(g), which requires that a request to waive information requirements relating to fee applications be made in the caption of the application. Further, we object to the request made in paragraph 5 of the proposed form of order.