# EXHIBIT 1

DC-930809 v1

Form 254 – Subpoena for Rule 2004 Examination (12/06)

# UNITED STATES BANKRUPTCY COURT

District of __the District of Columbia__

In re   New Century TRS Holdings, Inc.
a Delaware Corporation, et al.,
Debtor

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.*   07-10416 (KJC)
District of Delaware

Chapter   11

To:  KPMG LLP
2001 M Street, N.W.
Washington, D.C. 20036-3310

☒ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| Kirkpatrick & Lockhart Preston Gates Ellis LLP<br>1601 K Street, NW<br>Washington, DC 20006 | TBD<br>Following production of documents |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All documents listed in Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Kirkpatrick & Lockhart Preston Gates Ellis LLP<br>1601 K Street, NW<br>Washington, DC 20006 | 10:00 a.m.<br>August 3, 2007 |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
|  |  |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

Form 254 – Subpoena for Rule 2004 Examination (12/06)

## PROOF OF SERVICE

|  | DATE | PLACE |
| --- | --- | --- |
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| --- | --- |
| | |

| SERVED BY (PRINT NAME) | TITLE |
| --- | --- |
| | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2)(A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1)(A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

### Definitions and Instructions

A.  The term "Debtors" refers to, collectively and individually: New Century Financial Corporation (f/k/a New Century REIT, Inc.), New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation); New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC); NC Capital Corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com,Anyloan.com); New Century Credit Corporation (f/k/a Worth Funding Incorporated); NC Asset Holding, L.P. (f/k/a NC Residual II Corporation); NC Residual III Corporation; NC Residual IV Corporation; New Century R.E.O. Corporation; New Century R.E.O. II Corporation; New Century R.E.O. III Corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage); NC Deltex, LLC; NCoral, L.P.; and, their respective predecessors, successors, subsidiaries, affiliates, divisions, and former and present directors, officers, partners, employees, agents, representatives, attorneys, and employee benefit plans, and all those who act or have acted on their behalf.

B.  "New Century" refers to the entity known as New Century Financial Corporation, and includes but is not limited to its corporate and branch offices, its affiliates, predecessors, successors, and assigns, as well as their former and present employees, agents, representatives and employee benefit plans, and all those who act or have acted on their behalf.

C. "KPMG" refers to the entity known as "KPMG LLP", and its predecessors, successors, affiliates, divisions, and former and present directors, officers, partners, employees, agents, representatives, attorneys, and employee benefit plans, and all those who have acted on their behalf.

D. "Board of Directors" or "Board," as used herein, refers to the Board of Directors of New Century and any of the Board's Committees.

E. "Audit Committee," as used herein, refers to the Audit Committee of the Board.

F. "Audit Committee Investigation," as used herein, refers to the investigation described in Form 12b-25 as filed by the Debtors with the U.S. Securities and Exchange Commission ("SEC") on or about March 2, 2007.

G. "Document[s]", as used herein, refers to all materials in the possession or custody or subject to the control of KPMG, whether drafts of finished versions, originals, or annotated or non-conforming copies thereof, however or by whomever produced or stored (manually, electronically, or otherwise), including but not limited to correspondence, attachments, work papers, memoranda, notes, papers, reports, lists, logs, files, minutes books, analyses, summaries, facsimiles, telexes, calendars, appointment books, diaries, journals, ledgers, travel worksheets, message slips, drawings, graphs, charts, sound, video or voice recordings, images, other writings, and other data or data compilations stored in any medium from which information can be obtained or recovered.

H. "Concerning," as used herein, means relating to, referring to, describing, evidencing or constituting.

I. "Communication[s]," as used herein, includes, without limitation, any conversation, discussion, dialogue, exchange or transfer of information, in person, by telephone, by computer, in writing or otherwise.

J. "Person" includes any natural person, firm, association, partnership, joint venture, corporation, or other legal entity, unless the context indicates otherwise.

