# EXHIBIT "A"

FILED
CLERK, U.S. DISTRICT COURT

JUN 26 2007

CENTRAL DISTRICT OF CALIFORNIA
BY

✓ Priority
✓ Send
___ Clsd
✓ Enter
NO JS-5/JS-6
___ JS-2/JS-3
___ Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT

JUN 27 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI GOLD, individually and on behalf of all others similarly situated, | ) Case No. CV 07-00931 DDP (JTLx) ) |
| | ) **ORDER GRANTING IN PART AND** |
| Plaintiff, | ) **DENYING IN PART VARIOUS** ) **PLAINTIFFS' MOTIONS REGARDING** ) **CONSOLIDATION, LEAD PLAINTIFF** |
| v. | ) **STATUS, AND LEAD COUNSEL STATUS** ) |
| BRAD A. MORRICE, TAJ. S. BINDRA, ROBERT K. COLE, PATTI M. DODGE, NEW CENTURY FINANCIAL CORP., | ) [Motions of NYS Teachers, Joe ) Verne, Charles Hooten, Reinhard ) Barthel, and PSP Group (Docket ) Nos. 17, 24, 30, 34, 41, ) respectively) filed on April 10, |
| Defendants. | ) 2007; Kaufman Trust's motion ) transferred (Docket. No. 113) on ) May 14, 2007] |

This matter is before the Court on plaintiffs' motions

regarding consolidation, appointment of lead plaintiff, and

appointment of lead counsel.[1]  After reviewing the papers submitted

by the parties, the Court consolidates the actions, appoints the

---

[1]    Several plaintiffs filed motions and subsequently withdrew
them.  Accordingly, the motions the Court has reviewed and
addressed in this tentative ruling are those filed by:  NYS
Teachers (Docket No. 17); Joe Verne (Docket No. 24); Charles Hooten
(Docket No. 30); Reinhard Barthel (Docket No. 34); "Preferred Share
Purchasers Group" ("PSP Group") (Docket No. 41); and Jay Peter
Kaufman Revocable Trust ("Kaufman Trust").

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

145

1  New York State Teachers Retirement System ("NYS Teachers") as lead
2  plaintiff, and appoint its counsel as lead counsel.
3
4  **I.    BACKGROUND**
5       These actions are securities purchaser class action lawsuits
6  that have been brought against certain officers and/or directors of
7  New Century, alleging violations of Sections 10(b) and 20(a) of the
8  Securities Exchange Act of 1934 and Rule 10b-5.[2]  The following
9  factual summary is based on the common allegations of the many
10  plaintiffs' complaints:
11       New Century is organized as a real estate investment trust
12  under the laws of Maryland, with its principal executive offices in
13  Irvine, California.  Throughout the class period, Defendants
14  artificially inflated the price of New Century securities through
15  false and misleading statements concerning New Century's finances
16  and mortgage lending business.  In particular, at all relevant
17  times, New Century maintained inadequate reserves against losses
18  associated with loan delinquencies.  These understated reserves
19  caused New Century to overstate its publicly reported earnings
20  significantly.  This manipulation created the false impression that
21  New Century employed appropriate mechanisms and procedures to
22  manage the risks associated with its subprime lending business,
23  thereby bolstering New Century's false and misleading statements to
24  that effect during the class period.
25
26
27  ────────────
28       [2]  As discussed below, a few plaintiffs are also alleging
    violations of Section 11.

1    Moreover, during the period of Defendants' misconduct and the
2 artificial inflation in New Century stock, certain key officers and
3 directors of New Century engaged in significant insider sales.

4    On February 7, 2007, after the market had closed for the day,
5 New Century announced that it would have to restate its 2006
6 financial statements for the first three quarters of 2006.  New
7 Century also delayed filing its annual report on Form 10-k for the
8 fiscal year ended December 31, 2006.  According to New Century, its
9 "restated net income [would be] significantly lower than previously
10 reported" for all three quarters as a result of the improper
11 application of generally accepted accounting principles ("GAAP") to
12 New Century's financial reserves for loan delinquencies.  New
13 Century also disclosed that it was investigating whether its
14 financial statements for prior periods were similarly misstated.

