## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Objection Deadline: July 24, 2007 at 4:00 p.m. |
| | : | Hearing Date: July 31, 2007 at 1:30 p.m. |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION
## FOR AN ORDER PURSUANT TO SECTION 365(d)(4)(A) OF THE
## BANKRUPTCY CODE EXTENDING TIME TO ASSUME OR REJECT
## UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

New Century TRS Holdings, Inc., a Delaware corporation, New Century

Financial Corporation, a Maryland corporation, and their direct and indirect subsidiaries, each as

a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned

counsel, hereby submit this motion (the "Motion") for the entry of an order (the "Order"), in

substantially the form attached hereto, pursuant to section 365(d)(4)(A) of Title 11 of the United

States Code (as amended from time to time, the "Bankruptcy Code") extending the time by

which the Debtors must assume or reject their unexpired leases of nonresidential real property.

In support of this Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a
Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware
corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New
Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a
California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a
California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California
corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC
Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New
Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New
Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort
Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage,
Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a
Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a
Delaware limited partnership.

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. sections 157 and 1134. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2).

2.      The basis for the relief requested herein is section 365(d)(4)(A) of the Bankruptcy Code.

## BACKGROUND

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation, NCF originated, purchased, sold, and serviced mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.      On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief and the Debtors' bankruptcy cases are being jointly administered pursuant to

an order of the Court. The Debtors are operating their business and managing their affairs as

debtors and debtors in possession.

5.       By order entered on May 7, 2007, the Court authorized the sale of a pool

of approximately 2,000 unencumbered mortgage loans with an unpaid balance of $170 million

and mortgage-backed residual interests in securitization trusts (the "LNFA") to Ellington

Management Group, L.L.C. ("Ellington") on behalf of its Client Funds. The Court further

authorized the sale of a pool of approximately 180 unencumbered mortgage loans with an unpaid

balance of approximately $17 million and 6 real properties obtained in foreclosures of such

mortgage loans to Ellington by order entered on June 28, 2007 (together with the first sale of

LNFA to Ellington, the "Ellington Sales").

6.       In addition to the Ellington Sales, the Court authorized the sale of the

Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an

affiliate of Carrington Capital Management, LLC ("Carrington") by order entered on May 23,

2007. At the closing of the Carrington Sale on June 29, 2007, Carrington transferred the sale

proceeds to the Debtors and the Debtors entered into an agreement with Carrington to transition

the servicing business. Pursuant to the Debtor's agreement with Carrington, Carrington may

direct the Debtors to assume and assign certain leases to Carrington within 60 days of the closing

of the Carrington Sale. The Debtors will continue operating the servicing business in the

ordinary course while it is transitioned to Carrington.

7.       The Court further authorized the sale of certain of the Debtors' technology

assets to EquiFirst Corporation (the "Technology Sale") by order entered on July 3, 2007. The

Debtors expect the Technology Sale to close by August 15, 2007. The Debtors are in the process

of liquidating other assets of the estates.

8.      In addition to these sales, the Debtors are completing the prepetition process of downsizing their operations in an effort to maximize the value of the estates. Concurrently with the filing of these cases, the Debtors moved the Court for authority to reject certain real property leases under which the Debtors lease office space and other locations and for approval of a procedure to reject additional leases.  To date, the Debtors have rejected approximately 220 real property leases.  The Debtors and Carrington are in the process of reviewing the remaining leases to determine whether they should be rejected or assumed and assigned.

## RELIEF REQUESTED

9.      As of the date hereof, the Debtors are parties to certain nonresidential real property leases that have not been previously rejected or otherwise disposed of (the "Leases").[2] The Debtors have made there best efforts to list all of the Leases on Exhibit A attached hereto, however, in an abundance of caution, the Debtors submit that there may be additional Leases not included on Exhibit A.  Pursuant to section 365(d)(4)(A) of the Bankruptcy Code, the initial deadline established for the Debtors to assume, assume and assign or reject the Leases will expire on July 31, 2007.  By this Motion, the Debtors request the entry of an order, pursuant to section 365(d)(4)(B)(i) of the Bankruptcy Code, extending the time for the Debtors to assume or reject the Leases for ninety (90) days through and including October 29, 2007.

## BASIS FOR RELIEF

10.      Pursuant to section 365(d)(4)(A) of the Bankruptcy Code, a debtor is provided an initial period of 120 days in which to decide whether to assume or reject unexpired leases of nonresidential real property.  See 11 U.S.C. § 365(d)(4)(A).  However, section

---

[2]  The Debtors reserve their rights to (i) contest the characterization of any of the Leases and (ii) determine that any of the Leases have already terminated or otherwise expired.

