# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Objection Deadline:  July 24, 2007 at 4:00 p.m.** |
| | : | **Hearing Date:  July 31, 2007 at 1:30 p.m.** |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

New Century TRS Holdings, Inc., a Delaware corporation, New Century

Financial Corporation, a Maryland corporation, and their direct and indirect subsidiaries, each as

a debtor and debtor-in-possession (collectively, the "Debtors"), by and through their undersigned

counsel, hereby file their motion (the "Motion") for the entry of an order pursuant to section

1121(d) of the United States Bankruptcy Code, 11 U.S.C. sections 101-1532 (as amended from

time to time, the "Bankruptcy Code"), extending the period during which the Debtors have the

exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by approximately one

hundred and twenty (120) days through and including November 28, 2007 and extending the

period during which the Debtors have the exclusive right to solicit acceptances thereof (the

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

"Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including January 28, 2008, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as extended. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. sections 157 and 1334. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2).

2.      The bases for the relief requested herein are sections 105 and 1121(d) of the Bankruptcy Code.

### Background

3.      New Century Financial Corporation, a Maryland corporation ("NCF") and publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS Holdings, Inc., a Delaware corporation, NCF originated, purchased, sold, and serviced mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA").

During the fiscal year ending December 31, 2006, the Debtors originated or purchased

approximately $60 billion of mortgage loans, most of which were sold in the secondary market.

Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans

have helped millions of homebuyers and homeowners across the nation access credit and realize

the benefits of home ownership, including many who might not otherwise have been able to do

so.

   4. The Wholesale Division, which was contained within NCMC, originated

and purchased loans through a network of independent mortgage brokers and correspondent

lenders. As of December 31, 2006, the Wholesale Division (1) had approved more than 57,000

independent mortgage brokers for submission of loan applications, (2) operated through 34

regional operating centers located in 20 states and (3) employed approximately 1,087 account

executives. The broker's role in this process was to identify the applicant, assist in completing

the loan application form, gather necessary information and documents and serve as the Debtors'

liaison with the borrower. Correspondent lenders are independent mortgage bankers and

financial institutions that sell loans that have already been funded. For 2006, the Wholesale

Division was responsible for approximately 85% of the loans originated by the Debtors.

   5. The Retail Division, which operated under Home123, originated loans

through direct contact with consumers, including through referrals from builders, realtors, and

other third parties. As of December 31, 2006, the Retail Division was supported by 262 branch

offices and three central telemarketing units employing approximately 1,702 retail loan officers.

For 2006, the Retail Division originated approximately 15% of the loans produced by the

Debtors.

6.     On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief and the Debtors' bankruptcy cases are being jointly administered pursuant to an order of the Court. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

7.     Since the Petition Date, the Debtors have been focused on expeditiously liquidating their assets in order to maximize the value of the estates. The Debtors gained Court approval of four asset sales and closed three of those sales within three months of the Petition Date. By order entered on May 7, 2007, the Court authorized the sale of a pool of approximately 2,000 unencumbered mortgage loans with an unpaid balance of $170 million and mortgage-backed residual interests in securitization trusts (the "LNFA") to Ellington Management Group, L.L.C. on behalf of its Client Funds ("Ellington") pursuant to the Asset Purchase Agreement by and among NCF and certain of its subsidiaries and Ellington dated May 16, 2007. The Court further authorized the sale of a pool of approximately 180 unencumbered mortgage loans with an unpaid balance of approximately $17 million and 6 real properties obtained in foreclosures of such mortgage loans to Ellington by order entered on June 28, 2007 pursuant to Supplement No. 1 to Asset Purchase Agreement by and among NCF and certain of its subsidiaries and Ellington dated June 25, 2007. The two LNFA sales closed in May and June respectively.

8.     In addition to the LNFA, the Court authorized the sale of the Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an affiliate of Carrington Capital Management, LLC ("Carrington") by order entered on May 23, 2007 pursuant to the Second Amended and Restated Asset Purchase Agreement dated May 21, 2007. At the closing of the Carrington Sale on June 29, 2007, Carrington transferred the sale proceeds

to the Debtors and the Debtors entered into an agreement with Carrington to transition the servicing business. The Debtors will continue operating the servicing business in the ordinary course while it is transitioned to Carrington.

9.      The Court further authorized the sale of certain of the Debtors' technology assets to EquiFirst Corporation ("EquiFirst") by order entered on July 3, 2007 pursuant to the Asset Purchase Agreement by and among NCFC, NCMC and EquiFirst dated June 22, 2007 (the "Technology Sale"). The Debtors expect the Technology Sale to close by August 15, 2007.

10.      In addition to the asset sales, the Debtors moved quickly to downsize and consolidate their operations. The Debtors have rejected approximately 220 real property leases and approximately 250 executory contracts. The Debtors are in the process of liquidating additional assets and identifying additional leases and contracts for rejection or assumption and assignment.

### Relief Requested

11.      By this Motion, the Debtors seek the entry of an order pursuant to Bankruptcy Code section 1121(d): (i) extending the Exclusive Filing Period by approximately one hundred and twenty (120) days through and including November 28, 2007; and (ii) extending the Exclusive Solicitation Period through and including January 28, 2008, or approximately sixty (60) days after expiration of the Exclusive Filing Period, as extended. The Debtors will pursue filing a plan and disclosure statement as soon as practicable after claims bar date, but in light of the complexity of this case are seeking to extend exclusivity by approximately ninety (90) says after that date. The Debtors believe these dates are consistent

with the plan process timeline they have discussed with the Official Committee of Unsecured

Creditors (the "Creditors' Committee").

## Basis for Relief

12.     Pursuant to Bankruptcy Code section 1121(b), a debtor has the exclusive

right to file a plan of reorganization during the first 120 days after the commencement of a

chapter 11 case.[2]  If a debtor files a plan during this period, pursuant to Bankruptcy Code section

1121(c)(3), an additional 60 day period is automatically granted during which the debtor may

exclusively solicit acceptance of the plan.

13.     Bankruptcy Code section 1121(d) provides that the Court may extend

these exclusive periods for cause.  See 11 U.S.C. § 1121(d) ("[O]n request of a party in interest

and after notice and a hearing, the court may for cause reduce or increase the 120-day period or

the 180-day period referred to in this section.").  Although the Bankruptcy Code does not define

"cause," a number of courts have construed the term in consideration of the Bankruptcy Code's

underlying legislative history.  See, e.g., In re Perkins, 71 B.R. 294, 297-98 (W. D. Tenn. 1987);

In re Lake in the Woods, 10 B.R. 338, 343-45 (E.D. Mich. 1981); In re Ravenna Indus., Inc., 20

B.R. 886, 889 (Bankr. N.D. Ohio 1982).

14.     In determining whether cause exists to extend a debtor's exclusive period

to file and solicit acceptance of a plan, courts have relied on a variety of factors, each of which

may constitute sufficient grounds for extending the periods.  These factors typically include

(a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the

---

[2] In these cases, the Exclusive Filing Period would otherwise expire on July 31, 2007.

estate and (c) whether an extension of time will harm the debtor's creditors. See, e.g., In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989); In re Grand Traverse Dev. Co. Ltd. P'ship., 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Gen. Bearing Corp., 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr. W.D. Tex 1987).

15.    Considering the factors discussed below, the Debtors submit that ample cause exists to grant the relief requested herein and extend the Exclusive Filing Period through and including November 28, 2007 and the Exclusive Solicitation Period through and including January 28, 2008.

A.    **The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases.**

16.    The size and complexity of a debtor's case alone may constitute cause to extend a debtor's exclusive periods. "The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

17.    Here, the size and complexity of the Debtors' businesses, corporate structure and financing arrangements compel the requested extension of the Exclusive Periods. Immediately prior to filing these cases, the Debtors had over 6,000 employees in approximately 300 locations across the country. The size and complexity of these cases have required the Debtors to devote a substantial amount of time to negotiating and securing court approval of the sale of the Debtors' assets. Despite the numerous difficulties arising from operating in chapter 11, the Debtors have made substantial progress in achieving results beyond those available

outside of bankruptcy.  As stated above, on May 7, 2007 and June 28, 2007, the Court approved

the sale of approximately $190 million in LNFA to Ellington, on May 23, 2007 the Court

approved the Carrington Sale to Carrington, on July 3, 2007 the Court approved the Technology

Sale to EquiFirst and the Debtors have rejected approximately 220 real property leases and

approximately 250 executory contracts.

18.    The Debtors' appropriate focus on these issues, as well as addressing

numerous other matters attendant to their chapter 11 cases, have made it impossible to formulate,

promulgate and build consensus regarding a plan any earlier than the extended dates proposed by

the Debtors.  In fact, the large scale and sophisticated nature of the Debtors' cases by themselves

pose a number of practical issues that, at this early stage, make formulation of such a plan

impracticable within the initial 120 days of these cases.

19.    In addition to negotiating the sale of their assets, the Debtors have focused

their efforts on stabilizing, winding down their remaining operations and implementing the

transition services related to those sales.   For example, the Debtors have entered into an

agreement with Carrington to transition the servicing business which will require the Debtors to

continue to operate the servicing business in the ordinary course while it is transitioned.

20.    The Debtors have made significant progress.  Notwithstanding the

progress made to date, there is still much to do to maintain the day-to-day administration of these

cases.  For example, the Debtors only recently completed and filed their schedules of assets and

liabilities and statements of financial affairs (collectively, the "Schedules") - a task that required

significant effort by the Debtors, their professionals and their claims and noticing agent - and

now must assess how the information contained in the Schedules will impact any plan.  The

Debtors are also devoting a substantial amount of time to cooperating with the investigation of the Examiner that the Court has appointed to these chapter 11 cases. The initial Examiner's report is due on September 7, 2007.

21.    Further, the Court recently approved the Debtors' motion for the entry of an order establishing August 31, 2007 as the general bar date and October 2, 2007 as the governmental bar date for filing proofs of claim. It will only be after the claims bar dates have passed that the Debtors will be in a position to begin evaluating the universe of claims against them and, in light of that evaluation and the results of their planning process, develop the plan.

22.    The Debtors believe that the continued efforts to negotiate and finalize the sale of their assets, analysis of any remaining executory contracts and leases, review of claims, cooperation with the examiner's investigation, development of a draft plan and negotiations with their various constituencies regarding the terms of a plan and the related process, together with the day-to-day tasks of operating as chapter 11 debtors in possession, will consume the bulk of their time and efforts in the coming months.

23.    In light of the foregoing factors, the Debtors' request for a 120 day extension is modest and justified. In fact, the Debtors' request is similar to or substantially less than the extensions granted by this and other courts in large reorganization cases. See, e.g., In re Loewen Group Int'l. Inc., No. 99-1244 (PJW) (Bankr. D. Del.) (exclusivity extended for approximately 19 months); In re Montgomery Ward Holding Corp., No 97-1409 (PJW) (Bankr. D. Del ) (exclusivity extended for approximately 22 months); In re Trans World Airlines, Inc.,

No. 92-115 (HSB) (Bankr. D. Del.) (exclusivity extended for approximately 20 months).[3] Although the cases cited above were filed prior to the amendments to the Bankruptcy Code pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the extension requested by the Debtors (which when added to the initial Exclusive Filing Period will total less than 8 months and when added to the initial Exclusive Solicitation Period will total less than 10 months) is well within the 18 and 20 month extension limits now set forth in Bankruptcy Code sections 1121(d)(1)(2)(A) and (B).

**B.    The Debtors' Progress in These Cases Warrants an Extension of the Exclusive Periods.**

24.    An extension of a debtor's exclusive periods may also be justified by progress in resolving issues facing creditors and the estate.  See, e.g., In re McLean Indus. Inc., 87 B.R. 830, 835 (Bankr. S.D.N.Y. 1987); Texaco, 76 B.R. at 327; In re Swatara Coal Co., 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985).

25.    As discussed above, the majority of the Debtors' time and efforts since the commencement of these cases have been devoted to examining the value of their assets and negotiating and effecting the sale of their assets as well as negotiating their post-sale obligations. The Debtors have made significant process in resolving asset disposition issues and are well underway to fulfilling their obligations arising from the sales.

---

[3]  See also, In re Elder-Beerman Stores Corp., No. 95-33643 (Bankr. S.D. Ohio) (exclusivity extended approximately 21 months); In re CSC Indus., Inc. and Copperweld Steel Co., Nos. 93-41898 and 93-41899 (Bankr. N.D. Ohio 1997) (exclusivity extended approximately 19 months); In re Phar-Mor, Inc., No. 92-41599 (Bankr. N.D. Ohio) (exclusivity extended for approximately three years); In re Federated Dep't Stores, Inc., No. 1-90-00130 (Bankr. S.D. Ohio) (exclusivity extended for approximately two years); Gibson & Cushman, 101 B.R. 405, 407, 411 (E.D.N.Y. 1989) (exclusive period extended 14 months); Gaines v. Perkins, 71 B.R. at 294, 296 (W.D. Tenn. 1987) (exclusive period extended more than 22 months); In re Ravenna Industries, Inc., 20 B.R. at 886, 887 (Bankr. N.D. Ohio 1982) (exclusive period extended more than 10 months).  Because they are voluminous, the unreported orders cited herein are not attached to the Motion but are available from counsel for the Debtors upon request.

26.    In addition, the Debtors have made significant progress in stabilizing their operations and transitioning to a wind-down mode by (i) implementing the various forms of relief granted by the Court during the first days of these cases that allowed the Debtors to maintain business as usual to the fullest extent possible and ultimately consummate the sale of their assets, (ii) retaining the professionals and consultants necessary to the Debtors' sale efforts and administration of their chapter 11 cases, (iii) negotiating, documenting and litigating certain issues with respect to debtor-in-possession financing and employee retention matters, and (iv) completing the complex and time-consuming process of preparing and filing the Schedules.

27.    In light of the Debtors' progress on such key issues in the short months since the commencement of these cases, extension of the Exclusive Periods is warranted. Notwithstanding the progress that has been made, the Debtors still have a number of tasks to complete before they will be in a position to develop a chapter 11 plan, including the review of claims filed by the proposed claims bar date and the completion of related claims administration procedures. Although the Debtors are committed to confirming a chapter 11 plan as quickly as possible, they also recognize that this process will require a substantial amount of additional time and effort to complete and that it will require the involvement and participation of other constituents.

C.    **The Requested Extension of the Exclusive Periods Will Not Harm the Debtors' Creditors or Other Parties in Interest.**

28.    The Debtors respectfully submit that the extension of the Exclusive Periods requested herein will not harm creditors or other parties in interest. In light of the significant issues that must be resolved before a plan can be finalized, the Debtors believe that neither their creditors nor any other party in interest would be in a position to propose a plan

LA3:1135052.4                                    11

RLF1-3178102-1

prior to the proposed expiration of the Exclusive Filing Period in the first instance. Accordingly, the relief requested herein will not result in a delay of the plan process, and will simply permit the process to move forward in an orderly fashion.

### No Prior Request

29.    No previous motion for the relief sought herein has been made to this or any other Court.

### Notice

30.    No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' post-petition senior secured lenders; (3) the Examiner (4) the Creditors' Committee, and (5) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

31.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

WHEREFORE, for all of the foregoing reasons, the Debtors pray: (i) for the entry of an Order, substantially in the form attached hereto as <u>Exhibit A</u>, extending the Exclusive Filing Period through and including November 28, 2007, (or otherwise to the date set by this Court for the omnibus hearing in these chapter 11 cases) and the Exclusive Solicitation Period through and including January 28, 2008 (or some other similar date as this Court might deem just); and (ii) for such other and further relief as this Court deems just.

Dated:  July 13, 2007
        Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

        -and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

LA3:1135052.4

RLF1-3178102-1