## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416(KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Hearing Date: July 31, 2007 at 1:30 p.m.** |
| | : | **Objection Deadline: July 24, 2007 at 4:00 p.m.** |

### MOTION OF DEBTORS AND DEBTORS IN POSSESSION
### FOR AN ORDER AUTHORIZING AND APPROVING
### ASSUMPTION AND ASSIGNMENT OF REAL PROPERTY LEASES

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors") by and through their undersigned counsel, hereby submit this motion (the "Motion") for the entry of an order (the "Order") in substantially the form attached hereto pursuant to section 365(a) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order approving the Debtors' assumption and assignment of the real property leases listed on Exhibit "A" hereto. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

## I.    JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The bases for the relief requested herein are sections 105(a) and 365 of the Bankruptcy Code.

## II.    BACKGROUND

3.    NCF, a Maryland corporation and publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCF originated, purchased, sold, and serviced mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Court has entered an order authorizing the joint administration of the Debtors' bankruptcy cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

5.    The Debtors commenced these chapter 11 cases to pursue an expedited sale of their businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders. The Debtors have closed two sales of unencumbered mortgage loans and mortgage-backed residual interests in securitization trusts and the sale of its servicing business. The Debtors are in the process of closing the sale of technology assets and are pursuing additional asset sales. In addition to these sales, the Debtors are completing the prepetition process of downsizing their operations in effort to maximize the value of the estates.

6.    Concurrently with the filing of these cases, the Debtors moved the Court for authority to reject certain real property leases under which the Debtors lease office space and other locations and for approval of a procedure to reject additional leases. The Debtors obtained approval to reject certain leases and have rejected approximately 220 real property leases in order to limit rent claims asserted in connection with those leases. In addition to rejecting leases, the Debtors have determined that in order to minimize the expenses to the estate, certain leases should be assumed and assigned as set forth herein.

### III.    RELIEF REQUESTED

7.    By this Motion, the Debtors request the entry of an order, pursuant to section 365(a) of the Bankruptcy Code, authorizing and approving, but not directing, the Debtors' assumption and assignment of the real property leases (each a "Lease" and collectively, the "Leases") as specified on Exhibit "A" attached hereto.

8.    Because the Debtors and the Buyer wish to assign the Leases as soon as reasonably practicable, the Debtors respectfully request that the Court waive the ten (10) day stay required pursuant to Bankruptcy Rule 6004(h) to permit the assignment to occur immediately after the entry of the Order upon payment of the applicable cure amount.

### IV.    BASES FOR REQUESTED RELIEF

9.    Pursuant to Bankruptcy Code Section 365(a), a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" upon the approval of

the court. 11 U.S.C. § 365(a); See <u>University Medical Ctr. v. Sullivan</u> (<u>In re University</u>

<u>Medical Ctr.</u>), 973 F.2d 1065, 1075 (3rd Cir. 1992). A debtor should be authorized to assume

an executory contract or unexpired lease where it appropriately exercises its "business

judgment." <u>See, e.g., In re Market Square Inn, Inc.</u>, 978 F.2d 116, 121 (3d Cir. 1992) (the

"resolution of [the] issue of assumption or rejection will be a matter of business judgment by

the bankruptcy court"); <u>In re Sharon Steel Corp.</u>, 872 F.2d 36, 39-40 (3rd Cir. 1989); <u>See also,</u>

<u>Glenstone Lodge, Inc. v. Buckhead Am. Corp.</u> (<u>In re Buckhead Am. Corp.</u>, 180 B.R. 83, 88 (D.

Del. 1995); <u>In re Orion Pictures Corp.</u>, 4 F.3d 1095, 1098 (2nd Cir. 1993). A debtor exercises

appropriate business judgment absent bad faith or an abuse of business discretion. <u>See, e.g., In</u>

<u>re G Survivor Corp.</u>, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994); <u>In re Wheeling-Pittsburgh</u>

<u>Steel Corp.</u>, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); <u>In re Richmond Metal Finishers, Inc.</u>,

756 F.2d 1043, 1047 (4th Cir. 1985). Courts generally will not second-guess a debtor's

business judgment concerning the assumption or rejection of an executory contract or

unexpired lease. <u>See In re III Enterprises, Inc. V</u>, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994)

("Generally, a court will give great deference to a debtor's decision to assume or reject an

executory contract. A debtor need only show that its decision to assume or reject the contract is

an exercise of sound business judgment -- a standard which we have concluded many times is

not difficult to meet . . . . We will not substitute our own business judgment for that of the

Debtor, nor will we disturb its decision to reject the [contract] unless the decision is so

unreasonable that it could not be based on sound business judgment, but only on bad faith or

whim.")(citations omitted).

        10.    Section 365(b)(1) permits assumption and assignment only if the debtor

cures all defaults under an executory contract or unexpired lease and provides the non-debtor

party to the contract with adequate assurance of future performance. <u>See</u> 11 U.S.C. §365; <u>See</u>

<u>also, Pieco Inc. v. Atlantic Computer Systems, Inc.</u>, 173 B.R. 844, 857 n.18 (Bankr. S.D.N.Y.

1994); <u>Richmond Leasing Co. v. Capital Bank, N.A.</u>, 762 F.2d 1303, 1309-10 (5th Cir. 1985).

The meaning of the phrase "adequate assurance" depends upon the facts and circumstances of

each case, but must be given practical pragmatic construction. See, e.g., Carlisle Homes, Inc. v.
Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538-539 (Bankr. D. N.J. 1988) (phrase
should be given practical, pragmatic construction based on facts and circumstances of each
case); In re Great Northwest Recreation Ctr., Inc., 74 B.R. 846, 854 (Bankr. D. Mont. 1987)
(same); In re Natco Industries, Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (same).
However, it is clear an absolute guarantee of performance is not required. In re Bon Ton Rest.
& Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution
will satisfy every case, the required assurance will fall considerably short of an absolute
guarantee of performance").

11.    The Debtors believe that the assumption and assignment of the Leases
represents an appropriate exercise of the Debtors' business judgment and will greatly benefit
the Debtors' estates. The Assignees have agreed to take over all obligations under the Leases.
By assuming and assigning the Leases to the Assignees, the Debtors can avoid incurring
potentially significant rejection damages and recover security deposits made under the Leases.

12.    The Debtors are informed and believe that, as reflected in the Debtors'
books and records, cure amounts for the Leases are those specified on the attached Exhibit "A."
The Debtors will pay the cure amounts prior to or at the time of the assumption of the Leases
pursuant to section 365(b)(1).

13.    The Debtors will serve this Motion, with Exhibit "A" reflecting the
Debtors' calculation of the cure amount for each Lease, on all non-debtor parties to the Leases.
Objections to the cure amount, if any, must be filed and served within the time period specified
pursuant to Rule 9006-1(c) of the Local Rules for the District of Delaware for the filing of any
objections to this Motion (the "Cure Objection Deadline"). If a non-debtor party to any lease
fails to timely file an objection, the Debtors request that such party be bound by the cure amount
set forth in Exhibit "A" or such lesser amount as agreed to between such non-debtor and the
Debtors.

14.     With respect to adequate assurance of future performance, the Debtors are informed and believe that the Assignees, each have the financial wherewithal to perform fully under the Leases. Most of the Assignees are mortgage companies that currently operate across the United States. The intended use of each location at issue will be for the continued operation of a mortgage businesses -- the same use that the Debtors were making of those locations.

15.     For all of these reasons, assumption and assignment of the Leases represents a reasonable exercise of the Debtors' sound business judgment and is in the best interests of the Debtors' estates and creditors.

### Relief from the Ten Day Waiting Period Under Bankruptcy Rule 6004(h) is Appropriate

16.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that the Order be effective immediately by providing that the ten (10) day stay under Bankruptcy Rule 6004(h) is waived.

17.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten (10) day stay period, Collier suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶ 6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier on Bankruptcy suggest that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

18.     The Debtors hereby request that the Court waive the ten-day stay period under Bankruptcy Rule 6004(h) or, in the alternative, if an objection to the assignment is filed,

reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal. Any additional delay in the assignment will increase the expense to the estates.

## V.    NOTICE

19.    No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware, (2) counsel to Greenwich Capital Financial Products, Inc. ("Greenwich") and The CIT Group/Business Credit, Inc. ("CIT"), the Debtors' post-petition senior secured lenders; (3) the Examiner; (4) the Official Committee of Unsecured Creditors; (5) the landlords to the Leases; (6) the proposed Assignees and (7) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VI.    NO PRIOR REQUEST

20.    No prior request for the relief sought in this Motion has been made to this or any other court.

21.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference into Del. Bankr. LR 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

**WHEREFORE,** the Debtor respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit "B": (i) authorizing and approving the Debtors' assumption and assignment of the Leases and (ii) granting such other and further relief as the Court may deem proper.

Dated: July 13, 2007
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

LA3:1134918 2
RLF1-3178103-1