IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, *et al.*, | : | |
| | : | Jointly Administered |
| Debtors. | : | |

Hearing Date: August 7, 2007 at 1:30 p.m.
Objection Deadline: July 31, 2007 at 4:00 p.m.

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULES 2004 AND 9016

The Official Committee of Unsecured Creditors (the "Committee") of New Century TRS Holdings, Inc., *et al.* (the "Debtors")[1], by and through their co-counsel, Blank Rome LLP and Hahn & Hessen LLP, moves this Court for entry of an order pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the production of documents by KPMG LLP ("KPMG") and the examination of current and former KPMG employees. In support of the motion ("the Motion"), the Committee states as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com,Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation; New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

## SUMMARY OF REQUESTED RELIEF

1. Until its resignation on April 27, 2007 (shortly after the commencement of the Debtors' cases), KPMG was the principal accountant and outside auditor for the debtor, New Century Financial Corporation ("New Century"), and its subsidiaries and affiliates. The Committee seeks authorization to obtain documents from KPMG and to commence examinations of KPMG and its current and former officers concerning the accounting, auditing and other professional services rendered by KPMG to the Debtors.

## BACKGROUND[2]

2. On April 2, 2007 (the "Petition Date"), the Debtors commenced voluntary cases (the "Cases") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court, which Cases are being jointly administered pursuant to an order of this Court. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. At an organizational meeting of creditors on April 9, 2007, the Office of the United States Trustee for the District of Delaware, appointed seven (7) of the Debtors' largest unsecured creditors to the Committee, which retained the firms of Hahn & Hessen LLP and Blank Rome LLP as its counsel.[3]

---

[2] The Background is based on, among other things, the Debtors' declarations, publicly available articles, public filings, press releases, United States Securities and Exchange Commission ("SEC") filings, and other matters of public record.

[3] The Committee presently consists of the following members: Credit-Based Asset Servicing and Securitization LLC, Residential Funding Company, LLC, Credit Suisse First Boston Mortgage Capital LLC, Deutsche Bank National Trust Co., Wells Fargo Bank, N.A. as Indenture Trustee, Fidelity National Information Services, Inc. and Maguire Properties – Park Place, LLC.

4.     Pursuant to an order dated June 1, 2007 (the "June 1, 2007 Order"), Michael J. Missal, Esq. has been appointed the Examiner (the "Examiner") by the US Trustee.[4]

5.     The June 1, 2007 Order provides that, "subject to the requirements for mutual cooperation and coordination set forth [therein], nothing contained in [the June 1, 2007 Order] shall diminish the powers and authority of the Debtors or Committee under the Bankruptcy Code, including the powers to investigate transactions and entities" and that the "Examiner and the Committee shall cooperate and coordinate their efforts to assure, to the extent possible, that their investigations are not unduly duplicative" See June 1, 2007 Order ¶¶ 12, 13.

6.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought herein are Bankruptcy Rules 2004 and 9016. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

---

[4]   Pursuant to the June 1, 2007 Order, the Examiner is "to (a) investigate any and all accounting and financial statement irregularities, errors or misstatements, including but not limited to such irregularities, errors or misstatements that (i) gave rise to the announced need to restate the Debtors' financial statements for the final three quarter of 2006 and/or (ii) led the Debtors' management and Audit Committee to conclude that it was more likely than not that pre-tax earnings in the 2005 financial statements were materially overstated, and identify and evaluate any claims or rights of action that the estates might have arising from or relating to such irregularities, errors or misstatements, (b) investigate any possible post-petition unauthorized use of cash collateral by the Debtor, and (c) other perform the duties of an examiner set forth in section 1106(a)(3) (as limited by [the June 1, 2007 order] and section 1106 (a)(4) of the Bankruptcy Code (collectively, the [Examiner] Investigation')." See June 1, 2007 Order ¶ 3.

**Relevant Facts**

**A.     The Debtors' History**

7.      New Century is a real estate investment trust ("REIT") that, until in or about February 2007, was one of the nation's largest mortgage companies. Through its operating subsidiaries, New Century originated and purchased residential mortgage loans, most of which were sold through whole loan sales and/or securitizations, and serviced residential mortgage loans, a substantial portion of which mortgage loans were sub-prime loans. The Debtors retained economic interests in the residuals of certain of the loan securitizations. Funding for the loans originated and purchased by the Debtors was provided through credit facilities by a group of investment banks and other financial institutions, which facilities prior to February 7, 2007 totaled approximately $17.4 billion of committed and uncommitted borrowing capacity.

8.      New Century's predecessor-in-interest, New Century TRS Holdings, Inc. ("New Century TRS"), was formed by Edward Gotschall, Brad Morrice and Robert Cole, and began originating and purchasing loans in 1996. In the fourth quarter of 2004, the Board of Directors of New Century TRS approved a plan to change the company's capital structure to enable it to qualify as a REIT for U.S. federal income tax purposes. On April 12, 2004, New Century TRS formed New Century.

9.      Pursuant to the merger that implemented the restructuring of New Century TRS, New Century became the publicly-traded parent listed on the New York Stock Exchange ("NYSE") that succeeded to and continued to operate substantially all of the existing business of New Century TRS and its subsidiaries.

10.     Prior to the bankruptcy filing, New Century ceased originating mortgage loans. Since the bankruptcy filing, New Century and the other Debtors have been selling their assets through the Chapter 11 proceedings.

B. **The Alleged Accounting Irregularities**

11. On February 7, 2007, after the market's close, New Century issued a press release announcing it would be restating its consolidated financial results for the quarters ended March 31, June 30 and September 30, 2006 to correct errors New Century discovered in its application of Generally Accepted Accounting Principles regarding its allowance for loan repurchase losses. According to the announcement, New Century's accounting policies incorrectly applied (a) Statement of Financial Accounting Standards No. 140 by not including the expected discount upon the disposition of repurchased loans when estimating its allowance for loan repurchases, and (b) the methodology for estimating the volume of repurchase claims to be included in the repurchase reserve calculation in each of the first three quarters of 2006 based on the growing member of repurchase claims outstanding that resulted from the increasing pace of repurchase requests that occurred in 2006.

12. Upon information and belief, KPMG reviewed the consolidated financial results for the first three quarters of 2006 before such financial results were released by the Debtors. New Century stated in February 7, 2007 announcement that "it is working to provide its independent registered public accounting firm, [KPMG], the information that it needs in order to complete its audit of the Company's financial statements and internal control over financial reporting."

13. On March 2, 2007, New Century filed a form 12b-25 ("Form 12b-25") with the SEC reporting that it was unable to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2006. In its Form 12b-25, New Century advised that the Audit Committee of its Board of Directors (the "Audit Committee"), assisted by outside counsel and forensic accountants, had "initiated its own independent investigation into issues giving rise to

127340.01600/40169980v.1

the Company's need to restate its 2006 interim financial statements as well as issues pertaining to the Company's valuation of residual interests in securitizations in 2006 and prior periods."

14. That same day (March 2, 2007), New Century disclosed that, on February 27, 2007, it had received notification from the U.S. Attorneys' Office for the Central District of California that it was conducting a criminal inquiry into the Company's reported accounting errors regarding New Century's allowance for repurchase losses as well as trading in the company's securities before the restatement was disclosed to the public. New Century advised that the U.S. Attorneys' Office had subpoenaed "certain documents" in furtherance of its investigation.

15. On March 12, 2007, New Century received a grand jury subpoena related to the criminal inquiry.

16. On March 13, 2007, New Century revealed that the SEC opened a formal investigation into New Century's restatement and trading in New Century's securities prior to its February 7 announcement. The SEC requested a meeting with New Century to discuss the events leading up to the announcement of the restatement as well as the production of certain documents. That same day, the NYSE delisted New Century's stock.

17. According to the Debtors, the public disclosure of these events precipitated a crisis of confidence among the Debtors' lenders. In New Century's SEC filings on March 12 and 13, 2007, the company disclosed that all of its lenders under its short-term repurchase agreements and aggregation credit facilities had discontinued their financing or had notified New Century of their intent to do so. Certain of these lenders also had purported to terminate the company's servicing rights and their respective financing agreements.

127340.01600/40169980v.1

18. In addition, New Century received notices from certain of its lenders asserting that the company and/or its subsidiaries were in default of the parties' financing arrangements. As a result, certain of New Century's lenders accelerated the company's obligation to repurchase all outstanding mortgage loans financed under these agreements. New Century reported that it did not have sufficient liquidity to satisfy the outstanding repurchase obligations sought by the warehouse lenders under its existing financing arrangements.

19. The Debtors' inability to fund a portion of its loan originations has led to a significant number of states issuing Cease and Desist orders and /or the Debtors entering into Consent Agreements to, among other things, restrain the Debtors from taking new applications for mortgage loans.

20. Additionally, several shareholder-derivative and other complaints have been filed against one or more of the Debtors, as well as several of New Century's officers and directors, alleging, among other things, breaches of contract, breaches of fiduciary duty and violations of federal securities laws by issuing false and misleading statements and failing to disclose material facts, which resulted in artificially inflated market prices of the company's common stock.

21. These events culminated in the filing of the Chapter 11 Cases on April 2, 2007.

22. On May 3, 2007, New Century filed a form 8-K with the SEC that advised that KPMG, its principal accountants, had notified the Audit Committee that KPMG had resigned and that New Century "is currently in liquidation proceedings under Chapter 11 of the Bankruptcy Code, and accordingly does not expect that it will have the need to engage a successor independent accounting firm."

23. On May 24, 2007, New Century filed an 8-K with the SEC that advised that the Audit Committee, based on communications with the professionals retained as part of the Audit

Committee investigation, "has determined that there were errors in the Company's previously filed annual financial statements for its fiscal year ended December 31, 2005 (the "2005 Financial Statements") with respect to both the accounting and reporting of loan repurchase losses and the Company's valuation of certain residual interests in securitizations." The filing also announced that the Audit Committee and management "believe that it is more likely than not that these errors in the aggregate resulted in a material overstatement of pretax earnings on the 2005 Financial Statements" and that the New Century Board of Directors had concluded "that the 2005 Financial Statements should no longer be relied upon."

24.   KPMG had audited and reported on the 2005 Financial Statements, management's assessment of the effectiveness of internal control over financial reporting as of December 31, 2005, and the effectiveness of internal control over financial reporting as of December 31, 2005.

## DISCOVERY SOUGHT OF KPMG

25.   The Committee seeks disclosure from KPMG under Bankruptcy Rules 2004 and 9016 to permit the Committee to properly discharge its duties pursuant to Section 1103(c) of the Bankruptcy Code to investigate the Debtors' pre-petition acts, conduct, property, liabilities, and financial condition.

26.   The Committee seeks to obtain documents and conduct examinations concerning the accounting, auditing, tax, and other professional services KPMG provided to the Debtors pre-petition, including but not limited to KPMG's: (a) audits of the Debtors' financial statements; (b) reviews of the Debtors' interim financial statements, (c) audits and assessments of the Debtors' internal controls over financial reporting and (d) other professional services provided to the Debtors.

27. The documents that the Committee seeks from KPMG are identified in the schedule annexed to the proposed order included herewith as Exhibit "A" (the "Proposed Order"). The documents requested by the Committee reflect the coordinated efforts of the Examiner and Committee and the schedule annexed to the Proposed Order is identical to the documents requested by the Examiner in his July 10, 2007 application for an order under Bankruptcy Rules 2004 and 9016, with one exception. To fulfill its investigative mandate under the Bankruptcy Code, the Committee is seeking documents for the period commencing and continuing after 2001.

28. The individuals that the Committee will seek to examine after the production of documents by KPMG will include John Donovan, an audit partner, Mark Kim, a senior manager, as well as other individuals who will be identified in the documents produced by KPMG. The Committee will coordinate its efforts with the Examiner as instructed by the June 1, 2007 Order.

## BASIS FOR RELIEF REQUESTED

29. Bankruptcy Rule 2004 authorizes any party in interest, with court approval, to examine any entity and request documents relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed.R.Bankr.P. 2004(b). Bankruptcy Rule 2004(c) further provides that "[t]he attendance of an entity for examination and for the production of documents … may be compelled as provided in Rule 9016 for the attendance of witnesses at a hearing or trial."

30. The scope of a Bankruptcy Rule 2004 examination is "very broad" and may be "legitimately compared to a fishing expedition". In re Drexel Burnham Lambert Group, Inc.,

-9-
127340.01600/40169980v.1

123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). <u>See</u> <u>also</u> <u>In re Valley Forge Plaza Associates</u>, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990).

31. A Bankruptcy Rule 2004 examination may "properly extend to creditors and third parties who have had dealings with the debtor." <u>In re Fearn</u>, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989). <u>See</u> <u>also</u> <u>In re Valley Forge Plaza Associates</u>, 109 B.R. at 674 ("[t]hird parties having knowledge of the debtor's affairs . . . are subject to [a Rule 2004] examination"); <u>In re Johns-Manville Corporation</u>, 42 B.R. 362, 364 (S.D.N.Y. 1984) (a Rule 2004 examination may "cut a broad swath through the debtors' affairs, those associated with him, and those who might have had dealings with him").

32. Further, a Bankruptcy Rule 2004 examination of third parties may be used as a pre-litigation device to investigate the merits of potential causes of action. <u>In re Oliver's Stores, Inc.</u>, 79 B.R. 588, 591-592 (Bankr. D.N.J. 1987).

33. The standard for determining the propriety of discovery under Bankruptcy Rule 2004 is "good cause." <u>See</u>, <u>e.g.</u>, <u>In re Graybill Corp.</u>, 109 B.R. 329, 334 (Bankr. N.D. Ill 1989); <u>In re 2435 Plainfield Ave., Inc. v. Township of Scotch Plains</u>, 223 B.R. 440, 455 (Bankr. D.N.J. 1998). The movant needs to show only a reasonable basis for the examination. Here, there is good cause for allowing the requested discovery because it is necessary to allow the Committee to fulfill its directive to investigate the Debtors' pre-petition acts and financial condition, as well as potential claims that may exist.

34. Notice of this Motion has been given to (i) counsel for KPMG; (ii) counsel for the Debtors; (iii) the United States Trustee; (iv) the Examiner; (v) all parties required to be served under Delaware Bankruptcy Local Rule ("Del. Bankr. L.R.") 2004-1; and (vi) all parties that have filed notices of appearance and demanded service of papers pursuant to Bankruptcy Rule

127340.01600/40169980v.1

2002(g). Under the circumstances, the Committee submits that such notice will be adequate and sufficient and therefore no other or further notice is required.

## WAIVER OF MEMORANDUM OF LAW

35. The Committee submits that this Motion does not present any novel issues of law requiring briefing and the legal authority in support of the Committee's Motion is set forth herein. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference into Del. Bankr. L.R. 1001-1(b), the Committee respectfully requests that the Court set aside the briefing schedule provided for in Rule 7.1.2(a) of the Local District Court rules.

## NO PRIOR APPLICATION

36. No previous application for the relief sought herein has been made to this or any other Court.

37. The Committee expressly reserves its right at any time to supplement or amend this motion and the relief requested herein including, without limitation, Exhibit A.

38. The Certification required pursuant to Del. Bankr. L.R. 2004-1 is annexed hereto as Exhibit "B".

127340.01600/40169980v.1

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (a) enter an Order in the form annexed hereto as Exhibit A pursuant to Bankruptcy Rules 2004 and 9016; and (b) grant such other and further relief as the Court deems just and proper.

Dated: July 16, 2007

BLANK ROME LLP

_/s/ Bonnie Glantz Fatell_
Bonnie Glantz Fatell (No. 3809)
Regina Stango Kelbon
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Mark T. Power
488 Madison Avenue
New York, New York 10022
Telephone:    (212) 478-7200
Facsimile:    (212) 478-7400

*Co-Counsel to the Official Committee of Unsecured Creditors of New Century TRS Holdings, Inc., et al.*