**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

In re:                                                                   Chapter 11

NEW CENTURY TRS HOLDINGS, INC.,                   Case No. 07-10416 (KJC)
a Delaware Corporation, *et al.,*[1]

                                                                         Jointly Administered
                                        Debtors.            **Hearing Date:  July 31, 2007 at 2:30 p.m.**
                                                                         **Related Docket No. 1888**
_____          **July 31, 2007 Agenda No. 23**


**KPMG LLP'S OPPOSITION TO THE EXAMINER'S MOTION FOR**
**AN ORDER AUTHORIZING THE EXAMINATION OF KPMG LLP**

          KPMG LLP ("KPMG") respectfully submits this Opposition to the Examiner's

Motion for an Order Authorizing the Examination of KPMG LLP.

## **INTRODUCTION**

          KPMG served as the independent auditor for New Century Financial Corp. and its

subsidiaries (the "Company" or "New Century") until April 27, 2007.  The last audit KPMG

completed of New Century's financial statements was for New Century's 2005 fiscal year (the

_____

[1]  The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporation), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

year ended December 31, 2005). As is relevant here, KPMG also completed reviews of New

Century's interim unaudited financial statements for the quarters ended March 31, 2006, June 30,

2006 and September 30, 2006. KPMG was unable to complete its audit of the Company's 2006

annual financial statements due to a combination of factors, including the impact on the

incomplete audit of the Company's February 7, 2007 announcement that it had discovered errors

in its 2006 quarterly financial statements; the commencement of an independent investigation

into those errors by the Audit Committee of the Board of Directors of the Company (which

investigation was subsequently expanded at KPMG's request to also address the Company's

valuation of residual interests in securitizations in 2006 and prior periods); the commencement of

regulatory investigations focused on the matters being investigated by the Audit Committee; and,

ultimately, the Company's April 2, 2007 filing of a voluntary petition under chapter 11 of the

United States Bankruptcy Code in the United States Bankruptcy Court for the District of

Delaware and announcement that it did not anticipate needing to issue audited financial

statements for 2006. KPMG resigned as New Century's auditor on April 27, 2007.

   The terms under which KPMG provided professional services to New Century

were set forth in the engagement letters executed by KPMG and New Century. The operative

engagement letter was dated September 7, 2004, and an amendment thereto was dated April 17,

2006 (collectively, the "Engagement Letters"). (See Engagement Letters, attached hereto as

Appendix A.) As is common in agreements between sophisticated parties who desire to provide

for an efficient and fair process to resolve disputes that may arise between them, the Engagement

Letters executed by KPMG and New Century provide for a mandatory dispute resolution process

(mediation followed by binding arbitration). The agreement also commits the parties to a

process that places strict limits on the scope, and therefore the expense, of discovery associated

with resolving any dispute.  As explained in more detail below, the broad discovery the Examiner seeks authority to embark upon in the instant motion is fundamentally at odds with (and thus is barred by) the mandatory dispute resolution procedure that KPMG and New Century bargained for pre-petition and to which they both remain obligated.

In the Engagement Letters, KPMG agreed to audit both the consolidated financial statements prepared by New Century and the internal control over financial reporting established and maintained by management.  KPMG also agreed to perform reviews of New Century's quarterly condensed financial statements.  However, reflecting the fundamental allocation of responsibilities between an issuer of financial statements and its auditor, New Century's management was responsible for the preparation and presentation of "the consolidated financial statements, schedules, and interim financial information and all representations contained therein." (App. A at A8.)  Management was also responsible for "adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting" and reporting "all significant deficiencies and material weaknesses in the design or operation of such controls."  (Id.)

In the Engagement Letters, KPMG and New Century also agreed that the sole methodology for resolving any dispute arising from KPMG's services to New Century, including disputes or claims involving entities for whose benefit the services were provided, was through alternative dispute resolution (mediation followed by arbitration if necessary), rather than in the courts.  (Id. at A9.)  KPMG and New Century further agreed that any discovery would be limited to that which was ordered by the arbitrators upon a showing of substantial need by the party seeking such discovery. (Id. at A18.)  Third Circuit law makes clear that KPMG's pre-petition agreement with New Century must be enforced by this Court.

On or about June 29, 2007, the Examiner asked KPMG to agree to produce voluntarily all of its audit workpapers from 2003 through the present related to the Company without requiring a subpoena. In response, KPMG explained that it has an arbitration agreement with New Century that governs any disputes between KPMG and the Company (or anyone standing in its shoes), which limits the discovery that may be taken of KPMG in connection with any such disputes. At the Examiner's request, KPMG provided the Examiner with a copy of the Engagement Letters, with the mandatory arbitration and discovery limitation provisions contained therein. In these discussions, KPMG also objected to the broad scope of the Examiner's request on the basis that a request for documents dating back to 2003 exceeded the Examiner's authority, which is limited to investigating New Century's announced plans to restate its financial statements for 2005 and 2006. (See Order Denying in Part and Granting in Part Motion of the United States Trustee for an Order Directing the Appointment of a Chapter 11 Trustee, or in the Alternative, an Examiner (the "Examiner Appointment Order") (Docket No. 1023).) Notwithstanding its arbitration agreement and the discovery limits it provides, KPMG proposed that the Examiner consider an arrangement under which KPMG would produce its audit workpapers for 2005 and the workpapers from its reviews for the quarters ended March 31, 2006, June 30, 2006 and September 30, 2006, provided that the Examiner agree that (1) in producing those workpapers, KPMG was not waiving its jurisdictional defenses, including its right to compel arbitration, and (2) the Examiner would not share those documents with any other party or entity. KPMG thus sought to preserve its bargained-for arbitration rights while still cooperating with the Examiner. The Examiner declined KPMG's proposal, claiming that he could not agree to any restriction on his use of documents provided by KPMG. Subsequently, the Examiner filed the instant Motion, which seeks leave to conduct an examination of KPMG

by, inter alia, serving a very broad subpoena that asks for all workpapers from the period 2004

through 2006, as well as numerous other categories of documents and leave to depose current

and former KPMG personnel.  The Examiner's Motion does not mention KPMG's arbitration

rights or its right to a dispute resolution procedure that places restrictions on discovery.

Following the filing of the instant Motion, KPMG continued its efforts to find an

accommodation that would provide the Examiner with information, but in a manner, and subject

to restrictions, designed to protect KPMG's arbitration rights.  The parties continue to discuss the

appropriate scope of and limitations of use associated with any voluntary production of

documents or information made by KPMG.  It is KPMG's firm and principled position that

before KPMG produces any documents or information, the Examiner must agree that (1) unless

he is otherwise ordered by this Court, materials produced by KPMG are on an "Examiner's eyes-

only" basis and will not be made available to any entity other than the Examiner or his

professionals, and (2) any production made by KPMG does not constitute a waiver of KPMG's

jurisdictional arguments, including KPMG's right to compel arbitration.  It is also KPMG's

position that the Court should enter a protective order enforcing the parties' agreement, a form of

which is attached hereto as Appendix B (the "Protective Order").

KPMG has, at all times, been willing to cooperate with the Examiner.  However,

it is KPMG's right to require that any formal discovery – whether document production or

testimony – be governed by an arbitrator consistent with the arbitration agreement in its

Engagement Letters with New Century.  These represent limits to the Examiner's powers, and

the breadth of the proposed subpoena clearly exceeds those limits.  The subpoena that the

Examiner seeks leave to serve upon KPMG is unquestionably intended to support an

investigation into whether New Century has claims against KPMG, and the Examiner is

impermissibly using Rule 2004 to obtain discovery to support such claims.  As such, the

subpoena is barred by the arbitration agreement between KPMG and New Century.  The

proposed subpoena also exceeds the Examiner's authority under the Examiner Appointment

Order.  The Examiner's Motion therefore should be denied.[2]  Finally, to the extent KPMG

produces any documents to the Examiner, the Court should enter the Protective Order, which

bars the Examiner from sharing those documents with any other entity, including the Creditors'

Committee, and preserves its jurisdictional arguments.  To hold otherwise would entirely

frustrate KPMG's bargained-for rights to a limited, focused, efficient and less expensive dispute

resolution process as well as run counter to existing Third Circuit precedent compelling this

Court to give full effect to KPMG's pre-petition dispute resolution contract.

**ARGUMENT**

I.    **THE EXAMINER'S MOTION SHOULD BE DENIED BECAUSE THE
      PROPOSED SUBPOENA IS BARRED BY THE ARBITRATION AGREEMENT
      BETWEEN KPMG AND NEW CENTURY.**

    A.    **Claims Against KPMG Are Subject To An Arbitration Agreement That Bars
      Discovery.**

KPMG served as the Company's independent auditor from the mid-1990s until

shortly after the Debtors filed their voluntary petition for relief under Chapter 11.  The

Engagement Letters relevant to the instant Motion contain a broad "Dispute Resolution" clause

(the "Arbitration Agreement") which requires that claims related to services provided by KPMG

pursuant to the Engagement Letters are subject to mandatory arbitration:

> Any dispute or claim arising out of or relating to the engagement
> letter between the parties, the services provided thereunder, or any
> other services provided by or on behalf of KPMG or any of its
> subcontractors or agents to the Company or at its request
> (including any dispute or claim involving any person or entity for

---

[2]  KPMG reserves the right to make objections to the Examiner's proposed Subpoena pending
the outcome of this Opposition.

> whose benefit the services in question are or were provided) shall
> be resolved in accordance with the dispute resolution procedures
> set forth in Appendix II, which constitute the sole methodologies
> for the resolution of all such disputes.

(App. A at A9.)  The "Dispute Resolution Procedures" in Appendix II of the Engagement Letters

provide for mediation and then, if necessary, arbitration of disputes.  KPMG and New Century

agreed that "[d]iscovery shall be permitted in connection with . . . arbitration only to the extent,

if any, expressly authorized by the arbitration panel upon a showing of substantial need by the

party seeking discovery."  KPMG and New Century thus agreed to avoid the expense of

litigation and to have their disputes resolved with little if any discovery.  KPMG and New

Century further agreed "to forego litigation over such disputes in any court of competent

jurisdiction" and that "[a]ll aspects of the arbitration shall be treated as confidential."  (Id.)

　　　　This Court has no discretion to avoid the Arbitration Agreement between KPMG

and New Century.  The Federal Arbitration Act (the "FAA") has "established a strong policy in

favor of arbitration . . . and requires rigorous enforcement of arbitration agreements."  In re

Mintze, 434 F.3d 222, 229 (3d Cir. 2006) (citation omitted); see also In re Olympus Healthcare

Group, Inc., 352 B.R. 603, 610 (Bankr. D. Del. 2006) (citations omitted).  The FAA provides

that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Moreover, the

courts do not have the authority to resolve disputes relating to the interpretation of arbitration

agreements – those decisions are left to the sound discretion of the arbitrator.  Certain

Underwriters at Lloyd's London v. Westchester Fire Ins. Co., No. 06-1457, 2007 WL 1673876,

at *5 (3d Cir. June 12, 2007) (citing Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 447 (2003)).

　　　　Applying the strong presumption favoring arbitration, the Third Circuit has held

that the Bankruptcy Court "lacks the authority and discretion" to deny enforcement of arbitration

agreements "*unless* the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory right at issue." Mintze, 434 F.3d at 231 (emphasis in original). Congressional intent affirmatively to bar arbitration can be established only where "the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration clause."[3] Id. at 230 (quoting Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1156-57 (3d Cir. 1989)). The Third Circuit limits a finding of such congressional intent to bar enforcement of arbitration agreements to situations where the underlying claim was created by "the Bankruptcy Code . . . for the benefit of the creditors of the estate." Id.; see also Olympus Healthcare, 352 B.R. at 610. When the underlying claim was not created by the Bankruptcy Code, "a bankruptcy court lacks the authority and discretion to deny [an arbitration agreement's] enforcement." Mintze, 434 F.3d at 231; see also Hays, 885 F.2d at 1157.

Here, there is no question that KPMG and New Century entered into a valid contract requiring arbitration of all claims related to services provided by KPMG, and that they agreed to limit discovery relating to such claims. Any claim against KPMG that the Examiner may find exists would and could not be based on the Bankruptcy Code. To the contrary, any claim against KPMG – such as a claim for negligence or accounting malpractice – would be based on KPMG's pre-petition services for New Century which without question arise out of the pre-petition contract requiring arbitration. As a result, the Court has no discretion to avoid enforcing the Arbitration Agreement between KPMG and New Century. See Mintze, 434 F.3d at 231.

---

[3] Courts in the Third Circuit no longer evaluate whether the claim subject to arbitration is core or non-core to determine whether they have the discretion to deny enforcement of the arbitration agreement. Mintze, 434 F.3d at 229.

**B.      The Arbitration Agreement Bars The Examiner's Proposed Subpoena.**

This Court should reject any argument that the Arbitration Agreement does not

apply to the Examiner.  As an initial matter, the Examiner bears the burden of proof to

demonstrate to the Court that the Arbitration Agreement should not be enforced.  Hays, 885 F.2d

at 1156.  The Examiner did not address the Arbitration Agreement in his Motion, let alone

demonstrate that this Court has discretion to deny its enforcement.

The Arbitration Agreement is enforceable against the Examiner.  Obviously, the

Arbitration Agreement is enforceable against New Century, because it is a party to the

Arbitration Agreement.  Third Circuit law mandates that the Arbitration Agreement would

likewise be enforceable against any entity, such as the Creditors' Committee or a trustee, that

would stand in New Century's shoes.  See Hays, 885 F.2d at 1153, 1155.  As it relates to the

transparent purpose of the discovery the Examiner seeks from KPMG – namely, regarding non-

Code, pre-petition claims against KPMG – the Examiner should be deemed to stand in New

Century's shoes because any claim that could be brought against KPMG would be derived from

New Century.[4]  An investigation into New Century's announced need to restate certain prior

periods has already been virtually completed by the Audit Subcommittee.  (See Response to

Limited Objection of the United States Trustee to the Debtors' Application for Order

Authorizing the Retention and Employment of Heller Ehrman LLP as Special Counsel to the

Audit Subcommittee Nunc Pro Trunc to the Petition Date Pursuant to Sections 327(e) and

1107(b) of the Bankruptcy Code at 4.)  The discovery sought by the Examiner is not necessary to

complete an analysis of the contemplated restatements themselves, but is clearly intended to

---

[4]  In this case the Court did not appoint a trustee at least in part because of the extremely vocal
objections of the Debtors.

investigate the potential claims that New Century, and all those acting for it as an estate

representative, is required to resolve through arbitration.

Any argument that the Arbitration Agreement has not yet been triggered because

there is no "dispute or claim" – i.e., no adversary proceeding – yet pending between KPMG and

New Century or its assignees is a mere sleight of hand.  The natural outcome of a Rule 2004

investigation is an adversary proceeding.  Permitting pre-arbitration discovery, dressed up as an

investigation, circumvents the purpose of the FAA and the strong presumption favoring

arbitration.  See In re Daisytek, Inc., 323 B.R. 180, 188 n.8 (N.D. Tex. 2005) (arbitration clause

that is essentially identical to the one at issue here afforded protection before the initiation of

formal arbitration proceedings).

Thus, the Court should reject any argument that it need not give effect to the

Arbitration Agreement in the context of a Rule 2004 investigation.  The Third Circuit's decision

that bankruptcy courts have no discretion to avoid arbitration agreements regarding disputes

based on pre-petition services necessarily extends to investigations that may lead to such

disputes being filed, including investigations under Rule 2004.  See Mintze, 434 F.3d at 231.  If

it did not so extend, then the protections the parties agreed to in an arbitration agreement –

including the right to have disputes resolved through arbitration with limited discovery – would

be eviscerated.

This Court should follow the decision in Daisytek, the holding of which is

compelled by the Third Circuit's decision in Mintze.  In Daisytek, the district court reversed the

bankruptcy court's order allowing a trustee to take unlimited Rule 2004 discovery of the debtors'

auditor where there was an arbitration clause between the debtors and the auditor that was

essentially identical to the one at issue here.  The district court held that if the trustee were

investigating a proceeding that does not derive from the Bankruptcy Code, such as a state-law

accounting malpractice claim based on pre-petition conduct, "the court must give effect to the

terms of any applicable arbitration clauses in the engagement agreements." Daisytek, 323 B.R.

at 188.  Daisytek held that the focus of whether the arbitration agreement barred the proposed

discovery was on "the underlying nature of the proceedings that could flow from the information

obtained through the Rule 2004 examination." Id. at 187.  In reaching that holding, Daisytek

considered itself bound by the Fifth Circuit's decision in In re National Gypsum, 118 F.3d 1056

(5th Cir. 1997), that "nonenforcement of an otherwise applicable arbitration provision turns on

the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from

the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would

conflict with the purposes of the Code." Daisytek, 323 B.R. at 186 (quoting Nat'l Gypsum, 118

F.3d at 1067).  Daisytek rejected the premise that the Rule 2004 examination itself is the

proceeding that is the focus of this inquiry.  The court explained that "Rule 2004 is a procedural

device" that allows a party in interest to take discovery, but that "[a] proceeding within the

meaning of National Gypsum is more than a discovery device; it is a procedural mechanism that

enables one to obtain some form of remedy or other relief," such as motions to lift the automatic

stay, adversary proceedings, and claim quantification. Id. at 187.

      The National Gypsum test is the same as the Third Circuit's Mintze test:  the

Mintze court expressly agreed with National Gypsum, which in turn relied on the Third Circuit's

earlier decision in Hays, 885 F.2d 1149.  See Mintze, 434 F.3d at 230-31.  Indeed, the Third

Circuit has stressed that the proper focus is whether the case raises "statutory claims that were

created by the Bankruptcy Code." Id. at 231 (emphasis added).  As Rule 2004 does not involve

claims, but rather is merely a procedural discovery device, Mintze thus commands that the focus

is on the underlying claims that may be brought.  This Court is bound by Mintze (and National

Gypsum) and therefore should hold (like the Daisytek court) that an arbitration agreement bars a

Rule 2004 investigation if the underlying claims being investigated are ones to which the

arbitration agreement would apply.  If the underlying dispute being investigated would result in a

claim that is subject to mandatory arbitration – as would a claim against KPMG based on its pre-

petition services to New Century – then "the court must give effect to the terms of any applicable

arbitration clauses" and bar such discovery.  Daisytek, 323 B.R. at 188; see also Mintze, 434

F.3d at 231.[5]

       Finally, to the extent the Examiner argues that he is entitled to take discovery of

KPMG as part of his investigation of potential claims against parties other than KPMG, that

argument should be rejected.  First, the Examiner's subpoena is extremely broad, and clearly

seeks documents that would be relevant only to a potential claim against KPMG.  For example,

the subpoena calls for production of the performance evaluations and professional qualifications

of all KPMG engagement team members who performed services for New Century (Motion, Ex.

---

[5] The Court should not follow In re Friedman's, Inc., 356 B.R. 779, 784 (Bankr. S.D. Ga. 2005), which permitted a Rule 2004 investigation to proceed in spite of an arbitration agreement.  That case turned on the fact that the entity seeking the investigation had not yet determined what claims, if any, he would investigate.  KPMG respectfully submits that Friedman's is contrary to Mintze and National Gypsum and therefore should not be followed by this Court.  Friedman's is also readily distinguishable from this case, where it is clear that the Examiner unequivocally seeks discovery in support of pre-petition, debtor-derived claims that can be asserted against KPMG.  See infra, p. 12; see also Motion at p. 2-3 ("The documents and information sought by the Examiner [from KPMG] are necessary to facilitate his investigation, in accordance with the June 1, 2007, Order, of any and all accounting and financial statement irregularities, errors or misstatements by the Debtors, as well as his efforts to identify and evaluate any claims or rights of action that the estate might have arising from or relating to such irregularities, errors, or misstatements.") (emphasis added).  KPMG further notes that it has already been named as a defendant in a derivative lawsuit brought on behalf of nominal defendant New Century.  See Buonanno v. Cole, No. 07CC03899 (Super. Ct. Orange County, CA filed March 15, 2007).  Although that action is currently stayed, the adversary proceedings KPMG faces are far from hypothetical.

1, at 9-10); "[a]ll draft and final versions of KPMG Defining Issues and similar internal or external communications (id. at 13); and "[a]ll KPMG audit manuals, internal and external guidance, industry guides and/or checklists" (id. at 16).[6]  The only possible use of such discovery would be in an adversary proceeding against KPMG for negligence, malpractice, or some other non-Code derived, pre-petition claim.  Under Mintze, this Court has no discretion to void the Arbitration Agreement between KPMG and New Century by ordering KPMG to produce these documents.  434 F.3d at 231.

Moreover, even if the documents are relevant to a potential claim that is not subject to the Arbitration Agreement, such as a claim against an officer or director, that does not automatically mean that such discovery therefore can take place.  To the contrary, where such discovery would overlap with discovery that would be constricted by an arbitration clause – as it necessarily would in this case – the Court has discretion to restrict such dual-purpose discovery in order to protect KPMG's arbitration, limited discovery, and confidentiality rights.  See Daisytek, 323 B.R. at 188 n.9.  KPMG respectfully submits that the Court should exercise its discretion against ordering KPMG to produce every document in its possession on the pretext that they might be somehow relevant to a claim against someone else.

Here, KPMG is prepared to make certain of its 2005 and 2006 nonproprietary workpapers available to the Examiner.  Those workpapers document the procedures that KPMG performed to evaluate the consolidated financial statements that were prepared by, and that were the representations of, New Century and its management.  The Examiner has made no showing whatsoever that any additional documents are necessary to investigate potential claims against KPMG or anyone else.  At a minimum, the Examiner should not be allowed to eviscerate

---

[6] It is highly unlikely that such discovery would be available in the context of an arbitration where discovery is limited to that to which there is "substantial need."

KPMG's bargained-for rights without first reviewing the documents that KPMG is prepared to make available and clearly and specifically articulating why and how any additional documents are reasonably necessary to his investigation.

This showing is particularly critical in this case because the discovery the Examiner seeks from KPMG will be extremely onerous and costly to assemble and produce. KPMG bargained for the ability to minimize its exposure to discovery costs in a dispute with New Century. There is no basis for the Examiner to impose such costs on KPMG – in direct conflict with its bargained-for right to avoid such costs – on the mere pretext that such documents might in some unidentified way be relevant to a claim against someone else. Thus, the Examiner's Motion should be denied.

### C.    Documents Provided By KPMG To The Examiner Should Not Be Shared With Potential Adversaries That May Bring Claims Against KPMG.

To the extent that KPMG produces, or is ordered to produce, any documents to the Examiner, the Examiner should not be permitted to share KPMG's production with any other entity, including New Century and the Creditors' Committee. New Century and any entity that stands in its shoes are clearly bound by the terms of the Arbitration Agreement. See Hays, 885 F.2d at 1153, 1155. Allowing entities that are subject to the terms of the Arbitration Agreement to have unrestrained access to materials produced by KPMG would clearly be an end-run around the Arbitration Agreement that is barred by the FAA.[7]

It is the function of the arbitrator, and not this Court, to determine what, if any, discovery is available to the Creditors or anyone else standing in New Century's shoes in

---

[7] The Creditors' Committee has brought its own motion to take discovery of KPMG pursuant to Rule 2004. That motion should be denied in its entirety. In addition to being barred by the Arbitration Agreement, it also duplicates the Examiner's Motion and is premature. KPMG will file an opposition to the Creditors' Committee's motion that makes these points on July 31, 2007.

connection with a claim against KPMG.  To protect KPMG's bargained-for right to arbitration

with limited, confidential discovery, this Court should enter the Protective Order, which governs

the use of any material produced to the Examiner pursuant to his Rule 2004 investigation.  Here,

the Arbitration Agreement specifically limits the discovery available to New Century, and any

entities standing in its shoes.  Unless the materials produced by KPMG to the Examiner are

subject to a protective order, the purpose of the Arbitration Agreement will be completely

frustrated.  New Century, and other entities asserting claims against KPMG on New Century's

behalf, will have free access to documents that KPMG and New Century expressly agreed would

be discoverable only upon a showing of "substantial need" before an arbitration panel.

While the Examiner's report, once filed, is a judicial record that may be reviewed

by other parties in their proceedings against the Debtors, the materials underlying that report –

produced by third parties to the Examiner – are not judicial records and may be, and should be,

protected by this Court.  See In re Apex Oil Co., 101 B.R. 92, 101 (Bankr. E.D. Mo. 1989)

("Protective orders over [Rule] 2004 discovery are valid when issued for good cause."); see also

Fed. R. Bankr. P. 9018 (court may enter protective order "[o]n motion or on its own initiative").

Because the scope of a Rule 2004 investigation is much broader than that of discovery in civil

litigation, the court's interest in protecting materials and documents obtained in discovery of

third parties is especially clear in a Rule 2004 investigation.  See Apex Oil, 101 B.R. at 102.

In this case, a protective order is especially appropriate, given that the Arbitration

Agreement significantly limits available discovery and imposes confidentiality restrictions.

Because the Arbitration Agreement provides for only limited discovery, other parties should not

be permitted to circumvent these procedures by receiving unlimited access to the materials

produced to the Examiner.  Moreover, the Examiner should not be assisting creditors in

investigating causes of action against third parties: "[A]n examiner 'constitutes a Court fiduciary and is amenable to no other purpose or interested party.'" <u>See</u> <u>In re Baldwin United Corp.</u>, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985) (citation omitted) (also noting that if examiners' "nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game"). The disclosure of materials obtained by the Examiner to other parties standing in the shoes of New Century would amount to an impermissible evasion of the arbitration clause, which is barred by <u>Mintze</u>, and would also upset the Examiner's impartial role in these proceedings.[8]  Thus, the Court should enter the Protective Order restricting the use of all documents produced by KPMG.

## II.    THE EXAMINER'S SUBPOENA SHOULD NOT ISSUE BECAUSE IT CLEARLY EXCEEDS THE AUTHORITY GRANTED TO HIM BY THE COURT.

The Examiner's proposed subpoena clearly exceeds the authority granted to him by this Court.  Specifically, the Examiner's subpoena contains requests for virtually every document that KPMG has that relates to New Century from 2004 through the present, even though this Court granted the Examiner authority to investigate events that relate only to New Century's misstatement of pre-tax earnings in its 2005 financial statements and its decision to restate its quarterly financial statements for the first three quarters of 2006.  Documents that do not relate to New Century's financial statements for the year-ended December 31, 2005, or the first three quarters of 2006 are clearly outside of the scope of the Examiner's authority.

---

[8] As the court in <u>Baldwin United</u> explained, "we never contemplated, nor in our opinion does the Bankruptcy Code contemplate, that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants.  The prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality and reliance upon this Court's orders raises grave concerns touching both the integrity of the Bankruptcy Court's processes, as well as the integrity of the statutory position of the Examiner." <u>Id.</u> at 316.

Moreover, documents from 2004 have no bearing on claims related to a misstatements in 2005

and 2006.  This Court should deny the Examiner's Motion because it clearly seeks production of

documents outside of the scope permitted by the Examiner Appointment Order.

   The scope of an examiner's authority derives from the court's examiner orders.

In re New Power Co., 438 F.3d 1113, 1119 n.6 (11th Cir. 2006).  Although the scope of an

examiner's powers during a Rule 2004 investigation is broad, "[n]evertheless, there are limits,"

and the examination "cannot stray into matters which are not relevant to the basic inquiry."  In re

Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1986); see also New Power Co., 438 F.3d at 1119

n.5 (examiner should not "unnecessarily waste time and money on fruitless investigations").

Here, the Examiner's proposed subpoena would plainly exceed the authority granted to him by

this Court in the Examiner Appointment Order.  In both his informal request to KPMG and in his

proposed subpoena, the Examiner requested that KPMG produce nearly every document in its

possession relating to the period that began January 1, 2004 through the present.  (See Motion,

Ex. 1, "Time Period (requesting documents "from January 1, 2004 through the present").)  While

the Examiner apparently – and mistakenly – believes that his authority extends beyond the years-

ended 2005 and 2006, this Court's order authorized the Examiner to investigate financial

irregularities only in 2005 and 2006:

> (a) investigate any and all accounting and financial statement
> irregularities, errors or misstatements, including but not limited to
> such irregularities, errors or misstatements that (i) gave rise to the
> announced need to restate the Debtors' financial statements for the
> first three quarters of 2006 and/or (ii) led the Debtors' management
> and Audit Committee to conclude that it was more likely than not
> that pre-tax earnings in the 2005 financial statements were
> materially overstated, and identify and evaluate any claims or
> rights of action that the estates might have arising from or relating
> to such irregularities, errors or misstatements, (b) investigate any
> possible post-petition unauthorized use of cash collateral by the
> Debtor, and (c) otherwise perform the duties of an examiner set

forth in section 1106(a)(3) (as limited by this Order) and
1106(a)(4) of the Bankruptcy Code . . .

(Examiner Appointment Order, ¶ 3.)  The Examiner's request for documents that relate to events

prior to January 1, 2005 strays into matters irrelevant to his investigation, is clearly beyond the

authority granted to him by this Court, and would be an unnecessary waste of time and money.

Accordingly, his Motion should be denied.

Moreover, KPMG's documents from before January 1, 2005 that relate to prior

periods have no bearing on the events that gave rise to New Century's 2005 misstatement or

New Century's announcement that it will restate its unaudited quarterly financial statements for

the first three quarters of 2006.  Documents that do not relate to KPMG's integrated audits of

New Century's consolidated financial statements for the year-ended December 31, 2005, or its

quarterly reviews of New Century' condensed consolidated balance sheets for the first three

quarters of 2006 are not relevant to claims subject to investigation regardless of when they were

created.  Accordingly, in addition to being outside of the authority granted by this Court, the

Examiner, through his proposed subpoena, seeks discovery of documents that have no bearing on

the events that led to New Century's misstatement for the year-ended December 31, 2005, or

restatement of the quarterly financial statements for the first three quarters of 2006.

## CONCLUSION

For the foregoing reasons, the Court should deny the Examiner's Motion.  The Court

should also issue the Protective Order, which provides that documents or other materials KPMG

produces may not be disseminated to any person or entity other than the Examiner and his duly

retained professionals, and that KPMG has not waived any of its jurisdictional defenses,

including its right to compel arbitration.

Dated: July 27, 2007                    Respectfully submitted,

                                        CAMPBELL & LEVINE, LLC

                                        */s/ Mark T. Hurford*
                                        Mark T. Hurford (#3299)
                                        800 King Street, Suite 300
                                        Wilmington, DE 19801
                                        Telephone:  (302) 426-1900

                                        - and –

                                        Guy S. Neal
                                        Sidley Austin LLP
                                        1501 K Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone: (202) 736-8041
                                        Facsimile:  (202) 736-8711

Michael C. Kelley
Jose F. Sanchez
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013-1010

Hille R. Sheppard
Jennifer Peltz
Sidley Austin LLP
One South Dearborn St.
Chicago, IL  60603

*Attorneys for Non-Party KPMG LLP*