**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

In re

NEW CENTURY TRS HOLDINGS,
INC., a Delaware corporation, et al.,[1]

Debtors.

CASE NO. 07-10416

Chapter 11

STIPULATION BY AND AMONG CERTAIN CURRENT AND FORMER DIRECTORS AND OFFICERS
OF DEBTORS, THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT ANY SUCH
RELIEF IS REQUIRED,
TO ENFORCE INSURANCE POLICY IN FAVOR OF INSURED PERSONS

This Stipulation and Agreement for an Order Granting Relief From Stay ("Stipulation")
is made by and among A) Brad A. Morrice, Kevin M. Cloyd, Patti M. Dodge, Stergios
Theologides, Joseph F. Eckroth, Jr., Taj S. Bindra, Robert R. Cole, Edward F. Gotschall, Donald
E. Lange, Fredric J. Forster, Richard A. Zona, Marilyn A. Alexander, Harold A. Black, David
Einhorn, and Michael M. Sachs, by and through their undersigned counsel, B) the Debtors, by
and through their attorney of record, and C) the Official Committee of Unsecured Creditors of
the Debtors by and through its attorney of record (the "Committee," collectively with the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc), a
Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware
corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New
Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation,
a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com,
Anyloan com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a
California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited
partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware
corporation; New Century R.E O. Corp., a California corporation; New Century R E O II Corp., a California
corporation; New Century R.E O III Corp, a California corporation; New Century Mortgage Ventures, LLC
(d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services,
Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers
Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability
company; NCoral, L P, a Delaware limited partnership.

Debtors and the aforementioned individuals, the "Parties").

Based on the facts below, the Parties herein stipulate and agree, that the Insured Persons (also as defined herein) shall be granted immediate relief from the automatic stay to enforce their rights and/or receive payments (as set forth herein) of up to Five Million Dollars ($5,000,000) in the aggregate for all Insured Persons (defined below) combined of the policy proceeds payable under the Primary Insurance Policy (as defined herein):

- Directors, Officers and Corporate Liability/General Partners and Limited Partnership Liability Insurance Policy, policy number 672-43-85, as amended and modified, from time to time (the "Primary Insurance Policy") ($10 million in coverage), with American International Specialty Lines Insurance Company ("AISLIC") and AIG Domestic Claims, Inc. ("AIG", and together with AISLIC, the "Primary Insurer") (A copy is attached hereto as Exhibit A)

In addition to the Primary Insurance Policy there are additional excess policies, (collectively the "Excess Policies"). The Excess Policies are as follows:

- ACE American Insurance Company, policy number DOX G2166120A-002 ($10 million in excess coverage);

- Lloyd's of London, policy number FD0604467 ($10 million in excess coverage);

- Axis Reinsurance Company, policy number RNN 727183 ($10 million in excess coverage); and

- Starr Excess Liability Insurance Company, Ltd., policy number 4121907 ($10 million in excess coverage).

The foregoing insurance policies shall be collectively referred to as the "Insurance Policies", the carriers shall be collectively referred to as the "Insurers" and, for the purposes of

877285 001-1253891 2

this Stipulation, all present and former directors, officers and employees of any of the Debtors named in any of the D&O Actions (defined below) or who are now, or in the future, named (or otherwise required to incur legal and related expenses covered by the Insurance Policies) in any other actions, including without limitation governmental investigations (collectively, the "Other Actions"), including, but not limited to Robert R. Cole, Brad A. Morrice, Edward F. Gotschall, Patrick J. Flanagan, Kevin M. Cloyd, Patti M. Dodge, Stergios Theologides, Joseph F. Eckroth, Jr., David Einhorn, Donald E. Lange, William J. Popejoy, Fredric J. Forster, Richard A. Zona, Marilyn A. Alexander, Harold A. Black, Taj S. Bindra and Michael M. Sachs shall be collectively referred to as "Insured Persons." The Insured Persons collectively with the Debtors shall be referred to as "Insured Parties." In support thereof, the Parties state as follows:

1       On April 2, 2007 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 9, 2007, the United States Trustee appointed the Official Committee of Unsecured Creditors in these cases. On June 7, 2007, Michael J. Missal was appointed examiner in these chapter 11 cases.

2.      Prior and subsequent to the Petition Date, certain of the Insured Parties were named as defendants in approximately 35 complaints, which complaints generally fall into the following two general categories: a) Class Action Securities Litigation; and b) Derivative Litigation (collectively, the "D&O Actions"). A table of the presently known D&O Actions, including case name, case number and the general allegations made in each complaint is attached

to this Stipulation as **Exhibit B**.[2]

3.    The defendants in the D&O Actions are certain of the Insured Parties. The D&O Actions are stayed pursuant to 11 U.S.C. § 362 as to the Debtors, but not the Insured Persons. In defending themselves in the D&O Actions, certain of the Insured Persons have incurred and are continuing to incur legal and related expenses. Although they believe that the allegations raised by plaintiffs are without merit, the Insured Persons remain exposed to mounting costs of defense as well as the potential of judgments.

4.    Prior to the commencement of the D&O Actions, the Debtors purchased the Insurance Policies for the benefit of the Insured Parties.

5.    Pursuant to the Insurance Policies, the Insured Persons are entitled (i) to have certain legal fees and expenses incurred by them in a) the defense of the D&O Actions, and b) the defense of all Other Actions covered by the Insurance Policies, whether filed or initiated before or after the Petition Date, advanced to them by the Insurers, subject to the Insurers' right to be repaid by an Insured Person any amount advanced to or on behalf of such Insured Person in the event and to the extent such Insured Person shall not be entitled under the terms and conditions of the Insurance Policies to payment of such legal fees and expenses, and (ii) to be reimbursed for certain other types of non-excluded losses that they may suffer in connection therewith, including without limitation, certain types of damages, judgments, and settlements, up to the maximum limits of the Insurance Policies.

---

[2] Although the Parties have attempted to include in Exhibit B all pending actions at the time that this Stipulation was executed, it is possible that there are other matters that have not been listed. The term "D&O Actions" is therefore intended to be broadly construed to include not only all matters listed in Exhibit B, attached hereto, but all other matters and actions filed, pending or initiated on or after the Petition Date, including after the date of this Stipulation, in which any of the Insured Persons is named as a party or otherwise is required to incur legal and related expenses covered by the Insurance Policies.

6.    In accordance with the Insurance Policies, certain Insured Persons have made demand on the Insurers to advance the Defense Costs (as defined in the Insurance Policies) they have incurred, and are continuing to incur in defending themselves in the D&O Actions.

7.    The Primary Insurer, subject to a reservation of its rights under the Primary Insurance Policy, has advised the Insured Persons that it is ready and willing to advance past, present and future Defense Costs incurred by the Insured Persons in connection with the D&O Actions and any Other Actions, subject to its right of repayment as set forth in paragraph 5 hereof  However, the Primary Insurer has informed the Insured Persons that it cannot risk being sued for allegedly violating the automatic stay imposed by 11 U.S.C. §362(a) if it does so, thereby exposing itself to the risk of being required to pay more then the $10 million policy limit of the Primary Insurance Policy.  While the Insured Persons do not believe that the proceeds payable under the Insurance Policies are property of the Debtors' estates, the Committee believes otherwise  In an abundance of caution, given the Committee's position, the Insured Parties believe it is prudent to obtain relief from the automatic stay before asserting their rights under the Insurance Policies with respect to the policy proceeds.

8.    The Parties have entered into this Stipulation for relief from the automatic stay, to the extent any such relief is required, with the understanding that it is only an interim resolution to permit the Primary Insurer to advance defense costs to the Insured Persons.  The Parties, and each of them, shall continue to attempt to negotiate a more global agreement regarding the Insurance Policies and reserve all rights to seek or oppose any additional relief regarding the Insurance Policies or anything related thereto (including the Insured Persons seeking unfettered recovery of all proceeds under the Insurance Policies); provided, however, that in no event shall any Party assert that any term of any such agreement subjects any Insurer to any liability with

respect to any advances or payments made by such Insurer pursuant to this Stipulation prior to the date such agreement is executed by all Parties.

Based on the foregoing, it is hereby Stipulated and Agreed to by and between the Parties as follows:

A.  Subject to Bankruptcy Court approval, to the extent necessary, the provisions of §362 of the Bankruptcy Code are modified to permit the Insured Persons to receive up to Five Million Dollars ($5,000,000) in the aggregate for all Insured Persons combined under the Primary Policy (the "Stipulated Payment Amount") for past, present and future Defense Costs (as defined in the Primary Insurance Policy) incurred or to be incurred by any Insured Person in connection with the D&O Actions or any Other Actions;

B.  In no event and under no circumstances shall the Primary Insurer be subject to any liability to any Party with respect to any advances, reimbursements or payments made by the Primary Insurer pursuant to this Stipulation;

C.  Other than as required to enforce the rights agreed upon in this Stipulation, the Parties reserve all other rights, including but not limited to asserting that the proceeds of the Insurance Policies are, or are not, property of the Debtors' estates

D.  Nothing in this Stipulation shall preclude any Insured Party from, at any time, by motion or further stipulation, seeking further access to the proceeds of the Insurance Policies to pay a covered Loss nor shall the Committee or Debtor be precluded from opposing such request. Neither the Stipulated Payment Amount, nor any further agreement or order concerning the use or availability of proceeds from the Insurance Policies to the Insured Persons, shall have any impact on or

alter or impair the express provisions of the Insurance Policies, including, but not limited to any reservation of rights by any Insurer.

E. Nothing in this Stipulation shall preclude any Insured Parties from, at any time in the future, seeking approval of one or more motions to enforce the Insurance Policies and/or their unfettered access to proceeds from the Insurance Policies; nor shall the Committee, the Debtor or any Insured Person or Party be precluded from opposing such request.

F. Following the approval of this Stipulation by the Bankruptcy Court, until the earlier of: (i) confirmation of a chapter 11 plan or plans with regard to one or more of the Debtors' cases; (ii) appointment of a chapter 11 trustee or conversion of one or more of the Debtors' cases to chapter 7; (iii) the initiation or continuation of any litigation against any Insured Person by the Debtors, their successors or assigns (the pendency of the derivative litigation filed prior to the Petition Date shall not constitute such litigation by the Debtors unless or until the Debtors, their successors or assigns take any action to continue or otherwise pursue such litigation); or iv) further order of the court, counsel for the Insured Persons whose fees and costs are actually paid by the Insurers with regard to the D&O Actions or Other Actions shall, within 30 days following the 1st day of each of January, April, July and October, deliver to counsel for the Debtors and counsel for the Committee a statement setting forth the total aggregate amount of fees and costs actually paid by the Insurer pursuant to this Stipulation, identifying and providing a brief status of the D&O Actions and Other Actions for which such fees and costs were advanced ("Fee Summary")  For the avoidance of

doubt, the Fee Summary is to enable the Committee and the Debtors to calculate the dollar amount of the Stipulated Payment Amount paid by the Insurers and provide a brief status with respect to the D&O Actions but is not intended to provide detailed information on how such amounts were used or any particular legal services provided to the Insured Persons.

G.  This Stipulation is subject to and does not alter or amend the terms and/or conditions of any of the Insurance Policies or any reservations of rights under those policies, including, without limitation, any right to reimbursement of an advance from an Insured Person and any right by Debtors to make claims under or to receive payment of loss under the Insurance Policies subject to the terms and conditions of the Insurance Policies; and

H.  This Stipulation, and any disputes that may arise out of this Stipulation, shall be subject to the jurisdiction of the Bankruptcy Court.

I.  This Stipulation shall be interpreted in accordance with the laws of California, without regard to any conflicts of laws principles

J  This Stipulation may be executed in any number of counterparts and by facsimile or electronic transmission, each of which shall be an original, with the same effect as if the signatures hereto were upon the same document.

**STIPULATED AND AGREED:**

DATED: July 10, 2007

J. Michael Kelly (CA Bar No. 173657)
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA 94111
(415) 693-2000

*Counsel for Taj S. Bindra*

877285 001-1253891 2

8

DATED: July 9, 2007

Oscar Garza (CA Bar No. 149790)
GIBSON, DUNN & CRUTCHER LLP
4 Park Plaza
Irvine, California 92614
(949) 451-3800

*Counsel for, Donald E. Lange, Fredric J.*
*Forster, Richard A. Zona, Marilyn A.*
*Alexander, Harold A. Black, David Einhorn,*
*and Michael M. Sachs*

DATED: July ___, 2007

Todd J. Rosen
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9222

*Counsel for Brad A. Morrice, Kevin M. Cloyd,*
*Patti M. Dodge, Stergios Theologides, Joseph F.*
*Eckroth, Jr., Robert R. Cole, and Edward F.*
*Gotschall*

DATED: July ___, 2007

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzanne S. Uhland
Ben H. Logan
Victora Newmark
Emily R. Culler
O'MELVENY &MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

*Counsel for Debtors and Debtors in Possession*

DATED: July ___, 2007

Oscar Garza (CA Bar No. 149790)
GIBSON, DUNN & CRUTCHER LLP
4 Park Plaza
Irvine, California 92614
(949) 451-3800

*Counsel for, Donald E. Lange, Fredric J.
Forster, Richard A. Zona, Marilyn A.
Alexander, Harold A. Black, David Einhorn,
and Michael M. Sachs*

DATED: July 9, 2007

_____

Todd J. Rosen
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9222

*Counsel for Brad A. Morrice, Kevin M. Cloyd,
Patti M. Dodge, Stergios Theologides, Joseph F.
Eckroth, Jr., Robert R. Cole, and Edward F.
Gotschall*

DATED: July ___, 2007

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzanne S. Uhland
Ben H. Logan
Victora Newmark
Emily R. Culler
O'MELVENY &MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

*Counsel for Debtors and Debtors in Possession*

8772RS 001-1253891 2

9

DATED: July ___, 2007

_____
Oscar Garza (CA Bar No. 149790)
GIBSON, DUNN & CRUTCHER LLP
4 Park Plaza
Irvine, California 92614
(949) 451-3800

Counsel for, Donald E. Lange, Fredric J.
Forster, Richard A. Zona, Marilyn A.
Alexander, Harold A. Black, David Einhorn,
and Michael M. Sachs

DATED: July ___, 2007

_____
Todd J. Rosen
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9222

Counsel for Brad A. Morrice, Kevin M. Cloyd,
Patti M. Dodge, Stergios Theologides, Joseph F.
Eckroth, Jr., Robert R. Cole, and Edward F.
Gotschall

DATED: July 10, 2007

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899          CHRISTOPHER M.
(302) 651-7700                      SAMIS (No. 4909)

-and-

Suzanne S. Uhland
Ben H. Logan
Victora Newmark
Emily R. Culler
O'MELVENY &MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

Counsel for Debtors and Debtors in Possession

DATED: July /0 , 2007

_Bonnie Fatell_

Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff (No. 3715)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400

-and-

Mark S. Indelicato
John P. McCahey
HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200

*Co-Counsel to the Official Committee of
Unsecured Creditors of New Century TRS
Holdings, Inc., et al*

# Exhibit A

**AISL**

A Member Company
Group, Inc.

Policy Number:      672-43-85
Renewal of:         492-07-20

**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**
(a Capital Stock Company, herein called the "Insurer")
175 Water Street, New York, NY 10038

> NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

**DIRECTORS, OFFICERS AND CORPORATE LIABILITY/GENERAL PARTNERS AND LIMITED PARTNERSHIP LIABILITY INSURANCE POLICY**

## PARTNERSHIP GOLD℠

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.   PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE.    AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

## DECLARATIONS

ITEM 1(a).    NAMED ENTITY:            NEW CENTURY FINANCIAL CORPORATION

MAILING ADDRESS:            18400 VON KARMEN
                            IRVINE, CA 92612

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:
                            California

ADDITIONAL LIMITED PARTNERSHIPS:

74150 (4/99)

1

ITEM 1(b):    INSURED'S REPRESENTATIVE:    **NEW CENTURY FINANCIAL CORPORATION**

MAILING ADDRESS:    18400 VON KARMEN
IRVINE, CA 92612

ITEM 2.    SUBSIDIARY COVERAGE: any past, present or future Subsidiary of any Named Entity, Limited Partnership or General Partner

ITEM 3.    POLICY PERIOD:    From:  June 8, 2006    To:   June 8, 2007
(12:01 A.M. at the address stated in Item 1.)

ITEM 4.    LIMIT OF LIABILITY:    $10,000,000    aggregate for Coverages A and B combined (including Defense Costs)

ITEM 5.    RETENTION:

**SECURITIES CLAIMS:**

Judgments & Settlements (all coverages)    None

Defense Costs (non-Indemnifiable Loss)    None

Defense Costs (entity General Partner, Coverage B(i) and Indemnifiable Loss )
$5,000,000
for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under Clause 6 in certain circumstances)

**OTHER CLAIMS:**

Judgments, Settlements and Defense Costs (non-Indemnifiable Loss)    None

Judgments, Settlements and Defense Costs (entity General Partner and Indemnifiable Loss)
$5,000,000
for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts

ITEM 6.    CONTINUITY DATES:

A.  All Coverages (other than Outside Entity Coverage)    June 8, 1997

B.  Outside Entity Coverage: Per Outside Entity:    June 8, 2004

74150 (4/99)                              2

ITEM 7.    PREMIUM:    $506,825

Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: Not applicable, coverage rejected by insured. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism. A copy of the TRIA disclosure sent with the original quote is attached hereto.

_____
Authorized Representative or
Countersignature (in states where applicable)

Broker:       AON RISK SERVICES, INC. OF COLORADO
Address:      4100 E. MISSISSIPPI AVENUE, SUITE 1300
              DENVER, CO  80246-8024

74150 (4/99)

3

## POLICYHOLDER DISCLOSURE STATEMENT
### UNDER
### TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *NEW CENTURY FINANCIAL CORPORATION*

Policy Number: *672-43-85*
Policy Period Effective Date From: *June 8, 2006*          To: *June 8, 2007*



**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**

**DIRECTORS, OFFICERS AND CORPORATE LIABILITY/GENERAL PARTNERS AND LIMITED PARTNERSHIP LIABILITY INSURANCE POLICY**

**PARTNERSHIP GOLD℠**

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, American International Specialty Lines Insurance Company, herein called the "Insurer", agrees as follows:

## 1. INSURING AGREEMENTS

### COVERAGE A: NATURAL PERSON INSURED AND GENERAL PARTNER INSURANCE

This policy shall pay the Loss of each and every Natural Person Insured and General Partner of an Organization arising from a Claim first made against such Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his, her or its capacity as a Natural Person Insured or a General Partner of an Organization, except when and to the extent that the Organization has indemnified the Natural Person Insured or General Partner. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE B: ORGANIZATION LIABILITY INSURANCE

This policy shall pay the Loss of the Organization arising from a:

    (i)  Securities Claim first made against the Organization, or

    (ii)  Claim first made against a Natural Person Insured or General Partner

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only to the extent that the Organization has indemnified the Natural Person Insured or General Partner for such Loss pursuant to law, common or statutory, or contract, or the charter, by-laws, partnership agreement or trust agreement of the Organization duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

## 2. DEFINITIONS

(a)  "Additional Limited Partnership" means:

    (1)  any past or present limited partnership listed as such by endorsement to this policy;

    (2)  automatically any limited partnership: (i) whose assets total less than 15% of the total consolidated assets of the Organization as of the inception date of this policy, (ii) of which the Named Entity, the Insured's Representative, an Additional Limited

74151 (4/99)

Partnership, the Company or a Natural Person Insured first becomes the sole general partner during the Policy Period and (iii) whose partnership interests have not been sold in a public offering. The Insured's Representative shall provide the Insurer with full particulars of the new Additional Limited Partnership before the end of the Policy Period;

(3)  any limited partnership (other than a limited partnership described in paragraph (2) above) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole general partner or which is otherwise first sponsored by or affiliated with the Named Entity, Insured's Representative, the Company or a General Partner during the Policy Period, but only upon the condition that within 90 days of the date of first sponsorship or affiliation, the Insured's Representative shall have provided the Insurer with full particulars of the new Additional Limited Partnership and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Additional Limited Partnership. Further, coverage as shall be afforded to a new Additional Limited Partnership is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such Additional Limited Partnership.

In all events, coverage as is afforded under this policy with respect to a Claim made against an Additional Limited Partnership or any General Partner or Natural Person Insured thereof, shall only apply for Wrongful Acts committed or allegedly committed after the effective time that the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first became the sole general partner of the Additional Limited Partnership or the effective time such Additional Limited Partnership was otherwise first sponsored by or affiliated with the Named Entity, the Insured's Representative, the Company or a General Partner and prior to the effective time: (1) the Additional Limited Partnership or any entity General Partner thereof consolidates with or merges into, or sells all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or (2) any person or entity or group of persons and/or entities acting in concert acquires an amount of the outstanding securities representing more than 50% of the voting power for the election of general partners or directors of the Additional Limited Partnership or entity General Partner thereof, or acquires the voting rights of such an amount of such securities; or (3) the Additional Limited Partnership engages in a liquidation, "roll-up" or "roll-over"; or (4) the General Partner(s) of the Additional Limited Partnership are different than the Additional Limited Partnership's General Partner(s) when it first became an Additional Limited Partnership; provided, that this subsection (4) shall not apply if the sole general partner of such Additional Limited Partnership is and remains at all times either the Named Entity, an Additional Limited Partnership, the Company or any Natural Person Insured.

(b)  "Claim" means:

(1)  a written demand for monetary or non-monetary relief;

(2)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(i)    service of a complaint or similar pleading; or

74151 (4/99)

2

(ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or

(iii)    receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation (including a Securities and Exchange Commission, Equal Employment Opportunity Commission or grand jury investigation) of a Natural Person Insured but only after such Natural Person Insured is identified in writing by the investigating authority as a person against whom a proceeding described in clause (2) above may be commenced, or in the case of a securities investigation, after the service of a subpoena on such Natural Person Insured.

The term "Claim" shall include a Securities Claim; provided, however, that with respect to Coverage B(i) only, Claim or Securities Claim shall not mean an administrative or regulatory proceeding against, or investigation of, the Organization.

(c)    "Company" means the Named Entity (if a corporation or limited liability company) and any Subsidiary and any other limited liability company specifically listed as such in an endorsement to this policy; and, in the event any bankruptcy proceeding shall be instituted by or against such Named Entity, Subsidiary or such limited liability company, the Debtor in Possession (or equivalent status outside the United States), if any.

(d)    "Continuity Date" means the date set forth in:

(1) Item 6A of the Declarations with respect to all coverages (other than Outside Entity Coverage); or

(2) Item 6B of the Declarations with respect to a Claim against a Natural Person Insured arising out of such Natural Person Insured serving as a director, officer, trustee or governor of an Outside Entity.

(e)    "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding the compensation of any Director, Officer or Employees of the Organization.

(f)    "Director(s) or Officer(s)" means any past, present or future duly elected or appointed directors, officers, trustees, management committee members or members of the Board of Managers of an Organization. In the event the Named Entity or any other Organization operates outside the United States, then the term "Director(s) or Officer(s)" shall also mean those titles, positions or capacities in such foreign Named Entity or Organization which is equivalent to the position of Director or Officer in a for-profit organization incorporated or formed within the United States. Coverage will automatically apply to all new Directors and Officers after the inception date of this policy.

(g)    "Employee(s)" means any past, present or future employee in their capacity as such, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee.

74151 (4/99)

3

The term "Employee" shall not include any Director, Officer or General Partner.

(h)    "Employment Practices Violation(s)" means any actual or alleged:

(1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3)    discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4)    retaliation (including lockouts);

(5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Organization or Outside Entity;

(6)    employment-related libel, slander, humiliation, defamation, invasion of privacy;

(7)    wrongful failure to employ or promote;

(8)    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference, negligent hiring or negligent retention;

(9)    wrongful discipline;

(10)    failure to grant tenure;

(11)    violation of the Family Medical Leave Act

(12)    failure to provide or enforce adequate or consistent corporate policies and procedure relating to any of the above;

(13)    violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to: (1) an Employee of or an applicant for employment with an Organization or an Outside Entity; or (2) an Officer of an Organization, whether direct, indirect, intentional or unintentional.

With respect to any natural person customer or client of the Organization, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)    "General Partner" means:

(i)    the Named Entity;

(ii)    any Subsidiary or Limited Partnership;

(iii)    any Director, Officer or Employee of an Organization; or

(iv)    any other person or entity listed as such in an endorsement attached hereto,

acting in the capacity as a general partner of a Limited Partnership.

The term "General Partner" shall also include any director, officer, member of the Board of Managers, trustee or Employee of an entity General Partner described above, but only if such individual is acting on behalf of such entity General Partner in its capacity as a General Partner for a Limited Partnership.

(j)   "Indemnifiable Loss" means Loss for which the Organization or General Partner has indemnified or is permitted or required to indemnify a Natural Person Insured or natural person General Partner.

(k)   "Insured(s)" means:

(1) each Natural Person Insured;

(2) each General Partner; and

(3) each Organization, but solely with respect to Securities Claims.

(l)   "Insured's Representative" means the natural person or entity designated in Item 1(b) of the Declarations.

(m)   "Limited Partnership" means the Named Entity (if formed as a limited partnership) and any Additional Limited Partnership; and, in the event any bankruptcy proceeding shall be instituted by or against such Named Entity or any Additional Limited Partnership, the Debtor in Possession (or equivalent status outside the United States), if any.

(n)   "Loss" means damages, judgments, pre-judgment and post-judgment interest, settlements and Defense Costs; however, Loss shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes and any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds.

In the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the stock issued by or assets owned by any entity is inadequate or excessive, Loss with respect to such Claim shall not include any amount of any judgment or settlement by which such price or consideration is increased or decreased, directly or indirectly; provided, however, that the foregoing shall not apply to any non-Indemnifiable Loss resulting from any judgment (other than a stipulated judgment) against a Natural Person Insured.

Notwithstanding the foregoing, with respect to Securities Claims only and subject to the other terms, conditions and exclusions of the policy, Loss shall include punitive or exemplary damages imposed upon any Insured. It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages.

(o)   "Natural Person Insureds" means:

(1) any Director or Officer, with respect to all Claims; and
(2) any Employee of the Organization, but solely with respect to Securities Claims.

(p)   "Named Entity" means the organization designated in Item 1(a) of the Declarations whether a corporation, limited liability company or partnership.

74151 (4/99)

5

(q) "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(r) "Organization" means each Company and each Limited Partnership.

(s) "Outside Entity" means:

   (1) any not-for-profit organization; or

   (2) any other corporation, partnership, joint venture or other organization listed as such by endorsement to this policy.

(t) "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(u) "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by any governmental body) made against an Insured and brought anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

   (1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale of or offer or solicitation of an offer to purchase or sell, any securities of the Organization; or

   (2) in the form of a securities holder derivative claim brought on the behalf of the Organization; or

   (3) brought by a securities holder of the Organization, with respect to such securities holder's interest in such securities of such Organization, whether directly or by class action.

(v) "Subsidiary" means:

   (1) (A) a corporation or limited liability company of which the Named Entity, a Limited Partnership or a General Partner owns, on or before the inception of the Policy Period, more than a 50% equity ownership interest directly, or indirectly through one or more of its Subsidiaries or (B) a corporation or limited liability company of which the Named Entity, a Limited Partnership or a General Partner owns on or before the inception of the Policy Period exactly a 50% equity ownership interest and which, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% equity ownership interest, solely controls such corporation or limited liability company (a "Controlled Joint Venture"), in each case either directly or indirectly through one or more of its Subsidiaries;

   (2) automatically a corporation or limited liability company whose assets total less than 15% of the total consolidated assets of the Organization as of the inception date of this policy, which corporation or limited liability company becomes a Subsidiary during the

Policy Period. The Insured's Representative shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

(3) a corporation or limited liability company which becomes a Subsidiary during the Policy Period (other than a corporation or limited liability company described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Insured's Representative shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such new Subsidiary;

(4) a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an Organization.

A corporation or limited liability company becomes a Subsidiary when the Named Entity, a Limited Partnership or a General Partner directly or indirectly through one or more of its Subsidiaries: (1) owns more than a 50% equity ownership interest in such corporation or limited liability company; or (2) in the case of a Controlled Joint Venture, owns exactly a 50% equity ownership interest and, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% equity ownership interest, solely controls such corporation or limited liability company, in each case either directly, or indirectly through one or more of its Subsidiaries. A corporation or limited liability company ceases to be a Subsidiary when such Named Entity, Limited Partnership or General Partner: (1) ceases to own more than a 50% equity ownership interest in such corporation or limited liability company, either directly, or indirectly through one or more of its Subsidiaries; or (2) in the case of a Controlled Joint Venture, ceases to own exactly a 50% equity ownership interest or solely to control, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% equity ownership interest, in each case either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary or any Natural Person Insured thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary of a General Partner or any Natural Person Insured of such Subsidiary shall only apply for Wrongful Acts committed or allegedly committed while such Subsidiary is acting on behalf of such General Partner in its capacity as a General Partner for a Limited Partnership.

(w)    "Wrongful Act" means:

(1)    with respect to any Director or Officer of the Organization, any actual or alleged Employment Practices Violation or any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Director or Officer in his or her respective capacity as such, or any matter claimed against such Insured solely by reason of his or her status as a Director or Officer of the Organization; or with respect to service on an Outside Entity, any matter claimed against a Director or Officer arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity

in such capacity, but only if such service is at the specific written request or direction of the Organization;

(2)    with respect to any Employee of the Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Employee in his or her respective capacity as such, or any matter claimed against such Employee solely by reason of his or her status as an Employee of the Organization, but solely as respects a Securities Claim;

(3)    with respect to any General Partner, any actual or alleged Employment Practices Violation or any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such General Partner in his, her or its capacity as such, or any matter claimed against such General Partner by reason of his, her or its status as a General Partner of a Limited Partnership;

(4)    with respect to any Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Organization in its capacity as such, but solely as respects a Securities Claim.

## 3.    EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the estates, heirs, or legal representatives of deceased Natural Person Insureds, and the legal representatives of Natural Person Insureds in the event of incompetency, insolvency or bankruptcy, who were Natural Person Insureds at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of a Natural Person Insured for a Claim arising solely out of his or her status as the spouse of a Natural Person Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Natural Person Insured and the spouse, or property transferred from the Natural Person Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of a Natural Person Insured, subject to the policy's terms, conditions and exclusions.

## 4.    EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a)    arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the Insured was not legally entitled;

(b)    arising out of, based upon or attributable to payments to an Insured of any remuneration without the previous approval of the stockholders, limited partners or members of the Organization, which payment without such previous approval shall be held to have been illegal;

(c)   arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the Insured;

[For the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c), the facts pertaining to and knowledge possessed by any Insured shall not be imputed to any Natural Person Insured or General Partner; only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the Organization or any entity General Partner shall be imputed to the Organization or entity General Partner.]

(d)   alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)   alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

(f)   for emotional distress or for injury from libel, slander, defamation, disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Claim alleging an Employment Practices Violation;

(g)   with respect to serving as a director, officer, trustee or governor of an Outside Entity, for any Wrongful Act occurring prior to the Continuity Date if the Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy;

(h)   alleging, arising out of, based upon or attributable to any actual or alleged act or omission of a Natural Person Insured or General Partner serving in any capacity, other than as a Natural Person Insured or General Partner of an Organization or as a director, officer, trustee or governor of an Outside Entity;

(i)   which is brought by any Insured, by the Organization or any general partner thereof; or which is brought by any security holder, limited partner or member of the Organization or any entity General Partner, whether directly or derivatively, unless such security holder's, limited partner's or member's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Organization; provided, however, this exclusion shall not apply to:

(1)   any Claim brought by a Natural Person Insured in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

(2)   any Claim alleging an Employment Practices Violation brought by any past or present Natural Person Insured other than a past or present Natural Person Insured who is or was a General Partner or a member of the board of Directors of either the Organization or a General Partner or, in the case of an LLC, the Board of Managers; or

(3)   any Claim brought by an Employee of the Organization; or

74151 (4/99)

(4)    in any bankruptcy proceeding by or against the Organization, any Claim brought by the Examiner or Trustee of the Organization, if any, or any assignee of such Examiner or Trustee;

(j)    for any Wrongful Act arising out of the Insured serving as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or by any director or officer thereof; or which is brought by any security holder of the Outside Entity, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the Outside Entity, any director or officer thereof, the Organization or any Insured;

(k)    for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(l)    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

(1)    the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

(2)    any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

including but not limited to a Claim alleging damage to the Organization or any entity General Partner or any security holder, limited partner or member of any of the foregoing, provided, however, that this exclusion shall not apply to non-Indemnifiable Loss arising from a Claim brought by a shareholder, limited partner or member of the Organization or entity General Partner alleging damage to the Organization, any entity General Partner or any shareholder, limited partner or member of any of the foregoing;

Pollutants include (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

(m)    for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state statutory law or common law;

(n)    alleging, arising out of, based upon or attributable to any commingling of funds;

(o)    for the return or reimbursement of fees paid by the Limited Partnership to a General Partner or an affiliate thereof in connection with services performed for the Limited Partnership; provided, however, that this exclusion shall not apply to Defense Costs.

5.    LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverages A and B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for

74151 (4/99)

the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations.

Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.

## 6.  RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Organization and/or the Insureds and shall remain uninsured, with regard to: (i) all Indemnifiable Loss; (ii) Loss of the entity General Partner; and (iii) Loss under Coverages B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

Notwithstanding the foregoing, solely with respect to a Securities Claim, the Retention shall only apply to Defense Costs. Further, solely with respect to a Securities Claim, no Retention shall apply to Loss arising from such Claims and the Insurer shall reimburse Defense Costs otherwise covered hereunder and paid by the Insured, in the event of:

(1)    a determination of No Liability of all Insureds in a Securities Claim; or

(2)    a dismissal or a stipulation to dismiss all Insureds in a Securities Claim without prejudice and without the payment of any consideration by any Insured,

provided, however, that in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such Claim is not brought again (or any other Claim which is subject to the same single retention by virtue of this Clause 6 is not brought) within that time, and further subject to an undertaking by the Organization in a form acceptable to the Insurer that such reimbursement shall be paid back by the Organization to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of this Clause 6) is brought after such 90-day period and before the expiration of the statute of limitations for such Claim.

## 7.  NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to A.I. Management and Professional Liability Claims Adjusters℠ P.O. Box 1000, New York, NY 10270. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)    The Organization, the Insured's Representative or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable after the Insured's Representative, any General Partner or any risk manager or general counsel of the Organization or of the General Partner first becomes aware of the Claim but in all events either:

(1)    anytime during the Policy Period or during the Discovery Period (if applicable); or

74151 (4/99)

11

(2)  within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c)  If during the Policy Period or during the Discovery Period (if applicable) the Organization, the Insured's Representative or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

8.  **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

Under both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer shall advance excess of the applicable retention amount, at the written request of the Insured, covered Defense Costs no later than every ninety (90) days. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds or the Organization, severally according to their respective interests, in the event and to the extent that the Insureds or the Organization shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.

The Insurer shall have the right to effectively associate with the Organization and the Insureds in the defense and prosecution of any Claim that involves or appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Organization and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all insured defendants are able to dispose of all Claims which are subject to one retention amount for an amount not exceeding such retention amount (inclusive of Defense Costs), then the Insurer's consent shall not be required for such disposition.

74151 (4/99)

The Organization is not covered in any respect under Coverage A; the Organization is covered, subject to the policy's terms and conditions, only with respect to its indemnification of its Natural Person Insureds and General Partners under Coverage B(ii) as respects a Claim against such Natural Person Insureds and General Partners, and subject to the policy's terms and conditions, under Coverage B(i) for a Securities Claim made against the Organization. Accordingly, the Insurer has no obligation under this policy for covered Defense Costs incurred by, judgments against or settlements by the Organization arising out of a Claim made against the Organization other than a covered Securities Claim, or any obligation to pay Loss arising out of any legal liability that the Organization has to a claimant except as respects a covered Securities Claims against the Organization.

With respect to (i) Defense Costs jointly incurred by, (ii) any joint settlement entered into by and/or (iii) any judgment of joint and several liability against: the Organization and/or the General Partner and/or any Natural Person Insured in connection with any Claim other than a Securities Claim, the Organization, the General Partner and the Natural Person Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Organization and/or the General Partner and/or the Natural Person Insureds and the Insurer taking into account the relative legal and financial exposures, and the relative benefits obtained by, the Natural Person Insureds, the General Partner and the Organization.

In the event that a determination as to the amount of Defense Costs to be advanced under the policy cannot be agreed to, then the Insurer shall advance such Defense Costs which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

In the event of Loss arising from a Claim or Claims for which payment is due under the provisions of this policy, then the Insurer shall:

(a)   first, pay such non-Indemnifiable Loss for which coverage is provided under Coverage A of this policy; and

(b)   then, with respect to whatever remaining amount of the Limit of Liability is available after payment of such non-Indemnifiable Loss, at the written request of the chief executive officer of the Insured's Representative, the Named Entity or any General Partner thereof, either pay or withhold payment of such other Loss for which coverage is provided under this policy.

In the event the Insurer withholds payment pursuant to subparagraph (b) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the Insured's Representative, Named Entity or any General Partner thereof, remit such payment to such Insured's Representative, Named Entity or General Partner or directly to or on behalf of a Natural Person Insured.

## 9.   PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Only with respect to a Securities Claim:

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("Panel Counsel Firms").   The list provides the Insured a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of the Claim made against them.

74151 (4/99)

13

The Insureds shall select a Panel Counsel Firm to defend the Claim made against the Insureds in the jurisdiction in which the Claim is brought. In the event the Claim is brought in a jurisdiction not included on the list, the Insureds shall select a Panel Counsel Firm in the listed jurisdiction which is the nearest geographic jurisdiction to either where the Claim is brought or where the corporate headquarters of the Named Entity is located. In such instance the Insureds also may, with the express prior written consent of the Insurer, which consent shall not be unreasonably withheld, select a non-Panel Counsel Firm in the jurisdiction in which the Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Securities Claim.

With the express prior written consent of the Insurer, an Insured may select a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity. The Insurer may in its discretion add to the attached list of Panel Counsel Firms for the purposes of defending the Claim made against the Insured in any specified jurisdiction (including a jurisdiction not originally included in the Panel Counsel list) a Panel Counsel Firm not originally listed for such jurisdiction. The Insurer may in its discretion waive, in part or in whole, the provisions of this clause as respects a particular Claim.

## 10.  DISCOVERY CLAUSE

Except as indicated below, if the Insurer or the Insured's Representative shall cancel or refuse to renew this policy, the Insured's Representative shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") upon payment of the applicable "Additional Premium Amount" described below in which to give to the Insurer written notice pursuant to Clause 7(a) of Claims first made against the Insureds during said Discovery Period or pursuant to Clause 7(c) of circumstances of which the Insured's Representative, the Organization or the Insureds shall become aware during said Discovery Period, in each case with respect to any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy.

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 60 days of the effective date of cancellation or nonrenewal. The Additional Premium Amount for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

Notwithstanding the first paragraph of Clause 5, if the Insurer or the Insured's Representative gives notice of its intention to cancel or non-renew this policy, then the Insured's Representative shall also have the right, within 60 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the end of the Policy Period) for a period of one, two or three years with an aggregate limit of liability applicable to Claims made against the Insured during such Discovery Period which is in addition

74151 (4/99)

14

to, and not part of, the applicable Limit of Liability set forth in Item 4 of the Declarations. The Insurer shall quote such a Discovery Period pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a Transaction, as defined in Clause 12, or the confirmation of a Bankruptcy Plan of Reorganization of the Insured's Representative or the Limited Partnership, the Insured's Representative shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction or such confirmation) for a period of no less than three years or for such longer or shorter period as the Insured's Representative may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions, exclusions and additional premium as the Insurer may reasonably decide. In the event of a Transaction or such a confirmation, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Insured's Representative at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. This policy may also be canceled by or on behalf of the Insurer by delivering to the Insured's Representative or by mailing to the Insured's Representative, by registered, certified, or other first class mail, at the address of the Insured's Representative as shown in Item 1(c) of the Declarations, written notice stating when, not less than 60 days thereafter (10 days in the case of cancellation for non-payment of premium), the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Insured's Representative, the Insurer shall retain the customary short rate proportion of the premium herein.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium herein.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice as set forth above is also set forth in any law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

## 12. TERMINATION OF COVERAGE FOR WRONGFUL ACTS AFTER CERTAIN TRANSACTIONS

If during the Policy Period:

1. the Insured's Representative shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

74151 (4/99)

15

2. any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty percent (50%) of the voting power for the election of directors, general partners, members of the board of managers or trustees of the Insured's Representative, or acquires the voting rights of such an amount of such securities; or

(if the Named Entity is a Limited Partnership the following subsections 3, 4 and 5 shall also apply)

3. the Insured's Representative (if the Insured's Representative is a Limited Partnership) shall engage in a liquidation, "roll-up" or "roll-over," or if any of the General Partners of the Insured's Representative shall be different from its General Partners as of the inception date of this policy; or

4. the Insured's Representative, if a natural person, dies or is declared incompetent; or

5. the Insured's Representative, if a General Partner, withdraws, resigns or is terminated;

(any of the above events herein referred to as the "Transaction")

then, this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Insured's Representative shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Insured's Representative shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Organization's and the Insureds' rights of recovery thereof, and the Organization and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Organization and/or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been determined to have in fact committed a deliberate criminal act, a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

In the event of a Claim against a Natural Person Insured arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity, coverage as is afforded by this policy

74151 (4/99)

16

shall be specifically excess of indemnification provided by such Outside Entity and any insurance provided to such Outside Entity with respect to its directors, officers, trustees or governors. Further, in the event such other Outside Entity insurance is provided by the Insurer or any other member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the maximum aggregate Limit of Liability for all Losses combined covered by virtue of this policy as respects any such Claim shall be reduced by the limit of liability (as set forth on the declarations page) of the other AIG insurance provided to such Outside Entity.

## 15.   NOTICE AND AUTHORITY

It is agreed that the Insured's Representative shall act on behalf of the Organization and all Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period.

## 16.   ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17.   DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be submitted to the alternate dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of the type of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and the Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and the Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Insured's Representative is incorporated or otherwise formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions and exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided , however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of

74151 (4/99)

the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(c) of the Declarations page as the mailing address for the Insured's Representative. The Insured's Representative shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Organization to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Organization or their legal representatives. Bankruptcy or insolvency of the Organization or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 20. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## 21. SERVICE OF SUIT

Subject to Clause 17, it is agreed that in the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Clause 21 constitutes, or should be understood to constitute, a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street New York, NY 10270, or his or her representative, and that in any suit instituted against the Insurer upon this contract, the Insurer will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her

74151 (4/99)

18

successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

*Elizabeth M. Tuck*

**SECRETARY**

**PRESIDENT**

74151 (4/99)

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

### ALASKA

**Davis Wright Tremaine**
David W. Oesting
701 W. Eighth Avenue, Suite 800, Anchorage, AK 99501-3468 (907)257-5300

**Foster Pepper & Shefelman**
Tim J. Filer / Roger D. Mellem
1007 W. Third Ave., Ste. 100, Anchorage, AK 99501 (907)222-7100

### CALIFORNIA

**Bingham McCutchen, LLP**
David M. Balabanian / Dale E. Barnes
3 Embarcadero Center, San Francisco, CA 94111 (415)393-2626

Mary T. Huser
1900 University Avenue, East Palo Alto, CA 94303-1212 (650)849-4914

Susan L. Hoffman
355 South Grand Avenue, Los Angeles, CA 90071-1560 (213)680-6416

**Cooley Godward, LLP**
*Paul A. Renne (415)693-2073 / John C. Dwyer (650)843-5228
One Maritime Plaza, 20th Floor, San Francisco, CA 94111-3580 (415)693-2000

*William E. Grauer (858)550-6050 / Philip C. Tencer (858)550-6088 / Koji F. Fukumura (858)550-6008
4401 Eastgate Mall, San Diego, CA 92121-1909 (858)550-6000

*Stephen C. Neal (650)843-5182 / *William S. Freeman (650)843-5037 / John C. Dwyer (650)843-5228
3175 Hanover Street, Palo Alto, CA 94304-1130 (650)843-5000

**Davis Wright Tremaine**
Martin Fineman
One Embarcadero Center, Suite 600, San Francisco, CA 94111-3834 (415)276-6500

**DLA Piper Rudnick Gray Cary US, LLP**
Shirli Fabbri Weiss / David Priebe
2000 University Avenue, East Palo Alto, CA 94303 (650)833-2000

Shirli Fabbri Weiss / Robert Brownlie
4365 Executive Drive, Suite 1100, San Diego, CA 92121 (858)677-1400

**Fenwick & West, LLP**
Susan S. Muck
Embarcadero Center West, 275 Battery Street, San Francisco, CA 94111 (415)875-2300

**Gibson, Dunn & Crutcher, LLP**
Dean J. Kitchens
333 S. Grand Avenue, Los Angeles, CA 90071-3197 (213)229-7543

Revised (6/06)

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

Jonathan C. Dickey
1881 Page Mill Road, Palo Alto, CA 94304 (650)849-5300

Wayne W. Smith / Meryl L. Young
Jamboree Center, 4 Park Plaza, Suite 1400, Irvine, CA 92614-8557 (949)451-3800

**Heller, Ehrman, White & McAuliffe**
David E. Kleinfeld
4350 La Jolla Village Drive, 7th Floor, San Diego, CA 92122-1246 (858)450-8400

Douglas M. Schwab / M. Laurence Popofsky / Michael J. Shepard
333 Bush Street, San Francisco, CA 94104-2878 (415)772-6000

Darryl L. Snider / Jerry L. Marks
601 South Figueroa Street, 40th Floor, Los Angeles, CA 90017-5758 (213)689-0200

Norman J. Blears
275 Middlefield Road, Menlo Park, CA 94025-3506 (650)324-7000

**Irell & Manella, LLP**
David Siegel / Daniel P. Lefler
1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067-4276 (310)277-1010

**Latham & Watkins**
Paul H. Dawes (650)463-2626 / Jay L. Pomerantz (650)463-4684 / John C. Tang (650)328-4600
135 Commonwealth Drive, Menlo Park, CA 94025-1105 (650)328-4600

Miles N. Ruthberg (213)891-8754 / Pamela S. Palmer (213)891-8435 / Mark W. Rappel (213)891-8156 /
Peter W. Devereaux (213)891-8622 / Charles W. Cox (213)891-8178 / Jamie L. Wine (213)485-1234
633 West Fifth Street, Suite 4000, Los Angeles, CA 90071 (213)485-1234

Michael J. Weaver (619)238-3012 / Peter H. Benzian (619)236-1234 / Julia E. Parry (619)236-1234
600 West Broadway, Suite 1800, San Diego, CA 92101-3375 (619)236-1234

Paul H. Dawes (650)463-2626 / Peter A. Wald (415)395-8006 / Darius C. Ogloza (415)391-0600 /
James K. Lynch (415)395-8265 / Michele F. Kyrouz
505 Montgomery Street, Suite 1900, San Francisco, CA 94111-2562 (415)391-0600

Miles N. Ruthberg (213)891-8754 / Peter W. Devereaux (213)891-8622 / Pamela S. Palmer
(213)891-8435 / Jon D. Anderson (714)755-8217 / Virginia S. Grogan (714)755-8206
650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626 (714)540-1235

**Morgan, Lewis & Bockius, LLP**
Franklin Brockway Gowdy / Vincent Paul Finigan, Jr. / Kent M. Roger
One Market Spear Street Tower, San Francisco, CA 94105 (415)442-1000

John F. Hartigan / Richard S. Odom
300 South Grand Avenue, 22nd Floor, Los Angeles, CA 90071-3132 (213)612-2500

**Morrison & Foerster, LLP**
Melvin R. Goldman (415)268-7311 / Paul T. Friedman (415)268-7444 / Jordan D. Eth (415)268-7176 /
Darryl P. Rains (650)813-5866
425 Market Street, San Francisco, CA 94105 (415)268-7000

Revised (6/06)

Page 2

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

Robert S. Stern (213)892-5484 / Mark R. McDonald (213)892-5810
555 West 5th Street, Suite 3500, Los Angeles, CA 90013 (213)892-5200

**Munger, Tolles & Olson**
Dennis L. Kinnaird (213)683-9264 / John W. Spiegel (213)683-9152 / George M. Garvey (213)683-9153
355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560 (213)683-9100

**O'Melveny & Myers, LLP**
Seth Aronson (213)430-7486 / Amy J. Longo (213)430-8351
400 South Hope St., 15th Floor, Los Angeles, CA 90071-2899 (213)430-6000

Michael G. Yoder (949)823-7936 / Phillip R. Kaplan
610 Newport Center, 17th Floor, Newport Beach, CA 92660 (949)760-9600

Daniel H. Bookin (415)984-8786 / Michael F. Tubach
275 Battery Street, San Francisco, CA 94111 (415)984-8700

**Orrick Herrington & Sutcliffe, LLP**
W. Reece Bader
1000 Marsh Road, Menlo Park, CA 94025 (650)614-7400

William F. Alderman
Old Federal Reserve Bank Building, 400 Sansome Street, San Francisco, CA 94111
(415)392-1122

**Paul, Hastings, Janofsky & Walker, LLP**
Howard M. Privette / William F. Sullivan / John A. Reding / Peter M. Stone / Christopher H. McGrath
515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071 (213)683-6000

**Pillsbury Winthrop Shaw Pittman, LLP**
Bruce A. Ericson
50 Fremont Street, San Francisco, CA 94105 (415)983-1000

Walter J. Robinson
2475 Hanover Street, Palo Alto, CA 94304-1114 (650)233-4500

Robert L. Wallan
725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017 (213)488-7100

Richard M. Segal
101 West Broadway, Suite 1800 (SBC Building), San Diego, CA 92101 (619)234-5000

**Shearman & Sterling**
Jeffrey S. Facter (415)616-1205 / Stephen D. Hibbard (415)616-1174
555 California Street, San Francisco, CA 94104 (415)616-1100

**Simpson Thacher & Bartlett**
Chet Kronenberg / Seth A. Ribner
1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067 (310)407-7500

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

George M. Newcombe / James G. Kreissman
3373 Hillview Avenue, Palo Alto, CA 94304 (650)251-5000

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
James E. Lyons (415)984-6470
Four Embarcadero Center, San Francisco, CA 94111 (415)984-6400

**Sullivan & Cromwell**
Robert A. Sacks
1888 Century Park East, Los Angeles, CA 90067-1725 (310)712-6600

**Wilson, Sonsini, Goodrich & Rosati**
Boris Feldman / Steven M. Schatz / Jerome Birn (650)320-4858 / Nina Locker (650)320-4888 / Douglas
Clark (650)320-4824 / Keith Eggleton (650)320-4893
650 Page Mill Road, Palo Alto, CA 94304-1050 (650)493-9300

## COLORADO

**Cooley Godward, LLP**
James E. Nesland
380 Interlocken Crescent, Suite 900, Broomfield, CO 80021-8023 (720)566-4000

**Gibson, Dunn & Crutcher, LLP**
George Curtis
1801 California Street, Suite 4100, Denver, CO 80202 (303)298-5700

**Hogan & Hartson**
Daniel F. Shea
One Tabor Center, 1200 Seventeenth St., Suite 1500, Denver, CO 80202 (303)899-7300

## DELAWARE

**Blank Rome, LLP**
Thomas P. Preston / Neel C. Belgam
Chase Manhattan Centre, 1201 Market Street, Suite 800, Wilmington, DE 19801 (302)425-6473

**Wolf, Block, Schorr and Solis-Cohen, LLP**
Barry Klayman
Wilmington Trust Center, 1100 N. Market Street, Suite 1001, Wilmington, DE 19801
(302)777-5860

## DISTRICT OF COLUMBIA

**Arnold & Porter**
Scott B. Schreiber (202)942-5672
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000

**Cahill Gordon & Reindel**
Donald J. Mulvihill
1990 K Street, N.W., Suite 950, Washington, DC 20006 (202)862-8900

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**DLA Piper Rudnick Gray Cary US, LLP**
David Clarke, Jr. (202)861-6300 / Robert J. Mathias (410)580-4209 / James D. Mathias / Mark
Muedeking (202)861-3900 / Deborah R. Meshulam (202)861-6470
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900

**Fulbright & Jaworski, LLP**
Stephen M. McNabb
Market Square, 801 Pennsylvania Ave., NW, Washington, DC 20004-2623 (202)662-0200

**Gibson, Dunn & Crutcher, LLP**
F. Joseph Warin / John C. Millian
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500

**Greenberg Traurig, LLP**
Joe R. Reeder
800 Connecticut Avenue, NW, Suite 500, Washington, DC 20006 (202)331-3100

**Hogan & Hartson**
Ty Cobb
555 Thirteenth Street, NW, Washington, DC 20004 (202)637-5600

**Latham & Watkins**
Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / William R. Baker, III (202)637-1001
/ Everett C. (Kip) Johnson, Jr. (202)637-2260 / Christian Word (703)456-5226
555 Eleventh Street, NW, Suite 1000, Washington, DC 20004-1304 (202)637-2200

**LeBoeuf, Lamb, Greene & MacRae, LLP**
Ralph C. Ferrara (202)986-8020
. 1875 Connecticut Avenue, NW, Suite 1200, Washington, DC 20009-5715 (202)986-8000

**O'Melveny & Myers, LLP**
Jeffrey Kilduff (202)383-5383
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300

**Patton Boggs, LLP**
Eric A. Kuwana / Ronald S. Liebman
2550 M Street, N.W., Washington, DC 20037 (202)457-6000

**Shearman & Sterling**
Jonathan L. Greenblatt (202)508-8070 / Thomas S. Martin (202)508-8040
801 Pennsylvania Ave., N.W., Washington, DC 20004-2604 (202)508-8000

**Sullivan & Cromwell**
Daryl A. Libow / Margaret K. Pfeiffer
1701 Pennsylvania Avenue, N.W., Washington, DC 20006-5805 (202)956-7600

**Williams & Connolly, LLP**
John K. Villa
725 Twelfth Street, N.W., Washington, DC 20005 (202)434-5000

Revised (6/06)

Page 5

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Willkie Farr & Gallagher**
Kevin B. Clark (202)303-1105
1875 K Street, N.W., Washington, DC 20006-1238 (202)303-1000

**WilmerHale**
Charles A. Davidow / David P. Donovan
2445 M Street, N.W., Washington, DC 20037 (202)663-6000

**FLORIDA**

**Akerman Senterfitt & Eidson, PA**
Brian P. Miller (305)982-5626
SunTrust International Center, 28th Floor, Miami, FL 33131 (305)374-5600

J. Thomas Cardwell
Citrus Center, 17th Floor, 255 South Orange Ave., Orlando, FL 32801 (407)843-7860

**Carlton Fields**
Steven J. Brodie (305)539-7302 / Nancy H. Henry
4000 International Place, 100 S.E. 2nd Street, Suite 4000, Miami, FL 33131 (305)530-0050

Gary L. Sasso
One Harbour Place, Tampa, FL 33602-5790 (813)223-7000

Gary L. Sasso
One Progress Plaza, 200 Central Avenue, Suite 2300, St. Petersburg, FL 33701-4352
(727)821-7000

Steven J. Brodie (305)539-7302
4221 West Boy Scout Boulevard, 10th Floor, Tampa, FL 33607 (813)223-7000

**Greenberg Traurig, LLP**
Bradford D. Kaufman
777 South Flagler Drive, Suite 300, East, West Palm Beach, FL 33401 (561)650-7900

Hilarie Bass, Esq.
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500

**Holland & Knight, LLP**
Tracy A. Nichols / George E. Schulz, Jr.
50 North Laura Street, Suite 3900, Jacksonville, FL 32202 (904)353-2000

Tracy A. Nichols / Mitchell Eliot Herr / Gregory A. Baldwin / Louise Brais
701 Brickell Avenue, Suite 3000, Miami, FL 33131 (305)374-8500

Tracy A. Nichols / Michael L. Chapman
100 North Tampa Street, Suite 4100, Tampa, FL 33602 (813)227-8500

Robert R. Feagin, III / Elizabeth L. Bevington
315 South Calhoun Street, Suite 600, Tallahassee, FL 32301 (850)224-7000

Tracy A. Nichols / Scott Newman
625 North Flagler Drive, Suite 700, West Palm Beach, FL 33401 (561)833-2000

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

*William Wilson*
200 South Orange Avenue, Suite 2600, Orlando, FL 32801 (407)425-8500

**McGuireWoods, LLP**
*Stephen D. Busch (804)775-4378*
Bank of America Tower, 50 North Laura Street, Jacksonville, FL 32202 (904)798-3200

**Squire Sanders & Dempsey, LLP**
*Lewis F. Murphy (305)577-2957 / Wendy Leavitt (305)577-2894*
200 South Biscayne Boulevard, Suite 4000, Miami, FL 33131-2398 (305)577-7000

**White & Case, LLP**
*Charles C. Kline, Esq.*
Wachovia Financial Center, 200 S. Biscayne Blvd., Suite 4900, Miami, FL 33131-2352
(305)371-2700

## GEORGIA

**Alston & Bird, LLP**
*Peter Q. Bassett (404)881-7343 / Todd R. David (404)881-7357*
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000

**King & Spalding**
*M. Robert Thornton / Michael R. Smith*
1188 Peachtree Street, Atlanta, GA 30309 (404)572-4600

**Paul, Hastings, Janofsky & Walker, LLP**
*J. Allen Maines*
.600 Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308-2222 (404)815-2400

**Smith, Gambrell & Russell, LLP**
*John G. Despriet*
Promenade II, Suite 3100, 1230 Peachtree Rd., N.E. Atlanta, GA 30309-3592 (404)815-3730

**Womble, Carlyle, Sandridge & Rice**
*Robert R. Ambler, Jr. (404)879-2424 / Nisbet S. Kendrick (404)888-7488 / Keith Vaughn*
One Atlantic Center, 1201 West Peachtree, Suite 3500, Atlanta, GA 30309 (404)872-7000

## ILLINOIS

**DLA Piper Rudnick Gray Cary US, LLP**
*Samuel B. Isaacson / Michael S. Poulos*
203 North LaSalle Street, Suite 1800, Chicago, IL 60601-1293 (312)368-4000

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Pamela G. Smith / Leah J. Domitrovic / Steven L. Bashwiner / Mary Ellen
Hennessy / Bonita L. Stone*
525 W. Monroe Street, Suite 1600, Chicago, IL 60661-3693 (312)902-5200

**Kirkland & Ellis**
*Robert J. Kopecky*
200 East Randolph Drive, Chicago, IL 60601 (312)861-2000

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Sidley Austin Brown & Wood, LLP**
Hillie R. Sheppard / Eugene A. Schoon / Walter C. Carlson
Bank One Plaza, 10 South Dearborn Street, Chicago, IL 60603 (312)853-7734

**Sonnenschein, Nath & Rosenthal**
Christopher Q. King / David L. Schiavone
8000 Sears Tower, Chicago, IL 60606 (312)876-8224

## MARYLAND

**DLA Piper Rudnick Gray Cary US, LLP**
Mark Muedeking (410)580-3000
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000

## MASSACHUSETTS

**Bingham McCutchen, LLP**
Jordan D. Hershman
150 Federal Street, Boston, MA 02110-1726 (617)951-8000

**Edwards & Angell, LLP**
John D. Hughes
101 Federal Street, Boston, MA 02110-1800 (617)951-3373

**Foley Hoag, LLP**
Nicholas C. Theodorou (617)832-1163 / Lisa C. Wood (617)832-1117
Seaport World Trade Center West, 155 Seaport Boulevard, Boston, MA 02210-2600
(617)832-1000

**Goodwin Procter, LLP**
Stephen D. Poss / Brian E. Pastuszenski / R. Todd Cronan / James S. Dittmar / Carl E. Metzger
Exchange Place, 53 State Street, Boston, MA 02109-2881 (617)570-1000

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**
Peter M. Saparoff / Patrick J. Sharkey
One Financial Center, Boston, MA 02111 (617)542-6000

**Ropes & Gray**
John D. Donovan, Jr.
One International Place, Boston, MA 02110-2624 (617)951-7566

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
Thomas J. Dougherty
One Beacon Street, Boston, MA 02108 (617)573-4820

**WilmerHale**
Jeffrey B. Rudman / William H. Paine / Andrea J. Robinson
60 State Street, Boston, MA 02109 (617)526-6000

Jeffrey B. Rudman / William H. Paine / Andrea J. Robinson
60 State Street, Boston, MA 02108 (617)526-6000

Revised (6/06)                          Page 8

Please visit our website at www.briefbase.com to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

### MINNESOTA

**Dorsey & Whitney, LLP**
Brian E. Palmer / Edward J. Pluimer / J. Jackson / Peter W. Carter / Roger J. Magnuson
50 South Sixth Street, Suite #1500, Minneapolis, MN 55402-1498 (612)340-2600

**Faegre & Benson, LLP**
Robert L. Schnell / Thomas L. Kimer
90 South Seventh Street, Minneapolis, MN 55402-3901 (612)336-3000

**Winthrop & Weinstine, PA**
David P. Pearson (612)604-6692 / Thomas H. Boyd
Suite 3500, 225 South 6th Street, Minneapolis, MN 55402-4629 (612)604-6400

### NEW YORK

**Arnold & Porter**
Kent A. Yalowitz / Scott B. Schreiber (202)942-5672
399 Park Avenue, New York, NY 10022-4690 (212)715-1000

**Blank Rome, LLP**
Robert J. Mittman (212)885-5555
The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 (212)885-5555

**Cadwalader, Wickersham & Taft**
Gregory A. Markel / Howard R. Hawkins, Jr. / Jonathan M. Hoff
One World Financial Center, New York, NY 10281 (212)504-6000

**Cahill Gordon & Reindel**
Charles A. Gilman / Immanuel Kohn / Thomas J. Kavaler
Eighty Pine Street, New York, NY 10005 (212)701-3000

**Clifford Chance US, LLP**
James B. Weidner / James N. Benedict / John K. Carroll / Mark Holland
200 Park Avenue, New York, NY 10166 (212)878-8000

**Cravath, Swaine & Moore**
Evan R. Chesler / Francis P. Barron / Julie A. North / Keith B. Hummel / Paul C. Saunders / Peter T.
Barbur / Richard W. Clary / Robert H. Baron / Ronald S. Rolfe / Rory O. Millson / Thomas G. Rafferty
Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019-7475 (212)474-1000

**DLA Piper Rudnick Gray Cary US, LLP**
Joseph G. Finnerty, III / Keara M. Gordon / David E. Nachman / John J. Clarke
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000

**Fried, Frank, Harris, Shriver & Jacobson**
William G. McGuinness / Alexander R. Sussman / Debra M. Torres / Douglas H. Flaum / Barry G. Sher
/ John A. Borek
One New York Plaza, New York, NY 10004 (212)859-8000

Revised (6/06)

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Fulbright & Jaworski, LLP**
*Robert D. Owen*
666 Fifth Avenue, New York, NY 10103-3198 (212)318-3000

**Gibson, Dunn & Crutcher, LLP**
*Wesley G. Howell / Robert F. Serio / Mitchell A. Karlan (212)351-3827*
200 Park Avenue, New York, NY 10166-0193 (212)351-4000

**Greenberg Traurig, LLP**
*Robert A. Horowitz / Brian S. Cousin (212)801-9200*
885 Third Avenue, 21st Floor, New York, NY 10022 (212)801-3134

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Robert W. Gottlieb / Joel W. Sternman*
575 Madison Avenue, New York, NY 10022-2585 (212)940-8800

**Kaye, Scholer, Fierman, Hays & Handler**
*Fredric W. Yerman*
425 Park Avenue, New York, NY 10022 (212)836-8663

**Kirkland & Ellis**
*Yosef J. Riemer*
Citicorp Center, 153 East 53rd Street, New York, NY 10022-4675 (212)446-4800

**Kramer Levin Naftalis & Frankel, LLP**
*Gary P. Naftalis / Alan R. Friedman / Robert N. Holtzman / Jonathan M. Wagner*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100

· **Mayer, Brown Rowe & Maw**
*Dennis P. Orr / Richard A. Spehr / Steven Wolowitz*
1675 Broadway, New York, NY 10019 (212)506-2500

**Milbank, Tweed, Hadley & McCloy**
*Michael L. Hirschfeld / Scott A. Edelman*
1 Chase Manhattan Plaza, New York, NY 10005 (212)530-5149

**Morgan, Lewis & Bockius, LLP**
*Leslie Caldwell / Stuart M. Sarnoff*
101 Park Avenue, New York, NY 10178-0060 (212)309-6000

**Morrison & Foerster, LLP**
*Anthony M. Radice (212)468-8020 / Jack C. Auspitz (212)468-8046*
1290 Avenue of the Americas, New York, NY 10104 (212)468-8000

**Paul, Hastings, Janofsky & Walker, LLP**
*Barry Sher / James D. Wareham*
Park Avenue Tower, 75 E. 55th Street, New York, NY 10022 (212)318-6000

**Paul, Weiss, Rifkind, Wharton & Garrison**
*Daniel J. Beller / Martin Flumenbaum / Claudia Hammerman / Brad S. Karp / Daniel J. Kramer / Mark
F. Pomerantz / Richard A. Rosen*
1285 Avenue of the Americas, New York, NY 10019-6064 (212)373-3000

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Proskauer Rose, LLP**
Gregg M. Mashberg
1585 Broadway, New York, NY 10036-8299 (212)969-3000

**Schulte Roth & Zabel, LLP**
Betty Santangelo / Howard O. Godnick / Irwin J. Sugarman / Michael S. Feldberg / Robert M. Abrahams
919 Third Avenue, New York, NY 10022 (212)756-2000

**Shearman & Sterling**
Jeremy G. Epstein (212)848-4169 / Steven F. Molo (212)848-7456 / Brian H. Polovoy (212)848-4703 /
Stuart J. Baskin (212)848-4974
599 Lexington Avenue, New York, NY 10022 (212)848-8000

**Sidley Austin Brown & Wood, LLP**
Theodore N. Miller (213)896-6646 / Barry W. Rashkover / Steven M. Bierman / Robert Pietrzak
787 Seventh Avenue, New York, NY 10019 (212)839-5300

**Simpson Thacher & Bartlett**
Bruce D. Angiolillo / Michael J. Chepiga / Paul C. Curnin / Roy L. Reardon
425 Lexington Avenue, New York, NY 10017 (212)455-2000

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
Jonathan J. Lerner
Four Times Square, New York, NY 10036 (212)735-2550

**Stroock & Stroock & Lavan, LLP**
Laurence Greenwald / Melvin A. Brosterman / Robert Lewin
180 Maiden Lane, New York, NY 10038 (212)806-5400

**Sullivan & Cromwell**
D. Stuart Meiklejohn / Gandolfo V. DiBlasi / John L. Hardiman / John L. Warden / Philip L. Graham, Jr. /
Richard H. Klapper
125 Broad Street, New York, NY 10004-2498 (212)558-4000

**Wachtell, Lipton, Rosen & Katz**
Paul Vizcarrondo (212)403-1208 / Ted Mirvis
51 W. 52nd Street, 29th Floor, New York, NY 10019 (212)403-1000

**Weil, Gotshal & Manges, LLP**
Greg A. Danilow / Irwin H. Warren / Joseph Allerhand / Jonathan D. Polkes (212)310-8881
767 Fifth Avenue, New York, NY 10153 (212)310-8000

**Willkie Farr & Gallagher**
Michael R. Young / Richard L. Posen / Stephen W. Greiner
787 Seventh Avenue, New York, NY 10019-6099 (212)728-8000

**WilmerHale**
Peter Vigeland / Robert B. McCaw
520 Madison Ave., New York, NY 10022 (212)230-8800

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**OHIO**

**Jones, Day, Reavis & Pogue**
*John M. Newman, Jr. / John W. Edwards, II*
North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (216)586-3939

**OREGON**

**Davis Wright Tremaine**
*John F. McGrory*
2300 First Interstate Tower, 1300 S.W. Fifth Avenue, Portland, OR 97201 (503)241-2300

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
101 S.W. Main Street, 15th Floor, Portland, OR 97204-3223 (503)221-0607

**Lane Powell Spears Lubersky, LLP**
*Milo Petranovich / D. Meredith Wilson / Robert E. Maloney*
601 S.W. Second Avenue, Suite 2100, Portland, OR 97204 (503)778-2100

**Stoel Rives, LLP**
*Lois O. Rosenbaum*
900 SW 5th Avenue, Suite 2600, Portland, OR 97204 (503)224-3380

**PENNSYLVANIA**

**Blank Rome, LLP**
*Ian M. Comisky / Alan J. Hoffman*
One Logan Square, Philadelphia, PA 19103 (215)569-5500

**Buchanan Ingersoll, PC**
*John R. Leathers*
One Oxford Centre, 20th Floor, 301 Grant Street, Pittsburgh, PA 15219-8800 (412)562-8800

**Dechert, LLP**
*Jeffrey G. Weil (215)994-2538 / Seymour Kurland (215)994-2235*
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000

**Morgan, Lewis & Bockius, LLP**
*Marc J. Sonnenfeld*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000

**Pepper Hamilton, LLP**
*Barbara W. Mather / Jon A. Baughman / Laurence Z. Shiekman (215)981-4347 / M. Duncan Grant /
Robert L. Hickok (215)981-4583 / Thomas E. Zemaitis*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799
(215)981-4000

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Jay A. Dubow / Jerome J. Shestack / M. Norman Goldberger / Mark L. Alderman*
1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097 (215)977-2058

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**TEXAS**

**Akin, Gump, Strauss, Hauer & Feld, LLP**
Paul R. Bessette (512)499-6250 / Edward S. Koppman / Orrin L. Harrison, III
1700 Pacific Avenue, Suite 4100, Dallas, TX 75201 (214)969-2800

Paul R. Bessette (512)499-6250 / Gregg C. Laswell (713)220-5813
Pennzoil Place–South Tower, 711 Louisiana Street, Suite 1900, Houston, TX 77002
(713)220-5800

**Beirne, Maynard & Parsons, LLP**
Jeffrey R. Parsons (713)960-7302
1300 Post Oak Boulevard, Suite 2500, Houston, TX 77056-3000 (713)623-0887

**Carrington, Coleman, Sloman & Blumenthal, LLP**
Fletcher L. Yarbrough / Bruce W. Collins / Tim Gavin
901 Main Street, Suite 5500, Dallas, TX 75202 (214)855-3000

**Fulbright & Jaworski, LLP**
Frank G. Jones / Robert S. Harrell / Gerard G. Pecht
1301 McKinney, Suite 5100, Houston, TX 77010 (713)651-5151

Karl G. Dial / Michael A. Swartzendruber
2200 Ross Avenue, Suite 2800, Dallas, TX 75201 (214)855-8000

**Jenkens & Gilchrist, PC**
John Gilliam, Esq.
1100 Louisiana, Suite 1800, Houston, TX 77002-5214 (713)951-3300

John Gilliam, Esq.
1445 Ross Avenue, Suite 3200, Dallas, TX 75202 (214)855-4306

**King & Spalding**
Mark K. Glasser
1100 Louisiana, Suite 4000, Houston, TX 77002 (713)751-3212

**Locke Liddell & Sapp, LLP**
Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458
2200 Ross Avenue, Suite 2200, Dallas, TX 75201-6776 (214)740-8000

Charles R. Parker (713)226-1469
3400 JPMorgan Chase Tower, 600 Travis, Houston, TX 77002 (713)226-1200

Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458
100 Congress Avenue, Suite 300, Austin, TX 78701-4042 (512)305-4700

**Thompson & Knight, LLP**
Timothy R. McCormick
1700 Pacific Avenue, Suite 3300, Dallas, TX 75201 (214)969-1103

Timothy R. McCormick
98 San Jacinto Boulevard, Suite 1200, Austin, TX 78701 (512)469-6100

Revised (6/06)

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

*Timothy R. McCormick*
1200 Smith Street, Suite 3600, Houston, TX 77002 (713)654-8111

*Timothy R. McCormick*
Burnett Plaza, Suite 1600, 801 Cherry Street, Unit #1, Fort Worth, TX 76102-6881 (817)347-1700

**Vinson & Elkins, LLP**
*Walter B. Stuart / N. Scott Fletcher*
First City Tower, 1001 Fannin St., Suite 2300, Houston, TX 77002-6760 (713)758-2222

**Weil, Gotshal & Manges, LLP**
*Ralph I. Miller*
100 Crescent Court, Dallas, TX 75201 (214)746-7700

*Ralph I. Miller*
700 Louisiana-Suite 1600, Houston, TX 77002 (713)546-5000

**VIRGINIA**

**Cooley Godward, LLP**
*Robert R. Vieth, Partner*
One Freedom Square, Reston Town Ctr., 11951 Freedom Dr., Reston, VA 20190-5656 (703)456-8000

**Greenberg Traurig, LLP**
*Joe R. Reeder / John Scalia (703)749-1300*
1750 Tysons Boulevard, 12th Fl., Tysons Corner, VA 22102 (703)749-1300

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / Christian Word (703)456-5226*
Two Freedom Square, 11955 Freedom Drive, Suite 500, Reston, VA 20190-5651 (703)456-1000

**McGuireWoods, LLP**
*Stephen D. Busch (804)775-4378*
One James Center, 901 East Cary Street, Richmond, VA 23219 (804)775-1000

*Stephen D. Busch (804)775-4378*
1750 Tysons Boulevard, Suite 1800, McLean, VA 22102 (703)712-5000

**WilmerHale**
1600 Tysons Boulevard, 10th Floor, Tysons Corner, VA 22102 (703)251-9700

**Wilson, Sonsini, Goodrich & Rosati**
*Lyle Roberts*
2 Fountain Square, Reston Town Ct., 11921 Freedom Drive, Suite 600, Reston, VA 20190-5634 (703)734-3100

**WASHINGTON**

**Davis Wright Tremaine**
*Stephen M. Rummage / Ladd B. Leavens*
2600 Century Square, 1501 Fourth Avenue, Seattle, WA 98101-1688 (206)622-3150

Revised (5/06)
Page 14

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**DLA Piper Rudnick Gray Cary US, LLP**
*Stellman Keehnel*
701 Fifth Avenue, Suite 7000, Seattle, WA 98104 (206)839-4800

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
1111 Third Avenue, Suite 3400, Seattle, WA 98101-3299 (206)447-8998

**Heller, Ehrman, White & McAuliffe**
*George E. Greer*
701 Fifth Avenue, Suite 6100, Seattle, WA 98104-7098 (206)447-0900

**Lane Powell Spears Lubersky, LLP**
*James B. Stoetzer (206)277-9511 / Rudy A. Englund / Larry S. Gangnes / James L. Robart /*
*Christopher B. Wells*
1420 Fifth Avenue, Suite 4100, Seattle, WA 98101-2338 (206)223-7000

**Perkins Coie, LLP**
*Harry H. Schneider, Jr. / Ronald L. Berenstain*
1201 Third Avenue, Ste. 4800, Seattle, WA 98101-3099 (206)583-8888

**Wilson, Sonsini, Goodrich & Rosati**
*Barry M. Kaplan*
701 Fifth Avenue, Suite 5100, Seattle, WA 98104 (206)883-2500

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

## ENDORSEMENT #1

This endorsement, effective 12:01am
policy number  *672-43-85*                    *June 8, 2006*                     forms a part of
issued to   *NEW CENTURY FINANCIAL CORPORATION*

by   *American International Specialty Lines Insurance Company*

### PARTNERSHIP GOLD℠
### D&O 2/2000 AMENDMENTS

In consideration of the payment of the premium it is hereby understood and agreed that the policy is hereby amended as follows:

(1) All the terms and conditions of policy form 74150 (4/99) and 74151 (4/99) shall apply to coverage as is afforded by this endorsement unless specifically stated otherwise herein or in any endorsement attached hereto.

(2) Items 4, 5 and 6 of the Declarations are hereby deleted in their entirety and replaced by the following:

| | | | | | |
|---|---|---|---|---|---|
| 4 | **LIMIT OF LIABILITY**<br>(hereinafter "Limit of Liability")<br>For all Loss, in the aggregate, under this<br>policy including Defense Costs: | | | | $10,000,000 |
| 5 | **RETENTION:**   Not applicable to Non-Indemnifiable Loss and certain Defense Costs -<br>(See Clause 6 for details.) | | | | |
| 5(a) | Securities Claims: | $5,000,000 | 5(b) | Employment Practices Claims: | $2,500,000 |
| 5(c) | All other Claims: | $5,000,000 | | | |
| 6 | **CONTINUITY DATE** (herein "Continuity Date"): | | | | |
| 6(a) | Coverages A and B, other<br>than Outside Entity<br>Executive coverage:     6/8/1997 | | 6(b) | Outside Entity<br>Executive<br>coverage, including<br>Coverage C: | The date on which<br>the Director or<br>Officer first served<br>as an Outside<br>Entity Executive of<br>such Outside<br>Entity. |
| 6(c) | Coverage D:     6/8/2004 | | | | |

1

(3) The following additional item is hereby added to the Declarations as Item 8.

| 8<br>8(a) | CRISISFUND℠ limit:<br>Crisis Loss: | $50,000 | 8(b) | Additional<br>CRISISFUND℠ for<br>Delisting Crisis Loss: | $25,000 |
| --- | --- | --- | --- | --- | --- |

(4)  Clause 1. INSURING AGREEMENTS is hereby deleted in its entirety and replaced by the following:

## 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to Claims first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

## COVERAGE A:  NATURAL PERSON INSUREDS AND GENERAL PARTNER LIABILITY INSURANCE

This policy shall pay the Loss of any Natural Person Insured and General Partner of an Organization arising from a Claim made against such Natural Person Insured for any Wrongful Act of such Natural Person Insured or General Partner of an Organization, except when and to the extent that the Organization has indemnified such Natural Person Insured or General Partner. Coverage A shall not apply to Loss arising from a Claim made against an Outside Entity Executive.

## COVERAGE B:  ORGANIZATION LIABILITY INSURANCE

(i)     *Organization Securities Claim Liability*:  This policy shall pay the Loss of any Organization arising from a Securities Claim made against such Organization for any Wrongful Act of such Organization.

(ii)    *Indemnification of a Natural Person Insured or General Partner*:  This policy shall pay the Loss of an Organization arising from a Claim made against a Natural Person Insured or General Partner (including an Outside Entity Executive) for any Wrongful Act of such Natural Person Insured or General Partner, but only to the extent that such Organization has indemnified such Natural Person Insured or General Partner.

## COVERAGE C:  OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the Loss of any Outside Entity Executive arising from a Claim made against such Outside Entity Executive for any Wrongful Act of such Outside Entity Executive but only excess of any indemnification provided by an Outside Entity and any insurance coverage afforded to an Outside Entity or its directors, officers, trustees, governors, management committee members or members of the management board (or equivalent position) applicable to such Claim, except when and to the extent that a Company has indemnified such Outside Entity Executive.

2

## COVERAGE D:  CRISISFUND℠ INSURANCE

This policy shall pay the Crisis Loss (including Delisting Crisis Loss) of an Organization solely with respect to a Crisis (including a Delisting Crisis) occurring during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy, up to the amount of the respective CrisisFund℠, from first dollar; provided that payment of any crisis Loss under this policy shall not waive any of the Insurer's rights under this policy or at law. This Coverage D shall apply regardless of whether a Claim is ever made against an Insured arising from such Crisis and, in the case where a Claim is made, regardless of whether the amount is incurred prior to or subsequent to the making of the Claim.

## COVERAGE E: COSTS OF INVESTIGATION FOR DERIVATIVE CLAIMS

This policy shall pay the Costs of Investigation of the Limited Partnership arising from a Limited Partnership Securityholder Derivative Investigation first made by the Limited Partnership against one or more of its individual General Partners during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as individual General Partners of the Limited Partnership.

It shall be the duty of the Limited Partnership and not the duty of the Insurer to conduct, investigate and evaluate any Limited Partnership Securityholder Derivative Investigation(s) against its own individual General Partner(s), provided that the Insurer shall be entitled to effectively associate in the investigation and evaluation, and the negotiation of any settlement, of any such Limited Partnership Securityholder Derivative" Investigation.

The Section of the policy entitled EXCLUSIONS is applicable to Costs of Investigation.

Nothing in this coverage, for the cost of investigations,  shall be construed to afford coverage under this policy for any Claim brought by the Limited Partnership against one or more of its own individual General Partner(s), other than Costs of Investigation incurred in a covered Limited Partnership Securityholder Derivative Investigation.

For the purposes of the coverage provided under Insuring Agreement E, the following Definitions shall apply:

"Costs of Investigation" means reasonable and necessary costs, charges, fees and expenses (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of the individual General Partners or Employees of the Limited Partnership) incurred by the Limited Partnership (including its board of directors or any committee of the board of directors of the Limited Partnership) in connection with the Limited Partnership Securityholder Derivative Investigation.

"Limited   Partnership   Securityholder   Derivative   Investigation"   means   the investigation by the Limited Partnership against one or more of its own individual General Partners after written demand by one or more securityholders of a Limited Partnership ("the Complaining Securityholders") upon the board of directors or such Limited Partnership to bring a civil proceeding in a court of law against any individual General Partners for a Wrongful Act committed, attempted or allegedly committed or attempted by such individual General Partners before or during the Policy Period.

3

(4) Clause 2. DEFINITIONS (b), (c), (f), (g), (h), (i), (j), (n), (o), (q), (s), (u), (v), and (w) are hereby deleted in their entirety and replaced by the following:

(b) "Claim" means:

(1) a written demand for monetary, non-monetary or injunctive relief;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation of a Natural Person Insured:

(i) once such Natural Person Insured is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

(ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such Natural Person Insured.

The term "Claim" shall include any Securities Claim, and any Employment Practices Claim.

The term "Claim" shall include any Limited Partnership Securityholder Derivative Investigations (subject to all the terms and conditions of this policy).

(c) "Company" means:

(1) the Named Entity (if a corporation, limited liability company, or joint venture);

(2) each Subsidiary; and

(3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(f) "Director(s) or Officer(s)" means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a Company formed as a corporation, management committee member of a Company formed as a joint venture and member of the management board of a Company formed as a limited liability company (or equivalent position);

(2) past, present and future natural person in a duly elected or appointed position in a Company organized and operated in a Foreign Jurisdiction that is equivalent to an executive position listed in Definition (f)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the Company.

(g) "Employee" means any past, present or future employee of the Organization, other than any Director or Officer, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

(h) "Employment Practices Violation" means any actual or alleged:

4

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation;

(9) wrongful discipline;

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to a Director or Officer of, an Employee of or an applicant for employment with an Organization or an Outside Entity, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, "Employment Practices Violation" shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(i) "General Partner" means:

    (i)    the Named Entity;

    (ii)    any Subsidiary or Limited Partnership;

    (iii)    any Director, Officer or Employee of an Organization; or

    (iv)    any other person or entity listed as such in an endorsement attached hereto,

acting in the capacity as a general partner of a Limited Partnership.

The term "General Partner" shall also include any director, officer, member of the Board of Managers, trustee, Employee, or past, present, and future General Counsel and Risk Manager (or equivalent position) of an entity General Partner described above, but only if such individual is acting on behalf of such entity General Partner in its capacity as a General Partner for a Limited Partnership.

(j) "Indemnifiable Loss" means Loss for which an Organization or General Partner has indemnified or is permitted or required to indemnify a Natural Person Insured or natural person General Partner pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an Organization.

(n) "Loss" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs and Crisis Loss; however, "Loss" (other than Defense Costs) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an Insured is not financially liable or which are without legal recourse

to an Insured; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, Loss shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any Natural Person Insured pursuant to Section 2(g) (2)(C) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(C); and (2) solely with respect to Securities Claims, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to Defense Costs or to any Non-Indemnifiable Loss in connection therewith.

The term "Loss" as used in the policy (other than for INSURING CLAUSES A and B) shall include "Costs of Investigation".

(o) "Natural Person Insured" means any:

(1) Director or Officer;
(2) Employee; and
(3) Outside Entity Executive.

(q) "No Liability" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every Insured named in the Claim, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every Insured named in the Claim. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(s) "Outside Entity" means any: (1) not-for-profit entity; or (2) other entity listed as an "Outside Entity" in an endorsement attached to this policy.

(u) "Securities Claim" means a Claim, other than an administrative or regulatory proceeding against, or investigation of an Organization, made against any Insured:

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:
(a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or
(b) brought by a security holder of an Organization with respect to such security holder's interest in securities of such Organization; or
(2) brought derivatively on the behalf of an Organization by a security holder of such Organization.

6

Notwithstanding the foregoing, the term "Securities Claim" shall include an administrative or regulatory proceeding against an Organization, but only if and only during the time that such proceeding is also commenced and continuously maintained against a Natural Person Insured.

(v) "Subsidiary" means:

(1) any for-profit entity that is not formed as a partnership of which the Named Entity, a Limited Partnership or a General Partner has Management Control on or before the inception of the Policy Period either directly or indirectly through one or more other Subsidiaries;

(2) any for-profit entity that is not formed as a partnership of which the Named Entity, a Limited Partnership or a General Partner first had Management Control during the Policy Period, whether directly or indirectly through one or more other Subsidiaries, and:

(i) whose assets total less than 25% of the total consolidated assets of each and every Organization as of the inception date of this policy; or

(ii) whose assets total 25% or more than the total consolidated assets of each and every Organization as of the inception date of this policy, but such entity shall be a "Subsidiary" only: (i) for a period of sixty (60) days from the date the Named Entity, Limited Partnership or General Partner first had Management Control of such entity; or (ii) until the end of the Policy Period, which ever ends or occurs first (hereinafter "Auto-Subsidiary Period");

provided that the Named Entity, Limited Partnership, General Partner or any other Insured shall report such Subsidiary to the Insurer, in writing, prior to the end of the Policy Period; and

(3) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an Organization.

The Insurer shall extend coverage for any Subsidiary described in Clause 2(v)(2)(ii) above, and any Natural Person Insured thereof, beyond its respective Auto-Subsidiary Period if during such Auto-Subsidiary Period, the Insured's Representative shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and amendment of the provisions of this policy required by the Insurer relating to such Subsidiary.

Further, coverage as shall be afforded to any Subsidiary and any Natural Person Insured thereof is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such Subsidiary.

In all events, coverage as is afforded under this policy with respect to a Claim made against any Company and/or any Natural Person Insured thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time such Company became a Company and such Natural Person Insured became a Natural Person Insured, and prior to the effective time that such Company ceases to be a Company or such Natural Person Insured ceases to be a Natural Person Insured. A Subsidiary ceases to be an Company when the Named Entity, Limited Partnership or General Partner no longer maintains Management Control of such Subsidiary either directly or indirectly through one or more of its other Subsidiaries.

7

(w) "Wrongful Act" means:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged Employment Practices Violation:

    (i) with respect to any Director or Officer, by such Director or Officer in his or her capacity as such or any matter claimed against such Director or Officer solely by reason of his or her status as such;

    (ii) with respect to any Employee of an Organization, by such Employee in his or her capacity as such, but solely in regard to any: (a) Securities Claim; or (b) other Claim so long as such other Claim is also made and continuously maintained against a Director or Officer of an Organization; or

    (iii) with respect to any Outside Entity Executive, by such Outside Entity Executive in his or her capacity as such or any matter claimed against such Outside Entity Executive solely by reason of his or her status as such; or

(2) with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization, but solely in regard to any Securities Claim.

(3) with respect to any General Partner, any actual or alleged Employment Practices Violation or any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such General Partner in his, her or its capacity as such, or any matter claimed against such General Partner by reason of his, her or its status as a General Partner of a Limited Partnership;

(6) Clause 2. DEFINITIONS is hereby amended by adding the following additional definitions:

(x)    "Crisis" has the meaning as defined in Appendix B attached to this policy.

(y)    "CrisisFund℠" means:

(1) in the case of all Crisis Loss, other than Delisting Crisis Loss, the dollar amount set forth in Item 10(a) of the Declarations; and

(2) in the case of Delisting Crisis Loss the dollar amount set forth in Item 10(a) of the Declarations plus the additional dollar amount set forth in Item 10(b) of the Declarations, combined.

(z)    "Crisis Loss" has the meaning as defined in Appendix B attached to this policy. "Delisting Crisis Loss" means a Crisis Loss resulting solely from a Delisting Crisis (as defined in Appendix B).

(aa)    "Employment Practices Claim" means a Claim alleging any Employment Practices Violation.

(bb)    "Foreign Jurisdiction" means any jurisdiction, other than the United States or any of its territories or possessions.

(cc)    "Foreign Policy" means the Insurer's or any other member company of American International Group, Inc.'s (AIG) standard directors and officers or executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a Foreign Jurisdiction that provides coverage substantially similar to the coverage

8

afforded under this policy. If more than one such policy exists, then "Foreign Policy" means the standard policy most recently registered in the local language of the Foreign Jurisdiction, or if no such policy has been registered, then the policy most recently registered in that Foreign Jurisdiction. The term "Foreign Policy" shall not include any partnership managerial, pension trust or professional liability coverage.

(dd)  "Management Control" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an Organization, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(ee)  "Non-Indemnifiable Loss" means Loss for which an Organization has neither indemnified nor is permitted or required to indemnify a Natural Person Insured or natural person General Partner pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an Organization.

(ff)  "Outside Entity Executive" means any: (1) Director or Officer who is or was acting at the specific written request or direction of an Organization as a director, officer, trustee, governor, management committee member or member of the management board (or equivalent position) of an Outside Entity; or (2) any other person listed as an Outside Entity Executive in an endorsement attached to this policy.

(gg)  "Pollutants" means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(hh)  "Application" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the Insurer, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any documents filed with the Securities and Exchange Commission (SEC)) by an Organization prior to the inception date of the policy, or any similar, state, local or foreign regulatory agency).

(7) Clause 2. DEFINITIONS (d) "Continuity Date" is hereby deleted in its entirety.

(8) Clause 4. EXCLUSIONS (e), (f), (i), (k), (l) and (m) are deleted in their entirety and replaced by the following:

(e) alleging, arising out of, based upon or attributable to, as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

9

(f) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an Employment Practices Claim;

(i) which is brought by or on behalf of an Organization or any general partner thereof or any Natural Person Insured, other than an Employee of an Organization; or which is brought by any security holder, limited partner, member of an Organization, or entity General Partner, whether directly or derivatively, unless such security holder's, limited partner's, or member's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of an Insured; provided, however, this exclusion shall not apply to:

(1) any Claim brought by a Natural Person Insured in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a Claim that is covered by this policy;

(2) any Employment Practices Claim brought by a Natural Person Insured, other than a Natural Person Insured who is or was a member of the Board of Directors (or equivalent governing body) of an Organization;

(3) in any bankruptcy proceeding by or against an Organization, any Claim brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such Organization, if any;

(4) any Claim brought by any past Director or Officer of a Company or past natural person General Partner who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general partner, General Counsel or Risk Manager (or equivalent position) of or consultant for an Organization for at least four (4) years prior to such Claim being first made against any person; or

(5) any Claim brought by a Director or Officer of a Company formed and operating in a Foreign Jurisdiction against such Company or any Director or Officer thereof, provided that such Claim is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(6) any Securities Claim, whether brought directly or derivatively, provided that such Securities Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Executive of an Organization or any Organization; provided, however, solely with respect to this subsection (6), an Executive's engaging in any activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of 2002), other than the activity of "filing or the causing to be filed" any proceeding as specified under 1514A(a)(2) and any other activity specified in 1514A(a)(2) that is engaged in on a voluntary basis, shall not alone be deemed "with the solicitation of, or assistance of, or active participation of, or intervention of" for purposes of this subsection only;

(k) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(l) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, (including but not limited to a Claim alleging damage to an Organization or its securities holders); provided, however, that this exclusion shall not

10

apply to Non-Indemnifiable Loss, other than Non-Indemnifiable Loss constituting Cleanup Costs;

"Cleanup Costs" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of Pollutants.

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law; and

(9) Clause 4. EXCLUSIONS is hereby amended by deleting the bracketed paragraph following exclusion

(c) that reads "[For the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c), the facts pertaining to and knowledge possessed by any Insured shall not be imputed to any Natural Person Insured; only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer of the Organization, or any entity General Partner shall be imputed to the Organization or entity General Partner.]."

(10) Clause 4. EXCLUSIONS is hereby amended by adding the following at the end thereof:

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(g): (1) the facts pertaining to and knowledge possessed by any Insured shall not be imputed to any other Natural Person Insured or natural person General Partner; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an Organization or entity General Partner shall be imputed to an Organization or natural person General Partner.

This Clause 4. EXCLUSIONS, shall not be applicable to Crisis Loss.

(11) Clause 5. LIMIT OF LIABILITY is hereby deleted in its entirety and replaced by the following:

## 5. LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

The Limit of Liability stated in Item 4 of the Declarations is the aggregate limit of the Insurer's liability for all Loss, under Coverages A, B, C and D combined, arising out of all Claims first made against each and every Insured, and all Crisis Loss occurring, during the Policy Period and the Discovery Period (if applicable). The Limit of Liability for the Discovery Period and the CrisisFund℠ shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations. The limit of the Insurer's liability for Crisis Loss and Delisting Crisis Loss arising from all Crises occurring during the Policy Period, in the aggregate, shall be the amounts set forth as the CrisisFund℠. The CrisisFund℠ shall be the aggregate limit of the Insurer's liability for all Crises under this policy regardless of the number of Crises occurring during the Policy Period.

11

The amounts referred to in all of the foregoing shall be part of and not in addition to the Limit of Liability stated in Item 4 of the Declarations and shall in no way be construed to increase such limit.

Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.

The limit of the Insurer's liability for Costs of Investigation arising from all Limited Partnership Security holder Derivative Investigations occurring during the Policy Period or the Discovery Period (if applicable), in the aggregate, shall be $250,000. This limit shall be the maximum limit of the Insurer under this policy regardless of the number of such Claims occurring during the Policy Period or the Discovery Period (if applicable). Provided, however, that the Costs of Investigation limit shall be part of and not in addition to the Limit of Liability stated in the Item of the Declaration page entitled LIMIT OF LIABILITY, which shall in all events be the maximum liability of the Insurer for all Loss under this policy.

(12) Clause 6. RETENTION CLAUSE is hereby deleted in its entirety and replaced by the following:

## 6. RETENTION CLAUSE

For each Claim, the Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention amounts stated in Items 5(a), 5(b), 5(c) of the Declarations, such Retention amounts to be borne by the Insureds and remain uninsured, with regard to all Loss other than Non-Indemnifiable Loss. The Retention amount specified in:

(i)   Item 5(a) applies to Defense Costs that arise out of a Securities Claim;

(ii)  Item 5(b) applies to Loss that arises out of an Employment Practices Claim; and

(iii) Item 5(c) applies to Loss that arises out of any Claim other than a Securities Claim or Employment Practices Claim.

A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

In the event a Claim triggers more than one of the Retention amounts stated in Items 5(a), 5(b), and 5(c) of the Declarations, then, as to that Claim, the highest of such Retention amounts shall be deemed the Retention amount applicable to Loss (to which a Retention is applicable pursuant to the terms of this policy) arising from such Claim.

Further, with respect to all Claims, other than Employment Practices Claims, no Retention shall apply to Loss arising from such Claims and the Insurer shall reimburse Defense Costs otherwise covered hereunder and paid by the Insured, in the event of: (1) a determination of No Liability of each and every Insured against whom the same Claim or related Claims have been made; or (2) a dismissal or a stipulation to dismiss each and every Insured against whom the same Claim or related Claims have been made without prejudice and without the payment of any consideration by or on behalf of any Insured. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such Claim is not brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an Organization in a form acceptable to the Insurer that such reimbursement shall be paid back by such

12

Organization to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to Crisis Loss or Non-Indemnifiable Loss.

There shall be no Retention amount applicable to Costs of Investigation, and the Insurer shall pay such Loss from first dollar subject to the other terms and conditions of this endorsement.

(13) Clause 7. NOTICE/CLAIM REPORTING PROVISIONS, paragraph (a) is hereby deleted in its entirety and replaced by the following:

(a) The Organization, the Insured's Representative or the Insured shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured or a Crisis as soon as practicable: (i) after the Named Entity's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim; or (ii) the Crisis commences, but in all events no later than either:

(1) the end of the Policy Period or the Discovery Period (if applicable); or
(2) within 60 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim was first made against an Insured within the final 45 days of the Policy Period or the Discovery Period (if applicable).

(14) The last paragraph of Clause 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS) which reads:

In the event of Loss arising from a Claim or Claims for which payment is due under the provisions of this policy, then the Insurer shall:

(a) first, pay such Non-Indemnifiable Loss for which coverage is provided under Coverage A of this policy; and

(b) then, with respect to whatever remaining amount of the Limit of Liability is available after payment of such Non-Indemnifiable Loss, at the written request of the chief executive officer of the Insured's Representative, the Named Entity or any General Partner thereof, either pay or withhold payment of such other Loss for which coverage is provided under this policy.

In the event the Insurer withholds payment pursuant to subparagraph (b) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the Insured's Representative, Named Entity or any General Partner thereof, remit such payment to such Insured's Representative, Named Entity or General Partner or directly to or on behalf of a Natural Person Insured.

is hereby deleted.

(15) The second paragraph of Clause 10. DISCOVERY CLAUSE is hereby deleted in its entirety and replaced by the following:

The Additional Premium Amount for: (1) one year shall be no greater than 150% of the "full annual premium"; (2) two years through six years shall be no greater than 300%. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however,

13

unless written notice of such election together with the additional premium due is received by the Insurer within 60 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

(16) Clause 11. CANCELLATION CLAUSE is hereby deleted in its entirety and replaced by the following:

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Insured's Representative at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. This policy may only be canceled by or on behalf of the Insurer in the event of non-payment of premium by the Insured's Representative. In the event of non-payment of premium by the Insured's Representative, the Insurer may cancel this policy by delivering to the Insured's Representative or by mailing to the Insured's Representative, by registered, certified, or other first class mail, at the Insured Representative's address as shown in Item 1(b) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Insured's Representative, the Insurer shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

(17) Clause 12. TERMINATION OF COVERAGE FOR WRONGFUL ACTS AFTER CERTAIN TRANSACTIONS paragraph 2. is hereby deleted in its entirety and replaced by the following:

2. any person or entity or group of persons and/or entities acting in concert shall acquire Management Control of the Insured's Representative;

(18) Clause 14. OTHER INSURANCE AND INDEMNIFICATION is hereby deleted in its entirety and replaced by the following:

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim made against an Outside Entity Executive, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an Outside Entity; and (2) any insurance coverage afforded to an Outside Entity or its Executives applicable to such Claim. Further, in the event such other Outside Entity insurance is provided by the Insurer or any other member

14

company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the Insurer's maximum aggregate Limit of Liability for all Loss under this policy, as respects any such Claim, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such Outside Entity.

(19) The heading of Clause 17. DISPUTE RESOLUTION PROCESS is hereby deleted in its entirety and replaced by the following:

## 17.  ALTERNATIVE DISPUTE RESOLUTION PROCESS

(20) Clause 19 is hereby deleted.

(21) The following Clauses are hereby added to the policy:

## 21. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any Claim made against any Insured anywhere in the world.

In regard to Claims brought and maintained solely in a Foreign Jurisdiction against a Company formed and operating in such Foreign Jurisdiction or a Natural Person Insured thereof for Wrongful Acts committed in such Foreign Jurisdiction, the Insurer shall apply to such Claim(s) those terms and conditions (and related provisions) of the Foreign Policy registered with the appropriate regulatory body in such Foreign Jurisdiction that are more favorable to such Insured than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18 and 21 of this policy and the comparable provisions of the Foreign Policy. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of Loss are stated or incurred in a currency other than United States of America dollars, payment of covered Loss due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the Insurer and if agreeable to the Insured's Representative) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such Loss is established (or if not published on such date the next publication date of The Wall Street Journal).

## 22. BANKRUPTCY

Bankruptcy or insolvency of any Organization or any Insureds shall not relieve the Insurer of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the Directors or Officers and natural person General Partners. Further, if a liquidation or reorganization proceeding is commenced by the Named Entity and/or any other Organization (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered Claim under this policy, the Insureds hereby:

15

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy Law; and

(b) agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

## 23. ORDER OF PAYMENTS

In the event of Loss arising from a covered Claim for which payment is due under the provisions of this policy, then the Insurer shall in all events:

(a) first, pay Loss for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of Loss has been made pursuant to Clause 23(a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the Insured's Representative, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of Loss has been made pursuant to Clause 23(a) and Clause 23(b) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the Insured's Representative either pay or withhold payment of such other Loss for which coverage is provided under Coverages B(i) and D of this policy.

In the event the Insurer withholds payment pursuant to Clause 23(b) and/or Clause 23(c) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the Insured's Representative remit such payment to an Organization or directly to or on behalf of a Natural Person Insured or natural person General Partner.

The bankruptcy or insolvency of any Insureds shall not relieve the Insurer of any of its obligations to prioritize payment of covered Loss under this policy pursuant to this Clause 23.

In consideration of the premium charges, it is hereby understood and agreed that the following Clause is added to the policy at the end thereof:

## 24. SEVERABILITY

In granting coverage under this policy, it is agreed that the Insurer has relied upon the statements, warranties and representations contained in the Application as being accurate and complete. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

The Insureds agree that in the event that any such statement, warranty or representation contained in the Application is made with the intent to deceive and materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the policy, then this Policy shall be void *ab initio* with respect to any of the Following Insureds:

1) Any **Insured Person** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the **Application**

2) An **Organization**, under clause 1.  Insuring Agreements, Coverage B (ii), to the extent it indemnifies any **Insured Person** referenced in (1), above, and

3) An **Organization**, under Clause 1.  Insuring Agreement, Coverage B (I), if the chief executive officer, chief financial officer, chief operating officer knew as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**,

Whether or not such **Insured Person** knew that such facts were not accurately and completely disclosed in the **Application**.

The knowledge or representations of any insured shall not be imputed to any other **Insured Person** or the **Organization**, except as provided in paragraphs 2 & 3 above.

Solely with respect to any **Non-Indemnifiable Loss** of any **Insured Person**, under no circumstances shall the coverage provided by this Policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the Policy.

In consideration of the premium charges, it is hereby understood and agreed that the following Clause is added to the policy at the end thereof:

## 25. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the Insurer, or any of its affiliates, then in granting coverage under this policy it is agreed that the Insurer has relied upon the Application as being accurate and complete in underwriting this policy.  This Clause 25 together with the Application constitute the complete Application that is the basis of this policy and form a part hereof.  No written renewal application form need be completed by the Named Entity in order to receive a renewal quote from the Insurer, although the Insurer reserves the right to require specific information upon renewal.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

17

<u>ENDORSEMENT# 2</u>

This endorsement, effective *12:01 am    June 8, 2006*
policy number  *672-43-85*                                    forms a part of
issued to  *NEW CENTURY FINANCIAL CORPORATION*

by      *American International Specialty Lines Insurance Company*

## CONTROLLED REIT ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1)    The definition of "Additional Limited Partnership" is deleted in its entirety and replaced with the following:

    (a)    "Additional Limited Partnership" means:

        (1)    any limited partnership, general partnership or joint venture which the Named Entity Controls on or before the inception of the Policy Period;

        (2)    automatically any limited partnership: (i) (a) whose assets total less than 15% of the total consolidated assets of the Organization as of the inception date of this policy, (b) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole general partner during the Policy Period and (c) whose partnership interests have not been sold in a public offering; or (ii) for which the Organization first becomes the sole Controlling "General Partner" during the Policy Period and (ii) whose ownership interests have not been sold to the public. The Insured's Representative shall provide the Insurer with full particulars of the new Additional Limited Partnership before the end of the Policy Period;

        (3)    any limited partnership (other than a limited partnership described in paragraph (2) above) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole general partner or which is otherwise first sponsored by or affiliated with the Named Entity, Insured's Representative, the Company or a General Partner during the Policy Period, but only upon the condition that within 90 days of the date of first sponsorship or affiliation, the Insured's Representative shall have provided the Insurer with full particulars of the new Additional Limited Partnership and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Additional Limited Partnership. Further, coverage as shall be afforded to a new Additional Limited Partnership is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such Additional Limited Partnership.

*END 2*

<u>ENDORSEMENT# 2</u>     **(Continued)**

This endorsement, effective  *12:01 am     June 8, 2006*
policy number   *672-43-86*                                              forms a part of
issued to   *NEW CENTURY FINANCIAL CORPORATION*

by     *American International Specialty Lines Insurance Company*

In all events, coverage as is afforded under this policy with respect to a Claim made against an Additional Limited Partnership or any General Partner or Natural Person Insured thereof, shall only apply for Wrongful Acts committed or allegedly committed after the effective time that the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first became the sole Controlling General Partner, general partner of the Additional Limited Partnership or the effective time such Additional Limited Partnership was otherwise first sponsored by, Controlled by or affiliated with the Named Entity, the Insured's Representative, the Company or a General Partner and prior to the effective time: (1) the Additional Limited Partnership or any entity General Partner thereof consolidates with or merges into, or sells all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or (2) any person or entity or group of persons and/or entities acting in concert acquires an amount of the outstanding securities representing more than 50% of the voting power for the election of general partners or directors of the Additional Limited Partnership or entity General Partner thereof, or acquires the voting rights of such an amount of such securities; or (3) the Additional Limited Partnership engages in a liquidation, "roll-up" or "roll-over"; or (4) the General Partner(s) of the Additional Limited Partnership are different than the Additional Limited Partnership's General Partner(s) when it first became an Additional Limited Partnership; provided, that this subsection (4) shall not apply if the sole general partner of such Additional Limited Partnership is and remains at all times either the Named Entity, an Additional Limited Partnership, the Company or any Natural Person Insured.

2) Definition (i), General Partner, is deleted in its entirety and replaced by the following:

(i)   "General Partner" means:

    (i)    the Named Entity;
    (ii)   any Subsidiary or Limited Partnership;
    (iii)  any Director, Officer or Employee of an Organization; or
    (iv)   any other person or entity listed as such in an endorsement attached hereto,

*END 2*

## ENDORSEMENT# 2    (Continued)

This endorsement, effective 12:01 am    June 8, 2006
policy number 672-49-85
issued to NEW CENTURY FINANCIAL CORPORATION                    forms a part of

by    American International Specialty Lines Insurance Company

acting in the capacity as a general partner, partnership manager or joint venture manager of a Limited Partnership.

The term "General Partner" shall also include any director, officer, member of the Board of Managers, trustee or Employee of an entity General Partner described above, but only if such individual is acting on behalf of such entity General Partner in its capacity as a General Partner for a Limited Partnership.

3)    The following definition is added to the policy:

(aa)    "Control" (including the terms "Controlling", "Controlled", "Controlled by" and "under common Control with") means the possession by the Organization, directly or indirectly, of the power to direct or cause the direction of the management and policies of a limited partnership, general partnership or joint venture, whether through the ownership of voting securities, by contract, or otherwise.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

END 2

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# 3

This endorsement, effective 12:01 am    June 8, 2006
policy number  672-43-85
issued to  NEW CENTURY FINANCIAL CORPORATION                    forms a part of

by     American International Specialty Lines Insurance Company

## NUCLEAR EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s):

A.      alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the hazardous properties of nuclear material, including but not limited to:

    (1)     nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Organization, or discharged or dispersed therefrom; or

    (2)     nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Organization; or

    (3)     the furnishing by an insured or the Organization of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

    (4)     Claims for damage or other injury to the Organization or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the hazardous properties of nuclear material.

B.      (1)     which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

    (2)     with respect to which  (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

**END 3**

## ENDORSEMENT# 3    (Continued)

This endorsement, effective *12:01 am*    *June 8, 2006*    forms a part of
policy number *672-43-85*
issued to    *NEW CENTURY FINANCIAL CORPORATION*

by    *American International Specialty Lines Insurance Company*

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for
      (1) separating the isotopes of uranium or plutonium,
      (2) processing or utilizing spent fuel, or
      (3) handling, processing or packaging wastes,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more then 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 3*

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

## ENDORSEMENT# 4

This endorsement, effective *12:01 am    June 8, 2006*
policy number *672-43-85*                                    forms a part of
issued to *NEW CENTURY FINANCIAL CORPORATION*

by      *American International Specialty Lines Insurance Company*

## PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
### (with shareholder carve-out)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon or attributable to the Organization's, General Partner's or any Insured(s)' performance of or failure to perform professional services, or any act(s), error(s) or omission(s) relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement shall not apply to any Claim(s) brought by a shareholder of the Organization in the form of a shareholder class, direct or derivative action alleging failure to supervise those who performed or failed to perform such professional services, provided that such shareholder action is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the Organization, General Partner or any Insured(s).

ALL TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

*END 4*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# 5

This endorsement, effective *12:01 am     June 8, 2006*
policy number  *672-43-85*                                              forms a part of
Issued to   *NEW CENTURY FINANCIAL CORPORATION*

by     *American International Specialty Lines Insurance Company*

## AMEND RETENTION CLAUSE

In consideration of the premium charged, it is hereby understood and agreed that the policy
is hereby amended as follows:

(1)    The Definition of and  all provisions referring to  "No Liability" are hereby  deleted in
their entirety.

(2)    Clause 6 RETENTION CLAUSE is deleted in its entirety  and replaced by the
following:

### 6.    RETENTION CLAUSE

The Insurer shall only  be liable for the  amount of Loss  arising from a  Claim
which is in excess of the applicable Retention amount stated in Item 5 of the
Declarations, such Retention amount to be borne  by the Organization and/or
the Insureds and shall  remain uninsured, with regard  to: (i) all Indemnifiable
Loss; (ii) Loss  of the entity  General Partner; and  (iii) Loss  under Coverages
B(i). A single Retention amount  shall apply to  Loss arising  from all Claims
alleging the same  Wrongful Act  or related Wrongful  Acts. Notwithstanding
the foregoing, solely with  respect to a  Securities Claim, the  Retention shall
only apply to Defense Costs.

It is further understood and agreed that in  the event an Organization refuses
to pay an applicable Retention due to Financial Insolvency, then no Retention
shall  apply, provided that  the Insurer shall  be  entitled to recover the
Retention amount from the Organization.

For the purpose of this endorsement, the following definitions shall apply:

"Financial Insolvency" means the: (i) appointment by any state or federal
official, agency or court of  a receiver, conservator, liquidator, trustee,
rehabilitator or similar official  to take control of, supervise, manage or
liquidate  an  Organization;  or  (ii)  the  Organization  becoming  a
debtor-in-possession pursuant to the United  States bankruptcy law,  and as
to both (i) or (ii), the equivalent status outside the United States.

"Non-Indemnifiable Loss" means Loss that is not Indemnifiable Loss.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 5*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# 6

This endorsement, effective *12:01 am*      *June 8, 2006*                    forms a part of
policy number   *672-43-85*
issued to   *NEW CENTURY FINANCIAL CORPORATION*

by      *American International Specialty Lines Insurance Company*

## EXCLUSION (N) DELETED - COMMINGLING OF FUNDS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that Exclusion
(n) is deleted in its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 6*

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

## ENDORSEMENT# 7

This endorsement, effective *12:01 am    June 8, 2006*    forms a part of
policy number    *672-43-85*
issued to    *NEW CENTURY FINANCIAL CORPORATION*

by    *American International Specialty Lines Insurance Company*

### ALTERNATE DISPUTE RESOLUTION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause
17 is hereby deleted in its entirety and replaced by the following:

## 17.    ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise
under or in connection with this policy, whether arising before or after termination
of this policy, including any determination of the amount of Loss, shall be subject to
the alternative dispute resolution ("ADR") process set forth in this clause.

Either the Insurer or the Insured(s) may elect the type of ADR process discussed
below; provided, however, that the Insured(s) shall have the right to reject the
Insurer's choice of ADR at any time prior to its commencement, in which case the
Insured(s)' choice of ADR shall control.

The Insurer and Insured(s) agree that there shall be two choices of ADR process:

(1)    non-binding mediation administered by the American Arbitration Association,
in which the Insurer and Insured(s) shall try in good faith to settle the dispute
by mediation under or in accordance with its then-prevailing Commercial
Mediation Rules; or

(2)    arbitration submitted to the American Arbitration Association under or in
accordance with its then-prevailing Commercial Arbitration Rules, in which
the arbitration panel shall be composed of three disinterested individuals.

In the event that the ADR process described in paragraph (1) of the above is
selected, the Insurer and the Insured(s) agree that in the further event that the
dispute is not settled following the mediation, either party shall have the right,
within 90 days of the termination of the mediation, to commence an arbitration
proceeding as described in paragraph (2) above.

In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge
of the legal, corporate management, or insurance issues relevant to the matters in
dispute. The mediator(s) or arbitrators shall also give due consideration to the
general principles of the law of the state of Delaware in the construction or
interpretation of the provisions of this policy; provided, however, that the terms,
conditions, provisions and exclusions of this policy are to be construed in an
even-handed fashion in the manner most consistent with the relevant terms,
conditions, provisions or exclusions of the policy, without regard to the authorship

*END 7*

## ENDORSEMENT# 7     (Continued)

This endorsement, effective *12:01 am      June 8, 2006*
policy number  *672-43-85*                                    forms a part of
issued to   *NEW CENTURY FINANCIAL CORPORATION*

by     *American International Specialty Lines Insurance Company*

of the language, the doctrine of reasonable  expectations of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties.

In the event of  arbitration, the decision of  the arbitrators shall be  final and binding and provided  to both  parties, and  the arbitrators'  award shall  not  include attorney(s)' fees  or other costs. In  all events,  each party shall  share equally  the expenses of the ADR process.

Either choice of ADR  process may be  commenced in either  New York, New  York; Atlanta, Georgia; Chicago, Illinois; Denver,  Colorado; or  in the  state  indicated in item 1 of the Declarations  as the mailing address  for the Insured's Representative. The Insured's Representative shall act on  behalf of all Insured(s) in  selection of the ADR process in accordance with this endorsement.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


*END 7*                          AUTHORIZED REPRESENTATIVE
                         Or Countersignature (In states where applicable)

## ENDORSEMENT #8

This endorsement, effective 12:01 am
policy number  672-43-85                    June 8, 2006                    forms a part of
issued to    NEW CENTURY FINANCIAL CORPORATION

by   American International Specialty Lines Insurance Company

### PUNITIVE DAMAGES
### OTHER THAN EMPLOYMENT PRACTICES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that Definition (n) "Loss" (as amended by Endorsement #1, PARTNERSHIP GOLD℠ D&O 2/2000 AMENDMENTS) is hereby amended by deleting the second paragraph thereof and replacing it with the following:

Notwithstanding the foregoing paragraph, Loss shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any Insured Person pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) with respect to Claims other than Employment Practices Claims, punitive, exemplary and multiplied damages imposed upon an Insured.  Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiplied damages.

It is further understood and agreed that solely in regard to the coverage provided by this endorsement the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured arising out of, based upon or attributable to the committing of a dishonest act or any willful violation of any statute, rule or law if a judgment or final adjudication or a binding arbitration proceeding adverse to the Insured(s) establishes that such dishonest act or willful violation of any statute, rule or law was committed.  For the purpose of determining the applicability of the foregoing exclusion the facts pertaining to and knowledge possessed by any Insured shall not be imputed to any other Natural Person Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 9

This endorsement, effective 12:01 am        June 8, 2006
policy number   672-43-86                                              forms a part of
issued to   NEW CENTURY FINANCIAL CORPORATION

by      American International Specialty Lines Insurance Company

### SUBROGATION CLAUSE AMENDED

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Organization's and the Insureds' rights of recovery thereof, and the Organization and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Organization and/or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless a judgment or final adjudication or a alternative dispute resolution proceeding adverse to the Insured (s) establishes such Insured has been determined to have committed a deliberate criminal act, a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THE POLICY REMAIN THE SAME.


*END 9*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

**ENDORSEMENT# 10**

This endorsement, effective *12:01 am     June 8, 2006*          forms a part of
policy number  *672-43-85*
issued to    *NEW CENTURY FINANCIAL CORPORATION*

by     *American International Specialty Lines Insurance Company*

### FINAL DETERMINATION WORDING FOR CONDUCT EXCLUSIONS

In consideration of the premium charged, it is hereby understood and agreed that Clause 4 EXCLUSIONS is hereby amended by deleting paragraphs (a), (b) and (c) in their entirety and replacing them with the following:

    (a)    arising out of, based upon or attributable to the gaining of any profit or advantage to which a judgment or final adjudication or binding arbitration proceeding adverse to the Insured(s) establishes the Insured(s) was not legally entitled;

    (b)    arising out of, based upon or attributable to payments to any Insured of any remuneration without the previous approval of the stockholders or members of an **Organization**, if a judgment or final adjudication or binding arbitration proceeding adverse to the Insured(s) establishes such payments to have been illegal;

    (c)    arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by the Insured if a judgment or final adjudication or binding arbitration proceeding adverse to the Insured(s) establishes that such deliberate criminal or deliberate fraudulent act occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 10*

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

**ENDORSEMENT# *11***

This endorsement, effective *12:01 am      June 8, 2006*        forms a part of
policy number   *872-43-85*
issued to    *NEW CENTURY FINANCIAL CORPORATION*

by      *American International Specialty Lines Insurance Company*

### SUBSIDIARY – ADDITION TO THE DEFINITION OF SUBSIDIARY

In consideration of the premium charged, it is hereby understood and agreed that the Definition of "Subsidiary" is hereby amended to include the following entity(ies), subject to such Subsidiary's respective Continuity Date.

| *SUBSIDIARY* | *CONTINUITY DATE* |
|---|---|
| NEW CENTURY MORTGAGE FOUNDATION | 09/21/2005 |

Solely in regard to the coverage provided by this endorsement:

(1)    The maximum limit of the Insurer's liability for all Loss in the aggregate shall be no greater than $500,000 (hereinafter called the "Sublimit of Liability"). The Sublimit of Liability shall be part of and not in addition to the aggregate Limit of Liability stated in ITEM 4 of the DECLERATIONS page entitled LIMIT OF LIABILITY and in no way shall serve to increase the Insurer's Limit of Liability as therein stated.

Solely with respect to any claim alleging, arising out of or attributable to the above listed Subsidiary, ITEM 5. of the DECLERATIONS page entitled RETENTION is deleted in its entirety and replaced with the following:

ITEM 5.      RETENTION:

SECURITIES CLAIMS:

| | |
|---|---|
| Judgments, Settlements (all coverages) | None |
| Defense Costs (non-Indemnifiable Loss) | None |
| Defense Costs (entity General Partner, Coverage B(i) and Indemnifiable Loss) | $5,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under Clause 6 in certain circumstances) |

*END 11*

**ENDORSEMENT# _11_**    **(Continued)**

This endorsement, effective _12:01 am_    _June 8, 2006_    forms a part of
policy number  _672-43-85_
issued to  _NEW CENTURY FINANCIAL CORPORATION_

by    _American International Specialty Lines Insurance Company_

<u>OTHER CLAIMS:</u>

| | |
|---|---|
| Judgments, Settlements and Defense Costs (non-Indemnifiable Loss) | None |
| Judgments, Settlements and Defense Costs (entity General Partner and Indemnifiable Loss) | $5,000 for Loss arising from Claims alleging the same Wrongful or Related Wrongful Acts |

For the purpose of the applicability of the coverage provided by this endorsement, the entities listed above and the Organization will be conclusively deemed to have indemnified the Insureds of the each respective entity to the extent that such entity or the Organization is permitted or required to indemnify such Insureds pursuant to law, common or statutory, or contract, or its charter or by-laws. The entity and the Organization hereby agree to indemnify the Insureds to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

Furthermore, for the purpose of the applicability of the coverage provided by this endorsement, the insurer shall not be liable for any Loss in connection with any Claim(s), made against any Subsidiary listed above or any Insured(s) thereof:

(1)     alleging, arising out of, based upon or attributable to any pending or prior litigation(s) as of such Subsidiary's respective Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation(s); or

(2)     alleging any Wrongful Act occurring prior to such Subsidiary's respective Continuity Date, if an Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy.

In all events, coverage as is afforded under this endorsement with respect to a Claim made against each respective entity listed above or any Insureds thereof shall only apply for Wrongful Acts committed or allegedly committed after the respective entity's Continuity Date and prior to the time that the Named Entity, Limited Partnership or General Partner ceases to maintain Majority Control over the above listed Subsidiary's board of directors.

*END 11*

## ENDORSEMENT# 11    (Continued)

This endorsement, effective *12:01 am    June 8, 2006*    forms a part of
policy number   *872-43-85*
issued to   *NEW CENTURY FINANCIAL CORPORATION*

by    *American International Specialty Lines Insurance Company*

Solely for purposes of this endorsement, the term, "Majority Control" means owning
interests representing more than 50% of the voting, appointment or designation power for
the selection of a majority of the board of directors of the above listed Subsidiary.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN
UNCHANGED.

*END 11*

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

## ENDORSEMENT# *12*

This endorsement, effective *12:01 am    June 8, 2006*    forms a part of
policy number    *672-43-85*
issued to *NEW CENTURY FINANCIAL CORPORATION*

by    *American International Specialty Lines Insurance Company*

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TERRORISM EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

Wherever used in this endorsement: 1) "**Insurer**" means the insurance company which issued this policy; and 2) "**Insured**" means the Named Employer, Named Corporation, Named Sponsor, Named Organization, Named Entity, Named Insured or Insured stated in Item 1. of the Declarations.

For purposes of this endorsement and in compliance with the Terrorism Risk Insurance Act of 2002, an "act of terrorism" shall mean:

(1)    Act of Terrorism –

    (A)    Certification. – The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States of America, in concurrence with the Secretary of State, and the Attorney General of the United States of America --

        (i)    to be an act of terrorism;

        (ii)    to be a violent act or an act that is dangerous to --

            (I)    human life;
            (II)    property; or
            (III)    infrastructure;

        (III)    to have resulted in damage within the United States of America, or outside of the United States of America in the case of --

            (I)    an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States of America, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States of America), regardless of where the loss occurs, or at the premises of any United States of America mission; or

            (II)    the premises of a United States of America mission; and

        (iv)    to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States of America or to influence the policy or affect the conduct of the United States Government by coercion.

### *END 012*

<u>ENDORSEMENT#</u> *12*    (continued)

(B)    Limitation. -- No act shall be certified by the Secretary as an act of terrorism
if --
    (i)    the act is committed as part of the course of a war declared by the
Congress, except that this clause shall not apply with respect to any
coverage for workers' compensation; or
    (ii)    property and casualty insurance losses resulting from the act, in the
aggregate, do not exceed $5,000,000.

(C)    Determinations Final. -- Any certification of, or determination not to certify, an
act as an act of terrorism under this paragraph shall be final, and shall not be
subject to judicial review.

(D)    Nondelegation. -- The Secretary may not delegate or designate to any other
officer, employee, or person, any determination under this paragraph of
whether, during the effective period of the Program, an act of terrorism has
occurred.

For the purposes of this endorsement, the Insured: 1) acknowledges that it has
received a Policyholder Disclosure Statement Under Terrorism Risk Insurance Act of
2002; 2) has elected not to purchase insurance coverage for losses arising out of an
Act of Terrorism; 3) has not paid any premium for such coverage; and 4) has
affirmatively authorized the Insurer to attach this exclusion.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*END 012*
Page 2 of 2

81316 (2/03)

NU of 81127

<u>ENDORSEMENT# *13*</u>

This endorsement, effective *12:01 am      June 8, 2006*          forms a part of
policy number    *672-43-95*
Issued to *NEW CENTURY FINANCIAL CORPORATION*

by      *American International Specialty Lines Insurance Company*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*END 013*

89644 (7/05)                              Page 1 of 1

## ENDORSEMENT# 14

This endorsement, effective *12:01 am      June 8, 2006*          forms a part of
policy number  *672-43-85*
issued to   *NEW CENTURY FINANCIAL CORPORATION*

by      *American International Specialty Lines Insurance Company*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 74150 | (4/99) | Partnership Gold AISLIC DEC |
| 81285 | 01/03 | Tria Dec Disclosure Form |
| 74151 | (4/99) | Partnership Gold AISLIC POLICY T&C |
| APPMAN | | APPENDIX A Securities Claims Panel Counsel List-Please note REC |
| Mnscpt | | Partnership Goldsm |
| Mnscpt | | Controlled Reir Wording |
| Mnscpt | | Nuclear Liability Exclusion |
| Mnscpt | | Professional Errors & Omissions Exclusion |
| Mnscpt | | Amend Retention Clause |
| Mnscpt | | Exclusion (N) Deleted-Commingling of Funds Exclusion |
| Mnscpt | | Alternate Dispute Resolution Endorsement |
| Mnscpt | | Punitive Damages Coverage |
| Mnscpt | | Subrogation Clause Amended |
| Mnscpt | | Final Determination Wording |
| Mnscpt | | Subsidiary-Addition to the Definition of Subsidiary |
| 81346 | 02/03 | Terrorism Exclusion Endorsement |
| 89644 | 07/05 | Coverage Territory Endorsement (OFAC)t |
| Mnscpt | | Forms Index Endorsement |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*END 14*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

## ENDORSEMENT# 15

This endorsement, effective  12:01 am     June 8, 2006            forms a part of
policy number   672-43-85
issued to    NEW CENTURY FINANCIAL CORPORATION

by     American International Specialty Lines Insurance Company

## CHANGE OF ADDRESS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that ITEM
1(a) MAILING ADDRESS and ITEM 1(b) MAILING ADDRESS on the Declarations Page is
deleted in its entirety and replaced with the following:

3121 Michelson Drive, 6th Floor, Irvine, CA  92612


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

*END 15*

# Exhibit B

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Abramcyk Real Estate Company Inc. v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Michael M. Sachs, Marilyn A. Alexander, Donald Lange, Richard Zona*<br><br>C.D. Cal. Case No. CV07-0170 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Peter J. Anton v. New Century Financial Corp., Robert K. Cole, Brad A. Morrice, Kevin M. Cloyd, Edward F. Gotschall, Patti M. Dodge, Taj S. Bindra*<br><br>C.D. Cal. Case No. CV07-01260 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Tom Benefield v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Patti M. Dodge*<br><br>C.D. Cal. Case No. CV07-01103 DDP (JTLx) | Class action complaint for violations of the federal securities laws |

[1] Additional related cases may have been filed or may be filed in the future in the same or different courts, and such additional cases should be deemed included in the Stipulation.

RLF1-3176318-1

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Robert W. Boyd, III v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Patti M. Dodge*<br><br>C.D. Cal. Case No. CV07-0173 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Roy Brown and Kieran Monteil v. New Century Financial Corp., Brad A. Morrice, Tay S. Bindra, Patti M. Dodge, Robert K. Cole, Kevin M. Cloyd, Edward M. Gotschall*<br><br>C.D. Cal. Case No. CV07-01349- DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Vincent Buonanno v. Robert R. Cole, Brad A. Morrice, Edward F. Gotschall, Patrick J. Flanagan, Kevin M. Cloyd, Patti M. Dodge, Stergios Theologides, Joseph F. Eckroth, Jr., David Einhorn, Donald E. Lange, William J. Popejoy, Fredric J. Forster, Richard A. Zona, Marilyn A. Alexander, Harold A. Black, Ph.D, Michael M. Sachs, KPMG, LLP, New Century Financial, Inc. [sic]*<br><br>Cal. Sup. Ct. (Orange County) Case No. 07CC03899 (Choate) | Shareholder derivative complaint for (1) breach of fiduciary duty, (2) breach of fiduciary duty for insider trading and misappropriation of information, (3) reimbursement of compensation, (4) gross mismanagement, (5) abuse of control, (6) unjust enrichment and waste of corporate assets, (7) negligence |
| *Richard Damore, Rueven Lapin and Gary M. Tanner v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Edward M. Gotschall*<br><br>C.D. Cal. Case No. CV07-162- DDP (JTLx) | Class action complaint for violations of the federal securities laws |

2

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Glenn Gessford v. New Century Financial Corp.. Robert K. Cole. Brad A. Morrice, Kevin M. Cloyd, Edward P. Gotschall, Patti M. Dodge, Taj S. Bindra*<br><br>C.D. Cal. Case No. CV07-367 DDP (JTLx) | Class action compliant for violations of the federal securities laws |
| *Avi Gold v. New Century Financial Corp., Brad A. Morrice. Robert K. Cole, Patti M. Dodge, Taj S. Bindra*<br><br>C.D. Cal. Case No. CV07-00931 DDP (JTLx) | Class action compliant for violations of the federal securities laws |
| *Arnold C. Goldstein v. New Century Financial Corp., Brad A. Morrice, Patti M. Dodge, Robert K. Cole, Edward F. Gotschall*<br><br>C.D. Cal. Case No. SA CV07-464 CJC (RNBx) | Individual complaint for violations of the federal securities laws |
| *Marcia C. Goldstein v. New Century Financial Corp., Brad A. Morrice, Patti M. Dodge, Robert K. Cole, Edward F. Gotschall*<br><br>C.D. Cal. Case No. SA CV07-465 CJC (ANx) | Individual complaint for violations of the federal securities laws |
| *Matthew Good v. Robert K. Cole, William J. Popejoy, Brad A. Morrice, David Einhorn, Marilyn A. Alexander, Patti M. Dodge, Harold A. Black, Taj S. Bindra, Donald E. Lange, Edward F. Gotschall, Fredric J. Forster, Michael M. Sachs, Richard A. Zona, New Century Financial Corp.*<br><br>C. D. Cal. Case No. CV07-309 DDP (JTLx) | Verified shareholder derivative complaint for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of California Corporations Code |

3

RLF1-3176318-1

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Gerald Hanmer v. New Century Financial Corp., Robert K. Cole, Patti M. Dodge, Taj S. Bindra, Kevin M. Cloyd*<br><br>C.D. Cal. Case No. CV07-0176 DDP (JTLx) | **Class action complaint for violations of the federal securities laws** |
| *Suo-Lun Huang v. Robert K. Cole, Brad A. Morrice, Taj Bindra, Patti Dodge*<br><br>C.D. Cal. Case No. SA CV07-387 JVX (ANx) | Class action complaint for violations of the federal securities laws |
| *IRA for Kathleen M. Karcich v. New Century Financial Corp., Robert K. Cole, Patti M. Dodge, Taj S. Bindra, Kevin M. Cloyd, Brad A. Morrice, Edward F. Gotschall*<br><br>C.D. Cal. Case No. CV07-00165- DDP (JTLx) | **Class action complaint for violations of the federal securities laws** |
| *Jay Peter Kaufman Revocable Trust v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Marilyn A. Alexander, Harold A. Black, Fredric J. Forster, Edward F. Gotschall, Donald E. Lange, Michael M. Sachs, Richard A. Zona, Patti M. Dodge, David Einhorn, Bear, Stearns & Co., Inc., Morgan Stanley & Co., Inc., Stifel Nicolaus & Co., Incorporated, and Jeffries & Company, Inc.*<br><br>S.D.N.Y Case No. 07-cv-2902 SHS (FM) | Class action complaint for violations of the federal securities laws |

4

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Jay Peter Kaufman Revocable Trust v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Marilyn A. Alexander, Harold A. Black, Fredric J. Forster, Edward F. Gotschall, Donald E. Lange, Michael M. Sachs, Richard A. Zona, Patti M. Dodge, William J. Popejoy, Bear, Stearns & Co., Inc., Stifel Nicolaus & Company, Incorporated, Deutsche Banc Securities, Inc., JMP Securities LLC, Piper Jaffray & Company, and Roth Capital Partners LLC*<br><br>S.D.N.Y Case No. 07-cv-2903 GBD (KNF) | Class action complaint for violations of the federal securities laws |
| *Donald Johnson v. Robert K. Cole, Patti M. Dodge, Brad A. Morrice, Edward F. Gotschall, Harold A. Black, Fredric J. Forster, Donald E. Lange, William J. Popejoy, Michael M. Sachs, Richard A. Zona, Marilyn A. Alexander, David Einhorn, New Century Financial Corp.*<br><br>C.D. Cal. Case No. CV 07-304 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *John Keown v. Robert K. Cole, Brad A. Morrice, Patti M. Dodge, Taj S. Bindra, Edward F Gotschall, Fredric J. Forster, Michael M. Sachs, Richard A. Zona, Donald E. Lange, Harold A. Black, Marilyn A. Alexander, David Einhorn, William J. Popejoy*<br><br>Cal. Sup. Ct. (Orange County) Lead Case No. 07CC01213 (Colaw) (Case No. 07CC01215) | Shareholder derivative complaint for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of California Corporations Code |
| *Robert Klein v. Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Edward F. Gotschall, Marilyn A. Alexander, New Century Financial Corp.*<br><br>Cal. Sup. Ct. (Orange County) Case No. 07CC01213 (Colaw) | Shareholder derivative complaint for breach of fiduciary duty, waste of corporate assets, unjust enrichment and violations of California Corporations Code. |

5

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *William Kornfeld, Jr. v. Robert K. Cole, Patti M. Dodge, Brad A. Morrice, Edward F. Gotschall, Harold A. Black, Fredric J. Forster, Donald E. Lange, William J. Popejoy, Michael M. Sachs, Richard A. Zona, Marilyn A. Alexander, David Einhorn and New Century Financial Corp.* <br><br> C.D. Cal. Case No. CV07-391 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Parmanand Kumar v. Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Edward F. Gotschall. New Century Financial Corp.* <br><br> C.D. Cal. Case No. CV07-227 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *James Kwiku v. Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Edward F. Gotschall, Marilyn A. Alexander, Harold A. Black, David Einhorn, Frederic J. Forster, Donald E. Lange, Michael M. Sachs, Richard A Zona, New Century Financial Corp.* <br><br> Cal. Sup. Ct. (Orange County) Lead Case No. 07CC01213 (Colaw) (Case No. 07CC01214) | Verified shareholder derivative complaint |
| *Frank Mannella, IRA v. New Century Financial Corp., Robert K. Cole, Patti M. Dodge, Tag S. Bindra, Brad A. Morrice* <br><br> C.D. Cal. Case No. CV 07-214 DDP (JTLx) | Class action complaint for violations of Section 10(b) of the Exchange Act and Rule 10b-5; and violations of Section 20(A) of the Exchange Act |

6

RLF1-3176318-1

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Donald E. Meyer v. New Century Financial Corp., Robert K. Cole, Patti M. Dodge, Brad A. Morrice*<br><br>C.D. Cal. Case No. CV07 986 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Bruce Novotne v. New Century Financial Corp., Brad A. Morrice, Taj S. Bindra, Robert K. Cole, Patti M. Dodge*<br><br>C.D. Cal. Case No. CV07-270 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Richard Simmons v. New Century Financial Corp. Brad A. Morrice, Taj S. Bindra, Robert K. Cole, Patti M. Dodge, Edward F. Gotschall*<br><br>C.D. Cal. Case No. CV07-0311 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Norman Swanson v. Robert K. Cole, William J. Popejoy, Brad A. Morrice, David Einhorn, Marilyn A. Alexander, Patti M. Dodge, Harold A. Black, Taj S. Bindra, Donald E. Lange, Edward F. Gotschall, Fredric J. Forster, Michael M. Sachs, Richard A. Zona, New Century Financial, Corp.*<br><br>Case No. CV07-310 DDP (JTLx) | Verified shareholder derivative complaint for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of California Corporations Code |
| *Sandra Thompson v. Robert K. Cole, Brad A. Morrice, Patti M. Dodge, Taj S. Bindra, Edward F. Gotschall, Fredric J. Forster. Michael J. Sachs, Richard A. Zona, Donald E. Lange. Harold A. Black, Marilyn A. Alexander, David Einhorn, William J. Popejoy, New Century Financial Corp.* | Shareholder derivative complaint for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of California Corporations Code |

7

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| Cal. Sup. Ct. (Orange County) Lead Case No. 07CC01213 (Colaw) (Case No. 07CC01216) | |
| *Joe Verne v. New Century Financial Corp., Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Edward F. Gotschall, Bear Stearns & Co. Inc., Morgan Stanley & Co. Inc., Stifel Nicolaus & Co. Inc., Jeffries & Co. Inc.*<br><br>C.D. Cal. Case No. CV07-0320 DDP (JTLx) | Class action complaint for violation of the federal securities laws |
| *Durston Winesburg v. New Century Financial Corp., Brad A. Morrice, Taj S. Bindra, Robert K. Cole, Patti M. Dodge*<br><br>C.D. Cal. Case No. CV07-1683 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Stuart Wollman v. New Century Financial Corp., Robert K. Cole, Brad A. Morrice, Kevin M. Cloyd, Patti M. Dodge, Taj S. Bindra*<br><br>C.D. Cal. Case No. CV07-00251 DDP (JTLx) | Class action complaint for violations of the federal securities laws |
| *Paul Wood v. New Century Financial Corp., Robert K. Cole, Patti M. Dodge, Brad A. Morrice*<br><br>C.D. Cal. Case No. C07-0182 DDP (JTLx) | Class action complaint for violations of the federal securities laws |

8

RLF1-3176318-1

| CASE TITLE AND NUMBER[1] | CASE ALLEGATIONS |
|---|---|
| *Jack Yopp v. Brad A. Morrice, Robert K. Cole, Patti M. Dodge, Edward F. Gotschall, Marilyn A. Alexander, New Century Financial Corp.*<br><br>Cal. Sup. Ct. (Orange County) Lead Case No. 07CC01213 (Colaw) (Case No. 07CC01218) | Shareholder derivative complaint for breach of fiduciary duty, waste of corporate assets, unjust enrichment and violations of California Corporations Code |

Document2

9

RLF1-3176318-1