## EX. A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED MOTION TO VACATE ARBITRATION AWARD BRIEF IN SUPPORT

TO THE HONORABLE JUDGE DAVID C. GODBEY:

Following the Fifth Circuit's reversal and remand of this Court's vacatur of the arbitration award, Positive Software Solutions, Inc. ("Positive Software") requests this Court grant leave for Positive Software to amend its Motion to Vacate in order to demonstrate that the Award[1] was procured through fraud and, additionally, to re-open discovery on arbitrator non-disclosures under the new standard recently announced by the Fifth Circuit.

### A.    Positive Software's Fraud Arguments Were Timely Submitted

Positive Software originally asked the Court for leave to amend its Motion to Vacate on August 27, 2004 [filed under seal]. As Positive Software advised the Court at that time, the Amended Motion to Vacate Arbitration Award Pursuant to Federal Rule of Civil Procedure 63(b)(3) and 9 U.S.C. §10(a) contained new evidence—initially concealed by Defendants—

---

[1] Plaintiff's Second Amended Motion to Vacate Arbitration Award is attached hereto as Exhibit 1 (with Appendix thereto filed under seal).

showing that the Award should be vacated on the additional ground that the Award was procured

through the fraud of Defendants, Defendants' counsel, and the arbitrator. Positive Software's

first motion for leave to amend was submitted under Fed. R. Civ. P. 15. *See Bonar v. Dean

Witter Reynolds, Inc.*, 835 F.2d 1378, 1382 (11th Cir. 1988) (holding that an amendment to a

motion to vacate related back to the date the original motion to vacate was originally filed).

## B.    The Court Recognized Positive Software's Arguments that the Award Was Procured Through Fraud

Though the Court vacated the Award on other grounds, the Court's Vacatur of September

28, 2004 included the following comments in footnote 24:

> On August 27, 2004, Positive Software moved to amend its motion to vacate
> arbitration award to assert claims that the award should be vacated due to New
> Century's fraud, in, *inter alia*, failing to produce the November 2000 script for the
> original LoanForce database. New Century opposes the motion as untimely. Due
> to the Court's disposition of the partiality issue, the motion to amend is denied as
> moot. *If the Court were to address that motion on the merits, it likely would
> grant the motion to amend and grant the amended motion to vacate* for, *inter
> alia*, New Century's failure to produce the November 2000 script.

Thus, the Court recognized Positive Software's arguments that the Award was procured through

fraud as an additional ground for vacatur, but did not base its order vacating the Award on those

arguments because it was unnecessary to do so.

## C.    Justice Requires that Positive Software Be Permitted Leave to File its *Second Amended Motion to Vacate Arbitration Award*

As the Court expressed in its Vacatur, the only reason the Court denied Positive

Software's first motion for leave to amend its motion to vacate is that the Court granted the

motion to vacate on other grounds—that the arbitrator's failure to disclose his former relationship

with Defendants' counsel created a reasonable impression of impartiality. The nondisclosure

grounds have been mired in appeal for nearly three years, and recently the Fifth Circuit reversed

the Court's finding on those grounds under a new standard and reversed the case for further

proceedings. Thus, justice requires that the Court give Positive Software leave to amend the motion to vacate to enter into the record evidence of Defendants' and its counsels' fraud so that the Court can, once again, vacate the Award. Additionally, Positive Software requests that the record be re-opened to allow limited discovery on the contacts and relationships between the arbitrator and Defendants' counsel.

## D.    Prayer

For foregoing reasons, Positive Software respectfully requests that the Court enter an order granting leave to amend its Motion to Vacate pursuant to Fed. R. Civ. P. 15.

July 9, 2007

Respectfully submitted,



Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
SHORE CHAN BRAGALONE LLP
325 North Saint Paul Street-Suite 4450
Dallas, Texas 75201
(214) 593-9110 Telephone
(214) 593-9111 Facsimile
shore@shorechan.com
achan@shorechan.com
jkimble@shorechan.com

W. Ralph Canada
State Bar No. 03733800
Canada-Withrow, L.L.P.
1340 North White Chapel Road-Suite 120
Southlake, Texas 76092
(817) 329-2003 Telephone
(817) 329-8715 Facsimile
rcanada@canada-withrow.com

**ATTORNEYS FOR PLAINTIFF
POSITIVE SOFTWARE SOLUTIONS INC.**

## CERTIFICATE OF CONFERENCE

On Friday, July 6, 2007, Plaintiff's counsel sent an email to Defendants' counsel inquiring whether they contested Plaintiff's motion for leave to amend the motion to vacate. Having received no response, Plaintiff assumes Defendants to be opposed and presents the motion to the Court for determination.

_____
Michael W. Shore

\*    \*    \*    \*    \*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED MOTION TO VACATE ARBITRATION AWARD AND BRIEF IN SUPPORT** was served on the following counsel in the manner indicated.

### HAND-DELIVERED
Mr. Robin Hartmann
Mr. Ronald Breaux
Mr. David McCombs
Haynes & Boone LLP
901 Main Stree-Suite 3100
Dallas, Texas 75202

### HAND-DELIVERED
Mr. Barry Barnett
Ms. Ophelia Camiña
Susman Godfrey, L.L.P.
901 Main Street-Suite 4100
Dallas, Texas 75202-3775

_____July 9, 2007_____          _____
Michael W. Shore

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff's Motion for Leave to File Second Amended Motion to Vacate Arbitration Award and Brief in Support (the "Motion"). The Court considers the Motion well taken. Accordingly, the Motion is hereby GRANTED.

Signed this _____ day of July, 2007.


_____
David C. Godbey
United States District Judge

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

---

**PLAINTIFF'S SECOND AMENDED MOTION
TO VACATE ARBITRATION AWARD AND BRIEF IN SUPPORT**

---

Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
SHORE CHAN BRAGALONE LLP
325 North Saint Paul Street-Suite 4450
Dallas, Texas 75201
(214) 593-9110 Telephone
(214) 593-9111 Facsimile
shore@shorechan.com
achan@shorechan.com
jkimble@shorechan.com

W. Ralph Canada
State Bar No. 03733800
Canada-Withrow, L.L.P.
1340 North White Chapel Road-Suite 120
Southlake, Texas 76092
(817) 329-2003 Telephone
(817) 329-8715 Facsimile
rcanada@canada-withrow.com

**ATTORNEYS FOR PLAINTIFF
POSITIVE SOFTWARE SOLUTIONS INC.**

# TABLE OF CONTENTS

Page

I.      PROCEDURAL BACKGROUND ................................................................    2

II.     THE APPLICABLE STANDARDS FOR FRAUD ......................................    4

III.    THE SPECIFIC ACTS OF FRAUD.............................................................    4

      A.    THE DEFENDANTS AND THEIR COUNSEL WILLFULLY WITHHELD
          THE NOVEMBER 2000 VERSION OF THE LOANFORCE DATABASE
          SQL SOURCE CODE ............................................................................    5

      B.    THE DEFENDANTS AND THEIR COUNSEL WILLFULLY WITHHELD
          A FEBRUARY 5, 2003 LOANFORCE SUPPORT PLAN CREATED BY
          VISIONCORE CONSULTING AND OTHER MATERIAL DOCUMENTS
          RELATED TO THE PARTIES' FRAUD AND BREACH OF CONTRACT
          CLAIMS...............................................................................................    9

      C.    THE DEFENDANTS AND THEIR COUNSEL WILLFULLY WITHHELD
          EVIDENCE THAT THE LOANFORCE APPLICATION SOURCE CODE
          AND DATABASE SQL CODE RESIDED ON THE NITROGEN SERVER .......    14

      D.    THE DEFENDANTS AND THEIR COUNSEL WILLFULLY
          MISREPRESENTED NEW CENTURY'S SOFTWARE DEVELOPERS'
          ACCESS TO THE LOANFORCE APPLICATION SOURCE CODE.................    17

      E.    THE ARBITRATOR'S WILLFUL WITHHOLDING OF HIS PRIOR
          RELATIONSHIP WITH DEFENDANTS' COUNSEL WAS FRAUDULENT .......    20

IV.    CONCLUSION .........................................................................................    21

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                 <u>Page</u>

*Bonar v. Dean Witter Reynolds, Inc.,*
    835 F.2d 1378 (11th Cir. 1988).......................................................... 9

*Bradford v. Vento,*
    48 S.W.3d 749 (Tex. 2001)................................................ 20

*Commonwealth Coatings Corp. v. Continental Cas. Co.,*
    393 U.S. 145 (1968) ........................................................ 3

*Dogherra v. Safeway Stores, Inc.,*
    679 F.2d 1293 (9th Cir.) *cert. denied,* 459 U.S. 990 (1982) ........................ 4, 21

*Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas,*
    915 F.2d 1017 (5th Cir. 1990) ................................................. 4

*Harre v. A.H. Robbins,*
    750 F.2d 1501 (11th Cir. 1985) ................................................ 9

*Ins. Co. of N. Am. v. Morris,*
    981 S.W.2d 667 (Tex. 1998)................................................. 20

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas
Bumi Negara,*
    364 F.3d 274 (5th Cir. 2004) .............................................. 4

*MidAmerican Energy Co. v. Int'l Brotherhood of Electrical,
Workers Local, 499,*
    345 F.3d 616 (8th Cir. 2003)................................................ 9

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.,*
    436 F.3d 495 (5th Cir. 2006), *rev'd on reh'g en banc,*
    476 F.3d 278 (5th Cir. 2007), *and cert. denied,*
    75 USLW 3568 (U.S. Jun 11, 2007) (No. 06-1352)....................................... 1, 3

*Rozier v. Ford Motor Co.,*
    73 F.2d 1332 (5th Cir. 1978)................................................ 4, 9

*SmithKline Beecham Corp. v. Doe,*
    903 S.W.2d 347 (Tex. 1995)................................................. 20

*Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.,*
    161 F.3d 314 (5th Cir. 1998)............................................... 6, 7, 9

## STATUTES

9 U.S.C. § 10(a) ............................................................................................ 13, 16

Fed. R. Civ. P. 63(b)(3) .................................................................................. 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED MOTION
TO VACATE ARBITRATION AWARD AND BRIEF IN SUPPORT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID C. GODBEY:

Plaintiff Positive Software Solutions, Inc. ("Positive Software") requests that the Court vacate the arbitration award entered by Peter J. Shurn, III on May 5, 2004[1] (the "Award"). The Court previously vacated the Award on September 28, 2004, citing Mr. Shurn's nondisclosure of "a significant prior relationship with [Defendants'] counsel"[2] (the "Vacatur"). On January 11, 2006, the Fifth Circuit Panel of Circuit Judges Reavely, Garza, and Benavides affirmed the Vacatur.[3] But on January 17, 2007, the Fifth Circuit, *en banc*—applying a new standard—reversed the Vacatur and remanded the case to this Court for further proceedings.[4]

---

[1] Appendix to Brief in Support of Plaintiff's Motion to Vacate [filed under seal] ("Appendix") at 6491-6579.
[2] Memorandum Opinion and Order at 1 [Doc. 372].
[3] *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 436 F.3d 495 (5th Cir. 2006), *rev'd on reh'g en banc*, 476 F.3d 278 (5th Cir. 2007), *and cert. denied*, 75 USLW 3568 (U.S. Jun 11, 2007) (No. 06-1352).
[4] *Id.*

On remand, the Court should vacate the Award on all grounds Positive Software previously raised in its Motion to Vacate,[5] as well as on the ground that the Award was procured by fraud. Specifically, Positive Software asks the Court to vacate the Award because:

- The Award was procured by Defendants', Defendants' counsel's, and the Arbitrator's fraud and misconduct;

- The Arbitrator fraudulently withheld his past relationships with the Defendants' counsel as those disclosures were defined by the American Arbitration Association ("AAA");

- The Award is based upon numerous legal errors, including manifest errors and manifest disregard of the law, which severely prejudiced Positive Software's rights;

- The Award is based upon clear error in its factual and legal findings, which are also arbitrary and capricious;

- The Award is contrary to well-established and important public policy;

- The Award is contrary to Texas substantive and procedural law; and

- The Arbitrator established his clear bias and evident partiality by raising and relying upon defenses in the Award that were *never plead* and are completely unsupported by or contrary to the record.

## I.

## PROCEDURAL BACKGROUND

The Award was granted on May 5, 2004. Vacatur was entered on September 28, 2004. Though Positive Software moved for vacatur on numerous grounds, the Court relied solely on evidence that the arbitrator failed to disclose a significant prior relationship with Defendants' counsel that created a reasonable impression of partiality under the standard set out by the

---

[5] To conserve resources, Positive Software incorporates by reference herein the arguments and evidence it previously submitted in support of its request that the Court vacate the Award, including, but not limited to: (1) the Motion to Vacate Arbitration Award [Doc. 252], Brief in Support [Doc. 253], and Appendix in Support [filed under seal]; (2) the Reply Brief in Support of its Motion to Vacate [Doc. 273]; and (3) the Supplemental Brief in Support of its Motion to Vacate [Doc. 340].

Supreme Court in *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 149 (1968).[6]

Positive Software also previously filed an Amended Motion to Vacate Arbitration Award Pursuant to Federal Rule of Civil Procedure 63(b)(3) and 9 U.S.C. §10(a) and Brief in Support [filed under seal on August 27, 2004]. The Court denied leave to file that Amended Motion as moot in its Vacatur Order of September 28, 2004, but stated that "[i]f the Court were to address that motion on the merits, it likely would grant the motion to amend and grant the amended motion to vacate for, *inter alia*, New Century's failure to produce the November 2000 script."[7]

Defendants appealed the Vacatur to the Fifth Circuit, who designated Circuit Judges Reavely, Garza and Benavides as panel. In a unanimous opinion written by Judge Reavely, the Fifth Circuit panel affirmed Vacatur, "conclude[ing] that the district court properly vacated the arbitration award by reason of Shurn's failure to reveal to the parties his prior professional relationship with Susman Godfrey and Camiña."[8]    The Fifth Circuit then reheard the case *en banc*, and—in a split decision—reversed and remanded the case to this Court for further proceedings.[9] The Fifth Circuit's *en banc* decision announced a new standard for reviewing nondisclosure by an arbitrator, never before recognized or referred to by a federal court. Namely, "vacatur is only warranted upon nondisclosure that involves a significant compromising relationship."[10]

Positive Software herein reurges the additional grounds upon which it originally moved for vacature of the Award, including the fraud grounds that are set forth in detail in this amended

---

[6] *See* Vacatur at 26.

[7] *Id.* at 43. The Court did not address the numerous other grounds for a finding of fraud raised in this motion.

[8] *Positive Software Solutions, Inc.*, 436 F.3d at 504 (5th Cir. 2006), *rev'd on reh'g en banc*, 476 F.3d 278 (5th Cir. 2007), *and cert. denied*, 75 USLW 3568 (U.S. Jun 11, 2007) (No. 06-1352).

[9] *Positive Software Solutions, Inc.*, 476 F.3d at 286.

[10] *Id.*

motion. Positive Software believes the Court should vacate the award for any or all of those reasons. Additionally, Positive Software requests that the Court re-open discovery to allow Positive Software limited discovery on the new nondisclosure standard set out by the Fifth Circuit.[11]

## II.

## THE APPLICABLE STANDARDS FOR FRAUD

When vacating an arbitration award for fraud under FAA § 10(a), courts have relied upon a three part test. First, the movant must establish the fraud by clear and convincing evidence.[12] Second, the person challenging the award must show that the fraud materially related to an issue in the arbitration.[13] Third, the fraud must not have been discoverable upon the exercise of due diligence before or during the arbitration proceeding.[14] It is not necessary to establish that the result of the arbitration would have been different if the fraud had not occurred.[15] If the fraud prevented a full and fair hearing, the Award must be vacated.

## III.

## THE SPECIFIC ACTS OF FRAUD

The Award was procured through numerous fraudulent acts and omissions of Defendants, their counsel and the arbitrator, including that they:

---

[11] Positive Software will formally request additional limited discovery in a separate motion designed to address the new standard. This discovery will include the deposition of Peter J. Shurn, the deposition of Steve Susman, and a production of documents from Susman Godfrey LLP.

[12] *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990); *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.) *cert. denied*, 459 U.S. 990 (1982).

[13] *Id.*

[14] *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004).

[15] *Id* at 307; *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988); *cf. Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) (relief from judgment under FED. R. CIV. P. 63(b)(3)).

---

- Willfully withheld the November 2000 version of the LoanForce Database SQL Source Code, which shows that Defendants created the disputed tables after LoanForce was delivered;

- Willfully withheld the February 5, 2003 LoanForce Support Plan, which shows that Defendants knew LoanForce would be keyed off and disproves Defendants' claims that they reasonably relied on alleged assurances from Positive Software that the program would not be keyed off.  The evidence also demonstrates the testimony that the Defendants were taken by "complete surprise" by Positive Software's keying LoanForce off was perjurious;

- Willfully withheld LoanForce Replacement Issues and Alternatives, by Jeff Lemieux, which also shows that Defendants knew in advance that LoanForce would be keyed off and that testimony to the contrary was perjurious;

- Willfully withheld the fact that LoanForce Application source code and database SQL code resided on the Nitrogen server, and thus was available to programmers for copying, and was available for Defendants to return to Positive Software;

- Willfully misrepresented software developers access to LoanForce application source code; and

- The Arbitrator willfully withheld information required by the AAA to be disclosed, resulting in his selection.

The Court should vacate the Award for any or all of these fraudulent acts.

### A.   THE DEFENDANTS AND THEIR COUNSEL WILLFULLY WITHHELD THE NOVEMBER 2000 VERSION OF THE LOANFORCE DATABASE SQL SOURCE CODE.

Throughout the arbitration proceeding, Positive Software repeatedly requested that *all* versions of the LoanForce database SQL source code in the Defendants' possession be produced.[16]  In response to Positive Software's requests and an order from the arbitrator that all

---

[16] *See* Appendix at 1870 (order compelling the production of all documents related to LoanForce, which would necessarily include all versions of the software in the Defendants' possession); Appendix at 3218-3219 (New Century Parties' Statement of Compliance with Discovery Orders in which counsel represents that responses to requests for production calling for all documents related to LoanForce have been produced); Appendix at 5359 (November 13, 2003 letter from Ophelia Camiña to Peter J. Shurn, III stating that "the New Century Parties agree to produce Other versions of the code for the 16 items [including LoanForce]); Appendix at 4346 (November 21, 2003 e-mail from Ophelia Camiña to W. Ralph Canada, Jr. indicating that the earliest version of LoanForce available is from a February 10, 2002 back-up tape); Appendix at 4431-4432 (December 12, 2003 letter from W. Ralph Canada, Jr. to Barry Barnett requesting again the "Earliest versions of the Programs," a defined term that includes LoanForce); Appendix at 4437-4438 (December 16, 2003 letter from W. Ralph Canada, Jr. to Ophelia Camiña

---

versions of the LoanForce database in the possession of the New Century Defendants be produced, Ophelia Camiña wrote the arbitrator a letter on November 19, 2003 stating in part:

> That category of documents involves the "other versions of source code for the 16 items [one of which being LoanForce SQL code]." As explained in my letter of November 13, 2003, no "other versions" exist. [fn We believe other versions of LoanForce do exist, but they are not in our custody or control, but rather Positive's custody and control.]. Therefore, I proposed to Mr. Canada that instead, New Century produce copies of these items as they existed on a particular date.[17]

Specifically and expressly relying upon Ms. Camiña's letter stating that no earlier versions of LoanForce existed in the New Century Defendants' custody or control, the arbitrator ordered that the version Ms. Camiña represented to be the "earliest" be produced on November 26, 2003.[18]  Despite Ms. Camiña's November 19, 2003 letter and the arbitrator's Order, on December 5, 2003, Ms. Camiña stated in a letter to Positive Software's counsel that the "earliest date available for copies of the programs" was for LoanForce SQL code as it existed on "2/10/02."[19] This statement later proved to be inaccurate, and New Century Mortgage made no efforts to correct the false impression it created.

Fraud under FAA § 10(a) occurs when a party or their counsel willfully destroys or *withholds* evidence.[20]  There is no dispute regarding whether the Defendants and their counsel willfully withheld material evidence in this case.  During the preparation for the Deposition of Ophelia Camiña, it was revealed that a November 2000 version of LoanForce was "discovered" at New Century Mortgage and disclosed to Ms. Camiña and Barry Barnett on December 19,

---

requesting again the "earliest versions of the Programs ordered produced last week," a defined term that includes LoanForce).

[17] Appendix at 5337.

[18] Appendix at 5341 (arbitrator's November 21, 2003 Order on Discovery specifically referencing Ms. Camiña's November 19, 2003 letter).

[19] Appendix at 5346 n.1 (December 5, 2003 letter from Ophelia Camiña to Alfonso Garcia Chan).

[20] *Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.*, 161 F.3d 314, 319 (5th Cir. 1998) ("Fraud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence.").

2003.[21] This explicit disclosure came only *three days* after Positive Software's counsel had last requested the earliest version of the LoanForce program in the Defendants' possession.[22] Despite discovery requests and orders from the arbitrator that all versions of LoanForce be produced and a request from opposing counsel only three days before its "discovery," the November 2000 version was never produced by the New Century Defendants or their counsel.[23]

The next question for the Court is whether the fraud was materially related to an issue in the arbitration.[24] The answer to that inquiry can only be "Yes." Throughout the arbitration hearing, the Defendants claimed that Positive Software could not win its copyright claims because it could not prove whether the identical and near identical tables in the LoanForce, LoanTrack, LoanTrack-2 and mLAS databases were originally created by Positive Software. The Defendants claimed throughout the arbitration that Positive Software had failed to disprove that the disputed tables were actually created by New Century Mortgage programmers after LoanForce's original delivery.[25] Setting aside whether these arguments are legally correct, they were only possible so long as the original November 2000 version remained "lost." New Century Mortgage and its counsel ensured that it did.

Although unnecessary to vacate, the November 2000 versions absence affected the arbitration's outcome. The Award specifically cited the changes to the LoanForce database by

---

[21] Docket No. 332 (NCM-IC-191-197, Camiña Deposition Exhibit 33, attached to Plaintiff's Supplemental Appendix to Plaintiff's Motion for Contempt and Plaintiff's Second Motion for Contempt).

[22] Appendix at 4437-4438 (December 16, 2003 letter from W. Ralph Canada, Jr. to Ophelia Camiña).

[23] *See* 10(a) Appendix at 2-3, submitted herewith under seal (Transcript of August 12, 2004 Proceedings Before the Honorable David C. Godbey at 86:21-25; 87:1-21; 144:12-25; 145:9).

[24] *Trans Chemical Ltd.*, 161 F.3d at 319.

[25] *See* Appendix at 6201-6204 (New Century's Post Hearing Brief at 24-27); Appendix at 6235-6237 (New Century's Motion for Award at 7-9); Appendix at 6257 (New Century's Proposed Findings of Fact and Conclusions of Law at 13-14); Appendix at 6289-6292 (New Century's Reply to PSS's Post-Closing Brief at 5-8); Appendix at 6367-6370 (Positive Software's Response to New Century's Post-Hearing Brief and New Century's Motion for Award at 12-15).

---

New Century Mortgage employee Derong Labrie as modifications owned by New Century Mortgage.[26] The arbitrator found the absence of the LoanForce database as delivered significant:

> The version that existed on Positive Software's server in December 2002/January 2003, does not appear to have been offered into evidence at the Final Hearing, and no comparisons were made directly to that "code". Nor was the LoanForce Product as originally delivered to New Century Mortgage offered into evidence at the Final Hearing, and no comparison [sic] were made directly to the "code" of that original Product. Additionally, the differences between that original version and the version on Positive Software's server in December 2002/January 2003 were not identified at the Final Hearing.[27]

In concluding that Positive Software's copyright claim was not supported by the evidence, the Award specifically pointed out that authorship of some portions was disputed.[28] The Award also noted Positive Software's "failure" to make comparisons between the accused products and the "original" work delivered, as well as a comparison of the original work to the copyrighted work.[29] Again, Positive Software's "failures" were a direct result of the New Century Defendants' fraud. It is clear that the November 2000 version of LoanForce, the original version delivered to New Century Mortgage, was material to issues in the arbitration.[30] The

---

[26] Appendix at 6520-6521 (Award at 30-31). The arbitrator apparently chose to believe Ms. Labrie's deposition testimony over the live testimony of Ed Mandel. Had the original version of LoanForce been available for comparison, such subjective determinations would have been largely unnecessary.

[27] Appendix at 6542-6543 (Award at 52-53).

[28] *Id.* at 6567 (Award at 77).

[29] *See id.* at 6567-6572 (Award at 77-82).

[30] The delivery of every version of LoanForce was also material because comparing earlier versions of LoanForce to modified, or derived versions would have revealed the path of derivation. At the time the documents were requested, the parties had no idea that the arbitrator was going to erroneously hold that derivations belong to New Century Mortgage, a position never taken by the Defendants prior to the Award. The arbitrator expressly calls modifications to the LoanForce database *derivations* in two places in the Award. *See* Appendix at 6508 and 6509 (Award at 18 and 19: "Consequently, to the extent the back-end database was the subject of copyright protection, the Customer was granted the right to add data to the database, this is, the right to modify the database, or in other words, the right to prepare a *derivative* work – a *derivative* database – based upon the copyrighted database.") (emphases added). The Award describes two types of modifications that result in derivative works. On page 18 it describes modifications to the tables and on page 19 it concludes that simply adding data to an empty database modifies it into a derivative work. Even under the Award's manifestly erroneous legal standards, the original database would be highly material to determining the extent and nature of both types of modifications, or derivations.

---

willful failure by the Defendants and their counsel to produce the November 2000 LoanForce database deprived Positive Software of a full and fair hearing.[31]

The final requirement for vacating the Award for fraud by the Defendants and their counsel is that the fraud could not have been discovered by due diligence before or during the arbitration hearing.[32]  Despite repeated requests and arbitrator orders prior to the hearing, the documents that revealed the Defendant's willful withholding of the November 2000 LoanForce SQL code were not produced to Positive Software's counsel until April 9, 2004 as part of an 1100+ page production.[33]  The arbitration hearing ended on February 4, 2004.[34]  All briefing was completed on March 17, 2004, except the Defendants' objections to the briefing itself.[35]

The Defendants' fraudulent withholding of material evidence and then actual use of that evidence's absence as a basis to argue Positive Software had failed to prove its case of copyright infringement requires the Court to vacate the Award in its entirety.

**B.      THE DEFENDANTS AND THEIR COUNSEL WILLFULLY WITHHELD A FEBRUARY 5, 2003 LOANFORCE SUPPORT PLAN CREATED BY VISIONCORE CONSULTING AND OTHER MATERIAL DOCUMENTS RELATED TO THE PARTIES' FRAUD AND BREACH OF CONTRACT CLAIMS.**

On August 24, 2004, the Defendants produced over 36,600 computer files pursuant to this Court's Order of April 21, 2004 and Magistrate Judge Ramirez's Order of August 2, 2004.[36]  The

---

[31] *Bonar*, 835 F.2d at 1383; *Rozier*, 573 F.2d at 1339; *Harre v. A.H. Robbins*, 750 F.2d 1501, 1503 (11th Cir. 1985).

[32] *Trans Chemical Ltd.*, 161 F.3d at 319. (citing cases); *MidAmerican Energy Co. v. Int'l Brotherhood of Electrical Workers Local*, 499, 345 F.3d 616, 622 (8th Cir. 2003) (fraud must be discoverable before or during the proceeding).

[33] Docket No. 201 (April 2, 2004 Order compelling production of redacted documents).

[34] Appendix at 7142 (dated 2/4/04 and stating the proceedings concluded at 7:14 p.m.).

[35] Appendix at 6310 (New Century's Reply to PSS's Post-Closing Brief at 26, the Certificate of Service); Appendix at 6490 (Positive Software Solution, Inc.'s Response to New Century's Objections to Positive's Post Hearing Briefing at 5, Certificate of Service indicating final briefing on March 25, 2004).

[36] *See* Docket No. 224 and Docket No. 323.

production was accomplished on two hard drives.[37] A document titled "LoanForce Support Plan" was located on Drive 2.[38] The LoanForce Support Plan is a document created by VisionCore Consulting ("VisionCore") on February 5, 2003.[39] VisionCore is a company which assisted New Century Mortgage with maintaining LoanForce as well as developing the mLAS database and application software.[40] VisionCore documents work for the Defendants related in any way related to LoanForce were requested in discovery.[41] The contracts between VisionCore and both eConduit and New Century Mortgage were produced and the VisionCore/New Century Mortgage contract was offered into evidence by Positive Software.[42]

The LoanForce Support Plan was wrongfully withheld from production by New Century Mortgage, its counsel or both. The LoanForce Support Plan is material because it tends to disprove New Century Mortgage's claims for fraud. The basis for the arbitrator's finding that New Century Mortgage was defrauded by Positive Software is "that New Century Mortgage reasonably believed, and was led to believe, that it would be able to pay the license fee after the scheduled February 13, 2003 meeting."[43] The Award concludes that New Century Mortgage actually believed it was authorized to continue using LoanForce until some unknown time after February 13, 2003, and therefore actually believed no danger existed that the software would be turned off. The LoanForce Support Plan, in combination with other wrongfully withheld

---

[37] The hard drives were given Bates numbers NCM-0000059 ("Drive 1") and NCM-0000060 ("Drive 2"). The Court is being supplied with images of the hard drives as part of the 10(a) Appendix.

[38] The file name for the LoanForce Support Plan on Drive 2 is "Loan Force Support Plan.doc."

[39] The Court can see for itself the create date for the document by right clicking on the file and looking at the file's "Properties" which indicate a create date of February 5, 2003.

[40] See Appendix at 11458-11498 (June 24, 2003 Deposition of Anthony Dulkis); see also Appendix at 3149-3168 (New Century Parties' Supplemental Answers to Respondent/Counterclaimant Positive Software Solutions, Inc.'s Interrogatories, Supplemental Responses to Interrogatory Nos. 6-7 and Exhibit A).

[41] Appendix at 1507, 1511, 1538, 1542, 1570, 1577, 1592, 1607, 1634 (Examples of Requests for Production to the Defendants calling for documents related to VisionCore and/or third party contractors).

[42] Appendix at 9598-9621 (Exhibit R-752); 10(a) Appendix at 5-25 (Exhibit R-753).

[43] Appendix at 6573 (Award at 83).

documents, proves exactly the opposite – that New Century Mortgage understood it was in violation of the Software Subscription Agreement and that as a result Positive Software could lawfully cut off access to LoanForce at any time.

February 5, 2003 was the day before the 30 day deadline for New Century Mortgage to meet the demand for payment sent by Positive on January 6, 2003.[44]  Instead of making the payment, the LoanForce Support Plan indicates that VisionCore was being hired to "work around" an *expected* cut-off of the LoanForce application software.[45]

A document entitled LoanForce Replacement Issues and Alternatives (the "Lemieux Alternatives") was also discovered on Drive 2.  The file was authored by Jeff Lemieux.  It is dated January 31, 2003,[46] more than a week before Positive Software keyed off the LoanForce application software and the day after Positive Software had demanded an audit.[47]  The Lemieux Alternatives were never produced in the arbitration and contain several potentially outcome-determinative admissions.

On the issue of fraud, the Lemieux Alternatives clearly dispel any notion that New Century Mortgage was caught unaware by Positive Software's decision to key off the application software. The document admits that New Century Mortgage's plan "only works if PSS cannot elect not to renew and turn off [sic] the license key because of NCMC's non-payment breach."[48] This admission is material on two fronts. First, it establishes that as of January 31, 2003, fully a week before Positive Software keyed off the LoanForce application, New Century Mortgage was

---

[44] Appendix at 10240-10242 (Exhibit R-860, Demand for payment sent to New Century Financial by Positive Software according to the terms of the Software Subscription Agreement).
[45] 10(a) Appendix at 26-27.
[46] The file name for LoanForce Replacement Issues and Alternatives on Drive 2 is "LoanForce Replacement Issues and Alternatives.doc."
[47] Appendix at 10330-10331 (R-1440, Demand for audit dated January 30, 2003).
[48] 10(a) Appendix at 28-29.

considering that possibility and planning for it.[49]    New Century Mortgage certainly was not "surprised" by the application software key being turned off. Second, the statement admits that New Century Mortgage considered itself in breach of the Software Subscription Agreement for "non-payment" as of January 31, 2003. An admitted breach of a contract in a document addressed on that point to New Century's general counsel would certainly be material to Positive Software's claim for breach of contract for non-payment, and it certainly makes testimony from New Century that it never considered itself in breach to be potentially perjurious.

Indeed, the new evidence shows that John Norment and Frank Nese both perjured themselves during the arbitration in advancing the demonstrably false claim that New Century Mortgage was surprised when Positive Software keyed off the application software. And it is clear that the arbitrator relied upon those false claims. In the arbitrator's Order denying Positive Software's Motion for Summary Judgment on New Century Mortgage's fraud claim, the arbitrator relied on a declaration from John Norment stating that "PSS's action in turning off LoanForce took New Century Mortgage by surprise."[50]    If the Lemieux Alternatives and LoanForce Support Plan had been produced, Mr. Norment's statement that New Century Mortgage was taken by surprise would have been exposed as perjury. Not only was New Century Mortgage not surprised, it had a plan in place to deal with the contingency. During the arbitration Frank Nese testified that he was "shocked" when LoanForce stopped working on February 6.[51] Mr. Nese's claim of shock also would have been revealed as perjury had the Lemieux Alternatives and the LoanForce Support Plan been available for cross-examination, as he is named specifically in both as taking part in the preparations for the contingency he claimed

---

[49] The Lemieux Alternatives speak of a "2 day Solution" and a "5 day Solution" to the any interruption in service by Positive Software due to New Century Mortgage's "non-payment breath." 10(a) Appendix at 28-29.
[50] *See* Appendix at 3422-3432 (Memorandum and Order on PSS's Motion for Partial Summary Judgment of Fraud").
[51] *Id.* at 6658.

at the arbitration hearing "shocked" him. Mr. Nese also testified in his deposition that Positive Software's disabling of LoanForce caused a significant disruption because "we didn't anticipate this."[52] Not only did New Century Mortgage anticipate the cut-off, it planned for it.

The Lemieux Alternatives also states that the "goal" for New Century Mortgage in its dealings with Positive Software was simply to "delay as long as possible" so the new replacement systems could be finished without New Century Mortgage being forced to pay the full amount owed (and overdue) under the Software Subscription Agreement.[53] This statement directly supports Positive Software's claims in the arbitration that New Century defrauded Positive Software when it told Edward Mandel the full amount of the 2003 subscription fee would be paid by January 20, 2003 if Positive Software would agree to an update of the LoanForce application's software key.[54] The Lemieux Alternatives make clear that no intention to pay the 2003 subscription fee in full *ever* existed.

Positive Software did not receive these materials until August 24, 2004, and at that time received them as part of a electronic production containing more than 36,600 files. The arbitration hearing had long been over and no amount of diligence by Positive Software would have revealed that these material documents had wrongfully been withheld. The failure to produce these material documents was fraudulent under 9 U.S.C. § 10(a) and Fed. R. Civ. P. 63(b)(3). These materials also establish that New Century's counterclaim against Positive Software for fraud is itself fraudulent, malicious and supported only by perjured testimony.

---

[52] *See* 10(a) Appendix at 31-32 (May 21, 2003 Deposition of Frank Nese at 122:23-24).

[53] 10(a) Appendix at 28. (Lemieux Alternatives at 1).

[54] Appendix at 6887-6888 (Arb. Trans. at 1213:13-1214:3, 1216:6-14); Appendix at 5755-5758 (Positive Software's Closing Brief at 28-31).

C.    THE DEFENDANTS AND THEIR COUNSEL WILLFULLY WITHHELD
EVIDENCE THAT THE LOANFORCE APPLICATION SOURCE CODE AND
DATABASE SQL CODE RESIDED ON THE NITROGEN SERVER.

The location of the LoanForce code, application and database, was a central issue in the litigation and the subject of extensive discovery.[55] The location of LoanForce on the Defendants' computer network was critical information because once the locations were known, the persons to whom access was provided would be relatively simple to trace.

During the arbitration proceedings, the Defendants consistently swore in interrogatory responses that "The LoanForce application resided only on PC's used by the users – not on any server."[56] This effectively was a denial that any programmers for the LoanTrack, LoanTrack-2 and mLAS application software were provided access to the LoanForce application software. As a result of the Defendants' denials, the Award specifically noted: "There is not evidence, or contention, that application software was copied."[57] The statements in the interrogatory responses under oath were false and potentially constitute perjury.    In addition to the false interrogatory responses, the Defendants' counsel sent the Court a letter on April 23, 2003 stating:

New Century ... has never had access to the source code of the LoanForce application software.

New Century has no intention of ever again using LoanForce application software.

New Century will, no later than April 25 .... delete or return to PSS all LoanForce Software, including application software . . . .[58]

---

[55] Appendix at 3151 (New Century Parties' Supplemental Answers to Respondent/Counter-claimant Positive Software Solutions, Inc.'s Interrogatories, Interrogatory No. 8 at p. 3).
[56] *Id.*
[57] Appendix at 6535 (Award at 45).
[58] 10(a) Appendix at 32-33 (April 21, 2003 Letter from Barry Barnett to the Honorable David C. Godbey).

Mr. Barnett's statements were incorrect when made and remain false today. Whether he made them unwittingly or knowingly is uncertain. It is certain that his client knew its lawyer's statements to the Court were incorrect.

On August 24, 2004, the Defendants production of Drive 1 revealed the true contents of the Nitrogen server. During the arbitration proceedings, the Defendants had claimed the Nitrogen server only contained one database, RSDB database, associated with LoanTrack.[59]  Drive 1 reveals that the Nitrogen server's *today* contains 235 files across 71 directories all relating to LoanForce, including:

(1)     PowerBuilder application source code files;[60]

(2)     LoanForce screen code as well as bit maps for LoanForce icons;

(3)     Copies of the LoanForce executable application code; and

(4)     LoanForce application set up files. [61]

The presence of the LoanForce application source code on a "development" server accessed by New Century Mortgage software developers working on the LoanTrack and LoanTrack-2 application software clearly is material to the issue of whether the LoanForce application software was used in the development of those programs. Derivation and/or reverse engineering of the LoanForce application software took place. The Defendants managed to

---

[59] Appendix at 11168 (New Century Parties' Supplemental Answers to Respondent/Counter-claimant Positive Software Solutions, Inc.'s Interrogatories, Interrogatory No. 8 at p. 2 of 15). For a complete version of the same document *see* Appendix at 3149-3165.

[60] PowerBuilder source code files end with the extensions *.pdw (workspace), *.pbt (target), *.pbl (library), *.pbd (dynamic), *.dll (dynamic link libraries), and *.pbr (resource file).   See *http://www.sybase.com/detail/1%2 C6904%2C1025320%2C00.html*, and *http://www.sys-con.com/pbdj/article.cfm?id=63*, which are incorporated by reference as if fully set forth herein. Numerous LoanForce application files with these extensions were found on the two hard drives recently produced by the Defendants. A preliminary report detailing the location and nature of these files is being filed with the Court concurrent with this Amended Motion to Vacate, with a second, more detailed report to follow soon thereafter.

[61] 10(a) Appendix at 35 (The print out of the Nitrogen server directory is available for the Court in addition to the Court's ability to view the data for itself. The Nitrogen server appears on the NCM-A00032 file on Drive 1). Copies of LoanForce application software and shortcuts from workstations to servers containing LoanForce application software appear on numerous Drive 1 and Drive 2 files.

---

narrow the arbitration issues and protect the LoanTrack-2 application software from scrutiny by willfully withholding material evidence.

The application software's existence on the Nitrogen server also would have created a claim for specific performance under the Software Subscription Agreement that the application software be returned.[62] The Defendants' failure to return the application software after demand by Positive Software in February 2003 created a breach of the Software Subscription Agreement that remained hidden only because of fraudulent discovery responses and false reassurances from New Century's counsel that all application software had been "deleted or returned".

The arbitrator did not require the application code to be returned, code that even today New Century Mortgage does not claim it owns, because New Century Mortgage fraudulently stated in discovery responses and letters from counsel that the software did not exist on any servers to return. Had Positive Software prevailed on the claim for specific performance seeking return of the application software, it would have been entitled to its attorneys fees under the analysis the arbitrator used in the Award.[63] This particular set of fraudulent statements and material omissions by the Defendants literally produced an unjust and unfair outcome.

The fraud related to the Nitrogen Server was not discovered until August 24, 2004 when Positive Software's counsel was able to review the contents of Drive 1. As demonstrated above, the arbitration hearing was long over by that time. All elements for vacating the Award under 9 U.S.C. § 10(a) have been met.

---

[62] *See* Appendix at 7862, 7864 containing Exhibit R-474 (Software Subscription Agreement at ¶ 7D and ¶ 13).
[63] Appendix at 6574-6575 (Award at 84-85).

---

**D.    THE DEFENDANTS AND THEIR COUNSEL WILLFULLY MISREPRESENTED NEW CENTURY'S SOFTWARE DEVELOPERS' ACCESS TO THE LOANFORCE APPLICATION SOURCE CODE.**

Whether the Defendants made unauthorized derivative works from the LoanForce application was to a limited extent also at issue in the arbitration. For instance, Positive Software presented evidence that the LoanTrack GUIs were substantially similar to the LoanForce GUIs.[64] Moreover, Positive Software's expert testified that the LoanTrack application communicated with the LoanTrack and LoanForce databases in the same way as the LoanForce application.[65]

Before and throughout the arbitration proceedings, the Defendants and their counsel consistently claimed that New Century developers had no access to the LoanForce application source code. Defendants' counsel sent the Court a letter on April 21, 2003 expressly stating that "New Century . . . has never had access to the source code of the LoanForce application software."[66] Jeff Lemieux stated in his April 25, 2003 Declaration to the Court that "mLAS was created by eConduit personnel including programmers who had no direct access to LoanForce."[67] The Defendants' expert, Dr. Pooch, stated:

> The New Century Parties . . . testified that they did not have access to the source code for the LF Application, and I have found no evidence that any of them did have access, in the development of LoanTrack-1, LoanTrack-2, and mLAS.[68]

Further, the Defendants claimed that "[t]he code for the LoanTrack-1 GUI wasn't copied from the LoanForce GUI . . . . New Century never had access to the software or code for the LoanForce GUI."[69]

---

[64] Appendix at 7050-7052 (Arb. Trans. at 1857:3-1860:14, 1863:1-1865:14).
[65] Appendix at 7063-7064 (Arb. Trans. at 1906:5-1909:24).
[66] 10(a) Appendix at 33.
[67] 10(a) Appendix at 36 (Declaration of Jeffrey Lemieux at ¶ 3).
[68] Appendix at 10983 (Expert Report of Udo Pooch, Ph.D. at 2, ¶ 7).
[69] Appendix at 6258 (New Century's Proposed Findings of Fact and Conclusions of Law at ¶ 57).

---

Defendants' statements to the Court and the arbitrator were made to create an impression that the LoanTrack-1, LoanTrack-2, and mLAS applications were entirely different, "clean room" versions that were untainted by even the possibility of access to the LoanForce application source code. As a result, the arbitrator found that "there was no copying of the any of the *software components*" of the LoanForce application and concluded that "the accused work is not substantially similar to the copyrighted work."[70]

Positive Software has now learned that the Defendants' statements regarding access to the LoanForce application source code were false. On August 24, 2004, the Defendants' production of Drive 1 revealed that New Century's key software developers, including developers of the LoanTrack-1, LoanTrack-2, and mLAS applications, enjoyed access to the LoanForce application source code. Among the developers who had access were (1) Spring Cai, a programmer for LTKMoon, LFMoon, RESPA, and RSDB databases; (2) Ann Barbarosa, a programmer who is believed to be a technical writer for LoanTrack-1, LoanTrack-2, and other associated software; (3) Anthony Chen, a programmer for LoanTrack-1 and LoanTrack-2; (4) Austin Sheppard, a programmer for LoanTrack-1 and LoanTrack-2; (5) Bill Chan, a programmer for LoanTrack-2; (6) Doug Fala, a programmer for RESPA and RSDB databases; (7) Michael Chi, a programmer for LoanTrack-1 and LoanTrack-2; (8) Sang Lam, a developer of LoanTrack-2; and (9) Thuy Cure, the software development manager for LoanTrack-1 and LoanTrack-2.[71]

The fact that New Century's developers enjoyed unlimited access to the LoanForce application source code is material to Positive Software's claim that the Defendants' made unauthorized derivative works. By withholding this material evidence, the Defendants misled the arbitrator into believing that any similarities in the GUIs were due to New Century's design

---

[70] Appendix at 6567 (Award at 77).
[71] *See Preliminary Report on Contempt-Related Electronic Discovery Produced by Defendants* [Doc. 350].

specifications.[72] Now it is clear that the copying of the GUIs and the similarities in application programs overall were not coincidental, but the result of intense reverse engineering activities that included detailed review of the LoanForce application source code. The LoanTrack, LoanTrack-2 and mLAS developers were able to freely derive and reverse engineer the LoanForce application to create substantially similar products.

If Positive Software had known that New Century's developers had access to the LoanForce application source code, it would have asserted an additional cause of action for breach of contract, as the Software Subscription Agreement expressly prohibited reverse engineering.[73] Also, Positive Software would have reason to reconsider its decision not to pursue its cause of action for misappropriation of trade secrets, a claim that Positive Software initially asserted in its original complaint. The Defendants' withholding of evidence of the developers' access is also material to Positive Software's fraud claim because the access was made without disclosure to Positive Software, a material omission of fact. The evidence in support of the GUI derivation and copying claims would have been significantly strengthened.

The fraud related to the New Century developers' access to the LoanForce application source code was not discovered until the Defendants' recent production of Drive 1. Again, this evidence appeared too late to be presented to the arbitrator. All the elements of vacating the Award under 9 U.S.C. § 10(a) have therefore been met.

---

[72] Appendix at 6533 (Award at 43).
[73] Appendix at 7862 (Software Subscription Agreement at ¶ 7A).

E.     THE ARBITRATOR'S WILLFUL WITHHOLDING OF HIS PRIOR
       RELATIONSHIP WITH DEFENDANTS' COUNSEL WAS FRAUDULENT.

It is undisputed that the arbitrator, Peter Shurn, had a duty under AAA rules to disclose "any past or present relationship with the parties or their representatives."[74]  It is also undisputed that Mr. Shurn *affirmatively stated* that he had nothing to disclose pursuant to those AAA rules. Arbitrator Shurn failed to disclose his past relationship with Steve Susman, Ophelia Camiña, Terry Oxford, and the Susman Godfrey law firm, Defendants' trial counsel.  While the Fifth Circuit found that Federal Arbitration Act does not mandate vacatur of the Award for Mr. Shurn's nondisclosure under the new standard the Fifth Circuit announced, Mr. Shurn's affirmative statement that he had no past relationship with a party's representative pursuant to the AAA's instructions constitutes a fraud under Texas law.  Mr. Shurn's statement that he had "nothing to disclose" did not relate to his obligations under the AAA, but his instructions and obligations as stated by the AAA.

As a general rule, under Texas law a failure to disclose information constitutes fraud when there is a duty to disclose that information and the duty-bound party remains intentionally silent.[75]  Here is it clear and undisputed that Mr. Shurn had a duty to disclose his prior relationship with New Century's counsel under the AAA Rules.  Further, as Mr. Shurn *affirmatively stated* that he had *nothing to disclose*, it is clear that he not only intentionally remained silent, but affirmatively stated there was nothing to disclose.  Thus, Mr. Shurn's affirmative nondisclosure of his prior relationship with Defendants' counsel constitutes fraud under Texas law.  This fraud is yet another, independent reason the Award should be vacated.

---

[74] *See* AAA Rule R-16(a).
[75] *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995)).

## IV.

## CONCLUSION

As a result of the Award being procured by fraud, it must be vacated. The only claim upon which the Defendants "prevailed" was the fraud claim totaling a mere $11,400 in damages. That claim was irrevocably tainted by the Defendants' fraud in failing to produce the Lemieux Alternatives and the VisionCore LoanForce Support Plan as well as the perjured testimony of John Norment and Frank Nese indicating that New Century Mortgage was taken by surprise, or shocked when Positive Software keyed off the LoanForce application software. Perjury is a form of fraud under 9 U.S.C. § 10(a).[76]  The willful withholding of material evidence related to breaches of the Software Subscription Agreement, copyright infringement, the misappropriation of trade secrets, conversion and material evidence related to damages each individually and in combination deprived Positive Software of a full and fair hearing.

Positive Software asks the Court for the reasons stated previously and herein, to vacate the Award and grant Positive Software a new trial.

---

[76] *See Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982).

---

July 9, 2007

Respectfully submitted,



_____

Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
SHORE CHAN BRAGALONE LLP
325 North Saint Paul Street-Suite 4450
Dallas, Texas 75201
(214) 593-9110 Telephone
(214) 593-9111 Facsimile
shore@shorechan.com
achan@shorechan.com
jkimble@shorechan.com

W. Ralph Canada
State Bar No. 03733800
Canada-Withrow, L.L.P.
1340 North White Chapel Road-Suite 120
Southlake, Texas 76092
(817) 329-2003 Telephone
(817) 329-8715 Facsimile
rcanada@canada-withrow.com

**ATTORNEYS FOR PLAINTIFF
POSITIVE SOFTWARE SOLUTIONS INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of **PLAINTIFF'S SECOND AMENDED MOTION TO VACATE ARBITRATION AWARD AND BRIEF IN SUPPORT** was served on the following counsel in the manner indicated.

**HAND-DELIVERED**
Mr. Robin Hartmann
Mr. Ronald Breaux
Mr. David McCombs
Haynes & Boone LLP
901 Main Stree-Suite 3100
Dallas, Texas 75202

**HAND-DELIVERED**
Mr. Barry Barnett
Ms. Ophelia Camiña
Susman Godfrey, L.L.P.
901 Main Street-Suite 4100
Dallas, Texas 75202-3775

July 9, 2007

Michael W. Shore