IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware Corporation, *et al.,*[1] | Case No. 07-10416 (KJC) |
| | Jointly Administered |
| Debtors. | **Hearing Date: August 7, 2007 at 2:30 p.m.** |
| | **Related Docket No. 1946** |

**KPMG LLP'S OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULES 2004 AND 9016**

KPMG LLP ("KPMG") respectfully submits this Opposition to the Motion for an Order Authorizing the Production of Documents Pursuant to Bankruptcy Rules 2004 and 9016 filed by the Official Committee of Unsecured Creditors (the "Committee").

**INTRODUCTION**

KPMG served as the independent auditor for New Century Financial Corp. and its subsidiaries (the "Company" or "New Century") until April 27, 2007. The last audit KPMG

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporation), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

completed of New Century's annual financial statements was for New Century's 2005 fiscal year (the year ended December 31, 2005). As is relevant here, KPMG also completed reviews of New Century's interim unaudited financial statements for the quarters ended March 31, 2006, June 30, 2006, and September 30, 2006. KPMG was unable to complete its audit of the Company's 2006 annual financial statements due to a combination of factors, including the impact on the incomplete audit of the Company's February 7, 2007 announcement that it had discovered errors in its 2006 quarterly financial statements; the commencement of an independent investigation into those errors by the Audit Committee of the Board of Directors of the Company (which investigation was subsequently expanded at KPMG's request to address the Company's valuation of residual interests in securitizations in 2006 and prior periods); the commencement of regulatory investigations focused on the matters being investigated by the Audit Committee; and, ultimately, the Company's April 2, 2007 filing of a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware and its announcement that it did not anticipate needing to issue audited financial statements for 2006. KPMG resigned as New Century's auditor on April 27, 2007.

**The KPMG Engagement Letters**

The terms under which KPMG provided professional services to New Century were set forth in the engagement letters executed by KPMG and New Century. The operative engagement letter was dated September 7, 2004, and an amendment thereto was dated April 17, 2006 (collectively, the "Engagement Letters"). (See Engagement Letters, attached hereto as Appendix A.) In the Engagement Letters, KPMG agreed to audit both the consolidated financial statements prepared by New Century and the internal control over financial reporting established

and maintained by management.  KPMG also agreed to perform reviews of New Century's quarterly condensed financial statements.  However, reflecting the fundamental allocation of responsibilities between an issuer of financial statements and its auditor, New Century's management was responsible for the preparation and presentation of "the consolidated financial statements, schedules, and interim financial information and all representations contained therein."  (Id. at A8.)  Management was also responsible for "adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting" and reporting "all significant deficiencies and material weaknesses in the design or operation of such controls."  (Id.)

As is common in agreements between sophisticated parties who desire to provide for an efficient and fair process to resolve disputes that may arise between them, the Engagement Letters executed by KPMG and New Century provide for a mandatory dispute resolution process (the "Arbitration Agreement").  In particular, KPMG and New Century agreed that the sole methodology for resolving any dispute arising from KPMG's services to New Century, including disputes or claims involving entities for whose benefit the services were provided, was through alternative dispute resolution (mediation followed by arbitration if necessary), rather than in the courts.  (Id. at A9.)  KPMG and New Century further agreed that any discovery would be governed by the arbitrators upon a showing of substantial need by the party seeking such discovery.  (Id. at A18.)  The Engagement Letters thus commit the parties to a discovery process that values efficiency and avoids unnecessary waste of time and resources when resolving any dispute. As explained in more detail below, the broad discovery the Committee seeks authority to embark upon in the instant motion is fundamentally at odds with (and thus is barred by) the mandatory dispute resolution and discovery procedures that KPMG and New Century bargained

for pre-petition and to which they both remain obligated, and which Third Circuit law makes clear must be enforced by this Court.

**KPMG's Cooperation with the Examiner**

On or about June 29, 2007, the Examiner asked KPMG to agree to produce voluntarily all of its audit workpapers from 2003 through the present related to the Company without requiring a subpoena. In response, KPMG explained it was willing to cooperate with the Examiner and to produce documents, but that it wanted to preserve its rights under the Arbitration Agreement with New Century. On July 31, 2007, this Court entered an order, which KPMG did not oppose, allowing the Examiner to serve a subpoena on KPMG. The Court stated that it would be prepared to address the scope of the subpoena on August 7, 2007. At the July 31 hearing, the Court also directed the Examiner to work with KPMG concerning certain modifications to its proposed Protective Order, which the Court will consider at the August 7 hearing. The proposed Protective Order, among other things, preserves KPMG's jurisdictional arguments, including its right to compel arbitration, and places restrictions as to whom the Examiner can disclose KPMG's Confidential Information, consistent with KPMG's rights under the Arbitration Agreement. The proposed Protective Order also will make clear that KPMG agrees that the Examiner can provide information KPMG provides to the Examiner to any regulatory, law enforcement, or other government agencies, as KPMG is already fully cooperating with the United States Securities and Exchange Commission.

**The Committee's Rule 2004 Motion**

On or about July 13, 2007, the Committee asked KPMG to agree to produce voluntarily essentially every document in its possession that relates to the Company from January 1, 2001 through the present – three years further back than the Examiner has requested.

KPMG advised the Committee that it has an Arbitration Agreement with New Century that governs discovery between KPMG and the Company (and anyone standing in its shoes, such as the Committee or any other putative estate representative) regarding matters arising out of the relationship between KPMG and the Company.  KPMG also advised the Committee that it was unnecessary and duplicative to request the same documents sought by the Examiner, and to investigate the same matters being investigated by the Examiner.  Subsequently, the Committee filed the instant Motion, which asks the Court not for leave to serve a subpoena on KPMG, but rather to order KPMG to produce all documents relating to the Company from January 1, 2001 through the present.  The Committee explicitly acknowledged in its Motion that it seeks discovery from KPMG that duplicates the Examiner's document requests.  (Motion ¶ 27.)  In its Motion, the Committee completely ignored KPMG's arbitration rights and the fact that discovery is governed by the parties' agreed-upon dispute resolution procedures.

It is KPMG's right to require that any formal discovery be governed by an arbitrator consistent with the Arbitration Agreement in its Engagement Letters with New Century.  Further, the breadth of the Committee's proposed examination – which requests documents as far back as January 1, 2001 and duplicates the Examiner's requests – clearly exceeds the limits of Rule 2004 examinations.  The Committee's document requests will result in inefficiency and a waste of time and resources as they impermissibly impose tremendous burden and expense on KPMG – burden and expense that KPMG and New Century agreed to avoid in the Arbitration Agreement.  As such, the Committee's document requests reflected in the schedule annexed to its Proposed Order (the "Document Requests") are barred by the Arbitration Agreement between KPMG and New Century.

The Committee's Motion therefore should be denied.[2] To hold otherwise would entirely frustrate KPMG's bargained-for rights to a focused, efficient, less expensive, and fair dispute resolution process as well as run counter to existing Third Circuit precedent compelling this Court to give full effect to KPMG's pre-petition dispute resolution contract with New Century.

## ARGUMENT

**I.   THE COMMITTEE'S MOTION SHOULD BE DENIED BECAUSE THE PROPOSED DISCOVERY IS BARRED BY THE ARBITRATION AGREEMENT BETWEEN KPMG AND NEW CENTURY.**

   **A.   Claims Against KPMG Are Subject To An Arbitration Agreement That Bars Discovery.**

KPMG served as the Company's independent auditor from the mid-1990s until shortly after the Debtors filed their voluntary petition for relief under Chapter 11. The Engagement Letters relevant to the instant Motion contain a broad Arbitration Agreement which requires that claims related to services provided by KPMG pursuant to the Engagement Letters are subject to mandatory arbitration:

> Any dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG or any of its subcontractors or agents to the Company or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth in Appendix II, which constitute the sole methodologies for the resolution of all such disputes.

(App. A at A9.) The "Dispute Resolution Procedures" in Appendix II of the Engagement Letters provide for mediation and then, if necessary, arbitration of disputes. (Id. at A17-A18.) KPMG and New Century agreed that "[d]iscovery shall be permitted in connection with . . . arbitration

---

[2] KPMG will file Objections to the Document Requests in advance of the hearing on August 7, 2007.

only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery." (Id. at A18.)  KPMG and New Century thus agreed to avoid the expense of litigation and to have an arbitrator decide how much discovery is necessary to resolve their disputes.  KPMG and New Century further agreed "to forego litigation over such disputes in any court of competent jurisdiction" and that "[a]ll aspects of the arbitration shall be treated as confidential." (Id. at A9.)

This Court has no discretion to avoid the Arbitration Agreement between KPMG and New Century.  The Federal Arbitration Act (the "FAA") has "established a strong policy in favor of arbitration . . . and requires rigorous enforcement of arbitration agreements." In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006) (citation omitted); see also In re Olympus Healthcare Group, Inc., 352 B.R. 603, 610 (Bankr. D. Del. 2006).  The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Moreover, the courts do not have the authority to resolve disputes relating to the interpretation of arbitration agreements – those decisions are left to the sound discretion of the arbitrator.  Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., No. 06-1457, 2007 WL 1673876, at *5 (3d Cir. June 12, 2007) (citing Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 447 (2003)).

Applying the strong presumption favoring arbitration, the Third Circuit has held that the Bankruptcy Court "lacks the authority and discretion" to deny enforcement of arbitration agreements "unless the party opposing arbitration can establish congressional intent . . . to preclude waiver of judicial remedies for the statutory right at issue." Mintze, 434 F.3d at 231 (emphasis in original). Congressional intent affirmatively to bar arbitration can be established only where "the text, legislative history, or purpose of the Bankruptcy Code conflicts with the

enforcement of an arbitration clause."[3] Id. at 230 (quoting Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1156-57 (3d Cir. 1989)).  The Third Circuit limits a finding of such congressional intent to bar enforcement of arbitration agreements to situations where the underlying claim was created by "the Bankruptcy Code . . . for the benefit of the creditors of the estate."  Id.; see also Olympus Healthcare, 352 B.R. at 610.  When the underlying claim was not created by the Bankruptcy Code, "a bankruptcy court lacks the authority and discretion to deny [an arbitration agreement's] enforcement."  Mintze, 434 F.3d at 231; see also Hays, 885 F.2d at 1157.

Here, there is no question that KPMG and New Century entered into a valid contract requiring arbitration of all claims related to services provided by KPMG, and that they agreed to have discovery be governed by the arbitrators.  Any potential dispute that the Committee could have with KPMG could not arise under the Bankruptcy Code.  To the contrary, any dispute with KPMG would arise out of KPMG's pre-petition services for New Century which without question arise out of the pre-petition contract requiring arbitration.  As a result, the Court has no discretion and must enforce the Arbitration Agreement between KPMG and New Century.  See Mintze, 434 F.3d at 231.

**B.     The Arbitration Agreement Bars The Committee's Proposed Discovery.**

As with the SEC, KPMG is cooperating with the Examiner and is in the process of producing documents to the Examiner.  The Examiner, however, is fundamentally different from the Committee, whose standing is derived exclusively from New Century.  Therefore, this Court should reject any argument that the Arbitration Agreement does not apply to the Committee.

---

[3]  Courts in the Third Circuit no longer evaluate whether the claim subject to arbitration is core or non-core to determine whether they have the discretion to deny enforcement of the arbitration agreement.  Mintze, 434 F.3d at 229.

As an initial matter, the Committee bears the burden of proof to demonstrate to the Court that the Arbitration Agreement should not be enforced. Hays, 885 F.2d at 1156. The Committee did not address the Arbitration Agreement in its Motion, let alone demonstrate that the Court has discretion to deny its enforcement. Obviously, the Arbitration Agreement is enforceable against New Century, because it is a party to the Arbitration Agreement. Third Circuit law mandates that the Arbitration Agreement would likewise be enforceable against any entity, such as the Committee, that would stand in New Century's shoes as estate representative. See Hays, 885 F.2d at 1153, 1155. It is well settled that, at best, the Committee's standing is derivative of New Century's, and that it would have to seek authority from this Court in the first instance to bring any derivative claims on behalf of the estate against KPMG. See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 568 (3d Cir. 2003) ("Cybergenics II"); Plan Committee v. PricewaterhouseCoopers LLP, 335 B.R. 234, 242 (D.D.C. 2005) (court must confer derivative standing upon unsecured creditors' committee before it may pursue claims for professional negligence against debtors' auditor).

Moreover, an investigation into New Century's announced need to restate certain prior periods was performed by the Audit Subcommittee. (See Response to Limited Objection of the United States Trustee to the Debtors' Application for Order Authorizing the Retention and Employment of Heller Ehrman LLP as Special Counsel to the Audit Subcommittee Nunc Pro Tunc to the Petition Date Pursuant to Sections 327(e) and 1107(b) of the Bankruptcy Code, at 4.) And because the Examiner has now taken over this investigation and will complete any further investigation this Court approves to be necessary, the discovery sought by the Committee is duplicative and inefficient, a waste of time and resources, and therefore should not be allowed.

Any argument that the Arbitration Agreement has not yet been triggered is misplaced because KPMG's arbitration rights and the Arbitration Agreement's discovery provision are clearly enforceable as to the Committee. Permitting pre-arbitration discovery, dressed up as an investigation, circumvents the purpose of the FAA and the strong presumption favoring arbitration. See In re Daisytek, Inc., 323 B.R. 180, 188 n.8 (N.D. Tex. 2005) (arbitration clause that is essentially identical to the one at issue here afforded protection before the initiation of formal arbitration proceedings). The Third Circuit's decision that bankruptcy courts have no discretion to avoid arbitration agreements regarding disputes based on pre-petition services necessarily extends to investigations that may lead to such disputes being filed, including investigations under Rule 2004. See Mintze, 434 F.3d at 231. If it did not so extend, then the protections the parties agreed to in an arbitration agreement – including the right to have disputes resolved through arbitration with limited discovery – would be eviscerated. The Court should reject any argument that it need not give effect to the Arbitration Agreement in the context of a Rule 2004 investigation.

With respect to the Committee's Motion, this Court should follow the decision in Daisytek, the holding of which is compelled by the Third Circuit's decision in Mintze. In Daisytek, the district court reversed the bankruptcy court's order allowing a trustee to take unlimited Rule 2004 discovery of the debtors' auditor where there was an arbitration clause between the debtors and the auditor. The district court held that if the trustee were investigating a proceeding that does not derive from the Bankruptcy Code, such as a state-law accounting malpractice claim based on pre-petition conduct, "the court must give effect to the terms of any applicable arbitration clauses in the engagement agreements." Daisytek, 323 B.R. at 188. Daisytek held that the focus of whether the arbitration agreement barred the proposed discovery

was on "the underlying nature of the proceedings that could flow from the information obtained through the Rule 2004 examination." Id. at 187.  In reaching that holding, Daisytek considered itself bound by the Fifth Circuit's decision in In re National Gypsum, 118 F.3d 1056 (5th Cir. 1997), that "nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code." Daisytek, 323 B.R. at 186 (quoting National Gypsum, 118 F.3d at 1067).  Daisytek rejected the premise that the Rule 2004 examination itself is the proceeding that is the focus of this inquiry.  The court explained that "Rule 2004 is a procedural device" that allows a party in interest to take discovery, but that "[a] proceeding within the meaning of National Gypsum is more than a discovery device; it is a procedural mechanism that enables one to obtain some form of remedy or other relief," such as motions to lift the automatic stay, adversary proceedings, and claim quantification.  Id. at 187.

       The National Gypsum test is the same as the Third Circuit's Mintze test: the Third Circuit in Mintze expressly agreed with National Gypsum, which in turn relied on the Third Circuit's earlier decision in Hays, 885 F.2d 1149.  See Mintze, 434 F.3d at 230-31.  Indeed, the Third Circuit has stressed that the proper focus is whether the case raises "statutory claims that were created by the Bankruptcy Code." Id. at 231 (emphasis added).  As Rule 2004 does not involve claims, but rather is merely a procedural discovery device, Mintze requires that the focus be on the underlying claims that may be brought.  This Court is bound by Mintze (as well as Hays and National Gypsum) and therefore should hold (like the Daisytek court) that an arbitration agreement bars a Rule 2004 investigation if the underlying claims being investigated are ones to which the arbitration agreement would apply.  If the underlying dispute being

investigated would result in a potential claim that is subject to mandatory arbitration – as would be the case here – then "the court must give effect to the terms of any applicable arbitration clauses" and bar such discovery. Daisytek, 323 B.R. at 188; see also Mintze, 434 F.3d at 231.[4]

Finally, to the extent the Committee argues that it is entitled to take discovery of KPMG as part of its investigation of potential claims against parties other than KPMG, that argument should be rejected. First, the Committee's discovery is extremely broad, and clearly seeks documents that do not relate to parties other than KPMG. For example, the Document Requests call for production of the performance evaluations and professional qualifications of all KPMG engagement team members who performed services for New Century (Discovery Requests, at ¶¶ 3-4); "[a]ll draft and final versions of KPMG Defining Issues and similar internal or external communications" (id. at ¶ 13); and "[a]ll KPMG audit manuals, internal and external guidance, industry guides and/or checklists" (id. at ¶ 27).[5] Under Mintze, this Court has no discretion to void the Arbitration Agreement between KPMG and New Century by ordering KPMG to produce these documents to the Committee. 434 F.3d at 231.

Moreover, where discovery related to other parties would overlap with discovery that would be governed by the arbitration process – as it necessarily would in this case – the

---

[4] The Court should not follow In re Friedman's, Inc., 356 B.R. 779, 784 (Bankr. S.D. Ga. 2005), which permitted a Rule 2004 investigation to proceed in spite of an arbitration agreement. That case turned on the fact that the entity seeking the investigation had not yet determined what claims, if any, he would investigate. KPMG respectfully submits that Friedman's is contrary to Mintze and National Gypsum and therefore should not be followed by this Court. Friedman's is also readily distinguishable from this case, where it is clear that the Committee unequivocally seeks discovery in support of pre-petition, debtor-derived claims that can be asserted against KPMG. (See infra, pp. 12-13.) KPMG further notes that it has already been named as a defendant in a derivative lawsuit brought on behalf of nominal defendant New Century. See Buonanno v. Cole, No. 07CC03899 (Super. Ct. Orange County, CA filed March 15, 2007). Although that action is currently stayed, the adversary proceedings KPMG faces are far from hypothetical.

[5] It is highly unlikely that such discovery would be available in the context of an arbitration where discovery is limited to that to which there is "substantial need."

Court has discretion to proceed in a careful, coordinated manner to protect the party's arbitration rights and apply the federal law's strong presumption in favor of arbitration.  See Daisytek, 323 B.R. at 188 n.9.  Especially in light of KPMG's agreement to produce documents to the Examiner, as well as KPMG's cooperation with government agencies, KPMG respectfully submits that there is no basis for voiding KPMG's arbitration rights by compelling KPMG also to produce these documents to the Committee.  Accordingly, the Court should exercise its discretion against ordering KPMG to produce every document in its possession to the Committee on the pretext that they might be somehow relevant to a claim against someone else, which would contravene KPMG's bargained-for right to arbitration and discovery governed by an arbitrator, all of which are binding on New Century, the Committee, and anyone else standing in New Century's shoes.

## II. THE COMMITTEE IS NOT ENTITLED TO EQUAL ACCESS TO THE DOCUMENTS AND INFORMATION KPMG PROVIDES THE EXAMINER.

### A. The Examiner Appointment Order Does Not Address KPMG's Arbitration Rights Under Its Engagement Letters With New Century And Does Not Require Disclosure Of KPMG Documents And Information To The Committee.

The Committee will no doubt cite to the Examiner Appointment Order and the provisions therein that require cooperation among the Debtors, the Committee, and the Examiner with respect to the Investigation of the Examiner.  Of course, the rights of KPMG under its Engagement Letters with New Century were not before the Court at the May 5, 2007 hearing on the U.S. Trustee's motion for the appointment of a Chapter 11 trustee or, in the alternative, an examiner.  Moreover, if this Court needs to clarify the scope of the Examiner's cooperation mandate, the Court can and should make explicit that the Examiner's cooperation with the Committee shall not involve the disclosure of documents produced by KPMG to the Examiner, especially when such disclosure would conflict with the protections that KPMG and New

Century agreed to in the Engagement Letters – including the right to have disputes resolved through arbitration and discovery determined by an arbitrator.

      **B.    The Committee's Requests Are Beyond The Scope Of The Examiner's Investigation And Beyond The Scope Of An Appropriate Rule 2004 Examination.**

The Committee's Requests – which seek documents going back to January 1, 2001 – go far beyond the scope of the investigation this Court has authorized. In appointing the Examiner, the Court authorized an investigation into potential misstatements in New Century's consolidated financial statements for the year ended December 31, 2005, and restatements of New Century's quarterly financial statements for the first three quarters of 2006. (Examiner Appointment Order, at 2.) Thereafter, the Court ordered that "any expansion of the Examiner's investigation beyond that set out in the order directing the appointment of an examiner" requires "court approval, notice, and hearing." (Order Authorizing Employment of Kirkpatrick & Lockhart as Counsel to the Examiner (Docket No. 2049).) The Court has not authorized an investigation into potential misstatements preceding 2005. The Committee's Motion is thus far beyond the scope of any authorized investigation and should be denied.

     The Committee's Motion should also be denied because there is absolutely no basis to extend the scope of any investigation back to January 2001. The Committee's Motion seeks documents going back <u>three</u> years more than the Examiner has sought. The Committee devoted only one sentence of its Motion to explaining why such documents are necessary: "To fulfill its investigative mandate under the Bankruptcy Code, the Committee is seeking documents for the period commencing and continuing after 2001." (Motion ¶ 27.) This is plainly an insufficient basis to expand the scope of the investigation.

Although Rule 2004 investigations may be broad, "[n]evertheless, there are limits," and the examination "cannot stray into matters which are not relevant to the basic

inquiry." In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1986); see also In re New Power Co., 438 F.3d 1113, 1119 n.5 (11th Cir. 2006) (examiner should not "unnecessarily waste time and money on fruitless investigations"). The Committee's Document Requests would require KPMG to produce documents from four annual periods, 2001 through 2004, that have no bearing on the events that gave rise to New Century's 2005 misstatement or New Century's announcement that it will restate its unaudited quarterly financial statements for the first three quarters of 2006. The Court should deny the Committee's Document Requests because they exceed the scope of the investigation authorized by the Court and are beyond the scope of an appropriate investigation.

    **C.    The Committee's Proposed Examination Is Not Only Cumulative Of And Co-Extensive With The Examiner's Investigation, But Imposes Additional Costs And Burdens On KPMG.**

The Examiner is conducting an investigation that includes discovery from KPMG. KPMG is in the process of producing to the Examiner its audit workpapers for 2005 and the workpapers from its reviews for the quarters ended March 31, 2006, June 30, 2006, and September 30, 2006, and has agreed to cooperate with respect to the Examiner's informal interviews of KPMG employees. The workpapers that KPMG is producing document the procedures that KPMG performed to evaluate the consolidated financial statements that were prepared by, and that were the representations of, New Century and its management. The Examiner Appointment Order requires the Examiner to prepare and file a report, as is required by 11 U.S.C. § 1106(a)(4), within 90 days of the date of appointment (September 7, 2007) on the status of the Investigation. (Examiner Appointment Order, ¶ 5.) All parties in interest, including the Committee, "shall have the right to appear and be heard on whether the scope of the Investigation should be amended as requested by the Examiner." (Id.)

At a minimum, the Committee should not be allowed any discovery before the Examiner has had the opportunity to review the documents and information that KPMG has made available and has prepared and filed his report. The Committee cannot clearly and specifically articulate why it must conduct a concurrent examination of KPMG, at significant costs to KPMG and the estates and in contravention of KPMG's arbitration rights, let alone articulate how and why it its additional Documents Requests are reasonably necessary to its examination.

This showing is particularly critical in this case because the discovery the Committee seeks from KPMG will be extremely onerous and costly to assemble and produce at a time when the KPMG is making every effort to cooperate with the Investigation of the Examiner. (See Declaration of Kenneth C. Koch, attached hereto as Appendix B.) In response to the Examiner's motion, KPMG's technology personnel determined that approximately 392 individuals at KPMG recorded time associated with providing various professional services to New Century and its subsidiaries for the 2004 to 2006 time period. (Id.) KPMG's technology personnel estimate that the costs associated with conducting a good-faith review of KPMG's records to produce material related to New Century for the 2004 to 2006 time period from the 392 custodians could range from $1.5 million to $2.8 million. (Id.) Expanding that time period to conduct a search going back to 2001 would substantially increase the costs and efforts involved. (Id.)

KPMG bargained for the ability to minimize its exposure to discovery costs in any potential dispute with New Century. There is no basis for the Committee to impose such costs on KPMG in conflict with its bargained-for rights to avoid such costs and have an efficient and fair dispute resolution process.

## CONCLUSION

For the foregoing reasons, the Court should deny the Committee's Motion.

Dated:  August 1, 2007                  Respectfully submitted,

CAMPBELL & LEVINE, LLC

*/s/ Mark T. Hurford*
Mark T. Hurford (#3299)
800 King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900

- and –

Guy S. Neal
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
Facsimile:  (202) 736-8711

Michael C. Kelley
Jose F. Sanchez
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013-1010

Hille R. Sheppard
Jennifer Peltz
Sidley Austin LLP
One South Dearborn St.
Chicago, IL  60603

*Attorneys for Non-Party KPMG LLP*