# EXHIBIT A

AS-3.2
DB
CB11106.

**KPMG**

OCT 1 4 2004

**KPMG LLP**
Suite 2000
355 South Grand Avenue
Los Angeles, CA 90071-1568

Telephone   213 972 4000
Fax         213 622 1217
Internet    www.us.kpmg.com

|  |  |
|---|---|
| PEAT Client: | 60034561 |
| PEAT Project #: | 11045812 |
| Original: | Records Center |
| Copies: | Patrick Kinsella, EP (2) |
|  | Tara Hatanaka, EM |
|  | Celia Twidwell, EMC |
|  | Workpapers |
|  | File |

September 7, 2004

**PRIVATE**
New Century Financial Corporation
18400 Von Karman, Suite 1000
Irvine, California  92612

Attention:    Mr. Michael Sachs, Chairman of the Audit Committee
              Ms. Patti M. Dodge, Executive Vice President and Chief Financial Officer

**REVISED**

This letter will confirm our understanding of our engagement to provide professional services to
New Century Financial Corporation and subsidiaries (the Company).

**Objectives and limitations of services**

*Integrated Audit Services*

We will perform an audit of the Company's consolidated financial statements and an audit of its
internal control over financial reporting (collectively, the Integrated Audit).

Based on our Integrated Audit, we will issue our reports on:

- The consolidated financial statements of the Company as set forth in Appendix I.
- Schedules supporting such financial statements;
- Management's assessment regarding the effectiveness of the Company's internal
  control over financial reporting and the effectiveness of internal control over financial
  reporting as set forth in Appendix I.

These reports will be included in the annual report (Form 10-K) proposed to be filed by the
Company under the Securities Exchange Act of 1934.

A company's internal control over financial reporting is a process designed to provide
reasonable assurance regarding the reliability of the financial reporting and preparation of
financial statements for external purposes in accordance with U.S. generally accepted accounting
principles.  A company's internal control over financial reporting includes those policies and
procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately
and fairly reflect the transactions and dispositions of the assets of the company; (2) provide
reasonable assurance that transactions are recorded as necessary to permit preparation of

KPMG LLP, a U.S. limited liability partnership, is the U.S.
member firm of KPMG International, a Swiss cooperative.

A1

financial statements in accordance with U.S. generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the company's assets that could have a material effect on the financial statements.

The Public Company Accounting Oversight Board (PCAOB), created as a result of the Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley Act), has the authority to establish auditing, quality control, ethics, independence and other standards relating to the preparation of audit reports for issuers, as that term is defined in the Sarbanes-Oxley Act, subject to oversight by the SEC.

We have a responsibility to conduct and will conduct the:

    (a) audit of the consolidated financial statements in accordance the standards of the PCAOB (United States), with the objective of expressing an opinion as to whether the presentation of the consolidated financial statements and schedules, taken as a whole, conforms with U.S. generally accepted accounting principles.

    (b) audit of internal control over financial reporting in accordance with the standards of the PCAOB (United States), with the objective of obtaining reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects.

It should be understood that the consolidated financial statements and schedules, management's assessment of the effectiveness of internal control over financial reporting, and our reports thereon may be subject to review by the Securities and Exchange Commission (SEC) staff and to the application by them of their interpretation of the relevant rules and regulations.

Our Integrated Audit will include:

    (a) performing tests of the accounting records and such other procedures, as we consider necessary in the circumstances, to provide a reasonable basis for our opinions.

    (b) assessing the accounting principles used and significant estimates made by management, and evaluating the overall consolidated financial statement presentation.

    (c) obtaining an understanding of internal control over financial reporting, evaluating management's related assessment, testing and evaluating the design and operating effectiveness of internal control over financial reporting, and performing such other procedures as we considered necessary in the circumstances.



Our Integrated Audit:

(a) will be planned and performed to obtain reasonable, but not absolute, assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an Integrated Audit performed in accordance with the standards of the PCAOB (United States). Also, an audit is not designed to detect matters that are immaterial to the consolidated financial statements. Our Integrated Audit will be planned and performed with an objective to obtain reasonable assurance that no material weaknesses exist in internal control over financial reporting as of the Company's fiscal year end and that the consolidated financial statements are free from material misstatement.

(b) cannot provide absolute assurance of achieving financial reporting objectives because of its inherent limitations. Internal control over financial reporting is a process that involves human diligence and compliance and is subject to lapses in judgment and breakdowns resulting from human failures. Internal control over financial reporting can be circumvented by collusion or improper management override. Because of such limitations, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Our reports will be addressed to the board of directors of the Company and will be in a form that is in accordance with the published rules and regulations of the SEC and the standards of the PCAOB (United States). We cannot provide assurance that unqualified opinions will be rendered. Circumstances may arise in which it is necessary for us to modify our reports or withdraw from the engagement.

As part of our Integrated Audit, we will read the other information in your annual report (Form 10-K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, our Integrated Audit does not include the performance of procedures to corroborate such other information (including forward-looking statements).

*Quarterly Review Services*

We will review the condensed consolidated balance sheets of the Company as of March 31, June 30, and September 30, as set forth in Appendix I, and the related condensed consolidated



statements of operations, comprehensive income, stockholders' equity and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by the Company under the Securities Exchange Act of 1934. We will also review the selected quarterly financial data specified by Item 302 of Regulation S-K, which is required to be included in the annual report (Form 10-K) proposed to be filed by the Company under the Securities Exchange Act of 1934.

We have a responsibility to conduct our reviews in accordance with the provisions of the standards of the PCAOB (United States). The objective of a review of interim financial information is to provide us with a basis for communicating whether we are aware of any material modifications that should be made to such interim financial information for it to conform with U.S. generally accepted accounting principles. Our procedures will be substantially less in scope than an Integrated Audit performed in accordance with the standards of the PCAOB (United States), the objective of which is the expression of opinions regarding the financial statements taken as a whole and internal control over financial reporting. Accordingly, we will not express an opinion on the Company's interim financial information.

Our reviews will consist principally of performing analytical procedures applied to financial data and making inquiries of Company personnel responsible for financial and accounting matters. Our reviews will include obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim financial information to (a) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (b) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with U.S. generally accepted accounting principles.

A review does not contemplate tests of internal controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an Integrated Audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an Integrated Audit. Further, a review is not designed to provide assurance on internal control or to identify significant deficiencies or material weaknesses and can not be relied on to detect errors, fraud or illegal acts·

*Registration Statements and Other Offering Documents*

We understand that the consolidated financial statements and schedules, management's assessment regarding the effectiveness of internal control over financial reporting, and our written audit reports thereon, as described above, are to be included by the Company in its annual report (Form 10-K), and that in so doing, the Company will be incorporating by reference the consolidated financial statements and schedules, management's assessment regarding the effectiveness of internal control over financial reporting, and our reports thereon in previously



filed and effective Forms S-3 and S-8.  Prior to issuing our consent to the incorporation by reference in these registration statements of our reports with respect to the consolidated financial statements and schedules and internal control over financial reporting described above, we will perform procedures as required by the standards of the PCAOB (United States), including, but not limited to, reading information incorporated by reference in these registration statements and performing subsequent event procedures.

Should the Company wish to include or incorporate by reference the consolidated financial statements, management's assessment regarding the effectiveness of internal control over financial reporting, and our audit report thereon into a future filing under the Securities Act of 1933, or an exempt offering, prior to our consenting to include or incorporate by reference our reports on the consolidated financial statements and internal control over financial reporting, we would consider our consent to the inclusion of our reports and the terms thereof at that time.  We will be required to perform procedures as required by the standards of the PCAOB (United States), including, but not limited to, reading other information incorporated by reference in the registration statement or other offering document and performing subsequent event procedures. Our reading of the other information included or incorporated by reference in the offering document will consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, we will not perform procedures to corroborate such other information (including forward-looking statements).  The specific terms of our future services with respect to future filings or other offering documents will be determined at the time the services are to be performed.

*Comfort Letters*

Should a comfort letter be requested in connection with a future filing under the Securities Act of 1933, or an exempt offering, the specific terms of our services will be determined at that time. Prior to our issuance of a comfort letter, management of the Company agrees to supply us with a representation letter that will, among other things, confirm that no events have occurred that would require adjustments to (or additional disclosures in) the audited consolidated financial statements or management's assessment regarding the effectiveness of the Company's internal control over financial reporting as of December 31, 2004 referred to above and confirm the Company's responses to certain inquiries made in connection with our issuance of the comfort letter.

**Our responsibility to communicate with the Audit Committee**

In conjunction with management, who is responsible for establishing the Company's accounting policies, we will discuss our judgments of the quality and understandability, not just the acceptability, of the Company's accounting policies and disclosures, prior to the filing of our

*New Century Financial Corporation*
*September 7, 2004*
*Revised*

audit report with the SEC.   We believe verbal communication is the appropriate forum to provide open and frank dialogue.

We will report to you, in writing, the following matters prior to the filing of our audit report with the SEC:

- All significant deficiencies[1] and material weaknesses[2] identified during the Integrated Audit. If a significant deficiency or material weaknesses exists because of the oversight of the company's external financial reporting and internal control over financial reporting by the audit committee, we report such deficiency in writing to the board of directors.

- Audit adjustments arising from the Integrated Audit that could, in our judgment, either individually or in aggregate, have a significant effect on the Company's financial reporting process.  In this context, audit adjustments, whether or not recorded by the entity, are proposed corrections of the financial statements that, in our judgment, may not have been detected except through the auditing procedures performed.

- Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in aggregate.

- All relationships between KPMG LLP and its related entities and the Company and its related entities that, in our judgment, may reasonably be thought to bear on independence.

- Alternative treatments within GAAP for accounting policies and practices related to material items that have been discussed with management during the current audit period, including i) ramifications of the use of such alternative disclosures and treatments and the treatment preferred by us and ii) the process used by management in formulating particularly sensitive accounting estimates.

- Disagreements with management or other serious difficulties encountered in performance of our audit or review services.

---

[1] A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects an entity's ability to initiate, authorize, record, process, or report external financial data reliably in accordance with U.S. generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's annual or interim financial statements that is more than inconsequential will not be prevented or detected.

[2] A material weakness is a significant deficiency, or combination of significant deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financial statements will not be prevented or detected.



■ Critical accounting policies and practices applied in the consolidated financial statements and our assessment of management's disclosures regarding such policies and practices, including why certain policies and practices are or are not considered critical, and how current and anticipated future events impact those determinations.

■ Other matters required to be communicated by the standards of the PCAOB (United States).

We will also read minutes, if any, of audit committee meetings for consistency with our understanding of the communications made to you and determine that you have received copies of all material written communications between ourselves and management. We will also determine that you have been informed of i) the initial selection of, or the reasons for any change in, significant accounting policies or their application during the period under audit, ii) the methods used by management to account for significant unusual transactions, and iii) the effect of significant accounting policies in controversial or emerging areas for which there is a lack of authoritative guidance or consensus.

To the extent that they come to our attention, we will inform you and management about any material errors and any instances of fraud or illegal acts. Further, to the extent they come to our attention, we will also communicate to you fraud that involves senior management or that, in our judgment, causes a material misstatement of the financial statements and illegal acts that come to our attention, unless they are clearly inconsequential. In the case of illegal acts which, in our judgment, would have a material effect on the consolidated financial statements of the Company, we are also required to follow the procedures set forth in the Private Securities Litigation Reform Act of 1995, which under certain circumstances requires us to communicate our conclusions to the SEC.

If, during the performance of our Integrated Audit procedures, circumstances arise which make it necessary to modify our reports or withdraw from the engagement, we will communicate to you our reasons for withdrawal. Similarly, if during performance of our quarterly review services we become aware of matters that cause us to believe the interim information filed, or to be filed, with the SEC, is probably materially misstated as a result of a departure from U.S. generally accepted accounting principles, we will discuss such matters with management and, if appropriate, communicate such matters to you.

In addition, if we become aware of information that relates to the consolidated financial statements and/or management's assessment regarding the effectiveness of internal control over financial reporting after we have issued our reports or completed our interim review procedures, but which was not known to us at the date of our reports or completion of our interim review procedures, and which is of such a nature and from such a source that we would have investigated that information had it come to our attention during the course of our Integrated Audit and/or interim review procedures, we will, as soon as practicable; (1) communicate such an occurrence to you; and (2) undertake an investigation to determine whether the information is



reliable and whether the facts existed at the date of our report or completion of our interim review procedures. In conducting that investigation, we will have the full cooperation of the Company's personnel. If the subsequently discovered information is found to be of such a nature that (a) our reports or completion of our interim review procedures would have been affected if the information had been known as of the date of our reports or completion of our interim review procedures and (b) we believe that the reports or interim review procedures are currently being relied upon or are likely to be relied upon by someone who would attach importance to the information, appropriate steps will be taken to prevent further reliance on our report or interim review procedures. Such steps include appropriate disclosures by the Company of the newly discovered facts and the impact to the financial statements.

### Audit committee responsibilities

The audit committee is directly responsible for the appointment of KPMG as independent auditor, determining our compensation, and oversight of our Integrated Audit work, including resolution of disagreements between management and us regarding financial reporting. We understand that we report directly to the audit committee. The audit committee is responsible for preapproval of all audit and nonaudit services provided by us.

### Management responsibilities

The management of the Company is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles, of the consolidated financial statements, schedules, and interim financial information and all representations contained therein. Management also is responsible for identifying and ensuring that the Company complies with laws and regulations applicable to its activities, and for informing us of any known material violations of such laws and regulations. Management also is responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting to maintain the reliability of the consolidated financial statements or interim financial information and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements or interim financial information. Management is also responsible for informing us, of which it has knowledge, of all significant deficiencies and material weaknesses in the design or operation of such controls.

The management of the Company is also responsible for:

1. Accepting responsibility for the effectiveness of the Company's internal control over financial reporting;
2. Evaluating the effectiveness of the Company's internal control over financial reporting using a suitable control criteria;



3. Supporting its evaluation with sufficient evidence, including documentation; and
4. Presenting a written assessment of the effectiveness of the Company's internal control over financial reporting as of the Company's fiscal year end.

If management does not fulfill these responsibilities above, we cannot complete the Integrated Audit.

Management of the Company agrees that all records, documentation, and information we request in connection with our Integrated Audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of the Company's personnel. As required by the standards of the PCAOB (United States), we will make specific inquiries of management about the representations embodied the consolidated financial statements or interim financial information and the effectiveness of internal control over financial reporting, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the consolidated financial statements, management's assessment of internal control and the effectiveness of internal control over financial reporting.

Management is responsible for adjusting the annual consolidated financial statements and interim financial information to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being reported upon, or the interim information being reviewed, taken as a whole.

**Dispute Resolution**

Any dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG or any of its subcontractors or agents to the Company or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth in Appendix II, which constitute the sole methodologies for the resolution of all such disputes. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction. Mediation, if selected, may take place at a place to be designated by the parties. Arbitration shall take place in New York, New York. Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

Notwithstanding the agreement to such procedures, either party may seek injunctive relief to enforce its rights with respect to the use or protection of (i) its confidential or proprietary information or material or (ii) its names, trademarks, service marks or logos, solely in the courts

of the State of New York or in the courts of the United States located in the State of New York. The parties consent to the personal jurisdiction thereof and to sole venue therein only for such purposes.

**Other matters**

This letter shall serve as the Company's authorization for the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between KPMG LLP (KPMG) and the Company and between KPMG and outside specialists or other entities engaged by either KPMG or the Company. The Company acknowledges that e-mail travels over the public Internet, which is not a secure means of communication and, thus, confidentiality of the transmitted information could be compromised through no fault of KPMG. KPMG will employ commercially reasonable efforts and take appropriate precautions to protect the privacy and confidentiality of transmitted information.

Further, for purposes of the services described in this letter only, the Company hereby grants to KPMG a limited, revocable, non-exclusive, non-transferable, paid up and royalty-free license, without right of sublicense, to use all names, logos, trademarks and service marks of the Company solely for presentations or reports to the Company or for internal KPMG presentations and intranet sites.

KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this letter.

Without our prior written approval, the Company will not solicit for employment, nor will the Company hire, any current or former partner or any professional employee of KPMG LLP or any of its affiliated member firms, in a financial reporting oversight role (as defined in the SEC independence rules) if such partner or professional employee previously participated in the audit of the Company's consolidated financial statements or quarterly review procedures until the applicable "cooling off" period under the SEC independence rules has expired. That period would commence with the latest date on which the individual participated in the annual audit or quarterly review procedures and would expire upon the filing by the Company of its Form 10-K for the succeeding fiscal year.

\* \* \* \*

*Work Paper Access By Regulators and Others*

The work papers for this engagement are the property of KPMG. In the event KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for the Company in judicial or administrative proceedings to which KPMG is not a

KPMG

*New Century Financial Corporation*
*September 7, 2004*
*Revised*

party, the Company shall reimburse KPMG at standard billing rates for its professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

However, we may be requested to make certain work papers available to the PCAOB pursuant to authority given to it by law or regulation. If requested, access to such work papers will be provided under the supervision of KPMG personnel. Furthermore, upon request, we may provide photocopies of selected work papers to the PCAOB. The PCAOB may intend, or decide, to distribute the photocopies or information contained therein to others, including the SEC. We agree to communicate to you on a timely basis any requests by the PCAOB for direct contact with members of the Audit Committee.

*Additional Reports and Fees for Services*

Appendix I to this letter list the additional reports we will issue as part of this engagement and our fees for professional services to be performed per this letter.

In addition, fees for any special audit-related projects, such as research and/or consultation on special business or financial issues, will be billed separately from the audit fees for professional services set forth in Appendix I and may be subject to written arrangements supplemental to those in this letter.

*Gramm-Leach-Bliley Act*

To assist you in facilitating your ability to demonstrate compliance with the privacy requirements of Title V of the Gramm-Leach-Bliley Act, KPMG LLP agrees that the following will apply to the terms of the engagement to provide professional services to the Company as contemplated by this letter in so much as such services pertain to our access to information about the Company's customers:

(a)  As used herein, the term *Customer Information* shall mean any "nonpublic personal information" about the "customers" and "consumers, " (as those terms are defined in Title V of the Gramm-Leach-Bliley Act and the privacy regulations adopted thereunder) of the Company.

(b)  KPMG hereby agrees that, except as may be reasonably necessary in the ordinary course of business to carry out the activities to be performed by it under the engagement contemplated by this letter or as may be required by law or legal process or professional standards applicable to certified public accountants, it will not disclose any Customer Information to any third party other than our affiliates or the Company.

(c)  KPMG hereby agrees that it will not use any *Customer Information* other than to carry out the purposes for which the Company disclosed such Customer Information

KPMG

unless such other use is (i) expressly permitted by a written agreement executed by the Company, or (ii) required by law or legal process or professional standards applicable to certified public accountants.

(d)   KPMG agrees to take reasonable measures no less than those that it takes to safeguard its own confidential information, to ensure the security and confidentiality of all *Customer Information* to protect against anticipated threats or hazards to the security or integrity of such *Customer Information*, and to protect against unauthorized access to or use of such *Customer Information*.

\* \* \* \*

Pursuant to our arrangement as reflected in this letter, we will audit and report on the financial statements set forth in Appendix I for each of its subsequent fiscal years until either the audit committee or we terminate this agreement, or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the Audit Committee.

We shall be pleased to discuss this letter with you at any time.  For your convenience in confirming these arrangements, we enclose a copy of this letter.  Please sign and return it to us.

Very truly yours,

KPMG LLP

Patrick D. Kinsella
*Partner*



ACCEPTED:

**New Century Financial Corporation**

Michael Sachs
*Chairman of the Audit Committee*

Date

Patti M. Dodge
*Executive Vice President and CFO*

10/6/04

Date

**KPMG**

**Appendix I**

**Fees for Services**

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

Integrated Audit:

Audit of the consolidated balance sheets of
New Century Financial Corporation and subsidiaries
as of December 31, 2004 and 2003, the related
consolidated statements of operations, comprehensive
income, changes in stockholders' equity and cash
flows for each of the years in the three-year period
ended December 31, 2004 and review of quarterly
periods, including review of 10-Q's and 10-K.            $465,000

Audit of internal control over financial reporting:
    Our initial estimate of the fees related
    to our audit of internal control over
    financial reporting as of December 31, 2004            $200,000 – 280,000

However, we are unable to assure you that we can complete the audit of internal control over financial reporting within this estimated range due to the following:

- The Company has not yet provided us with the complete documentation of its internal control over financial reporting;

- The Company has not completed its tests of design effectiveness or operating effectiveness; and

- Management of the Company has not rendered its own assessment of internal control over financial reporting;

We will provide you updates of our estimate of fees as management provides us this information to us and, we will finalize our professional fees once we have completed our work and know the extent of actual professional hours that were expended.

Other Reports:

The reports that we will issue as part of this engagement are as follows:

| Report | Fee |
|---|---|
| ■  Issuance of USAP and HUD letters for the Year ending December 31, 2004 | $50,000 |
| ■  Audit of The Anyloan Company, Worth Funding, Inc., and NCCC for the year ended December 31, 2004 | $38,000 |
| ■  HUD electronic filings | $11,000 |
| ■  Debt covenant compliance report (NCCC) | $ 6,000 |

The fee estimate assumes that the level of operations of the Company and the assistance provided by the Company will be consistent with that of 2003.  Out-of-pocket expenses (travel, computer time, photocopying, etc.) will be billed at actual costs incurred, and not expected to exceed five percent of our fees.

Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates.  We will endeavor to notify you of any such circumstances as they are assessed.  Accounting consultation, if any, arising as a result of issues uncovered during the audit will be discussed with you in advance and your approval obtained before proceeding.

Our fees and expenses will be billed in accordance with the fee schedule set forth below, except for fees and expenses related to the audit of internal control over financial reporting which will be billed every two weeks as charges are incurred.  In the event any invoice is not timely paid as set forth herein, then upon five days prior written notice to the Company, KPMG may terminate its performance hereunder and will not be responsible for any loss, costs, or expense thereby resulting.

Our fees and expenses will be billed according to the following schedule, or as incurred for the audit of internal control over financial reporting:

| | |
|---|---|
| April 5, 2004 | $ 70,000 |
| June 14, 2004 | 30,000 |
| July 5, 2004 | 70,000 |
| August 30, 2004 | 90,000 |
| October 4, 2004 | 70,000 |
| December 6, 2004 | 50,000 |
| January 5, 2005 | 100,000 |
| February 7, 2005 | 70,000 |
| March 14, 2005 | 20,000 |

*KPMG*

Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.

KPMG

Appendix II

## Dispute Resolution Procedures

The following procedures are the sole methodologies to be used to resolve any controversy or claim ("dispute"). If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

### Mediation

Any party may request mediation of a dispute by providing a written Request for Mediation to the other party or parties. The mediator, as well as the time and place of the mediation, shall be selected by agreement of the parties. Absent any other agreement to the contrary, the parties agree to proceed in mediation using the CPR Mediation Procedures (effective April 1, 1998) issued by the Center for Public Resources, with the exception of paragraph 2 which shall not apply to any mediation conducted pursuant to this agreement. As provided in the CPR Mediation Procedures, the mediation shall be conducted as specified by the mediator and as agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

### Arbitration

Arbitration shall be used to settle the following disputes: (1) any dispute not resolved by mediation 90 days after the issuance by one of the parties of a written Request for Mediation (or, if the parties have agreed to enter or extend the mediation, for such longer period as the parties may agree) or (2) any dispute in which a party declares, more than 30 days after receipt of a written Request for Mediation, mediation to be inappropriate to resolve that dispute and initiates a Request for Arbitration. Once commenced, the arbitration will be conducted either (1) in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("CPR Arbitration Rules") as in effect on the date of the engagement letter or contract between the parties, or (2) in accordance with other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document and the CPR Arbitration Rules will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom may be designated by the parties using either the CPR Panels of Distinguished Neutrals or the

KPMG

Arbitration Rosters maintained by any United States office of the Judicial Arbitration and Mediation Service (JAMS). If the parties are unable to agree on the composition of the arbitration panel, the parties shall follow the screened selection process provided in Section B, Rules 5, 6, 7, and 8 of the CPR Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitration panel shall issue its final award in writing. The panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the CPR Arbitration Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

82
1/22/57



KPMG LLP
Suite 700
600 Anton Boulevard
Costa Mesa, CA 92626-7651

Telephone    714 850 4300
Fax          714 850 4488
Internet     www.us.kpmg.com

Ref    S:\N\N_MISC\CORRESP\L3877jd.doc

April 17, 2006

Mr. Michael Sachs, Chairman of the Audit Committee
Ms. Patti M. Dodge, Executive V.P. and C.F.O.
New Century Financial Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

Dear Mr. Sachs and Ms. Dodge:

This letter amends our engagement letter dated September 7, 2004 confirming our understanding to provide professional audit services to New Century Financial Corporation by substituting the attached Appendix I for the Appendix I originally attached to our engagement letter.

The attached Appendix I lists the services to be rendered and related fees to provide each specified service for the identified time period. Except as specified therein, all provisions of the aforementioned engagement letter remain in effect until either the audit committee or we terminate this agreement or mutually agree to the modification of its terms.

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign in the space provided and return the copy to us.

Very truly yours,

John Donovan
Partner

JD/een

Enclosure

KPMG LLP, a U.S. limited liability partnership, is the U.S.
member firm of KPMG International, a Swiss cooperative.

A19



New Century Financial Corporation

*April 17, 2006*

ACCEPTED:

**New Century Financial Corporation and Subsidiaries**

Michael Sachs
*Chairman of the Audit Committee*

4/19/06
Date

Patti M. Dodge
*Executive Vice President and CFO*

4/19/06
Date

**Appendix 1**

### Fees for Services

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

Integrated Audit:

Audit of consolidated balance sheets of
New Century Financial Corporation and subsidiaries
as of December 31, 2006 and 2005, the related
consolidated statements of income, comprehensive income,
changes in stockholders' equity and cash flows for each of the
years in the three-year period ended December 31, 2006
and audit of internal control over financial reporting
as of December 31, 2006

Quarterly review procedures:

Quarter ended March 31, 2006
Quarter ended June 30, 2006
Quarter ended September 30, 2006

$2,000,000

Other Reports:

The reports that we will issue as part of this engagement are as follows:

**Report**

* Audit report for the year ended December 31, 2006
  o New Century Mortgage Corporation (NCMC)
  o New Century Credit Corporation (CRED)
  o Home 123 Corporation
  o NC Capital Corporation (NCCC)
  o New Century Mortgage Ventures LLC
  o NC Insurance Services Inc
  o NC Warehouse Corporation
  o NCoral, LP DBA Access Warehouse Lending

- Debt covenant compliance reports  (2)
  o  NC Capital Corporation

- Issuance of USAP letter for the year ended December 31, 2006
  o  New Century Mortgage Corporation

- Issuance of HUD letters and electronic filings for the year ended December 31, 2006.
  o  New Century Mortgage Corporation
  o  New Century Credit Corporation
  o  Home 123 Corporation
  o  New Century Mortgage Ventures, LLC

We expect to also have to issue an internal control letter in accordance with SEC Regulation AB related to servicing organizations.  We will provide a separate engagement letter related to this service.

Other services that may be performed pursuant to this letter include the following which would be billed at 100% of standard rates or such rates as may be negotiated from time to time:

- Assisting management with the accumulation and presentation of information to be included in a registration statement.
- Reading and commenting on drafts of a registration statement as appropriate.
- Providing our consent to the inclusion of the audited financial statements in a registration statement.
- Providing a comfort letter to your underwriters with respect to certain financial information in a registration statement.

The fee estimate assumes that the level of operations of the Company and the assistance provided by the Company will be consistent with that of 2005.  Out-of-pocket expenses (travel, computer time, photocopying, etc.) will be billed at actual costs incurred, and not expected to exceed five percent of our fees.

Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates.  We will endeavor to notify you of any such circumstances as they are assessed.

Our fees and expenses will be billed in accordance with the fee schedule set forth below.  In the event any invoice is not timely paid as set forth herein, then upon five days prior written notice to the Company, KPMG may terminate its performance hereunder and will not be responsible for any loss, costs, or expense thereby resulting.

A22

Our fees and expenses will be billed according to the following schedule, or as incurred for the audit of internal control over financial reporting:

| Date | Amount |
|---|---|
| April 15, 2006 | $200,000 |
| May 15, 2006 | 150,000 |
| July 15, 2006 | 100,000 |
| August 15, 2006 | 250,000 |
| September 15, 2006 | 100,000 |
| October 15, 2006 | 100,000 |
| November 15, 2006 | 250,000 |
| December 15, 2006 | 100,000 |
| January 15, 2007 | 100,000 |
| February 15, 2007 | 150,000 |
| March 15, 2007 | 250,000 |
| March 31, 2007 | 250,000 |

Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.

A23