**EXHIBIT B**

OCT-22-1999  14:15   FROM  WDS DC                    TO  912123108027          P.06



UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

No. 1-90-00130

ALLIED DEPARTMENT STORES, INC.
and
FEDERATED STORES CORPORATION, et al.

Debtors

MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION
IN SUPPORT OF MOTION OF FIDELITY MANAGEMENT & RESEARCH CO.

JAMES R. DOTY
General Counsel

JACOB H. STILLMAN
Associate General Counsel

THOMAS L. RIESENBERG
Assistant General Counsel

FELICIA H. KUNG
Attorney

Securities and Exchange Commission
Washington, D.C. 20549

Of Counsel:
PAUL GONSON
Solicitor

ORIGINAL

DOCKETED
D.E.H.

3228

OCT-22-1999  14:16  FROM  WDS DC                    TO  91212310007         P.07

## TABLE OF CONTENTS

**PAGE**

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION
AND SUMMARY OF ITS POSITION . . . . . . . . . . . . . . .   1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . .   4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . .   5

A.   Persons who serve on official committees should be
     viewed as "temporary insiders" of the debtor who
     are subject to the insider trading prohibitions of
     the federal securities laws that are applicable to
     other such insiders . . . . . . . . . . . . . . .   5

B.   It is good corporate practice for entities that
     serve on official committees to implement
     appropriate preventive procedures, such as
     information blocking devices, in order to protect
     against misuse of material, nonpublic information
     and because the existence of such protective
     devices may enable them to avoid violating the
     antifraud provisions . . . . . . . . . . . . . . .   6

C.   Consistent with the requirements of the federal
     securities laws and the bankruptcy laws, an entity
     that is engaged in the trading of securities as a
     regular part of its business and that has
     implemented procedures reasonably designed to
     prevent the transmission of information obtained
     through service on an official committee is not
     precluded from serving on the committee and, at
     the same time, trading in the debtor's securities .   7

     1.   The federal securities laws should not preclude
          trading . . . . . . . . . . . . . . . . . .   7

     2.   The bankruptcy laws should also not preclude
          trading . . . . . . . . . . . . . . . . . .  13

          a.   The former Bankruptcy Act. . . . . . . . .13

               (1)  Section 249 . . . . . . . . . . .  13

               (2)  Section 212 . . . . . . . . . .  17

          b.   The present Bankruptcy Code . . . . . . .  18

OCT-22-1999  14:16    FROM  WDS DC                    TO  912123108007        P.08

3.   Trading should be permitted only by entities that
     are engaged in the trading of securities as a
     regular part of their business . . . . . . . .   21

CONCLUSION . . . . . . . . . . . . . . . . . . . .   23

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

No. 1-90-00130

In re:

    FEDERATED DEPARTMENT STORES, INC.
             and
    ALLIED STORES CORPORATION, et. al.,

             Debtors.

FILED

MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION
IN SUPPORT OF MOTION OF FIDELITY MANAGEMENT & RESEARCH CO.

### INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION AND SUMMARY OF ITS POSITION

Fidelity Management & Research Co. ("Fidelity") is a member
of the Official Bondholders' Committee (the "Committee") of
Allied Stores Corporation ("Allied").  Chapter 11 bankruptcy
proceedings for Allied and its affiliate, Federated Department
Stores, Inc. ("Federated"), are pending before this Court.
Fidelity requests an order of this Court determining that
Fidelity will not be violating its duties as a Committee member
if it trades in the securities of Allied and its affiliates
during the pendency of the Allied and Federated bankruptcy
proceedings so long as appropriate preventive procedures, such as
information blocking devices, 1/ are implemented to preclude

————————————

1/    Information blocking devices are also frequently called
    "Chinese Walls."

.OCT-22-1999  14:17   FROM  WDS DC                    TO  912123108007        P.10

- 2 -

misuse of nonpublic information obtained through service on the
Committee.   The United States Trustee in Allied's Chapter 11
bankruptcy proceeding has stated to members of the Committee that
trading in the securities of the debtor and its related entities
would constitute a breach of their fiduciary obligations as
Committee members.

The Securities and Exchange Commission, which acts as an
adviser to the courts in bankruptcy reorganization cases pursuant
to Section 1109(a) of the Bankruptcy Code, 11 U.S.C. 1109(a),
submits this memorandum because it believes that the absolute
trading bar urged by the U.S. Trustee is not required by the
bankruptcy laws or the federal securities laws and would likely
deprive the Official Bondholders' Committee of the expertise that
the Committee members could otherwise provide.   The U.S.
Trustee's position would discourage multi-service financial
institutions and other entities that trade securities as a
regular part of their business from serving on these committees.
Since such entities have a substantial financial interest in the
outcome of the bankruptcy proceeding and can thus be expected to
devote significant time and resources to the official committee's
activities, such a result would be contrary to the best interests
of public investors.

At the outset, the Commission believes it is important to
stress that persons who serve on official committees should be
viewed as "temporary insiders" of the debtor, see Dirks v. SEC,
463 U.S. 646, 655 n. 14 (1983), who are subject to the

- 3 -

proscriptions against illegal insider trading that are applicable
to other such insiders.  In addition, it should be noted that
entities that serve as such temporary insiders, like Fidelity in
this case, have found that it is good corporate practice to
implement appropriate preventive procedures, such as information
blocking devices, as a means of preventing misuse of nonpublic
information and of avoiding liability under the federal
securities laws.  The Commission has in recent years encouraged
this development.

     As to the more specific question presented in this case, the
Commission believes that, consistent with the requirements of the
federal securities laws and the bankruptcy laws, an entity that
is engaged in the trading of securities as a regular part of its
business and that has implemented procedures reasonably designed
to prevent the transmission to its trading personnel of
information obtained through service on an official committee is
not precluded from serving on the committee and, at the same
time, trading in the debtor's securities.  Entities such as
investment advisers, broker-dealers, pension funds, banks, or
insurance companies have, in some recent bankruptcies, been among
the larger creditors.  Such institutions have skills and
expertise that are likely to be extremely valuable to the
committee.  There is no legal impediment to permitting the
service of such entities on official committees.

- 4 -

## STATEMENT OF THE CASE

Pending before this Court are bankruptcy proceedings for
Allied and Federated.  Allied owns 50% of Federated Holdings,
Inc., which wholly owns Federated.  In addition, Allied's parent,
Federated Stores, Inc., directly or indirectly owns all of the
stock of Ralph's Grocery Stores, Inc. ("Ralph's").  Approximately
16.2% of Ralph's stock is owned directly by Allied.  Allied,
Federated and Ralph's are all issuers of publicly traded high-
yield bonds.  As part of the reorganization proceedings, official
committees for both Allied and Federated were appointed.

On March 5, 1990, the U.S. Trustee sent a letter to an
official Federated bondholders' committee stating that members of
that committee are precluded from trading in the securities of
Federated or its affiliates.  In his letter, the U.S. Trustee
stated that "continued trading in the securities of the Debtors
and their related entities would constitute a breach of your
fiduciary obligations as committee members. . . .  The above
trading restrictions shall be in effect until the date a plan of
reorganization has been formally approved by the Court, and
regardless as to whether your service on the committee has been
terminated, [sic] earlier."  The members of the Allied Committee
have been informed by the U.S. Trustee that, in his view, the
same trading prohibitions would apply to them.

On January 3, 1991, Fidelity moved that this Court enter an
order determining that Fidelity will not be violating its duties

- 5 -

as a Committee member by trading in the securities of Allied,
Federated or Ralph's.

ARGUMENT

A.    Persons who serve on official committees should be
      viewed as "temporary insiders" of the debtor who are
      subject to the insider trading prohibitions of the
      federal securities laws that are applicable to other
      such insiders.

Under Section 10(b) of the Securities Exchange Act of 1934
and Rule 10b-5 thereunder, an insider having material, nonpublic
information about his company must disclose the information or
abstain from trading in order to avoid violating those
provisions.  See, e.g., SEC v. Texas Gulf Sulphur Co., 401 F.2d
833 (2d Cir. 1968) (en banc), cert. denied, 394 U.S. 976 (1969);
Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d
228 (2d Cir. 1974).  In the bankruptcy context, the members of an
official committee are properly viewed as "temporary insiders" of
the debtor, Dirks, 463 U.S. at 655, n. 14, that is, persons who,
like "an underwriter, accountant, lawyer, or consultant working
for the corporation," have entered into a "special confidential
relationship in the conduct of the business of the enterprise and
are given access to information solely for corporate purposes."
Id.  Such persons are subject to the same insider trading
restrictions as true insiders such as corporate directors.  See
U.S. v. Carpenter, 791 F.2d 1024, 1027-29 (2d Cir. 1986), aff'd,
108 S. Ct. 316 (1987); SEC v. Ingram, 694 F. Supp. 1437, 1439-40
(C.D. Cal. 1988); SEC v. Tome, 638 F. Supp. 596, 616-17 (S.D.N.Y.
1986), aff'd, 833 F. 2d 1086 (2d Cir. 1987), cert. denied, 108 S.

- 6 -

Ct. 1751 (1988).  Thus, official committee members who trade
while in possession of material, nonpublic information about the
debtor obtained from serving on the committee violate the
antifraud provisions of the federal securities laws.

      B.    It is good corporate practice for entities that serve
            on official committees to implement appropriate
            preventive procedures, such as information blocking
            devices, in order to protect against misuse of
            material, nonpublic information and because the
            existence of such protective devices may enable them to
            <u>avoid violating the antifraud provisions.</u>

A means of protecting against the misuse of material,
nonpublic information obtained by entities is to ensure that such
information is not transmitted to persons within the entity who
are responsible for making trading decisions.  Information
blocking devices are well-established means of preventing the
transmission of such information, and it is good corporate
practice for entities which serve on official committees to
implement blocking devices in order to protect against the misuse
of information.  Such devices have the practical and prophylactic
effect of preventing information from being disseminated within
entities except on a "need to know" basis. 2/

In addition, under the Insider Trading Securities Fraud
Enforcement Act of 1988 (ITSFEA), such devices are mandated for
broker-dealers and investment advisers.  Section 15(f) of the

---

2/    <u>See, e.g., In re Merrill Lynch, Pierce, Fenner & Smith,
    Inc.</u>, 43 S.E.C. 933 (1968).  <u>See generally</u> Levine, Gardiner,
    and Swanson, <u>Multiservice Securities Firms: Coping With
    Conflicts in a Tender Offer Context</u>, Wake Forest L. Rev. 41,
    58-66 (1988); and Varn, <u>The Multi-Service Securities Firm
    and the Chinese Wall: A New Look in the Light of the Federal
    Securities Code</u>, 63 Neb. L. Rev. 197, 211-16 (1984).

- 7 -

Securities Exchange Act, 15 U.S.C. 78g(f), and 204A of the
Investment Advisers Act of 1940, 15 U.S.C.A. 80b-4a (West Supp.
1990), which were added by ITSFEA, provide that every registered
broker or dealer and every investment adviser subject to § 204 of
the Investment Advisers Act must "establish, maintain, and
enforce written policies and procedures reasonably designed,"
taking into account the nature of the business involved, to
prevent the misuse of material, nonpublic information.

Blocking devices may also provide a defense to actions
brought under the antifraud provisions.  The particular
characteristics of that defense, and their application to this
situation, are discussed in the following section.

    c.    Consistent with the requirements of the federal
securities laws and the bankruptcy laws, an entity that
is engaged in the trading of securities as a regular
part of its business and that has implemented
procedures reasonably designed to prevent the
transmission of information obtained through service on
an official committee is not precluded from serving on
the committee and, at the same time, trading in the
<u>debtor's securities.</u>

    1.    The federal securities laws should not preclude
trading.

As noted previously, members of official committees would
violate the federal securities laws if they trade in securities
of the debtor while in possession of material, nonpublic
information about the debtor obtained through service on the
committee.  This should not, however, altogether preclude trading
in the debtor's securities by committee members.  We believe that
entities that engage in the trading of securities as a regular
part of their business can serve on official committees and

- 8 -

simultaneously trade without violating the antifraud provisions
where, through the implementation of preventive procedures such
as an information blocking device, the trading personnel do not
possess nonpublic information obtained from the bankruptcy
committee.

An entity, by engaging in multiple activities, may subject
itself to insider trading liability in several different
situations.  In the classic case, the investment banking
department of a firm may acquire material, nonpublic information
about a company at the same time that the broker-dealer
department of the firm is recommending or executing customer
transactions in the securities of that company based on public
information that is inconsistent with the confidential
information held by the investment banking department.  In this
situation, the firm must reconcile its duty to its investment
banking client with its duty to its retail customers.  As an
agent of the investment banking client, the firm has the duty to
preserve the confidentiality of the material, nonpublic
information that it acquired through its investment banking
relationship. 3/  At the same time, however, the firm is

_____

3/    See Cotton v. Merrill Lynch. Pierce. Fenner & Smith. Inc.,
      699 F. Supp. 251, 256-57 (N.D. Okla. 1988).  See also
      RESTATEMENT (SECOND) OF AGENCY § 395 (1958):  "Unless
      otherwise agreed, an agent is subject to a duty to the
      principal not to use or communicate information
      confidentially given him by the principal or acquired by him
      during the course of or on account of his agency. . . ."
      This obligation continues even after the formal agency
      relationship between the parties ends.  See RESTATEMENT
      (SECOND) OF AGENCY, § 396(b).  See also Levine, Multiservice
                                                 (continued...)

- 9 -

performing services for its retail customers, and, at least when
it makes trade recommendations, must reveal to those customers
any material information it possesses which is inconsistent with
the recommendation. 4/  A breach of that duty is actionable,
under the so-called "shingle theory," for violation of Rule 10b-
5.  See, e.g., Hanly v. SEC, 415 F.2d 589 (2d Cir. 1969).

Information blocking devices and similar procedures may
provide a defense to the liabilities stemming from these
conflicts.  The Commission has formalized the use of blocking
devices as a defense to liability under Rule 14e-3, 17 C.F.R.
240.14e-3.  In 1980, the Commission adopted Rule 14e-3, which
mandates a "disclose or abstain from trading duty" for any person
who obtains inside information about a tender offer from either
the offeror or the target company, or from either of their
officers, directors or employees.  Since the Rule's objective is
to prevent the actual misuse of nonpublic information, the Rule
provides an exception from this duty for entities that can show
that the individuals making the investment decision are not privy
to the inside information and that the entity has implemented

---

3/(...continued)
     Securities Firms: Coping With Conflicts in a Tender Offer
     Context, 23 Wake Forest L. Rev. at 53.

4/   See RESTATEMENT (SECOND) OF AGENCY § 381 (1958); see also
     Varn, The Multi-Service Securities Firm and the Chinese
     Wall: A New Look in the Light of the Federal Securities
     Code, 63 Neb. L. Rev. at 197-211.  Some firms avoid this
     conflict by informing their retail customers that the firm
     will not disclose nonpublic information obtained from the
     firm's investment banking clients.

- 10 -

policies and procedures, reasonable under the circumstances, to
ensure that the securities laws would not be violated. 5/

Although the Commission has not codified the use of
preventive procedures as a means to avoid securities law
liability except in Rule 14e-3, the same legal principles extend
to actions under Section 10(b) of the Securities Exchange Act and
Rule 10b-5 thereunder.  See Statement of David S. Ruder,
Chairman, Securities and Exchange Commission, Before the

---

5/    Rule 14e-3(b) states:

> A person other than a natural person shall
> not violate paragraph (a) of this section if
> such person shows that:
>
>> (1)  The individual(s) making the
>> investment decision on behalf of
>> such person to purchase or sell any
>> security described in paragraph (a)
>> of this section or to cause any
>> such security to be purchased or
>> sold by or on behalf of others did
>> not know the material, nonpublic
>> information;  and
>>
>> (2)  Such person had implemented
>> one or a combination of policies
>> and procedures, reasonable under
>> the circumstances, taking into
>> consideration the nature of the
>> person's business, to ensure that
>> individual(s) making investment
>> decision(s) would not violate
>> paragraph (a), which policies and
>> procedures may include, but are not
>> limited to, (i) those which
>> restrict any purchase, sale and
>> causing any purchase and sale of
>> any such security or (ii) those
>> which prevent such individual(s)
>> from knowing such information.

See Securities Act Release No. 6239, [1980 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 82,646 at 83,460 (Sept. 4, 1980).

- 11 -

Subcommittee on Securities of the Senate Banking, Housing and
Urban Affairs Committee, Concerning the Commission's Revised
Proposal to Define Insider Trading (Dec. 15, 1987); Letter from
Chairman John S.R. Shad to Honorable Timothy E. Wirth (June 29,
1983), reprinted in H.R. Rep. No. 355, 98th Cong., 1st Sess. 28
(1983).  See also Koppers v. American Express, 669 F. Supp. 1413,
1415 (W.D. Pa. 1988) (reprinting letter to the court from the
Commission's General Counsel stating that the Commission
"believes that violations of the federal securities laws stemming
from these conflicts can be avoided through the use of well-
established preventive policies and procedures, such as Chinese
Walls, restricted lists and watch lists."). 6/

---

6/   See also Brief filed by the Commission in Slade v. Shearson,
     Hammill & Co., Inc., 517 F.2d 398 (2d Cir. 1974), remanding
     [1973-74 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 94,329
     (S.D.N.Y. 1974) (brief supporting the use of information
     blocking devices in brokerage firms if the persons who
     engage in securities transactions for customers are thereby
     effectively isolated from any inside information that the
     firm may receive as an investment banker); Doty and Powers,
     Chinese Walls: The Transformation of a Good Business
     Practice, 26 Am. Crim. L. Rev. 155 (1988) (advocating
     Chinese Wall procedures as good business practice for
     investment firms and specifying elements of an effective
     Chinese Wall); and see Levine, Multiservice Securities
     Firms: Coping With Conflicts in a Tender Offer Context, 23
     Wake Forest L. Rev. at 58-59 (stating that although there
     are no cases directly addressing the issue, "it is fairly
     clear that an effective Chinese Wall is a defense for a
     multiservice firm in an action charging the firm with
     insider trading violations of Rule 10b-5 or Rule 14e-3").
     But see Pitt and Groskaufmanis, Minimizing Corporate Civil
     and Criminal Liability: A Second Look at Corporate Codes of
     Conduct, 78 Geo. L.J. 1559, 1630 (1990) (noting that courts
     have expressed "concern and reluctance over" the Chinese
     Wall defense).

- 12 -

An information blocking device defense to liability for
insider trading is also provided under ITSFEA.  Section 21A(a) of
the Securities Exchange Act, 15 U.S.C. 78u-1(a), which was added
by ITSFEA, provides for the imposition of civil penalties on
persons who "control" a person who engages in illegal insider
trading.   Section 21A, 15 U.S.C. 78u-1(b)(1)(B), however,
provides that in order to obtain such penalties the Commission
must show that at least one of two situations existed.   One of
these is that the controlling person "knowingly or recklessly
failed to establish, maintain, or enforce any policy or procedure
required under section 15(f) of [the Exchange Act], 15 U.S.C.
78g(f), or section 204A of the Investment Advisers Act of 1940,
15 U.S.C.A. 80b-4a, [7/] and such failure substantially
contributed to or permitted the occurrence of the act or acts
constituting the violation." 8/

The Commission, through its advocacy of blocking device
procedures, has essentially urged or promulgated a blocking
device defense to actions alleging certain types of wrongdoing,
i.e., breach of duties to customers and insider trading.   The
Commission has taken this position because of the policy in favor
of permitting financial institutions to engage in more than one

---

7/    See supra pp. 6-7.

8/    The alternative basis for obtaining civil penalties from a
      controlling person is, under Section 21A(b)(1)(A), 15 U.S.C.
      78u-1(b)(1)(A), that the controlling person "knew or
      recklessly disregarded the fact that such controlled person
      was likely to engage in the act or acts constituting the
      violation and failed to take appropriate steps to prevent
      such act or acts before they occurred."

- 13 -

type of business activity, i.e., that multi-service financial
institutions continue to function.  In bankruptcy reorganization
cases, there exists a potential conflict between an official
committee member's fiduciary duty to its beneficiary creditors
not to profit from the material, nonpublic information it obtains
from its service on the committee and, on the other hand, the
member's fiduciary duty to its own clients to manage their
investments in accordance with the available information as well
as its duty of disclosure to those with whom it trades.

In the Commission's view, blocking device principles should
be extended to relieve this conflict since, as in the other
situations, there exists a strong policy rationale in favor of
allowing certain financial institutions to trade while serving on
official committees.  Entities such as investment advisers,
brokerage firms, banks, pension funds, or insurance companies
have, in some recent bankruptcies, been among the largest
creditors.  Such institutions have skills and expertise that are
likely to be useful to the committee.  In addition, as the
largest creditors of the debtor, they are likely to devote
substantial time and resources to the official committee's
activities.

    2.    The bankruptcy laws should also not preclude
        trading.

        a.    The former Bankruptcy Act

            (1)  Section 249

As to the bankruptcy laws, it is well established that
members of official committees are fiduciaries to the creditors

- 14 -

they represent. 9/  Section 249 of the former Bankruptcy Act (11
U.S.C. 649, repealed) provided that fiduciaries would be denied
compensation for services rendered in the bankruptcy proceeding
if they engaged in any trading in the debtor's securities. 10/
The provision related only to compensation and to expense
reimbursement, and none of the cases under the provision dealt
with the question whether, if the fiduciary were willing to
sacrifice compensation and reimbursement, he could trade in the
debtor's securities.  Nevertheless, case law under Section 249
emphasized the strong policy against conflicts of interest

---

9/    See Woods v. City National Bank and Trust Co. of Chicago,
      312 U.S. 262, 268-69 (1941);  In re Continental Investment
      Corp., 637 F.2d 8, 10 (1st Cir. 1980);  In re Cosgrove-
      Meehan Coal Corp., 136 F.2d 3, 5 (3d Cir. 1943), cert.
      denied, 320 U.S. 777;  In re Midland United Co., 64 F. Supp.
      399, 417 (D. Del. 1946), aff'd, 159 F.2d 340 (3d Cir. 1947);
      In re Central States Electric Corp., 112 F. Supp. 281, 287
      (D. Va. 1953), cert. denied sub nom Henis v. Egan, 346 U.S.
      899.

10/   Section 249 provided:

           Any persons seeking compensation for services
      rendered or reimbursement for costs and expenses
      incurred in a proceeding under this chapter shall
      file with the court a statement under oath showing
      the claims against, or stock of, the debtor, if
      any, in which a beneficial interest, direct or
      indirect, has been acquired or transferred by him
      or for his account, after the commencement of such
      proceeding.  No compensation or reimbursement
      shall be allowed to any committee or attorney, or
      other person acting in the proceedings in a
      representative or fiduciary capacity, who at any
      time after assuming to act in such capacity has
      purchased or sold such claims or stock, or by whom
      or for whose account such claims or stock have,
      without the prior consent or subsequent approval
      of the judge, been otherwise acquired or
      transferred.

OCT-22-1999  14:21    FROM  WDS DC                    TO  912123108007         P.23

- 15 -

between committee members and other creditors.  As stated in In
re Los Angeles Lumber Products, 37 F. Supp. 708 (S.D. Cal. 1941),
"[e]quity has long subjected to the closest scrutiny any act of a
fiduciary which contained even the germ of a conflict between the
interests of the beneficiaries and the self-interest of the
fiduciary."  Id. at 711.  Even the lack of fraud or unfairness in
the result would not create an exception to the absolute bar. 11/
As the Supreme Court stated in Wolf v. Weinstein, 372 U.S. 633
(1963), "[i]n light of the seriousness of the abuses which the
statute was designed to prevent, it has been thought that to
allow any such exception or dispensation would frustrate the
manifest intent of Congress to impose an effective prophylactic
rule."  372 U.S. at 655. 12/

---

11/ See Woods v. City National Bank and Trust Co. of Chicago,
312 U.S. 262, 268 (1941); see also In re New York, New
Haven and Hartford Railroad Co., 567 F.2d 166, 177 (2d Cir.
1977), cert. denied, 98 S. Ct. 120 (1977) ("Congress chose,
however, to single out insider trading as a form of
disloyalty particularly to be discouraged, even in cases of
little or no actual harm.").

12/ There are cases in which Section 249 was not interpreted so
rigidly.  For instance, in In re Midland United Company, 64
F. Supp. 399 (D. Del. 1946), the court allowed compensation
to members of an official committee who belonged to
brokerage houses that dealt to a small extent in the
securities of the debtor's subsidiaries and affiliates.  The
court stated that in general a fiduciary dealing in such
securities should not be compensated under Section 249
because the fiduciary would place himself in a position of
conflict.  For instance, he might be able to impede the
reorganization of the debtor by foreclosing on the assets of
the subsidiaries.  The court noted that in this case the
trading was for the benefit of the fiduciaries' customers,
not for the fiduciaries' own account, and the fiduciaries
did not inspire the trading.  Id. at 415-17.  In essence,
the court seemed to suggest that the financial remuneration
                                                  (continued...)

- 16 -

There is, however, no case law discussing the ramifications
of blocking devices under Section 249 or in this context
generally.  In one case a court implicitly accepted the concept
of a blocking device when it allowed compensation under Section
249 to an attorney to a debenture bondholders' committee.  In _In
re Philadelphia & Reading Coal & Iron Co._, 61 F. Supp. 120 (E.D.
Pa. 1945), the attorney's wife had traded in the securities of
the debtor during the reorganization.  The issue was raised as to
whether the attorney should be denied compensation because
trading by the wife was arguably the same as trading by the
husband.  The court concluded that because the attorney had never
apprised his wife of any inside information obtained from the
committee and was unaware of his wife's purchases, he should not
be denied compensation.  _Id_. at 128.  The court seemed implicitly
to conclude that a satisfactory _de facto_ blocking device had been
implemented to insulate the wife from inside information.

---

12/(...continued)
      that the brokerage firms would receive from trading in the
      securities of the debtor's subsidiaries and affiliates on
      behalf of other parties would not be sufficient to establish
      a conflicting interest.  In another decision, _In re Central
      States Electric Corporation_, 112 F. Supp. 281 (E.D. Va.
      1953), the court concluded that the attorneys for a
      bankruptcy reorganization committee that represented the
      debtor's shareholders were not precluded by Section 249 from
      receiving compensation even though they directly, or
      indirectly through their families, traded in the securities
      of the debtor's subsidiaries.  In reaching this conclusion,
      the court interpreted Section 249 as granting the court
      discretion to regulate compensation with respect to
      subsidiaries.  It allowed compensation in this case because
      neither the represented shareholders nor the debtor's estate
      had been prejudiced by the transactions.  _Id_. at 287.

- 17 -

(2)   Section 212

An additional provision of the former Act, Section 212 (11 U.S.C. 612, repealed), also has some bearing on this issue.  It reflected the general principle that fiduciaries should not profit because of their position.  Under this section, the courts had the discretionary power to review the circumstances surrounding a fiduciary's acquisition of claims or securities, and to limit the fiduciary's recovery to the amounts paid for such claims or securities. 13/  However, the proscriptions against fiduciaries under this section were limited.  For instance, Section 212 did not compel sanctions against fiduciaries who traded but, rather, gave the courts discretionary power to limit claims against the estate. 14/.  Moreover, Section 212 did not provide a sanction against a fiduciary who bought low and sold high, collecting a profit from third parties instead of

---

13/   Section 212 provided:

> The judge may examine and disregard any provision
> of a deposit agreement, proxy, power or warrant of
> attorney, trust mortgage, trust indenture, or deed
> of trust, or committee or other authorization, by
> the terms of which an agent, attorney, indenture
> trustee, or committee purports to represent any
> creditor or stockholder, may enforce an accounting
> thereunder, may restrain the exercise of any power
> which he finds to be unfair or not consistent with
> public policy and <u>may limit any claim or stock
> acquired by such person or committee in
> contemplation or in the course of the proceeding
> under this chapter to the actual consideration
> paid therefor.</u>

(Emphasis added.)

14/   See In re Continental Investment Corp., 637 F.2d 8, 11 (1st Cir., 1980).

- 18 -

from the estate under a reorganization plan.  While the court in
such a situation could deduct the profits from distributions on
any claims that the fiduciary may have retained against the
estate, see In re Philadelphia & Western Ry. Co., 64 F. Supp.
738, 741 (E.D. Pa. 1946), the Act did not provide a remedy if the
fiduciary profited from the trading and then sold all of his
claims against the estate.  Section 212 essentially did not
protect the party from whom the fiduciary purchased or to whom he
sold.

b.    The present Bankruptcy Code

Even if there had been case law under Sections 212 and 249
dealing with the precise question raised here -- that is, the use
of information blocking devices to provide an exception to a
proscription on trading by committee members -- we do not believe
that such case law would be clearly applicable today, since
neither section was carried over into the current Bankruptcy
Code.  The legislative history on this matter is unclear as to
Congress' intent, but nothing suggests that Congress intended the
result urged by the U. S. Trustee in this case.

The Senate bill that was first proposed incorporated Section
249 into a new proposed Section 330(b).  15/  That section,

_____

15/   Proposed Section 330(b) stated:

> [N]o compensation or reimbursement shall be
> allowed to any committee or attorney, or
> other person acting in the case in a
> representative or fiduciary capacity, who at
> any time after assuming to act in such
> capacity has purchased or sold claims or

(continued...)

- 19 -

however, was omitted from the final bill that became the
Bankruptcy Code.  Very little explanation was given for this
omission other than a statement by Senator DeConcini that the
section was "deleted as unnecessary, as the limitations contained
therein are covered by section 328(c) of H.R. 8200." 16/
However, an analysis of Section 328(c) of the new Code, 11 U.S.C.
328(c), indicates that Section 328(c) differs in certain respects
from Section 249.  Section 328(c) 17/ authorizes denial of

──────────────

15/(...continued)
        stock, or by whom or for whose account such
        claims or stock have, without the prior
        consent or subsequent approval of the court,
        been otherwise acquired or transferred.

    S. 2266, 95th Cong., 1st Sess. (1977).

    The Senate Report discussing Section 330(b) made clear that,
    in the Senate's view, Section 249 prohibited committee
    members from trading in the debtor's securities.  It stated:

        Subsection (b) reenacts section 249 of
        Chapter X of the Bankruptcy Act (11 U.S.C.
        649).  It is a codification of equitable
        principles designed to prevent fiduciaries in
        the case from engaging in the specified
        transactions since they are in a position to
        gain inside information or to shape or
        influence the course of the reorganization.
        (Citation omitted.)  The statutory bar of
        compensation and reimbursement is based on
        the principle that such transactions involve
        conflicts of interest. . . .

16/  124 Congressional Record S 17406 (Oct. 6, 1978).

17/  Section 328(c) provides:

        Except as provided in section 327(c), 327(e),
        or 1107(b) of this title, the court may deny
        allowance of compensation for services and
        reimbursement of expenses of a professional
        person employed under section 327 or 1103 of
                                    (continued...)

- 20 -

compensation to professionals who are not disinterested, but
unlike Section 249, it does not apply to members of official or
unofficial committees.  Also, while Section 249 absolutely
prohibited compensation if the person traded in claims or equity
securities of the debtor, Section 328(c) is discretionary with
the court.

One possible -- and the most likely -- explanation for the
omission of the prohibitions cited in Section 249 is that
Congress intended to give more flexibility for interpretation of
the fiduciary duty that is owed by members of official
committees.  In general, the bankruptcy court is not constrained
by statute, but can look to its general equitable powers to
restrict fiduciary trading.  See, e.g., American United Mutual
Life Insurance Co. v. City of Avon Park, 311 U.S. 138, 146 (1940)
(a bankruptcy court's powers are "not dependent on express
statutory provisions").  In light of the recognized equitable
powers of bankruptcy courts and the Code's silence regarding the
fiduciary duties of official committee members, it is arguable
that Congress intended to allow a less restrictive interpretation
of fiduciary duties under the new Code.  The legislative history
of the current Code also suggests that, in drafting the Code,

---

17/ (...continued)
          this title if, at any time during such
          professional person's employment under
          section 327 or 1103 of this title, such
          professional person is not a disinterested
          person, or represents or holds an interest
          adverse to the interest of the estate with
          respect to the matter on which such
          professional person is employed.

- 21 -

Congress may have taken into consideration the sophistication of
the bankruptcy bar today, as well as recent developments in the
securities laws.  For instance, in the House Report on the bill
that was ultimately enacted as the current Code, there is a
discussion about why the proposed bill made the appointment of a
trustee in a Chapter 11 reorganization case discretionary.  The
Report states:  "Reorganization law and practice has changed
substantially in the past 40 years, however, and the absolute
necessity for a trustee in every case has ceased.  The serious
abuses of the 1930's have largely been cured by the adoption of
the securities laws, and their vigorous enforcement by the
Securities and Exchange Commission."  H.R. Rep. No. 595, 95th
Cong., 2nd Sess. 233, reprinted in 1978 U.S. Code Cong. 5 Ad.
News 5963, 6192 (1978).

> 3.    Trading should be permitted only by entities that
> are engaged in the trading of securities as a
> regular part of their business.

The Commission does not urge that the Court hold that all
entities be permitted to trade in the securities of the debtor
while serving on an official committee.  Information blocking
devices are not fool-proof, and therefore an absolute bar to
trading would be a more effective means of preventing the misuse
of material, nonpublic information.  Also, there are arguments
rooted in bankruptcy law that no trading should be allowed by
committee members.  The Commission therefore believes that
trading by committee members should only be permitted if there
exists a significant policy rationale in favor of allowing

- 22 -

trading.  An "information blocking device exception" should only
be available to firms that engage in the trading of securities in
their regular course of business.  Such entities -- such as
investment advisers, banks, broker-dealers, pension funds, and
insurance companies -- have the type of expertise which is
valuable to official committees.  In addition, such entities
traditionally have considerable experience with the
implementation of blocking devices. 18/  Moreover, it is unfair
to force such an entity to make a choice between serving on a
committee and continuing to engage in its regular business; such
a dilemma is not faced by entities that do not regularly engage
in securities trading.

As a final point, the Commission urges this Court to require
the entity to file a copy of its blocking device procedure with
the bankruptcy court prior to trading.  Such written notice would
likely serve as a deterrent to illegal insider trading and would
require that the entity take its obligations in this area
seriously. 19/

---

18/  See, e.g., Securities Act Release No. 6239, 20 SEC Dkt.
     1241, 1252 (Sept. 4, 1980) (in promulgating Rule 14e-3, the
     Commission stated that it "understands that policies and
     procedures to prevent the use of material, nonpublic
     information relating to a tender offer as well as other
     types of information are widely used by multiservice
     financial institutions."). See also Broker-Dealer Policies
     and Procedures Designed to Segment the Flow and Prevent the
     Misuse of Material Nonpublic Information, [1989-90 Transfer
     Binder] Fed. Sec. L. Rep. (CCH) ¶ 84,520 (March 1990).

19/  We note that we are merely urging a filing requirement; we
     are not suggesting that the bankruptcy court review the
     adequacy of the blocking device procedures, or that prior
     court approval is necessary.

- 23 -

## CONCLUSION

For the foregoing reasons, the Commission urges this Court to hold that an entity that satisfies two requirements -- that it is engaged in the trading of securities in its regular course of business, and that it has implemented preventive policies and procedures, such as a blocking device, reasonably designed to prevent the transmission to its trading personnel of material, nonpublic information about the debtor obtained through the entity's membership on the official committee -- is not precluded from serving on the committee and, at the same time, trading in the debtor's securities.

Respectfully submitted,

JAMES R. DOTY
General Counsel

JACOB H. STILLMAN
Associate General Counsel

THOMAS L. RIESENBERG
Assistant General Counsel

FELICIA H. KUNG
Attorney

Of Counsel
  PAUL GONSON
  Solicitor

Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C.  20549

January 18, 1991