IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

### DECLARATION OF HOLLY F. ETLIN IN SUPPORT OF
### CHAPTER 11 PETITION AND REQUEST FOR FIRST DAY RELIEF

I, Holly F. Etlin, hereby declare:

1. I am a Managing Director of AlixPartners LLP. I am currently employed by New Century Warehouse Corporation (the "Debtor") to evaluate and implement strategic and tactical options through the bankruptcy process.

2. I submit this Declaration in connection with the voluntary chapter 11 petition and first-day motions of the Debtor in the above-captioned chapter 11 case. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant first-day motion or application. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me at the

---

[1] The debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

Debtor's operations, upon information supplied to me by the Debtor's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to the Debtor's operations, financial condition and related business issues. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtor.

3. The Debtor has requested various types of relief in "first-day" motions (collectively, the "First Day Motions") in order to minimize the adverse effects of the commencement of its chapter 11 case. This Declaration sets forth the relevant facts in support of each First Day Motion filed by the Debtor concurrently herewith. I believe that a critical and necessary element in successfully liquidating the Debtor is the approval of the Debtor's First Day Motions. The factual and background support for each First Day Motion is set forth below.

A. **Background**

4. New Century Warehouse Corporation ("New Century Warehouse"), a company wholly owned by New Century TRS Holdings, Inc. ("New Century TRS"), financed residential mortgage loans originated by a network of mortgage originators and other smaller financial institutions. New Century Warehouse, doing business as "Access Lending", provided financing to these loan originators that was, in turn, used to fund the loans provided to individual borrowers who were customers of the loan originators. New Century Warehouse, in turn, obtained its financing from three warehouse lenders who entered into various receivables purchase agreements, credit agreements and repurchase agreements (collectively, the "Warehouse Loan Facilities").

5. New Century Warehouse operated largely independently of its parent, New Century TRS Holdings, Inc. and its other affiliates, which filed chapter 11 petitions on April 2, 2007 (the "April Debtors"). However, the April Debtors' financial difficulties triggered

cross-defaults under New Century Warehouse's Warehouse Loan Facilities. One of these Warehouse Lenders, Goldman Sachs Mortgage Company ("Goldman") declared an event of default under a Master Repurchase Agreement dated as of February 15, 2006, as amended (the "Goldman-Access Lending Warehouse Loan Agreement"). On March 12, 2007, Goldman purported to credit the market value of the mortgage loans that were subject to the Goldman-Access Lending Warehouse Loan Agreement.

6. New Century Warehouse's other Warehouse Lenders were willing to work with it prior to and after the April 2nd petition date. New Century Warehouse entered into forbearance agreements[2] with Galleon Capital, LLC, State Street Global Markets, LLC and State Street Bank and Trust Company (collectively, "State Street") and Guaranty Bank. These forbearance agreements allowed New Century Warehouse to continue to operate while it liquidated substantially all of its assets.

7. Pursuant to the Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 Authorizing the Access Sale and Granting Related Relief, New Century Warehouse sold substantially all of its assets as a going concern (the "Sale") to Access Holdings Corporation (the "Buyer") pursuant to that certain Amended and Restated Asset Purchase Agreement by and between Access Holdings Corporation and New Century Warehouse Corporation dated as of April 26, 2007 (the "APA"). The Buyer acquired substantially all of the assets of New Century Warehouse, made employment offers to the employees of the New Century Warehouse, and assumed the warehouse loan financing arrangements with State Street and Guaranty Bank. The transaction maintained the business as a

---

[2] The Amended and Restated Limited Forbearance Agreement dated April 1, 2007 by and among New Century Warehouse, Access Investments II, LLC, Galleon Capital, LLC, State Street Global Markets, LLC and State Street Bank and Trust Company; and the Limited Forbearance Agreement dated April 1, 2007 by and between New Century Warehouse and Guaranty Bank.

going concern and allowed for a process to maximize recoveries on the loans that are subject to the State Street and Guaranty Bank Warehouse Loan Facilities. The financing provided by these Warehouse Lenders covered approximately 96% of the amount paid by New Century Warehouse, while the balance (commonly referred to in the industry as the "haircut") was financed from New Century Warehouse's working capital. Pursuant to the APA, the Buyer is liquidating certain loans (the "Loans") and is paying New Century Warehouse 60% of the Net Proceeds[3] realized on the Loans. The Sale closed on April 27, 2007 and the Buyer has been making payments to New Century Warehouse for the sale of Loans pursuant to the APA.

8.  On August 3, 2007 (the "NCW Petition Date"), New Century Warehouse filed a petition for chapter 11 relief. New Century Warehouse is operating its business and managing its affairs as a debtor and debtor in possession.

**B.  Motion of Debtor and Debtor in Possession for an Order Directing Joint Administration of Related Chapter 11 Cases**

9.  I am informed by counsel that the joint administration of the New Century Warehouse chapter 11 case with the April Debtors' cases will facilitate and promote an economically efficient administration of this case, permit the Clerk of the Court to utilize a single general docket for these cases and combine notices to creditors of the respective estates and other parties in interest which will result in savings to the estates.

10.  I am further informed by counsel that, if joint administration is ordered, the Debtor, the Court, creditors and other parties in interest will be able to avoid incurring considerable unnecessary time and expense in connection with, among other things, the need to file duplicative motions, enter duplicative orders, and forward duplicative notices to creditors

---

[3] Net of (i) amounts owed to State Street and Guaranty Bank under their Warehouse Loan Facilities and (ii) amounts owed to the loan originators.

and other parties in interest.

11.    Additionally, I am informed by counsel that joint administration will further enable parties in interest in these chapter 11 cases to be aware of the various matters before the Court in all of the Debtors' cases.

12.    Consequently, I believe and submit that the joint administration of this chapter 11 case with the other pending chapter 11 cases is in the best interest of the Debtor, the Debtor's estates, its creditors and other parties in interest.

C.    **Motion of the Debtor and the Debtor in Possession for an Order Authorizing the Maintenance of New Century Warehouse Corporation's Existing Bank Account**

13.    By this Motion, the Debtor seeks, *inter alia*, entry of an order pursuant to section 105(a), 345(b), 363, 364(a), and 364(b) of the Bankruptcy Code waiving the guidelines (the "U.S. Trustee Guidelines") established by the United States Trustee for the District of Delaware (the "U.S. Trustee") to the extent necessary to allow New Century Warehouse to continue using its prepetition bank account. The Debtor seeks this authorization to insure its orderly entry into bankruptcy and to help efficiently administer its business, including the collection of the Net Proceeds realized on the sale of the Loans pursuant to the APA and to avoid the disruptions and distractions that would inevitably divert the Debtor's attention from urgent matters during the initial stages of its bankruptcy case.

14.    I am informed by counsel that a provision of the U.S. Trustee Guidelines requires a chapter 11 debtor in possession to open new bank accounts and close all existing accounts. The U.S. Trustee Guidelines also require that new bank accounts be opened in certain financial institutions designated as authorized depositories by the U.S. Trustee.

15.    The Debtor maintains an operating bank account, account number 7930002377, in the ordinary course of business (the "Bank Account") with Union Bank of

California ("Union Bank"). Establishing a new account in its place would substantially disrupt and delay the Debtor's receipt of the Net Proceeds paid to New Century Warehouse under the Loans. The Debtor submits that this is not practicable and could both severely harm its ability to collect outstanding funds that would serve to benefit the Debtor and its estate. The Debtor seeks a waiver of the U.S. Trustee's requirement that New Century Warehouse close the Bank Account and open new postpetition bank accounts at depositories authorized by the U.S. Trustee.

16. The Debtor seeks a waiver of the requirement that new bank accounts be opened to replace the Debtor's existing Bank Account because the requirement would unnecessarily burden the estate without providing any significant benefit to the Debtor, the estate, its creditors or parties in interest. It is critical to the preservation of the value of its assets that the Debtor continue to utilize its existing Bank Account without disruption. The Debtor believes that it is imperative that it be permitted to continue using the existing Bank Account to avoid any unnecessary disruption, to ensure that all Net Amounts on the Loans due to New Century Warehouse pursuant to the APA are collected, and to efficiently administer its bankruptcy case.

17. In the ordinary course of the operation and maintenance of its Bank Account, New Century Warehouse incurs routine bank charges and fees relating to the administration of the Bank Account. The Debtor seeks authority to pay any such customary prepetition banking fees owed to their bank. The bank undoubtedly will assert offset and/or recoupment claims to cover any such fees, so the Debtor's ability to access funds in its accounts depends on reaching an appropriate means of paying these fees. The Debtor also seeks authority to pay any customary postpetition banking fees in the ordinary course as administrative expenses and that no liens granted to any creditors take priority over these fees.

## D. <u>Conclusion</u>

The Debtor's goal in the pending case is to preserve and maximize the value of their business and quickly liquidate. I believe that, if the Court grants the relief requested in each First Day Motion, the prospect of achieving these objectives will be substantially enhanced to the benefit of the Debtor's estate, its creditors and other parties in interest.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge and belief. Executed this 3rd day of August, 2007 at New York, New York.

_____
Holly Felder Etlin