## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| | ) Case No. 07-10416 (KJC) |
| NEW CENTURY TRS HOLDINGS, INC. a | ) |
| Delaware corporation, et al., | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: August 7, 2007** |
| | ) |
| Debtors. | ) **Related Docket Nos. 1946 and 2121** |
| | ) |
| | ) |

## RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER AUTHORIZING THE PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULES 2004 AND 9016

The Committee[1], by and through its co-counsel, Blank Rome LLP and Hahn & Hessen

LLP, submits this response in further support of its Motion for entry of an order pursuant to

Bankruptcy Rules 2004 and 9016 directing the production of documents by KPMG and the

examination of current and former KPMG employees.

In further support of the Motion and in response to the objection thereto by KPMG (the

"KPMG Objection"), the Committee states as follows:

---

[1] Capitalized terms not otherwise defied herein shall have the same meaning as set forth in the Motion of the Official Committee of Unsecured Creditors For an Order Authorizing the Production of Documents Pursuant to Bankruptcy Rules 2004 and 9016, dated July 16, 2007 (the "Motion").

## SUMMARY OF ARGUMENT

A.    In enacting the Bankruptcy Code, Congress vested an official creditors' committee with the express duty "to investigate the acts, conduct, assets, liabilities and financial condition of the debtor" and the "operation of the debtor's business". See 11 U.S.C. § 1103(c)(2). As a leading commentator has noted, "[t]he investigative authority granted to a committee is extremely broad". See 7 Collier on Bankruptcy, ¶1103.5[1][c], at 1103-24 (15th ed., rev. 2007). The primary tool for a committee to fulfill its investigative duties, as well as to uncover potential claims that a debtor may possess against others, is provided by Bankruptcy Rule 2004.

KPMG was the Debtors' outside accountants from the mid-1990's until April 2007, during which time it provided the Debtors with audit, tax and other professional services in connection with Debtors' complex business and financial transactions. The information that KPMG possesses and the services that it provided as Debtors' accountants fall squarely within the investigative scope of Bankruptcy Code section 1103(c)(2), and is of particular importance in allowing the Committee to fulfill its duties thereunder. After it was advised by KPMG's counsel that KPMG declined to provide any consensual disclosure under Bankruptcy Rule 2004, the Committee filed this Motion.

In opposing the Motion, KPMG makes no mention of the Committee's investigative mandate under the Bankruptcy Code, and does not dispute that, as Debtors' outside accountants, it possesses information that is relevant to Debtors' "business operations" and their "acts, conduct, assets, liabilities and financial condition". Indeed, a KPMG spokesperson, in addressing the Motion, has acknowledged that "it's not unusual for the work of an auditor to be reviewed in a bankruptcy case such as this". (See Exhibit A). KPMG nonetheless advises the

2

Court that such review is "barred" by the existence of an arbitration provision between KPMG and the Debtors, which according to KPMG entitles it to the "right to require that any formal discovery be governed by an arbitrator". It is respectfully submitted that, for the reasons summarized below and expanded upon thereafter, KPMG has no such "right" as against the Committee.

**B.**    KPMG's arguments in support of its claimed "right" cannot withstand scrutiny. The Committee's standing to require disclosure from KPMG under Bankruptcy Rule 2004 is not "derivative" of Debtors, but is premised on the authority that Congress bestowed upon it in Bankruptcy Code section 1103(c)(2). KPMG points to its right to arbitrate with Debtors, but no such arbitration is (or may ever be) pending, no claim has been made or adversary proceedings commenced against KPMG by or on behalf of the Debtors, and there is no arbitrator to "govern" disclosure of KPMG. In essence, KPMG is asserting that the mere potential of a future arbitration exempts it from the Committee's investigative mandate under section 1103(c). The entry of an order under Bankruptcy Rule 2004, however, will not "void" or "eviscerate" any claimed right by KPMG to seek arbitration if in the future a claim is brought against it by or on behalf of the Debtors.

Finally, even if one were to accept KPMG's premise – that the disclosure sought by the Committee is at odds with the arbitration discovery mechanism agreed to between KPMG and the Debtors – the Committee would nonetheless be entitled to pursue disclosure from KPMG in furtherance of the investigative mandate provided to it by Congress in Bankruptcy Code section 1103(c). Contrary to KPMG's assertion, Third Circuit precedent does not lead to the conclusion urged by KPMG, and in fact establishes the Committee' entitlement to disclosure from KPMG notwithstanding the discovery mechanism in the arbitration provision between KPMG and the

3

Debtors.

The Third Circuit, following Supreme Court precedent, has acknowledged that a party's right to arbitration may be superseded in those circumstances where "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue". Such intent can be discerned by means of an inherent conflict between arbitration and the statute's underlying purposes. Here, an inherent conflict exists between the broad investigative powers that Congress has provided to the Committee in Bankruptcy Code section 1103(c)(2) and KPMG's claimed entitlement to preclude such disclosure under the arbitration disclosure mechanism. KPMG's alleged rights to such disclosure mechanism must therefore give way to those of the Committee under Bankruptcy Code.

It is noteworthy that the only located published decision that involved a creditors' committee's entitlement to disclosure under Bankruptcy Rule 2004 against a party who had an arbitration agreement with the debtor permitted such disclosure, noting that a contrary result would be at odds with bankruptcy policy and severely damage the interests of unsecured creditors.

C.     KPMG argues that the Committee's document requests should be denied to the extent they are cumulative and co-extensive with documents requested by the Examiner. The Committee, however, has coordinated the investigation that it is required to undertake with the Examiner's investigation as the Committee was instructed by the Court. The Committee worked with the Examiner as to the documents both need from KPMG for the period 2004-2007. Inasmuch as KPMG advises the Court in its opposition that it is in the process of producing these documents to the Examiner (see KPMG Opposition, at 4), their production to the Committee will not be "extremely onerous and costly". At most, KPMG will incur the cost of making an extra

4

set of the documents that it produces to the Examiner.

It is particularly telling that KPMG not only objects to providing the Committee with the documents jointly requested of it with the Examiner, but it also objects to providing the Committee with documents the Committee alone has requested. As explained in the Motion, the Committee's investigative mandate under Bankruptcy Code section 1103(c)(2) extends beyond the issues the Examiner is investigating. The Committee, therefore, has requested documents covering the period 2001-2003. These documents are needed for numerous reasons, such as to explore issues of the Debtors' transactions with insiders, related parties and others, to uncover potential claims of the Debtors that should be pursued, and to determine whether the accounting issues that came to light in 2007 also existed in earlier periods. KPMG's organized audit documents are particularly needed by the Committee inasmuch as the Debtors' accounting personnel are no longer available to explain and reconstruct the details of the Debtors' financial transactions and accounting.

To address the alleged "burden" upon KPMG, and to expedite its production of documents jointly requested by the Examiner and Committee, the Committee will agree to defer KPMG's production of the requested pre-2004 documents until after (and provided that) KPMG produces to the Examiner and Committee the jointly requested documents. The Committee then will attempt in good faith to work with KPMG to resolve their issues and concerns as to specific documents solely requested by the Committee.

## **LEGAL ANALYSIS**

## **I.    THE COMMITTEE IS ENTITLED TO THE DISCLOSURE SOUGHT FROM KPMG**

Section 1103(c) of the Bankruptcy Code vests a creditors' committee with express statutory rights, among which is the authority to "investigate the acts, conduct, assets, liabilities,

5

and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matters relevant to the case or the formation of a plan." See 11 U.S.C. § 1103(c)(2). Congress thus granted creditors' committees a far-reaching investigative mandate as to the debtor and its affairs with third parties. See International Horizons, Inc. v. Committee of Unsecured Creditors (In re International Horizons, Inc.), 689 F.2d 996, 1004-05 (11th Cir. 1982) (discussing "important federal interest in providing bankruptcy courts and creditors with complete and accurate information" under section 1103(c) of the Bankruptcy Code); In re McLean Industries, Inc., 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987) (noting functions of creditors' committee under section 1103(c) include investigation of debtor and its business assets, liability and financial structure); In re Eastern Maine Electric Coop., Inc., 121 B.R. 917, 932 (Bankr. D. Me. 1990) ("among the purposes of the Committee are . . . investigation of the debtor, its business assets, liabilities and financial affairs"); Official Comm. of Unsecured Creditors of Western Pac. Airlines v. Western Pac. Airlines (In re Western Pac. Airlines), 219 B.R. 575, 577-578 (D. Colo. 1998) ("a creditors' committee serves something of a 'watchdog' function in bankruptcy and enjoys unique rights and responsibilities under the Code").

Bankruptcy Rule 2004 is the primary tool available to a committee to fulfill its investigative role. The scope of Rule 2004 disclosure is exceptionally broad, and is commonly described as a permissible "fishing expedition" into a party's affairs with the debtor to obtain information relevant to the debtor and its bankruptcy estate. See, e.g., In re Lufkin, 255 B.R. 204, 208 (Bankr. D. Tenn. 2000); In re Handy Andy Home Improvement Centers, Inc., 199 B.R. 376, 380 (Bankr. N.D.Ill. 1996); In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990).

877285.014 - 1296396.5
127340.01600/40170469v.1

Here, the disclosure sought from KPMG is well within the permitted boundaries of

Bankruptcy Code section 1103(c)(2) and Bankruptcy Rule 2004. KPMG was the principal

accountant and outside auditor for the Debtors from the mid-1990's until its resignation in April

2007. During that period, KPMG provided audit, tax and other professional services to the

Debtors including, but not limited to, Sarbanes-Oxley assistance, advice to the board of directors,

due diligence in acquisitions, and comfort letters in connection with the Debtors' public filings.

By reason of those various roles, KPMG is in possession of relevant information critical to the

Committee's investigation of the Debtors and their complex business transactions and financial

structure. The propriety of the disclosure sought from KPMG was acknowledged by its

spokesperson, Dan Ginsburg, when he issued a statement in response to the Committee's Motion

that "[i]t's not unusual for the work of an auditor to be reviewed in a bankruptcy case such as

this." See Exhibit A. The Committee's Motion seeks just such a review.

## II.    KPMG'S REFUSAL TO PROVIDE DISCLOSURE IS WITHOUT BASIS IN FACT OR LAW

### A.    The Arbitration Provision In The Engagement Letter

In opposing the Motion, KPMG seeks to create out of whole cloth new limitations on a

creditors' committee's right to Rule 2004 disclosure and its investigative mandate under

Bankruptcy Code section 1103(c). KPMG argues that the Committee's Rule 2004 request is

purportedly barred because KPMG's engagement letter with the Debtors requires that "the right

to any formal discovery be governed by the arbitrators". See KPMG Objection, at 5. The plain

language of the provision relied upon by KPMG, however, provides no such right in the context

of the Committee's entitlement to disclosure from it under the Bankruptcy Code and Rule 2004.

The arbitration provision between KPMG and the Debtors refers to "[a]ny dispute or

claim arising out of or relating to the engagement letter between the parties, the services

provided thereunder, or any other services provided by or on behalf of KPMG ...." See KPMG Exhibit A, at A9. KPMG, however, points to no dispute or claim made by the Debtors against it that would invoke that provision against the Debtors, much less the Committee. The engagement letter further provides that "[d]iscovery shall be permitted in connection with **the** arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery." See KPMG Exhibit A, at A18 (emphasis added).[2] KPMG's entitlement to have an arbitrator "govern" discovery with the Debtors thus arises only after, and not before, an arbitration has been commenced between them. The disclosure mechanism in the arbitration provision is inapplicable to the Motion.

In any event, whatever may have been agreed to between the Debtors and KPMG as to discovery in a possible future arbitration between them cannot alter or negate the Committee's entitlement to disclosure from KPMG under Rule 2004. The Committee's right to seek disclosure of KPMG derives from Bankruptcy Code section 1103(c)(2) and is not, as KPMG states, "derivative" of the Debtors. See KPMG Opposition, at 8. Accepting KPMG's position would mean that the mere presence of an arbitration provision between a party and a debtor could be used by that party to insulate it from having its affairs with the debtor probed into by a creditors' committee as intended by Congress. Such a conclusion not only would be contrary to congressional intent, it would be at odds with KPMG's engagement letter with the Debtors, wherein it was agreed that "[i]n the event that KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for the Company in judicial or administrative proceedings to which KPMG is not a party, the Company shall reimburse KPMG

---

[2]    Notably, in quoting the language of the relevant discovery provision of the Arbitration Agreement, KPMG omits the word "the" from its quotation thus changing the tenor of the quoted provision. See KPMG Objection, at 6.

for its professional time and expenses, including reasonable attorneys' fees, incurred in responding to such requests." See KPMG Exhibit A, at A10-11, Section "Work Paper Access by Regulators and Others". KPMG has thus acknowledged that it is not exempt from the subpoena power of a third party, such as the Committee.

**B.    Third Circuit Precedent**

KPMG urges this Court that the Motion's denial is dictated by Third Circuit precedent. To the contrary, examination of that precedent establishes the Committee's right to disclosure from KPMG under the facts before the Court. The cases cited by KPMG address the situation where a debtor or trustee has commenced an adversary proceeding against a defendant which has an arbitration agreement with the debtor. In those cases, the court held that the defendants were entitled to compel arbitration of claims alleged against them by the debtor or trustee. See In re Mintze, 434 F.3d 222 (3d Cir. 2006) (debtor commenced adversary proceeding seeking to rescind loan agreement which contained an arbitration clause); Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir. 1989) (trustee's complaint alleged securities violations, fraudulent conveyance and constructive trust claims); In re Olympus Healthcare Group, Inc., 352 B.R. 603 (Bankr. D. Del. 2006) (debtor commenced adversary proceeding seeking turnover pursuant to 11 U.S.C. §542 and asserting breach of contract claim); see also In re National Gypsum, 118 F.3d 1056 (5th Cir. 1997) (debtor commenced adversary proceeding seeking declaration that creditor's attempts to recover prepetition debts violated Chapter 11 discharge injunction and terms of confirmed plan of reorganization).

Unlike the above cited cases, no adversary proceeding has been commenced against KPMG by or on behalf of the Debtors, and KPMG points to no dispute that has arisen between them to date that may be subject to arbitration. The disclosure sought by the Committee will not

9

prejudice or deny any right that KPMG may have to arbitration in the event such a dispute arises in the future, and KPMG's right to arbitrate such a future dispute is not implicated by the Motion.

Moreover, even if the premise underlying KPMG's objection to the Motion was accepted – that the disclosure sought by the Committee is at odds with the discovery mechanism applicable to an arbitration between KPMG and the Debtors – the precedent cited by KPMG establishes the Committee's entitlement to the disclosure sought here. As recognized by the Supreme Court in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987), a case on which Mintze relied, enforcement of an arbitration provision is not absolute and may "be overridden by a contrary congressional command". Id. at 226-7. The McMahon Court formulated a disjunctive three part test to determine congressional intent, holding that "such an intent would be deducible for the statute's text or legislative history or from an inherent conflict between arbitration and the statute's underlying purposes." Id.

Here, KPMG's alleged rights to insist upon an arbitration discovery mechanism presents an inherent conflict with the broad investigative mandate and rights that Congress has bestowed upon the Committee in Bankruptcy Code section 1103(c)(2). Thus, whatever rights KPMG may assert to enforce an arbitration disclosure mechanism (notwithstanding that neither an arbitration now exists nor an arbitrable claim made) are superseded by those rights granted the Committee in Bankruptcy Code section 1103(c)(2). See Mintze, 434 F.3d at 229 (arbitration rights are overridden where "Congress intended to preclude a waive of judicial remedies for the statutory tights at issue").

C.      **The Daisytek And Friedman's Decisions**

KPMG's reliance on Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.), 323 B.R.

180 (N.D. Tex. 2005) is misplaced. Daisytek involved neither a creditors' committee nor

Bankruptcy Code section 1103(c)(2). Rather, it arose from a confirmed liquidating plan

establishing a creditors' trust to pursue claims. The bankruptcy court granted the motion of the

trust's trustee to conduct a Rule 2004 examination of the debtor's auditors, over the auditors'

objection that such discovery was in the nature of "pre-suit" discovery and barred by an

arbitration agreement between the auditors and the debtor. On appeal, the district court found

that the trustee's investigation could lead to two types of claims: state law malpractice claims

against the auditors, as well as preferential or fraudulent transfer actions against them and others.

Id. at 187-88. It further found that the bankruptcy court had erred by not distinguishing between

these different types of claims and remanded, noting that "[t]he bankruptcy court may authorize

the trustee to conduct a Rule 2004 examination of [the auditors] that pertains to a proceeding that

is not subject to arbitration".[3] Id. at 188.

As explained by another court, the problem with the Daisytek approach advocated by

KPMG here, is that:

> [t]o prospectively shut down any meaningful investigation would
> be fundamentally at odds with bankruptcy policy and severely
> damage the interests of unsecured creditors. See In re Nat'l
> Gypsum, 118 F.3d at 1069 (stating that the purpose of the
> Bankruptcy Code includes the "goal of centralized resolution of
> purely bankruptcy issues, the need to protect creditors and
> reorganizing debtors from piecemeal litigation, and the undisputed
> power of a bankruptcy court to enforce its own orders").

---

[3]     The court in Daisytek further noted that '[i]f an examination is permissible under Rule 2004 but overlaps with
discovery that would be constricted by the arbitration clause, the bankruptcy court retains the discretion to
decide what limits, **if any**, should be placed on such dual purpose discovery". Id., at 188, n.9. (emphasis
added).

In re Friedman's, Inc., 356 B.R. 779, 784 (Bankr. S.D. Ga. 2005).

Friedman's, unlike Daisytek, did involve a creditors' committee, which pursuant to joint interest agreement was conducting a joint investigation with the debtor. Id. at 782-83. The bankruptcy court issued an order authorizing Rule 2004 examinations in connection with that joint investigation of a variety of subjects, including accounting irregularities, certain transactions of the debtor, and issues arising out the debtor's announcement that it would have to restate prepetition earnings. Subsequently, the debtor served a subpoena on its accountants, which moved to quash based on an arbitration agreement. Id. at 782.

Like KPMG, the accountants cited Daisytek in support of its argument that the arbitration agreement precluded Rule 2004 discovery. The court, however, declined to follow Daisytek, pointing out that the request before it for a Rule 2004 examination was not based on any specific cause of action against the accountants. Id. at 784. "To follow Daisytek in these circumstances would defeat a fundamental purpose of Rule 2004, which is to grant debtors like Friedman's a broad power to determine what causes of action they may possess." Id.

## D. The Discovery Requested By The Committee Is Within The Permitted Scope Of Bankruptcy Rule 2004

Bankruptcy Rule 2004 authorizes a court to order the examination of any entity on motion of any party in interest. The purpose of such an examination is to assist a party in interest, in this case the Committee, in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions, and assessing whether wrongdoing has occurred. See In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); see also 7 Collier on Bankruptcy ¶1103.05[1][c], at 1103-24 ("the committee's investigation should focus on not only the nature of the debtor's assets, and the extent of the debtor's liabilities, whether there are assets such as avoidance actions against third parties, but also the reasons for the

debtor's financial problems or other claims, that could be brought into the estate."). The scope of a Rule 2004 examination, as earlier demonstrated, is extremely broad and extends to any third party who had a prepetition relationship with the debtor. See In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).

KPMG nonetheless asserts that no basis exists for the Committee to obtain documents from it relevant to the Debtors for the period commencing in 2001. (KPMG, of course, also maintains that the Committee is not entitled to obtain any documents from it relevant to the Debtors for any period.) Such an assertion ignores the plain language of Bankruptcy Code section 1103(c)(2) and the Committee's duties thereunder. The Committee therefore seeks documents from KPMG relevant to the Debtors for numerous reasons, including: (a) to assist the Committee's professionals in understanding and reconstructing the Debtors' complex financial structure and transactions in the absence of the Debtors' accounting personnel, who have since left the Debtor's employ; (b) to identify transfers made by the Debtors to insiders, related parties and others that may constitute fraudulent transfers; (c) to investigate issues of solvency relating to potential fraudulent transfers; (d) to identify claims of the Debtors that may now be pursued; (e) to understand how the Debtors' accounting methodologies and procedures changed over the course of time; (f) to evaluate and understand changes in the Debtor's methods of valuing assets over the course of time; and (g) to determine whether any of the accounting issues that came to light in 2007 existed in prior years. This disclosure is prima facie consistent with Bankruptcy Code section 1103(c)(2) and within the permissible scope of Bankruptcy Rule 2004.

KPMG's blanket refusal to provide the Committee with any documents relevant to the Debtors and KPMG's work for them is unsupportable, and by itself raises questions as to

13

KPMG's motivation when its spokesperson has told the press it was "not unusual" in bankruptcy cases such as this for the auditors' work to be reviewed.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (a) enter an Order in the form annexed to the Motion as Exhibit A pursuant to Bankruptcy Rules 2004 and 9016; and

(b) grant such other and further relief as the Court deems just and proper.

Dated:  Wilmington, DE
       August 6, 2007

BLANK ROME LLP

_Bonnie Fatell_

Bonnie Glantz Fatell (No. 3809)
David Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464

-and-

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Telephone:   (212) 478-7200
Facsimile:   (212) 478-7400
John P. McCahey
Mark S. Indelicato
Maria A. Arnott
Charles Loesner

*Co-Counsel to the Official
Committee of Unsecured Creditors of
New Century TRS Holdings, Inc. et al.*

14