# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : |  |
|  | : | **Jointly Administered** |
| **Debtors.** | : |  |
|  | : | **Re: Docket No. 1980** |
|  | : |  |

**ORDER (I) AUTHORIZING THE PAYMENT OF THE DEBTORS'
WIND-DOWN RETENTION PLAN PAY AND (II) AMENDING THE
EXISTING KEY EMPLOYEE INCENTIVE PLAN PURSUANT TO
SECTIONS 105(a), 363(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE**

Upon the motion (as amended, the "Motion") of the Debtors for an order, under

Bankruptcy Code sections 363(b), 503(c)(3) and 105 (i) authorizing, but not directing, payment of a

wind-down retention plan (the "Wind-down Plan") to certain employees and (ii) amending the

existing Key Employee Incentive Plan as more fully set forth in the Motion; and due and sufficient

notice of the Motion having been given under the particular circumstances; and it appearing that no

other or further notice need be provided; and the Court having convened a hearing on the Motion

(the "Hearing"); and the Court having considered the evidence and testimony introduced at the

Hearing, if any; and the Court having heard the arguments of the proponents of the Motion and if

any, the objectors to the Motion; and it appearing that the relief requested by the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

LA3:1136733 1
RLF1-3186741-2

deliberation thereon; and good and sufficient cause appearing therefore; and for the reasons stated by the Court on the record at the Hearing;

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The Debtors' Amended Key Employee Incentive Plan (the "Amended KEIP") and Wind-down Retention Plan (the "Wind-down Plan," and collectively with the Amended KEIP, the "Plans") are designed to appropriately compensate the plan participants to ensure that they remain motivated to perform the requisite tasks to assist in the liquidating of the Debtors' businesses, given the enormous additional burdens placed upon the participants.

B.    The full experience, expertise, unique skills, and enthusiastic involvement of the plan participants are critical to the Debtors' ability to maximize value for their estates.

C.    The post-petition efforts of the plan participants extend beyond their ordinary course responsibilities and are critical to the Debtors' efforts to maximize value for their estates.

D.    The plan participants are the personnel of the Debtors with the necessary skill and experience to assist with liquidating the Debtors' business, produce the best results and maximum value for the Debtors and their estates.

E.    The Debtors have demonstrated that implementation of the Plans is justified under the facts and circumstances of these cases.

F.    The Amended KEIP is a performance-based plan that is not subject to the limitations on retention and severance plans set forth in Bankruptcy Code sections 503(c)(1) and (2).

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is hereby **GRANTED** as set forth herein.

2.      The Plans are hereby APPROVED.

3 .      The Debtors are authorized, but not directed, to make payments to the plan participants in accordance with the Wind-down Plan in the aggregate amount of $811,647.00, attached hereto as Exhibit A and the Amended KEIP, attached hereto as Exhibit B.

4.      With respect to the Wind-down Plan, to the extent an employee voluntarily terminates before his or her target release date, the Debtors may by mutual agreement extend another employee's target release date and increase such participant's Retention Bonus provided (i) the total amount of all Retention Bonuses shall not exceed $811,647.00 and (ii) each participant's Retention Bonus shall be calculated as provided in the sections of the Wind-down Plan entitled "Retention Pool" and "Plan Payments".

5.      The Debtors are authorized to amend the KEIP to add an additional participant and to increase the Other Assets Sales Pool at the Target Price by $126,992.00.

6 .      All payments authorized hereunder shall be allowed administrative expenses of the Debtors' estates under Bankruptcy Code section 503(b).

7 .      The Debtors' oral motion for approval to: (i) file a redacted version of the charts identifying the Wind-down Plan participants and the Amended KEIP participants and their potential compensation under the Plans (collectively, the "Charts") and (ii) file the unredacted Charts under seal, is **GRANTED**.

10.      Pursuant to section 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1, the Debtors are authorized, and the Clerk of the Court is directed, to file and maintain the unredacted Charts under seal.

8.    This Court shall retain jurisdiction over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the Plans and any dispute regarding the calculation of the incentive payment to be made under the Plans.

IT IS SO ORDERED,

this ___ day of May, 2007

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**[The Wind-down Retention Plan]**

# NEW CENTURY FINANCIAL CORPORATION
# WIND DOWN RETENTION PLAN

**PLAN OBJECTIVE:**
The New Century Financial Corporation Wind Down Retention Plan (the **"Plan"**) is designed to assist New Century Financial Corporation (the **"Company"**) to retain key personnel critical to the successful operation of the Company and its subsidiaries.

**ELIGIBLE EMPLOYEES:**
The Plan covers the employees of the Company and its subsidiaries listed on the employee schedule (the **"Plan Participants"**) set forth on Exhibit A hereto. The entitlement to any bonus is subject to the other terms and conditions of the Plan as set forth herein.

All payments under the Plan shall be in lieu of any other performance bonus or retention compensation payable by the Company or any of its subsidiaries (collectively, the **"Debtors"**) under any other plan, program, agreement, applicable law, or policy otherwise applicable to the Plan Participants (excluding the New Century Key Employee Incentive Retention Plan). As a condition precedent of any obligation of the Company to pay any Retention Bonus (as defined below) to any Plan Participant, such Plan Participant shall, prior to or upon the date that a Retention Bonus is paid to such Plan Participant, be required to fully execute and return to the Company a general release and waiver of claims, excluding those claims specifically excepted from the release and waiver as described therein, in substantially the form attached hereto as Exhibit B. The Company shall have no obligation to pay and shall not pay any Retention Bonus to any Plan Participant that does not satisfy such release requirement or who otherwise revokes such release within any revocation period afforded by applicable law.

**RETENTION POOL:**

The Company will contribute $811,647.00 to a pool (the **"Retention Pool"**) to make retention bonuses (the **"Retention Bonuses"**) to be paid under the Plan. The contribution to the retention pool equals the sum of the products of each Plan Participant's (a) hourly rate of pay (calculated based on each Plan Participant's annual salary divided by 2,080 hours) multiplied by (b) the sum of 30 hours for the month of August and 40 hours for each succeeding month until such Plan Participant's Release Date (as defined below).

**PLAN PAYMENTS:**

Each Plan Participant shall be eligible to receive the Retention Bonus set forth opposite his or her name on Exhibit A. Retention Bonuses shall be paid, if at all, on the release date (the applicable date as to a particular Plan Participant is referred to as his or her **"Release Date"**) set forth in the award agreement to be entered into by the Company and such Plan Participant pursuant to the Plan; provided that such Plan Participant (i) is then actively employed by the Company on a full-time basis in good standing (defined as not, before or after adoption of the Plan, having violated the Company's policies and procedures or otherwise engaged in conduct warranting disciplinary action, and performance and attendance at or above standards) or (ii) whose employment was terminated other than "for cause." If a Plan Participant is on approved leave status during a portion of the period beginning on the Plan implementation date and ending on his or her Release Date (the **"Retention Period"**), such Plan Participant will remain eligible to receive a Retention Bonus, but the Retention Bonus will be pro-rated for the portion(s) of the Retention Period during which he or she was employed on active, full-time status in good standing. If a Plan Participant is on leave status for the majority or the entirety of the Retention Period, such Plan Participant will not be eligible to receive any portion of the Retention Bonus. Notwithstanding the foregoing, in the event that any Plan Participant ceases to be eligible for a Retention Bonus, the Company may enter into additional award agreements with other Plan Participants that provide that such Plan Participants shall be eligible for additional Retention Bonuses if such Plan Participants agree to extend their Retention Periods, so long as the sum of the Retention Bonuses for which Plan Participants are eligible does not exceed

$811,647.00 and provided further that each Plan Participant's revised Retention Bonus shall be calculated in accordance with the formula set forth in the "Retention Pool" section above.

## TERMINATION OF EMPLOYMENT:

Retention Bonuses under the Plan are offered as discretionary incentive amounts. If an Employee voluntarily terminates employment or is involuntarily terminated "for cause" (as defined below) before such Plan Participant's Release Date, the Plan Participant will not receive any Retention Bonus under the Plan. In the event an Plan Participant's employment is terminated by the Company or one of its subsidiaries other than "for cause", the Plan Participant will be entitled to the full amount of his or her Retention Bonus which will be paid on his or her Release Date.

Additionally, if there is any ongoing investigation by the Company into the actions or omissions of a Plan Participant at the time such Plan Participant becomes entitled to any Retention Bonus under the Plan, which could result in the Company having the right to terminate such Plan Participant "for cause", the Company will be entitled to delay payment of such bonus (without any interest accruing thereon) until the matter is finally determined by the Company. If the Company would have the right to terminate such Plan Participant "for cause" based on the findings of its investigation, then the Company will not be obligated to make and will not make any payments of such bonus (even if such Plan Participant's employment had terminated for other reasons) to such Plan Participant.

For purposes of the Plan, the term "**for cause**" means, either before or after the adoption of the Plan:

- Commission of a crime against the Company or its affiliates, customers or employees, whether prosecuted or not;

- a finding by the Company that the Plan Participant engaged in willful misconduct, or was grossly negligent, in the performance of his or her duties;

- Conviction of (or pleading guilty or *nolo contendere* to, or entering a similar plea to) any other crime or violation of law, statute or regulation that creates an inability to perform job duties;

- Failure or inability to perform job duties due to intoxication by drugs or alcohol during working hours;

- A material and direct conflict of interest, not specifically waived in advance by the Company;

- Unauthorized use or disclosure of confidential information that belongs to the Company or its affiliates, customers or employees;

- Habitual neglect of duties or repeated absences from work;

- Refusal to follow the instructions of a supervisor or the Board (or a committee thereof); or

- Other material misconduct including, but not limited to: falsification of Company records; theft; sexual harassment; or possession of firearms, controlled substances or illegal drugs on Company premises or while performing Company business.

## SALARY CONTINUATION:

In the event a Plan Participant's employment is terminated by the Debtors other than "for cause" more than two weeks prior to his or her Release Date, the Company will also continue to pay, subject to tax withholding and other authorized deductions, the pro rata portion of such Plan Participant's then current annual salary in substantially equal installments in accordance with the Company's standard payroll practices until such Plan Participant's Release Date (the "**Salary Continuation**"). The Salary

Continuation will be in lieu of any other salary continuation compensation payable by the Debtors under any other plan, program, agreement, applicable law, or policy otherwise applicable to the Plan Participants. Notwithstanding anything to the contrary in this Section, if the Plan Participant's termination other than "for cause" is not a separation from service within the meaning of Section 409A of the Code and the regulations and other published guidance thereunder (including §1.409A-1(h)), then, if required in order to comply with the provisions of Section 409A of the Code, payment of the Salary Continuation shall be delayed until such a separation from service occurs.

Additionally, if there is any ongoing investigation by the Company into the actions or omissions of a Plan Participant at the time such Plan Participant becomes entitled to any Salary Continuation under the Plan, which could result in the Company having the right to terminate such Plan Participant "for cause", the Company will be entitled to delay payment of such Salary Continuation until the matter is finally determined by the Company. If the Company would have the right to terminate such Plan Participant "for cause" based on the findings of its investigation, then the Company will not be obligated to make and will not make any payments of such Salary Continuation (even if such Plan Participant's employment had terminated for other reasons) to such Plan Participant.


**FURTHER ACTIONS:**

As a condition to each Plan Participant's participation in the Plan, such Plan Participant shall agree to take such further actions as are reasonably requested by the Company, including such actions as the Company may request subsequent to the termination of such Plan Participant's employment with the Company or its subsidiaries, as the case may be, to assist the Company and its subsidiaries in the conduct of the bankruptcy cases filed under chapter 11 of the United States Bankruptcy Code to which they are currently parties.

**CHANGE OF ADDRESS:**
The Plan Participants shall be responsible for notifying the Company of any change of address before payment is made by mail notification to **[Name]**.

**NO PROMISE OF CONTINUED EMPLOYMENT, FULL-TIME ATTENTION, AND GOOD STANDING:**
The Plan and any Plan Participant's selection as a participant in the Plan does not, and is in no manner intended to constitute, a promise of employment for any period of time or to change a Plan Participant's status, if applicable, as an at will employee subject to termination of employment by his or her employer at any time for any reason.

**TAXES:**
All payments will be subject to standard withholding and deductions. Neither the Company nor any of its subsidiaries, officers or agents makes or has made any representation about the tax consequences of any payments or benefits offered by the Company to any Plan Participant under the Plan.

**SEVERABILITY:**
If any provision of the Plan is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of the Plan and the provision in question shall be modified so as to be rendered enforceable in a manner consistent with the intent of the parties insofar as possible. Any waiver of or breach of any of the terms of the Plan shall not operate or be construed as a waiver of any other breach of such terms or conditions or of any other terms and conditions, nor shall any failure to enforce any provision hereof operate or be construed as a waiver of such provision or of any other provision.

**CHOICE OF LAW AND VENUE:**
The Plan will be governed by the laws of the State of California, notwithstanding that State's conflict of law provisions. The Company and each of the Plan Participants shall irrevocably and unconditionally consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware (the

"**Bankruptcy Court**"). The Company and each of the Plan Participants shall irrevocably and unconditionally waive any objection to the laying of venue of any action, suit, or proceeding arising out of or related to the Plan in the Bankruptcy Court and shall further irrevocably and unconditionally waive and agree not to plead or claim that any such action, suit or proceeding brought in the Bankruptcy Court has been brought in an inconvenient forum.

**ENTIRE AGREEMENT AND AMENDMENT:**
This document constitutes the complete, final and exclusive embodiment of the terms and conditions of the Plan and may only be modified in writing signed by an authorized officer of the Company. Any agreement between any Plan Participant and the Debtors with regard to the Plan and its subject matter is superseded in its entirety by this document.

**NO ASSIGNMENT:**
The rights of a Plan Participant or any other person to any payment or other benefits under the Plan may not be assigned, transferred, pledged, or encumbered except by will or the laws of decent or distribution.

Exhibit A
New Century Financial Corporation
Wind Down Retention Plan Participants

| Person ID | Full Name | Stay To Date | JobTitle | Retention Payment Value |
|---|---|---|---|---|
| REDACTED | REDACTED | 7/27/2007 | REDACTED | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 7/27/2007 | | $0.00 |
| | | 8/3/2007 | | $0.00 |
| | | 8/3/2007 | | $0.00 |
| | | 8/3/2007 | | $0.00 |
| | | 8/10/2007 | | $0.00 |
| | | 8/17/2007 | | $0.00 |
| | | 8/17/2007 | | $0.00 |
| | | 8/17/2007 | | $0.00 |
| | | 8/17/2007 | | $0.00 |
| | | 8/17/2007 | | $0.00 |
| | | 8/24/2007 | | $0.00 |
| | | 8/31/2007 | | $674.40 |
| | | 8/31/2007 | | $556.20 |
| | | 8/31/2007 | | $417.90 |
| | | 8/31/2007 | | $714.00 |
| | | 8/31/2007 | | $1,983.30 |
| | | 8/31/2007 | | $1,311.90 |
| | | 9/7/2007 | | $1,283.40 |
| | | 9/7/2007 | | $713.70 |
| | | 9/7/2007 | | $1,507.20 |
| | | 9/7/2007 | | $1,305.90 |
| | | 9/7/2007 | | $1,328.70 |
| | | 9/7/2007 | | $1,374.30 |
| | | 9/7/2007 | | $1,386.30 |
| | | 9/7/2007 | | $1,596.30 |
| | | 9/7/2007 | | $1,493.40 |
| | | 9/7/2007 | | $1,331.10 |
| | | 9/7/2007 | | $1,397.10 |
| | | 9/7/2007 | | $1,468.20 |
| | | 9/7/2007 | | $1,983.30 |
| | | 9/7/2007 | | $2,966.70 |
| | | 9/7/2007 | | $1,586.40 |
| | | 9/7/2007 | | $1,539.00 |
| | | 9/7/2007 | | $2,062.50 |
| | | 9/14/2007 | | $723.90 |
| | | 9/14/2007 | | $1,172.40 |
| | | 9/14/2007 | | $1,713.00 |
| | | 9/28/2007 | | $1,777.30 |
| | | 9/28/2007 | | $4,309.90 |
| | | 9/28/2007 | | $5,372.50 |

Exhibit A
New Century Financial Corporation
Wind Down Retention Plan Participants

| | | | |
|---|---|---|---|
| | | 9/28/2007 | $4,425.40 |
| | | 9/28/2007 | $2,221.10 |
| | | 9/28/2007 | $1,540.00 |
| | | 9/28/2007 | $1,351.00 |
| | | 9/28/2007 | $2,961.70 |
| | | 9/28/2007 | $1,828.40 |
| | | 9/28/2007 | $885.50 |
| | | 9/28/2007 | $1,694.00 |
| | | 9/28/2007 | $1,309.00 |
| | | 9/28/2007 | $5,090.40 |
| | | 9/28/2007 | $1,494.50 |
| | | 9/28/2007 | $2,201.50 |
| | | 9/28/2007 | $965.30 |
| | | 10/5/2007 | $2,432.50 |
| | | 10/5/2007 | $3,365.60 |
| | | 10/5/2007 | $3,036.60 |
| | | 10/5/2007 | $2,443.00 |
| | | 10/5/2007 | $3,490.20 |
| | | 10/5/2007 | $2,683.10 |
| | | 10/5/2007 | $4,294.50 |
| | | 10/5/2007 | $3,701.60 |
| | | 10/5/2007 | $6,404.30 |
| | | 11/2/2007 | $5,439.50 |
| | | 11/2/2007 | $6,083.00 |
| | | 11/2/2007 | $5,236.00 |
| | | 11/23/2007 | $10,470.90 |
| | | 11/30/2007 | $4,330.50 |
| | | 12/28/2007 | $2,840.50 |
| | | 12/28/2007 | $9,194.10 |
| | | 12/28/2007 | $9,859.10 |
| | | 12/28/2007 | $9,642.50 |
| | | 12/28/2007 | $3,235.70 |
| | | 12/28/2007 | $4,658.80 |
| | | 12/28/2007 | $6,456.20 |
| | | 12/28/2007 | $4,522.00 |
| | | 12/28/2007 | $3,309.80 |
| | | 12/28/2007 | $4,050.80 |
| | | 12/28/2007 | $4,598.00 |
| | | 12/28/2007 | $6,125.60 |
| | | 12/28/2007 | $14,669.90 |
| | | 12/28/2007 | $9,044.00 |
| | | 12/28/2007 | $7,535.40 |
| | | 12/28/2007 | $7,869.80 |
| | | 12/28/2007 | $10,047.20 |
| | | 12/28/2007 | $8,805.10 |
| | | 12/28/2007 | $9,889.50 |
| | | 12/28/2007 | $16,146.20 |
| | | 12/28/2007 | $6,670.90 |
| | | 12/28/2007 | $15,574.30 |
| | | 12/28/2007 | $10,182.10 |
| | | 12/28/2007 | $8,650.70 |
| | | 12/28/2007 | $3,155.90 |

Exhibit A
New Century Financial Corporation
Wind Down Retention Plan Participants

| | | | | |
|---|---|---|---|---|
| | | 12/28/2007 | | $5,677.20 |
| | | 12/28/2007 | | $3,127.40 |
| | | 12/28/2007 | | $11,253.70 |
| | | 12/28/2007 | | $8,038.90 |
| | | 12/28/2007 | | $5,187.00 |
| | | 12/28/2007 | | $9,553.20 |
| | | 12/28/2007 | | $2,901.30 |
| | | 12/28/2007 | | $3,819.00 |
| | | 12/28/2007 | | $3,718.30 |
| | | 12/28/2007 | | $11,825.60 |
| | | 12/28/2007 | | $7,381.50 |
| | | 12/28/2007 | | $6,813.40 |
| | | 12/28/2007 | | $6,281.40 |
| | | 12/28/2007 | | $5,426.40 |
| | | 12/28/2007 | | $6,138.90 |
| | | 12/28/2007 | | $9,044.00 |
| | | 12/28/2007 | | $5,962.20 |
| | | 12/28/2007 | | $3,072.30 |
| | | 12/28/2007 | | $8,339.10 |
| | | 12/28/2007 | | $2,534.60 |
| | | 12/28/2007 | | $6,513.20 |
| | | 12/28/2007 | | $4,827.90 |
| | | 12/28/2007 | | $2,299.00 |
| | | 12/28/2007 | | $13,564.10 |
| | | 12/28/2007 | | $8,194.70 |
| | | 12/28/2007 | | $14,698.40 |
| | | 12/28/2007 | | $9,044.00 |
| | | 12/28/2007 | | $2,479.50 |
| | | 12/28/2007 | | $6,532.20 |
| | | 12/28/2007 | | $4,219.90 |
| | | 12/28/2007 | | $4,719.60 |
| | | 12/28/2007 | | $6,030.60 |
| | | 12/28/2007 | | $8,063.60 |
| | | 12/28/2007 | | $8,441.70 |
| | | 12/28/2007 | | $10,818.60 |
| | | 12/28/2007 | | $6,040.10 |
| | | 12/28/2007 | | $8,783.70 |
| | | 12/28/2007 | | $12,116.30 |
| | | 12/28/2007 | | $3,640.40 |
| | | 12/28/2007 | | $6,241.50 |
| | | 12/28/2007 | | $2,703.70 |
| | | 12/28/2007 | | $2,703.70 |
| | | 12/28/2007 | | $8,339.10 |
| | | 12/28/2007 | | $4,822.20 |
| | | 12/28/2007 | | $14,057.60 |
| | | 12/28/2007 | | $6,532.20 |
| | | 12/28/2007 | | $8,439.80 |
| | | 12/28/2007 | | $6,832.40 |
| | | 12/28/2007 | | $2,644.80 |
| | | 12/28/2007 | | $5,263.00 |
| | | 12/28/2007 | | $5,829.20 |
| | | 12/28/2007 | | $7,033.80 |

Exhibit A
New Century Financial Corporation
Wind Down Retention Plan Participants

| | | | | |
|---|---|---|---|---|
| | | 12/28/2007 | | $6,061.00 |
| | | 12/28/2007 | | $8,240.30 |
| | | 12/28/2007 | | $6,353.60 |
| | | 12/28/2007 | | $7,235.20 |
| | | 12/28/2007 | | $7,535.40 |
| | | 12/28/2007 | | $6,762.10 |
| | | 12/28/2007 | | $10,047.20 |
| | | 12/28/2007 | | $6,080.00 |
| | | 12/28/2007 | | $4,180.00 |
| | | 12/28/2007 | | $5,827.30 |
| | | 12/28/2007 | | $6,028.70 |
| | | 12/28/2007 | | $10,970.60 |
| | | 12/28/2007 | | $4,056.50 |
| | | 12/28/2007 | | $7,284.60 |
| | | 12/28/2007 | | $10,552.60 |
| | | 12/28/2007 | | $6,028.70 |
| | | | Total | $796,783.10 |

**Exhibit B**

**Form Of Release Agreement**

NB1:721222 7
RLF1-3186731-1

Draft WDRP Release Agreement (Under 40)



NEW CENTURY
FINANCIAL CORPORATION

A NEW SHADE OF BLUE CHIP™

## WIND DOWN  RETENTION PLAN RELEASE AGREEMENT

To:

| | | |
|---|---|---|
| From: | Holly Felder Etlin | Janet Okimoto |
| | Chief Executive Officer | Senior Vice President |
| | | Leadership & Organizational Development |

Date:      August __, 2007

New Century views your role as critical to ongoing efforts to consummate the sale of its remaining assets and to assist in tasks necessary for liquidation. In acknowledgment of the contributions you have offered and will continue to offer by remaining a committed part of the organization, we are pleased to confirm that we have selected you as a participant in a Wind Down Retention Plan (the "Plan") designed to appropriately compensate you for your enthusiastic involvement in assisting the New Century to achieve the business goals identified in the Plan and/or to aid in the retention of our key employees. A copy of the Plan is attached hereto as Exhibit A.

In consideration of the provisions contained in the Plan, including but not limited to the parties' agreement that all payments under the Plan shall be in lieu of any other performance bonus or retention compensation under any other plan, program, agreement, applicable law, or policy otherwise applicable to the Employee by the Company or any of its subsidiaries, _____ ("Employee") and New Century Financial Corporation, including its affiliated entities (collectively, the "Company" or "New Century"), agree as follows:

1.  **Effective Date of Agreement**. This Agreement shall be effective as of the date signed by Employee (the "Effective Date").

2.  **Payments**. Each plan participant shall be eligible to receive a Retention Bonus set forth opposite his or her name on Exhibit A to the Plan. Retention Bonuses shall be paid, if at all, on the release date provided each plan participant fulfills the requirements as set forth in the Plan.

3.  **Eligibility.** The Plan covers the employees of the Company and its subsidiaries listed the employee schedule (the "Plan Participants") set forth on Exhibit A to the Plan.

4.  **At-Will Employment, Full-Time Attention, and Good Standing**. This Agreement is in no manner intended to constitute a promise of employment for this or any other period of time, or to otherwise change Employee's at-will employment status. Employee shall continue to devote Employee's best efforts and full business time and attention to the performance of the services customarily incident to Employee's position, and to such other services as management may reasonably request. It is mandatory to the payment of any Retention Bonus that the Employee is actively employed in Employee's current position in good standing, and not subject to discipline, on the date the payment is actually made. If Employee voluntarily terminates his or her employment or if Employee's employment is terminated by the Company for cause prior to payment of the Retention Bonus, Employee's right to any Retention Bonus payment also terminates. However, if the Company terminated Employee's employment prior to payment of the Retention Bonus without cause, as a result of a position elimination or reduction in force, Employee remains eligible to receive the full applicable bonus payment.

RLF1-3187267-1

**Draft WDRP Release Agreement (Under 40)**

5.     **Jurisdiction.** The Company and Employee agree that the United States Bankruptcy Court for the District of Delaware shall have the exclusive jurisdiction to consider any issue related to the Employee's entitlement to, or calculation of, any payment to be made under the Plan.

6.     **General Release.** In exchange for remittance of all applicable payments described in Paragraph 2 of this Agreement, less standard withholding and authorized deductions, and for other good and valuable consideration, receipt of which is hereby acknowledged, Employee hereby covenants not to sue and, to the fullest extent permitted by law, acknowledges full and complete satisfaction of and release and discharge of New Century Financial Corporation, its subsidiaries and affiliated corporations, past and present, and each of them, as well as its and their directors, officers, agents, attorneys, its Committee of Unsecured Creditors (including agents, attorneys and contractors of its Committee of Unsecured Creditors), insurers and employees, past and present, and each of them, together and each of them collectively referred to as "Releasees," from any and all claims, agreements, obligations, demands and causes of action, known or unknown, suspected or unsuspected, by Employee arising out of or in any way connected with Employee's employment relationship with the Company, or any other transactions, occurrences, acts or omissions or any loss, damage or injury whatever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of said Releasees, or any of them, committed or omitted prior to the effective date of this Release Agreement, including, without limiting the generality of the foregoing, but not limited to, any claim under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, the California Family Rights Act, or any other federal, state or local law, regulation or ordinance; provided, however, that such covenant not to sue and release does not apply to (1) any obligation created by or arising out of this Agreement for which receipt or satisfaction has not been acknowledged; (2) any right to indemnification that Employee may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Releasee with respect to any loss, damages or expenses (including but not limited to attorneys' fees) that Employee may in the future incur with respect to Employee's service as an employee, officer or director or in any other capacity with any Releasee; (3) with respect to any rights that Employee may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any Releasee; (4) Employee's rights to continued medical coverage under COBRA; (5) any rights to payment of benefits that Employee may have under a qualified or nonqualified retirement plan sponsored or maintained by any Releasee (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits); (6) any wages for all legitimately worked and earned time, which has been documented and approved, which has not been paid (including, without limitation, payment for accrued, unused vacation hours), but not including any notice period covered by WARN or any applicable similar state statute; and (7) Employee's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended).

It is a further condition of the consideration hereof and Employee's intention that in executing this General Release Agreement that it should be effective as a bar to each and every claim, demand and cause of action stated above. In furtherance of this intention, Employee hereby expressly waives any and all rights and benefits conferred upon Employee by the provisions of SECTION 1542 OF THE CALIFORNIA CIVIL CODE and expressly consents that this General Release Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action referred to above. SECTION 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

7.     **Agreement to Cooperate.** Employee agrees to respond to all inquiries of New Century about any matters concerning New Century, its affiliates or their affairs that occurred or arose during the

RLF1-3187267-1

period of Employee's employment by New Century, and Employee further agrees to cooperate fully with New Century in investigating, prosecuting and defending any charges, claims, demands, liabilities, causes of action, lawsuits or other proceedings by, against or involving New Century and/or its affiliates relating to the period during which Employee was employed by New Century or relating to matters of which Employee has or should have knowledge or information.

8.  **Miscellaneous.**  This Agreement is entered into, and shall be governed by and construed and interpreted in accordance with the laws of the State of California.  If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions or application and to this end the provisions of this Agreement are declared to be severable.  Any waiver of or breach of any of the terms of this Agreement shall not operate or be construed as a waiver of any other breach of such terms or conditions or of any other terms and conditions, nor shall any failure to enforce any provision hereof operate or be construed as a waiver of such provision or of any other provision.  Each party is entering into this Agreement voluntarily, without duress, with the consultation and advice of its legal counsel (or upon a voluntary waiver of the right to such consultation and advice), and with full understanding of its terms.

9.  **Entire Agreement and Amendment.**  The parties acknowledge and agree that this Agreement reflects their entire agreement that all payments under the Plan shall be in lieu of any other performance bonus or retention compensation under any other plan, program, agreement, applicable law, or policy otherwise applicable to the Plan Participants by the Company or any of its subsidiaries.  This Agreement constitutes the complete, final and exclusive embodiment of the parties' entire agreement regarding these issues and supersedes and renders null and void all prior agreements between Employee and the Company with regards to these issues.  This Agreement may not be amended or modified except by a written instrument signed by both parties.

10. **Facsimile Acceptance.**  A signed facsimile transmission of this Agreement shall have the same force and effect as delivery of a signed hard-copy original of the Agreement.

*Notwithstanding any other provision of this Agreement, by signing below, you acknowledge and agree that nothing contained in this Agreement is intended to be, or shall be construed to constitute, an assurance of continued employment for a definite period of time or until the occurrence of cause to terminate employment. Subject only to the provisions relating to payment or the provision of other consideration upon any contingency or condition expressly stated herein, the Company may terminate your employment with or without cause at any time or for any lawful reason. You also acknowledge that the Company has not made, nor herein makes, any representation about the tax consequences of any payments or benefits offered by the Company to you pursuant to this Agreement.*

**Draft WDRP Release Agreement (Under 40)**

By signing this Agreement, Employee acknowledges and agrees that Employee has read the foregoing terms regarding the Employee's participation in the attached Wind Down Retention Plan and understands and acknowledges the significance of the terms in this Agreement and executes this Agreement voluntarily and with full understanding of its consequences.

If the above terms are acceptable, please signify your agreement and acceptance by signing and dating this letter and returning a signed copy to New Century.

**NEW CENTURY FINANCIAL CORPORATION**

**ACCEPTED AND AGREED:**

By: _____

Signed: _____

Its: _____

Name: _____

Date:   August ___, 2007 _____

Draft WDRP Release Agreement (Over 40)



A NEW SHADE OF BLUE CHIP™

## WIND DOWN RETENTION PLAN RELEASE AGREEMENT

To:

| | | |
|---|---|---|
| From: | Holly Felder Etlin | Janet Okimoto |
| | Chief Executive Officer | Senior Vice President |
| | | Leadership & Organizational Development |

Date:     August __, 2007

New Century views your role as critical to ongoing efforts to consummate the sale of its remaining assets and to assist in tasks necessary for liquidation. In acknowledgment of the contributions you have offered and will continue to offer by remaining a committed part of the organization, we are pleased to confirm that we have selected you as a participant in a Wind Down Retention Plan (the "Plan") designed to appropriately compensate you for your enthusiastic involvement in assisting the New Century to achieve the business goals identified in the Plan and/or to aid in the retention of our key employees. A copy of the Plan is attached hereto as Exhibit A.

In consideration of the provisions contained in the Plan, including but not limited to the parties' agreement that all payments under the Plan shall be in lieu of any other performance bonus or retention compensation under any other plan, program, agreement, applicable law, or policy otherwise applicable to the Employee by the Company or any of its subsidiaries, _____ ("Employee") and New Century Financial Corporation, including its affiliated entities (collectively, the "Company" or "New Century"), agree as follows:

1. **Effective Date of Agreement**. This Agreement shall be effective as of the date signed by Employee (the "Effective Date").

2. **Payments**. Each plan participant shall be eligible to receive a Retention Bonus set forth opposite his or her name on Exhibit A to the Plan. Retention Bonuses shall be paid, if at all, on the release date provided each plan participant fulfills the requirements as set forth in the Plan.

3. **Eligibility.** The Plan covers the employees of the Company and its subsidiaries listed the employee schedule (the "Plan Participants") set forth on Exhibit A to the Plan.

4. **At-Will Employment, Full-Time Attention, and Good Standing**. This Agreement is in no manner intended to constitute a promise of employment for this or any other period of time, or to otherwise change Employee's at-will employment status. Employee shall continue to devote Employee's best efforts and full business time and attention to the performance of the services customarily incident to Employee's position, and to such other services as management may reasonably request. It is mandatory to the payment of any Retention Bonus that the Employee is actively employed in Employee's current position in good standing, and not subject to discipline, on the date the payment is actually made. If Employee voluntarily terminates his or her employment or if Employee's employment is terminated by the Company for cause prior to payment of the Retention Bonus, Employee's right to any Retention Bonus payment also terminates. However, if the Company terminated Employee's employment prior to payment of the Retention Bonus without cause, as a result of a position elimination or reduction in force, Employee remains eligible to receive the full applicable bonus payment.

**Draft WDRP Release Agreement (Over 40)**

5.      **Jurisdiction.** The Company and Employee agree that the United States Bankruptcy Court for the District of Delaware shall have the exclusive jurisdiction to consider any issue related to the Employee's entitlement to, or calculation of, any payment to be made under the Plan.

6.      **General Release.** In exchange for remittance of all applicable payments described in Paragraph 2 of this Agreement, less standard withholding and authorized deductions, and for other good and valuable consideration, receipt of which is hereby acknowledged, Employee hereby covenants not to sue and, to the fullest extent permitted by law, acknowledges full and complete satisfaction of and release and discharge of New Century Financial Corporation, its subsidiaries and affiliated corporations, past and present, and each of them, as well as its and their directors, officers, agents, attorneys, its Official Committee of Unsecured Creditors (including agents, attorneys and contractors of its Committee of Unsecured Creditors), insurers and employees, past and present, and each of them, together and each of them collectively referred to as "Releasees," from any and all claims, agreements, obligations, demands and causes of action, known or unknown, suspected or unsuspected, by Employee arising out of or in any way connected with Employee's employment relationship with the Company, or any other transactions, occurrences, acts or omissions or any loss, damage or injury whatever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of said Releasees, or any of them, committed or omitted prior to the effective date of this Release Agreement, including, without limiting the generality of the foregoing, but not limited to, any claim under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, the California Family Rights Act, or any other federal, state or local law, regulation or ordinance; provided, however, that such covenant not to sue and release does not apply to (1) any obligation created by or arising out of this Agreement for which receipt or satisfaction has not been acknowledged; (2) any right to indemnification that Employee may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Releasee with respect to any loss, damages or expenses (including but not limited to attorneys' fees) that Employee may in the future incur with respect to Employee's service as an employee, officer or director or in any other capacity with any Releasee; (3) with respect to any rights that Employee may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any Releasee; (4) Employee's rights to continued medical coverage under COBRA; (5) any rights to payment of benefits that Employee may have under a qualified or nonqualified retirement plan sponsored or maintained by any Releasee (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits); (6) any wages for all legitimately worked and earned time, which has been documented and approved, which has not been paid (including, without limitation, payment for accrued, unused vacation hours), but not including any notice period covered by WARN or any applicable similar state statute; and (7) Employee's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended).

It is a further condition of the consideration hereof and Employee's intention that in executing this General Release Agreement that it should be effective as a bar to each and every claim, demand and cause of action stated above. In furtherance of this intention, Employee hereby expressly waives any and all rights and benefits conferred upon Employee by the provisions of SECTION 1542 OF THE CALIFORNIA CIVIL CODE and expressly consents that this General Release Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action referred to above. SECTION 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

RLF1-3187272-1

**Draft WDRP Release Agreement (Over 40)**

7.  Employee expressly acknowledges and agrees that, by entering into this Agreement, Employee is waiving any and all rights or claims that Employee may have arising under the Age Discrimination in Employment Act of 1967, as amended, which have arisen on or before the date of execution of this Agreement. Employee further expressly acknowledges and agrees that:

    (a)  In return for this Agreement, Employee will receive compensation beyond that which Employee was already entitled to receive before entering into this Agreement;

    (b)  Employee was orally advised and is hereby advised in writing by this Agreement to consult with an attorney before signing this Agreement;

    (c)  Employee was given a copy of this Agreement on May __, 2007, and informed that Employee had 21 days within which to consider the Agreement; and

    (d)  Employee was informed that Employee has seven (7) days following the date of execution of this Agreement in which to revoke this Agreement in entirety. Any revocation of the Agreement must be in writing and hand delivered during the revocation period. This Agreement will become effective and enforceable seven (7) days following execution by Employee, unless it is revoked during the seven-day period following Employee's execution.

8.  **Agreement to Cooperate.** Employee agrees to respond to all inquiries of New Century about any matters concerning New Century, its affiliates or their affairs that occurred or arose during the period of Employee's employment by New Century, and Employee further agrees to cooperate fully with New Century in investigating, prosecuting and defending any charges, claims, demands, liabilities, causes of action, lawsuits or other proceedings by, against or involving New Century and/or its affiliates relating to the period during which Employee was employed by New Century or relating to matters of which Employee has or should have knowledge or information.

9.  **Miscellaneous.** This Agreement is entered into, and shall be governed by and construed and interpreted in accordance with the laws of the State of California. If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions or application and to this end the provisions of this Agreement are declared to be severable. Any waiver of or breach of any of the terms of this Agreement shall not operate or be construed as a waiver of any other breach of such terms or conditions or of any other terms and conditions, nor shall any failure to enforce any provision hereof operate or be construed as a waiver of such provision or of any other provision. Each party is entering into this Agreement voluntarily, without duress, with the consultation and advice of its legal counsel (or upon a voluntary waiver of the right to such consultation and advice), and with full understanding of its terms.

10.  **Entire Agreement and Amendment.** The parties acknowledge and agree that this Agreement reflects their entire agreement that all payments under the Plan shall be in lieu of any other performance bonus or retention compensation under any other plan, program, agreement, applicable law, or policy otherwise applicable to the Plan Participants by the Company or any of its subsidiaries. This Agreement constitutes the complete, final and exclusive embodiment of the parties' entire agreement regarding these issues and supersedes and renders null and void all prior agreements between Employee and the Company with regards to these issues. This Agreement may not be amended or modified except by a written instrument signed by both parties.

11.  **Facsimile Acceptance.** A signed facsimile transmission of this Agreement shall have the same force and effect as delivery of a signed hard-copy original of the Agreement.

*Notwithstanding any other provision of this Agreement, by signing below, you acknowledge and agree that nothing contained in this Agreement is intended to be, or shall be construed to constitute, an*

**Draft WDRP Release Agreement (Over 40)**

*assurance of continued employment for a definite period of time or until the occurrence of cause to terminate employment. Subject only to the provisions relating to payment or the provision of other consideration upon any contingency or condition expressly stated herein, the Company may terminate your employment with or without cause at any time or for any lawful reason. You also acknowledge that the Company has not made, nor herein makes, any representation about the tax consequences of any payments or benefits offered by the Company to you pursuant to this Agreement.*

By signing this Agreement, Employee acknowledges and agrees that Employee has read the foregoing terms regarding the Employee's participation in the attached Wind Down Retention Plan and understands and acknowledges the significance of the terms in this Agreement and executes this Agreement voluntarily and with full understanding of its consequences.

If the above terms are acceptable, please signify your agreement and acceptance by signing and dating this letter and returning a signed copy to New Century.

**NEW CENTURY FINANCIAL CORPORATION**

By: _____

Its: _____

**ACCEPTED AND AGREED:**

Signed: _____

Name: _____

Date:  August ___, 2007 _____

## ACKNOWLEDGMENT AND WAIVER

I hereby acknowledge that I was given 21 days to consider the foregoing Wind Down Retention Plan Agreement and voluntarily chose to sign the Agreement prior to the expiration of the 21-day period.

I declare under penalty of perjury under the laws of the State of California, and the United States of America that the foregoing is true and correct.

EXECUTED this _____ day of _____ 2007, at _____, California.
                                             [month]                              [city]

EMPLOYEE

_____
[Name]

**EXHIBIT B**

**[The Amended KEIP]**

# AMENDMENT NO. 1 TO THE NEW CENTURY
# FINANCIAL CORPORATION
# KEY EMPLOYEE INCENTIVE PLAN

This Amendment No. 1 (this "**Amendment**") to The New Century  Financial Corporation Key Employee Incentive Plan (the "**Original Plan**") is designed to maximize assets available for distribution to creditors by providing incentives to certain of the Company's senior executives to maximize the consideration received by the Company upon the consummation of the Other Assets Sales. This Amendment provides that these senior executives will be eligible for additional incentive bonuses to the extent that the liquidation prices received upon the consummation of the Other Asset Sales exceeds the Target Price set forth in the Original Plan. All capitalized terms not defined herein shall have the meaning given to them in the Original Plan.

This Amendment amends the Original Plan as follows:

The first sentence of the "Eligible Employees:" section of the Original Plan is replaced in its entirety with the following:

"The Plan covers the employees of the Company and its subsidiaries listed on the tables titled "Tier I Employees" (the "**Tier I Employees**"), "Tier II Employees" (the "**Tier II Employees**"), "Tier III Employees" (the "**Tier III Employees**"), "Tier IV Employees" (the "**Tier IV Employees**") and "Tier V Employees" (the "**Tier V Employees**" (collectively, the "**Plan Participants**"), each attached as part of Exhibit A hereto ("Exhibit A")."

The final sentence of the first paragraph of the "Eligible Employees:" section of the Original Plan is replaced in its entirety with the following:

"Tier I Employees, Tier II Employees, Tier III Employees and Tier IV Employees will be eligible to participate in those Plan Pools (as defined below) for which an amount has been set forth opposite their name in the column designated for such Plan Pool on Exhibit A and those employees of the Company whose names are listed again in the table titled "Tier V Employees" on Exhibit A will also be eligible to receive the additional amounts set forth opposite their name from the Other Assets Sale Pool (as defined below) in addition to being eligible to receive any amounts from the Other Assets Sale Pool set forth opposite their names in the Tier I Employees, Tier II Employees, Tier III Employees or Tier IV Employees tables, with the entitlement to any awards subject to the other terms and conditions of the Plan as set forth herein."

The following paragraphs are inserted at the end of the section of the Original Plan titled "Other Assets Sale Pool":

"An additional Contribution or Contributions ("**Additional Contributions**"), if any, upon the consummation of the Other Assets Sales will be based on the extent to which the Other Asset Sale Price equals or exceeds the Target Price and will be calculated as follows:

Additional Contributions, if any, upon the consummation of the Other Assets Sale will be calculated based on the extent to which the Other Assets Sale Price equals or exceeds the Target Price. There will be no Additional Contributions if the Other Assets Sale Price is less than the Target Price. If the Other Assets Sale Price is equal to the Target Price, an Additional Contribution will be made in the amount of $184,077. If the Other Assets Sale Price is greater than the Target Price, Additional Contributions will be made equal to $184,077 plus 0.5% of the amount by which the Other Assets Sale Price exceeds the Target Price e.g. if the Other Assets Sale Price is $X, then the Additional Contribution to the Other Assets Sale Pool will be equal to ($184,077 + (0.5% X ($X~ Target Price))."

The first sentence of the "Plan Payments:" section of the Original Plan is replaced in its entirety with the following:

"Plan Participants shall receive the portion(s) of the minimum contribution(s) to each Plan Pool set forth opposite their names on Exhibit A in the event that the minimum condition necessary for the Company to make a contribution(s) to such Plan Pool (each a "Target") is satisfied but not exceeded."

The second sentence of the "Plan Payments:" section of the Original Plan is replace in its entirety with the following:

"In the event any Target is exceeded, and the Company makes a contribution greater than the minimum contribution(s) to any Plan Pool, Plan Participants will be eligible for the same proportion of that contribution, including for Tier V Employees the Additional Contributions, as of the minimum contribution(s) e.g. if a hypothetical participant had $22,219.00 set forth opposite his name in the column designated for the Mortgage Assets Sale Pool, such participant would be eligible to receive 10% ($22,219.90 / $222,190) of the Mortgage Assets Sale Contribution."

The following table is inserted at the end of Exhibit A of the Original Agreement:

[REDACTED]

2

| Pool at Threshold ≈ $126,992 | | | |
|---|---|---|---|
| | | | At Threshold |
| Name | Title | % Participation | Incentive Payout |
| | | 0 1201 | $15,255 |
| | | 0 2057 | $26,125 |
| | | 0.1822 | $23,142 |
| | REDACTED | 0 0670 | $8,514 |
| | | 0 1345 | $17,081 |
| | | 0 0729 | $9,255 |
| | | 0.0423 | $5,368 |
| | | 0 1108 | $14,068 |
| | | 0 0645 | $8,185 |
| | | | |
| | | TOTAL | $126,992 |