# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., | : | Case No. 07-10416 (KJC) |
| a Delaware corporation, *et al.*, | : | (Jointly Administered) |
| | : | Hr'g Date: August 21, 2007 at 1:30 p.m. |
| Debtors. | : | Obj. Deadline: August 14, 2007 at 4:00 p.m. |
| | : | Related Docket Item 2157 |

## OBJECTION OF NABIH AND ESTHER MANGOUBI
## TO THE DEBTORS' MOTION TO EXPAND SCOPE OF ORDER
## ESTABLISHING MISCELLANEOUS SALE PROCEDURES

COME NOW Nabih and Esther Mangoubi (together, the "Landlord"), as sole beneficiaries of Illinois Land Trust No. R-3679 (the "Land Trust"), which is the landlord of the premises located at 500 Peterson Road, Libertyville, IL 60048 (the "Premises"), by and through undersigned counsel, William D. Sullivan, LLC, and bring their objection (the "Objection") to the above-captioned debtors' (the "Debtors") *Motion to Expand Scope of Order Establishing Miscellaneous Sale Procedures* (the "Expansion Motion") and in support of their Objection respectfully state as follows:

### Background

1. Pre-petition, on February 26, 1997, the Landlord, through the trustee of their Land Trust and the Debtors' predecessor-in-interest entered into that certain Building Lease relating to the Premises (the "Building Lease").

2. On April 2, 2007 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

3. On April 25, 2007, the Court entered an *Order Pursuant to Sections 356* [sic] *and 554 of the Bankruptcy Code (A) Authorizing and Approving the Rejection of Certain Unexpired*

*Leases of Nonresidential Real Property and (B) Authorizing and Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases of Personal and Non-Residential Real Property* (the "Lease Rejection Order"). (D.I. 388).

4. The Premises/Building Lease is listed on Exhibit "B" to the Lease Rejection Order as Lease ID IL008. Lease Rejection Order, at Ex. B, p. 11 of 22.

5. Pursuant to the Lease Rejection Order, "[t]he leases identified on Exhibit "B" hereto are hereby rejected with rejection effective the later of (i) April 30, 2007 or (ii) the date the Debtors unequivocally relinquished control of the premises to the affected landlord by turning over the keys or "key codes" to the affected landlord." Lease Rejection Order, at ¶ 3 (emphasis supplied).

6. The Lease Rejection Order also provides that, "[t]he Debtors shall remove any leased personal property from the underlying premises prior to relinquishing control of the premises of the affected landlord." Lease Rejection Order, at ¶ 7.

7. The Lease Rejection Order goes on to provide that, "[w]ith respect to any personal property of the Debtors located at any of the premises subject to the leases identified on Exhibits "A" or "B", the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, where is, effective as of the date of rejection of the underlying expired lease." Lease Rejection Order, at ¶ 4.

8. On July 6, 2007, undersigned counsel for the Landlord spoke with the Debtors' local counsel, who advised that the Debtors were attempting to find their key in order to return it to the Landlord and that, in the meantime, Landlord was authorized to make a key and to enter the Premises; that the Debtors' movers had completed their task; that the Debtors were done with the space; and that anything left inside the Premises was abandoned to the Landlord.

2

9. On or about July 11, 2007, the Landlord (but not their counsel) received a facsimile from the Debtors seeking the Landlord's agreement to various factual and legal misrepresentations, including, *inter alia*, a contention purporting to establish June 30, 2007 as the date upon which the Debtors, "unequivocally relinquished control of the Premises to Landlord...." (the "Waiver Letter"). A copy of the Waiver Letter is attached hereto as Exhibit A. Because the Waiver Letter did not reflect the reality of the circumstances, the Landlord refused to sign the Waiver Letter.

10. On July 17, 2007, the Landlord received a call from someone named "Justine," purportedly from an outfit called OFC, who stated that she was calling on behalf of the Debtors and that she was under a court order to remove the furniture from and to broom clean the Premises and then to turn it over to the Landlord once the removal of furniture and cleaning were completed. Justine requested access to the Premises, whereupon she was advised that the Landlord did not have a key.

11. That same day, undersigned counsel for the Landlord communicated with the Debtors' local counsel and advised that the Debtors' failure to tender the key to the Premises was resulting in ongoing problems at that location, as evidence by the OFC incident.

12. On July 31, 2007, the Landlord had a key made and entered the Premises. A representative of the Hinckley Spring water cooler company had observed a locksmith at the Premises and attempted to barge in and physically seize a water cooler. In refusing to surrender leased personal property of the Debtors that the Landlord understood to be subject to court order, the Landlord was almost placed under arrest by local police.

13. On August 3, 2007, the Debtors filed the Expansion Motion.

14. On August 8, 2007, after re-establishing electric service to the Premises, the Landlord again entered the Premises, whereupon the Landlord noticed what appeared to be several additional pieces of leased personal property remaining on the Premises, including large computer servers and routers, and that the Premises had sustained physical damage and was far from broom clean.

15. The Expansion Motion is not a model of clarity. For example, it fails to include a schedule of the miscellaneous personal property that the Debtors wish to sell or the current location(s) of those assets. The Expansion Motion appears to seek authority, *inter alia*, to conduct sales of the Debtors' leased personal property (that has not already been transported to a central storage facility) <u>on site at landlords' premises</u>. Expansion Motion, at ¶¶ 7-8, 21; proposed form of order, at Ex. A (Miscellaneous Sale Procedures), ¶ 8. Given the Landlord's observation of what appears to be leased personalty of the Debtors that remains on the Premises, the Landlord surmises that the Debtors may intend for the Expansion Motion to apply to the Premises. Additionally, while the Expansion Motion states that, "the Debtors will only be permitted to sell formerly <u>leased</u> personal property of <u>lessors</u>," Expansion Motion, at ¶ 9 (emphasis supplied), the Miscellaneous Sale Procedures attached to the proposed form of order appear to apply, generally, to "office furniture and equipment," whether leased from a lessor or not, Expansion Motion, at proposed form of order, Ex. A (Miscellaneous Sale Procedures), ¶ 1.

16. As of the date of filing this Objection, the Landlord still has not received the keys or any other unequivocal relinquishment of control of the premises.

### The Objection

17.   Landlord objects to the Expansion Motion because (i) it is unclear as to precisely what relief the Debtors are seeking and, to the extent that it is intended to apply to the Premises, (ii) it either (a) conflicts impermissibly with the Lease Rejection Order or (b) should be deemed by the Court to be an estoppel of any contention on the part of the Debtors that they have thus far effectuated any unequivocal relinquishment of control of the Premises.

### Basis for the Objection

#### A.   The Relief Being Sought Pursuant to the Expansion Motion is Unclear.

18.   The Expansion Motion is unclear for a number of reasons, all of which must be clarified before the Court should consider the motion on its merits.

19.   First, it is unclear whether the Debtors are, in fact, seeking authority to sell personal property on site at landlords' premises or, rather, only after such personalty has been transported at the Debtors' expense to central storage facilities.

20.   Next, it is unclear whether the Debtors are seeking authority to sell only leased personal property or any "office furniture and equipment," regardless of whether it is leased or owned outright by the Debtors (the latter, according to proposed form of order, at Ex. A ¶ 1, only after obtaining the written consent of the Creditors' Committee). As no inventory schedule was attached to the Expansion Motion, the Landlord can not distinguish between leased personalty of the Debtors remaining on the Premises (that would be subject to future sale, "AS IS-WHERE IS", if the Expansion Motion were granted) and abandoned personalty of the Debtors (which, pursuant to the Lease Rejection Order, the Landlord should be free to dispose of without regard to the Debtors' wishes).

5

21. Next, it is unclear whether the Debtors intend for the Expansion Motion to apply to the Landlord's Premises in particular. Given that it appears that certain leased personalty (not to mention office furniture and equipment) remains on the Premises, the Landlord's ability immediately to re-let the Premises has been foreclosed and, at a minimum, the Court should order that, for the period of time that the Premises are subject to the potential conduct of a miscellaneous asset sale being held thereon, the Landlord is deemed released from any obligation to mitigate damages in connection with any claim for damages sustained in connection with the rejection of the Building Lease that the Landlord may choose to file, if and when the Building Lease is properly rejected. Moreover, until the Debtors unequivocally renounce any possibility that such a sale may potentially take place at the Premises (and until the Debtors remove all leased personal property therefrom <u>and</u> <u>then</u> return the keys), the Court should require the Debtors to pay administrative rent (and perform all other obligations under the Building Lease) pursuant to Section 365(d)(3) of the Bankruptcy Code.

22. Finally, it is unclear whether the statement that, "the relevant lease agreement has been properly rejected....," Expansion Motion, at ¶ 9, is meant to apply solely to personal property leases or also to real property leases.

### B. The Expansion Motion Conflicts Impermissibly with the Lease Rejection Order.

23. To the extent that the statement that, "the relevant lease agreement has been properly rejected....," Expansion Motion, at ¶ 9, can be construed as applying to the lease of any landlord's premises, it contradicts the Lease Rejection Order and renders the Expansion Motion procedurally improper.

24. The Lease Rejection Order provides that, "[t]he Debtors shall remove any <u>leased</u> <u>personal property</u> from the underlying premises <u>prior to</u> relinquishing control of the premises of

the affected landlord." Lease Rejection Order, at ¶ 7 (emphasis supplied). Accordingly, it is logically impossible for the Court to find that the Debtors have "relinquished control of the premises of the affected landlord" or that the affected landlord's real property lease has been "properly rejected" where the possibility exists that a miscellaneous asset sale may yet take place on any landlord's premises. And yet, the Expansion Motion states that, as a condition precedent to the conduct of a miscellaneous asset sale, "the Debtors will only be permitted to sell formerly leased personal property on behalf of lessors if (i) the relevant lease agreement has been properly rejected." Expansion Motion, at ¶ 9. To the extent that this language is intended to apply to any landlord's real property lease, it conflicts impermissibly with the Lease Rejection Order.

25. Again, until the Debtors unequivocally renounce any possibility that such a sale may potentially take place at the Premises (and until the Debtors remove all leased personal property therefrom <u>and</u> <u>then</u> return the keys), the Court should require the Debtors to pay administrative rent (and perform all other obligations of the Building Lease) pursuant to Section 365(d)(3) of the Bankruptcy Code.

26. To the extent that the Debtors are seeking, pursuant to the Expansion Motion, to make an end-run around the requirements of the Lease Rejection Order, the Expansion Motion is procedurally improper and should be denied.

### C.   Alternatively, the Expansion Motion Requires Estoppel.

27. To the extent that the Debtors are not seeking to make an end-run around the requirements of the Lease Rejection Order, the Court should find that the Debtors have adopted inconsistent positions and, therefore, that they are judicially estopped from <u>denying</u> that they have <u>failed</u> to (i) "properly reject" or (ii) effectuate any "unequivocal relinquishment" of control of any premises where their leased personal property continues to remain. Teledyne Indus., Inc.

7

v. N.L.R.B., 911 F.2d 1214, 1217-18 (6th Cir. 1990) ("Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment."). Accordingly, in any such case, the Court should require the Debtors to pay administrative rent (and perform all other obligations of the lease of the premises) pursuant to Section 365(d)(3) of the Bankruptcy Code.

## Conclusion

WHEREFORE, the Landlord respectfully requests that the Court enter an order (i) sustaining the Objection, (ii) denying the Expansion Motion, (iii) compelling the Debtors immediately to perform all of their unperformed post-petition lease obligations with respect to the Building Lease pursuant to Section 365(d)(3) of the Bankruptcy Code, and (iv) granting to the Landlord such other and further relief and the Court deems just and proper.

Dated: August 14, 2007
Wilmington, Delaware

WILLIAM D. SULLIVAN, LLC

*E.E. Allinson III*
William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

*Counsel for Nabih and Esther Mangoubi, as sole beneficiaries of Illinois Land Trust No. R-3679*

8