UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                          . Case No. 07-10416-KJC
                                .
                                .
  NEW CENTURY TRS HOLDINGS,     .
     INC., et al.,              . 824 Market Street
                                . Wilmington, DE  19801
                  Debtors.   .
                                . July 31, 2007
. . . . . . . . . . . . . . . . 1:37 p.m.
```

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                Richards, Layton & Finger, P.A.
                                By:  MICHAEL MERCHANT, ESQ.
                                One Rodney Square
                                920 N. King Street
                                P.O. Box 551
                                Wilmington, DE 19899

For JP Morgan:                  Landis, Rath & Cobb
                                By:  MATTHEW B. McGUIRE, ESQ.
                                919 Market Street, Suite 600
                                Wilmington, DE 19801

For Bank of America:            Potter, Anderson & Corroon, LLP
                                By:  GABRIEL R. MACCONAILL, ESQ.
                                Hercules Plaza
                                1313 North Market Street
                                Wilmington, DE  19801

Audio Operator:                 Jason Smith

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

2

APPEARANCES (Cont'd.)

For NY State Teachers          Lowenstein Sandler PC
Retirement System:             By:  IRA LEVEE, ESQ.
                               65 Livingston Avenue
                               Roseland, New Jersey 07068-1791


For Coremetrics:               Connolly Bove Lodge & Hutz
                               By:  MARC PHILLIPS, ESQ.
                               The Nemours Building
                               1007 North Orange Street
                               Wilmington, DE 19899


For KPMG LLP:                  Sidley Austin, LLP
                               By:  GUY S. NEAL, ESQ.
                               New York NY


                               Campbell, Levine
                               By:  MARK T. HURFORD, ESQ.
                               800 N. King Street, Suite 300
                               Wilmington, DE 19801


For the U.S. Trustee:          Office of the U.S. Trustee
                               By:  JOSEPH McMAHON, ESQ.
                               844 King Street, Suite 2313
                               Lockbox 35
                               Wilmington, DE 19801


For the Committee:             Hahn & Hessen LLP
                               By:  MARK INDELICATO, ESQ.
                               488 Madison Avenue
                               14th and 15th Floor
                               New York, NY  10022


                               Blank Rome, LLP
                               By:  BONNIE GLANTZ FATELL, ESQ.
                               Chase Manhattan Centre
                               1201 Market Street
                               Suite 800
                               Wilmington, DE 19801


For Union Bank of California:  Pepper Hamilton LLP
                               By: DAVID FOURNIER, ESQ.
                               Hercules Plaza, Suite 5100
                               1313 Market Street
                               P.O. Box 1709
                               Wilmington, DE 19899-1709


**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (Cont'd.)

For Certain Officers re          Morris, James, LLP
Item 28:                         By:  CARL N. KUNZ, III, ESQ.
                                 500 Delaware Avenue, Suite 500
                                 Wilmington, DE 19801

For the Examiner:                Saul Ewing, LLP
                                 By:  MARK MINUTI, ESQ.
                                 222 Delaware Avenue, Suite 1200
                                 Wilmington, DE 19801

                                 K&L Gates
                                 By:  EDWARD FOX, ESQ.
                                      STEVEN TOPETZES, ESQ.

                                 The Law Offices of Edward Rosman
                                 By:  EDWARD ROSMAN, ESQ.

TELEPHONIC APPEARANCES:

For the Debtors:                 O'Melveny & Myers LLP
                                 By:  SUZZANNE UHLAND, ESQ.
                                 Embarcadero Center West
                                 275 Battery Street
                                 San Francisco, CA  94111-3305

For Law Offices of David J.      Law Offices of David J. Stern PA
Stern, PA:                       By:  FREDERIC DISPIGNA, ESQ.

For Union Bank of                Jeffer Mangels Butler & Marmaro
California:                      By:  BARRY FREEMAN, ESQ.

For Murray Capital Mgmt.:        Murray Capital Management, Inc.
                                 By:  MARTI MURRAY

For UBS Real Estate              Paul Hastings Janofsky & Walker
Securities, Inc.:                By:  RICK CHESLEY, ESQ.

For Deutsche Bank, Inc.:         Bingham McCutchen, LLP
                                 By:  RICHARD AGINS, ESQ.

                                 Chadbourne & Park, LLP
                                 By:  DOUGLAS DEUTSCH, ESQ.

For Bank of America:             Kaye Scholer, LLP
                                 By:  NICHOLAS CREMONA, ESQ.

TELEPHONIC APPEARANCES (Cont'd.):

For Fidelity:              Baker & Hostetler
                           By:  PETER W. ITO, ESQ.

For Aaron Celious:         AARON CELIOUS, pro se

1          THE COURT:  Good afternoon all.

2          MR. MERCHANT:  Good afternoon, Your Honor, Mike

3  Merchant of Richards, Layton & Finger on behalf of the debtors.

4  Your Honor, matter Number 1 and 2 on the agenda orders have

5  been entered so there's no need for a further hearing on those

6  matters.  On agenda items 3 through 17 those are matters for

7  which certificates of no objection were filed.  I believe I've

8  seen orders on most, if not, all of those.  I don't know

9  whether Your Honor has any questions with respect to any of

10  those matters.

11          THE COURT:  I do.  Let's begin with Number 3.

12          MR. MERCHANT:  Okay, Your Honor.

13          THE COURT:  I see that Mr. -- is it pronounced

14  DiSpigna?

15          MR. DiSPIGNA:  Yes, Your Honor.

16          THE COURT:  Okay.  Is on the telephone.  I've

17  received a certification of no objection and I would like to

18  address with the debtors and I guess other parties concerned an

19  issue, I guess you could call it an administrative issue which

20  is arisen since this motion was filed and since we initially

21  had some discussion of the motion at an earlier hearing.  We've

22  received inquiry from at least one law firm which -- well, the

23  question was this.  "I have a relief from stay request that I'd

24  like to make on behalf of a number of lenders and covering many

25  different properties.  Do I have to file separate motions, pay

1  a fee, create the paperwork, or can I file one motion?"

2      We've, I guess, conducted our own research to answer

3  the question about what are the requirements.  And I'm told

4  that there are specifically no requirements or no guidelines

5  which answer that question, and that how to determine how these

6  motions should be presented is up to the Judge of the case.

7  And after having given some thought to it what I've concluded

8  is that because there are more coming apparently and so that

9  everyone is treated the same I am going to require separate

10  motions, not by each property which seems to me to be unduly

11  burdensome and potentially expensive, but to require motions by

12  lender.

13      And the one inquirer who asked will be informed of

14  that if he hasn't been already.  And after having made that

15  decision which  literally was just this morning because our

16  contact with the AO wasn't concluded until yesterday or today,

17  I intend to treat this motion the same way.  So I wanted to let

18  counsel know that.  I'm sorry that this issue wasn't surfaced

19  until this late of a stage in the proceedings.  It's my

20  intention to grant the relief so that's not an issue.

21      So I guess my question to the movant here is how many

22  lenders on whose behalf was this motion filed?

23      MR. DiSPIGNA:  It's about ten to 12 lenders.  If the

24  Court would like I can submit an order naming each lender

25  individually.

1          THE COURT:  I think what I'd like you to do is --

2          MR. DiSPIGNA:  I'm sorry to interrupt.  I meant to

3    say I could submit separate orders.  One for each lender.

4          THE COURT:  Well, now I'll get you into the

5    government explanation.  Not filing separate motions has two

6    implications.  One is for statistical purposes and the other is

7    for revenue generating purposes.  I care -- let me put it this

8    way.  For those who are interested in such things I understand.

9    I am less concerned about that than trying to devise a vehicle

10   that gives due regard to what the government would ordinarily

11   require yet without imposing what I would view as unreasonable

12   burdens financial or otherwise upon the parties involved.  And

13   that's not just the movant, but those who have to review such

14   motions and decide what, if any, positions to take about them.

15          So my thought is even though we've traveled a little

16   bit further down this road on this motion is to ask you to file

17   a separate motion for each lender with respect to the

18   properties covered by this motion.  You have one motion for

19   lender.  You may certify in the motion that it's uncontested

20   and I'll grant the relief literally as soon as they're filed

21   and the forms of order come to my chambers.

22          MR. DiSPIGNA:  Okay.

23          MS. UHLAND:  Your Honor, this is Suzanne Uhland with

24   the O'Melveny & Myers.  May I be heard briefly on this matter.

25          THE COURT:  You may.

1      MS. UHLAND:  Yes, Your Honor, I just wanted to point

2  out what we've learned from the point of view from the debtor's

3  side as this process has been evolving with respect to the

4  motions for relief from stay.  As it turns out almost every

5  single motion relates to a property, most of them that were

6  sold by the debtors prepetition -- where the loans were sold by

7  the debtor prepetition but there is a lag in the real property

8  record and therefore New Century's name is still listed as a

9  lien holder of record that requires notice of the foreclosure.

10      So when -- so that from the debtor's point of view

11  with the way the process works with each relief stay motion we

12  get we take the properties, hopefully they're identified with

13  specificity sufficient for us to put them into our electronic

14  database, confirm that we no longer own the property and as has

15  been the case -- sorry, no longer own the loan and then as has

16  been the case with all the motions filed if we don't own the

17  loan and have sufficient information to determine that we don't

18  object and then the parties can go ahead and the movants can

19  file their relief.

20      So from the debtor's point of view, just for the

21  Court's information, we go through property by property to make

22  this determination.  So it's not really a lender by lender

23  issue, it's a property by property issue for the basis of

24  determining whether or not we still have any beneficial

25  interest.

1          THE COURT:  All right.  Thank you.

2          MR. DiSPIGNA:  Your Honor, may I say something about

3 what's just been said?

4          THE COURT:  You may.

5          MR. DiSPIGNA:  This is Frederick DiSpigna.  I'm aware

6 of one post-petition order approving sales of mortgages.  I was

7 unaware that there a number of mortgages that were sold

8 prepetition, and rather than have creditors file unnecessary

9 motions for properties that the debtor didn't own on the

10 petition date I'd like to inquire if there's some way that

11 creditors could have access to this database of loans which

12 were sold prepetition.

13          THE COURT:  Any response from the debtor?

14          MS. UHLAND:  Your Honor, I don't know that, I mean,

15 we have a proprietary access -- proprietary database of every

16 -- all $60 billion of loans that were generated and sold in the

17 prior year.  So I don't really think it's possible for the

18 creditors to really to get access.  Like I said, we've looked

19 enough as they are requested by the movant when we see the

20 motion.  But I don't think we can, you know, allow a third

21 party into our proprietary database that contains all the

22 information.  Going forward we may be looking towards as the

23 case winds down some sort of formal process -- or some sort of

24 document depository or information depository relating to New

25 Century just to deal with all this data, but right now I think

1 we're still in a situation where we need to have the debtor

2 control, sort of looking up which loans it owns and no longer

3 owns.

4          THE COURT:  Well, let me ask this.  Is there anyway

5 to estimate at this point how many more of these requests for

6 relief are anticipated?

7          MR. DiSPIGNA:  Your Honor, this is Frederick

8 DiSpigna.  I don't know to whom that was addressed, but I have

9 about 70 more and I'm trying to decide how we're going to

10 proceed with regard to.  If I could just send a list of those

11 properties to the debtor and ask him if any of these have been

12 sold that would be very helpful.

13          THE COURT:  Well, that seems to be a reasonable

14 request.

15          MS. UHLAND:  That's fine, Your Honor.

16          THE COURT:  All right.  Okay.  Any other questions on

17 matter Number 3?  Counsel, do you understand what you need to

18 do at this point?

19          MR. DiSPIGNA:  Yes.  I will submit separate orders

20 for each lender.

21          THE COURT:  Separate motions with the filing fee.

22          MR. DiSPIGNA:  Separate motions and orders indicating

23 the motion that it's not deposed.

24          THE COURT:  And make sure when you file them you

25 deliver chambers copies and I'll act immediately on them.

1          MR. DiSPIGNA:  Yes.  Thank you, Your Honor.

2          THE COURT:  All right.  Thank you.

3          MR. DiSPIGNA:  Thank you.  I'm going to disconnect

4  now.

5          THE COURT:  All right.  Number 7, I'm prepared to

6  grant that relief as soon as I see a certificate of no

7  response.  One was not included in the binder.  One is noted on

8  the agenda, but there wasn't one in the binder.

9          MR. MERCHANT:  We'll send it over, Your Honor.

10          THE COURT:  All right.  Number 13, again, I'm okay

11  with that, but there was no form of order included in the

12  binder.

13          MR. MERCHANT:  I see the docket number noted.  We can

14  send that over as well.

15          THE COURT:  Okay.  Number 19, I signed today.  That

16  brings us to Number 20.

17          MR. MERCHANT:  Your Honor, agenda item Number 20 is

18  the debtors' motion seeking approval of investment guidelines

19  pursuant to Section 345 of the bankruptcy code.  We've been

20  working with the Office of the United States Trustee with

21  respect to the relief requested in that motion.  And I think

22  where we are we're trying to finalize the terms of an order but

23  we're not quite there yet.  What we would like to do is

24  continue that a week to the August 7th hearing.  In the event

25  that we can reach an agreement with the Office of the United

1 States Trustee on an acceptable form of order in between then

2 and now we'd like the ability to submit it under certification

3 of counsel.  But otherwise we'll go forward a week from today.

4          THE COURT:  Very well.

5          MR. MERCHANT:  On the 7th.  Agenda Item 21 is

6 Countrywide stay relief motion with respect to a piece of

7 property located in Detroit, Michigan.  I did see that they

8 filed a certification of counsel sometime yesterday.

9          THE COURT:  The order was signed today.

10         MR. MERCHANT:  Agenda item Number 22, Your Honor, is

11 the application to retain Baute & Tidus as special litigation

12 counsel.  They are involved in litigation relating to New

13 Century Financial Corporations claim of insurance coverage in

14 an action against Liberty Surplus Insurance Corporation and

15 certain additional parties.  We've been working with the Office

16 of the United States Trustee and the creditors' committee with

17 respect to that application.  I believe we've resolved all of

18 their concerns.  As requested by the Office of the United

19 States Trustee Baute & Tidus will be filing a supplemental

20 declaration.  After that supplemental declaration is filed we

21 will be submitting a form or order under certification of

22 counsel which will include among other things case caps for

23 Baute & Tidus.

24         THE COURT:  Okay.  And when you submit the

25 certification include the supplemental declaration with

1 chamber's package.

2          MR. MERCHANT:  We will, Your Honor.

3          THE COURT:  Thank you.

4          MR. MERCHANT:  Your Honor, agenda item Number 23 is

5 examiner's motion for an order authorizing the examination of

6 KPMG, LLP.  And I will cede the podium to counsel for the

7 examiner.

8          THE COURT:  Very well.

9          MR. TOPETZES  Good afternoon, Your Honor, Steven

10 Topetzes of K&L Gates on behalf of the examiner.  Your Honor,

11 the basis for an objective of the examiner's Rule 2004 motion

12 are straightforward.  Prior to the filing of the motion and

13 subsequently the examiner and his counsel have engaged in an

14 extensive with counsel for KPMG in an effort to facilitate

15 voluntary production of the requested materials by KPMG.

16 Although that dialogue has been cordial and productive on a

17 number of levels we were unable to reach agreement pursuant to

18 which KPMG would agree to produce voluntarily the materials.

19          However, this morning moments before the hearing I

20 was advised by counsel for KPMG that KPMG will not oppose the

21 entry of the order and will not oppose the examiner's right to

22 issue its proposed subpoena.  In its opposition papers as the

23 Court is aware KPMG communicated that it's willing to cooperate

24 with the examiner, but it raised a number of questions and

25 arguments including and substantially the arguments that center

1  on arbitration agreements contained within the engagement

2  letter signed by New Century and KPMG.  Counsel for KPMG has

3  confirmed this afternoon that KPMG will not assert that those

4  arbitration agreements impose limitations or preclude the

5  ability of the examiner to obtain data from KPMG as requested

6  by the examiner.

7          Under those circumstances I guess I would ask, with

8  the Court's permission, that counsel for KPMG address those

9  questions if the Court thinks that would be appropriate.  That

10 eliminates most of the issues related to the examiner's

11 motions.  I do have some related issues that we'd like to

12 present for the Court's consideration, however.

13         THE COURT:  Very well.

14         MR. HURFORD:  Good afternoon, Your Honor, Mark

15 Hurford, Campbell, Levine.  In the courtroom this afternoon is

16 Guy Neal who is lead counsel for KPMG.  We've not filed a pro

17 hac motion for him.  We will be doing this shortly, possibly

18 this afternoon.  He has admitted to practice before the United

19 States Supreme Court, the District of Colombia, the state of

20 Maryland and the state of Virginia and I would ask that he be

21 able to address the Court this afternoon.

22         THE COURT:  Good to see you again Mr. Neal.  Welcome.

23         MR. NEAL:  Good afternoon, Your Honor.  It's good to

24 be back before you especially on a different matter.  Counsel

25 for the examiners representation with respect to KPMG's

1  position is accurate.  We have some significant concerns as

2  well.  I will address those now and I'm sure the examiner can

3  confidently address his concerns.

4          We're here today, Your Honor, to say that KPMG has

5  been and continues to be committed to working with the examiner

6  to find a way that KPMG can fully cooperate with his

7  examination.  But it must be in a manner that is respectful and

8  consistent with KPMG's arbitration rights under its engagement

9  letters with New Century.  Now, these rights as we underscored

10 in our papers include a focused, efficient and a fair dispute

11 resolution process that KPMG and New Century agreed to under

12 the engagement letters under which KPMG performed its audit

13 work.

14         Now, KPMG asks for nothing more than a fair and

15 objective process that is consistent with these contractual

16 rights, but also a process that is consistent with the scope of

17 the examiner's mandate in the June 1, 2007 appointment order.

18 And it's really on that issue that we continue to be on

19 dialogue with the examiner and more likely than not after this

20 hearing and continuing will remain in dialogue with the

21 examiner.  And those are issues of scope.  But it's KPMG's

22 position that that issue is not really before the Court today.

23 Hopefully it never comes before the Court.  If the parties can

24 work together in resolving what stand at present to be some

25 disagreement over the scope of the document request and

16

1  production.

2          So to that end, Your Honor, KPMG doesn't object to

3  this Court's entry of the examiner's form of order.  That form

4  of order -- let me back up.  KPMG recognizes the examiner has a

5  job to do.  KPMG is willing to cooperate with the examiner to

6  allow him to do that job.  The order provides only, I submit,

7  it authorizes the examiner to conduct an examination of KPMG

8  consistent with the June 1 appointment order and it authorizes

9  him to use such subpoenas as may be necessary to conduct such

10  an examination.

11          As alluded to by counsel for the examiner we have

12  some issues with the scope of the subpoena, but we're not here

13  today to argue and go line item by line item in the subpoena.

14  The subpoena on its face is governed by Rule 45 of the Federal

15  Rules of Civil Procedure.  We hope to avoid having to come back

16  before Your Honor to the extent we have objections to the scope

17  of that subpoena, but I raise this objection now just to

18  underscore two points.  First, KPMG does not at present fully

19  agree with the proposed scope of that subpoena, but, Your

20  Honor, you have my assurances that KPMG has not drawn any line

21  in the sand and will need and confer with the examiner in good

22  faith with the goal of resolving any and all discovery issues

23  so that we do not have to be before your court in essence in a

24  discovery fight.

25          Now, in entering the examiner's proposed form of

1  order we ask that you also enter KPMG's protective order at the

2  same time.  And we ask that for two reasons.  First, it will

3  save KPMG the effort of having to move for the entry of a

4  protective order when responding to the subpoena, and it will

5  also speed up delivery of KPMG documents and information to the

6  examiner.

7          Now, Your Honor, I've provided or I attached a form

8  of order to our papers.  There's a typo in that form of order.

9  There's in fact, I think, a double negative, Your Honor.  If I

10 may hand Your Honor a clean and black line form of that

11 protective order.  You'll see in Paragraph 2, Page 3 we had a

12 double negative there that we've resolved with a little bit of

13 smithing this morning.  And it provides, "The examiner agrees

14 that he will not assert that KPMG's cooperation with the

15 examiner's investigation by informally providing KPMG's

16 confidential information constitutes a waiver of KPMG's right t

17 compel arbitration of any dispute subject to the arbitration

18 agreement in its engagement letters or KPMG's right to contest

19 the jurisdiction of the bankruptcy court."

20          Now, we submit that this order addresses two

21 paramount concerns of KPMG.  And we also submit that it does

22 not or will not impede the examiner in his examination efforts.

23 And we will submit that it's neutral in all respects to the

24 examiner.  One, it preserves KPMG's jurisdictional defenses

25 including its right to compel arbitration of any claim or

1 dispute asserted by New Century or any party standing in the

2 shoes of New Century.

3          Two, it expressly limits the examiner's use of the

4 documents to his own use.  In other words, the examiner cannot

5 use the documents for any purpose other than his examination.

6 And it also prevents him from disclosing the documents to third

7 parties including the committee which is frankly a potential

8 adversary.  Now, the protective order to sum up on that point

9 preserves KPMG's bargain for arbitration rights and allows KPMG

10 to cooperate fully with the examiner and to freely produce

11 documents to the examiner.  And we believe upon the protective

12 order's entry we can get documents to the examiner within the

13 week.

14          Now, as for the committee, we have, Your Honor, may

15 know that the committee filed a Rule 2004 examination asking

16 for the exact same documents that the examiner asks for in the

17 proposed subpoena.  The examiner asked for documents from

18 January 1, 2004 to the present.  The committee rolls it back

19 three years and asks for the same categories of documents from

20 January 2001 to the present.  Due to a quirk of scheduling ,

21 despite my best efforts in the summertime, we could not have

22 both motions heard on the same day.  The committee's motion is

23 next Tuesday, August 7th.

24          I spoke with counsel for the committee John McCahey

25 or Hahn & Hessen.  He kindly gave me a one day extension of my

1  objection deadline because it would have been today at four

2  while we're here.  And we'll be filing an objection similar in

3  many respects to the objection we filed with respect to the

4  examiner motion.  But I submit to you the issues are going to

5  be very different with respect to the committee's proposed

6  examination.  And you will more likely than not hear argument

7  on several of the cases that we cited in this motion.  The

8  Daisy Tech case and others with respect to allowing the

9  committee in the tent at this time.  We will maintain for next

10  week that that is not wise or appropriate.

11        But this order, this protective order, I assured Mr.

12  McCahey on the phone, is without prejudice to the committee's

13  motion.  Next week to the extent Your Honor's inclined to grant

14  the committee's motion perhaps this protective order will need

15  to be tweaked or amended to allow the committee to have access.

16  But, again, that's an argument for another day and another

17  time.  But this protective order does not waive any of the

18  committee's rights.  I want to be clear about that issue.

19        So, Your Honor, that concludes my presentation.

20  Again, we remain committed to cooperating with the examiner.

21  To the extent that subpoena is issued we may have some issues

22  related to scope, but we will do our best to work with the

23  examiner to resolve any and all issues before we have to come

24  back before Your Honor.  Thank you very much.

25        THE COURT:  Thank you.  Does anyone else care to be

1  heard in connection with this motion?

2         MR. INDELICATO:  Good afternoon, Your Honor.  Mark

3  Indelicato from Hahn & Hessen.  Your Honor, as counsel for KPMG

4  pointed out our motion for 2004 is going to be heard next week.

5  And I had hoped that we could, at least for a large part,

6  remain silent at today's hearing although I'm not used to that.

7  But we were going to try and let that happen today.  But, Your

8  Honor, we can't sit.  First of all, the representation was made

9  to this Court that this protective order will not affect the

10 rights of the committee.  And I guess in an abstract world

11 maybe that's philosophically correct.  In reality it's totally

12 incorrect.

13        And I have to take the Court back to, if you will

14 recall, the motion for the appointment of the examiner the

15 issues that the committee raised in fact when we opposed the

16 appointment of the examiner, the issues that we discussed with

17 the Court when in fact we agreed to the appointment of the

18 examiner.  We agreed that we would be working side by side with

19 the examiner sort of shadowing the examiner letting him take

20 the lead in a lot of the litigations and investigations that

21 the committee wanted to investigate under the understanding

22 that the committee was -- that the examiner was really working

23 for the same purposes.

24        And at the end of the day we would work out a process

25 where the examiner could share the information with the

1  committee so that the examiner would incur millions of dollars

2  of fees and then have to have the committee to the extent that

3  it indicates causes of action exist have to replicate the

4  wheel.  That's exactly what the protective order would require,

5  Your Honor.  The protective order that KPMG would have this

6  Court sign would require the examiner to destroy any and all

7  documents that they've gotten from KPMG once he issues the

8  report.

9         So, for example, if the examiner finds that a viable

10  cause of action exists against KPMG now he has to destroy all

11  of the documents under which that analysis was determined and

12  in fact now the committee must begin at square one and conduct

13  additional investigation.  And in fact not only will we incur

14  the expenses at that point in time, but we will be months, many

15  months behind the eight ball.  The committee has agreed to a

16  certain extent to stand down to let the examiner conduct its

17  investigation.  And in fact by entering into this -- proving

18  this protective order that would be prejudicing the rights of

19  the committee.

20         The second thing, Your Honor, that I wanted to

21  address is while the committee may have its own views about the

22  potential scope of the examiner's investigation in the spirit

23  of cooperation we dovetailed their examination request although

24  we did bring it back an additional three year period.  And the

25  reason we did that, Your Honor, is to sort of get around some

1 of those issues.  To the extent the documents that the examiner

2 is requesting exceed his scope, well those are the documents

3 that the committee is going to be looking at.  We're trying to

4 work with the examiner in tandem here to cover all of the

5 issues.

6          KPMG is looking at this, and maybe rightfully so, I

7 haven't gotten into any of the documentation yet that this is

8 an examination against them solely for purpose of determining

9 what cause of action we have against KPMG.  Not going to ignore

10 that fact that there could be potential causes of action

11 against KPMG.  But there are a lot of issues that need to be

12 examined here.  There are a lot of accounting irregularities

13 that existed.  They may result in causes of action of various

14 third parties.  But we're not going to know and the examiner's

15 not going to know until we get the documentation.

16          I'm not here to argue our motion.  We will do that

17 next week.  I think the Court will find that to the extent that

18 the Daisy case is considered I don't believe it's a well

19 reasoned decision.  I believe that to the extent in that case

20 it was a post-confirmation case and we'll get into that next

21 week.  But the issue is very simply.  If we're going to permit

22 or if this Court is going to permit third party contracts

23 entered into prior to bankruptcy to begin to limit and if not

24 eliminate the ability to utilize 2004 for its intended purpose

25 I think we are really slicing out the tools that are both

1  available to a creditor's committee or an examiner to do what's

2  a proper investigation.

3          In the case that they are citing that was a post-

4  confirmation committee, it was an action that was contemplated

5  against the accountants.  I think this is really much

6  different.  We don't know who the action is against yet, Your

7  Honor.  That's why we're looking for the information.

8          THE COURT:  If anyone.

9          MR. INDELICATO:  My objection, the reason I stand

10  here today is I would implore the Court if in fact it wants to

11  consider a protective order that that issue should be put over

12  until next week.  I think we do need to consider it in light of

13  the two motions for 2004.  I think it clearly goes against the

14  spirit of what the committee believed was going to be the

15  process going forward with respect to the examiner.  Thank you,

16  Your Honor.

17          THE COURT:  Let me -- Mr. Neal, let me hear from

18  others and then we'll get back to you.  Mr. McMahon.

19          MR. McMAHON:  Your Honor, good afternoon.  Joseph

20  McMahon for the United States Trustee.  Your Honor, I rise

21  generally with respect to the issue of the protective order and

22  specifically referring to the June 1st order which the Court

23  entered with respect to the -- directing the appointment of the

24  examiner.  And specifically aside from committee specific

25  issues which Mr. Indelicato articulated in Paragraph 10 of that

1  order there was an affirmative obligation imposed upon the

2  examiner to cooperate with governmental agencies going forward

3  with respect to the conduct of the examination.

4        Your Honor, certainly I think the -- at least we read

5  the import of that provision of meaning something more than

6  just simply coordinating schedules.  There very well may be

7  governmental entities with an interest in the contents of the

8  report when it's finally completed.  And to that extent we're

9  concerned about the effect that a protective order may have on

10 the examiner's ability to carry out its obligation under

11 Paragraph 10 consistent with what the Court directed.

12       Your Honor, the form of order was just appended to

13 KPMG's papers which were filed yesterday.  We're concerned

14 about that issue and the ability of the relevant government

15 authorities who have been -- and whose presence has been well

16 articulated before this Court to get the cooperation that the

17 Court directed back on June 1st.

18       THE COURT:  Thank you.  Anyone else care to be heard

19 in connection with this motion?

20       MR. LEVEE:  Good afternoon, Your Honor.  Ira Levee,

21 Lowenstein, Sandler, New York Teachers' Retirement System.  A

22 lead plaintiff in a securities litigation against the debtor

23 and others.  We echo the comments made by the committee and the

24 U.S. Trustee with respect to the breadth of the protective

25 order and its potential impact on New York State Teachers'

1  Retirement System's ability to obtain documents from KPMG or

2  from the examiner at the appropriate time.

3          THE COURT:  Thank you.

4          MR. NEAL:  Your Honor, Guy Neal for KPMG.  I have a

5  recommendation, Your Honor.  There are two ways I suggest we

6  could go with respect to the protective order.  Your Honor,

7  could enter the order on an interim basis and subject to final

8  hearing on August 7th without any presumption of its continued

9  validity.  That way we could start rolling out documents to the

10 examiner.  And KPMG will be prepared to do that.

11         Alternatively, Your Honor, if Your Honor wants to

12 continue the issue with respect to the protective order for a

13 full argument and discussion on August 7th I will be back at

14 that time and I will be willing to address the concerns

15 certainly of the committee because their motion is not being

16 argued today and even the concerns, of course, of the United

17 States Trustee.  So we're happy to go in either of those two

18 directions, Your Honor, we're just not prepared to produce

19 documents between now and August 7th without the entry of a

20 protective order.

21         THE COURT:  All right.  Let me ask the movant what he

22 thinks.

23         MR. TOPETZES:  Your Honor, with respect to the notion

24 of a protective order conceptually the examiner's charge here

25 is as directed and crafted by the Court and we'll follow any

26

1  directive issued by Your Honor.  I do have a couple of

2  concerns.  They're modest language type concerns with respect

3  to the proposed form of order.  We want to ensure that in light

4  of the road we've traveled here with counsel for KPMG

5  committing that the arguments with respect to the arbitration

6  clause included in the engagement letter signed by KPMG and New

7  Century that those arguments are being forsaken by KPMG as they

8  relate to the examiner.

9        In other words, KPMG will not seek to assert at

10  anytime that the arbitration clauses operate to frustrate or

11  limit the ability of the examiner to conduct his examination.

12  As I read language in that proposed form of protective order

13  it's not entirely clear to me that KPMG is not potentially

14  seeking to reserve some of those rights.  We heard what Mr.

15  Neal said.

16        THE COURT:  I think that they're, as I read it,

17  intending to reserve those rights and every other one they can

18  think of.

19        MR. TOPETZES:  And that's troubling to the examiner.

20  The second thing, Your Honor, is the proposed form of order

21  talks about voluntary cooperation.  Certainly the statements by

22  counsel for KPMG that KPMG intends to cooperate fully with the

23  examiner and his professionals regarding the review are

24  welcome.  But the proposed form of order does not contemplate

25  or address the circumstance and the likely circumstance, I

1  believe, which will involve the examiner actually serving the

2  subpoena.   I also have some concerns with respect to scope and

3  I'd like to touch on a couple of those if the Court feels that

4  that would be appropriate at this time.

5       THE COURT:  Well, let me give you some of my

6  thoughts.  And I'd like to start with the notion that there

7  probably is no bankruptcy Judge sitting today who would be more

8  sensitive to the issues raised in <u>Mince</u> than the one you're

9  looking at.  And for those who don't know why it's because I

10 was the bankruptcy Judge that the Third Circuit overturned

11 through the District Court in issuing its decision in <u>Mince.</u>

12       However, if you were to read KPMG's response to the

13 Trustee's motion you might conclude that KPMG is of the view

14 that by entering into a prepetition engagement agreement which

15 included arbitration provisions that they could thwart

16 investigation by a court appointed examiner.  Now, they were

17 wise not to put it in quite those terms, and I think also wise

18 to recognize that it was better to try to reach some

19 cooperative arrangement with the examiner rather than have the

20 Court impose it.

21       Now, that having been said that does not mean that

22 there will not come a time when KPMG might be legitimately in a

23 position to assert its prepetition contract rights in

24 connection with something that might be transpiring in this

25 proceeding or other places for that matter.  And I express no

1  view one way or another about that.

2        The other concern I have is that I share the concern

3  that the committee expressed.  I certainly am not going to give

4  the Court's blessing to the destruction of documents which have

5  been acquired pursuant to an investigation ordered by this

6  Court.  That information will in one form or another, in my

7  view, be preserved for the benefit of the estate.  Now, if

8  someone determines that there's a claim to be pursued, be it

9  the examiner or the committee or others we'll address how that

10  may happen at the appropriate time if we ever come to that

11  point.

12        So I would not be willing to bless the stipulation

13  which an agreement which doesn't appear to be a stipulation and

14  agreement at least at this point insofar as it would determine

15  for all time that the use of this information is limited to the

16  examiner alone or neither would I approve a provision which

17  directs or authorizes the examiner to destroy information which

18  he's acquired in connection with his investigation.

19        Now, that's not to say there might not be other

20  refinements to an arrangement to be made.  For example, and the

21  U.S. Trustee brought this up, while the order appointing the

22  examiner provides that he is not to disclose publicly

23  information acquired during the investigation until after

24  submission of the report it doesn't -- and while it does

25  anticipate cooperation with other investigating authorities it

1  doesn't specifically say who the examiner may on a nonpublic

2  basis share information with, and what type of information may

3  be shared and what use might be made of that information.

4        So I think understanding what's going on and what

5  began either before or early on in this case in the way of

6  investigations of KPMG their concern is legitimate.  And I

7  think their request that that be addressed in some fashion is

8  not unreasonable.  So one of the questions in my mind is how do

9  we fashion an order that I guess is faithful to the appointment

10  order of the examiner which sets out who, if anyone, he can

11  share information with during the course of the investigation.

12  And then secondly what's to be done upon submission of the

13  report?

14        Now, with respect to the latter that's something that

15  seems to me that can be determined later upon further order of

16  the Court at a time when everyone at that time would have the

17  right to be heard.  So maybe -- I think I'm going to put it

18  this way.  One of the -- after having heard the parties one of

19  the things I'm thinking is that unless the examiner is really

20  itchy to get started between now and August 7th, and I'm sure

21  he is, the parties might take that time to hammer out a

22  refinement of that which the examiner is willing to agree to

23  and that which KPMG can live with and maybe at the same time

24  try to address the committee situation that maybe that can be

25  resolved.  And it may be that it can't be.  And if not I'll

1  resolve it after the hearing.

2      Okay.  Those are my thoughts, and I'm open to hear

3  from anyone who cares t be heard in reaction to that.

4      MR. FOX:  Your Honor, Edward Fox from K&L Gates.  One

5  point though, I appreciate everything you said, we can

6  certainly sit down with the other parties to draft something

7  that addresses the issues.  One point from the examiner's

8  perspective that we would like to be very clear about with KPMG

9  right here right now is whether they are dropping the

10 arbitration agreement arguments as to the examiner for all

11 purposes both today with respect to the entry of the 2004 order

12 and in the future with respect to any subpoenas that they may

13 choose to contest going forward.

14     Because if they're going to raise it with respect to

15 subpoenas later we just as soon deal with it now and get it out

16 of the way.  And then if we're clear with KPMG as to where they

17 are on that point with respect to the examiner that, I think,

18 will help us clarify other issues with respect to the form of

19 protective orders as well.  So maybe Mr. Neal can help us on

20 that point just to nail that down.

21     MR. NEAL:  Your Honor, Guy Neal for KPMG.  I do not

22 think there's a disagreement between us on that point.  We are

23 dropping our objection as it relates to any and all facets of a

24 Rule 2004 examination by the examiner.  Whatever form it may

25 take full cooperation in the absence of subpoena or in the face

1  of a subpoena that gets issued.  All that is reserved on the

2  subpoena issue are your typical Rule 45 considerations and

3  defenses.  What we are preserving would be with respect to any

4  claim or dispute outside of the Rule 2004 examination that an

5  examiner to the extent he has authority can bring against KPMG.

6  So be it the examiner, be it New Century, be it the committee t

7  the extent we are on the other side of a V in an adversary

8  proceeding we reserve those rights.

9          And with respect to a Rule 2004 examination, any and

10 all facets of it, we are withdrawing our objection in that

11 regard.

12         MR. ROSMAN:  Now that was very helpful.

13         MR. TOPETZES:  Your Honor, one related point, and if

14 the Court prefers we can defer this for another day.  As I said

15 a moment ago the statements by counsel for KPMG that it intends

16 to cooperate fully with the examiner are welcomed.  The

17 statements that if we serve a subpoena on KPMG, KPMG through

18 its counsel will work with us to discuss the scope of that

19 subpoena, et cetera.  Those are welcome and we'll be prepared

20 to do that.  However, this is not happening in a vacuum.  We're

21 at the end of a fairly long trail of back and forth with

22 respect to the request by the examiner.  And the request by the

23 examiner from our perspective as we communicated to counsel for

24 KPMG were thoughtful requests that reflect measure based on the

25 available information today.

1          And there are a couple of -- I'm not proposing that

2    we spend time doing a line by line review although we're happy

3    to do that of course if Your Honor would like to.

4          THE COURT:  It wouldn't be my first choice.

5          MR. TOPETZES:  There are a couple of broad contour

6    type questions that have arisen in the context of those

7    discussions which we could present to the Court now if the

8    Court would prefer and that would streamline our discussions, I

9    believe, down the road.  Or if the Court would prefer we can

10   defer those questions, conduct further efforts to meet and

11   confer and resolve them and then report back to the Court.  My

12   only concern is, and I say this only because we've had

13   extensive discussions with counsel for KPMG, is with an eye

14   toward efficiency, Your Honor, if we serve the subpoena, and I

15   contemplate that we probably will on behalf of the examiner I

16   don't want to end up with a lot of resources being spent all

17   around on discovery scraps with regard to issues that we could

18   resolve very efficiently today.

19         THE COURT:  Well, one thought I would have is, I

20   mean, understanding that what the examiner wants has been known

21   to KPMG for some period of time now that actually serve the

22   subpoena right away and to the extent there are any objections

23   after the parties have had a chance to confer I'm content to

24   resolve them on August 7th.

25         MR. TOPETZES:  Very well.  Thank you, Your Honor.

1          THE COURT:  But what I would like is written

2   objections in my hand so that I can review them prior to the

3   hearing.  Okay.  When would you intend to serve the subpoena?

4          MR. TOPETZES:  I would anticipate, Your Honor, that

5   we would serve the subpoena over the next day or so.

6          THE COURT:  Then that puts Mr. Neal in a position

7   where he has none of the protections he wishes in his

8   protective order.  But -- go ahead.

9          MR. NEAL:  I very much appreciate counsel for the

10  examiners.  Reluctance to get into the back and forth and the

11  settlement negotiations of the parties over the past ten days I

12  think that's very appropriate.  We were proposing in very

13  general terms a rolling and maybe tiered production of

14  documents.  And that is in the first instance produce 2005 and

15  2006 official work papers of KPMG.

16          Our initial read of the appointment order and our

17  subsequent reads of the appointment order and all the pleadings

18  that were before you, Your Honor, in the May context before

19  that order was entered on June 1 focused, I would say,

20  predominantly -- I'll use that word with all of its vagueness

21  -- predominantly on 2006 and 2005.  Our desire was to produce

22  these documents in the first instance and to the extent the

23  examiner needs additional documents we continue the meet and

24  confer process.  We think that's appropriate all the while with

25  the subpoena hanging out there.

1        We do not think it's appropriate or a measured

2  approach to have us produce in essence every piece of paper and

3  every electronic data that relates to New Century from January

4  1, 2004 to the present.  We don't think that's a measured and

5  efficient approach.  That would cost -- based on estimates that

6  I'll have for you by next week -- that would cost hundreds of

7  thousands of dollars if not almost a million dollars for KPMG

8  and the 200 billers to comply with.

9        THE COURT:  Well, Mr. Neal, let's -- as your response

10 invites be real about what's happening.

11        MR. NEAL:  Sure.

12        THE COURT:  That information is going to have to be

13 compiled not only for the examiner, but for others and probably

14 much of it has already been compiled.

15        MR. NEAL:  That is true, Your Honor.  Most of it has

16 already been compiled.

17        THE COURT:  So it's not as if the examiner is causing

18 you new heartache.  There might be a little more of it, but

19 these are things that you're going to have to get together

20 anyway.

21        MR. NEAL:  If I could be candid, Your Honor.

22 Certainly with respect to the '05 and ;06 productions that

23 would not require much in the way of additional effort for

24 KPMG.  We have produced those documents to various governmental

25 agencies.  And they accepted '05 and '06 without prejudice to

1  their rights to seek additional documents.  And they've

2  accepted that as a measured approach.  So the proposal that we

3  respond in full to the subpoena in terms of objections perhaps

4  by the end of this week which might prove difficult and then

5  argue them on the 7th we would suggest that we put that over to

6  another hearing date, Your Honor.  We can provide a roll out of

7  these documents.

8          To the extent the examiner wants more we're happy to

9  meet with the examiner and produce more.  But we want to just

10 avoid the back and the forth relating to a production going

11 back to January 1, 2004 if it's not needed or if it's not

12 necessary.

13         THE COURT:  Almost sounds like you're proposing a

14 meal and you'll feed the examiner until he says he's full.

15         MR. TOPETZES:  The examiner is requesting to be fed

16 only that which he should eat and needs to eat to perform the

17 examination as prescribed by the Court in its June 1 order.

18 Your Honor, very briefly.  The June 1 order provides that the

19 examiner shall investigate any and all accounting and financial

20 statement irregularities, errors or misstatements, including,

21 but not limited to, such irregularities, errors or

22 misstatements that gave rise to the announcement with respect

23 to the 2005 financials, the decisions to restate the financial

24 statement of the debtors with respect to the first three

25 quarters of 2006 including but not limited to in deciding to go

1 back to 2004 in its request the examiner is focusing its

2 request based on the available data.

3        And I don't want to compromise any issues with

4 respect to the going forward examination, but the request to

5 2004 to go back one more year is a thoughtful request and

6 reflects, we think, measure, an appropriate measure on the part

7 of the examiner with an eye toward achieving efficiencies and

8 conserving resources all around.  That's one of the broad

9 contour items I mentioned earlier.

10        THE COURT:  I'm not hearing today from Mr. Neal that

11 the '04 information won't be produced.  I think what I'm

12 hearing, correct me if I'm wrong, is that he would like to

13 provide the other information first and follow with that.  Now,

14 am I wrong, Mr. Neal?

15        MR. NEAL:  Exactly correct, Your Honor, and that's

16 been our approach since the end of June subject to the entry of

17 a protective order.

18        THE COURT:  Well, you know, then I think I'd like the

19 parties to spend the week trying to get to the end.  It sounds

20 like you're close.  And to the extent you can't I'll resolve it

21 at the next hearing.

22        MR. TOPETZES:  Very good.

23        MR. NEAL:  All right, Your Honor.

24        THE COURT:  Anything further on this motion?

25        MR. NEAL:  Your Honor, if I may inquire for

37

1 clarification sake with respect to whether or not we need t

2 file formal objections to a subpoena in advance of the 7th and

3 what Your Honor's inclination is.

4        THE COURT:  Well, I guess my thought is I'd like the

5 examiner to be able to move along as quickly as possible.  And

6 to the extent that between now and August 7th sufficient time

7 is provided to put the parties in a position to argue before

8 the Court in an organized way, you know, what has to be

9 resolved.  I can work -- I'm open to working within that time

10 frame.  At this point one week or two weeks or three weeks

11 doesn't seem to me will make a great difference one way or the

12 other.

13        I'm prepared to -- the short answer is I'm prepared

14 to address it if it looks like the parties are going to be that

15 far apart and the differences are irreconcilable.  I'd rather

16 resolve them sooner rather than later.  If however you don't

17 reach agreement -- if you do reach agreement it won't be

18 necessary.  If you're close and you want a little more time

19 that's okay, too.

20        MR. FOX:  Your Honor, Edward Fox.  Just to be clear.

21 Then we'd like to submit the 2004 order for your signature.  Is

22 that something you're prepared to entertain?

23        THE COURT:  Well, I want to be sensitive to the

24 concerns that KPMG has expressed, but you've heard the

25 limitations that I'm willing to approve in connection with use

1  of the information.  So I guess if you want to give me an order

2  that deals with that at least on an interim basis I'm prepared

3  to sign it.

4          MR. FOX:  Okay.  Because I don't think KPMG is going

5  to give us anything just because we got the 2004 order entered

6  anyway.  I think voluntarily they won't until the protective

7  order has been resolved if I understand Mr. Neal correctly.

8          MR. NEAL:  Yes.  To the extent -- I have no objection

9  to the entry of the order today understanding that all matters

10 relating to the protective order are reserved until the 7th.

11         THE COURT:  All right.

12         MR. FOX:  So if we can get that order entered then

13 we'll work with Mr. Neal in the form of a protective order and

14 then we'll work on the scope in advance of the --

15         THE COURT:  All right.  Do you have a copy to hand

16 up?

17                      (Pause)

18         THE COURT:  That order has been signed.

19         MR. NEAL:  Your Honor, if I may be excused.

20         THE COURT:  You may.

21         MR. NEAL:  Thank you.

22         MR. MERCHANT:  Your Honor, Michael Merchant again for

23 the record.  Item Number 24 is GECC's stay relief motion.  Your

24 Honor, we have substantial agreement on the second stipulation

25 with GECC that we anticipate filing probably sometime later

1  today.  The stipulation will provide among other things for

2  $100,000 payment from the amount currently being held in escrow

3  to go over to GECC and for a continuation of their motion to

4  the hearing on August 21st.  So we'll be submitting that under

5  certification of counsel.  Probably today.  If not today

6  tomorrow morning.

7          Agency item Number 25 is the one outstanding

8  objection to the technology sale motion.  It's filed by ILOG.

9  It relates to the assumption and assignment of their agreement.

10  ILOG and the purchaser EquiFirst Corporation have been in

11  constant communication regarding a potential resolution of that

12  objection.  They're still working through that objection.

13  They've asked that the hearing on the objection be carried over

14  to the August 7th hearing.

15          THE COURT:  Okay.

16          MR. MERCHANT:  Your Honor, agenda item Number 26 is a

17  motion that Your Honor heard at the last hearing.  It was

18  continued to this hearing.  It's filed by BCIA 95 Glastonbury

19  Boulevard LLC.  And it was their motion to compel payment of

20  certain amounts due under a lease among other things.  I

21  believe we've reached a resolution of that motion.  I don't

22  know that the form of order is final now, but that resolution

23  will be addressed in connection with agenda item Number 31

24  which is the assumption motion.

25          THE COURT:  Okay.

1          MR. MERCHANT:  Agenda item Number 27 is the motion of

2 Aaron Celious.  It's a stay relief motion.  The debtors did

3 file a response.  I don't know if Mr. Celious is either on the

4 phone or in the courtroom today to present his motion for stay

5 relief.

6          MR. CELIOUS:  Your Honor, I am on the phone.  This is

7 Aaron Celious.

8          THE COURT:  Good afternoon.

9          MR. CELIOUS:  Good afternoon.

10          THE COURT:  All right.  Well, first let me say that

11 -- well, let me have -- the debtor's response was not included

12 in the binder, but I did have a chance to read it.  Let me also

13 ask whether other parties but specifically the debtor and the

14 committee have received a copy of Mr. Celious' statement of

15 facts.

16          MR. MERCHANT:  Your Honor, all that I've seen is the

17 one-sided letter that's attached to our response.

18          THE COURT:  Yeah.  This is a document that we

19 received in chambers yesterday.  Mr. Celious, just so you know,

20 when you file things with the Court you must send copies to

21 other parties who are interested in the relief that you're

22 requesting, but specifically --

23          MR. CELIOUS:  I understand, Your Honor.  I sent it to

24 the Crossroads which I was informed is the party to be served

25 with documents at the same time that I send the documents to

41

1   the Court.

2           THE COURT:  You need to serve debtor's counsel,

3   committee counsel, United States Trustee and others so that

4   they can be prepared as the Court can be prepared to address

5   the matter that's of concern to you.  I'm not certain exactly

6   what to do at this point because I would like the debtor and

7   the committee to have the benefit of the submission that you

8   made and that I have read.  So what I'm going to do now is ask

9   that copies be made and given to counsel now.

10          Are there any other agenda items to be addressed?  It

11  looks like a couple.  Okay.  Mr. Celious, what we're going to

12  do is pass your matter for the moment while copies of your

13  submission are being made and distributed to counsel in the

14  courtroom.  We'll address other items on the agenda.  But we

15  will come back to you so stay on the line.

16          MR. CELIOUS:  Okay.  Thank you, Your Honor.

17          THE COURT:  You're welcome.

18          MR. MERCHANT:  Your Honor, if we could move on to the

19  agenda.

20          THE COURT:  Yes.

21          MR. MERCHANT:  Agenda Number 28 is the debtor's

22  motion to approve a stay relief stipulation relating to D&O

23  Insurance.  There was one objection filed with respect to this

24  motion.  It was filed by the New York State Teachers'

25  Retirement System.  I believe that's been resolved through a

1  revised form of order that was submitted under certification.

2  It was filed on Friday.  I believe it probably didn't make its

3  way to Your Honor's chambers until yesterday.

4          THE COURT:  Your order was signed today.

5          MR. MERCHANT:  Thank you, Your Honor.  Agenda item

6  Number 29 is the debtor's motion seeking extension of time in

7  which to assume or reject leases under Section 365(d)(4).  It's

8  the debtor's first request for an extension.  We're seeking

9  extension through October 29th 2007.  There were two responses

10 filed with respect to that motion and I believe that they're --

11 they both have either been resolved or mooted.  The first was

12 filed by Coremetrics, Inc.  We've confirmed that the

13 Coremetrics sublease is not being assumed and assigned and

14 therefore we've put together a revised form of order that

15 carves out that particular sublease from the extension that

16 would be granted pursuant to the motion.

17          The second objection was filed by Irwin Mortgage

18 Corporation and Irwin Financial Corporation relating to a

19 Fishers, Indiana lease.  I've confirmed with my client that the

20 Fishers, Indiana lease was already assumed and assigned to

21 Carrington at closing and therefore there's no need for an

22 extension with respect to that sublease agreement either.  And

23 we've carved that one out of the proposed order as well.  I

24 don't know whether Your Honor, has any questions with respect

25 to the motion.  I do have the revised form of order and can

43

1 hand it up.

2         THE COURT:  Does anyone else care to be heard in

3 connection with this motion?  I hear no response.  I have no

4 questions.

5         MR. MERCHANT:  I'll hand up the revised form of

6 order, Your Honor.  And it's the provided however section of

7 Paragraph 2 that addresses each of those objections.

8         THE COURT:  Thank you.

9                    (Pause)

10         THE COURT:  That order has been signed.

11         MR. MERCHANT:  Thank you, Your Honor.  Agenda item

12 Number 30 is the debtor's motion for an extension of exclusive

13 periods in which to file and solicit a Chapter 11 plan.  The

14 debtors are seeking an extension of the exclusive filing period

15 through November 28th of this year and seeking extension of

16 exclusive solicitation period through January 28th of next

17 year.  There were no formal objections filed with respect to

18 this motion, however we did receive informal comments from the

19 committee and have worked out an agreement with the committee

20 that addresses their concerns.  The U.S. Trustee, however is

21 not on board with that agreement.  So I'll tell you what the

22 agreement is and then you can address the U.S. Trustee's

23 objection.

24         The committee has allowed the requested extension

25 provided however the extension will not apply with respect to

1 the committee.  In other words, exclusivity will terminate with

2 respect to the committee but will stay in effect with respect

3 to all other parties.  That's the agreement we've reached with

4 the committee.  We have a revised form of order that the

5 committee and the debtors have agreed to.  Again, the U.S.

6 Trustee has concerns with respect -- perhaps I should let him

7 state his concerns.

8          But my understanding is that they have concerns with

9 respect to the ability of the Court to grant an extension with

10 respect to -- or grant a termination of exclusivity with

11 respect to one party, but not all others.  We believe it makes

12 perfect sense in this case.

13          We've had a good relationship working with the

14 committee.  We expect to have a good relationship working

15 forward.  What we don't want to deal with is a case where we

16 have a number of different parties submitting plans now that we

17 have to deal with running up legal fees addressing those plans

18 and responding to those plans.  We believe that the Court does

19 have the discretion under Section 1121 or 105 to terminate

20 exclusivity solely with respect to one party.

21          I know at least two cases in this district where

22 Judge Walrath has granted such relief.  The <u>Sleet Master</u> case

23 and I think the <u>DVI</u> case.  And I have copies of those orders

24 if Your Honor would like to review it.  And I believe the

25 committee counsel has also done some quick research and found

1  at least one case where they found that that sort of relief is

2  within the discretion of the Court.

3          THE COURT:  All right.  Thank you.

4          MR. McMAHON:  Your Honor, good afternoon, Joseph

5  McMahon for the United States Trustee.  I think debtor's

6  counsel fairly characterized our objection.  When Your Honor

7  sees the proposed form of order it basically carves out the

8  committee from the exclusivity extension.  In other words, our

9  exclusive period becomes a somewhat nonexclusive exclusive

10 period.

11         Your Honor, I think when we start with the plain

12 language of 1121 it's fairly as to what powers the bankruptcy

13 court has to regulate exclusivity.  It says that the Court can,

14 I believe it's enlarge or reduce the exclusivity period after

15 notice of a hearing.  It says nothing expressly about the

16 ability of a Court to, I guess, consider or interpret the code

17 as providing the debtor with as many exclusivity rights as

18 there are parties in interest in a given bankruptcy case and

19 then limit or modify those rights as to one entity.  The

20 debtor-in-possession is the only party vested with an

21 exclusivity right.  That right is subject to being lengthened

22 or reduced by the bankruptcy court.

23         And I think we can safely assume that under the

24 express language of the code the authority vested in the Court

25 is limited to that type of regulation.  Our office communicated

46

1   to the committee and the debtors that we wouldn't be opposed to

2   a 60 day extension of the exclusive periods to the extent that

3   the committee has concerns about the direction in which the

4   process is heading.  But we're a bit concerned about the

5   proposed resolution insofar as whether or not it squares with

6   the bankruptcy code.

7           THE COURT:  Mr. McMahon, let me ask this.  Is this a

8   new concern expressed by the U.S. Trustee?  Because, well, I

9   can't tell you the specific instances involved, but I think

10  I've approved such arrangements in my old district.  I don't

11  know whether I've approved such an arrangement here, but this

12  is not something that's new.

13          MR. McMAHON:  Your Honor, I can tell you that I guess

14  what we have seen or at least I've seen personally before in

15  the past is on occasion a joint exclusivity arrangements where

16  the debtors in the committee are somehow linked at the hip

17  meaning that they share an exclusive period.  And without

18  getting into the merits of that particular proposal whether or

19  not it's before the Court certainly that's different than what

20  we have here.  You have, and Mr. Merchant will share with you

21  the proposed form of order, the committee having essentially

22  the independent and right divorced from the party with the

23  exclusive right seeking to file a disclosure statement or a

24  plan or reorganization.

25          THE COURT:  Is there any functional difference

1  between the two arrangements you've just described?

2        MR. McMAHON:  Yes.  Because presumably the committee

3  could act and the debtor could oppose its ability to move

4  forward with the plan process while its exclusive periods vis-

5  á-vis all other parties in interest under its proposal were

6  maintained.  So, you know, that is basically the gravelment of

7  our objection, Your Honor.  I don't consider it to be anything

8  new.  I think really what it is is whether or not the language

9  squares -- I think the proposal squares with the code.

10       THE COURT:  All right.  Thank you.

11       MR. McMAHON:  Thank you.

12       MR. INDELICATO:  Your Honor, Mark Indelicato on

13  behalf of the committee.  I guess I have to take the fall for

14  this one, Your Honor.  The reason for the language the way its

15  drafted actually was a change that had been requested by the

16  committee.  We had actually come to an agreement with the

17  debtor that there would be exclusivity -- we would agree that

18  exclusivity could be extended with everybody except the

19  committee.

20       And the original language that we had gotten from the

21  debtor had actually had the language that Mr. McMahon has

22  suggested.  And we had taken a look at the code and sort of had

23  said well, we didn't think that was the appropriate way to go.

24  The way that we think it's appropriate is that you extend

25  exclusivity as to all others and the committee is not extended

48

1  in that way.  If we have a disagreement with the debtor since

2  we are fiduciaries as the debtor being fiduciaries we have a

3  right to file a plan and everybody has whatever rights that

4  they have.  And that's why we felt that language was a little

5  clearer.

6        And when I discussed it with Mr. McMahon yesterday I

7  sort of expressed that yes that was the reasons for the

8  language and the extension was the committee's concern that

9  since it was -- we've said this many times -- since it was our

10  client's money we felt that if things weren't the way we had

11  felt appropriate we felt that we should have the right on

12  behalf of all creditors to file a plan.

13        And, Your Honor, I won't belabor the point.  There

14  are not many reported decisions regarding this.  There is one

15  reported decision as Mr. Merchant had indicted that we found.

16  It's <u>United Press</u> case from 1986, when I first started

17  practicing.  It's at 60 BR 265.  And in that case the Court

18  indicated that -- if I could get it on my Blackberry, the quote

19  from the case is, "The statute does not expressly prohibit this

20  eminently sensible middle course and I could perceive no reason

21  to find that any such prohibition by implication."  The idea,

22  Your Honor, is that it sort of makes sense to create this to

23  allow this committee to have this right to file its own plan.

24  But because the committee is fiduciaries.

25        MR. McMAHON:  Your Honor, I hate to ask, but may I be

49

1  excused for a moment.  I'll be right back.

2        THE COURT:  Would you like me to take a five minute

3  recess, Mr. McMahon?

4        MR. McMAHON:  Actually I think two minutes would be

5  appropriate.  I apologize.

6        THE COURT:  Let's say five.

7        MR. McMAHON:  Thank you.

8        THE COURT:  All right.  Court will stand in recess.

9                      (Recess)

10        THE COURT:  Okay.

11        MR. INDELICATO:  So as we were saying before we took

12  a break clearly there is some case law indicating that the

13  Court has authority to grant the exclusive right to the debtor

14  for everyone but the committee.  We believe it makes practical

15  sense in this case.  We believe the Court has the authority

16  under 1121 and 105 of the Bankruptcy Code and we would urge the

17  Court to enter the order as proposed.  Thank you.

18        THE COURT:  All right.  Does anyone else care to be

19  heard on this?  I'm inclined to approve the arrangement that's

20  been made between the debtor and the committee.  The motion

21  sets forth the reasons.  I'm familiar with how this case is

22  proceeding, and it seems to me that an extension of exclusivity

23  is warranted.  The fact that the debtor after negotiation has

24  decided to cede the loss of exclusivity to the committee

25  doesn't strike me as something that's unwarranted.

1          When you look at the statutory argument that the U.S.

2    Trustee makes, I mean, I liken it to -- maybe there's other

3    examples, but, you know, the new 365(d)(4) which permits the

4    extension of the time to assume or reject nonresidential real

5    property leases for a period of 90 days.  Well, does that mean

6    that an extension for only 90 says, and no less than 90 days

7    can be given?  It seems to me that where the statute authorizes

8    relief which involves a whole that absent some really clear

9    countervailing language or principal to the contrary that the

10   Court can order less than the whole.  And I think that's what's

11   happening here.  So I'm prepare to approve that arrangement.

12   Is there a form of order?

13          MR. MERCHANT:  There is, Your Honor.

14          THE COURT:  Thank you.  I will add that there's no

15   other party that's pressing for the same relief.  So it seems

16   to me it's fairly easy to conclude that no one else is

17   prejudiced by it.  Okay.  Does that bring us back.

18          MR. MERCHANT:  I believe there's still one more item

19   on the agenda, Your Honor.  Agenda item Number 31 which is the

20   debtor's motion to assume and assign certain real properties.

21          THE COURT:  Related to Number 26.

22          MR. MERCHANT:  That's correct, Your Honor.

23          THE COURT:  Okay.

24          MR. MERCHANT:  Your Honor, the motion seeks to assume

25   and assign five leases and nonresidential real properties

51

1  including the lease with BCIA Glastonbury Boulevard LLC.

2  Through this order we've also resolved, subject to one open

3  issue, their motion to compel.  The form of order which

4  provides among other things for the payment of an agreed cure

5  amount of $22,847.86 plus rent due on August 1st 2007.  That

6  amount will be paid by Impact Funding Corp which is the

7  assignee, the new tenant.

8          The remaining cure amount relating to attorney's fees

9  we've agreed to an amount of 7500.  That amount shall be paid

10  by the debtors.  The order will also provide that Impact shall

11  be responsible for the payment and performance of all

12  additional obligations due under the lease, including, but not

13  limited to any true up for 2007.  And the Impact Companies are

14  related companies to Impact Funding will be guaranteeing the

15  obligations of Impact Funding under the lease.

16          Now, the one open issue is the exact Impact entity

17  that will be the tenant and the exact Impact entity that will

18  be the guarantor.  The way the order is currently drafted it's

19  the debtor's understanding, and we believe it to be correct,

20  however we were unable to get that version of the order to

21  opposing counsel until immediately before the hearing so he'd

22  like some additional time to just go over it with his client

23  and make sure it's acceptable to BCIA Glastonbury.  So I think

24  what we propose is submitting that under certification of

25  counsel.  Hopefully later today.  If not today sometime

1 tomorrow.

2          THE COURT:  All right.  And that will resolve Number

3 26 and Number 31?

4          MR. MERCHANT:  I believe so, Your Honor, but I'll let

5 counsel confirm that on the record.

6          MR. WAXMAN:  Your Honor, Jeff Waxman of Cozen,

7 O'Connor on behalf of BCIA.  Counsel's representations are

8 correct.  I believe that this does resolve everything.  The

9 only issue that's outstanding is the name of the assignee and

10 the guarantor.  I have to speak with my client to make sure

11 that it's comfortable with that.  I believe that we'll be in a

12 position to get back to Mr. Merchant within a half hour to an

13 hour and let him know whether or not it can be submitted to the

14 Court under certification of counsel.

15          In the unlikely event that there is an issued, Your

16 Honor, I would just ask that we would be able to get this

17 calendared as soon as possible.

18          THE COURT:  Well, we'll pick it u on August 7th.

19          MR. WAXMAN:  That's fine, Your Honor, but I do

20 anticipate that this will be resolved very quickly and that

21 will make the other motion, Number 26 on the agenda moot.

22 Thank you, Your Honor.

23          THE COURT:  All right.  And I suppose that if for any

24 reason the agreement weren't finalized it would be

25 unobjectionable to BCIA for the debtor to submit an order with

53

1  respect to four other leases?

2          MR. MERCHANT:  That's correct, Your Honor.

3          THE COURT:  All right.  Any problem with that?

4          MR. WAXMAN:  No, Your Honor.  None whatsoever.

5          THE COURT:  Okay.

6          MR. WAXMAN:  Your Honor, if I may be excused so that

7  I may reach out to my client I will try to contact the debtor.

8          THE COURT:  Go ahead.

9          MR. MERCHANT:  Your Honor, item Number 32 on the

10 agenda as noted has been continued to the August, I think, 21st

11 hearing with agreement of the Court which brings us back to

12 agenda item Number 27.

13         THE COURT:  Okay.  Mr. Celious, are you still there?

14         MR. CELIOUS:  Yes, Your Honor.

15         THE COURT:  All right.  We are back to your matter.

16 Have counsel in the courtroom had the opportunity to review the

17 additional submission by Mr. Celious?

18         MR. MERCHANT:  Your Honor, I've had an opportunity to

19 briefly take a look at it.  It's a lengthy submission in light

20 of their motion.  It's a good seven pages of factual argument

21 that frankly I'm not in a position to know whether anything in

22 there is accurate or not.  I still think that this is an issue

23 that can be resolved through the claims process rather than

24 stay relief and an action going forward in state court.  But to

25 the extent Your Honor's not in agreement with that I think what

54

1  I would propose is continuing this at least until next

2  Tuesday's hearing so I can share it with my client and go over

3  the facts that are alleged.  I'm just not even in a position to

4  respond to the facts that are set forth in the new submission.

5        THE COURT:  Well, I am inclined to at least hear from

6  Mr. Celious today so let me hear what he has to say and then

7  we'll decide what to do from there.

8        MR. CELIOUS:  Thank you, Your Honor.  Yes, the

9  request that was made thorough New Century was for a recission

10  back in April during the time when they initially submitted

11  this.  I've been in communication with them and they have been

12  fully aware of the facts I've sent them.  The statement of

13  facts and ultimately what I'm requesting relief for is not

14  going to affect their reorganization.  I mean, the amount of

15  money is no where near what their holdings are and what other

16  things they have to take care of at the moment.

17        And to my knowledge, or at least my certification,

18  it's a single real estate property and they do not have equity

19  in it and I was defrauded in a manner by them and I am more

20  than willing to provide any supporting evidence and facts that

21  I need to support the claim, but at the same time all of the

22  facts that I speak of were provided by them.  So all of the

23  documents that I would be providing they already have in their

24  possession.

25        THE COURT:  So without -- in as concise a manner as

55

1  you can tell me what happened here.

2       MR. CELIOUS:  What happened is that I was approached

3  by a friend of a friend who told me about an opportunity to buy

4  real estate in Atlanta.  I was then forwarded an email which

5  included an appraisal that induced me to buy it.  It gave

6  basically what a real estate appraisal is.  The price of the

7  house, the value of the house, the number of rooms, and the

8  property characteristics.  It seems like a good investment.  It

9  was forwarded by New Century's account executive Jacob Mickle.

10  Assuming, I agreed.  It seemed legitimate.  I went forward and

11  I purchased the home using security deeds from New Century.

12       It then came out later that the property was not --

13  it was not a three bedroom home as it had been advertised to me

14  in the appraisal and it was not worth the amount that I paid by

15  what other real estate professionals had suggested.  It was

16  overvalued by approximately $100,000 or more dollars.  So once

17  that came to light I contacted New Century, I demanded a

18  recission based on fraud, and then they just filed for Chapter

19  7 relief.  I know it wasn't because of me, but then I did

20  investigation and I found that in the area, at least as stated

21  in the document, they have done this not only to myself, but at

22  least 31 other people just in these zip codes in the

23  surrounding area within about a two mile radius.

24       So I can understand basically how -- I understand the

25  large implications of what's going on with New Century is that

1  they have (indiscernible) that may whether unfounded or not be

2  unscrupulous and have led to a number of people losing money

3  and having their homes foreclosed upon.  Any continued time

4  delay for me moving forward (indiscernible) is just going to

5  create a greater injury to me and that's what I'm attempting to

6  avoid as much as possible.

7          THE COURT:  All right.  Now, so that I'm clear you're

8  now the owner of this property.

9          MR. CELIOUS:  That's correct.

10          THE COURT:  And did you finance the acquisition of

11  the property?

12          MR. CELIOUS:  I did.

13          THE COURT:  Okay.

14          MR. CELIOUS:  No, I did not finance it, I'm sorry.  I

15  financed it through New Century.  New Century was the security

16  holder.  They issued securities in order to finance the

17  purchase of the property.

18          THE COURT:  Okay.  And are you now making any

19  payments?

20          MR. CELIOUS:  I have not made payments since I

21  demanded recission in April.

22          THE COURT:  Okay.

23          MR. CELIOUS:  I haven't made payments for May, June

24  or July.

25          THE COURT:  Okay.  And is anyone taking foreclosure

1 or collection action against you?

2       MR. CELIOUS:  Yes.  They've demanded money and they

3 have initiated the process.  I haven't received the formal

4 court foreclosure process, but that is what Homecoming

5 Financial and I believe now Carrington Mortgages Services will

6 be moving toward since the 90 day period is coming upon us

7 shortly.  It will be 90 days at the end of July which would be

8 today.  So tomorrow they would be authorized to initiate those

9 proceedings.

10                          (Pause)

11       THE COURT:  Mr. Celious, have you seen a copy of the

12 response that the debtor filed to the motion?

13       MR. CELIOUS:  I have, Your Honor.

14       THE COURT:  Okay.  In Paragraph 4 the debtor

15 correctly articulates the standard under which the Court

16 determines whether the relief that's requested should be

17 granted.  And I tend to think that while there may be some

18 hardship to you in maintaining the stay especially in light of

19 what might be a collection action against you I'm not at all

20 convinced that you've demonstrated that you will prevail on the

21 merits.

22       Now, we haven't really had an evidentiary hearing

23 here today and we normally wouldn't on the first listing of a

24 lift stay motion.  I'm also concerned about that which the

25 debtor has expressed and that is that given the breadth of the

1 company's operations there could be many such similar claims.

2 Now, of course making that argument cuts both ways.  It could

3 be viewed as an acknowledgment that there might have been other

4 alleged improprieties in connection with disposition of some

5 properties.  But I am reluctant to grant relief at this point.

6 On the other hand, I'll say to the debtor and the

7 committee now that it seems to me that to the extent others are

8 moving against this party and he faces the loss of the property

9 that he's purchased, but he's denied this day in court as the

10 property is being taken from him doesn't seem to me to be very

11 fair.  So what I'm inclined to do having said that is consider

12 this a preliminary hearing under Section 362 and set it for

13 final hearing probably later in August.  What date do we have

14 in August?

15 THE ATTORNEYS:  August 21st.

16 THE COURT:  August 21st at 1:30.  And during that

17 time it'll give the debtor an opportunity to review the further

18 submission that Mr. Celious has made, but also to consider his

19 individual circumstances and whether it's appropriate at this

20 time to begin talking about some overall process for addressing

21 these claims in a fair way so that the estate is not

22 overburdened with defense, but at the same time that claimants

23 like Mr. Celious, if there are any others out there have the

24 opportunity to have their day in court.

25 Mr. Celious, do you have any questions about what

59

1  I've just determined?

2       MR. CELIOUS:  The only question I have is whether or

3  not I can submit, I guess, evidence to support my claims.  I

4  know that you've said that it's unlikely in your opinion that I

5  would prevail in the event that I was able to actually take

6  them to court.

7       THE COURT:  Well, the answer is if you would like --

8  normally I do not permit testimony by telephone.  So if you

9  would like to present evidence you are free to come here on the

10 21st and testify, to submit documents subject to the rules of

11 evidence which you'd like me to consider understanding that I

12 won't be determining your claim, but as part of the standard

13 that I referred to I would consider at least at some level

14 whether your claim had any merit to meet that one prong of the

15 three-part test.  So the answer is yes.  And you are, as you

16 obviously already know, you're free to represent yourself.  But

17 the issues that you raised are not uncomplicated.  So you may

18 consider seeking advice from counsel.  But I leave that

19 entirely to you.  It's not a requirement in this court.  Do you

20 have any other questions?

21      MR. CELIOUS:  Just for clarification.  I can submit

22 evidence in the mail or do I have to submit them in person?

23      THE COURT:  Well, I generally like people to be

24 present at evidentiary hearings.  And what you might want to do

25 is ask the debtor whether it agrees to the submission of

60

1  certain documents.  It may be that you don't want to give live

2  testimony, that you'll just rest on the documents.  But

3  probably not.  But check with the debtor ahead of time.  The

4  Court just doesn't take documents because you want to submit

5  them.  There are rules of evidence that apply so the

6  appropriate foundation must be laid for them and they must be

7  otherwise admissible.  And that's one of the things that you

8  might want to seek a little advice on.  But again, I leave that

9  to you.

10          MR. CELIOUS:  Right.  Thank you, Your Honor.

11          THE COURT:  Anyone else, debtor or the committee,

12  have any comments?  All right.  I hear nothing further.  Thank

13  you, Mr. Celious.

14          MR. CELIOUS:  Thank you.

15          THE COURT:  August 21st at 1:30.  Okay.  There were a

16  couple of other things I did want to go over with you.  I

17  received a certification of counsel from counsel for Ryan

18  Desert Ridge II, LLC reciting that there'd been a motion

19  hearing on which was set for July 16th, no objections.  Debtor

20  at the hearing requested a further opportunity to review the

21  proposed form of order.  She indicates the debtors now consent

22  that there was no representation about whether the committee

23  had been consulted or had any problem with the form of order.

24  And I simply held it today to ask that question.  Mr.

25  Indelicato, are you familiar with the situation I'm talking

61

1 about?

2      MR. INDELICATO:  I am not, Your Honor.  I don't

3 believe we have seen the order.  (Indiscernible)

4      THE COURT:  You're welcome.  All right.  And the

5 other thing concerns the Adversary 07-51598 New Century versus

6 Schroder Parker and Others -- I'm sorry Schroder Parker and

7 Others versus New Century.  Plaintiffs are represented by Mr.

8 Houston locally.  A stipulation was submitted for extension of

9 time for Wells Fargo who's represented by Claire Harrison to

10 respond to the complaint.  Normally I would just act on those

11 as a matter of routine.  But there was no certification.  Even

12 with the stipulation normally a certification comes in saying

13 Wells Fargo needs more time, please approve the stipulation.

14 But it came in without anything.

15      MR. MERCHANT:  Unfortunately, Your Honor, I don't

16 know anything about that adversary.

17      THE COURT:  You know, and I didn't necessarily expect

18 you to because --

19      MR. MERCHANT:  But I think --

20      THE COURT:  If you'd follow up I'd appreciate it.

21      MR. MERCHANT:  Sure.

22      THE COURT:  All right.  I have no problem with

23 signing off on the relief.

24      MR. INDELICATO:  Your Honor, based on the debtor's

25 representations regarding the numbers we have no problem.

62

1        THE COURT:  Okay.  I'll sign that order now then.

2  Thank you.  All right.  Anything else for today?

3        MR. MERCHANT:  We have nothing further, Your Honor.

4        THE COURT:  Thank you.  That concludes this hearing.

5  Court is adjourned.

6        THE ATTORNEYS:  Thank you, Your Honor.

7                    *  *  *  *  *

8                    **CERTIFICATION**

9     I, KIMBERLY UPSHUR, certify that the foregoing is a

10  correct transcript to the best of my ability, from the

11  electronic sound recording of the proceedings in the above-

12  entitled matter.

13  /s/ Kimberly Upshur              DATE:  August 2, 2007

14  KIMBERLY UPSHUR

15  J&J COURT TRANSCRIBERS, INC.

16

17

18

19

20

21

22

23

24

25