## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, <u>et al.</u>,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Re: Docket No. 1824** |

## NOTICE OF FILING

PLEASE TAKE NOTICE that on August 20, 2007, in advance of the evidentiary

hearing (the "Hearing") on the Motion of Aaron Celious for Relief from Stay [Docket No. 1824]

scheduled for August 21, 2007 at 1:30 p.m., the above-captioned debtors and debtors in

possession (the "Debtors") have filed the following with the United States Bankruptcy Court for

the District of Delaware, 824 Market Street, Wilmington, Delaware 19801:

- the complaint styled <u>Celious v. New Century Mortgage Corp., et al.</u>, filed July 2, 2007 in the Superior Court of Fulton County, State of Georgia, Civil Division (the "Exhibit")

PLEASE TAKE FURTHER NOTICE that the Debtors intend to reference the

Exhibit during their presentation at the Hearing.

---

[1]    The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership and New Century Warehouse Corporation, a California corporation.

Dated: August 20, 2007
     Wilmington, Delaware

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

Aaron Celious
1614 Greenfield Avenue
Los Angeles, CA 90025
Tel. (310) 309-9003
Fax. (310) 943-3775

Pro Se

SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA
CIVIL DIVISION

Aaron Celious,

　　　　　Plaintiff,

　　vs.

New Century Mortgage Corporation, a Delaware
corporation, Homecomings Financial, LLC, a
Delaware corporation, Jacob Mickle, Account
Executive for New Century Mortgage Corporation,
Stephanie J. Parham, a residential real estate
appraiser, Rachelle Riley, a residential real
estate appraiser, Mortgage By Design, Inc., a
Georgia Corporation, Litterial Green,
unlicensed real estate agent and loan broker,
Rose Ahoussi, seller of subject property, and
DOES 1 -20, inclusive.

　　　　　Defendants

Case No.:

Initial Complaint
1. Rescission
2. Fraud and Deceit
3. Negligent Misrepresentation
4. Conspiracy to commit Fraud
5. Negligence
6. Unjust Enrichment
7. Attempted Extortion



　　　Plaintiff Aaron Celious, individually, hereby alleges claims against defendants New Century Mortgage Company ("New Century"), Homecomings Financial, LLC ("Homecomings"), Jacob Mickle ("Mickle"), Stephanie J. Parham ("Parham"), Rachelle Riley ("Riley"), Mortgage By Design, Inc. ("Mortgage By"), Litterial Green ("Green"), Rose Ahoussi ("Ahoussi") and Does 1-20.

THE PARTIES

　　1.　　　Plaintiff Aaron Celious is the owner of the property located in Fulton County Georgia at 1267 Oakland Terrace, Atlanta, GA 30310.

[Summary of pleading] - 1

2. Defendant New Century is a Delaware corporation with its principal place of business in Orange County, California and representative offices across the United States.

3. Defendant Homecomings is a Delaware limited liability company, and subsidiary of GMAC Mortgage, with its principal place of business in Montgomery County Pennsylvania. Homecomings took over or purchased the first loan from New Century prior to the first mortgage payment being required by Plaintiff in February of 2006.

4. Defendant Mickle was an Account Executive for New Century and is a Fulton County resident. Mickle processed Plaintiff's loan documents to originate the first and second purchase money loans.

5. Defendant Parham is a certified residential mortgage appraiser, license CR7281, residing in Dekalb County. Parham was employed to appraise the subject property with or through RQR Appraisal Company, a company with no identifiable registration with the Georgia Secretary of State.

6. Defendant Riley is a certified residential mortgage appraiser, license 239488, and licensed real estate agent, license 113644, residing in Dekalb County. Riley is the owner of the home, which houses RQR Appraisal Company. Riley solicited and advertised the property to Plaintiff via Defendants Mickle and Green.

7. Defendant Mortgage By is a Georgia corporation conducting business out of Cobb County Georgia. Mortgage By broker/agent Sharita Small brokered the loan on behalf of the Plaintiff.

8. Defendant Green is a resident of Fayette County Georgia. At the time of the transaction, Green functioned as an unlicensed real estate agent and loan broker. Green performed these tasks by soliciting and advertising to Plaintiff property to be purchased, collecting pertinent loan application materials from Plaintiff, connecting Plaintiff with Defendant Mortgage By and ensuring the sale was complete.

9. Defendant Ahoussi sold Plaintiff the subject property. On information and belief, Ahoussi is a resident of Dekalb County.

10.    The true names and capacities of DOES 1 through 20, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff who therefore sue said Defendants by such fictitious names, and Plaintiff asks leave of the court to amend this complaint to allege the true names and capacities of these defendants when the same have been ascertained.

11.    On information and belief, each of the Defendants, including those named as DOES 1 through 20, are the agents, servants, employees or service providers of each of the other Defendants, and in·doing the things herein alleged, each acted within the course and scope of said agency, employment, service provider and or with full knowledge and consent of each of the remaining Defendants.

## STATEMENT OF FACTS

### Background of Fraudulent Enterprise

12.    Since 2005, Defendant Green has solicited several home buyers to purchase properties at gratuitously inflated values in and around Fulton County.  Green orchestrates the fraud through the complicity of the home seller, appraiser, mortgage broker and lender.  The fraud is accomplished by (1) creation of a fraudulent appraisal with an inflated value, (2) use of the fraudulent appraisal by Broker and Lender to prepare the loan, and (3) Lender validation or failure to invalidate the fraudulent value listed on the appraisal.

### Security Deed Agreement

13.    On December 5, 2005, Plaintiff agreed to purchase from Defendant New Century two Security Deeds to pay for the purchase of a residential house located at 1267 Oakland Terrace (1267 Oakland) in Fulton County, Georgia.

14.    Under the terms of the contract, New Century stated that the house carried a fair market value of $250,000, which they knew was false.

15.    New Century sold Plaintiff a 100% Loan-to-Value Security Deed in the amount of $245,000.

## Fraudulent Appraisal

16.    On October 18, 2005, Defendants Parham and Riley, acting individually or collectively, appraised the property in question at 1267 Oakland for RQR Appraisal Company.  The appraisal listed the value of the subject property at $250,000.  They knew when making the statement that this value was false.  They also listed the property as having three bedrooms, when it only has two bedrooms, according to the Fulton County Assessor's office.  This statement was also made with Parham's knowledge, given that she states on the appraisal that subject property information was obtained from public records and, all public records indicate the house has only two bedrooms.

## New Century's Knowledge of Fraudulent Appraisal

17.    New Century asserted that the property carried a value of $250,000 even though they knew the property's value was much less.  New Century knew or should have known that the market value of the property was much less than $250,000 based on their knowledge that (1) the appraisal submitted was illegally transferred from another client to Plaintiff;  (2) the stated value in the appraisal was based on a predetermined value; and, (2) New Century's title examination shows past sales of the property, which is indicative of the correct market value of the property.

## Illegal Transfer of Appraisal

18.    On November 20, 2005, New Century Account Executive, Mickle, electronic mailed an appraisal of 1267 Oakland to Plaintiff via Green.  Uniform Standards of Appraisal Practice (USPAP) states, "Once a report has been prepared for a named client(s) and any other identified intended users and for an identified intended use, the appraiser cannot 'readdress' (transfer) the report to another party."  The appraisal that was electronic mailed to Plaintiff from New Century was produced for another user, Amadu Jabbie (Borrower) and First Place Home Loans (Lender).  New Century included a second updated appraisal in the loan documents.  The second appraisal had few substantive differences from the first appraisal in that it named the Plaintiff as the client, rather than Amadu Jabbie, which is

[Summary of pleading] - 4

evidence that the appraisal submitted with Plaintiff's loan documents was
not unique to Plaintiff and was, therefore, transferred or "readdressed" in
violation of USPAP Advisory Opinion 26.

### Predetermined Appraisal Value

19.    All appraisers must certify in their appraisal reports that they
were not required to report a predetermined value or direction in value in
creating the appraisal. The value of a property is determined by many
factors including, but not limited to, the sales price of other similar
homes, the size of the property and the condition of the property. Two
appraisals are in question: The appraisal New Century sent to Plaintiff to
advertise and induce his purchase, and the appraisal New Century logged
with the loan documents. The value reported on these two appraisals was
identical. However, the price should have been adjusted down on the second
appraisal for property conditions, given that the condition of the subject
property was listed as "Good" in the appraisal sent to Plaintiff and just
"Average" in the appraisal New Century used for their loan documents. This
failure to adjust the value between the two documents, even though there
was a reported difference in condition, is indicative of the predetermined
value established for the appraisal regardless of the actual conditions of
the property.

### Title Examination and Underwriting

20.    Title examinations show characteristics of a property, past
sales, and any liens on title. A title examination that shows drastic
fluctuations in previous sales prices would alert a title examiner or
underwriter that a closer examination is required, especially if the
alleged property value is significantly higher than previous sales of the
subject property. Title examination shows the previous sales of the
subject property on October, 1985 for $35,200, the sale in May, 2003 for
$125,000 and the recent sale in December, 2005 for $245,000.

21.    Significant value increases to a property can be explained by (1)
home improvements and (2) appreciation due to market inflation. The price
increase from $35,200 in October, 1985 to $125,000 in May, 2003 is

1  explained by inflation over the course of approximately eighteen years.

2  The price increase is $89,800, which is a 255% appreciation above the

3  initial purchase price.  There is no explanation for the value increase

4  from $125,000 in May, 2003 to the appraised value of $250,000 in November,

5  2005.

6      22.    The Atlanta City Bureau of Buildings has no record of a permit

7  issued during the time of ownership by Ms. Rose Ahoussi, or for any person,

8  company or entity during the period between 2003 and 2006 for the subject

9  property.  According to the Atlanta City Bureau of Building's:

10      "Residential general repair permits are required for improvements to

11      existing single family or two-family residences; however, if the total

12      cost of materials and labor are less than $2,500, a permit is not

13      required."

14  It is possible that improvements in the amount of $2,499 were performed;

15  however, this is speculative.  The appraisal provided to Plaintiff lists

16  repairs in the amount of $20,100, which is impossible without a valid

17  Atlanta City Building permit.  However, even if a permit was issued to

18  perform $20,100 worth of home improvements, $20,100 in repairs cannot

19  justifiably increase the value of the property by $125,000 within a three

20  year period.  This would mean every dollar spent on repairs was worth $6.22

21  in value appreciation.  It could also be looked at as getting a 622% return

22  on the principal investment.

23      23.    Given that there were no repairs to the property, the theory of

24  property value appreciation due to market inflation may be applied.  This

25  theory suggests that the property value increased $125,000 during the two

26  and a half years it was owned by Ms. Ahoussi without any home improvements.

27  This increase is at a rate of 100% of Ms. Ahoussi's purchase price.  Given

28  the market of the neighborhood, it is impossible to justify a 100% increase

29  in value in just two and a half years based on inflation alone.  This is

30  especially true when compared to the eighteen years prior to Ms. Ahoussi's

31  purchase, which saw 100% inflation over a period of at least seven years.

32

24.     Defendants New Century, Parham and Riley conspired to, create a false value of 'the property, which was used to induce Plaintiff's purchase. They supported their fraud by listing false home improvements on the appraisal provided to Plaintiff in the amount of $20,100. New Century took this deceit a step further by paying STS Enterprises $51,888.55 for home improvements that were never performed.

### Confirmation of Fraudulent Appraisal

25.     To confirm the theory of a fraudulent appraisal, Plaintiff contacted Core Logic on May 21, 2007, to perform an assessment of the appraisal using their software package History Pro Review™. This provides a multi-address information report, which "is used to provide sales history and comps for a specific market in such detail as to clearly identify flips, flip markets, and valuation patterns." The results returned two statements "Appraisal Caution: High" and "Subject Property Caution: High." The appraisal failed on several metrics, among them were "Comp Distance Warning," indicating that the appraiser chose comps farther away from the subject than all other nearby sales available; "Comp Sales Gain Warning" because the average change in value on all three comps over a three year period was over 50%; "Comp Value Warning" as the Comps' value estimates were 35% above each Comp's median market value; and "Market Value Warning" because the appraiser used comps with market values at least 15% above the market value of properties in the subject's market area.

26.     The Core Logic report lists the market value of the property at $100,600, which refutes the Defendants' allegation that the property was or has ever carried a market value of $250,000. It further confirms that the comps used to support the fabricated value on the appraisal did not represent a fair market selection of comparable houses; instead, the comps were hand selected to support a manufactured value, which is a violation of Uniform Standards of Professional Appraisal Practice. Evidence of the inflated prices of the comps can be seen in the quick default of two of the three comps used in the appraisal. These comps sold in foreclosure sales below their previous sales price by $88,000, and $159,999, respectively.

[Summary of pleading] - 7

The Core Logic report also verifies that the number of bedrooms in the
house is two and not three, as stated in the appraisal sent to Plaintiff
and submitted with the loan documents by New Century.

### Discriminatory Lending Practices

27.    New Century has a history of financing fraudulent loans to the
demise of borrowers.  Their practice of financing loans that are not backed
by adequate collateral or collateral that is worth the price of the loan
has done three things: (1) it allowed New Century to bundle and sell large
numbers of inflated loans to unsuspecting secondary buyers; (2) it inflated
the reported profitability and collective assets of New Century, which
mislead stock holders to believe their stock had a value based on
verifiable asset value that was not present; and (3) it left countless home
owners with loans they could not pay back or refinance, which pushed them
to default and lose their homes in foreclosure proceedings.

28.    This practice is what led to a Securities and Exchange
investigation and Grand Jury Subpoena by the US Attorney's Office of the
Central District of California in and around March of 2007.  In response,
New Century quickly found shelter from prosecution by filing for Chapter 11
Bankruptcy protection on April 2, 2007.  The damages caused by New
Century's illegal business practices harm the wealthy stockholders as well
as the poor.  Unlike the stockholders, however, the poor black communities
New Century has prayed upon have fewer opportunities to rebound from the
financial losses suffered as a result of New Century's actions.

29.    The Plaintiff's home is located in a historically African
American community in Atlanta, Georgia.  In consummating this transaction,
Plaintiff becomes one of the many minorities whose civil rights have been
violated by New Century.  An independent review of residential mortgage
loans financed by New Century in Atlanta, as registered with the Fulton
County Superior Court Clerk, between September, 2004 and June, 2006 shows
that New Century has financed homes loans in a predatory capacity.

30.    The Plaintiff's home is located in and around zip codes 30310,
30314, 30315, 30318, and et cetera.  According to the 2000 US Census

report, residents in the 30310 zip code are approximately 93% black or

African American.    A review of security deeds funded by New Century to

purchase houses in and around this area, between September, 2004 and June,

2006, reveals that New Century financed the purchase of 31 homes that

defaulted and were sold in foreclosure on average 11 months from the date

of purchase.

31.    The average purchase price of the homes New Century financed in

and around the 30310 zip code was $250,284.    The average foreclosure price

was $176,227.    This difference between the purchase price and the

foreclosure sale price was at a loss of $74,057, which represents a 30%

reduction in value between the purchase price and foreclosure price of the

properties.    This 30% reduction in value also means that the borrower was

sold a home, which New Century financed, that was 42% over market value.

If New Century funded these homes, stating that the borrower was receiving

a loan at 100% loan-to-value, and the values were really 30% below the

stated value, it means that the borrower was paying 42% of the market value

of the home for New Century to extend them credit to finance the home

purchase ($250,284 reduced to $176,227 represents a difference of $74,057

and a 30% reduction as $74,057/$250,284 = 30%; $176,227 increased to

$250,284 is an increase of $74,057 and a 42% inflation as $74,057/$176,227

= 42%).

32.    Georgia Code states that it is a violation of § 7-1-1013 to

"Make, directly or indirectly, any residential mortgage loan with the

intent to foreclose on the borrower's property."    Charging minority

borrowers 42% above the market value of the home to finance the purchase of

a home, places the borrower in perpetual debt with foreclosure as the

foregone result.    In this scenario, the borrower cannot refinance because

the loan amount is greater than the value of the home; nor can the borrower

sell the home until paying the difference between the new sale price,

likely tens of thousands of dollars below what Borrowers paid to buy the

house, and the amount owed to New Century on the security deed.    Lacking

1   the finances to bail themselves out, these borrowers default on their homes

2   in which case, New Century forecloses on the property.

3                          **FIRST CAUSE OF ACTION**

4           **Rescission for Fraud in Law and Equity O.C.G.A. § 23-2-51**

5        33.    Defendants made untrue statements and omissions of material facts

6   in the represented value of the subject property in the loan documents,

7   which includes the appraisal.  Defendants Parham, Riley, New Century,

8   Mickle and Green made untrue statements of material fact pertaining to the

9   value of the property in the appraisal.  The fraudulent statements made,

10  were done so with the purpose of inducing the borrower to purchase the

11  security deed from New Century.

12       34.    By reason of the above facts, Defendants New Century and Mortgage

13  by Design violated O.C.G.A. § 7-1-1013, which prohibits any licensed or

14  unlicensed person transacting a mortgage business to:

15          (1) Misrepresent the material facts or make false statements or

16          promises likely to influence, persuade, or induce an applicant for a

17          mortgage loan, a mortgagee, or a mortgager to take a mortgage loan,

18          or pursue a course of misrepresentation to the department or anyone

19          through agents or otherwise;

20          (2) Misrepresent or conceal or cause another to misrepresent or

21          conceal material factors, terms, or conditions of a transaction to

22          which a mortgage lender or broker is a party, pertinent to an

23          applicant or application for a mortgage loan or a mortgager;

24          (3) Engage in any transaction, practice, or course of business which

25          is not in good faith or fair dealing, or which operates a fraud upon

26          any person, in connection with the attempted or actual making of,

27          purchase of, or sale of any mortgage loan;

28          (4) Engage in any fraudulent home mortgage underwriting practices.

29       35.    By reason of the Defendants' violation of O.C.G.A. § 7-1-1013,

30  § 51-6-2, and O.C.G.A. § 23-2-51, Plaintiff is entitled under O.C.G.A. §

31  23-2-60 and O.C.G.A § 13-4-60 to all relief provided therefore including

32  without limitation to recover from Defendants New Century and Homecomings

1  Financial rescission of the loan, all consideration paid by Plaintiff in
2  connection with the mortgage including payments for interest, principal,
3  fees, and taxes.

4  36.    To the extent that any Defendant was not the "seller" for
5  Plaintiff's purchase of the security deed, such Defendants (i) were service
6  providers for Lender and (ii) materially aided in the fraudulent act or
7  transaction.  By reason of the above facts, each such Defendant is jointly
8  and severally liable with the statutory "seller" under O.C.G.A. § 16-2-20
9  for the violation of § 7-1-1013, § 51-6-2, and O.C.G.A. §.23-2-51.
10 Plaintiff is therefore entitled to all relief provided under § 23-2-60 and
11 O.C.G.A § 13-4-60 from all Defendants including without limitation,
12 rescission.

### SECOND CAUSE OF ACTION

**Fraud and Deceit in Equity O.C.G.A. § 23-2-51 and Law O.C.G.A. § 51-6-2**

15 37.    Defendants knowingly and willingly made, or participated in the
16 making of, material false representations to Plaintiff including that (1)
17 the market value of the subject property was $250,000 when they knew its
18 value was much less; (2) the loan amount of $245,000, represented
19 approximately 100% of the property value when, by virtue of the property
20 market value being much less than $245,000 is untrue; and, (3) concealing
21 their knowledge that the value of the property reported on the appraisal
22 was incorrect based on (a) the illegal transfer of the appraisal from one
23 client to Plaintiff, (b) the predetermined value reported on the appraisal,
24 and (c) title examination, which showed the previous sale was half the
25 value of the alleged property value on the appraisal and other loan
26 documents.

27 38.    These representations were known by Defendants to be false, and
28 were made with the intention and purpose of deceiving Plaintiff to his risk
29 or injury.  In truth, at the time of purchase, the subject property carried
30 a market value of or about $100,600.

31 39.    Plaintiff was not aware of the falsity of Defendants'
32 misrepresentations and material facts Defendants suppressed and concealed.

[Summary of pleading] - 11

Plaintiff could not have discovered this deceit in the course of a normal inspection, as this type of discovery pertains to special skills including (1) property appraising, title examination, and underwriting, which Plaintiff was not qualified to conduct. However, Plaintiff paid New Century's closing attorney for a title examination, which should have revealed these discrepancies and misrepresentations.

40.    Plaintiff believed and relied upon all the above mentioned false representations, and thus was induced to purchase the security deed from New Century.

41.    Plaintiff's reliance upon the false representations was justifiable because the information was presented by professionals who represented the information to be accurate and legitimate, as it was performed by a licensed appraiser and verified by a lender, New Century. Plaintiff would not have purchased the security deed had he known the truth regarding Defendants' misrepresentations and omissions.

42.    As a result of the actions of Defendants, Plaintiff has suffered damages. Plaintiff is therefore entitled to rescission plus costs associated with the fraudulent transaction, interest and fees; or pursuant to O.C.G.A. § 51-12-5.1, Plaintiff may affirm the security deed and is entitled to the difference between what the property is actually worth and what it would have been worth if the property had been as represented.

43.    The rescission based option for damages is $26,465.85 for principal and interest payments on the security deed, $1,765.06 for property taxes, and interest based on the (1) principal and interest loan payments, (2) property taxes, and (3) the difference between what the property would have been worth had it been as represented and what it was actually worth, plus legal fees.

44.    Damages based on affirming the security deed would be $177,630.91 plus interest and legal fees. This represents the difference between what the property was worth at the time of the contract, $100,600, and what the property was alleged to be worth, $250,000, which is $149,400, plus $28,230.91 for principal and interest mortgage payments and property taxes.

45.    In making the intentional misrepresentations and suppressing, concealing and omitting to disclose to Plaintiff material facts, Defendants acted with oppression, fraud and malice in conscious derogation of Plaintiff's rights under applicable law.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial, that are appropriate to punish and deter Defendants from future misconduct.

### THIRD CAUSE OF ACTION

### Negligent Misrepresentation

46.    Defendants made misrepresentations as alleged above without reasonable grounds for believing them to be true at the time that they were made, and with the intent to induce Plaintiff to purchase the security deed on the house.

47.    Plaintiff was unaware of the falsity of Defendants' misrepresentations.  Plaintiff purchased the security deed in justifiable reliance upon Defendants' misrepresentations.  Plaintiff would not have purchased the security deed had he known that Defendants' representations were false.

48.    As a proximate result of the actions of Defendants, Plaintiff has suffered damages in an amount no less than the jurisdictional minimum of this Court.

### FOURTH CAUSE OF ACTION

### Conspiracy to Commit Fraud (O.C.G.A § 16-2-20, Code 1933, § 26-801)

49.    There existed at all relevant times, a professional duty not to create, transmit for another's use, or make use of fraudulent documents in the mortgage process.  The Defendants acted in concert, agreed and knowingly and willfully conspired to defraud Plaintiff.  The actions, misrepresentations, omissions and concealment of material fact by Defendants alleged above were pursuant to and in furtherance of this conspiracy.

50.    As a result of Defendants' acts, Plaintiff suffered damages in an amount no less than the jurisdictional limit of this Court.

51.    In participating in the conspiracy as alleged herein, Defendants acted with oppression, fraud and malice, in conscious derogation of Plaintiff's rights under applicable law.  Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial, that are appropriate to punish or set an example of the Defendants.

### FIFTH CAUSE OF ACTION

### Negligence

52.    Defendants' provided false statements of the property value and, New Century made these statements, even though they discovered that the statements were false through their (a) knowledge that the appraisal was illegally transferred from one client to Plaintiff, (b) value in the appraisal was predetermined prior to conducting the appraisal, and (c) title examination and other underwriting procedures showed evidence that the value reported in the appraisal was false.  Defendants had a duty to use such skill, prudence and diligence as lenders, appraisers and mortgage brokers would commonly possess in performing the obligations of these tasks.

53.    Defendants breached that duty by the actions, failures to act, representations and omissions alleged above.  Defendant New Century further breached that duty by negligently: (1) confirming and listing the fraudulent value of the appraisal they knew to be false on all loan documents; (2) concealing the falsity of this information from Plaintiff; and (3) failing to take corrective action, demanding another appraisal report be produced at the instant they discovered that the value listed in the appraisal was inaccurate – all actions that would have been apparent to other reasonable lenders.

54.    The Defendants' breaches of their duties to Plaintiff, proximately caused injuries to Plaintiff.  As a proximate result, Plaintiff has suffered damages in an amount no less than the jurisdictional minimum of this Court.

SIXTH CAUSE OF ACTION

Unjust Enrichment

55.     Defendants made misrepresentations about the value of the property value, which induced Plaintiff to purchase the security deed.  New Century and Homecomings Financial benefited from this fraud by receiving (1) higher principal and interest payments on a larger loan amount, (2) greater returns for loan origination and fees, and (3) an inflated portfolio of assets, which may induce secondary mortgage investors to purchase the security deed at a price inconsistent with the market value.

56.     Plaintiff was injured as a proximate result of Defendants' enrichment.  As a proximate result of the actions of Defendants, Plaintiff has suffered damages and is entitled to equitable relief in an amount no less than the jurisdictional minimum of this Court.

SEVENTH CAUSE OF ACTION

Attempted Extortion

57.     Plaintiff demanded rescission based on fraud pursuant to O.C.G.A § 23-2-51 and § 51-6-2 on April 13, 2007.  On May 18, 2007, New Century denied Plaintiff's demand.  Under O.C.G.A. § 7-1-1013, New Century and Homecomings Financial have a duty not to make use of any fraudulent documents related to a mortgage transaction.

58.     Defendants New Century and Homecomings Financial breached that duty by their actions alleged above and, in violation of O.C.G.A § 16-8-16, have attempted to extort money from Plaintiff as follows: (1) harassing Plaintiff with calls from their debt collectors outside of business hours, mornings, evenings, and religious holy days of rest; (2) threatening the repossession of Plaintiff's property through legal means of foreclosure; and (3) threat to damage Plaintiff's personal credit if he does not make a payment on the fraudulent security deed.

59.     Plaintiff was injured as a proximate result of Defendants New Century and Homecomings Financial's attempted extortion.  As a proximate result of the actions of Defendants, Plaintiff has suffered damages and is

1  entitled to equitable relief in an amount no less than the jurisdictional

2  minimum of this Court.

3

4  WHEREFORE, Plaintiff prays for trial by a Struck Jury and judgment

5  against the Defendants as follows:

6  FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

7  1. For a judgment awarding rescission, or in the alternative, rescissory

8     damages against the Defendants according to proof and according to

9     the formula set forth in O.C.G.A. § 51-12-5.1, but no less than the

10     jurisdictional limit of this court.

11  2. All other relief as justice and equity require to return the

12     Plaintiff to his position prior to the purchase of the security deed

13     from New Century and to deprive Defendants of any unjust enrichment.

14  SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

15  1. For a judgment awarding damages against Defendants according to proof

16     but no less than the jurisdictional limit of this court.

17  2. For an award of punitive and exemplary damages.

18  THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

19  1. For a judgment awarding damages against Defendants according to proof

20     but no less than the jurisdictional limit of this court.

21  FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

22  1. For a judgment awarding damages against Defendants according to proof

23     but no less than the jurisdictional limit of this court.

24  2. For an award of punitive and exemplary damages.

25  FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

26  1. For a judgment awarding damages against Defendants according to proof

27     but no less than the jurisdictional limit of this court.

28  SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

29  1. For a judgment awarding damages against Defendants according to proof

30     but no less than the jurisdictional limit of this court.

31

32

<u>SEVENTH CAUSE OF ACTION AGAINST NEW CENTURY AND HOMECOMINGS</u>

1. For a judgment awarding damages against Defendants according to proof but no less than the jurisdictional limit of this court.

<u>FOR ALL CAUSES OF ACTION AGAINST ALL DEFENDANTS</u>

1. For interest thereon at the legal rate and according to proof;

2. For a return of all monies paid for services to any of the Defendants;

3. For costs of suit;

4. For attorney's fees;

5. For such other and further relief as the Court may deem just and proper; and

6. For Trial by a Struck Jury.

Dated this 28th Day of June 28, 2007

1614 Greenfield Avenue
Aaron Celious

WHEREFORE, Plaintiff prays for trial by a Struck Jury and judgment against the Defendants as follows:

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

1. For a judgment awarding rescission, or in the alternative, rescissory damages against the Defendants according to proof and according to the formula set forth in O.C.G.A. § 51-12-5.1, but no less than the jurisdictional limit of this court.

2. All other relief as justice and equity require to return the Plaintiff to his position prior to the purchase of the security deed from WAMU and to deprive Defendants of any unjust enrichment.

SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

1. For a judgment awarding damages against Defendants according to proof but no less than the jurisdictional limit of this court.

2. For an award of punitive and exemplary damages.

THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

1. For a judgment awarding damages against Defendants according to proof but no less than the jurisdictional limit of this court.

FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

1. For a judgment awarding damages against Defendants according to proof but no less than the jurisdictional limit of this court.

2. For an award of punitive and exemplary damages.

FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

1. For a judgment awarding damages against Defendants according to proof but no less than the jurisdictional limit of this court.

SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

1. For a judgment awarding damages against Defendants according to proof but no less than the jurisdictional limit of this court.

SEVENTH CAUSE OF ACTION AGAINST WAMU ONLY

1. For a judgment awarding damages against Defendant according to proof but no less than the jurisdictional limit of this court.

FOR ALL CAUSES OF ACTION AGAINST ALL DEFENDANTS

1. For interest thereon at the legal rate and according to proof;

2. For a return of all monies paid for services to any of the Defendants;

3. For costs of suit;

4. For attorney's fees;

5. For such other and further relief as the Court may deem just and proper; and

6. For Trial by a Struck Jury.

Dated this 28th Day of June, 2007

1614 Greenfield Avenue
Aaron Celious