## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, *et al.*,[1] | Case No. 07-10416 (KJC) (Jointly Administered) |
| | Obj. Deadline: September 4, 2007 at 4:00 p.m. |
| Debtors. | Hr'g Date: September 11, 2007 at 1:30 p.m. |

### MOTION OF NABIH AND ESTHER MANGOUBI FOR ENTRY OF AN ORDER DIRECTING THE DEBTORS IMMEDIATELY TO COMPLY WITH POST-PETITION LEASE OBLIGATIONS PURSUANT TO 11 U.S.C. § 365(d)(3)

COME NOW Nabih and Esther Mangoubi (together, the "Landlord"), as sole beneficiaries of Illinois Land Trust No. R-3679, which is the landlord of the premises located at 500 Peterson Road, Libertyville, IL 60048 (the "Premises"), by and through undersigned counsel, William D. Sullivan, LLC, and bring their *Motion for Entry of an Order Directing the Debtors Immediately to Comply with Post-Petition Lease Obligations Pursuant to 11 U.S.C. § 365(d)(3)* (the "Motion") and in support of their Motion respectfully state as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home 123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L/P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## Background

1.      Pre-petition, on February 26, 1997, the Landlord, through the trustee of their Land Trust and the Debtors' predecessor-in-interest entered into that certain Building Lease relating to the Premises (the "Lease"). A copy of the Lease is attached hereto as Exhibit A.

2.      On April 2, 2007 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

3.      On April 25, 2007, the Court entered an *Order Pursuant to Sections 356* [sic] *and 554 of the Bankruptcy Code (A) Authorizing and Approving the Rejection of Certain Unexpired Leases of Nonresidential Real Property and (B) Authorizing and Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases of Personal and Non-Residential Real Property* (the "Lease Rejection Order"). (D.I. 388).

4.      The Premises/Lease is listed on Exhibit "B" to the Lease Rejection Order as Lease ID IL008. Lease Rejection Order, at Ex. B, p. 11 of 22.

5.      Pursuant to the Lease Rejection Order, "[t]he leases identified on Exhibit "B" hereto are hereby rejected with rejection effective the later of (i) April 30, 2007 or (ii) the date the Debtors unequivocally relinquished control of the premises to the affected landlord by turning over the keys or "key codes" to the affected landlord." Lease Rejection Order, at ¶ 3 (emphasis supplied).

6.      The Lease Rejection Order also provides that, "[t]he Debtors shall remove any leased personal property from the underlying premises prior to relinquishing control of the premises of the affected landlord." Lease Rejection Order, at ¶ 7 (emphasis supplied).

2

7. On or about July 11, 2007, the Landlord (but not their counsel) received a facsimile from the Debtors seeking the Landlord's agreement to various factual and legal misrepresentations, including, *inter alia*, a contention purporting to establish June 30, 2007 as the date upon which the Debtors, "unequivocally relinquished control of the Premises to Landlord...." (the "Waiver Letter"). A copy of the Waiver Letter is attached hereto as Exhibit B. Because the Waiver Letter did not reflect the reality of the circumstances, the Landlord refused to sign the Waiver Letter.

8. On July 17, 2007, the Landlord received a call from someone named "Justine," purportedly from an outfit called OFC, who stated that she was calling on behalf of the Debtors and that she was under a court order to remove the furniture from and to broom clean the Premises and then to turn it over to the Landlord once the removal of furniture and cleaning were completed. Justine requested access to the Premises, whereupon she was advised that the Landlord did not have a key.

9. That same day, undersigned counsel for the Landlord communicated with the Debtors' local counsel and advised that the Debtors' failure to tender the key to the Premises was resulting in ongoing problems at that location, as evidenced by the OFC incident.

10. On July 31, 2007, the Landlord had a key made and entered the Premises. A representative of the Hinckley Spring water cooler company had observed a locksmith at the Premises and attempted to barge in and physically seize a water cooler. When Landlord refused to surrender what he believed to be leased personal property of the Debtors that was subject to court order, the water cooler representative called the police. The Landlord narrowly avoided being placed under arrest.

11.     On August 3, 2007, the Debtors filed their *Motion to Expand Scope of Order Establishing Miscellaneous Sale Procedures* (the "Expansion Motion"). (D.I. 2157). The Expansion Motion appears to seek authority, *inter alia*, to conduct sales of the Debtors' leased personal property (that has not already been transported to a central storage facility) <u>on site at landlords' premises</u>. Expansion Motion, at ¶¶ 7-8, 21; proposed form of order, at Ex. A (Miscellaneous Sale Procedures), ¶ 8.

12.     On August 8, 2007, after re-establishing electric service to the Premises, the Landlord again entered the Premises, whereupon the Landlord noticed what appeared to be several additional pieces of leased personal property remaining on the Premises, including large computer servers and routers, and that the Premises had sustained physical damage and was far from broom clean.

13.     Given the Landlord's observation on August 8, 2007 of what appeared to be significant leased personalty of the Debtors that remains on the Premises, on August 14, 2007, the Landlord filed an objection to the Expansion Motion arguing, in part, that the Expansion Motion either (a) conflicts impermissibly with the Lease Rejection Order because it seeks authority to sell the Debtors' leased personal property on site at the Premises <u>after</u> the date that the Debtors purport to have rejected the Lease or (b) should be deemed by the Court to be an estoppel of any contention on the part of the Debtors that they have thus far effectuated any unequivocal relinquishment of control of the Premises. (D.I. 2254).

14.     On August 21, 2007, the Court held a hearing on the Expansion Motion and Landlord's objection thereto. Counsel for the Debtors placed the following representations on the record, thereby resolving the Landlord's objection: (i) The Debtors will arrange for all leased personal property (including computer equipment, water coolers, and coffee station) to be

removed from the Premises by no later than August 29, 2007; (ii) at the same time, the Debtors will attempt to remove the refrigerator, old paint cans, and toner cartridges as well; (iii) the Debtors will provide the Landlord with at least 24-hours' (preferably 48-hours') prior notice of the retrieval date; (iii) no sale of miscellaneous assets shall take place at the Premises pursuant to the Expansion Motion; (iv) the Lease shall be deemed rejected upon completion of the Debtors' retrieval of the leased personalty remaining on the Premises; and (v) any personal property remaining on the Premises after the personalty retrieval shall be deemed abandoned. These representations are to be memorialized in a stipulation between the parties. The stipulation is to be referenced in the order granting the Expansion Motion.

15.    The Debtors have defaulted on their post-petition obligations under the Lease. Specifically, the Debtors have failed to pay the Landlord post-petition rent and other charges due under the Lease for the months of April (5% late fee payment plus 11.25% interest),[2] May (same),[3] July (monthly rent),[4] and August (monthly rent)[5] (collectively, the "Post-Petition Default")[6] in the aggregate amount of $26,064.21.

---

[2] Payment due April 1 was received by the bank late on May 8, 2007 (check no. 50123). 5% late fee due pursuant to Lease, at ¶ 4.1 ($565.89). $3.49 per diem interest due pursuant to Lease, at ¶ 33.8 (interest @ bank rate + 3% = 11.25% for 28 days = $97.72). Subtotal = $663.61.

[3] Payment due May 1was received by the bank late on May 22, 2007. 5% late fee due pursuant to Lease, at ¶ 4.1 ($565.89). $3.49 per diem interest due pursuant to Lease, at ¶ 33.8 (interest @ bank rate + 3% = 11.25% for 12 days = $41.88). Subtotal = $607.77.

[4] As of August 20, 2007, $11,718.44 + $585.92 (late fee) + $148.01 (interest @ $3.61/day X 41 days) = $12,452.37 + $3.61 per day.

[5] As of August 20, 2007, $11,718.44 + $585.92 (late fee) + $36.10 (interest @ $3.61/day X 10 days) = $12,340.46 + $3.61 per day.

[6] The Landlord reserves the right to seek payment of any additional post-petition amounts due, including but not limited to real estate taxes, insurance, and common area maintenance charges applicable to the post-petition period.

## Relief Requested

16.     The Landlord respectfully requests that the Court enter an order that compels the Debtors immediately to pay the Post-Petition Default; perform all other outstanding post-petition, pre-rejection obligations under the Lease as they become due until such time as the Lease is properly rejected; and pay the Landlord's attorneys' fees and costs.

## Basis for the Relief Requested

17.     Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform all the obligations of the debtor… arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." 11 U.S.C. § 365(d)(3) (emphasis supplied). In enacting section 365(d)(3), Congress intended to address the plight of landlords who, unlike professionals and other providers of goods and services to a debtor-in-possession in the ordinary course of business, are compelled to extend credit:

> A second and related problem is that during the time the debtor has vacated space but has not yet decided to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services--the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position....
>
> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong. Rec. S8894-95 (daily ed. June 29, 1984) (remarks of Sen. Hatch).

18.     This Court and others have continually held that a landlord is entitled to immediate payment of post-petition, pre-rejection rental payments, pursuant to 11 U.S.C. §

365(d)(3). See In re Valley Media, Inc., 290 B.R. 73 (Bankr. D. Del. 2003); In the Matter of the Barrister of Delaware, Ltd., 49 B.R. 446 (Bankr. D. Del. 1985); In re Brennick, 178 B.R. 305 (Bankr. D. Mass. 1995); Manhattan King David Restaurant, Inc. v. Levine, 163 B.R. 36 (S.D.N.Y. 1993); In re Rare Coin Galleries of America, Inc., 72 B.R. 415 (D. Mass 1987). Accordingly, this Court should enter an order compelling the Debtors immediately to pay the Post-Petition Default to the Landlord.

19.     Furthermore, the Debtors are obligated under the Lease to (i) pay all utilities, Lease, at ¶¶ 5.2 and 5.10; (ii) maintain the exterior of the Premises, Lease, at ¶ 7.1; and (iii) return the interior of the Premises to good order; Lease, at ¶¶ 7.1 and 19.3. Because the Debtors have also failed to perform these obligations since the Petition Date, the Landlord has been forced to incur additional expenses of $25.78 for water and sewer charges (invoice attached as Exhibit C); $440 for lawn care (invoice attached as Exhibit D); and $151 for locksmith services (invoice attached as Exhibit E); and estimates that it will cost approximately $1,200 to restore the interior of the Premises to good order; $150 to dispose of hazardous waste left on the Premises; $150 for garbage removal, and an unspecified amount for cleaning services.

20.     Finally, pursuant to the terms of the Lease, the Debtors are obligated to reimburse the Landlord for the reasonable attorneys' fees and costs incurred by the Landlord in connection with seeking the Debtors' compliance with the terms of the Lease. Lease, at ¶ 33.12; Travelers Casualty and Surety Co. v. Pacific Gas & Electric Co., 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007); Fed.R.Bankr.P. 7008(b). Accordingly, the Landlord respectfully requests that the Debtors be directed to pay the Landlord's attorneys' fees and costs incurred in connection with the filing and prosecution of this Motion.

21. By filing the Motion, the Landlord does not waive any rights, claims, actions, defenses, setoffs, or recoupments to which the Landlord is or may be entitled under any agreements, in equity, or under any applicable law or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments the Landlord expressly hereby asserts and preserves in these bankruptcy cases.

### Conclusion

WHEREFORE, the Landlord respectfully requests that the Court enter an order (i) that compels the Debtors immediately to pay to the Landlord, (a) the amount of $28,180.99, (b) plus, when due, perform all additional post-petition rent payment and other pecuniary obligations under the Lease that accrue until such time as the Debtors have removed all of their leased personal property from the Premises and then return the keys, (c) plus the Landlord's reasonable attorneys' fees and costs incurred in connection herewith in an amount to be determined at the hearing on this Motion, and (ii) that grants to the Landlord such other and further relief as this Court deems just and proper.

Dated: August 22, 2007  
Wilmington, Delaware

WILLIAM D. SULLIVAN, LLC

*/s/ E. Allinson III*

William D. Sullivan (No. 2820)  
Elihu E. Allinson, III (No. 3476)  
4 East 8th Street, Suite 400  
Wilmington, DE 19801  
Tel: (302) 428-8191  
Fax: (302) 428-8195

*Counsel for Nabih and Esther Mangoubi, as sole beneficiaries of Illinois Land Trust No. R-3679*