# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-10416 (KJC) (Jointly Administered) |
| | Obj. Deadline: September 4, 2007 at 4:00 p.m. |
| Debtors. | Hr'g Date: September 11, 2007 at 1:30 p.m. |

## MOTION OF TOWN PARK RENAISSANCE, LLC FOR ENTRY OF AN ORDER DIRECTING THE DEBTORS IMMEDIATELY TO COMPLY WITH POST-PETITION LEASE OBLIGATIONS PURSUANT TO 11 U.S.C. § 365(d)(3)

COMES NOW Town Park Renaissance, LLC (the "Landlord"), the landlord of the premises located at 114 Town Park Drive, Suite 150, Kennesaw, Georgia 30144 (the "Premises"), by and through undersigned counsel, William D. Sullivan, LLC and Friese Legal, LLC, and brings its *Motion for Entry of an Order Directing the Debtors Immediately to Comply with Post-Petition Lease Obligations Pursuant to 11 U.S.C. § 365(d)(3)* (the "Motion") and in support of its Motion respectfully states as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home 123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L/P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## Background

1. Pre-petition, on June 29, 2004, the Landlord and the Debtors' predecessor-in-interest entered into that certain Lease Agreement relating to the Premises (the "Lease"). A copy of the Lease is attached hereto as Exhibit A.

2. On April 2, 2007 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

3. On April 25, 2007, the Court entered an *Order Pursuant to Sections 356* [sic] *and 554 of the Bankruptcy Code (A) Authorizing and Approving the Rejection of Certain Unexpired Leases of Nonresidential Real Property and (B) Authorizing and Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases of Personal and Non-Residential Real Property* (the "Lease Rejection Order"). (D.I. 388).

4. The Premises/Lease is listed on Exhibit "B" to the Lease Rejection Order as Lease ID GA006. Lease Rejection Order, at Ex. B, p. 10 of 22.

5. Pursuant to the Lease Rejection Order, "[t]he leases identified on Exhibit "B" hereto are hereby rejected with rejection effective the later of (i) April 30, 2007 or (ii) the date the Debtors unequivocally relinquished control of the premises to the affected landlord by turning over the keys or "key codes" to the affected landlord." Lease Rejection Order, at ¶ 3 (emphasis supplied).

6. The Lease Rejection Order also provides that, "[t]he Debtors shall remove any leased personal property from the underlying premises prior to relinquishing control of the premises of the affected landlord." Lease Rejection Order, at ¶ 7 (emphasis supplied).

2

7. On June 18, 2007, the Landlord received a letter from the Debtors' counsel advising, *inter alia*, that, "you *may not* deem the Lease Location and any property located therein abandoned until the Lessee expressly rejects the lease. A lease is not rejected until such time as the Lessee unequivocally relinquishes possession by turning over the keys and/or key codes." Letter of June 18, 2007 from J. Jorge deNeve, Esq. to Meredith Whitt (the "June 18 Letter"), at p. 1 (emphasis included in original). A copy of the June 18 Letter is attached hereto as Exhibit B.

8. On June 28, 2007, the Landlord's counsel received a letter from the Debtors' counsel acknowledging that the Debtors did not have a key to the Premises and requesting, *inter alia*, "full access to the Property" because "[t]he personal property located at the Premises includes assets ... that are relevant to the ongoing investigation by the SEC." Letter of June 28, 2007 from Maris J. Finnegan, Esq. to Elihu E. Allinson, III, Esq. (the "June 28 Letter") , at p. 1. A copy of the June 28 Letter is attached hereto as Exhibit C.

9. On or about July 11, 2007, the Landlord (but not its counsel) received a facsimile from the Debtors seeking the Landlord's agreement to various factual and legal misrepresentations, including, *inter alia*, a contention purporting to establish June 30, 2007 as the date upon which the Debtors, "unequivocally relinquished control of the Premises to Landlord...." Letter of June 29, 2007 from Elise Luckham to Town Park Renaissance LLC (the "Waiver Letter"), at p. 1. A copy of the Waiver Letter is attached hereto as Exhibit D. Because the Waiver Letter did not reflect the reality of the circumstances, the Landlord refused to sign the Waiver Letter.

10. On July 31, 2007, the Landlord had a key made and entered the Premises.

11. On August 3, 2007, the Debtors filed their *Motion to Expand Scope of Order Establishing Miscellaneous Sale Procedures* (the "Expansion Motion"). (D.I. 2157). The

3

Expansion Motion appears to seek authority, *inter alia*, to conduct sales of the Debtors' leased personal property (that has not already been transported to a central storage facility) on site at landlords' premises. Expansion Motion, at ¶¶ 7-8, 21; proposed form of order, at Ex. A (Miscellaneous Sale Procedures), ¶ 8.

12. On August 14, 2007, the Landlord filed a joinder to an objection to the Expansion Motion arguing, in part, that the Expansion Motion either (a) conflicts impermissibly with the Lease Rejection Order because it seeks authority to sell the Debtors' leased personal property on site at the Premises after the date that the Debtors purport to have rejected the Lease or (b) should be deemed by the Court to be an estoppel of any contention on the part of the Debtors that they have thus far effectuated any unequivocal relinquishment of control of the Premises. (D.I. 2254).

13. On August 21, 2007, the Court held a hearing on the Expansion Motion and the Landlord's joinder to the objection thereto. Counsel for the Debtors placed the following representations on the record, thereby resolving the Landlord's objection: (i) the Debtors represented that no leased personal property remains on the Premises; (ii) no sale of miscellaneous assets shall take place at the Premises pursuant to the Expansion Motion; and (iii) the Lease shall be deemed rejected effective July 31, 2007. These representations are to be memorialized in a stipulation between the parties. The stipulation is to be referenced in the order granting the Expansion Motion.

14. The Debtors have defaulted on their post-petition obligations under the Lease. Specifically, the Debtors have failed to pay the Landlord post-petition rent and common area maintenance ("CAM") charges due under the Lease for the month of April 2007 (stub rent for the

period April 2 through April 30)[2] (collectively, the "Post-Petition Default")[3] in the aggregate amount of $5,429.72.

## Relief Requested

15. The Landlord respectfully requests that the Court enter an order that compels the Debtors immediately to pay the Post-Petition Default; perform all other outstanding post-petition, pre-rejection obligations accruing under the Lease during the period April 2, 2007 through July 31, 2007, and to pay the Landlord's attorneys' fees.

## Basis for the Relief Requested

16. Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform <u>all</u> the obligations of the debtor… arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." 11 U.S.C. § 365(d)(3) (emphasis supplied). In enacting section 365(d)(3), Congress intended to address the plight of landlords who, unlike professionals and other providers of goods and services to a debtor-in-possession in the ordinary course of business, are compelled to extend credit:

> A second and related problem is that during the time the debtor has vacated space but has not yet decided to assume or reject the lease, the trustee has stopped making payments due under the lease.

---

[2] Payment due April 1 was returned NSF (check no. 22736). Monthly rent = $4,031.25 and monthly CAM charge = $196.60. Lease, at ¶¶ 3, 5. Pro-rated rent and additional rent sub-total for stub period = $4,086.93. Returned check fee = $50.00. Lease, at ¶ 6. Sub-total = $4,136.93. As of August 31, 2007, late charge = 5% per month = $206.85 x 5 months = $1,034.23. Lease, at ¶ 6. As of August 31, 2007, sub-total = $5,171.16. Interest = 12% per annum = $620.54 X 5/12 = $258.56. Lease, at ¶ 6. As of August 31, 2007, subtotal = $5,429.72. As of August 31, 2007, total amount of rent and additional rent due is $5,429.72, plus $1.70 per day until paid in full.

[3] The Landlord reserves the right to seek payment of any additional post-petition amounts due, including but not limited to, real estate taxes, insurance, utilities, restoration of the exterior of the Premises, returning the interior of the Premises to good order; locksmith services; dispose of any hazardous waste that may have been left on the Premises; garbage removal, cleaning services, and removal of abandoned personalty to the extent that such amounts accrued during the post-petition, pre-rejection period.

> These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services--the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position....
>
> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong. Rec. S8894-95 (daily ed. June 29, 1984) (remarks of Sen. Hatch).

17. This Court and others have continually held that a landlord is entitled to immediate payment of post-petition, pre-rejection rental payments, pursuant to 11 U.S.C. § 365(d)(3). See In re Valley Media, Inc., 290 B.R. 73 (Bankr. D. Del. 2003); In the Matter of the Barrister of Delaware, Ltd., 49 B.R. 446 (Bankr. D. Del. 1985); In re Brennick, 178 B.R. 305 (Bankr. D. Mass. 1995); Manhattan King David Restaurant, Inc. v. Levine, 163 B.R. 36 (S.D.N.Y. 1993); In re Rare Coin Galleries of America, Inc., 72 B.R. 415 (D. Mass 1987). Accordingly, this Court should enter an order compelling the Debtors immediately to pay the Post-Petition Default to the Landlord.

18. Finally, pursuant to the terms of the Lease, the Debtors are obligated to reimburse the Landlord for the liquidated attorneys' fees incurred by the Landlord in connection with seeking the Debtors' compliance with the terms of the Lease. Lease, at ¶35; Travelers Casualty and Surety Co. v. Pacific Gas & Electric Co., 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007); Fed. R. Bankr. P. 7008(b). Accordingly, the Landlord respectfully requests that the Debtors be directed to pay the Landlord's reasonable attorneys' fees incurred in connection with the filing and prosecution of this Motion.

19. By filing the Motion, the Landlord does not waive any rights, claims, actions, defenses, setoffs, or recoupments to which the Landlord is or may be entitled under any agreements, in equity, or under any applicable law or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments the Landlord expressly hereby asserts and preserves in these bankruptcy cases.

**Conclusion**

WHEREFORE, the Landlord respectfully requests that the Court enter an order (i) that compels the Debtors immediately to pay to the Landlord the amount of $5,429.72 plus the Landlord's reasonable attorneys' fees incurred in connection herewith in an amount to be determined at the hearing on this Motion, and (ii) that grants to the Landlord such other and further relief as this Court deems just and proper.

Dated: August 23, 2007
Wilmington, Delaware

WILLIAM D. SULLIVAN, LLC

*/s/ E.E. Allinson III*

William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

- and -

Stephanie Friese, Esq.
FRIESE LEGAL, LLC
1100 Spring Street NW
Suite 410
Atlanta, GA 30309
Tel: (404) 876-4880

*Counsel for Town Park Renaissance, LLC*