# EXHIBIT A

# LEASE AGREEMENT

THIS LEASE AGREEMENT (hereinafter called the "Lease") is made and entered into this _29 th_ day of _June_, 20 **04**, by and between **Town Park Renaissance, LLC** (hereinafter called "Landlord"); and **RBC Mortgage Company** (hereinafter called "Tenant").

1.Premises. Landlord does hereby rent and lease to Tenant and Tenant does hereby rent and lease from Landlord for general office use reasonable and customary for a project such as the Building (as defined below) only and for no other purposes whatsoever, the space described below (hereinafter called the "Premises") together with the non-exclusive right to use the Common Areas (as hereinafter defined) and parking areas on the Property (as the same may from time to time be changed by Landlord) in common with all other tenants of the Building and their licensees and invitees and in common with any other parties permitted by Landlord to use such areas: approximately **2,558** rentable square feet of space known as Suite **150** located on the **First**floor of that certain building consisting of approximately **81,814** rentable square feet and commonly known as **114 Town Park Drive** (the "Building"), located at **114 Town Park Drive, Kennesaw, Georgia** (the "Property"), said Premises to be located substantially as shown on the floor plan attached hereto as Exhibit  and made a part hereof by reference. In consideration of the Rent and the provisions of this Lease, Landlord leases to Tenant and Tenant accepts from Landlord the Leased Premises. No easement for light or air and no right to use the roof or any portion of the exterior of the Building is included in the Leased Premises or given by this Lease. Tenant acknowledges and agrees that rentable square footage is a stipulated amount based on a method of determining the total rentable square footage for rental purposes which includes usable square footage and Common Areas in the Building. For purposes of this Lease, "Common Areas" shall mean and include all parking facilities serving the Project, bathrooms, halls, lobby, janitors' closets, maintenance rooms, mechanical rooms and stairways.

2.    Lease Term. To have and to hold the same for a term of **39 months** (the "Term") beginning on the **1ˢᵗ** day of **August**, 20**04** hereinafter referred to as the "Commencement Date") and ending on the **31ˢᵗ** day of **October**, 20**07** (the "Expiration Date") unless sooner terminated as provided herein.

In the event the Premises are not ready or available on the Commencement Date, the Landlord shall prorate the rent accordingly. Under no circumstance shall the Landlord be liable or responsible for any other costs. Should Premises not be ready or completed 90 days after execution of this Lease Agreement then Tenant, at Tenant's option, shall have the right to terminate this Lease with no further obligation to the Landlord. At such time Landlord shall immediately refund all monies paid to Landlord by Tenant including Security Deposit and Advance Rent payment.

3.    Base Rent.

(a) Tenant shall pay to Landlord, at **2303 Cumberland Parkway, Atlanta, Georgia 30339**, or at such other place as Landlord shall designate in writing to Tenant annual base rent ("Base Rent") initially in an amount equal to **$46,044.00** payable in equal monthly installments of **$3,837.00**, due on the first day of each calendar month during the Term, in advance, without abatement, demand, deduction or offset whatsoever. One full monthly installment of Base Rent shall be due and payable on the date of execution of this Lease by Tenant for the first full calendar month of the Term. If the Commencement Date should be a date other than the first day of a calendar month, Tenant shall pay, on or before the Commencement Date, a prorated monthly Base Rent installment for the period from the Commencement Date to the end of the calendar month. Following the first full calendar month of the Term, monthly installments of Base Rent shall be due and payable on or before the first day of each calendar month following the Commencement Date during the Term hereof. Tenant shall pay, as additional Rent ("Additional Rent"), all other sums due from Tenant under this Lease (the term "Rent", as used herein, means all Base Rent and Additional Rent and all other sums due and payable hereunder from Tenant to Landlord).

(b) Tenant acknowledges, understands and agrees that (i) any concession (free rent, improvement allowance, etc.) that Landlord may have granted to Tenant as set forth in this Lease or the

Special Stipulations attached hereto and incorporated herein by this reference are personal to Tenant and shall not be assigned, in whole or in part, to any other person or entity without Landlord's express prior written approval, and (ii) Landlord has provided such concessions, if any, to Tenant in reliance upon Tenant's warranty that Tenant shall faithfully and timely perform all the terms and conditions of this Lease. Accordingly, in the event of Default (as that term is defined in Paragraph 27 hereof) by Tenant under this Lease, the unamortized portion (straight-line, monthly basis) of any such concessions shall be immediately due and payable by Tenant to Landlord as Additional Rent without demand or notice to Lessee.

4.      Base Rent Adjustment.  The Tenant's annual Base Rent Adjustment shall be 2 1/2 % fixed increase of Base Rent (See Exhibit **"B"**).

5.      Operating Expense Pass Through

a) Tenant shall pay as Additional Rent to Landlord for each calendar year after calendar year **2004** (calendar year **2004** hereinafter being referred to as the "Base Year"), Tenant's Share (as hereinafter defined) of any increase in operating costs of the Property and surrounding land on which the Property is located over the operating costs of the Base Year.  For purposes of this Lease, the term "operating costs" shall mean the annual cost to Landlord of the ownership, operation, management, repair, and maintenance of the Property during each calendar year and shall include, without limitation, costs for (i) the maintenance, repair, and replacement of the Property and HVAC equipment, Common Areas, landscaping of grounds and garbage receptacles, (ii) janitorial supplies and HVAC equipment, (iii) utility expenses, (iv) garbage and rubbish removal, (v) security services, (vi) amortization of the cost of installation of capital improvements which are primarily for the purpose of reducing operating costs, or which may be required by governmental authority, (vii) insurance, (viii) real estate taxes (ix) management fees.

b) "Tenant's Share" shall be determined by dividing the rentable square feet occupied by Tenant by the total rentable square feet in the Property which is **81,814** RSF, and multiplying the resulting quotient by the increased operating costs.  Landlord will notify the Tenant in writing of Tenant's Share of such increase in operating costs, if any, and within twenty (20) days thereafter, Tenant agrees to pay Landlord, Tenant's Share as Additional Rent hereunder and thereafter to pay one-twelfth (1/12) of said increase in equal monthly installments along with Tenant's payment of installments of Base Rent, subject to further adjustments as provided in this paragraph.

c) If at any time the Property is not fully occupied or Landlord is not supplying services to all rentable areas of the Property during an entire calendar year, then Landlord may adjust its actual operating costs to Landlord's estimate of that amount, which would have been paid or incurred by Landlord as operating costs had the Property been 95% occupied or serviced, and the operating expenses are so adjusted shall be deemed to be the actual operating expenses for such calendar year.

6.      Late Charge; Interest.  Any installment of Base Rent, Additional Rent or any other charge due and owing by Lessee under this Lease not received by Lessor within five (5) calendar days of the due date therefore shall be subject to a late charge to reimburse Landlord for its additional administrative cost.  The late charge shall be equal to five percent (5%) of the amount unpaid for each and every full or partial calendar month that said amount remains unpaid for each and every full or partial month that said amount remains unpaid after the tenth (10th) day of the month.  In addition, any Base Rent or Additional Rent which is not paid when due shall bear interest at the rate of twelve percent (12%) per annum (the "Default Rate") from the due date until paid.  In the event Lessee makes a partial payment of past due amounts, the amount of such partial payment shall be applied first to reduce all accrued and unpaid late charges and interest, in inverse order of their maturity, and then to reduce all other past due amounts, in inverse order of their maturity.  Tenant shall be charged the lesser of Fifty Dollars ($50.00) or the greatest amount permitted by Georgia law, for any check returned to Landlord by Tenant's bank for non-payment of funds or any other reason whatsoever.  Landlord may thereafter, at its sole option, insist upon payment of any sums due hereunder (including without limitation the Base Rent) by cashier's check, money order, or certified funds only.

7.    Partial Payment. No payment by Tenant or acceptance by Landlord of an amount less than the Rent herein stipulated shall be deemed a waiver of any other Rent due. No partial or endorsement on any check or any letter accompanying such payment of Rent shall be deemed an accord and satisfaction, but Landlord may accept such payment without prejudice to Landlord's right to collect the balance of any Rent due under the terms of this Lease or any late charge assessed against Tenant hereunder.

8.    Construction of this Agreement. No failure of Landlord to exercise any power given Landlord hereunder, or to insist upon strict compliance by Tenant of his obligations hereunder, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Landlord's right to demand exact compliance with the terms hereof. Time is of the essence of this Lease.

9.    Use of Premises. Tenant shall use and occupy the Premises for the purpose described in Paragraph 1 above and for no other purpose whatsoever. The Premises shall not be used for any illegal purpose, nor in violation of any valid regulation of any governmental body, nor in any manner constituting waste or to create any nuisance or trespass nor in any manner to vitiate the insurance or increase the rate of insurance on the Premises or the Building. Tenant shall, at Tenant's expense, keep the Premises, including all glass, doors and storefront, in good order, condition and repair and in a clean, pleasant, sightly, sanitary and safe condition free from shrill or excessive noise and vibrations, free from noxious or objectionable odors and fumes (including the provision of any exhaust or other systems which shall be necessary to prevent any vapors, odors, fumes or other objectionable substances from emanating from the Premises), and free from loiterers. Tenant shall not receive, store, or otherwise handle any product, material, or merchandise which is explosive or highly flammable It is understood that Tenant will have up to twelve (12) occupants within the Premises.

10.    Definitions. "Landlord," as used in this Lease, shall include the party named as Landlord, as well as its representatives, assigns and successors in title to the Premises. "Tenant" shall include the party named as Tenant, its heirs and representatives, and, if this Lease shall be validly assigned or sublet, shall also include Tenant's assignees or subtenants, as to the Premises, or portion thereof, covered by such assignment or sublease. "Landlord" and "Tenant" include male and female, singular and plural, corporation (and if a corporation, its officers, employees, agents or attorneys), partnership or individual, as may fit the particular parties.

11.    Repairs by Landlord. Tenant, by taking possession of the Premises, shall accept and shall be held to have accepted the Building, Premises and the leasehold improvements therein, as suitable for the use intended by this Lease. Landlord shall be responsible for repair of the Building's roof, foundation, exterior walls, Common Areas, structural portions and the Building's common area electrical, mechanical and plumbing systems, provided such repairs are not necessary due to the act or omission of Tenant, Tenant's invitees or anyone in the employ or control of Tenant or by Tenant's failure to repair the Premises as required by Paragraph 12 below. Tenant shall promptly notify Landlord in writing of the need for any repairs that Tenant believes need to be made and Landlord shall repair any such items (which Landlord is obligated to repair) within a reasonable time thereafter. Landlord's liability with respect to any defects, repairs or maintenance for which Landlord is responsible under any of the provisions of this Lease shall be limited to the cost of such repairs or maintenance or the curing of such defect. Any repairs, improvements, alterations or inspections to the Premises or the Building required under this lease will be performed during normal and customary working hours (i.e. Monday - Friday between 8:00 AM and 5:00 PM excluding Holidays).

12.    Tenant's Obligations. Tenant agrees to the best of its ability and covenants that Tenant shall, at its own expense, keep the Premises in good repair and tenantable condition

13.    Alterations and Improvements. Tenant shall not make or allow to be made any alterations, physical additions or improvements in or to the Premises (to include, without limitation, wiring, cables, risers, and similar installations appurtenant to the Premises other then repairs to the telephone system and computer network) without first obtaining in writing Landlord's written consent for

LP1.Lease.ThePlaza.&TownPark.09.30.03

such alterations or additions, which may be withheld by Landlord in its sole discretion. Tenant may not use or penetrate the roof of the Premises for any purpose whatsoever without Landlord's prior written consent. In no event shall Tenant connect any other electrical distribution system or make any alterations or additions to the electrical system or wiring of the Premises. Other than trade fixtures, any alterations, physical additions or improvements shall at once become the property of Landlord; provided, however, Landlord, at its option, may require Tenant to remove any leasehold improvements, physical additions or improvements in the Premises in order to restore the Premises to the condition which existed prior to Landlord leasing the Premises to Tenant. All costs of alterations, additions or improvements to which Landlord consents shall be borne by Tenant. Landlord shall, under no circumstance during the Term of this Lease, be required to carry any insurance on nor shall Landlord be liable for any damage or loss to said alterations, additions or improvements or to any leasehold improvements made by Landlord for the benefit of Tenant; and, provided further, that under no circumstances shall Landlord be required to pay, during the Term of this Lease and any extensions or renewals thereof, any ad valorem or property tax on such alterations, additions or improvements, Tenant hereby covenanting to pay all such taxes when they become due. In the event any alterations, additions, improvements or repairs are to be performed by contractors or workmen other than Landlord's contractors or workmen, any such contractors or workmen must first be approved in writing by Landlord. During the construction of any such alterations, additions or improvements, Tenant and its contractor shall carry insurance in types and amounts specified by Landlord and with carriers reasonably acceptable to Landlord and Tenant shall comply with all reasonable rules and regulations adopted by Landlord for construction in the Building.

14.     Liens. Tenant shall keep the Building and the Property and Landlord's interest therein free from any liens arising from any work performed, materials furnished or obligations incurred by or on behalf of Tenant and Tenant indemnifies Landlord for all costs and expenses incurred by Landlord in connection with any such lien. Notice is hereby given that neither Landlord nor any mortgagee or lessor of Landlord shall be liable for any labor or materials furnished to Tenant. Within ten (10) days after the filing of any such lien, Tenant shall either discharge or cancel such lien of record or post a bond sufficient under the laws of the State of Georgia to cover double the amount of the lien claim plus any penalties, interest, attorney's fees, court costs and other legal expenses in connection with such lien. If Tenant fails to so discharge or bond such lien within ten (10) calendar days after written demand from Landlord, Landlord shall have the right, at Landlord's option, to bond or discharge the same by paying the amount claimed to be due, and the amount so paid by Landlord, including reasonable attorney's fees incurred by Landlord either in defending against such lien or in procuring the bonding or discharge of such lien, together with interest thereon at the Default Rate, shall be due and payable by Tenant to Landlord as Additional Rent.

15.     Landlord's Failure to Give Possession. Landlord shall not be liable for damages to Tenant for failure to deliver possession of the Premises to Tenant on or before the Commencement Date, however, should Premises not be ready or completed 90 days after execution of this Lease Agreement then Tenant, at Tenant's option, shall have the right to terminate this Lease with no further obligation to the Landlord. At such time Landlord shall immediately refund all monies paid to Landlord by Tenant including Security Deposit and Advance Rent payment.

16.     Acceptance and Waiver. Landlord shall not be liable to the Tenant, its agents or employees, for any damage caused to any of them due to the Building or any part or appurtenances thereof being improperly constructed or being or becoming out of repair, or arising from the leaking of gas, water, sewer or steam pipes, or from electricity, but Tenant, by moving into the Premises and taking possession thereof, shall accept, and shall be held to have accepted the Premises as suitable for the purposes for which the same are leased, and shall accept and shall be held to have accepted the Building and every appurtenances thereof, and Tenant by said act waives any and all defects therein; provided, however, that this paragraph shall not apply to any damages or injury caused by or resulting from the negligence or willful misconduct of Landlord.

17.     Signs. Tenant shall not paint or place signs, placards, or other advertisement of any character upon the windows or inside walls of the Premises except with the consent of Landlord, which

consent may not be unreasonably withheld, and Tenant shall place no signs upon the outside walls, Common Areas or the roof of the Premises and shall place no item in the Premises which shall visibly detract from the Building or the Common Areas without Landlord's written permission which consent may not be unreasonably withheld.

18.    Carding. Landlord may card the Premises "For Rent" or with any other appropriate sign at any time within ninety (90) days prior to the expiration, cancellation or termination of this Lease for any reason and during such ninety (90) day period may exhibit the Premises to prospective tenants.

19.    Removal of Fixtures. If not in default hereunder, Tenant may, prior to the expiration of the Term of this Lease, or any extension thereof, remove any fixtures and equipment that it placed in the Premises and that can be removed without significant damage to the Premises, provided Tenant repairs all damages to the Premises caused by such removal.

20.    Entering Premises. Subject to the terms of the Confidentiality Agreement attached hereto as Exhibit "F" and incorporated by reference herein, Landlord may enter the Premises upon reasonable prior oral notice (except in emergencies when no notice shall be required) at reasonable hours provided that Landlord shall use all reasonable efforts not to unreasonably interrupt Tenant's business operations: (a) to make repairs, if any, which Landlord under the terms hereof must make to the Premises or adjacent premises, or repairs on the Building; (b) to inspect the Premises to see that Tenant is complying with all of the terms and conditions hereof and with the rules and regulations for the Building; (c) to remove from the Premises any articles or signs kept or exhibited therein in violation of the terms hereof; and (d) to exercise any other right or perform any other obligation that Landlord has under this Lease. Landlord shall be allowed to take all material into and upon the Premises that may be required to make any repairs, improvements and additions, or any alterations, without in any way being deemed or held guilty of trespass or any eviction of Tenant. The Rent reserved herein shall in no way abate while said repairs, alterations or additions are being made and Tenant shall not be entitled to maintain a set-off or counterclaim for damages against Landlord by reason of loss from interruption to the business of Tenant because of the prosecution of any such work, unless repairs, additions or alterations are due to the negligence Landlord or Landlord's employees or invitees. . All such repairs, decorations, additions and improvements shall be done during ordinary business hours, or, if any such work is at the request of Tenant to be done during any other hours unless the prosecution of such work would substantially interrupt Tenant's business or endanger Tenant its employees or invitees, the Tenant shall pay all overtime and other extra costs.

21.    Services. (a) The normal business hours of the Building shall be from 7:30 A.M. to 6:00 PM. on Monday through Friday and 8:00A.M. to 1:00P.M. on Saturday except New Year's Day, Memorial Day, July 4, Labor Day, Thanksgiving Day, Christmas Day and such other holidays designated by Landlord which shall be in keeping with the holidays customarily designated by Landlord of similar office buildings. Landlord shall furnish the following services during the normal hours of operation of the Building except as noted: (i) heat and air conditioning customary for buildings of this type; (ii) hot and cold running water for all Building standard restrooms and lavatories; (iii) electrical and mechanical maintenance services are provided Monday through Friday; (iv) electric power to the Premises but only for Building standard lighting and small (desk top) business machines such as electric typewriters, personal computers, adding and small calculating machines;; (v) repairs and maintenance, for maintaining in good order at all times, the exterior walls, windows, doors and roof of the Building; public corridors, stairs, elevators, storage rooms and restrooms; the air conditioning, electrical and plumbing systems of the Building; and the walks, paving and landscaping surrounding the Building; (vi) janitorial service and trash removal from leased premises [five (5) days per week], plus furnishing, supplying and maintaining building Common Areas and restroom facilities including water and sewage disposal in the building in which the Leased Premises are located; (vii) general management, including supervision, inspections, record keeping, accounting, leasing and related management functions.

(b) The services provided in subparagraph (a) herein, and the amount of Rent prescribed herein are predicated on and are in anticipation of certain usage of the Premises by Tenant as follows: (i) Air conditioning design is based on sustained occupancy of the Premises by no more than 12 persons in the

premises; (ii) electrical power usage and consumption is based on lighting of the Premises during normal business hours and power for small desk top type machines and hand held devices using 100 volt, 20 amp circuits. Landlord also consents to the installation of a server room and the additional HVAC required for such facility. Any other heavier use items as electric heaters, bookkeeping machines, computers (other than standard personal computers), data processing and duplicating equipment, stoves, refrigerators and the like shall not be used or installed except with the prior written consent of Landlord, which consent may be withheld in Landlord's sole, absolute and unfettered discretion, and if Landlord consents to the use of such heavier use items, Landlord shall have the right to install measuring devices for any excess electrical usage as specified in subparagraph (iii) below; (iii) if Tenant uses services in an amount or for a period in excess of that provided for herein, then Landlord reserves the right to install, , any devices necessary to measure such excess usage, and to charge Tenant as Additional Rent hereunder for the direct cost of such added services. In the event of disagreement as to the reasonableness of such charge, the opinion of the appropriate local utility company or an independent professional engineering firm, whose fee shall be paid by Landlord, shall prevail.

(c) Unless due to Landlord's negligence, Landlord shall not be liable for any damages directly or indirectly resulting from the interruption of the services referred to herein, regardless of the cause of such interruption.

22.    Allocation or Risk; Waiver of Subrogation; Indemnity and Waiver. (a) By this section and Section 23 of this Lease, Landlord and Tenant intend that the risk of loss or damage as described above be borne by responsible insurance carriers, to the extent above provided, and Landlord and Tenant hereby agree to look solely to, and to seek recovery only from, their respective insurance carriers in the event of a loss of a type described in paragraph 29 below, to the extent that such coverage is agreed to be provided hereunder. For this purpose, any applicable deductible amount shall be treated as though it were recoverable under such policies. Landlord and Tenant agree that applicable portions of all monies collected from such insurance shall be used toward the full compliance with the obligations of Landlord and Tenant under this Lease in connection with damage resulting from fire or other casualty.    The parties mutually hereby waive all rights and claims against each other for all losses covered by their respective insurance policies, and waive all rights of subrogation of their respective insurers. The parties agree that their respective insurance policies are now, or shall be, endorsed so that such waivers of subrogation shall not affect their respective rights to recover thereunder.

(b)    Tenant indemnifies Landlord against and shall hold Landlord harmless from and defend Landlord against any and all claims or liability for any injury or death to any person or damage to any property whatsoever:

(i)    occurring in, on, or about the Premises or any facilities the use of which Tenant may have in common with other tenants of the Building or the Property, when such injury, death or damage shall be caused in whole or in part by the act, neglect, or fault of, or omission of any duty with respect to the same, by Tenant, its agents, employees, contractors, invitees, licensees, tenants, or assignees;

(ii)    arising from any work or thing whatsoever done by or on behalf of Tenant in or about the Premises or from transactions of Tenant concerning the Premises;

(iii)    arising from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Lease; or

(iv)    otherwise arising from any act or neglect of Tenant or any of its agents, employees, contractors, invitees, licensees, tenants or assignees; and

(v)    from and against all costs, expenses, counsel fees and court costs incurred or assessed in connection with any or all of the foregoing or in connection with the enforcement of this indemnity, except to the extent of any bodily injury to persons or damage to property resulting solely from the negligence or intentional misconduct of Landlord. Furthermore, in case any action or proceeding shall be brought against Landlord by reason of any such claims or liability, Tenant agrees to cause such action or proceeding to be defended at Tenant's sole expense by counsel reasonably satisfactory to Landlord. The provisions of this Lease with respect to any claims or liability occurring or caused prior to any expiration or termination of this Lease shall survive such expiration or termination.

LPl.Lease.ThePlaza.&TownPark.09.30.03

(c)      Tenant agrees that, to the extent not expressly prohibited by law, Landlord and its officers, agents, servants, and employees shall not be liable for (nor shall rent abate as a result of) any direct or consequential damage (including damage claimed for actual or constructive eviction) either to person or property sustained by Tenant, its servants, employees, agents, invitees, or guests due to the Building or any part or any appurtenances thereof becoming out of repair, or due to the happening of any accident in or about said Building, or due to any act or neglect of any tenant or occupant of said Building or of any other person. This provision shall apply particularly (but not exclusively) to damage caused by water, snow, frost, steam, sewage, gas, sewer gas or odors or by the bursting, leaking, or dripping of pipes, faucets, and plumbing fixtures, and shall apply without distinction as to the person whose act or neglect was responsible for the damage, and whether the damage was due to any of the causes specifically enumerated above or to some other cause of an entirely different kind. Tenant further agrees that all of Tenant's personal property in the Premises or the Building shall be at the risk of Tenant only, and that Landlord shall not be liable for any damage thereto or theft thereof. Tenant agrees to protect, indemnify, and save Landlord and its officers, agents, servants, and employees harmless from and against any and all liabilities, damages, and expenses arising from injury to persons or damage to property on the Premises, or in or about the Building arising out of or in connection with Tenant's use or occupancy of the Premises or Tenant's activities in the Building.

(d)      Tenant shall not do or suffer to be done, or keep or suffer to be kept, anything in, upon or about the Premises which will contravene Landlord's policies insuring against loss or damage by fire or other hazards, or Landlord's commercial general liability policies, or which will prevent Landlord from securing such policies in companies acceptable to Landlord. If anything done, permitted to be done or suffered to be done by Tenant or kept in, upon and about the Premises or Building which shall cause the rate of fire or other insurance on the Premises or Building to be increased beyond the minimum rate from time to time applicable to the Premises or the Building for the permitted use or permitted uses made thereof, Tenant shall pay, as Additional Rent hereunder, the amount of any such increase promptly upon demand by Landlord and shall cease such action until such payment is made. All insurance required to be carried by Tenant must be carried by companies licensed in Georgia which are reasonably acceptable to Landlord.

23.      The Tenant shall carry and maintain:

i.       Comprehensive General Liability Insurance to include Personal Injury, Bodily Injury, Property Damage and Contractual Liability all on an occurrence basis, with respect to all business carried on, in, or from the Premises and the Tenant's use or occupancy of the Premises and any other part of the Building for an amount not less than $1,000,000 per occurrence and $2,000,000 general aggregate and to contain severability of interest/cross-liability clause. In addition, Tenant shall maintain excess or umbrella liability insurance in an amount of not less then $5,000,000.

ii.      Commercial Property Insurance for the replacement cost value of the Tenant's leasehold improvements, trade fixtures and contents. The Landlord covenants and agrees that the Tenant shall have an insurable interest in the alterations, improvements and additions made by it or at its expense, whether before or after the date of the commencement of the Term, in and to the Premises and that the Tenant shall have the right to insure such alterations, improvements, and additions up to the full value thereof, notwithstanding that the same may be affected to or incorporated with the Building.

iii.     Workers' Compensation and Employers' Liability Insurance with respect to all of Tenant's employees working at the Premises with minimum limits of $500,000.

The Tenant shall furnish to the Landlord, if and whenever requested, certificated evidencing such coverage, but not prior to the renewal of coverage. If the certificate thus submitted indicates to the Landlord that the Tenant has failed to insure the Premises as required in this sub-clause, then the Landlord may give written notice to the Tenant requiring compliance with this sub-clause and specifying the respects in which the Tenant is not in compliance with this sub-clause. If the Tenant does not within 30 calendar days of such notice provide appropriate evidence of compliance with this sub-clause, the Landlord may obtain some of all of the additional coverage or other insurance which the Tenant has failed to obtain, without prejudice to any other

rights of the Landlord under this Lease or otherwise, and the Tenant shall pay reasonable premiums or other expenses incurred by the Landlord in that connection

(d)    each policy of casualty insurance obtained by Tenant hereunder or otherwise with respect to the Premises shall contain a waiver of subrogation clause reasonably acceptable to Landlord. Neither the issuance of any insurance policy required hereunder, nor the minimum limits specified herein with respect to Tenant's insurance coverage, shall limit or restrict (or be deemed to limit or restrict) in any way Tenant's liability and obligations arising under or out of this Lease.

(e)    Each policy required by this Paragraph shall be issued by carriers licensed within the State of Georgia and otherwise acceptable to Landlord and shall provide that it shall not be cancelable without at least thirty (30) days' prior written notice to Landlord and to any mortgagee named in an endorsement thereto and shall be issued by an insurer and in a form satisfactory to Landlord. At least five (5) days prior to the Commencement Date, evidence of insurance (ACORD-27) shall be delivered to Landlord. Each such policy shall have attached thereto an endorsement to the effect that no act or omission of Tenant shall affect the obligation of the insurer to pay Landlord the full amount of any loss sustained by Landlord.

(f)    Every policy of insurance to be carried by Tenant hereunder shall contain a clause that such policy and the coverage evidenced thereby shall be primary and non-contributory with respect to any policies carried by Landlord (or any additional insureds) and that any coverage carried by Landlord shall be excess insurance.

24.    Landlord's Insurance – The Landlord shall carry and maintain:

i.    *Comprehensive General Liability Insurance to include Personal Injury, Bodily Injury, Property Damage and Contractual Liability, all on an occurrence basis, with respect to all operations of the Landlord, for an amount not less then $1,000,000 per occurrence and $2,000,000 general aggregate and to contain severability of interest/cross-liability clause. In addition, Landlord shall maintain excess or umbrella liability insurance in an amount of not less then $5,000,000;*

ii.    *"All Risk" Commercial Property Insurance to include, in addition to customary Property perils, coverage for terrorism, flood and earthquake for the replacement cost value of the Building and any improvements and installations thereto, except trade fixtures and contents. Landlord's coverage shall provide primary coverage to Tenant for claims related to Tenant's Leasehold Improvements and Tenant's policy shall be excess over Landlord's policy;*
*Boiler and Machinery Insurance on all boilers, pressure vessels, air conditioning*
iii.    *equipment and miscellaneous electrical apparatus;*
iv.    *Business Interruption Insurance to provide indemnity for no less then twelve (12) months of rental income.*

25.    <u>Governmental Requirements</u>. Tenant shall, at its own expense, promptly comply with all requirements of any legally constituted governmental or public authority made necessary by reason of Tenant's use or occupancy of the Premises, including, but not limited to, all fire code and the American with Disabilities Act.

26.    <u>Abandonment of Premises</u>. Tenant agrees not to abandon or vacate the Premises during the Term of the Lease and to use said Premises for the purpose herein leased and no other until the Expiration Date.

27..    <u>Assignment and Subletting</u>. Except with respect to assignment to an affiliated entity (for purposes herein, defined as tenant's parent or entity which is owned by such parent or parent of Tenant's parent), Tenant may not, without the prior written consent of Landlord, which shall not be unreasonably withheld assign this Lease or any interest hereunder, or sublet the Premises or any part thereof, or permit the use of the Premises by any party other than Tenant. In the event that Tenant is a corporation or some other entity other than an individual, any transfer of a majority or controlling interest in Tenant shall be

LPI.Lease.ThePlaza.&TownPark.09.30.03

considered an assignment for purposes of this paragraph. Consent to one assignment or sublease shall not destroy or waive this provision, and all later assignments and subleases shall likewise be made only upon the prior written consent of Landlord which shall not be unreasonably withheld. In the event of any sublease or assignment to which Landlord consents, Tenant shall pay to Landlord fifty percent (50%) of all consideration in excess of the Rent due hereunder which Tenant receives from such assignee or sublessee less expenses and costs to market the sublease including commissions and Improvement dollars.. Such amount shall be payable within five (5) days of the date Tenant receives each payment from such assignee or sublessee. Subtenants or assignees shall become liable to Landlord for all obligations of Tenant hereunder, but Tenant shall remain directly liable to Landlord for all Tenant's obligations under this Lease. Anything in this Lease to the contrary notwithstanding, in order to cover the extra expense involved in handling Landlord consent of assignment or subletting, Tenant shall pay, in advance, a non-refundable "sublease/assignment fee" of $250.00 when any sublease or assignment is submitted to the Landlord for its consent. Should Tenant elect to sublease Premises, Tenant shall request approval from Landlord in writing Tenants desire to sublease all or part or Premises to another party. Upon receipt of written notice from Tenant, Landlord shall have ten (10) days to accept or reject proposed sub-tenant. No response from Landlord after receipt of written notice shall be deemed as denied by Landlord.

28.    Default. The happening of any one or more of the following shall be deemed to be an Default under this Lease:

(a)    Tenant or any Guarantor shall make an assignment for the benefit of its creditors which assignment is not withdrawn within seven (7) days after Landlord mails notice of such default to Tenant;

(b)    The institution of proceedings in a court of competent jurisdiction for the reorganization, liquidation, or voluntary or involuntary dissolution of Tenant or a Guarantor, or for its adjudication as a bankrupt or insolvent, or for the appointment of a receiver of the property of Tenant or a Guarantor, and said proceedings are not dismissed, and any receiver, trustee or liquidator appointed therein are not discharged within fifteen (15) days after the institution of such proceedings;

(c)    The doing, or permitting, of any act by Tenant which creates a lien against the land or building of which the Premises are a part and the same not being released within fourteen (14) days after the lien is filed;

(d)    Failure of Tenant to cause Landlord to receive payment of any installment of Rent or other charges or money obligation herein required to be paid by Tenant to Landlord on the date when such payment is due and payable;

(e)    Any representation, warranty, or statement made by Tenant, in this lease or in any other information provided by Tenant or any Guarantor to Landlord with respect to the identity, net worth, liabilities, assets, business or financial condition of Tenant or any Guarantor, or any other matter, shall prove to be untrue or misleading;

(f)    Tenant's abandonment of the Premises or Tenant's failure to conduct business in the Premises as required by the Lease;

(g)    Tenant (or any person claiming or occupying by, through or under Tenant) commits waste to the Premises;

(h)    The rejection of this Lease by Tenant under Bankruptcy Code, 11 U.S.C. § 101;

(i)    Tenant fails to take action in accordance with the provisions of any written notice from Landlord to remedy the breach or non-compliance by any Guarantor of this Lease; or

(i)    Failure of Tenant to comply with any covenant or provision of this lease (except those described in 28. (a) through (i) within ten (10) days after Landlord mails such notice of default to Tenant unless such failure or non-compliance is of such nature that it cannot be cured within such ten (10) day

period, in which case no Default shall occur so long as Tenant shall commence the curing of such failure or non-compliance within such ten (10) day period and shall thereafter diligently prosecute the curing of same.

If Tenant shall default in the performance of any such covenant or agreement of this Lease two (2) or more times in any twelve (12) month period, then notwithstanding that each of such defaults have each been cured by Tenant, any further similar default shall be deemed a Default without the ability for cure.

29.   Remedies.   (a)   Upon the occurrence of any Default, Landlord may pursue any one of more of the following remedies, in addition to any other remedies provided under this Lease, at law or in equity, separately or concurrently or in any combination, without any notice (except as specifically provided herein) or demand whatsoever and without prejudice to any other remedy which it may have for possession of the Premises or for arrearages in rent or other amounts payable by Tenant:

(i)   Landlord may terminate this Lease (or Tenant's right to possession) by giving Tenant written notice of termination, in which event Tenant shall quit and vacate the Premises and deliver and surrender possession of the Premises to Landlord at the time designated in such notice not to be less than five (5) business days, and this Lease (or Tenant's right to possession of the Premises) shall be terminated at the time designated by Landlord in its notice of termination to Tenant; provided, however, that no termination of this Lease prior to the normal expiration hereof shall affect Landlord's right to collect rent for the period prior to or following the date set for termination; or

(ii)   With or without terminating this Lease, Landlord may enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises, by force if necessary, without being liable for prosecution for damages; or

(iii)   Landlord may re-let the Premises or any part thereof, on such terms and conditions as Landlord may deem satisfactory, and receive the rent for any such re-letting, in which event Tenant shall pay to Landlord on demand the costs and expenses of such reletting and any deficiency that may arise by reason of such re-letting; or

(iv)   If Landlord terminates this Lease, Landlord may recover from Tenant all damages Landlord may incur by reason of Tenant's default, including without limitation, a sum which represents all amounts due under this Lease for the remainder of the term (after deducting the Actual Rental Value of the Premises for the remaining term which shall be determined by assessing (1) the then-existing and future market conditions for the Premises to account for future rental value and (2) the probability of reletting the Premises for all or part of the remaining term]) with a reduction to present value based upon the prime rate at the time of the acceleration. The Parties agree that in the event the Landlord elects to accelerate pursuant to this provision, the Landlord shall select a licensed real estate professional at Tenant's expense to determine, in writing, the Actual Rental Value of the Premises for the remaining term and that such determination shall be binding and conclusive upon the Parties.

(b)   Tenant agrees to indemnify Landlord for all loss and damage which Landlord may suffer by reason of any such Default, whether through inability to relet the Premises, or through decrease in rent, or otherwise and Tenant shall reimburse Landlord for all costs of reletting the Premises, including, but not limited to, advertising expenses, commissions, and the cost of improvements reasonably required in order to relet the Premises (such agreement to survive any such termination of this Lease) subject to Landlord's obligation to use its good faith, commercially reasonable efforts to mitigate damages. Regardless of a Default or of a termination of this Lease (or of Tenant's right to possession of the Premises), Tenant will remain liable for payment of all rent and other amounts due under this Lease. Landlord's pursuit of any one or more of the remedies provided in this Lease shall not constitute an election of remedies excluding the election of another remedy or other remedies, or a forfeiture or waiver of any rent or other amounts payable under this Lease by Tenant or of any damages or other sums accruing to Landlord by reason of Tenant's violation of any provision of this Lease. No action taken by or on behalf of Landlord shall be construed to mean acceptance of a surrender of this Lease. No failure of

LPI.Lease.ThePlaza.&TownPark.09.30.03

Landlord to pursue or exercise any of Landlord's powers, rights or remedies or to insist upon strict and exact compliance by Tenant with any provision of this Lease, and no custom or practice at variance with the terms of this Lease, shall constitute a waiver by Landlord of the right to demand strict and exact compliance with the terms and conditions of this Lease.

All rights, remedies, powers and privileges conferred under this Lease on Landlord shall be cumulative of and in addition to, but not restrictive of or in lieu of, those conferred by law.

30.     Destruction or Damage. (a) If the Premises are destroyed or damaged by storm, fire, earthquake, or other casualty, and Landlord and Tenant agree that reasonable restoration can not be accomplished within six months, or if substantial damage occurs during the last year of the Term, this Lease shall terminate as of the date of such destruction or damage and Rent shall be accounted for between Landlord and Tenant as of that date. If Landlord deems that restoration can be accomplished within such period and the casualty does not occur during the last year of the Term, Rent shall abate in such proportion as the use of the Premises has been destroyed, Tenant shall pay to Landlord all insurance proceeds covering the Premises, and Landlord shall, to the extent of available insurance proceeds, restore the Building and Premises to substantially the same condition as before the damage occurred as soon as practicable, whereupon full Rent shall recommence. Notwithstanding anything hereinabove to the contrary, if any such casualty causes material damage and is not covered by Landlord's insurance, or if Landlord's mortgagee does not make the insurance proceeds available to Landlord for restoration, Landlord shall have the right to terminate this Lease at the time Landlord provides Tenant the notice required above.

(b) If any casualty described above occurs, then Landlord shall not be liable to Tenant for any inconvenience, annoyance, loss of profits, expenses, or any other type of injury or damage resulting from the repair of any such casualty, or from any repair, modification, arranging or rearranging of any portion of the Premises or any part or all of the Building or for termination of this Lease as provided in this Paragraph.

31.     Eminent Domain. If the whole of the Building or Premises, or such portion of either as will make it economically unfeasible for Landlord to operate the Building or will make the Premises unusable in the reasonable judgment of Landlord for the purposes herein leased, is condemned or taken by any legally constituted authority for any public use or purpose, then in either of said events, the Term hereby granted shall cease from that time when possession thereof is taken by the condemning authorities, and Rent shall be accounted for as between Landlord and Tenant as of that date. Landlord shall notify Tenant of such determination within ninety (90) days of the date title vests in the condemning authority. If such taking occurs and Landlord does not terminate this Lease, this Lease shall continue in full force and effect and the Rent shall be reduced pro rata in proportion to the amount of the Premises so taken. Tenant shall have no right or claim to any part of any award made to or received by Landlord for such condemnation or taking, and all awards for such condemnation or taking shall be made solely to Landlord.

32.     Service of Process. Except as otherwise provided by law, Tenant hereby appoints as its agent to receive the service of all dispossessory or distraint proceedings and notices thereunder, the person in charge of or occupying the Premises at the time of such proceeding or notice; and if no person be in charge or occupying the Premises, then such service of notice may be made by attaching the same to the front entrance of the Premises with a copy sent to corporate headquarters, attn: Legal Department.:

33.     Mortgagee's Rights. This Lease is subject and subordinate to all mortgages now or hereafter placed upon the Project, and all other encumbrances and matters of public record applicable to the Project, including without limitation, any reciprocal easement or operating agreements, covenants, conditions and restrictions (and Tenant shall not act or permit the Premises to be operated in violation thereof). Tenant agrees that this Lease shall be subject and subordinate (i) to any loan deeds, mortgages, deeds to secure debt or any other security interests now on the Premises and to all advances already made, or which may be hereafter made on account of said loan deeds, mortgages, deeds to secure debt or any other security interests to the full extent of all debts and charges secured thereby and to all renewals

LP1.Lease.ThePlaza.&TownPark.09.30.03

or extensions of any part thereof, and to any loan deed which any owner of the Premises may hereafter, at any time, elect to place on the Premises ("Mortgagees"); (ii) to any Assignment of Landlord's interest in Lease covering the Lease which now exists or which any owner of the Premises may hereafter, at any time , elect to place on the Lease; and (iii) to any Uniform Commercial Code Financing Statement covering the personal property rights of Landlord or any owner of the Premises which now exists or any owner of the Premises may hereafter, at any time, elect to place on the foregoing personal property (all of the foregoing instruments set forth in (i), (ii) and (iii) above being hereafter collectively referred to as "Security Documents"). Tenant agrees within five (5) days after request of the holder of any Security Documents ("Holder") to hereafter execute such paper or papers which the counsel for Landlord or Holder may deem necessary to evidence the subordination of the lease to the Security Documents. In default of Tenant so doing, Landlord or Holder is hereby empowered to execute such paper or papers in the name of Tenant evidencing such subordination, as the act and deed of Tenant, and this authority is hereby declared to be coupled with an interest and not revocable. In the event of a foreclosure pursuant to any Security Documents, Tenant shall, at the election of the successor, thereafter remain bound pursuant to the terms of this Lease as if a new and identical Lease between such Purchaser, as Landlord, and Tenant, as tenant, had been entered into for the remainder of the Term hereof and Tenant shall attorn to the Purchaser upon such foreclosure sale and shall recognize such Purchaser as the Landlord under the Lease, Such attornment shall be effective and self-operative without the execution of any further instrument on the part of any of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of Landlord or of Holder, any instrument or certificate that may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment.

Tenant hereby acknowledges that if the interest of Landlord hereunder is covered by an Assignment of Rents or similar documents, Tenant shall pay all Rent due and payable under the Lease directly to the Holder of the Assignment of Landlord's Interest in Lease upon notification of the exercise of the rights thereunder by the Holder thereof.

34.    Tenant's Estoppel; Attornment.  Tenant shall, from time to time, upon not less than ten (10) days prior written request by Landlord, execute, acknowledge and deliver to Landlord a written statement certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), the dates to which the Rent has been paid, that Tenant is not in default hereunder and has no offsets or defenses against Landlord under this Lease, whether or not to the best of Tenant's knowledge Landlord is in default hereunder (and if so, specifying the nature of the default) and any other information reasonably requested by Landlord, it being intended that any such statement delivered pursuant to this paragraph may be relied upon by a prospective purchaser of Landlord's interest or by a mortgagee of Landlord's interest or assignee of any security deed upon Landlord's interest in the Premises. In the event of any sale of the Building or Property by Landlord, Tenant shall attorn to the purchaser as Landlord hereunder. Such attornment shall be effective and self-operative without the execution of any further instrument on the part of any of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of Landlord or of such purchaser any instrument or certificate that may be necessary or appropriate to evidence such attornment. If Tenant fails to deliver such instrument or certificate within five (5) days, Tenant, by such failure irrevocably constitutes and appoints Landlord as its special attorney-in-fact to execute and deliver the certificate to any third party.

35.    Attorney's Fees.  If any Rent owing under this Lease is collected by or through an Attorney at Law, or provisions of the Lease are enforced by or through an attorney at law, Tenant agrees to pay the Landlord reasonable attorney fees in the amount of twelve percent (12%) of all amounts due. To the extent that Tenant prevails, Landlord shall pay Tenant, its reasonable attorneys' fees actually incurred.

36.    Parking.  Tenant shall have no rights to any specific parking spaces granted under this Lease; however, Tenant and its employees shall be entitled to use the parking facilities located on the Property in common with and on the same basis as the other tenants of the Building, at no charge to Tenant. Tenant's invitees shall be entitled to use such parking facilities along with the invitees and

employees of the other tenants of the Building. Landlord reserves the right to relocate, and to make alterations or additions to such parking facilities at any time or to enter into cross-easements to allow the use of such parking facilities by the occupants of other portions of the Property of which the Building is a part or by adjoining land owners and their licensees and invitees. Parking facilities are made available by Landlord for tenants and their visitors, and shall be used for vehicles that may occupy a standard parking area only and a maximum of **3.7** parking spaces per thousand rentable square feet of Premises (as specified in Paragraph One). Moreover, the use of such parking facilities shall be limited to normal business parking and shall not be used for continuous parking of any vehicle or trailer regardless of size.

37.    Storage. If Landlord makes available to Tenant any storage space outside the Premises, anything stored therein shall be wholly at the risk of Tenant, and Landlord shall have no responsibility of any character in respect thereto. Any policies of insurance required to be kept and maintained by Tenant hereunder shall include an endorsement extending such insurance to any storage space outside the Premises.

38.    Waste. All normal trash and waste (i.e., waste that does not require special handling) shall be disposed in the trash containers provided. Tenant agrees to break down any and all cardboard boxes. If Landlord reasonably believes that Tenant is generating an amount of trash in excess of what would be considered average for office use, Landlord may charge any and all additional costs associated with the additional trash to Tenant as Additional Rent.

39.    Surrender of Premises. Whenever under the terms hereof Landlord is entitled to possession of the Premises, Tenant at once shall surrender the Premises and the keys thereto to Landlord in the same condition as on the Commencement Date hereof, normal wear and tear and damage by casualty (unless caused by Tenant) and condemnation only excepted, Tenant shall remove all of its property therefrom and Landlord may forthwith reenter the Premises and repossess itself thereof and remove all persons and effects therefrom, using such force as may be necessary without being guilty of forcible entry, detainer, trespass or other tort. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of the Term of this Lease. If the last day of the Term of this Lease or at renewal falls on Sunday or a legal holiday, this Lease shall expire on the business day immediately preceding. Any property, including trade fixtures and equipment, remaining on the Premises after the termination or expiration of this Lease or Tenant's right to possess the Premises shall be deemed abandoned and considered, at Landlord's option, the property of Landlord, all without compensation in, allowance or credit to Tenant and all such property shall be conclusively deemed to have been conveyed by Tenant to Landlord as if by bill of sale without payment by Landlord. Upon vacating the Premises, Tenant shall deliver in the Premises in broom clean condition,

40.    Intentionally Omitted

41.    Intentionally Omitted

42.    No Estate in Land. This contract shall create the relationship of landlord and tenant between Landlord and Tenant; no estate shall pass out of Landlord; Tenant has only a usufruct, not subject to levy or sale, and not assignable by Tenant except with Landlord's consent.

43.    Cumulative Rights. All rights, powers and privileges conferred hereunder upon the parties hereto shall be cumulative but not restrictive to those given by law.

44.    Paragraph Titles; Severability. The paragraph titles used herein are not to be considered a substantive part of this Lease, but merely descriptive aids identify the paragraph to which they refer. Use of the masculine gender includes the feminine and neuter, and vice versa, where necessary to impart contextual continuity. If any paragraph or provision herein is held invalid by a court of competent jurisdiction, all other paragraphs or severable provisions of this Lease shall not be affected thereby, but shall remain in full force and effect.

45.    Damage or Theft of Personal Property. All personal property brought into the Premises shall be at the risk of the Tenant only and Landlord shall not be liable for theft thereof or any damage thereto occasioned by any acts of co-tenants, or other occupants of the Building, or any other person, except, with respect to damage to the Premises, as may be occasioned by the negligent or willful act of the Landlord, its employees and agents.

46.    Holding Over. In the event Tenant remains in possession of the Premises after the expiration of the Term hereof, or of any renewal term, with Landlord's acquiescence and without any express written agreement of the parties, Tenant shall be a tenant at sufferance and such tenancy shall be subject to all the provisions hereof, except that the monthly rental shall be 125% of the monthly Base Rent payable hereunder upon such expiration of the Term hereof, or of any renewal term, the same would be adjusted pursuant to the provisions of Paragraph 4 hereof. There shall be no renewal of this Lease by operation of law or otherwise. Nothing in this Paragraph shall be construed as a consent by Landlord to Tenant's possession of the Premises after the expiration of the Term hereof, or any renewal term.

### 47.    Intentionally Omitted.

48.    Leasehold Improvements. Landlord hereby agrees to construct leasehold improvements in the Premises in accordance with those plans and specifications ("Plans and Specifications") attached hereto as Exhibit "D" and incorporated herein by reference ("Plans and Specifications"). **All work required for the construction of the leasehold improvements in accordance with the Plans and Specifications shall be "Landlord's Work", unless otherwise specified.** Tenant shall not be entitled to make any changes to the Plans and Specifications without the prior written consent of Landlord, which consent may be withheld in Landlord's reasonable discretion unless Tenant: (i) At the discretion of the Landlord, agrees in writing to any changes; (ii) agrees to pay any increase or costs resulting from any such change order; (iii) Agrees that the substantial completion of the Landlord's work and of the occupancy shall be extended by the number of the business days caused by the changes as determined by of the Landlord; and (iv) The commencement date shall not be effected by Tenant delay.    Upon completion of Landlord's Work, Tenant agrees to accept possession thereof and to proceed with due diligence to perform any work required for Tenant to install its fixtures, furniture, and equipment in the Premises. Any work Tenant does in the Premises causing venting, opening, sealing, waterproofing or any altering of the roof shall be performed by Landlord's roofing contractor at Tenant's expense unless approved by Landlord and incorporated as part of tenant improvement allowance.  By occupying the Premises, Tenant shall be deemed to have acknowledged that the Landlord has complied with all of its covenants and obligations with respect to the construction of the Premises, except for defects in Landlord's Work which are latent at the time the Premises are occupied and subject to reasonable punch list items, which shall in any event be deemed waived by Tenant upon the expiration of one (1) year after the date the Premises are occupied by Tenant.

49.    Rules and Regulations. The rules and regulations in regard to the Building, annexed hereto as Exhibit "C", and all reasonable rules and regulations which Landlord may hereafter, from time to time, adopt and promulgate for the government and management of said Building, are hereby made a part of this Lease and shall, during the said term, and all extensions thereof, be in all things observed and performed by Tenant, its agents, employees and invitees.

50.    Quiet Enjoyment. Tenant, upon payment in full of the required Rent and full performance of the terms, conditions, covenants and agreements contained in this Lease, shall peaceably and quietly have, hold and enjoy the Premises during the Term hereof. Landlord shall not be responsible for the acts or omissions of any other tenant or third party that may interfere with Tenant's use and enjoyment of the Premises.

51.    Entire Agreement. This Lease contains the entire agreement of the parties and no representations, inducements, promises or agreements, oral otherwise, between the parties not embodied herein shall be of any force or effect. The Laws of the State of Georgia shall govern the validity, performance and enforcement of this Lease. In the event a dispute arises concerning this Lease,

jurisdiction and venue of said dispute shall be proper only in the courts of the State of Georgia located in **Cobb** County, Georgia and Tenant hereby waives all defenses related to personal jurisdiction, venue, or forum non conveniens in any action involving this Lease or the Guaranty, brought and filed in **Cobb** County, Georgia.

52.    Limitation of Liability. Landlord's obligations and liability with respect to this Lease shall be limited solely to Landlord's interest in the Building, as such interest is constituted from time to time, and neither Landlord nor any partner of Landlord, or any officer, director, shareholder, member, manager or partner of any partner of Landlord, shall have any personal liability whatsoever with respect to this Lease. Upon any transfer of Landlord's interest in the Building or this Lease, Landlord shall automatically be released from any further liability hereunder.

53.    Submission of Agreement. The submission and negotiation of this Lease shall not be deemed an offer to enter the same by Landlord, but the solicitation of such an offer by Tenant. This Lease will be binding upon the parties only at such time as fully executed counterpart is delivered to Tenant.

54.    Due Authorization. If Tenant is a corporation, a limited liability company or a partnership, the person(s) executing this Lease on behalf of Tenant hereby covenant and warrant that: Tenant is a duly formed corporation or duly formed limited liability company or a duly created partnership (as the case may be) in good standing, qualified to do business in the state of Georgia; such persons are duly authorized by such corporation or limited liability company or partnership to execute and deliver this Lease on behalf of such corporation, limited liability company or partnership; and this Lease constitutes a valid and binding agreement of Tenant in accordance with the terms hereof. In the event any such representation and warranty is false, all persons who execute this Lease shall be individually, jointly and severally liable as Tenant. Upon Landlord's request, Tenant shall provide Landlord with evidence reasonably satisfactory to Landlord confirming the foregoing representations and warranties.

55.    Notices. All notices, consents, demands, requests, or other communications required or permitted hereunder shall be deemed given, whether or not actually received, when dispatched for hand delivery or delivery by air express courier (with signed receipts) to the other party at the address set forth below, or on the second business day after deposit in the United States Mail, postage prepaid, certified, return receipt requested to the address set forth below, except for notice of change of address which shall be deemed given only upon actual receipt. Any time period for response to a notice shall begin to run only when the notice is actually received, when delivery is refused or when delivery cannot be accomplished because the party to whom the notice has been sent can no longer be found at the correct notice address. The addresses of the parties for notices are as follows:

Landlord's Address for Notices:                    Tenant's Address for Notices:

**Town Park Renaissance**                          **The Premises with a copy to :**
**c/o Cumberland Management Partners**             **RBC Mortgage Company**
**2303 Cumberland Parkway**                        222 Merchandise Mart Plaza, Ste 550
**Atlanta, Georgia 30339**                         **Chicago, IL  60654**

56.    **Intentionally Omitted**.

57.    **Intentionally Omitted**.

58.    Hazardous Waste. Tenant shall not cause or permit any hazardous substance to be used, stored, generated, or disposed of on, in or about the Premises by Tenant, Tenant's agents, employees, contractors, or invitees.  Tenant shall indemnify and hold harmless the Landlord (and its agents and employees) for any and all claims, damages, fines, judgments, penalties, costs, liabilities, or losses (including, without limitation, a decrease in value of the Premises or the land or the Building of which they are a part, damages caused by loss or restriction of rentable or usable space, or any damages caused

by adverse impact on marketing of the space, and any and all sums paid for settlement of claims, attorneys' fees, consultant, and expert fees) arising during or after the Lease Term and arising as a result of any use, storage, generation or disposal of any Hazardous Substance or any such contamination by Tenant, its agents, employees, contractors or invitees. This indemnification includes, without limitation, any and all costs incurred because of any investigation of the site or any cleanup, removal, or restoration mandated by a federal, state, or local agency or political subdivision. If the Tenant, its agents, employees, contractors or invitees causes or permits the presence of any hazardous substance on the Premises that results in contamination, Tenant shall promptly, at its sole expense, take any and all necessary actions to return the Premises to the condition existing prior to the presence of any such Hazardous Substance on the Premises. Tenant shall first obtain Landlord's approval for any such remedial action. The provisions of this Paragraph shall survive the expiration or earlier termination of this Lease.

As used herein, "Hazardous Substance" means any substance that is toxic, ignitable, reactive, or corrosive regardless whether same is regulated by any local government, the State of Georgia, or the United States Government. "Hazardous Substance includes, but is not limited to any toxic or hazardous substance and any and all material or substances that are defined as "hazardous waste," "extremely hazardous waste," or a "hazardous substance" pursuant to State, federal, or local governmental law. "Hazardous Substance" Includes but Is not restricted to asbestos, polychlorobiphenyls ("PCBs"), petroleum and petroleum products.

59.    Extra Services. If, at the request of Tenant, Landlord chooses, in its sole discretion, to provide Tenant with services in excess of those specified, such extra services shall be furnished to Tenant, at Tenant's cost and expense, at such reasonable charges as may be determined by Landlord, but in no event at a charge less than Landlord's actual cost of administrative services, labor, equipment, and utilities incurred in connection with such extra services.

60.    Temporary Closure of Common Areas. Landlord may close temporarily any part of the parking facilities or other portion of the Common Areas for such periods of time as may be necessary for: (a) temporary use as a work area in connection with the construction of any building(s) or other improvement(s) in or which are to be a part of the Building, (b) repairs or alterations in or to the Common Areas or to any sewers, utility facilities or distribution lines located within the Common Areas, (c) preventing the public from obtaining prescriptive rights in or to the Common Areas,(d) security reasons, or (e) doing and performing such other acts (whether similar or dissimilar to the foregoing) in, to and with respect to, the Common Areas as in the use of good business judgment the Landlord shall determine to be appropriate for the Building, provided, however, that Landlord shall use reasonable efforts not to interfere unreasonably with Tenant's business.

61.    Brokers. **Resource Real Estate Partners, LLC** has represented the Landlord in this transaction. **Resource Real Estate Partners, LLC** shall be compensated by the Landlord in this transaction according to a separate written agreement. **Equis Corporation** has represented the Tenant in this transaction. **Equis Corporation** shall be compensated by the Landlord in this transaction according to a separate written agreement. Tenant warrants that it has had no dealings with any broker(s) other than the broker(s) named in connection with the negotiation or execution of this lease, and Tenant agrees to indemnify, defend, and hold Landlord harmless from and against any and all costs, expenses and liabilities for commissions or other compensation or charges claimed by any broker or agent other than said broker acting for Tenant with respect to this lease. Tenant further agrees that, if (i) this Lease shall terminate prior to the Expiration Date as a result of any default hereunder by Tenant, or (ii) Landlord shall exercise any of Landlord's rights and remedies pursuant to Paragraph 28 as a result of Tenant's Default, whether or not this Lease is terminated, then in any of such events, Tenant shall reimburse Landlord for the Applicable Portion (as hereinafter defined) of any leasing commission(s) or similar brokerage fee(s) paid or to be paid by Landlord to any broker or brokers with respect to this Lease. The "Applicable Portion" of any such leasing commission(s) or brokerage fee(s) shall be determined by dividing (a) the total amount of such leasing commission(s) and brokerage fee(s) paid or to be paid by Landlord by (b) the total number of months in the term of this Lease for which Tenant is obligated to pay Base Rent, and then multiplying the resulting sum by (c) the number of months or fractions thereof remaining in the then unexpired Term of this Lease. Tenant promises to pay Landlord the Applicable

Portion of such leasing commission(s) or brokerage fee(s) within ten (10) days after receipt of Landlord's written request therefor. The provisions of this Paragraph shall survive the expiration or earlier termination of this Lease.

62.     Force Majeure. In the event of strike, lockout, labor trouble, civil commotion, act of God, or any other cause (collectively herein "force majeure") outside and beyond Landlord's control, resulting in the impairment of Landlord's ability to perform any obligation or provide any service hereunder, this Lease shall not terminate except at Landlord's election, and Tenant's obligation to pay Base Rent, Additional Rent and all other charges and sums due payable by Tenant shall not be altered or excused and Landlord shall not be considered to be in Default under this Lease or liable in damages to Tenant in any manner.

63.     Exhibits. Attached Exhibits **A, B, C, D, E & F** are part of this Agreement:

**A.**     **– Site Plan**
**B.**     **– Special Stipulations**
**C.**     **– Rules & Regulations**
**D.**     **– Plans and Specifications**
**E.**     **– Floor Plan**
**F.**     **– Confidentiality Agreement**

64.     Special Stipulations. Special Stipulations are attached hereto as Exhibit __"B"__ and made a part hereof and if the Special Stipulations conflict with the above provisions, the Special Stipulations shall control.

**IN WITNESS WHEREOF,** the parties herein have signed this lease the day and year first above written.

Signed and sealed in the presence of:

**TENANT:**

Tenant: **RBC MORTGAGE COMPANY**

_____
Witness

By: _____ (SEAL)

_____
Name (Printed)

Name: (Printed): _Jonathan B Threadgill_

_____
Witness

Its: _President_

_____
Name (Printed)

Signed and sealed in the presence of:

**LANDLORD:**

Landlord: **TOWN PARK RENAISSANCE, LLC**

_____
Witness

By: _____ (SEAL)

_____
Name (Printed)

Name: (Printed): _BARRY LEVIN_

_____
Witness

Its: _Manager_

_____
Name (Printed)

Bl-levinelease.ls.p'tree.ts
Bl-levinelese.forms.property

LPI.Lease.ThePlaza.&TownPark.09.30.03

## EXHIBIT "A"

## SITE PLAN



## EXHIBIT "B"

### SPECIAL STIPULATIONS

In so far as the following special stipulations conflict with any of the foregoing provisions, the following shall control:

1.      Base Rent: The Base Rent in effect during each year of the lease term shall without any further act by the Landlord and by the Tenant be increased and payable by the Tenant as follows:

| Period | Monthly Base Rent | Annual Base Rent |
|--------|-------------------|------------------|
| 8/1/04 – 10/31/04 | -0- | -0- |
| 9/1/04 – 10/31/05 | $3,837.00 | $46,044.00 |
| 9/1-05 – 10/31/06 | $3,932.93 | $47,195.16 |
| 9/1/06 – 10/31/07 | $4,031.25 | $48,375.00 |

2.      Landlord's Work: The Landlord will build out space according to Plans and Specifications contained in Exhibit "D". The Landlord's building standard finishes are the following:

| | |
|---|---|
| Walls: | Duron Paint (Color TBD) |
| Carpet: | Patcraft - Homeroom (Color TBD) |
| VCT Tile: | 12" X 12" Azrock or Armstrong (Color TBD) |
| Cove Base: | 4" Base Roppe or Johnsonite (Color TBD) |

Landlord shall provide one color scheme for walls, carpet, VCT tile and base.
Finishes over and above Landlord's building standard shall be paid by Tenant.

3.      Advance Rent: Tenant shall pay to Landlord, upon execution and delivery of this Lease to Landlord, the sum of **$3,837.00** which shall be applied to the Base Rent for the first full calendar month of the Term.

4.      Tenant Systems / Permits: Tenant shall be responsible for the Purchase/Lease and installation of its own telephone, computer networking, security and other low voltage systems. Non-plenum rated wires are not acceptable. The Tenant, its agents or contractors must install all low voltage systems per all applicable codes. It shall be the responsibility of the Tenant, its Agents or Contractors to obtain the applicable low voltage permit from the County and pass any required county inspection at least fourteen (14) days prior to the scheduled occupancy date. Tenant agrees and understands any delay in the passing of the low voltage inspection may cause a delay in Tenant's occupancy and such delay is in no way the fault of the Landlord.

5.      **Monument Signage:**      **Tenant shall be allowed to place a sign on the monument subject to prior approval of the Landlord. Signage shall be consistent with other tenants in the building that currently have monument signage and with any applicable Conditions, Covenants and Restrictions for the park.**

## EXHIBIT "C"

### BUILDING RULES AND REGULATIONS

1.      The sidewalks, entry passages, corridors, halls, and stairways shall not be obstructed by or used by the Tenant for any reason other than ingress and egress.

2.      The water closets and other water apparatus shall not be used for any other purposes than those for which they were constructed, and no sweeping rubbish, or other obstruction substances shall be thrown therein.

3.      No awnings, curtains, blinds, shades or screens, other than those that might be provided by Landlord shall be attached to or hung in or used in connection with any window or door for the Building(s) without prior written consent of the Landlord, which consent must include approval by the Landlord of the quality, type, design, color, texture, and manner attached.

4.      The Premises shall not be occupied or used for sleeping or lodging at any time. No gambling, immoral, or other unlawful conduct shall be permitted on or about the property.

5.      Tenant shall not do or permit to be done any act on or about the Premises or Building(s) which will obstruct or interfere with the rights of other tenants of Landlord or annoy them in any way, including but not limited to, the using of any musical instruments, making loud noises, or singing. No bicycles, vehicles, animals, birds or reptiles of any kind shall be brought into the Building.

6.      No painting shall be done, nor shall any alterations be made, to any part of the Building(s) by putting up or changing any partition, doors or windows. Nor shall there be any nailing, boring, or screwing into the woodwork or plastering, nor shall any connection be made to the electric wires or electric fixtures without the consent in writing on each occasion of Landlord. [hanging of plaques, artwork, and other decorative items excluded]

7.      No additional locks or latches shall be placed upon any door without the written consent of Landlord, and Tenant, upon the termination of this Lease, shall return to Landlord all keys to doors in the Building(s) possessed by Tenant at that time. All locks to the Premises which are required to be changed by Tenant shall be changed by Landlord at Tenant's expense and keyed to the Building master key system.

8.      Tenant shall not injure, or overload the mechanical or electrical systems, or deface the Building(s), the woodwork or the walls of the Premises.

9.      Tenant shall not cause or permit any unusual or objectionable odors to be produced upon or permeate from the Premises and no inflammable, combustible or explosive fluid, chemical or substance shall be brought into the Building(s). No cooking shall be done by Tenant or permitted on the Premises except in conformity to law and then only in the utility kitchen, if any, as set forth in Tenant's layout, which is to be used only by Tenant's employees primarily for heating beverages and light snacks.

10.     Tenant shall not (without Landlord's written consent) install or operate any equipment, or other large business machine, equipment, or any other machinery, upon the Premises, and no outside wiring contractors shall be allowed to do work of this kind unless by written permission of Landlord or its representatives. If telegraphic or telephone service is desired, and wiring for same shall be done as directed by the electrician of the Building(s) or by Tenant's telegraphic or telephone contractor as approved by Landlord and supervised by electrician of the Building(s), and no boring or cutting for wire shall be done unless approved by Landlord or its representatives, as stated.

11.     Landlord, in all cases, retains the right to approve the weight per square foot and position of heavy articles including, but not limited to, iron safes, printing equipment, computer and duplicating, or other heavy equipment.

12.     Parking facilities are made available by Landlord for Tenants and their visitors, and shall be used for vehicles that may occupy a standard parking area only. Moreover, the use of such parking facilities shall be limited to normal business parking and shall not be used for the continuous parking of any vehicle or trailer regardless of size.

13.     Smoking is prohibited in all Common Areas within the Building. Smoking is prohibited in all unrented or unoccupied space. This applies to offices, built out or not built out, that do not have a rent-paying Tenant. Smoking is prohibited within individual Tenant Premises.

14.     Landlord reserves the right, from time to time, to amend any one or more of the above rules and regulations and to make such other reasonable rules and regulations as in its judgment may be needed from time to time for the security, safety, care and cleanliness of the Premises and the Building(s).

**EXHIBIT "D"**

**PLANS AND SPECIFICATIONS**

Tenant shall accept the space AS-IS, with the following exceptions:

    a.   Landlord shall provide paint and floor covering.

    b.   Server room and supplemental HVAC shall be also provided by Landlord

**EXHIBIT "E"**

**FLOOR PLAN**



SUITE 150

## EXHIBIT "F"

### Confidentiality and Non-Disclosure Addendum to Lease

THIS CONFIDENTIALITY AND NON-DISCLOSURE Addendum ("Agreement") is made and entered into as of _06 29 04_, by and between RBC Mortgage Company ("RBC Mortgage") and Town Park Renaissance, LLC ("Landlord").

**Recitals**

Whereas, RBC Mortgage and Landlord executed that certain Lease dated as of _June 29_, 2004 for premises located at 114 Town Park Drive, Kennesaw, Georgia (the "Lease") and the Lease grants Landlord limited access to the premises for purposes of safety, repair and in other limited circumstances;

Whereas, RBC Mortgage maintains Confidential Information, including, without limitation, business and financial information, customer and vendor lists, private customer information, pricing and sales information within the premises;

### AGREEMENT

Landlord agrees that all Confidential Information is owned exclusively by RBC Mortgage and understands that all granted access to the premises solely for the purpose of providing the specific services requested and/or required by the Lease and for no other purpose and that Landlord is specifically prohibited from obtaining or using any Confidential Information that may be on the premises for any purpose.

Landlord acknowledges that all Confidential Information is owned solely by RBC Mortgage or its customers and remains the exclusive property of same, and constitutes valuable trade secrets of same, and that the disclosure or use of such Confidential Information by Landlord or its agents shall cause irreparable harm to RBC Mortgage, an injury for which there is no adequate remedy at law, and RBC Mortgage may move for any and all appropriate equitable relief including preliminary and permanent injunctions in any court of competent jurisdiction to prevent the use/disclosure of Confidential Information. The parties agree that any such injunctive relief is in addition to all other available remedies, and does not preclude RBC Mortgage from seeking other available remedies. When moving for injunctive relief, RBC Mortgage shall not be required to post bond or, if required to post bond by court order or other operation of law, shall only be required to post the minimum or nominal bond permitted.

The agreement herein shall be perpetual.

### ACKNOWLEDGED AND AGREED:

TOWN PARK RENAISSANCE, LLC
Landlord

By: _____
(Printed Name) GARRY LEVIN
Title_____ Manager

RBC MORTGAGE COMPANY

By_____
Printed Name    Jamie G. Zelvin
Title:  Associate Gen Co. & Asst. Secretary

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS AGREEMENT OF ASSIGNMENT AND ASSUMPTION OF LEASE (the "Agreement"), made and entered into as of this 8th day of July, 2005, by and between RBC Mortgage Company, an Illinois Corporation, having an address at 13100 Northwest Freeway, Suite 200, Houston, Texas 77040 (the "Assignor"), HOME123 Corporation, a California corporation, having an address at 18400 Von Karman Avenue, Suite 1000, Irvine, California 92612 (the "Assignee"), and Town Park Renaissance LLC, having an address at 2303 Cumberland Pkwy, Atlanta, GA 30339 (the "Landlord").

### RECITALS

**WHEREAS** Assignor is the tenant under a certain Lease Agreement, dated June 29, 2004, by and between Landlord and Assignor (the "Lease"), as amended or modified from time to time, with respect to the property located at 114 Town Park Drive, Suite 150, Kennesaw, GA (the "Property").

**WHEREAS**, Assignor and Assignee are parties to that certain Purchase and Assumption Agreement, dated May 27, 2005 (the "Purchase Agreement"), by and among RBC Holdco Corporation, Assignor, Home123 Corporation ("Home123") and Assignee, pursuant to which Home123 and Assignee agreed to purchase certain assets of Assignor, including all of its right, title and interest in the Lease (the "Asset Purchase").

**WHEREAS**, in connection with the Asset Purchase (a) Assignor is required to assign, transfer and convey to Assignee all of Assignor's right, title and interest in, to and under the Lease, and (b) Assignee is required to accept such assignment, and to assume Assignor's obligations under the Lease from and after the Effective Date (as defined below).

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto covenant and agree as follows:

(1)    Effective Date. This Agreement shall be effective as of the closing date of the Asset Purchase (the "Effective Date").

(2)    Assignment. Assignor hereby assigns and transfers unto Assignee all of Assignor's right, title and interest in and to the Lease.

(3)    Assumption. As of the Effective Date, Assignee hereby accepts the aforesaid assignment and transfer of the Lease, and agrees to be bound by the Lease, and to fully perform all of the covenants, stipulations, agreements and obligations of Assignor arising under the Lease from and after the Effective Date, with the same force and effect as if Assignee had originally executed the Lease as tenant.

07/14/05   THU 10:15 FAX 770 457 0514        BARRY LEVIN & ASSOC. . INC →→→ CUMBERLAND        ☑005
THE HAWKINS COMPANIES   _x:770-438-6424           Jul 13 '(   13:08     P, 05

(4)      Ratification. Landlord, Assignor and Assignee hereby ratify the terms and provisions of the Lease and confirm that the same hereby is and shall remain in full force and effect and Landlord, Assignor, and Assignee agree that the terms and provisions of the Lease shall govern and control the obligations of the parties under such Lease unless such terms and provisions have been expressly modified by the terms of this Agreement.

(5)      Acknowledgment. Assignor and Assignee acknowledge and agree that Landlord is neither subject to nor bound by the terms of any agreement made between Assignor and Assignee in connection with the Lease or the assignment or assumption thereof including, without limitation, the Purchase Agreement.

(6)      Landlord Acknowledgment. Landlord agrees and acknowledges that, to the best of its knowledge, Assignor has performed all of its material obligations under the Lease, and Landlord has no knowledge of any event which after the giving of notice, the passage of time or both would constitute a default by Assignor under the Lease. Landlord further acknowledges that it is in possession of a security deposit in the amount of $0.00, and agrees that after the Effective Date such security deposit shall remain in place for the benefit of Assignee in accordance with the terms and conditions of the Lease.

(7)      Consent of the Landlord. Notwithstanding anything to the contrary contained in the Lease or pursuant to applicable law, Landlord hereby unconditionally and irrevocably consents to this Agreement and releases and discharges Assignor from all claims, demands, damages, losses, costs and expenses of any kind whatsoever arising out of or in connection with the Lease to the extent assumed by Assignee hereunder.

(8)      Binding Effect. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns, and the obligations assumed by Assignee hereunder shall inure to the benefit of Landlord.

(9)      Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State where the Property is located.

(10)      Counterparts. This Agreement may be executed in several counterparts. each of which so executed and delivered shall be an original; but all such counterparts shall together constitute only one and the same instrument. Execution hereof may also be made by facsimile transmission.

(11) Upon Execution by all parties     to this

*[Next page is a signature page]*

Assignment and Assumption Agreement, Assignor and/or Assignee shall pay to Landlord the sum of two hundred fifty dollars ($250) as an Assignment Fee, per the Original Lease Agreement.

NY12592:367737.3

2

07/14/05   THU 10:15 FAX 770 457 0514          BARRY LEVIN & ASSOC.,INC +++ CUMBERLAND          ☑006
        THE HAWKINS COMPANIES  __x:770-438-6424          Jul 13 'Y    13:08    P.06

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of the date and year first above written.

Assignor:

REC MORTGAGE COMPANY

By:
Name:  Jonathan Threadgill
Title:  President and CEO

Assignee:

HOME123 CORPORATION

Name:  John Luckham
Title:  Vice President, Corporate Services

---The rest of this page is intentionally left blank.---

NY12532:367737.5

HAWKINS COMPANIES  Fax:770-438-6424

Jul 13 '0_   13:09   P.01

Landlord:

Town Park Renaissance LLC

By:
Name: Amir Levin
Title: Manager

NY12532:367737.5