## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **NEW CENTURY TRS HOLDINGS** | : Case No. 07-10416 (KJC) |
| **INC., a Delaware corporation, et al.,**[1] | : |
| | : Jointly Administered |
| Debtors. | : |
| | : Re: Dkt. Nos. 1877, 2101 and 2265 |
| | : |

Hearing Date: 9/11/07 at 1:30 p.m.
Objection Deadline: 9/4/07 at 4:00 p.m.

## DEBTORS' MOTION FOR ADDITIONAL SANCTIONS AGAINST POSITIVE SOFTWARE SOLUTIONS, INC. FOR FURTHER VIOLATION OF THE AUTOMATIC STAY

The above-captioned debtors and debtors-in-possession (the "Debtors" or "New Century") hereby move (the "Motion") for additional sanctions against Positive Software Solutions, Inc. ("Positive Software"), including punitive damages, due to Positive Software's willful and intentional new violation of the automatic stay after this Court sanctioned Positive Software the first time (the "Cross Motion"). In support of their Motion, the Debtors respectfully represent as follows.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla. JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L. P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp , a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## INTRODUCTION

1.      Positive Software's disdain for this Court is, in a word, shocking.  A mere six days after this Court entered an order sanctioning Positive Software for twice violating the automatic stay, it has done it again. On August 20, 2007, Positive Software filed what purports to be a new complaint (the "New Complaint") in the United States District Court for the Northern District of Texas (the "District Court").  The New Complaint continues to name former Debtor officers Frank Nese, Jeff Lemieux and John Norment as defendants.  This time, instead of naming New Century, it names New Century's *lawyers*, Susman Godfrey, L.L.P. ("Susman") and its engagement partners, Barry C. Barnett and Ophelia F. Camiña.

2.      Positive Software's desperate attempt to avoid this Court's order denying stay relief might be clever, but it has no effect (other than constituting a new violation of the stay warranting further damages).  As a general matter, a plaintiff cannot evade the automatic stay by continuing pre-petition litigation in which the debtor is the primary defendant by simply filing a new lawsuit against co-defendants.  But the facts here are far worse than even that general scenario.  The New Complaint is nothing more than a re-hash of the same arguments made in the Motion for Leave to File Second Amended Motion to Vacate ("Motion to Vacate"), the very pleading that this Court found to have violated the stay.  Indeed, no less than four times, Positive Software alleges in the New Complaint that "New Century and the Defendants [i.e., Susman Godfrey, Barnett and Camiña] willfully misrepresented" various items (emphasis supplied). Simply not naming the Debtors as defendants does not evade the stay when such allegations are made.  The Debtors obviously would have to defend themselves if such allegations were litigated. Moreover, as explained below, Positive Software's request for damages in the amount that would have been awarded in the arbitration but for the Debtors' and Susman's alleged malfeasance expressly asks the Texas Court to hold a trial-within-a-trial in the stayed lawsuit, to determine

2

what the damages in that stayed lawsuit would have been.  This is a clear "continuation" of pre-petition litigation.

3.    Obviously, neither the automatic stay itself nor this Court's order of compensatory damages for violation of the automatic stay seems to have deterred Positive Software.  The Debtors request that the Court award punitive damages, giving clear guidance to Positive Software to stop its post-petition harassment of the Debtors, and perhaps more importantly, to treat this Court with the respect it deserves.

## FACTUAL BACKGROUND

A.    **The Prior Proceedings in Texas and in This Court.**

4.    Since the Court issued its first sanctions order this month, and likely recalls the facts, the Debtors will not burden the Court with a lengthy recitation of the history of the Positive Software litigation and the prior motion practice in this Court.  Rather, it is spelled out in detail in the "Debtors' Response to the 'Motion of Positive Software Solutions, Inc. for Relief From the Stay Regarding Copyright Infringement Litigation', and Cross-Motion for Sanctions for violation of the Automatic Stay" (the "First Sanctions Motion"; Dkt. 2101), which is attached hereto as Exhibit A and incorporated herein by reference.

5.    The Court heard oral argument on Positive Software's stay relief motion and the First Sanctions Motion on August 7, 2007.  At the conclusion of the argument the Court held that (1) the automatic stay would not be lifted at this time; (2) Positive Software's Motion to Vacate violated the automatic stay; (3) Positive Software's subpoenas, served on Susman and Ms. Camiña, also violated the automatic stay; and (4) Positive Software would be sanctioned in an amount to be determined at a later evidentiary hearing.  A copy of the transcript is attached hereto as Exhibit B.  On August 14, 2007, the Court entered an order incorporating that ruling (the

3

"Order"). See Exhibit C hereto. The Order set October 2, 2007 as the date for the evidentiary hearing on the amount of the sanctions.

**B.     The New Complaint.**

6.     Positive Software filed its New Complaint on August 20, 2007 -- six days after the sanction Order was entered. See Exhibit D hereto. The New Complaint tells the exact same story as the Motion to Vacate: that the Debtors and Susman obtained the Arbitration Award[2] by fraud and deceit, by withholding documents in discovery, committing perjury (in New Century's and its employees' case) or knowingly permitting witnesses to perjure themselves (in Susman's, Barnett's and Camiña's case). Indeed, the very same documents that allegedly were withheld, the very same testimony, and the very same allegations of fraud and perjury are cited in both the Motion to Vacate and the New Complaint. The primary difference between the Motion to Vacate and the New Complaint is the remedy sought: the Motion to Vacate seeks to vacate the Arbitration Award, while the New Complaint seeks to recover from some of the defendants in the original case, i.e., former Debtor officers, and the Debtors' trial counsel, the amount that Positive Software thinks it would have recovered in the arbitration if not for the alleged discovery issues, fraud, perjury, etc. That difference is in name only; the New Compliant essentially asks the Texas District Court not only to rule on the very issues that gave rise to this Court's sanction Order, but to award damages based on the District Court's opinion on what the underlying value of the stayed case is, if it goes back to trial/arbitration. In other words, Positive Software's damages theory in the New Complaint essentially asks the District Court to try the underlying case.

7.     The New Complaint also puzzlingly contains a Count for copyright infringement, and seeks "to recover *from Defendants* their profits which were obtained as a result

---

[2] Capitalized terms not otherwise defined herein are intended to have the same meaning as defined in the First Sanction Motion.

4

of their infringing acts." Exhibit D, ¶ 67 (emphasis supplied). It is hard to conceive of how Susman, Barnett and Camiña could have committed copyright infringement or what "profits" they would have from such "infringing acts". In reality, the purpose of this Count is transparent: it is Positive Software's only "hook" at federal question jurisdiction, since the other Counts assert state law violations and Positive Software has no basis to assert diversity jurisdiction, as the Plaintiffs and three defendants are Texas residents. The reason Positive Software wants the case tried in federal court also is transparent: it desires the same judge to hear the New Complaint as has been presiding over the prior proceedings. See Exhibit D at unnumbered last page (Civil Cover Sheet, listing the prior case as a "VIII. Related Case"). In essence, Positive Software wants to have its cake and eat it too: it wants to call this a brand new suit so as not to implicate the automatic stay, but it is doing everything in its power (even if it lacks any cogent legal theory) to assure that the same judge hears both "separate" cases.

## ARGUMENT

### I.    The Filing of the New Complaint Violates the Automatic Stay.

8.    The filing of the New Complaint constitutes a violation of the automatic stay, notwithstanding that Positive Software attempted to be "clever" by not actually naming the Debtors as defendants.

9.    The automatic stay prohibits, *inter alia*, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). The New Complaint "continues" pre-petition litigation against the Debtor -- the original lawsuit. It simply does it under a separate caption and civil action number. Even Positive Software acknowledged this, affirmatively representing in its Civil Cover Sheet that the

5

New Complaint is a "Related Case" to the existing litigation. See Exhibit D at last (unnumbered) page. Indeed, on page one of the New Complaint, Positive Software actually defines the original suit as "the 'Related Litigation'". The technicality of changing the caption and civil action number of pre-petition litigation does not take the suit outside of the contours of Section 362(a). See Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters., Inc.), 423 F. 3d 567, 577 (6th Cir. 2005) ("[t]he fact that the Louisiana action did not name NCFE [the debtor] as a defendant does not render enforcement of the automatic stay improper"); Kaiser Group Int'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.), 315 B.R. 655, 658 (D. Del. 2004) ("[t]he scope of this protection [the automatic stay] is not determined solely by whom a party chose to name in the proceeding, but rather by who is the party with the real interest in the litigation"). If it were that easy, plaintiffs routinely would try this tactic. Thankfully, the law does not permit such an end run around the automatic stay.

10.     The fact that the Debtors are not named as defendants in the New Case does not change the result. See Amedisys, 423 F. 3d at 573 (holding that a new lawsuit which dropped the debtor as a defendant but otherwise contained substantially similar allegations to a pre-petition suit that had been converted into an adversary proceeding was automatically stayed). There hardly can be a dispute that the Debtors are the real parties in interest here. Even assuming that the allegations had a shred of merit (which the Debtors emphatically deny), the claim would be that the Debtors committed a wrong and Susman, Barnett and Camiña assisted them in doing so. Moreover, the claims against Messrs. Nese, Lemieux and Norment are claims against former officers and/or employees acting, according to Positive Software, in the scope of their employment by the Debtors. Thus, it is difficult to understand how the Debtors are not implicated. Indeed, one of the Counts, for " civil conspiracy", makes little sense in the absence of the Debtors. It contends

that "Defendants conspired together to materially misrepresent and conceal facts and evidence".

Complaint ¶ 73. Is Positive Software really contending that the Susman attorneys "only"

conspired with Messrs. Nese, Lemieux and Norment? The reality is that Positive Software really

means that Susman conspired with the Debtors themselves. The copyright infringement claim also

makes no sense in the absence of New Century as a defendant. Does Positive Software really

contend that Mr. Barnett or Ms. Camiña made copies of protected material? What "profits" did

they make from such alleged copying? (Id. ¶ 67). It is obvious that this Count is really alleged

against New Century, even though New Century's name does not appear on the caption.[3]

11.    The cases are replete that the automatic stay applies even when the plaintiff

does not name the debtor, if the debtor is the "real party in interest". See, e.g., McCartney v.

Integra Nat'l Bank N., 106 F.3d 506, 511 (3d Cir. 1997) ("Integra was stayed from pursuing a

deficiency judgment action against nondebtor third party Lamar's because McCartney [the debtor]

was, in essence, the real party in interest"); Kaiser, 315 B.R. at 658 (adversary proceeding stayed

against a non-debtor third party where the debtor was the real party in interest); Maaco Enters., Inc.

v. Corrao, Civil Action No. 91-3325, 1991 U.S. Dist. LEXIS 17212, *5-6 (E.D. Pa. Nov. 25, 1991)

(trademark litigation stayed against non-debtor third parties where the debtor was the real party in

interest).

---

[3] The Debtors are also the real party in interest because Positive Software has no legitimate claim against the Debtors' lawyers. Texas law is clear: a party has no cause of action under *any* theory against the opposing party's attorneys arising from their conduct in representing the opposing party in litigation. Taco Bell Corp. v. Cracken, 939 F. Supp. 528, 532 (N.D. Tex. 1996); see also Guthrie v. Buckley, 79 Fed. Appx. 637, 638 (5th Cir. 2003) (party has no right of recover, under any cause of action, against another attorney "arising from conduct the second attorney engaged in as part of the discharge of his duties in representing a party in a lawsuit…"). This rule specifically includes claims of "fraud" and "conspiracy" arising from actions that the attorneys took as counsel of record for the opposing party. See Taco Bell, 939 F. Supp. at 533 (citing Bradt v. West, 892 S.W.2d 56 (Tex. App. – Houston [1st Dist.] 1994, writ denied)). See also McCampbell v. KPMG Peat Marwick, 982 F. Supp. 445, 447-48 (N.D. Tex. 1997) (finding that lawsuit by party against opposing counsel from previous litigation was frivolous, and declining to impose Rule 11 sanctions only because the plaintiff had appeared pro se.).

7

12.     Moreover, the New Complaint affirmatively seeks findings that <u>the Debtors</u> -- not just their lawyers -- withheld evidence, committed perjury, etc. <u>See</u>, <u>e.g.</u>, Exhibit D at ¶ 49 ("These belatedly-produced documents establish that the statements <u>New Century</u> and its counsel made...were false...and that there was a <u>concerted effort</u> to purposefully conceal material evidence); <u>id</u>. at ¶ 50 ("<u>New Century</u> and Defendants willfully withheld..."); <u>id</u>. at ¶ 52 (same); <u>id</u>. at ¶ 54 (same) (emphasis in all parentheticals supplied). Thus, Positive Software is asking the very same judge who presides over the original case (by calling this a "Related Case" in the Civil Cover Sheet) to make findings that New Century itself committed the acts that, according to Positive Software, constitute a basis for granting the Motion to Vacate. This doesn't merely "continue" pre-petition litigation; it *is* the pre-petition litigation, in a thinly veiled different form.

13.     Perhaps there is no more graphic demonstration that Positive Software is seeking to "continue" pre-petition litigation than the damages it seeks in the New Case. Positive Software asks "that judgment be entered for Plaintiffs for the damages they would have been awarded in the Arbitration absent such fraud to the fullest extent permitted by law." <u>See</u> Exhibit D at p. 21, "Wherefore" clause 6. There is only one way for the Texas District Court to award such relief -- it would have to hold a "trial within a trial", i.e., a trial on the merits of the allegations in the very case that is stayed. Again, that doesn't just "continue" the pre-petition litigation; it is the pre-petition litigation.[4]

## II.     The Court Should Award Punitive as Well as Compensatory Damages.

14.     Pursuant to Section 362(k) (formerly 362(h)), a debtor injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorney's fees,

---

[4] Even if the Court somehow finds that the New Complaint does not constitute a "continuation" of the original suit, it violates the stay because Section 362(a)(1) also prevents Positive Software from "commenc[ing]" a suit alleging claims that could have been commenced pre-petition.

and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

15.    The Third Circuit repeatedly and definitively has held that the "willfulness" standard embedded in section 362(k) of the Bankruptcy Code requires only that the offending party intend to commit the acts that ultimately are determined to constitute a violation of the automatic stay.  In other words, the "willful violation" requirement does not necessitate a finding that the offending party have a specific intent to violate the automatic stay.  Rather, the statute merely requires that the party knew of the automatic stay and that the party's actions which violated that automatic stay were intentional.  A party's good faith belief that it is not in violation of the automatic stay is not relevant to the determination of whether the act was willful. Atlantic Bus., 901 F.2d at 329 (quoting In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)); University Medical Ctr., 973 F.2d at 1087-89 (same); see also In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992) ("a creditor's good faith belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h)").[5]  Thus, while Positive Software presumably will argue that it thought that its "clever" attempt was a successful end run around the stay, this argument is legally irrelevant to an award of compensatory damages under established Third Circuit law.

16.    Here, the Debtors have suffered and will continue to suffer actual damages from the motion.  Both defense counsel and bankruptcy counsel have had to scramble to determine the implications of the filing, in violation of the stay, of a New Complaint making very serious allegations, including allegations against the Debtors (even though the Debtors don't appear in the caption).  Moreover, answers will be due to the New Complaint on September 10, 2007, the day

---

[5] The Third Circuit's pre-BAPCPA reasoning is even more forceful now, given the adoption of new Section 362(k)(2).  That subsection limits an award to actual damages if a creditor, in good faith, mistakenly believes that new Section 362(h) applies.  No such revision was made to Section 362(k)(1), thereby confirming the lack of a "good faith" exception, other than where Section 362(h) is implicated -- which is not the case here.

before the hearing on this Motion. Thus, all named defendants, some of whom the Debtors might
be obligated to indemnify, will be required to respond to the New Complaint in some form.
Section 362(k)(1) specifically contemplates that "actual damages" may "include[e] attorneys
fees," and it cannot be controverted that the Debtors and their indemnitees have incurred attorneys
fees as a result of Positive Software's violating of the automatic stay. In addition, New Century
personnel already have been distracted from the bankruptcy tasks at hand as a result of the New
Complaint, including determining whether and how to respond to it, whether to put insurance
carriers on notice of the New Complaint and fielding calls from former officer defendants
concerning indemnification and insurance.

17.    In addition, the Court should punish Positive Software's failure to heed the
Court's first sanction Order by now awarding punitive damages. 11 U.S.C. § 362(k)(1); see
Solfanelli v. Corestates Bank N.A., 203 F.3d 197 (3d Cir. 2000); Glenshaw Glass Co. v. Ontario
Grape Growers' Marketing Board, 67 F.3d 470 (3d Cir. 1995); University Medical Ctr., 973 F.2d
at 1085; Atlantic Bus., 901 F.2d at 329. Apparently, Positive Software believes it is free to flaunt
this Court's orders, a mere six days after they were entered, and will not be deterred by a simple
award of fees. A much stronger message must be sent to Positive Software to curb its pattern of
conduct and make it respect this Court's orders. The only remedy which will accomplish this is an
award of punitive damages.

18.    The purpose of punitive damages is to punish the defendant for his willful
or malicious conduct and to deter others from similar behavior. Memphis Cmty. School Dist. v.
Stachura, 477 U.S. 299, 307 n.9 (1986); Mercer v. D.E.F., Inc., 48 B.R. 562, 565 (Bankr. D.
Minn. 1985) ("[t]he purpose of punitive damage is to both punish and deter the offending party"
and finding an award of punitive damages appropriate where 11 U.S.C. § 362 violated). If

10

creditors learn that Positive Software was not severely sanctioned under these circumstances, where it violated the automatic stay six days after being sanctioned for two previous stay violations, they will be emboldened to ignore the automatic stay and this Court's orders. That is precisely the deterrent effect that the punitive damages portion of Section 362(k)(1) is meant to avoid. Indeed, Positive Software's flaunting this Court's order likely is punishable by contempt, see 11 U.S.C. § 105, but the Court need not reach that result because Section 362(k)(1) already provides an adequate mechanism to send a very clear message to Positive Software.

19.    Moreover, given that Positive Software's fanciful attempt to end run this Court's prior Order and the automatic stay is equally as groundless as a matter of state law, punitive damages clearly are appropriate. Indeed, under nearly identical facts in the McCampbell case cited at footnote 3, supra, the Northern District of Texas only determined not to sanction Plaintiff under Rule 11 because Plaintiff was pro se. McCampbell, 982 F. Supp. at 448. Given how clear Texas law is on this point, see fn. 3, supra, it is obvious that Positive Software lacks a good faith basis to sue Susman, Barnett and Camiña, Positive Software's New Complaint can only be seen as an attempt to harass the Debtors. Punitive damages for violation of the stay are clearly appropriate under these circumstances.

20.    The Debtors thus request an award consisting of their attorneys fees plus punitive damages.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that their Motion be granted and the Court order sanctions in the amount of the Debtors attorneys fees, plus punitive damages. The Debtors further request such other and further relief as is just and proper.

Dated: August 24, 2007
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Ben H. Logan
Suzzanne S. Uhland
Victoria A. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION