## **EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                            .        Chapter 11
                                  .
New Century TRS Holdings,         .
Inc., et al.,                     .
                                  .
        Debtor(s).                .        Bankruptcy #07-10416 (KJC)
..........................................................

Wilmington, DE
August 7, 2007
1:30 p.m.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtor(s):                Suzzanne S. Uhland, Esq.
                                  O'Melveny & Myers, LLP
                                  275 Battery Street
                                  San Francisco, CA 94111

                                  Gary Tell, Esq.
                                  O'Melveny & Myers, LLP
                                  1625 Eye St., N.W.
                                  Washington, DC 20006

                                  Robert J. Stearn, Jr., Esq.
                                  Richards Layton & Finger, PA
                                  One Rodney Square
                                  Wilmington, DE 19801

                                  Michael J. Merchant, Esq.
                                  Richards Layton & Finger, PA
                                  One Rodney Square
                                  Wilmington, DE 19801

                                  Russell Silberglied, Esq.
                                  Richards Layton & Finger, PA
                                  One Rodney Square
                                  Wilmington, DE 19801

```
For The Official Committee:        Mark Indelicato, Esq.
of Unsecured Creditors             Hahn & Hessen, LLP
                                   488 Madison Ave.
                                   New York, NY 10022

                                   John McCahey, Esq.
                                   Hahn & Hessen, LLP
                                   488 Madison Ave.
                                   New York, NY 10022

                                   Bonnie Glantz Fatell, Esq.
                                   Blank Rome, LLP
                                   One Logan Sq.
                                   130 N. 18th St.
                                   Philadelphia, PA 19103

For Bank of America:               Gabriel MacConaill, Esq.
                                   Potter Anderson & Corroon, LLP
                                   Hercules Plaza
                                   1313 N. Market Street
                                   Wilmington, DE 19899

For Kodiak Funding:                Edward Rosenthal, Esq.
                                   Rosenthal Monhait & Goddess, PA
                                   919 Market St.-Ste. 1401
                                   Wilmington, DE 19899

For JP Morgan Chase:               John Strock, Esq.
                                   Landis Rath & Cobb, LLP
                                   919 Market St.-Ste. 600
                                   Wilmington, DE 19801

For KPMG:                          Guy Neal, Esq.
                                   Sidley Austin, LLP
                                   1501 K Street, N.W.
                                   Washington, DC 20005

                                   Mark Hurford, Esq.
                                   Campbell & Levine, LLC
                                   800 N. King St.-Ste. 300
                                   Wilmington, DE 19801

For Wells Fargo &:                 Christopher Ward, Esq.
Goldman Sachs                      Klehr Harrison Harvey Branzburg
                                   & Ellers, LLP
                                   Mellon Bank Center
                                   919 Market St.-Ste. 1000
                                   Wilmington, DE 19801
```

```
For the Ad Hoc Committee/:      Robert Keach, Esq.
& Schroeder v. N.C.             Bernstein Shur
                                100 Middle Street
                                Portland, ME 04104

                                Joseph H. Huston, Esq.
                                Stevens & Lee, PC
                                1105 N. Market St., 7th Fl.
                                Wilmington, DE 19801

For Positive Software:          Carl Neff, Esq.
                                Fox Rothschild, LLP
                                Citizens Bank Center
                                919 N. Market St.-Ste. 1300
                                Wilmington, DE 19801

                                Mark Ralston, Esq.
                                Mark Ralston Law Firm

For NY State Teacher:           Ira Levee, Esq.
Retirement System               Lowenstein Sandler, PC
                                65 Livingston Ave.
                                Roseland, NJ 17068

For The Examiner:               Mark Minuti, Esq.
                                Saul Ewing, LLP
                                222 Delaware Ave.-Ste. 1200
                                Wilmington, DE 19801

                                Edward Fox, Esq.
                                K&L Gates
                                599 Lexington Ave.
                                New York, NY 10022

For The U.S. Trustee:           William Harrington, Esq.
                                Office of the United States
                                Trustee
                                844 King St.-Ste. 2207
                                Lockbox 35
                                Wilmington, DE 19801


(Via Telephone)

For The Examiner:               Stephen Topetzes, Esq.
                                K&L Gates
                                1601 K Street, N.W.
                                Washington, DC 10006
```

4

| | |
|---|---|
| For UBS: | Kimberly Newmarch, Esq.<br>Paul Hastings Janofsky<br>& Walker, LLP<br>191 N. Wacker Drive<br>Chicago, IL 60606 |
| For Harold A. Black, et al.: | Paul Blankenstein, Esq.<br>Gibson Dunn & Crutcher, LLP<br>1050 Connecticut Ave., N.W.<br>Washington, DC 20036 |
| For Credit Suisse: | Douglas Deutsch, Esq.<br>Chadbourne & Parke<br>30 Rockefeller Plaza<br>New York, NY 10112 |
| For DB Structured Products: | Richard Agins, Esq.<br>Bingham McCutchen, LLP<br>150 Federal Street<br>Boston, MA 02110 |
| For Bank of America: | Nicholas Cremona, Esq.<br>Kaye Scholer, LLP<br>425 Park Ave.<br>New York, NY 10022 |
| For Union Bank of:<br>California | David M. Poitras, Esq.<br>Jeffer Mangels Butler<br>& Marmaro, LLP<br>1900 Avenue of the Stars<br>7th Floor<br>Los Angeles, CA 90067 |
| Audio Operator: | Jason Smith |
| Transcribing Firm: | Writer's Cramp, Inc.<br>6 Norton Rd.<br>Monmouth Jct., NJ 08852<br>732-329-0191 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          THE CLERK:  All rise.  Please be seated.

2          THE COURT:  Good afternoon.

3          ALL:  Good afternoon, Your Honor.

4          MR. MERCHANT:  Good afternoon, Your Honor, Mike

5   Merchant of Richards Layton & Finger on behalf of the Debtors.

6   Your Honor, if it's acceptable to the Court, we'd like to take

7   the agenda a little bit out of order today.  We'd like to take

8   agenda item #16 first, which is the pre-trial conference in the

9   Schroeder vs. The Debtors matter, just so we can free up some

10  counsel that are in the Courtroom solely for that status

11  conference.

12         THE COURT:  Okay.

13         MR. MERCHANT:  If that's acceptable, Your Honor, I'll

14  turn it over to Plaintiffs' counsel.

15         THE COURT:  Very well.

16         MR. KEACH:  Thank you, Your Honor, Robert Keach for

17  the Schroeder Plaintiffs.  I'm pleased to note, Your Honor,

18  that counsel have had an opportunity to discuss scheduling

19  matters.  We had one full telephone conference last week, and

20  we've since had a number of exchanges, both over the phone and

21  by email.  And we have substantially arrived at an agreed Form

22  of Scheduling Order.  If I may approach, I'll hand one up.

23         THE COURT:  You may.  Thank you.

24         MR. KEACH:  If Your Honor wishes, I'll go through it

25  briefly, and then we have one continuing point of disagreement,

6

1   and I can highlight that.  And I'll allow the Debtor or the
2   Committee to speak with respect to that point.

3       Very quickly, Your Honor, the first point was to extend
4   the time for the Plaintiffs to respond to the what are now
5   Motions to Dismiss.  The Committee, either having filed or was
6   about to file a joinder in the Motion to Dismiss filed by the
7   Debtors.  We would -- the Plaintiffs would respond August 20th.
8   Any reply briefs would be on September 6th, and the
9   contemplation, with the Court's indulgence, is that any oral
10  argument would be held in connection with the omnibus date on
11  September 11th.  Obviously if the Court should decide that
12  without oral argument, that wouldn't be necessary.  We then
13  provided for responsive pleadings to essentially be prepared by
14  the Court's decision on the Motion to Dismiss, with responsive
15  pleadings being 14 days after the entry of an order on the
16  Motions to Dismiss, assuming, of course, that that motion is
17  not fully dispositive of the adversary proceeding.

18      With respect to the issue of the pending Motion to Certify
19  the class and to appoint class counsel, again, in paragraph v,
20  the order keys responses to that off the entry of an order on
21  the Motions to Dismiss and provides for a somewhat lengthier
22  briefing schedule with respect to that than is typically
23  allowed under the local rule.  The reason for that is that the
24  Committee and the Debtors wish to preserve the possibility that
25  -- to the extent that the possibility or the need for it is not

1  mooted by your Court's order, but they wanted to preserve the
2  possibility of taking limited depositions of the prospective
3  class representatives on the issue as to whether or not they're
4  appropriate representatives.  And we've provided time to do
5  that should that remain necessary following the Court's ruling.
6       Other motions would simply go in accordance with the local
7  rules.  With respect to the discovery planning conference,
8  again, that's triggered by a time period after the responsive
9  pleadings are filed, as are initial disclosures.

10      The parties have agreed, Your Honor, on a discovery period
11  for fact discovery, which is thankfully, from our standpoint,
12  relatively brief and condensed; it's 120 days from the first
13  answer date.  We then have a short period of expert discovery
14  90 days after that, and then a period of time for dispositive
15  motions.  And then paragraphs 11, 12 and 13, Your Honor,
16  largely track the Court's form of order with respect to issues
17  on settlement deadlines and the service and the Scheduling
18  Order.

19      With respect to the one issue that remains, the issue
20  arises out of our proposed paragraph 10, and this paragraph has
21  gone back and forth a few times.  What we have finally proposed
22  and as to which there's some disagreement is that following the
23  discovery closure date, we would simply notify the Court of
24  that fact and ask for a trial setting and the establishment of
25  a final pre-trial conference, with the final pre-trail to be

1  conducted in accordance with 7016-2 of the local rules.  From

2  our standpoint, we would like to get to trial as quickly as

3  possible after the closing of discovery.  As I've said in this

4  Court before, we have a number of people who need this money

5  and for whom this is a matter of some urgency, and we would

6  like this to be on as quick a track as possible.

7      We are also frankly concerned -- and to their credit I

8  think Debtor's counsel appreciates the concern.  But we are

9  very concerned about the fact that this Debtor is liquidating,

10  that we need to preserve documents, including electronic

11  documents, and that witnesses on very critical issues involving

12  the Debtors' human resources practices, this plan, are moving

13  and are relocating and will be difficult to find.  So there is

14  every reason to me to move this expeditiously.  Thus, our

15  proposal.

16      To briefly summarize the Debtors' and the Committee's

17  position, and then I'll let them speak for themselves.  Their

18  approach is to be somewhat more open-ended than that and to

19  simply provide for a status conference to be scheduled

20  following the closure of discovery, at which point at the

21  status conference we'd then provide for the rest of the

22  proceeding.  Our view is that anybody can ask for a status

23  conference at any time if they think it's appropriate but that

24  the parties here, the Plaintiffs in particular, need to see a

25  clear path to trial once discovery is complete.

1        That I think is the only remaining issue, but I'll yield
2   the podium to Committee counsel and Debtors' counsel.

3             MR. STEARN:  May it please the Court, good afternoon,
4   Your Honor, Bob Stearn from Richards Layton & Finger on behalf
5   of the Debtors.  I'd like to take just a moment to introduce
6   our co-counsel in this particular proceeding.  It's Gary Tell
7   of O'Melveny & Myers from their D.C. office.  Your Honor, has
8   already granted our Motion to Admit Mr. Tell Pro Hac Vice; he's
9   involved in this case because he essentially has expertise in
10  ERISA litigation.

11       I think I can focus the discussion, Your Honor, on this
12  disagreement with respect to paragraph 10.  We were, after
13  discussions with Mr. Keach -- and they were friendly and
14  productive discussions -- able to resolve any disagreements
15  with respect to any of the other provisions.  And I think it
16  would be helpful, Your Honor, if I started out by handing up
17  the Debtors' and the Committee's proposed form of orders so we
18  can talk about the differences in paragraph 10.  May I
19  approach, Your Honor?

20             THE COURT:  You may.

21        (The Court receives document)

22             MR. STEARN:  Your Honor, our paragraph 10 provides as
23  follows, and I'll just read it quickly, "The Court shall
24  conduct a status conference on {blank date}" -- to be inserted
25  by Your Honor -- "or on such other date to be determined by the

1   Court, which status conference shall be for the purpose of A)

2   setting deadlines for additional filings, including without

3   limitation pre-trial disclosures, Motions in Limine and the

4   pre-trial order, B) setting dates for the pre-trial conference

5   and trial and/or C) addressing such other issues as the Court

6   or the parties deem necessary and appropriate."   Now, we

7   proposed that language because frankly, from our perspective,

8   in non-preference cases such as this one, it's fairly typical

9   language -- in fact, approximately 2 or 3 weeks ago I was

10  before Your Honor in another class action in the New Century

11  bankruptcy.   This was the one involving the WARN Act.   And

12  we've presented an agreed upon Scheduling Order to Your Honor

13  that was also agreed upon with the Plaintiffs that had a

14  provision that's almost word for word with this provision.   And

15  just to refresh the Court's recollection, I'd like to hand up a

16  copy of that order if it's okay.

17            THE COURT:   Okay.

18        (The Court receives document)

19            MR. STEARN:   And if Your Honor turns to paragraph 8 of

20  the Scheduling Order that Your Honor entered in the Austin

21  litigation, the WARN Act case, you'll see that paragraph 8 is

22  almost word for word identical to paragraph 10 that the Debtors

23  and the Committee are proposing in this case.   As I mentioned,

24  at least in our experience, it's fairly typical, especially in

25  non-preference actions, to have provisions like this in the

1  Scheduling Order, especially at the outset of the case.

2      Now, our proposed Scheduling Order, Your Honor -- if we
3  take a moment to examine what it is that the Plaintiffs are
4  looking for, which is the opportunity to request a prompt trial
5  date, our proposed scheduling order gives them exactly that,
6  which is that at the status conference the Court shall
7  entertain requests for, among other things, setting dates for
8  the pre-trial conference and the trial.  So we're not, frankly,
9  quite sure why the Plaintiff is opposed to proceeding in this
10 fashion.

11     It also, presumably, Your Honor, gives the Court precisely
12 what it wants; an opportunity to learn about the status of the
13 case at that time, whether dispositive motions have been or
14 will be filed, and how to factor that information into the
15 question of whether trial should be scheduled and when.  In our
16 view, again, it just makes sense to proceed in this fashion,
17 and it's typical.

18     And there are several reasons why we objected to the
19 Plaintiffs proposed Form of Order, and I'd like to take a
20 moment just to summarize them, Your Honor.  Under Plaintiffs'
21 proposed paragraph 10, it essentially gives them the -- on it's
22 face, the unilateral opportunity to request a trial date
23 without a Court hearing or a conference to discuss the
24 propriety of the request, defense counsel's availability, or
25 even Plaintiff's counsel's availability on particular dates,

1  the length of the trial, the impact of dispositive motion

2  practice on the proposed trial dates, or matters one typically

3  would discuss when scheduling a trial date.  At least in my

4  experience, a provision of that nature in a Scheduling Order is

5  unprecedented; at least I don't recall being a party to a case

6  where a Scheduling Order had that provision.  And with due

7  respect to my adversaries, in our view it really makes no

8  sense, Your Honor.  It's much more sensible to conduct the

9  status conference and the raise the issues that I've just

10 outlined with respect to trial.

11      And frankly, from the perspective the Plaintiffs, I can

12 understand their desire to get to trial, but this does not

13 impose any delay whatsoever on their opportunity to request a

14 trial date.  Plaintiffs can conduct the status conference that

15 we propose at essentially the same time that they would have

16 submitted their request that the Court enter dates for a trial

17 in a pre-trial conference.  Under their proposed order, Your

18 Honor wouldn't even be receiving that request until sometime

19 after fact discovery was over.  And that -- I'll just outline

20 for you when I think that's likely to be, with certain

21 assumptions.

22      This case was filed on June 20, so right now it's about a

23 month and a half old.  We filed our Motion to Dismiss promptly,

24 there's a hearing on the Motion to Dismiss if Your Honor

25 decides to entertain argument on September 11, 2007.  I don't

1 think any of us know at this point whether Your Honor would
2 rule from the Bench or take some time to write an opinion, but
3 just because it helps me round out my dates, let's assume that
4 on or about September 20, or 30 days, I think that is, from the
5 time of the filing of the complaint Your Honor rules.  Then the
6 remainder of the dates kick in as agreed to by the parties.  If
7 you add up all of the time that's built in for answering the
8 complaint, fact discovery, expert discovery, and then reach the
9 {quote} {unquote} "discovery closure date," by my count that's,
10 I think, 228 days after Your Honor would rule on the Motion to
11 Dismiss, if you denied it.  And again, with my assumption that
12 Your Honor would rule on or about September 20, that takes us
13 out to early to mid-May of 2008; and again, that's what the
14 parties have agreed to so far.

15       So there wouldn't be a request for trial, even with my
16 somewhat aggressive assumption as to when Your Honor would rule
17 on the Motions to Dismiss, until at the earliest mid -- early
18 to mid-May of 2008.  And again, we can hold this status
19 conference promptly at that time, at the same time that my
20 friends would have simply submitted a written request for a
21 trial.  And then Your Honor can hear, frankly, the facts that
22 Your Honor wants to hear with respect to when should the trial
23 be conducted, what types of motions may be filed that would
24 impact the trail, how long should the trial be, and Your Honor
25 will get an opportunity to hear from both sides as to what they

1  think about that, and what is the Court's and the parties'
2  schedules.  And because what we're proposing allows Your Honor
3  to hold that status conference at the same time that the
4  Plaintiff would have submitted its written request for a trial
5  date, there really can't be any prejudice to the Plaintiff
6  whatsoever from proceeding in this fashion.

7       So we would respectfully request that -- or excuse me,
8  respectfully submit that our proposed Form of Order, including
9  paragraph 10, makes the most sense and would respectfully
10  request that the Court enter it.  And unless Your Honor has any
11  further questions of me, I'd like to turn the podium over to
12  Committee counsel, who I believe supports this Form of Order as
13  well.

14            THE COURT:  All right.

15            MR. STEARN:  Thank you, Your Honor.

16            MR. INDELICATO:  Your Honor, Mark Indelicato from Hahn
17  & Hessen.  Your Honor, since I thought this was the easy one
18  this afternoon, I'm going to be very brief.  I agree with Mr.
19  Stern, I think it makes perfect sense to come before Your
20  Honor, if for no other reason than to not try and arrange a
21  trial schedule vis-a-vis telephone calls and scheduling, the
22  Court's schedules.  I think it makes sense to be before Your
23  Honor.  We'll have that status conference, and that way
24  there'll be no confusion.  So we would support the inclusion of
25  that in the pre-trial order.

1            THE COURT:  All right, thank you.  Let me just say

2    what normally happens, in my experience, in a litigation of any

3    magnitude in which the parties are aggressively at odds, and

4    that is it doesn't matter what I call this conference, if

5    somebody wants a trial date, they're going to ask for it.  If

6    someone wants to file a Motion in Limine, they're going to file

7    it.  If somebody wants some other pre-trial relief, they're

8    going to ask for it so -- and of course I would not, in this

9    type of order this early in an adversary proceeding, tie my own

10   hands in terms of how I would administer the adversary or

11   otherwise, put it this way, limit my discretion in case

12   management, at least not at this point.  So that having been

13   said, I mean, with respect to counsel and the it sounds like

14   extensive discussions they've had, I don't think it really

15   matters.

16            MR. KEACH:  Your Honor let me propose a -- having

17   heard the Debtor out a bit, I happen to -- first of all, I'm

18   not going to presume what the Court's thinking and what it's

19   going to be thinking in 6 months about it wants to hear, but I

20   do think this is all about process.  If what I heard the Debtor

21   say, which is they're happy to have this status conference

22   occur, you know, essentially at the end of our calculated

23   period -- and we could quibble over whether there's, you know,

24   an extra 10 or 20 days in there, I really don't care.  But our

25   goal here is to do this efficiently and with some speed.  So if

1  we could -- if the status conference is going to be at the end
2  of the period that Debtors' counsel just calculated, then it
3  really just becomes a matter of whether we're asking or whether
4  we're all asking together on the phone, and that's not a point
5  worth fighting about.  We just want to get to the point of
6  asking as quickly as we can and have the next stage of this
7  process be done.

8         So if the fill in the blank date here is May 15 or May 20
9  or as close to that as we can, I think we could probably live
10 with the language because I don't disagree with Debtors'
11 counsel that that's when we'll be asking.  Our issue here is
12 doing this with some speed and some efficiency.

13        I think the other thing that might be worthwhile, again,
14 because I think everybody in the Courtroom knows how this
15 litigation is being funded, is that since we will be back
16 shortly thereafter for a final pre-trial conference, if this
17 status conference can be conducted telephonically, that would
18 make a great deal of sense.  But with those two tweaks, I think
19 we could agree on the language.

20        THE COURT:  Let's do this.  I'm content to pick a date
21 in May of next year.  I'm pretty open at this point.  To the
22 extent that -- whether I will conduct it by telephone or not
23 will depend on what's going on, I guess, at the time.  So let's
24 leave that decision --

25        MR. KEACH:  That makes sense.

1          THE COURT:  -- open.  But it is open for someone to

2   say let's do it by telephone instead of requiring in person

3   attendance.

4          MR. STEARN:  All that makes perfect sense to me, Your

5   Honor, I simply have one request, if it's okay.  Just because

6   in the middle week of May it happens to be my anniversary,

7   which is a time I usually take my wife away, if we can avoid

8   that week, I would be grateful.

9          THE COURT:  What's it worth to you?

10      (Laughter)

11          MR. KEACH:  I have a feeling --

12          THE COURT:  What price marital harmony?

13          MR. KEACH:  Why do I have a feeling that the

14   calculation that was just done was precisely done to land on

15   this date?

16          MR. STEARN:  Actually, I had forgotten until I looked

17   at my calendar.

18          THE COURT:  Suggest a week.

19          MR. STEARN:  We can do the week of the 19th, Your

20   Honor.  That's the week afterwards.

21          THE COURT:  All right.

22          MR. KEACH:  How's the middle of the week, Your Honor,

23   the 21st?

24          THE COURT:  May 21st at 10 o'clock.

25          MR. STEARN:  Thank you, Your Honor.

1          MR. KEACH:   Thank you, Your Honor.

2          THE COURT:   All right, you're welcome.  I've filled

3   that in.  Before you -- before we leave this matter -- and I

4   will sign that order with that addition.  Although it's not

5   required under our standing order, let me ask about mediation.

6          MR. KEACH:   Your Honor, we actually gave this some

7   thought, and Mr. Huston and I were talking about it this

8   morning.  Again, consistent with the remarks that I just made,

9   we're not opposed to engaging in some form of mediation, as

10  long as we can do so on a parallel basis with proceeding with

11  the litigation.  My usual concern about ADR in matters such as

12  this and other Courts that I've practiced before is that the

13  litigation comes to a halt while the parties engage in ADR, and

14  then at the end of what is sometimes not a fruitful process,

15  then the schedule starts.  Because of the needs of the

16  Plaintiffs here, and I -- by which I mean the entire Plaintiffs

17  class, I would not want a process where ADR stopped the case.

18  But so long as we can do it on a parallel track basis, we're

19  certainly amendable to some form of mediation.

20         THE COURT:   Well, it seems to me in terms of timing

21  that sometime after disposition of the Motion to Dismiss and --

22         MR. KEACH:   That's what I was going to suggest.

23         THE COURT:   -- no later than the conclusion of

24  discovery, the parties consider mediation.

25         MR. KEACH:   We're happy to talk to the other parties

1  about setting that up, Your Honor.

2           THE COURT:  Okay, let's do this.  Work on it, report

3  to me whether the parties wish to undertake it or not.  My

4  preference is that you would.  Just don't come to me at our

5  status conference next May and say, "Gee, we never really

6  decided that."

7           MR. KEACH:  Yes, we certainly are not inclined to do

8  that.  If we're going to do it, we want to do it soon, Your

9  Honor.

10          THE COURT:  okay.

11          MR. STEARN:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13          MR. KEACH:  Your Honor, we'll submit a revised form of

14 order to the Court.  Or did you just --

15          THE COURT:  I filled in the date and signed it.

16          MR. KEACH:  In which case, Your Honor, if I could be

17 excused, I would appreciate it.

18          THE COURT:  You may.

19          MR. KEACH:  Thank you.

20          MR. STEARN:  And Your Honor, I was going to ask that I

21 and Mr. Tell be excused as well.

22          THE COURT:  Nobody wants to hang around?  That would

23 be fine.

24          MR. STEARN:  Thank you, Your Honor.

25          MR. MERCHANT:  Mike Merchant again for the record,

1  Your Honor.  If acceptable to the Court, we would like to

2  handle the New Century Warehouse First Day matters next before

3  returning to the beginning of the agenda.  They're matters 17

4  and 18 on the amended hearing agenda.

5          THE COURT:  Very well.

6          MR. MERCHANT:  And Ms. Uhland will be providing the

7  Court with the background on the filing.

8          THE COURT:  Okay.

9          MS. UHLAND:  Good afternoon, Your Honor.  We also have

10 Ms. Holly Etland in the Courtroom today, to the extent the

11 Court has any questions for her about this particular matter.

12 But as the Court may recall, early in the case, approximately

13 April, we had a Sale Order for the sale of the assets of New

14 Century Warehouse.  New Century Warehouse is a wholly owned

15 subsidiary of one of the Debtor entities, and New Century

16 Warehouse is not a mortgage loan originator or servicer, it

17 was, in fact, a warehouse loan operation.  And what it did was

18 it was in effect an aggregator for other smaller mortgage

19 lenders, and it had independent warehouse financing lines from

20 several banks, but three of whom, Galliant Capital and State

21 Street Global Markets and State Street Bank and Trust, were

22 continuing to provide it with warehouse financing,

23 notwithstanding many of the other defaults and issues that

24 warehouse lenders had with other New Century entities.

25        At the time, the founder of New Century Warehouse and the

1   individual from whom the Debtors had acquired New Century

2   Warehouse had made a proposal to buy -- to form a company and

3   buy back the New Century Warehouse business, but could only

4   affect that purchase if the warehouse financing was

5   uninterrupted and that company continued to operate,

6   notwithstanding New Century's Chapter 11.  For this reason, the

7   Debtors and the parent companies did not include New Century

8   Warehouse in their original filing in April 2nd, but instead

9   entered into forbearance agreements with the warehouse lenders

10  -- or New Century Warehouse entered into forbearance agreements

11  with its lenders so that they would continue to provide

12  financing, and this Court approved the sale I believe

13  approximately the third week of April.

14       Since that time, the New Century Warehouse -- I'm sorry,

15  the buyer, whose name is Access Holding Corp., has been

16  complying with the terms of the purchase agreement, which

17  provides that 60% of certain net proceeds of loans collected

18  and sold by the buyer, Access Holdings Corporation, would be

19  paid over to New Century Warehouse.  And so far the Debtors

20  have collected approximately $2 million in this process from

21  the sale of New Century -- the assets of New Century Warehouse.

22       We waited until this time to file the Debtor for a couple

23  of reasons; one, obviously, we couldn't complete the sale --

24  this was also the Debtor -- because we needed to maintain the

25  warehouse financing arrangements.  And second, they wanted to

1  ensure that the completion of the closing of the transaction

2  would take place.  But at all times, New Century Warehouse and

3  the other Debtors have been providing that the funds from the

4  sale of the assets are flowing into a bank account of New

5  Century Warehouse.  They have not been upstreamed to the

6  Debtors, they've been maintained at New Century Warehouse to be

7  used for New Century Warehouse's expenses.

8       So at this time, to facilitate the distribution of

9  proceeds of the sale to any of New Century Warehouse's

10  remaining Creditors and to facilitate the administration of the

11  global Debtors and their affiliates, the administration and

12  wind-down of all their estates, we determined it is the

13  appropriate time to complete that process by filing and

14  including this Debtor in our joint administration with the

15  other estates.

16       We expect to be -- we will need a short period of time to

17  extend -- we'll be filing a Motion to Extend the time to file

18  schedules, but not a long extension because while we believe

19  that almost all the liabilities were assumed in connection with

20  the sale transaction, we still want to be able to schedule

21  potential liabilities and make sure everything's covered.  So

22  while it should be very simple -- ultimately a very simple

23  assets and liabilities, there will be some time required for

24  the (indiscern.) and schedules.  So it should be a very -- from

25  the procedural point of view going forward, a very simple

1  administration of allocating the asset, which is just the cash

2  flow from the sale.

3       Your Honor, I think we have simply two motions that are

4  being heard today; one is the joint administration and the

5  other is our Cash Management Motion.  And then Mr. Merchant has

6  those orders to hand up to the Court.

7           THE COURT:  Does anyone else care to be heard in

8  connection with either motion?

9           ALL:   (No verbal response).

10          THE COURT:  I hear no response.  I've read them and

11  have no questions.

12          MS. UHLAND:  Right, Your Honor.  Again, briefly, we've

13  -- we're moving for joint administration, and we are moving for

14  the cash management open -- Cash Management Order.  Our

15  understanding is that the bank account is fully compliant with

16  345, but we would like to retain that bank account open.  It is

17  the account where the proceeds are being collected from the

18  sale.  If I may, Your Honor, may I hand up the orders?

19          THE COURT:  Yes.

20      (The Court receives document)

21          THE COURT:  Thank you.

22      (Pause in proceedings)

23          THE COURT:  Those orders have been signed.

24          MS. UHLAND:  Thank you, Your Honor.

25          MR. MERCHANT:  Your Honor, Mike Merchant again for the

1  record.   If we can go back to agenda item #10, which is the

2  Debtors' Motion for an Order Approving Investment Guidelines

3  pursuant to section 345 of the Bankruptcy Code.  Your Honor,

4  I'm pleased to report that the Debtors' bank accounts now are

5  in complaint with Section 345 of the Bankruptcy Code, and we've

6  entered into what I believe is an agreed order with the Office

7  of the United States Trustee, which extended our time to come

8  into compliance from the petition date through August 1st.  And

9  as of August 2nd we were in compliance, so no further order

10  will be necessary, but we wanted to have this order in place

11  just so we were covered during the period it took us to come

12  into compliance.  I have a revised Form of Order, if I may

13  approach?

14          THE COURT:  You may.  Does anyone else care to be

15  heard in connection with this matter?

16          MR. HARRINGTON:  Good afternoon, Your Honor, for the

17  record, William Harrington from the Office of the United States

18  Trustee.  I just wanted to confirm that we have agreed to this

19  order.  The only difference I did notice in the order was that

20  there was a provision that said the Debtors' and Union Bank's

21  compliance.  I'm not sure "and Union Bank" is necessary, but I

22  don't think it changes -- I mean, it's the Debtor who's

23  obligated under 345, so we have no further comments.

24          THE COURT:  Very well.  Anyone else?  I hear no

25  response.  I've signed that order.

1            MR. MERCHANT:   Thank you, Your Honor.   I'm going to

2   turn the podium back over to Ms. Uhland to handle matter #11 on

3   the agenda.

4            THE COURT:   Okay.

5            MS. UHLAND:   Thank you, Your Honor.   Your Honor, in

6   this Incentive Plan Motion or wind-down -- well, it's both a

7   Retention and an Incentive Plan Motion, the Debtors have

8   developed a plan -- there will be some modifications I'll

9   discussed in a minute, but they developed this plan in

10  consultation with the Creditors Committee to provide both an

11  incentive for the remaining more senior employees, as well as

12  the retention plan for their remaining employees.

13       The Debtors have gone from approximately 6,000 employees

14  when we started this case in April.   We're down to now

15  approximately 200 employees, which are -- each of which is

16  necessary to achieve what we need to achieve in the remaining

17  portion of this year.   The Debtors have developed a plan to

18  continue to, if you will, shrink our overhead and have target

19  roll-off dates of the employees between now and the end of the

20  year, with approximately anticipating to have 40 to 50

21  employees remaining at the end of the year.   And we will be

22  working with the Creditors Committee to come up with

23  appropriate employment arrangements for that remaining core

24  team as the case develops.

25       In essence, what the Debtors are providing for their rank

1  and file employees is two parts of the commitment; one is
2  provide these employees certainty that we will need them
3  through a certain date and assure them that we're not going to
4  lay them off ahead of the date that we've agreed to.  And we've
5  set target dates ranging from September 30th through December
6  31, target termination dates.  And what the Debtors have is a
7  formula for the retention portion where the employee will earn,
8  in effect, calculated like a vacation pay would be calculated
9  on hours worked, 30 hours for August and then 40 hours per
10  month after that.  So that someone whose target is in December
11  31 has approximately 150 hours of time.  It does -- it is a
12  plan that we're being providing to the remaining group of
13  employees, every single person, to provide sort of the
14  necessary and much needed sort of morale, support, and as I
15  said, certainty with respect to their go-forward plans.

16       With respect to this particular plan, the retention plan,
17  we did want to clarify -- and I'll be handing up a Court order
18  to clarify that -- one item that we intended that may not have
19  been clear from the terms of the order in the plan.   The
20  Debtors did want the flexibility with this plan to the extent
21  an employee voluntarily terminates and therefore there would be
22  more funds, say, freed up from our original pool, the ability
23  to alter, with the agreement of the employee, another
24  employee's stay date.  In other words, we have, for example, 30
25  IT employees.  If someone we slotted to stay through December

1  31 leaves early, we may need -- we may want to ask one of the
2  other employees to stay longer.  We wanted to clarify and we
3  have clarified in the order that while -- if funds are freed
4  up, we can't use those amounts in a discretionary way, we use
5  our same formula of hours to enhance the retention bonus for
6  whatever employee has agreed to stay longer.
7          THE COURT:  Without increasing the pool.
8          MS. UHLAND:  Without increasing the pool.
9          THE COURT:  Yes, I read it that way.
10         MS. UHLAND:  But -- or increasing the terms, I guess,
11 is the concern.  They're not increasing the terms of the bonus
12 for the employee that's staying longer.  Second, the other part
13 of this is to address the more senior members who are
14 remaining, and I say more senior because these are, in effect,
15 what would have been the sort of second level of management who
16 are our remaining eight most senior individuals.  These
17 individuals consist of seven individuals who, because they had
18 a -- were either in legal or human resources with the Vice
19 President title or had a senior Vice President title, we
20 previously included in the KEIP in the incentive plan portion.
21 None of these continuing employees were part of the Debtors'
22 Executive Management Committee, none of them was a direct
23 report to the Board or a Section 16(b) Officer.
24         But consistent with the structure of the prior plans, in
25 accordance with this Court's prior rulings, we have included --

1   what we have done with respect to those, there's eight

2   individuals, including one individual who was previously in the

3   retention plan but has been elevated to Senior Vice President

4   level, so that other individual -- so we have eight total --

5   what we have done is we have amended the KEIP and slightly

6   increased the percentage that those individuals would recover

7   from the other assets pool.  In other words, the Court may

8   recall with respect to the KEIP, we had three pools of assets,

9   the LNFA pool, which is closed, the Carrington pool, which is

10  closed except for the holdback in the transition services, and

11  then the other assets pool which for which the Debtors have not

12  yet even met the target price.  So we have greater sharing with

13  respect to the other assets pool for these eight individuals.

14       The portion that has changed since filing the plan,

15  pursuant to our discussions with the Committee, is that the

16  total amount -- the aggregate amount that's increased in the

17  other assets pool for these eight is in lieu of the I believe

18  it was approximately 180,000 described in the motion, it's now

19  127,000.  So that -- at the target that amount has been

20  reduced.

21       Procedurally, Your Honor, what I would like to do is hand

22  up the blackline, which I have shared with the Creditors

23  Committee and the Office of the United States Trustee, of the

24  order.  But then what we would like to do, as we did

25  previously, is file -- because we'd like to file the plan with

1   the final versions of the plans themselves where we've been

2   working on the language, as well as the detail exhibits that

3   the -- of the plan participants in a redacted form, what we'd

4   like to do is I'd like to take that back, prepare the final

5   orders, and submit it under Certification of Counsel.

6       I'd also like to make and I will make now an oral Motion

7   to Seal the unredacted form of the exhibit of the participants

8   and their amounts.  As you may recall, the United States

9   Trustee's Office does want an unredacted portion of that

10  exhibit made as part of the Court record.  We've worked -- we

11  discussed with the Trustee, they do not object to our making

12  this oral motion now to file that as a separate submission in a

13  sealed manner.

14      So I don't know whether the Court's ready for met to go

15  ahead and walk through the order now or you want to hear from

16  the other parties.

17      THE COURT:  Let me ask if anyone else cares to be

18  heard either in connection with the underlying motion or with

19  the oral Motion to Seal.

20      MR. INDELICATO:  Your Honor, Mark Indelicato from Hahn

21  & Hessen on behalf of the Committee, and I am going to try and

22  make this brief, Your Honor.  The Committee -- this was a tough

23  decision for the Committee.  As we have made known to the Court

24  on a number of occasions, the Committee is very concerned about

25  the costs associated with continuing operation of the Debtor in

1  this case.  We have spoken to the Debtor, and this was not the
2  first plan that we received.  It has been substantially reduced
3  based on the comments of the Committee.  We were comfortable
4  that the people that were being retained were necessary to
5  continue the operations, including claims resolution and other
6  liquidations.  We worked with the Debtor regarding the timeline
7  to make sure that we felt the timeline was appropriate so that
8  everything that can be done will be done.  As I have been
9  warned by my Committee, this is the last time they're going to
10 consider such a plan for the employees, don't come back and ask
11 us again.  So we worked very closely with the Debtor to get the
12 timeline right.  For a number of reasons, the year end is the
13 timeline, the outside timeline, and there are various timelines
14 along the way.  We also worked with the Debtor, to the extent
15 they felt was appropriate, to extend certain individuals, that
16 there would be money available if other people voluntarily left
17 before, but we weren't increasing the cap.  So based on all of
18 the concessions we received from the Debtor, we believe this is
19 appropriate to incentivize the people that exist today to get
20 the job done so that we can get to a plan confirmation and
21 close this case.  So in that regard, Your Honor, we do support
22 the motion.  But I will stress again it was no an easy decision
23 for the Committee, and we would support Ms. Uhland's oral
24 Motion to Seal the record as it relates to the individuals and
25 the amounts of their compensation.  We believe that's only

1  appropriate and fair given the nature of this case.  So based
2  on that, Your Honor, we support both motions made by the
3  Debtor.

4          THE COURT:  Thank you.  Does anyone else care to be
5  heard?  I hear no response.  Let me see the blackline.

6      (The Court receives document)

7          THE COURT:  All right, I don't have any questions
8  about the blackline.

9          MS. UHLAND:  Thank you, Your Honor, and we will be
10  submitting it under Certification of Counsel with the other
11  documents.

12          THE COURT:  Okay.  And do you want to build into this
13  order --

14          MS. UHLAND:  Oh, the seal issue?

15          THE COURT:  Yes.

16          MS. UHLAND:  I will do that.  All right, thank you,
17  Your Honor.  And may Ms. Etland be excused from the Courtroom
18  at this time?

19          THE COURT:  Certainly.

20          MS. UHLAND:  Thank you.

21          MR. MERCHANT:  Your Honor, Mike Merchant again for the
22  record.  Agenda item #12 is the outstanding ILOG objection to
23  the technology sale.  Your Honor, with respect to that
24  objection, my understanding is EquiFirst is communicating
25  directly with ILOG regarding their objection.  They believe

1  they're close to resolving it.  Closing is anticipated to be

2  August 15th.  If they're able to reach a resolution prior to

3  closing, the Sale Order provides that the agreement can be

4  assumed and assigned without further order of the Court.  In

5  the event that they're unable to reach resolution, the matter's

6  been continued to the August 21st hearing, and we'll be back

7  before Your Honor.  Agenda item #13 is the Positive Software

8  Stay Relief Motion.  My colleague Russ Silberglied will be

9  handling that matter on behalf of the Debtors, but I'll turn

10  the podium over to Movant's counsel at this time.

11          THE COURT:  All right.  Well, let me ask this.  I

12  assume that we'll now need to spend some time on the remaining

13  agenda matters.  If that's so, let me take a 10 minute break

14  before we start them up.

15          MR. MERCHANT:  Okay.

16          THE COURT:  All right, Court will stand in recess.

17      (Court in recess)

18          THE CLERK:  All rise.

19          THE COURT:  All right, let's take up Positive

20  Software.

21          MR. NEFF:  Good afternoon, Your Honor, Carl Neff from

22  Fox Rothschild on behalf of Positive Software Solutions,

23  Incorporated.  I'd like to introduce you to my co-counsel, Mark

24  Ralston.

25          MR. RALSTON:  Thank you, Your Honor, it's good to be

1  here again.

2         THE COURT:  Good to see you.

3         MR. RALSTON:  Your Honor, if I may approach, I have an
4  exhibit binder --

5         THE COURT:  You may.

6         MR. RALSTON:  -- of the exhibits.

7         THE COURT:  Thank you.

8         MR. RALSTON:  Just to try to save a little bit of
9  tree, we left out the arbitration award that we submitted under
10  seal last night, but I know that the exhibit binder of Mr.
11  Silberglied contains that award as well.

12     Your Honor, I guess there are two matters that are going
13  before the Court today, and Mr. Silberglied and I have agreed
14  to go forward based on the record of the District Court action.
15  As part of his exhibits, he has also included a pleading from
16  the California Insurance litigation, in which I understand the
17  Debtors are suing certain insurance providers regarding
18  commercial liability coverage.  I haven't had a chance to
19  confirm the accuracy of that pleading or -- but I assume it's
20  accurate and certainly for purposes of this hearing today, I'm
21  willing to stipulate to its accuracy.

22     We have two matters, Your Honor.  One is Positive Software
23  Solutions' request that the automatic stay be modified so that
24  we may go forward and liquidate our claims against certain of
25  the Debtors that is pending in a lawsuit in Federal District

34

1  lawsuit in Dallas, and a Cross Motion by the Debtors for
2  Sanctions for alleged violations to the automatic stay.
3  Although it's their motion, because it's interrelated to our
4  motion, I'm gonna try to address it.  It'll speed things along
5  and I think it makes sense.  I presume my opponent has no
6  problem with that.

7           MR. SILBERGLIED:  No objection, Your Honor.

8           THE COURT:  I wouldn't have let you leave the podium
9  anyway without addressing that issue.

10          MR. RALSTON:  Yes, Your Honor.  Your Honor, this is
11  what we want.  We want to go forward and be able to liquidate
12  our claims against the New Century Debtors that have been
13  pending since 2003 in the Texas litigation, and we'd like to be
14  permitted to proceed on any judgment that we obtain against any
15  insurance proceeds that -- any insurance that may be available,
16  and we understand there's a dispute about that, but certainly
17  that's not been ruled out, and to the extent we can't obtain
18  satisfaction of any judgment that we obtain, to file, you know,
19  to have a proof of claim for the liquidated amount treated as
20  any other Creditor would be of our class, which would
21  presumably be a General Unsecured Creditor.

22          We don't seek by our motion to be able to jump ahead of
23  other Creditors or otherwise gain an unfair advantage over any
24  other Party-In-Interest.  And Your Honor, we truly believe that
25  what we're asking for today is not going to disrupt the

1   Debtors' liquidation efforts.  And Your Honor, whether you
2   characterize it as a reorganization or liquidation, you know,
3   by the use of the words, it appears to us to be a liquidation
4   effort by the Debtors.

5        Finally, Your Honor, we firmly believe that the Debtors'
6   Cross Motion for Sanctions should be denied because the actions
7   that we have taken recently in the Texas District Court
8   litigation are purely defensive, purely go to the award against
9   -- that was made by the original arbitrator against Positive
10  Software for over $1.5 million.  We have requested no form of
11  monetary or other affirmative relief against any of the
12  Debtors.

13            THE COURT:  Well, am I mistaken or are you seeking to
14  vacate the arbitration award?

15            MR. RALSTON:  Yes, Your Honor, and that's --

16            THE COURT:  Okay, wouldn't you consider that, at least
17  in a general sense, relief against the Debtor?

18            MR. RALSTON:  Your Honor, I think the 3rd Circuit in
19  Maritime Electric made the distinction that we believe we are
20  well within today, which is that even where a non-Debtor party
21  is the initial Plaintiff in an underlying action and as to
22  cross claims, it may defend itself in that such defense is not
23  in violation of the automatic stay.  Now, it's not for us to
24  tell -- one, we don't believe -- by the way, Your Honor, if the
25  Court does grant the relief we request, we assume that it would

1  moot the issues that have been raised by the Debtors.

2      But be that as it may, taking that aside, we believe that

3  what we have done is essentially seeking to amend a previous

4  Motion to Vacate taken pre-petition in the context of an award

5  rendered by an arbitrator that has not been set to judgment is

6  truly within -- is truly defensive.  We're not seeking any

7  relief.  We're not seeking to go forward.  We've not requested

8  that the District Court go forward on our affirmative claims at

9  this time.  And certainly we filed the motion that is before

10 the Court today seeking relief from the stay so that we may do

11 that in anticipation that the arbitration award will, in fact,

12 be vacated.

13      THE COURT:  Well, let's analyze this a little bit.

14 And I will tell you, I find it difficult every time I jump into

15 the 3rd Circuit's law on what violates the stay or not when it

16 comes to this kind of scenario because if you look at the

17 handful of the major decisions, most of which are of some age

18 at this point, you have to undertake a multi-layered analysis.

19 And the first step, as Maritime teaches us, is to look at the

20 caption.  And here, the Debtor is on the bottom side of the

21 caption, so there can be a stay violation.  Then you look at

22 the other layers of what's happening within the lawsuit to

23 determine who's seeking what from whom.  And it seems to me, at

24 least this early, there are a couple of different ways to look

25 at this, neither of which I don't think are in your favor.  One

1   of them is is this attempt to vacate the award in favor of the

2   Debtors an action against the Debtors and it seems to me a

3   continuation of a pre-petition action against the Debtors, and

4   it seems to me that it is.  Another way -- that's under (a)(1),

5   362(a)(1).

6        Then you could look at it, although nobody argues this,

7   possibly as an (a)(3) matter, and that is the arbitration award

8   might be considered an asset of the estate, and your action, in

9   substance, is to divest the Debtor of this asset.  I understand

10  your underlying argument is it's wrong, or there are other

11  reasons why it shouldn't be allowed to stand that we didn't

12  argue the first time around or the Court didn't rule on the

13  first time around.  But either way, understanding that you knew

14  there was a bankruptcy pending, it seems to me that this is a

15  stay violation on at least one level.  Tell me why I'm wrong.

16       MR. RALSTON:  Well, Your Honor, I think I'll -- if I

17  may address in reverse order the (a)(3) and -- (a)(1) and

18  (a)(3) points that you raised.  On the (a)(3) level, the

19  property of the estate, the question would be you have an

20  arbitrator issue an award.  That award had not been confirmed

21  into a judgment.  Now, that was a pending motion by the Debtors

22  or the Debtor Defendants to have that award confirmed.

23       THE COURT:  So that you're saying that if the Debtor

24  has a claim that hasn't been reduced to judgment it's not an

25  asset?

1          MR. RALSTON:  Well, Your Honor, that -- yes, Your
2   Honor, essentially that.  It's just a claim.  It's not
3   property.  It is still a claim.  And in fact, unless that claim
4   in our mind had actually become final, it remains, at least
5   under the analysis I believe that the 3rd Circuit has espoused
6   and which is still good law I believe, is essentially not an
7   asset of the estate and a defensive measure to prevent it
8   becoming an asset of the estate by having that award --
9   arbitration award rendered into a judgment that then becomes
10  final is permitted.
11         Now, of course as a practical matter, I may be reading
12  into concerns that the Court doesn't have, but if a Debtor was
13  truly worried that there would be some disruption in continuing
14  litigation, even where it is essentially the Plaintiff, because
15  of an award rendered on counter claims in a pre-petition
16  lawsuit, nothing prevents that Debtor from coming before this
17  Court and asking for an injunction under 105.  The standards
18  are slightly higher and it's not automatic, but that happens --
19  well, it happens certainly with third parties who may be part
20  and parcel of the underlying litigation where the automatic
21  stay technically does not apply.  So if there's true disruption
22  it's, I believe, incumbent on the Debtors to come forward,
23  present evidence, bear the burden of proof as to the typical
24  elements of injunctive relief and are paying such injunctive
25  relief.

1           THE COURT:   What precipitated the timing of the Motion
2  to Vacate?

3           MR. RALSTON:   The -- well, let me make sure that I
4  understand.   We have a series of events.   We have --

5           THE COURT:   Motion to Amend the Motion to Vacate.

6           MR. RALSTON:   The case was back before Texas District
7  Court, and because of the reversal and remand by the 5th
8  Circuit Enbanc Court, essentially activating the Motion to
9  Confirm the award by the Debtors.   So that motion, because of
10 the 5th Circuit's reversal essentially is reactivated.   Because
11 as part of the order vacating the arbitration award, part of
12 that order was a denial of the Debtors' Motion to Reduce the
13 award to judgment.   So you have an active live pleading, you
14 have our motion, my client's Motion to Vacate based on grounds
15 that had been rejected by the 5th Circuit.   You had, subsequent
16 to that, the first Motion for Leave to Amend the Motion to
17 Vacate asserting additional grounds, which were essentially
18 that motion was denied as moot by the District Court in Texas
19 when it ruled to vacate on the first grounds alleged.

20          THE COURT:   Well, let me ask the question this way.
21 What would have happened had you done nothing?

22          MR. RALSTON:   Well, there's two issues.   One,
23 technically, Your Honor, we would risk having as our only
24 grounds or our only substantial grounds to have the award not
25 reduced to a judgment, essentially, having been -- we would

1  really have an empty Motion to Vacate, because the central
2  grounds for that motion had been rejected by the 5th Circuit,
3  rightly or wrongly.  We obviously disagree with the holding,
4  but essentially we have what could be characterized as an empty
5  defensive motion to a live pleading that had been filed by the
6  Debtors.

7       As a practical matter, I think the concern -- and I am not
8  the litigation counsel for Positive Software, but you also have
9  an issue that was raised in -- by the Debtors on the first
10 Motion for Leave to Amend the Motion to Vacate to assert fraud
11 as a basis for vacating the arbitration award.  And in the
12 Debtors response to that, they raised the issue of timeliness;
13 that the timing of the Motion to Amend -- this was the first
14 Motion to Amend that was filed pre-petition --  was untimely.
15 And I think my colleagues representing Positive Software in the
16 underlying litigation were concerned that the longer you wait,
17 the more ammunition you give the Debtor and non-Debtor
18 Defendants, because there are certain individuals who also are
19 parties to this who also have the same issues, more time to --
20 or a better argument as to the timeliness issue.

21      THE COURT:  Well, other than -- and I'm trying to get
22 my own head around this.  Other than the passage of time, what
23 in the process that was pending outside of this forum required
24 that the motion that you filed be filed?

25      MR. RALSTON:  Your Honor, in fact it was basically a -