**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY HOLDINGS, INC., a Delaware corporation, *et al.,*[1] | Case No. 07-10416 (KJC) Jointly Administered |
| Debtors. | **Objection Deadline: September 18, 2007** |

**FIRST MONTHLY APPLICATION OF HAHN & HESSEN LLP, CO-COUNSEL
FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
THE PERIOD FROM APRIL 9, 2007 THROUGH APRIL 30, 2007**

**SUMMARY SHEET**

| | |
|---|---|
| Name of Applicant: | **HAHN & HESSEN LLP** |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | May 30, 2007 (effective April 9, 2007) |
| Period for which Compensation and Reimbursement of Expenses is Sought: | April 9, 2007 through April 30, 2007 |
| Amount of Compensation sought as actual, reasonable and necessary: | $636,675.50 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $16,740.88 |

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

This is a ☒ monthly ☐ interim ☐ final application.

|  |  |
|---|---|
| 80% OF FEES FOR PERIOD 4/1/07-4/30/07: | $509,340.40 (Holdback: $127,335.10) |
| 100% OF DISBURSEMENTS: | $16,740.88 |
| TOTAL DUE: | $526,081.28 |

**ATTORNEY/PARAPROFESSIONAL SUMMARY**

| Name of Professional Person | Position of the Applicant (Year Licensed to Practice) | Hourly Billing Rate (including changes) | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Jeffrey L. Schwartz | Partner (1977) | $650.00 | 135.70 | $88,205.00 |
| Mark S. Indelicato | Partner (1986) | $625.00 | 148.60 | $92,875.00 |
| Mark T. Power | Partner (1989) | $625.00 | 236.70 | $147,937.50 |
| John P. McCahey | Partner (1986) | $625.00 | 53.70 | $33,562.50 |
| Ninette S. Bordoff | Partner (1978) | $500.00 | 5.00 | $2,500.00 |
| Roger S. Chari | Partner (1991) | $525.00 | 13.00 | $6,825.00 |
| Joshua I. Divack | Partner (1988) | $575.00 | 72.60 | $41,745.00 |
| Don D. Grubman | Partner (1979) | $575.00 | 127.70 | $73,427.50 |
| John P. Amato | Partner (1986) | $625.00 | 4.00 | $2,500.00 |
| James C. Kardon | Partner (1978) | $625.00 | 1.50 | $937.50 |
| Anthony Altamura | Partner (1984) | $625.00 | 4.50 | $2,812.50 |
| Janine M. Cerbone | Associate (2003) | $325.00 | 70.90 | $23,042.50 |
| Katharine G. Craner | Associate (2002) | $325.00 | 81.30 | $26,422.50 |

| Jeffrey Zawadzki | Associate (2004) | $260.00 | 81.90 | $21,294.00 |
|---|---|---|---|---|
| Preetpal Grewal | Associate (2001) | $325.00 | 25.20 | $8,190.00 |
| Charles Loesner | Associate (1997) | $400.00 | 5.50 | $2,200.00 |
| Edward L. Schnitzer | Associate (1998) | $400.00 | 23.40 | $9,360.00 |
| Howard Ruda | Of Counsel (1959) | $475.00 | 2.20 | $1,045.00 |
| James P. Laughlin | Special Counsel (1989) | $625.00 | 42.50 | $26,562.50 |
| Robert J. Malatak | Special Counsel (1994) | $450.00 | 7.50 | $3,375.00 |
| Maria A. Arnott | Special Counsel (1989) | $495.00 | 36.70 | $18,166.50 |
| Sandra Y. Thompson | Paralegal (N/A) | $200.00 | 2.70 | $540.00 |
| Joselyn Fine | Paralegal (N/A) | $180.00 | 17.50 | $3,150.00 |
| **Grand Totals:** | | | **1,200.301,200.30** | **$636,675.50** |
| **Blended Rate:** | | **$ 614.22530.43** | | |
| **Blended Rate excluding Paraprofessionals:** | | **$ 621.75536.38** | | |

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General; Case Administration | 18.50 | $7,802.50 |
| Creditors' Committee | 360.00 | $185,299.50 |
| Retentions | 9.30 | $4,724.50 |
| DIP/Investigation of Lien | 121.80 | $58,052.00 |
| Sale of Assets | 441.70 | $250,542.00 |
| Fees | 0.90 | $412.50 |
| Litigation | 39.10 | $22,863.00 |
| Employee Issues | 107.60 | $49,373.50 |
| Claims Administration | 1.40 | $845.00 |
| Investigation of Company | 100.00 | $56,761.00 |
| **Total:** | **1,200.30** | **$636,675.50** |

## EXPENSE SUMMARY

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Carfare *[re: Attorney/Staff working after hours or traveling]* | Skyline Credit Ride Inc. | $3,002.58 |
| Train Fare | | $1,999.00 |
| Courier Service | Deluxe Delivery Systems, Inc. | $25.97 |
| Overnight Delivery | Federal Express, Inc. | $108.95 |
| Duplicating [at 10¢ per page] | | $1,094.40 |
| Outside Printing | DDS Legal Support | $701.03 |
| Telecopy Pages [at $1.00 per | | $102.00 |

| page] | | |
|---|---|---|
| Long Distance Telephone | | $0.50 |
| Postage | | $0.78 |
| Hotel Fees | | $996.71 |
| Meals<br>*[re: Attorney/Staff working after hours or traveling]* | Seamless Web Professional Solutions, Inc. | $2,958.49 |
| UCC Fees | CSC | $5,015.50 |
| Lexis | Lexis-Nexis | $364.47 |
| Word Processing Overtime | UCC Direct Services | $370.50 |
| **Total:** | | **$16,740.8816,740.88** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY HOLDINGS, INC., a Delaware corporation, *et al.,* | Case No. 07-10416 (KJC) Jointly Administered |
| Debtors. | **Objection Deadline: September 18, 2007** |

### FIRST MONTHLY APPLICATION OF HAHN & HESSEN LLP, FOR ALLOWANCE OF FEES AND EXPENSES AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR THE PERIOD APRIL 9, 2007 THROUGH APRIL 30, 2007

TO:    THE HONORABLE KEVIN J. CAREY,
        UNITED STATES BANKRUPTCY JUDGE:

Pursuant to the provisions of sections 330 and 331 of Title 11, United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure and Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, HAHN & HESSEN LLP ("H&H") or (the "Applicant") submits this application seeking the Court's approval of its first monthly compensation and reimbursement of expenses as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") during the period of April 9, 2007 through April 30, 2007 (the "Compensation Period"), and in support thereof respectfully represents:

1.      H&H makes this first application for allowance of $653,416.38 for services provided to the Committee during the Compensation Period consisting of (i) fees in the amount of $636,675.50, and (ii) out-of-pocket expenses in the amount of $16,740.88.

1321417.v2

**Background**

2.     On April 2, 2007 (the "Petition Date"), New Century TRS Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors have continued in the management and operation of their businesses as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in the Debtors' cases.

3.     On April 9, 2007, the United States Trustee for the District of Delaware appointed the Committee, which is comprised of the following seven (7) members:  Wells Fargo Bank, N.A., as Trustee (Co-Chair), Fidelity National Information Services, Inc. (Co-Chair), Credit-Based Asset Servicing and Securitization LLC, Residential Funding Company, LLC, Credit Suisse First Boston Mortgage Capital LLC, Deutsche Bank National Trust Co., and Maguire Properties – Park Place, LLC.

4.     The Committee selected the firms of Hahn & Hessen LLP and Blank Rome LLP to act as its co-counsel in these cases and FTI Consulting as its financial advisor ("FTI").

5.     Pursuant to an order of this Court dated May  30, 2007, a copy of which is annexed hereto as Exhibit "A", H&H was authorized to represent the interests of the Committee under a general retainer, effective as of April 9, 2007.

6.     The attorneys at H&H with primary responsibility for the representation of the Committee in this case are Jeffrey L. Schwartz, Mark S. Indelicato and Mark T. Power, each of whom is a partner at H&H.  Mr. Schwartz is a 1973 graduate of Cornell University and a 1976 graduate of New York University School of Law.  Mr. Indelicato is a 1982 graduate of New

York University, The Stern School of Business and a 1985 graduate of Fordham University

School of Law.  Mr. Power graduated in 1985 from George Washington University and earned

his Juris Doctor in 1988 from Boston College Law School.  In an effort to keep duplication of

efforts down to a minimum, Applicant has allocated, where appropriate, the tasks performed by

Mssrs. Schwartz, Indelicato and Power to separate and discrete tasks.  Mr. Schwartz has

particular expertise in the area of issues concerning counter-parties to financial contracts in

subprime lending, and has been particularly involved in these cases in that area.  Mr. Indelicato's

and Mr. Power's legal careers have both been in the area of bankruptcy and creditors' rights,

with a substantial focus on representing creditors committees in Chapter 11 cases.  As such, they

are responsible for the day-to-day oversight of the case.

       7.    This Monthly Fee Application is submitted in accordance with the Court's

Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of

Expenses for Professionals, dated April 24, 2007 [Docket No. 389] (the "Administrative Fee

Order").

### Summary of H&H Services During the Compensation Period

       8.    From the outset, these cases have been extremely active and challenging,

with a multitude of substantial motions and adversary proceedings commenced during the first

few weeks of the case.  Applicant has devoted considerable time and attention at the inception of

its retention in order to get up to speed quickly on the underlying facts and be able to respond

appropriately to the myriad of expedited matters filed in the case.  During the month of April

2007, H&H expended 1200.30 hours in connection with its services on behalf of the Committee.

H&H submits that the services it has rendered to the Committee have been necessary and in the

best interests of creditors and the Debtors' estates and have furthered the goals of all parties in interest. H&H's services concentrated in, but were not limited to, the following areas:

**(a)** **General; Case Administration**

9.    H&H expended 18.50 hours with respect to services under this category, for which total compensation amounts to $7,802.50. Applicant's services included review of docket regarding status updates and download and review of recently filed pleadings, review of Edgar filings; and research regarding REIT and REMIC residual interests issues. Applicant participated in teleconference calls with FTI and Blank Rome to discuss all outstanding issues, task assignments and upcoming case calendar. Applicant's attorneys also frequently met or participated in conference calls with the Debtors and/or their professionals on multiple topics including, but not limited to, issues regarding the proposed stalking horse sales to Greenwich Capital and Carrington Management Services, the proposed DIP financing and a possible Rule 2004 motion. Applicant also spent time attending to general administrative and case management matters and preparing service lists, contact sheets and e-mail distribution lists.

**(b)** **Creditors' Committee**

10.    H&H expended 360.00 hours with respect to services under this category, for which total compensation amounts to $185,299.50. Applicant's services included reviewing Debtors-In Possession financing pleadings filed by the Debtors, Debtors' response to the motion for a temporary restraining order filed by UBS Securities, various counter-parties' master repurchase agreements and Morgan Stanley related-documents, materials regarding Kodiak Funding's request to sit as an ex officio member of the Committee, and recent motions, objections, and orders. Applicant spent time conducting research regarding the status of ex officio members to the Committee, issues under Bankruptcy Code sections 1102 and 1104,

issues concerning the Debtors' "Rabbi" trust and property of the estate.  Applicant responded to

(i) a shareholder's request for appointment of an equity committee and (ii) a former employee's

request to form an employees' committee and researched case law regarding same.  Applicant

drafted, reviewed, revised and finalized with Committee members' comments by-laws for the

Committee.  Applicant drafted a motion and proposed trading order to cover Committee

members, opposition papers to a motion to appoint a separate employee committee, a

confidentiality agreement for the Committee members and supplemental objection to the

Debtors' retention and incentive bonus plan motion.  Applicant's services included frequent

communications with Committee members through telephone conferences, face-to-face

meetings, e-mails and memoranda.  Applicant prepared for and participated in several meetings

with the Committee and local counsel and FTI, to discuss strategy and vote on various matters

before the Committee.  Applicant also had multiple conference calls with Debtors and Debtors'

counsel to address concerns raised by the Committee; and thereafter discussed results of these

meetings with other parties-in-interest.  Applicant's attorneys met frequently on multiple topics

including, but not limited to, numerous pending motions, trading order issues, critical vendor

issues, first day orders and affidavits, motions concerning the proposed sales of assets and

employees issues and preparation of direct and cross-exam outlines regarding potential testimony

on the foregoing.  Applicant also spent time attending to general administrative and case

management matters including, but not limited to, updating service lists, calendar maintenance,

reviewing bankruptcy filing materials and general file maintenance.

**(c)**      **Retentions**

11.      H&H expended 9.30 hours with respect to services under this category, for

which total compensation amounts to $4,724.50.  Applicant spent time reviewing and revising

prepared retention applications including retention papers of Applicant.  Applicant's services

included frequent communications regarding Lazard retention application and renegotiating

proposed fee structure.

**(d)**     **DIP/Investigation of Lien**

12.     H&H expended 121.80 hours with respect to services under this category,

for which total compensation amounts to $58,052.00.  Applicant spent time reviewing SEC

filings for New Century, all documents relating to Citigroup servicer advance facility and

reviewing and summarizing the DIP loan agreements.  Applicant devoted time reviewing, sorting

and charting results of searches for pre-petition liens and security interest.  Applicant also

analyzed the terms of the proposed DIP financing, and discussed, reviewed and revised its draft

objection to proposed DIP financing.  Applicant prepared for and participated in numerous

teleconference calls on such topics including, but not limited to, negotiations on the potential

resolution of disputes concerning the terms of the proposed DIP financing.  Additionally,

Applicant's attorneys communicated frequently through telephone conferences, e-mails and

memoranda on issues involving Citigroup's servicer advance facility and the proposed

Greenwich/CIT DIP loan, cash collateral issues and UCC Article 9 and Delaware law issues

regarding same; and thereafter discussed results of these communications with other parties in

interest.

**(e)**     **Sale of Assets**

13.     H&H expended 441.70 hours with respect to services under this category,

for which total compensation amounts to $250,542.00.  Applicant spent time reviewing the

Debtors' sale motion and proposed asset purchase agreement regarding the stalking-horse offer

of Carrington Management Services to acquire the Debtors' servicing business. Applicant also devoted attention to Debtors motion to approve bid procedures regarding the proposed naked auction of the origination business, and the Debtors' motion, proposed form of asset purchase agreement, bid procedures and sale order for approval of the stalking horse bid of Greenwich Capital to purchase the Debtors' $170 million in "loans not financed anywhere" ("LNFA"); and Debtors' motion authorizing its approval as shareholder of the sale of substantially all of the assets of its wholly-owned subsidiary, New Century Warehouse Corporation. Applicant conducted research regarding section 363 standards regarding sale to a possible insider, the proposed sale of assets of a non-debtor subsidiary, and the status of regulatory action litigation which could adversely affect the sale of origination business. Applicant drafted, reviewed, revised and finalized its objections to Debtors' motion to approve bid procedures for sale of the servicing business to Carrington, and to the motion to approve the bid procedures for the sale of the loan origination platform. Applicant prepared an outline for cross-examination of Lazard regarding the ability to sell of the loan origination platform. Applicant prepared for and attended various hearings on the sales. Applicant prepared for and participated in numerous teleconference calls on topics concerning the foregoing. Additionally, Applicant's attorneys communicated frequently through telephone conferences, e-mails and memoranda on all pending asset sales. Applicant also spent time attending to general administrative and case management matters including, but not limited to, reviewing and monitoring docket for filings.

**(f)    <u>Fees</u>**

14.    H&H expended .90 hours with respect to services under this category, for which total compensation amounts to $412.50. Applicant's services included review of proposed Lazard fee arrangement and analysis and e-mail exchange regarding same.

**(g)**    __Litigation__

15.    H&H expended 39.10 hours with respect to services under this category, for which total compensation amounts to $22,863.00.  Applicant's services included review of pleadings and Debtor's responses filed in three emergency adversary proceedings.  Applicant spent time reviewing Alaska Seaboard adversary complaint, WARN Act class action pleading, materials concerning forward contracts and repurchase, swap and master netting agreements and Deutsche Bank pleadings and related filings.  Applicant conducted research, collected and reviewed background information and various SEC filings; and drafted, reviewed, revised and finalized Committee's response to motion for TRO and anticipated response to US Trustee's motion.  Applicant's services included frequent communications with Debtors' counsel through telephone conferences, e-mails and memoranda regarding various topics including conversations regarding motion to appoint a Trustee.  Applicant's attorneys communicated via e-mails, meetings and memoranda regarding various topics including, but not limited to, need for Committee to file an application for Rule 2004 exam, response to Trustee motion, and proposed intervention into the Deutsche Bank adversary proceeding.

**(h)**    __Employee Issues__

16.    H&H expended 107.60 hours with respect to services under this category, for which total compensation amounts to $49,373.50.  Applicant's services included review of, response to and negotiations concerning various motions including Debtors' KERP motion and pleadings and interim order regarding wage and salary issues, WARN Complaint and related issues and Debtors' deferred compensation plan.  Applicant spent time conducting research regarding section 507 issues and case law regarding Rabbi Trust; and drafted, reviewed, revised and finalized preliminary objections to Debtors' wage and incentive compensation motions and

response to motion by Rabbi Trust beneficiaries to appoint a separate committee.  Applicant's

attorneys communicated frequently via e-mails, meetings and memoranda devoting time and

attention to various topics including, but not limited to, information received from the Debtors

on proposed salary and incentive plans and how it relates to the Debtors' original plan, Rabbi

Trust issues, and KERP issues; and thereafter discussed results of these communications with

other parties in interest.

**(i)      Claims Administration**

         17.      H&H expended 1.40 hours with respect to services under this category, for

which total compensation amounts to $845.00.  Applicant's services included review of

documents and materials relating to the potential claims of Deutsche Bank and UBS and account

reconciliations and communications regarding same.

**(j)      Investigation of Company**

         18.      H&H expended 100.00 hours with respect to services under this category,

for which total compensation amounts to $56,761.00.  Applicant's services included time spent

reviewing declaration in support of New Century filing, New Century public filings and press

releases, articles regarding New Century, Debtor's '06 annual report, proxy statements and

quarterly filings, and documents relating to Rule 2004 application.  Applicant expended time

conducting research regarding background information on New Century and various topics in

connection with Committee investigation, and spent time reviewing results of same; and

drafting, reviewing, revising and finalizing application and order for Rule 2004 examination and

document request regarding same.  Applicant prepared for and participated in numerous

teleconference calls on topics including, but not limited to, appointment of Trustee/Examiner,

Rule 2004 application and updates on investigation on accounting irregularities.  Additionally,

Applicant's attorneys communicated frequently via e-mails, meetings and memoranda devoting time and attention to foregoing topics; and thereafter discussed results of these communications and meetings with other parties in interest.

### H&H Fees for the Compensation Period

19.     Under all of the criteria normally examined in Chapter 11 reorganization cases, H&H's total requested compensation of $636,675.50 is reasonable in light of the significant work performed by H&H to date.  The hourly rate for each attorney and paraprofessional who performed the foregoing services on behalf of the Committee is set forth in detail in the prefixed Summary Cover Sheet.

20.     Annexed hereto and made a part hereof as Exhibit "B" are computer-generated invoices taken from the timesheets maintained by the individuals who performed services during the Compensation Period.  The invoices indicate the dates of and description of the services for which H&H seeks compensation, and the hours spent in performance of such services.

21.     In certain instances, H&H's time records may indicate that two or more attorneys attended the same meeting or hearing.  Where more than one attorney attended a meeting or hearing, it was due in part to the expertise related to a specific issue that one particular attorney was handling and/or because one attorney was more familiar with specific topics to be discussed or presented at the meeting or hearing.  Applicant made every effort to minimize such dual attendance while at the same time assuring that the interests of the Committee and the creditor body was adequately represented.  Applicant, therefore, believes that the time for both attorneys at such meetings and/or hearings are properly compensable.

22.    Based on the above and in accordance with the Administrative Fee Order, H&H requests allowance of monthly compensation for April 2007 in the amount of $636,675.50, and payment of **$509,340.40** representing eighty percent (80%) of such compensation.

## Disbursements Incurred During the Compensation Period

23.    The annexed Exhibit "C" itemizes H&H's out-of-pocket expenses incurred in connection with its services during the Compensation Period.  Pursuant to Local Rule 2016-2(e), H&H's expenses are summarized in the prefixed Cover Sheet.  H&H charges its clients $0.10 per page photocopying expense.  Applicant charges its clients $1.25 per page for outgoing facsimile transmission but in accordance with the Local Rules of this court, seeks reimbursement of only $1.00 per page.  Actual long-distance carrier charges for outgoing facsimile transmission are reflected in the long-distance telephone charges.  H&H believes these expenses are reasonable and were necessarily made.  H&H respectfully requests reimbursement thereof in the sum of **$16,740.88**.

24.    In providing a reimbursable service, H&H does not make a profit on that service and does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay.

25.    H&H reserves the right to request in subsequent monthly applications reimbursement for expenses actually incurred during the Compensation Period but which do not appear on the annexed Exhibits "B" and "C" because either charges have not yet been posted in H&H's billing system, or have not yet been billed by a third party vendor.

**WHEREFORE**, H&H respectfully requests that the Court enter an order allowing compensation in the amounts set forth herein and provide such other and further relief as may be just and equitable.

Dated:    New York, New York
          August 29, 2007

                              **HAHN & HESSEN LLP**
                              Co-Counsel to The Official Committee of
                              Unsecured Creditors of New Century Holdings,
                              Inc., Debtor


                              By:    ___/s/ Mark T. Power
                                      Mark T. Power
                                      A Member of the Firm
                              488 Madison Avenue
                              New York, NY  10022
                              (212) 478-7200
                              (212) 478-7400 facsimile

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

NEW CENTURY HOLDINGS, INC.,
a Delaware corporation, *et al.,*

                        Debtors.

Chapter 11

Case No. 07-10416 (KJC)
Jointly Administered

**AFFIDAVIT PURSUANT TO SECTION 504**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016**

STATE OF NEW YORK   :
                             : ss.:
COUNTY OF NEW YORK  :

         MARK T. POWER, being duly sworn, deposes and says:

         1.        I am a member of the law firm of Hahn & Hessen LLP ("H&H"), co-counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed herein. I am the attorney responsible for the services rendered and to be rendered to the Committee as well as for compliance with the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

         2.        This affidavit is submitted in support of the foregoing First Monthly Fee Application (the "Application") for allowance of compensation and reimbursement of expenses incurred by H&H, as co-counsel to the Committee, for the period from April 9, 2007 through and including April 30, 2007.

         3.        I have personally performed many of the services rendered by H&H and am thoroughly familiar with all other services performed on behalf of the Committee by the lawyers and paraprofessionals in my firm.

1321417.v2

4.        The facts contained in the Application are true and correct to the best of my knowledge, information and belief.

5.        The fees and disbursements requested in the Application are in accordance with practices customarily employed by H&H and generally accepted by H&H's clients.

6.        No agreement or understanding exists between H&H and any other person or persons or parties to share in any compensation received in connection with this case except as with respect to the terms of partnership agreements with members of H&H.

7.        To the best of my knowledge, information and belief, the application substantially complies with the Local Rules.


           /s/ Mark T. Power
           MARK T. POWER


Sworn to before me this
28th day of August, 2007

      /s/ Joselyn Fine