# EXHIBIT A

CRIGINAL



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 2 1

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:03-CV-0257-N |
| NEW CENTURY MORTGAGE CORPORATION, *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is the issue of discovery into the allegations made in Plaintiff Positive Software Solutions, Inc.'s ("Positive Software") Motion for Contempt and, more specifically, whether the crime-fraud exception to the attorney-client privilege and work product doctrine applies. Because Positive Software has made a prima facie case of fraud, the crime-fraud exception forecloses any objections based on attorney-client privilege or work product to discovery within the scope defined in this order.

## I. BACKGROUND

Positive Software develops, manufactures, and markets software used in the mortgage industry. In 2000, Positive Software introduced its LoanForce software, and Defendant New Century Mortgage ("New Century") later licensed LoanForce from Positive Software for use in its mortgage business. In February 2003, Positive Software filed this suit alleging that New Century used, reverse engineered, and copied the LoanForce software to develop its

own substitute software known as LoanTrack in violation of federal copyright laws and other laws.

### A. The Protective Order and Preliminary Injunction

To protect their confidential information during the pendency of this action, the parties agreed to the terms of a protective order ("Protective Order") signed by the Court on April 28, 2003. The agreed Protective Order specifically identified the categories of individuals who were entitled to use or disclose confidential information produced in the case and expressly provided, *inter alia*, that no confidential information shall be disclosed to non-attorney employees of the receiving party. Protective Order, at 4, ¶ 3 ("No disclosure of Confidential Information shall be made to other [non-lawyer] employees.").

The Protective Order specifically prohibited New Century's outside counsel from disclosing Confidential Information to New Century employees. *Id.* ("Nothing in this Order shall preclude or impede Outside Counsel's ability to communicate with or advise his or her client based on his or her review and evaluation of Confidential Information produced by the opposing party, provided that such communications or advice shall not disclose or reveal such Confidential Information.") (emphasis in original).

On the same day the Protective Order was entered, the Court also entered a Memorandum Order and Opinion granting Positive Software's Motion for Preliminary Injunction ("Preliminary Injunction") enjoining New Century from any use of the LoanForce

software, the LoanForce database, LoanTrack-1, LF_Moon, and LTK_Moon.[1] Preliminary

Injunction at 17. On January 15, 2004, the Court signed an order clarifying the Protective

Order to include within the definition of "confidential information":[2]

> the original and all copies (whether maintained as forensic images, or backup
> tapes or disks, or any other format, documentary or electronic) of all or any
> portion of the LoanForce code (both application and database), regardless of
> how originally acquired, that are in the possession, custody or control of any
> of the Defendants, any person or entity affiliated with the Defendants, or any
> employee, contractor, or agent (including attorneys) of Defendants.

### B. New Century's Representations that it would No Longer Use or Possess the LoanForce Software

In an April 21, 2003 letter to the Court, Barry Barnett, an attorney representing the

Defendants, affirmed:

- New Century has no intention of ever again using LoanForce
  application software, the LoanForce database, LoanTrack, LF_Moon,
  or LTK_Moon.

- New Century will, no later than April 25, 2003 and under Dr. Pooch's
  supervision, delete or return to [Positive Software] all LoanForce
  software, including application software and the LoanForce database
  that New Century has the ability to access.

---

[1]The Preliminary Injunction "further ORDERED that New Century delete or return all
LoanForce software, including application software and the LoanForce database, that New
Century has the ability to access (excepting materials produced in discovery for use in this
litigation and/or arbitration.)" Preliminary Injunction at 17. However, upon request from
Positive Software, that sentence was later vacated. See Order (April 29, 2003).

[2]New Century argues that the Protective Order's definition of "confidential information" did
not extend to the materials in dispute. The Court takes no position, as yet, on the question
whether such information falls within the scope of "confidential information" under the
original Protective Order.

ORDER – PAGE 3

- New Century will not use LoanTrack-2 for telemarketing or any other commercial purpose before May 12, 2003.

On April 24, 2003, Dr. Udo Pooch stated that "New Century ceased using LoanTrack-1 and the LoanForce database . . . commencing April 18, 2003." Amended Declaration of Udo Pooch, ¶ 3. According to Dr. Pooch, as of April 18, 2003, "no New Century-Retail IT personnel had access" to the data from the LoanForce database. *Id.* at ¶ 3. Dr. Pooch personally "supervised and observed the deletion of LoanForce, LoanTrack, LTK Moon and LF Moon. This was done following my direction and in my presence. . . ." *Id.* at ¶ 4. Finally, Dr. Pooch affirmed, "[b]ased on my professional opinion, New Century has satisfactorily cleansed itself of LoanForce, LoanTrack, LTK Moon and LF Moon." *Id.* at ¶ 5. These representations were made while the Court was considering the scope of preliminary injunctive relief and did in fact affect the Court's decision on that issue.

### C. *New Century's Continued Use of the LoanForce Software*

Notwithstanding those representations, Norment made clear that he enjoyed access to Positive's confidential source code in November of 2003:

> In November 2003, as part of New Century's trial preparation, and in order to assist New Century's counsel in the case, I created a workbook using Microsoft's Excel spreadsheet program that compared the Loanforce database schema to the database schema for products New Century had created, including the LFMoon database, the LTKMoon database, and the LoanTrack (for LoanTrack-1) database. In doing this work, I used the same database schema for the databases that New Century produced to Positive in the this litigation on April 9, 2003. I did not use any material produced in this litigation by Positive.

Norment Declaration at ¶ 4.

In a subsequent letter to the Court, dated January 15, 2004, Barnett provided additional information about Norment's access to the Loanforce database:

> [W]e understand that Mr. Norment first obtained access to the compact disks containing [the] LoanForce database on June 16, 2003, when he signed the CD out form the New Century legal department, which was maintaining the CD and the forensic images that had been created under the supervision of Dr. Pooch. Mr. Norment signed the CD back in on July 10, 2003. . . . Mr. Norment may have kept a copy of the CD's contents on his "personal" sector of a New Century server . . . .

In the same letter, Barnett explains that "Mr. Norment suggested the idea of comparing the code and reporting the results to counsel, and counsel agreed that such a comparison might be useful and directed him to create it for purposes of investigating the facts underlying Positive [Software]'s allegations of copying."

Positive Software now asks the Court to allow discovery into the allegations of contempt, and more specifically, exactly what Norment did with its software. Further, Positive Software asks the Court to find that any objection to that discovery based on an assertion of attorney-client privilege or work product is foreclosed by the crime-fraud exception to those privileges.

## II. ANALYSIS

### A. Defining the Scope of Discovery into Positive Software's Allegations of Contempt

A district court has the power to allow discovery into allegations of contempt. *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 762, 764 (9th Cir. 1996). To obtain discovery based on allegations of civil contempt, the movant must make a prima facie showing that a

court order has been disobeyed. *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 229 (D. Del. 2003).

The elements of civil contempt are: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). Here, there was clearly a protective order in effect. Further, Positive Software has made out at least a prima facie showing that (i) the order required New Century to prevent Norment from reviewing or copying the LoanForce Software,[3] and (ii) nevertheless, Norment requested and, at the direction of counsel, obtained access to and generated at least one copy of the LoanForce software. Because Positive Software has made a prima facie showing that the protective order enjoining use of its LoanForce software was violated, the Court holds that discovery into the allegations of contempt is appropriate. The Court will limit the scope of discovery to actions that would have violated the protective order as clarified on January 15, 2004.

### B. The Crime-Fraud Exception to the Attorney Client Privilege and Work Product Doctrine

Where issues related to privilege arise in the course of the adjudication of federal rights – in this case, federal copyright violations – they are "governed by the principles of

---

[3]Again, the Court has not finally decided that the scope of the original Protective Order encompassed the forensic copy of Positive Software's software made by Dr. Pooch. The Court now simply holds that Positive Software has made a prima facie showing that it was covered.

the common law as they may be interpreted by the courts of the United States in the light of reason and experience." FED. R. EVID. 501; *United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (quoting FED. R. EVID. 501 in the context of the crime/fraud exception).

> Writing on the purpose of the crime-fraud exception, the Supreme Court noted,
>
> > The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection – the centrality of open client and attorney communication to the proper functioning of our adversary system of justice – "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*."

*Zolin*, 491 U.S. at 562-63 (internal citations omitted) (emphasis in original). Thus, "[i]t is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *Id.* at 563 (internal citations omitted).

A party invokes the crime/fraud exception by establishing a prima facie case that a crime or fraud has been committed. *Industrial Clearinghouse, Inc. v. Browning Manufacturing Division of Emerson Electric Company*, 953 F.2d 1004, 1008 (5th Cir. 1992) ("To invoke the crime/fraud exception, a party must establish a prima facie case that a crime has been committed."). A prima facie case requires more than bare allegations, *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982), but only such evidence "as will suffice until contradicted and overcome by other evidence." *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 203 (5th Cir. 1981). In other words, a prima facie case is one "which has proceeded upon sufficient proof to that stage where it will support [a]

finding if evidence to contrary is disregarded." *In re Grand Jury Proceedings*, 641 F.2d at 203; *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (acknowledging the Fifth Circuit's approval of this standard).

However, once a prima facie showing has been made, the privilege disappears without affording the proponent of the privilege an opportunity to rebut the prima facie showing. *See Clark v. United States*, 289 U.S. 1, 15 (1933) ("When that [prima facie] evidence is supplied, the seal of secrecy is broken."); *see also Zolin*, 491 U.S. at 563 n. 7 ("The prima facie standard is commonly used by courts in civil litigation to *shift* the burden of proof from one party to the other. In the context of the fraud exception, however, the standard is used to dispel the privilege altogether *without* affording the client an opportunity to rebut the prima facie showing") (emphasis in original) (citation omitted).

The crime-fraud exception also applies to the work product doctrine. *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d at 1242 ("[T]he ongoing crime-fraud exception applies to work product."). To overcome the work product doctrine by invoking the crime-fraud exception, "it must first be shown that the client was engaged in ongoing fraudulent activity when the work product was sought or produced. Then, the work product must reasonably relate to the fraudulent activity." *Id.* at 1242-43 (internal citations omitted).

### C. *Positive Software has made a Prima Facie Showing of Fraud*

Positive Software alleges New Century committed fraud when it represented that it had "cleansed itself of LoanForce, LoanTrack, LTK Moon and LF Moon." Amended Declaration of Udo Pooch ¶ 5. According to Dr. Pooch, as of April 18, 2003, "no New

Century-Retail IT personnel had access" to the data from the LoanForce database. *Id.* at ¶ 3. Dr. Pooch personally "supervised and observed the deletion of LoanForce, LoanTrack, LTK Moon and LF Moon. This was done following my direction and in my presence. . . ." *Id.* at ¶ 4. Those representations were intended to, and did, affect the scope of injunctive relief afforded by the Court. And it now appears those representations may not have been correct. Barnett also makes clear that Norment sought and received counsel's blessing to review Positive Software's source code. Thus, attorney-client communications are inextricably involved in the alleged fraud and contempt.

Based on these facts and the evidence of material misrepresentations by New Century, the Court finds that Positive Software had made out a prima facie case of fraud sufficient to trigger the crime-fraud exception to the attorney-client privilege and work product doctrine.

## CONCLUSION

The Court emphasizes that it has not made any determination that (1) fraud occurred; (2) contempt occurred; or (3) counsel were involved in promoting or approving any such fraud or contempt. The Court simply determines today that Positive Software has made a sufficient showing of such conduct that discovery to determine the truth is appropriate. And such discovery would not determine the truth if the most important information were hidden behind assertions of privilege or work product. Accordingly, the Court finds that within the limited scope of discovery defined in this order, the crime-fraud exception forecloses objections based on the attorney-client privilege or the work product doctrine.

SIGNED this _21_ day of January, 2004.

David C. Godbey
United States District Judge

ORDER – PAGE 10