## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | **(Jointly Administered)** |
| | : | |
| **Debtors.** | : | Objection Deadline: September 24, 2007, at 4:00 p.m. |
| | | Hearing Date: N/A |

### FIRST MONTHLY APPLICATION OF HELLER EHRMAN LLP
### FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
### AND FOR REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL
### TO THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF NEW
### CENTURY FINANCIAL CORPORATION
### FROM APRIL 2, 2007 THROUGH JUNE 30, 2007

Name of Applicant:                                          Heller Ehrman LLP

Authorized to Provide Professional Services to:            Audit Committee[2] for NCF

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

[2] Shortly after the investigation described in this Application began, a subcommittee of the Audit Committee was formed to carry on the investigation.  For convenience, this Application refers to the Audit Committee as a shorthand for the board committee responsible for the investigation, initially the Audit Committee and then its subsequently formed investigation subcommittee.

Date of Retention:                                          July 24, 2007, *nunc pro tunc* to April 2,
                                                            2007

Period for which Compensation and Expense                   April 2, 2007 through June 30, 2007
Reimbursement are sought:

Amount of Compensation sough as actual,                     $739,531.60 (80% of $924,414.50)
reasonable, and necessary:

Amount of Expense Reimbursement sought as actual,           $23,662.82
reasonable, and necessary:


This is a(n):_x_ monthly                ___interim              ___final application

Prior Applications Filed:  NONE

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,[1]** | : | **(Jointly Administered)** |
| | : | |
| **Debtors.** | : | |

## FIRST MONTHLY APPLICATION OF HELLER EHRMAN LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL TO THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF NEW CENTURY FINANCIAL CORPORATION FROM APRIL 2, 2007 THROUGH JUNE 30, 2007

Pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

the Court's Administrative Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, dated April 24, 2007 [Docket No. 389] (the

"Administrative Order"), Heller Ehrman LLP ("Heller Ehrman") hereby files this First Monthly

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Special Counsel to the Audit Committee of the Board of Directors (the "Audit Committee")[2] of debtor New Century Financial Corporation ("NCF") for the Period from April 2, 2007 through and including June 30, 2007 (the "Application"). By this Application, Heller Ehrman seeks a monthly allowance pursuant to the Administrative Order with respect to the sums of $741,091.60 (80% of $926,364.50) as compensation and $23,662.82 for reimbursement of actual and necessary expenses, for a total of $763,194.42, for the period April 2, 2007 through and including June 30, 2007 (the "Compensation Period"). In support of this Application, Heller Ehrman respectfully represents as follows:

**Background**

1.    On April 2, 2007 (the "Petition Date"), NCF and certain of its debtor subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors' retention of Heller Ehrman was approved by the Court's order dated July 24, 2007, and such retention was effective retroactively to the Petition Date (the "Retention Order"). The Retention Order authorized Heller Ehrman to be compensated in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and any other such procedures as may be fixed by order of this Court (the "Fee Guidelines").

---

[2] Shortly after the investigation described in this Application began, a subcommittee of the Audit Committee was formed to carry on the investigation. For convenience, this Application refers to the Audit Committee as a shorthand for the board committee responsible for the investigation, initially the Audit Committee and then its subsequently formed investigation subcommittee.

**Fee Statements**

3.      Heller Ehrman's services as special counsel to NCF's Audit Committee in this case for the three-month Compensation Period have been allocated among five project categories ("Projects") and are described in detail in the redacted billing statements attached as Exhibit A to this Application (the "Billing Statements").[3] These statements contain daily time logs describing the time spent by each attorney and paraprofessional for this period. The attached Exhibit B presents, for each Project, the total number of hours of services devoted by each attorney or paralegal, that person's regular hourly billing rate, and the fees requested for those services based on regular hourly rates. Not all services fit neatly within one or another of the designated Project, and consequently there is some overlap. Nevertheless, the allocations reflected on the attached exhibits, and in the narrative descriptions below, represent Heller Ehrman's reasonable best efforts to categorize its services in the spirit of the Fee Guidelines.

4.      The substantial bulk of the work performed by Heller Ehrman during the Compensation Period is summarized as follows:

**Summary of Services By Project**

5.      **Administrative Matters (0008)**. Billable hours: 22.5; Fees sought: $8,599.00. The fees claimed in this "catch-all" category represent a small portion—1.1%—of the total fees sought for the three-month period covered by this Application and relate to general case management, including discussing and defining the scope of the ongoing investigation and addressing employment issues with the Audit Committee, and managing and organizing

---

[3] Upon request, the original unredacted Billing Statements will be made available for review by the Court, the Debtors and the United States Trustee.

5

voluminous documents and files. A small portion of these fees relates to services that should have been billed under Projects 0004 and 0005 (discussed below).

6.    **Investigation - Interviews & Document Review (0004)**. Billable hours: 847.80; Fees sought: $374,750.50. As contemplated by the Retention Order, the Audit Committee engaged Heller Ehrman to conduct an independent investigation of (i) certain accounting matters in connection with entries on NCF's books, records and financial statements, which included the issues giving rise to NCF's need to restate its 2006 interim financial statements and its valuation of residual interests in securitizations, and (ii) sales of stock by NCF insiders other than Michael Sachs (the "Investigation"). Within the scope of the Investigation, Heller Ehrman ultimately examined three issues: accounting for NCF's repurchase reserve with respect to loans it had originated and sold, accounting for the valuation of NCF's residual interest in securitizations, and disclosure/insider trading issues.

7.    *Repurchase Reserve.* The initial focus was to analyze NCF's accounting for its repurchase reserve, an issue that had first been flagged by NCF's new Chief Financial Officer and that had become the basis for NCF's February 7, 2007 announcement that it would be restating certain financial results. Specifically, Heller Ehrman investigated, among other things, the accounting errors concerning NCF's allowance for loan repurchase losses. The repurchase reserve investigation focused on changes to the reserve methodology in the second and third quarters of 2006, why the changes were made, by whom, and the impact of those changes, if any, on earnings and management compensation. It also considered the impact of NCF's failure in each of the first three quarters of 2006 to estimate accurately the number of outstanding and potential repurchase claims, and consequently the failure to establish sufficient reserves for losses relating to unprocessed repurchase claims from prior periods, referred to as the repurchase

6

claim "backlog." Data gathered in connection with this work also allowed
PricewaterhouseCoopers ("PwC") to make observations regarding possible errors in NCF's
financial statements for the fiscal year ended December 31, 2005. Virtually all of the witness
interviews focused on this topic were completed before the Petition Date; however, Heller
Ehrman interviewed additional witnesses and conducted follow-up interviews of individuals with
information concerning the financial statement issues postpetition to ensure a thorough
investigation had been performed.

8.      *Residual Interest.* During March, in the midst of the Investigation into the
repurchase reserve, KPMG[4] raised a question about NCF's valuation of its residual interest in
pre-2003 securitized loans. At the direction of the Audit Committee, the Investigation was
expanded to include KPMG's question and eventually an even fuller analysis of NCF's residual
interest valuations. To explore this issue, Heller Ehrman conducted numerous interviews of
NCF personnel involved in the valuation process and reviewed documents that outlined the
valuation methodology, discussed changes to the methodology, or discussed the resultant value.
Again, while a number of these witness interviews were conducted before the Petition Date,
Heller Ehrman continued interviewing some individuals postpetition, as necessary to obtain
additional information.

9.      The residual interest investigation identified individuals responsible for
constructing and maintaining the valuation models and the financial reporting of the residual
interest valuations from late 2004 forward. Loss and prepayment speed assumptions for each of
the pre-2003 deals were examined to determine if changes were made to those assumptions from
late 2004 through to the present, and if so, whether at any time NCF had stopped making

---

[4] KPMG resigned as NCF's auditors on April 27, 2007.

changes. Documents were reviewed and interviews conducted to determine why changes were
or were not made.

10.    Heller Ehrman and PwC also considered whether another valuation assumption—
the assumption that at the call date the loans could be sold at 100% of par—was valid prior to the
fourth quarter of 2006. Documents were reviewed and interviews conducted to determine who
was responsible for applying the assumption and whether there existed information suggesting
that the assumption was not valid. Data gathered in connection with this work also allowed
PricewaterhouseCoopers ("PwC") to make observations regarding possible errors in NCF's
financial statements for the fiscal year ended December 31, 2005

11.    *Insider Trading and Disclosure Issues.* As Heller Ehrman attorneys investigated
the repurchase reserve and residual interest issues, they identified several issues about NCF's
finances and performance during 2006 and evaluated whether NCF had made timely and proper
disclosures to investors about those issues. Heller Ehrman then looked into the extent to which
certain insiders had knowledge of any material, non-public information relating to those issues at
the time of any trades. Aspects of the following issues received attention as part of Heller
Ehrman's insider trading investigation:

- inadequate reserves for losses on repurchased loans;
- growing stockpile of repurchases and "scratch and dent" loans and the valuation of the loan portfolio;
- increasing levels of first or early payment defaults, repurchase claims, and repurchases, and related liquidity issues;
- possible overvaluation of residual interests in pre-2003 securitizations;
- concerns about future business prospects;

8

- mixing of real estate and loan reserves; and

- possible understatement in reserve for loans held for investment.

12.    In addition to the witness interviews, the Investigation process included:  (i)
accessing databases containing over 1.3 million NCF documents; (ii) collecting, searching and
reviewing over 665,000 electronic and non-electronic documents (both hard copy and emails);
and (iii) examining such documents, records and financial statements to determine whether
certain sales of stock by insiders during 2006 constituted insider trading.  Attorneys then
prepared a chronology of the events they identified during their Investigation concerning the
insider trading and disclosure issues and delivered it to the SEC and the Examiner.

13.    Based upon the information gathered by Heller Ehrman and PwC, the Audit
Committee could assess potential wrongdoing, determine if any adverse employment action was
warranted, and evaluate what modifications to NCF's internal controls were necessary.

14.    **Reporting - Memoranda & Presentations (0005).**  Billable hours:  827.10; Fees
sought: $406,628.00.[5]  After Heller Ehrman completed the interviews and document review
discussed above, it was in a position to immediately use the results of those interviews or to
transform the notes of witness interviews it had conducted both pre- and postpetition into
memoranda that could be used by other interested parties.  Accordingly, Heller Ehrman's
postpetition services in this category during this Compensation Period related to preparing
approximately 34 witness interview memoranda.[6]  These detailed memoranda were shared with

---

[5] A portion of the fees sought in this category could arguably have been billed under Project
0004 ("Investigation – Interviews and Document Review"); however, since not all services fit neatly
within one or another of the designated Project, there is some overlap.

[6] Another four memoranda were prepared and delivered in July, and an additional 11 were
prepared and delivered in August.  Heller Ehrman is not seeking compensation for those 15 memoranda at
this time.

and delivered to Debtor's counsel, the Committee, the Examiner, the Securities and Exchange

Commission ("SEC") and the United States Attorney's Office for the Central District of

California ("USAO"). Therefore, neither the USAO nor the Examiner was required to duplicate

the interviews, which would have in any event been extremely difficult when employees were

departing on a regular basis and employees were becoming less willing to cooperate in light of

NCF's deteriorating financial condition.

15.    At the request of the SEC, and with the authorization of NCF, Heller Ehrman

prepared a written memorandum describing the process followed in the internal Investigation,

addressing topics such as the documents reviewed, search terms employed, witnesses

interviewed, dates of interviews, and other process-related matters.

16.    In addition, in response to inquiries by the SEC and the USAO, Heller Ehrman

prepared an oral and visual presentation, lasting approximately three hours, relaying what Heller

Ehrman and PwC had learned during the Investigation. Heller Ehrman attorneys and PwC

representatives made this presentation to the SEC and USAO on May 1, 2007, to the Creditors

Committee on May 30, 2007, and to the bankruptcy Examiner (and additional representatives of

the Creditors Committee) on June 19, 2007.

17.    All of these interested parties (and NCF) had expressed a sense of urgency about

completing and communicating the results of the internal Investigation. To accommodate this

expedited time schedule, Heller Ehrman devoted substantial time and resources to this Project

and has now substantially completed its engagement. Shortly after this Compensation Period,

the results of its internal Investigation and the report described in Paragraph 10 above were

delivered to the SEC and the Examiner.

10

18.     **Audit Committee Meetings - Preparation & Communication (0006).** Billable hours:  123.80; Fees sought: $78,600.00.  During this Compensation Period, Heller Ehrman consulted with the chair of the Audit Committee and attended numerous informal and at least 22 formal meetings of the Audit Committee to discuss in detail the progress, status and results of the Investigation (including the various accounting issues and insider trading), various bankruptcy and other issues pertaining to continuation of the Investigation and certain SEC filings proposed by NCF that related to the investigation and related matters.  This required the preparation, assembly and summarization of materials from interviews, consultation with PwC and coordination with internal and outside NCF counsel.  Heller Ehrman attorneys prepared, reviewed and circulated minutes of Audit Committee meetings and coordinated with NCF counsel with respect to the minutes.  Heller Ehrman also followed up on tasks arising from these meetings, including the preparation of a chronology and other materials concerning the Investigation and communications with the Examiner.

19.     **Retention & Fee Applications (Heller Ehrman) (0007).** Billable hours: 102.00; Fees sought: $55,837.00.[7]  The fees in this category primarily relate to (i) preparing the Debtor's application to retain Heller Ehrman and (ii) addressing the UST's concerns regarding the scope of Heller Ehrman's engagement.  Minimal time in this category was devoted to addressing fee cap issues raised by the Committee.

20.     After the Debtors filed the Application, the United States Trustee ("UST") informally raised concerns about whether Heller Ehrman's representation of KPMG in matters unrelated to these bankruptcy cases created a conflict sufficient to disqualify Heller Ehrman as

---

[7] Heller Ehrman also spent approximately 20 hours reviewing and analyzing conflicts and addressing other issues necessary to be retained in this case, with a time value of **$9,667.50**, for which Heller Ehrman is not seeking compensation.

11

special counsel under 11 U.S.C. §327(e), except with respect to the insider trading investigation. Despite Heller Ehrman's provision of written and oral assurances—based upon substantial legal research under §327(e) and support from the Audit Committee, the Committee, the Examiner and the SEC—that no disabling conflict existed, the UST filed a limited objection to Heller Ehrman's employment. In response, during this Compensation Period, Heller Ehrman commenced the preparation of a detailed response to the limited objection. The Court ultimately overruled the UST's objection in its entirety and authorized Heller Ehrman's employment retroactively to the Petition Date.

### Valuation of Services

21.     Attorneys and paraprofessionals of Heller Ehrman have expended a total of 1923.20 hours in connection with this matter during the Compensation Period, as further detailed in the chart attached hereto as Exhibit C. The reasonable value of the services rendered by Heller Ehrman to the Audit Committee during the Compensation Period at Heller Ehrman's normal hourly rates for work of this character is $924,414.50.[8]

22.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Heller Ehrman is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under Chapter 11.

---

[8] This amount does not include Heller Ehrman's voluntary reduction of a total of **$25,551.50** in fees ($15,884.00 in fees associated with services rendered to the Audit Committee and $9,667.50 in retention-related fees described in footnote 5 above), for which Heller Ehrman is not seeking compensation.

12

**Actual and Necessary Expenses**

23.    The $23,662.82[9] in actual and necessary expenses incurred by Heller Ehrman

during the Compensation Period are summarized in the chart attached hereto as Exhibit D and

are further detailed on pages 4 – 22 of the Project 0008 ("Administrative Matters") Billing

Statement.

24.    Heller Ehrman typically charges its non-bankruptcy clients $0.17 per page for

photocopying expenses, but to comply with the Bankruptcy Local Rules has reduced that charge

for the Debtors to $0.10 per page.  Heller Ehrman charges all of its clients, including the

Debtors, $1.00 per page for outgoing facsimiles, in accordance with the Bankruptcy Local Rules.

Actual long-distance carrier charges for outgoing facsimile transmissions are reflected in the

long-distance telephone charges.  Heller Ehrman seeks compensation for computerized legal

research ("CLR") services at actual cost, as best estimated by Heller Ehrman.  The method by

which Heller Ehrman's CLR vendors charge for their services is not tied to specific client usage

and does not permit Heller Ehrman to determine the precise actual cost for CLR services for any

specific utilization of CLR services.

25.    In this case, Heller Ehrman has not charged for expenses for:  (a) office overhead;

(b) secretarial overtime; (c) charges for after-hours and weekend air conditioning and other

utilities; (d) word processing and similar clerical functions; and (e) amenities such as

newspapers, shoe shines, dry cleaning, etc., while Heller Ehrman personnel are away from the

office.

---

[9] This amount does not include **$1,791.20** in expenses associated with this engagement for which
Heller Ehrman is not seeking reimbursement.

13

## **Required Disclosures**

26.    Heller Ehrman's compensation and expense reimbursement requested have been billed at rates, in accordance with practices, no less favorable than those customarily employed by Heller Ehrman and generally accepted by Heller Ehrman's clients.  Heller Ehrman believes that the hourly rates of the attorneys and paralegals practicing at Heller Ehrman are consistent with those prevailing in the respective communities in which Heller Ehrman attorneys and paralegals practice, for similar services of lawyers and paralegals of reasonably comparable skill and reputation.

27.    In a bankruptcy case such as this, where time is of the essence, employee witnesses are departing daily, and voluminous documents must be reviewed on an expedited basis, it is customary for Heller Ehrman attorneys and paraprofessionals to communicate the current status of the document identification and review projects to all participants assigned to the tasks.  Therefore, during this Compensation Period, Heller Ehrman attorneys held periodic telephonic conference calls with more than two participants to effectively report on the status of the Investigation, to coordinate their future efforts, and to keep track of other tasks necessary to complete the investigation.  Heller Ehrman made efforts to conserve NCF's resources by limiting conference call participation to attorneys who had information to communicate to other team members or to the team leaders.  In fact, certain attorneys attended conference calls only in part where their input or status update pertained solely to a particular issue or issues, and dropped off the call after reporting on matters related to their area of expertise and responsibility.  Failure of the working group to communicate during the Investigation could have resulted in duplication of efforts on the part of the Heller Ehrman team, or in missing critical deadlines imposed by the Audit Committee, the SEC and the Creditors' Committee.

14

28.    All services for which compensation is requested by Heller Ehrman were performed for or on behalf of the Debtors.

29.    Heller Ehrman has receive no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between Heller Ehrman and any other person other than the shareholders of Heller Ehrman for the sharing of compensation to be received for services rendered in these cases.

30.    To the best of Heller Ehrman's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2, and the Administrative Order.

<u>Conclusion</u>

WHEREFORE, Heller Ehrman respectfully requests that the Court enter an order providing that for the Compensation Period, an allowance be made to Heller Ehrman in the sum of **$739,531.60** (80% of $924,414.50) as compensation for necessary professional services rendered, and the sum of **$23,662.82** as reimbursement of actual and necessary costs and expenses for a total of $763,194.42 and that the Debtors be authorized to promptly pay such sums to Heller Ehrman, and for such other and further relief as this Court may deem just and proper.

Dated:  August 23, 2007
        San Francisco, California

Peter J. Benvenutti (CA Bar No. 60566)
Admitted *Pro Hac Vice*
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104
Telephone:  (415) 772-6000
*Counsel for Audit Committee of the Board of*
*Directors of New Century Financial Corporation*

15

## VERIFICATION

STATE OF DELAWARE     )
                          ) SS:

COUNTY OF NEW CASTLE    )

         Michaeline H. Correa, after being duly sworn according to law, deposes and says:

         a)      I am an associate with the applicant firm, Heller Ehrman LLP, and have been admitted to appear before this Court.

         b)      I am familiar with the work performed on behalf of the Debtors by the lawyers in the firm.

         c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I have reviewed Del. Bankr. L.R. 2016-2, and submit that the Application substantially complies with such order.

                                             _Michaeline Correa_
                                         Michaeline H. Correa (CA Bar No. 215215)

SWORN AND SUBSCRIBED before me
this 23rd day of August, 2007.

_Darlene Giusti_
Notary Public
My Commission Expires:   **9-11-08**

DARLENE GIUSTI
Commission # 1512563
Notary Public - California
San Francisco County
My Comm. Expires Sep 11, 2008