## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : **Chapter 11** |
| | : |
| **NEW CENTURY TRS HOLDINGS, INC.,** | : **Case No. 07-10416 (KJC)** |
| **a Delaware Corporation, et al.,** [1] | : |
| | : **Jointly Administered** |
| **Debtors.** | : |
| | : **Objection Deadline: TBD** |
| | : **Hearing Date: TBD** |

## MOTION OF MICHAEL J. MISSAL, EXAMINER, FOR AN
## EXTENSION OF TIME TO FILE HIS REPORT WITH THE COURT

Michael J. Missal, the Examiner appointed in the above-captioned jointly administered

Chapter 11 cases, by and through his undersigned counsel, hereby moves, pursuant to Rule

9006(b)(1) of the Federal Rules of Bankruptcy Procedure and Rule 9006-2 of the Local Rules of

this Court, for an extension of time until March 7, 2008, to submit the report required to be filed

by the Examiner pursuant to this Court's June 1, 2007 Order Denying in Part and Granting in

Part the Motion of the United States Trustee for an Order Directing the Appointment of a

Chapter 11 Trustee, or in the Alternative, an Examiner (the "June 1 Order"). As described

---

[1]    The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a/ Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century REO III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership. The Debtors are referred to collectively below as "New Century" or "the Company."

below, the Examiner believes the requested extension of time is necessary and appropriate because of the scope and complexity of the relevant issues, and because of difficulties that he has had in obtaining promptly documents and information from certain sources, including New Century and KPMG LLP ("KPMG"), formerly outside auditors for certain of the Debtors. As a result, the Examiner has not been able to complete his investigation. In should also be noted that, as directed by the June 1 Order, the Examiner has spent considerable time and resources investigating the possible post-petition unauthorized use of cash collateral by the Debtors. As discussed below, this part of the investigation could have been significantly curtailed if the Debtors had been more forthright with the Examiner.

In support of the Motion, the Examiner respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On June 1, 2007, this Court directed the United States Trustee to appoint an examiner to:

> (a) investigate any and all accounting and financial statement irregularities, errors or misstatements, including but not limited to such irregularities, errors or misstatements that (i) gave rise to the announced need to restate the Debtors' financial statements for the first three quarters of 2006 and/or (ii) led the Debtors' management and Audit Committee to conclude that it was more likely than not that pre-tax earnings in the 2005 financial statements were materially overstated, and identify and evaluate any claims or rights of action that the estates might have arising from or relating to such irregularities, errors or misstatements, (b) investigate any possible post-petition unauthorized use of cash collateral by the Debtor, and (c) otherwise perform the duties of an examiner set forth in section

1106(a)(3) (as limited by [the Court]) and 1106(a)(4) of the Bankruptcy Code (collectively the "Investigation").

June 1 Order at 2-3 (footnote omitted).

3.      The Court directed the Debtors and "all of the Debtors' affiliates, subsidiaries and other companies under their control" and the Examiner to "mutually coordinate and cooperate in connection with the performance of any of the Examiner's duties." *Id.* at 5.

4.      The Court also directed the Examiner to "prepare and file a report, as required by 11 U.S.C. § 1106(a)(4), within 90 days of the date of appointment, unless such time shall be extended by order of the Court, . . . ." *Id.* at 3.

5.      On June 5, 2007, the United States Trustee appointed Michael J. Missal to be the Examiner. The Court approved that appointment on June 7, 2007.

### The Investigative Process

6.      Since the Court approved his appointment on June 7, 2007, the Examiner and his professionals[2] have been reviewing the circumstances that gave rise to New Century's need to restate its financial statements for the first three quarters of 2006 and its possible overstatement of 2005 pre-tax earnings, as well as whether there are other relevant financial reporting, accounting, and/or internal control issues that bear on the matters identified by the Court in the June 1 Order. Further, as directed in the June 1 Order, the Examiner has also been investigating the possible post-petition unauthorized use of cash collateral by the Debtors. The Examiner intends to assess each of the relevant issues in a thorough, objective, fair and responsible manner.

7.      Given the breadth and complexity of the relevant issues, the 90-day period prescribed in the June 1 Order to finish the investigation of all issues was extremely challenging.

---

[2]      The Examiner engaged Kirkpatrick & Lockhart Preston Gates Ellis LLP ("K&L Gates") as his counsel and BDO Seidman LLP as his accounting experts and financial advisor.

The ability of the Examiner to complete or even substantially complete the investigation within 90 days was made more difficult by the cooperation issues described below.

8.      Before commencing the investigation, as required by the June 1 Order, the Examiner and his counsel met and conferred on June 14, 2007 with representatives of the Debtors, the Official Committee of Unsecured Creditors ("Committee"), and the Office of the United States Trustee. During this "meet and confer" session, the Debtors told the Examiner, among other things, that he would have complete access to documents and information that had been gathered by New Century with respect to an investigation by the Special Investigation Committee of the Company's Board of Directors (the "SIC").

9.      Thereafter, the Examiner and his professionals met and communicated on a number of occasions with Heller Ehrman LLP ("Heller"), counsel to the SIC, as well as PricewaterhouseCoopers, the financial advisors engaged to assist the SIC, in an effort to learn the extent and details of their work and to avoid duplication of effort. Pursuant to those discussions, the Examiner and his professionals requested that Heller produce to the Examiner many documents collected or generated by the SIC. However, there were significant delays in receiving this information from the SIC. Counsel for the Debtors required that all documents related to the work of the SIC be reviewed by them before being produced to the Examiner. This delayed production for a number of weeks, and the Examiner still does not have access to all of the requested materials, even though they were gathered by the SIC well before the meet and confer on June 14.

10.      Given that the mandate of the Examiner is broader than that of the SIC, the Examiner and his professionals also need access to additional documents and information from New Century and certain of its present and former officers, directors and employees. Following

the initial meet and confer, the Examiner has made a number of requests for documents, information and interviews, many of which remain outstanding at this time.

11.    The Examiner also requested documents and information from KPMG. As the Court is aware, KPMG refused to cooperate and produce voluntarily any documents or information to the Examiner. This refusal compelled the Examiner to seek, pursuant to Rule 2004, authority to serve one or more subpoenas on KPMG and/or its present or former personnel. On August 1, 2007, the Court granted the Rule 2004 Motion filed by the Examiner, and the Examiner served a subpoena on KPMG on that same date. Although KPMG has now provided some information to the Examiner, there are still a number of requests that remain outstanding. The Examiner does not question the right of KPMG to insist upon the receipt of a subpoena before producing documents. However, this process necessarily delayed important aspects of the investigation.

12.    To date, the Examiner and his professionals have gathered from numerous sources, and commenced a review of, approximately 1.2 million pages of documents and approximately 1.2 million electronic files in connection with the investigation. In addition, the Examiner's professionals have conducted approximately 25 interviews of individuals possessing relevant information, many of whom were interviewed on more than one occasion.

13.    The Examiner has attempted to conduct his investigation in the most efficient manner possible. Where appropriate, he has sought to leverage the prior or contemporaneous document collection and analytical efforts of others who have reviewed, or are reviewing, conduct at New Century during the periods leading to its bankruptcy filings.

14.    Nonetheless, the scope and complexity of the relevant issues, as well as the difficulties in obtaining information, are such that it has not been possible for the Examiner to

complete the investigation outlined in the June 1 Order within the prescribed 90-day period. The Examiner respectfully submits that an appropriate investigation of those matters will require additional time, as set forth in this Motion.

### Delayed Production of Documents and Information

15.     The Examiner has made considerable efforts to make reasonable requests of New Century regarding the production of documents and information. The Examiner is cognizant of the burdens and costs associated with the production of a large volume of data. He also understands that there are ongoing governmental inquiries and private lawsuits that involve one or more issues relevant to his investigation. Consistent with his mission, as prescribed by the Court, the Examiner has sought to exhibit appropriate sensitivity to these circumstances in his dealings with New Century and in his shaping, sequencing and prioritizing of requests for data.

16.     The Examiner notes that New Century has produced to him a large number of documents. However, even recognizing the various demands on the Company, some requests that have been made by the Examiner for potentially significant information took a longer period of time to satisfy than seems reasonable. In fact, many of the Examiner's requests for relevant documents and information remained outstanding for an extended period of time.

17.     Perhaps most significantly, the Examiner still has not received a substantial portion of the e-mail database compiled by New Century in connection with the investigation by the SIC long before the Examiner was appointed. E-mails typically are important sources of information in any investigation of the type being conducted by the Examiner and his professionals. At the June 14, 2007 meet and confer session, New Century informed the Examiner that he would have access to the information gathered by and for the SIC, including the database containing e-mails.

18.     Notwithstanding the earlier assurances by counsel for New Century, the Examiner has not been given complete access to the e-mail database. In late June 2007, New Century informed the Examiner that it would exclude from production potentially privileged e-mails. The Company then ran search terms through the e-mail database and withheld approximately 700,000 e-mails, roughly 40 percent of the total. This seemed to be an extremely large number of e-mails, particularly because the Examiner was told by counsel for the Debtors that New Century would not be withholding privileged information on any accounting or financial reporting issues, but rather was only withholding privileged information on the discrete issues of cash collateral and two pending litigation matters.

19.     After the Examiner raised a concern about the Debtors withholding such a large amount of potentially important information, New Century agreed in mid-July to run more limited search terms in an effort to reduce the number of e-mails that were withheld. The Examiner has had frequent conversations with New Century representatives since that time about the status of the production of e-mails. However, New Century did not produce to the Examiner any additional e-mails from this database until August 31. Since that date, New Century has only produced less than 20 percent of the e-mails previously withheld. New Century is still withholding approximately 600,000 e-mails as potentially privileged. New Century has not provided a time-table with respect to the production of any additional e-mails. This delay is particularly problematic as it will be necessary to run multiple searches of the database as additional e-mails are added.

20.     A number of other requests, including requests for documents that were readily available to the Company, have similarly taken more time to fulfill than seems reasonable. For example, it took approximately four weeks to obtain a copy of a January 2007 employee

directory, it took more than eight weeks to obtain notes of Board meetings from 2007, it took approximately four weeks to obtain reports prepared in April 2007 by an investment banker to New Century that contained background information on certain business operations at New Century, and it took almost five weeks to obtain certain correspondence between the Company and regulators. Additionally, the Examiner has not yet received access to the vast majority of e-mails and other documents for periods prior to and subsequent to the time period investigated by the SIC.

21.     In addition, scheduling certain interviews has been challenging and time consuming. Some persons have refused to cooperate voluntarily with the Examiner, and it will likely be necessary to seek to compel their testimony through Rule 2004 motions. A number of persons who the Examiner will want to interview have separate counsel and/or are no longer employees of the Debtor, which is expected to add to the time it takes to schedule an interview.

### The Cash Collateral Issue

22.     The Examiner has a number of serious concerns with respect to New Century's cooperation regarding the investigation related to possible cash collateral issues. The June 1 Order not only required New Century promptly and reasonably to provide information to the Examiner, but it also required the Debtors to be forthright with the Examiner. The Examiner believes that New Century has failed to be forthright with respect to the cash collateral issue.

23.     As the Court is aware, on May 16, 2007, the Debtors filed a Motion for Order to Provide Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363(b)(1) ("Adequate Protection Motion"), in which they described a "growing realization" that certain issues with respect to claims made against the Debtors "are more complex and [that] the amounts

involved are significantly greater than the Debtors appreciated when these cases were filed."[3]  In doing so, New Century questioned whether the counterparties to certain master repurchase agreements (the "Repurchase Counterparties") had actually purchased residential mortgage loans from New Century and it advised the Court that if the Repurchase Counterparties actually were lenders (as opposed to purchasers), then the Court would need to decide whether monies collected by New Century on such loans constituted "cash collateral or property of the estates."[4]

24.     Following a May 30, 2007 hearing on the Adequate Protection Motion, during which there was discussion about whether this possible cash collateral issue should have been raised earlier by New Century, the Court directed the Examiner to investigate and report regarding "any possible post-petition unauthorized use of cash collateral by the Debtor . . . ." Order at 2.[5]

25.     The Examiner expected to complete the cash collateral investigation within the 90-day period specified in the June 1 Order.  The cash collateral investigation was organized and conducted based on information provided to the Examiner by New Century.  As a result, during the period June 14, 2007 through August 30, 2007, the Examiner interviewed 15 persons, many on multiple occasions, and reviewed and analyzed thousands of pages of documents.  The Examiner believed that by late August 2007, he had received sufficient information to reach certain preliminarily conclusions and had prepared a draft of his report on that issue.

---

[3]     Adequate Protection Motion at 2.

[4]     Adequate Protection Motion at 8.

[5]     The Court did not specifically ask the Examiner to investigate the legal rights of any party with interests affected by the Adequate Protection Motion, including whether New Century's repurchase transactions were true sales of residential mortgage loans or were effectively financings.  Accordingly, the Examiner has not made, and he does not intend to make, any such findings.

26.     In an effort to confirm these conclusions and to give New Century an opportunity to provide any additional information pertaining to this issue, the Examiner and his counsel met with New Century representatives on August 31, 2007. After the Examiner summarized his preliminary findings and conclusions, the New Century representatives informed the Examiner for the first time of privileged information that the Examiner believes was materially inconsistent with information previously and consistently provided to the Examiner by New Century. The Examiner recognizes and respects the right of New Century to maintain any applicable privilege. Nevertheless, the Examiner is concerned about receiving so late in the investigation information that conflicts materially with earlier information that caused him to conduct the investigation in a certain manner.

27.     The Examiner was not provided any documentary support for the new and conflicting information provided at the August 31 meeting. However, if the new information provided by the New Century representatives on August 31 is accurate, then it probably would have obviated the need for much of the cash collateral portion of the investigation. This would have obviously reduced significantly the costs of the investigation to date. The Examiner requested on September 1 that New Century provide documentary support for the new information, but nothing has been produced as of the filing of this Motion.

### Conclusion

28.     If the Motion for an Extension is granted, the Examiner hopes that the cooperation he has been receiving from the Debtors and others will improve so that he can complete his investigation in a timely and efficient manner.

29.     During the course of his investigation to date, the Examiner has not yet identified any additional areas or topics which should be investigated, aside from those identified in the June 1 Order.

30.     The Examiner believes the requested extension of time to March 7 is reasonable and necessary.   The Examiner hopes to complete his cash collateral investigation promptly. However, the investigation of the other issues will require the continued review and analysis of an enormous amount of documents, as well as the interviews of a large number of individuals. Given the difficulties in receiving information and scheduling interviews, some interviews likely will not be completed before early 2008.   The Examiner will need time beyond that to finalize the analysis of the information received, particularly given the complexity of the accounting and financial reporting issues, and to prepare a report.

**WHEREFORE**, the Examiner respectfully requests that this Court enter an Order (i) extending the time period for the Examiner to prepare and file a report, as required by 11 U.S.C. § 1106(a)(4), up to and including March 7, 2008, unless such time is further extended by order of the Court, and (ii) granting the Examiner such other and further relief as is just and proper.

Dated: Wilmington, Delaware
September 5, 2007

**SAUL EWING LLP**

By:_____

Mark Minuti (DE No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6840

and

**KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP**
Edward M. Fox, Esq.
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Counsel to the Examiner