IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | CASE NO. 07-10416-KJC |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC., | § | Chapter 11 |
| *ET. AL.,* | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **RE: DOCKET NO. 2566 & 2656** |
| | § | |

**AMENDED OBJECTION OF POSITIVE SOFTWARE SOLUTIONS, INC., TO DEBTORS'
MOTION FOR ADDITIONAL SANCTIONS AGAINST POSITIVE SOFTWARE SOLUTIONS,
INC. FOR FURTHER VIOLATION OF THE AUTOMATIC STAY**

Positive Software Solutions, Inc. ("Positive Software") hereby objects (the "Objection")

to the Debtors' Motion for Additional Sanctions Against Positive Software Solutions, Inc. for

Further Violation of the Automatic Stay [Docket No. 2566] (the "Susman Stay Motion").  In

support of the Objection, Positive Software respectfully represents as follows:[1]

## I.    SUMMARY[2]

1.    The automatic stay does not stay a party from continuing or bringing a pre-

petition claim against a non-debtor party, even if the same or similar claim lies against the

debtor, where the relief sought is not against the debtor's property interest.  Positive Software

has sued Susman and certain *former* officers of the Debtors for fraud committed in connection

with pending litigation.  Positive Software has not named the Debtors as defendants in that suit,

nor does Positive Software seek to recover from any property of the Debtors' estates.  In short,

Positive Software has not violated the automatic stay.

---

[1]    All references to statutory provisions unless otherwise indicated shall be to the Bankruptcy Code, title 11
United States Code.

[2]    This Amended Objection is filed to clarify certain points made in Positive Software's original Objection to
the Susman Stay Motion.

2.      The Debtors' putative outrage that Positive Software seeks redress from the Debtors' litigation counsel masks several fundamental flaws in the Debtors' position. The most glaring of these flaws is the Debtors' reliance on cases in which a debtors has sought to have a bankruptcy court *extend* the injunctive protections afforded under the automatic stay to a non-debtor. The extension of the automatic stay to a non-debtor party may be obtained under section 105(a) or section 362 where the continued prosecution of the claim against the non-debtor would either interfere in the debtor's reorganization efforts or *require* the debtor to indemnify the non-debtor defendant. The Debtors do not seek to extend the stay. Nor have the Debtors presented any judicially cognizable grounds for doing so. Even if at some future point in time the Debtors were able to obtain affirmative injunctive relief protecting Susman from suit, that relief would not entitle the Debtors to recover damages against Positive Software for prior actions. Accordingly, the Susman Stay Motion should be denied.

## II.      FACTS[3]

---

[3]        In connection with those prior proceedings, the parties stipulated to the admission of various motion papers and orders entered of record in the proceeding commenced by Positive Software against the Debtor Defendants and other Defendants (the "District Court Action"), which were presented as exhibits to the papers filed by the parties in proceedings before this Court. Positive Software requests that this Court take judicial notice of all motions and orders previously presented, including:

- License Agreement, attached as Exhibit "A" to Positive Software's notice of filing of exhibits to its motion for relief from stay (the "Exhibit Notice") [Docket No. 1969].

- Preliminary Injunction, attached as Exhibit "B" to the Exhibit Notice.

- Vacatur Order, attached as Exhibit "C" to the Exhibit Notice.

- Motion to Confirm, attached hereto as Exhibit "A" to Positive Software's reply (the "Reply") [Docket No. 2171].

- Motion to Vacate, attached as Exhibit "B" to the Reply.

- First Motion to Amend, attached as Exhibit "C" to the Reply.

- Arbitration Award, submitted separately under seal [Docket No. 2171].

WM1A 105438v3 09/05/07

3.      As the Debtors note, the facts involved in the original federal court action by Positive Software against Debtor New Century Mortgage Corporation ("New Century") and certain other Debtors (collectively, the "Debtor Defendants") (as well as certain individuals) have been previously presented to this Court in two prior related bankruptcy matters: (i) Positive Software's motion for relief from stay; and (ii) the Debtors' cross-motion for alleged violation from the automatic stay. Certain facts merit repeating or have not been previously stated.

**A.      The District Court Action.**

4.      Positive Software brought the District Court Action against the Debtor Defendants and certain of its now-former officers to obtain monetary and injunctive relief from the Defendants' implementation of a concerted scheme to copy Positive Software's copyright-protected software application and to use the software to derive their own allegedly proprietary (but infringing) software.  Positive Software asserted claims for among other things, copyright infringement, misappropriation of trade secrets, misappropriation of intellectual property, breach of contract, fraud, and conversion.

5.      In the course of the District Court Action, the Texas District Court issued its Preliminary Injunction (entitled "Memorandum Order and Opinion") providing for a preliminary injunction and protective order in favor of Positive Software and against the Debtor Defendants.[4] In its ruling, the Texas District Court found that Positive Software had demonstrated a "substantial likelihood of success on the merits of its claims" that New Century's alleged proprietary software infringed on Positive Software's copyrights.[5] Finding that Positive Software had demonstrated other elements entitling it to injunctive relief, the Texas District Court

---

[4]        *See* Preliminary Injunction at 9-10.

[5]        *Id.* at 9.

enjoined New Century and any other person acting with New Century from using Positive Software's software programs. The District Court also ordered the parties to arbitrate Positive Software's remaining claims.[6]

6.      In that subsequent arbitration proceeding, the arbitrator issued its Arbitration Award, finding against Positive Software on all of its claims and awarding the Defendants approximately $1.5 million in damages.[7]

7.      Various issues arose in the District Court Action regarding withholding of discovery by the Debtor Defendants and misrepresentations made by Susman. Among other things, as a result of the Debtor Defendants' inadvertent production of documents after the conclusion of the Arbitration, the Texas District Court's finding that Positive Software had made a prima facie showing that New Century and its counsel had engaged in fraud in connection with discovery matters and had thus waived attorney-client and work-product privileges. [8]

8.      On May 5, 2004, the Arbitrator (without the benefit of documents and other evidence withheld from the proceeding by the Defendants), ruled against Positive Software and granted judgment of approximately $1.5 million in favor of the Defendants. On May 6, 2004, the Defendants moved for confirmation of the award (the "Motion for Judgment"). On May 28, 2004, Positive Software moved to vacate the Award on the grounds of undisclosed contacts between the arbitrator and Susman. Positive Software later filed a motion for leave to amend its motion to vacate to on the grounds that New Century and its counsel had engaged in fraudulent and other wrongful conduct in the course of the arbitration proceeding.

---

[6]      *Id.* at 16-17.

[7]      *See* Arbitration Award at 84-85.

[8]      *See* Order dated January 21, 2004 at 8-9 [District Court Docket No. 136] (a true and correct copy of which is attached as Exhibit "A").

9.    On September 28, 2004, the Texas District Court ordered that the Arbitration Award be vacated based upon the Arbitrator's undisclosed contacts with Susman. In that ruling, the Texas District Court found that it was unnecessary to rule on the independent fraud and wrongful conduct claims by Positive Software.

10.    The Defendants appealed the vacatur to the Fifth Circuit. The three-judge panel hearing the appeal affirmed the vacatur. On review *en banc*, however, a majority of the appellate court reversed on the grounds that Positive Software had not demonstrated that the prior undisclosed contacts were sufficient as a matter of law to merit vacatur of the award and ordered the case remanded to the Texas District Court. Positive Software moved for Supreme Court review, which was later denied.

**B.    Renewed Litigation.**

11.    With the case back before the Texas District Court, on July 9, 2005, and with the Motion for Judgment once again pending Positive Software once again moved that the Texas District Court permit it to amend its motion to vacate (again, based on the Defendants' fraud and other wrongful acts in the course of the underlying Arbitration). Positive Software did not seek relief from the automatic stay because it believed (as it still believes and maintains) that its actions were defensive only.

12.    Contrary to the Debtors' repeated claims that Positive Software is acting with disregard for the automatic stay, Positive Software filed a motion for relief from the stay [Docket No. 1877] before this Court on July 10, 2007, so that it could commence re-litigation of its affirmative claims against the Debtor Defendants (assuming that it would obtain vacatur of the Arbitration Award). By cross-motion [Docket No. 2171], the Debtors sought damages against Positive Software for violations of the automatic stay, which Positive Software allegedly

committed by the filing of its second motion for leave to amend. By Order entered on August 15, 2007 [Docket No. 2265], this Court denied Positive Software's motion for relief from stay without prejudice. The Court also granted the Debtors' cross-motion. Although Positive Software disagrees with (and has filed an appeal from) the Court's order finding the stay violation, Positive Software notified the Texas District Court by letter of this Court's ruling and has taken no further action against the Debtor Defendants in the District Court Action.[9]

### C.     The Susman Action.

13.     The Debtors contend that the claims in the District Court Action and the Susman Action are identical. This is not the case. The claims against Susman, including Positive Software's intellectual property right claims, all arise from actions committed by Susman and others *after* Positive Software had commenced the District Court Action. But even if the Debtors' contention was correct, it would not entitle Susman to automatic relief under section 362(a)(1).

14.     On August 20, 2007, Positive Software brought an action against Susman and certain individual defendants to the District Court Action on the grounds that those persons had committed fraud and other actionable torts in the course of the District Court Action. That action (the "Susman Action") is currently pending before the Texas District Court (but not before Judge Godbey, who has recused himself). Positive Software's complaint does not name any of the Debtors as party-defendants.[10] Also the Susman Action was filed approximately sixty days before the earliest potential statute of limitations was reached.

### III. ARGUMENT

---

[9]     A true and correct copy of the letter, dated July 9, 2007, is attached hereto as Exhibit "B".

[10]     The Susman Action is docketed as Case No. 3:07-cv-1422.

WM1A 105438v3 09/05/07

15.    The Susman Stay Motion is filled with alleged hyperbolic outrage.  The Debtors assert that Positive Software: (a) has shown "distain" for this Court, (b) engaged in a "desperate attempt to avoid this Court's order denying stay relief", and (c) engaged in a "fanciful attempt to end run this Court's prior order".    The Debtors fail, however, to demonstrate that Positive Software has violated the stay.  Admitting that the Debtors are not parties to the Susman Action and therefore that the action is not directly against them, Positive Software relies on various cases in which courts have *extended* the scope of the automatic stay to non-debtors.  The Debtors, however, do not seek such relief (and indeed, were they to do so, would not be entitled to obtain it).  The Debtors certainly cannot recover actual or punitive damages where Positive Software is not under any current statutory or court-ordered injunction barring the maintenance of an action against Susman.  To do so would violate fundamental substantive due process protections.

A.    **The Susman Action is Not Against the Debtors and Therefore is Not Stayed**.

16.    The Debtors charge that Positive Software has violated section 362(a)(1).  That subsection stays actions or proceedings "against the debtor".  The question raised by the Susman Stay Motion is whether the Susman Action is an action "against the debtor".  It is not.

17.    The natural starting point in determining whether a party is in compliance with a statute is to review and apply the unambiguous terms of that statute to the circumstances in question.[11]  The operative term here is what constitutes an action or proceeding "against" the debtor.  The term "against" is not defined in the Bankruptcy Code, but has been read literrally.  "The plain language of § 362(a)(1) limits the extension of an automatic stay to a 'proceeding against the debtor' ... and courts will generally not extend the automatic stay of proceedings

---

[11]    *See Jewelcor, Inc. v. Asia Commercial Co., Ltd.*, 11 F.3d 394, 398 (3rd Cir. 1993) (holding that "[t]he starting point for construing a statute or rule of procedure is the language of the statute or rule itself").

pursuant to § 362(a)(1) to non-debtor co-defendants."[12] The Third Circuit's position is in accord with the foregoing proposition: "the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."[13]

18.    The Debtors do *not* assert that the Susman Action is a direct action against them. Rather, they assert that if the Susman Action is permitted to proceed, they will be required to become involved in that litigation (without giving any concrete example has to how that would occur). If the subjective need of a debtor to become involved in an action brought against non-debtors was determinative that such an action was "against" a debtor, then any proceeding, including proceedings against guarantors, non-debtor subsidiaries or current or former officers, directors and employees would be subject to the automatic stay absent any affirmative extension of the stay by the bankruptcy court. That proposition has been soundly rejected by the courts.[14] Moreover, Positive Software seeks no relief from the Debtors, and there is no allegation by the Debtors that they will be held liable for any judgment that Positive Software may obtain.

19.    The fundamental flaw of the Debtors' position is that section 362(a)(1) does not enjoin the Susman Action. Positive Software's claims against Susman can only be stayed by order of this Court upon request of the Debtors. There is some disagreement among courts regarding the statutory basis for extending the automatic stay. Finding that section 362 provides no basis to extend the stay, certain courts have held that such relief can only be founded on the

---

[12]    *DeSouza v. PlusFunds Group, Inc.*, 2006 WL 2168478, at 2 (S.D.N.Y. 2006) (a true and correct copy of this case is attached hereto as Exhibit "C"). *See also Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996).

[13]    *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3rd Cir. 1991).

[14]    *See In re Aldan Indus., Inc.*, 2000 WL 357719 , 4-8 (citations omitted) (a true and correct copy of this case is attached hereto as Exhibit "D")

bankruptcy court's section 105(a) equity powers. [15] Other courts have found that section 362 provides, in addition to section 105(a), grounds for a court to extend the protections of the automatic stay to non-debtors.[16]

20.      Regardless, neither body of case law provides any rationale or grounds for affording a non-debtor the protections of the automatic stay *effective* as of the filing of a voluntary bankruptcy petition and, consequently, subjecting a party asserting claims against a non-debtor to liability under section 362 for actual and punitive damages. As discussed in *Aldan Industries*, a detailed and instructive opinion by Judge Sigmund of the Bankruptcy Court for the Eastern District of Pennsylvania, the automatic stay does not enjoin an action against a non-debtor party unless the automatic stay is affirmatively extended by the bankruptcy court.[17]  In *Aldan*, the court rejected the claims by the corporate debtor that arbitration could not proceed against its officers, who were also guarantors of the debt in dispute, even where certain defenses of those officer-guarantors might be common to the debtor. The *Aldan* court noted that a claim against a non-debtor, although that claim might be the same or similar to claims against the debtor, was not stayed under section 362(a)(1).[18]

21.      The *Aldan* court then discussed the "narrow exception to the prohibition against extending the protection of the automatic stay to non-debtor third parties." Those exceptions involve situations where the third-party had an absolute right of indemnity against the debtor and where the stay was necessary to further the debtor's reorganization efforts.   (As to

---

[15]    *See Kreisler v. Goldberg*, 478 F.3d 209, 215 (4th Cir. 2006) ("Section 362 does not provide any basis for a bankruptcy court (or other court) to extend the automatic stay to enjoin the commencement or continuation of actions against non-debtors. Rather, the only basis for obtaining such relief is under section 105(a)"); Patton v. Bearden, 8 F.3d 343, 349 (6th Cir. 1993).

[16]    *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986).

[17]    *In re Aldan Indus., Inc.*, 2000 WL 357719 , 3-4.

[18]    *Id.* at 4.

indemnification-based relief, the *Aldan* court also noted that several other courts had rejected extending the automatic stay to third parties even where those parties were entitled to indemnification by the debtor).[19]

22.    The Debtors assert that the law is "replete" with cases in which courts have found that the automatic stay "applies" to actions in which the debtor is not a named party defendant. Upon scrutiny, it is evident that the case law does not stand at all for what the Debtors contend. All of the cases involving section 362(a)(1) cited by the Debtors either (i) involve the affirmative extension of the automatic stay to non-debtors, (ii) do not involve section 362(a)(1) violations, but rather violations of section 362(a)(3) (enjoining actions against property of the bankruptcy estate), or (iii) do not even involve alleged violations of the automatic stay. And none of the cases upon which the Debtors rely provide any basis for assessing damages for prior conduct where the stay is later extended to cover non-debtors.

23.    The Debtors cite to the Third Circuits' *McCartney* opinion in support of their argument.[20]    As discussed in the *Aldan* case, however, the *McCartney* case involves the *extension* of the automatic stay to a non-debtor based upon the "unusual circumstances" test.[21] The irony of the Debtors' reliance on *McCartney* is that the central issue in that case had nothing to do with whether any party had actually violated the automatic stay. *McCartney*, rather, addressed whether a debtor's objection to a bank creditor's proof of claim for a deficiency on a note on limitations grounds was meritorious.[22]    In that case, the bank creditor failed to file a state court deficiency action against the borrower and the debtor (a guarantor) within the time

---

[19]    *Id.* at 4-5.

[20]    *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506 (3rd Cir. 1997).

[21]    *Id.* at 6-7.

[22]    *Id.* at 3-4.

proscribed by state law. The Third Circuit rejected the debtor's limitations-based objection to

the bank's claim on the basis that the borrower and the debtor-guarantor had to be viewed

essentially as one party and that the automatic stay therefore applied to the debtor as well as the

non-debtor borrower, thus tolling the limitations period regarding the deficiency action. Thus,

by extending the stay, the Third Circuit preserved the proof of claim by the lender against the

debtor from disallowance on limitations grounds.

24.    A Sixth Circuit opinion relied upon by the Debtors, *In re Amedisys, Inc.*, is

inapposite because it addresses an alleged section 362(a)(3) stay violation for continuing

litigation involving property of the estate.[23]   In its opinion, the *Amedisys* court addressed the

circumstances under which the court would be permitted to *extend* the automatic stay against

non-debtors, noting that such extension is only available in limited circumstances only.   The

*Amedisys* court specifically noted that section 362(a)(1) does *not* bar claims against non-

debtors.[24]   The court did hold that the plaintiff's continued prosecution of claims against non-

debtors violated the automatic stay, but *only* because the relief involved rights to a bank account

in which the debtor had an interest:

> Amedisys' [the plaintiff] argument is not persuasive. The district court
> appears unnecessarily to have assumed that the bankruptcy court entered a
> preliminary injunction extending the automatic stay beyond its statutory
> terms, rather than merely enforcing the automatic stay as provided by
> statute. The automatic stay of § 362(a) applies by its terms not only to
> actions against the debtor, *see* § 362(a)(1), but also to actions seeking to
> obtain property of the bankruptcy estate, *see* § 362(a)(3). In *Patton* and
> *Parry,* this court found insufficient basis to *extend* the automatic stay
> beyond the terms of § 362(a)(1). In *Parry,* there was no contention that the
> automatic stay applied by its terms to an action against non-debtors; in
> *Patton,* the court rejected such a contention because the action did not
> seek property of the estate. Here, unlike in *Patton* and *Parry,* the

---

[23]    *See Amedisys, Inc. v. Nat'l Century Fin. Enterprises, Inc.*, 423 F.3d 567 (6th Cir. 2005).

[24]    *Id.* at 577-578.

bankruptcy court determined that the automatic stay already covered the action. ... As a sister circuit has held, "[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the [§ 362(a)(3) ] automatic stay provision.[25]

25.     Thus, the *Amedisys* court held that the continued prosecution of a claim involving the disputed back account violated section 362(a)(3).[26] In other words, it did not matter that the debtor was not named in the underling non-bankruptcy lawsuit.

26.     Here the Debtors do not allege that Positive Software has violated section 362(a)(3) by seeking any recovery against property of the Debtors' estates. Certainly, the monetary relief that Positive Software seeks in the Susman Action is only against non-debtor parties and that relief is not sought against and does not involve property of the Debtors' estates.

27.     The Debtors' reliance on the *Kaiser Aluminum* case is also misplaced.[27] Like *Amedisys*, that case is also best understood as a case involving a section 362(a)(3) property issue. In *Kaiser Aluminum*, a non-debtor entity previously related to the debtor sought a declaratory judgment regarding ownership of insurance premiums. The non-debtor plaintiff did not name the debtor, which had also laid claim to the funds, but only the insurer. Although the court discussed section 362(a)(1) in the context of applying that provision to non-debtors, it independently found that the plaintiff's actions were in violation of section 362(a)(3):

> Thus, KGI [the related plaintiff] essentially seeks a declaratory judgment that any recovery Kaiser Aluminum [the debtor] might obtain from Monument [a subsidiary of KGI] must be paid to KGI. In these circumstances, the Court is persuaded that the Travelers Adversary Action is an action " to obtain possession of ... or to exercise control over property of the estate," and therefore, the

---

[25]     *Id.*

[26]     *Id.* at 578 (holding that the plaintiff's argument regarding the extension of the automatic stay "would require an unwarranted limited of § 362(a)(3)").

[27]     *See In re Kaiser Aluminum Corp.*, 315 B.R. 655 (D. Del. 2004).

Court concludes that the protection of the automatic stay under
Section 362(a)(3) also applies.[28]

28.     Even if *Kaiser Aluminum* could be read to support the application of the

automatic stay to non-debtor parties effective prior to any affirmative order of a bankruptcy

court, it is notable that the non-debtor protections afforded by the *Kaiser Aluminum* court were

based on that fact that the named defendant, an insurance company, did not have any apparent

economic stake in the litigation and that the debtor was the actual stake-holder.[29]    Susman,

however, has a very real economic interest in the outcome of the Susman Action.  If Positive

Software succeeds on its claims, its judgment will lie against Susman and not the Debtors or any

property of the Debtors' estates.

29.     Debtors also rely on *Maaco Enterprises* in support of their section 362(a)(1)

argument.[30]  But that case too is best understood as a section 362(a)(3) case.  In *Maaco*, the

plaintiff franchisor brought suit against the individual non-debtor parties to the franchise

agreement seeking to enjoin the defendants from operating under the franchisor's name.

Although the debtor corporation was not a party to the franchise agreement, it was the entity

using the franchise in its business operations.[31]   Without citing any particular provision of

section 362, the *Maaco* court determined that the impact of any injunction would fall on the

debtor and, therefore, that the injunction proceeding was stayed.[32]

---

[28]     *Id.* at 659.

[29]     *Id.* (finding that the debtor, Kaiser Aluminum, was the owner of the premiums at issue and therefore the party with the actual economic interest in the underlying litigation proceeding.)

[30]     *See Maaco Enterprises, Inc. v. Corrao*, 1991 WL 255132 (E.D. Pa 1991) (a true and correct copy of this case is attached hereto as Exhibit "E").

[31]     *Id.* at 1-2.

[32]     *Id.* at 2.

30.     In reaching its holding, the Maaco court relied on two cases. One of those cases, *48th Street Steakhouse*, involved the application of the stay under section 362(a)(3) to the termination of a lease action by a landlord against the nominal prime tenant where the prime tenant's sub-tenant was in bankruptcy.[33] The other case relied upon by the Maaco court was the *A.H. Robins* case, in which the Fourth Circuit *extended* the automatic stay to non-debtor officers on the grounds that continued tort litigation against the debtor's officers and others would district the debtor from reorganization efforts.[34]

31.     Thus, the Maaco court (without clearly articulating a basis for its own decision) relied on precedent involving the protection of estate property under section 362(a)(3) or the extension of the automatic stay to non-debtor parties.  Neither of those concerns is implicated by Positive Software's claims against Susman.

## B.     There Are Insufficient Grounds to Apply the Automatic Stay to Susman.

32.     The Debtors have not requested relief under section 105(a) to extend the automatic stay to Susman.  Thus, until such a motion is made, this Court should not consider extending the stay.[35]  In anticipation that Debtors may seek such an extension at hearing on the Susman Stay Motion and without waiver of Positive Software's procedural objection to such action, Positive Software notes that there is not a sufficient identity of interests between the Debtors and Susman to warrant extending the stay to Susman.

33.     Extension of the automatic stay is warranted only in unusual circumstances. Such "unusual circumstances" have been found to exist where the claim against the non-debtor is

---

[33]     *See In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430-431 (2nd Cir. 1987).

[34]     See Robins, 788 F.2d at 999.

[35]     *See Aldan Indus.*, 2000 WL 357719 at 8 (declining to extend the automatic stay both because the debtor had failed to demonstrate cause and because the debtor had failed to request an extension).

found to threaten the debtor's reorganization or where the claims against the non-debtors would ultimately be recoverable under a debtor's duty to indemnify the non-debtor defendant, such that the debtor was determined to be the real party in interest.[36]

34.     Where a non-debtor defendant is a joint tortfeasor and is therefore independently liable for his actions, however, the actions of that non-debtor are *not* imputed to the debtor and there is no basis for extending the stay to the non-debtor.[37]  This is precisely the type of claim that Positive Software has asserted against Susman and the other defendants to the Susman Action.  And as explained in Section D, below, Texas law provides that an attorney may be held independently liable for tortuous conduct even if such conduct was ostensibly committed to further the client's interests.  Thus, any liability attributable to Susman is recoverable from Susman and is not automatically imputed to the Debtors.

35.     Regarding the impact of the Susman Action on their reorganization efforts, the Debtors complain only that they have had to expend time and effort to address Positive Software's claims.  Even if true, the fact alone cannot be equated to the significant level of interference and disruption required for the extension of non-debtor stay relief. The Debtors have presented absolutely no evidence of why it needs to be involved in the Susman Action or, for that matter, why its involvement will materially affect the Debtors' liquidation efforts.[38]  In the first place, the Debtors are not liable for Susman's defense costs and Susman is well able to represent itself. More importantly, Susman has absolutely no role (or at best a minimal role) in the

---

[36]     *See McCartney*, 106 F.3d at 510.

[37]     *See Robins*, 788 F.2d at 999; *DeSouza*, 20006 WL 2168478 at 3; *CAE Indus. Ltd v. Aerospace Holdings*, 116 B.R. 31, 32 (Bankr. S.D.N.Y. 1990)

[38]     *See CAE Indus.*, 116 B.R. at 34 (holding that absent "evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant.").

Debtors' liquidation efforts.[39] Accordingly, there simply are no grounds to extend the automatic stay to protect Susman.

**C.      Debtors are not Entitled to Recover Actual or Punitive Damages.**

36.      The Debtors contend that the automatic stay is currently in effect with respect to the claims asserted by Positive Software against Susman.  Yet section 362(a)(1) and related case law would indicate that this is not the case and there is currently no order by this Court extending the stay to Susman.  The Debtors have not cited a single case in which damages have been awarded for a section 362(a)(1) violation where the debtor was not named as an actual party. The notion that Positive Software could be found to be in violation of the automatic stay and subjected to an award for actual and punitive damages where it did *not* name the Debtors as parties violates fundamental notions of substantive due process.[40]

37.      As the Debtors would have it, conceivably any action brought in any proceeding against non-debtors where there is a related debtor would require the plaintiff to guess as to how a bankruptcy court might apply what is a fact-based, subjective analysis of the identity of interests between the debtor and non-debtor defendants.  Section 362(a)(1) is not so vague or so expansive.   The Debtors' interpretation of the law would be unfair and most probably unworkable.  Positive Software, for its part, has adhered to the clear and unambiguous terms of section 362(a)(1) in bringing the Susman Action.   There are no grounds for the award of damages or sanctions where Positive Software has complied with the letter of section 362(a)(1) and where there is no order extending the stay to Susman.

---

[39]      *See DeSouza*, 2006 WL 2168478, 2-3 (holding that debtor's corporate directors who were non-debtor defendants in action related to the debtor were not entitled to protection under the automatic stay where the directors merely adduced evidence that the litigation was causing "distraction" from their limited involvement in reorganization efforts.)

[40]      *See Hatfield v. Providian*, 354 B.R. 499, 502 (Bankr. N.D. Ohio 2006) (holding that while the automatic stay is effective without notice, "due process requires that a party receive notice of the stay").

38.    It is also questionable whether the Debtors, which are not individuals, are entitled to any recovery under section 362(k). Debtors argue that under the 2005 Reform Act, or BAPCPA, Congress amended the damages and sanctions provision, previously codified as subsection (h) and now codified as subsection (k), to clarify the good faith exception to the determination of whether a violation of the stay was "willful". Both the pre- and post-BAPCPA versions of the stay damages provision are consistent in limiting awards under that provision to individual debtors (that is, debtors who are natural persons).[41]

39.    In *Atlantic Bus. and Community Corp.*, however, the Third Circuit ruled that the term "individual" was applicable to artificial persons for purposes of assessing damages under Section 362, despite the fact that such definition is inconsistent with the Bankruptcy Code's definition of "person".[42] The *Atlantic* case, however, is a pre-BAPCPA case. Thus, it appears that Congress, by not amending the stay damages provision to replace the term "individual" with the more comprehensive term "person" has reiterated that the term "individual" should mean just that—a natural person.

40.    The notion that Positive Software should be subject to punitive damages based upon prior conduct is equally outrageous. Once this Court ruled that Positive Software had violated the automatic stay by seeking to amend its motion to vacate in the District Court Action, Positive Software ceased all further prosecution of that motion as to the Debtor Defendants and went so far as to notify the Texas District Court of this Court's ruling. Positive Software disagrees with this Court's ruling, but has done nothing to violate it. In the Susman Action,

---

[41]    Both the pre- and post-BAPCPA statutes provide that an "individual injured by any willful violation of a stay provided by this section shall recover actual damage, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

[42] 901 F.2d 325 (3rd Cir. 1991).

Positive Software has adhered to the clear and unambiguous terms of section 362. It has not sued any of the Debtors and is not seeking any recovery by that action from property of the Debtors' estates. There simply has been no malicious or bad faith conduct on Positive Software's part.

**D.    Positive Software's Claims Against Susman Are Well-Founded.**

41.    The Debtors repeatedly talk about Positive Software attempting an end run around this Court's prior stay order. The real end run, however, is the Debtors' attempt to have this Court rule on the merits of Positive Software's litigation claims, even though the claims are before the Texas District Court against non-debtor parties. While the Debtors' may deny Positive Software's claims, the Texas District Court has already found that Positive Software demonstrated a *prima facie* case of fraud involving Susman sufficient to effectuate the waiver of attorney-client and work product privilege.

42.    Additionally, Texas law does not insulate Susman from its independent torts, such as fraud. Under Texas law "[a] lawyer  … cannot shield his won willful and premeditated fraudulent actions from liability simply on the ground that he is an agent of his client."[43] In its complaint filed in the Susman Action, Positive Software charges Susman with fraud. The fact that Susman may have been acting as attorney to the Debtor Defendants while committing fraud does not insulate Susman from the consequences of those acts.

43.    If, as Debtors contend, Positive Software's claims are legally specious, then it should be no hard task for Susman to obtain the dismissal of those claims. Positive Software, for

---

[43]    *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406-407 (Tex. App. – Houston [1 Dist.] 2005); *see also Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App. – Dallas 2003) ("A lawyer's protection from liability claims arising out of representation of a client is not without limits. When an attorney acting for his client participates in fraudulent activities, his action is 'foreign to the duties of an attorney.'" *(citing Poole v. Houston Y& T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)), *Querner v. Rindfuss*, 966 S.W.2d 661, 670 (Tex. App. – San Antonio 1998).

its part, expects that it will prevail on its claims.    Regardless, the merits of those claims are

matters which are properly before and which should be judged by the Texas District Court.[44]

## V.    CONCLUSION

44.    Positive Software has neither named the Debtors as parties in the Susman Action,

nor does Positive Software seek any relief from the Debtors or property of their estate.    Thus,

Positive Software has not violated the automatic stay in bringing the Susman Action.

Additionally, although the Debtors could have requested injunctive relief against Positive

Software from continuing the Susman Lawsuit, they have not done so.    (Nor would they be

entitled to such relief.) Accordingly, the Susman Stay Motion should be denied.

## VI.    REQUEST FOR RELIEF

Positive Software respectfully requests that the Court enter an order: (i) denying the

Susman Stay Motion; and (ii) granting it all other relief to which it may be entitled.

Dated: September 5, 2007
      Wilmington, Delaware              FOX ROTHSCHILD LLP

                         By:     /s/ Anthony M. Saccullo
                               Daniel K. Astin (Bar No. 4068)
                               Anthony M. Saccullo (Bar No. 4141)
                               Carl D. Neff (Bar No. 4895)
                               Citizens Bank Center, Suite 1300
                               919 N. Market Street, P.O. Box 2323
                               Wilmington, Delaware  19899-2323
                               Tel (302) 654-7444/Fax (302) 656-892
                               dastin@foxrothschild.com
                               asaccullo@foxrothschild.com
                               cneff@foxrothschild.com

---

[44]    The Debtors contend that the claims in the District Court Action and the Susman Action are identical. This is not the case.  The claims against Susman, including Positive Software's intellectual property right claims, all arise from actions committed by Susman and others *after* Positive Software had commenced the District Court Action. But even if the Debtors' contention was correct, it would not entitle Susman to automatic relief under section 362(a)(1).

-and-

Mark H. Ralston, Esq.
Texas Bar No. 16489460
THE RALSTON LAW FIRM
2603 Oak Lawn Avenue
Suite 230, LB 2
Dallas, Texas 75219-9109
Telephone: (214) 295-6416
ralstonlaw@gmail.com
Counsel to Positive Software Solutions, Inc.