Base Year. In the event the Building is not fully assessed for Real Estate Taxes during the Base Year, and the reason for the partial assessment is that the Building was not at least ninety-five percent (95%) occupied throughout such Base Year, then the Real Estate Taxes for the Base Year shall be adjusted to the amount that Landlord reasonably determines would have been the Real Estate Taxes for the Base Year had the Building been ninety-five percent (95%) occupied throughout such year.

10.2  Estimated Payment. Tenant shall make monthly installment payments toward Tenant's Share of Increases in Real Estate Taxes on an estimated basis, based on Landlord's reasonable estimate of Real Estate Taxes for such calendar year. Tenant shall pay Landlord, as Additional Rent, commencing on the first day of the second Lease Year and on the first day of each month thereafter throughout the Term (and any extension thereof), one-twelfth (1/12th) of Landlord's estimate of Tenant's Share of Increases in Real Estate Taxes for the then-current calendar year. If at any time or times during such calendar year it appears to Landlord that Tenant's Share of Increases in Real Estate Taxes for such calendar year will materially vary from Landlord's estimate, Landlord may, by written notice to Tenant, once during any calendar year, reasonably revise its estimate for such calendar year and Tenant's estimated payments hereunder for such calendar year shall thereupon be based on such revised estimate.

10.3  Real Estate Taxes. For purposes of this Lease, "Real Estate Taxes" shall mean all taxes and assessments, general or special, ordinary or extraordinary, foreseen or unforeseen, assessed, levied or imposed upon the Building or the Land, or assessed, levied or imposed upon the fixtures, machinery, equipment or systems in, upon or used in connection with the operation of the Building or the Land under the current or any future taxation or assessment system or modification of, supplement to, or substitute for such system. Real Estate Taxes shall include all reasonable expenses (including, but not limited to, reasonable attorneys' fees, disbursements and actual costs) incurred by Landlord in obtaining or attempting to obtain a reduction of such taxes, rates or assessments, including any legal fees and costs incurred in connection with contesting or appealing the amounts or the imposition of any Real Estate Taxes. In the event Real Estate Taxes (including special assessments) may be paid in installments, they may be paid in installments or in lump sum, at Landlord's election (and in such event Real Estate Taxes shall include such installments and interest paid on the unpaid balance of the assessment, or the entirety thereof, as applicable). The foregoing notwithstanding, Real Estate Taxes shall not include: (i) any franchise, corporation, income or net profits tax which may be assessed against Landlord or the Project or both, (ii) transfer taxes assessed against Landlord or the Project or both, (iii) penalties or interest on any late payments of Landlord, or (iv) personal property taxes of Landlord.

10.4  Annual Reconciliation. Landlord shall provide to Tenant within a reasonable time after the end of each calendar year (Landlord agreeing to endeavor so to do within 120 days after the end of the applicable year, provided that such shall not be a condition of Tenant's obligations arising as a result thereof or based thereon), with Landlord's calculation of Tenant's Share thereof (the "Tax Statement"). Within thirty (30) days after the delivery of the Tax Statement, Tenant shall pay to Landlord the amount of any shortfall in the amount of estimated payments made to Landlord pursuant to Section 10.2 on account of Tenant's Share of Increases in Real Estate Taxes for such calendar year, and the actual amount shown as Tenant's Share of Increases in Real Estate Taxes for such calendar year. In the event the Tax Statement reflects an overpayment of Tenant's Share of Increases in Real Estate Taxes for such year, such overpayment shall be credited against the next due Base Rent hereunder, except if Tenant's Lease is no longer in effect then Landlord shall refund such amount to Tenant within thirty (30) days.

11.  ADDITIONAL PROVISIONS; OPERATING COSTS AND REAL ESTATE TAXES.

11.1  Partial Year; End of Term. To the extent that a more accurate method of allocating same cannot be implemented by Landlord, Tenant's Share of Increases in Operating Costs and Real Estate Taxes for any partial calendar year shall be determined by multiplying the amount of Tenant's Share thereof for the full calendar year by a fraction, the numerator of which is the number of days during such partial year falling within the Term and the denominator of which is 365. If this Lease terminates on a day other than the last day of a calendar year, the amount of any adjustment to Tenant's Share of Increases in Real Estate Taxes with respect to the year in which such termination occurs shall be prorated on the basis which the number of days from January 1 of such year to and including such termination date bears to 365; and any amount

payable by Landlord to Tenant or Tenant to Landlord with respect to such adjustment shall be payable within thirty (30) days after delivery by Landlord to Tenant of the applicable Expense Statement and Tax Statement with respect to such year.

11.2  Other Taxes. In addition to Tenant's Share of Increases in Operating Costs and Real Estate Taxes, Tenant shall pay, prior to delinquency, all personal property taxes payable with respect to all property of Tenant located in the Premises or the Building, and shall provide promptly, upon request of Landlord, written proof of such payment.

11.3  Covenant Regarding Timely Payment of Operating Costs and Real Estate Taxes. Landlord covenants to pay all Operating Costs and Real Estate Taxes before the same become delinquent, subject to Tenant's obligation to make the payments contemplated by Sections 9 and 10 above, in a timely fashion.

11.4  Contesting Real Estate Taxes. Landlord will have the right to employ a tax consulting firm to attempt to assure a fair tax burden on the Project, provided Landlord shall use reasonable efforts to minimize the costs of such service. The reasonable cost of such service shall be included in the Real Estate Taxes hereunder in the year same were incurred or paid, at Landlord's election. Additionally, during any such period, Landlord shall have the option, in its reasonable judgment, to contest any tax assessment, valuation or levy against the Project, and to retain legal counsel and expert witnesses to assist in such contest and otherwise to incur expenses in such contest, and any reasonable fees, expenses and costs incurred by Landlord in contesting any assessments, levies or tax rate applicable to the Project, whether or not such contest is successful, shall be included in Real Estate Taxes as set forth above.

12.  TENANT'S INSURANCE.

12.1  Coverage Requirements. Tenant shall during the Term of this Lease, procure at its expense and keep in force the following insurance:

    Commercial general liability insurance naming Landlord and Landlord's managing agent as additional insureds against any and all claims for bodily injury and property damage occurring in or about the Premises or any appurtenances thereto covering the operation of Tenant and any subtenants, licensees and concessionaires of Tenant. Such insurance shall be written on an "Occurrence Form" and shall include, without limitation, blanket contractual liability recognizing provisions of this Lease, broad form property damage, coverage for independent contractors, personal injury liability and coverage for hired auto and non-ownership auto liability. Such insurance shall be primary and not contributing to any insurance available to Landlord and Landlord's insurance shall be in excess thereto. Such insurance shall have a limit of not less than One Million Dollars ($1,000,000.00) per occurrence with a Two Million Dollars ($2,000,000.00) general aggregate with an excess (umbrella) liability insurance in the amount of Two Million Dollars ($2,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) annually in the aggregate; provided, however that no such limits shall be deemed limitation of the liability of Tenant hereunder. If Tenant has other locations that it owns or leases, the policy shall include an aggregate limit per location endorsement. Such liability insurance shall be primary and not contributing to any insurance available to Landlord and Landlord's insurance shall be in excess thereto. In no event shall the limits of such insurance be considered as limiting the liability of Tenant under this Lease;

    Personal property insurance insuring all equipment, trade fixtures, inventory, fixtures and personal property located within the Premises (excluding leasehold improvements, which shall be insured by and remain the property of Landlord, but specifically including plate glass insurance covering breakage of any glass frontage installed by or on behalf of Tenant within or as a part of the Premises or otherwise as a part of the Building but adjoining the Premises). Such insurance shall be written on a replacement cost basis in an amount equal to one hundred percent (100%) of the full replacement value of the aggregate of the foregoing;

    Workers' compensation and occupational disease insurance, employee benefit insurance and any other insurance in the statutory amounts required by the laws of the State where the operations are to be performed with broad-form all-states endorsement;

Employer's liability insurance with a limit of One Million Dollars ($1,000,000.00) for each accident;

Such additional insurance as any mortgagee of the Building may reasonably require, provide mortgagees of similar building in the Reston, Virginia area are then generally requiring such additional insurance to be maintained.

12.2 Rating; Certificates; Cancellation. The policies required to be maintained by Tenant shall be with companies rated "A-" "VII" or better in the most current issue of Best's Insurance Reports. Insurers shall be licensed to do business in the Commonwealth of Virginia and domiciled in the USA. Any deductible amounts under any insurance policies required hereunder shall be commercially reasonable. Certificates of insurance and certified copies of the policies shall be delivered to Landlord prior to the Commencement Date and annually thereafter at least ten (10) days prior to the expiration date of the old policy. Tenant shall have the right to provide insurance coverage which it is obligated to carry pursuant to the terms hereof in a blanket policy, provided such blanket policy expressly affords coverage to the Premises and to Landlord as required by this Lease. Each policy of insurance shall provide notification to Landlord and any mortgagee(s) of Landlord at least ten (10) days prior to any cancellation or modification to reduce the insurance coverage.

12.3 Other. In the event Tenant does not purchase the insurance required by this Lease or keep the same in full force and effect, and the same is not corrected within five (5) business days following written notice thereof from Landlord to Tenant, then Landlord may, but shall not be obligated to, purchase the necessary insurance and pay the premium therefore. Tenant shall repay to Landlord, as Additional Rent, any and all reasonable expenses (including attorneys' fees) and damages which Landlord may sustain by reason of the failure of Tenant to obtain and maintain insurance. All insurance required of Tenant under this Lease shall name Landlord, Landlord's managing agent, and any mortgagee of the Building as additional insureds, as their respective interests may appear (except with respect to workers' compensation insurance).

12.4 Landlord's Insurance.

12.4.1 Coverage. At all times during the Lease Term, Landlord will maintain, the cost of which shall be reimbursable as an Operating Cost hereunder, (a) fire and extended coverage insurance covering the Project, in an amount equal to ninety percent (90%) of the replacement value thereof, and (b) public liability and property damage insurance in such amounts as Landlord deems reasonable from time to time. Landlord shall also have the right to obtain such other types and amounts of insurance coverage on the Building (including loss of rental insurance) and Landlord's liability in connection with the Building as are customary or advisable for a comparable project in the Reston, Virginia area, as determined by Landlord in Landlord's reasonable judgment.

12.4.2 Rating; Certificates; Cancellation. The policies required to be maintained by Landlord shall be with companies rated "A-" "X" or better in the most current issue of Best's Insurance Reports. Insurers shall be licensed to do business in the Commonwealth of Virginia and domiciled in the USA. Any deductible amounts under any insurance policies required hereunder shall be commercially reasonable, in Landlord's reasonable judgment. Landlord shall have the right to provide insurance coverage which it is obligated to carry pursuant to the terms hereof in a blanket policy, provided such blanket policy expressly affords coverage to the Project and to Tenant as required by this Lease.

13. WAIVER OF SUBROGATION.

Landlord and Tenant mutually covenant and agree that each party, in connection with any all-risk property insurance policies required to be furnished in accordance with the terms and conditions of this Lease, or in connection with any all-risk property insurance policies which they obtain insuring such insurable interest as Landlord or Tenant may have in its own properties, whether personal or real, shall expressly waive any right of subrogation on the part of the insurer against Landlord (and any mortgagee requested by Landlord) or Tenant as the same may be applicable, which right to the extent not prohibited or violative of any such policy is hereby expressly waived, and Landlord and Tenant each mutually waive all right of recovery against each other, their agents, or employees for any loss, damage or injury of any nature whatsoever to property for which either party is required by this Lease to carry insurance.

14. DAMAGE OR DESTRUCTION.

14.1 Damage Repair. If the Premises shall be destroyed or rendered untenantable, either wholly or in part, by fire or other casualty and Landlord fails or declines to exercise any termination right pursuant to this Section 14, Landlord shall, after adjusting the insurance claim and obtaining governmental approvals for reconstruction, commence and prosecute to completion the restoration of the Premises to their condition immediately prior to such casualty, subject to Section 14.4 below, and subject to Force Majeure (as defined below), and delay caused by Tenant. Pending substantial completion of such restoration, the Base Rent and all Additional Rent otherwise to come due hereunder during such period shall be abated in the same proportion as the untenantable portion of the Premises bears to the whole thereof.

14.2 Termination for Material or Uninsured Damages. If (i) the Building shall be materially destroyed or damaged to the extent that the restoration of such, in Landlord's judgment, is not economical or feasible, (ii) the Building shall be materially destroyed or damaged by any casualty other than a casualty covered by the insurance policies required to be maintained by Landlord hereunder, notwithstanding that the Premises may be unaffected directly by such destruction or damage, (iii) Landlord's mortgagee (if any) requires that the proceeds of insurance be applied to reduce any amounts outstanding under such mortgage, or (iv) Landlord is unable to obtain all necessary governmental approvals to restore such damage, then in any such event, Landlord may, at its election, terminate this Lease by notice in writing to Tenant within thirty (30) days after such destruction or damage. Such notice shall be effective thirty (30) days after receipt thereof by Tenant.

14.3 Business Interruption. Other than rental abatement as and to the extent provided in Section 14.1, no damages, compensation or claim shall be payable by Landlord for inconvenience or loss of business arising from interruption of business, repair or restoration of the Building or the Premises.

14.4 Repairs. Landlord's repair obligations, if any, shall be limited to restoration of improvements which are covered by the insurance policies required to be maintained by Landlord hereunder. Tenant acknowledges that any such repairs or restorations shall be subject to applicable laws and governmental requirements, the requirements of Landlord's mortgagee (if any), and to delay in the process of adjusting any insurance claim associated therewith; and neither delays resulting from any of the foregoing nor modifications to the Building or to the interior of the Premises occurring by virtue of the application of such requirements shall constitute a breach of this Lease by Landlord as long as Landlord uses reasonable efforts to commence and complete such repairs and restorations in a timely fashion consistent with the pre-existing condition of the applicable improvements.

14.5 End of Term Casualty. Anything herein to the contrary notwithstanding, if the Premises are destroyed or damaged during the last eighteen (18) months of the Lease Term, then either Landlord or Tenant shall have the right to terminate this Lease upon thirty (30) days prior written notice to the other party, which termination shall be effective on the thirtieth (30th) day after the receiving party's receipt of such notice. Such notice must be delivered within thirty (30) days after such casualty, or shall be deemed waived.

14.6 Relocation to Interim Space. If all or part of the Premises is damaged or destroyed by fire or other casualty and neither party elects to exercise its termination right hereunder, then Landlord shall have the option (but not the obligation), to be exercised by delivering written notice to Tenant within thirty (30) days after the date of such casualty, to relocate Tenant to available space in the Plaza America Complex which is comparable to the Premises (the "Interim Space") for the period during which the Premises are repaired or restored, provided that (i) Landlord shall pay the reasonable and actual costs to move Tenant's moveable fixtures, furniture and equipment into the Interim Space, and out of the Interim Space when the Premises is repaired, (ii) the square footage of the Interim Space shall not be less than ninety percent (90%) of the square footage of the Premises unless Tenant agrees otherwise, (iii) the Interim Space shall be reasonably suitable for the conduct and operation of Tenant's business, and (iv) upon occupancy of the Interim Space, Tenant shall pay Landlord Base Rent and additional rent for the Interim Space as set forth in this Lease, which shall be adjusted to reflect the square footage of the Interim Space; however, in no event shall the Base Rent and additional rent for the Interim Space exceed the Base Rent and additional rent for the Premises. If Landlord exercises the foregoing option, Tenant shall relocate from the Premises to the Interim Space

within thirty (30) days after receipt of Landlord's notice; and Tenant shall relocate from the Interim Space to the reconstructed Premises within thirty (30) days after Landlord notifies Tenant that the repair of the Premises has been substantially completed.

       14.7   Tenant's Right to Terminate. If neither party elects to terminate the Lease, as aforesaid, and Landlord and Tenant each fails or declines to exercise any other termination right pursuant to this Section 14, Landlord shall, promptly after adjusting the insurance claim and obtaining governmental approvals for reconstruction, commence and diligently prosecute to completion the restoration of the Premises to their condition immediately prior to such casualty, subject to Section 14.4 above and subject to Force Majeure (as defined herein) or delay caused by Tenant. If such restoration is not substantially completed within two hundred ten (210) days after the date of the casualty, then for a period of up to thirty (30) days after the expiration of such period (but in all events no later than the date Landlord substantially completes its restoration of the Premises), Tenant shall have the right to terminate this Lease upon written notice to Landlord. The provisions of this Section are in lieu of any statutory termination provisions allowable in the event of casualty damage.

15.    MACHINERY AND EQUIPMENT; ALTERATIONS AND ADDITIONS; REMOVAL OF FIXTURES.

       15.1   Tenant shall not place a load upon the floor of the Premises which exceeds the maximum live load which Landlord (or Landlord's architect or engineer) reasonably determines is appropriate for the Building. Tenant will not install or operate in the Premises any electrical or other equipment requiring any changes, replacements or additions to any base building system, without Landlord's prior written consent (and if such consent is granted Tenant shall be responsible for the costs of such changes, replacements or additions).

       15.2   Tenant shall not make or allow to be made any alterations, ,additions or improvements to or on the Premises which (i) affect any structural or building system components of the Premises, (ii) under applicable codes, rules and/or regulations require any building electrical, plumbing or other permit, or (iii) cost, in the aggregate in excess of $5,000.00, without Landlord's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Any alterations, additions or improvements to the Premises shall be made at Tenant's sole expense, in compliance with all applicable laws, by a licensed contractor, and in a good and workmanlike manner conforming in quality with the Premises existing as of the Rent Commencement Date, shall not diminish the value of the Building or the Premises and shall at once become a part of the realty and shall be surrendered with the Premises (except as provided in Section 15.3, below). In addition, any alterations, additions or improvements which fall within the purview of subsection (i) through (iii) above shall also be undertaken according to plans and specifications, with a contractor and during hours reasonably approved in writing by Landlord all as provided herein. Any such approved alterations, additions or improvements shall be made at Tenant's sole cost and expense.

       15.3   Upon the expiration or sooner termination of the Lease Term, Tenant shall, at Tenant's sole expense, with due diligence, remove any alterations, additions, or improvements made by Tenant which are designated by Landlord to be removed at the time its consent to the installation thereof is granted, and repair any damage to the Premises caused by such removal. Tenant shall remove any of its movable property, trade fixtures and roof devices. Tenant shall pay Landlord any reasonable damages for injury to the Premises or Building resulting from such removal.

       15.4   All items of Tenant's personal property that are not removed from the Premises or the Building by Tenant at the termination of this Lease shall be deemed abandoned and become the exclusive property of Landlord upon the expiration of the Lease Term. If the Premises are not surrendered as and when aforesaid, Tenant shall indemnify Landlord against all claims, losses, costs, expenses (including reasonable attorneys' fees) and liabilities resulting from the delay by Tenant in so surrendering the same, including without limitation any claims made by any succeeding occupant founded on such delay. Tenant's obligations under these Sections 15.2, 15.3 and 15.4 shall survive the expiration or termination of this Lease.

16. ACCEPTANCE OF PREMISES.

Within five (5) business days after the execution and delivery of this Lease, Landlord shall tender, and Tenant shall accept possession of, the Premises in its as-is condition, provided, however, Landlord shall deliver the Premises to Tenant with all base Building mechanical, HVAC, electrical, and plumbing systems in good working order. Landlord represents and warrants, to the best of its knowledge, that the zoning for the Building permits the Premises to be used for the permitted uses set forth in this Lease. Landlord shall ensure that at the time of delivery of the Premises, the Premises will meet all applicable codes and regulations with respect to ADA, fire and life safety systems.

17. CONSTRUCTION ALLOWANCE.

17.1 Landlord shall pay to Tenant the sum of Thirty Seven and 50/100 Dollars ($37.50) per square foot of rentable area contained within the Premises (the "Construction Allowance") as a reimbursement to Tenant for the costs of performing alterations to the Premises (the "Tenant's Work"). Up to ten percent (10%) of the Construction Allowance may be used for space planning, architectural, engineering, project management, permitting costs, and other soft costs. The Construction Allowance shall be paid by Landlord to Tenant in accordance with the provisions of Section 17.2 below. Despite the foregoing, Tenant shall pay all costs of performing the Tenant's Work that are in excess of the Construction Allowance. Provided that Tenant is not in Default (as defined in Section 24 below), Landlord shall pay the Construction Allowance (or applicable portion thereof) to Tenant in installments in accordance with the following procedure.

17.2 Periodically (but not more often than once per calendar month), Tenant shall deliver to Landlord an invoice from consultants, contractors or materialmen who have supplied labor or materials or services for Tenant's Work. Except for soft costs, such invoice shall contain (or be accompanied by) a certification by Tenant and Tenant's architect in the form of A.I.A. Document G702 "Application and Certificate for Payment" that the labor or materials for which Tenant is seeking reimbursement has been satisfactorily performed or delivered to the Premises in accordance with the terms of the Lease. Within thirty (30) days after receiving any such invoice (and certifications), Landlord shall pay to Tenant the amount that is set forth in such invoice; provided: (A) such request is accompanied by a copy of the invoice for such expenses marked "paid"; (B) copies of all contracts, bills, vouchers, change orders and other information relating to the expenses for which reimbursement is being sought as may be requested by Landlord shall be made available to Landlord by Tenant; (C) the work and materials for which payment is requested are performed in accordance with the working drawings approved by Landlord (which approval shall not be unreasonably withheld); (D) the work for which payment is requested has been performed both by a contractor and in accordance with a construction contract (including retainage provisions) approved by Landlord (which approval shall not be unreasonably withheld); (E) except for soft costs, the work and materials for which payment is requested have been physically incorporated into the Premises, free of any security interest, lien or encumbrance; and (F) Tenant delivers to Landlord lien waivers from all contractors and materialmen for the work or materials for which such draw payment is being made. Upon completion of the Tenant's Work, Tenant shall provide to Landlord (i) a valid non-residential use permit for the Premises, and (ii) a certificate of completion from Tenant's architect with respect to the Tenant's Work.

18. ACCESS.

18.1 Subject to the restrictions set forth below, Tenant shall permit Landlord and its agents to enter the Premises at all reasonable times, upon reasonable advance notice except for emergencies, to inspect the same; to show the Premises to prospective tenants during the last twelve (12) months of the Lease Term, or to show the Premises to interested parties such as prospective lenders and purchasers; to exercise its rights under Section 39; to repair, alter or improve the Premises or the Building, provided such alterations and repairs do not unreasonably interfere with Tenant's ability to conduct its business during normal business hours; to discharge Tenant's obligations when Tenant has failed to do so within a reasonable time after written notice from Landlord; to post notices of non-responsibility and similar notices and "For Sale" signs and to place "For Lease" signs upon or adjacent to the Building or the Premises. Tenant shall permit Landlord and its agents to enter the Premises at any time in the event of an emergency. When reasonably necessary, Landlord may temporarily close entrances, doors,

corridors, elevators or other facilities without liability to Tenant by reason of such closure. In exercising the foregoing rights, Landlord shall use reasonable efforts to minimize any disruption to Tenant's business. Landlord shall coordinate any entry into the Premises with Tenant's facilities supervisor at least 24 hours in advance (except in cases of emergency involving fire or other casualty, or other risk of injury or death to persons), and Landlord acknowledges that Tenant may require Landlord and its agents to be accompanied by a representative of Tenant for security purposes upon Landlord's entry to the Premises (other than in cases of emergency involving fire or other casualty, or other risk of injury or death to persons) for legitimate, documented security purposes. Tenant shall supply Landlord with telephone numbers for Tenant's facilities supervisor so that Landlord will be able to comply with established security procedures to the extent feasible under the circumstances in the event Landlord requires immediate access to the Premises to cure any emergency situation.

        18.2    Landlord shall be excused from such of its obligations under this Lease as are directly and materially impacted by the inability of Landlord to access the Premises or any applicable part thereof due to Tenant, if and to the extent the performance of such obligations was in fact hindered, frustrated, or rendered impossible or impracticable due to the effect of such restrictions on access.

19.    PARKING.

        19.1    Tenant shall have the right (together with Landlord and its agents, employees and contractors, and together with the rights of other tenants in the Building and the Project) to use, from the parking areas available to the Project in the parking structure, four (4) parking permits for each one thousand (1,000) rentable square feet of the Premises (the "Tenant's Parking Allotment"). Such parking right shall be non-exclusive, and on an unreserved basis, and subject to the provisions of this Section 19 of the Lease, Tenant agrees not to overburden the Building's parking facilities.

        19.2    Throughout the Lease Term, Tenant shall have the right to use, up to five (5) parking spaces which shall be marked as reserved for Tenant's use (the "5 Reserved Spaces"), which 5 Reserved Spaces shall be a part of (and not in addition to) Tenant's Parking Allotment.

        19.3    Subject to the terms of this Section 19.3, Landlord hereby grants Tenant the right to use an additional two (2) parking permits for each 1,000 square feet of rentable area in the Premises (the "Additional Parking Permits"), provided, however, at such time that Landlord has allocated at least ninety five percent (95%) of the parking spaces in the parking garage that is located adjacent to the Building, Landlord shall have the right, upon thirty (30 days prior written notice to Tenant, to terminate Tenant's right to use the Additional Parking Permits, in which event Tenant shall have no further right to use the Additional Parking Permits. Notwithstanding anything herein to the contrary, in the event Tenant assigns the Lease or sublets any portion of the Premises, the provisions of this Section 19.3 shall be null and void and of no further force or effect, and Tenant shall have no further right to use the Additional Parking Permits.

        19.4    Except as may be required by applicable governmental law, code, order, rule or regulation, Landlord shall not grant any party (other than tenants of the Complex and their agents, contractors, employees and invitees) the right to use the parking areas for off-site parking.

20.    INDEMNIFICATION.

        20.1    Subject to the provisions of Section 13 hereof and other provisions of this Lease, Tenant shall indemnify and hold harmless Landlord, its agents, employees, officers, directors, partners and shareholders from and against any and all third party claims, liabilities, judgments, demands, causes of action, claims, losses, damages, costs and expenses, including reasonable attorneys' fees and costs, arising out of such third party claims, to the extent arising out of (i) the use and occupancy of the Premises by Tenant, its officers, contractors, licensees, agents, servants, employees, guests, invitees, visitors, assignees or subtenants; (ii) the negligence or willful misconduct of Tenant, its officers, contractors, licensees, agents, servants, employees, guests, invitees, visitors, assignees or subtenants, in or about the Project; provided that this indemnity shall not apply to any loss, damage, liability or expense resulting from injuries to third parties caused by the gross negligence or willful misconduct of Landlord, or its officers, contractors, licensees, agents, employees or invitees.

20.2   Subject to the provisions of Section 13 hereof and other provisions of this Lease, Landlord shall indemnify and hold harmless Tenant, its agents, employees, officers, directors, partners and shareholders from and against any and all third party claims, liabilities, judgments, demands, causes of action, claims, losses, damages, costs and expenses, including reasonable attorneys' fees and costs, arising out of such third party claims, to the extent arising out of (i) the ownership, operation, use and occupancy of the Building and the Project by the Landlord, its officers, contractors, licensees within Landlord's control, agents, servants, employees, or guests, invitees and/or visitors to the extent within Landlord's control; and/or (ii) the negligence or willful misconduct of Landlord, its officers, contractors, agents, servants, or employees, in or about the Project; provided that this indemnity shall not apply to any loss, damage, liability or expense resulting from injuries to third parties caused by the gross negligence or willful misconduct of Tenant, or its officers, contractors, licensees, agents, employees or invitees.

20.3   The indemnifications set forth in this Section 20 shall survive termination of this Lease.

21.   ASSIGNMENT AND SUBLETTING.

21.1   Consent.  Tenant will not sublet the Premises or any part thereof or transfer possession or occupancy thereof to any person, firm or corporation, or transfer or assign this Lease, without the prior written consent of Landlord, which consent shall not be unreasonably withheld, provided, however, that it shall not be unreasonable for Landlord to withhold its consent on the basis that (i) the proposed assignee's or subtenant's net worth is such that Landlord determines in its reasonable judgment that the proposed assignee or subtenant may be unable to meet its financial and other obligations under this Lease after such assignment or subletting; or (ii) the proposed assignee or subtenant is a party by whom any suit or action could be defended on the ground of sovereign immunity, provided, however, the provisions of this clause (ii) shall not be applicable to any party that is an existing tenant of the Complex; or (iii) the proposed assignee or subtenant proposes to use the Premises for a purpose which is not permitted hereunder; or (iv) the proposed assignee or subtenant has a history of landlord/tenant or debtor/creditor problems, such as, but not limited to, defaults, evictions, or other disputes) with Landlord, other landlords or other creditors; or (v) Landlord determines, in its reasonable judgment, that the proposed assignment/sublease documentation is not acceptable and provides written reasonable proposed revisions; or (vi) the proposed assignee or subtenant is a tenant or occupant of the Building who has asked the Landlord or its agent about the possibility of leasing additional space within the immediately preceding six (6) months and Landlord has sufficient space available in the Building to satisfy that tenant's or occupant's needs.  Tenant shall not encumber the Lease or any interest therein nor grant any franchise, concession, license or permit arrangement with respect to the Premises or any portion thereof.  No subletting or assignment hereof shall be effected by operation of law or in any other manner unless with the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed in accordance with the foregoing provisions of this Section 21.1.  A sale, transfer, assignment or other conveyance of a general partnership interest in Tenant, if Tenant is a partnership or joint venture, or a transfer of more than a twenty percent (20%) stock interest, if Tenant is a corporation, shall be an assignment for purposes hereof.  Tenant shall not modify, extend or amend a sublease previously consented to by Landlord without obtaining Landlord's consent thereto.

21.2   Corporate Transfer.  Notwithstanding any provision in this Lease to the contrary, provided Tenant is not in Default hereunder, Tenant shall have the right to assign this Lease or sublet all or a portion of the Premises without Landlord's consent to any corporation or business entity which controls, is controlled by or is under common control with Tenant, or to a corporation or other business' entity resulting from a merger or consolidation with Tenant, or to any person or entity which acquires substantially all of the assets of Tenant's businesses as a going concern, provided that in the case of an assignment, the assignee assumes in full the obligations of the Tenant under this Lease and that the use of the Premises remains unchanged; and further provided that no assignment or subleasing pursuant to the foregoing provisions of this Section 21.2 shall relieve the Tenant named herein from any retrospective or prospective liability or obligation hereunder, and the Tenant named herein shall be jointly and severally liable therefore together with such assignee or subtenant.

21.3   Intentionally Deleted.

21.4  Intentionally Deleted.

21.5  Required Information. Except as provided in Section 21.2 above, if Tenant should desire to assign this Lease or sublet the Premises (or any part thereof), Tenant shall give Landlord written notice no later than twenty (20) days in advance of the proposed effective date of such proposed assignment or sublease, which notice shall specify the following information (such information shall be collectively referred to as the "Required Information"): (i) the name, current address and business of the proposed assignee or sublessee, (ii) the amount and location of the space within the Premises proposed to be so subleased, (iii) the proposed effective date and duration of the assignment or subletting, (iv) the proposed rent and other consideration to be paid to Tenant by such assignee or sublessee, and (v) the proposed form of the assignment or sublease. Tenant also shall promptly supply Landlord with financial statements and other reasonable information as Landlord may request to evaluate the proposed assignment or sublease.

21.6  Fees; Documents. Tenant agrees to reimburse Landlord for legal fees and any other reasonable expenses and costs incurred by Landlord in connection with any proposed assignment or subletting, up to a maximum of $2,500.00. Tenant shall deliver to Landlord copies of all documents executed in connection with any proposed assignment or subletting, which documents shall be in form and substance reasonably satisfactory to Landlord and which documents, (i) in the case of a permitted assignment, shall require such assignee to assume performance of all terms of this Lease on Tenant's part to be performed, and (ii) in the case of permitted subletting, shall expressly state that the sublease is subject to and subordinate to the terms of the Lease. No acceptance by Landlord of any Base Rent or any other sum of money from any assignee, sublessee or other category of transferee shall be deemed to constitute Landlord's consent to any assignment, sublease, or transfer.

21.7  No Release. Any attempted assignment or sublease by Tenant in violation of the terms and provisions of this Section 21 shall be void and shall constitute a material breach of this Lease. In the event Landlord consents to any assignment or sublease on one occasion, such consent shall not affect Tenant's obligation to comply with the provisions of Section 21 of this Lease with respect to any future assignment or sublease.

21.8  Tenant Liability. In the event of any subletting of all or any portion of the Premises or assignment of this Lease by Tenant, with or without Landlord's consent, Tenant shall remain primarily liable to Landlord for the payment of the Base Rent and Additional Rent stipulated herein and for the performance of all other covenants and conditions contained herein.

21.9  Profit. If any sublease or assignment (whether by operation of law or otherwise, including without limitation an assignment pursuant to the provisions of the Bankruptcy Code or any other Insolvency Law) provides that the subtenant or assignee thereunder is to pay any amount in excess of the rental and other charges due under this Lease, then whether such excess be in the form of an increased monthly or annual rental, a lump sum payment, or any other form (and if the subleased or assigned space does not constitute the entire Premises, the existence of such excess shall be determined on a pro-rata basis), Tenant shall pay to Landlord fifty percent (50%) of any "Profit" (as defined below) applicable to the sublease or assignment, which amount shall be paid by Tenant to Landlord as Additional Rent within ten (10) days after any receipt thereof by Tenant. AProfit" shall be defined as the difference between (i) any and all rent or consideration in lieu of rent received by Tenant in the aggregate from any assignment of the Lease and/or subletting of the Premises, and (ii) the sum of (A) the rent and charges due to Landlord from Tenant under the terms of this Lease (and if the subleased or assigned space does not constitute the entire Premises, the rent and charges payable by Tenant shall be determined on a pro-rata basis), (B) Tenant's reasonable attorneys' fees and brokerage costs in connection with such assignment or subletting that are paid to a third party that is not related to or affiliated with Tenant, (C) Tenant's actual out-of-pocket cost of performing alterations to the Premises in connection with such assignment or subletting, (D) the actual amount of any rent abatement that is granted in connection with such assignment or subletting, and (E) the actual amount of improvement allowance that is paid in connection with such assignment or subletting. Acceptance by Landlord of any payments due under this Section shall not be deemed to constitute approval by Landlord of any sublease or assignment, nor shall such acceptance waive any rights of Landlord hereunder. Landlord shall have the right to inspect and audit Tenant's books and records relating to any sublease or assignment.

21.10 <u>Home123 Corporation</u>. Despite the foregoing, Landlord hereby consents to Tenant subleasing up to four thousand two hundred (4,200) square feet of rentable area of the Premises to Tenant's affiliate, Home123 Corporation ("Home123"). The sublease (the "Home123 Sublease") that is entered into by Tenant and Home123 shall expressly provide that the Home123 Sublease is subject and subordinate to the terms of this Lease. The provisions of Sections 21.3, 21.4, and 21.5 of this Lease shall not be applicable to the Home123 Sublease. Within fifteen (15) days after the date that the Home123 Sublease is entered into, Tenant shall deliver a copy of the Home123 Sublease to Landlord.

22. **ADVERTISING**.

Subject to Tenant's signage rights under Section 40 hereto, Tenant shall not display any sign, graphics, notice, picture, or poster, or any advertising matter whatsoever, anywhere in or about the Premises or the Building at places visible from anywhere outside or at the entrance to the Premises without first obtaining Landlord's written consent thereto, which Landlord may grant or withhold in its sole discretion. Tenant shall be responsible to maintain any permitted signs and remove the same at Lease termination. If Tenant shall fail to do so, Landlord may do so at Tenant's cost. Tenant shall be responsible to Landlord for any damage caused by the installation, use, maintenance or removal of any such signs.

23. **LIENS**.

Tenant shall keep the Premises and the Building free from any liens arising out of any work performed, materials ordered or obligations incurred by or on behalf of Tenant, and Tenant hereby agrees to indemnify and hold Landlord, its agents, employees, independent contractors, officers, directors, partners, and shareholders harmless from any liability, cost or expense (including attorneys' fees and defense costs) for or arising from such liens. Tenant shall cause any such lien imposed to be released of record by payment or posting of the proper bond acceptable to Landlord within twenty (20) days after written request by Landlord. Tenant shall give Landlord written notice of Tenant's intention to perform work on the Premises which might result in any claim of lien at least ten (10) days prior to the commencement of such work to enable Landlord to post and record a Notice of Non-responsibility or other notice deemed proper before commencement of any such work. If Tenant fails to remove any lien within the prescribed thirty (30) day period, then Landlord may do so at Tenant's expense and Tenant's reimbursement to Landlord for such amount, including reasonable attorneys' fees and costs, shall be deemed Additional Rent hereunder.

24. **DEFAULT**.

24.1 <u>Tenant's Default</u>. A "Default" under this Lease by Tenant shall exist if any of the following occurs (taking into account the expiration of the notice and cure periods provided for below):

24.1.1 If Tenant fails to pay Base Rent, Additional Rent or any other sum required to be paid hereunder within ten (10) days after written notice from Landlord that such payment was due, but was not paid as of the due date [provided, however, if Landlord has delivered three (3) such notices to Tenant within the immediately preceding twelve (12) month period, any subsequent failure to pay Base Rent, Additional Rent or any other sum required to be paid to Landlord hereunder on or before the due date for such payment occurring shall constitute a Default by Tenant without requirement of such ten (10) day notice and opportunity to cure; but in the event a full year elapses between such failures then Tenant shall again have the right to such cure period]; or

24.1.2 If Tenant fails to perform any term, covenant or condition of this Lease except those requiring the payment of money to Landlord as set forth in Section 24.1.1 above, and Tenant fails to cure such breach within thirty (30) days after written notice from Landlord where such breach could reasonably be cured within such thirty (30) day period; provided, however, that where such failure could not reasonably be cured within the thirty (30) day period, that Tenant shall not be in Default if it commences such performance promptly after its receipt of Landlord's written notice and diligently thereafter prosecutes the same to completion, provided that in the event of any one or more of the following: (i) the Default relates to the maintenance of insurance obligations, (ii) the Default relates to the assignment and subletting provisions, (iii) the Default relates to a violation of Section 5.1 of this Lease, or (iv) there exists a

reasonable possibility of danger to the health or safety of Landlord, Tenant, Tenant's invitees, or any other occupants of, or visitors to, the Building, then in lieu of the foregoing grace period(s), Tenant shall be afforded ten (10) days in which to effectuate a cure thereof; or

24.1.3 If Tenant shall (i) make an assignment for the benefit of creditors, (ii) acquiesce in a petition in any court in any bankruptcy, reorganization, composition, extension or insolvency proceedings, (iii) seek, consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Tenant and of all or substantially all of Tenant's property, (iv) file a petition seeking an order for relief under the Bankruptcy Code, as now or hereafter amended or supplemented, or by filing any petition under any other present or future federal, state or other statute or law for the same or similar relief, or (v) fail to win the dismissal, discontinuation or vacating of any involuntary bankruptcy proceeding within sixty (60) days after such proceeding is initiated; or

24.1.4 If Tenant shall have abandoned the Premises.

24.2 Remedies. Upon a Default, Landlord shall have the following remedies, in addition to all other rights and remedies provided by law or available in equity or otherwise provided in this Lease, any one or more of which Landlord may resort to cumulatively, consecutively, or in the alternative:

24.2.1 Landlord may continue this Lease in full force and effect, and this Lease shall continue in full force and effect as long as Landlord does not terminate this Lease, and Landlord shall have the right to collect Base Rent, Additional Rent and other charges when due.

24.2.2 Landlord may terminate this Lease, or may terminate Tenant's right to possession of the Premises, at any time by giving written notice to that effect. Upon the giving of a notice of the termination of this Lease, this Lease (and all of Tenant's rights hereunder) shall immediately terminate, provided that, without limitation, Tenant's obligation to pay Base Rent, Additional Rent, and any damages otherwise payable under this Section 24 when due in accordance with the terms of this Section, shall specifically survive such termination and shall not be extinguished thereby. Upon the giving of a notice of the termination of Tenant's right of possession, all of Tenant's rights in and to possession of the Premises shall terminate but this Lease shall continue subject to the effect of this Section 24. Upon either such termination, Tenant shall surrender and vacate the Premises in the condition required by Section 26, and Landlord may re-enter and take possession of the Premises and all the remaining improvements or property and eject Tenant or any of the Tenant's subtenants, assignees or other person or persons claiming any right under or through Tenant or eject some and not others or eject none. This Lease may also be terminated by a judgment specifically providing for termination. Any termination under this Section shall not release Tenant from the payment of any sum then due Landlord or from any claim for damages or Base Rent, Additional Rent or other sum previously accrued or thereafter accruing against Tenant, all of which shall expressly survive such termination. Reletting may be for a period shorter or longer than the remaining Lease Term. No act by Landlord other than giving written notice to Tenant shall terminate this Lease. Acts of maintenance, efforts to relet the Premises or the appointment of a receiver on Landlord's initiative to protect Landlord's interest under this Lease shall not constitute a constructive or other termination of Tenant's right to possession or of this Lease, either of which may be effected solely by an express written notice from Landlord to Tenant. On termination, Landlord shall have the right to remove all Tenant's personal property and store same at Tenant's cost, and to recover from Tenant as damages:

(A) The worth at the time of award of unpaid Base Rent, Additional Rent and other sums due and payable which had been earned at the time of termination; plus

(B) The worth at the time of award of the amount by which the unpaid Base Rent, Additional Rent and other sums due and payable which would have been payable after termination for the balance of the Lease Term exceeds the fair rental value of the Premises for the balance of the Term; plus

(C) Any other amount necessary to compensate Landlord for all costs incurred on account of Tenant's failure to perform Tenant's obligations under this Lease, including, without limitation, any costs or expenses incurred by Landlord: (i) in retaking possession of the Premises; (ii) in maintaining, repairing, preserving, restoring, replacing,

cleaning, altering or rehabilitating the Premises or a portion thereof, including such acts for reletting to a new tenant or tenants; (iii) for leasing commissions; or (iv) for any other costs necessary or appropriate to relet the Premises. To the extent any of such costs are incurred in connection with a lease transaction having a term in excess of the remaining Term hereof, all of the foregoing costs incurred in connection therewith shall be amortized on a straight-line basis over the term of such new lease, assuming equal monthly installments of principal and interest, at an interest rate of six percent (6%) (the "Discount Rate"), and Tenant's liability shall be limited to the amortized portion of the same (i.e., the monthly payments as so determined) falling within the Term hereof.

(D) The "worth at the time of award" of the amounts referred to in Section 24.4(A) is computed by allowing interest at the Default Rate through the date of payment. The "worth at the time of award" of the amounts referred to in Section 24.4(B) shall be computed by discounting the same to present value using the Discount Rate. In the event Landlord does not exercise its option to accelerate the payment of Base Rent as provided hereinabove, then Tenant agrees to pay to Landlord, upon demand, the amount of damages herein provided after the amount of such damages for any month shall have been ascertained; provided, however, that any expenses incurred by Landlord shall be deemed to be a part of the damages for the month in which they were incurred. Separate actions may be maintained each month or at other times by Landlord against Tenant to recover the damages then due, without waiting until the end of the Lease Term to determine the aggregate amount of such damages. In seeking any new tenant for the Premises, Landlord shall be entitled to grant any concessions it deems reasonably necessary. In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the rental herein reserved. To the fullest extent permitted by law, Tenant waives redemption or relief from forfeiture under any other present or future law, in the event Tenant is evicted or Landlord takes possession of the Premises by reason of any Default of Tenant hereunder.

24.2.3 Landlord may, with or without terminating this Lease, re-enter the Premises pursuant to judicial process (except in the event of Tenant's abandonment of the Premises in which event no judicial process shall be required) and remove all persons and property from the Premises; such property may be removed and stored in a public warehouse or elsewhere at the cost of and for the account of Tenant. No re-entry or taking possession of the Premises by Landlord pursuant to this Section shall be construed as an election to terminate this Lease unless a written notice of such intention is given to Tenant.

24.2.4 Tenant, on its own behalf and on behalf of all persons claiming through or under Tenant, including all creditors, does hereby specifically waive and surrender any and all rights and privileges, so far as is permitted by law, which Tenant and all such persons might otherwise have under any present or future law (1) except as may be otherwise specifically required herein, to the service of any notice to quit or of Landlord's intention to re-enter or to institute legal proceedings, which notice may otherwise be required to be given, (2) to redeem the Premises, (3) to re-enter or repossess the Premises, (4) to restore the operation of this Lease, with respect to any dispossession of Tenant by judgment or warrant of any court or judge, or any re-entry by Landlord, or any expiration or termination of this Lease, whether such dispossession, re-entry, expiration or termination shall be by operation of law or pursuant to the provisions of this Lease, (5) to the benefit of any law which exempts property from liability for debt or for distress for rent or (6) to a trial by jury in any claim, action proceeding or counter-claim arising out of or in any way connected with this Lease.

25. SUBORDINATION.

25.1 This Lease shall at all times be and remain subject and subordinate to the lien of any mortgage, deed of trust, ground lease or underlying lease now or hereafter in force against the Premises, and to all advances made or hereafter to be made upon the security thereof. Tenant shall execute and return to Landlord any documentation requested by Landlord in order to confirm the foregoing subordination within ten (10) days after Landlord's written request. In the event any proceedings are brought for foreclosure, or in the event of the exercise of the power of sale under any mortgage or deed of trust made by Landlord covering the Premises, Tenant shall, upon request, attorn to the purchaser at any such foreclosure, or to the grantee of a deed in lieu of foreclosure, and recognize such purchaser or grantee as the Landlord under this Lease. Tenant agrees that no mortgagee or successor to such mortgagee shall be (i) bound by any payment of Base Rent or Additional Rent for more than one (1) month in advance, (ii) liable for damages for