C:\Documents and Settings\...Local Settings\Temporary Internet Files\OLK72A\Lease 26.doc

any breach, act or omission of any prior landlord, or (ii) subject to any claim of offset or defenses that Tenant may have against any prior landlord; provided that such mortgagee or successor shall not be relieved of the obligation to comply with all of the Landlord's obligations under the Lease accruing from and after the date such mortgagee or successor takes title to the Project, irrespective of whether the original non-compliance with any such obligation arose prior to or and is continuing as of such date, or arose on or after such date (provided however that if such obligation arose prior to the date such mortgagee or successor took title to the Project, such mortgagee or successor shall not be deemed in Default until after the provision of any notice of default required by this Lease to such mortgagee or successor, and its failure to cure same within the cure period provided for herein).

25.2    As of the date hereof, the only holder of a deed of trust or mortgage lien of any kind on the Building that is superior to this Lease is that is recorded among the land records of Fairfax County, Virginia in favor of The Northwestern Mutual Life Insurance Company. Within thirty (30) days following the execution and delivery of this Lease, Landlord will use commercially reasonable, good faith efforts to provide Tenant with an executed non-disturbance agreement from such superior lienholder, on such lienholder's form (provided that Landlord shall request that such lienholder accommodate such revisions as Tenant may reasonably request), agreeing in substance that, so long as Tenant is not in Default under this Lease, its tenancy and all of its rights hereunder will not be disturbed through the term of this Lease and any extensions thereof. If Tenant is required to subordinate its interest under the Lease to the lien of any mortgage or deed of trust or to any lienholder in the future, Tenant's obligation to subordinate its interest is conditioned upon any such lienholder or its predecessor lienholder providing Tenant with a commercially reasonable non-disturbance agreement. Tenant agrees that the form of non-disturbance agreement that is attached to and made a part hereof as Exhibit "H" hereto is commercially reasonable and is reasonably satisfactory to Tenant.

26.    SURRENDER OF POSSESSION.

Upon expiration of the Lease Term, Tenant shall promptly and peacefully surrender the Premises to Landlord, in accordance with the provisions of Sections 15.3 and 15.4 of this Lease, in as good condition as when received by Tenant from Landlord, reasonable use and wear and tear and casualty events excepted.

27.    NON-WAIVER.

No provision of this Lease shall be deemed to have been waived by either Landlord or Tenant, unless such waiver be in writing signed by the waiving party. No waiver by either Landlord or Tenant of any breach by the other party of any of the terms, covenants, agreements, or conditions of this Lease shall be deemed to constitute a waiver of any subsequent breach thereof, or a waiver of any breach of any of the other terms, covenants, agreements, and conditions herein contained. No custom or practice which may occur or develop between the parties in connection with the terms of this Lease shall be construed to waive or lessen either Landlord's or Tenant's right to insist upon strict performance of the terms of this Lease, without a written notice thereof from the waiving party to the other party. No employee of Landlord or of Landlord's agents shall have any authority to accept the keys of the Premises prior to termination of the Lease, and the delivery of keys to any employee of Landlord or Landlord's agents shall not operate as a termination of the Lease or a surrender of the Premises. The receipt by Landlord of any payment of Base Rent or Additional Rent with knowledge of the breach of any covenant of this Lease shall not be deemed a waiver of such breach. The failure of Landlord to enforce any of the Rules and Regulations made a part of this Lease, or hereafter adopted, against Tenant or any other tenant in the Building shall not be deemed a waiver of any such Rules and Regulations.

28.    HOLDOVER.

If Tenant shall, without the written consent of Landlord, hold over after the expiration of the Lease Term, Tenant shall be deemed a tenant at sufferance, which tenancy may be terminated as provided by applicable state law. During any holdover tenancy (whether or not consented to by Landlord), unless Landlord has otherwise agreed in writing, Tenant agrees to pay to Landlord, a per diem occupancy charge equal to one hundred fifty percent (150%) of the per diem Base Rent and Additional Rent as was in effect under this Lease for the last month of the Lease Term. Such payments shall be made within five (5) days after Landlord's demand, and in no event less

often than once per month (in advance). In the case of a holdover which has been consented to by Landlord, unless otherwise agreed to in writing by Landlord and Tenant, Tenant shall give to Landlord thirty (30) days prior written notice of its intention to quit the Premises, and Tenant shall be entitled to thirty (30) days prior written notice to quit the Premises, except in the event of non-payment of Base Rent or Additional Rent in advance or the breach of any other covenant or the existence of a Default. Upon expiration of the Lease Term as provided herein, Tenant shall not be entitled to any notice to quit, the usual notice to quit being hereby expressly waived under such circumstances, and Tenant shall surrender the Premises on the last day of the Lease Term as provided in Section 26, above.

29.   CONDEMNATION.

29.1   Definitions. The terms "eminent domain", "condemnation", and "taken", and the like in this Section 29 include takings for public or quasi-public use, and sales under threat of condemnation and private purchases in place of condemnation by any authority authorized to exercise the power of eminent domain.

29.2   Taking. If the whole of the Premises is taken, either permanently or temporarily, by eminent domain or condemnation, this Lease shall automatically terminate as of the date title vests in the condemning authority, and Tenant shall pay all Base Rent, Additional Rent, and other payments up to that date. If any part of the Premises is permanently taken, or if access to the Premises by Tenant is, by virtue of a taking, permanently denied, by eminent domain or condemnation, Landlord or Tenant shall have the right (to be exercised by written notice to the other within sixty (60) days after receipt of notice of said taking) to terminate this Lease from the date when possession is taken thereunder pursuant to such proceeding or purchase. If neither party elects to terminate this Lease, as aforesaid, then Landlord shall within a reasonable time after title vests in the condemning authority, repair and restore, at Landlord's expense, the portion not taken so as to render same into an architectural whole to the fullest extent reasonably possible, and, if any portion of the Premises is taken, thereafter the Base Rent shall be reduced (on a per square foot basis) in proportion to the portion of the Premises taken. If there is a temporary taking involving the Premises or Building, if a taking of other portions of the Building or Common Areas does not deny Tenant access to the Building and Premises, then this Lease shall not terminate, and Landlord shall repair and restore, at its own expense, the portion not taken so as to render same into an architectural whole to the fullest extent reasonably possible.

29.3   Award. Except as set forth below, Landlord reserves all rights to damages to the Premises or arising out of the loss of any leasehold interest in the Premises created hereby, arising in connection with any partial or entire taking by eminent domain or condemnation. Except as referred to in this Section 29.3, Tenant hereby assigns to Landlord any right Tenant may have to such damages or award, and Tenant shall make no claim against Landlord or the condemning authority for damages for termination of Tenant's leasehold interest or for interference with Tenant's business as a result of such taking. The foregoing notwithstanding, Tenant shall have the right to claim and recover from the condemning authority, under the then applicable law, compensation for any loss which Tenant may incur for Tenant's moving expenses, business interruption, taking of Tenant's personal property, and the unamortized "Excess Cost" (as defined below), but, except for the Excess Cost, Tenant shall have no right to make any claim with respect to Tenant's leasehold interest in the Building or Premises. Notwithstanding anything herein to the contrary, Tenant shall not make any claim that will detract from or diminish any award for which Landlord may make a claim. As used herein, the "Excess Cost" shall mean the cost of leasehold improvements made by Tenant to the Premises to the extent the cost thereof exceeds the amount of the Construction Allowance. The Excess Costs shall be amortized in equal monthly installments over the initial term of the Lease.

30.   NOTICES.

All notices and demands which may be required or permitted to be given to either party hereunder shall be in writing, and shall be sent by United States certified mail, postage prepaid, return receipt requested, or by Federal Express or other reputable overnight carrier which provides evidence of receipt, to the addresses set out in Section 1.7, and to such other person or place as each party may from time to time designate in a notice to the other. Notice shall be deemed given upon the earlier of actual receipt or refusal of delivery.

31. **MORTGAGEE PROTECTION**

Tenant agrees to give any mortgagee(s) and/or trust deed holder(s), by certified or registered mail, postage prepaid, return receipt requested, a copy of any notice of default served upon the Landlord, provided that prior to such notice Tenant has been notified in writing (by way of notice of assignment of rents and leases, or otherwise) of the addresses of such mortgagees(s) and/or trust deed holder(s). Tenant further agrees that the mortgagee(s) and/or trust deed holder(s) shall have an additional thirty (30) days within which to cure such default or if such default cannot be cured within that time, then such additional time as may be necessary [but not in excess of an additional thirty (30) days in any event] if within such thirty (30) days any mortgagee(s) and/or trust deed holder(s) has commenced and is diligently pursuing the remedies necessary to cure such failure during which time Tenant shall not have the right to pursue any claim against Landlord, such mortgage and/or such trust deed holder(s) including, but not limited to, any claim of actual or constructive litigation.

32. **COSTS AND ATTORNEYS' FEES.**

In any litigation between the parties arising out of this Lease, in connection with any consultations with counsel and other actions taken or notices delivered, in relation to a default by any party to this Lease, the non-prevailing party shall pay to the prevailing party all reasonable expenses and court costs including attorneys' fees incurred by the prevailing party, in preparation for and (if applicable) at trial, and on appeal. Such attorneys' fees and costs shall be payable upon demand.

33. **BROKERS.**

Landlord and Tenant each represents and warrants to the other that neither it nor its officers or agents nor anyone acting on its behalf has dealt with any real estate broker other than Cushman & Wakefield and Atlantic Realty Companies (on behalf of Landlord) and CB Richard Ellis (on behalf of Tenant) in the negotiating or making of this Lease. The foregoing brokers shall be paid a fee by Landlord upon consummation of this Lease pursuant to a separate written agreement with Landlord. Landlord and Tenant each agrees to indemnify and hold the other and the other's agents, employees, partners, directors, shareholders and independent contractors harmless from all liabilities, costs, demands, judgments, settlements, claims and losses, including reasonable attorney's fees and costs, incurred by such party as a result of a breach by the representing party of its foregoing representation and warranty.

34. **LANDLORD'S LIABILITY**

Anything in this Lease to the contrary notwithstanding, covenants, undertakings and agreements herein made on the part of the Landlord are made and intended not for the purpose of binding Landlord personally or the assets of Landlord but are made and intended to bind only the Landlord's interest in the Premises and Building and Project, as the same may, from time to time, be encumbered, and no personal liability shall at any time be asserted or enforceable against Landlord or its stockholders, members, officers or partners or their respective heirs, legal representatives, successors and assigns on account of the Lease or on account of any covenant, undertaking or agreement in this Lease. In addition, in no event shall Landlord be in default of this Lease unless Tenant notifies Landlord in writing of the precise nature of the alleged breach by Landlord and Landlord fails to cure such breach within thirty (30) days after the date of Landlord's receipt of such notice (provided that if the alleged breach is of such a nature that it cannot reasonably be cured within such thirty (30) day period, then Landlord shall not be in default if Landlord commences a cure within such thirty (30) day period and diligently thereafter prosecutes such cure to completion). In no event shall Tenant have any right to terminate this Lease by virtue of any uncured default by Landlord.

35. **ESTOPPEL CERTIFICATES.**

35.1 Tenant shall, from time to time, within fifteen (15) days of Landlord's written request, execute, acknowledge and deliver to Landlord or its designee a written statement stating such certifications as Landlord may request, which certifications shall, at Landlord's election, be in substantially the same form as Exhibit "F" attached hereto and made a part hereof by this reference. It is intended that any such certificate delivered pursuant to this paragraph may be relied upon by a prospective purchaser of Landlord's interest or a mortgagee of Landlord's

interest or assignee of any mortgagee upon Landlord's interest in the Building. If Tenant fails to respond within fifteen (15) days after receipt by Tenant of a written request by Landlord as herein provided, Tenant shall be deemed to have given such certificate as above provided without modification and shall be deemed to have admitted the accuracy of any information supplied by Landlord to a prospective purchaser or mortgagee consistent with the terms of the estoppel so requested.

36.    FINANCIAL INFORMATION.

Not more than one time during any one calendar year of the Term of this Lease (unless such request is in connection with a proposed sale or financing of the Building), within fifteen (15) days after Landlord's request, Tenant shall deliver to Landlord the then most currently available financial statements of Tenant, and financial statements of the two (2) years prior to the current financial statements year (if not previously delivered), including a balance sheet and profit and loss statement for the most recent prior year, all prepared in accordance with generally accepted accounting principles consistently applied, which statements shall, to the extent that Tenant is not a publicly held company (or its parent is not a publicly held company), be certified by Tenant's chief financial officer as having been fairly stated and having been prepared in accordance with generally accepted accounting principles consistently applied.

37.    TRANSFER OF LANDLORD'S INTEREST.

In the event of any transfer(s) of Landlord's interest in the Premises or the Building to a bona fide third party purchaser, other than a transfer for security purposes only, the transferor shall be automatically relieved of any and all obligations and liabilities on the part of Landlord accruing from and after the date of such transfer, and Tenant agrees to attorn to the transferee, provided the transferee assumes all of transferor's prospective obligations and liabilities under the Lease.

38.    RIGHT TO PERFORM.

If Tenant shall fail to pay any sum of money, other than Base Rent and Additional Rent, required to be paid by it hereunder or shall fail to perform any other act on its part to be performed hereunder, and (except in the event of emergency in which case no grace or cure period shall be applicable or required) such failure shall continue for ten (10) days after written notice from Landlord (or such longer period as may be provided for herein), Landlord may, but shall not be obligated so to do, and without waiving or releasing Tenant from any obligations of Tenant, make any such payment or perform any such other act on Tenant's part to be made or performed as provided in this Lease. Landlord shall have (in addition to any other right or remedy of Landlord) the same rights and remedies in the event of the nonpayment of sums due under this section as in the case of Default by Tenant in the payment of Base Rent. All sums paid by Landlord and all penalties, interest and costs in connection therewith, shall be due and payable by Tenant upon written demand within ten (10) business days after such payment by Landlord, together with interest thereon at the Default Rate from such date to the date of payment.

39.    COMMON AREAS.

39.1    Definition. For purposes hereof, the term "Common Areas" shall mean (i) all portions of the Land other than portions upon which the Building is situated, including landscaped areas and the like, as the same may be modified from time to time by Landlord; (ii) all loading docks, corridors, lobbies, elevator cabs, stairs and other portions of the Building that would customarily be made available to tenants of the Building, as the same may be modified from time to time by Landlord; (iii) any parking deck, parking structure, or surface parking facility, or any connector from the Building thereto; and (iv) any areas which are common areas for, on, or utilized in general by tenants, owners and/or occupants of the Plaza America complex, including both current and any future phases thereof.

39.2    Landlord's Control. Landlord shall, as between Landlord and Tenant, at all times during the term of the Lease have the sole and exclusive control, management and direction of the Common Areas, and may at any time and from time to time during the term exclude and restrain any person from use or occupancy thereof, excepting, however, Tenant and other tenants of Landlord and bona fide invitees of either who make use of said areas use of in accordance with the

C:\Documents and Settings\toray\Local Settings\Temporary Internet Files\OLK2R\Lease_v7.doc

27

rules and regulations established by Landlord from time to time with respect thereto. The rights of Tenant in and to the common areas shall at all times be subject to the rights of others to use the same in common with Tenant, and Tenant shall keep all of said areas free and clear of any obstructions created or permitted by Tenant or resulting from Tenant's operation. Landlord may at any time and from time to time close all or any portion of the Common Areas to make repairs or changes or to such extent as may, in the opinion of Landlord, be necessary to prevent a dedication thereof or the accrual of any rights to any person or to the public therein, to close temporarily any or all portions of the said areas to discourage non-customer parking, and to do and perform such other acts in and to said areas as, in the exercise of good business judgment, Landlord shall determine to be advisable with a view to the improvement of the convenience and use thereof by tenants, their employees, agents, and invitees.

40.    SALES AND AUCTIONS; SIGNAGE.

40.1   Tenant may not display or sell merchandise outside the exterior walls and doorways of the Premises and may not use such areas for storage. Tenant shall not conduct or permit to be conducted any sale by auction in, upon or from the Premises whether said auction be voluntary, involuntary, pursuant to any assignment for the payment of creditors or pursuant to any bankruptcy or other insolvency proceedings. Except with respect to Building directory signage provided in Landlord's standard directory format, and except with respect to the Building standard sign on the suite entry door to the Premises, Tenant shall not display any sign, graphics, notice, picture, or poster, or any advertising matter whatsoever, anywhere in or about the Premises or the Building at places visible from anywhere outside or at the entrance to the Premises.

40.2   Landlord, at its expense, shall provide Tenant with (i) a proportionate share of listings on the Building's first floor directory, (ii) a Building standard sign on the suite entry door to the Premises.

41.    INTENTIONALLY DELETED.

42.    ACCESS; SECURITY.

Landlord shall install access systems to the Common Area entrances of the Building and Landlord shall provide on or before the Commencement Date, one hundred thirty eight (138) key cards therefore, the cost of which shall be paid by Landlord. Thereafter, Tenant may obtain from the applicable security system vendor as many key cards as Tenant requires, at Tenant's sole expense. All monitoring costs attributable to such system(s), if any, shall constitute Operating Costs for all purposes hereof. The Building access system referenced above is not intended to constitute security for Tenant's Premises. Further, Tenant shall be solely responsible (irrespective of whether Tenant installs an independent security system within the Premises) for securing the Premises and Tenant's business therein, and Landlord shall have no obligation or liability therefor.

43.    AUTHORITY.

Tenant shall furnish Landlord with appropriate partnership, corporate and/or other entity resolutions, as applicable, confirming that the individual executing this Lease on behalf of Tenant has been duly authorized to execute and deliver this Lease on behalf of Tenant and that this Lease is binding upon Tenant. Landlord shall furnish Tenant with appropriate partnership, corporate and/or other entity resolutions, as applicable, confirming that the individual executing this Lease on behalf of Landlord has been duly authorized to execute and deliver this Lease on behalf of Landlord and that this Lease is binding on Landlord.

44.    NO ACCORD OR SATISFACTION.

No payment by Tenant or receipt by Landlord of a lesser amount than the Base Rent, Additional Rent and other sums due hereunder shall be deemed to be other than an account of the earliest Base Rent or other sums due, nor shall any endorsement or statement on any check or accompanying any check or payment as payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Base Rent, Additional Rent or other sum and to pursue any other remedy provided in this Lease.

45.    GENERAL PROVISIONS.

45.1    Acceptance.    This Lease shall only become effective and binding upon full execution hereof by Landlord and Tenant and delivery of a signed copy by Landlord to Tenant.

45.2    Marginal Headings, Etc.    The marginal headings, Table of Contents, lease summary sheet and titles to the sections of this Lease are not a part of the Lease and shall have no effect upon the construction or interpretation of any part hereof.

45.3    Choice of Law.    This Lease shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia (without regard to the choice of law and/or conflict of law principles applicable in such Commonwealth).

45.4    Successors and Assigns.    The covenants and conditions herein contained, subject to the provisions as to assignment, inure to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

45.5    Recordation.    Tenant shall not record this Lease or a memorandum hereof.

45.6    Quiet Possession.    Upon Tenant's paying the Base Rent and Additional Rent reserved hereunder and observing and performing all of the covenants, conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession and enjoyment of the Premises for the Lease Term hereof, free from any disturbance or molestation by Landlord or anyone claiming by, through or under Landlord, but in all events subject to all the provisions of this Lease.

45.7    Inability to Perform; Force Majeure.    This Lease and the obligations of Tenant hereunder shall not be affected or impaired because either Landlord or Tenant is unable to fulfill any of its obligations hereunder or is delayed in doing so, to the extent such inability or delay is caused by reason of war, civil unrest, strike, labor troubles, unusually inclement weather, governmental delays, inability to procure services or materials despite reasonable efforts, third party delays, acts of God, or any other cause(s) beyond the reasonable control of the affected party (which causes are referred to collectively herein as "Force Majeure"). Lack of funds shall not be deemed a grounds of Force Majeure.

45.8    Partial Invalidity.    Any provision of this Lease which shall prove to be invalid, void, or illegal shall in no way affect, impair or invalidate any other provision hereof and such other provision(s) shall remain in full force and effect.

45.9    Cumulative Remedies.    No remedy or election hereunder shall be deemed exclusive but shall, whenever possible, be cumulative with all other remedies at law or in equity.

45.10    Entire Agreement.    This Lease contains the entire agreement of the parties hereto and no representations, inducements, promises or agreements, oral or otherwise, between the parties, not embodied herein, shall be of any force or effect.

45.11    Survival.    All indemnities set forth in this Lease shall survive the expiration or earlier termination of this Lease.

45.12    Time.    Landlord and Tenant acknowledge that time is of the essence in the performance of any and all obligations, terms, and provisions of this Lease.

45.13    Successors.    All rights, remedies and liabilities herein given to or imposed upon either of the parties hereto, shall extend to their respective heirs, executors, administrators, successors and assigns. This provision shall not be deemed to grant Tenant any right to assign this Lease or to sublet the Premises.

45.14    No Partnership.    Nothing contained in this Lease shall be deemed or construed to create a partnership or joint venture of or between Landlord and Tenant, or to create any other relationship between the parties other than that of Landlord and Tenant.

45.15    Joint and Several.    If this Lease is executed by two or more corporations, individuals, firms, partnerships, or other entities (or any combination thereof), the liability of said parties executing this Lease shall be joint and several.

45.16  Exhibits.  It is agreed and understood that any Exhibits referred to herein, and attached hereto, form an integral part of this Lease and are hereby incorporated by reference.

45.17  Pronouns.  Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular number, in any place or places herein in which the content may require such substitution or substitutions.  Landlord and Tenant herein for convenience have been referred to in neuter form.

45.18  Captions.  All section and paragraph captions herein are for the convenience of the parties only, and neither limit nor amplify the provisions of this Lease.

45.19  Counterparts.  This Lease may be executed in several counterparts, but all counterparts shall constitute one and the same legal document.

45.20  Examination of Lease.  Submission of this Lease for examination or signature by Tenant shall not constitute reservation of or option for Lease, and the same shall not be effective as a Lease or otherwise until execution and delivery by both Landlord and Tenant.

45.21  Interpretation.  Although the printed provisions of this Lease were drawn by Landlord, this Lease shall not be construed for or against Landlord or Tenant, but this Lease shall be interpreted in accordance with the general tenor of the language in an effort to reach the intended result.

45.22  Intentionally Deleted.

45.23  Resident Agent.  Landlord's resident agent for the service of any process, notice, order or demand required or permitted by law to be served upon Landlord is Jacob A. Kemerow, Esquire, whose office address is 4921 Seminary Road, Suite 116, Alexandria, Virginia 22311.

46.    RULES AND REGULATIONS.

Tenant agrees to comply with the Rules and Regulations attached hereto as Exhibit "D", and any future Rules and Regulations that, from time to time, are promulgated by Landlord.

47.    WAIVER OF COUNTERCLAIM AND TRIAL BY JURY.

LANDLORD AND TENANT WAIVE THEIR RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER (EXCEPT FOR PERSONAL INJURY OR PROPERTY DAMAGE) ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OF OR OCCUPANCY OF THE PREMISES, AND ANY EMERGENCY STATUTORY OR ANY OTHER STATUTORY REMEDY.  EXCEPT FOR ANY MANDATORY COUNTERCLAIM THAT WOULD BE WAIVED IF NOT INTERPOSED, TENANT SHALL NOT INTERPOSE ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF BASE RENT OR ADDITIONAL RENT IN A SUMMARY PROCEEDING FOR NONPAYMENT OF BASE RENT OR ADDITIONAL RENT OR OTHER ACTION OR SUMMARY PROCEEDING BASED ON TERMINATION, HOLDOVER OR OTHER DEFAULT IN WHICH LANDLORD SEEKS REPOSSESSION OF THE PREMISES FROM TENANT.

48.    OPTION TO TERMINATE.

Provided that Tenant is not then in Default under the Lease, Tenant shall have the right, at Tenant's sole option, to terminate this Lease on the last day of the fifth (5th) Lease Year (the "Early Termination Date").  Such termination shall be effective only so long as (a) Tenant provides Landlord with written notice of termination on this Lease (the "Termination Notice") not later than twelve (12) full months prior to the Early Termination Date (the "Termination Notice Date"), and (b) on or before the Termination Notice Date, Tenant pays to Landlord the sum of Seven Hundred Ninety-Nine Thousand One Hundred Twenty-Six and 00/100 Dollars ($799,126.00) (the "Termination Fee").  In the event Tenant shall exercise its option to terminate this Lease as aforesaid, Tenant shall surrender the Premises to Landlord pursuant to the applicable provisions of this Lease on the Early Termination Date, Tenant shall pay to Landlord all amounts of Base Rent and Additional Rent that have accrued (but have not yet been paid) through the Early Termination Date, and the parties shall thereupon be relieved of any further liability under this Lease.

C:\Documents and Settings\sjohn\Local Settings\Temporary Internet Files\OLK28\Lease_v7.doc

30

IN WITNESS WHEREOF, Landlord and Tenant have executed this Deed of Lease, or
have caused this Deed of Lease to be executed on their respective behalves by their duly
authorized officers, as of the day and year first above written.

WITNESS/ATTEST:                                LANDLORD:

                                               PLAZA AMERICA OFFICE DEVELOPMENT,
                                               LLC, a Delaware limited liability company

                                               By:    Plaza Office Limited Partnership, Member
                                               By:    Plaza America Development
                                                      Corporation, its General Partner
                                               By:    _____
                                               Name:  Kenneth Loveland
                                               Title:  Vice President

WITNESS/ATTEST:                                TENANT:

                                               NEW CENTURY MORTGAGE
                                               CORPORATION, a California corporation

                                               By:    _____(SEAL)
                                               Name:  Elise Luckham
                                               Title:  Vice President
                                                      Corporate Services

WITNESS/ATTEST:                                HOME123 CORPORATION, a California
                                               corporation

                                               By:    _____(SEAL)
                                               Name:  Elise Luckham
                                               Title:  Vice President
                                                      Corporate Services

FLOOR PLAN

EXHIBIT "A"



PLAZA AMERICA – TOWER I
SECOND (2ND) FLOOR "AS BUILT"



**<u>EXHIBIT "B"</u>**

**SITE PLAN**

C:\Documents and Settings\juram\Local Settings\Temporary Internet Files\OLK2S\Lease v7.doc

INTENTIONALLY DELETED

EXHIBIT "C"

## EXHIBIT "D"

### RULES AND REGULATIONS

1.      The sidewalks, halls, passages, exits, entrances, elevators and stairways of the Building shall not be obstructed by Tenant, its agents or employees or used by any of them for any purpose other than for ingress to and egress from the Premises. The halls, passages, exits, entrances, elevators, and stairways are not for the general public, and Landlord shall in all cases retain the right to control and prevent access thereto of all persons whose presence in the judgment of Landlord would be prejudicial to the safety, character, reputation and interests of the Building and its tenants, provided that nothing herein contained shall be construed to prevent such access to persons with whom any tenant normally deals in the ordinary course of its business, unless such persons are engaged in illegal activities.

2.      Except as set forth in the Lease, no sign, placard, picture, name, advertisement or notice, visible from the exterior of the Premises shall be inscribed, painted, affixed or otherwise displayed by Tenant on any part of the Building without the prior written consent of Landlord. Landlord will adopt and furnish to Tenant general guidelines relating to signs inside the Building on the office floors. Tenant agrees to conform to such guidelines, but may request approval of Landlord for modifications, which approval shall not be unreasonably withheld. All approved signs or lettering on doors shall be printed, painted, affixed or inscribed at the expense of Tenant by a person approved by Landlord, which approval will not be unreasonably withheld. Material visible from outside the Building will not be permitted.

3.      Tenant shall not allow a fire or any auction to be held on the Premises or allow the Premises to be used for the storage of merchandise held for sale to the general public.

4.      Tenant shall not use or permit the use of the Premises for lodging. No cooking shall be done or permitted by Tenant on the Premises, except the use of Underwriters' Laboratory approved microwaves, toasters and equipment for brewing coffee, tea, hot chocolate and similar beverages or other equipment or appliances shown on the Drawings and Specifications and approved by Landlord shall be permitted, provided that such use is in accordance with all applicable federal, state and city laws, codes ordinances, rules and regulations.

5.      Tenant shall not employ any person or persons other than the janitor of Landlord for the purpose of cleaning the Premises, unless otherwise agreed to by Landlord in writing, such consent shall not be unreasonably withheld, conditioned or delayed. Except with the written consent of Landlord, no person or persons other than those approved by Landlord shall be permitted to enter the Building for the purpose of cleaning the Premises. Tenant shall not cause or permit any unnecessary labor by reason of carelessness or indifference in the preservation of good order and cleanliness on the part of Tenant, its agents, employees or contractors. Janitor services will not be furnished on nights when rooms are occupied after 9:30 p.m. unless, by agreement in writing, such service is extended to a later hour for specifically designated rooms.

6.      Unless specified otherwise in the Lease, Landlord will furnish Tenant free of charge with two keys to each door lock in the Premises. Landlord may make a reasonable charge for additional keys. Tenant shall not alter any lock or install a new or additional lock or any bolt on any door of the Premises without the prior written consent of Landlord, and Tenant shall in each such case shall furnish Landlord with a key for any such lock, exclusive of Tenant's vaults and safes, provided that such keys shall be safeguarded and protected by Landlord. Tenant, upon the expiration or termination of its tenancy, shall deliver to Landlord all keys to doors in the Building which shall have been furnished to Tenant.

7.      Landlord shall designate how all office equipment, furniture, appliances and other large objects or property ("Equipment") shall be moved in and/or out of the Building. The persons employed to move any Equipment in or out of the Building must be reasonably acceptable to Landlord. Landlord will not be responsible for loss or damage to any such Equipment from any cause, and all damage done to the Building by moving or maintaining such Equipment shall be paid at the expense of Tenant.

35

8. Tenant shall not permit, use or keep in the Building or the Premises any kerosene, gasoline or inflammable or combustible fluid or material other than limited quantities thereof reasonably necessary for the operation and maintenance of office equipment or for other general office uses, or, without Landlord's prior written approval, use any method of heating or air conditioning other than that supplied by Landlord. Tenant shall not use or keep or permit to be used or kept any foul or noxious gas or substance in the Premises, or permit or suffer the Premises to be occupied or used in a manner offensive or objectionable to Landlord or to other occupants of the Building by reason of noise, odors, or vibrations, or interfere in any way with other Building tenants or those having business therein.

9. Landlord reserves the right to exclude from the Building between the hours of 6:00 p.m. and 7:00 a.m. and at all hours on Sundays, legal holidays and on Saturdays any invitee of Tenant who, in Landlord's sole opinion, has no legitimate business in the Building. Landlord shall in no case be liable for damages for any error with regard to the admission to or exclusion from the Building of any person. In the case of emergency, Landlord reserves the right to prevent access to the Building during the continuance of the same by such action as Landlord may deem appropriate, including closing and/or locking of doors.

10. The directory of the Building will be provided for the display of the name and location of Tenants. Any additional name which Tenant shall desire to place upon said directory must first be approved by Landlord in writing and, if so approved, a charge will be made based upon Landlord's actual cost therefor.

11. No curtains, draperies, blinds, shutters, shades, screens or other coverings, hangings or decorations shall be attached to, hung or placed in, or used in connection with any window of the Building without the prior written consent of Landlord, and such items shall be installed as instructed by Landlord.

12. Tenant shall use good faith efforts to ensure that the doors of the Premises are closed and locked, and that all water faucets, water apparatus and utilities are shut off before Tenant or Tenant's employees leave the Premises at the end of the day, so as to prevent waste or damage; and for any default or carelessness in this regard Tenant shall be responsible for any and all injuries and damages sustained by other tenants or occupants of the Building and/or Landlord. All tenants shall use good faith efforts to keep the doors to the Building corridors closed at all times except for ingress and egress.

13. All Building bathrooms, toilets, urinals, wash basins and other apparatus shall not be used for any purpose other than that for which they were constructed. The expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the tenant who, or whose agents, employees or invitees, shall have caused it.

14. Tenant shall not sell, nor shall Tenant permit the sale at retail, of newspapers, magazines, periodicals, theater tickets or any other goods or merchandise to the general public in or on the Premises, nor shall Tenant carry on, or allow any employee or other person to carry on, the business of stenography, typewriting or any similar business or to from the Premises for the service or accommodation of occupants of any other portion of the Building, nor shall the Premises be used for manufacturing of any kind, or any business or activity other than that specifically provided for in Tenant's Lease.

15. Hand trucks, delivery carts and other material-handling equipment shall not be used in any space or public halls of the Building, except those equipped with rubber tires and side guards. No motorized vehicles of any kind shall be brought by Tenant into the Building.

16. Tenant agrees to coordinate all moving activity of office equipment and furniture in and out of the Building with Landlord or Landlord's agent, and to use the services of an insured professional moving company.

17. Tenant shall store all its trash and garbage within the Premises. No material shall be placed in the trash boxes, receptacles or the Common Areas if such material is of such nature that it may not be disposed of in the ordinary manner of removing and disposing of trash and garbage as is required Landlord for Building, without being in violation of any law or ordinance governing such disposal. All garbage and refuse disposal shall be made only

through entryways and elevators provided for such purposes and at such times as Landlord shall designate.

18.    Canvassing, soliciting, distribution of handbills, or any other written material peddling in the Building are prohibited, and Tenant shall cooperate to prevent the same.

19.    Tenant agrees to abide by all governmental and public utility company rules and regulations pertaining to thermostatic control of the temperature control of the Premises.

20.    Tenant agrees not to allow or keep any animals or pets of any kind on the Premises, except "Assistance Dogs".

21.    No part of the whole of any sidewalks, plaza areas, entrances, loading docks, passages, courts, elevators, vestibules, stairways, corridors, balconies or halls of the Building shall be obstructed by any tenant or used for any purpose other than that expressly permitted under the Lease.

22.    No awnings or other projections shall be attached to the outside walls, balconies or windows of the Building. No curtains, blinds, shades, or screens other than Building Standard window coverings, shall be attached to or hung in, or used in connection with, any window or door of the space demised to any tenant.

23.    No tenant shall cause or permit any odors to emanate from the space demised to such tenant.

24.    No tenant shall make, or permit to be made, any noises which may be heard outside of such tenant's Premises or disturb or interfere with other tenants or occupants of the Building or neighboring buildings or premises whether by the use of any musical instrument, radio, television set, or other audio device, unmusical noise, whistling, singing, or in any other way. Nothing shall be thrown out, or off, of any doors, windows, balconies or skylights or down any passageways.

25.    Landlord shall have the right to prohibit any advertising by any tenant which mentions the Building or the address of the Building and which, in Landlord's opinion, tends to impair the reputation of the Building or its desirability as a building for offices, and upon notice from Landlord, such tenant shall refrain from or discontinue such advertising.

26.    All equipment and machinery belonging to any tenant which causes noise, vibration or electrical interference that may be transmitted to the structure of the Building or to any space therein to such degree to be objectionable to Landlord and any tenant in the Building shall be installed and maintained by each such tenant, at such tenant's expense, on vibration eliminators or other devices sufficient to eliminate such noise or vibration.

27.    No bicycles are permitted in the Building or to be attached on or stored on any part of the Building's rails, doors, balconies or other parts.

28.    Landlord may waive any one or more of these Rules and Regulations for the benefit of any particular Building tenant or tenants, but no such waiver by Landlord shall be construed as a waiver of such Rules and Regulations in favor of any other Building tenant or tenants, nor prevent Landlord from thereafter enforcing any such Rules and Regulations against any or all of the tenants of the Building.

29.    These Rules and Regulations are in addition to, and shall not be construed to in any way modify or amend, in whole or in part, the terms, covenants, agreements and conditions of any lease of any premises in the Building, including Tenant's Lease.

30.    Landlord reserves the right to make such other reasonable rules and regulations as in its judgment may from time to time be needed for the safety, care, and cleanliness of the Building, and for the preservation of good order therein, provided the same (a) shall not diminish tenant's rights under the Lease, (b) does not increase the financial burdens of Tenant, or (c) is not inconsistent with the Lease.

C:\Documents and Settings\khurst\Local Settings\Temporary Internet Files\OLK28\Lease_v7.doc

37

**EXHIBIT "E"**

**DECLARATION OF LEASE COMMENCEMENT**

THIS DECLARATION is attached to and made a part of that certain Deed of Lease dated the _____ day of _____, 2005, (the "Lease") entered into by and between PLAZA AMERICA OFFICE DEVELOPMENT, LLC, a Delaware limited liability company ("Landlord") and NEW CENTURY MORTGAGE CORPORATION, a California corporation and HOME123 CORPORATION, a California corporation (collectively, "Tenant").

Landlord and Tenant are parties to the Lease. All capitalized terms used herein shall have the same meaning as was ascribed to such terms in the Lease, unless otherwise indicated.

Landlord and Tenant do hereby declare that (a) the "Commencement Date" is hereby established to be _____, (b) the Rent Commencement Date is _____ and (c) the Term of the Lease shall expire on _____.

The Lease is in full force and effect as of the date hereof, Landlord has fulfilled all of its obligations under the Lease required to be fulfilled by Landlord on or prior to such date with the exception of punch list items, and Tenant has no right of setoff against any rentals.

IN WITNESS WHEREOF Landlord and Tenant have executed this Declaration as of the _____ day of _____, 2005.

WITNESS/ATTEST:                         LANDLORD:

                                        PLAZA AMERICA OFFICE DEVELOPMENT,
                                        LLC, a Delaware limited liability company

                                        By:  Plaza Office Limited Partnership, Member
                                        By:  Plaza America Development
                                             Corporation, its General Partner

_____                   By: _____
                                        Name: _____
                                        Title: _____


WITNESS/ATTEST:                         TENANT:

                                        NEW CENTURY MORTGAGE
                                        CORPORATION, a California corporation

_____                   By: _____ (SEAL)
                                        Name: _____
                                        Title: _____


WITNESS/ATTEST:                         HOME123 CORPORATION, a California
                                        corporation

_____                   By: _____ (SEAL)
                                        Name: _____
                                        Title: _____

**EXHIBIT "F"**

**FORM OF ESTOPPEL CERTIFICATE**

TO: _____

RE:    Premises known as and located at 11700 Plaza America Drive, Reston, Virginia (the "Building")

The undersigned, New Century Mortgage Corporation and Home123 Corporation (collectively, "Tenant"), does hereby certify to the Lender as follows:

1.    Tenant is the tenant under that certain lease dated _____, between Tenant and _____, as landlord ("Landlord"), as amended, modified or supplemented by _____, leasing a portion of the Building (the "Premises") as more particularly described in the said lease. Said lease, as so amended, modified or supplemented, is hereinafter referred to as the "Lease".

2.    The Lease is in full force and effect and, except as set forth above, has not been amended, modified or supplemented.

3.    The Lease represents the entire agreement between Tenant and Landlord with respect to the leasing and occupancy of the Premises, and there are no other agreements or representations of any kind between Landlord and Tenant with respect thereto. Without limiting the foregoing, Tenant does not have any rights of first refusal for additional space, options to increase or relocate its space or options to purchase the Premises or any interest therein, other than as may be set forth in the Lease.

4.    To Tenant's current, actual knowledge, all obligations of Landlord to be performed or complied with by Landlord through the date hereof have been fully performed and complied with including, without limitation, any obligations of Landlord to prepare the Premises for Tenant's occupancy, and there exists no default or condition, state of facts or event that, with the passing of time or the giving of notice, or both, would constitute a default by Landlord in the performance of its obligations under the Lease.

5.    To Tenant's current, actual knowledge, all obligations of Tenant to be performed or complied with by Tenant through the date hereof have been fully performed and complied with and there exists no default or condition, state facts or event that, with the passing of time or the giving of notice, or both, would constitute a default by Landlord in the performance of its obligations under the Lease.

6.    The term of the Lease commenced on _____, and shall expire on _____ unless sooner terminated in accordance with the terms of the Lease. Tenant has no rights to extend the term of the Lease except as set forth in the Lease.

7.    The current base monthly rent under the Lease is $_____ per month and has been paid for the period through _____. All additional rent for monthly payments of Tenant's Share of Operating Costs and Real Estate Taxes for the current fiscal year have been paid for the period through _____, and all other charges due under the Lease have been paid to date. Tenant has no claim for overpayment of additional rent for any period, prior to calendar year _____.

8.    There are no existing offsets or defenses by Tenant to the payment of rent and other charges payable by Tenant or otherwise to the enforcement by Landlord of the Lease.

9.    Tenant has delivered a cash security deposit under the Lease. No other security has been given to Landlord under the Lease. The amount of the security deposit is $_____.

10.    Except as set forth below, there is no free rent period or any unexpired concession in or abatement of rent, and any construction, build-out, improvements, alterations, or additions to the Premises required under the Lease have been fully completed.

11.    Tenant is in sole possession of the Premises and has not assigned, sublet, pledged, mortgaged, transferred or otherwise conveyed all or any portion of its interest in the Premises or the Lease.

12.    Tenant has not filed, and has not received notice that any other person has filed, any actions against Tenant under the bankruptcy or insolvency laws of the United States or any other state or territory of the United States.

13.    Tenant understands and acknowledges that this certificate is delivered to, and shall be relied on by, _____, the Lender/Purchaser in connection with an extension of a loan financing/acquisition of Landlord's interest in the Building and the land on which it stands (the "Mortgaged Property").

14.    Tenant confirms and agrees that the Lease is and shall at all times be subject and subordinate to any mortgages or deeds of trust now or hereafter affecting the Mortgaged Property, and any amendments, modifications, consolidations, substitutions, replacements, additions, renewals, extensions, or re-advances thereof.

15.    All insurance required of Tenant by the Lease has been provided by Tenant and all premiums therefore have been paid.

16.    The address for notices to Tenant under the Lease is correctly set forth in the Lease.

17.    The person signing this letter on behalf of Tenant is duly authorized by Tenant to do so on behalf of Tenant.

18.    Tenant agrees to promptly provide the Lender at its offices at Attention: _____, with copies of any notices of default given by or received by Tenant with respect to the Lease and/or the Premises.

TENANT:

NEW CENTURY MORTGAGE
CORPORATION, a California corporation

By: _____ (SEAL)
Name: _____
Title: _____

HOME123 CORPORATION, a California
corporation

By: _____ (SEAL)
Name: _____
Title: _____

## EXHIBIT "G"

## CLEANING SPECIFICATIONS

A.  Office Area

Daily: (Monday through Friday, inclusive, holidays excepted)

1.  Empty and clean all waste receptacles and ash trays and remove waste material from the premises; wash receptacles as necessary.

2.  Sweep and dust mop all areas using a dust-treated mop.

3.  Vacuum all rugs and carpeted areas.

4.  Hand dust and wipe clean with treated cloths all horizontal surfaces including furniture, office equipment, window sills, door ledges, chair rails and convector tops, within normal reach.

5.  Wash clean all water fountains.

6.  Remove and dust under all desk equipment and telephones and replace same.

7.  Wipe clean all brass and other bright work.

8.  Hand dust all grill work within normal reach.

9.  Upon completion of cleaning, all lights will be turned off and doors locked, leaving the premises in an orderly condition.

Weekly

1.  Dust coat racks, and the like.

2.  Remove all finger marks from private entrance doors, light switches and door ways.

3.  Spot clean all walls, doors and partitions (including glass).

Quarterly

Render high dusting and cleaning not reached in daily cleaning to include:

1.  Dusting all pictures, frames, charts, graphs and similar wall hangings.

2.  Dusting all vertical surfaces, such as walls, partitions, doors and ducts.

3.  Dusting of all pipes, ducts and high moldings.

4.  Dusting of all venetian blinds.

5.  Clean all walls, doors, and partitions.

B.  Lavatories

Daily (Monday through Friday, inclusive, holidays excepted)

1.  Sweep and damp mop floors.

2.  Clean all mirrors, powder shelves, dispensers and receptacles, bright work, flushometers, piping and toilet seat covers.

3.  Wash both sides of all toilet seats.

4.  Wash all basins, bowls and urinals.

5.  Dust and clean all powder room fixtures.

40

C:\Documents and Settings\jofann\Local Settings\Temporary Internet Files\OLK2B\Lease_v7.doc

6. Empty and clean paper towel and sanitary disposal receptacles.

7. Remove waste paper and refuse.

8. Refill tissue holders, soap dispensers, towel dispensers, vending sanitary dispensers; materials to be furnished by contractors.

9. A sanitizing solution will be used in all lavatory cleaning.

Monthly:

1. Machine scrub lavatory floors.

2. Wash all partitions and tile the walls in lavatories.

C. Main Lobby Elevators, Building Exterior and Corridors
Daily: (Monday through Friday, inclusive, holidays excepted)

1. Sweep and wash all floors.

2. Wash all rubber mats.

3. Clean elevators, wash or vacuum floors, wipe down walls and doors.

4. Spot clean any metal work inside lobby.

5. Spot clean any metal work surrounding Building Entrance doors.

Monthly:    All resilient tile floors in public area to be treated equivalent to spray buffing.

# EXHIBIT "H"

## NON-DISTURBANCE AGREEMENT

RECORDING REQUESTED BY

_____

WHEN RECORDED MAIL TO

The Northwestern Mutual Life Ins. Co.
720 East Wisconsin Ave. - Rm. N16WC
Milwaukee, WI 53202
Attn:

**Loan No.**

_SPACE ABOVE THIS LINE FOR RECORDER'S USE_

## NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS AGREEMENT is entered into as of _____, 20___, between THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin corporation ("Lender"), whose address for notices is 720 East Wisconsin Avenue, Milwaukee, WI 53202, Attention: Real Estate Investment Department, Reference Loan No. _____; _____ ("Borrower"), and _____ ("Tenant"), whose mailing address is _____.

### RECITALS

A. Tenant is the lessee or successor to the lessee, and Borrower is the lessor or successor to the lessor under a certain lease dated _____, 20___ (the "Lease").

B. Lender has made, or will make, a mortgage loan to be secured by a mortgage, deed to secure a debt or deed of trust from Borrower for the benefit of Lender (as it may be amended, restated or otherwise modified from time to time, the "Lien Instrument") encumbering the fee title to and/or leasehold interest in the land described in Exhibit "A" attached hereto and the improvements thereon (collectively, the "Property"), wherein the premises covered by the Lease (the "Demised Premises") are located.

C. Borrower and Lender have executed, or will execute, an Absolute Assignment of Leases and Rents (the "Absolute Assignment"), pursuant to which (i) the Lease is assigned to Lender and (ii) Lender grants a license a license back to Borrower permitting Borrower to collect all rents, income and other sums payable under the Lease until the revocation by Lender of such license, at which time all rents, income and other sums payable under the Lease are to be paid to Lender.

D. Lender has required the execution of this Agreement by Borrower and Tenant as a condition to Lender making the requested mortgage loan or consenting to the Lease.

E. Tenant acknowledges that, as its consideration for entering into this Agreement, Tenant will benefit by entering into an agreement with Lender concerning Tenant's relationship with any purchaser or transferee of the Property (including Lender) in the event of foreclosure of the Lien Instrument or a transfer of the Property by deed in lieu of foreclosure (any such purchaser or transferee and each of their respective successors or assigns is hereinafter referred to as "Successor Landlord").

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Tenant, Borrower and Lender agree as follows:

I. Tenant and Borrower agree for the benefit of Lender that:

(a) Tenant shall not pay, and Borrower shall not accept, any rent or additional rent more than one month in advance;

42
C:\Documents and Settings\jotann\Local Settings\Temporary Internet Files\OLK28\Lease_v7.doc

(b)   Except as specifically provided in the Lease, Tenant and Borrower will not enter into any agreement for the cancellation of the Lease or the surrender of the Demised Premises without Lender's prior written consent;

(c)   Tenant and Borrower will not enter into any agreement amending or modifying the Lease without Lender's prior written consent, except for amendments or modifications specifically contemplated in the Lease for confirming the lease commencement date, the rent commencement date, the term, the square footage leased, the renewal or extension of the Lease, or the leasing of additional space at the Property;

(d)   Tenant will not terminate the Lease because of a default thereunder by Borrower unless Tenant shall have first given Lender written notice and a reasonable opportunity to cure such default; and

(e)   Tenant, upon receipt of notice from Lender that it has exercised its rights under the Absolute Assignment and revoked the license granted to Borrower to collect all rents, income and other sums payable under the Lease, shall pay to Lender all rent and other payments then or thereafter due under the Lease, and any such payments to Lender shall be credited against the rent or other obligations due under the Lease as if made to Borrower.

(f)   Tenant will not conduct any dry cleaning operations on the Demised Premises using chlorinated solvents nor will Tenant use any chlorinated solvents in the operation of their business on the Demised Premises.

**(g)   Tenant shall pay any and all termination fees due and payable under the Lease directly to Lender to be held by Lender/directly to Lender the Lease directly to Lender [use second option for Lender in an account satisfactory to Lender for California Loans] and such fees shall be applied by Lender as follows: [DRAFTER: INSERT LANGUAGE PER STAC 320/321 OF LOAN COMMITMENT.]**

2.   The Lease is hereby subordinated in all respects to the Lien Instrument and to all renewals, modifications and extensions thereof, subject to the terms and conditions hereinafter set forth in this Agreement, but Tenant waives, to the fullest extent it may lawfully do so, the provisions of any statute or rule of law now or hereafter in effect that may give or purport to give it any right or election to terminate or otherwise affect the Lease or the obligations of Tenant thereunder by reason of any foreclosure proceeding.

3.   Borrower, Tenant and Lender agree that, unless Lender shall otherwise consent in writing, the fee title to, or any leasehold interest in, the Property and the leasehold estate created by the Lease shall not merge but shall remain separate and distinct, notwithstanding the union of said estates either in Borrower or Tenant or any third party by purchase, assignment or otherwise.

4.   If the interests of Borrower in the Property are acquired by a Successor Landlord:

(a)   If Tenant shall not then be in default in the payment of rent or other sums due under the Lease or be otherwise in material default under the Lease, the Lease shall not terminate or be terminated and the rights of Tenant thereunder shall continue in full force and effect except as provided in this Agreement;

(b)   Tenant agrees to attorn to Successor Landlord as its lessor; Tenant shall be bound under all of the terms, covenants and conditions of the Lease for the balance of the term thereof, including any renewal options which are exercised in accordance with the terms of the Lease;

(c)   The interests so acquired shall not merge with any other interests of Successor Landlord in the Property if such merger would result in the termination of the Lease;

43

(d)    If, notwithstanding any other provisions of this Agreement, the acquisition by Successor Landlord of the interests of Borrower in the Property results, in whole or part, in the termination of the Lease, there shall be deemed to have been created a lease between Successor Landlord and Tenant on the same terms and conditions as the Lease for the remainder of the term of the Lease, except as modified by this Agreement, with renewal options, if any; and

(e)    Successor Landlord shall be bound to Tenant under all of the terms, covenants and conditions of the Lease, and Tenant shall, from and after Successor Landlord's acquisition of the interests of Borrower in the real estate, have the same remedies against Successor Landlord for the breach of the Lease that Tenant would have had under the Lease against Borrower if the Successor Landlord had not succeeded to the interests of Borrower; provided, however, that Successor Landlord shall not be:

(i)    Liable for the breach of any representations or warranties set forth in the Lease or for any act, omission or obligation of any landlord (including Borrower) or any other party occurring or accruing prior to the date of Successor Landlord's acquisition of the interests of Borrower in the Demised Premises, except for any repair and maintenance obligations of a continuing nature as of the date of such acquisition;

(ii)    Subject to any offsets or defenses which Tenant might have against any landlord (including Borrower) prior to the date of Successor Landlord's acquisition of the interests of Borrower in the Demised Premises;

(iii)    Liable for the return of any security deposit under the Lease unless such security deposit shall have been actually deposited with Successor Landlord;

(iv)    Bound to Tenant subsequent to the date upon which Successor Landlord transfers its interest in the Demised Premises to any third party;

(v)    Liable to Tenant under any indemnification provisions set forth in the Lease; or

(vi)    Liable for any damages in excess of Successor Landlord's equity in the Property.

The provisions of this paragraph shall be effective and self-operative immediately upon Successor Landlord succeeding to the interests of Borrower without the execution of any other instrument.

5.    Tenant represents and warrants that Tenant, all persons and entities owning (directly or indirectly) an ownership interest in Tenant and all guarantors of all or any portion of the Lease: (i) are not, and shall not become, a person or entity with whom Lender is restricted from doing business with under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action; (ii) are not knowingly engaged in, and shall not engage in, any dealings or transaction or be otherwise associated with such persons or entities described in (i) above; and (iii) are not, and shall not become, a person or entity whose activities are regulated by the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders thereunder.

6.    This Agreement may not be modified orally or in any other manner except by an agreement in writing signed by the parties hereto or their respective successors in interest. In the

event of any conflict between the terms of this Agreement and the terms of the Lease, the terms of this Agreement shall prevail. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their respective heirs, successors and assigns, and shall remain in full force and effect notwithstanding any renewal, extension, increase, or refinance of the indebtedness secured by the Lien Instrument, without further confirmation. Upon recorded satisfaction of the Lien Instrument, this Agreement shall become null and void and be of no further effect.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

TENANT:

By: _____,

Attest: _____,

_____, Secretary

BORROWER:

By: _____,

Attest: _____,

_____, Secretary

LENDER:    THE NORTHWESTERN MUTUAL LIFE
           INSURANCE COMPANY, a Wisconsin
           corporation

           By:  Northwestern Investment
                Management Company, LLC, a
                Delaware limited liability company,
                its wholly-owned affiliate and
                authorized representative

By: _____,
    Managing Director

Attest: _____,

_____, Assistant Secretary

# EXHIBIT E

**Declaration of Lease Commencement**

THIS DECLARATION is attached to and made a part of that certain Deed of Lease dated April 14, 2005, (the "Lease") entered into by and between PLAZA AMERICA OFFICE DEVELOPMENT, LLC, a Delaware limited liability company ("Landlord") and NEW CENTURY MORTGAGE CORPORATION AND HOME123 CORPORATION, a California corporation (collectively, "Tenant").

Landlord and Tenant are parties to the Lease. All capitalized terms used herein shall have the same meaning as was ascribed to such terms in the Lease, unless otherwise indicated.

Landlord and Tenant do hereby declare that (a) the "Commencement Date" is hereby established to be April 18, 2005, (b) the Rent Commencement Date is July 17, 2005, and (c) the Term of the Lease shall expire on July 31, 2015. The Lease is in full force and effect as of the date hereof, Landlord has fulfilled all of its obligations under the Lease required to be fulfilled by Landlord on or prior to such date with the exception of punch list items, and Tenant has no right of setoff against any rentals.

IN WITNESS WHEREOF Landlord and Tenant have executed this Declaration as of the ____ day of May 31, 2005.

WITNESS/ATTEST:                    LANDLORD:

PLAZA AMERICA OFFICE DEVELOPMENT,
LLC, a Delaware limited liability company
By: Plaza Office Limited Partnership, Member
By: Plaza America Development
Corporation, its General Partner

By: _____ (Seal)
Name: Kenneth Lanchield
Title: Vice President

TENANT:

NEW CENTURY MORTGAGE CORPORATION and HOME123 CORPORATION, a California corporation

By: _____ (SEAL)
Name: Tommaso Tincchieri
Title: AVP, Corporate Real Estate
Corporate Services