# EXHIBIT A

## Asset Purchase Agreement

## AMENDED AND RESTATED MORTGAGE LOAN PURCHASE AGREEMENT

This is an Amended and Restated Mortgage Loan Purchase Agreement, dated as of September 12, 2007 ("Agreement"), by and between NEW CENTURY FINANCIAL CORPORATION, a Maryland corporation (the "Company"), the subsidiaries of the Company owning Mortgage Loans (as defined below), which are named on Exhibit A hereof (collectively with the Company, the "Seller" or "Sellers"), and RESIDENTIAL MORTGAGE SOLUTION L.L.C., a Delaware limited liability company (the "Purchaser", together with the Seller, the "Parties").

WHEREAS, the Sellers have filed Chapter 11 petitions to commence cases (the "Chapter 11 Cases") under Title 11 of the United States Code (the "Bankruptcy Code") on April 2, 2007 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and are currently operating as debtors and debtors-in-possession under Sections 1107 and 1108 of the Bankruptcy Code; and

WHEREAS, on the terms and subject to the conditions set forth in this Agreement, the Purchaser desires to purchase from the Sellers, and the Sellers desire to sell to the Purchaser, the Mortgage Loans, in a sale authorized by the Bankruptcy Court pursuant to, inter alia, Sections 105 and 363 of the Bankruptcy Code.

WHEREAS, on August 24, 2007, Seller and Purchaser entered into that certain Mortgage Loan Purchase Agreement (the "Original Agreement").

WHEREAS, Section 14(i) of the Original Agreement provides that the Original Agreement may be amended and modified, but only by a written instrument signed by all of the parties against whom the instrument is sought to be enforced.

WHEREAS, Seller and Purchaser have agreed to amend and restate the Original Agreement as set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, the Parties hereby agree as follows:

### SECTION 1. DEFINITIONS.

The following terms are defined as follows:

Agreement: This Amended and Restated Mortgage Loan Purchase Agreement and all amendments hereof and supplements hereto.

Assignment of Mortgage: An individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form and in blank, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

Auction: The auction of the Mortgage Loans held pursuant to the Sale Procedures Order.

Back-up Bidder:    Ellington Management Group, L.L.C., a Delaware limited liability company.

Bankruptcy Code:    Shall have the meaning set forth in the recitals.

Bankruptcy Court:    Shall have the meaning set forth in the recitals.

Bid Price:    Twenty-three Million Three Hundred Thirty Thousand Dollars ($23,330,000).

Business Day:    Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking institutions in (a) the State of New York or (b) the State in which Servicer's servicing operations are located, are authorized or obligated by law or executive order to be closed.

Chapter 11 Cases:    As defined in the recitals.

Closing:    As defined in Section 9(a) of this Agreement.

Closing Date:    As defined in Section 9(a) of this Agreement.

Closing Documents:    As defined in Section 9(d) of this Agreement.

Code:    The Internal Revenue Code of 1986, as amended, or any successor statute thereto.

Company:    As defined in the preamble.

Cut-off Date:    Five (5) Business Days prior to the Closing Date.

Due Diligence Agreements:    means the agreements the Seller entered into with the Independent Contractors for due diligence services.

ERISA:    The Employee Retirement Income Security Act of 1974, as amended.

Final Order:    means an order as to which the time to file an appeal, a motion for rehearing or reconsideration (excluding any motion under F.R.C.P. 60(b)) or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

Independent Contractors:    means 406 Partners LLC, a Delaware limited liability company, Stronghold Funding, a Virginia corporation, and Global Financial Review LLC, a Utah limited liability company, each as independent contractors.

Liens:    As defined in Section 6(a) of this Agreement.

Mortgage:    The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a lien on real property securing the Mortgage Note.

Mortgagee:    The beneficiary of a Mortgage Note.

Mortgage File:    The Mortgage Loan Documents pertaining to a particular Mortgage Loan.

2

Mortgage Loan:  Either (i) an individual first lien residential mortgage loan which is the subject of this Agreement and identified on the Mortgage Loan Schedule or (ii) a Mortgaged Property acquired by the Servicer under the Servicing Agreement through foreclosure, acceptance of a deed in lieu of foreclosure or otherwise in connection with the default or imminent default of a Mortgage Loan.

Mortgage Loan Documents:  The documents pertaining to each Mortgage Loan listed on Exhibit C, to the extent the Seller or Seller's Custodian has such documents in its possession and excluding any documents identified as unavailable on the exception report to be provided to the Purchaser by the Seller's Custodian prior to the Closing Date.

Mortgage Loan Schedule:  The schedule of Mortgage Loans attached hereto as Exhibit B.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property:  The real property securing repayment of the debt evidenced by a Mortgage Note.

Mortgagor:  The obligor on a Mortgage Note.

Original Agreement:  Shall have the meaning set forth in the recitals.

Parties:  Shall have the meaning set forth in the preamble.

Person:  Any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, limited liability company, government or any agency or political subdivision thereof.

Purchase Price:  The price paid on the Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans equal to the Bid Price.

Purchaser:  As defined in the preamble.

Purchaser's Custodian:  U.S. Bank National Association or such other custodian bailee designated from time to time by the Purchaser by notice in writing to the Seller.

Remittance Date:  As defined in Section 5(b)(v) of this Agreement.

Remittance Report:  As defined in Section 5(b)(iv) of this Agreement.

RESPA:  The Real Estate Settlement Procedures Act, as amended from time to time.

Sale Order:  Means an order of the Bankruptcy Court, authorizing and approving the sale of the Mortgage Loans to the Purchaser pursuant to 11 U.S.C. Sections 363(b) and (f), in substantially the form attached hereto as Exhibit D.

3

Sale Procedures Order:  Means the order entered by the Bankruptcy Court based on the proposed order submitted to the Bankruptcy Court for entry on August 23, 2007, authorizing and approving the sale procedures for the Auction and the sale of the Mortgage Loans.

Seller:  Shall have the meaning set forth in the preamble.

Seller's Custodian:  Deutsche Bank National Trust Co.

Servicer:  Means Carrington Mortgage Services, LLC, a Delaware limited liability company, servicer pursuant to the Servicing Agreement.

Servicing Agreement:  Means that certain Interim Subservicing Agreement, dated June 29, 2007, by and among the Seller, New Century Mortgage Corporation and the Servicer, as amended from time to time.

Servicing Expenses:  As defined in Section 5(b) of this Agreement.

Servicing Expenses Statement:  As defined in Section 5(b) of this Agreement.

Servicing Transfer Date:  As defined in Section 5(a) of this Agreement.

## SECTION 2.  CONVEYANCE FROM SELLER TO PURCHASER.

(a)    Conveyance of Mortgage Loans.

(i)    The Seller, as of the Closing Date, does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement, all right, title and interest of the Seller in and to the Mortgage Loans.

(ii)    The Purchaser, as of the Closing Date, does hereby purchase from, and assume for the benefit of the Seller, all of the right, title, interest, and obligations of the Seller arising from and after the Closing Date, in and to the Mortgage Loans.

(iii)    Upon the sale of the Mortgage Loans to the Purchaser on the Closing Date, all rights arising out of the Mortgage Loans including all funds received by the Seller after the Cut-off Date on or in connection with a Mortgage Loan shall be vested in the Purchaser.

## SECTION 3.  PURCHASE PRICE.

(a)    Purchase Price; Other Payments.

(i)    At Closing, the Purchaser shall pay to the Seller by wire transfer of immediately available federal funds an amount equal to (1) the Purchase Price, plus (2) the amounts paid or payable by the Seller pursuant to the Due Diligence Agreements.

(ii)    The Purchaser shall reimburse the Seller for the Servicing Expenses, as described in Section 5(b).

(iii)    The Purchaser shall be entitled to (1) all principal payments received after the Cut-off Date, (2) all other recoveries of principal collected on or after the Cut-off Date, and (3) all payments of interest on the Mortgage Loans received after the Cut-off Date.

(iv)    If any Party receives a payment or collection on or with respect to any Mortgage Loan to which the other Party is entitled, the receiving Party shall as soon as commercially reasonable remit such payment to the other Party.

(v)    Without limiting the Purchaser's obligations under this Agreement, if the Purchaser fails to purchase the Mortgage Loans as required by this Agreement, the sale of the Mortgage Loans to a Back-up Bidder shall not relieve the Purchaser from its obligations under this Agreement, including any damages for breach.

(b)    <u>Limitation on Liability of Seller</u>. The Seller shall not be liable to pay to Purchaser or any other Person any damages, indemnifications, fees, penalties or other similar payments under this Agreement, including but not limited to any damages, indemnifications, fees, penalties or other similar payments under this Agreement arising from or related to any breach or violation of, or default under, any provision of this Agreement by the Seller, including but not limited to the Seller's representations, warranties, covenants and agreements contained herein.

## SECTION 4. SERVICING OF THE MORTGAGE LOANS.

(a)    The Mortgage Loans are being sold by the Seller to the Purchaser on a servicing-released basis. With respect to such Mortgage Loans:

(i)    From the Closing Date to the Servicing Transfer Date, the Seller shall cause the Servicer to have full power and authority, acting alone, to do any and all things in connection with the servicing and administration of the Mortgage Loans which are in accordance with the Servicing Agreement and which the Servicer may deem necessary or desirable, consistent with the terms of this Agreement and those mortgage servicing practices which are in accordance with accepted mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as the Mortgage Loans in the jurisdiction where each related Mortgaged Property is located.

(ii)    Neither the Servicer nor any of the officers, employees or agents of the Servicer shall be under any liability to the Purchaser for any action taken, or for refraining from taking any action, in good faith pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Servicer or any such person against the failure to perform its obligations in compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement. The Servicer and any officer, employee or agent of the Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. To the extent the Purchaser records with the recording office as permitted herein an Assignment of Mortgage which designates the Purchaser as the holder of record of the Mortgage, the Purchaser agrees that it shall (i) provide the Servicer with immediate notice of any action with respect to the Mortgage or the related Mortgaged Property and ensure that the proper department or person at the Servicer receives

5

such notice; and (ii) immediately complete, sign and return to the Servicer any document reasonably requested by the Servicer to comply with its servicing obligations, including without limitation, any instrument required to release the Mortgage upon payment in full of the obligation or take any other action reasonably required by the Servicer. The Purchaser further agrees that the Servicer shall have no liability for (a) any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that the Servicer may sustain in any way related to servicing of the Mortgage Loans from the Closing Date to the Servicing Transfer Date, except for those resulting from the Servicer's negligence, bad faith or willful misconduct, and (b) the Purchaser's failure to comply with the subsections (i) or (ii) in the immediately preceding sentence, provided that with respect to the Purchaser's failure to comply with clause (ii), the Servicer notifies the proper department or person at the Purchaser of any document or instrument request allowing the Purchaser a reasonable amount of time to comply with any such request. The Servicer shall have no liability to the Purchaser and shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement and which in its opinion may involve it in any expenses or liability; provided, however, that the Servicer may, with the consent of the Purchaser, undertake any such action which it may deem necessary or desirable in respect to this Agreement and the rights and duties of the parties hereto. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities for which the Purchaser will be liable, and the Servicer shall be entitled to be reimbursed therefor from the Purchaser upon written demand.

## SECTION 5. TRANSFER OF SERVICING.

(a)    Termination Procedures.    The Purchaser shall terminate the servicing of the Mortgage Loans referred to in Section 4 of this Agreement and transfer the servicing from the Servicer to any successor servicer with respect to any Mortgage Loan on such date (the "Servicing Transfer Date") as the Purchaser shall inform the Servicer by providing written notice to the Servicer (with a copy to the Seller) at least ten (10) days prior to the Servicing Transfer Date of its intent to transfer the servicing of the Mortgage Loans from the Servicer on the Servicing Transfer Date; provided that, in any event, the Servicer shall be given timely notice to allow the Servicer to notify the related Mortgagors of the transfer of servicing in accordance with the requirements of the RESPA and the Cranston Gonzalez National Affordable Housing Act of 1990, as amended. Notwithstanding the foregoing, the Servicing Transfer Date with respect to each such Mortgage Loan shall be no later than thirty (30) days following the Closing Date. On or before the Servicing Transfer Date specified by the Purchaser in accordance with this paragraph (a) for the transfer of servicing from the Servicer, the Seller shall cause the Servicer to prepare, execute and deliver to the successor entity designated by the Purchaser any and all documents and other instruments, and place in such successor's possession all Mortgage Loan Documents necessary or appropriate to effect the purposes of such notice of termination, including but not limited to the transfer and endorsement or assignment of the Mortgage Loans and related documents, at the Purchaser's sole expense. The Seller shall use reasonable efforts to cause the Servicer to cooperate fully with the Purchaser and such successor in effecting the termination of the Servicer's responsibilities and rights hereunder.

(b)    Servicer Advances. The Purchaser shall reimburse the Seller for the payment by the Seller to the Servicer of (i) all outstanding payment obligations accrued with respect to such Loans from the Cut-off Date through the Servicing Transfer Date and (ii) all outstanding advances related to such Mortgage Loans made by the Servicer from the Cut-off Date through the Servicing Transfer Date in accordance with the servicing procedures set forth in the Servicing Agreement, and consistent with existing practices (collectively, the "Servicing Expenses"). To the extent permitted under the Servicing Agreement, the Seller shall notify the Purchaser in writing of all servicer advances over $250 that Servicer requests the Seller authorization to make after the Cut-off Date, and the Seller shall not grant authorization of such servicer advance if the Seller receives a written objection to such advance from the Purchaser within three (3) Business Days after delivery of notice to the Purchaser, which objection shall not be unreasonably made. As soon as commercially reasonable after the Servicing Transfer Date, the Seller shall cause to be delivered to the Purchaser a statement setting forth the amount and specifying in reasonable detail the nature of the Servicing Expenses (a "Servicing Expenses Statement"). The Purchaser shall pay the amount set forth in such Servicing Expenses Statement to the Seller by wire transfer of immediately available federal funds within three (3) Business Days of receipt of such Servicing Expenses Statement.

(c)    Transfer Procedures. The Seller shall cause the Servicer to take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to the Purchaser, or its designee, including but not limited to the following:

(i)    Notice to Mortgagors. On or prior to the Servicing Transfer Date, the Seller shall cause the Servicer to mail to the Mortgagor of each related Mortgage Loan a letter advising such Mortgagor of the transfer of the servicing of the related Mortgage Loan to the Purchaser, or its designee, in accordance with RESPA and the Cranston Gonzales National Affordable Housing Act of 1990, as amended.

(ii)    Notice to Taxing Authorities and Insurance Companies. On or prior to the Servicing Transfer Date, the Seller shall cause Servicer to transmit to the applicable taxing authorities and insurance companies (including primary mortgage insurance policy insurers, if applicable) and/or agents, notification of the transfer of the servicing to the Purchaser, or its designee, and instructions to deliver all notices, tax bills and insurance statements, as the case may be, to the Purchaser from and after the Servicing Transfer Date.

(iii)    Delivery of Servicing Records. As soon as practicable after the Servicing Transfer Date, the Seller shall cause the Servicer to forward to the Purchaser, or its designee, all servicing records and the servicing file in the Servicer's possession relating to each related Mortgage Loan.

(iv)    Remittance Report. As soon as commercially reasonable following the Servicing Transfer Date, the Seller shall cause the Servicer to provide the Purchaser with a remittance report with respect to any payment or other recovery received by the Servicer on the Mortgage Loans, including interest received by the Seller or the Servicer from the Cut-off Date through the Servicing Transfer Date (the "Remittance Report"). The Remittance Report shall include sufficient information to enable the Purchaser to reconcile the amount of such payments with the accounts of the Mortgage Loans and agree with the Seller on a final Remittance Report.

LA1:1145310.3

(v)     *Remittance Payment.* As soon as commercially reasonable after the Seller and the Purchaser agree on the final Remittance Report, the Seller shall provide the Purchaser, or its designee, with immediately available federal funds by wire transfer in the amount set forth on the Remittance Report (the "Remittance Date").

(vi)     *Payoffs and Assumptions.* The Seller shall cause the Servicer to provide to the Purchaser, or its designee, copies of all assumption and payoff statements generated by the Servicer in the Servicer's possession on the related Mortgage Loans from the Cut-off Date to the Servicing Transfer Date.

(vii)     *Mortgage Payments Received Prior to Servicing Transfer Date.* Prior to the Servicing Transfer Date all payments received by the Servicer on each related Mortgage Loan shall be properly applied to the account of the particular Mortgagor.

(viii)     *Mortgage Payments Received after Servicing Transfer Date.* The amount of any related monthly payments received by the Servicer after the Servicing Transfer Date shall be forwarded to the Purchaser's servicer by overnight mail or by wire transfer within five Business Days following receipt thereof.

(ix)     *Misapplied Payments.*    Misapplied payments shall be processed as follows:

> (A)     All Parties shall cooperate in correcting misapplication errors;
>
> (B)     The Party receiving notice of a misapplied payment occurring prior to the Servicing Transfer Date and discovered after the Servicing Transfer Date shall immediately notify the other Party;
>
> (C)     If a misapplied payment which occurred after the Cut-off Date but prior to the Servicing Transfer Date cannot be identified and said misapplied payment has resulted in a shortage in a custodial account or escrow account, the Seller shall use commercially reasonable efforts to cause the Servicer to reimburse the Purchaser for the amount of such shortage within thirty (30) days after receipt of written demand therefor from the Purchaser;
>
> (D)     Any check issued hereunder shall be accompanied by a statement indicating the corresponding Seller and/or the Purchaser Mortgage Loan identification number and an explanation of the allocation of any such payments.

8

    (x)    *Books and Records.* As soon as practicable after the Servicing Transfer Date, the Seller shall cause the books, records and accounts of the Servicer with respect to the servicing of the Mortgage Loans to be transferred.

    (xi)    *IRS Forms.* The Seller shall cause the Servicer to file all IRS forms 1099, 1099A, 1098 or 1041 and K-1, as applicable, which are required to be filed on or before the Servicing Transfer Date in relation to the servicing and ownership of the Mortgage Loans.

## SECTION 6.  REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF THE SELLER.

    (a)    The Seller, as a condition to the consummation of the transactions contemplated hereby, hereby represents and warranties to the Purchaser that, as of the date hereof and as of the Closing Date (i) the Seller is a corporation validly existing and in good standing under the laws of the State of Maryland; (ii) the Seller has the full corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder; (iii) the execution, delivery and performance of this Agreement by the Seller and the consummation by the Seller of the transactions contemplated hereby have been duly and validly authorized; (iv) this Agreement is the valid and binding obligation of the Seller, enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, liquidation, fraudulent conveyance, reorganization, moratorium, receivership or other similar laws affecting the enforcement of the rights of creditors generally, and general principles of equity including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity); (v) the Seller has full right to transfer and assign each Mortgage Loan to the Purchaser free and clear of any encumbrance, lien, pledge, charge or security interest of the Seller or any of its affiliates (collectively, "Liens"), and following the transfer and assignment of each Mortgage Loan, the Purchaser will acquire such Mortgage Loan free and clear of any such Lien; and (vi) the Seller represents and warrants that the Mortgage is a valid, existing and enforceable lien on the related Mortgaged Property, having at least the priority indicated in the Loan Schedule, subject only to (i) liens for real estate taxes and/or assessments not yet due and payable and (ii) covenants, easements, and other matters of public record as of the date of recording of such Mortgage. Except for Mortgaged Property that has been acquired by the Servicer under the Servicing Agreement through foreclosure, acceptance of a deed in lieu of foreclosure or otherwise in connection with the default or imminent default of a Mortgage Loan, (i) no Mortgaged Property has been released from the lien of the applicable Mortgage, in whole or in part, (ii) no instrument has been executed by the Seller or the Servicer that will effect any such release, cancellation, subordination or rescission of the Mortgage, and (iii) no legal proceeding has been commenced prior to the date hereof (and will not be commenced prior to the Cut-off Date) that will effect any such release, cancellation, subordination or rescission of the Mortgage (provided, that in order for Purchaser to make a claim for the breach of the representation in this clause (iii), any such release, cancellation, subordination or rescission of the Mortgage must actually occur on or before the 90th day after the Closing).

## SECTION 7. REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF THE PURCHASER.

The Purchaser represents and warrants to the Seller that as of the date hereof and as of the Closing Date:

(a)     The Purchaser is a substantial sophisticated investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Mortgage Loans and its bid and decision to purchase the Mortgage Loans are based upon its own independent expert evaluations of the Mortgage Loans and the Mortgage Files and other materials deemed relevant by the Purchaser and its agents.  The Purchaser acknowledges and agrees to purchase the Mortgage Loans in their **"AS IS, WHERE IS" CONDITION "WITH ALL FAULTS"** as of the Closing Date.  The Purchaser acknowledges that no agent, employee, consultant, advisor or representative of the Seller or any affiliate of the Seller is authorized to make any representations or warranties regarding the transactions contemplated hereby, except as expressly set forth in this Agreement.  The Purchaser is entering into this Agreement based solely upon such evaluations and inspections, and has not relied upon any oral or written information or any representations or warranties whatsoever from the Seller, any affiliate of the Seller or any of its respective employees, affiliates, agents or representatives, other than the representations and warranties of the Seller expressly contained herein. WITHOUT LIMITATION OF THE FOREGOING, THE PURCHASER ACKNOWLEDGES THAT NEITHER THE SELLER NOR ANY AFFILIATE OF THE SELLER HAS MADE ANY REPRESENTATIONS OR WARRANTIES EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT, AS TO THE MORTGAGORS, MORTGAGE LOANS OR THE MORTGAGED PROPERTIES INCLUDING, WITHOUT LIMITATION, (i) THE FINANCIAL CONDITION OF ANY MORTGAGOR, (ii) THE VALUE, COLLECTIBILITY, MARKETABILITY, CONDITION OR FUTURE PERFORMANCE OF ANY MORTGAGE LOAN, (iii) THE COMPLIANCE OR LACK OF COMPLIANCE OF ANY MORTGAGED PROPERTY WITH ANY LAWS, INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL AND LAND USE OR OCCUPANCY LAWS, (iv) THE PHYSICAL CONDITION OF ANY MORTGAGED PROPERTY OR ANY BUILDING, IMPROVEMENTS, MACHINERY, EQUIPMENT OR PERSONAL PROPERTY COMPRISING ALL OR A PORTION OF ANY MORTGAGED PROPERTY OR OTHERWISE, (v) COLLECTIBILITY OF ANY MORTGAGE LOAN; OR (vi) THE ENFORCEABILITY, VALIDITY, EXISTENCE, PRIORITY OR PERFECTION OF LIENS (IF ANY) SECURING ANY MORTGAGE LOAN;

(b)     The Purchaser has been able to conduct such due diligence, investigations, inspections, review and analysis of the Mortgage Loans and the Mortgage Files and related information furnished by the Seller as the Purchaser deemed necessary, proper or appropriate with respect to the purchase and acquisition of the Mortgage Loans and has elected to purchase the Mortgage Loans based solely on such due diligence, investigations, inspections, review and analysis;

(c)     The Purchaser has not filed any petition seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law relating to bankruptcy or insolvency, nor has any such petition been filed against

10

the Purchaser. No general assignment of the Purchaser's property has been made for the benefit of creditors, and no receiver, master, liquidator or trustee has been appointed for the Purchaser or any of its property. The Purchaser is not insolvent and the consummation of the transactions contemplated by this Agreement shall not render the Purchaser insolvent. The Purchaser will have as of the Closing Date sufficient capital or net worth to meet its obligations;

(d)     The Purchaser is validly existing and in good standing under the laws of its jurisdiction of incorporation or formation;

(e)     The Purchaser has the full power and authority to execute and deliver this Agreement and to perform its obligations hereunder;

(f)     The execution, delivery and performance of this Agreement by the Purchaser and the consummation by the Purchaser of the transactions contemplated hereby have been duly and validly authorized;

(g)     This Agreement is the valid and binding obligation of the Purchaser, enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, liquidation, fraudulent conveyance, reorganization, moratorium, receivership or other similar laws affecting the enforcement of the rights of creditors generally, and general principles of equity including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity); and

(h)     The Purchaser has not engaged in any collusion with respect to its bidding on the Mortgage Loans or its purchase of the Mortgage Loans hereunder.

**SECTION 8. ADDITIONAL AGREEMENTS.**

(a)     <u>True Sale</u>. Each of the Parties acknowledges and agrees that a true sale of the Mortgage Loans is intended pursuant to this Agreement, the Purchaser will have legal and equitable title to all Mortgage Loans upon payment of the Purchase Price, and there is no intent by any Party to create a lending relationship between the Purchaser and the Seller. Upon the sale of the Mortgage Loans, the Seller shall have no legal or equitable title or interest whatsoever in the Mortgage Loans or any collections thereunder, and the Seller shall have no right to redeem any of the Mortgage Loans.

(b)     <u>Bankruptcy Actions</u>. Seller shall use commercially reasonable efforts to obtain the entry of the Sale Order no later than September 14, 2007.

(c)     <u>Assignment of Due Diligence Agreements</u>. Seller hereby assigns to Purchaser and Purchaser hereby assumes the Due Diligence Agreements. Seller covenants not to provide the reports prepared by the Independent Contractors pursuant to the Due Diligence Agreements to any other prospective bidders, unless this Agreement is terminated. Purchaser acknowledges that Seller has hired other independent contractors to prepare due diligence reports and that such reports may be provided to other prospective bidders at any time, in the sole discretion of Seller.

(d)     <u>Ohio Loans</u>. The Mortgage Loan Schedule includes 21 mortgage loans (the "Ohio Loans") that are subject to the Stipulated Preliminary Injunction ("SPI") and the Agreed

11

Entry for Release of Four (4) Loans and Sale of Twenty-One (21) Loans (the "Agreed Order"), both of which were entered by the Court of Common Pleas for Cuyahoga County, Ohio, and copies of which have been provided to Purchaser. The Purchaser agrees that it is purchasing the Ohio Loans subject to the continued application of the SPI and Agreed Order to the Ohio Loans (except to the extent that the State of Ohio has agreed to release 10 of the 21 Ohio loans from the provisions of the SPI, which 10 loans are set forth in Exhibit A to the Agreed Order).

### SECTION 9. CLOSING.

(a)    Closing.  Subject to satisfaction or waiver of the conditions contained in this Agreement, the closing (the "Closing") of the purchase and sale of the Mortgage Loans shall take place at 10:00 a.m., Pacific Daylight Savings Time at the offices of O'Melveny & Myers, Los Angeles, two (2) Business Days following the satisfaction or waiver of the conditions of the Parties' obligations set forth in Sections 9(b) and 9(c) hereof, or such other place or time as the Parties may agree to in writing, but in no event later than September 18, 2007, unless the Parties otherwise agree or, if there is a stay of the Bankruptcy Court in place, within two (2) Business Days after such stay has been lifted (the "Closing Date").

(b)    Conditions Precedent to the Purchaser's Obligations.  The obligation of the Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment of the following conditions as of the Closing Date:

(i)    Representations and Warranties; Covenants; Certificates.

(A)    The representations and warranties of the Seller contained in this Agreement, and in any agreement, instrument, or document executed and delivered by them in connection with the Closing, shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date, except as affected by transactions permitted by this Agreement and except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct in all material respects as of such specified date.

(B)    The Seller shall have performed and complied in all material respects with all agreements, obligations, covenants and conditions required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

(C)    The Purchaser shall have received a certificate, dated as of the Closing Date, signed by authorized officers of the Seller to the effect that such

12

conditions set forth in Section 9(b)(i)(A) hereof have been satisfied in all material respects.

(ii)    *Bankruptcy Condition.* The Bankruptcy Court shall have entered the Sale Order, which has not been reversed, modified, rescinded or stayed as of the Closing Date.

(iii)    *No Injunction.* There shall be in effect no pending injunction, decree or order of, or any other action or proceeding before, any governmental authority that (a) prevents the consummation of the transactions contemplated hereby, (b) causes the transactions to be rescinded following the consummation thereof or (c) has a material adverse effect on the Mortgage Loans.

(iv)    *Instruments of Conveyance and Transfer; Title.* The Seller will deliver, or cause to be delivered, to the Purchaser's Custodian no later than two (2) days prior to the Closing Date, the Mortgage Loan Documents; provided that if any Mortgage Loan is registered on the MERS system, the Parties will mutually agree on the application of this paragraph prior to Closing.

(v)    Seller shall have delivered, or caused to be delivered, to the Purchaser such instruments of conveyance and transfer in form and substance, reasonably satisfactory to the Purchaser and its counsel, as are necessary to vest in the Purchaser good and marketable title to all of the interest of the Seller in the Mortgage Loans, free and clear of all Liens.

(vi)    Any condition specified in this Section 9(b) may be waived by the Purchaser; provided, however, that no such waiver shall be effective unless it is set forth in a writing executed by the Purchaser.

(c)    Conditions Precedent to the Seller's Obligations. The obligation of the Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment of the following conditions as of the Closing Date:

(i)    Representations and Warranties; Covenants; Certificates.

(A)    The representations and warranties of the Purchaser contained in this Agreement, shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date, except as affected by transactions permitted by this Agreement and except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct in all material respects as of such specified date.

(B)    The Purchaser shall have performed and complied in all material respects with all agreements, obligations, covenants and conditions required by

13

this Agreement to be performed or complied with by it on or prior to the Closing.

(C) The Seller shall have received a certificate, dated as of the Closing Date, signed by authorized officers of the Purchaser to the effect that such conditions set forth in Section 9(c)(i)(A) hereof have been satisfied in all respects.

(ii) *Bankruptcy Condition.* The Bankruptcy Court shall have entered the Sale Order, which has not been reversed, modified, rescinded or stayed as of the Closing Date.

(iii) *No Injunction.* There shall be in effect no pending injunction, decree or order of, or any other action or proceeding before, any governmental authority that (a) prevents the consummation of the transactions contemplated hereby, (b) causes the transactions to be rescinded following the consummation thereof or (c) has a material adverse effect on the Mortgage Loans.

(iv) *Payments.* Purchaser shall have made all payments required to be made by Purchaser pursuant to Section 3 of this Agreement.

(v) Any condition specified in this Section may be waived by the Seller; provided that no such waiver shall be effective against the Seller unless it is set forth in a writing executed by the Seller.

(d) <u>Closing Deliverables.</u> The closing documents to be delivered on or prior to the Closing Date (the "Closing Documents") shall consist of each of the following:

(i) The Seller shall convey all of the Mortgage Loans to the Purchaser and shall deliver to the Purchaser such appropriately executed instruments of sale, transfer, assignment, conveyance and delivery necessary or desirable to effect transfer to the Purchaser of good and marketable title to the Mortgage Loans free and clear of all Liens or encumbrances, including the documents described in <u>Exhibit E</u>.

(ii) Each Party shall deliver certificates executed on behalf of itself by a duly authorized officer certifying as to (1) the incumbency, and authenticating the signatures of, officers executing this Agreement, (2) the adoption and continuing effect of appropriate resolutions authorizing the such Party's execution, delivery and performance of this Agreement and (3) the accuracy of the representations and warranties contained in this Agreement.

(iii) The Seller shall execute and deliver to Purchaser a Bill of Sale, substantially in the form of <u>Exhibit F</u>, and a Limited Power of Attorney, substantially in the form of <u>Exhibit G</u>.

## SECTION 10.    <u>SURVIVAL OF REPRESENTATIONS AND WARRANTIES</u>.

(a) Subject to Section 3(b), the respective representations and warranties of the Parties contained herein and in any other agreement, certificate, instrument or other document

14

delivered pursuant thereto or hereto shall survive for a period of ninety (90) days after the Servicing Transfer Date unless otherwise set forth herein or in such other agreement, certificate instrument or document.

(b)    Except as otherwise provided herein, including in Section 3(b), the respective covenants of the Parties contained in this Agreement, or in any other agreement, certificate, instrument or other document delivered pursuant hereto or thereto shall survive the Closing.

### SECTION 11.    COSTS.

(a)    The Purchaser shall pay all of its out-of-pocket expenses (including its legal fees and expenses) and custodial fees in connection with its bid on the Mortgage Loans and, if applicable, its purchase of the Mortgage Loans hereunder. The Seller shall pay all of its out-of-pocket expenses (including its legal fees and expenses) in connection with its sale of the Mortgage Loans hereunder. The Seller shall prepare an Assignment of Mortgage in blank for each Mortgage Loan. The Purchaser shall prepare and pay the recording fees associated with any recordation of a Mortgage Loan.

(b)    The Seller shall be responsible for paying any and all fees and expenses due to the Seller's Custodian until such time as the Seller's Custodian shall cease to hold the Mortgage Loans for the Seller. The Purchaser shall be responsible for paying any and all fees and expenses due to Purchaser's Custodian.

(c)    Except as otherwise provided in this Agreement, the Seller and the Purchaser will each pay all costs and expenses incurred by each of them, or on their behalf respectively, in connection with the performance of this Agreement and the transactions contemplated hereby, including fees and expenses of their own financial consultants and counsel.

### SECTION 12.    TERMINATION.

(a)    <u>Termination Prior to Closing</u>. This Agreement may be terminated prior to the Closing Date as follows:

(i)    by mutual written agreement of the Purchaser and the Seller;

(ii)    by the Purchaser or the Seller, if there shall be in effect a Final Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement;

(iii)    by the Purchaser (provided that the Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach of any of the representations or warranties of the Seller or a material breach of any of the covenants set forth in this Agreement on the part of the Seller, which breach is not cured within ten (10) Business Days following written notice to the Seller;

(iv)    by the Seller (provided that the Seller is then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach of any of the representations or warranties or a material breach of any of the

15

covenants set forth in this Agreement on the part of the Purchaser, which breach is not cured within ten (10) Business Days following written notice to the Purchaser;

       (v)    by the Purchaser, if (1) the Sale Order has not been entered by September 14, 2007, (2) the Closing has not occurred, through no fault of Purchaser on or before September 18, 2007, or (3) the failure of any condition to closing set forth in Section 9(b); or

       (vi)    by the Seller, if (1) after using commercially reasonable efforts to obtain the Sale Order, the Sale Order has not been entered by September 14, 2007, (2) the Closing has not occurred, through no fault of Seller, on or before September 18, 2007, or (3) the failure of any condition to closing set forth in Section 9(c).

       (b)    <u>Termination</u>.   Upon any termination of this Agreement pursuant to Section 12(a)(i), or (ii), this Agreement shall be void and have no effect, without any liability on the part of any Party or any shareholders, directors or officers thereof.

       **SECTION 13.**     **NOTICES.**

       All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

       (a)    if to the Seller:

             New Century Financial Corporation
             3121 Michelson Drive, 6th Floor
             Irvine, CA  92612
             Facsimile: (949) 517-4052
             Attn:  Kevin Cloyd

       with a copy to:

             O'Melveny & Myers LLP
             275 Battery Street, Suite 2600
             San Francisco, CA  94111
             Facsimile: (415) 984-8701
             Attn:   Suzzanne Uhland, Esq.
                       C. Brophy Christensen, Esq.

       and:

             Hahn & Hessen LLP
             488 Madison Avenue
             New York, NY  10022
             Facsimile: (212) 478-7400
             Attn: Mark Power, Esq.

(b)     if to the Purchaser, at the address indicated on the signature page hereof, or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

### SECTION 14.      MISCELLANEOUS.

(a)     Severability. Any part, provision representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the Parties waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any Party of the economic benefit intended to be conferred by this Agreement, the Parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

(b)     Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

(c)     Consent to Jurisdiction. THE PARTIES AGREE THAT JURISDICTION AND VENUE IN ANY ACTION BROUGHT BY ANY PARTY PURSUANT TO THIS AGREEMENT SHALL PROPERLY AND EXCLUSIVELY LIE IN THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURT FOR ITSELF AND IN RESPECT OF ITS PROPERTY WITH RESPECT TO SUCH ACTION. THE PARTIES IRREVOCABLY AGREE THAT VENUE WOULD BE PROPER IN SUCH COURT, AND HEREBY WAIVE ANY OBJECTION THAT SUCH COURT IS AN IMPROPER OR INCONVENIENT FORUM FOR THE RESOLUTION OF SUCH ACTION. THE PARTIES FURTHER AGREE THAT THE MAILING BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, OF ANY PROCESS REQUIRED BY ANY SUCH COURT SHALL CONSTITUTE VALID AND LAWFUL SERVICE OF PROCESS AGAINST THEM, WITHOUT NECESSITY FOR SERVICE BY ANY OTHER MEANS PROVIDED BY STATUTE OR RULE OF COURT.

(d)     Governing Law. All questions concerning the construction, validity and interpretation of this Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York, without giving effect to any choice of law or conflict of law provision (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

(e)      Further Agreements. The Parties each agree to execute and deliver to the other such additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

(f)      Successors and Assigns; Assignment of Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Parties and their respective successors and assigns. This Agreement may be assigned, pledged or hypothecated by the Seller without the consent of the Purchaser. The Purchaser may not assign, pledge or hypothecate this Agreement without the prior written consent of the Seller (which may be withheld by the Seller in its sole discretion).

(g)      Parties in Interest. Nothing in this Agreement, express or implied, is intended to confer on any Person other than the Parties and their respective successors and assigns any rights or remedies under or by virtue of this Agreement.

(h)      Entire Agreement. The annexes, exhibits and schedules identified in this Agreement are incorporated herein by reference. This Agreement and the documents referred to herein (including any confidentiality agreement between the Parties) contain the entire agreement between the Parties and supersede any prior understandings, agreements or representations by or between the Parties, written or oral, which may have related to the subject matter hereof in any way.

(i)      Amendments and Waivers; Other Agreements. No term or provision of this Agreement may be amended, waived or modified unless such amendment, waiver or modification is in writing and signed by the Party against whom such waiver or modification is sought to be enforced.

(j)      Exhibits. The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

(k)      General Interpretive Principles.  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(i)      the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(ii)      accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(iii)      references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(iv)      reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

18

(v)    the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(vi)    the terms "include" and "including" shall mean without limitation by reason of enumeration.

(l)    <u>Privacy Act Compliance</u>. The Parties shall maintain policies, procedures, and safeguards designed to protect the security and confidentiality of any non-public personal information relating to Mortgagors. The Parties agree to comply with the provisions of the Gramm-Leach-Bliley Act of 1999, as the same may be amended from time to time, and all implementing rules and regulations regarding consumer financial privacy, to the extent applicable to each of their actions and responsibilities hereunder.

(m)    <u>Document Preservation</u>. The Purchaser shall preserve for a period of six (6) years after the Closing Date all records relating to the Mortgage Loans existing prior to the Closing Date. After the Closing Date, where there is a legitimate purpose, the Purchaser shall provide the Seller with access at the Seller's sole expense, upon prior reasonable written request specifying the need therefor, during regular business hours, to all books and records of the Purchaser, whether in electronic or any tangible form, but, in each case, only to the extent relating to the Mortgage Loans prior to the Closing Date, and the Seller and its representatives shall have the right to make copies of such books and records at its sole expense; provided, however, that the foregoing right of access shall not be exercisable in such a manner as to interfere unreasonably with the normal operations and business of the Purchaser; and provided, further, that such information shall be held by the Purchaser in confidence to the extent required by, and in accordance with, any confidentiality agreement between the Parties. Such books and records may nevertheless be destroyed by the Purchaser if the Purchaser sends to the Seller written notice of its intent to destroy such books and records, specifying with particularity the contents of the books and records to be destroyed. Such books and records may then be destroyed after the 30th day after such notice is given unless the Seller object in writing to the destruction, in which case the Purchaser shall deliver such books and records to the Seller.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

**SELLER:**

NEW CENTURY FINANCIAL CORPORATION

By: _____

Name: *Holly FELDER Ellis*

Title: *CEO*

*[Signatures continue on following page]*

S-1

LAI:1145310.3

**PURCHASER:**

RESIDENTIAL MORTGAGE SOLUTION L.L.C.

By: _____

Name: Jack Gotzelman
Title: Managing Director

Jurisdiction of Organization or Formation of
Purchaser:

_____ Delaware LLC _____

Address of Purchaser:

2800 28th Street Ste # 102
Santa Monica, CA 90405
Attention: Jack Gotzelman
Fax No: (310) 450-7005
Email: getzelman@residentialms.com

S-2

## EXHIBIT A

## SELLING SUBSIDIARIES

NC Capital Corporation

NC Asset Holding, L.P. (successor by conversion)

LA1:1145310.3

## EXHIBIT B

## MORTGAGE LOAN SCHEDULE

[See attached]

B-1

## MORTGAGE LOAN SCHEDULE

| Number | State | UPB |
|---|---|---|
| 10339253 | NJ | $ 306,000.00 |
| 10377794 | TX | $ 68,902.09 |
| 10417631 | GA | $ 286,469.62 |
| 10422180 | TX | $ 108,292.57 |
| 10430070 | TX | $ 94,164.75 |
| 10436600 | FL | $ 585,000.00 |
| 10464529 | CA | $ 316,787.47 |
| 10483085 | NV | $ 114,625.16 |
| 10484360 | NM | $ 129,608.04 |
| 10488202 | CA | $ 200,900.00 |
| 10489255 | TX | $ 63,600.00 |
| 10489282 | TX | $ 60,400.00 |
| 10489323 | TX | $ 62,800.00 |
| 10489328 | TX | $ 62,000.00 |
| 10492209 | CA | $ 520,000.00 |
| 10492429 | CA | $ 238,117.04 |
| 10493554 | GA | $ 119,961.88 |
| 10498743 | IL | $ 293,008.09 |
| 10502626 | IL | $ 123,962.44 |
| 10503000 | CO | $ 662,850.00 |
| 10506360 | TX | $ 75,237.52 |
| 10509250 | CA | $ 175,731.33 |
| 10510293 | CO | $ 399,081.24 |
| 10510600 | CA | $ 577,191.35 |
| 10518144 | CA | $ 959,960.00 |
| 10518606 | SC | $ 75,751.34 |
| 10520128 | CA | $ 379,887.14 |
| 10529679 | CA | $ 251,200.00 |
| 10530775 | FL | $ 129,592.09 |
| 10538966 | TX | $ 208,969.01 |
| 10546480 | CO | $ 283,790.46 |
| 10546558 | TX | $ 139,920.00 |
| 10548714 | NC | $ 53,770.05 |
| 10550787 | HI | $ 294,113.12 |
| 10555237 | SC | $ 86,378.95 |
| 10559489 | MO | $ 120,000.00 |
| 10562367 | CA | $ 1,162,500.00 |
| 10563361 | FL | $ 464,000.00 |
| 10569013 | IL | $ 1,424,706.71 |
| 10571335 | CO | $ 360,000.00 |
| 10610877 | OR | $ 185,899.45 |
| 10639244 | IL | $ 244,999.94 |
| 10641953 | TX | $ 37,244.54 |
| 10659718 | TX | $ 39,387.48 |
| 10668511 | FL | $ 99,387.04 |
| 10674481 | NC | $ 30,768.70 |
| 10701421 | PA | $ 29,877.19 |
| 10702391 | PA | $ 36,880.40 |
| 1003256176 | FL | $ 91,999.98 |

| | | | |
|---|---|---|---|
| 1004604958 | IL | $ | 191,398.20 |
| 1004974969 | CA | $ | 279,788.97 |
| 1005124171 | IA | $ | 100,712.55 |
| 1005204361 | CA | $ | 655,345.07 |
| 1005427059 | NY | $ | 494,775.11 |
| 1005494967 | NJ | $ | 83,777.71 |
| 1005597142 | IN | $ | 50,348.62 |
| 1005626405 | IL | $ | 270,000.00 |
| 1005986061 | IN | $ | 55,200.00 |
| 1006201923 | IL | $ | 115,920.97 |
| 1006211636 | IN | $ | 50,150.00 |
| 1006396090 | DC | $ | 243,912.53 |
| 1006439892 | NY | $ | 117,000.00 |
| 1006448089 | NJ | $ | 205,928.42 |
| 1006630871 | IN | $ | 51,222.89 |
| 1006637491 | OH | $ | 134,927.02 |
| 1006712480 | TX | $ | 55,119.79 |
| 1006715398 | IL | $ | 291,933.81 |
| 1006717056 | NY | $ | 100,801.46 |
| 1006732495 | NJ | $ | 206,895.46 |
| 1006767199 | CA | $ | 314,507.64 |
| 1006784606 | SC | $ | 80,041.80 |
| 1006800875 | CA | $ | 460,000.00 |
| 1006824706 | NY | $ | 288,000.00 |
| 1006851775 | PA | $ | 60,000.00 |
| 1006962183 | NH | $ | 292,431.38 |
| 1006964403 | NY | $ | 423,738.08 |
| 1007039322 | FL | $ | 256,499.99 |
| 1007103387 | FL | $ | 228,400.00 |
| 1007134460 | OH | $ | 121,767.37 |
| 1007164971 | MI | $ | 83,930.59 |
| 1007259502 | IN | $ | 65,565.00 |
| 1007359100 | WA | $ | 172,852.76 |
| 1007382307 | TX | $ | 98,604.66 |
| 1007406568 | CA | $ | 399,999.99 |
| 1007416922 | GA | $ | 103,941.39 |
| 1007429767 | SC | $ | 96,192.80 |
| 1007437856 | CA | $ | 680,000.00 |
| 1007457487 | MD | $ | 255,949.81 |
| 1007462685 | OH | $ | 116,690.86 |
| 1007478909 | NY | $ | 55,200.00 |
| 1007558617 | MA | $ | 403,183.27 |
| 1007562853 | CA | $ | 294,987.98 |
| 1007565850 | NY | $ | 255,943.24 |
| 1007571166 | WI | $ | 184,286.44 |
| 1007637293 | OH | $ | 79,974.43 |
| 1007652211 | UT | $ | 100,000.00 |
| 1007664280 | NJ | $ | 408,449.07 |
| 1007670424 | IL | $ | 440,000.00 |
| 1007695327 | MO | $ | 56,777.42 |
| 1007736159 | MN | $ | 175,367.73 |
| 1007737381 | NY | $ | 88,548.39 |

| | | | |
|---|---|---|---|
| 1007746433 | NY | $ | 341,610.25 |
| 1007756332 | CA | $ | 398,788.23 |
| 1007770067 | MA | $ | 268,000.00 |
| 1007784007 | NH | $ | 237,385.37 |
| 1007789529 | CA | $ | 378,100.00 |
| 1007793499 | IA | $ | 90,371.50 |
| 1007823830 | CA | $ | 369,000.00 |
| 1007882044 | NY | $ | 336,000.00 |
| 1007921797 | TN | $ | 157,801.55 |
| 1007931321 | TX | $ | 108,408.25 |
| 1007931465 | OH | $ | 78,262.09 |
| 1007938002 | MO | $ | 165,565.66 |
| 1007947010 | NE | $ | 116,981.52 |
| 1007979155 | TX | $ | 76,200.00 |
| 1008018110 | OH | $ | 49,925.43 |
| 1008027066 | PA | $ | 121,200.00 |
| 1008030196 | MA | $ | 201,746.28 |
| 1008076431 | IL | $ | 65,550.92 |
| 1008077653 | PA | $ | 82,281.44 |
| 1008134878 | GA | $ | 106,093.09 |
| 1008200528 | MA | $ | 178,288.58 |
| 1008220338 | CA | $ | 387,802.87 |
| 1008249004 | IA | $ | 66,344.36 |
| 1008249772 | OH | $ | 124,162.23 |
| 1008256246 | GA | $ | 58,610.65 |
| 1008262569 | NC | $ | 143,100.00 |
| 1008296275 | CA | $ | 459,711.13 |
| 1008308459 | PA | $ | 77,974.79 |
| 1008339069 | IL | $ | 58,050.00 |
| 1008341234 | WI | $ | 169,977.02 |
| 1008345542 | HI | $ | 479,844.62 |
| 1008374029 | FL | $ | 142,191.00 |
| 1008397246 | MN | $ | 149,496.00 |
| 1008411462 | OH | $ | 76,489.04 |
| 1008418410 | CA | $ | 332,000.00 |
| 1008418964 | MI | $ | 64,755.40 |
| 1008427419 | AZ | $ | 265,722.53 |
| 1008449235 | RI | $ | 251,924.07 |
| 1008455904 | CA | $ | 139,500.00 |
| 1008480146 | AZ | $ | 190,962.12 |
| 1008484115 | SC | $ | 156,708.00 |
| 1008549788 | MI | $ | 109,596.80 |
| 1008559696 | AL | $ | 76,681.07 |
| 1008578960 | OH | $ | 95,997.81 |
| 1008600551 | NV | $ | 380,000.00 |
| 1008636498 | FL | $ | 133,907.07 |
| 1008636755 | MO | $ | 65,600.00 |
| 1008668827 | NY | $ | 450,000.00 |
| 1008672135 | GA | $ | 237,903.11 |
| 1008688716 | OH | $ | 133,000.00 |
| 1008726694 | GA | $ | 291,999.97 |
| 1008750522 | CA | $ | 332,500.00 |

| | | | |
|---|---|---|---|
| 1008751521 | WA | $ | 251,526.59 |
| 1008756688 | NJ | $ | 76,300.00 |
| 1008794753 | NM | $ | 265,624.79 |
| 1008810389 | PA | $ | 203,284.18 |
| 1008810593 | IN | $ | 67,462.93 |
| 1008821616 | OH | $ | 84,371.92 |
| 1008849204 | MD | $ | 91,911.56 |
| 1008886119 | NJ | $ | 611,000.00 |
| 1008930918 | MS | $ | 134,400.00 |
| 1008934157 | OH | $ | 67,417.94 |
| 1008971400 | GA | $ | 317,063.73 |
| 1008974041 | NC | $ | 131,964.83 |
| 1008989295 | NJ | $ | 195,883.07 |
| 1009001867 | NY | $ | 735,884.20 |
| 1009033315 | NY | $ | 460,000.00 |
| 1009081753 | UT | $ | 269,309.18 |
| 1009092974 | LA | $ | 139,941.60 |
| 1009178926 | TN | $ | 136,000.00 |
| 1009194034 | MI | $ | 144,000.00 |
| 1009251855 | SC | $ | 114,611.97 |
| 1009253201 | NY | $ | 56,000.00 |
| 1009287746 | FL | $ | 250,548.78 |
| 1009290769 | MI | $ | 58,500.00 |
| 1009325839 | MO | $ | 67,500.00 |
| 1009332901 | WI | $ | 174,938.04 |
| 1009361371 | OH | $ | 82,450.00 |
| 1009371146 | IL | $ | 161,500.00 |
| 1009398270 | TN | $ | 126,512.45 |
| 1009398626 | GA | $ | 234,000.00 |
| 1009485363 | IL | $ | 418,500.00 |
| 1009502763 | HI | $ | 224,000.00 |
| 1009609676 | CO | $ | 110,377.45 |
| 1009866460 | RI | $ | 195,883.68 |
| 1009913533 | IN | $ | 52,225.35 |
| 1009973932 | MI | $ | 71,991.18 |
| 1010033055 | TX | $ | 135,939.83 |
| 1010089824 | PA | $ | 160,502.00 |
| 1010127061 | OH | $ | 76,491.83 |
| 1010168150 | IA | $ | 126,999.99 |
| 1010320342 | MN | $ | 664,901.81 |
| 1010368924 | MI | $ | 79,038.68 |
| 1010401781 | MI | $ | 95,823.76 |
| 1010503966 | CA | $ | 623,726.39 |
| 1010592977 | GA | $ | 171,869.11 |
| 1010624050 | GA | $ | 256,000.00 |
| 1010633923 | OH | $ | 62,994.47 |
| 1010800163 | CO | $ | 177,600.00 |
| 1010855773 | PA | $ | 119,803.92 |
| 1010874869 | TN | $ | 92,225.00 |
| 1010930889 | CA | $ | 256,000.00 |
| 1011067935 | CA | $ | 263,500.00 |
| 1011170001 | MN | $ | 220,800.00 |

| | | | |
|---|---|---|---|
| 1005655873 | OH | $ | 62,967.16 |
| 1006363641 | IN | $ | 82,844.84 |
| 1006871511 | FL | $ | 230,263.81 |
| 1006953656 | OH | $ | 55,837.92 |
| 1007206748 | KY | $ | 69,700.00 |
| 1007244831 | OH | $ | 96,669.00 |
| 1007318761 | OH | $ | 93,500.00 |
| 1007351180 | OH | $ | 85,480.33 |
| 1007413211 | OH | $ | 51,803.67 |
| | | $ 44,958,905.61 | |
| | | 214 Loans | |

## EXHIBIT C

## LIST OF MORTGAGE LOAN DOCUMENTS

(a)     The original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsements from the originator of such Mortgage Loan to the last endorsee (the "Last Endorsee"), endorsed by the Last Endorsee, without recourse in the following form:  "Pay to the order of _____, without recourse" and signed in the name of the Last Endorsee by an authorized officer;

(b)     The original of the guarantee executed in connection with the Mortgage Note (if any);

(c)     The original Mortgage with evidence of recording indicated thereon;

(d)     An original Assignment of Mortgage, in suitable form for recordation in the jurisdiction in which the related Mortgaged Property is located, such assignment to be in blank and signed in the name of the Last Endorsee by an authorized officer;

(e)     The originals of all intervening assignments of the Mortgage (with evidence of recording thereon) showing a complete chain of assignments from the originator of such Mortgage Loan to the Last Endorsee;

(f)     The original policy of title insurance (or a commitment for title insurance, if the policy is being held by the title insurance company pending recordation of the Mortgage); and

(g)     The certificate of primary mortgage guaranty insurance, if any, issued with respect to such Mortgage Loan.

LAI:1145310.3

## EXHIBIT D

## FORM OF SALE ORDER

[See attached]

LAI:1145310.3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Re: 2595** |
| | : | |

ORDER (A) APPROVING ASSET PURCHASE AGREEMENT BY AND AMONG NEW
CENTURY FINANCIAL CORPORATION AND RESIDENTIAL MORTGAGE
SOLUTION L.L.C., (B) AUTHORIZING SALE OF CERTAIN LOANS TO PURCHASER
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND
(C) GRANTING RELATED RELIEF

This matter coming before the Court on the Motion for the entry of (i) an Order

(a) Approving Procedures in Connection With Auction of Residential Mortgage Loans (the

"Loans"), (b) Scheduling Hearing to Proposed Sale of Residential Mortgage Loans and

Approving Form and Manner of Notice Thereof and (c) Granting Related Relief and (ii) an

Order (a) Approving the Proposed Sale and (b) Granting Related Relief (the "Motion") filed by

the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and upon

the Order of this Court dated August 27, 2007 (a) Approving Bidding Procedures in Connection

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Stalking Horse Bidders Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

1

With Auction of Residential Mortgage Loans, (b) Scheduling Hearing to Consider Proposed Sale

of Residential Mortgage Loans and Approving Form and Manner of Notice Thereof and (c)

Granting Related Relief (the "Bidding Procedures Order"); and a hearing having been held on

September 11, 2007 in connection with the Motion (the "Sale Hearing"); and all parties in

interest having been heard, or having had the opportunity to be heard, regarding the sale; and the

Court having considered (x) the Motion, (y) the objections to the Motion having been overruled

on the merits with prejudice, and (z) the arguments made and evidence proffered or adduced in

support of approval of the sale at the Sale Hearing; and it appearing from the affidavits of service

filed with the Court that due and sufficient notice of the Motion and the relief granted by this

Order have been provided to all parties affected thereby (the "Sale Notice"); and it further

appearing that no other or further notice hereof is required; and upon the Court record of these

cases; and the Court having received evidence in support of the approval of that certain

Amended and Restated Mortgage Loan Purchase Agreement between certain of the Debtors and

Residential Mortgage Solution L.L.C. dated as of September 12, 2007 (the "APA")[2] and such

other agreements to be entered into among the parties thereto as contemplated therein; and it

appearing that the relief requested in the Motion and approved hereby is in the best interests of

the Debtors, their estates, creditors, and other parties-in-interest; and upon the record of the Sale

Hearing and these chapter 11 cases including the decision of the Court to approve the Motion,

APA, and sale as reflected on the record of the Sale Hearing; and after due deliberation and good

and sufficient cause appearing therefor, this Court hereby makes the following findings of fact

and conclusions of law:

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA (as defined herein) and the Sale Motion, and, to the extent of any inconsistency, the APA shall govern. A copy of the APA is attached hereto as Exhibit A.

2

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), the parties may consummate the sale immediately upon entry of this Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

C.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the sale has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014 and in substantial compliance with the Bidding Procedures Order.

D.    Actual written notice of the Sale Hearing, the Motion, and the sale and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all parties in interest in these cases, including, but not limited to: (i) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (ii) counsel to the Purchaser; (iii) potential bidders for the Mortgage Loans; (iv) the United States Trustee and (vi) any entity that has filed a notice of appearance and demand for service of papers in these

---

[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order to the extent not inconsistent herewith.

3

bankruptcy cases pursuant to Bankruptcy Rule 2002.

        E.      The Sale Notice was published in the National Edition of the Wall Street Journal substantially in the form approved by the Bidding Procedures Order as soon as practicable after the approval of the Sale Notice.

        F.      The Debtors have complied with all obligations to provide notice of the Motion, Auction, and Sale Hearing required by the Bidding Procedures Order and such notice was good and sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, or the sale is required.

        G.      The disclosures made by the Debtors concerning the APA, the sale and the Sale Hearing were good, complete and adequate. All of the representations of the Seller in the APA are true and correct as of the date hereof.

        H.      The Purchaser is not affiliated with the Debtors.

        I.      The terms of the sale, as set forth in the APA, are fair and reasonable under the circumstances of these chapter 11 cases.

        J.      The Purchaser has negotiated the terms and conditions of the sale in good faith and at arm's length, is entering into the sale in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the sale at any time after the entry of this Order, including immediately after its entry. The Court has found that the Purchaser has acted in good faith in all respects in connection with these Chapter 11 cases and the sale in that, among other things:

        (1)      The Purchaser recognized that the Debtors were free to negotiate

4

with any other party that expressed qualified interest in purchasing the Mortgage Loans;

   (2) the Purchaser agreed to subject the APA to the competitive bidding procedures set forth in the Bidding Procedures Order;

   (3) the Purchaser in no way induced, caused, or required the commencement of the Chapter 11 filings of the Debtors;

   (4) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser with the Debtors in connection with the sale have been disclosed;

   (5) there is no evidence that the Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction;

   (6) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors; and

   (7) the negotiation and execution of the APA and all other aspects of the sale were conducted in good faith.

   K. The Auction was duly noticed and conducted in a non-collusive, competitive, fair and good-faith manner in accordance with the Bidding Procedures Order.

   L. The Purchaser is a qualified bidder under the Bidding Procedures Order.

   M. The Purchase Price in the APA represents the fair market value of, and constitutes the highest and best offer for, the Mortgage Loans, and will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative. The Debtors' determination that the purchase price in the APA constitutes the highest and best offer for the Mortgage Loans constitutes a valid and sound exercise of the Debtors' business judgment.

   N. The APA represents a fair and reasonable offer to purchase the Mortgage Loans under the circumstances of these Chapter 11 Cases. No other entity or group of entities

5

has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

        O.     The consideration provided for the Mortgage Loans pursuant to the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Purchaser nor the Debtors are entering into the transactions contemplated by the APA fraudulently.

        P.     The transfer of each of the Mortgage Loans to the Purchaser is or will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Mortgage Loans free and clear of all Liens, encumbrances, offset rights, and other interests accruing, arising or relating to any time prior to the Closing Date.

        Q.     The Debtors may sell the Mortgage Loans free and clear of all Liens, encumbrances, offset rights, and other interests against the Debtors or their estates because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, encumbrances, offset rights or interests against the Debtors or their estates who did not object, or who withdrew their objections, to the sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such encumbrances or interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their encumbrances or interests, if any, in each instance against the Debtors or their estates, attach to the cash proceeds

6

of the sale ultimately attributable to the property in which they allege an interest.

R.       The Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the sale pursuant to section 363(b) of the Bankruptcy Code prior to a Chapter 11 plan in that, among other things, the market value of the Mortgage Loans is extremely volatile and the sale is time-sensitive given current market conditions for acquiring these type of loans, and that any sale taking place after the time contemplated by the parties would likely yield less value than the sale contemplated hereby.

S.       Pursuant to the record developed at the bid procedures hearing related to the Motion, the Debtors' privacy policy relating to consumer information does not prohibit the sale.

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:

1.       The relief requested in the Motion is granted and approved as set forth in this Order, and the sale contemplated thereby is hereby approved as set forth in this Order.

2.       All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.       The APA, all other ancillary documents to the APA and all of the terms and conditions thereof are hereby approved in their entirety.  To the extent of any conflict or inconsistency between the provisions of this Order and the terms and conditions of the APA, as applicable, this Order shall govern and control.

4.       Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are

7

authorized and directed to take any and all actions necessary or appropriate to (i) consummate

the sale of the Mortgage Loans to the Purchaser pursuant to and in accordance with the terms and

conditions of the APA, (ii) close the sale as contemplated in the APA and this Order, and (iii)

execute and deliver, perform under, consummate, implement and close fully the APA together

with all additional instruments and documents that may be reasonably necessary or desirable to

implement the APA and the sale, and to take all further actions as may be reasonably requested

in accordance with the APA by the Purchaser as the case may be, for the purpose of assigning,

transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, the

Mortgage Loans, or as may be reasonably necessary or appropriate to the performance of the

obligations as contemplated by the APA or such other ancillary documents.

5.      The terms and provisions of this Order shall be binding in all respects

upon the Purchaser, the Debtors and their estates, any trustees thereof, their estates, all creditors

and shareholders of any of the Debtors, all interested parties, and their respective successors and

assigns, including, but not limited to, all non-debtor parties to the Mortgage Loans.

6.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code,

the Debtors are authorized to transfer the Mortgage Loans on the Closing Date. Such Mortgage

Loans shall be transferred to the Purchaser upon the Closing Date and, as of such Closing Date,

any such transfer shall constitute a legal, valid, binding and effective transfer of such Mortgage

Loans and shall be free and clear of (a) all Liens and encumbrances, (b) all offset rights, and (c)

all other interests, including without limitation, any and all claims, obligations, demands,

guaranties, options, debts, rights, contractual commitments, restrictions, and matters of any kind

and nature, whether direct or indirect, monetary or non-monetary, absolute or contingent,

matured or unmatured, liquidated or unliquidated, of, by or against the Debtors, their estates or

8

such Mortgage Loans, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, (i) claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, diminution, modification or termination of the interest of the Debtors in such Mortgage Loans, (ii) claims and encumbrances in respect of taxes, or (iii) any claim that the Purchaser is a successor to the Debtors arising under federal, state or local law, rule, regulation or at equity), with all such encumbrances and interests to attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect that they now have as against such Mortgage Loans.

7.      The Purchaser shall have no liability or responsibility for any encumbrance, offset right or interest arising, accruing, or relating to a period prior to the Closing Date. All persons and entities holding Liens or interests in all or any portion of the Mortgage Loans arising under or out of, in connection with, or in any way relating to the Debtors, the Mortgage Loans, the operation of the Debtors' businesses prior to the Closing Date, the transfer of the Mortgage Loans to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property, the Mortgage Loans, such persons' or entities' Liens or interests in and to the Mortgage Loans.

8.      On the Closing Date, each creditor of the Debtors and/or person or entity that received notice of or has actual knowledge of the proposed sale is authorized and directed to execute such documents and take all other actions as may be necessary to release encumbrances, offset rights or interests on the Mortgage Loans, if any, as provided for herein, as such encumbrances, offset rights, or interests may have been recorded or may otherwise exist.

9.      This Order is and shall be binding upon and shall govern the acts of all

9

entities including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrar of certificates, administrative agencies,

governmental units, secretaries of state, federal, state, and local officials, and all other persons

and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any of the Mortgage Loans.  On the

Closing Date, all Liens, encumbrances, offset rights, or other interests against the Debtors'

estates of record as of the date of this Order shall forthwith be removed and stricken as against

the Mortgage Loans, without further order of the Court or act of any party.  Upon the Closing

Date, the entities listed above in this paragraph are authorized and specifically directed to strike

all such recorded Liens, encumbrances, offset rights or other interests against the Mortgage

Loans as provided for herein from their records, official and otherwise.

        10.     Each and every federal, state, and local governmental agency, unit or

department is hereby directed to accept this Order as sole and sufficient evidence of the transfer

of title of the Mortgage Loans to the Purchaser and such agency or department may rely upon

this Order in consummating the transactions contemplated by the APA.

        11.     If any person or entity that has filed a financing statement, mortgage,

mechanic's lien, lis pendens, or other document or agreement evidencing an encumbrance or

interest in the Mortgage Loans that are being transferred free and clear, as provided herein, of

such encumbrance or interest, shall not have delivered to the Debtors prior to the Closing Date,

in proper form for filing and executed by the appropriate parties, a termination statement,

instrument of satisfaction, release of all such encumbrances or interests which such person or

entity has with respect to the Mortgage Loans or otherwise, the Debtors or the Purchaser are

hereby authorized to execute and file such statement, instrument, release, or other document on behalf of such person or entity with respect to the Mortgage Loans.

12.     All entities who are presently, or on or before the Closing Date may be, in possession of some or all of the Mortgage Loans to be transferred as of such Closing Date are hereby directed to surrender possession of the Mortgage Loans to the Purchaser on the Closing Date at that entity's sole expense.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to transfer the Mortgage Loans to the Purchaser, in each case in accordance with the terms of the APA and this Order.

14.     The Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Mortgage Loans. The Purchaser shall not be liable for any claims against the Debtors, or any of their predecessors or affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character (including, without limitation, under any successor liability, de facto merger, substantial continuity, or other theory), now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Mortgage Loans prior to the Closing. The Purchaser has given substantial consideration under the APA for the benefit of the holders of Liens. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests

11

in the Debtors or any of the Mortgage Loans.

15.     The terms and provisions of the APA, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including the Debtors, any trustees thereof, their estates, their creditors, their shareholders, and all interested parties, administrative agencies, governmental units, secretaries of state, federal, state and local officials, including any such administrative or governmental authorities maintaining any authority relating to environmental, health, or safety laws, and their respective successors or assigns, and upon any persons asserting an encumbrance against or interest on any of the Mortgage Loans to be sold and assigned to the Purchaser.

16.     Unless otherwise agreed to by the Purchaser, the Debtors agree that their obligations hereunder and under the APA shall not be discharged by the entry of an order confirming a Chapter 11 plan of reorganization in any of the Debtors' Chapter 11 cases. This Order shall be binding upon and enforceable against, among others, the Debtors, their estates and any and all Chapter 7 and Chapter 11 trustees thereof.

17.     This Court retains jurisdiction, even after the closing of these chapter 11 cases, to:

> (a)     interpret, implement and enforce the terms and provisions of this Order and the terms of the APA, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;
>
> (b)     protect the Purchaser or any of the Mortgage Loans against any of the encumbrances or other interests, as provided herein, including to enjoin the commencement or continuation of any action seeking

12

to impose successor liability;

(c)     enter orders in aid or furtherance of the sale;

(d)     compel delivery of all Mortgage Loans to the Purchaser; and

(e)     re-open the Debtors' Chapter 11 cases to enforce the provisions of this Order.

18.     The Purchaser is not a joint employer, single-employer, co-employer, or successor employer with any of the Debtors by virtue of the APA, the consummation of the sale, or the entry of this Order.

19.     The Purchaser may consummate the sale at any time after entry of the Order (including immediately thereafter) by waiving any and all closing conditions set forth in the APA that have not been satisfied and by proceeding to close the sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest.

20.     The sale is undertaken by the Purchaser in good faith (as that term is used in section 363(m) of the Bankruptcy Code), and the Purchaser shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the sale, even if such closing occurs immediately upon entry of this Order.  Accordingly, the reversal or modification on appeal of the authorization to consummate the sale provided herein shall not affect the validity of the sale to the Purchaser unless such authorization is duly stayed prior to closing of the sale pending such appeal.  The Purchaser is a purchaser in good faith of the Mortgage Loans, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

21.     The APA and any related agreements, documents, or other instruments

13

may be modified, amended, or supplemented by the parties thereto, in a writing signed by the

parties in accordance with the terms thereof, without further order of the Court, provided that any

such modification, amendment, or supplement is not material.

22.     Notwithstanding anything to the contrary in this Order or the APA, to the

extent any of the Mortgage Loans consist of an interest in a consumer credit transaction subject

to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section

433.1 of title 16 of the Code of Federal Regulations) the Purchaser shall remain subject to the

same claims and defenses that are related to such consumer credit transaction or such consumer

credit contract to the same extent as the Purchaser would be subject to such claims and defenses

of the consumer if such interest had not been purchased pursuant to Bankruptcy Code Section

363, as provided for in Section 363(o) of the Bankruptcy Code.

23.     In the event the parties to the APA elect to include as Mortgage Loans

any loans that are subject to the terms of the Stipulated Preliminary Injunction (the "Preliminary

Injunction") entered between the State of Ohio, ex rel. Marc Dann, Attorney General ("State of

Ohio") and New Century Financial Corporation, New Century Mortgage Corporation and

Home123 Corporation on March 28, 2007 in that certain case known as *State of Ohio, ex rel.

Marc Dann, Attorney General vs. New Century Financial Corp., et al.*, Cuyahoga County Court

of Common Pleas, Case No. CV-07-618660 (the "Ohio Action"), such additional loans shall not

hereby be sold, assigned or transferred to the Purchaser unless (i) the State of Ohio consents in

writing to the sale, assignment or transfer of any such Mortgage Loans or (ii) the sale,

assignment or transfer of any such Mortgage Loans is made in accordance with the terms of the

Preliminary Injunction or the Agreed Entry for Release of Four (4) Loans and Sale of Twenty-

One (21) Loans entered between the State of Ohio, New Century Financial Corporation, New

14

Century Mortgage Corporation and Home123 Corporation and Deutsche Bank Structured Products, Inc. on August 21, 2007 in the Ohio Action.

24.    Ellington Management Group L.L.C. ("Ellington") is the backup bidder for the Mortgage Loans pursuant to the terms of the last bid it submitted at the Auction and shall be obligated to close on and be bound by the terms of such bid in the event that the sale of the Mortgage Loans to the Purchaser fails to close by the outside date set forth in the APA. In such event, the Debtors will submit to the Court a further order authorizing the Debtors to consummate and close the sale with Ellington pursuant to the terms of its bid and subject to all the terms and conditions thereof.

25.    The provisions of this Order are non-severable and mutually dependent.

26.    Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.


Dated:  Wilmington, Delaware
        _____, 2007

                                    _____
                                    THE HONORABLE KEVIN J. CAREY
                                    UNITED STATES BANKRUPTCY JUDGE

15

## EXHIBIT A

### Asset Purchase Agreement

LA3:1138463.1

## EXHIBIT E

## MORTGAGE LOAN CLOSING DOCUMENTS

1.  The original Mortgage Note or a certified copy of the Mortgage Note together with a lost note affidavit, bearing all intervening endorsements showing a complete chain of endorsements from the originator of such Mortgage Loan to the last endorsee (the "Last Endorsee"), endorsed by the Last Endorsee, without recourse in the following form: "Pay to the order of _____, without recourse" and signed in the name of the Last Endorsee by an authorized officer.

2.  The original Mortgage with evidence of recording indicated thereon or a certified copy of the Mortgage together with a lost mortgage affidavit.

3.  The original policy of title insurance (or a commitment for title insurance, if the policy is being held by the title insurance company pending recordation of the Mortgage), or a copy of such document, together with a lost title policy or lost title commitment affidavit.

4.  An original Assignment of Mortgage, in suitable form for recordation in the jurisdiction in which the related Mortgaged Property is located, such assignment to be in blank and signed in the name of the Last Endorsee by an authorized officer

E-1

## EXHIBIT F

## FORM OF BILL OF SALE

BILL OF SALE, dated [Date of Funding], from [SELLER] ("Seller") to RESIDENTIAL MORTGAGE SOLUTION, L.L.C. ("Purchaser").

WHEREAS, pursuant to the Mortgage Loan Purchase Agreement, dated as of [Date of Funding], by and between the Purchaser and the Seller (the "Agreement"), the Seller agreed to grant, sell, assign, convey, transfer and deliver to the Purchaser, servicing released, all right, title and interest in and to the Mortgage Loans identified in the Mortgage Loan Schedule attached hereto as Exhibit "A".

NOW, THEREFORE, in consideration of the payment of [Funding Amount] and other valuable consideration, the receipt of which is hereby acknowledged, and intending to be legally bound hereby, the Seller by these presents does hereby sell, convey, transfer, assign, set over to, and vest in, the Purchaser, its successors and assigns, all of the Seller's right, title and interest, legal or equitable, in and to the Mortgage Loans (including, without limitation, the related files and documents, accounts and funds, and servicing rights) described in the Mortgage Loan Schedule. The terms of this Bill of Sale shall not supersede any terms of the Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of the Seller.

SELLER:

_____

By: _____

Name : _____

Title:_____

Date: _____

[Seal]

F-1

## EXHIBIT G

## FORM OF LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that _____, a corporation organized and existing under the laws of _____, and having its principal place of business at _____, as Principal (the "Principal"), hereby constitutes and appoints _____ having its principal place of business at _____ as Appointee ("Appointee"), by and through the Appointee's officers, the Principal's true and lawful Attorney-in-Fact, in the Principal's name, place and stead, in connection with all mortgage loans and related assets, including without limitation any improved real property ("Real Estate Owned"), in the name of Principal solely for the purpose of performing such acts and executing such documents in the name of the Principal necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes"), and in respect of any deeds or other title instruments vesting or otherwise conveying ownership in and to any Real Estate Owned to Principal or its affiliates or subsidiaries, for which the undersigned has relinquished or otherwise transferred to Appointee, and for which - _____ is acting as the Appointee.

This Appointment shall apply only to the following enumerated transactions:

1.  The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage of Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured

2.  The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to Principals to accomplish same.

3.  The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as Real Estate Owned, or conveyance of title to Real Estate Owned.

4.  The completion of loan assumption agreements.

5.  The full satisfaction/release of a Mortgage or Deed of Trust or full reconveyance upon payment and discharge of all sums secured thereby, including, without limitation,

LAI:1145310.3

cancellation of the related Mortgage Note.

6.  The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.  The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.  With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

    a.  the substitution of Principal(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b.  the preparation and issuance of statements of breach or non-performance;

    c.  the preparation and filing of notices of default and/or notices of sale;

    d.  the cancellation/recission of notice of default and/or notices of sale;

    e.  the taking of deed in lieu of foreclosure; and

    f.  the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.e. above.

9.  With respect to the sale of Real Estate Owned, including, without limitation, the execution, amendment, cancellation, or rescission of the following documentation:

    a.  listing agreements;

    b.  purchase and sale agreements;

    c.  grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

    d.  escrow instructions;

    e.  attorney retainer or fee agreements, for evictions, closings, or other related litigation; and

G-2

LAI:1145310.3

    f.   any and all documents necessary to effect the transfer of property.

10. The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

11. The Endorsement on behalf of the Principal all checks, drafts, and/or negotiable instruments made payable to Principal.

12. To demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) associated with any and all Mortgages, Deeds of Trust, and other related assets, including without limitation Real Estate Owned, delegated by Principal to Appointee pursuant to the Agreement, and to use or take any lawful means for recovery by legal process or otherwise.

13. To demand, sue for, recover, and receive possession (whether possession is now in issue, or hereafter shall become in issue) of any and all Real Estate Owned associated with any and all Mortgages, Deeds of Trust, and other related assets delegated, assigned, or otherwise transferred by Principal to Appointee, and to use or take any lawful means for recovery by legal process or otherwise, including without limitation the execution, amendment, cancellation, or rescission of the following documentation:

    a.   notices to quit, or other initial demands;

    b.   complaints or other initial court filings;

    c.   affidavits, declarations, and the like as necessary to obtain a court judgment for possession;

    d.   settlement agreements, cash-for-keys agreements, or other stipulations;

    e.   any and all required rent control related documentation, including without limitation registration statements; and

    f.   any and all documents necessary to effect gaining possession of property, or to counter or otherwise settle any alleged defenses to the right to possession.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of _____.

This Power covers all loans, security instruments, and improved real property for which the Undersigned has authority to act, including under a Power of Attorney given by the title holder. The Undersigned agrees to execute such further documents as the Attorney-in-Fact may request

G-3

from time to time to effectuate the purpose and intent of this Agreement, including, but not limited to, individual Powers of Attorney for specific properties and/or jurisdictions and deeds to third parties.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Appointee to the Principal, or otherwise limit in any manner any duties of the Appointee, under any other agreement, (ii) limit in any manner any representations or warranties provided by the Principal to the Appointee, or otherwise limit in any manner any duties of the Principal, under any agreement, (iii) be construed to grant the Appointee the power to initiate or defend any suit, litigation, or proceeding in the name of Principal except as specifically provided for herein, and (iv) be construed to create a duty of the Appointee to initiate or defend any suit, litigation, or proceeding in the name of Principal except as specifically provided for herein.

This Limited Power of Attorney is not intended to extend the powers granted to the Appointee under any other agreement or to allow the Appointee to take any action with respect to Mortgages, Deeds of Trust, Mortgage Notes, or other related assets, including without limitation Real Estate Owned, not authorized herein or in any other agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

This Limited Power of Attorney shall continue in full force and effect until

_____.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

[the rest of this page left intentionally blank]

G-4

     IN WITNESS WHEREOF, _____, as Principal has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this _____ day of _____, 2007.

 

                                       _____,
                                        as Principal

                                        By:_____
                                        Name:
                                        Title:

                                        By:_____
                                        Name:
                                        Title:

Witness:                                        Witness:

_____          _____
Name:                                          Name:
Title:                                            Title:

Acknowledges and Agreed
_____, as Appointee

By:_____
Name:
Title:

STATE OF _____
COUNTY OF _____

On _____ before me,
_____. personally appeared
_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

LA1:1145310.3

WITNESS my hand and official seal.

_____          SPACE BELOW FOR NOTARY
STAMP
NOTARY SIGNATURE

G-2