IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416(KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | |
| | : | **Hearing Date: October 2, 2007** |
| | : | |
| | | **Re: Docket No. 2274** |

## DEBTORS' OPPOSITION TO MOTION OF LEAD PLAINTIFF
## FOR LIMITED MODIFICATION OF THE STAY

New Century Financial Corporation, a Maryland corporation, New Century TRS

Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as debtor

and debtor in possession in the above-captioned chapter 11 cases (collectively, "Debtors"),

respectfully file this opposition ("Opposition") to the Motion ("Motion") of Lead Plaintiff

(collectively, "Securities Plaintiffs") for Limited Modification of the Stay. In support of the

Opposition, the Debtors respectfully state as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## **INTRODUCTION**

The Securities Plaintiffs—who filed Proofs of Claim in this bankruptcy proceeding only after filing the Motion—stand at the "back of the line" with their claims against the estate under the Bankruptcy Code's priority scheme.  Their private securities action against the current and former officers and directors of the Debtors is of no benefit to the estate and is not being prosecuted for the public interest.  The Securities Plaintiffs nonetheless seek to leapfrog to the front of the line by forcing the Debtors to immediately produce an immense number of documents, including:

> a. A copy of all documents gathered in conjunction with the internal investigation conducted by the New Century Audit Committee of its Board of Directors, or any subcommittee, including but not limited to: (a) all e-mails and other documents gathered and/or produced during the course of this investigation; and (b) all documents relating to New Century's Restatements;
>
> b. A copy of all documents produced in conjunction with the SEC [Securities Exchange Commission], USAO [United States Attorney's Office] and NYSE [New York Stock Exchange] investigations in connection with the Restatements, the Debtors' accounting and financial statement irregularities;
>
> c. A copy of all documents produced in conjunction with the Examiner's investigation; and
>
> d. A copy of all documents produced in response to the Committee's [Official Committee of Unsecured Creditors] 2004 Request.

Motion at ¶ 10.  According to the Securities Plaintiffs, this "limited" relief is justified by the unsupported claims that it would "impose virtually no additional burden" on the Debtors and be "in the interests of justice."  *Id*. at 2.

Notwithstanding the Securities Plaintiffs' *ipse dixit*, the broad and sweeping relief sought should be denied for the following independent reasons.  First, the Motion is not supported by any evidence establishing "cause" for relief from the automatic stay.  The Securities Plaintiffs' failure to make the most basic showing of cause requires denial of the Motion.

2

Second, granting the Motion will in fact force the Debtors to incur substantial expenses; compel them to engage in time-consuming, duplicative, and costly litigation; and interfere with the efficient administration of the estate. In contrast, the Securities Plaintiffs fail to articulate a single reason why they need, right now, the documents they demand. Nor have they shown a likelihood that the United States District Court for the Central District of California, which presides over the underlying securities litigation, will lift the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Under these circumstances, the Securities Plaintiffs cannot justify the denial of the fundamental protection provided to the Debtors by the automatic stay.

Third, granting the Securities Plaintiffs the relief they seek would run counter to the policies underlying the automatic stay. Namely, it would interfere with the "orderly liquidation" of the Debtors, create distracting near-term demands for the attention of estate representatives, and force the estate to spend money now for the benefit of potential creditors with subordinated claims to the detriment of other creditors with superior claims. The Court should deny the Securities Plaintiffs' Motion.

## BACKGROUND

### A.    The Securities Plaintiffs and Their Subordinated Claims

Prior to the petition date, the Securities Plaintiffs commenced a securities class action against the Debtors and certain of their current and former officers and directors (the "D&O Defendants") captioned as *In re New Century Securities Litigation*, No. CV 07-00913 DDP (JTLx) (the "Securities Litigation"), in the United States District Court for the Central District of California (the "District Court").

Pursuant to Bankruptcy Code section 362, the Securities Litigation was automatically stayed as against the Debtors when the petition was filed in this Court. In addition, under the

3

PSLRA "all discovery and other proceedings" in the Securities Litigation have been "stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). Because the purpose of the PSLRA stay is to prevent plaintiffs from initiating a "fishing expedition" and engaging in abusive and costly discovery practices, the stay may be lifted only in exceptional circumstances where the plaintiffs show that they need relief from the stay either to preserve evidence or to prevent undue prejudice. *Id.* In the Securities Litigation, the District Court has established a briefing schedule by which the defendants are to file their motions to dismiss. As a result, *all* discovery and other proceedings in the Securities Litigation have been stayed, and the Securities Litigation has not proceeded beyond the appointment of the Lead Plaintiff and the filing of the consolidated complaint (on September 14, 2007).

It was not until after they had filed their Motion that the Securities Plaintiffs filed Proofs of Claim in this Court, indicating that such claims were for unsecured nonpriority claims.

### B.    The Investigations and Production of Documents

As the Court is aware, the Debtors are currently cooperating with investigations and inquiries being conducted by the United States Department of Justice (the "DOJ"), the United States Securities and Exchange Commission (the "SEC"), the Court's own appointed Examiner, and the Official Committee of Unsecured Creditors. In an effort to cooperate with these investigations and inquiries, the Debtors have been responding to broad document subpoenas and requests for documents (collectively, the "Document Requests"). As of September 17, 2007, the Debtors have produced well over 10 million pages of documents and have made available a database containing over 2 million electronic files in response to the Document Requests. The Debtors' document production is currently ongoing.

The scope of the Document Requests far exceeds what is discoverable in the Securities

4

Litigation, and due to their desire to cooperate and the time constraints under which the Debtors were to respond to the Document Requests, Debtors were not able to conduct a detailed review of all documents produced.  Therefore, before any documents can be produced to the Securities Plaintiffs, the Debtors would have to undertake a detailed review of the documents to separate the subset of documents that would be discoverable in the Securities Litigation.  Furthermore, in producing documents to the Government, the Examiner, and the Official Committee of Unsecured Creditors, the Debtors relied upon the protections afforded under Federal Rule of Criminal Procedure 6(e) governing secrecy in grand jury proceedings, 17 C.F.R. section 200.83 governing confidential treatment procedures with the SEC, the common interest agreement with the Creditors' Committee, and this Court's Order specifically prohibiting any disclosure concerning the performance of the Examiner's duties until he submits his report.[2]  Order Denying in Part and Granting in Part Motion of the United States Trustee for an Order Directing the Appointment of a Chapter 11 Trustee, or in the Alternative, an Examiner, at ¶ 6.  Accordingly, to meet the Securities Plaintiffs' document demands, the Debtors would have to take substantial steps to protect proprietary, private, and privileged information to which the Securities Plaintiffs should not have access, as is common in ordinary civil litigation.

## ARGUMENT

I.    **THE SECURITIES PLAINTIFFS' FAILURE TO ESTABLISH A PRIMA FACIE CASE FOR RELIEF FROM STAY REQUIRES DENIAL OF THE MOTION.**

1.    The automatic stay found in Bankruptcy Code section 362 was intended as a "breathing spell for the debtor" from his creditors to protect both the debtor and his creditors and facilitate the "orderly rehabilitation or liquidation of the debtor." *Borman v. Raymark Inds., Inc.*,

---

[2] Of course, when providing documents to its own Special Investigations Committee, the Debtors did not need to consider confidentiality issues.

RLF1-3202057-1

946 F.2d 1031, 1033 (3d Cir. 1991); *In re W.R. Grace & Co.*, No. 01-01139 (JFK) slip op. at 2

(Bankr. D. Del. Apr. 13, 2007) *available at* 2007 WL 1129170.  The automatic stay has often

been described as one of the fundamental protections provided to debtors by the Bankruptcy

Code.  *Mid-lantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986); *In re*

*Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *W.R. Grace*, 2007 WL 1129170 at

\*2.  In fact, the Court of Appeals for the Third Circuit deems the automatic stay as so

fundamental that it has held that violations are "void *ab initio*."  *ACandS, Inc. v. Travelers Cas.*

*& Sur. Co.*, 435 F.3d 252, 261 (3d Cir. 2006).

      2.     As the moving party, the Securities Plaintiffs have the initial burden to establish a

*prima facie* case of "cause" for relief from stay.  *See e.g.*, *In re RNI Wind Down Corp.*, 348 B.R.

286, 299 (Bankr. D. Del. 2006) (citing *Sonnax Indus., Inc. v. Tri Component Prods., Inc. (In re*

*Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990); *see also Mazzeo v. Lenhart (In re*

*Mazzeo)*, 167 F.3d 139, 142 (2nd Cir. 1999) ("The burden is on the moving party to make an

initial showing of 'cause' for relief from the stay."); *In re Brown*, 311 B.R. 409, 412 (E.D. Pa.

2004) (noting "the creditor is entitled to relief from the automatic stay if he can make an initial

showing of sufficient 'cause'"); *In re WorldCom, Inc.*, 325 B.R. 511, 521 n.10 (Bankr. S.D.N.Y.

2005) (noting the movant bears the burden of establishing a *prima facie* case); *In re Powell*, 223

B.R. 225, 232 (Bankr. N.D. Ala. 1998) ("The movant must carry the initial burden of

establishing a prima facie case for relief under [Bankruptcy Code] § 362(d)(1).").

      3.     To establish a *prima facie* case of "cause" for relief from stay, the Securities

Plaintiffs must make an evidentiary showing.  *See, e.g., RNI Wind Down Corp.*, 348 B.R. at 286

("A *prima facie* case requires a showing by the movant of 'a factual and legal right to the relief

that it seeks.'") (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y 1994)); *In*

6

*re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) (in relief from stay proceeding "the

movant must initially produce evidence establishing 'cause' for the relief he requests"); *In re*

*Cabrillo*, 101 B.R. 443, 447 (Bankr. E.D. Pa. 1989) ("the party seeking relief [from stay] bears

an initial burden of producing evidence to show that it is entitled to relief"); *see also Collier on*

*Bankruptcy* § 362.10 (15th Ed. Rev. 2005).

4.      A failure by the Securities Plaintiffs to establish, with evidence, a *prima facie*

case for relief from stay is fatal.  Indeed, "failure to prove a *prima facie* case requires a denial of

the requested relief." *RNI Wind Down Corp.*, 348 B.R. at 299.  Furthermore, "the court should

deny relief without requiring any showing from the debtor that it is entitled to continued

protection." *Sonnax Indus.*, 907 F.2d at 1285; *see also e.g.*, *Mazzeo*, 167 F.3d at 142 (noting

"absent a showing of cause, the court should simply deny relief from the stay"); *In re Anthem*

*Cmtys./RBG, LLC*, 267 B.R. 867 (Bankr. D. Colo. 2001) (holding bankruptcy court may render

judgment *sua sponte* based on movant's failure to satisfy initial burden to establish *prima facie*

case for relief from stay).

5.      The Securities Plaintiffs have not submitted any evidence in support of their

Motion and have not made a *prima facie* case for relief from stay.  Accordingly, the Motion

should be denied outright.  *See RNI Wind Down Corp.*, 348 B.R. at 299-300 (holding the movant

failed to make a *prima facie* case by not establishing a factual and legal right to the relief and

denying the motion without further showing from the debtor); *see also In re Causa*, 93 B.R. 409,

411 (Bankr. E.D. Pa. 1989) ("Since movant has failed to present any evidence to meet his initial

burden of production under 11 U.S.C. § 362(d)(1), his motion for relief from the automatic stay

must be denied.").

## II.      THERE IS NO CAUSE FOR RELIEF FROM STAY.

6.      In lieu of evidence, the Securities Plaintiffs rely on unsubstantiated assertions to

7

support their request for lifting of the Bankruptcy Code's automatic stay. Those assertions,

however, do not amount to cause for lifting the stay in the face of the evidence offered by the

Debtors in this Opposition. Though Congress did not define the "cause" required to lift or

modify the automatic stay imposed by the Bankruptcy Code, the courts in the Third Circuit have

formulated a three-factor test to determine whether "cause" exists: 1) whether any prejudice

results to the estate or debtor from lifting the stay, 2) the balance of hardships between the

parties, and 3) the probability of the movant's success on the merits. *See, e.g., In re Continental

Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993); *W.R. Grace*, 2007 WL 1129170 at *2; *In re

Peregrine Sys., Inc.*, 314 B.R. 31, 46-47 (Bankr. D. Del. 2004) *reversed in part on other grounds*

2005 WL 2401955; *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *see also

In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). Moreover, as other

courts have explained, unsecured creditors are entitled to relief from an automatic stay only in

extraordinary circumstances. *See In re Ashland Partners III*, 2000 WL 329581 (Bankr. N.D. Ill.

Jan. 20, 2000); *In re Brown*, 311 B.R. at 413; *In re Tristar Auto. Group, Inc.*, 141 B.R. 41, 44

(Bankr. S.D.N.Y. 1992).

## A.     **Modifying The Stay As Requested Would Prejudice The Debtors.**

7.     The first factor, prejudice to Debtors from lifting the stay, weighs heavily in the

Debtors' favor for a number of reasons. The Debtors would suffer prejudice should they be

required to produce documents to the Securities Plaintiffs due to the enormous undertaking such

a production would entail. Producing documents to the Securities Plaintiffs would not be simply

a matter of producing everything that was produced by the Debtors in response to the Discovery

Requests. Instead, the Debtors would be required to review the 10 million pages of documents

they have produced for (a) discoverability, (b) attorney-client privileged and work-product

protected documents, and (c) confidentiality.

8

8.      In particular, the Debtors would be forced, at great expense, to review the

documents for discoverability in the Securities Litigation since these documents were produced

in response to broad Document Requests.  The scope of the Government's and the Examiner's

investigations and the resulting Document Requests far exceeds the scope of what is

discoverable in the Securities Litigation.  The Securities Plaintiffs are not entitled to the breadth

of documents and information released to the Government and the Examiner simply by the fact

of production.  Rather, they can lay claim only to the documents authorized by the Federal Rules

of Civil Procedure with respect to the underlying Securities Litigation.  The civil discovery rules

are not rendered irrelevant simply because the Debtors produced documents, for instance, to the

Examiner, who is acting as an arm of the Court.  In that regard, the Debtors produced documents

to the Examiner that fall far outside the scope of discoverable information under the civil

discovery rules because the Examiner's mandate was broader than investigating the events

leading to the Debtors' need to file a restatement.  It included, for example, an investigation into

"any and all accounting and financial statement irregularities," not just those that would be

material as in a securities case, and possible unauthorized use of cash collateral, a subject that is

particular to the bankruptcy case.  (Order at 2, ¶3).

9.      The Debtors, moreover, in the spirit of cooperation and due to time constraints,

produced documents without regard to relevance or scope.  For instance, the Debtors granted to

the Examiner access to a database that contains the e-mails, attachments, and other items from

approximately 80 custodians' hard drives.  That database contains over 2 million electronic

documents.  The Debtors did not review these documents for relevance or discoverability, either

in connection with the investigations or in anticipation of civil litigation.  There is no doubt that a

significant number of the documents produced thus far are not discoverable in a civil matter

9

generally or in this particular Securities Litigation.

10. The Debtors would additionally be burdened with the task of reviewing the documents for confidential information. Such a review would be necessary because in response to the Document Requests, the Debtors did not attempt to weed out documents containing, for example, private consumer information.[3] It is highly probable that many of the files produced contain very sensitive information having nothing to do with the Securities Plaintiffs' case. Additional effort would have to be made to redact protected information where necessary. That undertaking would be incredibly burdensome on the Debtors.

11. Moreover, granting the Securities Plaintiffs' Motion would prejudice the Debtors, because as the Court is aware, the Debtors are currently engaged in reviewing and producing documents to the Examiner to assist in its Court-mandated investigation of the Debtors. On September 11, 2007, this Court granted the Examiner an additional 90 days to file his report. As the parties advised the Court at the hearing, the production of documents to the Examiner is itself an enormous undertaking that taxes the Debtors' diminishing resources. If the Securities Plaintiffs' Motion were granted, the Debtors would be forced to shift their focus away from their production to the Examiner to attend also to the production to the Securities Plaintiffs. Such a shift would prejudice the Debtors since it would stall production efforts to the Examiner and likely prolong the Examiner's investigation. These delays would impose a further cost on the estate given the inherent expense associated with delay. Also adding to the depletion of the Debtors' assets are the additional legal costs the Debtors would likely incur as a result of the delay.

---

[3] Noteworthy is the fact that the Debtors would also have to conduct an additional review for attorney-client privileged communications and attorney work product. The Debtors' productions of any such materials to the third parties identified either have not implicated or otherwise have been pursuant to agreements protecting the privilege.

10

12.     Thus, there can be no question that the first factor weighs in the Debtors' favor—
the Debtors would be prejudiced should they be compelled to produce documents to the
Securities Plaintiffs.

**B.     The Balance of Hardships Tips In Debtors' Favor.**

13.     The second "cause" factor also weighs in the Debtors' favor. "[T]he party
seeking relief from the stay must show that 'the balance of hardships from not obtaining relief
tips *significantly* in [its] favor.' " *RNI Wind Down Corp.*, 348 B.R. at 299, *quoting In re Am.
Classic Voyages Co.*, 298 B.R. 222, 225 (Bankr. D. Del. 2003) (emphasis added). The Securities
Plaintiffs made no such showing. But as discussed above, the hardship on the Debtors would be
substantial if they were required to produce documents to the Securities Plaintiffs. The Debtors
would suffer additional hardship if compelled to undertake the task of producing documents to
the Securities Plaintiffs since it would force the estate to spend money now for the benefit of
potential creditors with subordinated claims to the detriment of other creditors with superior
claims. Lifting the automatic stay as requested by the Securities Plaintiffs would also divert
resources and the focus of the Debtors and their professionals, so as to interfere with the plan
process, to the further detriment of other creditors and stakeholders.

14.     In stark contrast, the Securities Plaintiffs have failed to allege, much less offer
evidence, that they would suffer *any* hardship or prejudice were the stay not partially lifted as
requested. They do not allege, for example, that without the documents they are at a
disadvantage vis-à-vis other parties or that evidence is in danger of being destroyed. They, in
fact, offer nothing to demonstrate how the balance of hardships "tips significantly in [their]
favor." *Id.*, *see also In re Metro Trans. Co.*, 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988)
(explaining that establishing the balance of hardships tips in the moving party's favor "imposes a
significant burden upon unsecured creditors . . . which they can rarely, if ever, sustain on the

11

basis of pure allegations").

  **C.**  **There Is No Probability of Success On The Merits.**

  15.  The final "cause" factor, probability of success on the merits, also weighs in the Debtors' favor. Here, the inquiry would focus on the probability of the Securities Plaintiffs succeeding in their motion in the District Court to have the PSLRA discovery stay lifted. The Securities Plaintiffs have failed to show any such probability of success, and none appears.

  16.  The District Court in California may lift the PSLRA discovery stay only if the Securities Plaintiffs show that relief "is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B). The Securities Plaintiffs will be unable to establish a need to preserve evidence since the documents they seek are in the hands of government entities and the Court-appointed Examiner. The Debtors also are committed to preserving the documents they produced in response to the Discovery Requests. Nor have the Securities Plaintiffs indicated a likelihood of being able to show undue prejudice within the meaning of the PSLRA. For the same reasons discussed above with respect to prejudice and the balance of hardships in connection with the automatic stay, the Securities Plaintiffs will also be unable to establish that they will suffer "undue prejudice" under the PSLRA if they do not receive the requested documents at this juncture.

  17.  Simply desiring the premature production of documents to assist in litigation is an insufficient basis for lifting the PSLRA stay. *See SG Cowen Securities Corp. v. United States Dist. Ct.*, 189 F.3d 909, 912 (9th Cir. 1999) (finding impermissible the district court's lifting of the discovery stay "so that [plaintiffs] might uncover facts sufficient to satisfy the Act's pleading requirements"); *Medhekar v. U. S. Dist. Court*, 99 F.3d 325, 328 (9th Cir. 1996) ("Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the

12

action has been filed"); *see also Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F.Supp.

717, 720 (S.D. Cal. 1996) (defining undue prejudice as improper or unfair detriment).

18.     Thus, given the stringent standard applicable to lifting the PSLRA discovery stay,

coupled with the Securities Plaintiffs' failure to even proffer what prejudice they would suffer

should they not receive the requested documents now, the Securities Plaintiffs have failed to

show a likelihood that the District Court will grant their request to lift the PSLRA stay.  The

third "cause" factor, therefore, also weighs in the Debtors' favor.  Accordingly, the Securities

Plaintiffs' Motion should be denied since there is no cause to modify the automatic stay.

### D.     The Securities Plaintiffs' Reliance On *Enron* and *WorldCom* Is Misplaced.

19.     Rather than making a *prima facie* case for lifting the stay, the Securities Plaintiffs

rely almost exclusively on *Enron* and *WorldCom*, two Southern District of New York cases

decided by the same bankruptcy judge.  Motion at ¶¶ 14-24.  *Enron* and *WorldCom*, however,

are not controlling and are factually distinguishable.[4]  In the *Enron* matter, the bankruptcy court

based its decision to partially lift the automatic stay, in part, on the fact that the court had

previously lifted the stay "for all purposes" with respect to the ERISA plaintiffs.  *See* Motion,

Exh. B.  Unlike *Enron*, in the present case the Bankruptcy Court has not already lifted the stay to

allow discovery of the Debtors in any other non-bankruptcy related matters.

20.     In *WorldCom*, the bankruptcy court relied on its previous ruling in the *Enron*

case, *see* Motion, Exh. E ("consistent with this Court's ruling in the Enron case . . . I will allow

the discovery"), and conditioned its order partially lifting the automatic stay on the district court

lifting the PSLRA discovery stay, *see* Motion, Exhs. D and E ("The Court is going to grant the

motion to modify the stay to allow discovery, provided that the District Court lifts the stay under

---

[4] Significantly, neither case permitted the securities plaintiffs to seek documents protected by the attorney-client privilege or attorney work-product doctrine.  *See* Motion, Exhs. A-D.

the PSLRA . . . in existence at the time because the lifting of the stay, I think would establish the cause.").

21.     The district court, in turn, noting the "unique circumstances" of the case, lifted the PSLRA stay because all of the parties—both in the ERISA litigation and the securities litigation—were scheduled to engage in court-mandated settlement discussions and the securities litigants were the only parties without the requested discovery.  As the court explained:

> Without access to documents already made available to [government agencies, the creditors' committee] and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, [the moving party] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape.  It would essentially be the only major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings.  This is especially troubling given the likelihood that settlement discussions will begin in December and involve both the securities plaintiffs and the ERISA plaintiffs.  The former would be severely disadvantaged in those discussions if they are denied access to the documents they now request.

*In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 305-06 (S.D.N.Y. 2002).

22.     The district court concluded by noting that "none of the above-stated circumstances may alone be sufficient to justify a lifting of the statutory stay in order to prevent undue prejudice."  *Id.*, 234 F.Supp.2d at 306.

23.     In both *Enron* and *WorldCom* the bankruptcy court conditioned its lifting of the bankruptcy stay on the lifting of the PSLRA discovery stay by the district court, and both the bankruptcy court and the district court appear to have premised their decisions, in part, on the fact that another class of plaintiffs had already received or was about to receive the same discovery.  For instance, the *WorldCom* court found that the securities plaintiffs were at a severe disadvantage with respect to the imminent court-ordered settlement discussions since they were the only major party without access to documents the other parties possessed, including the

14

ERISA plaintiffs. *See In re Refco, Inc. Sec. Litig.*, 2006 WL 2337212, *3 (S.D.N.Y. Aug. 8, 2006) (distinguishing *WorldCom* on that basis). Such facts are entirely absent in this case. The Securities Plaintiffs have not alleged or shown that they actually need the documents at this time or that they will be at a disadvantage vis-à-vis other parties if they do not receive them.

24.    The Securities Plaintiffs' primary reliance on *Enron* and *WorldCom* suggests that they are of the view that they are entitled to a partial lifting of the stay merely because the Debtors have produced documents to the Government, the Court-appointed Examiner, and other entities. They are mistaken.

25.    First, as the courts have explained, the inquiry into whether cause exists in any given case is fact-intensive and dependent on the circumstances of the case. In that regard, *Enron* and *WorldCom* are inapposite and of limited relevance to the Court's determination in this case. The basic questions for this Court are whether the Debtors will suffer prejudice if the stay is modified and in whose favor the balance of hardships weighs. The only evidence before this Court establishes that the Debtors will be significantly prejudiced if the stay is lifted and the balance of hardships overwhelmingly weighs in the Debtors' favor.

26.    Second, there is nothing in *Enron* and *WorldCom* indicating that the automatic stay and the PSLRA discovery stay are to be routinely lifted when the responding party has previously produced documents to the government or other entities acting in the interest of the public, the estate, or creditors. In fact, other courts, particularly in the Southern District of New York, have rejected the notion that past production to the government or other entities mandates lifting the PSLRA stay. For instance, the district court in *Refco, Inc. Sec. Litig.*, 2006 WL 2337212, denied the securities plaintiffs' motion to lift the PSLRA discovery stay to permit them to obtain documents produced by the defendants to the "SEC, the U.S. Attorney's Office, the

15

*bankruptcy examiner*, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of

Senior Subordinated Noteholders, and any other governmental or investigative agencies or other

private parties involved in reviewing the facts and circumstances giving rise to Refco's demise."

*Id.* at *1 (emphasis added) (internal quotation marks omitted). As a general rule, the court

explained, the fact that documents had been provided to third parties does not entitle plaintiffs to

lifting of the stay to obtain such documents. *Id.* at *2 (citation omitted). A plaintiff must still

comply with the rule requiring that it demonstrate that it would suffer undue prejudice, which the

court defined as "improper or unfair treatment amounting to something less than irreparable

harm." *Id.* at *1 (citations and internal quotation marks omitted). *See also 380544 Canada, Inc.

v. Aspen Technology, Inc.*, 2007 WL 2049738 (S.D.N.Y. July 18, 2007) (denying motion to lift

stay seeking discovery of documents produced to the SEC and the United States Attorneys

Office); *Ross v. Abercrombie & Fitch Co.*, 2006 WL 2869588 (S.D. Ohio Oct. 5, 2006) (noting

split in authority and concluding after analysis of Congressional intent that Congress did not

intend PSLRA to be lifted in circumstances where party had already produced documents to the

government); *Rampersad v. Deutsche Bank Sec., Inc.*, 381 F.Supp.2d 131, 133 (S.D.N.Y. 2003)

(no categorical exception to lifting PSLRA stay when documents previously produced to

government); *In re Vivendi Universal S.A. Sec. Litig.*, 381 F.Supp.2d 129 (S.D.N.Y. 2003)

(same). The courts also emphasize that the moving party is required to show *undue* prejudice,

not simply prejudice, before the PSLRA is lifted and that exceptional circumstances must be

present. *See 380544 Canada, Inc.* at *1; *Refco* at *1, *Vivendi Universal* at 130-31; *Ross* at *2.

## III.    GRANTING THE SECURITIES PLAINTIFFS' MOTION WOULD RUN
##         COUNTER TO THE POLICIES UNDERLYING THE AUTOMATIC STAY.

27.    The Court should deny the Securities Plaintiffs' Motion on the additional ground

that requiring the Debtors to undertake the onerous task of producing documents to them would

16

run counter to the policies underlying the stay. *See Continental Airlines*, 152 B.R. at 426

(considering policies implications of lifting automatic stay).  The Third Circuit has recognized

three purposes that the automatic stay is intended to serve:  "to prevent certain creditors from

gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's

assets due to legal costs in defending proceedings against it; and, in general, to avoid interference

with the orderly liquidation or rehabilitation of the debtor." *Rexene Prods.*, 141 B.R. at 576

(quoting *Borman*, 946 F.2d at 1036); *see also In re JII Liquidating, Inc.*, 344 B.R. 875, 881

(Bankr. N.D. Ill. 2006).

        28.     Granting the Motion would undermine the first purpose of the stay because the

Securities Plaintiffs have subordinated claims under Bankruptcy Code section 510(b), which

provides, in relevant part, that claims arising from the sale or purchase of the debtor's security

"shall be subordinated to all claims or interests that are senior to or equal the claim or interest

represented by such security."  As potential creditors with subordinated claims, the Securities

Plaintiffs are entitled to a distribution from the estate only after distribution to all other creditors,

including other unsecured creditors.  By their Motion, the Securities Plaintiffs seek, in essence, a

premature disbursement from the estate to fund their litigation against purported third parties,

and perhaps to marshal evidence in support of their proofs of claim.  Such disbursement, in the

form of the costs to the estate to produce the requested documents, would in effect provide the

Securities Plaintiffs with a preference that the Bankruptcy Code provides against.  *See*

Bankruptcy Code § 510(b).

        29.     Moreover, granting the Securities Plaintiffs' Motion would accelerate rather than

"forestall the depletion of the [D]ebtor[s'] assets due to legal costs."  As noted above, the estate

would incur substantial costs if it were compelled to produce documents to the Securities

17

Plaintiffs. Such costs would come in the form of the services of its outside counsel, who would primarily be responsible for reviewing and producing the documents. The Debtors would also incur substantial cost in litigating this issue in the District Court. Such expenditures, for the benefit of the Securities Plaintiffs, are particularly offensive to the estate and other creditors given the subordinated status of the Securities Plaintiffs' claims. The Securities Plaintiffs would be receiving from the estate a disbursement (in the form of services) at full monetary value, whereas they would likely receive at the end of the bankruptcy case only a fractional, if any, recovery.

30.    Finally, producing documents to the Securities Plaintiffs would interfere with the orderly liquidation of the Debtors as the Debtors' remaining employees and professionals are already stretched by the demands of chapter 11 case administration and the ongoing investigations of the government agencies, Creditors' Committee and the Examiner. At this juncture, the Debtors' employees and professionals must focus on matters critical to the resolution these cases, including claims reconciliation and the development of a chapter 11 plan. Embarking on a substantial document production task at this time would divert the Debtors from these critical tasks to the detriment of all stakeholders.

31.    Thus, it would be unfair, and contrary to the policies underlying the Bankruptcy Code, to force the estate to spend money to produce documents for the benefit of putative creditors with subordinate claims who are unlikely to receive anything in the bankruptcy case. The Court should, therefore, deny the Motion.

## CONCLUSION

Debtors respectfully submit that the Securities Plaintiffs' Motion should be denied for three independent reasons: (1) the Plaintiffs failed to meet their burden of establishing a *prima facie* case for relief, (2) the requisite "cause" is entirely absent, and (3) the policies underlying

18

the automatic stay would be contravened.

Dated: September 18, 2007
       Wilmington, Delaware

Respectfully submitted,

_Christy M. Sa_

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Ben H. Logan
Suzzanne S. Uhland
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION