**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

_____

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., | : | |
| a Delaware Corporation, *et al.*, | : | Case No. 07-10416 (KJC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| _____ : | | Hearing Date: October 2, 2007 at 1:30 p.m. |

**REPLY OF LEAD PLAINTIFF TO (i) DEBTORS'
OPPOSITION TO MOTION FOR LIMITED MODIFICATION
OF THE STAY AND (ii) JOINDER OF THE OFFICIAL
<u>COMMITTEE OF UNSECURED CREDITORS</u>**

New York State Teachers' Retirement System ("NYSTRS" or "Lead Plaintiff")[1] hereby submits this reply (the "Reply") to the Debtors' Opposition (together with the Committee's Joinder, the "Opposition") to Lead Plaintiff's Motion for Limited Modification of the Automatic Stay in order to obtain copies of documents from the Debtors (Docket Index No. 2274) and states the following:

<u>**INTRODUCTION**</u>

1.      Lead Plaintiff merely seeks documents *already produced* by the Debtors, and will pay the copying costs of production. The Debtors' primary contention in opposition to Lead Plaintiff's Motion is that modifying the stay would prejudice the Debtors "due to the enormous undertaking such a production would entail." Opposition ¶7, at 8. Debtors contend that before providing these documents to Lead Plaintiff, the "Debtors would be required to review the 10 million pages of documents they have produced for (a) discoverability, (b) attorney-client privileged and work-product protected documents, and (c) confidentiality." *Id*. The Opposition, however, fails to set forth any legitimate basis explaining why Debtors must

---

[1] Capitalized terms shall have the meanings ascribed to them in the Motion unless defined otherwise herein.

review the 10 million pages prior to a production to Lead Plaintiff. With one possible exception, all the documents are highly relevant to Lead Plaintiff's securities fraud action; and, Debtors articulate no prejudice that would result from making a full production of ***all*** the documents. In fact, the Debtors maintain that the claims of Lead Plaintiff and the putative Class are statutorily subordinated and therefore will not be entitled to any distribution in the liquidating chapter 11 case. Therefore, by the Debtors' own admission, the estate has no economic exposure with respect to the Securities Litigation and cannot be prejudiced by simply providing copies of what have already been gathered and produced. Who are the Debtors protecting? Further, Debtors have already waived any privilege covered by the documents and need not conduct a re-review of the production for this stated purpose. And, confidentiality concerns can be easily addressed by a confidentiality agreement. There is no reasonable basis for the Debtors' contention that they will "incur substantial expenses" if compelled to produce documents to Lead Plaintiff because the Debtors need not re-review the documents at issue here. Opposition at 3.

        2.      The Debtors likewise contend that production of documents to Lead Plaintiff, which would be for the benefit of, among others, holders of common stock, "would interfere with the 'orderly liquidation' of the Debtors, create distracting near-term demands for the attention of estate representatives, and force the estate to spend money now for the benefit of potential creditors with subordinated claims to the detriment of other creditors with superior claims." Opposition at 3.[2] The Debtors' conclusion, however, fails because it is entirely dependent upon the false premise that the Debtors will have to re-review the 10 million pages of documents before any production can be made to Lead Plaintiff. Moreover, the documents must be made available at some point. This case is a straight liquidation, not a reorganization where an ongoing business is in jeopardy. Because the Debtors' burden argument is specious, so is the

---

[2] *See also* Opposition ¶28, at 17 ("By their Motion, the Securities Plaintiffs seek, in essence, a premature disbursement from the estate to fund their litigation against purported third parties, and perhaps to marshal evidence in support of their proofs of claim. Such disbursement, in the form of costs to the estate to produce the requested documents, would in effect provide the Securities Plaintiffs with a preference that the Bankruptcy Code provides against.").

Debtors' argument that producing documents to Lead Plaintiff "would run counter to the policies underlying the automatic stay." Opposition at 3. The Debtors also ignore the fact that the securities plaintiffs, who may be subordinated creditors, will likely be disenfranchised from a distribution perspective in this chapter 11 case and are still parties in interest and creditors.

3. The Debtors' final remaining argument is that Lead Plaintiff has not sufficiently established "'cause' for relief from the automatic stay." Opposition at 2. The Debtors' argument against a finding of cause suffers from: (i) Debtors' exaggeration of the prejudice, if any, suffered by the estate from lifting the stay; (ii) a skewed balancing of the hardships between the parties disregarding Lead Plaintiff's need to obtain evidence of fraudulent acts perpetrated against purchasers of New Century securities; and (iii) a mischaracterization of the likelihood of success of Lead Plaintiff obtaining relief from the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which is a matter to be addressed by Judge Pregerson of the Central District of California, and need not be determined by this Court presently. Indeed, Lead Plaintiff has already acknowledged the need to obtain relief from the PSLRA as a condition to obtaining documents from the Debtors. If that relief is provided, it is tantamount to a showing of cause.

4. For the reasons articulated below, and as set forth in the Motion, the Court should partially lift the automatic stay so that Lead Plaintiff may move the District Court presiding over Lead Plaintiff's securities fraud action to lift the PSLRA discovery stay so that Lead Plaintiff may obtain the documents already produced by the Debtors to others.

**REPLY**

**CAUSE EXISTS TO MODIFY THE AUTOMATIC
STAY AS REQUESTED BY LEAD PLAINTIFF**

5. Contrary to Debtors' position, cause exists to modify the automatic stay. Although cause to lift or modify the automatic stay is not specifically defined in the Bankruptcy Code, courts "generally consider the policies underlying the automatic stay in addition to the

competing interests of the debtor and the movant." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). The following factors are taken into account in balancing the competing interests:

> (1) the prejudice that would be suffered should the stay be lifted;
> (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted.

*Id.*

*(i)    Debtors will not be prejudiced by modifying the stay.*

6. The Debtors fail to articulate any legitimate prejudice that would befall them were they to simply produce to Lead Plaintiff the documents they have already produced to other parties. Such a production would entail little, if any, burden to the Debtors as Lead Plaintiff has agreed to pay the copying costs. Debtors assert that any such production would entail an enormous burden because the 10 million pages would have to be re-reviewed, but careful analysis of this assertion shows it to be unjustified.

7. Debtors contend they must review the 10 million pages already produced for discoverability because "Debtors produced documents to the Examiner that fall far outside the scope of discoverable information under the civil discovery rules because the Examiner's mandate was broader than investigating the events leading to the Debtors' need to file a restatement. It included, for example, an investigation into 'any and all accounting and financial statement irregularities,' not just those that would be material as in a securities case, and possible unauthorized use of cash collateral, a subject that is particular to the bankruptcy case." Opposition ¶8, at 9. Debtors do not articulate any possible unfair prejudice that would result to Debtors from producing all of the documents to Lead Plaintiff without reviewing them for "discoverability". There is no inherent harm to Debtors by producing documents purportedly not relevant to Lead Plaintiff's action, and Debtors point to no actual harm. More significantly, how can documents relevant to "any and all accounting and financial statement irregularities" not be

-4-

relevant to the Securities Litigation?

8. Moreover, Debtors list only two examples of documents produced that they claim are not pertinent to Lead Plaintiff's claims. The first example is unfounded. Debtors point to no authority for the proposition that a producing party may refuse to provide discovery on the basis that evidence of financial statement irregularities were immaterial. Indeed, materiality of financial statement irregularities is as much qualitative as it is quantitative, and therefore is generally a jury determination and not left to a third-party to decide. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162-163 (2d Cir. 2000) ("Materiality is a mixed question of law and fact." "With respect to financial statements, the SEC has commented that various 'qualitative factors may cause misstatements of quantitatively small amounts to be material.'"). Furthermore, Debtors nowhere explain why documents concerning "unauthorized use of cash collateral" cannot be easily removed from the production, as such documents were presumably cataloged upon production.

9. Debtors also claim to have to review the production "for confidential information" including "private consumer information." Opposition ¶10, at 10. Lead Plaintiff, however, will agree to enter into a reasonable confidentiality agreement to facilitate production of documents to the extent necessary for a company that is liquidating.

10. In a footnote, Debtors contend: "Debtors would also have to conduct an additional review for attorney-client privileged communications and attorney work product. The Debtors' productions of any such materials to third parties identified either ***have not implicated*** or otherwise have been pursuant to agreements protecting the privilege." Opposition at 10, n.3 (emphasis added). To the extent that the Debtors' productions "have not implicated" privileged material, there is obviously no reason to re-review these productions and therefore there is no basis for Debtors to claim a burden in having to re-review the productions. To the extent Debtors produced documents that were privileged, the privilege is clearly waived.

11. Debtors *cannot* claim that documents produced to third parties are still protected by the attorney-client privilege or work product doctrine.

> Because confidentiality is key to the privilege, "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990). This court has stated, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Id.* (quotation and alteration omitted). This court has also held that "[c]ourts need not allow the claim of attorney-client privilege when the party claiming the privilege is attempting to utilize the privilege in a manner that is not consistent with the privilege." *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989). "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *Id.*

*In re Qwest Communs. Int'l*, 450 F.3d 1179, 1185 (10th Cir. 2006) ("*Qwest*"). In *Qwest*, like Debtors here, "Qwest advocate[d] a rule that would preserve the protection of materials disclosed to federal agencies under agreements which purport to maintain the attorney-client privilege and work-product protection." *Id*. at 1192. The 10th Circuit found "[m]ost circuits have rejected selective waiver of the attorney-client privilege" and extensively analyzed the very issue Debtors raise here. *Id*. at 1187 (overwhelming majority of cases hold that production of privileged communications or attorney-work – even to federal regulators pursuant to an agreement purporting to not waive the privilege – constitutes waiver). Accordingly, the 10th Circuit rejected Qwest's argument. *Id*. at 1192 ("record in this case is not sufficient to justify adoption of a selective waiver doctrine as an exception to the general rules of waiver upon disclosure of protected material"). As in *Qwest*, this Court should reject the Debtors' assertion of privilege over documents already produced to third parties.

12. In addition, Lead Plaintiff will agree not to assert that production to Lead Plaintiff is a wavier of the attorney-client privilege or work-product protections. Further, Lead Plaintiff will agree that the production is made pursuant to a standard claw-back provision. Thus, the Court need not decide now whether the Debtors' production of documents to

governmental entities and others has waived the protections.  Should the Debtors later determine that privileged materials were actually produced to Lead Plaintiff, the Court could then assess the issue of privilege and waiver and address the issues raised by the *Qwest* court with respect to the specific documents before it.

13.     Because there is no basis for the Debtors contention that they must re-review the documents already produced to third parties, Debtors fail to establish any prejudice were the stay modified as requested by Lead Plaintiff.

*(ii)     Balancing the hardships weighs in favor of Lead Plaintiff.*

14.     Attempting to establish that balancing the hardships weighs in their favor, the Debtors argue that the estate will suffer hardship because it will be forced to spend money "for the benefit of potential creditors with subordinated claims." Opposition ¶13, at 11.  For the reasons set forth above (¶¶6-12, *supra*), there is no basis to assert Debtors will be forced to spend money on behalf of anyone if the stay is modified to the limited extent requested.  Morever, the priority of Lead Plaintiff's claims is entirely irrelevant to the relief requested in the Motion and has no bearing on any hardship to the Debtors.

15.     The prejudice to Lead Plaintiff is evident.  Lead Plaintiff has an affirmative duty to prove its case; to do so Lead Plaintiff must be afforded discovery.  Defendants in Lead Plaintiff's securities fraud action are, among others, former senior officers and directors of New Century.  These individuals likely did not keep personal files in their own possession but maintained their New Century documents at New Century.  Thus, much of the documentary evidence in this action is maintained by or in the possession of the Debtors.  Accordingly, if the Court does not modify the automatic stay, Lead Plaintiff may be precluded from obtaining hard evidence of defendants' conduct and will be forced to depose individual defendants whose memories may have lapsed and/or who are less than forthcoming with testimony because Lead Plaintiff has no documentary evidence with which to cross examine

these percipient witnesses. To deny Lead Plaintiff this basic discovery would clearly prejudice Lead Plaintiff's substantial claims in the securities fraud action.

16. Lead Plaintiff will suffer a greater hardship than the Debtors if the documents are not produced.

*(iii)  There is probability of success on the merits.*

17. The third factor to be considered in determining whether cause exists to modify the stay is the probability of success on the merits; *i.e.*, that Lead Plaintiff will prevail on a motion to modify the PSLRA Stay in the District Court where the Securities Litigation is pending. Debtors go to great lengths to *predict* that Lead Plaintiff will not obtain such relief from the District Court. However, this Court need not rule on this matter as it is an issue for the District Court to determine.

18. The PSLRA provides that the PSLRA Stay may be modified when "necessary to preserve evidence or prevent undue prejudice" to the party seeking the modification of the stay. 15 U.S.C. § 78u-4(b)(3)(B). Lead Plaintiff will be prejudiced in its action if it is not afforded an opportunity to begin reviewing the 10 million documents already produced. Because the amount of documents is so large, were Lead Plaintiff forced to wait until the Court has ruled on the defendants' motions for dismissal (which have not even been filed yet) before it could commence review of the documents and then begin preparing for depositions, there is a real concern this case could languish for years before trial.

19. Moreover, Lead Plaintiff will be prejudiced if not afforded discovery presently as it is competing with many other parties, including the federal government, all analyzing the conduct of New Century's former officers and directors and potentially seeking a recovery from these individuals' limited assets. To deny Lead Plaintiff discovery in this circumstance would put it at a great disadvantage. *See In re WorldCom, Inc. Sec. Litig.*, 234 F.

Supp. 2d 301, 305 (S.D.N.Y. 2002) ("Without access to documents already made available to the U.S. Attorney, the SEC, and in whole or in part to the WorldCom's Creditors Committee and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, [Lead Plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape.").

20.     In *In re: Delphi Corporation Securities, Derivative & "ERISA" Litigation*, MDL No. 1725 (E.D. Mich.), Judge Gerald E. Rosen granted the lead plaintiffs' motion to modify the PSLRA Stay (after lead plaintiffs obtained relief from the automatic stay in *In re Delphi Corporation*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y.)).  A copy of Judge Rosen's Opinion and Order (the "Rosen Order") is annexed hereto as Exhibit A.  The pertinent facts are substantially similar to those herein.  Delphi, a chapter 11 debtor, had produced documents to its internal investigators, the Department of Justice, and the SEC, and these same documents were then made available to Delphi's unsecured creditors committee.  In the bankruptcy proceeding, lead plaintiffs requested production of the documents that had been produced to these various entities. Rosen Order, at 5-6.

21.     Judge Rosen granted the motion to modify the PSLRA Stay finding that the PSLRA Stay is not absolute and may be modified upon a showing that "particularized discovery is necessary to preserve evidence or prevent undue prejudice." *Id*. at 9-10.  Relying on *In re Ahold, N.V. Securities & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) ("if 'particularized' is not synonymous with 'identifiable,' neither does it necessarily mean 'small'" and "the burden of producing the materials should be slight, considering that the defendants have previously produced them to other entities.  Thus under the circumstances, the plaintiffs' request satisfies the threshold requirement of particularity"); *see also WorldCom*, *supra*, at 302, Judge Rosen found that lead plaintiffs' request for documents already produced to other parties was "sufficiently particularized" when considering the "nature of the underlying litigation."  Lead plaintiffs "only request[ed] the production of materials that [had] already been assembled and

produced to Delphi's internal investigators and the federal authorities." Rosen Order, at 10-13. Here, Lead Plaintiff similarly satisfies the particularity requirement because it only seeks documents already produced (and therefore identifiable).

22. Although Judge Rosen rejected lead plaintiffs' argument that PSLRA Stay relief was necessary to preserve evidence (Rosen Order, at 13- 14), he found that lead plaintiffs would suffer undue prejudice were Stay relief not granted (*id.*, at 14-17), because other parties who may be "vying for substantially the same pool of funds" as lead plaintiffs had been given the requested documents. *Id.*, at 17.

> Without discovery of documents already made available to federal authorities and to interested parties in the Delphi bankruptcy action, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategy. Furthermore, maintaining the discovery stay as to materials already provided to the federal authorities and to the Unsecured Creditors Committee does not further the policies behind the PSLRA. As indicated above, in enacting the PSLRA stay, Congress was motivated by a belief that 'the cost of discovery often forces innocent parties to settle frivolous securities class actions.' (Citation omitted.) [Based upon the SEC action] predicated upon the very same accounting irregularities alleged [by lead plaintiffs against many of the same defendants], this is not a 'frivolous securities class action' brought against innocent parties.

*Id.*, at 17-18. Having determined that the discovery request satisfied the particularity requirement and that without the discovery, lead plaintiffs would suffer undue prejudice and be severely disadvantaged, Judge Rosen modified the PSLRA Stay. Similar relief by the District Court modifying the PSLRA Stay will be requested and is warranted here.

23. All three of the factors considered in determining whether cause exists to modify the automatic stay are satisfied in favor of modification of the stay. The Debtors will not be prejudiced. The hardship to Lead Plaintiff if stay relief is not granted outweighs the hardship to Debtors if the relief is granted. Finally, Lead Plaintiff has shown a probability of success that it will obtain relief from the PSLRA discovery stay.

## **The Policies Underlying The Automatic<br>Stay Do Not Warrant Denying The Motion**

24. Having demonstrated that the competing interests of the Debtors and Lead Plaintiff favor modification of the automatic stay, the Court may also consider the "policies underlying the automatic stay." *Continental*, 152 B.R. at 424. "[T]he automatic stay is designed to relieve the debtor 'of the financial pressures that drove him into bankruptcy,'" *id.* at 426, quoting *Borman v. Raymark Indus., Inc.,* 946 F.2d 1031, 1033 (3d Cir. 1991), "to protect the bankruptcy estate from being whittled away by creditors' lawsuits . . . and to implement a system where all creditors will be treated equally." *Continental*, 152 B.R. at 426 (citation omitted).

25. None of these purposes of the automatic stay is implicated by Lead Plaintiff's Motion to modify the stay. The Debtors have gathered and produced the documents for various parties, and despite their unfounded arguments, will not incur any substantial cost. No financial burden will result and modification of the stay will not impact the financial pressures that preceded the bankruptcy. Lead Plaintiff does not seek any payment from the Debtors or their estates. Nor are Lead Plaintiff and the members of the class it represents requesting any special treatment other than that to which they are entitled as creditors and parties-in-interest whose only available recovery may be through the Securities Litigation.

26. Production of documents already produced to others will not give Lead Plaintiff an advantage or preference over other creditors. Indeed, all Lead Plaintiff wants is to be on an even footing with others asserting a claim based on the Debtors' accounting irregularities. The Debtors have offered no competent evidence that their assets will be depleted or threatened by the relief requested, especially because Lead Plaintiff must still await a ruling by the District Court modifying the PSLRA Stay. Production of previously produced documents will not interfere with the Debtors' liquidation. There is no hardship.

### Debtors' Attempt To Distinguish
### *Enron* And *WorldCom* Is Not Convincing

27. Debtors attempt to distinguish the orders in the *Enron* and *WorldCom* cases. *See* Exhibits A through E to the Motion. Objection, ¶¶19-26, at 13-16.

28. Contrary to Debtors' position, the decisions to modify the automatic stay and the PSLRA Stay in the *Enron* and *WorldCom* bankruptcy and district court cases were not based entirely upon the prior production of documents to ERISA plaintiffs or upon scheduled mediation, but upon the fact that the documents had been made available to government agencies, the creditor's committees and others. *See In re Enron Corp. Sec.*, 2002 U.S. Dist. LEXIS 26261, at *30 (S.D. Tex. Aug. 15, 2002) (annexed as Exhibit A to the Motion); *WorldCom*, 234 F. Supp. 2d at 305.

29. Prior production, if any, to other groups of plaintiffs was not relevant to the decisions to lift the PSLRA Stay. Rather, the decisions were based upon the rationale underlying the PSLRA Stay:

> to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint.

*Id.* at 305. As in *WorldCom,* neither rationale is contravened by the Motion. *Id.* Here, Lead Plaintiff has already filed its complaint and there can be no assertion that Lead Plaintiff seeks to force the Debtors to settle through the imposition of high litigation costs. This Court has already appointed an Examiner to investigate pre-petition accounting irregularities, presumably because the circumstances warranted such an investigation, thereby tacitly acknowledging that the Securities Litigation is anything but frivolous.

30. Lead Plaintiff has established sufficient cause to modify the automatic stay and to preserve evidence and prevent undue prejudice if and when the District Court grants relief

from the PSLRA Stay in the Securities Litigation.

## CONCLUSION

WHEREFORE, for the reasons set forth in the Motion and as set forth herein, Lead Plaintiff respectfully requests entry of the Order modifying the automatic stay to the limited extent set forth in the Motion, and granting such other and further relief as the Court deems just and proper.

Dated:  September 27, 2007             **CROSS & SIMON**

By: */s/ Christopher P. Simon*
Christopher P. Simon (Bar No. 3697)
P.O. Box 1380
913 N. Market St., 11th Floor
Wilmington, Delaware  19899-1380
(302) 777-4200 (Telephone)
(302) 777-4224 (Facsimile)

and

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME-0570)
Ira M. Levee, Esq. (IL-9958)
65 Livingston Avenue
Roseland, New Jersey  07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiff New York State Teachers' Retirement System and the Putative Class*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Salvatore J. Graziano, Esq.
Hannah E. Greeenwald, Esq.
1285 Avenue of the Americas
New York, New York  10019
(212) 554-1400 (Telephone)
(212) 554-1444 (Facsimile)

and

Blair A. Nicholas, Esq.
Matthew P. Siben, Esq.
12481 High Bluff Drive, Suite 300
San Diego, California 92130
(858) 793-0070 (Telephone)
(858) 793-0323 (Facsimile)

*Lead Counsel to Lead Plaintiff New York State Teachers' Retirement System and the Putative Class*