# IN THE UNITED STATE BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al.,[1] : | | |
| | : | Jointly Administered |
| Debtors | : | |
| | : | **Objection Deadline October 29, 2007 @ 4:00 p.m.** |
| | : | **Hearing Date: November 6, 2007 @ 1:30 p.m.** |

## COUNTRYWIDE HOME LOANS, INC.'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

Countrywide Home Loans, Inc. ("Countrywide"), by and through its undersigned counsel, hereby submits this Motion for Relief From Automatic Stay (the "Motion") seeking an order from the Court modifying the automatic stay to permit Countrywide to move forward with a civil suit against New Century Mortgage Corporation, a debtor in the above-captioned cases (the "Debtor"), which is pending in Nevada. This Motion is made pursuant to Section 363(d) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Motion, Countrywide seeks an order from the Court modifying the automatic stay so that movant may proceed with the civil action currently pending in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada Court") styled Countywide Homes Loans Inc. vs.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a/ NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home 123 corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership

<u>William Alexander Vinson, New Century Mortgage Corporation, et. al.</u>, Case No. A522212 (the "Nevada Litigation"). Countrywide also respectfully requests that the Court waive the ten (10) day stay of enforcement of orders modifying the automatic stay contained in Bankruptcy Rule 4001(a)(3). In support of this Motion, Countrywide respectfully states the following:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§157 and 1334. Consideration of the Motion is a "core" proceeding within the purview of, without limitation, 28 U.S.C. §157(b)(2)(G). Venue of these cases is proper in the district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. Countrywide is in the business of making and servicing home loans and mortgages. It not only makes it own loans but also purchases existing loans from other mortgage companies. Declaration of Patrice McPherson at ¶ 3 (cited hereafter, "McPherson Dec. ¶ __").[2]

3. On May 10, 2005, William Vinson ("Vinson"), a defendant in the Nevada Litigation, secured a second mortgage loan in the amount of $145,000.00 (the "Loan") on real property located at 8712 Castle Ridge Avenue, Las Vegas, Nevada 89129, Assessor's Parcel Number 138-08-513-058 (the "Property"). A true and correct copy of the deed of trust (the "Deed of Trust") containing the legal description of property is attached to the McPherson Declaration as **Exhibit 1** and is incorporated for all purposes herein by this reference. McPherson Dec. ¶ 4.

---

[2] Patrice McPherson is Countrywide's Senior Vice President of Remittance Processing. Her declaration in support of the Motion is filed contemporaneously herewith.

WLM_510936_1/JSCHIERBAUM

4. In September of 2005, the Loan was transferred to Countrywide, who then became the beneficiary under the Deed of Trust, and assigned loan # 1000923984. McPherson Dec. ¶ 5.

5. On or about November 4, 2005, Countrywide received a check issued by Peters & Sowydra in the amount of $140,768.58. A true and correct copy of the check is attached to the McPherson Declaration as **Exhibit 2** and is incorporated for all purposes herein by this reference. McPherson Dec. ¶ 6.

6. The check, made payable to American Home Mortgage, was endorsed by American Home Mortgage for the payment of its loan # 1000923984 for Elizabeth Casello, which had been transferred to Countrywide from American Home Mortgage.[3] McPherson Dec. ¶ 7.

7. Seeking to apply the payment, Countrywide conducted a search based on the loan number provided by American Home Mortgage rather than by name. Because the search was inadvertently run on the American Home Mortgage loan number for Elizabeth Casello, which happened to be the same as the Countrywide loan number for Mr. Vinson, Countrywide mistakenly posted approximately $140,000.00 to Mr. Vinson's account. McPherson Dec. ¶ 8.

8. Upon realizing Countrywide's mistake, Vinson took full advantage of the error and immediately began seeking refinancing of the Property to pay off the remainder of the Loan. Vinson ultimately chose to refinance the Loan with the Debtor. McPherson Dec. ¶ 9.

9. On or about November 28, 2005, just a few weeks after the funds were mistakenly posted to Vinson's account, Countrywide received a request for payoff demand on

---

[3] On or about November 15, 2005, American Home Mortgage also wired funds to Countrywide to pay off the loan for Elizabeth Casello, not realizing they had already endorsed the check to Countrywide for the payoff.

the Loan. Given that funds had been erroneously posted to Vinson's account, the amount due and owing on the Loan at that time was only $5,711.84. McPherson Dec. ¶ 10.

10. On or about December 16, 2005, a final payoff demand was ordered on the Loan, and Countrywide made demand for a total amount of $5,916.15 on the Loan. McPherson Dec. ¶ 11.

11. On December 27, 2005, Vinson paid off the $5,916.15 balance remaining on the Loan with funds he obtained from the Debtor. Countrywide subsequently closed Vinson's account and effectively released its lien on the Property even though, still unbeknownst to Countrywide, approximately $140,000.00 was still truly owed on the Loan. McPherson Dec. ¶ 12.

12. On February 1, 2006, Countrywide discovered its mistake in misapplying funds to the Loan upon notification by its Payoff Department that American Home Mortgage was requesting the return of $140,768.58, as the funds had been sent to Countrywide twice. McPherson Dec. ¶ 13.

13. Upon discovering its mistake, Countrywide made numerous requests to Vinson for remittance of the $140,768.58. Between March 10, 2006 and March 24, 2006, Countrywide sent three (3) letters to Vinson informing him of the clerical error and requesting remittance of the $140,768.58, but received no response. True and correct copies of the letters are attached to the McPherson Declaration as **Exhibit 3** and are incorporated for all purposes herein by this reference. McPherson Dec. ¶ 14.

14. On May 23, 2006, after Vinson failed to respond to Countrywide's communications or make payment on the outstanding balance of his account, Countrywide

initiated the Nevada Litigation filed a Notice of Lis Pendens on the Property. McPherson Dec. ¶ 15.

15. After being served with a copy of the summons and complaint in the Nevada Litigation, Vinson contacted Countrywide and agreed to pay back the $140,768.58. However, Vinson subsequently refused to remit full payment for the misapplied funds. McPherson Dec. ¶ 16.

16. On December 1, 2006, Countrywide filed a motion for leave to amend the complaint in the Nevada Litigation to add the Debtor as a party to the Nevada Litigation, which motion was subsequently granted, in order to pursue claims for injunctive relief and damages. The Debtor tendered its defense of this action to its title insurer, who undertook such defense and hired counsel to appear in the Nevada Litigation. McPherson Dec. ¶ 17.

17. Also on December 1, 2006, Countywide filed a motion for partial summary judgment (the "Summary Judgment Motion") seeking to reinstate Countrywide's lien against the Property as a first priority lien. McPherson Dec. ¶ 18.

18. At the hearing held on or around March 5, 2007, the Nevada Court granted the Summary Judgment Motion because the Debtor failed to file any answer to Countrywide's amended complaint and failed to file any opposition to the Summary Judgment Motion. Despite having filed no response to Countrywide's pleadings, the Debtor, through new counsel hired by its title insurer, requested a rehearing on the Summary Judgment Motion. Countrywide agreed to the Debtor's request, and the Nevada Court set a rehearing on the Summary Judgment Motion for April 23, 2007. McPherson Dec. ¶ 19.

19. On April 2, 2007, before the rehearing requested by the Debtor could take place, the Debtor and numerous related entities filed their voluntary petitions under Chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, which automatically stayed the Nevada Litigation. McPherson Dec. ¶ 20.

20. On or about August 24, 2007, Vinson filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Nevada, Las Vegas Division (the "Vinson Bankruptcy"). On September 21, 2007, SN Servicing Corporation, servicing agent on behalf of Mortgage Electronic Registration Systems, Inc., filed a Motion for Relief from Automatic Stay in the Vinson Bankruptcy seeking to proceed with foreclosure proceedings against the Property (the "SN Servicing Motion"). A copy of the SN Servicing Motion is attached hereto as **Exhibit A** and incorporated herein by reference. Simultaneously with filing this Motion, Countrywide is filing an objection to the SN Servicing Motion and seeking relief from stay in the Vinson Bankruptcy proceeding.

21. Upon information and belief, Vinson is currently in default on his refinance loan with the Debtor, and it appears that the Property will be foreclosed upon, essentially leaving Countrywide without a remedy.

## ARGUMENT

Bankruptcy Code Section 362 allows this Court to terminate the automatic stay for "cause" and states as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay —
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1) (emphasis added). "Cause" is not defined in the Bankruptcy Code, rather it is a broad and flexible concept that courts in this Circuit determine on a case-by-case basis.

WLM_510936_1/JSCHIERBAUM

See In re Rexene Prods. Co., 141 B.R. 574, 546 (Bankr. D. Del. 1992) (citing In re Fernstorm Storage and Van Co., 936 F.2d 732, 735 (7th Cir. 1991)).

21.  In the case of a motion for relief from stay in which a party seeks leave to continue pending state-court litigation against the debtor, the decision whether to terminate the stay is discretionary with the Bankruptcy Court. In re Johnson, 115 B.R. 634, 635 (Bankr. D. Minn. 1989) (citing In re Castlerock Properties, 781 F.2d 159, 163 (9th Cir. 1986). The decision is made on a case-by-case basis, on the unique circumstances of each case. Id. at 635-36 (citing Castlerock Properties, 781 F.2d at 163; In re Lahman Mfg. Co., Inc., 31 B.R. 195, 198 (Bankr. D.S.D.1983); Sonnax v. Tricomponent Prod. Corp. (In re Sonnoax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1995) (holding that court's determination whether to lift stay for "cause" under 11 U.S.C. § 362(d)(1) is a fact specific inquiry). In general, the Court must make two determinations: first, whether allowing the litigation to proceed will result in "no great prejudice" to the debtor and the estate; and, second, whether a balancing of the respective hardships which would result from the grant or the denial of stay relief favors the debtor or the creditor. In re Johnson, 115 B.R. at 635-36 (citations omitted). "The Court and the parties should always bear in mind that the mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount." Id.

22.  Here, allowing the Nevada Litigation to proceed will not subject the Debtor to a "great hardship." All that Countrywide seeks is an opportunity to protect its rights in the Property in accordance with Nevada law. By this Motion, Countrywide does not seek to interfere with the bankruptcy proceedings, nor does it seek to make claims regarding the relative priority of its interest in the Property. Countrywide merely requests that the Nevada Litigation

be permitted to go forward so it can protect its rights against Mr. Vinson and the Property. Indeed, the Debtor tendered its defense in the Nevada Litigation to its title insurance company and that tender was accepted. McPherson Dec. ¶ ___. The fact that the Debtor's title insurer has already retained counsel in the Nevada Litigation and is required to defend and/or indemnify against the Debtor's losses in connection with Countrywide's claim, see McPherson Dec. ¶ ___, militates strongly in favor of a finding by this Court that neither the Debtor nor the creditor pool will suffer hardship – much less a "great hardship" – if this Motion is granted.

23. A balancing of the parties' respective hardships tips decidedly in favor of modifying the stay to allow the Nevada Litigation to proceed. Although the Nevada Court granted the Summary Judgment Motion, no order has been entered in the Nevada Litigation reinstating Countrywide's lien on the Property due to the imposition of the automatic stay upon the filing of the Debtor's bankruptcy case. Vinson is in default on his loan to the Debtor, and Countrywide is informed and believes that the Property will soon be lost through foreclosure, eclipsing any remedy Countrywide may otherwise have. If the stay is not modified and the Debtor and/or SN Servicing Corporation forecloses on the Property, Countrywide will have no lien whatsoever, regardless of its relative priority, which can and should be determined by the Nevada Court, the Court most familiar with this dispute. On the other hand, the only "harm" suffered by the Debtor if the stay is lifted will be a decision by the appropriate state court determining which party has what interest in the Property. Even if the Nevada Court were to render a decision perceived as adverse to the Debtor, the Debtor's title insurer should stand ready to indemnify the Debtor against any such loss. Accordingly, should relief from the automatic stay not be granted, the hardships Countrywide will suffer outweigh the hardships, if any, that may affect the Debtor if relief is granted.

WLM_510936_1/JSCHIERBAUM

24. Finally, cause exists in this case to lift the stay because given the pending foreclosure, Countrywide is not adequately protected with regard to its interests in the Property.

### CONCLUSION

25. For all of the foregoing reasons, Countrywide respectfully requests that this Court enter an order granting the Motion in its entirety and, specifically, modifying the automatic stay to allow Countrywide to proceed with the Nevada Litigation to protect its rights in the Property and waiving the ten (10) day stay of enforcement of such Order, pursuant to Bankruptcy Rule 4001(a)(3); and granting Countrywide such other and further relief as this Court deems just and proper under the circumstances.

Dated: October 9, 2007

EDWARDS ANGELL PALMER & DODGE, LLP

William E. Chipman, Jr. (I.D. #3818)
Paul D. Brown (I.D. #3903)
919 North Market Street, 15th Floor
Wilmington, Delaware 19801
Telephone: (302) 425-7124
Facsimile: (302) 777-7263

-and-

LEWIS AND ROCA, LLP
Anne M. Loraditch
530 Las Vegas Boulevard
Las Vegas, NV 89101
Telephone: (702) 385-3373
Facsimile: (702) 385-5024

*Attorneys for Countrywide Home Loans, Inc.*