# EXHIBIT 4

ORIGINAL

FILED

2006 DEC -1 P 1:31

*CLERK*

MOT
J. CHRISTOPHER JORGENSEN, ESQ.
Nevada Bar No. 5382
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
BECKLEY SINGLETON, CHTD.
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
Telephone: (702) 385-3373

*Attorneys for Plaintiff*

### DISTRICT COURT

### CLARK COUNTY, NEVADA

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> WILLIAM ALEXANDER VINSON, NEW CENTURY MORTGAGE CORPORATION and ALL PERSONS CLAIMING AN INTEREST IN 8712 CASTLE RIDGE AVE., A.P.N. 138-08-513-058, LAS VEGAS, NEVADA and DOES I through X, and ROE ENTITIES I through X inclusive, <br><br> Defendants. | Case No.: A522212 <br> Dept. No.: V <br><br> **MOTION FOR PARTIAL SUMMARY JUDGMENT TO REINSTATE COUNTRYWIDE'S LIEN AS A FIRST PRIORITY LIEN** |

COMES NOW, Plaintiff COUNTRYWIDE HOME LOANS, INC., ("Plaintiff" or "Countrywide"), by and through its attorneys at the law firm BECKLEY SINGLETON, CHTD., files this Motion for Partial Summary Judgment to reinstate its first priority lien on real property located at 8712 Castle Ridge Ave., Las Vegas, Nevada 89129, APN # 138-08-513-058 (the "Property") that was mistakenly released when Defendant WILLIAM ALEXANDER VINSON ("Defendant" or "Vinson") paid off the balance of the lien shortly after $140,768.58 in funds were mistakenly deposited into Vinson's account.

RECEIVED DEC 01 2006 COUNTY CLERK

BECKLEY SINGLETON

1

{00334723;}

This Motion is made and based upon the following Points and Authorities, any exhibits attached hereto, and such oral argument as the Court may entertain at the hearing of this matter.

DATED this 30 day of November, 2006.

BECKLEY SINGLETON, CHTD.

_____
J. CHRISTOPHER JORGENSEN, ESQ.
Nevada Bar No. 5382
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
BECKLEY SINGLETON, CHTD.
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
Telephone: (702) 385-3373

*Attorneys for Plaintiff*

## NOTICE OF MOTION

TO:   ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the foregoing Motion For Partial Summary Judgment will be heard on the 8th day of Jan_____, 2007, at the hour of 9:00 a.m., or as soon thereafter as counsel may be heard, in Department III of the above-entitled court.

DATED this 30 day of November, 2006.

BECKLEY SINGLETON, CHTD.

_____
J. CHRISTOPHER JORGENSEN, ESQ.
Nevada Bar No. 5382
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
BECKLEY SINGLETON, CHTD.
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
Telephone: (702) 385-3373

*Attorneys for Plaintiff*

2

{00334723;}

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTS

Countrywide is in the business of making and servicing home loans and mortgages. It not only makes it own loans, but also purchases existing loans from other mortgage companies. On May 10, 2005, Defendant William Vinson secured a second mortgage loan ("loan") in the amount of $145,000.00 on real property located at 8712 Castle Ridge Ave., Las Vegas, Nevada 89129, APN # 138-08-513-058 (the "Property"). *See* copy of Deed of Trust and description of property attached hereto as Exhibit "1." In September of 2005, Mr. Vinson's loan was transferred to Countrywide, who then became the holder of the deed of trust on the Property.

On or about November 4, 2005, Countrywide received a check issued by Peters & Sowydra in the amount of $140,768.58, made payable to American Home Mortgage. The check was for the payment of a loan for Elizabeth Casello, whose loan had been transferred to Countrywide from American Home Mortgage. American Home Mortgage had endorsed the Peters & Sowydra check to Countrywide for the payment of loan # 1000923984 for Elizabeth Casello. Elizabeth Casello had the same Countrywide loan number as Mr. Vinson (Countrywide loan # 71592791), as the loan numbers for Ms. Casello and Mr. Vinson were assigned by their prior holders and both coincidently were transferred to Countrywide. Thus, when Countrywide conducted a search based on the previous lender's loan number, the name William Vinson appeared, which led to unintentional posting of approximately $140,000.00 to Mr. Vinson's account with Countrywide.

Upon realizing this mistake, Mr. Vinson took full advantage of the situation and immediately began seeking financing to pay off the remainder of the loan. He then chose to refinance his loans on the Property with New Century. Just a few weeks after the funds were mistakenly posted to Mr. Vinson's account, a payoff demand was ordered on his loan with Countrywide. This payoff demand occurred on or about November 28, 2005, and given that funds

had erroneously posted to Mr. Vinson's account, the amount due was only $5,711.84. On or about December 16, 2005, a final payoff demand was ordered on his Countrywide loan, with a total amount due of $5,916.15. Finally, on December 27, 2005, Mr. Vinson paid off the $5,916.15 balance on his loan with Countrywide, which closed his account and effectively released its lien on the Property.

Countrywide did not find out about this mistake until February 1, 2006, when Countrywide was notified by its Payoff Department that American Home Mortgage was requesting the return of $140,768.58, since the funds were sent to Countrywide twice. Upon discovering this mistake, Countrywide has, on numerous occasions, requested remittance of the $140,768.58 from Mr. Vinson. Mr. Vinson initially refused to contact Countrywide or make payment on the outstanding balance of funds that he mistakenly received until this lawsuit was filed. Multiple letters were sent to Mr. Vinson informing him of the clerical error and requesting remittance of the $140,768.58, but received no response. When no response was received, Countrywide filed this lawsuit on May 23, 2006 and recorded a Notice of Lis Pendens against the Property. Mr. Vinson has subsequently contacted Countrywide and agreed to pay back the $140,768.58, however he has subsequently refused to remit full payment for the misapplied money.

Now, Countrywide has lost its priority interest in the Property due in part to a clerical mistake but mainly due to Mr. Vinson's fraudulent conduct. To make matters worst, Mr. Vinson is currently in default with New Century on his existing loan on the Property and it appears that the Property will be foreclosed upon, essentially leaving Countrywide without a remedy. Countrywide now seeks to reinstate its priority interest in the Property as its lien was extinguished by a mistake and the fraudulent conduct of Mr. Vinson. As will be discussed below, New Century, the current priority lien holder on the Property, does not qualify as an innocent third party, as they should have known that there was an error in the payoff amount, and conducted a diligent search into the source

{00334723;}

of the $140,768.58 credit to Mr. Vinson's loan upon a review of his credit history and loan payment history. Thus, Countrywide requests that this Honorable Court reinstate its priority interest in the Property.

## II. ARGUMENT

### A. Countrywide's Priority Lien on Mr. Vinson's Property Must Be Restored in Equity to Its Original Status, as Countrywide Released Its Lien by Mistake

Countrywide released its priority lien on the Property only after Mr. Vinson took advantage of a clerical mistake and secured financing to pay off the remaining balance on the loan. Based upon this unilateral mistake, there was no intent on the part of the Countrywide to extinguish Mr. Vinson's $145,000.00 debt for $5,916.15.

Satisfaction of a mortgage, while *prima facie* evidence of payment, is not conclusive and can be tested in a hearing notwithstanding the fact that the record was marked satisfied. Equity affords relief where an encumbrance has been discharged through a mistake. *Alliance Funding Co. v. Stahl*, 829 A.2d 1179, 1181 (Pa.Super.,2003) (Internal citations omitted).

The Florida Supreme Court decision in *United Service Corp. v. Vi-An Const. Corp.*, 77 So.2d 800, 803-04 (Fla.1955), held that a Satisfaction of Mortgage "made through a mistake may be canceled" and a mortgage reestablished as long as no other **innocent third parties** have "acquired an interest in the property." Generally the court looks to the **rights of any innocent third parties**, and if none exist, equity will grant relief to a mortgagee who has mistakenly satisfied a mortgage before fully paid. *Cherry v. Chase Manhattan Mortg. Corp.*, 190 F.Supp.2d 1330, 1333 (M.D.Fla.,2002) (Emphasis added) (Internal citations omitted).

Countrywide released its lien on Mr. Vinson's Property due solely to a mistake in the amount owed on the debt. There is no possible way that Countrywide would concede releasing its lien on the Property for approximately $145,000.00 in debt, for $5,916.15. Clearly, this qualifies as

5

{00334723;}

a mistake, and as will be discussed below, New Century does not qualify as an "innocent party[1]" to prevent reinstatement of Countrywide's priority lien.

**B. New Century Does Not Qualify as an Innocent Third Party, as New Century had *notice* of the Mistake**

New Century does not qualify as an innocent third party in this case in order to preclude Countrywide from reinstating its priority lien on the Property. New Century provided Mr. Vinson with a loan in the amount of $648,900.00 to refinance the loans on the Property. Based upon a review of Mr. Vinson's credit history and payment information on the loan New Century, New Century had a duty to inquire into the validity of the mysterious $140,768.58 "payment" by Mr. Vinson to his Countrywide loan. The payoff demand of $5,916.15 for a loan in the amount of $145,000.00 (a loan which was less than six months old), should have alerted New Century to conduct an additional investigation into the payment of the balance. A diligent review of Mr. Vinson's loan payment history, bank statements and credit report would clearly reveal that he was making a set amount of income and had only made minimum payments on the balance of the loan. It was not until November of 2005, the month he decided to refinance, that a credit in the amount of $140,768.58 was posted to the loan. This discrepancy should have alerted New Century to conduct a further inquiry into the both the source of the payment and the validity of Mr. Vinson's representations on his income and loan payment history. New Century's failure to inquire into the source of the payment from either Mr. Vinson or Countrywide, precludes them from hiding under the protection of qualifying as an "innocent party" and preventing Countrywide from reinstating its priority lien based upon a mistake. New Century received the benefit of securing a new loan for Mr. Vinson, and obtaining a priority lien on Property appraised at $725,000.00. *See* appraisal

---

[1] An equitable claim for the reinstatement of a mortgage that has been discharged by accident or mistake will be granted so long as "such relief does not operate to the detriment of intervening rights of third persons who may have relied upon the release and who are **not chargeable with notice of the mistake** or who will be prejudiced by reinstatement of the lien." *Calaska Partners L.P. v. McClintick* 707 A.2d 1324, 1325 (Me.,1998) (Emphasis added).

6

{00334723;}

report attached as Exhibit "2". This failure to conduct any investigation into the discrepancy within Mr. Vinson's credit report, average monthly income, and payment history on the Countrywide loan, puts them on constructive notice of the mistake in releasing the lien. Accordingly, Countrywide's original lien on the Property should be reinstated to its priority position, as New Century does not qualify as an innocent party.

### C. Mr. Vinson Procured Financing to Payoff his Loans on the Property Through Fraud

In the alternative, Countrywide requests that its priority lien be reinstated to its priority position because it was released solely on account of the fraudulent conduct of Mr. Vinson.

NRS 42.001(2) defines "fraud" as:

> "[A]n intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his rights of property or to otherwise injure another person."

It is clear that upon discovering Countrywide's clerical error, Mr. Vinson deliberately and fraudulently failed to notify Countrywide of the mistake on his loan. Mr. Vinson had direct knowledge of the amount he owed on the loan, and how much he was paying each month on the loan. *See* Defendant's responses to Plaintiff's First Request for Admissions attached as Exhibit "3". Mr. Vinson even admits that as of November 1, 2005, he had not paid more than $35,000.00 towards his balance on his loan with Countrywide. *Id.* Upon seeing a credit of $140,768.58 to his $145,000.00 loan with Countrywide, Mr. Vinson concealed the mistake and failed to notify Countrywide about the error. Mr. Vinson even took the additional step in quickly securing financing to payoff his loans on the Property, even though his loan with Countrywide was less than six months old! This action clearly amounts to fraudulent conduct on the part of Mr. Vinson, who knowingly deprived Countrywide of $140,768.58, in an attempt to benefit himself.

"We are all in agreement that a fraudulently obtained satisfaction of mortgage may be set aside and the mortgage restored as a valid lien." *Goldstein v. Gold*, 106 A.D.2d 100, 101, 483 N.Y.S.2d 375, 377 (N.Y.A.D. 2 Dept.,1984).

Mr. Vinson's payment of $5,916.15 constituted a wrongful cancellation of Countrywide's deed of trust by fraudulently purporting the wrong balance on the loan and causing Countrywide to release its security interest on the Property. The discharge of Countrywide's lien occurred after the fraudulent misrepresentations on the amount he owed, and on his fraudulent concealment of the mistaken credit to his account. There is no record of Mr. Vinson ever contacting Countrywide during the time period of his refinancing in order to clarify this mistake in his loan.

> Between a mortgagee whose mortgage has been discharged of record solely through the unauthorized act of another party, and a purchaser who buys the title in the belief, induced by such cancellation, that the mortgage is satisfied and discharged, the equities are balanced, and the rights in the order of time must prevail. The lien of the mortgage must remain despite the apparent discharge. *Scardone v. Sozzi*, 108 N.J. Eq. 415, 416, 155 A. 376, 376 (N.J.Ch.1931).

A forged satisfaction of a mortgage on the mortgage record is void and not effectual even in favor of one who has purchased the mortgaged premises in the honest belief that the satisfaction was in all respects genuine. *Farmers & Ginners Cotton Oil Co. v. Hogan*, 267 Ala. 248, 252, 100 So.2d 761, 763 (Ala.1958). Where the mortgagor's conduct was responsible for the fraudulent cancellation and the mortgagee was wholly without fault, the release will not affect the mortgagee's rights. *Sunrise Sav. and Loan Ass'n of Florida v. Giannetti*, 524 So.2d 697, 700 (Fla.App. 4 Dist.,1988).

Clearly, Mr. Vinson would have been justified had he notified Countrywide of the discrepancy in his account prior to refinancing his loans. However, not only did he fail to notify Countrywide, but he actively sought refinancing with another lender in order to quickly dispose of his obligations with Countrywide. Thus, Countrywide is entitled to have its priority lien on the Property reinstated, as it was released due to the fraudulent conduct of Mr. Vinson.

### III. CONCLUSION

For the aforementioned reasons, Plaintiff Countrywide asks this court to issue grant its motion for Partial Summary Judgment reinstating its first priority lien on real property located at 8712 Castle Ridge Ave., Las Vegas, Nevada 89129, APN # 138-08-513-058.

DATED this ___30___ day of November, 2006.

> BECKLEY SINGLETON, CHTD.
>
> _____
> J. CHRISTOPHER JORGENSEN, ESQ.
> Nevada Bar No. 5382
> JOSEPH A. GUTIERREZ, ESQ.
> Nevada Bar No. 9046
> 530 Las Vegas Boulevard, South
> Las Vegas, NV 89101
> (702) 385-3373
> Attorneys for Plaintiff

9

{00334723;}

EXHIBIT 1