# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | CASE NO. 07-10416-KJC |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC., | § | Chapter 11 |
| *ET. AL.,* | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | Hearing Date: 11/6/07 at 1:30 p.m. E.T. |
| | § | Objection Deadline: 10/31/07 at 4:00 p.m. E.T. |

**MOTION OF POSITIVE SOFTWARE SOLUTIONS, INC., AND EDWARD MANDEL
FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE KEVIN J. CAREY, U.S. BANKRUPTCY JUDGE:

In accordance with Bankruptcy Code section 362(d), Positive Software Solutions, Inc. ("Positive Software") and Mr. Edward Mandel (individually, "Mandel" and collectively with Positive Software, the "Positive Software Parties") move for relief from the automatic stay as described below and for cause would show as follows: [1]

## I.    JURISDICTION

1.    On April 2, 2007 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), thereby initiating this Bankruptcy Case. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1]    Mandel is the founder and 100% shareholder of Positive Software.

## II. BACKGROUND FACTS AND RELIEF REQUESTED[2]

2.     The Positive Software Parties recently brought a lawsuit (the "2007 Lawsuit") in the U.S. District Court for the Northern District of Texas (the "Texas District Court") against Susman Godfrey, L.L.P. ("Susman Godfrey") and two of its partners for fraud committed by those persons before, during and after Positive Software's pre-petition lawsuit against certain of the Debtors (the "2003 Lawsuit").[3]

3.     The Debtors, none of which is a party in the 2007 Lawsuit, brought a contested matter against Positive Software in this Bankruptcy Court seeking sanctions for alleged stay violations for the filing of the 2007 Lawsuit (which the Positive Software Parties opposed).[4] This Court has heard the motion and taken it under advisement, but with the recommendation to the parties that they attempt to consensually resolve the concerns raised by the Debtors to the Positive Software Parties' legal actions against Susman Godfrey.[5]

4.     Pursuant to the Court's recommendation, the Positive Software Parties and the Debtors have conducted settlement negotiations regarding the alleged stay violation issue and, in addition, have discussed collateral issues that have or are likely to arise in connection with the 2007 Lawsuit. In particular, the Positive Software Parties seek and have sought to reach an agreement with the Debtors permitting the Positive Software Parties:

---

[2]     The background facts presented are summary in nature. Among other things, both Positive Software and the Debtors have by way of prior briefing and argument made at various prior hearings detailed the relationship between the parties and the pre-petition litigation between them. The Positive Software Parties request that the Bankruptcy Court take judicial notice of all pleadings and other papers that the parties have previously presented to the Bankruptcy Court where there has been no objection as to authenticity.

[3]     The 2007 Action is pending before the Texas District Court as Case No. 3:07-cv-1422.

[4]     *See* Debtors' Motion for Additional Sanctions [Docket No. 2566] and Objection [Docket No. 2656].

[5]     *See* Transcript of Omnibus Hearing held on September 11, 2007 [Docket No. 3068], 101-103.

2

a. To obtain documents in Susman Godfrey's possession, custody or control that ostensibly belong to the Debtors.

b. To contest all claims by Susman Godfrey or other defendants to the 2007 Lawsuit that documents and other evidence may not be discoverable under legal privileges belonging to the Debtors (e.g., attorney-client communications and attorney work product).

c. To seek the modification of a protective order entered by the Dallas District Court in the 2003 Lawsuit (as further defined below, the "Protective Order"), protecting confidential information so as to permit the limited dissemination by the Positive Software Parties of the Debtors' confidential information under the same protective terms and conditions as provided in the protective order, but in the context of the 2007 Lawsuit.[6]

5.  No agreement has been reached by the Positive Software Parties and the Debtors resolving the foregoing central and collateral automatic stay issues.[7] The Positive Software Parties seek relief from the automatic stay to the extent that they are unable to reach an agreement with the Debtors resolving both the central and all collateral issues involving the 2007 Lawsuit. Additionally, if this Bankruptcy Court determines that the 2007 Lawsuit violates the automatic stay (or does not determine otherwise prior to hearing), the Positive Software Parties request that this Bankruptcy Court grant the Positive Software Parties relief from the automatic stay to permit the Positive Software Parties to bring and maintain that action effective as of August 20, 2007, the date that the 2007 Lawsuit was commenced.

---

[6]  In email correspondence on September 25, 2007, Susman Godfrey's counsel acknowledged that the Debtors' had agreed to give Susman Godfrey's counsel access to the confidential documents and materials.

6. To eliminate or minimize any burden or other putative inconvenience or cost to the Debtors, Positive Software is willing to stipulate that:

    a. The Positive Software Parties and their respective representatives, agents, attorneys, successors, assigns, and all persons otherwise in privity with them shall not use facts found or legal conclusions reached in the 2007 Lawsuit to establish by estoppel, res judicata or any other legal or equitable basis any binding facts or legal conclusions in the 2003 Lawsuit, including, but not limited to, the following actions or conduct:

        i. Asserting or arguing in that any ruling, finding of fact, order, opinion or conclusion of law arising out of or in connection with the 2007 Lawsuit has, may have, or will have any preclusive effect whatsoever as to the Debtors, including without limitation, any claim or assertion based upon the doctrines of collateral estoppel, issue preclusion, res judicata, claim preclusion, judicial estoppel, admission, stare decisis, law of the case, the *Rooker/Feldman* doctrine, precedent, persuasive authority, merger, and bar: (i) in the 2003 Lawsuit, or (ii) in connection with Positive Software's proofs of claim filed in the Debtors' bankruptcy cases.

        ii. In any way attempting to (i) enforce against any of the Debtors, or (ii) otherwise use to the potential prejudice or detriment of any of the Debtors any ruling, finding of fact, order, opinion, conclusion of law, or judgment arising out of or in connection with the 2007 Lawsuit.

---

[7] Positive Software, for its part, maintains that it did not violate the stay by bringing the 2007 Lawsuit and that by agreeing to waive collateral estoppel claims against the Debtors, the suit does not provide any real potential disruption or other harm to the Debtors warranting injunctive relief.

b. Any determination by the Dallas District Court in the 2007 Lawsuit limiting, restricting or otherwise finding that the scope of any privilege is not as extensive as claimed by the Debtors shall have *no* preclusive effect upon the assertion of such privilege in the 2003 Lawsuit, including without limitation, any claim that such privilege is barred, waived or otherwise ineffective or improper under the doctrines of collateral estoppel, issue preclusion, res judicata, claim preclusion, judicial estoppel, admission, stare decisis, law of the case, the *Rooker/Feldman* doctrine, precedent, persuasive authority, merger, and bar.

c. No documents or other materials obtained by the Positive Software Parties from Susman Godfrey through the discovery process in the 2007 Lawsuit shall be used in the 2003 Lawsuit unless the Positive Software Parties independently have obtained or obtain such documents and materials in the 2003 Lawsuit or are otherwise permitted to use such documents or materials by order of the Texas District Court or this Bankruptcy Court, or by agreement of the Debtors.

7. As explained further below, the requested relief is warranted because absent such relief, the Positive Software Parties cannot effectively proceed in the 2007 Lawsuit and because the relief will impose no undue hardship or prejudice upon the Debtors.

### III. ARGUMENTS AND AUTHORITIES

8. This Court may grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). "'Cause' is not defined in the Code; it must be determined on a case-by-case basis." *Izzarelli v. Rexene Prods. Co. (In the Matter of Rexene Prods. Co.)* 141 B.R. 574, 576 (Bankr. D. Del. 1992). Cause exists

5

to grant all of the relief requested by the Positive Software Parties with respect to the 2007 Lawsuit.

9. <u>The 2007 Lawsuit</u>.  As has previously been argued in briefing and at hearing, Positive Software did not violate the automatic stay by bringing the 2007 Lawsuit.  Among other things, *none* of the Debtors is a party to that litigation and no relief is sought from either the Debtors or property of the Debtors' estates.  Even if this Bankruptcy Court were to determine otherwise, however, relief is warranted to permit the Positive Software Parties to proceed with its claims.  Among other things, Positive Software has stipulated that it will not seek to use any finding or ruling in the 2007 Lawsuit against the Debtors in the 2003 Lawsuit under any applicable legal doctrine, including collateral estoppel, res judicata or similar legal doctrines.  Thus, there is no prejudice to the Debtors if the Positive Software Parties are permitted to proceed on their claims against the defendants. *See In re Aldan Indus., Inc.*, 2000 WL 357719, 5-6 (in denying debtor's motion to extend the stay to non-debtor officers involved in an arbitration proceeding, noting that the plaintiff had agreed that any findings made in the arbitration would be without collateral estoppel effect on the debtor).[8]

10. <u>Obtaining the Debtors' Documents in Susman Godfrey's Possession</u>.  The Positive Software Parties are concerned that any attempts by them to obtain documents or other materials from Susman Godfrey or any other party defendant to the 2007 Lawsuit may be met with any allegation by the Debtors (backed by a sanctions motion) that the discovery requests violate the automatic stay insofar as the subject of the discovery requests consist of documents and other property belonging to the Debtors and therefore violate Bankruptcy Code section 362(a)(3).

---

[8]    A true and correct copy of *Alden Indus*. is attached hereto as Exhibit "A".

11. Most courts have held that the automatic stay does not bar discovery against a debtor where the debtor is not a party. *See In re Miller,* 262 B.R. 499, 503 (9th Cir. B.A.P 2001) (holding that a post-petition third-party subpoena to a debtor and the seeking of a sanction against that debtor for failure to comply with the subpoenas did not offend the automatic stay); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969, 976-77 (N.D. Ill. 1992) (holding that after a defendant filed for bankruptcy, the automatic stay did not bar discovery of its employees and former employees relating to claims against the other defendants); *In re Hillsborough Holdings Corp.,* 130 B.R. 603, 605 (Bankr. M.D. Fla. 1991) (holding that the automatic stay did not prevent discovery aimed at debtor as long as the discovery pertained to claims and defenses of a non-debtor party).

12. In *Miller*, the Ninth Circuit held " [i]nformation is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, *even if that information could later be used against the party protected by the automatic stay. Id.* at 505 (emphasis added). Nevertheless, anticipating such an objection by the Debtors, Positive Software requests that it be permitted relief from the automatic stay to obtain discovery of documents and other materials in the possession, custody or control of the defendants to the 2007 Lawsuit, regardless of whether those documents and materials belong to the Debtors. Cause exists to permit the requested discovery because: (i) there will be absolutely no need for the Debtors to take action or expend any resources in connection with responding to those discovery requests; and (ii) the Positive Software Parties' interests would be prejudiced by not being able to obtain discovery of documents and other materials that may belong to the Debtors.

13. Regarding the first point, the Positive Software Parties' discovery requests would be made only on the non-debtor defendants to the 2007 Lawsuit and limited to documents

presently in their possession, custody or control or which were in their possession, custody or control on the date of the Debtors' bankruptcy filing.[9] In addition, as previously indicated, the Positive Software Parties are willing to stipulate that they will not use any newly-produced documents acquired in the 2007 Lawsuit subsequently in the 2003 Lawsuit unless independently obtained in that litigation or unless the Debtors otherwise agree or as permitted by the Texas District Court or this Bankruptcy Court. Regarding the second point, the documents and materials that the Positive Software Parties seek may well be instrumental in permitting the Positive Software Parties to prove their claims in the 2007 Lawsuit that the non-debtor defendants have engaged in wrongful conduct.

14. Privilege. It is likely that documents and other materials relevant to the Positive Software Parties' claims against the defendants involve alleged attorney-client communications and attorney work product with respect to the 2003 Lawsuit. Whether and the extent to which any privilege attaches to discovery materials is likely to be a point of contention. Notably, in the 2003 Lawsuit, the Texas District Court determined that certain documents claimed as privileged by the Debtors were not protected from discovery under the crime-fraud exception to privilege. The Positive Software Parties believe that similar issues are likely to arise in the 2007 Lawsuit involving documents and other materials relevant to their claims.

15. A legal privilege is not a property right. *See In Re Crazy Eddie Securities Litigation*, 131 F.R.D. 374 (E.D.N.Y. 1990) (finding no authority to support a debtor's argument that its attorney-client and work-product privileges are "property" within the meaning of 11 U.S.C. §362(a)(3).) Thus, the automatic stay is not implicated by any proceeding involving legal discovery privileges that may belong to the Debtors. Even if, however, legal privilege were

[9] If the Positive Software Parties determine to seek discovery directly from the Debtors, they intend to do so only after obtaining relief from the automatic stay or a determination of this Court that the automatic stay

to be recognized as a property right, cause would still exist to permit the Positive Software Parties to contest the assertion of those privileges by Susman Godfrey or any other party defendant to the 2007 Lawsuit.  First, the Positive Software Parties stipulate that they shall not use any ruling adverse to the Debtors' interests with respect to the existence, scope and extend of any privilege against the Debtors in the 2003 Lawsuit.  Second, regardless of the Positive Software Parties' stipulation, Susman Godfrey's and the Debtors' interests appear to be aligned and Susman-Godfrey is more than capable of representing those joint interests in any discovery proceeding in the 2007 Lawsuit involving privilege issues.  Third, to permit the defendants to assert a claim of privilege and to not allow the Positive Software Parties to contest that claim would be tantamount to permitting the automatic stay to be used offensively by assisting one non-debtor party the detriment of another.  *See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3rd Cir. 1991).

16.     <u>Extension of Protective Order to 2007 Lawsuit</u>.  Attached hereto as Exhibits "B" and "C", respectively, are the protective order entered by the Texas District Court in the 2003 Lawsuit and a supplement to that order (collectively, the "<u>Protective Order</u>").  The Protective Order provides, generally, that documents that are designated by any one party to be confidential can only be disseminated by another party to its professionals, experts and others under strict terms and conditions.  The Positive Software Parties seek to disseminate certain documents and materials that the Debtors in the 2003 Lawsuit designated as confidential to the Positive Software Parties' consultants in the 2007 Lawsuit, but under the same strict terms and conditions as provided in the Protective Order. The Positive Software Parties have requested that the Debtors agree to have the Protective Order extended to the 2007 Lawsuit. The Debtors have, as yet, not have not agreed to this request despite the fact that the Positive Software Parties agreed to extend

---

does not preclude non-party discovery of the Debtors.

similar protections afforded to Positive Software's confidential information when requested by Susman Godfrey.[10] Unless the Debtors agree to the Positive Software Parties' request, the Positive Software Parties intend to request that the Texas District Court modify the Protective Order to encompass the use of confidential information and documents in the 2007 Lawsuit.

17.     There is absolutely no prejudice to the Debtors in permitting the requested modification to the automatic stay.  First, the relief that the Positive Software Parties seek would still require them to protect any information deemed confidential by the Debtors under the strict terms and conditions of the Protective Order.  Second, the alleged confidential information involves the Debtors' retail loan origination platform, which the Debtors tried and failed to sell. Thus, even if the designated confidential information did happen to be disclosed publicly, it is impossible to fathom how the Debtors could suffer any damages. The Positive Software Parties are informed that the Debtors have authorized Susman Godfrey to disclose designated confidential information to Susman Godfrey's own experts, thus highlighting the fact that the information is no longer sensitive.  Susman Godfrey and the debtors are simply attempting to gain an unfair advantage in the 2007 Lawsuit by refusing access to the exact same materials to the Positive Software Parties' experts.

18.     If the Positive Software Parties are not permitted to obtain the extension of the Protective Order, they are likely to suffer prejudice.  The alleged confidential information involves the Debtors' alleged proprietary loan origination software – software that is in fact based upon Positive Software's own Loanforce software.  Among other things, examination of

---

[10]     The Positive Software Parties' litigation counsel, Michael Shore, agreed to allow Susman Godfrey and the other non-debtor defendants to provide their experts in the 2007 Lawsuit with the confidential documents belonging to the Positive Software Parties that is covered by the Protective Order from the 2003 Lawsuit. Mr. Shore requested that counsel for Susman Godfrey seek the Debtors' consent for the Positive Software Parties to likewise use the Debtors' documents. By email correspondence on October 4, 2007, Debtors' counsel informed Susman Godfrey's counsel that the Debtors will not consent to the Positive Software Parties' request.

the Debtors' efforts to prepare for the cutoff of Positive Software's software key is relevant to whether and when Susman Godfrey knew that the Debtors' were preparing for Positive Software to cut off access before that cut off actually occurred. The alleged confidential information will also reveal whether and when Susman Godfrey was aware of the continued use of Positive Software's proprietary software after the termination of the Software Subscription Agreement and the Texas District Court's preliminary injunction. The alleged confidential information will also reveal that Susman Godfrey was actually aware that Positive Software's proprietary software was accessed by New Century Mortgage's software developers to create software that Susman Godfrey told the Texas District Court was a "clean room" product. In short, the crime fraud exception to the attorney-client privilege certain to be found under Texas law in the Texas District Court would be blocked by asserting that the information is otherwise protected as proprietary business information under the 2003 Lawsuit's Protective Order. This is not a defensive use of the Protective Order by New Century, but an offensive use by proxy on the part of Susman Godfrey.

### IV. REQUEST FOR RELIEF

The Positive Software Parties respectfully request that this Bankruptcy Court enter an order granting this Motion and modifying the automatic stay to authorize and permit the Positive Software Parties the following:

1) Effective as of August 20, 2007, to initiate and continue the 2007 Lawsuit to a final adjudication, including any future injunctive, arbitration, or appellate proceedings that may be involved.

2) To request and obtain discovery in the 2007 Lawsuit of documents and other materials previously or currently in the possession, custody and control of Susman

11

Godfrey and other non-debtor defendants to that litigation regardless of the Debtors' property interests in those documents and materials (subject to any defense or objection to the production of the documents and other materials other than the automatic stay).

3) To dispute and otherwise contest any assertion by the defendants to the 2007 Lawsuit or the Debtors (should they intervene in that litigation) that any discovery requested by the Positive Software Parties is subject to a legal privilege belonging to the defendants or the Debtors.

4) To file the necessary motion papers and otherwise seek in the 2003 Lawsuit an order extending the scope of the Protective Order to encompass the 2007 Lawsuit and thereby permit information designated as confidential in the 2003 Lawsuit to be disseminated in accordance with the terms and conditions contained in the Protective Order to expert consultants and other litigation professionals involved in the 2007 Lawsuit.

The Positive Software Parties further request that this Bankruptcy Court grant them any and all other relief to which the may be justly entitled.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

                                                  Respectfully submitted,

Dated: October 18, 2007
      Wilmington, Delaware               FOX ROTHSCHILD LLP

                                        By:   /s/ Carl D. Neff
                                                Daniel K. Astin (Del. No. 4068)
                                                Anthony M. Saccullo (Del. No. 4141)
                                                Carl D. Neff (Del. No. 4895)
                                                Citizens Bank Center, Suite 1300
                                                919 N. Market Street, P.O. Box 2323
                                                Wilmington, Delaware  19899-2323
                                                Tel (302) 654-7444/Fax (302) 656-892
                                                dastin@foxrothschild.com
                                                asaccullo@foxrothschild.com
                                                cneff@foxrothschild.com

                                                -and-

                                                Mark H. Ralston, Esq.
                                                Texas Bar No. 16489460
                                                THE RALSTON LAW FIRM
                                                2603 Oak Lawn Avenue
                                                Suite 230, LB 2
                                                Dallas, Texas 75219-9109
                                                Telephone: (214) 295-6416
                                                ralstonlaw@gmail.com

                                                -and-

                                                Michael Shore, Esq.
                                                Shore Chan Bragalone LLP
                                                325 North Saint Paul Street – Suite 4450
                                                Dallas, Texas 75201
                                                214.593.9110 Telephone
                                                214.593.9111 Facsimile
                                                shore@shorechan.com

                                                Counsel to Positive Software Solutions, Inc.
                                                and Mr. Edward Mandel