

Not Reported in B.R. Page 1
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))



Only the Westlaw citation is currently available.

United States Bankruptcy Court,
E.D. Pennsylvania.
In re ALDAN INDUSTRIES, INC. a/k/a Aldan Rubber Company, Debtor.
No. 00-10360DWS.

April 3, 2000.

**[1] Bankruptcy** 2394.1
51k2394.1 Most Cited Cases
Automatic stay applied to preclude creditor from proceeding, as against Chapter 11 debtor, with arbitration of claims under prepetition outsourcing and employment agreements. Bankr. Code, 11 U.S.C.A. § 362(a)(1).

**[2] Bankruptcy** 2394.1
51k2394.1 Most Cited Cases

**[2] Bankruptcy** 2396
51k2396 Most Cited Cases
Though automatic stay applied to preclude creditor from proceeding, as against Chapter 11 debtor, with arbitration of claims under prepetition outsourcing and employment agreements, stay did not apply as to arbitration of creditor's claims against third-party guarantors of debtor's obligations under outsourcing and employment agreements. Bankr. Code, 11 U.S.C.A. § 362(a)(1).



**[3] Bankruptcy** 2396
51k2396 Most Cited Cases
As general rule, automatic stay does not affect proceedings against guarantors. Bankr. Code, 11 U.S.C.A. § 362(a).

**[4] Bankruptcy** 2462
51k2462 Most Cited Cases
As general rule, acts taken in violation of automatic stay are void ab initio. Bankr. Code, 11 U.S.C.A. § 362.

**[5] Bankruptcy** 2396
51k2396 Most Cited Cases
Automatic stay may be extended to protect nondebtor third parties only in unusual circumstances. Bankr. Code, 11 U.S.C.A. § 362.

**[6] Bankruptcy** 2396
51k2396 Most Cited Cases
"Unusual circumstances" did not exist of kind sufficient to warrant extension of automatic stay to preclude arbitration of creditor's claims against third-party guarantors of debtor's contractual obligations, though allowing arbitration to proceed would allegedly require debtor to become involved in litigation in multiple fora and significantly increase its litigation costs, and though arbitrator's decision might collaterally estop debtor from raising certain setoffs and counterclaims against guarantors' subrogation claims, where arbitration could proceed without debtor, and where debtor, regardless of whether arbitrator's decision might estop debtor from raising certain setoffs and counterclaims in subrogation action, would be able to assert claims as against creditor. Bankr. Code, 11 U.S.C.A. § 362.



**[7] Guaranty** 78(2)
195k78(2) Most Cited Cases
Although guarantor generally may assert defenses of his principal in suit under guarantee, counterclaim seeking setoff may not be appropriate.

**[8] Bankruptcy** 2125

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))

Page 2

51k2125 Most Cited Cases

**[8] Bankruptcy** 🗝 2396
51k2396 Most Cited Cases

Even when unusual circumstances exist justifying an extension of automatic stay to non-debtor parties, extension must be sought in exercise of bankruptcy court's equity jurisdiction under statute allowing court to issue necessary or appropriate orders. Bankr. Code, 11 U.S.C.A. §§ 105, 362.

**[9] Bankruptcy** 🗝 2125
51k2125 Most Cited Cases

**[9] Bankruptcy** 🗝 2396
51k2396 Most Cited Cases

Even if "unusual circumstances" existed sufficient to permit an extension of automatic stay to preclude continuation of arbitration against nondebtor-guarantors, bankruptcy court would not extend stay, absent any request for extension of stay in exercise of bankruptcy court's equity jurisdiction. Bankr. Code, 11 U.S.C.A. §§ 105, 362.

John J. Wetzel, Esquire, Philadelphia, Counsel for Debtor.

Michael H. Reed, Esquire, Pepper Hamilton LLP, Philadelphia, Counsel for Movants Coated Fabrics International and Barry M. Fleischer.

Robert H. Levin, Esquire, Philadelphia, Counsel for Official Committee of Unsecured Creditors.

Dave P. Adams, Esquire, Office of the U.S. Trustee, Philadelphia, for United States Trustee.

## MEMORANDUM OPINION
SIGMUND, Bankruptcy J.

*1 Before the Court is the Motion for a Declaration that the Automatic Stay Does Not and Did Not Apply to the Pending Arbitration Proceeding Concerning an Escrow Agreement and for Relief from the Automatic Stay ("Motion") filed by Coated Fabrics International, Inc. ("CFI") and Barry M. Fleischer ("Fleischer") (CFI and Fleischer are collectively referred to as "Movants"). The Debtor and the Official Unsecured Creditors' Committee (the "Committee") oppose the Motion. An evidentiary hearing was held on the Motion on February 15, 2000. At the inception of the hearing, the Debtor withdrew certain of the relief sought in the Motion. At the close of the hearing, the parties were granted the opportunity to file post-hearing briefs which they have done. [FN1] Upon consideration, I grant the Motion as orally modified.

BACKGROUND

Debtor, Aldan Industries, Inc. ("Debtor"), is in the business of developing, manufacturing and selling rubber coated fabrics. On September 14, 1995, Debtor entered into an Outsourcing Agreement with CFI. On the same date, Debtor also entered into an Amended and Restated Employment Agreement ("Employment Agreement") with Fleischer. Both the Outsourcing Agreement and the Employment Agreement contain arbitration clauses.

Pursuant to the terms of the Employment Agreement, Fleischer served as the Debtor's President until he was discharged from that position last year. Edwin T. Winter, who owns 74.60% of Aldan's stock, currently serves as Aldan's President.

Fleischer was and is also the President of CFI. As part of its business, CFI manufactures and sells a product known as AquaTech. Aldan purchased this product from CFI. In or about June of 1999, Aldan advised CFI of its desire to purchase larger quantities of this product. However, Fleischer was concerned about the increased credit risk that CFI would bear if it sold additional AquaTech to Aldan. Winter persuaded Fleischer to accede to Aldan's request for additional product by agreeing to guarantee Aldan's payment obligation. On June 30, 1999, Aldan, Winter, Smialkowski, who is also an officer and shareholder of Aldan, CFI and two attorneys, namely Ramon R. Obod, Esquire and Jeffrey P. Libson, Esquire, who were to perform as the Escrow Agent, entered into an Escrow Agreement. The Escrow Agreement provides, in relevant part:

CFI has a product manufactured and sold under the name of AquaTech TM (the "Product"). Prior to the date hereof, CFI has sold and Aldan has purchased Product from CFI. CFI and Aldan anticipate that such relationship will continue, subject to the provisions set forth in Exhibit 1 hereto.

Winter has personally guaranteed Aldan's payment obligations to CFI. To secure that guarantee Winter

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))

Page 3

and Smialkowski are entering into this Escrow Agreement and have deposited with the Escrow Agent an aggregate of $125,000 (the "Escrow Fund") ($100,00 by Winter and $25,000 by Smialkowski).

Exhibit M-2 (Escrow Agreement) at 1. The Escrow Agreement also contains an arbitration clause which states, in pertinent part:

*2 Any dispute which may arise under this Escrow Agreement shall be settled by mutual agreement of Winter and CFI ... or, upon written demand by either Winter or CFI, by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association.

Id. at ¶ 6.1.

On or about August 17, 1999, Movants filed with the American Arbitration Association ("AAA") a Demand for Arbitration against the Debtor. See Letter dated August 17, 1999 from William F. Kershner, counsel for Fleischer and CFI to American Arbitration Association and Demand for Arbitration submitted as part of Exhibit M-7. In the demand, Movants alleged disputes under the Outsourcing Agreement and the Employment Agreement. Id. In a written response dated September 7, 1999, Debtor denied any violation of the agreements and, importantly, raised "related counterclaims against CFI and Fleischer." Exhibit M-9 (Letter from James A. Matthews, III, counsel for Debtor, to Case Administrator at the American Arbitration Association). Describing the counterclaim against CFI, Debtor's counsel wrote: "[CFI] is in violation of the Outsourcing Agreement insofar as it has failed or refused to exercise its best efforts to permit fulfillment of the terms of the agreement with a degree of good faith and fidelity as required in an exclusive dealing relationship and, further, by improperly demanding, accepting and retaining payments under the Outsourcing Agreement for materials not covered thereby." Id.

Movants subsequently filed an Amended Demand for Arbitration dated September 14, 1999 against Debtor, Winter and Smialkowski. See Amended Demand for Arbitration submitted as part of Exhibit M-7. In addition to asserting violations of the Outsourcing Agreement and the Employment Agreement, the amended demand also asserted violations of the "Escrow Agreement among Aldan Industries, Inc., Edwin T. Winter, Richard Smialkowski, and [CFI]."

An arbitrator was subsequently chosen and/or appointed. Following a conference call with the parties, the arbitrator issued a case management order scheduling three separate hearings to resolve the parties' disputes: (i) a hearing on January 4, 2000 "to resolve all issues relative to" the Escrow Agreement; (ii) a hearing on February 24 "to resolve all issues, claims and counterclaims pertaining to" the Employment Agreement; and (iii) a hearing on April 13, 2000 "to resolve all issues, claims and counterclaims relating to" the Outsourcing Agreement. Exhibit M-8.

The hearing on the Escrow Agreement which was originally scheduled for January 4th was postponed until January 10th. On that day, prior to the hearing, Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. At the hearing, Debtor's counsel informed the Movants that Debtor had filed for bankruptcy. Nevertheless, the arbitration was held. The extent of the Debtor's participation in that proceeding was not revealed to me. The arbitrator refused to consider any evidence relating to the counterclaims and set-offs raised in Debtor's counsel's letter of September 7th. According to Fleischer, the arbitrator indicated that the set-offs and counterclaims would be resolved in conjunction with the hearing on the Outsourcing Agreement. Notably there is no evidence that the arbitrator refused to take into consideration any defenses the guarantors had to the amount of the guaranteed debt. At the close of the hearing, the arbitrator took the issues relating to the Escrow Agreement under advisement. Thereafter, an agreement was reached that no further proceedings relating to the arbitration would proceed pending a decision by this Court on the applicability of the automatic stay.

*3 On or about January 21, 2000, Movants filed their Motion seeking a declaration that the automatic stay is inapplicable to the first phase of the arbitration relating to the Escrow Agreement so that CFI can recover the funds held in escrow under the Escrow Agreement. In the Motion, Movants also requested relief from the stay to proceed with the arbitration hearings on the Outsourcing Agreement and the Employment Agreement. However, at the hearing on the Motion, Movants withdrew this part of their request.

At the hearing on the Motion, Fleischer testified on behalf of the Movants and Winter testified on behalf of Respondents. Thereafter, counsel presented oral argument. Through their arguments, it became

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

apparent that a significant issue in this dispute is whether the arbitrator's ruling that he will not consider the Debtor's set-offs or counterclaims in ruling on the Movants' claim under Escrow Agreement constitutes grounds for concluding that the automatic stay applies to the arbitration. The parties were advised to address this issue in their post-hearing briefs.

DISCUSSION

Movants seek a declaration that the automatic stay did not and does not apply to that portion of the arbitration proceedings relating to the Escrow Agreement (hereinafter referred to as the "Escrow Claim"). According to the evidence in the record, the defendants in the arbitration proceeding are: (i) Debtor; and (ii) Winter and Smialkowski (collectively referred to hereinafter as the "Guarantors"). The Code provision governing application of the automatic stay is § 362. This provision states, in relevant part:

> [A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of-- the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1). Pursuant to this provision, the automatic stay was and is applicable to the arbitration proceeding as to the Debtor. Accordingly, arbitration of the Escrow Claim was stayed as to the Debtor. [FN2] However, an action or proceeding stayed as to the debtor under § 362(a)(1) is not stayed as to its co-defendants. *Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1330 (10th Cir.1984).* See also *Akers v. Bonifasi, 629 F.Supp. 1212, 1213 (M.D.Tenn.1985)* (the filing of a bankruptcy petition operated automatically to stay the commencement of actions as to the debtor, but not as to other persons named as defendants). Moreover, as a general rule, the automatic stay does not affect proceedings against guarantors. See e.g., *Crossland Federal Savings Bank v. A. Suna & Company, Inc., 935 F.Supp. 184, 202 (E.D.N.Y.1996)* (bankruptcy stay against a corporation does not affect action arising from the obligations of non-bankrupt guarantors); *Philadelphia Gold Corporation v. Fauzio (In re Philadelphia Gold Corporation), 56 B.R. 87, 90 (Bankr.E.D.Pa.1985)* (actions against guarantors not barred by the automatic stay). The primary rationale for refusing to extend the automatic stay to guarantors is to "insure that creditors 'obtain the protection they sought and received when they required a third party to guaranty the debt." ' *McCartney v. Integra National Bank North, 106 F.3d 506, 510 (3d Cir.1997)* (quoting *Credit Alliance Corp. v. Williams, 851 F.2d 119, 121 (4th Cir.1988)*). See also *Credit Alliance Corporation v. Williams, 851 F.2d 119, 121 (4th Cir.1988)* ("Nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt.").

*4 Nevertheless, a narrow exception to the prohibition against extending the protection of the automatic stay to nondebtor third parties has developed. Relying upon *A.H. Robbins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876 (1986)*, courts have extended the automatic stay to nondebtor third parties in "unusual circumstances." *McCartney, supra, 106 F.3d at 510.* See also *Croyden Associates v. Alleco, Inc., 969 F.2d 675, 677 (8th Cir.1992)* (noting existence of narrow exception to general rule for "unusual circumstances"), *cert. denied, 507 U.S. 908, 113 S.Ct. 1251, 122 L.Ed.2d 650 (1993)*. "Unusual circumstances" have been found when "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor ." *A.H. Robbins Co., Inc. v. Piccinin, supra, 788 F.2d at 999.* Expounding on this point, the Fourth Circuit stated: "An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *788 F.2d at 999.* See also *American Film Technologies, Inc. v. Taritero, 175 B.R. 847 (Bankr.D.Del.)* (granting preliminary injunction staying the prosecution of an action against current and former officers of the debtor on the grounds that the debtor had an obligation to indemnify the officers and, in the event the officers were found liable, the debtor could be collaterally estopped from denying liability for their actions). But see *Algamene Bank Nederland, N.V. v. Hallwood Industries, Inc., 133 B.R. 176, 180 n. 3 (W.D.Pa.1991)* (specifically rejecting dictum in *A.H.Robbins Co. Inc., supra, 788 F.2d at 999-1000,* that a stay is permissible under § 362(a)(1) based

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 07-10416-BLS    Doc 3320-1    Filed 10/18/07    Page 5 of 9

Not Reported in B.R.                                                                                                      Page 5
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))

solely on the existence of an indemnification agreement and reasoning that, where original obligor assigned obligation of payment to third party but creditors retained right to pursue payment from original obligor, a judgment against the original obligor might assist the third party debtor's reorganization by replacing the claims of a clearly hostile creditor with original obligor's claim for indemnification and that the third party debtor would be able to assert against the original obligor defenses to the original claim by the creditor and additional defenses involved in the indemnification agreement between the original obligor and the third party debtor); *Veeco Investment Company, L.P. v. Mercantile National Bank (In re Veeco Investment Co., L.P.),* 157 B.R. 452 (Bankr.E.D.Mo.1993) (concluding that "unusual circumstances" do not exist when a guarantor is being sued under its guarantee contract and has an independent obligation to the creditor that will be paid with the guarantor's assets and not from the debtor's assets).

*5 Respondents contend that "unusual circumstances" are present here because "[t]he continued prosecution of the [a]rbitration would irreparably impede and injure the Debtor's estate and creditors." Joint Memorandum at 6. In support of this contention, Respondents assert six arguments, only arguments one and four being supported by citation of any legal authority. *See id.* at 6-9. While I am not required to give more than passing consideration to an argument that is devoid of any legal support, *see Valucci v. Glickman, Berkovitz, Levinson & Weiner (In re Glickman, Berkowitz, Levinson & Weiner,* 204 B.R. 450, 453 (E.D.Pa.1997) (rejecting argument where no authority was cited in support thereof), I will address each point to explain my refusal to find any "unusual circumstances" present to justify an exception from the normal rule that allows creditor action against a non-debtor guarantor.

As their first argument, Respondents contend that because the arbitrator did not permit the Guarantors or the Debtor to present evidence of the Debtor's offsets and counterclaims, the Movants might "receive funds in excess of their actual claims." *Id.* at 6. If that occurs, according to the Respondents, "the Debtor's estate would be prejudiced because it will still be liable over to the Guarantors for the full amount of the escrow funds released, regardless of the amount actually determined to be owed Movants." *Id.* As authority for this argument, Respondents cite only to § 35 of the Restatement (Third) of Suretyship and Guaranty. This section focuses on when a secondary obligor such as a guarantor may utilize the principal obligor's claim against the obligee to reduce its duty under the secondary obligation. It provides no authority for the proposition which is the cornerstone of the Movants' argument, namely that the Debtor would be liable over to the Guarantors for the full amount of the escrowed funds released regardless of the amount which the Movants are actually owed. [FN3] In any event, that argument misses the mark. In the first place, Debtor has not established that, without regard to bankruptcy, the counterclaims were ever a proper response by the Guarantors to the Movants' suit on the guarantee. While a guarantor generally may assert defenses of his principal on a suit under the guarantee, *General Equipment Manufacturers v. Westfield Insurance Co.,* 430 Pa.Super. 526, 538, 635 A.2d 173, 180 (1993) (a surety may usually assert any defense of which his principal could take advantage), a counterclaim seeking to set-off a claim may not be appropriate. *Westinghouse Electric & Manufacturing Co. v. Wilson,* 63 Pa.Super. 294, 1916 WL 4550, at *5 (Pa.Super.1915) (a surety cannot set up as a defense the counterclaim of its corporate principal for lost profits). Thus, the basic premise that Debtor is prejudiced or harmed by reason of the arbitrator's decision not to allow evidence concerning the counterclaims in the litigation relating to the Escrow Agreement is not established. Indeed this may be the very reason that the arbitrator excluded evidence of the counterclaims. [FN4] Moreover, the counterclaims are in the nature of a set-off. Thus, even if the Movants are paid more than they would ultimately be entitled to receive because of the existence of related counterclaims, the Debtor is not without recourse. The Debtor's actions against the Movants are not affected by the arbitration proceeding or the Escrow Agreement. As noted above, the arbitrator has expressly deferred consideration of counterclaims until a later stage, and the Movants have expressly agreed as part of this record that collateral estoppel effect will not be given to any findings of the arbitrator that might impair the Debtor's ability to press those counterclaims. Thus, to the extent that Debtor has a counterclaim against Movants, it will have the opportunity to press it directly at a later date.

*6 As their second argument, Respondents assert that, although the Movants have agreed to waive any collateral estoppel arguments designed to preclude Debtor from raising its set-offs and counterclaims at

a later date, the Guarantors have not agreed to the same. Consequently, Respondents contend, Debtor will be prejudiced if the arbitration proceeds because Debtor may be estopped from raising its set-offs and counterclaims against the Guarantors' subrogation claims. Respondents cite no authority to support their contention that Debtor may be estopped from raising its set-offs or counterclaims against the Guarantors' subrogation claims, and I do not reach that issue herein. More significantly, I find that there is no prejudice to Debtor if that is the consequence of an arbitrator's award in favor of Movants since Debtor will be able to recover the increased amount of the Guarantors' claim by its direct action against Movants. Whether the value of the counterclaims are realized by reduction of the claim by set-off or a separate direct recovery, the bottom line is the same to the estate.

Perhaps anticipating this conclusion, Respondents' third argument is that Debtor's ability to recover on its counterclaim in a separate independent action against CFI is "unfounded and unrealistic" because of "CFI's precocious financial position." Joint Memorandum at 7. However, there is no evidence in the record that CFI is in poor financial condition. At the hearing on the Motion, Fleischer testified that CFI could not risk outlaying funds to purchase additional product in order to sell higher quantities of AquaTech to Debtor without assurance that CFI would be promptly paid for the sales, but no evidence was presented that CFI is financially unsound. In any event, even if that fact had been proven, Respondents' have offered no legal authority as to how that fact might be relevant.

As their fourth argument, Respondents assert that arbitration of the Escrow Claim should be stayed and such dispute should be resolved in the Bankruptcy Court because otherwise the disputes between the parties will be raised in three different actions. Elaborating on this point, the Respondents state: "There would first be the Arbitration between CFI and the Guarantors, then a second action by the Guarantors against the Debtor's estate for subrogation, which the Debtor would have to defend, and a third action by the Debtor against the Movants with respect to the Debtor's offsets and counterclaims. The duplicative litigation would not only prejudice the Debtor's estate and creditors and increase litigation costs, it would also further tax an already over-burdened judicial system." Id. at 8. In support of this argument, Respondents cite

*McCartney v. Integra National Bank North,*.

In *McCartney,* the debtor was a guarantor for a loan to a third party. The land which the third party provided as security for the loan was sold to satisfy the obligation to the lender. The sale price of the land resulted in a deficiency in the amount owed to the lender. In order to protect its claim to the unpaid balance owed to it, the lender was required under the Pennsylvania Deficiency Judgment Act ("DJA") to file a petition in state court within a certain time period to fix the fair market value of the land sold. To comply with this requirement, the lender was required to name in the petition or give notice to any "debtor, obligor, guarantor, mortgagor, and any other person directly or indirectly liable to the judgment creditor for payment of the debt." 106 F.3d at 509 (*quoting* 42 Pa.C.S.A. § 8103(b)). Under state law, the failure to comply with this requirement discharged all personal liability to the judgment creditor for the parties neither served with nor named in the petition. *Id.* Without filing the required petition to fix the fair market value of the land, the lender filed a deficiency claim seeking to recover from the debtor/guarantor the amount still owed on the loan. The debtor/guarantor objected to the claim, contending that because the lender had not filed the required petition in state court, its claim was satisfied as a matter of law. The Third Circuit disagreed, concluding that the automatic stay prevented the lender from complying with the requirements of the DJA. The Third Circuit reasoned that had the lender sought a deficiency judgment against the obligor, the lender would have had to name the debtor/guarantor in its petition or risk discharging him as loan guarantor and that if the lender had opted to name the debtor/guarantor in the petition, the lender would have violated the automatic stay. *Id.* at 509-511. Moreover, the Third Circuit noted:

> *7 [I]t is clear that following the sheriff's sale [of the land] Lamar's [the obligor], as a corporate entity, no longer had any assets. Consequently, McCartney, as guarantor, would have been liable for satisfying any deficiency judgment claim asserted by Integra [the lender]. Simply stated, there was no way for Integra [the lender] to pursue a deficiency judgment action against Lamar's [the obligor] and to protect its right to satisfaction of Lamar's [the obligor's] debt without involving McCartney [the guarantor/debtor] in the process. "
> *Id.*

Based on these considerations, the Third Circuit ruled that "unusual circumstances" existed to extend the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))

automatic stay. The Third Circuit stated:
> Given McCartney's necessary participation in any deficiency judgment action initiated by Integra against Lamar's in state court, we find the bankruptcy court properly concluded that the automatic stay extended to enjoin Integra from complying with the requirements of the DJA. This case falls squarely under the "unusual circumstances" exception as developed in *A.H. Robbins* and its progeny: any deficiency judgment would have necessarily impacted upon McCartney's estate.

*Id.* Significantly, the debtor/guarantor argued that the creditor should have sought relief from the automatic stay to allow it to name both the obligor and the debtor/guarantor in a deficiency judgment petition. The Third Circuit rejected this argument, explaining:
> [D]ebtors should not be burdened by state court litigation when deficiency judgment actions impacting upon the debtor's estate can be settled in the bankruptcy forum. Indeed, to permit state court deficiency judgment actions involving the debtor to proceed when they can be adjudicated in the bankruptcy court is to do violence to the purposes of the automatic stay....[B]y centralizing all prebankruptcy civil claims against a debtor in the bankruptcy court, the debtor is granted a "breathing spell" during which he is relieved of the financial pressures that drove him to bankruptcy. The centralization of all claims in the bankruptcy court also permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion. These benefits of the automatic stay could not be achieved if creditors are permitted relief from stay to pursue state court deficiency judgment actions impacting on the estate of the debtor. Debtors would be forced to expend valuable time, energy and resources defending against state court litigation that could be settled directly in the bankruptcy court.

*Id.* at 512. Relying on the principles espoused by the Third Circuit, Respondents contend that all the litigation, including the arbitration against the Guarantors, should be consolidated and heard before this Court to "lessen the impact upon the Debtor's estate as well as centralize all claims in the Bankruptcy Court." I disagree. In *McCartney*, the creditor could not proceed with the litigation at issue without involving the debtor. Rather than grant relief from the stay to pursue the litigation against the debtor, the Third Circuit ruled that the litigation should proceed in the bankruptcy court. However, in the instant case, arbitration of the Escrow Claim can be held without the Debtor. For this reason, *McCartney* is distinguishable.

*8 Respondents' fifth argument is repetitive of its other arguments. It merely asserts that "the claims and disputes as well as the offsets and counterclaims should be all litigated in one centralized litigation before the Bankruptcy Court so that all matters, issues and defenses may be considered." Joint Memorandum at 8. No authority is cited to support this argument, which, if accepted, would swallow the rule that an action against a third party guarantor is not stayed by the principal's bankruptcy filing. [FN5]

Lastly, in response to Movants, Respondents contend that Debtor would not be giving away valuable assets by permitting the Guarantor to raise the Debtor's offsets and counterclaims because even if they are raised by the Guarantors, the Debtor would not be precluded from raising those very same offsets and counterclaims. *Id.* at 8-9. ("The Guarantor's utilization of the offsets and counterclaims simply have no effect upon the Debtor's ... abilities to raise those very same offsets and counterclaims."). The arbitrator has already determined that the counterclaims may not be considered as a set-off to the Movants' claim against the Guarantors under the Escrow Agreement. I am without authority to change that decision. Nor do I find it appropriate to impose a bankruptcy injunction in order to review and possibly reach a different conclusion. Indeed it appears from Respondents' last argument that they acknowledge the very point I have made, *i.e.*, the Debtor will have the ability to raise these same offsets and counterclaims in subsequent litigation of the Outsourcing Agreement.

Finally, even if Respondents had persuasively argued that "unusual circumstances" exist here warranting an exception to the general prohibition against extending the automatic stay to preclude the continuation of a suit against a nondebtor, extensions of the stay under such circumstances are granted in conjunction with a court's authority under § 105. In *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir.1993), the Sixth Circuit Court of Appeals observed that even when unusual circumstances exist justifying an extension of the automatic stay to non-debtor parties, a bankruptcy court must rely upon its equity jurisdiction under § 105 to issue an injunction extending the stay. *See also All Seasons Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*, 79 B.R. 901, 903 (Bankr.C.D.Cal.1987) (extension of automatic stay

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Page 8
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))

because of "unusual circumstances" does not occur automatically "but requires the filing of an appropriate adversary proceeding under § 105 and § 362 to achieve the desired result."). *Accord McCartney v. Integra National Bank North,* 106 F.3d 506 (3d Cir.1997) (noting in parenthetical that Fourth Circuit in *A.H. Robins Co., Inc. v. Piccinin, supra,* relied on both the "automatic stay provision and the bankruptcy court's equitable powers under 11 U.S.C. § 105 to enjoin actions against nondebtor codefendants"). [FN6] *But see Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital, supra,* 105 B.R. at 942 (reasoning that the Fourth Circuit in *A.H. Robbins Co., Inc., supra,* found "three separate grounds for issuing a preliminary injunction against nondebtor parties," namely § 362(a)(1), § 363(a)(3) and § 105)). As noted at the hearing on the Motion, relief has not been sought under § 105. Debtor did not only fail to establish entitlement to injunctive relief in favor of non-debtors, it did not seek it. Accordingly the stay of § 362 only applies to the Debtor.

*9 In sum, I find that while the automatic stay precluded Movants from proceeding with arbitration of the Escrow Claim as to the Debtor, it did not and does not prevent them from proceeding with the arbitration as to the other defendants. Therefore, the Motion (as modified) will be granted.

An Order consistent with this Memorandum Opinion shall issue.

ORDER

AND NOW, this 3rd day of April, 2000, upon consideration of the Motion for a Declaration that the Automatic Stay Does Not and Did Not Apply to the Pending Arbitration Proceeding Concerning an Escrow Agreement and for Relief from the Automatic Stay ("Motion") of Coated Fabrics International, Inc. and Barry M. Fleischer, after hearing and notice, and for the reasons set forth in the foregoing Memorandum Opinion;

It is hereby ORDERED that the Motion is GRANTED as modified.

FN1. Debtor and the Committee (collectively referred to hereinafter as the "Respondents") filed a joint post-hearing memorandum of law. *See* Joint Memorandum of Law of Debtor and the Official Unsecured Creditors' Committee of Aldan Industries, Inc. in Opposition to Coated Fabrics International, Inc.'s Motion for Relief from the Automatic Stay ("Joint Memorandum").

FN2. As a general rule, acts taken in violation of the automatic stay are *void ab initio. In re Siciliano,* 13 F.3d 748, 750 (3d Cir.1994).

FN3. Notably, § 68 of the Restatement (3d) of Suretyship and Guaranty addresses the preclusive effect of litigation between an obligee and secondary obligor on the principal obligee. This provision states, in pertinent part:
(2) When, in an action by the obligee against the secondary obligor to enforce the secondary obligation, (i) a judgment is given in favor of the obligee and (ii) the secondary obligor seeks recovery from the principal obligor pursuant to §§ 21-31, the principal obligor is bound as to any determination of fact common to the two litigants if:
(a) the principal obligor was a party to the action against the secondary obligor;
(b) the principal obligor is charged with notice of the secondary obligation, and the secondary obligor gave the principal obligor reasonable notice of the obligee's action against the secondary obligor and an opportunity to join in its defense.
If the principal obligor is not so bound pursuant to this subsection, then, as to the principal obligor, the judgment of the obligee against the secondary obligor is evidence only of its rendition.
Restatement (3d) of Suretyship & Guaranty § 68. Neither party cited nor discussed this provision in their briefs.

FN4. The parties offered no written decision or transcript from the arbitration that would have illuminated the arbitrator's decision. However, as the arbitrator and the parties were aware of the Debtor's bankruptcy, I cannot assume that these arguments were not advanced or considered and rejected.

FN5. If Respondents' truly wants one forum to litigate all claims, the arbitration proceeding can accomplish that goal if Debtor agrees to relief from stay.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)
(Cite as: 2000 WL 357719 (Bankr.E.D.Pa.))

Page 9

FN6. In *McCartney, supra*, the Third Circuit cited two cases in addition to *A.H. Robbins Co. Inc.*, as examples of cases in which the courts have extended the automatic stay to nondebtor third parties based on "unusual circumstances." In both of these other cases, preliminary injunctions were sought in the context of an adversary proceeding. See *American Film Technologies, Inc. v. Taritero (In re American Film Technologies, Inc.), 175 B.R. 847 (Bankr.D.Del.1994)* (debtor filed preliminary injunction seeking to enjoin defendant from prosecuting a California state court action against former and present directors of the debtor); *Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital (In re Family Health Services, Inc.), 105 B.R. 937 (Bankr.C.D.Cal.1989)* (Maxicare debtors sought preliminary injunction prohibiting a class of defendants from taking any acts to collect charges from Maxicare members or their employees for medical services rendered prior to the filing of debtors' bankruptcy petitions).

Not Reported in B.R., 2000 WL 357719 (Bankr.E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.