# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

## ORDER APPROVING STIPULATION
## BETWEEN DEBTORS AND MAGUIRE PROPERTIES PROVIDING FOR
## DISPOSITION OF LEASES AND FIXING OF LEASE CLAIMS

Upon review and consideration of the Stipulation Between Debtors and Maguire Properties Providing for Disposition of Leases and Fixing of Lease Claims, and sufficient cause appearing therefore, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc ), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

2

1. The Stipulation, attached hereto as Exhibit A, is hereby approved.

2. The assumption, as modified, of Lease 1-A, Lease 2-A and Lease 3-A, and the rejection of Lease 1-B, Lease 2-B, Lease 3-B and Lease 4 is effective nunc pro tunc to September 1, 2007.

3. The rejection of the Condominium Lease is effective as of December 31, 2008.

Date: _____, 2007
    Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

**STIPULATION BETWEEN DEBTORS AND MAGUIRE PROPERTIES PROVIDING FOR DISPOSITION OF LEASES AND FIXING OF LEASE CLAIMS**

The parties to this stipulation are New Century Financial Corporation ("New Century") and related debtors (collectively, the "Debtors") and Maguire Properties-Park Place, LLC ("Maguire Park Place"), Maguire Properties-3121 Michelson, LLC ("Maguire 3121") and Maguire Properties-3161 Michelson, LLC ("Maguire 3161") (each a "Landlord" and collectively "Maguire" or the "Landlords"). The Debtors and Landlords hereby enter into this stipulation (the "Stipulation") and agree as follows:

## RECITALS

WHEREAS, New Century, as tenant, and Maguire Park Place, as landlord, entered into the Office Lease dated as of February 8, 2005, as subsequently amended and modified ("Lease 1"), pursuant to which the Debtors leased real property at 3349 Michelson (Suite 450), 3351 Michelson (Suites 400-490) and 3337 Michelson (Suites 330, 335, 340, 345, 350, 410, 500 and 720) (the "Lease 1 Premises").

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

WHEREAS, New Century, as tenant, and Maguire Park Place, as successor landlord, are parties to the Sublease dated as of December 12, 2004, as subsequently amended and modified ("Lease 2"), pursuant to which the Debtors leased real property at 3353 Michelson (Suite 100) and 3337 Michelson (Suites 200, 270, and 300) (the "Lease 2 Premises").

WHEREAS, New Century, as tenant, and Maguire 3121, as landlord, entered into the Office Lease dated as of February 8, 2005, as subsequently amended and modified ("Lease 3"), pursuant to which the Debtors leased real property at 3121 Michelson (Suites 400, 500 and 600) (the "Lease 3 Premises").

WHEREAS, New Century, as tenant, and Maguire 3161, as landlord, entered into the Office Lease dated as of May 26, 2005, as subsequently amended and modified, ("Lease 4" and together with Lease 1, Lease 2 and Lease 3, the "Leases"), pursuant to which the Debtors agreed to lease space in a building to be constructed (and since constructed and delivered to New Century) at 3161 Michelson (the "Lease 4 Premises" and together with Lease 1 Premises, Lease 2 Premises and Lease 3 Premises, the "Leased Premises").

WHEREAS, the Debtors are in the process of winding down their business affairs and no longer need to maintain full occupancy of all of the Leased Premises, but wish to continue leasing certain of the Leased Premises, which Landlords have agreed to permit on the terms set forth herein.

WHEREAS, the Debtors and the Landlords hereby enter into this stipulation to set forth their agreement, to be effective only upon the entry of a final order by the United States Bankruptcy Court for the District of Delaware ("Court Approval") approving this stipulation.[2]

NOW THEREFORE, it is hereby stipulated and agreed by and between the Debtors and Landlords, subject to Court Approval, as follows:

---

[2] This stipulation does not cover the rejected lease for City Tower suite no. 2120, located at 333 City Boulevard West, Orange, California, as to which Maguire Properties-City Tower, LLC, as successor, has filed a proof of claim for rejection damages. Maguire Properties-City Tower, LLC reserves all of its rights with respect to such lease and associated claim number 2856.

2

RLF1-3217573-1

## AGREEMENT

1. <u>Lease 1</u>. Subject to Court Approval, Maguire Park Place and the Debtors agree as follows with respect to Lease 1:

(a) Lease 1 shall be bifurcated between (i) 3337 Michelson, Suites 330, 335, 340, 345, 410, 500 and 720 ("Lease 1-A"), (ii) 3337 Michelson, Suite 350, 3349 Michelson, Suite 450 and 3351 Michelson, Suites 400 to 490 ("Lease 1-B"), and (iii) that certain Residential Lease or Month-to-Month Rental Agreement with New Century dated April 11, 2006, as amended (the "Condominium Lease").

(b) Lease 1-A shall be modified to provide for:

(i) monthly rent in the amount of $35,735.48 (not including parking rent), subject to crediting as provided in paragraphs 6 through 8 below,

(ii) a term to continue until January 31, 2008, subject to the extension right provided in paragraph 5(a), the relocation right provided in paragraph 5(b) and the early surrender right provided in paragraph 5(c),

(iii) a reduction in parking rent consistent with paragraph 9, and

(iv) a compromise claim for rent due for the balance of the original lease term as provided for in subparagraph (g) below.

(c) As modified in accordance with subparagraph (b) above, Lease 1-A shall be assumed under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.[3]

(d) Lease 1-B shall be rejected under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.

(e) The Condominium Lease shall be treated as provided in paragraph 11 below.

(f) Rent paid by New Century on account of Lease 1-B for the month of September 2007 shall be credited by Maguire pro rata against rent owed for the months of October through December 2007 on Lease 1-A, Lease 2-A (as hereinafter defined) and Lease 3-A (as hereinafter defined).

(g) Maguire Park Place shall have an allowed non-priority unsecured claim in the amount of $3,108,067.88, consisting of $45,909.26 for prepetition arrearages and $3,062,158.62 for rejection damages capped under section 502(b)(6) of the Bankruptcy Code (including a compromise claim for assumed Lease 1-A to be taken in the form of rejection damages). Accordingly, proof of claim number 2857 is hereby

---

[3] References to the "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. §§101-1532

3

allowed in the amount of $3,108,067.88 and disallowed to the extent it exceeds $3,108,067.88.

(h) The Debtors owe $57,622.54 to Maguire Park Place for post-petition amounts due under Lease 1 pursuant to section 365(d)(3) of the Bankruptcy Code. If not previously paid, such amount shall be paid to Maguire Park Place no later than three (3) business days after Court Approval. All rights of Maguire Park Place to assert administrative expense claims arising from and after October 1, 2007 with respect to Lease 1 (other than cure claims with respect to Lease 1-A, which are satisfied by the compromise claim referred to above) are preserved and any such claims may be filed at any time prior to any administrative expense claim deadline that may be established. All rights of New Century to object to any such claims are also preserved.

2. Lease 2. Subject to Court Approval, Maguire Park Place and the Debtors agree as follows with respect to Lease 2:

(a) Lease 2 shall be bifurcated between (i) 3337 Michelson, Suites 200 and 270 ("Lease 2-A") and (ii) 3353 Michelson, Suite 100 and 3337 Michelson, Suite 300) ("Lease 2-B").

(b) Lease 2-A shall be modified to provide for:

(i) monthly rent in the amount of $36,749.88 (not including parking rent), subject to crediting as provided in paragraphs 6 through 8 below,

(ii) a term to continue until January 31, 2008, subject to the extension right provided in paragraph 5(a), the relocation right provided in paragraph 5(b) and the early surrender right provided in paragraph 5(c),

(iii) a reduction in parking rent consistent with paragraph 9, and

(iv) a compromise claim for the balance of the original lease term as provided for in subparagraph (g) below.

(c) As modified in accordance with subparagraph (b) above, Lease 2-A shall be assumed under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.

(d) Lease 2-B shall be rejected under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.

(e) Rent paid by New Century on account of Lease 2-B for the month of September 2007 shall be credited by Maguire pro rata against rent owed for the months of October through December 2007 on Lease 1-A, Lease 2-A and Lease 3-A (as hereinafter defined).

4

(f)     Maguire Park Place shall have an allowed non-priority unsecured claim in the amount of $1,936,864.70, consisting of $11,609.30 for prepetition arrearages and $1,925,255.40 for rejection damages capped under section 502(b)(6) of the Bankruptcy Code (including a compromise claim for assumed Lease 2-A to be taken in the form of rejection damages). Accordingly, proof of claim number 2858 is hereby allowed in the amount of $1,936,864.70 and disallowed to the extent it exceeds $1,936,864.70.

(g)     The Debtors owe $70,429.23 to Maguire Park Place for post-petition amounts due under Lease 2 pursuant to section 365(d)(3) of the Bankruptcy Code. If not previously paid, such amount shall be paid to Maguire Park Place no later than three (3) business days after Court Approval. All rights of Maguire Park Place to assert other administrative expense claims arising from and after October 1, 2007 with respect to Lease 2 (other than cure claims with respect to Lease 2-A, which are satisfied by the compromise claim referred to above) are preserved and any such claims may be filed at any time prior to any administrative expense claim deadline that may be established. All rights of New Century to object to any such claims are also preserved.

3.     <u>Lease 3</u>. Subject to Court Approval, Maguire 3121 and the Debtors agree as follows with respect to Lease 3:

(a)     Lease 3 shall be bifurcated between (i) 3121 Michelson, Suites 500 and 600 ("Lease 3-A"), (ii) 3121 Michelson, 400 ("Lease 3-B"), and (iii) the Condominium Lease.

(b)     Lease 3-A shall be modified to provide for:

(i)     monthly rent in the amount of $131,897.00 (not including parking rent), subject to crediting as provided in paragraphs 6 through 8 below,

(ii)     a term to continue until January 31, 2008, subject to the extension right provided in paragraph 5(a), the relocation right provided in paragraph 5(b) and the early surrender right provided in paragraph 5(c),

(iii)     a reduction in parking rent consistent with paragraph 9, and

(iv)     a compromise claim for the balance of the original lease term as provided for in subparagraph (g) below.

(c)     As modified in accordance with subparagraph (b) above, Lease 3-A shall be assumed under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.

(d)     Lease 3-B shall be rejected under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.

5

    (e)  The Condominium Lease shall be treated as provided in paragraph 11 below.

    (f)  Rent paid by New Century on account of Lease 3-B for the month of September 2007 shall be credited by Maguire pro rata against rent owed for the months of October through December 2007 on Lease 1-A, Lease 2-A and Lease 3-A.

    (g)  Maguire 3121 shall have an allowed non-priority unsecured claim in the amount of $2,643,905.39, consisting of $40,729.11 for prepetition arrearages and $2,603,176.28 for rejection damages capped under section 502(b)(6) of the Bankruptcy Code (including a compromise claim for assumed Lease 3-A to be taken in the form of rejection damages).[4] Accordingly, proof of claim number 2855 is hereby allowed in the amount of $2,643,905.39 and disallowed to the extent it exceeds $2,643,905.39.

    (h)  The Debtors owe $84,605.53 to Maguire 3121 for post-petition amounts due under Lease 3. If not previously paid, such amount shall be paid to Maguire 3121 no later than three (3) business days after Court Approval. All rights of Maguire 3121 to assert other administrative expense claims arising from and after October 1, 2007 with respect to Lease 3 (other than cure claims with respect to Lease 3-A, which are satisfied by the compromise claim referred to above) are preserved and any such claims may be filed at any time prior to any administrative expense claim deadline that may be established. All rights of New Century to object to any such claims are also preserved.

  4.  <u>Lease 4</u>. Subject to Court Approval, Maguire 3161 and the Debtors agree as follows with respect to Lease 4:

    (a)  Subject to subparagraph (b) below, Lease 4 is rejected under section 365(a) of the Bankruptcy Code, effective as of September 1, 2007.

    (b)  The Condominium Lease is bifurcated from Lease 4 and shall be treated as provided in paragraph 11 below.

    (c)  Maguire 3161 shall have an allowed non-priority unsecured claim in the amount of $4,902,687.70, consisting of rejection damages capped under section 502(b)(6) of the Bankruptcy Code.[5] Accordingly, proof of claim number 2861 is hereby allowed in the amount of $4,902,687.70 and disallowed to the extent it exceeds $4,902,687.70. Notwithstanding the foregoing, if on or before the earlier of (i) the date of entry of an order confirming a plan of reorganization or liquidation for New Century and (ii) March 31, 2008 (such earlier date being the "Mitigation Review Date"), Maguire

---

[4] This amount reflects a reduction of $101,937.84 on account of child care and fitness center rent credits. Without such reduction, the claim would be $2,745,843.23.

[5] This amount reflects a reduction of $234,000 on account of child care and fitness center rent credits. Without such reduction, the claim would be $5,136,687.72.

either enters into, or New Century has evidence and can demonstrate to the Court that Maguire could have entered into, a new lease or leases for all or a portion of the space subject to Lease 4, with such new lease or leases having an aggregate rental value for any portion of the period ending October 1, 2015 that operates to reduce the aggregate uncapped damages suffered by Maguire as a result of the rejection of Lease 4 to an amount less than $4,902,687.70, then New Century may file an objection and request reconsideration of claim number 2861 (the "Objection") for the sole purpose of determining whether the new lease or leases have, or could have, reduced Maguire's aggregate uncapped damages to an amount less than $4,902,687.70, which Objection may be opposed by Maguire on any basis. It is understood and agreed by New Century that (a) it shall not file an Objection for the purpose of extracting a further claim reduction through settlement of claims litigation, (b) no Objection shall be filed in the absence of evidence that will demonstrate to the Court that Maguire could have entered into a new lease or leases that would have reduced its aggregate uncapped damages to an amount less than $4,902,687.70, and (c) New Century shall have the burden of proof on the issue. Any such Objection must be filed no later than thirty (30) days after the Mitigation Review Date, and if no such Objection is timely filed, then claim number 2861 shall be fixed for all purposes in the allowed amount of $4,902,687.70, with no further right by New Century or any other party in interest to object or seek reconsideration.

    (d)  Maguire 3161 shall not be entitled to assert any administrative expense claims with respect to Lease 4.

    5.  <u>Rights with Respect to Assumed Leases</u>. As to Lease 1-A, Lease 2-A and Lease 3-A (collectively, the "Assumed Leases"), the Landlords and the Debtors agree as follows:

    (a)  New Century shall have the right to extend each of the Assumed Leases on a month to month basis for up to three months by providing written notice to the applicable Landlord no later than December 31, 2007 in the case of the first extension and no later than 15 days prior to the end of each extended month in the case of subsequent extensions. The rental and other terms applicable to any extended period shall be the same as the terms in effect prior to the extension. The Debtors shall accept the premises subject to each extension in their condition at the time of the extension. Landlords shall have no obligation to pay for any improvements or commissions in connection with such extensions.

    (b)  As to each of the Assumed Leases, upon no less than 15 days written notice, the Landlord shall have the right to relocate the Debtors to different, but equivalent and comparable in quality, space within the office campus where the Assumed Leases are located, at the Landlord's sole expense; provided however, that in no event shall the Landlord have the right to relocate the Debtors with respect to Suite 345 of Lease 1-A. If comparable space is not available, the Debtors shall have the option to accept the Landlord's request to relocate but only if the Landlord provides an appropriate reduction in the rent obligation. Such agreement, if any, shall be reflected in writing

(c) If during the period between October 1, 2007 and January 31, 2008 or the end of the extended term applicable to any of the Assumed Leases, the Landlord of any of the Assumed Leases is able to release any portion of the premises to a third party, and if New Century is then willing to vacate that portion of the premises, the parties may agree in writing to an early surrender of that portion of the premises in exchange for a reduction of the rent owed on the Assumed Lease for the remaining term.

6. <u>Rejected Lease Rent Credit</u>. Rent payments made by New Century for the month of September 2007 with respect to Lease 1-B, Lease 2-B and Lease 3-B in the amount of $280,325.54 ("Rejected Lease Rent") shall be credited pro rata against the rent payments owed for the Assumed Leases for the months of October through December 2007. With the pro rata credit for the Rejected Lease Rent, New Century shall owe the Landlords an aggregate rental amount of $332,820.55 on the Assumed Leases (rather than $613,146.89) for the months of October through December 2007, with the result that monthly rent will be reduced on Lease 1-A to $19,459.18, on Lease 2-A to $19,928.26 and on Lease 3-A to $71,552.37.

7. <u>Rejected Lease Furniture Removal/Purchase Credit.</u> New Century shall leave in place all existing furniture, fixtures and equipment (the "On Site Items") on the premises subject to Lease 1-B, Lease 2-B and Lease 3-B (the "Rejected Leases" and the premises subject thereto the "Rejected Lease Premises"); however, the Landlords shall have the right to require New Century to remove the On Site Items located on the Rejected Lease Premises by providing written notice to the Debtors that the Landlords are exercising such right by no later than November 15, 2007. The Landlords shall have the option to provide such notice as to the On Site Items located on all of the Rejected Lease Premises or as to only those On Site Items located on the premises subject to Lease 1-B and Lease 2-B or as to only those On Site Items located on the premises subject to Lease 3-B. If the Landlords timely give such a removal notice as to the On Site Items located on the Rejected Lease Premises, the Debtors shall remove such On-Site Items at their own expense no later than fifteen days after the date of such removal notice. If the

8

Landlords do not give any removal notice to the Debtors by November 15, 2007, none of the On Site Items shall be subject to removal by the Debtors at the Landlords' request and all such On Site Items shall be deemed to have been purchased by the Landlords; as consideration for such purchase, the Landlords shall provide the Debtors with a credit for the purchase price of the On Site Items in the amount of $200,000.00 to be applied against the rents for the Assumed Leases for the month of January 2008; and with the application of such purchase price credit, New Century shall owe the Landlords an aggregate rental amount of $4,382.29 on the Assumed Leases for the month of January 2008 (rather than $204,382.29). Alternatively, if the Landlords give a removal notice only as to the On Site Items located on the premises subject to Lease 1-B and Lease 2-B, or only as to the On Site Items located on the premises subject to Lease 3-B, then the On Site Items not subject to such removal notice shall be deemed to have been purchased by the Landlords; as consideration for such purchase, the Landlords shall provide the Debtors with a purchase price credit for the On Site Items in the amount of $100,000.00 to be applied against the rents for the Assumed Leases for the month of January 2008; and with the application of such purchase price credit, New Century shall owe the Landlords an aggregate rental amount of $104,382.29 on the Assumed Leases (rather than $204,382.29) for the month of January 2008.

8. <u>Assumed Lease Furniture Removal/Purchase Credit</u>. For the period of October 1, 2007 through January 31, 2008 or the end of the extended term applicable to any of the Assumed Leases, New Century shall leave in place all On Site Items on the premises subject to the Assumed Leases (the "Assumed Lease Premises"); however, the Landlords shall have the right to require New Century to remove the On Site Items located on the Assumed Lease Premises by providing written notice to the Debtors that the Landlords are exercising such right by no later than December 31, 2007. If the Landlords timely give such a removal notice as to the

On Site Items located on the Assumed Lease Premises, the Debtors shall remove such On-Site Items at their own expense by January 31, 2008 (or the end of any applicable extended term thereof). If the Landlords do not give any removal notice to the Debtors by December 31, 2007, none of the On Site Items shall be subject to removal by the Debtors at the Landlords' request and all such On Site Items shall be deemed to have been purchased by the Landlords. As consideration for such purchase, the Landlords shall provide the Debtors with a credit for the purchase price of the On Site Items in the amount of $100,000.00 to be applied against the rents for the Assumed Leases for the month of January 2008 and any extended rental term. If rents owed by the Debtors for the month of January 2008 are less than $100,000 and there is no extended rental term, Maguire shall pay the balance to the Debtors in cash.

        9.       <u>Parking Rental Reduction</u>. Effective as of October 1, 2007, the Landlords agree to reduce the parking charges related to the Leased Premises to reflect the Debtors' occupied parking spaces. Accordingly, in lieu of the parking charges provided for under the Leases, the Debtors will pay for and occupy 175 parking spaces for monthly parking charge of $11,375.00, to be paid with and in addition to rent for the Assumed Leases.

        10.      <u>Waiver of Claims Against Landlords</u>. In consideration of the accommodations in this stipulation, including the rent credits applied against the rejection damage claims as referenced in paragraph 3(g) and 4(c) above, the Debtors hereby waive any and all claims against the Landlords, including, without limitation, any obligations of the Landlords to make any capital improvements or upgrades or to provide tenant improvement allowances or other credits under the Leases. Notwithstanding the foregoing, the Debtors do not waive their rights to file the Objection and raise the mitigation defense to the claim for Lease 4 as set forth in paragraph 4(c).

11. <u>Surrender of Corporate Condominium</u>. The Condominium Lease will be rejected as of December 31, 2007. The Debtors shall surrender and vacate the corporate condominium on December 31, 2007, and waive the right to a corporate condominium from that date forward. Maguire shall not be entitled to any additional claim for rejection of the Condominium Lease.

12. <u>Extension of Deadline to Assume or Reject Leases</u>. For purposes of effectuating the agreement set forth herein, Maguire hereby consents to an extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, for the Debtors to assume or reject the Leases until November 6, 2007.

13. <u>Reservation of Rights</u>. Except as provided for in this stipulation, the Leases are not subject to bifurcation. If Court Approval is not obtained, each of the Leases must be assumed or rejected in its entirety unless the applicable Landlord otherwise agrees in a separate writing. If this stipulation is not filed with the Bankruptcy Court by October 26, 2007, or if filed by such date but Court Approval is not obtained by November 6, 2007, this Stipulation shall be null and void.

14. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to hear all matters arising out of this stipulation.

Dated: October 26, 2007

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

-and-

Shannon Lowry Nagle
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 408-2452

Attorneys for the Debtors

Dated: October 26, 2007

/s/ *Rosalie W. Gray*
Rosalie W. Gray
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Attorneys for Maguire Properties-Park Place, LLC, Maguire Properties-3121 Michelson, LLC and Maguire Properties-3161 Michelson, LLC

12