## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Re: Docket No. 3319** |
| | : | |
| | : | **Hearing Date: November 6, 2007** |
| | : | **Objection Deadline: November 1, 2007** |
| | : | |

### OPPOSITION OF DEBTORS AND DEBTORS IN POSSESSION TO MOTION OF JOSEPH & LAVON TAYLOR, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, FOR AN ORDER: (A) ENLARGING THE BAR DATE; AND (B) GRANTING LEAVE TO FILE A CLASS PROOF OF CLAIM [DOCKET NO. 3319]

New Century Financial Corporation, a Maryland corporation, New Century TRS

Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as debtor

and debtor-in-possession in the above-captioned chapter 11 cases (collectively, "Debtors"),

hereby respond and object to the Motion of Joseph and Lavon Taylor, individually and on behalf

of others similarly situated ("Movants") for an order (A) Enlarging the Bar Date and (B)

Granting Leave to Amend a Class Proof of Claim (the "Motion"). In support of this Response,

the Debtors represent as follows:

---

[1]  The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual Il Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. Il Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## INTRODUCTION

1.      Joseph and Lavon Taylor, individually and as purported representatives of an uncertified class, seek relief relating to pre-petition litigation pending in the Circuit Court for St. Louis County, Missouri (the "Missouri Action"). Movants seek permission to late file their proof of claim as a result of excusable neglect, though it is undisputable that they received actual notice of the claims bar date in more than sufficient time to file a proof of claim. They further seek permission to file their untimely proof of claim on behalf of a class that has yet to be recognized by any court.

2.      The Motion should be denied for several reasons. With regard to the request to extend the bar date, Movants have not advanced any justifiable reason as to why they were not able to timely file their proof of claim. First, both Movants and their counsel were served with notice of Debtors' chapter 11 cases and the claims bar date by both mail and publication. Second, the Movants' disingenuous arguments as to why they were unable to ascertain the bar date demonstrate bad faith. Third, Debtors will suffer great prejudice if this claim, and other untimely claims like it, are allowed after the passing of the bar date. Fourth, the length of the Movants' delay in filing is inexcusable. With regard to the request to file a class proof of claim, Movants' request is improper. First, class claims are not typically allowed in bankruptcy proceedings in this jurisdiction. Second, Movants have yet to make any showing that claimants in the Missouri Action are entitled to certification. Third, Movants fail to satisfy the requirements for treatment as a class in any event. As such, the Movants have not satisfied their burden for obtaining either type of relief requested.

SF1:693122 1

RLF1-3219537-1

## **FACTUAL BACKGROUND**

3. On April 22, 2005, Movants sought to refinance a mortgage on property located at 260 Gladys, St. Louis County, Missouri, with Debtor Home 123 Corporation ("Home 123"). Home 123 charged Movants a fee of $260.00 to prepare and process their loan application.

4. Movants filed a Petition for Individual and Class Action Relief on December 22, 2005 in St. Louis County Circuit Court. In the complaint, Movants allege that Home 123 violated RSMo. § 484.020 prohibiting the unauthorized practice of law in that state when it charged the service fee in connection with effectuating the mortgage loan. Pursuant to RSMo. §§ 407.010, et seq., and 484.010, et seq., Movants seek (1) actual damages in the sum of the original loan preparation/processing fee (2) treble damages for themselves and each purported class member that entered into a mortgage loan with Home 123 within two years of the filing date, (3) punitive damages, (4) attorneys' fees, (5) cost of suit, (6) pre-judgment interest, and (7) post-judgment interest.

5. Discovery took place during Spring of 2006. No class discovery was conducted. On April 7, 2006, Home 123 provided responses to Movants' special interrogatories stating that fees relating to the effectuation of mortgage loans were charged in 306 instances totaling $77,934.00. See "Affidavit in Support of Motion of Joseph & Lavon Taylor," Exhibit B, p. 3.

6. Debtors commenced the instant chapter 11 bankruptcy proceedings on April 2, 2007. Home 123 listed a claim of the Movants in its schedule of liabilities in an "unknown" amount. The address of Movants was listed in the care of Joe Jacobson at Green Schaaf & Jacobson (now known as Green Jacobson & Butsch, P.C. and referred to herein as the

SF1:693122 1

3

"Green Firm"). Neither the Green Firm nor any other attorney filed a request for notice in the case.

7.    The Green Firm, at the address set forth in Debtors' schedules, and the Movants, at their home address, received notice of the commencement of the case. And as Movants point out in their motion, Movants' counsel was actively aware of the bankruptcy proceedings and actively communicated with Debtors' counsel as early as May 10, 2007 (the "May Letter").

8.    Pursuant to an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof dated June 28, 2007 (the "Bar Date Order") [Docket No. 1721], this Court established August 31, 2007 (the "Bar Date") as the last date for filing proofs of claims. Governmental units, however, were given until October 2, 2007 (the "Governmental Claims Bar Date") to file proofs of claims. The form of Bar Date Notice was approved by the Court, and the Bar Date is set forth in bold and underlined font.

9.    As set forth in the Declaration of Service of Jamie L. Edmonson [Docket No. 1861], Debtors served a Notice of Bar Dates for Filing Proofs of Claim (the "Bar Date Notice") on July 2, 2007. The Bar Date Notice was served on the Movants at their home address as well as Mr. Jacobson at the Green Firm. The Green Firm is listed as Movants' counsel in the Missouri Action, and, in fact, Mr. Jacobson's name appears first in the complaint in the Missouri Action. Mr. Jacobson and Mr. Butsch practice law in the same office.

10.    Although the Green Firm received the Bar Date Notice, Mr. Butsch argues surprisingly that service on his partner Joe Jacobson, the apparent lead counsel representing the Movants, was somehow insufficient. Instead, Mr. Butsch, a licensed attorney, relied solely upon Movants' lay interpretation of the document. Mr. Butsch claims he and his clients thought the

4

Bar Date was actually October 2, 2007 (the Governmental Claims Bar Date), but he did not file the Movants' proof of claim with the Court until October 8, 2007. Movants untimely proof of claim was filed on their own behalf and the alleged 306 "similarly situated" Home 123 borrowers in the amount of "$233,802 plus attorneys' fees, costs, and punitive damages."

## ARGUMENT

## I.    MOVANTS FAIL TO ESTABLISH EXCUSABLE NEGLECT, THEREBY MAKING THEIR CLAIM TIME BARRED.

11.    In chapter 11 cases, Rule 3003 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules") governs the filing of a proof of claim. Pursuant to Bankruptcy Rule 3003(c)(3), the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3). Courts of this Circuit strictly construe bar dates for filing proofs of claim. Trump Taj Mahal Assocs. v. Alibraham, 156 B.R. 928, 936 (Bankr. D.N.J. 1993) (citing Chrysler Motors Corp. v. Schneiderman, 940 F.2d 911, 912 (3d Cir. 1991)). "To this end, Bankruptcy Rule 3003(c)(3) requires that claimants against an estate in bankruptcy in Chapter 11 file timely proofs of claim in order to participate in a reorganization." Chemetron, 72 F.3d at 346.

12.    Establishing a bar date makes it possible determine the obligations of the debtor with some finality and facilitates corporate rehabilitation. In re First Alliance Mortgage Co., 269 B.R. 428, 439 (C.D. Cal. 2001); see also In re Hooker Invs., Inc., 937 F.2d 833, 840 (2d Cir. 1991) (bar date "serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of claims"). Moreover, the "bar date serves to 'prevent prejudice to timely filing claim holders by preventing late-filed claims from unfairly reducing the pro rata

SF1:693122 1

RLF1-3219537-1

dividend of those who did timely file.'" First Alliance, 269 B.R. at 439 (quoting In re Tucker, 174 B.R. 732, 743 (Bankr. N.D. Ill. 1994)).

13.    Because Movants' October 8, 2007 claim would otherwise be barred by Bankruptcy Rule 3003(c)(3), they are forced to argue that cause exists for their untimely filing. Although Bankruptcy Rule 3003(c)(3) provides that the time for filing a proof of claim may be extended "for cause," the Supreme Court has adopted the "excusable neglect" standard of Bankruptcy Rule 9006. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380 (1993). "The burden of proving excusable neglect lies with the late-claimant." Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000). "[T]he proper focus is upon whether the neglect of respondents and their counsel was excusable." Pioneer, 507 U.S. at 397. A court errs "in not attributing to [claimants] the fault of their counsel." Id.

14.    In Pioneer, the Supreme Court established the following factors in determining whether excusable neglect exists: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395. This list is not exhaustive, and subsequently, other courts have examined additional factors, including the debtor's knowledge of the claim and the stage of the chapter 11 case, see In re Lester Witte & Co., 52 B.R. 436 (Bankr. N.D. Ill. 1984), whether the creditor had notice of the case, see Walters v. Hunt (In re Hunt), 146 B.R. 178 (Bankr. N.D. Tex. 1992), and whether the creditor has actively participated in the case, see In re Burke, 76 B.R. 62, 64 (Bankr. D. Vt. 1987).

### A.    Movants and Their Counsel Received Proper Notice of the Bar Date.

SF1:693122 1

RLF1-3219537-1

15.    The claimant's reason for delay is widely considered to be the most important factor in the excusable neglect determination.  See In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004); United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004); Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir. 2001); Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000).  "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  Pioneer, 507 U.S. at 392.  In other words, this factor weighs against the Movants unless they advance a justifiable reason for their mistake.

16.    The Supreme Court has said that all that is required in order for a creditor's claim to be barred by Rule 3003(c)(3) is reasonable notice of the bar date.  New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297 (1953); see 9 Collier on Bankruptcy 3003.03[4] (15th rev. ed. 2007).  Note that Bankruptcy Rule 2002(g) provides that a debtor shall send all notices directly to the creditor unless the creditor's agent directs otherwise in a request filed with the Bankruptcy Court.  Fed. R. Bankr. P. 2002(g); see In re Solvation, Inc., 48 B.R. 670, 673 (Bankr. D. Mass. 1985).  In the absence of such request, a creditor shall send notices to the address shown on the list of creditors or schedule of liabilities, whichever is filed later.  Fed. R. Bankr. P. 2002(g)(2).[2]

17.    Movants ad their counsel at the Green Firm received more than sufficient notice of the Bar Date well before August 31, 2007 bar date.  It was wholly proper for Debtors to send the Bar Date Notice to the address listed on Debtors' schedules.  Cf. In re R.H. Macy &

---

[2]  There has been no allegation that the addresses to which the Bar Notice was sent were the incorrect addresses of the Movants or the Green Firm.  "Where mail is properly addressed, stamped and deposited in the postal system, there arises a rebuttable presumption that thenotice was received by the addressee."  In re STN Enter., Inc., 94 B.R. 329, 334 (Bankr. D. Vt. 1988); see Hagner v. United States, 285 U.S. 427, 430 (1932).  The Movants have not attempted to rebut the presumption.

SF1:693122.1

RLF1-3219537-1

Co., Inc., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) (finding notice property where creditor was served at address on debtor's schedules and creditor's counsel failed to file request for notice). No attorney at the Green Firm, or any other law firm, filed a request for notice with the Court on behalf of the Movants. Despite asertions to the contrary, the May Letter to Debtors does not satisfy the requirement of Bankruptcy Rule 2002(g) that a request be filed with the Court.[3]  In fact, Debtors went beyond the requirements of Bankruptcy Rule 2002(g) by sending the Bar Date Notice to the Movants directly.[4]

18.    Moreover, in light of the fact that the Debtor properly served both the Movants, themselves, and the apparent lead counsel in the Missouri Action, Joe Jacobson, the Movants' arguments are particularly unavailing. The failure of two attorneys in a single law firm to communicate is by no means a valid excuse for failing to timely file a proof of claim. It is certainly the case that the knowledge of a bar date and subsequent neglect of one individual in the firm representing a claimant may be imputed to the other members of the firm. See In re Kmart, 381 F.3d 709 (7th Cir. 2004) (finding law firm's office clerk's negligence to be inexcusable). Mr. Jacobson clearly appears as counsel for Movants on pleadings filed in the underlying action, in most instances before Mr. Butsch. More conspicuously, Movants neglect to offer an excuse as to why Mr. Jacobson did not timely file the proof of claim or alert Mr. Butsch or another attorney within the Green Firm of the need to promptly file the proof of claim.

---

[3] In that letter, Mr. Butsch states that Movants "would like to discuss [] the possibility of resolving the claim in order to forego extended litigation in the bankruptcy court." The letter does not, however, request that all correspondence be directed to Mr. Butsch or ask that the Bar Date be restated.

[4] Indeed, even in extreme situations in which a debtor has had actual knowledge that a creditor is represented by counsel, it has been held to be acceptable to serve the creditor directly if the counsel has not filed a request for notice with the bankruptcy court. Borden v. Brunswick Baptist Church (In re Brunswick Baptist Church), 2007 U.S. Dist. Lexis 3319 at *11–*12 (N.D.N.Y. 2007) (citing Solvation, 48 B.R. 670; Dependable Ins. Co. v. Horton (In re Horton), 149 B.R. 49 (Bankr. S.D.N.Y. 1992); Midatlantic Nat'l Bank v. Kouterick (In re Kouterick), 161 B.R. 755 (Bankr. D.N.J. 1993)).

8

19.    Movants' counsel also argues that notice was somehow insufficient because the client was unable to accurately discern the proper Bar Date. But Mr. Butsch's reliance on Movants' misinterpretation of the Bar Date Notice does not constitute excusable neglect. It is difficult to fathom how an attorney would rely on his clients' interpretation of the law or a legal notice. Acceptance of the Movants' argument as an excuse for failing to timely file a proof of claim would justify all claimants and their counsel in burying their heads in the sand. Counsel would never read bar date notices, instead relying on their clients to misread--or never read--the notices in order to preserve a later excusable neglect argument. This argument must be rejected. "A finding to the contrary would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice." In re Best Products Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992).

20.    A review of the case law cited in Movants' brief further demonstrates that the Movants lack any justifiable reason for filing to file their claim. The Movants rely heavily on Pioneer. But there the Supreme Court placed significant weight on the fact that the notice of bar date was unusual and ambiguous. Pioneer, 507 U.S. at 398–99. No such problem exists here. This Court expressly approved of the form of the Bar Date Notice. The Bar Date Notice states in bold underlined text that the Bar Date was August 31, 2007.

21.    The instant case is also unlike Greyhound Lines, Inc. v Rogers (In re Eagle Bus Mfg.), 62 F.3d 730, 739 (5th Cir. 1995). There respondents' delay was due to the confusion created by a requirement to participate in a mandatory alternative dispute resolution program. Again, no such confusion exists here. No settlement discussions have been ordered by this Court or in the Missouri Action. Further, the Bar Date Notice conspicuously states that the failure to

9

timely file a proof of claim will result in the claimant not being afforded the rights of a creditor in these bankruptcy cases.

22.    A case not cited by Movants, In re Solvation, Inc., is particularly relevant here. In Solvation, the claimant retained counsel unbeknownst to the debtor. 48 B.R. at 671–72. The counsel there did not file any request for notice with the court. Id. As a result, the debtor sent notice of the claims bar date to the claimant at the claimant's home address listed on the debtor's schedules. Id. The court held that the claimant had no justification for failing to timely file her proof of claim; her confusion as to the significance of the claims bar date notice did not provide a basis for an extension of time. Id. at 674. The court held, "Were a claimant uncertain of what constituted the filing of its claim or unclear as to the proceedings of a bankruptcy court, it would be incumbent upon that claimant to take reasonable steps prior to the bar date to insure that all confusion had been clarified and that is rights had been preserved." Id.

23.    In this case, it does not appear that Movants showed the notice to counsel or that counsel requested to see the notice until it was too late. In fact, every argument advanced by the Movants suggests that the failure to timely file their proof of claim was caused by circumstances entirely within their control. That type of neglect is not excusable and should not be rewarded with the relief requested.

**B.    The "Excusable Neglect" Proffered by Movants Suggests Bad Faith.**

24.    In Pioneer, the Supreme Court noted that were there "any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to 'excusable.'" 507 U.S. at 398–99. As the Bankruptcy Court for the Southern District of New York recently pointed out, "[o]nce the Bar Date Order was entered, a simple

10

review of the docket would have revealed the date and the type of claims that were covered." In re Dana Corp., 2007 Bankr. Lexis 1934 at *17 (Bankr. S.D.N.Y. 2007).

25.    Here, Movants' excuses rise to the level of bad faith. The Movants allege that they believed the bar date to be October 2, 2007, despite the fact that the Court-approved notice clearly set August 31, 2007 for all non-government, unsecured creditors. Then, Mr. Butsch claims he accepted his clients' representations of the notice without taking any act to confirm. But there is no evidence that he asked his clients for a copy of the notice or attempted to review the docket in these bankruptcy proceedings. Next, Mr. Butsch claims that service on his law partner was insufficient, even though Mr. Jacobson in fact also represents the Movants, Mr. Jacobson and Mr. Butsch are located in the same office, and Mr. Jacobson's name appears before his in the signature block on Movants' pleadings. Moreover, it is misleading to suggest that Mr. Butsch was at the mercy of Mr. Jacobson for receiving notice of the Bar Date. Not only does Mr. Jacobson also represent the Movants but Mr. Butsch has admitted that he was aware of the commencement of Debtors' bankruptcy cases and in fact actively participated by sending Debtors' counsel the May Letter. Finally, Movants complain that delay in filing this Motion was due in part to their attempts to obtain Debtors' consent for a late filed claim. However, Movants' counsel did not attempt to contact Debtors until Friday, October 12, 2007, with Debtors stating their refusal to allow the late class claim on Monday, October 15, 2007. Movants must have already prepared their motion prior to contacting Debtors, as the Motion was filed on Tuesday, October 16, 2007. To suggest that protracted negotiations were taking place is misleading.

26.    The arguments advanced by the Movants are disingenuous and indicate they have acted with a lack of good faith. As the Supreme Court said in Pioneer, this should be sufficient alone to deny the Motion.

11

C.    **Allowing Claims of 306 New Unsecured Creditors Will Undoubtedly and Severely Prejudice Debtors.**

27.    Granting the Motion would prejudice Debtors, as well as creditors who managed to timely file proofs of claim. Prejudice can exist as result of the size of the untimely claim, as in Kmart. 381 F.3d at 713–14. There, the claim at issue was filed in the amount of $750,000, and Kmart's remaining unsecured claims totaled approximately $6 billion. Id. at 714. Likewise, Movants' untimely claim here is prejudicial because it threatens to incorporate 306 new unsecured claims valued over $200,000 before compensatory damages, punitive damages, attorneys' fees, costs, pre-judgment interest, and post-judgment interest are even added. Indeed, this claim represents a much greater percentage of Home 123's unsecured claims, which were scheduled in the amount of approximately $375 million.

28.    Further, allowing the Movants' late-filed claim will certainly reduce the funds available to the unsecured creditors that adhered to the August 31, 2007 deadline. While this fact, by itself, does not establish prejudice to Debtors, it is a factor that may be considered. In re Cable & Wireless USA, Inc., 338 B.R. 609, 614–15 (Bankr. D. Del. 2006) (citing Inacom Corp. v. Origin Micro, Inc. (In re Inacom Corp.), 2004 Bankr. Lexis 731 (D. Del.) ("The Third Circuit, however, did not state that an analysis of prejudice should not include whether the Plan set aside money to pay the claim at issue as one of the factors to consider. Rather the Third Circuit stated that it should not be the only factor that the Bankruptcy Court considers in determining whether there is potential prejudice to the debtor.")).

29.    Prejudice can also be assessed by looking at whether allowing the claim would be likely to precipitate a flood of similar claims. See Kmart, 381, F.3d at 714. Debtors were the second largest subprime lender in the United States and originated and serviced

12

SF1:693122 1

thousands of loans. The Missouri Action stems from Debtors' general business operations. Accordingly, allowing Movants' untimely claim in this instance will open the floodgates to similar claims of other creditors that missed the bar date, threatening the limited resources of Debtors' estates by forcing them to address and/or defend an incredible amount of secondary and duplicative litigation. This litigation burden would result in wasting substantial amounts of post-petition dollars that Debtors hope to distribute to the creditors in these cases. And the fact that Debtors listed Movants contested claim in one of its schedules did not absolve Movants of the obligation to timely file a proof of claim. See, e.g., In re Enron, 419 F.3d 115, 131 (2d Cir. 2005).

        30.    In Dana, where more than 15,000 claims were filed, more than 800 of which were late filed, the court concluded that granting permission to late file a claim for a creditor who was well aware of its claim, received notices and participated in the case would set an untenable example and precipitate a flood of similar claims. 207 Bankr. Lexis at * 19. These facts are particularly relevant here. The Movants had prior notice of the commencement of these cases, they actually received the Bar Date Notice and their counsel sent the May Letter. Moreover, given that the claim to be late-filed is sought to be filed as a class claim, the Court could consider this claim itself to be a flood of similar claims. These factors weigh against the Movants, and the Motion should be denied. "A finding to the contrary would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice." In re Best Products Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992). The potential prejudice to Debtors warrants denial of this Motion.

13

D.   **The Length of Movants' Delay is Inexcusable Given the Totality of the Circumstances.**

  31. The length of the Movants' delay further justifies denial of the Motion. The Movants had notice of the commencement of these bankruptcy cases. As early as May, Mr. Butsch moved to protect Movants' interest within these bankruptcy proceedings by sending the May Letter. If this wasn't sufficient to put the Movants on notice that they would need to file a proof of claim, the Movants and the Green Firm both actually received the Bar Date Notice, informing them of the bar date. They received the Bar Date Notice in more than plenty of time to file a proof of claim. There is no justification for their having waited until October to do so.

  32. There is also no valid explanation as to why the Movants delayed the filing the this Motion until October 16, 2007 when their counsel claims to have learned of the Bar Date in September. Although they seem to suggest that they took time to negotiate the issue with Debtors, Movants did not actually speak to Debtors' counsel until Friday, October 12, 2007. They offer no explanation as to why they delayed so long in attempting to contact Debtors' counsel.

  33. Movants rely on a string cite of authority as support for the proposition that filing a claim five weeks after the court-established bar date actually weighs in favor of allowing a late filed claim in comparison with claims filed years late. Without more, this argument is misleading. The excusable neglect standard is, after all, a totality of the circumstances inquiry that takes "account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 396. Otherwise, the Movants' Motion should automatically fail given that a mere one day delay in filing a proof of claim has been held sufficient to permanently bar a creditor's claim. See In re Kmart, 381 F.3d 709, 712 (7th Cir. 2004). This result, however,

14

would be more than justified based solely upon the length of Movants' five week delay in light of this Circuit's strict adherence to bar dates, see Trump Taj Mahal Assocs., 156 B.R. at 936 (citing Chrysler Motors Corp, 940 F.2d at 912). Nevertheless, it's the Movants' lengthy delay from the time they should have been aware of the need to file a proof of claim in conjunction with the previously discussed factors that weighs in favor denying the Motion.

34.    The four factors identified by the Supreme Court in Pioneer all weigh against the Movants. First, the Movants offer no excusable reason for their delay. Second, they appear to have acted in bad faith. Third, the Debtors and their creditors would be prejudiced by the late filing. Finally, the Movants' delay was inexcusably long. Movants have not met their burden to establish excusable neglect. For these reasons, the Motion should be denied.

## I.    MOVANTS SHOULD NOT BE ALLOWED TO FILE A CLASS CLAIM.

### A.    Class Claims are Not Appropriate in Bankruptcy.

35.    Although the Movants argue matter-of-factly that class proofs of claim are permissible in bankruptcy, the matter is much more unsettled than they suggest. The court in Reid v. White Motor Corp., 886 F.2d 1462 (6th Cir. 1989), cert. denied, 494 U.S. 1080 (1990), cited by the Movants, actually prefaces its discussion with the caveat that "there is a conflict between the reported decisions considering the permissibility of a class proof of claim in bankruptcy proceedings." 886 F.2d at 1469 (citing In re Great W. Cities, Inc., 88 B.R. 109, 112 (Bankr. N.D. Tex. 1988), rev'd on other grounds, 107 B.R. 116 (N.D. Tex. 1989)); see also In re Standard Metals Corp., 817 F.2d 625, 630 (10th Cir. 1987).

36.    "Congress has not squarely addressed the question of group claims in the Bankruptcy Code. A negative inference can be drawn from section 501 that, since only one kind of group representative is explicitly mentioned, Congress arguably intended to exclude other

15

SF1:693122 1

types of class claims." 4 <u>Collier on Bankruptcy</u> 501.02.[5]  This approach would be consistent to

the rule of statutory construction frequently relied on by the Supreme Court in bankruptcy cases:

"<u>expressio unius est exclusio alterius</u>" or the expression of one thing is the exclusion of another.

<u>See</u>  <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 28 (2001); <u>Global Indus. Techs. Servs. Co. v.</u>

<u>Tanglewood Invs., Inc.</u> (In re Global Indus. Techs., Inc.), 327 B.R. 230, 239 (Bankr. W.D. Pa.

2005).

    37.  In <u>Standard Metals</u>, the Tenth Circuit pointed out that nothing in the

Bankruptcy Code or Bankruptcy Rules expressly permitted or prohibited class proofs of claims.

817 F.2d at 631. "What the rules do require is that 'a proof of claim shall be executed by the

creditor or the creditor's authorized agent.'" <u>Id.</u> (citing Fed. R. Bankr. P. 3001(b)). "An agent

may file a proof of claim only for those individuals who have expressly authorized the agent to

do so." <u>Id.</u>  The Tenth Circuit also noted that class proofs of claim were unnecessary in

bankruptcy cases. <u>Id.</u> at 632. The historical purpose of class actions is to avoid a multiplicity of

suits in a variety of forums, but because a bankruptcy court has complete control over the estate,

there is no reason to fear multiple or repetitious litigation. <u>Id.</u>

---

[5] 11 U.S.C. § 501 provides:

  (a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof
of interest.

  (b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor
with the debtor, or that has secured such creditor, may file a proof of such claim.

  (c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a
proof of such claim.

  (d) A claim of a kind specified in section 502(e)(2), 502(f), 502(g), 502(h) or 502(i) of this title may be
filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had
arisen before the date of the filing of the petition.

  (e) A claim arising from the liability of a debtor for fuel use tax assessed consistent with the requirements
of section 31705 of title 49 may be filed by the base jurisdiction designated pursuant to the International Fuel Tax
Agreement (as defined in section 31701 of title 49) and, if so filed, shall be allowed as a single claim.

38.     Case law in this jurisdiction indicates that the Third Circuit is more likely to adopt the reasoning of the Tenth Circuit in Standard Metals than that of the Sixth Circuit in Reid. In a case filed under the Bankruptcy Act, the Third Circuit held that that a class proof of claim was not appropriate in a reorganization proceeding. SEC v. Aberdeen Secs. Co., 480 F.2d 1121, 1128 (3d Cir.), cert. denied sub nom. Seligsohn v. SEC, 414 U.S. 1111, 94 S. Ct. 841 (1973). The Third Circuit has not subsequently ruled on this issue under the Bankruptcy Code. Given that the only Third Circuit authority on this issue comes out against permitting class proofs of claim, Movants should not be allowed to assert a class claim here.

**B.      Movants Should Have Sought Class Certification Long Ago in the Underlying Action.**

39.     Even assuming arguendo that class proofs of claim are permissible, the Motion should be denied. Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") automatically applies to adversary proceedings by virtue of Bankruptcy Rule 7023. See Fed. R. Bankr. P. 7023. However, the filing of a purported class proof of claim creates a contested matter. See Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.), 104 B.R. 659, 664 (D.N.J. 1989). A bankruptcy judge has discretion under Bankruptcy Rule 9014 to apply Rule 23 to contested matters. Id. The putative class representative must also establish that the requirements of Rule 23 are satisfied. In re Sacred Heart Hosp. of Norristown, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).

40.     Given that the Bankruptcy Code and Bankruptcy Rules are silent with respect to class claims, it is no surprise that they also give no express guidance with respect to a court's exercise of its discretion to apply Rule 23 to contested matters. Cf. In re Ephedra Prods. Liability Litig., 329 B.R. 1 (S.D.N.Y. 2005). In the Southern District of New York, the courts

17

focus their inquiry on "avoiding undue delay in the administration of the case." Id. at 5. A court may decline to apply Rule 23 if doing so would "gum up the works." Id. The potential interference with timely distribution in itself presents sufficient grounds" to deny application of Rule 23. Id. As the Ephedra court pointed out, pre-certification discovery will be needed. Id. If the class is certified, notice to class members followed by discovery on the merits of the claim and a trial would further delay distribution. Id.

41.    The Movants have not helped to speed matters along here by first failing to timely file their proof of claim and second, as discussed further below, failing to allege any facts establishing that the requirements of Rule 23 have been satisfied. The Bar Date has passed, and Debtors are proceeding to reconcile claims and prepare a liquidating plan. The time it will take to resolve the current issue will prejudice Debtors and their creditors. For these reasons, the Court should decline to exercise its discretion to apply Rule 23 here.

**C.    Even With a Proper Showing, Movants Cannot Satisfy Class Requirements.**

42.    Movants ask that the Court apply Rule 23 here, but, at the same time, ask that any class certification by the bankruptcy court wait until a later date. See Motion at 10 ¶ 31. The Movants seem to be unaware that, in order to file a class proof of claim, the Movants must presently establish that the requirements of Rule 23 have been satisfied. Cf. Reid, 886 F.2d at 1470–71.

43.    As noted above, an authorized agent is permitted, pursuant to Bankruptcy Rule 3001(b), to file a proof of claim on behalf of a creditor. Fed. R. Bankr. P. 3001(b); see also Standard Metals, 817 F.2d at 631 ("Rule 3001(b) allows a creditor to decide to file a proof of claim and to instruct an agent to do so; it does not allow an 'agent' to decide to file a proof of

18

claim and then inform a creditor after the fact."). Consequently, previous certification of a class by a state court is not controlling in the bankruptcy court. <u>Reid</u>, 886 F.2d at 1470–71 (denying the state court class representative leave to file a class proof of claim); <u>see Sacred Heart Hosp.</u>, 177 B.R. at 22. "It is well-settled that consent to being a member or the representative of a class 'in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue.'" <u>Reid</u>, 886 F.2d at 1471.

44.     Given that the requirements of Rule 23 must be satisfied, failure to obtain class certification in advance is a significant factor weighing against a request for leave to file a class proof of claim. <u>See Sacred Heart Hosp.</u>, 177 B.R. at 22; <u>Zenith</u>, 104 B.R. at 664. It is illustrative that class proofs of claim were allowed where class actions were pending in non-bankruptcy courts <u>and</u> the class was certified prepetition by the trial courts. <u>See Reid</u>, 886 F.2d 1462 and <u>In re Charter Co.</u>, 876 F.2d 866 (11th Cir. 1989), <u>cert. denied</u>, 496 U.S. 944 (1990). It has been said that:

> the class proof of claim device may be utilized in appropriate contexts, but that such contexts should be chosen most sparingly. The situation where a class has been certified pre-petition by a nonbankruptcy court and the representative files a claim on behalf of a class of parties the adequacy of the representation of whose interests is uncertain, or where a class action has been filed a considerable time pre-petition and allowed to proceed as a class action in a nonbankruptcy forum, are the best candidates for such treatment. . . . However, in cases where the class action and the class's representation have not been certified pre-petition by the nonbankruptcy forum, there is little doubt that the bankruptcy court must rigorously examine whether the class representative in the bankruptcy case meets those requirements.

<u>In re Sacred Heart Hosp. of Norristown</u>, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).

45.     As the burden to establish the requirements of Rule 23 is on the Movants, <u>see Sacred Heart Hosp.</u>, 177 B.R. at 23, the Motion must be denied. It is undisputed that there has been no attempt to certify a class in the Missouri Action, much less that the Movants have

been formally designated the class representatives. As a result, this Court would be compelled to engage in "rigorous examination" to determine whether the requirements of Rule 23 have been met. Cf. id. For these reasons, the Movants' argument that they should be permitted to file a class claim because they will obtain leave from the automatic stay to seek class standing in the Missouri Action at some point in the future is unavailing. They must be separately designated by this Court.

## CONCLUSION

The Movants have failed to meet the burden of establishing "cause" under Bankruptcy Rule 3003(c)(3) or "excusable neglect" under Bankruptcy Rule 9006(b)(1). The Movants have further failed to establish that the requirements of Rule 23 have been met. As a result, the Debtors respectfully request that the Motion be denied.

SF1:693122 1

RLF1-3219537-1

Dated:  November 1, 2007
        Wilmington, Delaware

Respectfully submitted,

_____

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Natausha A. Wilson
Jennifer M. Taylor
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

SF1:693122 1

RLF1-3219537-1