IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al.,[1] | : | |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | Objection Deadline: 11/13/07 at 4:00 p.m. |
| | : | Hearing Date: 11/20/07 at 10:30 a.m. |

## DEBTORS' MOTION FOR ORDER PURSUANT TO SECTIONS 105(a) AND 363(b)(1) OF THE BANKRUPTCY CODE AUTHORIZING DEBTORS' CONSENT TO AMENDMENT OF CERTAIN LIMITED PARTNERSHIP AGREEMENT

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc, ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105(a) and 363(b)(1) of Title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code"), authorizing the Debtors to give an investor consent to the amendment of a certain pre-petition limited partnership agreement, as described herein. Copies of the consent, the amendment, and summaries of the terms thereof have been filed under seal concurrently with the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LW (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership, and NC Warehouse Corporation, a California corporation.

1

Motion.[2]

In support of the Motion, the Debtors, by and through their undersigned counsel, respectively represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. sections 157 and 1134. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2).

2. The bases for the relief requested herein are sections 105(a) and 363(b)(1) of the Bankruptcy Code.

## BACKGROUND

3. NCF, a publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCF originated, purchased, sold, and serviced mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in

---

[2] Copies of the consent and the amendment have been provided to the Creditors' Committee and will be provided to the United States Trustee.

the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4. On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Court has entered an order authorizing the joint administration of the Debtors' bankruptcy cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

5. The Debtors commenced these chapter 11 cases largely to pursue an expedited sale of their businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

## RELIEF REQUESTED

6. By this Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105(a) and 363(b)(1) authorizing New Century to give an investor consent to the amendment of a certain pre-petition limited partnership agreement, as described herein.

## BASES FOR RELIEF REQUESTED

7. This Motion pertains to $27 million of pre-petition investments of New Century in a hedge fund managed by Carrington Capital Management, LLC ("Carrington" or the "GP") that principally invests in structured securitizations in the residential subprime sector (the "Fund"). New Century owns a stake of approximately 4% in the Fund and a 36.75% stake in the GP, which, in turn, is entitled to a 20% performance allocation based on the underlying performance of the Fund. To date, the Fund, which was established in 2004, has structured securitizations with approximately $22 billion of loans. Additionally, Carrington Mortgage

3

LA3:1139330 3
RLF1-3220062-1

Services, LLC, a wholly owned subsidiary of the GP, recently acquired the Debtors' servicing operations for approximately $184 million.

8. In February 2004, NCF invested (i) $25 million in Carrington Mortgage Credit Fund I, LP, a Delaware limited partnership ("CMC-I"), in exchange for a limited partner interest in CMC-I, and (ii) $2 million in Carrington, in exchange for a 36.75% ownership share of Carrington. NCF's interests were subsequently transferred by NCF to New Century TRS.

9. In December 2004, CMC-I reorganized into a "master-feeder" structure, whereby CMC-I transferred its assets including its capital to Carrington Investment Partners, LP, a Delaware limited partnership ("CIP"). The partners of CMC-I, including New Century, became partners in Carrington Investment Partners (US), LP, a Delaware limited partnership ("CIP US"). A second feeder entity, Carrington Investment Partners (Cayman), LP, was also formed, which enabled fund-raising from international markets ("CIP Cayman"). CIP US and CIP Cayman each hold a limited partner interest in CIP as part of the master-feeder structure.

10. Carrington is the general partner of each of CIP, CIP US, and CIP Cayman.

11. Over the past several weeks, the Debtors and their professionals have been reviewing the Carrington investments and conducting discussions with principals of Carrington with respect to New Century's investments.

12. The Debtors' analysis and discussions with Carrington have taken place against the back-drop of the Debtors' liquidating Chapter 11 case, as well as a sharp downturn in the residential subprime sector over the past several months. The Debtors' analysis and discussions with Carrington are ongoing. As a means of preserving and maximizing the value of CIP and CIP US, the GP has proposed that investors, including New Century, agree to certain modifications to

4

the Partnership Agreement described in Exhibit A hereto (the "Amendment").[3] The Debtors have filed the Partnership Agreement, the Amendment and the summary thereof under seal because such documents are highly confidential and contain proprietary information relating to the GP and CIP.

13. The GP has proposed a similar amendment in respect of CIP Cayman. The GP advises that limited partners holding at least two-thirds of the outstanding limited partnership interests -- both in CIP US and CIP Cayman -- have approved the Amendment.

14. The Debtors and Carrington negotiated a form of consent to the Amendment (the "Consent"). A copy of the Consent is attached to the Motion as Exhibit D, also filed under seal. The Consent provides among other items that New Century will be treated no less favorably than any other Limited Partner and that Carrington is prohibited from offsetting any claims that it may have against New Century's interests in the Carrington entities.

15. The Debtors believe that consenting to the Amendment on terms set forth in the Consent is a reasonable action for the Debtors to take. The Amendment avoids any prejudice to the Debtors that might occur if Carrington were to seek to offset any claims that it may have against New Century's interests in the Carrington entities. It also seeks to enhance and maximize the value of the partnership assets on terms that apply equally to all Limited Partners. The Debtors believe that the terms of that consent, which it heavily negotiated with the Creditors' Committee participation, are clearly in the best interest of the Debtors' estates and stakeholders.

## THE PROPOSED CONSENT HAS A SOUND BUSINESS PURPOSE AND SHOULD BE AUTHORIZED

**I.     Debtors May Use Estate Property Outside the Ordinary Course of Business For A Sound Business Purpose.**

---

[3] The Partnership Agreement and the Amendment are attached hereto as Exhibits B and C, respectively, and the Court is respectfully referred to such exhibits for a full statement of the terms of the Partnership Agreement and Amendment.

16. Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a "sound business purpose" for it. See In re Lionel Corp., 722 F. 2d 1063, 1071 (2nd Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); In re Delaware Hudson Ry. Co., 124 B.R. 169, 179 (Bankr. Del. 1991).

17. Once the debtor articulates a valid business justification for a particular form of relief, the Court reviews the debtor's request under the "business judgment rule." The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informal basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A. 2d 858, 872 (Del. 1985)).

18. The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See id.; see, e.g., Myers v. Martin (In re Martin), 91 F. 3d 389, 395 (3rd Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program, stating that "in determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions").

**II.    The Consent Is Supported By A Sound Business Purpose and Should Be Authorized Pursuant to Section 363(b)(1).**

19.  The Consent satisfies the applicable standards, as the Debtor, in close consultation with the Creditors' Committee, have determined that the applicable amendments provide the best opportunity for the Debtors to maximize the value of their interest in the funds. As noted above, the Consent also prohibits Carrington from offsetting any claims that it may have against New Century's interests in the Carrington entities.

20.  Of course, the issue of the final disposition of the Debtors' interests in the Fund has not been resolved by the Amendment or the Consent, and remain subject to continued analysis and discussion. With respect to final divestiture of the Debtors' interests, such as through a sale, the Debtors' rights have not been altered by the Amendment or the Consent.

## THE CONSENT MAY ADDITIONALLY BE AUTHORIZED PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE

21.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(1).

22.  Approving the Consent is necessary to preserve the remaining value of the Debtors' investments in the Fund. As the Debtors hold a substantial share of the total partner interest in CIP US (a significantly higher percentage than the 4% share in the total Fund), without the Debtors' consent to the Amendment there may not be requisite consenting partners to enact the Amendment. In that scenario, the Debtors and the Committee have determined that the Debtors' recovery of its investment could be jeopardized.

23.  The Debtors respectfully submit that consenting to the Amendment is an appropriate exercise of the Debtors' business judgment, is necessary and in the best interest of the Debtors, their creditors, and their estates and should be approved under sections 105(a) and 363(b) and 503(c)(3) of the Bankruptcy Code.

## NOTICE

24. No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) the Examiner; (3) the Committee; and (4) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

25. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 2, 2007  
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)  
Michael J. Merchant (No. 3854)  
Christopher M. Samis (No. 4909)  
RICHARDS, LAYTON & FINGER, P.A.  
One Rodney Square  
P.O. Box 551  
Wilmington, Delaware 19899  
(302) 651-7700

-and-

Ben H. Logan
Suzzanne S. Uhland
Victoria A. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION