# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**ORIGINAL**

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC., a** | : | **Case No. 07-10416 (KJC)** |
| **Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| | : | |
| Debtors. | : | Objection Deadline: May 23, 2007 at 4:00 p.m. |
| | : | Hearing Date: May 30, 2007 at 2:30 p.m. |
| | : | |

## NOTICE OF APPLICATION AND HEARING

PLEASE TAKE NOTICE that on May 11, 2007, the above-captioned

debtors and debtors in possession (the "Debtors") filed the **Debtors' Application for an**

**Order Under 11 U.S.C. §§ 327(e) and 328 Authorizing the Employment of Skadden,**

**Arps, Slate, Meagher & Flom LLP and Affiliates as Special Regulatory Counsel for**

**the Debtors Effective as of the Petition Date** (the "Application") with the United States

Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor,

Wilmington, Delaware 19801 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that any responses or objections to

the Application must be in writing, filed with the Clerk of the Bankruptcy Court, 824

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

RLF1-3150623-1

#642
5/11/07

Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel on or before **4:00 p.m. on May 23, 2007.**

PLEASE TAKE FURTHER NOTICE that if any objections or responses are received a hearing with respect to the Application will be held on **May 30, 2007 at 2:30 p.m.** before the Honorable Kevin J. Carey at the United States Bankruptcy Court, 824 Market Street, 5th Floor, Courtroom #5, Wilmington, Delaware 19801.

IF NO OBJECTIONS TO THE APPLICATION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: May 11, 2007
     Wilmington, Delaware

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Paul N. Heath (No. 3704)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

Suzzanne S. Uhland
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., | : | Case No. 07-10416 (KJC) |
| a Delaware corporation, et al.,[1] | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: May 30, 2007 @ 2:30 p.m.** |
| | : | **Objection Deadline: May 23, 2007 @ 4:00 p.m.** |

## DEBTORS' APPLICATION FOR AN ORDER UNDER 11 U.S.C. §§ 327(e) AND 328 AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS SPECIAL REGULATORY COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

New Century Financial Corporation and certain of its subsidiaries and affiliates,

debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"),

hereby submit this application ("Application") for entry of an order under 11 U.S.C. §§ 327(e)

and 328 authorizing the employment of Skadden, Arps, Slate, Meagher & Flom LLP and its

affiliated law practice entities (collectively, "Skadden, Arps" or the "Firm") as special regulatory

counsel on certain matters for the Debtors effective as of the Petition Date (defined below). In

support of this Application, the Debtors rely on the declaration of Eric M. Davis (the "Davis

---

[1]     The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership.

Declaration"), a copy of which is attached at Exhibit A. In further support, the Debtors respectfully state as follows:

### Background

1.    On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions in this Court under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The factual background regarding the Debtors, including their business operations, their debt structure and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of Monika L. McCarthy in Support of Chapter 11 Petitions and First Day Relief (Docket No. 2) (the "First Day Declaration"), and is incorporated herein. The Debtors continue to manage and administer their properties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108.

2.    This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(e) and 328.

### Relief Requested

3.    By this Application, the Debtors seek entry of an order authorizing the employment of Skadden, Arps as their special regulatory counsel effective as of the Petition Date. The Debtors request that Skadden, Arps be retained to perform the services described in this Application and on the terms set forth herein.

### Basis For Relief

4.    The Debtors need to retain counsel to assist them with various regulatory and enforcement actions arising out of the Debtors' alleged failure to file requisite financials and alleged inability to fund residential mortgage loans.

2

5.     The Debtors submit that the proposed retention of Skadden, Arps meets all the requirements for retention of special counsel under Bankruptcy Code section 327(e). This section permits a debtor in possession, with court approval, to employ counsel for a "specified special purpose" if such employment is in the best interests of the estates. As Skadden, Arps is the proposed special counsel for the limited purpose of advising and assisting the Debtors on certain regulatory and enforcement matters, Bankruptcy Code section 327(e) does not require that Skadden, Arps be "disinterested persons" as defined in Bankruptcy Code section 101(14). Rather, Bankruptcy Code section 327(e) requires only that Skadden, Arps not represent or hold any interest adverse to the Debtors or to the estates with respect to the matters on which Skadden, Arps is to be employed.

6.     As discussed below, Skadden, Arps' retention is in the best interests of the Debtors and their estates, and Skadden, Arps does not represent or hold any interest adverse to the Debtors or their estates on the matters on which Skadden, Arps is to be employed.

### The Employment Of Skadden, Arps Is In The Best Interests Of The Debtors And Their Estates

7.     Since 2003, Skadden, Arps has been representing the Debtors and their non-debtor entities (collectively, the "Company") regarding certain compliance and regulatory matters. In March 2007, the Debtors contacted Skadden, Arps and engaged Skadden, Arps to assist them in various regulatory and enforcement actions.[2] As detailed in the First Day Declaration and in filings with the Securities and Exchange Commission, the Debtors became unable to fund residential mortgage loans due to the Debtors' liquidity shortages. This, in turn, triggered numerous actions by state agencies. In these actions, the state agencies alleged that the

---

[2]     For the entire period from June 2003 to March 2007, Skadden, Arps' representation of the Company was limited, resulting in total fees and expenses billed to the Debtors and paid by the Debtors of less than $110,000.

Company engaged in violations of applicable state law by failing to (a) fund mortgage loans after a mortgage closing, (b) meet certain financial requirements and (c) notify state regulators of defaults and terminations under certain of its financing arrangements.

8.    As of March 23, 2007, the Debtors had received cease and desist orders from regulators in nine states (Massachusetts, New Hampshire, New Jersey, New York, Connecticut, Maryland, Rhode Island, Tennessee, and California (the "C&D Orders")). Moreover, the Debtors had entered into consent agreements with regulators from eight states (Pennsylvania, Florida, Washington, Iowa, Maine, Michigan, Wyoming, and Idaho (the "Agreements")).

9.    Further, the Attorney General of Massachusetts had issued a Civil Investigative Demand ("CID") against the Debtors and the Attorney General of Ohio had commenced a civil action against the Debtors, which resulted in entry of a stipulated preliminary injunction ("Stipulated Preliminary Injunction").[3]

10.    The C&D Orders, Agreements and Stipulated Preliminary Injunction prevent the Debtors from taking certain actions, including the acceptance of new mortgage loan applications. Certain of the C&D Orders and Agreements, as well as the Stipulated Preliminary Injunction, require the Debtors to take affirmative actions. Some of these affirmative actions include the creation of an escrow account for the purpose of holding funds to be disbursed as refunds of upfront fees collected in connection with mortgage loan applications, the transfer of outstanding mortgage applications and unfunded loans to third parties and the provision of regular information to state regulators. Skadden, Arps actively advised and represented the Debtors in responding to the Regulatory Actions.

---

[3]    The C&D Orders, the Agreements, the CID and the Stipulated Preliminary Injunction are referred to herein as the "Regulatory Actions".

11.    The Debtors' chapter 11 cases do not stay the Regulatory Actions. <u>See</u> 11 U.S.C. § 362(b)(25). The Regulatory Actions are ongoing. Because these actions raise numerous and complex regulatory and enforcement issues, the Debtors require counsel to advise and represent them.[4]

12.    The Debtors believe that Skadden, Arps' continued representation is critical. Skadden, Arps is one of the largest law firms in the world, employing over 1700 attorneys in 10 domestic offices and 13 international offices. Skadden, Arps provides legal services in virtually every practice area. The Debtors selected Skadden, Arps due to the Firm's extensive expertise in regulatory and enforcement matters and because of the Firm's prior representation of the Company.

13.    Skadden, Arps is well qualified and properly situated to handle the complex representation in a most efficient and timely manner. Due to Skadden, Arps' familiarity with the Debtors and the Regulatory Actions, Skadden, Arps' retention in these cases will likely result in savings for the estates.

14.    The Debtors firmly believe that the retention of Skadden, Arps is necessary and in the best interests of their estates and their creditors.

---

[4]    Notwithstanding that the Debtors are in the process of selling their business and liquidating, the Regulatory Actions are ongoing. The Debtors require counsel to advise and assist them with these actions as well as with other regulatory and enforcement issues and related litigation.

## Services To Be Provided By Skadden, Arps

15.     Subject to further order of this Court, Skadden, Arps will perform the following services:

    (a)    advising and representing the Debtors in connection with the Regulatory Actions, including responding on behalf of the Debtors to information requests and appearing before state and federal agencies or governments as to the Regulatory Actions; and

    (b)    advising and representing the Debtors in connection with any other consumer lending practices regulatory issue, enforcement matter or related litigation.

Skadden, Arps is able and willing to provide the above services. The Debtors may request additional services of Skadden, Arps. Should Skadden, Arps agree to undertake any such additional services, the Debtors shall seek further order of the Court.

16.     Due to Skadden, Arps' limited role, the Debtors do not believe that the services of Skadden, Arps will be duplicative of services performed by other professionals in these cases.

## Connections Of Skadden, Arps

17.     The Davis Declaration discloses Skadden, Arps' connections to the Debtors and parties in interest in these cases and is incorporated herein by reference. As set forth in the Davis Declaration, Skadden, Arps has in the past represented, currently represents and likely in the future will represent certain parties in interest in these chapter 11 cases in matters unrelated to the Debtors, the Debtors' bankruptcy cases or such entities' claims against or interests in the Debtors, or the matters for which Skadden, Arps is to be employed under this Application.

6

18.    Further, as set forth in the Davis Declaration, under various waivers granted by the Debtors to Skadden, Arps, Skadden, Arps is advising certain clients in matters related to the Company. These matters, however, are unrelated to the matters on which Skadden, Arps is to be employed as special counsel in these cases. These clients include: (a) Ellington Management Group, LLC, (b) D.E. Shaw & Co. and Hegemon Capital, LLC, (c) Maguire Properties (as defined in the Davis Declaration) and (d) Edward Gotschall.

19.    Notwithstanding Skadden, Arps' representation of the above parties, the Debtors' retention of Skadden, Arps is appropriate under the Bankruptcy Code. As discussed in the Davis Declaration, none of the representations concern the matters on which Skadden, Arps is to be employed as special counsel.

20.    To the best of the Debtors' knowledge, Skadden, Arps does not hold or represent any interest adverse to the Debtors or to their estates on the matters on which Skadden, Arps is to be employed.

### Professional Compensation

21.    Skadden, Arps will be providing professional services to the Debtors under its bundled rate structure. A copy of the Firm's bundled rate structure is attached at Exhibit B. Skadden, Arps' fees for professional services in this structure are based upon its standard bundled hourly rates, which are periodically adjusted. Therefore, Skadden, Arps will not be seeking to be separately compensated for certain staff, clerical and resource charges. Presently, the hourly rates under Skadden, Arps' bundled rate structure range from $630-$875 for partners and of counsel, $595-$665 for counsel and special counsel, $315-$585 for associates, and $160-$250 for legal assistants and support staff. These hourly rates are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of a particular professional.

22.    The Debtors have agreed that, consistent with Skadden, Arps' policy regarding its other clients, Skadden, Arps will continue to charge the Debtors for other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include costs for long distance telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings. Charges and disbursements are invoiced under Skadden, Arps' Policy Statement Concerning Charges and Disbursements, a copy of which is also included at Exhibit B.

23.    In accordance with that Policy Statement, copying costs will be charged at $0.10 per page (for black and white copies), computerized research and long distance telephone calls will be billed at provider cost without reference to Skadden, Arps' internal capital costs or overhead, and document production, overtime meals, and overtime travel allowances will not be charged for separately on an incurrence basis but are included within the bundled rate structure.[5]

24.    On March 21, 2007, Skadden, Arps received a retainer in the amount of $100,000 (the "Initial Retainer") for professional services rendered or to be rendered and expenses incurred or to be incurred by Skadden, Arps regarding the Regulatory Actions. Skadden, Arps received an additional $100,000 on both March 26 and 30, respectively (the "Additional Retainer" and with the "Initial Retainer," the "Retainer"). At no time prior to the Petition Date did Skadden, Arps' outstanding fees and expenses for its representation of the Debtors exceed the amount of the Retainer. The Debtors and Skadden, Arps agreed that the Firm will apply the Retainer to prepetition fees and expenses and that any remaining amount would be held by Skadden, Arps as a postpetition retainer and applied to the final bill in these cases.

---

[5]    Further, in accordance with the Local Rules of this Court, non-working travel time will be billed at 50% of regular hourly rates.

25.    As of the Petition Date, based on prepetition fees and expenses that have been identified and accounted for or estimated as of the date hereof, and assuming application of all such fees and expenses against the Retainer, Skadden, Arps has approximately $18,000 remaining in the Retainer. Those remaining funds will be applied by Skadden, Arps to pay prepetition fees and costs that are subsequently identified and accounted for. Any balance existing after all such applications will be treated as a postpetition retainer and applied to the final bill in these cases as allowed by this Court.[6]

26.    Skadden Arps intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

27.    Skadden, Arps has informed the Debtors that the Firm will accept as compensation such sums as may be allowed by this Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in these cases.

28.    Additionally, Skadden, Arps has informed the Debtors that the Firm will also seek compensation for all time and expenses associated with its retention as a Bankruptcy Code section 327(e) professional, including the preparation of this Application, the Davis

---

[6]    For the twelve months preceding the Petition Date, there were no outstanding fees or expenses owed to Skadden, Arps by the Debtors, except as discussed herein and in the Davis Declaration.

Declaration and related documents, as well as any monthly fee statements and/or interim and final fee applications.

        29.    The Debtors believe that the compensation structure and other terms and conditions, including the Retainer, are reasonable terms and conditions of employment and should be approved under Bankruptcy Code section 328(a).

        30.    Other than as set forth above, no arrangement is proposed between the Debtors and Skadden, Arps for compensation to be paid in these cases.

        31.    Except for sharing arrangements among Skadden, Arps and its affiliated law practice entities and their respective members, Skadden, Arps has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

## Notice

        32.    The Debtors have provided notice of this Application to:  (a) the office of the United States Trustee, (b) counsel to the official committee of unsecured creditors, (c) counsel to Greenwich Capital Financial Products, Inc., and The CIT Group/Business Credit, Inc., the Debtors' postpetition senior secured lenders and (d) those parties timely requesting notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure, in accordance with Del. Bankr. L.R. 2002-1(b).  The Debtors submit that no other or further notice is necessary or required.

## No Prior Request

        33.    No previous application for the relief sought herein has been made to this Court or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court (a) enter an order

granting the relief requested herein and (b) grant such other and further relief as is just and

proper.

Dated:  May 11, 2007
   Wilmington, Delaware

Respectfully submitted,

New Century Financial Corporation, and on behalf
of New Century TRS Holdings, Inc., New Century
Mortgage Corporation, NC Capital Corporation,
Home123 Corporation, New Century Credit
Corporation, NC Asset Holding, L.P., NC Residual
III Corporation, NC Residual IV Corporation, New
Century R.E.O. Corp., New Century R.E.O. II
Corp., New Century R.E.O. III Corp., New Century
Mortgage Ventures, LLC, NC Deltex, LLC, NCoral,
L.P., as Debtors and Debtors in Possession

By: _____

  Name:  Monika L. McCarthy
  Title: SVP and Assistant General Counsel

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, INC., | : | Case No. 07-10416 (KJC) |
| a Delaware corporation, et al., | : | |
| | : | Jointly Administered |
| | : | |
| | : | |
| Debtors. | : | |

### DECLARATION OF ERIC M. DAVIS IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER UNDER 11 U.S.C. §§ 327(e) AND 328 AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS SPECIAL REGULATORY COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

I, Eric M. Davis, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.    I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm"), which maintains offices for the practice of law at, among other places, One Rodney Square, 10th and King Street, Wilmington, Delaware 19801.

2.    I am admitted, practicing and a member in good standing of the bar of the State of Delaware and the United States District Court for the District of Delaware. I submit this declaration (the "Declaration") under 11 U.S.C. §§ 327(e) and 329 and Fed. R. Bankr. P. 2014 and 2016 in support of the Debtors' application (the "Application")[1] for an order under 11 U.S.C. §§ 327(e) and 328 authorizing the employment of Skadden, Arps, Slate, Meagher & Flom LLP and affiliates as special regulatory counsel on certain matters for the Debtors effective as of the

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Application.

Petition Date  Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.[2]

## Qualification Of Professionals

3.      Since 2003, Skadden, Arps has been representing the Debtors and their non-debtor entities (collectively, the "Company") regarding certain compliance and regulatory matters  In March 2007, the Debtors contacted my colleague, Andrew L. Sandler, who will be leading Skadden, Arps' engagement in these cases, and engaged Skadden, Arps to represent the Debtors in various regulatory and enforcement actions.[3]

4.      As detailed in the First Day Declaration and in filings with the Securities and Exchange Commission, the Debtors became unable to fund residential mortgage loans due to the Debtors' liquidity shortages.  This, in turn, triggered numerous actions by state agencies.  In these actions, the state agencies alleged that the Company engaged in violations of applicable state law by failing to (a) fund mortgage loans after a mortgage closing, (b) meet certain financial requirements and (c) notify state regulators of defaults and terminations under certain of its financing arrangements.

5.      As of March 23, 2007, the Debtors had received cease and desist orders from regulators in nine states (Massachusetts, New Hampshire, New Jersey, New York, Connecticut, Maryland, Rhode Island, Tennessee, and California (the "C&D Orders")).  Moreover, the Debtors had entered into consent agreements with regulators from eight states

---

[2]      Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden, Arps and are based on information provided by them

[3]      For the entire period from June 2003 to March 2007, Skadden, Arps' representation of the Company was limited, resulting in total fees and expenses billed to the Debtors and paid by the Debtors of less than $110,000

(Pennsylvania, Florida, Washington, Iowa, Maine, Michigan, Wyoming, and Idaho (the "Agreements")).

6.     Further, the Attorney General of Massachusetts had issued a Civil Investigative Demand ("CID") against the Debtors and the Attorney General of Ohio had commenced a civil action against the Debtors, which resulted in entry of a stipulated preliminary injunction ("Stipulated Preliminary Injunction").[4]

7.     The C&D Orders, Agreements and Stipulated Preliminary Injunction prevent the Debtors from taking certain actions, including the acceptance of new mortgage loan applications. Certain of the C&D Orders and Agreements, as well as the Stipulated Preliminary Injunction, require the Debtors to take affirmative actions. Some of theses affirmative actions include the creation of an escrow account for the purpose of holding funds to be disbursed as refunds of upfront fees collected in connection with mortgage loan applications, the transfer of outstanding mortgage applications and unfunded loans to third parties and the provision of regular information to state regulators. Skadden, Arps actively advised and represented the Debtors in responding to the Regulatory Actions.

8.     The Regulatory Actions are ongoing. Because these actions raise numerous and complex regulatory and enforcement issues, the Debtors require counsel to advise and represent them.

9.     Skadden, Arps understands that the Debtors selected Skadden, Arps as their regulatory counsel due to the Firm's extensive expertise in matters involving regulatory and enforcement matters and because of the Firm's prior representation of the Company.

---

[4]     The C&D Orders, the Agreements, the CID and the Stipulated Preliminary Injunction are referred to herein as the "Regulatory Actions"

10.     Skadden, Arps has assembled a highly qualified team of professionals to provide the necessary services for the Debtors. Skadden, Arps' representation will be led by Mr. Sandler and Benjamin B. Klubes, both partners in Skadden, Arps' Consumer Financial Services Enforcement and Litigation practice. Mr. Sandler and Mr. Klubes have represented many of the largest U.S. and non-U.S. based financial services companies in recent years in connection with significant regulatory and enforcement issues.

11.     The Firm's expertise in the field of regulatory law and civil enforcement makes it well qualified and properly situated to act on the Debtors' behalf with respect to the matters for which Skadden, Arps is to be employed, as described in the Application and below.

### Services To Be Rendered

12.     The Debtors have requested that Skadden, Arps render the following services:

(a)     advising and representing the Debtors in connection with the Regulatory Actions, including responding on behalf of the Debtors to information requests and appearing before state and federal agencies or governments as to the Regulatory Actions; and

(b)     advising and representing the Debtors in connection with any other consumer lending practices regulatory issue, enforcement matter or related litigation.

13.     Subject to this Court's approval of the Application, Skadden, Arps is able and willing to serve as the Debtors' counsel and perform the services described above.

### Connections Of Skadden Arps

14.     Skadden, Arps is not required to comply with the "disinterestedness" criteria applicable to Bankruptcy Code section 327(a) in connection with the Debtors' application to employ Skadden, Arps as Bankruptcy Code section 327(e) special counsel. However, in the interest of providing as complete a record as readily possible under the circumstances in

4

connection with the Debtors' retention application, the Firm makes the following disclosures regarding professional relationships.

15.    Presently, under various waivers granted by the Debtors to Skadden, Arps, Skadden, Arps is advising certain clients in matters related to the Company (the "Other Matters"). These matters, however, are unrelated to the matters on which Skadden, Arps is to be employed as special counsel in these cases (the "Special Counsel Matters").

16.    These clients include:  (a) Ellington Management Group, LLC ("Ellington"), in connection with potentially acquiring certain of the Debtors' assets, (b) D.E. Shaw & Co. and Hegemon Capital, LLC ("D.E. Shaw"), in connection with potentially acquiring certain of the Debtors' assets and (c) Maguire Properties, Inc., Maguire Properties-Park Place, LLC, Maguire Properties-3121 Michelson, LLC and Maguire Properties-3161 Michelson, LLC, (collectively, "Maguire Properties"), in connection with their interests as lessors and creditors and Maguire Properties-Park Place, LLC's interest as a member of the Creditors' Committee in these cases. Under the various waivers, Skadden, Arps will not, however, appear on behalf of Ellington, D.E. Shaw or Maguire Properties in any litigation against the Company in a manner that is adverse to the Company.

17.    From the outset, Skadden, Arps instituted formal screening procedures or "ethical walls." These screening procedures are designed to ensure that there are no communications or exchanges of information protected as confidential or client secrets between Firm personnel working on the Special Counsel Matters and personnel working on any of the Other Matters, and vice versa.

18.    Under the formal screening procedures, Firm personnel currently or prospectively staffed to represent the Company, Ellington, D.E. Shaw or Maguire Properties will

not (a) work for a different group, (b) discuss or communicate with Firm personnel from a different group any information that is protected as confidential or as client secrets under an applicable rule or code of professional responsibility and (c) access any non-public documents in the Firm's possession, custody or control relating to a different group. In addition, the Firm personnel subject to the formal screening procedures executed an appropriate acknowledgement concerning the formal screening procedures.

19.     In connection with the Company's sale of certain of its assets, approved by the Court on May 7, 2007, Skadden, Arps made an appearance on behalf of, and otherwise represented, Ellington in connection with its purchase of a portfolio package of "scratch and dent whole" loans and other financial interests for approximately $58 million.

20.     Skadden, Arps, upon consent of the Company, also represented Bear Stearns prior to the Petition Date, in connection with potential transactions with the Company, including potentially acquiring certain of the Debtors' assets. Skadden, Arps no longer represents Bear Stearns in connection with any matters relating to the Debtors or to their cases.

21.     In addition to the foregoing, Skadden, Arps has in the past represented, currently represents and likely in the future will represent certain parties in interest in these chapter 11 cases in matters unrelated to the Debtors, the Debtors' bankruptcy cases or such entities' claims against or interests in the Debtors, or the matters for which Skadden, Arps is to be employed under the Application. In preparing this Declaration, I, on behalf of Skadden, Arps, reviewed a list of parties in interest (the "Identified Parties") that Skadden, Arps received from Debtors' bankruptcy counsel, a copy of which is attached at Exhibit 1 hereto. The list of Identified Parties includes the Debtors' secured lenders, the Debtors' largest creditors, officers and directors and parties holding equity interests in the Debtors. The list of Identified Parties

6

was categorized into the following categories: (a) UCC-1 Parties; (b) 50 Largest Unsecured

Creditors; (c); Largest Shareholders of New Century Financial Corporation; (d) Professionals;

and (e) Debtors.

        22.     Skadden, Arps' review of the Identified Parties has revealed that it

currently represents or has represented within the past three years the following entities (or in

some cases their affiliates as indicated) on matters unrelated to the to Debtors, the Debtors'

bankruptcy cases or such entities' claims against or interests in the Debtors, or the matters for

which Skadden, Arps is to be employed in these cases:[5]

> (a)    **UCC-1 Parties.** Affiliate of Access Investments II, LLC,
> Ameritech Credit Corporation and affiliates, Bank Leumi, Bank of
> America, NA and affiliates, affiliates of Bank of the West,
> Barclays Bank PLC and affiliates, CDC Mortgage Capital Inc. and
> affiliates, CIT Communications Finance Corporation and affiliates,
> Citigroup Global Markets Realty Corp. and affiliates, Countrywide
> Home Loans, Inc. and affiliate, Credit Suisse First Boston
> Mortgage Capital and affiliates, Deutsche Bank Trust Company
> Americas and affiliates, affiliates of DB Structured Products, Inc.,
> Federal National Mortgage Association, General Electric Capital
> Corporation and affiliates, GMAC Commercial Finance and
> affiliates, Goldman Sachs Mortgage Company and affiliates,
> Greenwich Capital Financial Products, Inc. and affiliates, affiliates
> of IXIS Real Estate Capital Inc., Morgan Stanley Mortgage Capital
> Inc. and affiliates, affiliates of NC Capital Corporation, affiliates of
> New Century Funding A, affiliates of New Century Funding I,
> affiliates of New Century Mortgage Securities Inc., Ropes & Gray,
> affiliates of State Street Global Markets, CIT Group/Equipment
> Financing and affiliates, U.S. Bancorp Equipment Finance, Inc.
> and affiliates, U.S. Bank National Association and affiliates and
> UBS Real Estate Securities Inc. and affiliates;
>
> (b)    **50 Largest Unsecured Creditors.**[6] Affiliated Computer Services
> and affiliates, affiliates of Assurant Specialty Property Insurance,
> Aurora Loan Services and affiliates, Bank of America, N.A. and

---

[5]       In exercising an abundance of caution, Skadden, Arps has listed those entities which it reasonably believes may be affiliates of current or former clients

[6]       Includes individual members of the Creditors' Committee

affiliates, Barclays Bank PLC and affiliates, affiliate of ChoicePoint Precision Marketing, Citigroup Global Markets Realty Corp. and affiliates, Countrywide and affiliates, Credit Suisse First Boston Mortgage Capital and affiliates, Deutsche Bank and affiliates, affiliates of DB Structured Products, Inc., EMC Mortgage Corporation and affiliates, Fidelity National Information Services, Inc. and affiliates, affiliate of Fiserv CCS, General Electric Capital Corporation and affiliates, GMAC Commercial Financial and affiliates, Goldman Sachs Mortgage Company and affiliates, Greenwich Capital Financial Products, Inc. and affiliates, HSBC Bank USA and affiliates, affiliates of IXIS Real Estate Capital, Inc., JP Morgan Chase Bank and affiliates, Lehman Brothers Bank and affiliates, Maguire Properties – Park Place LLC and affiliates, Morgan Stanley Mortgage Capital Inc. and affiliates, NOMURA Securities and affiliates, Pricewaterhouse Coopers LLP and affiliate, Residential Funding Corporation and affiliates, Sprint and affiliates, affiliates of State Street Global Markets, Suntrust and affiliates, UBS Real Estate Securities Inc. and affiliates, Washington Mutual Bank and affiliates and Wells Fargo Bank and affiliates;

(c) **Largest Shareholders of New Century Financial Corporation.** Affiliates to David Einhorn, Greenlight Capital LLC and affiliates, Morgan Stanley and affiliates;

(d) **Professionals.** Heller Ehrman LLP, Lazard Freres & Company LLC, O'Melveny & Myers LLP and Thacher Proffitt & Wood; and

(e) **Debtors.** As stated above, Skadden, Arps previously represented the Debtors and their non-debtor entities in compliance and regulatory matters.

23. Except as to Edward Gotschall, Skadden, Arps does not represent and has not previously represented in the last three years any of the Company's directors or senior employees. Skadden, Arps represents or has represented entities affiliated with certain directors and officers, including Frank Bilotta, Taj S. Bindra, Jonathan Threadgill and Richard Zona.

24. Skadden, Arps represents Edward Gotschall, a director of New Century Financial Corporation and former senior employee thereof. Skadden, Arps represents Mr. Gotschall in connection with an investigation by the Securities and Exchange Commission and the Department of Justice concerning Mr. Gotschall's prepetition activities as a director and

senior employee. Moreover, Skadden, Arps assisted Mr. Gotschall in providing information to the Company's internal audit committee in connection with investigations undertaken by that committee. After due investigation, Skadden, Arps has no reason to believe that there is any conflict (or potential conflict) between the interests of the Company and Mr. Gotschall with respect to the matters in which these parties are represented by Skadden, Arps. The representation of Mr. Gotschall is upon full disclosure to and with the consent of the Company. Prior to the Petition Date, the Company agreed to pay the fees and expenses incurred by Mr. Gotschall in connection with the investigations. Skadden, Arps has billed the Company, but has not been paid, for prepetition services rendered to Mr. Gotschall. In addition, the formal screening procedures discussed above were also instituted for the Skadden, Arps personnel working on the Firm representation of Mr. Gotschall.

25.    Skadden, Arps does not provide any advice or legal services to the Company with respect to any investigations by the Securities and Exchange Commission and the Department of Justice. It is my understanding that O'Melveny & Myers represents the Company with respect to those types of matters. Moreover, it is my understanding that Cooley Godward Kronish LLP represents individual directors of the Company, including Mr. Gotschall, with respect to independent civil securities lawsuits.

26.    In addition to reviewing the Identified Parties, Skadden, Arps conducted additional queries of its client databases of parties entering a notice of appearance in these cases. With respect to those queries, Skadden, Arps currently represents or has represented within the past three years the following entities (or in some cases their affiliates as indicated) that have entered an appearance in these chapter 11 cases as of April 27, 2007, on matters unrelated to the Debtors, the Debtors' bankruptcy cases or such entities' claims against or interests in the Debtors,

9

or the matters for which Skadden, Arps is to be employed in these cases:[7] ABN AMRO Bank N.V. and affiliates, Barclays Capital and affiliates, affiliates of CB Richard Ellis Corporate Facilities Management, Inc., ChoicePoint Inc., Cooley Godward Kronish LLP, DLJ Mortgage Capital, Inc. and affiliates, Ellington Management Group, Inc., GMAC Commercial Finance LLC and affiliates, affiliates of IBM Credit LLC, IKON Office Solutions, Qwest Corporation and affiliates, RBC Centura Bank and affiliates, affiliates of RBC Mortgage Company, Royal Bank of Canada and affiliates, affiliates of Safeco Financial Institution Solutions, Inc., Sprint Nextel Corporation and affiliates, SunTrust Leasing Corporation and affiliates, The CIT Group/Business Credit Inc. and affiliates, Travelers and affiliates, Union Bank of California and affiliates, affiliates of United HealthCare Insurance Company and Washington Mutual and affiliates.

27.    Many of the Firm's representations of the clients referenced above consist of representations in episodic transactional matters. Skadden Arps' representation of the above entities will not affect the Firm's representation of the Debtors on the matters for which retention is sought.

28.    I am not related to, and to the best of my knowledge, no attorney at Skadden, Arps is related to, any U.S. District Judge or U.S. Bankruptcy Judge for the District of Delaware or the U.S. Trustee for such district or to any known employee in the office thereof.

29.    Except as set forth herein, neither Skadden, Arps nor any attorney at the Firm is a creditor, equity security holder or insider of the Debtors. Skadden, Arps rendered legal services to the Debtors prior to the Petition Date for which it was compensated. Certain Skadden, Arps attorneys may own stock of the Debtors, either directly or indirectly. Also,

---

[7]    This category does not include entities previously disclosed in this Declaration.

attorneys of the Firm may hold common stock of the Company in managed accounts over which they have no control over investment decisions pertaining to holdings in such accounts. Under Skadden, Arps' internal policy, the Debtors have been placed on the Firm's "restricted list" and no sale or purchase of securities or claims relating to the Debtors will be authorized or permitted during the pendency of Skadden, Arps' retention as special counsel in these cases. Further, a former associate of Skadden, Arps, Joseph Tortorelli, is Assistant Secretary of New Century Financial Corporation. Mr. Tortorelli was employed with Skadden, Arps from September 2001 through August 2004.

30.    Skadden Arps is one of the largest law firms in the world and has a diverse client base. Indeed, for the period beginning April 1, 2006, and ending March 31, 2007, no single client, including its affiliates, accounted for more than 2.86% of Skadden Arps' total value of time billed to client matters for that period. With the exception of Deutsche Bank, Credit Suisse and JP Morgan Chase, and their affiliates, no single client, or its affiliates, referenced in this Declaration accounted for more than 1% of Skadden Arps' total value of time billed during that same period.

31.    As required by Bankruptcy Code section 327(e), Skadden, Arps does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters on which Skadden, Arps is to be employed.

### Professional Compensation

32.    Skadden, Arps will be providing professional services to the Debtors under its bundled rate structure. A copy of the Firm's bundled rate structure is attached at Exhibit B to the Application. Skadden Arps' fees for professional services in this structure are based upon standard bundled hourly rates, which are periodically adjusted. Therefore, Skadden,

Arps will not be seeking to be separately compensated for certain staff, clerical and resource charges. Presently, the hourly rates under Skadden, Arps' bundled rate structure range from $630-$875 for partners and of counsel, $595-$665 for counsel and special counsel, $315-$585 for associates, and $160-$250 for legal assistants and support staff. These hourly rates are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of a particular professional. These rates are set at a level designed to compensate Skadden, Arps fairly for the work of its attorneys and legal assistants and to cover fixed and routine overhead expenses including those items billed separately to other clients under the Firm's standard unbundled rate structure.

33.    Consistent with Skadden, Arps' policy regarding its other clients, Skadden, Arps will continue to charge the Debtors for other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include costs for long distance telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings. Charges and disbursements are invoiced under Skadden, Arps' Policy Statement Concerning Charges and Disbursements, a copy of which is also included at Exhibit B to the Application.

34.    In accordance with that Policy Statement, copying costs will be charged at $0.10 per page (for black and white copies), computerized research and long distance telephone calls will be billed at provider cost without reference to Skadden, Arps' internal capital costs or overhead, and document production, overtime meals, and overtime travel allowances will not be charged for separately on an incurrence basis but are included within the bundled rate structure.[8]

---

[8]    Further, in accordance with the Local Rules of this Court, non-working travel time will be billed at 50% of regular hourly rates.

35.    On March 21, 2007, Skadden, Arps received a retainer in the amount of $100,000 (the "Initial Retainer") for professional services rendered or to be rendered and expenses incurred or to be incurred by Skadden, Arps regarding the Regulatory Actions. Skadden, Arps received an additional $100,000 on March 26 and 30, respectively (the "Additional Retainer" and with the "Initial Retainer," the "Retainer"). At no time prior to the Petition Date did Skadden, Arps' outstanding fees and expenses for its representation of the Debtors exceed the amount of the Retainer. The Debtors and Skadden, Arps agreed that the Firm will apply the Retainer to prepetition fees and expenses and that any remaining amount would be held by Skadden, Arps as a postpetition retainer and applied to the final bill in these cases.

36.    As of the Petition Date, based on prepetition fees and expenses that have been identified and accounted for or estimated as of the date hereof, and assuming application of all such fees and expenses against the Retainer, Skadden, Arps has approximately $18,000 remaining in the Retainer. Those remaining funds will be applied by Skadden, Arps to pay prepetition fees and costs that are subsequently identified and accounted for. Any balance existing after all such applications will be treated as a postpetition retainer and applied to the final bill in these cases as allowed by this Court.[9]

37.    Skadden Arps intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

---

[9]    For the twelve months preceding the Petition Date, there were no outstanding fees or expenses owed to Skadden, Arps by the Debtors, except as discussed herein and in the Application.

Skadden Arps will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in these cases at the then current bundled rate charged for such services on a non-bankruptcy matter.

38.    Skadden, Arps has informed the Debtors that the Firm will accept as compensation such sums as may be allowed by this Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in these cases.

39.    I believe that the compensation structure and other terms and conditions, including the Retainer, are reasonable terms and conditions of employment and should be approved under Bankruptcy Code section 328(a).

40.    Other than as set forth above, no arrangement is proposed between the Debtors and Skadden Arps for compensation to be paid in these cases.

41.    Except for sharing arrangements among Skadden, Arps, its affiliates, and their respective members, Skadden Arps has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

42.    Skadden Arps has instituted and is carrying on further inquiries of its partners and associates regarding the matters contained herein, including the approximately 1,700 attorneys in the Firm's 23 domestic and international offices. Skadden Arps will file supplemental declarations regarding this retention if any additional relevant information comes to its attention. Additionally, as a matter of retention and disclosure policy, Skadden Arps will

14

periodically review its past and present connections with parties in interest in these cases from time to time and will file supplemental disclosure declarations, if warranted.

I declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: May 11, 2007
      Wilmington, Delaware

                    /s/ *Eric M. Davis*
                    Eric M. Davis (I.D. No. 3621)
                    SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP
                    One Rodney Square
                    10th and King Street
                    Wilmington, Delaware 19801

# EXHIBIT 1

<u>**List of Potential Parties-in-Interest for New Century TRS Holdings, Inc., et al.**</u>

## UCC-1 Parties

Access Investments II, LLC
Ameritech Credit Corporation
Aspen Funding Corp
Bank Leumi Leasing Corporation
Bank of America, NA
Bank of the West
Barclays Bank, PLC
Carrington Mortgage Credit Fund I, LP
CDC Mortgage Capital Inc.
Charter One Vendor Finance LLC
CIT Communications Finance Corporation
Citigroup Global Markets Realty Corp.
Consultants Group Commercial Funding Corp.
Countrywide Home Loans, Inc.
Credit Suisse First Boston Mortgage Capital LLC
DB Structured Products, Inc
Deutsche Bank Trust Company Americas
Federal National Mortgage Association
Galleon Capital Corp
Gemini Securitization Corp., LLC
General Electric Capital Corporation
GMAC Commercial Financial LLC
Goldman Sachs Mortgage Company
Greenwich Capital Financial Products, Inc.
Guaranty Bank
Heineman, Dale Scott
IOS Capital
IXIS Real Estate Capital Inc
Johnson, Kurt F.
Mission Center Partners
Morgan Stanley Mortgage Capital Inc.
NC Capital Corporation
New Century Funding A
New Century Funding I
New Century Mortgage Securities Inc.
Newport Funding Group
PFE International Inc.
Ropes & Gray LLP
St. Andrew Funding Turst c/o New Century Mortgage
State Street Global Markets
Sterling Bank
The CIT Group/Equipment Financing

U.S. Bancorp Equipment Finance, Inc.
U.S. Bank National Association
UBS Real Estate Securities Inc.
United California Capital
Whitwood, Jason Allen

## 50 Largest Unsecured Creditors [1]

Adteractive
Affiliated Computer Services
Alaska Seaboard Partners Limited Partnership
Aspen Funding Corp.
Assurant Specialty Property Insurance
Aurora Loan Services
Bank of America, N.A.
Barclays Bank PLC
Carrington Securities, LP
Catarina Mortgage Services Inc.
ChoicePoint Precision Marketing
Citigroup Global Markets Realty Corp.
Countrywide
Credit Suisse First Boston Mortgage Capital LLC
Credit-Based Asset Servicing and Securitization LLC
DB Structured Products, Inc.
Deutsche Bank
EMC Mortgage Corporation
Fiserv CCS
Galleon Capital Corporation
Gemini Securitization Corp., LLC
General Electric Capital Corporation
GMAC Commercial Finance, LLC
Goldman Sachs Mortgage Company
Greenwich Capital Financial Products, Inc.
Guaranty Bank
Harbor Asset Management Services
HSBC Bank USA, N.A.
INDY MAC Bank, FSB
IXIS Real Estate Capital, Inc.
JP Morgan Chase Bank, NA
Lehman Brothers Bank FSB
Low.com
Lowermybills.com
Morgan Stanley Mortgage Capital Inc.
National Field Representatives

---

[1] Includes certain UCC-1 Parties

Newport Funding Corp.
Nextag
NOMURA Securities
Pricewaterhouse Coopers LLP
Residential Funding Corporation
SG Mortgage Finance Corp
Sheffield Receivables Corporation
Sprint
State Street Global Markets, LLC
Suntrust
System Source, Inc.
Tucson Funding LLC
UBS Real Estate Securities Inc.
Washington Mutual Bank, FA

## Largest Shareholders of New Century Financial Corporation[2]

Greenlight Capital LLC
David Einhorn
Morgan Stanley
Morgan Stanley Capital Services
Hotchkis and Wiley Capital Management LLC

## Directors and Senior Employees

Alexander, Marilyn A.
Bilotta, Frank
Bindra, Taj S.
Black, Harold A.
Cimino, Richard
Clifford, Leigh Ann
Cloyd, Kevin
Cole, Robert K
Dodge, Patti
Eckroth, Joseph
Fleig, David
Forster, Fredric J.
Garday, Louis
Gotschall, Edward
Haines, Eric
Jewett, Jennifer
Kenneally, David
Lambert, Robert
Lange, Donald E.

---

[2] These individuals and entities directly or indirectly own more than 5% of the shares of New Century Financial Corporation

Loewenthal, Marc
McCarthy, Monika L.
Meola, Anthony
Morrice, Brad A.
Sachs, Michael M.
Theologides, Stergios
Threadgill, Jonathan
Tortorelli, Joseph
Wolf, Colleen
Zalle, Paul
Zona, Richard A.

## Professionals

AlixPartners LLP (crisis managers)
Allen Matkins Leck Gamble Mallory & Natsis LLP (special financing counsel)
Heller Ehrman LLP (counsel to audit committee)
Lazard Freres & Co. LLC (investment banker)
O'Melveny & Myers LLP (debtors' counsel)
Richards Layton & Finger, P.A. (Delaware debtors' counsel)
Skadden, Arps, Slate, Meagher & Flom (special regulatory counsel)
Thatcher Proffit (special securitization counsel)
Xroads Case Management Services, LLC (claims and noticing agent)

## Debtors

New Century Financial Corporation, a Maryland corporation
New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware
corporation
New Century Mortgage Corporation, a California corporation
NC Capital Corporation, a California corporation
Home123 Corporation, a California corporation
New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California
corporation
NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited
partnership
NC Residual III Corporation, a Delaware corporation
NC Residual IV Corporation, a Delaware corporation
New Century R.E.O. Corp., a California corporation
New Century R.E.O. II Corp., a California corporation
New Century R.E.O. III Corp., a California corporation
New Century Mortgage Ventures, LLC, a Delaware corporation
NC Deltex, LLC, a Delaware corporation
NCORAL, L.P., a Delaware limited partnership

# EXHIBIT B

**CONFIDENTIAL**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES

### STANDARD BUNDLED HOURLY TIME CHARGE SCHEDULE*

#### September 1, 2006

|  | Rate |
|---|---|
| **PARTNERS and OF COUNSEL:** | $630 - $875 |
| **COUNSEL/SPECIAL COUNSEL:** | $595 - $665 |
| **ASSOCIATES:** | |
| Level | |
| 8 | $585 |
| 7 | 565 |
| 6 | 535 |
| 5 | 495 |
| 4 | 470 |
| 3 | 435 |
| 2 | 390 |
| 1 | 315** |
| **LEGAL ASSISTANTS** | $160 - $250 |

---

\*       These are the Firm's standard hourly fee rates for most attorneys and legal assistants in the Firm's "bundled rate" structure for clients who are not billed separately for certain charges (e.g., secretarial and word processing time preparing legal documents, proofreading, facsimile services, overtime meals and overtime travel allowances). In-house reproduction under the bundled rate structure is charged at $0.10 per page. Please note that in a limited number of cases or for specific types of work (e.g., M&A transactions, certain types of tax matters, etc.), individual rates may be higher or lower than those stated.

\*\*      First year associates will move to $355/hr. after being admitted to the Bar.

**SKADDEN ARPS, SLATE, MEAGHER& FLOM LLP AND AFFILIATES**
**Policy Statement Concerning Charges and Disbursements**
**Under Standard Bundled Rate Structure**
**Effective 9/1/05**

*Skadden Arps bills for reasonable charges and disbursements incurred in connection with an engagement. Clients are billed for external charges at the actual cost billed by the vendor except in a few cases noted below, charges for internal support services are billed at rates derived from internal cost analyses or at rates set at or below comparable outside vendor charges*

---

**I.  Research Services.** *Charges for on-line computerized research (LexisNexis, Westlaw and financial services) and use of outside research services and materials are billed at the actual amounts charged by vendors, which have been reduced by discounts the Firm receives from vendors*

*SEC filings retrieved using the Disclosure system in our library are charged based on standard vendor rates derived from an internal cost analysis*

*The State of Delaware Database provides computer access to a corporations database in Dover, Delaware   The charge for this service is $50 per transaction, which is the average amount charged by outside services*

**II.  Travel-Related Expenses.** *Out-of-town travel expenses are billed at actual cost and include air or rail travel, lodging, car rental, taxi or car service, tips and other reasonable miscellaneous items associated with travel Corporate and/or negotiated discounted rates are passed on to the client   Specific Firm policies for expenditures relating to out-of-town travel include*

- *Air Travel   Coach travel is used for all U S domestic flights unless upgrades are available at little additional cost or prior client approval is obtained for a different class  For international flights from the United States, business class is used   Travel by attorneys based outside the United States is consistent with these policies*

- *Lodging   Overnight accommodations are generally booked with hotels with which the Firm has a corporate rate or, when this is not possible, with hotels suggested by the client*

*Local travel charges include commercial transportation and, when a private car is used, mileage, tolls and parking Specific policies govern how and when a client is charged for these expenses, these include*

- *Fares for commercial transportation (e g , car service, taxi or rail) are charged at the actual vendor invoice amount   The charge for private car usage is the IRS rate allowance per mile (or the equivalent outside the United States) plus the actual cost of tolls and parking*

- *Round-trip transportation to the office is not charged separately for attorneys who work weekends or holidays, nor is transportation home on business days when an attorney works past a certain hour (typically 8 30 p m )*

- *Local travel for support staff is not charged when a staff member works after 8 00 p m  specifically for the client*

**III.  Word Processing and Secretarial and other Special Task-Related Services.** *Routine secretarial tasks (correspondence, filing, travel and/or meeting arrangements, etc ) are not charged to clients  There is no separate charge for word processing and secretarial services associated with preparing legal documents.*

*Multi-function personnel, such as qualified secretaries and word processors, may also perform other specialized tasks (such as EDGAR filings or legal assistant services)   Such work is recorded in the appropriate billing category (for example, legal assistant services are recorded as fees in "Legal Assistant Support" on bills)*

**IV.  Reproduction and Electronic Document Management.** *Photocopying services (including copying, collating, tabbing and velo binding) performed in-house are charged at 10 cents per page, which represents the average internal cost per page  Color photocopies are charged at 50 cents per page (based on outside vendor rates)   Photocopying projects performed by outside vendors are billed at the actual invoice amount  Special arrangements can be made for unusually large projects*

*Electronic Data Management services (e g , scanning, OCR processing, printing from scanned files, and conversions) performed by outside vendors are billed at the actual invoice amount and those performed in-house are billed at rates comparable to those charged by outside vendors*

**V.  Electronic Communications:** *Clients are charged for communications services as follows*

- *Telephone Charges   There is no charge for local telephone calls or facsimile services  Long distance telephone calls made from the Firm are charged based on applicable rates in tariff tables and are allocated*

*within a client based on the hours worked by attorneys on various matters for that client. Collect, credit card and third party calls are charged at the actual vendor rate plus applicable taxes and are assigned to the specific matter for which such charges were incurred.*

- *Facsimile Charges.* *There is no charge for outgoing or incoming facsimiles.*

**VI. Postage and Courier Services.** *Outside messenger and express carrier services are charged at the actual vendor invoice amount which frequently involves discounts negotiated by the Firm. Postage is charged at actual mail rates. On certain occasions, internal staff may be required to act as messengers, a standard rate is charged for their time.*

**VII. UCC Filing and Searches.** *Charges for filings and searches, in most instances, are based on standard amounts determined by the vendor. Unusual filings and searches will be charged based on vendor invoice.*

**VIII. Meals.** *Business meals with a client are charged at actual cost. Luncheon and dinner meetings with the client at the Firm are charged based on the costs developed by our food service vendor. Breakfast, beverage and snack services at the Firm's offices are not charged, except in unusual circumstances. Overtime meals are not charged separately to clients.*

**IX. Direct Payment by Clients of Other Disbursements.** *Other major disbursements incurred in connection with an engagement will be paid directly by the client. (Those which are incurred and paid by the Firm will be charged to the client at the actual vendor's invoice amount.) Examples of such major disbursements that clients will pay directly include:*

- *Professional Fees (including disbursements for outside professional services such as local counsel, accountants, witness and other professional fees)*

- *Filing/Court Fees (including disbursements for agency fees for filing documents, standard witness fees, juror fees)*

- *Transcription Fees (including disbursements for outside transcribing agencies and courtroom stenographer transcripts)*

- *Other Disbursements (including any other required out-of-pocket expenses incurred for the successful completion of a matter)*

\* \* \* \* \*

2

## PROPOSED ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al., | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | |

## ORDER UNDER 11 U.S.C. §§ 327(e) AND 328 AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS SPECIAL REGULATORY COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application") of New Century Financial Corporation and certain of its subsidiaries and affiliates, debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 327(e) and 328 authorizing the employment of Skadden, Arps as special regulatory counsel for the Debtors effective as of the Petition Date;[1] and the Court having reviewed the Application and the Davis Declaration and the Court being satisfied with the representations made in the Application and the Davis Declaration that the employment of Skadden, Arps in these cases is in the best interests of the Debtors and their estates and that Skadden, Arps does not hold or represent any interest adverse to the Debtors or to their estates with respect to the matters on which Skadden, Arps is being employed; and due and sufficient notice of the Application having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]     Capitalized terms not defined herein have the meanings ascribed to them in the Application.

ORDERED, ADJUDGED AND DECREED THAT:

1.    The Application is GRANTED.

2.    Under 11 U.S.C. §§ 327(e) and 328, the Debtors are authorized to employ Skadden, Arps as their special regulatory counsel effective as of the Petition Date on the terms set forth in the Application.

3.    Skadden, Arps shall be compensated for its services and reimbursed for any related expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

4.    Skadden, Arps is authorized to apply the Retainer to pay any fees, charges, costs, or expenses relating to services rendered to the Debtors prior to the Petition Date that remain unpaid and to hold any remaining portion of the Retainer for application to allowed amounts owed under Skadden, Arps' final fee application in these cases.

5.    This Court shall retain exclusive jurisdiction to construe and enforce the terms of the Application and this Order.

Dated: _____, 2007
        Wilmington, Delaware

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

2

## File a Motion:

<u>07-10416-KJC New Century TRS Holdings, Inc.</u>

Type: bk                          Chapter: 11 v                    Office: 1 (Delaware)
Judge: KJC                        Assets: y                        Case Flag: PlnDue, DsclsDue,
                                                                   MEGA, LEAD, CLMSAGNT

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Samis, Christopher M. entered on 5/11/2007 at 11:12 PM EDT and filed on 5/11/2007

**Case Name:**        New Century TRS Holdings, Inc.
**Case Number:**      <u>07-10416-KJC</u>
**Document Number:** <u>642</u>

**Docket Text:**
Application to Employ Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates as Special Regulatory Counsel for the Debtors Effective as of the Petition Date Filed by New Century TRS Holdings, Inc.. Hearing scheduled for 5/30/2007 at 2:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 5/23/2007. (Attachments: # (1) Notice of Application and Hearing# (2) Exhibit A# (3) Exhibit B# (4) Proposed Form of Order) (Samis, Christopher)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**W:\CXG\NC App.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=5/11/2007] [FileNumber=5630921-0]
[4d05a3e220ead17f61db8bf405f8ac92815f3c96ec0c5673a514da28b308ce779013
ea6f1eb077464aa56706f6e7b3218f22e7e7c863ef4e635ab17c3c0ec90a]]
**Document description:**Notice of Application and Hearing
**Original filename:**W:\CXG\NC notice.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=5/11/2007] [FileNumber=5630921-1]
[9ff5ed04b268cb0e028d97a4d1f60a8d090482c809c0428805934a0d6ddffcf222b6
1b9ebc1aa48fefc60f737974bc50c34aceaf9178a768c466ca620332052c]]
**Document description:**Exhibit A
**Original filename:**W:\CXG\NC Ex A.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=5/11/2007] [FileNumber=5630921-2]
[5255b0b9b5e3be6061db73c7ca6aabe47f75154ffe39f31084cdd8771d124a08314f
36741b613638f2d35b60a86e0a32791a91d04bd666908e07d9c91715e959]]
**Document description:**Exhibit B
**Original filename:**W:\CXG\NC Ex B.pdf

## ORIGINAL

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, et al., | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| | : | Re: Docket No. 642 |

### ORDER UNDER 11 U.S.C. §§ 327(e) AND 328 AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS SPECIAL REGULATORY COUNSEL FOR THE DEBTORS EFFECTIVE AS OF APRIL 16, 2007

Upon the application (the "Application") of New Century Financial Corporation and certain of its subsidiaries and affiliates, debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"), for entry of an order under 11 U.S.C. §§ 327(e) and 328 authorizing the employment of Skadden, Arps as special regulatory counsel for the Debtors effective as of the Petition Date;[1] and the Court having reviewed the Application and the Davis Declaration and the Court being satisfied with the representations made in the Application and the Davis Declaration that the employment of Skadden, Arps in these cases is in the best interests of the Debtors and their estates and that Skadden, Arps does not hold or represent any interest adverse to the Debtors or to their estates with respect to the matters on which Skadden, Arps is being employed; and due and sufficient notice of the Application having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Application.

RLF1-3165639-1

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is GRANTED.

2.      Under 11 U.S.C. §§ 327(e) and 328, the Debtors are authorized to employ Skadden, Arps as their special regulatory counsel effective as of April 16, 2007 on the terms set forth in the Application.

3.      Skadden, Arps shall be compensated for its services and reimbursed for any related expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

4.      Skadden, Arps is authorized to apply the Retainer to pay any fees, charges, costs, or expenses relating to services rendered to the Debtors prior to the Petition Date that remain unpaid and to hold any remaining portion of the Retainer for application to allowed amounts owed under Skadden, Arps' final fee application in these cases.

5.      Subject to the agreement of the Official Committee of Unsecured Creditors or a further order of this Court, the aggregate amount of compensable fees incurred by Skadden, Arps after May 31, 2007 in these chapter 11 cases shall not exceed $230,000.00.

6.      This Court shall retain exclusive jurisdiction to construe and enforce the terms of the Application and this Order.

Dated: June 15, 2007
           Wilmington, Delaware

HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

493049-Wilmington Server 1A - MSW
RLF1-3165639-1