# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | ) ) ) | Case No. 07-10416 (KJC) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |
| | ) | Related to Docket No. 3612 |
| | ) ) | |
| | ) ) ) | Hearing Date:      11/20/07 at 10:30 a.m.<br>Objection deadline:  11/13/07 at 4:00 p.m. |

## LIMITED OBJECTION OF RUBIO CLAIMANTS TO THE MOTION OF DEBTORS-IN-POSSESSION PURSUANT TO SECTIONS 362 AND 363 OF THE BANKRUPTCY CODE, TO AUTHORIZE TERMINATION OF CAPTIVE INSURER'S REMAINING OBLIGATIONS UNDER CAPTIVE INSURANCE CONTRACTS, PERMIT SETOFF AND GRANT RELATED RELIEF

Daniel J. Rubio, John Hicks and David Vizcarra, individuals on behalf of themselves, all others similarly situated and the general public (collectively "Rubio Claimants"), hereby make a limited objection to the motion of debtors-in-possession pursuant to sections 362 and 363 of the Bankruptcy Code, to authorize termination of captive insurer's remaining obligations under captive insurance contracts, permit setoff, and grant related relief (the "Motion") and request that either (1) the Motion be denied, or in the alternative, (2) that the amount of $1,000,000.00 be

---

[1] The "Debtors" or "New Century" are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex LLC, a Delaware limited liability company; Ncoral, L.P. a Delaware limited partnership.

retained by NCMC Insurance and segregated for the purpose of defending, settling, or paying the claims of the Rubio Claimants, or in the alternative, (3) that NCMC Insurance provide an accounting to this Court identifying all known claimants to the assets of NCMC Insurance, and that such amounts be segregated for the purpose of defending, settling, or paying the claims of the known claimants of NCMC Insurance, including but not limited to the claims of the Rubio Claimants. In support of the limited objection, the Rubio Claimants, state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the Motion and this Objection under 28 U.S.C. §157 and §1334. Venue is proper under 28 U.S.C. §1408 and §1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2).

## BACKGROUND

2. On March 21, 2005, prior to the Petition Date, the Rubio Claimants commenced a lawsuit in California state court against Debtor New Century Mortgage Corporation. On August 29, 2006, Debtor New Century Mortgage Corporation removed the action to the United States District Court, Central District of California (hereinafter "California District Court"), <u>Daniel J. Rubio, et. al. v. New Century Mortgage Corporation</u>, Case No. 06-811 CJC (AJWx) (hereinafter the "Rubio Action").

3. The Rubio Action proceeded for approximately two years up until the Petition Date, at which time the Rubio Action was stayed as a result of the automatic stay provided by section 362(a) of the Bankruptcy Code.

4. On April 3, 2007, this Court entered an "Order Authorizing the Debtors and Debtors In Possession to (I) Continue All Insurance Policies and Agreements Relating Thereto, Etc." (Dkt. No. 50). This first day motion by the Debtors was granted.

5.  On May 11, 2007, the Rubio Claimants filed a motion for relief from the automatic stay (Dkt. No. 635) requesting that the Court lift the automatic stay to allow the Rubio Action to proceed in the California District Court. The motion for relief from the automatic stay requested that the Court lift the automatic stay in order to allow the Rubio Action to proceed in the California District Court to pursue available insurance coverage and to liquidate the claims of the putative class members. The Debtors filed a response to the motion for relief from the automatic stay (Dkt. No. 945), in which the Debtors requested that the Court deny the motion to lift the stay. On June 27, 2007, the Rubio Claimants and the Debtors entered into a Stipulation for Limited Relief from the Automatic Stay Between Debtors and Daniel J. Rubio, John Hicks and David Vizcarra, Individuals on Behalf of Themselves, All Others Similarly Situated and the General Public ("Stipulation for Limited Relief from Stay"), in which the Debtors and Rubio Claimants stipulated that the stay would be lifted in order to allow a fifth amended complaint to be filed in the Rubio Action and for the Debtors to tender the fifth amended complaint to their Employment Practices Liability Insurance ("EPLI") and Directors and Officers Insurance ("D&O") insurance carriers in order to attempt to obtain coverage for the allegations in the fifth amended complaint. The Stipulation for Limited Relief from Stay also provided that the parties reserved all of their rights with respect to the motion for relief from the automatic stay and the response filed by the Debtors and requested that the Court continue the motion for relief from the automatic. (*See,* Stipulation for Limited Relief from Stay, Dkt. No. 1685). On June 28, 2007, the Court entered its Order approving the Stipulation for Limited Relief from Stay (Dkt. No. 1722). The motion for relief from the automatic stay has been continued several times by agreement to allow sufficient time for a response from the insurance carriers. The motion is now set for hearing on December 5, 2007.

6. In their opposition to the motion for relief from the automatic stay, the Debtors argued that "New Century does not presently have indemnity for fees in the [Rubio Action]." (See, Debtors' response to motion for relief from the automatic stay at page 2, second paragraph, Dkt. No. 945). The Debtors' response to the motion for relief from the automatic stay also argued that defense costs in the Rubio Action "...are not currently being covered." (See, Debtors' response to the motion for relief from the automatic stay at page 3, second paragraph, Dkt. No. 945). In the Debtors' response to the motion for relief from the automatic stay, the Debtors discussed the involvement of NCMC Insurance, a.k.a. the "Captive" stating that the Captive:

> "...served as an employment practices liability insurance program to assist in indemnification of a portion of the Debtors' applicable insurance policy deductible and/or self-insured retention. However, a substantial question exists as to whether the Captive would provide coverage for the Rubio Action, particularly in light of the facts that (i) the Captive is self-funded, (ii) New Century's Captive insurance EPLI policy excludes coverage of multiple claimants wage and hour disputes, and (iii) New Century's EPLI carrier has not provided a defense in response to the Debtors' tendering the claim to the carrier in light of the policies exclusion of wage and hour claims." [This denial refers to the claim made by the Debtors' before the filing of the fifth amended complaint in the Rubio Action]. (See, Debtors' response to motion for relief from the automatic stay at page 7, second paragraph, Dkt. No. 945).

7. The Debtors argued in their response to the motion for relief from the automatic stay that granting of the motion would threaten to disrupt the orderly administration of the estate, diminish estate assets and "provide unequal treatment of creditors...[which] is precisely the scenario that the automatic stay is intended to prevent." (See, Debtors' response to motion for relief from the automatic stay at page 7, third paragraph, Dkt. No. 945).

8. The Debtors further argued in opposition to the motion for relief from the automatic stay that New Century would be prejudiced and that "the potential existence of

4

insurance does not moot the issue, as (i) coverage is uncertain at best, (ii) even if coverage applies, it is subject to a very large self-insured retention, and (iii) given the potential size of the class, an adverse judgment could exhaust policy limits." (See, Debtors' response to motion for relief from the automatic stay at page 10, Dkt. No. 945). The Debtors further stated in their response that "…even if there ultimately is insurance on this claim through the EPL policy…such coverage would be subject to a very large self-insured retention. The practical result is that the Debtors would bear the defense costs, which will be expensive…." (See, Debtors' response to motion for relief from the automatic stay page 11, third paragraph, Dkt. No. 945).

9. On June 8, 2007, Debtors filed their motion for entry of an order establishing bar dates for filing proofs of claim and approving the form, manner and sufficiency of notice thereof (the "Bar Date Motion") (Dkt. No. 1173) requesting that the Court set August 31, 2007, as the General Bar Date.

10. On June 28, 2007, the Rubio Claimants filed a motion for an order granting leave to file a class proof of claim (Dkt. No. 1723). On July 12, 2007, the Debtors and the Rubio Claimants entered into a stipulation for leave to file class proof of claim (Dkt. No. 1897). On July 12, 2007, this Court entered its Order approving the stipulation between Debtors and the Rubio Claimants to allow a class proof of claim. (Dkt. No. 1909).

11. On August 27, 2007, the Rubio Claimants filed a class proof of claim in the amount of $67,115,128.13. As required, the Rubio Claimants filed this identical class proof of claim against the three separate debtor entities against which the claim is made, including: New Century Mortgage Corporation, New Century Financial Corporation and Home123 Corporation.

## SUMMARY OF RUBIO ACTION FILED BY RUBIO CLAIMANTS

12.   The Rubio Action was brought as a class action on behalf of approximately 1600 individuals employed as loan officers in California by Debtor New Century Mortgage Corporation. As of June 15, 2005, Debtor New Century Mortgage Corporation stated in its interrogatory responses that the putative class comprised 1,278 employees (*See*, Defendant New Century Mortgage Corporation's Responses To Plaintiff's First Set of Special Interrogatories, pg. 4, lns. 5-6, attached as Exhibit A to the motion to allow class proof of claim, Dkt. No. 1723). On December 28, 2006, in response to a motion to compel, New Century produced a class list with 1,541 individuals (*See*, December 28, 2006 letter from New Century's counsel and pages 1 and 86 of the class list attached collectively as Exhibit B to the motion to allow class proof of claim, Dkt. No. 1723). Due to the passage of time and turnover, Rubio Claimants are informed and believe that the size of the putative class in the Rubio Action has increased from the 1,541 as represented by Debtor New Century Mortgage Corporation in the class list it produced.

13.   The Rubio Action alleges statutory wage and hour claims and common law violations under California law and the Fair Labor Standards Act as a predicate violation of the California Unfair Competition Law (<u>Business & Professions Code</u> §17200 et. seq.). The Rubio Action seeks recovery of unpaid overtime wages and compensation for failure to provide statutorily mandated meal and rest periods, as well as related statutory violations. (See, proposed Fifth Amended Complaint, attached as Ex. 1 to the Reply in Support of the Motion for Relief from the Automatic Stay, Dkt. No. 1195).

14.   Pursuant to the Order Granting Limited Relief from the Automatic Stay, the fifth amended complaint in the Rubio Action was filed on July 6, 2007. The fifth amended complaint includes causes of action for, among others, common law violations including misrepresentation,

promissory estoppel and wrongful failure to enforce corporate policies, which are expressly within the coverage provided by the Debtors' EPLI policy issued by MaxRe.

16. Pursuant to the Stipulation for Limited Relief from Automatic Stay, the Debtors and the Rubio Claimants agreed to allow the filing of the fifth amended complaint in the Rubio Action, for the purpose of tendering the fifth amended complaint to the EPLI and D&O insurance carriers "for the purpose of attempting to obtain insurance coverage for the claims in the fifth amended complaint." (See, Stipulation for Limited Relief from Automatic Stay ¶1, Dkt No. 1685).

## ARGUMENT

### A. NCMC Insurance Must Resolve Its Known Claims, Such As The Claims Of The Rubio Claimants, Before It Is Dissolved

16. Under Hawaii corporate law, the known claims against a captive insurance company, such as NCMC Insurance, must be resolved before assets are distributed to stockholders. The scenario which Debtors propose in their motion is an end run around the appropriate dissolution procedure. Claimants such as the Rubio Claimants that have a claim against NCMC insurance must be addressed before the company is dissolved, and before the net assets of the company are distributed to the stockholders.

17. Hawaii Insurance Code §431:19-106(h) provides that: "Captive insurance companies formed under this article, except for pure nonprofit captive insurance companies, shall have the privileges and be subject to the general corporation law, as well as this article. Subsection (i) provides that: "Pure nonprofit captive insurance companies formed under this article shall have the privileges and be subject to the nonprofit corporation law, as well as this article."

18. The Hawaii general corporation law and the Hawaii nonprofit corporation law both include a mechanism for the orderly dissolution of a corporation, including notice to creditors of the corporation, an opportunity for the creditors of the corporation to make a claim, and after such claims against the corporation are resolved, the net assets of the corporation may then be distributed to the stockholders.

19. The Hawaii general corporation law provides at Hawaii Business Corporation Act, §414-385(a)(3) that a dissolved corporation continues its corporate existence to wind up and liquidate its business and affairs including "discharging or making provision for discharging its liabilities." Hawaii Business Corporation Act section 414-386 sets forth a mechanism for resolving known claims against a dissolved corporation including notice to claimants and the opportunity for claimants to make a claim. In a judicially supervised corporate dissolution the Hawaii Business Corporation Act provides that "The court shall direct the winding up and liquidation of the corporation's business and affairs in accordance with Section 414-385 and the notification of claimants in accordance with sections 414-386 and 414-387 (Hawaii Business Corporation Act section 414-414).

20. The Hawaii nonprofit corporation law provides for similar notice to claimants and opportunity for claimants to make a claim before a corporation is dissolved. The Hawaii Nonprofit Corporations Code section 414(D)-241 describes the mechanism for dissolution by directors, stating that the directors "...shall adopt a plan of dissolution indicating to whom the assets owned or held by the corporation will be distributed **after all creditors have been paid**." The Hawaii Nonprofit Corporation Code section 414(D)-425 provides that a dissolved corporation continues its corporate existence to wind up and liquidate its affairs including "discharging or making provision for discharging its liabilities and obligations." (Subsection

(a)(2)). Section 414(D)-246 of the Hawaii Nonprofit Corporations Code provides a mechanism for resolving known claims against the dissolved corporation similar to section 414-386 under the general corporation law described above. In a judicially supervised dissolution, the Hawaii Nonprofit Corporations Code section 414(D)-255 provides a similar mechanism for the liquidation for the corporation's affairs including "notification of [the corporation's] claimants in accordance with sections 414(D)-246 and 414(D)-247."

21.   The motion by the Debtors fails to inform this Court whether or not the requirements of the Hawaii Insurance Code, the general corporation law, or the nonprofit corporation law have been followed with respect to the dissolution of NCMC Insurance. It appears that the mechanism proposed by the Debtors would likely prevent known claimants, such as the Rubio Claimants, from making a claim against NCMC Insurance before it is dissolved and before its assets are stripped away, by the proposed conveyance to the Debtors, its sole stockholder. Since this procedure is not authorized by the Hawaii general corporation law or the nonprofit corporation law, it should not be approved by this Court, and the motion should be denied.

22.   The motion indicates that the deductibles covered by NCMC Insurance were $500,000.00 in the 2004-2005 policy year and in the 2006-2007 policy year were $1,000,000.00. The Rubio Action was filed in March 2005, and the fifth amended complaint was filed July 6, 2007, within the 2006-2007 policy year when the deductible covered by NCMC Insurance was $1,000,000.00. Therefore, in order to adequately "reserve" for the Rubio Action, the amount of $1,000,000.00 should be segregated by NCMC Insurance and designated to defend, settle, or pay the claims of the Rubio Claimants.

23.     The Debtors argue that reimbursement to the Debtors for money they have to pay to tort or other plaintiffs because of a settlement or judgment "no longer is an issue because these now are unsecured claims." In making this argument, Debtors claim that the filing of this bankruptcy proceeding has altered the terms of the Captive Insurance policies. However, the sample Captive Insurance Policy attached as Exhibit A to the Debtors' motion expressly states: "Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this policy." (Exhibit A to Debtors' motion, page 12, paragraph J). Nevertheless, whether the Rubio Claimants, or any other third party, has a valid claim against NCMC Insurance cannot properly be resolved in this motion. The appropriate forum for the resolution of these issues would be in an orderly dissolution of NCMC Insurance, <u>before</u> its assets have been stripped away.

### B.     The Motion Proposes Unequal Treatment Of Creditors By Satisfying 100% of NCMC's Proof Of Claim

24.     NCMC Insurance holds a claim in the form of a note against one of the Debtors in the principal amount of $1,562,143.00 (See, Debtors' Motion paragraph 10). This is a general unsecured claim. The mechanism proposed by the Debtors in their motion argues that "The estate benefits from the setoff because NCMC's proof of claim will be satisfied by the setoff." (See, Debtors' motion). In essence, NCM's proof of claim represented by the note will be satisfied 100% if this motion is approved. Unless the Debtors can represent to this Court that other unsecured creditors will also be satisfied 100%, then what Debtors are proposing would result in the unequal treatment of creditors with the claim of NCM Insurance, which is wholly owned by the Debtors being satisfied 100%.

10

25. One of the primary policies underlying the automatic stay is that it will allow a system to be implemented where all creditors will be treated equally. <u>University Med. Center v. Sullivan (In re Univ. Med. Center)</u>, 973 F.2d 1065, 1073 (3rd Cir. 1992).

26. The Debtors cannot represent to this Court that other unsecured creditors will also be satisfied 100%. Yet, that is the treatment proposed to be given to NCMC Insurance, which is a wholly owned subsidiary of Debtor New Century Mortgage Corp. Accordingly, the motion should be denied, or adequate funds should be segregated to allow for satisfaction of the claims of the Rubio Claimants and other known creditors of NCMC Insurance.

## **CONCLUSION**

WHEREFORE, the Rubio Claimants respectfully request that this Court either (1) deny the Motion, or in the alternative, (2) order that the amount of $1,000,000.00 be retained by NCMC Insurance and segregated for the purpose of defending, settling, or paying the claims of the Rubio Claimants, or in the alternative, (3) that NCMC Insurance provide an accounting to this Court identifying all known claimants to the assets of NCMC Insurance, and that such amounts be segregated for the purpose of defending, settling, or paying the claims of the known claimants of NCMC Insurance, including but not limited to the claims of the Rubio Claimants.

Dated: November 13, 2007

CONNOLLY BOVE LODGE & HUTZ LLP

Karen C. Bifferato (No. 3279)
Marc J. Phillips (No. 4445)
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
Email: kbifferato@cblh.com
Email: mphillips@cblh.com

-and-

James M. Trush, Esq. (SBN 140088)
TRUSH LAW OFFICE
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7187
Telephone:  (714) 384-6390
Facsimile:   (714) 384-6391

*Attorneys for Daniel J. Rubio, John Hicks, David Vizcarra, individuals on behalf of themselves, all others similarly situated and the general public ("Rubio Claimants")*

#575820