**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, <u>et al.</u>,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Hearing Date: December 5, 2007 @ 1:30 p.m. |
| | : | Objection Deadline: November 28, 2007 @ 4:00 p.m. |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION**
**PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) FOR AN ORDER**
**ENFORCING THE AUTOMATIC STAY AGAINST THE**
**INTERNAL REVENUE SERVICE AND GRANTING RELATED RELIEF**

New Century Financial Corporation ("NCF"), a Maryland corporation, New
Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and
indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by
and through their undersigned counsel, hereby submit this motion (the "Motion") for entry of an
order, pursuant to Sections 105(a) and 362(a) of Title 11 of the United States Code (the
"Bankruptcy Code"), enforcing the automatic stay against the Internal Revenue Service (the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation

"Service")[2] and directing the Service to release the Debtors' Tax Refund (as defined below) without further delay. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A.    Chapter 11 Cases

1.    NCF was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCF originated, purchased, sold, and serviced mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans.

---

[2] The Service has filed multiple proofs of claim against the Debtors' bankruptcy estates, and therefore, has submitted to this Court's jurisdiction. See, e.g., Logan v. Credit Gen. Ins. Co. & Credit Gen. Indem. Co. (In re PRS Ins. Group, Inc.), 331 B.R. 580, 586 (Bankr. D. Del. 2005)(quoting 11 U.S.C. § 106(b))(noting that "when a governmental unit files a proof of claim, sovereign immunity is deemed to be waived 'with respect to a claim *against* such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose'")(emphasis in original)

2.    The "Wholesale Division," which was contained within New Century Mortgage Corporation ("NCMC"), originated and purchased loans through a network of independent mortgage brokers and correspondent lenders. As of December 31, 2006, the Wholesale Division (1) had approved more than 57,000 independent mortgage brokers for submission of loan applications, (2) operated through 34 regional operating centers located in 20 states, and (3) employed approximately 1,087 account executives. The broker's role in this process was to identify the applicant, assist in completing the loan application form, gather necessary information and documents and serve as the Debtors' liaison with the borrower. Correspondent lenders are independent mortgage bankers and financial institutions that sell loans that have already been funded. For 2006, the Wholesale Division was responsible for approximately 85% of the loans originated by the Debtors.

3.    The "Retail Division," which operated under Home123 Corporation, originated loans through direct contact with consumers, including through referrals from builders, realtors, and other third parties. As of December 31, 2006, the Retail Division was supported by 262 branch offices and three central telemarketing units employing approximately 1,702 retail loan officers. For 2006, the Retail Division originated approximately 15% of the loans produced by the Debtors.

4.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief and the Debtors' bankruptcy cases are being jointly administered pursuant to an order of the Court. The Debtors are operating their businesses and managing their affairs as debtors and debtors-in-possession.

**B.**    **The Tax Refund**

5.    A corporate taxpayer that sustains a net operating loss in a tax year is entitled to carry that loss back to a prior taxable year in which the taxpayer operated at a profit, and reduce the taxable income in that prior year. See 26 U.S.C. § 172. The reduction to taxable income in the prior year results in a reduction in tax due for that year, and a corresponding refund to the taxpayer. The taxpayer claims such a refund by filing a Form 1139 Application or Tentative Refund ("Form 1139") with the Service pursuant to Section 6411 of Title 26 of the United States Code (the "Tax Code"). Section 6411 of the Tax Code allows the Service to make a "limited examination" of a Form 1139 "to discover omissions and errors of computation." See 26 U.S.C. § 6411(b). In general, unless there is a material omission or a computational error that is not capable of correction, the Service must issue the refund to the taxpayer within 90 days of the date the taxpayer filed its Form 1139.

6.    On July 17, 2007, pursuant to and in accordance with Section 6411 of the Tax Code, the Debtors submitted a Form 1139 to the Service. On its Form 1139, the Debtors claimed a net operating loss carryback from the 2006 taxable year to the 2004 taxable year, thereby resulting in an allowable tax refund for the 2004 taxable year in the amount of approximately $66 million (the "Tax Refund"). Currently, the Tax Refund is reflected by the Service on the Debtors' transcript of account as being allowed and credited to their account.

7.    Notwithstanding the Debtors' proper and timely submission of their Form 1139[3] and the crediting by the Service of the Tax Refund to the Debtors transcript of account, the

---

[3]  It should be noted that 26 C.F.R. §§ 1.6411-3 and 1.6411-3T (the "Regulations") apparently provide an alternative date by which the Service must act on a Form 1139 application--namely, 90 days from the last day of the month in which the taxpayer is required to file its tax return (the Debtors received an extension until September 15, 2007 to file their tax returns). See 26 C.F.R. §§ 1.6411-3 and 1.6411-3T. To the extent the Regulations would permit the Service a period longer than 90 days from the filing of Form 1139, the Debtors believe that the
(Continued)

4

Service has failed to release the Tax Refund to the Debtors. Instead, the Service appears to be claiming that it is entitled to withhold the Tax Refund based upon very recently issued temporary regulations[4] that seek to change to the Service's long held interpretation of Section 6411 of the Tax Code. As explained more fully below, it is a violation of Section 7805(b) of the Tax Code for the Service to attempt to issue a regulation that has retroactive effect absent certain circumstances (none of which are present here). Therefore, neither the New Regulations themselves, nor the explanatory Revenue Rulings (as defined below) issued contemporaneously with the New Regulations, can support the Service's withholding of the Tax Refund from the Debtors. In addition, the Service's failure to release the Debtors' Tax Refund is a violation of Section 362(a)(3) of the Bankruptcy Code.

### Relief Requested

8.    Pursuant to Sections 105(a) and 362(a)(3) of the Bankruptcy Code, the Debtors seek the entry of an order enforcing the Debtors' automatic stay and directing the Service to release the Tax Refund without further delay.

### Bases for Relief Requested

9.    The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. See MidAtlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986); see also Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991)(noting that the "automatic stay is a central concept in bankruptcy law"). It is designed "to prevent the dissipation or diminution of the [debtor's] assets during the pendency" of a debtor's

---

Regulations are inconsistent with Section 6411, and thus, not valid. Nevertheless, it has been the course of conduct of the Service to remit a requested refund within 90 days of the filing of a taxpayer's Form 1139 application.

[4] The New Regulations (as defined below), were issued approximately one month after the Debtors submitted their Form 1139 to the Service.

bankruptcy case. Paden v. Union for Experimenting Colleges and Univs., 7 B.R. 289, 290 (N.D. Ill. 1980).

        10.    The automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate.*" 11 U.S.C. § 362(a)(3)(emphasis supplied); see also In re Golden Distributors, Inc., 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)(noting that the "key elements for a stay under 11 U.S.C. § 362(a)(3) are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate"). Further, the legislative history attendant to Section 362 and relevant caselaw "leave no doubt that the scope of the automatic stay is broad." Krystal Cadillac Oldsmobile GMC Truck, Inc. v. General Motors Corp. (In re Krystal Cadillac Oldsmobile GMC Truck), 142 F.3d 631, 637 (3d Cir. 1998).

        11.    Additionally, pursuant to Section 105(a) of the Bankruptcy Code, "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" thereunder. 11 U.S.C. § 105(a). The purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 at 105-6 (15th ed. 1999)(collecting cases). This is consistent with the broad equitable powers and authority of the bankruptcy courts. See, e.g., United States v. Energy Resources Co., Inc., 495 U.S. 545, 549 (1990). Among those equitable powers is the bankruptcy court's broad ability to enforce a stay or compel the rightful return of a debtors' property. See, e.g., Sonse v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys., Inc.), 108 F.3d 881, 885 (8th Cir. 1997)(noting that "bankruptcy courts have broad equitable powers to remedy violations of the automatic stay that injure a corporate debtor's estate").

12.     Here, the Debtors have complied with the requirements set forth in the applicable sections of the Tax Code and have timely and properly submitted their Form 1139, thereby entitling them to receive the Tax Refund immediately, as the 90-day period allowed by Section 6411 of the Tax Code has expired.  Notwithstanding the Debtors' compliance with the Tax Code and the applicable procedures necessary to obtain the Tax Refund, the Service is wrongfully withholding payment of the Tax Refund from the Debtors in direct contravention of the Tax Code and the Bankruptcy Code.

A.     **The Service's Violation of the Tax Code**

13.     Section 6411 of the Tax Code allows the Service to offset a refund against any tax <u>assessed</u> and unpaid for the year to which the carryback is applied and also for the "unsatisfied amount of any tax from the taxable year immediately preceding the taxable year of the net operating loss. . . ."  26 U.S.C. § 6411(b) (attached hereto as Appendix A); <u>Rev. Rul.</u> 78-369, 1978-2 C.B. 324, 1978 WL 42239 (1978) (attached hereto as Appendix E); <u>see also</u> <u>Belgard v. United States</u>, 232 F. Supp. 265, 268 (W.D. La. 1964).  Thus, the Tax Code strictly limits the Service's right of setoff against a tentative refund to specific tax years with "unpaid" or "unsatisfied" tax liabilities, which the Service has recognized, until just recently, means <u>assessed</u> liabilities.  <u>Rev. Rul.</u> 78-369.  For example, in <u>Rev. Rul.</u> 78-369, the Service ruled that a tentative refund claimed in a Form 1139 <u>must</u> be allowed (assuming no errors in computation) even though a deficiency had been <u>proposed</u> (but not assessed) for the year to which the loss was being carried.  See <u>Rev. Rul.</u> 78-369.[5]

14.     In this case, the situation is even more compelling for the Debtors, because no deficiency has been proposed for the taxable years currently under audit.  Moreover, other

than with respect to certain employment taxes that were incorrectly assessed by the Service, the Debtors have no assessed and unpaid tax liabilities.[6] Thus, under the plain language of Section 6411 of the Tax Code and the Service's consistent interpretation of that provision for almost 30 years, the scheduled Tax Refund of $66 million should be released to the Debtors immediately.

15.     The Service, however, appears to be withholding the scheduled Tax Refund based upon a new and radical change to its longstanding interpretation of Section 6411. Specifically, on August 27, 2007 (more than a month following the Debtors' submission of their Form 1139), the Service issued proposed and temporary regulations amending the existing regulations under Section 6411 of the Tax Code (26 C.F.R. §§ 1.6411-2T and 1.6411-3T, attached hereto as Appendix C & D, respectively, and collectively, the "New Regulations") to allow, in effect, for a setoff (or freeze) of tentative refund amounts against proposed (but unassessed) liabilities set forth in a proof of claim filed in a bankruptcy case. Id. More specifically, Section 1.6411-3T(d)(1)(iii) provides that an "unpaid amount" now means both assessed liabilities and unassessed liabilities listed in a proof of claim filed in a bankruptcy case.[7] Id. at 1.6411-3T(d)(1)(iii).

16.     These New Regulations, however, are applicable only to applications for tentative refunds (i.e., Form 1139 requests) filed after August 27, 2007, which was the filing date of the New Regulations in the Federal Register. See 26 C.F.R. 1.6411-3T(e)("These regulations

---

[5] In addition, in the fact pattern that led to Rev. Rul. 78-369, it was anticipated that the current examination of the loss year would eliminate the net operating loss carryback at issue.

[6] The Debtors have been working with the Service to resolve the employment taxes that were previously assessed by the Service against the Debtors and were listed in one of the Service's proofs of claim. The Debtors believe that they have provided all of the information necessary to resolve this disputed claim and that the Service will shortly file an amended claim withdrawing this asserted tax obligation.

[7] This new provision also provides an effective offset of a tentative refund for unassessed liabilities "determined in a statutory notice of deficiency" and "other unassessed liabilities in rare and unusual circumstances." See Rev. Rul. 2007-53 (a copy of which is attached hereto as Appendix H).

apply with respect to applications for tentative refund filed on or after August 27, 2007"). Therefore, because the Debtors filed their Form 1139 on July 17, 2007, the New Regulations do not alter the Debtors' immediate entitlement to the Tax Refund.

17.    Despite the express provision in Section 1.6411-3T(e) making the New Regulations prospective in the nature, the Service attempts to cloud this mandate by stating in the preamble to the New Regulations (T.D. 9355, "Proposed Effective Date") that "no implication is intended concerning whether or not a rule to be adopted in these regulations is applicable law for applications--i.e., Forms 1139--filed prior to that date." Of course, the "applicable law" for Form 1139 applications filed prior to August 27, 2007, to the extent that there was any applicable law, would be Rev. Rul. 78-369, which precludes the reduction or withholding of a tax refund on account of an unassessed liability.

18.    Moreover, as the Service well knows, retroactivity of regulations is generally precluded by Section 7805(b) of the Tax Code. See 26 U.S.C. § 7805(b)(attached hereto as Appendix B). That section requires that regulations generally be prospective and, therefore, effective only from the date of their filing in the Federal Register, except in circumstances not here applicable. Id. For example, where the public received advance notice of the Service's position, Section 7805(b) permits a regulation to be made retroactive to the date of the initial public notice. Here, the Service's published position at the time it issued the New Regulations, Rev. Rul. 78-369, was opposite to the position adopted in the New Regulations. It is wholly inappropriate for the Service to assert, as it appears to be doing, that a combination of the New Regulations and the contemporaneous issuance of the Revenue Rulings (which are discussed immediately below) cause the New Regulations to have retroactive effect. As stated

9

above, this attempt at retroactive rulemaking is directly contrary to Section 7805(b) of the Tax Code.

19.    As part of its attempt to impose a retroactive rule, the Service issued <u>Rev. Rul.</u> 2007-52, which asserts that, in a bankruptcy case, "a properly filed proof of claim identifying a tax liability constitutes *prima facie* evidence of the existence and amount of that liability." <u>Rev. Rul.</u> 2007-52, 2007-37, 2007 WL 2405238 (attached hereto as Appendix G). This new revenue ruling reversed the Service's prior interpretation of the meaning of "liability" or "unpaid amount" (which required such "liability" or "unpaid amount" to be assessed) to include an amount set forth on a proof of claim filed in a bankruptcy case. <u>Rev. Rul.</u> 2007-52.[8] Additionally, without discussing the requirements of Section 6411 in making tax refunds and the limitations on the Service's right to withhold such tax refunds, the Service simply relies on the general offset authority of Section 6402 of the Tax Code to support its ruling.[9] <u>Id.</u>

20.    In addition, on this same date, the Service issued a companion ruling, <u>Rev. Rul.</u> 2007-53, specifically revoking <u>Rev. Rul.</u> 78-369. <u>Rev. Rul.</u> 2007-53, 2007-37, 2007 WL 2405239 (attached hereto as Appendix H) (<u>Rev. Rul.</u> 2007-52 and <u>Rev. Rul.</u> 2007-53 are collectively referred to herein as the "Revenue Rulings").

21.    Simply put, the Service's actions in this case ignore the requirements of Section 6411 of the Tax Code, which requires the Service to release the Tax Refund to the Debtors by October 15, 2007 (the 90th day following the Debtors' submission of their Form 1139) and is also in direct contravention of Section 7805(b) of the Tax Code, which prohibits

---

[8] This revenue ruling specifically acknowledges, however, that it "does not address bankruptcy issues that could affect the timing or allowance of the Service's right to credit overpayments and decreases in tax against other liabilities, such as the bankruptcy automatic stay." <u>Rev. Rul.</u> 2007-52 (citing 11 U.S.C. § 362).

retroactive rulemaking in these circumstances.    Accordingly, the Service's shift in position should not be sustained. Rather, the Service's long-standing interpretation of the requirements of Section 6411 (as set forth in <u>Rev. Rul.</u> 78-369, <u>supra</u>) was correct 30 years ago and remained correct at least through August 27, 2007, if not through today. <u>See</u>, <u>e.g.</u>, <u>United States v. Heilig-Meyers Co.</u>, 2003 U.S. Dist. LEXIS 3216, at *11-12 (E.D. Va. Feb. 10, 2003)(finding that the Service violated the debtors' automatic stay by setting off against an unassessed tax liability); <u>see also</u> <u>United States v. Conston, Inc. (In re Conston, Inc.)</u>, 181 B.R. 769 (D. Del. 1995)(citing 26 U.S.C. § 6501)(noting that "[a]bsent voluntary payment, the IRS has no statutory power to collect a tax, including a corporate income tax, until the IRS makes a valid assessment"). Thus, the Service is withholding property of the Debtors' estate in contravention of the Tax Code and the Bankruptcy Code, and, accordingly, should be directed to release the Tax Refund to the Debtors without further delay.

**B.**    **The Service's Violation of the Automatic Stay**

22.    As set forth above, before the 2005 amendments to the Bankruptcy Code (the "BAPCPA Amendments"), bankruptcy courts consistently found that the Service must assess a tax liability before it may setoff against any pending refunds.  For the reasons set forth below, the BAPCPA amendments, and specifically, the new Section 362(b)(26), do not change this longstanding analysis.

23.    More specifically, any attempt on the part of the Service to argue that it is entitled to setoff or to withhold the Tax Refund based upon Section 362(b)(26) of the Bankruptcy Code is without merit.  In order for the Service to be entitled to utilize the exception

---

[9] Interestingly, the Service does note in <u>Rev. Rul. 2007-52</u> that "neither Section 6402 nor the associated regulations specify when 'any liability' arises for purposes of determining when the Service may credit an
(Continued)

contained in Section 362(b)(26), it must establish that there is either an assessed liability or a "pending action" between the parties over the Debtors' outstanding tax liability. Here, there is neither an assessed liability, nor a "pending action" with respect to any alleged tax liability of the Debtors. Furthermore, the simple filing of a proof of claim by the Service in these cases does not qualify as a "pending action" for purposes of Section 362(b)(26).

24. As noted above, Section 362(a)(3) of the Bankruptcy Code prohibits a non-debtor from exercising control over property of a debtor's estate. 11 U.S.C. § 362(a)(3). Section 362(b)(26), which provides an exception to Section 362(a), provides, in relevant part, that the automatic stay does not apply to "the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a *pending action* to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action. . . ." 11 U.S.C. § 362(b)(26) (emphasis supplied).

25. Any attempt on the part of the Service to argue that it is entitled to withhold the Tax Refund based upon Section 362(b)(26) of the Bankruptcy Code is without merit. In order for the Service to be entitled to utilize the new exception contained in Section 362(b)(26), it must establish that there is a "pending action" between the parties over the Debtors' outstanding tax liability. Here, there is no "pending action" with respect to any alleged tax liability of the Debtors and the simple filing of a proof of claim by the Service in these cases does not qualify as a "pending action" for purposes of Section 362(b)(26).

---

overpayment "

26.     As Section 362(b)(26) is a relatively new addition to the Bankruptcy Code, not surprisingly, the Debtors could locate no caselaw on the issue of what constitutes a "pending action" for purposes this section, and, more specifically, whether the filing of a proof of claim in a bankruptcy case constitutes a "pending action" under that section. That being said, outside of the context of Section 362(b)(26), courts have considered whether the filing of a proof of claim constitutes an action.  For instance, in <u>Bozich v. Internal Revenue Service (In re Bozich)</u>, 1996 WL 870716 (Bankr. D. Ariz. Dec. 11, 1996)[10], the court held that simply filing "a proof of claim does not constitute the commencement of a civil action.  In federal courts, '[a] civil action is commenced by filing a *complaint*.'"  <u>Bozich v. Internal Revenue Service (In re Bozich)</u>, 1996 WL 870716, at *3 (Bankr. D. Ariz. Dec. 11, 1996)(quoting Fed. R. Civ. P. 3)(emphasis supplied by court; <u>see also</u> In re Schaffner, 267 F. 977, 979 (2d Cir. 1920) (noting that "a proof of claim is not an action at law or in equity. . . .").  The <u>Bozich</u> court further noted that "[a] proof of claim is not a complaint; rather, it is the vehicle by which a creditor makes its claim known to the court and other parties in interest when a debtor declares bankruptcy, thereby enabling the court to adjudicate that claim according to the provisions of the Bankruptcy Code and the Rules of Bankruptcy Procedure." <u>Bozich</u>, 1996 WL 870716 at *3.  Finally, the court in <u>Bozich</u> noted that "[i]f anything, the filing of a proof of claim is a defensive act, taken by creditors who wish to protect their interests and right to distribution after the debtor has taken the affirmative step of filing for bankruptcy." <u>Id.</u>  Thus, the preparation and filing of a one-page proof of claim by the Service does not amount to a "pending action" for purposes of Section 362(b)(26) and should not be used by the Service as an excuse to withhold a $66 million tax

---

[10] A copy of the <u>Bozich</u> opinion is attached hereto as Appendix I.

refund due the Debtors and their estates under the express provisions of Section 6411 of the Tax Code.

27.     A plain reading of Section 362(a)(26) also reveals that the Service may only withhold a refund "pending the resolution of an *action*," it does not permit the Service to retain a refund pending the resolution of an alleged *claim*. Finally, the requirement that the "action" be "pending" suggests that the action had to have been pending as of the petition date. Logically, a proof of claim cannot be filed prior to the commencement of a bankruptcy case.

### Notice

28.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee; (ii) the Creditors' Committee; (iii) the Internal Revenue Service; (iv) the Debtors' senior secured lenders; (v) the Examiner; and (vi) all other parties who have properly filed requests for notice.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

29.     The Debtors submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice of the United States District Court for the District of Delaware, incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a).

### No Prior Request

30.     No prior request for the relief sought in this Motion has been made to this or any other court.

RLF1-3219135-10

WHEREFORE, the Debtors request that the Court enter an Order granting this Motion in the form attached hereto at <u>Exhibit A</u> and providing such other relief as the Court deems reasonable and appropriate and consistent with this Motion.

Dated: November 15, 2007
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION

RLF1-3219135-10