IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | : **Chapter 11** |
| **NEW CENTURY TRS HOLDINGS** | : **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : |
| | : **Jointly Administered** |
| **Debtors.** | : |
| | : **Objection Deadline: 11/28/07 at 4:00 p.m.** |
| | : **Hearing Date: 12/5/07 at 1:30 p.m.** |

## DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO SUPPLEMENT TO SECURITIES PURCHASE AGREEMENT BY AND BETWEEN ELLINGTON MANAGEMENT GROUP, L.L.C., ON BEHALF OF ITS CLIENT FUNDS, AND MORGAN STANLEY MORTGAGE CAPITAL INC. DATED MAY 8, 2007

New Century Financial Corporation ("NCF"), a Maryland corporation, New

Century TRS Holdings, Inc, ("New Century TRS"), a Delaware corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors" or

"New Century"), hereby submit this motion (the "Motion") for entry of an order, pursuant to

sections 105(a), 363(b), 363(f), and 363(m) of Title 11 of the United States Code (as amended

from time to time, the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002,

6004 and 9014, authorizing the Debtors to enter into a supplement to the Securities Purchase

Agreement by and between Ellington Management Group, L.L.C., on behalf of its client funds

---

[1] The debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O Corp , a California corporation; New Century R.E.O II Corp., a California corporation; New Century R.E.O III Corp., a California corporation; New Century Mortgage Ventures, LW (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P , a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation

(collectively, "Ellington"), and Morgan Stanley Mortgage Capital Inc. ("MSMCI") dated May 8, 2007, and granting related relief as described herein.

In support of the Motion, the Debtors, by and through their undersigned counsel, respectively represent as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Motion under 28 U.S.C. sections 157 and 1134. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2).

2.     The bases for the relief requested herein are sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9014.

## BACKGROUND

3.     NCF, a publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCF originated, purchased, sold, and serviced mortgage loans nationwide. NCF historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCF through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of

2

which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

4.    On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Court has entered an order authorizing the joint administration of the Debtors' bankruptcy cases for procedural purposes only. The Debtors are operating their business and managing their affairs as debtors and debtors in possession.

5.    The Debtors commenced these chapter 11 cases largely to pursue an expedited sale of their businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

## RELIEF REQUESTED

6.    By this Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m) and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9019:  (i) authorizing the Debtors to enter into a supplement (the "Supplement") to the Securities Purchase Agreement by and between Ellington and MSMCI dated May 8, 2007 (the "SPA"), (ii) authorizing New Century to sell a certain trust certificate to Spyridon Financial Corporation ("Spyridon") in accordance with the terms and conditions of the Supplement, free and clear of liens, claims, and interests, and (iii) making certain related findings as set forth below.

## BASES FOR RELIEF REQUESTED

7.    MSMCI is a party to (a) a Master Repurchase Agreement, dated as of December 12, 2005 (as amended and restated, supplemented or otherwise modified and in effect from time to time, the "MRA"), by and among (i) NC Capital Corporation ("NC Capital"), New

3

Century Mortgage Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC

Residual IV Corporation, Home123 Corporation, New Century Credit Corporation (the "Sellers"),

each of which is a Debtor, (ii) the buyers from time to time parties thereto (the "Buyers"),

including MSMCI, and (iii) MSMCI, as agent for the Buyers (the "Agent"); and (b) a related

Guaranty, dated December 12, 2005 (as amended, restated, supplemented or otherwise modified

and in effect from time to time, the "Guaranty") made by debtor New Century Financial

Corporation (the "Guarantor" and, collectively with the Sellers, the "NCFC Entities") in favor of

the Buyers.

        8.     MSMCI and NC Capital are parties to that certain Sixth Amended and

Restated Mortgage Loan Purchase and Warranties Agreement (the "Loan Purchase Agreement")

dated as of May 1, 2006, pursuant to which MSMCI agreed to purchase from NC Capital, and NC

Capital agreed to sell to MSMCI, certain mortgage loans, subject to an obligation (the "EPD

Obligation") on the part of NC Capital, at MSMCI's option, to repurchase any such mortgage loan

as to which the related mortgagor is delinquent with respect to such mortgage loan's first monthly

payment, either (a) after origination of such mortgage loan or (b) after the related closing date for

such purchase and sale.

        9.     Pre-petition, the Agent sent to the NCFC Entities a written "Notice of Event

of Default, Acceleration and Exercise of Remedies" in which the Agent, among other things,

stated that Events of Default had occurred and were continuing under the MRA and that the

Purchase Price of all then-outstanding Transactions (as defined in the MRA) was immediately due

and payable, together with other specified amounts.

        10.    Pursuant to Stipulation and Order dated April 27, 2007 (the "April 27

Stipulated Order"), MSMCI, the NCFC Entities, and the Official Committee of Unsecured

4

Creditors (the "Committee") entered into an Agreement for the Disposition of Certain Mortgage Loans and Residual Interests (the "Agreement") in order to set forth, among other things, their mutual understandings and agreements with respect to auction procedures for (i) the mortgage loans sold to the Buyers under the MRA and which the Sellers were obligated to repurchase pursuant to the MRA (the "Mortgage Loans"), and (ii) the residual interests (the "Residuals") in a number of securitization trusts (the "Securitization Trusts"), the proceeds of which were to be used, inter alia, to pay amounts asserted by MSMCI under the MRA and the Loan Purchase Agreement, subject to the parties' reservation of rights and defenses with respect to the amount and validity of MSMCI's claims and those of its subsidiaries and affiliates against the Debtors, and agreed that a sale of the Mortgage Loans and the Residuals pursuant to the auction procedures set forth in the Agreement would be deemed to be commercially reasonable and subject to the "safe harbor" provisions for repurchase agreements (as defined in section 101 of the Bankruptcy Code) and/or "securities contracts" (as defined in section 741 of the Bankruptcy Code).[2]

11.    An auction was held in accordance with the Agreement. With respect to the Residuals, Ellington, on behalf of its client funds, including Spyridon, was the prevailing bidder at the auction and agreed to purchase the Residuals pursuant to the SPA. In connection with the closing, Spyridon raised the issue of NCF's qualification and taxation as a "real estate investment trust" ("REIT") for U.S. income tax purposes for the tax year 2007. Federal tax law sets forth a number of complex requirements for qualification as a REIT, among those requirements being that at least 75% of the value of the REIT's total assets must be represented by real estate assets, cash and cash items (including receivables), and Government securities as of the close of each quarter of each tax year. See 26 U.S.C. § 856(c)(4)(A). For tax purposes, assets subject to the MRA are considered to remain assets of the Debtors until the close of the foreclosure sale, so the Debtors

---

[2] The April 27, 2007 Stipulated Order is entered on the docket as item number 439

would, at a minimum have ownership of those assets for tax purposes prior to the close of the foreclosure sale. As the Debtors were in the process of selling substantially all of their real estate assets, it was ascertained that if all of the Residuals were sold during 2007, NCF's ability to continue to satisfy the asset test for REITs could be in doubt. If NCF's REIT status were lost on or before December 31, 2007, NCF would be subject to corporate tax on its income for the entire 2007 tax year. In addition, the loss of REIT status likely would have impaired the value of the Residuals (including in the hands of Spyridon) and possibly could have triggered claims against New Century.

12.     The maintenance of NCF's REIT status through December 31, 2007 is in the interest of both Spyridon and the Debtors. In order to be assured of maintaining NCF's REIT status, the parties agreed that NCF would retain ownership of the Residual in one of the securities trusts, NCHEL 2006-S1, that was subject to the SPA (the "Trust Certificate") for tax purposes until the end of the tax year 2007, at which point the Trust Certificate would be sold to Spyridon in exchange for additional consideration. Accordingly, Spyridon did not purchase the Trust Certificate at the closing on May 24, 2007, when title to all of the Residuals subject to the SPA (other than the Trust Certificate) was sold from the Debtors to Spyridon pursuant to the terms and conditions of the SPA. As of May 24, 2007, NCF qualified as a "real estate investment trust" for U.S. federal income tax purposes.

13.     Pursuant to this Motion, the Debtors hereby seek authority to sell to Spyridon the Trust Certificate pursuant to the following terms:

- NC Residual IV Corp. shall sell the Trust Certificate to Spyridon, effective at 12:01 a.m. on January 1, 2008, in exchange for $7,500.

- Until the Trust Certificate is sold to Spyridon, the Debtors shall (a) not take any actions that would have the effect of changing the qualification of NCF as a REIT for U.S. federal income tax purposes, (b)

6

use their commercially reasonable efforts affirmatively to maintain such qualification, and (c) take such actions reasonably requested by Spyridon to maintain such qualification. None of the Debtors shall be required to be declared a "liquidating trust" for tax purposes pending the sale of the Trust Certificate to Spyridon.

- Until the sale of the Trust Certificate to Spyridon, NCF shall continue to be treated as the owner of the Trust Certificate for all applicable tax purposes. The Debtors and Spyridon (a) shall not take any action contrary to the foregoing, and (b) shall report the transaction for tax purposes in accordance with the above-stated intention and agreement, unless and until determined to the contrary by an applicable taxing authority.

- New Century will be required to obtain an order providing for the following:

    (1) approval of the transactions described hereinabove;

    (2) authorization for NC Residual IV Corp. to sell the Trust Certificate to Spyridon in accordance with the terms described hereinabove, without further order of the Bankruptcy Court, free and clear of liens, claim, and interests pursuant to section 363(f) of the Bankruptcy Code;

    (3) a finding that this agreement was negotiated in good faith and at arm's-length and that, upon its purchase of the Trust Certificate in accordance with the terms described hereinabove, Spyridon will be deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and will be entitled to the protections afforded thereby;

    (4) a finding that the consideration provided by Spyridon for the Trust Certificate (a) represents the fair market value thereof, and (b) constitutes reasonably equivalent value thereof or fair consideration therefor, as the case may be, under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; and

    (5) a finding that this agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and that neither New Century nor Spyridon is entering into the transactions contemplated hereby fraudulently.

In addition, such order must otherwise be reasonably satisfactory to New Century and Spyridon.

14.    The Supplement was negotiated in good faith and at arm's length, and was not entered into for the purpose of hindering, delaying, or defrauding creditors. In fact, the Creditors Committee has been integrally involved with the negotiation of the Supplement and supports the Motion. A copy of the Supplement is attached hereto as Exhibit A.

## APPROVAL OF SALE TRANSACTION

15.    Bankruptcy Code Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he Court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

16.    A sale of a debtor's assets should be authorized pursuant to Bankruptcy Code Section 363 where the transaction represents an exercise of the debtor's sound business judgment. See, e.g., In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3rd Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Rv. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines. Inc., No. 01-0056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

17.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. See Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82

8

B.R. 334, 335-36 (D. Del. 1987); In re United Healthcare Svs., Inc., No. 97-21785, 1997 U.S. Dist

LEXIS 5090, at * 13-14 and n.2 (D. N.J. Mar. 26, 1997).

18.    A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business may be found where such a sale is necessary to preserve the value of

assets for the estate, its creditors or interest holders.  See e.g. In re Abbotts Dairies of

Pennsylvania, 788 F. 2d 143 (3rd Cir. 1986); In re Lionel Corp., 722 F. 2d 1063 (2nd Cir. 1983).

In fact, the paramount goal in any proposed sale of property of the estate is to maximize the

proceeds received by the estate.  See In re Food Barn Stores, Inc., 107 F. 3d 558, 564-65 (8th Cir.

1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate

at hand"); Integrated Resources, 147 B.R. at 659 ("It is a well-established principle of bankruptcy

law that the ... [debtors'] duty with respect to such sales is to obtain the highest price or greatest

overall benefit possible for the estate.") (quoting In re Atlanta Packaging Products, Inc., 99 B.R.

124, 130 (Bankr. N.D. Ga. 1988)).

19.    The proposed transaction with Spyridon satisfies the "sound business

reason test." During the auction conducted by Morgan Stanley, Spyridon was determined to be the

highest bidder for the Residuals, including the Trust Certificate, thereby establishing that the

consideration Spyridon was to pay for the Residuals would be for fair value.  The proposed

supplemental transaction set forth herein simply completes the sale of assets in connection with the

winning bid at auction.  Unless the Debtors had agreed to defer the sale of the Trust Certificate and

the payment of additional consideration therefor, Spyridon would not have closed the transaction

due to the potential adverse tax consequences.  Additionally, retaining ownership to the Trust

Certificate also enabled NCF to be assured of maintaining its REIT status.  The proposed

9

supplemental transaction therefore is the final step in the structure that was developed to ensure that the sale of the Residuals could be accomplished for the best possible price.

20.     If NCF's REIT status were lost on or before December 31, 2007, then NCF would be subject to corporate tax on its income for the entire 2007 tax year. In addition, the loss of REIT status likely would have impaired the value of the Residuals (including in the hands of Spyridon) and possibly could have triggered claims against New Century. The Debtors believe that implementing the Supplement is supported by a sound business reason and is the best interest of the estates. Additionally, as noted above, the Creditors' Committee has been integrally involved in the negotiation of the proposed transaction and supports the Motion. Accordingly, the Debtors believe that the Supplement should be approved.

## SALE FREE AND CLEAR OF LIENS AND INTERESTS

21.     The Debtors further submit that it is appropriate to sell the Trust Certificate free and clear of claims, interests, liens and encumbrances pursuant to Bankruptcy Code Section 363(f), with any such claims, interests, liens and encumbrances attaching to the net sale proceeds of the assets to the extent applicable.

22.     Bankruptcy Code Section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if (i) applicable nonbankruptcy law permits sale of such property free and clear of such interests, (ii) such entity consents, (iii) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property, (iv) such interest is in bona fide dispute (v) or such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

23.     Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Purchased Assets "free and clear" of liens and interests. In re Dundee Equity Corp., 1992 Bankr. LEXIS 436,

10

at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); In re Wolverine Radio Co., 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

24.    The Debtors believe that one or more of the tests of Bankruptcy Code Section 363(f) are easily satisfied with respect to the Trust Certificate. In particular, the Debtors believe that any lienholder will be adequately protected by having their liens, if any, in each instance against the Debtors or their estates, attach to the cash proceeds ultimately attributable to the assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

25.    Although Bankruptcy Code Section 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor JV, 209 F.3d 252, 257 (3rd Cir. 2000). In the case of In re Trans World Airlines, Inc., 322 F.3d 283, 288-89 (3rd Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" Id. at 289. As determined by the Fourth Circuit in In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in Folger, supra, the

scope of Bankruptcy Code Section 363(f) is not limited to in rem interests. Thus, the Third Circuit in Folger stated that Leckie held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." Folger, 209 F.3d at 258.

26.    Courts have consistently held that a buyer of a debtor's assets under Bankruptcy Code Section 363 takes the assets free from successor liability resulting from pre-existing claims. See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); In re New England Fish Co., 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); In re Hoffman, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); American Living Systems v. Bonapfel (In re All Am. Of Ashburn, Inc.), 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product liability claims precluded on successor doctrine in a sale of assets free and clear); WBQ Partnership v. Virginia Dept. of Medical Assistance Services (In re WBQ Partnership), 189 B.R.

12

97, 104-05 (Bankr. 22 E.D. Va. 1995) (Commonwealth of Virginia's right to recapture depreciation is an "interest" as used in section 363(f)).[3]

27.    The purpose of an order purporting to authorize the sale of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the sale as a basis to assert claims against the purchaser arising from the Debtors' pre-sale conduct. Under Bankruptcy Code Section 363(f), Spyridon is entitled to know that the assets do not have attached latent claims that will be asserted against them after the sale is completed. Accordingly, and consistent with the above-cited case law, the Stipulated Order should state that the purchaser will not be liable, as a successor under any theory of successor liability or otherwise, for claims that encumber or relate to the assets.

## FINDING OF GOOD FAITH

28.    Bankruptcy Code Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Seventh Circuit in In re Andy Frain Services, Inc., 798 F.2d 1113 (7th Cir. 1986), held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

---

[3] Even courts concluding that Bankruptcy Code section 363(f) does not empower them to convey assets free and clear of claims nevertheless find that Bankruptcy Code section 105(a) provides such authority. See In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11)

798 F.2d at 1125 (emphasis omitted) (quoting In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir. 1978).

29.     The Supplement was negotiated at arm's-length with all parties involved acting in good faith. The Debtors therefore request that the Court make a finding that Spyridon has purchased the Trust Certificate in good faith within the meaning of Bankruptcy Code Section 363(m).

### FAIR CONSIDERATION

30.     The proposed sale of the Trust Certificate for $7,500 is for fair consideration. As noted above, Spyridon was the high bidder as part of a competitive bidding process conducted by Morgan Stanley, thereby establishing that the consideration Spyridon was to pay for the Residuals would be for fair value. The proposed supplemental transaction set forth herein simply completes the sale of assets in connection with the winning bid at auction. Additionally, the delay in the sale of the Trust Certificate enabled NCF to be assured of maintaining REIT status through December 31, 2007, which was important for the reasons set forth above. Accordingly, the Debtors submit that the proposed purchase price of $7,500 represents the fair market value of, and constitutes reasonably equivalent value and fair consideration for, the Trust Certificate.

### FINALITY OF ORDER

31.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee

14

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, the leading treatise on bankruptcy suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 <u>Collier on Bankruptcy</u>, ¶ 6004.10 (15th rev. ed. 2006). Further, it suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. <u>Id.</u>

32.    The Debtors hereby request that the Stipulated Order approving the sale of the Trust Certificate be effective immediately upon entry by providing that the 10-day stay under Bankruptcy Rule 6004(h) is waived or, in the alternative, if an objection to the approval of the Supplement is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## NOTICE

33.    No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) the Debtors' proposed post-petition senior secured lenders; (3) counsel to the Committee; (4) the Examiner appointed in these Chapter 11 cases and (5) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). The Debtors submit that no other or further notice is required.

34.    No previous motion for the relief sought herein has been made to this or any other Court.

15

WHEREFORE, the Debtors respectfully request that the Court enter an Order,

substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion

and such other and further relief as may be just and proper.

Dated: November 15, 2007         Respectfully submitted,
       Wilmington, Delaware


Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Ben H. Logan
Suzzanne S. Uhland
Victoria A. Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

16