EXHIBIT "A"

Assigned to FIDELITY Bank

*Abrahamson*   2049266849

## ULSTER COUNTY CLERK
### RECORDING PAGE

Type of Document:    MORTGAGE        Recorded:   3/03/1993
Recording Charge:    $    41.00        At:   10:20 AM
Location: saugerties, town        In Liber:   2710
                                         Of:   HTG
Control No: 9303030030            On Page:   0040

### EXAMINED AND CHARGED AS FOLLOWS:

Transfer
Amount:        .00        Mortgage
                           Amount:    80,000.00

Received Tax on Above Deed:    Received Tax on Above Mortgage:

                                         Basic:      400.00   Exempt
                                         Additional:    .00   NO
                                         Special:    200.00   NO
Total:      .00    Exempt NO    Total:      600.00
TT No.                     MT No.   CJ007103

(THIS PAGE IS A PART OF THE INSTRUMENT)

Albert Spada
Ulster County Clerk

Party 1: ABRAHAMSON, ANNE MARIE
Party 2: CHASE MANHATTAN BANK NA,

schirmer hrdlicka and strohsal
po box 240
saugerties new york  12477

_____ [Space Above This Line For Recording Data] _____

## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Security Instrument." This document, which is dated _____ March 2nd _____ , 19 93 , will be called "Security Instrument." ANNA MARIE ABRAHAMSON, residing at P.O. Box 576,

(B) "Borrower." _____ Saugerties, New York 12477 _____, sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender." _____ THE CHASE MANHATTAN BANK, N.A. _____ will be called "Lender." Lender is a corporation or association which exists under the laws of _____ the United States of America _____

Lender's address is One Lincoln First Square, Rochester, New York 14643

(D) "Note." The note signed by the Borrower and dated _____ March 2nd _____ , 19 93 , will be called the "Note." The note shows I owe the Lender _____ EIGHTY THOUSAND and 00/100 _____ _____ Dollars (U.S. $ 80,000.00_____ ) plus interest. I have promised to pay this debt in monthly payments and to pay the debt in full by _____ April 1st, 2023 _____

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all amounts that I owe Lender stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraph 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at _____ 133 Old Rte 32 _____

_____ Saugerties _____ , New York _____ 12477 _____ . This Property is in
        (City)                                        (Zip Code)
_____ Ulster _____ County. It has the following legal description:


SEE ANNEXED SCHEDULE "A"


(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033  11/91 (Page 1 of 7 pages)
6-01-076-117

SCHEDULE "A"

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Saugerties, County of Ulster and State of New York, bounded and described as follows:

BEGINNING at a point on the South side of Saugerties-Palenville State Highway at the Northwest corner of the lot hereby intended to be described, running in a Southerly direction 111 feet; thence Easterly 277 feet to the private road; thence Northwest along the West side of the private road a distance of 86 feet to the South side of the said highway; thence Westerly along the Saugerties-Palenville Highway a distance of 218 feet to the point and place of BEGINNING.

ALSO ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Saugerties, County of Ulster and State of New York, bounded and described as follows:

BEGINNING at the Southwest corner of the premises of Albert Buhl and Kate Buhl and running thence in a Southerly direction 114 feet to a fence post; thence in an Easterly direction a distance of 87 feet to an oak tree; thence in a Southerly direction a distance of 41 feet to the center of the Beaverkill Creek; thence in a Northeasterly direction along the center of the Beaverkill Creek as it winds and turns to the South side of the Saugerties-Palenville State Highway; thence in a Westerly direction and along the South side of said highway to the Northeast corner of premises of Albert Buhl and Kate Buhl; thence in a Southerly direction a distance of 88 feet and along the line of premises of Albert Buhl and Kate Buhl and the West side of a private road to the Southeast corner of premises of Albert Buhl and Kate Buhl; thence in a Westerly direction a distance of 277 feet along the South line of premises of Albert Buhl and Kate Buhl to the point and place of BEGINNING.

THE parties of the first part reserve however for themselves, their heirs, assigns the right and use of a Private Road leading in a Southerly direction from the South side of the Saugerties-Palenville State Highway. Said private road being of the width of 15 feet.

ALSO ALL THAT PIECE OR PARCEL OF LAND, situate, lying and being on the Southerly side of the Malden Turnpike Road, in the Town of Saugerties, County of Ulster and State of New York, and bounded and described as follows:

BEGINNING at a point at the intersection of land hereby intended to be conveyed and other lands of the parties of the second part, 13.25 feet distant from the Southerly edge of the concrete of said Turnpike and runs thence South 29° 50' West 225 feet to a stake driven in the ground; thence North 53° 40' East 40 feet more or less to a stake driven in the ground; thence North 29° 50' West 222.22 feet to a stake driven in the ground 13.25 feet from the Southerly edge of the concrete of said turnpike; thence South 57° 16' West 40 feet to the point and place of BEGINNING.

AND being a parcel of land 40 feet in width adjoining the Westerly boundary of other lands of the parties of the second part.

THIS IS A PURCHASE MONEY MORTGAGE.

(F) All of the rights and property described       paragraphs (B) through (E) of this section that I acquire   the
future; and

(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

<div align="center">COVENANTS</div>

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE**
**(A) Borrower's Obligations**
I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (I) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (II) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (I) through (vi) below, which are called "Escrow Items":
(I) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(II) The estimated yearly leasehold payments or ground rents on the Property (if any);
(III) The estimated yearly premium for hazard or property insurance covering the Property;
(IV) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(B) Lender's Obligations**

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033   1/01 (page 2 of 7 pages)

8-01-010-117

**(C) Adjustments to Funds**

Under the law, the... ...a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater that the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note;
Next, to pay the amounts due to Lender under Paragraph 2 above;
Next, to pay interest due;
Next, to pay principal due; and
Last, to pay any late charges due under the Note.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of these payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE**

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of these policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3033  14/92 (page 3 of 7 pages)

8-01 010 257

6.  BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

(A) Borrower's Obligations to Occupy the Property

I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

(B) Borrower's Obligations to Maintain and Protect the Property

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

(C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

(D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

7.  LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY.

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.  MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

9.  LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

2718 1005

**10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

**11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A) Borrower's Obligations**
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

**(B) Lender's Rights**
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

**12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

**13. LOAN CHARGES**
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often in This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT**
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security

NEW YORK – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033  14/01  (page 5 of 7 pages)

6-01-430 257

Instrument and of the Note will still remain in e      f they can be given effect without the conflicting term
means that any terms of this Security Instrument      of the Note which conflict with the law can be separated
the rema ining terms, and the remaining terms will still be enforced.

**16. BORROWER'S COPY**
I will be given one conformed copy of the Note and of this Security Instrument.

**17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of
the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender
also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is
not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law
on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this
requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on
the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to
enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT
DISCONTINUED**
Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security
Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted
by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I
meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if
immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable
attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this
Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.



If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full
effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's
enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under
Paragraph 17 above.

**19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S
RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**
The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not
receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan
Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more
changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any
change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and
under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the
address to which I should make my payments. The notice also will contain any other information required by the law.

**20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE
PROPERTY**
The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or
environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates
Environmental Laws, and I will not allow anyone else to do so.

Environmental laws classify certain substances as toxic or hazardous. There are other substances that are considered
hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum
products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and
radioactive materials. The substances defined as toxic or hazardous by Environmental laws and the substances
considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on
the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property,
or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit
the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate
for normal residential use and maintenance of the Property, and I may use or store these small quantities on the
Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the
fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and
asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party
involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in
writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance
affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as
required by Environmental Laws.

**21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**
Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of
this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining
unpaid under the Note and under this Security Instrument. Lender may do this without making any further
demand for payment. This requirement is called "Immediate payment in full."

NEW YORK - Single Family - Fannie Mae/Freddie Mac Uniform INSTRUMENT                    Form 3933   1/01 (page 8 of 7 pages)

841-415-217

‴2718‴ΡΧ56

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full, under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
(i) The promise or agreement that I failed to keep;
(ii) The action that I must take to correct that default;
(iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
(iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
(v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
(vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

23. AGREEMENTS ABOUT NEW YORK LIEN LAW
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding these amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

24. RIDERS TO THIS SECURITY INSTRUMENT
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☒ 1-4 Family Rider
☐ Graduated Payment Rider    ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider              ☐ Rate Improvement Rider      ☐ Second Home Rider
☒ Other(s) [specify]  mortgage Rider 40-01-020-528

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 7 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_____        _____ (Seal)
                                         ANNE MARIE ABRAHAMSEN        -Borrower

                                        _____ (Seal)
                                                                      -Borrower

[Space Below This Line For Acknowledgment]
STATE OF NEW YORK}
                  ss.:
COUNTY OF ULSTER }

On this 2nd day of March, 1993, before me personally came ANNE MARIE ABRAHAMSEN to me known and known to me to be the individual described in and who executed the foregoing Instrument and she duly acknowledged to me that she executed the same.

_____
Notary Public
ALBERT F. HRDLICKA
Notary Public, State of New York
Resident in and for Ulster County
Commission Expires April 30, 1994

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033 10/91 (page 7 of 7 pages)
0-01-020-217

CHASE

IMP 2718740057

## 1-4 FAMILY RIDER
### Assignment of Rents

THIS 1-4 FAMILY RIDER is made this _____2nd_____ day of _____March_____, 19_93_, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to _____THE CHASE MANHATTAN BANK, N.A._____ (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: _____131 Old Rte 32, Saugerties, New York   12477_____

*Property Address*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument                    Form 3170 9/90 (page 1 of 2 pages)

R-21-A75-404 Rev. 11/91

BR2718PG0058

   If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

   Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

   Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

   I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
KIRE HARIE ABRAHAMSEN                          -Borrower

_____ (Seal)
                                                              -Borrower

Form 3170 3/70 (page 2 of 2 Pages)

LIBER 2718 PAGE 0059

CHASE

MORTGAGE RIDER

ANY REFERENCE TO CHASE [illegible] BANK, N.A. IS ALSO TO CHASE MANHATTAN BANK, N.A.

1. PURPOSE AND EFFECT OF RIDER. Lender requires Borrower to agree to the provisions that are contained in this Rider as a condition of the Lender making a loan to Borrower. IF THERE IS A CONFLICT BETWEEN THE PROVISIONS IN THIS RIDER AND THOSE IN THE ACCOMPANYING MORTGAGE (SECURITY INSTRUMENT), NOTE OR ADJUSTABLE RATE RIDER (IF ANY), THE PROVISIONS IN THIS RIDER WILL BE CONTROLLING; THOSE PROVISIONS IN THE MORTGAGE, NOTE OR ADJUSTABLE RATE RIDER (IF ANY) WILL BE ELIMINATED OR MODIFIED AS MUCH AS IS NECESSARY TO MAKE ALL OF THE CONFLICTING TERMS AGREE WITH THIS RIDER.

2. RIDER NOT EFFECTIVE IF MORTGAGE DOCUMENTS ASSIGNED TO GOVERNMENTAL AGENCY. If the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, or the Government National Mortgage Association, or any other federal or state governmental agency, buys all or some of the Lender's rights under the Mortgage Documents, the promises and agreements in this Rider will no longer have any force or effect.

3. MEANING OF TERM "LENDER". As used in this Rider, the term "Lender" refers to Chase Lincoln First Bank, N.A. and any subsequent holder of the Mortgage Documents.

4. NOTICE OF DEFAULT NOT REQUIRED. No notice need be sent by Lender to me in order for Lender to exercise any of its rights under the Note, Security Instrument or Adjustable Rate Rider if Lender has not received the full amount of any of my monthly payments or other sums owed to it by the end of thirty (30) calendar days after it is due.

5. LENDER'S OPTION TO USE INSURANCE PROCEEDS. I agree that Lender will have the choice of either using any insurance proceeds to reduce the amount that I owe to Lender under the Note, the Security Instrument and the Adjustable Rate Rider or for repairing and/or repairing the property.

6. HAZARD INSURANCE CO-INSURANCE. The Hazard Insurance I obtain will not contain a co-insurance clause, unless specifically authorized by Lender in writing

7. FLOOD INSURANCE. I will keep the buildings on the Property insured against loss by flood if the Property is located in a special flood hazard area.

8. INSURANCE PREMIUMS. I will reimburse the Lender for any premiums paid by the Lender for hazard (including combination policies) or flood insurance because I have failed to do so. I also agree that the premiums paid by the Lender will be secured by the Security Instrument.

9. LENDER'S USE OF CONDEMNATION PROCEEDS. At Lender's option, all proceeds of any condemnation of a part of the Property shall be used to reduce the amount I owe to Lender.

10. ADDITIONAL RIGHTS OF LENDER IN EVENT OF FORECLOSURE AND SALE. In addition to those rights granted in the Security Instrument, Lender shall have the following rights in the event Lender starts a lawsuit for foreclosure and sale of the Property:

(a) All reasonable sums paid by Lender in starting and carrying on the lawsuit for foreclosure and sale, including reasonable attorney's fees and all costs allowed by law, plus any additional allowances permitted by the court under the terms of Section 8303(a) of the New York Civil Practice Law and Rules, together with interest on all of these sums at the interest rate stated in the Note, shall be paid by me or added to the principal I owe the Lender.

(b) The Property may be sold in one parcel despite any requirement to the contrary.

(c) Lender may appoint a receiver without any special notice to me, and Lender shall have this right no matter what balance I owe to Lender.

11. NO RIGHT TO HAVE ENFORCEMENT OF SECURITY INSTRUMENT DISCONTINUED. I waive my right under Section 18 of the Security Instrument to have enforcement of the Security Instrument discontinued.

12. LATE CHARGES. If I am also making monthly escrow payments for taxes and/or insurance, the late charge will be two percent (2.0%) of the entire monthly payment, not just principal and interest.

13. ADDITIONAL EVENTS CAUSING POSSIBLE IMMEDIATE PAYMENT IN FULL AFTER NOTICE. The Lender may require Immediate Payment in full at the option of the Lender upon thirty (30) days notice to me.

(a) If any structure on the Property shall be removed, demolished, or substantially altered;

(b) If I fail to comply with any requirement of federal, state or municipal authorities (the Lender, however, may comply and add the expense to the mortgage debt); or

(c) If the Property becomes vacant or nonowner occupied.

By signing this Rider, I agree to all of the above provisions.

Dated: March 2nd, 19 93    ANNE-MARIE ABRAHAMSEN

Dated: ____________, 19__    ____________

STATE OF NEW YORK)
SS:
COUNTY OF Ulster )

On this 2nd day of March, 1993, before me, the subscriber, personally came Anne Marie Abrahamsen to me personally known and known to me to be the individual(s) described in and who executed the foregoing instrument and duly acknowledged that __she__ executed the same.

R & R:
Schirmer, Hrdlicka & Strohsahl
P.O. Box 240
Saugerties, N.Y. 12477
#8205

Notary Public
ALBERT F. HRDLICKA
Notary Public, State of New York
Resident in and for Ulster County
Commission Expires April 30, 1994

[illegible] Rev. 4/90

 CHASE

NOTE

*4926624*

.......... March 2nd .........., 19..93.            .......... Saugerties .........., ......... New York ..............
                                                                [City]                    [State]
.............................. 133 Old Rte 32, Saugerties, New York  12477 ..........................................
                                        [Property Address]

**1. BORROWER'S PROMISE TO PAY**
       In return for a loan that I have received, I promise to pay U.S. $..80,000.00----.... (this amount is called
"principal"), plus interest, to the order of the Lender. The Lender is ......................................................................
.................. The Chase Manhattan Bank, N.A. ...................................................... I understand
that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

**2. INTEREST**
       Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a
yearly rate of .....8.125........%.
       The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

**3. PAYMENTS**
       (A) Time and Place of Payments
       I will pay principal and interest by making payments every month.
       I will make my monthly payments on the ..1st...... day of each month beginning on ......... May 1st,................,
19..93... I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
...... April 1st.............., ..2023., I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "maturity date."
       I will make my monthly payments at ......... any Branch of Lender.........................................................
.................................................................. or at a different place if required by the Note Holder.
       (B) Amount of Monthly Payments
       My monthly payment will be in the amount of U.S. $..594.00...........................

**4. BORROWER'S RIGHT TO PREPAY**
       I have the right to make payments of principal at any time before they are due. A payment of principal only is
known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
       I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder
will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial
prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder
agrees in writing to those changes.

**5. LOAN CHARGES**
       If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums
already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make
this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces
principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
       (A) Late Charge for Overdue Payments
       If the Note Holder has not received the full amount of any monthly payment by the end of ..fifteen.... calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ..2.0....% of my
overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
       (B) Default
       If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
       (C) Notice of Default
       If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid
and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is
delivered or mailed to me.
       (D) No Waiver By Note Holder
       Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.
       (E) Payment of Note Holder's Costs and Expenses
       If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the
right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to
the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**
       Unless applicable law requires a different method, any notice that must be given to me under this Note will be given
by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the
Note Holder a notice of my different address.
       Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the
Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different
address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

..............................................................................................................(Seal)
ANNE MARIE ABRAHAMSEN                                                        -Borrower

..............................................................................................................(Seal)
                                                                             -Borrower

..............................................................................................................(Seal)
                                                                             -Borrower

*[Sign Original Only]*

Form 3233   10/91   *(page 2 of 2 pages)*

_____55

· ...d by / Return to:
.,yement Corporation
.. uox 1710, Campbell, CA 95009-1710

CHECKED  Q- ...
ENTERED  _____
MARKOFF  Sm

## Assignment of Mortgage

For Good and Valuable Consideration, the sufficiency of which is hereby acknowledged, the undersigned,
THE CHASE MANHATTAN BANK, (See "Footnote One" below)                    (Assignor)
whose address is 3415 Vision Drive, Columbus, OH 43219

by these presents does convey, grant, assign, transfer and set over the described Mortgage dated 03/02/93
FROM-: ANNE MARIE ABRAHAMSEN
TO------: THE CHASE MANHATTAN BANK, NA
in the amount of $80000.00 and recorded on 03/03/93 in the State of NY, County of Ulster, Clerk's office
as Book 2718 Page 0048
together with certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon to:
FIDELITY BANK, a federally chartered savings bank                    (Assignee)
100 East English, Wichita, KS 67202

This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an
assignment within the secondary mortgage market.
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed
by its proper officer who was duly authorized by a resolution of its board of directors.
    Dated: July 01, 2000
    THE CHASE MANHATTAN BANK (See "Footnote One" below)

By: _____
    H. An
    Vice President

State of California
County of Santa Clara
On 09/05/2000, before me, the undersigned, a Notary Public, in and for said State, personally appeared
H. An personally known to me or proved to me on the basis of satisfactory evidence to be
the individual whose name is subscribed to the within written instrument and acknowledged to me that
she executed the same in her authorized capacity, and that by her signature on the instrument the
individual, or the person upon behalf of which the individual acted, executed the instrument, and that such
individual made such appearance before the undersigned in the County of Santa Clara, State of California.

_____
Notary: Marcos Maciel
My Commission Expires August 31, 2002

MARCOS MACIEL
COMM. 1195214
NOTARY PUBLIC – CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires AUG. 31, 2002

Prepared by: E.N. Harrison, Peollo Management Corp., P.O. Box 1710, Campbell, CA
Pool: 208274 1st LN#: 3049266849 Investor #: 1659680363
STCO: 31-111 NY Ulster
FINAL SA.ftnoteNY chase723 90723 1 090500 CM2 FNM 510 Sort 1828

Footnote One:
THE CHASE MANHATTAN BANK
F/K/A Chemical Bank and/or successor by merger to:
American National Bank & Trust of New Jersey, American National Bank, successor by merger to Northeastern
Bank, F/K/A Bergen Bank of Commerce, successor by merger to The Franklin Bank, The Bank of New Jersey
Chase Lincoln First Bank, NA, F/K/A Lincoln First Bank, NA, successor by merger to
First-City National Bank of Binghamton, NY, Lincoln First Bank of Rochester and Lincoln First Bank-Central, NA,
The Chase Manhattan Bank, NA, The Chase Manhattan Bank of Central New York, NA, Chase Manhattan
Bank of Connecticut, NA, as Assignee of FDIC as receiver of Mechanics and Farmers Savings Bank, FSB
successor by merger to New Canaan Savings Bank, The Chase Manhattan Bank of the Mid-Hudson, NA,
Chemical Bank of Suffolk, NA, Chemical Bank, New Jersey, NA, successor by merger to The Prospect Park
National Bank, F/K/A Eastern National Bank of Long Island, Manufacturers Hanover Trust Company
Princeton Bank, Security National Bank, Security National Bank of Long Island, The First National Bank of
Jamestown, Horizon Bank, NA, Citizens Bank, N.A., Marine National Bank, Princeton Bank & Trust Co.