**INTERNET|SECURITY|SYSTEMS®**
*Ahead of the threat.*

WWW.ISS.NET

# MASTER AGREEMENT

THIS MASTER AGREEMENT ("Agreement") effective June 30, 2006 ("Effective Date") is by and between **New Century Mortgage Corporation** ("Customer") with offices at 18400 Von Karman, Suite 1000, Irvine, CA 92612, and **Internet Security Systems, Inc.**, a Georgia corporation ("ISS") with offices at 6303 Barfield Road, Atlanta, Georgia 30328.

**1. DEFINITIONS**
A. **"Affiliate(s)"** means any entity controlling, controlled by, or under common control with the party. Control means ownership of more than 50% of the voting, equity securities of the subject entity.
B. **"Appliance"** means an ISS Product consisting of Software pre-installed on a single ISS hardware device ("Hardware"). ISS Hardware consists of the applicable device and pertinent user documentation.
C. **"Bundled Managed Security Services"** means the combination of hardware and software necessary for ISS to deliver Managed Services, as well as the delivery of the Managed Services, on or to Customer's premises. Bundled Managed Security Services also include ISS maintenance for the software and hardware provided as part of the Bundled Managed Security Services.
D. **"Confidential Information"** means all information proprietary to a party or any of its customers or suppliers which is designated as confidential, or that due to its nature is known or in good faith should be known to be confidential. Any data contained on Customer's computer network shall be presumed to be the Confidential Information of Customer.
E. **"CPE"** (Customer Premises Equipment) means, with respect to Bundled Managed Security Services, certain hardware and/or software provided by ISS and installed on Customer's premises to facilitate ISS delivery of Managed Services.
F. **"Deliverables"** means any items delivered by ISS to Customer as part of Services, including but not limited to assessment reports, security policies, or configuration scripts. Products do not constitute Deliverables.
G. **"Managed Services"**, means those managed security services which allow an organization to outsource the management of certain Internet security functions as further described in Section 2(G).
H. **"Order"** means: (i) any initial Order attached hereto and incorporated herein; (ii) any written amendment or supplement referencing this Agreement signed by each party's authorized representative; (iii) an ISS Sales Quotation or Services Order Form (including any applicable statement of work) signed by Customer's authorized representative and accepted by ISS; or (iv) Customer's purchase order(s) as accepted by ISS provided such purchase orders will be governed by and cannot alter the terms of this Agreement. A form of Order is attached hereto as Attachment 1.
I. **"Product(s)"**, if any, means ISS Software and/or ISS Appliance(s) supplied to Customer under this Agreement, excluding Third Party Products.
J. **"Service(s)"**, if any, means the services to be provided by ISS and may include, without limitation, implementation, deployment, training, security assessment, and security scanning.
K. **"Software"** is provided in object code only and means the machine-readable instructions, the pertinent user documentation, and the periodic updates, error corrections, enhancements and new releases produced by ISS and purchased by Customer under the maintenance and support program.
L. **"Third Party Product(s)"**, if any, includes "Third Party Software" and "Third Party Hardware" and means any software and/or hardware which are supplied to Customer under this Agreement but which are not produced by ISS.

**2. SERVICES**
A. **Description.** The Services to be provided by ISS are those set forth in the applicable Order.

B. **Ownership and Use of Deliverables.** For each deliverable set forth in an Order, if any, the parties intend that: (i) Customer retains all ownership rights and interest in and to all Customer pre-existing intellectual property, materials and data included in the Deliverable ("Customer Materials"); and (ii) ISS retains all ownership in and to all ISS pre-existing intellectual property, materials and data included in the Deliverable ("ISS Materials"). Except for Customer Materials, ISS retains all ownership in and to the Deliverables. ISS grants to Customer an unlimited, perpetual, irrevocable, worldwide license to (i) use, copy, prepare derivative works of and modify the Deliverables for any internal purpose and (ii) distribute the Deliverables to third parties performing services for Customer or to third parties for the purposes of sharing or benchmarking information technology security best practices. With respect to Deliverables bearing an ISS copyright notice, Customer will retain ISS' copyright notice on the Deliverables and may state within the Deliverables Customer's use rights.

C. **Changes.** The parties may make changes to Service descriptions, schedules, fees or other aspects of the Services by means of a change Order.

D. **Location.** Services may be rendered at Customer's or ISS' facilities or at other mutually agreed locations. Customer shall reasonably cooperate with ISS in its performance of Services and shall provide access to its facilities, data, information and personnel as reasonably necessary for ISS' performance of Services. ISS personnel performing the Services, while present at Customer's facilities, shall comply with Customer's reasonable security and safety policies that are provided to ISS.

E. **Services Warranty.** ISS warrants that (i) it and the ISS personnel performing Services have the necessary knowledge, skills, experience, and qualifications to perform the Services in accordance with the applicable Order, (ii) the Services will be performed in a professional and workmanlike manner in accordance with generally accepted industry standards, and **(iii) ISS will be fully responsible and liable for all acts, omissions and Services performed by any of its representatives, including any subcontractor(s).** If any material portion of the Services do not conform to the foregoing warranty and Customer notifies ISS within sixty (60) days of completion of the Services, ISS will at its option and expense and as the sole and exclusive remedy either: a) re-perform the nonconforming Services, or b) if re-performance is not commercially reasonable, refund the fees paid for the nonconforming Services. ISS is not responsible for nonconformities arising from inaccurate or incomplete data or information provided by Customer.

F. **Security Services.** Should an Order include security scanning, testing, assessment, forensics, or remediation Services ("Security Services"), Customer understands that ISS may use various methods and software tools to probe network resources for security-related information and to detect actual or potential security flaws and vulnerabilities. Customer authorizes ISS to perform such Security Services on network resources with the IP Addresses identified by Customer. Customer represents that, if Customer does not own such network resources, it will have

INTERNET|SECURITY|SYSTEMS*
*Ahead of the threat.*

WWW.ISS.NET

obtained consent and authorization from the applicable third party to permit ISS to provide the Security Services. ISS shall perform Security Services during a timeframe mutually agreed upon with Customer.

G. **Managed Services.** This Section applies only to managed Services set forth in the applicable Order, if any ("Managed Services"). Managed Services will be described in the applicable Order.

(i) **Commencement and Renewal.** ISS will begin invoicing Managed Services upon the earlier to occur of the go-live date or 60 days from the Order date, provided, however, if Managed Services do not commence within sixty (60) days due to delay by ISS, then the term would be extended day for day for each day's delay at no additional charge. Managed Services will be provided for the duration specified in the applicable Order. Neither party will have any liability to the other for not renewing Managed Services and fees for renewal periods are subject to change. **For a period of sixty (60) days from the date that all Managed Services ordered by Customer are "live" (actively managed by ISS' Security Operations Center), Customer may cancel such Managed Services without incurring any cancellation fees or other penalty fees. Such cancellation must be provided in writing to ISS prior to the expiration of such sixty (60) day term.** Otherwise, Customer may cancel the Managed Services at any time after the initial 60 day period, or any renewal, duration by providing sixty (60) days prior written notice. Upon cancellation, Customer agrees to pay ISS all Managed Service fees through the effective date of cancellation. Customer agrees to pay ISS an early cancellation fee equal to fifty percent (50%) of such fees for the first year of the cancelled period; and twenty-five (25%) percent of such fees for the second year of the cancelled period; if Customer cancels the agreement before the end of the term unless due to ISS' material breach of the Agreement. (ii) **Service Level Agreements.** During the period for which Customer has paid the applicable Managed Service fees, ISS will provide Managed Services in accordance with: a) its prevailing service definitions and b) the service level agreements applicable to the type of Managed Services ordered by Customer, both of which are available at http://documents.iss.net/mss_sla.pdf.

(iii) **Managed Services Warranty. ISS warrants that (i) it and the ISS personnel performing Managed Services have the necessary knowledge, skills, experience, and qualifications to perform the Managed Services in accordance with the applicable Order, (ii) the Managed Services will be performed in a professional and workmanlike manner in accordance with generally accepted industry standards. ISS warrants that with respect to Bundled Managed Security Services the Products furnished will conform in all material respects with its then current documentation supplied by ISS for the duration of such Bundled Managed Security Services. If any material portion of the Bundled Managed Security Services do not conform to the foregoing warranties, ISS will promptly re-perform the nonconforming Bundled Managed Security Services and repair or replace the non-conforming Products. If ISS fails to cure the non-performing Bundled Managed Security Services or Products within a reasonable time, then Customer may terminate such services without any cancellation fee.**

(iv) **Maintenance.** Except with respect to Bundled Managed Security Services which include applicable maintenance fees, Customer shall obtain and maintain, at levels designated by ISS, maintenance for ISS Product(s) and any other hardware and software products which ISS is managing for Customer. The service level agreements will not apply for any period during which such maintenance is unavailable to ISS. Customer may purchase such maintenance through ISS or from third parties.

(v) **Customer Responsibilities and Reporting.** Managed Services do not include Internet access service or telecommunications transport circuits which are Customer's responsibility. Customer is responsible for Customer's own network security policy and security violation response procedures. Customer consents to ISS aggregating security event log data to look at trends and real or potential threats. ISS may aggregate this security event log data with similar data of other clients so long as such is aggregated in a manner that will not in any way reveal the data as being attributable to Customer.

(vi) **Bundled Managed Security Services.** Unless otherwise set forth in the applicable Order, if CPE is furnished by ISS for use at Customer's premises as part of Bundled Managed Security Services, title to hardware components of the CPE is transferred to Customer upon delivery and acceptance by Customer. ISS or its licensors retain exclusive ownership of all software, which is provided to Customer on a subscription basis as part of the Bundled Managed Security Services. Upon expiration or other termination of Bundled Managed Security Services, Customer shall permanently delete all software associated with such Bundled Managed Security Services and destroy any related software disks (or other media) and documentation, and notify ISS that the foregoing has been completed, where the subscription license to the software has also expired or terminated. Customer agrees to provide such notice in writing upon ISS' request.

3. **PRODUCTS.**
A. **Software.**
(i) **Description.** ISS Software Products, if any, are listed in the applicable Order. Software is owned by ISS or its licensors and is protected by copyright laws and international treaty provisions.

(ii) **License Grant.** In consideration of the license fees paid by Customer and subject to the terms and conditions of this Agreement, ISS grants Customer a nonexclusive, nontransferable except as set forth herein, license to use the Software for the time period specified in the applicable Order only for Customer and Affiliate internal business operations and benefit. ISS limits use of Software based upon the number of nodes, users and/or the number and type of devices upon which it may be installed, used, gather data from, or report on, depending upon the specific Software licensed. A device includes any network addressable device connected to Customer and Affiliate networks including without limitation personal computers, workstations, servers, routers, hubs and printers. If a specific network configuration is not specified, the license includes all platforms for which the Software is designed and supported from time to time. Customer acknowledges that the license key provided by ISS may allow Customer to reproduce, install and use the Software on devices that could exceed the number of devices licensed. Customer shall implement appropriate safeguards and controls to prevent unauthorized use of the Software and loss or disclosure of the license key. Customer may make a reasonable number of copies of the Software solely for non-productive backup, archival and testing, and for temporary use during disaster recovery. Customer shall ensure that all proprietary notices and confidentiality legends contained in the Software appear on all copies, and that anyone who uses or accesses the Software does so only in compliance with this Agreement. Except as expressly authorized in this Agreement, Customer shall not use, copy, modify, transfer or distribute the Software; reverse assemble, reverse compile, reverse engineer or otherwise translate the Software unless enforcement is prohibited by applicable law; create derivative works of the Software; sublicense, rent, lease, or use the Software in a service bureau, on-line or time-sharing environment; nor allow any third party to do any of these. Upon termination or expiration of any license granted hereunder, Customer shall cease use of and return, or render unusable, all

**INTERNET|SECURITY|SYSTEMS®**
*Ahead of the threat.*

WWW.ISS.NET

copies of the applicable Software and provide ISS with written certification it has done so.

(ii). **Software Warranty.** ISS warrants that during the period ending ninety (90) days after the license key is provided by ISS (a) the physical media on which the Software is delivered will be free of errors and defects, and (b) the Software will conform in all material respects with its then current documentation supplied by ISS. If the Software does not operate as warranted during the warranty period, Customer's sole and exclusive remedy and the entire liability of ISS, its suppliers and affiliates under this warranty is, at ISS' option, either: (x) to repair the Software; (y) replace the Software; or (z) if ISS determines that repair or replacement is impractical, upon written request ISS will terminate the applicable license(s) and refund the applicable license fees. The limited warranties provided in this Section do not apply to non-conformities, errors, or defects due to: (a) misuse of the Software, (b) modification of the Software by a party other than ISS unless ISS has authorized such modification in writing, (c) failure by Customer to utilize compatible computer and networking hardware and software, or (d) interaction with software or firmware not provided by ISS **or on behalf of ISS by its authorized reseller** or identified by ISS in its specifications.

(iv). **Software Maintenance.** ISS will provide maintenance for Software during the period for which Customer has paid the applicable maintenance fees in accordance with its prevailing Maintenance and Support Policy that is available at http://documents.iss.net/maintenance_policy.pdf.

(iv) **Evaluation License.** If ISS is licensing the Software to Customer on an evaluation trial basis, the term of such license is thirty (30) days from installation, unless a longer period is specified in the applicable Order. ISS recommends using the evaluation Software only in a non-production test environment. With respect to evaluation Software, the terms of this Section 3 A (iv) supersede any conflicting provisions in the Agreement. ISS has no obligation to provide support, maintenance, upgrades, modifications, or new releases for the evaluation Software. CUSTOMER AGREES THAT THE EVALUATION SOFTWARE IS BEING DELIVERED "AS-IS" FOR TEST AND EVALUATION PURPOSES ONLY. CUSTOMER'S SOLE AND EXCLUSIVE REMEDY SHALL BE TO TERMINATE THE EVALUATION LICENSE BY WRITTEN NOTICE TO ISS.

**B. Appliances.**

(i). **Description and License.** ISS Appliances are listed in the applicable Order. In consideration of the fees paid by Customer and subject to the terms and conditions of this Agreement, ISS grants Customer a nonexclusive, nontransferable license to use such pre-installed Software only in conjunction with the Hardware with which it is originally supplied and only during the usable life of such Hardware. Such licensed Software may not be removed from the Hardware. ISS' Software warranty for the pre-installed ISS Software is set forth in Section 3 A (iii) above. In connection with fulfilling an Appliance Order, ISS may deliver a new Appliance model in place of a model that is being phased out or deliver a model with equal or greater functionality and performance in place of a model that is unavailable; provided that the delivered model meets or exceeds the hardware specifications of the replaced model.

(ii). **Hardware Warranty.** ISS warrants that, during the period ending one (1) year after the Hardware has shipped from ISS or its manufacturer's facility the Hardware will be free from defects in materials and workmanship under normal authorized use, consistent with the instructions contained in the product documentation. No warranty will apply if the Hardware: (a) has not been installed, operated, repaired or maintained in accordance with instructions supplied by ISS in the product documentation; or (b) has been subjected to abnormal physical, thermal or electrical stress, misuse, negligence or accident. This limited warranty extends only to the original purchaser. If the Hardware does not operate as warranted during the warranty period, Customer's sole and exclusive remedy and the entire liability of ISS, its suppliers and affiliates under this warranty is, at ISS' option, either: (x) to replace the Hardware with new or reconditioned Hardware; (y) to correct the reported defect; or (z) to refund the purchase price of the Appliance upon the return of such to ISS. The replacement Hardware assumes the remaining warranty period of the replaced item. The replaced item becomes the property of ISS. ISS shall not be responsible for Customer's or any third party's software, firmware, information or memory data contained in, stored on, or integrated with any Hardware returned to ISS, whether under warranty or not. ISS' warranty obligations do not include installation support.

(iii). **Appliance Maintenance.** Maintenance for Appliance products includes (a) technical support for the Appliance product, (b) repair, replacement or advanced exchange of the Hardware, and (c) related Software security content updates, fixes and enhancements for the pre-installed Software during the period that Customer has paid the applicable maintenance fees in accordance with ISS' prevailing Maintenance and Support Policy available at http://documents.iss.net/maintenance_policy.pdf.

(iv). **Appliance Evaluation.** Except as set forth in this Section, the provisions set forth in Section 3 A (iv) above shall apply to any evaluation of ISS Appliance products. If ISS is providing the Appliance to Customer on an evaluation trial basis, the term of such evaluation ends thirty (30) days after its delivery, unless a longer period is specified in the applicable Order. Upon expiration of the evaluation period, Customer shall discontinue all use of the Appliance products and return them to ISS along with all associated software, materials and documentation provided by ISS. If ISS has not received the Appliance products from Customer in new condition (normal wear and tear excepted) within fifteen (15) days after expiration of such evaluation period, ISS may in its sole discretion pursue any and all rights and remedies available to it at law or in equity.

**D. Infringement.**

(i) ISS will defend, at its expense, any third party claim brought against Customer alleging that Customer's permitted use the Products, **Deliverables or Services** infringe upon such third party's patent, copyright, trade secret or other intellectual property right which is enforceable in the United States or in any country that is a member party to the Berne Convention. ISS will indemnify and hold Customer harmless from any costs and damages, including reasonable attorneys' fees, awarded against Customer as a result of such claim, or agreed to in settlement by ISS, provided ISS is given prompt written notice of such claim, sole control of the defense and any related settlement negotiations, and reasonable assistance (at ISS' expense) from Customer.

(ii) If such a claim is made, or in ISS' opinion appears likely to be made, ISS may at its option and expense: (a) continue Customer's right to use the affected Products, **Deliverables or Services**; (b) replace or modify the allegedly infringing portion of the Products, **Deliverables or Services** with a functionally equivalent item; or (c) if none of these are commercially reasonable, Customer agrees to discontinue use of and return, if applicable, the affected Products, **Deliverables or Services** or portion thereof to ISS upon written request whereupon ISS shall refund the fees paid for the affected Products, **Deliverables or Services** or portion thereof, less amortization for use of Products and/or **Deliverables** on a straight line basis over a period of three (3) years from delivery of the Products **and/or Deliverables**; provided, however, subscription Software license fees shall be refunded for the unused portion of the license term.

(iii) This represents ISS' entire obligation and Customer's sole and exclusive remedy regarding any claim of infringement. ISS has no obligation regarding any claim to the extent arising out of: (a) modified Products and/or **Deliverables** unless ISS has authorized such modification in writing; (b) use of the Products and/or **Deliverables** in a manner which is not

**INTERNET|SECURITY|SYSTEMS®**
*Ahead of the threat.™*

WWW.ISS.NET

consistent with the documentation and specifications provided by ISS; (c) information or data provided by Customer; or (d) non-ISS products or services used in combination with the Products and/or Deliverables.

E. **Compliance.** Customer shall provide written verification of its compliance with this Agreement within forty-five (45) days of ISS' written request. Upon thirty (30) days prior written notice, at its own expense ISS may appoint a nationally recognized software use auditor, to whom Customer has no reasonable objection and that **has entered into a Non-Disclosure Agreement with and satisfactory to Customer**, to audit and examine use and records at Customer offices during normal business hours, solely for the purpose of confirming that Customer's use of the Software is in compliance with this Agreement. If such audit by Customer or ISS should reveal that use of the Software has been expanded beyond the scope of use and/or the number of devices specified in the applicable Order(s), ISS shall have the right to charge Customer the applicable current list prices applicable to such expanded Software use.

4. **GENERAL**
A. **Confidentiality.** The party receiving Confidential Information ("Recipient") will use the same care and discretion, but not less than reasonable care, to avoid disclosure, publication or dissemination of such Confidential Information as it uses with its own similar information that it does not wish to disclose, publish or disseminate. Each party agrees: (i) Confidential Information will remain the sole property of the disclosing party ("Discloser"), (ii) Confidential Information will be used by the Recipient only for purposes of this Agreement, and (iii) not to, directly or indirectly, disclose, copy, transfer or allow access to any Confidential Information obtained from the Discloser, provided, however, Recipient may disclose Confidential Information to its employees, and to third parties performing services for Recipient in carrying out the purposes of this Agreement, who have a need to know and who are under non-disclosure obligations no less restrictive than those in this Agreement. Recipient may disclose Confidential Information to the extent required by law, provided it shall give Discloser reasonable notice prior to such disclosure and shall comply with any protective order or equivalent. Information will not be considered to be Confidential Information to the extent: (1) available to the public other than by a breach of this Agreement, (2) received from a third party entitled to disclose such information without restriction, (3) independently developed by Recipient without use of Discloser's Confidential Information, or (4) lawfully known to Recipient at the time of disclosure. The parties acknowledge that trade secrets of either party are to be held in confidence for so long as such remain a trade secret. Each party's obligations under this Section are of a unique character and each agrees that any breach may result in irreparable and continuing damage to the other party for which there shall be no adequate remedy in monetary damages. In the event of such a breach or threatened breach, the Discloser shall be entitled to seek equitable relief and other available remedies.
B. **Export.** Customer will not transfer, export, or re-export the Products, Services or Third Party Products, and any related technology, or any direct product of either except in full compliance with the export controls administered by the United States and other countries, and any applicable import and use restrictions. Customer agrees that it will not export or re-export such items to any person or entity on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Denied Persons List or Entity List or such additional lists as may be issued by the U.S. Government or to Cuba, Iran, Libya, North Korea, Sudan, Syria, as the same may be revised from time to time, or for use with chemical or biological weapons, sensitive nuclear end-uses, or missiles. Customer represents and warrants that it is not located in, under control of, or a national or resident of any such country or on any such list. Many Products and Services include encryption and export outside of the United States or Canada is strictly controlled by U.S. laws and regulations. ISS makes its current export classification information available at http://www.iss.net/export. Please contact ISS' Sourcing and Fulfillment group for export questions relating to the Products and Services (fulfillment@iss.net). "Export" includes among other things an actual shipment, transfer or transmission of such items outside of the United States or Canada (including down-loading such items to a location outside of the United States or Canada or making such items available to persons outside of the United States or Canada via the Internet or other electronic means). Customer understands that the foregoing obligations are U.S. legal requirements and agrees that they shall survive any term or termination of this Agreement.

C. **Payment; Shipping.** All amounts are due and payable within 30 days of Customer's receipt of invoice. Prices, fees and other charges are set forth herein and are exclusive of taxes. If any authority imposes a tax (including sales, use, withholding, value added, or other taxes), duty, levy or fee upon Products or Third Party Products supplied by ISS under this Agreement, excluding those based on ISS' net income, Customer agrees to pay that amount as specified in the invoice or supply sufficient exemption documentation. For travel expenses approved in advance by Customer in writing, ISS will invoice reasonable actual travel and living expenses incurred in providing the Services; provided, however, **ISS shall provide supporting documentation as reasonably requested by Customer.** All references to prices, charges, fees or other amounts are in U.S. dollars. Customer shall notify ISS in writing of any dispute regarding an invoice, including reasonable detail describing the inaccuracy, within **thirty (30) days** of its receipt. Unless otherwise specified in the Order, Software is delivered to Customer by supplying Customer with license key data. If Customer has not already downloaded the Software and documentation, then it is available for download at http://www.iss.net/download/. All other Products and Third Party Products are delivered FOB origin. Title and risk of loss pass to Customer when delivered FOB origin.

D. **Warranties, Exclusive Warranties and Limitation of Liability. ISS represents and warrants that (i) it is a duly organized and validly existing corporation in good standing in the laws of the state in which it was formed; (ii) it has all authorizations, approvals and consents required for the execution and fulfillment of the obligations herein, (iii) it has full right, power and authority to enter into this Agreement and properly carry out all of the terms hereof, and (iv) at all times during the performance of the Services under this Agreement, it shall fully comply with all applicable federal and state laws. ISS further represents and warrants that (a) neither the execution and delivery of this Agreement, the licensing of the applicable Software, nor the performance of the applicable Services violate or will violate any contractual obligations that ISS has to any other entity or person, and (b) the Software, Services, or anything provided by ISS to Client under this Agreement or any Order do not infringe upon, or misappropriate, any property, intellectual property rights or other rights of any third party.** ALL WARRANTIES IN THIS AGREEMENT ARE EXCLUSIVE, AND REPLACE ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. EXCEPT FOR **A BREACH OF CONFIDENTIALITY OR INFRINGEMENT AS SET FORTH HEREIN**, OR IN THE EVENT OF DEATH, PERSONAL INJURY OR DAMAGE TO TANGIBLE PERSONAL PROPERTY ARISING OUT OF NEGLIGENCE OR WILLFUL MISCONDUCT, IN NO EVENT WILL ISS' LIABILITY EXCEED : (i) AN AMOUNT EQUAL

**INTERNET|SECURITY|SYSTEMS®**
*Ahead of the threat.™*

WWW.ISS.NET

TO THE TWO TIMES THE FEES PAID FOR THE PRODUCT OR SERVICE THAT IS THE SUBJECT OF THE CLAIM, OR (II) FOR MANAGED SERVICES, IF ANY, THE SUBSCRIPTION PRICE FOR THE MANAGED SERVICE THAT IS THE SUBJECT OF THE CLAIM FOR THE TWELVE (12) MONTH PERIOD PRECEDING THE EVENTS GIVING RISE TO THE CLAIM. EXCEPT AS PROVIDED HEREIN AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER ISS NOR ITS SUPPLIERS WILL BE LIABLE UNDER ANY CIRCUMSTANCES FOR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, LOSS OF DATA, LOST PROFITS, LOSS OF USE, OR NETWORK OR COMPUTER MALFUNCTION, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT FOR NON-PAYMENT, NEITHER PARTY WILL BRING A LEGAL ACTION UNDER THIS AGREEMENT MORE THAN TWO YEARS AFTER THE CAUSE OF ACTION AROSE.

**E. Disclaimers.** Products and Services are not warranted to operate uninterrupted or error free. New security threats are constantly evolving and no Product or Service designed to provide protection from such threats will be able to insulate network resources from all security threats and vulnerabilities, and are no guarantee against unsolicited e-mails and undesirable internet content. Products and Services are not fault tolerant and are not designed or intended for use in hazardous environments requiring fail-safe operation, including without limitation aircraft navigation, air traffic control systems, weapon systems, life-support systems, nuclear facilities, or any other applications in which Product or Service failure could lead to death, personal injury, or property damage. Customer acknowledges Products or Services for testing, assessing, scanning or monitoring the security of network resources, including implementation and deployment, may disclose or create problems in the operation of such resources; therefore, Customer and its employees and agents represent and warrant that (i) they are fully authorized by the Customer and the owners of the network resources to enter into this Agreement and each Order, (ii) they and the owners of such network resources understand and accept the risks involved which in some circumstances could include without limitation, down-time, loss of connectivity or data, system crashes or performance degradation; and (iii) Customer will procure and use the Products and Services in accordance with all applicable laws and regulations.

**F. Third Party Products.** Use of Third Party Product(s) supplied hereunder, if any, will be subject solely to the manufacturer's terms and conditions which will be provided to Customer upon delivery. ISS will pass any Third Party Product warranties through to Customer to the extent authorized. If ISS supplies Licensee with Crystal Decisions Runtime Software, then the following additional terms apply:
- Customer agrees not to alter, disassemble, decompile, translate, adapt or reverse-engineer the Runtime Software or the report file (.RPT) format, or to use, distribute or integrate the Runtime Software with any general-purpose report writing, data analysis or report delivery product or any other product that performs the same of similar functions as Crystal Decisions' product offerings;
- Customer agrees not to use the Runtime Software to create for distribution a product that converts the report file (.RPT) format to an alternative report file format used by any general-purpose report writing, data analysis or report delivery product that is not the property of Crystal Decisions;
- Customer agrees not to use the Runtime Software on a rental or timesharing basis or to operate a service bureau facility for the benefit of third-parties unless Customer first acquires an Application Service Provider License from Crystal Decisions; and
CRYSTAL DECISIONS AND ITS SUPPLIERS DISCLAIM ALL WARRANTIES, EXPRESS, OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT OF THIRD PARTY RIGHTS. CRYSTAL DECISIONS AND ITS SUPPLIERS SHALL HAVE NO LIABILITY WHATSOEVER UNDER THIS AGREEMENT OR IN CONNECTION WITH THE RUNTIME SOFTWARE.
In this Section 4 (F) "Runtime Software" means the Crystal Reports software and associated documentation supplied by ISS and any updates, additional modules, or additional software provided by Crystal Decisions in connection therewith; it includes Crystal Decisions' Design Tools, Report Application Server and Runtime Software, but does not include any promotional software of other software products provided in the same package, which shall be governed by the online software license agreements included with such promotional software or software product.

**G. Proprietary Rights.** Except as expressly set forth herein, no rights or licenses are granted either directly or by implication by ISS or its suppliers. ISS and its suppliers own and retain all right, title and interest in and to: (i) all of the service marks, trademarks, trade names, logos, slogans or any other designations associated with the Products and Services; and (ii) all copyrights, patent rights, trade secret rights, intellectual property rights, and other proprietary rights relating to the Products and Services including without limitation rights in software, scripts, utilities, business processes and methodologies, tools, templates, reports, policy and plan formats, deliverables, designs, offerings, and pricing furnished by ISS. Except as expressly set forth herein Products and Services may not be duplicated, modified, reproduced, or used for the benefit of a third party. Customer will not identify itself as the owner of, or register or apply for registration of any copyright, patent, trademark, service mark or other intellectual property right relating to the Products and Services.

**H. Termination.** Either party may terminate this Agreement or any Order in the event of a material breach by the other party which is not cured within thirty (30) days of receipt of written notice thereof. Termination of this Agreement or any Order shall not relieve Customer of its obligation to pay all fees incurred prior to the effective date of such termination and shall not limit either party from pursuing any remedies available to it. Terms of this Agreement relating to confidentiality, proprietary rights, disclaimers, limitation of liability and infringement, along with other provisions intended to survive, will survive termination of this Agreement.

**I. Assignment.** This Agreement shall not be assigned without the prior written consent of the other party, which shall not be unreasonably withheld. However, either party may assign this Agreement in its entirety (and not in part) without the written consent of the other party to an entity controlling, controlled by, or under common control with such party or to a successor of such party in the event of the sale of all or substantially all of the assets and/or business of such party to which this Agreement relates, provided any such assignee is not a competitor of ISS, is able to perform this Agreement, and agrees in writing to be bound by all of the terms and conditions of this Agreement.

**J. Force Majeure.** Neither party shall be liable for any delay in performing its obligations under this Agreement, if such delay is caused by circumstances beyond the party's reasonable control and not caused or contributed to by its negligence (each a "**Force Majeure**"), including without limitation, any acts of God, war, terrorism, floods, windstorm, labor disputes, changes in laws or regulations, or delay of essential materials or services, provided that such party gives commercially reasonable notice thereof to the other, given the circumstances. In the event the non-performance or delay in performance of obligations under this Agreement is due to a Force Majeure event, the period of performance shall be

**INTERNET|SECURITY|SYSTEMS®**
*Ahead of the threat.*

WWW.ISS.NET

extended and any payments suspended for a period equal to the duration of the Force Majeure and for any additional time that the parties may mutually agree is necessary. However, the party not affected by the Force Majeure shall have the right to terminate this Agreement without penalty, if the party affected by the Force Majeure event is unable to resume full performance within thirty (30) days of occurrence of the Force Majeure event.

K. **Choice of Law; Arbitration.** This Agreement is governed by the laws of the State of California excluding conflict of law rules. The United Nations Convention on Contracts for the International Sale of Goods will not apply to this Agreement in any respect. Any dispute and/or claim arising from or in connection with this Agreement shall be subject to mediation and/or binding arbitration in Irvine, California in accordance with the commercial rules of the American Arbitration Association and judgment of the arbitral award may be entered in any court having jurisdiction thereof. The arbitrator(s) shall not be empowered to award damages in excess of actual damages. Notwithstanding the foregoing, either party may initiate an action in the courts of competent jurisdiction in a convenient forum to seek to enforce Section 4.C, or to prevent or halt a violation of Section 4.A. The prevailing party in any dispute under this section shall recover reasonable attorney's fees and costs (including arbitration costs) from the other party. All information relating to a dispute, claim, mediation, arbitration, and/or lawsuit hereunder shall be treated as Confidential Information and shall not be disclosed by either party to any third party except as may be required by law or regulation in accordance with Section 4.A.

L. **U.S. Government Customers.** Pursuant to DFAR section 227.7202 and FAR section 12.212, any use, modification, reproduction, release, performance, display, disclosure or distribution of Products and Services by the U.S. Government (including prime contractors, and subcontractors at any tier, acting for or on behalf of the U.S. Government) is governed solely by the terms of this Agreement, and is prohibited except to the extent expressly set forth herein.

M. **Notices.** All notices under this Agreement must be in writing and will be effective when delivered by facsimile with confirmation of receipt, overnight delivery service, or certified mail return receipt requested, to the address specified herein (addressed in the case of ISS to the attention of its Contracts Manager) or such other address as the parties may designate by notice from time to time.

N. **Miscellaneous.** This Agreement is the complete and exclusive agreement between the parties regarding its subject matter and supersedes any prior oral or written proposals, correspondence, representations, warranties and communications, including any shrink wrap or click wrap terms and conditions. Changes to this Agreement will have no force or effect unless made in a writing expressly referring to this Agreement signed by each party's authorized representative. Each Order will constitute a separate contract upon the terms and conditions of this Agreement and shall control over any conflicting terms in this Agreement. This Agreement may be executed in any number of counterparts, each of which will be deemed an original, and all of which together will constitute but one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile or any other reliable means will be effective for all purposes as delivery of a manually executed original counterpart. Either party may maintain a copy of this Agreement in electronic form. The parties further agree that a copy produced from the delivered counterpart or electronic form by any reliable means (for example, photocopy, facsimile or printed image) will in all respects be considered an original. Notwithstanding anything to the contrary, the terms and conditions of this Agreement will supersede all terms and conditions set forth in any purchase order, even if signed by the parties. ISS' signature on a purchase order will only constitute acknowledgement of receipt regardless of any purchase order terms to the contrary. From time to time ISS may email communications to Customer representatives regarding various product or service offerings. ISS' obligations apply only in the country in which Products were supplied by ISS. Titles of Sections are for convenience only and will not be deemed a part of this Agreement. The failure or delay of either party in exercising any of its rights under this Agreement will not be deemed a waiver of forfeiture of such rights. In the event any provisions of this Agreement or portions thereof are held to be invalid or unenforceable, the remainder of this Agreement will remain in full force and effect. The parties authorize the court to modify any invalid or unenforceable provision to the extent necessary to make it enforceable under the circumstances. The prevailing party in any claim or proceeding to enforce this Agreement shall be entitled to reimbursement of reasonable attorneys' and experts' fees and costs. ISS and Customer are independent of one another and neither party's employees will be considered employees of the other party for any purpose. This Agreement does not create a joint venture or partnership, and neither party has the authority to bind the other to any third party.

IN WITNESS WHEREOF, each party has executed this Agreement and represents and warrants that its execution has been duly authorized.

| **Customer** | **Internet Security Systems, Inc.** |
|---|---|
| Signature: _(signed)_ | Signature: _____ |
| Name: Brad Morrice | Name: _____ |
| Title: President | Title: _____ |
| Date: 6/30/06 | Date: _____ |

(Rev 060526)

**INTERNET SECURITY SYSTEMS®**
*Ahead of the threat™*

WWW.ISS.NET

## ATTACHMENT 1 - ORDER FORM

**Managed Services:**

ISS will provide Managed Services, Products and Third Party Products, if any, as detailed in accordance with the terms and conditions of the Master Agreement by and between Customer and ISS, which has been executed contemporaneously herewith and is incorporated by reference, as well as in accordance with the applicable authorized reseller/distributor sales quotation #:_____QT-20541_____, which is incorporated herein by reference. Managed Services fees are invoiced monthly in advance. Product and Third Party Product fees, if any, and one time fees will be invoiced at time of Order.

ISS acknowledges and agrees that all payments due under this Order will be paid by Customer to **Accuvant**, who is acting in the capacity of an authorized reseller/distributor of ISS products and services. ISS agrees that it will look solely to its authorized reseller/distributor for payment of the fees due ISS with respect to the products and services provided under this Order. Nevertheless, ISS shall remain responsible for satisfying the terms and conditions contained herein and contained in the Master Agreement.

- Customer contact for above Managed Services:

| |
|---|
| Contact Name: Ian Lim |
| Phone: 949-517-0404 |
| Email: IIim@ncen.com |
| Mailing Address: 3353 Michelson Dr., Irvine, CA 92612 |
| |

- Customer billing contact for above Managed Services:

| |
|---|
| Billing Contact Name: Audrey Scott |
| Phone: 949-743-7686 |
| Email: AuScott@ncen.com |
| Billing Address: 3353 Michelson Dr., Irvine, CA 92612 |
| |
| Purchase Order Number (if required for payment): |

- ISS contact for above Services:

| |
|---|
| Sales Representative: John Lambert |
| Business Development Manager: Thomas Ryan |

**Customer**
Signature: *[signed]*
Name: Brad Morrice
Title: President
Date: 6/30/06

**Internet Security Systems, Inc.**
Signature: _____
Name: _____
Title: _____
Date: _____