## EXHIBIT A

(Agreement with Special Counsel)



# TERMS OF SERVICE (California)

As used in this document, the term "Company" refers to Special Counsel, Inc., and the term "Client" refers to New Century Financial Corporation for which Company provides temporary, temp to hire and/or direct hire services pursuant to the terms and conditions set forth herein. These Terms of Service shall be effective as of (Insert Date).

Client is currently in the process of closing operations, downsizing its workforce, and liquidating assets following a Chapter 11 Bankruptcy proceeding filing on April 2, 2007. Client desires to retain Company to provide certain personnel and services as set forth herein.

1. **Payment and Invoicing.** Company professionals will complete weekly time records to be signed by a representative of Client. Company will invoice Client regularly (no less frequently than monthly) for services performed and Client shall pay for all hours worked at agreed upon rates, plus approved overtime compensation where required by applicable federal or state law, and for reimbursement of approved travel related and other expenses. For those Company professionals who are working in non-attorney positions (i.e. paralegal, support staff, legal nurse or other similar positions), and for those Company attorneys who are not paid on a salaried basis: (a) the quoted rates shall apply for the first eight (8) hours of work per day and forty (40) hours of work per workweek; and (b) compensation shall be at (i) one and one-half (1 ½) times the rate for work in excess of eight (8) hours per day, for work in excess of forty (40) hours per workweek, and for the first eight (8) hours on a seventh consecutive day of work in a workweek, and (ii) two (2) times the rate for work in excess of twelve (12) hours per day and for work in excess of eight (8) hours on a seventh consecutive day of work in a workweek, or as otherwise prescribed by law. Client shall pay invoices upon receipt and shall be considered in default thirty (30) days from issuance of Company invoice, after which time a default charge will be imposed at one and one-half percent (1 ½ %) per month on unpaid balances (annual percentage rate of eighteen percent (18%)) or the maximum legal interest rate, whichever is lower. Client agrees to pay all necessary collection costs of amounts past due, including reasonable attorney's fees and costs. Company reserves the right, at its option following a default by Client in the payment of any amounts due hereunder, to discontinue any extension of credit. Client shall remain responsible for the payment of all applicable federal or state sales or use taxes, or related levies, attributable to the services rendered hereunder. This Agreement shall be deemed to have been made in Duval County, Florida. As part of the consideration for this Agreement, the parties agree that any action or proceeding for default in payment of charges shall be litigated only in state or federal courts having situs in and venue in any such court. Client has the right to request the removal of a Company professional at any time without cause (subject to any applicable local, state and federal laws and Bar rules).

2. **Relationship of Parties.**
(a) The parties agree that the relationship between them is that of independent contractor and that neither party shall have any authority to represent or bind the other and that neither party shall hold itself out or have any authority as an agent of the other for any purpose whatsoever. Nothing herein shall be construed as creating a principal and agent, joint venture, or any other type of relationship besides independent contractor between Client and Company.

(b) Company and Client shall each remain solely responsible for the payment of all wages and benefits for each of their own respective employees, and neither party shall be responsible for the withholding or payment of any payroll deductions or taxes, or the provision of workers' compensation or unemployment insurance coverage, for or on behalf of employees of the other party or for any payment or expense in respect of claims arising under the other party's employee benefit plans. As between Company and Client, Company shall remain specifically responsible for any applicable federal, state or local withholding or income taxes, paying Social Security taxes, and providing unemployment compensation and workers' compensation insurance or coverage for its employees and contractors providing services hereunder. Client will not pay any of Company's employees directly or advance any funds for them.

(c) Company is not engaged in the practice of law and has not been retained to provide legal advice or services. Services which constitute the practice of law are performed only by the legal practitioners licensed and authorized to practice law in the jurisdictions where such licenses are required and only under the supervision and control of duly authorized or licensed legal professionals under Client's direction or control. Company does not have the ability to conduct conflict checks, and Client agrees and understands that Company has not and will not conduct any such check. Client shall not request or allow a Special Counsel employee to sign or certify any paper, statement or return, pertaining to underwriting, tax, SEC or other related matters.

(d) Client will direct the performance of all services performed by Company's legal personnel (i.e. attorneys, paralegals and legal nurses) during the tenure of their assignment. Accordingly, Client waives (on behalf of itself and its insurance companies to the extent any such losses may be covered by insurance) any right of recovery against Company for any losses, costs, expenses or damages incurred by Client arising out of the work product or services provided or not provided, including any claims of negligence or malpractice, arising from legal services or advice by

# SPECIAL COUNSEL

Company's employees assigned to Client and, further, will indemnify, defend and hold Company harmless from any claims arising out of the foregoing rules

**3. Direct Hire Services.** Client shall notify Company if it desires to retain, employ, associate, compensate, use or enter into a relationship with any Company employee other than through Company. In such event, Company shall be entitled to (a) (25%) of any attorney's first year's gross compensation; (b) (20%) of a paralegal's or legal nurse's first year's gross compensation; or (c) (15%) of the first year gross compensation of a legal secretary, receptionist, or any other support level legal professional.

**4. Non-Hire and Conversion Fees for Temp and Temp to Hire Services.** Without Company's written consent, during the period that Company is providing services to Client and for one (1) year thereafter and except through Company, Client shall refrain from soliciting, hiring or accepting services or work, directly or indirectly, from any person who is proposed to Client by Company or who at any time provided services through or on behalf of Company, except upon payment of a "Release Fee" equal to the applicable percentage set forth in Section 3 of the employee's first year's gross compensation which shall be discounted as follows: For attorneys, the Release Fee shall be reduced by 25% for each 500 hours the Company is fully compensated by Client for work performed by the attorney for Client within the preceding 12 months; For paralegals, legal nurses or legal librarians, the Release Fee shall be reduced by 25% for each 250 hours in the preceding 6 months; For legal support staff and clerical personnel the Release Fee shall be reduced by 25% for each 140 hours in the preceding 13 weeks.

**5. Limits of Liability.**
(a)  COMPANY EXCLUDES AND DISCLAIMS ALL WARRANTIES WHATSOEVER, INCLUDING ANY WARRANTY OF NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE.

(b)  NEITHER PARTY SHALL BE LIABLE TO THE OTHER WHATSOEVER FOR ANY SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, INCLUDING ANY DAMAGES ON ACCOUNT OF LOST PROFITS, LOST DATA, LOSS OF USE OF DATA, OR LOST OPPORTUNITY, WHETHER OR NOT PLACED ON NOTICE OF ANY SUCH ALLEGED DAMAGES AND REGARDLESS OF THE FORM OF ACTION IN WHICH SUCH DAMAGES MAY BE SOUGHT.

**6. Indemnification.** Each party (the "Indemnifying Party") will indemnify, defend and hold harmless the other party (the "Indemnified Party") from and against all claims, demands, suits and expenses (including reasonable attorneys' fees) brought by any person or party for real or tangible property damage and/or bodily injury (including death) arising from the negligent or illegal act or omission of the Indemnifying Party or any of its employees and contractors in the performance of services hereunder, except to the extent of the negligent or illegal act or omission of the Indemnified Party of its employees and contractors.

**7. Confidentiality and Inventions.** Company shall use reasonable efforts to maintain the confidentiality of information or trade secrets provided to or obtained by Company as a result of performing services to Client which are either identified as confidential or trade secrets or which a reasonable person would know or reasonably should know is confidential. Upon written request, Company shall cause each employee or contractor assigned to provide services to Client to enter into a confidentiality and invention agreement in such form as Client may reasonably request.

**8. Assignment.** Neither party shall assign any of its rights or obligations under these Terms of Service without the prior written consent of the other party, which consent shall not unreasonably be withheld. The only exception is that either party may assign its rights and obligations hereunder to an affiliate, successor or assign in a change of corporate control that does not materially affect the duties of the other party hereunder. Nothing in these Terms of Service, whether express or implied, is intended to confer any rights or remedies on any other person or party other than the parties hereto and their respective successors and assigns.

**9. Survival.** The parties' obligations under these Terms of Service, which by their nature continue beyond termination, cancellation or expiration of these Terms of Service, shall survive termination, cancellation or expiration of these Terms of Service.

**10. Arbitration.** The parties agree that any dispute between them arising out of this Agreement and the services hereunder shall be resolved by binding arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date any such action thereunder is initiated. A single arbitrator will make a determination and render an award within thirty (30) days of the close of evidence in such arbitration proceeding but will have no authority to award costs or punitive damages unless the parties so agree in writing. The parties waive right to jury trial and agree that the arbitration award will be final and binding and that judgment will be entered thereon in any court of competent jurisdiction. Notwithstanding the foregoing, any party may seek immediate judicial intervention to prevent any unauthorized use or disclosure of the confidential or proprietary information of the party (or those to whom it owes a duty of confidentiality) bringing any such action.



**SPECIAL COUNSEL**

**11. Entire Agreement.** These Terms of Service represent the entire agreement between the parties and supersede any prior understandings or agreements whether written or oral between the parties respecting the subject matter herein. These Terms of Service may only be amended in a writing specifically referencing this provision and executed by both parties. These Terms of Service shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns, subject to the limitations contained herein. The unenforceability, invalidity or illegality of any provision of these Terms of Service shall not render any other provision unenforceable, invalid or illegal and shall be subject to reformation to the extent possible to best express the original intent of the parties.

**12. Termination.** Client may terminate this Agreement at any time and for any reason, without penalty or costs, upon written notice to Company. Notwithstanding anything to the contrary, Company acknowledges and agrees that this Agreement does not constitute any guaranteed term of services. Upon any termination of this Agreement, Company shall only be entitled to the compensation as provided herein. There shall be no additional compensation paid to Company for any termination of the Agreement in accordance with its terms. If company is terminated for any reason, Company will be entitled to compensation for the rates and charges applicable to the services rendered up to the termination date.

**By accepting the services of Company, Client understands and agrees that these Terms of Service shall govern the provision of services by Company to Client.**

*JPS.*