## EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| NEW CENTURY TRS HOLDINGS INC., a Delaware corporation, et al.,[1] | : : | Case No. 07-10416 (KJC) |
| | : | Jointly Administered |
| Debtors. | : | |

### AFFIDAVIT OF MICHAEL TINSLEY IN SUPPORT OF DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO SUPPLEMENT TO SECURITIES PURCHASE AGREEMENT BY AND BETWEEN ELLINGTON MANAGEMENT GROUP, L.L.C., ON BEHALF OF ITS CLIENT FUNDS, AND MORGAN STANLEY MORTGAGE CAPITAL INC. DATED MAY 8, 2007

I, Michael Tinsley, state as follows:

1. I am Chief Financial Officer of debtor and debtor in possession New Century Financial Corporation ("NCF") and Director of AlixPartners.

2. I submit this Affidavit in support of the Debtors' motion for an order authorizing the Debtors to enter into a supplement to the Securities Purchase Agreement by and between Ellington Management Group, L.L.C. ("Ellington"), on behalf of its client funds, and Morgan Stanley Mortgage Capital Inc. ("MSMCI") dated May 8, 2007 (the "Motion"). Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the

Motion. All facts set forth in this Affidavit are based on my personal knowledge, upon information supplied to me by people who report to me at the Debtors' operations, upon information supplied to me by the Debtors' professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to the Debtors' operations, financial condition and related business issues. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Affidavit on behalf of the Debtors.

3. By the Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m) and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9019: (i) authorizing the Debtors to enter into a supplement (the "Supplement") to the Securities Purchase Agreement by and between Ellington and MSMCI dated May 8, 2007 (the "SPA"), (ii) authorizing New Century to sell a certain trust certificate to Spyridon Financial Corporation ("Spyridon") in accordance with the terms and conditions of the Supplement, free and clear of liens, claims, and interests, and (iii) making certain related findings.

4. MSMCI is a party to (a) a Master Repurchase Agreement, dated as of December 12, 2005 (as amended and restated, supplemented or otherwise modified and in effect from time to time, the "MRA"), by and among (i) NC Capital Corporation ("NC Capital"), New Century Mortgage Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R E O Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LW (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage,

Residual IV Corporation, Home123 Corporation, New Century Credit Corporation (the "Sellers"), each of which is a Debtor, (ii) the buyers from time to time parties thereto (the "Buyers"), including MSMCI, and (iii) MSMCI, as agent for the Buyers (the "Agent"); and (b) a related Guaranty, dated December 12, 2005 (as amended, restated, supplemented or otherwise modified and in effect from time to time, the "Guaranty") made by debtor NCF (collectively with the Sellers, the "NCFC Entities") in favor of the Buyers.

5.   MSMCI and NC Capital are parties to that certain Sixth Amended and Restated Mortgage Loan Purchase and Warranties Agreement (the "Loan Purchase Agreement") dated as of May 1, 2006, pursuant to which MSMCI agreed to purchase from NC Capital, and NC Capital agreed to sell to MSMCI, certain mortgage loans, subject to an obligation (the "EPD Obligation") on the part of NC Capital, at MSMCI's option, to repurchase any such mortgage loan as to which the related mortgagor is delinquent with respect to such mortgage loan's first monthly payment, either (a) after origination of such mortgage loan or (b) after the related closing date for such purchase and sale.

6.   Pre-petition, the Agent sent to the NCFC Entities a written "Notice of Event of Default, Acceleration and Exercise of Remedies" in which the Agent, among other things, stated that Events of Default had occurred and were continuing under the MRA and that the Purchase Price of all then-outstanding Transactions (as defined in the MRA) was immediately due and payable, together with other specified amounts.

7.   Pursuant to the Stipulation and Order dated April 27, 2007, MSMCI, the NCFC Entities, and the Committee entered into an Agreement for the Disposition of Certain Mortgage Loans and Residual Interests (the "Agreement") in order to set forth, among other things,

---

TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership

their mutual understandings and agreements with respect to auction procedures for (i) the mortgage loans sold to the Buyers under the MRA and which the Sellers were obligated to repurchase pursuant to the MRA (the "Mortgage Loans"), and (ii) the residual interests (the "Residuals") in a number of securitization trusts (the "Securitization Trusts"), the proceeds of which were to be used, inter alia, to pay amounts asserted by MSMCI under the MRA and the Loan Purchase Agreement, subject to the parties' reservation of rights and defenses with respect to the amount and validity of MSMCI's claims and those of its subsidiaries and affiliates against the Debtors, and agreed that a sale of the Mortgage Loans and the Residuals pursuant to the auction procedures set forth in the Agreement would be deemed to be commercially reasonable and subject to the "safe harbor" provisions for "repurchase agreements" (as defined in section 101 of the Bankruptcy Code) and/or "securities contracts" (as defined in section 741 of the Bankruptcy Code).

8.    An auction was held in accordance with the Agreement. With respect to the Residuals, Ellington, on behalf of its client funds, including Spyridon, was the prevailing bidder at the auction and agreed to purchase the Residuals pursuant to the SPA. In connection with the closing, Spyridon raised the issue of NCF's qualification and taxation as a "real estate investment trust" ("REIT") for U.S. income tax purposes for the tax year 2007.

9.    I am advised by the Debtors' tax accountants that federal tax law sets forth a number of complex requirements for qualification as a REIT, among those requirements being that at least 75% of the value of the REIT's total assets must be represented by real estate assets, cash and cash items (including receivables), and government securities as of the close of each quarter of each tax year. I am further advised that, for tax purposes, assets subject to the MRA are considered to remain assets of the Debtors until the close of the foreclosure sale, so the Debtors would, at a minimum have ownership of those assets for tax purposes prior to the close of the foreclosure sale.

As the Debtors were in the process of selling substantially all of their real estate assets at that time, it was ascertained that if all of the Residuals were sold during 2007, NCF's ability to continue to satisfy the asset test for REITs could be in doubt.

10. I am further advised that the maintenance of NCF's REIT status through December 31, 2007 is in the interest of both Spyridon and the Debtors. If NCF's REIT status were lost on or before December 31, 2007, NCF would be subject to corporate tax on its income for the entire 2007 tax year. In addition, the loss of REIT status likely would have impaired the value of the Residuals (including in the hands of Spyridon) and possibly could have triggered claims against New Century.

11. In order to be assured of maintaining NCF's REIT status, the parties agreed that NCF would retain ownership of the Residual in one of the securities trusts, NCHEL 2006-S1, that was subject to the SPA (the "Trust Certificate") for tax purposes until the end of the tax year 2007, at which point the Trust Certificate would be sold to Spyridon in exchange for additional consideration. Accordingly, Spyridon did not purchase the Trust Certificate at the closing on May 24, 2007, when title to all of the Residuals subject to the SPA (other than the Trust Certificate) was sold from the Debtors to Spyridon pursuant to the terms and conditions of the SPA.

12. Based on the books and records of the Debtors and the Debtors' tax accountants, for U.S. federal income tax purposes, NCF (a) qualified as a REIT as of May 24, 2007, and (b) presently qualifies as a REIT.

13. The Supplement was negotiated in good faith and at arm's length, and was not entered into for the purpose of hindering, delaying, or defrauding creditors.

14. The Creditors Committee has been integrally involved with the negotiation of the Supplement and supports the Motion.

15. I believe that the consideration provided by Spyridon for the Trust Certificate under the Supplements represents the fair market value of and fair consideration for the Trust Certificate.

16. I believe that approval of the Supplement is in the best interests of the Debtor, their estates, and all parties in interest.

Executed under penalty of perjury at Irvine, CA on this 12 day of December, 2007.

_____
Michael Tinsley