```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


In the Matter of:          :      Bankruptcy Action # 07-10416
                           :
NEW CENTURY TRS HOLDINGS,   :      Wilmington, Delaware
INC., a Delaware           :      December 5, 2007
Corporation, et al.,       :      1:30 p.m.
         Debtors.          :
---------------------------
                  TRANSCRIPT OF OMNIBUS HEARING
           BEFORE THE HONORABLE KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

For Debtors:                CHRISTOPHER M. SAMIS, ESQ.
                            MARK D. COLLINS, ESQ.
                            Richards, Layton & Finger
                            920 North King Street
                            Wilmington, Delaware  19801

                            SUZZANNE UHLAND, ESQ. (Via Telephone)
                            O'Melveny & Myers
                            275 Battery Street
                            San Francisco, California  94111

                            ALEJANDRO MAYORKAS, ESQ.
                            O'Melveny & Myers
                            400 South Hope Street
                            Los Angeles, California  90071

For Creditor Ellington:     VAN DURRER, ESQ. (Via Telephone)
                            Skadden, Arps, Slate, Meagher & Flom
                            300 South Grand Avenue
                            Los Angeles, California  90071

Interested Party:           CAMERON PETRIE (Via Telephone)

Audio Operator:             Leslie Murin

Transcribed by:             DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, New Jersey  08026-0129
                            (856) 435-7172
                            FAX:  (856)  435-7124
                            EMAIL:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

Colloquy                                                    2

1          THE COURT:  Good afternoon, all.

2          MR. SAMIS:  Good afternoon, Your Honor.  Chris Samis

3    from Richards, Layton & Finger here today on behalf of the

4    debtors.  I'll be filling Mr. Merchant's shoes today.  Along

5    with me are Mr. Collins and Mr. Mayorkas.  Mr. Collins is from

6    RLF of course, and Mr. Mayorkas is from O&M but they'll be

7    joining us shortly.

8          THE COURT:  Are they waiting to make a dramatic

9    entrance?

10          MR. SAMIS:  Absolutely.

11          Your Honor, the agenda today, or the amended agenda

12    rather I should say, the first five matters are continued --

13    I'm sorry, the first four matters are continued.  Matter

14    number 5 was the Ellington supplement motion.  You'll note on

15    the amended agenda, Your Honor, that we intend to submit an

16    affidavit after conferring with your chambers.  And that is

17    going to happen very shortly as I understand.

18          I've been asked on the record here today to

19    emphasize the importance of having an order entered before the

20    start of the New Year for the tax reasons that are set forth

21    in the motion, and to preserve the value of the assets.

22          I believe Mr. Durrer actually from Skadden, Arps is

23    on the phone, and he would also like to make a comment as to

24    that.

25          THE COURT:  All right.

Colloquy                                              3

1           MR. DURRER:  Good afternoon, Your Honor.  Van

2      Durrer, Skadden, Arps, Slate, Meagher, Flom on behalf of

3      Ellington.  I think that counsel for the debtor summed it very

4      succinctly.  I'm not going to add much, other than to say I'm

5      available to answer any questions the Court has.

6           But given that the debtor's agreed, and it has been

7      in the process some time now selling substantially all of its

8      assets, a concern was raised as to whether or not it would

9      maintain that status which could have caused significant

10     negative, economic consequences both for the seller and the

11     buyer.  And so we decided that a fix was to leave one asset

12     behind.  Everybody agreed after analysis that this was an

13     appropriate way to preserve that status.  So we're electing to

14     do that, and Ellington will pay additional consideration

15     immediately following the close of business at the end of the

16     year to acquire that last asset.  And that's basically the

17     relief we're asking Your Honor to approve.

18          We understand Your Honor's request for the affidavit

19     which I believe is all but final and can be submitted within

20     days.  We just wanted to alert the Court in the context of the

21     many vacation plans that the Court may have, that it will be

22     important to have an order excused before year end.

23          THE COURT:  Well, I read the motion and understood

24     it, and I asked for the affidavit because the order had asked

25     for findings, factual findings.  So I was willing, we

Colloquy                                4

1  communicated to counsel to consider the motion, consider an

2  affidavit as evidence in support of the motion, at least

3  insofar as the findings were required.  I don't like to do

4  that without at least some record on sale motions.

5          I understand the timing necessity, and if the

6  certification is timely filed, it will be immediately acted

7  upon.

8          MR. DURRER:  We very much appreciate that, Your

9  Honor.

10         MS. UHLAND:  Your Honor, Suzzanne Uhland of

11  O'Melveny & Myers.

12         Just to confirm, Your Honor, we will be submitting

13  an affidavit of Michael Tinsley who's the CFO for the debtors,

14  and we will have that submitted by Friday.

15         THE COURT:  Very well.

16         MR. SAMIS:  Thank you very much, Your Honor.  And

17  we'll remain cognizant of that in the future, as we operate in

18  these Chapter 11 cases.

19         I'd also --

20         MR. DURRER:  Your Honor, just briefly, this is Van

21  Durrer again.  I was just wondering if I could request to be

22  excused because I don't believe we have any other

23  participation in the hearing.

24         THE COURT:  Certainly.

25         MR. DURRER:  Thank you, Your Honor, very much.

1          MR. SAMIS:  Your Honor, I believe that brings us to

2     item 6 and 7 which I understand also from chambers that you've

3     entered orders with respect to.

4          THE COURT:  That's correct.

5          MR. SAMIS:  Okay.  Item number 8 was General

6     Electric Capital Corporation's motion for relief from the

7     automatic stay.  That has been continued to the hearing on

8     December 20th at 1:30 p.m.

9          So that brings us to three claims objections that

10    are for today.  The first omnibus, the second omnibus and the

11    third omnibus.  The debtors have received several responses.

12    Largely we've been able to work our way through them just by

13    communicating with the claimants.

14         There are a couple of matters going forward, Your

15    Honor.  If I could just take them in turn, I think that might

16    be the most effective way.

17         I have copies of the claims that are actually in

18    contention that I can just pass to you now.  That might be

19    easier than having to hunt through binders.

20         THE COURT:  That's fine.

21                         (Pause)

22         MR. SAMIS:  May I approach, Your Honor?

23         THE COURT:  Yes.  Thank you.

24         MR. SAMIS:  Your Honor, with respect to the first

25    omnibus objection, the only claim that we weren't able to work

1  out in advance, or I should say up until about an hour ago we

2  weren't able to work out in advance, was the claim of

3  Euripides G. Demos, their response to the objection rather.

4  Mr. Demos filed a response essentially seeking to preserve his

5  right to respond to the objection.  I tried contacting him

6  multiple times well in advance of the hearing, but he actually

7  only ended up getting back to me today, but we finally spoke.

8          I explained to him that the debtor's objection was

9  simply seeking to eliminate claim 276 which was filed by Mr.

10  Demos and that he amended with claim 881.  So his response

11  really just resulted from a simple misunderstanding.  Once I

12  explained that to him, he was fine with it.

13          THE COURT:  All right.

14          MR. SAMIS:  With respect to the second omnibus

15  objection to claims, this was the amended claims objection,

16  the books and records claims objection and the reduced

17  reclassified claims objection.

18          There are actually two -- well, one response that

19  was officially filed by Mr. Cameron Petrie, who I believe is

20  on the line today, and also a response that was informally

21  provided to us yesterday by Sharon Ferline, there's no

22  documentation of that.  The debtors don't have any objection

23  to allowing the late response because basically it's based on

24  exactly the same circumstances as Mr. Petrie's.  In fact,

25  that's how Ms. Ferline became aware of her ability to respond

1    and of the argument was making, they communicated.

2            Basically Mr. Petrie and Ms. Ferline are former

3    employees.  They are both asserting claims on account of

4    quarterly incentive guarantees that were paid on a monthly

5    basis.  The documentation that they attached to their claims

6    indicates the schedule on which those payments are made.

7            This dispute in the debtor's position is, results

8    wholly kind of by reference to their employment agreements

9    that state in plain terms that Mr. Petrie and Ms. Ferline are

10   not entitled to the guarantees on which their claims are

11   based.  If I could just read a section from their employment

12   agreement, I think that would aid in the discussion, Your

13   Honor.

14           I should also note that both claims were filed in

15   the same amount, $130,000 priority.

16           The pertinent section of the employment agreement is

17   actually flagged for Your Honor there with the green flag.

18   And it reads --

19           THE COURT:  Why don't you -- Mr. Petrie, you're on

20   the line?

21           MR. PETRIE:  Yes, Your Honor.

22           THE COURT:  Good afternoon. Counsel, why don't you,

23   so Mr. Petrie can follow along, tell him exactly where you're

24   reading from.

25           MR. SAMIS:  Sure.

Colloquy                    8

1       THE COURT:  I'm assuming, Mr. Petrie, you have a

2   copy of the claim in front of you.

3       MR. PETRIE:  Yes, Your Honor.

4       THE COURT:  All right.

5       MR. SAMIS:  Mr. Petrie, you'll also remember that

6   this is the language that we discussed.  It's at the final

7   page of your employment agreement.

8       MR. PETRIE:  Yes.

9       MR. SAMIS:  And it reads, "In the event quarterly

10  commissions earned exceed the guarantee for that quarter, you

11  will receive the guarantee and excess commission income in

12  accordance with the standard compensation plan as modified

13  from time to time.  Commissions are earned only in accordance

14  with the standard compensation plan as modified from time to

15  time.  Guarantees against commissions are offered as a

16  discretionary incentive and are not considered earned income.

17  To receive a guarantee against commissions for the quarter,

18  you must be employed on a full-time basis in good standing for

19  the full quarter and through the time guarantees and

20  commissions are paid.  Should your employment terminate for

21  any reason prior to such payment, you will receive all wages

22  and/or commissions earned through the termination but you will

23  not be entitled to receive the guarantees against commissions.

24  Such guarantees do not alter New Century Mortgage's policy of

25  employment at will or otherwise guarantee continued employment

1  for the entire period of that guarantee."

2          The guarantees, Your Honor, that are referenced by

3  both Ms. Ferline and Mr. Petrie are, came due on April, May,

4  June and July.  Each were in the amount of $30,000.  And I

5  think rather than putting words in Mr. Petrie's mouth, I would

6  probably turn it over to him to respond.  Obviously the

7  debtors are asserting that per the plain language of the

8  employment agreement that Mr. Petrie and Ms. Ferline are not

9  entitled to these guarantees.

10          THE COURT:  Because their employment was terminated

11  when?

12          MR. SAMIS:  Was terminated on 4/2.  I should also

13  state that, before any of the payment obligations became due.

14          THE COURT:  All right.  Mr. Petrie?

15          MR. PETRIE:  Yes, Your Honor.  The actual

16  termination date of our last time of employment was 4/10, 4/9

17  or 4/10.  And from what New Century is basically saying,

18  they're, my understanding is they're paying, they are to pay

19  from time employed of which I feel, or it's pretty much black

20  and white here, they did not pay the guarantee for my time

21  during March.  So I was physically employed during the month

22  of March and they did not pay the guarantee.  I was also

23  physically employed up till the date of termination which was

24  April 9th or 10th, April 9th or 10th, and that should be as

25  well prorated.

1    So that is, those are the facts of the case.  And

2    Mr. Samis just basically stated that New Century obtained

3    during time of employment of which they did not pay for March

4    and they did not pay for the first ten days of April.

5            MR. SAMIS:  Your Honor, may I respond?

6            The March amounts and the April amounts, however,

7    the payment was not due and to be made until April the 20th.

8    Regardless of the fact that Mr. Petrie and Ms. Ferline were

9    there, the agreement reads plainly that these amounts are not

10   due until they're payable.  And it's our position that the

11   amounts that he's describing were not payable until April

12   20th.

13           MR. PETRIE:  Right, but Your Honor, time was, at

14   that particular time I was full time employed and it's

15   recognized in my contract and on past pay stubs as well.  So

16   we were fully employed, and feel I should be compensated for

17   my time of employment, even though if commissions are paid in

18   arrears.

19           THE COURT:  Well, Mr. Petrie, I'm looking at the

20   language that debtor's counsel had quoted earlier.  And it

21   says, "should your employment terminate for any reason prior

22   to such payment you will receive all wages and/or commissions

23   earned through termination" --

24           MR. PETRIE:  Correct.

25           THE COURT:  -- "but you will not be entitled to

1  receive the guarantee against commissions."

2        So if your employment was terminated, as it appears

3  to have been, whether I pick April 2nd or April 9th or April

4  10th, prior to when the payment for March became due, which

5  was April 20th, by the language of the agreement, it seems as

6  if the debtor is right, that you're not entitled to the

7  guarantee.

8        MR. PETRIE:  The language, Your Honor, the language

9  states, on the contract, and this is what Mr. Samis pointed

10 out, "to receive a guarantee against commission for the

11 quarter you must be employed on a full-time basis in good

12 standing for the full quarter and through the time guaranteed

13 commissions are paid".

14       I was employed during that time frame.  That would

15 be through April the 10th and the amount that we're referring

16 to here would be the March time frame which was a full-time

17 employed month, and that March payment was going to be due

18 April 20th -- April 19th or 20th is when I would receive those

19 pay stubs -- and they just didn't pay it.

20       I was physically employed that month of March.  That

21 time had been served, so we're going to April.  If they would

22 have paid out commissions on the 1st of every month, we

23 wouldn't have this confrontation here.  But the fact that

24 they're paid, comes on the 19th, that's not, that's just

25 basically the way the pay scale, the pay periods come out.

1   But I was physically employed in March and through the first

2   ten days of April.

3           And it states that to receive a guarantee of

4   commissions you must be employed on a full-time basis.  And

5   those are the facts.

6           THE COURT:  Well, I don't think that that's

7   disputed.

8           MR. PETRIE:  Okay.

9           THE COURT:  But what the debtor's relying upon is

10  the next to the last sentence in that paragraph which says,

11  which puts a limitation the debtor is arguing, and it appears

12  to me to be correctly, that should you be terminated prior to

13  the payment, which is what happened here, you will receive

14  wages and commissions but not a guarantee against commissions.

15          It seems pretty plain to me.  I understand why

16  you've responded to the objection, but the language in it

17  seems, in the agreement seems pretty plain to me.

18          MR. PETRIE:  But I mean my argument is I was not,

19  there was no termination during the month of March.  March was

20  a working month, everyone was working, no one had any

21  knowledge of all this going down.  And wages should have been

22  paid.  And my argument was they were not paid for that month.

23          THE COURT:  Yes, I think what you're arguing would

24  have me read that sentence to provide that should you have

25  earned the right to this payment prior to termination, you

Colloquy                              13

1  should get it. But it doesn't say that.  It says simply if

2  your employment is terminated prior to the payment you won't

3  get it.  And I think --

4           MR. PETRIE:  So what you're saying, Your Honor, to

5  me then anybody employed with some verbiage such as this,

6  anybody employed and earns a substantial commission, if that

7  employer decides not to pay it, they can just terminate your

8  employment the day before they're supposed to write you a

9  paycheck.

10          THE COURT:  That's how this reads.

11          MR. SAMIS:  That is essentially debtor's argument,

12  Your Honor.

13          THE COURT:  Yes, that's how it reads.

14          MR. PETRIE:  I want to go back to that line.

15  "Should your employment terminate for any reason prior to such

16  payment, you will receive all wages and/or commissions earned

17  through termination."

18          It says "you will receive all wages and/or

19  commissions earned through termination".

20          THE COURT:  But then there's a but.

21          MR. PETRIE:  "But you will not be entitled to

22  receive the guarantee against commissions."

23          THE COURT:  And it's the guarantee payment that's at

24  issue here.  And you can argue whether it was fair or whether

25  it wasn't fair, but that's how it reads.  And for that reason,

1   I am going to sustain the debtor's objection to your claim and

2   to that of Ms. Ferline.

3               MR. SAMIS:  Thank you, Your Honor.

4               Your Honor, that brings us to, that was the only two

5   responses that we received in matters that were in contention

6   with respect to the second omnibus objection.

7               THE COURT:  Okay.

8               MR. SAMIS:  That brings us to the debtor's third

9   omnibus objection to claims.  This was an objection to

10  shareholder claims on the basis that these individuals were

11  entitled to have proofs of interest rather than proofs of

12  claim.

13              There was only one response that was received to

14  that, and it was actually difficult to ascertain that it was a

15  response, but I did confirm that it was.  It was docket number

16  3815 filed by the Sawyers.  The Sawyers were shareholders of

17  the debtor, specifically shareholders of New Century Financial

18  Corporation.

19              Their response essentially states that they, I think

20  that they want the relief that was requested in our objection

21  denied, but very simply, they're in the same boat as all the

22  other shareholders that were listed on the exhibit to this

23  omnibus objection.  They have a proof of interest, not a claim

24  against the estate, and accordingly debtors would rest on

25  their papers and request that the Court sustain the objection.

Colloquy                                           15

1          THE COURT:  All right.  I note from the sign up

2     sheet that the claimants appear not to be on the telephone,

3     but let me ask for the record whether Roland or Delouise

4     Sawyer are present or represented, either in the courtroom or

5     on the telephone.

6               I hear no response.

7               I did review the response and it I guess really

8     evidences a common shareholder complaint that I see

9     frequently, but it does evidence that their interest is one of

10    equity and not one of a creditor claim against the estate. And

11    for that reason I will sustain the debtor's objection.

12         MR. SAMIS:  Thank you, Your Honor.

13              I have the forms of order that are associated with

14    these objections with me today, if I may hand them up.

15         THE COURT:  Let me just ask, before you do, whether

16    anyone else cares to be heard in connection with any of the

17    debtor's objections.

18              I hear no response.

19         MR. SAMIS:  May I approach, Your Honor?

20         THE COURT:  Yes.

21         MR. PETRIE:  Your Honor, this is Cameron Petrie.  Do

22    I need to stay on the line?

23         THE COURT:  No, you may be excused if you'd like or

24    you may stay on the line if you like.  The option is yours.

25         MR. PETRIE:  All right, thank you.

1                          (Pause)

2              MR. SAMIS:   Let me know when you would like me to

3    proceed, Your Honor.

4              THE COURT:   There's, I'm a looking at the order from

5    the first omnibus objection and there's a paragraph 9, numeral

6    9, but nothing which follows it.

7              MR. SAMIS:   Oh, I'm sorry, Your Honor, we'll submit

8    that under certification of counsel.

9              THE COURT:   I can -- is there supposed to be any --

10             MR. SAMIS:   I don't believe so, Your Honor. Let me

11   just reference --

12             THE COURT:   I can just cross out the 9.

13             MR. SAMIS:   -- my own copy briefly.

14             THE COURT:   All right.

15                         (Pause)

16             MR. SAMIS:   No, Your Honor, there's not meant to be

17   anything there.  It's merely a scrivener's error.

18                         (Pause)

19             THE COURT:   All three orders have been signed.

20             MR. SAMIS:   Thank you very much, Your Honor.

21             THE COURT:   Anything further for today?

22             MR. SAMIS:   Well, it does bring us to item number

23   12, which is the status conference on the motion of the

24   debtors and debtors-in-possession for an order enforcing the

25   automatic stay against the Internal Revenue Service.  Mr.

Colloquy                          17

1    Collins and Mr. Mayorkas, I believe, are going to be handling

2    that matter, Your Honor.  So I would turn the podium over to

3    them.

4            MR. COLLINS:  Good afternoon, Your Honor.  For the

5    record, Mark Collins on behalf of the debtors.

6            Your Honor, with respect to this matter, we have

7    been in discussions with counsel, the Department of Justice

8    who is representing the IRS in this matter, to try and come up

9    with a consensual briefing schedule so that the substance of

10   this matter can be brought to Your Honor's attention as soon

11   as possible after December 31.

12           As Your Honor may have read in the motion or in the

13   IRS's response, they believe they have until December 31 to

14   make a decision as to whether or not the debtors are entitled

15   to the 66 million dollar refund that we filed under Form 1139.

16           We disagree that they have all the way until

17   December 31, but to try to streamline the process and given

18   that we're already entering early December, we thought we

19   would simply give them until December 31 to make that

20   determination so it takes one issue off the plate, and then

21   move forward as quickly thereafter as possible.

22           So what we have discussed, and I think we have

23   agreement, we're working out the final details of this, is

24   that on December 31 itself, the IRS would file a position

25   statement with the Court, and it would really follow one of

1   two tracks.  They would either say on December 31 that they

2   have denied our request for a refund, and that the Court has

3   no jurisdiction t review that decision.

4          If that is their decision and that's their position,

5   then we would file a reply on January 4th on the

6   jurisdictional grounds, and we would have a hearing on January

7   9th, which is our omnibus hearing date, on the issue of

8   whether or not the Court has jurisdiction to review their

9   decision to deny the refund.

10          If Your Honor says no jurisdiction, that kind of

11  ends the matter for the moment.  If Your Honor finds that

12  there is jurisdiction, and will entertain the issue, then on

13  January 15th, the Service would file a more fulsome brief that

14  would go into all issues regarding the refund.  Meaning they

15  would justify their decision to deny the requested refund.

16  They would also brief whether or not if Your Honor reverses

17  their decision, finds that under 1139 and Tax Code 6411 that

18  they are required to provide us the refund, whether or not

19  they have the ability notwithstanding that to either set off

20  that refund under 362(b)(26) or to somehow otherwise freeze

21  that refund and set it off later against some future potential

22  tax liability.

23          Then we would forward, then they would file that on

24  January 15th.  We would respond to all of those, the substance

25  of that brief on January 29th, and then we would ask for a

Colloquy                                    19

1    hearing on this matter alone, if Your Honor has time the week

2    of February 4th because it would be a fairly substantive

3    hearing.  We'd be going into the details of a lot of

4    complicated legal issues regarding this matter.

5            THE COURT:  What about evidentiary issues?

6            MR. COLLINS:  We may well have evidentiary issues on

7    that hearing.  It would, much will depend upon what it is they

8    find, the justification for denying the refund, how difficult,

9    how complicated those factual issues are.

10           THE COURT:  It's the too much money issue defense I

11   think.

12           MR. COLLINS:  Yes, exactly.

13           THE COURT:  Well, you can set up initially the

14   timing of the jurisdictional issue that way.

15           MR. COLLINS:  Okay.

16           THE COURT:  If you'd like.  I will not promise you a

17   ruling from the bench.

18           MR. COLLINS:  Right.

19           THE COURT:  So that might affect the later schedule

20   that you suggested.  But if that's the case, we'll --

21           MR. COLLINS:  We'll adjust then, going backwards.

22           The other possibility here is that the Service on

23   December 31 just comes out and says we believe the requested

24   refund is correct, but for all of these other reasons we don't

25   believe we're obligated to actually make the payment of the

1  refund.  If that is their decision, then we would have a

2  similar type schedule where on January 15th they would submit

3  their full briefing and we would follow kind of a similar

4  track, where we would have the ability to reply and we'd be

5  back again in early February.

6          I think that has the agreement of both Committee

7  counsel and counsel for the IRS.  It obviously is a very

8  important issue to the debtors, it's a lot of money.

9  Obviously it would help the estate to have access to what we

10 believe we're entitled to under the plain reading of the tax

11 code.

12         THE COURT:  All right, thank you.

13         MR. COLLINS:  Your Honor, would you like us to

14 submit a stipulated order setting forth that schedule or how

15 would Your Honor like us to -- or should I just simply

16 communicate with Ms. Hanover the dates?

17         THE COURT:  I would do the latter.

18         MR. COLLINS:  Okay.

19         THE COURT:  And when is it anticipated you would

20 have the reply in to the December 31st submission by the IRS?

21         MR. COLLINS:  We would, it would really, if they go

22 the first route, which is they deny the request and says the

23 Court doesn't have any jurisdiction, we would reply on January

24 4th with a hearing on January 9th.

25         If they sign off on the refund but say they don't,

1  are not obligated to provide the refund, they file that brief

2  on January 15th, we would reply two weeks later because we'll

3  get into a lot more substance on January 29th.

4           THE COURT:  Okay, those time frames are fine.

5           MR. COLLINS:  Okay.  Then we would just need to have

6  a hearing date set for the first week of February on those

7  matters.

8           THE COURT:  On the February omnibus date, or you

9  would like an entire day set aside?

10          MR. COLLINS:  I think it would probably make sense,

11 Your Honor, to have a separate hearing date set if we go

12 forward on those issues.

13          THE COURT:  Okay.  Omnibus is on February 6th.

14          MR. COLLINS:  We could do it, Your Honor, on

15 February 6th as long as we have an expanded time period for

16 that day.

17          THE COURT:  We have a hearing at 1:30. If I reserve

18 the balance of the afternoon, would that suffice, or do you

19 think you need more time?

20          MR. COLLINS:  I think that would suffice, Your

21 Honor.

22          We do believe that most of the arguments on that

23 date will be legal argument, and that the factual, or the

24 evidentiary part of the record would not take all that much

25 time.

1          THE COURT:  Okay.  Well, let's do that for now.

2          MR. COLLINS:  Okay.

3          Thank you, Your Honor.

4          THE COURT:  You're welcome.

5          Anything further for today?

6          MR. SAMIS:  No, the debtors have nothing further

7   today.

8          THE COURT:  All right, thank you.  That concludes

9   this hearing.  Court is adjourned.

10              (Matter concluded at 2:02 p.m.)

11                        *  *  *  *

12              **C E R T I F I C A T I O N**

13

14         I, Sandra Carbonaro, court approved transcriber,

15   certify that the foregoing is a correct transcript from the

16   official electronic sound recording of the proceedings in the

17   above-entitled matter.

18

19   _____

20   SANDRA CARBONARO

21

22   Doman Transcribing & Recording Svcs.   _____

23   AGENCY                                 DATE

24

25

1