## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | Objection Deadline: January 15, 2008 at 4:00 p.m. |
| | : | Hearing Date: January 23, 2008 at 1:30 p.m. |

### THIRD MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation,

New Century Financial Corporation ("NCFC"), a Maryland corporation, and their direct and

indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), by

and through their undersigned counsel, hereby file their motion (the "Motion") for the entry of an

order pursuant to section 1121(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532

(the "Bankruptcy Code"), (i) extending the period during for the Debtors to file a chapter 11 plan

(the "Exclusive Filing Period"), with respect to all non-Debtor parties other than the Official

Committee of Unsecured Creditors in these cases (the "Committee"), by thirty-one (31) days

---

[1] The debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California Corporation.

through and including January 28, 2008 and (ii) extending the period during which the Debtors

have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period," and

together with the Exclusive Filing Period, the "Exclusive Periods") through and including March

28, 2008, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as

extended. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. sections 157

and 1334. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding

as defined in 28 U.S.C. section 157(b)(2).

2.      The bases for the relief requested herein are sections 105 and 1121(d) of

the Bankruptcy Code.

## BACKGROUND

### A.      The Debtors

3.      NCFC, a publicly owned real estate investment trust, was one of the

largest specialty mortgage finance businesses in the United States. Through its subsidiaries and

its primary holding company subsidiary, New Century TRS, NCFC originated, purchased, sold,

and serviced mortgage loans nationwide. NCFC historically focused on "subprime" lending, or

lending to individuals whose borrowing needs were generally not fulfilled by traditional financial

institutions because they did not satisfy the credit, documentation or other underwriting

standards prescribed by conventional mortgage lenders and loan buyers. In September 2005,

NCFC through some of its subsidiaries also began offering conventional mortgage loans,

including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration

("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year

ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of

2

mortgage loans, most of which were sold in the secondary market. Since their inception, the

Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of

homebuyers and homeowners across the nation access credit and realize the benefits of home

ownership, including many who might not otherwise have been able to do so.

        4.      The Wholesale Division, which was contained within New Century

Mortgage Corporation ("NCMC"), a California corporation, originated and purchased loans

through a network of independent mortgage brokers and correspondent lenders. As of December

31, 2006, the Wholesale Division (1) had approved more than 57,000 independent mortgage

brokers for submission of loan applications, (2) operated through 34 regional operating centers

located in 20 states and (3) employed approximately 1,087 account executives. The broker's role

in this process was to identify the applicant, assist in completing the loan application form,

gather necessary information and documents and serve as the Debtors' liaison with the borrower.

Correspondent lenders are independent mortgage bankers and financial institutions that sell loans

that have already been funded. For 2006, the Wholesale Division was responsible for

approximately 85% of the loans originated by the Debtors.

        5.      The Retail Division, which operated under Home123, originated loans

through direct contact with consumers, including through referrals from builders, realtors, and

other third parties. As of December 31, 2006, the Retail Division was supported by 262 branch

offices and three central telemarketing units employing approximately 1,702 retail loan officers.

For 2006, the Retail Division originated approximately 15% of the loans produced by the

Debtors.

        6.      On April 2, 2007 (the "Petition Date"), the Debtors other than New

Century Warehouse Corporation ("New Century Warehouse") filed chapter 11 petitions in the

3

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). New

Century Warehouse filed its chapter 11 petition on August 3, 2007. The Debtors' chapter 11

cases are being jointly administered pursuant to orders of the Bankruptcy Court. Since the

Petition Date, the Debtors have operated their business and managed their affairs as debtors and

debtors in possession.

   7. Since the Petition Date, the Debtors have been focused on expeditiously

liquidating their assets in order to maximize the value of the estates. The Debtors gained Court

approval of four asset sales and closed three of those sales within three months of the Petition

Date. By order entered on May 7, 2007, the Court authorized the sale of a pool of approximately

2,000 unencumbered mortgage loans with an unpaid balance of $170 million and mortgage-

backed residual interests in securitization trusts (the "LNFA") to Ellington Management Group,

L.L.C. on behalf of its Client Funds ("Ellington") pursuant to the Asset Purchase Agreement by

and among NCFC and certain of its subsidiaries and Ellington dated May 16, 2007. The Court

further authorized the sale of a pool of approximately 180 unencumbered mortgage loans with an

unpaid balance of approximately $17 million and 6 real properties obtained in foreclosures of

such mortgage loans to Ellington by order entered on June 28, 2007 pursuant to Supplement No.

1 to Asset Purchase Agreement by and among NCF and certain of its subsidiaries and Ellington

dated June 25, 2007. The two LNFA sales closed in May and June respectively.

   8. In addition to the LNFA, the Court authorized the sale of the April

Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an

affiliate of Carrington Capital Management, LLC ("Carrington") by order entered on May 23,

2007 pursuant to the Second Amended and Restated Asset Purchase Agreement dated May 21,

2007. At the closing of the Carrington Sale on June 29, 2007, Carrington transferred the sale

4

proceeds to the April Debtors, and the Debtors entered into an agreement with Carrington to transition the servicing business. The Debtors continued operating the servicing business in the ordinary course while it was transitioned to Carrington. The transition to Carrington is now complete.

9.    The Court further authorized the sale of certain of the Debtors' technology assets to EquiFirst Corporation ("EquiFirst") by order entered on July 3, 2007 pursuant to the Asset Purchase Agreement by and among NCFC, NCMC, and EquiFirst dated June 22, 2007 (the "Technology Sale"). The Technology Sale closed in July, 2007.

10.    In addition to the asset sales, the Debtors moved quickly to downsize and consolidate their operations. The Debtors have rejected approximately 300 real property leases and approximately 250 executory contracts. The Debtors are in the process of liquidating additional assets and identifying additional leases and contracts for rejection or assumption and assignment.

**B.    The Exclusivity Motions and Orders Thereon**

11.    On July 13, 2007, the Debtors filed the "Motion of the Debtors and Debtors in Possession for an Order Pursuant to Section 1121(d) of the Bankruptcy Code for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof" (the "First Exclusivity Motion") [Docket No. 1925], by which the April Debtors requested that the Bankruptcy Court extend the Exclusive Filing Period by one hundred and twenty (120) days, through and including November 28, 2007, and extending the Exclusive Solicitation Period for sixty (60) days through and including January 28, 2008. By order dated July 31, 2007 (the "First Exclusivity Order") [Docket No. 2106], the Bankruptcy Court granted the First Exclusivity Motion, although the Committee was exempted from the extension of the Exclusive Periods.

5

12.     On November 28, 2007, the Debtors filed the "Second Motion of the
Debtors and Debtors in Possession for an Order Pursuant to Section 1121(d) of the Bankruptcy
Code for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors
May File a Chapter 11 Plan and Solicit Acceptances Thereof" (the "Second Exclusivity Motion"
and together with the First Exclusivity Motion, the "Exclusivity Motions") [Docket No. 3969],
by which the Debtors requested that the Bankruptcy Court enter an order (i) extending the
Exclusive Filing Period (with respect to all non-Debtor parties other than the Committee) for all
Debtors other than New Century Warehouse by thirty (30) days, through and including
December 28, 2007, (ii) extending the Exclusive Filing Period (with respect to all non-Debtor
parties other than the Committee) for New Century Warehouse by twenty-five (25) days through
and including December 28, 2007, and (iii) extending the Exclusive Solicitation Period for sixty
(60) days through and including February 27, 2008.  By order dated December 20, 2007 (the
"Second Exclusivity Order") [Docket No. 4177], the Bankruptcy Court granted the Second
Exclusivity Motion.

C.     **Developments Following the Filing of the Second Exclusivity Motion**

13.     Following the filing of the Second Exclusivity Motion, the Debtors have
continued to make substantial progress in liquidating the estates' assets and maximizing the
value of the estates.  Additionally, the Debtors have continued to devote resources to cooperating
with the investigation of the examiner (the "Examiner") that the Court has appointed in these
chapter 11 cases.  Moreover, certain matters, including suits brought by groups of the Debtors'
former employees regarding the Debtors' deferred compensation plan and the Debtors' alleged
violations of the WARN Act, a dispute involving the appropriate cure amount to be paid to
Deutsche Bank National Trust Company ("DBNTC") as a result of the assumption and
assignment to Carrington of loan servicing agreements, and the allocation of approximately $42

6

million that was in the Debtors' general corporate account on the Petition Date among the estates and the "Adequate Protection Parties," have taxed the Debtors' limited resources.

14.    Additionally, the Debtors and their professionals have continued analyzing and objecting to claims filed against the Debtors. Given that, as of November 20, 2007, 3677 claims had been filed in the approximate aggregate amount of $34,892,524,421.00 plus unliquidated amounts, this has been an intense and time consuming process. Through such ongoing analysis, the Debtors not only have been able to identify, and indeed object to, late filed claims, duplicative claims, and claims with no basis, but they also have been able to form an understanding of the amount and nature of the claims filed against each particular Debtor.

15.    Nevertheless, the Debtors have made significant progress in formulating a joint chapter 11 liquidating plan (the "Plan"). The Debtors have been working with the Committee and other key constituencies to formulate a plan structure that includes compromises that maximize the value of the estates while fairly and equitably allocating the estates' assets among the estates' diverse creditor body. The issues related to the Debtors' estates are complex both because of the nature of the claims asserted against the Debtors (a vast amount of which are unliquidated early (or first) payment default and breach claims under the Debtors' various loan purchase agreements) and because of the intercompany relationships among the Debtors.

16.    The Debtors believe that this inclusive approach to drafting the Plan will greatly enhance the recovery to creditors by minimizing the risk that parties in interest will engage in protracted litigation about the Plan and, therefore, saving the Debtors substantial additional administrative expenses. Indeed, since the filing of the Second Exclusivity Motion, the Plan negotiations have been fruitful, resulting in an agreement between the Debtors and the Committee on the Plan's structure. With this agreement in place and subject to the completion

7

of Plan documentation that is acceptable to the Committee, the Debtors and the Committee intend to be co-proponents of the Plan and are working together to complete the necessary documentation. Similarly, the Debtors are working diligently to complete their joint disclosure statement.

### RELIEF REQUESTED

17.    By this Motion, the Debtors seek the entry of an order pursuant to Bankruptcy Code section 1121(d): (i) extending the Debtors' (including New Century Warehouse) Exclusive Filing Period by thirty-one (31) days through and including January 28, 2008, with respect to all non-Debtor parties other than the Committee and (ii) extending the Debtors' (including New Century Warehouse) Exclusive Solicitation Period through and including March 28, 2008, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as extended.   As noted, the Debtors and the Committee have been working diligently to complete the documentation of the Plan and, indeed, believe that the Plan can be filed well within the requested extension of the Exclusive Filing Period.   The Debtors are seeking this short extension of the Exclusive Periods to enable the Debtors and the Committee to complete their cooperative Plan process in an orderly manner.

### BASIS FOR RELIEF

18.    Pursuant to Bankruptcy Code section 1121(b), a debtor has the exclusive right to file a plan of reorganization during the first 120 days after the commencement of a chapter 11 case. If a debtor files a plan during this period, pursuant to Bankruptcy Code section 1121(c)(3), an additional 60 day period is automatically granted during which the debtor may exclusively solicit acceptance of the plan.

8

19.    Bankruptcy Code section 1121(d) provides that the Court may extend these exclusive periods for cause. See 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). Although the Bankruptcy Code does not define "cause," a number of courts have construed the term in consideration of the Bankruptcy Code's underlying legislative history. See, e.g., In re Perkins, 71 B.R. 294, 297-98 (W. D. Tenn. 1987); In re Lake in the Woods, 10 B.R. 338, 343-45 (E.D. Mich. 1981); In re Ravenna Indus., Inc., 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982).

20.    In determining whether cause exists to extend a debtor's exclusive period to file and solicit acceptance of a plan, courts have relied on a variety of factors, each of which may constitute sufficient grounds for extending the periods. These factors typically include (a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the estate and (c) whether an extension of time will harm the debtor's creditors. See, e.g., In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989); In re Grand Traverse Dev. Co. Ltd. P'ship., 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Gen. Bearing Corp., 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr. W.D. Tex 1987).

21.    Considering the factors discussed below, the Debtors submit that ample cause exists to grant the relief requested herein and extend the Exclusive Filing Period through and including January 28, 2008 and the Exclusive Solicitation Period through and including March 28, 2008.

A.      **The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases.**

22.     The size and complexity of a debtor's case alone may constitute cause to extend a debtor's exclusive periods. "The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

23.     Here, the size and complexity of the Debtors' businesses, corporate structure and financing arrangements compel the requested extension of the Exclusive Periods. Immediately prior to filing these cases, the Debtors had over 6,000 employees in approximately 300 locations across the country. The size and complexity of these cases have required the Debtors to devote a substantial amount of time to negotiating and securing court approval of the sale of the Debtors' assets. Despite the numerous difficulties arising from operating in chapter 11, the Debtors have made substantial progress in achieving results beyond those available outside of bankruptcy. As stated above, on May 7, 2007 and June 28, 2007, the Court approved the sale of approximately $190 million in LNFA to Ellington, on May 23, 2007 the Court approved the Carrington Sale to Carrington, on July 3, 2007 the Court approved the Technology Sale to EquiFirst and the Debtors have rejected approximately 285-295 real property leases and approximately 775 executory contracts.

24.     The Debtors' appropriate focus on these issues, as well as addressing numerous other matters attendant to their chapter 11 cases, have made it impossible to formulate, promulgate and build consensus regarding the Plan any earlier than the extended dates proposed by the Debtors. In fact, the large scale and sophisticated nature of the Debtors' cases by themselves have posed a number of practical issues that have made formulation of the Plan

10

impracticable within the initial nine months of these cases, particularly in light of the fact that the Debtors active work force has been reduced fewer than 100 employees.

25.    In addition to negotiating the sale of their assets, during the first nine months of these cases, the Debtors have focused their efforts on stabilizing, winding down their remaining operations and implementing the transition services related to those sales.  For example, the Debtors entered into an agreement with Carrington to transition the servicing business which required the Debtors to continue to operate the servicing business in the ordinary course while it was transitioned.

26.    Moreover, as noted above, the Debtors have dedicated substantial resources to cooperating in government investigations and with the Examiner.  Such cooperation has demanded extensive time and energy from the Debtors' few remaining employees and the Debtors' professionals.  Not only have these employees and professionals been responsible for disposing of and transitioning the Debtors' assets and cooperating with the Examiner's and government's investigations, but they also have had steer the Debtors through, among numerous other complex and demanding tasks, matters involving the WARN Act, the Debtors' deferred compensation plan, DBNTC's cure claim, and the disposition of the funds in the Debtors' general corporate account.

27.    Despite these hurdles, the Debtors have made significant progress with respect to the Plan. The Debtors have analyzed and made preliminary determinations as to the validity all claims filed against the April. Additionally, the Debtors not only have agreed upon the structure of the Plan and compromises to be contained therein with the Committee and other key constituencies, but they have also completed drafts of the Plan and accompanying disclosure statement.  Indeed, the Debtors expect that the progress they have made with respect to drafting

11

the Plan as of the filing of this Motion will allow the Debtors and the Committee to file the Plan by January 28, 2008.

28.     In light of the foregoing factors, the Debtors' request for a thirty-one (31) day extension is modest and justified. In fact, given that the requested extension, if granted, will result in the Exclusive Filing Period having been extended for a total of only six (6) months, the Debtors' request is substantially less than the extensions granted by this and other courts in large reorganization cases. See, e.g., In re Loewen Group Int'l. Inc., No. 99-1244 (PJW) (Bankr. D. Del.) (exclusivity extended for approximately 19 months); In re Montgomery Ward Holding Corp., No 97-1409 (PJW) (Bankr. D. Del ) (exclusivity extended for approximately 22 months); In re Trans World Airlines, Inc., No. 92-115 (HSB) (Bankr. D. Del.) (exclusivity extended for approximately 20 months).[2] Although the cases cited above were filed prior to the amendments to the Bankruptcy Code pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the extension requested by the Debtors (which when added to the Exclusive Filing Period, as currently extended, will total less than ten (10) months and when added to the Exclusive Solicitation Period, as currently extended, will total less than twelve (12) months) is well within the respective eighteen (18) and twenty (20) month exclusive period limits now set forth in Bankruptcy Code sections 1121(d)(1)(2)(A) and (B).

---

[2]  See also, In re Elder-Beerman Stores Corp., No. 95-33643 (Bankr. S.D. Ohio) (exclusivity extended approximately 21 months); In re CSC Indus., Inc. and Copperweld Steel Co., Nos. 93-41898 and 93-41899 (Bankr. N. D. Ohio 1997) (exclusivity extended approximately 19 months); In re Phar-Mor. Inc., No. 92-41599 (Bankr. N.D. Ohio) (exclusivity extended for approximately three years); In re Federated Dep't Stores, Inc., No. 1-90-00130 (Bankr. S.D. Ohio) (exclusivity extended for approximately two years); Gibson & Cushman, 101 B.R 405, 407, 411 (E.D.N.Y. 1989) (exclusive period extended 14 months); Gaines v. Perkins, 71 B.R. at 294, 296 (W.D. Tenn. 1987) (exclusive period extended more than 22 months); In re Ravenna Industries, Inc., 20 B.R. at 886, 887 (Bankr. N.D. Ohio 1982) (exclusive period extended more than 10 months). Because they are voluminous, the unreported orders cited herein are not attached to the Motion but are available from counsel for the Debtors upon request.

12

B.    **The Debtors' Progress in These Cases Warrants an Extension of the Exclusive Periods.**

29.    An extension of a debtor's exclusive periods may also be justified by progress in resolving issues facing creditors and the estate. See, e.g., In re McLean Indus. Inc., 87 B.R. 830, 835 (Bankr. S.D.N.Y. 1987); Texaco, 76 B.R. at 327; In re Swatara Coal Co., 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985).

30.    As discussed above, much of the Debtors' time and efforts since the commencement of these cases have been devoted to examining the value of their assets and negotiating and effecting the sale of their assets as well as negotiating their post-sale obligations. The Debtors have made significant process in resolving asset disposition issues and have fulfilled most of their obligations arising from the sales.

31.    In addition, the Debtors have made significant progress in stabilizing their operations and transitioning to a wind-down mode by (i) implementing the various forms of relief granted by the Court during the first days of these cases that allowed the Debtors to maintain business as usual to the fullest extent possible and ultimately consummate the sale of their assets, (ii) retaining the professionals and consultants necessary to the Debtors' sale efforts and administration of their chapter 11 cases, (iii) negotiating, documenting and litigating certain issues with respect to debtor-in-possession financing and employee retention matters, (iv) completing the complex and time-consuming process of preparing and filing the Schedules, and (v) analyzing all claims filed against the Debtors and filing nine (9) omnibus objections in respect thereof.

32.    In light of the Debtors' progress on such key issues in the nearly nine (9) months since the commencement of these cases, extension of the Exclusive Filing Period by just thirty-one (31) days is warranted. Notwithstanding the progress that has been made with respect

13

to the Plan (as set forth in paragraphs 15 and 16 above), the Debtors and the Committee still have

to finalize the drafting of the Plan. Although the Debtors are committed to confirming the Plan

as quickly as possible, they do not want to file the Plan prematurely, especially where, as here,

they believe that they are close to finalizing a Plan that will have the support of key

constituencies.

**C.      The Requested Extension of the Exclusive Periods Will Not Harm the Debtors'
         Creditors or Other Parties in Interest.**

33.      The Debtors respectfully submit that the extension of the Exclusive

Periods requested herein will not harm creditors or other parties in interest. In light of the

complex nature of these cases, the Debtors believe that neither their creditors nor any other party

in interest would be in a position to propose a Plan prior to the proposed expiration of the

Exclusive Filing Period in the first instance. Accordingly, the relief requested herein will not

result in a delay of the plan process, and will simply permit the process to continue to move

forward in an orderly fashion.

## No Prior Request

34.      No previous motion for the relief sought herein has been made to this or

any other Court.

## Notice

35.      No trustee has been appointed in these chapter 11 cases. Notice of this

Motion has been provided to: (1) the Office of the United States Trustee for the District of

Delaware; (2) the Examiner (3) the Committee, and (4) all parties who have timely filed requests

for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time

to time, the "Bankruptcy Rules"). In light of the nature of the relief requested herein, the

Debtors submit that no other or further notice is required.

14

36.     The Debtors submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

15

WHEREFORE, for all of the foregoing reasons, the Debtors pray:  (i) for the entry of an

Order, substantially in the form attached hereto as <u>Exhibit A</u>, extending the Debtors' Exclusive

Filing Period, with respect to all non-Debtor parties other than the Committee, through and

including January 28, 2008, (or otherwise to the date set by this Court for the omnibus hearing in

these chapter 11 cases) and the Debtors' Exclusive Solicitation Period through and including

March 28, 2008 (or some other similar date as this Court might deem just); and (ii) for such other

and further relief as this Court deems just.

Dated:  December 28, 2007
       Wilmington, Delaware

Respectfully submitted,


Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

       -and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Andrew M. Parlen
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION