IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | No.  07-10416 (KJC) |
| NEW CENTURY TRS HOLDINGS, ) | |
| INC., a Delaware Corporation, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | |

**INTERNAL REVENUE SERVICE'S SECOND OBJECTION TO MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) FOR AN ORDER ENFORCING THE AUTOMATIC STAY AGAINST THE INTERNAL REVENUE SERVICE AND GRANTING RELATED RELIEF**

The Internal Revenue Service (the "Service") hereby submits this objection to a Motion of the Debtors and the Debtors-in-Possession (collectively, the "Debtors").[1]  This is a second objection filed by the Service to the Motion.  The first objection, filed on November 28, 2007, was rendered moot by the agreement of the parties to continue the Motion.

As grounds for its objection, the Service states: (1) the Service has denied the Debtors' application for a tentative carryback adjustment and a resulting $66 million refund requested by the Debtors under 26 U.S.C. § 6411, and (2) this Court lacks jurisdiction to review the denial.  Accordingly, the Service respectfully requests that the Motion be denied with prejudice.

---

[1]The Service incorporates by reference the definition of "Debtors" contained in the Motion at page 1 and footnote 1.

**QUESTION PRESENTED**

Does this Court have jurisdiction to review the Service's denial of the Debtors' application under 26 U.S.C. § 6411 for a tentative carryback adjustment?

**SHORT ANSWER**

Absolutely not.  The statute provides that the Service "may disallow *without further action*, any application . . ."  26 U.S.C. § 6411(b) (emphasis added).  The Treasury Regulations state that "[i]f such an application is disallowed by [the Service] in whole or in part, *no suit may be maintained in any court for the recovery of any tax based on such application*,"  26 C.F.R. § 1.6411-1(b)(2) (emphasis added) and "the [Service's] action in disallowing, in whole or in part, any application for a tentative carryback adjustment *shall be final and may not be challenged in any proceeding*."  26 C.F.R. § 1.6411-3(c).

The Debtors' reliance on 11 U.S.C. § 106(b) to cure this jurisdictional defect is erroneous for three independent reasons.  First, 11 U.S.C. § 106(b) does not waive the general requirement to file an administrative claim for tax refund under 26 U.S.C. § 6402.  Second, the Debtors failed to establish that they have a 106(b) claim because the legal and factual issues in dispute relating to the 2006 tax year raised by the application for a tentative carryback adjustment are wholly distinct from the legal and factual issues relating to the 2004 and 2005 tax years raised by the Service's proof of claim.  Finally, this Court may not decide a 106(b) claim before it rules on the Service's proof of claim.

## STATEMENT OF FACTS

On April 2, 2007, the Debtors filed petitions for relief and their bankruptcy cases are being jointly administered pursuant to an order of the Court. On July 17, 2007, the Debtors submitted an application under 26 U.S.C. § 6411 for a tentative carryback adjustment to the Service on Form 1139.[2] On its Form 1139, the Debtors claimed a net operating loss carryback from the 2006 taxable year to the 2004 taxable year, which they claimed resulted in an allowable tax refund of approximately $66 million (the "Quickie Refund").[3]

The Service has denied the request made on Form 1139. (Flores Decl. ¶ 3.) The denial was based on errors of computation and material omissions related to the valuation of inventory of loans as of December 31, 2006. (Flores Decl. ¶ 4, 5.)

The Service has filed a proof of claim for corporate income tax related to the 2004 and 2005 years. The factual and legal issues for the 2004 and 2005 corporate income tax are not related to the 2006 issues and include, but are not limited to: interest income and OID from CE & P certificates, gain on securitization of loans, loss on the conversion of

---

[2] "A taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b) . . ." 26 U.S.C § 6411(a). "Except for purposes of applying section 6611(f)(4)(B), an application under this subsection shall not constitute a claim for credit or refund." 26 U.S.C. § 6411(a).

[3] The Debtors refer to their claim as a claim for "Tax Refund." However, an application for a tentative carryback adjustment is not an application for a tax refund. Colloquially, the term used to describe the relief sough is a "quickie refund." Accordingly, the Service adopts that terminology for the purposes of the present Objection.

senior convertible notes to stock, related deduction of inducement expenses and accruals of OID, unreported gain realized on options (related to loss on conversion of notes), loss from NC Residual II, mark-to-market adjustment for 2004 and 2005, loan fee income, write-downs of residuals, and OID and interest income on CE & P certificates transferred off-shore and related gain on sale.  (Flores Decl. ¶ 6, 7.)

## RELIEF REQUESTED

The Service seeks an order denying the Motion.

## BASES FOR RELIEF REQUESTED

The Debtors seek an order enforcing the automatic stay and directing the Service to release the Quickie Refund.  (Motion ¶ 8.)  The Debtors allege they are entitled to the Quickie Refund, that the Quickie Refund has been allowed by the Service, and that by not releasing said refund, the Service is violating the automatic stay.  Contrary to the Debtors' assertions, however, the Service has denied the application for a Quickie Refund.  This Court lacks jurisdiction to review the denial based on the relevant statutes, regulations, and judicial opinions.  The Debtors's invocation of 11 U.S.C. § 106(b) as a basis for jurisdiction is without merit.

1.   *The Decision To Deny The Application For A Tentative Carryback Adjustment Is Final and Unreviewable*.

The Debtors submitted their application for a tentative carryback adjustment pursuant to 26 U.S.C. § 6411.  The statute is quite clear that, except for circumstances not relevant in this case, "an application under this subsection shall not constitute a claim

for credit or refund." 26 U.S.C. § 6411(a). The statute further requires that "the Secretary shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation herein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination, *except that the Secretary may disallow, without further action, any application which he finds contains errors of computation which he deems cannot be corrected by him within such 90-day period or material omissions.*" 26 U.S.C. § 6411(b) (emphasis added). In the present case, as the attached declaration from the Revenue Agent makes clear, he found that the Debtors' application contained (1) "errors of computation" which he could not correct in the prescribed time period and (2) material omissions. Accordingly, he denied the application. Under the statute, there is no "further action" after this decision.

Although the statutory term "without further action" is sufficiently clear, the Treasury Regulations further state that "[i]f such an application is disallowed by [the Service] in whole or in part, *no suit may be maintained in any court for the recovery of any tax based on such application*." 26 C.F.R. § 1.6411-1(b)(2).[4] The principle of "no review" is so vital in this area that it is repeated in another Treasury Regulation as follows: "[t]he

---

[4]The Treasury Regulation does provide the framework for obtaining a refund in case of disallowance as follows: "[t]he taxpayer, however, may file a claim for credit or refund under section 6402 at any time prior to the expiration of the applicable period of limitation, and may maintain a suit based on such claim if it is disallowed or if the [Service] does not act on the claim within 6 months from the date it is filed." 26 C.F.R. § 1.6411-1(b)(2). The Debtors, to date, have not filed such a claim.

Commissioner's determination as to whether the Commissioner can correct any error of computation within the 90-day period shall be conclusive.  Similarly, *the Commissioner's action in disallowing, in whole or in part, any application for a tentative carryback adjustment shall be final and may not be challenged in any proceeding.*"  26 C.F.R. § 1.6411-3(c) (emphasis added).

Faced with such clarity in both statutory and regulatory language, the courts have unanimously[5] stated time and again that the decision to deny the application for a tentative carryback adjustment under 26 U.S.C. § 6411 is unreviewable.  Rock v. United States, 279 F. Supp. 96, 99 (S.D.N.Y. 1968); I.C.T.S. U.S.A., Inc. v. United States, 2007 WL 512791, at *1 (S.D.N.Y. 2007); Schrader v. Internal Revenue Service, 1975 WL 516, at *1 (W.D. Ky. 1975); Acme Steel Co. v. Commissioner, T.C. Memo 2003-118, at *21 (2003); Columbia Gas System, Inc. v. United States, 32 Fed. Cl. 318, 324 (1994); Pesch v. Commissioner, 78 T.C. 100, 114 (1982).

The Service's discretion in this area is so unlimited that even its failure to act on an application filed under 26 U.S.C. § 6411 does not confer jurisdiction on any court, including a bankruptcy court.  In re Southwestern States Marketing Corp., 1996 WL 166876, at *2 (5th Cir. 1996); Thrif-Tee, Inc. v. United States, 492 F. Supp. 530, 534 (W.D.N.C. 1979); Children's Palace, Inc. v. United States, 2007 WL 2822786, at *3 (E.D. Mich. Sept. 27, 2007); Zarnow v. Commissioner, 48 T.C. 213, 215 (1967).

---

[5]The Service's exhaustive search has failed to identify a single case in which a court reviewed a denial of the application for a tentative carryback adjustment.

This Court should join all the courts before it in finding that a decision to disallow an application for a tentative carryback adjustment may not be reviewed in any court.

2.  *Section 106(b) of the Bankruptcy Code Does Not Grant Jurisdiction To Review A Denial Of An Application For A Tentative Carryback Adjustment.*

Against the weight of all the authority cited above, the Debtors assert, without citation to any case, that this Court has jurisdiction under 11 U.S.C. § 106(b)[6] to review the denial of an application for a tentative carryback adjustment. The Debtors are mistaken.

   a.  Section 106(b) Does Not Waive Other Jurisdictional Requirements.

"The United States, as sovereign, 'is immune from suit, save as it consents to be sued . . . and *the terms of its consent* to be sued in any court define that court's jurisdiction to entertain the suit.'" In re University Medical Center, 973 F.2d 1065, 1087 (3d Cir. 1992) (quoting United States v. Dalm, 494 U.S. 596 (1990)) (emphasis added). "Such consent to be sued must be construed strictly in the government's favor and may not be enlarged beyond what the language of the waiver requires." In re University Medical Center, 973 F.2d at 1087. See also Kuhl v. United States, 467 F.3d 145, 148 (2d Cir. 2006) ("taxpayer must comply with the letter of the government's narrow waiver of

---

[6]Section 106(b) of the Bankruptcy Code provides that "[a] governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out which the claim of such governmental unit arose." 11 U.S.C. § 106(b).

sovereign immunity in order to get to federal court.") "One basic principle of statutory construction is that where two statutes appear to conflict, the statute addressing the relevant matter in more specific terms governs." In re Armstrong, 206 F.3d 465, 470 (5th Cir. 2000).

By looking at 11 U.S.C. § 106(b) alone, the Debtors ignore the more specific statutory regime, contained in 26 U.S.C. § 7422, 26 U.S.C. § 6402, and 11 U.S.C. § 505, which governs the jurisdiction of a bankruptcy court in matters involving tax refunds, and which limits "the terms of [the Service's] consent" by requiring the filing of an administrative claim for refund. This *specific* statutory regime thus supercedes the more general § 106(b) waiver:

> The law regarding claims for tax refunds is unusually clear, and does not appear to admit any exceptions: "No suit or proceeding shall be maintained *in any court* for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary . . .." 26 U.S.C. § 7422(a) (emphasis added). More specifically, the bankruptcy court may not determine
> > any right of the estate to a tax refund, before the earlier of-(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request.
> 
> 11 U.S.C. § 505(a)(2)(B). Thus, the government does not waive sovereign immunity in a suit for a tax refund until presented with an administrative claim which it has either denied or ignored. The administrative claim itself must be filed within the later of two years after the tax was paid or three years after the return was filed. 26 U.S.C. § 6511(a). These rules are nonwaivable jurisdictional requirements. *See* United States v. Dalm, 494 U.S. 596, 608 (1990); Goulding v. United States, 929 F.2d 329, 331-32 (7th Cir. 1991); Gustin v. United States, 876 F.2d 485, 488 (5th Cir. 1989). *While the Grahams argue correctly that section 106(b) of the Bankruptcy Code provides a waiver of sovereign immunity for refund claims under some circumstances, any such general governmental waiver of the right not be sued does not waive other jurisdictional requirements.* The Grahams do not contend that they have filed the requisite administrative claim for a refund. Absent such a filing,

the bankruptcy court erred in awarding them a tax refund.

In re Graham, 981 F.2d 1135, 1138 (10th Cir. 1992) (second emphasis added).[7]

It is undisputed that the Debtors have not filed an administrative claim for refund or credit with the Service since they filed their application for a tentative carryback adjustment. 26 U.S.C. § 6411(a) (stating that "an application under this subsection shall not constitute a claim for credit or refund.") Accordingly, both 26 U.S.C. § 7422 and 11 U.S.C. § 505 bar the Debtors from seeking the refund until they file a formal claim.[8] Or as the Tenth Circuit succinctly summed up, "[s]imply put, no claim, no refund." In re Graham, 981 F.2d at 1138.

In line with the Tenth Circuit (and the authorities cited by it), the Third Circuit has "consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims" and that "when we review how the language and purpose of Section 505 has evolved, we conclude that *Section 505 was intended to clarify the bankruptcy court's jurisdiction over tax claims.*" In re Custom Distribution Services, Inc., 224 F.3d 235, 239-240 (3d Cir. 2000) (emphasis added) (finding that bankruptcy court lacked jurisdiction to order city to refund excess tax

---

[7]The Service respectfully submits that in addition to 26 U.S.C. § 7422(a) the statutory and the regulatory limitations imposed pursuant to 26 U.S.C. § 6411 (which were not at issue in In re Graham) further limit the scope of the 11 U.S.C. § 106(b) waiver.

[8]In fact, had the Debtors submitted a formal claim for refund at the same time as their application under § 6411, this Court would have had jurisdiction over this case by now because the 120-day period in 11 U.S.C. § 505 would have expired.

payments for those years in which debtor paid property taxes but did not contest them administratively). More specifically, the Third Circuit delineated the precise line between a "refund," which the Debtors request, and an "offset or counterclaim," which falls within a § 106(b) waiver, in the bankruptcy context.

With respect to a claim for refund, as is the case here, the Third Circuit unequivocally stated that:

> In light of the legislative history of § 505(a), the overwhelming case authority interpreting it as precluding the bankruptcy court from adjudicating claims for refund of taxes that were not seasonably contested in accordance with procedures set out by the taxing authority, and the policy considerations underpinning § 505, we are persuaded that the Bankruptcy Court here did not have jurisdiction to order the City to refund excess payments for those years in which [the debtor] paid the taxes but did not contest them in accordance with N.J.S.A. 54:3-21.

In re Custom Distribution Services, Inc., 224 F.3d at 243-244.

The debtor in In re Custom argued, in the alternative, that the § 505(a) limitation does not apply because it was requesting an offset rather than a refund. The Third Circuit agreed that no formal application for a refund may be necessary in *that specific context* (with some limitations) and held that a taxpayer may be entitled to an offset to bring the tax authority's claim to zero, but nothing more (i.e., no refund). Id. at 244-245. In the present action, however, the Debtors have specifically asked for a $66 million refund, not an offset. By failing to formally file an administrative claim for refund, they have failed to satisfy the requirements of §505(a).

Accordingly, this Court lacks jurisdiction to review and/or order the Service to

release the refund.

> b. <u>The Proof Of Claim Submitted By The Service Does Not Arise Out Of The Same Transaction Or Occurrence As The Application For A Tentative Carryback Adjustment</u>

Should this Court find that section 106(b) waiver overrides other jurisdictional limitations, the Service submits that the Debtors have failed to demonstrate that their claim for a refund stems from "the same transaction or occurrence" as the Service's proof of claim. Accordingly, they failed to establish that their claim is, in fact, a 106(b) claim.

"The legislative history of § 106(b) and the case law interpreting that provision make clear that courts should look to the standards employed in identifying compulsory counterclaims under Federal Rule of Civil Procedure 13(a) for guidance in discerning the applicability of section 106(a)'s[9] waiver of immunity." <u>In re Kaiser Group Int'l Inc.</u>, 399 F.3d 558, 567 (3d Cir. 2005). "The operative question in determining whether a claim is a compulsory counterclaim is whether it bears a 'logical relationship' to the opposing party's claim." <u>In re Univ. Med. Center</u>, 973 F.2d at 1086. "[T]o determine whether a logical relationship exists under § 106(b), [the Court] must examine whether the claim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the

---

[9] Prior to the 1994 amendments to the Bankruptcy Code, the § 106(b) waiver was contained in § 106(a).

aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." In re Kaiser Group Int'l, Inc., 399 F.3d at 569. No such logical relationship exists in this case.

As the accompanying declaration from the Revenue Agent makes clear, there are no factual or legal issues in common between the proof of claim filed by the Service and the application for a tentative carryback adjustment filed by the Debtors. Nor do they involve the same tax years. In fact, the only similarity is that they both pertain to the income taxes. That, however, is legally insufficient to form a "logical relationship." See, e.g., In re Microage Corp., 288 B.R. 842, 850-851 (Bankr. D. Ariz. 2003) (rejecting the argument that corporate income taxes arise out of the same transaction or occurrence as the enterprise employment tax credits that are allowed against income tax); In re Service Merchandise Co., 265 B.R. 917, 923 (M.D. Tenn. 2001) (finding that the claim for refund of corporate excise tax is not the same transaction or occurrence or claim as the government's claim for sales and use tax because the taxes arose under different state statutes and from different time periods), *rev'd on other grounds* 333 F.3d 666 (6th Cir. 2003).

Accordingly, the Debtors have failed to establish that their application for a tentative carryback adjustment is a compulsory counterclaim under 11 U.S.C § 106(b).

    c.    <u>The Court May Not Decide A "Counterclaim" Before It Decides A "Claim"</u>

Should this Court find that the Debtors satisfied the requirement of 11 U.S.C. §

106(b), it should still find that the Motion is premature as the Debtors are attempting to recover their counterclaim before this Court rules on the Service's claims. Such approach is contrary to the very purpose of a compulsory counterclaim.

The purpose behind Fed. R. Civ. P. 13(a), and, accordingly, behind 11 U.S.C. § 106(b), is "judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." In re Price, 42 F.3d 1068, 1073 (7th Cir. 1994). See also Southern Const. Co. v. Pickard, 371 U.S. 57, 60 (1962) (same in a non-bankruptcy setting); Carteret Sav. & Loan Ass'n v. Jackson, 812 F.2d 36, 38 (1st Cir. 1987) (same in a non-bankruptcy setting).

The Debtors propose that this Court first review their application for a refund. Should the Court find that the Debtors are entitled to the $66 million refund, it will then be called upon, in a subsequent proceeding, to rule upon the Service's claims. Such "piecemeal litigation in the federal courts" is exactly the evil that Rule 13(a) is meant to abolish. Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.3d 631, 633-634 (3d Cir. 1961). Although the Service reiterates its position that its claim for the 2004 and 2005 income tax and the Debtors' counterclaim for the 2006 income tax are not related, the Service submits that by finding that there is a logical relationship between the two, this Court is in fact finding that the two must be resolved at the same time because *a priori* "a logical relationship between claims exists where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts. Such a duplication is likely to occur when the claims involve the same factual issues, the

same factual and legal issues, or are offshoots of the same basic controversy between the parties." <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.</u>, 292 F.3d 384, 389-390 (3d Cir. 2002).  <u>See also</u> <u>Hydronautics v. FilmTec Corp.</u>, 70 F.3d 533, 536 (9th Cir. 1995) ("We determine whether a claim arises out of the same transaction or occurrence by analyzing whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.")

In other words, either (1) the Service's claims are not logically related to the Debtors' counterclaim and therefore the latter is not compulsory or (2) the two are logically related and ought to be tried at the same time.  Neither scenario allows for the remedy proposed by the Debtors–a decision on their counterclaim only.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

DATE: December 31, 2007

                          Respectfully submitted,

                           /s/Jan M. Geht
                          JAN M. GEHT
                          Trial Attorney, Tax Division
                          U.S. Department of Justice
                          P.O. Box 227
                          Washington, D.C.  20044
                          Telephone: (202) 307-6449
                          Fax: (202) 514-6866
                          E-mail: jan.m.geht@usdoj.gov
                          *Counsel for the United States*

**CERTIFICATE OF SERVICE**

IT IS CERTIFIED that the foregoing OBJECTION was served on December 31, 2007, by ECF and by placing a true and correct copy thereof in the United States mail, postage prepaid, addressed as follows:

MARK D. COLLINS
MICHAEL J. MERCHANT
CHRISTOPHER M. SAMIS
Richards Layton & Finger
One Rodney Square
PO Box 551
Wilmington, DE 19899


SUZANNE S. UHLAND
BEN H. LOGAN
VICTORIA NEWMARK
EMILY R. CULLER
O'Melveny & Meyers LLP
275 Battery Street
San Francisco, CA 94111


    /s/Jan M. Geht
JAN M. GEHT