| | |
|---|---|
| **In re:** | : Chapter 11 |
| | : |
| **NEW CENTURY TRS HOLDINGS, INC.,** a Delaware corporation, et al.,[1] | : Case No. 07-10416 (KJC) |
| | : |
| | : Jointly Administered |
| | : |
| **Debtors.** | : Hearing Date: 1/9/08 at 1:30 p.m. |
| | : |
| | Re: Docket No. 4156 |

## DEBTORS' LIMITED OPPOSITION TO MOTION OF WELLS FARGO BANK, N.A. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(B)(1)(A)

New Century TRS Holdings, Inc. ("TRS Holdings"), a Delaware corporation, New Century Financial Corporation ("NCF"), a Maryland corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors" or "New Century"), by and through their undersigned counsel, hereby submit this limited opposition (the "Limited Opposition") to the motion (the "Motion") of Wells Fargo Bank, N.A. ("Wells Fargo") for allowance and payment of an administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, and in support hereof assert the following:

### Preliminary Statement

Wells Fargo asserts that it is entitled to an administrative expense claim pursuant to Section 503(b)(1)(A) for legal fees and expenses incurred in connection with the adversary

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

proceeding initiated by certain beneficiaries of NCF's deferred compensation plan (the "Plan"). The Debtors object to Wells Fargo's characterization of its claim as an expense of administration because Wells Fargo's participation in the litigation is not an actual and necessary cost of the estate. However, as discussed below, it is expressly contemplated in the Trust Agreement that Wells Fargo's costs of defense be paid by the Trust to ensure that the Trustee is kept whole. Thus, while the Debtors do not believe that Wells Fargo's claim is entitled to administrative expense status, the Court need not reach the issue in order to resolve the Motion. Based on the express provisions of the Trust Agreement, the Debtors believe that Wells Fargo is entitled to payment from the Trust.

## Background

1.      NCF and Wells Fargo are parties to that certain New Century Financial Corporation Supplemental Benefit and Deferred Compensation Trust Agreement dated January 1, 1999 (the "Trust Agreement"), whereby the Trust was established with Wells Fargo, as trustee (the "Trustee").

2.      The Trust holds a Flexible Premium Variable Life Insurance Policy with Lincoln National Life Insurance Company (the "Policy"). Under the Policy, NCF provides directions with respect to the investment of the premiums within the Policy. The Policy also permits NCF to borrow against the Policy's cash value. As of the Petition Date, NCF borrowed the principal amount of $8,216,314 (the "Insurance Loan") in order to pay benefits. The Insurance Loan is secured by the cash value of the Policy and accrues interest at the rate of 3.65% per annum. As of October 31, 2007, the unpaid principal balance and accrued interest of the Insurance Loan was approximately $8,398,258.

3.      On June 20, 2007, certain former employees of the Debtors who participated in the Deferred Compensation Plan (collectively, the "Plaintiffs") commenced an

adversary proceeding, captioned as *Gregory J. Schroeder, et al. v. New Century Holdings, Inc., et al.*, Adv. Pro. No. 07-51598 (the "Adversary Proceeding"). The Plaintiffs allege that the Plan is not a "top hat" deferred compensation plan and thus that they are entitled to the amounts in the Trust to the exclusion of NCF's other creditors. Wells Fargo is a named defendant in the Adversary Proceeding.

4. The Debtors and Wells Fargo filed motions to dismiss in the Adversary Proceeding, and the Official Committee of Unsecured Creditors (the "Creditors' Committee") joined in the motions. A hearing on the motions to dismiss was held on October 2, 2007, and the motions are pending.

5. Prior to the commencement of the Adversary Proceeding, on April 29, 2007, the Court entered an *Order Granting Motion of Plan Beneficiaries to Shorten Notice and Objection Periods for Plan Beneficiaries' Emergency Motion for an Order Directing the United States Trustee to Appoint an Official Committee of Plan Beneficiaries Pursuant to 11 U.S.C. § 1102* [Dkt. 466] (the "1102 Order"), providing as follows, *inter alia*: "[A]bsent the consent of the movants, the Debtors and the Official Committee of Unsecured Creditors or further order of the Court, all funds being held in or for the benefit of the 'Plan' as defined in the 1102 Motion shall remain in *status quo*, and no use or distribution of the funds shall be permitted."

6. As noted above, Wells Fargo is the Trustee of the Trust. Wells Fargo engaged Mayer Brown LLP as counsel to the Trustee in the Adversary Proceeding and claims that it has incurred attorneys' fees and expenses in the amount of $184,945.36. In the Motion, Wells Fargo asserts that it is entitled to a Section 503(b) administrative claim with respect to attorneys' fees incurred to date. In addition, Wells Fargo asserts a Section 503(b) administrative claim in an unspecified amount for the Trustee's future fees.

7. Section 17.10 of the Trust Agreement provides as follows:

> [NCF], and the Trust Fund[2] (to the extent permitted by applicable law) agree to indemnify and hold harmless the Trustee, its directors, officers, employees and agents from and against all liabilities, losses, expenses and claims (including reasonable attorneys' fees and costs of defense) arising out of [NCF]'s performance of its duties or any breach or alleged breach of its duties with respect to the Plan and this Trust, or arising out of or relating to any action, suit or proceeding to which the Trustee is a party or otherwise involved by reason of its serving as Trustee pursuant to this Trust Agreement and complying with its terms, except where the Trustee has been found to have been negligent or to have breached its duties under this Trust Agreement or Part 4 of Title I to ERISA by a final judgment of a court of competent jurisdiction.

8. The Trust Agreement also provides for the establishment of a "Fee Account" to reimburse reasonable fees and expenses of the Trustee incurred in the administration of the Trust, Trust Agmt. at 1.1, and Wells Fargo is empowered to pay its reasonable fees and expenses incurred performing its duties as Trustee from the Fee Account. Trust Agmt. at 5.1(e) and 5.1(h). The Debtors are advised that a separate Fee Account was never established or funded. However, the Trust is also a source of payment of attorneys' fees incurred by the Trustee in performing its duties as Trustee. See Trust Agmt. § 8.2 ("reasonable expenses incurred by the Trustee in the performance of its duties under this Trust Agreement, including but not limited to reasonable legal fees and consulting fees, shall be charged against and paid from the Fee Account to the extent that the Company does not pay such expenses, or, to the extent that the Fee Account is insufficient, from the Trust").

9. The Trust is presently significantly over-funded. As of September 30, 2007, the fair market value of the Trust's assets exceeds $51 million while aggregate unpaid vested and unvested benefits total less than $40 million, leaving a current gross surplus of more than $11 million. Additionally, given that certain Plan beneficiaries may never fully vest, the Trust's actual

---

[2] "Trust Fund" is defined as "collectively all money and other property, all investments and reinvestments made therewith or proceeds thereof and all earnings and profits (less losses) thereon, less all payments and charges as authorized herein, for the Trust." Trust Agmt. at § 18.18.

surplus may be significantly greater than $11 million prior to the repayment of the Insurance Loan. As of September 30, 2007, the total vested balance is less than $37 million. In addition, as of November 15, 2007, only 115 Plan beneficiaries with unvested benefits were still employed by the Debtors, and very few of the Plan beneficiaries, if any, will remain employed by the Debtors in 2008.[3]

10.     On November 17, 2007, the Debtors filed a motion for an order, *inter alia*, authorizing NCF to pay off the Insurance Loan from surplus in the Trust and to allocate 100% of the remaining investments to a money market fund (the "Investment Reallocation Motion"). The Plaintiffs and Wells Fargo stipulated to the relief sought in the Investment Reallocation Motion pursuant to the terms of an Order entered by the Court on December 20, 2007.

11.     Upon repayment of the Insurance Loan, the Trust's remaining surplus value will be equal to more than $2.5 million.

### Wells Fargo's Reimbursement Claim Is Not An Administrative Expense Claim

12.     Section 503(b) provides administrative expense status for, inter alia:

(1) (A) the actual, necessary costs and expenses of preserving the estate, including

>   (ii) wages, salaries, and commissions for services rendered after the commencement of the case; . . . .

13.     For a request to be allowed under section 503(b)(1)(A), the applicant must prove that "'the debt [arises] from a transaction with the debtor-in-possession ... [and] the consideration supporting the claimant's right to payment [is] beneficial to the debtor-in-possession in the operation of the business.'" Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re

---

[3] Further, as noted above, it is the Debtors' position that the Plan beneficiaries do not have a property interest in the assets of the Trust that would enable the Plan beneficiaries to share in any post-petition earnings on vested and unvested benefits, but rather that the Plan beneficiaries hold general unsecured claims against NCF, the amounts of which shall be determined based upon the fair market value of the Plan beneficiaries' hypothetical investment accounts as of the Petition Date pursuant to Section 502(b) of the Bankruptcy Code.

O'Brien Environmental Energy, Inc.), 181 F. 3d 527, 532-33 (3rd Cir. 1999); In re Women First Healthcare, Inc., 332 B.R. 115, 121 (Bankr. D. Del. 2005); In re Pinnacle Brands, Inc., 259 B.R. 46, 51 (Bankr. D. Del. 2001); In re Mid-American Waste Systems, Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999).

14. Based on these requirements, courts consistently have held that an indemnification claim based upon pre-petition services or conduct is not a cost or expense for "services rendered after the commencement of a case." 11 U.S.C. § 503(b)(1)(A). Instead, it is a form of pre-petition compensation for services that is not entitled to administrative expense priority. See, e.g., Pinnacle, 259 B.R. at 51-52 (denying administrative status to applicant's indemnification claim arising from a contract executed pre-petition); Mid-American, 228 B.R. at 821-22 (refusing to award administrative expense status for indemnification claims arising from securities litigation, which arose pre-petition out of the applicants' pre-petition conduct); In re Overland Park Financial Corp., 240 B.R. 402, 405-06 (Bankr. D. Kan. 1999) (refusing to grant administrative expense priority to former officer/director's indemnification claim for expenses incurred in a lawsuit based upon his pre-petition actions); Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.), 188 B.R. 347, 359 (Bankr. S.D.N.Y. 1995) (holding that because the agreement at issue was executed pre-petition, any contractual right to indemnification arising therefrom would be a pre-petition unsecured claim); In re Highland Group, Inc., 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) (same); Philadelphia Mortgage, 117 B.R. at 828-30 (finding that claims based upon pre-petition conduct cannot be afforded administrative expense priority because claims must arise post-petition); In re Amfesco Indus., Inc., 81 B.R. 777, 784 (Bankr.E.D.N.Y.1988) (same); cf. In re Heck's Properties, Inc., 151 B.R. 739, 767-68 (S.D. W. Va.

1992) (awarding administrative cost priority to officers' and directors' indemnification claims that arose from a lawsuit based upon their post-petition conduct and services).

15. Based on the foregoing authorities, the Debtors believe that Wells Fargo's indemnification claim is not entitled to administrative expense status because it is not an actual and necessary cost of the estate.

### The Court Need Not Reach the Issue of Wells Fargo's Administrative Claim Status Because the Trust Agreement Expressly Contemplates Payment of Wells Fargo's Indemnification Claim From the Trust

16. In order to resolve the Motion, the Court need not reach the issue of Wells Fargo's administrative claim status because the Trust Agreement expressly contemplates payment of Wells Fargo's indemnification claim from the Trust. As noted above, the Trust Agreement expressly provides for the payment of the Trustee by the Trust. In addition, use of the Trust Fund to pay Wells Fargo will not prejudice the Plan beneficiaries because the Trust has sufficient surplus to make the payment. Accordingly, the Debtors do not object to payment of Wells Fargo's claim and future fees incurred in connection with the Adversary Proceeding from the surplus in the Trust.

17. It should be further noted that the Debtors do not endorse the remedy sought in paragraph 15 of Wells Fargo's Motion, wherein Wells Fargo requests an order authorizing Wells Fargo to "(1) surrender the life insurance policy in which the Trust assets are currently invested; and to (2) deduct its fees and expenses incurred in connection with the performance of its duties and under the Trust Agreement from the Trust account as provided in Article 8.3 of the Trust Agreement in the event the Debtors do not pay Wells Fargo the amounts owed." See Motion ¶ 15. It is the Debtors' understanding that a distribution may be obtained by liquidating a portion of the investments without surrendering the entire Policy.

## Conclusion

For the foregoing reasons, the Debtors request that any Order entered by the Court condition the relief granted upon the payment of Wells Fargo's fees from the Trust.

Dated: January 4, 2008
Wilmington, Delaware

*/s/ Christopher M. Samis/*

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION