## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, <u>et al.</u>,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | **Hearing Date: January 9, 2008 at 1:30 p.m.** |
| | : | |
| | : | |

**RESPONSE OF DEBTORS AND THE DEBTORS IN POSSESSION
TO INTERNAL REVENUE SERVICE'S SECOND OBJECTION TO
MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION
PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) FOR AN ORDER
ENFORCING THE AUTOMATIC STAY AGAINST THE
INTERNAL REVENUE SERVICE AND GRANTING RELATED RELIEF**

New Century Financial Corporation, a Maryland corporation, New Century TRS

Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as debtor

and debtor-in-possession in the above-captioned chapter 11 cases (collectively, "Debtors"),

hereby submit this response (the "Response") to the Internal Revenue Service's Second

Objection (the "Second Objection"), filed with the Court on December 31, 2007, to the Debtors'

Motion for an Order Enforcing the Automatic Stay Against the Internal Revenue Service and

Granting Related Relief (the "Motion"), which was filed with the Court on November 15, 2007.

In Section I of this Response, the Debtors summarize the arguments supporting

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

their Motion, and explain that the Internal Revenue Service (the "Service") has already invoked

this Court's jurisdiction and the Service's Second Objection fails to take this fact into account in

addressing the issue currently before this Court.  In Section II of this Response, the Debtors

respond to and refute the specific arguments made by the Service in the Second Objection.  In

sum, the Service has failed to point to any authority or make any convincing or reasonable

arguments that divest this Court of jurisdiction it already has to determine whether the Service

complied with the requirements imposed upon it by 26 U.S.C. § 6411.  Therefore, the Debtors'

Motion must be granted.

## I.    INTRODUCTION AND SUMMARY OF DEBTORS' ARGUMENT

In its Second Objection, the Service argues that 26 U.S.C. § 6411 is a

jurisdictional statute that precludes this Court (or any court) from determining whether the

Service complied with the mandatory requirements of 26 U.S.C. § 6411 when it denied the

Debtors' application for a tentative refund ("Form 1139") of $66 million of 2004 income taxes.

(Second Objection at p. 2.)  The Service's argument misses the point.  The Service contends that

this Court could only obtain jurisdiction over the Debtors' 2004 tax year if the Debtors complied

with 26 U.S.C. §§ 7422 and 6402.  While the statutes cited by the Service are jurisdictional, they

apply to situations in which a taxpayer invokes the jurisdiction of a Court to obtain a refund.  A

taxpayer must comply with these statutes (26 U.S.C. §§ 7422 and 6402), including the prior

filing of a claim for refund, in order for a court to obtain jurisdiction consistent with the terms of

the Service's waiver of sovereign immunity provided by 26 U.S.C. § 7422.  In this case, by

contrast, it is undisputed that the Service invoked this Court's jurisdiction by filing a proof of

claim.

The Debtors' position in support of their Motion is straightforward.  The Service

2

filed a proof of claim against the Debtors for 2004 and 2005 income taxes. This proof of claim

invoked the jurisdiction of the Court over the Debtors' 2004 and 2005 tax years, thereby vesting

this Court with jurisdiction over all factual and legal issues relevant to the Debtors' 2004 and

2005 tax years. See 11 U.S.C. § 106(b) ("[a] governmental unit that has filed a proof of claim

. . . is deemed to have waived sovereign immunity with respect to a claim against such

governmental unit that is property of the estate and that arose out of the same transaction or

occurrence [as did] the claim of such governmental unit."); Burnet v. Sanford & Brooks Co., 282

U.S. 359, 363 (1931) (stating that the tax laws "enacted since the adoption of the 16th

Amendment have uniformly assessed the tax on the basis of annual returns showing the net result

of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or . . .

[a] fiscal year.") (emphasis added); Libson Shops, Inc. v. Koehler, 353 U.S. 382, 386 (1957)

(discussing the legislative history of the carryover provisions, and explaining that,

notwithstanding the annual accounting concept, carryover provisions "were enacted to

ameliorate the unduly drastic consequences of taxing income strictly on an annual basis" so that

businesses with stable profits would be taxed commensurately with businesses that have

fluctuating earnings.); H.R. Rep. No. 79-849, at 5-6 (1945) (stating that the purpose of the

predecessor statute to 26 U.S.C. § 6411 is "to speed up the operation of the carry-back refund

procedures" in order to improve the cash position of businesses that incur losses without first

requiring such businesses to file a claim for refund and undergo an audit by the Service.); Lewis

v. Reynolds, 284 U.S. 281 (1932) (the seminal case standing for the proposition that the factual

and legal issues relating to one tax year constitute one cause of action).

Thus, once the Court has jurisdiction over a tax year of the Debtors, it is

empowered to review all issues and transactions relevant to that year, including the net operating

3

loss carryover deduction allowed to the Debtors for such year. Accordingly, the $66 million

tentative refund of 2004 income taxes shown on the Form 1139 (the "Quickie Refund"), which is

attributable to the Debtors' net operating loss carryback deduction for 2004 allowed by 26

U.S.C. § 172, is properly before this Court as a result of the Service having filed a proof of claim

covering the Debtors' 2004 income tax year. (For this reason, the Service's argument that the

Debtors' Form 1139 relates to the 2006 tax year is simply wrong.) After voluntarily invoking

this Court's jurisdiction over the Debtors' 2004 income tax year, the Service cannot now claim

that this Court lacks jurisdiction over one issue related to that year (namely, the operation of 26

U.S.C. § 6411 in obtaining the Quickie Refund resulting from a net operating loss carryback

deduction to 2004).

       In sum, since the Service invoked this Court's jurisdiction over all issues related

to the Debtors' 2004 income tax year, the Service has waived its sovereign immunity and this

Court has jurisdiction pursuant to 11 U.S.C. § 106(b) to determine whether the Service complied

with 26 U.S.C. § 6411 when it denied the Debtors' Form 1139 for a tentative refund of 2004

income taxes. Moreover, none of the other arguments in the Service's Second Objection

contradict the Debtors' position. These other arguments are irrelevant and without merit

because, as discussed above, they fail to take into consideration the fact that the Service has

already invoked this Court's jurisdiction, and rely on an unsupportable assertion that the Service

may disregard 26 U.S.C. § 6411 of the Internal Revenue Code with impunity, as an exercise of

"discretion" that is "unreviewable" by this or any court. See Estate of Gardner v. Comm'r, 82

T.C. 989 (1984); Patton v. Comm'r, 116 T.C. 206 (2001) (discussed infra, p. 8). Even the

Service acknowledges that the authority it relies on is distinguishable because it involves 26

U.S.C. §§ 7422 and 6402 and not 26 U.S.C. § 6411. See Second Objection at pp 8-10 & n.7.

4

The Service's arguments are discussed in the next section.

**II.    NONE OF THE SERVICE'S ARGUMENTS HAVE ANY MERIT OR CONTRADICT THE DEBTORS' POSITION THUS THE DEBTORS' MOTION MUST BE GRANTED**

The Service makes various arguments in support of its objection, none of which are supportable either under the Internal Revenue Code or decided cases. First, it argues that its decision to deny the Debtors' Form 1139 is "unreviewable" by this or any court, and that the Service has "unlimited" discretion under 26 U.S.C. § 6411 and related Treasury regulations in determining whether to accept or deny a Form 1139 properly filed by a taxpayer, including whether to take any action on the Form 1139 at all. (Second Objection at p. 6.) Second, it makes a series of arguments that 11 U.S.C. § 106(b) does not grant the Court jurisdiction to review the Service's decision to deny the Debtors' Form 1139, because a formal claim for refund is required to be filed, the statutory requirements of 11 U.S.C. § 106(b) have not been met, and the Debtors' interpretation of the statute results in impermissible "piecemeal litigation in the federal courts." (Second Objection at pp. 2, 13.) As discussed below, these arguments are without merit.

**A.    The Service's Contention That "A Decision To Disallow An Application For A Tentative Carryback Adjustment May Not Be Reviewed In Any Court" Is Incredible And Clearly Wrong**

The Service categorically declares that its decision to deny the Debtors' Form 1139 is "unreviewable" by any court and that the Service has "unlimited" discretion in determining whether to accept or deny a Form 1139 properly filed by a taxpayer, including whether to take any action on the Form 1139 at all. (Second Objection at p. 6.) The Service goes so far as to state that "a decision to disallow an application for a tentative carryback

5

adjustment <u>may not be reviewed in any court</u>." (Second Objection at p. 7.) (Emphasis added.)
The Service's bold assertions are not supported by, and in fact are directly contrary to, the statute
(26 U.S.C. § 6411(b)), which provides, in relevant part, as follows:

> Within a period of 90 days from the date on which an application for a tentative
> carryback adjustment is filed … the Secretary shall make, to the extent he deems
> practicable in such period, a limited examination of the application, to discover
> omissions and errors of computation therein, and shall determine the amount of
> the decrease in tax attributable to such carryback upon the basis of the application
> and the examination, except that the Secretary may disallow, without further
> action, any application which he finds contains errors of computation which he
> deems cannot be corrected by him within such 90-day period or material
> omissions.

26 U.S.C. § 6411(b).

The plain language of the statute shows that the Service's actual discretion in
reviewing Form 1139 is very narrowly circumscribed.  Under the statute, the Service "<u>shall
make, to the extent he deems practicable in such [90-day] period, <u>a limited examination of the
application,</u> to discover omissions and errors of computation therein, and <u>shall determine the
amount of the decrease in tax attributable to such carryback upon the basis of the application and
the examination.</u>" 26 U.S.C. § 6411(b) (emphases added).  As the emphasized language shows,
the Service is <u>required</u> to make a limited examination of Form 1139 and determine the amount of
decrease in tax attributable to the carryback shown on the Form 1139.  Furthermore, the only
basis the statute gives the Secretary authority to disallow a Form 1139 is if it finds within the
Form 1139 "<u>errors of computation</u> which he deems cannot be corrected by him within such 90-
day period or material omissions." <u>Id.</u> (Emphasis added).

Accordingly, courts have held that when the Service reviews Form 1139, it "<u>must</u>
check the application <u>solely</u> for mathematical errors." <u>In re Laytan Jewelers</u>, 332 F. Supp. 1153,
1159 (S.D.N.Y. 1971) (emphasis added). <u>See also</u> <u>I.C.T.S. U.S.A., Inc. v. United States</u>, 2007

6

U.S. Dist. LEXIS 14344, at *4 (S.D.N.Y. Feb. 14, 2007) (stating that, when the Service reviews a Form 1139, it "does little more than check the math underlying the request, but does not formally resolve the refund request."); Columbia Gas System, Inc. v. United States, 32 Fed. Cl. 318, 323 (Ct. Cl. 1994), aff'd 70 F.3d 1244 (Fed. Cir. 1995) (stating, "[t]he Commissioner may disallow the claim only if she determines that it cannot be promptly evaluated due to material omissions or calculation errors that cannot be corrected within ninety days.") (Emphases added).[2]  These authorities stand for the proposition that, contrary to the Service's arguments, its discretion to disallow a Form 1139 is constrained.  If the Service were correct that its discretion were "unlimited," taxpayers would be forced to seek relief only through the alternative process of filing a claim for refund—the very result that the statute was enacted to remedy.  See H.R. Rep. No. 79-849, at 5-6 (1945) (stating that the purpose of the statute is "to speed up the operation of the carry-back refund procedures" in order to improve the cash position of businesses that incur losses without first requiring such businesses to file a claim for refund and undergo an audit by the Service.); Columbia Gas System, Inc., 32 Fed. Cl. at 323 (stating that 26 U.S.C. § 6411 creates a presumption in favor of payment in order to assist financially ailing corporations).

In this case, it is undisputed that the Service went well beyond merely examining the mathematical accuracy of the Debtors' Form 1139.  On its face, the Service's basis for the disallowance—numerous pending audit issues in 2006, including disagreement with the valuation method the Debtors' employed for marking loans to market and their chosen

---

[2] Accord Tax Planning for Troubled Corporations:  Bankruptcy and Nonbankruptcy Restructurings," G. Henderson & S. Goldring, 2008 Ed. (hereinafter "Henderson and Goldring) at § 1012.1 (emphasis added) (internal footnotes omitted):  "A debtor-in-possession has the same right to obtain a "quickie refund" of prior year income taxes as does a nonbankrupt corporation. . . . The application may be denied, in whole or in part, only if it contains material omissions or errors of computation."

7

accounting method (Second Objection, p. 3; Declaration of Agent ¶¶ 5-6)—has nothing to do

with checking the mathematical accuracy of the Form 1139 application. The Service's bald

assertion that it can interject audit issues from 2006 (or any other year) into the review of a Form

1139 is directly contrary to the language of 26 U.S.C. § 6411 quoted above.

   The Service has an obligation to comply with statutory commands and this Court

has an obligation to see that the Service does so. See Estate of Gardner v. Comm'r, 82 T.C. 989,

994 (1984) ("There is a strong presumption that the actions of an administrative agency are

subject to judicial review. Although now incorporated into the Administrative Procedures Act

(APA), this basic presumption of reviewability is a fundamental principle of administrative law

and is fully applicable regardless of whether an agency is subject to or exempt from the APA.

Judicial review of a final agency action by an aggrieved person will not be cut off unless there is

persuasive reason to believe that such was the purpose of Congress.") (internal footnotes,

quotations and citations omitted); Patton v. Comm'r, 116 T.C. 206, 210 (2001) (stating that the

Commissioner "is required to follow the statute and abide by regulations reasonably based on the

statute, and failure to do so will amount to an abuse of discretion. . . . [I].e., his determination is

unreasonable, arbitrary, or capricious.") (Internal citations and quotations omitted). As these

cases make clear, it is elementary that the Revenue Agent's decision in this case can be reviewed

for compliance with 26 U.S.C. § 6411. Indeed, the more the Service argues that it has complete

discretion to disallow the Form 1139 "without further action", the more obvious it is that its

decision must be reviewable.

   The Service's other arguments, which seek to deny this Court the jurisdiction that

the Service has itself initiated, are likewise to no avail—the cited provisions are simply

inapplicable. The regulations promulgated under 26 U.S.C. § 6411 provide that an "internal

8

revenue officer's determination as to whether he can correct any error of computation within the 90-day period shall be conclusive." 26 C.F.R. § 1.6411-3(c). This section delineates the scope of the Service's discretion—the conclusiveness goes to whether a computational error is correctable within the allowed period. Treasury Regulation § 1.6411-3(c) goes on to state that "[s]imilarly, an internal revenue officer's action in disallowing, in whole or in part, any application for a tentative carryback adjustment shall be final and may not be challenged in any proceeding." 26 C.F.R. § 1.6411.-3(c). This provision likewise should be interpreted to include only determinations within the scope of the Service's review allowed by the statute. A construction of this regulation that would bar all review of the Service's disallowance of a Form 1139, even by a court otherwise having jurisdiction, would be completely without precedent. Indeed, the Service's construction renders the regulation invalid as contrary to the statute because the statutory language, "without further action," relates solely to the Service's examination of the Form 1139 for computational errors, as discussed above.

        In sum, nothing in 26 U.S.C. § 6411 or the related Treasury regulations deprives this Court of jurisdiction to determine whether the Service complied with the specific requirements of those provisions. Given that the Service admits that it is acting contrary to the express requirements of 26 U.S.C. § 6411 by disallowing the Debtors' Form 1139 based on potential audit issues arising in the Service's audit of the Debtors' 2006 tax year, and therefore also admits that it is disregarding its own regulations, this Court has jurisdiction to determine whether the Service is complying with a statute passed by Congress that is related to the taxable year placed in issue by the Service in this proceeding.

9

**B.      The Service's Arguments That 11 U.S.C. § 106(b) Does Not Apply Are Without Merit**

The Service next argues that 11 U.S.C. § 106(b) does not confer jurisdiction on this Court for three independent reasons. (Second Objection at p. 2.) Each of these three reasons is without merit. First, the Service argues that the requirements of 26 U.S.C. § 7422, 26 U.S.C. § 6402 and 11 U.S.C. § 505 supersede the Service's waiver of sovereign immunity under 11 U.S.C. § 106(b). (Second Objection at p. 8.) This argument is a red herring. As discussed above in the Introduction and Summary of Debtors' Argument, the statutory provisions the Service cites to require a taxpayer to file a claim for credit or refund only when the taxpayer is invoking the jurisdiction of a court in a tax refund suit. However, the Debtors are not here invoking the jurisdiction of this Court seeking a tax refund, but rather are seeking compliance with 26 U.S.C. § 6411 in a matter where the Service has invoked jurisdiction before this Court. Therefore, the requirements of 26 U.S.C. § 7422 and 11 U.S.C. § 505, pertaining to the requirement to file a claim for credit or refund with the Service in order to pursue a refund suit, are simply inapplicable.

The Service's argument confuses the difference between the Debtors' Motion to this Court seeking the Service's compliance with the requirements of 26 U.S.C. § 6411 and a tax refund suit. Elsewhere in its Second Objection, however, the Service acknowledges that when the Debtors submitted their Form 1139 application for the Quickie Refund, they were not applying for a tax refund. (Second Objection at p. 3.) The quickie refund procedure of 26 U.S.C. § 6411 is separate and distinct from the normal claim for refund rules, as the Service admits. The Debtors do not need to file a claim for refund in order to obtain a quickie refund. A quickie refund allowed under 26 U.S.C. § 6411, unlike a tax refund recovered in a tax refund

10

suit, is a *tentative* advance of a claimed overpayment of tax and remains subject to later audit and

recapture by the Service. Were this court to grant the Debtors' Motion and order the release of

the Quickie Refund, the Service could still audit the Debtors' tax returns and, if it determined

that the Quickie Refund had been excessive, could seek to recover the excess amount.[3]

      The reason the Service could still seek to recover any Quickie Refund it was

required to release is precisely because this Court is not being asked, at this point, to reach the

merits of any substantive tax dispute between the parties, as would be the case if the Debtors

were now before this Court seeking a tax refund pursuant to 26 U.S.C. § 7422 or 11 U.S.C. §

505. All this Court is being asked to do is to determine whether the Service properly disallowed

the Form 1139 on the basis of alleged computational errors and omissions existing on the Form

and, if not, to require the Service to release the Quickie Refund to the Debtors. Resolution of

any substantive tax issues in dispute between the Debtors and the Service, as would be

determined in an audit and a subsequent tax refund suit, would be left for a later time.

      Second, the Service argues that 11 U.S.C. § 106(b) does not apply "because the

legal and factual issues in dispute relating to the 2006 tax year raised by the [Form 1139] are

wholly distinct from the legal and factual issues relating to the 2004 and 2005 tax years raised by

the Service's proof of claim" and therefore the two claims do not arise from the same transaction

or occurrence. (Second Objection at p. 2.) As previously discussed, the Service invoked this

Court's jurisdiction over the Debtors' 2004 tax year by filing a proof of claim, and, under the

Supreme Court's decision in Lewis v. Reynolds, the 2004 tax year constitutes a single cause of

---

[3] See generally Henderson & Goldring at § 1012.1 (stating, "[b]ecause an application for a quickie refund does not constitute a claim for refund, a denial of the application cannot be used as grounds for a subsequent suit for refund. Conversely, the IRS's allowance of a quickie refund (or tentative carryback adjustment) does not preclude the IRS from reexamining the return. . . . [A]ny tax subsequently determined to be payable due to an excessive allowance of a quickie refund received during bankruptcy is treated as an administrative expense of the bankruptcy. . . .").

11

action.  Lewis v. Reynolds, 284 U.S. 281 (1932).  The allowance of the Quickie Refund, and the

subsequent review of audit issues under normal tax procedures, are all within the scope of the

jurisdiction of this Court that the Service has invoked.

        The Service is simply wrong that the Debtors' Form 1139 and Quickie Refund

relate to the 2006 tax year.  The Debtors' Form 1139, on its face, claims a decrease in taxable

income for 2004 and a tentative refund of taxes paid for the 2004 tax year.  Thus, as a matter of

fact, the Service's proof of claim and the Debtors' Form 1139 and Quickie Refund arise from the

same transaction or occurrence, since both relate to the Debtors' corporate income taxes for the

2004 year.  Moreover, the Service's argument to the contrary is at odds with the entire purpose

of the carryover provisions, which are fundamental to corporate income taxation.  Libson Shops,

353 U.S. at 386, supra p.3 (discussing the legislative history of the carryover provisions, and

explaining that, notwithstanding the annual accounting concept, carryover provisions "were

enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual

basis" so that businesses with stable profits would be taxed commensurately with businesses that

have fluctuating earnings.).

        The Service's reliance on In re Microage Corp., 288 B.R. 842 (Bankr. D. Ariz.

2003) and In re Service Merchandise Co., 265 B.R. 917 (M.D. Tenn. 2001) to show that the

claims in this case are not logically related is therefore specious.  These cases are simply

irrelevant, since the claims in both cases pertained to entirely different kinds of taxes—corporate

excise taxes versus sales and use taxes in In re Service Merchandise Co. and income taxes versus

an employment tax credit in In Re Microage Corp.  In this case, by contrast, both the Service's

proof of claim and the Debtors' Form 1139 and Quickie Refund involve the Debtors' corporate

income taxes for 2004.

12

Third, the Service argues that "should the Court find that the Debtors are entitled to the $66 million refund, it will then be called upon, in a subsequent proceeding, to rule upon the Service's claims," and that to do so would result in "piecemeal litigation in the federal courts," which the "same transaction or occurrence" requirement is designed to avoid. (Second Objection at p. 13.) This argument is completely specious and once again confuses the requirements for a quickie refund and an administrative claim for refund pursuant to 26 U.S.C. § 7422. The Service routinely grants to taxpayers tentative refunds before determining the merits of the positions taken on taxpayers' returns. This is precisely what the Internal Revenue Code requires the Service to do. Contrary to the Service's argument, allowing the Debtors' Form 1139 does not constitute a finding that the Debtors are *entitled* to a $66 million refund, since that finding would require the adjudication of the merits of the underlying substantive tax issues. Rather, by allowing the Form 1139, the Service is complying with a purely mechanical procedure that the Internal Revenue Code provides the Debtors, and all other corporate taxpayers, to recover a claimed overpayment of tax. The "quickie refund" allowed is subject to later audit and potential recapture by the Service. Accordingly, the Service's argument depends upon its erroneous view of 26 U.S.C. § 6411. There is "piecemeal litigation" only if one assumes review of the Form 1139 should consider pending audit issues and determine the Debtors' tax liability, which, as discussed above, is not the case.

13

## CONCLUSION

For the foregoing reasons, this Court has jurisdiction to review the Service's disallowance of the Debtors' Form 1139 and, if it finds the disallowance was not made on the basis of omissions or computational errors, i.e., mathematical errors on Form 1139, to order the Service to release the Debtors' estates' property.

Dated:  January 4, 2008
       Wilmington, Delaware

Respectfully submitted,


Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Natausha A. Wilson
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

14