IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY HOLDINGS, INC., a<br>Delaware corporation, et al.,<br><br>Debtor. | Chapter 11<br><br>Case No. 07-10416 (KJC)<br>Jointly Administered<br><br>Hearing Date: 1/9/08<br>Hearing Time: 1:30 p.m. |

**REPLY OF WELLS FARGO BANK, N.A. TO PLAINTIFFS' OBJECTION
AND DEBTORS' LIMITED OBJECTION TO WELLS FARGO'S
MOTION FOR ALLOWANCE AND
PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM
PURSUANT TO 11 U.S.C. § 503(B)(1)(A)**

Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned counsel, hereby files its Reply ("Reply") to the Objection (the "Objection") filed by plaintiffs Gregory J. Schroeder, Michelle Parker, Martin Warren, Steve Holland, Nabil Bawa and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, "Plaintiffs") on January 2, 2008, and the Limited Objected ("Limited Objection") filed by New Century TRS Holdings, Inc., New Century Financial Corporation, and their subsidiaries (collectively, "Debtors") on January 4, 2008, to Wells Fargo's Motion For Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) (the

1

"Motion"), filed on December 19, 2007.  In support hereof, Wells Fargo respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.  Plaintiffs' Objection and Debtors' Limited Objection should be overruled because they fail to set forth any colorable reason why Wells Fargo's legal fees and expenses are not entitled to administrative expense priority under Section 503(b)(1)(A) of the Bankruptcy Code. It is clear that Wells Fargo has, at the request of the Debtors, continued to perform its contractual duties to the estate post-petition and has incurred legal fees and expenses that it is entitled to recover as an administrative expense claim because these post-petition services have benefited the estate.

2.  Furthermore, it is significant to note that the Official Committee of Unsecured Creditors (the "Creditors' Committee") has indicated to the Court that it would like Wells Fargo to remain involved in the adversary proceeding. The Committee presumably would oppose Wells Fargo's continued participation if it did not redound to the benefit of the estate, particularly since, as the Committee has acknowledged, the cost of Wells Fargo's legal fees is chargeable to the estate and the Trust.

2

3.    Plaintiffs' contention that the legal fees Wells Fargo has incurred in defending the Trust in the adversary proceeding were unreasonable is legally and factually unsupportable.    In their Objection, Plaintiffs merely rehash the unfounded arguments they previously interposed in response to Wells Fargo's motion to dismiss the complaint in this adversary matter.[1]    Accordingly, Plaintiffs' Objection to the administrative-claim status of Wells Fargo's claim should be overruled.

4.    The Debtors, in their Limited Objection, acknowledge that Wells Fargo is entitled to recover its legal fees and expenses in responding to this adversary proceeding, and they suggest that the amounts due Wells Fargo should be charged against the Trust itself, rather than the general funds of the Debtors' estates.    According to the Debtors, however, Wells Fargo is not entitled to administrative priority because its claim is one for indemnification under a pre-petition contract.    The Debtors are mistaken.    Although there is an indemnification clause in the Trust Agreement, Wells Fargo seeks to recover its attorneys fees under a provision of the Trust Agreement requiring the Debtors to reimburse all fees—including

---

[1]    Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Motion.

3

DEL1 67560-1

attorney's fees—that Wells Fargo incurs in the performance of its duties, one of which is to represent the Trust in all legal proceedings. Accordingly, the Objection and the Limited Objection should be overruled, and the proposed order granting the relief requested in the Motion should be entered.

**BACKGROUND**

5.    Plaintiffs' recitation of the proceedings in the adversary action is inaccurate by omission of the following facts. First, Plaintiffs attempt to downplay the broad relief that they seek in the Complaint, which not only seeks relief that would cause the Trust assets to be distributed contrary to the express terms of the Trust and the intent of the grantor but also seeks a reformation of the rabbi trust that would impose upon Wells Fargo significant obligations in contravention of the express provisions of the Trust Agreement, as well as attorney's fees from Wells Fargo based on the Debtors' alleged failure to administer the Plan in accordance with ERISA's substantive provisions. Compare Objection ¶ 5 with Adv. P. 07-51598 ("Adv. P.") Dkt. No. 1 (Complaint) ¶¶ 58-52, 58-62.

6.    Second, in intimating that Wells Fargo's motion to dismiss was filed "in apparent contradiction of the

4

terms of the [Court's] Scheduling Order," Objection ¶ 7, Plaintiffs blatantly disregard the Stipulation By and Between Plaintiffs and Defendant Wells Fargo N.A. Extending the Time to Respond to Plaintiffs' Complaint, in which Plaintiffs agreed that Well Fargo "shall have until August 27, 2007, to answer, plead or otherwise move in response to Plaintiffs['] Complaint." Adv. P. Dkt. No. 14 (emphasis added). This Court approved the parties' stipulation "in all respects" on August 6, 2007. Adv. P. Dkt. No. 19. The following day, this Court entered the Scheduling Order in this proceeding. Adv. P. Dkt. No. 20.

7. Wells Fargo timely moved for dismissal of the Complaint on August 27, 2007. On September 6, 2007, the Debtors filed a reply brief in support of their motion to dismiss and adopted the arguments presented in Wells Fargo's motion to dismiss. Adv. P. Dkt. No. 27, at 3 n.2. The Creditors' Committee also filed a Joinder to Wells Fargo's motion. Adv. P. Dkt. No. 26.

8. Finally, Plaintiffs' contention that the Motion was not served on them other than through CM/ECF also is incorrect. See Objection, at 4 n.3. Counsel of record for Plaintiffs, the law firm of Stevens & Lee, P.C., was served via First Class Mail in accordance with the service list

provided by the Debtors in this bankruptcy proceeding. <u>See</u>
Dkt. No. 4158 (Certificate of Service).

<u>ARGUMENT</u>

**I.    THE LEGAL FEES AND EXPENSES BEING INCURRED BY WELLS
FARGO ARE PROVIDING A BENEFIT TO THE ESTATE, AND ARE
ACTUAL, NECESSARY EXPENSES OF PRESERVING THE ESTATE.**

9.    In their Objection, Plaintiffs assert that since
"[t]here is absolutely no threat that the assets being held
in *status quo*, by order of this Court, are in danger of
being dissipated," Wells Fargo's legal fees cannot possibly
be "'actual, necessary costs and expenses of preserving the
state [sic]'" entitled to administrative priority.
Objection, ¶¶ 18-19.

10. Plaintiffs are mistaken.  In their Complaint,
Plaintiffs, in essence, seek to remove the Trust assets
from the bankruptcy estate through a ruling that the assets
in the Trust are held for their exclusive benefit, to the
exclusion of all other creditors of the estate. <u>See</u>
Objection, ¶ 5.  If the Court were to adopt Plaintiffs'
position, the Trust assets would not be available for
distribution to creditors of the Debtors' bankruptcy
estate. <u>See</u> 11 U.S.C. § 541 (defining property of the
bankruptcy estate to include "all legal or equitable
interests of the debtor in property as of the commencement
of the case").  By definition, then, legal briefs

6

demonstrating that the Trust assets should be available for distribution to general creditors of the Debtors' bankruptcy estate necessarily help to preserve the bankruptcy estate.

11.    Wells Fargo, in its legal memoranda supporting its motion to dismiss, demonstrated that Plaintiffs' claim of exclusive ownership of the Trust assets squarely contradicts the plain language of the Trust Agreement, which unambiguously states that <u>all</u> of the Debtors' general creditors—including participants in the Debtors' deferred compensation plan—hold unsecured claims to the Trust assets in the event the Debtors enter bankruptcy.  <u>See</u> Trust Agmt. § 1.3 (stating that any rights held by the Plaintiffs with regard to the Trust assets consist of only the right to assert an unsecured claim against the Debtor for payment). Wells Fargo also explained that Plaintiffs' argument also has no support under the law.  Specifically, Wells Fargo demonstrated that the Trust remains a valid trust and its beneficiaries remain unchanged even if the Debtors' deferred compensation plan were not a top-hat plan.  <u>See</u> Part II, <u>infra</u>.

12.    Wells Fargo's defense of the Trust in the adversary proceeding, a measure Wells Fargo is empowered to undertake under the law and the Trust Agreement,

necessarily provides a benefit to the estate by ensuring that assets of the estate—including the assets held in the Trust—are available for distribution to <u>all</u> general creditors of the estate in accordance with the Trust Agreement and not removed from the bankruptcy estate. Accordingly, the legal fees and expenses being incurred by Wells Fargo in defending the Trust are actual and necessary costs of preserving the estate for the benefit of <u>all</u> beneficiaries of the Trust.

13. Furthermore, Wells Fargo is entitled to its legal fees and expenses as an administrative expense claim because it has been providing post-petition services at the request of the Debtors. Claims for post-petition services performed at the Debtor's request are entitled to administrative expense priority. <u>See</u> <u>In re Native American Systems, Inc.</u>, 368 B.R. 75, 77-78 (Bankr. D. Colo. 2006) (technical-service provider's claim for post-petition contract payments entitled to administrative priority when debtor requested provider to continue relationship post-petition); <u>In re Talk City, Inc.</u>, 281 B.R. 132 (Bankr. D. Mass. 2002) (creditor, acting at debtor's request to supply bandwidth to enable website to continue operating, was entitled to administrative expense claim for reimbursement

of fees and expenses). Tellingly, neither Plaintiffs nor the Debtors provide any case law to the contrary.

14. The Debtors go astray when they attempt to characterize Wells Fargo's fee application as a claim for indemnification based on pre-petition services that is ineligible for administrative priority under Section 503(b)(1)(A)(i). As we explain below, Wells Fargo is not seeking indemnification; it is seeking payment for post-petition services rendered to the Debtors. Moreover, the indemnification cases relied upon by the Debtors are inapposite because they involve pre-petition services or services that did not benefit the estate; Wells Fargo's claim involves post-petition services that directly benefited the estate.

15. The Debtors cite a number of cases for the notion that "claims for indemnification based upon pre-petition services or conduct" do not fall within Section 503(b)(1)(A)(i). See Limited Objection, ¶ 14. The Debtors then mistakenly suggest that Wells Fargo, through its motion, is seeking to recover its attorney's fees under Section 17.10 of the Trust Agreement, which entitles Wells Fargo to indemnification from the Debtors for any liabilities, losses, expenses, or claims arising out of Wells Fargo's performance of its duties under the

9

Agreement.    See id. ¶ 7.    In actuality, Wells Fargo's motion invokes Sections 8.2 and 8.3 of the Trust Agreement, which entitle the Bank to recover its expenses—including attorney's fees—incurred in performing its duties as Trustee under the Agreement.    See Wells Fargo's Motion for Allowance and Payment of Administrative Claim, Dkt. No. 4156, ¶ 4.    One of those duties is to represent the Trust in all legal proceedings, see Trust Agmt. § 6.1(e) (attached as Ex. C to Complaint), and Wells Fargo has undertaken the defense of the Trust in the present adversary proceeding.    Thus, Wells Fargo's legal fees are expenses that are recoverable as an administrative claim. See supra, ¶ 12.

16.    Furthermore, the indemnification cases on which the Debtors rely are inapposite because they involve pre-petition services, pre-petition conduct, and/or actions that did not confer any benefit upon the estate.    See Limited Objection, ¶ 14.    For example, in Houbigant Inc. v. ACB Mercantile, Inc., 188 B.R. 347, 359 (Bankr. S.D.N.Y. 1995), the debtor filed a suit for pre-petition trademark infringement and other misconduct against a company with which it had a pre-petition contract.    The other company then filed a counterclaim, asserting that it was entitled to indemnification from the debtors based on the debtors'

10

own pre-petition misconduct.  The court held that the claim was time-barred and dismissed it.  Unlike the present motion, the claimant in <u>Houbigant</u> did not contend that it conferred a post-petition benefit upon the estate.  To the contrary, if the debtors' allegations were true, the claimant had injured the debtor and the bankruptcy estate by engaging in trademark violations and other misconduct.

17.  None of the Debtors' other cases are helpful to its position because they too involve claims that were based on <u>pre-petition</u> services or services that did not benefit the estate.  <u>See</u> <u>In re Pinnacle Brands, Inc.</u>, 259 B.R. 46, 51 (Bankr. D. Del. 2001) (involving pre-petition services with no benefit to the estate); <u>In re Mid-Amer. Waste Sys. Inc.</u>, 228 B.R. 816, 821 (Bankr. D. Del. 1999) (involving pre-petition services); <u>In re Overland Park Finan. Corp.</u>, 240 B.R. 402, 405-06 (Bankr. D. Kan. 1999) (same); <u>In re Highland Group, Inc.</u>, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) (involving services that had no benefit to the estate); <u>Phila. Mortage</u>, 117 B.R. 828-30 (same); <u>In re Amfesco Indus., Inc.</u>, 81 B.R. 777, 784 (Bankr. E.D.N.Y. 1988) (involving pre-petition services). In stark contrast to these cases, Wells Fargo's defense of the Trust in the adversary proceeding took place <u>after</u> the Debtors filed their bankruptcy petitions, and Wells Fargo's

11

participation has directly benefited the estate. <u>See</u> <u>supra</u>, ¶ 10-12.

18. As a result, like the claimants in <u>In re Native American Systems</u> and <u>In re Talk City</u>, who were entitled to administrative priority because the debtors asked the claimants to continue their services post-petition under a pre-petition contract, Wells Fargo is entitled to administrative priority for the legal fees and expenses it incurred and will incur in the future. <u>See</u> 368 B.R. at 77-78; 281 B.R. at 132.

19. Indeed, the fees Wells Fargo has incurred and will incur in the adversary proceeding are precisely those contemplated under Section 503(b)(1)(A) because they arise "'from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [is] beneficial to the debtor-in-possession in the operation of the business.'" <u>Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)</u>, 181 F.3d 527, 532-33 (3d Cir. 1999) (quoted in Limited Objection, ¶ 13).

20. The fact that the Creditors' Committee supports Wells Fargo's continued involvement in the adversary proceeding makes evident that the Creditors' Committee views Wells Fargo's involvement as a benefit to the estate.

As pointed out in the Motion, at the October 2, 2007 hearing on Wells Fargo's motion to dismiss the Complaint, Wells Fargo urged the Court to promptly dismiss Wells Fargo from the adversary proceeding. However, the Creditors' Committee insisted upon Wells Fargo's continued participation in the adversary proceeding, even after being alerted to the fact that Wells Fargo would seek to recover its legal fees and expenses from the estate and the Trust.

## II.    WELLS FARGO'S LEGAL FEES AND EXPENSES INCURRED IN THE ADVERSARY PROCEEDING ARE ADMINISTRATIVE EXPENSES PURSUANT TO SECTION 503(B)(1)(A) OF THE BANKRUPTCY CODE.

21.    Plaintiffs assert that Wells Fargo is not entitled to an administrative claim because its motion to dismiss supposedly was unnecessary and inappropriate. First, they argue that Wells Fargo had no standing to move for dismissal because it is a "mere stakeholder." Next, they suggest that Wells Fargo should have held its motion to dismiss in abeyance until the Debtors' motion to dismiss was resolved. Third, Plaintiffs argue that Wells Fargo's motion to dismiss was unnecessary because it merely repeated the arguments that the Debtors made in their motion to dismiss. Finally, Plaintiffs renew their argument that Wells Fargo departed from its duty of

13

impartiality by filing a motion to dismiss.  None of these contentions has any merit.

### A.    Wells Fargo Is More Than A Stakeholder

22.  According to Plaintiffs, Wells Fargo is barred from recovering its legal costs as an administrative claim because it is "a mere stakeholder of property."  Objection, ¶ 22.  This argument is not only illogical but also contrary to law.  The relevant test for seeking administrative expense claims in a bankruptcy proceeding is (1) whether post-petition services have been provided by the claimant to the estate; and (2) whether such services have benefited the estate.  See In re O'Brien Environmental Energy, Inc., 181 F.3d at 532-33.  As discussed above and in its Motion, Wells Fargo has been providing post-petition services for the benefit of the estate and its creditors and therefore is entitled to an administrative expense claim for its legal fees and expenses.

23.  Even if Wells Fargo is a "mere stakeholder" of the Trust assets, that fact would not preclude Wells Fargo from claiming an administrative expense if the requirements under Section 503(b)(1)(A) are otherwise satisfied.  See also Teamsters Industrial Security Fund v. World Sales, Inc. (In re World Sales, Inc.), 183 B.R. 872 (9th Cir. BAP 1995) (bankruptcy appellate panel remanding bankruptcy

14

court to determine and assess reasonable amount of attorney fees incurred during post-petition litigation by trustee of employee benefit plan as administrative expense).

24.  In any event, Wells Fargo is not "merely a nominal party," but has standing to defend the Trust.  See In re Ferrall's Estate, 33 Cal. 2d 202, 206, 200 P.2d 1, 3 (Cal. 1948) (permitting a trustee to appeal an order that modifies a trust contrary to a specific provision in the trust agreement because such orders "concern[] the performance of a duty by the trustee to protect the trust against an attack that goes to the very existence of the trust itself"); Adv. P. Dkt. No. 33, at 3-6.

25.  Furthermore, Plaintiffs not only have attacked the validity of the Trust but also have asserted a claim for attorney's fees against Wells Fargo in its capacity as Trustee of the rabbi trust based on the Debtors' alleged failure to administer the deferred compensation plan in accordance with ERISA's substantive provisions, and they have attempted to impose upon Wells Fargo significant obligations in contravention of the express provisions of the Trust Agreement.  See Adv. P. Dkt. No. 1, ¶¶ 48-52, 58-62 (Counts III & V).  In this regard, Wells Fargo has every right—as would any defendant with an economic interest in the outcome of the litigation—to defend itself against

15

Plaintiffs' groundless claims.  And pursuant to the Trust Agreement, the Debtors are obligated to pay the reasonable expenses incurred by Wells Fargo in the performance of its duties as Trustee, including but not limited to reasonable legal fees.  Trust Agmt. ¶ 8.2.

**B.    Wells Fargo Could Not Have Delayed The Filing Of Its Motion To Dismiss**

26.    Plaintiffs mistakenly suggest that the Scheduling Order allowed Wells Fargo to postpone the filing of its motion to dismiss until after the Debtors' motion to dismiss was resolved.  In fact, the Scheduling Order provides that "Defendants shall answer the Plaintiffs' complaint and file any other responsive <u>pleadings</u> within fourteen days after the entry of this Court's order with respect to the Motions to Dismiss."  <u>See</u> Adv. P. Dkt. No. 20, ¶ 2 (emphasis added).  A motion to dismiss is a motion, not an answer or other pleading.  <u>See</u> <u>Kassner v. 2nd Ave.</u> <u>Delicatessen Inc.</u>, 496 F.3d 229, 242 (2d Cir. 2007).  Thus, nothing in the Scheduling Order contemplates the filing of a second wave of motions to dismiss.

27.    Moreover, although Plaintiffs omit to mention it in their Objection, Wells Fargo and Plaintiffs entered into a stipulation on July 25, 2007 that required Wells Fargo to file its answer or motion to dismiss no later than August

16

27, 2007.  <u>See</u> Adv. P. Dkt. No. 14.  Because nothing in the Scheduling Order enlarged the time for Wells Fargo to file a motion to dismiss, it is absurd for Plaintiffs to argue that Wells Fargo had no "real impetus" to file its motion to dismiss when it did, in accordance with the parties' Stipulation.

### C.    Wells Fargo's Motion To Dismiss Was Not Duplicative

28.  Plaintiffs depart from reality when they assert that the motion papers filed by Wells Fargo in the adversary proceeding are duplicative of the papers filed by the Debtors and the Creditors' Committee.  <u>See</u> Objection, ¶ 20.  Even a cursory review of the Table of Contents in the Debtors' opening brief reveals that that brief focused on whether the deferred compensation plan was a top hat plan under ERISA.  <u>See</u> Adv. P. Dkt. No. 16.  Wells Fargo's briefs, by contrast, focused on why the assets in the Trust are not plan assets under ERISA <u>even if</u> the plan were not a top hat plan.  <u>See</u> Adv. P. Dkt. No. 24 & 33.  And although the Debtors' brief challenged Plaintiffs' claim for reformation of the <u>plan</u> in a brief footnote, <u>see</u> Adv. P. Dkt. No. 16, at 21 n.8, Wells Fargo was the only party to address specifically why reformation of the <u>Trust</u> is not a

17

remedy available under ERISA, <u>see</u> Adv. P. Dkt. No. 24, at 24-29; No. 33, at 12-14.

29. Moreover, Wells Fargo was the only party to argue that regardless of whether the one-year, three-year, or six-year statute of limitations applies to Plaintiffs' claims, any claims against the Trust are time-barred because the Trust Agreement was executed more than eight years before Plaintiffs filed their Complaint. <u>See</u> Adv. P. Dkt. No. 24, at 33-34; No. 33, at 19-20.

30. It is telling that in the Objection, Plaintiffs can point to no instances in which Wells Fargo's briefs in the adversary proceeding made "nearly identical arguments to those already before the Court in the Debtors' Motion to Dismiss." Objection, at ¶ 20. Plaintiffs' assertion is sharply belied by the fact that Plaintiffs found it necessary to file a 25-page brief in opposition to Wells Fargo's motion—something that Plaintiffs obviously would have had no real impetus to do if the brief was duplicative of the Debtors' brief. Indeed, Plaintiffs admit in their opposition to Wells Fargo's motion that their brief addresses only the arguments raised for the first time by Wells Fargo, which consist of more than half of the points listed in Plaintiffs' Summary of Argument section. <u>See</u> Adv. P. Dkt. No. 31, at 1-5, 5 n.1.

18

31.   Also telling is the fact that the Debtors and the
Creditors' Committee adopted the unique arguments raised in
Wells Fargo's motion, which was filed after the other
defendants' motions to dismiss.   See Adv. P. Dkt. No. 27,
at 3 n.2; No. 26.   Needless to say, it would have been
unnecessary for the other defendants to join in Wells
Fargo's motion if it merely repeated arguments that already
were presented in the Debtors' motion to dismiss.[2]

> **D.   Wells Fargo Did Not Violate Any Duty Of
> Impartiality In Defending The Trust Against
> Plaintiffs' Claims**

32.   Contrary to Plaintiffs' contention, Wells Fargo
has not violated the duty of impartiality in moving to
dismiss Plaintiffs' Complaint.   See Dkt. No. 4084, ¶ 5-7.
The duty of impartiality requires a trustee to balance the
various beneficial interests when carrying out its
responsibilities "in managing, protecting, and distributing
the trust estate."   Restatement (Third) of Trusts § 79 cmt.

---

[2]   Plaintiffs' half-hearted attempt to challenge the
propriety of Wells Fargo's response to Plaintiffs'
supplemental filing also is without merit.   See Objection,
¶ 27.   The fact that Wells Fargo was the only party to file
a response is irrelevant to this Motion.   Local Rule 7001-
1(B) permits a party to call to the court's attention
pertinent cases decided after a party's final brief is
filed.   Wells Fargo not only has the right, but also the
obligation, to bring to the court's attention the fact that
Plaintiffs' filing was not pertinent to any matter raised
by Wells Fargo's motion to dismiss and thus, did not
comport with the rule.   See Adv. P. Dkt. No. 43, at 1-2.

c (emphasis added).  But whatever duties a trustee may have
to "remain neutral in controversies between or among
possible beneficiaries," Objection, ¶ 23, they are not
implicated in the present case.[3]

33.  Here, the Complaint does not allege any ambiguity
in the Trust Agreement.  To the contrary, there is no
dispute that, under the Trust Agreement, Plaintiffs hold
unsecured claims to the Trust assets, and that in the event
of the Debtors' bankruptcy, the assets are subject to the
claims of the company's general creditors.  See Trust Agmt.
§ 1.3.  Plaintiffs seek, instead, relief that would cause
the Trust assets to be distributed contrary to the express
terms of the Trust and the intent of the grantor.

34.  The primacy of "the duty of the trustee to carry
out the terms of the trust according to the expressed
intent of the trustor" is well established.  See In re
Goulet, 898 P.2d 425, 427 n.4 (Cal. 1995).  This duty
includes the duty to defend the trust as a whole in order

---

[3]    Even if the Complaint involved strictly a dispute
among the beneficiaries over matters of trust
administration—where Wells Fargo stood in the role of a
neutral "stakeholder"—Wells Fargo nonetheless would "have a
duty to provide relevant information of which the trustee
has knowledge and to make reasonable efforts to assure that
all interested beneficiaries are (or have an opportunity to
be) adequately represented."  Restatement (Third) of Trusts
§ 79 cmt. c.

to carry out its purposes—an obligation that, as a matter of law, outweighs the duty of impartiality. And more important, this duty does not require the trustee to stay "neutral" in the face of claims against the trust. Rather, as the California Supreme Court held in In re Ferrall, a case from which Plaintiffs selectively quote, see Objection, ¶ 24, the duty to defend the trust requires the trustee "to protect the trust against an attack that goes to the very existence of the trust itself." 33 Cal. 2d at 206, 200 P.2d at 3; In re Goulet, 898 P.2d at 427-30.

35. Not only does the law of trusts empower Wells Fargo to defend against Plaintiffs' complaint but so too the Trust Agreement, which states that Wells Fargo has authority to "defend suits or legal proceedings and to represent the Trust and the Trust Fund in all suits and legal proceedings." Trust Agmt. § 6.1(e).

**III. WELLS FARGO IS ENTITLED TO DEDUCT THE LEGAL FEES AND EXPENSES IT HAS INCURRED IN THE ADVERSARY PROCEEDING FROM THE TRUST.**

36. As discussed above, the legal fees and expenses that Wells Fargo has incurred and will incur in defending the Trust in the adversary proceeding are entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A). See supra, Parts I & II. The Debtors agree that these fees and expenses are reasonable and were

21

incurred in accordance with the Trust Agreement, but the Debtors suggest that payment to Wells Fargo should be made directly from the Trust assets rather than from the general assets of the estate. <u>See</u> Limited Objection, at 2 & ¶ 16.

37. Wells Fargo does not object to this alternative form of relief to the extent that it recognizes the administrative priority of Wells Fargo's claims.[4] Moreover, Wells Fargo does not object to using the Trust assets to establish a fee account from which Wells Fargo can deduct its legal fees and expenses.

## <u>CONCLUSION</u>

For the reasons set forth above, Wells Fargo respectfully requests that Plaintiffs' Objection and the Debtors' Limited Objection be overruled and the Order substantially in the form attached to the Motion be entered.

---

[4]    The Trust Agreement makes clear that any Trust assets available to the creditors are net of all expenses incurred by the trustee in administering its duties under the agreement, including the defense of the Trust in litigation. Trust Agmt. §§ 1.1, 6.1(e), 6.1(h), 8.2 & 8.3.

22

Dated: January 7, 2008.

                                          KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

    */s/  Christopher A. Ward*
Joanne B. Wills (Del. No. 2357)
Christopher A. Ward (Del. No. 3877)
919 Market Street, Suite 1000
Wilmington, DE 19801
Tel:(302)426-1189
Fax:(302)426-9193
cward@klehr.com

Andrew A. Nicely
Tai Lui Tan
MAYER BROWN LLP
1909 K Street, N.W.
Washington, DC 20006-1101
Tel: (202)263-3000
Fax: (202)263-3300
anicely@mayerbrown.com

Counsel to Claimant Wells Fargo Bank
N.A. a/k/a Wells Fargo ITS

DEL1 67560-1