## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| | : | |
| | : | **Proposed Objection Deadline: 1/17/08 @ 4:00 p.m.** |
| **Debtors.** | : | **Proposed Hearing Date: 1/23/08 @ 1:30 p.m.** |

## APPLICATION FOR ORDER AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY IP RECOVERY, INC. TO MARKET CERTAIN INTELLECTUAL PROPERTY ASSETS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328

New Century Financial Corporation, a Maryland corporation, New Century TRS

Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as a

debtor and debtor in possession in the above-captioned chapter 11 cases (collectively, the

"Debtors"), hereby request the entry of an order, pursuant to sections 327(a) and 328 of Title 11

of the United State Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), authorizing the

Debtors to employ IP Recovery, Inc. ("IP Recovery") to market the Debtors' internet domain

names and other intellectual property assets (the "Application"). A copy of the "Services

Agreement" setting forth the terms of this engagement, the proposed compensation structure, and

a listing of the Debtors' intellectual property assets to be sold pursuant to this engagement is

attached hereto at "Exhibit A." In support of this Application, the Debtors are concurrently

---

[1] The debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

submitting to the Court the Declaration of Jay D. Lussan, CEO of IP Recovery, a copy of which is attached hereto as "Exhibit B." The Debtors further represent and states as follows:

## JURISDICTION

The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

1.    Prior to the April 2, 2007 commencement of these chapter 11 cases, the Debtors were one of the largest specialty mortgage finance businesses in the United States. The Debtors originated, purchased, sold, and serviced mortgage loans nationwide. The Debtors commenced these cases principally to market for sale portions of their businesses on a going concern basis and to continue the process started pre-petition of winding down other portions of their businesses and liquidating assets.

2.    Pre-petition, the Debtors operated a "retail division" (chiefly under Home123 Corporation) under which originated loans through direct contact with consumers, including through a large number of websites that provided loan information directly to consumers. The Debtors continue to own the domain names associated with these websites. In addition, the Debtors continue to license the sorts of software applications generally associated with large business operations, such as the "Microsoft Windows" operating system, the "Acrobat" reader program, and similar applications.

3.    The Debtors understand that they may be able to derive substantial value from this intellectual property. Consequently, the Debtors embarked on a process to interview brokers to market and dispose of these assets. This process was spearheaded by Ted Seden, Vice President of Vendor Management with the Debtors, and Eva Anderson, a Director with Alix Partners, financial advisors to the Debtors. In making their selection, the Debtors sought to retain a broker that had the experience and resources necessary for this engagement and on terms that were competitive and beneficial to the estates and creditors.

2

4.      As a result of this process, the Debtors have determined, subject to Court approval, to employ IP Recovery to market and sell these assets. The Debtors believe that IP Recovery is well qualified to serve in this capacity. IP Recovery has extensive experience in all aspects of marketing and selling domain names and other intellectual property, and they regularly serve in capacities similar to the engagement proposed herein.

## TERMS OF ENGAGEMENT

5.      Specifically, the Debtors request Court authority to engage IP Recovery pursuant to the terms set forth in the Services Agreement. As described in that agreement, IP Recovery is being engaged to work as their exclusive marketing and sales agent for the Debtors with respect to certain intellectual property assets, and will work to market these assets in order to maximize value for the estates. Jay D. Lussan (with IP Recovery) is the individual who will be primarily responsible for this engagement.

6.      To the best of the Debtors' knowledge, neither IP Recovery nor any of its employees who will be involved in this engagement have any connection with or any interest adverse to the Debtors, their creditors, any other party in interest, or their respective attorneys. IP Recovery has completed a detailed conflict search of parties involved and these chapter 11 cases, and based on such search, believes that it is a "disinterested person" as that term in defined under 101(14) of the Bankruptcy Code.

7.      The Debtors have been advised that IP Recovery employees do not record their time and activities, as in the case with lawyers and certain other professionals. It is the Debtors' understanding that this is universally the case with brokers in the same industry as IP Recovery. Instead, the Debtors will pay "success fees" to IP Recovery upon the closing of a sale, license, transfer or other transaction disposing of assets. The success fee is calculated as 30% of the "Gross Consideration" generated in transactions, i.e. the cash or other consideration paid to or for the benefit of the Debtors as a result of the sale, disposition or long-term license of an asset. In addition, the Debtors will pay IP Recovery a $15,000 "retention fee" upon the

commencement of this engagement, which will be applied as a credit towards future success fees. Given that IP Recovery is essentially operating under a contingency fee arrangement, the Debtors' request that the fee arrangement set forth in the "Services Agreement" be approved pursuant to section 328(a) of the Bankruptcy Code.

8.      In addition, the Debtors will reimburse IP Recovery for actual costs incurred in connection with this engagement, including reasonable travel, shipping, supplies and similar costs. IP Recovery will file a final fee application for reimbursement of any costs or expenses with respect to its services with the Court in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware and orders of the Court. As such, all parties in interest, including without limitation the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Official Committee of Unsecured Creditors (the "Committee") and the fee examiner appointed in these chapter 11 cases, will retain the right to object to the reimbursement of such costs and expenses, but not to the success fees earned in accordance with the Services Agreement.

9.      The Debtors envision that any sale of intellectual property assets conducted pursuant to IP Recovery's engagement will be effectuated in accordance with the Court's streamlined procedures governing miscellaneous asset sales of up to $250,000 in cash consideration to the estates. See Court Orders at Docket Nos. 704 and 2594. Under those procedures, the Debtors are required to serve a notice describing the terms of any proposed sale on the Official Unsecured Creditors' Committee, the United States Trustee and other key constituencies, and those parties have an opportunity to object to the proposed sale and to request a Court hearing regarding the same.

10.      The Debtors propose that, in any sale notice describing a sale in which IP Recovery is expected to earn a Success Fee or any other compensation, the Debtors will include a statement describing the compensation earned by IP Recovery (including any Success Fee and any costs or expenses to be reimbursed to IP Recovery). As a result, parties will have ample

opportunity to review any fees and expenses to be paid to IP Recovery, in addition to reviewing the terms of IP Recovery's engagement in this Application. In addition, IP Recovery may file a final fee application for allowance of any fees, costs or expenses not previously paid and allowed in accordance with the procedures described above.

11.     Given the notice procedures applicable here, the Debtors' request that the fee arrangement set forth in the Services Agreement be approved pursuant to Bankruptcy Code section 328(a), and that the Court may allow compensation different from the compensation described above only if such terms prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms.

12.     The Debtors believe that these compensation terms are competitive in the industry, and that the proposed engagement of IP Recovery is in the best interest of the Debtors, its estates and creditors.

**NOTICE**

13.     The Debtors have provided notice of this Application to (i) the U.S. Trustee, (ii) counsel to the Official Unsecured Creditors' Committee, (iii) other parties entitled to notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and Delaware Local Bankruptcy Rule 2002-1(b). The Debtors submit that no other or further notice is necessary or required.

14.     No prior request for the relief sought in this Application has been made to this or any other Court.

15.     The Debtors submit that this Application does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Local District Court Rule 7.1.2(a).

RLF1-3241836-1

## CONCLUSION

**WHEREFORE,** the Debtors respectfully request that the Court enter an Order approving this Application, substantially in the form of the proposed Order attached hereto at "Exhibit C", authorizing the employment of IP Recovery pursuant to Bankruptcy Code sections 327(a) and 328 on the terms set forth in the Services Agreement, and granting such other relief as the Court deems proper.

Dated: January 8, 2007
      Wilmington, Delaware

                                      Mark D. Collins (No. 2981)
                                      Michael J. Merchant (No. 3854)
                                      Christopher M. Samis (No. 4909)
                                      RICHARDS, LAYTON & FINGER, P.A.
                                      One Rodney Square
                                      920 North King Street
                                      Wilmington, Delaware  19801
                                      Telephone:  (302) 651-7700
                                      Facsimile:  (302) 651-7701

                                      - and -

                                      Suzanne S. Uhland
                                      Ben H. Logan
                                      O'MELVENY & MYERS LLP
                                      275 Battery Street
                                      San Francisco, California 94111
                                      Telephone:  (415) 984-8700
                                      Facsimile:  (415) 984-8701

                                      ATTORNEYS FOR DEBTORS
                                      AND DEBTORS IN POSSESSION