**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 07-10416-KJC |
| NEW CENTURY TRS | : | |
| HOLDINGS, INC., *et al.*, | : | Jointly Administered |
| | : | |
| Debtors. | : | Objection Deadline: January 30, 2008 at 4:00 p.m. |
| | : | Hearing Date: February 6, 2008 at 1:30 p.m. |

**SECOND MOTION OF POSITIVE SOFTWARE SOLUTIONS, INC. FOR RELIEF**
**FROM THE STAY REGARDING COPYRIGHT INFRINGEMENT LITIGATION**

TO THE HONORABLE KEVIN J. CAREY, U.S. BANKRUPTCY JUDGE:

Positive Software Solutions, Inc. ("Positive Software"), a creditor and party-in-interest in this jointly administered bankruptcy cases of New Century TRS Holdings, Inc., and its affiliated debtors-in-possession (the "Bankruptcy Cases"), files its Second Motion for Relief from the Automatic Stay Regarding Copyright Infringement Litigation (the "Second Stay Motion"), respectfully stating as follows:

## I. SYNOPSIS[1]

1.    In February 2003, Positive Software brought suit in the Texas District Court against New Century Mortgage Corporation ("NCMC"), New Century Financial Corporation ("NCFC") and certain other Debtors (collectively, the "Debtor Defendants"), and certain former officers of the Debtor Defendants seeking injunctive relief and monetary damages in connection with the unlicensed and unauthorized use of and unlawful attempts to counterfeit Positive Software's proprietary "LoanForce" software platform (the "2003 Litigation"). In July 2007, Positive Software filed the First Stay Motion, seeking authority of this Court to resume the 2003 Litigation so that its claims could be liquidated.

---

[1]    Unless otherwise defined, capitalized terms shall have the same meaning as defined in Positive Software's first motion for relief from stay filed on July 10, 2007 and referenced as Docket No. 1877 (the "First Stay Motion").

2.      The Debtors opposed the First Stay Motion.  At hearing in August 2007, this Court acknowledged that Positive Software's claims would have to be liquidated at some point in time, but ruled that it was *then* premature to grant Positive Software relief from the stay and denied the motion without prejudice.  Among other things, the Court found that some delay would not prejudice Positive Software and appeared to be persuaded that the Debtors needed to devote their financial and professional resources to then-exigent issues confronting the Debtors' estates.  The Court suggested, however, that it would be appropriate for Positive Software to renew its request for stay relief at the time the Debtors filed a bankruptcy plan.

3.      Some six months will have passed since that August hearing and hearing on this Second Stay Motion. The Debtors, based on the representations made in their most recent motion to extend the exclusivity period, appear to have addressed their most pressing concerns. The Debtors also indicate that they are poised to propose a bankruptcy plan before the end of January. Finally, the parties, along with representatives of the Official Committee of Unsecured Creditors (the "Committee"), have just participated in a two-day mediation regarding all matters in controversy between them.  The mediation was, unfortunately, unsuccessful.  Accordingly, it is now appropriate and proper to permit the 2003 Litigation to go forward to permit Positive Software to liquidate its claims against NCMC, NCFC, and other Debtor Defendants.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over the contested matter initiated by this Second Stay Motion under 28 U.S.C. § 1334 and the matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of the contested matter in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

### III.    BACKGROUND

5.    Positive Software has already provided this Court with an extensive summary of the claims pending in the 2003 Litigation in its First Stay Motion and this Court is aware of those facts from having heard that motion.[2]

6.    Hearing on the First Stay Motion.  On August 7, 2007, this Court heard the First Stay Motion.[3]  In denying the First Stay Motion, this Court noted in its bench ruling:

> If the issues are at some time in the future what they are now, it strikes me -- it makes much more sense from an efficiency standpoint for this matter to be tried in the forum where it's been pending.  But I'm not going to make that ruling now because the issue strictly isn't before me.  And when it comes before me, it may be framed differently. And to further respond to counsel's question, what I normally tell Debtors is at some point you'll have to liquidate this claim.  And, you know, the moving party isn't going to be made to wait forever.  One logical time when it might be appropriate for the motion to be renewed would be at or about the time that a plan is filed so that you can see what treatment has been proposed for the litigation.  Sometimes that frame's a little bit the issue of the where, but beyond that I can say no more at this point.[4]

7.    On August 14, 2007, this Court entered a written order denying the Fist Stay Motion [Docket No. 2265] (the "August Stay Order").  In the August Stay Order, this Court also found that Positive Software had violated the automatic stay by filing – in response to the Debtors' motion to confirm the arbitration award in the 2003 Litigation  – a motion to amend a pre-petition motion to vacate the Arbitration Award.  Positive Software has appealed that portion of the Arbitration Award (the "Stay Appeal"). [5]

8.    Developments in the Bankruptcy Case.  On December 28, 2007, the Debtors filed their third motion to extend the exclusivity period [Docket No. 4263] (the "Third Extension

---

[2]    Positive Software incorporates as if fully set forth herein the Factual Background section set forth in Section III of the First Stay Motion at 5-9, and the exhibits referenced therein.

[3]    See Hearing Transcript for August 7, 2007 [Docket No. 2451] (the "August 7 Transcript").

[4]    See August 7 Transcript at 70.

[5]    The Stay Appeal is docketed before the U.S. District Court for the District of Delaware as Civil Action No. 07-559.

Motion"), requesting that the exclusivity period for filing a bankruptcy plan be extended to January 28, 2008. In the Third Extension Motion, the Debtors recite the progress that they have made with respect to administering the Debtors' estates. These include:

- Liquidating substantially all of the Debtors' business assets (most of which was accomplished in the first three months of these cases).

- Evaluating executory contracts and rejecting those determined to be burdensome to the Debtors' estates.

- Down-sizing operations (such that the Debtors' current staff numbers less than 100 persons).

- Addressing WARN Act claims filed by former employees.

- Addressing the cure claim asserted by Deutsche Bank in connection with the assumption of loan servicing agreements.

- Formulating and negotiating acceptable terms of a proposed bankruptcy plan with the Committee.

- Reviewing some $34.8 billion in filed claims and commencing the claims objection process.

- Providing requested assistance to the examiner appointed in the Bankruptcy Case.[6]

9.      In short, the Debtors appear to have addressed the immediate issues facing them and to have made significant headway in administering their estates since the time this Court heard the First Stay Motion.

10.     <u>Developments in Litigation Matters</u>. As this Court is aware, Positive Software brought an action in the Texas District Court against Susman Godfrey LLP ("Susman Godfrey") and two of its partners (Barry C. Barnett ("Barnett") and Ophelia F. Camiña ("Camiña")), as well

---

[6]        *See* Third Extension Motion at 4-7, 10-14.

as certain former officers or employees of the Debtors, to recover damages arising from fraudulent conduct committed in the 2003 Litigation.[7]

11.    This Court may not be aware, however, that the Texas District Court, in a sua sponte action, initiated an ancillary proceeding in which it has ordered that Barnett and Camiña, the two Susman Godfrey partners heading the representation of the Debtor Defendants in the 2003 Litigation, show cause why they should not be subject to disciplinary action as a consequence of their wrongful conduct in the 2003 Litigation.[8]    A true and correct copy of the Texas District Court's show cause order is attached hereto as Exhibit "A".

12.    Barnett and Camiña have filed their responses to the Show Cause Order.  Those responses, however, contain numerous material misrepresentations and omissions regarding Barnett's and Camiña's conduct.  Consequently, Positive Software has requested permission to file an amicus brief to assist the Texas District Court in determining whether and what disciplinary actions are appropriate. The Texas District Court has not yet ruled on Positive Software's request to file an amicus brief, but Positive Software anticipates that it will be granted.

13.    <u>Potential Prejudice</u>.  With the passage of time there is increasing likelihood that relevant and material evidence (including evidence in the form of oral testimony) will be lost or become increasing costly and burdensome to recover. That risk has been borne out in the case of

---

[7]    That lawsuit is docketed in the Texas District Court as Case No. 3:07-cv-1422 (the "2007 Litigation"). Despite the fact that Positive Software has not named any Debtor as a defendant to the 2007 Litigation and that it does not seek any recovery against any Debtor, the Debtors have asserted that Positive Software's action in bringing the lawsuit violated the automatic stay.  On October 18, 2007, Positive Software filed a motion for relief from stay seeking authority to proceed on claims brought by Positive Software against the named defendants to the 2007 Litigation [Docket No. 3320] (the "2007 Litigation Stay Motion"). Positive Software maintains that it need not obtain relief from the automatic stay to proceed against the non-Debtor defendants to the 2007 Litigation. Positive Software moved for relief from the stay as a prophylactic measure and to address collateral issues which may arguably implicate the automatic stay.  The 2007 Litigation Stay Motion remains pending.

[8]    That proceeding is docketed in the Texas District Court as Misc. Action No. 3:07-MC-93-N.

VisionCore Consulting ("VisionCore"), an entity that the Debtor Defendants retained to design software that the Debtor Defendants used to circumvent Positive Software's ability to prevent the Debtors' unauthorized use of LoanForce.  VisionCore has been acquired by another company and no longer exists as a stand alone entity.

14.    <u>Other Facts</u>.  One fact which Positive Software had omitted from its First Stay Motion is that it has reserved  $1.5 million of its revenues to satisfy any judgment arising from the confirmation of the Arbitration Award (the "Reserve").  Although not required to do so under any order and although it is confident that the Arbitration Award ultimately will be vacated, Positive Software continues to maintain the Reserve.

15.    <u>Efforts to Resolve Claims</u>.  In accordance with the District Court Local Rules, Positive Software and the Debtors were ordered to mediate the claims at issue in the Appeal. The parties agreed to expand the scope of mediation to include all matters in contention, including Positive Software's claims in the 2003 Litigation and the related proofs of claim filed by Positive Software against the Debtor Defendants.   David Stratton, Esq., of Pepper Hamilton LLP, was appointed as mediator.

16.    The parties, along with attorneys representing the Committee, met to mediate the matters in contention on January 7 and 8, 2008.  Despite devoting approximately one and one-half days to the mediation process, the parties were unable to reach settlement.

## IV.    <u>ARGUMENT</u>

17.    The legal argument  contained in Positive Software's First Stay Motion remains applicable today. Accordingly, rather than re-stating that argument in full, Positive Software will

focus on relevant factual developments that have transpired since the August 7 hearing on the

First Stay Motion or matters which were not previously addressed in the First Stay Motion.[9]

   18. Positive Software's claims against NCMC, NCFC and the other Debtor

Defendants, at some point, will have to be resolved. Despite good faith efforts by

representatives of the Debtors, Positive Software and the Committee, it does not appear that

those claims will be resolved absent some additional focused litigation.  It is clear that the only

proper and logical forum for litigating Positive Software's claims remains the Texas District

Court and that it is now appropriate and proper that Positive Software be permitted to commence

that process without further delay.[10]

   19. In their response to the First Stay Motion and at hearing on the First Stay Motion,

the Debtors argued strenuously that they faced limited resources and that the pressing issues

facing their estates demanded full dedication of those resources.[11]  That was some five months

ago.  Since then, the Debtors have stabilized their operations and are on the verge of proposing a

bankruptcy plan. The Debtors, having addressed pressing issues facing their estates, are now able

to devote resources to addressing what is surely one of the most significant claims against their

estates.

---

[9] Positive Software incorporates as if fully set forth herein Section IV to First Stay Motion and the exhibits referenced therein.

[10] Among other things, Positive Software's claims involve both the interpretation and application of federal trademark and copyright law.  Consequently, even if this Court were willing to exercise jurisdiction to adjudicate Positive Software's claims, withdrawal of the jurisdiction reference would be mandatory upon request.  *See* 28 U.S.C. § 157(d) (providing for the mandatory withdrawal of the bankruptcy reference if the matter involves consideration of federal laws implicating interstate commerce). *See also In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 954 (7th Cir.1996) (withdrawal of the reference is mandatory if the issues involve the interpretation, as opposed of mere application, of non-bankruptcy federal law).  Furthermore, only the Texas District Court would have jurisdiction to confirm or vacate the Arbitration Award.  *See* 9 U.S.C. § 9 (only U.S. District Court in location which the parties have agreed to arbitrate has jurisdiction to confirm an arbitration award).  Of course, as a practical matter, it would be a waste of this Court's time and resources to take on a case when the Texas District Court has already conducted numerous legal hearings and made rulings in connection with legal and factual issues pertaining to Positive Software's claims.

[11] *See* Response 2-3, 8-10; August 7 Transcript at 51-52, 55.

20.     Other factors also militate in favor of permitting the 2003 Litigation to proceed at this time.  One factor which courts have examined in determining to permit the resumption of pre-petition litigation is whether the non-debtor's claims may be meritorious. The Debtors previously argued that the Arbitration Award was the best measure of the merits of Positive Software's claims.  This Court, not having first-hand knowledge of the misconduct committed by Susman Godfrey in the arbitration proceeding, concurred.  The Texas District Court's Show Cause Order highlights the fact that the Arbitration Award is fatally tainted and is *not* a measure of the merits of Positive Software's claims.[12]

21.     Additionally, Positive Software remains concerned that the passage of time may prejudice its ability (once the Arbitration Award is vacated), to try or to re-arbitrate its claims. The 2003 Litigation is approaching its fifth year and each day of additional delay presents another day that witnesses will become unavailable or become unreliable and that tangible or electronic evidence may be lost, damaged or destroyed.

22.     Finally, it is only equitable that Positive Software be permitted to move forward to vacate the Arbitration Award so that it can put the Reserves to its own use. The Debtors, with the prospect of recovering the Reserves (and assuming that the Debtors truly believe that the Arbitration Award is correct and untainted), should also favor moving forward in the 2003 Litigation.

## V.    REQUEST FOR RELIEF

Positive Software respectfully requests that the Court (a) enter an order in the form attached hereto as Exhibit "B", providing Positive Software relief from the automatic stay to

---

[12]     A party seeking stay relief to continue pre-petition litigation for the purpose of liquidating claims need not demonstrate a likelihood of success on the merits, but only that the claims to be adjudicated in the non-bankruptcy court forum have some chance of success. *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P. (In re Levitz Furniture Inc.)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000).  As noted in the First Stay Motion, the Texas District Court in its Preliminary Injunction Order found that it Positive Software's intellectual property and breach of contract claims were likely meritorious.

permit the 2003 Litigation to proceed to a final adjudication, including any future injunctive,

arbitration, or appellate proceedings that may be involved (but not authorizing non-bankruptcy

attempts by Positive Software to collect on any monetary judgment that it may be awarded), and

(b) grant Positive Software such other and further relief to which it may be justly entitled.

Dated: January 9, 2008
       Wilmington, Delaware         FOX ROTHSCHILD LLP


               By:   /s/ L. Jason Cornell
                   Daniel K. Astin, Esquire (Del. No. 4068)
                   L. Jason Cornell, Esquire (Del. No.3821)
                   Carl D. Neff, Esquire (Del. No. 4895)
                   Citizens Bank Center, Suite 1300
                   919 N. Market Street, P.O. Box 2323
                   Wilmington, Delaware  19899-2323
                   Tel (302) 654-7444/Fax (302) 656-892
                   dastin@foxrothschild.com
                   asaccullo@foxrothschild.com
                   jcornell@foxrothschild.com

                   -and-

                   Mark H. Ralston, Esq.
                   Texas Bar No. 16489460
                   THE RALSTON LAW FIRM
                   2603 Oak Lawn Avenue
                   Suite 230, LB 2
                   Dallas, Texas 75219-9109
                   Telephone: (214) 295-6416
                   ralstonlaw@gmail.com

                   Counsel to Positive Software Solutions, Inc.