**UNITED STATES BANKRUPTCY COURT OF DELAWARE**

FILED
2008 JAN -9 AM 10:51
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Pierre Richard Augustin, PRO SE )
Consumer Creditor and Party In Interest )
)
v. ) 07-10416-KJC
) 07-10419
New Century Mortgage Corporation Et Al, )
Debtors. )

**AMENDED MOTION TO FILE LATE PROOF OF POST-PETITION CONSUMER PRIORITY MORTGAGE FRAUD CLAIM ('ADMINISTRATIVE') FILED ON 12-26-2007 WITH AMENDED PROOF OF CLAIM (FORM B10)**

Consumer Creditor and a Party In Interest, Pierre Richard Augustin, Pro Se as an outsider of courtroom litigation ponders and reflects on the following oath that every federal judge takes to uphold the Constitution of the United States:

*"I, _________, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _________ under the Constitution and laws of the United States. So help me God."*

Likewise, "parties appearing pro se are allowed greater latitude with respect to reasonableness of their legal theories (Patterson V. Aiker, 111 F.R.D. 354, 358 [N.D. GA 1986])". Also, the court is supposed to judge the case based on its merits even if procedural errors are made. Thus, the Court must give this Creditor and Party of Interest, "every favorable inference arising from his pro se status" (Hall v. Dworkin, 829 F. Supp. 1403, 1409 (ND NY 1993)).

Your Honor, the public has an interest in the orderly administration of justice. Public policy favors the proper adjudication of claims. (See U.S. v. Premises and Real Prop. At 4492 S. Livonia Rd., F. 2d 1258, 1263 (2d Cir. 1989), see also U.S. v. All Assets of Statewide Auto Parts, Inc., 971 F. 2d 896, 902 (2d Cir. 1992) (a claimant's interest in his home merits special constitutional protection).

The Consumer Creditor and a Party In Interest's claim against Debtors is being sought as a 'post-petition consumer priority (507(a)(6)) claim ('administrative') of mortgage fraud that had arisen before the filing of Debtor's bankruptcy petition. Court have found that consumer priority (507(a)(6)) claim applicable to a wide variety of transactions, encompassing even transactions that would not ordinarily be considered consumer transactions (In re CSY Yacht Corp., 34 B.R. 215 (Bankr. D. Fla. 1983)). Such claims have been held to be an administrative expense entitled to priority (11USC 503(b)(1)); see In re Charlesbank Laundry, Inc., 755 F.2d 200 (1st Cir. 1985) (civil fine based on debtor's post petition conduct granted administrative expense status); In re Friendship College Inc., 737 F.2d 430 (4th Cir. 1987) (the term "estate" as used in 503(b)(1)(B)(i ) implies post-petition liabilities); see also Reading Co. v. Brown, 391 U.S. 471, 482, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968) (post-petition tort claim is administrative expense); In re Boston Post Road Ltd. P'ship, 21 F.3d 477 (2d Cir. 1994) (tenants who are owed security deposits have administrative claims which are entitled to priority); In re Cantonwood Associates Ltd. P'ship, 138 B.R. 648 (Bankr. D. Mass. 1992).

Your Honor, the public has an interest in the orderly administration of justice. Public policy favors the proper adjudication of claims. (See U.S. v. Premises and Real Prop. At 4492 S. Livonia Rd., F. 2d 1258, 1263 (2d Cir. 1989), see also U.S. v. All Assets of Statewide Auto Parts, Inc., 971 F. 2d 896, 902 (2d Cir. 1992) (a claimant's interest in his home merits special constitutional protection).

The Consumer Creditor and a Party In Interest's claim against Debtors is being sought as a 'post-petition consumer priority (507(a)(6)) claim ('administrative') of mortgage fraud that had arisen before the filing of Debtor's bankruptcy petition. Court have found that consumer priority (507(a)(6)) claim applicable to a wide variety of transactions, encompassing even transactions that would not ordinarily be considered consumer transactions (In re CSY Yacht Corp., 34 B.R. 215 (Bankr. D. Fla. 1983)). Such claims have been held to be an administrative expense entitled to priority (11USC 503(b)(1)); see In re Charlesbank Laundry, Inc., 755 F.2d 200 (1st Cir. 1985) (civil fine based on debtor's post petition conduct granted administrative expense status); In re Friendship College Inc., 737 F.2d 430 (4th Cir. 1987) (the term "estate" as used in 503(b)(1)(B)(i) implies post-petition liabilities); see also Reading Co. v. Brown, 391 U.S. 471, 482, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968) (post-petition tort claim is administrative expense); In re Boston Post Road Ltd. P'ship, 21 F.3d 477 (2d Cir. 1994) (tenants who are owed security deposits have administrative claims which are entitled to priority); In re Cantonwood Associates Ltd. P'ship, 138 B.R. 648 (Bankr. D. Mass. 1992).



Your Honor, the public has an interest in the orderly administration of justice. Public policy favors the proper adjudication of claims. (See U.S. v. Premises and Real Prop. At 4492 S. Livonia Rd., F. 2d 1258, 1263 (2d Cir. 1989), see also U.S. v. All Assets of Statewide Auto Parts, Inc., 971 F. 2d 896, 902 (2d Cir. 1992) (a claimant's interest in his home merits special constitutional protection).

The Consumer Creditor and a Party In Interest's claim against Debtors is being sought as a 'post-petition consumer priority (507(a)(6)) claim ('administrative') of mortgage fraud that had arisen before the filing of Debtor's bankruptcy petition. Court have found that consumer priority (507(a)(6)) claim applicable to a wide variety of transactions, encompassing even transactions that would not ordinarily be considered consumer transactions (In re CSY Yacht Corp., 34 B.R. 215 (Bankr. D. Fla. 1983)). Such claims have been held to be an administrative expense entitled to priority (11USC 503(b)(1)); see In re Charlesbank Laundry, Inc., 755 F.2d 200 (1st Cir. 1985) (civil fine based on debtor's post petition conduct granted administrative expense status); In re Friendship College Inc., 737 F.2d 430 (4th Cir. 1987) (the term "estate" as used in 503(b)(1)(B)(i ) implies post-petition liabilities); see also Reading Co. v. Brown, 391 U.S. 471, 482, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968) (post-petition tort claim is administrative expense); In re Boston Post Road Ltd. P'ship, 21 F.3d 477 (2d Cir. 1994) (tenants who are owed security deposits have administrative claims which are entitled to priority); In re Cantonwood Associates Ltd. P'ship, 138 B.R. 648 (Bankr. D. Mass. 1992).

**PLEASE TAKE NOTICE**, that Consumer Creditor and a Party In Interest (Pierre Richard

Augustin, Pro Se) in the above name bankruptcy proceeding moves this Court before the Honorable Kevin J. Carey for an Order classifying Consumer Creditor and a Party In Interest's 'mortgage fraud claim' as a consumer priority (507(a)(6)) or post-petition priority claims as part of the administrative expenses of the bankruptcy estate by:

1. Granting the Consumer Creditor and a Party In Interest the right to file a late proof of claim;
2. Extend the expiration dates of the orders' in order to permit the Consumer Creditor and a Party In Interest to exercise his rights to file his proof of post-petition consumer priority (507(a)(6)) priority claim after the current expiration dates of the Orders that were issued to close the 11 USC 523(c) cases against the creditors;
3. Allow the Consumer Creditor and a Party In Interest to exercise his rights to declare the enclosed consumer priority (507(a)(6)) post-petition mortgage fraud claim ('administrative') non-dischargeable (11 USC 523 (c)(1)) that had accrued on April 15, 2004 which was discovered in February 28, 2006. Consumer Creditor and a Party In Interest is basing his late claim filing (see attached 'Amended' Form B10(official form 10)) on the excusable neglect standard, Fed. R. Bank. P. 3003(c)(3), (9006)(b)(1) and Massachusetts Chapter, 183C, Section 15: (a) Any person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert against the original lender or broker of the loan.
4. The Supreme Court has defined excusable neglect fairly liberally, to include inadvertence, mistake, or carelessness, in the context of filing a late claim in a Chapter 11 case (Pioneer Inv. Services Co. v. Brunswick Associates, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993); see Maressa v. A.H. Robins Co., 839 F.2d 220 (4th Cir. 1988); In re Int'l Horizons,

Inc. 751 F.2d 1213 (11th Cir. 1985); In re Pigott, 674 F.2d 1011(3rd Cir. 1982); see also In re Pioneer Inv. Services Co., 943 F.2d 673 (6th Cir. 1991)(late claims allowable in chapter 11 based on excusable neglect standard), aff'd, 507 U.S. 380 (1993). Also, the Supreme Court has held that punitive or multiple damages which arise from such fraud are not dischargeable (Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212, 130 L. Ed. 2d 341 (1998)).

Consumer Creditor and a Party In Interest states that the Debtor (New Century Mortgage) and its agents in civil conspiracy committed fraud in connection with his mortgage transaction on April 15, 2004 which was discovered by Consumer Creditor and a Party In Interest in February 28, 2006. Also, there is strong irrefutable evidence of Civil Conspiracy in committing Mortgage FRAUD because Consumer Creditor and a Party In Interest suffered injury of fact since the New Century mortgage's High-Cost Mortgage was intentionally structured in a manner that was deceptive and disadvantageous to Consumer Creditor and a Party In Interest (predatory lenders often target the elderly, minorities and the disabled who have accumulated a large amount of equity in their homes) and total disregard to the Consumer Creditor and a Party In Interest's wife ability to repay the loan by adding her to the mortgage loan note.

Allied Home Mortgage that acted as a finder for the Debtors mislead Consumer Creditor and a Party In Interest in believing he was getting a fixed loan instead of the 2 year-arm fixed loan that guaranteed the loan to be refinanced with a short time (2 years of a 30 years loan) and thereby Consumer Creditor and a Party In Interest would have to initiate successive refinancing that would either erode his equity and credit.

Allied Home Mortgage, that acted as a finder for the Debtors, fraudulently (see analogous case in In re McFarland, 84 F.3d 943, 947 (7th Cir.) (entire debt no dischargeable based on false financial statement related to refinancing); (entire amount of loan, not just amount extended after false financial statement, was no dischargeable) manipulated the facts on the mortgage application by approving the mortgage on Consumer Creditor and a Party In Interest's wife name despite her holding a temporary, seasonal and on call part-time employment of $80 per day that resulted in the stripping of Consumer Creditor and a Party In Interest's equity.

The causal connection of Allied Home Mortgage fraudulent mortgage resulted in the civil conspiracy of amongst Allied and the Debtor in benefiting from the refinance transactions while Consumer Creditor and a Party In Interest's debt liability surpassed his asset that contributed to Consumer Creditor and a Party In Interest's financial dilemma. (See United States v. Western Pacific Railroad, 352 U.S. 59, 71-73, 1 L. Ed. 2d 126, 77 S. Ct. 161 (1956); Heck v. Rodgers, 457 F. 2d 303, 307-08 (7th Cir. 1972).

The elements of civil conspiracy of Mortgage Fraud are the formation and operation of the conspiracy and damage resulting to Consumer Creditor and a Party In Interest from the act or acts done in furtherance of the common design. "In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (Doctors' Co. v. Superior Court (1989) 49 Cal.3d 44, citing Mox Incorporated v. Woods (1927) 202 Cal. 675, 677-78.)' (Id. at 511.)).

The act of Civil Conspiracy of Mortgage Fraud amongst Commonwealth (based on the preliminary/commitment of the title report on 3/29/2004, see exhibits), Allied Home Mortgage (acting as a finder for the Debtor) & Debtor added Consumer Creditor and a Party In Interest 's wife on the mortgage by making:

1. A false representation (11 USC 523(a)(2)(A));
2. The person or entity who made that false statement made it knowingly to conceal it (11 USC 523(a)(2)(A));
3. The receiver of that statement meaning all parties involved in the refinancing of his property believed that the title was indeed *'clear'* especially Consumer Creditor and a Party In Interest since he was later affected by the civil conspiracy to defrauded him, and Debtor's underwriter and Lawyer, Samuel P. Reef covered up the fact that Consumer Creditor and a Party In Interest's wife true temporary and on call part-time work status (11 USC 523(a)(2)(A));
4. Based on that false and fraudulent statement, the Debtor's underwriter was part of the civil conspiracy or acted upon it which stripped away all the equity in Consumer Creditor and a Party In Interest 's property that led to the over financing of his property and all the parties benefited financially from the fraud (11 USC 523(a)(2)(A)).
5. Consumer Creditor and a Party In Interest trusted and believed that all the parties involved in the refinancing of his property had a **fiduciary responsibility** (11 USC 523(a)(4)) not to deceive him by assuring that the transaction would not be to his detrimental as it turned out to be (In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F. 3d 198, 216 (3d Cir. 2002)).
6. Debtors also violated of Massachusetts Law, Chapter 183C, Section 3 which requires that a creditor or Mortgage lender may not make a high-cost home mortgage loan without first receiving certification from a counselor with a third-party nonprofit organization approved by

the United States Department of Housing and Urban Development, a housing financing agency of this state, or the regulatory agency which has jurisdiction over the creditor, that the borrower has received counseling on the advisability of the loan transaction. A high cost home mortgage loan originated by a lender in violation of this section '***shall not be enforceable***'. At or before closing a high cost home mortgage loan, the lender shall obtain evidence that the borrower has completed an approved counseling program. That step was never taken by the Debtors or its agents.

7. Allied Home Mortgage acting as a finder for Debtors along with Debtors and its agents involved in the practice of loan **FLIPPING** by refinancing Consumer Creditor and a Party In Interest's high-cost loan with no tangible benefit to the Consumer Creditor and a Party In Interest by charging high origination fees on the entire new loan amount, not on just the incremental amount added to the loan principal through the refinancing and triggering prepayment penalties that were financed as part of the total loan amount that added to the Consumer Creditor and a Party In Interest's debt burden.

8. Allied Home Mortgage acting as a finder for Debtors along with Debtors and its agents actions can be classified as **'Reverse Redlining'** that since as a member of minority who had insufficient access to mainstream sources of credit and lack an adequate understanding of the complexities of that financial transactions at that time, the rate on the note that Consumer Creditor and a Party In Interest and his wife obtained do not correspond to their risk levels and was inappropriate for their needs. As stated by Congress and district courts, "reverse redlining" refers to "the practice of targeting residents in certain geographic areas for credit on unfair terms." Newton v. United Companies Fin. Corp., 24 F. Supp.2d 444, 455 (E.D. Pa. 1998); accord Williams v. Gelt Fin. Corp., 237 B.R. 590, 594 (E.D. Penn. 1999) ("reverse

redlining" is the practice of "targeting of persons for 'credit on unfair terms' based on their income, race, or ethnicity") (quoting S. Rep. No. 103-169, at 21 (1993)). See Hearings: Reverse Redlining, note 4, supra, at 246 ("so-called reverse redlining is among the most pernicious forms of racial and ethnic discrimination and consumer fraud.") (Statement of Sen. Alfonse M. D'Amato). Statistical evidence of targeting can be sufficient to raise a factual dispute of intentional discrimination (Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 307-308 (1977) (when "gross statistical disparities can be shown, they alone may in a proper case constitute a prima facie proof of a pattern or practice of discrimination."); International Bhd. of Teamsters v. United States, 431 U.S. 324, 340 n.20 (1977) ("In many cases the only available avenue of proof is the use of racial statistics to uncover clandestine and covert discrimination.").

9. The indirect evidence that Allied Home Mortgage, Debtors and its agents violated 42 USC § 3601 and Equal Credit Opportunity ACT, 15 USC § 1691 are (1) Consumer Creditor and a Party In Interest is a member of a protected class; 2) Consumer Creditor and a Party In Interest did apply and qualification determination was made by the Debtors; 3) the loan offered contained patently unfavorable terms such as prepayment penalties and misled representation into leading Consumer Creditor and a Party In Interest to believe; and 4) Debtors and its agents provided other borrowers possessing similar qualifications with loans on significantly better terms **(See submitted Motion in Evidences as well).** (McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973) (Hargraves v. Capital City Mortgage Corp., 140 F. Supp.2d 7 (D.D.C. 2000).

10. Consumer Creditor and a Party In Interest ended with a high-cost mortgage loan than those for which he would otherwise qualify **(Steering)** and encouraged to refinance which resulted

in losing equity in his home otherwise classified as (**Equity stripping**). That unaffordable loan with high points and fees was made based on Consumer Creditor and a Party In Interest's home equity without regard to the Consumer Creditor and a Party In Interest's ability to repay the loan obligation or known as asset based lending.

11. According to Massachusetts Chapter 183C, Predatory Home Loan Practices, Section 5: A high-cost home mortgage loan shall not contain any provision for prepayment fees or penalties as was the case in Consumer Creditor and a Party In Interest's high-cost home mortgage. Based on the facts provided, Debtors failed to comply with the Massachusetts Law, Chapter 183C, Section 3.

12. According to **Massachusetts Chapter, 183C, Section 15**: (a) Any person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert against the original lender or **broker** of the loan; a borrower acting only in an individual capacity may assert claims that the borrower could assert against a lender of the home loan against any subsequent holder or assignee of the home loan.

- **(Borrower below is synonymous to Consumer Creditor and a Party In Interest ):**

1. (1) [*A borrower may bring an original action for a violation of this chapter in connection with the loan within 5 years of the closing of a high-cost home mortgage loan;]*

2. (2) A borrower may, at any time during the term of a high-cost home mortgage loan, *employ any defense, claim, counterclaim, including a claim for a violation of this chapter*, after *an action to collect on the home loan or foreclose on the collateral securing the home loan has been initiated or the debt arising from the home loan has been accelerated or the home loan*

*has become 60 days in default, or in any action to enjoin foreclosure or preserve or obtain possession of the home that secures the loan.*

3. (c) This section shall be effective notwithstanding any other provision of law; provided that nothing in this section shall be construed to limit the substantive rights, remedies or procedural rights available to a borrower against any lender, assignee or holder under any other law. The rights conferred on borrowers by subsections (a) and (b) are independent of each other and do not limit each other.
4. Consumer Creditor and a Party In Interest is claiming 'breach of the implied covenant of good faith and fair dealing' since the Debtors and its agents acted in *bad faith* in his mortgage transactions as well as Tort claims for Negligence and intentional infliction of Emotional Distress. In summary, Consumer Creditor and a Party In Interest states a mortgage fraud claim against Debtors as cited above.

Therefore, if each participant cited above may not know the exact details of the conspiracy to still be legally liable, then by implication it is even much less required that the victim (Consumer Creditor and a Party In Interest) know the exact details of a conspiracy which is intentionally, continuously and fraudulently concealed from him. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence of the existence of joint action. (Magna v. Commonwealth of N. Mariana Islands, 107 F.3d, 1447 (9th Cir. 1997)).

To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy as described above in falsifying documents to stuck Consumer Creditor and a Party In Interest with a high-cost

mortgage (Phelps Dodge v. United Steel Workers of America, 865 F.2d, 1541 (9th Cir. AZ, 1989), cert. denied 493 U.S. 809). Thus, the Debtors or its agents did not follow its standard practices as in evaluating creditworthiness or customs of the credit industry by conducting reasonable investigation of employment whereby a "red flag" would have alerted the Debtors or its agents presented statement that were inaccurate and misrepresented (In re Cohn, 54 F.3d 1108 (3d Cir. 1995).

This mortgage fraud claim as described above is also based on fraud and false pretenses, fraud as a fiduciary, larceny, willful & malicious injury, defalcation (see In re Baylis, 313 F. 3d 9 (1st Cir. 2002) (defalcation requires some degree of fault, closer to fraud, without necessity of meeting a strict specific intent requirement)(11 USC 523(a)(4) and related damages as outlined in the Massachusetts Unfair and Deceptive Acts and Practices (**UDAP**) laws (see In re Stokes, 955 F.2d 76 (5th Cir. 1993) (damages under the Texas consumer protection act found no dischargeable based on both 11 USC 523(a)2(A) and 523(a)(6) as outline above. Also, this is not an exhaustive lists, as other violations and claims may be uncovered through the discovery process in the Debtors and its agents into the application evaluation process and credit scoring systems and methods.

**Conclusion**

The Supreme Court held that 11 USC 523(a)(2)(A) prevents the discharge of all liability arising from fraud and that an award of treble damages therefore falls within the scope of the exception (Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212, 130 L. Ed. 2d 341 (1998). In effect, the Court extends protection from discharge not just to multiple and punitive damages, but also to

claims for litigation fees and costs and to other **foreseeable consequential damages of fraud**.

Ronald Dworkin regards law as an interpretive process under which individual rights are paramount. Therefore, let us consider the following situation by Dworkin:

"An impatient beneficiary under a will murder the testator. Should he be permitted to inherit?"

**Consumer Creditor and a Party In Interest's Contextual Analogy of Above Quotation as follows:**

> *"New Century Mortgage Corporation along with its agents that acted as a finder and facilitator are beneficiary of mortgage fraud that led to the deprivation and stripping away of Consumer Creditor and a Party In Interest's property and civil rights. Should New Century Mortgage Corporation be permitted to extinguish the Consumer Creditor and a Party In Interest's post-petition priority proof of claim ('administrative')?"*

The above quotation mentioned above by Dworkin is analogous to *Consumer Creditor and a Party In Interest's filed proof of post-petition claim and its* drawn from the New York Decision of Riggs v. Palmer in 1899. The will in question was validly executed and was in the murderer's favour. But whether a murderer could inherit was uncertain: the rules of testamentary succession provided no applicable exception. The murderer should therefore have a right to his inheritance. The New York Court held, however, that the application of the rules was subject to the principle that 'no person should profit from his own wrong'. Hence, a murderer could not inherit from his victim." Likewise, Debtors along with its agents that acted as a finder and facilitator [cannot be allowed] to profit from the Predatory Lending practices and mortgage Fraud acts that resulted in the victimization of Consumer Creditor and Party In Interest.

**Consumer Creditor and a Party In Interest's Requested Relief**

In support of the instant motion and the relief requested herein the above named Consumer

Creditor and a Party In Interest hereby request the Court to grant the instant motion. Consumer Creditor and a Party In Interest is not looking for sympathy. Consumer Creditor and a Party In Interest is not looking to be rewarded. Consumer Creditor and a Party In Interest is not seeking the punishment of the Debtor. However, Consumer Creditor and a Party In Interest is only asking the Court to allowed him to preserve his post-petition mortgage fraud claim('administrative') or as the Court deems just and proper **as nondischargeable**.

**WHEREFORE,** Consumer Creditor and a Party In Interest respectfully request that the Court order that:

1. Consumer Creditor and a Party In Interest's post-petition mortgage fraud consumer priority (507(a)(6)) claim ('administrative') is not dischargeable;
2. Designating the post-petition mortgage of mortgage fraud consumer priority (507(a)(6)) claim as an 'administrative expense'.

**Respectfully Submitted,**

Pierre R. Augustin

**Pierre R. Augustin, Pro Se**
Consumer Creditor and a Party In Interest
3941 Persimmon Drive, #102, Fairfax, VA 22031 (617)202-8069

**Attorneys and Parties Served**

| | |
|---|---|
| Counsel to the Debtors<br>Suzzanne S. Uhland, Esq., Ben H. Logan, Esq.<br>Victoria Newmark, Esq., Emily R. Culler, Esq.<br>O'Melveny & Myers LLP<br>275 Battery Street<br>San Francisco, CA 94111<br>T: (415) 984-8700, F: (415) 984-8701 | Co-Counsel to the Debtors<br>Mark D. Collins, Esq., Michael J. Merchant, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square, P.O. Box 551<br>Wilmington, DE 19899<br>T: (302) 651-7700 |
| Attorney, **David W. Carickhoff, Jr**<br>Blank Rome LLP<br>Chase Manhattan Centre<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801<br>302-425-6400 | Joseph J. McMahon, Jr., Esquire<br>United States Department of Justice<br>Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE 19801, Courtesy copy |
| United States Bankruptcy Court<br>District of Delaware<br>824 Market Street, 3rd Floor<br>Wilmington, DE 19801<br>T: (302) 252-2900 | U.S. Trustee<br>**United States Trustee**<br>844 King Street, Room 2207<br>Lockbox #35<br>Wilmington, DE 19899-0035<br>302-573-6491 |
| Attorney, **Adam Hiller**<br>Draper & Goldberg, PLLC<br>1500 North French Street<br>2nd Floor<br>Wilmington, DE 19801<br>(302) 339-8776 | Attorney, **Christopher M. Samis**<br>Richards, Layton & Finger, P.A.<br>920 N. King Street<br>Wilmington, DE 19801<br>302-651-7845 |
| Official Committee of Unsecured Creditors<br>Attorney, **Bonnie Glantz Fatell**<br>Blank Rome LLP<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801<br>(302) 425-6423 | New Century Claims Processing<br>**XRoads Case Management Services, LLC**<br>1821 E. Dyer Road<br>Suite 225<br>Santa Ana, CA 92705<br>949-567-1600 |

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this motion was mailed via registered mail to the parties and attorneys above.

x Pierre R. Augustin Pierre R. Augustin, 3941 Persimmon Drive, #102 Fairfax, VA 22031, Tel: 617-202-8069

**VERIFICATION**

I, Pierre R. Augustin, hereby depose and state as follows:

1. I am Pierre R. Augustin, represented by self.

2. I have read the foregoing Motion filed herein and knowing the contents thereof have found that the allegations of fact set forth therein are true of my own personal knowledge, except as to those allegations based on information and belief which I believe to be true.

Signed under the penalties of perjury this 5 day of January 2007.

x Pierre R. Augustin

STATE OF VA COUNTY OF Prince William

On this 5 day of January, 2008, before me, the undersigned notary public, personally appeared Pierre R. Augustin proved to me through satisfactory evidence of identification, which was VA Driver Permit, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that s/he signed it voluntarily for its stated purpose.

D Williams

Notary Public
My Commission Expires:
(SEAL)

DANIELLE WILLIAMS
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MAY 31, 2009
COMMISSION # 362199

**UNITED STATES BANKRUPTCY COURT OF DELAWARE**

Pierre Richard Augustin, PRO SE )
Consumer Creditor and Party In Interest )
)
v. ) 07-10416-KJC
) 04-10419
New Century Mortgage Corporation Et Al, )
Debtors. )

**AFFIDAVIT / AFFIRMATION**

I, Pierre-Richard Augustin, affirm the following under penalty of perjury, being duly sworn, deposes and says:

1) I am the Consumer Creditor and a Party In Interest in this action, and I respectfully submit this affidavit/affirmation.
2) The Motion should be granted because of the facts and circumstances outlined in the submitted motion and exhibits.
3) I have personal knowledge of facts which bear on this motion. In view of the foregoing, it is respectfully submitted that the motion should be denied.

I declare under penalty of perjury that the foregoing is true and correct, except as to those allegations based on information and belief which I believe to be true.

Dated: 1-5-07 Pierre R. Augustin

Pierre-Richard Augustin, Pro Se, Consumer Creditor and a Party In Interest
3941 Persimmon Drive, #102, Fairfax, VA 22031 (617) 202-8069

STATE OF VA COUNTY OF Prince William

On this 5 day of January, 2008, before me, the undersigned notary public, personally appeared Pierre R. Augustin proved to me through satisfactory evidence of identification, which was VA Driver Permit, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that s/he signed it voluntarily for its stated purpose.

[signature]

Notary Public

My Commission Expires:

(SEAL) DANIELLE WILLIAMS
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MAY 31, 2009
COMMISSION # 362199

16