## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : |  |
|  | : | *Hearing Date:*   *January 23, 2008 at 1:30 p.m.* |
| **Debtors.** | : |  |
|  | : |  |

## OBJECTION OF THE COMMITTEE OF UNSECURED
## CREDITORS TO MOTION OF MICHAEL J. MISSAL, EXAMINER,
## FOR A SECOND EXTENSION OF TIME TO FILE HIS REPORT WITH THE COURT

The Official Committee of Unsecured Creditors (the "Committee") of New Century TRS

Holdings, Inc. and the other debtors herein (collectively, the "Debtors"), by and through its

undersigned counsel, in opposition to the motion of Michael J. Missal, Examiner (the

"Examiner"), for a Second Extension of Time to File His Report with the Court, respectfully

represents as follows:

## SUMMARY OBJECTION

Over the past several months, the Committee has repeatedly raised with the Court (and

the Examiner) its grave concern over the exorbitant cost that the Examiner's investigation is

---

[1]   The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a
Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a
Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage
Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC
Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation,
1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth
Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a
Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV
Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century
R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century
Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group,
Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite
Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a
Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

inflicting on these liquidating estates. In less than six months from early June through November 30, 2007, the Examiner and his team[2] have charged the Debtors' estates over $13 million in fees and expenses. Assuming he continued at his usual monthly pace of $2.2 million in December and January, the costs just for the Examiner, his law firm and other advisors alone is now over $17 million. And he is not done yet. In addition, O'Melveny & Myers, LLP, the Debtors' lead counsel, has charged the estates an additional $3.63 million in fees through November 30, 2007 in responding to the Examiner issues. Thus, without even taking into account the costs incurred by the Debtors' other professionals and the Committee's professionals, these estates have been burdened with an investigation costing in excess of $21 million of estate funds, and the meter is still running. Given the estates' modest resources, this sum represents a significant portion of the creditors' projected recoveries.

While the Committee respects the Court's decision to commission this report, in the Committee's view, the costs being incurred and charged to the estates on a daily basis for this on-going exercise can no longer be justified under any reasonable cost-benefit analysis. The Examiner's team of 90 or so financial and legal professionals have spent over 40,000 hours to date reviewing millions of pages of documents, analyzing reams of financial data and interviewing dozens of individuals, all with the goal of providing this Court and interested parties with a written report summarizing the Debtors' accounting and financial reporting for 2005 and 2006. In fulfilling his charge, the Examiner does not have to review every piece of paper ever produced by New Century's 7,000 employees, interview every single person who may have had some tangential connection with the issues at hand or turn over every rock he sees.

---

[2]    The number of Mr. Missal's partners, associates and paraprofessionals in his firm billing time to this investigation during any given month is breathtaking: 21 partners; 31 associates and 17 paraprofessionals on average are billing time on this matter. This does not include Mr. Missal himself, who, at an hourly rate of $725, has billed an average of 230 hours per month in his investigation.

- 2 -

The Examiner should be in a position today to wrap up his investigation, finish drafting his report and file it. To the extent the Examiner believes that there are other areas that should be investigated, he can so state in his report and the creditors, whose moneys are at stake, can make a decision whether it is worth spending additional estate funds to further explore those potential areas of inquiry based on the likely benefits to the estates. In short, the Examiner's request for another two months of unbudgeted time and expense to complete his investigation should be denied.

## BACKGROUND

1.      On April 2, 2007, the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in these cases.

2.      On June 1, 2007, this Court entered its Order Denying in Part and Granting in Part the Motion of the United States Trustee for an Order Directing the Appointment of a Chapter 11 Trustee, or in the Alternative, an Examiner (the "Examiner Order"). The United States Trustee (the "U.S. Trustee") appointed Michael J. Missal to be the Examiner on June 5, 2007, and the Court ratified such appointment on June 7, 2007.

3.      The Examiner Order directed the Examiner to investigate, in broad terms, (i) accounting and financial statement irregularities, errors, or misstatements, and (ii) possible post-petition unauthorized use of cash collateral by the Debtors. The Examiner Order required that the Examiner file his report by September 7, 2007.

4.      On October 10, 2007, the Bankruptcy Court entered an order (the "Supplemental

- 3 -

Examiner Order") granting the Examiner an extension of time to submit his final report with the Court until January 15, 2008 and directing the Examiner to file his report pertaining to the Debtors' post-petition use of cash collateral upon completion of that portion of the investigation. The Supplemental Examiner Order also provided that the production of privileged materials to the Examiner will not be deemed a waiver of the attorney-client privilege, the work product doctrine or any other applicable privilege or protection held by the Debtors. Furthermore, the Supplemental Examiner Order provided that any report filed by the Examiner will be initially filed under seal with copies delivered to the Debtors, the Committee and the U.S. Trustee and within 10 days of the filing of such report, the Committee or any other interested party may file a motion with the Bankruptcy Court seeking to maintain any portion or portions of the report under seal.

5.       The Examiner completed his investigation of the Debtors' post petition use of cash collateral and filed his First Interim Report under seal on November 21, 2007.

6.       On December 3, 2007, the Debtors filed the Motion of the Debtors and Debtors in Possession for an Order Directing the Clerk of the Court to Maintain the First Interim Report of Michael J. Missal, Examiner, Under Seal (the "Debtors' First Seal Motion"). In addition, on December 19, 2007, the Debtors filed a similar motion seeking to also maintain under seal the Debtors' Reply to the Examiner's First Interim Report (together with the Debtors' First Seal Motion, the "Debtors' Seal Motions"). At the Committee's request, on January 16, 2008, the Debtors withdrew both of the Debtors' Seal Motions.

7.       On or about January 11, 2008, the Examiner filed his second interim fee application seeking $656,352.85 for himself as Examiner which brings the total fees and expenses sought by the Examiner alone from June 10, 2007 to November 30, 2007 to

- 4 -

$905,048.97. A second interim fee application filed for the Examiner's counsel, Kirkpatrick & Lockhart Preston Gates Ellis LLP, filed on the same date reflected an amount sought of $7,090,183.77 for fees and expenses which brings the total amount sought of $8,868,390.53 for the same period. The Examiner's co-counsel, Saul Ewing LLP, filed a second interim fee application for $52,315.52 in fees and expenses bringing the total amount sought by the Examiner's co-counsel to $73,808.38 for the period from June 10, 2007 to November 30, 2007. Finally, the Examiner's financial advisors, BDO Seidman, filed a second interim fee application on January 14, 2008 for $2,510,087.71 in fees and expenses for a total of $3,176,204.06 for the period from June 29, 2007 through November 30, 2007.

8.     Collectively, the Examiner and his professionals have billed the estate in excess of $13,023,000 through November 30, 2007 for his investigation.[3]

9.     In addition to the fees and expenses being incurred by the Examiner, the Debtors' professionals have also incurred significant fees and expenses attending to the Examiner's investigation. For example, O'Melveny & Myers LLC itself also charged the Debtors' estates $3,628, 276.50 in fees and expenses through November 30, 2007 dealing with "Examiner Issues."

10.     Despite repeated verbal assurances to the Court and the Committee that he would complete his work by the January 15, 2008 deadline, on January 8, 2007, the Examiner filed the Motion of Michael J. Missal, Examiner, for a Second Extension of Time to File His Report (the "Second Extension Motion") with the Court seeking a further 62-day extension until March 17, 2008 to file his final report regarding the Debtors' accounting and financial statement irregularities, errors, or misstatements. The Examiner's request results in a total of over six

---

[3]     For the Court's convenience, a chart summarizing the monthly fees and expenses charged is attached hereto as Exhibit "A."

- 5 -

additional months from the original deadline set by this Court for the submission of the final report. In support of the Second Extension Motion, the Examiner argues that the requested extension is reasonable and necessary as the Examiner needs additional time (i) to complete document productions and remaining interviews due to delays in receiving documents from the Debtors and the Debtors' former auditors, KPMG LLP ("KPMG"), and delays in obtaining requested interviews with former employees of the Debtors and KPMG employees; (ii) to further assess and analyze the information obtained; and (iii) to finalize the report. Furthermore, the Examiner states that although not anticipated, he reserves the right to make further requests of time to file his report. Remarkably, the Examiner fails to provide the Court with any estimation or details of the additional costs to be incurred due to his two-month extension.

11. On January 11, 2008, counsel for the Committee received an e-mail message from the Debtors' counsel informing the Committee that they had just learned that an outside vendor that Debtors had retained to facilitate the production of electronic and hard-copy documents may have failed to deliver a number of documents to the Examiner.

12. On January 14, 2008, the Debtors filed the Debtors' Statement in Response to Motion of Examiner for a Second Extension of Time to File His Report with the Court (the "Debtors' Statement"). The Debtors explained that to date, the Debtors have produced to the Examiner more than 13.2 million pages of documents, more than 3.8 million electronic documents from a database of emails and attachments and more than 1 terabyte (1,000 gigabytes) of native files from the Debtors' network.

13. The Debtors also explained in their Statement that despite producing this immense volume of documents, a mishap had occurred when their outside vendor may have failed to deliver to the Examiner a number of e-mails that were dated prior to February 7, 2007,

- 6 -

contrary to the direction of the Debtors. The Debtors explained that the vendor had first

determined that the number of documents that it failed to produce to the Examiner was 649,072,

and the vendor later determined that there is an additional collection of up to 85,000 documents

that have not been produced due to vendor error which the vendor hopes to produce within a few

days. The vendor is also in the process of determining if the documents at issue may have

already been produced to the Examiner from a different data source. No explanation has been

provided of what the errors that caused their mishap were or how the Debtors intend, if at all, to

recoup any of the damages caused to the estates. The Debtors further stated that they accept full

responsibility for the non-production of these e-mails.

## ARGUMENT

I. **The Committee Is Gravely Concerned with the High Cost of the Examiner's Investigation Over the Last Seven Months and Believes that Further Extension of Time is Unnecessary, Unwarranted and Would Unduly Burden these Estates.**

14.     The Committee objects to the Examiner's Second Extension Motion and

respectfully requests that this Court deny the Examiner's Second Extension Motion and direct

the Examiner to promptly complete the drafting of and issue without further delay his report

regarding the Debtors' accounting and financial statements.

15.     The Committee is deeply concerned with the enormous expenses associated with

the Examiner's undertaking and has repeatedly expressed this concern to the Court. As stated

above, as of the end of November of 2007, the Examiner and his team of professionals have

incurred fees and expenses in an amount in excess of $13 million and are likely fast approaching

fees and expenses of $17 million when he filed his Second Extension Motion seeking more time

and the right to bill the estates further.

16.     Furthermore, despite the delays cited by the Examiner in being able to complete

his investigation, the Examiner has been provided with tens of millions of pages of documents,

- 7 -

millions of electronic documents and thousands of gigabytes of computer files and has conducted numerous interviews of former employees of the Debtors and former and current employees of KPMG. It is difficult to imagine that the Examiner and his professionals, after billing the estates over 35,000 hours of work through November 30, 2007, have not made findings and are not able to come to conclusions based on the tremendous amount of information that has been provided thus far. While an ideal investigation, with an unlimited budget, may entail reviewing each and every hard-copy or electronic document and interviewing every conceivable person, that is not what is called for here. Here, once the Examiner reached his conclusions and can report on his findings and point the estates' fiduciaries to other avenues of inquiry, his job should be over. At that point, the benefits no longer justify the costs being incurred.

17.    While the inadvertent non-production of several thousands of emails that was recently uncovered by the Debtors is very disappointing, the relative number of documents in light of the quantity of documents already produced to the Examiner does not warrant a delay in the Examiner's issuance of his final report. Furthermore, the vendor providing the Debtors with production services is not yet certain that these allegedly missing emails were not provided to the Examiner from a different source. Nonetheless, the Committee believes that the Examiner should be able to issue a comprehensive report based on over seven months of his investigation of millions of documents and files and numerous interviews already conducted. Once the Examiner's final report is issued, it can then be determined whether there are any issues that warrant further action or investigation and by whom.

18.    Finally, the Committee believes that it is unnecessary for the Examiner and his professionals to spend an inordinate amount of time finalizing his report. The Examiner has previously advised the Court and the Committee that his team has been drafting the report as

- 8 -

they go and, thus, the report should already be substantially complete.  Accordingly, this Court should direct the Examiner to finalize his report as soon as possible to ensure that the process is concluded in the most efficient, cost effective manner.

## CONCLUSION

19.    For these reasons, the Committee requests that the Court order that the Examiner shall file his final report without any further delay and grant such other and further relief as may be appropriate.

Dated:   Wilmington, Delaware
         January 17, 2008

### BLANK ROME LLP

By:   /s/ Bonnie Glantz Fatell
      Bonnie Glantz Fatell (No. 3809)
      1201 Market Street, Suite 800
      Wilmington, Delaware  19801
      (302) 425-6400 - Telephone
      (302) 425-6464 - Facsimile

      - and -

      HAHN & HESSEN LLP
      488 Madison Avenue
      New York, New York 10022
      (212) 478-7200 - Telephone
      (212) 478-7400 - Facsimile
      Attn: Mark S. Indelicato
            Mark T. Power
            Huria S. Naviwala

      Co-Counsel to the Official Committee
      of Unsecured Creditors of New Century TRS
      Holdings, Inc., *et al.*