IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |
| | : | Objection Deadline: February 13, 2008 at 4:00 p.m. |
| | : | Hearing Date: February 20, 2008 at 1:30 p.m. |

**FOURTH MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR
AN ORDER PURSUANT TO SECTION 1121(d) OF THE
BANKRUPTCY CODE FOR ENTRY OF AN ORDER EXTENDING THE
EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY
FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

At the request of the Official Committee of Unsecured Creditors appointed in the

above-captioned cases (the "Creditors' Committee"), New Century TRS Holdings, Inc. ("New

Century TRS"), a Delaware corporation, New Century Financial Corporation ("NCFC"), a

Maryland corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-

possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file

their motion (the "Motion") for the entry of an order pursuant to section 1121(d) of the United

States Bankruptcy Code, 11 U.S.C. sections 101-1532 (as amended from time to time, the

"Bankruptcy Code"), (i) extending the period during for the Debtors to file a chapter 11 plan (the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California Corporation

"Exclusive Filing Period"), with respect to all non-Debtor parties other than the Creditors' Committee, by twenty-four (24) days through and including February 21, 2008 and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including April 21, 2008, or sixty (60) days after the expiration of the Exclusive Filing Period, as extended. In support of this Motion, the Debtors respectfully represent as follows:

## INTRODUCTION

1. As previously represented to this Court, the Debtors have been working diligently with the Creditors' Committee and other key constituencies to formulate a joint chapter 11 plan of liquidation (the "Plan"). This inclusive approach has yielded a series of compromises that the Debtors believe will resolve the primary intercreditor issues facing the Debtors' estates and, in so doing, maximize the value of the estates while fairly and equitably allocating the estates' assets among the estates' diverse creditor body. Indeed, the Debtors, in consultation with the Creditors' Committee, have drafted a Plan that incorporates these compromises and that, subject to approval of the Creditors' Committee and NCFC's Board of Directors, the Debtors and the Creditors' Committee intend to file jointly as co-proponents. The Creditors' Committee, however, has informed the Debtors that there remain a small number of minor intercreditor issues that the Creditors' Committee would like to resolve prior to the Plan's filing. Accordingly, so that the Debtors and the Creditors' Committee may file the Plan jointly as co-proponents, the Creditors' Committee has requested that the Debtors file this Motion, by which they request a brief extension of the Exclusive Periods.

## JURISDICTION

2.      This Court has jurisdiction over this Motion under 28 U.S.C. sections 157 and 1334. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2).

3.      The bases for the relief requested herein are sections 105 and 1121(d) of the Bankruptcy Code.

## BACKGROUND

### A.      The Debtors

4.      NCFC, a publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCFC originated, purchased, sold, and serviced mortgage loans nationwide. NCFC historically focused on "subprime" lending, or lending to individuals whose borrowing needs were generally not fulfilled by traditional financial institutions because they did not satisfy the credit, documentation or other underwriting standards prescribed by conventional mortgage lenders and loan buyers. In September 2005, NCFC through some of its subsidiaries also began offering conventional mortgage loans, including: "Alt-A" mortgage loans, loans insured by the Federal Housing Administration ("FHA"), and loans guaranteed by the Veterans Administration ("VA"). During the fiscal year ending December 31, 2006, the Debtors originated or purchased approximately $60 billion of mortgage loans, most of which were sold in the secondary market. Since their inception, the Debtors have issued or enabled over $220 billion in loans. These loans have helped millions of

homebuyers and homeowners across the nation access credit and realize the benefits of home ownership, including many who might not otherwise have been able to do so.

5.      The Wholesale Division, which was contained within New Century Mortgage Corporation ("NCMC"), a California corporation, originated and purchased loans through a network of independent mortgage brokers and correspondent lenders. As of December 31, 2006, the Wholesale Division (1) had approved more than 57,000 independent mortgage brokers for submission of loan applications, (2) operated through 34 regional operating centers located in 20 states and (3) employed approximately 1,087 account executives. The broker's role in this process was to identify the applicant, assist in completing the loan application form, gather necessary information and documents and serve as the Debtors' liaison with the borrower. Correspondent lenders are independent mortgage bankers and financial institutions that sell loans that have already been funded.  For 2006, the Wholesale Division was responsible for approximately 85% of the loans originated by the Debtors.

6.      The Retail Division, which operated under Home123, originated loans through direct contact with consumers, including through referrals from builders, realtors, and other third parties. As of December 31, 2006, the Retail Division was supported by 262 branch offices and three central telemarketing units employing approximately 1,702 retail loan officers. For 2006, the Retail Division originated approximately 15% of the loans produced by the Debtors.

7.      On April 2, 2007 (the "Petition Date"), the Debtors other than New Century Warehouse Corporation ("New Century Warehouse") filed chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  New

Century Warehouse filed its chapter 11 petition on August 3, 2007. The Debtors' chapter 11 cases are being jointly administered pursuant to orders of the Bankruptcy Court. Since the Petition Date, the Debtors have operated their business and managing their affairs as debtors and debtors in possession.

8.      Since the Petition Date, the Debtors have been focused on expeditiously liquidating their assets in order to maximize the value of the estates. The Debtors gained Court approval of four asset sales and closed three of those sales within three months of the Petition Date. By order entered on May 7, 2007, the Court authorized the sale of a pool of approximately 2,000 unencumbered mortgage loans with an unpaid balance of $170 million and mortgage-backed residual interests in securitization trusts (the "LNFA") to Ellington Management Group, L.L.C. on behalf of its Client Funds ("Ellington") pursuant to the Asset Purchase Agreement by and among NCFC and certain of its subsidiaries and Ellington dated May 16, 2007. The Court further authorized the sale of a pool of approximately 180 unencumbered mortgage loans with an unpaid balance of approximately $17 million and 6 real properties obtained in foreclosures of such mortgage loans to Ellington by order entered on June 28, 2007 pursuant to Supplement No. 1 to Asset Purchase Agreement by and among NCF and certain of its subsidiaries and Ellington dated June 25, 2007. The two LNFA sales closed in May and June respectively.

9.      In addition to the LNFA, the Court authorized the sale of the April Debtors' servicing business (the "Carrington Sale") to Carrington Mortgage Services, LLC, an affiliate of Carrington Capital Management, LLC ("Carrington") by order entered on May 23, 2007 pursuant to the Second Amended and Restated Asset Purchase Agreement dated May 21, 2007. At the closing of the Carrington Sale on June 29, 2007, Carrington transferred the sale

proceeds to the April Debtors, and the Debtors entered into an agreement with Carrington to transition the servicing business. The Debtors continued operating the servicing business in the ordinary course while it was transitioned to Carrington. The transition to Carrington is now complete.

        10.    The Court further authorized the sale of certain of the Debtors' technology assets to EquiFirst Corporation ("EquiFirst") by order entered on July 3, 2007 pursuant to the Asset Purchase Agreement by and among NCFC, NCMC, and EquiFirst dated June 22, 2007 (the "Technology Sale"). The Technology Sale closed in July, 2007.

        11.    In addition to the asset sales, the Debtors moved quickly to downsize and consolidate their operations. The Debtors have rejected approximately 295 real property leases and approximately 825 executory contracts. The Debtors are in the process of liquidating additional assets and identifying additional leases and contracts for rejection or assumption and assignment.

**B.**      <u>The Exclusivity Motions and Orders Thereon</u>

        12.    On July 13, 2007, the Debtors filed the "Motion Of The Debtors And Debtors In Possession For An Order Pursuant To Section 1121(D) Of The Bankruptcy Code For Entry Of An Order Extending The Exclusive Periods During Which Only The Debtors May File A Chapter 11 Plan And Solicit Acceptances Thereof" (the "First Exclusivity Motion") [docket no. 1925], by which the April Debtors requested that the Bankruptcy Court extend the Exclusive Filing Period by one hundred and twenty (120) days, through and including November 28, 2007, and extending the Exclusive Solicitation Period for sixty (60) days through and including January 28, 2008. By order dated July 31, 2007 [docket no. 2106], the Bankruptcy

Court granted the First Exclusivity Motion, although the Committee was exempted from the extension of the Exclusive Periods.

13.    On November 28, 2007, the Debtors filed the "Second Motion Of The Debtors And Debtors In Possession For An Order Pursuant To Section 1121(D) Of The Bankruptcy Code For Entry Of An Order Extending The Exclusive Periods During Which Only The Debtors May File A Chapter 11 Plan And Solicit Acceptances Thereof" (the "Second Exclusivity Motion") [docket no. 3969], by which the Debtors requested that the Bankruptcy Court enter an order (i) extending the Exclusive Filing Period (with respect to all non-Debtor parties other than the Committee) for all Debtors other than New Century Warehouse by thirty (30) days, through and including December 28, 2007, (ii) extending the Exclusive Filing Period (with respect to all non-Debtor parties other than the Committee) for New Century Warehouse by twenty-five 25) days through and including December 28, 2007, and (iii) extending the Exclusive Solicitation Period for thirty (30) days through and including February 27, 2008. By order dated December 20, 2007 [docket no. 4177], the Bankruptcy Court granted the Second Exclusivity Motion.

14.    On December 28, 2007, the Debtors filed the "Third Motion Of The Debtors And Debtors In Possession For An Order Pursuant To Section 1121(D) Of The Bankruptcy Code For Entry Of An Order Extending The Exclusive Periods During Which Only The Debtors May File A Chapter 11 Plan And Solicit Acceptances Thereof" (the "Third Exclusivity Motion" and collectively with the First Exclusivity Motion and the Second Exclusivity Motion, the "Exclusivity Motions") [docket no. 4263], by which the Debtors requested that the Bankruptcy Court enter an order (i) extending the Exclusive Filing Period

(with respect to all non-Debtor parties other than the Committee) by thirty (31) days, through and including January 31, 2008 and (ii) extending the Exclusive Solicitation Period for thirty (30) days through and including March 28, 2008. By order dated January 23, 2008 [docket no. 4530], the Bankruptcy Court granted the Third Exclusivity Motion.

### C.    Developments Following the Filing of the Third Exclusivity Motion

15.    Since the filing of the Third Exclusivity Motion, the Debtors have made significant progress in formulating and drafting a the Plan. Indeed, as of the filing of this Motion, the Debtors have drafted a Plan and accompanying disclosure statement (the "Disclosure Statement") that are nearly complete. The current, nearly final, draft of the Plan is the result of the Debtors, the Creditors' Committee, and other key constituencies collaborating to formulate a plan structure that includes compromises of a host of complex issues that the Debtors believe must be resolved in order for the Plan to be confirmed consensually. Because the Plan contains intercreditor compromises, the completion of the drafting of the Plan requires resolution of the issues underlying such compromises.

16.    The Debtors believe that this inclusive approach to drafting the Plan will greatly enhance the recovery to creditors by minimizing the risk that parties in interest will engage in protracted litigation about the Plan and, therefore, save the Debtors substantial additional administrative expenses. Indeed, as noted above, subject to approval of the Creditors' Committee and NCFC's Board of Directors, the Debtors and the Creditors' Committee intend to file the Plan jointly as co-proponents. Prior to approving the Plan, however, the Creditors' Committee has informed that Debtors that it must address a limited number of minor intercreditor issues that it believes will be resolved in the near future. In order for the Debtors

and the Creditors' Committee to move forward as co-proponents of the Plan, the Debtors have

agreed to the request of the Creditors' Committee to file the instant Motion.

## RELIEF REQUESTED

17.    By this Motion, the Debtors seek the entry of an order pursuant to

Bankruptcy Code section 1121(d): (i) extending the Debtors' Exclusive Filing Period by twenty-

four (24) days through and including February 21, 2008, with respect to all non-Debtor parties

other than the Committee and (ii) extending the Debtors' Exclusive Solicitation Period through

and including April 21, 2008, or sixty (60) days after the expiration of the Exclusive Filing

Period, as extended.    As noted, the Debtors and the Creditors' Committee have been working

diligently to complete the documentation of the Plan and, indeed, believe that the Plan will be

filed well within the requested extension of the Exclusive Filing Period. The Debtors are seeking

this short extension of the Exclusive Periods to enable the Creditors' Committee to resolve

several minor intercreditor issues that the Plan addresses.

## BASIS FOR RELIEF

18.    Pursuant to Bankruptcy Code section 1121(b), a debtor has the exclusive

right to file a plan of reorganization during the first 120 days after the commencement of a

chapter 11 case. If a debtor files a plan during this period, pursuant to Bankruptcy Code section

1121(c)(3), an additional 60 day period is automatically granted during which the debtor may

exclusively solicit acceptance of the plan.

19.    Bankruptcy Code section 1121(d) provides that the Court may extend

these exclusive periods for cause. See 11 U.S.C. § 1121(d) ("[O]n request of a party in interest

and after notice and a hearing, the court may for cause reduce or increase the 120-day period or

the 180-day period referred to in this section.")。 Although the Bankruptcy Code does not define

"cause," a number of courts have construed the term in consideration of the Bankruptcy Code's

underlying legislative history.  See, e.g., In re Perkins, 71 B.R. 294, 297-98 (W. D. Tenn. 1987);

In re Lake in the Woods, 10 B.R. 338, 343-45 (E.D. Mich. 1981); In re Ravenna Indus., Inc., 20

B.R. 886, 889 (Bankr. N.D. Ohio 1982).

      20.     In determining whether cause exists to extend a debtor's exclusive period

to file and solicit acceptance of a plan, courts have relied on a variety of factors, each of which

may constitute sufficient grounds for extending the periods.  These factors typically include

(a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the

estate and (c) whether an extension of time will harm the debtor's creditors.  See, e.g., In re

Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989); In re Grand

Traverse Dev. Co. Ltd. P'ship., 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Gen. Bearing

Corp., 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992); In re Southwest Oil Co. of Jourdanton, Inc.,

84 B.R. 448, 451-54 (Bankr. W.D. Tex 1987).

      21.     Considering the factors discussed below, the Debtors submit that ample

cause exists to grant the relief requested herein and extend the Exclusive Filing Period through

and including February 21, 2008 and the Exclusive Solicitation Period through and including

April 21, 2008.

A.    **The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases.**

      22.     The size and complexity of a debtor's case alone may constitute cause to

extend a debtor's exclusive periods.  "The large size of the debtor and the consequent difficulty

in formulating a plan of reorganization for a huge debtor with a complex financial structure are

important factors which generally constitute cause for extending the exclusivity periods." In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

   23. Here, the size and complexity of the Debtors' businesses, corporate structure and financing arrangements compel the requested extension of the Exclusive Periods. Immediately prior to filing these cases, the Debtors had over 6,000 employees in approximately 300 locations across the country. The size and complexity of these cases have required the Debtors to devote a substantial amount of time to negotiating and securing court approval of the sale of the Debtors' assets. Despite the numerous difficulties arising from operating in chapter 11, the Debtors have made substantial progress in achieving results beyond those available outside of bankruptcy. As stated above, on May 7, 2007 and June 28, 2007, the Court approved the sale of approximately $190 million in LNFA to Ellington, on May 23, 2007 the Court approved the Carrington Sale to Carrington, on July 3, 2007 the Court approved the Technology Sale to EquiFirst and the Debtors have rejected approximately 295 real property leases and approximately 825 executory contracts.

   24. The Debtors' appropriate focus on these issues, as well as addressing numerous other matters attendant to their chapter 11 cases, have made it impossible to formulate, promulgate and build consensus regarding the Plan any earlier than the extended dates proposed by the Debtors. In fact, the large scale and sophisticated nature of the Debtors' cases by themselves have posed a number of practical issues that have made formulation of the Plan impracticable within the initial nine months of these cases, particularly in light of the fact that the Debtors active workforce consists of a limited staff of approximately twenty (20) employees retained through Special Counsel, Inc., and approximately fourteen (14) independent contractors,

LA3:1144186 1

11

who are actively engaged in winding up the Debtors' operations, reconciling claims, and liquidating the Debtors' remaining assets.

25.     In addition to negotiating the sale of their assets, during the first nine months of these cases, the Debtors have focused their efforts on stabilizing, winding down their remaining operations and implementing the transition services related to those sales.    For example, the Debtors entered into an agreement with Carrington to transition the servicing business which required the Debtors to continue to operate the servicing business in the ordinary course while it was transitioned.

26.     Moreover, as noted above, the Debtors have dedicated substantial resources to cooperating in government investigations and with the Examiner.  Such cooperation has demanded extensive time and energy from the Debtors' few remaining employees and the Debtors' professionals.  Not only have these employees and professionals been responsible for disposing of and transitioning the Debtors' assets and cooperating with the Examiner's and government's investigations, but they also have had steer the Debtors through, among numerous other complex and demanding tasks, matters involving the WARN Act, the Debtors' deferred compensation plan, DBNTC's cure claim, and the disposition of the funds in the Debtors' general corporate account.

27.     Despite these hurdles, the Debtors have made significant progress with respect to the Plan.  The Debtors have analyzed and made preliminary determinations as to the validity of all claims filed against the Debtors.  Additionally, the Debtors not only have agreed upon the structure of the Plan and compromises to be contained therein with the Committee and other key constituencies, but they have also completed drafts of the Plan and Disclosure

Statement that nearly are ready to be filed.    Indeed, the Debtors expect that pending the resolution of the above-referenced intercreditor issues that the Creditors' Committee is resolving, the Debtors and the Creditors' Committee will file the Plan by February 21, 2008.

28.    In light of the foregoing factors, the Debtors' request for a twenty-four (24) day extension is modest and justified.    In fact, given that the requested extension, if granted, will result in the Exclusive Filing Period having been extended for a total of less than (7) months, the Debtors' request is substantially less than the extensions granted by this and other courts in large reorganization cases.    See, e.g., In re Loewen Group Int'l. Inc., No. 99-1244 (PJW) (Bankr. D. Del.) (exclusivity extended for approximately 19 months); In re Montgomery Ward Holding Corp., No 97-1409 (PJW) (Bankr. D. Del.) (exclusivity extended for approximately 22 months); In re Trans World Airlines, Inc., No. 92-115 (HSB) (Bankr. D. Del.) (exclusivity extended for approximately 20 months).[2]    Although the cases cited above were filed prior to the amendments to the Bankruptcy Code pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the extension requested by the Debtors (which when added to the Exclusive Filing Period, as currently extended, will total less than eleven (11) months and when added to the Exclusive Solicitation Period, as currently extended, will total less than thirteen (13) months) is well within the respective eighteen (18) and twenty (20) month exclusive period limits now set forth in Bankruptcy Code sections 1121(d)(1)(2)(A) and (B).

**B.**     **The Debtors' Progress in These Cases Warrants an Extension of the Exclusive Periods.**

29.     An extension of a debtor's exclusive periods may also be justified by progress in resolving issues facing creditors and the estate. See, e.g., In re McLean Indus. Inc., 87 B.R. 830, 835 (Bankr. S.D.N.Y. 1987); Texaco, 76 B.R. at 327; In re Swatara Coal Co., 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985).

30.     As discussed above, much of the Debtors' time and efforts since the commencement of these cases have been devoted to examining the value of their assets and negotiating and effecting the sale of their assets as well as negotiating their post-sale obligations. The Debtors have made significant process in resolving asset disposition issues and have fulfilled most of their obligations arising from the sales.

31.     In addition, the Debtors have made significant progress in stabilizing their operations and transitioning to a wind-down mode by (i) implementing the various forms of relief granted by the Court during the first days of these cases that allowed the Debtors to maintain business as usual to the fullest extent possible and ultimately consummate the sale of their assets, (ii) retaining the professionals and consultants necessary to the Debtors' sale efforts and administration of their chapter 11 cases, (iii) negotiating, documenting and litigating certain issues with respect to debtor-in-possession financing and employee retention matters, (iv)

---

[2] See also, In re Elder-Beerman Stores Corp., No. 95-33643 (Bankr. S.D. Ohio) (exclusivity extended approximately 21 months); In re CSC Indus., Inc. and Copperweld Steel Co., Nos. 93-41898 and 93-41899 (Bankr. N.D. Ohio 1997) (exclusivity extended approximately 19 months); In re Phar-Mor, Inc., No. 92-41599 (Bankr. N.D. Ohio) (exclusivity extended for approximately three years); In re Federated Dep't Stores, Inc., No. 1-90-00130 (Bankr. S.D. Ohio) (exclusivity extended for approximately two years); Gibson & Cushman, 101 B.R 405, 407, 411 (E.D.N.Y. 1989) (exclusive period extended 14 months); Gaines v. Perkins, 71 B.R. at 294, 296 (W.D. Tenn. 1987) (exclusive period extended more than 22 months); In re Ravenna Industries, Inc., 20 B.R. at 886, 887 (Bankr. N.D. Ohio 1982) (exclusive period extended more than 10 months). Because they are voluminous, the unreported orders cited herein are not attached to the Motion but are available from counsel for the Debtors upon request.

completing the complex and time-consuming process of preparing and filing the Schedules, and (v) analyzing all claims filed against the Debtors and filing eleven (11) omnibus objections in respect thereof.

32.    In light of the Debtors' progress on such key issues in the nearly ten (10) months since the commencement of these cases, extension of the Exclusive Filing Period by just twenty-four (24) days is warranted.  Notwithstanding the progress that has been made with respect to the Plan (as set forth in paragraphs 19 and 20 above), the Debtors and the Creditors' Committee still have to finalize the drafting of the Plan.  Although the Debtors are committed to confirming the Plan as quickly as possible, they do not want to file the Plan prematurely, especially where, as here, they believe that they are close to finalizing a Plan that will be filed jointly with the Creditors' Committee and also will have the support of other key constituencies.

## C.    The Requested Extension of the Exclusive Periods Will Not Harm the Debtors' Creditors or Other Parties in Interest.

33.    The Debtors respectfully submit that the extension of the Exclusive Periods requested herein will not harm creditors or other parties in interest.  In light of the complex nature of these cases, the Debtors believe that neither their creditors nor any other party in interest would be in a position to propose a Plan prior to the proposed expiration of the Exclusive Filing Period in the first instance.  Accordingly, the relief requested herein will not result in a delay of the plan process, and will simply permit the process to continue to move forward in an orderly fashion.

## No Prior Request

34.    No previous motion for the relief sought herein has been made to this or any other Court.

**Notice**

35.    No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware; (2) the Examiner (3) the Committee, and (4) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

36.    The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, the "Local District Court Rules"), incorporated by reference into Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

WHEREFORE, for all of the foregoing reasons, the Debtors pray: (i) for the entry of an Order, substantially in the form attached hereto as Exhibit A, extending the Debtors' Exclusive Filing Period, with respect to all non-Debtor parties other than the Committee, through and including February 21, 2008, (or otherwise to the date set by this Court for the omnibus hearing in these chapter 11 cases) and the Debtors' Exclusive Solicitation Period through and including April 21, 2008 (or some other similar date as this Court might deem just); and (ii) for such other and further relief as this Court deems just.

16

Dated: January 28, 2008
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

      -and-

Suzzanne S. Uhland
Ben H. Logan
Andrew M. Parlen
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

LA3:1144186.1

RLF1-3247970-1