UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                              .    Chapter 11
                                    .
NEW CENTURY TRS HOLDINGS, INC.,.         Case No. 07-10416(KJC)
a Delaware corporation, *et al.*,.       (Jointly Administered)
                                    .
                                    .    January 23, 2008
                                    .    1:30 p.m.
               Debtors.             .    (Wilmington)
                                    .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE









Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE CLERK: All rise.

2          THE COURT: Be seated.  Good afternoon.

3          MR. MERCHANT: Good afternoon, Your Honor.  Mike

4    Merchant of Richards, Layton & Finger on behalf of the

5    Debtors.  Your Honor, if we can begin moving through the

6    agenda, agenda items 1 through 9 have either been continued

7    or I think one matter has actually been withdrawn.  On agenda

8    item 10, the Debtors' motion to extend the exclusive periods,

9    I did see the order hit the docket this morning.  Which

10   brings us to agenda item 11, which is the motion to authorize

11   the sale of certain mortgage loans.  Your Honor, by way of

12   brief background, the Debtors entered into an APA with GRP

13   Mortgage Loan, LLC on December 19th relating to the sale of 46

14   mortgage loans owned by New Century.  On January 9th, the

15   Court approved certain bidding procedures relating to the

16   sale of those loans.  The deadline for competing bids, or the

17   deadline for competing bidders to submit qualified bids was

18   January 18th at noon.  No competing bids were submitted.  The

19   deadline for objecting to the proposed sale was January 18th

20   at 4 o'clock p.m., no objections were received.  As Your

21   Honor will recall the purchase price was determined on a

22   sliding scale based on the declining value of the collateral

23   since the mortgage loans were originally issued.  In

24   accordance with those procedures set forth in the APA, the

25   parties agreed to a purchase price equivalent of 30.10% of

1    the unpaid principle balance of the loans.

2            THE COURT: Of 40 of them.

3            MR. MERCHANT: Forty of the 46 loans.  Correct, Your

4    Honor.  And the parties have entered into a January 16th side

5    agreement to the APA documenting this percentage.  As Your

6    Honor is fully aware, and just stated, there were problems,

7    or problems identified with 6 of the 46 loans.  The side

8    letter that has been entered into carves out 5 of those 6

9    loans.  There's a second side letter contemplated that will

10   carve out the 6th loan.  The unpaid principle balance on the

11   loan, on the 40 loans is 4.78 million.  And just applying the

12   simple multiplication of that times the percentage that was

13   agreed to, the purchase price to be paid by GRP is

14   approximately 1.439 million.  This morning the Debtors filed

15   the affidavit of Robert Lent in support of the sale.  I don't

16   know if Your Honor has any questions with respect to the

17   sale.

18           THE COURT: I've read the affidavit and the papers

19   that have been submitted.  Let me ask is it your intention to

20   make a proffer or is it your suggestion that we use Mr.

21   Lent's affidavit as a proffer?

22           MR. MERCHANT: I guess my intent, Your Honor, would

23   be to use the affidavit in lieu of a proffer or as a proffer,

24   as I do not have Mr. Lent in the courtroom today.

25           THE COURT: All right.  Well let me ask if anyone

1    else cares to be heard in connection with this motion.

2            MR. McMAHON: Your Honor, good afternoon.  Joseph

3    McMahon.  Very briefly.  With respect to the proposed finding

4    in the order relating to the need or lack thereof for

5    appointment of a consumer privacy ombudsman, we would just

6    like the record to incorporate the same privacy policy that

7    was introduced in, before this Court at the LNFA sale heard

8    earlier in these cases in the servicing sale.  Our conclusion

9    with respect to that issue hasn't changed with respect to

10   these various sales, Your Honor, and we would just ask that

11   the record reflect that.

12           MR. MERCHANT: And the Debtors have no objection to

13   that, Your Honor.

14           THE COURT: All right.

15           MR. POWER: Very briefly, Your Honor.  Mark Power

16   from Hahn & Hessen, counsel to the Committee.  Your Honor, I

17   just want to advise the Court that the Committee has been

18   working with the Debtor on this sale.  This is the last pool,

19   I think it truly is the last pool of loans that we have for

20   sale.  A lot of these loans were related to Ohio, which as

21   Your Honor will recall had an injunction against taking the,

22   any foreclosure actions or any collection actions with

23   respect to some of these loans.  So they, as we say in the

24   vernacular, have a lot of hair on them.  I think this, we did

25   have a number of parties we approached, the Committee and the

1    Debtor.  We tried to get. . .more interested in bidding, but

2    I think given the small size and the quality of the loans,

3    this was a, the best bid we were able to get.  We are

4    satisfied that this was competitive and it was well shopped,

5    and this represents a fair and reasonable price under the

6    circumstances.

7         THE COURT: Thank you.  Does anyone else care to be

8    heard?  Does anyone have any objection to the Court taking

9    Mr. Lent's affidavit in lieu of a proffer?  I hear no

10   response.  All right.  Anything else in support of the

11   motion?

12        MR. MERCHANT: Your Honor, there are some very minor

13   revisions to the sale order.  In the interest of full

14   disclosure I could walk Your Honor through them quickly.

15        THE COURT: If you would.

16        MR. MERCHANT: If I may pass up a slightly revised

17   and a black line order.

18        THE COURT: Thank you.

19        MR. MERCHANT: Your Honor, on page 2 of the order

20   there are two minor additions or revisions.  One is simply to

21   note the date that the bidding procedures order was entered,

22   and the second was with respect to the defined term APA, it

23   simply provides as amended to note that there, there's one

24   side letter, which is attached to the order that I just

25   handed up, and there's a second side letter contemplated that

1    will carve out that 6th problem loan.  In paragraph (k),

2    finding (k), we simply deleted the bracketed language to note

3    that there was no auction.  And in paragraph finding (r), I

4    believe that first line was struck simply because I don't

5    think there was a developed record made at the bidding

6    procedures order.  I think the order was entered unopposed.

7    And then if Your Honor will turn to paragraph 23, we've

8    simply revised the language at the end of that paragraph to

9    note the appropriate stipulations and agreements that have

10   actually been entered into with the state of Ohio with

11   respect to those 15 loans that Mr. Power was speaking about.

12   And then paragraph 24 was struck just to note, again, that

13   there was no auction held because there was no, no competing

14   bids submitted.  Other than that, the only revisions to the

15   order is the APA has the first letter agreement attached to

16   it that I was referencing.

17        THE COURT: All right.  Does anyone care to be heard

18   in connection with the proposed form of order?  I hear no

19   response.  I have no questions.

20        MR. MERCHANT: Thank you, Your Honor.

21        THE COURT:  The order has been signed.

22        MR. MERCHANT: Thank you, Your Honor.  Agenda items

23   12 through 22 were the stay relief motions that we see from

24   hearing to hearing.  In this case, because of the way the

25   holiday fell, and the timing of the objection deadline, those

1  parties were unable to file CNO's before the agenda was

2  actually due.  But we noted on the amended agenda that many

3  of those CNO's have been filed, and I actually did see a

4  number of those orders hit the docket today.  I don't know if

5  Your Honor had any questions regarding any of those motions.

6          THE COURT: I do not.  All the orders through number

7  22 have been signed.

8          MR. MERCHANT: Thank you, Your Honor.  Moving to

9  agenda item 23 is the application to retain IP Recovery, Inc.

10  to market certain intellectual property assets.  Again they

11  will market the Debtors' internet and domain names and other

12  intellectual property.  There were no objections to that

13  application, however we did receive comments from both the

14  Creditors Committee and the Office of the United States

15  Trustee.  With respect to the Creditors Committee's comments,

16  I believe we've addressed those adequately through

17  discussions, and I think they've indicated that they don't

18  have any objection.  With respect to the Office of the United

19  States Trustee, we've made two tweaks to the proposed form of

20  order, which I think adequately addresses Mr. McMahon's

21  concerns.  If I can hand up a revised order and a black line,

22  I can walk the Court through those changes.

23          THE COURT: All right.  Thank you.

24          MR. MERCHANT: The two changes, Your Honor, are

25  found in paragraphs 5 and 6 of the revised order.  Paragraph

1  5 of the revised order clarifies that IP Recovery will not be

2  entitled to additional fees for any court appearances or

3  testimony related to IP Recovery's fee applications or, or

4  for actually for the hearing today regarding their retention.

5  And then on paragraph 6 of the proposed form of order, Your

6  Honor, we've slightly tweaked the language relating to the

7  filing of a first and final fee application.  The, the

8  agreement that we've reached with the Office of the United

9  States Trustee is that the success fee arrangement under the

10 agreement will be approved pursuant to 328, however IP

11 Recovery will seek approval of those, you know, they're being

12 approved today under 328, but they will be disclosed in the

13 final fee application and subject to any review that's still

14 available under 328 under the improvident standard.  Any

15 fees, or any expenses, or costs that are requested will be

16 included in a final fee application, and they will be subject

17 to reasonable review under §330 of the Bankruptcy Code.  And

18 I believe the changes in paragraph 8, Your Honor, are just

19 simply to carry through the prior changes that I just noted.

20 With those changes, I think we've addressed the concerns of

21 the Office of the United States Trustee, and we would ask

22 that the application be, be granted, and the order be

23 entered.

24          THE COURT: Does anyone else care to be heard in

25 connection with this application?  I hear no response.  I've

1    reviewed the application and see that the changes, see the

2    changes that have been made to the form of order.  I have no

3    questions.

4         MR. MERCHANT: Thank you, Your Honor.

5         THE COURT: That order has been signed.

6         MR. MERCHANT: Thank you, Your Honor.  The remaining

7    item on the agenda, agenda item no. 24 is the Examiner's

8    motion for a second extension of time to file their report.

9    I will cede the podium to the Examiner and his counsel.

10        THE COURT: Very well.

11        MR. MERCHANT: Thank you.

12        MR. TOPETZIS: Good afternoon, Your Honor.  Steve

13   Topetzis of K&L Gates on behalf of the Examiner.  Your Honor,

14   I note for the record that the Examiner was able to modify

15   his travel schedule and arrangements to facilitate his in

16   person appearance at today's hearing.

17        THE COURT: And he looks awake, too, so it was a

18   good thing.  Thank you.

19        MR. TOPETZIS: The bases for our request for an

20   extension are set forth in our motion papers.  As described

21   in our papers, the request for an extension, the requested

22   extension is necessary because of the complexity of the

23   issues we are investigating and delays associated with our

24   receipt of relevant information and our access to certain

25   significant witnesses.  Further, as the Court is aware, and

1   as reflected in a related filing by the Debtors, after we

2   filed our motion for an extension, we learned about an

3   additional approximately 750 thousand responsive emails that

4   were not previously produced to the Debtor pursuant to our

5   request.  This production issue creates an additional reason

6   for the requested extension.  Your Honor, I'd be pleased to

7   address any questions the Court has regarding the bases for

8   our motion, and any other related matters.  Before doing so

9   I'd like to acknowledge the opposition by the Committee.  We

10  are, as we've discussed previously with the Court, mindful of

11  the limited resources of the estate, and the need for us to

12  complete our work as cost effectively and as efficiently as

13  possible under the circumstances.  We've undertaken to

14  conduct an, an efficient investigation of highly complex

15  issues in a relatively short time frame, as we've pointed

16  out, even with the requested extension of time.  The time

17  period for the investigation will be approximately 9 months,

18  which we respectfully submit is a relatively short time frame

19  for an examination of issues as complex as those presented

20  here.  We are substantially completed with our inquiry, and

21  we are engaged in the process of analyzing the information

22  we've collected in preparation of a related report to the

23  Court.  It is a big job, Your Honor.  We're committed to

24  performing these remaining tasks as efficiently as we can,

25  and as noted in our papers, we expect that the costs

1   associated with our examination will decline significantly

2   during this final phase.  And so Your Honor, for all of the

3   above reasons, we respectfully request that the Examiner be

4   granted an extension of time up to and including March 17,

5   2008 to complete his examination and file his report with the

6   Court.

7            THE COURT: At the request of the parties, and

8   because there had been articulated, on behalf of the

9   Examiner, a scheduling issue, we had a chambers conference on

10   January 17th.  At which time I expressed a view that - - well,

11   I'll put it this way.  I asked the Examiner whether he could

12   possibly conclude his report in a time frame that's shorter

13   than that which is requested in the motion.  And at the time,

14   the response was, with a little wince of pain on, on his

15   face, said he could do it by the end of February.  Is that

16   still the case?

17            MR. TOPETZIS: It is, Your Honor, with the same

18   wince.  And as we discussed at that time, obviously we'll do

19   the Court's bidding here.  And we respect any decision made

20   by the Court.  In terms of cost savings, we do not anticipate

21   that shortening the time period by that amount will produce

22   any significant cost savings.  We don't think it's likely to

23   cause additional costs.

24            THE COURT: Actually, and that was my concern.  I

25   wasn't, I asked the question not so much to see if costs

1   could be reduced, but just to cut the time frame shorter so

2   that we can get on to the next phase of whatever happens

3   after the report's going to be filed.  My concern was that it

4   wouldn't increase costs, and you've indicated that it will

5   not.

6          MR. TOPETZIS: We do not anticipate that.  There's a

7   great deal of work to do to try to complete the report even

8   by March 17.  But if we were forced to shorten that period by

9   some increment, we'd endeavor to do that as efficiently as we

10  could, and don't anticipate significant additional costs, if

11  any.

12         THE COURT: All right.  Thank you.  Let me hear from

13  the Committee.

14         MR. POWER: Thank you, Your Honor.  Mark Power from

15  Hahn & Hessen, counsel to the Committee.  Your Honor, first

16  of all, I think Your Honor is aware this is a very important

17  issue to the Committee.  A number of the Committee members on

18  the phone, and they've been very concerned about the

19  increased expenses that have been incurred, month after

20  month, as this investigation goes on.  I think when we

21  approach this, the Committee comes from the beginning premise

22  that this is a liquidating estate.  And in connection with

23  that, there are very limited resources in this estate.  We

24  have assets and some cash in the tens of millions of dollars.

25  We have some other assets which are either illiquid or

1  subject to competing claims that we hope to liquidate or

2  obtain value from, also in the tens of millions.  We have

3  claims in the hundreds of millions.  Maybe approaching a

4  billion to two billion.  Credit recoveries in this case are

5  going to be very modest.  And unfortunately that's just the

6  reality of the cards we were dealt.  This is not <u>Enron</u>, this

7  is not <u>Wilcom</u>.  This is not even <u>Revco</u>.  When examination was

8  conducted last year involving a case with billions of assets

9  and was completed for under $10 million.  What we have here

10  is very different.  The creditors view this, and they're very

11  concerned that every single dollar that is spent in this case

12  is a dollar less the creditors will get.  It is a direct

13  correlation between the amount of money that is being burned

14  every day by the professionals in this case versus the

15  recovery of creditors.  And that is their primary concern.

16  When Your Honor first approved the appointment of this

17  Examiner, over the Committee's objection, the Committee was

18  hopeful and understood exactly why Your Honor did it.  And we

19  were very hopeful that, in fact, it could be done in a

20  reasonable time frame, and a reasonable cost, and really

21  point the professionals and the fiduciaries of the estate in

22  the direction of where additional claims may be, or

23  additional recoveries may be.  And really explain to the

24  public, and the Court, what exactly happened here.  What we

25  have found, the Committee, as fiduciaries for the creditors

1   in this case, is that the expenses have continued to

2   increase, and increase at a, roughly a $3 million per month

3   rate.  We're now over $20 million for this whole examination

4   expense.  Which was never envisioned by the Committee or, I

5   think, anybody in this room, I mean, except perhaps, the

6   Examiner, as to what the cost would be.  The Committee is

7   somewhat at the point, at this point thinks the cure is worse

8   than the disease.  We have gotten to a point where so much

9   money has been spent, and it has adversely affected credit

10  recoveries.  And we're not sure to what benefit, and whether

11  there will really be a benefit as a result of this

12  investigation.  And Your Honor, I hear the Examiner's counsel

13  say that they're mindful of the expense, and they're

14  sensitive to the creditors' concerns, but I gotta tell you,

15  the facts that we see don't seem to support the words that

16  are being spoken.  The Examiner's firm has roughly every

17  single month 69 to 75 people, from his firm alone, working on

18  this case.  That includes an average of 21 partners, 31

19  associates, and roughly 17 to 20 paraprofessionals.  There is

20  an army of professionals working on this investigation month

21  in and month out.  That has continued through December.  We

22  don't know what January entails.  Over 40 thousand hours have

23  been spent.  The Debtor has produced over 14 million pages of

24  documents to the Examiner to review.  KPMG has also produced

25  hundreds of thousands of pages of documents.  Dozen of

1    interviews have occurred here, and dozens of - - well, we

2    don't know how many are left, but several are left.  Your

3    Honor, it has gotten to the point where the Committee says

4    enough is enough.  We have spent so much money pursuing this

5    investigation and we don't know towards what end.  Our view

6    is that we, we implore the Court to say finish a report, stop

7    spending the funds, let's see where we are, let's see what

8    we've gotten for our $20 million, and then let's make a

9    determination of whether anything else needs to be

10   investigated or reviewed here.  That's where the creditors of

11   this case stand, and I think in a unified voice would ask

12   this Court to stop the expense.  Your Honor at our last

13   conference directed the, at the last hearing and then at the

14   conference directed the Examiner to put together a budget.

15   And we were, we were very hopeful that that might assist in

16   somehow managing some of these expenses.  And I must tell

17   Your Honor that the budget was extremely disappointing to the

18   Committee.  When - -

19           THE COURT: Well are you, there was a submission *in*

20   *camera* of a budget.  Did the, does the Court and the

21   Committee have the same document?

22           MR. POWER: Yes, Your Honor.

23           THE COURT: Okay.

24           MR. POWER: I guess when you step back, and the

25   professionals who practice in this field, they do budgets all

1    the time.  And clients ask professionals for budgets.  And,

2    and it's interesting, lawyers often say to clients, you know,

3    all the budget is is for you to yell at me when I spend more

4    than that later on.  And the clients who are, who I respect,

5    say no, no.  The budget is really designed for the

6    professionals to really think about what they're doing.  To

7    really analyze exactly what avenues I have to explore to

8    finish the job and the task assigned to me.  What number of

9    people do I need to put on it?  What number of attorneys do I

10   have to look at these issues?  Do I need 30 people to look at

11   this or 10 associates to research that?  And the idea is to

12   force the professionals to really, really focus on what's

13   being spent, and how it's being spent, and whether it's being

14   done in an efficient manner.  And that's what we had hoped

15   this budget process would have done here.  But again, Your

16   Honor, we are sorely disappointed in the results.  Your Honor

17   got a budget which has six line items.  All roughly one

18   sentence.  And none of them have details regarding how the

19   numbers were reached.  They're gross numbers just plucked out

20   of an air.  And I don't mean to be disrespectful, but

21   truthfully it appears to me that this could have been done on

22   the train ride back to D.C. as far as we, I'm concerned.  And

23   I just want Your Honor to understand what these numbers

24   equate on a detail level.  The Examiner suggests spending

25   another $700 thousand to conduct interviews.  The Examiner

1    doesn't tell us or the Court how many interviews.  But

2    assuming 10 interviews, that's $70 thousand each.  At $500

3    blended hourly rate, which is roughly what the Examiner is

4    incurring in this case, that's 140 hours, or three lawyers

5    spending the entire week, full-time, on each interview.

6    There is a $250 thousand line item for legal research.  Now

7    quite frankly, Your Honor, we've already spent $17 million,

8    we assume that most of the legal research in this matter

9    would have already been done.  But even if it hasn't, there's

10   something new, shocking has come up, at a blended associate

11   rate of $350 per hour, that's 714 more hours of research

12   needed to finish the report and wind this down.  The most

13   shocking issue is the line item for drafting, revising, and

14   finalizing the report.

15         THE COURT: I thought I might apply for that job.

16         MR. POWER: It's unbelievable.  It's a million and a

17   half dollars, Your Honor.  And what does that mean?  At $500

18   at a blended hourly rate, that's 3 thousand hours.  Five

19   attorneys, working 10 hours a day, every day, including

20   Saturdays, Sundays, and holidays for the next 60 days would

21   be working on this report to finalize it.  From the Creditors

22   point of view, that is a shocking amount of funds to be

23   expended on the estate, by the estate representative here to

24   try to complete this report.  And so we, we tried to, we

25   discussed with the Committee trying to go back and trying to

1  get the budget reduced or some, reasonable level, and the

2  Committee just threw up his hands.  Because when it looks at

3  these numbers, it can't fathom how something like this could

4  cost this much.  I mean, it can't cost 10 lawyers, or 5

5  lawyers working 10 hours a day for two months to write a

6  report.  And if Your Honor recalls, we were told, and Your

7  Honor was told at two conferences that the reason the

8  expenses were so high previously is because the Examiner and

9  his team had been writing the report as they go.  As they

10  conduct interviews, as they get documents, they're writing

11  the report.  They're working on it.  So that it's really a,

12  it's really a work in process that will be almost done.  Now

13  we're being asked to spend another million and a half to

14  write the report that we were previously told was pretty much

15  being written as we go.  So when we look at the numbers, we

16  just believe that this is an unreasonable process.  And the

17  Committees don't believe this is an appropriate use of estate

18  funds, limited state funds that should be paid to the

19  creditors.  We understand that the investigation needs to be

20  done, and we understand that, we want it done.  Because we've

21  already paid, quite frankly, for this.  But we think what

22  needs to be done here is, Your Honor, we urge the Court to

23  simply direct the Examiner to finish and wrap up his

24  examination within two weeks, write his report.  If it's a

25  preliminary report, if there are areas he wants to focus on,

1    he can tell the Court and the creditors, and we can have

2    another hearing to discuss those areas of review.  But at

3    this point, we would urge the Court to simply stop this

4    process.  On behalf of the creditors of this case, I'd say

5    enough is enough, and we ask Your Honor to deny the motion.

6         THE COURT: Thank you.  I'll give the Examiner a

7    brief chance for rebuttal, but before I do let me ask if

8    anyone else cares to be heard in connection with the motion.

9         MR. McMAHON: Your Honor, Joseph McMahon for the

10   United States Trustee.  Your Honor we filed a statement in

11   support of the requested extension on behalf of the, in

12   support of the examination.  And for the reasons we identify

13   in that short statement, we believe that an extension for the

14   Examiner to complete the report is appropriate.  Especially

15   in light of the late breaking developments with respect to

16   the production of the documents, specifically the emails that

17   as we all know at this point, were represented to the

18   Examiner as having been produced way back when when this

19   process started.  Should have been produced at that time, yet

20   apparently were not.  The completeness of the examination, I

21   think, at a minimum requires the Examiner some reasonable

22   latitude in terms of looking at those documents to see how

23   they might affect the final product.  In light of the fact

24   that this Court has authorized the examination and we've come

25   this far in the process.  With respect to the issue of cost,

1   Your Honor, a couple of points here.  First, while there is a

2   focus on the Examiner, the United States Trustee continues to

3   believe that the Examiner and all professionals in the case

4   must be mindful of cost related issues, and that the extent

5   of fees incurred by all the professionals is of, is, should

6   be of their concern, and of this Court.  And with respect to

7   the Examiner itself, there's an undercurrent in the

8   Committee's comments suggesting that the Examiner is some

9   type of a luxury.  And I think we have to turn back, Your

10  Honor, to the hearing to appoint the Examiner, and the

11  findings that were made that this examination was in the best

12  interest of the estate.  And I don't need to go through the,

13  the rhythm and motion that led us to that point, but there

14  was a specific, there were specific arguments made, and there

15  were specific conclusions drawn by this Court that this

16  examination, what we're talking about, what was required in

17  these cases.  And for all these reasons, Your Honor, we

18  believe that the short extension that has been requested by

19  the Examiner should be granted.  And unless the Court has any

20  questions for me, I will conclude my comments.

21          THE COURT: I do not.

22          MR. McMAHON: Thank you.

23          THE COURT: Does anyone else care to be heard?  All

24  right.  Go back to the Examiner.

25          MR. TOPETZIS: Your Honor, very briefly.  With

1   respect to the comments by the Committee, we have, as I think

2   the Court knows, and as the Committee and its counsel

3   certainly know, we have maintained an active and ongoing

4   dialog with the Committee throughout the course of the

5   examination.  The Committee has been afforded an appropriate

6   and significant amount of transparency with respect to our

7   efforts.  The Committee, I think, understands as a result of

8   that process, both the ground that's been covered, and

9   understands something about the ground that remains to be

10  covered, as well as the complexity of the issues.  And the

11  enormity of the record.  The objective here is to get it

12  right.  Consistent with the Court's order.  Statements by the

13  Committee in its papers, red herrings, or hyperbole about

14  efforts to turn over every stone, read every document, speak

15  to every potentially, you know, conceivable witness, that's

16  simply not the case, and the Committee knows that.

17          THE COURT: Well, I think at bottom, the Committee's

18  concern is just as it's been articulated today.  And that is

19  every dollar that you spend comes out of their pocket.  And I

20  would tend to agree with it, given what's been represented to

21  the Court as being the financial condition of what remains of

22  the Debtor here.  And I guess the way the question would be

23  asked is, of what value is getting it right and finding the

24  truth when at the end of the day one of what at least I view

25  as the major purposes of a Chapter 11, and that is to return

1   something to unsecured creditors, comes to naught?

2           MR. TOPETZIS: I understand the Committee's concern.

3   I think we've been sensitive to the Committee's concern

4   throughout.  I'm not diminishing the Committee's concern.  I

5   don't think that the utility of the report ought to be pre-

6   judged in any way.  We recognize the costs have been very

7   significant.  With respect to the proposed budget, the

8   numbers on that budget, and admittedly it's at a high level

9   of detail, perhaps there should have been more detail

10  provided.  But the notion was to provide a reasonable

11  approximation, and it was produced consistent with the

12  discipline that Mr. Power described.  The discipline by which

13  professionals develop budgets.

14          THE COURT: Yes.  But I think what the Committee had

15  hoped, and what it has expressed not for the first time

16  today, is that engaging in a more detailed process would help

17  further refine - - I don't know the Examiner has a contrary

18  view - - but would further refine and define the scope of the

19  Examiner's activities in an effort to be efficient, focused,

20  and to be as economical as possible.  And I understand that

21  concern.

22          MR. TOPETZIS: And I understand it, Your Honor, as

23  well.  I think the Examiner does.  We acknowledge it.  The

24  numbers that were presented in that proposed budget are

25  consistent with discussions we've had with the Committee pre-

1    dating the motion.  We invited the Committee to respond.  It

2    did not at that time.  We ultimately filed the motion.  And

3    here we are today having the same type of discussion.  With

4    respect to the state of the examination, the fact gathering

5    is substantially complete.  There are some remaining items.

6    There will also be areas where we'll want to go back to

7    confirm facts, to address potential inconsistencies,

8    etcetera.  But we're substantially there.  And then it's a

9    process of refining the analysis, refining and distilling the

10   observations, and presenting a report which will be, at the

11   end, a substantial document.  And we recognize that that

12   process involves significant costs, and we recognize this is

13   a liquidating estate.  But we submit that under all the

14   circumstances, given where we are, given the road we've

15   traveled - - and we've had a number of frustrations as the

16   Court is aware, along the trail - - we submit that those

17   costs are reasonable under all the circumstances and that the

18   Examiner should be afforded the time to complete the process

19   begun incident to the Court's June 1 order.

20        THE COURT: Thank you.  This situation puts the

21   Court in what I find to be an awkward position.  There is no

22   doubt in my mind, and the Examiner's interim report and what

23   I've heard from the parties as we go, only confirms in my

24   mind the correctness of having appointed an Examiner in this

25   case.  And as I said at some point after I indicated I was

1   going to appoint an Examiner based upon the record that had

2   been made, it should have come as no surprise to anyone in

3   the courtroom, including the Committee.  And as I said,

4   ensuing developments have convinced me of the correctness of

5   that decision.  And of course the Examiner is in a position

6   in which once he renders the report, it's bound to evoke

7   response from at least one party, and maybe more.  As his

8   interim report did.  On what should have been a fairly, at

9   least in my view - - and I've expressed this to the parties –

10  an uncomplicated investigation which turned, I will tell you

11  in my view, horribly wrong.  And I don't yet know who's to

12  blame for that.  But as I've indicated to the parties

13  previously, I intend to find out.  And I intend to make what

14  adjustments are appropriate with respect to professional fees

15  of the Examiner and/or others who I find incurred unnecessary

16  or time and unreasonably in pursuing that issue.  I don't

17  know what's yet to come, because the final report, obviously,

18  is not yet in.  I agree with the Committee.  The budget

19  that's been offered isn't, isn't very helpful, and it didn't

20  result in the exercise that, that I think the Committee had

21  hoped it would, but I'm not prepared at this point to cut

22  short the Examiner's investigation.  We are near the end.  It

23  makes no sense to me to have a, an incomplete, or what's

24  called a preliminary report filed, and then yet have another

25  debate about whether there should be more.  It seems to be

1   rife with the risk of actually increasing costs, even beyond

2   that which the Examiner is incurring now.  And it also

3   extends the time to get to the end.  And I'm sure this case

4   will continue long enough as it is as we get into the next

5   phase of it.  There have been, and it's not disputed that

6   there have been, recent developments, including witnesses who

7   have now agreed to be interviewed, who had previously not

8   agreed to be interviewed.  That some of those interviews that

9   had been agreed to were delayed.  A new set of, extensive new

10  set of documents were delivered.  The Examiner has indicated

11  that he's just recently gotten access to a shared drive that

12  he didn't have before.  So there are reasons why this was not

13  completed within the time frame that I think we all would

14  have liked, including the Committee.  So for these reasons, I

15  am prepared to grant the Examiner some extension, but only to

16  February 29th, which is the end of next month, with the

17  understanding that it will not increase the cost, even though

18  it might not reduce it.  I will say, however, with respect to

19  the budget that's been offered, no party, including the

20  Examiner, should consider that an approval or an

21  authorization to incur those amounts.  I asked for it only as

22  a way of trying to determine how much more it would cost to

23  extend the Examiner's tenure here.  And as I indicated to the

24  parties in the last chambers conference - - and I'm not yet

25  certain exactly how I'm going to go about this, but I, we

1    haven't had a quarterly fee application hearing yet - - I do

2    intend to look separately at all the time of all the

3    professionals spent in connection with the Examiner's

4    investigation.  And I will take a very close look at that,

5    and to the extent that I determine the estate should not bear

6    the brunt of some of that time, I'll rule accordingly.  And

7    that includes not just legal professionals, but other

8    professionals who have been involved in this process,

9    including those hired internally by the Debtor.  Is there a

10   form of order?

11          MR. MINUTI: Your Honor, Mark Minuti for the

12   Examiner.  We do have a form of order, but it had the March

13   date in it.  Maybe what makes more sense is for me to change

14   the order back at my office and submit it under

15   certification.  Your Honor the form of order that we had

16   submitted did include the line that said the extension was

17   without prejudice to the Examiner's right to seek further

18   extensions.  On behalf of the Examiner, we would request the

19   opportunity to keep that in the order recognizing there might

20   be a change of circumstance while we clearly hear what Your

21   Honor is saying, and we're going to do everything we can to

22   get the report done by the end of February.

23          THE COURT: You can leave the line in, but I can't

24   envision, absent some extraordinary development, that I would

25   entertain a further request for extension.  Regardless of

1   where we stand.  But I won't prejudge your request - -

2          MR. MINUTI: Thank you, Your Honor.

3          THE COURT:  - - at this time.

4          MR. MINUTI: Thank you.

5          THE COURT: Okay.  Anything else on this matter?  I

6   hear nothing.  Let me ask this.  Have the parties since filed

7   the interim report, the Debtors' response, and the Examiner's

8   reply to that?  Of record?

9          MR. COLLINS: Yes, Your Honor.

10          THE COURT: They're all in now?  Okay.  Thank you.

11   Is there anything further for today?

12       (The remainder of the page is intentionally left blank.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          MR. MERCHANT: We have nothing further today, Your

2     Honor.

3          THE COURT: All right.  Thank you.  That concludes

4     this hearing.  Court is adjourned.

5          UNIDENTIFIED SPEAKER: Thank you, Your Honor.

6          UNIDENTIFIED SPEAKER: Thank you, Judge.

7       (Whereupon at 2:20 p.m. the hearing in this matter was

8     concluded for this date.)

9

10

11

12

13

14

15

16

17

18          I, Jennifer Ryan Enslen, approved transcriber for

19     the United States Courts, certify that the foregoing is a

20     correct transcript from the electronic sound recording of the

21     proceedings in the above entitled matter.

22

23      _/s/Jennifer Ryan Enslen_                    ___01/28/08___
        Jennifer Ryan Enslen
24      43 Bay Boulevard
        Newark, DE 19702
25      (302)836-1905