IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
CHAPTER 11

January 21, 2008

DEBTORS: **NEW CENTURY TRS HOLDINGS, INC., A DELAWARE COPORATION, ET AL.**

CASE NO. 07-10-416 (KJC)

DEBTORS' ELEVENTH OMNIBUS OBJECTION

LOANLEADERS OF AMERICA, INC.
2081 BUSINESS CTR DR #150
IRVINE, CA 92612

Funds were owed to claimant by debtor by contract, a detail description of the loans are attached. The Correspondent Savings Volume Incentive Agreement and Loan Purchase and Sale Agreement are attached. Also attached is proof of receipts by XRoads Claims Management Services for both claims.

CASE NO. 07-10419 IN THE AMOUNT OF 37,015.15
CASE NO. 07-10417 IN THE AMOUNT OF 32,585.65

Martin Foigelman, President
LOANLEADERS OF AMERICA, INC.
2081 BUSINESS CTR DR #150
IRVINE, CA 92612
949-655-1515 x113

cc:

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DE
824 MARKET STREET
WILMINGTON, DE 19801

RICHARDS, LAYTON, & FINDER, PA
MARK COLLINS
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DE 19801

SUZZANE UHLAND,
O'MELVENY & MYERS LLP
275 BATTERY STREET
SAN FRANCISCO, CA 94111

B 10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor: New Century Mortgage Corporation | Case Number: 07-10419 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**LOANLEADERS OF AMERICA, INC.**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
**LOANLEADERS OF AMERICA, INC.**
**2081 BUSINESS CTR DR #150**
**IRVINE, CA 92612**
Telephone number: (949) 655-1515

☑ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor: 112492

Check here  ☐ replaces  ☐ amends  a previously filed claim, dated: _____
if this claim

**1. Basis for Claim**
- ☐ Goods sold
- ☑ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Other _____
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: ____
  Unpaid compensation for services performed
  From _____ to _____
  (date)     (date)

**2. Date debt was incurred:** 02/28/2007

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time the case was filed.
See reverse side for important explanations.

Unsecured Nonpriority Claim $ 37,015.15

☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ _____

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
- ☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate    ☐ Other _____
- ☐ Motor Vehicle

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

- ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**5. Total Amount of Claim at Time Case Filed:** $ 37,015.15 _____ _____ 37,015.15
(unsecured) (secured) (priority) (total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED APR 19 2007
XRoads Claims Management Services

Date: 04/10/2007

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
MARTIN FOIGELMAN, PRESIDENT

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**LOANLEADERS OF AMERICA, INC. #112492**
**VIP DUE**

| | BORROWER | LR | PURCH | LOAN | VIP DUE |
|---|---|---|---|---|---|
| 1 | ARNOLD | NC | 2/13/2007 | 142,500 | 1,425 |
| 2 | KLUJ | NC | 2/27/2007 | 880,000 | 8,800 |
| 3 | KLUJ | NC | 2/27/2007 | 220,000 | 2,200 |
| 4 | LEBLANC | NC | 2/26/2007 | 157,250 | 1,573 |
| 5 | LOEHR | NC | 2/13/2007 | 299,000 | 2,990 |
| 6 | ODELL | NC | 2/2/2007 | 220,000 | 2,200 |
| 7 | TRUDELL | NC | 2/6/2007 | 654,500 | 6,545 |
| 8 | DUGAS | NC | 3/2/2007 | 182,065 | 1,821 |
| 9 | RAMOS | NC | 3/6/2007 | 130,000 | 1,300 |
| 10 | HOLT | NC | 3/28/2007 | 160,000 | 1,600 |
| 11 | POLEN | NC | 3/28/2007 | 425,000 | 4,250 |
| 12 | STEWART | NC | 3/28/2007 | 231,200 | 2,312 |
| | **TOTALS** | 12 | | 3,701,515 | 37,015.15 |

B 10 (Official Form 10) (04/07)

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT  DISTRICT OF **DELAWARE** | **PROOF OF CLAIM** |

| Name of Debtor: **New Century Finanical Corporation** | Case Number: **07-10417** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**LOANLEADERS OF AMERICA, INC.**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

Name and address where notices should be sent:
**LOANLEADERS OF AMERICA, INC.**
**2081 BUSINESS CTR DR #150**
**IRVINE, CA 92612**
Telephone number: **(949) 655-1515**

☑ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**COPY**

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor: **112492**

Check here ☐ replaces  ☐ amends   a previously filed claim, dated:_____
if this claim

**1. Basis for Claim**
☐ Goods sold
☑ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Other_____

☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #:___
Unpaid compensation for services performed
From _____ to _____
(date)   (date)

**2. Date debt was incurred:** 03/06/2007

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time the case was filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $ **32,585.65**

☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority.

Unsecured Priority Claim

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate    ☐ Other_____
☐ Motor Vehicle
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other.-- Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $ **32,585.65** _____ _____ **32,585.65**
(unsecured)   (secured)   (priority)   (total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**RECEIVED JUN 26 2007**
XRoads Claims Management Services

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| 04/10/2007 | [signature]  MARTIN FOIGELMAN, PRESIDENT |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**LOANLEADERS OF AMERICA, INC. #112492**
**PREMIUM DUE FOR PURCHASE COMMITMENTS**

| | BORROWER | LR | PRICE | LOAN | PREMIUM |
|---|---|---|---|---|---|
| 1 | DUGAS | NC | 1.000% | 182,065 | 1,821 |
| 2 | RAMOS | NC | 1.000% | 130,000 | 1,300 |
| 3 | HOLT | NC | 1.000% | 160,000 | 1,600 |
| 4 | POLEN | NC | 1.000% | 425,000 | 4,250 |
| 5 | STEWART | NC | 1.000% | 231,200 | 2,312 |
| 4 | DILLEY | NC | 1.400% | 60,000 | 840 |
| 5 | PORTER | NC | 1.000% | 132,000 | 1,320 |
| 6 | BURTON | NC | 2.000% | 144,000 | 2,880 |
| 7 | HAHN | NC | 1.000% | 549,000 | 5,490 |
| 8 | HIRSCH | NC | 1.250% | 110,000 | 1,375 |
| 9 | JEWELL | NC | 1.000% | 174,250 | 1,743 |
| 10 | LAWSON, W | NC | 1.000% | 148,750 | 1,488 |
| 11 | RUZEWSKI | NC | 1.000% | 204,300 | 2,043 |
| 12 | WEATHERS | NC | 1.000% | 412,500 | 4,125 |
| | **TOTALS** | 14 | | 3,063,065 | 32,585.65 |



# Correspondent Savings Volume Incentive Agreement

## The Program

For your company's efficiencies, loyalty, and consistent loan production, and in recognition of the value of the services you are providing to borrowers, New Century Mortgage Corporation is pleased to offer your company the opportunity to participate in our Correspondent Savings Volume Incentive program.

## Volume Incentive Payout

The monthly incentive payout will be paid retroactive on or about the 20th of each month for loan production purchased during the immediately preceding calendar month. The incentive will be paid on New Century Mortgage Corporation's purchased loan volume of non-prime mortgage loans eligible for the incentive according to the plan below. In the event that New Century does not purchase the minimum eligible monthly loan volume from your company, no volume incentive will be paid.

## Eligible Volume (for determining qualification)

You will qualify to participate in the Correspondent Savings Volume Incentive program if New Century Mortgage Corporation purchases at least $2 million worth of non-prime mortgage loans from you for any given month.

## Eligible Loan Programs (for calculating incentive)

If you qualify, you will be entitled to receive a volume incentive payout based on your sale to New Century Mortgage Corporation of non-prime mortgage loans. The 10-year Interest Only product is excluded from payout, but will count towards the $2 million minimum requirement. All other Interest Only non-prime programs are eligible.

## Incentive Percentage (basis points)

The incentive amount will be determined by the following characteristics and subject to the restrictions referenced above in "Eligible Loan Programs".

### *Payout Incentive*

| | |
|---|---|
| Loans with ≥ 2 year prepayment penalty term | 100 basis points (bps) payout on eligible volume |
| All Illinois Loans | 100 basis points (bps) payout on eligible volume |
| Loans with 1 year prepayment penalty term | 65 basis points (bps) payout on eligible volume |
| Loans with 0 prepayment penalty term | 50 basis points (bps) payout on eligible volume |

### *Payout Incentive Adjustment (calculated on a loan by loan basis)*

1.5 basis point reduction in incentive for every 1 basis point of rate deviation below rate sheet*

*Rate sheet is determined based on the published rate sheet on the date the loan is approved by New Century so long as the Correspondent funds the loan within 30 days of approval. For loans that fund more than 30 days after approval, the current rate sheet at time loan is funded will be used.

### *Payout Incentive and Rebate (calculated on a loan by loan basis)*

The combination of Rebate and Volume Incentive cannot exceed 300 basis points (3.00%) on loans that carry a prepayment penalty term ≥ 2 years, 250 basis points (2.50%) on loans that carry a prepayment penalty term of 1 year, and 200 basis points (2.00%) on loans without a prepayment penalty term.

## Other Terms

This document will serve as an amendment to the correspondent agreement between New Century Mortgage Corporation and your company. New Century Mortgage Corporation reserves the right to modify or terminate this amendment in its sole discretion at any time. Except as expressly modified by this agreement, all terms of the correspondent agreement shall remain in full force and effect. Correspondent agrees to preserve the confidentiality of the terms of this amendment and of the Correspondent Savings Volume Incentive program and not to disclose the terms to any third party except to the Correspondent's auditors or attorneys, or unless required by applicable law.

| CORRESPONDENT | NEW CENTURY MORTGAGE CORPORATION |
|---|---|
| Company Name: LOANLEADERS OF AMERICA | Signature: |
| Signature: [signed] | Date: |
| Date: 10/20/06 | Printed Name: |
| Printed Name: Martin Foigelman | Title: |
| Title: President | AE Name: |
| Email Address: martin@loanleaders.com | Broker#: |

Effective date 10/1/06 Version 4.4

# NEW CENTURY MORTGAGE CORPORATION
## Correspondent Lending

## LOAN PURCHASE AND SALE AGREEMENT

THIS LOAN PURCHASE AND SALE AGREEMENT ("Agreement") dated __8/10/06__ (the "Effective Date"), is entered into between __LOANLEADERS OF AMERICA  CORP.__ with an address at __2091 Bus. CTR Dr. Irvine, CA__ ("Seller"), and NEW CENTURY MORTGAGE CORPORATION, a California corporation, with an address at 18400 Von Karman, Ste. 1000, Irvine, CA 92612 ("Purchaser").

### BACKGROUND

Seller originates residential mortgage loans secured by liens on real property improved with one- to four-family homes (each, a "Loan") and may from time to time offer to sell Loans to Purchaser. Purchaser may wish to accept one or more such offers.

Purchaser and Seller enter into this Agreement to set forth the terms and conditions which shall govern any sale of Loans by Seller to Purchaser.

In consideration of the foregoing and the covenants contained in this Agreement, the parties agree as follows:

### I. GENERAL

A. Upon final approval of Seller's application to Purchaser to become a seller under this Agreement, Purchaser will issue to Seller a Correspondent Sellers Guide ("Guide"). All provisions of the Guide are incorporated by reference into this Agreement and shall be binding upon the parties. Specific references in this Agreement to particular provisions of the Guide and not to other provisions does not mean that those provisions of the Guide not specifically cited are not applicable. All terms used in this Agreement shall have the same meaning ascribed to them in the Guide unless the context requires otherwise. Purchaser and Seller agree that Purchaser may modify the Guide, and that Seller shall be bound by the terms of any such modification, as long as Purchaser mails notice of any such modifications to Seller, and such modifications shall be effective upon the earlier of Seller's receipt of the notice or ten (10) calendar days after such notice is mailed to Seller, postage prepaid.

B. From time to time Seller may offer to sell Loans to Purchaser. Included in such sale shall be all of Seller's right, title and interest in and to all:

   1. rights relating to such Loan, including servicing rights and all escrow balances;
   2. amounts then or subsequently due under the Loan;
   3. liens or collateral securing the Loan
   4. policies of insurance relating to the Loan or the collateral; and
   5. documents and instruments relating to or evidencing the Loan

   The items specified in 1 through 5 above, together with the related Loan, are referred to collectively as a "Loan."

C. To submit a Loan to Purchaser for co-underwriting leading to a Purchase Commitment (as defined in the Guide) or to a Conditionally Approved Loan readied for purchase (as defined in the Guide), Seller will package the requisite documents in accordance with the Guide.

1.  Purchaser retains the absolute right to reject any Loan submitted for purchase by Seller. Purchaser will not be obligated to purchase any Loan until Purchaser has issued a Purchase Commitment in the form set forth in the Guide. After issuance and acceptance of a Purchase Commitment or Conditional Approval, delivery by Seller shall be mandatory. Purchaser and Seller will mutually agree on periodic delivery schedules for closed Loans as to which Purchaser has issued Purchase Commitments.

2.  The Purchase Price and other consideration established in this Agreement for the Loans to be sold, assigned, transferred and endorsed over to Purchaser pursuant to this Agreement shall be as defined in the Guide and established by the Purchase Commitment.

## II. GENERAL REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

As an inducement to Purchaser to enter into this Agreement and to consummate the purchases contemplated under this Agreement, Seller represents, warrants and covenants to Purchaser as of the date of this Agreement, and throughout the term of this Agreement, as follows:

### A. DUE INCORPORATION AND GOOD STANDING

Seller is a corporation, partnership, or company duly organized, validly existing and in good standing under the laws of the state governing its creation and existence during the time of its activities with respect to the origination and sale of the Loans purchased pursuant to this Agreement. Seller is properly licensed and qualified to do business in all jurisdictions in which licensure and qualification are necessary to originate and sell the Loans.

### B. AUTHORITY AND CAPACITY

Seller has all corporate power, authority and capacity legally required to enter into this Agreement and to perform the obligations required of it hereunder. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have each been duly and validly authorized by all corporate action legally required. This Agreement constitutes a valid and legally binding Agreement of Seller enforceable in accordance with its terms.

### C. EFFECTIVE AGREEMENT

The execution, delivery and performance of this Agreement by Seller, Seller's compliance with the terms hereof and consummation of the transactions contemplated hereby, will not violate, conflict with, result in a breach of, constitute a default under, be prohibited by or require any additional approval under its articles of incorporation (in the case of a corporation), bylaws, partnership agreement, articles of organization, operating agreement, or any instrument or agreement to which it is a party or by which it is bound, or any state or federal law, rule or regulation, or any judicial or administrative decree, order, ruling or regulation applicable to it.

### D. COMPLIANCE WITH CONTRACTS AND REGULATIONS

Seller has complied with all applicable federal, state and local laws and regulations with respect to and which might materially adversely affect any of the Loans purchased by Purchaser hereunder. Seller is conversant with all-relevant fair lending laws and regulations and will not discriminate during the course of its loan origination activities. Seller acknowledges that Purchaser will monitor loan submissions in terms of Fair Lending performance and reserves the right to terminate this Agreement for Sellers failure to comply with any and all Fair Lending laws and regulations or Purchaser's Fair Lending policies.

E. **NO LITIGATION PENDING**

Except as disclosed in writing to Purchaser, there is no action, suit, proceeding, inquiry, review, audit, or investigation ("Action") pending or threatened against Seller or any of Seller's partners, members, shareholders, directors, officers, employees or agents ("Seller's Agents"), including, but not limited to, any pending or threatened Actions by borrowers against Seller or any of Seller's Agents, or any Action by other lenders or purchasers of Loans against Seller alleging that Seller has breached any obligation owed to the lender or purchaser.

F. **STATEMENTS MADE**

No representation, warranty or written statement made by Seller in this Agreement or in any schedule, written statement or document furnished to Purchaser in connection with the transactions contemplated hereby by Seller contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

G. **USE OF NAME**

Seller will not use Purchaser's name in connection with Seller's marketing efforts or otherwise without first obtaining Purchaser's advance written consent to the specified use.

H. **FINANCIAL STATEMENTS**

Within ninety (90) calendar days after the end of each fiscal year, Seller shall deliver to Purchaser financial statements comprising both a balance sheet and an income statement signed by either Seller's proprietor or chief financial officer (or equivalent). If Seller is a FNMA- or FHLMC-approved seller or servicer, or a HUD-approved mortgagee, Seller shall submit within the time frame indicated above financial statements audited by an independent certified public accountant.

I. **NOTICES OF CHANGES IN STATUS**

Seller shall provide written notice to Purchaser of any changes, modifications or amendments to any of the information provided to Purchaser in connection with Seller's application submitted to Purchaser to become an approved Seller of Purchaser or in connection with this Agreement. Seller shall, within ten (10) calendar days of Purchaser's written request, provide to Purchaser or Purchaser's designated agent, any and all information pertaining to Seller's licensing status, financial condition, personnel, insurance, lending areas, affiliations, references, approvals, disqualifications, suspensions, actions, proceedings, claims, repurchase requests, mergers, and dissolutions; Seller shall provide Purchaser with written notice of any change in such information within thirty (30) calendar days of the change. Seller acknowledges and agrees that Purchaser may provide to third party mortgage insurers and prospective or actual purchasers of Loans, any information provided by Seller to Purchaser in connection with Seller's relationship with Purchaser and in connection with the pertinent Loan.

J. **TITLE TO THE LOANS**

Seller is the lawful owner of the Loans and has the sole right and authority to transfer the Loans as contemplated hereby. Upon payment of the Purchase Price, as indicated by the Correspondent Loan Purchase Commitment, by Purchaser, the transfer, assignment and delivery of the Loans in accordance with the terms and conditions of this Agreement shall vest in Purchaser all rights of ownership, free and clear of any and all claims, charges, defenses, offsets and encumbrances of any kind or nature whatsoever, including but not limited to those of Seller.

## III. REPRESENTATIONS, WARRANTIES AND COVENANTS AS TO LOANS

As further inducement to Purchaser to enter into this Agreement and to consummate the purchases contemplated hereunder, Seller represents, warrants and covenants to Purchaser, as of the date of purchase of each Loan purchased under this Agreement, as follows:

### A. VALID LIEN

The promissory note evidencing a Loan ("Note") and the related deed of trust, mortgage or other security instrument securing the Note ("Security Instrument") and all related documents and instruments executed in connection with each Loan are valid and binding and constitute a valid lien against the property described therein and is of the priority represented by Seller. Obligations of the borrower are enforceable according to their terms. There are no defenses, counterclaims, or rights of set-off affecting any Loan.

### B. LEGAL CAPACITY

All parties signing the Loan documents had and have the legal capacity and authority to do so, and the documents have been duly executed and delivered by each such party.

### C. DELINQUENCY, DEFAULT, AND BANKRUPTCY

On the date of purchase, the obligor(s) under the Loan (a) is current and is not otherwise in default; (b) has not been more than twenty-nine days delinquent or otherwise in default since the Seller's closing date and Seller has no reason to believe such default is likely to occur; (c) is not a debtor in any bankruptcy or insolvency proceedings and, to Seller's knowledge, is not the subject of any threatened bankruptcy or insolvency proceedings; (d) to Seller's knowledge, is not a party to any litigation or the subject of any threatened litigation. There is no default, breach, violation or event of acceleration existing respecting the Loan and no event which with the passage of time or with notice and the expiration of any grace or cure period would constitute such a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived.

### D. NO INVESTIGATION OR PROCEEDING

Neither the Seller nor the Loan is subject to any notification from, or proceeding or investigation by, any governmental agency or entity in connection with any actual, alleged, or potential legal problem, violation, deficiency or irregularity.

### E. PRINCIPAL AMOUNT

The full principal amount of the Loan has been advanced to the borrower, the unpaid principal balance is correctly stated in the documents Seller submitted to Purchaser, and the Loan is fully amortizing with no negative amortization.

### F. TITLE INSURANCE

A title insurance company satisfactory to Purchaser must have issued or committed to issue an extended coverage ALTA Loan Policy of Title Insurance in amounts acceptable to Purchaser for the Loan program under which the Loan was originated. Such title insurance policy must insure the security instrument encumbering the borrower's title to the property represents a good and valid lien,

senior in priority to all other liens, encumbrances, easements, reservations and restrictions except those Security Instruments represented by Seller to be prior to the Security Instrument of the Loan, those of unpaid taxes and assessments not yet due and payable, and such other exceptions as commonly accepted by mortgage lenders in the area in which the mortgaged property is located.

### G. COSTS, FEES, AND EXPENSES

All costs, fees and expenses have been paid in connection with the making of such Loan, including recording fees, documentary stamps, ad valorem taxes, hazard insurance premiums, and any other taxes or assessments that are due and payable in connection with the making of the Loan.

### H. GOOD REPAIR

The mortgaged property described in the Security Instrument has not been damaged by fire, flood, or other causes and any improvements thereon have been completed in full compliance with any and all rules and regulations of any governmental agency having jurisdiction.

### I. GOOD TITLE

The Loan documents have not been assigned or pledged except to Seller's warehouse lender and Seller has good and marketable title to and full right to transfer ownership of the Note and Security Instrument free and clear of all liens and encumbrances; Seller agrees and warrants that the Loan submitted for purchase was originated by Seller and not submitted to Seller by, or purchased by Seller from, the originator of the Loan; and upon payment by Purchaser for the Loan, Purchaser will have good and marketable title to the Note and a perfected lien on the mortgage property, free and clear of liens and encumbrances except those Security Instruments represented by Seller to be prior to the Security Instrument of the Loan, the lien of taxes and assessments not delinquent, and encumbrances of or exceptions to title as commonly accepted by mortgage lenders in the area in which the mortgaged property is located.

### J. ASSIGNMENT

The assignment of the Security Instrument to Purchaser has been duly executed and delivered by Seller and has been recorded (at Seller's expense) in those states in which recordation is customary or required to perfect ownership, or is in recordable form in those states where recordation of assignments is neither customary nor necessary to perfect ownership, and is valid, binding and enforceable according to its terms. Purchaser must approve the assignment prior to recording.

### K. LOAN DOCUMENTS

The borrower's application for the Loan, and all documentation relating to the application and Loan, including, without limitation, the Note, Security Instrument, assignment, hazard, flood or mortgage insurance/guaranty documentation, consumer credit disclosures, credit and appraisal documentation, have been prepared and/or completed in accordance with the Guide, and all information contained in such documents is true and correct in all respects and does not fail to disclose any facts which could be material or which would make such information misleading, to the best of Seller's knowledge. Seller has no knowledge with respect to the Loan, the applicant(s) for the Loan, or the property that serves as security for the Loan, that can reasonably be expected to cause an institutional secondary mortgage market investor to regard the purchase of the Loan as an unacceptable investment, cause the Loan to become delinquent, or adversely affect the value or marketability of the Loan.

### L. REGULATORY COMPLIANCE

The Loan was made in compliance with all applicable federal, state and local laws and governmental rules and regulations pertaining to the making of residential real estate loans and all consumer

disclosure laws and regulations, including, without limitation, the Real Estate Settlement Procedures Act, Truth-in-Lending Act, Equal Credit Opportunity Act, Fair Housing Act, Consumer Credit Protection Act, and Flood Disaster Protection Act, all as from time to time amended.

### M. FACTUAL DISCLOSURE

All facts known by the Seller relating to the Loan transaction which may adversely affect the value of the mortgaged property, the credit, character or capacity of the borrower, the validity of the Security Instrument, or any other aspect of the transaction have been disclosed to Purchaser and, if applicable, the appropriate government agency.

### N. HAZARD INSURANCE

The improvements now existing or hereafter erected on the property encumbered by the Loan are insured at minimum against fire with "extended coverage" (and flood insurance where the property is located in an area designated as a special flood hazard area) in an amount at least equal to the outstanding principal balance of the Loan or full insurable value of the replacement cost of the improvements, whichever is less. The insurance is without coinsurance or average clause provision and contains a standard mortgagee clause and loss payable endorsement in favor of Purchaser, containing Purchaser's address. The policy is of a form acceptable to Purchaser and issued by an insurance company rated B+III or better by the Best Key Rating Guide, unless otherwise prohibited by law. Purchaser must be named as the loss payee under the policy and all premiums for the current year must be prepaid. In addition, the policy shall provide that it is non-cancelable by the insurer except on 10 days' written notice to the holder of the Note and Security Instrument.

### O. NO BROKER

Seller has not agreed, and will not agree, to pay any broker or finder's fees in connection with the Loan or sale of the Loan pursuant to this Agreement which could give rise to any valid claims against Purchaser or the Loan.

### P. NOT IN COLLECTION

The Loan is not in the possession of a collection agency or any attorney for collection.

### Q. CAPITALIZED CHARGES AND ESCROW DEPOSITS

No escrow/impound deposits, payments, advances, or other charges or amounts have been capitalized into the Loan. Accurate records covering any escrow/impound deposits shall be delivered to Purchaser on the purchase date, along with such deposits.

### R. PAYMENTS RECEIVED

Any payments Seller receives relating to Loans purchased by Purchaser on or after the Settlement Date (as defined in the Guide) shall be endorsed and forwarded by Seller to Purchaser (or to any other servicer designated in writing by the Purchaser) via overnight mail within 24 hours after Seller's receipt. Seller shall attach a loan payment history to each forwarded check for Purchaser's future payment reporting purposes.

### IV. REPRESENTATIONS AND WARRANTIES OF PURCHASER

As an inducement to Seller to enter into this Agreement and to consummate the purchases contemplated under this Agreement, Purchaser represents, warrants and covenants to Seller as of the date of this Agreement, and throughout the term of this Agreement, as follows:

### A. DUE INCORPORATION AND GOOD STANDING

Purchaser is a corporation, partnership, or company duly organized, validly existing and in good standing under the laws of the state governing its creation and existence during the time of its activities with respect to the origination and sale of the Loans purchased pursuant to this Agreement. Purchaser is properly licensed and qualified to do business in all jurisdictions in which licensure and qualification are necessary to originate and sell the Loans.

### B. AUTHORITY AND CAPACITY

Purchaser has all corporate power, authority and capacity legally required to enter into this Agreement and to perform the obligations required of it hereunder. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have each been duly and validly authorized by all corporate action legally required. This Agreement constitutes a valid and legally binding Agreement of Purchaser enforceable in accordance with its terms.

### C. EFFECTIVE AGREEMENT

The execution, delivery and performance of this Agreement by Purchaser, Purchaser's compliance with the terms hereof and consummation of the transactions contemplated hereby, will not violate, conflict with, result in a breach of, constitute a default under, be prohibited by or require any additional approval under its articles of incorporation (in the case of a corporation), bylaws, partnership agreement, articles of organization, operating agreement, or any instrument or agreement to which it is a party or by which it is bound, or any state or federal law, rule or regulation, or any judicial or administrative decree, order, ruling or regulation applicable to it.

## V. RESOLUTION OF BREACH

### A. BREACH OF REPRESENTATIONS AND WARRANTIES

If any representation or warranty made by Seller in this Agreement or the Guide shall prove to be incorrect or misleading in any material respect, or if Purchaser suffers a loss, or a failure to collect any amount due respecting any Loan by reason of the fact that (a) any such representation or warranty is incorrect or misleading; or (b) any Seller covenant is materially breached, Seller shall no later than ten (10) calendar days after receiving a written notice from Purchaser generally specifying the particular defect, pay to Purchaser a price for such Loan ("Buy-Back Price") equal to the sum of, as of the time of repurchase, (i) the unpaid principal balance of, plus accrued interest on, the Loan; (ii) the amount of any premium or sum in excess of the principal balance of the Loan paid by Purchaser to Seller; (iii) any servicing premium or other premium in excess of the principal balance of the Loan paid by Purchaser to Seller; (iv) the aggregate amount of any advances made by Purchaser on behalf of the mortgagor or to protect Purchaser's interest in the Loan or collateral, and interest thereon at the interest rate set forth in the Note; and (v) any attorneys' fees, legal expenses, court costs or other expenses which may have been incurred or expended in connection with said Loan and interest thereon at the interest rate set forth in the Note. Upon Seller's payment for such Loan, Purchaser will reassign and set over such Loan to Seller without recourse.

### B. REMEDY FOR FIRST PAYMENT DEFAULT

Notwithstanding any provision to the contrary, if borrower fails to make the first payment due to Purchaser within thirty (30) calendar days of the payment due date, regardless of whether such payment is subsequently paid by the borrower, Purchaser, at its sole and absolute discretion, shall have the right to have Seller repurchase said Loan(s) at the Buy-Back Price.

## VI. REMEDIES

### A. BREACH OF AGREEMENT AND REPURCHASE

(1) If Seller fails to comply in any material respect with any provision of this Agreement, Purchaser may, in addition to any other remedies available under law or equity, refuse to fund any Loans as to which Purchaser previously issued a Purchase Commitment or Conditional Approval.

(2) Seller shall indemnify and hold harmless, to the fullest extent permitted by law, Purchaser and its successors and assigns from and against, and shall reimburse the same with respect to, any and all liabilities, claims, actions, losses, damages, costs, and expenses, including reasonable attorneys' fees (each a "Claim") incurred by reason of or arising out of or in connection with (a) Seller's breach of any representation, warranty or covenant contained in this Agreement; (b) Seller's breach of any provision of this Agreement or failure to perform any obligation required hereunder; (c) any refusal by a private mortgage insurer to insure a Loan, or revocation of the insurance, or refusal to pay a claim under the insurance (provided such refusal is not the direct result of any action or inaction on the part of Purchaser); or (d) any Claim under a Loan as to which the borrower alleges any damage or loss as the result of any action or inaction on the part of Seller or Seller's agents, employees or representatives, or any violation by Seller of any federal, state or local statute, regulation or rule, or any failure to communicate information to borrower. Seller shall be obligated to indemnify Purchaser regardless of whether Purchaser reviewed, approved, or audited the Loan either prior to or after funding of the Loan.

(3) Without limiting the generality of the preceding Section VI.A.(2), Seller's indemnity obligation shall also extend to all demands on Purchaser by any third party, or liability of Purchaser to any third party, to indemnify as to, or to repurchase, a Loan sold by Purchaser to that third party or to one of that third party's predecessors, successors or assigns, and Seller shall upon written demand from Purchaser repurchase the Loan.

(4) Without limiting the generality of this Section VI, Purchaser shall be entitled to indemnity under this Section VI at such time as Purchaser incurs the liability to repurchase a Loan or to indemnify a third party as to a Loan, and Purchaser need not actually have incurred a financial loss in order to enforce Purchaser's indemnity rights. Purchaser shall have the right and standing to file an action in a court of competent jurisdiction or initiate arbitration to specifically enforce Seller's obligation to indemnify Purchaser.

(5) Without limiting the generality of this Section VI, as to any Loan which Purchaser, as a result of Seller's breach of this Agreement, is obligated to repurchase from another lender or secondary mortgage market investor (each an "Investor"), or as to which Purchaser is obligated to indemnify an Investor, Seller shall be obligated to indemnify Purchaser from and against, without limitation, any costs or expenses arising from or related to (a) the repurchase of the Loan from, or indemnification of, the Investor; (b) the purchase, from the Investor or at a foreclosure sale, of the property which served as security for the Loan (the "Foreclosed Property"); (c) the holding of the Loan or the Foreclosed Property; and (d) the marketing of the Loan or the Foreclosed Property. In addition, Seller shall be obligated to indemnify Purchaser from and against any loss incurred in connection with any sale or disposition of the Loan or the Property.

(6) Without limiting the generality of this Article VI, Seller's indemnity obligation as a result of Sellers breach shall include the obligation to repurchase from Purchaser any Loan upon written demand by Purchaser. The repurchase price to be paid by Seller for any Mortgage Loan shall be the Buy-Back Price.

(7) The right to require indemnity or repurchase under this Article VI does not limit, but is in addition to, all other rights and remedies available to Purchaser in law or equity.

### B. REMEDY FOR NON-DELIVERY OF DOCUMENTS.

Notwithstanding any provisions to the contrary in this Agreement, if Seller is required to deliver to Purchaser any document related to a purchased Loan and Seller fails to deliver such document in the proper form on the date or within the time period specified by the controlling section of the Guide, Purchaser shall notify Seller of the breach, and Seller shall have thirty (30) calendar days from the date of notice to cure the breach. If Seller has not cured the breach within the thirty (30) day cure period, Seller shall immediately repurchase the Loan upon Purchaser's demand or indemnify Purchaser pursuant to Section VI.A of this Agreement. The Buy-Back Price shall be determined in accordance with Section V.A. Any Loan returned by Purchaser pursuant to this paragraph shall be without recourse, representation or warranty.

### C. PREMIUM RECAPTURE

For a period of one (1) year following the date Purchaser purchases a Loan, Seller shall rebate to Purchaser a portion of the premium paid for the Loan paid off in full during such period as follows: one-twelfth (1/12) of the premium paid for each full or partial month remaining in the one-year period following the purchase date. Seller shall pay Purchaser such rebate within ten (10) calendar days after it receives written notice of full payoff from Purchaser. In the event the Loan provides for a legally enforceable prepayment penalty, Purchaser agrees to offset the amount of any prepayment penalty actually collected against any premium recapture payment due Purchaser from Seller under this Section.

## VII. NONSOLICITATION

For a period of three (3) years from the date Purchaser purchases a Loan, neither Seller nor any of its affiliates, employees, agents, contractors, or representatives shall directly or indirectly solicit any borrower under any Loan purchased by Purchaser under this Agreement. However, it is understood and agreed that solicitation for purposes of this paragraph shall not include promotions undertaken by Seller or any of its affiliates, employees, agents, contractors, or representatives which are directed to the general public at large, or segments thereof, provided that no segment shall consist primarily of the Loans, including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements.

## VIII. MISCELLANEOUS

### A. CONFIDENTIALITY

The parties agree to comply with all applicable federal, state and local laws, rules, regulations and ordinances governing or relating to privacy rights in connection with its performance under this Agreement, including without limitation, any and all non-public personal information of consumers and customers (collectively, the "Customer Information") it may receive hereunder, as defined under the Gramm-Leach-Bliley Act of 1999, Title V, Subtitle A, 15 U.S.C. § 6801 et seq., and in the current enabling regulations issued by the Federal Trade Commission ("FTC").

The parties agree that they (i) will maintain all Customer Information in accordance with the Act (ii) will not disclose Customer Information contrary to the provisions of the Act, and (iii) shall establish and maintain commercially reasonable controls to ensure the confidentiality of the Customer Information. Without limiting the foregoing, the parties hereby acknowledge that it has implemented a comprehensive written information security program which contains administrative, technical and physical safeguards which are appropriate to its size and complexity, the nature and scope of its activities, and the sensitivity of any Customer Information which it may receive. The primary objectives of such information security program shall be to (i) ensure the security and confidentiality of the

Customer Information, (ii) protect against any threats or hazards to the security and integrity of the Customer Information, and (iii) protect against any unauthorized access to or use of the Customer Information, and such program shall contain sufficient physical and other security measures as are necessary to accomplish said objectives.

### B  RELATIONSHIP

Nothing contained in this Agreement shall be deemed to create nor shall this Agreement be construed so as to create a joint venture, partnership, agency, or employment relationship between Purchaser and Seller. Seller shall conduct business under its own name and not in the name of Purchaser; Seller shall not represent that its office is an office or branch of Purchaser or in any other way connected with Purchaser. Seller shall have no authority to sign any documents on behalf of Purchaser. Seller shall be responsible for its overhead and operation costs, payroll costs, and all other costs.

### C.  AUDIT

Purchaser or its Agents reserve the right to audit and review Seller's books, records and procedures to determine that all applicable regulations are being complied with. Until this Agreement is terminated, Seller agrees to provide Purchaser its financial statements on an annual basis and within 90 days after the end of Seller's fiscal year.

### D.  INSURANCE

Seller agrees to maintain fidelity and errors and omissions insurance in amounts specified by Purchaser and to provide Purchaser copies of this coverage on an annual basis. The insurance carrier must maintain a B+ or better rating and also a financial size category of VI or better according to A.M. Best Company.

### E.  RELIANCE; SURVIVAL OF WARRANTIES

(1)  Seller acknowledges that Purchaser's purchase of each Loan is made in reliance upon the truth of every representation and warranty contained in this Agreement. Unless expressly waived in writing by Purchaser, the representations and warranties made hereunder shall survive the purchase of the Loan by Purchaser and Purchaser's subsequent sale thereof, and shall not be affected by any investigation made by or on behalf of Purchaser.

(2)  In the event Purchaser assigns any of its rights in Loans purchased hereunder, such assignee or subsequent assignees shall have the same rights as Purchaser with respect to Seller and this Agreement.

### F.  ASSIGNABILITY

Seller may not assign or transfer its duties or rights under this Agreement without the prior written consent of Purchaser. A change in the ownership, merger or consolidation of Seller shall be considered an assignment for purposes of this Agreement.

### G.  ENTIRE AGREEMENT

This Agreement constitutes the entire Agreement between the parties and no understanding or agreement relating hereto shall be valid unless in writing and signed by both parties.

### H.  RIGHT OF OFFSET

Amounts owed by Seller to Purchaser under this Agreement may, at Purchaser's option and in its sole discretion, be offset by Purchaser against any payments then or thereafter owed by Purchaser to Seller.

Further, if there is a breach of a representation, warranty or covenant by Seller, or of any provision of this Agreement, Purchaser may withhold any sums then due or owing Seller pending final resolution, settlement, or adjudication of claims made by Purchaser against Seller arising out of the breach.

I.  **PARTIAL INVALIDITY**

If any provision of this Agreement is held invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

J.  **FURTHER ASSURANCES**

Each party shall perform all further acts and execute and deliver all documents that may be reasonably necessary to carry out the transactions contemplated under this Agreement.

K.  **COUNTERPARTS**

This Agreement may be executed in any number of counterparts, each of which shall be an original; however, all such counterparts shall together constitute one and the same agreement.

L.  **HEADINGS**

The headings of the various sections of this Agreement have been inserted for convenience of reference only, and shall not be deemed to be a part of this Agreement.

M.  **GENDER**

Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular shall be held and construed to include the plural, and words in the plural shall be held and construed to include the singular, unless this Agreement or the context otherwise requires.

N.  **NOTICES**

All notices, requests, demands and other communications which are required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given, made, and received only: upon delivery, if personally delivered to a party; one business day after the date of dispatch, if by facsimile transmission, with electronic confirmation of receipt; one business day after deposit, if delivered by nationally recognized courier service offering guaranteed overnight delivery; or upon receipt if sent via certified mail, postage prepaid, return receipt requested, at the addresses noted at the beginning of this Agreement. Either party may change its address for receiving notice by giving fifteen (15) calendar days' advance written notice in the manner provided herein.

O.  **ATTORNEY FEES**

If either Seller or Purchaser initiates any action, proceeding, or arbitration regarding the subject matter of this Agreement, or to enforce or interpret this Agreement, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced), in addition to such other relief as may be awarded, shall be entitled to recover its reasonable attorneys' fees, expenses and costs of investigation actually incurred.

P.  **ARBITRATION**

Notwithstanding any provision to the contrary in this Agreement or the Guide, any claim or action arising out of or relating to this Agreement, including any claim or action contesting the validity of this arbitration provision or of the Agreement, will be settled by binding arbitration. Except as otherwise provided herein, the arbitration shall be conducted in accordance with the Commercial Arbitration Rules

of the American Arbitration Association, but without regard to any portions thereof which require administration by such association.

The party desiring arbitration shall serve notice upon the other party, together with designation of the first party's representative. If the person designated by the first party is acceptable to the second party as an arbitrator, the second party shall so notify the first party within ten (10) calendar days, and such representative shall serve as the sole arbitrator; if the person so designated is not acceptable to the second party, then the second party shall designate his or its own representative in a notice to the first party within the same ten-day period. The two representatives so named, if such is the case, shall within ten (10) calendar days thereafter appoint an arbitrator, and the arbitrator shall then proceed forthwith to hear and unilaterally determine the matter. If either party fails, within the time allowed herein, to appoint its representative, the representative named by the other party shall act as the sole arbitrator and unilaterally decide the matter. If the two representatives are unable to agree upon an arbitrator within the ten (10) days allowed herein, either party may at any time apply to the presiding judge of any court of competent jurisdiction for the appointment of an arbitrator, and the arbitrator shall proceed forthwith to hear and unilaterally determine the matter. In all events the arbitrator shall be a licensed attorney at law in the State of California with a minimum of ten years' experience in handling transactions of the kind, which are represented by this Agreement. The arbitrator shall be entitled to reasonable compensation at his or her usual professional rates.

The powers of the arbitrator shall be limited as set forth herein. The arbitrator shall make an award in writing that is consistent with the terms of this Agreement, and that includes a reasoned decision. In rendering any decision or award, the arbitrator shall determine the rights and obligations of the parties according to the substantive and procedural laws of the State of California. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute, or other matter(s) in question would be barred by the applicable statute of limitations, and the arbitrator shall reject any claim that is not based upon a timely filed demand. All of the provisions of Section 1283.05 of the California Code of Civil Procedure are hereby expressly made applicable to any arbitration conducted hereunder.

The powers of the arbitrator shall be limited as set forth in this Section VII.P. The parties acknowledge that this Agreement evidences a transaction involving interstate commerce. Except as specifically provided otherwise in this Section, the Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to this Section.

Q. **TERMINATION**

Either Purchaser or Seller may terminate this Agreement at any time by giving written notice to the other party, provided, however, that any such notice shall not affect any obligation hereunder which arose prior to the termination date.

R. **GOVERNING LAW**

This Agreement and the Guide shall be governed by and construed in accordance with the laws of the State of California. The provisions of this paragraph shall not affect the provisions of any Note, Security Instrument, or related documents or instruments, which cause the laws of the United States or any other state to be applicable. This Agreement and the Guide shall be interpreted fairly in accordance with their provisions and without regard to the drafting party.

CONTINUED ON NEXT PAGE

S.  **COURSE OF DEALING**

No course of dealing on the part of either party, nor any failure or delay by either party with respect to the exercise of any right, power, privilege, election or option shall operate as a waiver thereof. All rights, remedies and recourse shall be cumulative and the exercise or partial exercise of any such right, remedy or recourse shall not preclude the exercise of any other right, recourse, or remedy.

IN WITNESS WHEREOF, the parties have executed this Agreement by authorized officers.

PURCHASER:
New Century Mortgage Corporation


By: _____
Name:
Title:

**Address for Notice**
New Century Mortgage Corporation
18400 Von Karman Ave., Suite 1000
Irvine, CA  92612
Attention:  Bill McKay
(949)-797-5739
(949)-471-8144

SELLER:
_LOANLEADERS OF AMERICA, INC_

By: _[signature]_
Name: _Martin Foigelman_
Title: _President_

**Address for Notice**

_same_

Attn:
Tel:
Fax: