IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | Chapter 11 |
| **NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,**[1] | Case No. 07-10416 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: February 6, 2008 at 1:30 p.m. |
| | Re: Docket No. 3320 |

### DEBTORS' OBJECTION TO MOTION OF POSITIVE SOFTWARE SOLUTIONS, INC. AND EDWARD MANDEL FOR RELIEF FROM THE AUTOMATIC STAY CONCERNING 2007 SUIT

New Century Financial Corporation, a Maryland corporation, New Century TRS Holdings, Inc., a Delaware corporation, and their direct and indirect subsidiaries, each as debtor and debtor in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this Objection (the "Objection") to the Motion of Positive Software Solutions, Inc. and Edward Mandel (collectively, "PSSI") for Relief from the Automatic Stay Concerning the 2007 Suit (the "Motion"). In support of this Objection, the Debtors represent as follows:

### BACKGROUND

1. This Court is, unfortunately, aware of the long and tortured history of the proceedings between PSSI and the Debtors in PSSI's 2003 lawsuit/arbitration against the

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

Debtors (the "2003 Lawsuit"). A summary of the proceedings concerning the 2003 Lawsuit is contained in a separate objection that the Debtors are filing herewith (Dkt. 4751) to PSSI's renewed motion for relief from stay regarding the 2003 Lawsuit. That summary is incorporated herein by reference. Thus, what follows is only a summary of PSSI's August 20, 2007 lawsuit (the "2007 Lawsuit") against Susman Godfrey L.L.P. ("Susman Godfrey"), two of its partners and three former Debtor employees (two of whom were officers as well) (collectively, the "2007 Defendants").

2. The 2007 Lawsuit alleges that the 2007 Defendants <u>and the Debtors</u> conspired to commit fraud, perjury and withhold evidence during Susman Godfrey's representation of the Debtors during and after the 2003 Lawsuit.

3. The 2007 Lawsuit was filed only thirteen days after this Court denied PSSI's motion for stay relief on the 2003 Lawsuit (and sanctioned PSSI for violating the stay). Given that timing, the fact that the 2007 Lawsuit expressly seeks findings that the Debtors committed wrongs, and the fact that two 2007 Defendants were also defendants in the 2003 Lawsuit, the Debtors charged that the 2007 Lawsuit really was the 2003 Lawsuit in disguise. Thus, the Debtors immediately filed a *Motion for Additional Sanctions against Positive Software Solutions, Inc. for Further Violation of the Automatic Stay* [Dkt. 2566] (the "Further Stay Violation Motion").

4. The Court heard argument on the Further Stay Violation Motion, but reserved judgment. Because the Court indicated on the record that extending the automatic stay pursuant to Sections 105 and 362 possibly would be more appropriate relief, the Debtors filed *Debtors' Supplement to "Motion for Additional Sanctions Against Positive Software Solutions, Inc. for Further Violation of the Automatic Stay"* [Dkt. 3252] (the "Supplement"), clarifying that

they sought that relief in the alternative to sanctions. Because PSSI complained that Section 105 injunctions could only be obtained by complaint, the Debtors also filed, that same day, an adversary proceeding and a motion for a temporary restraining order (the "TRO Motion").

5. Importantly, the Supplement and the TRO Motion both featured two main reasons whey the stay should be extended: (a) various forms of discovery, if taken in the 2007 Lawsuit, would prejudice the Defendants (as explained in the Supplement and TRO Motion), and (b) any adverse judgment in the 2007 Lawsuit could be res judicata or collateral estoppel against the Debtors in the 2003 Lawsuit. As set forth below, neither reason is ripe at this juncture, so the Debtors have not pressed the Supplement and/or TRO Motion.

6. PSSI responded to the Supplement and the TRO Motion by filing, on October 18, 2007, the Motion. The Motion contends that the automatic stay does not apply, but nevertheless seeks stay relief (i) for all purposes, as a precaution, in case this Court disagrees and holds that the 2007 Lawsuit was an end run and did violate the stay, and (ii) to request and obtain discovery in the 2007 Lawsuit of documents or other materials previously or currently in the possession, custody or control of Susman Godfrey and other non-Debtor defendants, but which the Debtors have an interest in -- such as the Debtors' attorney-client privileged documents in Susman Godfrey's possession.

7. Thereafter, the parties determined to mediate their disputes and hold in abeyance all motions related to the 2007 Lawsuit. Unfortunately, the mediation failed.

8. While the parties prepared to mediate, two significant events occurred. First, all of the 2007 Defendants moved to dismiss. Because the United States District Court for the Northern District of Texas (the "Texas District Court") will decide those motions before putting the case on a trial calendar, there is no imminent risk of a final judgment against the 2007

Defendants that could be res judicata against the Debtors. Second, the Texas District Court entered a stay of all discovery pending adjudication of the motions to dismiss. See infra ¶ 14. Thus, while the Debtors' concerns about discovery in the 2007 Lawsuit remain, they are not currently ripe. Since both reasons for the Supplement and the TRO Motion currently are not ripe, the Debtors informed PSSI that they would not proceed at this time with any of the motions concerning the 2007 Lawsuit.

9. Inexplicably, PSSI nevertheless chose to tee up the Motion -- which in essence is a cross-motion to the Supplement and the TRO Motion -- for an immediate hearing. This while they know that the Debtors are trying to file a Plan. We can only assume that was the very reason for this wasteful exercise.

## ARGUMENT

10. Section 362(d)(1) permits the Court to lift or modify the stay only for "cause." What constitutes "cause" is decided on a case-by-case basis based upon "the totality of the circumstances in each particular case." In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997).

11. The movant carries the burden of proof that the requisite "cause" exists to lift the stay. Id. See also In re Pacor, Inc., 74 B.R. 20, 22 (E.D. Pa. 1987). Only then does the burden shift to the Debtors to rebut this showing. In re Pursuit Athletic Footwear, 193 B.R. 713, 718 (Bankr. D. Del. 1996); In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999).

12. Generally, courts in this District have considered three factors to determine "cause" under section 362(d)(1): (1) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits. In re Pursuit, 193

B.R. 713 at 718; Izzarelli v. Rexene Products Co. (In re Rexene Products Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992). Courts also consider the policies underlying the automatic stay, including giving debtors breathing space to focus on a plan. In re Cont'l Airlines, Inc., 152 B.R. 420, 426 (D. Del. 1993).

13. Here, the Court need never reach the three-part test because the matter simply is not ripe. See Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975) (a question of ripeness focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention…"). If the Court nevertheless applies the three-part test here, it favors denying PSSI's Motion without prejudice.

I. **Relief from Stay to Obtain Discovery.**

14. On these facts, the balancing of the hardships is the only important factor relevant in determining whether "cause" exists to lift the automatic stay to allow PSSI to seek discovery. Simply put, PSSI will suffer no hardship from the continued maintenance of the automatic stay because the Texas District Court has entered it own stay of discovery in the 2007 Lawsuit pending its decision on the 2007 Defendants' motions to dismiss. See *Order Granting Defendants' Motion to Stay All Discovery* dated December 5, 2007 in Positive Software Solutions, Inc. v. Susman Godfrey LLP, et al., Case No. 3:07-cv-1422, United States District Court for the Northern District of Texas (the "District Court Stay Order"). A copy of the District Court Stay Order is attached hereto as Exhibit A. Thus, granting relief from the automatic stay will not enable PSSI to take discovery; discovery will continue to be subject to the non-bankruptcy stay imposed by the District Court Stay Order. Because PSSI is suffering no hardship, the balance of hardships favors the Debtors; certainly PSSI has not met its burden of proof of the nature and extent of its hardship. See Wilson, 116 F.3d 87 at 90; Pacor, 74 B.R. 20

at 22.

15. The Debtors therefore request that the Motion be denied without prejudice to PSSI's ability to reassert it if the Texas District Court stay is lifted. Given the Debtors' attempt to simultaneously (a) file a Plan and Disclosure Statement for the benefit of approximately seven thousand creditors and (b) provide a workable mechanism to liquidate PSSI's four $580 million proofs of claims, the Debtors do not believe it is appropriate to expend estate resources at this juncture to brief the prejudice they will ultimately face if the Texas District Court lifts its own stay and this Court were to do the same. Instead, the Debtors merely incorporate by reference their arguments on that point in the TRO Motion and Supplement and request the right to further brief the point once this matter becomes ripe, if ever.

## II. Relief from Stay to Continue the Prosecution of the 2007 Lawsuit.

16. Here again, in determining "cause," PSSI seeks an advisory opinion on a matter that is not ripe. While contending that the automatic stay does <u>not</u> bar the 2007 Lawsuit, PSSI nevertheless requests stay relief as a precaution. Of course, the lack of ruling over the last four months never stopped PSSI from vigorously prosecuting the 2007 Lawsuit.

17. Ultimately, when it decides the Further Stay Violation Motion, this Court will either hold that PSSI violated the automatic stay or that it did not. However, due to other, more pressing needs, the Debtors are not currently pressing for a ruling on the Further Stay Violation Motion. Furthermore, the Debtors hereby represent that they will not use any additional activity in the 2007 Lawsuit from now until the Court decides the further stay violation motion as grounds for yet further sanctions. Thus, this cat is already out of the bag, and PSSI can offer no cognizable reason why the Motion should be considered at this time. Accordingly, PSSI has not met its burden of establishing "cause" for relief from the automatic

6

stay.

18. Keeping the automatic stay in place is consistent with one of the main policy goals of the automatic stay -- granting the Debtors the respite they need to effectively navigate the Plan Process. Accordingly, the Motion should be denied without prejudice.

## CONCLUSION

The Debtors respectfully request that the Motion be denied without prejudice, and that the Court grant such other and further relief as it just and proper.

Dated: January 30, 2008
Wilmington, Delaware

Respectfully submitted,

*/s/ Russell C. Silberglied*

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Russell C. Silberglied (No. 3462)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Victoria Newmark
Emily R. Culler
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION