IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | CASE NO. 07-10416-KJC |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC., | § | Chapter 11 |
| ET. AL., | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | Related to Docket No. 3252 |
| | § | |

**OBJECTION OF POSITIVE SOFTWARE SOLUTIONS, INC., TO
DEBTORS' SUPPLEMENT TO MOTION FOR ADDITIONAL SANCTIONS
REGARDING LITIGATION AGAINST SUSMAN GODFREY, LLP**

TO THE HONORABLE KEVIN J. CAREY, U.S. BANKRUPTCY JUDGE:

Positive Software Solutions, Inc. ("Positive Software"), a party-in-interest in this jointly administered bankruptcy case of New Century TRS Holdings, Inc. and its affiliated debtors-in-possession (respectively, the "Bankruptcy Case" and the "Debtors"), objects to the *Debtors' Supplement to "Motion for Additional Sanctions Against Positive Software Solutions, Inc. for Further Violations of the Automatic Stay"* [Docket No. 3252] (the "105(a) Motion"). Based upon the reasons more fully set forth below, the relief requested by the Debtors should be denied.

## I. SYNOPSIS[1]

1.  The Debtors essentially seek to extend the scope of the automatic stay to enjoin Positive Software from continuing to prosecute its claims against the non-debtor defendants to the 2007 Litigation. Injunctive relief barring the continuation of a lawsuit against independently liable non-debtor parties is only granted in "unusual circumstances," generally where the

---

[1] Unless otherwise defined, capitalized terms shall have the same meaning as defined in the *Amended Objection of Positive Software Solutions, Inc., to Debtors' Motion for Additional Sanctions* [Docket No. 2656] (the "Susman Stay Objection"). For purposes of consistency with previously filed papers by the parties, the term "Susman Action" (referring to Positive Software's lawsuit against Susman Godfrey, LLP, et al.) is now referenced as the "2007 Litigation" and the term "District Court Action" (referring to Positive

continuation of that litigation is likely to cause material disruption to a debtor's attempt to reorganize. Here, the Debtors themselves have stated that they: (i) have sold the bulk of the Debtors' operations; (ii) have resolved various material claims that might interfere with the plan process; and (iii) are on the verge of proposing a reorganization plan. Thus, there is simply no plausible argument that the 2007 Litigation will materially disrupt the Debtors' reorganization (or liquidation) efforts. Therefore, the 105(a) Motion should be denied.

## II.   BACKGROUND

2.   The 2007 Litigation was commenced by Positive Software to seek redress against Susman Godfrey, LLP ("Susman Godfrey"), two of Susman Godfrey's partners and three former officers or directors of the Debtors. In that litigation, Positive Software has asserted claims for fraud and other tortuous conduct committed *after* Positive Software had filed the 2003 Litigation. Soon after Positive Software brought the 2007 Litigation, the Debtors filed the Susman Stay Motion [Docket No. 2566], claiming that the 2007 Litigation was an end-run around the automatic stay barring Positive Software from continuing to affirmative pursue its claims in the 2003 Litigation. In response, Positive Software filed Susman Stay Objection. Positive Software argued that: (i) the automatic stay does not bar the 2007 Litigation because that litigation was not against the Debtors or property of the Debtors' estates; (ii) the Debtors failed to request affirmative injunctive relief; and (iii) even if the Debtors had requested affirmative injunctive relief, they did not demonstrate that such extraordinary relief is warranted.

3.   At hearing on September 11, 2007, this Bankruptcy Court suggested (without ruling) that Positive Software's actions in bringing the 2007 Litigation did *not* violate the automatic stay. In part, the Court's concern regarding possible collateral estoppel implications

---

Software's lawsuit against certain of the Debtors and former officers and directors) is now referenced as the "2003 Litigation".

of the 2007 Litigation were addressed when Positive Software stipulated on the record that it would not in any way use findings made in the 2007 Litigation in the 2003 Litigation, including under the doctrine of collateral estoppel or similar theories. Positive Software remains willing to abide by the terms of its stipulation.

4.  In accordance with this court's directive, Positive Software attempted to reach a written resolution with the Debtors regarding the Debtors' ostensible collateral estoppel concerns. Those negotiations did not produce a resolution. The Debtors then filed the 105(a) Motion (in the guise of a supplement to the Susman Stay Motion). The parties, however, later agreed to attempt to resolve all of the claims between them, and engaged in a one and one-half day long mediation in early January 2008. That mediation session and subsequent negotiations, unfortunately, failed to produce any settlement between the parties. Accordingly, on January 9, 2008, Positive Software filed a second motion for relief from the automatic stay [Docket No. 4354] (the "Second Stay Motion"), seeking relief from the automatic stay to re-commence the 2003 Litigation. Positive Software has also renewed its pending motion for relief from the automatic stay with respect to the 2007 Litigation.[2]

5.  As noted in the Second Stay Motion, the Debtors assert that they have made significant progress in administering and liquidating their estates. Although they have yet to file a proposed plan, the Debtors claim that they are on the verge of doing so.[3]

6.  As discussed in the Second Stay Motion, the Texas District Court has initiated an ancillary proceeding in which it has ordered the two Susman Godfrey partners heading the

---

[2]  *See* Motion of Positive Software Solutions, Inc., and Edward Mandel for an Order Granting Relief from the Automatic Stay [Docket No. 3320].

[3]  *See* Fourth Motion of the Debtors and Debtors in Possession for an Order Pursuant to Section 1121(d) of the Bankruptcy Code for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 4720] at 12-13.

WM1A 708135v1 01/30/08

representation of the Debtor-defendants in the 2003 Litigation, Barry C. Barnett ("Barnett") and Ophelia F. Camiña ("Camiña"), to show cause why they should not be subject to disciplinary action as a consequence of their wrongful conduct.[4] In that action, Positive Software has obtained authority to file and has filed an amicus brief (the "Amicus Brief") to assist the Texas District Court in determining the nature of Barnett and Camiña's wrongful conduct and the appropriate disciplinary sanctions for that conduct. A true and correct copy of the Amicus Brief, along with a related errata filing, is attached hereto as Exhibit "A".

7.   Among other things, the Amicus Brief details various actions by Barnett and Camiña that gave rise to Positive Software's claims in the 2007 Litigation, including:

- misrepresenting to the Texas District Court that Positive Software's LoanForce software had been removed from the Debtors' servers and failing to disclose that it had remained and reinstalled on various servers (including on a development server);

- knowingly withholding the original November 2000 version of LoanForce, which was critically needed by Positive Software to demonstrate that the Debtors' proprietary loan origination software, in fact, was a counterfeit copy of what it had originally received from Positive Software;

- directing the destruction of material electronic evidence; and

- misrepresenting the full extent to which the Debtor-defendants violated the Texas District Court's prohibitions barring it from using LoanForce and requiring it to return all copies of that software.

---

[4]   That proceeding is docketed in the Texas District Court as Misc. Action No. 3:07-MC-93-N.

## III. ARGUMENT

8. As discussed in the Susman Stay Objection, injunctive relief extending the automatic stay is an extraordinary form of relief.[5] The real touchstone in determining whether such relief is appropriate is whether the continued litigation of claims is likely to result in the material disruption of the debtor's reorganization efforts. Thus, the automatic stay may *not* be extended to protect a non-debtor party from litigation claims upon which the non-debtor party may be severally liable if the debtor cannot demonstrate that the litigation is likely to result in the material disruption of a debtor's reorganization efforts.[6] The Debtors have failed to articulate, both in the Susman Stay Motion and in the 105(a) Motion, how their efforts to "reorganize" will be materially disrupted unless the 2007 Litigation is enjoined from proceeding.[7]

9. In fact, the Debtors do not allege that the continuation of the 2007 Litigation will disrupt their reorganization efforts. Certain of the Debtors' arguments boil down to the fact that the Debtors may be inconvenienced by the continuation of the 2007 Litigation because they may have to rely on the defendants to the 2007 Litigation to protect their interests or intervene if they conclude that their interests are not being adequately protected. Thus, at worst, the Debtors may be inconvenienced by the 2007 Litigation. But such inconvenience does not amount to a material disruption warranting affirmative injunctive relief. And because the Debtors are on the cusp of presenting a joint bankruptcy plan (with the Official Committee of Unsecured Creditors), there appears to be no plausible way that proceeding with the 2007 Litigation (or the 2003 Litigation) could materially disrupt the Debtors' reorganization efforts.

---

[5] Positive Software incorporates the legal argument it made in the Susman Stay Objection.

[6] *See* Susman Stay Objection at 14-16.

[7] Presumably, if this Court grants the Second Stay Motion and permits the 2003 Litigation to proceed, many of the Debtors arguments will be moot (among others, the issues involving collateral estoppel, privilege and indemnification).

10. The Debtors' other arguments are merely speculative and, in regard to the collateral estoppel issue, wholly implausible. The Debtors' arguments, separately and together, fail to demonstrate that there is a likelihood that the Debtors' reorganization (or liquidation) efforts would be compromised by the continuation of the 2007 Litigation.

11. The Debtors argue that permitting the 2007 Litigation to go forward would unduly prejudice the Debtors because: (i) the Debtors might be collaterally estopped from contesting in the 2003 Litigation adverse findings of fact made in the 2007 Litigation; (ii) the Debtors would not, as non-parties, participate in proceedings involving whether discovery privileges have been compromised under the crime-fraud exception; (iii) Positive Software would take third-party discovery of the Debtors (after obtaining relief from the stay, which Positive Software has requested); and (iv) claims against the Debtors' former directors and officers might create indemnification claims against the Debtors and/or diminish insurance policy coverage.[8]

12. First, regarding the collateral estoppel argument, Positive Software has already stipulated that it will not seek to use factual findings made in the 2007 Litigation against the Debtors in the 2003 Litigation. The Debtors posit that even with such a stipulation, they are not fully protected. There is no rational basis for the Debtors' concern. Of course, if the Debtors are truly (albeit, irrationally) concerned with possible collateral estoppel issues, they are free to seek to intervene in the 2007 Litigation and participate in matters pertaining to their interests.

13. Second, regarding the Debtors' supposed inability to participate in proceedings involving whether the crime-fraud exception requires the production of allegedly privileged

---

[8] The Debtors also argue that they will be put at a disadvantage if their trial counsel in the 2003 Litigation remains subject to suit by Positive Software. It is telling that with the Texas District Court's initiation of a disciplinary action against Barnett and Camiña, the Debtors have retained the Haynes & Boone law firm, formerly the Debtors' special contempt counsel, to represent them in connection with the 2003 Litigation.

documents and materials, the Debtors ignore the fact that Susman Godfrey and the other defendants to the 2007 Litigation will have every incentive to contest the production of those items and to otherwise protect any claimed privilege. Positive Software has also offered that it will not use allegedly privileged materials against the Debtors in the 2003 Litigation unless the Texas District Court in the 2003 Litigation finds for Positive Software on the crime-fraud exception. If that stipulation is not sufficient and the Debtors actually conclude that their interests will not be adequately protected by the defendants to the 2007 Litigation, then the Debtors may always seek to intervene in the 2007 Litigation.

14. Third, the fact that the Debtors may be subject to discovery requests in the 2007 Litigation is absolutely no basis for staying the 2007 Litigation. There is absolutely no evidence that reasonable discovery taken by Positive Software will materially disrupt the Debtors' reorganization efforts. Contrary to the Debtors' contention, it is in the interest of justice that the stay be modified to permit Positive Software to take reasonable third-party discovery of the Debtors.

15. Fourth, and finally, whether the 2007 Litigation proceeds now or sometime in the future, the directors and officers who are or may be named as defendants in that action already have indemnification claims against the Debtors. What the Debtors actually seek is to forestall the liquidation of those claims (to the extent that such claims have been properly preserved by the timely filing of a proof of claim). Furthermore, unlike the cases cited by the Debtors, the 2007 Litigation is not a shareholder or similar class-action suit directed against the debtor's current management and is therefore not the type of litigation that would likely cause material disruption to a debtor's reorganization efforts. *See In re Continental*, 177 B.R. 475 (D. Del 1993) (shareholder class action).

WM1A 708135v1 01/30/08

16. And if the Debtors are truly concerned that the available coverage under their directors and officers' insurance policies may be diminished, the Debtors may seek to enjoin their insurers from paying out any policy proceeds at this time. (To the best of Positive Software's knowledge, however, the Debtors' insurers are *not* tendering any coverage on behalf of the former directors and officers named as defendants in the 2003 Litigation and the 2007 Litigation.)[9]

## IV. CONCLUSION

17. The Debtors have consistently sought to delay Positive Software's litigation efforts, first with the 2003 Litigation and now with the 2007 Litigation. The legal adage that "justice delayed is justice denied" is certainly true in this case. At this time, the Debtors are fully capable of addressing issues relating to the 2007 Litigation (as well as the 2003 Litigation). Accordingly, there are no grounds for denying Positive Software its right to be heard on its claims against Susman Godfrey and the other defendants to the 2007 Litigation.

18. Therefore, Positive Software respectfully requests that the Court deny the 105(a) Motion and grant Positive Software such other and further relief to which it may be justly entitled.

---

[9] The Debtors' indemnification and insurance arguments are not applicable to the claims asserted against Susman Godfrey, Barnett or Camiña. Thus, any ruling extending the automatic stay premised on those issues should be limited to the former director and officer defendants.

Respectfully submitted,

Dated: January 30, 2008
      Wilmington, Delaware

FOX ROTHSCHILD LLP

By: /s/ Daniel K. Astin
Daniel K. Astin, Esquire (Del. No. 4068)
Anthony M. Saccullo, Esquire (Del. No. 4141)
Citizens Bank Center, Suite 1300
919 N. Market Street, P.O. Box 2323
Wilmington, Delaware 19899-2323
Tel (302) 654-7444/Fax (302) 656-892
dastin@foxrothschild.com
asaccullo@foxrothschild.com

-and-

Mark H. Ralston, Esq.
Texas Bar No. 16489460
THE RALSTON LAW FIRM
2603 Oak Lawn Avenue
Suite 230, LB 2
Dallas, Texas 75219-9109
Telephone: (214) 295-6416
ralstonlaw@gmail.com

Counsel to Positive Software Solutions, Inc.

- 9 -