IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| BARRY BARNETT and | § | |
| OPHELIA F. CAMIÑA, | § | Misc. Action No. 3:07-MC-93-N |
| | § | |
| Respondents. | § | |

---

## AMICUS BRIEF
## OF POSITIVE SOFTWARE SOLUTIONS, INC. AND EDWARD MANDEL

---

*filed by*

Michael W. Shore
Alfonso Garcia Chan
Sherry L. Talton
Shore Chan Bragalone LLP
325 North Saint Paul Street, Suite 4450
Dallas, Texas 75201

Attorneys for Amici Curiae Positive Software Solutions, Inc. and Edward Mandel

## <u>TABLE OF CONTENTS</u>

I.    RESPONDENTS KNOWINGLY CONCEALED THAT NEW CENTURY REINSTALLED LOANFORCE CONTRARY TO PRIOR REPRESENTATIONS. .................................................................................................. 3

II.   RESPONDENTS KNOWINGLY WITHHELD THE NOVEMBER 2000 VERSION OF LOANFORCE ........................................................................... 5

    A.   The November 2000 Version of LoanForce . ........................................ 6

    B.   Positive Software's Requests for the Earliest Version of LoanForce .................. 8

    C.   Respondents' Pattern of Destroying Crucial Evidence ........................ 11

        (1)   Respondents Knew That Deleting Relevant Information From New Century's Servers Was Unauthorized and Improper................................ 12

        (2)   Respondents Unilaterally Decided to Delete Evidence ......................... 15

        (3)   Part of the Destroyed Evidence Includes Development of Derived Software and Historical Logs.................................................... 16

III.  RESPONDENTS KNOWINGLY UNDERSTATED NEW CENTURY'S ACTUAL SUBSEQUENT USE OF LOANFORCE ....................................... 19

IV.  RESPONDENTS MISREPRESENTED THAT NEW CENTURY WOULD STOP USING LOANFORCE AND DELETE OR RETURN ALL LOANFORCE SOFTWARE ....................................................................................... 20

V.   NEW CENTURY'S FRAUD CLAIMS AGAINST POSITIVE SOFTWARE .............. 23

VI.  LEGAL STANDARDS GOVERNING ATTORNEY DISCIPLINE ............................ 24

VII. CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

## CASES:

*In Re Cash Media Sys., Inc.,* 326 B.R. 655 (Bankr. S.D. Tex. 2005) ............................................. 1

*Dondi Properties Corp. v. Commerce Sav. and Loan Ass'n,* 121 F.R.D. 284, (N.D. Tex. 1988) (en banc) ................................................................................................................. 25

*Dunn & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.,* 307 F.3d 197 (3d Cir. 2002)......................................................................................................... 17

*Liu v. Price Waterhouse L.L.P.,* 302 F.3d 749 (7th Cir. 2002).................................................... 17

*Midway Mfg. Co. v. Arctic Int'l, Inc.,* 704 F.2d 1009 (7th Cir. 1983) *aff'd,* 464 U.S. 823 (1983)................................................................................................................... 17

*Positive Software Solutions, Inc. v. New Century Mortgage, Inc.,* 337 F. Supp. 2d 862 (N.D. Tex. 2004), *rev'd on other grounds,* 476 F.3d 278 (5th Cir.) (en banc), *cert. denied,* 127 S. Ct. 2942 (2007) ...................................................... 1, 2, 3, 5, 6, 19, 20, 21, 22, 23

*Positive Software Solutions, Inc., et al., v. Susman Godfrey, L.L.P., et al.,* No. 3:07-CV-1422 (N.D. Tex. filed Aug. 20, 2007) ................................................................. 23

*Thompson v. City of Corsicana Housing Authority,* 57 S.W.3d 547 (Tex. App. -- Waco 2001, no pet.) ................................................................................................... 1

## RULES AND STATUTES:

Local Civil Rule 83.8(b) and (e) ................................................................................................. 12

Local Criminal Rules 57.8(b) and (e) ......................................................................................... 13

Texas Disciplinary Rule of Professional Conduct 3.03(a)(2) and (b) .......................................... 5

Texas Disciplinary Rule of Professional Conduct 3.04(a) (1990) .............................................. 13

17 U.S.C. § 106 .......................................................................................................................... 17

17 U.S.C. § 1201 ........................................................................................................................ 18

17 U.S.C. §1203(c)(4) ................................................................................................................ 18

## OTHER:

Fitzwater, Hon. Sidney A., *The Lawyer as a Professional: Toward a Renaissance of Professionalism in Trial Advocacy,* 20 TEX. TECH L. REV. 787 (1989) ................................... 1

Hon. David C. Godbey and Hon. Barbara M.G. Lynn, *Syllabus*, Course No. 8273: Ethical Dilemmas in Legal Practice, SMU Dedman School of Law (Fall 2007) ................................. 1

TO THE HONORABLE JUDGE DAVID C. GODBEY:

Amici Curiae Positive Software Solutions, Inc. ("Positive Software") and Edward Mandel file this Amicus Brief to aid the Court in deciding in this proceeding whether the Respondents met their obligations to the Court, and the legal system as a whole, during the underlying litigation. In doing so, the Amicus Brief and its Appendix seek to provide only objectively verifiable evidence that bears significantly on the veracity of Respondents Barry Barnett's ("Barnett") and Ophelia Camiña's ("Camiña") declarations.

Trial lawyers are "officers of the court." The role carries a significant responsibility, as the courts rely extensively on trial lawyers to prevent fraudulent litigation conduct.[1] The duty of candor goes beyond merely following the rules; without it, our legal system could not function.[2] Absent an ability to trust that the representations of trial counsel are grounded in objectively verifiable facts, our system of litigation would degenerate into camps of lawyers distrustful of one another and fearful that unilateral candor to the Court would create a disadvantage against an opponent not constrained by the truth. The conduct of Respondents would become the *de facto* standard of conduct, resulting in the further loss of public trust and confidence in the legal system.

In *Positive Software Solutions, Inc. v. New Century Mortgage, Inc.*, 337 F. Supp. 2d 862, 865-70 (N.D. Tex. 2004), *rev'd on other grounds*, 476 F.3d 278 (5th Cir.) (en banc), *cert. denied*, 127 S. Ct. 2942 (2007) (the "Underlying Case"), the Court identified a pattern of attorney misconduct:

---

[1] *See Thompson v. City of Corsicana Housing Authority*, 57 S.W.3d 547, 558 (Tex. App. – Waco 2001, no pet.) (sole limit on parties' ability to use "sham" affidavits to defeat summary judgment motions is lawyers' duty to make only honest and candid representations).

[2] *In re Cash Media Sys., Inc.*, 326 B.R. 655, 671 (Bankr. S.D. Tex. 2005). *See also* Fitzwater, Hon. Sidney A., *The Lawyer as a Professional: Toward a Renaissance of Professionalism in Trial Advocacy*, 20 TEX. TECH L. REV. 787 (1989), *cited by* Hon. David C. Godbey and Hon. Barbara M.G. Lynn, *Syllabus*, Course No. 8273: Ethical Dilemmas in Legal Practice, SMU Dedman School of Law (Fall 2007).

(1)     Respondents knowingly concealed that New Century reinstalled LoanForce contrary to prior representations;[3]

(2)     Respondents knowingly withheld the November 2000 version of LoanForce;[4]

(3)     Respondents knowingly understated New Century's actual subsequent use of LoanForce;[5] and

(4)     Respondents misrepresented that New Century would stop using LoanForce and would delete or return all LoanForce software,[6]

In response to the October 5, 2007 Show Cause Order, Barnett and Camiña each submitted declarations attempting to explain and justify the specific misconduct identified by the Court's Show Cause Order. As shown below, contrary to their declarations, there is ample proof in the record demonstrating serious and pervasive attorney misconduct beyond what is currently known to the Court.

This disciplinary proceeding arises from Respondents' conduct in the Underlying Case which involves the copyrighted software product known as LoanForce.[7] LoanForce was not merely incidental or tangentially relevant to the underlying litigation, but instead formed the basis of every legal claim. Critical issues included the history of New Century's unauthorized use of LoanForce, whether LoanForce was copied to create later versions of loan origination software, whether New Century continued to use LoanForce in contravention of the Court's preliminary injunction, and whether all versions of LoanForce SQL database code, including the earliest version, had been fully preserved

---

[3] *Positive Software*, 337 F. Supp. at 869 n. 6.
[4] *Id.* at 869-70.
[5] *Id.* at 868.
[6] *Id.* at 867-68.
[7] LoanForce was a suite of software that included application modules, database modules, and other components. The primary component at issue in the Underlying Case were the SQL database structures embodied in computer software scripts.

and produced for comparison to the accused programs.  Each point addressed below demonstrates how the conduct of Respondents directly undermined the fair resolution of these important issues.

## I.
### RESPONDENTS KNOWINGLY CONCEALED THAT NEW CENTURY REINSTALLED LOANFORCE CONTRARY TO PRIOR REPRESENTATIONS

In the Underlying Case, the Court determined that "the subsequent reinstallation of the backups was inconsistent with New Century's [Barnett's] representation that it had purged its computers of LoanForce."[8]

In paragraphs 32-42 of his declaration, Barnett claims ignorance and contends that "when the restoration process got underway, I was not supervising it or even aware of it." Barnett's claimed ignorance is at odds with his testimony to the Court during the August 12, 2004 hearing.  During that hearing, Barnett never claimed to be ignorant of New Century's reinstallations, even after the Court asked "Do you think Mr. Norment's subsequent use of the restored databases is consistent with the representations you made in your [January 16, 2004] letter?"[9]  Indeed, Barnett in August 2004 actually defended New Century's reinstallations and indicated that he maintained sufficient knowledge of such activities to report to the Court "what we said we would do and what had been done."[10]  Thus, now faced with disciplinary action, Barnett in his declaration (originally filed under seal) contradicts his own prior admissions during the Underlying Case that he was fully aware of the reinstallation of the enjoined software.

In direct contrast to Barnett's claims of ignorance, Camiña contends in paragraphs 73 and 88 of her declaration that New Century's reinstallations were justified because

---

[8] *Id.* at 868, n. 6 (emphasis omitted and internal citations omitted).
[9] Hr'g Tr. at 119:13-15, Aug. 12, 2004 [Docket No. 369], attached hereto at App. 0085-0093.
[10] *Id.* at 121:3.

they were done with Positive Software's full knowledge and for litigation purposes only. Such contentions are false and unsupported by the record. Camiña never informed Positive Software of New Century's reinstallation plans. Camiña's declaration fails to cite to any correspondence on the subject to Positive Software's counsel. Indeed, Camiña's allegation that opposing counsel knew all seems even more implausible when juxtaposed against Barnett's allegation that he knew nothing. Moreover, Camiña's claim that New Century's reinstallation was done "for litigation purposes only" is belied by the undisputed fact that LoanForce resided on a New Century Retail IT server, which was accessible to New Century's database programmers and architects throughout the litigation.[11] To this day, neither Respondent has explained how it was consistent to both represent to the Court that LoanForce had been purged (which itself proved false) and at the same time not inform either the Court or Positive Software of the fact that LoanForce was later reinstalled on New Century's computer system.[12] Even if one were to believe Barnett's head-in-the-sand denials that he was some how unaware of the reinstallation of LoanForce, it was undisputed that Barnett and Camiña never corrected their prior

---

[11] *See, infra*, discussion in Section IV regarding the Nitrogen server.

[12] In fact, the record now discloses that reinstallation represents only one example of Respondents' knowing failure to ensure compliance with the Court's orders. As confirmed by an email from Norment to Camiña, Norment actually disclosed to Respondents that the November 2000 version of LoanForce had not been purged, but always resided on the Nitrogen development server where it was accessible to New Century's programmers. *See* E-mail correspondence between and among John Norment, Ophelia Camiña, Mark Malavos and Barry Barnett, collectively counsel for New Century (Dec. 22, 2003), attached hereto at App. at 0247-0250. A copy of the forensic image of computer files produced by Haynes & Boone, LLP during the contempt proceedings is provided to the Court. *See, e.g.*, hard drive produced by Haynes & Boone LLP during the contempt proceedings in the Underlying Case, attached hereto at App. at 0382; *see also* photocopies of hard drives containing November 2000 SQL scripts for LoanForce, attached hereto at App. at 0331-0336. That image has numerous files from the Nitrogen development server that include at least three copies of the November 9, 2000 LoanForce SQL scripts. To locate these scripts on the Nitrogen server, an investigator merely needed to search for the term "LoanForce" in the file names.

representation to the Court that their client had purged LoanForce from its computers, despite many opportunities to do so.

Courts burdened with busy dockets simply do not have the time or resources to independently confirm the veracity of every attorney's representations. Barnett used his credibility as an officer of the court to report that New Century had purged LoanForce from its computers under counsel's supervision. But after it was revealed that his report was false, Barnett now attempts to divorce himself from his previous statements and disavow responsibility. Courts rely on the truthfulness and candor of the advocates that appear before them, and expect that if attorneys—as officers of the court—may be trusted to abide by their assurances, both direct and implied. Attorneys are under an obligation to ensure that their assurances are truthful, or to, at a minimum, qualify their representations by stating that they are making them clearly based solely upon information from unverified information or speculation. Barnett did neither. The Court under these circumstances correctly found that Respondents' conduct "is wholly inconsistent with a lawyer's duty of candor toward the Court" and in violation of Texas Disciplinary Rule of Professional Conduct 3.03(a)(2) and (b).[13]

## II.
## RESPONDENTS KNOWINGLY WITHHELD THE NOVEMBER 2000 VERSION OF LOANFORCE

In the Underlying Case opinion, the Court found that "Norment advised New Century's co-counsel of the discovery of the November 2000 version in e-mails in December 2003, approximately a month before the arbitration and during the same period Positive Software was repeatedly requesting production of the earliest available version. Amazingly, New Century's co-counsel nonetheless failed to produce the script for the

---

[13] *Positive Software*, 337 F. Supp. 2d at n. 6.

5

original version of LoanForce."[14]   Importantly, Norment's communication does not

indicate that the November of 2000 version of LoanForce was "restored" in support of

litigation, but that it was discovered.   This indicates that the complete purging of

LoanForce from New Century's servers never took place as represented; otherwise, the

program could not have been found by—and would not have been accessible to—New

Century's Chief Technology Officer.   While Respondents' declarations attempt to justify

their failure to produce the November 9, 2000 version of LoanForce, the evidence can be

explained by only two possibilities: either Respondents never searched New Century's

software development server, or they located it and suppressed its existence.   As

demonstrated below, Respondents' alternative explanation is not credible.

A.    **THE NOVEMBER 2000 VERSION OF LOANFORCE**

In paragraphs 52 and 53 of his declaration, Barnett contends that he was justified

in not producing the earliest version of LoanForce because Positive Software already

possessed the November 2000 version:

> New Century asked PSS to produce a copy of the original version of the
> LoanForce software.  On December 4, 2003, more than two weeks prior to
> our discovery of the November 2000 code, PSS produced to us a
> November 2000 version of LoanForce (albeit dated November 26, not
> November 9) in response to our requests, representing it to be software "as
> provided" to NC.
> …
> For reasons only it can only answer, PSS chose not to introduce its own
> copy of November 2000 software, which it listed as Exhibit R-651, into
> the arbitration record.  I can surmise only that PSS took its approach
> because the November 2000 software was neither registered software nor
> the accused software and was therefore immaterial.

Barnett's entire argument depends on his claim that arbitration Exhibit R-651 is

the version of LoanForce that Positive Software provided to New Century in November

2000.  This claim is false.  And although Barnett extensively relies on Exhibit R-651, his

---

[14] *Id.* at 870.

declaration does not include a copy of the critical exhibit. Why not? Because, as demonstrated below, Positive Software never "represented" that Exhibit R-651 is a version of the LoanForce SQL database structure scripts at issue, and Positive Software *never* represented it to be.

Attached in the appendix hereto are (1) an exact copy of Exhibit R-651, (2) print-outs of the file directories of Exhibit R-651, and (3) a declaration from Mr. Mandel authenticating and explaining the technical content of Exhibit R-651 and the file directory print-outs.[15] Also provided is the November 9, 2000 version of the LoanForce SQL database structure scripts never produced. As confirmed by Mr. Mandel's declaration, Exhibit R-651 is a compact disc ("CD") consisting of seven subfolders titled "122700," "061501," "072201," "081701," "083101," "091201," and "090401."[16] Each subfolder corresponds to a dated version of a LoanForce administration module and not the LoanForce SQL database structure scripts.[17]

As confirmed by Mr. Mandel, the files in each subfolder (none of which are dated November 9, 2000, or even November 26, 2000, as Barnett claims) consist exclusively of an administration module used merely for setting up, testing, and debugging the LoanForce application. This administration module does not constitute the LoanForce application itself or the LoanForce database at issue in the litigation.[18] None of the files on Exhibit R-651 are the copyrighted LoanForce SQL database structure scripts that were the subject of Positive Software's copyright infringement claims.[19] These facts—including the difference between the LoanForce database software and the LoanForce

---

[15] *See* Declaration of Edward Mandel (Jan. 11, 2008), attached hereto at App. at 0290-0293.

[16] *Id.* at ¶ 5.

[17] *Id.* The files in each subfolder have particular extensions and purposes, as described in Mr. Mandel's declaration.

[18] *Id.* at ¶ 7.

[19] *Id.* at ¶ 8.

administration module—were well known Respondents, who personally tried this case to an arbitrator. Thus, contrary to Barnett's misleading declaration, none of the files on Exhibit R-651 are the November 9, 2000 version of LoanForce; none of the files on Exhibit R-651 are Positive Software's "own copy of November 2000 software;" and none of the files on Exhibit R-651 are the same critical files that Norment allegedly "found" in December 2003.[20]

Barnett's declaration, made under penalty of perjury, that Exhibit R-651 is the "November 2000 version of LoanForce … software 'as provided' to NC" is a false statement designed to lead the Court into believing that Positive Software already had the same program that Norment found and reported to the Respondents. Given the opportunity to explain his prior lack of candor, it is telling that Barnett resorts yet again to a misrepresentation—this time regarding the contents of an exhibit that he does not provide to the Court—in a misguided effort to excuse his prior failure to produce the November 2000 SQL scripts discovered by Norment.

**B.    POSITIVE SOFTWARE'S REQUESTS FOR THE EARLIEST VERSION OF LOANFORCE**

In paragraphs 49-64 of his declaration, Barnett contends that he was justified in not producing the original version of LoanForce because Positive Software abandoned its request for the earliest versions of the software in a November 14, 2003 letter. Barnett's contention is false and unsupported by the record.

One of the litigated issues was the extent to which New Century changed the LoanForce software over time. Positive Software did not have a copy of the version of LoanForce as it was originally delivered to New Century – the November 9, 2000 copy that Norment discovered. In order to demonstrate that New Century unlawfully copied,

---

[20] *Id.* at ¶ 9.

8

altered, and derived its software, Positive Software needed to compare the current version

of New Century's accused works to the earliest version of LoanForce.  To show the

evolution of such changes, Positive Software requested every version of LoanForce

maintained by New Century.[21]  Camiña refused to yield this information, falsely alleging

that New Century "does not maintain 'versions.'"[22]

Thus, only after New Century expressly denied that it possessed the earliest

version of LoanForce as delivered, Positive Software asked for 'versions' from two

intermediate dates to see how the code changed from the earliest available version

previously produced to the version as enjoined.[23]

> In an effort to streamline the process, we told [Camiña] we would, after
> consulting with our experts, provide her with two dates in the past that we
> would like the code produced for all of the Programs as the versions
> existed on those dates.  We felt like this, together with the April 2003 code
> already produced pursuant to Judge Godbey's Order and the current
> versions, should give us some indication of how the code has changed.[24]

Again, Camiña refused to yield this information.[25]  Undaunted, Positive Software

requested at least the versions that existed as of October 2001 – a known date by which

New Century had archived other documents.   Yet again, Camiña refused to yield this

information, claiming in a November 21, 2003 email that it was "impossible:"

> New Century has determined that it is impossible to provide copies of the
> programs as they existed as of October 31, 2001.  The back up tapes which
> we have from that time period turned out to be all e-mail back up tapes.
> We believe the system back up tapes were recycled in the normal course

---

[21] Declaration of W. Ralph Canada, Jr. (Jan. 14, 2008) at ¶¶ 5-17, attached hereto at App.
at 0277-0289.

[22] Letter from Ophelia Camiña, counsel for New Century, to Peter Shurn, arbitrator (Nov.
13, 2003), attached hereto at App. at 0094-0096.

[23] *See* Decl. of Canada at ¶ 15.

[24] Letter from W. Ralph Canada, Jr., counsel for Positive Software, to Peter Shurn,
arbitrator (Nov. 14, 2003), attached hereto at App. at 0097-0100.

[25] Letter from Ophelia Camiña, counsel for New Century, to Peter Shurn, arbitrator (Nov.
19, 2003), attached hereto at App. at 0101-0103.

of business.  Please let be know as soon as possible if you would like New Century to substitute with copies as of February 10, 2002.[26]

Later that same day, Positive Software responded by reiterating its request for the

earliest version of LoanForce:

> In order to evaluate your request, please inform me (1) when the October 21, 2001 back-up tapes were 'recycled in the normal course of business'; (2) who performed such 'recycling'; (3) the earliest available date for copies of the programs; and (4) the earliest date of the New Century parties' non-recycled back-up tapes.  These requests are being made without prejudice to Positive Software seeking additional relief from the Arbitrator and/or Judge Godbey.[27]

"After this exchange on versions of the LoanForce code, Positive Software

continued to request that New Century search all of its back-up tapes and other storage

media for the original version of LoanForce as delivered.  That request was never

abandoned."[28]  On December 12, 2003, Positive Software again demanded (in a letter to

Barnett)  the "[e]arlist versions of the Programs, including application software."[29] And

on December 16, 2003, Positive Software sent Barnett yet another letter requesting "the

earliest versions of the Programs ordered produced last week."[30]

These numerous exchanges, between November 21, 2003 to December 16, 2003,

directly refute Respondents' suggestion that Positive Software abandoned its request for

the earliest version of LoanForce on November 14, 2003.  Indeed, Respondents' own

---

[26] E-mail from Ophelia Camiña, counsel for New Century to Alfonso Garcia Chan, counsel for Positive Software (Nov. 21, 2003), attached hereto at App. at 0104.

[27] *See* Letter from Alfonso Garcia Chan, counsel for Positive Software, to Ophelia Camiña, counsel for New Century (Nov. 21, 2003), attached hereto at App. at 0276; *see also* E-mail from Alfonso Garcia Chan, counsel for Positive Software, to Ophelia Camiña, counsel for New Century (Nov. 21, 2003), attached hereto at App. at 0105. (emphasis added).

[28] Decl. of Canada at ¶ 15-17.

[29] Letter from W. Ralph Canada, Jr., counsel for Positive Software, to Barry Barnett, counsel for New Century (Dec. 12, 2003), attached hereto at App. at 0112-0113.

[30] Letter from W. Ralph Canada, Jr., counsel for Positive Software, to Barry Barnett and Ophelia Camiña, counsel for New Century (Dec. 16, 2003), attached hereto at App. at 0114-0116.

contemporaneous replies never deny their duty to locate the earliest dated version of LoanForce, nor cite to Positive Software's purported November 14, 2003 "abandonment" as a reason for refusing to produce it. Instead, the record shows that Respondents recognized that Positive Software never abandoned its requests for the earliest versions of LoanForce, actively searched for such versions, and even offered to produce a February 10, 2002 version in lieu of the requested earliest version. In fact, as confirmed by the declaration of Positive Software's counsel Ralph Canada, from the very beginning of the litigation, Positive Software made repeated efforts to ensure that all electronically stored information, especially the earliest versions of LoanForce, were preserved and produced.[31] More importantly, this is consistent with the Court's April 21, 2004 order, which could not be "abandoned" as Respondents suggest. The Court's order did not exclude the earliest version of LoanForce from the requirement that Respondents and their clients "produce <u>all copies of all files</u> containing all or any part of Positive Software's software."[32]

## C.   RESPONDENTS' PATTERN OF DESTROYING CRUCIAL EVIDENCE

As part of their response and supporting declarations, Respondents tout the extensive steps they supposedly undertook to preserve all evidence either requested by Positive Software or identified by the Court as discoverable.[33] But the facts reveal that

---

[31] Decl. of Canada. at ¶¶ 3-17.

[32] Order, Apr. 21, 2004 [Docket No. 224] (emphasis added), attached hereto at App. at 0259-0261.

[33] In paragraph 16 of his declaration, Barnett states that on February 24, 2003, Positive Software demanded that New Century image "all of its servers and computers." *See* Declaration of Barnett at ¶ 16, attached to Mem. in Resp. to Show Cause Order. Barnett severely mischaracterizes the February 24, 2003 letter, which he conveniently fails to quote or attach to his declaration. *See* Letter from Kenneth E. Shore, counsel for Positive Software, to Barry C. Barnett, counsel for New Century (Feb. 24, 2003), attached hereto at App. at 0129-1030. The February 24, 2003 letter specifically limited the requested preservation of electronic material "that may contain electronic information <u>relevant to this matter</u>" (emphasis added). This relevancy limitation is repeated at least three times

Respondents were complicit in destroying numerous copies of software derived from LoanForce and historical logs stored on multiple New Century servers.

### 1.    Respondents Knew that Deleting Relevant Information from New Century's Servers was Unauthorized and Improper.

Despite prior requests and a duty to preserve evidence,[34] Positive Software learned from a former New Century employee who was involved in copying LoanForce that New Century was actively destroying evidence relevant to the Underlying Case.[35]  In response to this information, Positive Software filed its emergency motion to preserve evidence on February 20, 2003.[36]   In the emergency motion, Positive Software specifically sought an order preventing New Century from destroying any evidence.[37]

On March 10, 2003, the Court ruled on the emergency motion and made clear to Respondents that an order was not necessary because the destruction of any evidence is already prohibited by the Federal Rules of Civil Procedure, the Texas Disciplinary Rules of Professional Conduct, and the Local Rules of Court.[38]  Two weeks later, on March 24,

---

in the February 24, 2003 letter, and another time in a February 27, 2003 letter from Positive Software to Respondents.  *See* Letter from W. Ralph Canada, Jr., counsel for Positive Software, to Barry Barnett, counsel for New Century (Feb. 27, 2003), attached hereto at App. at 0251-0252. For Barnett to now allege in his declaration that Positive Software consistently and repeatedly demanded images of all computers and servers at New Century is false and misleading.

[34] Letter from W. Ralph W. Canada, Jr., counsel for Positive Software, to Monica McCarthy, counsel for New Century (Feb. 7, 2003), (settlement discussion redacted) attached hereto at App. 0213-0214.

[35] Decl. of Canada at ¶ 6.

[36] Pl.'s Mtn to Preserve Evid. [Docket No. 9] at 2, ¶ 4, attached hereto at App. at 0117-0128.

[37] *Id.*

[38] Hr'g Tr. at 4:3-11, Mar. 10, 2003 [Docket No. 39] (excerpts only), attached hereto at App. at 0131-0133.   *See* Local Civil Rule 83.8(b) ("A presiding judge, after giving opportunity to show cause to the contrary, may take any appropriate disciplinary action against a member of the bar for: (1) conduct unbecoming a member of the bar; (2) failure to comply with any rule or order of this court; (3) unethical behavior; (4) inability to conduct litigation properly; (5) conviction by any court of a felony or crime involving dishonesty or false statement; or (6) having been publicly or privately disciplined by any court, bar, court agency or committee."); Local Civil Rule 83.8(e) ("The term 'unethical

2003, the Court ordered New Century to produce for deposition a witness to testify on
New Century's computer imaging efforts.  During the associated hearing, the Court made
clear to Respondents that all New Century servers may contain relevant and discoverable
information, that all servers must be searched for such information, and that all such
information revealed by the searches must be preserved.[39]   There was never any
suggestion by the Court, Respondents, or Positive Software that any electronically stored
information on New Century's servers could be deleted or altered before the servers were
completely searched for relevant and discoverable information.[40]   Indeed, Respondents
filed pleadings designed to leave the Court with the impression that nothing would be
deleted or destroyed at that point in time, stating "New Century has no intention of
destroying these images."[41]

On April 2, 2003, Billy Joe Stevenson III, New Century's corporate representative
on its computer imaging efforts, was deposed.  Stevenson revealed that the detailed

---

behavior,' as used in this rule, means conduct undertaken in or related to a civil action in
this court that violates the Texas Disciplinary Rules of Professional Conduct."); Texas
Disciplinary Rule of Professional Conduct 3.04(a) (1990) ("A lawyer shall not  (a)
unlawfully obstruct another party's access to evidence; in anticipation of a dispute
unlawfully alter, destroy or conceal a document or other material that a competent lawyer
would believe has potential or actual evidentiary value; or counsel or assist another
person to do any act.").  *See also* Local Criminal Rules 57.8(b) and (e).
[39] Hr'g Tr. at 21:15-22:6, Mar. 24, 2003 [Docket No. 50], attached hereto at App. at
0134-0139.
[40] *See generally id.*
[41] *See* Defs.' Opp. to Pl.'s Emergency Mtn. to Compel Regarding the Imaging of Defs.'
Computer Storage Facilities and Drives [Docket No. 44], attached hereto at App. at 0140-
0147.  It is now evident that this statement was intended to mislead the Court.
Respondents' statement left the impression that nothing would be destroyed or deleted,
but it literally limited the promise only to those servers that had already been imaged by
New Century, without further confirming that such imaged servers constituted all New
Century servers containing relevant information.  New Century's corporate representative
later testified that only a small fraction of New Century's servers had been searched for
relevant information and that the imaged servers covered by Respondents' statement
constitute less than 7% of the over 250 New Century servers.  This is yet another
example of Respondents' lack of candor to the Court. *See* Declaration of John Norment
(Aug. 4, 2003), attached hereto at App. 0076-0080; *see also* Stevenson Dep. at 40:25-
41:20, Apr. 2, 2003, (excerpt only) attached hereto at App. 0290-0294.

imaging claimed by Respondents was an empty promise – the comprehensive searching and imaging of *all* servers containing relevant information never took place.[42]  After the revelation by Stevenson, on April 10, 2003, Positive Software filed another motion to compel, seeking an order requiring that a third party forensic software firm "search all computer storage facilities, drives, and servers owned by Defendants [New Century] and image those that contain and/or utilize the accused software, including LeadExpress, LoanTrack, LoanTrack-2 and mLAS software, and copies of LoanForce, as well as files or references to PSSI and the three email servers."[43]  Again, it was emphasized to Respondents that *all* New Century servers must be *searched* for relevant and discoverable information, and that *all* such information *discovered* must be preserved.

It was also emphasized to Respondents that the scope of searching and preserving relevant information necessarily included information on New Century's use of LoanForce historically (*e.g.,* historical logs, test applications, development versions of the software and predecessor versions) and in deriving the allegedly new works (*e.g.*, LoanTrack-2 and mLAS).  This issue was expressly recognized by the Court during the April 7, 2003 hearing on Positive Software's Motion for Preliminary Injunction,[44] and by Respondents themselves in connection with the parties' Rule 26(f) Conference Report.[45]

Thus, up to at least April 21, 2003, no reasonable person cognizant of the proceedings referenced above could justifiably believe that destroying or deleting any discoverable information from New Century's servers was authorized or permitted.

---

[42] *See* Stevenson Dep. at 40:25-41:3.

[43] Pl.'s Sec. Emergency Mtn. to Compel Regarding the Imaging of Defs.' Computer Storage Facilities and Drives and Mtn. for Sanctions at 9 [Docket No. 65], attached hereto at App. at 0148-0158.

[44] Hr'g Tr. at 14:16-15:6, Apr. 7, 2003 [Docket No. 68], attached hereto at App. at 0159-0162.

[45] Rule 26(f) Conference Report [Docket No. 76], attached hereto at App. at 0163-0168 (including parties' list of categories for discovery, which includes information on "conception, development, creation and use" and "alterations").

## 2.        Respondents Unilaterally Decided to Delete Evidence.

On April 18, 2003, the parties attempted mediation. During the mediation, Respondents were informed that New Century's liability extended beyond LoanForce to encompass the derived LoanTrack-2 and mLAS software and New Century's circumvention of LoanForce's technological access control measures. New Century and Respondents decided *that day* to do something other than settle on reasonable terms — they decided to destroy the evidence.[46]

On April 21, 2003, Barnett sent the Court a letter purporting to "report" that within four days Dr. Pooch, at the direction New Century and Respondents, would "delete or return to PSS all LoanForce software."[47]

That same day, Positive Software's counsel sent the Court and Respondents a letter objecting to Dr. Pooch taking any of the actions outlined in Barnett's April 21, 2003 letter and specifically objecting to Dr. Pooch supervising the injunctive relief –

---

[46] Positive Software began serving its discovery on New Century on April 18, 2003, the day of the mediation. *See*, *e.g.,* Letter from Michael Shore, counsel for Positive Software, to Barry C. Barnett, counsel for New Century (Apr. 18, 2003) (redacted version), attached hereto at App. at 0262; Pl.'s First Interrogs. to Def. New Century Financial Corp., attached hereto at App. at 0263-0268; and Pl.'s First Req. for Produc. to Def. New Century Financial Corp., attached hereto at App. at 0269-0275. The discovery included interrogatories and requests for production on every aspect of the development of LoanTrack (1 & 2) as well as mLAS, including software documentation, software development files, software design processes, the identities of programmers, testing of the programs and communications related to the programs. Dr. Pooch's declaration indicates the efforts to destroy evidence began later that same day, April 18, 2003. *See* Amended Declaration of Udo Pooch, Apr. 24, 2003, attached hereto at App. at 0177-0180; *see also* Declaration of Udo Pooch, Apr. 24, 2003, attached hereto at App. at 0064-0067.

[47] *See* Letter from Barry Barnett, counsel for New Century, to the Court (Apr. 21, 2003), attached hereto at App. at 0169-0171. Barnett's April 21, 2003 letter only mentions the possibility of deleting LoanForce, not the software programs derived from LoanForce, including all versions of LoanTrack, LTKMoon, and LFMoon. By deleting these programs that contain the copyrighted LoanForce SQL structure, New Century obscured its use of these programs in the development of LoanTrack-2 and mLAS.

return of the software – or any other injunctive relief sought by Positive Software.[48]  And to further ensure that no evidence would be forever destroyed, Positive Software's letter also expressly requests "a full imaging of New Century's servers and computers."[49] Although Positive Software objected vociferously to the proposed deletions, it was later discovered that the deletions had occurred the next day after Barnett sent the letter— before any action could be taken by the Court or opposing counsel.[50]

On April 25, 2003, Respondents confirmed to the Court that despite Positive Software's objections, Dr. Pooch "supervised and observed the deletion of LoanForce, LoanTrack, LTK Moon and LF Moon" on April 22, 2003.[51]  Dr. Pooch also stated that "[o]n or about April 18, I designed a plan for New Century to cease using LoanForce … extract the data and load the data into mLAS."[52]  The data extracted by Dr. Pooch was not metadata that would be useful in the litigation to Positive Software, but the customer data that would be useful to New Century in continuing its business uninterrupted.

### 3. Part of the Destroyed Evidence Includes Development of Derived Software and Historical Logs.

Dr. Pooch confirmed that at the direction of counsel the deletion comprised "LoanForce, LoanTrack, LTK Moon and LF Moon … **including databases and historical logs.**"[53]  These deleted databases and historical logs were crucial because they were the best evidence of New Century's unlawful development of the derived

---

[48] *See* Letter from Michael Shore, counsel for Positive Software, to Court (Apr. 21, 2003), attached hereto at App. at 0172-0176. Positive Software also transmitted its objections to Respondents by email to ensure they were immediately received.

[49] *Id.*

[50] *See* Am. Decl. of Pooch at ¶ 4 ("On April 22, I also supervised and observed the deletion of LoanForce, LoanTrack, LTKMoon and LF Moon.") and Dec. of Pooch at ¶ 4 ("On April 21, I also supervised and observed the deletion of LoanForce, LoanTrack, LTKMoon and LF Moon.").

[51] *See* Am. Decl. of Pooch at ¶¶ 3-5; *see also* Decl. of Pooch at ¶¶ 3-5.

[52] *See* Am. Decl. of Pooch at ¶ 3 (emphasis added); *see also* Dec. of Pooch at ¶ 3 (emphasis added).

[53] *See* Am. Decl. of Pooch at ¶ 4; *see also* Decl. of Pooch at ¶ 4.

LoanTrack-2 and mLAS software and the history of New Century's circumvention of LoanForce's technological access control measures.  Professor Sanchez Etchison's previously filed affidavit further details why these deleted databases and historical logs were crucial and the harm that resulted from the counsel-directed destruction of evidence.[54]

One of the statutory exclusive rights owned by Positive Software is the right to prepare derivative works of LoanForce.[55]  In the context of LoanForce, derivative works would include versions of LoanForce adapted for different operating systems,[56] code that uses or manipulates LoanForce in a different manner,[57] and code that calls data from the copyrighted LoanForce SQL data structures to permit use of such data by a different application.[58]  The deleted databases would have shown that mLAS is a version of the LoanForce databases LFMoon and LTKMoon adapted for LoanTrack-2, that LoanTrack-2 and mLAS use the LoanForce SQL data structures in a different manner, and that LoanTrack-2 and mLAS call data from the LoanForce SQL data structures to permit use of the data by the LoanTrack-2 application software.  But for their destruction at the direction of Respondents, the deleted databases would have further shown that LoanTrack-2 and mLAS are in fact derivative works of LoanForce and that New Century is liable for such preparing such derivatives from the copyrighted LoanForce software without authorization from Positive Software.

---

[54] Third Supplemental Aff. of Professor Judy Sanchez Etchison, attached hereto at App. at 0181-0186.

[55] 17 U.S.C. § 106.

[56] *See Liu v. Price Waterhouse L.L.P.,* 302 F.3d 749, 754-755 (7th Cir. 2002).

[57] *See Midway Mfg. Co. v. Arctic Int'l, Inc.,* 704 F.2d 1009, 1010-1014 (7th Cir. 1983), *aff'd,* 464 U.S. 823 (1983).

[58] *See Dunn & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 213-216 (3d Cir. 2002).

Another right owned by Positive Software is conferred by the Digital Millennium Copyright Act ("DMCA"), which prohibits New Century from "circumvent[ing] a technological measure that effectively controls access to a work."[59]  The DMCA provides statutory damages of "the sum of not less than $200 or more than $2,500 per act of circumvention."[60]  LoanForce employed security measures to ensure the software would not be accessed by more than the specific number of persons authorized under the Software Subscription Agreement.[61]  Positive Software had estimated substantial statutory damages based on unconfirmed figures of at least 850 unauthorized accesses per day for over a year.  Historical logs would have confirmed the actual number of acts of circumvention.  But for the destruction of historical logs, Positive Software would have been able to more precisely prove and calculate the total number of acts of circumvention and the minimum amount of statutory damages.

On April 28, 2003, Positive Software filed a Motion to Strike Pleadings and Enter Default Judgment as a sanction for the counsel-directed destruction of evidence.[62]  On May 2, 2003, the Court referred the motion and the Underlying Case to arbitration, but stated that the Court "takes spoliation very seriously" and "is confident that an arbitrator will also take spoliation very seriously."[63]  The Court again ordered the preservation of extant backups or images of all servers or personal computers remaining after the purge and "to refrain from deleting any such files still resident on any servers or personal computers."[64]

---

[59] 17 U.S.C. § 1201.
[60] 17 U.S.C. § 1203(c)(4).
[61] *See* Software Subscription Agreement, attached hereto (under seal) at App. at 0340-0350.
[62] Pl.'s Mtn. to Strike Pleadings and Enter Default Judgment [Docket No. 92], attached hereto at App. at 0187-0212.
[63] Order, May 2, 2003 [Docket No. 101], attached hereto at App. at 0253-0257.
[64] *Id.* at 2.

But by April 28, 2003, Respondents had ensured that most, if not all, evidence relating to development of derived works and historical logs had been deleted. The damage had already been done. Nonetheless, the foregoing account demonstrates that Respondents have engaged in a pattern and practice of concealing or destroying crucial evidence that is consistent with the Court's findings.

**III.**

**RESPONDENTS KNOWINGLY UNDERSTATED NEW CENTURY'S ACTUAL SUBSEQUENT USE OF LOANFORCE**

According to the Underlying Case opinion, "New Century accidentally produced to Positive Software a copy of an analysis New Century performed of LoanForce and LoanTrack, which precipitated this dispute; New Century never intended to disclose that use and sought return of the accidentally produced document. Following that accidental production, New Century described its use of LoanForce to the Court, characterizing it as 'minimal.'"[65]

In his January 15, 2004 letter, Barnett reported to the Court that at counsel's direction, New Century's use was limited to "comparing the code and reporting the results to counsel, and counsel agreed that such a comparison might be useful and directed him [Norment] to create it for purposes of investigating the facts underlying Positive [Software]'s allegations of copying."[66] The Court, however, found otherwise and determined that "[t]hese representations substantially understate New Century's actual subsequent use of LoanForce."[67]

In paragraphs 43-48 of Barnett's declaration and paragraphs 63-73 of Camiña's declaration, Respondents disavow Barnett's January 15, 2004 admission and now

---

[65] *Positive Software*, 337 F. Supp. 2d at 868.

[66] *Id.* at 876-77.

[67] *Id.* at 868. The Court finding on this issue also refutes Barnett's assertion in § IV *infra* that he was unaware of New Century's intention to continue using LoanForce.

contend that Norment's analysis was neither useful nor created at counsel's direction. By this disavowal, Respondents effectively concede that Barnett's January 15, 2004 letter was not just an understatement, as the Court determined, but was completely false.

As already determined by the Court, Respondents not only gave Norment access to LoanForce, but also broadly made LoanForce available to any New Century employee with general network privileges, including programmers for LoanTrack-2 and mLAS.[68] Neither Barnett's nor Camiña's declaration explain how such widespread access to LoanForce could have honestly been characterized to the Court as "minimal." Barnett's January 15, 2004 letter was clearly designed to deceive the Court and Positive Software into believing that New Century's post-injunction access to LoanForce was limited only to Norment's counsel-directed analysis on a computer who which only he enjoyed access. Only now, after threatened with attorney discipline, have Respondents recanted the representations to the Court contained in Barnett's January 15, 2004 letter.[69]

## IV.
### RESPONDENTS MISREPRESENTED THAT NEW CENTURY WOULD STOP USING LOANFORCE AND DELETE OR RETURN ALL LOANFORCE SOFTWARE

According to the Underlying Case opinion, "[i]n an April 21, 2003 letter to the Court, lead counsel for New Century affirmed … New Century had no intention of ever again using LoanForce application software, the LoanForce database, LoanTrack, LF_Moon, or LTK_Moon."[70] Barnett further affirmed that "New Century would, no later than April 25, 2003 and under Dr. Pooch's supervision, delete or return to Positive

---

[68] *See id.* at 869.

[69] Again, conspicuously missing from Respondents' response is any evidence from New Century corroborating Respondents' disavowal of Barnett's January 16, 2004 letter or his incredible claims of complete ignorance.

[70] *Positive Software*, 337 F. Supp. 2d at 867.

Software all LoanForce software, including application software and the LoanForce database that New Century has the ability to access."[71]

In paragraphs 20-31 and 39-40 of Barnett's declaration and paragraphs 18-30 of Camiña's declaration, Respondents argue that they were ignorant of New Century's continued use and incomplete deletion of LoanForce. This is inconsistent with the record, which shows that Respondents were personally responsible for New Century's deletion and imaging efforts, and had always known that New Century never intended to delete or return "all LoanForce software."

On April 24, 2003, Dr. Pooch submitted a declaration prepared by Respondents stating that New Century ceased using LoanTrack-1 and the LoanForce database, that no New Century programmers had continued access to LoanForce, and that all LoanForce software and allegedly infringing works had been deleted from all "[t]he servers containing LoanForce, LoanTrack, LTK Moon and LF Moon [that] were identified."[72] Such identification was conducted under the direction of Respondents, who undertook the responsibility for reporting such activities to the Court.

Contrary to Respondents' suggestion that they had no knowledge regarding New Century's continued use of the enjoined software, on March 7, 2003, New Century's Chief Technology Officer (Retail Division) John Norment submitted a declaration establishing that New Century's deletion process was being conducted at "the direction of legal counsel" and further included steps to record "a forensic image of all Retail IT servers."[73] These statements proved false.

---

[71] *Id.* (internal brackets deleted) (emphasis added).

[72] *See* Am. Decl. Pooch at ¶¶ 3-5 and Decl. of Pooch at ¶¶ 3-5.

[73] *See* Declaration of John Norment (Mar. 7, 2003) at ¶ 4, attached hereto at App. at 0068-0072. (emphasis added).

On March 24, 2003, Norment submitted a second declaration stating that eleven (11) servers constitute the universe of servers containing LoanForce, LoanTrack-1, LTKMoon, and LFMoon software, that New Century's deletion process covered all eleven (11) "Retail IT servers," and that Respondents directed an outside consultant to "create and verify forensic images of all of New Century's Retail IT servers" exclusively for the purposes of litigation.[74]

Later, during the arbitration proceedings, Positive Software discovered that New Century had never intended to delete "all LoanForce software" as Barnett represented to the Court. LoanForce software had always remained on a server named "Nitrogen."[75] The Nitrogen server was highly relevant– it was a development server regularly accessed by New Century programmers for creating and testing the derivative works of LoanTrack-2 and mLAS (*i.e.*, the supposedly non-infringing replacements for LoanTrack-1 and LoanForce).[76]

After this discovery Norment filed a third declaration on August 4, 2003 confirming that his prior declarations had not been completely truthful, conceding that nineteen (19), not eleven (11) Retail IT servers existed, but that only eleven (11) had actually been initially imaged, and admitting that Nitrogen had not been originally identified.[77] There is no explanation for how the eight (8) remaining Retail IT servers were "missed" during the initial review, especially the Nitrogen server, which New Century had continued to use to develop LoanTrack-2 after the Court's entry of a

---

[74] *See* Declaration of John Norment (Mar. 24, 2003) at ¶¶ 4-6, attached hereto at App. at 0073-0075.
[75] *See* E-mail correspondence between and among John Norment, Ophelia Camiña, Mark Malavos and Barry Barnett, collectively counsel for New Century (Dec. 22, 2003), attached hereto at App. at 0247-0250; *see also* Letter from Barry Barnett, counsel for New Century, to Court (Jan. 16, 2004), attached hereto at App. 0081-0084; *see also Positive Software*, 337 F. Supp. 2d at 868-69, n. 7.
[76]*See Positive Software*, 337 F. Supp. 2d at 869.
[77] Decl. of Norment (Aug. 4, 2003) at ¶ 5, attached hereto at App. at 0076-0080.

preliminary injunction.[78]   The only explanation for this glaring discrepancy is that Respondents intentionally allowed LoanForce to remain on the Nitrogen development server during this critical period so New Century programmers could finish using the enjoined LoanForce software in deriving, developing, and testing the replacement LoanTrack-2 and mLAS.  The Respondents' misrepresentations made this possible.

Contrary to Barnett's and Camiña's declarations, Respondents were far from ignorant – they were personally responsible for directing New Century's deletion and imaging processes.  Respondents claimed ignorance of the LoanForce software remaining on the Nitrogen development server and its continuous access and use by New Century's programmers working on LoanTrack-2 and mLAS is not credible.  Simply searching the file names on the Nitrogen server for the term "LoanForce" would have revealed the program's presence.  These were the very matters Respondents represented they were investigating and reporting to the Court.[79]

## V.
## NEW CENTURY'S FRAUD CLAIMS AGAINST POSITIVE SOFTWARE

New Century's claims of fraud against Positive Software (made in the Underlying Case and the arbitration) have now been proven to be based upon perjured testimony and the suppression of material evidence.[80]   Those facts are fully disclosed in Positive

---

[78] *See Positive Software*, 337 F. Supp. 2d at 869; *see also, supra*, note 72.

[79] The Court should also recognize that at the time Respondents filed their declarations, they still represented New Century in its Delaware bankruptcy proceedings and were co-defendants with former New Century executives in charge of LoanTrack-2 and mLAS Frank Nese, Jeff Lemieux, and John Norment in *Positive Software Solutions, Inc., et al., v. Susman Godfrey, L.L.P., et al.,* No. 3:07-CV-1422 (N.D. Tex. filed Aug. 20, 2007). Despite this close ongoing relationship, and the fact that attorney-client privilege between Respondents and New Century had been waived due to the crime-fraud exception, no one affiliated with New Century has provided any evidence to support their attorneys' claims of ignorance.

[80] *See* "LoanForce Support Plan" created by VisionCore Consulting ("VisionCore") on February 5, 2003, attached hereto at App. at 0337-0338 (The basis for the arbitrator's finding of fraud for New Century Mortgage is "that New Century actually believed it was

Software's amended motion to vacate the arbitration award.  It is not necessary to repeat those facts here, but to the extent that the fraud claim against Positive Software was fabricated, the Respondents' participation in and sponsorship of the fraudulent prosecution of that claim is something Positive Software urges the Court to investigate as part of this proceeding.

## VI.
## LEGAL STANDARDS GOVERNING ATTORNEY DISCIPLINE

To the extent the Court finds it useful, Amici Curiae respectfully submit in the Appendix hereto the declaration of Professor Bruce A. Green.[81]  Professor Green is the Louis Stein Professor of Law at Fordham University School of Law and the director of the Louis Stein Center for Law and Ethics.  Professor Green teaches and writes primarily in the area of legal ethics and serves on the Council of the ABA Section of Litigation, in which he previously chaired committees on Ethics and Professionalism.  Professor Green's declaration identifies the specific ethical standards implicated by the conduct discussed above.

---

authorized to continue using LoanForce until some unknown time after February 13, 2003, and therefore actually believed no danger existed that the software would be turned off."  The LoanForce Support Plan proves that New Century understood it was in violation of the Subscription Software Agreement ("SSA") and that Positive Software could lawfully cut off access to LoanForce at any time.  February 5, 2003 was the day before the 30 day deadline for New Century Mortgage to meet the demand for payment sent by Positive on January 6, 2003.  Suppression of this material document allowed New Century employees to perjure themselves by claiming surprise.); *see also* LoanForce Replacement Issues and Alternatives, authored by Jeff Lemieux (the "Lemieux Alternatives"), attached hereto at App. 0339-0340. (This document shows that New Century anticipated Positive Software's decision to key off the application software and that it never intended to make good on its promise to pay what it owed under the SSA.  In the Lemieux Alternatives, New Century admits its plan "only works if PSS cannot elect not to renew and turn off [sic] the license key because of NCMC's non-payment breach." This admission establishes that, as of January 31, 2003, New Century had expected Positive Software to key off the LoanForce application for at least a full week, contrary to their witnesses' deposition testimony.

[81] *See* Declaration of Professor Bruce A. Green (Jan. 11, 2008), attached hereto at App. 0296-0330.

# VII.
# CONCLUSION

Twenty years ago the Court issued its *Dondi* opinion, holding that: "A lawyer owes, to the judiciary, candor, diligence and utmost respect. … A lawyer unquestionably owes, to the administration of justice, the fundamental duties of … professional integrity."[82] *Dondi* still holds true today. The legal profession is built upon the honesty of attorneys and a court's ability to possess confidence in the truth of lawyers' representations to the court. Candor and advocacy must co-exist in the legal system. Without candor, advocacy is devoid of integrity.

Date:  January 15, 2008                     Respectfully submitted,


                                            */s/ Michael W. Shore*
                                            Michael W. Shore, Attorney in Charge
                                            State Bar No. 18294915
                                            Alfonso Garcia Chan
                                            State Bar No. 24012408
                                            Sherry L. Talton
                                            State Bar No. 24033255
                                            SHORE CHAN BRAGALONE LLP
                                            325 North Saint Paul Street-Suite 4450
                                            Dallas, Texas 75201
                                            (214) 593-9110 Telephone
                                            (214) 593-9111 Facsimile
                                            shore@shorechan.com
                                            achan@shorechan.com
                                            stalton@shorechan.com

                                            **ATTORNEYS FOR AMICI CURIAE
                                            POSITIVE SOFTWARE SOLUTIONS,
                                            INC.  AND EDWARD MANDEL**

---

[82] *Dondi Properties Corp. v. Commerce Sav. and Loan Ass'n*, 121 F.R.D 284, 287-88 (N.D. Tex. 1988) (en banc).

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed **AMICUS BRIEF OF POSITIVE SOFTWARE SOLUTIONS, INC. AND EDWARD MANDEL** and **APPENDIX TO AMICI CURIAE'S AMICUS BRIEF, VOLUME I** with the clerk of court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.  The **APPENDIX TO AMICI CURIAE'S AMICUS BRIEF, VOLUME II,** is being served by hand delivery upon Mr. Phelan only.

David J. Beck
Murray Fogler
BECK REDDEN & SECREST LLP
1221 McKinney Street-Suite 4500
Houston, Texas 77010
713.951.3700 Telephone
713.951.3720 Facsimile
dbeck@brsfirm.com
mfogler@brsfirm.com

Rod Phelan
BAKER BOTTS LLP
2001 Ross Avenue-Suite 600
Dallas, Texas 75201
214.953.6609 Telephone
214.661.4609 Facsimile
rod.phelan@bakerbotts.com

ATTORNEYS FOR RESPONDENTS
OPHELIA F. CAMIÑA,
AND BARRY C. BARNETT

Date:  January 15, 2008          */s/ Michael W. Shore*
                                 Michael W. Shore

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| BARRY BARNETT and | § | |
| OPHELIA F. CAMIÑA, | § | Misc. Action No. 3:07-MC-93-N |
| | § | |
| Respondents. | § | |

---

NOTICE OF ERRATA TO AMICUS BRIEF
OF POSITIVE SOFTWARE SOLUTIONS, INC. AND EDWARD MANDEL

---

*filed by*

Michael W. Shore
Alfonso Garcia Chan
Sherry L. Talton
Shore Chan Bragalone LLP
325 North Saint Paul Street, Suite 4450
Dallas, Texas 75201

Attorneys for Amici Curiae Positive Software Solutions, Inc. and Edward Mandel

TO THE HONORABLE JUDGE DAVID C. GODBEY:

Amici Curiae Positive Software Solutions, Inc. and Edward Mandel file this Notice of Errata to Amicus Brief to clarify an unintentional error identified after the filing of the Amicus Brief. In particular, Section IV of the Amicus Brief titled Legal Standards Governing Attorney Discipline includes the following statement: "Professor Green . . . serves on the Council of the ABA Section of Litigation . . . ."[1] It has come to the attention of Amici Curiae that Professor Green's tenure on the Council of the ABA Section of Litigation ended in 2007. The statement should read: "Professor Green . . . served on the Council of the ABA Section of Litigation . . . ." Also, footnotes 3, 8, and 13 should be corrected to read: *Positive Software*, 337 F. Supp. 2d at 869, n.6.

Date: January 15, 2008                    Respectfully submitted,


                                          /s/ Michael W. Shore
                                          Michael W. Shore, Attorney in Charge
                                          State Bar No. 18294915
                                          Alfonso Garcia Chan
                                          State Bar No. 24012408
                                          Sherry L. Talton
                                          State Bar No. 24033255
                                          SHORE CHAN BRAGALONE LLP
                                          325 North Saint Paul Street-Suite 4450
                                          Dallas, Texas 75201
                                          (214) 593-9110 Telephone
                                          (214) 593-9111 Facsimile
                                          shore@shorechan.com
                                          achan@shorechan.com
                                          stalton@shorechan.com

                                          **ATTORNEYS FOR AMICI CURIAE POSITIVE SOFTWARE SOLUTIONS, INC. AND EDWARD MANDEL**

---

[1] *See* Amicus Brief of Positive Software Solutions, Inc. and Edward Mandel [Docket 13] at 24.

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed this **NOTICE OF ERRATA** with the clerk of court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

> David J. Beck
> Murray Fogler
> BECK REDDEN & SECREST LLP
> 1221 McKinney Street-Suite 4500
> Houston, Texas 77010
> 713.951.3700 Telephone
> 713.951.3720 Facsimile
> dbeck@brsfirm.com
> mfogler@brsfirm.com
>
> Rod Phelan
> BAKER BOTTS LLP
> 2001 Ross Avenue-Suite 600
> Dallas, Texas 75201
> 214.953.6609 Telephone
> 214.661.4609 Facsimile
> rod.phelan@bakerbotts.com
>
> ATTORNEYS FOR RESPONDENTS
> OPHELIA F. CAMIÑA,
> AND BARRY C. BARNETT

Date:  January 15, 2008                    */s/ Michael W. Shore*
                                           Michael W. Shore