**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC., | § | CASE NO. 07-10416-KJC |
| *ET. AL.,* | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | Jointly Administered |
| | § | Related to Docket No. 4751 |

**POSITIVE SOFTWARE SOLUTIONS, INC'S (I)  RESPONSE TO (A) DEBTORS'
CROSS-MOTION TO DISALLOW OR ESTIMATE PROOFS OF CLAIM AND (B)
DEBTORS' OBJECTION TO PROOFS OF CLAIM; (II) MOTION TO ABSTAIN FROM
ADJUDICATING OBJECTION TO CLAIMS AND MOTION TO ESTIMATE**

TO THE HONORABLE KEVIN J. CAREY, U.S. BANKRUPTCY JUDGE:

Positive Software Solutions, Inc. ("Positive Software"), a creditor and party-in-interest in

this jointly administered bankruptcy case of New Century TRS Holdings, Inc., and its affiliated

debtors-in-possession (the "Bankruptcy Case"), files this Response (the "Response") to the

Debtors' Cross-Motion to Disallow or Estimate Proofs of Claim and Debtors' Objection to

Proofs of Claim [D.I. 4751], its Motion for Abstention and its Reply with respect to its Motion

for Relief from the Automatic Stay (the "Cross-Motion").

For the reasons discussed below, Positive Software requests and moves that this Court (a)

deny the Debtors' request to estimate Positive Software's claims or, alternatively, order that the

claim be estimated by restricting the parties' rights to appeal any judgment by the Texas District

Court and/or any award entered in any new arbitration proceeding, and (b) abstain from hearing

the Debtors' objection to Positive Software's proofs of claim pending resolution of litigation

before the Texas District Court and any new arbitration proceeding.

# I. <u>SYNOPSIS</u>[1]

1.      The Debtors seek to have this Court undertake a summary proceeding of Positive Software's complex copyright infringement, Digital Millennium Copyright Act, contract, misappropriation of trade secrets, misappropriation of intellectual property, conversion, and fraud claims in the 2003 Litigation.  What the Debtors really want is a new forum to adjudicate Positive Software's claims because they know that the Arbitration Award in their favor is in imminent jeopardy of vacatur.  They also want to avoid the Texas District Court because Judge Godbey's unique technical and legal background would allow him to see through the Debtors' frivolous, though complex defenses.

2.      The Texas District Court has already heard significant evidence in the matter and indicated that it is inclined to vacate the Arbitration Award because of the Debtors' and their former trial attorneys' knowing fraudulent misrepresentations and intentional withholding of material evidence. Indeed, the wrongful conduct by the Debtors and their counsel was so egregious that the Texas District Court has initiated *sua sponte* a disciplinary proceeding against the attorneys involved.

3.      The Debtors' tactical move in making the Cross-Motion (filed just seven days before hearing and without *any* forewarning to Positive Software) raises a myriad of legal issues involving and including (a) Positive Software's rights to due process, (b) interests of justice, including principles of federal comity with respect to the Texas District Court, and (c) the lack of jurisdiction of this Court to hear complex intellectual property claims.

4.      Notwithstanding these legal issues, the facts support a denial of the Cross-Motion

---

[1]Unless otherwise defined, capitalized terms shall have the same meaning as defined in Positive Software's Motion for Relief from Automatic Stay filed on January 9, 2008 [D.I. 4354] (the "Second Stay Motion") and, by reference, its Motion for Relief from automatic stay filed on July 10, 2007 [D.I. 1877] (the "First Stay Motion").

and abstention from hearing objections to Positive Software's proofs of claim. The Debtors'
suggestion that this Court is better positioned than the Texas District Court to rule on whether the
Arbitration Award should be vacated, whether in a claim objection proceeding or an estimation
proceeding, is just absurd. The Texas District Court has been involved in the 2003 Litigation
since its inception and has first-hand knowledge of the complex facts, including the unethical
conduct committed by Debtors and their counsel and how that conduct resulted in the Debtors'
victory at arbitration. The Texas District Court has heard and decided dozens of motions, with
over 450 docket entries in the 2003 Litigation to date. Furthermore, Positive Software believes
that the proceeding involving the Arbitration Award, including Positive Software's pending
motion for leave to amend its motion to vacate, can be heard and ruled upon within one or two
months.

5.    Regarding the 2003 Litigation in its entirety, the Texas District Court should be
able to rule within months due to its familiarity with the file. Any newly appointed arbitrator
should also be able to rule upon Positive Software's claims within a year, though not as quickly
as Judge Godbey. With the exception of a small amount of additional discovery related to the
misconduct of the Debtors and their attorneys, and the fraudulently withheld evidence, discovery
is substantially complete. Furthermore, the legal issues involved in the case (most of which
involve the interpretation of intellectual property law) have been fully briefed and are familiar to
Judge Godbey and the second appointed arbitrator. The parties have also designated expert
witnesses and otherwise should be able to quickly prepare for trial.

6.    Positive Software is as interested in having its claims liquidated in as expeditious
a manner as the Debtors claim to be. *Thus, in light of the alleged importance that the Debtors
place on obtaining a quick (but no doubt fair) resolution of Positive Software's claims, Positive*

*Software offers to waive any rights of appeal from the Texas District Court on all issues and any rights to contest any arbitration award issued in any subsequent arbitration proceeding if the Debtors will do the same.* If the Debtors are truly interested in avoiding delay, they will agree to forego any appeal after an expedited decision by Judge Godbey.[2] Alternatively, if the Debtors do not agree, this Court should order that Positive Software's claims be determined by estimation through the 2003 Litigation with the restriction that the parties refrain from appealing rulings by the Texas District Court or in any new arbitration proceeding.

7.    Not only are the Debtors wrong about the time needed to litigate Positive Software's claims, there is absolutely no indication that they will be in a position to make a meaningful distribution in the near future. The Debtors (jointly with the Official Committee of Unsecured Creditors) did not file a proposed Disclosure Statement until February 2, 2008. Even if the Debtors succeed in obtaining approval of a Disclosure Statement and then obtaining confirmation of a liquidating plan (which is uncertain), that process will take months. Moreover, on information and belief, Positive Software understands that the Debtors have little in the way of cash assets at present. And the Debtors do not appear to have resolved other pending proofs of claim in unliquidated amounts. Delay, if any, in distributions to creditors resulting from the adjudication of Positive Software's claims will be minimal because this Bankruptcy Case is less than a year old. Regardless, if there is any delay, it will be due in large part to the Debtors' own refusal to go forward with the 2003 Litigation back in the summer of 2007.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction over Positive Software's motion to abstain under 28 U.S.C. § 1334, and the matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[2] Having Judge Godbey decide the matter instead of a new arbitrator would also save the Debtors significant arbitration fees and legal fees. While a new arbitrator has an  800,000 page record to review, Judge Godbey is already intimately familiar with the facts and pleadings.

Venue of the contested matter in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## III.    BACKGROUND

9.    Positive Software has recited the background of the 2003 Litigation and related matters in numerous motions and other papers submitted to this Court.  In the interest of brevity, Positive Software intends to limit its recitation of facts to those most relevant to this Response or to facts which have not been stated in previous filings.[3]

### A.    The Arbitration Award.

10.    The cornerstone of the Debtors' entire argument in the Cross-Motion is that the Arbitration Award reflects a reasoned decision built upon an accurate record of the facts.  To the contrary, however, the Arbitration Award is a completely erroneous decision based upon an admittedly corrupt and incomplete record.

11.    Although the Debtors emphasize that "Positive Software's lead argument for the 'extreme remedy' of throwing out an 86-page AAA arbitrator's Award is now legally dead,"[4] Judge Godbey went so far as to state that, but for his ruling to vacate on other grounds, he would likely have vacated the Arbitration Award based on the Debtors' fraud and their attorneys' misconduct.[5]   In the Fifth Circuit *en banc* appeal, the Debtors urged the court to not only reverse the Vacatur Order, but to render a verdict confirming the Arbitration Award.[6] Cognizant of Judge Godbey's concern that the Arbitration Award was tainted by fraud and the myriad of other grounds raised in the Texas District Court, the Fifth Circuit remanded the matter to Judge

---

[3]Those filings include the following: (a) the First Stay Motion [D.I. 1877]; (b) Reply regarding First Stay Motion and response to Debtors' Cross-Motion for Sanctions (submitted under seal) [D.I. 2171]; (c) Amended Objection to the Debtors' motion for additional sanctions [D.I. 2667]; (d) Motion for relief from stay regarding the 2007 Litigation [D.I. 3320]; (e) the Second Stay Motion [D.I. 4354]; and (f) Response to the Debtors' 105(a) Motion [D.I. 4759].
[4] *See* Cross-Motion at ¶10.
[5] *See* Vacatur Order, pp. 42-43 at n. 24 [2003 Litigation Docket No. 372], which has been previously included in the record.
[6] Upon request, Positive Software will tender a copy of the Reply Brief of Appellants New Century Mortgage Corp., New Century Financial Corp., EConduit Corp., The ANYLOAN Corp., Jeff Lemieux and Frank Nese .

Godbey for further proceedings.[7]

12.    The arbitrator, Peter J. Shurn, himself has acknowledged that the Debtors and their attorneys' fraudulent withholding of the original version of LoanForce from Positive Software during the arbitration affected his award.  In correspondence to Positive Software's counsel, Mr. Shurn stated that "[h]ad Positive [Software] had such a document in hand at the time it tried the case, the outcome most likely would have been different."[8]  Mr. Shurn also commented that in a second arbitration, his 86-page Arbitration Award was a "roadmap" to Positive Software's likely success in a subsequent proceeding.[9]

**B.    Plan and Disclosure Statement.**

13.    On February 2, 2008, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed their Disclosure Statement for Joint Chapter 11 Plan of Liquidation [D.I. 4804] (the "Disclosure Statement").  The Disclosure Statement fails to disclose the amount of cash currently on hand.[10]  Instead, the Debtors and the Committee propose a complex structure for: (a) addressing inter-company obligations, (b) the treatment of claims against different Debtors, and (c) distributions on account of various types of creditor classes (including various types of unsecured creditor classes).  The Disclosure Statement also discusses a number of pending litigation matters and how proceeds of that litigation are to be distributed, a mechanism for reserving against administrative expenses, and claims that have not been allowed.

**C.    Availability of Second Arbitrator**

14.    Subsequent to the entry of the Vacatur Order, the American Arbitration Association (the "AAA") appointed Peter Burns, Esq., to serve as arbitrator for a second

---

[7] *See Positive Software Solutions, Inc. v. New Century Mortg. Corp.,* 476 F.3d 278, 279 (5th Cir. 2007).
[8] *See* Letter from Peter J. Shurn, arbitrator, to Ralph Canada, Esq., counsel for Positive Software (Nov. 25, 2004).  A true and correct copy of which is attached hereto as Exhibit "A."
[9] *Id.*
[10] *See* Disclosure Statement at pp. 123-124.

arbitration.  Mr. Burns is an intellectual property attorney with Steptoe & Johnson, LLP who is admitted to practice in various jurisdictions and before the U.S. Patent & Trademark Office.[11] Evidently, the AAA has not confirmed Mr. Burns because it believes the automatic stay precludes it from so doing.  According to the case manager, upon a court order lifting the stay or requiring arbitration, Mr. Burns can be quickly confirmed as long as neither sides objects.  If Positive Software's claims and the Debtors' counterclaims are again referred to arbitration, Positive Software has no objection to Mr. Burns serving as arbitrator.

**D.    Texas District Court Findings and Rulings.**

15.    On April 28, 2003, the Texas District Court entered the Preliminary Injunction in which, among other things, it found that Positive Software owned the rights and copyrights to LoanForce and that New Century Mortgage Corporation ("New Century") was no longer entitled to use LoanForce, and New Century was obligated to return LoanForce to Positive Software.[12] Additionally, the Texas District Court found that, based on "the fact that LoanTrack-1 [the Debtors' alleged proprietary software platform] contained substantial verbatim or near-verbatim copying of" Positive Software's intellectual property, Positive Software had "shown a substantial likelihood of success on the merits of its claim that LoanTrack-1 (including the associated LFMoon and LTKMoon components) infringed Positive Software's copyrights in LoanForce."[13]

16.    And as this Court is well aware, in the Vacatur Order, the Texas District Court stated, "[i]f the Court were to address that motion [Positive Software's proposed Amended Motion to Vacate] on the merits, it likely would … grant the amended motion to vacate for, *inter alia*, New Century's failure to produce the November 2000 Script."[14]

---

[11] *See* Curriculum Vitae of Peter Burns, Esq., attached hereto as Exhibit "B."
[12] *See* Preliminary Injunction [2003 Litigation Docket No. 88] which has been previously included in the record.
[13] *See* Preliminary Injunction at pp. 7 and 9.
[14] *See* Vacatur Order, pp. 42-43, n. 24.

# IV. <u>DISCUSSION</u>[15]

17.     The Debtors' request to have this Court estimate Positive Software's claims in a summary proceeding appears motivated by its perception that it will fare better before this court than in the Texas District Court and any subsequent arbitration.   Regardless of the Debtors' motivation, adjudication of Positive Software's claims by the Texas District Court should not unduly delay the administration of the Debtors' estates, especially if the parties can agree (or this Court orders) that the parties will waive any rights to appeal decisions by the Texas District Court or any subsequent arbitrator.

## A.    The Court Should Deny the Cross-Motion Because the Debtors Assert It for an Improper Purpose.

18.     Positive Software finds the Debtors' stated motivation in seeking estimation under Section 502(c) – to avoid delay in making distributions – to be simply incredible.   The Debtors, having spent countless millions on professional fees in this Bankruptcy Case, could have consented to continuation of the 2003 Litigation back in July 2007, when Positive Software filed the First Stay Motion.   Certainly, they could have done so with respect to the disputes involving the Arbitration Award, which would certainly have been concluded by now.

19.     It is more likely that the Debtors are using Section 502(c) for the improper purpose of gaining tactical advantage over Positive Software.   First, the Debtors want to remove adjudication of the Arbitration Award from the Texas District Court because that court is intimately aware of numerous instances of wrongdoing by the Debtors and their former attorneys and the effect the conduct had in the outcome of the first arbitration.   Indeed, the wrongdoing was so egregious that the Texas District Court itself initiated the Show Cause Action against lead

---

[15] Positive Software reserves all rights to timely move for the withdrawal of the reference of both the Debtors' motion to estimate is claims and its objection to those claims in accordance with 28 U.S.C. § 157(d) and Fed. R. Bankr. Pro. 5011.

Susman Godfrey partners Barnett and Camiña. As Positive Software has previously argued, if the Debtors truly believed that the Arbitration Award was not fatally tainted, it should agree (and it should have done so long ago) to have the Texas District Court make that determination and to establish its claim for $1.5 million *against* Positive Software.[16]  Second, the Debtors hope to establish an estimation procedure premised on the veracity of the Arbitration Award and which would be limited to briefing only on its motion to vacate that award.[17]  That proposed proceeding that would be before a tribunal that has no first-hand familiarity of the substantive issues of Positive Software's claims and no first-hand knowledge regarding the veracity of the witnesses.

20.    And third, hopeful in having Positive Software's claim estimated at "0," the Debtors would then make distributions and thereby seek to render the full adjudication of Positive Software's claims moot.

21.    The summary procedure permitted by Section 502(c) was not intended to permit a debtor to obtain a new forum to hear claims where the original court has made or is likely to make adverse findings and rulings. It is also not intended to prevent creditors from having a fair hearing on their claims. Section 502(c) is not a "Get Out of Jail Free Card" for Debtors whose actions in another forum have been found to be fraudulent, and perhaps criminal.[18]

**B.    The Cross-Motion Should be Denied because the Resolution of Positive Software's Claims by the Texas District Court will not Unduly Delay the Administration of the Debtors' Estates.**

22.    Section 502(c) permits a bankruptcy court to estimate unliquidated claims "where

---

[16] In the Cross-Motion, the Debtors offer that as alternative relief, this Court grant relief from the automatic stay to permit the Texas District Court to determine whether to vacate or confirm the Arbitration Award. *See* Cross-Motion at p. 16. In yet another display of seeking to avoid litigating substantive issues through procedural maneuvers, the Debtors ask that Positive Software not be permitted to amend its original Motion to Vacate, which might well preclude Positive Software from arguing that the Arbitration Award should be vacated for the Debtors and their attorneys' misconduct (as that misconduct was not discovered until after Positive Software filed the Motion to Vacate). *See* Cross-Motion at 24, ¶ 49.

[17] *See* Cross-Motion at 16, ¶ 33.

[18] Judge Godbey has already opined in a hearing that the post-injunction use of LoanForce implicates violations of criminal copyright statutes by the Debtors and their counsel.

the fixing or liquidation of which … would unduly delay the administration of the estate."[19]  The

Texas District Court, either itself or in conjunction with a second arbitration proceeding, can

liquidate Positive Software's claims without "undue delay," especially considering that the

Debtors will not be making any distributions for any time soon.

### (1)    The Debtors are Not Prepared to Make Distributions.

23.    It is certain that the Debtors will take years to administer this case.  The Debtors

and the Committee have just filed the Disclosure Statement and, as evidenced by its complexity,

it is likely to take some time before the Disclosure Statement is even approved -- only after

which time may the Debtors commence the plan solicitation process.  Even if a Plan is

confirmed, given the proposed draft liquidating Plan's complexity, administration of the

Debtors' estates will take years.

24.    Furthermore, even assuming that adjudication of Positive Software's claims

causes some delay in distributions to other creditors (which presupposes that Positive Software's

claims would be reduced or disallowed), *some* delay does not constitute "undue delay in the

administration" of the Debtors' cases.  Not surprisingly, the Plan provides that funds for disputed

claims will be held in reserve in interest-bearing accounts.  Of course, the Debtors' objection to

possible delay is ironic since they opposed Positive Software's request made in July 2007 to re-

commence the 2003 Litigation.[20]

25.    The Debtors cite a number of cases for the proposition that "undue delay" under

---

[19] *See* 11 U.S.C. § 502(c)(1).

[20] The Debtors attempt to reconcile the inconsistencies of their past and present positions.  *See* Cross-Motion at pp.16-17. Positive Software questions the truth and accuracy of those explanations.   In particular, in the proceedings on the First Stay Motion, the Debtors complain that their attention and resources needed to be focused on other matters.  Of course, *now* the Debtors complain that they would still face hardship, since they no longer have any employees and only one former employee-consultant who can assist on this matter.  *See* Cross-Motion at pp. 21-22, n. 9. What makes the Debtors' complaint so unbelievable is that Positive Software raised this very issue in connection with its First Stay Motion! *See* Transcript of August 7, 2007 Omnibus Hearing [D.I. 2451] at 46, ll. 8-18.  Regardless of their truth and accuracy, the Debtors' explanations do not obviate the fact that Positive Software sought early in the case to obtain relief from the stay and should not be penalized based on the Debtors' theoretical claim that adjudication of those claims will now result in distribution delays.

section 502(c)(1) includes "long delays associated with the liquidation of contingent or unliquidated claims in large chapter 11 cases."[21]  For example, *Bittner* involves the estimation of claims for the limited purpose of voting for the Plan.[22]  The Third Circuit recognizes that the claims at issue were to be liquidated in the original state-court forum.  Because the *Bittner* case involves an actual reorganization, with the reorganized debtor remaining liable for claims, the estimation process did not foreclose distribution to the affected creditor body.[23]  Here, however, the Debtors seek to foreclose Positive Software from obtaining any distribution through the claims estimation process.

26.    Addressing the nature of the claims estimation process, the *Bittner* court does conclude that, in general, estimation under section 501(c)(1) should be done by the bankruptcy judge using "whatever method is best suited to the particular contingencies at issue."[24]  Positive Software maintains that if this Court determines that estimation is warranted, the circumstances of this case require an arbitration. *Bittner* also recognizes that there will be exceptions to the general rule of estimation by the bankruptcy judge: "It is conceivable that in rare and unusual cases arbitration or even a jury trial on all or some of the issues may be necessary to obtain a reasonably accurate evaluation of the claims."[25]  The case at bar involves such rare and unusual circumstances: the Arbitration Award upon which the Debtors rely is suspect to say the least; the case involves numerous complex factual and legal issues; and the Northern District of Texas has a unique interest in keeping the case within its purview, in light of the show cause order against the Debtors' former attorneys in the 2003 Litigation; and the parties have already prepared and tried this matter once before.

---

[21] *See* Cross-Motion at p. 12, ¶ 26 (emphasis added).
[22] *See Bittner v. Borne Chemical, Inc.*, 691 F.2d 134, 137, n. 9 (3rd Cir. 1982).
[23] *Id*. at 135 (noting that the estimated claims would, if allowed, be excepted from the debtor's discharge).
[24]*See* id. at 135.
[25]*Id.*  (citing 3 COLLIER ON BANKRUPTCY P 502.03 (15th ed. 1981)).

27.    *Owens Corning* is equally distinguishable.  *Owens Corning* involves the estimation of pending and future claims of plaintiffs suffering from asbestos-related diseases that may take years to develop.[26]  Specifically, the court in *Owens Corning* was faced with the estimation of approximately 128,000 pending claims and thousands of future claims which experts testified would be valued at between approximately $2 and 11 billion.x-msg://303/ - _ftn2[27]  Similarly, *In Re Armstrong World Industries*[28] and In *Re Federal Mogul-Global*[29] http://by118w.bay118.mail.live.com/mail/EditMessageLight.aspx?n=1979593588 - _ftn2involve thousands of pending and future asbestos-related claims threatening billions of dollars in liability.  *In re Stone & Webster* involved the decommissioning of a nuclear power plant.[30]  There, the court emphasized that an estimation is only required if liquidation of a claim would take an "unreasonably long time."[31]  The bankruptcy court had already conducted a seven-day trial on liability and damages and was fully versed in the factual and legal issues of the case.[32]http://by118w.bay118.mail.live.com/mail/EditMessageLight.aspx?n=1979593588 - _ftn5

**(2)    The Texas District Court is the Most Efficient Forum for Determining Positive Software's Claims.**

28.    The Debtors' assertion that it will take some four years to fully litigate Positive Software's claims is premised on a number of faulty assumptions.  That the Debtors' argument correctly assumes that the Texas District Court will vacate the Arbitration Award and that there will be further proceedings on the merits.  However, that fact argues against their attempt to have the claim estimated at $0 based upon the Arbitration Award.  A second round of litigation can proceed without delay because the parties have all litigated these claims once in arbitration.

---

[26] *See Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719 (D. Del. 2005).
[27] *Id* at 721.
[28] *See In Re Armstrong World Industries, Inc., et al.*, 348 B.R. 111, 115-16 (D. Del. 2006)
[29] *Comm. Of Asbestos Claimants v. Green (In re Federal Mogul Global, Inc.)*, 330 B.R. 133, 144-45 (D. Del. 2005.)
[30] *In re Stone & Webster, Inc.,* 279 B.R. 748, 810 (D. Del. 2002).
[31] *Id* at 810.
[32] *Id.*

Thus, the parties have (a) taken and completed discovery (except for a small amount of additional discovery regarding documents previously claimed by the Debtors' as privileged and the fraudulently withheld documents); (b) briefed legal issues; and (c) retained expert witnesses. Accordingly, permitting the Texas District Court to resume the 2003 Litigation is, by far, the most efficient and fair mechanism for liquidating Positive Software's claims.

29.     Furthermore, the adjudication of Positive Software's claims *and* the defenses asserted by the Debtors, even for estimation purposes, will require both the interpretation and application of a complex body of intellectual property law.  The Texas District Court is the forum best able to address those claims and defenses.  Not only does the Texas District have familiarity with the facts asserted and issues raised in the 2003 Litigation, Judge David Godbey, the district court judge assigned to the case, has particular expertise in software-related cases.[33] Peter Burns, the proposed AAA arbitrator, also appears well qualified to hear the 2003 Litigation since he has a degree in computer science and has practiced intellectual property law for over twenty-years.

30.     Positive Software also favors the prompt resolution of its claims and proposes that the parties agree not to appeal orders, judgments and/or awards made by the Texas District Court or any subsequent arbitrator.  If the parties agree to, or this Court orders them to forego appeals, it is likely that a decision would be rendered on Positive Software's claims within six months to a year.

**C.     This Court Should Abstain from Hearing the Objection and Cross-Motion.**

---

[33] *See* Dallas Bar Association Judicial Profiles at http://www.dallasbar.org/judiciary/profiles.asp?item=24 indicating that Judge Godbey has a math and electrical engineering degree, worked at Texas Instruments as a software engineer before attending Harvard Law School, and remains a member of the patent and trademark bar, the area in which he practiced before taking a state district court bench.  The fact that Judge Godbey held a state district court bench for a decade is also important, as the Software Subscription Agreement between the Debtors and Positive Software requires the judicial officer hearing claims to apply Texas procedural rules. Judge Godbey is the only jurist involved who has extensive experience with both the procedural and substantive law that applies to this matter.
.

31.     The principles underlying the permissive abstention provision provided in Section 1334(c)(1) of Title 28 also militate favor granting the Second Stay Motion and permitting the 2003 Litigation to proceed.  Section 1334(c)(1) provides that a district court (or, by reference, a bankruptcy court) may abstain from hearing any proceeding if to do so would be in the interests of justice.[34]

32.     Although section 1334(c)(1) is silent regarding factors a court may consider in determining whether to abstain, there are many judicially recognized factors here, including (to name a few): (i) the difficulty or unsettled nature of the law; (ii) the presence of a related proceeding in a non-bankruptcy court; (iii) the avoidance of forum shopping; and (iv) the burden to the bankruptcy court's docket.[35]

33.     Those factors support abstention.  First, the 2003 Litigation involves intricate facts and multi-faceted intellectual property claims and defenses.  Second, the 2003 Litigation has been pending for nearly five years before the Texas District Court and that court has held numerous hearings, including evidentiary hearings with live witnesses, during that time.  Third, with regard to the 2003 Litigation and whether to vacate the Arbitration Award, the Debtors' Cross-Motion appears to be a clear attempt to find a more favorable forum than the Texas District Court.  And fourth, if this Court were even to attempt to properly and fairly estimate Positive Software's claims, it would have to devote substantial resources to that effort.  The record of the underlying 2003 Litigation encompasses some 800,000 pages and over 450 docket entries (not including motions, responses and orders in the arbitration).

---

[34] Although Section 1334(c)(1) has been argued to apply only to issues of comity involving state courts, the provisions is broadly worded and also applies to instances involving matters before sister federal courts.  *See The Asbestosis Claimants v. Apex Oil Co. (in re Apex Oil Co)*, 980 F.2d 1150, 1151 (8th Cir. 1992), *accord McMahon Books, Inc. v. New Castle Associates (in re McMahon Books, Inc.)*, 173 B.R. 868, 873 n. 10 (Bankr. D. Del. 1994).

[35] *See Marcus Lemonis and Freedom Roads LLC, v. Doerge Capital Collateralized Bridge Fund, L.P.* (*in re Holiday RV Superstores, Inc.),* 362, B.R. 126, 130 (D. Del. 2007).

34.     Furthermore, fundamental issues of comity dictate that this Court permit Positive Software to litigate its claims against the Debtors in the 2003 Litigation.  The Texas District Court has already made findings and statements relevant to the issues in dispute.  The most notable of those is how the Arbitration Award is fatally tainted by the unethical conduct committed by Susman Godfrey.  The Texas District Court's interest in this case is highlighted by its instigation of the Show Cause Action, in which it seeks to determine whether and to what extent Barnett and Camiña should be disciplined for misconduct.

35.     Accordingly, in the interests of justice, this Court should abstain from hearing the Objection and the Cross-Motion.

**D.     Response to Objection.**

36.     The Debtors continue to rely on the Arbitration Award as the touchstone for their objection to Positive Software's claims.   Mr. Shurn, the arbitrator recognized that his eighty-six pages of detailed findings would likely have gone against the Debtors had they and their attorneys produced the original LoanForce script.  And the Debtors, once again, avoid addressing Judge Godbey's statement that had he reached the issue of the roles fraud and wrongful conduct played in the arbitration process, he likely would have vacated the Arbitration Award on that basis.

37.     Absent the tainted Arbitration Award, the *best* indication that Positive Software's claims are meritorious remains the Preliminary Injunction Order issued by the Texas District Court, finding that Positive Software had a "substantial likelihood of success" on its claims. Positive Software's claims, in short, are meritorious.

## V.     CONCLUSION

The Debtors talk about their "7,000 innocent creditors."[36]  Positive Software counts itself among those 7,000 that have suffered as a result not only of the Debtors' business failure, but also its fraudulent and likely criminal conduct.  Positive Software has the same right as its creditor-brethren to have its claims heard and ruled upon in the appropriate forum. In Positive Software's case, that forum is the Texas District Court.  Positive Software looks forward, nearly seven months after it first made that request, to re-commencing the 2003 Litigation and in liquidating its claims.

## VI.     REQUEST FOR RELIEF

46.     Positive Software respectfully requests that this Court deny the Cross-Motion and grant Positive Software such other and further relief to which it may be justly entitled.

Dated:  February 4, 2008                          Respectfully submitted,
       Wilmington, Delaware

                                    FOX ROTHSCHILD LLP

                             By:     /s/ Daniel K. Astin
                                    Daniel K. Astin, Esquire (Del. No. 4068)
                                    Anthony M. Saccullo, Esquire (Del. No. 4141)
                                    Citizens Bank Center, Suite 1300
                                    919 N. Market Street, P.O. Box 2323
                                    Wilmington, Delaware  19899-2323
                                    Tel (302) 654-7444/Fax (302) 656-892
                                    dastin@foxrothschild.com
                                    asaccullo@foxrothschild.com

                                    Michael W. Shore, Attorney in Charge
                                    State Bar No. 18294915
                                    Alfonso Garcia Chan
                                    State Bar No. 24012408
                                    Justin B. Kimble
                                    State Bar No. 24036909
                                    Sherry L. Talton
                                    State Bar No. 24033255

---

[36] See Cross-Motion at 14, ¶ 31.

SHORE CHAN BRAGALONE LLP
325 North Saint Paul Street-Suite 4450
Dallas, Texas 75201
(214) 593-9110 Telephone
(214) 593-9111 Facsimile
shore@shorechan.com
achan@shorechan.com
jkimble@shorechan.com
stalton@shorechan.com

Mark H. Ralston
State Bar No. 16489460
THE RALSTON LAW FIRM
2603 Oak Lawn Avenue, Suite 230, LB 2
Dallas, Texas 75219-9109
Telephone: (214) 295-6416
ralstonlaw@gmail.com

**ATTORNEYS FOR CREDITOR
POSITIVE SOFTWARE SOLUTIONS,
INC.**