# Peter J. Shurn
## Attorney and Counsellor at Law

Fellow,
College of the State Bar of Texas

Life Fellow,
Houston Bar Foundation

14138 Heatherfield Drive
Houston, Texas 77079
Phone: (281) 496-0865
E-mail: pjshurn@ieee.org
File:           Am Arb 103

November 25, 2004

Ralph Canada, Esq.
Akin Gump Strauss Hauer & Feld
1700 Pacific Avenue, Suite 4100
Dallas Texas 75201-4675

     Re: *Positive Software Solutions, Inc. v. New Century Mortgage Corp. et al.*

Dear Mr. Canada:

  I write in response to your e-mails dated November 15 and 23, 2004. In view of the inherent problems with e-mail communication, hard copies are of course the preferred mode of communication; having not received a hard copy I nevertheless am responding, as promised in my e-mail of November 23, 2004.

  I appreciate and thank you for your e-mail articulating the bases for Positive Software's original request of a refund of the amount Positive paid to me being increased to an amount some 2½ times the amount originally requested. I trust you and Positive Software will give equal attention to my response.

  Note I cannot refund any portion of the fees paid to me by Positive until the latter part of December so as to bring finality and closure to this matter, but would like to conclude this matter by December 31. Nevertheless, as is usually so in any negotiation, nothing is agreed to until all is agreed to.

* * *

  Positive's request for a refund of fees paid to me is apparently predicated on portions of the Court's Order which state, *inter alia*:

> "The Arbitrator served as co-counsel with New Century's counsel over a period of years in significant litigation ... for seven years in the 1990's ... [from] 1990 [to] ... April 26, 1996. ... New Century's outside law firm in this matter ('SG Law Firm') and the Arbitrator's law firm ('AWD law firm') represented Intel as co-counsel from the beginning of the action. ... The Arbitrator began representing Intel in the Intel Litigation in September 1992. New Century claims that co-counsel's personal involvement in the case ended in approximately July 1992, before the Arbitrator's involvement in the case began. However, co-counsel's name continues to appear with the Arbitrator's name on pleadings as late as June 1993. [S]ee also Intel's Notice of Appeal to the Federal Circuit on September 19, 1993 (bearing co-counsel's name and AWD Law Firm, but not the Arbitrator personally). Moreover, Court opinions still reflect New Century's co-counsel as one of the counsel for Intel, together with AWD Law Firm, as late as 1995. ... New Century's counsel

did not disclose their prior relationship with the Arbitrator. ... At no time before, during, or after the arbitration did the Arbitrator disclose his prior relationship with SG Law Firm or New Century's co-counsel. ... The question here is ... whether the parties had a right to have those facts disclosed at the outset. Here the prior relationship was an extensive one, extending over years in high profile litigation. It ... personally involved the Arbitrator and New Century's co-counsel. And even if New Century is correct that its co-counsel quit working on the Intel Litigation before the Arbitrator began working on it, co-counsel's name remained on the pleadings and in court records for years after that; that fact alone is significant to the extent the appearance of impropriety is the issue. ... Under all these circumstances, the Court holds that the nondisclosure of the prior relationship creates a reasonable impression of partiality. ... The Court finds [New Century's] claim [that the Arbitrator did not remember] factually improbable and legally irrelevant. ... The Court therefore finds at minimum he [the Arbitrator] had constructive knowledge of those relationships, and his failure to disclose them raises a reasonable impression of partiality.

"Positive Software moved to amend its motion to vacate arbitration award to assert claims that the award should be vacated due to New Century's fraud in, *inter alia*, failing to produce the November 2000 script for the original LoanForce database. ... If the Court were to address that motion on the merits, it likely would grant the motion to amend and grant the amended motion to vacate for, *inter alia*, New Century's failure to produce the November 2000 script."

The Court appears to be under the impression that, among other things: the AWD Law Firm is the firm at which I practice law and I have access to that firm's records; I personally had a professional relationship with one of New Century's co-counsel for some 7 years from the 1990's until April 1996, or some 3½ years from September 1992 until April 1996; it is factually improbable that I did not recall the alleged 3½ year [or alleged 7 year] prior relationship. These "facts", as well as others, cannot stand close scrutiny.

As Positive is aware: I began practicing law in 1977, and from 1981 until 2000 I practiced law at Arnold, White & Durkee, from 2000 until 2001 I practiced law at Howrey Simon Arnold & White LLP, and since 2001 I have been a sole practitioner; I have taught course in *Patent Law*, *Advanced Patent Law*, *Licensing Law*, and *Intellectual Property Litigation* at South Texas College of Law, in the mid-1980's and since January 2000, and have taught at numerous continuing legal education programs; and I have been an active member of professional associations.

During the course of my legal career, I have encountered thousands of parties, attorneys and witnesses, as well as students and conference participants. I do not maintain a database of past professional contacts, nor do I recall the identity of all such entities. Similarly, I do not maintain a database of clients or persons that I might have represented or had contact with while working at previous law firms before becoming a sole practitioner in 2001, nor do I recall the identity of all such entities. And, I do not maintain a database of clients or persons which previous law firms might have represented or had contact.

Any disclosure I made and could make at the outset of this Arbitration in mid-2003, and during this Arbitration, was drawn from the records of my present sole practitioner law firm, and from existing knowledge within the limits of my recollection.

Arbitrators must make reasonable efforts to inform themselves of matters that could cause persons aware of the facts to reasonably entertain a doubt that the proposed Arbitrator would be able to be impartial and must disclose all such matters to the parties. While this is a somewhat

subjective standard and reasonable persons could disagree, I made every effort to comply with the foregoing.

I suspect that the actual facts most likely will show that any involvement I had in the Intel case referenced in the Court's Order lasted on and off for a few months, and was not significant. Intel was never my client; thus, most likely I helped someone out for a short period of time. That my name appeared on some documents respecting a particular matter does not mean I had any actual involvement in that matter.

I do not know who the New Century co-counsel is with whom I supposedly had a 3½ year or 7 year ongoing relationship in the 1990's. I at no time recalled the names, recognized the voices, or recognized the faces, of any of New Century's co-counsel. Nor of Positive's.

I note that I was first involved in this arbitration matter in mid-2003, which I suspect was some 10 years after whatever brief involvement I might have had in the Intel case referenced in the Court's Order.

\* \* \*

Positive was successful in having the Award vacated. The Court indicated that if it had not vacated the Award based on Positive's attack on the Arbitrator, it would likely have vacated the Award due to New Century's failure to timely produce "the November 2000 script". Consequently, Positive gets a second chance to prove its case. And this time, Positive has in hand a road-map of how to win its case—my 86-page Award. Just as my rulings on various of the summary judgment motions gave Positive insight into what it had to do to prove various aspects of it case, my extensively detailed Award gives Positive insight into what it needs to do to prove its entire case. Had Positive such a document in hand at the time it tried its case, the outcome most likely would have been different.

\* \* \*

I am unaware of whether or not an appeal has been taken on the Court's Order and, if so, the status of that appeal. Nevertheless, a prompt resolution of the apparent dispute between Positive and the Arbitrator brings closure and finality at an early date. There is something to be said for that. With that goal in mind, I have revised the draft agreement you sent to me. Those revisions, which I believe are self-explanatory, I believe are reasonable in view of the foregoing and the uncertainties of litigation. Obviously, Positive's primary objective is its dispute with New Century, and not with the Arbitrator who did the best job he could given the evidence presented and controlling Fifth Circuit law.

Cordially,

*Peter J. Shurn*

Peter J. Shurn