## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | **Objection Deadline: February 27, 2008 at 4:00 p.m.** |
| | : | **Hearing Date: March 5, 2008 at 1:30 p.m.** |
| | : | |

**MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER (A) APPROVING PROPOSED DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF FEBRUARY 2, 2008; (B) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PROPOSED JOINT CHAPTER 11 PLAN OF LIQUIDATION AND (C) SCHEDULING A HEARING ON CONFIRMATION OF PROPOSED JOINT CHAPTER 11 PLAN OF LIQUIDATION AND APPROVING <u>RELATED NOTICE PROCEDURES</u>**

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby move the Court for the entry of an order:  (i) approving the Debtors'

Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official

Committee of Unsecured Creditors Dated as of February 2, 2008 (as it may be amended, the

"Disclosure Statement") pursuant to section 1125 of title 11 of the United States Code (as

---

1 The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

amended from time to time, the "Bankruptcy Code"); (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the proposed Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 (as it may be amended, the "Plan"),[2] including approval of (a) the forms of ballots for submitting votes on the Plan, (b) the deadline for the submission of ballots, (c) the contents of the proposed solicitation packages to be distributed to creditors and other parties in interest in connection with the solicitation of votes on the Plan (collectively, the "Solicitation Packages"), (d) the proposed record date for Plan voting, and (e) certain related relief; and (iii) scheduling a hearing on confirmation of the Plan (the "Confirmation Hearing") and approving related notice procedures (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

## I.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to sections 157 and 1334 of Title 28 of the United States Code. This matter is a core proceeding pursuant to sections 1408 and 1409 of Title 28 of the United States Code.

## II.

## BACKGROUND

2.      Prior to their chapter 11 filings, the Debtors originated and purchased mortgage loans and sold mortgage loans through whole loan sales and securitizations. The Debtors often retained residual economic interests in the loan securitizations. The Debtors also serviced the loans that had been securitized and certain of the whole loans that they sold.

---

[2]  Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

3.      On April 2, 2007 (the "Petition Date"), the Debtors, other than New
Century Warehouse Corporation ("Access Lending"), filed the voluntary petitions for relief
under chapter 11 of the Bankruptcy Code.  Access Lending filed its chapter 11 bankruptcy
petition on August 3, 2007.  Since filing for bankruptcy protection, the Debtors have continued
to operate their business and manage their affairs as debtors and debtors in possession pursuant
to sections 1107 and 1108 of the Bankruptcy Code.  On April 4, 2007, the Court entered an order
authorizing the joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases"),
which order was amended to include Access Lending following Access Lending's chapter 11
filing.

4.      Since the Petition Date, the Debtors have been focused on expeditiously
liquidating their assets in order to maximize the value of the Estates.  The Debtors have now
completed the liquidation of most of their assets including selling the mortgage loans and
residual interests and in securitization trusts that were not subject to repurchase agreements,
selling their servicing businesses, and selling their principal technology assets.  In addition to
these asset sales, the Debtors have substantially completed the downsizing and consolidation of
their operations.  The Debtors have rejected approximately 295 real property leases and
approximately 825 executory contracts.  The Debtors are in the process of liquidating additional
assets and identifying additional leases and contracts for rejection or assumption and assignment.
In addition, the Debtors are continuing to pursue a number of other potential sources of recovery
for their stakeholders, including resolving a dispute with certain counterparties to repurchase
agreements over approximately $43 million held in escrow pursuant to an order of the Court,
determining the entitlement of the Debtors' estates (the "Estates") to approximately $ 42.5
million held in trust pursuant to the Debtors' deferred compensation plan, pursuing a claim for a

Federal tax refund of approximately $66 million, and selling certain other miscellaneous assets and pursuing a number of litigation claims.

5.     The Debtors have also made substantial progress in resolving many claims against the Estates, including resolving disputes with DB Structured Products and General Electric Capital Corporation and resolution of a number of claims objections.  To be clear, there is still significant work ahead to resolve some hotly contested claims against the Estates and in resolving a large number of claims.

6.     The Debtors, the Official Committee of Unsecured Creditors (the "Committee") and a number of other major creditors have spent substantial time negotiating and developing a chapter 11 plan that will provide a structure for the remaining work needed to realize on remaining assets, to resolve claims efficiently and, perhaps most importantly, to begin making distributions to creditors.  The members of the Committee hold claims that reflect a broad cross-section of the major claims against the Debtors, including creditors with claims of different types and against different Debtors.  The Committee and the Debtors have worked extensively over the last approximately 6 months to develop a chapter 11 plan of liquidation that fairly deals with the divergent interests of stakeholders.  This effort bore fruit in the Plan that the Debtors and the Committee as co-proponents (the "Plan Proponents") filed on February 2, 2008.

## III.

## REQUEST FOR APPROVAL OF THE DISCLOSURE STATEMENT

7.      The Debtors request that the Disclosure Statement be approved as providing "adequate information" in accordance with section 1125 of the Bankruptcy Code.  For the reasons described below, the Debtors submit that such approval is warranted and appropriate.

### A.      Adequate Notice of the Disclosure Statement Hearing Was Provided.

8.      On February 2, 2008, the Debtors filed the Plan and Disclosure Statement. Through the creation of the Liquidating Trust, the Plan provides a mechanism to complete the administration of the Estates.  The Plan also provides for recoveries to the Holders of Debtors' Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims (defined collectively in the Plan as "Allowed A/P/S Claims") and Allowed Unsecured Claims through distribution of the net proceeds of the sale and liquidation of substantially all of the Debtors' Assets and recoveries (if any) from the Causes of Action.

9.      Bankruptcy Rule 3017(a) provides as follows:

> [A]fter a disclosure statement is filed in accordance with
> [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at
> least 25 days' notice to the debtor, creditors, equity security
> holders and other parties in interest as provided in [Bankruptcy]
> Rule 2002 to consider the disclosure statement and any objections
> or modifications thereto.  The plan and the disclosure statement
> shall be mailed with the notice of the hearing only to the debtor,
> any trustee or committee appointed under the [Bankruptcy] Code,
> the Securities and Exchange Commission and any party in interest
> who requests in writing a copy of the statement or plan. . . .

Fed. R. Bankr. P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires notice by mail to the trustee, all creditors, and indenture trustees of the time set for filing objections to, and the hearing to consider approval of, a disclosure statement.  Bankruptcy Rule 2002(d) requires that

equity security holders be given notice of the foregoing in the manner and the form directed by the Court.

10.     In accordance with these requirements, on February 2, 2008 the Debtors mailed a copy of a notice in the form attached hereto as Exhibit A (the "Disclosure Statement Notice") by first class mail to the following parties: (a) all persons or entities that filed Proofs of Claim, which were docketed on or before the date of the Disclosure Statement Notice; (b) all persons or entities listed in the Debtors' Schedules, as holding liquidated, contingent, undisputed claims, and lists of equity security holders; (c) any other known Holders of Claims or Interests; and (d) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases. Among other things, the Disclosure Statement Notice identifies the date, time and place of the hearing on the Disclosure Statement (the "Disclosure Statement Hearing") and the deadline and procedures for asserting objections to the approval of the Disclosure Statement.[3]

11.     The Debtors submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[3] In particular, the Disclosure Statement Notice provides that objections or proposed modifications to the Disclosure Statement, if any, must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Disclosure Statement to resolve any such objection or response; (d) be filed, together with proof of service, with the Court and served so as to be actually received on or before 4:00 p.m. (Eastern Time) on February 27, 2008 by the Debtors, counsel to the Committee and the Office of the United States Trustee. Requiring that objections and proposed modifications to the Disclosure Statement be filed and served no later than such date and time is in compliance with Bankruptcy Rule 2002(b)(1) and will afford the Court and the Debtors sufficient time to consider the objections and proposed modifications before the Disclosure Statement Hearing.

Bankruptcy Court for the District of Delaware (as amended from time to time, the "Local Rules").

## B.    The Disclosure Statement Contains Adequate Information.

12.    Under section 1125 of the Bankruptcy Code, a debtor must provide its creditors and interest holders with "adequate information" regarding the debtor's proposed plan:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the debtor's plan. See In re Zenith Elecs. Corp., 241 B.R. 92, 99–100 (Bankr. D. Del. 1999); In re Dakota Rail, Inc., 104 B.R. 138, 142–43 (Bankr. D. Minn. 1989); In re Copy Crafters Quickprint Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of a disclosure statement is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties).

13.    A court has broad discretion in determining whether a disclosure statement contains adequate information.  See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop.), 150 F.3d 503, 518 (5th Cir. 1998), cert. denied, 119 S. Ct. 2019 (1999); Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995); see also Dakota Rail, 104 B.R. at

143 (court has "wide discretion to determine . . . whether a disclosure statement contains adequate information without burdensome, unnecessary and cumbersome detail").

        14.     Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. In that regard, courts generally examine whether a disclosure statement contains, where and if applicable, the following types of information:

a.     the circumstances that gave rise to the filing of the bankruptcy petition;

b.     a complete description of the available assets and their value;

c.     the anticipated future of the debtor;

d.     the source of the information provided in the disclosure statement;

e.     a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f.     the financial condition and performance of the debtor while in chapter 11;

g.     information regarding claims against the debtor's estate;

h.     a liquidation analysis identifying the estimated return that creditors would receive if the debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code;

i.     the accounting and valuation methods used to produce the financial information in the disclosure statement;

j.     information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

k.     a summary of the plan of reorganization;

l.     an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

m.     the collectibility of any accounts receivable;

n.     any financial information, valuations or <u>pro forma</u> projections that would be relevant to creditors' determinations of whether to accept or reject the plan of reorganization;

o.     information relevant to the risks being taken by the creditors and interest holders;

p.     the actual or projected value that could be obtained from avoidable transfers;

q.     the existence, likelihood and possible success of nonbankruptcy litigation;

r.     the tax consequences of the plan of reorganization; and

s.     the relationship of the debtor with its affiliates.

See, <u>e.g.</u>, <u>In re Scioto Valley Mortgage Co.</u>, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988).

15.     The Disclosure Statement contains ample information with respect to the topics identified above where applicable, including, <u>inter alia</u>, information with respect to: (a) the terms of the Plan; (b) certain events preceding the Chapter 11 Cases; (c) the status of the Debtors' businesses during the course of the Chapter 11 Cases; (d) estimates of the Claims asserted or to be asserted against the Estates and the value of distributions to be received by Holders of such Claims; (f) the risk factors affecting the Plan; (g) the method and timing of distributions under the Plan; (h) a comparison of the treatment of Creditors under the Plan and the treatment such Creditors would receive if the Debtors' bankruptcy cases were cases under chapter 7 of the Bankruptcy Code; (i) the federal tax consequences of the Plan; and (j) appropriate disclaimers regarding the Court's approval of information only as contained in the Disclosure Statement.[4] Accordingly, the Disclosure Statement contains adequate information

---

[4] As originally filed, the Disclosure Statement indicated that certain information, including financial information and information related to the estimated recoveries of Creditors under the terms of the Plan and the assumptions underlying the Plan would be supplied subsequently. The Plan Proponents have been refining the data to be included, and the Debtors will amend the Disclosure Statement to include this information no later than seven (7) days prior to the Disclosure Statement Hearing

within the meaning of section 1125 of the Bankruptcy Code and, on that basis, should be approved.

IV.

## PROCEDURES FOR TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN

**A.    Approval of Form of Ballot.**

   16.  Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute ballots to creditors[5] entitled to vote on the Plan in the form attached hereto as Exhibit B (the "Ballots"). The Ballots are based on Official Form No. 14, but have been modified to address the particular terms of the Plan. The Debtors propose that Ballots will be distributed only to Holders of Claims in the Classes listed in the following table, as such Classes are the only Classes entitled to vote to accept or reject the Plan:

| Class | Description |
|---|---|
| Class HC3a | Special Deficiency Claims against New Century Financial Corporation ("NCFC") |
| Class HC3b | Other Unsecured Claims against NCFC |
| Class HC7 | Other Unsecured Claims against New Century TRS Holdings, Inc. ("TRS Holdings") |
| Class HC10a | Special Deficiency Claims against New Century Credit Corporation ("NC Credit") |
| Class HC10b | Other Unsecured Claims against NC Credit |
| Class HC13 | Other Unsecured Claims against New Century Residual IV Corporation ("NC Residual IV") |
| Class OP3a | Special Deficiency Claims against New Century Mortgage Corporation ("NCMC") |

---

[5] Holders of NCFC Interests and 510(b) Claims are deemed to have rejected the Plan. Accordingly, as explained below, their votes will not be solicited and they will not be provided Ballots.

| Class | Description |
|---|---|
| Class OP3b | EPD/Breach Claims against NCMC |
| Class OP3c | Other Unsecured Claims against NCMC |
| Class OP6a | Special Deficiency Claims against New Century Capital Corporation ("NC Capital") |
| Class OP6b | EPD/Breach Claims against NC Capital |
| Class OP6c | Other Unsecured Claims against NC Capital |
| Class OP9a | Special Deficiency Claims against Home123 Corporation ("Home123") |
| Class OP9b | Other Unsecured Claims against Home123 |
| Class OP12 | Other Unsecured Claims against NC Asset Holding, L.P. ("NC Asset Holding"), NC Deltex, LLC ("NC Deltex"), New Century R.E.O. Corp. ("NC REO"), New Century R.E.O. II Corp. ("NC REO II"), New Century R.E.O. III Corp. ("NC REO III"), NC Residual III Corporation ("NC Residual III"), New Century Mortgage Ventures, LLC ("NCM Ventures"), and NCoral, L.P. ("NCoral") |
| Class AL3 | Other Unsecured Claims against Access Lending |

17.     The Claims in the Classes listed in the following table are unimpaired under the Plan and, therefore, are conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code:

| Class | Description |
|---|---|
| Class HC1 | Priority Claims against NCFC |
| Class HC2 | Secured Claims against NCFC |
| Class HC5 | Priority Claims against TRS Holdings |
| Class HC6 | Secured Claims against TRS Holdings |
| Class HC8 | Priority Claims against NC Credit |
| Class HC9 | Secured Claims against NC Credit |
| Class HC11 | Priority Claims against NC Residual IV |
| Class HC12 | Secured Claims against NC Residual IV |
| Class OP1 | Priority Claims against NCMC |

| Class | Description |
|---|---|
| Class OP2 | Secured Claims against NCMC |
| Class OP4 | Priority Claims against NC Capital |
| Class OP5 | Secured Claims against NC Capital |
| Class OP7 | Priority Claims against Home123 |
| Class OP8 | Secured Claims against Home123 |
| Class OP10 | Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class OP11 | Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class AL1 | Priority Claims against Access Lending |
| Class AL2 | Secured Claims against Access Lending |

18.     Additionally, the Classes listed in the following table are deemed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code:

| Class | Description |
|---|---|
| Class HC4a | Series A Preferred Stock Interests |
| Class HC4b | Series A 510(b) Claims |
| Class HC4c | Series B Preferred Stock Interests |
| Class HC4d | Series B 510(b) Claims |
| Class HC4e | Common Stock Interests and Common Stock 510(b) Claims |

19.     Classes HC4a, HC4b, HC4c, HC4d, and HC4e together with Classes HC1, HC2, HC5, HC6, HC8, HC9, HC11, HC12, OP1, OP2, OP4, OP5, OP7, OP8, OP10, OP11, AL1, and AL2 are referred to herein as  the "Non-Voting Classes." Solicitation of the Non-Voting Classes under the Plan is not required and no Ballots have been proposed for Holders of Claims or Interests in the Non-Voting Classes.  The Debtors propose to send (1) a notice of non-voting status, substantially in the form attached hereto as Exhibit D, to the Holders of Claims

(other than 510(b) Claims) in the Non-Voting Classes and (2) a notice of non-voting status,

substantially, in the form attached hereto as Exhibit E, to the holders of record of NCFC Interests

and the Holders of 510(b) Claims in the Non-Voting Classes.

**B.**     **Voting Deadline for Receipt of Ballots.**

20.    Bankruptcy Rule 3017(c) provides that, on or before approval of a

disclosure statement, the Court may fix a time within which the holders of claims or equity

interests may accept or reject a plan. The Debtors anticipate commencing the Plan solicitation

period by mailing the Solicitation Packages by no later than March 17, 2008. Based on this

schedule, the Debtors propose that to be counted as votes to accept or reject the Plan, all Ballots

must be properly executed, completed and delivered to XRoads Case Management Services,

LLC ("XRoads" or the "Balloting Agent")[6] either (a) by mail in the return envelope provided

with each Ballot, (b) by overnight courier or (c) by personal delivery so that, in each case, such

Ballots are received by the Balloting Agent no later than 5:00 p.m., Pacific Time, on April 17,

2008 (the "Voting Deadline").

21.    The Debtors submit that an approximate 30-day solicitation period

provides sufficient time for Creditors to make informed decisions to accept or reject the Plan and

submit timely Ballots.

**C.**     **Procedures for Vote Tabulation**

22.    Section 1126(c) of the Bankruptcy Code provides:

A class of claims has accepted a plan if such plan has been
accepted by creditors, other than any entity designated under
subsection (e) of this section, that hold at least two-thirds in

---

[6] Pursuant to the Order Approving the Retention of XRoads as Claims and Noticing Agent Pursuant to Section
156(c) of the Judicial Code and Rule 2002-1(f) of the Local Bankruptcy Rules [Docket No. 179] and the order
amending such order [Docket No. 4337], the Court authorized the Debtors to retain XRoads to provide assistance in
the preparation, mailing and tabulation of ballots for the purpose of voting to accept or reject the Plan. Accordingly,
XRoads will serve as the Debtors' Balloting Agent in connection with the preparation, distribution and tabulation of
the Ballots.

amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

23.     Solely for purposes of voting to accept or reject the Plan — and not for the purpose of the allowance of, or distribution on account of, a Claim or Interest and without prejudice to the rights of the Debtors in any other context — the Debtors propose that each Claim within a Class of Claims entitled to vote to accept or reject the Plan be temporarily allowed in accordance with the following rules (collectively, the "Tabulation Rules"):

a.     Other than Claims in Classes OP3b and OP6b and unless otherwise provided in the Tabulation Rules described below, a Claim will be deemed temporarily allowed for voting purposes in an amount equal to (i) the amount of such Claim as set forth in a timely filed Proof of Claim or (ii) if no Claim has been timely filed, the amount of such Claim as set forth in the respective Debtors' Schedules if such claim is listed in the Schedules;

b.     Claims in Classes OP3b and OP6b will be temporarily allowed for voting purposes in an amount equal to the damages determined by the EPD/Breach Claim Protocol, a draft of which is attached as Exhibit F hereto and a previous version of which was attached as Exhibit B to the Plan as filed on February 2, 2008; in order to determine this damage amount, a Holder of a Claim in these Classes, must supply the information requested by the Debtors in questionnaires that the Debtors transmitted to Creditors in these Classes on or about January 23, 2008; if a Holder of such a Claim fails to provide the Debtors with the requested information so that the Debtors are unable to determine the amount of damages that would be calculated pursuant to the EPD/Breach Protocol, the Claim will be temporarily allowed for voting purposes only in the amount of $1.00;

c.     If a Claim is deemed allowed in accordance with the Plan, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;

d. If a Claim for which a Proof of Claim has been timely filed is filed as a contingent or unliquidated Claim it will be temporarily allowed for voting purposes only in the amount of $1.00;

e. If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

f. If the Debtors have filed and served an objection to a Claim by the Voting Deadline, which objection has not been resolved, such Claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection or by order of the Court unless the Court has issued an order estimating or otherwise temporarily allowing the Claim for voting purposes pursuant to a motion filed by the Creditor;

g. If a Holder of a Claim identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot;

h. If a Holder of a Claim identifies a Claim amount on its Ballot that is more that the amount otherwise calculated in accordance with the Tabulation Rules, the Claim will be temporarily allowed for voting purposes in the amount calculated in accordance with the Tabulation Rules;

i. Any Ballot received from a Holder of a Claim listed as contingent, disputed, or unliquidated in the Debtors' Schedules will not be counted unless the Holder of such Claim filed a Proof of Claim on or before the applicable Bar Date.

24. The Debtors believe that the proposed Tabulation Rules will establish a fair and equitable voting process. Nevertheless, if any claimant seeks to challenge the allowance of its Claim for voting purposes in accordance with the Tabulation Rules, the Debtors propose that such claimant be required to file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") and serve such motion on the Debtors so that it is received by the later of (a) March 27, 2008 and (b) five days after the date of service

of a notice of an objection, if any, to the underlying Claim. In accordance with Bankruptcy
Rule 3018, the Debtors further propose that any Ballot submitted by a Creditor that files a
Rule 3018 Motion will be counted solely in accordance with the Debtors' proposed Tabulation
Rules and the other applicable provisions contained herein unless and until the underlying Claim
is temporarily allowed by the Court for voting purposes in a different amount, after notice and a
hearing. The Debtors reserve the right to request that the Bankruptcy Court modify the voting
rules or procedures if necessary or appropriate.

25.    In tabulating the Ballots, the Debtors request that the following additional
procedures be utilized: (a) any Ballot that is properly completed, executed and timely returned to
the Balloting Agent, but that does not indicate an acceptance or rejection of the Plan, will not be
counted either as a vote to accept the Plan or a vote to reject the Plan; (b) if a Creditor casts more
than one Ballot voting the same Claim before the Voting Deadline, the last Ballot received
before the Voting Deadline will be deemed to reflect the voter's intent and thus will supersede
any prior Ballots; (c) if a Creditor holds a Claim in more than one Class, such creditor must
submit a separate Ballot for voting its Claims in each Class; (d) if a Creditor uses one Ballot to
vote Claims in more than one Class, such Ballot will not be counted; and (e) Creditors will be
required to vote all of their Claims within a particular Class under the Plan either to accept or
reject the Plan and may not split their votes; thus, a Ballot (or a group of Ballots within a Plan
Class received from a single Creditor) that partially rejects and partially accepts the Plan will not
be counted.

26.     The Debtors proposed that no later than April 21, 2008, XRoads shall file

a voting report (the "Voting Report") with the Bankruptcy Court which will detail the tabulation

of Ballots cast for or against the Plan. The Voting Report will also detail any defective, irregular

or otherwise invalid Ballots that were not counted.

V.

## CONFIRMATION HEARING AND NOTICE, RECORD DATE AND PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES

### A.     The Confirmation Hearing.

27.     Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall
> fix a time within which the holders of claims and interests may
> accept or reject the plan and may fix a date for the hearing on
> confirmation.

Fed. R. Bankr. P. 3017(c).

28.     In accordance with Bankruptcy Rule 3017(c) and consistent with the

Debtors' proposed solicitation schedule, the Debtors request that the Confirmation Hearing be

scheduled for not later than April 23, 2008. The Confirmation Hearing may be adjourned from

time to time by the Court without further notice except for an announcement made at the

Confirmation Hearing or any adjourned confirmation hearing. The Debtors further propose that

objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and

address of the objecting party and the nature of the Claim or Interest of such party; (c) state with

particularity the basis and nature of any objection to the confirmation of the Plan; and (d) be filed

with the Court and served on (i) counsel to the Debtors, O'Melveny & Myers LLP, 275 Battery

Street, San Francisco, California 94111 (Attention: Suzzanne S. Uhland, Esq. and Andrew M.

Parlen, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551,

Wilmington, Delaware 19899, (Attention: Mark D. Collins, Esq. and Michael J. Merchant, Esq.);

(ii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attention: Joseph J. McMahon, Jr., Esq.); and (iii) counsel to the Official Committee of General Unsecured Creditors, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attention: Mark S. Indelicato, Esq. and Mark T. Power, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19891 (Attention: Bonnie Glantz Fatell, Esq. and Regina Stango Kelbon, Esq.) so that they are received no later than 4:00 p.m., Eastern Time, on April 11, 2008, or such other date established by the Debtors that is at least 25 days after the commencement of the solicitation period (the "Confirmation Objection Deadline").

29.     Bankruptcy Rule 2002(b) requires at least 25 days' notice by mail to all creditors and indenture trustees of the time set for filing objections to confirmation of a chapter 11 plan and the hearing to consider confirmation of a chapter 11 plan. Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court. In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to serve on all Creditors and Holders of Interests entitled to receive such documents as set forth herein, as part of the Solicitation Packages and not less than 25 days prior to the Confirmation Objection Deadline, a copy of a notice substantially in the form attached hereto as Exhibit C (the "Confirmation Hearing Notice") setting forth: (a) the Voting Deadline for the submission of Ballots to accept or reject the Plan; (b) the deadline for filing Rule 3018 Motions; (c) the Confirmation Objection Deadline; and (d) the time, date and place of the Confirmation Hearing.

**B.      The Record Date.**

30.     Bankruptcy Rule 3017(d) provides that the "date [an] order approving the disclosure statement is entered," or such other date established by the court, is the record date for

determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to

receive the materials specified in Bankruptcy Rule 3017(d), including ballots for voting on a plan

of reorganization. See Fed. R. Bankr. P. 3017(d). Accordingly, the Debtors propose that the

Court establish March 10, 2008 as the record date pursuant to Bankruptcy Rule 3017(d) for

purposes of determining which Holders of Claims or Interests are entitled to receive Solicitation

Packages and, where applicable, vote on the Plan (the "Record Date"). The establishment of the

Record Date is for notice purposes only and shall otherwise have no preclusive effect.

31.    With respect to a transferred Claim, the Debtors further propose that the

transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such

transferred Claim only if, by the Record Date, (a) all actions necessary to effect the transfer of

the Claim pursuant to Bankruptcy Rule 3001(e) have been completed or (b) the transferee files

(i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a

sworn statement of the transferor supporting the validity of the transfer. Each transferee will be

treated as a single Creditor for purposes of the numerosity requirements in section 1126(c) of the

Bankruptcy Code and the other voting and solicitation procedures set forth herein.

C.    **The Solicitation Package.**

32.    Bankruptcy Rule 3017(d) identifies the materials that must be provided to

holders of claims and equity interests for purposes of soliciting their votes and providing

adequate notice of the hearing on confirmation of a chapter 11 plan:

> Upon approval of a disclosure statement, — except to the extent
> that the court orders otherwise with respect to one or more
> unimpaired classes of creditors or equity security holders — the
> debtor in possession, trustee, proponent of the plan, or clerk as the
> court orders shall mail to all creditors and equity security holders,
> and in a chapter 11 reorganization case shall transmit to the United
> States trustee,

> (1)    the plan or a court-approved summary of the plan;
>
> (2)    the disclosure statement approved by the court;
>
> (3)    notice of the time within which acceptances and rejections of such plan may be filed; and
>
> (4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders pursuant to Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

33.    The Solicitation Packages, comprised of the materials required to be provided to holders of claims and equity interests under Bankruptcy Rule 3017(d), will be mailed to the parties identified in paragraphs 33 and 34 below after the Court has approved the contents of the Disclosure Statement as containing adequate information, as required by section 1125 of the Bankruptcy Code.  Specifically, with regard to Holders of Claims entitled to vote to accept or reject the Plan, the Debtors propose to mail or cause to be mailed Solicitation Packages containing copies of: (a) the Confirmation Hearing Notice; (b) the Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed with the Court on or before the date of the mailing); and (c) an appropriate form of Ballot, a Ballot return envelope and such other materials as the Court may direct.  Additionally, the Debtors propose that the Solicitation Packages mailed Holders of Claims in Classes OP3b and OP6b contain copies of the EPD/Breach Claim Protocol used to calculate the temporarily allowed amount of such Claims.  A draft of the EPD/Breach Claim Protocol is attached hereto as Exhibit F.  The Debtors further

propose that if a Creditor is entitled to vote to accept or reject the Plan on account of more than one Claim, a single Solicitation Package shall be mailed to such Creditor, which Solicitation Package shall contain the appropriate form of Ballots and Ballot return envelopes.

34.    Consistent with Bankruptcy Rule 3017(d), the Debtors propose that (1) Solicitation Packages for Holders of Claims (other than 510(b) Claims) in the Non-Voting Classes under the Plan include a notice of non-voting status substantially in the form attached hereto as Exhibit D, the Confirmation Hearing Notice, and the Disclosure Statement, and (2) Solicitation Packages for Holders of NCFC Interests and Holders of 510(b) Claims include a notice of non-voting status substantially in the form attached hereto as Exhibit E, the Confirmation Hearing Notice, and the Disclosure Statement. With respect to Holders of NCFC Interests, the Debtors propose that Solicitation Packages be sent to holders of record of NCFC Interests as of the Record Date. As set forth herein, solicitation of the Non-Voting Classes under the Plan is not required pursuant to sections 1126(f) and 1126(g) of the Bankruptcy Code.

35.    The Solicitation Packages containing the materials indicated above will be mailed not less than 30 days prior to the Voting Deadline to: (a) all persons or entities that have filed Proofs of Claim on or before the Record Date; (b) all persons or entities listed in the Schedules as holding liquidated, noncontingent, undisputed Claims as of the Record Date (or their transferees or record holders); (c) all other known Holders of Claims against the Debtors (or their transferees or record holders, where applicable), if any, as of the Record Date; (d) all holders of record of NCFC Interests as of the Record; (e) all parties in interest that have filed notices in accordance with Bankruptcy Rule 2002 in the Chapter 11 Cases on or before the Record Date; (f) Michael J. Missal of Kirkpatrick & Lockhart Preston Gates Ellis (the

"Examiner"); and (g) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

36.     The Debtors will not be required to mail Solicitation Packages to any individual or entity at an address from which the Disclosure Statement Notice was returned by the United States Postal Service or overnight delivery carrier as undeliverable unless the Debtors were provided with an accurate address by such individual or entity prior to the Record Date.

37.     The Debtors submit that the foregoing procedures for providing notice of the Confirmation Hearing, the Confirmation Objection Deadline and related matters fully comply with Bankruptcy Rules 2002 and 3017. Accordingly, the Debtors request that the Court approve such procedures as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

## VI.

## NOTICE

38.     On April 9, 2007, the U.S. Trustee appointed the Committee. On June 7, 2007, the Court entered an order approving the appointment by the U. S. Trustee of the Examiner. No trustee or other committee has been appointed in these cases. Notice of this Motion has been provided to: (1) U.S. Trustee, (2) counsel to the Committee; (3) the Examiner; and (4) all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

39.     The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (as amended from time to time, "Local District Court Rules"), incorporated by reference into Local Rule 1001-1(b), the

Debtors respectfully request that the Court set aside the briefing schedule set forth in Local District Court Rule 7.1.2(a).

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit G: (i) approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code; (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan, as described herein, including approval of (a) the form of the Ballots for submitting votes on the Plan attached hereto as Exhibit B (including the proposed instructions attached to the Ballots), (b) the Voting Deadline for the submission of Ballots, (c) the contents of the Solicitation Packages, (d) the Record Date for Plan voting, (e) the Tabulation Rules and other vote tabulation procedures described herein; (iii) scheduling the Confirmation Hearing and approving related notice procedures; and (iv) granting such other and further relief as the Court may deem proper.

Dated:  February 15, 2008
Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
(302) 651-7700

and

Suzzanne S. Uhland
Ben H. Logan
Andrew M. Parlen
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700


ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION