# EXHIBIT A

(Settlement Agreement)

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

The Settlement Agreement and Mutual Release of Claims ("Settlement Agreement") is made as of the 19th day of February, 2008, by and between the Debtors (as defined below), Positive Software Solutions, Inc. ("Positive Software") and Edward Mandel ("Mandel"). The Debtors, Positive Software and Mandel are each individually referred to as a "Party" and collectively referred to as the "Parties" to the Settlement Agreement. The Debtors are collectively referred to as the "Defendant Parties"; Positive Software and Mandel are collectively referred to as the "Plaintiff Parties."

## RECITALS

WHEREAS Positive Software has filed the action styled *Positive Software Solutions, Inc. v. New Century Mortgage, Inc.*, Civil Action No. 3:03-CV-0257-N (the "2003 Lawsuit") pending before United States District Court for the Northern District of Texas (the "Texas District Court"), in which Positive Software sought to (1) enforce federal copyrights to software against certain accused infringers thereof, including one or more of the Debtors; (2) recover damages for breach of a Software Subscription Agreement ("SSA") by New Century Mortgage Corporation; (3) recover damages for violations of the Digital Millennium Copyright Act ("DMCA"); (4) seek injunctive relief, including the return of all software owned or subject to the rights of Positive Software created by operation of law or the SSA's terms; and (5) seek damages for other claims identified in the 2003 Lawsuit;

WHEREAS the claims for damages asserted by Positive Software against the defendants to the 2003 Lawsuit and related counterclaims asserted by certain of the Defendant Parties were referred to an arbitration styled *In the Matter of the Arbitration Between New Century Mortgage Corporation, et. al. v. Positive Software Solutions, Inc.*, No. 71 117 00181 03 (the "Arbitration");

WHEREAS in the Arbitration, an award was entered in favor of the Defendant Parties as to Positive Software's claims and holding in favor of one or more of the Debtors on their affirmative claims for fraud and attorneys' fees and costs (the "Award");

WHEREAS, on motion of Positive Software requesting that the Award be vacated, the Texas District Court entered an order vacating the Award (the "Vacatur Order");

WHEREAS the Vacatur Order was subsequently reversed by the United States Appellate Court for the Fifth Federal Circuit and the matter remanded to the Texas District Court for further proceedings;

WHEREAS the 2003 Lawsuit is again pending in the Texas District Court awaiting a ruling on Positive Software's pending motion to vacate the Award (as such motion may be amended by further motion of Positive Software) and the Debtors' motion to confirm the Award;

WHEREAS on April 2, 2007 (the "Petition Date"), substantially all of the Debtors (including all of those Debtors that are Defendant Parties) filed their respective voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"),

each Debtor thereby initiating a bankruptcy case before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") which bankruptcy cases are currently being jointly administered under the bankruptcy cases captioned and styled as *In re New Century TRS Holdings, Inc.* Case No. 07-10416 (KJC) (the "Bankruptcy Cases").[1]

WHEREAS the Debtors have and continue to act as Debtors-in-possession under Section 1107 of the Bankruptcy Code.

WHEREAS Positive Software timely filed a proof of claim asserting a general unsecured claim in the amount of $580,000,000 against each the following Debtors: (i) New Century Financial Corporation ("NCFC"); (ii) New Century Mortgage Corporation ("NCMC"); (iii) Home123 Corp. ("Home123") and (iv) New Century TRS Holdings, Inc. ("NC-TRS").

WHEREAS, Positive Software and Mandel have filed a suit styled *Positive Software Solutions, Inc. and Edward Mandel v. Susman Godfrey, L.L.P., Ophelia F. Camina, Barry C. Barnett, Frank Nese, Jeff Lemieux and John Norment,* Civil Action No. 3:07- CV-1422-N (the "2007 Lawsuit") in which Positive Software and Mandel seek damages from Nese, Lemieux, Norment and others for their participation in an alleged conspiracy to defraud Positive Software by offering false testimony, suppressing material evidence and maliciously and falsely prosecuting claims against Positive Software in the 2003 Litigation and the Arbitration;

WHEREAS, on February 2, 2008, the Debtors jointly with the Official Committee of Unsecured Creditors, filed their *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008* [D.I. 4804] (the "Disclosure Statement") and their *Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008* [D.I. 4805] (the "Plan").

WHEREAS, the Plaintiff Parties and the Defendant Parties desire to amicably resolve all controversies between them, including those relating to the 2003 Lawsuit, the Arbitration and the 2007 Lawsuit, through settlement; and

WHEREAS, nothing in this Settlement Agreement shall be construed as an admission of wrongdoing, fault or liability of any Party; nor an agreement that the Claims allowed herein would, if litigated, be allowed in such amounts.

WHEREAS, the Parties understand, confirm and agree that nothing in this Settlement Agreement shall be construed to limit, compromise, resolve or otherwise affect any claims that the Plaintiff Parties may possess against Susman Godfrey (as defined below) whether those claims seek damages in the 2007 Lawsuit or sanctions in or from the 2003 Lawsuit, the Arbitration or otherwise, but shall compromise, resolve and release all claims, whether known or unknown, asserted or unasserted, against the Debtor Released Parties including, without limitation, for aiding and abetting, conspiracy, or any other primary or secondary liability in

---

[1] New Century Warehouse Corporation filed its petition for relief under Chapter 11 on August 3, 2007.

connection with the claims set forth in the 2007 Lawsuit, as set forth in more detail in Section 2.1 below.

NOW THEREFORE, with reference to the foregoing and in consideration of the recitals, promises, mutual covenants, and agreements set forth herein, the Parties agree as follows:

## SECTION I: DEFINITIONS

1.1    "Debtors" shall mean the Debtors and Debtors in Possession in the Bankruptcy Cases and consisting of the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation, as well as their officers, directors, agents and employees and any and all of their non-debtor subsidiaries. This definition specifically excludes Susman Godfrey (as defined below).

1.2    "Susman Godfrey" shall mean Susman Godfrey, L.L.P., Ophelia F. Camina, Barry C. Barnett, Terrell Oxford, and all employees, partners, agents, employees and representatives of Susman Godfrey, L.L.P.

1.3    "Released Claims" shall mean all claims, rights, causes of action, or damages, whether known or unknown, asserted or unasserted, contingent or liquidated, that were brought or could have been brought in the 2003 Litigation (including, e.g., any matters asserted in any iteration of the motion to vacate the arbitration award or the motion for leave to amend the motion to vacate the arbitration award), the Arbitration, the 2007 Litigation or the Bankruptcy Cases (including but not limited to claims concerning the negotiation of a settlement, the mediation, the value of the claims in section 4.4 hereof or any other subject addressed in or related to Section 6.9 hereof) by any Party thereto, including, but not limited to, claims for copyright infringement, patent infringement, trademark infringement, breach of contract, fraud, negligent misrepresentation, civil conspiracy, violations of any federal or state code, law, regulation or statute, slander, defamation, libel, tortious interference (of any kind or nature), abuse of process, malicious prosecution, theft of trade secrets, conversion, misrepresentation,

slander of title, violations of any rule or procedure, and any other act, omission, statement or course of conduct that caused any damage, detriment or harm to any Party.

1.4 "Excluded Claims" shall mean only claims against the Excluded Parties as defined in Section 1.13 that could be asserted in the 2007 Lawsuit, the 2003 Lawsuit, the resumption of the Arbitration, or in any other forum, including damages and the assessment of monetary sanctions.

1.5 The "Waiver" shall mean the Waiver of Privileges, Exemptions and Objections to Discovery attached hereto as Exhibit A and executed contemporaneously herewith and incorporated by reference as though fully set forth.

1.6 The "NCFC Claim" shall mean the proof of claim filed by Positive Software in the bankruptcy case in which NCFC is the Debtor and referenced in the claims register being maintained in that bankruptcy case as Claim No. 2524.

1.7 The "NCMC Claim" shall mean the proof of claim filed by Positive Software in the bankruptcy case in which NCMC is the Debtor and referenced in the claims register being maintained in that bankruptcy case as Claim No. 2525.

1.8 The "Home123 Claim" shall mean the proof of claim filed by Positive Software in the bankruptcy case in which Home123 is the Debtor and referenced in the claims register being maintained in that bankruptcy case as Claim No. 2483.

1.9 The "NC-TRS Claim" shall mean the proof of claim filed by Positive Software in the bankruptcy case in which NC-TRS is the Debtor and referenced in the claims register being maintained in that bankruptcy case as Claim No. 2523.

1.10 The "Claims" shall mean collectively the NCFC Claim, the NCMC Claim, the Home123 Claim and the NC-TRS Claim.

1.11 The "Approval Order" shall mean an order entered by the Bankruptcy Court unconditionally approving the terms of the Settlement Agreement and authorizing the Debtors to enter into such agreement and fulfill their obligations thereunder.

1.12 The "Effective Date" shall mean the first date that the Approval Order becomes by passage of time no longer subject to review, reconsideration or appeal.

1.13 "Excluded Parties" shall mean "Susman Godfrey" as defined in Section 1.2 as well as Frank Nese, Jeff Lemieux and John Norment.

## SECTION II: MUTUAL RELEASE

2.1 In consideration of the payment and other consideration set forth in Section IV, the Plaintiff Parties hereby release the Defendant Parties and their successors, assigns, subsidiaries, divisions, predecessors, present and former employees, present and former

employees of Alix Partners, present and former attorneys (including in house attorneys), expert witnesses, agents and all others in privity with them other than the Excluded Parties, as well as the Official Committee of Unsecured Creditors and its members, attorneys and agents and the successor of any such entity, including a post-Plan confirmation liquidating trust, corporation, partnership of limited liability company (the "Debtor Released Parties") for any acts, omissions, statements or conduct that is related in any way to the Released Claims. Susman Godfrey and the Excluded Claims are not subject to the release described in this paragraph.

2.2     The Defendant Parties hereby release Positive Software and Mandel and their successors, assigns, subsidiaries, divisions, predecessors, attorneys, agents and all others in privity with them (the "Positive Released Parties") for any acts, omissions, statements or conduct that is related in any way to the Released Claims.

2.3     It is the intent of the Parties and this Agreement to give, in exchange for the promises and consideration promised herein, the broadest release and discharge possible under the law with respect to the disputes and claims between the Parties, but not to release any claims and disputes (including the Excluded Claims) that Positive Software and Mandel have or may assert against or with Susman Godfrey.

## SECTION III: COVENANT NOT TO SUE

3.1     The Positive Released Parties agree to forever refrain from taking any legal or administrative action against the Debtor Released Parties based upon the Released Claims in any forum including the Bankruptcy Cases and in no event shall the Positive Released Parties object to the Plan or any modification of the Plan on any grounds, or any different plan of reorganization in which their status and treatment is co-equal with the status of similarly situated unsecured creditors with allowed claims of the same class of claims. However, nothing in this paragraph shall restrict Positive Software's rights to enforce this agreement in the Bankruptcy Court.

## SECTION IV: PAYMENT AND CONSIDERATION

4.1     As consideration for the releases, agreements and covenants made herein, the Debtors shall pay to Positive Software a one-time cash payment of two million dollars ($2,000,000) (the "Payment"). The Payment shall be made on or before five (5) business days immediately following the Effective Date, as defined in Section 1.12 hereof. If the making of the Payment is delayed beyond March 18, 2008, the amount of the Payment is to be placed in an interest bearing account with the interest being retained for payment to Positive Software in addition to the deposited principle. The one-time Payment under Section 4.1 shall made to Positive Software by remitting payment to the client trust account of Shore Chan Bragalone LLP, and shall be paid in United States Dollars by wire transfer of immediately available funds to the following account or as otherwise instructed in writing:

Account Name:               Shore Chan Bragalone LLP IOLTA Client Trust Account
Account Beneficiary:        Positive Software Solutions
Account Number:             8091060004
Bank ABA Routing Number: 111014325

| | |
|---|---|
| Bank Name: | Bank of Texas |
| Bank Address: | 7600 West Northwest Highway |
| | Dallas, Texas 75225 |
| | United States of America |
| Bank Telephone Number: | +1-214-706-0300 |

4.2    As additional material consideration for the releases, agreements and covenants made herein, the Defendant Parties shall execute the Waiver within two (2) business days of the earlier to occur of (a) the Effective Date and (b) the effective date of the Plan.

4.3    As additional material consideration for the releases, agreements and covenants made herein, the Debtor Released Parties also agree, at the expense of Positive Software, to make their computer storage facilities available for searching, review and copying/imaging. This access solely shall be through a third party vendor on the terms set forth in the Waiver and subject to protective orders issued from the Texas District Court sufficient in the opinion of the Court to protect the Debtor Released Parties from any liability to third parties for the disclosure of confidential or proprietary information.

4.4    As additional material consideration for the releases, agreements and covenants made herein, (i) the NCFC Claim shall be an "Allowed HC3b Claim", as that class of claims is defined under the Plan, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000.00); (ii) the NCMC Claim shall be "Allowed OP3c Claim", as that class of claims is defined under the Plan, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000.00), and (iii) the Home123 Claim and the NC-TRS Claim shall be disallowed.

4.5    As additional material consideration in support of this Settlement Agreement, the Parties agree to move the Texas District Court within five days of the Effective Date, seeking an Order dismissing with prejudice the Released Claims in the 2003 Lawsuit as set forth herein, in the form attached hereto as Exhibit B and incorporated by reference as if fully set forth herein.

4.6    Notwithstanding anything else in this Settlement Agreement, the Parties agree that any consideration to be received by Positive Software from the Defendant Parties is independent of any additional recoveries that the Plaintiff Parties may obtain against any other person who is not a Debtor Released Party, including Susman Godfrey, and the Debtors shall not be entitled to any credit or reimbursement for the money paid in Section 4.1 hereof or the distribution made in Section 4.4 hereof should the Plaintiff Parties obtain recoveries against any non-Debtor Released Party.

4.7    As additional material consideration in support of this Settlement Agreement, the Debtors shall obtain as part of or by separate order issued concurrently with the Approval Order an order of the Bankruptcy Court withdrawing the portion of the Bankruptcy Court's *Order (I) Denying the Motion of Positive Software Solutions, Inc., for Relief from the Stay Regarding Copyright Infringement Litigation and (II) Granting the Debtors' Cross-Motion for Sanctions for Violation of the Automatic Stay* [D.I. 2265] (the "Automatic Stay Order") finding that Positive Software had violated the automatic stay arising under section 362(a) of the Bankruptcy Code

and ordering that Positive Software be sanctioned for such violation.[2] The Debtors and Positive Software shall take all action necessary to have the United States District Court for the District of Delaware in Civil Action No. 07-559 (the "Stay Appeal") suspend or extend current briefing schedules in that proceeding to permit the parties to consummate this Settlement Agreement and to remand the Stay Appeal to the Bankruptcy Court for further proceedings consistent with this Settlement Agreement. Upon the occurrence of the Effective Date, Positive Software shall take all action necessary to have the Stay Appeal dismissed.

4.8    As additional material consideration in support of this Settlement Agreement, the Debtors and Positive Software shall withdraw (if appropriate) or jointly move or notice the dismissal of the following matters and proceedings:

a.    The Debtors' Motion for Additional Sanctions filed on August 24, 2007 [D.I. 2566] and the related Debtors' Supplement to Motion For Additional Sanctions Against Positive Software Solutions, Inc. for Further Violation of the Automatic Stay filed on October 9, 2007 [D.I. 3252];

b.    The adversary proceeding initiated by the Debtors against the Plaintiff Parties in the Bankruptcy Court on October 9, 2007, referenced as Case No. 07-51724;

c.    The Plaintiff Parties' Motion for Relief from Stay filed on October 18, 2007 [D.I. 3320]; and

d.    The Plaintiff Parties' Motion for Relief from Stay filed on January 9, 2008 [D.I. 4354].

4.9    If Susman Godfrey cross claims against any Debtor in the 2007 Litigation or otherwise seeks to make any Debtor a party to the 2007 Litigation, Positive Software (a) agrees that it shall recover nothing from the Debtors in the 2007 Litigation and (b) shall cooperate with and join in the Debtors' motion to dismiss.

### SECTION V. REPRESENTATIONS AND WARRANTIES

5.1    The Defendant Parties represent and warrant that they have the authority to enter into this Settlement Agreement and that they do so based solely on the advice of their counsel after a full review and investigation of the facts; provided, however, that the Plaintiff Parties understand that the Debtors' authority to enter into this Settlement Agreement is subject to Bankruptcy Court approval.

5.2    The Plaintiff Parties represent and warrant that they have the authority to enter into this Settlement Agreement and that they do so based solely on the advice of their counsel after a full review and investigation of the facts.

---

[2]    Unless otherwise indicated, citations to "D I" shall refer to the docket maintained in the Bankruptcy Cases

5.3     The Debtors warrant that with the releases being granted by the Plaintiff Parties to the Debtor Released Parties as set forth in Section 2.1, above, and the Plaintiff Parties' covenants set forth in Section 3.1, above and the other terms, covenants and consideration being made and given by the Plaintiff Parties do fully and completely cure any alleged damages for violation of the automatic stay by the Positive Released Parties with respect to the Debtors and any of their successors in connection with further prosecution of claims against persons and entities who are not Defendant Parties in the 2003 Litigation and the 2007 Litigation.

## SECTION VI: MISCELLANEOUS

6.1     The Debtors shall without delay file a motion in the Bankruptcy Case for the approval of this Settlement Agreement in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion"). The Debtors will also file a motion requesting that the 9019 Motion be heard on an expedited basis at the omnibus hearing date scheduled on March 5, 2008 in the Bankruptcy Case, but in no event shall any order of the Court denying such request for expedited treatment effect in any way this Settlement Agreement. If and only if the Debtors fail to file the 9019 Motion in time to be heard by or before March 25, 2008, Positive Software may elect to rescind and terminate this Settlement Agreement by written notice made to the Debtors and the Committee by no later than the later of (a) February 20, 2008, or (b) the date that notice of hearing is served, and, if Positive Software makes such election, no Party shall be obligated to otherwise fulfill any obligations under the terms of this Settlement Agreement.

6.2     The Settlement Agreement and all rights, obligations, and releases contained herein may not be assigned by any Party without the express written consent of the other Parties, and such consent shall not be unreasonably withheld; provided, however, that the Settlement Agreement and all of its terms shall automatically inure to the benefit of any post-Plan confirmation liquidating trust, corporation, limited liability company or partnership created or contemplated by the Plan.

6.3     The Settlement Agreement is limited to the Parties; provided, however, that the Settlement Agreement and all of its terms shall automatically inure to the benefit of any post-Plan confirmation liquidating trust, corporation, limited liability company or partnership created or contemplated by the Plan. The Settlement Agreement does not inure to the benefit of any party not identified herein and specifically does not in any way benefit Susman Godfrey or in any way affect the ability of the Positive Released Parties to fully prosecute to conclusion the Excluded Claims against the Excluded Parties.

6.4     This Settlement Agreement is to be construed under the laws of the State of Delaware, without giving effect to Delaware's choice of law rules. Exclusive jurisdiction and venue regarding any dispute arising from this Settlement Agreement between the Parties shall be located in the Delaware Bankruptcy Court. No Party shall seek to withdraw the automatic reference or challenge jurisdiction in such a dispute, but if the Delaware Bankruptcy Court, on its own motion, determines not to exercise jurisdiction, the exclusive jurisdiction and venue shall lie in the Delaware District Court.

6.5     Any and all communications or notices required or permitted under the Settlement Agreement shall be in writing, shall identify the Settlement Agreement, and shall be hand delivered or sent by registered mail or express delivery to the last known address of the Party, which are as follows:

6.5.1     All communications and notices to the Plaintiff Parties shall be addressed to Michael W. Shore c/o Shore Chan Bragalone, L.L.P., 350 North St. Paul Street, Suite 4450, Dallas, Texas 75201

6.5.2     All communications and notices to the Debtors shall be addressed to Russell C. Silberglied, Richards, Layton & Finger, P.A., P.O. Box 551, Wilmington, Delaware 19801 and copied to Suzzanne Uhland, O'Melveny & Myers LLP, Embarcadero Center West, 275 Battery Street, San Francisco, California 94111-3305 and Monika McCarthy, New Century, 3121 Michelson Drive, 6th Floor, Irvine, California 92612.

6.5.3     All communications and notices to the Creditors Committee shall be addressed to Mark Indelicato, Hahn & Hessen LLP, 488 Madison Avenue, 14th Fl., New York, New York 10022, and copied to Bonnie Fatell, Blank Rome LLP, Chase Manhatten Centre, Suite 800, 1201 North Market Street, Wilmington, Delaware 19801-4226.

6.6     Except as otherwise specifically provided for herein, a Party shall have thirty (30) calendar days after the receipt of written notice of any breach or violation of the Settlement Agreement from the other Party to cure such breach or violation. If such Party satisfactorily cures such breach or violation within such thirty (30) calendar day period, such breach or violation shall not give rise to any rights or remedies under the Settlement Agreement. Before making any claim under the Settlement Agreement, the Parties through corporate representatives at the General Counsel level or higher, shall attempt in good faith to negotiate a resolution to the claimed breach.

6.7     The Settlement Agreement, including any attachments or exhibits hereto, sets forth the entire understanding between the Parties relating to the subject matter contained herein and, supersedes all previous oral or written proposals, negotiations, representations, or understandings concerning the subject matter. The Settlement Agreement may not be modified, amended or discharged except by a subsequent written agreement signed by the authorized representatives of the Parties hereto. Each Party expressly disclaims any right to enforce or claim the effectiveness of any oral modification of the Settlement Agreement based upon a course of dealing, waiver, reliance, estoppel or other similar theory of law.

6.8     The Parties hereby explicitly acknowledge that they are entering into the Settlement Agreement entirely of their own free will, uninfluenced by any duress, economic coercion or other factors that might have the effect of negating the free will with which they each enter into the Settlement Agreement. The Parties and their respective legal counsel have reviewed the Settlement Agreement, and the rule of construction to the effect that any

ambiguities are to be resolved against the drafting Party shall not be employed in the interpretation of the Settlement Agreement.

6.9     The Plaintiff Parties acknowledge that the distributions on account of the claims set forth in paragraph 4.4 hereof is inherently uncertain and the Debtors and Creditors Committee are not making any warranties with respect to such distribution levels or success of the Plan. Accordingly, PSSI releases and covenants not to file or cause to be filed any claims, rights, causes of action or contentions that (a) the distributions are insufficient; (b) any Debtor Released Party misled any Plaintiff Party concerning or in any way related to the Distributions, or (c) any Plaintiff Party relied in any way on any statement of a Debtor Released Party or of David Stratton, Esq. concerning the Distributions. This Section 6.9 is a material part of the release set forth in Section 2.1 hereof.

6.10     The Settlement Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument.

6.11     No breach of any provision of the Settlement Agreement can be waived by any of the Parties unless in writing. Any breach by a Party shall not be deemed to be a waiver of any breach of the same or any other provision thereof by that Party or any other Party.

6.12     If any provision of the Settlement Agreement, or the application thereof, shall for any reason and to any extent be void, invalid or unenforceable, the remainder of the Settlement Agreement and the application of such provision to other provisions or circumstances shall be interpreted so as best to reasonably effectuate the intent of the Parties. The Parties further agree to replace such void, invalid or unenforceable provision of the Settlement Agreement with a valid and enforceable provision that will achieve to the extent possible the economic, business, and other purpose of the void, invalid, or unenforceable provision.

6.13     In any dispute, litigation or contested matter concerning whether this settlement agreement has been breached or in which any party asserts this settlement agreement as a defense, the losing party shall pay the prevailing party's attorney's fees and costs.

**AGREED:**

Dated: _February 19_, 2008

Positive Software Solutions, Inc.

By: _____

Edward Mandel

Dated: _February 19_, 2008

Dated: _February 19_, 2008

The Debtors and Debtors in Possession

By: _Nolly Feldsie Etlin, CEO_

**APPROVED:**

Dated: _____, 2008

Official Unsecured Creditors Committee

By: _____

# EXHIBIT A

# WAIVER OF PRIVILEGES, EXEMPTIONS
## AND OBJECTIONS TO DISCOVERY

This Waiver of Privileges, Exemptions and Objections to Discovery ("Waiver") is hereby entered into by, between and among the following PARTIES:

1.        The Debtors and Debtors in Possession in the jointly administered bankruptcy cases being administered under the bankruptcy case captioned and styled *In re New Century TRS Holdings, Inc.,* Case No. 07-10415 (the "Bankruptcy Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and consisting of the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century

Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation, as well as their officers, directors, agents and employees and any and all of their non-debtor subsidiaries (collectively "Debtors");

2.      Positive Software Solutions, Inc. ("Positive Software"); and

3.      Edward Mandel ("Mandel").

The Bankruptcy Court has, by written order entered in the Bankruptcy Case, approved the material terms of a certain Settlement Agreement (the "Settlement Agreement") in accordance with Fed. R. Bankr. Pro. 9019.

In accordance with and as a material part of the Settlement Agreement executed contemporaneously herewith and incorporated by reference for all purposes as though fully set forth, the Debtors, for themselves and their successors and assigns, including (but not limited to) any trustee appointed to manage the Debtors' bankruptcy estates by the Bankruptcy Court or in accordance with a bankruptcy plan confirmed under Chapter 11, title 11 of the Bankruptcy Code (collectively the "Waiving Parties") hereby unconditionally waive any and all privileges, immunities or exemptions from discovery (and objections to discovery or disclosure) that may exist or attach to documents, statements, information, file materials or work product created, possessed or subject to the control of any attorney, paralegal, agent or representative of Susman

Godfrey, L.L.P. ("Susman Godfrey") or Susman Godfrey itself, related in any way to Susman Godfrey's representation of the Waiving Parties in or anticipation of litigation captioned and styled *Positive Software Solutions, Inc. v. New Century Mortgage, Inc.*, Civil Action No. 3:03-CV-0257-N (the "2003 Lawsuit") pending before United States District Court for the Northern District of Texas (the "Texas District Court"), as well as the related arbitration proceeding styled American Arbitration Association, Dallas, Texas, *In the Matter of the Arbitration Between New Century Mortgage Corporation, et. al. v. Positive Software Solutions, Inc.*, No. 71 117 00181 03, as well as and any appellate proceedings and ancillary matters involving the 2003 Lawsuit (collectively the "Litigation")

This Waiver specifically and unconditionally waives the attorney/client privilege between the Waiving Parties and Susman Godfrey, L.L.P., its lawyers, paralegals, staff, agents and representatives, including, but not limited to, Barry C. Barnett, Ophelia F. Camiña, Terrell Oxford and Kenneth Gardner.

This Waiver specifically and unconditionally waives the consulting expert exemption from discovery for any and all experts retained or consulted in the Litigation or in anticipation of the Litigation by Susman Godfrey.

This Waiver specifically and unconditionally waives the attorney work-product exemption from discovery for all work product created, in whole or in part, by Susman Godfrey related in any way to the Litigation.

## ASSIGNMENT AND TRANSFER OF RIGHT TO POSSESS AND OWN

The Waiving Parties immediately assign, transfer and convey to Positive Software and Mandel any and all rights of the Waiving Parties to possess, copy or view -- as well as the ownership of -- copies of any and all material, documents and information held by or in the possession, custody or control of Susman Godfrey related to the Litigation (collectively, the "Litigation Materials") and any and all rights, claims and defenses that the Debtors may have with respect to the recovery of the Litigation Materials from Susman Godfrey. The Waiving Parties agree not to withhold any assistance that may be reasonably requested by Positive Software or Mandel in furtherance of the foregoing assignment, transfer and conveyance; provided, however, that should the Debtors incur any reasonable expenses or attorneys fees in such cooperation, PSSI shall bear all such reasonable expenses or attorneys fees.

This assignment and transfer right is limited to true and correct copies of all materials covered by this Waiver, including electronic copies with metadata intact. The originals of all materials subject to this Waiver shall remain the property of the Waiving Parties and kept in their actual or constructive possession.

## THIRD PARTY CUSTODIAN AND NOTICE TO AFFECTED PARTIES

Copies of the material in the Debtors' possession which are subject to this Waiver shall be produced by the Debtors to a custodian chosen by the Waiving Parties ("Custodian"). This includes originals or copies (at the Debtors' sole option) of the categories of material set forth on Ex. A hereto, and thereafter, materials that PSSI may later designate on reasonable notice and consistent with the remaining provisions herein. To the extent that the Custodian (a) makes copies of or prints any documents for production in accordance with this Waiver Agreement and incurs costs in doing so; (b) incurs fees or costs in searching the electronic information for

production to Positive Software, (c) incurs costs associated with restoring anything contained on backup tapes, or (d) incurs any other costs or fees, Positive Software, and not the Debtors, shall be responsible to pay all of the costs of the Custodian. Notwithstanding that Positive Software is paying the Custodian, the Custodian shall be deemed an agent of the Debtors such that the Debtors' production of the documents to the Custodian itself shall not constitute the documents leaving the Debtors' possession for purposes of maintaining the attorney-client privilege (but expressly subject to the other terms of this Waiver Agreement that waive such privilege).

The Custodian shall immediately upon receipt of the documents and electronic information search for and collect all documents concerning the subject matter of this Waiver Agreement, and ready such documents for production to Positive Software, subject to the remaining terms of this Waiver Agreement. Positive Software acknowledges that (a) the speed of such production cannot be guaranteed by the Debtors and is a subject for Positive Software to discuss with the Custodian, and (b) production of documents from backup tapes will take the Custodian longer than production from other sources.

Prior to producing such documents to Positive Software, the Custodian shall provide five (5) business days' notice of that production to counsel for Nese and Lemieux and counsel to Susman Godfrey, as well as any other third party designated by the Waiving Parties. This process is expressly intended to allow any third parties put on notice of the production by the Waiving Parties an opportunity to assert objections to the production of the materials subject to this Waiver to Positive Software or Mandel, such objections being independent of the privileges, objections and immunities waived by the Waiving Parties. If no such objections are made in a court of competent jurisdiction within five (5) business days of the written notice to the third parties, the Custodian is to release the materials subject to the Waiver to attorneys or agents

designated by Positive Software or Mandel in writing. If an objection is made by a third party, the Waiving Parties' Custodian shall retain the material subject to the Waiver until a Court of competent jurisdiction issues an order either compelling their production or sustaining the third party's objections (in whole or in part).

## LIMITATION ON SCOPE OF WAIVER

This Waiver does not affect in any way any privileges, exemptions, immunities or objections that may be asserted by the Waiving Parties with respect to the following:

1. Representation by Haynes & Boone, L.L.P. in the Litigation;

2. Representation by any law firm other than Susman Godfrey of the Waiving Parties in the Litigation or the Bankruptcy Cases or related adversary proceedings brought by the Debtors under Fed. R. Bankr. Pro. 7001; and

3. Representation by any law firm of any Waiving Party in any proceeding other than the Litigation.

Accordingly, notwithstanding any other term in this Waiver Agreement, the Custodian shall not produce to Positive Software any document covered by this Limitation on Scope of Waiver absent a court order requiring such production.

Additionally, the Custodian shall not produce to Positive Software any document that in any way can be construed as containing private or confidential customer information unless such document is designated with an Attorneys' Eyes Only legend under the Protective Order entered by the Texas District Court. If any document nevertheless is disclosed by the Custodian that included customer information, Positive Software agrees that it will treat it as designated Attorneys' Eyes Only information regardless of whether it is so designated.

## NO WARRANTIES AS TO EFFECT OF THIS WAIVER

The Waiving Parties do not warrant that any waiver or transfer of rights created by this document will be effective to defeat assertions of objections, privileges or immunities by any

third parties. Positive Software and Edward Mandel understand that third parties may assert objections and privileges to the disclosure of material sought pursuant to the rights created by this Waiver. The Waiving Parties do, however, agree to cooperate with Positive Software's and Mandel's reasonable requests in their efforts to procure materials from Susman Godfrey related to the Litigation and subject to this Waiver; provided, however, that should the Debtors incur any expenses or attorneys fees in such cooperation, PSSI shall bear all such expenses or attorneys fees.

**AGREED:**

Dated: February 19, 2008

Dated: February 19, 2008

Dated: February 19, 2008

Positive Software Solutions, Inc.

By: _____

Edward Mandel

The Debtors and Debtors in Possession

By: Holly Felder Etlin, CEO

**APPROVED:**

Dated: _____, 2008

Official Unsecured Creditors Committee

By: _____

*EXHIBIT A TO THE WAIVER TO BE FILED PRIOR TO HEARING*

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | §<br>§<br>§ | |
| *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | No. 303-CV-0257-N |
| | § | |
| NEW CENTURY MORTGAGE CORPORATION, NEW CENTURY FINANCIAL CORPORATION, eCONDUIT CORPORATION, THE ANYLOAN COMPANY, JEFF LEMIEUX, AND FRANK NESE | §<br>§<br>§<br>§<br>§<br>§<br>§ | JURY TRIAL DEMANDED |
| *Defendants.* | §<br>§ | |

---

## JOINT MOTION TO DISMISS WITH PREJUDICE

---

Positive Software Solutions, Inc., New Century Mortgage Corporation, New Century Financial Corporation, eConduit Corporation, and The AnyLoan Company (collectively "Moving Parties") file this Joint Motion to Dismiss With Prejudice. The Moving Parties have reached a Settlement Agreement, and pursuant to said Settlement Agreement, the Moving Parties ask the Court to enter an Order dismissing all claims asserted by the Plaintiff against New Century Mortgage Corporation, New Century Financial Corporation, eConduit Corporation, and The AnyLoan Company, with prejudice and dismissing all counterclaims asserted by New Century Mortgage Corporation, New Century Financial Corporation, eConduit Corporation, and The AnyLoan Company against the Plaintiffs, with prejudice. Positive Software Solutions, Inc. asks the Court to allow the case to remain an open matter in order to allow a Motion for Sanctions to be filed against Susman Godfrey, L.L.P. and partners thereof.

Respectfully submitted,

_____
Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
SHORE CHAN BRAGALONE, LLP
350 St. Paul Street, Suite 4450
Dallas, Texas 75201
(214) 593-9110
(214) 593-9111 - Telefax

**Attorneys for Positive Software**
**Solutions, Inc.**


_____
Mr. Robin Hartmann
State Bar No. 09168000
Mr. Ronald Breaux
State Bar No. 02937200
Mr. David McCombs
State Bar No. 13438700
HAYNES & BOONE LLP
901 Main Street, Suite 3100
Dallas, TX 75202
(214) 651-5000
(214) 651-5940 - Telefax

**Attorneys for Defendants New Century Mortgage**
**Corporation, New Century Financial Corporation,**
**eConduit Corporation, and The AnyLoan**
**Company**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 303-CV-0257-N |
| | § § | |
| NEW CENTURY MORTGAGE CORPORATION, NEW CENTURY FINANCIAL CORPORATION, eCONDUIT CORPORATION, THE ANYLOAN COMPANY, JEFF LEMIEUX, AND FRANK NESE | § § § § § § § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § § | |

## ORDER

After considering the Joint Motion to Dismiss with Prejudice filed by Positive Software Solutions, Inc., New Century Mortgage Corporation, New Century Financial Corporation, eConduit Corporation, and The AnyLoan Company, the Court recognizes that the parties above have reached a settlement. Accordingly, the Court

DISMISSES WITH PREJUDICE all claims by the Plaintiff against New Century Mortgage Corporation, New Century Financial Corporation, eConduit Corporation, and The AnyLoan Company. The Court further

DISMISSES WITH PREJUDICE all counterclaims asserted by Frank New Century Mortgage Corporation, New Century Financial Corporation, eConduit Corporation, and The AnyLoan Company against Plaintiff.

The case will remain an open matter while the Court considers any motions for sanctions filed by Positive Software Solutions, Inc. against Susman Godfrey, L.L.P. and attorneys associated with that firm.

Each party shall bear their own costs and attorneys' fees, except as otherwise set forth in their settlement agreement.

                                        _____

                                        U.S. DISTRICT COURT