RETURN TO: G-19443
GREATER FLORIDA TITLE COMPANY
2345 SAND LAKE ROAD
SUITE 120
ORLANDO, FL 32809

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
This document was prepared by:
ATHENA WAN
COUNTRYWIDE HOME LOANS, INC.

LARRY WHALEY                            9P
OSCEOLA COUNTY, FLORIDA
CLERK OF CIRCUIT COURT

CL 2004167432              OR 2582/1
TTR Date 08/24/2004    Time 09:48:26

DOC STAMPS:                     173.95
INTANGIBLE:                      99.30

2300 MAITLAND CTR PKWY,
STE122
MAITLAND
FL 32751

———————————— [Space Above This Line For Recording Data] ————————————

0006698034308004
[Doc ID #]

## MORTGAGE
(Line of Credit)

MIN 1000157-0004003259-7

THIS MORTGAGE, dated   AUGUST 05, 2004   , is between
ULISES REYES, AND DIANNA L REYES, HUSBAND AND WIFE

residing at
2644 QUARTERDECK CT, KISSIMMEE, FL 34743 ,
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us"
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation
with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns. MERS is the "Mortgagee" under this Mortgage.

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage,
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the
successors and assigns of MERS, the premises located at:
                        2611 QUARTERDECK COURT
                                Street
            KISSIMMEE                              OSCEOLA
            Municipality                           County
FL   34743-6040 (the "Premises").
State       ZIP
and further described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

● MERS HELOC - FL MORTGAGE
2D993-FL (02/04)(d)                    Page 1 of 5                    Initials: _____

CL 2004167432                    OR 2582/2

DOC ID #: 0006698034308004

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage

LOAN: This Mortgage will secure Lender's loan to us in the principal amount of $ 49,650.00 or so much thereof as may be advanced and readvanced from time to time to
ULISES REYES,
DIANNA L. REYES,
,and

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated 08/05/2004                , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide Lender with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting Lender's consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all time against loss, by fire, flood and any other hazards Lender may specify. We may choose the insurance company, but our choice is subject to Lender's reasonable approval. The policies must be for at least the amounts and the time periods that Lender specifies. We will deliver to Lender upon Lender's request the policies of other proof of the insurance. The policies must name Lender as "mortgagee" and "loss-payee" so that Lender will receive payment on all insurance claims, to the extent of this Mortgage, before we do. The insurance policies must also provide that Lender be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to Lender. In the event of loss or damage to the Premises, we will immediately notify Lender in writing and file a proof of loss with the insurer. Lender may file a proof of loss on our behalf if we fail or refuse to do so. Lender may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If Lender receives payment of a claim, Lender will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to Lender the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to Lender, subject to the terms of any Prior Mortgage.

• MERS HELOC - FL MORTGAGE
2D993-FL (02/04)                    Page 2 of 5                    Initials: _____

DOC ID #: 0006698034308004

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, Lender may, if Lender chooses, perform our obligations and pay such costs and expenses. Lender will add the amounts Lender advances to the sums owing on the Note, on which Lender will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our agreements with Lender, Lender may, if Lender chooses, advance any sums to satisfy any of our agreements with Lender or MERS and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Lender's payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that Lender obtains to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated 07/01/2003 and given by us to COUNTRYWIDE HOME LOANS, as mortgagee, in the original amount of $ 130,000.00 (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without Lender's prior written consent.

(j) INSPECTION: We will permit Lender to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned without releasing us or the Premises. Lender may ad or release any person or property obligated under the Note and this Mortgage with losing rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, Lender may foreclose upon this Mortgage. This means that Lender may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money Lender receive from the sale is not enough to pay off what we owe, we will still owe the difference which Lender may seek to collect from us in accordance with applicable law. In addition, Lender may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, Lender shall be entitled to collect all reasonable fees and costs actually incurred by Lender in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

CL 2004167432                    OR 2582/4

DOC ID #: 0006698034308004

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and the obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for MERS and Lender's benefit and for the benefit of anyone to whom it may be assigned. Upon payment in full of all amounts owing under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided the obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

CL 2004167432          OR 2582/5

DOC ID #: 0006698034308004

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

WITNESS:

_____
JOANNA F. GASKILL

_____
LISA A SARMIENTO

_____ (SEAL)
Mortgagor: ULISES REYES
2644 QUARTERDECK CT, KISSIMMEE, FL 34743

_____ (SEAL)
Mortgagor: DIANNA L. REYES
2644 QUARTERDECK CT
KISSIMMEE, FL 34743

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

STATE OF FLORIDA,                                County ss: Orange

The foregoing instrument was acknowledged before me this ___AUG 0 5 2004___ by
Ulises Reyes and Danna L. Reyes, husband & wife,
who is personally known to me or who has produced ___DRIVER LICENSE___ as identification.

Joanna F. Gaskill
MY COMMISSION # DD132693 EXPIRES
September 25, 2006
BONDED THRU TROY FAIN INSURANCE INC

Notary Public
JOANNA F. GASKILL

CL 2004167432                OR 2582/6

——————————————— [Space Above This Line For Recording Data] ———————————————

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ATHENA WAN
COUNTRYWIDE HOME LOANS, INC.

2300 MAITLAND CTR PKWY,
STE122
MAITLAND
FL 32751

0006698034308004
[Doc ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this FIFTH                day of
AUGUST, 2004      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
2611 QUARTERDECK COURT
KISSIMMEE, FL 34743-6040
[Property Address]

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 3                                                Initials: _UR_  _DR_
®-7R (0008).01    CHL (09/01)(d)    VMP MORTGAGE FORMS - (800)521-7291                Form 3150 1/01
CONV/VA

CL 2004167432                OR 2582/7

DOC ID #: 0006698034308004

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
SARATOGA PARK

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination

Initials: _UL_  _DR_

@D-7R (0008).01    CHL (09/01)          Page 2 of 3               Form 3150 1/01

CL 2004167432    OR 2582/8

DOC ID #: 0006698034308004

of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____(Seal)
ULISES REYES                              - Borrower
2644 QUARTERDECK CT
KISSIMMEE, FL 34743

_____(Seal)
DIANNA L. REYES                           - Borrower
2644 QUARTERDECK CT
KISSIMMEE, FL 34743

_____(Seal)
                                          - Borrower

_____(Seal)
                                          - Borrower

VMP®-7R (0008).01    CHL (09/01)    Page 3 of 3    Form 3150 1/01

CL 2004167432        OR 2582/9

Prepared by: ATHENA WAN

## COUNTRYWIDE HOME LOANS, INC.

DATE:        08/05/2004
CASE #:
DOC ID #:    0006698034308004
BORROWER: ULISES REYES
PROPERTY ADDRESS: 2611 QUARTERDECK COURT
              KISSIMMEE, FL 34743-6040

Branch #: 0000432
2300 MAITLAND CTR PKWY, STE122
MAITLAND, FL 32751
Phone: (407)475-7700
Br Fax No.: (407)661-3199

### LEGAL DESCRIPTION EXHIBIT A

Lot 6, SARATOGA PARK, as per plat thereof, recorded in Plat Book 10, Pages 123, 124 and 125, of the Public Records of Osceola County, Florida said land situate, lying and being in Osceola County, Florida.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)