IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY TRS HOLDINGS,<br>INC., *et al.*<br><br>                    Debtors. | Chapter 11<br><br>Case No. 07-10416-KJC<br>(Jointly Administered)<br><br>Hearing Date: March 25, 2008 @ 1:30 p.m.<br>Obj. Deadline: March 18, 2008 @ 4:00 p.m. |

**MOTION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND MERSCORP, INC. FOR ENTRY OF AN ORDER (I) COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT, OR MODIFYING THE AUTOMATIC STAY; AND (II) COMPELLING PAYMENT OF ADMINISTRATIVE EXPENSE**

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. (collectively, "MERS"), by and through their undersigned counsel, hereby move this Court for an Order (i) compelling assumption or rejection of the executory contract between MERS and New Century Mortgage Corp. and Home 123 Corp. (each a "Debtor," and collectively, the "Debtors") pursuant to Section 365(d)(2) of title 11 of the United States Code (the "Bankruptcy Code"), or, in the alternative, modifying the automatic stay, as set forth herein, pursuant to Bankruptcy Code § 362(d); and (ii) compelling payment of outstanding post-petition expenses due to MERS from the Debtors pursuant to Bankruptcy Code § 503 (the "Motion"). In support of the Motion, MERS respectfully represents as follows:

## BACKGROUND

**A.    General Background and Jurisdiction**

1.    On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter

11 cases are being jointly administered for procedural purposes. The Debtors continue to operate their businesses as debtors and debtors-in-possession.

    2.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

    3.    Prior to the Petition Date, the Debtors were in the business of originating, purchasing, selling, and servicing mortgage loans and mortgage-backed securities nationwide. Since the Petition Date, the Debtors have sold thousands of mortgage loans and their loan servicing business.

### B.    The Debtors' Agreement with MERS

    4.    MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper documentation. MERS acts as the nominal mortgagee of record (or beneficiary under a deed of trust) on behalf of its members (each a "Member" and collectively, the "Members"). Each mortgage loan for which MERS serves as mortgagee (or beneficiary) is registered and changes in servicing rights or beneficial ownership interest are tracked electronically on the MERS® System ("MERS Registered Loans"). MERS remains the nominal mortgagee on MERS Registered Loans as the servicing and/or beneficial rights are transferred among Members. When servicing and/or beneficial rights are transferred to non-Members, an assignment is executed by MERS to the non-MERS member and the MERS Registered Loans are deactivated off the MERS® System. In addition to serving as the mortgagee of record, MERS also processes mail, facsimiles, telephone calls, and other communications related to the MERS Registered Loans. MERS forwards all communications it receives on to the Member listed as the current servicer on the MERS® System.

2

5. The Debtors became MERS Members on August 17, 2005 and April 10, 2006. Copies of the Debtors' Membership Applications are annexed hereto as <u>Exhibit A</u>. The Debtors' membership in MERS is governed by the MERS fee schedule, the Terms and Conditions of Membership, the Rules of Membership, and the Procedures Manual, copies of which are attached hereto as <u>Exhibits B, C, D, and E</u> respectively. The Application for Membership, MERS Fee Schedule, Terms and Conditions, Rules of Membership, and Procedures Manual are collectively referred to as the "MERS Agreement".

C. **The Debtors' Obligations Under the MERS Agreement**

6. Pursuant to the MERS Agreement, Members are obligated to pay all fees and charges for "membership, registrations, transfers, and other transactions on the MERS® System." (<u>See</u> Terms and Conditions ¶ 8; Rules of Membership, R.5.). Specifically, the Debtors are obligated to pay to MERS (i) annual membership fees of $500.00, (ii) registration fees of $4.95 per loan, (iii) a fee of $4.95 for each transaction showing a servicing right transfer to another Member on loans with a note date 270 days and older, (iv) a de-activation fee of $1.00 for each loan that has been transferred to a non-Member, and (v) interest on unpaid amounts. <u>See</u> <u>Exhibit A</u>. In addition, Members agree to indemnify MERS for costs associated with breaches, negligence, document requests and related matters. <u>See</u> <u>Exhibit D</u>. MERS has the right to terminate the membership of any Member who fails to pay any outstanding fees owed to MERS for more than 60 days. <u>See</u> <u>Exhibit D</u>.

7. Since the Petition Date, the Debtors have, as set forth above, transferred a substantial number of mortgages and sold their servicing business. Pending loan mortgage sales, the Debtors continued to use the MERS® System. Upon consummation of mortgage loan sales, the Debtors became responsible to MERS for transaction fees. To date, the Debtors have failed

to pay MERS for the pre-petition and post-petition fees it is owed and have not sought to assume or reject the MERS Agreement. The Debtors currently owe MERS $67,224.45 in post-petition fees and charges in connection with the foregoing transactions. Copies of the outstanding post-petition invoices are attached hereto as <u>Exhibit F</u>. Debtors' pre-petition fees and charges owed to MERS aggregate $123,647.01. MERS previously filed a proof of claim for the pre-petition fees and charges.

## RELIEF REQUESTED

8. By this Motion, MERS requests that this Court enter an Order (i) compelling the Debtors to assume or reject the MERS Agreement pursuant to Bankruptcy Code § 365(d)(2), or, alternatively, modifying the automatic stay pursuant to Bankruptcy Code § 362(d) to allow MERS to terminate the MERS Agreement; and (ii) compelling payment by the Debtors of outstanding post-petition administrative expenses to MERS in the amount of $67,224.45 pursuant to Bankruptcy Code § 503.

A.  **Debtors Should be Compelled to Assume or Reject the MERS Agreement**

9. Pursuant to Bankruptcy Code § 365(a), a debtor in possession has the authority, subject to court approval, to assume or reject any executory contract. The MERS Agreement is an executory contract since obligations remain on the part of both parties and the failure to perform by either party would constitute a material breach excusing performance of the other. See 3 COLLIER ON BANKRUPTCY ¶ 365.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007) (noting the Congressional history on the definition of executory contracts); see also Sharon Steel Corp. v. Nat'l Fuel Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989) (citing Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446 (1973)). Specifically, the Debtors are obligated to comply with the terms and conditions of membership

under the MERS Agreement, including the payment of fees and charges in connection with any sale or transfer of the Debtors' mortgage loans (and any servicing rights associated therewith). In turn, MERS is obligated to remain as mortgage nominee, make the MERS® System available to the Debtors and to process any mortgage loan transaction (and associated servicing rights) to show that transfers have occurred.

10. Under Bankruptcy Code § 365(d)(2), a party may seek to require a debtor to assume or reject an executory contract within a specified, or reasonable, period of time. See Theatre Holding Corp. v. Mauro, 681 F.2d 102, 104-05 (2d Cir. 1982); In re Beker Indus. Corp., 64 B.R. 890, 896-97 (Bankr. S.D.N.Y. 1986). The "reasonable time" standard is equitable in nature, requiring the court to balance the non-debtor party's need for certainty against the debtor's interest in preserving the bankruptcy estate.[1] See In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001) (citations omitted); In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980). In determining whether to grant a request to compel assumption or rejection, courts consider a variety of factors, but give particular weight to the non-debtor's request where the "delay adds uncertainty and threatens the obligee with additional post-petition costs." In re Beker Indus. Corp., 64 B.R. at 898.

11. Since the Petition Date, the Debtors have liquidated a substantial portion of their assets and MERS has been forced to process these trades and remain as the nominal mortgagee without compensation.[2] To the extent that the Debtors sell additional loans registered

---

[1] In enacting § 365(d)(2), "Congress intended . . . to ?prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate.'" Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1079 (3d Cir. 1992) (quoting H. Rep. No. 95-595, 95th Cong., 1st Sess. 348-9 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6304-05).

[2] As discussed above, MERS is the nominal mortgagee only for MERS Registered Loans held by and traded between Members. For loans traded to Non-Members, MERS no longer acts as the mortgagee and must assign and de-activate the mortgage loans from the MERS® System, for which transaction fees and charges also apply.

on the MERS® System, the amount outstanding will grow accordingly. The Court in In re Beker held that "in drawing a balance [between the interests of a debtor and creditor, the court] is to give greater weight to a debtor's failure to perform post-petition obligations over a [long] period of time in which it could decide what to do with the asset." 64 B.R. at 898 (citing Theatre Holding Corp., 681 F.2d at 106). These cases were commenced nine months ago and it appears that the Debtors have liquidated a substantial portion of their assets. As a result, the Debtors should not be permitted to leave MERS uncompensated and uncertain as to whether it will be paid and as to the extent of any further fees to be incurred by the Debtors under the MERS Agreement.

**B.     Alternatively, the Court Should Modify the Automatic Stay**

12.     Pursuant to Bankruptcy Code § 362(d), "the court shall grant relief from the stay... for cause..." 11 U.S.C. § 362(d)(1); see also In re West Elecs. Inc., 852 F.2d 79, 82 (3d Cir. 1988) (noting that creditor needed to obtain relief from the stay before terminating executory contract with the debtor). "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." Sterling Bank & Trust v. Merchant (In re Merchant), 256 B.R. 572, 576 (Bankr. W.D.Pa. 2000) (citations omitted); see also 3 COLLIER ON BANKRUPTCY ¶ 362.07[3].

13.     In the event that the Court declines to compel the Debtors to assume or reject the MERS Agreement, MERS respectfully submits that the automatic stay should be modified to allow MERS to terminate the MERS Agreement with the Debtors because the Debtors have failed to pay their post-petition transaction and registration fees. Termination of the MERS Agreement will also end the Debtors' ability to force MERS to incur further charges

to the extent that the Debtors sell additional mortgage loans (and the associated servicing rights) through the MERS® System.

14. Courts have routinely held that a debtor's failure to make post-petition payments is sufficient "cause" for relief from the stay. See In re Watson, 286 B.R. 594, 604 (Bankr. D.N.J. 2002) ("The debtor's failure to make post-petition payments is sufficient cause to justify granting relief from the automatic stay."); cf. Jones v. The Money Store, Inc., 24 B.R. 92, 98 (Bankr. E.D.Pa. 2002) ("Failure to make post-petition payment to a mortgagee has been found to be sufficient "cause" for relief from the stay under Section 362(d)(1).") (citations omitted); see also In re Indep. Mgmt. Assocs., Inc., 108 B.R. 456, 464 (Bankr. D.N.J. 1989) ("It is a long-standing rule that another prong of the 'for cause' rule in § 362(d)(1) arises from a failure to make payments on property post-petition.") (citations omitted).

15. MERS should not be forced to continue providing services and acting as nominal mortgagee while the Debtors accrue post-petition charges indefinitely. The Debtors' consistent failure to meet their post-petition obligations is sufficient cause to justify relief from the automatic stay.

## C. Debtors Should Be Compelled To Pay Administrative Expense Claims

16. MERS respectfully submits that the Court should grant MERS an allowed administrative claim for the post-petition fees owed to MERS by the Debtors and compel Debtors to pay such claim.

17. A debtor must pay for any post-petition services received pursuant to an executory contract pending a decision to assume or reject that executory contract. See N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or

7

assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.") (internal citation omitted); cf. Continental Energy Assocs. L.P. v. Hazleton Fuel Mgmt. Co. (In re Continental Energy Assocs.), 178 B.R. 405, 408 (Bankr. M.D.Pa. 1995) ("there is ample authority for the proposition that, pending assumption or rejection, the Debtor may elect to enforce the contract thereby being required to pay for the reasonable value of the material or services supplied.") (citing Bildisco).

18.     Under Bankruptcy Code § 503, the costs and expenses of preserving the estate are to be treated as allowed administrative expenses and a creditor may file a request for the payment of such expenses. 11 U.S.C. § 503(a), (b); In re Bake-Line Group, LLC, 312 B.R. 48, 50-51 (Bankr. D.Del. 2004) (finding that post-petition gas provided to debtor-in-possession conferred benefit on estate and entitled to administrative expense claim); see also Bildisco 465 U.S. at 540, ftnt 8 ("The debtor in possession's liability for the reasonable value of any benefits conferred stems from § 503(b) which allows administrative expenses for the "actual, necessary costs and expenses of preserving the estate." (Brennan, J., concurring in part and dissenting in part) (citing 3 COLLIER ON BANKRUPTCY, ¶ 503.04, at 503-15).

19.     The Debtors have not elected to assume or reject the MERS Agreement. Since the Petition Date, however, the Debtors have continued to benefit from their membership in MERS and have received services from MERS in connection with the Debtors' sales and transfers of their mortgage loans and associated loan servicing rights. Moreover, it is clear that the services provided by MERS – processing transactions to reflect the transfer and sales of Debtors' mortgage loans, acting as nominal mortgagee, and tracking the mortgage loans transaction details on the MERS® System – have contributed to the preservation of the estates

by allowing the Debtors to maintain their business pending the sales of mortgage loans and their servicing business. As such, the Debtors should be compelled to pay the outstanding post-petition fees and charges due to MERS in the amount of $67,224.45 as an allowed administrative expense claim.

## CONCLUSION

WHEREFORE, MERS respectfully requests that this Court enter an Order, substantially in the form attached hereto as either Exhibit G1 or Exhibit G2 (i) compelling the Debtors to assume or reject the MERS Agreement, or alternatively, modifying the automatic stay to allow MERS to terminate the MERS Agreement; (ii) compelling payment of outstanding post-petition administrative expenses; and (iii) granting such other and further relief as this Court may deem just and proper.

Dated: February 26, 2008
      Wilmington, Delaware

Respectfully submitted,

_William A. Hazeltine_
William A. Hazeltine (Bar I.D. 3294)
SULLIVAN·HAZELTINE·ALLINSON LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
Phone: 302-428-8191
Fax: 302-428-8195

Wendy S. Walker
Annie C. Wells
MORGAN. LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: 212-309-6000
Fax: 212-309-6001

Attorneys for MERS