EXHIBIT D

**MERSCORP, INC.**
**RULES OF MEMBERSHIP**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **RULE 1** | **MEMBERSHIP** | **Page  2** |
| **RULE 2** | **REGISTRATION ON THE MERS® SYSTEM** | **Page  8** |
| **RULE 3** | **OBLIGATIONS OF MERS** | **Page  15** |
| **RULE 4** | **RULE CHANGES** | **Page  18** |
| **RULE 5** | **FEES** | **Page  20** |
| **RULE 6** | **PROCEDURES** | **Page  23** |
| **RULE 7** | **DISCIPLINARY ACTIONS** | **Page  24** |
| **RULE 8** | **FORECLOSURE** | **Page  26** |
| **RULE 9** | **USE AND OWNERSHIP OF INFORMATION** | **Page  29** |
| **RULE 10** | **INTERIM SECURITY INTERESTS** | **Page  33** |
| **RULE 11** | **SERVICES** | **Page  34** |
| **RULE 12** | **WARRANTIES** | **Page  35** |
| **RULE 13** | **INDEMNIFICATION** | **Page  39** |
| **RULE 14** | **NOTIFICATION TO MERS OF PENDING LAWSUITS** | **Page  41** |

## RULE 1

## MEMBERSHIP

*Section 1.*     MERSCORP, Inc. ("MERS") shall make the services of its mortgage electronic registration system (the "MERS® System") available to any Member of MERS. A Member is defined as an organization or natural person who has signed a Membership Agreement and is not more than 60 days past due as to the payment of any fees due and owing to MERS.

*Section 2.*     Actions with respect to approval or disapproval of applications for membership shall be taken on behalf of MERS by such persons as may from time to time be designated by the Board of Directors of MERS. Subject to Section 3 of this Rule, no applicant shall be approved unless it meets each of the standards of financial condition, operational capability and character defined below:

(a) If the applicant anticipates registering transactions on the MERS® System, the applicant has demonstrated to the satisfaction of MERS that it has adequate personnel capable of registering transactions on the MERS® System with necessary promptness and accuracy, that such personnel shall complete the computer-based training program designated by MERS, and that the applicant has internal security procedures in place to conform to any condition and requirement which MERS reasonably deems necessary for its protection and the protection of other Members:

(b) MERS has received no information which, in the sole discretion of MERS, would adversely reflect on the applicant, or any person associated with the applicant as defined in Section 3 below, to such extent that access of the applicant to the MERS® System should be denied, and any such applicant may be deemed not to meet the qualifications set forth in this paragraph only if:

(i) MERS shall have reasonable grounds to believe that the applicant, or any person associated with the applicant, has been or is responsible for (A) fraud, fraudulent acts or breach of fiduciary duty, (B) making a misstatement of a material fact or omitting to state a material fact to MERS in connection with its application to become a Member, or thereafter while a Member, or (C) the violation of such statutes, rules and regulations applicable to the applicant.

(ii) the applicant, or any person associated with the applicant, has been convicted prior to the filing of its application to become a Member, or at any time thereafter while a Member, of any crime, felony or misdemeanor which involves the purchase, sale or pledge of a mortgage loan or any interest therein or arose out of conduct of the business of funding, acquiring, lending on the security of, or servicing mortgage loans (or any business ancillary or related to any of the foregoing), or involves robbery, larceny, embezzlement, fraudulent conversion, forgery or misappropriation of funds or other property, or other dishonest acts; or

(iii) the applicant has been, or while a Member is, prohibited from transacting business with one or more of the following:      (A) Fannie Mae, (B) Freddie Mac, (C) Ginnie Mae, (D) the U.S. Department of Housing and Urban Development, or (E) the U.S. Department of Veterans Affairs; provided, however, that such prohibition shall not be the sole basis for denial of membership.

(c)    Eligible organizations and natural persons seeking to become Members shall make application on such form as MERS shall from time to time prescribe.  In connection with its application, an applicant shall submit its audited financial statements for its two most recent fiscal years.  MERS shall review the application to verify that the applicant satisfies all of the standards for membership, and in connection therewith the applicant shall make available to MERS such books and records and shall provide such other information as MERS shall reasonably request for such purpose.  Failure of an applicant to cooperate in providing requested books, records, and information shall be grounds for denial of the application for membership.

*Section 3.*    MERS may approve the application of any applicant, either unconditionally or on an appropriate temporary or other conditional basis, if MERS in its sole discretion determines that any standard specified in this Rule, as applied to such applicant, or any person associated with such applicant, is unduly or disproportionately severe or that the conduct of such applicant or person associated with such applicant has been such as not to make it against the interest of MERS, the existing Members, and the public to approve such application.  MERS shall notify each applicant of the action taken

with respect to its application and the reasons therefore.  For purposes of this Rule, the term "person associated with" when applied to any person or entity shall mean (i) any partner, senior officer, director or controlling person of such person or entity or (ii) any officer or employee of such person or entity who has, or shall have, access to the MERS® System.

> *Section 4.*    Notwithstanding the foregoing, MERS may decline to accept the application of any applicant upon a determination by MERS that the MERS® System does not have adequate space, data processing capacity or other operational capability at that time to permit the inclusion of additional Members without impairing the ability of the MERS® System to provide services for existing Members; provided, however, that applicants whose applications are denied solely pursuant to this section shall be approved as promptly as the capabilities of the MERS® System permit, in the reasonable judgment of MERS, in the order in which their applications were filed with MERS or in such other order as may be determined by MERS from time to time in its reasonable judgment.

> *Section 5.*    An applicant whose application to become a Member has been approved by MERS shall be considered a Member after signing and delivering to MERS a Member Agreement as approved by the Board of Directors of MERS and paying the initial MERS membership fee.

> *Section 6.*    Each Member shall immediately notify MERS if at any time it fails to meet any of the membership criteria specified in this Rule.

*Section 7.*    Any Member may withdraw its membership from MERS by giving 90 days written notice to the President or Secretary of the Corporation. Such withdrawal shall be effective on the ninetieth day after receipt at which time all rights and obligations of the withdrawing Member shall cease, except any obligation of such Member to pay fees or assessments assessed prior to withdrawal to the extent such obligation has not been fulfilled and except for any conditions the Board of Directors may establish for the de-registration of mortgages from MERS, including fees to defray the costs of such de-registration.

(a)    Any Member that sells, transfers, or otherwise disposes of all or substantially all of its assets to any entity that is not a member of MERS, shall be treated as having withdrawn from membership in MERS as of the effective time of such disposition of assets or combination with such entity unless the acquiring entity signs a Membership Agreement with MERS and as such shall be bound by the Rules of Membership and Procedures of MERS.

(b)    If any Member that merges or otherwise combines with any other entity and such other entity is the surviving entity and is a non-Member of MERS, then the Member Agreement entered into by the Member shall remain in full force and effect as to the acquiring non-Member entity unless the surviving non-Member withdraws from membership or is removed in accordance with the Rules of Membership or Procedures.

vApril2006                                6

(c)     If any Member merges, is acquired by or otherwise combines with another MERS Member (or an entity that is not a MERS member but who agrees to become a member), the non-surviving Member's registered loans on the MERS® System shall be transferred to the surviving Member's Organizational Identification Number (Org ID) on the MERS® System. This transfer shall be defined as an Intracompany Transfer subject to the then-current fee for such Intracompany Transfer. The surviving Member shall not be allowed to retain or use the nonsurviving Member's Org ID Number. Members have an affirmative obligation to notify MERS in writing of any merger with or acquisition of another member.

*Section 8.*     A Member may change its Membership Profile on the MERS® System at any time.  Each Member shall designate one individual within its organization as its contact person for all of such Member's dealings with MERS.  It is the Member's responsibility to update the MERS® System if the contact person changes.

## RULE 2

## REGISTRATION ON THE MERS® SYSTEM

*Section 1.*    MERS, in its sole discretion, shall determine the type and level of access to the MERS® System permitted to each Member and the types of transactions that such Member may register on the MERS® System.  No Member may register or attempt to register any transaction not authorized under the Rules of Membership or the Procedures.

*Section 2.*    Subject to Section 1 above, each Member may register any mortgage loan on the MERS® System in accordance with the Procedures.

*Section 3.*    Each Member shall promptly, or as soon as practicable, register on the MERS® System, in accordance with the Rules of Membership and the Procedures, any and all of the following transactions to which such Member is a party which involve a mortgage loan registered on the MERS® System until such time as the mortgage loan is deactivated from the MERS® System:

(a) the pledge of any mortgage loan or security interest therein and the corresponding release of such security interests;

(b) the pledge of any servicing rights or security interest therein and the corresponding release of such servicing rights or security interests;

(c) the transfer of beneficial ownership of a mortgage loan by a Member to a Member;

(d) the transfer of beneficial ownership of a mortgage loan by a non-Member to a Member;

(e) the transfer of beneficial ownership of a mortgage loan by a Member to a non-Member;

(f) the transfer of servicing rights with respect to a mortgage loan by a Member to a Member;

(g) the registration of servicing rights with respect to a mortgage loan from a non-Member to a Member;

(h) the transfer of servicing rights with respect to a mortgage loan from a Member to a non-Member (requiring deactivation);

(i) the initiation of foreclosure of any mortgage loan registered on the MERS® System;

(j) the release of a lien with respect to a mortgage loan registered on the MERS® System;

(k) the creation of a sub-servicing relationship with respect to a mortgage loan registered on the MERS® System; and

(l) any renewal, extension or modification of a mortgage loan registered on the MERS® System that involves the recording of a new security instrument and does not merely change the rate, principal balance or term.

*Section 4.*    (a)    The transfer to a non-Member of servicing rights with respect to a mortgage loan registered on the MERS® System shall require the deactivation of such mortgage loan from the MERS® System in accordance with these Rules and the Procedures.  Upon the withdrawal or removal of a Member, all mortgage loans for which such Member acts as servicer shall be deactivated from the MERS® System, provided, however, that the mortgage loans shall remain registered with MERS if the substitute servicer is a Member and all MERS fees relating to the servicing transfer to the substitute servicer are paid.  The transfer to a non-Member of a beneficial interest in a mortgage loan registered on the MERS® System shall not require the de-registration of such mortgage loan from the MERS® System unless:  (i) the servicer is a non-Member of MERS or (ii) such non-Member beneficial owner shall require deactivation.

(b)    As long as there are no contrary instructions, when the beneficial ownership of a mortgage loan registered on the MERS® System is vested in a non-Member, MERS and Mortgage Electronic Registration Systems, Inc. shall at all times

comply with the instructions of the Member shown on the MERS® System as the servicer of such mortgage loan with respect to transactions relating to such mortgage loan. Such Member shall indemnify and hold harmless MERS, and any employee, director, officer or affiliate of MERS, for any and all liability incurred as a result of compliance by MERS with instructions given by such Member on behalf of the non-Member beneficial owner.

*Section 5.*    *(a)*    Each Member, at its own expense, shall cause Mortgage Electronic Registration Systems, Inc., to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  Mortgage Electronic Registration Systems, Inc. is a wholly owned subsidiary of MERS created for the purpose of serving as the mortgagee of record in the appropriate public records. The Member shall monitor the public records to verify that it has complied with the preceding sentence and shall maintain an adequate quality assurance program to ensure that its verification procedures are effective. The Member hereby warrants to MERS that either (i) an appropriate mortgage, or deed of trust, or other such instrument as may be required under applicable state law, naming Mortgage Electronic Registration Systems, Inc. as mortgagee, or (ii) an appropriate assignment of mortgage, or assignment of deed of trust, or other such instrument as may be required under applicable state law, naming Mortgage Electronic Registration Systems, Inc. as mortgagee, has been or as soon as practicable shall be, properly prepared and delivered to the appropriate recording office and the Member shall promptly register on the MERS® System the date on which such instrument was delivered. As soon as practicable, the Member shall register on the MERS® System the specific recordation information

provided by the custodian of public records which evidences that Mortgage Electronic Registration Systems, Inc. is mortgagee of record with respect to such mortgage loan. Upon the Member's becoming aware of any discrepancy between the information shown on the MERS® System and the information in the public records, the Member shall promptly correct the information on the MERS® System.

(b) At or prior to the time a Member registers a mortgage loan on the MERS® System, such Member shall provide evidence reasonably satisfactory to MERS demonstrating that Mortgage Electronic Registration Systems, Inc. is, or as soon as practicable shall be, properly recorded as mortgagee of record in the appropriate public records with respect to such mortgage loan.

(c) Mortgage Electronic Registration Systems, Inc. shall not act as mortgagee of record for the purpose of procuring borrowers for the Member or making mortgage loans on behalf of the Member.

(d) Reference herein to "mortgage(s)" shall include deed(s) of trust, and any other form of security instrument under applicable state law.  References herein to "mortgagee of record" shall include the named beneficiary under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of security instrument under applicable state law.

*Section 6.*    MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the beneficial owner, MERS and Mortgage Electronic Registration Systems, Inc. may rely on instructions from the servicer shown on the MERS® System in accordance with these Rules and the Procedures with respect to transfers of beneficial ownership, transfers of servicing rights, and releases of security interests applicable to such mortgage loan. The beneficial owner shall give any such contrary instructions to MERS and Mortgage Electronic Registration Systems, Inc. in writing and they may rely on such instructions until receipt of further written instructions from the beneficial owner.

*Section 7.*    Each Member shall review for accuracy and completeness all information shown on the MERS® System with respect to mortgage loans and related transactions registered by such Member, and promptly update any incorrect information.

*Section 8.*    Within ten (10) business days of receiving notice from the Member servicing the loan that the mortgage loan has been paid in full, MERS shall give notice to all Members shown on the MERS® System as having interests in such mortgage loan. The Member servicing the mortgage loan shall be responsible, at its own expense, to:

(a) take, or cause to be taken, appropriate action, including delivery to the appropriate recording office of an instrument of satisfaction or release (which may be signed by a certifying officer of Mortgage Electronic Registration Systems, Inc.), to

extinguish the lien of such mortgage in the proper manner within the applicable state imposed time frames, and register on the MERS® System the date of such action, or

(b)  notify MERS that, in fact, the mortgage loan has not been paid in full. If MERS is notified that a lien release has not been executed in compliance with applicable state imposed time frames, and the Member fails to take such action or give MERS notice that the mortgage loan has not been paid in full, then MERS reserves the right to release such mortgage.  Such Member, upon demand, shall reimburse Mortgage Electronic Registration Systems, Inc. for its out-of-pocket costs in connection with release of the mortgage, including any penalties for failure to release the mortgage or take other action in a timely manner, and shall pay an administrative fee determined by Mortgage Electronic Registration Systems, Inc., and

(c)  indemnify MERS and Mortgage Electronic Registration Systems, Inc. with respect to any liability which may arise as a result of the failure of such Member to take such action or give MERS such notice in a timely and accurate manner.  Without limiting the generality of the foregoing, such indemnification shall extend to circumstances in which a mortgage is released by Mortgage Electronic Registration Systems, Inc., but the mortgage loan has not been paid in full, or in which such Member wrongfully refuses to authorize Mortgage Electronic Registration Systems, Inc. to release the mortgage.

## RULE 3

### OBLIGATIONS OF MERS

*Section 1.*     MERS shall within two (2) business days forward to the appropriate Member or Members, in the form prescribed by and otherwise in accordance with the Procedures, all properly identified notices, payments, and other correspondence received by MERS with respect to mortgage loans registered on the MERS® System for which Mortgage Electronic Registration Systems, Inc. serves as mortgagee of record.

*Section 2.*     MERS shall provide to Members certain standard reports concerning information contained on the MERS® System, as specified in the Procedures, and such other reports as MERS may determine from time to time.

*Section 3.*     (a)     Upon request from the Member, Mortgage Electronic Registration Systems, Inc. shall promptly furnish to the Member, in accordance with the Procedures, a corporate resolution designating one or more employees of such Member, selected by such Member, as "certifying officers" of Mortgage Electronic Registration Systems, Inc. to permit such Member (i) to release the lien of any mortgage loan registered on the MERS® System to such Member, (ii) assign the lien of any mortgage naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage is registered on the MERS® System, is shown to be registered to the Member, (iii) to foreclose upon the property securing any mortgage loan registered on the MERS® System to such Member, (iv) to take any and all actions necessary to protect the interest of the Member or the beneficial owner of a mortgage loan in any

bankruptcy proceeding regarding a loan registered on the MERS® System that is shown to be registered to the Member, (v) to take such actions as may be necessary to fulfill such Member's servicing obligations to the beneficial owner of such mortgage loans (including mortgage loans that are removed from the MERS® System as a result of the transfer thereof to a non-Member), (vi) to take action and execute all documents necessary to refinance, amend or modify any mortgage loan registered on the MERS® System to such Member, (vii) endorse checks made payable to MERS to the Member that are received by the Member in payment on any mortgage loan registered on the MERS® System that is shown to be registered to the Member.  In instances where Mortgage Electronic Registration Systems, Inc. designates an employee of a Member as a certifying officer of MERS for the limited purposes described above, such Member shall indemnify MERS and any of its employees, directors, officers, agents or affiliates against all loss, liability and expenses which they may sustain as a result of any and all actions taken by such certifying officer.

(b)  Upon request by Mortgage Electronic Registration Systems, Inc. , the Member shall deliver to Mortgage Electronic Registration Systems, Inc. a corporate resolution naming the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. as a "certifying officer" of the Member solely for the purpose of installing Mortgage Electronic Registration Systems, Inc. as mortgagee of record on mortgage loans which have been registered on the MERS® System by the Member.

(c)    At the request of the beneficial owner of a mortgage loan, or any designee thereof as shown on the MERS® System, Mortgage Electronic Registration Systems, Inc. shall provide to such beneficial owner or designee a recordable assignment for such mortgage loan to another party designated by the beneficial owner or designee; provided, however, that such beneficial owner or designee shall warrant to Mortgage Electronic Registration Systems, Inc. that such assignment shall be promptly recorded. Requests for recordable assignments may be made only for purposes of deactivating a mortgage loan from the MERS® System. The deactivation of a mortgage loan for any reason shall be subject to the payment of all applicable fees and expenses, including, without limitation, the costs of preparing and recording the assignment. All such applicable fees and expenses shall be included in a fee schedule.

*Section 4.*    Unless otherwise specifically stated herein, any action required or permitted to be taken by MERS or Mortgage Electronic Registration Systems, Inc. pursuant to these Rules shall be taken on behalf of MERS by such persons as may from time to time be designated by the respective Boards of Directors of MERS and Mortgage Electronic Registration Systems, Inc.

## RULE 4

### RULE CHANGES

*Section 1.*    (a)  MERS shall notify in writing all Members of any proposed changes to the Rules of Membership, and shall provide a copy of such proposed changes to all Members no fewer than ninety (90) days prior to the proposed implementation date of such changes.

(b)  Members may submit to MERS for its consideration their comments with respect to any such proposal, and such comments shall be reviewed by MERS and filed with the records kept by MERS.    Notwithstanding the receipt of any such comments, the Board of Directors of MERS, in its sole discretion, shall have the right to amend, add to or repeal any Rule or part thereof after the expiration of such ninety (90) day comment period, so long as such amendment is not contrary to the Certificate of Incorporation of MERS.

(c)  Each Member shall be bound by any amendment to the Rules with respect to any transaction occurring subsequent to the time such amendment takes effect as fully as though such amendment were now a part of the Rules; provided, however, that no such amendment shall affect the Member's right to withdraw from MERS in accordance with the procedures set forth in these Rules before such amendment or change becomes effective.

(d)    MERS shall provide a ninety (90) day written notice for any changes to the MERS Membership Terms and Conditions.

## RULE 5

### FEES

*Section 1.*    (a)    Each Member shall pay such fees, charges and assessments to MERS for membership, registrations, transfers, and other transactions on the MERS® System and other services rendered by MERS as shall be determined from time to time by MERS in its sole discretion, and specified in a fees schedule promulgated by MERS which may change from time to time.

(b)    MERS shall provide all Members with at least thirty (30) days advance written notice of changes to the fees schedule with the effective date of the new fees.

(c)    Transaction fees for the transfer of servicing between MERS Members (including Intra-company Transfers) shall be payable by the transferor.  If the transferor fails to pay such transaction fees due to bankruptcy, or because the transferor is no longer in business or cannot otherwise be located or contacted, and MERS has exhausted all reasonable means of collection, then the transferee shall be responsible for the payment of those transaction fees because the transferee has received the benefit of the service provided by MERS and is in the best position to protect itself by holding back a portion of the purchase price when purchasing the corresponding loans. The transferee will also be responsible for the cost if the servicing transfer transactions have not been initiated on the MERS® System, and the transferor cannot initiate the transactions

themselves due to the circumstances listed in the preceding sentence and the transferee requests such transaction to be initiated by MERS.

(d)     If a Member registers a mortgage loan on the MERS® System pursuant to the Rules of Membership and Procedures, and that Member subsequently transfers the servicing rights to that mortgage loan to another Member without first paying the registration fee to MERS pursuant to Rule 5, Section 1(a), and the transferor fails to pay such transaction fees due to bankruptcy, or because the transferor is no longer in business or cannot otherwise be located or contacted, and MERS has exhausted all reasonable means of collection, then the transferee shall be responsible for the payment of those transaction fees because the transferee has received the benefit of the service provided by MERS and is in the best position to protect itself by holding back a portion of the purchase price when purchasing the corresponding loans.   If the transferor has not registered the mortgage loan on the MERS® System and is unable to register the mortgage loan due to bankruptcy, or because the transferor is no longer in business or cannot otherwise be located or contacted, then the transferee must register the mortgage loan and pay the corresponding registration fee pursuant to Rule 5, Section 1(a).

*Section 2.*     MERS shall have the authority to charge a Member for any unusual expenses caused directly or indirectly by such Member, or incurred at its request, including, without limitation, the cost of producing records pursuant to a court order or other legal process in any litigation or other legal proceeding to which such Member is a party or in which such records relating to such Member are so required to be produced,

whether such production is required at the instance of such Member or of any other person, provided however, that MERS shall give the Member written notice of such Court Order or legal process in advance of producing the records to enable the Member to pursue its legal rights to refuse the request.

*Section 3.*    Each Member shall pay interest on any delinquent fee payments at the rate set from time to time by MERS.  Said interest rate shall be specified in the fees schedule.

## RULE 6

## PROCEDURES

*Section 1.* (a)  MERS shall prescribe from time to time reasonable Procedures with respect to the business and operation of MERS and Mortgage Electronic Registration Systems, Inc. and the execution of transactions on the MERS® System. Each Member shall be bound by such Procedures and any amendment thereto in the same manner as it is bound by the provisions of the By-Laws and these Rules.

(b)  MERS shall give Members sixty (60) days notice prior to implementation of any amendment to the Procedures.

## RULE 7

### DISCIPLINARY ACTIONS

*Section 1.*    MERS, in its sole reasonable discretion may sanction a Member for one or more violations of these Rules or the Procedures or for errors, delays or other conduct detrimental to the operation of MERS or Mortgage Electronic Registration Systems, Inc., the MERS® System or other Members, including, without limitation, a Member's failure to provide adequate training and supervision to its employees to enable proper use of the MERS® System, by imposing any of the following:

(a) removal as a Member, but only if the notice requirements of Rule 7, Section 2 below have been met by MERS;

(b) suspension, for a period and upon terms determined by MERS;

(c) fines, in an amount determined by MERS;

(d) censure; or

(e) any other fitting requirements that may be determined by MERS.

*Section 2.*    MERS shall give written notice to the applicable Member of the terms of any such violation and possible sanction, which shall include a brief description of the basis for the imposition of the sanction. The Member shall then have fifteen (15) days from the date of receipt of the notice to provide a written response and have an opportunity to be heard. At the expiration of the fifteen (15) days, if MERS determines that a breach has occurred and that sanctions may be imposed, the Member shall be given thirty (30) days to cure the breach. If the breach is not cured within the thirty (30) days, MERS may impose such sanctions on the Member. If the Member does not cure the

breach during the thirty (30) day curing period, then upon the expiration of the curing period, MERS shall notify any other member of MERS for whom the breaching Member acts as an authorized servicer or sub-servicer of mortgage loans registered on the MERS® System.

Section 3.  If the nature of the breach is the same or similar to a breach by the Member that has occurred within the last year, there may not be a curing period.

## RULE 8

### FORECLOSURE

*Section 1.*    (a)    With respect to each mortgage loan for which Mortgage Electronic Registration Systems, Inc. is the mortgagee of record, the beneficial owner of such mortgage loan or its servicer shall determine whether foreclosure proceedings with respect to such mortgage loan shall be conducted in the name of Mortgage Electronic Registration Systems, Inc., the name of the servicer, or the name of a different party to be designated by the beneficial owner.

(b)    The Member servicing a mortgage loan registered on the MERS® System shall be responsible for processing foreclosures in accordance with the applicable agreements between such Member and the beneficial owner of such mortgage loan.

(c)    In the State of Florida, the authority to conduct foreclosures in the name of MERS granted to a Member's Certifying Officers under Paragraph Three of the Member's MERS Corporate Resolution is revoked.  Effective June 1, 2006, the Member shall be sanctioned $10,000.00 per violation for commencing a foreclosure in Florida in the name of MERS.

(d)    In the event that the beneficial owner or its designated servicer determines that foreclosure proceedings shall be conducted in the name of a party other than Mortgage Electronic Registration Systems, Inc., the servicer designated on the MERS® System shall cause to be made an assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. to the person designated by the beneficial owner, and such beneficial owner shall pay all recording costs in connection therewith.

*Section 2*:    (a)    If    a    Member    chooses    to    conduct foreclosures in the name of Mortgage Electronic Registration Systems, Inc., the note must be endorsed in blank and in possession of one of the Member's MERS certifying officers.  If the investor so allows, then MERS can be designated as the note-holder.

(i)    The Member shall not plead MERS as the note-owner in any foreclosure document; including but not limited to, the foreclosure complaint.

(ii)    The Member shall not plead MERS as a co-plaintiff in a foreclosure action.

(iii)  If the note is lost or cannot be located, the Member shall not commence a foreclosure action in the name of MERS, but rather must assign the mortgage out of MERS.

(b)  In non-judicial foreclosure states, if the Member chooses to foreclose in MERS name under the power of sale provision in the security instrument and is not seeking a deficiency judgment, then the note does not need to be in the possession of the Member's MERS Certifying Officer when commencing the foreclosure action; provided, however, that under no circumstances may the Member allege that the note is in their possession unless it so possesses.

(c)  If the Member pleads MERS as the note-owner or as a co-plaintiff or commences a foreclosure in the name of MERS when the note is lost or cannot be located, it shall be considered a violation of the MERS Membership Rules and MERS may dismiss such foreclosure action.   Effective June 1, 2006, the Member shall be sanctioned $1,000.00 for the first violation and $5,000.00 for each subsequent violation of this Rule.

(d)  For all foreclosures conducted in the name of MERS, the member shall take all reasonable and necessary steps to avoid having Mortgage Electronic Registration Systems, Inc. take title to the applicable property that is the subject of a mortgage loan.  Mortgage Electronic Registration Systems, Inc. shall not be obligated to take title to any property that is the subject of a mortgage loan; provided, however, that if the Member so requests, Mortgage Electronic Registration Systems, Inc. may take title at the conclusion of the foreclosure sale upon prior written consent to the

Member from Mortgage Electronic Registration Systems, Inc. If title is taken in the name of Mortgage Electronic Registration Systems, Inc., the Member shall take all necessary and reasonable steps to remove Mortgage Electronic Registration Systems, Inc. from title as soon as possible.

(e)  If title is put into Mortgage Electronic Registration Systems, Inc.'s name and there is a violation of state, county or city codes or any other applicable regulation; including, but not limited to, non-payment of tax bills, the Member shall be responsible to promptly take all necessary action to prevent fines or judgments from being entered against MERS. If the Member fails to do so, MERS may take such action and will sanction the member for all costs and expenses; including, but not limited to, attorney fees.

## RULE 9

### USE AND OWNERSHIP OF INFORMATION

*Section 1* (a) Each Member shall at all times keep confidential and shall not sell or otherwise disclose any information contained on the MERS® System that is (i) not owned by such Member, (ii) was not originally provided by Member to MERS, or (iii) not available in public records or otherwise known to the Member. MERS and the Member shall use a reasonable degree of care consistent with the Standards for Safeguarding Customer Information (16 C.F.R. parts 314) (the "Safeguards Rule") to preserve the confidentiality of any such information, and to take all reasonable action by instruction, agreement or otherwise with its directors, officers, employees, affiliates and agents to satisfy its obligation with respect to confidentiality, non-disclosure and limitation of use of any such information. The obligations of MERS and the Member under this Rule 9 shall survive termination of this agreement

(b) MERS shall have no ownership rights whatsoever in or to any information contained on the MERS® System. Notwithstanding the foregoing, MERS is authorized to (i) use the information contained on the MERS® System to compile transaction volume reports to track current or previous usage levels, project future usage and provide the mortgage industry with usage data which may be used to gauge the success of the MERS® System, but excluding any references to a particular borrower name or address other than in reports given to the MERS Board of Directors, (ii) use the information contained on the MERS® System as part of its quality control process to monitor compliance with operational standards and time frames, (iii) furnish any

information contained on the MERS® System to any governmental authority pursuant to a subpoena or court order, provided, however, that MERS shall undertake, to the extent it reasonably can under the circumstances, to notify all Members shown on the MERS® System as having an interest in a mortgage loan which is the subject of such subpoena or court order to allow such Members time to attempt to quash such subpoena or court order, or (iv) provide information and reports (as approved by the Board) regarding mortgage activity and mortgage loans registered on the MERS® System that otherwise could have been obtained through the public land records if not for the implementation of MERS.

(c) Any reports given to third parties shall not identify individual Members or borrower names and addresses as to transaction information without the Member's prior consent.

*Section 2.*  (a) MERS acknowledges and agrees that: (a) the Member will be entering customer information into the MERS® System to which MERS has access as a part of the services provided to the Member, and (b) such customer information is subject to Section 1 of Rule 9 of the MERS Rules of Membership – "Use and Ownership of Information".

(b) MERS has implemented and will maintain an information security program consisting of reasonable administrative, physical, and technical safeguards designed to meet the Objectives set forth in 16 C.F.R. 314.3(b) of the Safeguards Rule.

MERS's controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System are generally described in the MERS Integration Handbook (Volumes I and II). MERS believes the controls and procedures so described meet the Objectives specified in the Safeguards Rule. MERS agrees to maintain controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System that are no less stringent than those described in the current version of the MERS Integration Handbook. MERS further agrees that any changes or modifications to such controls and procedures will also be designed to meet the Objectives specified in the Safeguards Rule. Each Member shall inform MERS in writing whenever the Member believes that the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System fail to meet the Objectives specified in the Safeguards Rule. MERS agrees the Member (or a mutually agreeable third party representative) will be given access to monitor that MERS has satisfied the provisions of this paragraph, including access to any audits, summaries of test results or other equivalent evaluations of the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System. MERS will promptly report to the Member any actual or suspected breach of the confidentiality or security of any information contained on the MERS® System.

(c) As part of the controls and procedures described in paragraph (b) of this section, MERS maintains, and will continue to maintain, a Disaster Recovery Plan, a summary of which will be supplied to the Member upon request. MERS agrees that the

Disaster Recovery Plan will be reviewed at least annually and will include annual testing to ensure that the MERS® System can be restored within 48 hours after the declaration of a disaster under the plan.

## RULE 10

### INTERIM SECURITY INTERESTS

*Section 1.*      The pledge of a security interest in any mortgage loan registered on the MERS® System to an interim funding lender, such as a warehouse lender, shall be shown as released on the MERS® System when the security interest has been released in accordance with the methods and procedures established among the interim funding lender, the lender granting the security interest and the subsequent purchaser of such mortgage loan, if any, as specified below.

*Section 2.*      An interim funding lender's security interest shall be shown as released on the MERS® System: (i) for investors selecting Option I of the Procedures, when the beneficial owner registers its interest on the MERS® System; or (ii) for investors selecting Option 2 of the Procedures, when the beneficial owner registers its ownership of the loan and the interim funding lender registers the release of its security interest on the MERS® System.

*Section 3.*      In the event that Member provides to MERS specific wiring instruction information relating to mortgage loans registered on the MERS® System, MERS and Member agree that:  (i) such information is for informational purposes only, (ii) Member makes no representations or warranties about the accuracy and completeness of such information, and (iii) Member shall not be liable to MERS, any other member, or any other party based on the provision of, and reliance on, such information.

## RULE 11

### SERVICES

MERS shall provide, either directly or through a third party, all services, resources, software, equipment and facilities (collectively, the "Services") as determined from time to time by the Board of Directors of MERS and described more particularly in the Procedures.    MERS shall provide the Services in compliance with reasonable performance standards (the "Performance Standards") as determined from time to time by the Board of Directors of MERS and described more particularly in the Procedures.

## RULE 12

### WARRANTIES

*Section 1.*    <u>Work Standards</u>.  MERS represents and warrants that the Services shall be rendered with promptness and diligence in accordance with the practices and high professional standards used in well-managed operations performing services similar to the Services and shall be performed in a workmanlike and cost effective manner. MERS represents and warrants that it shall use, and shall require all third-party vendors to use, adequate numbers of qualified personnel with suitable training, education, experience, and skill to perform the Services and satisfy the Performance Standards.

*Section 2.*  <u>Maintenance</u>.  MERS represents and warrants that the equipment and software used in the performance of the Services shall be maintained so that they operate in accordance with the Performance Standards, including (i) maintaining such equipment in good operating condition, subject to normal wear and tear, (ii) undertaking prudent repairs and preventive maintenance on such equipment, and (iii) performing prudent software maintenance, including timely updating software used in the performance of the Services, including the MERS® System, to meet any applicable legal or regulatory changes.

*Section 3.*  <u>Technology.</u>  MERS represents and warrants that the Services shall be provided using proven technology which shall take advantage of technological advancements in the industry.

Section 4.  Non-Infringement.  MERS represents and warrants that it shall, and shall require its Third Party Vendors to, perform its responsibilities in a manner that does not infringe, or constitute an infringement or misappropriation of, any patent, copyright, trademark, trade secret or other propriety rights of any third party.

Section 5.  Software Ownership or Use.  MERS represents and warrants that, with respect to the software used in the performance of the Services, it either owns, or is authorized to use, the software in the performance of the Services.

Section 6.  Authorization.  MERS represents and warrants that it has the requisite corporate power and authority to carry out its responsibilities.

Section 7.  Viruses.  MERS represents and warrants that it and any third-party vendors providing the Services shall not code or introduce any Viruses (defined herein) into the MERS® System and any other systems and software used to provide the Services and it shall take reasonable business precautions to ensure that no Viruses are coded or introduced into the MERS® System and any other systems and software used to provide the Services.  The term "Viruses" shall mean any (i) program code, programming instruction or set of instructions intentionally construed with the ability to damage, interfere with or otherwise adversely affect computer programs, data files or operations; or (ii) other code typically designated to be a virus.

*Section 8*.  Disabling Code.  MERS represents and warrants that it and any third-party vendor providing the Services shall not insert into the MERS® System and in any other systems and software used to provide the Services any code which would have the effect of disabling or otherwise shutting down all or any portion of the MERS® System or Services.

*Section 9*.  Millennium Compliant.  MERS represents and warrants that the MERS® System shall have the ability to provide all of the following functions:  (a) consistently handle date information before, during and after January 1, 2000, including without limitation accepting date input, providing date output, and performing calculations on dates or portions of dates; (b) function accurately and without interruption before, during and after January 1, 2000, without change in operations associated with the advent of the new century; (c) respond to two-digit year-date input in a way that resolves any ambiguity as to century in a disclosed, defined, and predetermined manner; and (d) store and provide output of date information in ways that are unambiguous as to century.

*Section 10*.  Licensing and Qualification.  MERS and Mortgage Electronic Registration Systems, Inc. represents and warrants that each has obtained all state licenses and has qualified to conduct business in all fifty states and the District of Columbia where such licensing and/or qualification is required by law for an entity serving as mortgagee of record, solely as nominee, in an administrative capacity, for the beneficial owner thereof.

*Section 11.*     <u>Disaster Recovery Plan.</u>     MERS represents and warrants to the Member that it has in place and will continue to maintain a fully effective disaster recovery plan.  MERS will routinely (no less often than once per year) test its disaster recovery plan to ensure its continued effectiveness and capability of protecting its Members in the event of a disaster.  MERS will provide the results of such test to the a Member in writing upon request.

# RULE 13

## INDEMNIFICATION

*Section 1.*  MERS and Mortgage Electronic Registration Systems, Inc. agree to indemnify the Member and the Member agrees to indemnify MERS and Mortgage Electronic Registration Systems, Inc. in accordance with Section 9 of the MERS Terms and Conditions .  In addition to Section 9 of the Terms and Conditions, the following provisions shall apply:

(a) the indemnified party may but shall not be obligated to participate in the defense at its own expense and using counsel of its own choosing; provided, however, that the indemnifying party has the right to control the defense.

(b) the indemnified party shall cooperate and provide assistance as the indemnifying party reasonably requests and shall be entitled to recover reasonable costs of providing assistance.

(c) the indemnifying party shall keep the indemnified party informed on status of claim and litigation.

(d) the indemnifying party shall not, without indemnified party's written consent, compromise or settle the claim if such compromise or settlement would impose

an injunction or other equitable relief upon indemnified party or such compromise or settlement does not include the third party's release of the indemnified party.

(e) if indemnifying party fails to timely defend, contest or otherwise protect against the claim and fails to contest in writing the indemnified party's right to indemnification, the indemnified party may, but shall not be obligated to defend and make any compromise or settlement and recover the costs thereof from the indemnifying party.

(f) If the indemnifying party contests in writing the indemnified party's right to indemnification, then the indemnified party shall defend the claim and may seek to recover all expenses paid by the indemnified party from the indemnifying party, and if successful, shall not be liable to pay the fees and expenses of initiating the mediation or arbitration pursuant to the Member Agreement.

## RULE 14

### NOTIFICATION TO MERS OF PENDING LAWSUITS
### AND ADDITIONAL INDEMNIFICATION PROVISIONS

Section 1.  The provisions set forth in this Rule 14 are in addition to those provisions set forth in Rule 13 of the MERS Rules of Membership and Paragraph 9 of the MERS Membership Terms and Conditions.  To the extent that any provision of this Rule 14 conflicts with any provision of Rule 13 of the MERS Rules of Membership or Paragraph 9 of the MERS Membership Terms and Conditions, the provisions of this Rule 14 shall control.


Section 2.  Without regard to responsibility under Paragraph 9 of the MERS Membership Terms and Conditions:

(a)    It is the Member's affirmative duty to immediately notify MERSCORP, Inc. of any and all lawsuits or written threats to initiate lawsuits that (i) involve a mortgage loan in which the Member has ownership rights, servicing or subservicing rights, secured interests, or any other significant right or interest, and (ii) name (or threaten to name) MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (whether or not the Member is also a named party).

(b)    The Member shall notify MERSCORP, Inc. of any claims that are filed against MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (whether or not the Member is also a named party) in response to a proceeding initiated by such Member (either in its own name or in the name of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc.), including without limitation

counterclaims that are filed in response to a foreclosure action commenced by the Member in the name of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc.

(c)    If the Member has transferred or otherwise terminated its rights and interests in a mortgage loan, and receives notice of a lawsuit, a written threat to initiate a lawsuit or a claim (as such lawsuits, threatened lawsuits and claims are described in Section 2(a) and (b) of this Rule 14) from the MERSCORP, Inc. mailroom, the Member must notify MERSCORP, Inc. of (i) such lawsuit, threatened lawsuit or claim, and (ii) the transfer or termination of the Member's rights and interests in the subject mortgage loan.

Section 3.    The Member shall notify MERSCORP, Inc. of all lawsuits, threatened lawsuits or claims (as such lawsuits, threatened lawsuits and claims are described in Section 2(a) and (b) of this Rule 14), regardless of the method, person or entity by which the Member receives notice of such lawsuits, threatened lawsuits or claims.

(a)    All notifications required by this Rule 14 shall include (as applicable):

(i)    the name of the lawsuit, and the county, state and court in which the lawsuit is filed;

(ii)    the Mortgage Identification Number (MIN) of the mortgage loan involved;

(iii)    the date the complaint was filed and the date the Answer is due;

(iv)    the name and phone number of the contact person of the Member with respect to the subject lawsuit, threatened lawsuit or claim (which may be in-house counsel);

(v)    the name and telephone number of the attorney and law firm, if any, retained by the Member with respect to the subject lawsuit or claim; and

(vi)    a copy of all pleadings with respect to the subject lawsuit or claim in the possession of the Member or a copy of the written threat to initiate a lawsuit (as applicable).

(b)    All notices required by this Rule 14 shall be sent to the attention of the Corporate Counsel of MERSCORP, Inc. either via fax to (703) 748-0183 (which is confirmed by transmission report or equivalent thereof), via e-mail to mers@mersinc.org (which is confirmed by delivery report or equivalent thereof), via registered or certified mail (return receipt requested and postage prepaid) to 1595 Spring Hill Road, Suite 310, Vienna VA   22182, or via a nationally recognized overnight courier (prepaid and providing proof of delivery) to 1595 Spring Hill Road, Suite 310, Vienna VA   22182.

(c)    A Member shall in no way be relieved of its obligations under Paragraph 9 of the MERS Membership Terms and Conditions by (i) the failure of the Member to receive proper notification from a third party with respect to a lawsuit, threatened lawsuit or claim, or (ii) the proper notification, pursuant to this Rule 14, of a lawsuit, threatened lawsuit or claim from the Member to MERSCORP, Inc.

Section 4. It is the responsibility of the Member to inform its retained counsel of the Member's indemnification obligations under the MERS Membership Terms and Conditions and the MERS Rules of Membership (including without limitation this Rule 14). With respect to a Member Indemnified Claim (as that term is defined in Paragraph 9 of the MERS Membership Terms and Conditions), Member and/or its retained counsel shall take all necessary and appropriate actions to assert promptly valid defenses available to MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable), even if such defenses are unavailable to the Member, including without limitation the defense that the claim against MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) should be dismissed as a claim against an inappropriate party.

(a)    If a Member and/or its retained counsel fails to acknowledge in writing its obligations (including its obligation to defend) under Paragraph 9 of the MERS Membership Terms and Conditions with respect to a Member Indemnified Claim, within the earlier date of (i) thirty (30) days after receipt by the Member of notice of the Member Indemnified Claim, either from MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc. or a third party, and (ii) thirty (30) days prior to the deadline for MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) to submit an initial response to the Member Indemnified Claim, then MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) shall have the right (but not the obligation) to hire independent counsel and to undertake

the defense, settlement and/or compromise of such Member Indemnified Claim on behalf of, and at the sole expense of, the Member.

(b)    Regardless of whether a Member, MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. defended a Member Indemnified Claim or none of these entities defended such claim, and regardless of whether MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. had notice of the Member Indemnified Claim, if a judgment is entered against MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. for such claim, the Member shall pay the amount of the judgment and any other related Indemnified Payments (as that term is defined in Paragraph 9 of the MERS Membership Terms and Conditions) on behalf of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable), and (ii) if MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. defends against the enforcement of a judgment (which MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. shall have the right to do in its discretion), the Member shall promptly reimburse MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) the amount of the Indemnified Payments related to such defense.

(c)    With respect to a Member Indemnified Claim, the Member shall provide MERSCORP, Inc. with (i) copies of all public pleadings it receives from third parties (and notice of protected pleadings it receives from third parties), (ii) copies of all public

pleadings it files on its own behalf, and (iii) copies of all pleadings it files on behalf of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc.

Section 5.    The obligations of the Member under this Rule 14 shall survive the termination of the Member's use of the MERS® System