## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC.**, a Delaware corporation, et al., | : | Case No. 07-10416 (KJC) |
| | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | Objection Deadline: 2/27/08 at 4:00 p.m. |
| | : | Hearing Date: 3/5/08 at 1:30 p.m. |

### OJBECTION OF GOLDMAN SACHS MORTGAGE COMPANY TO DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Goldman Sachs Mortgage Company ("GSMC"), by and through its undersigned counsel, hereby submits this objection (the "Objection") pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") to the Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 (Docket No. 4804) (the "Disclosure Statement"). In support of its objection, GSMC respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28. U.S.C. § 157(b). Venue is proper before this Court pursuant to U.S.C. § 1408 and 1409.

### BACKGROUND

2. On April 2, 2007 (the "Petition Date"), New Century Financial Corporation and certain of its subsidiaries (collectively, the "Initial Debtors")[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the

---

[1] The Initial Debtors include New Century Financial Corporation, New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset

District of Delaware (the "Bankruptcy Court"). On August 6, 2007, New Century Warehouse Corporation d/b/a Access Lending ("Access Lending," and, together with the Initial Debtors, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered and have been consolidated for procedural purposes only.

3. On February 2, 2008, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of February 2, 2008 (the "Plan") and the Disclosure Statement. A hearing to consider approval of the Disclosure Statement is scheduled for March 5, 2008.

4. The Plan establishes three broad groups of Debtors for the purposes of the treatment of unsecured claims: (1) the Holding Company Debtors (as defined in the Plan), (2) the Operating Debtors (as defined in the Plan), and (3) Access Lending. GSMC holds unsecured claims against all three debtor groups.

**BASIS FOR OBJECTION**

**THE DISCLOSURE STATEMENT DOES NOT CONTAIN SUFFICIENT DISCLOSURE**

**A.    A Disclosure Statement Must Provide "Adequate Information"**

5. The Disclosure Statement cannot be approved as it fails to provide "adequate information" under section 1125(a) of the Bankruptcy Code. Section 1125(a) of the Bankruptcy Code provides that acceptance or rejection of a plan may be solicited only after a written disclosure statement, approved by a court as containing "adequate information," is distributed. 11 U.S.C. § 1125(a). "Adequate information" is defined as information that is "of a kind, and in

---

Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corp., New Century R.E.O. II Corp., New Century R.E.O. III Corp., New Century Mortgage Ventures, LW, NC Deltex, LLC, and NCoral, L.P.

sufficient detail, as far as is reasonably practicable . . . that would enable a hypothetical reasonable investor typical of holders or claims or interest of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

      6. The Disclosure Statement does not meet the standard for "adequate information" required under 11 U.S.C. § 1125(a)(1), because it fails to provide the kind of information and sufficient details that would allow a creditor to make an informed judgment whether to accept the Plan. <u>Oneida Motor Fright, Inc. v. United Jersey Bank</u>, 848 F.2d 414 (3d Cir. 1988). In particular, the Disclosure Statement fails to give adequate information concerning the status of the sale of the estates' assets and proceeds realized from such sales, the Debtors' current cash position, and the projected net distributable assets available to claim holders. Further, the Disclosure Statement fails to give adequate information concerning the nature and scope of litigation claims held by the Debtors against third parties and the likelihood that such claims will be brought on behalf of the estates. In fact, the Debtors acknowledge that the current draft of the Disclosure Statement "omits certain information, including financial information and information related to the estimated recoveries of Creditors under the terms of the Plan and the assumptions underlying the Plan." Disclosure Statement at 9. While the Debtors indicate their intention to file a more fulsome Disclosure Statement seven days before the scheduled March 5, 2008 hearing, GSMC files this objection protectively in case such supplemented disclosure statement still provides inadequate information.

**B.     The Disclosure Statement Fails to Provide Adequate Information Concerning The Debtors' Financial Status, Including the Disposition of Assets, Current Cash Position and Projected Net Distributable Assets**

7.     The Disclosure Statement makes inadequate disclosures concerning the Debtors' financial status. First, the Disclosure Statement fails to disclose the aggregate proceeds realized from the disposition of the estates' assets. Disclosure Statement at 123-124. The scant financial information the Debtors do disclose fails to account for the proceeds realized by the estates from the sale of the Debtors' servicing assets, servicing platform, mortgage assets, Access Lending assets, and technology assets. Disclosure Statement at 124.

8.     Moreover, and of particular concern to GSMC, the Disclosure Statement provides inadequate information regarding the $4.5 million due to Access Lending from Access Holdings Corporation ("Access Holdings", a company formed by the former management of Access Lending in its pre-bankruptcy acquisition of Access Lending's business) on account of the Debtor's sale of the Access Lending assets. In exchange for the Access Lending assets, Access Holdings agreed to pay Access Lending 60% of the net proceeds realized on the sale of certain loans, with a minimum guaranteed amount of $4.5 million. The sale closed on April 27, 2007; however as of February 2, 2008, Access Lending has received only $2.4 million from Access Holdings. Disclosure Statement at 32. The Disclosure Statement is silent as to when Access Holdings will pay the additional $2.1 million it owes to Access Lending (or any additional amounts that may be owed), and the availability of recourse against Access Holdings if such amounts are not paid. Such information is relevant to Access Lending's creditors, including GSMC, in order to meaningfully assess their likelihood of recovery under the proposed plan.

9.     In addition, the Disclosure Statement fails to disclose each of the Debtors'

current cash position, offering no account of the amounts the Debtors have paid for operating expenses, administrative expenses, disbursements to restructuring professionals, retention and severance payments, and taxes since the Petition Date.  Disclosure Statement at 124.

10. Lastly, the Disclosure Statement fails to disclose projected net distributable assets available to be disbursed to holders of unsecured claims against the Holding Company Debtors, Operating Debtors and Access Lending, leaving blanks for this information in the draft.  Disclosure Statement at 124.  Nor does the Disclosure Statement provide any indication of the estimated net average recovery holders of unsecured claims can expect to realize from the Holding Company Debtors, Operating Debtors and Access Lending, again leaving blanks for this information in the draft.  Disclosure Statement at 10-11.  Holders of unsecured claims require such information to understand how their claims are to be treated and whether distributions with respect to their claims are adequately ensured under the Plan.

11. Thus, the information provided in the Disclosure Statement is inadequate to allow the holders of unsecured claims to make a meaningful evaluation of the Plan and the ability of the Plan to provide for claims distributions with respect to claims against the Holding Company Debtors, Operating Debtors and Access Lending.  At a minimum, the Disclosure Statement should set forth (1) the proceeds realized by the estates from the sale of the Debtors' servicing assets, servicing platform, mortgage assets, Access Lending assets, and technology assets, (2) the outstanding amounts owed by Access Holdings to Access Lending and whether those amounts are recoverable, (3) the Debtors' current cash position, taking into account operating expenses, administrative expenses, disbursements to restructuring professionals and for retention and severance payments, and taxes paid from the Debtors' operating account since the

Petition Date, and (4) the net average recovery holders of unsecured claims can expect to realize from the Holding Company Debtors, Operating Debtors and Access Lending.

C. **The Disclosure Statement Fails to Provide Adequate Information Concerning The Nature of Litigation Claims Held by the Debtors, If Such Claims Will Be Brought, and Whether a Reserve Will Be Established for Access Lending Claims**

12. The Disclosure Statement makes inadequate disclosures concerning the nature and scope of litigation claims held by the Debtors against third parties and the likelihood that such claims will be brought on behalf of the estates. In particular, the Disclosure Statement provides no information with regard to litigation claims held by Access Lending against third parties (particularly the former management of Access Lending), except to note that the Liquidating Trustee will pay allowed unsecured claims against Access Lending only upon resolution of such claims. Disclosure Statement at 103. Because the Disclosure Statement provides insufficient disclosure as to both (i) the Liquidating Trustee's authority to spend estate money pursuing Access Lending litigation claims and (ii) the scope and nature of such claims, it is not clear if there will be assets available for creditors at the end of that process.

13. Similarly, the Disclosure Statement provides inadequate disclosure on what steps will be taken to reserve for claims of Access Lending's creditors to the extent such claims are disputed, as the Plan does not clearly provide for the establishment of a reserve to cover the full amount of disputed claims against Access Lending. While the Disclosure Statement provides information regarding the establishment of reserves for disputed unsecured claims against the Holding Company Debtors and the Operating Debtors, it notes only that "appropriate reserves" will be established for disputed unsecured claims against Access Lending. Disclosure Statement at 9, 106-107. Thus, holders of unsecured claims against Access Lending are left without adequate information to assess when their unsecured claims will be paid and particularly

6

if, once Access Lending's third party litigation claims are resolved, there will be reserved funds available to pay such claims.

14. The Disclosure Statement also does not provide disclosure on the nature of the $3,973,199.86 intercompany claim to New Century Mortgage Company listed on Access Lending's schedules as an undisputed claim, including whether there is any basis for amendment of the schedules and a challenge to this claim, whether based on equitable subordination or recharacterization as an equity infusion, or otherwise.

15. Holders of claims against the Debtors require the above information to assess (i) the effect litigation claims will have on their recovery, (ii) whether, and the extent to which, estate assets should be used to pursue such claims, and (iii) if, in the case of Access Lending, sufficient funds will be reserved for recovery on currently disputed unsecured claims, and whether funds will be available for distribution if and when third party litigation claims are pursued.

16. As such, the Disclosure Statement is inadequate to give the holders of unsecured claims sufficient understanding of how such litigation will impact the amount of their recovery and, in the case of holders of unsecured claims against Access Lending, both the timing and likelihood of any recovery on unsecured claims. At a minimum, the Disclosure Statement should set forth (1) the nature and scope of the litigation claims held by Holding Company Debtors, Operating Debtors and Access Lending against third parties, (2) the likelihood of such claims being brought, and (3) whether a sufficient claims reserve will be established for disputed unsecured claims against Access Lending.

## RESERVATION OF RIGHTS

17. GSMC reserves its right to supplement this Objection upon the filing of any amendments to the Disclosure Statement or Plan by the Debtors. GSMC reserves its right to raise any and all objections to confirmation of the Plan in the event the Disclosure Statement is approved, including without limitation as to the confirmability of the Plan to the extent it includes the injunction provisions contained in Article 12 of the Plan, and purports to give releases to third parties. Disclosure Statement at 117-119. Similarly, given that the votes of only one class of Access Lending creditor claims are being solicited, it appears that the Plan cannot be crammed down on Access Lending creditors (see U.S.C. § 1129(b)(1)) and the Disclosure Statement appears inadequate or misleading on this point. Disclosure Statement at 140-141. Notably, the Disclosure Statement does not disclose any risks to the confirmability of the Plan in light of these provisions.

18. Nothing contained within this Objection shall constitute an admission regarding the nature or status of GSMC's claims against the Debtors' estates.

## CONCLUSION

19. For the reasons set forth above, the Disclosure Statement lacks adequate information upon which creditors, including GSMC, can evaluate the benefits and treatment proposed under the Plan.

WHEREFORE, GSMC respectfully requests that the Court require the Debtors to supplement or modify the Disclosure Statement as set forth herein or, in the alternative, deny the approval of the Disclosure Statement, and grant such other relief as the Court deems appropriate.

Dated: February 27, 2008  
      Wilmington, Delaware

KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, LLP

     */s/ Christopher A. Ward*  
Christopher A. Ward (Del. Bar No. 3877)  
919 Market Street, Suite 1000  
Wilmington, Delaware 19801  
Telephone: (302) 426-1189  
Fax: (302) 426-9193  
cward@klehr.com

— and —

CLEARY GOTTLIEB STEEN & HAMILTON LLP  
One Liberty Plaza  
New York, NY 10006  
(212) 225-2000

Attorneys for Goldman Sachs Mortgage Company