## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY TRS HOLDINGS,<br>INC.,<br>*et al.*,<br><br>                Debtors. | Chapter 11<br>Case No.  07-10416 (KJC)<br><br>(Jointly Administered)<br>**Hearing Date: March 5, 2008 @ 1:30 p.m. (ET)**<br>**Objection Deadline: February 27, 2008 @ 4:00 p.m.  (ET)** |

## OBJECTION OF NEW YORK STATE TEACHERS' RETIREMENT SYSTEM TO DISCLOSURE STATEMENT TO JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF FEBRUARY 2, 2008

The New York State Teachers' Retirement System ("NYSTRS"), a creditor/party in interest and the Lead Plaintiff in a shareholder securities fraud class action currently entitled *In re New Century*, Case No. 2:07-cv-00931-DDP (JTLx) (the "Securities Litigation"), pending in the United States District Court for the Central District of California (the "District Court"),[1] and filed on behalf of the putative class of investors (the "Securities Class") who purchased securities of New Century Financial Corp. ("NCFC"), one of the Debtors[2] herein, during the period from May 5, 2005 to March 13, 2007, inclusive (the "Class Period"), hereby submits this objection (the "Objection") to the Disclosure Statement For The Joint Chapter 11 Plan Of Liquidation Of The Debtors And The Official Committee Of Unsecured Creditors Dated As Of February 2, 2008 (the "Disclosure Statement"), and states the following:

---

[1]    On January 31, 2008, the District Court dismissed the consolidated amended complaint filed by NYSTRS without prejudice and with leave to file an amended consolidated complaint, highlighting the need for simple reorganization, revisions and clarification of the existing allegations in the consolidated amended complaint. An amended consolidated complaint will be filed shortly.

[2]    Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Disclosure Statement (defined below) or the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of February 2, 2008 (the "Plan").

## BACKGROUND

1.      On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  Subsequently, New Century Warehouse Corporation, one of the Debtors, also filed a voluntary Chapter 11 petition, which is being jointly administered with the initially filed Debtors' petitions.

2.      Prior to the Petition Date, approximately twenty (20) securities class action complaints were filed in the District Court,[3] each alleging violations by the Debtors and certain of their current and/or former officers, directors and underwriters and their auditor (collectively, the "Non-Debtor Defendants") of certain federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and, in some instances, Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (collectively, the "Securities Laws").  These allegations arise from, *inter alia*, false and misleading statements concerning NCFC's financial results and business made during the Class Period.

3.      On or about June 26, 2007, the District Court appointed NYSTRS as Lead Plaintiff, consolidated the pending putative class actions into the Securities Litigation and directed Lead Plaintiff to file an amended consolidated complaint.

4.      NYSTRS and members of the putative Class are creditors, equity holders and parties-in-interest in these Chapter 11 proceedings by virtue of the fact that NYSTRS and the putative Class lost millions of dollars as a result of their purchases of NCFC securities.

5.      On September 14, 2007, NYSTRS filed an amended consolidated complaint (the "Consolidated Complaint").  Although NCFC was named as a defendant in several of the class action complaints filed prior to the Petition Date, NCFC is not named as a defendant in the Consolidated Complaint pursuant to the dictates of 11 U.S.C. §362(a). The Securities Litigation did, however, name the Non-Debtor Defendants.

---

[3]      The first such complaint, *Avi Gold v. Brad A. Morrice, et al.*, was filed on February 8, 2007.

6.     The Securities Litigation and this Chapter 11 proceeding were the result of what has been exposed as a massive accounting fraud.  NCFC and the Non-Debtor Defendants artificially inflated the price of NCFC securities through false and misleading statements concerning NCFC's finance and mortgage lending business.  Specifically, and among other things, NCFC maintained inadequate reserves against losses associated with loan delinquencies and repurchases, which reserves caused NCFC to overstate significantly its publicly reported earnings, thereby creating the false impression that NCFC was profitable when, in fact, it was not.

7.     Since the Petition Date, the Debtors have engaged in an orderly liquidation of their assets through a sequence of court-approved sales.

8.     On February 2, 2008, the Debtors filed the Disclosure Statement (Document No. 4804) and Plan (Document No. 4805).  The hearing on the adequacy of the Disclosure Statement is scheduled for March 5, 2008.

## OBJECTION

9.     *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, Lead Plaintiff reserves its right to assert such objection, as well as any other objections, to confirmation of the Plan.  Furthermore, to the extent Lead Plaintiff or any member of the putative Securities Class is impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan which may be filed after any Disclosure Statement or Plan confirmation objection deadline, Lead Plaintiff reserves its rights to object thereto.*

10.     Lead Plaintiff objects to the adequacy of the Disclosure Statement and to the Plan on the following grounds:

(a)     the description of the Securities Litigation must be revised to accurately reflect its current status;

(b)     the Disclosure Statement omits key financial information;

(c)    the Disclosure Statement and Plan fail to disclose whether and how Computer Information (defined below) and other documents will be maintained and safeguarded;

(d)    the Disclosure Statement fails to provide sufficient and fully accurate information about the Examiner's investigation;

(e)    the extension of stays or injunctions for a period well beyond the Confirmation Date is inappropriate and prejudicial to NYSTRS; and

(f)    the Disclosure Statement fails to disclose whether the Plan intends to deny NYSTRS the right to proceed with its claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions or distribution under the Plan, and fails to identify specific insurance contracts to be assumed.

11.    A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) (the disclosure statement must contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests to vote on the plan). Courts have ample discretion to determine what constitutes adequate information. *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995), *appeal dismissed by, in part, affirmed by, in part*, 184 B.R. 648 (S.D. N.Y. 1995), citing, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Although adequacy is determined on a case-by-case basis under a fact-specific flexible standard, *id.*, a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92

B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

12.    NYSTRS believes that in certain material respects, the Disclosure Statement does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain broad and ambiguous provisions and/or omit material facts that may mislead holders of claims or interests or that should be available to them.

13.    In order to bring the Disclosure Statement into compliance with 11 U.S.C. § 1125(a) and to make the Plan confirmable under the Bankruptcy Code, the Disclosure Statement and Plan must be modified. Unless and until the Plan and Disclosure Statement are revised, the Disclosure Statement should not be approved.

    **A.    The Description of the Securities Litigation Must Be Revised to Accurately Reflect Its Current Status.**

14.    The description of the Securities Litigation, *see* Disclosure Statement ("D.S.") Art. III. C. 9. a, at 36-37, is incomplete. The Disclosure Statement should include that although the District Court dismissed the Consolidated Complaint without prejudice and with leave to amend, NYSTRS intends to file an amended Consolidated Complaint within the time allowed by the District Court.[4]

    **B.    The Disclosure Statement Omits Key Financial Information.**

15.    The Disclosure Statement is replete with deficient financial information. Indeed, in footnote 2, on page 9 of the Disclosure Statement, the Plan proponents admit that the "Disclosure Statement omits certain information, *including financial information and information related to recoveries.*" (Emphasis added.) The Disclosure Statement provides

---

[4]    *See*, n. 1, *supra*.

absolutely no information as to the recoveries of allowed claimholders (other than claimholders being paid in full as required by the Bankruptcy Code). *See* D.S., Art. I. A. 4, at 9-13, and Art. V. A. 1-3, at 123-124 (omission of the amount of proceeds of various asset sales). In the absence of such key information, especially as to the potential recoveries to creditors, holders of allowed claims and interests cannot be said to have been provided adequate information for purposes of voting on the Plan.

16.     The Plan Proponents assert that they will amend the Disclosure Statement "to include such [financial] information *no later than seven (7) days prior to the hearing on the Disclosure Statement.*" D.S., Art. I. A. 4. n. 2, at 9 (emphasis added). Objections to the adequacy of the Disclosure Statement are due no later than seven (7) days prior to the Disclosure Statement hearing. This is not a sufficient amount of time to review and digest such key information. Indeed, creditors and other parties in interest will likely have filed their objections before the Plan proponents even amend the Disclosure Statement to include the information. Therefore, the Disclosure Statement should not be approved unless the omitted financial and recovery information is provided sufficiently before objections to the adequacy of the Disclosure Statement are due.

> **C.      The Disclosure Statement and Plan Fail to Disclose Whether and How Computer Information and Other Documents will be Maintained and Safeguarded.**

17.     Pursuant to the Order establishing expanded procedures governing miscellaneous asset sales, upon a sale of assets that included computers or computer-related equipment, the Debtors represented that a certain protocol, including "the backup and storage of all information stored on the Debtors' computers and computer related equipment" [Docket No. 2594], would be followed in order to safeguard information maintained on the subject computer or computer-related equipment (the "Computer Information").

18.     Although the Disclosure Statement addresses the Debtors' miscellaneous asset sales, the Plan, as described in the Disclosure Statement, does not appear to provide for the

continued protection or maintenance of the Computer Information or other relevant documents after confirmation or the Effective Date of the Plan. This is a liquidating Plan; all of the Debtors' assets are to be liquidated and the proceeds distributed in accordance with the Plan. Except for Access Lending, the Debtors will cease to exist on the Effective Date. The proceeds of any litigation claims will be placed in the Litigation Trust and then distributed to creditors. Nowhere does the Plan or Disclosure Statement provide for the continuation of the protocol for maintaining the Computer Information or other relevant documents. Whether or not the established protocol will continue and for how long is unknown. The Plan must provide and the Disclosure Statement should disclose some mechanism to protect this information, the value of which cannot be overstated, especially in light of the Debtors' efforts to implement the aforesaid protocol.[5]

19.    The Plan and Disclosure Statement must provide and describe that the Debtors or their representative will continue the Computer Information protocol in effect for a reasonable period of time after confirmation of the Plan. The Computer Information and other relevant historical documents must not be abandoned without affording NYSTRS and other interested parties an opportunity to review, inspect, analyze and, if necessary, copy the information.

**D.    The Disclosure Statement Fails to Provide Sufficient and Fully Accurate Information about the Examiner's Investigation.**

20.    Although the Disclosure Statement provides some information (D.S., Art. III. D. 4, at 44-46) regarding the appointment of the Examiner and his investigation of, *inter alia*, the accounting and financial statement irregularities, errors or misstatements (the "Investigation"), the Disclosure Statement overstates the Debtors' cooperation with the Examiner during the course of the Investigation and fails to adequately, if at all, disclose the Examiner's problems and concerns with the extent, or lack, of such cooperation; *e.g.*, longer than reasonable delays in the production of documents by the Debtors; the assertion of privilege by the Debtors in order to

---

[5]    Some of this information is clearly relevant to the Securities Litigation. NYSTRS has yet to obtain discovery due to the automatic stay and the PSLRA discovery stay. *See* ¶¶ 22 - 28, *infra*.

withhold production of a substantial number of relevant e-mails and the failure to produce a privilege log in connection therewith (attempts to resolve the privilege issue extended production of the e-mails more than 4 months), and delayed production of non-privileged documents maintained in "shared drives." *See* Examiner's Motion for a Second Extension of Time to File his Report, Docket No. 4342, ¶¶ 15-24.[6]

21.     Indeed, given the relevance of the Investigation to this Chapter 11 proceeding, the contents of the Examiner's report, scheduled to be filed on February 29, 2008 (after the deadline for filing objections to the Disclosure Statement), should be included in some form in the Disclosure Statement.

>     **E.     The Extension of Stays and Injunctions under the Plan is Inappropriate and Prejudicial.**

22.     During the course of the Chapter 11 cases, NYSTRS sought a limited modification of the automatic stay to obtain from the Debtors copies of all documents and materials that the Debtors produced or provided in connection with any inquiries by the Audit Committee of NCFC's Board of Directors, the SEC, the United States Attorneys Office, the New York State Exchange and the Bankruptcy Court appointed examiner relating to NCFC's accounting and financial statement irregularities, errors and/or misstatements [Docket No,. 2274]. Each of these investigations is generally described in the Disclosure Statement. *See generally* D.S., Art. III. B. and D. 1, at 24-25, 40.

23.     Although this Court acknowledged NYSTRS's position that an alternative form of relief could be to modify the automatic stay solely to permit NYSTRS to obtain relief from the PSLRA Stay in the District Court (and then return to the Bankruptcy Court to request further relief) (*see* Transcript of Oct. 2, 2007 hearing, at 55, lines 17-21 (Docket No. 3423)) and also that the Debtors would have to address NYSTRS's request for production of documents "sooner or later," *id.*, at 27, lines 9-10, and at 56, lines 14-16, this Court denied NYSTRS' motion to

---

[6]     In response to the Examiner's motion requesting additional time to file his report, the Debtors disclosed that due to a vendor error more than 600,000 other documents had not been, but would be, produced.  Docket No. 4422.

modify the automatic stay without prejudice to renew the motion upon the earlier of the filing of the Examiner's report (which was then to be filed on or before January 15, 2008), confirmation of the Plan or a change in circumstances regarding any available factual predicate for the stay modification motion.  Docket No. 4057.

24.    Under the Plan, stays and injunctions provided for in the Chapter 11 cases by Bankruptcy Court orders pursuant to §§105 or 362 of the Bankruptcy Code, and extant on the Confirmation Date, remain in effect until the *later* of the entry of the Final Decree or dissolution of the Liquidating Trust. *See* D.S., Art. IV. I. 2. at 118.

25.    Neither the entry of the Final Decree or dissolution of the Liquidating Trust is a date certain.  In fact, the dissolution of the Liquidating Trust may not occur until more than eight (8) years after the Effective Date of the Plan. *See* D.S., Art. IV. E. 6. l, at 98.

26.    Under the Plan, the Liquidating Trustee has the right to pursue the Debtors' Causes of Action with respect to the restatement of the Debtors' financials (in the event it is determined that such Causes of Action have any value to the Liquidating Trust).  These Causes of Action have some of the same factual predicates as the claims of NYSTRS arising from the allegations in the Securities Litigation.  Because of the requested extension of stays and injunctions under the Plan, the Liquidating Trustee can prevent or, at the very least, significantly delay NYSTRS from ever obtaining access to relevant discovery by virtue of the extended life of the Liquidating Trust.

27.    While NYSTRS can refile its motion upon the occurrence of one of the events listed in ¶23, *supra*, as stated previously, there is no basis for the Liquidating Trust to be able to assert the automatic stay for years beyond the Effective Date of any Plan to frustrate NYSTRS's ability to obtain relevant documents in the Securities Litigation, while having those documents available to pursue its own claims.

28.    The Disclosure Statement provides no explanation to justify the lengthy extension of the automatic stay (or other stays or injunctions).  NYSTRS acknowledges that it currently remains bound by the PSLRA Stay, but the automatic stay should not be available for what

might as well be perpetuity to frustrate the claims of NYSTRS against common defendants to gain a fundamentally unfair litigation advantage.

      F.      **The Disclosure Statement Fails to Disclose Whether the Plan Intends to Deny NYSTRS the Right to Proceed with its Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan, and Fails to Identify Specific Insurance Contracts to be Assumed.**

      29.      Upon information and belief, the Debtors maintain liability insurance policies (the "D&O Policies") in favor of their directors and officers for claims asserted in the Securities Litigation, as well as for claims against the Debtors directly for violations of federal securities laws. The Disclosure Statement fails to disclose the extent of these D&O Policies and which parties may have a right to access the proceeds thereof. NYSTRS maintains that the putative Securities Class is entitled to look to the proceeds of such insurance for payment of the NYSTRS Claims and may, at least, pursue these Claims against the Debtors to the extent of such available insurance, especially because these Claims are not entitled to any distribution under the Plan. Because NYSTRS may not have a direct action against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be accessed through the pursuit of the claims asserted in the Securities Litigation. Accordingly, the Plan should not impact the rights of NYSTRS or the putative Securities Class to pursue their claims against the Debtors to the extent of the proceeds of the D&O Policies.

      30.      In order to overcome this Disclosure Statement inadequacy, the Plan and Disclosure Statement should provide that:

> Nothing in the Plan, or in any Order confirming the Plan, shall preclude NYSTRS, as lead plaintiff, and the putative Class from pursuing their claims against the Debtors to the extent of available insurance coverage and proceeds. The Claims of NYSTRS, as lead plaintiff, and the putative Class against the Debtors, to the extent of available insurance, are preserved and unaffected by the Plan.

      31.      The Disclosure Statement provides that the Debtors intend to assume those insurance policies, to the extent they are executory contracts, listed on Exhibit A to the Plan.

D.S., Art. IV. H. 4, at 117.   However, Exhibit A is not yet available and the date of its availability is not disclosed.   Certainly, this information is relevant to the adequacy of the Disclosure Statement and must be provided at this time or, at the very least, sufficiently before the date on which objections to confirmation are to be filed.

## CONCLUSION

32.    Based on the foregoing, Lead Plaintiff respectfully requests that an order be entered (i) denying approval of the Disclosure Statement and (ii) granting such other and further relief as the Court deems just and proper.

## STATEMENT THAT NO BRIEF IS NECESSARY

33.    As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by Lead Plaintiff are set forth herein, Lead Plaintiff respectfully requests that the Court waive the requirements of D. Del. LR 7.1.2, incorporated in these proceedings by Local Rule 1001-1(b), of filing a separate brief in support of the Objection.   However, if the Court determines otherwise, Lead Plaintiff respectfully requests the opportunity to submit an appropriate brief or memorandum.

Dated: February 27, 2008

**CROSS & SIMON LLC**

By: _Kevin S. Mann_

Christopher P. Simon  (Bar No. 3967)
Kevin S. Mann (Bar No. 4576)
913 North Market St., 11th Floor
Wilmington, Delaware 19899-1380
302.777.4200 (Telephone)
302.777.4224 (Facsimile)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Ira M. Levee, Esq. (IL 9958)
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiff*

BERNSTEIN LITOWITZ BERGER &
**GROSSMANN LLP**
Salvatore J. Graziano, Esq.
Hannah Greenwald Ross, Esq.
Lauren McMillen, Esq.
1285 Avenue of the Americas
New York, New York 10019
212.554.1400 (Telephone)
212.554.1444 (Facsimile)

Blair A. Nicholas, Esq.
Matthew Silben, Esq.
12481 High Bluff Drive, Suite 300
San Diego, California 92130
858.793.0070 (Telephone)
858.793.0323 (Facsimile)

*Lead Counsel to Lead Plaintiff*