UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| NEW CENTURY HOLDINGS, INC., a Delaware ) | Case No. 07-10416 (KJC) |
| corporation, et al. ) | Jointly Administered |
| Debtor. ) | |
| ) | Relates to Docket No. 4897 |
| | Objections due: February 27, 2008 |
| | Hearing date: March 5, 2008 @ 1:30 |

**OBJECTION OF AD HOC COMMITTEE OF BENEFICIARIES OF THE
NEW CENTURY FINANCIAL CORPORATION DEFERRED COMPENSATION
PLAN AND/OR SUPPLEMENTAL EXECUTIVE RETIREMENT/SAVINGS
PLAN TO MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN
ORDER(A) APPROVING PROPOSED DISCLOSURE STATEMENT FOR THE
JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF
FEBRUARY 2, 2008; (B) ESTABLISHING PROCEDURES FOR SOLICITATION
AND TABULATION OF VOTES TO ACCEPT OR REJECT PROPOSED
CHAPTER 11 PLAN OF LIQUIDATION AND (C) SCHEDULING A HEARING
ON CONFIRMATION OF PROPOSED CHAPTER 11 PLAN OF LIQUIDATION
AND APPROVING RELATED NOTICE PROCEDURES**

Gregory J. Schroeder ("Schroeder"), Michelle Parker ("Parker"), Martin Warren ("Warren"), Steve Holland ("Holland"), and Nabil Bawa ("Bawa") and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Plan"), for themselves and all other similarly situated, as beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or The New Century Financial Corporation Supplemental Executive Retirement/Savings Plan (collectively, the "Beneficiaries"), hereby object to Motion Of Debtors And Debtors In Possession For An Order (A) Approving Proposed Disclosure Statement For The Joint Chapter 11 Plan Of Liquidation Of The Debtors And The Official Committee Of

Unsecured Creditors Dated As Of February 2, 2008; (B) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Proposed Chapter 11 Plan Of Liquidation And (C) Scheduling A Hearing On Confirmation Of Proposed Chapter 11 Plan Of Liquidation And Approving Related Notice Procedures (the "Motion"), and request the Court to deny the Motion in all respects and to deny approval of the proposed disclosure statement (the "Disclosure Statement"). In support the Beneficiaries state as follows:

## Jurisdiction, Venue and Basis for Relief Sought

1. This Court has jurisdiction over the Motion and this Objection under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The predicates for the relief sought include 11 U.S.C. §1125 and Rules 3017, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure.

## Background

2. On or about January 1, 1999, New Century Financial Corporation ("NCFC") executed and made available to eligible employees the New Century Deferred Compensation Plan. NCFC subsequently replaced the original Deferred Compensation Plan with the New Century Financial Corporation Deferred Compensation Plan Amended and Restated July 1, 2004 (the "Plan").

3. Amounts contributed to and/or withheld under the Plan from the participants' salaries, bonuses and commissions were placed in a trust ("Plan Assets").

As of December 31, 2006 the trust contained in excess of $43 million (and perhaps as much as $49 million) of Plan Assets.[1]

4.  The Debtors filed petitions for chapter 11 relief on April 2, 2007 (the "Petition Date") and the cases have been jointly administered by this Court.

5.  Following a May 7, 2007 hearing on the Beneficiaries' Motion for Appointment of an Additional Committee ("1102(b) Motion"), this Court ruled that the Plan Assets remain held in a segregated account (the "Segregated Account") pending further court order.

6.  On June 20, 2007, the members of the Ad Hoc Beneficiaries Committee, as Beneficiaries, initiated an adversary proceeding against the Debtors, Wells Fargo Bank N.A. as Trustee, the Compensation Committee of the Board of Directors of the New Century Financial Corporation as the Plan Administrator, and the Official Committee of Unsecured Creditors by filing a Complaint seeking, *inter alia,* declaratory and equitable relief to redress violations of ERISA with regard to the funds held in the Segregated Account (the "Adversary Proceeding"). The Beneficiaries, among other relief, seek a ruling that the Plan Assets in the Segregated Account are being held in trust for the exclusive benefit of the Beneficiaries.

7.  In addition, the Beneficiaries have alleged that—in the event that the Court finds that the Plan Assets are not held for their exclusive benefit—under the terms of the Plan and related trust agreement (the "Trust"), the Plan Assets may only be paid to the Beneficiaries and "general unsecured creditors" of NCFC, one of the so-called Holding Company Debtors as defined in the Disclosure Statement. The Beneficiaries

---

[1] By agreement of the parties, and this Court's order implementing same, the Plan Assets have been allocated to safer investment vehicles and used to pay off a Plan loan used to fund benefits. Accordingly, the current amount of the Plan Assets may be somewhat lower.

allege in the Adversary Proceeding that to the extent that the Court finds that the Plan is, in fact, a "top hat" plan exempt from ERISA's substantive provisions, the assets of the Plan are subject to the claims of creditors <u>only</u> to the extent provided by the terms of the Trust. E.g., <u>Bank of America v. Moglia</u>, 330 F.2d 942 (7th Cir. 2003) (rabbi trust assets not subject to claims of secured party and security interest did not attach to such assets) Under the terms of the Trust, if the Plan is a "top hat" plan, the Plan Assets are subject to the claims of "general unsecured creditors" <u>only of NCFC</u>, which creditors share pro rata with the Beneficiaries. <u>Id</u>. The term "general unsecured creditors" of NCFC necessarily encompasses only general unsecured creditors of NCFC, not creditors of any other Debtor or Debtor's estate, and excludes all secured creditors, including to the extent asserting deficiency claims. <u>Id</u>. The Debtors themselves have conceded before the Court at various times that the Plan Assets are to be shared only with NCFC's general unsecured creditors according to the terms of the Plan and Trust. For example, at the January 9, 2008, hearing Debtor's counsel stated that the Plan Assets were "reserved by NCFC… to be available to the unsecured creditors of NCFC…" and that the "trust assets…are for the benefit of the creditors of NCFC…" (Transcript at 68) (D.I. 4433).

8. The Debtors, Creditors Committee and Wells Fargo Bank, as trustee of the Trust, filed motions to dismiss the Adversary Proceeding and the Beneficiaries filed appropriate and timely responses to the motions to dismiss. The motions to dismiss have been briefed and oral argument has been held, and the matters set forth therein are under consideration by the Court.

9. On or about February 15, 2008, the Debtors and the Creditors Committee filed the Motion seeking approval of the Disclosure Statement despite the fact that the

Disclosure Statement was, and is, by any measure, incomplete and devoid of meaningful financial disclosure. Despite its other apparent inadequacies, the Disclosure Statement also describes a proposed Chapter 11 plan of liquidation (the "Chapter 11 Plan") which, among other faults, violates the statutory and other rights of the Beneficiaries, ignores the Adversary Proceeding and its possible outcomes, and incorporates "deemed substantive consolidation" in violation of controlling precedent in this Circuit. Since the Chapter 11 Plan is fatally flawed on its face, the Disclosure Statement should not be approved. In addition, the Motion should be denied because the Disclosure Statement fails to meet the standards for adequate disclosure under section 1125 of the Bankruptcy Code.

10. Notably, the Chapter 11 Plan provides for the consolidation of the Holding Company Debtors, including NCFC, into a "Debtor Group," and similarly consolidates the "Operating Debtors" into another "Debtor Group." (Disclosure Statement ("DS") at 5). The Disclosure Statement provides that "the Plan provides for the distribution of the net Cash available from Assets of the Debtors in each Debtor Group to the Holders of Allowed Unsecured Claims in that Debtor Group," (DS at 6), and further that "assets of the Holding Company Debtors include the assets in the irrevocable trust established in connection with NCFC's deferred compensation plan…". (DS at 6).

11. Thus, despite the fact that the Beneficiaries allege in the Adversary proceeding that the Plan Assets are held for the exclusive benefit of the Beneficiaries – an issue that remains subject to adjudication – and the Debtors concede that at worst the Plan Assets are for the benefit of NCFC's general creditors only, the Chapter 11 Plan presumes that the Plan Assets are assets of *all* the Debtors' estates, to be shared among *all* creditors however the proponents of the Chapter 11 Plan might dictate. To the extent

5

that the Beneficiaries prevail in their contention that ERISA's substantive provisions apply to the Plan and the Plan Assets are held for the exclusive benefit of the Beneficiaries, the Chapter 11 Plan violates ERISA.

12. Moreover, even if the Beneficiaries do not prevail in their primary contention that the Plan is not an exempt "top hat" plan, the Plan and Trust provide that the Beneficiaries share only with "general unsecured creditors" of NCFC, and no other Debtor. As detailed in the Disclosure Statement, however, the Chapter 11 Plan provides for the Plan Assets to fund distributions to holders of claims against all of the Holding Company Debtors in direct contravention of the terms of the Plan and Trust.

13. The description of the Adversary Proceeding in the Disclosure Statement simply fails to adequately describe the proceeding or to provide claimants with adequate information. For example, the Disclosure Statement fails to discuss the specific allegations that the Plan is not a "top hat" plan and why. In addition, the Disclosure Statement does not mention, at all, the alternative argument that the Plan and Trust limit the sharing of the proceeds to only general unsecured creditors of NCFC and no other Debtor and that the plan proponents must somehow overcome this limitation in order to use Plan Assets to fund the Chapter 11 Plan. (DS at 38-39; 128). Moreover, in describing the risks associated with the Chapter 11 Plan, the Disclosure Statement does not mention the risk that the Beneficiaries will prevail in the Adversary Proceeding and all of the Plan Assets will be excluded from the Debtors' estates. (DS at 130-31).

14. The alleged justification for combining the assets and claims of all of the Holding Company Debtors, including NCFC, is set forth on page 53 of the Disclosure Statement. The proponents of the Chapter 11 Plan simply say that "…ownership of some

assets of NCFC and TRS Holding is difficult to ascertain in light of the transactions in 2004 pursuant to which NCFC became a publicly traded REIT ...." The proponents elaborate to a degree at pages 57 and 58 of the Disclosure Statement: "... certain assets of NCFC and TRS Holdings are difficult to allocate between them, thus arguing for similar treatment of Unsecured Claims against those Debtors. The equality of treatment of the Holding Company Debtors is also based on the fact that although it has fewer assets than NCFC, TRS Holdings also has a lower amount of Claims against it than does NCFC. Additionally, the remaining Holding Company Debtors ... have minimal assets and, other than claims under the Master Repurchase Agreements against NC Credit, have few Claims against them."

15. Regardless of whether these minimal justifications are true as to the other assets of other Holding Company Debtors, it is not "difficult to ascertain" what the Plan Assets are nor what is to happen to them. The Plan Assets are held in a trust more or less *in custodia legis,* and are either for the exclusive benefit of the Beneficiaries or are to be shared only with "general unsecured creditors" of NCFC. There is no confusion on this score.

16. The Chapter 11 Plan also classifies the claims of Beneficiaries – in the event that the Plan Assets are not held for their exclusive benefit – with the unsecured claims held by other creditors of all of the other Holding Company Debtors, despite the fact that the Beneficiaries have legal rights (under the Plan and Trust) not held by such other claimants. (DS at 73-75).

17. In addition to its proposed invasion of the Plan Assets by other unsecured creditors of other Holding Company Debtors, the Chapter 11 Plan also provides that the

7

Plan Assets would be used to pay administrative, priority and secured claims against the Holding Company Debtors, again in direct violation of either ERISA or the language of the Plan and Trust. (E.g., DS at 108).

18. In addition, as briefly noted above, the Disclosure Statement has only blanks where material financial and distribution information would normally be contained. The Disclosure Statement contains no discussion of likely recoveries under the Chapter 11 Plan, nor under any alternative distribution method not incorporating substantive consolidation or deemed substantive consolidation. Moreover, the discussion of a chapter 7 case alternative is, at best, perfunctory and fails to account for the fact that in a chapter 7 case the deemed consolidation would not occur.

## LEGAL ARGUMENT

**I.     Standard to Approve the Disclosure Statement.**

19. Pursuant to the provisions of § 1125(b) of the Code, a debtor may not solicit acceptance or rejection of a plan of reorganization "from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the Court as containing adequate information." 11 U.S.C. § 1125(b).

20. The term "adequate information" is defined in §1125(a) of the Code as follows:

> "adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of

02/27/08/SL1 798758v1/102440.00001

>claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan, and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; ..."

11 U.S.C. § 1125(a)(1); *see also* In re Phoenix Petroleum Co., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001).

21.  The court has an independent obligation to determine whether a disclosure statement includes adequate information within the meaning of the Bankruptcy Code. 11 U.S.C. § 1125(b). *See* In re Eastern Maine Electric Coop., Inc., 125 B.R. 329, 333 (Bankr. D. Me. 1991); In re Cardinal Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990). The process necessarily entails two stages of analysis. In re Eastern Maine Electric Coop., 125 B.R. at 333. "If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible', the court should exercise its discretion to refuse to consider the adequacy of disclosures." In re Phoenix Petroleum Co., 278 B.R. at 394, *citing* In re Eastern Maine Electric Coop., 125 B.R. at 333; *see also* In re Curtis Center Limited Partnership, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) (disclosure statement should be disapproved where the plan it describes is patently unconfirmable); Congregate I, 121 B.R. at 764 (disapproval of the disclosure statement appropriate where it describes a plan that is so fatally flawed that confirmation is impossible); In re Dakota Rail, Inc., 104 B.R. 138, 143 (Bankr. D. Minn. 1989); In re Monroe Well Service, Inc., 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (appropriate to disapprove a disclosure statement when the plan could not possibly be confirmed); In re Pecht, 57 B.R. 137, 139

(Bankr. E.D. Va. 1986) (incumbent upon court to disapprove disclosure statement if plan cannot be confirmed).

22. Such an exercise of discretion is warranted because the burden and expense of vote solicitation and plan distribution is unwise and inappropriate if the proposed plan could never legally be confirmed. *See* In re Phoenix Petroleum Co., 278 B.R. at 394; In re Eastern Maine Electric Coop., 125 B.R. at 333; Congregate I, 121 B.R. at 763-64; In re Dakota Rail, Inc., 104 B.R. at 143; In re Monroe Well Service, Inc., 80 B.R. at 333; In re Pecht, 57 B.R. at 139. Where the plan's inadequacies are patent, they may, and should, be addressed at the disclosure statement stage. In re Unichem Corp., 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987). "Allowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation." In re Dakota Rail, Inc., 104 B.R. at 143. *See* In re Pecht, 57 B.R. at 139. Accordingly, the disclosure statement should be disapproved at the threshold where the plan it describes displays fatal facial deficiencies or the stark absence of good faith. In re Eastern Maine Electric Coop., 125 B.R. at 333; *see* In re Dakota Rail, Inc., 104 B.R. at 143; In re Unichem Corp., 72 B.R. at 98.

23. If the plan proponent meets the first stage of the analysis, the disclosure statement's adequacy must then be evaluated in light of the facts unique to the case. In re Eastern Maine Electric Coop., 125 B.R. at 333; In re Cardinal Congregate I, 121 B.R. at 765. The Debtor's particular circumstances must be taken into account. In re Eastern Maine Electric Coop., 125 B.R. at 333; In re Microwave Products of America, Inc., 100 B.R. 376, 377 (Bankr. W. D. Tenn. 1989); In re Stanley Hotel, Inc., 13 B.R. 926 (Bankr. D. Colo. 1981); *see also* In re Metrocraft Pub. Services, Inc., 39 B.R. 567, 568 (Bankr.

N.D. Ga. 1984) (setting forth nineteen salient factors). The decisional law sets forth numerous necessary components of a disclosure statement; however, at bottom, a disclosure statement must inform creditors <u>what</u> they will receive, <u>when</u> they will receive it, and all contingencies associated with the plan. See, <u>In re Feretti</u>, 1286 B.R. 16 (Bankr. D. N.H. 1991).

## II. The Joint Plan Described by the Disclosure Statement is Patently Unconfirmable.

24. The Chapter 11 Plan described in the Disclosure Statement is fatally flawed and cannot be confirmed. First and foremost, the creation of the "Debtor Groups" and the consolidation of the assets of and claims against each Debtor Group for purposes of voting and distribution is nothing more than "deemed substantive consolidation" of the type recently outlawed by the Third Circuit. <u>In re Owens Corning</u>, 419 F.3d 195, 216 (3d. Cir. 2005), *cert denied* <u>McMonagle v. Credit Suisse First Boston</u>, 547 U.S. 1123 (2006) *and* <u>Official Committee Representing Bondholders and Trade Creditors of Debtors Owens Corning v. Credit Suisse First Boston</u>, 547 U.S. 1123 (2006).[2] The formation of the group consisting of the "Holding Company Debtors" suffices only to strip from the Beneficiaries the rights granted to them under ERISA and/or the language of the Plan and Trust in order to pay other creditors in contravention of those vested rights, but with no benefit to the Beneficiaries. <u>Id.</u>

25. To the extent that the Chapter 11 Plan attempts to achieve <u>actual</u> substantive consolidation of the Holding Company Debtors, the proponents of the

---

[2] As the Third Circuit has held, substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased). The result is that claims of separate debtors morph to claims against the consolidated survivor." <u>Genesis Health Ventures. Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)</u>, 402 F. 3d 416, 427 (3d Cir 2005); *see also*, <u>Owens Corning</u>, 419 F. 3d at 205. This is the precise effect of the use of the Debtor Groups, including the Holding Company Debtors Group, under the Chapter 11 Plan.

11

Chapter 11 Plan cannot begin to meet the test set forth in Owens Corning. None of the purported excuses for the consolidation of the Holding Company Debtors under the Chapter 11 Plan, either alone or in combination, suffices to overcome that precedent. Id. at 210-212. The Debtors have not, and cannot, allege that, as to the Debtors, "(i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) post petition their assets are so scrambled that separating them is prohibitive and hurts all creditors. Id. at 211(emphasis supplied). As the Third Circuit noted, " [m]ere benefit to the administration of the case (for example, allowing a court to simplify a case by avoiding other issues or to make post petition accounting more convenient) is hardly a harm calling substantive consolidation into play." Id. As to the Plan Assets in particular, there is no issue as to their intended use either in the event that ERISA's substantive provisions apply or if they do not and the language of the Plan and Trust govern. Accordingly, the Chapter 11 Plan fails under sections 1129(a)(1) and 1129(a)(3) of the Code.

26. In the event the Beneficiaries prevail in the Adversary Proceeding, the Plan Assets are held for their exclusive benefit and any attempt to use the Plan Assets for any other purpose under the Chapter 11 Plan would violate ERISA. Under those circumstances, the Chapter 11 Plan would fail under section 1129(a)(3) of the Code.

27. In any event, under the terms of the Plan and Trust, the Beneficiaries only share with "general unsecured creditors" of NCFC and no other Debtor. To the extent that the Chapter 11 Plan contravenes the language of the Plan and Trust, it also must fail under sections 1129(a)(1) and (a)(3) of the Code.

28. The Chapter 11 Plan also improperly classifies the claims of the Beneficiaries with the claims of unsecured creditors of all Holding Company Debtors, despite the rights conferred by ERISA and/or the Plan and Trust, in violation of section 1122 of the Code; accordingly the Chapter 11 Plan fails under section 1129(a)(1) of the Code.

29. Moreover, to the extent the Beneficiaries are placed in a class with such other creditors, the Chapter 11 Plan provides for disparate treatment of the Beneficiaries, who would be forced to relinquish valuable rights under either ERISA or the Plan and Trust. In re AOV Indus., Inc. 792 F. 2d 1140, 1152 (D.C. Cir. 1986). The Chapter 11 Plan also necessarily fails under section 1129(a)(7) of the Code as to the Beneficiaries because under chapter 7, the Beneficiaries would not share the Plan Assets with creditors of Debtors other then NCFC and would still share in the litigation and other proceeds.

30. Accordingly, the Disclosure Statement describes a chapter 11 plan that is fatally flawed and cannot be confirmed, and the Court should withhold approval of the Disclosure Statement under the authorities noted above.

**III. The Disclosure Statement Also Fails to Provide Adequate Information.**

31. In addition, the Disclosure Statement fails to provide adequate information as required under section 1125. Key financial information is simply absent. The discussion of risks is materially incomplete, for the reasons noted above. Among other things, the Disclosure Statement must provide a meaningful disclosure of the range of possible recoveries under the Chapter 11 Plan; the timing of possible recoveries, and all material contingencies. The Disclosure Statement is devoid of any analysis comparing the benefits to the creditors of each Debtor Group of <u>not</u> consolidating the Debtors into

13

"Debtor Groups" to the alleged benefits of the Chapter 11 Plan. As to the Beneficiaries, the Disclosure Statement is devoid of any statements to the obvious effect that they would be far better off by prevailing in any aspect of the Adversary Proceeding than receiving the treatment provided by the Plan, a treatment they will receive even if they lose every aspect of the Adversary Proceeding.

*[The remainder of this page left blank intentionally]*

## Conclusion

WHEREFORE, the Beneficiaries respectfully request this Court to enter an Order denying the Motion, denying approval of the Disclosure Statement and denying the related relief sought by the Motion.

Dated: February 27, 2008

STEVENS & LEE, P.C

/s/ Joseph H. Huston, Jr.
JOSEPH H. HUSTON, JR. (NO. 4035)
1105 NORTH MARKET STREET
7TH FLOOR
WILMINGTON, DE 19801
TELEPHONE: (302)425-3310
TELECOPIER: (610) 371-7972
*jhh@stevenslee.com*

- and -

**BERNSTEIN, SHUR, SAWYER & NELSON**

ROBERT J. KEACH
MICHAEL A. FAGONE
100 MIDDLE STREET
P.O. BOX 9729
PORTLAND, ME 04104-5029
TELEPHONE: (207) 774-1200
TELECOPIER: (207) 774-1127
*rkeach@bernsteinshur.com*
*mfagone@bernsteinshur.com*