IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEW CENTURY TRS HOLDINGS, INC., | ) | Case No. 07-10416 (KJC) |
| et al.[1], | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Ref.: D.I. No. 4804 |

**OBJECTIONS OF CITIMORTGAGE, INC. TO
DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN
OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS DATED AS OF
FEBRUARY 2, 2008**

CitiMortgage, Inc. (or, "CMI"), by its undersigned counsel, respectfully submits its objections to the proposed "Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of February 2, 2008" [Dkt. No. 4804], pursuant to 11 U.S.C. § 1125, and Bankruptcy Rules 2002(b), 3017 and 9014.

Under the Debtors' proposed classification scheme, CMI believes it is the holder of impaired claims falling within Classes OP3b, OP3c, OP6b and OP6c.

---

[1] ₁ The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

1707042/1

A.  **Debtors Have Not Supplied The Figures Necessary To Provide Adequate Information About Their Proposed Liquidation**

The proposed Disclosure Statement provides no figures from which creditors can assess the relative merits of continuing in Chapter 11 or converting to Chapter 7. Debtors admit they propose a liquidating plan, and acknowledge they "have now completed the liquidation of most of their assets" and "have substantially completed the downsizing and consolidation of their operations." [Mot. for Order Apprv'g Discl. Stmt. [Dkt. No. 4897] ¶ 4]. These admitted facts merely highlight the need for an informed consideration of liquidation alternatives. The Disclosure Statement's liquidation analysis merely contains Debtors' cursory conclusions.

What is missing from these materials are the numbers with which creditors can estimate of the size of any projected recovery, and the likely or projected costs of obtaining that recovery. [Disclosure Statement [Dkt. No. 4804] at 10]. The Debtors have not provided:

(a) a summary / projection of dollars available for distribution;

(b) any valuation of the remaining assets (those they have not yet liquidated);

(c) a compilation of administrative expenses incurred to date;

(d) projections of future administrative expenses to be incurred; and

(e) projections of expenses for the post-confirmation liquidating trust.

The liquidation analysis [Disclosure Statement [Dkt. No. 4804] at 138-39] does not provide any competing figures for proceeding under Chapter 11 vs. Chapter 7; only generalities. In order to provide the required adequate information, a disclosure

statement must contain a liquidation analysis. *See In re Zenith Electronics Corp.*, 241 B.R. 92, 99 (D. Del. 1999).

As the Third Circuit directs:

> Under 11 U.S.C. § 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing "adequate information" to "enable a creditor to make 'an informed judgment' about the Plan." 11 U.S.C. § 1125(a)(1). . . .
>
> "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." Therefore, "preparing and filing a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor." It has been called by one commentator, "the pivotal concept in reorganization of a Chapter 11 debtor."
>
> The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information.

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 321-22 (3d Cir. 2003) (internal citations to *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416, 417 (3d Cir. 1988) omitted).

While Debtors stated they intend to provide financial information and information related to the estimated recoveries of Creditors no later than seven (7) days before the Disclosure Statement Hearing [Mot. for Order Apprv'g Discl. Stmt. [Dkt. No. 4897] ¶ 15 & n.4], interested parties' objections to the proposed Disclosure Statement are due February 27 and the hearing on the adequacy of the proposed Disclosure Statement is set for March 5. Based on the commitment made by the Debtors' commitment in their papers, interested parties would receive that additional information no earlier than Monday, February 25, 2008. Given the fact that the deadline to submit objections to the proposed disclosure statement is February 27, 2008 (at 4 p.m. (EST)), even if Debtors

had furnished this information before the objections deadline, it would not provide interested parties adequate time to review any such new information. However, to CMI's knowledge, even as of the filing of these objections, no such additional information has yet been furnished.

Because this information is uniquely within Debtors' knowledge (and perhaps that of the Committee), this is not a situation in which CMI has the ability or in which it would be appropriate for CMI to suggest language to be inserted in the proposed Disclosure Statement to resolve its objections.

B. **Debtors Improperly Seek To Limit Voting Based On An Informal Questionnaire They Submitted To Claimants**

The Debtors propose to allow temporarily each Claim in Classes OP3b and OP6b, solely for the purposes of voting to accept or reject the Plan, either: (a) in an amount equal to the damages Debtors determine by the "EPD/Breach Claims Protocol" *provided* the Holder of a Claim has supplied the information Debtors requested in certain questionnaires transmitted to creditors "on or about January 23, 2008;" or, failing the Holder of a Claim supplying that information, (b) in the amount of $1.00. [Mot. for Order Apprv'g Discl. Stmt. [Dkt. No. 4897] ¶ 23(b) & Exh. G (proposed Order) ¶ 5(b)].

That "questionnaire" is something Debtors devised and sent without this Court's approval. (A sample is attached as <u>Exhibit A</u> hereto). While Debtors presented that questionnaire as an exercise in which they were asking creditors to participate, Debtors now state that it will operate to limit claims: "In order to establish the validity of the EPD/FPD Claim and to apply the grid, each EPD/FPD claimant must provide to the Debtors information set forth in [sic] questionnaire for loans on which it asserts an EPD/FPD claim [sic]." [Mot. for Order Apprv'g Discl. Stmt. [Dkt. No. 4897] Exh. F

4

at 2]. That questionnaire unilaterally asked creditors to provide detailed information, on spreadsheet(s) and in formats Debtors devised, by no later than February 8, 2008.

Everything about those questionnaires was and is unreasonable. (And, even if one were to assume solely for the sake of the argument – and contrary to the true facts – that this information was readily available or could be readily culled from CMI's business records, the request proposed an artificial and unworkable deadline.)

The proper presentation of these EPD/FPD Claims is important because, if for no other reason, Debtors propose to have these claims "take precedence over breach claims." [Mtn. for Order Apprv'g Discl. Stmt. [Dkt. No. 4897] Exh. F at 4].

Debtors' concept that they can shift to their creditors all of the burden of compiling information, and that the creditors must provide that information in the manner and formats in which Debtors have unilaterally determined they would like the data, is also unreasonable. CMI has already provided the bulk of the information Debtors would need to assess its claims (and compare its claims to Debtors' business records), and has attached the bulk of that information to its proofs of claim (agreeing to make the more voluminous materials available on reasonable request, which request Debtors have not made). CMI's properly filed proofs of claim constitute prima facie evidence of the validity and amounts of its claims. Bankruptcy Rule 3001(f).

Lastly, if the parties were to proceed in a contested matter on any objection(s) to CMI's proofs of claim that Debtors might assert, CMI would prove up its claims by providing Debtors access to the correspondent agreements and various loan files from which they could ascertain the same information at substantially the same burden as it would otherwise take CMI to provide that information – all in accordance with

Bankruptcy Rules 9014(c) and 7033 (both of which rules incorporate by reference the provisions of Fed. R. Civ. P. 33(d) for the purposes of any such contested matter).

Debtors' efforts to penalize creditors who did not respond precisely as Debtors wished are contrary to Debtors' statements to the same creditors, which Debtors made accompanying their transmittal of the proposed questionnaires. There, Debtors said: (1) they were attempting to implement a cooperative process, in which they proposed to assist their creditors in gathering information; and (2) by providing this information, creditors did not waive any of their rights and remedies, including, but not limited to, rights to object to the manner in which the debtors may calculate its claims or to the proposed plan of reorganization (whether as it currently exists, or as the debtors may supplement or amend it). Now contrary to both of those concepts, Debtors propose to use the questionnaires as a mechanism effectively to disenfranchise creditors.[2]

## C. Debtors Have Not Provided The Information Underlying Their Proposed Reductions To EPD/FPD Claims

Also with regard to the EPD/FPD claims, Debtors advise that, "working with major loan purchasers who dealt with the Debtors," they determined the EPD/Breach Claim Protocol by analyzing "data collected by the Debtors, these participants in the secondary markets and industry data." [Disclosure Statement [Dkt. No. 4804] at 62]. Debtors do not, however, provide any specific information identifying this data nor do they provide the data itself. As a result, affected claimants cannot fairly assess the reasonableness of the proposed protocol.

---

[2] Because 11 U.S.C. § 1126(c) calculates whether a class of claims accepts and rejects a proposed plan by looking to whether two-thirds in amount and one-half in number of the holders of allowed claims have voted in one way, the effect of arbitrarily assigning claims a value of $1.00 to a holder's claim is to take away any practical vote.

6

1707042/1

D.  **Debtors Proposed Disclosure Statement Contains Improper And One-Sided Arguments Concerning The Business It Conducted With Claimants**

In advising of the various "factors" that might affect and/or cause the loss when looking at it on a loan-by-loan basis, Debtors focus only on external factors and ignore the numerous factors for which they are responsible. [Disclosure Statement [Dkt. No. 4804] at 62]. Accordingly, the fifth sentence of the last full paragraph of subsection IV.A.3(d) on page 62 (beginning "If such matters . . ."), should read after the last comma: "how the claimant dealt with the loan, the various customer, originator or Debtors' breaches of representations and warranties that may have caused the default, and any number of other factors."

The Debtors editorialize and speculate about the structure of the Master Repurchase Agreements professing to state the counterparties' intentions. [Disclosure Statement [Dkt. No. 4804] at 20]. At the very least, these types of debtor contentions need to be presented as such; and not as if they were fact. Accordingly, the second sentence of the first paragraph of subsection III.A.2, should begin: "The Debtors believe the Master Repurchase Agreements were structured . . . ." For the same reasons, Debtors need to change the first full paragraph on page 22 of that same subsection to read: "As noted above, the Debtors believe the Repurchase Counterparties . . . ."

E.  **Debtors Cannot Properly Obtain Approval Of As-Of-Yet Unfiled Amendments**

Debtors ask this Court to approve the proposed Disclosure Statement, but define the term "Disclosure Statement" to include the document as filed [Dkt. No. 4804] and "as it may be amended." [Mot. for Order Apprv'g Discl. Stmt. [Dkt. No. 4897] at 1 & Exh. G (proposed Order) finding (f) and ¶ 2]. The Court can only approve the disclosure

statement that is currently before it, and cannot provide some form of blanket pre-approval of future, unidentified amendments.

To allow otherwise would vitiate the "notice and hearing" requirements for which 11 U.S.C. §§ 102(1) and 1125(b) provide. *See generally In re Phoenix Petroleum Co.*, 278 B.R. 385, 406-07 (E.D. Pa. 2001) (a disclosure statement may only be approved after notice and a hearing). Accordingly, if this Disclosure Statement is approved, the Court should revise the form of order approving it to read: "as it may be amended with the approval and direction of this Court."

WHEREFORE, for the foregoing reasons, the Disclosure Statement is materially flawed, and accordingly, approval of the Disclosure Statement should be denied.

Dated: February 27, 2008              **MORRIS JAMES LLP**

                                      _____
                                      Brett D. Fallon (DE Bar No. 2480)
                                      Douglas N. Candeub (DE Bar No. 4211)
                                      500 Delaware Avenue, Suite 1500
                                      P.O. Box 2306
                                      Wilmington, Delaware 19899-2306
                                      Telephone: (302)888-6888
                                      Facsimile: (302) 571-1750
                                      Email: bfallon@morrisjames.com
                                             dcandeub@morrisjames.com

                                      -and-

1707042/1

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400S
Denver, Colorado  80202-5424
Telephone:  (303) 626-7139
Facsimile:   (303) 626-7101
Email:  apetrie@featherstonelaw.com

*Attorneys for CitiMortgage, Inc.*