## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC., a** | : | **Case No. 07-10416 (KJC)** |
| **Delaware corporation, et al.,**[1] | : | |
| | : | **Re: Docket No. 4804 & 4897** |
| **Debtors.** | : | |
| | : | **Objection Deadline: 2/27/08 at 4:00 p.m.** |
| | : | **Hearing Date: 3/05/07 at 1:30 p.m.** |

**OBJECTION OF WELLS FARGO BANK N.A. TO (I) THE DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF FEBRUARY 2, 2008; AND (II) THE MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER (A) APPROVING PROPOSED DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF FEBRUARY 2, 2008; (B) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PROPOSED JOINT CHAPTER 11 PLAN OF LIQUIDATION AND (C) SCHEDULING A HEARING ON CONFIRMATION OF PROPOSED JOINT CHAPTER 11 PLAN OF LIQUIDATION AND APPROVING RELATED NOTICE PROCEDURES**

Wells Fargo Bank N.A., as trustee, paying agent, registrar, and transfer agent in connection with certain mortgage loan securitization trusts ("*Wells Fargo*"), by counsel, submits the following as its objection (the "*Objection*") to (i) the Disclosure Statement for the Joint

---

[1]     The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [D.I. 4804] (the "*Disclosure Statement*"); and (ii) the Motion of Debtors and Debtors in Possession for an Order (A) Approving Proposed Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008; (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Liquidation and (C) Scheduling a Hearing on Confirmation of Proposed Joint Chapter 11 Plan of Liquidation and Approving Related Notices Procedures [D.I. 4897] (the "*Motion*"):

### Preliminary Statement

1.      Wells Fargo requests that the Court decline to approve the Disclosure Statement because it does not provide "adequate information," as required by 11 U.S.C. § 1125, regarding the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [D.I. 4805] (the "*Plan*").  Specifically, the Disclosure Statement fails to provide adequate information regarding (i) the treatment of Breach Claims (as defined below), and (ii) the total amount of, and potential distributions on, unsecured claims, including EPD/Breach Claims (as defined below).   Without this critical information, the Disclosure Statement does not provide information sufficient for unsecured creditors, such as Wells Fargo, to analyze the merits of voting in favor or against of the Plan.

2.      In addition, Wells Fargo requests that the Court deny the Motion because the proposed tabulation procedures for voting on the Plan inequitably prejudice holders of EPD/Breach Claims by (i) failing to establish identified deadlines for providing information to the Debtors regarding EPD/Breach Claims, (ii) granting the Debtors unilateral authority to determine if the information provided is adequate, and (iii) providing inadequate time to file motions to estimate the amount of EPD/Breach Claims for voting purposes or otherwise

2

establishing a procedure to challenge the Debtors' estimated EPD/Breach Claim for voting purposes.

## General Background

3.      On April 2, 2007 (the "*Petition Date*"), the captioned debtors (collectively, the "*Debtors*"), other than New Century Warehouse Corporation ("*Access Lending*"), filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "*Bankruptcy Code*").  On August 3, 2007, Access Lending filed its chapter 11 petition.

4.      On February 2, 2008, the Debtors filed the Disclosure Statement and the Plan.

5.      On February 22, 2008, the Debtors filed the Motion.  In the Motion, the Debtors request approval of the Disclosure Statement, approval of procedures for tabulating votes on the Plan, and related relief.

## EPD/Breach Claims

6.      Trustees of mortgage loan securitization trusts, including Wells Fargo, have asserted numerous, substantial claims against the Debtors.  These claims arise from the operative documents of mortgage loan securitization trusts and include, without limitation, (i) claims for breaches of representations or warranties made by one or more of the Debtors ("*Breach Claims*"); and (ii) claims arising in connection with the right to require one or more of the Debtors to repurchase mortgage loans based on certain payment defaults by the obligors of the mortgage loans ("*EPD Claims*"; together with Breach Claims, "*EPD/Breach Claims*").

7.      The Plan separates EPD/Breach Claims from other classes of unsecured claims. Class OP3b consists of EPD/Breach Claims against New Century Mortgage Corporation.  Plan, Art. 4, H., 2.  Class OP6b consists of EPD/Breach Claims against NC Capital Corporation.  *Id.* Art. 4, I., 2.

A.      **The EPD/Breach Claim Protocol**

8.      The Debtors propose to use a protocol to determine the allowed amount of EPD/Breach Claims (the "*EPD/Breach Claim Protocol*").  Disclosure Statement, I., A., 2., at 8; IV., A., 3., d., at 62-64.  The Debtors attached an initial version of the EPD/Breach Claim Protocol to the Plan as Exhibit B, and a revised version to the Motion.

9.      Under the EPD/Breach Claim Protocol, the Debtors generally propose to determine the allowed amount of EPD Claims based on the payment history of the relevant mortgage loans, and to determine the allowed amount of Breach Claims based on the origination date of the mortgage loans in each pool.  Specifically, with respect to Breach Claims, the EPD/Breach Claim Protocol provides:

> The damages resulting from breach Claims will be calculated on the simplifying assumptions that: (i) 1.5% of the loans in any pool will at some point be subject to a breach that would have caused the selling Debtor to have repurchased the loan, (ii) the "seasoning" of loans will be taken into account so that this 1.5% incidence is spread over the life of the pool based on the Debtors' historic data concerning the timing of when breach claims are asserted, and (iii) damages resulting from breaches will be set at 30% of the [unpaid principal balance or "UPB"] of the loan as of August 31, 2007. …

> Damages for purposes of distributions under the Plan, will be measured by applying the percentage factor in the final column of this table against the August 31, 2007 UPB of the loans purchased from a Debtor; provided, however, that in no case will the damage calculation for any pool be less than $5,000.

EPD/Breach Claim Protocol, at 3-4.

10.      Neither the Disclosure Statement description of the EPD/Breach Protocol nor the Motion or protocol itself provide any information about the data that the Debtors used to arrive at the percentages identified in the EPD/Breach Protocol or to justify the percentage differences attributable to the "seasoning" of loans. *See id*; Disclosure Statement, I., A., 2., at 8; IV., A., 3., d., at 62-64.  Moreover, while the Breach Claim calculation formula purportedly is based on historical pool-level data seasoned over time, the formula *arbitrarily* eliminates mortgage loans

4

in such pools to the extent they were not part of the mortgage loan pool as of August 31, 2007.

Thus, unlike the EPD Claim calculation formula, there is no mechanism to include mortgage

loans that no longer are part of the pool as of August 31, 2007 due to foreclosure, liquidation of

related real estate owned ("_REO_") mortgage loans, payment in full or otherwise (collectively, the

"_Liquidated Loans_").

### B.    The Tabulation Procedures

11.    In the Motion, the Debtors seek to establish procedures for tabulating the votes on

the Plan (the "_Tabulation Procedures_").  With respect to holders of EPD/Breach Claims, the

Tabulation Procedures provide:

> Claims in Classes OP3b and OP6b will be temporarily allowed for voting
> purposes in an amount equal to the damages determined by the EPD/Breach
> Protocol, a draft of which is attached as Exhibit F hereto and a previous version of
> which was attached as Exhibit B to the Plan as filed on February 2, 2008; in order
> to determine this damage amount, a Holder of a Claim in these Classes, must
> supply the information requested by the Debtors in questionnaires that the
> Debtors transmitted to Creditors in these Classes on or about January 23, 2008; if
> a Holder of such a Claim fails to provide the Debtors with the requested
> information so that the Debtors are unable to determine the amount of damages
> that would be calculated pursuant to the EPD/Breach Protocol, the Claim will be
> temporarily allowed for voting purposes only in the amount of $1.00.

Motion, ¶ 23, b.

12.    To that end, the Debtors circulated questionnaires to holders of EPD/Breach

Claims.  The questionnaires request information that the Debtors assert is necessary to calculate

the allowed amount of EPD/Breach Claims using the EPD/Breach Claim Protocol.  The

Disclosure Statement provides:

> The vast majority of claimants have embraced this process and have returned the
> questionnaires.  The Debtors have communicated the results for a claimant to
> each of the claimants that has participated in this process and have used the data
> to estimate that aggregate determination for Class OP3b EPD/Breach Claims
> against NCMC will equal $[___] and that determination for Class OP6b against NC
> Capital will equal $[___].

Disclosure Statement, IV., A., 3., d., at 64.

13.    The first sentence of this quotation reflects the Debtors' expectation that the majority of holders of EPD/Breach Claims would have completed the questionnaires by the hearing scheduled to be held on the Disclosure Statement on March 5, 2008 (the "*Hearing*"). This has not happened.  Instead, upon information and belief, numerous claimants, including Wells Fargo, holding EPD/Breach Claims with respect to hundreds of pools of mortgage loans have not responded to the questionnaires because they have not yet been able to compile the requested information despite a good faith effort to do so.  As a result, it appears that the Debtors currently do not have sufficient information to perform the calculations under the EPD/Breach Protocol to determine the aggregate amount of EPD/Breach Claims in Class OP3b or Class OP6b.

14.    Moreover, the Motion and the Disclosure Statement contain no identified deadline by which holders of EPD/Breach Claims must supply the requested information to the Debtors. Instead, the Tabulation Procedures set an unknown, amorphous deadline that the Debtors may determine at their sole discretion.

15.    In addition, the Tabulation Procedures impose no requirements whatsoever on the Debtors' ability to decide whether the information provided is sufficient for the Debtors to perform the calculations.  Thus, the Tabulation Procedures provide the Debtors with the unilateral authority to determine whether EPD/Breach Claims will be allowed for voting purposes initially only in the amount of $1.00.

16.    Further, the Tabulation Procedures provide inadequate time to file motions to estimate the amount of EPD/Breach Claims for voting purposes or otherwise establish a procedure to challenge the Debtors' estimated EPD/Breach Claim for voting purposes.  Under

the Tabulation Procedures, holders of EPD/Breach Claims would not know whether their claims

are allowed for voting purposes initially only in the amount of $1.00 until they receive ballots to

vote on the Plan. If holders of EPD/Breach Claims disagree with the $1.00 voting amount, they

would be required to file a motion to estimate their claims for voting purposes by March 27,

2008, which is only ten (10) calendar days after March 17, 2008, the date on which the Debtors

intend to mail ballots to vote on the Plan. *See Motion*, ¶¶ 20, 24.

## Objection

### A.    The Disclosure Statement Does Not Provide Adequate Information

17.    Wells Fargo objects to the Disclosure Statement and the Motion because it fails to

provide adequate information regarding the Plan, the treatment of holders of EPD/Breach Claims

and the liquidation of the Debtors' assets and liabilities.

18.    Bankruptcy Code section 1125(b) authorizes a debtor to solicit approval from

creditors for a proposed chapter 11 plan if "a written disclosure statement approved, after notice

and a hearing by the court as containing adequate information" accompanies the proposed plan.

11 U.S.C. § 1125(b). "Adequate information" is defined in section 1125(a) as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to make an
> informed judgment about the plan, but adequate information need not include
> such information about any other possible or proposed plan and in determining
> whether a disclosure statement provides adequate information, the court shall
> consider the complexity of the case, the benefit of additional information to
> creditors and other parties in interest, and the cost of providing additional
> information.

*Id.* The purpose of section 1125 of the Bankruptcy Code is to guarantee that a minimum amount of information be given to creditors who are being asked to vote on the plan. *See Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3rd Cir. 1988).

19.     Categories of information to be considered for inclusion in a disclosure statement include: (1) a complete description of the available assets and their value; (2) the anticipated future of the debtor, with accompanying financial projections; (3) information regarding claims against the estate, including those allowed, disputed and estimated; (4) a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7; (5) the accounting and valuation methods used to produce the financial information in the disclosure statements; (6) any financial information, valuations, or projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (7) information relevant to the risks being taken by the creditors and interest holders; and (8) the tax consequences of the plan. *See In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997); *see also, Onieda Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3rd Cir. 1988) (debtor has an "express obligation of candid disclosure . . . . The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court."); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corporation*, 337 F.3d 314, 321-322 (3rd Cir. 2003) ("Debtor must . . . identify and disclose all 'property of the estate' including all . . . 'legal and equitable interests.'"); *but see, In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) ("In considering adequacy of disclosure, it is important to keep in mind the audience" and information "publicly available elsewhere.").

20.     The Disclosure Statement fails to provide adequate information regarding (i) the treatment of Breach Claims; and (ii) the total amount of, and potential distributions on,

8

unsecured claims, including EPD/Breach Claims. Without this critical information, the Disclosure Statement does not provide adequate information for unsecured creditors to decide whether to vote in favor of the Plan.

### i.  The Treatment of Breach Claims

21.  The Disclosure Statement and the EPD/Breach Protocol fail to provide information about whether the historic data the Debtors used to arrive at the various percentages that would determine the allowed amount of Breach Claims was based on *all* of the mortgage loans that originally were in the mortgage loan pools, including mortgage loans that were refinanced or paid in full. If the historic data the Debtors used was based on *all* of the mortgage loans that originally were in the mortgage loan pools, including the Liquidated Loans, then the EPD/Breach Protocol also should use the UPB of all of the of the mortgage loans that originally were in the mortgage loan pools. Specifically, the EPD/Breach Protocol should calculate Breach Claims by using the August 31, 2007 UPB for mortgage loans still in the pools as of that date, together with the UPB for Liquidated Loans immediately prior to or as of the last date such mortgage loans were in the pools.

22.  Because the historic data the Debtors appear to have used to arrive at the percentages for allowed Breach Claims included Liquidated Loans, but the calculations under the EPD/Breach Claim Protocol exclude such mortgage loans, the holders of Breach Claims are inappropriately penalized. The information used to calculate the allowed amount of Breach Claims must be based on the information used to generate the percentages, or the percentages will not reflect the Debtors' historic data. This is vitally important to holders of Breach Claims. The amount of UPB that will be used in the calculations, and thus the allowed amount of Breach Claims under the EPD/Breach Claim Protocol, will be substantially smaller if Liquidated Loans

are not included.  If the historic data the Debtors used to arrive at the percentages included Liquidated Loans, there is no justification for arbitrarily decreasing the allowed amount of Breach Claims by excluding such mortgage loans from the calculations.

### ii.    Unsecured Claim Amounts and Distributions

23.    The Disclosure Statement is wholly bereft of information regarding the total value of the Debtors' assets, the total amount of unsecured claims, or potential distributions to holders of unsecured claims.  *See* Disclosure Statement.  The Debtors acknowledge this fundamental deficiency and represent that they will provide the information by the deadline for objections to the Disclosure Statement, seven (7) days prior to the hearing on the Disclosure Statement. Disclosure Statement, at 9, n.4 ("This draft Disclosure Statement omits certain information, including financial information and information related to the estimated recoveries of Creditors under the terms of the plan and the assumptions underlying the Plan.  The Debtors will amend this Disclosure Statement to include such information no later than seven (7) days prior to the hearing on the Disclosure Statement").  Wells Fargo reserves the right to object to any amended Disclosure Statement, including without limitation, the extent of inadequate information included in any amended Disclosure Statement.

24.    Even if the Debtors amend the Disclosure Statement, however, it does not appear that as of the Hearing the Debtors will have sufficient information to include in the Disclosure Statement.  Upon information and belief, claimants holding EPD/Breach Claims with respect to hundreds of mortgage loan pools have not responded to the questionnaires.  Consequently, it appears that the Debtors will not have sufficient information to perform the calculations under the EPD/Breach Protocol to determine, or even accurately estimate, the aggregate amount of

EPD/Breach Claims.  Without the aggregate amount of EPD/Breach Claims, the Debtors cannot provide adequate information regarding potential distributions to holders of EPD/Breach Claims.

25.    Moreover, under the Plan the total amount of EPD/Breach Claims affects the potential distributions to other unsecured creditors.  *See* Plan; Disclosure Statement.  Thus, because the Debtors cannot provide adequate information about the aggregate amount of EPD/Breach Claims, the Debtors also cannot provide adequate information about potential distributions to holders of other unsecured claims.  As a result, it does not appear that even an amended Disclosure Statement will be able to provide adequate information to holders of unsecured claims about their potential recoveries under the Plan.  Without such information, the Disclosure Statement clearly fails to provide the adequate information required by Bankruptcy Code section 1125.

**B.    The Tabulation Procedures Prejudice Holders of EPD/Breach Claims**

26.    Wells Fargo objects to the Motion and the Tabulation Procedures forming a part thereof because it inequitably prejudices holders of EPD/Breach Claims.  Specifically, the Tabulation Procedures inequitably prejudice holders of EPD/Breach Claims by (i) failing to establish identified deadlines for providing information to the Debtors regarding EPD/Breach Claims, (ii) granting the Debtors unilateral authority to determine if the information provided is adequate, and (iii) providing inadequate time to file motions to estimate the amount of EPD/Breach Claims for voting purposes or otherwise establishing a procedure to challenge the Debtors' estimated EPD/Breach Claim for voting purposes.

27.    The Tabulation Procedures contain no identified deadline by which holders of EPD/Breach Claims must supply the requested information to the Debtors.  Instead, the Tabulation Procedures set an unknown, amorphous deadline that the Debtors may determine at

their sole discretion.    Holders of EPD/Breach Claims need additional time to provide the requested information to the Debtors because it appears that some of the information, including information concerning the payment history of certain mortgage loans, may need to be compiled manually, which substantially increases the time required to provide the requested information. Thus, Wells Fargo requests that the Court establish an identified deadline of at least forty-five (45) days after the Hearing for holders of EPD/Breach Claims to provide the requested information to the Debtors.

28.    The Tabulation Procedures also provide the Debtors with the unilateral authority to decide whether the information provided by the holder of an EPD/Breach Claim is sufficient for the Debtors to perform the calculations.    Moreover, under the Tabulation Procedures holders of EPD/Breach Claims would not know whether the Debtors believed that the information they provided was sufficient until they received ballots to vote on the Plan.    Wells Fargo requests that the Tabulation Procedures be modified to require the Debtors (i) to calculate EPD/Breach Claim amounts strictly in accordance with the EPD/Breach Protocol, (ii) to notify holders of the relevant EPD/Breach Claims if the Debtors believe that the information provided is inadequate to perform such calculations and, in any event, advise holders of EPD/Breach Claims at least thirty (30) days before the Debtors mail the ballots of any such deficiencies to afford holders an opportunity to supplement such information.

29.    The Tabulation Procedures would temporarily allow EPD/Breach Claims at only $1.00 if claimants fail "to provide the Debtors with the requested information so that the Debtors are unable to determine the amount of damages that would be calculated pursuant to the EPD/Breach Protocol." *Id.*    Under the Tabulation Procedures, holders of EPD/Breach Claims would not know if their claims are temporarily allowed in the amount of $1.00, or reduced based

on errors in the Debtors' calculations, until they received ballots to vote on the Plan. If holders of EPD/Breach Claims disagree with the $1.00 voting amount, or another amount identified in the ballots, they would be required to file a motion to estimate their claims for voting purposes only ten (10) calendar days after the Debtors mail the ballots. *See* Motion, ¶¶ 20, 24. This time period to file motions to estimate is completely inadequate because claimants with EPD/Breach Claims hold tens, if not hundreds, of EPD/Breach Claims. Less than ten (10) calendar days is not sufficient time for such claimants to review the ballots and prepare motions to estimate their claims. Therefore, Wells Fargo requests that the Tabulation Procedures be modified to provide that the Debtors must send to holders of EPD/Breach Claims the initial amounts of their claims for voting purposes at least thirty (30) days before the Debtors mail the ballots so that there is adequate time both to discuss the amounts with the Debtors and to file motions to estimate.

### **Reservation of Rights**

30.     Wells Fargo reserves the right to object on additional grounds to the Motion, the Disclosure Statement and the Plan at the hearing regarding the Disclosure Statement and the Motion, and before and at any hearing regarding the confirmation of the Plan.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## Conclusion

WHEREFORE, Wells Fargo respectfully requests that this Court deny the Motion, deny approval of the Disclosure Statement and grant to Wells Fargo such further relief as is just and appropriate.

Dated: February 27, 2008

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Michael Busenkell (DE Bar No. 3933)
Eckert, Seamans, Cherin & Mellot, LLC.
300 Delaware Avenue
Suite 1210
Wilmington, Delaware  19801

and

J.R. Smith (Va. Bar No. 41913)
Jason W. Harbour (DE Bar No. 4176, Va. Bar No. 68220)
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219-4074
(804) 788-8200

Counsel to *Wells Fargo Bank N.A.*

14