IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 07-10416-KJC |
| NEW CENTURY TRS HOLDINGS, INC., *et. al.,* | § | Chapter 11 |
| | § | |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | Related to Docket No. 4986 |

**POSITIVE SOFTWARE SOLUTIONS, INC'S: (I)  RESPONSE IN SUPPORT OF DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT; AND (II) RESPONSE TO OBJECTION OF ANDRE MUTCHNIK**

TO THE HONORABLE KEVIN J. CAREY, U.S. BANKRUPTCY JUDGE:

Positive Software Solutions, Inc. ("PSSI"), a creditor and party-in-interest in this jointly administered bankruptcy case of New Century TRS Holdings, Inc., and its affiliated debtors-in-possession (the "Bankruptcy Case"), files this Response in Support of the Debtors' Motion to Approve Settlement Agreement [D.I. 4986] (the "Settlement Motion") and Response to the Objection filed by Andre Mutchnik to the Settlement Motion (the "Objection").[1]

1.      It is unusual for the non-debtor counter-party to a settlement agreement to file papers in support of a debtor's motion to approve the agreement.  The Settlement Agreement between PSSI (along with Mr. Edward Mandel) and the Debtors is, however, unusual in that a material form of the consideration to be given PSSI and Mandel is the Waiver – which will not result in any material expense to the Debtors, but which will not remain material to PSSI if approval of the Settlement Agreement is delayed.  Furthermore, PSSI is compelled to address the merits of its claims, both generally and particularly as to NCFC, and to counter other assertions and arguments made by Mr. Mutchnik that the Debtors, to avoid possibly prejudicial admissions,

may be reluctant to fully address.[2]

2. <u>The Waiver</u>.  One of the items of consideration to be given by the Debtors is the Waiver – essentially a discovery waiver by the Debtors of communications and work product involving Susman Godfrey's representation of the Debtors in the 2003 Lawsuit.  PSSI views the Waiver as an essential element of the consideration to be tendered by the Debtors because it will permit PSSI to readily and expeditiously secure documents relevant to the 2007 Lawsuit and the sanctions proceedings that PSSI intends to bring in the 2003 Lawsuit.

3. PSSI fully expects that it would be able to obtain the documents covered by the Waiver in discovery under the crime-fraud exception.  Thus, if the Settlement Motion is denied, PSSI will renew its discovery efforts to obtain alleged privileged documents involving Susman Godfrey. On the one hand, if PSSI succeeds in obtaining those documents (as it fully expects), the Waiver will become valueless and PSSI will demand significantly greater sums of monetary and claims-allowance consideration to resolve its claims against the Debtors.  On the other hand, the Waiver costs the Debtors and their creditors (and interest holders) absolutely nothing. Accordingly, Mr. Mutchnik is simply wrong in assuming that PSSI will be willing months or years from now to resolve its claims under terms that are as favorable to the Debtors as those contained in the Settlement Agreement.

4. <u>The Merits of PSSI's Claims</u>.  The Texas District Court, as recognized by Mr. Mutchnik, has already found that PSSI is likely to prevail on the merits of its claims.  The decision rendered against PSSI in the Arbitration is also likely to be vacated for fraud (at least based on previous comments made by the Texas District Court).

---

[1] The Objection was forwarded by Mr. Mutchnik to Debtors' counsel.  As of the time of filing of this response, it appears that the Objection has not been docketed.  PSSI understands, however, that the Objection will be filed prior to the scheduled March 5, 2008, hearing on the Settlement Agreement.

[2] Unless otherwise defined, capitalized terms shall have the same meaning as defined in the Settlement Motion.

5.      The Debtors' prior assertions in contested matters before this Court that PSSI's claims are without merit is not indicative of anything.  Certainly, given the adversarial relationship between the Debtors and PSSI, the Debtors *cannot* admit that PSSI's claims have merit.  What is instructive is the Debtors' admission in the Settlement Motion that further litigation is likely to be long, complex and expensive.  The Debtors, without expressly stating so, appear to tacitly recognize that the Arbitration Award will likely be vacated and that PSSI's claims will have to be re-tried, either before the Texas District Court or in a second arbitration proceeding.

6.      If judgment is returned for PSSI on its claims, the damages that PSSI will be awarded are likely to be significant.  As indicated in the expert report of Alan G. Ratliff prepared in connection with the 2003 Lawsuit and the Arbitration (the "Damages Report"), PSSI's damages as calculated under the Digital Millennium Copyright Act of 1998 (the "DMCA") and other federal copyright protection laws, as well as on other grounds, are at a *minimum*, in the hundreds of millions of dollars and could stretch into the billions of dollars (if, for example, PSSI was awarded more than the DMCA statutory minimum of $200 for each violation of the DMCA).[3]

7.      Mr. Mutchnik contends that there is no evidence that New Century Financial Corporation ("NCFC") was complicit in NCMC's unlawful use of PSSI's LoanForce platform and its efforts to reverse engineer LoanForce software to create its own software platform. That assertion is simply incorrect.  The evidence obtained by PSSI in the course of the 2003 Lawsuit and the Arbitration reveals that NCFC was fully aware of and even directed NCMC's actions. With the possible exception of breach of contract claims, comprising a relatively small portion of

3

PSSI's damages claims, NCFC is jointly and severally liable with NCMC for the damages suffered by PSSI.[4]

8. Furthermore, PSSI has additional claims against both NCMC and NCFC, both of which are defendants in the 2003 Lawsuit and both of which were represented by Susman Godfrey, for sanctions related to the 2003 Lawsuit. Even if PSSI's sanctions claims are subject to subordination under Bankruptcy Code section 726(a)(4) (which PSSI contests), any award of sanctions against NCFC and in PSSI's favor would still have to be paid in full before any distribution to Mr. Mutchnik on his equity holdings.

9. <u>Other Considerations</u>. There are myriad other considerations that weigh in favor of granting the Settlement Motion, but which for obvious cautionary reasons the Debtors may not be able to fully articulate on the record. Those considerations include the following:

> a. *Loss of Prior Trial Counsel*. Susman & Godfrey, whose attorneys are currently the subjects of a pending disciplinary action and which itself has been sued by PSSI and Mandel, is conflicted from representing the Debtors. That loss will result in increased fees and expenses to the Debtors. The record of prior proceedings in the 2003 Lawsuit comprises some 800,000 pages in length. Thus, the Debtors will incur significant costs and expenses in having their new trial counsel, Haynes and Boone, LLP, fully familiarize itself with the relevant facts and legal issues involving PSSI's claims.

---

[3] The Damages Report is subject to protective orders entered in the 2003 Lawsuit. PSSI will request that it be permitted to file the Damages Report under seal prior to the scheduled March 5, 2008, hearing on the Settlement Motion.

[4] NCFC itself had the opportunity to seek the dismissal of the claims brought by PSSI in the 2003 Lawsuit on the alleged grounds that it did not participate in NCMC's actions. That NCFC never moved to be dismissed on those grounds is further indication that it was complicit with NCMC.

4

      b. *Loss of Institutional Knowledge*.  As reflected in the record, the Debtors have essentially ceased operations and have no more than an handful of full-time and contract employees.  The Debtors essentially have little, if any, institutional ability to assist their current trial counsel.

      c. *Cost of Litigation*.  The costs of further litigation between the parties (including NCFC) will be substantial.  PSSI has demonstrated that it is fully committed to pursuing its copyright violation and other intellectual property claims and, indeed, will likely have to do so anyway in connection with the 2007 Lawsuit.  Furthermore, this Court has already indicated that at some point it will be appropriate for PSSI's claims to be liquidated and that the appropriate forum for doing so is the Texas District Court.  Both NCFC and NCMC are party defendants to the 2003 Lawsuit and both will have to incur the costs associated with future litigation of PSSI's claims, including defending themselves against PSSI's claims that they should be sanctioned in connection with the fraud, misrepresentations and other wrongful conduct committed in the 2003 Lawsuit and in the related Arbitration.

The record of the 2003 Lawsuit, only a portion of which has been presented to this Court, reflects that re-litigation of PSSI's claims will be costly and may (and PSSI truly believes it will) result in liability to both NCMC and NCFC far in excess of the monetary and claims allowance consideration to be tendered under the Settlement Agreement.  The Settlement Agreement

5

embodies a reasonable, arms-length compromise of PSSI's claims and, accordingly, should be approved.

Dated:  February 27, 2008        FOX ROTHSCHILD LLP
        Wilmington, Delaware

            By: _____
                Daniel K. Astin, Esquire (No. 4068)
                Anthony M. Saccullo, Esquire ( No. 4141)
                Citizens Bank Center, Suite 1300
                919 N. Market Street, P.O. Box 2323
                Wilmington, Delaware  19899-2323
                Tel (302) 622-4212/Fax (302) 656-892
                dastin@foxrothschild.com
                asaccullo@foxrothschild.com

                and

                Michael W. Shore, Esquire
                Alfonso Garcia Chan, Esquire
                Justin B. Kimble, Esquire
                Sherry L. Talton , Esquire
                SHORE CHAN BRAGALONE LLP
                325 North Saint Paul Street-Suite 4450
                Dallas, Texas 75201
                (214) 593-9110 Telephone
                (214) 593-9111 Facsimile
                shore@shorechan.com
                achan@shorechan.com
                jkimble@shorechan.com
                stalton@shorechan.com

                and

                Mark H. Ralston, Esquire
                State Bar No. 16489460
                THE RALSTON LAW FIRM
                2603 Oak Lawn Avenue, Suite 230, LB 2
                Dallas, Texas 75219-9109
                Telephone: (214) 295-6416
                ralstonlaw@gmail.com

                *Attorneys for Creditor*
                *Positive Software Solutions,*
                *Inc.*