Judge Kevin J. Carey
United States Bankruptcy Court, District of Delaware
824 North Market Street, 3rd Floor
Wilmington, Delaware 19801

**In re: New Century TRS Holdings, Inc., et al., Case No. 07-10416 (KJC)**

Dear Judge Carey,

I am a holder of New Century Financial Corp.'s preferred stock and common stock and have been following this case since its inception in April 2007. Along with this letter, I have filed an objection to the Feb. 2nd Disclosure Statement and an objection to the Proposed Settlement with PSSI, both of which are scheduled to be heard on March 5th 2008. In the event you rule that the objections in question are devoid of merit, this letter is moot. However, should you rule that my objections have some merit, I would like to take this occasion to submit some general comments (which are not restricted to the objections as such) to your attention.

The first comment concerns your decision to grant Debtors' Motion to shorten the time to object to seven days. With all due respect, I believe your decision was perhaps somewhat hasty. I do not think that either PSSI or the Debtors would have been prejudiced if the other parties in interest such as myself were granted a bit more time to object (at least fourteen days instead of seven), or even if the hearing of that motion was to be postponed until the March 25th omnibus hearing. It's a matter of procedural fairness – giving parties enough time to object. I had to spend the entire weekend (from early morning to late night) on drafting my objection to the PSSI Proposed settlement. I do not have the opportunity of having a team four or five attorneys working for me – all the objections were, from A to Z, drafted by me with some comments and feedback by some fellow investors to which I owe gratitude.

My second comment relates to the vagueness of Debtors' arguments. In its motions to settle, it seems to me that Debtors typically limit their reasons to vague justification such as "This settlement is in the estates' interest as it avoids legal fees". *Any* settlement avoids legal fees as it stops litigation. The real question is: are the *TMT Trailer Ferry* criteria met? For instance, can the Court make an intelligent opinion on whether to pursue litigation or on whether to settle? That cannot be achieved with vague, laconic reasons.

In the motion to settle with GECC, I have informed the Debtors' counsel of an informal limited objection, essentially on the dual basis that i) The settlement possibly favors NCMC to the detriment of NCFC and ii) There is not enough information with respect to the reasons substantiating this settlement (with respect to the reasons why the secured claim has been fixed to $2,190,000). After discussion with Debtors' counsel, I was persuaded that (at least at that point) I did not have enough factual and/or legal arguments to counter the motion to settle with GECC and to rebut the presumption in favor of the

Debtors and have accordingly advised the Debtors that I am conceding the point for the time being.

However, I have nevertheless advised the Debtors' Counsel that I would still like to see adequate disclosure with respect to all relevant issues, including the methodology of valuation of GECC's collateral. And, in the event what I saw was not satisfactory, that I reserve the rights to challenge the valuation of GECC collateral (i.e. essentially the apportionment of the GECC claim between NCFC and NCMC) at that point.

We are now at a stage where a Disclosure Statement has been filed and the Court is about to rule on whether it contains adequate information. As I indicated in my objection to the Disclosure Statement, numerous important points are insufficiently detailed (tax returns), lack specificity (settlements with our former MRA counterparties, which simply say that negotiations are ongoing) or are simply absent from the Disclosure Statement (such as the discussion of the May sale of Morgan Stanley loans and residuals).

In my humble opinion, the Court places a lot of deference unto the Debtors, mainly due to the fact that Debtors' actions are often agreed upon with the Creditors' Committee. And that's understandable in a sense: if both the Debtors and the Creditors agree, where is the problem? This brings me to my third and final comment: with all due respect, I urge the Court not to assume that the fact that Debtors often act in conjunction with the Creditors' committee equates with an adequate consideration of interests of all parties (including not only equity holders of NCFC whose interests are to be cancelled pursuant to the Feb. 2nd Plan, but also Beneficiaries of the Rabbi Trust, who are generally smaller creditors of NCFC).

For instance, the Court is well aware of the motion to keep the Examiner's first report and Debtors' Reply under seal (motion which the Court ultimately dismissed). Creditors' Response to that motion offered the compromise that both the Report and the Reply were to be kept under seal for four months. The court was faced with the following imperatives:
1. On one hand, the Report had to be made public for the benefit of all parties;
2. On the other hand, potential "harm" had to be avoided to the estates.

The Creditors' Committee offered a seemingly reasonable compromise, until a more in-depth analysis revealed one big problem: keeping the report under seal would mean that the report would be made public *only after confirmation of the Plan and certainly after the approval of the Disclosure Statement*! One day prior to the hearing, I informed the U.S. trustee of this concern. I don't know what happened behind the scenes – but I do know that the Report and the Reply have been made public[1] and that this Court itself has referred to Debtors' reasons to keep the Examiner's Report under seal as "smokescreen" to avoid embarrassment.

A second example why I think the Debtors and Creditors might not adequately represent equity holders (or, in fact, smaller creditors of NCFC such as the Trust Beneficiaries)

---
[1] And, in fact, I have relied upon the Reply for my objection to Disclosure Statement

transpires in the February 2nd Plan. The Plan forces, pursuant to the Senior Claims Procedure, creditors of NCFC to (emphasis is mine)[2]:

> [A]ssert that it holds a Senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures, such Holder must file with the Bankruptcy Court and serve on the Debtors, the Holders of Claims against NCFC arising from NCFC's obligations under the Capital Trust Indentures (defined in the Plan as "Capital Trust Claims"), the Liquidating Trustee, and the Indenture Trustee a pleading describing with specificity the legal and factual basis for establishing that such Holder holds a Senior Class HC3b Claim (defined in the Plan as a Subordination Statement) no later than thirty (30) days after the Effective Date.

I don't understand the rationale of the above procedure, though maybe I'm missing someone. It is trite law that a subordination agreement is enforceable in a bankruptcy case. I'm also pretty sure that besides the Capital Trust Indentures, no other creditor of NCFC signed a subordination agreement. The Senior Claims Procedure is unduly burdensome, but I would expect that many, if not most, of the smaller NCFC creditors would simply not understand the meaning of this procedure, will not send the required notice or will send it tardily and therefore will rank at par with the Capital Trust Indentures instead of ranking senior to it as they should.

Another clause in the Plan which I think shows disregard for smaller constituencies is article 9 (D) 4 of the February 2nd Plan, which provides as follows (emphasis is mine):

> 4. Payment in Full of All Allowed Holding Company Debtor Unsecured Claims. If, in accordance with the terms of this Plan, all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid 100% of the allowed amount of their Allowed Holding Company Debtor Unsecured Claims, any remaining amount of the Holding Company Debtor Net Distributable Assets or the Holding Company Debtor Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol to Holders of Allowed Operating Debtor Unsecured Claims on account of such Claims. After all Holders of Allowed Operating Debtor Unsecured Claims and all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid in full in accordance with Article 9.D.1 and 9.D.2 hereof, any remaining amount of the Holding Company Debtor Net Distributable Assets or the Holding Company Debtor Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

The fact that *Operating Company* creditors rank ahead of NCFC (i.e. *Holding Company*) interests seems to me as unfair and potentially as violating the absolute priority rule. That is tantamount to granting Operating Creditors a subordinated guarantee agreement which they didn't (and shouldn't) have.

In bankruptcy cases, a bankruptcy court is often faced with a problem that procedural fairness to all constituencies (especially the smaller ones) comes into conflict with the need to emerge from Chapter 11 (for instance, in order to obtain financing contingent upon emergence before a certain date) or with the need to ensure the survival and viability of the bankrupt company post-emergence.

---

[2] February 2nd Disclosure Statement, page 74.

Sometimes, the need to ensure fast emergence or the survival of the company means that a court must take shortcuts and disregard some issues regarding fairness towards the dissenting parties. I respectfully submit that the case at hand is not one of those cases. The Feb. 2nd Plan provides for liquidation (i.e. company's viability post-emergence and/or contingent financing are not applicable to this case), and even if confirmed, it has been stated on record that the first distribution is expected only within 6 months from the confirmation.

In order to be proactive and to save time for every constituency, I sent the Debtors' and other counsel with a draft of my objection to the Disclosure Statement on February 13, 2008. This was done to give the Debtors a chance to examine my objections and possibly to amend the Disclosure Statement before the hearing. I have not received any response, and as of today, no amendments were made.

I therefore respectfully submit to the Court that ensuring fairness to all constituencies, even the smaller ones, is imperative in this case. I also believe that the equation Debtors approval + Creditors approval = Fairness for all parties does not always hold in this case.

I thank you very much for your time and remain sincerely yours,

A. Mutchnik

Andre Mutchnik

February 25, 2008