# EXHIBIT A

LA3:1142813.6
RLF1-3259493-1

**EXECUTION VERSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |

### STIPULATION OF GLOBAL SETTLEMENT RESOLVING
### DISPUTES WITH ADEQUATE PROTECTION CLAIMANTS

This Stipulation of Global Settlement Resolving Disputes with Adequate Protection

Claimants (the "Stipulation") entered into by and among New Century Mortgage Corporation

("NCMC") and its affiliated debtors and debtors in possession in the above-captioned jointly

administered cases (collectively, the "Debtors"), the Official Committee of Unsecured Creditors of

the Debtors (the "Committee") and the Parties listed on Schedule A hereto, who are signatories hereto

(the "Adequate Protection Claimants", collectively, with the Debtors and the Committee, the

"Parties"):

---

[1]    The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (Okla JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LW (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership, and New Century Warehouse Corporation.

## RECITALS

As and for the Recitals to this Stipulation, the Debtors assert the following:

A.       On April 2, 2007 (the "Petition Date"), each of Debtors, other than New Century Warehouse Corporation[2], filed voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

B.       On April 9, 2007, the Committee was appointed in the Debtors' bankruptcy cases.

C.       Prior to the Petition Date, the Debtors originated, purchased, sold, and serviced residential mortgage loans. Frequently, the Debtors sold mortgage loans in the secondary market to purchasers who replaced the Debtors as servicer prior to the Petition Date ("Loan Purchasers").

D.       In a typical transaction involving the Debtors' sale of a pool of mortgage loans to a Loan Purchaser, the parties would agree on a schedule of the unpaid principal balances of the pool of loans to be sold, with the information in that schedule being determined as of a cutoff date (the "Cutoff Date") established shortly prior to execution of the loan sale agreement and several days after the loan sale agreement was executed, the parties would close the sale of the pool of loans (the "Closing Date"). Sometimes between the Cutoff Date and the Closing Date, the Debtors would collect payments-in-full ("PIFs") or payments of principal and interest ("P&I Payments") on certain of the mortgage loans in the pool scheduled to be sold. Such collections were deposited into the general operating account of New Century Mortgage Corporation ("NCMC") maintained with Union Bank of California, account no. ******4025 ("Account 4025").

E.       The Debtors funded their prepetition operations largely through a series of master repurchase agreements (the "Repurchase Agreements"). Under these Repurchase

---

2       New Century Warehouse Corporation filed a voluntary petition on August 3, 2007 [Bankr. Case No. 07-11043 (KJC)]. Pursuant to this Court's order entered on August 8, 2007, the chapter 11 case for New Century Warehouse Corporation is jointly administered with the chapter 11 cases for the other Debtors.

Agreements, the Debtors contracted to sell certain mortgage loans (the "Repurchase Agreement Loans") to several counterparties (the "Repurchase Counterparties") pursuant to the Repurchase Agreements and similar documents, coupled with the Debtors' agreement, *inter alia*, to repurchase these loans on a maturity date.

F.      As a result of certain prepetition defaults by the Debtors, many of the Repurchase Counterparties exercised remedies under their agreements with the Debtors, including asserting control of the cash payments received by the Debtors from borrowers on their Repurchase Agreement Loans and in some instances crediting the asserted value of the Repurchase Agreement Loans against the Debtors' repurchase obligation and/or reselling the Repurchase Agreement Loans to third parties.

G.      Prior to the Petition Date, (a) Goldman Sachs Mortgage Company, one of the Repurchase Counterparties ("Goldman"), had entered prepetition into a Repurchase Agreement with New Century Warehouse Corporation ("Warehouse"), (b) Warehouse received in excess of $11,000,000 in connection with the sale of certain mortgage loans, which funds Goldman claims constituted its property (the "Goldman Funds"), and (c) Warehouse transferred the sum of $10,152,000 (the "Upstreamed Amount") to Account 4025, which funds were commingled with the other funds in Account 4025.

H.      Following the Petition Date, some of the Repurchase Counterparties commenced adversary proceedings seeking, *inter alia*, that funds collected and held by the Debtors on their Repurchase Agreement Loans, be held in trust and turned over to them. *See UBS Real Estate Securities Inc. v. New Century Mortgage Corp., et al.*, Adv. No. 07-50875 (KJC) (the "UBS Adversary Proceeding"); *DB Structured Products, Inc. v. New Century Mortgage Corp., et al.*, Adv. No. 07-51269 (KJC) (the "DB Adversary Proceeding").

- 3 -

I.    The remaining Repurchase Counterparties contacted the Debtors (a) demanding an accounting and turnover of the funds collected and held by the Debtors on their Repurchase Agreement Loans or (b) threatening that they would commence adversary proceedings against the Debtors seeking such relief.

J.    Certain Loan Purchasers contacted the Debtors (a) demanding an accounting and turnover of the PIFs and P&I Payments that the Debtors had collected on the pools of mortgage loans that were the subject of their Purchase Agreement or (b) threatening that they would commence adversary proceedings against the Debtors seeking such relief.

K.    The Repurchase Counterparties and Loan Purchasers have asserted that the moneys collected by the Debtors attributable to their loans are traceable and under the terms of their agreements, the Debtors were obligated to segregate and turnover such funds.

L.    The Debtors have been working to reconcile the amounts at issue, which involved thousands of loans and the tracing of collections through various bank accounts covering periods generally from early to late March 2007.

M.    Pending this reconciliation, after consultation with the Committee and several of the Repurchase Counterparties, the Debtors filed a Motion for an Order to Provide Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) (the "Motion"). The Motion sought the entry of an order providing the parties claiming an interest in property held by the Debtors on the Petition Date adequate protection retroactive to the Petition Date and to protect the interests of the parties, including the rights of the Committee and the Debtors, to participate in resolution of these issues.

N.    On June 29, 2007, the Bankruptcy Court entered an Order Granting Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) and Establishing Preliminary Procedures for Resolving Certain Claims [Docket # 1729] (the "June 29 Adequate Protection Order"). Pursuant to the June 29 Adequate Protection Order, among other things, the

Affected Repurchase Counterparties and the Affected Loan Purchasers (as defined therein) were granted adequate protection "to the extent that an Affected Repurchase Counterparty or Affected Loan Purchaser is determined (by order of the Court or consent of the Debtors, the Committee and such Affected Repurchase Counterparty or Affected Loan Purchaser) to (i) have a valid, perfected, enforceable and nonavoidable interest in cash or cash equivalents held by the Debtors as of the Petition Date, or (ii) have an otherwise enforceable, nonavoidable interest in law or equity in cash or cash equivalents held by the Debtors as of the Petition Date, and to the extent that the Debtors' postpetition use of such cash or cash equivalents diminished an Affected Repurchase Counterparty's or Affected Loan Purchaser's interest in such property." The Affected Repurchase Counterparties and the Affected Loan Purchasers together comprise the "Adequate Protection Claimants." Based on the Debtors' representation to the Court, the Committee and the Adequate Protection Claimants, the June 29 Adequate Protection Order further required that the sums of $2,670,000, plus accrued interest, and $39,331,614.71, together representing the total amount of funds that existed in Account 4025 as of the Petition Date, be deposited into two separate escrow accounts (together, with any accrued interest earned thereon, the "Escrowed Funds") held by Hahn & Hessen LLP, as escrow agent (the "Escrow Agent") pending further order of the Court. The June 29 Adequate Protection Order also provided for a series of dates by which the Debtors were obligated to complete their reconciliations of the amounts they believed were at issue, and by which the Parties were required to exchange certain information and meet and confer to determine whether a good faith compromise could be reached.

O.      On August 22, 2007, the Bankruptcy Court entered a Supplement to Order Granting Adequate Protection pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) and Establishing Preliminary Procedures for Resolving Certain Claims [Docket #2367] (the "Second Supplemental Order"). On October 3, 2007, the Bankruptcy Court entered a Supplement (Third) to Order Granting Adequate Protection pursuant to Bankruptcy Code Sections 105(a), 361, 362 and

363(b)(1) and Establishing Procedures for Resolving Certain Claims (the "Third Supplemental Order" and, together with the June 29 Adequate Protection Order and the Second Supplemental Order, the "Adequate Protection Order").

P.      After completing its reconciliation analysis of the amounts at issue, the Debtors discovered and are now asserting that certain funds, including property tax and insurance payments received from homeowners ("T&I Payments") had been inappropriately deposited into blocked bank accounts held in the name of Barclays Bank PLC (for itself and as agent for its affiliates, "Barclays") and Credit Suisse First Boston Mortgage Capital LLC ("CSFBC"), which T&I Payments were then swept by Barclays and CSFBC. Specifically, Barclays and CSFBC received T&I Payments in the aggregate amounts of $2,038,000 (the "Barclays Disputed T&I Amount") and $1,553,000 (the "CSFBC Disputed T&I Amount"), respectively. The Debtors and the Committee claim that Barclays and CSFBC are obligated to disgorge the Disputed T&I Amounts that they received. Barclays and CSFBC dispute that claim.

Q.      On August 21, 2007, the Bankruptcy Court entered an Order Approving Settlement Agreement with DB Structured Products, Inc. ("DBSP") pursuant to Bankruptcy Rule 9019 and Sections 105(a), 361, 363, 502 and 542 of the Bankruptcy Code, pursuant to which, among other things, DBSP assigned to the Debtors' estate any recoveries realized on its adequate protection claim against the Escrowed Funds (the "DBSP Settlement");

R.      The Debtors and the Committee assert a number of defenses and counterclaims to the Adequate Protection Claimants' claims that the amounts held in Account 4025 on the Petition Date are their property or collateral, whereas the Adequate Protection Claimants dispute the validity of such defenses and counterclaims and assert aggregate trust fund property and other claims that exceed the amount held in Account 4025 on the Petition Date.

S.      The Debtors, the Committee and the Adequate Protection Claimants have engaged in extensive global settlement negotiations, culminating in the Parties entering into this Stipulation.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED, BY AND AMONG THE PARTIES, THAT:**

1.      Subject to the approval of this Stipulation by the Bankruptcy Court,

A.      the Escrowed Funds, including all accrued interest earned thereon through the date of distribution, shall be distributed by the Escrow Agent twenty-two and one-half percent (22.5%) to the estate of NCMC ("NCMC's Share") and seventy-seven and one-half percent (77.5%) to the Adequate Protection Claimants (the "Adequate Protection Claimants' Share")[3] to be distributed by the Escrow Agent to the Adequate Protection Claimants on a *pro rata* basis in accordance with (i) the percentages set forth on Schedule A hereto and (ii) the provisions of paragraph 7 hereof;

B.      DBSP's share of the Escrowed Funds shall be distributed to NCMC pursuant to the terms of the DBSP Settlement;

C.      With respect to Barclays, (i) $2,038,000 of Barclays' respective share of the Escrowed Funds shall be distributed to NCMC in full satisfaction, settlement and release of all claims the Debtors may have arising out of or relating to the Barclays Disputed T&I Amount; and (ii) the balance of Barclays' share of the Escrowed Funds shall be distributed by the Escrow Agent to Barclays; and

D.      With respect to CSFBC, (i) $1,553,000 of CSFBC's respective share of the Escrowed Funds (including any interest accrued thereon after such funds are segregated) shall continue to be held in escrow by the Escrow Agent, pending (x) resolution, agreed to in writing by

---

[3]      As of January 31, 2008, the Adequate Protection Claimants' share is equal to $33,181,787 (including accrued interest through that date) and such amount, plus additional accrued interest, will be distributed to the Adequate Protection Claimants.

the Debtors, the Committee and CSFBC, and approved by order of the Bankruptcy Court, of the

Debtors' claims arising out of or relating to the CSFBC Disputed T&I Amount, or (y) the entry of a

further order of the Bankruptcy Court, and (ii) the balance of CSFBC's share of the Escrowed Funds

shall be distributed by the Escrow Agent to CSFBC.

2.     The Escrow Agent shall release NCMC's Share of the Escrowed Funds to

NCMC, which shall hold such funds in a separate, segregated, interest bearing account to be (i) used

to fund a liquidating trust or otherwise shall be distributed in accordance with the terms of a

confirmed chapter 11 plan in these cases or (ii) distributed, in another manner for cause shown after

notice and a hearing, in accordance with a further order of the Bankruptcy Court, it being understood

and agreed that in no event shall any such funds be used to fund any litigation against or investigation

of the Adequate Protection Claimants.

3.     Subject to receipt of its respective share of the Escrowed Funds pursuant to the

terms of this Stipulation, each Adequate Protection Claimant hereby waives, sets aside, discharges,

settles, compromises and releases any and all claims, causes of action, rights or remedies of any kind

or nature, which it or any of its affiliates has, may have or could have asserted against any of the

Debtors, or their affiliates or their former or present officers, directors, employees, attorneys,

financial advisors or other professionals (each in their respective capacities) or the Committee or its

attorneys, financial advisors or other professionals (each in their respective capacities), and the

Escrow Agent, which claims, causes of action, rights or remedies arise solely out of or relate solely to

(a) an interest in, right to or claim against any funds held by the Debtors as of the Petition Date other

than funds held by the Debtors in a segregated account for their benefit, (b) any claims in respect of

the Escrowed Funds, or (c) the relief granted pursuant to the Adequate Protection Order, including

without limitation any claims for conversion, aiding and abetting conversion, theft, improper use of

cash collateral, or similar claims relating to the Debtors' alleged failure to turn over funds either

owned by the Adequate Protection Claimant or to which the Adequate Protection Claimant might

- 8 -

otherwise be entitled or assert an interest in; provided, however, that nothing contained herein shall be deemed to release or discharge any Excluded Claims (as defined below).

        4.      The releases granted in the preceding paragraph 3 shall not include or encompass any of the following claims (collectively, the "Excluded Claims"): (i) the Debtors' obligations under this Stipulation; (ii) any claims any Adequate Protection Claimant may have against the Debtors' former or present officers, directors, employees, attorneys, financial advisors or other professionals (each in their respective capacities) or the Committee or its attorneys, financial advisors or other professionals (each in their respective capacities), and/or the Escrow Agent for intentional misconduct or gross negligence; (iii) any Repurchase Counterparty's or its respective affiliate's deficiency claim, if any, under such Repurchase Counterparty's Repurchase Agreement, any guaranties provided in connection with such Repurchase Agreements and/or any related program documents executed in connection therewith, including as reflected and asserted in any proofs of claim filed by such Repurchase Counterparty or its respective affiliates, and any and all rights of the Repurchase Counterparties or their respective affiliates to receive amounts or to share in any litigation recoveries or other amounts distributed to unsecured creditors; (iv) any Loan Purchaser's or its respective affiliates' general unsecured claims for any amounts it asserts should have been remitted to it related to collections from borrowers of loans sold to them other than its respective share of the Escrowed Funds, (v) CSFBC's claims and defenses with respect to the CSFBC Disputed T&I Amounts, (vi) claims of Goldman and/or its affiliates against (x) the Debtors (other than Warehouse) and their non-debtor affiliates and the former and present officers, directors, employees, attorneys, financial advisors and other professionals (only in their respective capacities as such) of the Debtors (other than officers and directors of Warehouse who are or were not also officers and directors of any other Debtors) that are not based on the transfer of the Upstreamed Amount and any other intercompany transfers between the Debtors and Warehouse (collectively, the "Warehouse Intercompany Transfers"), (y) Warehouse and (z) Warehouse's former and present officers and

- 9 -

directors who are or were not also officers and directors of any other Debtors, and (aa) Natixis Real

Estate Capital, Inc. f/k/a IXIS Real Estate Capital, Inc., including claims asserted in the action in the

Supreme Court of the State of New York, County of New York, entitled Goldman Sachs Mortgage

Company v. Natixis Real Estate Capital, Inc. f/k/a IXIS Real Estate Capital, Inc., Index No.

662359/07; and (vii) any other claims the Adequate Protection Claimants or their respective affiliates

may have against any of the Debtors (including any rights to share in any litigation recoveries

distributed by any liquidation trusts) for first payment defaults, early payment defaults (including

premium fees and interest related thereto), breach of representations and warranties (including

premium fees and interest related thereto), premium recapture fees and/or contractual indemnification

(including legal fees) associated with the Debtors' prepetition sale of mortgage loans to them.  The

Debtors and the Committee reserve the right to review and, if appropriate, object to the allowance of

any such claims.  For the avoidance of doubt, nothing contained in this Stipulation shall waive,

release or discharge (i) any right or claim asserted by any Adequate Protection Claimant or its

respective affiliates that is unrelated to its claims to the Escrowed Funds or under the Adequate

Protection Order, which claims to the Escrowed Funds or under the Adequate Protection Order are

being resolved in their entirety by this Stipulation, (ii) any rights of offset or foreclosure, or any

security interest, held by any Adequate Protection Claimants or their respective affiliates with respect

to any collateral or property interest it may have or to which it may be entitled, and (iii) any rights of

offset held by any Adequate Protection Claimants or their respective affiliates against any obligation

owed to the Debtors that it may have or to which it may be entitled.

        5.      The Debtors and the Committee hereby waive, set aside, discharge, settle,

compromise and release any and all claims, causes of action, rights or remedies of any kind or nature,

which they have, may have or could have asserted against any of the Adequate Protection Claimants,

or their respective affiliates or their former or present officers, directors, employees, attorneys,

financial advisors or other professionals, which claims, causes of action, rights or remedies arise out

of or relate to the entitlement of the Adequate Protection Claimants to receive and retain their respective share of the Escrowed Funds; provided, however, that nothing contained herein shall be deemed to (i) release or discharge (a) any Adequate Protection Claimant's obligations under this Stipulation, (b) any and all claims the Debtors or the Committee may have arising under Chapter 5 of the Bankruptcy Code (other than any and all claims arising under Chapter 5 of the Bankruptcy Code with respect to the distribution of the Adequate Protection Claimants' Share and any and all claims, including but not limited to those arising under Chapter 5 of the Bankruptcy Code, with respect to the Warehouse Intercompany Transfers, which claims are expressly released) or any and all claims and defenses that the Adequate Protection Claimants have or may assert in connection with such claims, or (c) the Debtors' claims and defenses with respect to the CSFBC Disputed T&I Amounts, or (ii) prohibit or restrict the Debtors or the Committee from asserting that the amount of the Adequate Protection Claimants' claims, if any, should be reduced by the amount of the Escrowed Funds received by such Adequate Protection Claimant.

6. The Debtors acknowledge and agree that any recovery on their claims arising out of or relating to the Barclays Disputed T&I Amount shall be limited to the setoff of a portion of Barclays' respective share of the Escrowed Funds as provided in paragraph 1.C. above. Barclays and the Debtors acknowledge and agree that nothing contained herein shall affect, modify or change the terms of the walk-away agreement entered into between them prepetition, including Barclays' release of its deficiency claim, if any, under its Repurchase Agreement with certain of the Debtors.

7. Within five (5) business days of its receipt of its share of the Escrowed Funds, UBS Real Estate Securities Inc. agrees to cause the UBS Adversary Proceeding to be dismissed with prejudice.

8. Prior to entry on the docket of the Bankruptcy Court's order approving this Stipulation, each Adequate Protection Claimant shall provide the Escrow Agent with written wire transfer instructions for the payment of its respective share of the Escrowed Funds and within the

- 11 -

earlier of two (2) business days or three (3) calendar days of the entry of such Order, the Escrow

Agent shall wire transfer to such Adequate Protection Claimant its respective share of the Escrowed

Funds. After each Adequate Protection Claimant's receipt of its respective share of the Escrowed

Funds, the Escrow Agent shall be deemed to have fully satisfied and discharged its obligations with

respect to such Escrowed Funds.

9.      Nothing herein shall in any manner be deemed or construed as an admission of

liability by any Party, and nothing contained in the Recitals shall be deemed or construed as a finding

of fact against any Party. The Parties hereby agree and understand that this Stipulation is executed

for the purpose of compromising disputed claims, and avoiding the expense, delay and inconvenience

that would be occasioned by litigation and not because any Party admits any liability with respect to

any fact or transaction that has been alleged, or that could have been alleged.

10.     Each person signing this Stipulation hereby covenants and warrants to the

other Parties that he or she is fully authorized to sign this Stipulation on behalf of the Party indicated,

and is fully authorized to bind the Party to all terms of this Stipulation.

11.     All moneys to be held in escrow hereunder shall be held in an interest bearing

account, which interest shall follow the principal.

12.     This Stipulation shall be effective and enforceable immediately upon approval

by the Bankruptcy Court and entry of the approval order on the docket, and any stay that might

otherwise be imposed by Federal Rule of Bankruptcy Procedure 4001(a), or any other rule or

provision of law, shall not apply to this Stipulation and is hereby waived. The Debtors agree to

promptly seek approval of this Stipulation by the Bankruptcy Court (by no later than three (3)

business days after this Stipulation has been executed by all Parties) and the Parties agree to take all

reasonable actions necessary to secure such order.

13.     In the event that the Bankruptcy Court does not approve this Stipulation,

nothing (including Recitals) contained in this Stipulation, any motion or motions filed seeking an

- 12 -

order from the Bankruptcy Court approving this Stipulation, or any correspondence or other communications related to the negotiation, drafting or approval of this Stipulation, shall be argued nor deemed to be an admission against any Party's interest in any litigation by and between any Parties.

14.     The Parties represent and acknowledge that, in executing this Stipulation, they do not rely and have not relied upon any representation or statement made by any party or any of their agents, representatives or attorneys, with regard to the subject matter, basis or effect of this Stipulation or otherwise, other than representations or statements specifically set forth in this Stipulation. The Parties further declare that, in making this Stipulation, they have relied entirely upon their own judgment, beliefs and interest and the advice of their counsel (for whose expense each shall be solely responsible) and that they have had a reasonable period of time to consider this Stipulation.

15.     Should any immaterial provision of this Stipulation be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby and such illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Stipulation.

16.     This Stipulation sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

17.     No modification of this Stipulation shall be binding or enforceable unless in writing and signed by all Parties.

18.    This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

19.    In the event of any conflict or inconsistency between the terms of the Motion, proposed order and this Stipulation, the terms of this Stipulation shall govern.

20.    The Parties irrevocably consent to, and the Bankruptcy Court shall retain, jurisdiction over this Stipulation and any issues or disputes arising from or in connection with this Stipulation.

21.    This Stipulation may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

Dated:    as of February 15, 2008

NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*,
Debtors and Debtors-in-Possession

By: _____

Their:  Chief Executive Officer

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DEBTORS
NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*

By: _____

Its:  Co-Chairperson

By: _____

Its:  Co-Chairperson

BANK OF AMERICA, N.A.,

By: _____

Its: _____

BARCLAYS BANK PLC

By: _____

Its: _____

SUTTON FUNDING LLC

- 15 -

18.     This Stipulation shall be binding upon and inure to the benefit of the Parties,

their respective heirs, executors, successors, administrators and assigns.

19.     In the event of any conflict or inconsistency between the terms of the Motion,

proposed order and this Stipulation, the terms of this Stipulation shall govern.

20.     The Parties irrevocably consent to, and the Bankruptcy Court shall retain,

jurisdiction over this Stipulation and any issues or disputes arising from or in connection with this

Stipulation.

21.     This Stipulation may be executed in one or more counterparts, including by

facsimile, each of which shall be deemed an original, but all of which together constitute one and the

same instrument.

Dated:   as of February 15, 2008

NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*,
Debtors and Debtors-in-Possession


By: _____

Their:  Chief Executive Officer

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DEBTORS
NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*


By: _____
for Fidelity National Information Services LLC (FIS)
Its:  Co-Chairperson


By: _____

Its:  Co-Chairperson

BANK OF AMERICA, N.A.,


By: _____

Its:

BARCLAYS BANK PLC, FOR ITSELF AND AS
AGENT


By: _____

Its:

- 14 -

18.    This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

19.    In the event of any conflict or inconsistency between the terms of the Motion, proposed order and this Stipulation, the terms of this Stipulation shall govern.

20.    The Parties irrevocably consent to, and the Bankruptcy Court shall retain, jurisdiction over this Stipulation and any issues or disputes arising from or in connection with this Stipulation.

21.    This Stipulation may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

Dated:    as of February 15, 2008

NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*,
Debtors and Debtors-in-Possession


By: _____

Their:  Chief Executive Officer

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DEBTORS
NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*


By: _____

Its:  Co-Chairperson


By: _____

Its:  Co-Chairperson


BANK OF AMERICA, N.A.,


By: _____

Its:

BARCLAYS BANK PLC, FOR ITSELF AND AS
AGENT


By: _____

Its:

18.    This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

19.    In the event of any conflict or inconsistency between the terms of the Motion, proposed order and this Stipulation, the terms of this Stipulation shall govern.

20.    The Parties irrevocably consent to, and the Bankruptcy Court shall retain, jurisdiction over this Stipulation and any issues or disputes arising from or in connection with this Stipulation.

21.    This Stipulation may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

Dated:    as of February 15, 2008

NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*,
Debtors and Debtors-in-Possession

By: _____

Their:  Chief Executive Officer

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DEBTORS
NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*

By: _____

Its:  Co-Chairperson

By: _____

Its:  Co-Chairperson

BANK OF AMERICA, N.A.,

By: _____
Its:    SEAN A. TOBIAS
        PRINCIPAL

BARCLAYS BANK PLC

By: _____

Its:

SUTTON FUNDING LLC

- 15 -

18.    This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

19.    In the event of any conflict or inconsistency between the terms of the Motion, proposed order and this Stipulation, the terms of this Stipulation shall govern.

20.    The Parties irrevocably consent to, and the Bankruptcy Court shall retain, jurisdiction over this Stipulation and any issues or disputes arising from or in connection with this Stipulation.

21.    This Stipulation may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

Dated:    as of February 15, 2008

NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*,
Debtors and Debtors-in-Possession

By: _____

Their:  Chief Executive Officer

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DEBTORS
NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY
MORTGAGE CORPORATION, *et al.*

By: _____

Its:  Co-Chairperson

By: _____

Its:  Co-Chairperson

BANK OF AMERICA, N.A.,

By: _____

Its:

BARCLAYS BANK PLC, FOR ITSELF AND AS
AGENT

By: _____

Its:  DIRECTOR

- 15 -

By: _____

Its:

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

By: Michael A. C

Michael Criscito

Its: Vice President

IXIS REAL ESTATE CAPITAL INC.

By: _____

Its:

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By: _____

Its:

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____

Its:

JPMORGAN CHASE CORPORATION

By: _____

Its:

UBS REAL ESTATE SECURITIES INC.

By: _____

Its:

By: _____

Its:

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

Its:

INDYMAC BANK, F.S.B.

By: _____

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

By: _____

Its:

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By: _____

Its:

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____

Its:

JPMORGAN CHASE CORPORATION

By: _____

Its:

INDYMAC BANK, F.S.B.

By: _____

Its:

CITIGROUP GLOBAL MARKETS REALTY

NATIXIS REAL ESTATE CAPITAL INC. f/k/a
IXIS REAL ESTATE CAPITAL, INC.

By: _____
        Raymond Sullivan
Its:    Managing Director

                        Todd Luyster
                        Director

UBS REAL ESTATE SECURITIES INC.

By: _____

Its:

By: _____

Its:

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

Its:

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

Their:

WELLS FARGO BANK, N.A.

- 16 -

By: _____

Its:

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

By: _____

Its:

IXIS REAL ESTATE CAPITAL INC.

By: _____

Its:

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By: _____

Its:  *Deborah Goodman*
       *Vice President*

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____

Its:

UBS REAL ESTATE SECURITIES INC.

By: _____

Its:

By: _____

Its:

JPMORGAN CHASE CORPORATION

By: _____

Its:

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

Its:

INDYMAC BANK, F.S.B.

By: _____

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

Its:

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

By: _____

Its:

IXIS REAL ESTATE CAPITAL INC.

By: _____

Its:

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By: _____

Its:

UBS REAL ESTATE SECURITIES INC.

By: _____

Its:

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____

Its: Frank Telesca
     President

By: _____

Its:

JPMORGAN CHASE CORPORATION

By: _____

Its:

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

Its:

INDYMAC BANK, F.S.B.

By: _____

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

- 16 -

By: _____

Its: _____

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

IXIS REAL ESTATE CAPITAL INC.

By: _____

Its: _____

By: _____

Its: _____

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

UBS REAL ESTATE SECURITIES INC.

By: _____

Its: _____

By: _~~~~~~~~~~~~~~~~~~~~~

Its: George Mangiaracina
Managing Director

MORGAN STANLEY CAPITAL REIT II
INC.

By: _~~~~~~~~~~~~~~~~~~~~~

Its: Robert Carpenter
Executive Director

By: _____

Its: _____

JPMORGAN CHASE CORPORATION

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

Its: _____

By: _____

Its: _____

INDYMAC BANK, F.S.B.

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

By: _____

Its:

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

IXIS REAL ESTATE CAPITAL INC.

By: _____

Its:

By: _____

Its:

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

UBS REAL ESTATE SECURITIES INC.

By: _____

Its:

By: _____

Its:

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____

Its:

By: _____

Its:

JPMORGAN CHASE CORPORATION

By: _____

Its: Counsel

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

Its:

INDYMAC BANK, F.S.B.

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

NATIXIS REAL ESTATE CAPITAL, INC. f/k/a
IXIS REAL ESTATE CAPITAL, INC.

By: _____

By: _____   _____

Its: _____

Its: _____


MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

UBS REAL ESTATE SECURITIES INC.

By: _____   _____

By: _____

Its: _____

Its: _____

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____   _____

By: _____

Its: _____

Its: _____

JPMORGAN CHASE CORPORATION

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

By: _M Hile_

Its: _____

Its: _____

INDYMAC BANK, F.S.B.

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

Its: _____

By: _____   _____

Their: _____

CITIGROUP GLOBAL MARKETS REALTY
CORP.

WELLS FARGO BANK, N.A.

By: _____   _____

By: _____

Its: _____

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

IXIS REAL ESTATE CAPITAL INC.

By: _____

By: _____

Its: _____

Its: _____

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

UBS REAL ESTATE SECURITIES INC.

By: _____

By: _____

Its: _____

Its: _____

MORGAN STANLEY CAPITAL REIT II
INC.

By: _____

By: _____

Its: _____

Its: _____

JPMORGAN CHASE CORPORATION

GOLDMAN SACHS MORTGAGE COMPANY,
A NEW YORK LIMITED PARTNERSHIP
BY: GOLDMAN SACHS REAL ESTATE
FUNDING CORP., A NEW YORK
CORPORATION, AS GENERAL PARTNER

By: _____

By: _____

Its: _____

Its: _____

INDYMAC BANK, F.S.B.

COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

Ignacio Gomez
Vice President

- 16 -

CREDIT SUISSE FIRST BOSTON
MORTGAGE CAPITAL LLC

By: _____

Its:


IXIS REAL ESTATE CAPITAL INC.

By: _____

Its:


MORGAN STANLEY BANK and MORGAN
STANLEY MORTGAGE CAPITAL INC.

By: _____

Its:


UBS REAL ESTATE SECURITIES INC.

By: _____

Its:


JPMORGAN CHASE CORPORATION

By: _____

Its:


GOLDMAN SACHS MORTGAGE COMPANY

By: _____

Its


INDYMAC BANK, F.S.B.

By: _____

Its:


COUNTRYWIDE BANK, N.A. AND
COUNTRYWIDE HOME LOANS SERVICING,
LP

By: _____

Their: _LOAN ADMIN CFO_


CITIGROUP GLOBAL MARKETS REALTY
CORP.

By: _____

Its:


WELLS FARGO BANK, N.A.

By: _____

Its


- 15 -

CITIGROUP GLOBAL MARKETS REALTY    WELLS FARGO BANK, N.A.
CORP.

By: _____

Its: VP

By: _____

Its

Its:

By: _____

Their:

CITIGROUP GLOBAL MARKETS REALTY CORP.

WELLS FARGO BANK, N.A.

By: _____

By: _____
WILLIAM M FRY JR.

Its:

Its    CORPORATE TRUST OFFICER

**EXHIBIT A TO**
**STIPULATION OF GLOBAL SETTLEMENT RESOLVING**
**DISPUTES WITH ADEQUATE PROTECTION CLAIMANTS**

| <u>CLAIMANT</u> | <u>CLAIM AMOUNT</u> | **PERCENTAGE OF CLAIMANTS'** <u>**SHARE OF ESCROWED FUNDS[1]**</u> |
|---|---|---|
| Morgan Stanley Mortgage Capital Holdings LLC and Morgan Stanley Capital REIT II Inc. | $28,531,000 | 47.34% |
| Goldman Sachs Mortgage Company. | $10,152,000 | 16.85% |
| Barclays Bank PLC, for Itself and as Agent for its Affiliates | $3,869,000 | 6.42% (a) |
| Bank of America, N.A. | $3,832,000 | 6.36% |
| Credit Suisse First Boston Mortgage Capital LLC | $3,627,000 | 6.02% (b) |
| J.P. Morgan Chase Corporation | $2,494,000 | 4.14% |
| DB Structured Products, Inc. on, Behalf of Itself and Aspen Funding Corp., Newport Funding Corp., and Gemini Securitization Corp., LLC | $2,125,000 | 3.53% |
| UBS Real Estate Securities Inc. | $1,999,000 | 3.32% |
| IXIS Real Estate Capital Inc. | $1,741,000 | 2.89% |
| CitiGroup Global Markets Realty Corp. | $955,000 | 1.58% |
| Countrywide Bank, N.A. and Countrywide Home Loans Servicing, LP | $600,000 | 1.00% |
| Indymac Bank F.S.B. | $284,000 | 0.47% |
| Wells Fargo Bank N.A. | <u>$55,000</u> | <u>0.09%</u> |
| **TOTAL** | $60,264,000 | 100.00% |

(a)  Subject to offset of $2,038,000 for misdirected T&I payments
(b)  Subject to offset of $1,553,000 for misdirected T&I payments

[1]The percentages in this column represent each Adequate Protection Claimants' share of 77.5% of the Escrowed Funds, which share as of January 31, 2008, was equal to $33,181,787.  As of the date hereof, interest continues to accrue.

1374784.v2