IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware | : | |
| corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | |

## DEBTORS' MOTION TO (I) APPROVE REVISED SETTLEMENT AGREEMENT WITH THE BONNER CLAIMANTS AND (II) GRANT LIMITED RELIEF FROM THE AUTOMATIC STAY

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc, ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order approving the Revised Settlement Agreement (attached hereto as Exhibit A) with certain class action plaintiffs (the "Bonner Claimants"); and (ii) granting

---

[1]    The debtors are the following entities:    New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

relief from the automatic stay for the purpose of allowing the District Court for the Northern District of Indiana (the "Indiana Court") to approve the Revised Settlement Agreement in accordance with Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules"). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The basis for the relief requested is 11 U.S.C. ("Bankruptcy Code") sections 363 and 362(d) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9019.

## BACKGROUND

3.    Prior to the April 2, 2007 commencement of these chapter 11 cases (the "commencement date"), the Debtors were one of the largest specialty mortgage finance businesses in the United States. The Debtors originated, purchased, sold, and serviced mortgage loans nationwide. They commenced these cases principally to market portions of their businesses for sale on a going concern basis and to wind down or liquidate other portions of their businesses.

2

## RELIEF REQUESTED

4.     On April 20, 2005, the Bonner Claimants filed a class action complaint (the "Complaint") against Home123 Corporation and New Century Mortgage Corporation (the "Defendants," and collectively with the Bonner Claimants, the "Parties"). The Complaint alleged that the Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") by impermissibly obtaining credit information about the Bonner Claimants in order to send them mail solicitations for a home loan mortgage. The Defendants have denied all allegations of wrongdoing and liability.

5.     On August 4, 2006, the Indiana Court certified a class pursuant to Federal Rule 23. There are approximately 26,700 class members. Because FCRA § 1681n provides for statutory damages of between $100 and $1,000 per violation, the Bonner Claimants assert a claim of approximately $28,000,000 and have filed a proof of claim in that amount.

6.     The Parties attempted to resolve their dispute through negotiation. On March 12, 2007, their negotiations resulted in an agreement to settle for $300,000 (the "Original Settlement Agreement"). A copy of the Original Settlement Agreement is attached hereto as Exhibit B. But before the Parties could proceed, federal law required them to obtain the Indiana Court's approval of the Original Settlement Agreement.

3

*See* Fed. R. Civ. P. 23(e) ("the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval").

7.   Pending that approval, the Defendants agreed, as a term of the Original Settlement Agreement, to transfer the sum of $300,000 to their defense counsel, Mayer Brown LLP ("Mayer Brown"), to hold in its IOLTA account pending consummation and final approval of the settlement.   The Original Settlement Agreement contemplated that once the parties obtained the necessary approval from the Indiana Court under Federal Rule 23, Mayer Brown would release the money to the class members as consideration for the settlement.   But before the Indiana Court could consider the settlement, the Defendants filed these chapter 11 cases.   As a result, the automatic stay precluded the Indiana Court from approving the Original Settlement Agreement.

8.   It is undisputed that, given the commencement of these chapter 11 cases, the Bonner Claimants' claims, if against the estate, would be unsecured claims.   Moreover, while the cash is being held by Mayer Brown, the Original Settlement Agreement allows the Debtors to terminate the Settlement Agreement and receive a return of the cash.   *See* Original Settlement Agreement ¶ 2.28.   Thus, the settlement funds arguably are property of the estate.   Even if they are not, the transfer of these funds for

4

the benefit of the Plaintiffs a few weeks before the petition date might constitute an avoidable preference.

9.    Given that these might now be unsecured claims but that (a) questions exist about that conclusion and (b) the claim would still have to be liquidated,[2] the Parties have renegotiated their agreement.    Instead of settling for $300,000, the Bonner Claimants have agreed, in the Revised Settlement Agreement, to settle for $150,000 cash from the funds held by defense counsel.    The Debtors would receive a return of the remaining $150,000 from Mayer Brown.    The Official Committee of Unsecured Creditors (the "Committee") supports the Revised Settlement Agreement.    The Revised Settlement Agreement is substantially similar to the Original Settlement Agreement, other than the reduction of the settlement amount from $300,000 to $150,000.    Thus, the relevant terms of the Revised Settlement Agreement are as follows:

- The Bonner Claimants will release their claims against the Defendants in exchange for $150,000 in cash from the IOLTA account;

- The remainder of the funds in the IOLTA account will be returned to the debtors;

- The cost of sending notice and a claim form to class members shall be deducted from the Bonner Claimants' $150,000 recovery from the IOLTA account;

---

[2] The Bonner Claimants understandably did not agree to go forward with a compromise of up to $28,000,000 of claims with a $300,000 unsecured claim; the basis for their settlement in the first instance was the receipt of cash.

- The Plaintiffs' Attorney's fees shall be deducted from the Bonner Claimants' $150,000 recovery from the IOLTA account, subject to the Indiana court's approval pursuant to Federal Rule 23.

10. In order to effectuate the Revised Settlement Agreement, the Indiana Court must still approve it pursuant to Federal Rule 23. Accordingly, the Debtors request that this Court approve the Revised Settlement Agreement under Bankruptcy Rule 9019 and also lift the automatic stay solely for the purpose of allowing the Parties to take the necessary actions under Federal Rule 23 in order to seek the Indiana Court's approval.

**ARGUMENT**

**A.    The Court Should Approve The Revised Settlement Agreement Under Rule 9019 Because It Is In The Best Interest Of The Debtors, Their Creditors, And Their Estates**

11. Section 105 of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019 authorizes bankruptcy courts to approve a compromise proposed by the trustee or a debtor in possession, following the filing of a motion and a hearing with notice to the creditors. Under Section 105(a) and Bankruptcy Rule 9019, the approval of a proposed compromise and settlement is committed to the sound

6

discretion of the Court.   *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

12.   In reviewing a proposed settlement, the Court must determine whether the proposed compromise is "fair and equitable." *Protective Comm. for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).   The ultimate inquiry is whether "the compromise is fair, reasonable, and in the interest of the estate."   *In re Louise's, Inc.*, 211 B.R. at 801.

13.   Two principles should guide the determination of whether a proposed settlement is fair and equitable.   First, the Supreme Court has noted that court approved settlements, which are a "normal part of the reorganization process", *see Anderson*, 390 U.S. at 424 (citation omitted), are favored because they minimize litigation and expedite administration of the bankruptcy estate.   *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citations omitted); *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake"); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (noting "the general rule that settlements are favored").

14.   Second, settlements should be approved if they fall above the lowest point on[1] the continuum of reasonableness.

7

"[The] responsibility of the bankruptcy judge…is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citations omitted); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *see generally In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved, or a better result reached if litigation was pursued, but rather whether the settlement meets a minimal threshold of reasonableness. *Nellis*, 165 B.R. at 123; *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness") (citations omitted); *In re Tech. for Energy Corp.*, 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985); 10 COLLIER ON BANKRUPTCY ¶ 9019.02, at 9019-4.

15. The Debtors consider the Revised Settlement Agreement to be fair, reasonable, and in the best interests of

8

the Debtors, their creditors and their estates.   First, the Revised Settlement Agreement will augment the estate.   The agreement's funding derives from the Defendants' pre-petition $300,000 held in Mayer Brown's IOLTA account.   Since execution of the agreement will only require half of that money, the other half will be released back into the estate.   Thus, to the extent that the money in that account is not currently considered property of the estate, the Revised Settlement Agreement will result in a net gain of $150,000 to the Debtors' estates.

16.   Second, even if all of the money in the escrow account constitutes property of the estate, the Revised Settlement Agreement is favorable to the Debtors and thus falls well above the minimum required threshold of reasonableness. The agreement will eliminate a potential $28,000,000 claim against the estate for the pre-funded sum of $150,000, thereby expediting administration of the estate.   It will also eliminate the cost of any future litigation, which would be significant given that this is a class action.   In addition, the Committee has voiced its support for the Revised Settlement Agreement, which is independent evidence that it is fair to the Debtors' creditors.   It is thus reasonable for the Debtors to conclude that settling the claim for a fraction of its potential worth is in the best interest of the estate.

9

**B.   The Court Should Grant Relief From The Stay Under Bankruptcy Code Section 362(d) For The Limited Purpose Of Allowing The Indiana Court To Approve the Revised Settlement Agreement Pursuant to Federal Rule 23.**

17.   Bankruptcy Code section 362(a) enjoins all entities from continuing a pre-petition proceeding to recover a pre-petition claim against the Debtors.  The automatic stay thus precludes the Bonner Claimants from proceeding with their class action in the Indiana Court, including seeking approval of the Revised Settlement Agreement in accordance with Federal Rule 23.

18.   Bankruptcy Code section 362(d) requires the Court to modify the automatic stay for "cause."  Section 362(d) does not define "cause," thus "leaving courts to consider what constitutes cause based on the totality of circumstances in each particular case."  *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1991); *see also International Business Machines v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.)*, 938 F.2d 731, 735 (3d Cir. 1991) ("'cause' as used in § 362(d) has no clear definition and is determined on a case-by-case basis").

19.   Here, the totality of the circumstances indicate that it is appropriate to lift the stay for cause for the limited purpose of allowing the Bonner Claimants to seek the

10

Indiana Court's approval of the Revised Settlement Agreement.[3] Cause exists because the Debtors, the Committee and the Bonner Claimants all agree that the settlement is in the best interests of the estate and the class, and Federal Rule 23(e) provides that class action claims may only be settled with court approval.   In addition, Federal Rule 23(e) requires the Indiana Court to oversee the giving of notice to all class members who are to be bound by the settlement.   Thus, even if this Court were to approve the Revised Settlement Agreement pursuant to Bankruptcy Rule 9019, federal law would still require the parties to obtain the Indiana Court's approval as well.   Without such approval, there can be no settlement.

20.   Moreover, the Revised Settlement Agreement will be (and the Original Settlement Agreement was) explicitly conditioned upon the Indiana Court's approval of the form of class notice and final approval of the Settlement Agreement. None of these conditions will be satisfied unless the Court grants relief from the automatic stay for the purpose of allowing the Indiana Court to consider and approve of the Revised Settlement Agreement.

---

[3] The Debtors seek only limited modification of the stay solely to obtain the Indiana Court's approval of the Revised Settlement Agreement.   In the unlikely event that the Indiana Court denies the settlement, the stay would remain intact subject to the Bonner Claimants' right to seek further relief from this Court.

RLF1-3243068-3

21.   Limited modification of the automatic stay is therefore necessary in order to comply with the class action settlement procedures set out in Federal Rule 23.   The Debtors, the Claimants, and the Committee agree that the stay should be modified for that particular purpose.

## NOTICE

22.   Notice of this motion has been provided to (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to the Committee; (3) the Bonner Claimants or their attorneys in accordance with the addresses provided in their proof of claim; and (4) all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the same form as the proposed order attached as Exhibit C:   (i) approving the Debtors' Revised Settlement Agreement with the Bonner Claimants and (ii) granting relief from the automatic stay for the limited purpose of allowing the Indiana Court to approve the Revised Settlement Agreement in accordance with the Federal Rules.

12

Dated: March 4, 2008
Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
Austin K. Barron
Alexandra B. Feldman
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California  94111
(415) 984-8700

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

13