# EXHIBIT A

# EXHIBIT A - BILL OF SALE AND PURCHASE AGREEMENT

THIS BILL OF SALE AND PURCHASE AGREEMENT (the "Agreement") is made and entered into March 5, 2008, by and between PBG Financial Services, Ltd. ("Purchaser") and New Century Mortgage Corporation and its chapter 11 affiliates, as debtors and debtors in possession (collectively, "Seller"), under Case No. 07-10416 pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"):

## RECITALS

A.  Subject to approval by the Bankruptcy Court, Seller hereby sells, conveys, delivers, transfers and assigns to Purchaser all of Seller's rights, title and interest in and to the domain names, trademarks and other assets described on the schedule attached hereto at "Exhibit B," including the graphics, logos, and images associated with those assets (collectively, "Assets").

B.  Purchaser and Seller wish to provide for the transfer of such right, title and interest in and to the Assets for the price and pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Transfer of Assets. Subject to approval by the Bankruptcy Court, Seller hereby sells, assigns, transfers, conveys and delivers to Purchaser all of Seller's rights, title and interest in and to the Assets, if any.

2.  Purchase Price. The purchase price for the Assets is $75,000, which Purchaser shall pay in full to Seller in cash or other immediately available funds upon the execution of this Agreement (the "Purchase Price").

3.  "AS IS - WHERE IS" Transaction. Purchaser expressly acknowledges that Seller's interest in the Assets is being conveyed to Purchaser on an "as is - where is" basis, without recourse and without any warranties or representations of any kind, express or implied, including but not limited to any implied warranty of merchantability, any implied warranty of fitness of the Assets for any particular purpose, and without any obligation on the part of Seller to perform any obligation or cure any default with regard to any of the Assets. Purchaser is relying solely on its own due diligence, and is not relying on any warranty, representation or assistance from Seller.

4.  Approval. The effectiveness of this Agreement and the consummation of the sale contemplated in this Agreement are subject to the approval of the Bankruptcy Court as provided in the Order Establishing Procedures Governing Miscellaneous Asset Sales (Docket No. 704) and Order Establishing Expanded Procedures Governing Miscellaneous Asset Sales (Docket No. 2594). Purchaser shall, at Purchaser's own cost, cooperate in good faith with the reasonable requests of Seller regarding approval of the sale of the Assets, including providing evidence as may be required by the Bankruptcy Court. In the event the Bankruptcy Court does not approve the sale of Assets, Seller shall return the Purchase Price to Purchaser, without interest, within 5 business days after receipt of the Bankruptcy Court's written decision.

    5.    <u>Sale and Other Taxes</u>. Any and all sales or other taxes relating to the sale of Assets, if any, shall be the sole responsibility of Purchaser.

    6.    <u>Miscellaneous</u>.

        6.1.    <u>Attorneys' Fees</u>. In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all fees, costs and expenses, including court costs and reasonable attorneys' fees, as the prevailing party may suffer or incur in pursuit or defense of such action.

        6.2    <u>Termination</u>. Seller may, on written notice to Purchaser, terminate this Agreement at any time before consummation of the sale of Assets, should Seller determine, in its sole and absolute discretion, in consultation with the Official Committee of Unsecured Creditors, that the terms of this Agreement are (i) inadequate or insufficient, (ii) not in conformity with the Bankruptcy Code or (iii) contrary to the best interests of Seller, its estate, and creditors.

        6.3    <u>Bankruptcy Court Jurisdiction</u>. Purchaser and Seller agree that the Bankruptcy Court shall have and retain exclusive jurisdiction over any and all disputes hereunder, and hereby consent to and agree not to contest such exclusive jurisdiction.

        6.4    <u>Entire Agreement</u>. This Agreement contains the entire agreement between Purchaser and Seller relating to the sale of the Assets. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the party to be charged.

        6.5    <u>Modification</u>. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all parties hereto.

        6.6    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

        6.7    <u>Captions</u>. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

        6.8    <u>Waiver</u>. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

        6.9    <u>Binding Effect</u>. This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties hereto.

        6.10    <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the internal laws of the State of Delaware without giving effect to rules governing the conflict of laws and, to the extent applicable, the Bankruptcy Code.

      6.11    <u>Counterparts</u>. This Agreement may be signed in counterparts. The parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the parties agree to undertake to provide original signatures as soon thereafter as reasonable under the circumstances.

      IN WITNESS WHEREOF, Seller and Purchaser have duly executed and delivered this Bill of Sale and Purchase Agreement.

**SELLER:**

**New Century Mortgage Corporation**

By: _____
Name: Jamie Lisac
Title:   Chief Financial Officer

**PURCHASER:**

**PBG Financial Services, Ltd.**

By: _____
Name: Howard Gamer
Title: Partner

3

LA3:1145386.1

6.11 <u>Counterparts</u>. This Agreement may be signed in counterparts. The parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the parties agree to undertake to provide original signatures as soon thereafter as reasonable under the circumstances.

IN WITNESS WHEREOF, Seller and Purchaser have duly executed and delivered this Bill of Sale and Purchase Agreement.

**SELLER:**

**New Century Mortgage Corporation**

By: _____
Name: Jamie Lisac
Title: Chief Financial Officer

**PURCHASER:**

**PBG Financial Services, Ltd.**

By: _____
Name: Howard Gamer
Title: Partner