## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.  In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Balloting Agent at the following address:

### IF SENT BY MAIL

**New Century Claims Processing
c/o XRoads Case Management Services
P.O. Box 8901
Marina Del Rey, CA 90295**

### IF SENT BY MESSENGER OR OVERNIGHT COURIER

**New Century Claims Processing
c/o XRoads Case Management Services
1821 East Dyer Road, Suite 225
Santa Ana, CA 92705**

**Ballots must be *received* by the Balloting Agent by 5:00 p.m., Pacific Time, on April 21, 2008 (the "Voting Deadline").** If a Ballot is received after the Voting Deadline, it will not be counted.  An envelope addressed to the Balloting Agent is enclosed for your convenience. ***Ballots submitted by facsimile will not be accepted.***

2.  You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

3.  Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules that were approved by the Bankruptcy Court with respect to the Class in which your Claim is classified (the "Non-EPD/Breach Claim Tabulation Rules").  The Non-EPD/Breach Claim Tabulation Rules are set forth in the Notice of (a) Deadline for Casting Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Liquidation, (b) Hearing to Consider Confirmation of Proposed Joint Chapter 11 Plan of Liquidation and (c) Related Matters, which is enclosed with the solicitation materials you received along with this Ballot.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion,

pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than April 15, 2008. Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in an amount that differs from the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.

4.    The Ballot does not constitute and will not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last Ballot received by the Balloting Agent before the Voting Deadline will supersede any prior Ballots.

### PLEASE RETURN YOUR BALLOT PROMPTLY

### THE BALLOTING AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE TRANSMISSION

### IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (800) 784-9571

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| **Debtors.** | : | **Jointly Administered** |
| | : | |
| | : | **Objection Deadline: April 18, 2008 at 4:00 p.m. (Eastern Time)** |
| | | **Hearing Date: April 24, 2008 at 10:00 a.m.** |

## NOTICE OF (A) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF MARCH 18, 2008, (B) HEARING TO CONSIDER CONFIRMATION OF JOINT CHAPTER 11 PLAN OF LIQUIDATION AND (C) RELATED MATTERS

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On March 18, 2008, the above-captioned debtors and debtors in

possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the

"Committee" and, together with the Debtors, the "Plan Proponents") filed the First Amended

Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured

Creditors Dated as of March 18, 2008 (as it may be amended, the "Plan"), and on March 18,

2008, the Debtors filed the related Disclosure Statement (as it may be amended, the "Disclosure

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

Statement").[2]

2.      Pursuant to an order of the Court dated March 18, 2008 (the "Disclosure Statement Order"), the Disclosure Statement and certain related materials (collectively, the "Solicitation Materials") have been approved for solicitation of votes to accept or reject the Plan.

3.      A hearing to consider the confirmation of the Plan (the "Confirmation Hearing") will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Third Floor, Wilmington, Delaware 19801 on April 24, 2008 at 10:00 a.m. (Eastern Time).

4.      Pursuant to the Disclosure Statement Order, the Court approved certain procedures for tabulation of votes to accept or reject the Plan. If you are the holder of a Claim against the Debtors as of March 10, 2008 (the Record Date as established in the Disclosure Statement Order) in a Class entitled to vote on the Plan, you have received with this Notice a ballot form (a "Ballot") and voting instructions appropriate for your Claim. The following procedures apply with respect to voting your Claim:

a.      Except as provided in subparagraphs (b) and (c) below, for your vote to accept or reject the Plan to be counted, you must complete all required information on the Ballot, execute the Ballot and return the completed Ballot to the address indicated on the Ballot so that it is received by 5:00 p.m., Pacific Time, on April 21, 2008 (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot or to return a properly completed Ballot so that it is received by the Voting Deadline may disqualify your Ballot and your vote.

b.      If you hold a Claim in Class HC3a, HC3b, HC7, HC10a, HC10b, HC13, OP3a, OP3c, OP6a, OP6c, OP9a, OP9b, OP12, or AL3, your Claim has been temporarily

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to the in the Plan.

2

allowed solely for purposes of voting to accept or reject the Plan in accordance with the

following tabulation rules approved by the Court in the Disclosure Statement Order (the "Non-

EPD/Breach Claim Tabulation Rules"):

> (1) Unless otherwise provided in the Non-EPD/Breach Claim Tabulation Rules described below, a Claim shall be deemed temporarily allowed for voting purposes in an amount equal to (i) the amount of such Claim as set forth in a timely filed Proof of Claim or (ii) if no Claim has been timely filed, the amount of such Claim as set forth in the respective Debtors' Schedules if such claim is listed in the Schedules;
>
> (2) If a Claim is deemed allowed in accordance with the Plan, such Claim shall be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;
>
> (3) If a Claim for which a Proof of Claim has been timely filed is filed as a contingent or unliquidated Claim it shall be temporarily allowed for voting purposes only in the amount of $1.00;
>
> (4) If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;
>
> (5) If the Debtors have filed and served an objection to a Claim by March 28, 2008, which objection has not been resolved, such Claim shall be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection or by order of the Court unless the Court has issued an order estimating or otherwise temporarily allowing the Claim for voting purposes pursuant to a motion filed by the Creditor;
>
> (6) If a Holder of a Claim identifies a Claim amount on its Ballot that is different than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim shall be temporarily allowed for voting purposes in the amount calculated in accordance with the Tabulation Rules;
>
> (7) Any Ballot received from a Holder of a Claim listed as contingent, disputed, or unliquidated in the Debtors' Schedules shall not be counted unless the Holder of such Claim filed a Proof of Claim on or before the applicable Bar Date.

c.     If you hold a Claim in Class OP3b or OP6b, your Claim has been

temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with

the following tabulation rules approved by the Court in the Disclosure Statement Order (the

"EPD/Breach Claim Tabulation Rules"):

> (1) Unless otherwise provided in the EPD/Breach Claim
> Tabulation Rules described below, Claims in Classes OP3b and
> OP6b shall be temporarily allowed for voting purposes in an
> amount equal to the damages determined by the EPD/Breach
> Claim Protocol that is attached as Exhibit B to the Plan;
>
> (2) In order to determine the damage amount referenced in
> paragraph 6(a) above, each Holder of a Claim in Class OP3b or
> OP6b must supply the information requested by the Debtors in
> questionnaires that the Debtors transmitted to Creditors holding
> Claims in these Classes on or about January 23, 2008 (each, a
> "Questionnaire"); if a Holder of such a Claim fails to provide the
> Debtors with the requested information so that the Debtors are
> unable to determine the amount of damages that would be
> calculated pursuant to the EPD/Breach Claim Protocol, absent
> further order of the Court pursuant to the procedures identified
> below, the Claim shall be temporarily allowed for voting purposes
> only in the amount of $1.00;
>
> (3) In addition to the Solicitation Package that shall be mailed to
> each Holder of a Claim in Classes OP3b and OP6b as set forth in
> paragraph 15 of this Order, the Debtors shall mail or cause to be
> mailed to each Holder of a Claim in Classes OP3b or OP6b a copy
> of this Order; a copy of the EPD/Breach Claim Protocol; if the
> Holder's claim has been estimated at $1.00 by the Debtors, a copy
> of the Questionnaire, and a notice (the "EPD/Breach Claim Voting
> Notice") that notifies the Holder (i) of the amount in which the
> Holder's Class OP3b or OP6b Claim shall be temporarily allowed
> for voting purposes as determined by application the EPD/Breach
> Claim Protocol, (ii) that April 11, 2008 at 4:00 p.m. Eastern Time
> is the deadline by which the Holder must object to such amount if
> the Holder believes that the amount in which its Class OP3b or
> OP6b Claim should be temporarily allowed for voting purposes
> differs from that set forth in the EPD/Breach Claim Voting Notice;
> (iii) that April 16, 2008 at 10:00 a.m. Eastern Time is the date and
> time of the hearing at which this Court shall hear objections, if any,
> to the amounts set forth in the EPD/Breach Claim Voting Notices;
> and (iv) if applicable, that the Holder's claim has been estimated at
> $1 because the Debtors have not received a response from the
> Holder to the Questionnaire;

(4) If a Holder of a Claim in Class OP3b or OP6b objects to the amount set forth in the EPD/Breach Claim Voting Notice, such objection may be resolved either (i) by stipulation by the claimant and the Debtors regarding the amount of such Claim for voting purposes or (ii) by the Court at a hearing to be held on April 16, 2008 at 10:00 a.m. Eastern Time (or such other date as is set by the Court); any such objection shall initiate a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure, and the respective burdens on the parties shall be the same as those applicable to a motion brought under Bankruptcy Rule 3018(a);

(5) If a Holder of a Claim in Class OP3b or OP6b does not object to the amount set forth in the EPD/Breach Claim Voting Notice, such Holder shall be deemed to have consented to having its Class OP3b or OP6b Claim temporarily allowed for voting purposes in the amount set forth in the EPD/Breach Claim Voting Notice but shall not be deemed to have waived any other rights in respect of the validity of its Class OP3b or OP6b Claim.

(6) The EPD/Breach Claim Voting Notices shall not be deemed to be substantive objections to any Claim, and nothing in the EPD/Breach Claim Tabulation Rules impairs or otherwise affects the Debtors' rights to object to Class OP3b or Class OP6b Claims.

d.    The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of receiving distributions under the Plan and is without prejudice to the rights of the Debtors in any other context, including the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance and distribution under the Plan. If you wish to challenge the temporary allowance or disallowance of your Claim (other than Class OP3b and OP6b Claims) for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received by April 15, 2008. Unless the Court orders otherwise, your Claim will not be counted for voting purposes in excess of the amount as determined in accordance with the Tabulation Rules.

5

5.     Objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; and (d) be filed with the Court and served so as to be received by (i) the Debtors: New Century Financial Corporation, 3337 Michelson Drive, Suite CN-350, Irvine, CA 92612, Attention: Monika L. McCarthy, Esq.; (ii) counsel to the Debtors: Richards, Layton & Finger, One Rodney Square, 920 King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq. and Michael J. Merchant Esq., and O'Melveny & Myers LLP, 275 Battery Street, 26th Floor San Francisco, California 94111, Attention: Suzzanne S. Uhland, Esq. and Andrew M. Parlen, Esq.; (iii) counsel to the Official Committee of General Unsecured Creditors, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attention: Mark S. Indelicato, Esq. and Mark T. Power, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19891 (Attention: Bonnie Glantz Fatell, Esq. and Regina Stango Kelbon, Esq.); and (iv) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attention: Joseph J. McMahon, Jr., Esq.), no later than 4:00 p.m., Eastern Time, on April 18, 2008. For purposes of filing pleadings in this case, the address of the Court is 824 North Market Street, Third Floor, Wilmington, Delaware 19801.

6.     Additional copies of the Disclosure Statement and the Plan (with all exhibits filed with the Court) by parties in interest may be obtained by contacting New Century TRS Holdings, Inc., et al., c/o XRoads Case Management Services, 1821 East Dyer Road, Suite 225, Santa Ana, CA 92705 (Attention: Kathy Morris; Telephone: (800) 784-9571; Electronic Mail: infocms@xroads.com) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899, Attention: Mark D. Collins, Esq. Copies of the

6

Disclosure Statement and the Plan (with all exhibits filed with the Court) are available for review

at the office of the Clerk of the Bankruptcy Court, 824 North Market Street, Third Floor,

Wilmington, Delaware 19801, and may be reviewed by any party in interest during normal

business hours.  The Plan and Disclosure Statement may also be viewed free of charge at

www.xroadscms.net/newcentury.

       7.     The Confirmation Hearing may be continued from time to time without

further notice other than the announcement of the adjourned date(s) at the Confirmation Hearing

or any continued hearing.

Dated: March 18, 2008                 Respectfully submitted,
Wilmington, Delaware

                                   /s/ Suzzanne S. Uhland
                                   Mark D. Collins (No. 2981)
                                   Michael J. Merchant (No. 3854)
                                   Christopher M. Samis (No. 4909)
                                   RICHARDS, LAYTON & FINGER, P.A.
                                   One Rodney Square
                                   P.O. Box 551
                                   Wilmington, Delaware  19899
                                   (302) 651-7700

                                       and

                                   Suzzanne S. Uhland
                                   Ben H. Logan
                                   Andrew M. Parlen
                                   O'MELVENY & MYERS LLP
                                   275 Battery Street
                                   San Francisco, California 94111
                                   (415) 984-8700

                                   ATTORNEYS FOR DEBTORS AND
                                   DEBTORS IN POSSESSION

LA3:1145523.3

**EXHIBIT C**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., *et al.*, [1] | Case No. 07-10416 (KJC)<br>(Jointly Administered) |
| Debtors. | **Confirmation Hearing Date:  April 24, 2008**<br>**at 10:00 a.m. (ET)** |

### NOTICE OF STATEMENT OF THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS IN SUPPORT OF CONFIRMATION
### OF THE PROPOSED JOINT CHAPTER 11 PLAN OF LIQUIDATION

TO:    ALL CREDITORS AND PARTIES-IN-INTEREST.

The Official Committee of Unsecured Creditors (the "Committee") of New Century TRS

Holdings, Inc., *et al.*, the above-captioned debtors and debtors-in-possession (the "Debtors"), by

its co-counsel, Blank Rome LLP and Hahn & Hessen LLP, hereby files this *Statement of the*

*Official Committee of Unsecured Creditors in Support of Confirmation of the Proposed Joint*

*Chapter 11 Plan of Liquidation* (the "Statement") in the United States Bankruptcy Court for the

District of Delaware, 824 Market Street, Wilmington, Delaware 19801 (the "Bankruptcy

Court").

---

[1]    The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a new Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

**PLEASE TAKE NOTICE THAT** the Plan is a liquidation plan that embodies a number of intricate and complex settlements among the various creditor constituencies which have claims against the different Debtor entities. Attached is a Statement of the Committee in Support of Confirmation of the Joint Plan, which summarizes some of the key components of the Plan and the factors that Plan Proponents considered when formulating the Plan.

**PLEASE TAKE FURTHER NOTICE THAT THE COMMITTEE HAS UNANIMOUSLY DECIDED TO SUPPORT THE PLAN AND RECOMMENDS THAT ALL CREDITORS RETURN THEIR BALLOTS ACCEPTING THE PLAN.**

Dated:    Wilmington, Delaware
        March 17, 2008

        BLANK ROME LLP

    By:    /s/ Bonnie Glantz Fatell
        Bonnie Glantz Fatell (No. DE No. 3809)
    1201 Market Street, Suite 800
    Wilmington, Delaware  19801
    (302) 425-6400 - Telephone
    (302) 425-6464 – Facsimile

    130 North 18th Street
    Philadelphia, PA 19103
    Regina Stango Kelbon, Esq.
    (215) 569-5500

        -and-

    **HAHN & HESSEN LLP**
    488 Madison Avenue
    New York, New York 10022
    Mark S. Indelicato, Esq.
    Mark T. Power, Esq.
    Janine M. Cerbone, Esq.
    JCerbone@hahnhessen.com
    (212) 478-7200

    CO-COUNSEL TO THE OFFICIAL COMMITTEE OF
    UNSECURED CREDITORS OF DEBTOR NEW CENTURY
    TRS HOLDINGS, INC., *et al*

## STATEMENT OF THE COMMITTEE IN
## SUPPORT OF CONFIRMATION OF THE JOINT PLAN[1]

The Plan embodies a number of intricate and complex settlements among the various creditor constituencies that have claims against the different Debtor entities. These settlements are interrelated and cannot be modified without impacting the other compromises embodied in the Plan. The members of the Committee played an active role with the Debtors in analyzing the various positions of the different creditor constituencies and in negotiating the terms of the consensual Plan. After several months of analysis and negotiations, the Committee voted unanimously to approve the terms of the Plan and recommends that all creditors cast their ballots in favor of the Plan. The purpose of this Summary is to explain to creditors in general terms the material factors that the Committee members considered when deciding to support the Plan.

**This memorandum is intended to only be a summary of relevant factors considered by the Committee in deciding to support the Plan, not a detailed explanation of all factors considered by or the deliberations of the Committee. When deciding whether or not to vote for or against the Plan, creditors should review and rely on the Plan and the Disclosure Statement, the terms of which govern over this Summary.[2]**

### The Composition of the Committee

The Office of the United States Trustee appointed a seven member Committee. The Committee is comprised of a balanced cross-section of the different creditor constituencies in these cases, with different Committee members holding Claims against the Holding Company Debtors; Claim against the Operating Debtors; EPD/Breach Claims against NC Capital; and a Claim that is subject to the Multi-Debtor Claim Protocol because more than one Debtor is jointly and severally liable for such Claim.

### The Starting Point of the Committee's Analysis

The starting point of the Committee's analysis was recognizing that these are liquidating chapter 11 cases with a finite number of assets remaining to be liquidated. The Debtors' Disclosure Statement projects that aggregate asset recoveries (other than litigation recoveries), after deducting anticipated administrative expenses, will range between $56.8 million and $194.4 million. The Disclosure Statement estimates that general unsecured claims, a significant portion of which are presently unliquidated, (excluding intercompany claims) should ultimately be allowed between $1.13 billion and $2.12 billion. Thus, the Disclosure Statement projects that, excluding any litigation recoveries and without giving effect to any increased determined distribution amounts assigned to certain claims that are subject to the Multi-Debtor Protocol,

---

[1]  All undefined capitalized terms contained herein shall have the meanings ascribed to such terms in the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and The Official Committee of Unsecured Creditors dated as of March 11, 2008 (the "Plan").

[2]  Nothing contained herein is intended to constitute a waiver of the Committee's attorney-client privilege or confidentiality, which are expressly reserved. All settlement negotiations in which the Committee was involved are governed by Rule 408 of the Federal Rules of Evidence.

distributions to Creditors holding Allowed Unsecured Claims are expected to be in the following recovery ranges: Creditors of Holding Company Debtors – 1.9%-14.3%; Creditors of Operating Debtors – 3.5%-23.6%; EPD Breach Creditors with Claims against NC Capital - 1.8%-11.8%; Creditors of Home123 - .9% - 5.9%; and Creditors holding Claims against Access Lending 11.7%-31.3%.

The members of the Committee also recognized that significant portions of the Claims asserted against the Debtors are of a similar nature and type, such as the EPD/Breach Claims asserted by the whole loan purchasers and trustees of securitization trusts and the deficiency claims asserted by the repurchase counter-parties under their repurchase agreements. Consequently, as modifications to the proposed treatment of those classes of Claims are made, the tide of Claims is likely to rise or fall in unison, resulting in such Creditors not receiving a significantly improved benefit vis-à-vis similarly situated Creditors in the class.

The Committee was also very concerned about the significant administrative costs being incurred by these estates. The Committee believes that confirmation of a consensual Plan will result in a significant and immediate reduction in the on-going administrative expenses being incurred by these estates. Unsecured creditors should benefit from such reductions in expenses.

Lastly, the Committee placed a high value on Creditors receiving their distributions as quickly as possible. The Plan compromises several major issues, including streamlining the resolution through the EPD/Breach Protocol of highly complex disputes over alleged breaches and damage assessments involving the sale or transfer of hundreds of thousands of loans with unpaid principal balances in the tens of billions of dollars. The Plan also settles issues concerning recharacterization of intercompany claims and piercing the corporate veils of certain Debtor entities and complex contractual disputes as well as potential fraudulent transfer issues between Debtors entities. These issues are highly complex and would be extremely expensive and time-consuming for both the estates and individual Creditors if the issues had to be litigated to a final conclusion in the Bankruptcy Court.

## The Compromises and Settlements Contained in the Plan

The Professionals for the Debtors and the Committee analyzed the Debtors' accounting books and corporate records to determine whether it was appropriate to substantively consolidate. either completely or partially, the assets and liabilities of the various Debtor entities, under the guidelines espoused in the Third Circuit Court of Appeals' decision in *In re Owens Corning*, 419 F.3rd 195, 211 (3rd Cir. 2005) *as amended by* 2005 U.S. App. LEXIS 18043 (3d Cir. Aug. 23, 2005), *cert. denied*, 126 S.Ct. 1910 (2006).

In addition to analyzing the appropriateness of the Debtors' estates being substantively consolidated, the Debtors and the Committee also inquired into numerous other issues involving the Assets and liabilities of the separate Debtors' estates, including, for example, whether (i) Assets listed as Assets on a certain Debtor's books and records were properly recorded as Assets of that Debtor, (ii) a Debtor which funded the acquisition of certain Assets that were then recorded on the books as being owned by a different Debtor for administrative or other reasons was proper, and (iii) certain intercompany claims should be recharacterized as capital

contributions, not debt obligations, as there appeared to be no or little evidence that the Debtors ever paid in the past or intended to repay in the future such intercompany claims.

The Debtors and the Committee also looked into other material issues not reflected on the Debtors' books and records that would have a direct impact on Creditor recoveries, such as (i) what is the proper method for allocating administrative expenses incurred and to be incurred among the various Debtors' estates, and (ii) how to allocate potential recoveries from assets not recorded on the various Debtor's books and records, such as tax refunds and anticipated litigation recoveries, among the various Debtor estates.

The Plan reflects the Debtors' and Committee's efforts to comply with the deconsolidation mandates of *Owens Corning,* while at the same time recognizing and resolving as part of a global compromise the various intercompany and intercreditor disputes described above. This included, for example, establishing in the Plan (described at Section IV.A.3.b of the Disclosure Statement) the Multi-Debtor Claim Protocol, which increases by a specified factor the claim of certain Creditors to the extent certain other Debtors are jointly and/or severally liable for such Claim. The Multi-Debtor Claim Protocol seeks to mitigate the potential adverse affect that a consolidation of certain Debtor entities into the Holding Company Debtors and certain other Debtor entities into the Operating Company Debtors may have. The terms of the other compromises are contained in the Plan and described in the Disclosure Statement.

## The EPD/Breach Protocol Constitutes a Key Component of the Plan

As explained in greater detail in the Disclosure Statement, the EPD/Breach Protocol is a key component of the Plan. The protocol provides a streamlined method for fixing the allowed amount of claims asserting either breaches by the Debtors for early payment defaults or breaches of representations and warranties under individual Creditor's loan purchase agreements. If the EPD/Breach Protocol is not approved, the Plan Proponents anticipate that the Debtors' estates and individual creditors will incur millions of dollars of expenses and time-consuming delays litigating issues concerning whether the alleged breaches actually qualify as breaches under the operative documents, and, if so, whether the damages asserted are appropriate. In addition, a number of whole loan purchasers and securitization trustees have asserted large unliquidated claims for breaches that exist but have not yet been discovered since such breaches are typically discovered only after the underlying loan goes into default and the servicer discovers the alleged breach. The Committee believes that the cost and anticipated delay in trying to litigate before the Bankruptcy Court estimation hearings to determine each Creditor's allowed claim amount for existing, but unknown breaches based on pools of thousands or tens of thousands of loans would be prohibitive. The EPD/Breach Protocol provides a streamlined, efficient method for estimating these claims based on a formula to be applied uniformly to all EPD/Breach Creditors.

Another key component of the Plan is the settlement of the dispute between the majority of the Holders of EPD/Breach Claims and the creditors of NCMC. The dispute arises out of the fact that a vast majority of the Holders of EPD/Breach Claims contracted with NC Capital, not NCMC, for the purchase and sale (or transfer to securitization trusts) of mortgage loans. NC Capital is a Debtor entity that has no material Assets. The Creditors of NC Capital have argued however, that NCMC, which in most cases originated and then "sold" the mortgage loans to NC Capital at the time of NC Capital's sale of the loans to the Creditors is contractually liable for the

representations and warranties made by NC Capital to the mortgage loan purchasers. Alternatively, EPD/Breach Claimants have asserted that as creditors of NC Capital, the estate has substantial fraudulent conveyance/piercing the corporate veil claims against NCMC (and possibly NCFC) because NCMC failed to provide NC Capital with reasonable consideration at the time of the sale in exchange for NC Capital incurring substantial repurchase obligations to whole loan purchasers and securitization trustees. This dispute is settled in the Plan by providing that the Holders of Allowed EPD/Breach Claims against NC Capital (based on the application of the EPD/Breach Protocol) shall have allowed claims against NCMC discounted by 50%.

The Holders of EPD/Breach Claims also asserted that the EPD/Breach Protocol will result in the allowed amount of their claims being reduced to amounts substantially lower than they would otherwise be entitled to. In an effort to obtain such Holders' support for the EPD/Breach Protocol, the Plan provides for a sharing of any the Litigation Recoveries 27.5%, 27.5% and 45% to Holders of Allowed Claims against the Holding Company Debtors, Holders of Allowed Claims against the Operating Debtors and Holders of EPD/Breach Claims, respectively. This was also a key component of the compromises contained in the Plan.

**EXHIBIT D**

**EPD/ BREACH PROTOCOL[1]**

I.     EPD/FPD Claims.

    A.     Methodology.

           EPD and FPD Claims are Claims based on a provision in a loan purchase agreement that obligated a Debtor to repurchase a loan if the borrower defaulted on his or her first loan payment after the loan was sold (a First Payment Default or "FPD") or defaulted on a payment due within a period of time (usually 30 or 60 days) after the loan was sold (an Early Payment Default or "EPD"). Loan purchase agreements varied as to whether the EPD/FPD provision was set forth as a standalone provision of the loan sale agreement or was styled as a representation or warranty. A Claim based on either is treated as an EPD/FPD Claim for purposes of the protocol.

           Each Creditor that establishes a valid EPD or FPD under the applicable loan purchase agreement will receive a distribution in the Plan premised upon damages assessed based upon the borrower payment history and the unpaid principal balance ("UPB") for the loan, in both cases measured as of August 31, 2007, according to the following grid:[2]

- Current: 0% of UPB
- 31 – 60 days delinquent: 15% of UPB
- 61 – 90 days delinquent: 20% of UPB
- 91 or more days delinquent: 30% of UPB
- Borrower in bankruptcy: 35% of UPB

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 1, 2008.
[2] The applicable category that would lead to the highest calculation takes precedence. For example, if as of 8/31/07 a loan was 61 days delinquent and the borrower was in bankruptcy, the applicable percentage is 35% of UPB.

- In foreclosure[3]:  40% of UPB
- Real estate owned (including liquidations of such real estate )("REO"): 45% of UPB

If the Creditor sold the loan prior to August 31, 2007 and does not know the loan status as of August 31, 2007, the damage assessment will be measured as of the date of sale.  If a loan has been foreclosed, the measurement will consider the property to be REO and the measurement will be based on the UPB at the time of foreclosure.

If subsequent to the sale of the loan by a Debtor and prior to August 31, 2007, the borrower and the owner of a loan agreed to modify the payment (principal or interest) terms of the loan, then the loan will be treated under the next most severe category in the grid.  For example, if a Creditor and borrower agreed in April 2007 to relax the borrower's payment obligations under a loan, and on August 31, 2007 the borrower was current on the modified schedule, this loan will be treated as though the borrower was 31 – 60 days delinquent. Similarly, if on August 31, 2007 that same borrower was 40 days delinquent under the modified payment schedule, the loan will be treated as though the borrower was 61 – 90 days delinquent.

In order to establish the validity of the EPD/FPD Claim and to apply the grid, each EPD/FPD claimant must provide to the Debtors information set forth in questionnaire for loans on which it asserts an EPD/FPD claim.  This information includes:

- The payment history for each loan for which an EPD or FPD is asserted in electronic format, including identification of the payment status as of August 31, 2007.
- Identification of the loan purchase agreement pursuant to which the loan was sold by a Debtor, including a copy of the relevant EPD/FPD payment

---

[3] In foreclosure means that the period set in a notice of intent to foreclose during which the borrower has the ability

provisions (note: the length of time for EPD and FPD claims varied among the master loan purchase agreements).

## II.    BREACH CLAIMS.

### A.    Methodology.

The damages resulting from breach Claims will be calculated based upon the simplifying assumptions that: (i) 1.5% of the loans in any pool will at some point be subject to a breach that would have caused the selling Debtor to have repurchased the loan, (ii) the "seasoning" of loans will be taken into account so that this 1.5% incidence is spread over the life of the pool based on the Debtors' historic data concerning the timing of when breach claims are asserted, and (iii) damages resulting from breaches will be set at 30% of the UPB of the loan as of August 31, 2007. The following table sets forth the calculation methodology:

| Year | Quarter | % Incidence | Damages |
|---|---|---|---|
| 2007 | 1 Qtr | 1.500% | 0.450% |
| 2006 | 4 Qtr | 1.200% | 0.360% |
| 2006 | 3 Qtr | 1.120% | 0.336% |
| 2006 | 2 Qtr | 0.850% | 0.255% |
| 2006 | 1 Qtr | 0.680% | 0.204% |
| 2005 | 4 Qtr | 0.530% | 0.159% |
| 2005 | 3 Qtr | 0.360% | 0.108% |
| 2005 | 2 Qtr | 0.180% | 0.054% |
| 2005 | 1 Qtr | 0.140% | 0.042% |
| 2004 | 4 Qtr | 0.100% | 0.030% |
| 2004 | 3 Qtr | 0.085% | 0.026% |
| 2004 | 2 Qtr | 0.065% | 0.020% |
| 2004 | 1 Qtr | 0.060% | 0.018% |
| 2003 | 4 Qtr | 0.053% | 0.016% |
| 2003 | 3 Qtr | 0.045% | 0.014% |
| 2003 | 2 Qtr | 0.035% | 0.011% |
| 2003 | 1 Qtr | 0.025% | 0.008% |
| 2002 | 4 Qtr | 0.022% | 0.007% |
| 2002 | 3 Qtr | 0.018% | 0.005% |
| 2002 | 2 Qtr | 0.015% | 0.005% |
| 2002 | 1 Qtr | 0.012% | 0.004% |
| 2001 and Earlier | | 0.006% | 0.002% |

to bring the loan current has expired.

- 3 -

If an applicable loan purchase agreement between a Debtor and a non-affiliate of the Debtors did not contain an EPD provision, but did allow the purchaser to cause a Debtor to repurchase loans based on breaches of other types of representations and warranties, the damage calculations set forth in the foregoing table will be multiplied by 1.5667.

Damages, for purposes of distributions under the Plan, will be measured by applying the percentage factor in the final column of this table against the August 31, 2007 UPB of the loans purchased from a Debtor; provided, however, that in no case will the damage calculation for any pool be less than $5,000.

If the Creditor sold the loan prior to August 31, 2007 and does not know the UPB as of August 31, 2007, the damage assessment will be based on the UPB as of the date of sale. If a loan has been foreclosed, the measurement will be based on the UPB at the time of foreclosure. Loans that were paid-in-full or repurchased or replaced by one of the Debtors shall not be included in measuring the applicable UPB.

B.    Interaction with EPD/FPD Claims.

EPD/FPD claims will take precedence over breach claims. Thus, to the extent that a creditor establishes a valid EPD or FPD claim for a loan, that loan's UPB as of August 31, 2007 will be subtracted from the pool of loans for which breaches are computed.

This methodology is designed to avoid the need to resolve disputes over individual breach claims that are presently being asserted and to establish a methodology for assessing unliquidated claims based upon breaches that come to the fore when borrowers default in the future. Accordingly, this statistical approach will be used both with respect to individual breach claims presently being asserted by creditors and to assess unliquidated breaches to be discovered in the future; both types of breaches are subsumed within the statistical analysis set forth above.

- 4 -

III.   Underline: Information.

In order to receive a distribution under the Plan, each Holder of an EPD/Breach Claim must supply information to the Debtors that enables the Debtors to calculate the damages that result from this protocol and to ensure that multiple creditors are not asserting overlapping claims.  That information will be set forth in a questionnaire that the Debtors will submit to each Creditor that has asserted an EPD/Breach Claim.

Note: Nothing contained herein shall affect or impair in any way any other Claims, causes of actions or rights that the Holders of EPD/Breach Claims, the Debtors' Estates, and/or the Liquidating Trust may have against each other.

- 5 -

**<u>EXHIBIT E</u>**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | Objection Deadline: April 18, 2008 at 4:00 p.m. |
| | : | Eastern |
| | : | Hearing Date: April 24, 2008 at 10:00 a.m. |
| | : | |

## NOTICE OF NONVOTING STATUS WITH RESPECT
## TO HOLDERS OF CLAIMS IN CLASSES HC1, HC2, HC5, HC6, HC8, HC9, HC11, HC12, OP1, OP2, OP4, OP5, OP7, OP8, OP10, OP11, AL1 AND AL2

### AS A HOLDER OF A CLAIM IN CLASS ___, PLEASE TAKE NOTICE THAT:

On March 18, 2008, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approved the Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 (the "Disclosure Statement"), for use by the above-captioned debtors and debtors in possession (collectively, the "Debtors") in soliciting acceptances or rejections of the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 (the "Plan") from Holders of certain Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

**Class HC1 - Priority Claims Against New Century Financial Corporation ("NCFC")**
**YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS HC1 CLAIM AND NCFC (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE**

---

[1] The Debtors are the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS HC1 PRIORITY CLAIMS AGAINST NCFC ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class HC2 - Secured Claims Against NCFC
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS HC2 SECURED CLAIMS AGAINST NCFC SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY NCFC (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS HC2 SECURED CLAIMS AGAINST NCFC ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class HC5 - Priority Claims Against New Century TRS Holdings, Inc. ("TRS Holdings")
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS HC5 CLAIM AND TRS HOLDINGS (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS HC5 PRIORITY CLAIMS AGAINST TRS HOLDINGS ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.


Class HC6 - Secured Claims Against TRS Holdings

YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS HC6 SECURED CLAIMS AGAINST TRS HOLDINGS  SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY TRS HOLDINGS (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS HC6 SECURED CLAIMS AGAINST TRS HOLDINGS ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

**Class HC8 - Priority Claims Against New Century Credit Corporation ("NC Credit")**
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS HC8 CLAIM AND NC CREDIT (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS HC8 PRIORITY CLAIMS AGAINST NC CREDIT ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

**Class HC9 - Secured Claims Against NC Credit**
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS HC9 SECURED CLAIMS AGAINST NC CREDIT  SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER,

(b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY NC CREDIT (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS HC9 SECURED CLAIMS AGAINST NC CREDIT ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class HC11 - Priority Claims Against New Century Residual IV Corporation ("NC Residual IV")
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS HC11 CLAIM AND NC RESIDUAL IV (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS HC11 PRIORITY CLAIMS AGAINST NC RESIDUAL IV ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class HC12 - Secured Claims Against NC Residual IV
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS HC12 SECURED CLAIMS AGAINST NC RESIDUAL IV  SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY NC RESIDUAL IV (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS HC612 SECURED CLAIMS AGAINST NC RESIDUAL IV ARE

CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class OP1 - Priority Claims Against New Century Mortgage Corporation ("NCMC")
YOU ARE NOT IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS OP1 CLAIM AND NCMC (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE. PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS OP1 PRIORITY CLAIMS AGAINST NCMC ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class OP2- Secured Claims Against NCMC
YOU ARE NOT IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS OP2 SECURED CLAIMS AGAINST NCMC SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY NCMC (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER. PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS OP2 SECURED CLAIMS AGAINST NCMC ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class OP4 - Priority Claims Against New Century Capital Corporation ("NC Capital")
YOU ARE NOT IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS OP4 CLAIM AND NC CAPITAL (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT

TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS OP4 PRIORITY CLAIMS AGAINST NC CAPITAL ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

<u>Class OP5 - Secured Claims Against NC Capital</u>
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS OP5 SECURED CLAIMS AGAINST NC CAPITAL  SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY NC CAPITAL (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER. PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS OP5 SECURED CLAIMS AGAINST NC CAPITAL ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

<u>Class OP7 - Priority Claims Against Home123 Corporation ("Home123")</u>
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS OP7 CLAIM AND HOME123 (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS OP7 PRIORITY CLAIMS AGAINST HOME123 ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

<u>Class OP8 - Secured Claims Against Home123</u>

YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS OP8 SECURED CLAIMS AGAINST HOME123 SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY HOME123 (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS OP8 SECURED CLAIMS AGAINST HOME123 ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class OP10 - Priority Claims Against NC Asset Holding, L.P. ("NC Asset Holding"), NC Deltex, LLC ("NC Deltex"), New Century R.E.O. Corp. ("NC REO"), New Century R.E.O. II Corp. ("NC REO II"), New Century R.E.O. III Corp. ("NC REO III"), NC Residual III Corporation ("NC Residual III"), New Century Mortgage Ventures, LLC ("NCM Ventures"), and NCoral, L.P. ("NCoral")
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS OP10 CLAIM AND THE DEBTOR SUCH CLAIM IS AGAINST (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST, AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE.  PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLASS OP10 PRIORITY CLAIMS AGAINST NC ASSET HOLDING, NC DELTEX, NC REO, NC REO II, NC REO III, NC RESIDUAL III, NCM VENTURES, OR NCORAL ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

Class OP11 - Secured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, or NCoral
YOU ARE NOT IMPAIRED UNDER THE PLAN.  PURSUANT TO TERMS OF THE PLAN, HOLDERS OF ALLOWED CLASS OP11 SECURED CLAIMS AGAINST NC ASSET HOLDING, NC DELTEX, NC REO, NC REO II, NC REO III, NC RESIDUAL

III, NCM VENTURES, OR NCORAL SHALL, AT THE OPTION OF THE
LIQUIDATING TRUSTEE, EITHER (i) HAVE THEIR CLAIMS REINSTATED AND
RENDERED UNIMPAIRED IN ACCORDANCE WITH SECTION 1124(2) OF THE
BANKRUPTCY CODE OR (ii) RECEIVE, IN FULL SATISFACTION, SETTLEMENT,
AND RELEASE OF, AND IN EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH
IN THE AMOUNT OF YOUR ALLOWED SECURED CLAIM AGAINST NCFC ON
THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE
DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS
PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH
CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE
LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE
DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS
PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE
AGREED UPON BY THE DEBTOR SUCH CLAIM IS AGAINST (IF PRIOR TO THE
EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE
DATE) AND SUCH HOLDER. PURSUANT TO SECTION 1126(f) OF THE
BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS OP11
SECURED CLAIMS AGAINST NC ASSET HOLDING, NC DELTEX, NC REO, NC
REO II, NC REO III, NC RESIDUAL III, NCM VENTURES, OR NCORAL ARE
CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND,
THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

**Class AL1 - Priority Claims Against New Century Warehouse Corporation ("Access
Lending")**
YOU ARE NOT IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE
PLAN, UNLESS THE HOLDER OF AN ALLOWED CLASS AL1 CLAIM AND ACCESS
LENDING (IF PRIOR TO OR ON THE EFFECTIVE DATE) OR THE LIQUIDATING
TRUST (IF AFTER THE EFFECTIVE DATE) AGREE TO A DIFFERENT
TREATMENT, THE LIQUIDATING TRUSTEE SHALL PAY EACH SUCH HOLDER
OF AN ALLOWED PRIORITY CLAIM, IN FULL, IN CASH, WITHOUT INTEREST,
AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE. PURSUANT TO
SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED
CLASS AL1 PRIORITY CLAIMS AGAINST ACCESS LENDING ARE
CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND,
THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.

**Class AL2 - Secured Claims Against Access Lending**
YOU ARE NOT IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE
PLAN, HOLDERS OF ALLOWED CLASS AL2 SECURED CLAIMS AGAINST
ACCESS LENDING SHALL, AT THE OPTION OF THE LIQUIDATING TRUSTEE,
EITHER (i) HAVE THEIR CLAIMS REINSTATED AND RENDERED UNIMPAIRED
IN ACCORDANCE WITH SECTION 1124(2) OF THE BANKRUPTCY CODE OR (ii)
RECEIVE, IN FULL SATISFACTION, SETTLEMENT, AND RELEASE OF, AND IN
EXCHANGE FOR, SUCH SECURED CLAIMS (a) CASH IN THE AMOUNT OF YOUR
ALLOWED SECURED CLAIM AGAINST NCFC ON THE LATER OF THE INITIAL
DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM

**BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, (b) THE PROPERTY OF THE ESTATE WHICH CONSTITUTES COLLATERAL FOR SUCH ALLOWED SECURED CLAIM ON THE LATER OF THE INITIAL DISTRIBUTION DATE UNDER THE PLAN AND THE DATE SUCH CLAIM BECOMES AN ALLOWED CLAIM, OR AS SOON AS PRACTICABLE THEREAFTER, OR (c) SUCH OTHER TREATMENT AS MAY BE AGREED UPON BY ACCESS LENDING (IF PRIOR TO THE EFFECTIVE DATE) OR THE LIQUIDATING TRUST (IF AFTER THE EFFECTIVE DATE) AND SUCH HOLDER. PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED CLAIMS IN CLASS AL2 SECURED CLAIMS AGAINST ACCESS LENDING ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.**

PLEASE TAKE FURTHER NOTICE that a hearing to consider confirmation of the Plan will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Third Floor, Wilmington, Delaware 19801 on April 25, 2008 at 10:00 a.m. (Eastern Time) (the "Confirmation Hearing"). The Confirmation Hearing may be continued from time to time without further notice except for an announcement made at the Confirmation Hearing or any adjourned confirmation hearing. Pursuant to Rule 3017(a) of the Federal Rules of Bankruptcy Procedure and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, any party requesting a copy of the Disclosure Statement or the Plan shall furnish their request in writing to New Century TRS Holdings, Inc., et al., c/o XRoads Case Management Services, 1821 East Dyer Road, Suite 225, Santa Ana, CA 92705, Attention: Kathy Morris and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899, Attention: Mark D. Collins, Esq. The Debtors will, at their own expense, provide a copy of the Disclosure Statement or Plan to the requesting party.

Objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; and (d) be filed with the Court and served so that they are received by (i) the Debtors: New Century Financial Corporation, 3337 Michelson Drive, Suite CN-350, Irvine, CA 92612, Attention: Monika L. McCarthy, Esq.; (ii) counsel to the Debtors: Richards, Layton & Finger, One Rodney Square, 920 King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq. and Michael J. Merchant Esq., and O'Melveny & Myers LLP, 275 Battery Street, 26th Floor San Francisco, California 94111, Attention: Suzzanne S. Uhland, Esq. and Andrew M. Parlen, Esq.; (iii) counsel to the Official Committee of General Unsecured Creditors, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attention: Mark S. Indelicato, Esq. and Mark T. Power, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19891 (Attention: Bonnie Glantz Fatell, Esq. and Regina Stango Kelbon, Esq.); and (iv) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attention: Joseph J. McMahon, Jr., Esq.), no later than 4:00 p.m., Eastern Time, on April 18, 2008. For the purpose of filing pleadings in these cases, the address of the Court is 824 North Market Street, Third Floor, Wilmington, Delaware 19801.

Dated: March 18, 2008
Wilmington, Delaware

/s/ *Suzzanne S. Uhland*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
(302) 651-7700

and

Suzzanne S. Uhland
Ben H. Logan
Andrew M. Parlen
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

10

**EXHIBIT F**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[2] | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | Objection Deadline: April 18, 2008 at 4:00 p.m. |
| | : | Eastern |
| | : | Hearing Date: April 24, 2008 at 10:00 a.m. |
| | : | |

NOTICE OF NONVOTING STATUS WITH RESPECT
TO HOLDERS OF CLAIMS AND INTERESTS IN CLASSES HC4A, HC4B, HC4C,
HC4D, AND HC4E

**AS A HOLDER OF A CLAIM OR INTEREST CLASS \_\_\_, PLEASE TAKE
NOTICE THAT:**

On March 18, 2008, the United States Bankruptcy Court for the District of Delaware (the
"Bankruptcy Court") approved the Disclosure Statement for the First Amended Joint Chapter 11
Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as
of March 18, 2008 (the "Disclosure Statement"), for use by the above-captioned debtors and
debtors in possession (collectively, the "Debtors") in soliciting acceptances or rejections of the
First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee
of Unsecured Creditors Dated as of March 18, 2008 (the "Plan") from Holders of certain
Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

<u>Class 4a - Series A Preferred Stock Interests</u>
**YOU ARE IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN,
HOLDERS OF ALLOWED CLASS 4a SERIES A PREFERRED STOCK INTERESTS IN
NCFC SHALL RECEIVE NOTHING UNDER THE PLAN ON ACCOUNT OF SUCH**

---

[2] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a
Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware
corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New
Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a
California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a
California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California
corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC
Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New
Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New
Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort
Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage,
Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a
Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a
Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

INTERESTS, AND SHARES HELD BY EACH HOLDER OF A SERIES A PREFERRED
STOCK INTEREST WILL BE CANCELLED PURSUANT TO THE PLAN. PURSUANT
TO SECTION 1126(g) OF THE BANKRUPTCY CODE, THE HOLDERS OF SERIES A
PREFERRED STOCK INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE
VOTED TO REJECT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE
SOLICITED.

**Class 4b - Series A 510(b) Claims**
YOU ARE IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN,
HOLDERS OF ALLOWED CLASS 4b SERIES A 510(b) CLAIMS AGAINST NCFC
SHALL RECEIVE NO DISTRIBUTION UNDER THE PLAN. PURSUANT TO
SECTION 1126(g) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED
CLASS 4a SERIES A 510(b) CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE
VOTED TO REJECT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE
SOLICITED.

**Class 4c - Series B Preferred Stock Interests**
YOU ARE IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN,
HOLDERS OF ALLOWED CLASS 4c SERIES B PREFERRED STOCK INTERESTS
OF NCFC SHALL RECEIVE NOTHING UNDER THE PLAN ON ACCOUNT OF SUCH
INTERESTS, AND SHARES HELD BY EACH HOLDER OF A SERIES B PREFERRED
STOCK INTEREST WILL BE CANCELLED PURSUANT TO THE PLAN. PURSUANT
TO SECTION 1126(g) OF THE BANKRUPTCY CODE, THE HOLDERS OF SERIES B
PREFERRED STOCK INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE
VOTED TO REJECT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE
SOLICITED.

**Class 4d - Series B 510(b) Claims**
YOU ARE IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN,
HOLDERS OF ALLOWED CLASS 4d SERIES B 510(b) CLAIMS AGAINST NCFC
SHALL RECEIVE NO DISTRIBUTION UNDER THE PLAN. PURSUANT TO
SECTION 1126(g) OF THE BANKRUPTCY CODE, THE HOLDERS OF ALLOWED
CLASS 4a SERIES B 510(b) CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE
VOTED TO REJECT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE
SOLICITED.

**Class 4e - Common Stock Interests and Common Stock 510(b) Claims**
YOU ARE IMPAIRED UNDER THE PLAN. PURSUANT TO TERMS OF THE PLAN,
HOLDERS OF ALLOWED CLASS 4e COMMON STOCK INTERESTS IN NCFC AND
COMMON STOCK 510(b) CLAIMS AGAINST NCFC SHALL RECEIVE NOTHING
UNDER THE PLAN ON ACCOUNT OF SUCH INTERESTS AND CLAIMS, AND
SHARES HELD BY EACH HOLDER OF A COMMON STOCK INTEREST WILL BE
CANCELLED PURSUANT TO THE PLAN. PURSUANT TO SECTION 1126(g) OF
THE BANKRUPTCY CODE, THE HOLDERS OF COMMON STOCK INTERESTS
AND COMMON STOCK 510(b) CLAIMS ARE CONCLUSIVELY PRESUMED TO

**HAVE VOTED TO REJECT THE PLAN, AND, THEREFORE, YOUR VOTES WILL NOT BE SOLICITED.**

PLEASE TAKE FURTHER NOTICE that a hearing to consider confirmation of the Plan will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Third Floor, Wilmington, Delaware 19801 on April 25, 2008 at 10:00 a.m. (Eastern Time) (the "Confirmation Hearing"). The Confirmation Hearing may be continued from time to time without further notice except for an announcement made at the Confirmation Hearing or any adjourned confirmation hearing. Pursuant to Rule 3017(a) of the Federal Rules of Bankruptcy Procedure and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, any party requesting a copy of the Disclosure Statement or the Plan shall furnish their request in writing to New Century TRS Holdings, Inc., et al., c/o XRoads Case Management Services, 1821 East Dyer Road, Suite 225, Santa Ana, CA 92705, Attention: Kathy Morris and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899, Attention: Mark D. Collins, Esq. The Debtors will, at their own expense, provide a copy of the Disclosure Statement or Plan to the requesting party.

Objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; and (d) be filed with the Court and served so that they are received by (i) the Debtors: New Century Financial Corporation, 3337 Michelson Drive, Suite CN-350, Irvine, CA 92612, Attention: Monika L. McCarthy, Esq.; (ii) counsel to the Debtors: Richards, Layton & Finger, One Rodney Square, 920 King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq. and Michael J. Merchant Esq., and O'Melveny & Myers LLP, 275 Battery Street, 26th Floor San Francisco, California 94111, Attention: Suzzanne S. Uhland, Esq. and Andrew M. Parlen, Esq..; (iii) counsel to the Official Committee of General Unsecured Creditors, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attention: Mark S. Indelicato, Esq. and Mark T. Power, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19891 (Attention: Bonnie Glantz Fatell, Esq. and Regina Stango Kelbon, Esq.); and (iv) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attention: Joseph J. McMahon, Jr., Esq.), no later than 4:00 p.m., Eastern Time, on April 18, 2008. For the purpose of filing pleadings in these cases, the address of the Court is 824 North Market Street, Third Floor, Wilmington, Delaware 19801.

Dated:  March 18, 2008
Wilmington, Delaware

/s/ *Suzzanne S. Uhland*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
(302) 651-7700

　　　　　and

Suzzanne S. Uhland
Ben H. Logan
Andrew M. Parlen
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# **EXHIBIT G**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416 (KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | Objection Deadline: April 18, 2008 at 4:00 |
| | : | p.m. (Eastern Time) |
| | : | Hearing Date: April 24, 2008 at 10:00 a.m. |
| | : | (Eastern Time) |
| | : | |

## NOTICE OF (A) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF MARCH 18, 2008, (B) HEARING TO CONSIDER CONFIRMATION OF JOINT CHAPTER 11 PLAN OF LIQUIDATION, (C) NONVOTING STATUS WITH RESPECT TO HOLDERS INTERESTS OF NEW CENTURY FINANCIAL CORPORATION, AND (D) RELATED MATTERS

**PLEASE TAKE NOTICE** that on March 18, 2008, the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Plan Proponents") filed the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 (as it may be amended, the "Plan"), and on March 18, 2008, the Debtors filed the related Disclosure Statement (as it may be amended, the "Disclosure Statement").[2]

**PLEASE TAKE FURTHER NOTICE THAT** a hearing was held before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), on March 5, 2008 at 1:30 p.m.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

[2] Terms not otherwise defined herein shall have the meaning ascribed to the in the Plan.

(Eastern Time), to consider, among other things, an order approving the Disclosure Statement, the form of Ballots, and the procedures for solicitation of votes and the Tabulation Rules pertaining thereto.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to an order of the Court dated March 18, 2008, the Bankruptcy Court approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE THAT** the last date to vote on the Plan is April 21, 2008 at 5:00 p.m. (Pacific Time).

**PLEASE TAKE FURTHER NOTICE THAT** Holders of Interests in New Century Financial Corporation ("NCFC") are impaired under the Plan. Pursuant to terms of the Plan, Holders of NCFC Interests shall receive nothing under the Plan on account of such Interests, and shares held by each Holder of NCFC Interests will be cancelled pursuant to the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, the Holders of NCFC Interests are conclusively presumed to have voted to reject the Plan, and, therefore, their votes will not be solicited.

**PLEASE TAKE FURTHER NOTICE THAT** additional copies of the Disclosure Statement and the Plan (with all exhibits filed with the Court) by parties in interest may be obtained by contacting New Century TRS Holdings, Inc., et al., c/o XRoads Case Management Services, 1821 East Dyer Road, Suite 225, Santa Ana, CA 92705 (Attention: Kathy Morris; Telephone: (800) 784-9571; Electronic Mail: infocms@xroads.com) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899, Attention: Mark D. Collins, Esq. Copies of the Disclosure Statement and the Plan (with all exhibits filed with the Court) are available for review at the office of the Clerk of the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801, and may be reviewed by any party in interest during normal business hours. The Plan and Disclosure Statement may also be viewed free of charge at www.xroadscms.net/newcentury.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors will provide, at their expense, a copy of the Solicitation Package (including the Disclosure Statement with the Plan attached as an exhibit thereto) to any beneficial holder of an NCFC Interest that certifies his/her status as such by completing a form that is available at www.xroadscms.net/newcentury via the link labeled "Interest Holder Certification Form" and returning it to the Debtors c/o XRoads Case Management Services, 1821 East Dyer Road, Suite 225, Santa Ana, CA 92705 (Attention: Kathy Morris).

**PLEASE TAKE FURTHER NOTICE THAT** objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; and (d) be filed with the Court and served so as to be received by (i) the Debtors: New Century Financial Corporation, 3337 Michelson Drive, Suite CN-350, Irvine, CA 92612, Attention: Monika L. McCarthy, Esq.; (ii) counsel to the Debtors: Richards, Layton & Finger, One Rodney Square, 920 King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq. and Michael J. Merchant Esq., and O'Melveny & Myers LLP, 275 Battery Street, 26th Floor San Francisco, California 94111, Attention: Suzzanne S. Uhland, Esq. and Andrew M. Parlen, Esq.; (iii) counsel to the Official Committee of General Unsecured Creditors, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attention: Mark S.

Indelicato, Esq. and Mark T. Power, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19891 (Attention: Bonnie Glantz Fatell, Esq. and Regina Stango Kelbon, Esq.); and (iv) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attention: Joseph J. McMahon, Jr., Esq.), no later than 4:00 p.m., Eastern Time, on April 18, 2008.  For purposes of filing pleadings in this case, the address of the Court is 824 North Market Street, Third Floor, Wilmington, Delaware 19801.

          **PLEASE TAKE FURTHER NOTICE THAT** the hearing to consider confirmation of the Plan, and any amendments, modification, or objections thereto will be held at the Bankruptcy Court on April 24, 2008 at 10:00 a.m. (Eastern Time) (the "Confirmation Hearing").  The Confirmation Hearing may be continued from time to time without further notice except for an announcement made at the Confirmation Hearing or any adjourned confirmation hearing.

Wilmington, Delaware, Dated:  March [___], 2008

| | |
|---|---|
| Mark D. Collis (No. 2981) | Suzzanne S. Uhland |
| Michael J. Merchant (No. 3854) | Ben H. Logan |
| Christopher Samis (No. 4909) | Andrew M. Parlen |
| RICHARDS, LAYTON & FINGER, P.A. | O'MELVENY & MYERS, LLP |
| One Rodney Square | 275 Battery Street |
| P.O. Box 551 | San Francisco, California 94111 |
| Wilmington, DE 19899 | (213) 460-6000 |
| (302) 651-7700 | |