UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY HOLDINGS, INC., a Delaware corporation, et al.<br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 07-10416 (KJC)<br>Jointly Administered<br><br>Objection Deadline: March 18, 2008<br>Hearing Date: March 25, 2008 at 1:30 p.m. |

**OBJECTION OF AD HOC COMMITTEE OF BENEFICIARIES OF
THE NEW CENTURY FINANCIAL CORPORATION DEFERRED
COMPENSATION PLAN AND/OR SUPPLEMENTAL EXECUTIVE
RETIREMENT/SAVINGS PLAN TO MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER DIRECTING
THE CLERK OF THE COURT TO MAINTAIN THE FINAL REPORT
OF MICHAEL J. MISSAL, EXAMINER, UNDER SEAL FOR A PERIOD OF 45
DAYS FROM THE FILING DATE [DOCKET # 5279]**

Gregory J. Schroeder ("Schroeder"), Michelle Parker ("Parker"), Martin Warren ("Warren"), Steve Holland ("Holland"), and Nabil Bawa ("Bawa") and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Plan"), for themselves and all other similarly situated, as beneficiaries of the Plan (collectively, the "Beneficiaries"), by and through their undersigned counsel, object to the Motion Of The Official Committee Of Unsecured Creditors For An Order Directing The Clerk Of The Court To Maintain The Final Report Of Michael J. Missal, Examiner, Under Seal For A Period Of 45 Days From The Filing Date [Dkt. #5279] (the "Motion") as follows:

<u>Jurisdiction, Venue and Basis for Relief Sought</u>

1.　　　　This Court has jurisdiction over the Motion and this Objection under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a

core proceeding as defined in 28 U.S.C. § 157(b). The predicates for the relief sought include 11 U.S.C. §§ 107, 1106(b) and Rules 5003 and 9018 of the Federal Rules of Bankruptcy Procedure.

## Background

2.  On or about January 1, 1999, New Century Financial Corporation ("NCFC") executed and made available to eligible employees the New Century Deferred Compensation Plan. NCFC subsequently replaced the original Deferred Compensation Plan with the New Century Financial Corporation Deferred Compensation Plan Amended and Restated July 1, 2004 (the "Plan").

3.  Amounts contributed to and/or withheld under the Plan from the participants' salaries, bonuses and commissions were placed in a trust ("Plan Assets"). As of December 31, 2006 the trust contained in excess of $43 million (and perhaps as much as $49 million) of Plan Assets.[1]

4.  The Debtors filed petitions for chapter 11 relief on April 2, 2007 (the "Petition Date") and the cases have been jointly administered by this Court.

5.  Following a May 7, 2007 hearing on the Beneficiaries' Motion for Appointment of an Additional Committee ("1102(b) Motion"), this Court ruled that the Plan Assets remain held in a segregated account (the "Segregated Account") pending further court order.

6.  On June 20, 2007, the members of the Ad Hoc Beneficiaries Committee, as Beneficiaries, initiated an adversary proceeding against the Debtors, Wells Fargo Bank N.A. as Trustee, the Compensation Committee of the Board of Directors of the New

---

[1] By agreement of the parties, and this Court's order implementing same, the Plan Assets have been allocated to safer investment vehicles and used to pay off a Plan loan used to fund benefits. Accordingly, the current amount of the Plan Assets may be somewhat lower.

Century Financial Corporation as the Plan Administrator, and the Official Committee of Unsecured Creditors by filing a Complaint seeking, inter alia, declaratory and equitable relief to redress violations of ERISA with regard to the funds held in the Segregated Account (the "Adversary Proceeding"). Among other relief, the Beneficiaries seek a ruling that the Plan Assets in the Segregated Account are being held in trust for the exclusive benefit of the Beneficiaries.

7. In addition, the Beneficiaries have alleged that—in the event that the Court finds that the Plan Assets are not held for their exclusive benefit—under the terms of the Plan and related trust agreement (the "Trust"), the Plan Assets may only be paid to the Beneficiaries and "general unsecured creditors" of NCFC, one of the so-called Holding Company Debtors as defined in the Disclosure Statement. The Beneficiaries allege in the Adversary Proceeding that to the extent that the Court finds that the Plan is, in fact, a "top hat" plan exempt from ERISA's substantive provisions, the assets of the Plan are subject to the claims of creditors only to the extent provided by the terms of the Trust. *E.g.*, Bank of America v. Moglia, 330 F.2d 942 (7th Cir. 2003) (rabbi trust assets not subject to claims of secured party and security interest did not attach to such assets) Under the terms of the Trust, if the Plan is a "top hat" plan, the Plan Assets are subject to the claims of "general unsecured creditors" only of NCFC, which creditors share pro rata with the Beneficiaries. Id. The term "general unsecured creditors" of NCFC necessarily encompasses only general unsecured creditors of NCFC, not creditors of any other Debtor or Debtor's estate, and excludes all secured creditors, including to the extent asserting deficiency claims. Id. Indeed, the Debtors have admitted before the Court at various times that the Plan Assets are to be shared only with NCFC's general unsecured

creditors according to the terms of the Plan and Trust. For example, Debtor's counsel stated, at the January 9, 2008 hearing, that the Plan Assets were "reserved by NCFC... to be available to the unsecured creditors of NCFC..." and that the "trust assets ... are for the benefit of the creditors of NCFC ...." (Transcript at 68).

8. The Debtors, Creditors Committee and Wells Fargo Bank, as trustee of the Trust, filed motions to dismiss the Adversary Proceeding and the Beneficiaries filed appropriate and timely responses to the motions to dismiss. The motions to dismiss have been briefed and oral argument has been held, and they are under consideration by the Court.

9. The Debtors and the Creditors Committee have filed a proposed Chapter 11 plan of liquidation (the "Chapter 11 Plan") which, among other faults, incorporates "deemed substantive consolidation" or an attempt at actual substantive consolidation in violation of controlling precedent in this Circuit.

10. Notably, the Chapter 11 Plan provides for the consolidation of the Holding Company Debtors, including NCFC, into a "Debtor Group" and, similarly, consolidates the "Operating Debtors" into another "Debtor Group." The Disclosure Statement provides that "the Plan provides for the distribution of the net Cash available from Assets of the Debtors in each Debtor Group to the Holders of Allowed Unsecured Claims in that Debtor Group," and further that "assets of the Holding Company Debtors include the assets in the irrevocable trust established in connection with NCFC's deferred compensation plan ...."

11. The alleged justification for combining the assets and claims of all of the Holding Company Debtors, including NCFC, is set forth in the disclosure statement

4

accompanying the Chapter 11 Plan (the "Disclosure Statement"). The proponents of the Chapter 11 Plan simply say that "... ownership of some assets of NCFC and TRS Holding is difficult to ascertain in light of the transactions in 2004 pursuant to which NCFC became a publicly traded REIT ...." The proponents elaborate to a degree saying that: "... certain assets of NCFC and TRS Holdings are difficult to allocate between them, thus arguing for similar treatment of Unsecured Claims against those Debtors. The equality of treatment of the Holding Company Debtors is also based on the fact that although it has fewer assets than NCFC, TRS Holdings also has a lower amount of Claims against it than does NCFC. Additionally, the remaining Holding Company Debtors ... have minimal assets and, other than claims under the Master Repurchase Agreements against NC Credit, have few Claims against them."

12. According to the Disclosure Statement, a major part of the Debtors' argument defending consolidation (as well as in favor of alleged compliance with the "best interests" test) is that the plan permits all Debtors (including the Holding Company Debtors) to share in the litigation proceeds generated by the alleged causes of action under investigation by the examiner and the subject of the final report of the examiner (the "examiner's report"). The Debtors have argued that it is not clear that the Holding Company Debtors would otherwise share in those proceeds. Accordingly, parties considering an objection to the Chapter 11 Plan – including the Beneficiaries – should have access to any and all information, including the examiner's report, as to whether such causes of action exist, the likelihood of meaningful recovery, the possible "ownership" of the causes of action, etc. If the causes of action investigated by the examiner are the source of the proceeds to fund the plan, the allocation of which balances

out otherwise harmful substantive consolidation and forms the underpinnings of the alleged fairness of the "series of 9019 settlements" making up the consolidation, then possible objecting parties are entitled to see the examiner's report without delay in connection with the assessment and preparation of objections. Indeed, the report should be available to all creditors, claimants and parties in interest so that they can assess whether to vote to accept or reject the Chapter 11 Plan. Given the volume of the report, all parties should have a meaningful opportunity to review the examiner's report in advance of the objection and voting deadlines.

13. The Beneficiaries asked for access to the examiner's report in the context of negotiating the agreed discovery scheduling order which is now part of the confirmation process. The Committee, as one of the plan proponents, objected to access, even access limited to the Beneficiaries' counsel and litigation support personnel.

14. There is no basis for denying access to the examiner's report to the Beneficiaries in light of the justifications advanced for consolidation and the structure of the Chapter 11 Plan. Whatever light the report sheds on the value of possible causes of action is relevant to the decision to support or oppose the Chapter 11 Plan. Moreover, the presumption is that the examiner's report will be made public absent extraordinary circumstances. *E.g.*, 11 U.S.C. §§ 107, 1106 (a)(4)(A)(B), 1106(b). *See also,* In re Fibermark, Inc., 330 B.R. 480 (Bankr. Vt. 2005). No such circumstances exist here in light of the structure of the Chapter 11 Plan.

## Conclusion

WHEREFORE, the Beneficiaries respectfully request this Court to enter an Order denying the relief sought by the Motion and, further, allowing the final report of the examiner to become part of the public record.

                                                STEVENS & LEE, P.C

Dated: March 18, 2008              /s/ Joseph H. Huston, Jr.
                                                JOSEPH H. HUSTON, JR. (NO. 4035)
                                                1105 NORTH MARKET STREET
                                                7TH FLOOR
                                                WILMINGTON, DE 19801
                                                TELEPHONE: (302) 654-5180
                                                TELECOPIER: (302) 654-5181
                                                JHH@STEVENSLEE.COM

                                                            - and -

                                                BERNSTEIN, SHUR, SAWYER & NELSON

                                                ROBERT J. KEACH
                                                MICHAEL A. FAGONE
                                                100 MIDDLE STREET
                                                P.O. BOX 9729
                                                PORTLAND, ME 04104-5029
                                                TELEPHONE: (207) 774-1200
                                                TELECOPIER: (207) 774-1127
                                                RKEACH@BERNSTEINSHUR.COM
                                                MFAGONE@BERNSTEINSHUR.COM