James L. Hand, Esq.  SBN 101748
653 11th Street
Oakland, California 94607
Tele: (510) 595-4200
Fax: (510) 595-1655
emil: jlhand@stanfordalumni.org

FILED

2008 MAR 18  AM 10: 00

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Attorney for Creditor Anna Bailey, Claim No. 1217

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re NEW CENTURY TRS HOLDINGS, INC., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 07-10416 (KJC)<br><br>Jointly Administered<br><br>CLAIMANT'S RESPONSE TO DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO CERTAIN BOOKS AND RECORDS CLAIMS AND RELATED MATTERS<br><br>Hearing Date: March 25, 2008<br>Time: 1:30 p.m. EST<br>Judge: Hon. Kevin Carey |

TO THE COURT AND DEBTOR'S COUNSEL:

As directed by Notice of Debtors' Fourteenth Omnibus Objection, pursuant to 11 USC §§ 502, 503, 506 and 507, Bankruptcy Rules 3007 and 9014, and Local Rule 3007-1, claimant Bailey submits (ii) "the name of the claimant and description of the basis for the amount of the claimant's claim, (iii) a concise statement setting forth the reason why such claim should not be disallowed for the reason set forth in the Objection, (iv) all documentation or other evidence of the claim upon which the claimant will rely in opposing the Objection at the hearing, (v) the address to which any reply to a response should be directed; and

1  (vi) the name, address, and telephone number of the person possessing
2  ultimate authority to reconcile, settle, or otherwise resolve the claim on
3  behalf of the claimant."

4     ### (ii)   Claimant's Name and Description of the
5     ### Basis for the Amount of the Claimant's Claim

6     Claimant is Anna Bailey, who resides at 5248 East Washington Street,
7  Stockton, CA 94561.   She lost $105,000 in equity in her home, stripped
8  out via fraud of a loan agent, Kaseem Mohammadi.   New Century
9  Mortgage's negligence aided and abetted the "straw investor" into whose
10 name Mohammadi placed title to Bailey's home, without Bailey's consent.
11 Moreover, New Century Mortgage is liable for Mohammadi's fraud due to
12 paying Mohammadi a Yield Spread Premium without commensurate benefit
13 to the "straw investor," in violation of HUD Guidelines and RESPA.

14    Bailey has received $16,164 in compensation from Mohammadi
15 and $22,750 from Mohammadi's employer, Golden Key Mortgage.   As a
16 consequence, she has an unsecured claim for $66,086 ($105,000 minus
17 $38,914).

18    ### (iii)   Concise Statement Setting Forth the Reasons
19    ### Why Such Claim Should Not Be Disallowed

20    As summarized above, New Century Mortgage is jointly and severally
21 liable for the equity stripped-out of Claimant's residence because it acted
22 negligently in approving false loan applications (did not verify claimed
23 income and claimed employment, for which the loan broker submitted
24 false information, see Hand Declaration ¶ 5), acted negligently in allowing
25 an escrow to close when it knew the loan agent was to receive "balance of
26 sale proceeds," and violated the Real Estate Settlement Procedures Act
27 ("RESPA") by paying an illegal Yield Spread Premium to the loan broker.
28

1   The principal wrongdoer was a loan agent named "Kaseem
2   Mohammadi."   Bailey is just one of 19 cases consolidated in Alameda
3   County Superior Court for pretrial purposes.   (Hand Declaration ¶ 1.)
4   Mohammadi pled guilty to grand theft.   (*Ibid.*)

5   Mohammadi set-up a "straw investor" scheme whereby he
6   would convince a homeowner to transfer title to a straw investor who
7   purportedly had good credit and would take out loans at favorable interest
8   rates that later would be transferred to the homeowner (and title would be
9   restored to the homeowner).

10   Mohammadi told the title company of his plan.   Alliance Title
11   Company, in turn, informed New Century Mortgage of the plan by sending
12   it a Final Disbursement Report that showed Mohammadi, not "seller" Anna
13   Bailey, would receive a check for balance of sale proceeds.   See Hand
14   Declaration Exh. D.

15   Nonetheless, New Century Mortgage allowed the loans to close
16   escrow.   Moreover, it knew or should have known the straw investor did
17   not make the income claimed.   See Hand Declaration ¶ **3**.

18   Additionally, New Century Mortgage is liable for the wrongful acts
19   of the loan broker because it paid the loan broker an illegal yield spread
20   premium.   The Real Estate Settlement Procedures Act ("RESPA"), 12 USC §
21   2601 et seq., prohibits abusive practices such as kickbacks and unearned
22   fees that drive up the cost of homeownership.   (12 U.S.C. § 2607(a) and
23   (b); 24 C.F.R. § 3500.14.)   In order for RESPA to achieve its purposes,
24   Congress granted HUD rulemaking authority for implementation of RESPA.
25   Congress directed the Secretary of HUD to "prescribe such rules and
26   regulations, to make such interpretations, and to grant such reasonable
27   exemptions for classes of transactions, as may be necessary to achieve
28

1  the purposes of [RESPA]."  12 U.S.C. § 2617(c).  On October 18, 2001, and

2  in accordance with 5 U.S.C. § 552, HUD exercised its statutory authority

3  when it issued its Statement of Policy 2001-1, clarifying its formal

4  interpretation of RESPA's prohibition against kickbacks and unearned

5  fees.  66 Fed. Reg. 53052.  HUD's interpretation of RESPA is entitled to

6  substantial deference.  *Schmitz v. Aegis Mortg. Corp.* (D. Minn. 1999)

7  48 F. Supp. 2d 877, fn. 3.

8        In Statement of Policy 2001-1, HUD clarified its previously

9  announced two-part test for determining the legality of a yield spread

10  premium paid by lenders to brokers.  66 Fed. Reg. 53055.  HUD's

11  two-part test is explained in detail on page 53055 of Volume 66 of

12  the Federal Register.  "It is HUD's position that where compensable

13  services are performed, the 1999 Statement of Policy requires application

14  of both parts of the HUD test before a determination can be made

15  regarding the legality of a lender payment to a mortgage broker."

16       "Under the first part of HUD's test, the total compensation to a

17  mortgage broker, of which a yield spread premium may be a component

18  or the entire amount, must be for goods or facilities provided or services

19  performed."  *Id*.  The second part of HUD's test requires that total

20  compensation to the mortgage broker be reasonably related to the total

21  set of goods or facilities actually furnished or services performed."  *Id*.

22  The legality of any yield spread premium can only be evaluated in the

23  context of the test HUD established and the specific factual circumstances

24  applicable to each transaction in which a yield spread premium is used.

25  Id. at 53054.  As explained hereafter, plaintiffs contend the yield spread

26  premiums the subprime lenders paid to Golden Key Mortgage and to

27  Community one did not satisfy HUD's two-part test for legality.

28

1    HUD's Statement of Policy 2001-1 explains that yield spread
2    premiums allow brokers to recoup up front costs incurred on the
3    borrower's behalf in originating the loan.    66 Fed. Reg. 53054.    "In
4    these cases, lender payments reduce the up front cash requirements to
5    borrowers."    *Id*.    However, HUD also recognized that "... yield spread
6    premiums may be used to enhance the profitability of mortgage
7    transactions without offering the borrower lower up front fees."    *Id*.
8    "[S]uch uses of yield spread premiums may result in total compensation
9    in excess of what is reasonably related to the total value of the origination
10   services provided by the broker, and fail to comply with the second part
11   of HUD's two-part test."    Id.

12       The straw investor, Nabila Noori, was not offered the option of
13   reduced loan commission or other fees, which might have justified
14   the lender's paying a yield spread premium.    The yield spread premium
15   resulted in the broker's receiving compensation exceeding the value of the
16   services actually provided.

17       Since RESPA is a consumer protection statute, its provisions are to be
18   liberally construed in favor of consumers.    *Wanger v. EMC Mortgage Corp.*
19   (2002), 103 Cal.App.4th 1125, 1134.    The broad language of subdivisions
20   (a) and (b) of 12 U.S.C. § 2607 and 25 C.F.R. § 3500.14 clearly prohibit
21   payment of unlawful kickbacks and unearned fees.    Paying a kickback
22   to the loan broker makes New Century Mortgage liable for that company's
23   fraudulent conduct.

24       Claimant's loss is the difference between the new loans made by
25   New Century Mortgage ($280,000), minus money received $5,000)
26   or debts paid-off ($151,768 + $13,926).    That loss totals $105,000.
27   Settlements by joint tortfeasors has resulted in Claimant's receiving

28

1  $16,164 from Kaseem Mohammadi and $22,750 from Mohammadi's

2  employer, Golden Key Mortgage.   As a consequence, **Bailey has an**

3  **unsecured claim for $66,086** ($105,000 minus $38,914).

4  ## To Whom Any Reply to Claimant's Response Should Be Directed

5  Any reply to claimant's response should be directed to:

6

7  James L. Hand, Esq.
   653 11th Street
   Oakland CA 94607

8  Tele:   510-595-4200

9  Fax:   510-595-1655
   E-mail:   jlhand@stanfordalumni.org

10  ## Name, Address and Telephone Number of

11  ## Person Possessing Settlement Authority

12  The person who possesses settlement authority of this case is

13  James L. Hand, Esq.
   653 11th Street

14  Oakland CA 94607

15  Tele:   510-595-4200

16  Fax:   510-595-1655
   E-mail:   jlhand@stanfordalumni.org

17  ## Availability of Insurance

18  Claimant believes that New Century Mortgage is covered under a

19  policy of title insurance issued by Alliance Title Company.   Lines 402

20  and 403 of Final Disbursement Report show $1,979 paid for new title

21  insurance.   Because said title insurance exists, Alliance Title provided a

22  single counsel to defend Alliance Title and New Century Mortgage, despite

23  counsel's obvious conflict of interest in representing a lender pointing

24  fingers at the escrow company and the escrow company pointing fingers at

25  the lender.   See Exhibit B to accompanying Hand Declaration (Answers of

26  Alliance Title and New Century Mortgage to Complaint of Anna Bailey).

27

28

1   The title insurer should pay 100% of New Century Mortgage's liability to

2   claimant.

3   **Claimant's Objection to Form of Debtor's Omnibus Objection**

4         Claimant objects to the form of Debtor's Omnibus Objection.   Firstly,

5   the Omnibus Objection asserts, in its notice, it is a "Substantive Objection

6   pursuant to ... Local Rule 3007-1."   However, Local Rule 3007-1(d) states

7   that an Objection is not substantive if it is based on "(vi) A claim [not

8   having] a basis in the debtor's books and records."   The Bailey claim

9   is listed on Exhibit A to Debtors' Omnibus Objection, which Debtor

10  characterizes as a list of "Books and Records Claims" and which Debtor

11  states includes a "brief description of the Debtors' basis for why they

12  are not liable for each of the Books and Records Claims."   (Objection

13  at page 5.)   Exhibit A's description why Debtors are not liable for the

14  Bailey claim is "The Debtors have no record of this liability in their Books

15  and Records."   Therefore, this is a Non-Substantive Objection,

16  not a Substantive Objection."   Claimant concludes, based on Local Rule

17  3007-1(d), that Debtors object to her claim on non-substantive grounds;

18  if Claimant is incorrect, it requests leave to amend this response to

19  Debtor's Omnibus Objection.

20        Claimant further objects to Debtor's Omnibus Objection because

21  the Exhibit thereto does not list the claims objected to "alphabetically by

22  the last name of the claimant (in the case of an individual)," as required

23  by Local Rule 3007-1(e)(iii)(D).   Instead, the Exhibit lists the claims

24  objected to alphabetically by claimant's first name.

25        Conclusion:   For the foregoing reasons, Debtors' objection to Bailey's

26  claim should be denied and the claim honored.   Debtor should inform

27  claimant the status of its insurance coverage for Bailey's claim.

28

1  Dated:   March 17, 2008                    Law Office of James L. Hand

2

3                                              by   James L. Hand, Esq.

4                                              Attorney for Claimant Bailey

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a citizen of the United States, over 18 years of age, not a party to this action, and employed at 653 11th Street, Oakland, CA 94612. On March 17, 2008, I served the attached

**Claimant's Response to Debtor's Fourteenth Omnibus Objection to Certain Books and Records Claims and Related Matters**

on the other party in this action by mailing a copy, postage-prepaid, first-class, to Suzanne Uhland at O'Melveny & Myers LLP, 275 Battery Street, San Francisco CA 94111, and overnighting (via Federal Express) a copy to:

Mark Collins
Christopher Samis
Richards, Layton & Finger, PA
One Rodney Square
920 North King Street
Wilmington, DE 19801

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on March 17, 2008, at Oakland, CA

BY: _____
James L. Hand, Esq.