# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY TRS HOLDINGS, INC.,<br>a Delaware corporation, et al.,<br><br>Debtors. | **Chapter 11**<br><br>Case No.: 07-10416 (KJC) |

## RESPONSE OF CLAIMANT MARY MCGURK TO DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO CLAIMS

Claimant Mary McGurk submits the following in response to the "books and records" objection filed by the New Century Debtors as part of their Fourteenth Omnibus Objection to Claims:

1.  Ms. McGurk has filed a Proof of Claim in case number 07-10419, New Century Mortgage Corporation ("NCMC"), for avoidance of the deed of trust on her residence in Los Angeles, California, for damage of $893,625, and other relief as reflected in the action filed by McGurk in the Superior Court of California, County of Los Angeles, on May 16, 2006 (the "Action"). A copy of McGurk's First Amended Complaint for Fraud, etc. filed in the Action was attached to the Proof of Claim. The Proof of Claim was docketed as #2643.

2.  The basis of this claim should appear on NCMC's books and records, since NCMC has appeared in the Action, filed an Answer and an asserted Cross-Complaint. Fidelity National Title Insurance Co. of Irvine, California may be representing the interests of NCMC and providing counsel in the Action.

3. Ms. McGurk was the victim of a "foreclosure rescue" scam, the operation of which included the active participation in fraudulent activity of NCMC employees working in their official capacities at NCMC. Ms. McGurk's title to and equity in her home were stolen, a process which was facilitated by a loan NCMC made to the fraud ring's "straw buyer." At least four members of the fraud ring have pleaded guilty to federal criminal charges in connection with this foreclosure rescue fraud, with sentencing currently scheduled for June, 2008.

4. In addition to NCMC's role in causing the loss, NCMC is also the holder of a deed of trust on Ms. McGurk's property (a copy of which is attached to the Proof of Claim), which is the last and only lien appearing in the chain of title to the property, at least as of the date Ms. McGurk filed her claim. No transfer of NCMC's purported interest was recorded before Ms. McGurk filed her claim (NCMC's counsel of record, Christopher Deal, Esq. of Irvine, California) has since suggested that the loan was transferred to Deutsche Bank, pre-petition, but he has not provided any evidence of such transfer).

5. The principal of the loan was approximately $379,000. In addition to that encumbrance, which Ms. McGurk seeks to invalidate, there is evidence that supports fraud liability of NCMC, and would also support invalidation or avoidance of the lien on other theories.

6. In the California state court Action brought by Ms. McGurk (which is now stayed by the Debtors' Chapter 11 case), NCMC filed a counterclaim for declaratory and equitable relief. NCMC recently dismissed the counterclaim.

7. Due to NCMC's active involvement in the Action, Ms. McGurk does not understand why her claim does not appear in Debtors' books and records. Ms. McGurk is obviously not responsible for NCMC's failure to track its claims.

8. Ms. McGurk is attaching some documents filed or produced by NCMC in the state court action to assist Debtors in their internal tracking of the claim, including NCMC's Cross-Complaint (Exhibit 1), NCMC's Dismissal of its Cross-Complaint (Exhibit 2), and a declaration from one of the civil and criminal defendants discussing NCMC's role in the fraud (Exhibit 3).

9. Ms. McGurk's counsel has repeatedly proposed to NCMC's counsel of record in the Action, a stipulation for relief from stay, to allow the Action to proceed to trial. Mr. Deal has said he would discuss it with his contacts at the Debtors, but has not responded.

10. Please address any reply to this response to the undersigned bankruptcy counsel for Ms. McGurk:

Jason Wallach, Esq.
Berger Kahn, A Law Corporation
4551 Glencoe Avenue, Suite 300
Marina del Rey, CA 90292-7925
jwallach@bergerkahn.com

with a copy to Ms. McGurk's counsel in the Action:

Jeffrey S. Gordon, Esq.
Theodore Maya, Esq.
Jonathan Rotter, Esq.
Kaye Scholer
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067-6048
jrotter@kayescholer.com

11. The undersigned has authority to discuss resolution of this claim and the objection thereto. My telephone number is (310) 821-9000.

Dated: March 17, 2008

BERGER KAHN, A Law Corp.

By: *Jason Wallach*
JASON WALLACH
Attorney for Claimant MARY McGURK

**CHRISTOPHER E. DEAL** (Bar No. 186754)
17911 Von Karman, Suite 300
Irvine, California 92614-6253
Telephone:  (949) 622-4333
Facsimile:  (949) 622-4132

Attorneys for Defendant and Cross-Complainant
NEW CENTURY MORTGAGE CORPORATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MARY MCGURK et al., <br><br> Plaintiff, <br><br> vs. <br><br> MARTHA RODRIGUEZ AMAYA aka MARTHA RODRIGUEZ et al. <br><br> Defendants. | CASE NO. BC 352479 <br><br> **NEW CENTURY MORTGAGE CORPORATION'S CROSS-COMPLAINT FOR DECLARATORY RELIEF** |
| NEW CENTURY MORTGAGE CORPORATION, <br><br> Cross-Complainant, <br><br> vs. <br><br> MARY MCGURK, <br><br> Cross-Defendant | |

Cross-Complainant NEW CENTURY MORTGAGE CORPORATION alleges:

### FIRST CAUSE OF ACTION

(For Declaratory Relief Against All Cross-Defendants)

1. Cross-Complainant is the holder of a deed of trust recorded in the Official Records of Los Angeles County on July 22, 2005 as Instrument No. 05-1736504 (the "Deed of Trust"). The Deed of Trust secured a $369,000 obligation by Jonathan Kim to Cross-

Complainant.

2. Cross-Complainant made its loan to Kim with the understanding and promise from him that Cross-Complainant's Deed of Trust would have a first priority position on the secured real property, which real property is located at 2849 West View Street, Los Angeles, California 90016 (the "Property").

3. In order to secure the first priority position of the Deed of Trust, New Century directed that a portion of its loan proceeds be used to pay off current existing loan obligations secured by deeds of trusts against the Property.

4. Upon the pay-off of the prior deeds of trust, the holders of these deeds of trusts recorded reconveyances.

5. In her Complaint, Plaintiff and Cross-Defendant seeks to have declared invalid this Cross-Complainant's Deed of Trust on the grounds that the Deed of Trust is void.

6. An actual controversy has arisen and now exists between Cross-Complainant and Cross-Defendant in that Cross-Complainant contends as follows:

   (1) Cross-Complainant is a bona fide encumbrancer for value who acquired its trust deed interest free and clear of the claims of Plaintiff to the Property. Even if Plaintiff wins back title to the Property, that interest will still be subject to the New Century Deed of Trust;

   (2) In the event Plaintiff is able to invalidate the Deed of Trust, then Cross-Complainant is nevertheless still entitled to an equitable lien on the subject real property in an amount equal to the paid off senior encumbrances actually incurred by Plaintiff, plus interest from and after the pay-off date; and

   (3) Cross-Complainant is entitled to a judgment foreclosing upon its equitable lien in the event Plaintiff fails and refuses to pay the equitable lien and following the normal course of law for such judicial foreclosure.

Cross-Complainant is informed and believes and, based upon such information and believe alleges that Plaintiff disputes these contentions. A declaration or order of the court is necessary and appropriate at this time in order to establish the rights and obligations of the

parties with respect to each other and the Property.

WHEREFORE, this Cross-Complainant prays for judgment against Cross-Defendant as follows:

1. For a declaration and order of the court that:

   (A) Cross-Complainant is a bona fide encumbrancer for value who acquired its interest in the Property free and clear of the claims of Plaintiff and Cross-Defendant; or

   (B) In the event the court invalidates Cross-Complainant's Deed of Trust, then Cross-Complainant is entitled to an equitable lien on the subject property in the amount of the paid off senior encumbrances, plus interest at the legal rate from and after the pay-off date; and

   (C) Authorizes the judicial foreclosure on the equitable lien in the normal and legal manner allowed for judicial foreclosures by law, in the event Plaintiff and Cross-Defendant fails and refuses to make the payments and bring current the payments on the equitable lien.

2. For costs of suit and reasonable attorneys' fees;

3. For such other and further relief as the court may deem just and proper.

Dated: June 27, 2006     By: _____
                             Christopher Deal
                             Attorney for Defendant and Cross-Complainant NEW CENTURY MORTGAGE CORPORATION

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 17911 Von Karman Avenue, Suite 300, Irvine, California 92614.

On June 27, 2006, I served the foregoing document(s) described as **NEW CENTURY MORTGAGE CORPORATION'S CROSS-COMPLAINT FOR DECLARATORY RELIEF** on interested parties:

[X]  By placing     [ ] the original     [X] a true copy thereof enclosed in a sealed envelope addressed as follows:

> **Jonathan Rotter**
> **KAYE SCHOLER LLP**
> 1999 Avenue to the Stars, Suite 1700
> Los Angeles, CA 90012
> Telephone: 310-788-1000
> Facsimile: 310-788-1200

[X]  (BY MAIL) I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  (BY FEDERAL EXPRESS) I delivered to an authorized driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express with delivery fees paid or provided for, addressed to the person on who it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; or at that party's place of residence.

[ ]  (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

[ ]  (FACSIMILE) I faxed such document from Irvine, California, to the facsimile number(s) shown on the attached service list. The sending facsimile machine number is (949) 622-4132. The transmission was reported as complete and without error and the transmission report was properly issued by the transmitting facsimile machine.

[X]  (STATE) I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

[ ]  (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 27, 2006, at Irvine, California.

*Barbara Payne*
Barbara Payne

17911 Von Karman,
Suite 300
Irvine, CA 92614-6253

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| Christopher E. Deal (Bar No. 186754)<br>17911 Von Karman Ave., Suite 300<br>Irvine, California 92614-6253<br><br>Telephone: (949) 622-4331<br><br>ATTORNEY FOR (Name): New Century Mortgage Corporation | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

JUDICIAL DISTRICT:
Superior Court
Central

PLAINTIFF: Mary McGurk et al.,

DEFENDANT: Martha Rodriguez Amaya aka Martha Rodriguez et al.

**REQUEST FOR DISMISSAL**
- [ ] Personal Injury, Property Damage, or Wrongful Death
  - [ ] Motor Vehicle
  - [ ] Other
- [ ] Family Law
- [ ] Eminent Domain
- [X] Other (specify): Real Property

TRIAL DATE (If set)

NEXT HEARING/STATUS CONFERENCE DATE

TIME | DIVISION

CASE NUMBER (LIMITED)
BC 352479

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:
   a. [ ] (1) With prejudice       [X] (2) Without prejudice
   b. [ ] (1) Complaint            [ ] (2) Petition
      [X] (3) Cross-complaint filed by (name): New Century Mortgage     on (date): June 27, 2006
      [ ] (4) Cross-complaint filed by (name):                           on (date):
      [ ] (5) Entire action of all parties and all causes of action
      [ ] (6) Other (specify):*

| DATE | TYPE OR PRINT NAME | |
|---|---|---|
| February 8, 2008 | Christopher E. Deal | ▶ [signature] |
| | | Attorney (or party without attorney) for:<br>[ ] Plaintiff/Petitioner [ ] Defendant/Respondent<br>[X] Cross-complainant |

* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

2. TO THE CLERK: Consent to the above dismissal is hereby given.**

| DATE | TYPE OR PRINT NAME | |
|---|---|---|
| | | ▶<br>Attorney (or party without attorney) for:<br>[ ] Plaintiff/Petitioner [ ] Defendant/Respondent<br>[ ] Cross-complainant |

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure § 581(i) or (j).

(To be completed by clerk)
- [ ] 3. Dismissal entered as requested on (date):
- [ ] 4. Dismissal entered on (date):        as to only (name):
- [ ] 5. Dismissal not entered as requested for the following reasons (specify):

- [ ] 6. a. Attorney (or party without attorney) notified on (date):
  b. Attorney (or party without attorney) not notified. Filing party failed to provide
     [ ] a copy to conform
     [ ] means to return conformed copy        COURT ADMINISTRATOR/CLERK

By _____, Deputy

Form Adopted by the
Judicial Council of California
(Rev. January 1, 1997)

**REQUEST FOR DISMISSAL**

C.C.P. § 581 et seq.
Rules 383, 1233, Cal. Rules of Court
78R351M CI-14 JC (Rev. 1-97)
LA-14

**PROOF OF SERVICE**

<u>PROOF OF SERVICE</u>
MARY MCGURK v. MARTHA RODRIGUEZ-CASE NO BC 352479
LOS ANGELES SUPERIOR COURT-CENTRAL DISTRICT
STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 17911 Von Karman Avenue, Suite 300, Irvine, California 92614.

On February 11, 2008, I served the foregoing document(s) described as **REQUEST FOR DISMISSAL** on interested parties:

[X] By placing  [ ] the original  [X] a true copy thereof enclosed in a sealed envelope addressed as follows:

[X] **(BY MAIL)** I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **(BY FEDERAL EXPRESS)** I delivered to an authorized driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express with delivery fees paid or provided for, addressed to the person on who it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; or at that party's place of residence.

[ ] **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

[X] **(FACSIMILE)** I faxed such document from Irvine, California, to the facsimile number(s) shown on the attached service list. The sending facsimile machine number is (949) 622-5756. **The transmission was reported as complete and without error and the transmission report was properly issued by the transmitting facsimile machine.**

[X] **(STATE)** I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

[ ] **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 11, 2008, at Irvine, California.

*Terri Navarro*
Terri Navarro

**SERVICE LIST**
MARY MCGURK v. MARTHA RODRIGUEZ-CASE NO BC 352479
LOS ANGELES SUPERIOR COURT-CENTRAL DISTRICT

| | |
|---|---|
| Jonathan Rotter<br>KAYE SCHOLER LLP<br>1999 Avenue of the Stars, Suite 1700<br>Los Angeles, CA 90067-6048<br>Phone No.: (310) 788-1000<br>Fax No.: (310) 788-1200 | Attorney for the Plaintiff<br>Mary McGurk |
| Patrick J. Delchop<br>Law Offices of Patrick J. Delchop<br>10585 Santa Monica Blvd., Suite 120<br>Los Angeles, CA 90025<br>Phone No.: (323) 464-7871<br>Fax No.: (323) 464-7876 | Attorneys for Defendant<br>Sheila Milstead |
| Jeffrey B. Smith<br>Curd, Galindo & Smith<br>301 East Ocean Blve., Suite 1700<br>Long Beach, CA 90802<br>Phone No.: (562) 624-1177<br>Fax No.: (562) 624-1178 | Attorney for Defendant<br>Dov Sandler |
| Edward Seung Ok<br>3281 Bounty Circle<br>Huntington Beach, CA 90802<br>Phone No.: (562) 628-5520 | Pro Per for Defendant<br>Martha Rodriguez |
| Edward Y. Lee<br>Christopher P. Fields<br>Law Offices of Edward Y. Lee<br>3701 Wilshire Boulevard, Suite 510<br>Los Angeles, CA 92614<br>Phone No.: (213) 380-5858<br>Fax No.: (213) 380-5860 | Attorney for Defendant<br>Jonathan Kim |

KAYE SCHOLER LLP
Jeffrey S. Gordon, Bar Number 76574
jgordon@kayescholer.com
Theodore Maya, Bar Number 223242
tmaya@kayescholer.com
Jonathan M. Rotter, Bar Number 234137
jrotter@kayescholer.com
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067-6048
Telephone: (310) 788-1000
Fax: (310) 788-1200

Attorneys for Plaintiff
MARY MCGURK

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGLES

| | |
|---|---|
| MARY MCGURK, | CASE NO. BC352479 |
| Plaintiff, | DECLARATION OF DEFENDANT MARTHA RODRIGUEZ AMAYA |
| v. | |
| MARTHA RODRIGUEZ AMAYA, a.k.a. MARTHA RODRIGUEZ, an individual; EDWARD OK a.k.a. ED OK and SEUNG MOK OK, an individual; SHEILA MILSTEAD, an individual; DANIEL BRICENO, an individual; DEKO LTD., a California corporation; BELLASI ESCROW CORP., a California Corporation; DOV SANDLER, an individual; JONATHAN KIM, an individual; NEW CENTURY MORTGAGE CORP., a California Corporation, and DOES 1 through 50, inclusive, | Trial Date: None Set  Hon. Rolf M. Treu |
| Defendants. | |

23230017.WPD            DECLARATION OF DEFENDANT AMAYA

I, Martha Rodriguez Amaya, declare:

1. I am a defendant in the above-captioned civil action. I recently reviewed paperwork related to the purported sale of Plaintiff Mary McGurk's house, have personal knowledge of the facts set forth in this declaration, and if called as a witness I could and would testify competently as follows. I am currently represented by counsel in the related criminal action, and am *pro se* in this lawsuit.

2. I am currently incarcerated at the Metropolitan Detention Center in Los Angeles, awaiting sentencing for the crimes I have plead guilty to: 18 U.S.C. § 1341, Frauds and Swindles, and 18 U.S.C. § 1956(a)(1), Laundering of Monetary Instruments. I committed these crimes along with my codefendants in this civil action, and which involved numerous victims, including Plaintiff Mary McGurk.

3. Together with my codefendants in this civil action, I operated a scheme to defraud homeowners, including Ms. McGurk, and to obtain money and property from homeowners, including Ms. McGurk, by means of materially false and fraudulent pretenses, representations, and promises.

4. Using public filings and electronic databases that listed pending foreclosure sales, my co-schemers would locate homeowners who were defaulting on their home loans. My co-schemers, including Edward Ok and Daniel Briceno, would make unsolicited visits to the homeowners to convince them that we could help them avoid foreclosure of their homes.

5. If the victim homeowners were interested, they would be asked to meet with Edward Ok, myself, and/or others at our offices, which at the time of our fraud against Ms. McGurk were located at 320 Old Ranch Parkway, Suites G and H, Seal Beach, California. I operated businesses under the name of Silvernet and Bellasi Escrow out of these offices.

6. Bellasi Escrow was not a licensed escrow company.

7. At the time of our fraud against Ms. McGurk, I operated Bellasi Escrow under the license of Dov Sandler, who was a real estate broker licensed by the California Department of Real Estate.

8. When the victim homeowner came to the Silvernet or Bellasi offices, Edward Ok and/or I would tell the victim homeowners that we could stop the foreclosure of the victim's homes by providing the victims with short-term loans to cover their outstanding debts, and then refinancing the victims' home loans using an "investor" or "co-signer" with good credit who would help the victim homeowners qualify for new loans. We told the victims that if they could not locate someone with good credit to act as a co-signer, we would find someone to act as the co-signer.

9. We characterized our services to victim homeowners as a sort of "refinancing" that would help them save their homes from foreclosure.

10. If the victim homeowner accepted our offer, we would have the victims sign certain documents, including loan applications, trust deeds, and grant deeds, but would not accurately explain the nature, purpose and effect of the documents being signed. We would falsely assure the victim homeowners that they would not lose their homes.

11. I and my co-schemers, including Edward Ok and Sheila Milstead, would locate persons with good credit scores who were willing to allow their names and identifying information to be used on loan applications. These persons were "strawbuyers" who had no intention of living in the homes or making payments on the new loans. These strawbuyers would be paid a fee for allowing their identifying information to be used on loan applications.

12. Jonathan Kim was the strawbuyer with respect to Ms. McGurk's property. He was paid a fee for the use of his name and credit, and did not intend to actually purchase the home or make the payments on the mortgage we would obtain.

13. Mr. Kim did not make a down payment on Ms. McGurk's property.

14. I and my co-schemers, including Sheila Milstead, Edward Ok, and Vladamir Stefanovic, would cause loan applications in the names of the strawbuyers to be submitted to commercial lenders. The loan application packages would include falsified records relating to the required down payments and false information relating to the strawbuyers' income, bank accounts, employment, and intent to reside in the homes.

15. In order to falsely fulfill down payment requirements, a co-schemer or I would have a bank check drawn on one of my or a co-schemer's accounts, and we would deposit it into another

account, later returning it to the account on which it was drawn, making it look as though a down payment had been made when in fact we were just cycling the money through our own accounts.

16. I and my co-schemers, including Sheila Milstead, Edward Ok, and Vladamir Stefanovic, would cause the lenders to wire the loan proceeds to the Silvernet or Bellasi Escrow Trust Accounts at the Bank of the West. We would then skim the vast majority of the loan proceeds and disburse the money to ourselves, family members, and other associates.

17. Edward Ok and I would skim money in two main ways. Ok had the victim homeowners execute certain agreements that purported to give Ok a right to some of the proceeds of the sale, and Ok would also make other claims on the proceeds of the fraudulent sale. Ok would take 60% of these amounts and give 40% to me. I would also take certain amounts from the broker's commissions and other miscellaneous charges. I would give 50-60% of these amounts to Ok in exchange for his giving me 40% of his charges against the loan proceeds.

18. Almost no money went to the victim homeowners. While some money was listed as being held for them, we would divert this money for other purposes, including investments. Some of the victims were never told of these arrangements and use of proceeds.

19. We were actively assisted in this fraudulent scheme by co-defendant New Century Mortgage. New Century was aware that false and fraudulent information regarding the required downpayments, and false information relating to the strawbuyers' income, bank accounts, employment, and intent to reside in the homes was being submitted on the applications. Indeed, New Century would sometimes itself falsify the information in order to write a loan.

20. My contact at New Century was primarily an account representative whose first name was Tina. My best recollection of her last name is "Valdez;" however, I am not certain about that, and it may have been "Vasquez" or "Vargas." I also worked often with another New Century account representative whose name I cannot remember, who worked closely with Tina and to whom I shall refer as John Smith for purposes of this Declaration.

21. I first met Valdez when she came to my office to introduce New Century and describe its loan offerings, including 100% financing to borrowers with at least a 620 FICO score.

22. Valdez told me that she was dating Frank Brandt, who worked at New Century in a position senior to Valdez. From my conversations with Valdez, it appeared that Brandt was aware of the fraud.

23. Valdez frequently advised me to falsely increase borrowers' stated income and/or bank account balance in order to qualify for New Century's nominal underwriting criteria. John Smith similarly advised me to make such false adjustments.

24. Sometimes, I would make the fraudulent changes to the applications. Other times, New Century employees would do so, including creating false bank statements for the borrowers showing more assets than they actually had.

25. I recall that on at least one occasion, Valdez called me to tell me that an applicant's information needed to be changed for the loan to fund, despite the fact that the loan already had funded.

26. From my contacts with New Century's underwriters, they acted consistently with being fully aware of the fraudulent data being submitted. This is because on occasions that underwriters would reject a loan application for insufficient income or assets, I or Tina Valdez or John Smith or another co-schemer would falsely adjust the application and submit it to the same New Century underwriter within a few days. Obviously, the applicant's actual assets and income could not have changed as we indicated over the course of a few days.

27. Valdez was interested in funding as many loans as possible to meet the sales goals set by New Century. New Century account executives were paid bonuses based on the number of loans they originated, and sometimes groups would compete with one another to try and originate the greatest number of loans in a given period.

28. Valdez would come to my office to pre-screen files, or to assist in making fraudulent changes to loan applications before they were sent into the office.

29. After approximately the first month of working together, I began to pay Valdez from $250 to $500 per funded loan application. Valdez told me that she was splitting these kickbacks with John Smith. I paid these kickbacks in cash, when Valdez would visit my office.

30. I was very friendly with Valdez. She would often bring cookies and other sweets to my office, and I bought her lunch. Valdez called freely, sometimes late at night, to discuss loan conditions.

31. I first met Daniel Briceno after he called me to ask if I dealt with homeowners in foreclosure, and offered his services as a consultant who would help improve the homeowners' credit scores. I used his services as a credit-repair consultant for some time, but stopped doing so when he failed to improve anyone's credit score. Later, Ok hired Briceno to go knock on defaulting homeowners' doors, offer them our services, and subject them as victims to the scheme. Briceno was paid for every homeowner whom he brought as a victim.

32. We tricked Ms. McGurk into signing a grant deed by telling her that she was not actually selling her home. We then skimmed most of the proceeds from the sale.

33. I regret my actions, and hope that by offering this truthful testimony, I am doing something to help at least in part make up for my actions.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct, and that this declaration was executed on ~~November~~ December 6, 2007, at Los Angeles, California.

By: _____
Martha Rodriguez Amaya

6
DECLARATION OF DEFENDANT AMAYA

# AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by Berger Kahn, A Law Corporation, whose business address is: 4551 Glencoe Avenue, Suite 300, Marina del Rey, California 90292 ("the firm").

On March 17, 2008, I served the within document(s) described as: **RESPONSE OF CLAIMANT MARY MCGURK TO DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO CLAIMS** on the interested parties in this action:

☒    by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s)
☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

Christopher E. Deal, Esq.
17911 Von Karman Ave.
Irvine, CA 92614

Jeffrey S. Gordon, Esq.
Theodore Maya, Esq.
Jonathan Rotter, Esq.
KAYE SCHOLER
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067-6048

☒    **BY MAIL**(C.C.P. § 1013(a))–I deposited such envelope(s) for processing in the mail room in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Marina del Rey, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐    (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 17, 2008, at Marina del Rey, California.

*/s/ Elaine Miyashiro*
ELAINE MIYASHIRO

Berger Kahn
*A Law Corporation*
P.O. Box 92621
Los Angeles, CA 90009-9998

POS regular.doc

1

Proof of Service

# AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by Berger Kahn, A Law Corporation, whose business address is: 4551 Glencoe Avenue, Suite 300, Marina del Rey, California 90292 ("the firm").

On March 17, 2008, I served the within document(s) described as: **RESPONSE OF CLAIMANT MARY MCGURK TO DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO CLAIMS** on the interested parties in this action:

☒ by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s)
☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

| | |
|---|---|
| Mark Collins, Esq.<br>Michael J. Merchant, Esq.<br>Christopher M. Samis, Esq.<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801 | Suzzanne S. Uhland, Esq.<br>Emily R. Culler, Esq.<br>Ana Acevedo, Esq.<br>O'MELVENY & MYERS LLP<br>275 Battery Street<br>San Francisco, CA  94111 |

☒ **BY OVERNIGHT MAIL**(C.C.P. § 1013(c))–I placed said envelope(s) for collection by **Federal Express**, following ordinary business practices, at the business offices of Berger Kahn for collection and processing of correspondence with said overnight mail service, and said envelope(s) will be deposited with said overnight mail service on said date in the ordinary course of business.

I am "readily familiar" with the firm's practice of collection and processing of correspondence for service with said overnight mail service. It is deposited with said overnight mail service on that same day in the ordinary course of business. I am aware that, on motion of a party served, service is presumed invalid if the said overnight delivery service cancellation date or delivery date on the overnight delivery service slip is more than one day after the date of deposit with said overnight delivery service contained in this affidavit.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 17, 2008, at Marina del Rey, California.

ELAINE MIYASHIRO