# EXHIBIT A

H. SINCLAIR KERR, JR. (61713)
KEITH K. FONG (148067)
HOLLY HOGAN (238714)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
Telephone: (415) 371-8500
Facsimile: (415) 371-0500

Attorneys for Plaintiff
LISA F. CLARK

ENDORSED
FILED
ALAMEDA COUNTY

JUL 21 2006

CLERK OF THE SUPERIOR COURT
By _____
         Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA – UNLIMITED JURISDICTION

| | |
|---|---|
| LISA F. CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDEN KEY FINANCIAL SERVICES, INC., GOLDEN KEY MORTGAGE, ALLIANCE TITLE COMPANY, NEW CENTURY MORTGAGE CORPORATION, KASEEM MOHAMMADI, ALIREZA NAZMI, FATIMA SAHIBZADA, NAHIM SAHIBZADA and DOES 1 through 20,<br><br>Defendants. | Case No.  RG06280373<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**<br><br>JURY TRIAL DEMANDED |

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff alleges as follows:

## PARTIES

1. Plaintiff, LISA F. CLARK ("Plaintiff"), is an individual residing in San Francisco, California. Plaintiff is the owner of a certain single family residence located at 15 McCarthy Street, San Francisco, California, 94134 (Assessor's Parcel No. 6359-020).

2. Plaintiff is informed and believes that Defendant GOLDEN KEY FINANCIAL SERVICES, INC., is a corporation organized under California law. Plaintiff is informed and believes that, at all relevant times, GOLDEN KEY FINANCIAL SERVICES, INC maintained an office within the County of Alameda.

3. Plaintiff is informed and believes that Defendant GOLDEN KEY MORTGAGE is a corporation organized under California law. Plaintiff is informed and believes that, at all relevant times, GOLDEN KEY MORTGAGE maintained an office within the County of Alameda.

4. Plaintiff is informed and believes that Defendant ALIREZA NAZMI ("NAZMI") is an individual residing in the County of Stanislaus and at all relevant times, was an owner, employee and/or agent of GOLDEN KEY.

5. Plaintiff is informed and believes that there exists a unity of interest and ownership between GOLDEN KEY FINANCIAL SERVICES, INC., GOLDEN KEY MORTGAGE and NAZMI such that their separate nature does not exist, and that inequity will result if the each is treated as the sole actor. Both entities and NAZMI hereinafter will be referred to collectively "GOLDEN KEY."

6. Plaintiff is informed and believes that Defendant KASEEM MOHAMMADI ("MOHAMMADI") is an individual residing in the County of Alameda, and at all relevant times, was an employee and/or agent of GOLDEN KEY.

7. Plaintiff is informed and believes that Defendant ALLIANCE TITLE COMPANY, INC. ("ALLIANCE") is a corporation organized under California law.

8. Plaintiff is informed and believes that Defendant NEW CENTURY MORTGAGE CORPORATION ("NEW CENTURY") is a corporation organized under California law.

9. Plaintiff is informed and believes that Defendants FATIMA SAHIBZADA and NAHIM SAHIBZADA (collectively "SAHIBZADA") are individuals residing in Contra Costa County, and are wife and husband.

**VENUE**

10. Venue is proper in the County of Alameda because the wrongful conduct described in this Complaint occurred within and caused harm to Plaintiff in this County.

**GENERAL ALLEGATIONS**

11. Plaintiff is the owner of a townhome located at 15 McCarthy St., San Francisco, California, 94134 ("home"), where she has lived since she was seven years old. Plaintiff inherited the property from her mother when she passed away in 1993 and has been the sole person on title since that time.

12. In the Fall of 2004, Plaintiff decided to explore possibly refinancing the mortgage on her home so that she could lower her monthly payments. To that end, in or about October 2004, Plaintiff went to the offices of GOLDEN KEY in Fremont, California. After completing a loan application, Plaintiff was advised that her FICO credit score was low and therefore she needed to speak to the manager of GOLDEN KEY.

13. Plaintiff was introduced to MOHAMMADI, who identified himself as the manager of GOLDEN KEY. He told Plaintiff that due to her low credit score, he would not be able to refinance her Property individually but that he had developed a loan refinancing program designed to assist people in Plaintiff's situation. MOHAMMADI represented that under his program, he would use the equity in Plaintiff's home to pay off her outstanding debts listed in her credit report, and to pay her mortgage, property taxes, insurance and homeowner's association dues for an entire year. According to MOHAMMADI, his program would improve Plaintiff's credit score such that within one year she would be able to qualify individually for a low interest mortgage. MOHAMMADI further represented that he would have such mortgage in place, ready for Plaintiff to assume by December 1, 2005.

14. MOHAMMADI stated that as part of the refinancing program, it would be necessary to add an "investor" to the title of her home. He indicated that the investor (who was

later revealed to be SAHIZADA) had "excellent credit," and as such, would be able to obtain a low interest mortgage with monthly payments in the range of $600 to $800 per month, an amount significantly less than Plaintiff's existing mortgage payment. MOHAMMADI represented that he would remove the investor's name from the title to Plaintiff's home as soon as the refinancing was complete. He assured Plaintiff that the transaction would not in any way affect her ownership rights in her home.

15.   On or about November 29, 2004, Plaintiff returned to GOLDEN KEY's offices at which time she met with MOHAMMADI along with Roman Hamidi ("Hamidi") and Nadir Atta ("Atta"), who also were affiliated with GOLDEN KEY. MOHAMMADI reiterated to Plaintiff that the refinancing program would improve her credit score and that by December 1, 2005 he would have a new low interest loan ready for Plaintiff to assume that would replace the loan obtained by the investor. Atta and Hamidi concurred in these representations, and both encouraged and reassured Plaintiff that their program would benefit her.

16.   MOHAMMADI then presented Plaintiff with a series of documents to sign that he claimed were necessary to facilitate the refinancing process. However, neither the purpose nor the significance of these documents was explained to Plaintiff.

17.   MOHAMMADI explained that Atta would be Plaintiff's primary contact at GOLDEN KEY, and that he and Atta would be "working on her file" in connection with the refinancing. Plaintiff was then introduced to a representative from Credit Investigation Arbitration ("CIA"), which would be working with GOLDEN KEY to improve Plaintiff's credit score. The CIA representative told Plaintiff that because she was working through GOLDEN KEY, she was receiving a "good deal" on the cost of CIA's services.

18.   Relying on the assertions and statements of Defendants MOHAMMADI and other GOLDEN KEY employees at the meetings in October and November 2004, Plaintiff decided to participate in the refinancing program and signed the documents presented to her.

19.   ALLIANCE handled the escrow for the refinancing, which closed on or about November 14, 2004. Plaintiff's existing mortgage was paid off and replaced with first and second mortgages with NEW CENTURY totaling $410,000, resulting in a withdrawal of

approximately $125,000 in equity from Plaintiff's home. The amount of the refinancing far exceeded what Plaintiff was led to believe would be withdrawn from her home.

20. The terms of the NEW CENTURY mortgages were less favorable than Plaintiff's prior mortgage, and both of the new mortgages included significant prepayment penalties. In addition, contrary to MOHAMMADI's prior representations, the combined monthly payment due on the NEW CENTURY mortgages was substantially greater than the monthly payment due on Plaintiff's then existing mortgage.

21. ALLIANCE paid none of the approximately $125,000 in equity proceeds to Plaintiff. Unbeknownst to Plaintiff, ALLIANCE had agreed and conspired with GOLDEN KEY and MOHAMMADI, among others, to channel almost all of the equity proceeds directly to MOHAMMADI, GOLDEN KEY, and to itself.

22. In addition to suffering the loss of the equity in her home as described above, Defendants' fraudulent mortgage refinancing scheme also caused Plaintiff to incur additional, undisclosed financial obligations. Despite his promises to do so, neither GOLDEN KEY nor MOHAMMADI ever paid off Plaintiff's debts nor did they ensure that her property taxes, homeowners' association dues and insurance were paid, thereby causing Plaintiff to incur penalties and interest. In addition, the transfer of title to SAHIBZADA, the so-called investor, triggered a reassessment of Plaintiff's property value and a concomitant increase in Plaintiff's property tax basis.

23. Neither GOLDEN KEY nor MOHAMMADI improved Plaintiff's credit score nor did they secure a new low interest mortgage by December 1, 2005 as they had promised. In fact, Plaintiff's credit score has declined as a result of their actions. Worse yet, their fraudulent refinancing scheme significantly increased the loan-to-value ratio on Plaintiff's home and impeded her ability to obtain new financing on her home to replace the mortgages fraudulently obtained by Defendants. Plaintiff anticipates that she will incur additional, significant fees and expenses in connection with obtaining a new mortgage to replace the existing NEW CENTURY loans.

## FIRST CAUSE OF ACTION
### FRAUD

– 4 –

(Against GOLDEN KEY, MOHAMMADI, NAZMI, NEW CENTURY and ALLIANCE)

24. Plaintiff repeats and realleges paragraphs 1 – 23 above as if fully set forth herein.

25. Defendants, and each of them, knowingly and willfully misrepresented and conspired to misrepresent material facts to Plaintiff in order induce her to refinance her home through them in the manner alleged above so that Defendants could deprive Plaintiff of her title and equity in the home.

26. As alleged more fully above, at their October 2004 meeting MOHAMMADI represented to Plaintiff that:

    a. Within a one-year time period, the refinancing program would improve her credit score such that she would qualify individually for a low interest mortgage superior to her then existing loan;

    b. by December 1, 2005, he would have arranged for Plaintiff to assume a new low interest mortgage in her own name that would replace the loans taken out by the investor;

    c. she would have title to her home returned as soon as the refinancing closed;

    d. the refinancing transaction would not in any way affect her ownership rights in her home;

    e. only enough equity would be taken out of her home to pay off outstanding debts listed on her credit report and to pay her mortgage, property taxes, insurance and homeowners' association dues for a one-year period;

    f. the equity proceeds from the refinancing would be placed into a bank account specifically set up for her, and her property taxes, homeowner's association dues, and insurance fees would be paid in full from that account during the one-year period;

    g. he would use the equity proceeds to pay off all Plaintiff's outstanding debts listed on her credit report; and

    h. that the refinancing program was safe and legal.

27. At the November 29, 2004, meeting MOHAMMADI reiterated that the refinancing program would improve her credit score and that by December 1, 2005 he would have a new loan interest loan ready for Plaintiff to assume, in her own name. During that meeting, Atta and Hamidi concurred in MOHAMMADI's misrepresentations and repeatedly encouraged and reassured Plaintiff that they would be working on improving her credit and their refinancing program would be to her benefit.

28. Defendants knew that these representations were false when they were made.

29. Defendants made such representations with the intent to induce Plaintiff to enter into transactions as set forth above including, without limitation, signing the numerous documents presented to her by Defendants to facilitate the refinancing of her home so that Defendants could extract and convert the equity in Plaintiff's home for their own uses.

30. In reasonable reliance on Defendants' representations, Plaintiff took the actions alleged herein in determining whether to enter into the proposed transactions.

31. The conduct of Defendants GOLDEN KEY and MOHAMMADI as alleged above was part of a conspiracy with the other Defendants including, without limitation, ALLIANCE, NEW CENTURY and SAHIBZADA (collectively "co-conspirators") to knowingly and willfully misrepresent material facts from Plaintiff in order induce her to refinance her home. Each of the co-conspirators participated and furthered the fraudulent refinancing scheme by providing "services" and making representations regarding those services to give the refinancing program a false veneer of credibility and to otherwise give Plaintiff the false assurance that the refinancing program was legitimate and safe:

   a. ALLIANCE furthered the conspiracy by processing the escrow for the refinancing on Plaintiff's home in a manner intended to conceal Defendants' fraudulent scheme, and by distributing, without proper authority, Plaintiff's equity proceeds to itself and its co-conspirators, among others;

   b. NEW CENTURY furthered the conspiracy by processing and funding the loans with knowledge that they were improper; and

c.  SAHIBZADA furthered the conspiracy by taking title to and refinancing Plaintiff's home with knowledge that the transaction was for an improper purpose and/or was based on documentation fraudulently obtained and/or containing false information.

32.  The co-conspirators named herein also aided and abetted the fraudulent scheme alleged herein by knowingly providing substantial assistance and/or encouragement to other Defendants in the manner alleged herein, all to the detriment of Plaintiff.

33.  As a proximate result of Defendants' misrepresentations and acts alleged herein, Plaintiff has sustained damages in an amount in excess of $25,000, according to proof.

34.  In engaging in the acts alleged herein, Defendants acted fraudulently, maliciously, oppressively and with callous and intentional disregard of Plaintiff's interests and subjected her to unjust hardship and emotional trauma, with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiff. As such, Plaintiff is entitled to punitive damages.

35.  Wherefore, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
### FRAUD BY CONCEALMENT
(Against GOLDEN KEY, MOHAMMADI, NAZMI, NEW CENTURY and ALLIANCE)

36.  Plaintiff repeats and realleges paragraphs 1 – 35 above as if fully set forth herein.

37.  Defendants, and each of them, actively and intentionally concealed and/or suppressed and conspired to conceal and/or suppress material facts from Plaintiff with respect to their scheme to deprive Plaintiff of her title to and the equity in her home. Defendants should have, but failed to disclose, without limitation, that:

a.  The proceeds from the refinancing would be paid to directly to MOHAMMADI, GOLDEN KEY, ALLIANCE and their co-conspirators, while none of the proceeds from the refinancing would be paid to Plaintiff;

b.  transferring title to her home to the investor would impact her ownership rights;

c.  the refinancing program would result in an increase in her property taxes and other fees;

  d. the refinancing would result in a first and second mortgage being taken out on her home on financial terms less favorable than her existing mortgage, including higher interest rates and the inclusion of prepayment penalty clauses;

  e. there were significant fees and expenses associated with the refinancing that would be deducted from her equity proceeds;

  f. refinancing her home would increase the loan-to-value ratio on the home thereby negatively impacting Plaintiff's ability to obtain new financing on her home to replace the mortgages obtained by Defendants; and

  g. Alliance and other co-conspirators would be compensated with Plaintiff's equity proceeds for "services" that in actuality were designed to further their fraudulent scheme.

38. Defendants, and each of them, had a duty to disclose these facts to Plaintiff based on their fiduciary or confidential relationship and/or their knowledge of material facts and that such facts are neither known nor readily accessible to Plaintiff.

39. By concealing the foregoing facts, these Defendants intended to and did induce Plaintiff to enter into transactions as set forth above, including, without limitation, signing various documents presented to her by Defendants to facilitate the refinancing of the home so that Defendants could extract and convert the equity in Plaintiff's home for their own use.

40. Had Plaintiff known the facts concealed from her by these Defendants, she would not have entered into any transactions with any of them.

41. The conduct of the Defendants GOLDEN KEY and MOHAMMADI as alleged above was part of a conspiracy formed with their co-conspirators (i.e., ALLIANCE, NEW CENTURY and SAHIBZADA) to knowingly and willfully misrepresent material facts from Plaintiff in order induce her to refinance her home.

42. Each of the Defendants participated and furthered the fraudulent refinancing scheme by providing "services" and making representations regarding those services to give the refinancing program a false veneer of credibility and to otherwise give Plaintiff the false assurance that the refinancing program was legitimate and safe:

    a. ALLIANCE furthered the conspiracy by processing the escrow for the refinancing on Plaintiff's home in a manner intended to conceal Defendants' fraudulent scheme, and by distributing, without legitimate authority, Plaintiff's equity proceeds to itself and its co-conspirators, among others;

    b. NEW CENTURY furthered the conspiracy by processing and funding the loans with knowledge the loans were part of the fraudulent scheme; and

    c. SAHIBZADA furthered the conspiracy by taking title to and refinancing the Property with knowledge that the transaction was for an improper purpose and/or was based on documentation fraudulently obtained and/or containing false information;

43. The co-conspirators named herein also aided and abetted the fraudulent scheme alleged herein by knowingly providing substantial assistance or encouragement to other Defendants in the manner alleged herein, all to the detriment of Plaintiff.

44. As a proximate result of Defendants' fraud and deceit, Plaintiff has sustained damages in an amount in excess of $25,000, according to proof.

45. In engaging in the acts alleged herein, Defendants acted fraudulently, maliciously, oppressively and with callous and intentional disregard of Plaintiff's interests and subjected her to unjust hardship and emotional trauma, with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiff. As such, Plaintiff is entitled to punitive damages.

46. Wherefore, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
(Against GOLDEN KEY, MOHAMMADI, NAZMI, NEW CENTURY and ALLIANCE)

47. Plaintiff repeats and realleges paragraphs 1 – 46 above as if fully set forth herein.

48. Defendants MOHAMMADI and GOLDEN KEY owed Plaintiff a fiduciary duty to act in the highest good faith and undivided loyalty and service, to act in Plaintiff's best interest, and to make the fullest disclosure of all material facts that might affect Plaintiff's decision regarding the transactions alleged above.

49. Defendant ALLIANCE owed Plaintiff a fiduciary duty to carry out the Plaintiff's instructions; to inform her of all knowledge it actually, or could have, acquired during its agency

with respect to any material facts that might affect her decision concerning the transactions at issue; to inform her of suspicious facts that might indicate she was being defrauded; to ensure that mortgage brokers were licensed; and to conduct itself at all times with the utmost honesty, skill and diligence respecting the escrow involving Plaintiff's property.

50. Defendants breached their respective fiduciary duties to Plaintiff by engaging in the conduct alleged above, including, without limitation, misrepresenting and withholding material information from Plaintiff for the purpose of inducing her to take the actions alleged herein.

51. Each Defendant is jointly and severally liable for each of the other Defendants' breach of its respective fiduciary duties as a co-conspirator and/or as an aider and abettor, as alleged above.

52. As a result of Defendants' breach of their respective fiduciary duties and other actions, Plaintiff has sustained damages in an amount in excess of $25,000, according to proof.

53. In engaging in the acts alleged herein, Defendants acted fraudulently, maliciously, oppressively and with callous and intentional disregard of Plaintiff's interests and subjected her to unjust hardship and emotional trauma, with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiff. As such, Plaintiff is entitled to punitive damages.

54. Wherefore, Plaintiff prays for judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
(Against GOLDEN KEY, MOHAMMADI, NAZMI, NEW CENTURY and ALLIANCE)

55. Plaintiff repeats and realleges paragraphs 1 – 54 above as if fully set forth herein.

56. Defendants, and each of them, owed Plaintiff a duty of care to accurately disclose the nature of the transactions being entered into by Plaintiff and to disclose the true nature and foreseeable consequences of the transactions at issue.

57. Defendants, and each of them, breached their duty of care to Plaintiff by failing to exercise reasonable care in connection with those transactions, to properly disclose to Plaintiff

the true nature of the transactions, and by failing to properly disburse the equity proceeds to Plaintiff from the refinancing of her home.

58. As a direct and proximate result of Defendants' breach of their respective duties of care, Plaintiff has sustained damages in an amount in excess of $25,000, according to proof.

59. Wherefore, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
NEGLIGENCE
(Against All Defendants)

60. Plaintiff repeats and realleges paragraphs 1 – 59 above as if fully set forth herein.

61. Defendants, and each of them, owed Plaintiff a duty of care consistent with their relationship with the Plaintiff, as alleged above.

62. Defendants, and each of them, breached their respective duty of care by failing to: adequately monitor and supervise their agents and/or employees; ensure the accuracy, authenticity and/or propriety of documents prepared in connection with the refinancing of Plaintiff's property; thoroughly review and analyze documents prepared in connection with the refinancing of Plaintiff's property; ensure that Plaintiff's interest in her home would not be negatively impacted; ensure that Plaintiff not incur any avoidable penalties, taxes and interest; provide Plaintiff with accurate and thorough information to make an informed decision regarding the transactions alleged above; and/or to act in Plaintiff's financial best interest.

63. As a direct and proximate result of Defendants' breach of their respective duties of care, Plaintiff has sustained damages in an amount in excess of $25,000, according to proof.

64. Wherefore, Plaintiff prays for judgment as set forth below.

**SIXTH CAUSE OF ACTION**
VIOLATION OF CONSUMER LEGAL REMEDIES ACT
(Against All Defendants)

65. Plaintiff repeats and realleges paragraphs 1 – 64 above as if fully set forth herein.

66. This cause of action is brought pursuant Consumer Legal Remedies Act ("CLRA"), Civil Code section 1770.

67. The conduct of Defendants as alleged above constitutes unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of the CLRA.

Defendants misrepresented, among other things, that their services would be financially beneficial to Plaintiff, would improve her credit score, would allow her to obtain a low interest loan in her own name, and that their services were legal and safe. Each of these representations was false and proximately resulted in the damages discussed above.

68. In engaging in the acts alleged herein, Defendants acted fraudulently, maliciously, oppressively and with callous and intentional disregard of Plaintiff's interests and subjected her to unjust hardship and emotional trauma, with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiff. As such, Plaintiff is entitled to punitive damages.

69. Wherefore, Plaintiff prays for judgment as set forth below, including an award of attorneys' fees under Civil Code section 1780, subdivision (d).

## SEVENTH CAUSE OF ACTION
### FOR UNFAIR BUSINESS PRACTICES – BUS. & PROF. CODE § 17200
(Against All Defendants)

70. Plaintiff repeats and realleges paragraphs 1 – 69 above as if fully set forth herein.

71. This cause of action is brought pursuant to Business & Professions Code sections 17200 *et seq.*

72. Defendants' conduct as alleged above including, without limitation, engaging in fraud, breaching their fiduciary duties, and conversion of Plaintiff's property, is contrary to California law and/or public policy and therefore constitutes unlawful, unfair and/or fraudulent business practices.

73. As a proximate result of Defendants' wrongful acts, Plaintiff has sustained damages in an amount in excess of $25,000, according to proof.

74. Wherefore, Plaintiffs pray for judgment as set forth below.

## EIGHTH CAUSE OF ACTION
### CONVERSION
(Against All Defendants)

75. Plaintiff repeats and realleges paragraphs 1 – 74 above as if fully set forth herein.

76. Plaintiff has an ownership right and/or right to possess her home and any equity interest she has therein.

77. Defendants, and each of them, intentionally and wrongfully have withheld and otherwise exercised dominion and control over sums belonging to Plaintiff and converted such amounts to their personal use.

78. As a result of Defendants' conversion of her property, Plaintiff has suffered damages in the amount of at least $125,000.

79. In engaging in the acts alleged herein, Defendants acted fraudulently, maliciously, oppressively and with callous and intentional disregard of Plaintiff's interests and subjected her to unjust hardship and emotional trauma, with knowledge that their conduct was substantially likely to vex, annoy and injure Plaintiff. As such, Plaintiff is entitled to punitive damages.

80. Wherefore, Plaintiff prays for judgment as set forth below.

### NINTH CAUSE OF ACTION
#### DECLARATORY RELIEF RE DEEDS OF TRUST
(Against All Defendants)

81. Plaintiff repeats and realleges paragraphs 1 – 80 above as if fully set forth herein.

82. An actual controversy presently exists between Plaintiff and one or more of the Defendants respecting the rights, duties and obligations relating to the home described above.

83. Plaintiff seeks a judicial determination and declaration of the parties' respective rights, duties and obligations regarding Plaintiff's home, and specifically, a determination that the transfer of title of Plaintiff's home to SAHIBZADA and any deeds of trust recorded against the home arising from the refinancing including, without limitation, deeds of trust recorded by NEW CENTURY, were procured by fraud and/or through means that are contrary to law and/or public policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For damages in an amount according to proof;

2. A declaration that the transfer of title of Plaintiff's home to SAHIBZADA, recorded on or about November 12, 2004, and that any deeds of trust recorded against the Property relating to that transfer including, without limitation, deeds of trust recorded by NEW CENTURY, are null and void, and that none of the Defendants have any no right, title or interest in or to Plaintiff's property;

3. Punitive damages;

4. Prejudgment interest at the prevailing rate;

5. Costs and expenses;

6. Attorneys' fees awardable under law; and

7. Such other relief as the Court deems just.

Plaintiff hereby demands a jury trial.

DATED: July 20, 2006

KERR & WAGSTAFFE LLP

By _____
H. SINCLAIR KERR, JR.
Attorneys for Plaintiff
LISA F. CLARK

23846_3