PLAINTIFF'S EXHIBIT

FROM CHICAGO TITLE INS CO  (THU) 4. 28' 05 13:33/ST. 13:32/NO

## ISSUING AGENCY CONTRACT

This Issuing Agency Contract ("Contract") is made and entered into this 1st day of September, 2000 by and between CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, hereafter referred to as "Principal" and AMERICAN 1ST NATIONAL TITLE, INC., a Maryland corporation, hereafter referred to as "Agent.

In consideration of the promises and the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Principal and Agent agree as follows:

1. **APPOINTMENT OF AGENT.** Principal hereby appoints Agent as a policy issuing agent of Principal for the sole purpose of issuing title insurance commitments, policies, endorsements and other title assurances approved by Principal and by all required regulatory agencies, now in existence or hereafter developed, relating to real property located in all counties in the state of Maryland in accordance with the terms of this Contract. During the term of this Contract, Agent shall have the right to issue title insurance commitments, policies and endorsements of any title insurance company in the referenced geographic area.

   Notwithstanding the foregoing, pertaining to the referenced geographic area, Principal and its affiliates shall have, and do retain, the right to service directly any customer, and Principal or its affiliates may, without limitation, do any of the following:
   (i) issue directly, from any of its offices, or from any location nationwide, commitments, policies, endorsements, or any other title assurance or evidence, search or real estate information product, or any other product whatsoever, now in existence or hereafter developed (all of the foregoing are hereafter collectively referred to as "Information");
   (ii) purchase or otherwise obtain from any source any search data or Information.

2. **CONTRACT TERM.** The term of this Contract shall commence on September 11, 2000 and may be terminated by either party giving notice to the other pursuant to the terms of Paragraph 9A herein.

3. **DUTIES OF PRINCIPAL.** Principal shall:

   A. Furnish Agent forms of commitments, policies, endorsements and other forms required for transacting Agent's title insurance business.

   B. Furnish Agent guidelines and instructions for transacting Agent's title insurance business.

   C. Resolve all risk assumption questions submitted by Agent.

   D. Arrange for reinsurance where required, to the extent such reinsurance is available.

4. **DUTIES OF AGENT.** Agent shall:

   A. Receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with Principal's bulletins, manuals and other instructions of Principal.

   B. Base each policy issued on behalf of Principal upon a determination of insurability of title which includes
   (i) a search from earliest public records or in accordance with Principal's written instructions; and
   (ii) an examination of all documents affecting title to the subject property.

   C. Supply, at Agent's expense, office space and qualified personnel for conducting business pursuant to this Contract by the date hereof.

   D. Prepare, preserve and maintain in Agent's possession a separate file for each application for title insurance e containing all documents upon which Agent relied to make its determination of insurability, including, but not limited to: affidavits, maps, plats, lien waivers, surveys, title reports, searches, examinations, and work sheets, together with a copy of each commitment, policy, endorsement and other title assurance issued as well as closing statements, disbursement worksheets, copies of all checks disbursed and receipted, deposit slips, escrow agreements and any other instruments or documents executed or created at Closing. Title to files shall vest in Principal. Upon termination of this Contract, Agent shall deliver such files to Principal, which files may not be copied by Agent without the written consent of Principal. Agent hereby grants to Principal the right to enter upon the premises of Agent or other locations where such files are maintained, during business hours, for purposes of recovering possession thereof.

   In the event Agent ceases to engage in the title insurance business, title to such files shall vest in Principal, and Agent shall deliver said files to Principal immediately upon termination of this Contact. Agent hereby grants to Principal the right to enter upon the premises of Agent or other locations where such said files are maintained, during business hours, for purposes of recovering possession thereof.

   In the event Agent sells, transfer or conveys its title insurance operations or any interest therein to a third party, Principal shall have the right to copy such files, and the right to copy shall survive any sale, transfer or encumbrance of Agent's title insurance operations or an interest therein. Agent hereby grants to Principal the right to enter upon the premises of Agent or other locations where said title files are maintained, during business hours, for purposes of making a reproduction thereof.

   E. Send to Principal a copy of each policy, endorsement and other title assurance issued by Agent.

   F. Maintain a policy register in a form approved by Principal showing the disposition of all policies and other pre-numbered forms furnished by Principal. Upon request by Principal, Agent shall furnish a statement accounting for all such forms and shall return all spoiled, obsolete or canceled policies and forms to Principal. Agent shall safely maintain and store all forms furnished by Principal and hereby assumes liability for loss or damage suffered by Principal by reason of Agent's wrongful or negligent use or storage of such forms.

Rev: 2/98

G. Provide Principal by March 31st of each year, copies of annual financial statements of the agency and an updated Information Affidavit, such financial statements to be kept confidential by Principal.

H. Perform such services and render such assistance as Principal may reasonably request in connection with any claim or litigation arising from a commitment, policy, endorsement or other title assurance issued by Agent or by Principal on behalf of Agent or on account of any conduct of Agent, whether such claim or litigation is instituted during the term of this Contract or following termination thereof. In addition, Agent shall promptly forward to Principal:
   (i) all documents received by Agent in which Principal is a party to judicial proceedings;
   (ii) all written complaints or inquiries made to any regulatory agency regarding transactions involving title insurance policies, endorsements, commitments or other title assurances of Principal;
   (iii) any information alleging a claim involving a policy, commitment, endorsement or other title assurance of Principal or a transaction for which Principal may be liable; and
   (iv) all original documentation and work papers associated with the transaction or conduct giving rise to any claim or complaint.

I. In those instances where Agent closes real estate transactions and receives and disburses funds of others, Agent shall:
   a. maintain said funds safely in accounts fully insured by an agency of the Federal Government and in accordance with applicable state laws;
   b. maintain separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transaction(s) in which Principal's title insurance is involved;
   c. disburse such funds only for the purposes for which they were entrusted;
   d. maintain an escrow ledger for each title insurance order involving fiduciary funds, which ledger shall separately reflect the escrow activity for each order;
   e. maintain a control account showing total fiduciary liability for each escrow bank account; and
   f. reconcile monthly the control account and ledger records to the monthly bank statement.

Principal shall have the right to examine, audit and approve Agent's accounting procedures to assure compliance with Principal's Escrow Accounting Manual, a copy of which is being delivered to Agent simultaneously with the execution of this Contract.

J. Comply with all applicable laws and regulations relating to the conduct of Agent's business.

K. Comply with all bulletins, manuals and other instructions furnished to Agent in writing, by facsimile or other electronic transmission by Principal. If any reasonable doubt exists with regard to the insurability or marketability of title or as to whether a particular risk is extraordinary or extra-hazardous, Agent shall contact Principal or Principal's designated underwriting counsel for guidance and approval.

L. The parties hereto acknowledge that Agent is not an agent of Principal for purposes of conducting a Closing, as defined in Paragraph 7H hereof; however, because Principal may be subject to allegations of liability for acts of Agent with regard to Agent's settlement or escrow business, Agent shall cooperate with Principal in the performance of audits of Agent's escrow records, accounts and procedures. In addition, Agent agrees to provide to Principal, within thirty (30) days following receipt, a copy of any audit conducted by any accounting firm with respect to Agent's escrow records, accounts or procedures.

M. Timely furnish the insured with a title insurance policy and other title assurances Agent is obligated to issue.

N. Maintain in confidence the terms and conditions of this Contract.

5. **RATES AND REMITTANCES.** Attached hereto and made a part hereof is a Schedule of Rates and Remittances. Agent shall quote, charge and collect the Rates set forth therein and shall report and remit to Principal premiums as set forth therein.

6. **INSURANCE.** Agent shall immediately obtain and keep in full force, at Agent's expense, during the term of this Contract
   (i) Title Insurance Agent's Errors and Omissions Policy with opinion of title coverage, with an insurance company acceptable to Principal in a sum of not less than $500,000. per claim and $1,000,000. aggregate with a deductible provision of no more than $5,000. per loss; and
   (ii) Fidelity Insurance of $100,000 covering all officers, employees, shareholders, partners, members and other principals of Agent with a loss payee provision in favor of Principal.

Agent agrees to furnish Principal annually with a copy of such policies and any renewals thereof and any other evidence that Principal may deem necessary to demonstrate compliance with this provision. Agent hereby assigns to Principal, Principal's legal representatives and assigns, all sums, claims, demands and causes of action of whatsoever kind, that Agent may have against Agent's Errors and Omissions insurance company and against Agent's Fidelity insurance company, in connection with all claims arising out of the actions of Agent, its employees, agents, independent contractors and subcontractors which fall within the scope of Paragraph 6 hereof.

7. **LIMITATIONS ON AGENT'S AUTHORITY.** Agent shall not, without prior written approval of Principal:

   A. Commit Principal to a risk in excess of $500,000. This limit shall include not only the commitment, policy, endorsement and/or other title assurance immediately being issued, but also risks where
      (i) Agent knows or has reason to believe that additional title insurance will be ordered covering substantially the same real property; or (ii) the aggregate liability will exceed the referenced limit, such as condominium and time share projects (hereafter referred to as the "Risk Limit").
   B. Commit Principal to insure a title involving a risk which, if disclosed to Principal, would have been determined to be extraordinary or extra-hazardous, or which Agent knew or could have discovered, through the exercise of reasonable diligence, to have been based upon a disputed title. The provisions hereunder shall apply notwithstanding the fact that the dollar amount of the transaction or the risk is less than the Risk Limit set forth in Paragraph 7A hereof.

FROM CHICAGO TITLE INS CO      (THU) 4. 28' 05 13:34/ST. 13:32/NO. 4861310464 P  6

C. Alter the printed language of any commitment, policy, endorsement or other form furnished by Principal, or commit Principal to any particular interpretation of the terms or provisions thereof or issue any policy, endorsement or other title assurance which has not been approved for use by all required state regulatory agencies and by Principal.

D. Adjust or otherwise settle or attempt to settle any claim for loss for which Principal may become liable or engage counsel to represent Principal or the Insured.

E. Accept service of process on Principal. Agent shall immediately notify Principal of any attempted service of process upon Agent for Principal. Agent shall also immediately notify Principal of any matter that is or may become a claim against Principal of which Agent has knowledge.

F. Incur bills or debts chargeable to Principal.

G. Commit Principal to a risk with respect to a transaction in which Agent, a member of Agent's immediate family, a partner, member or shareholder of Agent or a member of the immediate family of a partner, member or shareholder of Agent has or will have a legal or an equitable interest.

H. Handle escrow funds or conduct a Closing, as hereafter defined, of a transaction in which Agent, a member of Agent's immediate family, a partner, member or shareholder of Agent or a member of the immediate family of a partner, member or shareholder of Agent has or will have a legal or an equitable interest. The term "Closing" as used in this Contract shall mean: the handling and disbursement of settlement funds or the providing of settlement services.

I. Insure or commit to insure any property for an amount other than the fair market value of the estate or interest to be insured or the amount of the mortgage or portion thereof and other indebtedness secured thereby to be insured.

J. Neither Agent nor any Affiliated Attorney of Agent will represent any insured as against the interests of Principal. The term "Affiliated Attorney" as used herein shall mean any attorney who is an employee, associate, member, shareholder, or partner of Agent or any law firm that owns any legal or beneficial interest in Agent.

8. **LIABILITY OF AGENT.** Agent shall be liable to and agrees to indemnify and to save harmless Principal for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following:

A. Errors or omissions in any commitment, policy, endorsement or other title assurance which were disclosed by the application, by the abstracting, examination or other work papers or which were known to Agent or which, in the exercise of due diligence, should have been known to Agent;

B. Errors and/or omissions in any commitment, policy, endorsement or other title assurance caused by the abstracting or examination of title by Agent, Agent's employees, Agent's subcontractors or Agent's independent contractors;

C. Failure of any title insurance commitment, policy, endorsement or other title assurance to correctly reflect the status of title, the description of the insured real property or the vesting of title;

D. Failure of Agent, its officers and employees to comply with the terms of this Contract or with the guidelines, regulations or instructions given to Agent by Principal;

E. Any improper Closing or attempted Closing by Agent, including but not limited to:
 (i) loss or misapplication of customer funds, documents, or any other thing of value entrusted to Agent in any custodial or fiduciary capacity resulting in loss to Principal;
 (ii) failure to disburse properly or close in accordance with escrow and/or closing instructions;
 (iii) misappropriation of escrow or closing funds by Agent, its officers, subcontractors or employees;
 (iv) any loss pursuant to an Insured Closing Letter issued by Principal on behalf of Agent; or
 (v) failure to disburse immediately available funds.

F. Issuance of a commitment, policy, endorsement or other title assurance insuring an extra-ordinary risk, extra-hazardous risk, or a risk Agent knew or should have known to be based upon a disputed title, not approved by Principal in advance of the issuance by Agent of documents committing Principal to insure.

G. Any act or failure to act by Agent or its employees, officers, agents, independent contractors or subcontractors which results in allegations of liability with respect to Principal or which results in Principal being liable for punitive, contractual or extra-contractual damages.

H. Assessment of a fine against Principal by the State Department of Insurance or the entity which supervises title insurance as a result of Agent's violation of any regulations of the State Department of Insurance or State laws or regulations applicable to title insurance.

I. Failure of Agent to timely furnish insured with a title policy which Agent is obligated to issue.

Agent agrees to immediately notify its fidelity bond carrier or errors and omissions insurance carrier of any claim for which Agent may be liable to Principal.

Rev: 2/98

9. **TERMINATION OF ISSUING AGENCY CONTRACT.** Either party hereto may cancel this Contract by giving to the other party thirty (30) days written notice by registered or certified mail of intent to cancel. Such written notice to Principal shall be addressed to the national office of Principal or to the regional office of Principal responsible for Agent's supervision. Such written notice to Agent shall be sent to the last known business address of the Agent. In the event of a material breach of this Contract by either party hereto, the non-breaching may terminate immediately by giving notice in the manner set forth in this paragraph. Material breach on the part of the Agent shall include material deviation from the guidelines and instructions of Principal furnished to Agent.

Upon expiration or termination of this Contract, Agent shall immediately furnish to Principal a true, correct and complete accounting of all remittances due hereunder, all orders involving Principal's title assurances which have not closed, all orders involving Principal's title assurances which have closed but for which no policy has been issued and all commitments, policies, endorsements and other title assurances of Principal which have been issued but not reported to Principal. Agent shall also provide Principal access to all forms and all files relating to commitments, policies and other title assurances of Principal. Agent shall promptly make and accounting of and deliver to Principal all unused title insurance forms, manuals, advertising, promotional materials, other supplies exhibiting Principal's name or any variation thereof and all other supplies furnished by Principal to Agent, except those which Principal authorizes Agent to retain for purposes of completing pending transactions.

10. **EXAMINATION OF RECORDS.** Agent agrees to provide to Principal access for examination purposes at any reasonable time or times to all files, books and accounts and other records of Agent relating to the business carried on hereunder and relating to the Closing of transactions involving a commitment to issue Principal's title assurances. Such right of examination may also be exercised after termination of this Contract.

11. **SHORTAGE OF FUNDS.** In the event a shortage is revealed or discovered in Agent's accounts of funds entrusted to Agent by others or in the remittances due Principal hereunder, then Principal may declare immediately due and payable any debts owed by Agent, including any funds for which Principal may be responsible or have a liability therefor and Agent grants to Principal a lien on all property of Agent as security for the repayment thereof. On demand by Principal, Agent shall immediately make good the shortage or convey and deliver possession of such property to Principal. A conveyance of such property shall not of itself relieve Agent of further liability for such shortage, but may be utilized to mitigate the liability of Agent therefor.

12. **ADVERTISING.** Agent agrees that it will not use the tradename, trade mark or any variation thereof of Principal or any of its subsidiaries or affiliated entities on any of its advertising without the prior written approval of Principal.

13. **CLAIMS.** If a policy claim is made to Agent, if Agent receives notice of a potential claim, or if Agent receives notice of litigation which may result in a claim, Agent shall, immediately, by facsimile transmission or overnight mail, give notice of same to Principal and shall lend all reasonable assistance, without charge to Principal, in investigating, adjusting or contesting said claim. Agent is not authorized to act as or to provide counsel in connection with said claim; however, Principal may seek Agent's assistance in the selection of counsel.

14. **NOTICES.** Except as otherwise specifically set forth in this Contract, all notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered by hand or when mailed first class postage prepaid, certified or registered mail, return receipt requested:

    If to Principal, to:   Chicago Title Insurance Company
                           19 East Fayette Street, Suite 300
                           Baltimore, MD 21202
                           Attention: State Manager

    If to Agent, to:       American 1st National Title, Inc.
                           133 Defense Highway, Suite 108
                           Annapolis, MD 21401
                           Attention: Kathleen M. Cianciosi, President

    or to such other address or addresses as each of the parties may communicate in writing to the other.

15. **NON-WAIVER BY PRINCIPAL.** The failure of Principal to enforce strictly the performance by Agent of any provision of this Contract or to exercise any right or remedy following from Agent's breach of any condition herein or the acceptance by Principal of any payment, remittance or other performance during Agent's failure to perform or during Agent's breach shall not be deemed a waiver by Principal of its rights under this Contract as written and shall not be construed to be an amendment or modification of this Contract as written.

16. **ENTIRE AGREEMENT; PRIOR AGREEMENTS.** This Contract sets forth the entire understanding and agreement between the parties hereto with respect to the subject matter hereof. No terms, conditions, or warranties, other than those contained herein, and no amendments or modifications hereto shall be valid unless made in writing and signed by the parties hereto. This Contract supersedes all prior understandings of any kind, whether written or oral, with respect to the Contract and the subject matter hereof.

17. **ASSIGNMENT; BINDING EFFECT.** This Contract is not assignable by Agent except upon written consent of Principal. This Contract is, however, binding on and inures to the benefit of any corporate successor, parent corporation, affiliate or wholly owned subsidiary of Principal. The duties and obligations of Agent and any signatory or guarantor hereunder shall survive any merger, consolidation, dissolution or change in ownership or structure of Agent.

18. **INVALID PROVISIONS.** If any provision of this Contract or the other documents contemplated hereby is held to be illegal, invalid, or unenforceable under present or future laws, such provisions shall be fully severable; the appropriate documents shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof or thereto; and the remaining provisions hereof or thereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision. There shall be added automatically as a part hereof or thereto a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and still be legal, valid and binding.

19. **GOVERNING LAW.** This Contract shall be governed by and construed in accordance with the laws of the State of Maryland.

Rev: 2/98

FROM CHICAGO TITLE INS CO                             (THU) 4.28' 05 13:35/ST. 13:32/NO. 4861310464 P   8

20. **ATTORNEY'S FEES. COSTS. VENUE.** If a legal action or other proceedings are brought for the enforcement of this Contract, or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees, administrative costs and other costs incurred in that action or proceeding in addition to any other relief to which it may be entitled. In addition, in the event of a material breach by Agent, Principal shall be entitled to recover all costs and loss associated with resolving the matter giving rise to said material breach. Venue for any such proceeding shall be a location of Principal's choice.

21. **OTHER AGREEMENTS VOID.** It is expressly understood and agreed by and between the parties hereto that this Contract sets forth all the promises, agreements, conditions and understandings between Principal and Agent with respect to this Contract and the subject matter hereof. Pertaining to such Contract, there are no promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.

22. **CONTRACT.** The terms and conditions of this Contract shall apply only to Principal named herein and shall not apply to any company now or hereafter affiliated with Principal or with Principal's parent Chicago Title and Trust Company.

IN WITNESS WHEREOF, this Contract is executed this 12th day of Oct., 2000.

AGENT: AMERICAN 1ST National Title, Inc.

_Kathleen M. Cianciosi_

Its: President


PRINCIPAL:

CHICAGO TITLE INSURANCE COMPANY

By: _Joseph H. Magnin_

Its: Resident Vice President

Rev: 2/98

# ISSUING AGENCY CONTRACT

This Issuing Agency Contract ("Contract") is made and entered into this 6th day of April, 2005 by and between Chicago Title Insurance Company hereafter referred to as "Principal" and Total Access Title, LLC hereafter referred to as "Agent."

In consideration of the promises and the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Principal and Agent agree as follows:

The Schedules indicated below are attached and incorporated by reference, if checked:

☒ Schedule A: Effective date, Term, Territory, Liability Limit, Compensation, General Liability of Agent
☒ Schedule B: Corporate Agent's Bond and Insurance requirements
☐ Schedule C: Attorney Agent's Bond and Insurance Requirements
☐ Schedule D: Personal Guaranty
☐ Schedule E: Other

1. **APPOINTMENT OF AGENT.** Principal hereby appoints Agent as a policy issuing agent of Principal for the sole purpose of issuing title insurance commitments, policies, endorsements and other title assurances approved by Principal and by all required regulatory agencies, now in existence or hereafter developed, relating to real property located as described in Schedule A.

   Notwithstanding the foregoing, pertaining to the referenced geographic area, Principal and its affiliates and subsidiaries shall have, and do retain, the right to service directly any customer, and Principal or its affiliates and subsidiaries may, without limitation, do any of the following:

   (i) issue directly, from any of its offices, or from any location nationwide, commitments, policies, endorsements, or any other title assurance or evidence, search or real estate information product, or any other product whatsoever, now in existence or hereafter developed (all of the foregoing are hereafter collectively referred to as "Information");

   (ii) purchase or otherwise obtain from any source any search data or information.

2. **CONTRACT TERM.** The term of this Contract shall commence on the Effective Date shown on Schedule A and may be terminated by either party giving notice to the other pursuant to the terms of Paragraph 9A.

3. **DUTIES OF PRINCIPAL.** Principal shall:
   A. Furnish Agent forms of commitments, policies, endorsements and other forms required for transacting Agent's title insurance business.
   B. Furnish Agent guidelines and instructions for transacting Agent's title insurance business.
   C. Resolve all risk assumption questions submitted by Agent.
   D. Arrange for reinsurance where required, to the extent such reinsurance is available.

4. **DUTIES OF AGENT.** Agent shall:
   A. Receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with Principal's bulletins, manuals and other instructions of Principal.
   B. Base each policy issued on behalf of Principal upon a determination of insurability of title which includes
      (i) a search from earliest public records or in accordance with Principal's written instructions; and
      (ii) an examination of all documents affecting title to the subject property.
   C. Prepare, preserve and maintain in Agent's possession a separate file for each application for title insurance containing all documents upon which Agent relied to make its determination of insurability, including, but not limited to: affidavits, maps, plats, lien waivers, surveys, title reports, searches, examinations, and work sheets, together with a copy of each commitment, policy, endorsement and other title assurance issued as well as closing statements, disbursement worksheets, copies of all checks disbursed and receipted, deposit slips, escrow agreements and any other instruments or documents executed or created at Closing. Title to files shall vest in Principal. Upon termination of this Contract, Agent shall deliver such files to Principal, which files may not be copied by Agent without the written consent of Principal. Agent hereby grants to Principal the right to enter upon the premises of Agent or other locations where such files are maintained, during business hours, for purposes of recovering possession thereof.
   D. Send to Principal information regarding each policy, endorsement and other title assurance issued by Agent, by voucher or magnetic or electronic format, as instructed by Principal.
   E. Maintain a policy register in a form approved by Principal showing the disposition of all policies and other pre-numbered forms furnished by Principal. Upon request by Principal, Agent shall furnish a statement accounting for all such forms and shall return all spoiled, obsolete or canceled policies and forms to Principal. Agent shall safely maintain and store all forms furnished by Principal and hereby assumes liability for loss or damage suffered by Principal by reason of Agent's wrongful or negligent use or storage of such forms.
   F. Perform such services and render such assistance as Principal may reasonably request in connection with any claim or litigation arising from a commitment, policy, endorsement or other title assurance issued by Agent or by Principal on behalf of Agent or on account of any conduct of Agent, whether such claim or litigation is instituted during the term of this Contract or following termination thereof. In addition, Agent shall promptly forward to Principal:
      (i) all documents received by Agent in which Principal is a party to judicial proceedings;

Page 1 of 5

    (ii)    all written complaints or inquiries made to any regulatory agency regarding transactions involving title insurance policies, endorsements, commitments or other title assurances of Principal;

    (iii)    any information alleging a claim involving a policy, commitment, endorsement or other title assurance of Principal or a transaction for which Principal may be liable; and

    (iv)    all original documentation and work papers associated with the transaction or conduct giving rise to any claim or complaint.

G.    In those instances where Agent closes real estate transactions and receives and disburses funds of others, Agent shall:

    (i)    maintain said funds safely in accounts fully insured by an agency of the Federal Government and in accordance with applicable state laws;

    (ii)    maintain separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transaction(s) in which Principal's title insurance is involved;

    (iii)    disburse such funds only for the purposes for which they were entrusted;

    (iv)    maintain an escrow ledger for each title insurance order involving fiduciary funds, which ledger shall separately reflect the escrow activity for each order;

    (v)    maintain a control account showing total fiduciary liability for each escrow bank account; and

    (vi)    reconcile monthly the control account and ledger records to the monthly bank statement.

Principal shall have the right to examine, audit and approve Agent's accounting procedures to assure compliance with Principal's Escrow Accounting Manual, a copy of which is being delivered to Agent simultaneously with the execution of this Contract.

H.    Comply with all applicable laws and regulations relating to the conduct of Agent's business.

I.    Comply with all bulletins, manuals and other instructions furnished to Agent in writing, by facsimile or other electronic transmission by Principal. If any reasonable doubt exists with regard to the insurability or marketability of title or as to whether a particular risk is extra-ordinary or extra-hazardous, Agent shall contact Principal or Principal's designated underwriting counsel for guidance and approval.

J.    The parties hereto acknowledge that Agent is not an agent of Principal for purposes of conducting a Closing, as defined in Paragraph 7H hereof; however, because Principal may be subject to allegations of liability for acts of Agent with regard to Agent's settlement or escrow business, Agent shall cooperate with Principal in the performance of audits of Agent's escrow records, accounts and procedures. In addition, Agent agrees to provide to Principal, within thirty (30) days following receipt, a copy of any audit conducted by any accounting firm with respect to Agent's escrow records, accounts or procedures.

K.    Agent acknowledges and agrees that Principal, from time to time, shall conduct audits of the Agent's escrow accounts pursuant to paragraphs 8, 9, & 20 of the Contract and issue a report(s), and that the audits are intended for internal use by the management of Principal, a subsidiary of Fidelity National Financial. Due to corporate reporting requirements, a copy of any report(s) may be forwarded to the Audit Services Department of Fidelity National Financial (FNF) and disclosed to other subsidiaries or affiliates of FNF, and from time to time the Audit Services Department of Fidelity National Financial (FNF) may conduct audits of your escrow accounts under the same conditions as Principal under the terms of the Contract and disclose its report(s) to subsidiaries and affiliates of FNF.

L.    Timely furnish the insured with a title insurance policy and other title assurances Agent is obligated to issue.

M.    Provide Principal, on an annual basis, such Fair Credit Reporting Act authorization forms as may be requested by Principal, said authorization forms and credit reports to be kept confidential by Principal.

N.    Maintain in confidence the terms and conditions of this Contract.

5.    **RATES AND REMITTANCES.** Agent shall quote, charge and collect the Rates set forth in Schedule A and Exhibit 1 attached hereto. Agent shall report and remit to Principal premiums as set forth therein on a monthly basis as collected on behalf of Company. If Schedule A discloses a minimum annual remittance amount, failure to remit said amount annually shall be considered a default under this contract. Agent assumes full responsibility for the collection of all premium and fees collected on behalf of Principal, and shall hold the same safely and segregated in an FDIC insured trust account, for the use and benefit of the Principal until paid to Principal. Said account shall be subject to audit by Principal.

6.    **INSURANCE.** Agent shall maintain insurance as shown on Schedule B or C, as appropriate, attached thereto.

7.    **LIMITATIONS ON AGENT'S AUTHORITY.**

A.    Agent shall not, without prior written approval of Principal commit Principal to a risk in excess of the amount shown in Schedule A. This limit shall include not only the commitment, policy, endorsement and/or other title assurance immediately being issued, but also risks where:

    (i)    Agent knows or has reason to believe that additional title insurance will be ordered covering substantially the same real property; or

    (ii)    the aggregate liability will exceed the referenced limit, such as condominium and time share projects (hereafter referred to as the "Risk Limit").

B.    Agent shall not commit Principal to insure a title involving a risk which, if disclosed to Principal, would have been determined to be extra-ordinary or extra-hazardous, or which Agent knew or could have discovered, through the exercise of reasonable diligence, to have been based upon a disputed title. The provisions hereunder shall apply notwithstanding the fact that the dollar amount of the transaction or the risk is less than the Risk Limit referred to in Paragraph 7A hereof.

C.    Agent shall not, without prior written approval of Principal alter the printed language of any commitment, policy, endorsement or other form furnished by Principal, or commit Principal to any particular interpretation of the terms or provisions thereof or issue any policy, endorsement or other title assurance which has not been approved for use by all required state regulatory agencies and by Principal.

D.    Agent shall not, without prior written approval of Principal adjust or otherwise settle or attempt to settle any claim for loss for which Principal may become liable or engage counsel to represent Principal or the insured.

E. Agent shall not, without prior written approval of Principal accept service of process on Principal. Agent shall immediately notify Principal of any attempted service of process upon Agent for Principal. Agent shall also immediately notify Principal of any matter that is or may become a claim against Principal of which Agent has knowledge.

F. Agent shall not, without prior written approval of Principal incur bills or debts chargeable to Principal.

G. Agent shall not, without prior written approval of Principal commit Principal to a risk with respect to a transaction in which Agent, a member of Agent's immediate family, a partner, member or shareholder of Agent or a member of the immediate family of a partner, member or shareholder of Agent has or will have a legal or an equitable interest.

H. Agent shall not, without prior written approval of Principal handle escrow funds or conduct a Closing, as hereafter defined, of a transaction in which Agent, a member of Agent's immediate family, a partner, member or shareholder of Agent or a member of the immediate family of a partner, member or shareholder of Agent has or will have a legal or an equitable interest. The term "Closing" as used in this Contract shall mean: the handling and disbursement of settlement funds or the providing of settlement services.

I. Agent shall not, without prior written approval of Principal insure or commit to insure any property for an amount other than the fair market value of the estate or interest to be insured or the amount of the mortgage or portion thereof and other indebtedness secured thereby to be insured.

J. Neither Agent nor any Affiliated Attorney of Agent will represent any insured as against the interests of Principal. The term "Affiliated Attorney" as used herein shall mean any attorney who is an employee, associate, member, shareholder, or partner of Agent or any law firm that owns any legal or beneficial interest in Agent.

8. **LIABILITY OF AGENT.** Agent shall be liable to and agrees to indemnify and to save harmless Principal for all attorneys' fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following:

A. Errors or omissions in any commitment, policy, endorsement or other title assurance which were disclosed by the application, by the abstracting, examination or other work papers or which were known to Agent or which, in the exercise of due diligence, should have been known to Agent;

B. Errors and/or omissions in any commitment, policy, endorsement or other title assurance caused by the abstracting or examination of title by Agent, Agent's employees, Agent's subcontractors or Agent's independent contractors;

C. Failure of any title insurance commitment, policy, endorsement or other title assurance to correctly reflect the status of title, the description of the insured real property or the vesting of title;

D. Failure of Agent, its officers and employees to comply with the terms of this Contract or with the guidelines, regulations or instructions given to Agent by Principal;

E. Any improper Closing or attempted Closing by Agent, including but not limited to:
   (i) loss or misapplication of customer funds, documents, or any other thing of value entrusted to Agent in any custodial or fiduciary capacity resulting in loss to Principal;
   (ii) failure to disburse properly or close in accordance with escrow and/or closing instructions;
   (iii) misappropriation of escrow or closing funds by Agent, its officers, subcontractors or employees;
   (iv) any loss pursuant to a Closing Protection Letter issued by Principal on behalf of Agent; or
   (v) failure to disburse immediately available funds.

F. Issuance of a commitment, policy, endorsement or other title assurance insuring an extra-ordinary risk, extra-hazardous risk, or a risk Agent knew or should have known to be based upon a disputed title, not approved by Principal in advance of the issuance by Agent of documents committing Principal to insure.

G. Any act or failure to act by Agent or its employees, officers, agents, independent contractors or subcontractors which results in allegations of liability with respect to Principal or which results in Principal being liable for punitive, contractual or extra-contractual damages.

H. Assessment of a fine against Principal by the State Department of Insurance or the entity which supervises title insurance as a result of Agent's violation of any regulations of the State Department of Insurance or State laws or regulations applicable to title insurance.

I. Failure of Agent to timely furnish insured with a title policy which Agent is obligated to issue.

Agent agrees to immediately notify its fidelity bond carrier or errors and omissions insurance carrier of any claim for which Agent may be liable to Principal.

9. **TERMINATION OF ISSUING AGENCY CONTRACT.**

i. Either party hereto may cancel this Contract by giving to the other party thirty (30) days written notice by registered or certified mail of intent to cancel. In the event of a material breach of this Contract by either party hereto, the non-breaching party may terminate immediately by giving notice in the manner set forth in this paragraph. Material breach on the part of the Agent shall include material deviation from the guidelines and instructions of Principal furnished to Agent.

ii. Upon expiration or termination of this Contract, Agent shall immediately furnish to Principal a true, correct and complete accounting of all remittances due hereunder, all orders involving Principal's title assurances which have not closed, all orders involving Principal's title assurances which have closed but for which no policy has been issued and all commitments, policies, endorsements and other title assurances of Principal which have been issued but not reported to Principal. Agent shall also provide Principal access to all forms and all files relating to commitments, policies and other title assurances of Principal. Agent shall promptly make an accounting of and deliver to Principal all unused title insurance forms, manuals, advertising, promotional materials, other supplies exhibiting Principal's name or any variation thereof and all other supplies furnished by Principal to Agent, except those which Principal authorizes Agent to retain for purposes of completing pending transactions. In the event this contract is terminated, the obligations to make any payments, including without limitation the Agent's liability for loss under paragraph 8 herein, to provide notification as to claims and to provide access to records and files shall continue beyond the date of termination.

Page 3 of 5

10. **EXAMINATION OF RECORDS.** Agent agrees to provide to Principal access for examination purposes at any reasonable time or times to all files, books and accounts and other records of Agent relating to the business carried on hereunder and relating to the closing of transactions involving a commitment to issue Principal's title assurances. Such right of examination may also be exercised after termination of this Contract.

11. **SHORTAGE OF FUNDS.** In the event a shortage is revealed or discovered in Agent's accounts of funds entrusted to Agent by others or in the remittances due Principal, hereunder, then Principal may declare immediately due and payable any debts owed by Agent, including any funds for which Principal may be responsible or have a liability therefore and Agent grants to Principal a lien on all property of Agent as security for the repayment thereof. On demand by Principal, Agent shall immediately make good the shortage or convey and deliver possession of such property to Principal. A conveyance of such property shall not of itself relieve Agent of further liability for such shortage, but may be utilized to mitigate the liability of Agent therefore.

12. **ADVERTISING.** Agent agrees that it will not use the trade name, trade mark or any variation thereof of Principal or any of its subsidiaries or affiliated entities on any of its advertising without the prior written approval of Principal.

13. **CLAIMS.** If a policy claim is made to Agent, if Agent receives notice of a potential claim, or if Agent receives notice of litigation which may result in a claim, Agent shall, immediately, by facsimile transmission or overnight mail, give notice of same to Principal and shall lend all reasonable assistance, without charge to Principal, in investigating, adjusting or contesting said claim. Agent is not authorized to act as or to provide counsel in connection with said claim; however, Principal may seek Agent's assistance in the selection of counsel.

14. **NOTICES.** Except as otherwise specifically set forth in this Contract, all notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered by hand or when mailed first class postage prepaid, certified or registered mail, return receipt requested as shown on Schedule A, or to such other address or addresses as each of the parties may communicate in writing to the other.

15. **NON-WAIVER BY PRINCIPAL.** The failure of Principal to enforce strictly the performance by Agent of any provision of this Contract or to exercise any right or remedy following from Agent's breach of any condition herein or the acceptance by Principal of any payment, remittance or other performance during Agent's failure to perform or during Agent's breach shall not be deemed a waiver by Principal of its rights under this Contract as written and shall not be construed to be an amendment or modification of this Contract as written.

16. **ENTIRE AGREEMENT; PRIOR AGREEMENTS.** This Contract, together with the Schedules and Exhibits attached hereto, set forth the entire understanding and agreement between the parties hereto with respect to the subject matter hereof. No terms, conditions, or warranties, other than those contained herein, and no amendments or modifications hereto shall be valid unless made in writing and signed by the parties hereto. This Contract supersedes all prior understandings of any kind, whether written or oral, with respect to the Contract and the subject matter hereof.

17. **ASSIGNMENT; BINDING EFFECT.** This Contract is not assignable by Agent except upon written consent of Principal. This Contract is, however, binding on and inures to the benefit of any corporate successor, parent corporation, affiliate or wholly owned subsidiary of Principal. The duties and obligations of Agent and any signatory or guarantor hereunder shall survive any merger, consolidation, dissolution or change in ownership or structure of Agent. If Agent is a corporation, limited liability corporation or partnership, disclosure must be made to Principal of any change in a significant interest in said entity within five (5) business days of the change. A change in significant interest shall be deemed to occur when an equity interest of more than five percent (5%) is sold to an outside party or when there is a sale of substantially all of Agent's assets.

18. **INVALID PROVISIONS.** If any provision of this Contract or the other documents contemplated hereby is held to be illegal, invalid, or unenforceable under present or future laws, such provisions shall be fully severable; the appropriate documents shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof or thereto; and the remaining provisions hereof or thereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision. There shall be added automatically as a part hereof or thereto a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and still be legal, valid and binding.

19. **GOVERNING LAW.** As shown on Schedule A attached hereto.

20. **ATTORNEY'S FEES, COSTS, VENUE.** If a legal action or other proceedings are brought for the enforcement of this Contract, or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees, administrative costs and other costs incurred in that action or proceeding in addition to any other relief to which it may be entitled, in the event of a material breach by Agent, Principal shall be entitled to recover all costs and loss associated with resolving the matter giving rise to said material breach. Venue for any such proceeding shall be a location of Principal's choice.

21. **ELECTRONIC POLICY FORMS.** Principal and Agent hereby agree that Agent may produce and issue electronically, in accordance with the terms of the Contract, Principal's policy forms and schedules and/or pre-numbered policy jackets, including logos, seals, signatures and other identifying information and forms generated electronically using policy number ranges or groups provided to Agent or generated by an approved system (hereafter collectively "Forms"), subject to the following:

    A. Principal, during the term of this Contract and thereafter, at reasonable times during customary business hours, shall have access and the right to examine the software applications and databases, operating systems, network and communications facilities, hardware and procedures used by Agent, together with any ledgers, registers or other

       records (whether maintained electronically or otherwise) to confirm the adequacy and security of the electronic production and delivery system used by or for Agent and to confirm that Principal's Forms are adequately protected from misuse and fully accounted for at all times; and

B. Agent agrees to maintain, either manually or electronically, a policy register pertaining to the Forms. For each policy of title insurance, the policy register shall contain the following information: (I) the policy number; and (II) Agent's file number; and (III) the Date of Policy and (Iv) the gross title insurance premium collected. Principal shall have the right to inspect such policy register as provided in Paragraph 21A; and

C. Agent agrees to implement, or cause to be implemented, safety and security procedures satisfactory to Principal, such procedures to be hereafter mutually agreed to by Principal and Agent. Such procedures shall include, without limitation: restricting access to Forms (including without limitation logos, seals, signatures and policy numbers) and maintaining all of the foregoing in a secure, safe and restricted place and/or environment; and

D. For purposes of Paragraphs 21A, 21B and 21C above (Principal's right of access and examination) only, the term "Agent" shall include any Member of Agent, if Agent is a limited liability company; and Agent agrees to indemnify and hold Principal harmless for any loss, damage or expense sustained by Principal by reason of (1) any loss or misuse of Principal's Forms, including loss or misuse by any employee or contract worker of (a) Agent, (b) any Member of Agent, or (2) the failure of Agent to comply with this Paragraph 21.

22. OTHER AGREEMENTS VOID. It is expressly understood and agreed by and between the parties hereto that this Contract sets forth all the promises, agreements, conditions and understandings between Principal and Agent with respect to this Contract and the subject matter hereof. Pertaining to such Contract, there are no promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.

23. COUNTERPARTS. This Contract may be executed in counterparts, which shall collectively constitute a single agreement.

24. CONTRACT. The terms and conditions of this Contract shall apply only to Principal named herein and shall not apply to any company now or hereafter affiliated with Principal or with Principal's parent Fidelity National Financial, Inc.

IN WITNESS WHEREOF, this Contract is executed this 6th day of April, 2005

AGENT: Total Access Title, LLC

By: _____  
Kimberly Christian-Manning  
Its: Principal

By: _____  
Its:

PRINCIPAL: Chicago Title Insurance Company

By: _____  
Ralph DiDomenico  
Its: Regional Manager

By: _____  
Its: [title]

### NOTIFICATION IN COMPLIANCE WITH SECTION 606(A) OF "THE FAIR CREDIT REPORTING ACT"

In making this Contract, it is understood that an investigative report may be made whereby information is obtained through personal interviews with third parties such as family members, business associates, financial sources, friends, neighbors or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics, and mode of living, whichever may be applicable. You have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation.

## SCHEDULE A

### EFFECTIVE DATE OF AGREEMENT, AGENT'S TERRITORY
### LIABILITY LIMIT, COMPENSATION, GENERAL LIABILITY OF AGENT

Attached and made a part of the Agreement between Chicago Title Insurance Company ("Principal") and Total Axcess Title, LLC ("Agent").

A. Effective Date of Original Agreement: April 6, 2005

B. Effective Date of Extension (if any):

C. Agent's Territory: Maryland and the District of Columbia

D. ☐ Set Term: If checked, Paragraph 2 is deleted in its entirety and the following is substituted therefore:

The term of this Contract shall be N/A years, commencing on N/A. Unless either party gives written notice to the other of its election to terminate this Contract at least thirty (30) days prior to the expiration of the then current term, this Contract shall be automatically extended for additional terms of N/A year(s) each.

In addition, Paragraph 9(i) is deleted in its entirety and the following is substituted therefore.

9(i) Notwithstanding anything the contrary herein, this Contract may be terminated in the event any one of the following events of default should occur:
   A. Agent fails to report policies or remit premiums in accordance with the provisions hereof and said default continues for the applicable cure period;
   B. Agent materially deviates from the guidelines, instructions or escrow accounting standards of Principal furnished to Agent;
   C. Either party hereto fails to perform any of the other material provisions, covenants or conditions of this Contract on its part to be performed;
   D. A petition under the United States Bankruptcy Code is filed by or against either party hereto;
   E. A supervisor, conservator or receiver is appointed for either party hereto or for substantially all of the assets of said party;
   F. Agent ceases to engage in the abstract and title insurance agency business or Agent's license to engage in the abstract and title insurance business is revoked or suspended;
   G. There is a change in the senior management of Agent, and Agent fails to secure prior written approval of Principal;
   H. There is a change of more than 50% of the ownership of the Agent, and Agent fails to secure prior written approval of Principal;
   I. The loss ratio, as herein defined, during any calendar year arising from policies issued by Agent, equals or exceeds [max loss ratio] percent ([max loss ratio#]%);
   J. Agent defaults in any of the terms of that certain Contract between Agent and [Add'l Contract party] dated [Add'l Contract date];
   K. Agent defaults in any of the terms of that certain Title Plant Lease between Agent and Principal dated [Title Plant Lease Date];
   L. Agent defaults in the terms of any other agreement between Agent and Principal, including, without limitation the following: [Add'l Agreement(s) if any];
   M. Agent, or any of its partners, shareholders, members or principals is convicted of a felony offense, is disbarred or is suspended from the practice of law or is determined by administrative proceedings or otherwise to have acted in violation of state or federal laws governing title insurance or activities related thereto.

"Loss Ratio" shall refer to the annual change in the loss and expense reserve for all claims arising from Agent, plus all losses and expenses paid, less all sums recovered, divided by the total annual remittances from Agent.

Upon the occurrence of an event of default, the non-defaulting party may terminate this Contract, upon the expiration of thirty (30) days from the date of written notice of default to the defaulting party and the defaulting party's failure to cure. Notwithstanding the foregoing, upon the occurrence of an event of default as described in Paragraph 9(i)D or 9(i)E, this Contract

shall automatically terminate without notice; upon the occurrence of an event of default as described in Paragraph 9(I)B, 9(I)F or 11, this Contract may be terminated by Principal immediately upon delivery of written notice to Agent.

E. Liability Limit: On any Title Assurance which has liability in excess of $500,000, Agent shall first review and obtain Principal's written approval prior to issuing the Title Assurance.

F. Compensation: Agent shall pay Principal twenty-five percent (25%) of the gross premiums on all Title Assurances issued by Agent, based on the rate schedule attached as Exhibit 1. Agent shall remit a minimum of $10,000 per year to Principal.

G. General Liability of Agent: Subject to the provisions of Paragraph 8, Agent shall be liable for the first $N/A of any Loss sustained or incurred by Principal as a result of the issuance of the Title Assurances by Agent.

H. Governing Law. This Agreement is to be construed, enforced, and governed according to and by the laws of the State of Maryland and the District of Columbia in all respects.

I. Provide Principal by May 31st of each year, copies of annual financial statements of the agency and an updated Information Affidavit, such financial statements to be kept confidential by Principal.

J. Notices: All notices provided for or required in this Contract shall be sent as follows:

If to Principal, to: 19 E. Fayette Street, Suite 300, Baltimore, Maryland 21202

If to Agent, to: 10440 Shaker Drive, Suite 208, Columbia, MD 21046

## SCHEDULE B

## CORPORATE AGENT'S BOND AND INSURANCE REQUIREMENTS

A. Agent shall immediately obtain and keep in full force, at Agent's expense, during the term of this Contract
(i) Title Insurance Agent's errors and omissions policy with opinion of title coverage, with an insurance company acceptable to Principal in a sum of not less than $500,000 per claim and $1,000,000 aggregate with a deductible provision of no more than $10,000 per loss; and
(ii) Fidelity insurance of $100,000 covering all officers, employees shareholders, partners, members and other principals of Agent with a loss payee provision in favor of Principal.

Agent agrees to furnish Principal annually with a copy of such policies and any renewals thereof and any other evidence that Principal may deem necessary to demonstrate compliance with this provision. Agent hereby assigns to Principal, Principal's legal representatives and assigns, all sums claims, demands and causes of action of whatsoever kind, that Agent may have against Agent's errors and omissions insurance company and against Agent's fidelity insurance company, in connection with all claims arising out of the actions of Agent, its employees, agents, independent contractors and subcontractors which fall within the scope of Paragraph 6 hereof.

B. Agent shall annually furnish Principal with true copies of the bond(s) and policy together with current premium receipts for said bond(s) and insurance.

C. Upon request of Principal, Agent agrees to notify its fidelity bond or errors and omissions insurance carrier of any claim for which Agent may be liable to Principal.

## SCHEDULE C

## ATTORNEY AGENT'S BOND AND INSURANCE REQUIREMENTS

A. Agent shall, at its own expense, maintain lawyer's professional liability insurance coverage with real estate title Agent's errors and omissions coverage and opinion of title coverage with limits not less than $N/A per claim and $N/A aggregate with a maximum deductible of $N/A.

B. Agent shall annually furnish Principal with true copies of the above policy together with current premium receipts for said insurance.
C. Upon request of Principal, Agent agrees to notify its errors and omissions insurance carrier of any claim for which Agent may be liable to Principal.

## SCHEDULE D

### PERSONAL GUARANTEE

In consideration of One Dollar ($1.00) and/or other valuable consideration, paid to the undersigned and as further inducement to Principal to enter into the foregoing Agency Agreement, each of the undersigned acknowledges that (s)he will personally benefit from said Agency Contract, and each of the undersigned jointly and severally does hereby personally and unconditionally undertake, guarantee and assure the full, prompt and complete performance of all the terms, agreements, covenants, conditions and undertakings of Agent as set forth in said Agency Contract.

It is further agreed that the liability hereunder is, and shall be, a primary and personal undertaking by each of the undersigned and Principal shall not be required to exercise its remedies against Agent before enforcing this undertaking against the undersigned, or anyone of them.

Effective Date April 6, 2005

N/A

Kimberly Christian-Manning

## SCHEDULE E

If blank, so state Intentionally Omitted

Schedules ☒A, ☒B, ☐C, ☐D, ☐E

Page 4 of 4