

**PLAINTIFF'S EXHIBIT 2**

<u>SOUTHERN TITLE
INSURANCE CORP.</u>

ISSUING AGENCY CONTRACT

SOUTHERN TITLE INSURANCE CORPORATION ("Principal") and RTE Title, LLC ("Agent") agree as follows:

1. <u>DATE OF CONTRACT:</u> The effective date of this Contract is the date this Contract is signed by Principal.

2. <u>APPOINTMENT OF AGENT:</u> Principal appoints Agent as an agent of Principal for the promoting and transacting of the business of title insurance in the State of Maryland and the District of Columbia. Agent may validate, countersign, issue and deliver commitments, policies and endorsements of Principal on forms supplied by Principal in the manner provided by this Contract and the rules of the Principal as shall from time to time be furnished to the Agent. Principal and Agent agree that business under this contract shall be conducted in accordance with the laws and regulations of the above named state.

3. <u>LIMITATIONS ON AGENT'S AUTHORITY:</u> Agent shall not, without written approval of Principal:

    (a) Commit Principal to a risk in excess of [REDACTED]
    (b) Commit Principal to a risk which, by title insurance industry practice and custom, is determined or deemed extraordinary or extra-hazardous, and/or which Principal has by rules determined to be extraordinary or extra-hazardous, which specifically shall include but not be limited to tax titles, leverage buyouts, non-imputation, collateral mortgages, antecedent debts, bankruptcies, escheats, coverage with respect to filed or unfiled mechanics' and materialmen's liens, any unusual endorsements not used by Principal or such other risk which Agent knows or has reason to believe to be based upon a disputed title.
    (c) Alter forms furnished by Principal except in cases authorized by Principal or use any form other than those which have been approved and furnished by Principal.
    (d) Adjust any claim for loss for which Principal may become liable.
    (e) Accept service of process on Principal.
    (f) Incur bills or debts chargeable to Principal.
    (g) Commit Principal to a risk on a transaction in which the Agent or any owner, officer or employee of Agent has an interest.
    (h) Commit Principal to any affirmative mechanics' lien coverage.
    (i) Commit Principal to the risk of any unpaid liens not excluded from policy coverage, not required by Agent to be satisfied and released of record and known to Agent to have been recorded or filed against the real estate being insured prior to the date of issuance of Principal's title insurance policy.

4. <u>DUTIES OF AGENT:</u> Agent shall:

    (a) Receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of Principal.
    (b) Supply at Agent's expense office space and qualified personnel for the handling of business under this Contract.
    (c) Prepare, maintain and preserve a file for each application for title insurance. Such file shall include all supporting documents which enable Agent to issue such insurance, including but not limited to the Attorney's Preliminary Report On Title, Attorney's Final Certificate And Application For Title Insurance, affidavits, lien waivers, surveys, searches, examinations and work sheets, together with a copy of commitments, policies and endorsements issued.
    (d) Send to Principal a copy of each policy and endorsement issued by Agent.
    (e) Keep a policy register in a form approved by Principal showing the disposition of all policies and other pre-numbered forms furnished by Principal. Upon request by Principal, Agent shall furnish a statement of accounting for all such forms.
    (f) Keep safely in accounts separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transactions in which Principal's title insurance is involved, disburse said funds only for the purposes for which same were entrusted and reconcile all such accounts not less frequently than monthly. Principal shall have the right to examine, audit and approve Agent's accounting procedures.

*Redacted*

(g) Provide Principal, on an annual basis, copies of annual financial statements of the agency, said statements to be kept confidential by Principal.
(h) Notify Principal, within 30 days, of any change in ownership of agent, agent's parent or key employees.

5 *DUTIES OF PRINCIPAL:* Principal shall:

(a) Furnish Agent forms of commitments, policies, endorsements and forms for the accounting of the same required for the transaction of business hereunder.
(b) Furnish to Agent rules and instructions for guidance in transacting business hereunder. A copy of the Principal's Underwriting Manual is being delivered to Agent simultaneously with the execution of this Contract. The Underwriting Manual may be amended, updated and supplemented by such other memos and bulletins as Principal may issue from time to time.
(c) Determine all risk assumption questions submitted by Agent.
(d) Arrange for reinsurance, where required, to the extent such reinsurance is available.

6 *RATES AND REMITTANCES:* Attached hereto and made a part hereof is a Schedule of Rates and Remittances. Agent shall quote, charge and collect the Rates set forth therein. Principal may change or revise said Rates from time to time on due notice to Agent. Agent shall report and remit to Principal as required by the Schedule of Rates and Remittances.

7 *SETTLEMENTS:* It is understood and agreed that Agent is not an agent for Principal in connection with escrows, closings or settlements and that Agent will make no representations to the contrary.

8 *LIABILITY OF AGENT:* Agent shall be liable to and agrees to indemnify and to save harmless Principal for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from:

(a) Omissions or other inaccuracies in any commitment or policy which are disclosed by the application, the approved examiner's report, or which were known to the Agent;
(b) Errors and/or omissions in the abstracting or examination of title by Agent or Agent's employees and/or subcontractors, except for abstracting or examination of title provided to Agent by Principal;
(c) Failures of Agent, its officers and employees, to comply with the terms of this contract or with the rules, regulations or instructions given to Agent by Principal;
(d) Any improper escrow or closing or attempted escrow or closing by the Agent and/or assisted or participated in by Agent, including but not limited to (i) loss or misapplication of customer funds, documents or other things of value entrusted to Agent in any custodial or fiduciary capacity resulting in loss to Principal, and/or (ii) failure to disburse properly or close in accordance with escrow and/or closing instructions, and/or (iii) misappropriation of escrow or closing funds by Agent, its officers or employees.

9 *INSURANCE:* Agent shall immediately obtain and keep in full force during the term of this Contract a Title Insurance Agent's Errors and Omissions Policy with opinion of title coverage with a company acceptable to Principal in a sum of not less than **$500,000.00** or a deductible provision of no more than $5,000.00 per loss. Agent shall provide a copy of such policy and evidence of payment of the premium therefor at the time of execution of this Contract and will provide, on an annual basis, an updated copy thereof.

10. *EXAMINATION OF RECORDS:* Agent agrees to provide access for examination to the Principal, at any reasonable time or times, to all files, books and accounts and other records of Agent relating to the business carried on hereunder and to any transactions committed to the issuance of Principal's policies of insurance. Such right of examination may also be exercised after termination of this Contract.

11 *SHORTAGE OF FUNDS:* In the event a shortage is revealed or discovered in Agent's accounts of funds entrusted to Agent by others or in the remittances due Principal hereunder or any other fees or charges due Principal, including but not limited to search or examination fees, copy charges, etc., then Principal may declare immediately due and payable any debts owed by Agent, including any funds for which Principal may be responsible or have a liability therefor. Principal shall have a lien on all property of Agent as security for the repayment thereof. On demand by Principal, Agent shall immediately make good the shortage or convey and deliver possessions of such property to Principal. A conveyance of such property shall not of itself relieve the Agent of further liability for said shortage, but may be utilized to mitigate the liability of Agent therefor. Any shortage of funds shall be deemed to be a material breach of this Contract.

12 *ADVERTISING:* Agent agrees that it will not use the name Southern Title in any of its advertising, whether by business signs or cards, letterheads, newspapers or any other media or means, without the prior

Case 8:07-cv-10416-RWT Document 64-3 Filed 03/18/08 Page 3 of 6
Case 8:07-cv-01957-RWT Document 64-3 Filed 08/21/2008 Page 3 of 6
Case 8:07-cv-01957-RWT Document 13-2 Filed 08/31/2007 Page 3 of 6

written approval of Principal. However, Agent agrees to actively solicit and diligently devote time and effort to the promotion and development of Principal's title insurance business for the mutual benefit of Principal and Agent.

13. *USE OF PRINCIPAL'S NAME:* Agent agrees not to adopt and use for any purpose whatsoever, either during or after termination of this Contract, either the corporate name Southern Title Insurance Corporation, any equivalent or abbreviated version thereof, or any name so similar that a person using the care, caution and observation that the public uses and may be expected to use would mistake one name for the other.

14. *CLAIMS:* If a policy claim is made to Agent, if Agent receives notice of a potential claim, or if Agent receives notice of litigation which may result in a claim, Agent shall immediately give notice to Principal and shall lend all reasonable assistance, without charge to Principal, in investigating, adjusting or contesting said claim. Agent shall not be required to act as or provide counsel in connection with said claim. In the event of receipt, either by Agent or Principal, of a notice of claim under a policy or commitment issued by Agent, Agent shall immediately furnish to Principal, upon Principal's demand, all files kept pursuant to paragraph 4 (c), which, upon Principal's determination, relate to the notice of claim.

15. *ASSIGNMENT:* This contract is not assignable except upon written consent of the parties hereto. This Contract is, however, binding on and inures to the benefit of any corporate successor of Principal.

16. *NON-WAIVER BY PRINCIPAL:* The failure of Principal to enforce strictly the performance by Agent of any provision of this contract or to exercise any right or remedy following from Agent's breach of any condition or the acceptance by Principal of any payment, remittance or other performance during Agent's failure to perform or during Agent's breach shall not be a waiver by Principal of its rights under the contract as written and shall not be construed to be an amendment or modification of this Contract as written.

17. *TERMINATION OF CONTRACT:* Either party hereto may cancel and terminate this Contract by the giving of thirty (30) days written notice (as provided hereinafter) of intent to cancel. In the event of material breach of this contract by either party hereto, the other may terminate immediately by giving notice in the manner above set forth. Material Breach on the part of the Agent includes any failure to comply with or perform any requirements or provisions of this Contract and any material deviation from the rules promulgated by Principal and furnished to the Agent resulting in loss to Principal or not. Upon termination of this Contract, it is expressly understood and agreed that Agent is no longer an agent of Principal and shall have no further authority, including but not limited to the issuance of commitments, policies and endorsements. In the event of termination, Agent shall at once furnish to Principal:

(1) a complete accounting of all remittances due hereunder;
(2) all forms of Principal, including but not limited to commitments, policies and endorsements furnished by Principal to Agent;
(3) all files kept pursuant to paragraph 4 (c). Principal agrees that Agent may retain duplicate copies of all such files. Principal shall have the right of unrestricted access to all such files retained by Agent;
(4) all commitments, policies and endorsements in progress.

Upon termination, Agent shall certify, in writing, to Principal that all files, forms and other documents pertaining to the title insurance business of Principal have been returned to Principal.

18. *COURT COSTS:* If either party shall institute an action against the other party for breach of this Contract, the unsuccessful party shall pay court costs and reasonable attorney's fees to the successful party.

19. *AGENCY LIMITATION:* Agent is not an agent for Principal in connection with escrows, closings or settlements and Agent will make no representations to the contrary. The relationship created by this Contract does not extend to any escrow, closing or settlement business (hereinafter referred to as "escrow business") conducted by Agent; to title reports, opinions or certificates issued in the name of Agent or to any other activity of Agent that does not involve the Principal's assumption of liability for the condition of title.

20. *AGENT'S FUNDS:* Agent agrees not to receive nor receipt for any funds, including escrow funds, in the name of Principal but rather shall receive and receipt for funds, including escrow funds, for its own account. Agent further agrees to maintain adequate records, as required by prudent custom and practice and/or by Principal, as to any escrow and closing funds being handled by Agent in transactions in which Principal's title insurance forms are issued, and to keep all such funds properly segregated in a trust or escrow account in a federally insured institution.

3

21. *INSURED CLOSING LETTER:* Principal may, from time to time, as an accommodation to Agent in the promotion of Agent's title insurance agency business, issue an "Insured Closing Letter" to a prospective insured or other party to a real estate transaction being processed by Agent, the effect of which is to bind Principal to indemnify the addressee thereof against loss resulting from Agent's errors, omissions or misconduct in acting as an escrow, closing or settlement agent for the parties to the transaction, all in accordance with the terms and conditions stated in such letter. In the event Principal makes payment of a claim arising out of the conduct of an Agent's escrow business (whether or not based on such Insured Closing Letter) either as a result of compromise and settlement, Agent shall promptly reimburse Principal for the full amount of Principal's expenditures, including attorney fees and costs of litigation or settlement negotiations. Principal shall have sole and exclusive discretion to compromise and settle any such claim asserted against Principal without relieving Agent of its obligations to reimburse Principal.

22. *OTHER AGREEMENTS VOID:* It is expressly understood and agreed by and between the parties hereto that this Contract and exhibits, if any, attached hereto and made a part hereof, set forth all the promises, agreements, conditions and understandings between Principal and Agent and that there are no promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.

23. *NOTICES:* All notices permitted or required to be given under this Contract shall be in writing and may be personally delivered or delivered by express courier service to the offices of the Parties hereto or mailed to the offices of the Parties hereto by certified or registered United States Mail, addressed as shown below. The effective date of notice shall be upon delivery by personal or courier delivery or three (3) days after the date of mailing as evidenced by a proof of mailing. Said notices shall be addressed as follows:

| | |
|---|---|
| *TO PRINCIPAL:* | Southern Title Insurance Corporation<br>Three James Center - 7th Floor<br>1051 East Cary Street<br>Richmond, VA 23219 |
| *TO AGENT:* | RTE Title, LLC<br>9701 Apollo Drive, Suite 297<br>Largo, MD 20774<br>Phone # 301-341-0135<br>FAX # 301-341-0139 |

### *SCHEDULE OF RATES AND REMITTANCES*

### RATES

1. Attached hereto and incorporated herein is a manual entitled "Title Insurance Premium Rates" setting forth the rates for title insurance of Principal for the area covered by this Contract. Agent shall quote, charge and collect said rates for each policy issued.

2. For extraordinary or extra-hazardous risks and for extensions of policy coverage not provided for in said manual, Principal reserves the right to set, determine and retain the charge and Agent shall report and remit such charge to Principal.

3. If said manual does not include service or processing charges, Agent shall determine and fix those charges in accordance with its usual and customary practices.

4

## REMITTANCES

4. For each commitment, policy and endorsement of Principal, the order for which was initiated by Agent, and which is issued by Agent pursuant to this contract, Agent shall report and remit ~~[Redacted]~~ of the rates set forth in the manual referred to in paragraph numbered "1" of this Schedule, including simultaneous issue. Agent shall retain the entire commitment issuance fee as a processing fee. The term "Remittances" used in this Contract shall include any fees, charges or other amounts due Principal, including but not limited to search, examination, copy, etc., fees or charges.

5. For charges made pursuant to paragraph numbered "2" of this Schedule, Agent shall remit an amount as shall be agreed upon between Principal and Agent.

6. Where Principal purchases reinsurance or excess coinsurance, a decision which rests solely with Principal, the division of the rates as defined in paragraph numbered "4" of this Schedule shall be computed on the net amount remaining after deducting the cost thereof. Agent shall remit to Principal the cost of such reinsurance or coinsurance.

7. Agent agrees that remittances will be paid at the time of reporting policies issued to the Principal. The payment of remittances, and the simultaneous reporting of policy copies, shall be mailed to the Principal's Headquarter Office within 30 days of the issuance of the policy. Principal will provide Agent information and instructions regarding remittances and other related information.

## COMPENSATION

8. Principal's compensation shall be the amount required to be remitted hereunder by Agent. Agent's compensation shall be the rates and charges herein required to be collected, less the amounts to be remitted to Principal

IN WITNESS WHEREOF, this Issuing Agency Contract is hereby executed.

SOUTHERN TITLE INSURANCE CORPORATION

Dated: 12/18/06

BY: _____
Dennis M. Reeves
President

RTE Title, LLC

BY: _____
Valeria N. Tomlin

Title: Chair

5

## PERSONAL GUARANTEE

In consideration of One Dollar ($1.00) in lawful money of the United States, paid to the undersigned, receipt of which is hereby acknowledged, and as further inducement to Principle to enter into the foregoing Issuing Agency Agreement, each of the undersigned acknowledges that (s)he will personally benefit from said Agency Agreement, and each of the undersigned jointly and severally does hereby personally and unconditionally undertake, guarantee and assure the full, prompt and complete performance of all the terms, agreements, covenants, conditions and undertakings of Agent as set forth in said Issuing Agency Agreement.

It is further agreed that the liability hereunder is, and shall hereafter be, a primary and personal undertaking by each of the undersigned and Principle shall not be required to exercise its remedies against Agent before enforcing this undertaking against the undersigned, or anyone of them.

Effective Date 12/18/06

Valeria N. Tomlin

## NOTIFICATION IN COMPLIANCE WITH SECTION 606(A) OF "THE FAIR CREDIT REPORTING ACT"

In making this Agreement, it is understood that an investigative report may be made whereby information is obtained through personal interviews with third parties such as family members, business associates, financial sources, friends, neighbors or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics, and mode of living, whichever may be applicable. You have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation. As a part of this initial and any subsequent evaluations, credit reports may be obtained in order to insure initial and continuing compliance with Southern Title's standards.

Effective Date 12/18/06

Valeria N. Tomlin

## INSURED CLOSING SERVICE LETTER AGREEMENT

Whereas, Agent is authorized to issue title insurance on behalf of Company in the State(s) identified in (2) Appointment of Agent, and in connection therewith, is requested by one or more lending institutions to close real estate loans on behalf of such lending institutions
and issue title insurance policies in connection therewith; and Whereas, such lender or lenders have or may in the future request, in connection with such loan closings, a guaranteed loan closing, also known as an insured closing protection letter from such lender or lenders have or may in the future request, in connection with such loan closings, a guaranteed loan closing, also known as an insured closing protection letter from Company assuring the faithful performance of the closing instructions of such lender by Agent.
NOW, THEREFORE, in consideration of the issuance of such guaranteed closing letters, also known as insured closing protection letters, by Company, Agent undertakes to indemnify Company from any and all liability, loss or damage Company may suffer as a result of any claims, demands, costs or judgments arising against Company as a result of its issuance of any such guaranteed loan closing, also known as an insured closing protection letter. It is further agreed that Company may, at any time, and without notice to Agent, cancel and discontinue issuance of such guaranteed loan closing letters, also known as insured closing protection letters.

Effective Date 12/18/06

Valeria N. Tomlin

Valid only if attached to an Issuing Agency Contract

6