

**Westlaw.**

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)

Page 1

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)

Office of the Attorney General

State of Maryland

October 30, 2000

The Honorable Michael E. Busch

Dear Delegate Busch:

You have requested our opinion concerning a provision of the State insurance code that requires a title insurer to carry out an on-site evaluation of each "principal agent" that conducts real estate settlements involving its title insurance policies. Specifically, you ask how that provision applies to an insurer that has elected to issue all of its policies through a single entity that it has designated as its "principal agent." The insurer authorizes settlement companies to conduct the real estate settlements involving those policies but the settlement companies do not themselves issue the title insurance policies or receive commissions on the policies.

In our opinion, the insurance code requires the insurer to perform an on-site review of each settlement company it has authorized to conduct real estate settlements and not simply of the one entity it has designated as its "principal agent." The insurer has this obligation even though a title agency authorized to conduct settlements does not itself issue insurance policies on the insurer's behalf. However, the insurer need not review each individual agent affiliated with a settlement company, if it conducts a review of the settlement company itself.

I

Background

**A. Title Insurance**

Title insurance is an essential component of most real estate transactions. It is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01997-RWT Document 64-10 Filed 01/21/2009 Page 2 of 9
Case 8:07-10416-BLS Doc 5428-12 Filed 03/18/08 Page 2 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.) Page 2

defined under the State insurance code as:
> insurance of owners of property or other persons that have an interest in the property against loss by encumbrance, defective title, invalidity of title, or adverse claim to title.

Annotated Code of Maryland, Insurance Article ("IN"), § 1-101(oo). The purpose of a title insurance policy is to safeguard a transferee of real estate from the possibility of loss as a result of title defects. *Stewart Title Guaranty Co. v. West*, 110 Md. App. 114, 128, 676 A.2d 953 (1996). Ordinarily, title insurance serves three purposes. First, it is an indemnity agreement to reimburse the insured for losses or damages resulting from title problems. Second, it is "litigation insurance," by which the insurer is required to defend the insured if the insured's title is challenged by a third party. Finally, and "perhaps above all, it involves the hiring of experts in title matters." *Id.*, citing D. Barlow Burke, Jr., *Real Estate Transactions: Examples and Explanations* 185 (1993). A title insurer generally issues two types of policies: a lender policy, protecting the mortgagee, and an owner policy, protecting the purchaser of the property.

Title insurers, as well as title insurance agents and brokers, [FN1] are licensed and regulated by the Maryland Insurance Administration ("MIA"). An insurer must obtain a certificate of authority from the Insurance Commissioner ("the Commissioner"). IN § 4-101. A title insurance broker must obtain a certificate of qualification. IN § 10-103(c). A title insurance agent must obtain both a certificate of qualification from the Commissioner and an appointment [FN2] from an insurer. IN § 10-103(a).

Nationally, the title insurance business is concentrated in a limited number of companies. *See* Nyce & Boyer, *An Analysis of the Title Insurance Industry*, 17 J. Ins. Reg. 213, 219 (1998). In Maryland, there are 25 title insurers licensed to do business. Generally, a title insurer authorizes local agents to issue policies on its behalf. Typically, these agents are either settlement companies or attorneys. D. Barlow Burke, Jr., Law of Title Insurance § 1.2.3 (2d ed. 1993 & Supp. 1999). There are approximately 3,400 licensed title insurance agents and brokers in Maryland, including approximately 550 settlement companies.

### B. On-Site Reviews of Agents by Insurers

The State insurance law imposes certain oversight responsibilities on title insurance companies with respect to settlement companies that handle real estate closings involving title insurance. In particular, an insurer must audit its agents as follows:
> The title insurer shall, at least annually, conduct an on-site review of the underwriting, claims, and escrow practices of each title insurance agent appointed by the insurer as a principal agent as designated in the title insurance agency contract between the insurer and the agent. The on-site review shall include a review of the title insurance agent's or agency's policy blank inventory and processing operations.

IN § 10-121(j)(2)(i). The MIA's practice has been to require an insurer to conduct an on-site review of each settlement company that the insurer has authorized, by appointment, to conduct settlements.

### C. Insurer That Issues Policies Through One Agent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01957-RWT Document 64-10 Filed 01/21/2009 Page 3 of 9
Case 8:07-10416-BLS Doc 5428-12 Filed 03/18/08 Page 3 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)                                                Page 3

Your request was prompted by an inquiry from counsel for a title insurance company. According to its counsel, that title insurer is unique in that it conducts its business in Maryland "through only one qualified agent." As we understand it, this agent issues all policies underwritten by the insurer in Maryland and is the only agent that receives a commission on the premiums related to those policies. This agent deals primarily with the lending institutions that finance real estate transactions, rather than with the settlement companies responsible for closing those transactions.

According to the insurer's counsel, the insurer's relationship with settlement companies is more limited than that of the typical title insurance company. The insurer approves a settlement company by means of an "appointment acknowledgment" that authorizes the settlement company to perform settlement services. However, the appointment does not authorize the settlement company to issue an insurance policy. Nor is the settlement company paid any commission on an insurance policy. [FN3] At a closing, the settlement company collects the title insurance premium on behalf of the insurer's "one qualified agent." That agent in turn remits the premium to the insurer, less an amount retained as the agent's commission.

You ask whether the insurance code obligates this insurer to conduct an on-site review of each settlement company that it has authorized to conduct settlements or only of the one agent that issues policies on its behalf in Maryland.

II

Analysis

The obligation of title insurers to conduct on-site reviews of agents derives from a reform of the title insurance law during the mid-1990's. The appropriate construction of that provision requires an understanding of the extensive reforms enacted in 1995 and of certain amendments made to those provisions the following year.

A. *1995 Reform of Title Insurance Law*

During the early 1990's, a number of high-profile cases arose involving the misappropriation of funds by those handling real estate settlements. *See, e.g., United General Title Insurance Company v. Land Title Research of Maryland, Inc., 875 F. Supp. 309 (D. Md. 1995)*. Furthermore, individuals who had been convicted of stealing funds from escrow accounts or successfully sued for similar conduct had returned to the real estate settlement business. *See, e.g., Thieves easily return to title insurance jobs*, Baltimore Sun, p. 1A (December 18, 1994). These phenomena were attributed to the limited oversight of settlement companies, including a blanket exemption of attorneys from the agent licensing requirement. [FN4] *See* Former Article 48A, § 168A(b)(2)(ii) (1994).

To address these problems, the General Assembly enacted legislation in 1995 that enlarged the scope of regulation. *See* Chapter 635, Laws of Maryland 1995. Two key elements of the reform legislation were the expansion of the class of agents subject to regulation and the enlistment of title insurers in the effort to oversee those agents.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01997-RWT Document 64-10 Filed 01/21/2009 Page 4 of 9
Case 07-10416-BLS Doc 5428-12 Filed 03/18/08 Page 4 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.) Page 4

### 1. Expansion of Licensing Requirement

The legislation expanded the definition of the terms "title insurance agent" and "title insurance broker" to encompass not only a person who "for compensation, ...solicits, procures or negotiates title insurance contracts...," but also any person "who provides escrow, closing, or settlement services which may result in the issuance of a title insurance contract." See Former Article 48A, § 168A(a), *now codified at* IN § 10-101(c). [FN5]

Under the new definition, a person need not receive a commission or other direct compensation from the issuance of the title insurance policy in order to be a title insurance agent or broker. As explained by the House Economic Matters Committee, the 1995 legislation made "a number of changes ... designed to strengthen regulation of the title insurance industry ... [including expanding the class of] those who must be licensed as a title insurance agent or broker to include *any person* [that] provides escrow, closing, or settlement services which may result in the issuance of a title insurance contract...." See Economic Matters Committee Floor Report on House Bill 1243 (1995) (emphasis supplied).

Because exemptions from the agent licensing requirement were perceived as a loophole, the legislation also eliminated the blanket exemption for attorneys. Title agencies owned or operated by attorneys or law firms became subject to the same licensing requirements as other agencies. However, an attorney who was involved with title insurance contracts "only as an incident to the practice of law" could obtain a special restricted certificate of qualification from the Commissioner and would continue to be exempt from certain bonding, education, and examination requirements applicable to licensees generally. Former Article 48A, §§ 173(e) and 173A, *now codified at* IN § 10-125. [FN6]

The reform legislation also augmented the Commissioner's power to obtain background information from potential licensees, [FN7] imposed bonding requirements for an agency and its employees, [FN8] and enhanced the Commissioner's authority to take action against an agency based upon the transgressions of individual agents affiliated with the agency. [FN9]

Thus, as a result of the 1995 legislation, any person responsible for a real estate settlement must have a certificate of qualification from the Commissioner and is subject to regulation under the State insurance code if the settlement involves property for which title insurance might be issued. To supplement the Commissioner's enhanced authority, the legislation also obligated title insurers to assist in the oversight of title insurance agents.

### 2. Oversight Responsibilities of Insurers

Particularly relevant to your question are the oversight responsibilities that the 1995 legislation assigned to title insurance companies. See Former Article 48A, § 168A(m)(1995), *now codified as amended at* IN § 10-121(j). The 1995 legislation required each title insurer to maintain on file a certified statement of financial condition for each agent and agency to which the insurer had issued an appointment. That statement was to include an income statement of business done during the previous year and a balance sheet showing the agent's financial condition as of the end of the calendar year.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01937-RWT   Document 64-10   Filed 01/21/2009   Page 5 of 9
Case 07-10416-BLS   Doc 5428-12   Filed 03/18/08   Page 5 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)                                               Page 5

In addition, at least annually, the insurer was required to conduct an on-site review of the underwriting, claims, and escrow practices of each agent, including a review of the agent's policy blank inventory and processing operations. If an agency did not maintain separate bank accounts for each insurer it represented, the insurer was required to verify, as part of the on-site review, that the agent's books of accounts and records allowed the insurer to reasonably ascertain those funds held by the agent on its behalf.

A title insurer was required to prepare a written report of its review of an agent, which was subject to examination by the Commissioner. If, as a result of a review, an insurer had reasonable cause to believe that an agent had "failed to remit premiums or funds owed" or had otherwise violated the insurance code, the insurer was to report the suspected violation to the Commissioner, together with a copy of its examination of the agent.

### B. 1996 Amendments

The General Assembly modified some of the new provisions during its next session. Chapter 206, Laws of Maryland 1996. Among other things, [FN10] the 1996 amendments clarified and focused an insurer's oversight responsibilities with respect to its agents. The legislation relieved individual agents of the obligation to file an annual financial statement with a title insurer if "a statement of financial condition of the agency with which the individual is associated is on file with the title insurer...." Former Article 48A, § 168A(m)(1), *now codified at* IN § 10-121(j)(1). It also set a specific deadline for the filing of those statements. *Id.*

The 1996 amendments also modified the on-site review requirement. Rather than conduct on-site reviews of *all* of its title insurance agents and agencies, an insurer was now to review each agent "appointed by the insurer as a principal agent as designated in the title insurance agency contract between the insurer and the agent." *See* Former Article 48A, § 168A(m)(2)(i), *now codified at* IN § 10-121(j)(2)(i). A position paper submitted by the MIA explained the purpose of this amendment as follows:
> As amended, House Bill 291 clarifies the current practice of the Maryland Insurance Administration with regard to ... [a]llowing the title insurer to conduct an on-site review of the agency's underwriting, claims, and escrow practices rather than requiring [the] insurer to conduct [a] review of each of its agents associated with that agency. In other words, the review by the insurer of the insurer's principal agent will suffice to meet the requirements of the title law.

Testimony of Maryland Insurance Administration before Senate Finance Committee on House Bill 291 (March 26, 1996). The limitation of on-site audits to "principal agents," rather than the individual agents associated with an agency, appears consistent with the revised obligation to maintain financial statements for each agency rather than for each individual agent.

### C. Extent of On-site Review Obligation

Your inquiry concerns the on-site review obligations of an insurer that issues all of its title policies through a single agent that the insurer has designated as its

sole "principal agent." Your question, in essence, is whether that insurer is absolved of any obligation to conduct on-site reviews of the settlement companies [FN11] that it has authorized to conduct real estate settlements. In our opinion, such an interpretation is unduly narrow and would frustrate the legislative intent.

When evaluating the Legislature's intention, we cannot lose sight of "the particular evil, abuse or defect which the statute was designed to correct and the remedy that was intended." *Department of Tidewater Fisheries v. Sollers*, 201 Md. 603, 611, 95 A.2d 306 (1953). The revision of the title insurance law was inspired by the revelation of financial irregularities occurring at the settlement table, including embezzlement of escrowed funds. The purpose of the 1995 legislation was to police the management of funds handled at real estate settlements. Title insurance companies were identified as a key component in the oversight of those transactions.

Part of the legislative response was to expand the category of agents subject to regulation. There is no question that the settlement companies that conduct the closings at which this insurer's policies are issued are title insurance agents under the statute. In the statutory language, those companies provide "escrow, closing or settlement services" related to the issuance of a title insurance policy by the insurer. Even if they do not receive a commission from the policy premium itself, these companies collect the premium on behalf of the insurer and its intermediary "principal agent," and they handle other funds escrowed as part of the transaction.

In addition, to carry out the purposes of the reform legislation, the Legislature mandated that the title insurance industry undertake a measure of self-regulation. It charged each title insurer with monitoring certain business practices of its agents. Oversight responsibilities included maintaining agents' statements of financial condition, conducting annual on-site reviews, preparing written reports of the on-site reviews, and reporting to the Commissioner when problems were discovered. IN § 10-121(j).

Under this legislative scheme, each on-site review is to encompass "the underwriting, claims, *and escrow practices*...." of the agent. IN § 10-121(j)(2) (emphasis supplied). Funds are normally escrowed as part of a real estate settlement, to pay off existing mortgages, tax bills, and other obligations that might constitute a lien on the property. Misappropriation of such funds would adversely impact the title to property. Thus, the statute does not limit on-site reviews to tracking title insurance premiums. Rather, it contemplates that a title insurer will review the handling of escrowed funds by the agencies that conduct settlements of the transactions involving the insurer's policies.

The limitation of the on-site review to a "principal agent as designated on the title insurance agency contract" was part of the 1996 amendments that relieved insurers of an obligation to monitor individual agents when those agents were affiliated with an agency. The term "principal agent" was not defined in the statute. Nor is it a term of art that has a well understood definition in the title insurance industry. [FN12] Rather, it appears that the Legislature used that term to distinguish a settlement company from an individual agent associated with the settlement company - both of which would be licensed as "title insurance agents" under the insurance code. In the same manner that the 1996 legislation relieved insurers of the responsibility to collect financial statements from individual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01997-RWT   Document 64-10   Filed 01/21/2009   Page 7 of 9
Case 8:07-10416-BLS   Doc 5428-12   Filed 03/18/08   Page 7 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)                                              Page 7

agents affiliated with a company, it also eliminated the obligation to audit individual agents if the insurer audited the company - i.e., the "principal agent" - with which the individual agents were affiliated.

An unduly narrow construction of the 1996 amendment could allow an insurer to eliminate any responsibility to review escrow practices simply by severing responsibility for issuance of title insurance policies from the handling of real estate settlements and labeling an intermediary agent that does not conduct settlements or handle escrowed funds as its only "principal agent." To construe the 1996 legislation in this manner would eliminate a key link in the oversight process. Nothing in the legislative history of the 1996 amendments indicates that the General Assembly intended to undermine in this manner the scheme of self-regulation it had created the year before.

Finally, at the time the 1996 amendments were under consideration by the Legislature, the MIA interpreted the proposal to limit on-site reviews to "principal agents" as simply a way to codify its administrative practice of permitting a title insurer to forego an audit of an individual agent if the insurer reviewed the company with which the individual was affiliated. [FN13] In light of this history, we believe that a court would likely defer to the agency's interpretation. An interpretation by the agency charged with administering a statute, announced at the time of the law's enactment, should not be discarded absent the "strongest and most urgent reasons." *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 266, 753 A.2d 501 (2000). See also *Board of Physician Quality Assur. v. Banks*, 354 Md. 59, 69, 729 A.2d 376 (1999).

We note that nothing in the insurance code would preclude the insurer from contracting with a qualified third party to conduct the on-site inspection of the insurer's Maryland agents on the insurer's behalf. However, ultimate responsibility for the on-site inspection, as well as for the related documentation and reporting requirements set forth under IN § 10-121(j), rests with the insurer.

III

Conclusion

In summary, a **title insurer's obligation** to **conduct** an **on-site review** extends to each title agent it has authorized to conduct settlements, regardless of whether the agent actually issues the policy or receives a commission on the policy from the insurer. If an individual agent is affiliated with a settlement company, the insurer may discharge its obligation by conducting a review of the settlement company i.e., "principal agent." However, the insurer does not satisfy its obligations by only auditing an entity designated as its "principal agent," if that entity is not affiliated with the agents that conduct settlements and handle escrowed funds.

Very truly yours,
J. Joseph Curran, Jr.
Attorney General

William R. Varga
Assistant Attorney General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01997-RWT   Document 64-10   Filed 01/21/2009   Page 8 of 9
Case 8:07-10416-BLS   Doc 5428-12   Filed 03/18/08   Page 8 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)                                Page 8

Robert N. McDonald
Chief Counsel Opinions & Advice

[FN1]. In the insurance industry, an agent generally acts on behalf of the insurer, while a broker solicits or negotiates insurance on behalf of the insured. See, e.g., 7 Holmes' Appleman on Insurance 2d § 44.2 (1998 & Supp. 2000); see also IN § 1-101(c) and (i) (defining "agent" and "broker," respectively).

[FN2]. "Appointment" is defined in the State insurance code as "an agreement between an agent and insurer under which the agent, for compensation, may solicit, procure, negotiate, or make policies issued by the insurer." See IN § 1-101(g).

[FN3]. Of course, the insurer's appointment of a settlement company allows the settlement company to conduct real estate settlements involving title insurance, and thereby to receive compensation from other sources in connection with settlements.

[FN4]. "[T]he exemption given to lawyers from licensing requirements has proven to [be] a major loophole in the title insurer's law." House Economic

Matters Committee Floor Report on House Bill 1243 (1995).

[FN5]. As part of the State's code revision process, the Legislature reenacted the State's insurance law over a three-year period, beginning in 1995. Although the Insurance Article did not take effect until October 1997, the insurance legislation enacted during the 1995 and 1996 sessions was drafted to both Former Article 48A of the Annotated Code and the new Insurance Article. For clarity, this opinion cites Former Article 48A when referring to changes under the 1995 or 1996 legislation and the Insurance Article when referring to current law.

[FN6]. The 1995 legislation also eliminated a blanket exemption for title insurers. Title insurers thus became subject to the same regulation as agents and brokers, except for certain bonding requirements. Former Article 48A, § 168A(c). However, this requirement was eliminated the following year. See % y(6)d note 10, infra.

[FN7]. To obtain a certificate of qualification to act as an insurance agent, an applicant must provide the Commissioner with any information or documentation that the Commissioner requires "to determine the professional competence, good character, and trustworthiness of the applicant." Former Article 48A, § 168(b)(1)(v), now codified at IN § 10-112(a)(5). A corporation or partnership seeking a certificate of qualification is required to provide the name and address of each owner and each agent that it employs. Former Article 48A, § 168(e)(2)(iv), now codified at IN § 10-112(d).

[FN8]. As a prerequisite to obtaining a certificate of qualification, an applicant is to file with the Commissioner a blanket fidelity bond covering employees, as well as a surety bond or letter of credit. Former Article 48A, § 168A(g) - (j), now codified at IN § 10-121(d) - (g).

[FN9]. The Commissioner may suspend or revoke a certificate of qualification if the holder of the certificate has "knowingly employed or knowingly continued to employ

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 8:07-cv-01957-RWT   Document 64-10   Filed 01/21/2009   Page 9 of 9
Case 8:07-10416-BLS   Doc 5428-12-10   Filed 03/18/08   Page 9 of 9

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)                                                Page 9

an individual acting in a fiduciary capacity who has been convicted of a felony or crime of moral turpitude within the preceding 10 years." Former Article 48A, § 175(a)(19), *now codified* at IN § 10-126(a)(19). The Commissioner may suspend or revoke the certificate of qualification of a corporation or partnership if an individual agent violates the insurance code. Former Article 48A, § 175(b), *now codified* at IN § 10-126(b).

A title insurance agent or broker also must notify the Commissioner in writing if a licensed individual leaves employment or ends an association with the agent or broker. Former Article 48A, § 168A(n), *now codified* at IN § 10-121(k).

[FN10]. The 1996 legislation also eliminated licensed title insurers from the definition of "title insurance agent" and "title insurance broker" and from the licensing requirements applicable to agents and brokers. In supporting this amendment, the MIA explained that "[t]here is sufficient statutory authority under the Insurance Code to regulate the activities of title insurers without requiring an additional layer of licensing.... [T]he 1995 language [that] required licensure of title insurers as title agents ... was unnecessary for effective regulation." Testimony of Maryland Insurance Administration before House Economic Matters Committee on House Bill 291 (February 14, 1996).

In addition, the legislation authorized submission of a blanket surety bond, modified provisions concerning certificates of qualification for corporate applicants, expanded the grounds on which a certificate of qualification of a corporation or partnership could be denied, suspended, or revoked, and required an agent or broker to notify the insurer when a licensed individual left employment or ended an association with the agent or broker. These provisions were apparently based, at least in part, on recommendations of the Maryland Land Title Association. *See* Legislative File for House Bill 291 (1996).

[FN11]. We understand that this insurer uses the services of settlement companies. Accordingly, we need not consider the application of IN § 10-121(j) to an attorney who handles title insurance matters only incident to the practice of law and therefore holds a special restricted certificate of qualification under IN § 10-125(b).

[FN12]. Nor does the term have any special meaning in general agency law. Indeed, in that context the term is confusing at best, as "principal" and "agent" denote distinct individuals or entities whose relationship is the subject of *agency* law. Restatement 2d Agency § 1.

[FN13]. We recommend that the MIA formally set forth its interpretation of the oversight responsibilities of insurers in a regulation.

85 Md. Op. Atty. Gen. 306, 2000 WL 1639436 (Md.A.G.)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.