## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY TRS HOLDINGS,<br>INC.,<br>*et al.*,<br><br>Debtors. | Chapter 11<br>Case No.  07-10416 (KJC)<br><br>(Jointly Administered)<br>**Hearing Date: April 9, 2008 @ 10:00 a.m. (ET)[1]**<br>**Objection Deadline: March 20, 2008**<br><br>**Re: 5279** |

### OBJECTION OF NEW YORK STATE TEACHERS' RETIREMENT SYSTEM TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER DIRECTING THE CLERK OF THE COURT TO MAINTAIN THE FINAL REPORT OF MICHAEL J. MISSAL, EXAMINER, UNDER SEAL FOR A PERIOD OF 45 DAYS FROM THE FILING DATE

The New York State Teachers' Retirement System ("NYSTRS" or "Lead Plaintiff"), a creditor/party in interest and the Lead Plaintiff in a shareholder securities fraud class action currently entitled *In re New Century*, Case No. 2:07-cv-00931-DDP (JTLx) (the "Securities Litigation"), pending in the United States District Court for the Central District of California (the "District Court"),[2] and filed on behalf of the putative class of investors (the "Securities Class") who purchased securities of New Century Financial Corp. ("NCFC"), one of the Debtors[3] herein, during the period from May 5, 2005 to March 13, 2007, inclusive (the "Class Period"), hereby submits this objection (the "Objection") to the Motion Of The Official Committee Of Unsecured Creditors For An Order Directing The Clerk Of The Court To Maintain The Final Report Of

---

[1]   The hearing was initially scheduled for March 25, 2008, but was recently adjourned at the direction of the Court to April 9, 2008 (Docket No. 5406).

[2]   On January 31, 2008, the District Court dismissed the consolidated amended complaint filed by NYSTRS without prejudice and with leave to file an amended consolidated complaint no later than March 24, 2008. In dismissing the complaint, the District Court requested a reorganization and clarification of the existing allegations in the consolidated amended complaint.  NYSTRS intends to file a consolidated amended complaint on March 24, 2008.

[3]   Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion (defined below).

Michael J. Missal, Examiner, Under Seal For A Period Of 45 Days From the Filing Date (the "Motion") and states the following:

## BACKGROUND

1.      On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  Subsequently, New Century Warehouse Corporation, one of the Debtors, also filed a voluntary Chapter 11 petition, which is being jointly administered with the initially filed Debtors' petitions.

2.      Prior to the Petition Date, approximately twenty (20) securities class action complaints were filed in the District Court,[4] each alleging violations by the Debtors and certain of their current and/or former officers, directors and underwriters and their outside auditor, KPMG LLP (collectively, the "Non-Debtor Defendants") of certain federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and, in some instances, Sections 11 and 15 of the Securities Act of 1933 (collectively, the "Securities Laws").  These allegations arise from, *inter alia*, false and misleading statements concerning NCFC's financial results and business made during the Class Period.

3.      On or about June 26, 2007, the District Court appointed NYSTRS as Lead Plaintiff, consolidated the pending putative class actions into the Securities Litigation and directed Lead Plaintiff to file an amended consolidated complaint.

4.      NYSTRS and members of the putative Class are creditors, equity holders and parties-in-interest in these Chapter 11 proceedings by virtue of the fact that NYSTRS and the putative Class lost millions of dollars as a result of their purchases of NCFC securities.

5.      On September 14, 2007, NYSTRS filed an amended consolidated complaint (the "Consolidated Complaint").  Although NCFC was named as a defendant in several of the class action complaints filed prior to the Petition Date, NCFC is not named as a defendant in the

---

[4]     The first such complaint, *Avi Gold v. Brad A. Morrice, et al.*, was filed on February 8, 2007.

Consolidated Complaint pursuant to the dictates of 11 U.S.C. §362(a). The Securities Litigation did, however, name the Non-Debtor Defendants.

6.     The Securities Litigation and this Chapter 11 proceeding were the result of what has been exposed as a massive fraud. NCFC and the Non-Debtor Defendants artificially inflated the price of NCFC securities through false and misleading statements concerning NCFC's finance and mortgage lending business. Specifically, and among other things, NCFC maintained inadequate reserves against losses associated with loan delinquencies and repurchases, which reserves caused NCFC to overstate significantly its publicly reported earnings, thereby creating the false impression that NCFC was profitable when, in fact, it was not.

7.     On June 1, 2007, the Bankruptcy Court entered an order (the "Examiner Order," Docket No. 1023) authorizing the appointment of an examiner to:

> (a) investigate any and all accounting and financial statement irregularities, errors or misstatements, including but not limited to such irregularities, errors or misstatements that (i) gave rise to the announced need to restate the Debtors' financial statement for the first three quarters of 2006 and/or (ii) led the Debtors' management and Audit Committee to conclude that it was more likely than not that pre-tax earnings in the 2005 financial statements were materially overstated, and identify any claims or rights of action that the estates might have arising from or relating to such irregularities, errors or misstatements . . . and (c) otherwise perform the duties of an examiner set forth in section 1106(a)(3) (as limited by this Order) and 1106(a)(4) of the Bankruptcy Code (collectively, the "Investigation").

Examiner Order, ¶ 3.

8.     The Examiner Order prohibited the examiner from making (i) public disclosures concerning his Investigation (other than in Court hearings) until he filed his report, and (ii) any disclosures regarding the strengths or weaknesses of any potential claim or right of action the estates may have, until further order of the Court. Examiner Order, ¶ 6.

9.     On June 7, 2007, the Bankruptcy Court approved the United States Trustee's appointment of Michael J. Missal, Esq., as the examiner (the "Examiner").

10.    Thereafter, on September 5, 2007, the Examiner sought an extension of time to file his reports. On October 10, 2007, the Court entered an order (the "Supplemental Examiner Order," Docket No. 3261) extending the Examiner's deadline (to January 15, 2008) to file his report. The Supplemental Examiner Order continued the prohibitions against disclosure. *See* ¶ 8, *supra*, and Supplemental Examiner Order, at 3. The Examiner filed an initial report in November 2007, addressing cash collateral issues and subsequently obtained an additional extension to file the Final Report through February 29, 2008.

11.    The Supplemental Examiner Order stated that the Final Report "shall be filed initially under seal" with copies to the Debtors, the Committee and the United States Trustee. However, it further provided that:

> [w]ithin ten (10) days following the filing of a Report by the Examiner, the Debtors, the Committee or another interested party may file a motion with the Court seeking to maintain any portion or portions of such Report under seal (*with the movant bearing the burden*) because, inter alia, such portion or portions contain or reveal information that is protected by 11 U.S.C. § 107(b), the attorney client privilege, the work product doctrine, or any other applicable privilege or protection (a "Protection Motion"). If no party timely files a Protection Motion, such Report shall be unsealed. If a Protection Motion is timely filed, then *only that portion or portions of such Report that are sought to be protected shall remain under seal* until the Court enters an order on such Protection Motion and the balance of such Report shall be unsealed.

Supplemental Examiner Order, at 4 (emphasis added).

12.    On February 29, 2008, the Examiner filed the Final Report under seal in accordance with the Supplemental Examiner Order, with copies to the Debtors, the Committee and the United States Trustee. Upon information and belief, the Final Report is in excess of 550 pages. *See* Motion, ¶ 16.

13.    On March 10, 2008 (the last day for filing motions to maintain the Examiner Report under seal), the Committee filed the Motion to direct the Clerk of the Bankruptcy Court

to maintain the seal for 45 days from the date the Final Report was filed (*i.e.*, April 14, 2008), with the right to seek further extensions of the seal as to certain unidentified portions of the Final Report. *See* Motion, ¶15. No other party, including the Debtors, sought to continue the seal or sought any related relief.

14.    In its Motion, the Committee asserts that it needs more time to complete its review of the Final Report to determine if portions should be kept under seal. Indeed, other than the length of the Final Report (which the Committee has now had for approximately three weeks), the Committee relies on absolutely no other basis to maintain the Final Report under seal. Therefore, the Committee fails to even attempt to satisfy its burden under the Supplemental Examiner Order (an order negotiated by the Committee), which provides that an interested party, including the Committee and the Debtors, may file a motion to maintain the seal *within 10 days* of the filing of the Final Report by showing that portions of the Final Report are "protected by 11 U.S.C. § 107(b), the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection." Supplemental Examiner Order, at 4.

15.    As set forth herein, the Committee's Motion, which is nothing more than an eight page request for an extension of the ten day period in the Supplemental Examiner Order and a request for an adjournment of the March 25, 2008 hearing date[5] originally set by the Court without objection from the Committee and which fails to satisfy its burden under the Supplemental Examiner Order, should be denied. The Committee Motion seeks relief which would effectively prevent parties from obtaining access to the *entire* Final Report in advance of the deadlines for voting on and objecting to the Debtors' First Amended Plan of Reorganization without any showing that any portion of the contents are entitled to protection. Indeed, as more fully set forth below, absent objection by the Debtors, the Committee has no standing to even assert those protections.

16.    NYSTRS objects to the Committee's Motion for at least the following reasons:

---

[5]    *See* n. 1, *supra*.

(a)     the Committee's Motion is improper and effectively holds the entire Final Report under seal for an indefinite period of time to the detriment of other creditors and parties in interest;

(b)     the Committee has not complied with the Supplemental Examiner Order it negotiated and should not be given additional time to identify those portions of the Final Report to be kept under seal;

(c)     the Committee has failed to and cannot meet its burden to maintain the Final Report under seal; and

(d)     the Committee's Motion is a thinly-veiled attempt to gain a litigation advantage and prejudice NYSTRS and the putative class it represents.

## OBJECTION

A.    **The Committee's Motion is Improper and Effectively Holds the Entire Final Report Under Seal for an Indefinite Period of Time to the Detriment of Other Creditors and Parties in Interest**

17.     The Committee's Motion is improper because it seeks relief not contemplated by the Examiner Order or the Supplemental Examiner Order, Orders which the Committee negotiated and approved.    Nowhere does either Order provide any party, including the Committee, with the right to extend the ten (10) day period to *determine* whether portions of the Final Report should be kept under the seal.

18.     The Orders are clear that parties are given ten (10) days to identify those portions of the Final Report that should not be disclosed because they contain privileged or protected information.    Thus, the time is now for the Committee to identify those portions of the Final Report – not weeks from now.

19.     The Committee has asserted no basis to continue the seal until April 14, 2008 or beyond that date.    The Committee merely states that due to the length of the Report (550 pages),[6]

---

[6]     The Committee's reliance on the length of the Report as an excuse for its failure to complete its review.    The length of the Report has not prevented the Debtors or any other party in interest from determining that the Final Report should be made public in its entirety.

it needs additional time "to carefully consider and determine whether, pursuant to the Supplemental Examiner Order, *any further application should be made to the Bankruptcy Court at the end of that period to maintain a portion or portions of the Final Report under seal for a longer period.* Motion, ¶ 16. It is simply not credible that the Committee, given the scope of the investigation set forth in the Examiner Order, could not have anticipated that the Final Report would be detailed and lengthy. Yet, a ten day period to file a motion identifying any portion of the Final Report sought to be maintained under seal for recognized privileges and protections pursuant to statute or common law was negotiated and accepted, not by NYSTRS, but by the Committee.

20.     The delay and potential additional delay requested by the Committee effectively prevents all other parties, including NYSTRS, from having access to the Final Report for sufficient time in advance of the deadlines for voting and objecting to the Plan. Indeed, the Court acknowledged the importance of having the Final Report available to all creditors prior to the deadline for voting on the Plan, *see* March 5, 2008 Transcript, at 47, lines 1-4; at 42, lines 16-20, to ensure creditors sufficient time to review and digest the Final Report before voting on the Plan.

21.     On February 2, 2008, the Debtors and the Committee, as joint proponents, filed the Disclosure Statement (Document No. 4804) and Plan (Document No. 4805). The hearing on the adequacy of the Disclosure Statement was held on March 5, 2008. Several objections were filed and the Disclosure Statement and Plan were thereafter amended. In connection with the amended Disclosure Statement and Plan, filed on March 17, 2008, the Plan proponents (the Debtors and the Committee) proposed that objections to the Plan and the Plan ballots be filed and submitted no later than April 18, 2008, and April 21, 2008, respectively. Those dates have now been embodied in an order of this Court. If the Committee prevails on its Motion and the Final Report remains sealed until April 14, 2008 (or potentially beyond April 14, 2008), creditors will have only three (3) days in which to consider the Final Report, to the extent that the seal is removed, before objections to the Plan are due and only one week to do so before ballots are due.

If the sophisticated members of the Committee and their counsel now complain that ten days is not enough time to digest the Final Report, other creditors, sophisticated or not, will be unable to do so in only seven (7) days. Because the contents of the Final Report reflect upon serious and significant issues involving the Debtors and others and may be integral to a creditor's consideration of the Plan, ample time to review and analyze the Final Report must be afforded, as noted by the Court. *See* Transcript, *id.* Granting the Committee's Motion precludes such consideration by creditors and parties in interest.

> **B.     The Committee Has Not Complied with the Supplemental Examiner Order It Negotiated and Should Not be Given Additional Time to Identify Those Portions of the Final Report to be Kept Under Seal.**

22.     The entry of the Examiner Order and the Supplemental Examiner Order was the result of lengthy negotiations in which the Committee actively participated. During those negotiations, or at least well in advance of February 29, 2008, the Committee should have anticipated and asserted that the ten (10) day review period would be insufficient to complete its analysis of the Final Report, if that were in fact the case. The Committee was well aware of the extensions sought by the Examiner to file his Report and knew, or at the very least should have known, that the Report would be a lengthy and exhaustive analysis of the issues that the Examiner was empowered to address. Now, on the eve of what should be the public disclosure of the Final Report within a time frame when creditors and parties in interest should be able to review the Final Report in the context of their decisions regarding the Plan, the Committee seeks to delay the process without a showing that any portion of the Final Report is subject to a privilege or any similar protection.

23.     By filing the Motion, the Committee has already obtained the benefit of keeping the entire Final Report under seal for at least two additional weeks. As previously stated, no additional time is warranted and the Committee, like any one else, should have identified those portions of the Final Report, if any, that it believes should remain under seal and should have stated the basis for doing so, if any such basis exists.

**C.    The Committee Has Failed to and Cannot Meet Its Burden to Maintain the Final Report Under Seal.**

24.    In order to continue the seal on a portion or portions of the Final Report, the Committee has the burden of showing, *inter alia*, that those portions are protected under 11 U.S.C. § 107(b), the attorney-client privilege, the work product doctrine or such other applicable privilege or protection. *See* Supplemental Examiner Order, at 4.

25.    The burden to establish any of the foregoing criteria is on the party seeking to continue the seal. *See* ¶11, *supra*. Here, the Committee has not even attempted to meet, and cannot meet, its burden. Indeed, the Committee cannot assert, and/or has no standing to assert, even if given more time to do so, any of the enumerated bases to maintain the Final Report under seal.

26.    There is no attorney-client relationship upon which the Committee may rely to assert any privilege to continue the seal. *Haines v. Liggett Group, Inc.*, 9075 F. 2d 81 (3d Cir. 1992) (the attorney-client privilege belongs to the client); *U.S. v. Kossak*, 275 F. Supp. 525 (D. Del. 2003) (attorney-client privilege protects communications between an attorney and his client and the burden to demonstrate its applicability is on the party asserting the privilege); *Bird v. Penn. Cent. Co.*, 61 F.R.D. 43, 45-46 (E.D. Pa 1973) (the privilege does not extend to documents from a third party that may be in the attorney's possession). The Committee has no grounds to assert the attorney-client privilege as a basis to maintain any portion of the Final Report under seal. Furthermore, in order for the work-product doctrine to apply, a party "must establish that the material is a document . . . prepared in anticipation of litigation for that party" or the party's representative. *Novartis Pharmaceuticals Corp. v. Abbott Labs*, 203 F.R.D. 159, 163 (D. Del. 2001); *Cornelius v. Consol. Rail Corp.*, 169 F.R.D. 250, 253 (N.D.N.Y. 1996). More importantly, the work product doctrine protection belongs to the client or its attorney that prepared the document at issue. *Madison Hobley v. Burge*, 433 F. 3d 946, 949 (7th Cir. 2006).

27.    The Debtors, by failing to file a motion to maintain any portion of the Final Report under seal, have either admitted that there is no basis to do so, have waived their rights to

do so, and/or have waived any applicable privilege or protection they may have asserted in connection with the Final Report. Upon information and belief, the Committee provided no independent documents or other information to the Examiner. Any documents or information that the Committee may have produced would, in all likelihood, have been provided to the Committee by the Debtors, especially since the conduct and issues being investigated in connection with the Final Report occurred or arose pre-petition. Therefore, any attorney-client, work product or other such applicable privilege or protection belongs to the Debtors and is theirs to assert or waive. Neither the Examiner Order nor the Supplemental Examiner Order conveys or could convey any authority upon the Committee to assert such protections on the Debtors' behalf. Hence, the Committee cannot seek to maintain any portion of the Final Report under seal by virtue of any attorney-client privilege or work product doctrine.

28.      Additionally, the Final Report may remain under seal if the provisions of 11 U.S.C. § 107(b) are met. While 11 U.S.C. § 107(b)(1) protects trade secrets or confidential research, development or commercial information, and 11 U.S.C. § 107(b)(2) provides additional protections where "scandalous or defamatory matter [is] contained in a paper" filed in the case, 11 U.S.C. § 107(b) is only a very narrow exception to the well-recognized principle affording parties access to judicial records. *In re Foundation for New Era Philanthropy*, 1995 Bankr. NEXIS 2204, *11 (Bankr. E.D. Pa. 1995). The exception is intended to prevent "unfair advantage to competitors" of a debtor. *Id.*, at *13; *In re Alterra Healthcare Corp.*, 353 B.R. 66, 74 (Bankr. D. Del. 2006). The exception is not relevant here and none of the protections afforded by 11 U.S.C. § 107(b) could be asserted by the Committee especially where the Debtors have essentially liquidated and are no longer operating.

29.      Accordingly, notwithstanding that the Committee requests additional time to determine if the Final Report should remain under seal, the Committee has not provided any independent information or documents to the Examiner that would be subject to the protections afforded by the Supplemental Examiner Order and, therefore, has no standing to seek to continue the seal on the basis of privilege, work product or similar protections. The intent of the

Supplemental Examiner Order was to protect privileged and similarly protected documents and information provided to the Examiner for his Investigation. No party providing such documents has asserted any such privilege or protection. Because the Committee has no standing to assert protections with respect to any portion of the Final Report, it certainly does not need additional time to do so.

**D.      The Committee's Motion is a Thinly Veiled Attempt to Gain a Litigation Advantage and Prejudice NYSTRS and the Putative Class it Represents.**

30.      It is no secret that to the extent the Final Report identifies facts and conduct creating viable causes of action for the Debtors' estates to pursue in connection with the accounting and financial statement irregularities, the Committee (through the Liquidating Trust) and NYSTRS will be competing with one another in pursuing some of the same potential sources of recovery.

31.      It is likewise obvious that the longer the Committee can prevent NYSTRS from accessing the Final Report, the longer the Committee can maintain a "leg up" on NYSTRS, which alone has lost in excess of $50,000,000, in the pursuit of claims and causes of action against various parties, including the Non-Debtor Defendants. There is no basis for the Committee to use (or abuse) the procedures it helped create in the Supplemental Examiner Order for the improper purpose of keeping the contents of the Final Report from the NYSTRS or any other creditor. Simply because the Plan seeks to deny any recovery to NYSTRS or members of the putative class does not make them any less of a creditor or party in interest in this Chapter 11 case. On the contrary, the fact that the Plan disenfranchises these creditors makes it all the more important that their rights to pursue their own claims as their only means of recovery should not be compromised or prejudiced.

**E.      If the Court is Inclined to Grant the Committee Some Relief, the Committee's Proposed Form of Order is Improper and Does Not Reflect the Relief Requested.**

32.      Although only the Committee filed a Motion to maintain the Final Report under seal, the Committee's proposed form of order effectively affords not only the Committee, but the

Debtors and any other interested party an additional 45 days to file a motion to keep a portion or portions of the Final Report under seal.

33.    However, no other party is entitled to such relief, because no other party filed any response to the Report. Indeed, the Debtors affirmatively stated that they had no intention to do so. *See* March 5, 2008 Transcript, at 47, lines 14-17.

34.    To the extent any relief is granted (to which NYSTRS strenuously objects), such relief must be limited to the Committee. Any other party, including the Debtors, has effectively waived their right to attempt to maintain any portion of the Final Report under seal. The proposed Order must be modified so as to provide relief, if any, only to the Committee.

## CONCLUSION

35.    Based on the foregoing, NYSTRS respectfully requests that an order be entered (i) denying the Motion and (ii) granting such other and further relief as the Court deems just and proper.

## STATEMENT THAT NO BRIEF IS NECESSARY

36.    As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by NYSTRS are set forth herein, NYSTRS respectfully requests that the Court waive the requirements of D. Del. LR 7.1.2, incorporated in these proceedings by Local Rule 1001-1(b), of filing a separate brief in support of the Objection. However, if the Court determines otherwise, NYSTRS respectfully requests the opportunity to submit an appropriate brief or memorandum.

Dated: March 20, 2008

**CROSS & SIMON LLC**

By:_____

Christopher P. Simon  (Bar No. 3967)
913 North Market St., 11th Floor
Wilmington, Delaware 19899-1380
302.777.4200 (Telephone)
302.777.4224 (Facsimile)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Ira M. Levee, Esq. (IL 9958)
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to NYSTRS and the
purported Class*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
Salvatore J. Graziano, Esq.
Hannah Greenwald Ross, Esq.
Lauren McMillen, Esq.
1285 Avenue of the Americas
New York, New York 10019
212.554.1400 (Telephone)
212.554.1444 (Facsimile)

Blair A. Nicholas, Esq.
12481 High Bluff Drive, Suite 300
San Diego, California 92130
858.793.0070 (Telephone)
858.793.0323 (Facsimile)

*Lead Counsel to NYSTRS and the purported
Class*