# EXHIBIT A

\\4311\1724\\ # 63679 v 15

# OFFICE LEASE AGREEMENT
# 901 MAITLAND CENTER

Between

Landlord:    **COLONIAL REALTY LIMITED PARTNERSHIP,**
a Delaware Limited Partnership

And

Tenant:    **NEW CENTURY MORTGAGE CORPORATION**

Dated: _Aug 19_, 2003

# TABLE OF CONTENTS

A.    PREMISES/TERM/POSSESSION .............................................................................

1.    Premises ....................................................................................................

2.    Lease Term ...............................................................................................

3.    Landlord's Failure to Give Possession ....................................................

4.    Quiet Enjoyment .......................................................................................

B.    RENT/PAYMENT .............................................................................................

5.    Base Rent ..................................................................................................

6.    Rent Payment ............................................................................................

7.    Operating Expenses/Taxes/Electricity Costs ...........................................

8.    Late Charge ..............................................................................................

9.    Partial Payment .........................................................................................

10.   Intentionally Deleted .................................................................................

C.    USE/LAWS/RULES .........................................................................................

11.   Use of Premises .........................................................................................

12.   Compliance with Laws ..............................................................................

13.   Waste Disposal ..........................................................................................

14.   Rules and Regulations ...............................................................................

D.    SERVICES/TENANT BUILDOUT ..................................................................

15.   Services .....................................................................................................

16.   Telephone and Data Equipment ................................................................

17.   Signs ..........................................................................................................

18.   Parking ......................................................................................................

19.   Storage ......................................................................................................

20.   Tenant Improvements ................................................................................

21.   Force Majeure ...........................................................................................

E.    REPAIRS/ALTERATIONS/CASUALTY/CONDEMNATION .......................

22.   Repairs By Landlord ..................................................................................

23.   Repairs By Tenant .....................................................................................

24.   Alterations and Improvements/Liens ........................................................

25.   Destruction or Damage ..............................................................................

26.   Eminent Domain ........................................................................................

# TABLE OF CONTENTS
## (continued)

27.    Damage or Theft of Personal Property ........................................................

F.    INSURANCE/INDEMNITIES/WAIVER/ESTOPPEL ...........................................................
28.    Insurance; Waivers ........................................................................
29.    Indemnities ...............................................................................
30.    Acceptance and Waiver ....................................................................
31.    Estoppel ..................................................................................

G.    DEFAULT/REMEDIES/SURRENDER/HOLDING OVER ......................................................
32.    Notices ...................................................................................
33.    Abandonment of Premises ..................................................................
34.    Default ...................................................................................
35.    Landlord's Remedies ......................................................................
36.    Service of Notice .........................................................................
37.    Advertising ...............................................................................
38.    Surrender of Premises .....................................................................
39.    Cleaning Premises .........................................................................
40.    Removal of Fixtures .......................................................................
41.    Holding Over ..............................................................................
42.    Attorney's Fees ...........................................................................
43.    Mortgagee's Rights ........................................................................

H.    LANDLORD ENTRY/RELOCATION/ASSIGNMENT AND SUBLETTING ...........................................
44.    Entering Premises .........................................................................
45.    Relocation ................................................................................
46.    Assignment and Subletting .................................................................

I.    SALE OF BUILDING; LIMITATION OF LIABILITY .....................................................
47.    Sale ......................................................................................
48.    Limitation of Liability ...................................................................

J.    BROKERS/CONSTRUCTION/AUTHORITY ................................................................
49.    Broker Disclosure .........................................................................
50.    Definitions ...............................................................................
51.    Construction of this Agreement ............................................................
52.    No Estate in Land .........................................................................

\7431\1172\4\ # 6316794 5

# TABLE OF CONTENTS
## (continued)

53. Paragraph Titles; Severability ..................................................................

54. Cumulative Rights ..................................................................

55. Waiver of Jury Trial ..................................................................

56. Entire Agreement ..................................................................

57. Submission of Agreement ..................................................................

58. Authority ..................................................................

59. Intentionally Omitted ..................................................................

60. Financial Statements ..................................................................

K.  SPECIAL STATE/LOCAL LAW REQUIREMENTS/SPECIAL
    STIPULATIONS ..................................................................

61. State or Local Law Provisions ..................................................................

62. Special Stipulations ..................................................................

## EXHIBIT LIST

EXHIBIT "A-1"    PREMISES

EXHIBIT "B"    WORK LETTER

EXHIBIT "C"    SUBSTANTIAL COMPLETION/ACCEPTANCE LETTER

EXHIBIT "D"    RULES AND REGULATIONS

EXHIBIT "E"    HVAC SPECIFICATIONS

EXHIBIT "F"    INTENTIONALLY OMITTED

EXHIBIT "G"    STATE/LOCAL LAW PROVISIONS

EXHIBIT "H"    SPECIAL STIPULATIONS

1/431\1\17244 # 631679v1.5

## BASIC LEASE PROVISIONS

The following sets forth some of the Basic Provisions of the Lease. In the event of any conflict between the terms of these Basic Lease Provisions and the referenced Sections of the Lease, the referenced Sections of the Lease shall control. In addition to the following Basic Lease Provisions, all of the other terms and conditions and sections of the Office Lease Agreement hereinafter set forth are hereby incorporated as an integral part of this Summary.

1.  Building (See Section 1):   901 Maitland Center
    901 N. Lake Destiny Drive
    Maitland, Florida 3285~~132751~~

2.  Premises (See Section 1):
    Suite:   Suite 325
    Floor:   Third
    Rentable Square Feet:   2,759

3.  Term (See Section 2):   62 full calendar months
    Target Commencement Date: October 1, 2003 subject to Section 2
    Target Expiration Date:   November 30, 2008 subject to Section 2

4.  Base Rent (See Section 5):

| Lease Year From | Month to Month | Square Foot of Premises | Rate Per Rentable Monthly | Monthly Installment |
| --- | --- | --- | --- | --- |
| 1 | 14 | | $16.25 | $3,736.15 |
| 15 | 26 | | $16.74 | $3,848.81 |
| 27 | 38 | | $17.24 | $3,963.76 |
| 39 | 50 | | $17.76 | $4,083.32 |
| 51 | 62 | | $18.29 | $4,205.18 |

Rental Concessions: (if none, then delete this line)  All portions of the Monthly Installments for October, 2003 and November, 2003 are abated.

5.  Rent Payment Address (See Section 5)
    Colonial Realty Limited Partnership
    P.O. Box 55379
    Drawer 9420
    Birmingham, Alabama 35255

1

6. Base Year (See Section 7)

Tax Base Year: **2003**
Operating Expense Base Year: **2003**
Electricity Cost Base Year: **2003**

7. Tenant's Share (See Section 7): **1.77%**

8. Security Deposit (See Section 10): ~~$~~: **$ None**

9. Parking Spaces (See Section 18): **Eleven (11)**
Initial Monthly Parking Rate
per Parking Space **$ No Charge**

10. Tenant Improvement Allowance
(See Section 20): **$per rentable square foot N/A**

11. Tenant's Liability Insurance
(See Section 28): **$ See 28(a)(i)**

12. Landlord's Broker (See Section 49): **N/A**

13. Tenant's Broker (See Section 49): **Cushman & Wakefield, Inc.**

14. Notice Address (See Section 32)

| Landlord | Tenant |
|---|---|
| Colonial Realty Limited Partnership | **New    Century    Mortgage** |
| 200 Colonial Center Parkway | **Corporation** |
| Suite 140 | **18400 Von Karman Avenue** |
| Lake Mary, Florida 32746 | **Suite 1000** |
| Attn: Tom Green | **Irvine, California 92612** |
| E-Mail Address: | Attn: **Real Estate Department** |
| Phone: 407-585-2200 | E-Mail Address: |
| Fax No.: 407-333-0971 | Phone: |
| | Fax No.: |

And:

**New    Century    Mortgage**
**Corporation**
**18400 Von Karman Avenue**
**Suite 1000**
**Irvine, California 92612**
Attn: **Legal Department**

74311\17244\ # 631679 v 4 5

14.    Guarantor (See Section 59):    N/A

IN WITNESS WHEREOF, Landlord and Tenant have executed this instrument as of the date set forth on the first page hereof.

**LANDLORD:**

COLONIAL REALTY LIMITED PARTNERSHIP, a Delaware limited partnership

By: Colonial Properties Trust
Its: General Partner

By: _Doug..._____
Name: Richard A. Decker
Title: EVP

Witnesses as to Landlord:

Print Name: Ann B. Coker

Print Name: Debra Sansaveri

**TENANT:**

NEW CENTURY MORTGAGE CORPORATION, a California corporation

By: _(signature)_____
Name: Elise Luckham
Title: Vice President Corporate Services

Witnesses as to Tenant:

Print Name: John Tra

Print Name: STEPHAY Yeung out

# OFFICE LEASE AGREEMENT

THIS OFFICE LEASE AGREEMENT (hereinafter called the "Lease") is made and entered into as of the date appearing on the first page hereof by and between the Landlord and Tenant identified above.

### A.   PREMISES/TERM/POSSESSION.

1.   **Premises.** Landlord does hereby rent and lease to Tenant and Tenant does hereby rent and lease from Landlord, for general office purposes of a type customary for first-class office buildings, the Premises located in the Building identified in the Basic Lease Provisions, situated on the real property described in Exhibit "A" attached hereto (the "Property"), such Premises as all further shown by diagonal lines on the drawing attached hereto as Exhibit "A-1" and made a part hereof by reference. The Premises shall be prepared for Tenant's occupancy in the manner and subject to the provisions of Exhibit "B" attached hereto and made a part hereof. **The measurement of the usable area of the Premises and the Building has been determined by Landlord's architect in accordance with the standards set forth in ANSI Z65.1-1996, as promulgated by the Building Owners and Managers Association (the "BOMA Standard"). The rentable area of the Premises has been determined by adding a load factor of fifteen percent (15%) to the usable area of the Premises.** Landlord and Tenant agree that the number of rentable square feet described in Paragraph 2 of the Basic Lease Provisions has been confirmed and conclusively agreed upon by the parties. No easement for light, air or view is granted hereunder or included within or appurtenant to the Premises. Subject to the terms of this Lease, Tenant shall have access to the Premises twenty-four (24) hours per day, seven (7) days per week, including holidays.

2.   **Lease Term.** Tenant shall have and hold the Premises for the term ("Term") identified in the Basic Lease Provisions commencing on the date (the "Commencement Date") which is the earlier of (i) the date on which Landlord notifies Tenant that the Premises are substantially complete **with a certificate of occupancy or its equivalent and delivers the Premises to Tenant** (or would have been substantially complete and delivered to Tenant but for any delays caused by Tenant, its agents and employees) or (ii) the date Tenant first occupies all or any portion of the Premises for the conduct of its business, and shall terminate at midnight on the last day of the Term (the "Expiration Date"), unless sooner terminated or extended as hereinafter provided. Promptly following the Commencement Date, Landlord and Tenant shall enter into a letter agreement in the form attached hereto as Exhibit "C", specifying and/or confirming the Commencement Date and the Expiration Date (and the number of rentable square feet contained within the Premises and the amount of Base Rent payable hereunder for each Lease Year (as defined in Section 5 below), if such numbers are finally determined differ from those set forth in the Basic Lease Provisions).

3.   **Landlord's Failure to Give Possession.** Landlord shall not be liable for damages to Tenant for failure to deliver possession of the Premises to Tenant if such failure is due to any previous tenant's failure to vacate the Premises, except that the commencement of the Term shall be delayed until Landlord delivers possession of the Premises to Tenant (so long as Tenant is not responsible for such failure or delay). Landlord will use all commercially

1

1/431\1\1724+\63161\9v+\$

reasonable efforts to deliver possession of the Premises to Tenant by the Commencement Date of the Term. __Notwithstanding the foregoing, if by February 1, 2004, Landlord has not substantially completed the Tenant Improvements to the Premises required to be made by the Landlord, pursuant to the Work Letter (subject to extension to events of force majeure and/or any act, omission or default by Tenant or anyone acting under or for Tenant), Tenant shall have the right to terminate this Lease by sending the Landlord a written termination notice which must be received by Landlord prior to substantial completion of the Tenant Improvements. In the event Tenant terminates this Lease pursuant to this Section 3, Tenant and Landlord shall have no further obligations hereunder.__

4.    __Quiet Enjoyment.__ Tenant, upon payment in full of the required Rent and full performance of the terms, conditions, covenants and agreements contained in this Lease, shall peaceably and quietly have, hold and enjoy the Premises during the Term hereof. Landlord shall not be responsible for the acts or omissions of any other tenant, Tenant or third party that may interfere with Tenant's use and enjoyment of the Premises.

B.    __RENT/PAYMENT/SECURITY DEPOSIT.__

5.    __Base Rent.__ Tenant shall pay to Landlord, at the address stated in the Basic Lease Provisions or at such other place as Landlord shall designate in writing to Tenant, annual base rent ("Base Rent") in the amounts set forth in the Basic Lease Provisions. The term "Lease Year", as used in the Basic Lease Provisions and throughout this Lease, shall mean each and every consecutive twelve (12) month period during the Term of this Lease, with the first such twelve (12) month period commencing on the Commencement Date; provided, however, if the Commencement Date occurs other than on the first day of a calendar month, the first Lease Year shall be that partial month plus the first full twelve (12) months thereafter.

6.    __Rent Payment.__ The Base Rent for each Lease Year shall be payable in equal monthly installments, due on the first day of each calendar month, in advance, in legal tender of the United States of America, without abatement, demand, deduction or offset whatsoever, except as may be expressly provided in this Lease. One full monthly installment of Base Rent shall be due and payable on the date of execution of this Lease by Tenant and shall be applied to the first month's __for which Base Rent is payable,__ and a like monthly installment of Base Rent shall be due and payable on or before the first day of each calendar month following the Commencement Date during the Term hereof __for which Base Rent is payable__ (provided, that if the Commencement Date should be a date other than the first day of a calendar month, the monthly Base Rent installment paid on the date of execution of this Lease by Tenant shall be prorated to that partial calendar month, and the excess shall be applied as a credit against the next monthly Base Rent installment). Tenant shall pay, as Additional Rent, all other sums due from Tenant under this Lease (the term "Rent", as used herein, means all Base Rent, Additional Rent and all other amounts payable hereunder from Tenant to Landlord).

7.    __Operating Expenses/Taxes/Electricity Costs.__

(a)    Tenant agrees to reimburse Landlord throughout the Term, as Additional Rent hereunder, for Tenant's Share (as defined below) of: (i) the annual Operating Expenses (as defined below) in excess of the Operating Expenses for the Operating Expense Base Year set

forth in the Basic Lease Provisions (hereinafter called the "Base Year Expense Amount"); (ii) the annual Taxes (as defined below) in excess of the Taxes for the Tax Base Year set forth in the Basic Lease Provisions (hereinafter called the "Base Year Tax Amount"); and (iii) the annual Electricity Costs (as defined below) in excess of the Electricity Costs for the Electricity Cost Base Year set forth in the Basic Lease Provisions (hereinafter called the "Base Year Electricity Costs"). The term "Tenant's Share" as used in this Lease shall mean the percentage determined by dividing the rentable square footage of the Premises by the rentable square footage of the Building. Landlord and Tenant hereby agree that Tenant's Share with respect to the Premises initially demised by this Lease is the percentage amount set forth in the Basic Lease Provisions. Tenant's Share of excess Operating Expenses, excess Taxes and excess Electricity Costs for any calendar year shall be appropriately prorated for any partial year occurring during the Term.

(b)    "Operating Expenses" shall mean all of those expenses of operating, servicing, managing, maintaining and repairing the Property, Building, and all parking areas and all related common areas (as well as the reasonable allocation by Landlord of any expenses incurred and related to facilities located on other property but serving the Property, if the Property is part of a project involving more than one building and/or property). Operating Expenses shall include, without limitation, the following: (1) insurance premiums and deductible amounts, including, without limitation, for commercial general liability, "all risks" property, rent loss and other coverages carried by Landlord on the Building and Property; (2) all costs related to the providing of water, heating, lighting, ventilation, sanitary sewer, air conditioning and other utilities in the Building, but specifically excluding the costs of electricity or power charges incurred in connection with such services or the costs of providing electricity or power throughout the Building, and further excluding those utility charges actually paid separately by Tenant or any other tenants of the Building; (3) janitorial and maintenance expenses, including: (a) janitorial services and janitorial supplies and other materials used in the operation and maintenance of the Building; and (b) the cost of maintenance and service agreements on equipment, window cleaning, grounds maintenance, pest control, security, trash and snow removal, and other similar services or agreements; (4) management fees (or a charge equal to fair market management fees if Landlord provides its own management services) and the market rental value of a management office; (5) the costs, including interest, amortized over the applicable useful life, of any capital improvement made to the Building by or on behalf of Landlord which is required under any governmental law or regulation (or any judicial interpretation thereof) that was not applicable to the Building as of the date of this Lease, and of the acquisition and installation of any device or equipment designed to improve the operating efficiency of any system within the Building which is reasonably intended to reduce Operating Expenses or which is acquired to improve the safety of the Building or Property; (6) all services, supplies, repairs, replacements or other expenses directly and reasonably associated with servicing, maintaining, managing and operating the Building, including, but not limited to the lobby, vehicular and pedestrian traffic areas and other common use areas; (7) wages and salaries of Landlord's employees engaged in the maintenance, operation, repair and services of the Building, including taxes, insurance and customary fringe benefits; (8) legal and accounting costs (but not including legal costs incurred in connection with (i) collecting delinquent rent from any occupants of the Property, (ii) obtaining any loan or other financing, or (iii) purchasing or selling the Property); (9) costs to maintain and repair the Building and Property; (10) landscaping and security costs unless Landlord hires a third party to provide such services pursuant to a service contract and the cost of that service contract is already included in

3

{431\1\172441 #6316794.45

Operating Expenses as described above; (11) if the Building is part of a multi-building project, the Building's allocated share (as reasonably determined by Landlord) of those expenses incurred on a project-wide basis benefiting the Building and/or Property including, without limitation, costs in connection with (i) landscaping, (ii) utility and road repairs, (iii) security, and (iv) signage installation, replacement and repair.

Operating Expenses shall specifically further exclude, however, the following: (i) costs of alterations of tenant spaces (including all tenant improvements to such spaces); (ii) costs of capital improvements, except as provided in the preceding paragraph; (iii) depreciation, interest and principal payments on mortgages, and other debt costs, if any; (iv) real estate brokers' leasing commissions or compensation and advertising and other marketing expenses; (v) payments to affiliates of the Landlord for goods and/or services in excess of what would be paid to non-affiliated parties for such goods and/or services in an arm's length transaction; (vi) costs of other services or work performed for the singular benefit of another tenant or occupant (other than for common areas of the Building); (vii) legal, space planning, construction, and other expenses incurred in procuring tenants for the Building or renewing or amending leases with existing tenants or occupants of the Building; (viii) costs of advertising and public relations and promotional costs and attorneys' fees associated with the leasing of the Building; (ix) any expense for which Landlord actually receives reimbursement from insurance, condemnation awards, other tenants or any other source; (x) costs incurred in connection with the sale, financing, refinancing, mortgaging, or other change or ownership of the Building; (xi) all expenses in connection with the installation, operation and maintenance of any observatory, broadcasting facilities, luncheon club, athletic or recreation club, cafeteria, dining facility, or other facility not generally available to all office tenants of the Building, including Tenant; (xii) Taxes; and (xiii) rental under any ground or underlying lease or leases;

(c)   "Taxes" shall mean all taxes and assessments of every kind and nature which Landlord shall become obligated to pay with respect to each calendar year of the Term or portion thereof because of or in any way connected with the ownership, leasing, and operation of the Building and the Property, subject to the following: (i) the amount of ad valorem real and personal property taxes against Landlord's real and personal property to be included in Taxes shall be the amount required to be paid for any calendar year, notwithstanding that such Taxes are assessed for a different calendar year (the amount of any tax refunds received by Landlord during the Term of this Lease shall be deducted from Taxes for the calendar year to which such refunds are attributable); (ii) the amount of special taxes and special assessments to be included shall be limited to the amount of the installments (plus any interest, other than penalty interest, payable thereon) of such special tax or special assessment payable for the calendar year in respect of which Taxes are being determined; (iii) the amount of any tax or excise levied by the State or the City where the Building is located, any political subdivision of either, or any other taxing body, on rents or other income from the Property (or the value of the leases thereon) to be included shall not be greater than the amount which would have been payable on account of such tax or excise by Landlord during the calendar year in respect of which Taxes are being determined had the income received by Landlord from the Building [excluding amounts payable under this subparagraph (iii)] been the sole taxable income of Landlord for such calendar year; (iv) there shall be excluded from Taxes all income taxes [except those which may be included pursuant to the preceding subparagraph (iii) above], excess profits taxes, franchise, capital stock, and inheritance or estate taxes; (v) if any portion of the Taxes in the Tax Base Year includes an

assessment which is no longer payable in a subsequent calendar year, the Taxes for the Tax Base Year shall be adjusted to eliminate the amount of the annual assessment originally included therein; and (vi) Taxes shall also include Landlord's reasonable costs and expenses (including reasonable attorneys' fees) in contesting or attempting to reduce any Taxes assessed for a different calendar year. Landlord agrees to consult with a real estate tax consultant or advisor engaged by it from time to time and in the exercise of reasonable and prudent ownership judgment contest any unreasonable tax assessment to the extent such tax counsel advises Landlord that a reasonable basis exists therefor.

(d)     "Electricity Costs" shall mean all of those costs and expenses of every kind and nature whatsoever which Landlord shall incur in connection with providing various electricity and power services to the Building, or any portion thereof, or to the tenant spaces located therein, including the Premises, with respect to each calendar year of the Term or portion thereof, but specifically excluding electricity or power charges actually paid by Tenant or other tenants of the Building directly to the provider of such services or paid to Landlord on account of excess usage or overtime charges.

(e)     Landlord shall, on or before the Commencement Date and as soon as reasonably possible after the commencement of each calendar year thereafter, provide Tenant with a statement of the estimated monthly installments of Tenant's Share of excess Operating Expenses, excess Taxes and excess Electricity Costs which will be due for the remainder of the calendar year in which the Commencement Date occurs or for the next ensuing calendar year, as the case may be. Landlord agrees to keep books and records showing the Operating Expenses in accordance with generally accepted accounting principles (as modified for office buildings in a manner comparable to other similar buildings in the commercial area where the Building is located) and practices consistently maintained on a year-to-year basis in compliance with such provisions of this Lease as may affect such accounts, and Landlord shall deliver to Tenant within one hundred twenty (120) days after the close of each calendar year (subject to any delays beyond the reasonable control of Landlord to prevent) (including the calendar year in which this Lease terminates), a statement ("Landlord's Statement") containing the following: (I) a statement that the books and records covering the operation of the Building have been maintained in accordance with the requirements in this subparagraph (e); (2) the amount of any increases in the Operating Expenses for such calendar year in excess of the Base Year Expense Amount; (3) the amount of any increases in the Taxes for such calendar year in excess of the Base Year Tax Amount; and (4) the amount of any increases in the Electricity Costs for such calendar year in excess of the Base Year Electricity Costs. Upon reasonable prior written request given not later than thirty (30) days following the date Landlord's Statement is delivered to Tenant, Landlord will provide Tenant detailed documentation to support such Landlord's Statement or provide Tenant with the opportunity to review such supporting information. Within ninety (90) days after receipt by Tenant of the Landlord's Statement, Tenant or its designee shall have the right in person to audit Landlord's books and records with respect to the Property, showing the Operating Expenses, Taxes and Electricity Costs for the Building for the calendar year covered by the Landlord's Statement, at Landlord's office, during normal business hours, after ten (10) business days' prior written notice. The Landlord's Statement shall become final and conclusive between the parties, their successors and assigns as to the matters set forth therein unless Tenant files an Arbitration (as defined below) within ten (10) days following said 90-day period. In the event Landlord

and Tenant have not reached agreement during said 90-day period Tenant may file an arbitration proceeding with the American Arbitration Association in accord with its then-arbitration rules ("Arbitration"). Judgment upon the arbitration award may be entered in any court having jurisdiction. The arbitrators shall have no power to change the Lease provisions. The arbitration panel shall consist of three arbitrators, each of whom must be either a real estate attorney actively engaged in the practice of real estate law for at least the last five (5) years or a real estate broker actively engaged in office leasing in Orange or Seminole County for at least the last five (5) years. None of the arbitrators shall have had any affiliation or been employed by either party within the last ten (10) years. The non-prevailing party shall be responsible for the cost and expense of the Arbitration. In the event the result of the Arbitration is that Landlord has overcharged Tenant by 5% or more, Landlord shall be the non-prevailing party. Otherwise, Tenant shall be the non-prevailing party. Any balance shown to be due pursuant to said statement shall be paid by Tenant to Landlord within 30 days following such 90-day period or any overpayment shall be immediately applied to any amount then owing to Landlord hereunder and if none, to the next due installment or installments of Additional Rent due hereunder. If by reason of the termination of the Lease no such future obligation exists, any overpayment shall be refunded to Tenant. Notwithstanding anything to the contrary herein, Tenant shall not delay or withhold payment of any balance shown to be due pursuant to a statement rendered by Landlord to Tenant, pursuant to the terms hereof, because of any objection which Tenant may raise with respect thereto and Landlord shall promptly credit any overpayment found to be owing to Tenant against the then current calendar year (and Operating Expenses, Taxes and Electricity Costs for the then current calendar year (and future calendar years, if necessary) upon the resolution of said objection or, if at the time of the resolution of said objection the Term has expired, immediately refund any overpayment found to be owing to Tenant.

    (i)  Notwithstanding anything to the contrary in this Section 7(e), in the event Tenant does not notify Landlord of any objection to Landlord's Statement within ninety (90) days after the later of delivery of Landlord's Statement or such requested supporting documentation, Tenant shall be deemed to have accepted Landlord's Statement as true and correct and shall be deemed to have waived any right to dispute the excess Operating Expenses, Taxes and/or Electricity Costs due pursuant to that Landlord's Statement.

    (ii)  Tenant shall pay to Landlord, together with its monthly payment of Base Rent as provided in Section 5 above, as Additional Rent hereunder, the estimated monthly installment of Tenant's Share of the excess Operating Expenses, Taxes and Electricity Costs for the calendar year in question. At the end of any calendar year, if Tenant has paid to Landlord an amount in excess of Tenant's Share of excess Operating Expenses, Taxes and Electricity Costs for such calendar year, Landlord shall reimburse to Tenant any such excess amount (or shall apply any such excess amount to any amount then owing to Landlord hereunder, and if none, to the next due installment or installments of Additional Rent due hereunder, at the option of Landlord). At the end of any calendar year if Tenant has paid to Landlord less than Tenant's Share of excess Operating Expenses, Taxes and Electricity Costs for such calendar year, Tenant shall pay to Landlord any such deficiency within thirty (30) days after Tenant receives the annual statement.

(iii)    (ii)  For the calendar year in which this Lease terminates and is not extended or renewed, the provisions of this Section shall apply, but Tenant's Share for such calendar year shall be subject to a pro rata adjustment based upon the number of days prior to the expiration of the Term of this Lease. Tenant shall make monthly estimated payments of the pro rata portion of Tenant's Share for such calendar year (in the manner provided above) and when the actual prorated Tenant's Share for such calendar year is determined, Landlord shall send Landlord's Statement to Tenant for such year and if such Statement reveals that Tenant's estimated payments for the prorated Tenant's Share for such calendar year exceeded the actual prorated Tenant's Share for such calendar year, Landlord shall include a refund for that amount along with the Statement (subject to offset in the event Tenant is in default hereunder).    If Landlord's Statement reveals that Tenant's estimated payments for the prorated Tenant's Share for such calendar year were less than the actual prorated Tenant's Share for such calendar year, Tenant shall pay the shortfall to Landlord within thirty (30) days after the date of receipt of Landlord's Statement.

(iv)    (iii)  If the Building is less than ninety-five percent (95%) occupied throughout ~~the Operating Expense Base Year, Tax Base Year or Electricity Cost Base Year,~~ __the Operating Expense Base Year, Tax Base Year or Electricity Cost Base Year,__ or any calendar year of the Term, then the actual Operating Expenses ~~for, Taxes and Electricity Costs for the Operating Expense Base Year, Tax Base Year or Electricity Cost Base Year,~~ __Taxes and Electricity Costs for the Operating Expense Base Year, Tax Base Year or Electricity Cost Base Year,__ or the calendar year in question (as well as ~~the Operating Expenses for the Operating Expense~~ ~~Base Year—which~~ vary with occupancy levels in the Building (e.g. ~~utilities,~~ __utilities,__ elevator maintenance, management fees) shall be increased to the amount of Operating Expenses, __Taxes__ and Electricity Costs which Landlord reasonably determines would have been incurred during that calendar year if the Building had been at least ninety-five percent (95%) occupied __and fully__ ~~tax-assessed~~ throughout such calendar year.  If the provisions of this subsection are applied in any calendar year __in all events,__ the Base Year Operating Expense Amount, __the Base Year Tax Amount, and the Base Year Electricity Cost Amount__ shall likewise be adjusted to reflect such level of occupancy.

8.    **Late Charge.**  Other remedies for non-payment of Rent notwithstanding, if any monthly installment of Base Rent or Additional Rent is not received by Landlord on or before the fifth (5th) day following the date due, or if any payment due Landlord by Tenant which does not have a scheduled due date is not received by Landlord on or before the tenth (10th) day following the date Tenant received invoice therefor ~~thereof,~~ a late charge of five percent (5%) of such past due amount shall be immediately due and payable as Additional Rent and interest shall accrue on all delinquent amounts from the date past due until paid at the lower of a rate of one and one-half (1-1/2%) percent per month or fraction thereof from the date such payment is due until paid ("Annual Percentage Rate"=18%), or the highest rate permitted by applicable law.

9.    **Partial Payment.**  No payment by Tenant or acceptance by Landlord of an amount less than the Rent herein stipulated shall be deemed a waiver of any other Rent due.  No partial payment or endorsement on any check or any letter accompanying such payment of Rent shall be deemed an accord and satisfaction, but Landlord may accept such payment without prejudice to Landlord's right to collect the balance of any Rent due under the terms of this Lease or any late charge assessed against Tenant hereunder.

7

8

10.   ~~**Security Deposit.**   Tenant shall pay Landlord the amount identified as the Security Deposit in the Basic Lease Provisions (hereinafter referred to as "Security Deposit") as evidence of good faith on the part of Tenant in the fulfillment of the terms of this Lease, which shall be held by the Landlord during the Term of this Lease, or any renewal thereof. Under no circumstances will Tenant be entitled to any interest on the Security Deposit. The Security Deposit may be used by Landlord, at its discretion, to apply to any amount owing to Landlord hereunder, or to pay the expenses of repairing any damage to the Premises, except natural wear and tear occurring from normal use of the Premises, which exists on the day Tenant vacates the Premises, but this right shall not be construed to limit Landlord's right to recover additional sums from Tenant for damages to the Premises. In addition to any other rights available to Landlord hereunder, the Security Deposit shall be forfeited in any event if Tenant fails to occupy the Premises for the full Term of this Lease, or of any renewal thereof. In the event that, during the Term, Landlord applies all or any amount of the Security Deposit to satisfy amounts owing by Tenant to Landlord, then upon request of Landlord, Tenant shall immediately deposit with Landlord an amount necessary to restore the Security Deposit to its original amount. If there are no payments to be made from the Security Deposit as set out in this paragraph, or if there is any balance of the Security Deposit remaining after all payments have been made, the Security Deposit, or such balance thereof remaining, will be refunded to the Tenant within thirty (30) days after fulfillment by Tenant of all obligations hereunder (including payment of the balance of any year-end reconciliation). In no event shall Tenant be entitled to apply the Security Deposit to any Rent due hereunder. In the event of an act of bankruptcy by or insolvency of Tenant, or the appointment of a receiver for Tenant or a general assignment for the benefit of Tenant's creditors, then the Security Deposit shall be deemed immediately assigned to Landlord. The right to retain the Security Deposit shall be in addition and not alternative to Landlord's other remedies under this Lease or as may be provided by law and shall not be affected by summary proceedings or other proceedings to recover possession of the Premises. Upon sale or conveyance of the Building, Landlord may transfer or assign the Security Deposit to any new owner of the Premises, and upon such transfer all liability of Landlord for the Security Deposit shall terminate. Landlord shall be entitled to commingle the Security Deposit with its other funds.~~ Intentionally Deleted.

## C.   USE/LAWS/RULES.

### 11.   Use of Premises.

(a)   Tenant shall use and occupy the Premises for general office purposes of a type customary for office buildings of the same type and quality as the Building and for no other purpose. The Premises shall not be used for any illegal purpose, nor in violation of any valid regulation of any governmental body, nor in any manner to create any nuisance or trespass, nor in any manner which will void the insurance or increase the rate of insurance on the Premises or the Building, nor in any manner inconsistent with the first-class nature of the Building.

(b)   Tenant shall not cause or permit the receipt, storage, use, location or handling on the Property (including the Building and Premises) of any product, material or merchandise which is explosive, highly inflammable, or a "hazardous or toxic material," as that term is hereafter defined. "Hazardous or toxic material" shall include all materials or substances

which have been determined to be hazardous to health or the environment and are regulated or subject to all applicable laws, rules and regulations from time to time, including, without limitation hazardous waste (as defined in the Resource Conservation and Recovery Act); hazardous substances (as defined in the Comprehensive Emergency Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act); gasoline or any other petroleum product or by-product or other hydrocarbon derivative; toxic substances, (as defined by the Toxic Substances Control Act); insecticides, fungicides or rodenticide, (as defined in the Federal Insecticide, Fungicide, and Rodenticide Act); asbestos and radon and substances determined to be hazardous under the Occupational Safety and Health Act or regulations promulgated thereunder. Notwithstanding the foregoing, Tenant shall not be in breach of this provision as a result of the presence in the Premises of minor amounts of hazardous or toxic materials which are in compliance with all applicable laws, ordinances and regulations and are customarily present in a general office use (e.g., copying machine chemicals and kitchen cleansers).

(c)    Without limiting in any way Tenant's obligations under any other provision of this Lease, Tenant and its successors and assigns shall indemnify, protect, defend (with counsel approved by Landlord) and hold Landlord, its partners, officers, directors, shareholders, employees, agents, lenders, contractors and each of their respective successors and assigns (the "Indemnified Parties") harmless from any and all claims, damages, liabilities, losses, costs and expenses of any nature whatsoever, known or unknown, contingent or otherwise (including, without limitation, reasonable attorneys' fees, litigation, arbitration and administrative proceedings costs, expert and consultant fees and laboratory costs, as well as damages arising out of the diminution in the value of the Premises or any portion thereof, damages for the loss of the Premises, damages arising from any adverse impact on the marketing of space in the Premises, and sums paid in settlement of claims), which arise during or after the Term in whole or in part as a result of the presence or suspected presence of any hazardous or toxic materials, in, on, under, from or about the Premises due to Tenant's acts or omissions, on or about the Premises, unless such claims, damages, liabilities, losses, costs and expenses arise out of or are caused by the negligence or willful misconduct of any of the Indemnified Parties. Landlord and its successors and assigns shall indemnify Tenant and its successors and assigns harmless against all such claims or damages if arising out of or caused by the negligence or willful misconduct of Landlord, its agents or employees. The indemnities contained herein shall survive the expiration or earlier termination of this Lease.

12.    **Compliance with Laws.** Tenant and Landlord shall operate the Premises and Building respectively in compliance with all applicable federal, state, and municipal laws, ordinances and regulations (including, without limitation, the Americans with Disabilities Act) and shall not knowingly, directly or indirectly, make any use of the Premises or Building which is prohibited by any such laws, ordinances or regulations.

13.    **Waste Disposal.**

(a)    All normal trash and waste (i.e., waste that does not require special handling pursuant to subparagraph (b) below) shall be disposed of through the janitorial service.

(b)     Tenant shall be responsible for the removal and disposal of any waste deemed by any governmental authority having jurisdiction over the matter to be hazardous or infectious waste or waste requiring special handling, such removal and disposal to be in accordance with any and all applicable governmental rules, regulations, codes, orders or requirements. Tenant agrees to separate and mark appropriately all waste to be removed and disposed of through the janitorial service pursuant to (a) above and hazardous, infectious or special waste to be removed and disposed of by Tenant pursuant to this subparagraph (b). Tenant hereby indemnifies and holds Landlord harmless Landlord from and against any loss, claims, demands, damage or injury Landlord may suffer or sustain as a result of Tenant's failure to comply with the provisions of this subparagraph (b).

14.     **Rules and Regulations.** The rules and regulations in regard to the Building, a copy of which is attached hereto as Exhibit "D," and all reasonable rules and regulations and modifications thereto which Landlord may hereafter from time to time adopt and promulgate after notice thereof to Tenant, for the government and management of the Building, are hereby made a part of this Lease and shall during the Term be observed and performed by Tenant, its agents, employees and invitees. In the event any rules or regulations in regard to the Building are in conflict with this Lease, this Lease shall control.

D.      **SERVICES/TENANT BUILDOUT.**

15.     **Services.**

(a)     The normal business hours of the Building shall be from 8:00 A. M. to 6:00 P.M. on Monday through Friday and Saturdays from 8:00 A.M. to 1:00 P.M., and at such other hours and times as determined by Landlord to be required for the majority of the occupants of the Building, exclusive of Building holidays as reasonably designated by Landlord ("Building Holidays"). Initially and until further notice by Landlord to Tenant, the Building Holidays shall be: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving (and the day after Thanksgiving) and Christmas. Landlord shall furnish the following services during the normal business hours of the Building except as noted:

(i)     Elevator service for passenger needs at all times, and for delivery needs during normal business hours;

(ii)    Air conditioning reasonably adequate to cool the Premises and heat reasonably adequate to warm the Premises in accordance with the standards set forth on the HVAC Specifications shown on Exhibit "E" attached hereto and made a part hereof, subject to governmental regulations (so long as the occupancy level of the Premises and the heat generated by electrical lighting and fixtures do not exceed the thresholds set forth on Exhibit "E"). During Throughout the initial Term of the Lease, after hours HVAC shall be available on an individual suite basis at a rate of $25.00 per hour. Tenant shall reimburse Landlord for any actual costs incurred by Landlord in connection with providing after hours HVAC.

(iii)   Hot and cold running water for all restrooms and lavatories;

(iv)    Soap, paper towels, and toilet tissue for public restrooms;

17431\1\722344 # 631679 v 5

(v)     ~~Janitorial~~ **Daily janitorial** service Monday through Friday, in keeping with the standards generally maintained in similar office buildings in the city where the Building is located;

(vi)    Custodial, electrical and mechanical maintenance services in the Building;

(vii)   Electric power for lighting and outlets not in excess of the total watts per rentable square foot of the Premises set forth on Exhibit "E" at 100% connected load ('Tenant shall pay for any electrical service in excess of such amount);

(viii)  Replacement of Building standard lamps and ballasts as needed from time to time;

(ix)    Repairs and maintenance as described in Section 22 of this Lease; and

(x)     General Building management, including supervision, inspections, recordkeeping, accounting, leasing and related management functions.

(b)     Tenant shall have no right to any services in excess of those provided herein. If Tenant uses services in an amount or for a period in excess of that provided for herein, then Landlord reserves the right to charge Tenant Additional Rent hereunder a reasonable sum as reimbursement for the direct cost of such added services, and to charge Tenant for the cost of any additional equipment or facilities or modifications thereto which are necessary to provide the additional services, and/or to discontinue providing such excess services to Tenant.

(c)     Landlord shall not be liable for any damages directly or indirectly resulting from the interruption in any of the services described above, nor shall any such interruption entitle Tenant to any abatement of Rent or any right to terminate this Lease, **except as otherwise specified below**. Landlord shall use all reasonable efforts to furnish uninterrupted services as required above. Notwithstanding the foregoing, in the event that any interruption or discontinuance of services provided pursuant to this Section 15 was within the reasonable control of Landlord to prevent and such interruption or discontinuance continues beyond three (3) business days after written notice to Landlord and materially and adversely affects Tenant's ability to conduct business in the Premises, or any portion thereof, and on account of such interruption or disturbance Tenant ceases doing business in the Premises, Base Rent and Additional Rent shall thereafter abate proportionately for so long as Tenant remains unable to conduct its business in the Premises or such portion thereof. To the extent within Landlord's reasonable control, Landlord agrees to use reasonable efforts to restore such interrupted or discontinued service as soon as reasonably practicable.

16.     **Telephone and Data Equipment.**  Landlord shall have no responsibility for providing to Tenant any telephone equipment, including wiring, within the Premises or for providing telephone service or connections from the utility to the Premises, except as required by law.  Tenant shall not alter, modify, add to or disturb any telephone or data wiring in the Premises or elsewhere in the Building without the Landlord's prior written consent. Tenant shall be liable to Landlord for any damage to the telephone or data wiring in the Building due to the

1743\1\1172441 #631679 v.15

12

act, negligent or otherwise, of Tenant or any employee, contractor or other agent of Tenant. Tenant shall have no access to the telephone closets within the Building, except in the manner and under procedures established by Landlord. Tenant shall promptly notify Landlord of any actual or suspected failure of telephone or data service to the Premises. All costs incurred by Landlord for the installation, maintenance, repair and replacement of telephone wiring within the Building shall be an Operating Expense unless Landlord is reimbursed for such costs by other tenants of the Building. Landlord shall not be liable to Tenant and Tenant waives all claims against Landlord whatsoever, whether for personal injury, property damage, loss of use of the Premises, or otherwise, due to the interruption or failure of telephone services to the Premises. Tenant hereby holds Landlord harmless and agrees to ~~indemnify, protect and defend~~ **releases** Landlord from and against any liability for any damage, loss or expense due to any failure or interruption of telephone or data service to the Premises for any reason **unless due to Landlord's wrongful act or gross negligence**. ~~Tenant agrees to obtain loss of rental insurance adequate to cover any damage, loss or expense occasioned by the interruption of telephone or~~ **business interruption insurance. Sprint is the incumbent provider of telephone service to the Building.**

17. **Signs.** A **Landlord, at its sole cost and expense, shall install a lobby directory and a** Building standard suite entry shall be installed on the door to the Premises or adjacent to the entry to the Premises as part of the Work described in Section 20 below, ~~and the cost thereof shall be paid out of the Tenant Improvement Allowance described in Section 20 below.~~ Otherwise, Tenant shall not paint or place any signs, placards, or other advertisements of any character upon the windows or inside walls of the Premises (except with the prior consent of Landlord, which consent may be withheld by Landlord in its absolute discretion), and Tenant shall place no signs upon the outside walls, common areas or the roof of the Building.

18. **Parking.** No rights to specific parking spaces are granted under this Lease; however, subject to Landlord's rights pursuant to the last sentence of this Section 18, Tenant shall be entitled to use up to the total number of parking spaces set forth in the Basic Lease Provisions in the parking facilities located on the Property **throughout the Term of this Lease, at no additional cost to Tenant.** All parking spaces provided to Tenant shall be unreserved (unless otherwise specified on Exhibit "H" attached hereto) and are to be used by Tenant, its employees and invitees in common with the other tenants of the Building and their employees and invitees. All parking spaces provided to Tenant shall be accessible twenty-four (24) hours a day, seven (7) days a week of the year. Landlord reserves the right to build improvements upon, reduce the size of, relocate, reconfigure, eliminate, and/or make alterations or additions to such parking facilities at any time. Landlord reserves the right to establish or modify the methods used to control parking in the parking facilities serving the Building, including, without limitation, installation of access devices, parking attendants, managing agent, towing and parking fines. **In the event Landlord establishes or modifies the methods used to control parking,** Landlord will provide Tenant with one (1) access device for each parking space to which Tenant is entitled to use pursuant to this Lease. Landlord reserves the right to charge a fee for the replacement of lost or damaged access devices.

19. **Storage.** If Landlord makes available to Tenant any storage space outside the Premises, anything stored therein shall be wholly at the risk of Tenant, and Landlord shall have no responsibility or liability for the items stored therein.

13

### 20.   Buildout Allowance and Tenant Finishes.

(a)   Landlord will provide to Tenant an allowance ("Tenant Improvement Allowance") per rentable square foot contained within the Premises as set forth in the Basic Lease Provisions to be applied to the cost of the Work and Additional Work described in Exhibit "B". Tenant and Landlord agree that all costs of the Work and Additional Work in excess of such Tenant Improvement Allowance which are requested by Tenant and approved by Landlord shall be paid by Tenant to Landlord as follows: twenty-five (25%) percent of such excess costs prior to the commencement of the Work, fifty percent (50%) of such excess costs within five (5) business days of Landlord's notice that fifty percent (50%) of the Work is complete and the balance (i.e. 25%) of actual costs upon substantial completion and prior to occupancy. The amount due for each installment shall be set forth in a written invoice from Landlord. Should Tenant fail to pay for such excess costs when due as herein provided, such amount due shall accrue interest at the lesser of a rate of one and one half (1-1/2%) percent per month or fraction thereof from the date such payment is due until paid (Annual Percentage Rate – 18), or the highest rate permitted by applicable law, and the failure to pay such amount when due shall be a default, subject to the provisions of Section 34 below.

(b)   The Tenant Improvements. Landlord shall construct the Tenant Improvements in accordance with the Work Letter attached hereto as Exhibit "B" and executed by Landlord and Tenant, is hereby made a part of this Lease, and its provisions shall control in the event of a conflict with the provisions contained in this Lease.

21.   Force Majeure. In the event of a strike, lockout, labor trouble, civil commotion, an act of God, or any other extraordinary event beyond Landlord's control ("a Force majeure event") which results in the Landlord being unable to timely perform its obligations hereunder to repair the Premises, provide services, or complete Work (as provided in Exhibit "B"), so long as Landlord diligently proceeds to perform such obligations after the end of such force majeure event, Landlord shall not be in breach hereunder, this Lease shall not terminate, and Tenant's obligation to pay any Base Rent, additional rent, or any other charges and sums due and payable shall not be excused.

### E.   REPAIRS/ALTERATIONS/CASUALTY/CONDEMNATION.

22.   Repairs By Landlord. Tenant, by taking possession of the Premises, shall accept and shall be held to have accepted the Premises as suitable for the use intended by this Lease, except for punch list items. In no event shall Tenant be entitled to compensation or any other damages or other remedy against Landlord in the event the Premises are not deemed suitable for Tenant's use. Landlord shall not be required, after possession of the Premises has been delivered to Tenant, to make any repairs or improvements to the Premises, except as set forth in this Lease. Except for damage caused by casualty and condemnation (which shall be governed by Section 25 and 26 below), and subject to normal wear and tear, Landlord shall maintain in good repair the exterior walls, roof, common areas, foundation, structural portions and the Building's mechanical, electrical, plumbing and HVAC systems, provided such repairs are not occasioned caused by Tenant, Tenant's invitees or anyone in the employ or control of Tenant.

TA3\11\172411\4 #63167v0+5

23.    **Repairs By Tenant.**  Except as described in Section 22 above, Tenant shall, at its own cost and expense, maintain the Premises in good repair and in a neat and clean ~~first-class~~ condition, including making all necessary repairs and replacements. Tenant shall further, at its own cost and expense, repair or restore any ~~uninsured~~ damage or injury to all or any part of the Building caused by Tenant or Tenant's agents, employees, invitees, licensees, visitors or contractors, including but not limited to any repairs or replacements necessitated by (i) the construction or installation of improvements to the Premises by or on behalf of Tenant, and (ii) the moving of any property into or out of the Premises. If Tenant fails to make such repairs or replacements promptly, Landlord may, at its option, upon prior reasonable notice to Tenant (except in an emergency) make the required repairs and replacements and the costs of such repair or replacements shall be charged to Tenant as Additional Rent and shall become due and payable by Tenant with the monthly installment of Base Rent next due hereunder.

24.    **Alterations and Improvements/Liens.**

(a)    Except for minor, decorative alterations which do not affect the Building structure or systems, are not visible from outside the Premises and do not cost in excess of $10,000.00 in the aggregate, Tenant shall not make or allow to be made any alterations, physical additions or improvements in or to the Premises without first obtaining in writing Landlord's written consent for such alterations or additions, which consent may be granted or withheld in Landlord's sole discretion if the alterations will affect the Building structure or systems or will be visible from outside the Premises, but which consent shall not be unreasonably withheld if the alterations will not affect the Building structure or systems and will not be visible from outside the Premises. Upon Landlord's request, Tenant will deliver to Landlord plans and specifications for any proposed alterations, additions or improvements and shall reimburse Landlord for Landlord's reasonable cost to review such plans. Any alterations, physical additions or improvements shall at once become the property of Landlord; provided, however, that Landlord, at its option, may require Tenant to remove any alterations, additions or improvements in order to restore the Premises to the condition existing on the Commencement Date (but only if Landlord notified Tenant at the time of Landlord's consent to any such alterations, additions or improvements that Landlord reserved the right to require the removal thereof). All costs of any such alterations, additions or improvements shall be borne by Tenant. All alterations, additions or improvements shall be made in a good, first-class, workmanlike manner and in a manner that does not disturb other tenants (i.e., any loud work must be performed during non-business hours) and Tenant must maintain appropriate liability and builder's risk insurance throughout the construction. Tenant does hereby indemnify and hold Landlord harmless from and against any and all claims for damages or death of persons or damage or destruction of property arising out of or relating to the performance of any such alterations, additions or improvements made by or on behalf of Tenant. Under no circumstances shall Landlord be required to pay, during the Term of this Lease and any extensions or renewals thereof, any ad valorem or Property tax on such alterations, additions or improvements, Tenant hereby covenanting to pay all such taxes when they become due.  In the event any alterations, additions, improvements or repairs are to be performed by contractors other than Landlord's contractors or workmen, any such contractors or workmen must first be approved, in writing, by Landlord (which approval will not be unreasonably withheld). Landlord agrees to assign to Tenant any rights Landlord may have against the contractor of the Premises with respect to any work performed by such contractor in connection with improvements made by Landlord at the request of Tenant.

(b)     Nothing contained in this Lease shall authorize or empower Tenant to do any act which shall in any way encumber Landlord's title to the Building, Property, or Premises, nor in any way subject Landlord's title to any claims by way of lien or encumbrance whether claimed by operation of law or by virtue of any expressed or implied contract of Tenant, and any claim to a lien upon the Building or Premises arising from any act or omission of Tenant shall attach only against Tenant's interest and shall in all respects be subordinate to Landlord's title to the Building, Property, and Premises. If Tenant has not removed any such lien or encumbrance or (provided that Tenant in contesting such lien or encumbrance) delivered to Landlord a title indemnity, bond or other security reasonably satisfactory to Landlord, within fifteen (15) days after written notice to Tenant by Landlord, Landlord may pay the amount necessary to remove such lien or encumbrance, without being responsible for making any investigation as to the validity thereof, and the amount so paid shall be deemed Additional Rent reserved under this Lease due and payable forthwith.

Tenant will notify Landlord in writing thirty (30) days prior to commencing any alterations or improvements in order to provide Landlord the opportunity to record and post notices of non-responsibility or such other protective notices available to Landlord under applicable state law.

NOTHING IN THIS LEASE SHALL BE DEEMED TO BE, OR CONSTRUED IN ANY WAY AS CONSTITUTING, THE CONSENT OR REQUEST OF LANDLORD, EXPRESSED OR IMPLIED, BY INFERENCE OR OTHERWISE, TO ANY PERSON, FIRM OR CORPORATION FOR THE PERFORMANCE OF ANY LABOR OR THE FURNISHING OF ANY MATERIALS FOR ANY CONSTRUCTION, REBUILDING, ALTERATION OR REPAIR OF OR TO THE PREMISES OR ANY PART THEREOF, NOR AS GIVING TENANT ANY RIGHT, POWER OR AUTHORITY TO CONTRACT FOR OR PERMIT THE RENDERING OF ANY SERVICES OR THE FURNISHING OF ANY MATERIALS WHICH MIGHT IN ANY WAY GIVE RISE TO THE RIGHT TO FILE ANY LIEN AGAINST THE BUILDING, THE PROPERTY, OR LANDLORD'S INTEREST IN THE PREMISES. TENANT SHALL NOTIFY ANY CONTRACTOR PERFORMING ANY CONSTRUCTION WORK IN THE PREMISES ON BEHALF OF TENANT THAT THIS LEASE SPECIFICALLY PROVIDES THAT THE INTEREST OF LANDLORD IN THE PREMISES SHALL NOT BE SUBJECT TO LIENS FOR IMPROVEMENTS MADE BY TENANT, AND NO MECHANIC'S LIEN OR OTHER LIEN FOR ANY SUCH LABOR, SERVICES, MATERIALS, SUPPLIES, MACHINERY, FIXTURES OR EQUIPMENT SHALL ATTACH TO OR AFFECT THE ESTATE OR INTEREST OF LANDLORD IN AND TO THE PREMISES, THE BUILDING, THE PROPERTY, OR ANY PORTION THEREOF. IN ADDITION, LANDLORD SHALL HAVE THE RIGHT TO POST AND KEEP POSTED AT ALL REASONABLE TIMES ON THE PREMISES ANY NOTICES WHICH LANDLORD SHALL BE REQUIRED SO TO POST FOR THE PROTECTION OF LANDLORD AND THE PREMISES FROM ANY SUCH LIEN. TENANT AGREES TO PROMPTLY EXECUTE SUCH INSTRUMENTS IN RECORDABLE FORM IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF FLORIDA STATUTE 713.10.

25.     **Destruction or Damage.**

(a)    If the Building or the Premises are totally destroyed by storm, fire, earthquake, or other casualty, or damaged to the extent that, in Landlord's reasonable opinion, the damage cannot be restored within one hundred eighty (180) days of the date Landlord provides Tenant written notice of Landlord's reasonable estimate of the time necessary to restore the damage, or if the damage is not covered for by standard "all risks" property insurance, or if the Landlord's lender requires that the insurance proceeds be applied to its loan, Landlord shall have the right to terminate this Lease effective as of the date of such destruction or damage by written notice delivered to Tenant on or before thirty (30) days following Landlord's notice described in the next sentence and Rent shall be accounted for as between Landlord and Tenant as of the **casualty** date. Landlord shall provide Tenant with written notice no later than sixty (60) days following the date of such damage of the estimated time needed to restore, whether the loss is covered by Landlord's insurance coverage and whether or not Landlord's lender requires the insurance proceeds be applied to its loan.

(b)    If the Premises are damaged by any such casualty or casualties but Landlord is not entitled to or does not terminate this Lease as provided in subparagraph (a) above, this Lease shall remain in full force and effect, Landlord shall notify Tenant in writing no later than sixty (60) days after the date of such damage that such damage will be restored (and will include Landlord's good faith estimate of the date the restoration will be complete), in which case Rent shall abate as to any portion of the Premises which is not **reasonably** usable by **Tenant for the conduct of its business** for the period of such untenantability, and Landlord shall promptly commence to diligently restore the Premises to substantially the same condition as before such damage occurred as soon as practicable, whereupon full Rent shall recommence.

(c)    If such damage occurs within the last twelve (12) months of the Term, either party shall have the right, upon delivery of written notice to the other party within thirty (30) days following such damage, to cancel and terminate this Lease as of the date of such damage, provided, however, that Tenant may not elect to terminate this Lease if such damage was caused by the intentional act of Tenant, its agents, servants, employees or invitees.

(d)    Tenant agrees that Landlord's obligation to restore, and the abatement of Rent provided herein, or Tenant's right to terminate as above set forth in this Section 25, shall be Tenant's sole recourse in the event of such damage, and waives any other rights Tenant may have under any applicable Law to terminate the Lease by reason of damage to the Premises or Property. If prior to any such election to terminate Tenant has elected to extend the Term pursuant to the provisions of this Lease and such election may not then according to its terms be rescinded or terminated, then for purposes of this Section 25 the Term shall be deemed to expire on such extended date.

(e)    Notwithstanding anything contained in this Lease to the contrary, if Landlord fails to complete such repairs and restoration within sixty (60) days of the time indicated in written notice given by Landlord to Tenant pursuant to this Section 25 (with an exception to any force majeure event), Tenant shall have the right to terminate this Lease by sending Landlord a written termination notice which must be received by Landlord prior to of Landlord's substantial completion of the repairs and restoration. In the event Tenant terminates this Lease pursuant to this Section 25, Tenant and Landlord shall have no further obligations hereunder.

26.     **Eminent Domain.** If the whole of the Building or Premises, or such portion thereof as will make the Building or Premises unusable in the reasonable judgment of Landlord for their intended purposes, is condemned or taken by any legally constituted authority for any public use or purpose, then in either of such events, this Lease shall terminate and the Term hereby granted shall cease from that time when possession thereof is taken by the condemning authorities, and Rent shall be accounted for as between Landlord and Tenant as of such date. If a portion of the Building or Premises is so taken, but not such amount as will make the Premises unusable in the reasonable judgment of Landlord for the purposes herein leased, or if this Lease has not terminated, this Lease shall continue in full force and effect and the Rent shall be reduced prorata in proportion to the amount of the Premises so taken. Tenant shall have no right or claim to any part of any award made to or received by Landlord for such condemnation or taking, and all awards for such condemnation or taking shall be made solely to Landlord, provided however that Tenant shall have the right to pursue any separate award for loss of its equipment and trade fixtures and for moving expenses so long as such action does not reduce the award to which Landlord is entitled.

27.     **Damage or Theft of Personal Property.** All personal property brought into the Premises shall be at the risk of the Tenant only and Landlord shall not be liable for theft thereof or any damage thereto occasioned by any acts of co-tenants, or other occupants of the Building, or any other person, except, with respect to damage to the Premises, as may be occasioned by the negligent or willful act of the Landlord, its employees and agents (but subject to the insurance and waiver of subrogation provisions set forth in Section 28 below).

## F.     INSURANCE/INDEMNITIES/WAIVER/ESTOPPEL.

28.     **Insurance; Waivers.**

(a)     Tenant covenants and agrees that from and after the date of delivery of the Premises from Landlord to Tenant, Tenant will carry and maintain, at its sole cost and expense, the following types of insurance, in the amounts specified and in the form hereinafter provided for:

(i)     Commercial General Liability ("CGL") Insurance written on an occurrence basis, covering the Premises and all operations of the Tenant in or about the Premises against claims for bodily injury, property damage and product liability and to include contractual liability coverage insuring Tenant's indemnification obligations under this Lease, to be in combined single limits of not less than $1,000,000 each occurrence for bodily injury and property damage, $1,000,000 for products/completed operations aggregate, $1,000,000 for personal injury, and to have general aggregate limits of not less than $2,000,000 (per location) and Umbrella Liability Insurance in an amount not less than $5,000,000 for each policy. The general aggregate limits under the Commercial General Liability insurance policy or policies shall apply separately to the Premises and to Tenant's use thereof (and not to any other location or use of Tenant) and such policy shall contain an endorsement to that effect. The certificate of insurance evidencing the CGL form of policy shall specify all endorsements required herein and shall specify on the face thereof that the limits of such policy apply separately to the Premises.

17

1431\1\1\1724\1 +15
# 631679 v 1

18

(ii)    Insurance covering all of the items included in Tenant's leasehold improvements, heating, ventilating and air conditioning equipment maintained by Tenant, trade fixtures, merchandise and personal property from time to time in, on or upon the Premises, and alterations, additions or changes made by Tenant pursuant to Section 24, in an amount not less than one hundred percent (100%) of their full replacement value from time to time during the Term, providing protection against perils included within the standard form of "all-risks" fire and casualty insurance policy.  Any policy proceeds from such insurance shall be held in trust by Tenant's insurance company for the repair, construction and restoration or replacement of the property damaged or destroyed unless this Lease shall cease and terminate under the provisions of Section 25 of this Lease.

(iii)    Workers' Compensation and Employer's Liability insurance affording statutory coverage and containing statutory limits with the Employer's Liability portion thereof to have minimum limits of $500,000.00.

(iv)    Business Interruption Insurance ~~equal to not less than fifty percent (50%) of the estimated gross earnings (as defined in the standard form of business interruption insurance policy) of Tenant at the Premises which insurance shall be issued on an "all-risks" basis (or its equivalent),~~

(b)    All policies of the insurance provided for in Section 28(a) above shall be issued in form acceptable to Landlord by insurance companies with a rating and financial size of not less than A-VIII in the most current available "Best's Insurance Reports", and licensed to do business in the state in which the Building is located.  Each and every such policy:

(i)    shall name Landlord as an additional insured (as well as any mortgagee of Landlord and any other party reasonably designated by Landlord), except with respect to the insurance described in Section 28(a)(iii) above;

(ii)    shall (and a certificate thereof shall be delivered to Landlord at or prior to the execution of the Lease) be delivered to each of Landlord and any such other parties in interest thirty (30) days after delivery of possession of the Premises to Tenant and thereafter within five (5) days after the inception (or renewal) of each new policy, and as often as any such policy shall expire or terminate. Renewal or additional policies shall be procured and maintained by Tenant in like manner and to like extent;

(iii)    shall contain a provision that the insurer will give to Landlord and such other parties in interest at least ~~thirty~~ fifteen ~~(30)~~ (15) days' notice in writing (and ten days in the case of non-payment) in advance of any material change, cancellation, termination or lapse, ~~or the effective date of any reduction in the amounts of insurance;~~ and

(iv)    shall be written as a primary policy which does not contribute to and is not in excess of coverage which Landlord may carry.

(c)    Any insurance provided for in Section 28(a) may be maintained by means of a policy or policies of blanket insurance, covering additional items or locations or insureds, provided, however, that:

(i)     Landlord and any other parties in interest from time to time designated by Landlord to Tenant shall be named as an additional insured thereunder as its interest may appear;

(ii)    the coverage afforded Landlord and any such other parties in interest will not be reduced or diminished by reason of the use of such blanket policy of insurance; and

(iii)   the requirements set forth in this Section 28 are otherwise satisfied.

(d)     During the Term hereof, Landlord shall in a manner comparable to other comparable office buildings in the commercial market where the Building is located keep in effect (i) commercial property insurance on the Building, its fixtures and equipment, and rent loss insurance for a period and amount of not less than one (1) year of rent (such commercial property insurance policy shall, at a minimum, cover the perils insured under the ISO special causes of loss form which provides "all risk" coverage, and include replacement cost coverage), and (ii) a policy or policies of commercial general liability insurance insuring against liability arising out of the risks of death, bodily injury, property damage and personal injury liability with respect to the Building and Property.

(e)     Notwithstanding anything to the contrary set forth hereinabove, Landlord and Tenant do hereby waive any and all claims against one another for damage to or destruction of real or personal property to the extent such damage or destruction can be covered by "all risks" property insurance of the type described in Section 28(d)(i) above. The risk to be borne by each party shall also include the satisfaction of any deductible amounts required to be paid under the applicable "all risks" fire and casualty insurance carried by the party whose property is damaged, and each party agrees that the other party shall not be responsible for satisfaction of such deductible. These waivers shall apply if the damage would have been covered by a customary "all risks" insurance policy, even if the party fails to obtain such coverage. The intent of this provision is that each party shall look solely to its insurance with respect to property damage or destruction which can be covered by "all risks" insurance of the type described in Section 28(a)(ii) and Section 28(d)(i). Each such policy shall include a waiver of all rights of subrogation by the insurance carrier against the other party, its agents and employees with respect to property damage covered by the applicable "all risks" fire and casualty insurance policy.

29.     **Indemnities.**  Tenant does hereby indemnify and save harmless Landlord against all claims for damages to persons or property which are caused anywhere in the Building or on the Property by the negligence or willful misconduct of Tenant, its agents or employees or which occur in the Premises (or arise out of actions taking place in the Premises) unless such damage is caused by the negligence or willful misconduct of Landlord, its agents, or employees. Landlord does hereby indemnify and hold Tenant harmless against all claims for damage to persons or property caused by the negligence or willful misconduct of Landlord, its agents or employees which occur on the Property or common areas of the Building unless such damage is caused by the negligence or willful misconduct of Tenant, its agents or employees. The indemnities set forth hereinabove shall include the application to pay reasonable expenses incurred by the

The indemnities contained herein do not override the waivers contained in Section 28(e) above.

30. **Acceptance and Waiver.** Except to the extent caused by the negligence or willful misconduct of Landlord, its agents and employees (but subject to the insurance provisions in Section 28 above), Landlord shall not be liable to Tenant, its agents, employees, guests or invitees (and, if Tenant is a corporation, its officers, agents, employees, guests or invitees) for any damage caused to any of them due to the Building or any part or appurtenances thereof being improperly constructed or being or becoming out of repair, or arising from the leaking of gas, water, sewer or steam pipes, or from electricity, but Tenant, by moving into the Premises and taking possession thereof, shall accept, and shall be held to have accepted the Premises as suitable for the purposes for which the same are leased, and ~~except for punch list items and latent defects~~, shall accept and shall be held to have accepted the Building and every appurtenances thereof, and Tenant by said act waives any and all defects (~~other than punchlist items and latent defects~~) therein; provided, however, that this Section shall not preclude Tenant from seeking recovery from any third party responsible for such damage or injury.

31. **Estoppel.** Tenant shall, from time to time, upon not less than ten~~(10)~~ **fifteen (15)** days prior written request by Landlord, execute, acknowledge and deliver to Landlord a written statement certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), the dates to which the Rent has been paid, that Tenant is not in default hereunder and whether Tenant has any offsets or defenses against Landlord under this Lease, and whether or not to the best of Tenant's knowledge Landlord is in default hereunder (and if so, specifying the nature of the default), it being intended that any such statement delivered pursuant to this paragraph may be relied upon by a prospective purchaser of Landlord's interest or by a mortgagee of Landlord's interest or assignee of any security deed upon Landlord's interest in the Premises.

## G.   DEFAULT/REMEDIES/SURRENDER/HOLDING OVER.

32. **Notices.** Any notice which is required or permitted to be given by either party under this Lease shall be in writing and must be given only by certified mail, return receipt requested, by hand delivery or by nationally recognized overnight courier service at the addresses set forth in Paragraph 13 of the Basic Lease Provisions. Each party shall further use reasonable efforts to provide the other party with a courtesy copy of any notice by fax and by electronic mail. Any such notice shall be deemed given on the earlier of ~~two business days after the date sent in accordance with one of the permitted methods described above or the date of~~ actual receipt thereof **or the date of refusal of acceptance of such notice**, provided that receipt of notice solely by fax or electronic mail shall not be deemed to be delivery of notice hereunder. The time period for responding to any such notice shall begin on the date the notice is actually received, but refusal to accept delivery or inability to accomplish delivery because the party can no longer be found at the then current notice address, shall be deemed receipt. Either party may change its notice address by notice to the other party in accordance with the terms of this Section 32. The initial notice addresses for each party are set forth in the Basic Lease Provisions.

33. **Abandonment of Premises.** Tenant agrees not to abandon or ~~vacate~~ the Premises during the Term of this Lease. If Tenant does abandon or ~~vacate~~ the Premises, any right to possession of the Premises shall not terminate automatically, by virtue of any such abandonment. If Tenant abandons or ~~vacates~~ the Premises for more than ninety (90) days, Landlord may terminate this Lease, by written notice to Tenant at any time prior to Tenant reoccupying the Premises, but such termination shall not entitle Landlord to pursue any other remedies unless an uncured Default then exists, in which case Landlord may pursue any and all remedies provided by this Lease, at law or in equity.

34. **Default.** If Tenant shall default in the payment of Rent herein reserved when due and fails to cure such default within ten (10) days after written notice of such default is given to Tenant by Landlord; or if Tenant shall be in default in performing any of the terms or provisions of this Lease other than the provisions requiring the payment of Rent, and fails to cure such non-monetary default within thirty (30) days after written notice of such default is given to Tenant by Landlord, provided however that if such non-monetary default is of such a nature that it cannot through the exercise of diligent and reasonable efforts be cured within thirty (30) days, then Tenant shall not be in default in such instance if Tenant promptly commences and diligently pursues the cure of such non-monetary default to completion as soon as possible and in all events within ninety (90) days after such initial notice; or if Tenant is adjudicated a bankrupt; or if a permanent receiver is appointed for Tenant's property and such receiver is not removed within sixty (60) days after appointment thereof, or if, whether voluntarily or involuntarily, Tenant takes advantage of any debtor relief proceedings under any present or future laws, whereby the Rent or any part thereof, is, or is proposed to be, reduced or payment thereof deferred; or if Tenant's effects should be levied upon or attached and such levy or attachment is not satisfied or dissolved within thirty (30) days after such levy or attachment; or, if Tenant is an individual, in the event of the death of the individual and the failure of the executor, administrator or personal representative of the estate of the deceased individual to have assigned the Lease within three (3) months after such death to an assignee approved by Landlord, then, and in any of such events, Landlord, at its option, may exercise any or all of the remedies set forth in Section 35 below.

35. **Landlord's Remedies.** Upon the occurrence of any default set forth in Section 34 above which is not cured by Tenant within the applicable cure period provided therein, if any, Landlord may exercise all or any of the following remedies:

(a)    terminate this Lease by giving Tenant written notice of termination, in which event this Lease shall terminate on the date specified in such notice and all rights of Tenant under this Lease shall expire and terminate as of such date, Tenant shall remain liable for all obligations under this Lease up to the date of such termination and Tenant shall surrender the Premises to Landlord on the date specified in such notice; and if Tenant fails to so surrender, Landlord shall have the right, by any lawful means, to enter upon and take possession of the Premises and to expel and remove Tenant and its effects without being liable for prosecution or any claim of damages therefor; ~~provided, however, that Landlord may not recover possession of Premises without court process, except in the event of abandonment of Premises by Tenant;~~

(b)    terminate this Lease as provided in the immediately preceding subsection and recover from Tenant all damages Landlord may incur by reason of Tenant's default, including without limitation, the then present value (discounted at a rate equal to the then issued treasury bill having a maturity approximately equal to the remaining Term of this Lease had such

21

1/4311/1724/1 # 631679 v 15

22

default not occurred) of (i) the total Rent which would have been payable hereunder by Tenant for the period beginning with the day following the date of such termination and ending with the Expiration Date of the Term as originally scheduled hereunder, minus (ii) the aggregate reasonable rental value of the Premises for the same period (as determined by a**an independent** real estate broker selected by Landlord who is licensed in the state where the Building is located, who has at least ten (10) years experience immediately prior to the date in question in evaluating commercial office space, taking into account all relevant factors including, without limitation, the length of the remaining Term, the then current market conditions in the general area, the likelihood of reletting for a period equal to the Term, net effective rates then being obtained by landlords for similar type space in similar buildings in the general area, vacancy levels in the general area, current levels of new construction in the general area and how that would affect vacancy and rental rates during the period equal to the remainder of the Term and inflation), plus (iii) the costs of recovering the Premises, and all other expenses incurred by Landlord due to Tenant's default, including, without limitation, reasonable attorneys' fees, plus (iv) the unpaid Rent earned as of the date of termination, plus interest, all of which sum shall be immediately due and payable by Tenant to Landlord;

(c)   without terminating this Lease, Landlord may, by any lawful means, enter into and take possession of the Premises **(provided that Landlord may not recover possession of the Premises without court process, except in the event of abandonment of Premises by Tenant)** and attempt to re-let the Premises, or any portion thereof, as agent of Tenant, and on Tenant's account, upon any terms and conditions as Landlord may deem necessary or desirable. Upon any such re-letting, all rentals received by Landlord from such re-letting shall be applied first to the costs incurred by Landlord in accomplishing any such re-letting, and thereafter shall be applied to the Rent owed by Tenant to Landlord during the remainder of the Term of this Lease and Tenant shall pay any deficiency between the remaining Rent due hereunder and the amount received by such re-letting by such re-letting as and when due hereunder;

(d)   allow the Premises to remain unoccupied (so long as Landlord satisfies any duty established by applicable law to mitigate its damages) and collect Rent from Tenant as it becomes due; or

(e)   declare all rents and charges due hereunder to be immediately due and payable and thereupon all such amounts due to the end of the Term shall thereupon be accelerated; provided, however, such accelerated amounts shall be discounted to their then present value on the basis of a five percent (5%) per annum discount from the respective dates that such amounts would have been paid hereunder. In the event that any charges due hereunder cannot be exactly determined as of the date of acceleration, the amount of such charges shall be determined by Landlord in a reasonable manner based on historical increases in such charges; or

(j)   pursue such other remedies as are available at law or in equity.

36.   **Service of Notice.** Except as otherwise provided by law, Tenant hereby appoints as its agent to receive the service of all dispossessory or distraint proceedings and notices thereunder, the person in charge of or occupying the Premises at the time of such proceeding or notice; and if no person be in charge or occupying the Premises, then such service may be made by attaching the same to the front entrance of the Premises.