37.    **Advertising.**  Landlord may advertise the Premises as being "For Rent" at any time following a default by Tenant which is not cured within the applicable notice and cure period, and thereafter for as long as the default remains uncured, and at any time within one hundred eighty (180) days prior to the expiration, cancellation or termination of this Lease for any reason and during any such periods Landlord may exhibit the Premises to prospective tenants upon prior reasonable notice to Tenant.

38.    **Surrender of Premises.**  Whenever under the terms hereof Landlord is entitled to possession of the Premises, Tenant at once shall surrender the Premises and the keys thereto to Landlord in the same condition as on the Commencement Date hereof, natural wear and tear ~~and~~ **casualty event** only excepted, and Tenant shall remove all of its personal property therefrom and shall, if directed to do so by Landlord **concurrently with Landlord's consent to such alteration or improvement**, remove all ~~alterations or~~ improvements and restore the Premises to its original condition prior to the construction of any ~~improvements which have been made therein by or on behalf of Tenant, including any improvements made prior to the Commencement Date~~**such alterations or improvements**. Landlord may, **only through lawful means**, forthwith re-enter the Premises and repossess itself thereof and remove all persons and effects therefrom, using such force as may be reasonably necessary without being guilty of forcible entry, detainer, trespass or other tort. Tenant's obligation to observe or perform these covenants shall survive the expiration or other termination of the Term of this Lease. If the last day of the Term of this Lease or any renewal falls on a Saturday, Sunday or a legal holiday, this Lease shall expire on the business day immediately preceding.

39.    **Cleaning Premises.**  Upon vacating the Premises, Tenant agrees to return the Premises to Landlord broom clean and in the same condition when ~~Tenant's possession commenced, natural wear and tear excepted, regardless of whether any Security Deposit (as~~ defined in ~~is required by~~ Section 10.**38** above) has been forfeited.

40.    **Removal of Fixtures.**  If Tenant is not in default hereunder, Tenant may, prior to the expiration of the Term of this Lease, or any extension thereof, remove any fixtures and equipment which Tenant has placed in the Premises which can be removed without significant damage to the Premises, provided Tenant promptly repairs all damages to the Premises caused by such removal.

41.    **Holding Over.**  In the event Tenant remains in possession of the Premises after the expiration of the Term hereof, or of any renewal term, Tenant shall be a tenant at will and such tenancy shall be without claim of right, but Tenant shall be occupying the Premises as a tenant at sufferance, subject to all the provisions hereof, except that Tenant shall be obligated to pay rent for such period  at a rate equal to two (2) times **one hundred fifty percent (150%) of** the then applicable Base Rent and Additional Rent and shall also be liable for any and all other damages Landlord suffers as a result of such holdover including, without limitation, the loss of a prospective tenant for such space. There shall be no renewal of this Lease by operation of law or otherwise. Nothing in this Section shall be construed as a consent by Landlord for any holding over by Tenant after the expiration of the Term hereof, or any renewal term.

42.    **Attorney's Fees.**  In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant shall pay all costs, expenses and

{741\1\172241 # 631679 v 15}

24

reasonable attorneys' fees incurred or paid by Landlord in connection with such litigation. In the event of any action, suit or proceeding brought by Landlord or Tenant to enforce any of the other's covenants and agreements in this Lease, the prevailing party shall be entitled to recover from the non-prevailing party any costs, expenses and reasonable attorneys' fees incurred in connection with such action, suit or proceeding.

43.   **Mortgagee's Rights.**

(a)   Tenant agrees that this Lease shall be subject and subordinate (i) to any mortgage, deed of trust or other security interest now encumbering the Property and to all advances which may be hereafter made, to the full extent of all debts and charges secured thereby and to all renewals or extensions thereof, to any mortgage, deed of trust or other security interest which any owner of the Property may hereafter, at any time, elect to place on the Property; (ii) to any assignment of Landlord's interest in the leases and rents from the Building or Property which includes the Lease which now exists or which any owner of the Property may hereafter, at any time, elect to place on the Property; and (iii) to any Uniform Commercial Code Financing Statement covering the personal property rights of Landlord or any owner of the Property which now exists or any owner of the Property may hereafter, at any time, elect to place on the foregoing personal property (all of the foregoing instruments set forth in (i), (ii) and (iii) above being hereafter referred to as "Security Documents"). Tenant agrees upon request of the holder of any Security Documents ("Holder") to hereafter execute any documents which the counsel for Landlord or Holder may reasonably deem necessary to evidence the subordination of the Lease to the Security Documents. Within ~~fifteen (15)~~ ten (10) days after written request therefor, if Tenant fails to execute any such requested documents, Landlord or Holder is hereby empowered to execute such documents in the name of Tenant evidencing such subordination, as the act and deed of Tenant, and this authority is hereby declared to be coupled with an interest and not revocable.

**Landlord represents and warrants to Tenant that at the time of execution of this Lease, there is no mortgage or deed of trust which encumbers the Building or the Property. If Tenant is required to subordinate its interests under the Lease to the lien of any mortgage or deed of trust or to any lienholder in the future, Tenant's obligation to subordinate its interest is conditioned upon any such lienholder or prospective lienholder providing Tenant with a commercially reasonable non-disturbance and attornment agreement ("SNDA"), pursuant to which such lienholder agrees to recognize this Lease and all rights granted to Tenant hereunder in the event of default under such mortgage or deed of trust or sale under such mortgage or deed of trust, so long as Tenant is not in default hereunder beyond the expiration of any applicable cure or grace period.**

(b)   In the event of a foreclosure pursuant to any Security Documents, Tenant shall at the election of the Landlord, thereafter remain bound pursuant to the terms of this Lease as if a new and identical Lease between the purchaser at such foreclosure ("Purchaser"), as landlord, and Tenant, as tenant, had been entered into for the remainder of the Term hereof and Tenant shall attorn to the Purchaser upon such foreclosure sale and shall recognize such Purchaser as the Landlord under the Lease. Such attornment shall be effective and self-operative without the execution of any further instrument on the part of any of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of

{4311\1724\1 #631679 v.15}

~~25~~

Landlord or of Holder, any instrument or certificate that may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment.

(c)     If the Holder of any Security Document or the Purchaser upon the foreclosure of any of the Security Documents shall succeed to the interest of Landlord under the Lease, such Holder or Purchaser shall have the same remedies, by entry, action or otherwise for the non-performance of any agreement contained in the Lease, for the recovery of Rent or for any other default or event of default hereunder that Landlord had or would have had if any such Holder or Purchaser had not succeeded to the interest of Landlord. Any such Holder or Purchaser which succeeds to the interest of Landlord hereunder, shall not be (a) liable for any act or omission of any prior landlord (including Landlord) unless such act or omission is of a continuing nature; or (b) subject to any offsets or defenses which Tenant might have against any prior Landlord (including Landlord); or (c) bound by any Rent which Tenant might have paid for more than the current month to any prior Landlord (including Landlord); or (d) bound by any amendment or modification of the Lease made without its ~~its~~ Holder's consent.

(d)     Notwithstanding anything to the contrary set forth in this Section 43, the Holder of any Security Documents shall have the right, at any time, to elect to make this Lease superior and prior to its Security Document. No documentation, other than written notice to Tenant, shall be required to evidence that the Lease has been made superior and prior to such Security Documents, but Tenant hereby agrees to execute any documents reasonably requested by Landlord or Holder to acknowledge that the Lease has been made superior and prior to the Security Documents.

## H.     LANDLORD ENTRY/RELOCATION/ASSIGNMENT AND SUBLETTING.

44.     **Entering Premises.**     Landlord may enter the Premises at reasonable hours provided that Landlord's entry shall not unreasonably interrupt Tenant's business operations and that prior notice is given when reasonably possible (and, if in the opinion of Landlord any emergency exists, at any time and without notice): (a) to make repairs, perform maintenance and provide other services described in Section 22 above (no prior notice is required to provide routine services) which Landlord is obligated to make to the Premises or the Building pursuant to the terms of this Lease or to the other premises within the Building pursuant to the leases of other tenants; (b) to inspect the Premises in order to confirm that Tenant is complying with all of the terms and conditions of this Lease and with the rules and regulations hereof; (c) to remove from the Premises any articles or signs kept or exhibited therein in violation of the terms hereof; (d) to run pipes, conduits, ducts, wiring, cabling or any other mechanical, electrical, plumbing or HVAC equipment through the areas behind the walls, below the floors or above the drop ceilings in the Premises and elsewhere in the Building; and (e) to exercise any other right or perform any other obligation that Landlord has under this Lease. Landlord shall be allowed to take all material into and upon the Premises that may be required to make any repairs, improvements and additions, or any alterations, without in any way being deemed or held guilty of trespass and without constituting a constructive eviction of Tenant. The Rent reserved herein shall not abate while such repairs, alterations or additions are being made and Tenant shall not be entitled to maintain a set-off or counterclaim for damages against Landlord by reason of loss from interruption to the business of Tenant because of the prosecution of any such work. Unless any work would unreasonably interfere with Tenant's use of the Premises if performed during

business hours, all such repairs, decorations, additions and improvements shall be done during ordinary business hours, or, if any such work is at the request of Tenant to be done during any other hours, the Tenant shall pay all overtime and other extra costs.

45.    **Relocation.** At any time or from time to time during the Term or any renewal thereof, Landlord shall have the unrestricted right to relocate Tenant from the Premises to any other reasonably comparable office space in the Building. Landlord shall provide Tenant at least sixty (60) days' prior written notice of any such relocation and Landlord shall reimburse Tenant for all reasonable expenses incurred by Tenant in connection with such relocation including moving expenses, telecommunications and data cabling and hookup and the cost of a reasonable supply of replacement stationery. Landlord shall, at its sole expense, renovate or construct improvements in the relocation space that are substantially similar to those in the Premises. Following any such relocation, Landlord and Tenant shall enter into an amendment to this Lease to reflect that the Premises consists of such relocation space. All other terms and conditions of the Lease shall remain unchanged following such relocation.

46.    **Assignment and Subletting.** Tenant may not, without the prior written consent of Landlord, which consent may be withheld by Landlord in its sole discretion (except to the extent expressly required otherwise by applicable law) ~~shall not be unreasonably withheld, delayed or conditioned~~, assign this Lease or any interest hereunder, or sublet the Premises or any part thereof, or permit the use of the Premises by any party other than Tenant. In the event that Tenant is a corporation or entity other than an individual, any transfer of a majority or controlling interest in Tenant (whether by stock transfer, merger, operation of law or otherwise) shall be considered an assignment for purposes of this paragraph and shall require Landlord's prior written consent. Consent to one assignment or sublease shall not destroy or waive this provision, and all later assignments and subleases shall likewise be made only upon the prior written consent of Landlord. Subtenants or assignees ~~Assignees~~ shall become liable to Landlord for all obligations of Tenant hereunder, without relieving Tenant's liability hereunder and, in the event of any default by Tenant under this Lease, Landlord may, at its option, but without any obligation to do so, elect to treat such ~~any~~ sublease or assignment as a direct Lease with Landlord and collect rent directly from the subtenant. ~~In addition, upon any request by Tenant for Landlord's consent to an assignment or sublease, Landlord may elect to terminate this Lease and recapture all of the Premises (in the event of an assignment request) or the applicable portion of the Premises (in the event of a subleasing request); provided, however, if Landlord notifies Tenant that Landlord elects to exercise this recapture right, Tenant may, within five (5) business days of its receipt of Landlord's recapture notice, notify Landlord that Tenant withdraws its request to sublease or assign, in which case Tenant shall continue to lease all of the Premises, subject to the terms of this Lease and Landlord's recapture notice shall be null and void.~~ If Tenant desires to assign or sublease, Tenant shall provide written notice to Landlord describing the proposed transaction in detail and providing all documentation (including detailed financial information for the proposed assignee or subtenant) reasonably necessary to permit Landlord to evaluate the proposed transaction. Landlord shall notify Tenant within twenty (20) days after Landlord's receipt of such notice whether Landlord elects to exercise Landlord's recapture right ~~and, if not, whether Landlord consents to the requested assignment or sublease. If Landlord fails~~ to respond within such twenty (20) day period, Landlord will be deemed ~~not to have elected to recapture and~~ to have consented to the assignment or sublease. If Landlord does consent or is deemed to have consented to any sublease request and the assignee or subtenant

22

pays to Tenant an amount in excess of the Rent due under this Lease (after deducting Tenant's reasonable, actual expenses in obtaining such assignment or sublease, **including any sublease commissions, tenant improvement costs, rents or other concessions given by Tenant to subtenant or assignee** amortized over the then remainder of the Term), Tenant **and Landlord** shall **payshare** such excess ~~to Landlord~~ on a **50/50 basis** as and when the monthly payments are received by Tenant. Any subletting or assignment hereunder shall not release or discharge Tenant of or from any liability, whether past, present or future, under this Lease, and Tenant shall continue fully liable thereunder. Any subtenant or subtenants or assignee shall agree in a form reasonably satisfactory to Landlord to comply with and be bound by all of the terms, covenants, conditions, provisions and agreements of this Lease to the extent of the space sublet or assigned, and Tenant shall deliver to Landlord promptly after execution, an executed copy of each such sublease or assignment and an agreement of compliance by each such subtenant or assignee. Tenant agrees to pay to Landlord all reasonable out-of-pocket costs incurred by Landlord (including fees paid to consultants (as may be required) and attorneys) in connection with any request by Tenant for Landlord to consent to any assignment or subletting by Tenant.

**Notwithstanding anything to the contrary contained in this Section 46 or elsewhere in the Lease, Tenant, upon written notice to Landlord, shall have the right to assign or sublease all or a portion of the Premises without the consent of Landlord to (a) any entity resulting from a merger or consolidation, (b) any entity succeeding in the business and assets of Tenant, or (c) any subsidiary or affiliate of Tenant. Provided, however, that the subtenant's or assignee's financial strength is sufficient in Landlord's reasonable estimation to satisfy the Tenant's obligations under this Lease, Tenant shall remain liable with regard to any such assignment or sublet.**

## I. SALE OF BUILDING; LIMITATION OF LIABILITY.

47.    **Sale.** In the event the original Landlord hereunder, or any successor owner of the Building, shall sell or convey the Building, all liabilities and obligations on the part of the original Landlord, or such successor owner, under this Lease accruing thereafter shall terminate, and thereupon all such liabilities and obligations shall be binding upon the new owner. Tenant agrees to attorn to such new owner.

48.    **Limitation of Liability.** Landlord's obligations and liability with respect to this Lease shall be limited solely to Landlord's interest in the Building, as such interest is constituted from time to time, and neither Landlord nor any partner of Landlord, or any officer, director, shareholder, or partner or member of any partner or member of Landlord, shall have any individual or personal liability whatsoever with respect to this Lease.

## J. BROKERS/CONSTRUCTION/AUTHORITY.

49.    ~~**Broker Disclosure.** The Landlord's Broker identified in the Basic Lease Provisions, who is a real estate broker licensed in the State where the Building is located, has acted as agent for Landlord in this transaction and is to be paid a commission by Landlord.~~ The Tenant's Broker identified in the Basic Lease Provisions, who is a real estate broker licensed in the State where the Building is located, has acted as agent

for Tenant in this transaction and is to be paid a commission by Landlord pursuant to a separate agreement. Landlord represents that Landlord has dealt with no other broker other than the broker(s) identified herein. Landlord agrees that, if any other broker makes a claim for a commission based upon the actions of Landlord, Landlord shall indemnify, defend and hold Tenant harmless from any such claim. Tenant represents that Tenant has dealt with no broker other than the broker(s) identified herein. Tenant agrees that, if any other broker makes a claim for a commission based upon the actions of Tenant, Tenant shall indemnify, defend and hold Landlord harmless from any such claim. Tenant will **use commercially reasonable efforts to** cause Tenant's broker to execute a customary lien waiver, adequate under applicable law, to extinguish any lien claims such broker may have in connection with this Lease.

50.     **Definitions.** "Landlord," as used in this Lease, shall include the party named in the first paragraph hereof, its representatives, assigns and successors in title to the Premises. "Tenant" shall include the party named in the first paragraph hereof, its heirs and representatives, and, if this Lease shall be validly assigned or sublet, shall also include Tenant's assignees or subtenants, as to the Premises, or portion thereof, covered by such assignment or sublease. "Landlord" and "Tenant" include male and female, singular and plural, corporation, partnership, limited liability company (and the officers, members, partners, employees or agents of any such entities) or individual, as may fit the particular parties.

51.     **Construction of this Agreement.** No failure of Landlord to exercise any power given Landlord hereunder, or to insist upon strict compliance by Tenant of its obligations hereunder, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Landlord's right to demand exact compliance with the terms hereof. Time is of the essence of this Lease.

52.     **No Estate In Land.** This contract shall create the relationship of landlord and tenant between Landlord and Tenant; no estate shall pass out of Landlord; Tenant has only a right of use, not subject to levy or sale, and not assignable by Tenant except with Landlord's consent.

53.     **Paragraph Titles; Severability.** The paragraph titles used herein are not to be considered a substantive part of this Lease, but merely descriptive aids to identify the paragraph to which they refer. Use of the masculine gender includes the feminine and neuter, and vice versa, where necessary to impart contextual continuity. If any paragraph or provision herein is held invalid by a court of competent jurisdiction, all other paragraphs or severable provisions of this Lease shall not be affected thereby, but shall remain in full force and effect.

54.     **Cumulative Rights.** All rights, powers and privileges conferred hereunder upon the parties hereto shall be cumulative but not restrictive to those given by law.

55.     **Waiver of Jury Trial.** Landlord and Tenant shall and do hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, or any statutory remedy.

56. **Entire Agreement.** This Lease contains the entire agreement of the parties and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein shall be of any force or effect.

57. **Submission of Agreement.** Submission of this Lease to Tenant for signature does not constitute a reservation of space or an option to acquire a right of entry. This Lease is not binding or effective until execution by and delivery to both Landlord and Tenant.

58. **Authority.** If Tenant or Landlord executes this Lease as a corporation, limited partnership, limited liability company or any other type of entity, each of the persons executing this Lease on behalf of Tenant or Landlord, as the case may be, does hereby personally represent and warrant that Tenant or Landlord, as the case may be, is a duly organized and validly existing corporation, limited partnership, limited liability company or other type of entity, that Tenant or Landlord, as the case may be, is qualified to do business in the state where the Building is located, that Tenant or Landlord, as the case may be, has full right, power and authority to enter into this Lease, and that each person signing on behalf of Tenant or Landlord, as the case may be, is authorized to do so. In the event any such representation and warranty is false, all persons who execute this Lease shall be individually, jointly and severally, liable as Tenant or Landlord, as the case may be. Upon Landlord's or Tenant's request, as the case may be, the requested party shall provide to the requesting party evidence reasonably satisfactory to the requesting party confirming the foregoing representations and warranties.

59. ~~**Guaranty.** Tenant shall cause the Guarantor identified in the Basic Lease Provisions to execute a Guaranty of the obligations of Tenant under this Lease in the form of Exhibit "F" attached hereto and made a part hereof.~~ [Intentionally Omitted.]

60. **Financial Statements.** At any time during the term of this Lease, Tenant shall, upon ten **[10]** **(10)** **fifteen (15)** days prior written notice from Landlord, provide Landlord with a current financial statement and financial statements of the two (2) years prior to the current financial statement year and such other financial information as Landlord may reasonably request. Such financial statement shall be prepared in accordance with generally accepted accounting principles consistently applied and, if such is the normal practice of Tenant, shall be audited by an independent certified public accountant.

## K.  SPECIAL STATE/LOCAL LAW REQUIREMENTS/SPECIAL STIPULATIONS.

61. **State or Local Law Provisions.** The State/Local Law Provisions, if any, attached hereto as Exhibit "G" are modifications to the terms of this Lease and, if conflicting, such State/Local Law Provisions shall control in the event of any conflict with the other provisions of this Lease or any exhibits hereto.

62. **Special Stipulations.** The Special Stipulations, if any, attached hereto as Exhibit "H" are modifications to the terms of this Lease and, if conflicting, such Special Stipulations shall control in the event of any conflict with the other provisions of this Lease or any exhibits hereto.

30

**LANDLORD:**

**COLONIAL REALTY LIMITED PARTNERSHIP,** a Delaware limited partnership

By: Colonial Properties Trust
Its: General Partner

By: [signature]
Name: Roberta A. Jackson
Title: CMP

**TENANT:**

**NEW CENTURY MORTGAGE CORPORATION,** a California corporation

By: [signature]
Name: Elise Luckham
Title: Vice President
Corporate Services

Witnesses as to Tenant:

Print Name: John Tan

Print Name: Gregory Hoondonajane

Witnesses as to Landlord:

Print Name: Debra Sansauer

Print Name: Ann B. Coker

A-1

## EXHIBIT "A"

### LEGAL DESCRIPTION:

That part of Section 26, Township 21 South, Range 29 East, Orange County, Florida,

beginning at the Southwest corner of the North-east ¼ of the Northwest ¼ of said

Section 26, run N 00° 27' 56" W 669.22 feet along the West line of said Northeast ¼

of the Northwest ¼; thence run S 89° 59' 09" E 636.77 feet along the South line of the

North ½ of the Northeast ¼ of the Northwest ¼; thence run S 04° 13' 39" E 451.75

feet along the West Right of Way line of Lake Destiny Road; thence run S 85° 46' 21"

W 10.00 feet; thence run S 04° 13' 39" E 281.70 feet; thence run S85° 46' 21" W 5.00

feet; thence run 261.70 feet; thence run S 85° 46' 21" W 5.00 feet; thence run 261.86

feet to the South along a curve concave to the West having a radius of 1233.24 feet, a

central angle of 12° 09' 58", and a chord of 261.37 feet that bears S 01° 51' 20" W;

thence run N 89° 29' 06" W659.40 feet, thence run N 00° 27' 56" W 318.84 feet along

the West line of the Southeast ¼ of the Northwest ¼ of said Section 26 to the Point of

Beginning, containing 15.0192 acres more or less.

EXHIBIT "A-1"

PREMISES

[ATTACH FLOOR PLAN SHOWING PREMISES BY DIAGONAL LINES]

PREMISES

3RD FLOOR PLAN - SUITE 325

NOT TO SCALE

901 MAITLAND CENTER

901 N. LAKE DESTINY DR. - MAITLAND, FLORIDA

COLONIAL PROPERTIES TRUST
WWW.COLONIALPROP.COM
(407) 585-2200

PREPARED BY: ES

\74311\17244\# 623227 v 45

\\431\1\172244\4 6316794v5

# EXHIBIT "B"

## WORK LETTER

This Work Letter sets forth the agreement with respect to the construction of the Tenant Improvements.

### 1.    IMPROVEMENTS.

In accordance with and subject to the provisions of this Work Letter, Landlord shall, at Landlord's expense, construct and install the Tenant Improvements. The Tenant Improvements shall be completed in accordance with detailed architectural and engineering working drawings and material specifications (the "Plans and Specifications"), prepared by Landlord which shall be prepared based upon the Space Plan attached hereto as Schedule "I" and the Scope of Work attached hereto as Schedule "II", which Space Plan and Scope of Work have been approved by Landlord and Tenant. Unless otherwise agreed in writing or as set forth in the Space Plan or Scope of Work, Landlord shall use Building Grade construction methods and materials where appropriate or some other substantially comparable construction method or material deemed by Landlord (in its sole discretion) to be Building Grade. Unless set forth in the Space Plan or Scope of Work, Tenant shall bear any increase in cost or expense due to Tenant's specification of materials or methods which are not Building Grade. In the event there is a conflict between the Plans and Specifications and the Building Grade materials, the Plans and Specifications shall control. The following are deemed to be the Building Grade:

**Doors, Frames, and Hardware:**

- White Oak 5-ply natural stains finish.
- Frames- Hollow metal KD Steel craft or approved equal. Entry doors have ½" reveal in frame.
- Interior latchset- Sargent
- Interior lockset- Sargent SC-1 keyway
- Typical Butts- Hager 4-1/2" x 4-1/2" – AB700 x US26
- Closres- LCN 4011 or 4111 AL
- Wall mounted door stop.

**Acoustical Ceiling grid and tile:**

- Interior Grid – Armstrong Prelude XL – 15/16" Exposed tee ( 2' x 4' grid system )
- Ceiling tile- Armstrong Mina board flat 769

**Floorcoverings:**

**Carpet**

- Textured loop pattern
- 100% solution died Nylon 28oz, class 1
- Scotchguard soil resistant
- Color with premises to be selected by architect

\1\7244\\1\17244 # 631679 v15

### Base
- Johnsonite 4" vinyl base 1/8", class 1
- Color with in the premises to be selected by the architect.

### Resilient Flooring VCT
- Armstrong Standard Excelon- Imperial Textured
- 12"x12"
- Color with in the premises to be selected by the architect.

### HVAC:
- Diffusers and grills- Titus TDC-AA round neck supply diffuser and louvered returns all interiors
- Frame type 3 full face lay in, white.
- VAV boxes – (if required ) Carrier EMS controlled.

### Electrical:
- 2x4 lay in –Prismatic lens, electronic ballast, T-8 bulbs.
- Ivory duplex outlet/s / switches with ivory cover plates.

Tenant will select Building Grade finisher from list provided by Landlord within five (5) days following delivery of Lease to Landlord by Tenant.

2.    CONTRACTOR(S); PERMITS; PERFORMANCE BOND:

(a)    Landlord shall use its own contractor(s) and shall obtain all building permits necessary to complete all Tenant Improvements, with the exception of any item(s) (whether or not shown in the Plans and Specifications) which may be agreed in writing to be constructed or installed by Tenant or Tenant's contractor(s), Landlord shall bear the cost of all building permits.

(b)    In the event that the parties hereto have agreed that Tenant will undertake to provide certain limited portions of the Tenant Improvements, Tenant shall use licensed contractors, approved by Landlord, and shall be responsible for obtaining all necessary permits and approvals at Tenant's sole expense. Tenant shall advise its contractor(s), subcontractor(s) and material supplier(s) that no interest of Landlord in the Premises, the Building or the Park shall be subject to liens to secure payment of any amount due for work performed or materials installed in the Premises and that Landlord has recorded a notice to that effect in the public records of Orange County, Florida. Landlord shall permit Tenant and Tenant's contractor(s) to enter the Premises prior to the Commencement Date to accomplish any work as agreed, however Tenant agrees to insure that its contractor(s) does (do) not impede Landlord's contractor(s) in performance of their respective tasks. Landlord shall not be liable in any way for any injury, loss, damage or delay which may be caused by

1431\1\172441 # 631679 v 15

or arise from such entry by Tenant, its employees or contractor(s). Any damage to the Building caused by Tenant, its contractors, subcontractors or agents shall be repaired by Tenant, at its expense, and all such work shall be done to Landlord's reasonable satisfaction. If any area repaired by Tenant does not reasonably match the original surface, then the entire surface shall be redone at Tenant's expense. Tenant shall be responsible at its expense for the installation of its furniture and workstations, office equipment (including, without limitation, telephone systems, telecommunications systems, and cabling therefor). Except as set forth in the preceding sentence, should Tenant undertake a portion of the Tenant Improvements or employ any contractor(s) other than Landlord's contractor(s), Tenant shall pay Landlord a fee equal to ten percent (10%) of the cost of the work undertaken by Tenant or Tenant's contractor(s), such fee to compensate Landlord for coordination and supervision of the integration of the work to be done by Tenant or Tenant's contractor(s) into the overall job.

(c)   Landlord shall have the right to disapprove any of Tenant's contractors or subcontractors if Landlord has reason to believe that such contractors or subcontractors are: (i) not licensed as required by any governmental agency; (ii) not technically qualified or sufficiently staffed to do the work; (iii) not financially capable of undertaking the work; and/or (iv) incompatible with any of Landlord's contractors or subcontractors working on the Building (such incompatibility to include possible conflicts with any union contractors employed by Tenant). Landlord reserves the right to require Tenant's contractors, at Tenant's cost, to provide payment and performance bonds covering the value of the work performed by Tenant's contractors.

## 3.   CONSTRUCTION OF THE IMPROVEMENTS:

(a)   Landlord shall use its reasonable best efforts to substantially complete the Tenant Improvements in accordance with the Plans and Specifications prior to the Target Commencement Date. "Substantial Completion" shall mean that the Tenant Improvements have been sufficiently completed, except for minor punch list items that will not interfere with Tenant's ability to occupy the Premises for the use and purposes intended without unreasonable disturbance or interruption; provided that Landlord, its employees, agents and contractors, shall be allowed to enter upon the Premises at any reasonable time(s) following the Commencement Date as necessary to complete such minor punch list items, and such entry shall not constitute an actual or constructive eviction of Tenant, in whole or in part, nor shall it entitle Tenant to any abatement or diminution of rent or relieve Tenant from any obligation under the Lease.

1/4311/172+1/ # 631679 + 15

(b)     Tenant shall be responsible for any delay in Substantial Completion from any of the following causes:

(i)     Tenant's failure to install any of its equipment, furniture or workstations or other Tenant installations when specified by Landlord in its Construction Schedule, if such installation is required in order to obtain a Certificate of Occupancy; or

(ii)    Tenant's specification of special materials or finishes, or special installations other than as may be specified by Landlord as Building Grade, or as identified in Schedule "II" hereto, which special items cannot be delivered or completed within Landlord's construction schedule (subject to Landlord's obligation to give Tenant notice of same as hereinafter provided); or

(iii)   any change in the Plans and Specifications approved by Tenant in writing even though Landlord may approve such change; or

(iv)    the performance of or failure to perform any special work or installation by any person or firm employed by Tenant to do any work on the Premises; or

(v)     any work stoppage or delay due to Tenant's failure to use union contractors or labor as required by Landlord; or

(vi)    Tenant's change of the previously selected finishes; or

(vii)   any other delay in Substantial Completion directly attributable to the acts or omissions of Tenant, its employees, agents, or contractor(s).

(c)     Landlord shall permit Tenant and Tenant's agents, free of Base Rent, to enter the Premises two (2) weeks prior to the Commencement Date of the Term of the Lease in order that Tenant may do such other work as may be required by Tenant to make the Premises ready for Tenant's use and occupancy and installation of Tenant's furniture, fixtures, equipment, files and business records. Such permission is conditioned upon Tenant and its agents, contractors, employees and invitees working in harmony and not interfering with Landlord and its agents, contractors and employees in doing the Work and the Additional Work and for other tenants and occupants of the Building. If at any time such entry shall cause or threaten to cause disharmony or interference, Landlord shall have the right to withdraw such permission upon 24 hours notice to Tenant. Tenant agrees that any such entry into and occupation of the Premises shall be deemed to be under all of the terms, covenants, conditions and provisions of the Lease except as to the covenant to pay the rent, and further agrees

\74311\1724\\ # 6316794 v5

B-5

Landlord shall not be liable in any way for any injury, loss or damage which may occur to any of Tenant's work and installations made in the Premises or to properties placed therein prior to the Commencement Date of the term of the Lease, the same being at Tenant's sole risk.

SCHEDULE 1

(SPACE PLAN)



**SUITE 325 SPACE PLAN**

SCALE: 1/8" = 1'-0"

**901 MAITLAND CENTER**

901 N. LAKE DESTINY DR. - MAITLAND, FLORIDA

COLONIAL PROPERTIES TRUST
WWW.COLONIALPROP.COM
(407) 585-2200

## SCHEDULE II

### (SCOPE OF WORK)

- **DATA/TELECOMMUNICATIONS CABLING**
  - Remove all existing data cabling.
  - New phone and data cabling to be installed by tenant.

- **EQUIPMENT ROOM**
  - Approximately 5' X 10'.
  - ¾" X 4' x 8' painted plywood mounted vertically, 3"AFF.
  - One dedicated circuit with quad electrical outlets
  - Refer to "New Century Backboard" Spec.pdf".

- **SECURITY**
  - Rough-in & power for:
  - Access panel adjacent to suite entry door.

- **FURNITURE**
  - One duplex electrical outlet per desk and equipment station (for desks away from walls or columns, provide a monument in the floor).
  - One standard data jack box with conduit/monument and pull string for data cabling at each electrical supply location.

- **PRIVATE OFFICE**
  - Approximately 10' X 13' – should have two interior windows on 90 degree walls, minimum glass of 4'H X 5'W - 30" AFF with blinds to match the exterior windows
  - One 20A circuit for every two offices.
  - Electrical duplexes on opposite walls.
  - Data outlet box provided next to each electrical outlet location with conduit in the wall to ceiling height and a pull string.

- **OFFICE EQUIPMENT**
  - Dedicated 20A circuit with a data outlet at each copier location.

- **GENERAL LIGHTING**
  - Large cell lens; 50 foot-candles at desk height.

- **GENERAL FINISHES**
  - Paint : Frazee #CW066 "Picket White" with egg shell finish, low glow or comparable.
  - Carpet: Designweave; Tempest Esquire (Z6354-00456 Bluepoint) or comparable.
  - Base: Burke; Sky Grey 663P or comparable.
  - VCT: Armstrong – Stonetex #52126 color, Gravel Blue, with 2 ½" vinyl cove base by Burke 663P Sterling.

- **CLOSING ROOM**
  - Approximately 9.5' X 10' – close proximity to suite entrance
  - Duplex outlet and cabling coordinated with table configuration and location.
  - Duplex on every wall. Data outlet box provided next to one electrical outlet location with conduit in the wall to ceiling height and a pull string.
  - Door sidelight 30" by door height
- **BREAKROOM/STOREROOM**
  - Approximately 10' X 25'
  - Millwork cabinets (upper & lower); D52-6 Britney Blue (Wilsonart); 8' minimum length
  - Sink with instant-hot unit
  - Electrical outlets for:
    - Full-size refrigerator
    - Microwave oven
    - Coffee machine
    - Water dispenser
- **RECEPTION**
  - One duplex electrical outlet and one data outlet
- **CONSTRUCTION DRAWINGS**
  - Single .dwg file with a layout tab for each construction as-built set sheet. Xref's are bound. Proxy items converted to standard AutoCAD objects.
  - .pdf with complete set of dimensions for all walls, including locations of electrical outlets and plumbing

# EXHIBIT "C"

## SUBSTANTIAL COMPLETION/ACCEPTANCE LETTER

Date _____

Re:   Lease dated as of   8/12  ,  03  , by and between Landlord, and _____ as Tenant, for   2759   rentable square feet on the   380   floor of the Building located at _____ .

Dear _____ :

In accordance with the terms and conditions of the above referenced Lease, Tenant accepts possession of the Premises and agrees:

1.   The Commencement Date of the Term of the Lease is   10/1/03  ;

2.   The Termination Date of the Term of the Lease is   11/30/08  .

Please acknowledge your acceptance of possession and agreement to the terms set forth above by signing all 3 counterparts of this Commencement Letter in the space provided and returning 2 fully executed counterparts to my attention.

Sincerely,                                               Agreed and Accepted:

Property Manager                                         Tenant: _____

                                                         By: _____
                                                         Name: _____
                                                         Title: _____
                                                         Address: _____
                                                         _____
                                                         _____

## EXHIBIT "D"

## RULES AND REGULATIONS

1.      The sidewalks, entry passages, corridors, halls, elevators and stairways shall not be obstructed by Tenant or used for any purpose other than that of ingress and egress. The floors, skylights and windows that reflect or admit light into any place in the Building shall not be covered or obstructed by Tenant.–The toilets, drains and other water apparatus shall not be used for any other purpose than those for which they were constructed and no rubbish or other obstructing substances shall be thrown therein.

2.      No advertisement, signs, pictures, placards or other notice shall be inscribed, painted or affixed on any part of the outside or inside of the Building, except upon the doors, and of such order, size and style, and at such places, as shall be approved and designated by Landlord. Interior signs on doors will be ordered for Tenant by Landlord, the cost thereof to be charged to and paid for by Tenant.

3.      Tenant shall not do or permit to be done in the Premises, or bring or keep anything therein, which shall in any way increase the rate of insurance carried by Landlord on the Building, or on the Property, or obstruct or interfere with the rights of other tenants or in any way injure or annoy them, or violate any applicable laws, codes or regulations. Tenant, its agents, employees or invitees shall maintain order in the Premises and the Building, shall not make or permit any improper noise in the Premises or the Building or interfere in any way with other tenants, or those having business with them. Nothing shall be thrown by Tenant, its agents, employees or servants, out of the windows or doors, or down the passages or skylights of the Building. No rooms shall be occupied or used as sleeping apartments at any time. No part of the Building shall be used of in any way appropriated for gambling or other unlawful practices, and no intoxicating liquor or liquors shall be sold in the Building.

4.      Tenant shall not employ any persons other than the janitors of Landlord (who will be provided with pass-keys into the offices) for the purpose of cleaning or taking charge of the Premises, except as may be specifically provided otherwise in the Lease.

5.      No animals (other than seeing-eye dogs), birds, bicycles or other vehicles shall be allowed in the offices, halls, corridors, elevators or elsewhere in the Building, without the approval of Landlord.

6.      No painting shall be done, nor shall any alterations be made to any part of the Building or the Premises by putting up or changing any partitions, doors or windows, nor shall there be any nailing, boring or screwing into the woodwork or plastering, nor shall any connection be made in the electric wires or gas or electric fixtures, without the consent in writing on each occasion of Landlord. All glass, locks and trimmings in or upon the doors and windows of the Building shall be kept whole and, when any part thereof shall be broken by Tenant or Tenant's agent, the same shall be immediately replaced or repaired by Tenant (subject to Tenant's compliance with Section 23 of the Lease) and put in order under the direction and to the satisfaction of Landlord, or its agents, and shall be kept whole and in good repair. Tenant shall

D-1

not injure, overload, or deface the Building, the woodwork or the walls of the Premises, nor carry on upon the Premises any noxious, noisy or offensive business.

7.      Two (2) keys will be furnished Tenant without charge. No additional locks or latches shall be put upon any door and no locks shall be changed without the written consent of Landlord. Tenant, at the termination of their Lease, shall return to Landlord all keys to doors in the Building. Tenant shall not alter locks or install new locks without approval from Landlord.

8.      Landlord in all cases retains the power to prescribe the weight and position of iron safes or other heavy articles. Tenant shall make arrangements with the superintendent of the Building when the elevator is required for the purpose of the carrying of any kind of freight.

9.      The use of burning fluid, camphene, benzine, kerosene or anything except gas or electricity, for lighting the Premises, is prohibited. No offensive gases or liquids will be permitted.

10.      If Tenant desires blinds, coverings or drapes over the windows, they must be of such shape, color and material as may be prescribed by Landlord, and shall be erected only with Landlord's consent and at the expense of Tenant. No awnings shall be placed on the Building. Window covering shall be closed when the effect of sunlight would impose unnecessary loads on the air conditioning system.

11.      All wiring and cabling work shall be done only by contractors approved in advance by Landlord and Landlord shall have the right to have all such work supervised by Building engineering/maintenance personnel. No antenna or cabling shall be installed on the roof or exterior walls of the Building.

12.      At Landlord's discretion, Landlord may hire security personnel for the Building, and every person entering or leaving the Building may be questioned by such personnel as to the visitor's business in the Building and shall sign his or her name on a form provided by the Building for so registering such persons. Landlord shall have no liability with respect to breaches of the Building security, if any.

13.      Landlord shall have the right, exercisable without notice and without liability to Tenant, to change the name or street address of the Building or the room or suite number of the Premises.

14.      The freight elevator shall be available for use by all tenants in the Building subject to such reasonable scheduling as Landlord in its reasonable discretion shall deem appropriate. The persons employed to move such equipment in or out of the Building must be acceptable to Landlord and any costs incurred shall be reimbursed by Tenant.

15.      Canvassing, peddling, soliciting and distribution of handbills or any other written materials in the Building are prohibited and each tenant shall cooperate to prevent the same.

16.     Each tenant shall ensure that all doors to its premises are locked and all water faucets or apparatus and office equipment are shut off before the tenant or its employees leave such premises at night.  On multiple tenancy floors, all tenants shall keep the doors to the Building corridors closed at all times except for ingress and egress.

17.     The toilets, urinals, wash bowls and other restroom facilities shall not be used for any purpose other than for which they were constructed, no foreign substance of any kind whatsoever may be thrown therein and the expense of any breakage, stoppage or damage resulting from a violation of this rule shall be borne by the tenant who, or whose employees or invitees, shall have caused it.

18.     Each tenant shall store its refuse within its Premises.  No material shall be placed in the refuse boxes or receptacles if such material is of such a nature that it may not be disposed of in the ordinary and customary manner of removal without being in violation of any law or ordinance governing such disposal.

19.     Landlord reserves the right to make such other and reasonable rules and regulations as in its judgment may from time to time be needed for the safety, care and cleanliness of the Building and for the preservation of good order therein.

\7431\1\17244\1 # 63167v \ 45

# EXHIBIT "E"

## HVAC SPECIFICATIONS

Heating, ventilating and air conditioning equipment in the Building shall be capable of maintaining the following interior conditions when the following maximum outside conditions exist, subject to the conditions set forth in Article 15 of this Lease:

| Inside Conditions | Outside Conditions |
| --- | --- |
| 78° F (dry bulb) | up to 95° F (dry bulb) |
| | up to 75° F (wet bulb) |
| 72° F | down to -2° F |
| 65° F | down to -10° F |
| Occupant Load | 1 person per 100 sq. ft. (usable) |
| Equipment & Lighting Load | 3.0 watts per sq. ft. (usable) |

\743\11\7244\ # 631679 v 5

E-1

EXHIBIT "E"

INTENTIONALLY OMITTED.

V4811172441#631679.5

G-1

EXHIBIT "G"

STATE/LOCAL LAW PROVISIONS

1.      Sales Tax on Rents.  Notwithstanding anything in this Lease to the contrary, Tenant shall pay, also as Additional Rent, any sales tax or excise tax on rents, gross receipts or other tax (however described [excluding income taxes]), which is levied or assessed by the United States of America or the State of Florida or any political subdivision thereof, against Landlord in respect to the Base Rent, Additional Rent, or other charges reserved under this Lease or as a result of Landlord's receipt of such rents or other charges accruing under this Lease.

2.      Radon Gas.  The following disclosure is required by Florida law:

"Radon is a naturally occurring radioactive gas that, when it has accumulated in a structure in sufficient quantities, may present health risks to persons who are exposed to it.  Levels of radon that exceed federal and state guidelines have been found in buildings in the State of Florida.  Additional information regarding radon and radon testing may be obtainable from the county public health unit."

Landlord makes no representation to Tenant concerning the presence or absence of radon gas in the Premises or the Building at any time or in any quantity.  By executing this Lease, Tenant expressly releases Landlord from any loss, claim, liability, or damage now or hereafter arising from or relating to the presence at any time of such substances in the Premises or the Building.

# EXHIBIT "H"

## SPECIAL STIPULATIONS

**A.  Renewal.**

(a)    Landlord hereby grants Tenant the option to renew ("Renewal Option") the term of this Lease for one additional term of sixty (60) months (the "Renewal Term"), commencing as of the date immediately following the expiration of the Lease Term, such option to be subject to the covenants and conditions hereinafter set forth in this Paragraph A of Exhibit "H."

(b)    Tenant shall give Landlord written notice (the "Renewal Notice") of Tenant's election to exercise its Renewal Option as to the Renewal Term not later than one hundred eighty (180) days prior to the expiration of the term of this Lease; provided that Tenant's failure to give the Renewal Notice by said date, whether due to Tenant's oversight or failure to cure any existing defaults or otherwise, shall render this Renewal Option null and void. Within twenty (20) days of receipt of such notice, Landlord shall advise Tenant of the new proposed Base Rental for such Renewal Term, which proposed Base Rental shall be calculated in accordance with paragraph g(ii) below. Tenant shall have fifteen (15) days from the date of receipt of Landlord's determination of the Base Rental for such Renewal Term to elect to (i) extend the term of the Lease, (ii) not to renew the Lease for the applicable Renewal Term, or (iii) proceed to arbitration as provided herein. The failure of Tenant to respond within the fifteen (15) day period shall be deemed the election of Tenant not to extend the term of the Lease.

(c)    In the event Tenant timely selects arbitration, Tenant shall be deemed to have elected to renew this Lease for the applicable Renewal Term and the only issue to be resolved in arbitration shall be the new Base Rental for the Premises for the Renewal Term. The method of arbitration used shall be the "baseball" arbitration. Within 30 days after it has been determined that the new Base Rental shall be decided by arbitration, the parties shall agree upon a deciding arbiter, who shall be an MAI real estate appraiser with at least five (5) years of full time commercial appraisal experience in the area in which the Premises are located. In the event the parties cannot agree upon the arbiter, within 15 days thereafter each party, at its cost and by giving notice to the other party, shall appoint an MAI real estate appraiser with at least five (5) years of full time commercial appraisal experience in the area in which the Premises are located to act as arbiter. If a party does not appoint an arbiter so qualified within the 15-day period, the single arbiter appointed shall be the arbiter, and the arbiter thereafter shall select either Landlord's Base Rental or Tenant's Base Rental for the Renewal Term. If the two (2) arbiters are appointed by the parties as stated in this section, then they shall select a third MAI appraiser meeting the qualifications stated in the paragraph within ten (10) business days, which third arbiter shall be the deciding arbiter for this process. If they are unable to agree on the third arbiter, either of the parties to this Lease, by giving ten (10) business days notice to the other party, may apply to

1743117254\# 63169 \ 5

H-2

the Chief Judge of the Orange County Circuit Court, for the selection of a third arbiter who meets the qualifications stated in this paragraph.  Each of the parties shall bear one-half (1/2) of the cost of appointing the third arbiter and of paying the third arbiter's fee.  The third arbiter, however selected, shall be a person who has not previously acted in any capacity for either party within five (5) years prior to the date on which the third arbiter is to be selected.  Within five (5) business days after selection of the deciding arbiter, Landlord and Tenant shall deliver to each other and to the deciding arbiter its final, best determination of the new market rate for the Premises for the applicable Renewal Term ("Landlord's Base Rental" and "Tenant's Base Rental," respectively).

(p)     Within thirty (30) days after the selection of the deciding arbiter, the deciding arbiter shall determine the Base Rental for the Renewal Term by reviewing the proposed Base Rentals, any background materials submitted by either party, and its independent review of the market, and selecting either Landlord's Base Rental or Tenant's Base Rental for the Renewal Term.  Once the deciding arbiter has selected either Landlord's Base Rental or Tenant's Base Rental for the Renewal Term, it shall immediately notify the parties of its determination.  The arbiter's decision shall be binding on Landlord and Tenant.

(e)     Tenant shall not be permitted to exercise this Renewal Option at any time during which Tenant is in default under this Lease, following the expiration of applicable notice and grace periods (if any).  In the event a default under the Lease occurs following exercise of this Renewal Option but before commencement of the Renewal Term, following the expiration of applicable notice and grace periods, the Renewal Term may be immediately canceled by Landlord or Landlord may elect to waive such default or Landlord may consider the Renewal Term to have been part of the Lease Term and immediately declare the Lease in default and Tenant shall forthwith deliver possession of the Premises to Landlord as of the expiration or earlier termination of the term of this Lease.

(f)     Tenant shall be deemed to have accepted the Premises in "as-is" condition as of the commencement of each Renewal Term, subject to any other repair and maintenance obligations of Landlord under this Lease, it being understood and agreed that Landlord shall have no additional obligation to renovate or remodel the Premises or any portion of the Building as a result of Tenant's renewal of this Lease.

(g)     The covenants and conditions of this Lease in force during the original Lease Term, as the same may be modified from time to time, shall continue to be in effect during the Renewal Term, except as follows:

(i)     The "Commencement Date" for the purposes of this Lease shall be the first day of the Renewal Term.

(ii)    The "Base Rental" for the Renewal Term shall be an amount

1/2431/17244 #631679 v5

H-3

equal to the then prevailing market rental rate for office space comparable to the Premises. The prevailing market rental rate determination shall be based on new leases for premises comparable to the Premises herein, as executed within said twelve month period by owners of comparable office building properties located in Maitland, Florida, giving weight to office buildings within the Park (including the Building) that are comparable to the Building.

(iii) The "Base Year" for Taxes, Operating Expenses, and Electricity for the Renewal Term shall be the calendar year during which the Renewal Term commences.

(iv) Tenant shall accept the Premises in as-is condition as of the last day of the original Lease Term.

(v) Following expiration of the Renewal Term as provided herein, Tenant shall have no further right to renew or extend this Lease.

(h) Tenant's Renewal Option shall not be transferable by Tenant, except in conjunction with a permissible assignment of Tenant's interest in this Lease in accordance with the applicable provisions hereof.

B. Termination Option. Provided Tenant is not in default under this Lease following the expiration of applicable cure periods, Tenant shall have the one-time right to terminate this Lease effective as of the last day of the 38th full calendar month of the Lease Term (the "Termination Date") only if all of the following conditions are satisfied:

(a) Tenant shall deliver written notice to Landlord at least six (6) months prior to the Termination Date (time being of the essence).

EXHIBIT "F"

(b) No default following the expiration of applicable cure periods shall have occurred and then continue under this Lease.

TURNKEY IMPROVEMENT

(c) Tenant shall pay Landlord a termination fee (within ten (10) days following receipt of a statement from Landlord) in an amount equal to the sum of (i) the unamortized cost of the Tenant Improvements to the Premises, including but not limited to, all costs of design, construction and supervision, and (ii) unamortized brokerage commissions with respect to the Lease and (iii) two (2) months Base Rental at the rental rate in effect as of the Termination Date.

(d) In addition to the payment required in paragraph (c) above, Tenant (i) shall pay all Rent and Additional Rent due under this Lease until the Termination Date and (ii) shall be responsible for all other obligations accruing under this Lease (other than Rent and Additional Rent) that accrue and become due before, on or after the Termination Date.

C.    *Security.*  Landlord shall provide commercially reasonable security for the Building, at a level comparable to that provided by the landlords of similar buildings in the area of the Building.  Without limiting the foregoing, Landlord shall install access control systems to the main entrances of the Building, and Landlord shall provide Tenant on or before the Commencement Date, with 11 key cards for the access control system(s), the cost of which shall be paid by Landlord.  Thereafter, Tenant may obtain from Landlord as many key cards as Tenant requires, at Tenant's expense, which shall equal Landlord's cost.  Tenant shall have the right, but not the obligation, at its sole cost and expense to install a security system securing its Premises, subject to and in accordance with the terms and conditions of this Lease.  Tenant shall be solely responsible for the repair and maintenance of any such security system securing the Premises.

## EXHIBIT "C"

### TENANT ACCEPTANCE LETTER

This declaration is hereby attached to and made part of the Office Lease Agreement dated August 12, 2003 entered into by and between Colonial Realty Limited Partnership as Landlord and New Century Mortgage, as Tenant.

The undersigned, as Tenant, hereby confirms as of the 12 day of February, ~~2003~~ *2004*, the following:

1. Tenant has accepted possession of the Premises on October 1, 2003 and is currently able to occupy the same.

2. The Commencement Date as defined in the Lease is October 1, 2003.

3. The obligation to commence the payment of rent commenced or will commence on October 1, 2003.

4. All alterations and improvements required to be performed by Landlord pursuant to the terms of the Lease to prepare the entire Premises for Tenant's initial occupancy have been satisfactorily completed.

5. As of the date hereof, Landlord has fulfilled all of its obligations under the Lease.

6. The Lease is in full force and effect and has not been modified, altered, or amended, except pursuant to any instruments described above, if any.

7. There are no offsets or credits against Base Rent or Additional Rent, nor has any Base Rent or Additional Rent been prepaid except as provided pursuant to the terms of the Lease.

8. Tenant has no notice of any prior assignment, hypothecation, or pledge of the Lease or any rents due under the Lease.

TENANT:

New Century Mortgage

By: _Jonathan Ober_

As: _David Manager_