ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

FILED
2008 MAR 24 AM 10: 09
US BANKRUPTCY CLERK
DISTRICT OF DELAWARE

In re:

NEW CENTURY TRS HOLDINGS, INC.,
et al.

Debtors.

Case No. 07-10416 (KJC)

Jointly Administered

Objection Deadline: March 18, 2008 at 4:00 pm.
Hearing Date: March 25, 2008 at 1:30 p.m.

**AMENDED OBJECTION TO DEBTORS' FOURTEENTH OMNIBUS OBJECTIONS PURSUANT TO 11 U.S.C. §§ 502, 503, 506, AND 507, BANKRUPTCY RULES 3007 AND 9014; AND LOCAL RULE 3007-1 TO CERTAIN (A) BOOKS AND RECORDS CLAIMS; (B) EQUITY CLAIMS; (C) MULTIPLE-DEBTOR DUPLICATE CLAIMS; AND (D) REDUCED AND/OR RECLASSIFIED CLAIMS**

H. SINCLAIR KERR, JR.
KEITH K. FONG
HOLLY HOGAN
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105
(415) 371-8500 Telephone
(415) 371-0500 Facsimile

*Attorneys for LISA F. CLARK*

## OBJECTION TO EXPUNGEMENT OF CLAIM

Lisa Clark was the victim of a vast fraudulent refinancing scheme perpetrated by Debtor New Century Mortgage Corporation, among others. At least three of their co-conspirators were criminally charged and convicted in the California Superior Court for the County of Alameda. *See People v. Kaseem Mohammadi*, Alameda County Criminal Case No. 386756A, B, C). Ms. Clark filed a civil complaint in the Alameda County Superior Court (Case No. RG06280373) against various parties involved in the fraudulent scheme, including New Century Mortgage ("New Century"), without whose knowing and express involvement the scheme would not have succeeded. **(Exhibit A** (copy of complaint).

Astonishingly, Debtor New Century Mortgage Corporation's seeks to expunge Ms. Clark's claim. For the reasons that follow, Ms. Clark submits this amended objection to New Century's proposed expungement of her claim. (Claim No. 2388, Case No. 07-10419).[1]

## I.     FACTUAL BACKGROUND

Ms. Clark is the owner of a townhouse located in San Francisco, California ("home") that she inherited from her mother when she passed away in 1993. Ms. Clark has lived in her home since she was seven years old. In or about the Fall of 2004, Ms. Clark met with representatives of an entity known as Golden Key, including Kaseem Mohammadi, to inquire about refinancing the mortgage on her home. During meetings at Golden Key's offices, Ms. Clark was informed that due to her low credit score, she would not be able to refinance her home. However, Mr. Mohammadi informed Ms. Clark that Golden Key had developed a loan program that would

---

[1] A number of homeowners fell victim to the refinancing scheme involving New Century, and a number of those cases are before this Court. Clark thus joins in the objections filed by other victims of this fraudulent scheme, including but not limited to William Feeney (Claim No. 1220, Case No. 07-10419).

1

improve her credit rating to a sufficient level such that at the end of twelve months she would qualify for a low interest loan in her own name.

Mr. Mohammadi stated that as part of the program, Golden Key would provide a third party "investor" who would be added to the title to her home and would obtain a loan in his or her name on favorable loan terms. According to Mr. Mohammadi, he would withdraw only enough equity to cover her mortgage payments, property taxes, and other expenses, such as her homeowners' dues, for one year, along with unspecified fees to cover the cost of the transaction. Mr. Mohammadi promised Ms. Clark that at the end of the one-year program period, she would be pre-qualified to assume a new loan with a low annual interest rate in her own name. In reliance on these and other representations, Ms. Clark decided to participate in Golden Key's refinancing program.

In reality, the "program" was a sham. The "program" was actually a fraudulent scheme perpetrated by Mr. Mohammadi, Golden Key, and insiders at Alliance Title Company and Debtor New Century Mortgage Corporation, which acted as a lender, among others to induce Ms. Clark to refinance her mortgage so that they could steal the equity from her home. With the assistance of Debtor New Century Mortgage Corporation, Mr. Mohammadi and Golden Key were able to refinance Ms. Clark's property, significantly increase her indebtedness, and funnel the majority of her equity proceeds directly to Mr. Mohammadi.

## II. LIABILITY

### A. MS. CLARK WAS A VICTIM OF FRAUD

Ms. Clark's Complaint against Debtor New Century Mortgage Corporation brings causes of action for fraud, fraud by concealment, breach of fiduciary duty, negligent misrepresentation, negligence, violation of California's Consumer Legal Remedies Act (California Civil Code section 1770), violation of California's Unfair Business Practices Law (California Business and

Professions Code section 17200 et seq.), conversion, and declaratory relief regarding the deeds of trust for her home.

Under California law, "The elements of fraud ... are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations.]" Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996); Civ. Code § 1572; see also Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 96 (2001) (stating elements for fraudulent concealment). Available damages include out of pocket and/or tort damages suffered by the victim, damages for emotional distress, prejudgment interest, and punitive damages. See Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1240 (1995).

Ms. Clark easily can demonstrate all of the requisite elements for fraud. The record will confirm that Mr. Mohammadi falsely represented that he would secure a low interest loan in Ms. Clark's own name within a year, that he would ensure that all taxes and expenses associated with her home would be paid, that his program was legal and otherwise posed no risk to her. At the same time, he concealed that the "interim" loan obtained by the investor would be an unfavorable, high interest loan, that he was planning on extracting most of the equity out of her home, and that his program would place her in a significantly worse financial position. Mr. Mohammadi knew that his representations were false, that he was omitting material facts, and that his true motivation was to induce Ms. Clark to agree to his sham refinancing program so that he could drain the equity out of her home and keep the proceeds for himself and his cohorts. But for Mr. Mohammadi's representations and concealment of material facts, Ms. Clark never would have agreed to participate in his "program."

### B. DEBTOR NEW CENTURY MORTGAGE IS LIABLE FOR ITS ROLE IN THE FRAUDULENT SCHEME

Debtor New Century is independently liable to Ms. Clark. The fraudulent scheme would not have been possible without the assistance of "insiders" at New Century. The involvement of New Century is demonstrated by the unreasonableness of Ms. Clark's loan. Ms. Clark's HUD Settlement Statement indicates that a $3,280.00 Yield Spread Premium (YSP) was paid Golden Key Financial. A YSP violates the prohibition against referral fees contained in Section 8 of the Real Estate Settlement Procedures Act (RESPA), 12 U.S. C. § 2607, unless it satisfies both parts of a two prong test. Specifically, a YSP must (1) constitute compensation for services actually performed, or goods or facilities actually furnished; and (2) be reasonably related to the value of the goods, facilities, or services provided. Geraci v. Homestreet Bank, 347 F.3d 749, 751 (9th Cir. 2003).

Even assuming *arguendo* that the YSP in Ms. Clark's case reflects a payment to Golden Key Financial in exchange for actual goods, facilities, or services provided, the YSP is patently unreasonable. The reasonableness of a YSP is measured by examining the total compensation to a broker. Culpepper v. Irwin Mortg. Corp, 491 F.3d 1260, 1266 (11th Cir. 2007). Here, the exorbitant fees paid to Golden Key and Kaseem Mohammandi ($14,620 to Golden Key Financial and $91,054.51 to Mr. Mohammadi as shown in **Exhibit B**) clearly makes the YSP unreasonable. New Century's funding of such a patently unreasonable loan in contravention of RESPA illustrates that the fraudulent scheme that victimized Ms. Clark would not have occurred but for a New Century "insider." Indeed, it defies both logic and reason for New Century to have funded a several hundred thousand dollar mortgage without questioning the fact that the bulk of the refinancing was being paid to an individual that was *not* a party to the real estate transaction.

Debtor New Century's collusion and fraud with Mr. Mohammadi and Golden Key renders it liable for significant compensatory and punitive damages. It is directly responsible for Ms. Clark's loss, irrespective of whether it actually benefited from the fraud. Rutherford v. Rideout Bank, 11 Cal. 2d 479, 483-84 (1938) (where an employee has committed a fraud within the scope of employment, the corporate employer will be held liable even if the employee committed the fraud entirely for his or her own purposes.); Ghiglione v. American Trust Co., 49 Cal. App. 2d 633, 637-638 (1942) (bank held liable for customer's loss when bank manager represented to customer that customer funds would be used to make loans, but instead diverted funds for his own use.) In addition, it is liable as a co-conspirator of Mr. Mohammadi. E.g., Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-511 (1994) (discussing civil conspiracy).

## III. DAMAGES

Ms. Clark is entitled to *substantially more* damages than simply her out-of-pocket losses. See Alliance Mortgage Co., 10 Cal. 4th at 1240. As a result of Debtor New Century Mortgage Corporation's actions, Ms. Clark has sustained a past economic loss *of at least $125,000*, the amount of equity in her home illegally taken in the refinancing. In addition, she will sustain future economic losses arising from the transaction costs involved in replacing the mortgage. This, of course, assumes that Ms. Clark will qualify for a new mortgage.

As a direct result of Debtor New Century Mortgage Corporation's actions, Ms. Clark now is in a far worse financial situation than before, both in terms of cash flow as well as the debt-to-equity ratio for her home. The current mortgage crisis and attendant tightening of lender requirements and the ever increasing mortgage interest rates, coupled with the likely decrease in Ms. Clark's home value, all significantly decrease Ms. Clark's ability to qualify for a new loan.

The prospect of losing her home – the home in which she was raised – continues to devastate Ms. Clark. In light of the foregoing, Debtor New Century is liable to Ms. Clark in the amount of $500,000. This amount is extraordinarily reasonable in light of the economic loss, the emotional distress suffered by Ms. Clark, and the punitive damage exposure.

Ms. Clark's counsel[2] spoke with counsel for Debtor New Century via telephone and corresponded with them regarding Ms. Clark's claim. However, New Century merely was paying lip service to its obligation to discuss Ms. Clark's claim and it was readily apparent that New Century was intent on denying such claim, irrespective of whatever information and analysis her counsel provided. Indeed, Debtor New Century completely ignored Ms. Clark's follow up attempts to discuss her claim.

## IV. CONCLUSION

For the foregoing reasons, Lisa Clark opposes the expungement of her claim against Debtor New Century Mortgage Corporation.

DATED: March 20, 2008                KERR & WAGSTAFFE LLP

                                     By _____
                                     HOLLY HOGAN
                                     *Attorneys for Creditor*
                                     *LISA F. CLARK*

32825_2.doc

---

[2] Ms. Clark's counsel, identified on the caption page, have the authority to reconcile, settle or otherwise resolve the claim.

6