# EXHIBIT A

# Grant Thornton 🐦

**Accountants and Business Advisors**

January 18, 2008

Mr. Jamie Lisac
Chief Financial Officer
New Century Financial Corporation
3121 Michelson, 5th Floor
Irvine, CA 92612

Dear Jamie:

Grant Thornton LLP ("Grant Thornton," "Firm," or "we") is pleased to provide tax services (the "Services") to New Century Financial Corporation and Subsidiaries (the "Company," "Client," or "you"). The purpose of this letter, Attachment A, and any related Statement(s) of Work (collectively, the "Agreement"), as defined below, is to confirm the scope and terms of our engagement.

## Providing Our Services

The Services we provide to you under this Agreement typically will be set forth in distinct Statements of Work signed by your authorized representatives and ours, specifying matters including scope, deliverables, timing, fees and payment terms. From time to time we may perform in the course of our relationship Services without a Statement of Work. This Agreement will cover all Services rendered whether or not the parties execute a Statement of Work. Such Services will be billed at our hourly rates.

The Attachment A version dated 12/21/07 is an important part of this Agreement. You should read it carefully.

If the Company fails to meet any payment obligation under this Agreement, Grant Thornton may immediately suspend performance of the Services. If we elect to suspend our performance due to nonpayment, the Services will not be resumed until your account is paid as agreed, including the payment of any retainer that we may require for continuing services.

## Our Professional Responsibilities

Our Services will be performed in accordance with the American Institute of Certified Public Accountants' Statements on Standards for Tax Services and other applicable professional standards, and applicable federal and state law.

Generally, our Services will be based upon information furnished by the Company, and Grant Thornton will not evaluate or have any responsibility to verify independently the accuracy, completeness or sufficiency of any such information. However circumstances may arise where we, in our professional judgment, determine that additional fact gathering and due diligence on our part is required.

18400 Von Karman Avenue
Suite 900
Irvine, CA 92612-0525
**T** 949.553.1600
**F** 949.553.0168
**W** www.grantthornton.com

**Grant Thornton LLP**
**US member of Grant Thornton International**

# Grant Thornton 🦅

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 2 of 16*

Recent federal legislation increased professional standards applicable to tax return preparers, including non-signing return preparers. We are required to include with each tax return a disclosure statement to the Internal Revenue Service identifying each return position/item for which we do not have a reasonable belief that the treatment of the return item is at least more likely than not correct. We cannot sign a return or render advice as a non-signing return preparer unless appropriate disclosures are made.

The Internal Revenue Code and Treasury Regulations require taxpayers to disclose certain types of transactions, known as reportable transactions, for which failure to disclose may result in the imposition of substantial penalties. A completed and signed Reportable Transactions Questionnaire and the Company's cooperation in regard to any follow-up requests for information are required prior to processing any tax returns we may be engaged to prepare.

The facts and circumstances of the engagement and/or the results of our tax analysis may require that we qualify any advice given to the Company, whether oral or written, including in some cases expressly advising the Company that our tax advice is not intended for, and cannot be used for, the purpose of avoiding any penalties that may be imposed under the Internal Revenue Code or other applicable law, including state, local, federal or foreign law.

**Other Matters**

This Agreement shall remain in full force and effect in accordance with its terms and conditions and shall constitute legal, valid, binding, and enforceable obligations of both Grant Thornton and the Company.

Please confirm your acceptance of this Agreement by signing below and also signing the enclosed Statement(s) of Work, and returning the Agreement to me in the enclosed self-addressed envelope. We look forward to the opportunity to serve you.

Very truly yours,

**GRANT THORNTON LLP**

Gary Grush
Partner

Enc    Statement of Work for Tax Compliance Services
Statement of Work for Tax Consulting Services
Attachment A

# Grant Thornton 🦅

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 3 of 16*

**Agreed and Accepted**

The foregoing letter fully describes our understanding and is accepted by us.

NEW CENTURY FINANCIAL CORPORATION

By: _____     Date: __1/29/08_____
    Mr. Jamie Lisac, Chief Financial Officer

Grant Thornton 🦅

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 4 of 16*

**New Century Financial Corporation**
**Statement of Work for Tax Compliance Services**
**(For Tax Compliance Engagements Not Subject to the SEC Independence Rules)**

This Statement of Work ("Statement of Work") dated January 18, 2008, upon acceptance by Grant Thornton LLP ("Grant Thornton," "Firm," or "we"), becomes a part of and is subject to the terms and conditions of the Agreement dated January 18, 2008 between New Century Financial Corporation ("Client," "Company," or "you") and Grant Thornton including the terms and conditions of Attachment A dated 12/21/2007 which is a part of such Agreement. Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

The purpose of this Statement of Work is to describe the scope of services ("Services") the Company is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services.

**The Services We Will Provide**

The Services we will provide to you for the taxable year ended December 31, 2007 include the following specific deliverables, as detailed below or as set forth in the Addendum to this Statement of Work ("the Addendum").

- Preparation of federal and state tax returns

**Delivering The Services**

We will discuss with you an appropriate timeline for providing the Services described above, including an agreed upon timeframe for delivery of the return(s). We will provide the Company with a request for information required to complete the Services based on the mutually agreed timeline.

Only returns detailed above or in the Addendum are covered by this Statement of Work. Our responsibility under this Agreement does not extend to any periods prior to or subsequent to this Statement of Work.

Our responsibility under this Statement of Work extends only to Services we expressly agree to provide herein. This Statement of Work does not include, for example, studies, detailed research or analysis required to determine the amount of any federal or state credits or research or consultation with respect to nonrecurring items or other matters of tax significance that may arise in the course of tax return preparation or during the course of the year. If such items arise or you request additional Services we will provide you a fee estimate and a new Statement of Work before we invest significant professional time.

# Grant Thornton ⚜

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 5 of 16*

**Fees and Payment Terms**

- **Fees**

Our fees for this engagement will be based on our hourly rates for this type of work as follows

| Classification | Standard Hourly Rates |
|---|---|
| Partner/Director | $555 - $715 |
| Senior Manager | $500 - $550 |
| Manager | $450 - $460 |
| Senior Associate | $325 - $385 |
| Associate | $225 - $250 |
| Administrative/Paraprofessional | $120 - $175 |

Our fees will be billed in accordance with the Bankruptcy Code, the Local Bankruptcy Rules and any applicable orders of the Court.

In addition, our billings will include expenses related to this engagement including, but not limited to, the legal expenses for counsel, time and expenses associated with administering the engagement and bankruptcy court appearances, as required, photocopying, facsimile transfers, hotel, meals, mileage and other travel plus costs associated with financial statement report processing and administrative expenses.

**Entire Agreement**

This Statement of Work represents the parties' entire understanding with respect to the Services in this document. It does not modify or amend the Agreement. In the event of a conflict between this Statement of Work and the Agreement, the terms of the Attachment A shall govern.

# Grant Thornton 🦅

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 6 of 16*

**Agreed and Accepted**

We agree to the terms and conditions as set forth above.

## NEW CENTURY FINANCIAL CORPORATION

By: _____          Date: _1/29/08_____

    Jamie Lisac, Chief Financial Officer

## GRANT THORNTON LLP

_____          Date: _____

Gary Grush, Partner

# Grant Thornton ⬧

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 7 of 16*

*New Century Financial Corporation*
**Statement of Work for Tax Consulting Services**
**(For Tax Consulting Engagements Not Subject to the SEC Independence Rules)**

This Statement of Work ("Statement of Work") dated January 18, 2008, upon acceptance by Grant Thornton LLP ("Grant Thornton," "Firm," or "we"), becomes a part of and is subject to the terms and conditions of the Agreement dated January 18, 2008 between New Century Financial Corporation ("Client," "Company," or "you") and Grant Thornton including the terms and conditions of Attachment A dated 12/21/2007 which is a part of such Agreement. Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

The purpose of this Statement of Work is to describe the scope of services ("Services") the Company is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services.

**The Services We Will Provide**

The Services we will provide under this Statement of Work consist of general corporate consulting as needed, including bankruptcy related issues.

**Delivering The Services**

We will discuss with you an appropriate timeline for providing the Services listed above, including an agreed upon timeframe for completion. We will provide the Company with a request for information required to complete the Services based on the mutually agreed timeline.

Our responsibility under this Statement of Work extends only to Services we expressly agree to provide herein. Our responsibility does not include, for example, studies, detailed research or analysis not specifically set forth in this Statement of Work. If such items arise or you request additional Services we will provide you a fee estimate and a new Statement of Work before we invest significant professional time.

# Grant Thornton ⬎

Mr. Jamie Lisac
January 18, 2008
Page 8 of 16

## Fees and Payment Terms

Fees

Our fees for this engagement will be based on our hourly rates for this type of work as follows:

| Classification | Standard Hourly Rates |
|---|---|
| Partner/Director | $555 - $715 |
| Senior Manager | $500 - $550 |
| Manager | $450 - $460 |
| Senior Associate | $325 - $385 |
| Associate | $225 - $250 |
| Administrative/Paraprofessional | $120 - $175 |

In addition, our billings will include expenses related to this engagement including, but not limited to, the legal expenses for counsel, time and expenses associated with administering the engagement and bankruptcy court appearances, as required, photocopying, facsimile transfers, hotel, meals, mileage and other travel plus costs associated with financial statement report processing and administrative expenses.

Our fees will be billed in accordance with the Bankruptcy Code, the Local Bankruptcy Rules and any applicable orders of the Court.

## Entire Agreement

This Statement of Work represents the parties' entire understanding with respect to the Services in this document. It does not modify or amend the Agreement. In the event of a conflict between this Statement of Work and the Agreement, the terms of the Attachment A shall govern.

# Grant Thornton ⬦

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 9 of 16*

**Agreed and Accepted**

We agree to the terms and conditions as set forth above.

NEW CENTURY FINANCIAL CORPORATION

By: _____       Date: __1/29/08_____
    Jamie Lisac, Chief Financial Officer

GRANT THORNTON LLP

_____            Date: _____
Gary Grush, Partner

# Grant Thornton ⚓

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 10 of 16*

---

## ATTACHMENT A - STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS

It is understood and agreed that the terms and conditions in this Attachment A refer to the Grant Thornton letter to which it is attached. The addressee of the letter, by signing the letter, has agreed to all of the terms and conditions in this Attachment A. In the event that there is a conflict between this Attachment A and the letter, including any Statements of Work, attachments, or amendments to the Agreement, the terms of Attachment A shall control. Any capitalized terms in this Attachment A that are not defined shall have the meanings in the letter.

1.    Management Participation and Responsibilities. You will designate at least one management level individual who possesses the suitable skill, knowledge, experience, judgment, and willingness to be responsible for overseeing the Services on your behalf. You will be solely responsible for applying independent business judgment with respect to the Services, including without limitation, establishing and monitoring the performance of the Services to ensure the objectives have been met, evaluating the adequacy of the engagement and any recommendations made, exclusively rendering decisions that involve management functions related to the engagement, accepting full responsibility for decisions on implementation or other further course(s) of action, and establishing and maintaining internal controls. Moreover, you will in all events remain responsible for the care and control of your premises, for all internal books and recordkeeping, for establishing and maintaining effective internal control systems and for all management functions, responsibilities and decisions.

2.    Indemnity. Grant Thornton shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than the Tax Consulting services provided under the applicable Engagement Letter, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

The Debtors shall have no obligation to indemnify Grant Thornton, or provide contribution or reimbursement to Professional, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Professional's gross negligence, willful misconduct, breach of contract, breach of fiduciary duty, bad faith or self dealing; or (ii) settled prior to a judicial determination as to Grant Thornton's gross negligence, willful misconduct, breach of contract, breach of fiduciary duty, bad faith or self dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which Grant Thornton should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter; and

If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Grant Thornton believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, Grant Thornton must file an application with the Court, and the Debtors

Grant Thornton 🐦

may not pay any such amounts to Grant Thornton before the entry of an order by the Court approving the payment. This provision is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Grant Thornton for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Grant Thornton. All parties in interest shall retain the right to object to any demand by Grant Thornton for indemnification, contribution or reimbursement.

3.    Use of Documentation and Reliance. Our professional standards require us to maintain sufficient documentation to support our work. This documentation may include copies of your information. However to the extent that we have copies of your information, we will protect and safeguard your information from unauthorized disclosure.

You agree to protect all data, materials, deliverables and reports, and opinions delivered to you (the "Deliverables") from unauthorized use and prevent disclosure of the Deliverables to unauthorized third parties who may rely on them (except for copies of filed tax returns). Moreover, you agree that we have not and shall not be deemed to assume any duties or obligations to any third party, including without limitation an affiliate, subsidiary, parent company or shareholders, partners, members, creditors or any third party beneficiaries.

Our Deliverables will be based on our interpretation of the federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities, in effect when we provide our deliverables. All of these authorities are subject to change, and such change may be

retroactive or prospective in effect. We assume no responsibility to either advise you of, or to update our conclusions, for changes in respect to federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities. As a result, evaluation of our Deliverables shall be based solely on its substantial conformance with any standards or specifications expressly set forth in this Agreement and applicable law and any claim of nonconformance must be clearly and convincingly shown.

4.    Reportable Transactions.    As you are aware, taxpayers are required to disclose their participation in certain types of transactions ("Reportable Transactions") on forms filed with their federal income tax returns and/or with the IRS Office of Tax Shelter Analysis, and with agencies of certain states that impose similar requirements.    Failure to adhere to Reportable Transaction disclosure and filing requirements may result in the imposition of significant penalties under applicable federal and/or state law. As a result, if we determine that such disclosure is required under applicable federal or state law, you consent to our disclosure of your information to the IRS or applicable state agencies.

Except as specifically stated in this, Agreement, the scope of Services provided hereunder does not include our expressing any opinion on, or providing any advice related to, whether any particular transaction that may be reflected in or identified from information obtained during the course of providing services to you under the Agreement is a Reportable Transaction, or the potential consequences of non-compliance with disclosure and filing requirements pertaining to a Reportable Transaction.    Reliance on any opinion or advice we may provide regarding Reportable Transaction disclosure and filing requirements

# Grant Thornton ⚸

Mr. Jamie Lisac
January 18, 2008
Page 12 of 16

may not avoid the imposition of any penalty imposed on you under federal or state law for the failure to comply with such disclosure and filing obligations.

We may be a "Material Advisor" in connection with providing services to you, as that term is defined under Section 6111 of the Internal Revenue Code, applicable Treasury Regulations and administrative guidance and/or state law, with respect to a Reportable Transaction. As a Material Advisor, we may be required to file an information return with the IRS or other applicable federal or state agency regarding such Reportable Transaction. Additionally, as a Material Advisor, we may be required to maintain certain information pertaining to your participation in such Reportable Transaction, and to disclose such information to the IRS or other applicable federal or state agency upon its request. Such information may include your name and federal identification number, and other information as the law may require.

5.    Third Party Proceedings. Unless expressly provided for, our Services do not include giving testimony or appearing or participating in discovery proceedings, in administrative hearings, in court, or in other legal or regulatory inquiries or proceedings. Moreover, our costs, expenses and time spent in legal and regulatory matters or proceedings arising from this Agreement to which we are not a party and the Services are not at issue, such as subpoenas, testimony, bankruptcy filings or proceedings, consultation involving private litigation, arbitration, government or industry regulation inquiries, whether made at your request, the request of a third party or by subpoena or equivalent, will be billed to you separately at our then current rates. The terms of this paragraph shall apply to any third party proceedings that arise after the termination of this Agreement

6.    Privileges Relating to Taxpayer Communications. Any advice given by Grant Thornton with respect to a matter that is within the scope of our authority to practice before the IRS may be privileged under federal and state laws. This privilege may be asserted in any non-criminal tax matter before the IRS and in any non-criminal tax proceeding in Federal court and may be asserted to the extent such communication would be considered privileged communication if it were between a taxpayer and an attorney. At your sole cost and expense, we will cooperate with your efforts to assert taxpayer privileges when we receive a demand or inquiry for your information to the extent required by law.

7.    Regulatory Reviews. The Public Company Accounting Oversight Board ("PCAOB") has the authority to review an accounting firm's records. Should the PCAOB request any such examination seeking disclosure of your information, we will comply with such request and provide you notice of such request, as appropriate.

8.    Access to Resources and Information. Unless specified herein as the responsibility of Grant Thornton to provide, you shall have obtained for us on a timely basis any internal and third party permissions, licenses or approvals that are required for us to perform the Services contemplated hereunder (including use of any necessary software or data). You shall also provide us, on a timely basis, with such information, approvals and assistance as may be necessary to our work or as we may reasonably request, and our personnel assigned to any work hereunder shall not be assumed or deemed to have knowledge of information provided to others, whether external to or within Grant Thornton.

# Grant Thornton ⚱

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 13 of 16*

9.    Termination. We shall each have the right to terminate this Agreement, in whole or in part, without further obligation to the other in the event that a party commits a material breach of this Agreement. A material breach shall include, without limitation, any failure to timely pay Grant Thornton's invoices. Any failure to remedy a material breach within thirty (30) days after written notice by the non-breaching party of such breach shall result in termination of this Agreement, in whole or in part, subject to the discretion of the non-breaching party. Further, Grant Thornton shall have the right to terminate this Agreement if it discovers practices by you that we deem dishonest, fraudulent, or illegal; or we determine that in our professional judgment, the circumstances require termination of any or all Statements of Work. In the event that either party terminates this Agreement or any or all Statements of Work as set forth in this section, you agree to pay us for the Services, including out-of-pocket expenses and costs, rendered up to the date of such termination.

10.    Grant    Thornton    International Limited– A Global Organization of Independent Firms. Grant Thornton LLP is the U.S. member of Grant Thornton International Limited ("GTIL"), a global organization of member firms in over 100 countries. Member firms are not part of one international partnership or otherwise legal partners with each other. There is no common ownership, control, governance, or agency relationship between member firms. However, from time to time, member firms provide services in support of international assignments of other Member firms. To that end, you agree that we may disclose information to member firms of GTIL solely for purposes of providing the Services in this Agreement.

11.    Electronic    Communications. The parties agree to the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between the parties and between Grant Thornton and outside specialists or other entities engaged by either us or you. We shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond our reasonable control.

12.    Basis for Our Conclusions. Our conclusions are limited solely to the matters for which we were engaged. No conclusions should be inferred as to any matters not specifically covered in the Agreement. Further, the conclusions are based upon the facts and information presented by you and may be inapplicable if the actual facts differ from those presented in any respect.

You represent that we may rely on the following, to the extent applicable, without verification.

(a)    All original documents, signatures and copies of documents provided by you are authentic.
(b)    When only drafts of pertinent documents are available, the executed versions of the draft documents will not vary materially from the ones provided by you for examination.
(c)    There are no inconsistent or adverse facts that are not otherwise provided by you and not apparent from the face of the documents that we have relied upon.
(d)    All legal documents necessary to perform the services have been duly and validly authorized, approved and executed by the appropriate persons.

# Grant Thornton 🦅

You hereby agree not to sue Grant Thornton and release Grant Thornton and its present and former partners, principals, directors, employees, and contractors from any claim, whether known or unknown, liability, damages, fees, expenses and costs (including defense costs) relating to the Services that arise or relate to any information provided by you, your personnel or agents, that is misleading, incomplete, or not current.

### 13.   Dispute resolution.

In the unlikely event that differences arise in connection with the validity, enforceability, performance or breach of this Agreement or our fees, either of us may request mediation in writing. Any mediation shall be assisted by a neutral mediator acceptable to you and Grant Thornton and each of us will use our best efforts to discuss our respective positions and resolve any dispute.

The parties may disclose facts during the mediation in an attempt to resolve the dispute. Any facts disclosed will be in furtherance of settlement and maintained as confidential by all parties. The parties agree to conclude mediation within sixty (60) days from receipt of the written notice unless the parties jointly agree to extend, terminate or waive mediation. Each party will each pay its own costs of mediation but will share equally the fees and expenses of the mediator.

In the event that mediation is not successful, we both recognize that the matter will probably involve complex business or accounting issues that would be decided most equitably to us both by a judge hearing evidence without a jury. Accordingly, to the extent now or hereafter permitted by applicable law, the parties agree to waive any right to trial by jury in any action, proceeding or counterclaim arising out of or relating to the Services or this Agreement

If the above jury trial waiver is determined to be prohibited by applicable law, then the parties agree that the dispute or claim shall be settled by binding arbitration. The arbitration proceeding shall take place in the city in which the Grant Thornton office providing the relevant Services is located unless the parties mutually agree to a different location. The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") and will proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitrator. The arbitrator will be selected from AAA, JAMS, the Center for Public Resources or any other internationally or nationally-recognized organization mutually agreed upon by the parties. Potential arbitrator names will be exchanged within 15 days of the parties' agreement to terminate or waive mediation, and arbitration will thereafter proceed expeditiously. The arbitration will be conducted before a single arbitrator, experienced in accounting and attest matters. The arbitrator shall have no authority to award non-monetary, equitable relief and will not have the right to award punitive damages. The award of the arbitration shall be in writing and shall be accompanied by a well reasoned opinion. The award issued by the arbitrator may be confirmed in a judgment by any federal or state court of competent jurisdiction. Each party shall be responsible for their own costs associated with the arbitration, except that the costs of the arbitrator shall be equally divided by the parties. The arbitration proceeding and all information disclosed during the arbitration shall be maintained as confidential, except as may be required for disclosure to professional or regulatory bodies or in a related confidential mediation or arbitration.

# Grant Thornton ⌼

14. General.

(a) Neither party shall assign any rights, obligations or claims relating to this Agreement.

(b) Neither party shall be liable for any delay or failure in performance due to circumstances beyond its reasonable control.

(c) Except for GTIL member firms, no third-party beneficiaries are intended under this Agreement.

(d) Neither party shall use the other's name, servicemarks, or trademarks without prior written consent.

(e) This Agreement, including its formation and the parties' respective rights and duties and all disputes that might arise from or in connection with this Agreement or its subject matter, shall be governed by and construed in accordance with the laws of Illinois, without giving effect to conflicts of laws rules. The parties consent to the personal jurisdiction of the courts of the state where the Grant Thornton office performing the Services is located and the United States District Court for the District of such state, and the parties waive objection to venue in any of these courts.

(f) Each party is an independent contractor with respect to the other and shall not be construed as having a trustee, joint venture, agency or fiduciary relationship.

(g) If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions. Furthermore, if you become a registrant of the U.S. Securities and Exchange Commission ("SEC") or if due to any other reason, the Services are subject to the independence rules

of the SEC with respect to you, such that any provision in this Agreement would impair our independence under the SEC's rules, such provision shall, to that extent, be of no further force and effect and the Agreement shall consist of the remaining provisions.

(h) This Agreement, including any other incorporated attachments, sets forth the entire understanding between and among the parties regarding the Services and supersedes all prior and contemporaneous agreements, arrangements and communications and may not be modified or amended, except by the mutual written agreement of both parties.

(i) The clauses regarding liability limitations, third party proceedings, indemnification and resolution of differences shall survive any termination of this Agreement.

15. Personnel. When you hire a Grant Thornton professional, we incur significant expenses in hiring and training replacements. Accordingly, during the term of this Agreement and for a period of one (1) year after the Services are completed, we both agree not to solicit, directly or indirectly, or hire, the other's personnel participating on an engagement without express written consent. If this provision is violated, the violating party will pay the other party a fee equal to the hired person's annual salary in effect at the time of the violation to reimburse the estimated costs of hiring and training replacement personnel.

16. Successors and Affiliates. Recognizing that at times Grant Thornton's work may pertain not only to you but also to various subsidiaries, affiliates, advisors and contractors, partnerships, companies, trusts or foundations, you agree, as may be requested by Grant Thornton from time to time (including subsequent to completion of the

# Grant Thornton ⛚

*Mr. Jamie Lisac*
*January 18, 2008*
*Page 16 of 16*

Services), obtain written acceptance of the
terms of this Agreement. Furthermore, you
represent and warrant that this Agreement
shall be binding on each party hereto and on
each of our respective subsidiaries, successors,
assigns and legal representatives