**EXHIBIT B**



April 26, 2007

New Century Financial Corporation
18400 Von Karman Avenue, Suite 1000
Irvine, CA 92612

Dear Sir,

This letter confirms and sets forth the terms and conditions of the engagement between ICP Consulting LLC ("ICP") and New Century Financial Corporation (the "Company"). This letter also sets out the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by all of the parties below this letter will constitute an agreement between the parties (the "Agreement")

## Description of Services

ICP shall provide to the Company consulting services requested by the Company. It is anticipated that ICP's services will include advising the Company on the value and disposition of REIT (Real Estate Investment Trust) and non-REIT eligible residual securities held by the Company Additionally, ICP will advise the Company on the value and disposition of its loan origination business and upon request, loan servicing business (all the assets described in this paragraph shall be collectively referred to as "Assets")

In rendering its services ICP Consulting will report directly to the Company. Aamer Abdullah, will be responsible for the overall engagement He will be assisted by other ICP personnel. ICP personnel providing services to the Company may also work with other companies in conjunction with matters not related to the Company or its business or the Assets  Company acknowledges that all draft reports, conclusions or advice, whether oral or written, issued by ICP may be subject to revisions

## Compensation

ICP will be paid during the term of this Agreement fees totaling $250,000 as per Schedule A. Once paid, fees shall not be refundable. In addition to the fees on Schedule A, ICP will invoice and the Company shall pay appropriate charges incurred by ICP personnel for normal travel, lodging and reasonable per diem and extraordinary and other

out-of-pocket expenses incurred in the disposition of it's duties as advisor to the Company

**Term**

This agreement is considered in effect upon the execution date and will remain so for a term of sixty days. This agreement may be terminated by either party within three business days from notification.

**Conflicts and Related Understandings**

ICP is not currently aware of any relationship that would create a conflict of interest with the Company in the capacity in which ICP is being engaged. Because ICP is a consulting firm that services companies domestically and internationally, it is possible that ICP may have rendered services to or have business relationships with other entities which may or may not be involved in the purchase of the Assets. In the event that the Company accepts the terms of this agreement, ICP will not represent, in this matter, the interests of any such entities or parties in this matter without the prior written consent of the Company.

**Limitation of Liability**

In no event shall ICP be liable to the Company or it's creditors, for the resultant disposition of the Assets, loss of profit, data, business or goodwill as a result of the services provided, except to the extent that it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from breach of this Agreement by ICP's personnel or agents in performing the Services or to have occurred due to willful misconduct in the performance of these services.

**Confidentiality**

ICP acknowledges that, during the course of ICP's involvement with Company, ICP will occupy a position of trust and confidence, and that in performing services for Company, ICP will have access to and become familiar with the confidential and proprietary information of Company and Company's affiliates (hereafter called "Confidential Information"). The term Confidential Information shall include, but is not limited to, the following:

- Customer and supplier lists,
- Accounting and financial information,
- Business related technical know-how, trade secrets, developments, processes, formulas, business specific technology, strategies, and other information arising out of or related to Company and/or its affiliates,
- Business plans and related documents,
- Data processing and information service procedure(s) and programs

ICP agrees to keep all Confidential Information in the strictest confidence and not disclose any such information without the written consent of the Company, and agrees to use any Confidential Information solely to fulfill its obligations under this Agreement Upon termination of this Agreement, ICP shall deliver to Company all Confidential Information in ICP possession or control, including all records, programs, spreadsheets, files, notes, notebooks, reproductions and other documents relating to Company The provisions of this paragraph shall survive any termination of this Agreement This section shall not apply to information which is (1) publicly known through no breach of this Agreement; (2) subsequently obtained by the recipient from a third party without breach of any obligation of confidentiality of such third party; (3) independently developed by recipient without reliance upon any of the Confidential Information; (4) (after prior notice to the Company and the Company has had a reasonable opportunity to eliminate or reduce the disclosure, in each case to the extent permitted by law and practicable) disclosed pursuant to legal requirements or order or to any governmental authority purporting to have jurisdiction over it (including any self-regulatory authority) Subject to the foregoing, ICP may disclose Company's confidential information to its subcontractors who also sign a similar agreement, to its affiliates and the partners, directors, officers, employees, agents, trustees, representatives and advisors of ICP or its affiliates that are advised of the confidential nature of such information and are instructed to keep such information confidential and in connection with the exercise of any remedies, or enforcement of rights under this Agreement or any action, investigation or proceeding relating thereto. Each party may retain, subject to its confidentiality obligations, one (1) copy of the other party's documents or other information (including confidential information) for internal record keeping purposes, but only for that period of time necessary to evidence compliance with this Agreement or other legal requirements.

### Risk Allocation

ICP's total liability relating to this Agreement shall in no event exceed the fees ICP receives under this Agreement, or include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity) ICP will indemnify Company against any damage or expense relating to bodily injury or death of any person or damage to real estate and/or tangible personal property incurred while ICP is performing the Services and to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the negligent or willful acts or omissions or breach of this Agreement by ICP's personnel or agents in performing the Services.

The provisions of this section are intended to apply in all circumstances, regardless of the grounds or nature of any claim asserted (including contract, statute, any form of negligence, whether of Company, ICP, or others, tort, strict liability or otherwise) and whether or not the party seeking indemnification was advised of the possibility of the damage or loss asserted, to the extent not contrary to applicable law

The Company agrees to indemnify and hold harmless each of ICP, its affiliates and their respective shareholders, managers, members, officers, employees, agents, representatives

and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including actually incurred, reasonable costs for counsel in investigating, preparing or defending any action, proceeding, investigation or claim, in each case actual or threatened, whether or not in connection with litigation in which any Indemnified Party is a party as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties" acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from breach of this Agreement by ICP's personnel or agents in performing the Services or such Indemnified Party's gross negligence or willful misconduct The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of ICP, except to the extent for any such liability for losses, claims, damages, liabilities or expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from breach of this Agreement by ICP's personnel or agents in performing the Services or such Indemnified Party's gross negligence or willful misconduct. The Company further agrees that it will not, without the prior written consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, suit, action or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding. These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties

If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the reasonable expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel

445 Park Avenue, 12th Floor, New York, NY 10022
Tel (212) 821 1900, Fax (212) 821 1959

CONFIDENTIAL
RLF1-3143905-1

is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is actually unable or unwilling to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefore. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with Company's prior written consent, which consent shall not be unreasonably withheld.

In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand in connection with the statements, acts or omissions which resulted in the losses, claims damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation. Termination of the agreement shall not affect these indemnification provisions, which shall hereafter remain operative and in full force and effect. The rights provided herein shall not be deemed exclusive or any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Client, any other agreements, any vote of stockholders or disinterested directors of the Client, any applicable law or otherwise.

### General

Neither party shall be liable for any delays or failures in performance due to circumstances beyond its reasonable control. This Agreement may not be assigned or otherwise transferred without the prior express written consent of the other party. ICP may use subcontractors to provide Services, only if such subcontractors are identified in a Statement of Work in Schedule B for such Services as approved and in writing by the Company. Any notices given pursuant to this Agreement shall be in writing, delivered to the address set forth in the Statement of Work, and shall be considered given when received. No term of this Agreement shall be deemed waived, and no breach of this Agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent. If any term or provision of this Agreement is determined to be illegal or unenforceable, such term or provision shall be deemed stricken, and all other terms and provisions shall remain in full force and effect. This

445 Park Avenue, 12th Floor, New York, NY 10022
Tel (212) 821 1900, Fax (212) 821 1959

CONFIDENTIAL
RLF1-3143905-1

Agreement does not make either party an agent or legal representative of the other party, and does not create a partnership or joint venture. Both parties are independent contractors and principals for their own accounts. The laws of the State of New York (without regard to the principles of conflicts of laws) shall govern this Agreement Company acknowledges that: ICP and Company may correspond or convey documentation via Internet e-mail unless Company expressly requests otherwise, neither party has control over the performance, reliability, availability, or security of Internet e-mail, and ICP shall not be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond ICP's reasonable control.

Acknowledged and Accepted:

ICP CONSULTING LLC

By: *Thomas Priore* [signature: Thomas C. Priore]

Title: Chief Executive Officer

Date: May 2, 2007

NEW CENTURY FINANCIAL CORPORATION

By: [signature]

Title: SVP + Asst General Counsel

Date: 5-2-07

445 Park Avenue, 12th Floor, New York, NY 10022
Tel (212) 821 1900, Fax (212) 821 1959

CONFIDENTIAL
RLF1-3143005-1

## Schedule A

Fee Schedule:

| | |
|---|---|
| $50,000 | Upon the entry of an order by the United States Bankruptcy Court for the District of Delaware approving ICP's retention as a professional in the bankruptcy cases; |
| $100,000 | Upon completion of the servicing and origination platform auctions; |
| $100,000 | Upon the completion of the REIT (Real Estate Investment Trust) and non-REIT eligible residual securities held by the Company, auction. |

## Schedule B

Statement of Work:

Servicing and Origination Platform – Provide for an evaluation framework to determine future loan origination capability and existing servicing rights of the Company's operating platforms

REIT (Real Estate Investment Trust) and Non-REIT Eligible Residual Securities – Generate appropriate marketing materials and conduct an auction. See below for detail of materials to be constructed:

1) List all assets and pertinent info with following summary information: Deal summary table cusip, security name, rating (if applicable), orig bal, cur bal, collat bal, collat factor, %cur, %30d, %60d, %90+, %fcl, %reo, %bk, 1mo cpr, 3mo cpr, 6mo cpr, 1mo cdr, 3mo cdr, 6mo cdr, cum loss to date, proj loss to maturity, current servicer and owner of call rights

2) Provide appropriate pre-payment curve and de-construct it to show assumptions for each major type of loan.

3) Provide appropriate long term loss curve and demonstrate validity of assumptions using relevant delinquency roll matrix and other loan level data; asset curves loss curve to date, and projected losses continued out CPRs to date and projected |CPRs continued out

4) Using current loan status data, geographic related information (HPA, Bankruptcy and Foreclosure timelines), loan balance, Loan to Value ratio (LTV) and Mortgage Insurance coverage (MI) determine a more accurate short term loss forecast and blend into a longer term forecast

5) Provide Yield Scenario Analysis using appropriate prepayment & loss curve, along with stresses to triggers, pre-pay penalty recovery and forward curve This could be done as a Matrix of Stresses to projected losses, projected CPRs and Interest rate shocks

6) Show impact of leverage on returns

7) Provide relevant cash flows so investors can determine when money is returned to them under different scenarios

8) Provide detailed loan stratifications which highlight the high risk buckets as well as filter out and show individual high risk loans.

445 Park Avenue, 12th Floor, New York, NY 10022
Tel (212) 821 1900, Fax (212) 821 1959

CONFIDENTIAL
RLF1-3143905-1