EXHIBIT "D"

**Real Estate Valuation Services**
**MARK To MARKET .COM**

**Mark To Market**
Address: 905 West 7th Street, Suite 320 Frederick, Maryland 21701
Telephone: 877 626 2767
Fax: 301 560 6323
Email: info@marktomarket.com

### Request Details

| Field | Value |
|---|---|
| Client Name: | GRP Financial Services |
| Client Loan Number: | 15425 |
| Alt ID: | |
| Project ID: | Portfolio 9_4_07 |
| Product Type: | Exterior BPO |
| Delivered Date: | 09/07/2007 |
| Request ID: | 47135 |
| Order ID: | 169054 |
| Address: | 9230 Bush Poppy Avenue, , Las Vegas, NV, 89147 |

### Property Transaction History

#### Fidelity Data

| Field | Value | Field | Value |
|---|---|---|---|
| Sale 1 Date: | 03/22/2005 | Mortgage 1 Date: | 03/22/2005 |
| Sale 1 Buyer 1 Name: | ARMOND BYERS | Mortgage 1 Loan Amount: | $212,000.00 |
| Sale 1 Buyer 2 Name: | | Mortgage 1 Lender Name: | NEW CENTURY MORTGAGE CORP |
| Sale 1 Sale Price: | $265,000.00 | Mortgage 1 Loan Rate: | 6.9 |
| Sale 2 Date: | 03/31/2003 | Mortgage 2 Date: | 03/31/2003 |
| Sale 2 Buyer 1 Name: | JOSEPH DARRIGO | Mortgage 2 Loan Amount: | $122,320.00 |
| Sale 2 Buyer 2 Name: | GLORIA DARRIGO | Mortgage 2 Lender Name: | CAPITOL COMMERCE MORTGAGE CO |
| Sale 2 Sale Price: | $152,900.00 | Mortgage 2 Loan Rate: | 4.25 |
| Sale 3 Date: | 09/18/1996 | Mortgage 3 Date: | 08/18/1998 |
| Sale 3 Buyer 1 Name: | TONI PECCOLE HUTCHINGS | Mortgage 3 Loan Amount: | $121,509.00 |
| Sale 3 Buyer 2 Name: | | Mortgage 3 Lender Name: | PROVIDENT SAVINGS BK |
| Sale 3 Sale Price: | $113,500.00 | Mortgage 3 Loan Rate: | 0 |

#### Agent Data

| Field | Value |
|---|---|
| Recent Sale Price: | $265,000.00 |
| Recent Sale Date: | 03/21/2005 |
| Recent Sale Agent Name: | RICK GULLEY |
| Recent Sale Agent Phone: | (702) 278-9081 |
| List Price at Time of Sale: | $275,000.00 |
| Original List Price: | $280,000.00 |
| Original List Date: | 01/07/2005 |
| Previous Sale Price: | $152,900.00 |
| Previous Sale Date: | 03/05/2003 |
| Current List Price: | |
| Current List Date: | |
| List Agent Name: | |
| List Agent Phone Number: | |
| Listing Status: | |
| Current Agent Name: | |
| Current Agent Phone: | |

### Comparable Data

| | Subject | Sale1 | Sale2 | Sale3 | Listing1 | Listing2 | Listing3 |
|---|---|---|---|---|---|---|---|
| MLS Number | | 732972 | 731008 | 686279 | 701665 | 710056 | 725200 |
| Address 1 | 9230 Bush Poppy Avenue | 9343 SNOW FLOWER | 7279 SEQUOIA SPRINGS | 9242 LADY PALM | 8051 CHAMBERSBERG | 3572 AUTUMN RAIN | 3679 PENGILLY |
| Zip Code | 89147 | 89147 | 89147 | 89147 | 89147 | 89147 | 89147 |
| Property Type | Single Family Detached | Single Family Detached | Single Family Detached | Single Family Detached | Single Family Detached | Single Family Detached | Single Family Detached |
| Original List Price | $280,000.00 | $258,990.00 | $278,900.00 | $269,900.00 | $269,000.00 | $287,500.00 | $325,000.00 |
| Current List Price | | | | | $245,000.00 | $249,900.00 | $255,000.00 |
| List Date | 01/07/2005 | 06/26/2007 | 06/20/2007 | 02/02/2007 | 03/20/2007 | 04/16/2007 | 06/01/2007 |
| Sale Price | $265,000.00 | $254,000.00 | $256,000.00 | $265,000.00 | | | |
| Sale Date | 03/21/2005 | 08/17/2007 | 07/31/2007 | 03/30/2007 | | | |
| Style | 1 Story | 1 Story | 1 Story | 1 Story | 1 Story | 1 Story | 1 Story |
| Distance from Subject | 0 | 0.7 | 0.8 | 0.7 | 0.8 | 0.7 | 0.7 |
| Days on Market | | 17 | 26 | 28 | 169 | 142 | 96 |
| Exterior | Stucco | Stucco | Stucco | Stucco | Stucco | Stucco | Stucco |
| Year Built | 1996 | 1998 | 1993 | 1996 | 1997 | 1994 | 1995 |
| Above Grade SF | 1,254 | 1,291 | 1,260 | 1,254 | 1,243 | 1,219 | 1,260 |
| Finished SF | 1,254 | 1,291 | 1,260 | 1,254 | 1,243 | 1,219 | 1,260 |
| Condition | Good | Good | Good | Good | Good | Good | Good |
| Total Rooms | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| Bedrooms | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Bathrooms | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 |
| Garage | 2 Stall - Attached | 2 Stall - Attached | 2 Stall - Attached | 2 Stall - Attached | 2 Stall - Attached | 2 Stall - Attached | 2 Stall - Attached |
| REO | No | No | No | No | No | No | No |
| Site Size | 3800 | 4441 | 4079 | 5892 | 4916 | 4000 | 4961 |
| Pool | None | In Ground | In Ground | None | None | None | In Ground |
| Above Grade P/SF | $211.00 | $197.00 | $203.00 | $211.00 | | | |
| Finished P/SF | $195.37 | $197.00 | $203.00 | $211.00 | $197.00 | $205.00 | $202.00 |
| Above Grade List Price/SF | $223.00 | $201.00 | $221.00 | $215.00 | $197.00 | $205.00 | $202.00 |
| L/B Ratio | 3.03 | 3.44 | 3.24 | 4.70 | 3.95 | 3.28 | 3.94 |

## Comparable Comments

| | |
|---|---|
| Sale1 | ADJUST FOR $1,000 SELLER CONTRIBUTION, GLA, LOT SIZE, POOL, AGE OF PROPERTY, PROPERTY CONDITION AND ANY INTERIOR IMPROVEMENTS. |
| Sale2 | ADJUST FOR GLA, LOT SIZE, POOL, AGE OF PROPERTY, PROPERTY CONDITION AND ANY INTERIOR IMPROVEMENTS. |
| Sale3 | ADJUST FOR $7,950 SELLER CONTRIBUTION, LOT SIZE, AGE OF PROPERTY, PROPERTY CONDITION AND ANY INTERIOR IMPROVEMENTS. |
| Listing1 | ADJUST FOR GLA, LOT SIZE, AGE OF PROPERTY, PROPERTY CONDITION AND ANY INTERIOR IMPROVEMENTS. |
| Listing2 | ADJUST FOR GLA, LOT SIZE, AGE OF PROPERTY, PROPERTY CONDITION AND ANY INTERIOR IMPROVEMENTS. |
| Listing3 | ADJUST FOR GLA, LOT SIZE, POOL, AGE OF PROPERTY, PROPERTY CONDITION AND ANY INTERIOR IMPROVEMENTS. |

## Subject Comments

| | |
|---|---|
| Property: | EXTERIOR OF PROPERTY LOOKS TO BE IN GOOD CONDITION. LANDSCAPING IS IN FAIR CONDITION AND IS IN NEED OF MAINTENANCE. CURRENT INTERIOR CONDITION AND ANY UPGRADES IS UNKNOWN AT THIS TIME. |
| Neighborhood: | LOCATED CLOSE TO AREA SCHOOLS, SHOPPING, PARKS AND FREEWAY. CURRENTLY THERE IS 15 PROPERTIES ON THE MARKET THROUGH THE MLS WITHIN THE SUBDIVISION. |
| The primary, or main, factor(s) affecting the value of this property is/are: | LANDSCAPING, COMPETITION IN THE AREA, UNKNOWN INTERIOR CONDITION |

## Zip Code Info / MLS Activity

| | | | |
|---|---|---|---|
| FNIS - # SF Properties: | 1828 | Total Number of Properties Currently Listed In MLS: | 526 |
| FNIS - Own Occ %: | 79 | Total Number of Sales Past 3 Months from MLS: | 86 |
| FNIS - # Sales Past 90 Days: | 34 | Number of Comparable/Similar Sales Past 3 Months: | 4 |
| FNIS - # REO Past 90 Days: | 5 | | Based on my "As Is" value of $245,000.00, the subject property's As Is Value is the 4TH lowest priced property out of the 27 competitive, or similar, properties currently listed in the market or neighborhood. |
| FNIS - Median Sale Price Past 90 Days: | $384,355.00 | | Based on my "As Repaired" value of $245,000.00, the subject property's As Repaired Value is the 4TH lowest priced property out of the 27 competitive, or similar, properties currently listed in the market or neighborhood. |
| | | Median Price Past 3 Months: | $285,000.00 |

## Property/Neighborhood / Community

| | | | |
|---|---|---|---|
| Occupancy Status: | Occupied | Housing Units: | |
| Property Rating: | Average Condition, Pride of Ownership | Homeownership Rate: | |
| Block Rating: | Average price of Ownership, No Abandoned Houses | Median Household Income: | |
| Neighborhood Rating: | Strong Residential Community, Evident Pride of Ownership | Persons Per Square Mile: | |
| Tax ID: | 163-20-210-030 | Average Market Rent: | $1,150.00 |
| Typical Rent Type: | Market | | |
| Average Marketing Time: | 120 | | |
| Most Probable Buyer: | Owner | | |
| Neighborhood Price Range: | $200,000.00 To $400,000.00 | | |
| Competitive Listings - Supply Trend: | Over Supply | | |

## Appraisal / Review Conclusions

| | | | |
|---|---|---|---|
| As Is Value: | [redacted] | As Is Value: | [redacted] |
| Estimated Repairs: | [redacted] | Estimated Repairs: | |
| Estimated Profit: | [redacted] | Estimated Profit: | |
| Value As Repaired: | [redacted] | Value As Repaired: | |
| Quick Sale: | [redacted] | | |
| Neighborhood Price Trend: | [redacted] | Review Comments: | |
| Valuation Date: | [redacted] | Reconciled Value: | |
| Marketing Time(Days): | [redacted] | Reconciled Comments: | |

## Repairs

| Type | Description of Repair | Room | Low Estimate | High Estimate | Recommend Repair | Damage Source |
|---|---|---|---|---|---|---|
| Total: | | | | | | |

| Comparison Images | |
|---|---|
| Image | Details/Description |
|  | Subject - Front<br><br>Subject - Side |

Subject - Street Corner



**Repair Images:**
Image                                                                                           Decription

**Vendor Information - prudential americana**

"Taking REO to the Next Level"
    Name: joe iuliucci
    Number: (702) 419-4200
Email Address: joei@vegasreo.com;davel@vegasreo.com



in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the