EXHIBIT "A"



5⎵  253134300 2493

**SunTrust**

SunTrust Bank
CLSC - Orlando
7455 Chancellor Drive
Orlando, FL 32809
(407) 762-6157

*60700000000000000HEA*

Access 3℠ Equity Line Account
Agreement and Disclosure Statement

"Bank" referred to in this Agreement is **SunTrust Bank**

"Borrower" referred to in this Agreement is **ROBIN F NAVAMUEL**

In consideration of Bank granting Borrower an Access 3 Equity Line Account ("Account or Access 3 Account") and of any credit which may be extended by Bank thereunder, by virtue of any advance of funds by Bank under this Access 3 Equity Line Account Agreement and Disclosure Statement, as may be amended (the "Agreement") which creates a charge against the Account (hereinafter collectively "Advance" or "Advances"), Borrower agrees as follows:

1. **Account.** The Account establishes a line of credit upon which Borrower may request Advances for a period of ten (10) years ("the Draw Period"), up to the amount of $**20,000.00** ("Credit Limit"). Borrower promises to pay Bank the principal amount of all Advances plus interest, finance charges, late fees and all other amounts and charges at the time, place, and in the manner specified by Bank on the monthly statement. The Account shall be payable in full no later than fifteen (15) years from the date of execution of this Agreement ("the Maturity"), the last five (5) years before Maturity being the repayment period ("Repayment Period").

2. **Access.** The Account may be accessed by (i) use of a draft ("Access 3 Check") supplied by Bank; (ii) use of an Access 3 Equity Line credit card ("Access 3 Credit Card") issued by Bank; (iii) Bank to provide overdraft coverage; (iv) other means Bank may authorize from time to time; or (v) any other advancement of funds by Bank on Borrower's behalf.

3. **Advances.** Borrower may obtain an Advance on the Account from time to time up to the available Credit Limit. The available credit for Advances is the Credit Limit, minus the sum of all unpaid Advances (including Advances initiated, but not yet posted to the Account) and any other charges posted to the Account. The minimum amount of any Access 3 Check Advance shall be $250.00, however, if Borrower chooses to repay an Access 3 Check Advance under Option 3 defined below, the minimum Advance amount shall be $5,000.00. No minimum Advance amount shall be required by Bank for purchases made with the Access 3 Credit Card. Borrower may make up to eight (8) Access 3 Credit Card transactions daily, five (5) of which may be ATM cash advances, with a maximum aggregate daily total of $1,200.00. If Borrower elects overdraft coverage as provided in paragraph 4, such Advances shall be in $100.00 increments.

Borrower will not access the Account when such Advance will exceed Borrower's available Credit Limit, result in a default under this Agreement, or would violate any law. Bank may refuse to make any requested Advance, including but not limited to, returning unpaid any Access 3 Check on the Account or refusing authorization for an Access 3 Credit Card transaction if (i) the request does not conform to the requirements of this paragraph; or (ii) at the time of the request, outstanding Account balance, as reflected by Bank's records, exceeds (or upon making the Advance would exceed) the Credit Limit; or (iii) the ability to make Advances has been suspended as provided for in this Agreement. However, Bank, at its option, may pay any Advance which will exceed the Credit Limit and Borrower will pay any amount over the Credit Limit in the manner Bank requests.

4. **Overdraft Coverage.** Bank is authorized to advance funds from the Access 3 Account to provide overdraft coverage for Account Number _____ maintained by Borrower with Bank ("Bank Account"). Whenever Borrower writes checks or otherwise creates debits which overdraw the Bank Account, Bank will make an Advance from the Access 3 Account in $100.00 increments to the Bank Account. If the Credit Limit on the Access 3 Account is not sufficient to cover the entire overdraft, but is sufficient to cover any one or more items creating such overdraft, Bank will make an Advance from the Access 3 Account, up to the amount of the available Credit Limit, in order to pay such item(s). If Bank makes an Advance which exceeds the Credit Limit, Borrower will pay any amount over the Credit Limit in the manner Bank requests. In the event that the Bank Account is held jointly with other individuals ("Joint Account Holder"), overdrafts on the Bank Account created by the Joint Account Holder will be provided overdraft coverage as prescribed in this paragraph.

5. **Interest Rate and Repayment Options.** For the first six (6) month period following the date of this Agreement the **ANNUAL PERCENTAGE RATE**, for Option 1 and Option 2 draws shall be fixed a rate of Two & 99/100 percent (2.990%). The Current Daily Periodic Rate is 0.00819% and the corresponding **ANNUAL PERCENTAGE RATE** is 2.990%. The **ANNUAL PERCENTAGE RATE** for Option 3 Advances shall not be subject to this promotional pricing. After the expiration of this six (6) month period, the **ANNUAL PERCENTAGE RATE** will be variable and calculated as described below.

The Annual Percentage Rate on all Advances shall be calculated at a rate equal to The Wall Street Journal Prime Rate plus **1.250** %. The maximum **ANNUAL PERCENTAGE RATE** will not exceed 18% per annum. Options One and Two have a variable rate of interest and the **ANNUAL PERCENTAGE RATE** can change as a result. The **ANNUAL PERCENTAGE RATE** for Option 3 and the Repayment Period shall be a fixed rate calculated using the index and margin disclosed above. At the time of an Access 3 Check Advance, Borrower will choose a repayment option which will apply only during the Draw Period. By the payment due date shown on the monthly statement ("the Periodic Statement"), Borrower agrees to pay monthly either (i) the total amount owing on the closing date as shown on the Periodic Statement (the "New Balance") or (ii) any portion of the New Balance, so long as Borrower pays at least a "Minimum Payment" which is the sum of the minimum payments for each of the three (3) Options as specifically set forth below or $100.00, whichever is greater, plus any applicable insurance premiums, late charges, and/or miscellaneous fees as set forth on the Periodic Statement. In addition, if the New Balance exceeds the Credit Limit, Borrower will pay the amount indicated on the Periodic Statement, to reduce the Account balance to within the Credit Limit. All payments must be made in United States dollars and must be drawn on a financial institution located in the United States. Unless otherwise required by applicable law, payments (whether regular payments or prepayments) will be applied first to any loan fees (such as late fees or bad check fees), second to insurance premiums, third to accrued unpaid interest, and thereafter to reduce my outstanding principal balance, or in any other order Bank wishes.

Option 1 - Revolving Line of Credit
The minimum payment due for funds advanced under this Option shall be 1.5% of the balance for Option 1. All Advances made by Access 3 Credit Card or for overdraft protection will be governed by and repaid under Option 1.

Option 2 - Interest Only
The minimum payment due for funds advanced under this Option shall be the accrued interest on the balance for Option 2. Any Advance made under this option will be converted to Option 1 three (3) years after such Advance was posted to the Account.

Option 3 - Fixed Rate/Fixed Term
The **ANNUAL PERCENTAGE RATE** on Advances made under this feature shall be fixed at the time the Advance is posted to the Account. Borrower will select a term of twelve (12) to sixty (60) months by noting same on the Access 3 Check at the time of the Advance. If Borrower does not specify a term, the term for the Advance shall be sixty (60) months. The payment shall be based upon the amount of the draw, the interest rate, and the repayment term selected. Each draw taken under this option shall be amortized to establish the payment amount. Any remaining balance at the end of the term shall be converted to Option I for repayment.

Repayment Period
The **ANNUAL PERCENTAGE RATE** for the Repayment Period shall be fixed at the expiration of the Draw Period. The term for the repayment of the outstanding balance will be five (5) years. The monthly payment amount will be based upon the balance, interest rate and the five (5) year term.

6. Statements and Finance Charge. Bank will send a monthly Periodic Statement at the end of each billing cycle, as determined by Bank, ("Billing Cycle") in which the Account has a debit or credit balance of more than $1.00 or on which a finance charge has been imposed. The finance charge ("Finance Charge") shall be the sum of the Cash Advance Fee described in paragraph 8 and the periodic finance charge ("Periodic Finance Charge"). A Periodic Finance Charge will be imposed on the Account and will be shown on the next Periodic Statement even if the New Balance was paid in full on or before the payment due date of the prior Periodic Statement. There is no grace period before the Periodic Finance Charge begins to accrue.

For each Billing Cycle, the Periodic Finance Charge begins to accrue on Access 3 Check Advances on the day the Check is received by the Bank for payment and begins to accrue on all other Advances on the day of the transaction. Bank calculates the Periodic Finance Charge on Options 1 and 2 by applying the Daily Periodic Rate to the average daily balance. To determine the "Daily Balance," take the beginning balance of the three (3) Options each day starting with the New Balance from the last Periodic Statement, plus all purchases, cash advances, Access 3 Checks, or any other Advances posted through that day, minus any unpaid Finance Charge, other charges, payments or other credits posted through that day. The "Average Daily Balance" is the sum of all the Daily Balances for the Billing Cycle divided by the actual number of days in the Billing Cycle. The Periodic Finance Charge for Option 3 will be calculated using straight loan amortization for each Advance. The Periodic minimum **FINANCE CHARGE** for the Account is $.50. The Periodic Finance Charge for the Account is the sum of the Periodic Finance Charges for the three (3) Options.

Bank will safekeep the paid Access 3 Checks. Bank will make available photocopies of Access 3 Checks and other instruments upon request. (If such request is not made in connection with a billing error inquiry, it may be subject to Research and Photocopy charges as described in paragraph 8).

Each Access 3 Check will be deemed to be In item for purposes of the Uniform Commercial Code ("UCC") of the state in which Bank is located and the time periods and other requirements for examining Periodic Statements and reporting improper entries will begin from the time Periodic Statements are sent or made available to Borrower. Bank assumes no responsibility for entries included on Periodic Statements not received unless Borrower gives notice within sixty (60) days of the date on which the Periodic Statement is customarily mailed, that it was not received.

The rules for stopping payment on Access 3 Checks shall be the same as Bank's rules for stopping payment on checks written on deposit accounts.

7. Corresponding Annual Percentage Rate and Daily Periodic Rate. The corresponding Annual Percentage Rate and the Daily Periodic Rate for each Billing Cycle will depend upon the Prime Rate. The "Prime Rate" means the per annum rate of interest published from time to time by The Wall Street Journal in its "Money Rates" listings, as the Prime Rate on the fifteenth day of the calendar month preceding the first day of the Billing Cycle. In the event that on any particular day *The Wall Street Journal* publishes more than one Prime Rate, for purposes of this Agreement, the Prime Rate shall mean the highest Prime Rate so published. The number of days in the Billing Cycle and the statement closing date will be shown on each Periodic Statement. For example, if the statement closing date is September 1st and there are thirty (30) days in the Billing Cycle, to calculate the first day in the Billing Cycle, subtract thirty (30) days from September 1st, to arrive at August 2nd. This Billing Cycle would begin August 2nd and end September 1st. So if the first day of the Billing Cycle is August 2nd, the Annual Percentage Rate for that Billing Cycle will equal the Prime Rate in effect on July 15th, plus the margin. The Daily Periodic Rate equals the Prime Rate plus a margin divided by 365. The corresponding Annual Percentage Rate and Daily Periodic Rate may increase or decrease according to increases or decreases in the Prime Rate. If the corresponding Annual Percentage Rate and Daily Periodic Rate increase, the Periodic Finance Charge and Minimum Payment may increase. The increases and decreases caused by changes in the Prime Rate will take effect on the first day of each succeeding Billing Cycle and will remain in effect for the entire Billing Cycle. The corresponding Annual Percentage Rate and Daily Periodic Rate will not change during the course of any one Billing Cycle. The **CURRENT DAILY PERIODIC RATE** is __0.01507__ % and the corresponding **ANNUAL PERCENTAGE RATE** is __5.500__ %. These rates are based upon the Prime Rate of __4.250__ % which was in effect as of the fifteenth day of __APRIL 2003__. The corresponding Annual Percentage Rate and Daily Periodic Rate applicable to the first Billing Cycle of the Account may differ from the disclosure above. The Annual Percentage Rate does not include costs other than interest.

8. Charges. Bank may also assess the following amounts ("Charges") to the Account.
A. A late payment charge not to exceed 5.000% of any unpaid amount due, with a minimum charge of $5.00 and a maximum charge of $25.00, if not received within ten (10) days of the payment due date;
B. An over limit fee of $25.00 for a New Balance that exceeds the Credit Limit at the end of the Billing Cycle;
C. A stop payment charge of $20.00 for placing a stop payment on an Access 3 Check;
D. A return check fee of $$20.00 on any check, draft, or order submitted as payment on the Account which is returned unpaid;

6100116 (10/98)

E. Cash Advance fee of $5.00 for use of the Access 3 Credit Card at an ATM to obtain an Advance;
F. A research and photocopy charge for locating, copying, or furnishing Access 3 Checks, statements or other evidence of Advances or credits to the Account in an amount not to exceed the following: $5.00 per check copy, $2.00 per statement copy and $12.00 per hour of research time.
G. A premium for credit life/disability insurance if Borrower has purchased the optional credit products.

9. **Security.** To secure the payment of all Advances, charges, authorized debits under the Account and any other sums for which Borrower becomes obligated under this Agreement, Borrower will (i) execute a Deed to Secure Debt, Deed of Trust, or Mortgage ("Security Instrument") which grants a lien upon Borrower's residence ("Real Property") in favor of Bank; and (ii) comply with all promises, understandings or obligations of the Grantor set forth in said Security Instrument, which shall constitute material obligations under this Agreement.

In addition to the Real Property, all property in or coming into the possession, control or custody of Bank, or in which Bank has or hereafter acquires a lien, security interest, or other right, shall secure and serve as collateral for all Advances, charges, authorized debits under the Account and any other sums for which Borrower becomes obligated under this Agreement, with the exception of Borrower's deposit accounts at Bank which shall not secure Access 3 Credit Card Advances. Additionally, the Security Instrument will secure future advances as more fully set forth therein.

10. **Tax Implications.** Borrower should consult a tax advisor regarding the deductibility of the interest and charges paid pursuant to this Agreement.

11. **Closing Costs.** Borrower will pay all charges incurred in connection with the preparation, execution, and recording of the Security Instrument securing this Account ("Closing Costs") as set forth below.

| | | |
|---|---|---|
| TITLE SEARCH | $ 50.00 | (**) |
| FLOOD SEARCH | $ 4.50 | (**) |
| INT TAXES | $ 40.00 | (**) |
| DOC STAMPS | $ 70.00 | (**) |
| RECORDING | $ 43.50 | (**) |
| | $ _____ | ( ) |
| | $ _____ | ( ) |
| | $ _____ | ( ) |
| | $ _____ | ( ) |
| | $ _____ | ( ) |

A double asterisk after the dollar amount indicates that the Closing Cost was paid by Bank. Borrower shall reimburse Bank for the Closing Costs it paid, if Borrower pays the balance in full and closes the Account within three (3) years of opening the Account. The amount of $ 208.00 Closing Costs, paid by the Bank, shall be added to the Account balance at the time of payoff.

12. **Appraisals.** In addition to the initial appraisal of the Real Property, Bank, at its option, may require new appraisals of the Real Property, and Borrower will pay any fees associated therewith.

13. **Insurance.** Borrower will maintain a fire, extended coverage, and other perils insurance policy, and flood insurance, if required, on the Real Property, which names Bank as loss payee, in an amount sufficient to cover the amount of the Credit Limit hereunder, plus any amounts owing under other outstanding recorded security instruments, and to provide Bank with appropriate evidence of said insurance. This insurance may be obtained from any agent or company of Borrower's choice, subject to the terms of the Security Instrument. Should Borrower fail to maintain such insurance at any time during the existence of the Account, Bank is authorized to obtain such insurance on behalf of and charge the premium to the Account or Bank may cancel the Account and declare the entire outstanding balance to be immediately due and payable.

14. **Change of Status or Sale of Real Property.** If the Real Property ceases to be Borrower's principal residence, Borrower's right to receive Advances shall terminate and Borrower will not initiate any Advances. Borrower will notify Bank of any agreements to sell or transfer ownership of all or any part of the Real Property or if all or any part of the Real Property is sold or transferred without consent or by operation of law, or if a notice of condemnation is received. Upon the transfer of any part of or interest in the Real Property, as a result of Borrower's action or inaction, the entire balance outstanding under the Account will immediately become due and payable and Bank may cancel the Account.

15. **Encumbrance of Real Property.** Borrower will not create, assume, or allow to exist any mortgage, lien, security interest, title retention device or other encumbrance covering all or any part of the Real Property, excluding only prior encumbrances and encumbrances held by Bank and liens for government charges which are not delinquent, without first notifying Bank of such fact via registered U.S. Mail and obtaining the prior written approval of Bank. Borrower has a material obligation under this Agreement to so notify Bank and obtain its consent. Bank may cancel the Account and may declare the entire outstanding balance immediately due and payable if Borrower violates this obligation. In the event that Borrower fails to provide Bank with said notice, and subsequently obtains an Advance from the Account, Borrower will be deemed to have intentionally concealed material facts in order to induce Bank to honor said subsequent Advance.

16. **Changes in Credit Limit and Freezing of Loan Account.** Bank may increase the Credit Limit at any time without notice. Bank may temporarily prohibit additional Advances or reduce the Credit Limit in the following situations: (i) the value of the Real Property declines significantly below its appraised value for purposes of the Account; (ii) Bank reasonably believes that Borrower will be unable to fulfill the repayment obligations under the Account because of a material change in financial circumstances; (iii) Borrower is in default of any obligation under this Agreement; (iv) action by a governmental body precludes Bank from imposing the Annual Percentage Rate provided for in this Agreement; (v) action by a governmental body adversely affects the priority of Bank's security interest in the Real Property to the extent that the value of the security interest is less than 120% of the Credit Limit; (vi) Bank is notified by its regulator that continued Advances constitute an unsafe and unsound practice; (vii) the maximum interest rate hereunder is reached. If Bank temporarily prohibits additional Advances on the Account and/or reduces the Credit Limit based upon any of the foregoing situations, Bank will provide Borrower with written notice of said action not later than three business days after the action is taken. The notice will explain how Borrower can request

reinstatement of credit privileges.

**17. Change of Terms.** In addition to changes described elsewhere in this Agreement, Bank may (i) change the index and margin, as permitted by federal law, if the original index is no longer available. The new index and margin will result in an Annual Percentage Rate comparable to the one in effect at the time the original index became unavailable; (ii) make a specified change if Borrower agrees to it in writing at that time; (iii) make a change that will unequivocally benefit Borrower throughout the term of this Agreement; or (iv) make an insignificant change to terms.

**18. Notification.** Borrower will notify Bank promptly in writing of any change of address, any change in financial condition, or of any unauthorized use of the Account. As a material obligation under this Agreement, Borrower will update the information set forth in the Account application and furnish Bank with additional financial aid or other information as it may request. Borrower will immediately telephone Bank and confirm by letter if any Access 3 Checks or the Access 3 Credit Card are lost or stolen, and upon failure to do so, Borrower will assume full responsibility if Bank should, without negligence, pay such Access 3 Checks. At the time of this Agreement, the telephone number at Bank for reporting lost or stolen checks is (888) 461-8862. Borrower's liability for the unauthorized use of the Access 3 Credit Card shall not exceed the lesser of $50.00 or the amount of money, property, labor or services obtained by the unauthorized use of the Access 3 Credit Card prior to the time Borrower notifies Bank of the loss or theft of the card. Bank shall not be responsible to Borrower in any manner if anyone refuses to accept an Access 3 Check as a manner of payment.

**19. Default and Cancellation.** In the event Borrower fails to make any required payment on the Account when due; or if Borrower acts or fails to act in a way that adversely affects the Real Property, or any right of Bank in such Real Property (including but not limited to, the destruction, illegal use or failure to maintain the Real Property such that it adversely affects Bank's security interest in the Real Property); or if the Real Property is foreclosed on by a prior lienholder; or if the title to the Real Property is taken through eminent domain; or if Borrower commits fraud or makes a material misrepresentation relative to the Agreement or any other instrument, document, transfer, conveyance, assignment or application provided in connection with the Account; or if any Borrower dies, then Bank may cancel the Account without notice, and shall have no further obligation to make any Advances against the Account, and any balance outstanding shall, without notice or demand, at Bank's option, become immediately due and payable. In the event the collection of the outstanding balance is referred to any attorney, Borrower will pay the costs of collection including 15% of the principal and interest as attorney's fees. Upon default, Bank may exercise any and all rights contained in this Agreement, the Security Instrument or any other rights provided to Bank by law, but not limited to, the right to sell the Real Property at a public auction or as provided by law. Bank may waive or decline to enforce any of its rights under this Agreement at any time without affecting any of its other rights under this Agreement. Furthermore, upon default, Borrower's authorization to initiate Advances on the Account shall terminate and Bank may return any Access 3 Checks unpaid or decline Access 3 Credit Card charges or cash advances, without liability to Borrower and without prior notification.

**20. Termination of Account.** Any Borrower may terminate the Account at any time by giving written notice to Bank. In the event the Account is terminated, Bank at its option, may allow Borrower to continue to make regular monthly payments, or to restructure the indebtedness owed pursuant to this Agreement in a mutually agreeable manner, or may require Borrower to pay the entire unpaid balance in full. Upon Account termination, this Agreement shall remain in full effect (except for the obligation of Bank to make Advances) until all amounts which Borrower may owe Bank pursuant to this Agreement have been paid in full. At the request of Bank, Borrower will surrender to Bank the unused Access 3 Checks and any Access 3 Credit Cards for the Account.

**21. Joint Account.** If more than one person has signed this Agreement, or if an additional borrower is added to the Account at a later date, all obligations and liabilities shall be joint and several. All Borrowers are jointly and severally liable for all indebtedness in connection with this Account regardless of whether said indebtedness arises by use of Access 3 Check and/or Access 3 Credit Card issued to either one or both of the Borrowers, or by overdraft protection, fees, and charges. If this is a joint account, Bank may honor a request from either of the Borrowers to prohibit and/or dishonor further Advances.

**22. Miscellaneous.** If more than one borrower signs this Agreement, all such references shall also refer to and include all borrowers signing below and/or persons who may subsequently sign an Agreement in connection with this Account and any persons to whom an Access 3 Credit Card has been or may be issued in the future, in connection with this Account and/or any person(s) using said Credit Card. Borrower cannot transfer the Account balance or any rights under this Agreement. Bank may, without further notice to Borrower, transfer all or a part of the Account balance and Bank's rights under this Agreement to another person or entity. As material obligations under this Agreement, the Real Property will be used as Borrower's primary residence and will not be used as rental property and that Borrower will not borrow additional funds from any party holding a first mortgage on the Real Property. This Account is opened by Bank with the expectation that Borrower will request Advances hereunder.

**23. Real Property Clarification.** Notwithstanding anything to the contrary herein, "Real Property" may also include other real property without being limited to the Borrower's residence, principal residence or primary residence.

By signing below Borrower makes the covenants, promises and agreements set forth in this Agreement and acknowledges receipt of a copy of this Access 3 Equity Line Account Agreement and Disclosure Statement.

Borrower _____     Borrower _____
**ROBIN F NAVAMUEL**

Date _____     Date _____

**Billing Rights**

**Keep this Notice for Future Use**

This notice contains important information about Borrower's rights and responsibilities under the Fair Credit Billing Act.

**Notify Bank in Case of Errors or Questions About the Bill.**

If Borrower thinks the bill is wrong, or needs more information about a transaction on the bill, Borrower will write Bank on a separate sheet at the address below:

> SunTrust Bank
> P.O. Box 305110
> CreditLine Operations
> Nashville, TN 32898-4911

Borrower will write as soon as possible. Bank must hear from Borrower no later than sixty (60) days after Bank sent the first bill on which the error or problem appeared. Borrower can telephone Bank, but doing so will not preserve Borrower's rights.

In the letter, Borrower will give Bank the following information:

> Borrower's name and account number.
> The dollar amount of the suspected error.
> A description of the error and explain, if Borrower can, why he believes there is an error.
> If Borrower needs more information, he will describe the item he is not sure about.

If Borrower has authorized Bank to pay his bill automatically from his checking or savings account, Borrower can stop the payment on any amount that he thinks is wrong. To stop payment, the letter must reach Bank three (3) business days before the automatic payment is scheduled to occur.

**Borrower's Rights and Bank's Responsibilities After Bank Receives Written Notice**

Bank must acknowledge Borrower's letter within thirty (30) days, unless it has corrected the error by then. Within ninety (90) days, Bank must either correct the error or explain why it believes the bill was correct.

After Bank receives the letter, it cannot try to collect any amount Borrower has questioned, or report Borrower as delinquent. Bank can continue to bill Borrower for the amount questioned, including finance charges, and it can apply any unpaid amount against the credit limit. Borrower does not have to pay any questioned amount while Bank is investigating, but is still obligated to pay the parts of the bill that are not in question.

If Bank finds that it made a mistake on the bill, Borrower will not have to pay any finance charges related to any questioned amount. If Bank did not make a mistake, Borrower may have to pay finance charges, and will have to make up any missed payments on the questioned amount. In either case, Bank will send Borrower a statement of the amount owed and the date that it is due.

If Borrower fails to pay the amount that Bank thinks that Borrower owes, it may report him as delinquent. However, if Bank's explanation does not satisfy Borrower and he writes to Bank within ten (10) days telling it that he still refuses to pay, Bank must tell anyone it reports Borrower to that he has a question about the bill. And, Bank must tell Borrower the name of anyone it reported him to. Bank must tell anyone it reports Borrower to that the matter has been settled between Borrower and Bank when it finally is.

If Bank does not follow these rules, it cannot collect the first $50.00 of the questioned amount, even if the bill was correct.

**Special Rules for Credit Card Purchases**

If Borrower has a problem with the quality of property or services that he purchased with a credit card, and has tried in good faith to correct the problem with the merchant, Borrower may have the right not to pay the remaining amount due on the property or service. There are two limitations on this right:

(a)   Borrower must have made the purchase in his home state or, if not within his home state, within one hundred (100) miles of his current mailing address; and

(b)   The purchase price must have been more than $50.00.

The limitations do not apply if Bank owns or operates the merchant, or if it mailed Borrower the advertisement for the property or services.

SunTrust Banks, Inc. Copyright 1996