IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | : Chapter 11 |
| **NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,**[1] | : Case No. 07-10416 (KJC) |
| | : Jointly Administered |
| **Debtors.** | : |
| | : Objection Deadline: April 30, 2008 at 4:00 p.m. |
| | : Hearing Date: May 7, 2008 at 10:00 a.m. |

**MOTION OF DEBTORS FOR AN ORDER AUTHORIZING AND
APPROVING ASSUMPTION OF AT&T AGREEMENT AS MODIFIED**

New Century Financial Corporation ("NCF"), a Maryland corporation, New Century TRS Holdings, Inc. ("New Century TRS"), a Delaware corporation, and their direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors") by and through their undersigned counsel, hereby submit this motion pursuant to section 365(a) of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order authorizing the Debtors to assume the executory contract with AT&T Corp., as modified (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

## I.   JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California Corporation.

2. The basis for the relief requested herein is section 365 of the Bankruptcy Code.

## II. BACKGROUND

3. NCF, a Maryland corporation and publicly owned real estate investment trust, was one of the largest specialty mortgage finance businesses in the United States. Through its subsidiaries and its primary holding company subsidiary, New Century TRS, NCF originated, purchased, sold, and serviced mortgage loans nationwide.

4. On April 2, 2007 (the "Petition Date"), the Debtors filed the instant petitions for relief. The Debtors commenced these chapter 11 cases to pursue an expedited sale of their businesses and the Debtors' other assets for the benefit of the Debtors' stakeholders.

5. Prepetition, the Debtors contracted with AT&T Corp. ("AT&T") to provide the Debtors with a wide range of telephone services, including local dial tone, long distance and internet services. The Debtors' prepetition contract with AT&T is referred to as "Master Agreement No. 122399" (the "Master Agreement") and has been amended and supplemented numerous times.

6. The winddown of the Debtors' businesses have reduced the estates' need for AT&T services to specific Local Exchange and Business Network functions. Post-petition, the Debtors have negotiated with AT&T to reduce the scope of services provided under the Master Agreement, and various supplements thereto, and AT&T has agreed to continue to provide the services needed pursuant to the pricing schedules attached hereto as <u>Exhibit A</u> (the "Revised Agreement"). The terms and conditions in the Master Agreement and the Revised Agreement shall be the only remaining agreement, pricing schedule or addendum between the parties and supercedes all prior agreements.

7. Pursuant to the Debtor's agreement with AT&T, the Debtors shall pay a cure amount to AT&T in the amount of $24,000 (the "Cure Amount") upon assumption of the Master Agreement and modification thereof pursuant to the Revised Agreement. The Cure Amount is the agreed upon amount outstanding prepetition for the portion of the services under

the Master Agreement, and any supplements or addendums entered into prepetition, that the Debtors need going forward during their wind-down. AT&T's claims for other amounts owed prepetition for services AT&T will no longer provide to the Debtors will remain prepetition general unsecured claims. In addition, amounts owed postpetition pursuant to the Master Agreement and any supplements or addendums thereto for all services provided postpetition by AT&T, not just those to be provided going forward, will be entitled to treatment as administrative priority claims. The parties have been and will continue to exchange information in an attempt to reconcile and agree to the amounts owed for prepetition and postpetition services, other than the Cure Amount.

8. The Revised Agreement may be terminated by the Debtors upon thirty (30) days written notice after the Debtors reach the $3,000 MARC.[2]

### III.   RELIEF REQUESTED

9. By this Motion, the Debtors request the entry of an order, pursuant to section 365(a) of the Bankruptcy Code, authorizing and approving, but not directing, the Debtors' assumption of the Master Agreement with AT&T, as modified pursuant to the Revised Agreement.

### IV.   BASES FOR REQUESTED RELIEF

10. Pursuant to Bankruptcy Code Section 365(a), a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" upon the approval of the court. 11 U.S.C. § 365(a); See University Medical Ctr. v. Sullivan (In re University Medical Ctr.), 973 F.2d 1065, 1075 (3rd Cir. 1992). A debtor should be authorized to assume an executory contract or unexpired lease where it appropriately exercises its "business judgment." See, e.g., In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); In re Sharon Steel Corp., 872 F.2d 36, 39-40 (3rd Cir. 1989); See also,

---

[2] MARC is the minimum annual revenue commitment. Essentially, it is the amount of revenue that a customer agrees that they will reach during a year and if it does not meet such amount, shortfall charges will be incurred.

Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp., 180 B.R. 83, 88 (D. Del. 1995); In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2nd Cir. 1993). A debtor exercises appropriate business judgment absent bad faith or an abuse of business discretion. See, e.g., In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994); In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); In re Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985). Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. See In re III Enterprises, Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment -- a standard which we have concluded many times is not difficult to meet . . . . We will not substitute our own business judgment for that of the Debtor, nor will we disturb its decision to reject the [contract] unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.")(citations omitted).

11. Section 365(b)(1) permits assumption only if the debtor cures all defaults under an executory contract or unexpired lease and provides the non-debtor party to the contract with adequate assurance of future performance. See 11 U.S.C. §365; See also, Pieco Inc. v. Atlantic Computer Systems, Inc., 173 B.R. 844, 857 n.18 (Bankr. S.D.N.Y. 1994); Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309-10 (5th Cir. 1985). The meaning of the phrase "adequate assurance" depends upon the facts and circumstances of each case, but must be given practical pragmatic construction. See, e.g., Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538-539 (Bankr. D. N.J. 1988) (phrase should be given practical, pragmatic construction based on facts and circumstances of each case); In re Great Northwest Recreation Ctr., Inc., 74 B.R. 846, 854 (Bankr. D. Mont. 1987) (same); In re Natco Industries, Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (same). However, it is clear an absolute guarantee of performance is not required. In re Bon Ton Rest.

& Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance").

12. The Debtors believe that the assumption of the Revised Agreement represents an appropriate exercise of the Debtors' business judgment and will greatly benefit the Debtors' estates. The Revised Agreement modifies a pre-existing contractual arrangement between AT&T and the Debtors, reducing not only the amount that would be owed to assume the entire agreement but also the scope of the pre-petition agreement to cover only those services the Debtors will need during the wind-down phase.

13. As consideration for the reduction of services, AT&T will receive a cure amount related only to services under the Revised Agreement. The Debtors and AT&T agreed to the Cure Amount associated with the limited scope of services under the Revised Agreement to equal $24,000. The Debtors will not pay cure amounts for any other services previously provided by prepetition contracts with AT&T including other services under the Master Agreement.

## V.   NOTICE

14. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware, (2) the Examiner; (3) the Official Committee of Unsecured Creditors; and (4) all parties entitled to notice. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VI.   NO PRIOR REQUEST

15. No prior request for the relief sought in this Motion has been made to this or any other court.

RLF1-3266787-1

**WHEREFORE,** the Debtor respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B: (i) authorizing and approving the Debtors' assumption and assignment of the Leases and (ii) granting such other and further relief as the Court may deem proper.

Dated: March 27, 2008
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

-and-

Shannon Lowry Nagle
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION