# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-10416 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: May 7, 2008 at 10:00 a.m. |
| | Objection Deadline: April 30, 2008 at 4:00 p.m. |

## DEBTORS' MOTION TO APPROVE SETTLEMENT BETWEEN THE DEBTORS AND THE RUBIO CLASS PLAINTIFFS AND GRANT RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move this Court, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order (i) approving a settlement among the Debtors and Carl Vernon, Frank Nese, Wallace Hayes, Steve Cassill and Nicole Haggard (the "Individual Defendants" and together with the Debtors, the "Defendants") on the one hand and, on the other, Daniel Rubio ("Rubio"), John Hicks ("Hicks") and David Vizcarra ("Vizcarra") on behalf of all persons who have been employed by Defendants in the State of California from March 21, 2001, through the date the United States

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation.

District Court for the Central District of California (Southern Division) (the "California District Court") preliminary approves the settlement and who held the positions of Loan Advisor and Loan Officer (including Assistant, Senior, Junior, and Accelerated Loan Advisors and/or Loan Officers) and/or similar titles or titles with similar job duties (collectively, the "Rubio Class Plaintiffs" and together with the Defendants, the "Parties") and (ii) granting related relief (the "Motion"). The Settlement is memorialized in a *Memorandum of Understanding* dated March 28, 2008 (the "MOU"), a copy of which is attached hereto as Exhibit A. The MOU is "subject to approval by the California District Court and this Court, which counsel and parties agree to recommend in good faith, and with the provision that the MOU will be further memorialized in a Joint Stipulation and Settlement." See Ex. A at introductory paragraph. The MOU and the Joint Stipulation and Settlement which will supplement it are collectively referred to herein as the "Settlement Agreement."

In support of the Motion, the Debtors respectfully represent to the Court as follows:

## General Background

1. On April 2, 2007 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Rubio Litigation and Proofs of Claim

4. On March 21, 2005, Daniel Rubio ("Rubio") filed a purported class action complaint against Debtor New Century Mortgage Corporation ("NCMC") in Orange County Superior Court, Case No. 04CC00063, alleging various violations of California wage and hour laws. After overtime claims arising under the Fair Labor Standards Act ("FLSA") were added, NCMC removed the case to the United States District Court for the Central District of California ("California District Court"), Case No. SACV-06-811 (AJWx) (as amended, the "Rubio Ligitation").

5. Subsequently, two additional class members were added as named plaintiffs: John Hicks and David Vizcarra. Plaintiffs have amended their complaint several times, and NCMC has succeeded in obtaining orders dismissing and/or striking certain counts, including Plaintiffs' request for punitive damages. However, other causes of action were permitted to proceed. Thus, the current iteration of the Complaint (the Fifth Amended Complaint) alleges the following causes of action: (1) recovery of unpaid overtime wages; (2) failure to pay overtime wages pursuant to the FLSA; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) denial of overtime compensation [FLSA 29 USC § 207, 211(c), 216(b)]; (6) illegal record keeping; (7) violations of California Labor Code § 203; (8) unfair business practices; (9) misrepresentation; (10) promissory estoppel; (11) wrongful failure to enforce corporate policies; and (12) unfair business practices. The Fifth Amended Complaint also added the

3

RLF1-3266259-2

Individual Defendants, who are former officers or employees of the Debtors, as defendants to certain counts.

6. The California District Court has not yet considered whether a class should be certified because the Debtors' chapter 11 cases were filed while the parties were still taking discovery on class certification issues. The Debtors believe they would have had strong defenses in opposing class certification, but of course there could be no assurances. On July 13, 2007, this Court entered an order approving a stipulation between the Parties, authorizing the filing of a class proof of claim but reserving the Debtors' right to oppose class certification.

7. Thereafter, on behalf of the proposed class, Plaintiffs timely filed three separate but identical proofs of claim against Debtors Home123 Corporation ("Home123"), New Century Financial Corporation ("NCFC") and NCMC, each in the amount of $63,950,300.63 as a general unsecured claim and an additional $3,164,827.50 as a priority unsecured claim under 11 U.S.C. § 507(a)(4) (the "Proofs of Claim"). The Debtors object to the proofs of claim, contesting (a) liability, (b) class certification and therefore the claim amount, (c) that damages could be established in the amount sought in the proofs of claim; and (d) the alleged priority unsecured status of the Proofs of Claim.

### The Settlement

8. Pre-petition, the Parties mediated the Rubio Litigation without success. However, on March 1 and 2, 2008, the Defendants, the Official Committee of Unsecured Creditors (the "Committee") and the Rubio Class Plaintiffs mediated the Rubio Litigation and the Proofs of Claim a second time before David Stratton, Esq. of Pepper Hamilton LLP. While the parties left the mediation without a settlement, they continued to negotiate (and involve Mr. Stratton) for more than a week thereafter, ultimately reaching the Settlement Agreement.

9. In an effort to fully and finally resolve certain disputes between the Parties, the Parties have entered into the Settlement Agreement. The most salient terms of the Settlement Agreement are as follows:[2]

> **Conditional Class Certification.** The Parties will stipulate that the class may be certified for settlement purposes only. The Parties agree that certification for settlement purposes is in no way an admission that class certification is proper under the more stringent standard applied for litigation purposes. The Settlement Class shall be defined as all persons who have been employed by Defendants in the State of California from March 21, 2001, through the date the Court preliminary approves the settlement of this action and who held the positions of Loan Advisor and Loan Officer (including Assistant, Senior, Junior, and Accelerated Loan Advisors and/or Loan Officers) and/or similar titles or titles with similar job duties.
>
> **Allowance in Part of Proofs of Claim.** On account of the Class Proof of Claim asserted against NCMC the Class shall have an allowed priority unsecured claim of $330,000.00 and an allowed general unsecured claim in the amount of $10,800,000.00. On account of the Class Proof of Claim asserted against Home123, the Class shall have an allowed priority unsecured claim in the amount of $220,000.00 and an allowed general unsecured claim in the amount of $7,2000,000.00. All other portions of the Proofs of Claim against NCMC and Home123 shall be disallowed, and the Proof of Claim asserted against NCFC shall be disallowed in its entirety. The individual proofs of claim filed by the three class representatives shall be disallowed in their entirety, and the class representatives shall be entitled to a portion of the Maximum Payments as Class Members. Subject to Court approval, except for those who opt out of the settlement, all other Class Members' proofs of claim that are reasonably related to the settled claims will be disallowed, effective one day after the last day on which Class Members may opt out.
>
> **Release of Defendants.** The Class Members, excluding those who submit timely and valid Exclusion Forms, shall fully and finally release and discharge Defendants and their former and present parents, subsidiaries and affiliated corporations and its present and former officers (including but not limited to all other defendants in this case), directors, employees, consultants, attorneys, partners, shareholders and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all applicable California wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising during the class period for the Class Members based on the facts alleged in the Lawsuit or

---

[2] The terms set forth herein are intended only as a summary of the terms of the Settlement Agreement. This Motion is qualified in its entirety by the terms of the Settlement Agreement. In the event of any inadvertent discrepancy, the terms of the Settlement Agreement are intended to govern.

reasonably related to those alleged in Plaintiffs' lawsuit under both California law and the FLSA, except that this release does not release any claims class members may have under the federal WARN Act, including but not limited to, the claims alleged in <u>Austin v. New Century TRS Holdings, Inc., et. al.</u>, pending in this Court as Adv. No. 07-50970 (KJC).

**Payments to Class Representatives.** Plaintiffs' counsel will request, and Defendants and their counsel will not oppose, payment (from the distributions on the allowed claims) to each of the class representatives, Rubio, Hicks and Vizcarra, in addition to whatever payment they are otherwise entitled to receive as Class Members, a service payment from the Maximum Payments in the amount of $20,000.00 to Rubio, $10,000.00 to Hicks, and $10,000.00 to Vizcarra. The parties stipulate and agree that these are reasonable amounts. The class representatives will be required to execute a general release of all known and unknown claims they may have against Defendants based on their employment with Defendants. The class representatives will be issued an IRS Form 1099 for their service payment.

### Requested Relief

10. By this Motion, the Debtors seek the entry of an order approving the Settlement Agreement and certain other related relief pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

11. Also, in order to effectuate the Settlement Agreement, the California District Court must still approve it pursuant to Federal Rule 23. Accordingly, the Debtors request that this Court also lift the automatic stay solely for the purpose of allowing the Parties to take the necessary actions under Federal Rule 23 in order to seek the California District Court's approval.

### Bases for Relief

**A. The Court Should Approve The Settlement Agreement Under Rule 9019 Because It Is In The Best Interest Of The Debtors, Their Creditors And Their Estates.**

12. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Code section 363(b) provides, in relevant part, that a debtor in possession "after notice and hearing, may use, sell, or

lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The standard for approval of the sale and use of property of the estate under section 363(b) in this Circuit is whether the debtor can demonstrate a sound business justification for the proposed transaction. Dai-ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions.") (citing Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test in the context of a sale of assets under § 363(b))); In re Stroud Food, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) (adopting Lionel in this District in the context of a sale of assets).

13. Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996); In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

14. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of

the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also Depositor v. Mary M. Holloway Found., 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W. T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citing Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

15. The standard set forth above is plainly met in this case. The Settlement Agreement will allow the Debtors to put the contentious, complex and burdensome litigation associated with their dispute with the Rubio Class Plaintiffs -- which has already seen the Debtors expend hundreds of thousands of dollars in fees which could easily double absent a settlement, given the fact that the parties would still have to litigate class certification as well as incur trial costs and expenses -- behind them and focus on confirming the Plan and making distributions thereunder for the benefit of their creditors. Moreover, while the Debtors vigorously dispute allegations in the Complaint and the appropriateness of class certification, Plaintiffs certainly have come forward with some evidence that they contend supports their claims and have defeated certain motions for summary adjudication. Additionally, because these are employee claims relating, in part, to wages, and the class period stretches into the 180 days before the petition date, there is a risk that any adverse judgment could have resulted in a large priority claim pursuant to 11 U.S.C. § 507.

16. Accordingly, the Debtors believe that this represents a fair and reasonable settlement of their dispute with the Rubio Class Plaintiffs because the Settlement Agreement allows the Debtors to avoid the uncertainty expense, and delay associated with litigating the dispute. For these reasons, the Debtors believe that the resolution contained in the Settlement Agreement is in the best interests of their estates and should be approved by this Court.

### B. The Court Should Grant Relief From The Stay Under Bankruptcy Code Section 362(d) For The Limited Purpose Of Allowing The California District Court To Approve The Settlement Agreement Pursuant to Federal Rule 23.

17. Bankruptcy Code section 362(a) enjoins all entities from continuing a pre-petition proceeding to recover a pre-petition claim against the Debtors. The automatic stay thus precludes the Rubio Class Plaintiffs from proceeding with their class action in the California District Court, including seeking approval of the Settlement Agreement in accordance with Federal Rule 23.

18. Bankruptcy Code section 362(d) requires the Court to modify the automatic stay for "cause." Section 362(d) does not define "cause," thus "leaving courts to consider what constitutes cause based on the totality of circumstances in each particular case." Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1991); see also International Business Machines v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.), 938 F.2d 731, 735 (3d Cir. 1991) ("'cause' as used in § 362(d) has no clear definition and is determined on a case-by-case basis").

19. Here, the totality of the circumstances indicates that it is appropriate to lift the stay for cause for the limited purpose of allowing the Rubio Class Plaintiffs to seek the California District Court's approval of the Settlement Agreement.[3] Cause exists because the

---

[3] The Debtors seek only limited modification of the stay solely to obtain the California Court's approval of

Debtors, the Committee and the Rubio Class Plaintiffs all agree that the settlement is in the best interests of the estate and the class, and Federal Rule 23(e) provides that class action claims may only be settled with court approval. In addition, Federal Rule 23(e) requires the California District Court to oversee the giving of notice to all class members who are to be bound by the settlement. Thus, even if this Court were to approve the Settlement Agreement pursuant to Bankruptcy Rule 9019, federal law would still require the parties to obtain the California District Court's approval as well. Without such approval, there can be no settlement.

20. Moreover, the Settlement Agreement will be explicitly conditioned upon the California District Court's approval of the form of class notice and final approval of the Settlement Agreement. None of these conditions will be satisfied unless the Court grants relief from the automatic stay for the purpose of allowing the California District Court to consider and approve of the Settlement Agreement.

21. Limited modification of the automatic stay is therefore necessary in order to comply with the class action settlement procedures set out in Federal Rule 23. The Debtors, the Plaintiffs, and the Committee agree that the stay should be modified for that particular purpose.

### Notice

22. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Official Committee of Unsecured Creditors, (iii) the Examiner appointed in these Chapter 11 cases, (iv) counsel to the Rubio Class Plaintiffs, (v) the Individual Defendants, and (vi) all parties which have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be given.

---

the Revised Settlement Agreement. In the unlikely event that the California Court denies the settlement, the stay would remain intact.

23. No previous motion for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B: (i) approving the terms of the Settlement Agreement and (ii) granting the related relief as set forth in the Motion.

Dated: March 28, 2008
      Wilmington, Delaware

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Suzzanne S. Uhland
Ben H. Logan
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION