# EXHIBIT A

Westlaw.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 1780329 (Bkrtcy.E.D.Pa.)
(Cite as: Not Reported in B.R.)

Page 1

In re L. Washington & Associates, Inc.
Bkrtcy.E.D.Pa.,2000.
Only the Westlaw citation is currently available.
United States Bankruptcy Court, E.D. Pennsylvania.
In re L. WASHINGTON & ASSOCIATES, INC., Debtor.
No. 00-12173 DWS.

Nov. 22, 2000.

*MEMORANDUM OPINION*

SIGMUND, Bankruptcy J.

*1 Before the Court is the Debtor's Objection to Allowance of Amended Proof of Claim filed by Atlantic Security Guard, Inc. ("Atlantic") in the amount of $331,302.23. An evidentiary hearing was held on September 5, 2000 during which the Debtor's principal, Langston Washington ("Washington") testified as to the Debtor's relationship with Atlantic. Stephen Robinson ("Robinson"), the President and Chief Executive Officer of Atlantic, also testified to the relationship but acknowledged little personal knowledge about the claim at issue which was apparently prepared by some person unknown to him.[FN1] Washington, on the other hand, complained that he was unable to refute the amount of the claim with particularity as he had never been given the support documentation [FN2] for the charges that were presented in the Summary of Account included in the proof of claim. Accordingly, I continued the hearing on the Objection to October 12, 2000 and directed Atlantic to provide the accounting that would enable its claim to be understood.

> FN1. To explain his ignorance of the basis of his claim, Robinson noted that his financial person was no longer employed by Atlantic.

> FN2. Indeed he complained that Atlantic was required to provide this information under the management agreement which is the contractual basis of the claim. *See* Exhibit D-1 ¶ 5 (9/15/00). A series of letters were introduced evidencing Washington's persistent and futile efforts to secure an accounting of the charges imposed by Atlantic. *See* Exhibits D-2 through D-11 (9/15/00). It is readily apparent that Debtor has been trying without success to fix its obligation to Debtor since early in the contractual relationship.

At the continued hearing, Atlantic's counsel appeared but neither Robinson nor any other representative of Atlantic was present to testify in support of the claim. In the period between the first and second hearings, the proof of claim was amended to include the itemization of charges for all the months covered by the claim.[FN3] With this data, Washington prepared an analysis, Exhibit D-1, utilizing the information provided in the proof of claim and the parties' written agreement, and further testified in opposition to the claim. On the basis of the record of these two hearings, the Objection is sustained. Atlantic shall be allowed a secured claim of $25,087.[FN4]

> FN3. The original proof of claim included a Summary of Account for July 1998 through October 1999 but included only a breakdown of the aggregate monthly charge for July through October 1998. Presumably in going back to add the supporting analysis for all months as demanded by Debtor, the claim preparer noted certain inaccuracies (largely attributed to rounding) between its Summary of Account and the detail. There is also a reduction in the interest on arrears which appears to reflect a recalculation of that number. The total claim was reduced from $332,873.08 to $331,302.23. *Compare* Exhibit C-1 *with* Exhibit C-2. The form is signed by Brian H. Smith, Esquire. As Atlantic had no representative at the second hearing, no one testified as to the review and recalculation of the claim which appears to represent an administrative and mathematical exercise rather than any review of the appropriateness of the charges.

> FN4. The Debtor acknowledged Atlantic's valid security interest. Moreover, there is no dispute that the value of its collateral is at least the amount of the claim as allowed herein so Atlantic is fully secured.

BACKGROUND

Debtor is in the business of providing security guards

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 1780329 (Bkrtcy.E.D.Pa.)
(Cite as: Not Reported in B.R.)

Page 2

services. In August 1997, Debtor entered into a management agreement (the "Agreement") with Atlantic whereby the latter would assist with the preparation of payroll, the scheduling of jobs, billing and other management services. Exhibit D-1 (9/15/00). Debtor would provide Atlantic with the hours worked by its employees, and Atlantic would utilize that information to prepare customer invoices. Payment of the invoices would be made to the Atlantic lockbox from which Atlantic would be responsible for paying payroll and local, state and federal taxes. Atlantic was also entitled to a fee calculated as 4% of gross billings. The Agreement contemplated a weekly cash report from Atlantic accompanied by the balance of the collections in excess of charges. In the event of a deficiency, Atlantic would extend a loan for which it was entitled to interest.

The arrangement apparently worked well, being extended after the first contractual year, until March 1999 when Atlantic stopped paying local and state taxes and later federal taxes. Reporting was being done on a monthly basis, and Debtor wanted it weekly. The Debtor's accountants were unable to generate financial statements and properly prepare tax returns because of the deficiency in the financial information. W-2 forms were either missing or incorrect. Moreover, Atlantic was imposing additional and unexplained charges and had increased the interest rate. The relationship between the parties further deteriorated, and their charges and countercharges are the subject of an adversary proceeding filed by the Debtor against Atlantic, Adv. No. 00-391, in which it seeks affirmative relief for damages arising from the Agreement.

*2 At issue in this contested matter are the charges Atlantic imposed under the Agreement which was terminated in October 1999 and which forms the basis of its proof of claim for $331,302.23. This amount is explained on Supplement No. 1 which reads as follows:

**ARREARAGES IN PAYMENTS

| | |
|---|---:|
| Outstanding Balance as of 10/24/99 (per attached Exhibit "C") | $249,998.00 |
| Interest per Paragraph 8(e) of Management Agreement (Exhibit "D") 10/24/99-2/22/00 @ $72.92/diem * | 8,896.24 |
| Total Prepetition Amount Due/Payoff as of 2/22/00 | $258,894.24 |
| Interest on Prepetition Arrearage Declining Balance for 5 Years @ Interest Rate per Management Agreement * | 72,407.99 |
| TOTAL PREPETITION ARREARS | $331,302.23 |

FN* Annual interest rate=Summit Bank prime rate of 9% plus 1.5%, or 10.5% per annum.

In support of the claim, Atlantic attached documentary evidence of the security interest granted and the contractual terms of the parties' relationship as set forth in the Agreement as well as an "Analysis of LWA Account Activity & Receivable" (the "Atlantic Analysis").

DISCUSSION

Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes *prima facie* evidence of the validity and amount of the claim. *Amatex Corporation v. Aetna Casualty & Surety Co., et al.,* 107 B.R. 856, 870 (E.D.Pa.1989); *In re Wall to Wall Sound & Video, Inc.,* 151 B.R. 700, 701 (Bankr.E.D.Pa.1993). Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force. *In re Wells,* 51 B.R. 563, 566 (D.Col.1985). The objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim. *Id.* "The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2000 WL 1780329 (Bkrtcy.E.D.Pa.)
(Cite as: Not Reported in B.R.)

Page 3

objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claims legal sufficiency." *In re Allegheny International, Inc.,* 954 F.2d 167, 173 (3d. Cir.1992). If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the Claimant. *Allegheny International,* 954 F.2d at 174; *Wall to Wall Sound,* 151 B.R. at 701. The threshold question then is whether the Debtor has rebutted the otherwise *prima facie* effect of the proof of claim.

I will begin, as did the Debtor, by addressing the principal balance component of $249,245.00. Washington starts his analysis, as did the Atlantic Analysis, with the cumulative obligation as of June 1998. That number represents the contract experience from its inception in August 1997 through June 1998. Atlantic's beginning number is $159,371.00.[FN5] The basis for that number is not stated as the Atlantic Analysis only starts at July 1998. Washington, on the other hand, uses a starting balance of $206,611.70, thus admitting to an indebtedness greater than claimed by Atlantic. Given that use of this number benefits Atlantic, I will accept Washington's figure. Using the same methodology as Atlantic, Washington accepts the line items for payroll, taxes, other expenses and management fees (the debits) and cash receipts and credits for services rendered (the credits) as reflected in the Atlantic Analysis. He includes interest on the outstanding indebtedness calculated at 10% per annum as a further debit. These numbers were then entered into an Excel spread sheet to calculate the Debtor's indebtedness to Atlantic as of the termination of the contract. That number is $25,087.98, not $249,998.00 as claimed by Atlantic.

> FN5. Actually there is no beginning number in the Amended Proof of Claim as Atlantic failed to include a Summary of Account as it did in the Proof of Claim. Thus, the $159,371.00 is derived from Exhibit C-1.

*3 Washington identified certain charges that were included in the Atlantic Analysis that he did not include in his analysis because of his view that they were not warranted under the Agreement. Atlantic charged the Debtor $808.98 monthly for medical insurance for a former Atlantic employee who was never employed by the Debtor and $543.91 for an automobile lease for another employee who worked for Debtor briefly but principally for Atlantic. Debtor never agreed to provide an automobile to this individual. From July 1998 to March 1999, Atlantic charged Debtor a premium of $1 per hour worked by his employees based on its unilateral view that it should share a profitable contract Debtor had acquired. Debtor did not agree to these charges that ran about $6,000 to $8,000 per month, and they are not contemplated by the Agreement. Additionally in May and June 1999, the other charges cease to be identified separately and specifically in the Analysis but rather are imposed in the lump sum amount of $20,995 and $23,050 respectively. The total of these "other charges" challenged by Debtor for the period for which itemization was provided, *i.e.* July 1998 through October 1999, was approximately $121,046.

Debtor also contests the interest charges imposed as inconsistent with the Agreement. While there is no reference to interest in the Agreement, there is a provision for fees. It states:
Atlantic shall charge a financing fee for total uncollected account receivable resulting from billings at an annual rate equal to the Base Rate reported by Summit bank or its successor on Monday of each week plus one and one-half (1.5%) percent.[FN6] The applicable financing fee shall be pro-rated for each one week period and applied toward the total uncollected accounts receivable during that week.[FN7]

> FN6. According to Washington, the applicable Summit rate was 8.5% so that the correct contractual interest is 10%. Atlantic, on the other hand, references a 9% Summit rate and the utilization of a 10.5% contract rate in its proof of claim. Since I have no basis to conclude which, if either, is correct, I will rely on the applicable burden of proof and utilize the Debtor's testimony on this point.

> FN7. The Agreement further provides that if the account is uncollected after 120 days, the amount will be charged back to the Debtor and Atlantic will cease all collection activities. Agreement ¶ 8(f).

Agreement ¶ 8(e). The Atlantic Analysis reflects two charges for interest: interest on advances and interest on accounts receivable. The Debtor complains that Atlantic is double dipping. However, on scrutiny of the charges for interest on advances, it is apparent that these are really *de minimus* for most quarters that they appear on the statement and are more than offset by an unexplicable credit to this category in September 1999. With respect to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 07-10416-BLS    Doc 5735-1    Filed 04/04/08    Page 5 of 6

Not Reported in B.R.
Not Reported in B.R., 2000 WL 1780329 (Bkrtcy.E.D.Pa.)
(Cite as: Not Reported in B.R.)

Page 4

interest on accounts receivables, Atlantic has charged the Debtor $130,122.00 for the itemized July-October period. The Debtor had repeatedly asked Atlantic to explain how these charges were calculated, and Atlantic has never responded. Nor am I able to ascertain from the information contained in the Atlantic Analysis which provides no reference to the uncollected accounts receivable which are the prime component of the interest calculation, whether this number is correct.

Recognizing an obligation to pay interest, Washington has included a line item in his analysis for interest calculated at 10% per annum applied to the outstanding balance to Atlantic as of the prior month. Under Washington's calculations, the interest component was approximately $7,500.00 for the same period. While it does not appear to me that Washington has correctly interpreted the fee requirement, I cannot conclude that Atlantic has either.[FN8] Curiously, Atlantic has added to its claim an additional $8,896.24 of interest from October 24, 1999 to February 22, 2000 (the bankruptcy filing date) relying on the above quoted contractual provision. Again there is no explication as to how the interest, quoted as a per diem of $72.92, was calculated. It certainly is not calculated on accounts receivable because Atlantic was not collecting accounts for the Debtor during this period. Rather it appears to be calculated on the outstanding principal balance as of October 24, 2000. This is the formulation utilized by Washington for the contract period but not for any period thereafter.[FN9]

> FN8. Indeed I find the fee provision rather obtuse and would have gladly accepted parol evidence to explain the parties' intention.
>
> FN9. Of course, under Debtor's calculation of principal balance, the per diem would be approximately $10 and the total interest at Atlantic's 10.5% rate would be $1,222.00.

*4 Notwithstanding the parties' use of that interest calculation, I do not read the Agreement to so provide. Accordingly, I will disallow the $8,896.24 as well as the interest on the accounts component of the principal amount charged by Atlantic. The Debtor has challenged it and while I do not agree with Washington's interpretation, in the absence of any explanation of the basis of Atlantic's number, all Debtor was able to do is work with the limited data provided by Atlantic to reach an appropriate charge. Given the contractual language that relates the fee to uncollected accounts receivable and the absence of any record data as to the amount of uncollected accounts receivable, information within the control of Atlantic who received a 4% fee for billing and collecting, I refuse to give *prima facie* evidentiary weight to the interest charges.

Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."Subsection (a) of the same rule sets forth one of the requirements for a proof of claim, namely that it "shall conform substantially to the appropriate Official Form," which is Official Form 10. Fed.R.Bankr.P. 3001(a).*Seealso*Garner v. Shier (In re Garner), 246 B.R. 617, 621 (9th Cir. BAP2000) (noting that a proof of claim must "substantially conform to the appropriate official form" in order to benefit from the evidentiary presumption set forth in Fed.R.Bankr.P. 3001(f); *In re Bertelt*, 206 B.R. 587, 594 (Bankr.M.D.Fla.1996) (concluding that proof of claim was *prima facie* evidence of its validity since it conformed substantially with Form 10 of the Official Bankruptcy Forms). Under Form 10, when a creditor's claim includes "interest or other charges," the creditor must "[a]ttach [an] itemized statement of all interest."Official Form 10. Since Atlantic failed to attach an itemized statement for this component of the interest it claims is due, it retained the burden to prove this part of its demand. When questioned at the hearing on this aspect of its claim, Robinson provided no explanation. Failing to sustain its burden, the interest claimed is disallowed.

A similar defect exists with respect to the claim component denominated "Interest on Prepetition Arrearage Declining Balance for 5 Years @ Interest Rate per Management Agreement" in the amount of $74,758.68, likewise challenged by Debtor. Washington professed no understanding of the basis for this charge nor is one apparent from an examination of the Agreement. This component of the claim is also not supported by the appropriate itemized statement. When questioned on this calculation, Robinson again could provide no explanation and therefore again failed to sustain the burden for allowance of that charge which will be disallowed.

As to the remaining components of the claim, Debtor has met its burden of rebutting the *prima facie* evidence put forth by Atlantic as to the amount of its claim, thereby shifting the burden to Atlantic to establish the bona fides of its accounting. Since Atlantic has not come forward

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 2000 WL 1780329 (Bkrtcy.E.D.Pa.)  
**(Cite as: Not Reported in B.R.)**

Page 5

with any evidence in response to the Debtor, the allowed portion of its claim shall be limited to $25,087.00 which is the amount calculated by Debtor as due and owing. The rest of the claim is disallowed.

*5 An Order consistent with this Memorandum Opinion shall be entered.

Bkrtcy.E.D.Pa.,2000.
In re L. Washington & Associates, Inc.
Not Reported in B.R., 2000 WL 1780329 (Bkrtcy.E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.