# **EXHIBIT B**

Westlaw.

Not Reported in B.R.
Not Reported in B.R., 2002 WL 999260 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

**H**In re Edison Brothers Stroes, Inc.
Bkrtcy.D.Del.,2002.
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. Delaware.
In re: **EDISON BROTHERS STORES,** INC., et al., Debtors.
No. 99-532 (JCA), 99-535(JCA), 99-530(JCA), 99-533(JCA), 99-536(JCA), 99-531(JCA), 99-534(JCA), 99-529(JCA), 99-537(JCA), 99-538(JCA).

May 15, 2002.

Carol Ann Rich, Campbell, Arellano & Rich, St. Thomas, U.S. Virgin Islands 00801, Counsel for Tutu Park Limited.
Charlene D. Davis, Eric M. Sutty, The Bayard Firm, Wilmington, Counsel for Alan M. Jacobs, Chapter 7 Trustee.
Alan M. Jacobs, Chapter 7 Trustee, Hewlett, NY.
Office of the United States Trustee, Wilmington.

MEMORANDUM OPINION ON AMENDING
PROOF OF CLAIM [FN1]

> **FN1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.AKARD, Bankruptcy J.

**\*1** Before the Court is the motion of Tutu Park Limited ("Tutu Park") to amend its September 8, 1999, proof of claim. The issue presented by the motion is whether a landlord/creditor may amend its proof of claim, post-bar date, as to amount in order to include lease rejection damages permitted by § 502(b)(6).[FN2] After consideration of the memoranda of law proffered, the Court concludes that Tutu Park's motion must be granted and the proof of claim amended.[FN3]

> **FN2.** All statutory references herein are to the Bankruptcy Code, 11 U.S.C. § 101et seq., unless otherwise noted.

> **FN3.** This Court has jurisdiction over this matter, which is a core proceeding, pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (B), (C) and (O).

I. BACKGROUND [FN4]

> **FN4.** The facts are from the parties' Memoranda as the parties did not submit any evidence nor stipulations.

On March 9, 1999, **Edison Brothers Stores**, Inc. and its seven affiliates (the "Debtors") filed voluntary petitions for relief pursuant to Chapter 11 of Title 11, of the United States Code. The Debtors' Chapter 11 cases were procedurally consolidated and jointly administered. Edison, a publicly held corporation, was a specialty retailer of men's and women's apparel and footwear. On the Commencement Date, the Debtors had approximately 1,510 retail stores located throughout the United States, Puerto Rico, and the Virgin Islands.

On March 22, 1999 the United States Trustee appointed a committee of unsecured creditors in the Debtors' Chapter 11 cases. By July 30, 1999, the Debtors had ceased all retail operations and had completed transactions for assumption and assignment, rejection or other disposition of virtually all of their retail stores, including the lease at issue in the present motion.

The United States Trustee applied for an order appointing Alan M. Jacobs as Trustee in the Chapter 11 case, which was granted by the Court on May 30, 2000 (Order No. 1571). On July 5, 2000, the Court entered an Order (Order No. 1603) approving the Chapter 11 Trustee's motion to convert the Chapter 11 Case to a case under Chapter 7, pursuant to § 1112(b). Simultaneously, pursuant to a grant of authority in § 701(a), the United States Trustee appointed the Mr. Jacobs to serve as the Chapter 7 Trustee in this case. The Chapter 7 Trustee is currently engaged in the winding-up of the Debtors' estates through limited administrative operations, claims resolution and liquidation of assets.

Not Reported in B.R.                                                                                                    Page 2
Not Reported in B.R., 2002 WL 999260 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

Tutu Park is the owner and operator of the shopping center known as the Tutu Park Mall, St. Thomas, U.S. Virgin Islands, and is a duly scheduled creditor in this case. In 1993, when Tutu Park Mall opened, Debtors entered into four leases for the operation of a Baker's Shoe store, a 5-7-9 store, an Oak Tree store and a Jeans West store. All of the leases were for terms of ten years from the commencement date, as defined under the leases. The Baker's, Oak Tree and 5-7-9 leases all commenced on June 3, 1993; the Jeans West lease commenced on September 25, 1993.

In accordance with their rights under the lease, Section 37.13, the Debtors terminated the 5-7-9 lease on June 30, 1994. On November 3, 1995, the Debtors filed for Chapter 11 reorganization.[FN5]On October 1, 1996, during the Chapter 11 reorganization, the Debtors executed an amendment to the Jeans West lease, by which the Debtors expanded the Jeans West store and took over the still vacant and adjacent 5-7-9 space, "as is."

> FN5. The Debtors' prior chapter 11 case (95-01355(PJW)) was terminated on December 23, 1997.

*2 The Oak Tree lease was amended on August 8, 1997, to allow the Debtors the right to terminate the lease upon written notice if gross sales for the period from February 1, 1998 to April 1, 1999, were less than $500,000.00. Notice of termination of the Oak Tree Lease was duly given by the Debtors on February 1, 1999, to be effective August 1, 1999.

The Baker's lease was also amended on August 8, 1997, to provide the Debtors with the right to give notice of termination if gross sales were less than $650,000.00 during the fifth lease year. Notice of termination was duly given by the Debtors on September 8, 1998, to be effective February 20, 1999. Thereafter, Tutu Park allowed the Debtors to remain in operation in the Baker's space as a hold-over tenant. The Debtors vacated the Baker's space on or about July 1, 1999. The Jeans West lease remained in full force and effect as there were no similar amendments to extend Debtors' right to terminate. On or about May 21, 1999, the Debtors filed a motion for approval of the sale of various assets, including the Jeans West lease at Tutu Park Mall.

During the Chapter 11 case, the Court entered an Order fixing September 10, 1999 as the bar date, or the last date to file proofs of claim on account of prepetition claims (Order No. 739). On August 3, 1999, under the terms of the Sale Order, the Debtors filed a Notice (DOC No. 829) advising that the purchaser had exercised its right under the agreement to reject certain leases, including the Jeans West lease at Tutu Park Mall, effective July 31, 1999. The Notice also set forth the September bar date for claims and that claims filed after such bar date would not be entitled to any distribution from the Debtors.

On September 8, 1999, Tutu Park filed a proof of claim under the Baker's, Oak Tree and Jeans West leases for additional rent charges due under the leases for real property taxes for 1994-1998, in the amount of $7,841.30. At that time, Tutu Park did not include a claim for lease rejection damages under the Jeans West lease. Tutu Park was unable to relet the Jeans West space to a replacement tenant during the remainder of 1999, or any of 2000, and suffered rejection losses for one year from the rejection date totaling $144,174.24.

Subsequently, after the conversion of the cases to Chapter 7, the Court established November 20, 2000, as the claims bar date (Order No. 1646). On January 22, 2001, Tutu Park filed the present motion seeking to amend its proof of claim to include the lease rejection damages for a total claim amount of $152,015.54. Shortly thereafter, on January 25, 2001, the Chapter 7 Trustee moved the Court to compel landlords to provide information relating to allowance of claims arising out of rejected leases (DOC No.1952). The Chapter 7 Trustee lacked sufficient information to quantify all of the rejection damage claims. The Trustee's motion was granted on February 20, 2001, and the Court entered an Order authorizing the service of subpoenas to compel all landlords that were seeking lease rejection damages to execute Affidavits of No Mitigation, or Lease Rejection Damages Mitigation Affidavits (Order No.1988). Tutu Park duly responded to the Chapter 7 Trustee's subpoena by completing, executing and returning an Affidavit of No Mitigation which provided the same information as the earlier filed Motion to Amend the Proof of Claim.

*3 The first response to Tutu Park's Motion did not come until November 14, 2001, when the Chapter 7

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Trustee objected (DOC No. 2686). Prior to the objection, the Chapter 7 Trustee filed a Motion (DOC No. 2485) on July 27, 2001, seeking to set maximum reserves for claims and other relief, which set a reserve of $7,841.30 for Tutu Park's claim. In response Tutu Park filed its objection to the Trustee's Motion on August 13, 2001, (DOC No. 2563) and reiterated that a total of $152,015.54 must be reserved for Tutu Park's claim. The Court granted the Chapter 7 Trustee's Motion and entered an Order (Order No. 2586) estimating claims and setting maximum reserves for unresolved claims, among other relief.

## II. POSITIONS OF THE PARTIES

A memorandum of law in support of the motion was submitted with the motion on January 22, 2001, by Tutu Park setting forth their arguments. The Chapter 7 Trustee objected to Tutu Park's motion to amend on November 14, 2001, arguing that Tutu Park failed to give any notice of the additional claim amount and that the amendment was essentially a new claim. On November 28, 2001, Tutu Park replied to the Chapter 7 Trustee's objection by asserting that the amendment was not a new claim and should therefore be allowed.

On March 19, 2002, the Chapter 7 Trustee submitted a supplemental memorandum of law stating that the amendment does not cure a defect in the original claim, it does not describe the original claim with greater particularity, and the amendment is not a new theory of recovery from the facts of the original claim. At the April 17, 2002, Omnibus Hearing, the parties agreed to forego argument on the motion and rely on the papers already submitted to the Court.

## III. DISCUSSION

According to Bankruptcy Rule 7015, amendments to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure. Fed.R.Bankr.P 7015; *In re Trans World Airlines, Inc.,* 145 F.3d 124, 141 (3d. Cir.1998). Under Rule 15, leave to amend "shall be freely given when justice so requires."Fed.R. Civ.P. 15(a). The decision to grant or deny leave to amend under Rule 15 is committed to the Court's sound discretion. *Trans World Airlines,* 145 F.3d at 141, citing, *Coventry v. United States Steel Corp.,* 856 F.2d 514, 518 (3d Cir.1988). Thus a Court must look to applicable case law in order to determine whether

an amendment is proper.

It is a well settled principle that, absent contrary equitable considerations or prejudice to the opposing party, amendments to proofs of claim should be freely permitted. See *In re Walls & All, Inc.,* 127 B.R. 115, 117 (W.D.Pa.1991); *In re Metro Transportation,* 117 B.R. 143, 147 (Bankr.E.D.Pa.1990) (amendments to timely proofs of claim are liberally allowed). However, such amendments are to be allowed only where the original claim prompted notice to the court of the existence, nature, and amount of the claim. *In re International Horizons, Inc.,* 751 F.2d 1213, 1217 (11th Cir.1985). Amendments are also permissible to cure defects in a claim already filed, to describe a claim with greater particularity, or to plead a new theory of recovery on the facts of the original claim. See *International Horizons,* 751 F.2d at 1216;*Hatzel & Buehler, Inc. V. Station Plaza Assoc., L.P.,* 150 B.R. 560, 562 (Bankr.D.Del.1993); *Walls & All,* 127 B.R. at 118;*Metro Transportation,* 117 B.R. at 147. Furthermore, "[a] court will deny leave to amend [,] only if there is undue delay, motivated by bad faith, or [it would be] prejudicial to [the] opposing party."See *Hatzel & Buehler,* 150 B.R. at 562;*See also Trans World Airlines,* 145 F.3d at 141;*Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir.1984).

*4 The deadlines for filing proofs of claims are to be strictly construed to ensure the efficient administration of bankruptcy cases and to provide all parties with finality. *Walls & All,* 127 B.R. at 118;*Metro Transportation,* 117 B.R. at 148. A post-bar date proof of claim amendment, as in the present motion, is to be scrutinized closely to ensure that the amendment is genuine rather than the assertion of an entirely new claim. See *International Horizons,* 751 F.2d at 1215;*Walls & All,* 127 B.R. at 118;*Metro Transportation,* 117 B.R. at 147.

The purpose of the bar date deadline is to "enable the debtor and his creditors to know, reasonably and promptly, what parties are making claims against the estate and in what general amounts."See *In re John R. Kolstad,* 928 F.2d 171, 173 (5th Cir.1991). However, bar date deadlines "by no means fix in stone the final 'allowed' amounts of claims."*Id.* at 174.Thus bar dates have little correlation to the actual, final amounts in which creditors will share any distribution; bar dates merely establish the "universe

of participants in the debtor's case."*Id.*

Courts have generally held that a post-bar date proof of claim seeking to increase the amount of a timely-filed claim is not the assertion of a new claim. *Walls & All,* 127 B.R. at 118;*Metro Transportation,* 117 B.R. at 148. Amendments are generally disallowed where a claimant attempts to change the nature of the proof of claim. *Walls & All,* 127 B.R. at 118;*See Metro Transportation,* 117 B.R. at 148 (holding that amending a claim to change status from unsecured to sixth place priority changes the nature of the proof of claim and, therefore, must be disallowed). In determining whether the amendment asserts a new claim, a court may compare the amendment to the original proof of claim. In comparing the proof of claim and the amendment, "[i]f the initial proof did not 'give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment' then the amendment asserts new claims and will not be allowed."*See In re Ben Franklin Hotel Assoc., L.P.,* 1998 WL 94808, *3 (E.D.Pa.1998), quoting *Metro Transportation,* 117 B.R. at 143. Furthermore, Rule 15 of the Federal Rules of Civil Procedure provides that an amendment relates back when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...".Fed.R.Civ.P. 15(c)(2).

The present Motion seeks to increase the amount of the claim already noticed through the filing of the original proof of claim on September 8, 1999. The Chapter 7 Trustee has not argued that Tutu Park's original proof of claim did not give fair notice of the basis of its claim, which was the lease.[FN6]The original claim for unpaid taxes as well as the rejection damages contained in the amendment are both grounded in rights that Tutu Park is entitled to by the lease. In other words both the claim and the amendment are based on the same transaction-the lease that commenced in September of 1993-and the "universe of participants" in the case was known. Therefore the amendment to include lease rejection damages in the claim is not a new claim. Since the amendment does not assert a new claim, it is well within this Court's discretion under Bankruptcy Rule 7015 to allow Tutu Park's amended proof of claim.[FN7]Under Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15 the timing of the

amendment relates back to the date of filing of the original proof of claim since the amendment arises out of the same conduct, transaction or occurrence.

> FN6. The reason the Trustee has not argued this point is that he cannot. The Trustee had notice of Tutu Park's rejection damages, as is evidenced by the fact that Tutu Park was served with the subpoena by the Trustee to provide information on mitigation and rejection damages. This proves that the Trustee was aware of Tutu Park's potential claim for rejection damages.

> FN7. The Court is aware of Judge Walrath's bench ruling in *In re International Wireless Communications Holdings, Inc., et al.,* Case No. 98-2007(MFW) Transcript September 25, 2000, pg. 48-49, where it was held that an untimely claim for rejection damages was not an amendment of a prepetition claim. We do not believe that the bench ruling in that case is binding precedent on this Court. Also, in that Motion, the creditor had already participated in global settlement negotiations prior to the attempt to include lease rejection damages.

**\*5** The Chapter 7 Trustee's actions confirm this very notion through his own motion to compel landlords to provide information related to allowance of claims arising out of rejected leases, filed on January 25, 2001 (DOC No.1952). Interestingly, that motion was filed several days after Tutu Park submitted the motion presently being considered. It seems illogical that the Trustee objected to a motion (nearly 11 months later) that seeks to provide the information which, at the time, he was seeking from the other landlord/creditors with claims. These facts also lead us to believe that the Trustee was not surprised by the amendment.

Finally, there is no showing of bad faith on the part of Tutu Park. Under Virgin Islands law, a claim for rent due does not mature until each rent payment actually becomes due. *Christian v. Sylvest,* 1995 WL 504919, *3 (Terr.V.I.). Therefore Tutu Park did not know what its lease rejection damages would amount to, since each month that the space was not re-let would cause an increase in damages. Tutu Park would have been forced to amend, as to amount,

Not Reported in B.R.                                                                                      Page 5
Not Reported in B.R., 2002 WL 999260 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**


regardless of whether the original proof of claim
included rejection damages or not.

IV. CONCLUSION

For the foregoing reasons, we grant Tutu Park's
Motion to amend proof of claim.

Order accordingly.

Bkrtcy.D.Del.,2002.
In re Edison Brothers Stroes, Inc.
Not Reported in B.R., 2002 WL 999260
(Bkrtcy.D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.