# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | **Chapter 11** |
| | ) | |
| **NEW CENTURY TRS HOLDINGS,** | ) | |
| **INC., a Delaware corporation, <u>et al</u>.** | ) | **Case No. 07-10416 (KJC)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## FEE AUDITOR'S FINAL REPORT REGARDING
## AMENDED INTERIM FEE APPLICATION OF
## KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
## <u>FOR THE FIRST INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Amended Fee Application of Kirkpatrick & Lockhart Preston Gates Ellis LLP for the First Interim Period</u> (the "Application").

### BACKGROUND

1.      Krikpatrick & Lockhart Preston Gates Ellis LLP ("Kirkpatrick") was retained as counsel to the Examiner.   In the Application, Kirkpatrick seeks approval of fees totaling $1,715,332.95[1] and costs totaling 54,844.68[2] for its services from June 1, 2007[3] through July 31**,** 2007 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained

---

[1]This amount reflects a 10% voluntary reduction in fees taken by Kirkpatrick, as well as Kirkpatrick's agreement with the Office of the United States Trustee to reduce the fees requested in its first monthly application by $8,029.13.

[2]This amount reflects the withdrawal of Kirkpatrick's request for reimbursement of word processing services totaling $3,281.33.

[3]The first interim period as set by the Court is April 2, 2007 through July 31, 2007.  On July 25, 2007 Kirkpatrick's retention was approved, *nunc pro tunc* to June 1, 2007.

herein, we reviewed in detail the Application in its entirety, including each of the time and expense

entries included in the exhibits to the Application, for compliance with Local Rule 2016-2 of the

Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective

February 1, 2006, and the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996

(the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals.  We served on Kirkpatrick an initial report based

on our review, and received a response from Kirkpatrick, portions of which response are quoted

herein.

## DISCUSSION

3.       In our initial report, we noted that the Application's total fees and expense amounts

reflect Kirkpatrick's informal agreement with the United States Trustee (the "US Trustee").  The

Amended Notice of First Interim Fee Application Request of Kirkpatrick & Lockhart Preston Gates

Ellis LLP, docket no. 3308 (the "Amended Notice"), Footnote 3,  indicates that the expense

reduction involved word processing charges requested in the original Application.  However, the

Amended Notice does not explain the basis for the fee reduction of $8,029.13.  We asked Kirkpatrick

to provide more specific information regarding this fee reduction.  Kirkpatrick responded as follows:

> Pursuant to an agreement reached between K&L Gates and the Office of the United
> States Trustee (the "UST") on September 25, 2007, K&L Gates agreed to reduce the
> time expended by Eunice Rim on retention matters on June 1, 2, 3, 4 and 5, 2007 by
> one half.  On those days, Eunice Rim billed 54.9 hours on retention matters for total
> fees of $17,842.50.  This amount was already discounted on the invoice by 10% or
> $1,784.25 pursuant to the voluntary 10% discount.  Therefore, the amount to be
> reduced amounted to $16,058.25, half of which is $8,029.13.

We appreciate Kirkpatrick's clarification of this matter.

4.     We noted that during the application period 14.40 hours and $3,613.50 in fees were billed by firm members named L.C. Alvarez and J. Bishop.  Neither of these names are listed on Attachment B in the Application, which contained Kirkpatrick's list of professionals.  We asked Kirkpatrick to provide background information on these individuals.   Kirkpatrick responded as follows:

> Lissette C. Alvarez is a Legal Project Professional in K&L Gates' Washington D.C. office.  Ms. Alvarez has been employed with K&L Gates since November 10, 2003 and specializes in securities enforcement, E-Discovery and internal investigations.

> Jamie Bishop is no longer employed with K&L Gates.  Ms. Bishop was formerly employed with K&L Gates between September 23, 2002 and July 31, 2007 and was an associate in K&L Gates' Pittsburgh office specializing in bankruptcy and insolvency.  Ms. Bishop had been a member of the Pennsylvania Bar since 2002.

We appreciate this information.

5.     We noted a number of meetings and/or hearings which were attended by multiple Kirkpatrick professionals.  In several of those instances the number of professionals and/or the amount of time appears excessive.  See Exhibit A.  Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Furthermore, the Delaware Local Rules, rule 2016-2(d)(ix), states "....[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  We asked Kirkpatrick to review Exhibit A, and provide additional information regarding these occasions.  Kirkpatrick's response is provided below, and below the corresponding occasions on Exhibit A.

> ......... the Examiner has been directed by the Court to undertake and complete a large multifaceted investigation in a limited period of time.  In light of the many different components of the Examiner's investigation, which required bankruptcy and insolvency, accounting, internal investigations and litigation expertise, the number of personnel required to undertake the various components of the Examiner's investigation and the time frame within which the Examiner must complete his investigation and file his report, team leader and other meetings were necessary and

appropriate in order to properly coordinate the investigation and ensure that it was undertaken in the most efficient and cost-effective way possible.

While we appreciate Kirkpatrick's response, we recommend the following reductions.

*Meeting on June 19, 2007, attended by eight firm members:* We do not believe that the response bears Kirkpatrick's burden of establishing that this meeting was not overstaffed. We recommend a reduction of the time spent at the meeting by Koeppel ($425 per hour) and Richman ($385 per hour) for a reduction of $2,025.00 in fees.

*Meeting on June 29, 2007, attended by seven firm members*: The response does not address the attendance of Bowman ($240) and we recommend a reduction for the time Bowman spent at the meeting. Furthermore, the response does not satisfy Kirkpatrick's burden of establishing that this meeting was not overstaffed. For the remainder of the attendees, we recommend a reduction of the time spent in attendance by Kline Dubill ($455). Thus for the meeting on June 29, 2007, we recommend a reduction of $903.50 in fees.

*Meeting on July 11, 2007, attended by six firm members*: The response does not bear Kirkpatrick's burden of establishing that the attendance of six professionals was necessary at this meeting. We recommend a reduction of the time spent by Koeppel ($425) for a reduction of $722.50 in fees.

*Meeting on July 17, 2007, attended by nine firm members*: The response does not satisfy Kirkpatrick's burden of establishing that nine professionals were necessary on this occasion. We recommend a reduction of the time spent at the meeting by Koeppel ($425), McFall ($325), and Kline Dubill ($455), for a reduction of $5,656.50 in fees.

*Meeting on July 16, 2007, attended by nine firm members*: The response does not prove that the attendance of both a legal secretary and a paralegal was necessary, and we recommend a reduction of the time spent by the legal secretary. For the remainder of the attendees, we recommend a reduction of the time spent at the meeting by Koeppel and Lambrakopoulos. Thus for this meeting

we recommend a reduction of $1,338.00 in fees.

*Conference call on July 30, 2007, attended by ten firm members*:  The response does not prove that

the   attendance of both a legal secretary and a paralegal was necessary and we recommend a

reduction of the time spent by the legal secretary.      For the remainder of the attendees, we

recommend a reduction of the time spent at the meeting by Koeppel, Roeber and Kline Dubill.  Thus

for this conference call we recommend a reduction of $1,370.00 in fees.

Thus for this paragraph 5, we recommend a total reduction of $10,813.95[4] in fees.

6.      We also noted four instances wherein multiple Kirkpatrick professionals attended

interviews.  See Exhibit B.  As requested in the paragraph above, we asked Kirkpatrick to review

Exhibit B, and provide additional information regarding these occasions.  Kirkpatrick's response is

provided as follows, and below the corresponding occasions noted in Exhibit B.

> During the First Interim Period, K&L Gates conducted approximately 10 witness
> interviews spanning the course of approximately six days.  To prepare for each
> witness interview, K&L Gates reviewed documents and correspondence related to
> possible areas of inquiry and prepared detailed interview outlines.  After each
> interview, K&L Gates prepared detailed interview memoranda summarizing the
> substance of the interview and highlighting areas for further inquiry and
> investigation.

> As stated more fully above, the Examiner has been directed by the Court to undertake
> a large multifaceted investigation.  In light of the approximately 98 total witnesses
> that have been interviewed throughout the course of the Examiner's investigation, the
> many different components of the Examiner's investigation, requiring both
> bankruptcy/insolvency expertise as well as internal investigations, accounting,
> securities disclosure and structured finance expertise, the number of personnel
> required to undertake the various components of the Examiner's investigation and
> the time limit in which the Examiner must complete his investigation and submit his
> Report, the number of professionals attending such interviews was  kept to the most
> efficient and cost effective level possible to ensure that the Examiner fulfilled his
> mandate pursuant to the Examiner Order.  Most of the interviews covered subjects

---

[4]As Kirkpatrick's total fee request reflects a 10% reduction, we calculate the reduction for
the instances of multiple professionals cited, at $12,015.50 minus 10% ($1,201.55) or
$10,813.95.

relevant to more than one issue team.

Each participant in the interviews was a necessary component to the particular interview in which he or she participated.  All of the participants' expertise and roles have been defined above, with the exception of Kathleen O. Peterson and Kristin S. Elliott.  Ms. Peterson is a K&L Gates partner and a core member of the Accounting Team and Kristin S. Elliott is an associate specializing in bankruptcy/insolvency matters and a critical member of the Bankruptcy Team.

While we appreciate Kirkpatrick's response, we recommend the following reductions.

*Interviews on June 13, 14, 18, 2007, attended by five professionals*:  The response does not satisfy Kirkpatrick's burden of establishing that all five professionals were necessary at these interviews.  We recommend a reduction of the time spent at the interviews by Kline Dubill and Lambrakopoulos, for a reduction of $5,264.00 in fees.

*Interview conducted on July 26, 2007, attended by three professionals*:  The response does not satisfy Kirkpatrick's burden of establishing that all three professionals were necessary at this interview.  We recommend a reduction of the time spent at the interview by McFall, for a reduction of $910.00 in fees.

*Interview conducted on July 13, 2007, attended by four professionals*:  The response does not satisfy Kirkpatrick's burden of establishing that four professionals were necessary for this interview.  We recommend a reduction of the time spent at the interviews by Bornstein and Shough, for a reduction of $5,071.50 in fees.

*Interviews conducted on June 25, 2007, attended by five firm members*:  The response does not satisfy Kirkpatrick's burden of establishing that all five professionals were necessary at these interviews.  We recommend a reduction of the time spent at the interviews by Elliott and Shough, for a reduction of $3,504.00 in fees.

Thus, for this paragraph 6, we recommend a total reduction of $13,274.55 [5] in fees.

7.    We noted that throughout the Application Period, Meyers (215) and Woo (220.50)

spent time performing tasks which appear to be clerical in nature.  The time entries are as follows:

| 06/27/07 | N. F. Meyers | 4.00 | Retrieve Heller Ehrmann/Pricewaterhouse interview memos off Extranet(1.0); prepare and organize same (1.7); draft index for binder of same (.8); review binders and distribute same (.5)    860.00 |
| 06/28/07 | L Woo | 4.90 | Print and organize NCEX documents from Ringtail for J. Bornstein's review (3.8);......... 1,200.50 |
| 07/02/07 | L Woo | 4.20 | Print out and organize second batch of NCEX documents from Ringtail (3.9);............... 1,029.00 |

We have been consistent in recommending that such tasks be billed at no more than $80.00 per hour.

In re *Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 855 n.34 (3rd Cir. 1994)*, the Court stated that

"the statute [11 U.S.C. 330] plainly specifies that the type of service performed by a paralegal

(including whether it is clerical) affects the rate of compensation, not compensability vel non." *Busy*

*Beaver at 849.*   We asked Kirkpatrick to further explain these fees and it responded as follows:

A reduction in paralegal fees for Nathanael F. Meyers and Linda H. Woo is not warranted.  First, the work performed was not clerical in nature as it required judgment both in selecting the information from the various sources and organizing it in a fashion most useful to the conduct of the investigation.  Second, in order to best insure compliance with the requirement of the Examiner's Order that all aspects of the investigation remain confidential until the Examiner's Report is filed, K&L Gates restricts access to the Firm's New Century Extranet site and the Ringtail Database to specific attorneys and paralegals assigned to the investigation.  Third, clerical personnel do not have the knowledge or skills necessary to use the Ringtail Database, which stores the millions of documents that have been produced to the Examiner in the course of his investigation.

Indeed, the Third Circuit in In re Busy Beaver Building Centers, Inc., 19 F.3d 833 (3d Cir. 1994) the case relied upon by the Fee Auditor, expressly recognized the very

---

[5]As Kirkpatrick's total fee request reflects a 10% reduction, we calculate the reduction for the instances of interviews cited, at $14,749.50 minus 10% ($1,474.95) or $13,274.55.

situation encountered by K&L Gates here.  The Third Circuit noted:

> Or, a legal secretary may lack the judgment needed in selecting and collating the documents to copy, and the expense of having a paralegal or attorney first instruct the legal secretary and then review his or her work for thoroughness and accuracy combined with the legal secretary's time (albeit subsumed within overhead) may exceed the expense of having the paralegal or attorney personally perform the task in the first place.

In re Busy Beaver Building Centers, Inc., 19 F.3d at 853.  Here, K&L Gates was careful to ensure that the appropriate level of professional was matched to the tasks at hand and the time incurred is fully compensable.

Section 330(a)(3) of the Bankruptcy Code sets forth several factors for determining the reasonableness of any professional person's compensation, which includes, among others things, a consideration of time spent on such services and whether the compensation is reasonable when compared with customary compensation charged by comparably skilled practitioners in non-bankruptcy cases.  See 11 U.S.C. § 330(a)(3) (2008).  In Zolfo, Cooper & Co., the Third Circuit stated that "the baseline rule is for firms to receive their customary rates." 50 F.3d 253, 259 (3d Cir. 1995). See In re Busy Beaver Building Centers, Inc., 19 F.3d at 854 ("it is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.")  Moreover, the Third Circuit found that the bankruptcy court should have looked first to the out-of-state accounting firm's customary market and not to the market in which services were rendered as the starting point to determining whether the fees requested were reasonable. Id. at 260-61.  Here, K&L Gates rates for paralegal services are commensurate with the standard going rate of large law firms in the New York City and the San Francisco areas where the two paralegals are located.  Additionally, the time expended by the paralegals on these tasks was reasonable.  None of the usual indications of an inappropriate application for compensation are present in this case.  Accordingly, the baseline rule should apply in this case and K&L Gates should be awarded the customary rates that it charges for each of the paralegals in question.

We appreciate Kirkpatrick's response.  However, we note that we are not questioning the compensability of the work performed, we are merely suggesting that tasks such as printing and copying be compensated at a lower billing rate.  That being said, we understand from the response that printing and retrieving documents were but a small portion of the time involved, and thus we have no objection to these fees.

8.    We noted that during the application period several firm members spent a total of 58.00 hours for a total fee of $23,282.50 on firm conflict checks.  See Exhibit C.  Ordinarily, time spent performing the initial conflict check required as a condition of a firm's employment is not compensable.  *See In re ACT Manufacturing, Inc.*, 281 B.R. 468, 490 (Bankr.D.Mass. 2002); *In re Sterling Chemicals Holdings, Inc.*, 293 B.R. 701, 704 (Bankr. S.D.Tex. 2003).   We asked Kirkpatrick to further explain these fees and it responded as follows:

> The First Monthly Fee Application did not include time K&L Gates attorneys and paraprofessionals devoted to checking or clearing potential conflicts associated with K&L Gates' representation of the Examiner in the New Century cases.  Although there are references to conflict checks in various times entries listed under K&L Gates' "Retention of Professionals" matter, such time does not relate to checking conflicts to determine if K&L Gates could be retained, securing conflict waivers (as K&L Gates did not seek any) or any pre-engagement meetings, except as necessary to prepare K&L Gates' retention application.  Rather, such time relates to K&L Gates' review and analysis of conflict check results in order to prepare the disclosures the Examiner and K&L Gates were required to make pursuant to Fed. R. Bankr. P. 2014(a) in connection with their retention.

> Given the extremely large number of parties-in-interest in the New Century Cases, K&L Gates was required in connection with the preparation of its retention application to (a) review the massive number of possible connections to the Debtors, their creditors and other parties-in-interest, (b) evaluate which connections the Examiner and K&L Gates were required to disclose, and (c) draft the appropriate affidavits disclosing such connections in as clear and concise a manner as possible. To ensure that this task was completed in the most cost-effective manner, K&L Gates directed a then first-year bankruptcy associate, Eunice Rim, to complete these tasks, subject to the review of two more senior bankruptcy associates for completeness and accuracy.   Partner-level involvement only occurred when significant potential conflicts had to be addressed for disclosure purposes pursuant to Fed. R. Bankr. P. 2014(a).

> The time spent by K&L Gates preparing the Examiner and K&L Gates' retention pleadings was necessary and reasonable under the circumstances of the New Century cases.  K&L Gates also notes that it has already voluntarily reduced all of its fees requested in its monthly fee applications by 10%.  Moreover, pursuant to an agreement reached with the UST on September 25, 2007, as referenced above, the compensation owed for Ms. Rim's 54.9 hours of services on retention matters has additionally been reduced by one-half from K&L Gates' already discounted rate.  As such, fees billed to the Debtors for Ms. Rim's time in connection with retention matters has already been reduced to $8,029.13, which is half of $16,058.25.  K&L

> Gates, therefore, believes its request for compensation for these services is appropriate. See, e.g., In re St. Rita's Assocs. Private Placement, L.P., 216 B.R. 490, 497 (Bankr. W.D.N.Y. 1998) (holding that time spent fulfilling the special retention requirements of 11 U.S.C. § 327 is compensable).

We appreciate Kirkpatrick's response and acknowledge the agreement with the UST to reduce the time spent by Ms. Rim on retention matters by one-half or $8,029.00.13[6]. Thus, we have no objection to these fees.

     9.    We noted 14 instances wherein the sub-parts to a time entry are less than the total amount billed to the estate, resulting in an overcharge of $3,378.00. The time entries in question are provided in Exhibit D. We asked Kirkpatrick to review Exhibit D and further explain these fees. Kirkpatrick's response is provided in italics below each time entry in question. We appreciate Kirkpatrick's response and recommend a reduction of $1,804.50[7] in fees.

     10.    We noted that during the Application Period several timekeepers charged for tasks that appear to be administrative in nature and thus non-compensable.

| 06/08/07 | S. Kurian | 9.10 | .................; check that all links work and correspond correctly (1.5);........... 2,502.50 |
| 06/14/07 | M. B. Bowman | 6.00 | .................;  call  with  Seattle technology staff regarding document preservation and database issues (.6); edit call memo (.7)        1,440.00 |
| 06/26/07 | M. B. Bowman | 8.20 | ...............; call with Seattle IT folks and discussion with T. Berlett (1.2);......... 1,968.00 |
| 07/17/07 | J. E. Holmes | 4.50 | ............; set up and license new users and check server connections (.7); conferences with P. Novak and T. Berlett regarding remote login requirements (.5);........... 900.00 |

---

[6]See FN 1 supra.

[7]This amount takes into account the 10% discount already deducted from Kirkpatrick's total fee request.

Normally "IT" services are considered an internal issue and thus administrative.  We asked

Kirkpatrick to further explain these fees and it responded as follows:

> K&L Gates did not charge the estate for fees incurred on account of services that are
> typical information technology services.   Because over one million pages of
> documents were produced to the Examiner in the First Interim Period alone, and an
> excess of 2.5 million megabytes, or approximately 250 million total pages, of raw e-
> mail and shared drive data have been produced to the Examiner by the Debtors to
> date, K&L Gates had to efficiently process, issue code and review this voluminous
> amount of electronic material.

> Thus, K&L Gates created a customized Ringtail database to manage and house all
> of the documents it expected to (and has) received from various parties in the New
> Century cases and which it has had to review throughout the course of the
> Examiner's investigation.   K&L Gates has an E-Discovery group in Seattle,
> Washington devoted to dealing with these various E-Discovery issues.  As such, the
> time devoted by various K&L Gates personnel to these E-Discovery issues were
> related directly to the massive electronic document review effort and were not typical
> IT services.

We appreciate Kirkpatrick's response and have no objection to these fees.

11.    We noted the following time entries wherein firm partners[8] billed at his or her full

rates for document review.

| Date | Name | | Description |
|---|---|---|---|
| 07/11/07 | J. J. Bornstein | 13.00 | ..............; discuss document retention issues with New Century employees and locate, inventory and mark for copying relevant documents at New Century headquarters (7.1)    6,825.00 |
| 07/11/07 | L. C. Lanpher | 13.00 | ...............; conduct document review at New Century (5.60);........... 8,125.00 |
| 07/12/07 | S. E. Lambrakopoulos | 9.30 | Review documents at O'Melveny (7.0);........... 4,882.50 |
| 07/13/07 | S. E. Lambrakopoulos | 4.00 | Review documents at O'Melveny (2.0);..........2,100.00 |
| 07/13/07 | S. G. Topetzes | 7.80 | Review and analyze additional documents at New |

---

[8]Kline Dubill (455), Topetzes (650), Lambrakopoulos (525), Lanpher (625), Bornstein (525), Fishman (475).

| | | | |
|---|---|---|---|
| | | | Century offices and related communications with M. Wyatt and A. Johnson (counsel for New Century) at New Century offices (5.1);...........5,070.00 |
| 07/18/07 | L. C. Lanpher | 8.10 | ................, review of documents (including documents produced today by New Century), updates to team members on investigation issues and additions to draft work plan document (6.70) 5,062.50 |
| 07/26/07 | E. J. Fishman | 3.20 | Review documents (2.4);..............    1,520.00 |
| 07/29/07 | R.L. Kline Dubill | 6.10 | .............; review and organize correspondence and bankruptcy filings (2.5)        2,775.50 |
| 07/31/07 | E. J. Fishman | 5.10 | Review additional documents (4.4);........... 2,422.50 |

Document review is normally performed by professionals billing at lower hourly rates.  On the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) that "[r]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3rd Cir. 1995); *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994).  *Busy Beaver*, in footnote 34 on page 855, lists 15 cases in support of the statement "[w]hen an experienced attorney does clerk's work, he or she should be paid clerk's wages."   We asked Kirkpatrick to further explain these time entries and it responded as follows:

> K&L Gates' partners do not typically bill for ordinary document review services that can be handled by more junior attorneys.  In the New Century matter, however, two significant factors required partner involvement.  First, at the time of the Examiner's appointment, New Century had ceased doing business, had let most of its employees go and had sold or was actively seeking to sell what remained of its business.  Accordingly, the Examiner's counsel had to move quickly to identify the categories of documents that existed and would be needed for the investigation before they were

sold, lost or left in complete disarray, and insure that they would be properly maintained for future investigative purposes.

In addition, the team leaders leading the initial on-site review of documents used the information they gathered to create the work plans which guided the various teams in their work.

Finally, documents were reviewed by various partners in preparation for the over ninety eight (98) witness interviews conducted to date in connection with the investigation. The K&L Gates partners whose time entries are listed in paragraph 12 of the Fee Auditor Report were responsible for conducting many of these interviews.

As there were in excess of one million pages of documents produced during the First Interim Period and ten (10) witness interviews occurring over six (6) different days, K&L Gates assigned junior level attorneys whenever possible to conduct basic document review to select the most critical documents for partner review. Partners primarily focused on critical documents brought to their attention by more junior attorneys or documents that were essential for their upcoming witness interviews. As such, K&L Gates submits that a reduction in the partners' hourly billing rates is not warranted.

We appreciate Kirkpatrick's response. However, the response does not bear Kirkpatrick's burden of establishing that the document review by these partners was significantly more difficult than the review done by associates. Thus, we recommend a reduction of the billing rate of the above referenced timekeepers for the time spent on document review. We note that average billing rate for associates at the firm is $360.00, and thus we recommend a reduction of $7,249.05 [9] in fees.

12.    During the application period, numerous firm members charged for attending training classes. The total time spent was 98.60 hours for a total fee of $32,611.00[10]. See Exhibit E. We believe that training a firm's professionals is an administrative matter and thus the cost should not be borne by the estate. We asked Kirkpatrick to further explain these fees and it responded as

[9]As Kirkpatrick's total fee request reflects a 10% reduction, we calculate the reduction for document review, at $8,054.50 minus 10% ($805.45) or $7,249.05.

[10]This amount does not take into account the 10% reduction taken by Kirkpatrick in its Interim Application.

follows:

> As mentioned above, K&L Gates has received to date in connection with the Examiner's investigation approximately 2.5 million megabytes worth of electronic data, or an excess of approximately 250 million pages of documents. In the First Interim Period alone, K&L Gates received in excess of one million pages of documents. The K&L Gates personnel listed in Exhibit E to the Fee Auditor Report attended internal training sessions to learn how to efficiently and effectively operate and navigate the specialized Ringtail database because they would be using this database on a regular basis throughout the course of the Examiner's investigation.

> As with K&L Gates' other internal conferences that were necessary at the outset of the Examiner's investigation, K&L Gates conducted consolidated training sessions regarding the Ringtail database to avoid duplicative intra-office sessions to the greatest extent possible and to provide attorneys with the information they needed to review documents and perform the investigation effectively and efficiently. The K&L Gates personnel in attendance at these initial Ringtail training sessions have contributed, and will continue to contribute, meaningfully to the Examiner's investigation. Accordingly, K&L Gates believes the time devoted to the Ringtail training sessions was necessary to enable K&L Gates to most efficiently and effectively represent the Examiner, particularly in light of the complexity of the issues and the short time frame within which the Examiner was directed to complete his investigation.

We appreciate Kirkpatrick's response. However, the retention of a professional predisposes the expertise and experience required to provide the services needed. While we understand the magnitude of the document review, the burden of training the firm's professionals should be borne by the firm and not the bankruptcy estate. Thus, we recommend a reduction of the time spent on training, for a reduction of $29,349.90[11] in fees.

13.    We noted that Kirkpatrick requests compensation for 40.30 hours of time, totaling $6,649.50 billed by Jennifer Shuttleworth at $165.00 per hour. Ms. Shuttleworth's position is listed in the Application as Legal Secretary. The Guidelines, at Paragraph II.E.7 states in part that "Overhead.... includes word processing, proofreading, secretarial and other clerical services .......".

---

[11]As Kirkpatrick's total fee request reflects a 10% reduction, we calculate the reduction for training cited, at $32,611.00 minus 10% ($3,261.10) or $29,349.90.

We asked Kirkpatrick to explain why the time billed by a legal secretary should be compensated by the estate.  Kirkpatrick responded as follows:

> Although Jennifer Shuttleworth's primary role is that of a legal secretary to the Examiner, Ms. Shuttleworth also serves from time to time, in the capacity of a legal assistant by engaging in, among other things, reviewing various documents and e-mails produced to the Examiner, coordinating various aspects of the investigation, meeting with various members of the investigative teams on behalf of the Examiner and preparing various memoranda related to the investigation.  K&L Gates does not bill the Debtors for any of Ms. Shuttleworth's time when spent in a secretarial capacity.  K&L Gates does bill for Ms. Shuttleworth's time spent in a legal assistant capacity.  K&L Gates submits that Ms. Shuttleworth's fees are reasonable, necessary and appropriate to assist the Examiner in carrying out his duties and should be compensated by the Debtors' estate.

We appreciate Kirkpatrick's response.  However, we respectively disagree.  The tasks, as described in Ms. Shuttleworth's time entries, and provided in Exhibit F, do not appear to be different than those normally assigned to competent legal secretaries.  We recommend a reduction for the time billed by Ms. Shuttleworth, resulting in a reduction of $5,657.85 [12] in fees.

      14.     We noted the following charges for "Business Meals" and "Travel Related Meals" which are insufficient in detail.

| | | |
|---|---|---|
| 10 Jun 2007 | Business Meal - Eunice Rim 6/2/07 Inv 6/10/07 | 33.27 |
| 25 Jun 2007 | Travel Related Meals - Edward Fox Meals 6/13 - 615/07 Inv 6/25/07B | 61.73 |
| 10 Jul 2007 | Travel Related Meals - Kristin Elliott Meals 6/24-6/26/07 Inv7/10/07 | 46.76 |
| 10 Jul 2007 | Travel Related Meals - Edward Fox Meals 6/24-6/27/07 | 64.44 |
| 25 Jul 2007 | Travel Related Meals - Kristin Elliott Meals 7/23-726/07 Inv 931260 | 73.14 |
| 31 Jul 2007 | Travel Related Meals - Jeff Bornstein, Dinner at hotel, 2/3 charged, 7/12 | 75.66 |

---

[12]As Kirkpatrick's total fee request reflects a 10% reduction, we calculate the reduction for Ms. Shuttleworth's time, at $6,286.50 minus 10% ($628.65) or $5,657.85.   In addition, this amount does not include 2.20 hours of Ms.  Shuttleworth's time recommended as reductions in paragraph 5, above.

| | | |
|---|---|---|
| 31 Jul 2007 | Travel Related meals - Jeff Bornstein<br>Breakfast at hotel, 7/13 | 20.00 |

We asked Kirkpatrick to provide additional information for these charges.  Kirkpatrick responded as follows:

> K&L Gates will not charge the estate for the business meal of Eunice Rim dated June 2, 2007 in the amount of $33.17.

> Edward M. Fox's travel related meal charges in the amount of $61.73 incurred between June 13, 2007 and June 15, 2007 consisted of: (1) a dinner expense for $7.14 on June 13, 2007 while attending interviews of proposed forensic accountants to the Examiner; (2) a dinner expense in the amount of $24.79 while attending a court mandated meet and confer with the Debtors and the Creditors Committee on June 14, 2007; and (3) and a breakfast expense at his hotel in the amount of $29.80 incurred while attending the court mandated meet and confer with the Debtors and the Creditors Committee on June 14, 2007.

> Kristin S. Elliott's travel related meal charges in the amount of $46.76 dated between June 24, 2007 and June 26, 2007 consisted of: (1) dinner at the airport in the amount of $6.04 on June 24, 2007; (2) a room service dinner on June 25, 2007 in the amount of $27.35; and (3) lunch in the amount of $13.37 on June 26, 2007.  Ms. Elliott's meal expenses were incurred while attending a witness interview in Los Angeles, California.

> K&L Gates will reduce Edward M. Fox's travel related meal charges incurred between June 24, 2007 and June 26, 2007 from $64.44 to $41.83.  Mr. Fox's meal charges consisted of: (1) one room service dinner on June 25, 2007 for $ 22.73 incurred while attending a witness interview; and (2) a breakfast meal at his hotel in the amount of $19.10 on June 27, 2007 incurred while attending a court hearing on the motion to retain K&L Gates as counsel to the Examiner.

> Kristin S. Elliott's travel related meal charges in the amount of $73.14 incurred between July 23, 2007 and July 26, 2007 consisted of: (1) dinner at her hotel in the amount of $29.55 on July 24, 2007; (2) dinner at her hotel in the amount of $34.46 on July 25, 2007; and (3) breakfast at the airport on July 26, 2007 in the amount of $9.13.   Ms. Elliott's meals expenses were incurred while attending witness interviews at the Debtor's offices in Irvine, California.

> K&L Gates will not charge the estate for Jeffrey Bornstein's travel related meal incurred on July 12, 2007 in the amount of $75.66.

> Jeffrey Bornstein's travel related meal charge in the amount of $20.00 incurred July 13, 2007 was for a breakfast meal at his hotel prior to attending a witness interview held at K&L Gates' Orange County office.

We appreciate Kirkpatrick's response and proffered reductions totaling $131.44.  However, in order to align all of the meals referenced above to our recommended ceilings of $15, $25, and $50 for breakfast, lunch and dinner respectively (per person), we recommend a further reduction of $18.90. Thus for the meal expenses in this paragraph 14, we recommend a total of $150.34 in expenses.

15.    We noted a number of "Travel Expenses" which cannot be assessed without additional information.

| Date | Description | Amount |
|---|---|---|
| 25 Jun 2007 | Travel Expenses - Edward Fox Lodging 6/13-6/15/07 Inv 6/25/07B | 1,096.92 |
| 25 Jun 2007 | Travel Expenses - Edward Fox Taxis Inv 6/25/07B | 142.50 |
| 10 Jul 2007 | Travel Expenses - Kristin Elliott Lodging 6/24-6/26/07 Inv 7/10/07 | 1,069.52 |
| 10 Jul 2007 | Travel Expenses - Edward Fox Lodging 6/24-6/27/07 Inv 7/10/07 | 1,574.42 |
| 10 Jul 2007 | Travel Expenses - Edward Fox Taxis 6/24-6/27/07 Inv 7/10/07 | 130.00 |
| 22 Jul 2007 | Travel Expenses - Erin A.  Koeppel Irvine, CA 07/05-07/06 | 192.98 |
| 22 Jul 2007 | Travel Expenses - Lawrence Coe Lanpher Los Angeles 06/25-06/26 | 491.76 |
| 23 Jul 2007 | Travel Expenses - Stephen G.  Topetzes Wilmington, DE - 06/107 | 88.00 |
| 23 Jul 2007 | Travel Expenses - Stephen G.  Topetzes Long Beach, CA 07/05-07/06 | 290.00 |
| 25 Jul 2007 | Travel Expenses - Kristen Elliott Lodging 7/23-7/26/07 Inv 7/25/07 | 1,064.33 |
| 27 Jul 2007 | Travel Expenses - Robert Lawton 7/11-7/13 Travel (mileage, parking, hotel) document review in Orange County CA: RAL | 522.91 |

| | | |
|---|---|---|
| 30 Jul 2007 | Travel Expenses - Stavroula E.  Lambrakopoulos Los Angeles 07/11-07/13 | 955.93 |
| 30 Jul 2007 | Travel Expenses - Stephen G.  Topetzes Orange County, CA 07/11-07/14 | 722.90 |
| 30 Jul 2007 | Travel Expenses - Lawrence Coe Lanpher Long Beach, CA 07/11-07/13 | 1,472.06 |
| 30 Jul 2007 | Travel Expenses - Seba P.  Kurian Los Angeles CA 7/12-7/13/07 | 599.46 |
| 30 Jul 2007 | Travel Expenses - Michael J.  Missal Long Beach, CA 7/5-7/6/07 | 397.02 |
| 30 Jul 2007 | Travel Expenses - Matthew B.  Bowman Irvine, CA 07/11-07/13 | 568.81 |
| 30 Jul 2007 | Travel Expenses - Matthew B.  Bowman Irvine, CA 07/05-07/07 | 420.54 |
| 31 Jul 2007 | Travel Expenses - Linda Woo , Hotel, 7/13 | 636.20 |
| 31 Jul 2007 | Travel Expenses - Jeff Bornstein , Hotel Marriott, 7/13 | 724.20 |

We asked Kirkpatrick to provide additional information regarding these expenses and its response is provided as Response Exhibit 1.  We appreciate Kirkpatrick's response and offered reduction of $989.75.  However, we also recommend a further reduction of $1,967.08, in order to align certain of these charges with our recommended ceilings[13].  Thus, for the travel expenses listed in this paragraph 15, we recommend a total reduction of $2,956.83 in expenses.

16.    We noted a number of "Cab Fare" charges which require additional information.

| | | |
|---|---|---|
| 10 June 2007 | Cab Fare - Eunice Rim 6/3/07 (New Century) inv 6/10/07 | 44.40 |
| 25 June 2007 | Cab Fare - Edward Fox Taxis DC 6/18/07 | 246.00 |

---

[13]Hotels: $300 per night for Washington D.C. and $250 per night for the other cities noted above.  Meals: $15, $25, $50 (per person) for breakfast, lunch and dinner respectively.

6/25/07

| 21 Jul 2007 | Cab Fare - Blue Star Group, Inc.  Fr Hamlet Square to Dulles - M.  Bowman 7/5/07 | 74.13 |
|---|---|---|
| 21 Jul 2007 | Cab Fare - Red Top Executive Sedan Fr Alton PL NW to IAD - E.  Koeppel 7/5/07 | 100.72 |
| 25 Jul 2007 | Cab Fare - APEX LIMOUSINES E.  Fera 59 to Bronx (R/T) 6/4 inv.  101598 | 134.64 |
| 26 Jul 2007 | Cab Fare - Blue Star Group, Inc.  Fr Hamlet Square to D.A.P. - M.  Bowman 7/11/07 | 79.80 |
| 30 Jul 2007 | Cab Fare - Dial Car Inc.  E.  Fox Penn Station to Rye, NY 6/19 inv.  1041445 | 103.53 |
| 30 Jul 2007 | Cab Fare - Dial Car Inc.  E.  Fox LGA to Rye, NY 6/18 inv.  1041445 | 131.33 |
| 31 Jul 2007 | Cab Fare - Dial Car Inc.  E.  Rim 599 Lex to Queens 6/5 inv.  1040490 | 110.16 |
| 31 Jul 2007 | Cab Fare 0 Dial Car Inc.  E.  Fox 599 to Newark Airport 7/11 inv.  1042350 | 72.83 |

We asked Kirkpatrick to provide additional information regarding these charges.  Although categorized as "Cab Fare" a number of the charges above appear to be for a car service.  In the instances involving a car service, we asked Kirkpatrick to explain why a less expensive taxi was not utilized.  Kirkpatrick's response is provided in Response Exhibit 2.  We appreciate Kirkpatrick's response and have no objection to these expenses.

     17.    We note that Kirkpatrick seeks reimbursement for the following overtime charges.

| 15 Jun 2007 | Employee Overtime Secretary Elaine Fera 6/3-6/9/07 | 60.00 |
|---|---|---|
| 23 Jul 2007 | Employee Overtime   I.  Wolf 6/24/07-6/30/07 | 20.00 |
| 31 Jul 2007 | Employee Overtime-7/17 L.  Beerstecher- 1.25 hours | 50.00 |

| 31 Jul 2007 | Employee Overtime-7/16-17 E.  Izaguirre-4.25 hours | 170.00 |

We asked Kirkpatrick to explain why the estate should reimburse for these charges.  Kirkpatrick

responded as follows:

> Employee overtime charged in the First Interim Fee Application was incurred on
> account of assignments specifically related to New Century investigation and is
> commensurate with the rates charged to K&L Gates' other clients for similar
> services.  Legal secretaries and other word processing personnel generally work an
> 8.0 hour shift, which includes a 1 hour lunch.  Therefore, any time billed in excess
> of 7.0 hours on one matter is generally charged as an overtime expense.  As such,
> K&L Gates is entitled to recover overtime expenses incurred on account of services
> performed on New Century matters.

We appreciate Kirkpatrick's response and have no objection to these expenses.

      18.     We noted the following air fare charges that appear excessive or contain insufficient

information.

| 10 Jul 2007 | Air Fare - American Express Elliot NY to LA 6/24/07 Inv 062807 NY | 1,513.80 |
| 10 Jul 2007 | Air Fare - American Express Fox Newark to LA 6/24/07 Inv 062807NY | 1,601.80 |
| 21 Jul 2007 | Air Fare - American Express - AmEx 6/07 BTA - S.  Topetzes 6/27/07 | 175.00 |
| 21 Jul 2007 | Air Fare - American Express - AmEx 6/07 strip - L.  Lanpher 6/22/07 CA | 1,57703 |
| 21 Jul 2007 | Air Fare - American Express - AmEx 6/07 strip - M.  Missal 6/12/07 DE | 211.00 |
| 21 Jul 2007 | Air Fare - American Express - AmEx 6/07 strip - R.  Kline 6/15/07 Nairobi/Wilson/Kena | 211.00 |
| 21 Jul 2007 | Air Fare - American Express - AmEx 6/07 strip - R.  Kline 6/27/07 Boston | 597.30 |
| 26 Jul 2007 | Air Fare - American Express, Leah Shough, airfare, 6/22 | 262.80 |

| 26 Jul 2007 | Air Fare - American Express, Leah Shough, airfare, 6/25 | 246.59 |
| 26 Jul 2007 | Air Fare - American Express, Jeffrey Bornstein, airfare, 6/22 | 262.80 |
| 26 Jul 2007 | Air Fare - American Express, Jeffrey Bornstein, airfare, 6/25 | 246.59 |

We asked Kirkpatrick to provide additional information regarding these charges and its response is provided as Response Exhibit 3.  We appreciate Kirkpatrick's response and have no objection to these expenses.

19.    We noted that Kirkpatrick seeks reimbursement for the following miscellaneous charge which appears to be overhead.

| 18 June 2007 | Misc.  Expenses - Boston Properties Limited Partnership Inv 1241322 6-05-07 E Rim overtime air supply 6/02/07 | 180.00 |

The Guidelines Paragraph, II.  E 7.  states in part "........[f]actors relevant to a determination that the expense is proper include the following: . . . . Whether the expenses appear to be in the nature of nonreimbursable overhead . . . Overhead includes . . . rent, utilities, office equipment and furnishings, insurance, taxes, local telephone and monthly car phone charges, lighting, heating and cooling......"

We asked Kirkpatrick to further explain why this charge it responded as follows:

> K&L Gates will not charge the estate for the overtime air supply charge incurred on June 5, 2007 in the amount of $180.00.

We appreciate Kirkpatrick's response and recommend a reduction of $180.00 in expenses.

**CONCLUSION**

20.    Thus we recommend approval of fees totaling $1,647,183.15 ($1,715,332.95 minus $68,149.80) and expenses totaling $51,557.51 ($54,844.68 minus $3,287.17) for Kirkpatrick's services from June 1, 2007 through July 31, 2007.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
        Warren H. Smith
        Texas State Bar No. 18757050

325 N. St. Paul Street, Suite 1275
Republic Center
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via First-Class United States mail to the attached service list on this 10th day of April, 2008.

_____
        Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**
Edward M. Fox, Esq.
Kirkpatrick & Lockhart Preston
Gates Ellis, LLP
599 Lexington Ave.
New York, NY 10022

and

Mark Minuti, Esq.
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266

**Examiner**
Michael J. Missal, Esq.
Kirkpatrick & Lockhart Preston
Gates Ellis, LLP
1601 K. Street, N.W.
Washington, DC 20006-1600

**United States Trustee**
Joseph J. McMahon, Jr.
U.S. Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801

**Counsel to the Debtors**
Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Paul N. Heath, Esq.
Chris M. Samis, Esq.
Richards, Layton & Finger, P.A.
920 N. King St.
One Rodney Square
Wilmington, DE 19801

**Counsel to the Debtors**
Suzzanne Uhland, Esq.
Ben H. Logan, Esq.
Victora A. Newmark, Esq.
Andrew M. Parlen, Esq.
O'Melveny & Myers LLP
275 Battery Street
San Francisco, CA 94111

**Counsel to the Debtors**
Shannon Lowry Nagle, Esq.
O'Melveny &Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

**Counsel to the Debtors**
Ivan Lerer Kallick, Esq.
Manatt Phelps & Phillips, LLP
11344 W. Olympic Blvd.
Los Angeles, CA 90064

**Counsel for Crisis Managers**
Sheldon S. Toll, Esq.
Attorneys for AP Services, LLC
2000 Town Center, Suite 2550
Southfield, MI 48075

**Accounting and Tax Advisor
for the Debtors**
Gary A. Grush
Grant Thornton LLP
18400 Von Karman Ave., Suite 900
Irvine, CA 92612

**Accounting and Tax Advisor
for the Debtors**
Ari Lefkovits, Director
Lazard Freres & Co., LLC
30 Rockefeller Plaza, 61st Floor
New York, NY 10020

**Accounting and Tax Advisor**
**for the Debtors**
Jeffrey R. Boyle, Esq.
PricewaterhouseCoopers LLP
Two Commerce Square, Ste. 1700
2001 Market St.
Philadelphia, PA 19103

**Counsel to the Official Committee of**
**Unsecured Creditors**
Bonnie Glantz Fatell, Esq.
David W. Carickhoff, Jr., Esq.
Blank Rome, LLP
1201 Market Street, Ste. 800
Wilmington, DE 19801

**Counsel to the Official Committee of**
**Unsecured Creditors**
Mark S. Indelicato, Esq.
Hahn & Hessen, LLP
488 Madison Avenue
14th & 15th Floors
New York, NY 10022

**Financial Advisor to the Official**
**Committee of Unsecured Creditors**
Samuel Star
FTI Consulting, Inc.
Three Times Square
New York, NY 10036

**Counsel to the Examiner**
Mark Minuti, Esq.
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899

**Accountants and Financial Advisor**
**to the Examiner**
William K. Lenhart
Naushon Vanderhoop
BDO Seidman, LLP
330 Madison Ave., 10th Floor
New York, NY 10017

**Special Regulatory Counsel for the**
**Debtors**
Eric M. Davis, Esq.
Kimberly A. LaMaina, Esq.
Skadden, Arps, Slate, Meagher
& Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

**Special Counsel to the Audit**
**Subcommittee**
Peter Benvenutti, Esq.
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA 94104

**Special Outside Counsel to the Debtors**
Tara Kowalski
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071-2627

**Special Counsel - OCP**
Diana M. Thimmig, Esq.
Roetzel & Andress
1375 East Ninth Street
One Cleveland Center, 9th Floor
Cleveland, OH 44115

**Sheppard, Mullin, Richter &**
**Hampton LLP**
Mette H. Kurth, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448

**Special Litigation Counsel to Debtors**
Joshua D. Morse, Esq.
Hennigan Bennett & Domann LLP
865 S. Figueroa Street, Ste. 2900
Los Angeles, CA 90017

**<u>Special Litigation Counsel to Debtors</u>**
Jeffrey Tidus, Esq.
Baute & Tidus LLP
777 S. Figueroa Street, Ste. 4900
Los Angeles, CA 90017

Exhibit A
(Meetings and Hearings)

a.      On June 14, 2007, ((Fox (775), (Kline Dubill (455), (Topetzes (650)) attended a meeting.  The total time spent including any preparation time was 13.50 hours for a total fee of $8,272.00.

| | | | |
|---|---|---|---|
| 06/13/07 | R.L. Kline Dubill | 3.30 | Prepare for meeting with creditors' counsel and debtors' counsel (0.3);..............; attention to planning for presentation on subprime lending issues (0.3);............    1,501.50 |
| 06/14/07 | E. M. Fox | 5.50 | Attend initial meeting with Debtor and its counsel, Creditors Committee counsel and U.S. Trustee (3.7), meeting with Creditors Committee counsel and U.S. Trustee (.7),...............4,262.50 |
| 06/14/07 | R.L. Kline Dubill | 6.10 | Prepare for (1.1) and attend (3.7) meet and confer sessions with debtor's and creditors' counsel;........2,775.50 |
| 06/14/07 | S. G. Topetzes | 4.50 | Participate in meet and confer session with M. Missal, counsel for debtor, counsel for creditors committee, and representatives of U.S. Trustee (3.7),...............2,925.00 |

On June 15, 2007, EMF and RLKD (two Partners; Fox (775), Kline Dubill (455)) attended a hearing  The total time spent including any preparation and non-working travel time was 10.20 hours[14] for a total fee of $5,032.00.

| | | | |
|---|---|---|---|
| 06/15/07 | E. M. Fox | 2.70 | Travel from Washington, D.C. to Wilmington, DE for court conference (.7) and travel from Wilmington to New York after court conference (2.0)    2,092.50 |
| 06/15/07 | R.L. Kline Dubill | 1.70 | Travel to and from Wilmington for court conference (1.7)    773.50 |
| 06/15/07 | E. M. Fox | 3.00 | Meeting with local counsel (1.3) and attend omnibus hearing and court conference with Examiner (1.7)         2,325.00 |

---

[14] Time for this entry was located in the following project categories - (i) Hearings and (ii) Non-Working Travel.

| 06/15/07 | R.L. Kline Dubill | 2.80 | Attend status conference (2.8) | 1,274.00 |

**Kirkpatrick's response:  June 14, 2007 Meeting and June 15, 2007 Hearing**

*The June 14, 2007 meeting was mandated by the Court in the Examiner Order, which specifically directed the Examiner to "meet and confer with the Debtors, the Committee, and the U.S. Trustee, if the U.S. Trustee requests participation."  Examiner Order at ¶ 4.*

*Rebecca L. Kline Dubill, is a K&L Gates partner with special expertise in internal investigations and securities enforcement and is a team leader for the Case Management and Outside Auditor Teams.  Edward M. Fox, is a K&L Gates partner with special expertise in bankruptcy and insolvency matters and is the team leader of the Bankruptcy Team.  Stephen G. Topetzes, a K&L Gates partner with expertise in internal investigations and securities enforcement, is a group leader in charge of coordinating the efforts of various team leaders and is also a team leader of the Accounting and Outside Auditor teams.  Stavroula Lambrakopoulos is a K&L Gates partner with special expertise in securities enforcement and internal investigations, is a group leader in charge of coordinating the efforts of the various team leaders and is also a team leader of the Outside Auditor and Internal Controls Teams.  Phillip J. Kardis III is a K&L Gates partner with special expertise in corporate and transactional matters, particularly with respect to the mortgage banking and consumer credit industries and is a core member of the Accounting Team.*

*In light of the Court's directive, Rebecca L. Kline Dubill, Edward M. Fox, and Stephen G. Topetzes, all of whose roles are described above, attended the June 14, 2007 meeting mandated by the Court. This was the first key meeting with the Debtors, the committee and the U.S. trustee wherein the organization and administration of the Examiner's investigation and the basic facts relating to the issues to be investigated were discussed between the various parties and Mr. Fox, Ms. Kline Dubill and Mr. Topetzes relayed the information garnered at the meeting to the remaining team leaders and their respective teams.*

*The attendance of these three attorneys was necessary to ensure that K&L Gates understood the parameters and processes involved in the Examiner's investigation from both the bankruptcy perspective and investigations perspective and to efficiently communicate this information to the respective investigative teams.  The attendance of these three attorneys was further necessary to avoid a duplication of effort among attorneys and paraprofessionals at more junior levels and to ensure that each investigative team carried out its component of the investigation in an effective manner.*

*Moreover, each of the other parties attending the meeting, including the Debtors, the Creditors Committee, and the Debtor's Chief Restructuring Officer, also had multiple attorneys attending on their behalf.*

*Considering the size and scope of the Examiner's investigation and the number of personnel needed to conduct the investigation, K&L Gates respectfully submits that assigning three key attorneys, who aggregately expended 13.5 hours to prepare for and attend the court mandated "meet and confer" was necessary and appropriate and by no means excessive.*

*Further, the Court ordered a status conference on June 15, 2007 to discuss the results of the June 14, 2007 meeting mandated in the Examiner Order. Examiner Order at ¶ 4. As a result, Rebecca L. Kline Dubill and Edward M. Fox attended the Court conference on June 15, 2007, in their respective capacities as team leaders with their respective expertise in investigative and bankruptcy matters.*

b.      On June 19, 2007, eight firm members ((Fox (775), Kline Dubill (455), Topetzes (650); Kardis (625), Koeppel (425), Lambrakopoulos (525), Richman (385), Lanpher (625)) attended a meeting. The total time spent including any preparation and non-working travel time was 26.50 hours[15] for a total fee of $14,037.50.

| | | | |
|---|---|---|---|
| 06/19/07 | E. M. Fox | 4.30 | .........., briefing at Heller Ehrmann by counsel to the special investigative committee of New Century's Board (2.5),........... 3,332.50 |
| 06/19/07 | P. J. Kardis | 2.50 | Briefing by counsel to the Special Investigative Committee     1,562.50 |
| 06/19/07 | R.L. Kline Dubill | 6.60 | Attend briefing by counsel to Special Investigative Committee (2.5);............       3,003.00 |
| \6/19/07 | E. A. Koeppel | 2.50 | Briefing by counsel to the Special Investigative Committee     1,062.50 |
| 06/19/07 | S. E. Lambrakopoulos | 8.50 | ..............; briefing by counsel to the Special Investigative Committee (2.5);........... 4,462.50 |
| 06/19/07 | L. M. Richman | 6.40 | Briefing by counsel to the Special Investigative Committee (2.5);...........       2,464.00 |
| 06/19/07 | S. G. Topetzes | 6.30 | ..............; attend and participate in meeting with counsel for Special Investigative Committee of Debtor and review relevant documents (2.5);............4,095.00 |
| 06/19/07 | E. M. Fox | 5.00 | Round trip travel from New York to Washington , D.C. for meetings with examiner and counsel to the special committee.     3,875.00 |
| 06/19/07 | L. C. Lanpher | 4.20 | ..............; prepare for Heller briefing by review of financial statements and other documents (1.50); attend briefing by counsel to the Special |

---

[15] Time for this entry was located in the following project categories - (i) Investigation, (ii) Non-Working Travel and (iii) Retention of Professionals.

                                    Investigative Committee (2.50)         2,625.00

**Kirpatrick's response:  June 19, 2007 Meeting**

*The June 19, 2007 meeting was one in which counsel to the Special Investigative Committee, Heller Ehrman, which had conducted a previous internal investigation of New Century's accounting, provided a comprehensive overview on the background and results of the SIC's investigation to provide the Examiner with the benefit of its prior work and avoid the need for duplicative effort by the Examiner going forward.  As such, it was necessary to send the critical team leaders of the various investigative teams, as well as a core group of team members, to hear the details of the previous investigation so that each attorney understood the findings of the previous investigation and avoided any duplicative efforts in carrying out the various portions of the Examiner's investigation.*

*Six K&L Gates partners and two associates prepared for and attended this meeting.  These attorneys included: (1) Edward M. Fox; (2) Rebecca L. Kline Dubill; (3) Stavroula E. Lambrakopoulos; (4) Lawrence C. Lanpher, a K&L Gates partner specializing in internal investigations; (5) Stephen G. Topetzes; (6) Phillip J. Kardis III; (7) Erin A. Koeppel, a K&L Gates associate specializing in internal investigations and securities enforcement; and (8) Lisa M. Richman, a K&L Gates associate specializing in internal investigations and securities enforcement.  The roles of Messrs. Fox, Topetzes and Kardis, as well as of Ms. Kline Dubill and Lambrakopoulos, are described above.*

*Each of the attendees serves either as a team leader or a core team member in the following capacities: (1) Edward M. Fox leads the Bankruptcy Team; (2) Rebecca L. Kline Dubill is a team leader for the Case Management and Outside Auditor Teams (3) Stavroula E. Lambrakopoulos is a team leader of the Outside Auditor and the Internal Controls Teams; (4) Lawrence C. Lanpher is a team leader of the Cash Collateral and Loan Quality Teams; (5) Stephen G. Topetzes serves as a group leader in charge of coordinating the efforts of various team leaders and is also a team leader of the Audit Committee and BOD, Disclosures and Financial Reporting and Accounting Teams (6) Philip J. Kardis III is a core member of the Accounting Team and was attending as the team representative; (7) Erin A. Koeppel is a team leader of the Case Management Team; and (8) Lisa M. Richman is a core member of the Accounting Team.*

*The attendance of these attorneys at the meeting was not only beneficial, but essential to the Examiner's investigation.  Each of these attorneys was responsible for significant and varying components of the Examiner's investigation and returned to relay the information garnered at the meeting with their various investigative teams.*

*K&L Gates submits that it was more efficient to send eight key attorneys, the majority of whom serve as team leaders, or were attending in representative capacities for their various teams, for such a critical explanation at the outset of the Examiner's investigation, than to send fewer attorneys who would then have to hold multiple meetings with multiple parties in an effort to relay this information to the respective investigative teams.  Moreover, the quality of the information imparted from attorney to attorney degrades as the communication chain lengthens.  As such, the attendance of each of these eight attorneys was not only necessary, but critical to the Examiner's investigation.*

c.      On June 29, 2007, seven firm members (six Partners and one Legal Assistant (Bowman (240), Kline Dubill (455), Lambrakapoulos (525), Lanpher (625), Loughlin (750), Ochs (625), Reichardt (650)) attended a meeting.  The total time spent including any preparation time was 9.10 hours for a total fee of $5,031.00.

| 06/29/07 | M. B. Bowman | 6.60 | Videoconference regarding document review strategy with M. Missal and B. Kline Dubill and discussion afterwards (1.3);...........     1,584.00 |
| 06/29/07 | R.L. Kline Dubill | 4.30 | Video conference with team leaders and e-DAT regarding Pattern (1.3);.............1,956.50 |
| 06/29/07 | S. E. Lambrakopoulos | 5.80 | ..............; conference with team relating to document management issues (1.3);.............3,045.00 |
| 06/29/07 | L. C. Lanpher | 7.60 | .............; participate in meeting with New Century team members on document management issues (1.30);...............4,750.00 |
| 06/29/07 | W. P. Loughlin | 2.50 | ...............; participate in conference call on planning with respect to database access (1.3);......... 1,875.00 |
| 06/29/07 | B. A. Ochs | 6.60 | ............; meeting with M. Missal and others regarding document review strategy (1.3);............ 4,125.00 |
| 06/29/07 | G. R. Reichardt | 2.30 | .................; meeting with M. Missal, R. Kline Dubill and others, including Seattle colleagues, to discuss document and data review and organizational issues (1.3)      1,495.00 |

**Kirkpatrick's response:  June 29, 2007 Meeting**

*On June 29, 2007, certain team leaders participated in a videoconference with K&L Gates' E-Discovery group in our Seattle, Washington office to discuss the most efficient and effective way to load, process and review the millions of pages of documents that would be produced to the Examiner in the coming months.  K&L Gates attorneys would need to review and digest this information to ascertain and understand the facts underlying the investigation, as well as to prepare for the numerous upcoming witness interviews.*

*The team leaders who participated were Rebecca L. Kline Dubill, Stavroula Lambrakopoulos and*

*Lawrence C. Lanpher, whose roles have already been explained above. Also participating were Walter P. Loughlin, a K&L Gates partner specializing in internal investigations and securities enforcement and a team leader of the Accounting Team, Brian A. Ochs, a K&L Gates Partner specializing in internal investigations and securities enforcement and a team leader for the team performing background research on New Century, and Glenn R. Reichardt, a K&L Gates partner specializing in internal investigations and securities enforcement and a team leader of the Accounting Team.*

*The attendance of each of the various team leaders was necessary to determine the document review needs of each respective team and to share this information with the E-Discovery group in Seattle, Washington. Moreover, the team leaders, collectively, had to agree on a workable solution to review and digest the millions of pages of documents that would be produced to the Examiner in the coming months of the Examiner's investigation. Accordingly, the attendance of each participant was necessary to the Examiner's investigation.*

d.      On July 5 and 6, 2007, four firm members (two Partners, one Associate and one Legal Assistant; (Bowman (240), Kline Dubill (455), Topetzes (650), Koeppel (425)) attended meetings. The total time spent including any preparation time and non-working travel time was 76.40 hours[16] for a total fee of $29,553.25.

| | | | |
|---|---|---|---|
| 07/02/07 | R.L. Kline Dubill | 7.40 | .............; telephone conference with M. Missal and B. Lenhart and attention to follow up regarding same in preparation for meetings at New Century on July 5-6 (1.2);..............; review materials in preparation for New Century meetings on July 5-6 (1.8)    3,367.00 |
| 07/02/07 | S. G. Topetzes | 3.60 | Review and evaluate documents and materials related to interviews conducted by counsel for Special Committee of Board of Directors and outline issues related to relevant interviews to be conducted as part of examination (3.4);...............2,340.00 |
| 07/03/07 | M. B. Bowman | 6.70 | .................; Review and analyze Pricewaterhouse interview memoranda and Heller documents for upcoming meetings at New Century (2.8);................ 1,608.00 |
| 07/03/07 | R.L. Kline Dubill | 8.20 | ..................; prepare for meetings at New Century on July 5-6 , including drafting outline for same (4.2)    3,731.00 |

_____

[16] Time for this entry was located in the following project categories - (i) Investigation and (ii) Non-Working Travel.

| 07/03/07 | S. G. Topetzes | 3.20 | Further review of relevant materials regarding anticipated interviews of accounting and internal audit personnel (2.4);............. 2,080.00 |

07/04/07     M. B. Bowman     1.40     Preparation for upcoming meetings with New Century counsel and company personnel; review R. Kline Dubill outline and related document preservation memoranda (1.4)          336.00

07/04/07     R.L. Kline Dubill     3.30     Draft and revise outline for meetings at New Century on July 5 and July 6 (3.1); telephone conference with M. Missal regarding same (0.2) 1,501.50

07/04/07     S. G. Topetzes     2.20     Review materials in preparation for meetings with New Century representatives regarding documents and outline relevant issues (1.2);...........1,430.00

07/05/07     M. B. Bowman     8.90     ............; meeting with team members and BDO accountants before meetings at New Century's offices (.9); meetings with O'Melveny attorneys and New Century staff members (4.5);............ 2,136.00

07/05/07     R.L. Kline Dubill     7.70     Prepare for meetings at New Century (0.8); conference call with team in preparation for meetings at New Century (0.3); attend by phone meetings at New Century with O'Melveny attorneys and New Century employees (4.3);.............3,503.50

07/05/07     E. A. Koeppel     13.80     ...............; preparation for meetings with New Century and O Melveny & Myers concerning document preparation and related matters (2.8); attend meeting with New Century and O'Melveny & Myers concerning document preservation and related matters (4.5);...............5,865.00

07/05/07     S. G. Topetzes     9.40     Prepare for meeting with counsel for the debtor and New Century personnel regarding document identification and collection issues, and examine relevant materials (2.8); meeting with M. Missal, R. Kline-Dubill, E. Koeppel, M. Bowman, J. Halter, BDO representatives, counsel for New Century and certain New Century personnel regarding identification of relevant documents and related issues concerning examination (4.5);...........

|            |                 |      | 6,110.00 |
|------------|-----------------|------|----------|
| 07/06/07   | M. B. Bowman    | 5.20 | Review of notes and documents from meeting with New Century and O'Melveny and confer with team regarding outstanding issues (1.4); Meetings with O'Melveny and tour of New Century facilities (3.8); 1,248.00 |
| 07/06/07   | E. A. Koeppel   | 4.20 | Meeting with J. deNeve and New Century employees regarding document preservation and related issues (2.7);.................    1,785.00 |
| 07/06/07   | S. G. Topetzes  | 6.00 | Meetings with M. Missal, E. Koeppel, M. Bowman, J. Halter, J. deNeve (counsel for New Century) and New Century personnel regarding collection and identification of relevant records and related issues (3.0);....................3,900.00 |
| 07/05/07   | M. B. Bowman    | 2.90 | Non-working travel to Irvine, California (2.9)696.00 |
| 07/05/07   | E. A. Koeppel   | 4.00 | Travel to Irvine, California for meetings with New Century (4.0)   1,700.00 |
| 07/06/07   | M. B. Bowman    | 4.00 | Non-working travel from Irvine, California to Washington, D.C. (4.0)          960.00 |
| 07/06/07   | E. A. Koeppel   | 7.50 | Travel to Washington, D.C. from Irvine, California (7.5)    3,187.50 |

## Kirkpatrick's response:  July 5 and July 6, 2007 Meetings

*On July 5 and 6, 2007, Rebecca L. Kline Dubill (by telephone), Stephen G. Topetzes, Erin A. Koeppel and Matthew Bowman, in addition to the Examiner, attended a meeting with several of the Debtors' representatives and the Debtors' counsel regarding document identification, preservation and collection issues.  The respective roles of these individuals in the investigation have been explained more fully above.*

*At these meetings, these team leaders learned where the documents they would need to review in the upcoming months were stored, learned about the Debtors' electronic systems and discussed the appropriate means of collecting and processing these documents.  Considering the millions of pages of documents that were expected to be produced to the Examiner in the following months, K&L Gates submits that the preparation for, and attendance of four critical team leaders at, these meetings was both necessary and appropriate given the massive number of documents expected to be produced*

e.      On July 11, 2007, six firm members (five Partners and one Associate; Case (625), Kline
        Dubill (455), Koeppel (425), Lambrakopoulos (525), Reichardt (650), Topetzes (650))
        attended a meeting.  The total time spent including any preparation time was 14.10 hours
        for a total fee of $7,481.00.

| | | | |
|---|---|---|---|
| 07/11/07 | D. T. Case | 2.00 | ...............; participate in meeting with BDO Seidman, M. Missal, S. Topetzes, S. Lambrakopoulos, G. Reichardt regarding status of accounting analysis (1.5)      1,250.00 |
| 07/11/07 | R.L. Kline Dubill | 10.10 | Prepare for BDO meeting (1.5); conference with BDO and M. Missal, followed by conference with BDO, M. Missal and K&L team (3.7);............... 4,595.50 |
| 07/11/07 | E. A. Koeppel | 2.40 | Attend meeting with BDO Seidman regarding review of New Century accounting and other issues (1.7);.................      1,020.00 |
| 07/11/07 | S. E. Lambrakopoulos | 6.30 | Meet with BDO Seidman team regarding accounting investigation workplan (2.0);..............3,307.50 |
| 07/11/07 | G. R. Reichardt | 3.10 | Meeting with BDO representatives and members of K&L team, including M. Missal, R. Kline-Dubill, S. Topetzes, D. Case and S. Lambrakopoulos (2.2);.................      2,015.00 |
| 07/11/07 | S. G. Topetzes | 6.60 | Attend portion of meeting with BDO representatives regarding investigation and next steps (1.5);................. 4,290.00 |

## Kirkpatrick's response:  July 11, 2007 Meeting

*On July 11, 2007, Rebecca L. Kline Dubill, Glenn Reichardt, Stephen G. Topetzes and Erin A. Koeppel, all team leaders whose roles have been explained more fully above, attended a meeting with BDO, the Examiner's accountant and financial advisors. David T. Case, a K&L Gates partner specializing in internal investigations and commercial litigation, who is a team leader of the Internal Audit, the Audit Committee and BOD Teams, also attended.*

*This core group of team leaders met with the Examiner's financial advisors to discuss case strategy, the approach of the investigation and to learn the status of BDO's review on the various Accounting Issues.  Each team leader involved in this meeting was in charge of a significant portion of the investigation dealing with the varied Accounting Issues.  Thus, their presence was critical for this meeting.*

f.      On July 17, 2007, nine firm members (seven Partners and two Associates; Kline Dubill
        (455), Reichardt (650), Case (625), Kardis (625),Koeppel (425), Lambrakopoulos (525),
        Loughlin (750), McFall (325 ), Topetzes (650))  attended  meetings.  The total time spent
        including any preparation time was 60.90 hours for a total fee of $33,802.00.

| | | | |
|---|---|---|---|
| 07/13/07 | R.L. Kline Dubill | 6.50 | ...............; review materials in preparation for Pricewaterhouse meeting (1.5)          2,957.50 |
| 07/15/07 | G. R. Reichardt | 1.50 | Review memos regarding Heller Ehrmann/Pricewaterhouse investigation in preparation for briefing on July 17     975.00 |
| 07/16/07 | R.L. Kline Dubill | 4.60 | .................; review documents in preparation for Pricewaterhouse meeting (1.3)          2,093.00 |
| 07/17/07 | D. T. Case | 1.80 | Attend portion of presentation by Heller Ehrmann and Pricewaterhouse   1,125.00 |
| 07/17/07 | P. J. Kardis | 8.90 | Pricewaterhouse meeting (4.8); meeting with FTI (.7); meeting with BDO (1.4),...........5,562.50 |
| 07/17/07 | R.L. Kline Dubill | 9.60 | Prepare for meeting with Pricewaterhouse (1.1); attend meeting with Pricewaterhouse and Heller (4.8); attend meeting with FTI and Creditors' Committee (1.4); conference with accounting team subgroup regarding action items (0.8);............. 4,368.00 |
| 07/17/07 | E. A. Koeppel | 7.30 | Prepare for meeting with Price Waterhouse Coopers and Heller Ehrmann regarding internal investigation on behalf of New Century Audit Committee (1.5); attend presentation by Price Waterhouse Coopers and Heller Ehrmann regarding internal investigation on behalf of New Century Audit Committee (4.5);..................          3,102.50 |
| 07/17/07 | S. E. Lambrakopoulos | 9.20 | Meeting with Heller Ehrmann and Pricewaterhouse regarding Audit Committee investigation (3.8); meeting with Creditors' counsel and FTI regarding same (.7); meeting with accounting team and BDO Seidman regarding same (1.4);............... 4,830.00 |
| 07/17/07 | W. P. Loughlin | 8.90 | Prepare for meetings, including review of Heller Ehrmann and Pricewaterhouse materials (2.0), |

|  |  |  |  |
|---|---|---|---|
|  |  |  | attend Pricewaterhouse meeting (4.8), attend FTI meeting (.7), attend BDO meeting (1.4) 6,675.00 |
| 07/17/07 | A. R. McFall | 8.30 | ..................; attend Pricewaterhouse Coopers presentation related to its work for New Century's Audit Committee (4.8); attend meeting between K&L Gates, BDO Seidman, and FTI regarding work conducted by FTI (.7); attend meeting between BDO and K&L Gates regarding work plan for investigation (1.4);..............2,697.50 |
| 07/17/07 | G. R. Reichardt | 7.70 | Briefing by Pricewaterhouse and others (4.8); meeting with FTI representatives, creditor committee's counsel and others (0.7); meeting with BDO and K & L team members (1.4);............. 5,005.00 |
| 07/17/07 | S. G. Topetzes | 7.40 | Participate in substantial portions of meeting with M. Missal, K&L Gates Team, BDO representatives, counsel for Special Investigative Committee of Board of Directors, Pricewaterhouse representatives, and counsel and financial advisors to creditors committee (4.6);............; meeting with M. Missal, K&L Gates team, and BDO representatives regarding examination of relevant accounting issues (.6);..............4,810.00 |

## Kirkpatrick's response:  July 17, 2007 Meeting

*On July 17, 2007, team leaders Rebecca L. Kline Dubill, Glenn R. Reichardt, Stephen G. Topetzes, Erin A. Koeppel, Stavroula Lambrakopoulos, Walter P. Loughlin and David T. Case, all of whose roles have been explained more fully above, and two core team members, Andrew R. McFall and Phillip J. Kardis III, attending in their representative capacity for their various teams, attended a full day meeting with the financial professionals hired by the SIC of the board of directors of New Century, as well as Heller Ehrman, counsel to the SIC.  This meeting was arranged so that the financial and legal professionals hired by the SIC could set forth and explain to the financial and legal professionals hired by the Examiner their findings, as well as answer any questions the Examiner's professionals might have concerning the SIC Investigation.*

*The best and most efficient way for K&L Gates to perform its financial investigation was to begin by obtaining and understanding the information already gathered by New Century's internal investigation.  Only K&L Gates attorneys who were essential to the investigations pertaining to the Accounting Issues prepared for and attended this meeting.  In an effort to be cost-effective, the various team leaders then shared the information learned at this meeting with their respective teams upon their return.  Due to the broad subject matter being discussed and the limited availability to*

*meet with the SIC professionals in the future, it was necessary and appropriate for K&L Gates to send a core group of team leaders and team members to address any items that might affect the Examiner's investigation.*

g.      On July 16, 2007, nine firm members (six Partners, one Associate, one Legal Assistant and one Legal Secretary; (Bowman (240), Case (625), Fox (775), Koeppel (425), Lambrakopoulos (525), Nielson (525), Ochs (625), Shuttleworth (165) Topetzes (650)) participated in a conference call.  The total time spent including any preparation time was 10.80 hours for a total fee of $5,466.00.

| | | | |
|---|---|---|---|
| 07/16/07 | M. B. Bowman | 6.90 | Weekly status call with M. Missal and team leaders (1.2);...............1,656.00 |
| 07/16/07 | D. T. Case | 2.90 | ............; meeting with M. Missal, S. Topetzes and others regarding status and update on investigation (1.2);............1,812.50 |
| 07/16/07 | E. M. Fox | 3.70 | ............., New Century team leader call (1.2)...............2,867.50 |
| 07/16/07 | E. A. Koeppel | 2.50 | Attend weekly status meeting with Examiner concerning New Century bankruptcy and related investigation (1.2);............      1,062.50 |
| 07/16/07 | S. E. Lambrakopoulos | 7.80 | .............; attend status meeting with M. Missal regarding investigation (1.2);............4,095.00 |
| 07/16/07 | B. H. Nielson | 4.70 | Attend weekly status meeting and telephone conference with M. Missal, team leaders and BDO (1.2);...............2,467.50 |
| 07/16/07 | B. A. Ochs | 4.30 | ................; attend status meeting with team leaders (1.2)    2,687.50 |
| 07/16/07 | J. Shuttleworth | 2.20 | Attend meeting with team regarding status (1.2);............   363.00 |
| 07/16/07 | S. G. Topetzes | 6.90 | ................; meeting with M. Missal, K&L Gates team and BDO representatives regarding issues related to examination and relevant analysis (1.2);......................     4,485.00 |

**Kirkpatrick's response: July 16, 2007 meeting**

*The July 16, 2007 meeting was a Weekly Team Leaders Meeting as defined more fully above. Each of the nine participants were team leaders of varying investigative teams with the exception of Jennifer Shuttleworth, who attended the meeting to assist the Examiner with overall case management, and Bruce H. Nielson who is a core team member providing critical background research on New Century. Given the nature and purpose of these Weekly Team Leaders Meetings and the varying components of the Examiner's investigation which each team leader has been assigned to investigate, the attendance of each of these participants was essential.*

h.      On July 24, 2007, five firm members (four Partners and one Associate; Bornstein (525), Quinn (460), Reichardt (650), Shough (280), Topetzes (650)) participated in a conference call. The total time spent including any preparation time was 3.70 hours for a total fee of $2,028.50.

| 07/24/07 | J. J. Bornstein | 11.10 | ...................., conference call with BDO regarding forensic accounting (.3);.............5,827.50 |
| 07/24/07 | M. J. Quinn | 4.40 | .............; conference call with BDO regarding work plan (1.2);...............2,024.00 |
| 07/24/07 | G. R. Reichardt | 1.40 | ...............; conference call with BDO representatives and K&L Gates colleagues regarding BDO work plan (0.9)      910.00 |
| 07/24/07 | L. G. Shough | 11.10 | .............; conference call with BDO regarding forensic accounting (.3);...........3,108.00 |
| 07/24/07 | S. G. Topetzes | 5.70 | Conference call with BDO team and accounting and financial reporting team with respect to workplan (1.0);.............. 3,705.00 |

**Kirkpatrick's response:  July 24, 2007 Conference Call**

*On July 24, 2007, five K&L Gates professionals participated in a conference call with the Examiner's financial advisors, BDO. The participants included: (1) Glenn R. Reichardt; (2) Jeffrey L. Bornstein, a critical member of the Cash Collateral Team; (3) Michael J. Quinn, a team leader of the Outside Auditor Team; (4) Leah G. Shough, a critical member of the Cash Collateral Team; and (5) Stephen G. Topetzes. The roles of Messrs. Reichardt and Topetzes were previously described.*

*The purpose of the conference call was to get a status update from the Examiner's financial advisors, BDO, as well as to discuss a work plan going forward. In light of the expansive and complex nature of the Accounting Issues that the Examiner has been directed to investigate and the critical role of each of the participants with respect to the Accounting Issues, the participation of each attorney on this conference call was necessary and appropriate.*

i.      On July 30, 2007, ten firm members (six Partners, two Associates, one Legal Assistant
        and one Legal Secretary; Bowman (240), Case (625), Kline Dubill (455), Koeppel (425),
        Lambrakopoulos (525), Lanpher (625), Laughlin (750), Roeber (325), Shuttleworth (165)
        Topetzes (650)) participated in a conference call.  The total time spent including any
        preparation time was 9.30 hours for a total fee of $4,285.00.

| | | | |
|---|---|---|---|
| 07/30/07 | M. B. Bowman | 6.90 | Status conference call with M. Missal and team leaders (1.0);.............. 1,656.00 |
| 07/30/07 | D. T. Case | 3.80 | .............; attend meeting with M. Missal, S. Topetzes and others to address current status of investigation (1.0);.............2,375.00 |
| 07/30/07 | R.L. Kline Dubill | 9.10 | .............; attend team meeting (1.0);........... 4,140.50 |
| 07/30/07 | E. A. Koeppel | 1.00 | Attend weekly status conference with M. Missal and investigatory teams     425.00 |
| 07/30/07 | S. E. Lambrakopoulos | 7.10 | ................; participate in conference with team leaders and BDO (1.0);...............        3,727.50 |
| 07/30/07 | L. C. Lanpher | 8.10 | Participate in portion of team leader meeting with M. Missal and others (0.80);..............5,062.50 |
| 07/30/07 | W. P. Loughlin | 0.50 | Participate in conference call with K&L Gates and BDO Seidman 375.00 |
| 07/30/07 | J. H. Roeber | 1.10 | Accounting team status meeting conference call (1);...........        357.50 |
| 07/30/07 | J. Shuttleworth | 2.40 | Attend team status meeting (1.0);.............        396.00 |
| 07/30/07 | S. G. Topetzes | 6.30 | ...............; meeting with K&L Gates team regarding status of investigation and related matters (1.0);.............. 4,095.00 |

## Kirkpatrick's response:  July 30, 2007 Meeting

*The July 30, 2007 meeting was a Weekly Team Leaders Meeting involving all of the team leaders that are involved in the Accounting Issues.  The only two attendees who were not team leaders were Jennifer Shuttleworth and Justin H. Roeber.  Ms. Shuttleworth's role in these meetings has been explained more fully above.  Mr. Roeber is an associate and a critical team member of the Accounting Team.  At this meeting, the various team leaders and core team members discussed many aspects of the investigation of the various Accounting Issues, gave status updates regarding each*

*of their teams' efforts and set upcoming deadlines to meet the goals of the Examiner's investigation. As such, K&L Gates submits that the participation of each attendee was necessary and appropriate.*

j.    On July 31, 2007, EMF and SGT (two Partners; Fox (775), Topetzes (650)) attended a hearing  The total time spent including any preparation and non-working travel time was 10.00 hours[17] for a total fee of $6,437.50.

| | | | |
|---|---|---|---|
| 07/31/07 | E. M. Fox | 2.00 | Travel to and from Wilmington for hearing on KPMG 2004 application        1,550.00 |
| 07/31/07 | E. M. Fox | 3.70 | Prepare for (2.5) and attend (1.2) hearing on Rule 2004 application for KPMG   2,867.50 |
| 07/31/07 | S. G. Topetzes | 4.30 | Prepare for argument related to Rule 2004 Motion with respect to KPMG and evaluate additional research and other materials (3.1); attend hearing and present argument on behalf of the Examiner (1.2)    2,795.00 |

### Kirkpatrick's response:  July 31, 2007 Hearing

*On July 31, 2007, Edward M. Fox and Stephen G. Topetzes attended a hearing with the Court to present the Examiner's Rule 2004 Motion for an order authorizing the examination of KPMG, the Debtor's outside auditors, and compelling the production by KPMG of documents needed by the Examiner to conduct his investigation pursuant to the Examiner Order.  The Rule 2004 Motion was hotly contested by KPMG and required several court hearings to resolve.  As stated more fully above, due to Mr. Fox's bankruptcy expertise and Mr. Topetzes' expertise and knowledge of the nature of the Examiner's investigation, particularly with respect to the Accounting Issues to which the documents relate, K&L Gates submits that the participation of both Mr. Fox and Mr. Topetzes was necessary and appropriate.*

k.    On June 27, 2007, EMF and SGT (two Partners; Fox (775) Topetzes (650)) attended a hearing  The total time spent including any preparation and non-working travel time was 18.60 hours[18] for a total fee of $9,886.25.

| | | | |
|---|---|---|---|
| 06/26/07 | E. M. Fox | 6.80 | Travel from Los Angeles to Philadelphia and drive to Wilmington for court hearing        5,270.00 |
| 06/27/07 | E. M. Fox | 3.50 | Return travel from Wilmington, DE to Stamford, |

---

[17] Time for this entry was located in the following project categories - (i) Court Hearings and (ii) Non-Working Travel.

[18] Time for this entry was located in the following project categories - (i) Retention of Professionals and (ii) Non-Working Travel.

|  |  |  | CT after conclusion of court hearing  2,712.50 |
|---|---|---|---|
| 06/27/07 | E. M. Fox | 4.20 | Prepare for (.8) and attend hearing on K&L retention, technology sale, adequate protection and other matters (3.2)............. 3,255.00 |
| 06/27/07 | S. G. Topetzes | 4.50 | Prepare for and attend hearing related to proposed retention of K&L Gates as counsel for the Examiner and issues raised in responses filed by certain creditors (4.3);............. 2,925.00 |

**Kirkpatrick's response:  June 27, 2007 Hearing**

*On June 27, 2007, the Court held a hearing related to, among other things, the proposed retention of K&L Gates as counsel to the Examiner.  Edward M. Fox and Stephen G. Topetzes, whose backgrounds and specialties are explained above, attended this hearing.  Mr. Fox's attendance at the hearing was necessary because it was a bankruptcy proceeding requiring the expertise of bankruptcy counsel and Mr. Topetzes' attendance was necessary to discuss the extensive internal investigations experience of K&L Gates and the planned investigative efforts going forward.  Each attorney had specific knowledge and expertise that was critical to the retention hearing and, as such, the presence of each at the hearing was necessary and appropriate.*

l.      On June 28, 2007, PJK, RLKD and SEL (three Partners; Kardis (625), Kline Dubill (455), Lambrakopoulos (525)) attended a meeting  The total time spent including any preparation time was 4.50 hours for a total fee of $2,407.50.

| 06/28/07 | P. J. Kardis | 1.50 | Meeting with forensic accountants     937.50 |
|---|---|---|---|
| 06/28/07 | R.L. Kline Dubill | 1.80 | Conference with forensic accountants regarding possible retention and discuss same with team (1.5);.............. 819.00 |
| 06/28/07 | S. E. Lambrakopoulos | 1.50 | Participate in interview of proposed accountant (1.5)    787.50 |

**Kirkpatrick's response:  June 28, 2007 Meeting**

*On June 28, 2007, three K&L Gates attorneys participated in a further interview of forensic accountants to determine whether they should be retained to assist the Examiner with his investigation. The specific expertise and roles of Rebecca L. Kline Dubill, Phillip J. Kardis III and Stavroula Lambrakopoulos has been explained more fully above.  K&L Gates considered over fourteen (14) accounting firms and interviewed eight (8) different accounting firms over the course of several days.  In light of the number of accounting firms considered and interviewed, as well as the significant work the forensic accountants would undertake on behalf of the Examiner in such a large and varied investigation, K&L Gates submits that the 4.5 hours of time spent by two team*

*leaders and a critical team member on behalf of the various teams dealing with the Accounting Issues was necessary and appropriate.*

Exhibit B.
(Interviews)

a.      On June 13, 14 and 18, five firm members (all Partners; Fox (775), Lambrakopoulos
        (525), Topetzes (650), Kardis (625), Kline Dubill (455)) interviewed accountants.   The
        total time spent including any preparation and non-working travel time was 61.60 hours[19]
        for a total fee of $36,115.25.

| | | | |
|---|---|---|---|
| 06/13/07 | E. M. Fox | 2.00 | Travel to Washington, D.C. for Accountant interviews (2.0)          1,550.00 |
| 06/18/07 | E. M. Fox | 2.70 | Travel to Washington (1.0) for accountant interviews and meetings and return travel to New York (1.7)      2,092.50 |
| 06/11/07 | S. E. Lambrakopoulos | 2.00 | ...............; prepare outline for forensic accountants interview (1.3)1,050.00 |
| 06/12/07 | S. E. Lambrakopoulos | 2.00 | ................; review submissions by potential experts (1.7)    1,050.00 |
| 06/12/07 | S. G. Topetzes | 1.40 | Review proposals and related materials regarding potential engagement forensic accountants (1.4) 910.00 |
| 06/13/07 | E. M. Fox | 7.00 | Review forensic accountants' pitch books (1.0), interview forensic accountants (4.0) and discuss interviews with interview team (2.0   5,425.00 |
| 06/13/07 | P. J. Kardis | 4.80 | Interview forensic accountants (4.0) and meetings with M. Missal and K&L Gates on assessment of interviews (.8) 3,000.00 |
| 06/13/07 | R.L. Kline Dubill | 7.10 | Review proposals from forensic accounting firms to prepare for interviews (0.8); conduct interviews of forensic accounting firms and discuss interviews with team in attendance, including S. Topetzes, E. Fox, S. Lambrakopoulos, M. Missal and P. Kardis (5.8);.........3,230.50 |
| 06/13/07 | S. E. Lambrakopoulos | 6.00 | Participate in interviews of accounting experts (5.0); various conferences with team members regarding |

_____

[19] Time for this entry was located in the following project categories - (i) Non-Working Travel and (ii) Retention of Professionals.

|            |                        |       | same (1.0)      3,150.00                                                                                                                                   |
|------------|------------------------|-------|-----------------------------------------------------------------------------------------------------------------------------------------------------------|
| 06/13/07   | S. G. Topetzes         | 4.30  | Meetings with M. Missal, R. Kline-Dubill, S. Lambrakopoulos, E. Fox and candidates for forensic accountants or accounting advisors and review additional presentation materials (4.3) 2,795.00 |
| 06/14/07   | E. M. Fox              | 1.60  | Review forensic accountants' materials (.6) and interview forensic accountants (1.0)  1,240.00 |
| 06/14/07   | P. J. Kardis           | 1.00  | Interview of forensic accountants      625.00 |
| 06/14/07   | R.L. Kline Dubill      | 1.90  | Conference with BDO regarding possible retention and conference with team regarding same (1.0);............  864.50 |
| 06/14/07   | S. E. Lambrakopoulos   | 1.80  | Review materials relating to retention of accountants (.8); participate in interview of accounting firm (.1)  945.00 |
| 06/14/07   | S. G. Topetzes         | 1.00  | Meeting with additional candidate to serve as accounting and financial advisors to Examiner (1.0) 650.00 |
| 06/18/07   | E. M. Fox              | 4.20  | Review accountant materials (.3), interview forensic accountants (3.2) and meeting with interview team regarding accountant selection (.7)  3,255.00 |
| 06/18/07   | P. J. Kardis           | 2.20  | Interview forensic accountants (2.2)  1,375.00 |
| 06/18/07   | R.L. Kline Dubill      | 3.70  | Prepare for and attend interviews of forensic accountants (2.7); conferences with team regarding same (1.0)      1,683.50 |
| 06/18/07   | S. E. Lambrakopoulos   | 4.30  | Participate in interviews in connection with retention of forensic accountants (3.3); various conferences with M. Missal, R. Kline Dubill, P. Kardis and S. Topetzes regarding same (1.0) 2,257.50 |
| 06/18/07   | S. G. Topetzes         | 3.00  | Meetings with candidates to serve as financial advisors and accounting consultants and review related materials (3.0) 1,950.00 |

**Kirkpatrick's response:  June 13, 14, 18 Interviews of Examiner's Proposed Accountants**

*On June 13, 14 and 18, five (5) K&L Gates professionals prepared for and participated in multiple interviews of the Examiner's proposed forensic accountants.  Rebecca L. Kline Dubill, is a K&L Gates partner with special expertise in internal investigations and securities enforcement and is a team leader for the Case Management and Outside Auditor Teams.  Edward M. Fox, is a K&L Gates partner with special expertise in bankruptcy and insolvency matters and is the team leader of the Bankruptcy Team.   Stephen G. Topetzes, a K&L Gates partner with expertise in internal investigations and securities enforcement, is a group leader in charge of coordinating the efforts of various team leaders and is also a team leader of the Accounting and Outside Auditor teams. Stavroula Lambrakopoulos is a K&L Gates partner with special expertise in securities enforcement and internal investigations, is a group leader in charge of coordinating the efforts of the various team leaders and is also a team leader of the Outside Auditor and Internal Controls Teams.  Phillip J. Kardis III is a K&L Gates partner with special expertise in corporate and transactional matters, particularly with respect to the mortgage banking and consumer credit industries and is a core member of the Accounting Team.*

*K&L Gates considered at least fourteen (14) different forensic accounting firms and interviewed eight (8) different firms over the course of several days in between other formational work at the outset of the investigation.*

*In light of the number of accounting firms considered, the numerous accounting firms interviewed and the significant work that the forensic accountants would undertake on behalf of the Examiner on a variety of matters in such a complex investigation, the participation of four team leaders and Philip J. Kardis III was necessary and appropriate.  K&L Gates took appropriate steps to ensure that only the most critical attorneys attended these eight (8) interviews.*

b.      On July 26, 2007, ARM, KOP and SGT (two Partners and one Associate; (McFall 325), Peterson (460), Topetzes (650)) attended an interview  The total time spent including any preparation and non-working travel time was 34.90 hours[20] for a total fee of $10,696.25.

| | | | |
|---|---|---|---|
| 07/26/07 | A. R. McFall | 2.80 | Interview with New Century financial employee 910.00 |
| 07/26/07 | K.O. Peterson | 4.00 | Prepare for and participate in interview of employee 1,840.00 |
| 07/26/07 | S. G. Topetzes | 6.20 | Prepare for and conduct interview of person in financial reporting area at New Century and related discussions with counsel for New Century (4.6);...............4,030.00 |

_____

[20] Time for this entry was located in the following project categories - (i) Investigation and (ii) Non-Working Travel.

| 07/25/07 | A. R. McFall | 8.40 | Travel from Washington, DC to Irvine, CA 2,730.00 |
| 07/25/07 | S. G. Topetzes | 3.00 | Travel to from Washington, D.C. to Irvine, CA for witness interviews at New Century offices 1,950.00 |
| 07/26/07 | A. R. McFall | 8.10 | Travel from Irvine, CA to Washington, D.C. 2,632.50 |
| 07/26/07 | S. G. Topetzes | 4.00 | Travel from Irvine, CA to Washington, DC after witness interviews at New Century offices (4.0) 2,600.00 |

### Kirkpatrick's response:  July 26, 2007 Interview

*On July 26, 2007, two partners, Stephen G. Topetzes and Kathleen O. Peterson and one associate, Andrew R. McFall, participated in the interview of a New Century employee with knowledge relevant to the repurchase reserve issues and financial reporting issues, two significant components of the Examiner's investigation. The background and expertise of each of the K&L Gates attorneys have been explained more fully above. Accordingly, the participation of each of these attorneys, with different backgrounds and responsibilities, at this interview was necessary and appropriate.*

c.    On July 13, 2007, four firm members (three Partners and one Associate; Bornstein (525), Fox (775), Lanpher (625), Shough (280)) attended an interview  The total time spent including any preparation and non-working travel time was 39.70 hours[21] for a total fee of $16,990.50.

| 07/13/07 | J. J. Bornstein | 8.10 | Prepare for interview with employee (.5); discuss interview strategy with L. Lanpher, E. Fox and L. Shough (1.0); interview employee along with L. Lanpher and E. Fox and L. Shough (6.3);.............4,252.50 |
| 07/13/07 | E. M. Fox | 4.50 | Interview employee (4.0)............    3,487.50 |
| 07/13/07 | L. C. Lanpher | 9.40 | Prepare for interview (3.00); participate in interview of a New Century employee on cash collateral issues (3.20);..............5,875.00 |
| 07/13/07 | L. G. Shough | 8.10 | Prepare for interview with employee (.5); discuss interview strategy with L. Lanpher, E. Fox and J. |

---

[21] Time for this entry was located in the following project categories - (i) Investigation and (ii) Non-Working Travel.

|          |                  |      | Bornstein (1.0); interview employee along with L. Lanpher, E. Fox, and J. Bornstein (6.3);........2,268.00 |
|----------|------------------|------|-----------------------------------------------------------------------------------------------------------|
| 07/13/07 | J. J. Bornstein  | 4.00 | Travel from Irvine, California to San Francisco, California (4.0)        2,100.00 |
| 07/13/07 | E. M. Fox        | 4.00 | Return travel to New York City from Irvine, California      3,100.00 |
| 07/13/07 | L. C. Lanpher    | 1.80 | Non-working travel time from Orange County back to Washington, D.C.   1,125.00 |
| 07/13/07 | L. G. Shough     | 4.10 | Travel from Irvine, California to San Francisco, California (4.1)        1,148.00 |

**Kirkpatrick's response:  July 13, 2007 Interview**

*On July 13, 2007, partners Lawrence C. Lanpher, Edward M. Fox and Jeffrey Bornstein and associate Leah G. Shough interviewed a New Century employee with information relevant to the Cash Collateral Issue.  Because of the overlap between the cash collateral and other issues to be investigated, the short time frame within which the investigation had to be completed and the interdisciplinary nature of the issues involved, the participation of the attorneys involved was necessary and appropriate for this interview.*

d.      On June 25, 2007, five firm members (three Partners and two Associates; Lanpher (625), (Fox (775), Elliot ($450), Shough (280), Bornstein (525) ) attended the interview of Etlin. The total time spent including any preparation and non-working travel time was 104.50 hours[22] for a total fee of $45,893.00.

| 06/22/07 | K. S. Elliott    | 4.40 | ................; prepare for debtor interviews regarding cash collateral issues (.7);..............     1,980.00 |
|----------|------------------|------|-----------------------------------------------------------------------------------------------------------|
| 06/22/07 | L. C. Lanpher    | 4.50 | Work on draft of an outline for the cash collateral interview(s) scheduled for Monday, June 25, 2007, including review of the Adequate Protection Motion and objections thereto (4.3) and telephone call with E. Fox pertaining to such preparations (.2)   2,812.50 |
| 06/23/07 | L. C. Lanpher    | 6.60 | Continue to prepare for interviews on the cash |

---

[22] Time for this entry was located in the following project categories - (i) Investigation and (ii) Non-Working Travel.

|          |                 |        | collateral issue scheduled for Monday, June 25, 2007, including completion of review of documents received from Debtor's counsel, review of pleadings on the adequate protection motion and the May 30, 2007 hearing transcript, and related materials and exchange e-mails with M. Missal regarding same 4,125.00 |
|----------|-----------------|--------|---|
| 06/24/07 | K. S. Elliott   | 10.00  | Prepare for interview of Debtor's CRO regarding cash collateral issues   4,500.00 |
| 06/24/07 | E. M. Fox       | 3.20   | Review Etlin first day affidavit (1.1) and May 30 transcript (.9) and prepare for interview of H. Etlin and B. Logan at O'Melveny (1.2)       2,480.00 |
| 06/24/07 | L. C. Lanpher   | 6.30   | Continued preparation for cash collateral interviews scheduled for Monday, June 25, 2007 in Los Angeles, including completion of an interview outline and sending same to K&L Gates colleagues who will be attending the interviews (5.6); research law on cash collateral issues (.7)       3,937.50 |
| 06/24/07 | L. G. Shough    | 4.10   | Review debtor's motion for an order to provide adequate protection, transcript from hearing on motion, declaration of H. Etlin in support of first day orders, interview outline drafted by L. Lanpher in preparation for interview with H. Etlin and B. Logan (2.9);.................       1,148.00 |
| 06/25/07 | J. J. Bornstein | 11.50  | Review materials and prepare for interview (3.7); confer with L. Lanpher, E. Fox, K. Elliott and L. Shough regarding information needed and approach to take in interviews (1.3); interview with B. Logan (O'Melveny) and Holly Etlin and Jamie Lisac (Alix Partners) (4.8);..............       6,037.50 |
| 06/25/07 | K. S. Elliott   | 6.70   | Meeting with E. Fox, L. Lanpher, J. Bornstein and L. Shough to prepare for Etlin interview (1.3); interview of H. Etlin regarding cash collateral and cash management issues (4.8)..............  3,015.00 |
| 06/25/07 | E. M. Fox       | 7.50   | Prepare for meeting with B. Logan and H. Etlin (.8), meeting with L. Lanpher, J. Bornstein, K. Elliott and L. Shough to prepare for meeting with B. Logan and H. Etlin (1.3) interview B. Logan, H. Etlin and |

| | | | |
|---|---|---|---|
| | | | J. Lisac regarding cash collateral issues (4.8)............ 5,812.50 |
| 06/25/07 | L. C. Lanpher | 9.90 | Work on trip to California to prepare for interview (3.1); meet with KL interview team prior to interview (1.3); conduct interviews on cash collateral matters (4.8);..............    6,187.50 |
| 06/25/07 | L. G. Shough | 13.60 | Prepare for interview of H. Etlin and B. Logan (5.6); conference with L. Lanpher, E. Fox, J. Bornstein, K. Elliott regarding information needed and approach for interview of H. Etlin and B. Logan (1.3); interview with H. Etlin, J. Lisac and B. Logan (4.8);.............. 3,808.00 |
| 06/25/07 | J. J. Bornstein | 1.80 | Non-working travel on return to San Francisco from Los Angeles (1.8)      945.00 |
| 06/25/07 | L. C. Lanpher | 3.00 | Non-working travel from  Washington, D.C. to Los Angeles (3.00) 1,875.00 |
| 06/25/07 | L. G. Shough | 2.00 | Return travel to San Francisco from Los Angeles (2.0)    560.00 |
| 06/26/07 | K. S. Elliott | 10.50 | Return travel to New York from Los Angeles after interview of Debtors' CRO regarding cash collateral issues   4,725.00 |
| 06/26/07 | L. C. Lanpher | 2.80 | Travel from Los Angeles to Washington, D.C. 1,750.00 |

## Kirkpatrick's response:  June 25, 2007 Interview

*On June 25, 2007, partners Lawrence C. Lanpher, Edward M. Fox and Jeffery Bornstein and associates, Kristin S. Elliott and Leah G. Shough, attended the scheduled interviews of not one witness, but three different witnesses, including the Debtors chief executive officer.  This was the first scheduled interview relating to the Cash Collateral investigation, an extremely contentious issue involving, not only the Debtors and the repurchase counterparties to the Debtors' repurchase agreements, but the Debtors' bankruptcy professionals.  The specific expertise and roles of the various K&L Gates attorneys have been explained more fully above.  In light of the important and contentious issues involved and the multiple interviews scheduled to occur that day, the participation of all five attorneys, including the two associates who kept detailed notes of the witness interviews, was necessary and appropriate for these interviews.*

<u>Exhibit C.</u>

| 06/01/07 | E. Moser | 2.10 | ............; conference with E. Rim and E. Fox regarding review of conflict reports (.4);...............; telephone conference with D. Lindberg regarding expedited conflict check procedures and issues (.2); draft email to all firm employees regarding connections with UST and related entities (.3); review responses to same (.4);............. 1,050.00 |
|---|---|---|---|
| 06/01/07 | E. Rim | 6.80 | Meet with E. Fox and E. Moser regarding conflicts check and disclosure procedures for retention (.4), print, review and record all conflicts search entries for necessary disclosure in M. Missal's verification statement and K&L Gates' retention application (5.3)................     2,210.00 |
| 06/02/07 | E. Rim | 19.30 | Review all conflicts entries to determine disclosures for retention of M. Missal as examiner and K&L Gates as counsel to the examiner (13.9);............ 6,272.50 |
| 06/03/07 | E. Rim | 10.10 | Review and record all conflicts entries for disclosure requirements for M. Missal's retention as examiner and K&L Gates' retention as counsel to the examiner (10.1);..............  3,282.50 |
| 06/04/07 | E. M. Fox | 13.10 | Meetings with E. Rim regarding retention and connection issues (2.5), meeting with J. Tripaldi regarding same (.8), calls with A. Cook (.5) and J. Sharp (.2) regarding fees derived from connections, meetings with E. Rim to review exhibits A and B to Missal retention application (1.2), calls with M. Missal (.4) and Purcell (.5) regarding Seattle litigation, meeting with E. Moser regarding same (.4), review e-mails regarding same (.6).............. 10,152.50 |
| 06/04/07 | E. Moser | 1.40 | Email correspondence with all firm employees regarding potential connections to NCFC and other parties in interest (.2); conference with E. Rim regarding interpretation of conflict data and related issues (.6); conference with E. Fox regarding conflict analysis issues (.4); email correspondence with M. Missal regarding conflict review and |

|            |             |       | disclosure issues (.2)   700.00 |
|------------|-------------|-------|---------------------------------|
| 06/04/07   | E. Rim      | 15.30 | Review, check and clear all conflicts entries for disclosure purposes (4.0), edit lists of representations (3.3), meetings with E. Fox to review connections (2.5) and to review exhibits (1.2),................. and meeting with E. Moser regarding conflict issues (.6)  4,972.50 |
| 06/05/07   | E. Rim      | 3.40  | Review conflicts entries for disclosure for errors and revisions (2.7), meetings with E. Fox regarding same (.7),.............1,105.00 |
| 06/06/07   | E. M. Fox   | 6.00  | ................, calls with J. Segerdahl (.2) and E. Collins regarding conflict issues (.2) and meeting with E. Moser regarding same (.3)     4,650.00 |
| 06/07/07   | K. S. Elliott | 0.80 | Work on conflicts disclosures for K&L Gates retention        360.00 |
| 06/07/07   | E. Moser    | 0.20  | Conference with E. Fox regarding conflict clearance and disclosure issues in New Century100.00 |

<u>Exhibit D.</u>

a.      On June 4, 2007, RLKD had a time entry listed as 6.20 hours for a total fee of $2,821.00.  The sub-parts total 5.70 hours for a total fee of $2,593.50 and a difference of $227.50.

| 06/04/07 | R.L. Kline Dubill | 6.20 | Conduct background research and related tasks (2.8); conferences with S. Lambrakopoulos (.5) and others (.4) regarding same; review New Century news and financial information (1.8); telephone conference with D. Cohen regarding document management process (.2)      2,821.00 |
|---|---|---|---|

*There was a typographical error in the subpart description for Ms. Kline Dubill's time.  The subpart should state ". . . conferences with S. Lambrakopoulos (.5) and others (.9) regarding same . . ."  As such, the total amount of time for Ms. Kline Dubill on June 4, 2007 remains unchanged at 6.20 hours and no reduction in fees is warranted.*

b.      On June 8, 2007, LCL had a time entry listed as 5.90 hours for a total fee of $3,687.50.  The sub-parts total  5.70 hours for a total fee of $3,562.50 and a difference of $125.00.

| 06/08/07 | L. C. Lanpher | 5.90 | Continued investigatory review of documents pertinent to New Century assignment to identify issues and subissues for the Examiner to pursue (2.4); meetings with M. Missal regarding same (.3); work on outline of preliminary issues (1.2); review binder of documents prepared by R. Kline Dubill and M. Missal relevant to the foregoing work (1.8) 3,687.50 |
|---|---|---|---|

*There was a typographical error in the subpart description for Mr. Lanpher's time.  The subpart should read "Continued investigatory review of documents pertinent to New Century assignment to identify and review (2.6) . . ."  Therefore, the total amount of time billed for Mr. Lanpher on June 8, 2007 remains unchanged at 5.90 hours and no reduction in fees is warranted.*

c.      On June 8, 2007, NFM had a time entry listed as 3.00 hours for a total fee of $645.00.  The sub-parts total 2.00 hours for a total fee of $430.00 and a difference in fee totals is $215.00.

| 06/08/07 | N. F. Meyers | 3.00 | Prepare and add New Century dates to calendar (.4); review and revise same (.2); prepare and send Adequate Protection pleadings to M. Missal and R. Kline Dubill (.4); retrieve Interim Compensation Procedures Order off PACER and distribute same (.3); review other sub-prime bankruptcy dockets for |
|---|---|---|---|

model pleadings (.7)   645.00

*There was an inadvertent miscalculation in Mr. Meyers' time. The 3.00 total hours should be adjusted to 2.00 hours, resulting in a $193.50 fee reduction. This fee reduction takes into account the 10% discount already deducted from Mr. Meyers' hourly billing rate of $215.00.*

      d.      On June 18, 2007, WPL had a time entry listed as 3.50 hours for a total fee of $2,625.00. The sub-parts total 3.40 hours for a total fee of $2,550.00 and a difference of $75.00.

| | | | |
|---|---|---|---|
| 06/18/07 | W. P. Loughlin | 3.50 | Review documents (.5); attend video conference on issues related to the matter (2.4), prepare memo regarding document requests (.5)       2,625.00 |

*There was a typographical error in the subpart description for Mr. Loughlin's time. The subpart description stating "attend videoconference on issues related to the matter" should indicate 2.5 hours, not 2.4 hours as was mistakenly indicated. Therefore, the total amount for Mr. Loughlin's time on June 18, 2007 remains unchanged at 3.50 hours and no reduction in fees is warranted.*

      e.      On June 29, 2007, LCL had a time entry listed as 7.60 hours for a total fee of $4,750.00. The sub-parts total 7.50 hours for a total fee of $4,687.50 and a difference of $62.50.

| | | | |
|---|---|---|---|
| 06/29/07 | L. C. Lanpher | 7.60 | Meet with P. Kardis to discuss repurchase agreement issues relevant to the cash collateral investigation (1.20); participate in meeting with New Century team members on document management issues (1.30); long telephone call with J. Bornstein regarding issues in the cash collateral investigation (0.6); work on memorandum to the cash collateral investigative team on work to be done (2.30); review documents related to the cash collateral investigation and otherwise prepare for upcoming interviews and document requests and review (2.1)    4,750.00 |

*There was a typographical error in the subpart description for Mr. Lanpher's time. The subpart should read ". . . work on memorandum to the cash collateral investigative team on work to be done (2.40) . . ." Therefore, the total amount of time billed for Mr. Lanpher remains unchanged at 7.60 hours and no reduction in fees is warranted.*

      f.      On June 6, 2007, BAO had a time entry listed as 5.00 hours for a total fee of $3,125.00. The sub-parts total 4.90 hours for a total fee of $3,062.50 and a difference of $62.50.

| | | | |
|---|---|---|---|
| 07/06/07 | B. A. Ochs | 5.00 | Review and revise memorandum regarding telephone call with Howrey & Simon (.8); meet |

with A. Feller regarding comments on memorandum regarding subprime market (.8); conference with A. Eldredge and B. Nielsen regarding executive compensation research (.8); work on issues list regarding insider stock sales (.8); review SEC release regarding Rule 10b5-1 (.8); conference with S. Baker to convey research assignment regarding insider stock sales (.9) 3,125.00

*There was an inadvertent miscalculation of Mr. Ochs' time. The 5.00 total hours should be adjusted to 4.90 hours, resulting in a $56.25 fee reduction. This fee reduction takes into account the 10% discount already deducted from Mr. Ochs' hourly billing rate of $625.00.*

      g.      On June 9, 2007, JJB had a time entry listed as 5.40 hours for a total fee of $2,835.00. The sub-parts total 5.20 hours for a total fee of $2,730.00 and a difference of $105.00.

| 07/09/07 | J. J. Bornstein | 5.40 | Confer with L. Shough, A. Kostner and L. Woo regarding repurchase agreement (1.3); Review and revise to-do list (.5); Review various loan repurchase agreement (2.4); confer with L. Lanpher regarding further handling (.2); review various email and prepare for interviews (.8) 2,835.00 |

*There was an inadvertent miscalculation in Mr. Bornstein's time. The 5.40 total hours should be adjusted to 5.20 hours, resulting in a $94.50 fee reduction. This fee reduction takes into account the 10% discount already deducted from Mr. Bornstein's hourly billing rate of $525.00.*

      h.      On June 11, 2007, MBB had a time entry listed as 10.60 hours for a total fee of $2,544.00. The sub-parts total 7.60 hours for a total fee of $1,824.00 and a difference of $720.00.

| 07/11/07 | M. B. Bowman | 10.60 | Review of documents, memoranda and notes regarding Examiner's issues in preparation of meetings and document review (1.9); meetings with O'Melveny & Myers personnel and document review and gathering efforts at New Century's offices (4.4); attention to L. Lanpher request for documents and materials for upcoming interviews (1.3)    2,544.00 |

*Three (3.0) hours of Mr. Bowman's time for July 11, 2007, should have been deducted from the time entry for the "Investigation" matter, thus resulting in a decrease from 10.60 hours to 7.60 hours. The three (3.0) hours should have been moved to the "Non-Working Travel" matter.*

*However, K&L Gates inadvertently did not charge the Debtors for Mr. Bowman's non-working travel time. The 10.60 total hours charged to the "Investigation" matter should thus be reduced to 7.60 hours, resulting in a fee reduction of $648.00 for this matter. This fee reduction takes into account the 10% discount already deducted from Mr. Bowman's hourly billing rate of $240.00.*

*An additional $324.00, however, should be added to the "Non-Working Travel" matter on account of Mr. Bowman's 3.0 hours of non-working travel time. The $324.00 figure takes into account K&L Gates' voluntary 10% discount and the additional 50% discount for non-working travel time.*

      i.      On July 17, 2007, ARM had a time entry listed as 8.30 hours for a total fee of $2,697.50. The sub-parts total 8.20 hours for a total fee of $2,665.00 and a difference of $32.50.

| 07/17/07 | A. R. McFall | 8.30 | Review memorandum related to New Century's document retention (.5); attend Pricewaterhouse Coopers presentation related to its work for New Century's Audit Committee (4.8); attend meeting between K&L Gates, BDO Seidman, and FTI regarding work conducted by FTI (.7); attend meeting between BDO and K&L Gates regarding work plan for investigation (1.4); meet with P. Kardis, R. Kline Dubill, S. Lambrakopoulos, and G. Reichardt to discuss meetings and future work to be conducted (.8) 2,697.50 |

*There was an inadvertent miscalculation of Mr. McFall's time. The 8.30 total hours should be adjusted to 8.20 hours, resulting in a $29.25 fee reduction. This fee reduction takes into account the 10% discount already deducted from Mr. McFall's hourly billing rate of $325.00.*

      j.      On July 18, 2007, SEL had a time entry listed as 5.70 hours for a total fee of $2,992.50. The sub-parts total 3.40 hours for a total fee of $1,785.00 and a difference of $1,207.50.

| 07/18/07 | S. E. Lambrakopoulos | 5.70 | Review Heller Ehrmann documents and material related to accounting issues (3.4)     2,992.50 |

*There was an inadvertent typographical error in the subpart description for Ms. Lambrakopoulos' time. The subpart should read "Review Heller Ehrman documents and material related to accounting issues (5.7)." Thus, the total amount billed for Ms. Lambrakopoulos' time for July 18, 2007 remains unchanged at 5.70 hours and no reduction in fees is warranted.*

      k.      On July 18, 2007, LCL had a time entry listed as 8.10 hours for a total fee of

$5,062.50.  The sub-parts total 7.60 hours for a total fee of $4,750.00 and a difference of
$312.50.

| 07/18/07 | L. C. Lanpher | 8.10 | Telephone call with B. Logan about interviews that the Examiner desires and related cash collateral matters (0.10); telephone calls to counsel for potential interviewees to seek to set up interviews and leave messages with each such counsel's office (0.10); telephone call and subsequent e-mails with BDO about assistance to the Examiner on cash collateral issues (0.50); e-mails and telephone calls with J. Bornstein (.2), review of documents (including documents produced today by New Century), updates to team members on investigation issues and additions to draft work plan document (6.70)  5,062.50 |
|---|---|---|---|

*There was a typographical error in the subpart description for Mr. Lanpher's time.  The subpart should read "Review of documents (including documents produced today by New Century), updates to team members on investigation issues and additions to draft work plan document (6.80)."  Therefore, the total amount of time billed for Mr. Lanpher remains unchanged at 8.10 hours and no reduction in fees is warranted.*

   l.  On July 18, 2007, ARM had a time entry listed as 8.30 hours for a total fee of
$2,697.50.  The sub-parts total 8.20 hours for a total fee of $2,665.00 and a difference of $32.50.

| 07/18/07 | A. R. McFall | 8.30 | Review memorandum related to New Century's document retention (.5); attend Pricewaterhouse Coopers presentation related to its work for New Century's Audit Committee (4.8); attend meeting between K&L Gates, BDO Seidman, and FTI regarding work conducted by FTI (.7); attend meeting between BDO and K&L Gates regarding work plan for investigation (1.4); meet with P. Kardis, B. Kline Dubill, S. Lambrakopoulos, and G. Reichardt to discuss meetings and future work to be conducted (.8) 2,697.50 |
|---|---|---|---|

*There was an inadvertent duplication of Mr. McFall's time from July 17, 2007 in Mr. McFall's July 18, 2007 time entry.  The July 18, 2007 time entry should read "draft memorandum regarding meeting with the financial advisors to the SIC (4.8)".  Mr. McFall's total hours should be reduced from 8.30 hours to 4.80 hours, resulting in a fee reduction of $1,023.75.  This fee reduction takes into account the 10% discount already deducted from Mr. McFall's hourly billing rate of $325.00.*

   m.  On July 30, 2007, JJB had a time entry listed as 5.50 hours for a total fee of

$2,887.50.  The sub-parts total 5.40 hours for a total fee of $2,835.00 and a difference of $52.50.

| 07/30/07 | J. J. Bornstein | 5.50 | Confer with L. Lanpher regarding status to date (.3); review draft memo (.9); prepare for interviews (2.0); review financial documents (1.5); review and revise highlight memo (.7)    2,887.50 |

*There was an inadvertent miscalculation of Mr. Bornstein's time.  The 5.50 total hours should be adjusted to 5.40 hours, resulting in a $47.25 fee reduction.  This fee reduction takes into account the 10% discount already deducted from Mr. Bornstein's hourly billing rate of $525.00.*

     n.     On July 31, 2007, JVC had a time entry listed as 5.90 hours for a total fee of $1,091.50.  The sub-parts total 5.10 hours for a total fee of $943.50 and a difference of $148.00.

| 07/31/07 | J. V. Catano | 5.90 | Attention to custodian email list and organization document (3.3); attention to boxes of documents received 7/28/2007 from Heller Ehrmann LLP regarding NCFC Internal Investigation (.7); Review Bates Range numbers related to Board of Directors Minutes and compile corresponding excel database including such information (1.1)    1,091.50 |

*There was a typographical error in the description of Mr. Catano's time.  The section of Mr. Catano's time entry should read "Review Bates Range numbers related to Board of Directors Minutes and compile corresponding excel database including such information (1.9)."  Therefore, the total amount of time billed for Mr. Catano remains unchanged at 5.90 hours and no reduction in fees is warranted.*

<u>Exhibit E.</u>

| 06/20/07 | L. C. Alvarez | 1.00 | Attend WebEx demonstration of Case Logistix document review program      240.00 |
|---|---|---|---|
| 06/20/07 | M. B. Bowman | 6.90 | Caselogistix demo videoconference (1.0);......... 1,656.00 |
| 06/20/07 | R.L. Kline Dubill | 3.50 | .............; attend Caselogistix training (1.1); 1,592.50 |
| 06/20/07 | E. A. Koeppel | 1.30 | Attend meeting regarding demonstration of Caselogistics software for use in document review (1.0);............   552.50 |
| 07/03/07 | J. D. Borrowman | 2.00 | Attend Ringtail training regarding New Century database      800.00 |
| 07/03/07 | M. B. Bowman | 6.70 | Training for New Century litigation database (2.0); prepare  for training session and email correspondence with IT staff in Pittsburgh office regarding database and licensing issues (.8);...............           1,608.00 |
| 07/03/07 | J. V. Catano[23] | 2.20 | Attend Ringtail training session regarding New Century proceedings   407.00 |
| 07/03/07 | A. H. Feller | 5.90 | Ringtail training (2.);.........   2,419.00 |
| 07/03/07 | E. Kane | 3.50 | ............; attend Ringtail training (1.8)          962.50 |
| 07/03/07 | S. Kurian | 2.00 | Participate in ringtail training (2.0)    550.00 |
| 07/03/07 | S. E. Lambrakopoulos | 6.60 | ...............; participate in Ringtail training (1.5);...........    3,465.00 |
| 07/03/07 | L. C. Lanpher | 7.50 | Attend Ringtail training for use of database (1.50);............ 4,687.50 |
| 07/03/07 | W. P. Loughlin | 2.00 | Attend Ringtail training relating to New Century issues   1,500.00 |

---

[23] This timekeeper lumped his time.  The full time entry was charged to this entry.  This can be adjusted when the time is broken down.

| | | | |
|---|---|---|---|
| 07/03/07 | A. R. McFall | 5.10 | ...............; attend Ringtail training session in preparation for document review and investigation (2.0)    1,657.50 |
| 07/03/07 | E. Moser | 6.90 | Participate in Ringtail training session (1.9);.................          3,450.00 |
| 07/03/07 | B. H. Nielson | 4.20 | Attend Ringtail New Century database training session (2.0);............   2,205.00 |
| 07/03/07 | B. M. Nikfar | 2.00 | Attend Ringtail training          600.00 |
| 07/03/07 | A. Porter | 1.90 | Attend database training session in preparation of document review related to Examiner's investigation          522.50 |
| 07/03/07 | M. J. Quinn | 2.10 | Attend Ringtail New Century document database training          966.00 |
| 07/03/07 | J. H. Roeber | 3.00 | Ringtail training program (2.1);............          975.00 |
| 07/10/07 | E. A. Koeppel | 5.50 | Attend training regarding Ringtail software for document review (1.0);............          2,337.50 |
| 07/20/07 | L. C. Alvarez | 2.80 | Attend Ringtail training program (1.8),.............. 672.00 |
| 07/20/07 | J. D. Borrowman | 5.70 | Attend Ringtail training (1.80);.................2,280.00 |
| 07/20/07 | M. B. Bowman | 8.80 | Set up and attend Ringtail training session and confer with Ringtail administrators regarding agenda and materials (1.7);................. 2,112.00 |
| 07/20/07 | J. V. Catano | 6.40 | Attend FTI Ringtail training session regarding New Century Proceedings;.................          1,184.00 |
| 07/20/07 | J. L. Hieb | 5.10 | Attend Ringtail WebEx training (1.7);.............2,014.50 |
| 07/20/07 | J. E. Holmes[24] | 7.80 | .................; attend training and schedule additional training;.................          1,560.00 |

[24] This timekeeper lumped his time.  The full time entry was charged to this entry.  This can be adjusted when the time is broken down.

| 07/20/07 | E. A. Koeppel | 1.50 | Attend Ringtail training          637.50 |
| 07/20/07 | B. H. Nielson | 5.80 | Attend supplemental training session for Ringtail database (1.8);...............          3,045.00 |
| 07/20/07 | B. M. Nikfar | 1.60 | Attend Ringtail training session          480.00 |
| 07/24/07 | K. S. Asfour | 2.30 | Ringtail training seminar; analysis of issues pertaining to document review          839.50 |
| 07/24/07 | J. D. Borrowman | 3.00 | Ringtail training (1.80); review materials relevant to the matter (1.20)          1,200.00 |
| 07/24/07 | A. J. Camron | 1.50 | Participate in training regarding e-mail and document searching and review          622.50 |
| 07/24/07 | T. W. Fredricks | 8.10 | Attend training session regarding access to stored documents (1.5);............          2,511.00 |
| 07/24/07 | S. M. Henry | 1.50 | Attend WebEx training on Ringtail document review software in preparation for review of documents received from New Century officers and employees          675.00 |
| 07/24/07 | S. Kurian | 2.40 | Participate in ringtail training (1.8);............660.00 |
| 07/24/07 | M. J. Quinn | 4.40 | Attend training for use of Ringtail document database (1.5);............ 2,024.00 |
| 07/24/07 | J. L. Wayne[25] | 2.80 | Attend Ringtail training session;........... 1,092.00 |
| 07/30/07 | L. C. Alvarez | 1.20 | Attend Ringtail training program.          288.00 |
| 07/30/07 | M. B. Bowman | 6.90 | .........; set up and attend Ringtail training and review material in preparation for that training (1.6);...........1,656.00 |
| 07/30/07 | A. J. Camron | 1.10 | Participate in session regarding document review 456.50 |
| 07/30/07 | J. V. Catano | 7.40 | Attend Ringtail training session;................ |

[25] This timekeeper lumped his time.  The full time entry was charged to this entry.  This can be adjusted when the time is broken down.

1,369.00

| 07/30/07 | A. Kostner | 8.10 | Attend training on document review database (0.8);.............. 2,146.50 |
| 07/30/07 | S. Kurian | 4.90 | ..................; ringtail training (1.2);............... 1,347.50 |
| 07/30/07 | A. R. McFall | 10.60 | ................; attend additional Ringtail training session specific to New Century matter (1.0);...............3,445.00 |
| 07/30/07 | A. Porter | 1.20 | Attend computer training on using Ringtail document review system; conference with counsel discussing issues related to document review system and process for document review      330.00 |
| 07/30/07 | M. J. Quinn | 2.30 | Attend particularized Ringtail training (1.1);............. 1,058.00 |
| 07/30/07 | L. M. Richman | 6.70 | ..............; additional ringtail training regarding stored lists and saved searches (1.1)   2,579.50 |
| 07/30/07 | J. L. Wayne | 6.40 | Attend Ringtail training session (1.1);........... 2,496.00 |
| 07/30/07 | L Woo | 7.40 | Attend Ringtail training regarding advanced functions (0.9);...........1,813.00 |

Exhibit F.

| 06/06/07 | J. Shuttleworth | 1.60 | Attention to various e-mails and other items relating to New Century investigation | 264.00 |
|---|---|---|---|---|
| 06/07/07 | J. Shuttleworth | 0.80 | Review of various documents and e-mails | 132.00 |
| 06/08/07 | J. Shuttleworth | 1.10 | Review of various documents and e-mails (.8); various conferences with individual team members (.3) | 181.50 |
| 06/11/07 | J. Shuttleworth | 2.10 | Attend informational team meeting (1.5); review of documents and e-mails (.6) | 346.50 |
| 06/12/07 | J. Shuttleworth | 1.40 | Review various documents (.6); prepare memos (.8) | 231.00 |
| 06/13/07 | J. Shuttleworth | 0.90 | Review of various e-mails and documents (.9) | 148.50 |
| 06/14/07 | J. Shuttleworth | 1.20 | Arrange for file openings (.4); review various documents (.8) | 198.00 |
| 06/18/07 | J. Shuttleworth | 0.70 | Review of various documents and e-mails | 115.50 |
| 06/21/07 | J. Shuttleworth | 2.30 | Review of various documents (.6); telephone calls and conferences with team members (.5); attention to various e-mails and documents (1.2) | 379.50 |
| 06/25/07 | J. Shuttleworth | 0.80 | Various conferences with team (.4); review of various documents (.4) | 132.00 |
| 06/28/07 | J. Shuttleworth | 1.70 | Various conferences with team (.4); review of various documents (.7); prepare memos (.6) | 280.50 |
| 07/09/07 | J. Shuttleworth | 4.20 | Review of various e-mails and documents (.6); attention to scheduling issues (.5); various meetings with team members (3.1) | 693.00 |
| 07/10/07 | J. Shuttleworth | 1.90 | Review of various documents and e-mails; attention to scheduling issues | 313.50 |
| 07/11/07 | J. Shuttleworth | 3.70 | Review of various documents and e-mails (1.3); various conferences with team members (.9); review and revise memos (1.5) | 610.50 |
| 07/12/07 | J. Shuttleworth | 2.10 | Review of various documents; various conferences with team | 346.50 |

| 07/13/07 | J. Shuttleworth | 1.20 | Various conferences with team regarding scheduling and e-mail issues (.6); review of memos and e-mails (.6) | 198.00 |
| 07/13/07 | J. Shuttleworth | 2.40 | Attend team status meeting (1.2); attention to various follow-up issues (.4); review of various documents and e-mails (.8) | 396.00 |
| 07/16/07 | J. Shuttleworth | 2.20 | Attend meeting with team regarding status (1.2); review various communications with team (.4); review of documents and e-mail (.6) | 363.00 |
| 07/17/07 | J. Shuttleworth | 0.50 | Review of various documents and e-mails (.4); prepare memo (.1) | 82.50 |
| 07/18/07 | J. Shuttleworth | 0.70 | Review of various e-mails and documents (.5); attention to scheduling issues (.2) | 115.50 |
| 07/20/07 | J. Shuttleworth | 1.60 | Review various e-mails and memos (.8); attend portion of team meeting (.5); various meetings with team members (.3) | 264.00 |
| 07/30/07 | J. Shuttleworth | 2.40 | Attend team status meeting (1.0); review various e-mails and memos (.9); various conferences with members of team (.3) | 396.00 |

Response Exhibit 1

K&L Gates notes that, due to the Debtors' frequent last minute scheduling of critical witness interviews, K&L Gates often received only two or three days advance notice within which to make travel plans.  As this last minute travel took place during the height of the summer travel season, airfare, car rental and lodging expenses were frequently higher than they might otherwise have been due to a lack of availability and the higher prices charged by hotels and airlines for last minute travel.  Such increased expenses were unavoidable on the part of K&L Gates.

Edward M. Fox's travel expenses incurred between June 13, 2007 and June 15, 2007 in the total amount of $1,096.92 consisted of two nights lodging at the Mayflower Hotel in Washington, D.C. for $479.00 per night plus applicable taxes.

Edward M. Fox's travel expenses incurred June 25, 2007 in the aggregate amount of $142.50 consisted of: (1) taxi fare from his home in Rye, New York to the La Guardia Airport on June 13, 2007 in the amount of $90.00; (2) taxi fare from the Washington National Airport to K&L Gates' Washington, D.C. Office on June 13, 2007 in the amount of $20.00; (3) taxi fare from K&L Gates' Washington, D.C. Office to his hotel on June 13, 2007 in the amount of $8.50; (4) taxi fare from his hotel in Washington, D.C. to the Amtrak Union station in Washington, D.C. on June 15, 2007 in the amount of $10.00; (5) taxi fare from the Wilmington, Delaware Amtrak train station to the United States Bankruptcy Court for the District of Delaware on June 15, 2007 in the amount of $8.00; and (6) taxi fare from the Bankruptcy Court to the Wilmington, Delaware Amtrak train station on June 15, 2007 in the amount of $6.00.

Kristin S. Elliott's travel expenses incurred between June 24, 2007 and June 26, 2007 in the aggregate amount of $1,069.52 consisted of two nights lodging at the Los Angeles Marriott at the rate of $469.00 per night plus applicable taxes.

Edward M. Fox's travel expenses incurred between June 24, 2007 and June 27, 2007 in the aggregate amount of $1,574.42 consisted of two nights lodging at the Los Angeles Marriott at the rate of $469.00 per night plus applicable taxes and one night's lodging at Hotel Dupont in Wilmington, Delaware at the rate of $429.00 per night plus applicable taxes, for a total of three nights lodging.

Edward M. Fox's travel expenses incurred June 24, 2007 in the amount of $130.00 was on account of taxi fare from his home in Rye, New York to Newark International Airport.

Erin A. Koeppel's travel expenses incurred between July 5, 2007 and July 6, 2007 in the aggregate amount of $192.98 consisted of: (1) one night's lodging at the Crowne Plaza Hotel in Irvine at the rate of $130.98 per night plus applicable taxes; and (2) taxi fare from Dulles International Airport to her home in Washington D.C. in the amount of $62.00.

Lawrence C. Lanpher's travel expenses incurred between June 25, 2007 and June 26, 2007 in the aggregate amount of $491.76 consisted of: (1) mileage for roundtrip travel in his personal car from his home to Dulles International Airport (66 miles) and back at the rate of $0.485 per mile for a total of $32.01; (2) cab fare from Los Angeles International Airport to his

hotel in the amount of $52.00; (3) one night's lodging at the Los Angeles Marriott at the rate of $322.75 per night plus applicable taxes; (4) cab fare from his hotel to Los Angeles International Airport in the amount of $55.00; and (5) parking charges at Dulles International Airport in the amount of $30.00.

Stephen G. Topetzes' travel expenses incurred June 27, 2007 in the aggregate amount of $88.00 consisted of taxi fare from his home to the Washington D.C. Amtrak train station in the amount of $48.00 and taxi fare from the Baltimore Amtrak train station to Baltimore Washington International Airport in the amount of $40.00.

K&L Gates will reduce Stephen G. Topetzes' travel expenses incurred between July 5, 2007 and July 6, 2007 from $290.00 to $72.00. Mr. Topetzes incurred a charge of $72.00 for parking at Dulles International Airport.

Kristin S. Elliott's travel expenses incurred between July 23, 2007 and July 25, 2007 in the aggregate amount of $1,064.33 consisted of three nights of lodging at the Marriott Hotel in Irvine at the rate of $319.00 per night plus applicable taxes and a hotel parking charge of $14.00.

Robert Lawton's travel expenses incurred between July 11, 2007 and July 13, 2007 in the aggregate amount of $522.91 consisted of: (1) two nights lodging at Crowne Plaza Hotel in Irvine at the rate of $179.00 per night plus applicable taxes; (2) parking charges at Baltimore Washington International Airport in the amount of $60.00; and (3) mileage to and from his home in Harrisburg, PA to Baltimore Washington International Airport (71 miles each way) at the rate of $0.485 per mile in the amount of $68.87.

K&L Gates will reduce Stavroula E. Lambrakopoulos' travel expenses incurred between July 11, 2007 and July 13, 2007 from $955.93 to $818.48. Ms. Lambrakopoulos' travel expenses consisted of: (1) two nights lodging The Westin Bonaventure Hotel & Suites in Los Angeles at the rate of $209 per night plus applicable taxes; (2) cab fare from her home to the K&L Gates Washington, D.C. office on July 11, 2007 in the amount of $23.20; (3) dinner in the amount of $18.35 on July 11, 2007; (4) cab fare from the Los Angeles International Airport to her hotel for $56.00; (5) lunch for five attorneys while reviewing documents on July 12, 2007 in the amount of $38.59; (6) lunch in the amount of $3.60 on July 12, 2007; (7) lunch in the amount of $21.03 on July 13, 2007; and (8) cab fare from her hotel to the Los Angeles International Airport in the amount of $56.00.

Stephen G. Topetzes' travel expenses incurred between July 11, 2007 and July 14, 2007 in the aggregate amount of $722.90 consisted of: (1) two nights lodging at the Crowne Plaza Hotel in Irvine at the rate of $179.00 per night plus applicable taxes; (2) taxi fare from K&L Gates Washington D.C. office to Reagan National Airport in the amount of $17.00; (3) taxi fare from the Santa Ana Airport to his hotel for $10.00; (4) a breakfast for four attorneys on July 12, 2007 in the amount of $65.41; (5) a breakfast for four attorneys on July 13, 2007 in the amount of $74.17; (6) a dinner for four attorneys for $84.02; (7) a dinner for $9.26 on July 13, 2007; (8) parking expenses in the amount of $11.25 at New Century's headquarters; (9) parking expenses

in the amount of $3.75 in Irvine, California; and (10) taxi fare in the amount of $54.00 from Dulles International Airport to K&L Gates Washington, D.C. office.

K&L Gates will reduce Lawrence C. Lanpher's travel expenses incurred between July 11, 2007 and July 13, 2007 from $1,472.06 to $889.40.  Mr. Lanpher's expenses consisted of: (1) breakfast on July 11, 2007 in the amount of $2.60; (2) lunch for seven attorneys on July 11, 2007 for $53.95; (3) breakfast on July 12, 2007 in the amount of $3.26; (4) breakfast on July 13, 2007 in the amount of $5.51; (5) two nights lodging at the Crowne Plaza Hotel in Irvine at the rate of $209.00 per night plus applicable taxes; (6) business-related long distance phone charges of $6.58 on account of New Century matters; (7) lunch for two attorneys on July 13, 2007 in the amount of $14.10; (8) parking at Dulles International Airport for $45.00; (9) round trip mileage expense from his home in Southern Maryland to Dulles International Airport and back (65 miles) at the rate of $0.485 per mile in the amount of $31.53; and (10) a rental car expense on for three days at the rate of $77.75 per day plus applicable taxes, for a total amount of $252.29.

Seba P. Kurian's travel expenses incurred between July 12, 2007 and July 13, 2007 in the aggregate amount of $599.46 consisted of: (1) breakfast at her hotel on July 12, 2007 for $25.60; (2) breakfast at her hotel on July 13, 2007 for $32.00; (3) taxi fare from Dulles International Airport to her home for $65.00; and (4) two nights lodging at The Westin Bonaventure Hotel & Suites in Los Angeles at the rate of $209.00 per night plus applicable taxes.

Michael J. Missal's travel expenses incurred between July 5, 2007 and July 6, 2007 in the aggregate amount of $367.02 consisted of: (1) car rental fees in the amount of $157.59; (2) parking fees in the amount of $12.50; (3) dinner in the amount of $53.95; and (4) one night's lodging at a hotel in the amount of $142.98.

K&L Gates will reduce Matthew B. Bowman's travel expenses incurred between July 11, 2007 and July 13, 2007 from $568.81 to $517.17.  Mr. Bowman's travel expenses consisted of: (1) breakfast on July 11, 2007 in the amount of $3.13; (2) parking fees in the amount of $11.00; (3) two nights lodging at the Crowne Plaza Hotel in Irvine at the rate of $179.00 per night plus applicable taxes; and (4) cab fare from Dulles International Airport to his home in Germantown, MD.

Matthew B. Bowman's travel expenses incurred between July 5, 2007 and July 7, 2007 in the aggregate amount of $420.54 consisted of: (1) breakfast on July 5, 2007 in the amount of $4.36; (2) one night's lodging at the Crowne Plaza Hotel in Irvine in the amount of $119.00; (2) breakfast at the hotel restaurant on July 6, 2007 for five attorneys in the amount of $101.20; (3) cab fare from Dulles International Airport to his home in Germantown, MD in the amount of $85.00; and (4) the purchase of a 60 GB minidrive used to send a massive document production from K&L Gates' Washington, D.C. Office to K&L Gates' Pittsburgh office which needed to be received the next day.  In an effort to build the Ringtail document database as quickly as possible, which would eventually store in excess of 2.5 million megabytes of data, K&L Gates required the use of the minidrive to transfer the material to its Pittsburgh office.  Other means of transferring the large amount of electronic data in such a short time frame had been attempted but such efforts proved to be extremely inefficient and more costly.  It was imperative for K&L Gates to get this

material to its attorneys for review as quickly as possible because of the large amount of documents being produced on a rolling basis and the short time frame for the investigation.

Linda Woo's travel expenses incurred July 11-13, 2007 in the aggregate amount of $636.20 consisted of two nights lodging at the Marriott Hotel in Irvine at the rate of $289.00 per night plus applicable taxes.

Jeffrey L. Bornstein's travel expenses incurred July 11-13, 2007 in the aggregate amount of $724.20 consisted of two nights lodging at the Marriott Hotel in Irvine at the rate of $329.00 per night plus applicable taxes.

Response Exhibit 2.

In New York City, cabs do not generally travel beyond Manhattan.  Eunice Rim resides in Queens, NY, and both Edward M. Fox and Elaine Fera reside in Westchester County, New York. All of the carfare expenses incurred with respect to both Eunice Rim and Elaine Fera were incurred from the New York Office of K&L Gates to their respective homes in Queens and Westchester upon working on New Century matters late in the evening.

In the Washington, D.C. metro area, which includes Southern Maryland, and Northern Virginia, Barwood Taxi (Blue Star Group) is the taxi company servicing the Montgomery County Area of Maryland where Matthew Bowman resides and Red Top Executive Sedan is the taxi company servicing Northern Virginia where the Dulles International Airport is located. Matthew Bowman and Erin Koeppel each used the existing taxi services within their locations for transportation to Dulles International Airport to travel to an interview.

Eunice Rim's cab far expense of $44.40 on June 3, 2007 was for travel from the K&L Gates' New York Office in Manhattan to her home in Bayside, NY (Queens) at 10:13 p.m. on a Sunday evening.  Ms. Rim had spent the entire day and evening working on retention matters related to the mandated Fed. R. Bankr. P. 2014(a) disclosures in the New Century matter.

Edward M. Fox's cab fare expenses incurred June 18-19, 2007 in the aggregate amount of $246.00 consisted of: (1) taxi fare from his home in Rye, New York to La Guardia Airport (Queens) on June 18, 2007 in the amount of $90.00; (2) taxi fare from Reagan National Airport to K&L Gates Washington, D.C. office on June 18, 2007 in the amount of $18.00; (3) taxi fare from the K&L Gates Washington, D.C. office to Reagan National Airport on June 18, 2007 in the amount of $20.00; (4) taxi fare from Reagan National Airport on June 19, 2007 to K&L Gates Washington office in the amount of $18.00; (5) taxi fare from K&L Gates Washington, D.C. office to Amtrak's Union station in Washington, D.C. on June 19, 2007 in the amount of $10.00; and (6) taxi fare from La Guardia Airport (Queens) to his home in Rye, New York (Westchester) in the amount of $90.00.  Mr. Fox's expenses for taxi fares were incurred to attend interviews of proposed accountants to the Examiner.

Matthew B. Bowman's cab fare expense dated July 5, 2007 in the amount of $74.13 was for travel from Dulles International Airport to his home in Germantown, Maryland.  Barwood Taxi (managed by Blue Star Group, Inc.) is the designated taxi company servicing the Montgomery County area of Maryland.  Mr. Bowman was returning from a meeting with the SIC professionals and their counsel held at the Debtors' offices in Irvine, California.

Erin A. Koeppel's cab fare expense dated July 5, 2007 in the amount of $100.72 was for travel from Dulles International Airport to her home in Washington, D.C.  Ms. Koeppel was returning from meeting with the SIC professionals and their counsel held at the Debtors' offices in Irvine, California.

Elaine Fera's cab fare expense in the amount of $134.64 incurred June 4, 2007 consisted of a car service charge from K&L Gates New York office in Manhattan to the Bronx at 10:37 p.m. on an evening when Ms. Fera had been working on New Century matters.  Ms. Fera could

not take a taxi from the K&L Gates New York office to her destination because taxis in Manhattan generally will not service trips from Manhattan to the Bronx.

Matthew Bowman's cab fare expense in the amount of $79.80 dated July 11, 2007 was on account of his travel by taxi from his home in Germantown, MD to Dulles International Airport. Mr. Bowman cab fare expense was incurred on account of his attendance of a document review at the offices of the Debtor's counsel in Los Angeles, CA.

Edward M. Fox's cab fare expense in the amount of $103.53 incurred June 19, 2007 was for travel by car service from Amtrak's Pennsylvania Station in Manhattan to his home in Rye, NY (Westchester). Mr. Fox could not take a taxi because taxis in Manhattan generally will not service the Westchester area. Mr. Fox's car service expense was incurred on account of his attendance at interviews of proposed accountants for the Examiner in K&L Gates' Washington, D.C. office.

Edward M. Fox's cab fare expense in the amount of $131.33 dated June 18, 2007 was for travel by car service from La Guardia Airport to his home in Rye, NY (Westchester). Mr. Fox used a car service in lieu of a taxi because regular New York City taxis do not service the Westchester area. Mr. Fox's car service expense was incurred on account of attending a meeting with the SIC professionals in Washington, D.C.

Eunice Rim's cab fare expense in the amount of $110.16 incurred June 5, 2007 was incurred on account of travel from K&L Gates New York Office in Manhattan to her home in Queens, NY at approximately 1:00 a.m. Ms. Rim had spent the entire day and evening working on retention matters related to the mandated Fed. R. Bankr. P. 2014(a) disclosures in the New Century matter. Ms. Rim used K&L Gates' standard car service in lieu of a taxi because New York taxis generally do not service areas outside of Manhattan.

Edward M. Fox's cab far expense incurred July 11, 2007 in the amount of $72.83 was incurred on account of travel by car service from K&L Gates New York office to Newark International Airport to attend witness interviews in Orange County, CA.

Response Exhibit 3.

Due to the Debtors' frequent last minute scheduling of witness interviews, K&L Gates often received only two or three days advance notice within which to purchase tickets. Especially during the busy summer travel season, last minute airfare purchases proved to be more costly than advance purchases. As a result, the fares charged could not be avoidable by K&L Gates. All airfares incurred consisted of refundable regular coach class fares. None of K&L Gates' airfare was purchased for first class or business class. On occasion, automatic upgrades to first or business class were offered by the airlines to holders of regular coach fares, but K&L Gates never purchased first class tickets.

Kristin S. Elliott's airfare expense dated June 24, 2007 in the amount of $1,513.80 consisted of roundtrip travel from New York's JFK Airport to Los Angeles, California to attend a witness interview in the Los Angeles office of Debtor's counsel.

Edward M. Fox's airfare expense dated June 24, 2007 in the amount of $1,601.80 consisted of: (1) travel from Newark International Airport to Los Angeles, California to attend a witness interview in the Los Angeles office of Debtor's counsel on June 24, 2007 in the amount of $754.40; (2) roundtrip travel from New York's La Guardia Airport to Reagan National Airport in Washington, D.C. on June 13, 2007 to attend several interviews with proposed accountants for the Examiner in the amount of $362.65; (3) roundtrip travel from New York's La Guardia Airport to Reagan National Airport in Washington, D.C. on June 18, 2007 to attend interviews with proposed accountants for the Examiner in the amount of $362.65; and (4) roundtrip travel from New York's La Guardia Airport to Reagan National Airport in Washington, D.C. on June 19, 2007 to attend a meeting with the Examiner, SIC professionals and SIC counsel in the amount of $362.65.

Stephen Topetzes' travel expense incurred June 27, 2007 in the amount of $175.00 was for travel by train from Washington, D.C. to Wilmington, Delaware in the amount of $112.00 and travel by train from Wilmington, Delaware to the Baltimore Washington International Airport Train Station in the amount of $63.00. Mr. Topetzes' incurred these expenses on account of his attendance at a court hearing on June 27, 2007 wherein the Court heard, among other things, the Examiner's motion to retain K&L Gates as his counsel.

Lawrence C. Lanpher's airfare expense dated June 22, 2007 in the amount of $1,577.03 was incurred for roundtrip travel between June 25, 2007 and June 26, 2007 from Dulles International Airport to Los Angeles International Airport to attend a witness interview at the office of Debtors' counsel.

Michael J. Missal's expense dated June 12, 2007 in the amount of $211.00 was for the Examiner's roundtrip train travel from Washington, D.C. to Wilmington, Delaware on June 15, 2007 to attend the Court mandated conference wherein the Examiner, Committee counsel and the Debtors' counsel rendered a status report on the June 14, 2007 meet and confer.

Rebecca L. Kline Dubill's travel expense incurred June 15, 2007 in the amount of $211.00 was for roundtrip travel from Washington, D.C. to Wilmington, Delaware to attend the

Court mandated conference wherein the Examiner, Committee counsel and the Debtors' counsel rendered a status report on the June 14, 2007 meet and confer.

Rebecca L. Kline Dubill's airfare expense dated June 27, 2007 in the amount of $597.20 was incurred on account of roundtrip travel from Dulles International Airport to Long Beach, California on July 5, 2007 through July 6, 2007 to attend a meeting between the Examiner's financial advisors and the SIC professionals.

Leah G. Shough's airfare expense dated June 23, 2007 in the amount of $262.80 was for travel on June 22, 2007 from San Francisco, California to Los Angeles, California to attend a witness interview.

Leah G. Shough's airfare expense dated June 25, 2007 in the amount of $246.59 was for travel on June 25, 2007 from Burbank, California to San Francisco, California after a witness interview.

Jeffrey Bornstein's airfare expense dated June 22, 2007 in the amount of $262.80 was for travel on June 22, 2007 from San Francisco, California to Los Angeles, California to attend a witness interview.

Jeffrey Bornstein's airfare expense dated June 25, 2007 in the amount of $246.59 was for return travel on June 25, 2007 from Burbank, California to San Francisco, California after a witness interview.