## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | **Chapter 11** |
| | ) | |
| **NEW CENTURY TRS HOLDINGS,** | ) | |
| **INC., a Delaware corporation, <u>et al.</u>** | ) | **Case No. 07-10416 (KJC)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

## FEE AUDITOR'S FINAL REPORT REGARDING
## INTERIM FEE APPLICATION
## OF MANATT, PHELPS & PHILLIPS, LLP
## <u>FOR THE FIRST INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Manatt, Phelps & Phillips, LLP for the First Interim Period</u> (the "Application").

### BACKGROUND

1.     Manatt, Phelps & Phillips, LLP ("Manatt") was retained as special securitization counsel to the debtors and debtors in possession.  In the Application, Manatt seeks approval of fees totaling $270,569.50[1] and costs totaling $4,983.06 for its services from April 2, 2007 through July 31, 2007 (the "Application Period").

2.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing Applications for

---

[1]See paragraph 3.

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996

(the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of

Delaware, and the Third Circuit Court of Appeals. We served on Manatt an initial report based on

our review, and received a response from Manatt, portions of which response are quoted herein.

## DISCUSSION

3.    In our initial report we noted that the June, 2007 monthly fee application requests

compensation in the amount of $139,990.50 in fees. However, the Interim Fee Application for the

same period, requests compensation in the amount of $139,995.50 in fees. We asked Manatt to

clarify the exact amount for which Manatt seeks as compensation for June, 2007, as well as the total

amount of fees it seeks for the Application Period. Manatt responded as follows:

> The correct amount for the June, 2007 monthly fee application was $139,990.59.
> That is the amount shown on the invoice that Manatt sent out for payment. The
> amount of $139,995.50 stated in one place on the Application was a typographical
> error. Accordingly, the exact amount for which Manatt seeks as compensation for
> June, 2007, is $139,990.50 in fees. After adjusting for the amounts described in item
> 10 below, aggregating $4,408.75, the total amount of fees Manatt seeks for the
> Application Period is $266,160.75.

We appreciate Manatt's response. We note that the total fees requested is $270,569.50[2].

4.    We noted that the Application states that Manatt's retention order was entered on

April 24, 2007. However, upon review of the docket, we find that Manatt's retention order was

entered on June 15, 2007 [docket no. 1271], *nunc pro tunc* to the Petition Date. We also note that

the retention order caps the fees and expenses of Manatt for the months of April and May at

$150,000.00. Manatt billed $124,064.00 in fees and $1,726.83 in expenses for those two months

---

[2]    The amount of $4,408.75 relating to paragraph 10 below (travel time), will be included
in our total recommended reduction, thus the total fees actually requested is $270,569.50.

and thus Manatt is under the $150,000.00 cap set for April and May fees.  Further, in reviewing the

June 15, 2007 retention order, we note that paragraph 6 states:

> Subject to the agreement of the Official Committee of Unsecured Creditors or a
> further order of this Court, the aggregate amount of allowed fees incurred by MPP
> after May 31, 2007 in these chapter 11 cases shall not exceed $70,000.00.

We asked Manatt to further explain the amount of fees charged in this Application after May 31,

2007 which are over and above the $70,000.00 cap agreement.  Manatt responded as follows:

> The initial retention order contained, as the auditor has noted, a limitation on fees
> incurred after May 31, 2007, of $70,000, subject to the agreement of the Official
> Committee of Unsecured Creditors or the Court.  When the involvement of Manatt
> expanded during June and July of 2007, Manatt had discussions and emails with
> counsel to the Official Committee of Unsecured Creditors.  On the basis of those
> discussions and Manatt's explanations of the additional work undertaken, such
> counsel directed Manatt to file its applications for the actual amounts, as Manatt has
> done.

We appreciate Manatt's response.  We note that paragraph 6 of the retention order states that the cap

is "[s]ubject to the agreement of the Official Committee of Unsecured Creditors or a further order

of this Court. . . . ."  Thus, it appears that either the committee *or* the court may permit Manatt's fees

to exceed the $70,000.00 cap.  We understand from Manatt's response that the Committee

authorized Manatt to exceed the cap.  We contacted Mark Indelicato of Hahn & Hessen LLP, ("Hahn

& Hessen") counsel to the Official Committee of Unsecured Creditors (the "Committee") and asked

him to confirm that the Committee had agreed to increase the cap for Manatt's fees subsequent to

May 31, 2007.  In response to our inquiry, Mr. Indelicato stated in an email dated April 14, 2008:

"I have reviewed some earlier e-mails in which I did in fact have the conversations indicated by Ms.

Marshall.  The Carrington closing was much more intense then the parties had otherwise

contemplated causing Manatt to incur additional fees. We did agree to increase their cap to the actual

fees incurred for that period."  We appreciate Hahn & Hessen's confirmation of their agreement with

Manatt to increase their cap to the actual fees incurred for that period.

5.      We noted that many of Manatt's professionals "block billed" their time or kept it in increments of one-quarter hour rather than in tenths of an hour.  Pursuant to the Guidelines, Paragraph, II.D.5., "[t]ime entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. . ."  A sampling of these time entries are as follows:

| | | | |
|---|---|---|---|
| 04.19.07 | Review servicing agreement and Indenture for Servicing Fees and Distribution Dates; prepare table regarding same. | V. Dennis | 6.00 |
| 04.23.07 | Analyze Pooling and Servicing Agreements. | M. Wong | 6.00 |
| 05.08.07 | Emails and conference regarding research assignment; research sale of substantially all assets under New York Law; draft preliminary memo and email findings To E. Marshall. | T. Herman | 6.00 |
| 06.19.07 | Conference call with H. Reichwald, E. Marshall and D. Haupt regarding closing; review closing documents. | Jennifer Haft | 2.50 |
| 06.19.07 | Participate in Manatt status conference call; review emails; review draft opinion; speak with H. Reichwald regarding amendments; speak with O'Melveny regarding status; review emails; speak with New Century general counsel regarding Lewtan contract and subservicing agreement. | Deniz Haupt | 4.00 |

We cautioned all time keepers against block billing as it may be cause for future fee reductions.

Manatt responded as follows:

All work on this matter has been billed in tenths of hours.  Manatt's computer system is coded to do that in this matter.  The fee auditor has noted a few instances where the amount of time worked happened to round to whole hours or 5-tenths of an hour. But all of those time entries were based on tenth-of-an-hour measurements.

Regarding block billing, Manatt will once again direct timekeepers to avoid this practice.  Unfortunately, in most of our billing situations, the clients prefer to see one entry per person per day, which necessarily results in block billing on some days.

We appreciate Manatt's response.

6.      We noted that with the exception of Harold P. Reichwald's time entries, all of the time entries in the Application are "lumped" together rather than each specific task separately

delineated with the amount of time spent on that particular task.  Pursuant to the Guidelines,

Paragraph II.D.5., " .... [s]ervices should be noted in detail and not combined or "lumped" together,

with each service showing a separate time entry; .... We asked Manatt to provide assurances that time

entries in future Applications will not be "lumped" and Manatt stated that it would do so.

      7.    We noted that the specific rate charged for in-house copies is not set forth in the

Application.  We asked Manatt to state the amount charged per page for all in-house copies.  Manatt

responded as follows: "Manatt's rate charged for in-house copies is 10¢ per page."  We appreciate

Manatt's response.

      8.    We noted that certain professionals spent time performing tasks which appear to be

clerical in nature.  The time entries are as follows:

| | | | |
|---|---|---|---|
| 04.17.07 | Download, print and organize relevant documents from emails and Intralinks website, including 28 Servicing and Pooling Agreements. | M. Wong | 2.00 |
| 07.02.07 | Prepare and distribute copies of all 16 amendments with exhibits to Moody's Investors Services. | V. Dennis | 1.00 |
| 07.13.07 | E-file multiple documents in United States Bankruptcy Court, District of Delaware for Ellen R. Marshall. | B. Gasik | 2.00 |

We recommend that clerical tasks be billed at no more than $80.00 per hour.  In *re Busy Beaver*

*Bldg. Centers, Inc., 19 F.3d 833, 855 n.34 (3rd Cir. 1994)*, the Court stated that "the statute [11

U.S.C. 330] plainly specifies that the type of service performed by a paralegal (including whether

it is clerical) affects the rate of compensation, not compensability vel non." *Busy Beaver at 849.*

Further, on the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in

the bankruptcy context, of quoting its opinion in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d

Cir. 1983) that "[r]outine tasks, if performed by senior partners in large firms, should not be billed

at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's

barn." *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3rd Cir. 1995); *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994). *Busy Beaver*, in footnote 34 on page 855, lists 15 cases in support of the statement "[w]hen an experienced attorney does clerk's work, he or she should be paid clerk's wages." We asked Manatt to review these time entries and explain why a reduction in hourly rate(s) is not warranted. Manatt responded as follows:

> While the fee auditor has suggested that the tasks described for Michael Wong (attorney) on April 17, 2007, Valarie Dennis (paralegal) on July 2, 2007, and Barbara Gasik (lead litigation support specialist) on July 13, 2007 were clerical tasks, they actually involved professional tasks that were not clerical in nature.

> In the case of Mr. Wong, he was identifying the relevant documents from the virtual data room that had been established on the Intralinks website. This was actually a challenging task, because the relevant documents were not all in one place, or in logical places on the website. One had to read the text of the various documents to sort out which of the many documents on the website were the relevant ones. It is understandable that the fee auditor might have thought from the description that the bulk of the work being done was mechanical in nature, but it was not.

> In the case of Ms. Dennis, the work in question was to prepare the final executed amendments for 16 individual transactions. This involved obtaining the signature pages and joining them to the correct final version of the specific amendment. This was not clerical work, it was paralegal work.

> In the case of Ms. Gasik, the work in question involved effecting the electronic filing with the Court. This is something that only Manatt's litigation support specialists are equipped to do. Manatt always has its litigation support specialists handle electronic filings.

We appreciate Manatt's response and have no objection to these fees. However, we encourage Manatt professionals to provide accurate descriptions in their time entries.

9.    We noted the following time entries which are insufficient in their description:

| 04.18.07 | Attention to review of Pooling and Servicing Agreements. | M. Wong | 0.50 |
| 05.04.07 | Attention to bankruptcy advice; draft memo to A. Mostafavipour regarding NCMC's options to transfer its mortgage servicing rights. | M. Wong | 9.50 |

Pursuant to Local Rule 2016-2(d)(v), "[e]ach activity description shall include the type of activity

(e.g., phone call, research).  We asked Manatt to provide more descriptive time entries.  Manatt

responded as follows: "As the fee auditor has requested, Manatt has cautioned all of its timekeepers

in this matter to be more specific about describing the tasks that they are performing."  We

appreciate Manatt's response.

       10.     We noted the following travel time entries which appear to have been billed at their

full hourly rate:

| 05.15.07 | Travel to New York for auction of servicing rights and platform. | E. Marshall | 4.00 |
|---|---|---|---|
| 05.17.07 | Return travel from New York. | E. Marshall | 7.00 |
| 06.27.07 | Travel to Orange County for closing. | D. Haupt | 3.50 |
| 06.28.07 | . . .; deliver closing documents to O'Melveny's Newport Beach office. | V. Dennis | 8.00[3] |
| 06.29.07 | Travel from Orange County to San Francisco. | D. Haupt | 3.00 |

Pursuant to Local Rule 2016-2(d)(viii), "[t]ravel time during which no work is performed shall be

separately described and may be billed at no more than 50% of regular hourly rates.  We asked

Manatt to explain whether the required 50% reduction was applied in these instances, or whether

reductions are in order.  Manatt's response is provided below:

> Regarding travel time, a 50% reduction for travel time was not applied, but Manatt
> will agree to reduce the charge for the 5 entries, as follows:
>
> May 15, 2007 – E. Marshall – Only a portion of the travel time was billed in the first
> place, because time spent on other work while in transit was not included.  A
> reduction of 1.00 hours will be credited ($650).
>
> May 17, 2007 – E. Marshall – A reduction of 3.50 hours will be credited ($2,275).

---

[3]This time entry is insufficiently lumped and therefore, impossible to tell the exact
amount of time spent on this task.

June 27, 2007 – D. Haupt – A reduction of 1.75 hours will be credited ($761.25).

June 28, 2007 – V. Dennis – The O'Melveny Newport Beach office is at most a 20 minute drive from Manatt's Costa Mesa office.  So of the time spent by Ms. Dennis that day, one-third of an hour was spent on this travel.  Ms. Dennis spent the rest of the day at O'Melveny assisting with the closing, and went home directly from there, so there was no return travel.  A reduction of 0.4 hours will be credited ($70).

June 29, 2007 – D. Haupt – A reduction of 1.50 hours will be credited ($652.50). The sum of all of these reductions is $4,408.75.  As noted in response to item 3 above, the total amount of fees that Manatt seeks for the Application Period is being reduced by that amount.

We appreciate Manatt's response and recommend a reduction of $4,408.75[4] in expenses.

11.    We noted that on two occasions throughout the Application Period, several

professionals participated in conference call(s) and/or meeting(s).  The time entries are as follows:

| 06.21.07 | . . . conference call with D. Haupt, J. Haft Haft and V. Dennis regarding open closing items on sale to Carrington (.5); . . . | H. Reichwald | 0.80 |
|---|---|---|---|
| 06.21.07 | Conference call with Manatt team (J. Haft, H. Reichwald, V. Dennis); . . . | D. Haupt | 6.60[5] |
| 06.21.07 | . . . conference call with D. Haupt and H. Reichwald regarding outstanding closing items; . . . | J. Haft | 6.20[6] |
| 06.21.07 | . . . telephone conference with D. Haupt H. Reichwald and J. Haft regarding status of closing; . . . | V. Dennis | 8.50[7] |
| 06.29.07 | . . .; attend closing. | D. Haupt | 9.00[8] |
| 06.29.07 | Participate in the closing at O'Melveny in Newport Beach. | J. Haft | 3.50 |

---

[4] *See* FN 2 *supra.*

[5] *See* FN 3 *supra.*

[6] *See* FN 3 *supra.*

[7] *See* FN 3 *supra.*

[8] *See* FN 3 *supra.*

06.29.07        Provide support for New Century transaction closing.        V. Dennis        3.20

Paragraph II.D.5. of the Guidelines provides that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Furthermore, the Delaware Local Rules, rule 2016-2(d)(ix), states "....[t]he activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role."  We asked Manatt to review these time entries and provide additional information regarding these occasions.  Manatt responded as follows:

> The fee auditor has identified several days on which several Manatt professionals participated in a conference call.  These were June 21, 2007 and June 29, 2007. These were conference calls that were required for dividing up work amongst the members of the Manatt team, being sure that all of the issues were being handled in a consistent manner, and that all task necessary to complete the project were addressed.  These were not "hearings or conferences" as that phrase is used in the Local Rules.  That phrase refers to external events that a firm's professionals might attend as representatives of its client.  In this case, the internal conversations were essential to get the project completed.

> The areas of expertise of these individuals is as follows:

> H. Reichwald – Secured financial transactions, banking, securitization
> D. Haupt – Financial transactions; corporate transactions
> J. Haft – Financial transactions; corporate transactions
> V. Dennis (paralegal) – Financial transactions; corporate transactions

We appreciate Manatt's response.  However, the response does not address the attendance by its professionals at a "closing" which could not be considered an internal conversation.  We recommend a reduction of the time spent at the closing by the attorney with the lowest hourly rate ( Haft - $305), for a reduction of $1,067.50 in fees.

    12.    We noted the following time entry wherein the sub-parts do not equal the amount billed:

06.26.07        Review issue relating to amendments to Asset        Harold Reichwald        1.60
                Purchase Agreement and trailing documents
                (Section 6.14 of Draft) (.3); telephone conference

> with D. Haupt regarding developments concerning
> subservicing agreement (.2); exchange emails with
> E. Marshall regarding custodial arrangements (.2);
> telephone conference with J. Haft and De. Haupt
> regarding opinions (.3); review issue regarding issuance of
> certificate to Wilmington Trust (.2); telephone conference
> with D. Haupt regarding Moody's downgrade letter (.2); telephone
> conference with D. Haupt regarding Interim Subservicing
> Agreement regarding client lack of comments.

The sub-parts add up to 1.4 hours whereas the amount billed was 1.6 hours for a fee difference of

$138.00.  We asked Manatt to review this time entry and state whether a reduction is warranted.

Manatt's response is provided below:

> The fee auditor has inquired why the individual items in Harold Reichwald's time
> entry for June 26, 2007 did not add up to the 1.60 hours reported.  The reason is that
> the final substantive part of the description, "telephone conference with D. Haupt
> regarding Interim Subservicing Agreement regarding client lack of comments," was
> .2 hours.  The characters "(.2)" showed up in Manatt's invoice, but were not typed
> onto the Application, due to a typographical error.  Based on this, no reduction is
> warranted.

We appreciate Manatt's response and have no objection to these fees.

13.    We noted several expense charges that are insufficient in detail.  They are as follows:

| | | | |
|---|---|---|---|
| 05.15.07-<br>05.17.07 | Hotel reservations, Manhattan, New York | E. Marshall | $804.08 |
| 07.02.07 | Travel - Airplane Fare | D. Haupt | $278.41 |
| 07.02.07 | Travel - Airplane Fare | D. Haupt | $278.40 |
| 07.09.07 | Travel - Mileage Expense | J. Haft | $33.95 |
| 07.09.07 | Travel - Mileage Expense | J. Haft | $33.95 |
| 07.09.07 | Travel - Hotel | J. Haft | $298.76 |

Pursuant to the Guidelines, Paragraph II. E. 3. states "[f]actors relevant to a determination that the

expense is proper include the following: . . .3. [w]hether applicant has provided a detailed

itemization of all expenses including the date incurred, description of expense (e.g., type of travel,

type of fare, rate, destination), method of computation, and where relevant, name of the person

incurring the expense and purpose of the expense. . ."  We asked Manatt to provide additional

information regarding these charges.

Following are more detailed explanations of the travel expenses as to which the fee
auditor has inquired:

May 15 – 17, 2007 – E. Marshall – Reason for travel:  Attendance at auction of
servicing platform, in New York City.  Two nights were required, due to scheduling.
The hotel rates, exclusive of tax, were: $149 for one night and $509 for the other
night.

July 2, 2007 – D. Haupt – Beginning and ending destination:  San Francisco to Santa
Ana.  Reason for trip:  Closing of sale of servicing platform.  Class of airfare:  Coach
on United Airlines.  The travel was actually on June 27, 2007.  The date of July 2 was
the date on which the charge was processed by the law firm.

July 2, 2007 – D. Haupt – Beginning and ending destination:  Santa Ana to San
Francisco.  Reason for trip:  Return from closing of sale of servicing platform.  Class
of airfare:  Coach on United Airlines.  The travel was actually on June 29, 2007.  The
date of July 2 was the date on which the charge was processed by the law firm.

July 9, 2007 – J. Haft – Beginning and ending destination:  Los Angeles to Newport
Beach.  Reason for trip:  Closing of sale of servicing platform.  The travel was
actually on June 28, 2007.  The date of July 9 was the date on which the mileage
charge was processed by the law firm.

July 9, 2007 – J. Haft – Beginning and ending destination:  Newport Beach to Los
Angeles.  Reason for trip:  Return from closing of sale of servicing platform.  The
travel was actually on June 29, 2007.  The date of July 9 was the date on which the
mileage charge was processed by the law firm.

July 9, 2007 – J. Haft – Reason for travel:  Closing of sale of servicing platform.  The
hotel stay was one night, and was actually on June 28, 2007.  The date of July 9 was
the date on which the bill was paid by the law firm.  The hotel rate, exclusive of
taxes, was $260.

We appreciate Manatt's response.  We recommend ceilings of $400 per night for New York City and

$250 per night (sans taxes) for most other U.S. cities.  Thus we recommend a reduction for the two

hotel stays over our recommended limits, for a reduction of $119.00 in expenses.

## CONCLUSION

14.      Thus we recommend approval of fees totaling $265,098.25 ($270,574.50 minus

$5,476.25) and expenses totaling $4,864.06 ($4,983.06 minus $119.00) for Manatt's services from

April 2, 2007 through July 31, 2007.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

325 N. St. Paul Street, Suite 1275
Republic Center
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served
via First-Class United States mail to the attached service list on this 15th  day of April, 2008.

_____
Warren H. Smith

## SERVICE LIST
### Notice Parties

**The Applicant**
Ellen R. Marshall, Esq.
Manatt, Phelps & Phillips, LLP
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626

**United States Trustee**
Joseph J. McMahon, Jr.
U.S. Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801

**Counsel to the Debtors**
Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Paul N. Heath, Esq.
Chris M. Samis, Esq.
Richards, Layton & Finger, P.A.
920 N. King St.
One Rodney Square
Wilmington, DE 19801

**Counsel to the Debtors**
Suzzanne Uhland, Esq.
Ben H. Logan, Esq.
Victora A. Newmark, Esq.
Andrew M. Parlen, Esq.
O'Melveny & Myers LLP
275 Battery Street
San Francisco, CA 94111

**Counsel to the Debtors**
Shannon Lowry Nagle, Esq.
O'Melveny &Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

**Counsel to the Debtors**
Ivan Lerer Kallick, Esq.
Manatt Phelps & Phillips, LLP
11344 W. Olympic Blvd.
Los Angeles, CA 90064

**Counsel for Crisis Managers**
Sheldon S. Toll, Esq.
Attorneys for AP Services, LLC
2000 Town Center, Suite 2550
Southfield, MI 48075

**Accounting and Tax Advisor
for the Debtors**
Gary A. Grush
Grant Thornton LLP
18400 Von Karman Ave., Suite 900
Irvine, CA 92612

**Accounting and Tax Advisor
for the Debtors**
Ari Lefkovits, Director
Lazard Freres & Co., LLC
30 Rockefeller Plaza, 61st Floor
New York, NY 10020

**Accounting and Tax Advisor
for the Debtors**
Jeffrey R. Boyle, Esq.
PricewaterhouseCoopers LLP
Two Commerce Square, Ste. 1700
2001 Market St.
Philadelphia, PA 19103

**Counsel to the Official Committee of
Unsecured Creditors**
Bonnie Glantz Fatell, Esq.
David W. Carickhoff, Jr., Esq.
Blank Rome, LLP
1201 Market Street, Ste. 800
Wilmington, DE 19801

**Counsel to the Official Committee of Unsecured Creditors**
Mark S. Indelicato, Esq.
Hahn & Hessen, LLP
488 Madison Avenue
14th & 15th Floors
New York, NY 10022

**Financial Advisor to the Official Committee of Unsecured Creditors**
Samuel Star
FTI Consulting, Inc.
Three Times Square
New York, NY 10036

**Examiner**
Michael J. Missal, Esq.
Kirkpatrick & Lockhart Preston
Gates Ellis, LLP
1601 K. Street, N.W.
Washington, DC 20006-1600

**Counsel to the Examiner**
Edward M. Fox, Esq.
Kirkpatrick & Lockhart Preston
Gates Ellis, LLP
599 Lexington Ave.
New York, NY 10022

**Counsel to the Examiner**
Mark Minuti, Esq.
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899

**Accountants and Financial Advisor to the Examiner**
William K. Lenhart
Naushon Vanderhoop
BDO Seidman, LLP
330 Madison Ave., 10th Floor
New York, NY 10017

**Special Regulatory Counsel for the Debtors**
Eric M. Davis, Esq.
Kimberly A. LaMaina, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

**Special Counsel to the Audit Subcommittee**
Peter Benvenutti, Esq.
Heller Ehrman, LLP
333 Bush Street
San Francisco, CA 94104

**Special Counsel - OCP**
Diana M. Thimmig, Esq.
Roetzel & Andress
1375 East Ninth Street
One Cleveland Center, 9th Floor
Cleveland, OH 44115

**Sheppard, Mullin, Richter & Hampton LLP**
Mette H. Kurth, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448

**Special Litigation Counsel to Debtors**
Joshua D. Morse, Esq.
Hennigan Bennett & Domann LLP
865 S. Figueroa Street, Ste. 2900
Los Angeles, CA 90017

**Special Litigation Counsel to Debtors**
Jeffrey Tidus, Esq.
Baute & Tidus LLP
777 S. Figueroa Street, Ste. 4900
Los Angeles, CA 90017