07-10416

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

FILED

2008 APR 15  AM 9: 55

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| NEW CENTURY TRS HOLDINGS, | § | **Case No. 07-10419, Claim No. 3761** |
| INC., a Delaware corporation, et al., | § | |
| Debtors. | § | **Jointly Administered** |
| | § | |
| | § | **Objection Deadline: April 18, 2008 at** |
| | | **4:00 P.M. (Eastern Time)** |
| | | **Hearing Date: April 24, 2008 at** |
| | | **10:00 A.M.** |

## NOTICE OF CREDITOR ROBERT AND CAROL RIGGINS
## OBJECTION TO BANKRUPTCY RULES TO CERTAIN
## (A) BOOKS AND RECORDS CLAIMS; (B) SUFFICIENT
## PROOF OF DOCUMENTED CLAIM

**COMES NOW,** Robert and Carol Riggins Creditors, 802 Albert Street, New Braunfels,

Texas 78130, in the above entitled Bankruptcy proceeding and would present evidence of

Records to the Bankruptcy Court in objection to Creditors being EXPUNGED IN THE

CLAIMED AMOUNT.

### FACTS

1.      Robert and Carol Riggins applied for and received what they thought was a

"mortgage loan," in the amount of $88,800.00, in a TEXAS HOME EQUITY NOTE.

2.      As Exhibit "A" for the above referenced 'Creditors,' enclosed are the four (4)

pages of the alleged 'Mortgage Note.' First and foremost we present to the court the fact

illustrating twelve (12) high-lighted reference to **"extension of credit."**

3.    As Exhibit "B" Robert and Carol Riggins submit twenty (20) cases stipulating that a bank (or mortgage company) **can lend money and not 'Credit.'**

2.    Robert and Carol Riggins request that the Bankruptcy Court pay particular attention to page four (4) of the TEXAS HOME EQUITY NOTE that specifically show the fact that Robert and Carol Riggins, were the issuers of the funds for the note. Please note the autographs of Robert and Carol Riggins and below that are the words, **"PAY TO THE ORDER OF, WITHOUT RECOURSE,"** directly below that are the words, "NEW CENTURY MORTGAGE COMPANY, By: _____ Title: A.V.P. / SHIPPING MANAGER, NAME: GINA AYSON, with the scribbled signature of GAM

3.    The alleged TEXAS HOME EQUITY NOTE with reference to above, was converted to a 'check' or 'security instrument.'

4.    NEW CENTURY MORTGAGE, then shows that as a credit on their "books" and as a loan to Robert and Carol Riggins or "debit." In this manner the books are zeroed out. Therefore NEW CENTURY MORTGAGE did not loan any 'MONEY,' but committed **"FRAUD,"** by fraudulent conversion of the TEXAS HOME EQUITY NOTE. The proof is there on the paperwork, and anyone with any intelligence at all can figure it out.

Robert and Carol Riggins as proven **CREDITORS** and want the return of their funds.

Dated: April, 10, 2008

Robert F Riggins, Agent

RIGGINS ©

**As to money:**

"The word 'money' in its usual and ordinary acceptation .neans gold, silver, or paper money used as a circulating medium of exchange, and **DOES NOT EMBRACE NOTES, BONDS, EVIDENCES OF DEBT**…" _Lane v. Railey_, 280 Ky 319, 133 SW 2nd 74.

"A promise to pay cannot, by argument, however ingenious, be made the equivalent of **ACTUAL PAYMENT**…" _Christensen v. Beebe_, 91 129, 32 Utah 406.

"A bank is **NOT the holder in due course** upon merely crediting the depositor's account." _Bankers Trust v. Nagler_, 229 NYS 2 nd 142.

Each Federal Reserve Bank is a **separate corporation** owned by commercial banks in its region…" _Lewis v. United States_, 680 F 2 nd 1239. (1982 case)

**The banks and their contracts:**

"Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'FRAUD', and entitles party deceived to void contract or **recover damages**." _Barnsdall Refining Corp. v. Birnamwood Oil Co._, 92 F 2 nd 817.

"Where principal's assent is induced by creditor's fraudulent or material misrepresentation, contract is **VOIDABLE** by principal if he is justified by relying on misrepresentation." _Baumgarten v. Bobolz_, 104 Wis 2nd 210.

"Any conduct capable of being turned into a statement of fact is representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." _Leonard v. Springer_, 197 Ill 532, 64 NE 299.

The banks have violated the most basic element of Contract Law, that being "full disclosure". No full disclosure, no "meeting of the minds", NO CONTRACT. The doctrine of "Ultra Vires" reads: "Any act performed without authority or beyond the scope of the power of the corporation as defined by its charter or the law of the State of Incorporation." **Fraudulent concealment ends the contract.**

A banks business is to **deposit money** and make loans. If the bank deposits your mortgage note, the bank must issue you a bank statement showing that they owe you money (cash or check) for the deposit. This money (check) is not a loan. It is a return of your asset (future earnings to repay the money the bank allegedly loanded). The bank owes you for the deposit and for the money they allegedly loaned you. An alteration of a contract or fraudulent concealment or fraud, ends the contract. The law does not to my knowledge, allow one to profit from fraud.

Title 12, Section 24 (para 7), of the US Code reads:
"Upon duly making and filing articles of association and an organization certificate the (national bank) association shall… have power…"
"Seventh, To exercise by its board of directors…all such incidental powers as shall be necessary to carry on the business of banking; …**loaning MONEY** on personal security".
A liability is the opposite of money, so the mortgage note must be money. What money did


EXHIBIT B

Lets see:

"A check is merely an order on a bank to pay **MONEY**." *Young v. Hembree*, 73 P 2nd 393.

"Both **NOTES and Checks** are acknowledgments of **INDEBTEDNESS and promise of payment**." *Hegeman v. Moon*, 131 NY 462, 30 NE 487. *Smith v. Treuhart et al*, 223 NYS 481.

"In the federal courts, it is **WELL ESTABLISHED** that a national bank **has NOT the power** to lend **its credit** to another by becoming surety, endorser, or guarantor for him." *Farmers and Miners Bank v. Bluefield National Bank*, 11 F2nd 83, 271 US 669.

"Checks, drafts, money orders, and bank notes **are NOT LAWFUL MONEY** of the United States." *State v. Neilon*, 73 F 321, 43 Ore 168.

"Neither, as included in its powers or incidental to them, is it a part of a bank's business to lend its credit. ….Indeed, lending credit is the **EXACT OPPOSITE** of lending money, which is the real business of the bank, for while the latter creates a liability in favor of the bank, the former gives rise to a liability of the bank to another… 1Morse, Banks and Banking, 5[th] Ed. Sec 65; Magee, Bnaks and Banking, 3[rd] Ed, Sec 248." *American Express Co v. Citizens State Bank*, 194 NW 429.

"A bank can lend its money, **BUT NOT ITS CREDIT**." *First National Bank of Tallapoosa v. Monroe*, 135 Ga 614, 69 SE 1123, 32 LRA (NS) f 550.

"It is not within those statutory powers for a national bank, even though solvent, to lend **its credit to another** in any of the various ways in which that might be done." *Federal Intermediate Credit Bank v. L'Herisson*, 33 F2nd 841.

"A national bank, under federal law being limited in its powers and capacity, **cannot lend its credit** by guaranteeing the debts of another, and all such contracts entered into are ultra vires." *Howard & Foster Co. v. Citizens National Bank of Union*, 133 SC 202, 130 SE 758.

"**A bank may not lend its credit to another**, even though such a transaction turns out to have been a benefit to the bank, and in support of this a list of cases might be cited, which would look like a catalog of ships." *Norton Grocery Co. v. People's National Bank*, 144 SE 501, 151 Va 195.

"There is no doubt but that the law is that a national bank cannot lend its credit or become an accommodation endorser." *National Bank of Commerce v. Atkinson*, 55 Fed Rep 465.

RIGGINS

410769

THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION

We hereby certify this to be a true and
correct copy of the original.

# TEXAS HOME EQUITY NOTE
## (Cash Out - Fixed Rate - First Lien)

New Century Mortgage Corporation

**SEPTEMBER 5, 2000**
[Date]

**SAN ANTONIO**
[City]

**TEXAS**
[State]

**802 ALBERT STREET, NEW BRAUNFELS, TEXAS 78130-0000**
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
    This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for a loan that I have received, I promise to pay U.S.$ 88,800.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is NEW CENTURY MORTGAGE CORPORATION . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."
    I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.
    The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

2. **INTEREST**
    Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 12.990 %. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above, authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

3. **PAYMENTS**
    (A) Time and Place of Payments
    I will pay principal and interest by making payments every month.
    I will make my monthly payments on the 1ST day of each month beginning on NOVEMBER 1, 2000.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on OCTOBER 1, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
    I will make my monthly payments at 18400 VON KARMAN, SUITE 1000, IRVINE, CALIFORNIA 92612-0000 or at a different place if required by the Note Holder.
    (B) Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $ 981.61.

4. **BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
    I may make a full prepayment or partial prepayments without paying any prepayment penalty or other charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in

EXHIBIT
A

410769

writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES AND FEES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstances whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Texas Home Equity Note (Cash Out – Fixed Rate – First Lien) – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3244.1 01/98
(page 2 of 4 pages)
SMSNDC/000000-0000/TX/EQ0X0002

 

410769

Any notice that must be given to the Note Holder under this Note will be given in writing by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure by the Note Holder to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of the Borrower's promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Notice of dishonor" "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11.  APPLICABLE LAW

This Note shall be governed by the laws of the State of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

**12. NO ORAL AGREEMENTS**
THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

Borrower
ROBERT RIGGINS
SSN: 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

Borrower
CAROL L. RIGGINS
SSN: 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

PAY TO THE ORDER OF, WITHOUT RECOURSE

NEW CENTURY MORTGAGE CORPORATION
BY:
TITLE: A.V.P. / SHIPPING MANAGER
NAME: GINA M. AYSON