# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
### For the District of Delaware

| In re | Honorable Kevin J. Carey |
|---|---|
| | Chapter 11 |

| | |
|---|---|
| New Century Mortgage Corporation | 07-10419 |
| New Century Mortgage Ventures, LLC | 07-10429 |
| NC Capital Corporation | 07-10420 |
| NC Residual III Corporation | 07-10424 |
| New Century R.E.O. Corp. | 07-10426 |
| New Century R.E.O. II Corp. | 07-10427 |
| New Century R.E.O. III Corp. | 07-10428 |
| NC Deltex, LLC | 07-10430 |
| NCoral, L.P. | 07-10431 |
| NC Asset Holding, L.P. | 07-10423 |
| Home123 Corporation | 07-10421 |
| New Century TRS Holdings, Inc. | 07-10416 |
| NC Residual IV Corporation | 07-10425 |
| New Century Credit Corporation | 07-10422 |
| New Century Financial Corporation | 07-10417 |
| New Century Warehouse Corporation | 07-11043 |

Debtors.

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF APRIL 23, 2008

Suzzanne S. Uhland
Ben H. Logan
Andrew M. Parlen
O'MELVENY & MYERS LLP
275 Battery Street
San Francisco, California 94111
(415) 984-8700

and

Mark Collins
Michael J. Merchant
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

Counsel for the Debtors

Mark S. Indelicato
Mark T. Power
Janine M. Cerbone
HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022
(212) 478-7200

and

Bonnie Glantz Fatell
BLANK ROME LLP
1201 Market Street
Suite 800
Wilmington, DE 19891
(302) 425-6400

Regina Stango Kelbon
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5500

Counsel for Official Committee of Unsecured Creditors

# TABLE OF CONTENTS

**Page**

ARTICLE 1.     DEFINITIONS .................................................................1
   A.     Defined Terms ...................................................................1
   B.     Other Terms .....................................................................20
   C.     Time Periods ....................................................................20
   D.     Exhibits ...........................................................................20
ARTICLE 2.     CLASSIFICATION OF CLAIMS AND INTERESTS .....................20
   A.     Summary ..........................................................................20
   B.     Classification....................................................................23
ARTICLE 3.     TREATMENT OF ADMINISTRATIVE CLAIMS AND
               PRIORITY TAX CLAIMS ...............................................26
   A.     Administrative Claims .......................................................26
   B.     Priority Tax Claims...........................................................28
ARTICLE 4.     TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS.........28
   A.     Priority Claims Against All Debtors (Classes HC1, HC5, HC8,
         HC11, OP1, OP4, OP7, OP10, and AL1).................................28
   B.     Secured Claims Against All Debtors (Classes HC2, HC6, HC9,
         HC12, OP2, OP5, OP8, OP11, and AL2).................................29
   C.     Class HC3:  Unsecured Claims Against NCFC.........................29
   D.     Class 4:  NCFC Interests....................................................34
   E.     Class HC7:  Other Unsecured Claims against TRS Holdings ...................35
   F.     Class HC10:  Unsecured Claims Against NC Credit....................36
   G.     Class HC13:  Other Unsecured Claims against NC Residual IV ..............37
   H.     Class OP3:  Unsecured Claims Against NCMC. ........................38
   I.     Class OP6:  Unsecured Claims Against NC Capital ...................39
   J.     Class OP9:  Unsecured Claims Against Home123 ......................41
   K.     Class OP12:  Other Unsecured Claims Against NC Asset Holding,
         NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III,
         NCM Ventures, and NCoral ...............................................42
   L.     Class AL3:  Other Unsecured Claims Against Access Lending................43
ARTICLE 5.     ACCEPTANCE OR REJECTION OF THIS PLAN .....................44
   A.     Impaired Classes of Claims Entitled to Vote................................44
   B.     Classes Deemed to Accept this Plan.......................................45
   C.     Classes Deemed to Reject this Plan.......................................46
   D.     Nonconsensual Confirmation ..............................................46
   E.     Removal of Debtors ..........................................................46

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE 6.    THE MULTI-DEBTOR CLAIM PROTOCOL FOR
TREATMENT OF CLAIMS AGAINST MULTIPLE DEBTORS......47

    A.    Allowed Unsecured Claims for Which More than One Holding
Company Debtor Is Jointly and/or Severally Liable ...................47

    B.    Allowed Unsecured Claims for Which More than One Operating
Debtor Is Jointly and/or Severally Liable ....................................47

    C.    Separate Application to Debtor Groups.........................................48

    D.    Inapplicable to Claims Against Access Lending .........................48

    E.    Inapplicable to Intercompany Claims ..........................................48

ARTICLE 7.    THE INTERCOMPANY PROTOCOL FOR  TREATMENT OF
INTERCOMPANY CLAIMS .........................................................48

    A.    Claims of Holding Company Debtors Against Other Holding
Company Debtors ........................................................................48

    B.    Claims of Operating Debtors Against Other Operating Debtors...............48

    C.    Claims of Holding Company Debtors Against Operating Debtors ............49

    D.    Claims of Operating Debtors Against Holding Company Debtors ............49

ARTICLE 8.    MEANS OF IMPLEMENTING THIS PLAN .......................................49

    A.    Implementation of Joint Plan.......................................................49

    B.    Corporate Action..........................................................................49

    C.    Dissolution of Debtors Other than Access Lending ....................49

    D.    Dissolution of the Committee ......................................................50

    E.    Vesting of Assets in Liquidating Trust; Assumption of Plan
Obligations..................................................................................51

    F.    Liquidating Trust .........................................................................52

    G.    Plan Advisory Committee.............................................................61

    H.    Liability, Indemnification ............................................................63

    I.    Retention of Professionals ...........................................................65

    J.    Preservation of All Causes of Action ..........................................66

    K.    Successors ....................................................................................66

ARTICLE 9.    DISTRIBUTIONS UNDER THIS PLAN............................................ 67

    A.    Timing of Distributions................................................................67

    B.    Reserves .......................................................................................68

    C.    Distribution Calculations. ............................................................72

    D.    Payment in Full of Unsecured Claims .........................................74

    E.    Manner of Distribution ................................................................78

# TABLE OF CONTENTS
(continued)

Page

F.      De Minimis Distributions ..................................................................78

G.     Delivery of Distributions ..................................................................78

H.     Undeliverable Distributions .............................................................79

I.      Setoffs and Recoupments.................................................................79

J.      Distributions in Satisfaction; Allocation..........................................80

K.     Cancellation of Notes and Instruments ...........................................80

L.      No Interest on Claims ......................................................................81

M.    Withholding Taxes...........................................................................81

N.     Reports ............................................................................................81

ARTICLE 10.    IMPLEMENTATION OF PLAN AND DISTRIBUTIONS WITH RESPECT TO ACCESS LENDING .......................................82

A.     Transfer of Access Lending Stock..................................................82

B.     The Plan Administrator...................................................................82

C.     Reimbursement of Debtors and Liquidating Trust .......................82

D.     Resolution of Claims and Prosecution of Access Lending Causes of Action..............................................................................................83

E.     Timing of Distributions on Account of Claims Against Access Lending ..........................................................................................83

F.      Access Lending Reserves ...............................................................84

G.     Dissolution of Reorganized Access Lending.................................87

H.     Access Lending Income; Returns ..................................................88

I.      Removal of Access Lending ...........................................................88

ARTICLE 11.    PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS....................................................................88

A.     Reservation of Rights to Object to Claims ...................................88

B.     Objections to Claims.......................................................................89

C.     Service of Objections......................................................................89

D.     Determination of Claims.................................................................89

E.     No Distributions Pending Allowance .............................................90

F.      Claim Estimation ............................................................................90

G.     Allowance of Claims Subject to Section 502 of the Bankruptcy Code......91

H.     Goldman HC3b Claim ....................................................................91

I.      Goldman AL3 Claim.......................................................................91

J.      NCMC AL3 Claim..........................................................................91

## TABLE OF CONTENTS
(continued)

Page

ARTICLE 12.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............91
    A.    Assumption of Certain Contracts and Leases and Cure Payments.............91
    B.    Rejection of Remaining Executory Contracts and Unexpired Leases........92
    C.    Rejection Damages Bar Date ........................................................................92
    D.    Insurance Policies .......................................................................................93
ARTICLE 13.    EFFECT OF CONFIRMATION AND INJUNCTION .......................94
    A.    Injunction ....................................................................................................94
    B.    Term of Injunctions.....................................................................................95
    C.    Exculpation .................................................................................................96
    D.    Release of Goldman.....................................................................................96
    E.    Binding Effect of Plan .................................................................................97
    F.    No Effect on Objections to Fee Applications ..............................................97
ARTICLE 14.    CONDITIONS PRECEDENT ..................................................................97
    A.    Conditions Precedent to Effective Date......................................................97
    B.    Revocation, Withdrawal, or Non-Consummation of Plan..........................98
ARTICLE 15.    ADMINISTRATIVE PROVISIONS ......................................................99
    A.    Retention of Jurisdiction.............................................................................99
    B.    Payment of Statutory Fees ........................................................................102
    C.    General Authority ......................................................................................103
    D.    Headings ....................................................................................................103
    E.    Final Order ................................................................................................104
    F.    Amendments and Modifications................................................................104
    G.    Payment Date ............................................................................................104
    H.    Withholding and Reporting Requirements ...............................................104
    I.    No Waiver..................................................................................................105
    J.    Tax Exemption...........................................................................................105
    K.    Securities Exemption ................................................................................105
    L.    Non-Severability........................................................................................105
    M.    Revocation .................................................................................................106
    N.    Plan Controls Disclosure Statement .........................................................106
    O.    Governing Law ..........................................................................................106
    P.    Notices ......................................................................................................106
    Q.    Filing of Additional Documents ...............................................................107

# TABLE OF CONTENTS
(continued)

**Page**

|  |  |  |  |
|---|---|---|---|
| R. | Direction to a Party | | 107 |
| S. | Successors and Assigns | | 107 |
| T. | Final Decree | | 107 |
| ARTICLE 16. | CONFIRMATION REQUEST | | 108 |
| ARTICLE 17. | BANKRUPTCY RULE 9019 REQUEST AND, TO EXTENT REQUIRED, REQUEST PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 1123(A)(5) | | 108 |

## INTRODUCTION

New Century Financial Corporation, New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation, New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corporation, New Century R.E.O. II Corporation,  New Century R.E.O. III Corporation, New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., and New Century Warehouse Corporation, debtors and debtors in possession in the above-captioned chapter 11 cases and the Official Committee of Unsecured Creditors appointed in the above-captioned chapter 11 cases as co-proponents propose this First Amended Joint Chapter 11 Plan of Liquidation pursuant to the provisions of the Bankruptcy Code.

## ARTICLE 1.

## DEFINITIONS

### A.    Defined Terms.

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of this Plan, the following terms (which appear in this Plan in capitalized forms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context requires otherwise.

**"510(b) Claims"** means, collectively, Series A 510(b) Claims, Series B 510(b) Claims, and Common Stock 510(b) Claims.

**"Access Lending"** means New Century Warehouse Corporation, a California corporation and a Debtor.

**"Access Lending Administrative Fund"** means the reserve established for the Reorganized Access Lending Operating Expenses and the expenses incurred in connection with the pursuit of the Access Lending Causes of Action in accordance with Article 10.F.1 herein, which reserve may be augmented by the Plan Administrator in his or her discretion.

"**Access Lending A/P/S Reserve**" means the reserve established, in accordance with Article 10.F.2 of this Plan, to pay (i) all Allowed A/P/S Claims against Access Lending to the extent such Claims are not paid on the Effective Date and (ii) any Disputed A/P/S Claim against Access Lending to the extent such Claim becomes an Allowed A/P/S Claim.

"**Access Lending Bar Date**" means, with respect to Access Lending, (i) December 14, 2007 and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against Access Lending must have filed a Proof of Claim against Access Lending or be forever barred from asserting such Claim.

"**Access Lending Causes of Action**" means all Causes of Action, including Avoidance Actions, of Access Lending, which Causes of Action are not included within the Liquidating Trust Assets.

"**Access Lending Claims Reserve**" means the reserve established, in accordance with 10.F.3 of this Plan, to pay any Disputed Unsecured Claim against Access Lending to the extent such Claim becomes an Allowed Unsecured Claim against Access Lending.

"**Access Lending Interest**" means an Interest in Access Lending, all of which Interests are owned by TRS Holdings.

"**Access Lending Net Distributable Assets**" means the amount as calculated pursuant to Article 10.F.4 of this Plan.

"**ACH**" means an automated clearing house transfer from a domestic bank.

"**Adequate Protection Proceeds**" means any funds allocated by a Final Order to be distributed to the estate of NCMC from either of two escrow accounts established pursuant to the Order Granting Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) and Establishing Preliminary Procedures for Resolving Certain Claims dated June 29, 2007 [Docket No. 1729] and held by Hahn & Hessen LLP, as escrow agent.

"**Administrative Claim**" means any Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation:   (a) Professional Fee Claims, (b) any post-petition taxes subject to

administrative treatment, and (c) fees and charges assessed against the Debtors or the Estates pursuant to Section 1930 of title 28 of the United States Code.

"**Administrative Claim Request**" means a request for payment of an Administrative Claim (excluding Professional Fee Claims) that is to be filed with the Bankruptcy Court and served on counsel for the Plan Proponents, if on or before the Effective Date, or on the Liquidating Trustee, if after the Effective Date, and in any event by no later than the Administrative Claim Request Deadline.

"**Administrative Claim Request Deadline**" means the date set as the deadline for filing Administrative Claim Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Orders, which shall be thirty (30) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

"**Administrative Fund**" means the reserve established for the Trust Operating Expenses and expenses incurred in connection with the pursuit of the Causes of Action in accordance with Article 9.B.1 herein, which reserve may be augmented by the Liquidating Trustee in consultation with the Plan Advisory Committee.

"**Allowed Claim**" or "**Allowed Interest**" means, respectively, a Claim or Interest:  (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent, or unliquidated and (b) as to which no Proof of Claim has been filed;  (ii) as to which a timely Proof of Claim has been filed as of the relevant Bar Date and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; (iii) as to which a timely Administrative Claim Request has been filed as of the Administrative Claim Request Deadline and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; or (iv) that has been allowed by a Final Order; or which is allowed in the Plan; provided, however, that prior to the deadline imposed by this Plan to file objections to a given Claim, no Claim shall be treated as Allowed to the extent that it is filed by the holder of such Claim (x) in an amount greater than the amount listed for such Claim by the Debtors in their Schedules or (y) asserting a priority higher than the priority listed for such Claim by the Debtors in their Schedules.

**"Allowed [Class Designation, A/P/S, Administrative, Priority Tax, Priority, Secured, Unsecured, Other Unsecured, 510(b), or Capital Trust] Claim"** means an Allowed Claim of the specified Class or an Allowed Claim that is an A/P/S Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Unsecured Claim, Other Unsecured Claim, 510(b) Claim, or Capital Trust Claim.

**"Allowed [Debtor Group] Unsecured Claims"** means Unsecured Claims that are allowed against Debtors in the specified Debtor Group.

**"April Debtors Bar Date"** means with respect to all Debtors other than Access Lending (i) August 31, 2007 and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against any Debtor(s) other than Access Lending must have filed a Proof of Claim against such Debtor(s) or be forever barred from asserting such Claim.

**"A/P/S Claim"** means any Claim that is an Administrative Claim, Priority Claim, Priority Tax Claim, or Secured Claim.

**"A/P/S Claims Reserve"** means the reserve established, in accordance with Article 9.B.2 of this Plan, to pay (i) all Allowed A/P/S Claims (other than against Access Lending) to the extent such Claims are not paid on the Effective Date and (ii) any Disputed A/P/S Claim (other than against Access Lending) to the extent such Claim becomes an Allowed A/P/S Claim.

**"Assets"** means the assets of each of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, book and records of the Estates.

**"Assumption Objection Deadline"** means the date seven (7) days prior to the Confirmation Hearing.

**"Assumption Schedule"** means the schedule of Executory Contracts (not previously assumed in the Chapter 11 Cases) to be assumed by the Debtors as of the Effective Date pursuant

4

to this Plan, together with the amount of cure payments, if any, to be paid by the Liquidating Trustee in accordance with section 365(b)(1) of the Bankruptcy Code.

**"Avoidance Actions"** means all Claims and Causes of Action arising under sections 522, 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code.

**"Ballot"** means the form or forms distributed to each Holder of an Allowed Claim in an impaired Class entitled to vote on this Plan on which the Holder indicates acceptance or rejection of this Plan or any election for treatment of such Claim under this Plan.

**"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots must be received.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the date hereof.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware and any other court that exercises jurisdiction over the Chapter 11 Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure applicable to the Chapter 11 Cases and the Local Rules of the Bankruptcy Court, each as in effect from time to time.

**"Bar Dates"** means, collectively, the Access Lending Bar Date and the April Debtors Bar Date.

**"Bar Date Orders"** means (i) the "Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency Thereof" [Docket No. 1721] and (ii) the "Order Establishing Bar Dates for Filing Proofs of Claim in the Chapter 11 Case of New Century Warehouse Corporation and Approving Form, Manner and Sufficiency Thereof" dated October 23, 2007 [Docket No. 3404].

**"Business Day"** means any day except a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**"Capital Trust Claim"** means a Claim against NCFC arising from NCFC's obligations under the Capital Trust Indentures.

**"Capital Trust Indenture"** means, collectively, (i) that certain Junior Subordinated Indenture between NCFC and Wells Fargo Bank, N.A., as trustee, dated as of September 13, 2006 and (ii) that certain Junior Subordinated Indenture between NCFC and Wells Fargo Bank, N.A., as trustee, dated as of November 16, 2006.

**"Cash"** means cash or cash equivalents in certified or immediately available funds, including but not limited to bank deposits, checks, and similar items.

**"Causes of Action"** means all claims, causes of action, third-party claims, counterclaims and crossclaims (including but not limited to any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that may be pending on the Effective Date or instituted after the Effective Date against any Person based in law, equity, or otherwise, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions; provided, however, that any affirmative defense or crossclaim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce or is offset against such Claim.

**"Chapter 11 Cases"** means the 16 above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court and jointly administered with one another under Case No. 07-10416 (KJC).

**"Claim"** means "claim," as such term is defined in Section 101(5) of the Bankruptcy Code and, except as otherwise provided in the context, means a Claim against the Debtors or the Estates.

**"Class"** means a group of Claims or Interests as established under Article 2 of this Plan pursuant to Bankruptcy Code section 1122.

**"Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

**"Common Stock 510(b) Claim"** means any Claim (i) arising from rescission of a purchase or sale of Common Stock Interests, Option Interests, or Warrant Interests, for damages

arising from the purchase or sale of such securities, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claims and (ii) which, if asserted against NCFC, would be of the same respective priority as Common Stock Interests, Option Interests, or Warrant Interests pursuant to section 510(b) of the Bankruptcy Code.

**"Common Stock Interests"** means the common stock of NCFC issued and outstanding immediately before the Effective Date.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing pursuant to Bankruptcy Rule 3020(b) at which the Bankruptcy Court considers confirmation of this Plan, as such hearing may be continued from time to time.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Cramdown Plan"** means this Plan if confirmed by the Bankruptcy Court pursuant to section 1129(b) of the Bankruptcy Code.

**"Creditor"** means "creditor," as such term is defined in section 101(10) of the Bankruptcy Code.

**"De Minimis Distribution"** means a distribution to be made in accordance with the terms of this Plan that is $50.00 or less.

**"Debtor Group"** means, individually or collectively, the Holding Company Debtors, the Operating Debtors, or Access Lending.

**"Debtors"** means, collectively, the following entities in existence on the Petition Date: Access Lending; Home123; NC Asset Holding; NC Capital; NC Credit; NC Deltex; NC Residual III; NC Residual IV; NCFC; NCMC; NCoral; NCM Ventures, LLC; NC R.E.O.; NC R.E.O. II; NC R.E.O. III; and TRS Holdings.

**"Determined Distribution Amount"** means the amount assigned to each Allowed Unsecured Claim, as set forth in Article 4 of this Plan and subject to the Multi-Debtor Protocol

and Intercompany Claim Protocol, for purposes of determining distributions to be made to Holders of Allowed Unsecured Claims in accordance with the terms of this Plan.

**"Disallowed Claim"** means a Claim or any portion thereof that (i) has been disallowed by Final Order, (ii) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iii) is not Scheduled and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

**"Disclosure Statement"** means the disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified, or supplemented from time to time.

**"Disputed Claim"** means a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including without limitation all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed, or at zero, (ii) are the subject of a Proof of Claim that differs in nature, amount, or priority from the Schedules, or (iii) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

**"Disputed [Class Designation, A/P/S, Administrative, Priority Tax, Priority, Secured, Unsecured, Other Unsecured, or 510(b)] Claim"** means a Disputed Claim of the specified Class or a Disputed Claim that is an A/P/S Claim, Administrative Claim, Priority Tax

Claim, Priority Claim, Secured Claim, Unsecured Claim, Other Unsecured Claim, or 510(b) Claim.

**"Effective Date"** means the Business Day on which this Plan becomes effective pursuant to Article 14.A of this Plan; provided however, that if any stay or injunction against enforcement or execution of the Confirmation Order is issued prior to the date that would otherwise be the Effective Date, the Effective Date shall be the first Business Day after all such stays or injunctions are no longer in effect.

**"EPD/Breach Claim"** means a Claim arising under an agreement between one or more of the Debtors and a loan buyer or securitization party for (i) breach of a representation or warranty under such agreement made by one or more of the Debtors or (ii) a right under such an agreement to resell a loan to one or more of the Debtors based on a payment default by the borrower on such loan.

**"EPD/Breach Claim Protocol"** means the protocol, attached as Exhibit B hereto, by which the amount of damages for EPD/Breach Claims are calculated.

**"Estates"** means the estates created by the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**"Executory Contract"** means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person.

**"Examiner"** means Michael J. Missal, acting in his capacity as the examiner appointed in the Chapter 11 Cases by the Bankruptcy Court pursuant to section 1104(c) of the Bankruptcy Code, or such other Person, acting in such capacity, as the Bankruptcy Court may hereafter appoint.

**"Exculpated Party"** means any of the Debtors, the Liquidating Trustee (including in its capacity as Plan Administrator), the Estates, the Liquidating Trust, Reorganized Access Lending, the Committee, each of the Members of the Committee, the Indenture Trustee, the Plan Advisory Committee, and their respective officers, directors, employees, members, attorneys, crisis managers, financial advisors, and professionals, each in their respective capacities.

**"Fee Application"** means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for compensation of a Professional Fee Claim.

**"Fee Auditor"** means Warren H. Smith & Associates, P.C., acting in its capacity as the fee auditor appointed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court dated October 10, 2007 [Docket No. 3260], or such other Person, acting in such capacity, as the Bankruptcy Court may hereafter appoint.

**"Final Decree"** means the decree contemplated under Bankruptcy Rule 3022.

**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of the Chapter 11 Cases, that has not been reversed, rescinded, stayed, modified or amended, that is in full force and effect, and with respect to which:  (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; (b) any right to appeal, seek review or rehearing, or petition for certiorari has been waived in writing; or (c) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought.  Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means only such order or judgment which has been entered on the docket and as to which no stay is in effect.

**"Goldman"** means, together, GSMC and its affiliate Goldman, Sachs & Co.

**"Goldman AL3 Claim"** means any and all Claims of Goldman against Access Lending arising out of or relating to the Goldman MRA, which Claim is allowed under the Plan in Class AL3 in the amount of $9,506,754.00.

**"Goldman HC3b Claim"** means any and all Claims of Goldman against NCFC arising out of or relating to the Goldman MRA which Claim is allowed under the Plan in Class HC3b in the amount of $5,000,000.00.

**"Goldman MRA"** means the Master Repurchase Agreement dated February 15, 2006 (as amended by Amendment No. 1 dated as of October 25, 2006, Amendment No. 2. dated

November 30, 2006, and Amendment No. 3 dated as of February 7, 2007) entered into by Access Lending, GSMC, and NCFC (as guarantor), the Guaranty dated February 15, 2006 between GSMC and NCFC, as well as any other documents executed or delivered in connection therewith.

**"GSMC"** means Goldman Sachs Mortgage Company.

**"Holder"** means the owner or holder of any Claim or Interest.

**"Holding Company Debtor Claims Reserve"** means the reserve established, in accordance with Article 9.B.3 of this Plan, to pay any Disputed Unsecured Claim against a Holding Company Debtor to the extent such Claim becomes an Allowed Unsecured Claim against a Holding Company Debtor.

**"Holding Company Debtor Net Distributable Assets"** means the amount as calculated pursuant to Article 9.C.2 of this Plan.

**"Holding Company Debtor Portion of Litigation Proceeds"** means 27.5% of the Litigation Proceeds.

**"Holding Company Debtor Portion of the Restatement Litigation Proceeds"** means 27.5% of the Restatement Litigation Proceeds.

**"Holding Company Debtors"** means, collectively, NCFC, NC Credit, NC Residual IV, and TRS Holdings.

**"Home 123"** means Home123 Corporation, a California corporation and a Debtor.

**"Indenture Trustee"** means Wells Fargo Bank, N.A., in its capacity as trustee of the Capital Trust Indentures.

**"Indenture Trustee Expenses"** means the reasonable compensation and expenses of the Indenture Trustee, including the fees and expenses of its counsel, agents and advisers, incurred at any time prior to or subsequent to the Petition Date, and prior to or subsequent to the Effective Date; provided, however, any such fees, compensation, or expense arising subsequent to the Effective Date shall only be paid from distributions to be made on account of Capital Trust Claims and Senior Class HC3b Claims.

**"Intercompany Claim"** means a Claim held by a Debtor against another Debtor.

**"Intercompany Claim Protocol"** means the protocol, set forth in Article 7 of this Plan, pursuant to which each Intercompany Claim is assigned a Determined Distribution Amount, notwithstanding the treatment of the Class in which a particular Intercompany Claim is classified.

**"Interest"** means, with respect to any Debtor, any "equity interest," as such term is defined in Bankruptcy Code § 101(16). Interests shall also include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any shares of stock in the Debtors.

**"IRC"** means the Internal Revenue Code of 1986, as amended.

**"IRS"** means the Internal Revenue Service.

**"Joint Administrative Expense"** means (i) an Allowed Administrative Claim (including, without limitation, Professional Fee Claims) or portion thereof or (ii) an expense of administering the Debtors' Estates, or portion thereof, incurred in the ordinary course prior to the Effective Date and paid by the Debtors on or before the Effective Date in the ordinary course in either case for which, as determined by the Liquidating Trustee and approved by the Plan Advisory Committee, (a) liability cannot be allocated to a particular Debtor or Debtors and (b) Debtors in more than one Debtor Group are liable.

**"Joint Administrative Expense Share"** means the share (expressed in terms of percentage) of a Joint Administrative Expense allocated to each of Access Lending, the Holding Company Debtors, and the Operating Debtors as set forth in Exhibit C to this Plan.

**"Lien"** means any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt, or litigation.

**"Liquidating Trust"** means the liquidating trust into which all of the Assets of the Debtors, other than the Assets of Access Lending, will be transferred upon the Effective Date.

**"Liquidating Trust Agreement"** means the formative trust agreement for the Liquidating Trust, to be filed by the Plan Proponents with the Bankruptcy Court at least fifteen (15) days prior to the deadline to vote to accept or reject this Plan.

**"Liquidating Trust Assets"** means the Assets of the Debtors, including Access Lending Interests but excluding the Assets of Access Lending, contributed to the Liquidating Trust.

**"Liquidating Trustee"** means the Person appointed to act as trustee of the Liquidating Trust in accordance with the terms of this Plan, the Confirmation Order, and the Liquidating Trust Agreement, or any successor appointed in accordance with the terms of this Plan and the Liquidating Trust Agreement

**"Litigation Proceeds"** means the net proceeds of all Causes of Action (other than Access Lending Causes of Action) whether from judgment, settlement, or claim on insurance, as calculated pursuant to Article 9.C.1 of this Plan and includes the Restatement Litigation Proceeds.

**"Members of the Committee"** means, individually and collectively, the Persons appointed as members of the Committee by the U.S. Trustee on April 9, 2007, each acting in its capacity as a member of the Committee.

**"Multi-Debtor Claim Protocol"** means the protocol, set forth in Article 6 of this Plan, pursuant to which a Creditor's Determined Distribution Amount is assigned where such Creditor holds Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable.

**"NC Asset Holding"** means NC Asset Holding, L.P., a Delaware limited partnership and a Debtor.

**"NC Capital"** means NC Capital Corporation, a California corporation and a Debtor.

**"NC Capital EDP/Breach Claimant Portion of Litigation Proceeds"** means 45% of the Litigation Proceeds.

**"NC Credit"** means New Century Credit Corporation, a California corporation and a Debtor.

**"NC Deltex"** means NC Deltex, LLC, a Delaware limited liability company and a Debtor.

**"NC REO"** means New Century R.E.O. Corp., a California corporation and a Debtor.

**"NC REO II"** means New Century R.E.O. II Corp., a California corporation and a Debtor.

**"NC REO III"** means New Century R.E.O. III Corp., a California corporation and a Debtor.

**"NC Residual III"** means NC Residual III Corporation, a Delaware corporation and a Debtor.

**"NC Residual IV"** means NC Residual IV Corporation, a Delaware corporation and a Debtor.

**"NCFC"** means New Century Financial Corporation, a Maryland corporation and a Debtor.

**"NCFC Interest"** means an Interest in NCFC, including Stock Interests, Option Interests, and Warrant Interests.

**"NCFC Interest Holder"** means a Holder of an NCFC Interest.

**"NCM Ventures"** means New Century Mortgage Ventures, LLC, a Delaware limited liability company and a Debtor.

**"NCMC"** means New Century Mortgage Corporation, a California corporation and a Debtor.

**"NCMC AL3 Claim"** means any and all Claims of NCMC against Access Lending, which Claim is allowed under the Plan in Class AL3 in the amount of $3,973,199.86.

**"NCoral"** means NCoral, L.P., a Delaware limited partnership and a Debtor.

**"Operating Debtor Claims Reserve"** means the reserve established, in accordance with Article 9.B.4 of this Plan, to pay any Disputed Unsecured Claim against an Operating Debtor to the extent such Claim becomes an Allowed Unsecured Claim against an Operating Debtor.

**"Operating Debtor Net Distributable Assets"** means the amount as calculated pursuant to Article 9.C.3 of this Plan.

**"Operating Debtor Portion of the Litigation Proceeds"** means 27.5% of the Litigation Proceeds.

**"Operating Debtor Portion of the Restatement Litigation Proceeds"** means 27.5% of the Restatement Litigation Proceeds.

**"Operating Debtor Unsecured Claims"** means all Unsecured Claims against Operating Debtors.

**"Operating Debtors"** means, collectively, Home 123, NC Asset Holding, NC Capital, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, NCMC, and NCoral.

**"Option Interest"** means unexercised options to purchase Common Stock Interests.

**"Other AL3 Claims"** means all Class AL3 Claims other than the Goldman AL3 Claim and the NCMC AL3 Claim.

**"Other Unsecured Claim"** means any Unsecured Claim other than Special Deficiency Claims and EPD/Breach Claims.

**"Person"** means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

**"Petition Date"** means, (i) with respect to all Debtors other than Access Lending, April 2, 2007, the date on which all of the Debtors other than Access Lending commenced the Chapter 11 Cases, and (ii) with respect to Access Lending, August 3, 2007, the date on which Access Lending commenced its Chapter 11 Case.

**"Plan"** means this Joint Chapter 11 Plan of Liquidation (either in its present form or as it may be amended or modified from time to time), any exhibits hereto, and any documents incorporated herein by reference.

**"Plan Administrator"** means the Liquidating Trustee, acting in its capacity as the chief executive officer and sole director of Reorganized Access Lending and as the Person responsible for liquidating and winding down the Estate of Access Lending as set forth in Article 10.B of this Plan.

**"Plan Administrator Agreement"** means the agreement setting forth the rights and duties of the Plan Administrator, to be filed by the Plan Proponents with the Bankruptcy Court no later than one (1) day prior to the Confirmation Hearing.

**"Plan Advisory Committee"** means the post-confirmation committee formed on the Effective Date and selected by the Committee in accordance with Article 8.G of this Plan.

**"Plan Proponents"** means, collectively, the Debtors and the Committee.

**"Priority Claim"** means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**"Priority Tax Claim"** means a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**"Professional"** means the Examiner, the Fee Auditor, or any Person employed by the Debtors, the Committee, and/or the Examiner pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, and/or 331 of the Bankruptcy Code. This definition excludes professionals that may be selected and employed by the Liquidating Trust, the Liquidating Trustee, or the Plan Advisory Committee on and after the Effective Date with respect to services rendered by such professionals on and after the Effective Date.

**"Professional Fee Claim"** means all fees and expenses claimed by Professionals retained by the Debtors, the Committee, and/or the Examiner that have not been approved on a final basis by a Final Order as of the Effective Date. This definition excludes professional fees and expenses incurred by any professionals that may be selected and employed by the

Liquidating Trust, the Liquidating Trustee, or the Plan Advisory Committee on and after the Effective Date.

**"Proof of Claim"** means a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

**"Pro Rata"** means proportionate, so that, for example, the ratio of the consideration distributed on account of the Determined Distribution Amount of an Allowed Claim to the amount of the Determined Distribution Amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Determined Distribution Amounts of Allowed Claims in such Class of Claims to the amount of all Determined Distribution Amounts of Allowed Claims in that Class.

**"Protected Party"** means any of the Liquidating Trustee (including in its capacity as Plan Administrator), the Estates, the Liquidating Trust, Reorganized Access Lending, and the Plan Advisory Committee, each in their respective capacities.

**"Reorganized Access Lending"** means Access Lending on and after the Effective Date.

**"Reorganized Access Lending Operating Expenses"** means the expenses incurred by Reorganized Access Lending in connection with carrying out the obligations of the Plan Administrator pursuant to the terms of this Plan or the Plan Administrator Agreement, in each case with the exception of any expenses incurred in connection with the Causes of Action.

**"Restatement Litigation Proceeds"** means the portion of Litigation Proceeds that constitutes net proceeds of any recoveries realized by the Liquidating Trust on claims arising out of events or circumstances that led to the restatement of the financial statements of the Debtors or such restatement itself, as may be agreed to by the Holder of a Special Deficiency Claim and the Liquidating Trustee or determined by final order of the Bankruptcy Court.

**"Scheduled"** means, with respect to any Claim, such Claim is listed on the Schedules.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors with the Bankruptcy Court, pursuant to section 521(a) of

the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be amended from time to time.

"**SEC**" means the Securities and Exchange Commission.

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable lien on property in which the Estates have an interest, or that is subject to recoupment or setoff under section 553 of the Bankruptcy Code to the extent of the value of the Holder's interest in the Estates' interest in such property, or to the extent of the amount subject to recoupment or setoff, as applicable, as determined by the Bankruptcy Court pursuant to sections 506(a), 553, and/or 1129(b)(2)(A)(i)(II), as applicable.

"**Senior Class HC3b Claim**" means a Class HC3b Claim that arises from an obligation of NCFC that comes within the definition of "Senior Debt" in either of the Capital Trust Indentures.

"**Series A 510(b) Claim**" means any Claim (i) arising from rescission of a purchase or sale of Series A Preferred Stock Interests, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claims and (ii) which, if asserted against NCFC, would be of junior priority to Series A Preferred Stock Interests and of senior priority to Series B Preferred Stock Interests pursuant to section 510(b) of the Bankruptcy Code.

"**Series A Preferred Stock Interests**" means the 9.125% Series A Cumulative Redeemable Preferred Stock of NCFC issued and outstanding immediately before the Effective Date.

"**Series B 510(b) Claim**" means any Claim (i) arising from rescission of a purchase or sale of Series B Preferred Stock Interests, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claims and (ii) which, if asserted against NCFC, would be of junior priority to Series B Preferred Stock Interests and of senior priority to Common Stock Interests pursuant to section 510(b) of the Bankruptcy Code.

**"Series B Preferred Stock Interests"** means the 9.75% Series B Cumulative Redeemable Preferred Stock of NCFC issued and outstanding immediately before the Effective Date.

**"Special Deficiency Claim"** means any Claim arising under a master repurchase agreement governing the sale and repurchase of mortgage loans by the Debtors to and from DB Structured Products, Inc., provided for in that certain Settlement Agreement with DB Structured Products, Inc. dated as of August 8, 2007 and approved in the "Order Approving Settlement Agreement with DB Structured Products, Inc. Pursuant to Bankruptcy Rule 9019 and Sections 105(a), 361, 363, 502 and 542 of the Bankruptcy Code" entered on August 21, 2007 [Docket No. 2369], and any other settlement agreement entered into by any of the Debtors and approved by Final Order that provides that it gives rise to a Claim that is to be treated as a Special Deficiency Claim under this Plan.

**"Stock Interests"** means Common Stock Interests, Series A Preferred Stock Interests, and Series B Preferred Stock Interests.

**"Subordination Statement"** means the pleading that a Holder of a Class HC3b Claim must file with the Bankruptcy Court no later than thirty (30) days after the Effective Date in order to assert that such Holder holds a Senior Class HC3b Claim, which pleading must describe with specificity the legal and factual basis for establishing that such Holder holds a Senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures.

**"TRS Holdings"** means New Century TRS Holdings, Inc, a Delaware corporation and a Debtor.

**"Trust Operating Expenses"** means the expenses incurred by the Liquidating Trust in connection with carrying out the obligations of the Liquidating Trust pursuant to the terms of this Plan or the Liquidating Trust Agreement, in each case with the exception of any expenses incurred in connection with the Causes of Action.

**"Unsecured Claim"** means any Claim against any Debtor that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or a 510(b) Claim, provided that Unsecured Claims shall include, without limitation, any Claim secured by an interest in property of the Estate to the extent the amount of such Claim exceeds the value, as determined by the Bankruptcy Court pursuant to sections 506(a), 553, and/or 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, of the Holder's interest in the Estate's interest in property of the Estate securing such Claim.

**"U.S. Trustee"** means the Office of the United States Trustee.

**"Warrant Interests"** means unexercised warrants to purchase Common Stock Interests.

**B.      Other Terms.**  The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section or clause contained in this Plan.  A reference to an "Article" refers to an Article of this Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply in construing this Plan.

**C.      Time Periods.**  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any act under this Plan is required to be made or performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**D.      Exhibits.**  All Exhibits to this Plan are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

**ARTICLE 2.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**A.      Summary.**  The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to this Plan.

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| [unclassified] | Administrative and Priority Tax Claims against all Debtors. | Unimpaired - not entitled to vote |
| **Claims Against Holding Company Debtors** | | |
| Class HC1 | Class HC1 consists of Priority Claims against NCFC. | Unimpaired - not entitled to vote |
| Class HC2 | Class HC2 consists of Secured Claims against NCFC. | Unimpaired - not entitled to vote |
| Class HC3a | Class HC3a consists of Special Deficiency Claims against NCFC. | Impaired - entitled to vote |
| Class HC3b | Class HC3b consists of Other Unsecured Claims against NCFC. | Impaired - entitled to vote |
| Class HC4a | Class HC4a consists of Series A Preferred Stock Interests. | Deemed to reject - not entitled to vote |
| Class HC4b | Class HC4b consists of Series A 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC4c | Class HC4c consists of Series B Preferred Stock Interests. | Deemed to reject - not entitled to vote |
| Class HC4d | Class HC4d consists of Series B 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC4e | Class HC4e consists of Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC5 | Class HC5 consists of Priority Claims against TRS Holdings. | Unimpaired - not entitled to vote |
| Class HC6 | Class HC6 consists of Secured Claims against TRS Holdings. | Unimpaired - not entitled to vote |
| Class HC7 | Class HC7 consists of Other Unsecured Claims against TRS Holdings. | Impaired - entitled to vote |
| Class HC8 | Class HC8 consists of Priority Claims against NC Credit. | Unimpaired - not entitled to vote |
| Class HC9 | Class HC9 consists of Secured Claims against NC Credit. | Unimpaired - not entitled to vote |
| Class HC10a | Class HC10a consists of Special Deficiency Claims against NC Credit. | Impaired - entitled to vote |
| Class HC10b | Class HC10b consists of Other Unsecured Claims against NC Credit. | Impaired - entitled to vote |

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Class HC11 | Class HC11 consists of Priority Claims against NC Residual IV. | Unimpaired - not entitled to vote |
| Class HC12 | Class HC12 consists of Secured Claims against NC Residual IV. | Unimpaired - not entitled to vote |
| Class HC13 | Class HC13 consists of Other Unsecured Claims against NC Residual IV. | Impaired - entitled to vote |
| **Claims Against Operating Debtors** | | |
| Class OP1 | Class OP1 consists of Priority Claims against NCMC. | Unimpaired - not entitled to vote |
| Class OP2 | Class OP2 consists of Secured Claims against NCMC. | Unimpaired - not entitled to vote |
| Class OP3a | Class OP3a consists of Special Deficiency Claims against NCMC. | Impaired - entitled to vote |
| Class OP3b | Class OP3b consists of EPD/Breach Claims against NCMC. | Impaired - entitled to vote |
| Class OP3c | Class OP3c consists of Other Unsecured Claims against NCMC. | Impaired - entitled to vote |
| Class OP4 | Class OP4 consists of Priority Claims against NC Capital. | Unimpaired - not entitled to vote |
| Class OP5 | Class OP5 consists of Secured Claims against NC Capital. | Unimpaired - not entitled to vote |
| Class OP6a | Class OP6a consists of Special Deficiency Claims against NC Capital. | Impaired - entitled to vote |
| Class OP6b | Class OP6b consists of EPD/Breach Claims against NC Capital. | Impaired - entitled to vote |
| Class OP6c | Class OP6c consists of Other Unsecured Claims against NC Capital. | Impaired - entitled to vote |
| Class OP7 | Class OP7 consists of Priority Claims against Home123. | Unimpaired - not entitled to vote |
| Class OP8 | Class OP8 consists of Secured Claims against Home123. | Unimpaired - not entitled to vote |
| Class OP9a | Class OP9a consists of Special Deficiency Claims against Home123. | Impaired - entitled to vote |
| Class OP9b | Class OP9b consists of Other Unsecured Claims against Home123 | Impaired - entitled to vote |

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Class OP10 | Class OP10 consists of Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Unimpaired - not entitled to vote |
| Class OP11 | Class OP11 consists of Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Unimpaired - not entitled to vote |
| Class OP12 | Class OP12 consists of Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Impaired - entitled to vote |
| **Claims Against Access Lending** | | |
| Class AL1 | Class AL1 consists of Priority Claims against Access Lending. | Unimpaired - not entitled to vote |
| Class AL2 | Class AL2 consists of Secured Claims against Access Lending. | Unimpaired - not entitled to vote |
| Class AL3 | Class AL3 consists of Other Unsecured Claims against Access Lending. | Impaired - entitled to vote |

B.    **Classification.**   The Claims against the Debtors shall be classified as specified below (other than Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 3 below).   Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.   This Plan does not effect a substantive consolidation of the Debtors.   The classification of Claims pursuant to this Plan is as follows:

1.    *Class HC1.*   Class HC1 consists of Priority Claims against NCFC.

2.    *Class HC2.*   Class HC2 consists of Secured Claims against NCFC.

3.    *Classes HC3a-b.*   Class HC3 consists of Unsecured Claims against NCFC, and shall be further classified in separate Classes as follows:

(a)    Class HC3a consists of Special Deficiency Claims against NCFC.

    (b)    Class HC3b consists of Other Unsecured Claims against NCFC.

4.    Class HC4. *Class HC4 consists of NCFC Interests and 510(b) Claims against NCFC, and shall be further classified in separate Classes as follows:*

    (a)    Class HC4a consists of Series A Preferred Stock Interests.

    (b)    Class HC4b consists of Series A 510(b) Claims.

    (c)    Class HC4c consists of Series B Preferred Stock Interests.

    (d)    Class HC4d consists of Series B 510(b) Claims.

    (e)    Class HC4e consists of Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims.

5.    *Class HC5.* Class HC5 consists of Priority Claims against TRS Holdings.

6.    *Class HC6.* Class HC6 consists of Secured Claims against TRS Holdings.

7.    *Class HC7.* Class HC7 consists of Other Unsecured Claims against TRS Holdings.

8.    *Class HC8.* Class HC8 consists of Priority Claims against NC Credit.

9.    *Class HC9.* Class HC9 consists of Secured Claims against NC Credit.

10.    *Classes HC10a-b.* Class HC10 consists of Unsecured Claims against NC Credit, and shall be further classified in separate Classes as follows:

    (a)    Class HC10a consists of Special Deficiency Claims against NC Credit.

    (b)    Class HC10b consists of Other Unsecured Claims against NC Credit.

11.    *Class HC11.* Class HC11 consists of Priority Claims against NC Residual IV.

12.    *Class HC12.* Class HC12 consists of Secured Claims against NC Residual IV.

13.    *Class HC13.* Class HC13 consists of Other Unsecured Claims against NC Residual IV.

24

14. *Class OP1.*  Class OP1 consists of Priority Claims against NCMC.

15. *Class OP2.*  Class OP2 consists of Secured Claims against NCMC.

16. *Classes OP3a-c.*  Class OP3 consists of Unsecured Claims against NCMC, and shall be further classified in separate Classes as follows:

    (a)    Class OP3a consists of Special Deficiency Claims against NCMC.

    (b)    Class OP3b consists of EPD/Breach Claims against NCMC.

    (c)    Class OP3c consists of Other Unsecured Claims against NCMC.

17. *Class OP4.*  Class OP4 consists of Priority Claims against NC Capital.

18. *Class OP5.*  Class OP5 consists of Secured Claims against NC Capital.

19. *Classes OP6a-c.*  Class OP6 consists of Unsecured Claims against NC Capital, and shall be further classified in separate Classes as follows:

    (a)    Class OP6a consists of Special Deficiency Claims against NC Capital.

    (b)    Class OP6b consists of EPD/Breach Claims against NC Capital.

    (c)    Class OP6c consists of Other Unsecured Claims against NC Capital.

20. *Class OP7.*  Class OP7 consists of Priority Claims against Home123.

21. *Class OP8.*  Class OP8 consists of Secured Claims against Home123.

22. *Classes OP9a-b.*  Class OP9 consists of Unsecured Claims against Home123, and shall be further classified in separate Classes as follows:

    (a)    Class OP9a consists of Special Deficiency Claims against Home123.

    (b)    Class OP9b consists of Other Unsecured Claims against Home123.

23. *Class OP10.*  Class OP10 consists of Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NC Coral.

24.    *Class OP11.*    Class OP11 consists of Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NC Coral.

25.    *Class OP12.*    Class OP12 consists of Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral.

26.    *Class AL1.*    Class AL1 consists of Priority Claims against Access Lending.

27.    *Class AL2.*    Class AL2 consists of Secured Claims against Access Lending.

28.    *Class AL3.*    Class AL3 consists of Other General Claims against Access Lending.

### ARTICLE 3.

### TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article 3.

A.    **Administrative Claims.**

1.    **Non-Professional Fee Administrative Claims**.    Each Holder of an Administrative Claim (other than Professional Fee Claims) must file an Administrative Claim Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than thirty (30) days after the Effective Date; provided, however, that any such Administrative Claim Request need not be filed with a hearing date. Nothing herein extends a Bar Date established in the Bar Date Orders. The Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash,

as soon as practicable after the Effective Date or within thirty (30) days after such Administrative Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, (i) a Holder of an Allowed Administrative Claim (excluding Holders of Professional Fee Claims) may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee and (ii) the Debtors (if prior to or on the Effective Date) and the Liquidating Trustee (if after the Effective Date) may pay in the ordinary course of business any expenses of administering the Debtors' estates incurred in the ordinary course of business. Without limiting the foregoing, all outstanding fees payable to the U.S. Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid by the Liquidating Trustee no later than thirty (30) days after the Effective Date or when due in the ordinary course.

2.      **Professional Fee Claims.**      The Liquidating Trustee shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Estates pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by such Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtors and the Liquidating Trust at the addresses listed in Article 15 of this Plan and on the Fee Auditor and the U.S. Trustee so that it is received no later than forty-five (45) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Liquidating Trust, Reorganized Access Lending, and their

successors, their assigns, or their Assets. Allowed Professional Fee Claims must be paid in full or reserved for in Cash to pay Professional Fee Claims pending allowance by the Bankruptcy Court prior to any payment to Holders of Allowed Unsecured Claims.

**B.      Priority Tax Claims.** The Liquidating Trustee shall pay, at the Liquidating Trustee's discretion, each Holder of an Allowed Priority Tax Claim either (i) in full in Cash as soon as practicable after the Effective Date or within thirty (30) days after such Priority Tax Claim becomes an Allowed Claim or (ii) over a period ending not later than five (5) years after the Petition Date, with deferred Cash payments in equal amounts on a quarterly basis in an aggregate amount equal to any such Allowed Priority Tax Claim, together with interest thereon (if and so required) at the legal rate required for such Claim in chapter 11 cases. All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Liquidating Trustee may prepay any Allowed Priority Tax Claim at any time after the Effective Date without any penalty or charge. Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.

**ARTICLE 4.**

**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

As required by the Bankruptcy Code, this Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. This Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and this Plan sets forth the treatment each Class will receive.

**A.      Priority Claims Against All Debtors (Classes HC1, HC5, HC8, HC11, OP1, OP4, OP7, OP10, and AL1).** Each of Classes HC1, HC5, HC8, HC11, OP1, OP4, OP7, OP10, and AL1, which are unimpaired, consists of all Allowed Priority Claims against a particular Debtor. Unless the Holder of an Allowed Priority Claim and the Debtor such Claim is against (if

prior to or on the Effective Date) or the Liquidating Trustee, including in its capacity as Plan Administrator, (if after the Effective Date) agree to a different treatment, the Liquidating Trustee shall pay each such Holder of an Allowed Priority Claim, in full, in Cash, without interest, as soon as practicable after the Effective Date.

      **B.**     **Secured Claims Against All Debtors (Classes HC2, HC6, HC9, HC12, OP2, OP5, OP8, OP11, and AL2).**  Each of Classes HC2, HC6, HC9, HC10, OP2, OP5, OP8, OP11, and AL2, which are unimpaired, consists of all Allowed Secured Claims against a particular Debtor.  At the sole option of the Liquidating Trustee, (i) Allowed Secured Claims will be unaltered and, subject to the requirements of Section 1124(2) of the Bankruptcy Code, on the Effective Date, the legal, equitable, and contractual rights of the Holders of Allowed Secured Claims shall be reinstated in full, or (ii) each Holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, the Holder's Allowed Secured Claim (a) Cash in the amount of the Allowed Secured Claim on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as practicable, (b) the property of the estate which constitutes collateral for such Allowed Secured Claim on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as practicable, or (c) such other treatment as may be agreed by the Debtor such Claim is against (if prior to or on the Effective Date) or the Liquidating Trustee, including in its capacity as Plan Administrator, (if after the Effective Date) and such Holder.

      **C.**     **Class HC3:  Unsecured Claims Against NCFC.**

      1.     **Class HC3a:  Special Deficiency Claims against NCFC.**  Class HC3a, which is impaired, consists of all Allowed Special Deficiency Claims against NCFC. Each Holder of an Allowed Class HC3a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Holding Company Debtor Portion of the Litigation Proceeds or (ii) the Holding Company Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such

Claim (as set forth in this Article 4.C.1) divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, HC10, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC3a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Holding Company Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Holding Company Debtor Portion of the Restatement Litigation Proceeds. The election to be made by the Holder to share in either the (i) Holding Company Debtor Portion of the Litigation Proceeds or (ii) Holding Company Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Effective Date or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Holding Company Debtor Portion of the Litigation Proceeds.

   2. **Class HC3b: Other Unsecured Claims against NCFC.** Class HC3b, which is impaired, consists of all Allowed Other Unsecured Claims against NCFC. Subject to Article 4.C.3 and Article 9.G of this Plan, each Holder of an Allowed Class HC3b Claim shall receive (i) its Pro Rata share of the Holding Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, HC10, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7, HC10b, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC3b Claim shall be 100% of the allowed amount of such Claim subject

to (i) the Multi-Debtor Claim Protocol, (ii) the Intercompany Claim Protocol, and (iii) with respect to Holders of Capital Trust Claims, to Article 4.C.3 of this Plan.

3.    **Senior Claim Procedure.**

(a)    In order for any Holder of a Class HC3b Claim to assert that it holds a Senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures, such Holder must file with the Bankruptcy Court and serve on the Debtors, the Holders of the Capital Trust Claims, the Liquidating Trustee, and the Indenture Trustee a Subordination Statement no later than thirty (30) days after the Effective Date.

(b)    If any Holder of a Class HC3b Claim files a Subordination Statement, any distributions that would otherwise be made on account of Allowed Capital Trust Claims in accordance with Article 9 of this Plan shall be turned over to a reserve to be held by the Liquidating Trustee (the "Senior/Sub Reserve") in a separate interest bearing account and to be distributed in accordance with this Article 4.C.3; provided, however, that prior to turning over any such distributions to the Senior/Sub Reserve, the Liquidating Trustee shall first pay to the Indenture Trustee out of such distributions (i) the balance of any Indenture Trustee Expenses previously incurred, plus (ii) the amount of $100,000 to be held by the Indenture Trustee in reserve (the "Future Expense Reserve") for payment of future Indenture Trustee Expenses, all of which Indenture Trustee Expenses are subject to the Indenture Trustee's charging lien.  The Future Expense Reserve shall only be funded from any distributions that would otherwise be made on account of Allowed Capital Trust Claims and not from any other Assets. In the event the amount of future Indenture Trustee Expenses exceeds $100,000 and the Future Expense Reserve is depleted, the Liquidating Trustee shall pay out of the Senior/Sub Reserve to the Indenture Trustee any such additional Indenture Trustee Expenses that may be incurred from time to time, upon receipt of one or more invoices from the Indenture Trustee.   Except as previously agreed to by the Committee, in no event shall

the Indenture Trustee Expenses be paid from any Assets except from the Senior/Sub Reserve, the Future Expense Reserve and from any distributions that would otherwise be made on account of Allowed Capital Trust Claims. All amounts owing to the Indenture Trustee for its Indenture Trustee Expenses or payable to the Future Expense Reserve shall be paid prior to any distribution to any Holder of a Senior Class HC3b Claim and prior to any distribution to any Holder of a Capital Trust Claim, due to its Indenture Trustee charging lien. Upon the earlier of the (i) termination of the Indenture Trustee's role in these (or related) proceedings and (ii) final distribution to Holders of Capital Trust Claims, any amounts remaining in the Future Expense Reserve shall be paid into the Senior/Sub Reserve for distribution in accordance with this Article. No distributions shall be made to any Holder of a Senior Class HC3b Claim or Holder of a Capital Trust Claim from the Senior/Sub Reserve until, with respect to each Subordination Statement, (i) the Bankruptcy Court has made a determination as to whether and to what extent the Holder of a Class HC3b Claim that filed the Subordination Statement holds a Senior Class HC3b Claim or (ii) the Holders of Allowed Capital Trust Claims and the Holder of a Class HC3b Claim that filed the Subordination Statement reach and obtain approval of a settlement as set forth in Article 4.C.3.d hereof. If no Holder of a Class HC3b Claim timely files and serves a Subordination Statement or, with respect to each timely filed Subordination Statement either (i) the Bankruptcy Court determines that the Holder of a Class HC3b Claim that filed a Subordination Statement does not hold a Senior Class HC3b Claim or (ii) such Holder withdraws its Subordination Statement pursuant to settlement (or otherwise), distributions shall be made to the Indenture Trustee for the account of Holders of Allowed Capital Trust Claims along with other Holders of Allowed Class HC3b Claims in accordance with this Plan's treatment of Allowed Class HC3b Claims, but subject to the Indenture Trustee's charging lien for payment of its Indenture Trustee Expenses.

(c)     If the Bankruptcy Court finds that any Holder of a Class HC3b Claim holds a Senior Class HC3b Claim, and such finding becomes a final non-appealable order, then (i) Holders of Allowed Capital Trust Claims shall receive no distribution from the Senior/Sub Reserve on account of their Allowed Capital Trust Claims unless and until all Holders of Senior Class HC3b Claims are paid in full on account of their Senior Class HC3b Claims and (ii) Holders of Senior Class HC3b Claims shall receive Pro Rata distributions from the amounts held in the Senior/Sub Reserve until they are paid in full.  If a Debtor(s) other than NCFC is jointly and/or severally liable with NCFC for the amount of a Senior Class HC3b Claim and the Holder of a Senior Class HC3b Claim holds an Allowed Unsecured Claim(s) against such Debtor(s) in respect of such liability, any distribution that the Holder receives on account of such Claims shall be included in determining whether the Holder's Senior Class HC3b Claim has been paid in full.  If a Senior Class HC3b Claim has been paid in full, any distributions from the Senior/Sub Reserve that would have been paid on account of such Claim shall be paid Pro Rata to Holders of Senior Class HC3b Claims, if any, that remain unpaid.  If all Holders of Senior Class HC3b Claims (if any) have been paid in full on account of their Senior Class HC3b Claims, (i) any additional amounts distributed to Holders of Allowed Class HC3b Claims shall be distributed to the Indenture Trustee for the account of Holders of Allowed Capital Trust Claims on account of their Capital Trust Claims in accordance with this Plan's treatment of Allowed Class HC3b Claims, but subject to the Indenture Trustee's charging lien for payment of its Indenture Trustee Expenses, and (ii) Holders of Allowed Capital Trust Claims shall be subrogated to the distributions that the Holders of Senior Class HC3b Claims would have received on account of their Allowed Unsecured Claims against the Debtors if such Holder's Senior Class HC3b Claims had not been paid in full.

(d)     Alternatively, if the Holders of Allowed Capital Trust Claims and the Holder(s) of Class HC3b Claims (if any) that file Subordination Statements reach a

settlement of the disputes raised in the Subordination Statements, the Holders of Allowed Capital Trust Claims (or the Indenture Trustee) shall file with the Bankruptcy Court and serve on the Debtors and the Liquidating Trustee a notice of settlement that is executed by the Holders of Allowed Capital Trust Claims and the settling Holder(s) of Class HC3b Claims that filed Subordination Statements.  Such settlement notice shall list the proposed Class HC3b Claim amounts (if any) for each of the signatories.  If no written objection to the notice is filed within 10 calendar days after the notice is served, the Bankruptcy Court shall approve and allow the Class HC3b Claims in the amounts proposed in the notice, provided that such settlement shall not operate to increase the amount of any Senior Class HC3b Claim unless it correspondingly reduces the amount of the Allowed Capital Trust Claim.  If any Holder of a Class HC3b Claim asserts that it holds a Senior Class HC3b Claim, the Indenture Trustee shall be authorized, but not required, to litigate and/or settle such asserted Claim, on behalf of the Holders of Capital Trust Claims.  The foregoing, however, shall not in any way limit or impair the right of the Holders of Capital Trust Claims to litigate and/or settle such Claims on their own, with or without the participation of the Indenture Trustee.

**D.      Class 4: NCFC Interests.**

1.      **Class HC4a:  Series A Preferred Stock Interests**.  Class HC4a, which is impaired, consists of all Series A Preferred Stock Interests.  Holders of Interests in Class HC4a shall receive no distribution or dividend on account of such Interests.  Subject to the provisions of Article 9.K herein, the entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all shares of Series A Preferred Stock Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to Series A Preferred Stock Interests) outstanding immediately prior to the Effective Date without any conversion thereof or distribution with respect thereto.

2.      **Class HC4b:  Series A 510(b) Claims.**  Class HC4b, which is impaired, consists of all Series A 510(b) Claims.  Holders of Claims in Class HC4b shall receive no distribution on account of such Claims under this Plan.

3.      **Class HC4c:  Series B Preferred Stock Interests.**  Class HC4c, which is impaired, consists of all Series B Preferred Stock Interests.  Holders of Interests in Class HC4c shall receive no distribution or dividend on account of such Interests.  Subject to the provisions of Article 9.K herein, the entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all shares of Series B Preferred Stock Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to Series B Preferred Stock Interests) outstanding immediately prior to the Effective Date without any conversion thereof or distribution with respect thereto.

4.      **Class HC4d:  Series B 510(b) Claims.**  Class HC4d, which is impaired, consists of all Series B 510(b) Claims.  Holders of Claims in Class HC4d shall receive no distribution on account of such Claims under this Plan.

5.      **Class HC4e:  Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims.**  Class HC4e, which is impaired, consists of all Common Stock Interests, all Option Interests, all Warrant Interests, and all Common Stock 510(b) Claims.  Holders of Interests or Claims in Class HC4e shall receive no distribution or dividend on account of such Interests or Claims.  Subject to the provisions of Article 9.K herein, the entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all shares of Common Stock Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to Common Stock Interests) outstanding immediately prior to the Effective Date without any conversion thereof or distribution with respect thereto.

E.      **Class HC7:  Other Unsecured Claims against TRS Holdings.**  Class HC7, which is impaired, consists of all Allowed Other Unsecured Claims against TRS Holdings.  Each Holder of an Allowed Class HC7 Claim shall receive (i) its Pro Rata share of the Holding

Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, HC10, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7, HC10b, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC7 Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

      **F.**     **Class HC10:  Unsecured Claims Against NC Credit.**

      1.     **Class HC10a:  Special Deficiency Claims against NC Credit.**  Class HC10a, which is impaired, consists of all Allowed Special Deficiency Claims against NC Credit.  Each Holder of an Allowed Class HC10a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Holding Company Debtor Portion of the Litigation Proceeds or (ii) the Holding Company Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.F.1) divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, HC10, and HC13 Claims.  The Determined Distribution Amount for each Allowed Class HC10a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Holding Company Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Holding Company Debtor Portion of the Restatement Litigation Proceeds.  The election to be made by the Holder to share in either the (i) Holding Company Debtor Portion of the Litigation Proceeds or (ii) Holding Company Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the

Effective Date or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Holding Company Debtor Portion of the Litigation Proceeds.

      2.    **Class HC10b: Other Unsecured Claims against NC Credit.** Class HC10b, which is impaired, consists of all Allowed Other Unsecured Claims against NC Credit. Each Holder of an Allowed Class HC10b Claim shall receive (i) its Pro Rata share of the Holding Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, HC10, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7, HC10b, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC10b Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

    **G.**    **Class HC13: Other Unsecured Claims against NC Residual IV.** Class HC13, which is impaired, consists of all Allowed Other Unsecured Claims against NC Residual IV. Each Holder of an Allowed Class HC13 Claim shall receive (i) its Pro Rata share of the Holding Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, HC10, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7, HC10b, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC13 Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

**H.    Class OP3:  Unsecured Claims Against NCMC.**

1.    **Class OP3a:  Special Deficiency Claims against NCMC.**  Class OP3a, which is impaired, consists of all Allowed Special Deficiency Claims against NCMC. Each Holder of an Allowed Class OP3a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Operating Debtor Portion of the Litigation Proceeds or (ii) the Operating Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.H.1) divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims.   The Determined Distribution Amount for each Allowed Class OP3a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Restatement Litigation Proceeds.  The election to be made by the Holder to share in either the (i) Operating Debtor Portion of the Litigation Proceeds or (ii) Operating Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Effective Date or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee.  In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Operating Debtor Portion of the Litigation Proceeds.

2.    **Class OP3b:  EPD/Breach Claims against NCMC.**  Class OP3b, which is impaired, consists of all Allowed EPD Breach Claims against NCMC. Each Holder of an Allowed Class OP3b Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed

Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount of each Allowed Class OP3b Claim shall be 100% of the damage amount determined for such Claim in accordance with the EPD/Breach Claim Protocol.

3.      **Class OP3c: Other Unsecured Claims against NCMC.** Class OP3c, which is impaired, consists of all Allowed Other Unsecured Claims against NCMC. Each Holder of an Allowed Class OP3c Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of All Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount for each Allowed Class OP3c Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

**I.      Class OP6: Unsecured Claims Against NC Capital.**

1.      **Class OP6a: Special Deficiency Claims against NC Capital.** Class OP6a, which is impaired, consists of all Allowed Special Deficiency Claims against NC Capital. Each Holder of an Allowed Class OP6a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Operating Debtor Portion of the Litigation Proceeds or (ii) the Operating Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.I.1) divided by the sum of the Determined Distribution Amounts of all

Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims.    The Determined Distribution Amount for each Allowed Class OP6a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Restatement Litigation Proceeds.    The election to be made by the Holder to share in either the (i) Operating Debtor Portion of the Litigation Proceeds or (ii) Operating Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Effective Date or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee.  In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Operating Debtor Portion of the Litigation Proceeds.

2.    **Class OP6b:  EPD/Breach Claims against NC Capital.**  Class OP6b, which is impaired, consists of all Allowed EPD Breach Claims against NC Capital.  Each Holder of an Allowed Class OP6b Claim shall receive (i) its Pro Rata share of the NC Capital EPD/Breach Claimant Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount of each Allowed Class OP6b Claim shall be 100% of the damage amount determined for such Claim in accordance with the EPD/Breach Claim Protocol for purposes of receiving a Pro Rata share of the NC Capital EPD/Breach Claimant Portion of the Litigation Proceeds and shall be 50% of the damage

amount determined for such Claim in accordance with the EPD/Breach Claim Protocol for purposes of receiving a distribution of its Pro Rata share of the Operating Debtor Net Distributable Assets.

3.     **Class OP6c: Other Unsecured Claims against NC Capital.**   Class OP6c, which is impaired, consists of all Allowed Other Unsecured Claims against NC Capital. Each Holder of an Allowed Class OP6c Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims.  The Determined Distribution Amount for each Allowed Class OP6c Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

**J.     Class OP9: Unsecured Claims Against Home123.**

1.     **Class OP9a: Special Deficiency Claims against Home123.**  Class OP9a, which is impaired, consists of all Allowed Special Deficiency Claims against Home123. Each Holder of an Allowed Class OP9a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Operating Debtor Portion of the Litigation Proceeds or (ii) the Operating Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.J.1) divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims.  The Determined Distribution Amount for each Allowed Class OP9a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share

in the Operating Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Restatement Litigation Proceeds. The election to be made by the Holder to share in either the (i) Operating Debtor Portion of the Litigation Proceeds or (ii) Operating Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Effective Date or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Operating Debtor Portion of the Litigation Proceeds.

2.      **Class OP9b: Other Unsecured Claims against Home123.** Class OP9b, which is impaired, consists of all Allowed Other Unsecured Claims against Home123. Each Holder of an Allowed Class OP9b Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount for each Allowed Class OP9b Claim shall be 25% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

K.      **Class OP12:   Other Unsecured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral.** Class OP12, which is impaired, consists of all Allowed Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. Each Holder of an Allowed Class OP12 Claim shall receive (i) its Pro Rata share of the

Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount for each Allowed Class OP12 Claim shall be 25% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

L.      **Class AL3:  Other Unsecured Claims Against Access Lending.**  Class AL3, which is impaired, consists of all Allowed Other Unsecured Claims against Access Lending. Each Holder of an Allowed Class AL3 Claim shall receive its Pro Rata share of the Access Lending Net Distributable Assets, based on Allowed Class AL3 Claims subject to the following adjustments: (i) until Holders of Allowed Other AL3 Claims and the Holder of the Goldman AL3 Claim receive Cash equal to 30% of the allowed amounts of their Class AL3 Claims on account of such Claims, the Holder of the NCMC AL3 Claim shall receive Pro Rata distributions as though the NCMC AL3 Claim was an Allowed Class AL3 Claim in the amount of $2,383,919.92, and (ii) after Holders of Allowed Other AL3 Claims and the Holder of the Goldman AL3 Claim have received Cash equal to 30% of the allowed amount of their Class AL3 Claims on account of such Claims, the NCMC AL3 Claim shall receive Pro Rata distributions based on the NCMC AL3 Claim being an Allowed Class AL3 Claim in the amount of $3,973,199.86, and no further distributions shall be made to the Holder of the Goldman AL3 Claim on account of such Claim.  The Multi-Debtor Protocol and the Intercompany Claim Protocol do not apply to Class AL3 Claims.

## ARTICLE 5.

## ACCEPTANCE OR REJECTION OF THIS PLAN

A.    **Impaired Classes of Claims Entitled to Vote.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, the Classes set forth in the following table are impaired and shall be entitled to vote to accept or reject this Plan:

| Class | Description |
|---|---|
| Class HC3a | Special Deficiency Claims against NCFC |
| Class HC3b | Other Unsecured Claims Against NCFC |
| Class HC7 | Other Unsecured Claims Against TRS Holdings |
| Class HC10a | Special Deficiency Claims against NC Credit |
| Class HC10b | Other Unsecured Claims against NC Credit |
| Class HC13 | Other Unsecured Claims against NC Residual IV |
| Class OP3a | Special Deficiency Claims against NCMC |
| Class OP3b | EPD/Breach Claims against NCMC |
| Class OP3c | Other Unsecured Claims against NCMC |
| Class OP6a | Special Deficiency Claims against NC Capital |
| Class OP6b | EPD/Breach Claims against NC Capital |
| Class OP6c | Other Unsecured Claims against NC Capital |
| Class OP9a | Special Deficiency Claims against Home123 |
| Class OP9b | Other Unsecured Claims against Home123 |
| Class OP12 | Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class AL3 | Other Unsecured Claims against Access Lending |

Each of Classes HC3a, HC3b, HC10a, HC10b, OP3a, OP3b, OP3c, OP6a, OP6b, OP6c, OP9a, and OP9b, shall be considered a separate Class for purposes of voting to accept or reject this Plan.  If and to the extent any Class identified as being unimpaired is impaired (whether as a result of the terms of this Plan or any modification or amendment thereto), such Class shall be entitled to vote to accept or reject this Plan.

**B.**    **Classes Deemed to Accept this Plan.**  The Classes set forth in the following table are unimpaired and shall be deemed to accept this Plan:

| Class | Description |
|---|---|
| Class HC1 | Priority Claims against NCFC |
| Class HC2 | Secured Claims against NCFC |
| Class HC5 | Priority Claims against TRS Holdings |
| Class HC6 | Secured Claims against TRS Holdings |
| Class HC8 | Priority Claims against NC Credit |
| Class HC9 | Secured Claims against NC Credit |
| Class HC11 | Priority Claims against NC Residual IV |
| Class HC12 | Secured Claims against NC Residual IV |
| Class OP1 | Priority Claims against NCMC |
| Class OP2 | Secured Claims against NCMC |
| Class OP4 | Priority Claims against NC Capital |
| Class OP5 | Secured Claims against NC Capital |
| Class OP7 | Priority Claims against Home123 |
| Class OP8 | Secured Claims against Home123 |
| Class OP10 | Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class OP11 | Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class AL1 | Priority Claims against Access Lending |
| Class AL2 | Secured Claims against Access Lending |

Pursuant to sections 1126(f) of the Bankruptcy Code, Classes HC1, HC2, HC5, HC6, HC8, HC9, HC11, HC12, OP1, OP2, OP4, OP5, OP7, OP8, OP10, OP11, AL1, and AL2 are conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in such Classes therefore will not be solicited.

C.    **Classes Deemed to Reject this Plan.**  Holders of Claims in the Classes set forth in the following table are not entitled to receive or retain any property under this Plan on account of such Claims and Interests:

| Class | Description |
|---|---|
| Class HC4a | Series A Preferred Stock Interests |
| Class HC4b | Series A 510(b) Claims |
| Class HC4c | Series B Preferred Stock Interests |
| Class HC4d | Series B 510(b) Claims |
| Class HC4e | Common Stock Interests and Common Stock 510(b) Claims |

Pursuant to section 1126(g) of the Bankruptcy Code, Classes HC4a, HC4b, HC4c, HC4d, and HC4e are impaired and are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims and Interests in such Classes therefore will not be solicited.

D.    **Nonconsensual Confirmation.**  As set forth in Article 16 hereof, if any impaired Class fails to accept this Plan, the Plan Proponents intend to request that the Bankruptcy Court confirm this Plan as a Cramdown Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to that Class.

E.    **Removal of Debtors.**  If this Plan cannot be confirmed with respect to one or more Debtors, the Plan Proponents may remove such Debtor(s) from this Plan.  In such event, the Classes pertaining to such Debtor(s) shall be removed from this Plan, and the Plan shall omit any treatment of the assets and liabilities of such Debtor(s).  The removal of any Debtor from this Plan shall not affect this Plan with respect to any other Debtor except as set forth in Article 10.I of this Plan.

## ARTICLE 6.

## THE MULTI-DEBTOR CLAIM PROTOCOL FOR

## TREATMENT OF CLAIMS AGAINST MULTIPLE DEBTORS

A.     **Allowed Unsecured Claims for Which More than One Holding Company Debtor Is Jointly and/or Severally Liable.**  Where a Creditor holds Allowed Holding Company Debtor Unsecured Claims for which more than one Holding Company Debtor is jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of one of its Allowed Holding Company Debtor Unsecured Claims in the amount of the highest Determined Distribution Amount provided for in the Classes in which the Creditor's Allowed Holding Company Debtor Unsecured Claims are classified and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Holding Company Debtor Unsecured Claims; provided however, that where a Creditor holds Allowed Holding Company Debtor Unsecured Claims, other than Allowed Class HC3a Claims and Allowed Class HC10a Claims, for which both NCFC and NC Credit are jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of its Allowed Unsecured Claim against NCFC of 130% of the amount of such Allowed Unsecured Claim and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Holding Company Debtor Unsecured Claims.

B.     **Allowed Unsecured Claims for Which More than One Operating Debtor Is Jointly and/or Severally Liable.**  Where a Creditor holds Allowed Operating Debtor Unsecured Claims for which more than one Operating Debtor is jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of one its Allowed Operating Debtor Unsecured Claims in the amount of the highest Determined Distribution Amount provided for in the Classes in which the Creditor's Allowed Operating Debtor Unsecured Claims are classified and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Operating Debtor Unsecured Claims; provided however, that where a Creditor holds Allowed Operating Debtor Unsecured Claims, other than Allowed

47

Class OP3a Claims, Allowed OP6a Claims, and Allowed Class OP9a Claims, for which each of NCMC, NC Capital, and Home123 are jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of its Allowed Unsecured Claim against NCMC of 130% of the amount of such Allowed Unsecured Claim and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Operating Debtor Unsecured Claims.

C.      **Separate Application to Debtor Groups.**   The adjustment of Determined Distribution Amounts of a particular Creditor's Allowed Unsecured Claims against Debtors in one Debtor Group pursuant to Articles 6.A and 6.B of this Plan does not affect the Determined Distribution Amounts of such Creditor's Allowed Unsecured Claims, if any, against Debtors in another Debtor Group.

D.      **Inapplicable to Claims Against Access Lending.**   The Multi-Debtor Claim Protocol does not apply to Claims against Access Lending.

E.      **Inapplicable to Intercompany Claims.**   The Multi-Debtor Claim Protocol does not apply to Intercompany Claims.

### ARTICLE 7.

### THE INTERCOMPANY PROTOCOL FOR

### TREATMENT OF INTERCOMPANY CLAIMS

A.      **Claims of Holding Company Debtors Against Other Holding Company Debtors.**   The Determined Distribution Amount for each Allowed Claim held by a Holding Company Debtor against another Holding Company Debtor shall be 0% of the allowed amount of such Claim and, therefore, no distribution will be made under this Plan on account of such Claim.

B.      **Claims of Operating Debtors Against Other Operating Debtors.**   The Determined Distribution Amount for each Allowed Claim held by an Operating Debtor against another Operating Debtor shall be 0% of the allowed amount of such Claim and, therefore, no distribution will be made under this Plan on account of such Claim.

**C.**    **Claims of Holding Company Debtors Against Operating Debtors.**    The Determined Distribution Amount for each Allowed Claim held by a Holding Company Debtor against an Operating Debtor shall be 50% of the allowed amount of such Claim; provided, however, that any recovery on an Allowed Claim held by a Holding Company Debtor against an Operating Debtor shall be limited to the amount that would be distributed on account of such Claim if the Determined Distribution Amounts for Allowed Claims in Classes OP6b, OP9b, and OP12 were 100% of the allowed amount of Claims in those Classes.

**D.**    **Claims of Operating Debtors Against Holding Company Debtors.**    The Determined Distribution Amount for each Allowed Claim held by an Operating Debtor against a Holding Company Debtor shall be 100% of the allowed amount of such Claim.

## ARTICLE 8.

## MEANS OF IMPLEMENTING THIS PLAN

**A.**    **Implementation of Joint Plan.**    The Plan Proponents propose that the Plan be implemented and consummated through the means contemplated by sections 1123(a)(5)(B), (D), (E), (F) and (G) and 1123(b)(2), (b)(3) and (b)(4) of the Bankruptcy Code on and after the Effective Date.

**B.**    **Corporate Action.**    On the Effective Date, the matters under this Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries.  The officers and directors of the Debtors shall cease to serve immediately after the Effective Date.

**C.**    **Dissolution of Debtors Other than Access Lending.**    Immediately after the Effective Date, the Liquidating Trustee shall be authorized to take, in his sole and absolute discretion, all actions reasonably necessary to dissolve the Debtors (other than Access Lending)

and their subsidiaries under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; provided, however, (i) after all distributions have been made to Holders of Allowed Claims against NCFC, the Liquidating Trustee shall file a certificate of dissolution in the applicable state of incorporation for NCFC and NCFC shall dissolve and cease to exist; (ii) that the Liquidating Trustee shall not be compelled to dissolve any of the Debtors (other than NCFC) or their subsidiaries if to do so would unduly burden the Liquidating Trust; and (iii) no assets shall revest in the Debtors (other than Access Lending). Other than with respect to NCFC, which shall be dissolved as set forth in this Article 8.C, the Liquidating Trustee shall have no liability for using his discretion to dissolve or not dissolve any of the Debtors or their subsidiaries. Whether or not dissolved, immediately after the Effective Date, the Debtors shall have no authorization to implement the provisions of this Plan, unless specifically provided for in the Plan.

**D.     Dissolution of the Committee.**     On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms and such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Fee Claims; (ii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order.

E.      **Vesting of Assets in Liquidating Trust; Assumption of Plan Obligations.**

1.      *Distribution to Liquidating Trust.*   On the Effective Date, the Debtors other than Access Lending shall distribute and shall be deemed for all purposes to have distributed all Assets of the Debtors, including Access Lending Interests but excluding the Assets of Access Lending, for the benefit of the Holders of Holding Company Debtor Unsecured Claims and for the benefit of the Holders of Operating Debtor Unsecured Claims, whether or not such Claims are Allowed Claims as of the Effective Date, to the Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets, the Debtors shall have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

2.      *Transfer of Assets.*   On the Effective Date, the Liquidating Trust Assets, as described in paragraph (E)(1) above, will be conveyed directly by the Debtors other than Access Lending to the Liquidating Trust on behalf of the beneficiaries thereof.

3.      *Assumption of Plan Obligations.*   On the Effective Date, all of the Debtors' rights and obligations with respect to each A/P/S Claim (other than A/P/S Claims against Access Lending) and all other rights and obligations of the Debtors (other than Access Lending) under this Plan shall be assigned to and assumed by the Liquidating Trust.

4.      *Treatment of Transfer of Assets.*   For federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) shall treat the transfer of the Liquidating Trust Assets, which term, for purposes of this Article 8.E.4 only, shall include the Causes of Action (other than Access Lending Causes of Action), to the Liquidating Trust in accordance with Article 8.E.1 above, as:

(a)      first, a transfer of such Assets to the Holders of Holding Company Debtor Unsecured Claims and Holders of Operating Debtor Unsecured Claims, whether or not

such Claims are Allowed as of the Effective Date, with each such Holder receiving an undivided interest in the specific Assets, the liquidation proceeds of which such Holder is entitled to share in pursuant to Article 4 of this Plan, having a value that equals, as nearly as possible, the amount such Holder would receive if, on the Effective Date, all Disputed Claims are treated as Allowed Claims, and all Assets are liquidated, converted to cash and distributed to Holders of Allowed Unsecured Claims in accordance with the Plan; and

(b)     second, a transfer to the Liquidating Trust by each such Holder of the undivided interest in that portion of the Liquidating Trust Assets such Holder was deemed to receive pursuant to subparagraph (a), above, in exchange for a beneficial interest in the Liquidating Trust. Each such Holder, as a holder of a beneficial interest in the Liquidating Trust, shall be treated as the grantor and owner of the undivided interest of that portion of the Liquidating Trust Assets such Holder was deemed to transfer to the Liquidating Trust pursuant to this subparagraph (b).

F.     **Liquidating Trust.**

1.     *Formation of Liquidating Trust.*  On or prior to the Effective Date, the Liquidating Trust shall be formed. The Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims shall be the sole beneficiaries of the Liquidating Trust. Holders of Unsecured Claims against Access Lending shall not be beneficiaries of the Liquidating Trust.

2.     *Liquidating Trust Agreement.*  The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Liquidating Trust as a liquidating trust for federal income tax purposes. In the event a provision of this Plan or the Confirmation Order conflicts with a

provision of the Liquidating Trust Agreement, the provision of the Liquidation Trust Agreement shall control.

     3.     *Appointment of the Liquidating Trustee.*

     (a)     No later than ten (10) days prior to the deadline to vote to accept or reject this Plan, the Plan Proponents will file the Liquidating Trust Agreement with the Bankruptcy Court, which Liquidating Trust Agreement shall identify the Liquidating Trustee. The Liquidating Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving as the Liquidating Trustee on the Effective Date; provided, however, that the party appointed as Liquidating Trustee shall be permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Confirmation Date (or such earlier date as authorized by the Committee) through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and this Plan.

     (b)     The Liquidating Trustee shall be deemed the Estates' representative (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator) in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in this Plan and the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.