(c)    The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court.

(d)    The Liquidating Trustee shall at all times maintain a bond acceptable to the Plan Advisory Committee and the U.S. Trustee, or approved by the Bankruptcy Court.

4.    *Term and Compensation of the Liquidating Trustee.*

(a)    The Liquidating Trustee shall initially be compensated as set forth in the Liquidating Trust Agreement (which compensation may be revised by the Liquidating Trust with the consent of the Plan Advisory Committee) and shall not be required to file a fee application to receive compensation. The Liquidating Trustee's compensation shall, however, be subject to the review and, if appropriate, objection of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.

(b)    The Liquidating Trustee may be removed or replaced at any time by the Plan Advisory Committee in accordance with the procedures in the Liquidating Trust Agreement. In the event of the death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Liquidating Trustee, the Plan Advisory Committee shall have the authority to appoint a successor trustee as set forth in the Liquidating Trust Agreement.

5.     *Liquidation of Liquidating Trust Assets; Responsibilities of Liquidating Trustee.*

(a)     The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall be subject to the directions of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.  Notwithstanding anything to the contrary contained in this Plan or the Confirmation Order, any act by the Liquidating Trustee, including discretionary acts, will require the consent of or consultation with the Plan Advisory Committee in accordance with the terms of the Liquidating Trust Agreement.  If there is any inconsistency or ambiguity in the Plan, Confirmation Order or the Liquidating Trust Agreement in respect of the Plan Advisory Committee's role in the Liquidating Trustee's authority to act, the provision of the Liquidating Trust Agreement shall control.

(b)     The Liquidating Trustee, in its reasonable business judgment, and in an expeditious but orderly manner, shall liquidate and convert to cash the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Liquidating Trust Assets may be accomplished either through the sale of Liquidating Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

(c)     The Liquidating Trustee (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator) shall be expressly authorized to do the following:

(i)     institute, prosecute, collect, compromise and settle any Causes of Actions in accordance herewith and without further approval of or application to the Bankruptcy Court, except as otherwise provided herein;

(ii)     file, prosecute, compromise and settle objections to Claims without further approval of or application to the Bankruptcy Court, except as otherwise provided herein;

(iii)    open and maintain bank accounts in the name of the Liquidating Trust, draw checks and drafts thereon by the sole signature of the Liquidating Trustee, and terminate such accounts as the Liquidating Trustee deems appropriate;

(iv)    execute any documents, pleadings, and take any other actions related to, or in connection with, the liquidation of the Assets and the exercise of the Liquidation Trustee's powers granted herein, including, but not limited to the exercise of the Debtors' or the Committee's respective rights to conduct discovery and oral examination of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(v)     hold legal title to any and all rights of the beneficiaries in or arising from the Assets, including but not limited to, the right to vote any claim or interest in an unrelated case under the Bankruptcy Code and receive any distribution thereon;

(vi)    protect and enforce the rights to the Assets vested in the Liquidating Trustee by this Plan by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(vii)   deliver distributions as may be authorized by this Plan;

(viii)  file, if necessary, any and all tax returns with respect to the Liquidating Trust, pay taxes, if any, properly payable by the Liquidating Trust, and make distributions to the beneficiaries net of such taxes, and comply with the requirements of Article 4 hereof;

(ix)     make all necessary filings in accordance with any applicable law, statute or regulation;

(x)      determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust;

(xi)     invest moneys received by the Liquidating Trust or otherwise held by the Liquidating Trust in accordance with Article 8.F.8 of this Plan;

(xii)    utilize the Liquidating Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Liquidating Trustee, the Plan Advisory Committee and the members of the Plan Advisory Committee; and

(xiii)   prepare and report telephonically, and if requested by the Plan Advisory Committee, in writing or in person, a monthly report of the status of the process of winding down the Estates including Causes of Action.

(d)      The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

6.      *Valuation of Assets.*  As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith determination of the fair market value of the Liquidating Trust Assets.  This valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) for all federal and state income tax purposes.

7.    *Payments by the Liquidating Trust.* The Liquidating Trust shall make distributions to Holders of Allowed Claims in accordance with Article 9 of this Plan.

8.    *Investment Powers of the Liquidating Trustee and Permitted Cash Expenditures.* All funds held by the Liquidating Trustee shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Liquidating Trust Agreement; provided, however, that the right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. The Liquidating Trustee may expend the cash of the Liquidating Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidating Trust during liquidation, (y) to pay the reasonable administrative expenses (including, but not limited to, any taxes imposed on the Liquidating Trust) and (z) to satisfy other respective liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

9.    *Reporting Duties.*

(a)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trustee shall also send to each holder of a beneficial interest in the Liquidating Trust an annual statement setting forth the holder's share of items of

income, gain, loss, deduction or credit and provide to all such holders information for reporting such items on their federal income tax returns, as appropriate.

(b)    Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the beneficial interests in the Liquidating Trust (treating any holder of a Disputed Claim, for this purpose, as a current holder of a beneficial interest in the Liquidating Trust entitled to distributions), taking into account all prior and concurrent distributions from the Liquidating Trust (including all distributions held in reserve pending the resolution of Disputed Claims).    Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. For this purpose, the tax book value of the Liquidating Trust Assets shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

(c)    The Liquidating Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental unit.

10.    *Registry of Beneficial Interests.*    To evidence each holder's beneficial interests in the Liquidating Trust, the Liquidating Trustee shall maintain a registry of holders.

11.    *Non-Transferable.*    Upon issuance thereof, interests in the Liquidating Trust shall be non-transferable, except with respect to a transfer by will or under the laws of descent and distribution.  Any such transfer, however, shall not be effective until and unless the Liquidating Trustee receives written notice of such transfer.

12.    *Termination.*  The Liquidating Trust shall terminate after its liquidation, administration and distribution of the Liquidating Trust Assets in accordance with this Plan and its full performance of all other duties and functions set forth herein or in its Liquidating Trust Agreement.  The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within a period of six (6) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust Assets administered by the Liquidating Trust.  Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within six (6) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

13.    *Purpose of the Liquidating Trust.*    The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes. The Liquidating Trust shall not be deemed to be the same legal entity as any of the Debtors, but only the assignee of the assets and liabilities

of the Debtors and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code.

**G.      Plan Advisory Committee.**

1.      *Appointment.*  On the Effective Date, the Plan Advisory Committee shall be deemed appointed and shall adopt bylaws to govern the actions of the Plan Advisory Committee.

2.      *Membership.*  The Plan Advisory Committee shall consist of up to five (5) members of the Committee chosen from those members of the Committee that notify counsel to the Committee in writing no later than fifteen (15) days prior to the deadline to vote to accept or reject this Plan of their intention to serve on the Plan Advisory Committee.  In the event that less than five (5) of the members of the Committee notify counsel to the Committee of their intent to serve on the Plan Advisory Committee within fifteen (15) days prior to the deadline to vote to accept or reject this Plan, then the Committee will choose from among the Holders of Unsecured Claims to fill any vacancy until five (5) members have been designated, and the Committee shall use reasonable efforts to maintain the same composition of membership as existed on the Committee. Unless and until such vacancy is filled, the Plan Advisory Committee shall function with such reduced membership.  In the event of the resignation of a member of the Plan Advisory Committee, the remaining members shall use reasonable efforts to designate a successor from among the Holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation.  Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership.

3.      *Fiduciary Duties.*    The fiduciary duties, as well as the privileges, immunities, and protections, that applied to the Committee prior to the Effective Date shall apply to the Plan Advisory Committee.  The duties and powers of the Plan Advisory Committee shall terminate upon the termination of the Liquidating Trust.

4.    *Rights and Duties.* The Plan Advisory Committee's role shall be to advise and approve the actions of the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement. The Plan Advisory Committee shall have the rights and duties set forth in the Liquidating Trust Agreement, including without limitation:

(a)    to terminate the Liquidating Trustee with or without cause and upon such termination or upon the resignation, death, incapacity or removal of the Liquidating Trustee, to appoint a successor Liquidating Trustee; provided, that the Plan Advisory Committee shall file with the Bankruptcy Court a notice appointing such successor trustee;

(b)    to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee other than as set forth in the Plan;

(c)    to authorize the Liquidating Trustee to commence or continue to prosecute any Cause of Action including, in the Liquidating Trustee's capacity as Plan Administrator, any Access Lending Cause of Action;

(d)    to approve the settlement of any Cause of Action if the amount sought to be recovered by the Liquidating Trustee in the complaint or other document initiating or evidencing such Cause of Action exceeds $100,000;

(e)    to approve the allowance of any Disputed Claim if the final allowed amount of such Claim exceeds $50,000;

(f)    to approve the sale of any Assets by the Liquidating Trustee;

(g)    with respect to each six month period, to approve any budget for the Administrative Fund prepared by the Liquidating Trustee in respect of the Trust Operating Expenses and in connection with Causes of Action and to approve any additional funding of the Administrative Fund;

(h)    in addition to the mandatory distributions required under the Plan, to approve the making of interim distributions if such distributions are warranted and economical;

(i)      to review and object to fees and expenses of professionals retained by the Liquidating Trust; and

(j)      to approve of any investment of Cash or other Liquidating Trust Assets pending distributions to holders of the beneficial interests.

5.      *No Compensation.*  Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Plan Advisory Committee, including reasonable attorneys fees subject to a cap to be established by the Plan Advisory Committee in its discretion, the members of the Plan Advisory Committee shall serve without compensation.  Reasonable expenses, as set forth in this Article 8.G.5, incurred by members of the Plan Advisory Committee may be paid by the Liquidating Trust without need for approval of the Bankruptcy Court.

6.      *Objection to Fees.*  The Plan Advisory Committee shall have thirty (30) days, or such other period as determined by the Plan Advisory Committee and the Liquidating Trustee, from the delivery of a fee statement to object to the fees of any professional retained by either the Liquidating Trust or the Plan Advisory Committee by giving notice of any such objection to the professional seeking compensation or reimbursement.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution.  The uncontested portion of each invoice shall be paid within forty (40) days after its delivery to the Plan Advisory Committee and the Liquidating Trustee.

**H.**      **Liability, Indemnification.**  Neither the Liquidating Trustee (including in its capacity as Plan Administrator), the Plan Advisory Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee or the Plan Advisory Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee or Plan Advisory Committee, nor shall such Liquidating Trustee (including in its

capacity as Plan Administrator), or any member of the Plan Advisory Committee, be liable for any act or omission taken or omitted to be taken in its capacity as Liquidating Trustee or Plan Administrator, or as a member of the Plan Advisory Committee, respectively, other than for specific acts or omissions resulting from such Liquidating Trustee's or such member's willful misconduct, gross negligence or fraud. The Liquidating Trustee (including in its capacity as Plan Administrator), or the Plan Advisory Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidating Trustee (including in its capacity as Plan Administrator) or the Plan Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee (including in its capacity as Plan Administrator) or Plan Advisory Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and Plan Advisory Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud.

**I.    Retention of Professionals.**

1.    Liquidating Trust Professionals.

(a)    The Liquidating Trustee may retain professionals, including but not limited to, counsel, accountants, investment advisors, auditors, professionals from the Liquidating Trustee's own firm, and other agents on behalf of the Liquidating Trust as necessary or desirable to carry out the obligations of the Liquidating Trustee hereunder and under the Liquidating Trust Agreement. More specifically, the Liquidating Trustee may retain counsel in any matter related to its administration, including counsel that has acted as counsel for the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases.

(b)    Prior to the Effective Date, the Committee shall approve a budget for the six (6) month period beginning on the Effective Date, on a professional-by-professional basis, for professional fees for services to be rendered to the Liquidating Trust, which budget may be altered from time to time by the Plan Advisory Committee in accordance with the Liquidating Trust Agreement provided that any fees and expenses of professionals retained by the Liquidating Trust that have been incurred prior to the date of the modification of the budget shall constitute budgeted amounts. Except with respect to services rendered and expenses incurred in connection with Fee Applications pending on the Effective Date or filed after the Effective Date, the Professionals retained by the Debtors or the Committee shall only be entitled to compensation for services performed and expenses incurred after the Effective Date to the extent, if any, of the amount budgeted for each respective Professional.  Following the Effective Date, the Liquidating Trustee may pay, without application to the Bankruptcy Court or any other court of competent jurisdiction, such professionals retained by the Liquidating Trust in accordance with agreements that the Liquidating Trustee

determines to be reasonable. The Plan Advisory Committee shall approve in advance the Liquidating Trustee's retention of professionals and their compensation arrangements.

2.    *Plan Advisory Committee Professionals.*  The Plan Advisory Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Liquidating Trustee or for other purposes set forth in the Liquidating Trust Agreement and the reasonable fees and expenses of such counsel shall be paid by the Liquidating Trust.

J.    **Preservation of All Causes of Action.**  Except as otherwise provided in the Plan or in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator) shall be vested with, retain, and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors or the Estates may have against any Person or entity.  The Liquidating Trustee may pursue such retained claims (other than those of Access Lending) or Causes of Action (other than Access Lending Causes of Action) in accordance with the best interests of the creditors of Debtors other than Access Lending, the Estates (other than the Estate of Access Lending), or the Liquidating Trust.  The Plan Administrator may pursue such retained claims of Access Lending or Access Lending Causes of Action in accordance with the best interests of the creditors of Access Lending, the Estate of Access Lending, or Reorganized Access Lending.

K.    **Successors.**  The Liquidating Trust shall be the successor to the Debtors (other than Access Lending) and their Estates for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other litigation-related matters.  The Liquidating Trust shall succeed to the attorney-client privilege of the Debtors (other than Access Lending) and their Estates with respect to all Causes of Action (other than Access Lending Causes of Action) and other litigation-related matters, and the Liquidating

Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion. Reorganized Access Lending shall be the successor to Access Lending and its Estate for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Access Lending Causes of Action and other litigation-related matters. Reorganized Access Lending shall succeed to the attorney-client privilege of Access Lending and its Estate with respect to all Access Lending Causes of Action and other litigation-related matters, and the Liquidating Trustee, it its capacity as Plan Administrator, may waive the attorney-client privilege with respect to any Access Lending Causes of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion.

<strong>ARTICLE 9.</strong>

<strong><u>DISTRIBUTIONS UNDER THIS PLAN</u></strong>

**A.      Timing of Distributions.**

1.      *Distributions on Account of Allowed A/P/S Claims.*   The Liquidating Trustee shall pay any Allowed A/P/S Claim against Debtors other than Access Lending from the Liquidating Trust Assets, except as otherwise provided in this Plan, as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

2.      *Interim Distributions on Account of Allowed Unsecured Claims.*   Subject to approval of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement and pursuant to the calculations set forth in Article 9.C of this Plan, (a) the Liquidating Trustee shall make an interim distribution at least annually of its net income and the net proceeds from the sale of Liquidating Trust Assets provided that any such distribution is not unduly burdensome to the Liquidating Trust, and (b) shall have the right to make more frequent interim distributions, to Holders of Allowed Holding Company Debtor Unsecured Claims and Holders of Allowed Operating Debtor Unsecured Claims if the Liquidating Trustee determines that such interim distributions

are warranted and economical; provided, however, that any such distribution shall only be made if (i) the Administrative Fund and the A/P/S Claims Reserve are fully funded; (ii) with respect to interim distributions to Holders of Allowed Unsecured Claims against Holding Company Debtors, the Holding Company Debtor Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; (iii) with respect to interim distributions to Holders of Allowed Unsecured Claims against Operating Debtors, the Operating Debtor Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; and (iv) the Liquidating Trustee retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Liquidating Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement. This provision shall be interpreted to be consistent with Revenue Procedure 94-45 § 3.10.

3.    *Final Distributions on Allowed Unsecured Claims.*    Notwithstanding anything else in this Plan, upon the settlement and satisfaction of all A/P/S Claims, the settlement and satisfaction of all Claims against Access Lending, the dissolution of Reorganized Access Lending and the distribution in liquidation of all remaining Assets of Reorganized Access Lending to the Liquidating Trust, the completion of the prosecution and/or settlement of all objections to all other Claims and the Causes of Action, and the completion of the sale and/or liquidation of all Assets, the Liquidating Trustee shall distribute, as soon as practicable, all remaining Liquidating Trust Assets pursuant to the terms of this Plan using the calculations set forth in Article 9.C of this Plan.

**B.    Reserves.**

1.    *Administrative Fund.*    On the Effective Date, the Liquidating Trustee shall establish the Administrative Fund. The initial amount of the Administrative Fund shall be based on the Liquidating Trustee's good faith estimate of the cost necessary to complete the Liquidating Trust's obligations under this Plan and the Liquidating Trust

Agreement and will include the amount budgeted for the Liquidating Trust's professionals pursuant to Article 8.1.1 of this Plan. The Liquidating Trust shall pay all costs and expenses related to carrying out its obligations under this Plan and the Liquidating Trust Agreement from the Administrative Fund and, in the Liquidating Trustee's discretion, and with approval of the Plan Advisory Committee, may add additional amounts to the Administrative Fund to prosecute the Causes of Action (other than Access Lending Causes of Action) or for administration and other miscellaneous needs of the Liquidating Trusts without further notice or motion in accordance with the terms of the Liquidating Trust Agreement.

2.    *A/P/S Claims Reserve.*  On the Effective Date, the Liquidating Trustee shall establish the A/P/S Claims Reserve for all A/P/S Claims that are Disputed A/P/S Claims or Allowed A/P/S Claims that are not paid on the Effective Date, provided, however, that none of the provisions in this Article 9.B.2 apply to A/P/S Claims against Access Lending. The amount reserved for each Disputed Administrative Claim and each Allowed Administrative Claim that is not paid on the Effective Date shall be based upon the Administrative Claim being in the lower of (i) the amount set forth in the Administrative Claim Request filed by the Holder of such Claim, or if no Administrative Claim Request has been Filed, the amount set forth for such Claim in the Debtors' books and records, and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan; provided, however, that where a Creditor holds such Claims for which more than one Debtor is alleged to be jointly and/or severally liable, the Liquidating Trustee shall contribute to the A/P/S Reserve on account of only one such Claim. The amount reserved for a Disputed Priority Tax Claim, Disputed Priority Claim, or Disputed Secured Claim or for an Allowed Priority Tax Claim, Allowed Priority Claim, or Allowed Secured Claim that is not paid on the Effective Date shall be based upon such Claim being in the lower of (i) the amount set forth in the Proof of Claim filed by the Holder of such Claim, or if no

Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan; provided, however, that where a Creditor holds such Claims for which more than one Debtor is alleged to be jointly and/or severally liable, the Liquidating Trustee shall contribute to the A/P/S Reserve on account of only one such Claim. As soon as practicable after (and to the extent) a Disputed A/P/S Claim becomes an Allowed A/P/S Claim, the Liquidating Trustee shall make a payment from the A/P/S Claims Reserve to the Holder of such Claim based on the Allowed amount of such Claim. After (and to the extent) a Disputed A/P/S Claim or a Disallowed Claim is determined not to be an A/P/S Claim, the portion of the A/P/S Claims Reserve reserved for such Claim shall be released from the A/P/S Claims Reserve and shall be distributed pursuant to the terms of this Plan. Any amount remaining in the A/P/S Claims Reserve following the final disposition of all A/P/S Claims shall be released from the A/P/S Claims Reserve and shall be distributed pursuant to the terms of this Plan.

3.     *Holding Company Debtor Claims Reserve.*  On the Effective Date, the Liquidating Trustee shall establish the Holding Company Debtor Claims Reserve. With respect to any interim distribution made to Holders of Allowed Holding Company Debtor Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against any Holding Company Debtor shall be the amount that would be distributed on account of such Claim if it was an Allowed Holding Company Debtor Unsecured Claim based upon the Claim being in the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan. As soon as practicable after (and to the extent) a Disputed Unsecured Claim against a Holding Company Debtor becomes an Allowed Unsecured Claim against such Holding

Company Debtor, the Liquidating Trustee shall make a payment, subject to the Multi-Debtor Claim Protocol, from the Holding Company Debtor Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Liquidating Trust has paid on account of Allowed Claims belonging to the same Class as such Claim, and any remaining amount reserved on account of such Claim shall be released from the Holding Company Debtor Claims Reserve. After (and to the extent) a Disputed Unsecured Claim against a Holding Company Debtor becomes a Disallowed Claim, the portion of the Holding Company Debtor Claims Reserve reserved for such Claim shall be released from the Holding Company Debtor Claims Reserve and shall be distributed pursuant to the terms of this Plan. Any amount remaining in the Holding Company Debtor Claims Reserve following the final disposition of all Disputed Unsecured Claims against Holding Company Debtors shall be released from the Holding Company Debtor Claims Reserve and shall be distributed pursuant to the terms of this Plan.

4.    *Operating Debtor Claims Reserve.*  On the Effective Date, the Liquidating Trustee shall establish the Operating Debtor Claims Reserve. With respect to any interim distribution made to Holders of Allowed Operating Debtor Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against any Operating Debtor shall be the amount that would be distributed on account of such Claim if it was an Allowed Operating Debtor Unsecured Claim based upon the Claim being in the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan. As soon as practicable after (and to the extent) a Disputed Unsecured Claim against an Operating Debtor becomes an Allowed Unsecured Claim against such Operating Debtor, the Liquidating Trustee shall make a payment, subject to the Multi-Debtor Claim Protocol, from the Operating Debtor Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Liquidating Trust has paid on account of Allowed Claims belonging to the same

Class as such Claim, and any remaining amount reserved on account of such Claim shall be released from the Operating Debtor Claims Reserve. After (and to the extent) a Disputed Unsecured Claim against an Operating Debtor becomes a Disallowed Claim, the portion of the Operating Debtor Claims Reserve reserved for such Claim shall be released from the Operating Debtor Claims Reserve and shall be distributed pursuant to the terms of this Plan. Any amount remaining in the Operating Debtor Claims Reserve following the final disposition of all Disputed Unsecured Claims against Operating Debtors shall be released from the Operating Debtor Claims Reserve and shall be distributed pursuant to the terms of this Plan.

C.     **Distribution Calculations.**

1.     *Calculation of Litigation Proceeds.*  The Litigation Proceeds shall be calculated by deducting all expenses related to any Causes of Action (other than Access Lending Causes of Action) including, but not limited to, fees and costs of attorneys, other professionals, and expert witnesses, and all expenses incurred in the pursuit of such Causes of Action, as determined by the Liquidating Trustee, from the proceeds of all Causes of Action (other than Access Lending Causes of Action) whether from judgment, settlement, or claim on insurance. The Holding Company Debtor Portion of Litigation Proceeds is 27.5% of the Litigation Proceeds. The Operating Debtor Portion of Litigation Proceeds is 27.5% of the Litigation Proceeds. The NC Capital EPD/Breach Claimant Portion of Litigation Proceeds is 45% of the Litigation Proceeds.

2.     *Calculation of Holding Company Debtor Net Distributable Assets.*  The Holding Company Debtor Net Distributable Assets shall be calculated by deducting from the gross amount (other than Litigation Proceeds) available from the liquidation of the Holding Company Debtors' Assets: (i) the amount of all Allowed A/P/S Claims allowed against or allocated by the Liquidating Trustee to the Holding Company Debtors and paid by the Liquidating Trustee, (ii) the amount of all costs of administering the Estates of the Holding Company Debtors, as determined by the Liquidating Trustee, incurred in the

ordinary course prior to the Effective Date and paid by the Debtors on or before the Effective Date in the ordinary course, (iii) the Joint Administrative Expense Share of the Holding Company Debtors paid by the Debtors prior to or on the Effective Date or by the Liquidating Trustee after the Effective Date, and (iv) the Holding Company Debtors' proportionate share of the Trust Operating Expenses as determined by the Liquidating Trustee.

3.    *Calculation of Operating Debtor Net Distributable Assets.*  The Operating Debtor Net Distributable Assets shall be calculated by deducting from the gross amount available from the liquidation of the Operating Debtors' Assets, which gross amount shall include the Adequate Protection Proceeds but exclude the Litigation Proceeds: (i) the amount of all Allowed A/P/S Claims allowed against or allocated by the Liquidating Trustee to the Operating Debtors and paid by the Liquidating Trustee, (ii) the amount of all costs of administering the Estates of the Operating Debtors, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Effective Date and paid by the Debtors on or before the Effective Date, (iii) the Joint Administrative Expense Share of the Operating Debtors paid by the Debtors prior to or on the Effective Date or by the Liquidating Trustee after the Effective Date, and (iv) the Operating Debtors' proportionate share of the expenses of the Trust Operating Expenses as determined by the Liquidating Trustee.

4.    *Calculation of Interim Distributions.*  Subject to the terms of this Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol:

(a)    the Liquidating Trustee may make an interim distribution to Holders of Allowed Unsecured Claims against Holding Company Debtors up to the amount of the Holding Company Debtor Net Distributable Assets (calculated as of the date of the interim distribution in accordance with Article 9.C.2 of this Plan) plus the Holding Company Debtor Portion of the Litigation Proceeds less the amount required (i) to be contributed in respect of such distribution to the

Holding Company Debtor Claims Reserve pursuant to Article 9.B.3 of this Plan and (ii) to fully fund the Holding Company Debtors' proportionate share of the Administrative Fund and the A/P/S Claims Reserve; and

(b)    the Liquidating Trustee may make an interim distribution to Holders of Allowed Unsecured Claims against Operating Debtors up to the amount of the Operating Net Distributable Assets (calculated as of the date of the interim distribution in accordance with Article 9.C.3 of this Plan) plus the Operating Debtor Portion of the Litigation Proceeds less the amount required (i) to be contributed in respect of such distribution to the Operating Debtor Claims Reserve pursuant to Article 9.B.4 of this Plan and (ii) to fully fund the Operating Debtors' proportionate share of the Administrative Fund and the A/P/S Claims Reserve.

**D.**     **Payment in Full of Unsecured Claims.**

1.     *Limitation on Distributions on Account of Allowed Unsecured Claims.* Notwithstanding the Determined Distribution Amounts assigned to Allowed Unsecured Claims pursuant to Articles 4, 6, and/or 7 of this Plan, any Allowed Unsecured Claim is paid in full under this Plan at such time as the Holder of such Allowed Unsecured Claim has been paid the allowed amount of such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court); provided, however, that where a Creditor holds Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable, such Creditor is not entitled to receive distributions under this Plan in excess of the amount of the Debtors' joint and/or several liability in respect of such Claims plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court), and the Creditor's Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable shall be deemed paid in full at such time as the Creditor has been paid the allowed

amount of one such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court).

2.    *Payment of Interest on Allowed Unsecured Claims.* Notwithstanding the Determined Distribution Amounts assigned to Allowed Unsecured Claims pursuant to Articles 4, 6, and/or 7 of this Plan, (i) if, and only if, all Holders of Allowed Unsecured Claims against the Holding Company Debtors and all Holders of Allowed Unsecured Claims against Operating Debtors have been paid 100% of the amount of their Allowed Claims, such Holders shall be entitled to receive interest (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court) on account of such Allowed Claims, from any remaining proceeds realized from the liquidation or other disposition of Assets of the Holding Company Debtors and the Operating Debtors and (ii) if, and only if, all Holders of Allowed Unsecured Claims against Access Lending have been paid 100% of the amount of their Allowed Claims, such Holders shall be entitled to receive interest (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court) on account of such Allowed Claims, from any remaining proceeds realized from the liquidation or other disposition of Assets of Access Lending; provided, however, that with respect to Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable, interest is payable on such Claims pursuant to the terms of this Article 9.D.2 based on the allowed amount of the joint and/or several liability fixed by such Claims.

3.    *Payment in Full of Allowed Unsecured Claims for Which Debtors in More than One Debtor Group Are Jointly and/or Severally Liable.* To the extent a Holder of Allowed Unsecured Claims for which Debtors in more than one Debtor Group are jointly and/or severally liable is paid 100% of the allowed amount of the joint and/or several liability fixed by such Claims through interim distributions, the Liquidating Trustee shall retain any further interim distributions that would be made on account of such Claims (giving effect, if applicable, to the Multi-Debtor Claim Protocol) as if only Debtors

within a single Debtor Group were liable for such Claim until the Liquidating Trustee makes a final distribution under this Plan. Prior to making a final distribution under this Plan, the Liquidating Trustee shall determine, with respect to every Allowed Unsecured Claim for which Debtors in more than one Debtor Group are jointly and/or severally liable that has been paid 100% of the allowed amount of the joint and/or several liability fixed by such Claim, the amount of distributions in respect of such Claim made on account of Debtors within each Debtor Group. The Liquidating Trustee shall reallocate the excess distributions, if any, that it has retained to be included in the appropriate Debtor Group's Assets based on the relative distributions made to Claims in each Debtor Group on account of such joint and/or several liability.

4. *Payment in Full of All Allowed Holding Company Debtor Unsecured Claims.* If, in accordance with the terms of this Plan, all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid 100% of the allowed amount of their Allowed Holding Company Debtor Unsecured Claims, any remaining amount of the Holding Company Debtor Net Distributable Assets or the Holding Company Debtor Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol to Holders of Allowed Operating Debtor Unsecured Claims on account of such Claims. After all Holders of Allowed Operating Debtor Unsecured Claims and all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid in full in accordance with Article 9.D.1 and 9.D.2 hereof, any remaining amount of the Holding Company Debtor Net Distributable Assets or the Holding Company Debtor Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

5. *Payment in Full of All Allowed Operating Debtor Unsecured Claims Other Than EPD/Breach Claims Against NC Capital.* If, in accordance with the terms of this Plan, all Holders of Allowed Operating Debtor Unsecured Claims other than Holders

of Allowed Class OP6b Claims have been paid 100% of the allowed amount of their Allowed Operating Debtor Unsecured Claims, any remaining amount of the Operating Debtor Net Distributable Assets or the Operating Debtor Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol first to Holders of Allowed Class OP6b Claims on account of such Claims until such Claims are paid 100% of their allowed amounts, and second to Holders of Allowed Holding Company Debtor Unsecured Claims on account of such Claims until such Claims are paid 100% of their allowed amounts. After all Holders of Allowed Operating Debtor Unsecured Claims and all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid in full in accordance with Article 9.D.1 and 9.D.2 hereof, any remaining amount of the Operating Debtor Net Distributable Assets or the Operating Debtor Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

6.    *Payment in Full of All Allowed EPD/Breach Claims Against NC Capital.* If, in accordance with the terms of this Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol, all Holders of Allowed Class OP6b Claims have been paid 100% of the allowed amount of their Allowed Class OP6b Claims, any remaining amount of the NC Capital EPD/Breach Claimant Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol, first to Holders of Allowed Operating Debtor Claims other than Allowed Class OP6b Claims on account of such Claims until such Claims are 100% of their allowed amounts, and second to Holders of Allowed Holding Company Debtor Unsecured Claims on account of such Claims until such Claims are paid 100% of their Allowed Amounts. After all Holders of Allowed Operating Debtor Unsecured Claims and all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid in full in accordance with Article 9.D.1 and

77

9.D.2 hereof, any remaining amount of NC Capital EPD/Breach Claimant Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

    **E.**    **Manner of Distribution.**    At the option of the Liquidating Trustee, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer, or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

    **F.**    **De Minimis Distributions.**    All De Minimis Distributions will be held by the Liquidating Trust for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions. When the aggregate amount of De Minimis Distributions held by the Liquidating Trust for the benefit of a Creditor exceeds $50.00, the Liquidating Trust will distribute such De Minimis Distributions to such Creditor. If, at the time that the final distribution under this Plan is to be made, the De Minimis Distributions held by the Liquidating Trust for the benefit of a Creditor total less than $50.00, such funds shall not be distributed to such Creditor, but rather, shall vest in the Liquidating Trust and be distributed to other Holders of Allowed Claims in accordance with the terms of this Plan.

    **G.**    **Delivery of Distributions.**    Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the Debtors, if on the Effective Date, or the Liquidating Trustee, if after the Effective Date, (i) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors or the Liquidating Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address. The

distributions to Holders of Capital Trust Claims shall be made to the Indenture Trustee, which, subject to the right of the Indenture Trustee to assert its charging lien against the distributions for payment of the Indenture Trustee Expenses, shall transmit the distributions to the Holders of Capital Trust Claims.

**H.    Undeliverable Distributions.**    If payment or distribution to the Holder of an Allowed Claim under this Plan is returned for lack of a current address for the Holder or otherwise, the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of ninety (90) days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the holder shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the holder of the Allowed Claim.

**I.    Setoffs and Recoupments.**    The Debtors, if on the Effective Date, or the Liquidating Trustee (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator), if after the Effective Date, may, pursuant to sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments are to be made pursuant to this Plan, any claims or Causes of Action of any nature whatsoever that are proven valid that the Debtors may have against the Holder of such Claim; provided, however, (i) that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, the Estates, the Liquidating Trust, or Reorganized Access Lending of any right of setoff or recoupment that the Debtors or the Estates may have against the Holder of such Claim, nor of any other claim or Cause of Action and (ii) nothing in this Article 9.I shall limit the ability of the Debtors or the Liquidating Trustee (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator) to withhold distributions on account of any Claim

based on any right of setoff or recoupment that the Debtors or the Estates may have with respect to such Claim under the Bankruptcy Code, including but not limited to under section 502(d).

**J.     Distributions in Satisfaction; Allocation.**  Except for the obligations expressly imposed by this Plan and the property and rights expressly retained under this Plan, if any, the distributions and rights that are provided in this Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests in the Debtors and the Estates and the assets and properties of the Debtors and the Estates, whether known or unknown, arising or existing prior to the Effective Date.  Distributions received in respect of Allowed Unsecured Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

**K.     Cancellation of Notes and Instruments.**  As of the Effective Date, except as with respect to the stock of Access Lending, all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof shall, with respect to the Debtors, be canceled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights against the Debtors, the Estates, or the Liquidating Trust, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in this Plan.  Additionally, the Capital Trust Indentures, and all related notes and documents, including without limitation, the two series of Junior Subordinated Notes due 2036, the Amended and Restated Trust Agreement, dated as of September 13, 2006, and the Amended and Restated Trust Agreement, dated as of November 16, 2006, and the two series of trust preferred securities and trust common securities, respectively, shall be deemed automatically canceled and discharged on the Effective Date, provided, however, that the Capital Trust Indentures, and related notes and documents shall continue in effect solely for the purposes of (i) allowing the Holders of Capital Trust Claims to receive their distributions, if any, hereunder, including the right to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim under Article 4.C.3 of this Plan, (ii) allowing the Indenture Trustee to make distributions on account of the Capital Trust Claims, (iii) permitting the Indenture Trustee to

asserts its charging lien against such distributions for payment of the Indenture Trustee Expenses, and (iv) authorizing, but not requiring, the Indenture Trustee to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim under Article 4.C.3 of this Plan. The Capital Trust Indentures and related notes and documents shall terminate completely upon completion of all such distributions. The Liquidating Trust shall not be responsible for any of the fees, expenses or costs incurred in connection with the continuation or termination of the Capital Trust Indentures.

**L.**     **No Interest on Claims.**  Unless otherwise specifically provided for in this Plan and except as set forth in Article 9 hereof, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder of a Claim and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**M.**     **Withholding Taxes.**  The Debtors, if on the Effective Date, and the Liquidating Trustee (including in its capacity as Plan Administrator), if after the Effective Date, shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan. As a condition to making any distribution under this Plan, the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, to comply with applicable tax reporting and withholding laws.

**N.**     **Reports.**  From the Effective Date, until a Final Decree is entered, the Liquidating Trustee (including in its capacity as Plan Administrator) shall submit quarterly reports to the U.S. Trustee within thirty (30) days of the end of each fiscal quarter setting forth all receipts and

disbursements of the Liquidating Trust and Reorganized Access Lending as required by the U.S.
Trustee guidelines.

## ARTICLE 10.

## IMPLEMENTATION OF PLAN AND DISTRIBUTIONS WITH RESPECT TO ACCESS LENDING

A.      **Transfer of Access Lending Stock.** On the Effective Date, pursuant to Article
8.E of the Plan, TRS Holdings shall distribute the stock of Access Lending to the Liquidating
Trust, which shall become the sole shareholder of Reorganized Access Lending.

B.      **The Plan Administrator.** The Liquidating Trustee shall act as Plan
Administrator with respect to Reorganized Access Lending and, in such capacity, shall have
entered into the Plan Administrator Agreement to be filed with the Bankruptcy Court no later
than one (1) day prior to the Confirmation Hearing. The initial Plan Administrator, and each
successor Plan Administrator, shall serve until the earlier of (i) the dissolution of Reorganized
Access Lending or (ii) such Plan Administrator's resignation, death, incapacity, removal or
termination. Upon the occurrence of the Effective Date, the articles of incorporation of Access
Lending shall be amended to provide that the Plan Administrator shall be the chief executive
officer and sole director of Reorganized Access Lending. In such capacity, the Plan
Administrator shall have all necessary and appropriate power to act for, on behalf of and in the
name of Reorganized Access Lending, with the same power and effect as if each of his or her
actions in furtherance of his or her duties as a responsible person and as a board-appointed
officer and shareholder-appointed director of Reorganized Access Lending were explicitly
authorized by the appropriate board of directors or shareholders. In its capacity as Plan
Administrator, the Liquidating Trustee shall take such actions as are in the best interests of
Reorganized Access Lending.

C.      **Reimbursement of Debtors and Liquidating Trust.** Subject to Article 10.F.4
of this Plan, on the Effective Date or as soon as practicable thereafter and following the
establishment of the Access Lending Administrative Fund and the Access Lending A/P/S

Reserve, the Plan Administrator shall pay from the Assets of Reorganized Access Lending to the Liquidating Trust (i) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by the Debtors other than Access Lending on or before the Effective Date or by the Liquidating Trustee after the Effective Date; (ii) the amount of administering the Estate of Access Lending, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Effective Date and paid by the Debtors other than Access Lending on or before the Effective Date in the ordinary course; and (iii) the Joint Administrative Expense Share of Access Lending paid by the Debtors other than Access Lending on or before the Effective Date or by the Liquidating Trustee after the Effective Date.

  **D.**  **Resolution of Claims and Prosecution of Access Lending Causes of Action.** The Plan Administrator shall resolve all Disputed Claims against Access Lending as soon as practicable following the Effective Date; provided, however, that all Creditors of Access Lending shall have the right to object to any Claims against Access Lending other than the Goldman AL3 Claim and the NCMC AL3 Claim. The Plan Administrator shall have the exclusive right to prosecute all Access Lending Causes of Action.

  **E.**  **Timing of Distributions on Account of Claims Against Access Lending.**

    1.  *Payment of Allowed A/P/S Claims Against Access Lending.* Subject to Article 10.F.4 of this Plan, the Plan Administrator shall pay all Allowed A/P/S Claims against Access Lending as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

    2.  *Interim Distributions to Holders of Allowed Access Lending Unsecured Claims.* The Plan Administrator shall have the right to make interim distributions to Holders of Allowed Access Lending Unsecured Claims if the Plan Administrator determines that such interim distributions are warranted and economical; provided, however, that any such distribution shall only be made if (i) subject to Article 10.F.4 of this Plan, the Access Lending Administrative Fund and the Access Lending A/P/S Claims Reserve are fully funded (subject to Article 10.F.4 of this Plan); (ii) the Access Lending

Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; and (iii) subject to Article 10.F.4 of this Plan, the Plan Administrator retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the assets of Reorganized Access Lending during liquidation, and to satisfy other liabilities or expenses incurred by Reorganized Access Lending in accordance with this Plan.

3.     *Final Distributions on Allowed Access Lending Unsecured Claims.* Upon resolution of all Disputed Unsecured Claims against Access Lending and all Access Lending Causes of Action, the Plan Administrator shall pay all of the Allowed Unsecured Claims against Access Lending from all remaining Access Lending Net Distributable Assets in accordance with Article 10.F.4 of this Plan.

**F.     Access Lending Reserves.**

1.     *Access Lending Administrative Fund.* On the Effective Date, the Plan Administrator shall establish the Access Lending Administrative Fund. Subject to Article 10.F.4 of this Plan, the initial amount of the Access Lending Administrative Fund shall be based on the Plan Administrator's good faith estimate of the Reorganized Access Lending Operating Expenses and the cost necessary to complete Reorganized Access Lending's obligations under this Plan and the Plan Administrator Agreement and shall be funded from Access Lending's Assets. Reorganized Access Lending shall pay all Reorganized Access Lending Operating Expenses and costs and expenses related to carrying out its obligations under this Plan and the Plan Administrator Agreement only from the Access Lending Administrative Fund. The Plan Administrator may add additional amounts to the Access Lending Administrative Fund to prosecute the Access Lending Causes of Action or for administration and other miscellaneous needs of Reorganized Access Lending without further notice or motion and such additional amounts shall be funded from Access Lending's Assets subject to Article 10.F.4 of this Plan.

84

2.    *Access Lending A/P/S Claims Reserve.*   On the Effective Date, the Plan Administrator shall establish the Access Lending A/P/S Claims Reserve for all Access Lending A/P/S Claims that are Disputed Access Lending A/P/S Claims or Allowed Access Lending A/P/S Claims that are not paid on the Effective Date.   The amount reserved for each Disputed Administrative Claim against Access Lending and each Allowed Administrative Claim against Access Lending that is not paid on the Effective Date shall be based upon the Administrative Claim being in the lower of (i) the amount set forth in the Administrative Claim Request filed by the Holder of such Claim, or if no Administrative Claim Request has been Filed, the amount set forth for such Claim in the Debtors' books and records, and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan. The amount reserved for a Disputed Priority Tax Claim, Disputed Priority Claim, or Disputed Secured Claim against Access Lending or for an Allowed Priority Tax Claim, Allowed Priority Claim, or Allowed Secured Claim against Access Lending that is not paid on the Effective Date shall be based upon such Claim being in the lower of (i) the amount set forth in the Proof of Claim filed by the Holder of such Claim, or if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan. As soon as practicable after (and to the extent) a Disputed Access Lending A/P/S Claim becomes an Allowed Access Lending A/P/S Claim, the Plan Administrator shall make a payment from the Access Lending A/P/S Claims Reserve to the Holder of such Claim based on the Allowed amount of such Claim. After (and to the extent) a Disputed Access Lending A/P/S Claim or a Disallowed Claim is determined not to be an Access Lending A/P/S Claim, the portion of the Access Lending A/P/S Claims Reserve reserved for such Claim shall be released from the Access Lending A/P/S Claims Reserve to Reorganized Access Lending and shall be distributed

pursuant to the terms of this Plan. Any amount remaining in the Access Lending A/P/S Claims Reserve following the final disposition of all Access Lending A/P/S Claims shall be released from the Access Lending A/P/S Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Plan.

3.    *Access Lending Claims Reserve.*    On the Effective Date, the Plan Administrator shall establish the Access Lending Claims Reserve. With respect to any interim distribution made to Holders of Allowed Access Lending Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against Access Lending shall be the amount that would be distributed on account of such Claim if it was an Allowed Access Lending Unsecured Claim based upon the Claim being in the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Plan. As soon as practicable after (and to the extent) a Disputed Unsecured Claim against Access Lending becomes an Allowed Unsecured Claim against Access Lending, the Plan Administrator shall make a payment from the Access Lending Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Plan Administrator has paid on account of Allowed Access Lending Unsecured Claims, and any remaining amount reserved on account of such Claim shall be released from the Access Lending Claims Reserve. After (and to the extent) a Disputed Unsecured Claim against Access Lending becomes a Disallowed Claim, the portion of the Access Lending Claims Reserve reserved for such Claim shall be released from the Access Lending Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Plan. Any amount remaining in the Access Lending Claims Reserve following the final disposition of all Disputed Unsecured Claims against Access Lending shall be released from the Access Lending Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Plan.

4.    *Calculation of Access Lending Net Distributable Assets.*    The Access Lending Net Distributable Assets shall be calculated by deducting from the gross amount available from the liquidation of Reorganized Access Lending's Assets and the prosecution of the Access Lending Causes of Action (i) the amount paid by Access Lending to the Liquidating Trust pursuant to Article 10.C of this Plan; (ii) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by Access Lending on or before the Effective Date or paid by the Plan Administrator from the Assets of Reorganized Access Lending after the Effective Date; (iii) the amount of administering the Estate of Access Lending incurred in the ordinary course prior to the Effective Date and paid by Access Lending on or before the Effective Date in the ordinary course; (iv) the Joint Administrative Expense Share of Access Lending paid by Access Lending on or before the Effective Date; (v) any taxes paid by the Plan Administrator from Reorganized Access Lending's Assets pursuant to Article 10.G of this Plan, (vi) any costs incurred in connection with the prosecution of the Access Lending Causes of Action, and (vii) any Reorganized Access Lending Operating Expenses and expenses incurred by the Plan Administrator in connection with performing its duties under this Plan; provided, however, that to the extent the amount of the sum of (i) through (vii) of this Article 10.F.4 exceeds $1,000,000, such excess amount shall be paid out of and deducted from the amounts that otherwise would be distributed to NCMC on account of the NCMC AL3 Claim.

G.    **Dissolution of Reorganized Access Lending.**    After all distributions have been made to Holders of Allowed Claims against Access Lending, the Plan Administrator shall file a certificate of dissolution in the applicable state of incorporation for Reorganized Access Lending, and Reorganized Access Lending shall dissolve and cease to exist. Any remaining Assets of Reorganized Access Lending shall be distributed to the Liquidating Trust as sole shareholder in a liquidating distribution, and shall become Liquidating Trust Assets that may be distributed pursuant to the terms of this Plan.

**H.**     **Access Lending Income; Returns.**  Any income earned by the Assets of Reorganized Access Lending is attributable to Reorganized Access Lending and not to the Liquidating Trust or its beneficiaries.  The Plan Administrator shall make and file, if necessary, any and all tax returns for Reorganized Access Lending with respect to such taxable income, and shall pay taxes, if any, properly payable by Reorganized Access Lending from Reorganized Access Lending's Assets.  The Plan Administrator shall also file (or cause to be filed) any other statements, returns or disclosures relating to Reorganized Access Lending that are required by any governmental unit or the Plan Advisory Committee.

**I.**     **Removal of Access Lending.**  If this Plan cannot be confirmed with respect to Access Lending, the Plan Proponents may remove Access Lending from this Plan.  In such event, the Classes pertaining to Access Lending shall be removed from this Plan, and the Plan shall omit any treatment of the assets and liabilities of Access Lending.  The removal of Access Lending from this Plan shall not affect this Plan with respect to any other Debtor, except with respect to allocation of Joint Administrative Expense Shares as set forth on Exhibit C to this Plan.

### ARTICLE 11.

### PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS

**A.**     **Reservation of Rights to Object to Claims.**  Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Liquidating Trustee shall be deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, 510(b) Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Debtors' or the Liquidating Trustee's failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the

Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim.

**B.    Objections to Claims.**    Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim.    From and after the Effective Date, the Liquidating Trustee will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that are subject to objection by the Debtors as of the Effective Date), subject to any approvals of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement; provided, however, that Creditors of Access Lending will have standing to object to Claims against Access Lending.  Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims by the Liquidating Trustee shall be filed and served not later than 180 days after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of the Liquidating Trustee's business judgment.  A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

**C.    Service of Objections.**    An objection to a Claim shall be deemed properly served on the Holder of such Claim if the Liquidating Trustee effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases.

**D.    Determination of Claims.**    Except as otherwise agreed by the Debtors or the Liquidating Trustee (including in its capacity as Plan Administrator), any Claim as to which a

Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Article 11 shall constitute or be deemed a waiver of any claim, right, or Causes of Action that the Debtors, the Liquidating Trust, or Reorganized Access Lending may have against any Person in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157.

     **E.**    **No Distributions Pending Allowance.**  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim that becomes an Allowed Claim.

     **F.**    **Claim Estimation.**  In order to effectuate distributions pursuant to this Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Debtors (if on or prior to the Effective Date) and the Liquidating Trust (if after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right

to seek an order of the Bankruptcy Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of property that must be withheld from distribution on account of Disputed Claims; provided, however, that the Bankruptcy Court shall determine (i) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

    **G.**     **Allowance of Claims Subject to Section 502 of the Bankruptcy Code.** Allowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

    **H.**     **Goldman HC3b Claim.** The Goldman HC3b Claim shall be an Allowed Class HC3b Claim in the amount of $5,000,000.

    **I.**     **Goldman AL3 Claim.** The Goldman AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $9,506,754.00.

    **J.**     **NCMC AL3 Claim.** Subject to Article 4.L of this Plan, the NCMC AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $3,973,199.86.

**ARTICLE 12.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    **A.**     **Assumption of Certain Contracts and Leases and Cure Payments.** Twenty (20) days prior to the Confirmation Hearing, the Plan Proponents shall file the Assumption Schedule, which shall be attached to this Plan as Exhibit A. Objections to any proposed cure payment must be filed and served no later than the Assumption Objection Deadline and shall be adjudicated, if necessary, at the Confirmation Hearing. Any non-debtor party or Person to an Executory Contract that has not filed an appropriate pleading with the Bankruptcy Court on or before the applicable Assumption Objection Deadline shall be deemed to have waived its right to dispute the cure amount. All unpaid cure payments under any Executory Contracts that are assumed or assumed and assigned under this Plan shall be made by the Liquidating Trustee as soon as practicable after the Effective Date but not later than thirty (30) days after the Effective Date, provided that, in the event that there is a dispute regarding the amount of any cure

payments, the Liquidating Trustee shall make such cure payments as may be required by section 365(b)(1) of the Bankruptcy Code within ten (10) days following the entry of a Final Order resolving such dispute. The Plan Proponents reserve the right to remove any Executory Contract from the Assumption Schedule prior to the Effective Date.

      **B.**    **Rejection of Remaining Executory Contracts and Unexpired Leases.**  On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective (i) the Confirmation Date or (ii) if the Executory Contract has been removed from the Assumption Schedule after the Confirmation Date, the date of such removal. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Confirmation Date.

      **C.**    **Rejection Damages Bar Date.**  Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, any Proofs of Claim with respect to a Claim arising from the rejection of Executory Contracts under this Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) must be filed with XRoads Case Management Services, P.O. Box 8901, Marina Del Rey, California 90295 (Telephone (888) 784-9571), and a copy served on counsel for the Plan Proponents and the Liquidating Trustee, within thirty (30) days after the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns, or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class HC3b (Other Unsecured Claims against NCFC), Class HC7 (Other Unsecured Claims against TRS Holdings), Class HC10b (Other Unsecured Claims against NC Credit), Class HC13 (Other Unsecured Claims against NC Residual IV), Class OP3c (Other Unsecured Claims against NCMC), Class OP6c (Other

Unsecured Claims against NC Capital), Class OP9b (Other Unsecured Claims against Home123), Class OP12 (Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral), or Class AL3 (Other Unsecured Claims against Access Lending), depending on which Debtor the Claim is asserted against. Nothing in this Plan extends or modifies any previously applicable Bar Date.

      **D.**    **Insurance Policies.** To the extent that any or all of the insurance policies set forth on Exhibit A to this Plan are considered to be Executory Contracts, then notwithstanding anything contained in this Plan to the contrary, this Plan shall constitute a motion to assume the insurance policies set forth on Exhibit A to this Plan and to assign them to the Liquidating Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption and assignment pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on Exhibit A to this Plan. To the extent that the Bankruptcy Court determines otherwise with respect to any insurance policy, the Plan Proponents reserve the right to seek rejection of such insurance policy or other available relief. The Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the certain insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute, and benefit from claims) are retained and will be transferred to the Liquidating Trust pursuant to this Plan.

## ARTICLE 13.

### EFFECT OF CONFIRMATION AND INJUNCTION

A.      **Injunction.**    Except as otherwise expressly provided in this Plan, the documents executed pursuant to this Plan, or the Confirmation Order, on and after the Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan.  Any Person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.  Nothing contained in this Article 13 shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under this Plan.  The Confirmation Order also shall constitute an injunction enjoining any

Person from enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of this Plan have been made or are not yet due under Article 4 of this Plan; provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section 362(a) of the Bankruptcy Code. Except as provided in Article 13.C of this Plan, nothing in this Plan shall (i) release or discharge any claims held by the SEC against any non-debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-debtors.

> B.    **Term of Injunctions.**    Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Bankruptcy Court, under sections 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust. In accordance therewith, and without limiting the foregoing, until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust, all Persons or entities (except as provided in section 362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date.

C.      **Exculpation. On and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from, any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases or (b) for any act or omission that occurred during the Chapter 11 Cases or in connection with the formulation, negotiation, and/or pursuit of confirmation of this Plan, the consummation of this Plan, and/or the administration of this Plan and/or the property to be distributed under this Plan, except, in either case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan to the extent permitted by applicable law. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of this Plan or the Disclosure Statement shall be deemed to act or release any claims, Causes of Action or liabilities that the Liquidating Trust, Reorganized Access Lending, the Estates, or the SEC may have against any Person or entity for any act, omission, or failure to act that occurred (i) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (ii) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liability pertaining to the timing of the commencement of the Chapter 11 Cases, nor shall any provision of this Plan be deemed to act to release any Avoidance Actions.**

D.      **Release of Goldman. On the Effective Date, any and all claims, Causes of Action, rights or remedies of any kind or nature that the Debtors or the Estates have, may have or could have asserted against Goldman, its affiliates or its former or present officers, directors, employees, attorneys, financial advisors or other professionals, which claims,**

causes of action, rights or remedies arise out of or relate to Access Lending shall be waived, set aside, discharged, settled, compromised, and released.

     **E.**     **Binding Effect of Plan.**  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted this Plan and whether or not the Holder has filed a Claim.  On and after the Confirmation Date, the EPD/Breach Claim Protocol shall be binding on all Holders of Claims in Classes OP3b and/or OP6b irrespective of how such Holders vote on the Plan and irrespective of whether such Holders submit the information requested by the Debtors pursuant to the questionnaire referenced in the EPD/Breach Protocol.  Any vote in favor of the Plan by a Holder of Claims in Classes OP3b and/or OP6b will constitute an express consent to the EPD/Breach Protocol.  The rights, benefits and obligations of any Person named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

     **F.**     **No Effect on Objections to Fee Applications.**  Nothing contained in this Plan shall (i) affect the rights of parties in interest to object to Fee Applications and Claims asserted under section 503(b)(3) of the Bankruptcy Code or (ii) obviate the power of the Bankruptcy Court to issue orders with respect to Fee Applications and Claims asserted under section 503(b)(3) of the Bankruptcy Code.

### ARTICLE 14.

### CONDITIONS PRECEDENT

     **A.**     **Conditions Precedent to Effective Date.**  This Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

1.    *Approval of Disclosure Statement.*    The Bankruptcy Court shall have approved a disclosure statement to this Plan in form and substance acceptable to the Plan Proponents in their sole and absolute discretion.

2.    *Approval of Plan Compromises.*    The compromises and settlements contained in Articles 4, 6, and 7 of this Plan shall be approved without material modification by Final Order in accordance with Bankruptcy Rule 9019 and shall be binding and enforceable against all Holders of Claims and Interests under the terms of this Plan.

3.    *Form of Confirmation Order.*    The Confirmation Order shall be in form and substance acceptable to the Plan Proponents in their sole and absolute discretion

4.    *Entry of Confirmation Order.*    The Confirmation Order (i) shall have been entered by the Bankruptcy Court, (ii) shall not be subject to any stay of effectiveness, and (iii) shall have become a Final Order, the Confirmation Date shall have occurred, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

5.    *Liquidating Trust.*    The Liquidating Trust shall have been formed, and all formation documents for such entities shall have been properly executed and filed as required by this Plan and applicable law.

6.    *Liquidating Trustee.*    The appointment of the Liquidating Trustee shall have been confirmed by order of the Bankruptcy Court.

7.    *Plan Administrator.*    The appointment of the Plan Administrator shall have been confirmed by order of the Bankruptcy Court.

**B.    Revocation, Withdrawal, or Non-Consummation of Plan.**    If after the Confirmation Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Plan Proponents, the Confirmation Order may be vacated by the Bankruptcy Court; provided however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be

vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Plan Proponents. If the Confirmation Order is vacated pursuant to this Section, this Plan shall be null and void in all respects, and nothing contained in this Plan, the Disclosure Statement, nor any pleadings filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Plan Proponents in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Confirmation Date. This Article 14.B is not intended to establish the applicable legal standard with respect to vacating the Confirmation Order, and the rights of all parties in interest to object to any motion filed pursuant to this Article 14.B, including on the basis that the applicable legal standard has not been satisfied, are fully reserved.

## ARTICLE 15.

## ADMINISTRATIVE PROVISIONS

**A.    Retention of Jurisdiction.**  This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases or the Plan, or (iii) that relates to the following:

> 1.    to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of Executory Contracts or unexpired leases and the allowance of Claims resulting therefrom;

2.      to adjudicate any and all disputes over the ownership of a Claim or Interest;

3.      to adjudicate any and all disputes arising from or relating to the distribution or retention of consideration under this Plan;

4.      to hear and determine timely objections to Claims, whether filed before or after the Confirmation Date, including objections to the classification, estimation or establishment of priority or status of any Claim, and to allow or disallow any Claim, in whole or in part;

5.      to determine the extent, validity, and/or priority of any Lien asserted against property of the Debtors or the Estates or property abandoned or transferred by the Debtors or the Estates;

6.      to determine the amount, if any, of interest to be paid to Holders of Allowed Unsecured Claims if any Allowed Unsecured Claims are paid in full pursuant to the terms of this Plan;

7.      to hear and determine matters related to the assets of the Estates, including liquidation of the Debtors' assets; provided that notwithstanding the foregoing, the Liquidating Trustee (including in its capacity as Plan Administrator) shall have no obligation to obtain the approval or authorization of the Bankruptcy Court or file a report to the Bankruptcy Court concerning the sale, transfer, assignment or disposition of assets; provided further, that the Liquidating Trustee may seek "comfort orders" or similar orders of the Bankruptcy Court approving the Liquidating Trustee's sale or disposition of such assets to facilitate such transactions;

8.      to adjudicate disputes relating to any alleged subordination of the Capital Trust Claims;

9.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

10.    to consider modifications of or amendments to this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation, the Confirmation Order;

11.    to issue orders in aid of execution, implementation, or consummation of this Plan;

12.    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

13.    to hear and determine all motions requesting allowance of an Administrative Claim;

14.    to hear and determine all Fee Applications;

15.    to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses and parties entitled thereto;

16.    to hear and determine all controversies arising in connection with the implementation of this Plan;

17.    to hear and determine all Causes of Action, Avoidance Actions, and other suits and adversary proceedings to recover assets of (i) the Liquidating Trust, as successor-in-interest to any of the Debtors (other than Access Lending) and property of the Estates (other than the Estate of Access Lending), wherever located, and (ii) Reorganized Access Lending, as successor-in-interest to Access Lending and property of the Estate of Access Lending, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

18.     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19.     to resolve all conflicts and disputes between the Liquidating Trustee, the Liquidating Trust, Reorganized Access Lending, the Plan Advisory Committee, and Holders of Claims or Interests;

20.     to hear any matter not inconsistent with the Bankruptcy Code;

21.     to hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.     to consider matters regarding the Debtors' insurance policies, if any, including jurisdiction to reimpose the automatic stay or its applicable equivalent provided in this Plan;

23.     to issue injunctions, provide declaratory relief, take such other legal or equitable actions, or issue such other orders as may be necessary or appropriate to restrain interference with this Plan, the Debtors, the Estates or their property, the Committee, the Liquidating Trust, Reorganized Access Lending, the Liquidating Trustee, the Plan Advisory Committee, Professionals, or the Confirmation Order;

24.     to enter a Final Decree closing the Chapter 11 Cases; and

25.     to enforce all orders previously entered by the Bankruptcy Court.

**B.      Payment of Statutory Fees.**  All fees payable through the Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid on or before the Effective Date.  All fees payable after the Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Liquidating Trust or Reorganized Access Lending, as applicable.

C.    **General Authority.**  The Debtors, if on or prior to the Effective Date, and the Liquidating Trust or Reorganized Access Lending, if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Plan.  Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the applicable Debtor, if on or prior to the Effective Date, or the Liquidating Trust, if after the Effective Date, shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Debtor or Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Debtors or the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that neither the Debtors nor the Liquidating Trust, as applicable, shall be liable for the actions of the requesting party under any such powers of attorney; and provided, further, that the Liquidating Trustee, or the Debtors may seek modification of this requirement on noticed motion and other parties may oppose such motion.  Powers of attorney executed by the Debtors prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.

D.    **Headings.**  The headings of the Articles, paragraphs, and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

E.    **Final Order.**    Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors and the Committee (if prior to the Effective Date) or the Liquidating Trustee (if after the Effective Date) upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

F.    **Amendments and Modifications.**    The Plan Proponents may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1102(2) of the Bankruptcy Code) of this Plan with respect to any Debtor, the Plan Proponents, or the proposed Liquidating Trustee, as appropriate, may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion, and, so long as the proposed modifications to the Plan are non-material, (i) notice need only be provided to the Persons listed the Bankruptcy Rule 2002 service list, and (ii) the solicitation of all Creditors and other parties in interest shall not be required.

G.    **Payment Date.**    Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

H.    **Withholding and Reporting Requirements.**    In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Debtors (if prior to or on the Effective Date) or the Liquidating Trustee, including in its capacity as Plan Administrator, (if after the Effective Date) shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**I.**    **No Waiver.**  The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors', the Liquidating Trust's, or Reorganized Access Lending's  right to object to or examine such Claim, in whole or in part.

**J.**    **Tax Exemption.**  Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of a security under this Plan, or the making or delivery of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax or similar tax.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax.

**K.**    **Securities Exemption.**  Any rights issued under, pursuant to or in effecting this Plan, including the stock of Reorganized Access Lending, and the offering and issuance thereof by any party, including without limitation the Debtors or the Liquidating Trust, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code.

**L.**    **Non-Severability.**  Except as specifically provided herein, the terms of this Plan constitute interrelated compromises and are not severable.  Additionally, no provision of Articles 4, 6, or 7 of this Plan may be stricken, altered, or invalidated.

**M.**     **Revocation.**  The Plan Proponents reserve the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw this Plan, then this Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee, or any other Person or to prejudice in any manner the rights of the Debtors, the Committee, or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Committee, including with respect to the amount or allowability of any Claim or the value of any property of the Estates.

**N.**     **Plan Controls Disclosure Statement.**  In the event and to the extent that any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.

**O.**     **Governing Law.**  Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless specifically stated, the rights, duties, and obligations arising under this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) and, with respect to the Debtors incorporated in Delaware, corporate governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.  Corporate governance matters relating to any Debtor not incorporated in Delaware shall be governed by the law of the state of incorporation of the applicable Debtor.

**P.**     **Notices.**  Any notices or requests of the Debtors or the Liquidating Trust by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Debtors:

O'Melveny & Myers LLP
Attn: Suzzanne Uhland, Esq.
275 Battery Street
San Francisco, CA 94111

and

Richards, Layton & Finger, P.A.
Attn: Mark D. Collins, Esq.
One Rodney Square
Box 551
Wilmington, DE 19899

If to the Liquidating Trust or the Liquidating Trustee:

To the persons indicated in the notice provisions of the Confirmation Order.

**Q.**     **Filing of Additional Documents.**   On or before "substantial consummation" (as such term is defined in section 1102(2) of the Bankruptcy Code) of this Plan, the Plan Proponents may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate and further evidence the terms and conditions of this Plan.

**R.**     **Direction to a Party.**   From and after the Effective Date, the Plan Proponents may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

**S.**     **Successors and Assigns.**   The rights, benefits, duties, and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

**T.**     **Final Decree.**   Once any of the Estates has been fully administered, as referred to in Bankruptcy Rule 3022, the Liquidating Trust or another party, as the Bankruptcy Court shall

designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 Case of the applicable Estate(s).

## ARTICLE 16.

### CONFIRMATION REQUEST

The Plan Proponents hereby request confirmation of this Plan as a Cramdown Plan with respect to any impaired Class that does not accept this Plan or is deemed to have rejected this Plan.

## ARTICLE 17.

### BANKRUPTCY RULE 9019 REQUEST AND, TO EXTENT REQUIRED, REQUEST PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 1123(A)(5)

Pursuant to Bankruptcy Rule 9019, the Plan Proponents hereby request approval of all compromises and settlements included in this Plan, including, without limitation, the compromises and settlements included in Articles 4, 6, and 7 of this Plan. To the extent required, the Plan Proponents hereby request confirmation of this Plan based on the partial substantive consolidation of the Debtors pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code.

Dated:  Wilmington, Delaware
      April 23, 2008

Respectfully submitted,

NEW CENTURY FINANCIAL CORPORATION, on behalf of the Debtors and Debtors-in-Possession

*/s/  Holly Etlin*
By:  Holly Etlin
Its:  Chief Executive Officer, President and Chief Restructuring Officer

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

*/s/  Donald A. Workman*
By:  Donald A. Workman, Esq.
Counsel for Fidelity National Information Services, Inc. (Co-chair)

**EXHIBIT A**

## Exhibit 1 - Assumption Schedule

Out of any abundance of caution the Debtors have listed critical documents and agreements on this schedule. The listing of a document or agreement on this schedule shall not constitute an admission by the Debtors that such document or agreement is (a) an executory contract or unexpired lease or that the Debtors have any liability thereunder; or (b) that the document or agreement was entered into prepetition and therefore subject to section 365(a) of the Bankruptcy Code. The Debtors intend to assume all agreements not previously rejected the primary purpose of which is the perpetual licensing of intellectual property rights from third parties and for which no cure amount is owed by the Debtors. Examples include, but are not limited to, those agreements with Microsoft, Lawbase and Legato.

## Part A. Contracts

| Contract | Cure Amount |
|---|---|
| Services Agreement dated as of December 20, 2007 by and among New Century Mortgage Corporation and ACS Commercial Solutions. | $0 |
| Epicor Software Corporation Maintenance / Support Renewal Program dated as of July 1, 2007 by and between Epicor Software Corporation and New Century Mortgage Corp. | $0 |
| Records Management and Data Protection Service Agreements and Customer Agreements dated as of various dates by and between Iron Mountain Information Management Inc. ("Iron Mountain"), its predecessor companies and New Century Mortgage Corporation, Home 123 Corporation, New Century Financial Corporation, etc. for hardcopy storage and tape storage accounts numbered: 01222.0FX031, 01222.0CF310, 01222.0FX578, 01222.00L322, 01222.0L3429, 04311.0H0929, 04311.0H5450, 01422.0OP064, 44114.044075, 44113.041293, 44114.057273 | $0 |
| Park Place Short Term Lease dated as of January 22, 2008 by and among Maguire Properties - Park Place, LLC and New Century Financial Corporation. | $0 |
| Agreement between Data-Link Systems, LLC and New Century Mortgage Corporation dated as of July 5, 2007 (the Agreement"), Amendment No. 1 dated as of April __ 2008, and Feature Addendum dated as of January 3. 2008 | $0 |
| Onbase Online Hosted Solution Agreement dated as of January 7, 2008 by and between Hyland Software, Inc. and New Century Financial Corporation. | $0 |
| Authorization and Agreement for Cash Management Services dated as of 7/23/2003 by and between New Century Mortgage Corporation and Union Bank of California, N.A. and the Security Agreement dated as of 3/10/2005 by and between New Century Mortgage Corporation and Union Bank of California, N.A. | $0 |
| Letter Agreement and price list dated as of March 31, 2008 by and between Bekins Moving Solutions and New Century Mortgage Corporation. | $0 |

## Part B. Insurance Policies

| TYPE OF POLICY | Carrier | POLICY # |
|---|---|---|
| **COMMERCIAL LIABILITY** | | |
| General Liability | Fidelity & Deposit Co. of Maryland | CP0913762802 |
| Umbrella AL, GL & REO | Fidelity & Deposit Co. of Maryland | UMB913752 |
| Auto Liability | Fidelity & Deposit Co. of Maryland | CAP0016872 |
| Property / Flood | Fidelity & Deposit Co. of Maryland | FIA1003282 |
| General Liability | Fidelity & Deposit Co. of Maryland | FIA 100256503 |
| Umbrella AL, GL & REO | Fidelity & Deposit Co. of Maryland | UMB 5344245 |
| General Liability | Fidelity & Deposit Co. of Maryland | FIA 1002565 |
| Umbrella AL, GL & REO | Fidelity & Deposit Co. of Maryland | UMB 5344245 |
| General Liability | Great Northern Ins (Chubb) | 35397736 LAO |
| Umbrella AL, GL & REO | Federal Insurance Co. (Chubb) | 7977-03-85 |
| General Liability | Great Northern Ins (Chubb) | 35397736 LAO |
| Umbrella AL, GL & REO | Federal Insurance Co. (Chubb) | 7977-03-85 |
| General Liability | Great Northern Ins (Chubb) | 35397736 LAO |
| Umbrella AL, GL & REO | Federal Insurance Co. (Chubb) | 7977-03-85 |
| General Liability | Centennial Insurance Company | 497-40-20-82 |
| **DIRECTORS & OFFICERS** | | |
| Run Off Program | American International Specialty Lines Insurance Company (AISLIC) | 672-43-85 |
| Run Off Program | Ace American Insurance Company | DOX G2166120A-002 |
| Run Off Program | Lloyds of London | FD0604467 |
| Run Off Program | Axis Reinsurance Company | RNN727183 |
| Run Off Program | Starr Excess Liability Insurance Co. | 4121907 |
| Run Off Program | American International Group, Inc. (AIG) | 713-23-15 |
| Run Off Program | Lloyds of London | FD0604994 |
| Run Off Program | Ace American Insurance Company | DOXG21661338001 |
| Run Off Program | Axis Reinsurance Company | RNN727184 |
| Run Off Program | Liberty Mutual Insurance Company | 073551-016 |
| Run Off Program | Navigators Insurance Company | NY06DOL149577NV |
| Run Off Program | Arch Insurance Company | AID0016068-00 |
| Run Off Program | CNAInsurance Company | 287036031 |
| Run Off Program | Navigators Insurance Company | NY06DOL149583NV |
| Go Forward (Execs & Organization) | AIG | 713-35-92 |
| Go Forward (Execs & Organization) | U.S. Specialty Ins. Co. (HCC Global) | 14-MGU-07-A14285 |
| Primary Layer | AISLIC | 672-43-85 |
| 2nd Excess Layer | Ace American Insurance Company | DOX G2166120A-002 |
| 3rd Excess Layer | Lloyds of London | FD0604467 |
| 4th Excess Layer | Axis Reinsurance Company | RNN727183 |

| TYPE OF POLICY | Carrier | POLICY # |
|---|---|---|
| 5th Excess Layer | Starr Excess Liability Insurance Co. | 4121907 |
| 6th Excess Layer | XL Specialty Insurance Company | ELU09290606 |
| 7th Excess Layer | Lloyds of London | FD0604994 |
| 8th Excess Layer | Ace American Insurance Company | DOXG21661338001 |
| 9th Excess Layer | Axis Reinsurance Company | RNN727184 |
| 10th Excess Layer | Liberty Mutual Insurance Company | 73551016 |
| 11th Excess Layer | Navigators Insurance Company | NY06DOL149577NV |
| IDL/Ed Gotschall Only | Hartford Insurance Company | 00DA023401506 |
| Independent Directors Liability | Arch, CNA & Navigators | Various |
| Primary Layer | Liberty Mutual Insurance Company | LNE-B71-073551-012 |
| 2nd Excess Layer | Houston Casualty Company (Global) | 24-MG-03-A2237 |
| 3rd Excess Layer | Lexington Insurance Company | 1620532 |
| 4th Excess Layer | Greenwich Insurance Company | ELU 82589-02 |
| 5th Excess Layer | Kemper Insurance Company(Lumbermans) | 3DY 016540 01 |
| 6th Excess Layer | XL Insurance (Bermuda) | XLD +O-06782-01 |
| 7th Excess Layer | Allied World Assurance Company | C001156 |
| 8th Excess Layer | Lloyds of London | L2CX069 |
| 9th Excess Layer | Philadelphia Insurance Companies | PHSD037932 |
| 10th Excess Layer | Royal & Sunalliance | HS 611797 |
| Primary Layer | Liberty Mutual Insurance Company | LNE-B71-073551-013 |
| 2nd Excess Layer | Houston Casualty Company (Global) | 24-MG-03-A2237 |
| 3rd Excess Layer | Lexington Insurance Company | 1620615 |
| 4th Excess Layer | XL Insurance Company | EX71010999 |
| 5th Excess Layer | Sheffield Insurance Company | EAN598559 |
| 6th Excess Layer | Illinois Union Insurance Company | DOXG21659666001 |
| 7th Excess Layer | XL Insurance Company | XLD+O-0678202 |
| 8th Excess Layer | AWA Company | C001152002 |
| 9th Excess Layer | Lloyds of London | FD042860S |
| 10th Excess Layer | Philadelphia Insurance Companies | PHSD056425 |
| Primary Layer | American International Group, Inc. (AIG) | 408-61-35 |
| Excess Layer | Houston Casualty Company | 14-MGU-08-A16485 |
| **EMPLOYMENT PRACTICES LIABILITY** | | |
| Employment Practices | Max Re | 12575-1330-EPLI-2006 |
| Employment Practices | Max Re | 7747-752-EPLI-2005 |
| Employment Practices | Max Re | 4256-359-EPLI-2004 |
| Employee Commercial Crime | Travelers Casualty & Surety Company | 104011836 |
| **FIDUCIARY LIABILITY** | | |
| Run Off Program | Philadelphia Indemnity Insurance Co. | PHSD219056 |
| Fiduciary Liability | Philadelphia Indemnity Insurance Co. | PHSD219056 |
| Fiduciary Liability | Philadelphia Indemnity Insurance Co. | PHSD114807 |

| TYPE OF POLICY | Carrier | POLICY # |
|---|---|---|
| **MORTGAGE BANKERS BOND** | | |
| Primary Coverage | Bankers Insurance Services | MBB-05-00071 |
| Primary Coverage | Bankers Insurance Services | MBB-03-00002 |
| **SERVICING INSURANCE** | | |
| Flood | Lloyds of London | 1916-3253 |
| Wind | Lloyds of London | 1770-3253 |
| Fire & Liability | Safeco | MIP7553681A |
| Fire & Liability | Safeco | MSH7710681B |
| Fire & Liability | Safeco | MSH7710548B MIP78553565A |
| Fire & Liability | Safeco | MIH7710548B |
| Fire & Liability | Safeco | MIH7710681B |
| **WORKERS COMP** | | |
| Workers Comp | Valley Forge Insurance Co (CNA) | WC24921601 WC249216177 WC249216373 |
| Workers Comp | Valley Forge Insurance Co (CNA) | WC249221914 WC249221928 WC249221900 |
| Workers Comp | ACE American Insurance Company - claims administered by ESIS | WLRC43981547 |
| Workers Comp | ACE American Insurance Company - claims administered by ESIS | WLRC44438124 |
| Workers Comp | Travelers Paid Loss Occurrence | TRJUB1761B36107 TC2JUB1761B46507 for AZ, MA, OR and WI |

**EXHIBIT B**

# EPD/ BREACH PROTOCOL[1]

I.      EPD/FPD Claims.

     A.      Methodology.

         EPD and FPD Claims are Claims based on a provision in a loan purchase agreement that obligated a Debtor to repurchase a loan if the borrower defaulted on his or her first loan payment after the loan was sold (a First Payment Default or "FPD") or defaulted on a payment due within a period of time (usually 30 or 60 days) after the loan was sold (an Early Payment Default or "EPD"). Loan purchase agreements varied as to whether the EPD/FPD provision was set forth as a standalone provision of the loan sale agreement or was styled as a representation or warranty. A Claim based on either is treated as an EPD/FPD Claim for purposes of the protocol.

         Each Creditor that establishes a valid EPD or FPD under the applicable loan purchase agreement will receive a distribution in the Plan premised upon damages assessed based upon the borrower payment history and the unpaid principal balance ("UPB") for the loan, in both cases measured as of August 31, 2007, according to the following grid:[2]

- Current: 0% of UPB

- 31 – 60 days delinquent: 15% of UPB

- 61 – 90 days delinquent: 20% of UPB

- 91 or more days delinquent: 30% of UPB

- Borrower in bankruptcy: 35% of UPB

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 1, 2008.
[2] The applicable category that would lead to the highest calculation takes precedence. For example, if as of 8/31/07 a loan was 61 days delinquent and the borrower was in bankruptcy, the applicable percentage is 35% of UPB.

- In foreclosure[3]:  40% of UPB
- Real estate owned (including liquidations of such real estate )("REO"): 45% of UPB

If the Creditor sold the loan prior to August 31, 2007 and does not know the loan status as of August 31, 2007, the damage assessment will be measured as of the date of sale.  If a loan has been foreclosed, the measurement will consider the property to be REO and the measurement will be based on the UPB at the time of foreclosure.

If subsequent to the sale of the loan by a Debtor and prior to August 31, 2007, the borrower and the owner of a loan agreed to modify the payment (principal or interest) terms of the loan, then the loan will be treated under the next most severe category in the grid.  For example, if a Creditor and borrower agreed in April 2007 to relax the borrower's payment obligations under a loan, and on August 31, 2007 the borrower was current on the modified schedule, this loan will be treated as though the borrower was 31 – 60 days delinquent. Similarly, if on August 31, 2007 that same borrower was 40 days delinquent under the modified payment schedule, the loan will be treated as though the borrower was 61 – 90 days delinquent.

In order to establish the validity of the EPD/FPD Claim and to apply the grid, each EPD/FPD claimant must provide to the Debtors information set forth in questionnaire for loans on which it asserts an EPD/FPD claim.  This information includes:

- The payment history for each loan for which an EPD or FPD is asserted in electronic format, including identification of the payment status as of August 31, 2007.
- Identification of the loan purchase agreement pursuant to which the loan was sold by a Debtor, including a copy of the relevant EPD/FPD payment

---

[3] In foreclosure means that the period set in a notice of intent to foreclose during which the borrower has the ability

provisions (note: the length of time for EPD and FPD claims varied among the master loan purchase agreements).

II.     BREACH CLAIMS.

    A.     Methodology.

        The damages resulting from breach Claims will be calculated based upon the simplifying assumptions that: (i) 1.5% of the loans in any pool will at some point be subject to a breach that would have caused the selling Debtor to have repurchased the loan, (ii) the "seasoning" of loans will be taken into account so that this 1.5% incidence is spread over the life of the pool based on the Debtors' historic data concerning the timing of when breach claims are asserted, and (iii) damages resulting from breaches will be set at 30% of the UPB of the loan as of August 31, 2007. The following table sets forth the calculation methodology:

| Year | Quarter | % Incidence | Damages |
|---|---|---|---|
| 2007 | 1 Qtr | 1.500% | 0.450% |
| 2006 | 4 Qtr | 1.200% | 0.360% |
| 2006 | 3 Qtr | 1.120% | 0.336% |
| 2006 | 2 Qtr | 0.850% | 0.255% |
| 2006 | 1 Qtr | 0.680% | 0.204% |
| 2005 | 4 Qtr | 0.530% | 0.159% |
| 2005 | 3 Qtr | 0.360% | 0.108% |
| 2005 | 2 Qtr | 0.180% | 0.054% |
| 2005 | 1 Qtr | 0.140% | 0.042% |
| 2004 | 4 Qtr | 0.100% | 0.030% |
| 2004 | 3 Qtr | 0.085% | 0.026% |
| 2004 | 2 Qtr | 0.065% | 0.020% |
| 2004 | 1 Qtr | 0.060% | 0.018% |
| 2003 | 4 Qtr | 0.053% | 0.016% |
| 2003 | 3 Qtr | 0.045% | 0.014% |
| 2003 | 2 Qtr | 0.035% | 0.011% |
| 2003 | 1 Qtr | 0.025% | 0.008% |
| 2002 | 4 Qtr | 0.022% | 0.007% |
| 2002 | 3 Qtr | 0.018% | 0.005% |
| 2002 | 2 Qtr | 0.015% | 0.005% |
| 2002 | 1 Qtr | 0.012% | 0.004% |
| 2001 and Earlier | | 0.006% | 0.002% |

to bring the loan current has expired.

If an applicable loan purchase agreement between a Debtor and a non-affiliate of the Debtors did not contain an EPD provision, but did allow the purchaser to cause a Debtor to repurchase loans based on breaches of other types of representations and warranties, the damage calculations set forth in the foregoing table will be multiplied by 1.5667.

Damages, for purposes of distributions under the Plan, will be measured by applying the percentage factor in the final column of this table against the August 31, 2007 UPB of the loans purchased from a Debtor; provided, however, that in no case will the damage calculation for any pool be less than $5,000.

If the Creditor sold the loan prior to August 31, 2007 and does not know the UPB as of August 31, 2007, the damage assessment will be based on the UPB as of the date of sale. If a loan has been foreclosed, the measurement will be based on the UPB at the time of foreclosure. Loans that were paid-in-full or repurchased or replaced by one of the Debtors shall not be included in measuring the applicable UPB.

B.    Interaction with EPD/FPD Claims.

EPD/FPD claims will take precedence over breach claims. Thus, to the extent that a creditor establishes a valid EPD or FPD claim for a loan, that loan's UPB as of August 31, 2007 will be subtracted from the pool of loans for which breaches are computed.

This methodology is designed to avoid the need to resolve disputes over individual breach claims that are presently being asserted and to establish a methodology for assessing unliquidated claims based upon breaches that come to the fore when borrowers default in the future. Accordingly, this statistical approach will be used both with respect to individual breach claims presently being asserted by creditors and to assess unliquidated breaches to be discovered in the future; both types of breaches are subsumed within the statistical analysis set forth above.

- 4 -

III.    Information.

        In order to receive a distribution under the Plan, each Holder of an EPD/Breach Claim must supply information to the Debtors that enables the Debtors to calculate the damages that result from this protocol and to ensure that multiple creditors are not asserting overlapping claims. That information will be set forth in a questionnaire that the Debtors will submit to each Creditor that has asserted an EPD/Breach Claim.

Note: Nothing contained herein shall affect or impair in any way any other Claims, causes of actions or rights that the Holders of EPD/Breach Claims, the Debtors' Estates, and/or the Liquidating Trust may have against each other.

- 5 -

# Exhibit C

## Allocation of Joint Administrative Expense Shares

The Joint Administrative Expense Shares of Access Lending, the Holding Company Debtors, and the Operating Debtors are as follows:

| Debtor Group | April 2, 2007 through April 27, 2007[1,] | April 28, 2007 through Effective Date |
|---|---|---|
| Access Lending | 0.7%[2] | 0% |
| Holding Company Debtors | 22.4% | 22.6% |
| Operating Debtors | 76.8% | 77.4% |

---

[1] If Access Lending is removed from the Plan pursuant to Article 8.J.7 of the Plan, then the Joint Administrative Share allocations set forth in this Exhibit C to the Plan for the period from April 28, 2007 through the Effective Date shall also apply to the period from April 2, 2007 through April 27, 2007; provided, however, that if Access Lending is removed from the Plan, the Holding Company Debtors and the Operating Debtors shall be permitted to seek reimbursement from Access Lending for expenses or any portions thereof paid by the Holding Company Debtors or the Operating Debtors on behalf of Access Lending during the Chapter 11 Cases.

[2] This allocation is subject to Article 10.F.4 of the Plan.