# **EXHIBIT 1**

## PLAN ADMINISTRATOR AGREEMENT

This Reorganized Access Lending Plan Administrator Agreement (the "Plan Administrator Agreement") is made this _____ day of May, 2008, by and between Alan M. Jacobs and New Century Warehouse Corporation ("Access Lending") pursuant to that Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated April ___, 2008 (the "Plan").

A. This Plan Administrator Agreement is created pursuant to, and to effectuate, the terms of the Plan as they relate to Access Lending.

B. Except with respect to the terms defined in this Plan Administrator Agreement, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan; provided, however, that the meaning of all such defined terms as used in this Plan Administrator Agreement whether defined herein or in the Plan, shall be deemed to include only Access Lending and exclude all other Debtors; provided, further, that "Debtor" or "Debtors," as such term is used in this Plan Administrator Agreement shall mean the Debtor, Debtor in Possession and the Estate of Access Lending only;

C. Under the terms of the Plan, the Liquidating Trustee is also appointed as Plan Administrator for Reorganized Access Lending and shall serve after the Effective Date as the sole officer and director of Reorganized Access Lending. The primary function of the Plan Administrator of Reorganized Access Lending will be to liquidate any and all remaining Assets of Reorganized Access Lending, pursue, to the extent appropriate, any and all Access Lending Causes of Action and make distributions to all Allowed Claims against Access Lending.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors agree as follows:

## ARTICLE I

## PLAN ADMINISTRATOR'S ACCEPTANCE OF POSITION

1.1. Acceptance.

Alan M. Jacobs accepts employment as the Plan Administrator of Reorganized Access Lending and agrees to observe and perform all duties and obligations imposed upon him by this Plan Administrator Agreement and under the Plan. The Plan Administrator further acknowledges that he shall continue to serve as Plan Administrator until all claims of Access Lending have been paid or until the Liquidating Trustee is replaced, at which point the Plan Administrator shall be replaced by any successor Liquidating Trustee appointed in accordance with the terms of the Liquidating Trust Agreement.

# ARTICLE II

## PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

2.1. <u>Authority of Plan Administrator</u>.

The authority of the Plan Administrator extends solely to the administration and liquidation of Reorganized Access Lending. In fulfilling its obligations pursuant to this Plan Administrator Agreement, the Plan Administrator shall have all the rights and powers granted to, and shall be subject to all the limitations imposed upon, the Liquidating Trustee in the Liquidating Trust Agreement and in the Plan as they relate to the assets and liabilities of Reorganized Access Lending.

2.2. <u>Certain Actions by the Plan Administrator</u>.

(a) The Plan Administrator shall review each of the Disputed Access Lending A/P/S Claims and Disputed Access Lending Unsecured Claims, and quantify each such Claim by determining the extent to which each such Claim should be Allowed, if any. The Plan Administrator shall distribute to each holder of an Allowed A/P/S Claim the Allowed amount of such Claim. The Plan Administrator shall also distribute to each Holder of an Allowed Access Lending Unsecured Claim the Allowed amount it is entitled to receive under the terms of the Plan.

(b) To the extent the Liquidating Trustee's actions are limited by approval of the Plan Advisory Committee in accordance with Section 4.2 of the Liquidating Trust Agreement, the Plan Administrator is similarly limited subject to approval by the Bankruptcy Court.

# ARTICLE III

## THE PLAN ADMINISTRATOR

3.1. <u>Generally</u>.

The Plan Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Plan as it relates to Access Lending and not otherwise.

3.2. <u>Responsibilities of the Plan Administrator</u>.

The Plan Administrator shall, in an expeditious but orderly manner, liquidate and convert to cash the Assets of Reorganized Access Lending, resolve Disputed Access Lending Claims, make timely distributions to holders of Allowed Access Lending A/P/S Claims and not unduly prolong the duration of the Reorganized Access Lending. In so doing, the Plan Administrator will exercise reasonable business judgment in liquidating the Assets of Reorganized Access Lending. The liquidation of the Assets of Reorganized Access Lending may be accomplished through the sale of assets (in whole or in combination), including the sale of any Access Lending Causes of Action or through the prosecution or settlement of any or all

Access Lending Causes of Action, or otherwise. In connection therewith, and as authorized by this Plan Administrator Agreement the Plan Administrator shall have the power to (i) prosecute for the benefit of Reorganized Access Lending all Claims, rights and Access Lending Causes of Action belonging to Reorganized Access Lending (including any or all Access Lending A/P/S Claims and defenses thereto) whether or not such suits are brought in the name of Reorganized Access Lending, the Debtors or otherwise for the benefit of Reorganized Access Lending, and (ii) otherwise perform the functions and take the actions permitted or required by the Plan, under applicable law or pursuant to this Plan Administrator Agreement. Any and all proceeds generated shall be the property of the Reorganized Access Lending. Except as expressly set forth herein, the Plan Administrator shall have the absolute right to pursue or not to pursue any and all claims, rights or Access Lending Causes of Action, as it determines are in the best interests of the holders of Reorganized Access Lending and consistent with the purposes of the Plan and shall have no liability for the outcome of its decision. The Plan Administrator may incur any reasonable and necessary expenses (up to the amount of the Access Lending Administrative Fund) in liquidating the Assets of Reorganized Access Lending.

    3.3.    <u>Liability of Plan Administrator; Indemnification</u>.

Neither, the Plan Administrator, its designees, agents or professionals, or its respective employees, shall be liable for any act or omission taken or omitted to be taken in its capacity as Plan Administrator or as designee, agent or professional thereof, other than for specific acts or omissions resulting from such Plan Administrator's willful misconduct, gross negligence or fraud. The Plan Administrator may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Administrator, unless such determination is based on willful misconduct, gross negligence, or fraud. Reorganized Access Lending shall indemnify and hold harmless the Plan Administrator, its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of Reorganized Access Lending or the Plan or the discharge of their duties hereunder; <u>provided, however</u>, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud. Persons dealing with the Plan Administrator shall look only to the Assets of Reorganized Access Lending to satisfy any liability incurred by the Plan Administrator to such person in carrying out the terms of this Plan Administrator Agreement, and the Plan Administrator shall have no personal obligation to satisfy any such liability.

    3.4.    <u>Reliance by Plan Administrator</u>.

3

The Plan Administrator may rely, and shall be fully protected in acting, or refraining from acting, on any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document ("Document") that the Plan Administrator has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles or e-mails, to have been sent by the proper party or parties, and the Plan Administrator may rely as to the truth of the statements and correctness of the opinions expressed in any Document. The Plan Administrator may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by the Plan Administrator in accordance therewith.

3.5.   Investment and Safekeeping of Reorganized Access Lending Assets.

The right and power of the Plan Administrator to invest the Assets of Reorganized Access Lending, the proceeds thereof, or any income earned by the Reorganized Access Lending, shall be limited to the investment guidelines of Bankruptcy Code Section 345. The Plan Administrator may expend the cash of Reorganized Access Lending (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective Assets of Reorganized Access lending during liquidation, (ii) to pay the respective reasonable administrative expenses (including, but not limited to, any taxes imposed on Reorganized Access Lending) and (iii) to satisfy other respective liabilities incurred by Reorganized Access Lending in accordance with the Plan and this Plan Administrator Agreement (including, without limitation, the payment of any taxes).

3.6.   Expense Reimbursement and Compensation.

(a)   The Assets of Reorganized Access Lending shall be subject to the claims of the Plan Administrator, and the Plan Administrator shall be entitled to reimburse itself out of any available cash in the Reorganized Access Lending, for its actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Plan Administrator may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Plan Administrator under this Plan Administrator Agreement subject to Article 10.F.4 of the Plan. As compensation for the performance of its duties, the Plan Administrator shall be compensated in a fashion similar to that provided for the Liquidating Trustee as set forth in the letter agreement annexed thereto including at the same rate of pay provided for the Liquidating Trustee in the Liquidating Trust Agreement. The Plan Administrator shall keep separate records for the work performed for Reorganized Access Lending and only Reorganized Access Lending shall be responsible to pay those bills. Notwithstanding the foregoing, the Plan Advisory Committee shall have authority in the exercise of its sole and reasonable discretion to enter into such modifications of the Liquidating Trustee's compensation terms as it deems desirable and necessary to further the intent and purpose of the Plan. Any such changes to the Liquidating Trustee's compensation shall also apply to the compensation to be paid to the Plan Administrator.

(b)   If the cash in Reorganized Access Lending is depleted, the Plan Administrator shall be able to add additional amounts, pursuant to the terms of the Plan, to the Access Lending Administrative Fund to prosecute the Access Lending Causes of Action or for

administrative and other miscellaneous needs of Reorganized Access Lending, such as to compensate and reimburse the Plan Administrator, including any professionals and third parties retained by the Plan Administrator, without further notice or motion, and such additional amounts shall be funded from the Assets of Reorganized Access Lending in accordance with Article 10.F.1 of the Plan.

(c) Notwithstanding anything to the contrary contained in this Plan Administrator Agreement, all payments to or on behalf of the Plan Administrator, the funding of reserves and distributions and payments under the Plan are subject to Article 10.F.4 of the Plan.

3.7. <u>Insurance; Bond.</u>

The Plan Administrator shall obtain insurance coverage with respect to the liabilities and obligations of the Plan Administrator under this Plan Administrator Agreement. Such coverage may be combined, to the extent appropriate, with the coverage obtained by the Liquidating Trustee under the Trust Agreement. The cost and expense of the insurance coverage for Reorganized Access Lending shall be paid by Reorganized Access Lending.

3.8. <u>Confidentiality.</u>

The Plan Administrator shall, during the period that it serves as Plan Administrator under this Plan Administrator Agreement and for a period of twelve (12) months following the earlier of the termination of this Plan Administrator Agreement or its removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Assets of Reorganized Access Lending relates or of which it has become aware in its capacity as Plan Administrator.

## ARTICLE IV

## REPORTS BY THE PLAN ADMINISTRATOR

4.1. <u>Quarterly Reports.</u>

Beginning with the first full month following the Effective Date, or as soon as practicable thereafter, the Plan Administrator shall prepare and file with the Bankruptcy Court on a timely basis and shall serve on the Plan Advisory Committee and the U.S. Trustee the quarterly post-confirmation reports required by Bankruptcy Code Section 1106(a)(7) and U.S. Trustee Guidelines, and a report describing or listing the statuses of litigations involving Reorganized Access Lending or the Assets of Reorganized Access Lending and listing the Assets of Reorganized Access Lending disposed of during the reporting period. Such quarterly reports shall be served and filed until such time as the Reorganized Access Lending has been dissolved.

4.2. <u>Other Reporting.</u>

The Plan Administrator shall file (or cause to be filed) any other statements, tax returns, returns or disclosures relating to Reorganized Access Lending that are required by any governmental authority.

## ARTICLE V

## DISSOLUTION OF REORGANIZED ACCESS LENDING

5.1.  Dissolution of Reorganized Access Lending.

Reorganized Access Lending will be dissolved by the Plan Administrator as soon as practicable after the liquidation, administration and distribution of the Assets of Reorganized Access Lending in accordance with the terms of this Plan Administrator Agreement and the Plan, and its full performance of all other duties and functions set forth herein or in the Plan. The Plan Administrator shall not unduly prolong the duration of Reorganized Access Lending and shall at all times endeavor to resolve, settle or otherwise dispose of all Assets of Reorganized Access Lending and to effect the distribution of the Assets of Reorganized Access Lending to the holders of Allowed Access Lending A/P/S Claims in accordance with the terms hereof and dissolve Reorganized Access Lending as soon as practicable.

## ARTICLE VI

## AMENDMENT AND WAIVER

6.1.  Amendment and Waiver.

Any substantive provision of this Plan Administrator Agreement may be amended only upon approval of the Bankruptcy Court upon motion as is required by the Plan or this Plan Administrator Agreement.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

7.1.  Preservation of Privilege and Defenses.

In connection with the rights, claims, and Access Lending Causes of Action that constitute the Assets of Reorganized Access Lending, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) belonging to Reorganized Access Lending shall vest in the Plan Administrator as the sole officer and director of Reorganized Access Lending and the Plan Administrator is authorized to take all necessary actions to preserve and protect such privileges and available defenses.

7.2.  Cooperation and Further Assurances of the Debtors.

The Debtors shall, upon reasonable request of the Plan Administrator, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to enable to Plan Administrator to deal with the Assets of Reorganized Access Lending. The Debtors shall also, upon reasonable request of the Plan Administrator, provide additional documentation or information necessary to resolve Claims and resolve and prosecute all Access Lending Causes of Action.

7.3. <u>Laws as to Construction</u>.

This Plan Administrator Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of law.

7.4. <u>Severability</u>.

If any provision of this Plan Administrator Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Plan Administrator Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Plan Administrator Agreement shall be valid and enforced to the fullest extent permitted by law.

7.5. <u>Notices</u>.

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

If to the Debtors:

O'Melveny & Myers LLP
Attn:   Suzzanne Uhland, Esq.
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111
Phone: (415) 984-8941
Fax:    (415) 984-8701

and

Richards, Layton & Finger, P.A.
Attn:   Mark D. Collins, Esq.
One Rodney Square
Box 551
Wilmington, DE 19899
Phone: (302) 651-7700
Fax:    (302) 651-7701


If to Reorganized Access Lending:

Reorganized Access Lending
Attn:   Alan M. Jacobs
AMJ Advisors LLC

999 Central Avenue
Woodmere, New York 11598
Phone: (516) 791-1100
Fax:   (212) 931-2300

with copies to:

Hahn & Hessen LLP
Attn:  Mark S. Indelicato, Esq.
       Mark T. Power, Esq.
488 Madison Avenue, 15th Floor
New York, New York 10022
Phone: (212) 478-7200
Fax:   (212) 478-7400

7.6.  <u>Headings</u>.

The section headings contained in this Plan Administrator Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Plan Administrator Agreement or of any term or provision hereof.

7.7.  <u>Relationship to the Plan</u>.

The principal purpose of this Plan Administrator Agreement is to aid in the implementation of the Plan. This Plan Administrator Agreement, together with the Plan, which is attached as an Exhibit hereto, shall be construed as integrated and complimentary of each other and intended to carry out the terms of the Plan. To that end, the Plan Administrator shall have full power and authority, except as otherwise set forth in this Plan Administrator Agreement, to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Plan Administrator Agreement. If any provisions of this Plan Administrator Agreement are found to be inconsistent with the provisions of the Plan, the provisions of this Plan Administrator Agreement and the Confirmation Order shall control.

7.8.  <u>Exclusive Jurisdiction and Standing</u>.

As provided in Article 14 of the Plan, the Bankruptcy Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Plan Administrator Agreement. The Plan Administrator shall have standing in any such proceeding to enforce the rights of Reorganized Access Lending.

**(THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.)**

IN WITNESS WHEREOF, the Debtors and the Plan Administrator have either executed or acknowledged this Plan Administrator Agreement, or caused it to be executed or acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Debtors and Debtors in Possession

By:_____
    Name:_____
    Title:_____

The Plan Administrator hereby accepts the position of Plan Administrator for Reorganized Access Lending

_____
Alan M. Jacobs, as Plan Administrator

IN WITNESS WHEREOF, the Debtors and the Plan Administrator have either executed or acknowledged this Plan Administrator Agreement, or caused it to be executed or acknowledged on their behalf by their duly authorized officers all as of the date first above written.

        Debtors and Debtors in Possession

        By:_____
            Name:_____
            Title:_____

The Plan Administrator hereby accepts the position of Plan Administrator for Reorganized Access Lending

_____
Alan M. Jacobs, as Plan Administrator