UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| NEW CENTURY HOLDINGS, INC., a Delaware ) | Case No. 07-10416 (KJC) |
| corporation, et al. ) | Jointly Administered |
| Debtor. ) | |
| ) | Proposed Hearing Date: 4/24/08@ 10:00 P.M. (EDT) |
| | Relates to Docket Nos. 5405, 6407 & 6396 |

**MOTION OF AD HOC COMMITTEE OF DEFERRED
COMPENSATION PLAN AND SERP BENEFICIARIES TO
STRIKE DECLARATIONS OF HOLLY FELDER ETLIN
AND TODD BRENTS IN SUPPORT OF CONFIRMATION
OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN
OF LIQUIDATION AS OF APRIL 23, 2008**

Gregory J. Schroeder, Michelle Parker, Martin Warren, Steve Holland, and Nabil Bawa, and the Ad Hoc Committee of the New Century Financial Corporation Deferred Compensation Plan and SERP for themselves and all others similarly situated (collectively, "Movants"), hereby move the Court for an Order striking from the record the Declarations of Holly Felder Etlin and Todd Brents in support of confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors (the "Committee") as of April 23, 2008 (the "Etlin Declaration" and "Brents Declaration," respectively; collectively, the "Declarations") based upon the following:

1.      After a Hearing on March 5, 2008, this Court entered an "Agreed Scheduling Order Between the Debtors and the Ad Hoc Committee of Participants in the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan" dated March 26, 2008 (the "Scheduling Order") [Docket No. 5526]. The Scheduling Order sets forth the terms, conditions, and timing of discovery relating to

disputes between Movants, the Debtors, and the Committee concerning the First Amended Joint Chapter 11 Plan of Liquidation for the Debtors and Committee (the "Plan") [Docket No. 5405].

2. Among other things, the Scheduling Order required the Debtors and the Committee to:

> [P]rovide a list of any expert witnesses they intend to use at the confirmation hearing (the "Confirmation Hearing ") to establish a case for substantive consolidation and/or the fairness of a series of Fed. R. Bankr. P. 9019 compromises and any related distribution protocols by March 28, 2008. For purposes of this Order, an "expert" shall mean any witness sought to be qualified, in whole or in part, as an expert under Federal Rule of Evidence 702 offering testimony to the extent of such expert testimony, including a witness who is also a "fact" witness. A summary of each proposed expert's testimony shall also be provided on or before March 28, 2008.

Scheduling Order at ¶1. Neither the Debtors nor the Committee (i) identified any expert witness that they intend to use at the Confirmation Hearing, or (ii) provided a summary of any proposed expert's testimony by March 28, 2008 (or any time thereafter).

3. The Debtors filed and served the Brents Declaration on April 22, 2008 [Docket No. 6396] and the Etlin Declaration on April 23, 2008 [Docket No. 6407]. A cursory review of the Declarations reveals that Ms. Etlin and Mr. Brents are being offered as experts dressed up as fact witnesses.

4. Tellingly, both Declarations contain multi-paragraph sections setting forth the declarant's background, training, and experience, particularly in the areas of accounting, finance, restructuring, and reorganization. Such information could only have relevance in the context of the Confirmation Hearing if the witnesses were going to provide expert, as opposed to fact, testimony.

5. The Declarations are replete with assertions that are based on the work done by Ms. Etlin and Mr. Brents in their roles as the Debtors' restructuring advisors. For example, the Brents Declaration chronicles his conclusions regarding asset classes, KMPG's acts and omissions; and intercompany balances. All of this testimony is based on Mr. Brents' after-the-fact investigation and analysis of events that predated his connection to the Debtors, based upon information supplied to him by members of his team and the Debtors' other professionals and consultants, his review of documents, and his experience and knowledge. *See* Brents Declaration at ¶2. Testimony of this sort -- analysis of legal/financial matters by a hired professional who offers his interpretation, analysis, and conclusions -- is classic expert testimony.

6. The Declarations are also chock-full of rank opinion testimony. For example, the Etlin Declaration states Ms. Etlin's belief:

(i) As to the asserted reasonableness and necessity of the Plan's classification scheme (¶9);

(ii) That there are no claims of the type specified in §507(a)(3) of the Bankruptcy Code (¶10);

(iii) That the Plan provides adequate means for its implementation (¶11);

(iv) That the Plan provides a more efficient vehicle to accomplish the goal of liquidating the Estates and distributing the proceeds than a Chapter 7 Plan, and that recoveries under the Plan will exceed those if this case were converted to a Chapter 7 (¶17);

(v) That a Chapter 7 would adversely affect the recovery of tax refunds, and that a Chapter 7 Trustee would have difficulty realizing value with respect to the Carrington Interest (¶19);

(vi) That if the case were converted to a Chapter 7, the Plan compromises and settlements would unravel, leading to increased professional fees (¶21);

(vii) That a Chapter 7 liquidation would not likely be able to realize the benefits of the EPD/Breach Protocol, thereby increasing costs and delaying distributions (¶22);


(viii) That conversion to Chapter 7 would have a negative impact on litigation recoveries (¶23);

(ix) That conversion to Chapter 7 would entail expenditure of an additional $19.525 Million in professional fees (¶26);

(x) That the Creditors will receive more under the Plan than they would under Chapter 7 (¶30);

(xi) That the Plan is feasible (¶35); and

(xii) That "the series of interrelated compromises contained in the Plan form a global settlement of the key issues among the Debtors' Estates and their various creditor constituencies" (¶42).

7. The Brents Declaration contains similar statements of opinion, including:

(i) That name changes and inconsistent accounting terminology led to allegedly "substantial confusion and uncertainty" concerning the ownership of assets of NCFC and NCTRS (¶9);

(ii) That it is not possible to determine which entity, NCFC or TRS, owns "certain major assets or potential causes of action":

(iii) That certain unsigned documents assertedly constitute agreements relating to the "Carrington Interest" (¶¶10-12);

(iv) That the Creditors of NCFC will benefit by the Plan's treatment of the "Carrington Interest" (¶14).

8. In short, both the Etlin and Brents Declarations constitute the testimony of expert witnesses. Because the Debtors failed to comply with the explicit requirements of the Scheduling Order regarding expert witness testimony, the Declarations should be stricken. The Debtors' failure to designate Ms. Etlin and Mr. Brents as expert witnesses has prejudiced Movants by depriving them of the ability to retain their own expert witnesses or to file a motion to exclude their testimony. Moreover, the eleventh-hour submission of the Declarations has deprived the Movants of a meaningful and timely opportunity to oppose them.

9. The Debtors cannot escape the just consequence of their failure to comply with the Scheduling Order -- striking the Declarations -- by arguing that the Declarations are admissible as opinion testimony of lay witness. The testimony in the Declarations is improper even if Ms. Etlin and Mr. Brents are deemed lay witnesses.

10. Federal Rule of Evidence 701 governs the scope of admissible lay opinion testimony. Rule 701, entitled "Opinion Testimony by Lay Witnesses," provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences, which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

11. The Debtors cannot satisfy the third prong of Rule 701. The Declarations are clearly based upon scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701(c). The Brents Declaration also fails in many respects to satisfy the first requirement of Rule 701 that the testimony be rationally based on the perception of the witness. *Cf.* Fed. R. Evid. 602 (witness must have personal knowledge of the matter on which he/she testifies). As noted above, Mr. Brents' analysis and conclusions are drawn from an investigation of events that pre-date his involvement with the Debtors and are based in large part on information supplied to him by others and from documents. *See* Brents Declaration at ¶2. Accordingly, this Court should not permit the Debtors, under the guise of Fed R. Evid. 701, to introduce the opinion testimony in the Declarations by charactering Ms. Etlin and Mr. Brents as lay or "fact", rather than expert, witnesses.

12. For all of the foregoing reasons, this Court should strike from the record the Declarations of Holly Felder Etlin and Todd Brents in support of confirmation of the Second

Amended Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors as of April 23, 2008.

Dated : April 24, 2007

**STEVENS & LEE, P.C.**

/s/ Joseph H. Huston, Jr.
JOSEPH H. HUSTON, JR. (NO. 4035)
1105 NORTH MARKET STREET, SUITE 700
WILMINGTON, DE 19801
TELEPHONE: (302) 425-3310
TELECOPIER: (610) 371-7972
EMAIL: JHH@STEVENSLEE.COM

-and-

**BERNSTEIN, SHUR, SAWYER & NELSON**

ROBERT J. KEACH
PAUL MCDONALD
100 MIDDLE STREET
P.O. BOX 9729
PORTLAND, ME 04104-5029
TELEPHONE: (207) 774-1200
TELECOPIER: (207) 774-1127
EMAIL: RKEACH@BERNSTEINSHUR.COM
         PMCDONALD@BERNSTEINSHUR.COM