# EXHIBIT A

# Engagement Letter

# LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

March 29, 2007

New Century Financial Corporation
18400 Von Karman Avenue, Suite 1000
Irvine, CA 92612

Attention:   Board of Directors

Ladies and Gentlemen:

This letter confirms the retention, as of March 8, 2007, by New Century Financial Corporation (together with its controlled subsidiaries, the "Company") of Lazard Frères & Co. LLC ("Lazard") to act as investment banker to the Company. We will advise the Company in connection with a variety of financial matters, including a review of the Company's financial position and existing obligations, and a review and evaluation of possible strategic alternatives, liquidity alternatives and transactions. We will also advise the Company in connection with any Non-Bankruptcy Sale Transaction,[1] Restructuring,[2] Bankruptcy Sale Transaction[3] or Alternative

---

[1] As used in this Agreement, the term "Non-Bankruptcy Sale Transaction" means any transaction or series of transactions, which is consummated in full while the Company is not a debtor in bankruptcy proceedings, is not consummated as part of a "pre-packaged" or "pre-arranged" plan conceived prior to the Company's entering bankruptcy and is not consummated in connection with the Company's exit from bankruptcy as part of a plan developed in connection with any bankruptcy proceedings, involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which a majority of the Company's assets as a whole, or a majority of the Company's secured assets, are, directly or indirectly, combined with another company or companies; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof, constituting a majority of the then outstanding stock of the Company or possessing a majority of or controlling interest in the then outstanding voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of a majority of the assets, secured assets, equity securities or other interests of the Company or a controlling interest in the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of a majority or controlling interest in the Company to a third party or parties (provided, that foreclosure sales of loan portfolios by the current holders of such portfolios in connection with the Company's default on its agreements with such holders and failure to remedy (by repurchasing such portfolios or otherwise) ("Foreclosure Sales") shall not be included in calculating whether a majority of the assets, secured assets, or other relevant interests of the Company have been purchased or acquired). Furthermore, a Non-Bankruptcy Sale Transaction involving the purchase or acquisition by a buyer or buyers of a majority or control of the equity interests, stock or voting power of the Company or an otherwise controlling interest in the Company shall be considered a "Non-Bankruptcy Control Sale" and any other type of Non-Bankruptcy Sale Transaction shall be considered (i) a "Non-Bankruptcy Other Assets Sale" if such transaction (or series of transactions) does not involve the servicing and origination business (the "S&O Business") of the Company or (ii) a "Full Non-Bankruptcy Sale" if such transaction (or series of transactions) involves the S&O Business.

[2] As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a majority of the Company or the Company's assets, secured assets, securities, instruments or other interests that is

LAZARD

Transaction[4] pursued by the Company. If requested by the Board of Directors of the Company (the "Board") in circumstances in which Lazard customarily renders an opinion, we will render an opinion (the "Opinion") to the Board with respect to the fairness, from a financial point of view, (i) to the common stockholders of the Company of the consideration to be paid to such common stockholders in the case of a Non-Bankruptcy Sale Transaction involving the sale of common stock of the Company for which such stockholders are paid consideration or (ii) to the Company of the consideration to be paid to the Company pursuant to a Non-Bankruptcy Sale Transaction other than a Non-Bankruptcy Sale Transaction described in the preceding clause. The Opinion shall be in such customary form and with such qualifications as determined appropriate by Lazard, including that Lazard has relied upon information furnished to it by the Board, the Company and any relevant third party and publicly available information, has assumed the accuracy and completeness of such information and has not assumed any responsibility for independent verification of such information. By signing this letter, we hereby accept our appointment as the Company's investment banker under the terms hereof.

We will act as the Company's investment banker until our engagement is terminated pursuant to paragraph 6, subject to the following conditions:

1. The Company will furnish or cause to be furnished to us such current and historical financial information and other information regarding the business of the Company as we may reasonably request. The Company represents and warrants to us that, to the best of its knowledge, all of the foregoing information relating to the Company (other than financial forecasts and estimates relating to the Company which the Company represents will be prepared on a reasonable basis) will be accurate and complete in all material respects at the time it is furnished, and agrees to keep us advised of all material

---

achieved, without limitation, through a solicitation of waivers and consents, rescheduling of debt maturities, repurchase, settlement or forgiveness of debt, conversion of debt into equity, an exchange offer involving new securities, issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests, or other similar transaction or series of transactions (provided, that Foreclosure Sales shall not be included in calculating whether all or a majority of the Company or the Company's assets, secured assets, instruments or other interests have been restructured, reorganized or recapitalized).

[3] As used in this Agreement, a "Bankruptcy Sale Transaction" shall mean any direct or indirect sale or series of direct or indirect sales, which is consummated in any part while the Company is a debtor in bankruptcy proceedings, is consummated as part of a "pre-packaged" or "pre-arranged" plan conceived prior to the Company's entering bankruptcy or is consummated in connection with the Company's exit from bankruptcy as part of a plan developed in connection with any bankruptcy proceedings, of all or a substantial portion of the Company or the assets, secured assets, equity securities or other interests of the Company. Furthermore, a Bankruptcy Sale Transaction shall be considered (i) a "Bankruptcy Other Assets Sale" if such transaction (or series of transactions) does not involve the S&O Business of the Company or (ii) a "Full Bankruptcy Sale" if such transaction (or series of transactions) involves the S&O Business. For the avoidance of doubt, a Bankruptcy Sale Transaction involving solely equity securities or similar interests of the Company shall be considered a Bankruptcy Other Assets Sale if the S&O Business is not part of the Company when such transaction is consummated and a Full Bankruptcy Sale if otherwise.

[4] As used in this Agreement, an "Alternative Transaction" shall mean any transaction or series of transactions, whether consummated in or out of bankruptcy, involving a sale, directly or indirectly, of any significant assets, secured assets, equity securities or other interests of the Company or restructuring, reorganization or recapitalization of a significant portion of the Company or the Company's assets, secured assets, securities, instruments or other interests that cannot be categorized as a Non-Bankruptcy Sale Transaction or Bankruptcy Sale Transaction; provided, that the currently contemplated sale of those certain taxable REIT subsidiary residual securities to Lehman Brothers for approximately $70,000,000 shall not be considered an Alternative Transaction.

-2-

LAZARD

developments of which the Company becomes or reasonably should become aware that materially affect the Company or its financial position. In connection with our activities hereunder, the Company authorizes us to make appropriate use of such information, including discussing it with any third parties as to whom and on such conditions as we may mutually agree. The Company also agrees to use reasonable efforts to cause any relevant third party to provide us with such information concerning such party as we reasonably deem necessary in connection herewith. In performing its services pursuant to this Agreement, Lazard shall rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of the Opinion or any other aspect of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board, the Company, management or shareholders with respect thereto.

2. In consideration of our services, the Company agrees to pay us the following fees:

(a) A retainer of $1,000,000 (the "Retainer") payable upon the execution of this Agreement. Payment of the Retainer shall be credited (without duplication) against a Strategic Advisory Fee, as defined below in 2(d), a Bankruptcy Sale Fee, as defined below in 2(e), or an Alternative Transaction Fee, as defined below in 2(f);

(b) A monthly financial advisory fee (the "Monthly Fee") of $200,000 payable upon the 1st day of each month during the term of this engagement, with the first such payment due on April 1, 2007. All Monthly Fees paid shall be credited (without duplication) against a Strategic Advisory Fee, an Alternative Transaction Fee or a Bankruptcy Sale Fee;

(c) A fee equal to $2,000,000 (an "Announcement Fee"), payable upon announcement of, or the execution of a definitive agreement for, a Non-Bankruptcy Sale Transaction, Restructuring or Bankruptcy Sale Transaction. An Announcement Fee shall be credited (without duplication) against a Strategic Advisory Fee, an Alternative Transaction Fee or a Bankruptcy Sale Fee;

(d) A fee equal to $5,000,000, payable upon the consummation of a Non-Bankruptcy Other Assets Sale, and a fee equal to $7,000,000, payable upon the consummation of either a Full Non-Bankruptcy Sale or a Non-Bankruptcy Control Sale (each of such fees, a "Strategic Advisory Fee");

(e) A fee equal to $5,000,000, payable upon the consummation of a Bankruptcy Other Assets Sale, and a fee equal to $7,000,000, payable upon the consummation of a Full Bankruptcy Sale (each of such fees, a "Bankruptcy Sale Fee"); and

(f) A fee to be mutually agreed in good faith (an "Alternative Transaction Fee"), payable in connection with any Alternative Transaction, which will appropriately compensate us in light of the magnitude and complexity of the Alternative Transaction

LAZARD

and the fees customarily paid to investment bankers of similar standing for similar transactions. Any Alternative Transaction Fee shall be credited (without duplication) against a Strategic Advisory Fee or a Bankruptcy Sale Fee.

- Notwithstanding anything to the contrary herein, it is agreed that the aggregate fees paid to Lazard hereunder shall not exceed $7,000,000.

3. The Company agrees to reimburse us for all our reasonable expenses incurred in connection with the performance of this engagement. Generally, these expenses include travel costs, document production and other expenses of this type, and will also include the reasonable expenses of outside counsel and other professional advisors; provided, however, that Lazard shall not retain outside counsel or other professional advisors the reasonable expenses of which it would be entitled to reimbursement hereunder without the Company's prior consent, which consent shall not be unreasonably withheld. All payments to be made by the Company pursuant to this Agreement shall be made promptly after such payments accrue hereunder.

4. No fee payable to any other person or entity, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5. As of the date hereof, the Company and Lazard are entering into an indemnification letter (the "Indemnification Letter") in the form attached hereto. The Indemnification Letter shall survive any termination or expiration of this Agreement.

6. Our engagement hereunder may be terminated by the Company or us, with or without cause, at any time without liability or continuing obligation to the Company or us, except that following such termination we shall remain entitled to any fees accrued pursuant to paragraph 2 but not yet paid prior to such termination and to reimbursement of reasonable expenses incurred prior to such termination but not yet reimbursed pursuant to paragraph 3. In addition, in the case of termination by the Company other than due to Lazard's bad faith or gross negligence, we shall remain entitled to full payment of any Announcement Fee, Strategic Advisory Fee, Alternative Transaction Fee and Bankruptcy Sale Fee as contemplated by paragraph 2 hereof in respect of any Restructuring, Non-Bankruptcy Sale Transaction, Alternative Transaction or Bankruptcy Sale Transaction that is announced, or for which an agreement is entered into, during the period from the date hereof until one year following such termination (the "Tail Period"); provided, however, that if during the Tail Period the Company requests that we provide the type of services contemplated by this Agreement in connection with a particular Restructuring, Non-Bankruptcy Sale Transaction, Alternative Transaction or Bankruptcy Sale Transaction, and offers to cause the Company to pay us additional Monthly Fees as contemplated by this Agreement during the period in which we provide such services, and we decline to provide such services, we will not be entitled to any Announcement Fee, Strategic Advisory Fee, Alternative Transaction Fee or Bankruptcy Sale Fee in respect of such particular Restructuring, Non-Bankruptcy Sale Transaction, Alternative Transaction or Bankruptcy Sale Transaction, as the case may be.

LAZARD

7. Any advice, written or oral, rendered by us pursuant to this Agreement is intended solely for the benefit and use of the Board and senior management of the Company in considering the matters to which this Agreement relates. The Company agrees that except as required by law (in which case the Company shall obtain Lazard's consent (which shall not be unreasonably withheld) as to the form of any disclosure and shall, to the extent reasonably requested by Lazard, seek confidential treatment of any disclosed information; it being understood, however, that Lazard shall not request that confidential treatment be sought in respect of references to Lazard or its Opinion required, under the federal securities laws, to be included in a proxy statement of the Company or a Schedule 14D-9 of the Company, as long as the Opinion is disclosed in its entirety and Lazard consents to the form of any other references to Lazard or its Opinion (such consent not to be unreasonably withheld)), such advice may not be disclosed publicly or made available to third parties without the prior written consent of Lazard, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the U.S. federal income tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard will not be responsible for and will not provide any tax, accounting, actuarial, legal or other specialist advice.

8. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company and Lazard. The Company's obligations herein shall be joint and several.

9. Lazard has been retained under this Agreement as an independent contractor, and it is understood and agreed that this Agreement does not create a fiduciary relationship between Lazard and the Board or the Company. Lazard agrees that it will use reasonable efforts to avoid taking any actions that would preclude it from advising the Company in any bankruptcy proceeding.

10. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the Board's or the Company's decision to pursue (or not pursue) any business strategy or to effect (or not effect) any Restructuring or other transaction. Lazard shall not have any obligation or responsibility to provide business consultant services to the Board or the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

11. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. Each of the parties hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become

LAZARD

unreasonable in any legal proceeding. Each of the parties waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

12. No waiver, amendment or other modification of this Agreement shall be effective unless it is in writing and signed by all of the parties hereto.

13. This Agreement and the Indemnification Letter supercede in entirety the engagement letter and indemnification agreement between the parties hereto dated as of March 8, 2007.

14. If the foregoing correctly sets forth the understanding among the parties, please so indicate on the enclosed signed copy of this Agreement in the space provided therefor and return it to us, whereupon this Agreement shall constitute a binding agreement among the parties.

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
~~David S. Kurtz~~ J. BLAKE O'DOWD
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

NEW CENTURY FINANCIAL CORPORATION, on behalf of itself and its controlled subsidiaries

By _____
Name:
Title: