## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 |
|  | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS,** | : |  |
| **INC.,** *et al.*[1] | : | Case No. 07-10416 (KJC) |
| Debtors | : |  |

## MEMORANDUM[2]

## BY:  KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

The following two motions are currently before the Court for consideration:

(1)    Motion of Michael J. Missal, Examiner, for Order Discharging the Examiner, Granting Relief From Third-Party Discovery, and Establishing Procedures for the Disposition and Sharing of Certain Documents and Information (docket no. 8665)(the Examiner's Motion"); and

(2)    Motion by the New Century Liquidating Trustee and Reorganized New Century Warehouse Corporation for an Order Permitting the Transfer to the Liquidating

---

[1]The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited liability partnership. These entities are referred to herein as the "Debtors" or "New Century," collectively.

[2]This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a).  Venue is proper pursuant to 28 U.S.C. § 1409.  This contested matter involves a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and (O).

Trustee of Certain Documents by the Former Official Committee of Unsecured Creditors (docket no. 9044)(the "Liquidating Trustee's Motion").

For the reasons set forth herein, the Examiner's Motion and the Liquidating Trustee's Motion, to the extent it is not moot, will be granted, in part.[3] To the extent the Examiner's Motion seeks an order providing that the sharing of documents does not cause a waiver of any applicable protection or privilege, that relief will be denied, without prejudice.

## BACKGROUND

New Century TRS Holdings, Inc. and its affiliates filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code on April 2, 2007.  On June 1, 2007, the Court directed the United States Trustee to appoint an examiner pursuant to 11 U.S.C. §1104(c)(1) to perform the following duties:

> (a) investigate any and all accounting and financial statement irregularities, errors or misstatements, including but not limited to such irregularities, errors or misstatements that (i) gave rise to the announced need to restate the Debtors' financial statements for the first three quarters of 2006 and/or (ii) led the Debtors' management and Audit Committee to conclude that it was more likely than not that pre-tax earnings in the 2005 financial statements were materially overstated, and identify and evaluate any claims or rights of action that the estates might have arising from or relating to such irregularities, errors or misstatements, (b) investigate any possible post-petition unauthorized use of cash collateral by the Debtor, and (c) otherwise perform the duties of an examiner set forth in section 1106(a)(3) (as limited by this order) and 1106(a)(4) of the Bankruptcy Code (collectively, the "Investigation").

Order dated June 1, 2007, ¶3 (docket no. 1023)(the "June 1, 2007 Order").  This Order also directed the examiner to prepare and file a report as required by Bankruptcy Code §1106(a)(4). *Id.* at ¶5.  The June 1, 2007 Order further provides that:

---

[3]*See* Liquidating Trustee Motion, p. 2 (stating that the Liquidating Trustee Motion would be rendered moot if the court grants the Examiner's Motion regarding transfer of the KPMG Materials).

10.    The Examiner shall cooperate fully with any governmental agencies ( . . .
including, but not limited to, any federal, state or local government agency, that
may be investigating the Debtors, its management or its financial condition), and
the Examiner shall use best efforts to coordinate with such agencies in order to
avoid unnecessary interference with, or duplication of, any investigations
conducted by such agencies.

. . . .

12.    Subject to any applicable confidentiality agreement between the Committee and
the Debtors, the Committee shall provide the Examiner with access to all
materials it has received in response to discovery authorized by the Court or
voluntarily provided by the Debtors, and the Examiner and the Committee shall
cooperate and coordinate their efforts to assure, to the extent possible, that their
investigations are not unduly duplicative.

*Id.*, at ¶10, ¶12. On June 5, 2007, the United States Trustee appointed Michael J. Missal as the

examiner (the "Examiner"). The Court approved that appointment on June 7, 2007 (docket no.

1162).

On October 10, 2007, the Court amended its June 1, 2007 Order to extend the deadline

for filing the Examiner's report and to provide that any report filed by the Examiner be filed

initially under seal (the "October 10, 2007 Order")(docket no. 3261).

On November 21, 2007, the Examiner filed his First Interim Report related to the possible

unauthorized post-petition use of cash collateral by the Debtors (docket no. 3934). On February

29, 2008, the Examiner filed his Final Report (docket no. 5132).

On July 15, 2008, this Court entered an Order (docket no. 8596) confirming the Debtors'

Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") and appointing Alan M.

Jacobs as the Liquidating Trustee of the Debtors (the "Liquidating Trustee").

(1)    <u>The Examiner's Motion.</u>

On July 29, 2008, the Examiner filed the Examiner's Motion, which seeks the following

3

relief:

(a)    an order noting that the Examiner has completed his duties under the June 1, 2007 Order and discharging him from further commitments or representations, except that the Examiner shall continue to cooperate with entities including governmental agencies, the office of the United States Trustee, and the Liquidating Trustee;

(b)    permission to transfer portions of the Investigative Record and Other Investigative Materials[4] to the Liquidating Trustee, including privileged material received from the Debtors and KPMG[5], and permission to destroy documents as the Examiner deems appropriate;

(c)    an order providing that the Examiner's sharing of documents or information with governmental agencies, the office of the United States Trustee and the Liquidating Trustee does not cause or constitute a waiver of any applicable protection belonging to the Examiner, including, but not limited to, the attorney-client privilege or the work product doctrine;

(d)    an order precluding any third party from issuing or serving upon the Examiner or

---

[4]The Examiner's Motion defines these terms as follows:

(a)    "Investigative Record" means the millions of pages of documents produced to the examiner during the investigation by a number of parties, including the Debtors, the Debtors' independent auditors, KPMG, LLP ("KPMG"), and the Debtors' independent directors. The Investigative Record includes the Debtors' Privileged Materials and KPMG's Materials, as defined in n.4 [of the Motion].

(b)    "Other Investigative Materials" means the documents created or compiled by the Examiner and/or his professionals (including his legal counsel, Kirkpatrick & Lockhart Preston Gates Ellis LLP ("K&L Gates"), and Saul Ewing, LLP ("Saul") and his forensic accountants, BDO Seidman LLP ("BDO")) that are protected from discovery by the attorney/client privilege or the work product doctrine. This term does not include documents relating to requests for information received by the Examiner or his professionals from governmental agencies.

[5]The Debtors produced certain privileged and potentially privileged documents to the Examiner pursuant to an Order dated October 10, 2007 (docket no. 3261), in which the Court ordered that production of such documents did not constitute a waiver of any applicable privileges belonging to the Debtors (the "Debtors' Privileged Materials"). After extensive negotiations and two hearings before this Court regarding the Examiner's request for a subpoena, KPMG produced documents to the Examiner pursuant to a Protective Order dated August 21, 2007 (docket no. 2368), which, among other things, limited the Examiner's ability to disseminate those materials and preserved KPMG's jurisdictional arguments, including arguments based upon the Discovery Limitation Provision in the Arbitration Agreement in the Engagement Letters between KPMG and the Debtors (the "KPMG Materials").

4

his professionals any formal or informal discovery request relating to the Investigative Record or Other Investigative Materials, unless the third party demonstrates that it cannot obtain the documents from any other source; and

(e)     approval to be reimbursed for time and expenses incurred with respect to handling the Investigative Record and Other Investigative Materials, cooperating with governmental entities, the Liquidating Trustee and others specified in the Motion, and responding to discovery requests.

Although four objections to the Examiner's Motion were filed, none objected to the

Examiner's request to be discharged from his duties.  The objections were as follows:

(I)     An objection filed by former officers and underwriters of the Debtors (docket no. 8867), who are defendants in a consolidated shareholder securities fraud class action pending in the Central District of California as Case No. 2:07-cv-00931 (DDP) (the "Class Action), concerning the Examiner's requests to be relieved of third-party discovery and to share documents and information (the "Former Officers' Objection").

(ii)    An objection filed by the New York State Teachers' Retirement System (docket no. 8870), lead plaintiff in the Class Action, also objecting to the Examiner's requests regarding third-party discovery and the guidelines for destruction of documents (the "NYSTS Objection").[6]

(iii)   An objection filed by the Liquidating Trustee (docket no. 8869) concerning the potential fees and expenses that the Examiner and his professionals may seek to have paid if they perform additional services (the "Liquidating Trustee Objection").

(iv)    An objection filed by KPMG (docket no. 8873) concerning the Examiner's request for sharing KPMG Materials with the Liquidating Trustee  (the "KPMG Objection").

On September 18, 2008, the court held a hearing to consider the Examiner's Motion and

the objections.  Just prior to that hearing, the Examiner and the Liquidating Trustee each filed a

---

[6]The parties have resolved their differences over the Examiner's request to destroy documents by agreeing to procedures for destruction as now embodied  in paragraph 8 of the Order accompanying this Memorandum. Although KPMG did not agree specifically to the proposed language in the NYSTS order, KPMG asked for at least 20 notice prior to any destruction of records.  The compromise language requires 30 days' notice of any motion for authority to destroy records.

"response" to the objections (dockets nos. 8954 and 8960, respectively). At the September 18, 2008 hearing, the parties agreed to meet and discuss a form of order to resolve the objections to the Examiner's Motion. After conferring and exchanging proposed forms of orders, the parties resolved some issues, but important differences remained. On November 7, 2008, the NYSTS filed a Supplemental Response to the Examiner's Motion (docket no. 9117), attaching its proposed form of order. Also on November 7, 2008, KPMG filed a Supplemental Brief and its proposed form of order regarding the Examiner's Motion (docket no. 9119).

A second hearing regarding the Examiner's Motion was heard on November 19, 2008, at which time the Liquidating Trustee, NYSTS and KPMG each provided the Court with their own versions of proposed forms of order regarding the Examiner's Motion for the Court's consideration.

   (2)    The Liquidating Trustee's Motion.

On October 7, 2008, the Liquidating Trustee filed a motion for entry of an order permitting the former Official Committee of Unsecured Creditors (the "Creditors' Committee") to transfer to the Liquidating Trustee certain documents that had been provided to the former Creditors' Committee or its counsel by KPMG pursuant to Bankruptcy Rules 2004 and 9016. KPMG filed an objection to the Liquidating Trustee's Motion. (Docket no. 9118) and the matter was heard by the Court along with the Examiner's Motion on November 19, 2008. The Liquidating Trustee states that his motion will be rendered moot if the Court grants that portion of the Examiner's Motion which provides for the transfer of the KPMG Materials from the Examiner to the Liquidating Trustee.

## DISCUSSION

No party disputes that the Examiner has completed his duties as described in the June 1,

2007 Order and, accordingly, he will discharged from further performance of those duties, except

the Examiner shall continue to cooperate with entities including governmental agencies, the

office of the United States Trustee, and the Liquidating Trustee.  Objections remain outstanding,

however, with respect to other relief sought in the Examiner's Motion, which must be addressed

separately.

(a)     Continuing Costs.

The Liquidating Trustee filed a limited objection to the Examiner's Motion, noting his

concern about the Examiner's request for continued reimbursement for time and expenses

incurred by the Examiner and his professionals for services not requested or approved by the

Liquidating Trust.  The Liquidating Trustee noted that the Examiner and his professionals had

incurred nearly $20 million of fees and expenses from the beginning of his appointment through

the filing of the Final Report.  Moreover, the Liquidating Trustee noted that the Examiner and his

professionals had incurred another $450,000 of fees and expenses since the filing of the Final

Report.

The parties agreed to language and included a provision in the proposed orders submitted

to the Court that limits the Liquidating Trust's responsibility for continued fees and costs as

follows:

> 3.      Notwithstanding [the Examiner's discharge] in paragraph 2, above, the Examiner
> (i) shall continue to cooperate as contemplated in the June 1 Order, with
> governmental agencies, the United States Trustee, her counsel and staff and the
> Liquidating Trustee and his professionals provided, however, that the payment of
> the first $100,000 of fees and expenses incurred by the Examiner and his

7

professionals under this paragraph will be the responsibility of the Liquidating Trustee (the "Paragraph 3 Cap") and the payment of fees and expenses thereafter incurred by the Examiner in excess of the Paragraph 3 Cap shall be the sole responsibility of the party requesting the Examiner's cooperation under this paragraph, and (ii) this Court shall retain jurisdiction to resolve professional compensation issues for the Examiner and his professionals in connection with the cases.

I agree that a cap on fees and expenses is in the best interests of the creditors and that the Liquidating Trust should not be subject to additional exposure for additional services provided by the Examiner, such as continued cooperation with governmental agencies or other parties, transferring or disposing of the Investigative Record and Other Investigative Materials, and responding to discovery requests. I understand that this may require the Examiner to seek reimbursement of certain fees and costs incurred in excess of the cap elsewhere. An appropriate provision will be included in the Order accompanying this Memorandum.

(b)     <u>Transfer of Government Materials.</u>

During his investigation, the Examiner obtained numerous documents and materials from a number of parties, including the Debtors, the Debtors' independent directors, and the Debtors' independent auditors (KPMG). The Examiner seeks an order authorizing him to transfer copies of the Investigative Record and the Other Investigative Materials to the Liquidating Trustee.[7] In the Examiner's proposed form of Order granting the Examiner's Motion, however, the term "Other Investigative Materials" specifically excludes the following materials from turnover:

(I)     "Government Materials," defined as including any requests for information received by the Examiner or his Professionals from governmental agencies and the responses to those requests; and

---

[7] The definition of the terms "Investigative Record" and "Other Investigative Materials," as set forth in the Examiner's Motion, are found in n. 4, *supra.*

8

(ii)    "Internal Materials," defined as including documents reflecting internal privileged and otherwise confidential or protected communications and interaction between the Examiner and his Professionals of the type as described generally by the Examiner's counsel at the September 18, 2008 hearing before this Court.[8]

The NYSTS and the Former Officers jointly submitted an alternative proposed form of order which does not exclude the Government Materials from the documents to be turned over to the Liquidating Trustee.   The Examiner has not asserted any privilege or other basis for excluding the Government Materials  from turnover.  Instead, the Examiner proposed to exclude those documents to allow governmental agencies investigating the Debtors, such as the U.S. Securities and Exchange Commission and the U.S. Department of Justice, an opportunity to take a position regarding turnover of such documents.  Despite notice of the Examiner's Motion, no governmental agency has taken a position with respect to turnover of the Government Materials to the Liquidating Trustee.  (Tr. 11/19/08 at 59:25 - 60:25).  Because there is no basis for treating the Government Materials separately, they will be included in the Other Investigative Materials to be turned over to the Liquidating Trustee.[9]

(c)    <u>No waiver of privilege.</u>

The Examiner asks this Court to rule that his sharing of documents with the governmental agencies, the office of the United States Trustee, and the Liquidating Trustee should not cause or constitute a waiver of any applicable protection belonging to the Examiner and his professionals, including, but not limited to, the attorney-client privilege or the work product doctrine.  The

---

[8]*See* Tr. 9/18/2008 at 33.

[9]For ease of reference, the Order entered in connection with this Memorandum employs  the terms proposed by NYSTS to describe the documents and materials to be turned over to the Liquidating Trustee, so that the Investigative Record and Other Investigative Materials, including the Governmental Materials, will be defined, collectively, in the accompanying Order, as the "Examiner's Materials").

9

Examiner also seeks a similar ruling that the Liquidating Trustee's consultation with or retention of the Examiner's forensic accountants (BDO) will not cause a waiver of any of the Examiner's applicable privileges or protections. The Examiner and the Liquidating Trustee argue that the Court may order this relief based upon other cases holding that sharing documents and information with third persons who have a common interest should not constitute a waiver. *See, e.g., Westinghouse Electric Corp. v. The Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (Disclosure to a third party does not necessarily waive the protection of the work product doctrine unless it enables an adversary to gain access to the information); *United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285, 1299-1300 (C.A.D.C. 1980) (Disclosure made in pursuit of trial preparations to a third party with "common interests" may not suffice as a basis for waiver of the work product doctrine). *See also Teleglobe USA Inc. v. BCE Inc. (In re TeleGlobe Commc'ns Corp.*), 493 F.3d 345, 363-66 (3d Cir. 2007) (discussing the "community-of-interest privilege," which allows attorneys representing different clients with similar legal interests to share information without waiving the attorney-client privilege as to third parties).

The Officers and Underwriters object to this request, arguing that the Examiner provided no factual basis for such relief, having failed to specify which privilege or protection is being asserted as to any particular document. KPMG filed a similar objection to this relief. The objecting parties argue that the Court should not make a decision about waiver in a vacuum. I agree. The *Westinghouse* and *American Telephone and Telegraph* cases cited above instruct that a court's analysis of an assertion of the attorney-client privilege differs from an analysis of an assertion of the work product doctrine. A blanket decision about waiver, without any context,

10

may also be in the nature of an improper advisory opinion. *See In re Grand Jury Matter,* 673

F.2d 688, 694 n. 12 (3d Cir. 1982) ("To avoid being merely advisory, a court's judgment must

resolve 'a real and substantial controversy admitting of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be on a

hypothetical state of facts.'") *quoting Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330,

2334, 45 L.Ed.2d 272 (1975).  When and if the issue does arise, the court or other forum directly

involved in the discovery request will have the facts available to make an appropriate

determination about waiver.[10]

(d)    <u>Protection from third party discovery.</u>

        The Examiner performs his duties at the request of the Court, for the benefit of the debtor,

its creditors and shareholders, and not to "fuel the litigation fires of third party litigants." *In re*

*Baldwin United Corp.*, 46 B.R. 314, 316 (Bankr.S.D.Ohio 1985).  To protect the Examiner from

a possible deluge of discovery requests, the Examiner asks that this Court enter an order

precluding third parties from serving formal or informal discovery requests upon the Examiner.

However, the Examiner has proposed that, if a third party demonstrates that it cannot obtain

documents or materials from the Investigative Record or Other Investigative Record from any

other source, then discovery requests related to those documents or materials would be allowed.

---

[10]The Liquidating Trustee, who does not oppose this request, cites to orders entered in the *Refco* case (*In re Refco, Inc.*, case no. 05-60006, Bankr.S.D.N.Y. Aug. 16, 2007, docket no. 5748) and the *Enron* case (*In re Enron Corp.,* case no. 01-16034, Bankr.S.D.N.Y.  Feb. 19, 2004, docket no. 16382) in support of the argument that there is precedent for ordering that an Examiner's sharing of documents does not waive any applicable privileges.  However, without knowing background information with respect to entry of these orders, I cannot determine whether the orders were entered over the objections of other parties or if more particular facts were available to the judge entering each order.  In the particular circumstances before me, the orders, without more, are not persuasive.

11

The Officers and Underwriters, the NYSTS, and KPMG each filed an objection to the requested relief on a limited basis. The objectors argue that the permitted discovery should not be limited only to those documents in the Investigative Record or Other Investigative Record (as defined by the Examiner). As discussed above, this does not include Government Materials and Internal Materials. The objectors argue that all of the Examiner's documents and materials should be subject to discovery if a third party demonstrates that it cannot obtain the documents from any other source. Further, the objectors argue that this Court should not be the sole forum for deciding issues related to the limited discovery.

I find no valid basis, for this purpose, to distinguish among different categories of information held by the Examiner and agree with the objectors on this issue.[11] All of the Examiner's documents and materials may be open to discovery if a third party demonstrates that it cannot obtain the requested documents and materials from another source. This Court will likely not be the sole forum for deciding third party discovery issues. Discovery issues should be brought before the court or forum that is hearing any third party litigation. *Baldwin*, 46 B.R. at 317. The Examiner will retain any right to assert that the attorney-client privilege or other protection applies in response to any discovery requests and, except as may be limited by the Order accompanying this decision, will have the right to seek recovery of any fees and costs related to such requests.

(e)     Transfer of the KPMG Materials.

The Examiner's Motion seeks authority to transfer the KPMG Materials to the

---

[11]I note the distinction between granting third parties access to the Examiner's investigative documents and allowing access to the same documents by a party who succeeded to the claims of the estate, such as the Liquidating Trustee. *See* the discussion in section (e) of this Memorandum, *infra.*

Liquidating Trustee. The Liquidating Trustee's Motion also asks this Court to enter an order permitting the Creditors' Committee to transfer its documents related to KPMG to the Liquidating Trustee. The parties agree that the materials held by the Committee are the same, or substantially the same, as the KPMG Materials held by the Examiner.[12]  KPMG filed similar objections to both requests, so the two motions will be considered together.

KPMG objected to any transfer to the Liquidating Trustee of the KPMG Materials, arguing that allowing a transfer (1) violates the terms and the spirit of the Protective Order dated August 21, 2007 (the "Protective Order"); (2) is inconsistent with the Examiner's role of being an independent and neutral officer of the Court; and (3) eliminates KPMG's bargained-for arbitration rights.

During the bankruptcy case, the Creditors' Committee undertook an investigation of claims pursuant to its duties as set forth in Bankruptcy Code §1103(c)(2).[13]  The June 1, 2007 Order appointing the Examiner specifically provided that the Examiner and the Creditors' Committee should cooperate and coordinate their discovery efforts in investigating possible claims that the estates might have for accounting and financial statement irregularities, errors, and misstatements. This was to assure that their investigations were not duplicative. (June 1, 2007 Order, ¶12). In furtherance of that goal, the Protective Order provided that the Examiner

---

[12]*See* n. 3, *supra.*, and KPMG Objection to the Liquidating Trustee Motion (docket no. 9118), ¶4 (stating that the KPMG documents held by the Creditors' Committee are substantially the same documents, subject to a substantively identical protective order).

[13]Indeed, the Committee initially resisted appointment of an Examiner, asserting, among other things, that its investigation of the Debtors' affairs would suffice. *See* Response of Official Committee of Unsecured Creditors in Opposition to Motion of the United States Trustee to Appoint Chapter 11 Trustee or, in the Alternative, an Examiner, dated May 9, 2007 (docket no. 615).

could share information with the Creditors' Committee.  (Protective Order, ¶5(b)).

KPMG argues that the Liquidating Trustee is not the successor to the Creditors' Committee and, therefore, the Protective Order prevents sharing the materials with the Liquidating Trustee.  From the inception of this chapter 11 proceeding, the inexorable effort of all constituencies was to liquidate all of the Debtors' assets.  So, while the Debtors had a fiduciary duty to the estate, they never had any economic stake in the outcome of this liquidation.  After confirmation of the Debtors' Plan, the Creditors' Committee was deemed disbanded as of the Plan's effective date, and the Liquidating Trustee became responsible for prosecuting any claims or causes of action.[14]  If the Liquidating Trustee is not the "legal" successor to the Creditors' Committee itself, the Liquidating Trustee is certainly the functional successor to the constituency whose economic interests were and are directly at stake.

The Protective Order provided that "[u]pon the Examiner's completion of the Examiner's duties under the June 1, [2007] Order, the Examiner shall hold and preserve  KPMG's Materials subject to further order of the Court after notice and hearing."  (Protective Order, ¶7).  In effect, this provision of the Protective Order merely postponed determination of what was to become of any materials collected from KPMG.  Allowing transfer of the KPMG Materials to the Liquidating Trustee is not inconsistent with the Protective Order and, in fact, furthers, at a minimum, one important purpose of the Protective Order, i.e., to prevent the bankruptcy estate from having to pay twice for the same investigation in pursuit of potential claims.

KPMG also argues that transfer of the materials is inconsistent with the Examiner's role

---

[14]*See* Order Confirming the Second Amended Joint Chapter 11 Liquidating Plan (docket no. 8596), ¶19; and Second Amended Joint Chapter 11 Liquidating Plan (ex. 1 to docket no. 8596) at Section 8D (dissolution of the Creditors' Committee), and  Section 8F (Liquidating Trust).

14

as a "disinterested and nonadversarial" court-appointed officer. *See Baldwin*, 46 B.R. at 316.

KPMG argues that allowing the Examiner to transfer the KPMG Materials provides an unfair

advantage to the Liquidating Trustee and transforms the Examiner from an independent party to

an advocate aligned with one side in anticipated litigation. In support of this argument, KPMG

relies primarily on *Baldwin* and *Vietnam Veterans Foundation v. Erdman*, 1987 WL 9033

(March 19, 1987 D.D.C. 1987).

In *Baldwin*, the plaintiffs in a pending securities fraud action asked the Bankruptcy Court

to require the court-appointed examiner to preserve documents and other investigative materials

obtained during his investigation. The Court noted that the examiner was given free access to

documents in his investigation based upon assurances "that the order appointing him and his

status as an investigatory arm of this Court would serve to shield [those documents] from

disclosure to others and from the threat of waiving any applicable privilege." *Baldwin*, 46 B.R.

at 316. The *Baldwin* Court further wrote that

> If Examiners in other cases are to perform these "civil grand jury" functions
> effectively, and if their nonadversarial role is to be maintained, they and the
> subjects of their investigation must be unhampered by the threat that any
> information which comes into the Examiner's hands will be fair game for a
> plethora of anxious litigations, regardless of the limitations on disclosure that the
> Bankruptcy Court has imposed.

*Id.* at 317. The *Baldwin* Court recognized, however, that it was not deciding the issue regarding

disclosure of the examiner's investigative materials at that time, but ordered the examiner to (i)

maintain documents and other materials, (ii) list every document which is subject to a claim of

privilege, and (iii) not disclose, identify or produce any document or item obtained in the

investigation without approval of the Bankruptcy Court or the District Court hearing the

securities fraud litigation. *Id.*

Similarly, the *Veterans Foundation* Court decided that a former bankruptcy examiner could not provide testimony based upon the documents and information he obtained during his investigation as a court-appointed examiner. *Veterans Foundation,* 1987 WL 9033 at *2. The Court wrote that the "fruits of his investigation" for the bankruptcy court should serve no other purpose or interested party. *Id.* The written report provided by the examiner to the Bankruptcy Court, however, might be admissible, if relevant. *Id.* at *3.

The present situation, however, can be distinguished from *Baldwin* and *Veterans Foundation.* Those courts were concerned with attempts by third parties to circumvent the usual discovery procedures by taking possession of materials provided to an examiner for a different purpose. The reluctance to allow third parties access to the Examiner's investigative documents is appropriate, but is distinct from allowing access to the same documents by a party who succeeded to the claims of the debtor's estate, such as the Liquidating Trustee, and is pursuing the claims for the benefit of creditors in accordance with the terms of a confirmed plan. The Examiner's duties specifically included the investigation, identification and evaluation of any claims or causes of action that the estates might have arising from or relating to irregularities, errors or misstatements with respect to the Debtors' financial statements. As recognized in *In re Carnegie Int'l Corp.,* 51 B.R. 252, 256 (Bankr.S.D.Ind. 1984),

> The Examiner has invested numerous hours of research and investigation, an expense for which the estate is already liable. Common sense and the interests of creditors and equity holders suggest that such administrative expenses be kept to a minimum and that the estate derive the maximum benefit from costs already incurred.

*Id.* at 256. The *Carnegie* Court allowed the Examiner to bring the lawsuits identified in the

investigation to minimize expenses and maximize benefits to the estate. *Id.* Here, it is in the best interest of the estate and its creditors to pass the fruits of the Examiner's investigation on to the Liquidating Trustee.    Unlike in *Baldwin* or *Veterans Foundation*, here there can be neither surprise to, nor frustrated expectation by, parties who provided information to the Examiner, because the order appointing the Examiner required him to investigate potential claims and causes of action, as well as to share that information with the Creditors' Committee, which was simultaneously evaluating potential claims that could be brought for the benefit of the estate and its creditors.    As discussed above, this responsibility passed to the Liquidating Trustee upon confirmation of the Debtors' Plan.

Moreover, allowing the Examiner to transfer documents to the Liquidating Trustee cannot adversely impact the Examiner's independence, since his investigation is complete and his report already has been filed with this Court. *See Carnegie*, 51 B.R. at 255 (deciding that there was no risk of prejudice since the decision to expand the examiner's powers was made after the filing of his report). While it is true that the Examiner identified potential claims against KPMG (*see* the Examiner's Final Report at pp. 519-20) the Examiner's duties are completed and do not involve the assertion by him of any potential claims against KPMG.  Indeed, the Examiner was never granted authority to pursue potential claims against any party and he asked for none.

Finally, KPMG also argues that transfer of the KPMG Materials to the Liquidating Trustee would violate its arbitration rights contained in the pre-petition engagement letter agreement between KPMG and the Debtors dated September 7, 2004 (the "Engagement Letter"). The Engagement Letter sets forth certain dispute resolution procedures, as detailed in an attached appendix, for any dispute or claim arising out of the services provided by KPMG to the Debtors

under the Engagement Letter.  (*See* Ex. A to KPMG's Objection, docket no. 8873, at A9).  The

dispute resolution procedures specifically provide that "[d]iscovery shall be permitted in

connection with the arbitration only to the extent, if any, expressly authorized by the arbitration

panel upon a showing of substantial need by the party seeking discovery."  (*Id.* at A18).   KPMG

argues that the transfer of the KPMG Materials would allow the Liquidating Trustee to obtain

discovery in any potential claim against KPMG well beyond the bounds permissible in an

arbitration proceeding under the terms as set forth in the Engagement Letter.

   The Third Circuit has held that a bankruptcy court lacks authority to deny enforcement of

an applicable arbitration clause unless the party opposing arbitration can establish, under the

*McMahon* standard, that Congress, in enacting a particular statute, intended to override

arbitration rights.  *Mintze v. American Gen. Fin. Serv., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d

Cir. 2006).  The *McMahon* standard provides that:

> To overcome enforcement of arbitration, a party must establish congressional
> intent to create an exception to the FAA's mandate with respect to the party's
> statutory claims.  Congressional intent can be discerned in one of three ways: (1)
> the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict
> between arbitration and the statute's underlying purposes."

*Mintze*, 434 F.3d at 229 *citing Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227, 107

S.Ct. 2332, 96 L.Ed.2d 185 (1987).   However, before I can consider whether an arbitration

clause is enforceable, I must determine whether the particular clause is applicable to the motions

before me.

   In support of its argument for applying the arbitration clause to this matter, KPMG relies

on the case *Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180 (N.D.Tex.

2005).  In *Daisytek*, the Court vacated a bankruptcy court order allowing a post-confirmation

creditors' trust to take a Rule 2004 examination of the debtor's pre-bankruptcy accountants. As in this case, the accountants argued that a mandatory arbitration clause in the engagement letter prevented the discovery. The District Court decided that a court must look to the underlying proceeding to determine whether a matter in a bankruptcy must be submitted to arbitration. *Daisytek*, 323 B.R. at 186. "If the proceeding derives solely from the provisions of the Bankruptcy Code, and arbitration of the proceeding would conflict with the purposes of the Code, the bankruptcy court has discretion to refuse enforcement of a provision requiring arbitration." *Id.* at 187 *citing In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002). The *Daisytek* Court then rejected the premise that the Rule 2004 examination was the proceeding at issue, deciding that the "proper focus is on the underlying nature of the proceedings that could flow from the information obtained through the Rule 2004 examination." *Id.* at 187.

When a similar issue arose in *In re Friedman's, Inc.*, 356 B.R. 779 (Bankr.S.D.Ga. 2005), the Bankruptcy Court was not persuaded to apply the rationale of *Daisytek*. In *Friedman's*, the Court was faced with a debtor's motion to compel discovery, followed by the accountants' motion for a protective order from the discovery. The accountants argued that the arbitration clause in its engagement letter required all disputes to be handled through mediation and mandatory arbitration. *Friedman's*, 356 B.R. at 782. While the *Friedman's* Court recognized that "arbitration agreements are generally favored and have been enforced in bankruptcy courts," it determined that the arbitration clause and dispute resolution procedures in the engagement letter were not triggered by the discovery requests because "there is no identifiable, discrete dispute between the parties that could be argued to control the scope of discovery." *Id.* at 783. The *Friedman's* Court declined to adopt the reasoning of *Daisytek*, noting that the cases upon

19

which the *Daisytek* Court relied (i.e., *In re Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997) and

*Gandy*), involved situations "in which the parties were contesting identified and specific causes

of action," rather than cases in which potential claims were being investigated. *Id.* at 784. The

*Friedman's* Court wrote, in articulating a paramount interest involved in the bankruptcy process:

> To prospectively shut down any meaningful investigation would be fundamentally
> at odds with bankruptcy policy and severely damage the interest of unsecured
> creditors. *See In re Nat'l Gypsum*, 118 F.3d at 1069 (stating that the purpose of
> the Bankruptcy Code includes the "goal of centralized resolution of purely
> bankruptcy issues, the need to protect creditors and reorganizing debtors from
> piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its
> own orders.")

*Friedman's*, 356 B.R. at 784.

The arbitration clause in the KPMG Engagement Letter is not implicated by the motions

before me because, as of the time this relief was sought, no evidence was presented that any

claim had been asserted or that any particular proceeding had been commenced against KPMG.

The Examiner's Motion does not seek relief to take additional discovery. The Examiner asks

only that the fruits of his investigation be transferred to the Liquidating Trustee. The plain

language of the Engagement Letter's dispute resolution procedures, as cited by KPMG, provides

that it applies to discovery "in connection with the arbitration." The relief sought here is not in

connection with any arbitration proceeding.

To the contrary, the relief requested in the motions do not prevent KPMG from asserting

any right to arbitration (and attendant rights) if a proceeding is commenced. Moreover, it does

not prevent KPMG from arguing that the Liquidating Trustee should not share the KPMG

Materials with anyone else, or from arguing that all or part of the KPMG Materials are

inadmissible in any later proceeding, whether before a court or an arbitrator. The motions seek

entry of an order providing that the materials held by the Examiner and the Creditors' Committee be transferred to Liquidating Trustee. Under these circumstances, the terms of the confirmed Plan, and in furtherance of the policies underlying the Bankruptcy Code, the transfer of the KPMG Materials is warranted.

## CONCLUSION

For the reasons set forth above, the Examiner's Motion will be granted, in part, and denied, in part, as follows:

    (1)    the Examiner's request for a discharge will be granted;

    (2)    the Examiner's request to be reimbursed by the Liquidating Trust for future time and expenses incurred will limited to a cap of $100,000, pursuant to the terms set forth in the attached order.

    (3)    the Examiner's request for permission to transfer portions of the Investigative Record and Other Investigative Materials to the Liquidating Trustee will be granted and the materials to be turned over to the Liquidating Trustee will include, without limitation, the Government Materials;

    (4)    the Examiner's request for an order providing that sharing documents with governmental agencies, the office of the United States Trustee, and the Liquidating Trustee does not cause a waiver of any applicable protection or privilege is denied, without prejudice; and

    (5)    the Examiner's request for an order precluding third party discovery with respect to the Investigative Records, Other Investigative Materials, Governmental Materials and Other Materials, unless the third party demonstrates that it cannot

obtain the documents from any other source,  is granted pursuant to the terms set forth in the attached order.

(6)      the Examiner's request to transfer the KPMG Materials to the Liquidating Trustee is granted.

The Liquidating Trustee Motion, to the extent not rendered moot by the decision with respect to the Examiner's Motion, will be granted.

An appropriate Order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: May 1, 2009

22