otherwise prejudice any right the Purchaser may have under the mortgage instruments, the Servicer shall remit to the Purchaser or its designee the Stated Principal Balance of the related Mortgage Loan by deposit thereof in the Custodial Account. The Fidelity Bond shall insure the Servicer against any loss it may sustain with respect to any Mortgage Loan not satisfied in accordance with the procedures set forth herein.

Subsection 11.20    Annual Statement as to Compliance.

Servicer will deliver to the Purchaser or its designee on or before February 28th of each year beginning February 28, 2007, Servicer's compliance statement required by Item 1123 of Regulation AB, which as of the date hereof requires a statement, signed by an authorized officer of the Servicer, to the effect that (i) a review of Servicer's servicing activities during the prior calendar year and of its performance of the servicing obligations under this Agreement has been made under such officer's supervision, and (ii) to the best of such officers' knowledge, based on such review, Servicer has fulfilled all of its servicing obligations under this Agreement in all material respects throughout the period covered by the prior calendar year or, if there has been a failure to fulfill any such servicing obligation in any material respect, a statement of such failure known to such officer and the nature and the status thereof.

Subsection 11.21    Report on Assessment of Compliance and Attestation and Annual Independent Certified Public Accountants' Servicing Report.

On or before March 1st of each calendar year, commencing in 2007, the Servicer shall

(i)    deliver to the Purchaser and any Depositor a report (in form and substance reasonably satisfactory to the Purchaser and such Depositor) regarding the Servicer's assessment of compliance with the Servicing Criteria during the immediately preceding calendar year, as required under Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122 of Regulation AB. Such report shall be addressed to the Purchaser and such Depositor and signed by an authorized officer of the Servicer, and shall address each of the Servicing Criteria specified on a certification substantially in the form of Exhibit 14 hereto delivered to the Purchaser concurrently with the execution of this Agreement;

(ii)    (c) furnish to the Purchaser a report by a registered public accounting firm that attests to, and reports on, the assessment made by Countrywide pursuant to Subsection 33.05 as required by Rules 13a-18 and 15d-18 of the Securities Exchange Act and Section 1122(b) of Regulation AB, which attestation shall be in accordance with Rule 1-02(a)(3) and Rule 2-02(g) of Regulation S-X under the Securities Act and the Securities Exchange Act; and

(iii)    (d) cause each Subservicer, and each Subcontractor determined by the Servicer pursuant to Section 33.06(b) to be "participating in the servicing function" within the meaning of Item 1122 of Regulation AB, to deliver to the Purchaser and any Depositor an assessment of compliance and accountants' attestation as and when provided in the first paragraph of this Section; and deliver or cause each Subservicer, and each Subcontractor determined by the Servicer pursuant to Section 33.06(b) to be "participating in the servicing function" within the meaning of Item 1122 of Regulation AB to deliver to the Purchaser, the Master Servicer, any

-52-

Depositor and any other Person that will be responsible for signing the certification (a "Sarbanes Certification") required by Rules 13a-14(d) and 15d-14(d) under the Exchange Act (pursuant to Section 302 of the Sarbanes-Oxley Act of 2002) on behalf of an asset-backed issuer with respect to a Securitization Transaction a certification signed by the appropriate officer of the related entity in the form attached hereto as Exhibit 13.

The Servicer acknowledges that the parties identified in the preceding paragraph may rely on the certification provided by the Servicer pursuant to such clause in signing a Sarbanes Certification and filing such with the Commission.

Each assessment of compliance provided by a Subservicer pursuant to the first paragraph of this section shall address each of the Servicing Criteria specified on a certification substantially in the form of Exhibit 14 hereto delivered to the Purchaser concurrently with the execution of this Agreement or, in the case of a Subservicer subsequently appointed as such, on or prior to the date of such appointment. An assessment of compliance provided by a Subcontractor pursuant to Section 33.05(a)(iii) need not address any elements of the Servicing Criteria other than those specified by the Servicer pursuant to Section 33.06.

For purposes of Section 11, Section 33 and any related provisions thereto, each Master Servicer shall be considered a third party beneficiary of this Agreement, entitled to all the rights and benefits hereof as if it were a direct party to this Agreement.

Subsection 11.22    Servicer Shall Provide Access and Information as Reasonably Required.

The Servicer shall provide to the Purchaser or its designee, and for any purchaser insured by FDIC or NAIC, the supervisory agents and examiners of FDIC and OTS or NAIC, access to any documentation regarding the Mortgage Loans which may be required by applicable regulations. Such access shall be afforded without charge, but only upon reasonable request, during normal business hours and at the offices of the Servicer.

In addition, the Servicer shall furnish upon request by the Purchaser or its designee, during the term of this Agreement, such periodic, special or other reports or information, whether or not provided for herein, as shall be necessary, reasonable and appropriate with respect to the purposes of this Agreement and applicable regulations. All such reports or information shall be provided by and in accordance with all reasonable instructions and directions the Purchaser or its designee may require. The Servicer agrees to execute and deliver all such instruments and take all such action as the Purchaser or its designee from time to time, may reasonably request in order to effectuate the purposes and to carry out the terms of this Agreement.

Subsection 11.23    Inspections.

The Servicer shall inspect the Mortgaged Property as often deemed necessary by the Servicer to assure itself that the value of the Mortgaged Property is being preserved. In addition, if any Mortgage Loan is more than sixty (60) days delinquent, the Servicer shall immediately inspect the Mortgaged Property and shall conduct subsequent inspections in accordance with Customary Servicing Procedures or as may be required by the primary mortgage guaranty insurer. The Servicer shall keep written report of each such inspection.

-53-

Subsection 11.24    Restoration of Mortgaged Property.

The Servicer need not obtain the approval of the Purchaser or its designee prior to releasing any Insurance Proceeds or Condemnation Proceeds to the Mortgagor to be applied to the restoration or repair of the Mortgaged Property if such release is in accordance with Customary Servicing Practices. At a minimum, the Servicer shall comply with the following conditions in connection with any such release of Insurance Proceeds or Condemnation Proceeds:

(a) the Servicer shall receive satisfactory independent verification of completion of repairs and issuance of any required approvals with respect thereto;

(b) the Servicer shall take all steps necessary to preserve the priority of the lien of the Mortgage, including, but not limited to requiring waivers with respect to mechanics' and materialmen's liens;

(c) the Servicer shall verify that the Mortgage Loan is not in default; and

(d) pending repairs or restoration, the Servicer shall place the Insurance Proceeds or Condemnation Proceeds in the Escrow Account.

If the Purchaser is named as an additional loss payee, the Servicer is hereby empowered to endorse any loss draft issued in respect of such a claim in the name of the Purchaser.

Subsection 11.25    Appointment of Master Servicer.

The Purchaser shall have the right, at any time, to appoint a master servicer (the "Master Servicer") in its sole discretion. Servicer hereby agrees to remit to, take direction from, and cooperate with, the Master Servicer, in accordance with the terms of this Agreement. Purchaser shall notify Servicer of any appointment of a Master Servicer.

Subsection 11.26    Transfer of Servicing.

On the related Servicing Transfer Date, the Purchaser, or its designee, shall assume all servicing responsibilities related to, and the Seller shall cease all servicing responsibilities related to, the Mortgage Loans. The related Servicing Transfer Date shall be the date set forth in the applicable Terms Letter.

On or prior to the related Servicing Transfer Date the Seller shall, at its sole cost and expense, take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to the Purchaser, or its designee, including but not limited to the following:

(a) Notice to Mortgagors. The Seller shall mail to the Mortgagor of each Mortgage a letter advising the Mortgagor of the transfer of the servicing of the related Mortgage Loan to the Purchaser, or its designee in accordance with RESPA; provided, however, the content and format of the letter shall have the prior approval of the

10067509.5.BUSINESS
NYLIB5 885228.9

Purchaser. The Seller shall provide the Purchaser with copies of all such notices no later than the related Servicing Transfer Date.

(b) Notice to Taxing Authorities and Insurance Companies. The Seller shall transmit to the applicable taxing authorities and insurance companies (including Primary Mortgage Insurance Policy insurers, if applicable) and/or agents, notification of the transfer of the servicing to the Purchaser, or its designee, and instructions to deliver all notices, tax bills and insurance statements, as the case may be, to the Purchaser from and after the related Servicing Transfer Date. The Seller shall provide the Purchaser with copies of all such notices no later than the related Servicing Transfer Date.

(c) Delivery of Servicing Records. The Seller shall forward to the Purchaser, or its designee, all servicing records and the Servicing File in the Seller's possession relating to each Mortgage Loan including the information enumerated in the Servicing Transfer Procedures.

(d) Escrow Payments. The Seller shall provide the Purchaser, or its designee, with immediately available funds by wire transfer in the amount of the net Escrow Payments and suspense balances and all loss draft balances associated with the Mortgage Loans. The Seller shall provide the Purchaser with an accounting statement of Escrow Payments and suspense balances and loss draft balances sufficient to enable the Purchaser to reconcile the amount of such payment with the accounts of the Mortgage Loans. Additionally, the Seller shall wire transfer to the Purchaser the amount of any agency, trustee or prepaid Mortgage Loan payments and all other similar amounts held by the Seller.

(e) Payoffs and Assumptions. The Seller shall provide to the Purchaser, or its designee, copies of all assumption and payoff statements generated by the Seller on the Mortgage Loans from the related Cut-off Date to the related Servicing Transfer Date.

(f) Mortgage Payments Received Prior to Servicing Transfer Date. Prior to the related Servicing Transfer Date all payments received by the Seller on each Mortgage Loan shall be properly applied by the Seller to the account of the particular Mortgagor.

(g) Mortgage Payments Received After Servicing Transfer Date. The amount of any Monthly Payments received by the Seller after the related Servicing Transfer Date shall be forwarded to the Purchaser by overnight mail on the date of receipt. The Seller shall notify the Purchaser of the particulars of the payment, which notification requirement shall be satisfied if the Seller forwards with its payment sufficient information to permit appropriate processing of the payment by the Purchaser. The Seller shall assume full responsibility for the necessary and appropriate legal application of Monthly Payments received by the Seller after the related Servicing Transfer Date with respect to Mortgage Loans then in foreclosure or bankruptcy; provided, for purposes of this Agreement, necessary and appropriate legal application of such Monthly Payments shall include, but not be limited to, endorsement of a Monthly Payment to the Purchaser with the particulars of the payment such as the account number, dollar amount, date received and any special Mortgagor application instructions.

-55-

(h) Misapplied Payments. Misapplied payments shall be processed as follows:

(i)     All parties shall cooperate in correcting misapplication errors;

(ii)    The party receiving notice of a misapplied payment occurring prior to the related Servicing Transfer Date and discovered after the related Servicing Transfer Date shall immediately notify the other party;

(iii)   If a misapplied payment which occurred prior to the related Servicing Transfer Date cannot be identified and said misapplied payment has resulted in a shortage in a Custodial Account or Escrow Account, the Seller shall be liable for the amount of such shortage. The Seller shall reimburse the Purchaser for the amount of such shortage within (30) days after receipt of written demand therefore from the Purchaser.

(iv)    If a misapplied payment which occurred prior to the related Servicing Transfer Date has created an improper Purchase Price as the result of an inaccurate outstanding principal balance, a check shall be issued to the party shorted by the improper payment application within five (5) Business Days after notice thereof by the other party;

(v)     Any check issued under the provisions of this Subsection 11.26 shall be accompanied by a statement indicating the corresponding Seller and/or the Purchaser Mortgage Loan identification number and an explanation of the allocation of any such payments.

(i) Books and Records. On the related Servicing Transfer Date, the books, records and accounts of the Seller with respect to the Mortgage Loans shall be in accordance with all applicable Purchaser requirements.

(j) Reconciliation. The Seller shall, on or before the related Servicing Transfer Date, reconcile principal balances and make any monetary adjustments required by the Purchaser. Any such monetary adjustments will be transferred between the Seller and the Purchaser as appropriate.

(k) IRS Forms. The Seller shall prepare and file all IRS forms 1098, 1099 and other applicable forms and reports which are required to be filed with respect to the period prior to the related Servicing Transfer Date in relation to the servicing and ownership of the Mortgage Loans. The Seller shall provide copies of such forms to the Purchaser upon request and shall reimburse the Purchaser for any costs or penalties incurred by the Purchaser due to the Seller's failure to comply with this paragraph. The Purchaser or the Purchaser's designee shall prepare and file all such reports with respect to any period commencing on or after the related Servicing Transfer Date.

(l) Tax Service Contracts. With respect to each Mortgage Loan for which there is a tax service contract with First American Real Estate Tax Service (a "Tax Service Contract") in effect on the related Servicing Transfer Date, the Seller shall assign such Tax Service Contract to the Purchaser or the Purchaser's designee. In the event that the

-56-

Seller does not have a Tax Service Contract or is unable to assign the Tax Service Contract to the Purchaser or the Purchaser's designee, the Seller shall either pay to the Purchaser the cost of obtaining such Tax Service Contract or purchase a Tax Service Contract and assign the same to the Purchaser or the Purchaser's designee.

SECTION 12. <u>The Servicer.</u>

Subsection 12.01    <u>Indemnification; Third Party Claims</u>.

(a) The Servicer agrees to indemnify and hold harmless the Purchaser, the Master Servicer and any successor servicer and their respective officers, directors, agents and affiliates from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees (including, without limitation, legal fees incurred in connection with the enforcement of the Seller's indemnification obligation under this Subsection 12.01) and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to (i) any act or omission on the part of the Seller or any other person or entity in the origination, receiving, processing, funding or servicing of any Mortgage Loan prior to the related Servicing Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, (ii) any assertion based on, grounded upon or resulting from a breach of any of the Seller's representations and warranties contained herein, (iii) the Seller's inability to effect or cause the transfer of the servicing to a successor servicer pursuant to Subsection 14.01 and (iv) the failure of the Seller to perform in any way its duties and service the Mortgage Loans in strict compliance with the terms of this Agreement or otherwise comply with its obligations and covenants under this Agreement.

(b) The Servicer shall immediately notify the Purchaser and the Master Servicer if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, and the Servicer shall assume (with the written consent of the Purchaser or the Master Servicer) the defense of any such claim and pay all expenses in connection therewith, including counsel fees. If the Servicer has assumed the defense of the Purchaser, the Servicer shall provide the Purchaser or the Master Servicer with a written report of all expenses and advances incurred by the Servicer pursuant to this Subsection 12.01 and the Purchaser or the Master Servicer shall promptly reimburse the Servicer for all amounts advanced by it pursuant to the preceding sentence except when the claim in any way relates to the failure of the Servicer to service the Mortgage Loans in accordance with the terms of this Agreement or otherwise comply with its obligations and covenants under this Agreement.

Subsection 12.02    <u>Merger or Consolidation of the Servicer</u>.

The Servicer will keep in full effect its existence, rights and franchises as a corporation, and will obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which the Servicer may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Servicer shall be a party, or

-57-

any Person succeeding to substantially all of the business of the Servicer (whether or not related to loan servicing), shall be the successor of the Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

Subsection 12.03      <u>Limitation on Liability of the Servicer and Others</u>.

The duties and obligations of the Servicer shall be determined solely by the express provisions of this Agreement, the Servicer shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Servicer. Neither the Servicer nor any of the directors, officers, employees or agents of the Servicer shall be under any liability to the Purchaser for any action taken or for refraining from the taking of any action in accordance with Customary Servicing Procedures and otherwise in good faith pursuant to this Agreement or for errors in judgment; *provided, however*, that this provision shall not protect the Servicer against any liability resulting from any breach of any representation or warranty made herein, or from any liability specifically imposed on the Servicer herein; and, provided further, that this provision shall not protect the Servicer against any liability that would otherwise be imposed by reason of the willful misfeasance, bad faith or negligence in the performance of duties or by reason of reckless disregard of the obligations or duties hereunder. The Servicer and any director, officer, employee or agent of the Servicer may rely on any document of any kind which it in good faith reasonably believes to be genuine and to have been adopted or signed by the proper authorities respecting any matters arising hereunder. Subject to the terms of Subsection 12.01, the Servicer shall have no obligation to appear with respect to, prosecute or defend any legal action which is not incidental to the Servicer's duty to service the Mortgage Loans in accordance with this Agreement

Subsection 12.04      <u>No Transfer of Servicing</u>.

The Seller acknowledges that the Purchaser has acted in reliance upon the Seller's independent status, the adequacy of its servicing facilities, plant, personnel, records and procedures, its integrity, reputation and financial standing and continuance thereof. Without in any way limiting the generality of this Section, during the Interim Servicing Period, the Seller shall not either assign this Agreement or the servicing hereunder or delegate its rights or duties hereunder or any portion thereof, or sell or otherwise dispose of all or substantially all of its property or assets, without the prior written approval of the Purchaser, which consent will be granted or withheld in the Purchaser's sole discretion.

SECTION 13. <u>Default</u>.

Subsection 13.01      <u>Events of Default</u>.

In case one or more of the following Events of Default by the Servicer shall occur and be continuing:

(a) any failure by the Servicer to remit to the Purchaser, its designee, or any Master Servicer, any payment required to be made under the terms of this Agreement which continues unremedied for a period of one (1) Business Day after the date upon which written notice of such failure,

-58-

requiring the same to be remedied, shall have been given to the Servicer by the Purchaser, its designee or any Master Servicer;

(b) failure by the Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Servicer as set forth in this Agreement which failure continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Purchaser, its designee or any Master Servicer;

(c) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and such decree or order shall have remained in force, undischarged or unstayed for a period of sixty (60) days;

(d) the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Servicer or relating to all or substantially all of the Servicer's property;

(e) the Servicer shall admit in writing its inability to pay its debts as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations;

(f) the Servicer shall cease to be qualified to do business under the laws of any state in which a Mortgaged Property is located, but only to the extent such qualification is necessary to ensure the enforceability of each Mortgage Loan and to perform the Servicer's obligations under this Agreement;

(g) the Servicer shall fail to meet the servicer eligibility qualifications of Fannie Mae and the Servicer shall fail to meet the servicer eligibility qualifications of Freddie Mac;

(h) the Servicer fails to duly perform, within the required time period, its obligations under Sections 11.20 or 11.21 of the Agreement, which failure continues unremedied for a period of fifteen (15) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by any party to this Agreement or by any Master Servicer responsible for master servicing the Mortgage Loans pursuant to a Securitization of such Loans;

(i) the Servicer fails to perform its obligations under the next to last paragraph of Section 16 of the Agreement;

(j) any reduction or withdrawal of the ratings of the Servicer as a servicer of mortgage loans by one or more of the Rating Agencies that maintains a servicer rating system to "below average" or below;

-59-

then, and in each and every such case, so long as an Event of Default shall not have been remedied, the Purchaser or its designee, by notice in writing to the Servicer, may, in addition to whatever rights the Purchaser or its designee may have at law or equity to damages, including injunctive relief and specific performance, commence termination of all the rights and obligations of the Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof. Upon receipt by the Servicer of such written notice from the Purchaser or its designee stating that they intend to terminate the Servicer as a result of such Event of Default, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the successor appointed pursuant to Subsection 14.02. Upon written request from the Purchaser or its designee, the Servicer shall prepare, execute and deliver to a successor any and all documents and other instruments, place in such successor's possession all Mortgage Files and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, including, but not limited to, the transfer and endorsement or assignment of the Mortgage Loans and related documents to the successor at the Servicer's sole expense. The Servicer agrees to cooperate with the Purchaser or its designee and such successor in effecting the termination of the Servicer's responsibilities and rights hereunder, including, without limitation, the transfer to such successor for administration by it of all amounts which shall at the time be credited by the Servicer to the Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans.

Subsection 13.02     Waiver of Default.

The Purchaser or its designee may waive any default by the Servicer in the performance of its obligations hereunder and its consequences. Upon any waiver of a past default, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto except to the extent expressly so waived.

SECTION 14. Termination.

Subsection 14.01     Termination; Servicing Transfer.

The respective obligations and responsibilities of the Seller, as servicer, shall terminate without the payment of any termination fee at the expiration of the Interim Servicing Period unless terminated on an earlier date at the option of the Purchaser or pursuant to Section 14. Upon request from the Purchaser in connection with any such termination, the Seller shall prepare, execute and deliver any and all documents and other instruments, place in the Purchaser's possession all Mortgage Files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, to prepare notices to the mortgagors and related insurance companies, or otherwise, at the Seller's sole expense. The Seller agrees to cooperate with the Purchaser and such successor in effecting the termination of the Seller's responsibilities and rights hereunder as servicer, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Seller to the Custodial Account, REO Account or Escrow Account or thereafter received with respect to the Mortgage Loans. The

10067509.5.BUSINESS
NYLIB5 885228.9

Seller shall follow the servicing transfer instructions of the Purchaser, which are attached hereto as Exhibit 14 with respect to servicing transfer procedures. The Seller shall not be entitled to any transfer fee. The Purchaser shall have the right to terminate the servicing with no fee as to any individual Mortgage Loan pursuant to and in accordance with this Subsection 14.01 in the event of such Mortgage Loan becomes 60 days delinquent or subject to a foreclosure proceeding.

Subsection 14.02     <u>Successors to the Servicer.</u>

(a) With respect to the Mortgage Loans:

(I) Prior to the termination of the Servicer's responsibilities and duties under this Agreement pursuant to Subsections 12.04, 13.01 or 14.01, the Purchaser or the Master Servicer shall, (a) succeed to and assume all of the Servicer's responsibilities, rights, duties and obligations under this Agreement or (b) appoint a successor which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Servicer under this Agreement upon such termination. In connection with such appointment and assumption, the Purchaser or the Master Servicer may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree. In the event that the Servicer's duties, responsibilities and liabilities under this Agreement shall be terminated pursuant to the aforementioned Subsections, the Servicer shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of its successor. The resignation or removal of the Servicer pursuant to the aforementioned Subsections shall not become effective until a successor shall be appointed pursuant to this Subsection and shall in no event relieve the Seller of the representations and warranties made pursuant to Subsections 7.01 and 7.02 and the remedies available to the Purchaser or the Master Servicer under Subsection 7.03, it being understood and agreed that the provisions of such Subsections 7.01 and 7.02 shall be applicable to the Seller notwithstanding any such resignation or termination of the Servicer, or the termination of this Agreement.

(II) Any successor appointed as provided herein shall execute, acknowledge and deliver to the Servicer, the Purchaser and the Master Servicer an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer, with like effect as if originally named as a party to this Agreement. Any termination or resignation of the Servicer or this Agreement pursuant to Subsections 12.04, 13.01 or 14.01 shall not affect any claims that the Purchaser or the Master Servicer may have against the Servicer arising prior to any such termination or resignation.

(III)    The Servicer shall promptly deliver to the successor the funds in the Custodial Account and Escrow Account and all Mortgage Files and related documents and statements held by it hereunder and the Servicer shall account for all funds and shall execute and deliver such instruments and do such other things as may reasonably be required to more fully and definitively vest in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Servicer. The successor servicer shall not be responsible for any costs

associated with the transfer by the Servicer of the Mortgage Files or related documents or statements to such successor.

(IV)  Upon a successor's acceptance of appointment as such, the Servicer shall notify by mail the Purchaser and the Master Servicer of such appointment.

SECTION 15. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(a)  if to the Purchaser:

J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue
6th Floor
New York, New York 10017
Attention:    MBS/Whole Loan Contract Finance
Telephone:    212-834-3850
Facsimile:    212-834-6591

With a copy to:

JPMorgan Chase & Co.
270 Park Avenue
New York, New York 10017
Attention: General Counsel's Office

(b)  if to the Seller:

NC Capital Corp.
210 Commerce, 1st Floor
Irvine, CA 92602
Attn: Secondary Marketing

and

New Century Mortgage Corporation
18400 Von Karman Avenue
Suite 1000
Irvine, CA 92612
Attn: General Counsel

10067509.5.BUSINESS
NYLIB5 885228.9

(c)    if to the Servicer:

NC Capital Corp.
210 Commerce, 1st Floor
Irvine, CA 92602
Attn: Secondary Marketing

and

New Century Mortgage Corporation
18400 Von Karman Avenue
Suite 1000
Irvine, CA 92612
Attn: General Counsel

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 16. <u>Cooperation of Seller with a Reconstitution</u>.

The Seller and the Purchaser agree that with respect to some or all of the Mortgage Loans, after the related Closing Date, on one or more dates not to exceed three in number per Mortgage Loan Package (each a "<u>Reconstitution Closing Date</u>") at the Purchaser's sole option, the Purchaser may effect a sale (each, a "<u>Reconstitution</u>") of some or all of the Mortgage Loans then subject to this Agreement, without recourse, to:

(i)     Fannie Mae under its Cash Purchase Program or MBS Program (Special Servicing Option) (each a "<u>Fannie Mae Transfer</u>"); or

(ii)    Freddie Mac (the "<u>Freddie Mac Transfer</u>"); or

(iii)   one or more third party purchasers in one or more Whole Loan Transfers; or

(iv)    one or more trusts or other entities to be formed as part of one or more Securitizations.

With respect to each Reconstitution, the Seller agrees to deliver to the related Master Servicer on or prior to the date which is five (5) Business Days prior to the related Reconstitution Closing Date, a Mortgage Loan Schedule. The Seller agrees to execute (i) in connection with any Agency Transfer, any and all pool purchase contracts, and/or agreements reasonably acceptable to the Master Servicer and the Purchaser among the Purchaser, the Master Servicer, the Seller, Fannie Mae or Freddie Mac (as the case may be) and any servicer, (ii) in connection with a Whole Loan Transfer, an assignment, assumption and recognition agreement, a seller's warranties and servicing agreement or a participation and servicing agreement in form and substance reasonably acceptable to the Purchaser, and (iii) in connection with a Securitization, a pooling and servicing agreement in form and substance reasonably acceptable to the Purchaser and the Master Servicer or an Assignment and Recognition Agreement substantially in the form

-63-

attached hereto as Exhibit 10 (collectively the agreements referred to herein are designated, the "Reconstitution Agreements").

In connection with each Securitization, the Servicer, the Master Servicer and Purchaser agree to enter into and deliver certain additional documents, instruments or agreements, including, but not limited to, 10B-5 opinions, assignment, assumption and recognition agreements, and enforceability opinions, as may be reasonably necessary to effect one or more Securitizations.

With respect to each Whole Loan Transfer and each Securitization entered into by the Purchaser and the Master Servicer, the Seller agrees (1) to cooperate fully with the Purchaser and the Master Servicer and any prospective purchaser with respect to all reasonable requests and due diligence procedures, including participating in meetings with rating agencies, bond insurers and such other parties as the Purchaser shall designate and participating in meetings with prospective purchasers of the Mortgage Loans or interests therein and providing information reasonably requested by such purchasers at Purchaser's expense; (2) to execute, deliver and perform all Reconstitution Agreements required by the Purchaser and the Master Servicer and such other agreements requested by bond insurers or other credit enhancers involved in a Reconstitution or net interest margin securities related to such Reconstitution; provided that each of the Seller and the Purchaser is given an opportunity to review and reasonably negotiate in good faith the content of such documents not specifically referenced or provided for herein; (3) to restate the representations and warranties set forth in this Agreement as of the settlement or closing date in connection with such Reconstitution (each, a "Reconstitution Date") or make the representations and warranties set forth in the related selling/servicing guide of the Master Servicer or issuer, as the case may be, or such representations and warranties as may be required by any Rating Agency or prospective purchaser of the related securities or such Mortgage Loans, in connection with such Reconstitution (modified to the extent necessary to accurately reflect the pool statistics of the Mortgage Loans as of the date of such Reconstitution and any events or circumstances existing subsequent to the related Closing Date(s)); (4) to deliver to the Purchaser for inclusion in any prospectus or other offering material such publicly available information regarding the Seller and its financial condition, a summary of its underwriting guidelines and its mortgage loan delinquency, foreclosure and loss experience and any additional information requested by the Purchaser, and to deliver to the Purchaser any similar nonpublic, unaudited financial information, in which case the Purchaser shall bear the cost of having such information audited by certified public accountants if the Purchaser desires such an audit, or as is otherwise reasonably requested by the Purchaser and which the Seller is capable of providing without unreasonable effort or expense, and to indemnify the Purchaser and its affiliates for material misstatements or omissions contained (i) in such information and (ii) on the Mortgage Loan Schedule; and (5) to deliver to the Purchaser and to any Person designated by the Purchaser, at the Purchaser's expense, such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Seller pursuant to clause (4) above as shall be reasonably requested by the Purchaser. The Seller shall use its reasonable best efforts to provide to such master servicer or issuer, as the case may be, and any other participants or purchasers in such Reconstitution: (i) any and all information and appropriate verification of information which may be reasonably available to the Seller or its affiliates, whether through letters of its auditors and counsel or otherwise, as the Purchaser, the Master Servicer or any such other participant shall request; (ii) such additional representations, warranties, covenants,

-64-

opinions of counsel, letters from auditors, and certificates of public officials or officers of the Seller and/or the Servicer as are reasonably believed necessary by the Purchaser, the Master Servicer or any such other participant; and (iii) to execute, deliver and satisfy all conditions set forth in any indemnity agreement required by the Purchaser, the Master Servicer or any such participant. Moreover, the Seller agrees to cooperate with all reasonable requests made by the Purchaser or the Master Servicer to effect such Reconstitution Agreements. The Seller shall indemnify the Purchaser, the Master Servicer, and each Affiliate designated by the Purchaser or the Master Servicer and each Person who controls the Purchaser, the Master Servicer or such Affiliate and hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that each of them may sustain in any way related to any information provided by or on behalf of the Seller regarding the Seller, the Seller's servicing practices or performance, the Mortgage Loans or the Underwriting Guidelines set forth in any offering document prepared in connection with any Reconstitution. For purposes of the previous sentence, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement.

In the event the Purchaser or the Master Servicer has elected to have the Seller hold record title to the Mortgages, prior to the Reconstitution Date, the Seller shall prepare an assignment of mortgage in blank or to the prospective purchaser or trustee, as applicable, from the Seller, acceptable to the prospective purchaser or trustee, as applicable, for each Mortgage Loan that is part of the Reconstitution and shall pay all preparation and recording costs associated therewith (except with respect to each MERS Designated Mortgage Loan). In connection with the Reconstitution, the Seller shall execute each Assignment of Mortgage, (except with respect to each MERS Designated Mortgage Loan), track such Assignments of Mortgage to ensure they have been recorded and deliver them as required by the prospective purchaser or trustee, as applicable, upon the Seller's receipt thereof. Additionally, the Seller shall prepare and execute, at the direction of the Purchaser or the Master Servicer, any note endorsement in connection with any and all seller/servicer agreements.

With respect to any Mortgage Loans sold in a Securitization transaction where the Seller is the servicer, the Seller agrees that on or before February 28th of each year beginning February 28, 2006, the Seller shall deliver to the depositor, the trustee and the Master Servicer, and their officers, directors and affiliates, a certification in the form attached as <u>Exhibit 13</u> hereto, executed by the senior officer in charge of servicing at the Seller for use in connection with any Form 10-K to be filed with the Securities and Exchange Commission with respect to the securitization trust. The Seller shall indemnify and hold harmless the Person acting as depositor in the Securitization transaction, the Person acting as trustee in the Securitization transaction, the Master Servicer and their respective officers, directors and Affiliates, from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon any breach of the Seller's obligations under this paragraph or any material misstatement or omission, negligence, bad faith or willful misconduct of the Seller in connection therewith. If the indemnification provided for in the preceding sentence is unavailable or insufficient to hold harmless any indemnified party, then the Seller agrees that it shall contribute to the amount paid or payable by such indemnified party as a result of the losses, claims, damages or liabilities of such indemnified party in such proportion as is appropriate to reflect the relative fault of such

-65-

indemnified party, on the one hand, and the Seller, on the other, in connection with a breach of the Seller's obligations under this paragraph or any material misstatement or omission, negligence, bad faith or willful misconduct of the Seller in connection therewith.

All Mortgage Loans not sold or transferred pursuant to a Reconstitution shall remain subject to this Agreement and, shall continue to be serviced in accordance with the terms of this Agreement and with respect thereto this Agreement shall remain in full force and effect.

SECTION 17. Severability Clause.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

SECTION 18. No Partnership.

Nothing herein contained shall be deemed or construed to create a co-partnership or joint venture between the parties hereto and the services of the Servicer shall be rendered as an independent contractor and not as agent for the Purchaser or the Master Servicer.

SECTION 19. Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 20. Governing Law.

**EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW, THE AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICTS OF LAWS PROVISIONS OF NEW YORK OR ANY OTHER JURISDICTION.**

10067509.5.BUSINESS
NYLIB5 885228.9

SECTION 21.  Intention of the Parties.

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling, the Mortgage Loans and not a debt instrument of the Seller or another security.  Accordingly, the parties hereto each intend to treat the transaction for federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans.  The Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Files to determine the characteristics of the Mortgage Loans which shall affect the federal income tax consequences of owning the Mortgage Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

It is not the intention of the parties that such conveyances be deemed a pledge thereof.  However, in the event that, notwithstanding the intent of the parties, such assets are held to be the property of the Seller or if for any other reason this Agreement is held or deemed to create a security interest in either such assets, then (a) this Agreement shall be deemed to be a security agreement within the meaning of the Uniform Commercial Code of the State of New York and (b) the conveyances provided for in this Agreement shall be deemed to be an assignment and a grant by the Seller to the Purchaser of a security interest in all of the assets transferred, whether now owned or hereafter acquired.

SECTION 22.  Waivers.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 23.  Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

SECTION 24.  General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c) references herein to "Articles," "Sections," "Subsections," "Paragraphs" and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

-67-

(d) reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f) the term "include" or "including" shall mean without limitation by reason of enumeration.

SECTION 25. <u>Reproduction of Documents</u>.

This Agreement and all documents relating thereto, including, without limitation (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties hereto agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party hereto in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 26. <u>Amendment</u>.

This Agreement may be amended from time to time by the Purchaser, the Seller and the Servicer by written agreement signed by the parties hereto.

SECTION 27. <u>Confidentiality</u>.

Each of the Purchaser, the Seller and the Servicer shall employ proper procedures and standards designed to maintain the confidential nature of the terms of this Agreement, except to the extent (a) the disclosure of which is reasonably believed by such party to be required in connection with regulatory requirements or other legal requirements relating to its affairs; (b) disclosed to any one or more of such party's employees, officers, directors, agents, attorneys or accountants who would have access to the contents of this Agreement and such data and information in the normal course of the performance of such Person's duties for such party, to the extent such party has procedures in effect to inform such Person of the confidential nature thereof; (c) that is disclosed in a prospectus, prospectus supplement or private placement memorandum relating to a securitization of the Mortgage Loans by the Purchaser (or an affiliate assignee thereof) or to any Ratings Agency or other Person in connection with the resale or proposed resale of all or a portion of the Mortgage Loans by such party in accordance with the terms of this Agreement; and (d) that is reasonably believed by such party to be necessary for the enforcement of such party's rights under this Agreement.

10067509.5.BUSINESS
NYLIB5 885228.9

SECTION 28. <u>Entire Agreement</u>.

This Agreement constitutes the entire agreement and understanding relating to the subject matter hereof between the parties hereto and any prior oral or written agreements between them shall be deemed to have merged herewith.

SECTION 29. <u>Further Agreements</u>.

The Seller, the Servicer, and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

SECTION 30. <u>Successors and Assigns</u>.

This Agreement shall bind and inure to the benefit of and be enforceable by the initial Purchaser, the Seller, and the Servicer, and the respective successors and assigns of the initial Purchaser, the Seller, and the Servicer. The initial Purchaser and any subsequent Purchasers may assign this Agreement to any Person to whom any Mortgage Loan is transferred pursuant to a sale or financing upon mutual consent of the Seller and the Purchaser and prior written notice to the Servicer and Master Servicer in accordance with the following paragraph. As used herein, the trust formed in connection with a Securitization shall be deemed to constitute a single "Person." Upon any such assignment and written notice thereof to the Servicer, the Person to whom such assignment is made shall succeed to all rights and obligations of the Purchaser under this Agreement to the extent of the related Mortgage Loan or Mortgage Loans and this Agreement, to the extent of the related Mortgage Loan or Loans, shall be deemed to be a separate and distinct Agreement between the Servicer, and such Purchaser, and a separate and distinct Agreement between the Servicer, and each other Purchaser to the extent of the other related Mortgage Loan or Loans.

At least five (5) Business Days prior to the end of the month preceding the date upon which the first remittance is to be made to an assignee of the Purchaser or the Master Servicer, the Purchaser shall provide to the Servicer written notice of any assignment setting forth: (a) the Servicer's applicable Mortgage Loan identifying number for each of the Mortgage Loans affected by such assignment; (b) the aggregate scheduled transfer balance of such Mortgage Loans; and (c) the full name, address and wiring instructions of the assignee and the name and telephone number of an individual representative for such assignee, to whom the Servicer should: (i) send remittances; (ii) send any notices required by or provided for in this Agreement; and (iii) deliver any legal documents relating to the Mortgage Loans (including, but not limited to, contents of any Mortgage File obtained after the effective date of any assignment).

If the Purchaser has not provided the notice of assignment required by this Section 30, the Servicer shall not be required to treat any other Person as a "Purchaser" hereunder and may continue to treat the Purchaser which purports to assign the Agreement as the "Purchaser" for all purposes of this Agreement.

10067509.5.BUSINESS
NYLIB5 885228.9

SECTION 31. <u>Non-Solicitation</u>.

From and after the related Closing Date, each of the Seller, the Servicer and any of their respective affiliates hereby agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors, employees, or affiliates, to solicit the prepayment of, refinance of, or any alteration of payments or the terms of any Mortgage Loan, or solicit any Mortgage Loan sold to Purchaser for the purpose of making another loan, or establishing a line of credit, which will be secured in whole or in party by a lien on such Mortgagor's principal residence, without the prior written consent of Purchaser or its designee. It is understood and agreed that all rights and benefits relating to the solicitation of any Mortgagors and the attendant rights, title and interest in and to the list of such Mortgagors and data relating to their Mortgages (including insurance renewal dates) shall be transferred to Purchaser pursuant hereto on the related Closing Date and none of the Seller, the Servicer or any of their respective affiliates shall take any action to undermine these rights and benefits.

Notwithstanding the foregoing, it is understood and agreed that the Seller, the Servicer or any of their respective affiliates:

(a) may provide pay-off information and otherwise cooperate with individual mortgagors who contact it about prepaying their mortgages by advising them of refinancing terms and streamlined origination arrangements that are available; and

(b) may offer to refinance a Mortgage Loan made within 30 days following receipt by it of a pay-off request from the related Mortgagor. Promotions undertaken by the Seller or the Servicer or by any affiliate of the Seller or the Servicer which are directed to the general public at large (including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements), shall not constitute solicitation under this Section 31.

SECTION 32. <u>Third Party Beneficiary</u>.

For purposes of the Agreement, including but not limited to the next to last paragraph of Section 16, any Master Servicer shall be considered a third party beneficiary to this Agreement entitled to all rights and benefit accruing to any Master Servicer herein as if were a direct party to this Agreement.

SECTION 33.     <u>Compliance with Regulation AB</u>

Subsection 33.01 Intent of the Parties; Reasonableness.

The Purchaser and the Seller acknowledge and agree that the purpose of Section 33 of this Agreement is to facilitate compliance by the Purchaser and any Depositor with the provisions of Regulation AB and related rules and regulations of the Commission. Although Regulation AB is applicable by its terms only to offerings of asset-backed securities that are registered under the Securities Act, the Seller acknowledges that investors in privately offered securities may require that the Purchaser or any Depositor provide comparable disclosure in unregistered offerings. References in this Agreement to compliance with Regulation AB include provision of comparable disclosure in private offerings.

-70-

Neither the Purchaser nor any Depositor shall exercise its right to request delivery of information or other performance under these provisions (a) other than in good faith, or for purposes other than compliance with the Securities Act, the Exchange Act and the rules and regulations of the Commission thereunder (or the provision in a private offering of disclosure comparable to that required under the Securities Act) or (b) with respect to any Securitization Transaction where the percentage of Mortgage Loans sold hereunder is less than the appropriate threshold, if any, under Regulation AB and the related rules and regulations of the Commission, as reasonably determined by the Purchaser or applicable Depositor. The Seller acknowledges that interpretations of the requirements of Regulation AB may change over time, whether due to interpretive guidance provided by the Commission or its staff, consensus among participants in the asset-backed securities markets, advice of counsel, or otherwise, and agrees to comply with requests made by the Purchaser, any Master Servicer or any Depositor in good faith for delivery of information under these provisions on the basis of evolving interpretations of Regulation AB. In connection with any Securitization Transaction, the Seller shall cooperate fully with the Purchaser to deliver to the Purchaser (including any of its assignees or designees), any Master Servicer and any Depositor, any and all statements, reports, certifications, records and any other information necessary in the good faith determination of the Purchaser, any Master Servicer or any Depositor to permit the Purchaser, any Master Servicer or such Depositor to comply with the provisions of Regulation AB, together with such disclosures relating to the Seller, any Subservicer, any Third-Party Originator and the Mortgage Loans, or the servicing of the Mortgage Loans, reasonably believed by the Purchaser or any Depositor to be necessary in order to effect such compliance.

The Purchaser (including any of its assignees or designees) shall cooperate with the Seller by providing timely notice of requests for information under these provisions and by reasonably limiting such requests to information required, in the Purchaser's reasonable judgment, to comply with Regulation AB.

Section 33.02. Additional Representations and Warranties of the Seller.

(a)     The Seller shall be deemed to represent to the Purchaser and to any Depositor, as of the date on which information is first provided to the Purchaser or any Depositor under Section 33.03 that, except as disclosed in writing to the Purchaser or such Depositor prior to such date: (i) the Seller is not aware and has not received notice that any default, early amortization or other performance triggering event has occurred as to any other securitization due to any act or failure to act of the Seller; (ii) the Seller has not been terminated as servicer in a residential mortgage loan securitization, either due to a servicing default or to application of a servicing performance test or trigger; (iii) no material noncompliance with the applicable servicing criteria with respect to other securitizations of residential mortgage loans involving the Seller as servicer has been disclosed or reported by the Seller; (iv) no material changes to the Seller's policies or procedures with respect to the servicing function it will perform under this Agreement and any Reconstitution Agreement for mortgage loans of a type similar to the Mortgage Loans have occurred during the three-year period immediately preceding the related Securitization Transaction; (v) there are no aspects of the Seller's financial condition that could have a material adverse effect on the performance by the Seller of its servicing obligations under this Agreement or any Reconstitution Agreement; (vi) there are no material legal or governmental proceedings pending (or known to be contemplated) against the Seller, any

-71-

Subservicer or any Third-Party Originator; and (vii) there are no affiliations, relationships or transactions relating to the Seller, any Subservicer or any Third-Party Originator with respect to any Securitization Transaction and any party thereto identified by the related Depositor of a type described in Item 1119 of Regulation AB.

(b)     If so requested by the Purchaser or any Depositor on any date following the date on which information is first provided to the Purchaser or any Depositor under Section 33.03, the Seller shall, within five Business Days following such request, confirm in writing the accuracy of the representations and warranties set forth in paragraph (a) of this Section or, if any such representation and warranty is not accurate as of the date of such request, provide reasonably adequate disclosure of the pertinent facts, in writing, to the requesting party.

Section 33.03.  Information to Be Provided by the Seller.

In connection with any Securitization Transaction the Seller shall (i) within five Business Days following request by the Purchaser or any Depositor, provide to the Purchaser and such Depositor (or, as applicable, cause each Third-Party Originator and each Subservicer to provide), in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor, the information and materials specified in paragraphs (a), (b), (c) and (f) of this Section, and (ii) as promptly as practicable following notice to or discovery by the Seller, provide to the Purchaser and any Depositor (in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor) the information specified in paragraph (d) of this Section.

(a)     If so requested by the Purchaser or any Depositor, the Seller shall provide such information regarding (i) the Seller, as originator of the Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), or (ii) each Third-Party Originator, and (iii) as applicable, each Subservicer, as is requested for the purpose of compliance with Items 1103(a)(1), 1105, 1110, 1117 and 1119 of Regulation AB.  Such information shall include, at a minimum:

(A)     the originator's form of organization;

(B)     a description of the originator's origination program and how long the originator has been engaged in originating residential mortgage loans, which description shall include a discussion of the originator's experience in originating mortgage loans of a similar type as the Mortgage Loans; information regarding the size and composition of the originator's origination portfolio; and information that may be material, in the good faith judgment of the Purchaser or any Depositor, to an analysis of the performance of the Mortgage Loans, including the originators' credit-granting or underwriting criteria for mortgage loans of similar type(s) as the Mortgage Loans and such other information as the Purchaser or any Depositor may reasonably request for the purpose of compliance with Item 1110(b)(2) of Regulation AB;

(C)     a description of any material legal or governmental proceedings pending (or known to be contemplated) against the Seller, each Third-Party Originator and each Subservicer; and

-72-

(D)    a description of any affiliation or relationship between the Seller, each Third-Party Originator, each Subservicer and any of the following parties to a Securitization Transaction, as such parties are identified to the Seller by the Purchaser or any Depositor in writing in advance of such Securitization Transaction:

1)    the sponsor;

(2)    the depositor;

(3)    the issuing entity;

(4)    any servicer;

(5)    any trustee;

(6)    any originator;

(7)    any significant obligor;

(8)    any enhancement or support provider; and

(9)    any other material transaction party.

(b)    If so requested by the Purchaser or any Depositor, the Seller shall provide (or, as applicable, cause each Third-Party Originator to provide) Static Pool Information with respect to the mortgage loans (of a similar type as the Mortgage Loans, as reasonably identified by the Purchaser as provided below) originated by (i) the Seller, if the Seller is an originator of Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), and/or (ii) each Third-Party Originator.  Such Static Pool Information shall be prepared by the Seller (or Third-Party Originator) on the basis of its reasonable, good faith interpretation of the requirements of Item 1105(a)(1)-(3) of Regulation AB.  To the extent that there is reasonably available to the Seller (or Third-Party Originator) Static Pool Information with respect to more than one mortgage loan type, the Purchaser or any Depositor shall be entitled to specify whether some or all of such information shall be provided pursuant to this paragraph.  The content of such Static Pool Information may be in the form customarily provided by the Seller, and need not be customized for the Purchaser or any Depositor.  Such Static Pool Information for each vintage origination year or prior securitized pool, as applicable, shall be presented in increments no less frequently than quarterly over the life of the mortgage loans included in the vintage origination year or prior securitized pool.  The most recent periodic increment must be as of a date no later than 135 days prior to the date of the prospectus or other offering document in which the Static Pool Information is to be included or incorporated by reference.  The Static Pool Information shall be provided in an electronic format that provides a permanent record of the information provided, such as a portable document format (pdf) file, or other such electronic format reasonably required by the Purchaser or the Depositor, as applicable.

Promptly following notice or discovery of a material error in Static Pool Information provided pursuant to the immediately preceding paragraph (including an omission to include therein information required to be provided pursuant to such paragraph), the Seller shall provide

-73-

corrected Static Pool Information to the Purchaser or any Depositor, as applicable, in the same format in which Static Pool Information was previously provided to such party by the Seller.

If so requested by the Purchaser or any Depositor, the Seller shall provide (or, as applicable, cause each Third-Party Originator to provide), at the expense of the requesting party (to the extent of any additional incremental expense associated with delivery pursuant to this Agreement), such agreed-upon procedures letters of certified public accountants reasonably acceptable to the Purchaser or Depositor, as applicable, pertaining to Static Pool Information relating to prior securitized pools for securitizations closed on or after January 1, 2006 or, in the case of Static Pool Information with respect to the Seller's or Third-Party Originator's originations or purchases, to calendar months commencing January 1, 2006, as the Purchaser or such Depositor shall reasonably request. Such letters shall be addressed to and be for the benefit of such parties as the Purchaser or such Depositor shall designate, which may include, by way of example, any Sponsor, any Depositor and any broker dealer acting as underwriter, placement agent or initial purchaser with respect to a Securitization Transaction. Any such statement or letter may take the form of a standard, generally applicable document accompanied by a reliance letter authorizing reliance by the addressees designated by the Purchaser or such Depositor.

(c)     If so requested by the Purchaser or any Depositor, the Seller shall provide such information regarding the Seller, as servicer of the Mortgage Loans, and each Subservicer (each of the Seller and each Subservicer, for purposes of this paragraph, a "Servicer"), as is requested for the purpose of compliance with Item 1108 of Regulation AB. Such information shall include, at a minimum:

(A)     the Servicer's form of organization;

(B)     a description of how long the Servicer has been servicing residential mortgage loans; a general discussion of the Servicer's experience in servicing assets of any type as well as a more detailed discussion of the Servicer's experience in, and procedures for, the servicing function it will perform under this Agreement and any Reconstitution Agreements; information regarding the size, composition and growth of the Servicer's portfolio of residential mortgage loans of a type similar to the Mortgage Loans and information on factors related to the Servicer that may be material, in the good faith judgment of the Purchaser or any Depositor, to any analysis of the servicing of the Mortgage Loans or the related asset-backed securities, as applicable, including, without limitation:

(1)     whether any prior securitizations of mortgage loans of a type similar to the Mortgage Loans involving the Servicer have defaulted or experienced an early amortization or other performance triggering event because of servicing during the three-year period immediately preceding the related Securitization Transaction;

(2)     the extent of outsourcing the Servicer utilizes;

(3)     whether there has been previous disclosure of material noncompliance with the applicable servicing criteria with respect to other securitizations of residential

-74-

mortgage loans involving the Servicer as a servicer during the three-year period immediately preceding the related Securitization Transaction;

(4)     whether the Servicer has been terminated as servicer in a residential mortgage loan securitization, either due to a servicing default or to application of a servicing performance test or trigger; and

(5)     such other information as the Purchaser or any Depositor may reasonably request for the purpose of compliance with Item 1108(b)(2) of Regulation AB;

(C)     a description of any material changes during the three-year period immediately preceding the related Securitization Transaction to the Servicer's policies or procedures with respect to the servicing function it will perform under this Agreement and any Reconstitution Agreements for mortgage loans of a type similar to the Mortgage Loans;

(D)     information regarding the Servicer's financial condition, to the extent that there is a material risk that an adverse financial event or circumstance involving the Servicer could have a material adverse effect on the performance by the Seller of its servicing obligations under this Agreement or any Reconstitution Agreement;

(E)     information regarding advances made by the Servicer on the Mortgage Loans and the Servicer's overall servicing portfolio of residential mortgage loans for the three-year period immediately preceding the related Securitization Transaction, which may be limited to a statement by an authorized officer of the Servicer to the effect that the Servicer has made all advances required to be made on residential mortgage loans serviced by it during such period, or, if such statement would not be accurate, information regarding the percentage and type of advances not made as required, and the reasons for such failure to advance;

(F)     a description of the Servicer's processes and procedures designed to address any special or unique factors involved in servicing loans of a similar type as the Mortgage Loans;

(G)     a description of the Servicer's processes for handling delinquencies, losses, bankruptcies and recoveries, such as through liquidation of mortgaged properties, sale of defaulted mortgage loans or workouts; and

(H)     information as to how the Servicer defines or determines delinquencies and charge-offs, including the effect of any grace period, re-aging, restructuring, partial payments considered current or other practices with respect to delinquency and loss experience.

(d)     For the purpose of satisfying its reporting obligation under the Exchange Act with respect to any class of asset-backed securities, the Seller shall (or shall cause each Subservicer and Third-Party Originator to) (i) promptly notify the Purchaser, any Master Servicer and any Depositor in writing of (A) any material litigation or governmental proceedings involving the Seller, any Subservicer or any Third-Party Originator, (B) any affiliations or relationships that

-75-

develop following the closing date of a Securitization Transaction between the Seller, any Subservicer or any Third-Party Originator and any of the parties specified in clause (D) of paragraph (a) of this Section (and any other parties identified in writing by the requesting party) with respect to such Securitization Transaction, (C) any Event of Default under the terms of this Agreement or any Reconstitution Agreement, (D) any merger, consolidation or sale of substantially all of the assets of the Servicer, and (E) the Servicer's entry into an agreement with a Subservicer to perform or assist in the performance of any of the Servicer's obligations under this Agreement or any Reconstitution Agreement and (ii) provide to the Purchaser and any Depositor a description of such proceedings, affiliations or relationships.

(e)     As a condition to any succession to the Seller or any Subservicer as servicer or subservicer under this Agreement or any Reconstitution Agreement by any Person (i) into which the Seller or such Subservicer may be merged or consolidated, or (ii) which may be appointed as a successor to the Seller or any Subservicer, the Seller shall provide to the Purchaser, any Master Servicer and any Depositor, at least 15 calendar days prior to the effective date of such succession or appointment, (x) written notice to the Purchaser and any Depositor of such succession or appointment and (y) in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor, all information reasonably requested by the Purchaser or any Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to any class of asset-backed securities.

(f)     In addition to such information as the Seller, as servicer, is obligated to provide pursuant to other provisions of this Agreement:

(i) if so requested by the Purchaser or any Depositor, the Seller shall provide such information regarding the performance or servicing of the Mortgage Loans as is reasonably required to facilitate preparation of distribution reports in accordance with Item 1121 of Regulation AB. Such information shall be provided concurrently with the monthly reports otherwise required to be delivered by the servicer under this Agreement, commencing with the first such report due not less than ten Business Days following such request.

(ii) the Servicer shall provide to the Master Servicer prompt notice of the occurrence of any of the following: any event of default under the terms of this Agreement, any merger, consolidation or sale of substantially all of the assets of the Servicer, the Servicer's engagement of any subservicer, contractor or vendor to perform or assist in the performance of any of the Servicer's obligations under this Agreement, any material litigation involving the Servicer, and any affiliation or other significant relationship between the Servicer and other transaction parties.

(g)     No later than ten days prior to the deadline for the filing of any Distribution Report on Form 10-D in respect of any Trust that includes any of the Mortgage Loans serviced by the Servicer or any Subservicer, the Servicer or such Subservicer shall provide to the Purchaser, any Depositor or the Master Servicer notice of the occurrence of any of the following events along with all information, data, and materials related thereto as may be required to be included in the related Distribution Report on Form 10-D (as specified in the provisions of Regulation AB referenced below):

-76-

(i) any material modifications, extensions or waivers of pool asset terms, fees, penalties or payments during the distribution period or that have cumulatively become material over time (Item 1121(a)(11) of Regulation AB);

(ii) material breaches of pool asset representations or warranties or transaction covenants (Item 1121(a)(12) of Regulation AB); and

(iii) information regarding new asset-backed securities issuances backed by the same pool assets, any pool asset changes (such as, additions, substitutions or repurchases), and any material changes in origination, underwriting or other criteria for acquisition or selection of pool assets (Item 1121(a)(14) of Regulation AB).

(h) The Servicer shall provide to the Purchaser, any Depositor and any Master Servicer such additional information as the Master Servicer may reasonably request, including evidence of the authorization of the person signing any certification or statement, copies or other evidence of Fidelity Bond Insurance and Error and Omissions Insurance Policies, financial information and reports, and such other information related to the Servicer or any Subservicer's performance or its performance hereunder.

Section 33.04. [Intentionally Omitted]

Section 33.05 [Intentionally Omitted]

Section 33.06. Use of Subservicers and Subcontractors.

The Seller shall not hire or otherwise utilize the services of any Subservicer to fulfill any of the obligations of the Seller as servicer under this Agreement or any Reconstitution Agreement unless the Seller complies with the provisions of paragraph (a) of this Section. The Seller shall not hire or otherwise utilize the services of any Subcontractor, and shall not permit any Subservicer to hire or otherwise utilize the services of any Subcontractor, to fulfill any of the obligations of the Seller as servicer under this Agreement or any Reconstitution Agreement unless the Seller complies with the provisions of paragraph (b) of this Section.

(a) It shall not be necessary for the Seller to seek the consent of the Purchaser, any Master Servicer or any Depositor to the utilization of any Subservicer. The Seller shall cause any Subservicer used by the Seller (or by any Subservicer) for the benefit of the Purchaser and any Depositor to comply with the provisions of this Section and with Sections 33.02, 33.03(c), (e), (f) and (g), 11.20, 11.21, 33.05 and 33.07 of this Agreement to the same extent as if such Subservicer were the Seller, and to provide the information required with respect to such Subservicer under Section 33.03(d) of this Agreement. The Seller shall be responsible for obtaining from each Subservicer and delivering to the Purchaser and any Depositor any servicer compliance statement required to be delivered by such Subservicer under Section 11.20, any assessment of compliance and attestation required to be delivered by such Subservicer under Sections 33.05 and 11.21 and any certification required to be delivered to the Person that will be responsible for signing the Sarbanes Certification under Section 33.05 as and when required to be delivered.

-77-

(b)     It shall not be necessary for the Seller to seek the consent of the Purchaser, any Master Servicer or any Depositor to the utilization of any Subcontractor.  The Seller shall promptly upon request provide to the Purchaser, any Master Servicer and any Depositor (or any designee of the Depositor, such as an administrator) a written description (in form and substance satisfactory to the Purchaser, any Master Servicer and such Depositor) of the role and function of each Subcontractor utilized by the Seller or any Subservicer, specifying (i) the identity of each such Subcontractor, (ii) which (if any) of such Subcontractors are "participating in the servicing function" within the meaning of Item 1122 of Regulation AB, and (iii) which elements of the Servicing Criteria will be addressed in assessments of compliance provided by each Subcontractor identified pursuant to clause (ii) of this paragraph.

As a condition to the utilization of any Subcontractor determined to be "participating in the servicing function" within the meaning of Item 1122 of Regulation AB, the Seller shall cause any such Subcontractor used by the Seller (or by any Subservicer) for the benefit of the Purchaser and any Depositor to comply with the provisions of Sections 33.05 and 33.07 of this Agreement to the same extent as if such Subcontractor were the Seller.  The Seller shall be responsible for obtaining from each Subcontractor and delivering to the Purchaser and any Depositor any assessment of compliance and attestation and the other certifications required to be delivered by such Subservicer and such Subcontractor under Section 33.05, in each case as and when required to be delivered.

Section 33.07.  Indemnification; Remedies.

(a)     The Servicer shall indemnify the Purchaser, the Master Servicer, each affiliate of the Purchaser, and each of the following parties participating in a Securitization Transaction:  the Depositor, each sponsor and issuing entity; each Person (including but not limited to any Master Servicer, if applicable) responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction, or for execution of a certification pursuant to Rule 13a-14(d) or Rule 15d-14(d) under the Exchange Act with respect to such Securitization Transaction; each broker dealer acting as underwriter, placement agent or initial purchaser, each Person who controls any of such parties or the Depositor (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act); and the respective present and former directors, officers, employees, agents and affiliates of each of the foregoing and of the Depositor (each, an "Indemnified Party"), and shall hold each of them harmless from and against any claims, losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that any of them may sustain arising out of or based upon:

(i)(A) any untrue statement of a material fact contained or alleged to be contained in any information, report, certification, data, accountants' letter or other material provided in written or electronic form under this Section 33 by or on behalf of the Servicer, or provided under this Section 33 by or on behalf of any Subservicer, Subcontractor or Third-Party Originator (collectively, the "Servicer Information"), or (B) the omission or alleged omission to state in the Servicer Information a material fact required to be stated in the Servicer Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; *provided, by way of clarification,* that clause (B) of this paragraph shall be construed solely by reference to the Servicer Information and not to any other

-78-

information communicated in connection with a sale or purchase of securities, without regard to whether the Servicer Information or any portion thereof is presented together with or separately from such other information;

(ii)     any breach by the Servicer of its obligations under this Section 33 including but not limited to any failure by the Servicer, any Subservicer, any Subcontractor or any Third-Party Originator to deliver any information, report, certification, accountants' letter or other material when and as required under this Section 33, including any failure by the Servicer to identify pursuant to Section 33.06(b) any Subcontractor "participating in the servicing function" within the meaning of Item 1122 of Regulation AB; or

(iii)     any breach by the Servicer of a representation or warranty set forth in Section 33.02(a) or in a writing furnished pursuant to Section 3.02(b) and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Servicer of a representation or warranty in a writing furnished pursuant to Section 33.02(b) to the extent made as of a date subsequent to such closing date.

(iv)     the negligence, bad faith or willful misconduct of the Servicer in connection with its performance under this Section 33.

If the indemnification provided for herein is unavailable or insufficient to hold harmless an Indemnified Party, then the Servicer agrees that it shall contribute to the amount paid or payable by such Indemnified Party as a result of any claims, losses, damages or liabilities incurred by such Indemnified Party in such proportion as is appropriate to reflect the relative fault of such Indemnified Party on the one hand and the Servicer on the other.

In the case of any failure of performance described in clause (a)(ii) of this Section, the Servicer shall promptly reimburse the Purchaser, any Depositor, as applicable, and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction, or for execution of a certification pursuant to Rule 13a-14(d) or Rule 15d-14(d) under the Exchange Act with respect to such Securitization Transaction, for all costs reasonably incurred by each such party in order to obtain the information, report, certification, accountants' letter or other material not delivered as required by the Servicer, any Subservicer, any Subcontractor or any Third-Party Originator.

This indemnification shall survive the termination of this Agreement or the termination of any party to this Agreement.

(b)     (i)     Any failure by the Servicer, any Subservicer, any Subcontractor or any Third-Party Originator to deliver any information, report, certification, accountants' letter or other material when and as required under this Section 33, or any breach by the Servicer of a representation or warranty set forth in Section 33.02(a) or in a writing furnished pursuant to Section 33.02(b) and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Section 33.02(b) to the extent made as of a date subsequent to such closing date, shall, except as provided in clause (ii)

-79-

of this paragraph, immediately and automatically, without notice or grace period, constitute an Event of Default with respect to the Servicer under this Agreement and any applicable Reconstitution Agreement, and shall entitle the Purchaser, the Master Servicer or Depositor, as applicable, in its sole discretion, to terminate the rights and obligations of the Servicer as servicer under this Agreement and/or any applicable Reconstitution Agreement without payment (notwithstanding anything in this Agreement or any applicable Reconstitution Agreement to the contrary) of any compensation to the Servicer (and if the Servicer is servicing any of the Mortgage Loans in a Securitization Transaction, appoint a successor servicer reasonably acceptable to any Master Servicer for such Securitization Transaction); *provided* that to the extent that any provision of this Agreement and/or any applicable Reconstitution Agreement expressly provides for the survival of certain rights or obligations following termination of the Servicer as servicer, such provision shall be given effect.

(ii)     Any failure by the Servicer, any Subservicer or any Subcontractor to deliver any information, report, certification or accountants' letter when and as required under Sections 11.20 and 11.21, including any failure by the Servicer to identify pursuant to Section 33.06(b) any Subcontractor "participating in the servicing function" within the meaning of Item 1122 of Regulation AB, which continues unremedied for ten calendar days after the date on which such information, report, certification or accountants' letter was required to be delivered shall constitute an Event of Default with respect to the Servicer under this Agreement and any applicable Reconstitution Agreement, and shall entitle the Purchaser, any Master Servicer or Depositor, as applicable, in its sole discretion to terminate the rights and obligations of the Seller as servicer under this Agreement and/or any applicable Reconstitution Agreement without payment (notwithstanding anything in this Agreement to the contrary) of any compensation to the Seller (and if the Servicer is servicing any of the Mortgage Loans in a Securitization Transaction, appoint a successor servicer reasonably acceptable to any Master Servicer for such Securitization Transaction); *provided* that to the extent that any provision of this Agreement and/or any applicable Reconstitution Agreement expressly provides for the survival of certain rights or obligations following termination of the Servicer as servicer, such provision shall be given effect.

(iii)     The Servicer shall promptly reimburse the Purchaser (or any designee of the Purchaser, such as a master servicer) and any Depositor, as applicable, for all reasonable expenses incurred by the Purchaser (or such designee) or such Depositor, as such are incurred, in connection with the termination of the Servicer as servicer and the transfer of servicing of the Mortgage Loans to a successor servicer.  The provisions of this paragraph shall not limit whatever rights the Purchaser or any Depositor may have under other provisions of this Agreement and/or any applicable Reconstitution Agreement or otherwise, whether in equity or at law, such as an action for damages, specific performance or injunctive relief.

(c)     For purposes of this Agreement, including but not limited to Sections 33 related to the requirements of delivery of assessments of compliance, attestation reports, compliance statements, back-up Sarbanes Oxley certifications, and additional monthly reporting requirements, the Master Servicer shall be considered a third-party beneficiary of this Agreement, entitled to all the rights and benefits hereof as if it were a direct party to this Agreement.

10067509.5.BUSINESS
NYLIB5 885228.9

IN WITNESS WHEREOF, the Purchaser, the Seller and the Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized on the date first above written.

J.P. MORGAN MORTGAGE ACQUISITION
    CORP., as Purchaser


By:_____
    Name: _____
    Title: _____


NEW CENTURY MORTGAGE
    CORPORATION
    as Seller and as Servicer


By:_____
    Name:  KEVIN CLOYD
    Title:  EXECUTIVE VICE PRESIDENT

## <u>EXHIBIT 1</u>

FORM OF SELLER'S AND SERVICER'S OFFICER'S CERTIFICATE

I, [____], hereby certify that I am a duly elected [_____] of NEW CENTURY MORTGAGE CORPORATION, a California corporation (the "<u>Company</u>"), and further certify, on behalf of the Company as follows:

    1.  Attached hereto as Attachment I are a true and correct copy of the Certificate of Incorporation and by-laws of the Company as are in full force and effect on the date hereof. No event has occurred which has affected the good standing of the Company under the laws of the United States.

    2.  No proceedings looking toward liquidation, dissolution or bankruptcy of the Company or a merger pursuant to which the Company would not be the surviving entity are pending or contemplated.

    3.  Each person who, as an officer or attorney-in-fact of the Company, signed (a) the Mortgage Loan Sale and Interim Servicing Agreement (the "<u>Sale Agreement</u>"), dated February 1, 2006, by and between the Company as seller and as servicer, and J.P. Morgan Mortgage Acquisition Corp., as purchaser, and (b) any other document delivered prior hereto or on the date hereof in connection with the sale and servicing of the Mortgage Loans in accordance with the Sale Agreement was, at the respective times of such signing and delivery, and is, as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

    4.  All of the representations and warranties of the Company contained in Subsections 7.01 and 7.02 of the Sale Agreement were true and correct in all material respects as of the initial Closing Date.

    5.  The Company has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the initial Closing Date pursuant to the Sale Agreement.

Ex. 1-1

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Sale Agreement

IN WITNESS WHEREOF, I have hereunto signed my name on this ___ day of _____.

[_____]

By:_____

Name: _____

Title: _____

I, _____, a ____ of [_____], hereby certify that _____ is a duly elected, qualified and acting _____ of the [Seller] [Servicer] and that the signature appearing above is such person's genuine signature.

IN WITNESS WHEREOF, I have hereunto signed my name on this ___ day of _____.

[_____]

By:_____

Name: _____

Title: _____

Ex. 1-2

## EXHIBIT 2

### MORTGAGE LOAN DOCUMENTS

With respect to each Mortgage Loan, the Mortgage Loan Documents shall consist of the following:

(a) the original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee (the "Last Endorsee") by an authorized officer. To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsement may be contained on an allonge, if state law so allows and the Custodian is so advised by the Seller that state law so allows. If the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Last Endorsee], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the Last Endorsee while doing business under another name, the endorsement must be by "[Last Endorsee], formerly known as [previous name]";

(b) the original of any guarantee executed in connection with the Mortgage Note;

(c) Except as provided below and for each Mortgage Loan that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon. If in connection with any Mortgage Loan, the Seller cannot deliver or cause to be delivered the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Custodian, a photocopy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller (or certified by the title company, escrow agent, or closing attorney) stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage, and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loan and either language indicating that the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon; or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;

Ex. 2-1

(d) the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(e) except with respect to each MERS Designated Mortgage Loan, the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for recording. The Assignment of Mortgage must be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional mortgage investors in the area where the Mortgaged Property is located or on direction of the Purchaser as provided in this Agreement. If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Purchaser. If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank. If the Mortgage Loan was acquired by the Seller in a merger, the Assignment of Mortgage must be made by "[Seller], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the Assignment of Mortgage must be by "[Seller], formerly known as [previous name]";

(f) the originals of all intervening assignments of mortgage (if any) evidencing a complete chain of assignment from the Seller (or MERS with respect to each MERS Designated Mortgage Loan) to the Last Endorsee with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Seller shall deliver or cause to be delivered to the Custodian, a photocopy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Seller (or certified by the title company, escrow agent, or closing attorney) stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that such original recorded intervening assignment of mortgage or a copy of such intervening assignment of mortgage certified by the appropriate public recording office to be a true and complete copy of the original recorded intervening assignment of mortgage will be promptly delivered to the Custodian upon receipt thereof by the Seller; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, a copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment;

(g) The original mortgagee policy of title insurance or, in the event such original title policy is unavailable, a certified true copy of the related policy binder or commitment for title certified to be true and complete by the title insurance company, in each case, including an Environmental Protection Agency Endorsement and an adjustable-rate endorsement;

(h) Any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage;

Ex. 2-2

(i)  the original PMI Policy or certificate of insurance, where required pursuant to the Agreement; and

(j)  a copy of any applicable power of attorney.

Ex. 2-3

## EXHIBIT 3

### CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, unless otherwise disclosed to the Purchaser on the data tape, which shall be available for inspection by the Purchaser and which shall be retained by the Servicer or delivered to the Purchaser:

(a) Copies of the Mortgage Loan Documents.

(b) Residential loan application.

(c) Mortgage Loan closing statement.

(d) Verification of employment and income, if required.

(e) Verification of acceptable evidence of source and amount of down payment.

(f) Credit report on Mortgagor, in a form acceptable to either Fannie Mae or Freddie Mac.

(g) Residential appraisal report.

(h) Photograph of the Mortgaged Property.

(i) Survey of the Mortgaged Property, unless a survey is not required by the title insurer.

(j) Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, home owner association declarations, etc.

(k) Copies of all required disclosure statements.

(l) If applicable, termite report, structural engineer's report, water potability and septic certification.

(m) Sales Contract, if applicable.

(n) The Primary Mortgage Insurance policy or certificate of insurance or electronic notation of the existence of such policy, where required pursuant to the Agreement.

(o) Evidence of electronic notation of the hazard insurance policy, and, if required by law, evidence of the flood insurance policy.

Ex. 3-1

# **EXHIBIT 4**

MORTGAGE LOAN SCHEDULE

10067509.5.BUSINESS
NYLIB5 885228.9

**EXHIBIT 5**

UNDERWRITING GUIDELINES

Ex. 5-1

## EXHIBIT 6

### FORM OF OPINION OF COUNSEL

J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue
6th Floor
New York, New York 10017]

Dear Sirs:

You have requested [our] [my] opinion, as [Assistant] General Counsel to New Century Mortgage Corporation (the "Company"), with respect to certain matters in connection with the sale by the Company of the Mortgage Loans pursuant to that certain Flow Mortgage Loan Sale and Interim Servicing Agreement (the "Purchase Agreement"), dated February 1, 2006, hereby executed by and between J.P. Morgan Mortgage Acquisition Corp., as purchaser (the "Purchaser") and the Company.

[We] [I] have examined the following documents:

    1.    the Purchase Agreement;

    2.    the form of Assignment of Mortgage;

    3.    the form of endorsement of the Mortgage Notes; and

    4.    such other documents, records and papers as we have deemed necessary and relevant as a basis for this opinion.

To the extent [we] [I] have deemed necessary and proper, [we] [I] have relied upon the representations and warranties of the Company contained in the Agreements. [We] [I] have assumed the authenticity of all documents submitted to [us] [me] as originals, the genuineness of all signatures, the legal capacity of natural persons and the conformity to the originals of all documents.

Ex. 6-1

Based upon the foregoing, it is [our] [my] opinion that:

1. The Company is a corporation duly organized, validly existing and in good standing under the laws of the state of California and is qualified to transact business in, and is in good standing under, the laws of the state of incorporation.

2. The Company has the power to engage in the transactions contemplated by the Agreements and all requisite power, authority and legal right to execute and deliver the Agreements, and to perform and observe the terms and conditions of such Agreements

3. The Purchase Agreements has been duly authorized, executed and delivered by the Company and is a legal, valid and binding agreement enforceable in accordance with its respective terms against the Company, subject to bankruptcy laws and other similar laws of general application affecting rights of creditors and subject to the application of the rules of equity, including those respecting the availability of specific performance, none of which will materially interfere with the realization of the benefits provided thereunder or with the Purchaser's ownership of the Mortgage Loans.

4. The Company has been duly authorized to allow any of its officers to execute any and all documents by original signature in order to complete the transactions contemplated by the Agreements.

5. Either (i) no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Company of or compliance by the Company with the Purchase Agreement, or the sale of the Mortgage Loans or the consummation of the transactions contemplated by the Agreements; or (ii) any required consent, approval, authorization or order has been obtained by the Company.

6. Neither the consummation of the transactions contemplated by, nor the fulfillment of the terms of, the Agreements conflicts or will conflict with or results or will result in a breach of or constitutes or will constitute a default under the charter or by-laws of the Company, the terms of any indenture or other agreement or instrument to which the Company is a party or by which it is bound or to which it is subject, or violates any statute or order, rule, regulations, writ, injunction or decree of any court, governmental authority or regulatory body to which the Company is subject or by which it is bound.

7. There is no action, suit, proceeding or investigation pending or, to the best of [our] [my] knowledge, threatened against the Company which, in [our] [my] judgment, either in any one instance or in the aggregate, may result

Ex. 6-2

in any material adverse change in the business, operations, financial condition, properties or assets of the Company or in any material impairment of the right or ability of the Company to carry on its business substantially as now conducted or in any material liability on the part of the Company or which would draw into question the validity of the Agreements, or the Mortgage Loans or of any action taken or to be taken in connection with the transactions contemplated thereby, or which would be likely to impair materially the ability of the Company to perform under the terms of the Agreements.

8. The sale of each Mortgage Note and Mortgage as and in the manner contemplated by the Agreements is sufficient to fully transfer to the Purchaser all right, title and interest of the Company thereto as noteholder and mortgagee.

9. The Mortgages have been duly assigned and the Mortgage Notes have been duly endorsed as provided in the Agreements. The Assignments of Mortgage are in recordable form, except for the insertion of the name of the assignee, and upon the name of the assignee being inserted, are acceptable for recording under the laws of the state where each related Mortgaged Property is located. The endorsement of the Mortgage Notes, the delivery to the Purchaser, or its designee, of the Assignments of Mortgage, and the delivery of the original endorsed Mortgage Notes to the Purchaser, or its designee, are sufficient to permit the Purchaser to avail itself of all protection available under applicable law against the claims of any present or future creditors of the Company, and are sufficient to prevent any other sale, transfer, assignment, pledge or hypothecation of the Mortgages and the Mortgage Notes by the Company from being enforceable.

This opinion is given to you for your sole benefit, and no other person or entity is entitled to rely hereon except that the purchaser or purchasers to which you initially and directly resell the Mortgage Loans may rely on this opinion as if it were addressed to them as of its date.

Very truly yours,

_____

[Name]
[Assistant] General Counsel

10067509.5.BUSINESS
NYLIB5 885228.9

## **EXHIBIT 7**

### INTENTIONALLY OMITTED

10067509.5.BUSINESS
NYLIB5 885228.9

**EXHIBIT 8**

CUSTODIAL ACCOUNT CERTIFICATION

_____, 200_

    New Century Mortgage Corporation hereby certifies that it has established the account described below as a Custodial Account pursuant to Section 11.04 of the Mortgage Loan Sale and Interim Servicing Agreement, dated as of February 1, 2006, Loan Package [_____].

    Title of Account:    ["New Century Mortgage Corporation, in trust for J.P. Morgan Mortgage Acquisition Corp., as Purchaser of Mortgage Loans and various Mortgagors"] ["New Century Mortgage Corporation in trust for the [J.P. Morgan] [insert name of Securitization Series] Trust Fund."]

Account Number:    _____

Address of office or branch
of the Company at
which Account is maintained:    _____

    _____

    _____

    _____

    New Century Mortgage Corporation
    Company

    By:_____

    Name: _____

    Title: _____

Ex. 8-1

**EXHIBIT 9**

ESCROW ACCOUNT CERTIFICATION

_____, 200_

     New Century Mortgage Corporation hereby certifies that it has established the account described below as an Escrow Account pursuant to Section 11.06 of the Mortgage Loan Purchase and Servicing Agreement, dated as of February 1, 2006, Loan Package [_____].

     Title of Account:    ["New Century Mortgage Corporation, in trust for J.P. Morgan Mortgage Acquisition Corp., as Purchaser of Mortgage Loans and various Mortgagors"] ["New Century Mortgage Corporation, in trust for [J.P. Morgan] [Name of Securitization Series] Trust Fund."]

Account Number:    _____

Address of office or branch
of the Company at
which Account is maintained:    _____

                                         _____

                                       _____

                                       _____


                                     New Century Mortgage Corporation
                                     Company


                                     By:_____

                                     Name: _____

                                     Title: _____

10067509.5.BUSINESS
NYLIB5 885228.9

## **EXHIBIT 10**

## ASSIGNMENT AND ASSUMPTION AND RECOGNITION AGREEMENT

_____, 200_

ASSIGNMENT AND ASSUMPTION AND RECOGNITION AGREEMENT, dated _____, between _____, a _____ corporation having an office at _____ ("Assignor"), _____, a _____ corporation having an office at _____ ("Assignee") and _____, a _____ corporation having an office at [_____] ("Company"):

For and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration the receipt and sufficiency of which hereby are acknowledged, and of the mutual covenants herein contained, the parties hereto hereby agree as follows:

(a) The Assignor hereby grants, transfers and assigns to Assignee all of the right, title and interest of Assignor, as purchaser, in, to and under that certain Mortgage Loan Sale and Interim Servicing Agreement, Loan Package [_____] (the "Mortgage Loan Sale and Interim Servicing Agreement"), dated as of February 1, 2006, by and between J.P. Morgan Mortgage Acquisition Corp. (the "Purchaser"), and New Century Mortgage Corporation (the "Company"), and the Mortgage Loans delivered thereunder by the Company to the Assignor.

(b) The Company, the Assignor and the Assignee hereby acknowledge and agree that the Company shall be deemed to have restated and remade each representation and warranty of the Seller and the Servicer set forth in the Loan Sale and Servicing Agreement as of the date hereof.

(c) The Company acknowledges and agrees that upon execution of this Agreement, Assignee shall be entitled to all rights of the "Purchaser" under the Mortgage Loan Sale and Interim Servicing Agreement with regard to the Mortgage Loans, and all representations, warranties and covenants by the Company as the "Seller" thereunder (including the representations and warranties as restated in the preceding paragraph).

(d) The Assignor warrants and represents to, and covenants with, the Assignee that:

(I) The Assignor is the lawful owner of the Mortgage Loans with the full right to transfer the Mortgage Loans free from any and all claims and encumbrances whatsoever;

(II) The Assignor has not received notice of, and has no knowledge of, any offsets, counterclaims or other defenses available to the Company with

Ex. 10-1

respect to the Mortgage Loan Sale and Interim Servicing Agreement or the Mortgage Loans;

(III)    The Assignor has not waived or agreed to any waiver under, or agreed to any amendment or other modification of, the Mortgage Loan Sale and Interim Servicing Agreement or the Mortgage Loans, including without limitation the transfer of the servicing obligations under the Mortgage Loan Sale and Interim Servicing Agreement. The Assignor has no knowledge of, and has not received notice of, any waivers under or amendments or other modifications of, or assignments of rights or obligations under, the Mortgage Loan Sale and Interim Servicing Agreement or the Mortgage Loans; and

(IV)    Neither the Assignor nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, any interest in the Mortgage Loans or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action which would constitute a distribution of the Mortgage Loans under the Securities Act of 1933 (the "33 Act") or which would render the disposition of the Mortgage Loans a violation of Section 5 of the 33 Act or require registration pursuant thereto.

(e) The Assignee warrants and represents to, and covenants with, the Assignor and the Company that:

(I)    The Assignee agrees to be bound, as Purchaser, by all of the terms, covenants and conditions of the Mortgage Loan Sale and Interim Servicing Agreement, the Mortgage Loans, and from and after the date hereof, the Assignee assumes for the benefit of each of the Company and the Assignor all of the Assignor's obligations as Purchaser thereunder;

(II)    The Assignee understands that the Mortgage Loans have not been registered under the 33 Act or the securities laws of any state;

(III)    The purchase price being paid by the Assignee for the Mortgage Loans are in excess of $250,000 and will be paid by cash remittance of the full purchase price within 60 days of the sale;

(IV)    The Assignee is acquiring the Mortgage Loans for investment for its own account only and not for any other person. In this connection, neither the Assignee nor any Person authorized to act therefor has offered the Mortgage Loans by means of any general advertising or general solicitation within the meaning of Rule 502(c) of U.S. Securities and Exchange Commission Regulation D, promulgated under the 1933 Act;

Ex. 10-2

(V)    The Assignee considers itself a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Mortgage Loans;

(VI)    The Assignee has been furnished with all information regarding the Mortgage Loans that it has requested from the Assignor or the Company;

(VII)    Neither the Assignee nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Mortgage Loans, any interest in the Mortgage Loans or any other similar security from, or otherwise approached or negotiated with respect to the Mortgage Loans, any interest in the Mortgage Loans or any other similar security with, any person in any manner which would constitute a distribution of the Mortgage Loans under the 33 Act or which would render the disposition of the Mortgage Loans a violation of Section 5 of the 33 Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Mortgage Loans; and

(VIII)    Either:  (1) the Assignee is not an employee benefit plan ("Plan") within the meaning of section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or a plan (also "Plan") within the meaning of section 4975(e)(1) of the Internal Revenue Code of 1986 ("Code"), and the Assignee is not directly or indirectly purchasing the Mortgage Loans on behalf of, investment manager of, as named fiduciary of, as Trustee of, or with assets of, a Plan; or (2) the Assignee's purchase of the Mortgage Loans will not result in a prohibited transaction under section 406 of ERISA or section 4975 of the Code.

(IX)    The Assignee's address for purposes of all notices and correspondence related to the Mortgage Loans and the Mortgage Loan Sale and Interim Servicing Agreement is:

_____

_____

Attention:  _____

The Assignee's wire transfer instructions for purposes of all remittances and payments related to the Mortgage Loans and the Mortgage Loan Sale and Interim Servicing Agreement are:

_____

_____

Ex. 10-3

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption to be executed by their duly authorized officers as of the date first above written.

Assignor: _____

Assignee _____

By:_____

By:_____

Its: _____

Its:_____

10067509.5.BUSINESS
NYLIB5 885228.9

**EXHIBIT 11**

INTENTIONALLY OMITTED

Ex. 11-1

## EXHIBIT 12

## ASSIGNMENT AND CONVEYANCE

On this __ day of _____, 200_, New Century Mortgage Corporation, as the Seller, under that certain Mortgage Loan Sale and Interim Servicing Agreement, dated as of February 1, 2006 (the "Agreement") does hereby sell, transfer, assign, set over and convey to J.P. Morgan Mortgage Acquisition Corp., as Purchaser under the Agreement all rights, title and interest of the Seller in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto, and the related Mortgage Files and all rights and obligations arising under the documents contained therein. Pursuant to Section 6 of the Agreement, the Seller has delivered to the Custodian the documents for each Mortgage Loan to be purchased as set forth in the Agreement. The ownership of each Mortgage Note, Mortgage, and the contents of each Mortgage File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be delivered promptly by the Seller to the Purchaser.

The Seller confirms to the Purchaser that the representations and warranties set forth in Section 7.01 of the Agreement with respect to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto, and the representations and warranties in Section 7.02 of the Agreement with respect to the Seller are true and correct as of the date hereof.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

NEW CENTURY MORTGAGE CORPORATION
(Seller)

By:_____
Name:_____
Title:_____

Ex. 12-1

EXHIBIT 13
CERTIFICATE


I am the [title/office] of [Item 1122 Responsible Party] (the ["Company" or "Servicer"]) and, in such capacity, the officer in charge of the [Company's/Servicer's] performance of the servicing criteria identified as the [Company's/Servicer's] responsibility on Schedule 1122 to the [Pooling and Servicing Agreement/Servicing Agreement] (the "Agreement"). I hereby certify as follows (capitalized terms used and not otherwise defined herein have the meanings assigned in the Agreement):

1.      I have reviewed the (a) Compliance Statement of the [Company/Servicer], (b) the Assessment of Compliance of the [Company/Servicer], (c) the related Attestation Report, and (d) all other reports, data or information provided to [Wells Fargo] during the preceding calendar year relating to the performance of the [Company/Servicer] under the terms of the Agreement (collectively, the "[Company/ Servicer] Information");

2.      Based on my knowledge, the reports and information comprising the [Company/Servicer] Information, taken as a whole, do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which such statements were made, not misleading as of the period covered by or the date of such reports or information or the date of this certification;

3.      Based on my knowledge, all of the [Company/Servicer] Information required to be provided by the [Company/Servicer] under the Agreement has been provided to the Depositor, Master Servicer and the Securities Administrator;

4.      I am responsible for reviewing the activities performed by the [Company/Servicer] under the Agreement, and based on my knowledge and the compliance review conducted in preparing the Compliance Statement, and except as disclosed in the Compliance Statement, the Assessment of Compliance or the Attestation Report, the Company has fulfilled its obligations under the Agreement; and

5.      The Compliance Statement, the Assessment of Compliance and the Attestation Report required to be provided by the [Company/Servicer] pursuant to the Agreement have been provided to the Depositor, Master Servicer and the Securities Administrator. The Assessment of Compliance and Attestation Report cover all items of the servicing criteria identified on Schedule 1122 to the Agreement as applicable to the [Company/Servicer]. Any material instances of noncompliance described in such reports have been disclosed to the Depositor, Master Servicer and the Securities Administrator. The following material instances of noncompliance identified in the Assessment of Compliance and the Attestation Report relate to the performance or obligations of the [Company/Servicer] under the Agreement:  (if none, state "None.").

Date: _____

Ex. 13-1

Name: _____

Title: _____

# **EXHIBIT 14**

SERVICING TRANSFER PROCEDURES

10067509.5.BUSINESS
NYLIB5 885228.9

# **EXHIBIT 15**

## STATEMENT TO THE PURCHASER

10067509.5.BUSINESS
NYLIB5 885228.9

# EXHIBIT 16

## SERVICING CRITERIA TO BE ADDRESSED IN ASSESSMENT OF COMPLIANCE

The assessment of compliance to be delivered by [the Servicer] [Name of Subservicer] shall address, at a minimum, the criteria identified as below as "Applicable Servicing Criteria":

| | | APPLICABLE SERVICING CRITERIA |
|---|---|---|
| **SERVICING CRITERIA** | | |
| **Reference** | **Criteria** | |
| | **General Servicing Considerations** | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | X |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | X |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the mortgage loans are maintained. | X |
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | X |
| | **Cash Collection and Administration** | |
| 1122(d)(2)(i) | Payments on mortgage loans are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | X |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | X |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of overcollateralization, are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | X |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | X |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | X |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | X |

Ex. 15-1

| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA |
|---|---|---|
| **Reference** | **Criteria** | |
| | **Investor Remittances and Reporting** | |
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of mortgage loans serviced by the Servicer. | X |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | X |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the Servicer's investor records, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | |
| | **Pool Asset Administration** | |
| 1122(d)(4)(i) | Collateral or security on mortgage loans is maintained as required by the transaction agreements or related mortgage loan documents. | X |
| 1122(d)(4)(ii) | Mortgage loan and related documents are safeguarded as required by the transaction agreements | X |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | X |
| 1122(d)(4)(iv) | Payments on mortgage loans, including any payoffs, made in accordance with the related mortgage loan documents are posted to the Servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related mortgage loan documents. | X |
| 1122(d)(4)(v) | The Servicer's records regarding the mortgage loans agree with the Servicer's records with respect to an obligor's unpaid principal balance. | X |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's mortgage loans (e.g., loan modifications or re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents. | X |
| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | X |
| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a mortgage loan is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent mortgage loans including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | X |
| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for mortgage loans with variable rates are computed based on the related mortgage loan documents. | X |

Ex. 13-2

| | SERVICING CRITERIA | APPLICABLE SERVICING CRITERIA |
|---|---|---|
| **Reference** | **Criteria** | |
| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's mortgage loan documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in accordance with applicable mortgage loan documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related mortgage loans, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | X |
| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the servicer, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts are recognized and recorded in accordance with the transaction agreements. | X |
| 1122(d)(4)(xv) | Any external enhancement or other support, identified in Item 1114(a)(1) through (3) or Item 1115 of Regulation AB, is maintained as set forth in the transaction agreements. | X |
| | | |

[NAME OF SERVICER] [NAME OF SUBSERVICER]

Date: _____

By:

Ex. 13-3