**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
In re:                                    :   Chapter 11
                                          :
NEW CENTURY HOLDINGS, INC., a             :   Case No. 07-10416 (KJC)
Delaware corporation, et al.,¹            :   Jointly Administered
                                          :
                Debtors.                  :
------------------------------------------------------------x
GREGORY J. SCHROEDER, et al.,             :
                                          :
                Plaintiffs,               :   Adv. Pro. No. 07-51598
                                          :
         v.                               :
                                          :
NEW CENTURY HOLDINGS, INC., et al.,       :
                                          :
                Defendants.               :
------------------------------------------------------------x
```

Objection Deadline: September 29, 2009 at 4:00 p.m.
Hearing Date: October 6, 2009 at 10:00 a.m.

# MOTION FOR AN ORDER APPROVING GLOBAL SETTLEMENT AGREEMENT AMONG ALAN M. JACOBS AS TRUSTEE OF THE NEW CENTURY LIQUIDATING TRUST AND THE BENEFICIARIES OF THE NEW CENTURY CORPORATION DEFERRED COMPENSATION PLAN AND/OR SUPPLEMENTAL EXECUTIVE RETIREMENT/SAVINGS PLAN

---

¹ The pre-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation (the "New Century Financial Debtors").

The New Century Liquidating Trust (the "Liquidating Trust") and Reorganized New Century Warehouse Corporation (together with the Liquidating Trust, the "Trust"), by and through Alan M. Jacobs, as Liquidating Trustee of the Liquidating Trust and Plan Administrator for Reorganized New Century Warehouse Corporation and Sole Officer and Director of the Debtors (collectively, the "Trustee"), respectfully requests that this Court enter an Order approving the Global Settlement (the "Settlement Agreement") to resolve all or certain claims among the Trust on behalf of Debtor New Century Financial Corporation, Gregory J. Schroeder, Michelle Park, Martin Warren, Steve Holland and Nabil Bawa and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (the "Ad Hoc Committee"), for themselves and all other similarly situated beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Beneficiaries" or "Plaintiffs") (collectively, the "Parties"; individually, a "Party")[2]. The Trustee submits that the Settlement Agreement, a copy of which is annexed hereto as **Exhibit A**, represents a reasonable settlement of the Parties' disputes and that it is in the best interest of the Trust and its beneficiaries, and the Trustee further represents and states as follows:

## BACKGROUND FACTS

1. The New Century Financial Debtors (except for New Century Warehouse Corporation) each filed a petition for relief under Chapter 11 of Title 11 of the United States

---

[2] Harold A. Black, Frederic J. Foster, Donald E. Lange, and Michael M. Sachs, as members of the Compensation Committee of the Board of Directors of New Century Financial Corporation ("Compensation Committee"), were also named as defendants in the above-captioned adversary proceeding. They constitute the Plan Administrator under the terms of the New Century Financial Corporation Deferred Compensation Plan (the "Plan"). As more fully set forth in the Settlement Agreement, the Compensation Committee is not a Party to the Settlement Agreement. However, the Compensation Committee will be covered beneficiaries of certain releases contained therein.

Code (the "Bankruptcy Code") on April 2, 2007, in the United States Bankruptcy Court for the District of Delaware.

2. The Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008, and the Order Amending the Confirmation Order on July 22, 2008 (the "Order Amending Confirmation Order").

3. On August 1, 2008 (the "Effective Date"), the Second Amended Joint Chapter 11 Plan of Liquidation of the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Chapter 11 Plan") became effective. Pursuant to the terms of the Chapter 11 Plan, on the Effective Date the Trustee was appointed as Plan Administrator of Reorganized New Century Warehouse Corporation and the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Liquidating Trust and appointing the Trustee of the Liquidating Trust.

4. On August 4, 2008, a Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008, (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements and Rejection Damages Claims (the "Notice of Effective Date") was filed with the Court and served on all known creditors and parties-in-interest.

5. On July 14, 2008, the Beneficiaries filed a Notice of Appeal of the Opinion on Confirmation and the Order Regarding the Opinion on Confirmation (the "First Appeal"). On July 24, 2008, the Beneficiaries filed a Notice of Appeal of the Confirmation Order and the Order Amending the Confirmation Order (the "Second Appeal").

6. On October 1, 2008, the Beneficiaries filed a motion to consolidate their First Appeal and Second Appeal (together, the "Appeal"). On October 16, 2008, this Court granted their motion.

7. On June 16, 2009, the United States District Court for the District of Delaware (the "District Court") issued a Memorandum Opinion ("Memorandum Opinion") and signed an Order (the "Order on Appeal") denying the Debtors' motion to dismiss the Appeal and reversing the Confirmation Order. The Memorandum Opinion and Order on Appeal were entered on June 17, 2009.

8. On June 24, 2009, the Trustee filed with the District Court: (i) a Motion for Rehearing or in the alternative Clarification of the District Court Order on Appeal (the "Motion for Rehearing"), (ii) a Motion for Stay of the District Court Order (The "Motion for Stay"), (iii) an Affidavit of Alan M. Jacobs in support of Motion for Rehearing and Motion for Stay, and (iv) an Emergency Motion for Expedited Consideration of Motion for Rehearing and Motion for Stay.

9. On June 26, 2009, the District Court entered an order (the "Stay Order") denying the Motion for Rehearing but granting the Motion for Stay, granting a stay of the Memorandum Opinion and Order on Appeal pending appeal to the Third Circuit Court of Appeals (the "Stay").

10. On July 17, 2009, the Liquidating Trustee made a motion to preserve the status quo and maintain the Liquidating Trust and the Trustee until entry of a final order consistent with the Memorandum Opinion.

11. On July 27, 2009, this Court entered an order preserving the status quo, including maintenance of the Liquidating Trust and maintenance of Alan M. Jacobs as Liquidating Trustee,

pending entry of a final order (the "Status Quo Order"). Following entry of the Status Quo Order, the Liquidating Trustee dismissed his appeal of the Order on Appeal.

## FACTS RELEVANT TO SETTLEMENT AGREEMENT

12. On June 20, 2007, the Beneficiaries filed a class action complaint challenging the "top hat"[3] status of the New Century Financial Corporation Deferred Compensation Plan (the "DCP") and/or the Supplemental Executive Retirement Savings Plan (jointly, the "Plans") under ERISA (the "Adversary Proceeding"). In the Adversary Proceeding the Beneficiaries argued that the Plans were improperly administered because they were not limited to a select group of "highly compensated" employees.[4] On July 25, 2007, New Century Financial filed a motion seeking to dismiss the Adversary Proceeding (the "July Motion to Dismiss"). The July Motion to Dismiss was joined by Wells Fargo as Trustee of the Rabbi Trust and the Official Unsecured Creditors Committee (the "Committee").

13. On April 23, 2008, the Court entered an order denying the July Motion to Dismiss. *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.),* 387 B.R. 95 (Bankr. D. Del. 2008). Based on its review of the applicable Plan documents and accompanying trust agreement, the Court held, *inter alia,* that the Plans were "unfunded" for purposes of the "top hat" plan analysis. *Id.* at 111. Among other things, the Court reasoned that the Plans' participants did not have a *res*, separate and apart from the company's general assets, to which they could look to satisfy claims under the Plan. *Id.* The Court further held that the use

---

[3] ERISA defines a "top hat" plan as "a plan which is [1] unfunded and [2] is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." ERISA §§ 201(2), 301(a)(3) and 401(a)(1); 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1).

[4] The putative class is defined to include: all former and current employees of the above named Debtors and Debtors in Possession who participated at any time in the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (jointly, the "Plan"), including as same was amended or reinstated, from January 1, 1999 through the present, and who had, as of the date of commencement of these chapter 11 cases, undistributed assets in the Plan and its accompanying trust.

-5-

of a rabbi trust did not alter the Plans' unfunded status. *Id*. However, the Court found that it could not decide as a matter of law that the Plan was a "top hat" plan and therefore could not determine as a matter of law the ownership of the assets in the Plan. *Id.*

14. New Century filed an Opposition to Plaintiffs' Motion for Class Certification on August 21, 2008 (D.I. 82). On the same day, the New Century Financial Debtors filed a Motion to Dismiss the Claims of the Named Plaintiffs for Lack of Subject Matter Jurisdiction. (D.I. 75.) Plaintiffs filed a Reply in Support of Class Certification on Oct. 6, 2008 (D.I. 89), and an Opposition to New Century's Motion to Dismiss on the same day. (D.I. 90.) The Court has not yet ruled on either motion.

15. On March 23, 2009, the Court entered a consent order discharging Wells Fargo Bank, N.A., as trustee, from the Adversary Proceeding and releasing $6,704,474.59 in funds from the rabbi trust, the amount by which the funds in the rabbi trust exceeded the maximum potential liabilities under the Plans. (D.I. 136.)

16. On March 27, 2009, the Trustee filed his Motion for Partial Summary Judgment with Respect to the Status of Assets Held in the Rabbi Trust. (D.I. 137-138.) The Liquidating Trustee argued, *inter alia*, that (i) pursuant to the undisputed terms of the Trust Agreement, the assets of the rabbi trust are corporate assets that are subject to the claims of the company's general creditors in the event of insolvency; (ii) the New Century Financial Debtors' continuous ownership of the assets in the rabbi trust bars the creation of a constructive trust over those assets; and (iii) Plaintiffs are not entitled to the reformation of the rabbi trust.

17. On April 23, 2009, the Parties executed and filed a stipulation amending the briefing schedule on dispositive motions. The stipulation provided that Plaintiffs' opposition to the Liquidating Trustee's Motion for Partial Summary Judgment would be due on or before April

27, 2009, and that the Liquidating Trustee's reply in support of its motion would be due fifteen days after the filing and service of Plaintiffs' opposition. The stipulation further provided that the Liquidating Trustee shall have 54 days to respond to any other dispositive motion filed by Plaintiffs and that Plaintiffs shall have 27 days to file any reply in support of such motion(s).

18. On April 27, 2009, Plaintiffs filed their Answering Brief in Response to the Liquidating Trustee's Motion for Partial Summary Judgment. (D.I. 153.) Plaintiffs separately filed a Cross-Motion for Partial Summary Judgment on the status of assets held in the rabbi trust, relying on their answering brief. (D.I. 150.)

19. On May 21, 2009, Plaintiffs filed their Answering Brief In Opposition to The Liquidating Trustee's Motion for Partial Summary Judgment With Respect to the New Century Supplemental Executive Retirement/Savings Plan. (D.I. 167.) On June 15, 2009, Plaintiffs filed their Opening Brief in Support of Their Motion for Partial Summary Judgment on Count I of their Complaint. (D.I. 179.)

20. On July 31, 2009, the Parties entered in a stipulation seeking an indefinite stay of briefing with respect to the pending motions while the Parties attempted to finalize and seek approval of the Settlement Agreement.

21. Since the commencement of the Adversary Proceeding, the parties have been engaged in extensive discovery including document production, depositions and numerous discovery disputes which required input from this Court. The discovery related to the Adversary Proceeding has cost these estates hundreds of thousands, if not millions, of dollars.

## SUMMARY OF SETTLEMENT AGREEMENT

22. After extensive negotiations among the Parties, the Parties now desire to (i) resolve the Adversary Proceeding; and (ii) exchange releases without incurring further litigation costs on the terms and conditions set forth in the proposed Settlement Agreement and as

summarized in this Motion. This Settlement Agreement will also remove certain impediments to resolving the issues addressed by the District Court in reversing the Order of Confirmation. The salient terms of the Settlement Agreement are as follows:

(a) Upon the Effective Date, as herein defined, the Liquidating Trustee will commence the liquidation of the assets in the Plan Trust,[5] and as soon as practicable thereafter, either make the payments as described herein, or distribute the proceeds of such liquidation to the Beneficiaries. In addition, the Liquidating Trustee shall assign certain causes of action as described below, (the total of the payments to be made, or assignments completed, to the Beneficiaries pursuant to this Paragraph shall be referred to as the "Settlement Amount"). The Settlement Amount shall be paid as follows:

(i) $2,312,000 shall be paid to counsel for the Beneficiaries, Bernstein, Shur, Sawyer & Nelson, in payment of legal fees and expenses of the Beneficiaries. Bernstein, Shur, Sawyer & Nelson shall have no further claim against New Century Financial Corporation or any other Debtors, the Liquidating Trust or the Liquidating Trustee for any fees or expenses either under the Settlement Agreement, as counsel to the Beneficiaries, or pursuant to § 503(b) of the Bankruptcy Code.

(ii) $18,898,000, minus any costs incurred in implementing the Settlement Agreement shall be distributed pro rata to the Participants in the Plan, based on the aggregate of vested balances in the Plan as of December 31, 2007. Such amounts shall be paid without penalty in accordance with the Bankruptcy Court's Order approving the Settlement Agreement (the "Approval Order") and directing such payments pursuant to 11 U.S.C. § 503(b)(1)(A) and Fed. R. Bankr. P. 9019. If the Effective Date has occurred, such amounts shall be administered and paid on or before August 30, 2009 (or as soon thereafter as is practicable after the occurrence of the Effective Date) except for amounts distributable to the Target Defendants (which shall be handled as set forth below). The parties agree that for tax purposes such distributions shall be treated as payment of compensation, subject to the appropriate bonus tax rate for all appropriate federal, state and local taxes

---

[5] All capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

related to such distributions. All taxes arising from the distribution(s) to be made under this subparagraph shall be borne by the Participants.

(iii) With respect to Messrs. Cloyd, Theologides, Eckroth, Morrice and Ms. Dodge, (collectively the "Target Defendants"), all of whom are defendants in litigation brought by the Liquidating Trustee for, *inter alia,* breach of fiduciary duty and breach of contract, the distributions that would otherwise be made to the Target Defendants (the "Target Distributions") will be held by the Liquidating Trustee pending the conclusion of the litigation against the Target Defendants and/or further order of the Bankruptcy Court with respect to the Target Distributions.

(iv) The remainder of the Plan Assets Balance shall be turned over to the Liquidating Trust, for use in accordance with the Liquidating Plan.

(v) In addition to the consideration detailed above, the Liquidating Trustee shall also assign to the Beneficiaries, on behalf of the Participants, all causes of action held by the Liquidating Trust and arising out of the creation and administration of the Plan, against all third-party administrators, consultants, and professionals who provided services with respect to the Plan, provided, however, that the Beneficiaries shall not prosecute any claims against prior officers or directors of the Debtors named in the Adversary Proceeding or otherwise involved in the establishment or operation of the Plan.

(b) On the Effective Date, all claims asserted by Participants respecting any and all amounts due with respect to the Plans and not satisfied by payments made under the Settlement Agreement shall automatically be disallowed in their entirety.

(c) Upon the Effective Date, the Participants and the Beneficiaries, on behalf of themselves and their members, predecessors, successors, assigns, fully and forever release and discharge the Liquidating Trustee, the Liquidating Trust, the Plan Advisory Committee, New Century Financial Corporation and all other Debtors and their estates, subsidiaries, shareholders, predecessors, successors, assigns, officers, directors, agents, employees, trustees, estates, advisors, attorneys, divisions, affiliates, related companies, insurance carriers, but excluding the

third-party administrators, advisors, consultants and professionals rendering services with respect to the Plans (all of the foregoing, collectively, the "Debtor Released Parties"), from, and acknowledge full and complete satisfaction of, any and all claims, disputes, objections, litigations, demands and causes of action of any kind whatsoever, by the Beneficiaries or the Participants, which the Beneficiaries and the Participants now or hereafter own or hold as against the Debtor Released Parties, and each of them or any of them, by reason of any matters which: (i) arise out of, or are in any way connected with, or related to the Plan or the Plan Trust, or (ii) are the subject of the Adversary Proceeding (collectively, the "Beneficiaries Release"). The Beneficiaries Release shall be construed as broadly and as generally as possible. The Beneficiaries Release shall not affect, reduce or discharge any obligations arising under the Settlement Agreement. Upon the Effective Date, the Adversary Proceeding will be dismissed against each and every defendant, including those defendants who are not a party to the Settlement Agreement.

(d) Upon the Effective Date, the Liquidating Trustee and the Liquidating Trust on behalf of themselves, New Century Financial Corporation and all other Debtors' estates, and their respective subsidiaries, predecessors, successors, assigns, divisions, affiliates, related entities, fully and forever release, and discharge the Beneficiaries, its members, predecessors, successors, assigns, and the Participants in such capacity (all of the foregoing, collectively, the "Beneficiaries Released Parties") from, and acknowledge full and complete satisfaction of, any and all claims, disputes, objections, litigations, demands and causes of action of any kind whatsoever, by the Debtors, which the Debtors, the Liquidating Trust, the Liquidating Trustee or any successors thereto, now or hereafter own or hold as against the Beneficiaries Released Parties, that arise out of or are related to the Plans or the Plan Trust, including, without

limitation, by reason of any distributions made to the Beneficiaries Released Parties from or on account of the Plans or the Plan Trust prior to the date of the Settlement Agreement or distributions made pursuant to the Settlement Agreement (collectively, the "Debtors Release"). The Debtors Release shall be construed as broadly and as generally as possible and as permitted by law, and shall include, without limitation, claims arising under Chapter 5 of the Bankruptcy Code or otherwise based on any distributions made to the Beneficiaries Released Parties from or on account of the Plans or the Plan Trust prior to the date of the Settlement Agreement; provided, however, that (i) any claims that the Debtors or their bankruptcy estates may hold against the Beneficiaries Released Parties under Chapter 5 of the Bankruptcy Code that are not based on distributions made to the Beneficiaries Released Parties on account of the Plans prior to the date of the Settlement Agreement shall not be released and (ii) notwithstanding anything to the contrary, nothing in the Settlement Agreement shall release the Target Defendants with respect to any litigation pending against them or any causes of action related thereto.

(e) Upon approval of the Settlement Agreement by the Bankruptcy Court, and incorporation of a provision into the Debtors' currently filed plan of liquidation (the "Current Liquidation Plan") (and any future plan of liquidation) incorporating the Settlement Agreement, the Beneficiaries shall withdraw any objection filed to the Current Liquidation Plan or any future liquidation plan containing a similar provision preserving all aspects of the Settlement Agreement. Upon approval of the Settlement Agreement, the Beneficiaries shall consent to the Current Liquidation Plan. The Beneficiaries further agree to cooperate with the Liquidating Trust and the Liquidating Trustee to file any appropriate pleadings in either the Bankruptcy Court, District Court or Court of Appeals for the Third Circuit to preserve the Current Liquidation Plan or implement an amended Liquidation Plan.

(f) Each individual and entity released by the Settlement Agreement other than the signatories, is intended to be a third party beneficiary of the Settlement Agreement including the Compensation Committee.

(g) The terms and conditions of the Settlement Agreement will only be effective upon satisfaction of the following conditions: (i) signature by the parties, (ii) entry by the Bankruptcy Court of an order (the "Approval Order") approving the Settlement Agreement, upon notice to all necessary parties, (iii) the Approval Order has not been reversed, stayed, modified, or amended, and (iv) entry of an order by the Bankruptcy Court approving amendments to the Current Liquidation Plan reasonably acceptable to the Ad Hoc Committee and the Plan Advisory Committee which incorporates and implements the terms and conditions of the Settlement Agreement without modification, maintains the Liquidating Trustee and the Liquidating Trust and otherwise provides substantially similar economic terms as provided for in the Current Liquidation Plan. The settlement parties will use their best efforts to achieve satisfaction of all such conditions by no later than October 30, 2009. The date upon which items (i) through (iv) above have been satisfied, shall be deemed the effective date of the Settlement Agreement (the "Effective Date").

(h) Upon the Bankruptcy Court's approval of the Settlement Agreement, the Beneficiaries shall consent to the confirmation of the modified Liquidating Plan.

**LEGAL ARGUMENT**

23. Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

24. The standard for approval of a proposed compromise is well established. The Delaware District Court has held that a court should approve a compromise where it "is fair, reasonable, and in the interest of the estate." In re Marvel Entertainment Group, Inc., 222 B.R.

243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996).

25. In fact, a court will reject a proposed settlement only where it falls below the lowest point in the range of reasonableness. In re Exide Techs., et al., 303 B.R. 48, 68 (D. Del. 2003); see also Cosoff v. Rodman (In re W. T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citing Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)). Specifically, this standard includes consideration of the following factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Marvel Entertainment Group, Inc., 222 B.R. at 249.

26. In the present case, the Parties have engaged in almost two years of litigation, expensive and extensive discovery and months of settlement discussions over the various issues set forth in the Adversary Proceeding and numerous motions filed to date to get to the present settlement. This Court is aware of how vigorously these issues have been litigated given the magnitude of the funds involved in the disputes and the novel legal issues that need to be addressed in the Adversary Proceeding.

27. In addition, the Beneficiaries also objected to the terms of the Chapter 11 Plan as a result of the underlying dispute in the Adversary Proceeding. This Court overruled the Beneficiaries' objection to the Chapter 11 Plan confirmation and the Beneficiaries appealed the Confirmation Order to the District Court. The District Court agreed with certain of the issues raised by the Beneficiaries in their appeal of the Confirmation Order and reversed the Order Amending Confirmation Order. Therefore, the Debtors, the Liquidating Trustee and the Beneficiaries were not just litigating the disputes related to the "top hat" plan and the rabbi trust

in the Adversary Proceeding, but the confirmation issues related to the Chapter 11 Plan as well. This settlement will resolve not only the underlying litigation in the Adversary Proceeding, but the Beneficiaries' objections to confirmation as well.

28. In applying the standards for approval of a settlement set out in Bankruptcy Rule 9019 in the instant case, those standards are clearly met. As has been demonstrated by the numerous motions to dismiss, for summary judgment or for partial summary judgment as well as discovery disputes that have occurred with respect to the Adversary Proceeding, this is a very complex litigation involving cutting edge issues of ERISA and bankruptcy law. These issues are already the subject of one reported decision (In re New Century Holdings, Inc., *supra*), six pending motions and almost a year of expensive discovery. If this settlement is not approved, the parties will need to complete briefing on certain motions and then begin to prepare for a trial of the issues in the Adversary Proceeding and/or pending motions.

29. Absent a settlement with the Beneficiaries, the Liquidating Trustee would also be compelled to continue the appeal of the reversal of the Confirmation Order to the Court of Appeals for the Third Circuit prolonging costly litigation related not only to the Adversary Proceeding, but to the confirmation of the Chapter 11 Plan as well. This litigation will not only be expensive but will significantly delay implementation of the Chapter 11 Plan and the ultimate distribution to the estates' creditors. Therefore, the third and fourth prong of the standard set out in Marvel are established in the instant settlement.

30. The second prong of this test is not an issue for either party since the proceeds of the rabbi trust have been held in escrow since the inception of the litigation pending further order from this Court and are sufficient to satisfy either parties' claim under the Adversary Proceeding. The first prong of "probability of success in the litigation" also compels settlement of this

Adversary Proceeding. In <u>In re New Century Holdings, Inc.</u> *supra*, the Court held that the Deferred Compensation Plan was an unfunded plan but at the same time, the Court dismissed the July Motion to Dismiss and indicated that a much greater factual record would need to be established by the Debtors to justify dismissal of the Adversary Proceeding. This decision has resulted in a myriad of litigation and discovery disputes as outlined above costing the estate millions of dollars before trial even began. It is unclear how this Court would rule on either the top hat or rabbi trust issues, further justifying the settlement, which not only will return approximately $15 million to the Liquidating Trust, but will also eliminate extensive legal fees and the disputes related to confirmation of the Chapter 11 Plan or any amendments thereto.

31. This settlement is in the "paramount interest of the creditors" (including the Plaintiffs in the Adversary Proceeding) of these estates since it will resolve a multitude of litigation, provide for implementation of the Chapter 11 Plan and will allow for the ultimate distribution to creditors.

32. The Settlement Agreement was negotiated in good faith and at arms-length among the Parties and their respective professionals. Furthermore, the Trustee and his counsel conducted due diligence regarding any claims the Trust may have against any of the Beneficiaries or the Compensation Committee and concluded that in light of the releases being given to the Trust by the Beneficiaries and the Compensation Committee, and the other benefits of the Settlement Agreement, the Trustee believes the exchange of releases set forth in the Settlement Agreement is in the best interests of the Trust, its beneficiaries, and New Century Financial Corporation and all other Debtor entities. This Settlement Agreement represents a sensible compromise of these claims and disputes, and that the agreement reached is in the best interest of the Trust, its beneficiaries and New Century Financial Corporation and all other

Debtor entities. In re Marvel Entertainment Group, Inc., 222 B.R. at 249. Accordingly, the Trustee respectfully requests that the Court approve the Settlement Agreement.

## JURISDICTION

33. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

34. Notice of this Motion has been provided to the Office of the United States Trustee, the Beneficiaries and the other parties entitled to notice. The Trustee submits that no other or further notice is required.

130566.01600/40183678v.2

## CONCLUSION

WHEREFORE, the Trustee requests entry of an Order (i) approving the Settlement Agreement annexed hereto as "**Exhibit A**" and (ii) granting such other relief as the Court deems just and proper consistent with the foregoing.

Dated: September 8, 2009

Respectfully submitted,

**BLANK ROME LLP**

*/s/ David W. Carickhoff*
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and –

**HAHN & HESSEN LLP**
488 Madison Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
Attention: Mark S. Indelicato, Esq.
Katharine G. Craner, Esq.

Co-Counsel to the Liquidating Trustee

-17-
130566.01600/40183678v.2