# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., *et al.*, a Delaware Corporation,[1] <br> Debtors. | Case No. 07-10416 (KJC) <br> (Jointly Administered) |

**Requested Hearing Date: Oct. 14, 2009 at 10:00 a.m.**
**Requested Objection Deadline: Oct. 12, 2009 at 4:00 p.m.**

**MOTION OF THE TRUSTEE FOR AN ORDER (I) ESTABLISHING PROCEDURES FOR LIMITED SOLICITATION AND THE TABULATION OF VOTES TO ACCEPT OR REJECT THE MODIFIED PLAN; (II) APPROVING PROPOSED DISCLOSURE STATEMENT FOR MODIFICATIONS TO THE PLAN; (III) SCHEDULING A HEARING ON CONFIRMATION OF THE MODIFIED PLAN AND APPROVING RELATED NOTICE PROCEDURES; AND (IV) CONFIRMING THE MODIFIED PLAN**

The New Century Liquidating Trust (the "Liquidating Trust") and Reorganized Access Lending (together with the Liquidating Trust, the "Trust"), by and through Alan M. Jacobs ("Jacobs"), as their Bankruptcy Court-appointed Liquidating Trustee and Plan Administrator, respectively, (together, the "Trustee"), by and through their co-counsel, Hahn & Hessen LLP and Blank Rome LLP (the "Trustee's Counsel") submits this motion (the "Motion") for an order (I) establishing procedures for the limited solicitation and tabulation of votes to accept or reject a modified version of the Original Plan (as defined herein) (the "Modified Plan"); (II) approving

---

[1]     The pre-confirmation debtors (collectively, the "Debtors") were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a new Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

the proposed disclosure statement (the "Modified Disclosure Statement") explaining the modifications to the Plan; (III) scheduling a hearing on confirmation of the Modified Plan and approving related notice procedures; and (IV) confirming the Modified Plan. In support of the Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.     Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## SUMMARY OF THE RELIEF REQUESTED

3.     In the approximately two-month period since the United States District Court for the District of Delaware (the "District Court") reversed the Confirmation Order (as defined herein), the Trustee has worked with his Counsel and FTI Consulting ("FTI"), financial adviser to the Trust, to develop modifications to the Original Plan that address the concerns raised by the District Court, while also preserving the integrity of the Original Plan and the complex compromises that were negotiated at length by the parties in interest in developing the Original Plan. The Trustee seeks approval of the proposed modifications (the "Proposed Modifications") set forth in summary herein and in detail in the Modified Plan. Attached hereto as Exhibit A-1 is the Modified Plan and as Exhibit A-2 is a marked comparison of the Modified Plan to the Original Plan.

4.     The Proposed Modifications pertain almost exclusively to three very discreet areas; (a) the treatment of NC Credit Assets[2] and NC Credit Creditors, (b) the implementation of

---

[2]     All capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Modified Plan.

871230.003-1727216.9
130566.01600/40184150v.1

the Settlement Agreement in the Schroeder Litigation, and (c) preserving the integrity of actions taken by the Trustee in accordance with the terms of the Original Plan from and after the Original Effective Date. The removal of NC Credit Assets and NC Credit Creditors from the Holding Company Debtors is expected to have only a minimal impact on potential recoveries to other Holding Company Creditors, and in most cases the difference will be less than a 1% variance. The Proposed Modifications will have no effect on the Operating Debtor Group when compared to potential recoveries projected under the Original Plan utilizing the same underlying assumptions contained in the Original Disclosure Statement. Accordingly, the Trustee seeks authorization to solicit acceptances of the Proposed Modifications set forth in the Modified Plan from (a) the NC Credit Unsecured Creditors holding Claims in Classes HC10a and HC10b, and (b) the Settling Parties holding Claims (collectively with the NC Credit Unsecured Claims, the "Voting Creditors") in Class HC14 (collectively with Classes HC10a and HC10b, the "Voting Classes")[3].

5.       Additionally, the Trustee seeks approval of the proposed Modified Disclosure Statement, which describes (i) the background, the course of proceedings and the current state of the Original Plan; (ii) the activities of the Trust since the Original Effective Date (as defined herein); (iii) the Proposed Modifications and the economic impact of such modifications on the Creditors; and (iv) the authority granted by an order approving this Motion. Attached hereto as Exhibit B is the proposed Modified Disclosure Statement. The Trustee asserts that the Modified Disclosure Statement provides the Voting Creditors with adequate information regarding the Proposed Modifications and the potential effects thereof, without repeating the cumbersome

---

[3]      All other Creditors are referred to herein as the "Non-Voting Creditors" and all other Classes are referred to herein as the "Non-Voting Classes."

871230.003-1727216.9
130566.01600/40184150v.1

unnecessary detail contained in the Original Disclosure Statement which the Voting Creditors were provided in connection with the solicitation of their votes on the Original Plan.

6.    Given the timing of the reversal of the Confirmation Order almost one year after it was entered and the substantial consummation of its terms by the Trust, the Trustee seeks to move forward with confirmation of the Modified Plan as quickly as possible. Accordingly, the Trustee seeks approval of the following expedited solicitation and confirmation schedule:

| DATE | EVENT |
|---|---|
| October 19, 2009 | Deadline to mail notice of confirmation hearing to approve Modified Plan to Notice Parties |
| | Deadline to mail Solicitation Packages to Voting Creditors |
| November 10, 2009 | Voting Deadline |
| November 10, 2009 | Deadline to object to Modified Plan |
| November 13, 2009 | Voting report certification and filing deadline at 4:00 p.m. (prevailing Eastern time) |
| November 17, 2009 | Hearing to approve the Modified Plan |

## BACKGROUND

7.    On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On April 9, 2007, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Pre-Confirmation Committee").

8.    The Debtors, the Pre-Confirmation Committee and a number of other major creditors spent substantial time negotiating and developing a chapter 11 plan that would provide a structure for the effective completion of the post-confirmation work needed to realize on Estate

4

Assets, resolve claims efficiently and begin making distributions to Creditors. The members of the Pre-Confirmation Committee hold Claims that reflect a broad cross-section of the major Claims against the Debtors, including Creditors with Claims of different types and against different Debtors. The Pre-Confirmation Committee and the Debtors worked extensively to ensure that the chapter 11 plan of liquidation dealt fairly with the divergent interests of stakeholders. The fruits of those efforts are embodied in the Original Plan, which provides a mechanism to complete the administration of the Estates and provides for recoveries to the Holders of the Debtors' Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims (defined collectively in the Plan as "Allowed A/P/S Claims") and Allowed Unsecured Claims through distribution of the net proceeds of the sale and liquidation of substantially all of the Debtors' Assets and recoveries (if any) from the Causes of Action.

9.      The Original Plan also contains a series of complex interrelated compromises that together form a global settlement of the Estates' primary intercreditor and intercompany disputes. Among the compromises, the Debtors, other than Access Lending, are divided into two "Debtor Groups" (the Holding Company Debtors comprising the Holding Company Debtor Group and the Operating Debtors comprising the Operating Debtor Group), while Access Lending is in its own "Debtor Group").

10.     On February 2, 2008, the Debtors and the Pre-Confirmation Committee as co-proponents (the "Original Plan Proponents") filed the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 4805] and the Debtors filed the Disclosure Statement for the Joint Chapter 11 Plan

871230.003-1727216.9
130566.01600/40184150v.1

of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 4804].

11.     On February 15, 2008, the Debtors filed the Motion of Debtors and Debtors-in-Possession for an Order (A) Approving Proposed Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008; (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Liquidation; and (C) Scheduling a Hearing on Confirmation of Proposed Join Chapter 11 Plan of Liquidation and Approving Related Notice Procedures [Docket No. 4897] (the "Original Procedures Motion").  On February 27, 2008, the Debtors filed the Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 5103].  On March 18, 2008, the Original Plan Proponents filed their First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 [Docket No. 5405] and this Court entered its order approving the Original Procedures Motion [Docket No. 5396] (the "Original Procedures Order").

12.     On April 23, 2008, the Debtors filed the Declaration of Jamie L. Edmonson Regarding Tabulation of Votes in Connection with the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008, as Further Amended [Docket No. 6406] (the "Edmonson Declaration") and the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6412] (as modified by the Confirmation Order, the "Original Plan").

871230.003-1727216.9
130566.01600/40184150v.1

13.     As set forth in the Edmonson Declaration, each Class of Creditors that was entitled to vote on the Original Plan voted to accept the Original Plan except Class HC3b which was the Other Unsecured Claims against NCFC.  While the overwhelming majority (95.42%) of the dollar value of the Claims in Class HC3b voted to accept the Original Plan, 73.02% (or 203) of the Creditors that voted in Class HC3b voted to reject the Original Plan.  Therefore, under Section 1126 of the Bankruptcy Code, Class HC3b rejected the Original Plan.  The vast majority of the HC3b Creditors that voted to reject the Original Plan are Beneficiaries (as hereinafter defined) that are now part of the DCP Settlement (as hereinafter defined) and will support the Modified Plan upon approval of the Settlement Agreement by the Bankruptcy Court.

14.     The Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008, and the Order Amending the Confirmation Order on July 22, 2008 (the "Order Amending Confirmation Order").

15.     On July 14, 2008, Gregory J. Schroeder, Michelle Park, Martin Warren, Steve Holland and Nabil Bawa and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan, for themselves and all other similarly situated beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Beneficiaries") filed a Notice of Appeal of the Opinion on Confirmation and the Order Regarding the Opinion on Confirmation (the "First Appeal").  On July 24, 2008, the Beneficiaries filed a Notice of Appeal of the Confirmation Order and the Order Amending the Confirmation Order (the "Second Appeal").

871230.003-1727216.9
130566.01600/40184150v.1

16.    On July 29, 2008, the Beneficiaries filed a motion to stay the Confirmation Order pending their Appeal (the "Beneficiaries' Stay Motion").  After a hearing on August 22, 2008, the Bankruptcy Court denied the Beneficiaries' Stay Motion, but imposed, with the consent of the Trustee, a notice mechanism that requires notice be provided to the Beneficiaries before certain Classes of Creditors can receive distributions under the Original Plan.

17.    On August 1, 2008 (the "Effective Date"), the Original Plan became effective. Pursuant to the terms of the Original Plan, on the Effective Date Jacobs was appointed as Plan Administrator of Reorganized Access Lending and the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Liquidating Trust, appointing Jacobs as Liquidating Trustee of the Liquidating Trust and forming the post-confirmation committee (the "Plan Advisory Committee").

18.    On August 4, 2008, a Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008, (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements and Rejection Damages Claims (the "Notice of Effective Date") was filed with the Court and served on all known creditors and parties-in-interest.

19.    On October 1, 2008, the Beneficiaries filed a motion to consolidate their First Appeal and Second Appeal (together, the "Appeal").  On October 16, 2008, this Court granted their motion.

20.    On January 22, 2009, the Debtors filed a motion to dismiss the Appeal on the grounds of equitable mootness (the "Motion to Dismiss").  On June 16, 2009 the District Court issued a Memorandum Opinion ("Memorandum Opinion") and signed an Order (the "Order on

8

Appeal") denying the Motion to Dismiss and reversing the Confirmation Order. The Memorandum Opinion and Order on Appeal were entered on June 17, 2009.

21.     On June 24, 2009 the Trustee filed with the District Court: (i) a Motion for Rehearing or in the alternative Clarification of the District Court Order on Appeal (the "Motion for Rehearing"), (ii) a Motion for Stay of the District Court Order (The "Motion for Stay"), (iii) an Affidavit of Alan M. Jacobs in support of Motion for Rehearing and Motion for Stay, and (iv) an Emergency Motion for Expedited Consideration of Motion for Rehearing and Motion for Stay.

22.     On June 26, 2009 the District Court entered an order (the "Stay Order") denying the Motion for Rehearing but granting the Motion for Stay, granting a stay of the Memorandum Opinion and Order on Appeal pending appeal to the Third Circuit Court of Appeals (the "Stay"). On July 17, 2009, the Trustee filed his Notice of Appeal of the Memorandum Opinion and Order on Appeal with the Third Circuit.

23.     The Beneficiaries and the Trustee have reached an agreement (the "DCP Settlement") that resolves the adversary proceeding that was commenced by the Beneficiaries on or about June 20, 2007 against the Debtors in this Court (Adv. Pro 07-51598) ("the Adversary Proceeding"). Such agreement has been memorialized in the Settlement Agreement which has been fully executed by the Beneficiaries and the Trustee. The Trustee filed a motion with this Court pursuant to Fed. R. Bank. P. ("Bankruptcy Rule") 9019 seeking approval of the Settlement Agreement on September 8, 2009, which is scheduled to be heard on October 6, 2009.

24.     On July 17, 2009, the Trustee and the Plan Advisory Committee filed the Motion for order preserving the status quo, including (i) maintaining the Liquidating Trust and Reorganized Access Lending and (ii) maintaining Alan M. Jacobs as the Liquidating Trustee of

871230.003-1727216.9
130566.01600/40184150v.1

the Liquidating Trust, Plan Administrator of Reorganized Access Lending and sole officer and director of the Debtors, pending entry of a final order consistent with the District Court's Memorandum Opinion (the "Status Quo Motion").

25. This Court entered an order granting the Status Quo Motion on July 27, 2009 (the "Status Quo Order"). Pursuant to the terms of the Status Quo Order, the Trustee has withdrawn his appeal of the Memorandum Opinion and Order on Appeal.

## PROPOSED MODIFICATIONS TO THE ORIGINAL PLAN

26. Pursuant to the Order on Appeal, Judge Robinson has remanded the matter of confirmation to this Court for further proceedings consistent with her Order on Appeal and Memorandum Decision. In consultation with the Plan Advisory Committee, the Trustee decided not to pursue his appeal to the Third Circuit Court of Appeals and voluntarily withdrew his Notice of Appeal. Accordingly, the Trustee has worked with the Plan Advisory Committee to develop a mechanism to resolve the issues raised by Judge Robinson in her Order on Appeal and Memorandum Decision.

27. The Proposed Modifications center around three discreet modifications with respect to (a) the treatment of NC Credit Creditors and NC Credit Assets as the treatment of such under the Original Plan was a basis for the District Court's reversal of the Confirmation Order, (b) the implementation of the Settlement Agreement, and (c) preservation of actions taken by the Trustee in reliance on the Original Plan having gone effective without any stay pending appeal. First, the Trustee and the Plan Advisory Committee have modified the Original Plan to remove NC Credit from the Holding Company Debtor Group and, thus, from each of the provisions that treat the Holding Company Debtors as a unified debtor group sharing assets and liabilities. Accordingly, NC Credit's Assets, consisting solely of an intercompany claim against NCFC in the amount of $67 million and an intercompany claim against NCMC in the amount of $16.9

10

million, will not be included among the Holding Company Debtor Assets and, thus, will not be available for distribution to all Holders of Allowed Claims against the Holding Company Debtors. Rather, the NC Credit Assets will be available only for distribution to Holders of Allowed Claims against NC Credit. As a result of the removal of the NC Credit Assets from the Holding Company Debtor Assets, it is no longer necessary to give certain Holding Company Creditors enhanced distributions in exchange for their agreement to forgo recoveries on their NC Credit Claims pursuant to the terms of the Multi Debtor Protocol contained in the Original Plan. This mechanism was found by the District Court to have violated Section 1124(a)(3) of the Bankruptcy Code by creating disparate treatment among similarly situated Holding Company Creditors. Likewise, Holders of Allowed Claims against NC Credit will not be entitled to share in a distribution from any of the Holding Company Debtor Assets, except to the extent that the intercompany claim applied against NCFC receives a distribution. Additionally, in order to maintain the same proportionality in potential litigation recoveries that were originally assigned to Holders of Allowed Claims against NC Credit in the Original Plan by virtue of Holders of Allowed Claims against NC Credit sharing in the Holding Company Debtor Portion of Litigation Proceeds, the Holding Company Debtor Portion of Litigation Proceeds will be reduced from 27.5% to 24.75% of the Litigation Proceeds. As a result, the remaining 2.75% of the Litigation Proceeds will become the NC Credit Portion of the Litigation Proceeds to be distributed to Holders of Allowed Claims against NC Credit in accordance with the Modified Plan.

28.     Next, the Modified Plan includes provisions to effectuate the terms of the DCP Settlement. In July 2009, the Beneficiaries and the Liquidating Trustee agreed to resolve the Adversary Proceeding in accordance with the terms of the Settlement Agreement. The Settlement Agreement provides, in relevant part, that the Trustee will liquidate the assets

currently being held by the Trustee related to the Rabbi Trust established by the Debtors prior to the Petition Date (the "Plan Trust Assets") to make certain payments to the Beneficiaries and returning the balance of the Plan Trust Assets to the Liquidating Trust. The settlement amount shall be paid pro rata to the Beneficiaries, based upon vested balances in the New Century Benefit Plan as of December 31, 2007; with distributions to certain of the Beneficiaries, who are currently defendants in a litigation brought by the Trustee for breach of fiduciary duty, to be held by the Trustee pending the conclusion of such litigation.

29.     The Settlement Agreement will not become effective until the Bankruptcy Court enters an order approving the Modified Plan. The distributions contemplated by the Settlement Agreement are to be made as soon thereafter as is practicable after the occurrence of the Modified Effective Date. Additionally, the parties have agreed, pursuant to the Settlement Agreement, to enter into full and final mutual releases, with the exception of any claims that the Liquidating Trust may have under Chapter 5 of the Bankruptcy Code against the Beneficiaries that are not based on distributions made on account of the New Century Benefit Plan. The Beneficiaries shall not be entitled to any further distribution under the terms of the Modified Plan or from the Liquidating Trust. The Settlement Agreement also provides that the Beneficiaries will consent to the Modified Plan provided it preserves the DCP Settlement Agreement.

30.     Although the Proposed Modifications drafted specifically to address the issues raised on appeal are relatively simple and straightforward, the attached comparison of the Modified Plan with the Original Plan show numerous changes. Many of these changes are necessary simply for purposes of maintaining uniformity throughout the Modified Plan. Others, however, are necessary to maintain the integrity of the actions that have been taken by the

871230.003-1727216.9
130566.01600/40184150v.1

Trustee in making substantial progress toward winding down the post-confirmation estate pursuant to the terms of the Original Plan since the Effective Date.

<strong><u>RELIEF REQUESTED AND BASIS THEREFOR</u></strong>

31. By this Motion, the Trustee seeks an order (I) establishing procedures for the limited solicitation and tabulation of votes to accept or reject the Modified Plan, (II) approving the proposed Modified Disclosure Statement for the Modified Plan, (III) scheduling a hearing on confirmation of the Modified Plan and approving related notice procedures, and (IV) confirming the Modified Plan.

## I. <u>Limited Solicitation</u>

32. The Trustee seeks approval of a limited solicitation process whereby only the NC Credit Creditors and Settling Parties will be entitled to vote on the Modified Plan, as such Creditors are the only creditors directly affected by the Proposed Modifications.

33. In relevant part, Section 1127 of the Bankruptcy Code provides:

> (b) [t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.
>
> (c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.
>
> (d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

11 U.S.C. § 1127.

871230.003-1727216.9
130566.01600/40184150v.1

34.     Courts addressing the issue of plan modifications have concluded uniformly that resolicitation is unnecessary unless a modification has an adverse impact on the treatment of the claims of a creditor accepting the prior version of the plan.  In <u>In re American Solar King Corp.</u>, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988), the modification at issue added an allowed claim to a class the distribution for which was in the form of stock.  The additional shares necessary to pay the "new" claimant raised the possibility that the value of the distribution (i.e., stock) received by the other class members would be diluted.  The bankruptcy court nevertheless concluded that the proposed modification did not cause a sufficiently "material" negative change in the treatment of this class's claims to warrant a resolicitation to such claimants.  <u>Id</u>. at 823-25.

35.     Likewise, in <u>In re Mt. Vernon Plaza Community Urban Redevelopment Corp. I</u>, 79 B.R. 305 (Bankr. S.D. Ohio 1987), the court found that modifications that added a co-proponent, included another party to the plan, increased administrative expenses, set a time limit for filing proofs of claim, and added various technical modifications did not, taken as a whole, adversely change the treatment of any creditor's claim.  The court concluded that a plan modification is not adverse where "[n]one of the changes negatively affects the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest."  <u>Id</u>. at 306.

36.     Only where a creditor's interest is materially and adversely affected by proposed plan modifications must that party be afforded an opportunity to change its vote in accordance with the disclosure and solicitation requirements of Section 1125 of the Bankruptcy Code.  <u>In re Frontier Airlines, Inc.</u>, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988); <u>see also</u> <u>Enron Corp. v. New Power Co. (In re New Power Co.)</u>, 438 F.3d 1113, 1118 (11th Cir. 2006).  A modification is considered material if "it so affects a creditor or interest holder who accepted the plan that such

14

entity, if it knew of the modification, would be likely to reconsider its acceptance." American Solar King Corp., 90 B.R. at 824 (citations omitted); see also In re Concrete Designers, Inc., 173 B.R. 354, 357 (S.D. Ohio 1994).

37.     Courts in Delaware have not extensively addressed post-confirmation plan modifications.  However, when the issue has been addressed, the courts have found that resolicitation is unnecessary and less stringent requirements than those in 11 U.S.C. 1125(b) are allowed regarding disclosure of the post-confirmation modifications where the modifications do not materially and adversely affect or change the plan. In In re Federal-Mogul Global Inc., T & N Limited et al., the court held

> [p]ursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, [modifications that do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor] do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims against or Equity Interests in the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan as filed with the Bankruptcy Court.  Disclosure of the Modifications constitutes due and sufficient notice thereof under the circumstances. . . .

2007 Bankr. LEXIS 3940 at *113 (Bankr. D. Del. November 8, 2007).  The court held, therefore, that "all votes cast with respect to the Plan prior to the Modifications shall be binding and shall be deemed to be cast with respect to the Plan as modified." Id.  See also In re Celotex Corp., 204 B.R. 586, 608-09 (Bankr. M.D. Fla. 1996) (holding that creditors and equity holders who had accepted debtor's plan of reorganization were deemed to have accepted modifications that did not adversely change treatment under plan of any claims or interests); In re Placid Oil Co., 92 B.R. 183, 190 (Bankr. N.D. Tex. 1988).

38.     As part of the due diligence conducted by the Trustee and the Plan Advisory Committee in addressing the issues surrounding reversal of the Confirmation Order, an analysis

of the potential recoveries under the Modified Plan was prepared. The analysis of potential recoveries was developed using information available to the Trustee as of July 30, 2009, and such information was applied to both the Original Plan and the Modified Plan structures in order to generate a comparative analysis of potential recoveries. The analysis demonstrated that the Proposed Modifications would have, at most, a minimal impact on recoveries on the Holding Company Debtor Unsecured Claims and the NC Credit Unsecured Claims as provided for in the Modified Plan and have no impact on recoveries on the Operating Debtor Unsecured Claims. In many instances in which an impact may occur such impact is expected to be less than a 1% variance when compared to the potential recoveries under the Original Plan's structure. The only instance in which the variance exceeds 1% is for Holders of Other Unsecured Claims against NC Credit in Class HC10b. The potential recoveries to Creditors in Class HC10b are reduced from 0-6.8% under the Original Plan to 0.3-1.3% under the Modified Plan.

39. Given that the Creditors holding Special Deficiency Claims against NC Credit in Class HC10a, Other Unsecured Claims against NC Credit in Class HC10b and the Settling Parties in Class HC14 are directly affected by the Proposed Modifications (even though for the most part such Proposed Modifications do not have a materially adverse impact on their expected recoveries), the Trustee proposes to resolicit acceptances or rejections from only the Creditors in Classes HC10a, ClassHC10b and HC14 with respect to the Modified Plan.

40. The Holders of Claims and Interests in all Classes other than Class HC10a, Class HC10b and Class HC14 are not being materially adversely affected by the Proposed Modifications in the Modified Plan. Accordingly, the Trustee proposes that these Holders of Claims and Interests will not be resolicited for purposes of voting on the Modified Plan. With respect to Creditors who voted or had the opportunity to vote on the Original Plan, the Trustee

871230.003-1727216.9
130566.01600/40184150v.1

proposes that these Creditors, including Creditors in Class HC3b as reconstituted under the Modified Plan, will not be entitled to modify their vote on the Modified Plan and the acceptance or rejection of the Original Plan by the Creditors or the acceptance or rejection of the Original Plan by the Creditors' Classes will be binding on these Creditors and Creditors' classes for purposes of the Modified Plan.

## II.     Procedures for Solicitation and Tabulation of Votes

### A.     The Solicitation Packages and Notices

41.     Bankruptcy Rule 3017(d) identifies the materials that must be provided to holders of claims and equity interests for purposes of soliciting their votes and providing adequate notice of the hearing on confirmation of a chapter 11 plan:

> [u]pon approval of a disclosure statement, -- except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders -- the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)     the plan or a court-approved summary of the plan;
>
> (2)     the disclosure statement approved by the court;
>
> (3)     notice of the time within which acceptances and rejections of such plan may be filed; and
>
> (4)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders pursuant to Ru1e 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

871230.003-1727216.9
130566.01600/40184150v.1

42.     In accordance with Bankruptcy Rule 3017(d), the Trustee proposes to mail or cause to be mailed to the Voting Creditors, packages (the "Solicitation Packages") containing copies of: (a) the Confirmation Hearing Notice (as defined herein), (b) the Modified Disclosure Statement (together with the exhibits thereto, including the Modified Plan), and (c) an appropriate form of ballot, a ballot return envelope and such other materials as the Court may direct. The Trustee proposes to distribute ballots to the Voting Creditors in the forms attached hereto as Exhibit C-1, Exhibit C-2 and Exhibit C-3 (the "Ballots"). Solicitation of the Non-Voting Classes is not required and no Ballots have been proposed for Holders of Claims or Interests in the Non-Voting Classes. The Trustee further proposes that if a Creditor is entitled to vote to accept or reject the Modified Plan on account of more than one Claim, a single Solicitation Package shall be mailed to such Creditor, which Solicitation Package shall contain the appropriate form of Ballots and Ballot return envelopes.

43.     Pursuant to Bankruptcy Rule 3017(d), the Trustee is requesting that the Court enter an order providing that the Trustee shall not mail copies of the Modified Plan or Modified Disclosure Statement to any of the Non-Voting Creditors in the Non-Voting Classes, as such Creditors are unimpaired by the Proposed Modifications and are not entitled to vote on the Modified Plan. Bankruptcy Rule 3017(d) provides that:

> [i]f the Court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

871230.003-1727216.9
130566.01600/40184150v.1

44.     Consistent with Bankruptcy Rule 3017(d), the Trustee proposes to mail or cause to be mailed to each of the Non-Voting Creditors in the Non-Voting Classes one of three notices of unimpaired non-voting status (collectively, the "Notices of Non-Voting Status"), substantially in the forms attached hereto as Exhibit D-1, Exhibit D-2 and Exhibit D-3, and the Confirmation Hearing Notice. The Trustee will also transmit to the United States Trustee copies of the Modified Plan and Modified Disclosure Statement along with the Confirmation Hearing Notice.

### B.     Solicitation Procedures

45.     The Trustee requests that the Court order that he shall not mail Solicitation Packages, Notice of Non-Voting Status or a Confirmation Hearing Notice to any individual or entity at an address from which the Original Plan, Original Disclosure Statement or any notices mailed in connection therewith was returned by the United States Postal Service or overnight delivery carrier as undeliverable, unless the Trustee was provided with an accurate address by such individual or entity prior to the Record Date (as hereinafter defined).

46.     The Trustee proposes that the Court establish June 30, 2009 as the new record date pursuant to Bankruptcy Rule 3017(d) for purposes of determining which Holders of Claims or Interests are entitled to receive Solicitation Packages, a Notice of Non-Voting Status, or Confirmation Hearing Notice and, where applicable, vote on the Modified Plan (the "Record Date"); provided, however, that a Holder of any Claim that has been expunged by order of the Bankruptcy Court subsequent to the Record Date shall not be entitled to receive the Solicitation Package or vote on the Modified Plan and shall only be entitled to receive such notice as it would be entitled to receive if its Claim were expunged prior to the Record Date. The establishment of the Record Date is for the foregoing purposes only and shall otherwise have no preclusive effect.

47.     With respect to a transferred Claim in a Voting Class, the Trustee further proposes that the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account

19

of such transferred Claim only if, by the Record Date, (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed or (b) the transferee files (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. Each transferee will be treated as a single Creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code and the other voting and solicitation procedures set forth herein.

### C.    Voting and Tabulation Rules

48.     The Trustee anticipates commencing the solicitation period by mailing the Solicitation Packages to the Voting Creditors by no later than October 19, 2009. The Trustee proposes that, to be counted as votes to accept or reject the Modified Plan, all Ballots must be properly executed, completed and delivered to the Liquidating Trust (the "Balloting Agent") either (a) by mail in the return envelope provided with each Ballot, (b) by overnight courier or (c) by personal delivery so that, in each case, such Ballots are received by the Balloting Agent no later than 5:00 p.m., Pacific Time, on November 10, 2009 (the "Voting Deadline").

49.     Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan…." Fed. R. Bankr. P. 3017(a). The Trustee submits that under the circumstances and given the relatively discreet modifications directly affecting the Voting Creditors, the proposed solicitation period provides sufficient time for the Voting Creditors to make informed decisions to accept or reject the Modified Plan and submit timely Ballots. Accordingly, the Trustee respectfully requests that the Bankruptcy Court approve the proposed solicitation period.

50.     Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

51.     Solely for purposes of voting to accept or reject the Modified Plan - and not for the purpose of the allowance of, or distribution on account of, a Claim or Interest and without prejudice to the rights of the Trustee in any other context – the Trustee proposes that each Claim within a Voting Class entitled to vote to accept or reject the Modified Plan be temporarily allowed in accordance with the following rules (collectively, the "Tabulation Rules"):

(1)     Unless otherwise provided in the Tabulation Rules described below, a Claim shall be deemed temporarily allowed for voting purposes in an amount equal to (i) the amount of such Claim as set forth in a timely filed Proof of Claim or (ii) if no Claim has been timely filed, the amount of such Claim as set forth in the respective Debtors' Schedules if such claim is listed in the Schedules;

(2)     If a Claim was temporarily allowed for voting purposes in connection with the Original Plan pursuant to a stipulation or an order of the Bankruptcy Court, and such Claim has not yet become an Allowed Claim, such Claim shall be allowed in the same amount for voting purposes for the Modified Plan;

(3)     If a Claim is deemed allowed in accordance with the Modified Plan, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Modified Plan;

(4)     If a Claim for which a Proof of Claim has been timely filed is filed as a contingent or unliquidated Claim it shall be temporarily allowed for voting purposes only in the amount of $1.00;

(5)     If a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim shall be temporarily allowed for voting purposes in the amount so estimated or allowed by the Bankruptcy Court;

871230.003-1727216.9
130566.01600/40184150v.1

(6)  If a Claim is deemed allowed in Class HC14, in accordance with the Modified Plan, as a Settling Party's Claim in the Schroeder Litigation (as defined in the Modified Plan), such Claim shall be temporarily allowed for voting purposes in the amount set forth on Exhibit A to the *Settlement Agreement by and Among Alan M. Jacobs, as Liquidating Trustee of the New Century Liquidating Trust and as Sole Officer and Director of New Century Financial Corporation and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and SERP*.

(7)  If the Debtors or the Liquidating Trustee have filed and served an objection to a Claim by the Voting Deadline, which objection has not been resolved, such Claim shall be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection or by order of the Bankruptcy Court unless the Bankruptcy Court has issued an order estimating or otherwise temporarily allowing the Claim for voting purposes pursuant to a motion filed by the Creditor;

(8)  If a Holder of a Claim identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim shall be temporarily allowed for voting purposes in the lesser amount identified on such Ballot;

(9)  If a Holder of a Claim identifies a Claim amount on its Ballot that is more than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim shall be temporarily allowed for voting purposes in the amount calculated in accordance with the Tabulation Rules;

(10)  Any Ballot received from a Holder of a Claim listed as contingent, disputed, or unliquidated in the Debtors' Schedules shall not be counted unless the Holder of such Claim filed a Proof of Claim on or before the applicable Bar Dates.

52.     The Trustee asserts that the proposed Tabulation Rules will establish a fair and equitable voting process.   Nevertheless, if any Holder of a Claim seeks to challenge the allowance of its Claim for voting purposes in accordance with the Tabulation Rules, the Trustee proposes that such Holder be required to file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Modified Plan (a "Rule 3018 Motion") and serve such motion on the Trustee so that it is received no later than **[October 27, 2009]**.   In accordance with Bankruptcy Rule 3018, the Trustee further proposes that any Ballot submitted by a Creditor that files a Rule 3018 Motion will be counted solely in accordance with the Tabulation Rules and the

other applicable provisions contained herein unless and until the underlying Claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing. The Trustee reserves the right to request that the Bankruptcy Court modify the voting rules or procedures if necessary or appropriate.

53.     In tabulating the Ballots, the Trustee requests that the following additional procedures be utilized: (a) any Ballot that is properly completed, executed and timely returned to the Balloting Agent, but that does not indicate an acceptance or rejection of the Modified Plan, will not be counted either as a vote to accept the Modified Plan or a vote to reject the Modified Plan; (b) if a Creditor casts more than one Ballot voting the same Claim before the Voting Deadline, the last Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and, thus, will supersede any prior Ballots; (c) if a Creditor holds a Claim in more than one Voting Class, such Creditor must submit a separate Ballot for voting its Claims in each Voting Class; (d) if a Creditor uses one Ballot to vote Claims in more than one Voting Class, such Ballot will not be counted; and (e) Creditors will be required to vote all of their Claims within a particular Class under the Modified Plan either to accept or reject the Modified Plan and may not split their votes; thus, a Ballot (or a group of Ballots within a Class received from a single Creditor) that partially rejects and partially accepts the Modified Plan will not be counted.

54.     The Trustee proposes that no later than November 13, 2009, a voting report (the "Voting Report") will be filed on behalf of the Liquidating Trust with the Bankruptcy Court which will detail the tabulation of Ballots cast for or against the Modified Plan. The Voting Report will adopt for purposes of confirming the Modified Plan those votes cast with respect to the Original Plan that are deemed to be binding with respect to the Modified Plan. The Voting Report will also detail any defective, irregular or otherwise invalid Ballots that were not counted.

871230.003-1727216.9
130566.01600/40184150v.1

## III. Approval of Disclosure Statement for Plan Modifications

55.     The Trustee requests that the proposed Modified Disclosure Statement be approved as providing "adequate information" in accordance with section 1125 of the Bankruptcy Code.  For the reasons described below, the Trustee submits that such approval is warranted and appropriate.

### A.     Notice of Modified Disclosure Statement Hearing

56.     Bankruptcy Rule 3017(a) provides as follows:

> after a disclosure statement is filed in accordance with [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at least 25 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in [Bankruptcy] Rule 2002 to consider the disclosure statement and any objections or modifications thereto.  The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the [Bankruptcy] Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan . . . .

Fed. R. Bankr. P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires notice by mail to the trustee, all creditors, and indenture trustees of the time set for filing objections to, and the hearing to consider approval of, a disclosure statement.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.

57.     In accordance with these requirements, the Trustee proposes to mail a copy of a notice in the form attached hereto as Exhibit E (the "Modified Disclosure Statement Notice") by first class mail to the following parties: (a) all Creditors, which were docketed on or before the date of the Modified Disclosure Statement Notice; (b) all indenture trustees; and (c) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases (including those parties requesting notice post-confirmation).  Among other

things, the Modified Disclosure Statement Notice identifies the date, time and place of the hearing on the Modified Disclosure Statement (the "Modified Disclosure Statement Hearing") and the deadline and procedures for asserting objections to the approval of the Modified Disclosure Statement. In further accordance with Bankruptcy Rule 3017(a), the Trustee will mail the Modified Plan and Modified Disclosure Statement to the Securities and Exchange Commission along with the Modified Disclosure Statement Notice.

58. The Trustee submits that the foregoing procedures provide adequate notice of the Modified Disclosure Statement Hearing and, accordingly, requests that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended from time to time the "Local Rules").

### B. Modified Disclosure Statement Contains Adequate Information

59. Pursuant to 11 U.S.C. §1127(c) of the Bankruptcy Code, "[t]he proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified." Pursuant to Section 1127(f)(2) of the Bankruptcy Code, "[t]he plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved."

60. Under Section 1125 of the Bankruptcy Code, as incorporated by Section 1127 of the Bankruptcy Code, a plan proponent cannot solicit votes from the affected classes, "unless at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §1125(b). Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as

871230.003-1727216.9
130566.01600/40184150v.1

> adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. §1125(a)(1). Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the debtor's plan. See In re Zenith Elecs. Corp., 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); In re Dakota Rail, Inc., 104 B.R. 138, 142-43 (Bankr. D. Minn. 1989); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of a disclosure statement is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties).

61. A court has broad discretion in determining whether a disclosure statement contains adequate information. See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop.), 150 F.3d 503, 518 (5th Cir. 1998), cert. denied, 119 S. Ct. 2019 (1999); Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142,1157 (5th Cir. 1988); In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995); see also Dakota Rail, 104 B.R. at 143 (a court has "wide discretion to determine. . . whether a disclosure statement contains adequate information without burdensome, unnecessary and cumbersome detail").

62. Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.

26

63.     To comply with Section 1127(c) as it incorporates Section 1125(b) of the Bankruptcy Code, the Trustee has developed the proposed Modified Disclosure Statement to provide Voting Creditors with adequate information regarding the Proposed Modifications. The Trustee is seeking approval of the Modified Disclosure Statement and a finding that the Modified Disclosure Statement complies with Section 1127(c) as it incorporates Section 1125(b) of the Bankruptcy Code.

64.     The Trustee submits that the Modified Disclosure Statement contains adequate information under the circumstances within the meaning of Section 1125 of the Bankruptcy Code, including, inter alia, information with respect to: (a) the terms of the Modified Plan; (b) estimates of the Voting Class Claims asserted or to be asserted against the Estates and the value of distributions to be received by Holders of such Voting Class Claims; (c) the risk factors affecting the Modified Plan; (d) a discussion of the impact that the Proposed Modifications are expected to have on recoveries; and (e) appropriate disclaimers regarding the Court's approval of information only as contained in the Modified Disclosure Statement. Accordingly, the Modified Disclosure Statement contains adequate information within the meaning of Section 1125 of the Bankruptcy Code and, on that basis, should be approved under Section 1127 of the Bankruptcy Code.

## IV.     Confirmation Hearing and Approval of the Plan

65.     Lastly, the Trustee seeks a hearing (the "Confirmation Hearing") to consider confirmation of the Modified Plan, to become effective on the first business day following entry of a Final Order confirming the Modified Plan (the "Modified Effective Date").

### A.     The Confirmation Hearing

66.     Bankruptcy Rule 3017(c) provides:

> [o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c).

67.     In accordance with Bankruptcy Rule 3017(c) and consistent with the proposed solicitation schedule, the Trustee requests that the Confirmation Hearing be scheduled for not later than November 17, 2009. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned confirmation hearing. The Trustee further proposes that objections, if any, to the confirmation of the Modified Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection to the confirmation of the Modified Plan; and (d) be filed with the Court and served on (i) counsel to the Trust, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attention: Mark S. Indelicato, Esq. and Mark T. Power, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19891 (Attention: Bonnie Glantz Fatell, Esq. and David W. Carickhoff, Esq.); (ii) Chairman of the Plan Advisory Committee, Baker Hostetler, 1050 Connecticut Avenue, N.W., Washington DC 20036 (Attention:  Donald Workman); and (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attention: Joseph J. McMahon, Jr., Esq.), so that they are received no later than 4:00 p.m., Eastern Time, on November 10, 2009 (the "Confirmation Objection Deadline").

68.     Bankruptcy Rule 2002(b) requires at least 25 days' notice by mail to all creditors and indenture trustees of the time set for filing objections to confirmation of a chapter 11 plan and the hearing to consider confirmation of a chapter 11 plan. Bankruptcy Rule 2002(d) also

871230.003-1727216.9
130566.01600/40184150v.1

requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.

69.     The Trustee proposes to serve on all Creditors, Indenture Trustees, and the U.S. Trustee a copy of (i) the order approving this Motion, and (ii) a notice substantially in the form attached hereto as Exhibit F (the "Confirmation Hearing Notice") setting forth: (a) the Voting Deadline for the submission of Ballots to accept or reject the Modified Plan; (b) the deadline for filing Rule 3018 Motions; (c) the Confirmation Objection Deadline; and (d) the time, date and place of the Confirmation Hearing.

70.     The Trustee submits that the foregoing procedures for providing notice of the Confirmation Hearing, the Voting Deadline and the Confirmation Objection Deadline and related matters fully comply with Bankruptcy Rules 2002 and 3017. Accordingly, the Trustee requests that the Court approve such procedures as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

## NOTICE

71.     Notice of this Motion and the hearing to consider same have been provided to the U.S. Trustee, all Creditors and indenture trustees and all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

72.     The Trustee submits that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules incorporated by reference into Local Rule 1001-1(b), the Trustee respectfully requests that the Court set aside the briefing schedule set forth in Local District Court Rule 7.1.2(a).

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit G: (i) approving the Modified Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code; (ii) establishing procedures for

29

solicitation and tabulation of votes to accept or reject the Modified Plan, as described herein, including approval of (a) the form of the Ballots for submitting votes on the Modified Plan, (b) the Voting Deadline for the submission of Ballots, (c) the contents of the Solicitation Packages, (d) the Record Date for voting, (e) the Tabulation Rules and other vote tabulation procedures described herein; (iii) scheduling the Confirmation Hearing and approving related notice procedures; (iv) confirming the Modified Plan; and (v) granting such other and further relief as the Court may deem proper.

Dated: September 30, 2009

BLANK ROME LLP

By: */s/ David W. Carickhoff*
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400 - Telephone
(302) 425-6464 - Facsimile

- and -

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200 - Telephone
(212) 478-7400 - Facsimile
Attn: Mark S. Indelicato, Esq.
Mark T. Power, Esq.
Janine M. Cerbone, Esq.

*Co-Counsel to the New Century Liquidating*
*Trust and Reorganized Access Lending*

871230.003-1727216.9
130566.01600/40184150v.1