**Exhibit 1**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| In re | Honorable Kevin J. Carey |
| | Chapter 11 |

| | |
|---|---|
| New Century Mortgage Corporation | 07-10419 |
| New Century Mortgage Ventures, LLC | 07-10429 |
| NC Capital Corporation | 07-10420 |
| NC Residual III Corporation | 07-10424 |
| New Century R.E.O. Corp. | 07-10426 |
| New Century R.E.O. II Corp. | 07-10427 |
| New Century R.E.O. III Corp. | 07-10428 |
| NC Deltex, LLC | 07-10430 |
| NCoral, L.P. | 07-10431 |
| NC Asset Holding, L.P. | 07-10423 |
| Home123 Corporation | 07-10421 |
| New Century TRS Holdings, Inc. | 07-10416 |
| NC Residual IV Corporation | 07-10425 |
| New Century Credit Corporation | 07-10422 |
| New Century Financial Corporation | 07-10417 |
| New Century Warehouse Corporation | 07-11043 |

Debtors.

## DISCLOSURE STATEMENT FOR THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION DATED AS OF SEPTEMBER 30, 2009

| | |
|---|---|
| Mark S. Indelicato | Bonnie Glantz Fatell |
| Mark T. Power | David W. Carickhoff |
| Janine M. Cerbone | BLANK ROME LLP |
| HAHN & HESSEN LLP | 1201 Market Street |
| 488 Madison Avenue | Suite 1800 |
| New York, New York 10022 | Wilmington, DE 19891 |
| (212) 478-7200 | (302) 425-6400 |

Counsel for Alan M. Jacobs
as Plan Administrator of Reorganized Access Lending
and as Liquidating Trustee of the New Century Liquidating Trust
(including in the Liquidating Trustee's capacity as sole officer and director of each Debtor).

# TABLE OF CONTENTS

I.     PURPOSE OF THE MODIFIED DISCLOSURE STATEMENT ....................................II

II.    BACKGROUND ...........................................................................................................4

    A.     BANKRUPTCY FILING BY THE DEBTORS........................................................4

    B.     THE ORIGINAL PLAN.............................................................................................5

        (i)     Confirmation of the Original Plan ................................................................5

        (ii)    Occurrence of the Original Effective Date ...................................................6

        (iii)   The Appeal of the Original Confirmation Order .........................................6

        (iv)   Preservation of the Status Quo Pending Appeal to the Third Circuit..........8

    C.     ACTIONS TAKEN SINCE THE ORIGINAL EFFECTIVE DATE .....................9

        (i)     Causes of Action ..........................................................................................9

        (ii)    Discharge of Examiner; Attorney Client Privilege Issues .........................10

        (iii)   Sale of Trust Assets ...................................................................................11

        (iv)   DCP Litigation ...........................................................................................11

III.   THE MODIFIED PLAN...........................................................................................12

    A.     SUMMARY OF THE MODIFIED PLAN .............................................................12

    B.     RECOMMENDATION ...........................................................................................13

    C.     CLASSIFICATION AND TREATMENT OF CLAIMS ......................................14

    D.     Solicitation procedures...........................................................................................20

        (i)     Eligibility to Vote ......................................................................................20

        (ii)    Ballots ........................................................................................................25

        (iii)   Voting Procedure ........................................................................................25

        (iv)   Deadline for Voting ....................................................................................25

        (v)    Importance of your Vote..............................................................................25

    E.     MEANS OF IMPLEMENTING THE MODIFIED PLAN ...................................26

(i) Implementation of Modified Plan ...............................................................26

F.      CLAIMS AND DISTRIBUTIONS..........................................................26

G.     PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS ...............................................................................................32

    (i) Reservation of Rights to Object to Claims .................................32

    (ii) Objections to Claims..................................................................33

    (iii) Service of Objections..................................................................33

    (iv) Determination of Claims............................................................33

    (v) No Distributions Pending Allowance. .......................................34

    (vi) Claim Estimation. .....................................................................34

    (vii) Allowance of Claims Subject to Section 502 of the Bankruptcy Code............................................................................................34

H.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................34

I.      EFFECT OF CONFIRMATION AND INJUNCTION.........................................35

    (i) Injunction ...................................................................................35

    (ii) Term of Injunctions....................................................................36

    (iii) Exculpation ...............................................................................36

    (iv) Binding Effect of the Modified Plan and the Actions Taken Under the Original Plan Prior to the Entry of the Reversal Order.......................37

J.      CONDITIONS PRECEDENT .................................................................37

    (i) Conditions Precedent to Modified Effective Date.....................37

        a. Approval of Modified Disclosure Statement. ................37

        b. Approval of Plan Compromises....................................38

        c. Form of Modified Confirmation Order..........................38

        d. Entry of Modified Confirmation Order..........................38

    (ii) Revocation, Withdrawal, or Non-Consummation of Modified Plan .........38

871230.009-1738947.6

K.      RETENTION OF JURISDICTION ...................................................38

L.      NON-SEVERABILITY. ...................................................................39

M.     BANKRUPTCY RULE 9019 REQUEST ..........................................39

IV.     FINANCIAL INFORMATION ....................................................................39

A.      IN THE BANKRUPTCY PROCEEDING ..........................................39

B.      FINANCIAL ACTIVITY SINCE THE ORIGINAL EFFECTIVE DATE...........39

         (i)      Transfer on the Effective Date ...................................39

         (ii)     Cash Position as of August 31, 2009 ........................39

C.      PROJECTED NET DISTRIBUTABLE ASSETS .................................41

D.      RISKS AND ASSUMPTIONS ASSOCIATED WITH RECOVERY PROJECTIONS ........................................................................41

V.      CERTAIN FACTORS TO BE CONSIDERED REGARDING THE MODIFIED PLAN ........................................................................................42

VI.     CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................42

VII.    ALTERNATIVES TO CONFIRMATION OF THE PLAN ...........................................43

VIII.   ACCEPTANCE AND CONFIRMATION OF THE PLAN............................................43

A.      GENERAL CONFIRMATION REQUIREMENTS .............................43

B.      BEST INTERESTS TEST ...............................................................44

         (i)      Generally...................................................................44

C.      FINANCIAL FEASIBILITY TEST. ................................................45

D.      ACCEPTANCE BY IMPAIRED CLASSES. .....................................45

E.      APPROVAL OF PLAN SETTLEMENTS ..........................................47

IX.     CONCLUSION.........................................................................................48

871230.009-1738947.6

## I.    PURPOSE OF THE MODIFIED DISCLOSURE STATEMENT

**APPROVAL OF THIS MODIFIED DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT MEAN THAT THE BANKRUPTCY COURT RECOMMENDS ACCEPTANCE OR REJECTION OF THE MODIFIED PLAN.**

The information used in preparing this Modified Disclosure Statement was obtained by the Liquidating Trustee from information in the Debtors' books and records that were turned over to the Liquidating Trustee on the Original Effective Date.  This Modified Disclosure Statement does not constitute financial or legal advice.  Creditors and Holders of Interests of the Debtors should consult their own advisors if they have questions about the Modified Plan or this Modified Disclosure Statement.  Capitalized terms used in this Modified Disclosure Statement and not expressly defined herein will have the meaning ascribed to such terms in the Modified Plan.  The Modified Plan is annexed hereto as **Exhibit A**.  A reference in this Modified Disclosure Statement to a "Section" refers to a section of this Modified Disclosure Statement.

The Original Disclosure Statement, prepared by the Debtors in support of the Original Plan, was approved by the Bankruptcy Court on March 18, 2008.  The Original Disclosure Statement contains significant information regarding the Debtors' chapter 11 proceedings including the events leading up to the bankruptcy filing, the terms of the Original Plan and the complex settlements set forth therein including the Multi-Debtor Claims Protocol, the Intercompany Claims Protocol and the EPD/Breach Claims Protocol.  The purpose of this Modified Disclosure Statement is not to repeat the information contained in the Original Disclosure Statement but to describe the proposed changes to the Original Plan that are necessary to proceed in accordance with the Memorandum Opinion and Reversal Order whereby the District Court reversed confirmation of the Original Plan and to implement the settlement of the Adversary Proceeding commenced by the Beneficiaries.  This Modified Disclosure Statement will also address actions that have transpired since the Original Effective Date and the effects, if any, such actions have on Creditors.  The Original Disclosure Statement is annexed hereto as **Exhibit B** and is incorporated herein and made a part hereof to the extent not inconsistent with the Modified Disclosure Statement for any and all information regarding the provisions of the Original Plan that are being adopted and implemented in the Modified Plan.

**WHILE THIS MODIFIED DISCLOSURE STATEMENT DESCRIBES CERTAIN BACKGROUND MATTERS AND THE MATERIAL TERMS OF THE MODIFIED PLAN, IT IS INTENDED AS A SUMMARY DOCUMENT ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MODIFIED PLAN AND THE EXHIBITS ATTACHED TO THE MODIFIED PLAN AND THIS MODIFIED DISCLOSURE STATEMENT. YOU SHOULD READ THE MODIFIED PLAN AND ITS EXHIBITS TO OBTAIN A FULL UNDERSTANDING OF THEIR PROVISIONS.   ADDITIONAL COPIES OF THE MODIFIED DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS MODIFIED DISCLOSURE STATEMENT, AS WELL AS COPIES OF THE ORIGINAL DISCLOSURE STATEMENT, CAN BE OBTAINED FROM NEW CENTURY LIQUIDATING TRUST, 3777 MICHELSON, SUITE CN-350, IRVINE, CA 92612 (ATTENTION: MONIKA LEMHOEFER MCCARTHY), AND BLANK ROME LLP, 1201 MARKET STREET, SUITE 800, WILMINGTON, DE 19891 (ATTENTION: BONNIE GLANTZ FATELL, ESQ. AND DAVID CARICKHOFF, ESQ.),**

2

OR BY ELECTRONIC MAIL TO LiquidatingTrust@ncen.com. COPIES OF PAPERS FILED IN THIS CASE ALSO MAY BE INSPECTED DURING REGULAR COURT HOURS IN THE CLERK'S OFFICE, UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 MARKET STREET, 3RD FLOOR, WILMINGTON, DELAWARE 19801.

THE STATEMENTS AND INFORMATION CONCERNING THE DEBTORS AND THE MODIFIED PLAN SET FORTH IN THIS MODIFIED DISCLOSURE STATEMENT AND THE ORIGINAL DISCLOSURE STATEMENT, TO THE EXTENT NOT INCONSISTENT WITH THIS MODIFIED DISCLOSURE STATEMENT, CONSTITUTE THE ONLY STATEMENTS OR INFORMATION CONCERNING SUCH MATTERS THAT HAVE BEEN APPROVED BY THE BANKRUPTCY COURT FOR THE PURPOSE OF SOLICITING ACCEPTANCES OR REJECTIONS OF THE MODIFIED PLAN.

THE STATEMENTS CONTAINED IN THIS MODIFIED DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. NEITHER DELIVERY OF THIS MODIFIED DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE MODIFIED PLAN WILL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE THIS MODIFIED DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS MODIFIED DISCLOSURE STATEMENT WERE COMPILED. THE LIQUIDATING TRUSTEE ASSUMES NO DUTY TO UPDATE OR SUPPLEMENT THE DISCLOSURES CONTAINED HEREIN AND DOES NOT INTEND TO UPDATE OR SUPPLEMENT THE DISCLOSURES.

THIS MODIFIED DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE MODIFIED PLAN. CERTAIN OF THE INFORMATION CONTAINED IN THIS MODIFIED DISCLOSURE STATEMENT IS BASED ON ASSUMPTIONS THAT WERE INCLUDED IN THE ORIGINAL DISCLOSURE STATEMENT TO ENABLE CREDITORS TO COMPARE THE DISTRIBUTION TO BE PROVIDED UNDER THIS MODIFIED PLAN WITH THOSE PROJECTED UNDER THE ORIGINAL PLAN. THE ESTIMATES, ASSUMPTIONS AND PROJECTIONS UTILIZED IN THIS MODIFIED DISCLOSURE STATEMENT MAY BE MATERIALLY DIFFERENT FROM ACTUAL RESULTS, INCLUDING ESTIMATES OF THE CASH THAT WILL BE AVAILABLE FOR DISTRIBUTION TO THE HOLDERS OF CLAIMS, ESTIMATES OF THE PERCENTAGE RECOVERY OF THE VARIOUS TYPES OF CLAIMS AND INTERESTS, ESTIMATES OF THE AGGREGATE FINAL AMOUNTS OF THE VARIOUS TYPES OF CLAIMS, ESTIMATES OF THE PROCEEDS FROM THE SALES OF THE DEBTORS' REMAINING ASSETS AND ESTIMATES OF THE EXPENSES THAT WILL BE INCURRED BY THE LIQUIDATING TRUST DURING THE WIND DOWN PERIOD. THERE CAN BE NO ASSURANCE THAT ANY FORECASTED OR PROJECTED RESULTS CONTAINED HEREIN WILL BE REALIZED, AND ACTUAL RESULTS

MAY VARY FROM THOSE SHOWN, POSSIBLY BY MATERIAL AMOUNTS. IN FACT, SOME OF THE ACTUAL RESULTS ACHIEVED SINCE THE ORIGINAL DISCLOSURE STATEMENT WAS APPROVED DO VARY SUBSTANTIALLY FROM THE ESTIMATES UTILIZED IN THE ORIGINAL DISCLOSURE STATEMENT.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED THIS MODIFIED DISCLOSURE STATEMENT. PURSUANT TO THE MODIFIED PLAN, ANY SECURITIES OF THE DEBTORS ISSUED TO ANY PARTY UNDER, PURSUANT TO OR IN EFFECTUATING THE MODIFIED PLAN, AND THE OFFERING AND ISSUANCE THEREOF BY ANY PARTY, INCLUDING WITHOUT LIMITATION THE DEBTORS, ARE EXEMPT FROM SECTION 5 OF THE SECURITIES ACT OF 1933, IF APPLICABLE, AND FROM ANY STATE OR FEDERAL SECURITIES LAWS REQUIRING REGISTRATION FOR THE OFFER OR SALE OF A SECURITY OR REGISTRATION OR LICENSING OF AN ISSUER OF, UNDERWRITER OF, OR BROKER OR DEALER IN, A SECURITY, AND OTHERWISE ENJOY ALL EXEMPTIONS AVAILABLE FOR DISTRIBUTIONS OF SECURITIES UNDER A PLAN IN ACCORDANCE WITH ALL APPLICABLE LAW, INCLUDING WITHOUT LIMITATION SECTION 1145 OF THE BANKRUPTCY CODE.

## II.    BACKGROUND

### A.    BANKRUPTCY FILING BY THE DEBTORS

The following debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 2, 2007 (the "Petition Date"), thereby commencing case numbers 07-10416, 07-10417, 07-10419, 07-10420, 07-10421, 07-10422, 07-10423, 07-10424, 07-10425, 07-10426, 07-10427, 07-10428, 07-10429, 07-10430, and 07-10431 (collectively, and with the chapter 11 case of New Century Warehouse Corporation, the "Chapter 11 Cases") currently pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"):

| | |
|---|---|
| New Century Financial Corporation, a Maryland corporation; Case No. 07-10417 | New Century R.E.O. Corp., a California corporation; Case No. 07-10426 |
| New Century TRS Holdings, Inc., a Delaware corporation; Case No. 07-10416 | New Century R.E.O. II Corp., a California corporation; Case No. 07-10427 |
| New Century Mortgage Corporation, a California corporation; Case No. 07-10419 | New Century R.E.O. III Corp., a California corporation; Case No. 07-10428 |

| | |
|---|---|
| NC Capital Corporation, a California corporation; Case No. 07-10420 | New Century Mortgage Ventures, LLC, a Delaware limited liability company; Case No. 07-10429 |
| Home123 Corporation, a California corporation; Case No. 07-10421 | NC Deltex, LLC, a Delaware limited liability company; Case No. 07-10430 |
| New Century Credit Corporation, a California corporation; Case No. 07-10422 | NCoral, L.P., a Delaware limited partnership; Case No. 07-10431 |
| NC Asset Holding, L.P., a Delaware limited partnership; Case No. 07-10423 | NC Residual IV Corporation, a Delaware corporation; Case No. 07-10425 |
| NC Residual III Corporation, a Delaware corporation; Case No. 07-10424 | |

Subsequently, on August 3, 2007, New Century Warehouse Corporation, a California corporation which is also known as and is referred to herein as "Access Lending" (collectively with the above-listed entities, the "Debtors"), filed a voluntary chapter 11 petition (Case No. 07-11043).

## B.    THE ORIGINAL PLAN

### (i)    Confirmation of the Original Plan

On February 2, 2008, the Debtors and the Official Committee of Unsecured Creditors of the Debtors (the "Creditors Committee") as co-proponents (the "Original Plan Proponents") filed the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 4805] and the Debtors filed the Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 4804].

On February 15, 2008, the Debtors filed the Motion of Debtors and Debtors-in-Possession for an Order (A) Approving Proposed Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008; (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Liquidation; and (C) Scheduling a Hearing

on Confirmation of Proposed Join Chapter 11 Plan of Liquidation and Approving Related Notice Procedures [Docket No. 4897] (the "Original Procedures Motion"). On February 27, 2008, the Debtors filed the Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 5103], which was approved by the Bankruptcy Court on March 18, 2008 (the "Original Disclosure Statement"). On March 18, 2008, the Original Plan Proponents filed their First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 [Docket No. 5405] and this Court entered its order approving the Original Procedures Motion [Docket No. 5396] (the "Original Procedures Order"), which also approved the Original Disclosure Statement and found it to contain adequate information in accordance with the provisions of Section 1125 of the Bankruptcy Code.

On April 23, 2008, the Debtors filed the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6412] (as modified by the Confirmation Order, the "Original Plan"). On July 2, 2008, the Bankruptcy Court rendered its Opinion on Confirmation, In re New Century Trs Holdings, Inc., 390 B.R. 140 (Bankr. D. Del 2008), ("Opinion on Confirmation") and on July 15, 2008, the Bankruptcy Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Original Confirmation Order"). On July 22, 2008, the Court entered the Order Amending the Confirmation Order (the "Order Amending Confirmation Order").

### (ii) Occurrence of the Original Effective Date

On August 1, 2008 (the "Original Effective Date"), the Original Plan became effective. Pursuant to the terms of the Original Plan, on the Original Effective Date, Alan M. Jacobs ("Jacobs") was appointed as Plan Administrator of Reorganized Access Lending and the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Liquidating Trust and appointing Jacobs as Liquidating Trustee of the Liquidating Trust.

On the Original Effective Date, all of the Assets of the Debtors were transferred to the Liquidating Trust, including approximately $71.5 million in cash. An additional $5.1 million was transferred to the Access Lending bank accounts. In addition, on the Original Effective Date, the Creditors Committee was dissolved and the Plan Advisory Committee was created. All of the Debtors' remaining officers and directors resigned while Alan M. Jacobs was appointed sole officer and director of each of the remaining Debtors to assist in the winding up of the Debtors' estates.

On August 4, 2008, a Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008, (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements and Rejection Damages Claims (the "Notice of Original Effective Date") was filed with the Court and served on all known creditors and parties-in-interest.

### (iii) The Appeal of the Original Confirmation Order

On July 14, 2008, Gregory J. Schroeder, Michelle Park, Martin Warren, Steve Holland and Nabil Bawa and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan, for themselves and all other similarly situated beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Beneficiaries") filed a Notice of Appeal of the Opinion on Confirmation and the Order Regarding the Opinion on Confirmation (the "First Appeal"). On July 24, 2008, the Beneficiaries filed a Notice of Appeal of the Confirmation Order and the Order Amending the Confirmation Order (the "Second Appeal" and together with the First Appeal, the "Appeal").

On July 29, 2008, the Beneficiaries filed a motion to stay the Original Confirmation Order pending their Appeal (the "Beneficiaries' Stay Motion"). After a hearing on August 22, 2008, the Bankruptcy Court denied the Beneficiaries' Stay Motion, but imposed, with the consent of the Liquidating Trustee, a notice mechanism that required that the Liquidating Trustee, as hereinafter defined, to provide the Beneficiaries with notice before certain Classes of Creditors would be permitted to receive distributions under the Original Plan.

On January 22, 2009, the Debtors filed a motion to dismiss the Appeal on the grounds of equitable mootness (the "Motion to Dismiss"). On June 16, 2009, the United States District Court for the District of Delaware (the "District Court") issued a Memorandum Opinion, In re New Century Trs Holdings, Inc., 407 B.R. 576 (Bankr. D. Del 2009), (the "Memorandum Opinion") and signed an Order denying the Trust's Motion to Dismiss and reversing the Confirmation Order (the "Reversal Order") which were entered on the Docket on June 17, 2009. See Memorandum Opinion at 20. Despite finding that the Original Plan had been substantially consummated and reversal of the Original Plan would require unraveling of the Original Plan, the District Court nonetheless held that the Beneficiaries' Appeal of the Confirmation Order was not equitably moot. See Memorandum Opinion at 16.

Next, the District Court determined that aspects of the Original Plan resulted in improper substantive consolidation. However, the District Court acknowledged that "the plan here does not call for a typical case of substantive consolidation," and that "the aggregation in this case was not accompanied by erasure of inter-entity liabilities and was achieved by compromise settlement." See Memorandum Opinion at 22–23. Nevertheless, the District Court found that the structure of the Original Plan led to increased competition for creditors for a consolidated pool of assets resulting in a "less precise" valuation of certain creditor's claim than if the creditors were dealing with Debtors as individual groups. See Memorandum Opinion at 22.

Finally, the District Court also held that the treatment of certain Holders of Claims in Class HC3b in the Original Plan was in violation of section 1123(a)(4) of the Bankruptcy Code. See Memorandum Opinion at 23. The District Court found that the enhanced Determined Distribution Amounts received by certain Holders of Claims in Class HC3b based on the Multi-Debtor Claim Protocol was a detriment to other Holders of Claims in Class HC3b not receiving enhanced Determined Distribution Amounts and thus was a violation of the Bankruptcy Code.

The District Court did not find any other violation of the Bankruptcy Code by the Original Confirmation Order. Rather, the District Court found that many of the actions taken by the Liquidating Trustee since the Original Effective Date were the "natural and inevitable

consequences of a liquidation" and, therefore, need not be undone in order to properly address the issues raised by the Reversal Order.

On June 24, 2009 the Liquidating Trustee filed with the District Court: (i) a Motion for Rehearing or in the alternative Clarification of the District Court Order on Appeal (the "Motion for Rehearing"), (ii) a Motion for Stay of the District Court Order (the "Motion for Stay"), (iii) an Affidavit of Alan M. Jacobs in support of Motion for Rehearing and Motion for Stay, and (iv) an Emergency Motion for Expedited Consideration of Motion for Rehearing and Motion for Stay.

On June 26, 2009 the District Court entered an order (the "Stay Order") denying the Motion for Rehearing but granting the Motion for Stay, granting a stay of the Memorandum Opinion and Reversal Order pending appeal to the Third Circuit Court of Appeals (the "Stay"). On July 17, 2009, the Liquidating Trustee filed his Notice of Appeal of the Memorandum Opinion and Reversal Order.

### (iv) Preservation of the Status Quo Pending Appeal to the Third Circuit

The District Court in its Memorandum Opinion found that reversing the Original Confirmation Order would not result in great difficulty or inequity because "[c]ertain events are the natural and inevitable consequences of a liquidation, e.g., the discharge of employees ... transfer of assets to the Liquidating Trustee, and asset sales . . . Indeed, the only aspects of plan implementation that arguably need to be reversed are the relatively few distributions that have occurred." Memorandum Opinion at 17. In its Stay Order, the District Court reaffirmed its position regarding the intended affects of its Reversal Order by stating that "[t]he court's June 17, 2009 memorandum opinion and order reversed the plan's debtor grouping and disparate intra-class distribution provisions. The Liquidating Trustee's authority, the settlement of claims, privilege – none of these, so far as the court is aware, need be affected by the relief granted." Stay Order at 3.

On July 17, 2009, the Liquidating Trustee and the Plan Advisory Committee filed the Motion for order preserving the status quo, including (i) maintaining the Liquidating Trust and Reorganized Access Lending and (ii) maintaining Alan M. Jacobs as the Liquidating Trustee of the Liquidating Trust, Plan Administrator of Reorganized Access Lending and sole officer and director of the Debtors, pending entry of a final order consistent with the District Court's Memorandum Opinion (the "Status Quo Motion").

The Bankruptcy Court entered an order granting the Status Quo Motion on July 27, 2009 (the "Status Quo Order"). Pursuant to the terms of the Status Quo Order, the Liquidating Trustee has withdrawn his appeal of the Memorandum Opinion and the Reversal Order. The Liquidating Trustee proposes the Modified Plan to address the concerns raised by the District Court in the Memorandum Opinion while also preserving the integrity of the Original Plan and the complex and interrelated compromises that were negotiated by all of the major creditor constituencies that formed the basis of the Original Plan.

871230.009-1738947.6

## C.    ACTIONS TAKEN SINCE THE ORIGINAL EFFECTIVE DATE

### (i)    Causes of Action

Once the Original Plan became effective, the Liquidating Trustee's primary responsibility on behalf of all creditors was to maximize the value of the Trust Assets, which included the various Causes of Action that the Debtors transferred to the Trust on the Original Effective Date. In order to properly fulfill such responsibilities, the Liquidating Trustee, with the assistance of his professionals, began an immediate investigation and analysis of potential Causes of Actions against third parties (or in some cases continued the investigations conducted by the Creditors' Committee). This was particularly important given the implications of section 546(a) of the Bankruptcy Code, which provides for a two-year statute of limitations from the Petition Date on certain causes of action. As a result of this investigation, the Liquidating Trustee, in consultation with the Plan Advisory Committee and professionals of the Liquidating Trust, commenced various litigations in the Bankruptcy Court and in certain state and federal courts. The Liquidating Trustee was the only party empowered to commence these actions and because the effectiveness of the Original Plan was not stayed, the Liquidating Trustee was obligated to bring these actions in accordance with his fiduciary duty to all creditors.

More particularly, on or prior to April 2, 2009, the Liquidating Trustee commenced the following actions:

a.    Three actions against KPMG LLP and/or KPMG International seeking in excess of $1 billion in damages, including (i) an action against KPMG International in the United States District Court for the Southern District of New York, (ii) an action against KPMG LLC in the state court in California, and (iii) a mediation/arbitration against KPMG LLC;

b.    An action against various former officers and directors seeking in excess of $150 million in damages and avoidance claims, and alleging breaches of fiduciary duties that led to the Debtors' collapse;

c.    An action against certain former officers seeking the return of payments for bonuses that should not have been paid based on the Debtors' restatement of its earnings for the 2005 and 2006 fiscal years;

d.    Approximately one hundred and sixty (160) preference actions seeking the return of over $30 million. Since April 1, 2009, approximately ninety-three (93) preference actions have been settled by the Liquidating Trustee (thirty-four of which followed the filing of suit and fifty-nine of which settled prior to the filing of the suit) resulting in a total recovery to the Debtors' Estates to date of approximately $1,750,000 plus the waiver of claims by certain potential defendants; and

9

e.  Additionally, approximately thirty-two (32) potential preference matters have been tolled for a short period of time pursuant to written agreements between the Liquidating Trustee and the potential preference defendants, involving the avoidance of over $31 million in pre-petition transfers.

As of the Original Effective Date, there were two litigations pending against certain of the Debtors' former insurance companies related to the denial of coverage by the insurance carriers for acts that occurred prior to the Petition Date – one was pending before the Delaware District Court and one was pending before the state court in California. The litigation in the state court in California (the "Liberty Mutual Litigation") resulted in a pre-trial settlement against two of the Debtors' former insurance brokers for approximately $1.2 million, and proceeded to trial against Liberty Mutual. The jury trial began in May 2009 in state court in California and on June 1, 2009, the Liquidating Trustee settled the lawsuit against Liberty Mutual for $5 million. The insurance litigation pending in Delaware as of the Original Effective Date is still pending as of the date hereof.

### (ii)  Discharge of Examiner; Attorney Client Privilege Issues

An additional component of the investigation by the Liquidating Trustee was to gain access to the work product produced by the Examiner, who was appointed by the Bankruptcy Court to investigate, *inter alia*, the Debtors' restatement of their financial statements. In his extensive investigation of the issues surrounding the Debtors' need for such restatement, the Examiner reviewed thousands of pages of documents from various third parties. The Examiner's turnover of these documents to the Liquidating Trustee was vigorously contested by certain of the Debtors' former directors, KPMG LLP and parties to the securities litigation commenced against the Debtors' former officers and directors regarding issues of attorney-client privilege, the effect of prior orders of the Bankruptcy Court on subsequent discovery and the implications of the dissolution of the Creditors' Committee as of the Original Effective Date. The Bankruptcy Court, after several months of intense litigation, issued a decision and order that discharged the Examiner and authorized the Examiner to turn over documents to the Liquidating Trust. In May 2009, counsel for the Examiner began turning over the documents to the Liquidating Trustee.

In addition, Heller Ehrman, former counsel to the Special Investigative Committee to the Debtors' Board of Directors, received a subpoena for the production of documents from the plaintiffs in the securities litigation commenced by certain former Holders of Interests of the Debtors. As a result of Heller Ehrman's own dissolution, it agreed with the Liquidating Trustee and the plaintiffs in the securities litigation to turn over to the Liquidating Trustee all documents that may be responsive to the subpoenas, since the Liquidating Trustee succeeded to the Debtors' privilege as the successor to the Debtors under the Original Plan. The Liquidating Trustee's counsel has received these documents and has been attempting to comply with the subpoenas while, to the extent appropriate, preserving the Debtors' right to certain privileges with its former counsel.

871230.009-1738947.6

### (iii)     Sale of Trust Assets

On the Original Effective Date, title to the Debtors' 36.75% ownership interest (the "NCLT Membership Interest") in Carrington Capital Management, LLC, an independent, non-debtor operating entity ("CCM"), vested in the Liquidating Trust. Pursuant to a series of transactions that occurred in early 2009, the Liquidating Trustee sold the NCLT Membership Interest to CCM. These transactions with CCM were done without Bankruptcy Court approval, as otherwise would have been required under the Bankruptcy Code, pursuant to the authorizations granted to the Liquidating Trustee and the Plan Advisory Committee in the Original Plan.

### (iv)     DCP Litigation

On June 29, 2007, the Debtors (other than Access Lending) were served with a complaint for declaratory judgment and other equitable relief that was filed on June 20, 2007 in the Bankruptcy Court against the Debtors (other than Access Lending) and certain of NCFC's directors, captioned as *Gregory J. Schroeder, et al v. New Century Holdings, Inc., et al.*, Adv. Pro. No. 07-51598 (the "Adversary Proceeding") [Docket No. 1447].

In July 2009, the Beneficiaries and the Liquidating Trustee agreed to resolve the Adversary Proceeding in accordance with the terms of the Settlement Agreement (the "DCP Settlement"). The Settlement Agreement provides in relevant part that the Liquidating Trustee will liquidate the New Century Benefit Plan trust assets and pay legal fees of $2.3 million to counsel for the Beneficiaries, $18.9 million to the Beneficiaries and return the balance of approximately $15 million to the Liquidating Trust. Additionally, pursuant to the Settlement Agreement, the Liquidating Trustee will assign to the Beneficiaries certain causes of action against third-party administrators and consultants arising out of the administration of the New Century Benefit Plan (collectively, all payments and assignments to be made to the Beneficiaries pursuant to the Settlement Agreement shall be referred to as the "DCP Settlement Amount"). The DCP Settlement Amount shall be paid pro rata to the Beneficiaries, based upon vested balances in the New Century Benefit Plan as of December 31, 2007. Distributions to be made to certain of the New Century Benefit Plan participants, who are currently defendants in a litigation brought by the Liquidating Trustee for breach of fiduciary duty, shall be held by the Liquidating Trustee pending the conclusion of such litigation. The remainder of the New Century Benefit Plan asset balance will be turned over to the Liquidating Trust and shall become Trust Assets for use in accordance with the Modified Plan.

The Settlement Agreement will not become effective until the Bankruptcy Court enters an order confirming the Modified Plan. The distributions contemplated by the Settlement Agreement are to be made as soon as is practicable after the occurrence of the Modified Effective Date, with the parties using their best efforts to achieve satisfaction of all conditions by no later than October 30, 2009. Additionally, the parties have agreed, pursuant to the Settlement Agreement, to enter into full and final mutual releases, with the exception of any claims and Causes of Action that the Liquidating Trust may have under Chapter 5 of the Bankruptcy Code against the Beneficiaries that are not based on distributions made on account of the New Century Benefit Plan. The Settlement Agreement also provides that the Beneficiaries will consent to the Modified Plan that includes the preservation of all aspects of the Settlement Agreement.

871230.009-1738947.6

On September 8, 2009, the Liquidating Trustee filed a motion with the Bankruptcy Court seeking approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019 (the "Approval Motion"). The Approval Motion is set to be heard by the Bankruptcy Court on October 14, 2009.

## III.  THE MODIFIED PLAN

### A.  SUMMARY OF THE MODIFIED PLAN

The following is a brief summary of the Modified Plan, which is qualified in its entirety by reference to the Modified Plan, a copy of which is attached as <u>Exhibit A</u> to this Modified Disclosure Statement. The Original Disclosure Statement sets forth in greater detail the structure and purpose of the Original Plan, including an analysis of the rationale for the creation of the Debtor Groups, and the establishment of the Multi-Debtor Claim Protocol, the Intercompany Claim Protocol and the EPD/Breach Claim Protocol. Each of these protocols was developed to effectuate distributions to Creditors in accordance with the heavily negotiated settlements which form the foundation of the Original Plan and are adopted and incorporated into the Modified Plan with certain discreet modifications necessary to comply with the Memorandum Opinion and Reversal Order. In addition to adopting and incorporating the provisions of the Original Plan consistent with the Memorandum Opinion and Reversal Order, the Modified Plan also provides for the implementation of the Settlement Agreement with the Beneficiaries and preserves the integrity of the actions taken by the Liquidating Trustee and Plan Administrator since the Original Effective Date. This Modified Disclosure Statement shall not repeat the analysis of the various protocols contained in the Original Disclosure Statement, but shall adopt those portions of the Original Disclosure Statement which shall be incorporated by reference herein.

In order to address the specific concerns raised by the District Court in its Memorandum Opinion, the Proposed Modifications to the Original Plan as embodied in the Modified Plan center around three discreet modifications with respect to (a) the treatment of NC Credit Creditors and NC Credit Assets as the treatment of such under the Original Plan was a basis for the District Court's reversal of the Confirmation Order, (b) the implementation of the Settlement Agreement, and (c) preservation of actions taken by the Liquidating Trustee in reliance on the Original Plan having gone effective without any stay pending appeal (the "Proposed Modifications"). First, the Trustee and the Plan Advisory Committee have modified the Original Plan to remove NC Credit from the Holding Company Debtor Group and, thus, from each of the provisions that treat the Holding Company Debtors as a unified debtor group sharing assets and liabilities. Accordingly, NC Credit's Assets, consisting solely of an intercompany claim against NCFC in the amount of $67.6 million and an intercompany claim against NCMC in the amount of $16.9 million, will not be included among the Holding Company Debtor Assets and, thus, will not be available for distribution to Holders of Allowed Claims against the Holding Company Debtors. Rather, the NC Credit Assets will be available only for distribution to Holders of Allowed Claims against NC Credit. As a result of the removal of the NC Credit Assets from the Holding Company Debtor Assets, it is no longer necessary to give certain NCFC Creditors enhanced distributions in exchange for their agreement to forgo recoveries on their NC Credit Claims pursuant to the terms of the Multi Debtor Claim Protocol contained in the Original Plan. This mechanism was found by the District Court to have violated Section 1124(a)(3) of the Bankruptcy Code by creating disparate treatment among similarly situated NCFC Creditors.

12

Likewise, Holders of Allowed Claims against NC Credit will not be entitled to share in a distribution from any of the Holding Company Debtor Assets except to the extent that they have an allowed claim against multiple Debtors and as a result of the intercompany claim against Holding Company Debtors. Additionally, in order to maintain the same proportionality in potential litigation recoveries that were originally assigned to Holders of Allowed Claims against NC Credit in the Original Plan by virtue of Holders of Allowed Claims against NC Credit sharing in the Holding Company Debtor Portion of Litigation Proceeds, the Holding Company Debtor Portion of Litigation Proceeds will be reduced from 27.5% to 24.75% of the Litigation Proceeds. As a result, the remaining 2.75% of the Litigation Proceeds will become the NC Credit Portion of the Litigation Proceeds to be distributed to Holders of Allowed Claims against NC Credit in accordance with the Modified Plan.

Next, the Modified Plan includes provisions to effectuate the terms of the DCP Settlement. In July 2009, the Beneficiaries and the Liquidating Trustee agreed to resolve the Adversary Proceeding in accordance with the terms of the Settlement Agreement. The Settlement Agreement provides, in relevant part, that the Trustee will liquidate the assets currently being held by the Trustee related to the Rabbi Trust established by the Debtors prior to the Petition Date (the "Plan Trust Assets") to make certain payments to the Beneficiaries, their counsel and returning the balance of the Plan Trust Assets to the Liquidating Trust. The settlement amount shall be paid pro rata to the Beneficiaries, based upon vested balances in the New Century Benefit Plan as of December 31, 2007; with distributions to certain of the Beneficiaries, who are currently defendants in a litigation brought by the Trustee for breach of fiduciary duty, to be held by the Trustee pending the conclusion of such litigation. To the extent that the Trustee prevails in such litigation, these distributions may be used to satisfy any judgments that may be obtained in such litigation.

The Settlement Agreement will not become effective until the Bankruptcy Court enters an order approving the Modified Plan. The distributions contemplated by the Settlement Agreement are to be made as soon as is practicable after the occurrence of the Modified Effective Date. Additionally, the parties have agreed, pursuant to the Settlement Agreement, to enter into full and final mutual releases, with the exception of any claims that the Liquidating Trust may have under Chapter 5 of the Bankruptcy Code against the Beneficiaries that are not based on distributions made on account of the New Century Benefit Plan. The Beneficiaries shall not be entitled to any further distribution under the terms of the Modified Plan or from the Liquidating Trust. The Settlement Agreement also provides that the Beneficiaries will consent to the Modified Plan provided it preserves the Settlement Agreement.

Lastly, the Modified Plan preserves the integrity of the actions taken by the Liquidating Trustee (including in his capacity as Plan Administrator and sole Director and Officer) since the Original Effective Date given that the Bankruptcy Court denied the Beneficiaries' Stay Motion such that the Original Plan became effective on August 1, 2008 and the Liquidating Trustee was required to operate the Liquidating Trust and Reorganized Access Lending in his capacity as Liquidating Trustee, Plan Administrator and sole Director and Officer in accordance with the terms of the Original Plan.

## B.    RECOMMENDATION

871230.009-1738947.6

**THE LIQUIDATING TRUSTEE AND THE PLAN ADVISORY COMMITTEE ("PAC") RECOMMEND THAT ALL CREDITORS ENTITLED TO VOTE ON THE MODIFIED PLAN CAST THEIR BALLOTS TO ACCEPT THE MODIFIED PLAN. THE LIQUIDATING TRUSTEE AND THE PAC BELIEVE THAT CONFIRMATION OF THE MODIFIED PLAN WILL PROVIDE THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO CREDITORS.**

### C.   CLASSIFICATION AND TREATMENT OF CLAIMS

Section 1122 of the Bankruptcy Code provides that a Chapter 11 plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with Section 1122 of the Bankruptcy Code, the Modified Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Claims and Priority Tax Claims, which pursuant to section 1123(a)(1) of the Bankruptcy Code, do not need to be classified). The Liquidating Trustee also is required, under section 1122 of the Bankruptcy Code, to classify Claims against and Interests in the Debtors into Classes that contain Claims and Interests that are substantially similar to other Claims and Interests in such Class.

The classification of Claims (except for Administrative Claims and Priority Tax Claims) and Interests listed below is for all purposes, including without limitation, voting, confirmation, and distributions under the Modified Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim will be deemed classified in a particular Class only to the extent such Claim satisfies the definition of such Class and will be deemed classified in a different Class to the extent any remainder or other portion of such Claim satisfies the definition of such different Class. A Claim is in a particular Class only to the extent such Claim is an Allowed Claim in such Class and has not been paid or otherwise settled before the Modified Effective Date.

The classification of Claims pursuant to the Modified Plan is as follows:

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| [unclassified] | Administrative and Priority Tax Claims against all Debtors. | Unimpaired – not entitled to vote |

| **Claims Against Holding Company Debtors and NC Credit** | | |
|-------|-------------|--------|
| Class HC1 | Class HC1 consists of Priority Claims against NCFC. | Unimpaired - not entitled to vote |
| Class HC2 | Class HC2 consists of Secured Claims against NCFC. | Unimpaired - not entitled to vote |

871230.009-1738947.6

| Claims Against Holding Company Debtors and NC Credit | | |
|---|---|---|
| Class HC3a | Class HC3a consists of Special Deficiency Claims against NCFC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC3b | Class HC3b consists of Other Unsecured Claims against NCFC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC4a | Class HC4a consists of Series A Preferred Stock Interests. | Deemed to reject - not entitled to vote |
| Class HC4b | Class HC4b consists of Series A 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC4c | Class HC4c consists of Series B Preferred Stock Interests. | Deemed to reject - not entitled to vote |
| Class HC4d | Class HC4d consists of Series B 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC4e | Class HC4e consists of Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC5 | Class HC5 consists of Priority Claims against TRS Holdings. | Unimpaired - not entitled to vote |
| Class HC6 | Class HC6 consists of Secured Claims against TRS Holdings. | Unimpaired - not entitled to vote |
| Class HC7 | Class HC7 consists of Other Unsecured Claims against TRS Holdings. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |

871230.009-1738947.6

| Claims Against Holding Company Debtors and NC Credit | | |
|---|---|---|
| Class HC8 | Class HC8 consists of Priority Claims against NC Credit. | Unimpaired - not entitled to vote |
| Class HC9 | Class HC9 consists of Secured Claims against NC Credit. | Unimpaired - not entitled to vote |
| Class HC10a | Class HC10a consists of Special Deficiency Claims against NC Credit. | Impaired - entitled to vote |
| Class HC10b | Class HC10b consists of Other Unsecured Claims against NC Credit. | Impaired - entitled to vote |
| Class HC11 | Class HC11 consists of Priority Claims against NC Residual IV | Unimpaired - not entitled to vote |
| Class HC12 | Class HC12 consists of Secured Claims against NC Residual IV | Unimpaired - not entitled to vote |
| Class HC13 | Class HC13 consists of Other Unsecured Claims against NC Residual IV | Impaired – voted to accept the Original Plan.  No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC14 | Class HC14 consists of Settling Parties Claims in Settlement of the Schroeder Litigation | Impaired – entitled to vote |
| Claims Against Operating Debtors | | |
| Class OP1 | Class OP1 consists of Priority Claims against NCMC. | Unimpaired - not entitled to vote |
| Class OP2 | Class OP2 consists of Secured Claims against NCMC. | Unimpaired - not entitled to vote |
| Class OP3a | Class OP3a consists of Special Deficiency Claims against NCMC. | Impaired – voted to accept the Original Plan.  No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |

871230.009-1738947.6

| Claims Against Holding Company Debtors and NC Credit | | |
|---|---|---|
| Class OP3b | Class OP3b consists of EPD/Breach Claims against NCMC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP3c | Class OP3c consists of Other Unsecured Claims against NCMC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP4 | Class OP4 consists of Priority Claims against NC Capital. | Unimpaired - not entitled to vote |
| Class OP5 | Class OP5 consists of Secured Claims against NC Capital. | Unimpaired - not entitled to vote |
| Class OP6a | Class OP6a consists of Special Deficiency Claims NC Capital. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP6b | Class OP6b consists of EPD/Breach Claims against NC Capital. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP6c | Class OP6c consists of Other Unsecured Claims against NC Capital. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP7 | Class OP7 consists of Priority Claims against Home123. | Unimpaired - not entitled to vote |

871230.009-1738947.6

| Claims Against Holding Company Debtors and NC Credit | | |
|---|---|---|
| Class OP8 | Class OP8 consists of Secured Claims against Home123. | Unimpaired - not entitled to vote |
| Class OP9a | Class OP9a consists of Special Deficiency Claims against Home123. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP9b | Class OP9b consists of Other Unsecured Claims against Home123. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP10 | Class OP10 consists of Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Unimpaired – not entitled to vote |
| Class OP11 | Class OP11 consists of Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Unimpaired – not entitled to vote |
| Class OP12 | Class OP12 consists of Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |

| Claims Against Access Lending |
|---|

871230.009-1738947.6

| Class AL1 | Class AL1 consists of Priority Claims against Access Lending. | Unimpaired – not entitled to vote |
| Class AL2 | Class AL2 consists of Secured Claims against Access Lending. | Unimpaired – not entitled to vote |
| Class AL3 | Class AL3 consists of Other Unsecured Claims against Access Lending. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |

The classification of Claims under the Modified Plan is identical to the classification of Claims under the Original Plan with the exception of Class HC14, which was added to the Modified Plan to separately classify the Claims of the Settling Parties in settlement of the Schroeder Litigation. Class HC14 Settling Parties are entitled to receive their pro rata distribution under the terms of the Settlement Agreement in full and complete satisfaction of any and all Claims they have against the Liquidating Trust arising out of their participation in the New Century Benefit Plan. The Original Disclosure Statement contains a complete description of the classification of all other Claims under the Original Plan and this Modified Plan. See Original Disclosure Statement at 81–107.

The treatment of unclassified Claims is the same under the Modified Plan as it was under the Original Plan and the Original Disclosure Statement contains a complete description of such treatment. Likewise, the treatment of all Classes of Claims under the Modified Plan is identical to the treatment of such Classes of Claims under the Original Plan, with the exception of Classes HC3b, HC10a, HC10b and HC14. The Treatment of the Claims in Class HC3b have been modified from the Original Plan to (a) eliminate the enhanced Determined Distribution Amounts assigned to certain HC3b Creditors under the Original Plan in exchange for agreeing to have their Claims in Class HC10b against NC Credit reduced to zero; and (b) remove Creditors from Class HC3b that would be deemed Settling Parties under the Modified Plan. Class HC14 has been added in order to separately classify the Settling Parties that were previously classified in HC3b. Such Settling Parties will no longer be entitled to a pro rata share of the Holding Company Debtor Net Distributable Assets and will only be entitled to a pro rata share of the DCP Settlement Amount pursuant to the terms of the Settlement Agreement. Creditors in Class HC10a will no longer share with all Holding Company Debtor Creditors in the Holding Company Debtor Portion of Litigation Proceeds. Likewise, Holding Company Debtor Creditors will not be entitled to a distribution from the NC Credit Portion of Litigation Proceeds. As the enhanced Determined Distribution Amount has been removed from the Class HC3b Creditors who previously were given such enhanced Determined Distribution Amount in exchange for having their HC10b Claims allowed at $0, such corresponding HC10b Claims will now have a Determined Distribution Amount of 100% of the Allowed Amount of their Claim. HC10b Creditors will no longer be entitled to a distribution from the Holding Company Debtor Net Distributable Assets and will only share in the NC Creditor Net Distribution Assets. Likewise, Holding Company Debtor Creditors will not be entitled to share in the NC Credit Assets. The

19

Original Disclosure Statement contains a complete description of the treatment of all other classified Claims. See Original Disclosure Statement at 81–107.

## D. SOLICITATION PROCEDURES

The Order (A) Approving Disclosure Statement Regarding Modified Second Amended Joint Chapter 11 Plan of Liquidation, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Modified Second Amended Joint Chapter 11 Plan of Liquidation and (C) Scheduling a Hearing on Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Liquidation and Approving Related Notice Procedures (the "Modified Procedures Order") was entered by the Bankruptcy Court on October __, 2009. The Modified Procedures Order approved this Modified Disclosure Statement as providing adequate information in accordance with and meeting all other requirements of section 1125 of the Bankruptcy Code. The Modified Procedures Order further approved the solicitation procedures as set forth herein.

### (i) Eligibility to Vote

As provided in the Original Plan and section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims will not be classified for the purposes of voting or receiving distributions under the Modified Plan. Rather, all such Claims will be treated separately as unclassified Claims and will be paid in full. Certain of these Claims have, in fact, been paid in full since the Original Effective Date. The remaining unclassified Claims are unimpaired and are not entitled to vote on the Modified Plan.

As set forth in the Modified Procedures Order, the only Creditors entitled to vote on the Modified Plan are those Creditors in Classes HC10a, HC10b and HC14. All other Holders of Claims and Interests will (i) be deemed to have rejected the Modified Plan in accordance with Section 1126(g) of the Bankruptcy Code, (ii) be deemed to have accepted the Modified Plan in accordance with Section 1126(f) of the Bankruptcy Code, or (iii) be deemed to have retained the same vote on the Modified Plan as their vote on the Original Plan in accordance with Sections 105 and 1127 of the Bankruptcy Code because the treatment of such Creditors is not adversely effected by the modifications to the Original Plan contained in the Modified Plan.

The Claims in the Classes listed in the following table are unimpaired and were conclusively presumed to have accepted the Original Plan and are conclusively presumed to have accepted this Modified Plan as well:

| **Class** | **Description** |
| --- | --- |
| Class HC1 | Priority Claims against NCFC |
| Class HC2 | Secured Claims against NCFC |

871230.009-1738947.6

| Class | Description |
|---|---|
| Class HC5 | Priority Claims against TRS Holdings |
| Class HC6 | Secured Claims against TRS Holdings |
| Class HC8 | Priority Claims against NC Credit |
| Class HC9 | Secured Claims against NC Credit |
| Class HC11 | Priority Claims against NC Residual IV |
| Class HC12 | Secured Claims against NC Residual IV |
| Class OP1 | Priority Claims against NCMC |
| Class OP2 | Secured Claims against NCMC |
| Class OP4 | Priority Claims against NC Capital |
| Class OP5 | Secured Claims against NC Capital |
| Class OP7 | Priority Claims against Home123 |
| Class OP8 | Secured Claims against Home123 |
| Class OP10 | Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class OP11 | Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |

871230.009-1738947.6

| Class | Description |
|---|---|
| Class AL1 | Priority Claims against Access Lending |
| Class AL2 | Secured Claims against Access Lending |

Creditors in the Classes listed in the above table are not entitled to vote on the Modified Plan. If and to the extent that any Class identified as unimpaired is determined to be impaired, the Creditors in such Class will be entitled to vote to accept or reject the Modified Plan.

All other Classes of Claims and Interests under the Modified Plan are impaired. However, as provided in the Modified Procedures Order, those Creditors that voted on or had the opportunity to vote on the Original Plan and that are not being materially adversely affected by the Modified Plan will not be resolicited and will not be entitled to modify their vote on the Modified Plan. The vote cast by these Creditors that voted or had the opportunity to vote for or against the Original Plan will be deemed their vote on the Modified Plan. Accordingly, the Creditors listed in the following table will not be resolicited for the Modified Plan and their vote on the Original Plan will be deemed their vote on the Modified Plan:

| Class | Description |
|---|---|
| Class HC3a | Special Deficiency Claims against NCFC |
| Class HC3b | Other Unsecured Claims Against NCFC |
| Class HC7 | Other Unsecured Claims Against TRS Holdings |
| Class HC13 | Other Unsecured Claims against NC Residual IV |
| Class OP3a | Special Deficiency Claims against NCMC |
| Class OP3b | EPD/Breach Claims against NCMC |
| Class OP3c | Other Unsecured Claims against NCMC |

871230.009-1738947.6

| Class | Description |
|---|---|
| Class OP6a | Special Deficiency Claims against NC Capital |
| Class OP6b | EPD/Breach Claims against NC Capital |
| Class OP6c | Other Unsecured Claims against NC Capital |
| Class OP9a | Special Deficiency Claims against Home123 |
| Class OP9b | Other Unsecured Claims against Home123 |
| Class OP12 | Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class AL3 | Other Unsecured Claims against Access Lending |

The Creditors listed in the following table are impaired and entitled to vote to accept or reject the Modified Plan:

| Class | Description |
|---|---|
| Class HC10a | Special Deficiency Claims against NC Credit |
| Class HC10b | Other Unsecured Claims against NC Credit |
| Class HC14 | Settling Parties |

Each of Classes HC3a, HC3b, OP3a, OP3b, OP3c, OP6a, OP6b, OP6c, OP9a, and OP9b were considered a separate Class for purposes of voting to accept or reject the Original Plan and will be considered as a separate Class for voting on the Modified Plan.

Holders of Claims and Interests in the Classes listed in the following table will not be entitled to a distribution under the Modified Plan and were conclusively presumed to have

871230.009-1738947.6