# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| In re | Honorable Kevin J. Carey<br>Chapter 11 |
|---|---|
| New Century Mortgage Corporation | 07-10419 |
| New Century Mortgage Ventures, LLC | 07-10429 |
| NC Capital Corporation | 07-10420 |
| NC Residual III Corporation | 07-10424 |
| New Century R.E.O. Corp. | 07-10426 |
| New Century R.E.O. II Corp. | 07-10427 |
| New Century R.E.O. III Corp. | 07-10428 |
| NC Deltex, LLC | 07-10430 |
| NCoral, L.P. | 07-10431 |
| NC Asset Holding, L.P. | 07-10423 |
| Home123 Corporation | 07-10421 |
| New Century TRS Holdings, Inc. | 07-10416 |
| NC Residual IV Corporation | 07-10425 |
| New Century Credit Corporation | 07-10422 |
| New Century Financial Corporation | 07-10417 |
| New Century Warehouse Corporation | 07-11043 |
| Debtors. | |

## DISCLOSURE STATEMENT FOR THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION DATED AS OF SEPTEMBER 30, 2009

Mark S. Indelicato
Mark T. Power
Janine M. Cerbone
HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200

Bonnie Glantz Fatell
David W. Carickhoff
BLANK ROME LLP
1201 Market Street
Suite 1800
Wilmington, DE 19891
(302) 425-6400

Counsel for Alan M. Jacobs
as Plan Administrator of Reorganized Access Lending
and as Liquidating Trustee of the New Century Liquidating Trust
(including in the Liquidating Trustee's capacity as sole officer and director of each Debtor).

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | PURPOSE OF THE MODIFIED DISCLOSURE STATEMENT | | 2 |
| II. | BACKGROUND | | 4 |
| | A. | BANKRUPTCY FILING BY THE DEBTORS | 4 |
| | B. | THE ORIGINAL PLAN | 5 |
| | | (i) Confirmation of the Original Plan | 5 |
| | | (ii) Occurrence of the Original Effective Date | 6 |
| | | (iii) The Appeal of the Original Confirmation Order | 6 |
| | | (iv) Preservation of the Status Quo Pending Appeal to the Third Circuit | 8 |
| | C. | ACTIONS TAKEN SINCE THE ORIGINAL EFFECTIVE DATE | 9 |
| | | (i) Causes of Action | 9 |
| | | (ii) Discharge of Examiner; Attorney Client Privilege Issues | 10 |
| | | (iii) Sale of Trust Assets | 11 |
| | | (iv) DCP Litigation | 11 |
| III. | THE MODIFIED PLAN | | 12 |
| | A. | SUMMARY OF THE MODIFIED PLAN | 12 |
| | B. | RECOMMENDATION | 13 |
| | C. | CLASSIFICATION AND TREATMENT OF CLAIMS | 14 |
| | D. | Solicitation procedures | 20 |
| | | (i) Eligibility to Vote | 20 |
| | | (ii) Ballots | 25 |
| | | (iii) Voting Procedure | 25 |
| | | (iv) Deadline for Voting | 25 |
| | | (v) Importance of your Vote | 25 |
| | E. | MEANS OF IMPLEMENTING THE MODIFIED PLAN | 26 |

|   |   |   |   |
|---|---|---|---|
|   | (i) | Implementation of Modified Plan | 26 |
| F. | CLAIMS AND DISTRIBUTIONS | | 26 |
| G. | PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS | | 32 |
|   | (i) | Reservation of Rights to Object to Claims | 32 |
|   | (ii) | Objections to Claims. | 33 |
|   | (iii) | Service of Objections. | 33 |
|   | (iv) | Determination of Claims. | 33 |
|   | (v) | No Distributions Pending Allowance. | 34 |
|   | (vi) | Claim Estimation. | 34 |
|   | (vii) | Allowance of Claims Subject to Section 502 of the Bankruptcy Code. | 34 |
| H. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 34 |
| I. | EFFECT OF CONFIRMATION AND INJUNCTION | | 35 |
|   | (i) | Injunction | 35 |
|   | (ii) | Term of Injunctions. | 36 |
|   | (iii) | Exculpation | 36 |
|   | (iv) | Binding Effect of the Modified Plan and the Actions Taken Under the Original Plan Prior to the Entry of the Reversal Order | 37 |
| J. | CONDITIONS PRECEDENT | | 37 |
|   | (i) | Conditions Precedent to Modified Effective Date | 37 |
|   |   | a. Approval of Modified Disclosure Statement. | 37 |
|   |   | b. Approval of Plan Compromises. | 38 |
|   |   | c. Form of Modified Confirmation Order. | 38 |
|   |   | d. Entry of Modified Confirmation Order. | 38 |
|   | (ii) | Revocation, Withdrawal, or Non-Consummation of Modified Plan | 38 |

|   |   |   |   |
|---|---|---|---|
|   | K. | RETENTION OF JURISDICTION | 38 |
|   | L. | NON-SEVERABILITY | 39 |
|   | M. | BANKRUPTCY RULE 9019 REQUEST | 39 |
| IV. | FINANCIAL INFORMATION | | 39 |
|   | A. | IN THE BANKRUPTCY PROCEEDING | 39 |
|   | B. | FINANCIAL ACTIVITY SINCE THE ORIGINAL EFFECTIVE DATE | 39 |
|   |   | (i) Transfer on the Effective Date | 39 |
|   |   | (ii) Cash Position as of August 31, 2009 | 39 |
|   | C. | PROJECTED NET DISTRIBUTABLE ASSETS | 41 |
|   | D. | RISKS AND ASSUMPTIONS ASSOCIATED WITH RECOVERY PROJECTIONS | 41 |
| V. | CERTAIN FACTORS TO BE CONSIDERED REGARDING THE MODIFIED PLAN | | 42 |
| VI. | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | 42 |
| VII. | ALTERNATIVES TO CONFIRMATION OF THE PLAN | | 43 |
| VIII. | ACCEPTANCE AND CONFIRMATION OF THE PLAN | | 43 |
|   | A. | GENERAL CONFIRMATION REQUIREMENTS | 43 |
|   | B. | BEST INTERESTS TEST | 44 |
|   |   | (i) Generally | 44 |
|   | C. | FINANCIAL FEASIBILITY TEST | 45 |
|   | D. | ACCEPTANCE BY IMPAIRED CLASSES | 45 |
|   | E. | APPROVAL OF PLAN SETTLEMENTS | 47 |
| IX. | CONCLUSION | | 48 |

I.  PURPOSE OF THE MODIFIED DISCLOSURE STATEMENT

APPROVAL OF THIS MODIFIED DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT MEAN THAT THE BANKRUPTCY COURT RECOMMENDS ACCEPTANCE OR REJECTION OF THE MODIFIED PLAN.

The information used in preparing this Modified Disclosure Statement was obtained by the Liquidating Trustee from information in the Debtors' books and records that were turned over to the Liquidating Trustee on the Original Effective Date. This Modified Disclosure Statement does not constitute financial or legal advice. Creditors and Holders of Interests of the Debtors should consult their own advisors if they have questions about the Modified Plan or this Modified Disclosure Statement. Capitalized terms used in this Modified Disclosure Statement and not expressly defined herein will have the meaning ascribed to such terms in the Modified Plan. The Modified Plan is annexed hereto as **Exhibit A**. A reference in this Modified Disclosure Statement to a "Section" refers to a section of this Modified Disclosure Statement.

The Original Disclosure Statement, prepared by the Debtors in support of the Original Plan, was approved by the Bankruptcy Court on March 18, 2008. The Original Disclosure Statement contains significant information regarding the Debtors' chapter 11 proceedings including the events leading up to the bankruptcy filing, the terms of the Original Plan and the complex settlements set forth therein including the Multi-Debtor Claims Protocol, the Intercompany Claims Protocol and the EPD/Breach Claims Protocol. The purpose of this Modified Disclosure Statement is not to repeat the information contained in the Original Disclosure Statement but to describe the proposed changes to the Original Plan that are necessary to proceed in accordance with the Memorandum Opinion and Reversal Order whereby the District Court reversed confirmation of the Original Plan and to implement the settlement of the Adversary Proceeding commenced by the Beneficiaries. This Modified Disclosure Statement will also address actions that have transpired since the Original Effective Date and the effects, if any, such actions have on Creditors. The Original Disclosure Statement is annexed hereto as **Exhibit B** and is incorporated herein and made a part hereof to the extent not inconsistent with the Modified Disclosure Statement for any and all information regarding the provisions of the Original Plan that are being adopted and implemented in the Modified Plan.

WHILE THIS MODIFIED DISCLOSURE STATEMENT DESCRIBES CERTAIN BACKGROUND MATTERS AND THE MATERIAL TERMS OF THE MODIFIED PLAN, IT IS INTENDED AS A SUMMARY DOCUMENT ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MODIFIED PLAN AND THE EXHIBITS ATTACHED TO THE MODIFIED PLAN AND THIS MODIFIED DISCLOSURE STATEMENT. YOU SHOULD READ THE MODIFIED PLAN AND ITS EXHIBITS TO OBTAIN A FULL UNDERSTANDING OF THEIR PROVISIONS. ADDITIONAL COPIES OF THE MODIFIED DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS MODIFIED DISCLOSURE STATEMENT, AS WELL AS COPIES OF THE ORIGINAL DISCLOSURE STATEMENT, CAN BE OBTAINED FROM NEW CENTURY LIQUIDATING TRUST, 3777 MICHELSON, SUITE CN-350, IRVINE, CA 92612 (ATTENTION: MONIKA LEMHOEFER MCCARTHY), AND BLANK ROME LLP, 1201 MARKET STREET, SUITE 800, WILMINGTON, DE 19891 (ATTENTION: BONNIE GLANTZ FATELL, ESQ. AND DAVID CARICKHOFF, ESQ.),

OR BY ELECTRONIC MAIL TO LiquidatingTrust@ncen.com. COPIES OF PAPERS FILED IN THIS CASE ALSO MAY BE INSPECTED DURING REGULAR COURT HOURS IN THE CLERK'S OFFICE, UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 MARKET STREET, 3RD FLOOR, WILMINGTON, DELAWARE 19801.

THE STATEMENTS AND INFORMATION CONCERNING THE DEBTORS AND THE MODIFIED PLAN SET FORTH IN THIS MODIFIED DISCLOSURE STATEMENT AND THE ORIGINAL DISCLOSURE STATEMENT, TO THE EXTENT NOT INCONSISTENT WITH THIS MODIFIED DISCLOSURE STATEMENT, CONSTITUTE THE ONLY STATEMENTS OR INFORMATION CONCERNING SUCH MATTERS THAT HAVE BEEN APPROVED BY THE BANKRUPTCY COURT FOR THE PURPOSE OF SOLICITING ACCEPTANCES OR REJECTIONS OF THE MODIFIED PLAN.

THE STATEMENTS CONTAINED IN THIS MODIFIED DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. NEITHER DELIVERY OF THIS MODIFIED DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE MODIFIED PLAN WILL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE THIS MODIFIED DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS MODIFIED DISCLOSURE STATEMENT WERE COMPILED. THE LIQUIDATING TRUSTEE ASSUMES NO DUTY TO UPDATE OR SUPPLEMENT THE DISCLOSURES CONTAINED HEREIN AND DOES NOT INTEND TO UPDATE OR SUPPLEMENT THE DISCLOSURES.

THIS MODIFIED DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE MODIFIED PLAN. CERTAIN OF THE INFORMATION CONTAINED IN THIS MODIFIED DISCLOSURE STATEMENT IS BASED ON ASSUMPTIONS THAT WERE INCLUDED IN THE ORIGINAL DISCLOSURE STATEMENT TO ENABLE CREDITORS TO COMPARE THE DISTRIBUTION TO BE PROVIDED UNDER THIS MODIFIED PLAN WITH THOSE PROJECTED UNDER THE ORIGINAL PLAN. THE ESTIMATES, ASSUMPTIONS AND PROJECTIONS UTILIZED IN THIS MODIFIED DISCLOSURE STATEMENT MAY BE MATERIALLY DIFFERENT FROM ACTUAL RESULTS, INCLUDING ESTIMATES OF THE CASH THAT WILL BE AVAILABLE FOR DISTRIBUTION TO THE HOLDERS OF CLAIMS, ESTIMATES OF THE PERCENTAGE RECOVERY OF THE VARIOUS TYPES OF CLAIMS AND INTERESTS, ESTIMATES OF THE AGGREGATE FINAL AMOUNTS OF THE VARIOUS TYPES OF CLAIMS, ESTIMATES OF THE PROCEEDS FROM THE SALES OF THE DEBTORS' REMAINING ASSETS AND ESTIMATES OF THE EXPENSES THAT WILL BE INCURRED BY THE LIQUIDATING TRUST DURING THE WIND DOWN PERIOD. THERE CAN BE NO ASSURANCE THAT ANY FORECASTED OR PROJECTED RESULTS CONTAINED HEREIN WILL BE REALIZED, AND ACTUAL RESULTS

MAY VARY FROM THOSE SHOWN, POSSIBLY BY MATERIAL AMOUNTS. IN FACT, SOME OF THE ACTUAL RESULTS ACHIEVED SINCE THE ORIGINAL DISCLOSURE STATEMENT WAS APPROVED DO VARY SUBSTANTIALLY FROM THE ESTIMATES UTILIZED IN THE ORIGINAL DISCLOSURE STATEMENT.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED THIS MODIFIED DISCLOSURE STATEMENT. PURSUANT TO THE MODIFIED PLAN, ANY SECURITIES OF THE DEBTORS ISSUED TO ANY PARTY UNDER, PURSUANT TO OR IN EFFECTUATING THE MODIFIED PLAN, AND THE OFFERING AND ISSUANCE THEREOF BY ANY PARTY, INCLUDING WITHOUT LIMITATION THE DEBTORS, ARE EXEMPT FROM SECTION 5 OF THE SECURITIES ACT OF 1933, IF APPLICABLE, AND FROM ANY STATE OR FEDERAL SECURITIES LAWS REQUIRING REGISTRATION FOR THE OFFER OR SALE OF A SECURITY OR REGISTRATION OR LICENSING OF AN ISSUER OF, UNDERWRITER OF, OR BROKER OR DEALER IN, A SECURITY, AND OTHERWISE ENJOY ALL EXEMPTIONS AVAILABLE FOR DISTRIBUTIONS OF SECURITIES UNDER A PLAN IN ACCORDANCE WITH ALL APPLICABLE LAW, INCLUDING WITHOUT LIMITATION SECTION 1145 OF THE BANKRUPTCY CODE.

## II. BACKGROUND

### A. BANKRUPTCY FILING BY THE DEBTORS

The following debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 2, 2007 (the "Petition Date"), thereby commencing case numbers 07-10416, 07-10417, 07-10419, 07-10420, 07-10421, 07-10422, 07-10423, 07-10424, 07-10425, 07-10426, 07-10427, 07-10428, 07-10429, 07-10430, and 07-10431 (collectively, and with the chapter 11 case of New Century Warehouse Corporation, the "Chapter 11 Cases") currently pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"):

| | |
|---|---|
| New Century Financial Corporation, a Maryland corporation; Case No. 07-10417 | New Century R.E.O. Corp., a California corporation; Case No. 07-10426 |
| New Century TRS Holdings, Inc., a Delaware corporation; Case No. 07-10416 | New Century R.E.O. II Corp., a California corporation; Case No. 07-10427 |
| New Century Mortgage Corporation, a California corporation; Case No. 07-10419 | New Century R.E.O. III Corp., a California corporation; Case No. 07-10428 |

| NC Capital Corporation, a California corporation; Case No. 07-10420 | New Century Mortgage Ventures, LLC, a Delaware limited liability company; Case No. 07-10429 |
|---|---|
| Home123 Corporation, a California corporation; Case No. 07-10421 | NC Deltex, LLC, a Delaware limited liability company; Case No. 07-10430 |
| New Century Credit Corporation, a California corporation; Case No. 07-10422 | NCoral, L.P., a Delaware limited partnership; Case No. 07-10431 |
| NC Asset Holding, L.P., a Delaware limited partnership; Case No. 07-10423 | NC Residual IV Corporation, a Delaware corporation; Case No. 07-10425 |
| NC Residual III Corporation, a Delaware corporation; Case No. 07-10424 | |

Subsequently, on August 3, 2007, New Century Warehouse Corporation, a California corporation which is also known as and is referred to herein as "Access Lending" (collectively with the above-listed entities, the "Debtors"), filed a voluntary chapter 11 petition (Case No. 07-11043).

**B.    THE ORIGINAL PLAN**

(i)    **Confirmation of the Original Plan**

On February 2, 2008, the Debtors and the Official Committee of Unsecured Creditors of the Debtors (the "Creditors Committee") as co-proponents (the "Original Plan Proponents") filed the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 4805] and the Debtors filed the Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 4804].

On February 15, 2008, the Debtors filed the Motion of Debtors and Debtors-in-Possession for an Order (A) Approving Proposed Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008; (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Liquidation; and (C) Scheduling a Hearing

5

on Confirmation of Proposed Join Chapter 11 Plan of Liquidation and Approving Related Notice Procedures [Docket No. 4897] (the "Original Procedures Motion"). On February 27, 2008, the Debtors filed the Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008 [Docket No. 5103], which was approved by the Bankruptcy Court on March 18, 2008 (the "Original Disclosure Statement"). On March 18, 2008, the Original Plan Proponents filed their First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 [Docket No. 5405] and this Court entered its order approving the Original Procedures Motion [Docket No. 5396] (the "Original Procedures Order"), which also approved the Original Disclosure Statement and found it to contain adequate information in accordance with the provisions of Section 1125 of the Bankruptcy Code.

On April 23, 2008, the Debtors filed the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6412] (as modified by the Confirmation Order, the "Original Plan"). On July 2, 2008, the Bankruptcy Court rendered its Opinion on Confirmation, In re New Century Trs Holdings, Inc., 390 B.R. 140 (Bankr. D. Del 2008), ("Opinion on Confirmation") and on July 15, 2008, the Bankruptcy Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Original Confirmation Order"). On July 22, 2008, the Court entered the Order Amending the Confirmation Order (the "Order Amending Confirmation Order").

### (ii) Occurrence of the Original Effective Date

On August 1, 2008 (the "Original Effective Date"), the Original Plan became effective. Pursuant to the terms of the Original Plan, on the Original Effective Date, Alan M. Jacobs ("Jacobs") was appointed as Plan Administrator of Reorganized Access Lending and the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Liquidating Trust and appointing Jacobs as Liquidating Trustee of the Liquidating Trust.

On the Original Effective Date, all of the Assets of the Debtors were transferred to the Liquidating Trust, including approximately $71.5 million in cash. An additional $5.1 million was transferred to the Access Lending bank accounts. In addition, on the Original Effective Date, the Creditors Committee was dissolved and the Plan Advisory Committee was created. All of the Debtors' remaining officers and directors resigned while Alan M. Jacobs was appointed sole officer and director of each of the remaining Debtors to assist in the winding up of the Debtors' estates.

On August 4, 2008, a Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008, (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements and Rejection Damages Claims (the "Notice of Original Effective Date") was filed with the Court and served on all known creditors and parties-in-interest.

### (iii) The Appeal of the Original Confirmation Order

On July 14, 2008, Gregory J. Schroeder, Michelle Park, Martin Warren, Steve Holland and Nabil Bawa and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan, for themselves and all other similarly situated beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Beneficiaries") filed a Notice of Appeal of the Opinion on Confirmation and the Order Regarding the Opinion on Confirmation (the "First Appeal"). On July 24, 2008, the Beneficiaries filed a Notice of Appeal of the Confirmation Order and the Order Amending the Confirmation Order (the "Second Appeal" and together with the First Appeal, the "Appeal").

On July 29, 2008, the Beneficiaries filed a motion to stay the Original Confirmation Order pending their Appeal (the "Beneficiaries' Stay Motion"). After a hearing on August 22, 2008, the Bankruptcy Court denied the Beneficiaries' Stay Motion, but imposed, with the consent of the Liquidating Trustee, a notice mechanism that required that the Liquidating Trustee, as hereinafter defined, to provide the Beneficiaries with notice before certain Classes of Creditors would be permitted to receive distributions under the Original Plan.

On January 22, 2009, the Debtors filed a motion to dismiss the Appeal on the grounds of equitable mootness (the "Motion to Dismiss"). On June 16, 2009, the United States District Court for the District of Delaware (the "District Court") issued a Memorandum Opinion, In re New Century Trs Holdings, Inc., 407 B.R. 576 (Bankr. D. Del 2009), (the "Memorandum Opinion") and signed an Order denying the Trust's Motion to Dismiss and reversing the Confirmation Order (the "Reversal Order") which were entered on the Docket on June 17, 2009. See Memorandum Opinion at 20. Despite finding that the Original Plan had been substantially consummated and reversal of the Original Plan would require unraveling of the Original Plan, the District Court nonetheless held that the Beneficiaries' Appeal of the Confirmation Order was not equitably moot. See Memorandum Opinion at 16.

Next, the District Court determined that aspects of the Original Plan resulted in improper substantive consolidation. However, the District Court acknowledged that "the plan here does not call for a typical case of substantive consolidation," and that "the aggregation in this case was not accompanied by erasure of inter-entity liabilities and was achieved by compromise settlement." See Memorandum Opinion at 22–23. Nevertheless, the District Court found that the structure of the Original Plan led to increased competition for creditors for a consolidated pool of assets resulting in a "less precise" valuation of certain creditor's claim than if the creditors were dealing with Debtors as individual groups. See Memorandum Opinion at 22.

Finally, the District Court also held that the treatment of certain Holders of Claims in Class HC3b in the Original Plan was in violation of section 1123(a)(4) of the Bankruptcy Code. See Memorandum Opinion at 23. The District Court found that the enhanced Determined Distribution Amounts received by certain Holders of Claims in Class HC3b based on the Multi-Debtor Claim Protocol was a detriment to other Holders of Claims in Class HC3b not receiving enhanced Determined Distribution Amounts and thus was a violation of the Bankruptcy Code.

The District Court did not find any other violation of the Bankruptcy Code by the Original Confirmation Order. Rather, the District Court found that many of the actions taken by the Liquidating Trustee since the Original Effective Date were the "natural and inevitable

7

consequences of a liquidation" and, therefore, need not be undone in order to properly address the issues raised by the Reversal Order.

On June 24, 2009 the Liquidating Trustee filed with the District Court: (i) a Motion for Rehearing or in the alternative Clarification of the District Court Order on Appeal (the "Motion for Rehearing"), (ii) a Motion for Stay of the District Court Order (the "Motion for Stay"), (iii) an Affidavit of Alan M. Jacobs in support of Motion for Rehearing and Motion for Stay, and (iv) an Emergency Motion for Expedited Consideration of Motion for Rehearing and Motion for Stay.

On June 26, 2009 the District Court entered an order (the "Stay Order") denying the Motion for Rehearing but granting the Motion for Stay, granting a stay of the Memorandum Opinion and Reversal Order pending appeal to the Third Circuit Court of Appeals (the "Stay"). On July 17, 2009, the Liquidating Trustee filed his Notice of Appeal of the Memorandum Opinion and Reversal Order.

### (iv) Preservation of the Status Quo Pending Appeal to the Third Circuit

The District Court in its Memorandum Opinion found that reversing the Original Confirmation Order would not result in great difficulty or inequity because "[c]ertain events are the natural and inevitable consequences of a liquidation, e.g., the discharge of employees ... transfer of assets to the Liquidating Trustee, and asset sales . . . Indeed, the only aspects of plan implementation that arguably need to be reversed are the relatively few distributions that have occurred." Memorandum Opinion at 17. In its Stay Order, the District Court reaffirmed its position regarding the intended affects of its Reversal Order by stating that "[t]he court's June 17, 2009 memorandum opinion and order reversed the plan's debtor grouping and disparate intra-class distribution provisions. The Liquidating Trustee's authority, the settlement of claims, privilege – none of these, so far as the court is aware, need be affected by the relief granted." Stay Order at 3.

On July 17, 2009, the Liquidating Trustee and the Plan Advisory Committee filed the Motion for order preserving the status quo, including (i) maintaining the Liquidating Trust and Reorganized Access Lending and (ii) maintaining Alan M. Jacobs as the Liquidating Trustee of the Liquidating Trust, Plan Administrator of Reorganized Access Lending and sole officer and director of the Debtors, pending entry of a final order consistent with the District Court's Memorandum Opinion (the "Status Quo Motion").

The Bankruptcy Court entered an order granting the Status Quo Motion on July 27, 2009 (the "Status Quo Order"). Pursuant to the terms of the Status Quo Order, the Liquidating Trustee has withdrawn his appeal of the Memorandum Opinion and the Reversal Order. The Liquidating Trustee proposes the Modified Plan to address the concerns raised by the District Court in the Memorandum Opinion while also preserving the integrity of the Original Plan and the complex and interrelated compromises that were negotiated by all of the major creditor constituencies that formed the basis of the Original Plan.

8

## C. ACTIONS TAKEN SINCE THE ORIGINAL EFFECTIVE DATE

### (i) Causes of Action

Once the Original Plan became effective, the Liquidating Trustee's primary responsibility on behalf of all creditors was to maximize the value of the Trust Assets, which included the various Causes of Action that the Debtors transferred to the Trust on the Original Effective Date. In order to properly fulfill such responsibilities, the Liquidating Trustee, with the assistance of his professionals, began an immediate investigation and analysis of potential Causes of Actions against third parties (or in some cases continued the investigations conducted by the Creditors' Committee). This was particularly important given the implications of section 546(a) of the Bankruptcy Code, which provides for a two-year statute of limitations from the Petition Date on certain causes of action. As a result of this investigation, the Liquidating Trustee, in consultation with the Plan Advisory Committee and professionals of the Liquidating Trust, commenced various litigations in the Bankruptcy Court and in certain state and federal courts. The Liquidating Trustee was the only party empowered to commence these actions and because the effectiveness of the Original Plan was not stayed, the Liquidating Trustee was obligated to bring these actions in accordance with his fiduciary duty to all creditors.

More particularly, on or prior to April 2, 2009, the Liquidating Trustee commenced the following actions:

a. Three actions against KPMG LLP and/or KPMG International seeking in excess of $1 billion in damages, including (i) an action against KPMG International in the United States District Court for the Southern District of New York, (ii) an action against KPMG LLC in the state court in California, and (iii) a mediation/arbitration against KPMG LLC;

b. An action against various former officers and directors seeking in excess of $150 million in damages and avoidance claims, and alleging breaches of fiduciary duties that led to the Debtors' collapse;

c. An action against certain former officers seeking the return of payments for bonuses that should not have been paid based on the Debtors' restatement of its earnings for the 2005 and 2006 fiscal years;

d. Approximately one hundred and sixty (160) preference actions seeking the return of over $30 million. Since April 1, 2009, approximately ninety-three (93) preference actions have been settled by the Liquidating Trustee (thirty-four of which followed the filing of suit and fifty-nine of which settled prior to the filing of the suit) resulting in a total recovery to the Debtors' Estates to date of approximately $1,750,000 plus the waiver of claims by certain potential defendants; and

9

e.  Additionally, approximately thirty-two (32) potential preference matters have been tolled for a short period of time pursuant to written agreements between the Liquidating Trustee and the potential preference defendants, involving the avoidance of over $31 million in pre-petition transfers.

As of the Original Effective Date, there were two litigations pending against certain of the Debtors' former insurance companies related to the denial of coverage by the insurance carriers for acts that occurred prior to the Petition Date – one was pending before the Delaware District Court and one was pending before the state court in California. The litigation in the state court in California (the "Liberty Mutual Litigation") resulted in a pre-trial settlement against two of the Debtors' former insurance brokers for approximately $1.2 million, and proceeded to trial against Liberty Mutual. The jury trial began in May 2009 in state court in California and on June 1, 2009, the Liquidating Trustee settled the lawsuit against Liberty Mutual for $5 million. The insurance litigation pending in Delaware as of the Original Effective Date is still pending as of the date hereof.

### (ii) Discharge of Examiner; Attorney Client Privilege Issues

An additional component of the investigation by the Liquidating Trustee was to gain access to the work product produced by the Examiner, who was appointed by the Bankruptcy Court to investigate, *inter alia*, the Debtors' restatement of their financial statements. In his extensive investigation of the issues surrounding the Debtors' need for such restatement, the Examiner reviewed thousands of pages of documents from various third parties. The Examiner's turnover of these documents to the Liquidating Trustee was vigorously contested by certain of the Debtors' former directors, KPMG LLP and parties to the securities litigation commenced against the Debtors' former officers and directors regarding issues of attorney-client privilege, the effect of prior orders of the Bankruptcy Court on subsequent discovery and the implications of the dissolution of the Creditors' Committee as of the Original Effective Date. The Bankruptcy Court, after several months of intense litigation, issued a decision and order that discharged the Examiner and authorized the Examiner to turn over documents to the Liquidating Trust. In May 2009, counsel for the Examiner began turning over the documents to the Liquidating Trustee.

In addition, Heller Ehrman, former counsel to the Special Investigative Committee to the Debtors' Board of Directors, received a subpoena for the production of documents from the plaintiffs in the securities litigation commenced by certain former Holders of Interests of the Debtors. As a result of Heller Ehrman's own dissolution, it agreed with the Liquidating Trustee and the plaintiffs in the securities litigation to turn over to the Liquidating Trustee all documents that may be responsive to the subpoenas, since the Liquidating Trustee succeeded to the Debtors' privilege as the successor to the Debtors under the Original Plan. The Liquidating Trustee's counsel has received these documents and has been attempting to comply with the subpoenas while, to the extent appropriate, preserving the Debtors' right to certain privileges with its former counsel.

871230.009-1738947.6

### (iii) Sale of Trust Assets

On the Original Effective Date, title to the Debtors' 36.75% ownership interest (the "NCLT Membership Interest") in Carrington Capital Management, LLC, an independent, non-debtor operating entity ("CCM"), vested in the Liquidating Trust. Pursuant to a series of transactions that occurred in early 2009, the Liquidating Trustee sold the NCLT Membership Interest to CCM. These transactions with CCM were done without Bankruptcy Court approval, as otherwise would have been required under the Bankruptcy Code, pursuant to the authorizations granted to the Liquidating Trustee and the Plan Advisory Committee in the Original Plan.

### (iv) DCP Litigation

On June 29, 2007, the Debtors (other than Access Lending) were served with a complaint for declaratory judgment and other equitable relief that was filed on June 20, 2007 in the Bankruptcy Court against the Debtors (other than Access Lending) and certain of NCFC's directors, captioned as *Gregory J. Schroeder, et al v. New Century Holdings, Inc., et al.*, Adv. Pro. No. 07-51598 (the "Adversary Proceeding") [Docket No. 1447].

In July 2009, the Beneficiaries and the Liquidating Trustee agreed to resolve the Adversary Proceeding in accordance with the terms of the Settlement Agreement (the "DCP Settlement"). The Settlement Agreement provides in relevant part that the Liquidating Trustee will liquidate the New Century Benefit Plan trust assets and pay legal fees of $2.3 million to counsel for the Beneficiaries, $18.9 million to the Beneficiaries and return the balance of approximately $15 million to the Liquidating Trust. Additionally, pursuant to the Settlement Agreement, the Liquidating Trustee will assign to the Beneficiaries certain causes of action against third-party administrators and consultants arising out of the administration of the New Century Benefit Plan (collectively, all payments and assignments to be made to the Beneficiaries pursuant to the Settlement Agreement shall be referred to as the "DCP Settlement Amount"). The DCP Settlement Amount shall be paid pro rata to the Beneficiaries, based upon vested balances in the New Century Benefit Plan as of December 31, 2007. Distributions to be made to certain of the New Century Benefit Plan participants, who are currently defendants in a litigation brought by the Liquidating Trustee for breach of fiduciary duty, shall be held by the Liquidating Trustee pending the conclusion of such litigation. The remainder of the New Century Benefit Plan asset balance will be turned over to the Liquidating Trust and shall become Trust Assets for use in accordance with the Modified Plan.

The Settlement Agreement will not become effective until the Bankruptcy Court enters an order confirming the Modified Plan. The distributions contemplated by the Settlement Agreement are to be made as soon as is practicable after the occurrence of the Modified Effective Date, with the parties using their best efforts to achieve satisfaction of all conditions by no later than October 30, 2009. Additionally, the parties have agreed, pursuant to the Settlement Agreement, to enter into full and final mutual releases, with the exception of any claims and Causes of Action that the Liquidating Trust may have under Chapter 5 of the Bankruptcy Code against the Beneficiaries that are not based on distributions made on account of the New Century Benefit Plan. The Settlement Agreement also provides that the Beneficiaries will consent to the Modified Plan that includes the preservation of all aspects of the Settlement Agreement.

11