Claims in that Class that vote. **ONLY THOSE CREDITORS WHO ACTUALLY VOTE ARE COUNTED FOR PURPOSES OF DETERMINING WHETHER A CLASS HAS VOTED TO ACCEPT THE MODIFIED PLAN. YOUR FAILURE TO VOTE WILL LEAVE TO OTHERS THE DECISION TO ACCEPT OR REJECT THE MODIFIED PLAN.**

E.  **MEANS OF IMPLEMENTING THE MODIFIED PLAN**

   (i)  **Implementation of Modified Plan**

The Plan Proponents of the Modified Plan propose that the Modified Plan be implemented and consummated through the means contemplated by sections 1123(a)(5)(B), (D), (E), (F) and (G) and 1123(b)(2), (b)(3) and (b)(4) of the Bankruptcy Code on and after the Modified Effective Date. The Original Disclosure Statement sets forth in greater detail, the means of implementation of the Original Plan. See Original Disclosure Statement at 109–123. Since the Original Plan went effective on the Original Effective Date, many of the actions required or authorized in order to implement the Original Plan have, in fact, already occurred and will be adopted and ratified by the confirmation and implementation of the Modified Plan including:

   a.  the transfer of the Assets of the Debtors, including Causes of Action, to the Liquidating Trust,

   b.  dissolution of the Committee,

   c.  formation of the Liquidating Trust and appointment of the Liquidating Trustee and Plan Administrator,

   d.  establishment of the Plan Advisory Committee

   e.  resignation of the Debtors' remaining officers and directors, and

   f.  preservation of all Causes of Action

F.  **CLAIMS AND DISTRIBUTIONS[1]**

Since the Original Effective Date, the Liquidating Trustee has worked diligently to resolve all Disputed Claims, including all unliquidated and disputed A/P/S Claims. Numerous objections to claims have been filed and discussions and negotiations continue with countless Holders of Claims.

At this time, the Liquidating Trustee projects that, through the liquidation of the Liquidating Trust Assets (excluding recoveries from the Causes of Action) and after giving

---

[1] All estimates contained herein with respect to recoveries on Allowed Unsecured Claims are subject to various risks and assumptions, including those discussed in Section IV.D hereof. Moreover, these estimates are subject to revision in material ways. They should not be considered a representation that actual outcomes will necessarily fall within this range.

26

effect to the Intercompany Claim Protocol, the Cash available for distribution to Holders of Allowed Holding Company Debtor Unsecured Claims on account of such Claims will range from approximately $0 million to $27 million and that the Cash available for distribution to Holders of Allowed Operating Debtor Unsecured Claims on account of such Claims will range from approximately $54 million to $99 million and the Cash available for distribution to Holders of Allowed NC Credit Unsecured Claims on account of such Claims will range from approximately $0.5 million to $2 million. Additionally, the Plan Administrator projects that the Cash available for distribution to Holders of Allowed Access Lending Unsecured Claims (including NCMC) will be approximately $3.8 million. The actual amount of such Cash (excluding Litigation Proceeds) available for distribution to Holders of Allowed Unsecured Claims will depend on various factors, including: (1) the cost of administering the Estates and the Liquidating Trust, (2) amounts received on sales of Assets, (3) the amount of A/P/S Claims, and (4) the risks and assumptions discussed in Section IV.D hereof.

As of the Original Effective Date, because of the delay in the liquidation of Holding Company Debtor Assets, the Holding Company Debtor Group did not have sufficient liquid assets to pay its Allowed A/P/S Claims or its share of the Joint Administrative Expenses as required by the Original Plan. In accordance with the provisions set forth in the Original Plan for the payment of Joint Administrative Expenses and Allowed A/P/S Claims, these expenses were paid out of the Trust Assets comprised mainly of Operating Debtor Assets. As a result of this temporary liquidity shortfall, the Operating Debtor Group Assets are being used to pay Holding Company Debtor A/P/S Claims and the Holding Company Debtor Joint Administrative Expense Share. As assets in the Holding Company Debtor Group are liquidated, this shortfall is being eliminated and repaid to the Operating Debtor Group. It is not anticipated that this temporary liquidity issue will materially alter the distributions to any Creditors under the Modified Plan.

In light of the amounts of currently filed Claims against the Estates of the Holding Company Debtors, Claims listed on the Holding Company Debtors' Schedules, and the projected (i) outcome of the Claims reconciliation process, (ii) effect of the Intercompany Claim Protocol, (iii) effect of the Multi Debtor Protocol, and (iv) Assets of the Holding Company Debtors, the Liquidating Trustee projects that, for distribution purposes under the Modified Plan, the aggregate amount of Unsecured Claims against the Holding Company Debtors will be approximately $380 million (excluding Intercompany Claims) and that Holders of Allowed Unsecured Claims against the Holding Company Debtors will be entitled to receive between approximately $0 million to $27 million, collectively, yielding a blended average recovery (*prior to any recovery from the Causes of Action*) of between approximately 0% and 7.1%.

Further, given the amounts of currently filed Claims against the Estate of NC Credit, Claims listed on the NC Credit Schedules and the projected (i) outcome of the Claims reconciliation process, (ii) effect of the Intercompany Claim Protocol, and (iii) the Assets of NC Credit, the Liquidating Trustee projects that, for distribution purposes under the Modified Plan, the aggregate amount of Unsecured Claims against NC Credit will be approximately $173 million (excluding Intercompany Claims) and that Holders of Allowed Unsecured Claims against NC Credit will be entitled to receive between $0.5 million and $2 million, collectively yielding a net average recovery (*prior to any recovery from the Causes of Action*) of between approximately 0.3% and 1.3%.

In addition, given the amounts of currently filed Claims against the Estates of the Operating Debtors, Claims listed on the Operating Debtors' Schedules, and the projected (i) outcome of the Claims reconciliation process, (ii) effect of the EPD/Breach Claim Protocol and Intercompany Claim Protocol, (iii) effect of the Multi Debtor Protocol, and (iv) Assets of the Operating Debtors, the Liquidating Trustee projects that, for distribution purposes under the Modified Plan, the aggregate amount of Unsecured Claims against the Operating Debtors will be approximately $737 million (excluding Intercompany Claims) and that Holders of Allowed Unsecured Claims against the Operating Debtors will be entitled to receive between approximately $54 million to $99 million, collectively, yielding a blended average recovery (*prior to any recovery from the Causes of Action*) of between approximately 7.3% and 13.4%.

Finally, given the amounts of currently filed Claims against the Estate of Access Lending, Claims listed on the Access Lending's Schedules, and (i) outcome of the Claims reconciliation process and (ii) Assets of Access Lending, the Plan Administrator projects that, for distribution purposes under the Modified Plan, the aggregate amount of Unsecured Claims against Access Lending will be approximately $12.7 million and that Holders of Allowed Unsecured Claims against Access Lending will be entitled to receive approximately $3.8 million collectively, yielding a net average recovery of approximately 29.9%.

These amounts, which are qualified by the risks and assumptions discussed in Section IV.D hereof, are summarized in the following table:

| Class | Impaired/ Unimpaired | Percentage Recovery Estimate (Excluding Litigation Proceeds) |
|---|---|---|
| **Claims to be Paid in Full Under the Plan** | | |
| **Administrative Claims against all Debtors** | Unimpaired | 100% |
| **Priority Tax Claims against all Debtors** | Unimpaired | 100% |
| **Claims Against and Interests in the Holding Company Debtors** | | |
| **Class HC1: Priority Claims Against NCFC** | Unimpaired | 100% |
| **Class HC2: Secured Claims Against NCFC** | Unimpaired | 100% |
| **Class HC3a: Special Deficiency Claims Against NCFC** | Impaired | N/A[2] |

---

[2] The sole source of recovery for Allowed Class HC3a Claims is from the Holding Company Debtor Portion of Litigation Proceeds based on a prior election or deemed election made by these Holders of Special Deficiency Claims.

| Class | Impaired/ Unimpaired | Percentage Recovery Estimate (Excluding Litigation Proceeds) |
|---|---|---|
| Class HC3b: Other Unsecured Claims Against NCFC | Impaired | 0% - 7.1% |
| Class 4a: Series A Preferred Stock Interests | Impaired | 0% |
| Class 4b: Series A 510(b) Claims | Impaired | 0% |
| Class 4c: Series B Preferred Stock Interests | Impaired | 0% |
| Class 4d: Series B 510(b) Claims | Impaired | 0% |
| Class 4e: Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims | Impaired | 0% |
| Class HC5: Priority Claims Against TRS Holdings | Unimpaired | 100% |
| Class HC6: Secured Claims Against TRS Holdings | Unimpaired | 100% |
| Class HC7: Other Unsecured Claims Against TRS Holdings | Impaired | 0%-7.1% |
| Class HC11: Priority Claims Against NC Residual IV | Unimpaired | 100% |
| Class HC12: Secured Claims Against NC Residual IV | Unimpaired | 100% |
| Class HC13: Other Claims Against NC Residual IV | Impaired | 0%-7.1% |
| **Claims Against NC Credit** | | |
| Class HC8: Priority Claims Against NC Credit | Unimpaired | 100% |
| Class HC9: Secured Claims Against NC Credit | Unimpaired | 100% |
| Class HC10a: Special Deficiency Claims Against NC Credit | Impaired | N/A[3] |

---

[3] The sole source of recovery for Allowed Class HC10a Claims is from the NC Credit Portion of Litigation Proceeds.

| Class | Impaired/ Unimpaired | Percentage Recovery Estimate (Excluding Litigation Proceeds) |
|---|---|---|
| Class HC10b: Other Unsecured Claims Against NC Credit | Impaired | 0.3%-1.3% |
| **Settling Parties** | | |
| Class HC14: Settling Parties | Impaired | N/A[4] |
| **Claims Against the Operating Debtors** | | |
| Class OP1: Priority Claims Against NCMC | Unimpaired | 100% |
| Class OP2: Secured Claims Against NCMC | Unimpaired | 100% |
| Class OP3a: Special Deficiency Claims Against NCMC | Impaired | N/A[5] |
| Class OP3b: EPD/Breach Claims Against NCMC | Impaired | 9.1%-16.8% |
| Class OP3c: Other Unsecured Claims Against NCMC | Impaired | 9.1%-16.8% (11.9%-21.9% if Creditor holds a Claim for which NC Capital and Home123 have joint and/or several liability) |
| Class OP4: Priority Claims Against NC Capital | Unimpaired | 100% |
| Class OP5: Secured Claims Against NC Capital | Unimpaired | 100% |
| Class OP6a: Special Deficiency Claims Against NC Capital | Impaired | N/A[6] |

---

[4] Settling Parties are entitled to the pro rata amount of the DCP Settlement Amount as set forth in the Settlement Agreement.

[5] The sole source of recovery for Allowed Class OP3a Claims is from the Operating Debtor Portion of Litigation Proceeds based on a prior election or deemed election made by these Holders of Special Deficiency Claims pursuant to the Original Plan.

[6] The sole source of recovery for Allowed Class OP6a Claims is from the Operating Debtor Portion of Litigation Proceeds based on a prior election or deemed election made by these Holders of Special Deficiency Claims pursuant to the Original Plan.

871230.009-1738947.6

| Class | Impairment | Recovery |
|---|---|---|
| **Class OP6b: EPD/Breach Claims Against NC Capital** | Impaired | 4.6%-8.4% |
| **Class OP6c: Other Unsecured Claims Against NC Capital** | Impaired | 9.1%-16.8%<br><br>(11.9%-21.9% if Creditor holds a Claim for which NCMC and Home123 have joint and/or several liability) |
| **Class OP7: Priority Claims Against Home123** | Unimpaired | 100% |
| **Class OP8: Secured Claims Against Home123** | Unimpaired | 100% |
| **Class OP9a: Special Deficiency Claims Against Home123** | Impaired | N/A[7] |
| **Class OP9b: Other Unsecured Claims Against Home123** | Impaired | 2.3%-4.2%<br><br>(11.9%-21.9% if Creditor holds a Claim for which NCMC and NC Capital have joint and/or several liability) |
| **Class OP10: Priority Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral** | Unimpaired | 100% |
| **Class OP11: Secured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral** | Unimpaired | 100% |
| **Class OP12: Other Unsecured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral** | Impaired | 2.3%-4.2% |
| **Claims Against Access Lending** | | |

---

[7] The sole source of recovery for Allowed Class OP9a Claims is from the Operating Debtor Portion of Litigation Proceeds based on a prior election or deemed election made by these Holders of Special Deficiency Claims pursuant to the Original Plan.

| Class AL1: Priority Claims Against Access Lending | Unimpaired | 100% |
|---|---|---|
| Class AL2: Secured Claims Against Access Lending | Unimpaired | 100% |
| Class AL3: Other Unsecured Claims Against Access Lending | Impaired | 29.9% |

Distribution to A/P/S Claims and other Classes of Creditors under the terms of the Modified Plan will be determined on the same basis as they were determined under the terms of the Original Plan as set forth in the Original Disclosure Statement with the exception of distributions to Holders of Allowed Claims in Class HC10a and HC10b. See Original Disclosure Statement at 123–133. In addition, the Modified Plan has added Class HC14 to provide for the implementation of the Settlement Agreement and distribution to the Beneficiaries.

As a result of the occurrences of the Original Effective Date, the Liquidating Trustee began to make payments to Holders of Allowed Administrative Claims on or about August 1, 2008. As previously stated, all actions taken by the Liquidating Trustee pursuant to the Original Plan since the Original Effective Date will be adopted and ratified pursuant to the confirmation and implementation of the Modified Plan in accordance with the Status Quo Order.

The Original Plan provided that all Professional Fee Applications be filed no later than September 15, 2008. These Professional Fee Applications were filed and a hearing to approve such applications was held by the Bankruptcy Court on December 18, 2008. Subject to certain modifications agreed to by the various professionals, the Bankruptcy Court approved the Professional Fee Applications and payment was made by the Liquidating Trustee which including amounts paid subsequently to the Original Effective Date totaled $16 million.

### G. PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS

#### (i) Reservation of Rights to Object to Claims

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Modified Plan, or otherwise became an Allowed Claim prior to the Original Effective Date, upon the Original Effective Date, the Liquidating Trustee was deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, 510(b) Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Liquidating Trustee's reservation of such objections as of the Original Effective Date is adopted and ratified by the Modified Plan. The Debtors' or the Liquidating Trustee's failure to object to any Claim in the Chapter 11 Cases will be without prejudice to the Liquidating Trustee's rights to contest or otherwise defend against such Claim in

the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim.

### (ii) Objections to Claims.

Prior to the Original Effective Date, the Debtors were responsible for pursuing any objection to the allowance of any Claim. From and after the Original Effective Date, the Liquidating Trustee became responsible for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that are subject to objection by the Debtors as of the Original Effective Date), subject to any approvals of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement. Any objections to Claims by the Liquidating Trustee must be filed and served no later than January 31, 2010, provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of the Liquidating Trustee's business judgment. A motion seeking to extend the deadline to object to any Claim will not be deemed an amendment to the Modified Plan.

### (iii) Service of Objections.

An objection to a Claim will be deemed properly served on the Holder of such Claim if the Liquidating Trustee effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases.

### (iv) Determination of Claims.

Except as otherwise agreed by the Liquidating Trustee (including in its capacity as Plan Administrator), any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated will be deemed to be an Allowed Claim for such liquidated amount and will be satisfied in accordance with the Modified Plan. Nothing contained in Article 10 of this Modified Plan or the Original Plan will constitute or be deemed a waiver of any claim, right, or Causes of Action that the Debtors, the Liquidating Trust, or Reorganized Access Lending may have against any Person in connection

with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157.

### (v) No Distributions Pending Allowance.

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee (including in his capacity as Plan Administrator) may make, in his or her discretion, a distribution pursuant to the Modified Plan on account of the portion of such Claim that becomes an Allowed Claim.

### (vi) Claim Estimation.

In order to effectuate distributions pursuant to the Modified Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Liquidating Trustee, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), will have the right to seek an order of the Bankruptcy Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of property that must be withheld from distribution on account of Disputed Claims; provided, however, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

### (vii) Allowance of Claims Subject to Section 502 of the Bankruptcy Code.

Allowance of Claims will be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

### H. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Pursuant to the terms of the Original Plan, certain Executory Contracts, as set forth on the Assumption Schedule attached to the Original Plan as Exhibit A, were assumed and assigned to the Liquidating Trust pursuant to section 365 of the Bankruptcy Code (the "Assumed Contracts"). The Modified Plan seeks to reaffirm the assumption and assignment to the Liquidating Trust of the Assumed Contracts effective as of the Original Effective Date. Pursuant to the terms of the Original Plan, each Executory Contract entered into by the Debtors prior to the Petition Date that (i) had not expired by its own terms, (ii) was not previously rejected or assumed by order of the Bankruptcy Court, and (iii) was not identified on the Assumption Schedule, were rejected pursuant to sections 365 and 1123 of the Bankruptcy Code (the "Rejected Contracts"). The Modified Plan seeks to reaffirm the rejection of the Rejected Contracts effective as of the Original Confirmation Date. The Modified Confirmation Order will constitute an order of the Bankruptcy Court reaffirming the assumption of the Assumed Contracts effective as of the Original Effective Date and the rejection of the Rejected Contracts pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Original Confirmation Date.

As provided in the Original Disclosure Statement, to the extent any insurance policies listed on Exhibit A to the Original Plan were considered Executory Contracts, the Original Confirmation Order constituted approval of the assumption and assignment of such insurance policies to the Liquidating Trust. See Original Disclosure Statement at 136. The Modified Plan seeks to reaffirm the assumption of such insurance policies set forth on Exhibit A to the Original Plan as of the Original Effective Date. The Modified Confirmation Order will constitute an order of the Bankruptcy Court reaffirming the assumption and assignment of such insurance policies effective as of the Original Effective Date.

For the avoidance of doubt, the insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A to the Original Plan and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute, and benefit from claims) are retained and will be transferred to the Liquidating Trust pursuant to the Modified Plan as of the Original Effective Date.

I.  **EFFECT OF CONFIRMATION AND INJUNCTION**

(i)  **Injunction**

**Except as otherwise expressly provided in the Modified Plan, the documents executed pursuant to the Original Plan, the Original Confirmation Order or the Modified Confirmation Order, on and after the Original Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Original Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined as of the Original Effective Date from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of the Modified Plan. Any Person or entity injured by any willful violation of such injunction will recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in Article 12 of Modified Plan will prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Modified Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee, or the**

Liquidating Trust under the Modified Plan. The Modified Confirmation Order also will constitute an injunction, as of the Original Effective Date, enjoining any Person from enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of the Modified Plan have been made or are not yet due under Article 4 of the Modified Plan; provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section 362(a) of the Bankruptcy Code. Except as provided in Article XII.C of the Modified Plan, nothing in the Modified Plan shall (i) release or discharge any claims held by the SEC against any non-debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-debtors.

        (ii)      Term of Injunctions

Unless otherwise provided in the Original Plan, the Modified Plan, the Original Confirmation Order or the Modified Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Bankruptcy Court under sections 105 or 362 of the Bankruptcy Code, the Modified Plan, or otherwise, and extant on the Original Confirmation Date or the Modified Confirmation Date, will remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust.

        (iii)      Exculpation

On and after the Original Effective Date, none of the Exculpated Parties will have or incur any liability for, and each Exculpated Party is hereby released from, any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases, (b) for any act or omission that occurred during the Chapter 11 Cases or in connection with the formulation, negotiation, and/or pursuit of confirmation of the Original Plan, the consummation of the Original Plan, and/or the administration of the Original Plan and/or the property distributed under the Original Plan, (c) for any act or omission that occurred on or after the Original Effective Date in the implementation of the Original Plan, or (d) for any act or omission that occurred in the formulation, negotiation and/or pursuit of Confirmation of the Modified Plan, the consummation of the Modified Plan and/or the property to be distributed under the Modified Plan, except, in either case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party will be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Original Plan and the Modified Plan and such reasonable reliance will form an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party will be entitled to and be granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of the Original Plan, Modified Plan, Original Disclosure Statement or Modified Disclosure Statement will be deemed to act or release any claims, Causes of Action or

liabilities that the Liquidating Trust, Reorganized Access Lending, or the Estates may have against any Person or entity for any act, omission, or failure to act that occurred (i) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (ii) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liability pertaining to the timing of the commencement of the Chapter 11 Cases, nor will any provision of the Original Plan or the Modified Plan be deemed to act to release any Avoidance Actions.

      (iv)    **Binding Effect of the Modified Plan and the Actions Taken Under the Original Plan**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, subject to the occurrence of the Modified Effective Date and to the extent not inconsistent with the Reversal Order, on and after the Original Confirmation Date, the provisions of the Original Plan, to the extent implemented by the Liquidating Trustee, shall bind any Holder of a Claim against, or Interest in, the Debtors, Estates and their respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Original Plan, whether or not such Holder has accepted the Original Plan and whether or not such Holder has filed a Claim. On and after the Original Confirmation Date, the EPD/Breach Claim Protocol shall be binding on all Holders of Claims in Classes OP3b and/or OP6b irrespective of how such Holders vote on the Original Plan and irrespective of whether such Holders submit the information requested by the Debtors pursuant to the questionnaire referenced in the EPD/Breach Protocol. Any vote in favor of the Original Plan by a Holder of Claims in Classes OP3b and/or OP6b will constitute an express consent to the EPD/Breach Protocol in the Original Plan as adopted by the Modified Plan.

The rights, benefits and obligations of any Person named or referred to in the Original Plan or the Modified Plan, whose actions may be required to effectuate the terms of the Original Plan or the Modified Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

Pursuant to Section 105 of the Bankruptcy Code and the Status Quo Order, any action taken by the Liquidating Trustee in furtherance of the implementation of the Original Plan shall be binding on third parties as if it occurred under this Modified Plan.

**J.    CONDITIONS PRECEDENT**

      (i)    **Conditions Precedent to Modified Effective Date**

The Modified Plan will not become effective unless and until each of the following conditions have been satisfied in full in accordance with the provisions specified below:

      a.    **Approval of Modified Disclosure Statement.**

The Bankruptcy Court will have approved a disclosure statement to the Modified Plan in form and substance acceptable to the Plan Proponents of the Modified Plan in their sole and absolute discretion.

b.  **Approval of Plan Compromises.**

The compromises and settlements contained in Articles 4, 6, and 7 of the Modified Plan and the Original Plan are approved as of the Original Effective Date and the Settlement Agreement is approved as of the Modified Effective Date without material modification by Final Order in accordance with Bankruptcy Rule 9019 and are binding and enforceable against all Holders of Claims and Interests under the terms of the Modified Plan and/or the Settlement Agreement, as appropriate.

c.  **Form of Modified Confirmation Order.**

The Modified Confirmation Order will be in form and substance acceptable to the Plan Proponents of the Modified Plan in their sole and absolute discretion.

d.  **Entry of Modified Confirmation Order.**

The Modified Confirmation Order (i) will have been entered by the Bankruptcy Court, (ii) will not be subject to any stay of effectiveness, and (iii) will have become a Final Order, the Modified Confirmation Date will have occurred, and no request for revocation of the Modified Confirmation Order under section 1144 of the Bankruptcy Code will have been made, or, if made, will remain pending.

(ii)  **Revocation, Withdrawal, or Non-Consummation of Modified Plan**

If after the Modified Confirmation Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Modified Confirmation Date, then upon motion by the Plan Proponents of the Modified Plan, the Modified Confirmation Order may be vacated by the Bankruptcy Court; provided however, that notwithstanding the filing of such a motion, the Modified Confirmation Order will not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Plan Proponents of the Modified Plan. If the Modified Confirmation Order is vacated pursuant to this Section, the Modified Plan will be null and void in all respects and the Status Quo Order will remain in full force and effect pending further order of the Bankruptcy Court, and nothing contained in the Modified Plan, the Modified Disclosure Statement, nor any pleadings filed in connection with the approval thereof will (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors (iii) prejudice in any manner the rights of the Original Plan Proponents and the Plan Proponents of the Modified Plan, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Modified Confirmation Date.

K.  **RETENTION OF JURISDICTION**

The Modified Plan will not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court will retain and have exclusive jurisdiction (to the extent

granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases, the Modified Plan or the Original Plan, or (iii) that are set out more fully in the Modified Plan.

### L. NON-SEVERABILITY.

Except as specifically provided in the Modified Plan, the terms of the Modified Plan constitute interrelated compromises and are not severable, and no provision of those Articles may be stricken, altered, or invalidated

### M. BANKRUPTCY RULE 9019 REQUEST

In Article 17 of the Modified Plan, the Plan Proponents of the Modified Plan, pursuant to Bankruptcy Rule 9019, request approval of all compromises and settlements included in the Modified Plan, including, without limitation, the compromises and settlements included in Articles 4, 6, and 7 of the Modified Plan.

## IV. FINANCIAL INFORMATION

### A. IN THE BANKRUPTCY

The Original Disclosure Statement sets out in great detail the major financial transactions that occurred during the Chapter 11 cases, the financial condition of the Debtors as of March 2008 and the projected distributions under the Original Plan. See Original Disclosure Statement at 143-156. That analysis will not be repeated here but parties interested in such analysis should refer to the Original Disclosure Statement.

### B. FINANCIAL ACTIVITY SINCE THE ORIGINAL EFFECTIVE DATE

#### (i) Transfer on the Effective Date

As of the Original Effective Date, the Debtors transferred all of the Assets of the Debtors, excluding the assets of Access Lending but including the Interests of Access Lending, to the Liquidating Trust. This transfer included $71.5 million in cash of the Debtors, excluding $5.1 million associated with Access Lending. The Liquidating Trustee, with the assistance of its financial advisors, allocated the approximately $210 million in administration expenses incurred in the chapter 11 cases, including salaries, professional fees and the Debtors' normal business operations, among the various Debtors as required under the Original Plan. As a result of the allocation required under the terms of the Original Plan, the Holding Company Debtors experienced a temporary liquidity shortfall which was satisfied by the Operating Debtors. The shortfall created by the Holding Company Debtors' inability to fully reimburse from available cash its allowed A/P/S Claims and its share of the Joint Administrative Expenses is to be repaid from the first funds liquidated from the remaining Holding Company Debtor Assets.

#### (ii) Cash Position as of September 30, 2009

39
871230.009-1738947.6