# EXHIBIT A
(NYSTRS Confirmation Objection)

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY TRS HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 07-10416 (KJC)<br><br>(Jointly Administered)<br>Hearing Date: April 24, 2008 @ 10:00 a.m. (ET)<br>Objection Deadline: April 18, 2008 @ 4:00 p.m. (ET)<br><br>Re: D.I. No. 5405 |

## OBJECTION OF NEW YORK STATE TEACHERS' RETIREMENT SYSTEM TO FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF MARCH 18, 2008

The New York State Teachers' Retirement System ("NYSTRS"), a creditor/party in interest and the Lead Plaintiff in a shareholder securities fraud class action currently entitled *In re New Century*, Case No. 2:07-cv-00931-DDP (JTLx) (the "Securities Litigation"), pending in the United States District Court for the Central District of California (the "District Court"),[1] and filed on behalf of the putative class of investors (the "Securities Class") who purchased securities of New Century Financial Corp. ("NCFC"), one of the Debtors[2] herein, during the period from May 5, 2005 to March 13, 2007, inclusive (the "Class Period"), hereby submits this objection (the "Objection") to the First Amended Joint Chapter 11 Plan Of Liquidation Of The Debtors And The Official Committee Of Unsecured Creditors Dated As Of March 18, 2008 (the "Plan"), and states the following:

---

[1] On January 31, 2008, the District Court dismissed the consolidated amended complaint filed by NYSTRS without prejudice and with leave to file an amended consolidated complaint. An amended consolidated complaint was timely filed on March 24, 2008, but the parties agreed to allow a further amendment upon the release of the Examiner's Final Report, which occurred on March 26, 2008.

[2] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Plan (defined below).

20480/2
04/18/2008 6049779.4

## BACKGROUND

1. On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. Subsequently, New Century Warehouse Corporation, one of the Debtors, also filed a voluntary Chapter 11 petition, which is being jointly administered with the initially filed Debtors' petitions.

2. Prior to the Petition Date, approximately twenty (20) securities class action complaints were filed in the District Court,[3] each alleging violations by the Debtors and certain of their current and/or former officers, directors and underwriters and their outside auditor, KPMG LLP (collectively, the "Non-Debtor Defendants") of certain federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and, in some instances, Sections 11 and 15 of the Securities Act of 1933 (collectively, the "Securities Laws"). These allegations arise from, *inter alia*, false and misleading statements concerning NCFC's financial results and business made during the Class Period.

3. On or about June 26, 2007, the District Court appointed NYSTRS as Lead Plaintiff, consolidated the pending putative class actions into the Securities Litigation and directed Lead Plaintiff to file an amended consolidated complaint.

4. On September 14, 2007, NYSTRS filed a consolidated amended complaint (the "Consolidated Complaint"). Although NCFC was named as a defendant in several of the class action complaints filed prior to the Petition Date, NCFC is not named as a defendant in the Consolidated Complaint pursuant to the dictates of 11 U.S.C. §362(a). The Securities Litigation did, however, name the Non-Debtor Defendants.

5. NYSTRS and members of the putative Class are creditors, equity holders and parties-in-interest in these Chapter 11 proceedings by virtue of the fact that NYSTRS and the putative Class lost millions of dollars as a result of their purchases of NCFC securities.

---

[3] The first such complaint, *Avi Gold v. Brad A. Morrice, et al.*, was filed on February 8, 2007.

6. The Securities Litigation and this Chapter 11 proceeding were the result of what has been exposed as a massive fraud. NCFC and the Non-Debtor Defendants artificially inflated the price of NCFC securities through false and misleading statements concerning NCFC's finance and mortgage lending business. Specifically, and among other things, NCFC maintained inadequate reserves against losses associated with loan delinquencies and repurchases, which reserves caused NCFC to overstate significantly its publicly reported earnings, thereby creating the false impression that NCFC was profitable when, in fact, it was not. The report of the Court-approved Examiner in this Chapter 11 proceeding supports these allegations with significant detail after an exhaustive review of the documents provided by the Debtors and third parties.

7. Since the Petition Date, the Debtors have engaged in an orderly liquidation of their assets through a sequence of court-approved sales.

8. On February 2, 2008, the Debtors filed the Disclosure Statement For The Joint Chapter 11 Plan of Liquidation Of The Debtors And The Official Committee Of Nonsecured Creditors Dated As Of February 2, 2008 (the "Disclosure Statement") (Docket No. 4804) and the accompanying plan (the "Initial Plan," Docket No. 4805).

9. On February 27, 2008, NYSTRS filed its Objection to the adequacy of the Disclosure Statement (the "Objection," Docket No. 5067).

10. In response to the Disclosure Statement Objection, the Plan Proponents amended the Disclosure Statement and, where applicable, the Plan to address some of the issues raised in the Disclosure Statement Objection. The amendments were sufficient for disclosure statement purposes. At the hearing on the adequacy of the Disclosure Statement, the Debtors and Lead Plaintiff agreed on the record that certain objections set forth in the Disclosure Statement Objection would be reserved for confirmation if not resolved in advance thereof. Furthermore, NYSTRS reserved its rights with respect to other confirmation objections. *See* Disclosure Statement Objection, ¶ 9.

11. On March 18, 2008, this Court entered an order approving the Disclosure Statement, as amended, and granting other related relief. The hearing on confirmation of the Plan is scheduled for April 24, 2008, and objections are due on April 18, 2008.

12. NYSTRS and the Plan Proponents have not resolved the outstanding confirmation objections. Furthermore, as a result of additional language included in the amended Plan, NYSTRS has additional objections to the Plan. Accordingly, NYSTRS hereby objects to confirmation of the Plan.

## OBJECTION

13. NYSTRS asserts the following objections to confirmation of the Plan:

   (A) the Plan fails to provide for any protocol for the retention and safeguarding of documents and information stored on computers and computer-related equipment and for a chain of custody between the Liquidating Trust (and Trustee) and the Debtors with respect to same;

   (B) the Plan improperly extends the automatic stay and Plan injunctions indefinitely and beyond any Plan Effective Date;

   (C) separate and apart from (b) above, the Plan appears to enjoin NYSTRS from issuing any process on or enforcing any such process against the Liquidating Trustee in connection with future discovery in the Securities Litigation;

   (D) the Plan improperly and unjustifiably precludes NYSTRS from proceeding against the Debtors post-confirmation solely to the extent of available insurance coverage, irrespective of any injunction or distribution under the Plan;

   (E) NYSTRS is entitled to the same release, discharge and injunction carve-out afforded to the SEC with respect to claims against non-debtors to the extent the Plan is intended to impact NYSTRS's claims against non-debtors; and

   (F) the exculpation provision, to the extent it relates to pre-petition claims in connection with the timing of the commencement of the Chapter 11 Cases, is improper.

A. **The Plan Fails to Provide for any Protocol and Chain of Custody Between the Liquidating Trust and the Debtors for the Retention and Safeguarding of Documents Generally and Information Stored on Computers and Computer-Related Equipment.**

14. Pursuant to the Order establishing expanded procedures governing miscellaneous asset sales, upon a sale of assets that included computers or computer-related equipment, the Debtors represented that a certain protocol, including "the backup and storage of all information stored on the Debtors' computers and computer related equipment" [Docket No. 2594], would be followed in order to safeguard information maintained on the subject computers or computer-related equipment (collectively, with any documents, the "Computer Information").

15. Although the Disclosure Statement addressed the Debtors' miscellaneous asset sales, the Plan does not provide for the continued protection or maintenance of the Computer Information or other relevant documents (such as those documents provided to the Examiner, the Audit Committee and/or various state and federal agencies) after confirmation or the Effective Date of the Plan. This is a liquidating plan; on the Effective Date, all of the Debtors' assets will be transferred to the Liquidating Trust to be liquidated and the proceeds will be distributed in accordance with the Plan. Except for Access Lending, the Debtors will cease to exist on the Effective Date. The proceeds of any litigation claims will be placed in the Litigation Trust and then distributed to creditors. Nowhere does the Plan provide for the continuation of the previously established protocol for maintaining the Computer Information or any plan or protocol for maintaining other relevant documents. Indeed, the Liquidating Trust Agreement filed on April 6, 2008 (Docket No. 5136) provides only that the "records retention protocol [is] *to come.*" Liquidating Trust Agreement § 3.3(g) (emphasis added). No chain of custody between the Debtors and the Liquidating Trust has been established to ensure that the Computer Information is maintained and not corrupted and that all documents are preserved and safeguarded. Whether or not the previously established protocol will continue and for how long remains unknown. The Plan must provide, directly and through the Liquidating Trust

Agreement, some mechanism to preserve and protect this information, the value of which cannot be overstated, especially in light of the revelations contained in the Examiner's Report.[4]

16. The Plan and the Liquidating Trust Agreement must provide a protocol or some mechanism by which the Liquidating Trustee maintains and safeguards the Computer Information and documents after confirmation of the Plan. The Computer Information and other relevant historical documents must not be abandoned or otherwise disposed of without affording NYSTRS and other interested parties an opportunity to review, inspect, analyze and, if necessary, copy the documents and Computer Information.

B. **The Extension of the Automatic Stay and Injunctions under the Plan is Inappropriate and Prejudicial.**

17. During the course of the Chapter 11 cases, NYSTRS sought a limited modification of the automatic stay to obtain from the Debtors copies of all documents and materials that the Debtors produced or provided in connection with any inquiries by the Audit Committee of NCFC's Board of Directors, the SEC, the United States Attorneys Office, the New York Stock Exchange and the Bankruptcy Court-appointed examiner relating to NCFC's accounting and financial statement irregularities, errors and/or misstatements. (Docket No. 2274.) Each of these investigations was generally described in the Disclosure Statement.

18. Although this Court acknowledged NYSTRS's position that an alternative form of relief could be to modify the automatic stay solely to permit NYSTRS to obtain relief from the PSLRA Stay in the District Court (and then return to the Bankruptcy Court to request further relief) (*see* Transcript of Oct. 2, 2007 hearing, at 55, lines 17-21 (Docket No. 3423)) and also that the Debtors would have to address NYSTRS's request for production of documents "sooner or later," *id.*, at 27, lines 9-10, and at 56, lines 14-16, this Court denied NYSTRS's motion to modify the automatic stay without prejudice to renew the motion upon the earlier of confirmation of the Plan, a change in circumstances regarding any available factual predicate for the stay

---

[4] Much of this information is clearly relevant to the Securities Litigation. NYSTRS has yet to obtain discovery from the Debtors due to the automatic stay and the PSLRA discovery stay. *See* ¶¶ 17 - 23, *infra*.

modification motion, or the filing of the Examiner's report (which was eventually filed on February 29, 2008 (under seal), and not unsealed until March 26, 2008).[5] Docket No. 4057.

19. However, under the Plan, stays and injunctions provided for in the Chapter 11 cases by Bankruptcy Court orders pursuant to §§105 or 362 of the Bankruptcy Code, and extant on the Confirmation Date, remain in effect until the *later* of the entry of the Final Decree or dissolution of the Liquidating Trust. *See* Plan, Art. 12.B, at 75.

20. Neither the entry of the Final Decree nor dissolution of the Liquidating Trust is a date certain. In fact, the dissolution of the Liquidating Trust may not occur until more than eight (8) years after the Effective Date of the Plan. *See* Plan, Art. 8.F.12, at 48; Liquidating Trust Agreement, § 8.1.

21. The Liquidating Trustee has the right to pursue the Debtors' Causes of Action with respect to, *inter alia*, the restatement of the Debtors' financials (in the event it is determined that such Causes of Action have any value to the Liquidating Trust). Liquidating Trust Agreement, § 3.2(e). These Causes of Action will likely have some of the same factual predicates as the claims of NYSTRS and the putative Class arising from the allegations in the Securities Litigation. Because of the requested extension of stays and injunctions under the Plan, the Liquidating Trustee can prevent or, at the very least, significantly delay NYSTRS from ever obtaining access to relevant discovery by virtue of the extended life of the Liquidating Trust.

22. Certainly, NYSTRS can refile its motion to modify the stay upon the occurrence of one of the events listed in ¶18, *supra*; however, as stated previously, there is no basis for the Liquidating Trust to be able to assert the automatic stay for years beyond the Effective Date of any Plan so as to frustrate or interfere with NYSTRS's ability to obtain relevant documents in the Securities Litigation, while having those documents available to pursue its own (the Committee's or its successor's) claims. This is precisely the type of offensive use of the automatic stay that

---

[5] The delay in unsealing the Examiner's report and making it available to the public, including NYSTRS, was the result of the Committee's motion to maintain the seal. The Committee offered no substantive basis to keep the report under seal and then, after objections to its motion were filed, withdrew the motion.

bankruptcy courts refuse to tolerate. *Hydramar Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. Lexis 24828, *13 (E.D. Pa. 1986), citing *Bohack Corp. v. Borden, Inc.*, 599 F. 2d 1160 (2d Cir. 1979) (a debtor using the bankruptcy process and the automatic stay to its advantage may not serve the purpose of the Bankruptcy Code; the automatic stay "has no application where the debtor is in the position of assailant rather than the victim")."Our system of law universally frowns on a party that would use the stay as both a sword and a shield." *In re A.H. Robbins Co.*, 828 F. 2d 1023, 1026 (4th Cir. 1987); *In re Johns-Manville*, 31 B.R. 965, 974 (S.D.N.Y. 1983) (accepting the view that the bankruptcy's protective shield should not be unfairly converted into a sword of aggression). *See also Maritime Electric Co. v. United Jersey Bank*, 959 F. 2d 1194, 1205 (3d Cir. 1991).

23. Neither the Plan nor the Liquidating Trust Agreement provides any explanation to justify the lengthy extension of the automatic stay (or other stays or injunctions imposed by the Plan), at least as such stays and injunctions relate to access to the Debtors' historical documents, electronic or otherwise. NYSTRS acknowledges that it currently remains bound by the PSLRA Stay, but the automatic stay should not be available offensively for what might as well be perpetuity to frustrate the claims of NYSTRS against defendants common to those against whom the Liquidating Trustee may assert a claim to gain a fundamentally unfair litigation advantage.

C. **Separate and Apart from (B) above, the Plan Appears to Enjoin NYSTRS From Issuing any Process on or Enforcing any Such Process Against the Liquidating Trustee in Connection with Future Discovery in the Securities Litigation.**

24. Notwithstanding the improper extension of the automatic stay and injunctions under the Plan described above, when NYSTRS ultimately is entitled to serve a document request and subpoena or other discovery request on the Liquidating Trust or the Liquidating Trustee, as the custodian of the Computer Information and other historical documents of the Debtors, any attempt to do so appears to be prohibited by the Plan. *See* Plan, Art. 12.A, at 73-74.

25. The Plan defines Liquidating Trust and the Liquidating Trustee as Protected Parties. Plan, Art. 1.A, at 13. The Plan permanently enjoins Holders of Claims or Interests from

taking any action or commencing any proceeding against a Protected Party. Plan, Art. 12.A, at 73-74. The Plan further provides that "the Confirmation Order shall state that without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court." Plan, Art. 8.F.3(c).

26. To the extent service of a document request and subpoena or other discovery request is deemed to be an action or proceeding enjoined by the Plan or constrained by Art. 8.F.3(c) of the Plan, it appears that NYSTRS is further burdened in its attempt to obtain discovery to which it may be entitled. These provisions must be either clarified or modified so as not to preclude NYSTRS from having an opportunity to review documents and obtain discovery from the Liquidating Trust relevant to the prosecution of the Securities Litigation.

D. **NYSTRS Should Be Afforded the Right to Proceed with its Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan.**

27. Upon information and belief, the Debtors maintain numerous liability insurance policies (the "D&O Policies") in favor of their directors and officers covering claims asserted in the Securities Litigation, as well as for claims asserted against the Debtors directly for violations of federal securities laws. On April 4, 2008, the Debtors filed the Schedule of Contracts (Exhibit A to the Plan) to be assumed upon confirmation of the Plan, see Plan, Art. 11.A, and to be assigned to the Liquidating Trust. Plan, Art. 11.D. The Plan proponents provide no information as to the coverage afforded under the D&O Policies and do not identify which parties have a right to access the proceeds thereof in the event a claim is asserted against them. Notwithstanding the assignment of these policies to the Liquidating Trust, NYSTRS maintains that the putative Securities Class is entitled to look to the proceeds of such insurance for payment of the Claims of NYSTRS and the putative Class and may, at least, pursue these Claims against the Debtors solely to the extent of such available insurance.

28. Assuming the Debtors are covered by any such insurance policy, and because the proceeds of such policy are not and cannot be an asset of the Debtors' estates being distributed under the Plan, there is no basis to deny NYSTRS the right to access that insurance in connection with the claims that the insurance was intended to cover. Indeed, it is no different than the personal injury claimant who agrees to look solely to the insurance proceeds and not the debtor's estate to satisfy his or her claim.

29. Because NYSTRS may not have a direct action against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be accessed through the pursuit of the claims asserted in the Securities Litigation. Accordingly, the Plan should not impact the rights of NYSTRS or the putative Securities Class to pursue their claims against the Debtors solely to the extent of the proceeds of the D&O Policies.

30. Accordingly, the Plan should provide that:

> Nothing in the Plan, or in any Order confirming the Plan, shall preclude NYSTRS, as lead plaintiff, and the putative Class from pursuing their claims against the Debtors solely to the extent of available insurance coverage and proceeds in the Securities Litigation. The Claims of NYSTRS, as lead plaintiff, and the putative Class against the Debtors, solely to the extent of available insurance, are preserved and unaffected by the Plan.

E. **The Release, Discharge and Injunction Carve Out in Favor of the SEC Should Be Equally Applicable to NYSTRS.**

31. It is well-settled that non-debtor releases are appropriate only under extraordinary circumstances. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211-17 (3d Cir. 2000) (denying third party releases and related injunctions where there was no legal or evidentiary basis to authorize same); *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005) (holding that non-debtor releases are proper only in rare cases and may be "tolerated only if the affected creditor consents").

32. While the Plan does not appear to release any non-debtors, such as the Non-Debtor Defendants, from claims of third-parties, such as NYSTRS, in a last minute modification prior to the Disclosure Statement hearing, the Plan now provides express language affirmatively stating that any claims of the SEC against not-debtors will not be released, discharged or enjoined under the Plan (the "SEC Carve-out"). The inclusion of the SEC Carve-out in Article 12.A. of the Plan creates, at the very least, the appearance that non-debtor releases are being or may be granted under the Plan. To the extent there is any intention to provide such non-debtor releases under the Plan, NYSTRS objects. The Non-Debtor Defendants in the Securities Litigation are not entitled to a release, discharge or similar relief. *See Continental Airlines, supra; Metromedia Fiber, supra;* 11 U.S.C. §524(e). Accordingly, in order to clarify this potential ambiguity and avoid any prejudice to the NYSTRS in asserting claims against non-debtors, the Plan should afford NYSTRS the same relief afforded the SEC, by including the following provision:[6]

> Nothing in the Plan, or in any order confirming the Plan, shall (i) release or discharge any claims held by NYSTRS or the putative Class against any non-debtors or (ii) enjoin or restrain NYSTRS or the putative Class from enforcing such claims against any non-debtor.

F. **The Exculpated Parties are not Entitled to Exculpation from Claims, Causes of Action or Liability Pertaining to Pre-Petition Conduct in Connection with the Timing of the Commencement of the Chapter 11 Cases.**

33. Under the Plan, "Exculpated Party" includes, *inter alia*, the Debtors' officers, directors, crisis managers, financial advisors and professionals. *See* Plan, Art. 1.A, at 8.

34. "Exculpated Party," therefore, includes certain of the Non-Debtor Defendants in the Securities Litigation.

---

[6] Indeed, if the Plan does not, in fact, provide for third party non-debtor releases, there should be no objection to the inclusion of this language in the Plan and any confirmation order.

35. Generally, exculpation is afforded to certain parties for their acts or omissions *during* the course of the Chapter 11 proceeding. To the extent the Plan provides such relief, NYSTRS has no objection.

36. In fact, the initial version of the Plan did provide such relief. However, by way of amendment to the Plan made after the deadline for filing objections to the Disclosure Statement, the Plan Proponents enlarged the scope of the exculpation provision by providing that Exculpated Parties shall be relieved from liability for *any* claim or cause of action to *any* Holder of a Claim or Interest or *any* party in interest "pertaining to the timing of the commencement of the Chapter 11 Cases." *See* Plan, Art. 12.C, at 75.

37. Notwithstanding that the foregoing language is vague and ambiguous, the conduct referred to therein must have occurred pre-petition and therefore may, indeed, fall within or be related to the conduct described in the Securities Litigation. The massive fraud alleged in the Securities Litigation and thereafter detailed in the Examiner's Report may very well involve planning and other conduct "pertaining to commencement of the Chapter 11 Cases." Because granting exculpation from liability for conduct pertaining to the timing of the commencement of these Chapter 11 cases is tantamount to a release, discharge and/or an injunction as to pre-petition conduct, prohibited by the Bankruptcy Code and case law, the claims of NYSTRS against the Non-Debtor Defendants could be impacted. The Plan's current exculpation provision effectively provides a release to non-debtors for pre-petition conduct without demonstrating the requisite extraordinary circumstances, *see* ¶31, *supra*, and should not be allowed.

## CONCLUSION

38. Based on the foregoing, NYSTRS respectfully requests that an order be entered (i) denying confirmation of the Plan and (ii) granting such other and further relief as the Court deems just and proper.

## STATEMENT THAT NO BRIEF IS NECESSARY

39. As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by NYSTRS are set forth herein, NYSTRS respectfully requests that the

Court waive the requirements of D. Del. LR 7.1.2, incorporated in these proceedings by Local Rule 1001-1(b), of filing a separate brief in support of the Objection. However, if the Court determines otherwise, NYSTRS respectfully requests the opportunity to submit an appropriate brief or memorandum.

Dated: April 18, 2008

**CROSS & SIMON LLC**

By: *CPS*
Christopher P. Simon (Bar No. 3967)
913 North Market St., 11th Floor
Wilmington, Delaware 19899-1380
302.777.4200 (Telephone)
302.777.4224 (Facsimile)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Ira M. Levee, Esq. (IL 9958)
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to NYSTRS*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano, Esq.
Hannah Greenwald Ross, Esq.
Lauren McMillen, Esq.
1285 Avenue of the Americas
New York, New York 10019
212.554.1400 (Telephone)
212.554.1444 (Facsimile)

Blair A. Nicholas, Esq.
12481 High Bluff Drive, Suite 300
San Diego, California 92130
858.793.0070 (Telephone)
858.793.0323 (Facsimile)

*Lead Counsel to NYSTRS*