# EXHIBIT B-1
(Original Confirmation Order paragraphs)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                : Chapter 11
                                      :
NEW CENTURY TRS HOLDINGS,             : Case No. 07-10416(KJC)
INC., a Delaware corporation, et al.,[1] :
                                      : Jointly Administered
         Debtors.                     :
                                      : Re: Docket Nos. 6412 & 8254
                                      :

ORDER CONFIRMING THE
SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE
DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED AS OF APRIL 23, 2008

WHEREAS, on February 2, 2008, New Century Financial Corporation ("NCFC"), New Century TRS Holdings, Inc. ("TRS Holdings"), New Century Mortgage Corporation ("NCMC"), NC Capital Corporation ("NC Capital"), Home123 Corporation ("Home123), NC Asset Holding, L.P. ("NC Asset Holding"), NC Deltex, LLC ("NC Deltex"), NC Residual III Corporation ("NC Residual III"), NC Residual IV Corporation ("NC Residual IV"), NCoral, L.P. ("NCoral"), New Century Credit Corporation ("NC Credit"), New Century Mortgage Ventures, LLC ("NCM Ventures"), New Century R.E.O. Corp. ("NC REO"), New Century R.E.O. II Corp. ("NC REO II"), New Century R.E.O. III Corp. ("NC REO III"), and

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L P (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; and NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership and New Century Warehouse Corporation, a California corporation.

under the Plan or for distribution purposes and (c) shall not be binding on the Debtors, their Estates, the Liquidating Trustee, or the Plan Administrator.

8. Plan Distribution Provisions Controlling. Matters relating to distributions to Holders of Claims against and Interests of the Debtors, including but not limited to the timing of distributions, necessary reserves, distribution calculations, payment in full of Unsecured Claims, manner of distribution, treatment of de minimis distributions, delivery of distributions, treatment of undeliverable distributions, setoffs and recoupments, interest on Claims, treatment of withholding taxes, and reports regarding distributions, shall be governed solely by the terms of the Plan and this Order.

9. Injunction. Except as otherwise expressly provided in the Plan or in this Order, and except in connection with the enforcement of the terms of the Plan, this Order, or any documents provided for or contemplated in the Plan or this Order, on and after the Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, or right of subrogation of any

kind against any obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of the Plan. Any Person or entity injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in Article 13 of the Plan or in this Order shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under the Plan. This Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of the Plan have been made or are not yet due under Article 4 of the Plan; provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section 362(a) of the Bankruptcy Code. Except as provided in Article 13.C of the Plan, nothing in the Plan or this Order shall (i) release or discharge any claims held by the SEC against any non-debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-debtors. Further, except as provided in Article 13.C of the Plan as modified by this Order, nothing in the Plan or this Order shall (i) release or discharge any claims currently asserted by the Securities Plaintiffs in the Securities Litigation against any non-debtors or any claims the

court in the Securities Litigation permits the Securities Plaintiffs to assert against any non-debtors (collectively, the "Third Party Securities Claims") or (ii) enjoin or restrain the Securities Plaintiffs from enforcing any such claims against any non-debtors.

10. <u>Term of Stay and Injunctions</u>. Unless otherwise provided herein or in the Plan, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, the Plan, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (x) the entry of the Final Decree or (y) the dissolution of the Liquidating Trust. In accordance therewith, and without limiting the foregoing, until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust, all Persons or entities (except as provided in section 362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date; <u>provided, however,</u> that notwithstanding any provisions of the Plan or this Order, including but not limited to Article 13 of the Plan, (i) when permitted to do so in the Securities Litigation, the Securities Plaintiffs may serve discovery requests on the Liquidating Trust, as custodian of NCFC's books and records, and may seek to take any action reasonably necessary to enforce such requests and compel discovery in the

LA3:1146803.22
RLF1-3302479-1

16

Securities Litigation, and (ii) the rights of the Liquidating Trustee to object on any and all bases to such discovery requests (other than on the basis that such discovery requests violate the automatic stay or any injunction) in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any other applicable rules, laws, or legal authority and the rights to assert any and all applicable privileges (and other related rights) are fully reserved.

11. Relief from Stay. Notwithstanding any provision of the Plan or this Order, (i) all orders of the Court entered during the Chapter 11 Cases, including, without limitation, the *Order Providing that the Automatic Stay Under Section 362(a) of the Bankruptcy Code Is Terminated to Permit the Commencement or Continuation of any Action to Foreclose Upon or Extinguish an Interest Listed in the Name of a Debtor* dated as of July 14, 2008 (the "Stay Termination Order"), that provide for relief from the automatic stay imposed by section 362 of the Bankruptcy Code shall remain in full force and effect following the Effective Date, (ii) to the extent that the Debtors, the Committee, or any third parties file motions prior to the Effective Date seeking relief from the automatic stay imposed by section 362 of the Bankruptcy Code, any order of the Court granting such relief, including, without limitation, the Stay Termination Order, shall supersede this Order, and (iii) following the Effective Date, parties may seek relief from all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, including this Order, upon sufficient notice and a hearing.

12. Exculpation. On and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases or (b) for any act or omission that occurred during the Chapter 11 Cases or

in connection with the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except, in any case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan to the extent permitted by applicable law; provided, however, that, solely with respect to the Securities Litigation, the Exculpated Parties are not released from any claim, cause of action or liability to the Securities Plaintiffs arising or accruing prior to March 14, 2008. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of the Plan or the Disclosure Statement shall be deemed to act as a release of or to release any claims, Causes of Action or liabilities that (i) the Liquidating Trust, Reorganized Access Lending, the Estates, or the SEC, may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities pertaining to the timing of the commencement of the Chapter 11 Cases or (ii) solely with respect to the Securities Litigation, the Securities Plaintiffs may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities arising or accruing after March 14, 2007 and pertaining to the timing of the commencement of the

Chapter 11 Cases; nor shall any provision of the Plan or this Order be deemed to act as a release of or to release any Avoidance Actions.

13. <u>No Effect on Objections to Fee Applications</u>. Nothing contained in this Order or the Plan shall (i) affect the rights of parties in interest to object to Fee Applications and Claims asserted under section 503(b)(3) of the Bankruptcy Code or (ii) obviate the power of the Court to issue orders with respect to Fee Applications and Claims asserted under section 503(b)(3) of the Bankruptcy Code.

14. <u>Release of Goldman</u>. On the Effective Date, any and all claims, Causes of Action, rights or remedies of any kind or nature that the Debtors or the Estates have, may have or could have asserted against Goldman, its affiliates or its former or present officers, directors, employees, attorneys, financial advisors or other professionals, which claims, causes of action, rights or remedies arise out of or relate to Access Lending shall be waived, set aside, discharged, settled, compromised, and released.

15. <u>IRS</u>. Notwithstanding Article 13.A of the Plan and Paragraph 9 of this Order, the rights of the IRS with respect to the matters set forth therein shall be governed by this Paragraph 15.

    a. <u>Right To Setoff</u>. The IRS may exercise its right to setoff unpaid Allowed Claims against refunds of taxes due and payable from the IRS to the Debtors, including the income tax refund claimed by the Debtors for the 2004 taxable year in the amount of $66,016,311. As of the date of this Order, based upon its ongoing audit of the 2003, 2004, 2005 and 2006 taxable years (the "Tax Years") of the Debtors, the best estimate of the IRS is that the Debtors owe not less than $2,000,000. The IRS may

sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

32. <u>Termination</u>. The duties and powers of the Liquidating Trustee shall terminate upon the termination of the Liquidating Trust.

33. <u>Document Retention</u>. From and after the Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to the Liquidating Trust by the Debtors as set forth in the Plan and the Liquidating Trust Agreement, and the Liquidating Trustee shall not destroy or otherwise abandon any such Records absent further order of the Court after a hearing upon notice to parties in interest with an opportunity to be heard. The Records the Debtors will transfer to the Liquidating Trust on the Effective Date shall include, but not be limited to, all such documents and electronic data (i) identified for retention in connection with the investigation by the Audit Committee of NCFC's Board of Directors and (ii) produced to the SEC, the United States Attorney's Office, or the Examiner.

34. <u>Valuation of Assets</u>. As soon as practicable after the Effective Date the Liquidating Trustee shall make a good faith determination of the fair market value of the Liquidating Trust Assets. This valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) for all federal and state income tax purposes.

from the rejection of Executory Contracts under the Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) must be filed with XRoads Case Management Services, P.O. Box 8901, Marina Del Rey, California 90295 (Telephone (888) 784-9571), and a copy served on counsel for the Plan Proponents and the Liquidating Trustee, within thirty (30) days after the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns, or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class HC3b (Other Unsecured Claims against NCFC), Class HC7 (Other Unsecured Claims against TRS Holdings), Class HC10b (Other Unsecured Claims against NC Credit), Class HC13 (Other Unsecured Claims against NC Residual IV), Class OP3c (Other Unsecured Claims against NCMC), Class OP6c (Other Unsecured Claims against NC Capital), Class OP9b (Other Unsecured Claims against Home123), Class OP12 (Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral), or Class AL3 (Other Unsecured Claims against Access Lending), depending on which Debtor the Claim is asserted against. Nothing in the Plan or this Order extends or modifies any previously applicable Bar Date.

71. <u>Insurance Policies</u>. To the extent that any or all of the insurance policies set forth on Exhibit A to the Plan are considered to be Executory Contracts, then notwithstanding anything contained in the Plan or this Order to the contrary, the Plan constitutes a motion to assume the insurance policies set forth on Exhibit A to the Plan and to assign them to the Liquidating Trust. Subject to the occurrence of the Effective Date, the entry of this Order constitutes approval of such assumption and assignment pursuant to section 365(a) of the

Bankruptcy Code and a finding by the Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on Exhibit A to the Plan. To the extent that the Court determines otherwise with respect to any insurance policy, the Plan Proponents' right to seek rejection of such insurance policy or other available relief is hereby reserved. The Plan shall not affect contracts that have been assumed and assigned by order of the Court prior to the Confirmation Date. The certain insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A to the Plan and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries or which may be property of the Debtors' Estates (including the rights, if any, to make, amend, prosecute, and benefit from claims) are retained and shall be transferred to the Liquidating Trust pursuant to the Plan. Nothing herein or in the Plan shall be deemed to constitute a determination that any of the proceeds of the insurance policies are or are not property of any Debtor's Estate.

72. <u>General Authority</u>. The Debtors, if on or prior to the Effective Date, and the Liquidating Trust or Reorganized Access Lending, if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Plan. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the applicable Debtor, if on or