K. The terms "all" and "each" shall be construed as all and each. The term "any" means each and every.

L. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

M. "Correspondence" means and includes every manner or means of disclosure, transfer, or exchange and every disclosure, transfer, or exchange of information whether orally or by document, as defined above, or whether face-to-face, by telephone, voicemail, mail, electronic mail, computer, facsimile, personal delivery, overnight delivery or otherwise.

N. The term "date" shall mean the exact day, month, and year if ascertainable, or, if not, the best available approximation (including relationship to other events) of each document's creation.

O. As used herein, the term "relate to," including its various forms such as "relating to," shall mean: consist of, refer to, reflect, evidence, or be in any way logically or factually connected with the matter discussed.

3

P.  As used herein, "documents relating to" shall mean documents containing, evidencing, constituting, showing, relating, or referring in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each request.

Q.  The singular includes the plural and the plural includes the singular. The masculine includes the feminine and neuter genders.

R.  This Subpoena applies to all documents in KPMG's possession, custody and/or control, regardless of the location of such documents.

S.  Each document is to be produced in its entirety, including attachment(s), without abbreviation or redaction, except as provided for in Instruction Y, to the extent a claim of privilege is asserted. In the event that a copy of a document, the production of which is requested, is not identical to any other copy thereof, by reason of any alterations, marginal notes, comments, or material contained therein or attached thereto, or otherwise, all such non-identical copies shall be produced separately.

T.  Documents that are stapled, clipped, or otherwise attached or fastened together in their original condition shall be produced in such form. Documents that are segregated or separated from other documents by use of binders, files, subfiles, dividers, tabs, or any other method, shall be left so segregated or separated. Documents shall be produced in the order in which they are maintained in your files, and shall not be shuffled or otherwise rearranged, and contain all cross-referencing among documents, tickmarks or other referencing, and tickmarks and referencing legends.

U.  When a request is made herein to identify a "person," such request shall be deemed to include, where appropriate, the following:

   a.  the complete business address, home address and telephone number(s) of that person;

   b.  a description of the person's professional licenses, business positions, titles or designations during the relevant period; and

   c.  a description of the time period during which the person held each of the above licenses, positions, titles or designations.

   d.  a description of the person's area of responsibility and his or her role on any work performed for Debtors.

V.  When a request is made herein to identify a "communication," such request shall be deemed to include, where appropriate, the following:

   a.  the date on which such communication occurred;

   b.  the place at which such communication occurred;

   c.  the names, addresses and telephone number(s) of all parties to such communication, including any parties who are designated as "cc's" or "bcc's" to any communication;

   d.  the manner in which such communication occurred (e.g., by telephone, in person, in writing, by computer or otherwise); and

   e.  the substance of such communication.

W.  In the event that any document called for by this Subpoena has been destroyed, discarded or otherwise lost, the following information shall be provided for each such document: (i) all authors and addressees; (ii) any indicated or blind copies; (iii) the document's date, subject

matter and number of pages; (iv) the date of the document's destruction or discard and the reason therefore; (v) whether any copies of the document presently exist, and if so, the name of the custodian of each copy; and (vi) whether the document can be recovered or recreated, including the means of recovering or recreating such document and related attachments.

X.   If any of the documents requested are not produced, for whatever reason, please submit a list stating:

    a.   the creator(s) of the documents;

    b.   the date of creation of the documents;

    c.   their present or last known custodian;

    d.   the subject matter of the documents;

    e.   all persons or entities known to have been furnished the documents or copies of the documents, or informed of their substance; and

    f.   the reason the documents are not being produced.

Y.   All documents to which any privilege is claimed, whether based on statute or otherwise, shall be marked, identified, held separately and retained intact by KPMG subject to and pending a ruling by the Bankruptcy Court. All objections based on privilege shall:

    a.   state the nature of the claim of privilege;

    b.   the date(s) the document was created, sent and received,

    c.   the name, the present or last known home and business addresses, the telephone numbers, the title (or position) and the occupation of those individuals who prepared, produced, or reproduced, or who were recipients of, said documents;

  d. a description of the document sufficient to identify it without revealing the information for which the privilege is claimed, including the general subject matter and character of the document (e.g., letter, memorandum, notes);

  e. the location of the document;

  f. the custodian of the document; and

  g. each and every fact or basis on which such privilege is claimed or on which the document is otherwise withheld.

Notwithstanding the assertion of your objection, any requested document which you object to furnishing but which nevertheless contains non-objectionable information which is responsive to any request must be produced, but that portion of the document for which the objection is asserted may be redacted, provided that the above-requested information is furnished and the redacted portion is noted as redacted on the document.

 Z. Each request in this Subpoena shall be deemed continuing so as to require prompt, supplemental production of additional responsive documents that are received, generated or discovered after the time of original production.

 AA. Each request in this Subpoena shall be answered separately and fully.

 BB. In responding to these requests, you shall recover and preserve all responsive documents and information and furnish all documents in your possession, custody or control at the time of production, including documents in the possession custody, or control of your agents, attorneys and representatives and shall supplement your response whenever necessary in accordance with the Rules of this Court.

## Time Period

Unless otherwise specified, the documents requested herein concern the period from January 1, 2004 through the present.

### Documents Requested

1.  All documents and communications, including, but not limited to, work papers, internal memoranda, planning memoranda, consultation memoranda, checklists, audit programs, budgets, risk assessments, documents provided by Debtors or other persons or entities, testing and walk-through documentation, and materiality assessments concerning or relating to any and all work or professional services performed by KPMG for New Century or the Debtors during the period between January 1, 2004 through the present, including but not limited to:

    (a) KPMG's audits of Debtors' consolidated financial statements and KPMG's audit of Debtors' internal control over financial reporting (collectively the "Integrated Audit") for the audit years of 2004, 2005, and 2006;

    (b) KPMG's reviews of Debtors' consolidated balance sheets for each quarterly period from January 1, 2004 through the present, and the related condensed consolidated statements of operations, comprehensive income, stockholders' equity and cash flows for the quarterly and year-to-date periods which were to be included in the quarterly reports (Form 10-Q's) filed by Debtors under the Securities Exchange Act of 1934;

    (c) Reviews and procedures performed by KPMG in connection with any incorporation of any reports by KPMG in Debtors' registration statements from January 1, 2004 through the present;

8

(d) Reviews and procedures performed by KPMG in connection with any comfort letters requested by Debtors; and,

(e) The preparation and/or issuance by KPMG of any reports relating to Debtors including but not limited to any audit opinions or reports, debt covenant compliance reports, preferability letters, consents, agreed-upon procedures reports, USAP ("Uniform Single Attestation Program for Mortgate Bankers") reports or letters, HUD letters and electronic filings, SEC Regulation AB internal control letters, and valuation opinions or reports and any other opinions or reports prepared in connection with consulting and/or professional advisory services.

3. All agreements proposed or entered into by KPMG and the Debtors, including, but not limited to, engagements letters for all audit, tax, agreed-upon procedures, valuation, consulting and other professional or advisory services.

4. For all engagements and/or services provided by KPMG for Debtors as identified in Items 2 or 3, documents sufficient to identify all engagement team members from staff level through partner, including but not limited to consultants, specialists, and any concurring review partners and technical accounting and auditing office or national office personnel who performed services for Debtors on behalf of KPMG, or, who provided KPMG engagement personnel with advice or consultation or audit, accounting and/or other engagement issues.

5. For all individuals identified in response to Item 4, provide documents sufficient to identify the following information:

(a) Professional qualifications (including educational background, industry expertise, employment experience, continuing professional education and engagement reviews) and hourly billing rate;

(b) Their current, or last known, contact information including telephone, address, and email; and,

(c) Their performance evaluations for the period in which they performed services for the Debtors.

6. For all individuals identified in response to Item 4, provide copies of all employee desk files relating to Debtors.

7. All documents concerning the following matters relating to New Century:

   a. All reviews or testing of New Century's internal controls, including any work performed by KPMG or New Century in connection with Section 404 and Section 302 of the Sarbanes-Oxley Act of 2002, including testing and related work papers, narratives, flow charts, matrices, walk-throughs and transactions tested and documentation explaining the results of such, and fraud risk assessments and any responses thereto.

   b. Audit testing, analyses, work papers, and work paper support for all financial statement accounts and disclosures, including, but not limited to, the following:

10

(i)   Cash, cash equivalents and restricted cash, including, but not limited to, bank reconciliations, cash receipts and cash disbursements testing and bank confirmations.

(ii)  Mortgage loans held for sale, including, but not limited to, the lower of amortized cost or market calculations and adjustments.

(iii) Allowance for repurchase losses on loans sold, including, but not limited to, the underlying assumptions, factors, calculations, adjustments used to estimate the allowance, historical experience, premiums received on and volume of recent whole loan sales, the general secondary market and general economic environment provision for repurchase losses, net charge-offs to the allowance, and any other activity in the allowance account.

(iv)  Mortgage loans held for investment, including, but not limited to, the allowance for losses on mortgage loans held for investment, estimates used to establish those allowances, loss provisions and charge-offs of uncollectible loans.

(v)   Residual interests in securitizations, including, but not limited to, the underlying assumptions and calculations used for estimating: (i) fair value of estimated future cash flows, (ii) future rate of prepayments, (iii) prepayment premiums, (iv) delinquencies, (v) defaults, (vi) default loss severity, (vii) average cumulative losses

11

as a percentage of original principal balances of mortgage loans, and (viii) discount rates.

(vi)   The over-collateralization account and net interest receivable balance.

(vii)  Credit facilities on mortgage loans held for sale.

(viii) Financing on mortgage loans held for sale or investment.

(ix)   Accounts payable and accrued liabilities.

(x)    Convertible senior notes, subordinated debt, residual financing and notes payable.

(xi)   Other liabilities including, but not limited to, the search for unrecorded liabilities.

(xii)  Intercompany accounts and transactions.

(xiii) Stockholders' equity roll-forwards.

(xiv)  Interest income and interest expense.

(xv)   Gain on sale of mortgage loans, including, but not limited to, the underlying assumptions, calculations and adjustments used to determine the gain on sale amounts.

(xvi)  Servicing income, other income, other operating expenses and income taxes.

(xvii) Basic earnings per share and diluted earnings per share calculations.

(xviii) Financial statement reporting and disclosures, including, but not limited to, the Statement of Cash Flows, the Statement of Stockholders Equity and information and amounts included in the notes to the financial statements.

(xix) Debtors' change(s) in accounting policies.

(xx) Permanent and Carry-forward files.

c. All agreed-upon procedures, valuation, consulting and other professional advisory services performed by KPMG on behalf of the Debtors.

8. All documents and memoranda on accounting or auditing issues issues relating to Debtors including, but not limited to, correspondence to and from concurring review partners, KPMG's Department of Professional Practice ("DPP"), technical accounting and auditing office, national office and/or specialists used by KPMG.

9. All draft and final versions of KPMG Defining Issues and similar internal or external communications including, but not limited to, those editions describing Financial Accounting Standards Board ("FASB") Statements 65, 140, 150, and 157.

10. All draft and final management representation letters relating to Debtors.

11. All draft and final management comment letters prepared by KPMG relating to Debtors, and any responses provided by Debtors, and any communications relating to or

13

referencing such documents or findings communicated to Debtors, including, but not limited to, Debtors' Board of Directors, Audit Committee, and management.

12. All documents concerning the following items relating to Debtors:

    a. Adjusting or reclassifying journal entries.

    b. Proposed adjusting or reclassifying journal entries and related communications with management and the Audit Committee, including, but not limited to, any disagreements with management and the Audit Committee's positions with respect to the proposed adjusting or reclassifying journal entries.

    c. Effects of proposed adjusting or reclassifying journal entries, recorded and unrecorded, and other information related to the materiality assessments of the proposed adjusting journal entries.

13. All presentations made by KPMG to the Debtors' Audit Committee, including draft and final versions, Audit Committee planning packages, communications with Audit Committee members regarding disagreements with management positions, disclosures and findings with regard to internal control practices and procedures, adjusting or reclassifying journal entries, materiality matters, execution of planning and changes thereto and engagement fees.

14. All draft and final versions of presentations made by KPMG to the Debtors' Board of Directors, any committees or subcommittees thereof, and/or Debtors' management.

14

15. All documents relating to communications between KPMG and the Debtors' Board of Directors, and/or all Committees of the Board, including, but not limited to, the Audit Committee and the Finance Committee.

16. All documents relating to Debtors' Internal Audit department or personnel, including but not limited to documents relating to any reviews planned or performed by the Internal Audit department, and any work by the Internal Audit department that was reviewed and/or relied upon by KPMG.

17. All documents relating to the Debtors' February 7, 2007 announcement concerning accounting irregularities requiring a restatement of financial results for March 31, June 30 and September 30, 2006.

18. All documents relating to the Debtors' March 2, 2007 announcement of its inability to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2006 and the Debtors' Audit Committee investigation.

19. All documents relating to the Debtors' May 24, 2007 announcement that the Audit Committee has determined that there were errors in the Debtors' previously filed annual financial statements for its fiscal year ended December 31, 2005 with respect to both the accounting and reporting of loan repurchase losses and the Debtors' valuation of certain residual interests in securitizations.

20. All documents relating to the Audit Committee Investigation including, but not limited to, work paper support, e-mail communications, facsimiles, letters, memoranda and communications with Heller Ehrman and/or PricewaterhouseCoopers.

21. All documents relating to KPMG's review or oversight of the Audit Committee Investigation including, but not limited to, any notes, communications, and worksheets.

22. All internal communications within KPMG concerning the Debtors or professional services provided by KPMG to the Debtors.

23. All communications between KPMG and the SEC, the United States Attorneys' Office, the Department of Justice and/or any federal or state government regulatory agency.

24. All communications between KPMG and the Debtors' credit providers concerning the Debtors.

25. All communications between KPMG and accounting and auditing technical authorities concerning the Debtors, including, but not limited to, the FASB, the SEC, the Public Company Accounting Oversight Board ("PCAOB"), government regulatory bodies, and/or the American Institute of Certified Public Accountants ("AICPA").

26. All documents relating to the determination that KPMG was independent from the Debtors as an auditor, as required by the rules of the SEC.

27. All documents relating to KPMG's resignation as independent accountant for the Debtors.

28. All KPMG audit manuals, internal and external guidance, industry guides and/or checklists, for the period of January 1, 2004 through the present, relevant or relating to the accounting and auditing issues reviewed by KPMG as part of its 2004, 2005, and 2006 audit opinions and internal controls certifications relating to the Debtors.

29.     All documents and communications relating to Debtors' public disclosures and/or filings with the SEC, including, but not limited to, annual reports and quarterly reports, and Forms 8-K.

30.     All documents relating to any proposed or contemplated sale of the Debtors, including, but not limited to, Project 2000.

31.     All documents relating to valuation of residuals by or on behalf of the Debtors including, but not limited to, Project Kettle Bell.

32.     To the extent not previously called for by a previous request, all documents that have been or will be produced by or on behalf of KPMG and any of its current or former employees to the SEC, the United States Attorneys' Office or in response to any third party subpoenas as part of any investigation or litigation relating to the Debtors, and any of their agents, employees, subsidiaries and related companies.