15    The next day, shares of New Century's stock declined $10.92
16 per share (or 36 percent) to close at $19.24 per share.  They have
17 been steadily declining ever since.  The Securities and Exchange
18 Commission, the U.S. Attorney's Office, and the Market Trading
19 Analysis Department of the New York Stock Exchange ("NYSE") all
20 have commenced investigations related to these disclosures and, on
21 March 13, 2007, New Century was suspended from trading on the NYSE.
22 New Century filed for Chapter 11 bankruptcy protection on April 2,
23 2007, and subsequently terminated over three thousand of its
24 employees.

25    In the wake of New Century's corrective disclosures, numerous
26 class actions were filed in the Central District of California.
27 The first such complaint, <u>Avi Gold v. Brad A. Morrice, et al.</u>, was
28 filed on February 8, 2007.  Numerous notices of the pendency of the

1 class actions were also published over a widely circulated national

2 business-oriented service, alerting class members to the April 10,

3 2007 deadline to submit motions seeking to serve as lead plaintiff

4 on behalf of the New Century investors.  The first notice referred

5 to a class period extending from May 4, 2006 until February 7,

6 2007.  Subsequent notices expanded this class period to extend from

7 February 3, 2005 through March 2, 2007.

8     Several plaintiffs have filed motions regarding consolidation

9 of the actions, appointment of lead plaintiff, and appointment of

10 lead counsel.  The Court has reviewed all submissions in writing

11 this tentative ruling.[3]

12

13 II.  CONSOLIDATION

14     The Private Securities Litigation Reform Act of 1995 ("PSLRA")

15 provides that where there are multiple actions on behalf of a class

16 asserting substantially the same claim or claims, a court shall

17 resolve the issue of consolidation before appointing a lead

18 plaintiff.  Consolidation is appropriate when there are several

19 actions involving common questions of law or fact.  See 15 U.S.C. §

20 78u-4(a)(3)(B)(ii); Fed. R. Civ. P. 42(a).

21     There are over twenty securities class action complaints

22 currently pending before this Court on behalf of investors in New

23 Century securities.  All of the related actions allege class action

24 claims for violations of Section 10(b) and 20(a) of the Exchange

25 Act on behalf of class members who purchased or otherwise acquired

26 ─────────────────

27     [3]  The Court hereby grants the Kaufrman Trust's motion to file
a response to the dual filings of the PSP Group, dated June 11 and
28 June 13, 2007.  The Court has reviewed the Kaufman Trust's response
to PSP Group's filings.

1 New Century securities during the class period.  Each of the
2 related actions names the same defendants and asserts similar class
3 claims brought on behalf of purchasers of New Century securities
4 who purchased in reliance on the materially false and misleading
5 statements and omissions at all relevant times.  Accordingly,
6 consolidation is appropriate here under the PSLRA and Federal Rule
7 of Civil Procedure 42(a).

8       The only movant to oppose consolidation is the PSP Group.  The
9 PSP Group's principal argument against consolidation is that,
10 because preferred shareholders have priority over common
11 shareholders in a bankruptcy liquidation, there is a conflict of
12 interest between the preferred shareholders and the common
13 shareholders.  This argument, however, does not justify ordering
14 these actions to proceed separately.  Litigation against New
15 Century is automatically stayed during the pendency of the
16 bankruptcy.  11 U.S.C. § 362(a).  However, the securities class
17 action against the individual defendants will be unimpeded by New
18 Century's bankruptcy proceedings.  It will be up to the bankruptcy
19 court, rather than this Court, to determine which class of
20 shareholders has liquidation priority over the other.  11 U.S.C. §
21 1123; In re Enron Sec. Litig., 206 F.R.D. 427, 451 (S.D. Tex. 2002)
22 (declining opposition to consolidation by reasoning that
23 "[u]ltimately the bankruptcy court will determine the priority or
24 preference status of the various securities holders here for claims
25 against Enron.").  The fact that the preferred shareholders will
26 have a different liquidation priority status in bankruptcy than the
27 common shareholders is not enough to overcome the strong preference
28 for consolidating these securities cases which share a common core

1 of facts and legal issues.  Therefore, the Court consolidates the

2 actions into one case, In re New Century.[4]

3

4 **III.  LEAD PLAINTIFF**

5    The Ninth Circuit has held that the PSLRA "provides a simple

6 three-step process for identifying the lead plaintiff" in a

7 securities fraud case.  In re Cavanaugh, 306 F.3d 726, 729 (9th

8 Cir. 2002).

9    First, the plaintiff who files the first action must, within

10 20 days of filing the action, publish a notice to the class

11 informing class members of their right to file a motion for

12 appointment as lead plaintiff.  Id.; 15 U.S.C. § 78u-4(a)(3)(A)(I).

13 Within 60 days after publication of the required notice, any member

14 or members of the proposed class may apply to the Court to be

15 appointed as lead plaintiff, whether or not they have previously

16 filed a complaint in the action.  Id.

17    Next, the Court shall appoint as lead plaintiff the movant

18 that the Court determines to be most capable of adequately

19 representing the interests of class members within 90 days after

20 publication of the initial notice of pendency.  15 U.S.C § 78u-

21 4(a)(3)(B)(I).  In determining who is the "most adequate

22 plaintiff," the Exchange Act provides that:

23    The court shall adopt a presumption that the most adequate

24    plaintiff in any private action arising under this title is

25    the person or group of persons that:

26 ————————————————

27    [4] As the Enron court noted, consolidation for pretrial
matters does not necessarily mean that the claims will all be tried
28 together, especially where the nature of the evidence and damages
issues differ substantially.  Enron, 206 F.R.D. at 438.

1          (aa) has either filed the complaint or made a motion

2          in response to a notice

3          (bb) in the determination of the court, has the

4          largest financial interest in the relief sought by the

5          class; and

6          (cc) otherwise satisfies the requirements of Rule 23

7          of the Federal Rules of Civil Procedure [pertaining to

8          class actions].

9    15 U.S.C. 78u-4(a)(3)(B)(iii); <u>Cavanaugh</u>, 306 F.3d at 729-30; <u>In re</u>

10   <u>Cendant Corp. Litig.</u>, 264 F.3d 201, 262 (3d Cir. 2001) (citing 15

11   U.S.C. 78u-4(a)(3)(B)(iii)).

12        As a third and final step, the court must "give other

13   plaintiffs an opportunity to rebut the presumptive lead plaintiff's

14   showing that it satisfies Rule 23's typicality and adequacy

15   requirements." <u>Cavanaugh</u>, 306 F.3d at 730. The <u>Cavanaugh</u> court

16   cautioned that a straightforward application of the statutory

17   scheme provides no occasion for comparing plaintiffs with each

18   other on any basis other than their financial stake in the case; so

19   long as the plaintiff with the largest losses satisfies the

20   typicality and adequacy requirements, she is entitled to lead

21   plaintiff status, even if the district court is convinced that some

22   other plaintiff would do a better job. <u>Id.</u> at 732.

23

24        A.    Publication

25        Plaintiff in the first-filed action published a notice on

26   Market Watch on February 9, 2007. This notice indicated that

27   applications for appointment as lead plaintiff were to be made no

28

1  later than April 10, 2007.[5]  Thus, the Court finds that the

2  publication requirement was been met.

3

4  **B.  Largest Financial Interest**

5  Courts in this Circuit generally look to three factors in

6  determining which plaintiff has the largest financial interest in

7  the litigation:  (1) the number of shares that the plaintiffs

8  purchased during the class period; (2) the total net funds expended

9  by the plaintiffs during the class period; and (3) the approximate

10  losses suffered by the plaintiffs.  See, e.g., Ferrari v. Gisch,

11  225 F.R.D. 559, 604 (C.D. Cal. 2004).

12  A review of the declarations and briefs submitted by the

13  movants shows that NYS Teachers is the presumptive lead plaintiff

14  because it has suffered, by far, the largest loss overall.  NYS

15  Teachers purchased 1,362,500 shares of New Century common stock on

16  a gross basis during the class period.  During the same period, NYS

17  Teachers sold only a small portion of these shares, resulting in

18  net purchases of 1,300,100 shares.  NYS Teachers expended a total

19  of $52,745,180.00 on these purchases.  As a result of the

20  revelations of Defendant's misconduct, NYS Teachers suffered

21  approximately $50 million in losses.  Specifically, NYS Teachers

22  lost $48,976,835.76 on a LIFO ("last in, first out") basis and

23  $50,837,398.56 on a FIFO ("first in, first out") basis.  (Nicholas

24  Decl., Exs. D & E.)

25  Given that NYS Teachers is clearly the investor with the

26  largest overall losses - nearly ten times those of any other

27  ───────────

28  [5] For purposes of this tentative, the Court accepts the
Kaufman Trust's motion as timely.

1  plaintiff applying for lead plaintiff status - the Court is finds
2  that NYS Teachers is the presumptive lead plaintiff.

3

4       C.    **Rule 23**

5       In <u>Cavanaugh</u>, the Ninth Circuit stated that once the court has
6  identified the plaintiff with the greatest financial stake in the
7  lawsuit, it "must then focus its attention on that plaintiff and
8  determine, based on the information he has provided in his
9  pleadings and declarations, whether he satisfies the requirements
10 of Rule 23(a), in particular those of 'typicality' and 'adequacy.'
11 " <u>Id.</u> at 730.  At this stage, the court "must rely on the
12 presumptive lead plaintiff's complaint and sworn certification;
13 there is no adversary process to test the substance of those
14 claims." <u>Id.</u>  A wide ranging analysis "is not appropriate and
15 should be left for consideration of a motion for class
16 certification." <u>Fischler v. AmSouth Bancorp.</u>, 1997 WL 118429, at
17 *2 (M.D. Fla. Feb. 6, 1997).  Moreover, as noted by the Third
18 Circuit in <u>Cendant</u>, "institutional investors and others with large
19 losses will, more often than not, satisfy the typicality and
20 adequacy requirements." <u>Cendant</u>, 264 F.3d at 264.

21

22           1.    **Typicality**

23       The typicality inquiry is intended to assess whether the
24 action can be efficiently maintained as a class and whether the
25 lead plaintiffs have incentives that align with those of absent
26 class members so that the absentees' interests will be fairly
27 represented.  <u>Baby Neal v. Casey</u>, 43 F.3d 48, 57 (3d Cir. 1994)
28 (citation and ellipses omitted).  Under Rule 23's permissive

1 standards, representative claims are "typical" if they are
2 reasonably co-extensive with those of absent class members; they
3 need not be substantially identical.   <u>Hanlon v. Chrysler Corp.</u>,
4 150 F.3d 1011, 1019 (9th Cir. 1998).  "Typicality entails an
5 inquiry whether the named plaintiff's individual circumstances are
6 markedly different or . . . the legal theory upon which the claims
7 are based differs from that upon which the claims of other class
8 members will perforce be based."  <u>Takeda v. Turbodyne Tech., Inc.</u>,
9 67 F.Supp.2d 1129, 1136-37 (C.D. Cal. 1999) (citations omitted).

10     Here, the NYS Teachers' claims are typical because, just like
11 other proposed class members, NYS Teachers: (1) purchased or
12 acquired New Century securities during the class period, (2) at
13 prices alleged to be artificially inflated by New Century's
14 materially false and misleading statements and omissions, and (3)
15 suffered damage as a result.  <u>See</u> <u>Tanne v. Autobytel, Inc.</u>, 226
16 F.R.D. 659, 667 (C.D. Cal. 2005).  Consequently, NYS Teachers'
17 claims are similar to those of the other proposed class members.
18 Accordingly, the Court finds that NYS Teachers has made a
19 preliminary showing that it satisfies the typicality requirement of
20 Rule 23.

21

22     **2.  Adequacy**

23     Rule 23(a) also requires that the person(s) representing the
24 class be able to "fairly and adequately protect the interests" of
25 all members in the class.  Fed. R. Civ. P. 23(a)(4).  Whether the
26 class representative will adequately represent the class depends on
27 the circumstances of each case.  <u>McGowan v. Faulkner Concrete Pipe</u>
28 <u>Co.</u>, 659 F.2d 554, 559 (5th Cir. 1981).  The Ninth Circuit has held

1  that representation is "adequate" when: (1) the representative's
2  interests are not antagonistic to the interests of absent class
3  members; (2) it is unlikely that the action is collusive; and (3)
4  counsel for the class is qualified and competent. <u>In re Northern</u>
5  <u>Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.</u>, 693 F.2d 847,
6  855 (9th Cir. 1982).

7      In addition, the class representative must have a sufficient
8  interest in the outcome of the case to ensure vigorous advocacy.
9  <u>See</u> <u>Riordan v. Smith Barney</u>, 113 F.R.D. 60, 64 (N.D. Ill. 1986).
10 "Adequacy, for purposes of the lead plaintiff determination, is
11 contingent upon both the existence of common interests between the
12 proposed lead plaintiffs and the class, and a willingness on the
13 part of the proposed lead plaintiff[s] to vigorously prosecute the
14 action." <u>In re Milestone Scientific Sec. Lit.</u>, 183 F.R.D. 404, 416
15 (D. N.J. 1998).

16     Here, NYS Teachers is an adequate plaintiff because it has
17 suffered the greatest financial loss, ensuring vigorous advocacy.
18 It has submitted a certification affirming its understanding of the
19 duties owed to class members through its commitment to oversee the
20 prosecution of this class action.  (<u>See</u> Nicholas Decl., Exs. A &
21 F.)  Moreover, NYS Teachers is a classic example of the type of
22 lead plaintiff envisioned by Congress in its enactment of the
23 PSLRA.  <u>See, e.g.</u>, <u>Cendant</u>, 404 F.3d at 180 (holding that the PSLRA
24 establishes "a paradigm in which the plaintiff with the largest
25 stake in the case, usually a large and sophisticated institution,
26 is accorded the status of lead plaintiff and assigned the right to
27 appoint and duty to monitor lead counsel for the class").  Finally,
28

1  there is no evidence that NYS Teachers' action is collusive.[6]
2  Accordingly, the Court finds that NYS Teachers has made a
3  preliminary showing that it satisfies the adequacy requirement of
4  Rule 23.

5

6          3.    Conclusion Regarding Rule 23

7      NYS Teachers has made a prima facie showing that it satisfies
8  both the typicality and adequacy requirements of Rule 23.    The
9  Court concludes that NYS Teachers is presumptively the most
10 adequate lead plaintiff.    See Cavanaugh, 306 F.3d at 730.

11

12     D.    Rebutting the Presumption

13     Pursuant to the PSLRA, the statutory presumption in favor of
14 the most adequate plaintiff can only be rebutted in two ways.    As
15 provided in the statute:

16     The presumption . . . may be rebutted only upon proof by a
17     member   of   the   purported   plaintiff   class   that   the
18     presumptively most adequate plaintiff -

19          (aa)   will   not   fairly   and   adequately   protect   the
20          interests of the class; or

21          (bb)   is subject to unique defenses that render such
22          plaintiff incapable of adequately representing the
23          class.

24 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also Advanced Tissue
25 Sciences, 184 F.R.D. at 350-51.    As noted in Cendant, "once the
26 presumption is triggered, the question is not whether another

27

28     [6]  See discussion at III.D.2, infra.

12

1 movant might do a better job of protecting the interests of the

2 class than the presumptive lead plaintiff; instead, the question is

3 whether anyone can <u>prove</u> that the presumptive lead plaintiff will

4 not do a fair and adequate job." <u>Cendant</u>, 264 F.3d at 267

5 (internal quotations omitted) (emphasis added).

6

7          1.   **Verne**

8          Movant Joe Verne initially requested that the purchasers of

9 Series B Preferred Stock form an independent class or subclass.

10 However, in light of New Century's May 24, 2007 admission that its

11 2005 financial statements can no longer be relied upon, he "no

12 longer sees a conflict between purchasers of the Series A Preferred

13 Stock and purchasers of the Series B Preferred stock." (Response

14 of Lead Plaintiff Movant, Joe Verne, to the Preferred Share

15 Purchaser Group's Motion to Oppose Consolidation, at 1.)

16 Accordingly, Verne no longer opposes NYS Teachers' motion for

17 appointment as lead plaintiff. Thus, the Court finds that Verne

18 has not rebutted the presumption that NYS Teachers should be

19 appointed as lead plaintiff.

20

21          2.   **Hooten**

22          Movant Charles Hooten is the only movant to assert that NYS

23 Teachers is conflicted from serving as lead plaintiff. First, he

24 argues that NYS Teachers may own common stock of Bear Stearns &

25 Co., a large financial institution that could possibly be a

26 defendant in this action. However, he has not submitted any

27 evidence that NYS Teachers owns such stock, and "speculations about

28 possible conflicts do not rebut the statutory presumption that one

1 lead plaintiff can vigorously pursue all available causes of action
2 against all possible defendants under all available legal
3 theories." <u>Aronson v. McKesson</u>, 79 F.Supp.2d 1146, 1151 (N.D. Cal.
4 1999) (emphasis omitted).  Furthermore, even if Hooten had
5 submitted evidence that NYS Teachers owned common stock of Bear
6 Stearns & Co., that evidence would likely not constitute "proof" of
7 a conflict.  In enacting the PSLRA, Congress envisioned that large
8 institutional investors would often serve as lead plaintiffs.  Such
9 institutional investors typically hold stock in a large companies.
10 The fact that one of those companies may end up as a defendant at
11 some stage in the litigation is likely not enough to overcome the
12 strong presumption in favor of appointing institutional investors
13 as lead plaintiffs.

14     Hooten also argues that NYS Teachers is conflicted because it
15 is audited by KPMG, the same company that audits New Century.
16 Courts that have addressed this argument, however, have found it
17 "unremarkable" that a large corporation and a large institutional
18 investor use the same large auditing firm.  <u>See, e.g.</u>, <u>In re</u>
19 <u>Electronic Date Systems Corp. Sec. Litig.</u>, 226 F.R.D. 559, 565
20 (E.D. Tex. 2005).  The Court agrees with this reasoning and finds
21 that Hooten's allegations of conflict have failed to rebut the
22 presumption that NYS Teachers should be appointed as lead
23 plaintiff.

24

25          **3.   Barthel**

26     Movant Reinhard Barthel has suffered an alleged loss of
27 $108,293.  He argues that he is the only plaintiff seeking to be
28 appointed solely on behalf of the purchasers of options, and that

14

1  purchasers of options should be separated into a different
2  subclass.  Thus, he contends that he should be appointed lead
3  plaintiff for the options class.

4      However, district courts throughout the United States have
5  rejected the notion of appointing "niche" lead plaintiffs for
6  options subclasses.  See, e.g., In re XM Satellite Radio Holdings
7  Sec. Litig., 237 F.R.D. 13, 20-21 (D.D.C. 2006) (declining to
8  appoint co-lead plaintiff on behalf of options purchasers where the
9  option movant's "financial loss is so dwarfed by that of the
10 stockholders, the creation of a sub-class and the potential for
11 fragmenting the litigation strategy is not warranted.").  Here,
12 Barthel's loss of is dwarfed by that of the other investors.  The
13 Court therefore finds that the creation of a subclass, and thus the
14 potential for fragmenting the litigation strategy, is not warranted
15 at this stage.

16

17              **4.    PSP Group and Kaufman Trust**

18     The PSP Group and the Kaufman Trust each own preferred shares
19 of New Century stock.  Both movants contend that they have claims
20 under Section 11 of the Securities Act of 1933 ("Securities Act")
21 that are not related to the Section 10(b) fraud actions brought by
22 plaintiffs who own common stock in New Century.  Accordingly, they
23 argue that the Court should create a subclass for the Section 11
24 claimants and appoint one of them as co-lead plaintiff because: (1)
25 the burden of proof for Section 11 claims is lower than that of
26 Section 10 claims; (2) the preferred shareholders can more quickly
27 pursue their claims against the underwriter defendants in this case
28 if afforded co-lead plaintiff status; and (2) strategic conflicts

1  between the interests of the common share purchasers and the
2  preferred share purchasers may prevent NYS Teachers from adequately
3  representing both share purchasers' interests.

4      It is undisputed that the Court has discretion to create a
5  subclass when the claims in the litigation are so different that
6  the interests of the various segments of the class conflict.
7  However, courts typically refuse to appoint co-lead plaintiffs on
8  behalf of "niche" investors in preferred securities when all the
9  claims are predicated on the same allegedly false and fraudulent
10 misrepresentations.  In re Delphi Corp. Sec. Deriv. & ERISA Litig.,
11 458 F.Supp.2d 455, 462 (E.D. Mich. 2006).  This is because a lead
12 plaintiff need not have standing to bring all causes of action
13 against defendants.  As the Central District of California
14 explained in Tanne:

15     Nothing in the PSLRA indicates that district courts must
16     choose a lead plaintiff to sue on every available action.
17     Rather, because the PSLRA mandates that courts must choose
18     a party who has, among other things, the largest financial
19     stake in the outcome of the case, it is inevitable that, in
20     some cases, the lead plaintiff will not have standing to
21     sue on every claim.

22 Tanne, 226 F.R.D. at 669 (citations and quotations omitted).  The
23 Tanne court further reasoned that while a lead plaintiff is
24 appointed under the PSLRA to manage and oversee a consolidated
25 securities class action, a named plaintiff with standing to assert
26 each claim available to the class must be approved by the court at
27 the class at the class certification stage.  See id. at 670.

28

1     Thus, "lead plaintiffs have a responsibility to identify and
2 include named plaintiffs who have standing to represent the various
3 potential subclasses of plaintiff who may be determined, at the
4 class certification stage, to have distinct interests or claims."
5 In re Global Crossing, Ltd. Sec. Litig., 313 F.Supp.2d 189, 204
6 (S.D.N.Y. 2003); see also In re Initial Pub. Offering Sec. Litig.,
7 214 F.R.D. 117, 122-23 (S.D.N.Y. 2002) (holding that "in order for
8 a claim to be asserted on behalf of a putative class, only the
9 named plaintiffs – but not necessarily the lead plaintiff – must
10 have standing."); Fishbury, Ltd. V. Connetics Corp., 2006 WL
11 3711566 (S.D.N.Y. Dec. 14, 2006) (holding that speculation about
12 potential class standing problems should not be resolved by the
13 appointment of multiple lead plaintiffs, but by the appointment, if
14 necessary and desirable, of additional class representatives as the
15 litigation proceeds).

16     Here, NYS Teachers does not have standing to bring Section 11
17 claims. However, it has represented that, if appointed as lead
18 plaintiff, it will name additional plaintiffs to pursue all
19 legitimate claims available to the class. These additional named
20 plaintiffs will have their own legal representation. Therefore, to
21 the extent that conflicts among the shareholders arise as
22 litigation proceeds, those who own preferred shares will have a
23 means of assuring that their interests are not trumped by those of
24 the common shareholders.

25     Moreover, although the preferred share purchasers argue that
26 they may able to settle their claims against the underwriters more
27 quickly if given co-lead plaintiff status, there is no guarantee
28 that this would actually occur. It is true that there is a lower

17

1 burden of proof for Section 11 claims than Section 10 claims, and
2 that it might be more efficient if the preferred shareholders were
3 given the authority to their Section 11 claims against the
4 underwriters on a different discovery schedule.  However, it is
5 more likely that, in order to present their defenses to the Section
6 11 claims, the underwriters will bring cross-complaints against the
7 New Century officers who are defendants on both the Section 10 and
8 11 claims.  In that event, the discovery on both claims would
9 likely turn on the same set of facts and legal issues and involve
10 the same individuals.  Given this framework, it would be too
11 speculative to say that the Section 11 claims against the
12 underwriters will necessarily be resolved more expediently than the
13 other claims if the preferred shareholders were given lead
14 plaintiff status.

15      Therefore, while the Court appreciates the preferred
16 shareholders concerns, it does not find them sufficient to rebut
17 the presumption that NYS Teachers will "fairly and adequately" act
18 as the lead plaintiff.

19

20      **5.   Conclusion Regarding Lead Plaintiff**

21      There are at least four different New Century securities at
22 issue in this case.  To appoint four separate co-lead plaintiffs on
23 behalf of each group of investors would likely create an unwieldy,
24 duplicative and multi-headed "litigation by committee," adding
25 little benefit to New Century investors, but interposing several
26 additional law firms between the class and recovery.  It is for
27 this reason that the PSLRA "creates a statutory presumption that
28 one lead plaintiff can vigorously pursue <u>all</u> available causes of

1  action against <u>all</u> possible defendants under <u>all</u> available legal

2  theories." <u>McKesson</u>, 79 F.Supp.2d at 1151 (emphasis in original).

3      No plaintiff has sufficiently rebutted the presumption that

4  NYS Teachers should be lead plaintiff.  Accordingly, the Court

5  appoints NYS Teachers as lead plaintiff in this class action suit.

6

7  **IV.  LEAD COUNSEL**

8      The PSLRA directs that once the court has designated a lead

9  plaintiff, that plaintiff "shall, subject to the approval of the

10  court, select and retain counsel to represent the class.". 15

11  U.S.C. § 78u-4(a)(3)(B)(v).  A court may disturb the lead

12  plaintiff's choice of counsel only if it appears necessary to

13  "protect the interests of the class."  15 U.S.C. §

14  78u-4(a)(3)(B)(iii)(II)(aa); <u>Cavanaugh</u>, 306 F.3d at 732 n. 11

15  ("Congress gave the lead plaintiff, and not the court, the power to

16  select a lawyer for the class.").

17      NYS Teachers has retained the law firm Bernstein Litowitz to

18  serve as lead counsel.  The Court has reviewed the firm's resume

19  and is satisfied that the firm is more than capable of serving

20  competently in the role of lead counsel.  The firm has experience

21  litigating securities fraud class actions; since the enactment of

22  the PSLRA, Bernstein Litowitz has served as lead or co-lead counsel

23  in numerous other successful securities class actions in federal

24  district courts within the Ninth Circuit.  Further, NYS Teachers'

25  selection of Bernstein Litowitz as lead counsel appears to have

26  resulted from a careful search in which NYS Teachers considered

27  several qualified law firms' proposals, including counsel's

28  proposed fee structures for the case.  (Schneider Decl. ¶¶ 4-5.)

1 Accordingly, the Court appoints Bernstein Litowitz as lead counsel.

2

3 **V.    CONCLUSION**

4        For the foregoing reasons, the Court consolidates the actions,

5 appoints the NYS Teachers as lead plaintiff, and appoints the law

6 firm Bernstein Litowitz as lead counsel.  All other pending lead

7 plaintiff/lead counsel motions will be denied.[7]

8        Unless the parties otherwise agree, NYS Teachers shall file an

9 amended consolidated complaint within thirty days from the date of

10 entry of this order.  Defendants shall file a responsive pleading

11 within thirty days from the date the amended consolidated complaint

12 is filed.

13

14

15 IT IS SO ORDERED.

16

17

18 Dated:  6-26-07

19                                    DEAN D. PREGERSON
                                     United States District Judge
20

21

22

23

24

25

26

27 _____

28     [7]  To the extent that the motions requested consolidation,
     they are granted.