365(d)(4)(B)(i) of the Bankruptcy Code provides that the Court may extend this initial 120 day period for an additional 90 days "for cause."  11 U.S.C. § 365(d)(4)(B)(i).

11.    Courts have substantial discretion in determining if "cause" is present to extend the time for a debtor to assume or reject unexpired leases of nonresidential real property. Among other factors, courts have considered (i) whether the leases are an important asset of the estate, (ii) whether the debtor has had sufficient time to appraise the value of the leases and its financial situation and (iii) whether any other facts or circumstances exist which indicate that additional time is necessary to decide whether to reject, assume or assign the leases.  See e.g. In re Wedtech Corp., 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); see also e.g. In re Channel House Centers, Inc., 989 F.2d 682, 689 (3d Cir. 1993); In re Beautyco, Inc., 307 B.R. 225, 231 (Bankr. N.D. Okla. 2004).  Courts have also considered whether the debtor is current on its postpetition obligations under the leases and the impact of the proposed extension on lessors. See South St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 760-761 (2d Cir. 1996).  Thus, where the estate will receive a benefit from an extension of the period to assume or reject leases, an extension will often be granted.  See e.g. Coleman Oil v. Circle K. Corp. (In re Circle K Corp.), 127 F.3d 904, 909 n.5 (9th Cir. 1997) (noting that bankruptcy courts often grant a debtor's request for an extension of time to assume or reject leases).[3]

12.    Here, there is ample "cause" to extend the period for the Debtors to assume or reject the Leases.  Granting the extension requested by the Debtors will permit them to address the various urgent matters that have continued to arise during these initial stages of their chapter 11 cases. As this Court is aware, these cases have proceeded at an incredibly fast pace. As noted above, the Debtors have been focused on pursuing and effecting substantial sales of their assets– a process that continues to occupy a significant amount of time of both the Debtors

---

[3]  The Debtors are not aware of any reported decisions regarding the recent amendments to section 364(d)(4) of the Bankruptcy Code. However, because both the prior and new revised version of section 365(d)(4) of the Bankruptcy Code do not define "cause," the Debtors submit it is appropriate for the Court to analyze the same factors that were considered by the courts prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

and their professionals. The Debtors have accomplished the Ellington Sales and the Carrington Sale. The Debtors estimate closing the Technology Sale by August 15th and are in the process of liquidating other assets of the estates. Granting the extension requested by the Debtors will permit them to fully devote their resources to these sale processes without unnecessarily distracting them to address issues of assumption and rejection of the Leases. In addition, an examiner has been appointed by the Court in these chapter 11 cases. The Debtors and their professionals have been committing a substantial amount of time to cooperating with the investigation of the examiner that the Court has appointed to these chapter 11 cases. The initial examiner's report is due on September 7, 2007.

13.     Moreover, the Debtors need the additional time to determine whether a given Lease has value to the estate in the hands of a third party, lest the Debtors forfeit any economic value that otherwise could have been obtained from the Leases.

14.     Finally, under the Asset Purchase Agreement with Carrington, (the "Carrington APA"), the Debtors are obliged to continue to provide certain transition services to Carrington, and the continued use and occupancy of many of the facilities underlying the Leases is essential to these obligations. The Carrington APA also provides that Carrington may direct the Debtors to assume and assign certain Leases within 60 days of the Carrington Sale. Because the Debtors cannot continue to operate their businesses and perform their administrative contractual obligations without the corporate offices to which the Leases relate, the harm to the Debtors' estates if the Leases are deemed rejected outweighs the costs to the estates incurred during the extension period. The Debtors believe that granting an extension is appropriate under these circumstances.

15.     The Debtors do not believe that any lessor will suffer harm or prejudice as a result of the requested extension. Indeed, in the event any of the Leases are assumed and assigned, the lessors under such Leases will receive the direct economic benefit of the Debtors' – or their successors' – uninterrupted tenancy and any cure payments paid in connection with such assumption. In addition, to the Debtors' knowledge, they are current and have timely performed

all of their postpetition obligations under the Leases as required by section 365(d)(3) of the Bankruptcy Code. The Debtors will continue to perform these obligations during the extension period and until the time that any of the Leases are either rejected or assumed and assigned to third parties.

## NOTICE

16.    No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' post-petition senior secured lenders; (3) the Examiner; (4) the Official Committee of Unsecured Creditors, and (5) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

17.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

18.    No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as Exhibit B, granting the relief requested herein and such other further relief the Court deems just and proper.

Dated:  July 13, 2007
Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher J. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION