# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC., a Delaware corporation, et al.,**[1] | : | **Case No. 07-10416(KJC)** |
| | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | Re : Docket No. 9905 |

## ORDER CONFIRMING THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION DATED AS OF SEPTEMBER 30, 2009

WHEREAS, on September 30, 2009, Alan M. Jacobs, as Trustee of the New Century Liquidating Trust (the "Liquidating Trustee"), as Plan Administrator of Reorganized Access Lending (the "Plan Administrator") and as sole officer and director of New Century Financial Corporation ("NCFC"), New Century TRS Holdings, Inc. ("TRS Holdings"), New Century Mortgage Corporation ("NCMC"), NC Capital Corporation ("NC Capital"), Home123 Corporation ("Home123"), NC Asset Holding, L.P. ("NC Asset Holding"), NC Deltex, LLC ("NC Deltex"), NC Residual III Corporation ("NC Residual III"), NC Residual IV Corporation ("NC Residual IV"), NCoral, L.P. ("NCoral"), New Century Credit Corporation ("NC Credit"), New Century Mortgage Ventures, LLC ("NCM Ventures"), New Century R.E.O. Corp. ("NC

---

[1]     The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; and NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership and New Century Warehouse Corporation, a California corporation.

REO"), New Century R.E.O. II Corp. ("NC REO II"), New Century R.E.O. III Corp. ("NC REO III"), and New Century Warehouse Corporation ("Access Lending"), (each individually a "Debtor," and collectively, the "Debtors") (the Debtors, collectively with the Liquidating Trustee and Plan Administrator, the "Plan Proponents of the Modified Plan") filed the *Modified Second Amended Joint Chapter 11 Plan of Liquidation, Dated as of September 30, 2009* (the "Modified Plan") [Docket No 9905], and the related *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009* [Docket No. 9904] with the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on October 15, 2009, the Plan Proponents of the Modified Plan filed an amended *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009* (the "Modified Disclosure Statement") [Docket No. 9931]; and

WHEREAS, on October 14, 2009, the Court entered an order [Docket No. 9928] (the "Modified Solicitation Procedures Order") (i) approving the Modified Disclosure Statement pursuant to section 1125 of Title 11 of the United States Code (as amended, modified or replaced from time to time, the "Bankruptcy Code"), as containing adequate information; (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Modified Plan; (iii) approving the contents of proposed solicitation packages to be distributed to Creditors and other parties in interest in connection with the solicitation of votes on the Modified Plan (the "Solicitation Packages"); and (iv) scheduling a hearing on confirmation of the Modified Plan and approving related notice procedures; and

WHEREAS, XRoads Case Management Services, LLC ("XRoads"), transmitted the Solicitation Packages substantially in compliance with the Modified Solicitation Procedures

Order on behalf of the Plan Proponents of the Modified Plan, as attested to in the declarations of Michael Pascoe filed on November 13, 2009 [Docket Nos. 9942 and 9943] ("XRoads Declarations"); and

WHEREAS, on October 19, 2009, XRoads on behalf of the Liquidating Trustee served the Notice of (A) Deadline for Casting Votes to Accept or Reject Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009, (B) Hearing to Consider Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation and (C) Related Matters (the "Confirmation Hearing Notice") to be served substantially in accordance with the Solicitation Procedures Order, as attested to in the XRoads Declarations; and

WHEREAS, in accordance with the terms of the Modified Solicitation Procedures Order, Holders of Claims in Class HC3a, HC3b, HC7, HC13, OP3a, OP3b, OP3c, OP6a, OP6b, OP6c, OP9a, OP9b, OP12 and AL3 were not entitled to vote to accept or reject the Modified Plan and the vote of such Holders of Claims or the Vote of their Class with respect to the Original Plan are binding on such Holders of Claims with respect to the Modified Plan; and

WHEREAS, in accordance with the Edmonson Declaration, as hereinafter defined, each of the above Classes, except Class HC3b, voted to accept the Original Plan and are deemed to have accepted the Modified Plan in accordance with the Modified Solicitation Procedures Order; and

WHEREAS, under the Modified Plan, Class HC3b has been reconstituted to remove all Claims that are now Claims in Class HC14 and as a result of such reconstitution, Class HC3b has accepted the Modified Plan with (i) a total of $394,342,847.09 deemed voting to accept the Modified Plan and $31,809.50 deemed voting to reject the Modified Plan and (ii) 33 Claims out

of 36 Claims of the total reconstituted HC3b Class is deemed to have voted to accept the Modified Plan; and

WHEREAS, on November 13, 2009, the Plan Proponents of the Modified Plan filed the Declaration of Monika McCarthy Regarding Tabulation of Votes in Connection with the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009, [Docket No. 9944] (the "Tabulation Certification"), attesting to the tabulation of all ballots received by no later than 5:00 p.m. Pacific Time on November 10, 2009 (the "Voting Deadline") from Holders of Claims in (a) Class HC10a (Special Deficiency Claims Against NC Credit), Class HC10b (Other Unsecured Claims Against NC Credit), and Class HC14 (Settling Parties' Claims in settlement of the Schroeder Litigation) and attesting to the results of the tabulation as follows:

a. Class HC10a (Special Deficiency Claims Against NC Credit). Class HC10a (Special Deficiency Claims Against NC Credit) voted in favor of the Modified Plan. In claim amount, 100% of voting creditors in Class HC10a approved the Modified Plan. A total of $20,000,000.00 voted to accept the Modified Plan, and $0.00 voted to reject the Modified Plan. For numerosity, the rate of approval by creditors in Class HC10a was 100%. In Class HC10a, the only vote received voted in favor of the Modified Plan. No ballots were invalid.

b. Class HC10b (Other Unsecured Claims Against NC Credit). Class HC10b (Other Unsecured Claims Against NC Credit) voted in favor of the Modified Plan. In claim amount, [100%] of voting creditors in Class HC10b approved the Modified Plan. A total of $134,439,223.00 voted to accept the Modified Plan, and $0.00 voted to reject the Modified Plan. For numerosity, the rate of approval by

creditors in Class HC10b was 100%. In Class HC10b, 4 of the 4 votes received voted in favor of the Modified Plan. No ballots were invalid.

c.  Class HC14 (Settling Parties' Claims in Settlement of the Schroeder Litigation). Class HC14 (Settling Parties' Claims in Settlement of the Schroeder Litigation) voted in favor of the Modified Plan. In claim amount, 99.97% of voting creditors in Class HC14 approved the Modified Plan. A total of $31,248,059.76 voted to accept the Modified Plan, and $10,270.55 voted to reject the Modified Plan. For numerosity, the rate of approval by Creditors in Class HC14 was 99.7%. In Class HC14, 383 of 384 votes received voted in favor of the Modified Plan. In addition, 5 votes were received after the Voting Deadline but each such ballot voted to accept the Modified Plan. No ballots were invalid; and

WHEREAS, the (1) Objection of New York State Teachers' Retirement System to Modified Second Amended Joint Chapter 11 Plan of Liquidation [Docket No. 9939] and the (2) Motion of Molly S. White and Ralph N. White, as Homeowners and Equity Holders for Relief and Sanctions and the White's Objection to Debtor's Modified Second Amended Joint Chapter 11 Plan and Confirmation ("White Objection") [Docket No. 9937] were filed (collectively the "Objections"); and

WHEREAS, on November 18, 2009, the Plan Proponents of the Modified Plan filed the Declaration of Alan M. Jacobs in Support of Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009 [Docket No. **9952**] (the "Jacobs Declaration"); and

WHEREAS, on November 18, 2009, the Plan Proponents of the Modified Plan filed the Declaration of Samuel Star in Support of Confirmation of the Modified Second Amended Joint

Chapter 11 Plan of Liquidation Dated as of September 30, 2009 [Docket No. 9951] (the "Star Declaration"); and

WHEREAS, on November 18, 2009, the Plan Proponents of the Modified Plan filed the Brief of the Plan Proponents of the Modified Plan in Support of Confirmation of the modified Second Amended Joint Chapter 11 Plan of Liquidation Dated September 30, 2009 (the "Brief in Support of Confirmation"); and

WHEREAS, the Plan Proponents of the Modified Plan requested, pursuant to the Brief in Support of Confirmation that this Court take judicial notice of the docket in these chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all arguments made, proffered or adduced, at hearings held before the Court, particularly the record of the Original Confirmation Hearing and this Court's findings of fact included in its decision in In re New Century Holdings Inc., et. al., 30 B.R. 140 (Bankr. D. Del 2008) including but not limited to the following:

- First Interim Report of Michael J. Missal, Examiner [Docket No. 4503];

- Joint Motion of Debtors and Debtors in Possession and their Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Sections 105(a), 361, 362 and 363 of the Bankruptcy Code for Approval of Stipulation of Global Settlement Resolving Disputes with Adequate Protection Parties [Docket No. 5183];

- Order Granting Joint Motion of Debtors and Debtors in Possession and their Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Sections 105(a), 361, 362 and 363 of the Bankruptcy Code for Approval of Stipulation of Global Settlement Resolving Disputes with Adequate Protection Parties [Docket No. 5529];

- Declaration of Jamie L. Edmonson Regarding Tabulation of Votes in Connection with the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008, as Further Amended [Docket No. 6406] ("Edmonson Declaration");

- Declaration of Holly Felder Etlin in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6407];

- Reply Brief of Plan Proponents in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6395];

- Supplemental Reply of the Official Committee of Unsecured Creditors in Further Support of Confirmation of Joint Chapter 11 Plan of Liquidation [Docket No.6398];

- Transcript of Hearing Before Honorable Kevin J. Carey United States Bankruptcy Court Judge dated April 24, 2008 [Docket No. 6464];

- Transcript of Trial Before Honorable Kevin J. Carey United States Bankruptcy Court Judge dated April 25, 2008 [Docket No. 6460];

- Summary of the Evidentiary Record that Supports Confirmation of the Plan of Liquidation [Docket No. 6650];

- Opinion on Confirmation [Docket No. 8254];

- Omnibus Order Approving Interim and Final Fee Applications [Docket No. 9266];

- Motion of the Trustee Preserving the Status Quo, Including Maintenance of the Liquidating Trust and Reorganized New Century Warehouse and Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of Final Order Consistent with the District Court's Memorandum Opinion [Docket No. 9728];

- Order Granting Motion of the Trustee Preserving the Status Quo, Including Maintenance of the Liquidating Trust and Reorganized New Century Warehouse and Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Office and Director of the Debtors, Pending Entry of Final Order Consistent with the District Court's Memorandum Opinion [Docket No. 9750];

- Motion for an Order Approving Global Settlement Agreement Among Alan M. Jacobs as Trustee of the New Century Liquidating Trust and the Beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan [Docket No. 9874];

- Office of the United States Trustee – Region 3 Post-Confirmation Quarterly Summary [Docket No. 9925]; and

- Order Approving Global Settlement Agreement Among Alan M. Jacobs as Trustee of the New Century Liquidating Trust and the Beneficiaries of the New

Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan [Docket No. 9927]; and

WHEREAS, a hearing to consider confirmation of the Modified Plan was held on November 20, 2009 before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware (the "Modified Confirmation Hearing"); and

WHEREAS, the Court received evidence as set forth in the record and the documents submitted into the record through testimony or otherwise; and

NOW, THEREFORE, the Court having considered the Modified Plan, the Jacobs Declaration, the Star Declaration, the Tabulation Certification, the XRoads Declarations, the Objections, the record of the Modified Confirmation Hearing, the record of the Original Confirmation Hearing, this Court's decision in In re New Century Holding Inc., et al., 390 B.R. 140 (Bankr. D. Del 2008) and the entire record of these chapter 11 cases and after due deliberation thereon;

THE COURT HEREBY FINDS AND DETERMINES THAT:

A.      Judicial Notice.  The Court takes judicial notice of the docket in these chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all arguments made, proffered or adduced, at hearings held before the Court, including the record of the Original Confirmation Hearing and this Court's findings of fact set forth in In re New Century Holdings Inc., et. al., 390 B.R. 140 (Bankr. D. Del 2008).

B.      Transmittal of Solicitation Packages.  The Modified Disclosure Statement (together with all exhibits thereto, including the Modified Plan), the Confirmation Hearing Notice, the ballots, and other required materials, as set forth in the Modified Solicitation Procedures Order, were transmitted and served substantially in accordance with the Modified

Solicitation Procedures Order and the Federal Rules of Bankruptcy Procedure (as amended, modified or replaced from time to time, the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and such transmittal and service was adequate and sufficient.

C.     <u>Burden of Proof</u>. The Plan Proponents of the Modified Plan have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of evidence, which is the applicable evidentiary standard in the Court. The Court also finds that the Plan Proponents of the Modified Plan have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

D.     <u>Plan Compliance with Bankruptcy Code</u>. As required by section 1129(a)(1) of the Bankruptcy Code, the Modified Plan complies with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including but not limited to sections 1122, 1123, 1129, and 1145 of the Bankruptcy Code.

E.     <u>Satisfaction of Plan Confirmation Requirements (11 U.S.C. § 1129(a))</u>. The Modified Plan meets all of the applicable requirements of section 1129(a) of the Bankruptcy Code.

F.     <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. The Modified Plan does not "discriminate unfairly" and is fair and equitable with respect to each impaired Class of Claims or Interests that has not voted to accept the Modified Plan (Class HC4a, Class HC4b, Class HC4c, Class HC4d, and Class HC4e), thereby satisfying the requirements of section 1129(b) of the Bankruptcy Code. No Holder of a Claim or Interest that is junior to the Claims in Class HC4a, Class HC4b, Class HC4c, Class HC4d, or Class HC4e will

receive any property on account of its Claim or Interest under the Modified Plan. The Modified Plan satisfies the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code.

G. <u>Principal Purpose of the Modified Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Modified Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

H. <u>Conditions Precedent to the Effective Date</u>. Each of the conditions to the Modified Effective Date, as set forth in Article 14 of the Modified Plan, is reasonably likely to be satisfied.

I. <u>Retention of Jurisdiction</u>. The Court properly may retain jurisdiction over the matters set forth in Article 15 of the Modified Plan.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. <u>Confirmation</u>. The Modified Plan, a copy of which is annexed hereto as Exhibit A, as modified by this Order, is hereby confirmed pursuant to section 1129 of the Bankruptcy Code.

2. <u>Capitalized Terms</u>. Capitalized terms not otherwise defined herein have the meanings given to them in the Modified Plan.

3. <u>Modified Confirmation Order Controls</u>. If there is any direct conflict between the terms of the Modified Plan and the terms of this Order, the terms of this Order shall control.

4. <u>Objections</u>. All of the objections to confirmation of the Modified Plan and all reservations of rights included therein, to the extent not resolved, withdrawn or rendered moot, are overruled; <u>provided</u>, <u>however</u>, that the withdrawal of that portion of the NYSTRS

Objection relating to the pursuit of claims against the Debtors solely to the extent of available insurance proceeds is without prejudice to NYSTRS and the putative class (the "Securities Plaintiffs") in the shareholder securities fraud class action currently entitled In re New Century, Case No. 2:07-cv-00931-DDP (JTLx) and pending in the United States District Court for the Central District of California (the "Securities Litigation") (damages for which are asserted by the Securities Plaintiffs in proofs of claim number 2891, 2895, 2897, and 2901) to move for relief from the automatic stay in order to pursue their claims against the Debtors solely to the extent of available insurance coverage and proceeds in the Securities Litigation. All rights and arguments (legal or equitable) available to the Debtors and Liquidating Trust to object to and/or oppose such a motion by the Securities Plaintiffs for relief from the automatic stay are fully reserved.

5.     Binding Effect of the Modified Plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Modified Confirmation Date, the provisions of the Modified Plan bind as of the Original Effective Date any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Modified Plan, whether or not such Holder has accepted the Modified Plan and whether or not the Holder has filed a Claim. On and after the Modified Confirmation Date, the EPD/Breach Claim Protocol shall be binding on all Holders of Claims in Classes OP3b and/or OP6b irrespective of how such Holders are deemed to have voted on the Modified Plan pursuant to the Modified Solicitation Procedures Order and irrespective of whether such Holders submit the information requested by the Debtors pursuant to the questionnaire referenced in the EPD/Breach Claim Protocol. A vote in favor of the Original Plan by a Holder of Claims in Classes OP3b and/or OP6b constitutes a vote in favor of the Modified Plan and express consent to the EPD/Breach Claim Protocol. The rights,

benefits and obligations of any Person named or referred to in the Modified Plan, whose actions may be required to effectuate the terms of the Modified Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

5(a). <u>Binding Effect of Actions Taken by Liquidating Trust</u>. Prior to the Modified Effective Date, pursuant to the terms of the Original Plan, the Original Confirmation Order and the Status Quo Order, all actions taken by the Liquidating Trustee of the Liquidating Trust, Plan Administrator of Reorganized Access Lending and sole officer and director of all of the Debtors from and after the Original Effective Date through the Modified Effective Date shall be valid and binding on any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Modified Plan, whether or not such Holder has accepted the Modified Plan and whether or not the Holder has filed a Claim.

6. <u>Modified Plan Settlements Approved</u>. The settlements and compromises provided for in the Modified Plan, including without limitation:

(i) the Multi-Debtor Claim Protocol as defined in the Modified Plan;

(ii) the EPD/Breach Claim Protocol as defined in the Modified Plan;

(iii) the Intercompany Claim Protocol as defined in the Modified Plan;

(iv) the distribution of the Litigation Proceeds among the various creditor groups as provided in the Modified Plan;

(v) the establishment of the Joint Administrative Share as set forth in Exhibit C annexed to the Modified Plan; and

(vi)     the formation and composition of each of the Debtor Groups and the establishment and application of the Determined Distribution Amount methodology in Article 4 of the Modified Plan to calculate the distributions to creditors are hereby approved.

7.     <u>Modified Plan Classification Controlling</u>.  The classifications of Claims and Interests for purposes of the distributions to be made under the Modified Plan shall be governed solely by the terms of the Modified Plan and this Order.  The classifications set forth on the ballots tendered to the Debtors' Creditors in connection with voting on the Modified Plan or the Original Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject either the Modified Plan or the Original Plan, (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect, the actual classifications of such Claims under the Modified Plan or for distribution purposes and (c) shall not be binding on the Debtors, their Estates, the Liquidating Trustee, or the Plan Administrator.

8.     <u>Modified Plan Distribution Provisions Controlling</u>.  Matters relating to distributions to Holders of Claims against and Interests of the Debtors, including but not limited to the timing of distributions, necessary reserves, distribution calculations, payment in full of Unsecured Claims, manner of distribution, treatment of de minimis distributions, delivery of distributions, treatment of undeliverable distributions, setoffs and recoupments, interest on Claims, treatment of withholding taxes, and reports regarding distributions, shall be governed solely by the terms of the Modified Plan and this Order.

9.     <u>Injunction</u>.  Except as otherwise expressly provided in the Modified Plan or in this Order, and except in connection with the enforcement of the terms of the Modified Plan, this Order, or any documents provided for or contemplated in the Modified Plan or this

Order, on and after the Modified Effective Date effective as of the Original Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Modified Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, or right of subrogation of any kind against any obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of the Modified Plan. Any Person or entity injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in Article 13 of the Modified Plan or in this Order shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Modified Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under the Modified Plan. This Order also shall constitute an injunction enjoining any Person from

enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of the Modified Plan have been made or are not yet due under Article 4 of the Modified Plan; provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section 362(a) of the Bankruptcy Code. Except as provided in Article 13.C of the Modified Plan, nothing in the Modified Plan or this Order shall (i) release or discharge any claims held by the SEC against any non-debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-debtors. Further, except as provided in Article 13.C of the Modified Plan as modified by this Order, nothing in the Modified Plan or this Order shall (i) release or discharge any claims currently asserted by the Securities Plaintiffs in the Securities Litigation against any non-debtors or any claims the court in the Securities Litigation permits the Securities Plaintiffs to assert against any non-debtors (collectively, the "Third Party Securities Claims") or (ii) enjoin or restrain the Securities Plaintiffs from enforcing any such claims against any non-debtors.

10.  Term of Stay and Injunctions. Unless otherwise provided herein or in the Modified Plan, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, the Modified Plan, or otherwise, and extant on the Modified Confirmation Date, shall remain in full force and effect until the later of (x) the entry of the Final Decree or (y) the dissolution of the Liquidating Trust. In accordance therewith, and without limiting the foregoing, until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust, all Persons or entities (except as provided in section

362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date; provided, however, that notwithstanding any provisions of the Modified Plan or this Order, including but not limited to Article 13 of the Modified Plan, (i) when permitted to do so in the Securities Litigation, the Securities Plaintiffs may serve discovery requests on the Liquidating Trust, as custodian of NCFC's books and records, and may seek to take any action reasonably necessary to enforce such requests and compel discovery in the Securities Litigation, and (ii) the rights of the Liquidating Trustee to object on any and all bases to such discovery requests (other than on the basis that such discovery requests violate the automatic stay or any injunction) in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any other applicable rules, laws, or legal authority and the rights to assert any and all applicable privileges (and other related rights) are fully reserved.

11.    Relief from Stay. Notwithstanding any provision of the Modified Plan or this Order, (i) all orders of the Court entered during the Chapter 11 Cases, including, without limitation, the *Order Providing that the Automatic Stay Under Section 362(a) of the Bankruptcy Code Is Terminated to Permit the Commencement or Continuation of any Action to Foreclose*

*Upon or Extinguish an Interest Listed in the Name of a Debtor* dated as of July 14, 2008 (the "Stay Termination Order"), that provide for relief from the automatic stay imposed by section 362 of the Bankruptcy Code shall remain in full force and effect following the Modified Effective Date, (ii) to the extent that the Liquidating Trust or any third parties file motions prior to the Modified Effective Date seeking relief from the automatic stay imposed by section 362 of the Bankruptcy Code, any order of the Court granting such relief, including, without limitation, the Stay Termination Order, shall supersede this Order, and (iii) following the Modified Effective Date, parties may seek relief from all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, including this Order, upon sufficient notice and a hearing.

12. <u>Exculpation</u>. On and after the Original Effective Date but subject to the occurrence of the Modified Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases or (b) for any act or omission that occurred during the Chapter 11 Cases or in connection with the formulation, negotiation, and/or pursuit of confirmation of the Original Plan or the Modified Plan, the consummation of the Original Plan or the Modified Plan, and/or the administration of the Original Plan or the Modified Plan, and/or the property distributed under the Original Plan or to be distributed under the Modified Plan, except, in any case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Original Plan or the

Modified Plan to the extent permitted by applicable law; provided, however, that, solely with respect to the Securities Litigation, the Exculpated Parties are not released from any claim, cause of action or liability to the Securities Plaintiffs arising or accruing prior to March 14, 2008. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of the Original Plan, Modified Plan, Original Disclosure Statement or the Modified Disclosure Statement shall be deemed to act as a release of or to release any claims, Causes of Action or liabilities that (i) the Liquidating Trust, Reorganized Access Lending, the Estates, or the SEC, may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities pertaining to the timing of the commencement of the Chapter 11 Cases or (ii) solely with respect to the Securities Litigation, the Securities Plaintiffs may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities arising or accruing after March 14, 2007 and pertaining to the timing of the commencement of the Chapter 11 Cases; nor shall any provision of the Original Plan, Modified Plan or this Order be deemed to act as a release of or to release any Avoidance Actions.

13. Release of Goldman. On the Modified Effective Date, any and all claims, Causes of Action, rights or remedies of any kind or nature that the Debtors or the Estates have, may have or could have asserted against Goldman, its affiliates or its former or present officers, directors, employees, attorneys, financial advisors or other professionals, which claims, causes of

action, rights or remedies arise out of or relate to Access Lending shall be waived, set aside, discharged, settled, compromised, and released.

14.     IRS.  Notwithstanding Article 13.A of the Modified Plan and Paragraph 9 of this Order, the rights of the IRS with respect to the matters set forth therein shall be governed by this Paragraph 14.

a.     Right To Setoff.  The IRS may exercise its right to setoff unpaid Allowed Claims against refunds of taxes due and payable from the IRS to the Debtors, including the income tax refund claimed by the Debtors for the 2004 taxable year (the "Tax Refund").

b.     Proofs of Claim.  The IRS has filed (i) proof of claim number 4102 dated June 30, 2009 against TRS Holdings asserting a priority tax claim in the amount of $18,458,280.00 and a general unsecured claim in the amount of $27,272.64 (the "TRS Holdings Claim"), (ii) proof of claim number 3743 dated November 20, 2007 against NCMC asserting a priority tax claim in the amount of $363,529.97 and a general unsecured claim in the amount of $342,678.24 (the "NCMC Claim"), (iii) proof of claim number 4078 dated October 20, 2008 against Home123 asserting an administrative priority claim in the amount of $14,141.50 (the "Home123 Priority Claim"), (iv) proof of claim number 3388 dated September 26, 2007 against Home123 asserting a general unsecured claim in the amount of $5,234.88 (the "Home123 General Unsecured Claim") and (v) proof of claim number 540 dated May 23, 2007 against New Century Credit Corporation asserting a general unsecured claim in the amount of $6,827.04 (the "NC Credit

Claim"). The Debtors dispute that any amounts are owing to the IRS, have or will object to the proofs of claim filed by the IRS and assert that they are owed a refund of taxes by the IRS.

c. No Reserve for TRS Holdings Claim. The IRS agrees, and it is hereby ordered, that in light of the Tax Refund claim of the Debtors and the IRS' right of offset provided in this Order, no reserve shall be required with respect to the TRS Holdings Claim, and the Liquidating Trustee may make distributions to Allowed Priority Claims and Allowed Unsecured Claims without being required to reserve any amounts, in the A/P/S Claims Reserve or otherwise, for the IRS in respect of the TRS Holdings Claim.

d. Reserve for NCMC Claim and Home123 Priority Claim. Pursuant to Article 9.B.2. of the Modified Plan the Debtors shall reserve in the A/P/S Reserve $363,529.97 on account of the asserted priority portion of the NCMC Claim and $14,141.50 on account of the asserted administrative priority position of the Home123 Priority Claim until the amount of the Tax Refund is determined or such claims are resolved. To the extent such portions of the NCMC Claim and the Home123 Priority Claim become Allowed Claims and the Tax Refund is determined to exceed the allowed priority amount of the TRS Holdings Claim, the Liquidating Trustee may offset the allowed priority amount of the NCMC Claim and the allowed administrative priority amounts of the Home123 Priority Claim against the Tax Refund and may reduce the A/P/S Reserve by the amounts of such offset.

e.    Notice to Increase Reserve.  The Internal Revenue Service's Notice to Increase the Reserve filed with this Court by the IRS on August 19, 2008 [Docket No. 8765] shall be deemed withdrawn by the IRS and shall be null and void, have no legal effect, and is not binding on the Debtors, the IRS, or any other party.

15.    Texas Comptroller and California Franchise Tax Board.  Notwithstanding anything in the Modified Plan to the contrary, the setoff rights of the Texas Comptroller of Public Accounts and the California Franchise Tax Board are not impaired or altered in any way by the Modified Plan or this Order.

16.    Corporate Action.  As of the Original Effective Date but subject to the occurrence of the Modified Effective Date, the matters under the Modified Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to the Modified Plan, shall be deemed to have been authorized by this Order and to have occurred and be in effect from and after the Original Effective Date without any further action by the Court or the officers or directors of the Debtors or their subsidiaries.  Without limiting the foregoing, the Board of Directors of NCFC, in accordance with the terms of the Original Plan, were authorized and directed to adopt resolutions providing that (i) the dissolution of NCFC is approved and (ii) the Liquidating Trustee is authorized and empowered to prepare or cause to be prepared, and to execute and file on behalf of NCFC Articles of Dissolution with the Maryland State Department of Assessments and Taxation.  Such actions of the Board of Directors of NCFC are adopted by this Order and the Modified Plan.  The officers and directors of the Debtors ceased to serve immediately after the Original Effective

Date. From and after the Original Effective Date, pursuant to the terms of the Original Plan, the Liquidating Trustee became the sole officer and director of each of the Debtors. Any and all corporate actions taken by the Liquidating Trustee since the Original Effective Date either in implementing the Original Plan or proposing this Modified Plan are authorized and approved by this Order.

17. <u>Dissolution of Debtors Other than Access Lending</u>. Immediately after the Modified Effective Date, the Liquidating Trustee shall be authorized to take, in his sole and absolute discretion pursuant to the Liquidating Trust Agreement, all actions reasonably necessary to dissolve the Debtors (other than Access Lending) and their subsidiaries under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; <u>provided, however,</u> (i) after all distributions have been made to Holders of Allowed Claims against NCFC, the Liquidating Trustee shall file a certificate of dissolution in the applicable state of incorporation for NCFC and NCFC shall dissolve and cease to exist; (ii) that the Liquidating Trustee shall not be compelled to dissolve any of the Debtors (other than NCFC) or their subsidiaries if to do so would unduly burden the Liquidating Trust; and (iii) no assets shall revest in the Debtors (other than Access Lending). Other than with respect to NCFC, which shall be dissolved as set forth in Article 8.C of the Modified Plan, the Liquidating Trustee shall have no liability for using his discretion to dissolve or not dissolve any of the Debtors or their subsidiaries. Whether or not dissolved, immediately after the Original Effective Date, the Debtors shall have no authorization to implement the provisions of the Original Plan or this

Modified Plan, except through the Liquidating Trustee as sole officer and director of each of the Debtors, unless specifically provided for in the Modified Plan.

18. <u>Dissolution of Committee</u>. Subject to the terms of Article 8.D of the Original Plan, on the Original Effective Date, the Committee was automatically dissolved, whereupon its members, Professionals, and agents were released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code or in connection with the Original Plan and its implementation. Such dissolution and release of the Committee is ratified and reaffirmed by this Order.

19. <u>Formation of Liquidating Trust</u>. On or prior to the Original Effective Date, the Liquidating Trust was formed. The Holders of Holding Company Debtor Unsecured Claims, Holders of NC Credit Unsecured Claims and the Holders of Operating Debtor Unsecured Claims shall be the sole beneficiaries of the Liquidating Trust. Holders of Unsecured Claims against Access Lending shall not be beneficiaries of the Liquidating Trust. Allowed A/P/S Claims (other than against Access Lending) shall be paid out of the Liquidating Trust Assets but Holders of such Allowed A/P/S Claims shall not be beneficiaries of the Liquidating Trust. The formation of the Liquidating Trust as of the Original Effective Date is hereby adopted, ratified and confirmed by this Order and the Modified Plan.

20. <u>Liquidating Trust Agreement</u>. The Liquidating Trust Agreement, as amended [Docket No. 6414] was approved in the Original Confirmation Order and became effective as of the Original Effective Date. Such approval and effectiveness is hereby adopted, ratified and confirmed by this Order and the Modified Plan. In the event a provision of the Modified Plan or this Order conflicts with a provision of the Liquidating Trust Agreement, the provision of the Liquidation Trust Agreement shall control.

21.     Transfer of Assets.  On the Original Effective Date, the Liquidating Trust Assets, as described in Article 8.E.1 of the Original Plan, were conveyed directly by the Debtors other than Access Lending to the Liquidating Trust on behalf of the beneficiaries thereof.  As of the Original Effective Date, the transfer of the Liquidating Trust Assets to the Liquidating Trust on behalf of all of the beneficiaries is hereby adopted, ratified and confirmed by this Order and the Modified Plan.

22.     Appointment of the Liquidating Trustee.  Alan M. Jacobs ("Mr. Jacobs") was appointed Liquidating Trustee as of the Original Effective Date.  Mr. Jacobs commenced serving as the Liquidating Trustee on the Original Effective Date and continues to serve in such capacity pursuant to that Order Granting Motion of the Trustee Preserving the Status Quo, Including Maintenance of the Liquidating Trust and Reorganized New Century Warehouse and Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of Final Order Consistent with The District Court's Memorandum Opinion dated July 27, 2009 ("Status Quo Order"); provided, however, that Mr. Jacobs, as Liquidating Trustee, was permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Original Confirmation Date (or such earlier date as authorized by the Committee) through the Modified Effective Date and shall be entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and the Modified Plan during such period pursuant to the terms of the Status Quo Order and this Order.  Mr. Jacobs' appointment as Liquidating Trustee as of the Original Effective Date is hereby adopted, ratified and confirmed by this Order and the Modified Plan.

23.     Liquidating Trustee Deemed Estate Representative.  The Liquidating Trustee has been deemed, pursuant to various orders of this Court, and shall continue to be

deemed the Estates' representative effective as of the Original Effective Date (except with respect to Reorganized Access Lending) in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Modified Plan and the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

24. <u>Liquidating Trustee as Sole Officer and Director of Debtors</u>. The Liquidating Trustee was appointed as the sole officer and director of each of the Debtors (other than Access Lending) as of the Original Effective Date; such appointment is hereby adopted, ratified and confirmed by this Order and the Modified Plan. To the extent necessary or appropriate to effect such appointment, the Liquidating Trustee is hereby authorized to amend the corporate governance documents of each of the Debtors (other than Access Lending).

25. <u>Actions Against the Liquidating Trustee</u>. Without the permission of the Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Court.

26. <u>Bond</u>. The Liquidating Trustee shall at all times maintain a bond acceptable to the Plan Advisory Committee and the United States Trustee, or as approved by the Court.

27.   Term and Compensation of the Liquidating Trustee.  The Liquidating Trustee shall initially be compensated as set forth in the Liquidating Trust Agreement (which compensation may be revised by the Liquidating Trust with the consent of the Plan Advisory Committee) and shall not be required to file a fee application to receive compensation.  The Liquidating Trustee's compensation shall, however, be subject to the review and, if appropriate, objection of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.

28.   Removal, Replacement or Conflict of Trustee.  The Liquidating Trustee may be removed or replaced at any time by the Plan Advisory Committee in accordance with the procedures in the Liquidating Trust Agreement.  In the event of the death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Liquidating Trustee, the Plan Advisory Committee shall have the authority to appoint a successor trustee as set forth in the Liquidating Trust Agreement.  In addition, if a conflict arises with the Liquidating Trustee for any reason, the Plan Advisory Committee shall be authorized to appoint a conflict trustee for the Liquidating Trust to deal solely with those conflict issues, without further order of the Court.  Such conflict trustee shall be retained on terms no more favorable than provided for the Liquidating Trustee in the Liquidating Trust Agreement and the conflict trustee shall be subject to the same Plan Advisory Committee oversight and the same rights and obligations of the Liquidating Trustee as set forth in the Liquidating Trust Agreement and this Order solely with respect to the specific matters for which it was retained to act as conflicts trustee.

29.   Responsibilities of the Liquidating Trustee.  The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Modified Plan and the Liquidating

Trust Agreement (including, but not limited to, those rights and duties set forth in Article 8.F.5(c) of the Modified Plan). The Liquidating Trustee shall be subject to the directions of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement. Notwithstanding anything to the contrary contained in the Modified Plan or this Order, acts by the Liquidating Trustee, including discretionary acts, will require the consent of or consultation with the Plan Advisory Committee as more specifically set forth in the Liquidating Trust Agreement. If there is any inconsistency or ambiguity in the Modified Plan, this Order or the Liquidating Trust Agreement in respect of the Plan Advisory Committee's role in the Liquidating Trustee's authority to act, the provision of the Liquidating Trust Agreement shall control.

30.     <u>Liquidation of Trust Assets</u>. The Liquidating Trustee, in its reasonable business judgment, and in an expeditious but orderly manner, shall liquidate and convert to cash the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Liquidating Trust Assets may be accomplished either through the sale of Liquidating Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

31.     <u>Termination</u>. The duties and powers of the Liquidating Trustee shall terminate upon the termination of the Liquidating Trust.

32.     <u>Document Retention</u>. From and after the Original Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to the Liquidating Trust by the Debtors as set forth in the Original Plan and the Liquidating Trust Agreement, and the Liquidating Trustee shall not destroy or otherwise

abandon any such Records absent further order of the Court after a hearing upon notice to parties in interest with an opportunity to be heard. The Records the Debtors transferred to the Liquidating Trust on the Original Effective Date were to include, but not be limited to, all such documents and electronic data (i) identified for retention in connection with the investigation by the Audit Committee of NCFC's Board of Directors and (ii) produced to the SEC, the United States Attorney's Office, or the Examiner.

33.    Valuation of Assets.  As soon as practicable after the Original Effective Date the Liquidating Trustee made a good faith determination of the fair market value of the Liquidating Trust Assets.  This valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) for all federal and state income tax purposes.

34.    Payments by the Liquidating Trust.  The Liquidating Trust shall make distributions to Holders of Allowed Claims in accordance with Article 9 of the Modified Plan and this Order.  Any payments made by the Liquidating Trustee pursuant to Article 9 of the Original Plan shall be deemed adopted, ratified and confirmed by this Order and the Modified Plan.

35.    Termination of Liquidating Trust.  The Liquidating Trust shall terminate after its liquidation, administration and distribution of the Liquidating Trust Assets in accordance with the Modified Plan and its full performance of all other duties and functions set forth herein or in its Liquidating Trust Agreement.  The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Original Effective Date; provided, however, that, within a period of six (6) months prior to such termination date, the Court, upon motion by a party in interest, may

extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust Assets administered by the Liquidating Trust. Notwithstanding the foregoing, multiple extensions can be obtained so long as Court approval is obtained within six (6) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

36.     Creation of the Plan Advisory Committee.     On the Original Effective Date, the Plan Advisory Committee was appointed and adopted bylaws to govern the actions of the Plan Advisory Committee.   On the Modified Effective Date, the appointment of the Plan Advisory Committee under the Original Plan is ratified and affirmed pursuant to the Modified Plan and this Order as of the Original Effective Date.   The Plan Advisory Committee shall consist of the following five members of the Committee:  Credit Suisse First Boston Mortgage Capital LLC; Deutsche Bank National Trust Co.; Fidelity National Information Services, Inc.; Kodiak Funding, L.P ; and Residential Funding Company, LLC.   In the event of the resignation of a member of the Plan Advisory Committee, the remaining members shall use reasonable efforts to designate a successor from among the Holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation. Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership.

37.     Rights and Duties of the Plan Advisory Committee.   The fiduciary duties, as well as the privileges, immunities, and protections that applied to the Committee prior to the

Original Effective Date shall apply to the Plan Advisory Committee for all actions taken from and after the Original Effective Date. The Plan Advisory Committee's role shall be to advise and approve the actions of the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement. The Plan Advisory Committee shall have the rights and powers set forth in the Liquidating Trust Agreement (including those rights and duties set forth in Article 8.G.4 of the Modified Plan). The duties and powers of the Plan Advisory Committee shall terminate upon the termination of the Liquidating Trust.

38. <u>No Compensation of Members of the Plan Advisory Committee</u>. Except for the reimbursement of reasonable costs and expenses incurred in connection with their duties as members of the Plan Advisory Committee, including reasonable attorneys' fees subject to a cap to be established by the Plan Advisory Committee in its discretion, the members of the Plan Advisory Committee shall serve without compensation. Reasonable costs and expenses, as set forth in Article 8.G.5 of the Modified Plan, incurred by members of the Plan Advisory Committee shall be paid by the Liquidating Trust without need for approval of the Court.

39. <u>Plan Advisory Committee Objection to Fees</u>. The Plan Advisory Committee shall have ten (10) days, or such other period as determined by the Plan Advisory Committee and the Liquidating Trustee, from the delivery of a fee statement to object to the fees of any professional retained by either the Liquidating Trust or the Plan Advisory Committee by giving notice of any such objection to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Court for resolution. The uncontested portion of each invoice

shall be paid within thirty (30) days after its delivery to the Plan Advisory Committee and the Liquidating Trustee.

40. <u>Liability, Indemnification of Liquidating Trustee and Plan Advisory Committee</u>. As of the Original Effective Date, subject to the occurrence of the Modified Effective Date, neither the Liquidating Trustee (including in its capacity as Plan Administrator), the Plan Advisory Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee, the Plan Advisory Committee or their respective members, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee or Plan Advisory Committee, nor shall such Liquidating Trustee (including in its capacity as Plan Administrator), or any member of the Plan Advisory Committee or their respective designees, agents or representatives, be liable for any act or omission taken or omitted to be taken in its capacity as Liquidating Trustee or Plan Administrator, or as a member of the Plan Advisory Committee, respectively, other than for specific acts or omissions resulting from such Liquidating Trustee's or such member's willful misconduct, gross negligence or fraud. The Liquidating Trustee (including in its capacity as Plan Administrator), or the Plan Advisory Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidating Trustee (including in its capacity as Plan Administrator) or the Plan Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not

to do so shall not result in the imposition of liability on the Liquidating Trustee (including in its capacity as Plan Administrator) or Plan Advisory Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and Plan Advisory Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust, the Original Plan or the Modified Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud.

41.    Liquidating Trust Professionals. The Liquidating Trustee may retain professionals, including but not limited to, counsel, accountants, investment advisors, auditors, professionals from the Liquidating Trustee's own firm, and other agents on behalf of the Liquidating Trust as necessary or desirable to carry out the obligations of the Liquidating Trustee hereunder and under the Liquidating Trust Agreement. More specifically, the Liquidating Trustee may retain counsel in any matter related to its administration, including counsel that has acted as counsel for the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases. Prior to the Original Effective Date, the Committee approved a budget for the first six (6) month period beginning on the Original Effective Date, on

32

a professional-by-professional basis, for professional fees for services to be rendered to the Liquidating Trust, which budget has and may continue to be altered from time to time by the Plan Advisory Committee in accordance with the Liquidating Trust Agreement provided that any fees and expenses of professionals retained by the Liquidating Trust that have been incurred prior to the date of the modification of the budget shall constitute budgeted amounts. Except with respect to services rendered and expenses incurred in connection with Fee Applications pending on the Original Effective Date or filed after the Original Effective Date, the Professionals retained by the Debtors or the Committee shall only be entitled to compensation for services performed and expenses incurred after the Original Effective Date to the extent, if any, of the amount budgeted for each respective Professional. Following the Original Effective Date, the Liquidating Trustee may pay, without application to the Court or any other court of competent jurisdiction, such professionals retained by the Liquidating Trust in accordance with agreements that the Liquidating Trustee determines to be reasonable. All payments made by the Liquidating Trustee since the Original Effective Date in accordance with the procedures set forth herein shall be deemed authorized and paid in accordance with the terms of this Order. The Plan Advisory Committee shall approve in advance the Liquidating Trustee's retention of professionals and their compensation arrangements.

42.    Plan Advisory Committee Professionals. The Plan Advisory Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Liquidating Trustee or for other purposes set forth in the Liquidating Trust Agreement and the reasonable fees and expenses of such counsel shall be paid by the Liquidating Trust.

43.    Transfer of Access Lending Stock. On the Original Effective Date, pursuant to Article 8.E of the Original Plan, TRS Holdings distributed the stock of Access

Lending to the Liquidating Trust, which became the sole shareholder of Reorganized Access Lending. Such transfer shall be ratified, adopted and confirmed as of the Modified Effective Date pursuant to the Modified Plan and this Order.

44.    The Plan Administrator.    The Liquidating Trustee shall act as Plan Administrator with respect to Reorganized Access Lending. From and after the Original Effective Date, Mr. Jacobs was appointed to serve as Plan Administrator in accordance with the terms of the Original Plan and the terms of that certain Plan Administrator Agreement, a copy of which was attached to the Notice of Filing of Plan Administrator Agreement [Docket No. 6413]. Such appointment was maintained pursuant to the Status Quo Order and shall be ratified, adopted and confirmed as of the Modified Effective Date by this Order. The initial Plan Administrator, and each successor Plan Administrator, shall serve until the earlier of (i) the dissolution of Reorganized Access Lending or (ii) such Plan Administrator's resignation, death, incapacity, removal or termination. As of the Original Effective Date, the articles of incorporation of Access Lending were amended to provide that the Plan Administrator shall be the chief executive officer and sole director of Reorganized Access Lending. Such amendment shall be ratified and reaffirmed as of the Modified Effective Date by this Order. In such capacity, the Plan Administrator shall have all necessary and appropriate power to act for, on behalf of and in the name of Reorganized Access Lending, with the same power and effect as if each of his or her actions in furtherance of his or her duties as a responsible person and as a board-appointed officer and shareholder-appointed director of Reorganized Access Lending were explicitly authorized by the appropriate board of directors or shareholders. In its capacity as Plan Administrator, the Liquidating Trustee shall take such actions as are in the best interests of Reorganized Access Lending.

45.     <u>Payment of Allowed A/P/S Claims Against Access Lending</u>.  Subject to Article 10.F.4 of the Modified Plan, the Plan Administrator shall pay all Allowed A/P/S Claims against Access Lending as soon as practicable after the later of (a) the Modified Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

46.     <u>Reimbursement of Debtors and Liquidating Trust</u>.  Subject to Article 10.F.4 of the Modified Plan, on the Modified Effective Date or as soon as practicable thereafter and following the establishment of the Access Lending Administrative Fund and the Access Lending A/P/S Reserve, the Plan Administrator shall pay from the Assets of Reorganized Access Lending to the Liquidating Trust (i) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by the Debtors other than Access Lending on or before the Modified Effective Date or by the Liquidating Trustee after the Modified Effective Date; (ii) the amount of administering the Estate of Access Lending, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Modified Effective Date and paid by the Debtors other than Access Lending or the Liquidating Trustee on or before the Modified Effective Date in the ordinary course; and (iii) the Joint Administrative Expense Share of Access Lending paid by the Debtors other than Access Lending on or before the Modified Effective Date or by the Liquidating Trustee after the Modified Effective Date.

47.     <u>Resolution of Claims and Prosecution of Access Lending Causes of Action</u>.  The Plan Administrator shall resolve all Disputed Claims against Access Lending as soon as practicable following the Modified Effective Date; provided, however, that all Creditors of Access Lending shall have the right to object to any Claims against Access Lending other than the Goldman AL3 Claim and the NCMC AL3 Claim and, provided, further, that prior to entering into any settlement agreement providing for the allowance of a Claim against Access Lending,

the Plan Administrator shall either (i) provide notice of the proposed settlement terms to Goldman, and Goldman shall have fifteen (15) days to object to the subject Claim, with Goldman's failure to object to such Claim within such time period deemed Goldman's consent to the proposed settlement or (ii) obtain Court approval of the proposed settlement agreement on no less than 20 days notice to the Creditors of Access Lending and subject to the rights and standing of Creditors of Access Lending to object to the allowance of such Claim, including based on all grounds and defenses available to Access Lending. The Plan Administrator shall have the exclusive right to prosecute all Access Lending Causes of Action.

48.     Dissolution of Reorganized Access Lending. After all distributions have been made to Holders of Allowed Claims against Access Lending, the Plan Administrator shall file a certificate of dissolution in the applicable state of incorporation for Reorganized Access Lending, and Reorganized Access Lending shall dissolve and cease to exist. Any remaining Assets of Reorganized Access Lending shall be distributed to the Liquidating Trust as sole shareholder in a liquidating distribution, and shall become Liquidating Trust Assets that may be distributed pursuant to the terms of the Modified Plan.

49.     Preservation of All Causes of Action. Except as otherwise provided in the Modified Plan or in any contract, instrument, release or agreement entered into in connection with the Modified Plan, in accordance with the provisions of the Bankruptcy Code, including but not limited to, section 1123(b) of the Bankruptcy Code, the Liquidating Trustee (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator) shall be vested with, retain, and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors or the Estates may have against any Person or entity effective as of the Original Effective Date. The Liquidating Trustee may pursue such retained claims (other than those of

Access Lending) or Causes of Action (other than Access Lending Causes of Action) in accordance with the best interests of the creditors of the Debtors (other than Access Lending), the Estates (other than the Estate of Access Lending), or the Liquidating Trust in any and all appropriate jurisdictions as the Liquidating Trustee shall deem advisable. The Plan Administrator may pursue such retained claims of Access Lending or Access Lending Causes of Action in accordance with the best interests of the creditors of Access Lending, the Estate of Access Lending, or Reorganized Access Lending in any and all appropriate jurisdictions as the Plan Administrator shall deem advisable.

50. <u>Successors</u>. The Liquidating Trust shall be the successor to the Debtors (other than Access Lending) and their Estates for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other litigation-related matters. The Liquidating Trust shall succeed to the attorney-client privilege of the Debtors (other than Access Lending) and their Estates with respect to all Causes of Action (other than Access Lending Causes of Action) and other litigation-related matters, and the Liquidating Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion. Reorganized Access Lending shall be the successor to Access Lending and its Estate for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Access Lending Causes of Action and other litigation-related matters. Reorganized Access Lending shall succeed to the attorney-client privilege of Access Lending and its Estate with respect to all Access Lending Causes of Action and other litigation-related matters, and the Liquidating Trustee, it its capacity as Plan Administrator, may waive the attorney-client privilege with

respect to any Access Lending Causes of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion.

51.     Cancellation of Instruments and Agreements. As of the Original Effective Date subject to the occurrence of the Modified Effective Date, except as with respect to the stock of Access Lending, all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof were, with respect to the Debtors, canceled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights against the Debtors, the Estates, or the Liquidating Trust, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Modified Plan. Additionally, the Capital Trust Indentures, and all related notes and documents, including without limitation, the two series of Junior Subordinated Notes due 2036, the Amended and Restated Trust Agreement, dated as of September 13, 2006, and the Amended and Restated Trust Agreement, dated as of November 16, 2006, and the two series of trust preferred securities and trust common securities, respectively, were deemed automatically canceled and discharged on the Original Effective Date subject to the occurrence of the Modified Effective Date, provided, however, that the Capital Trust Indentures, and related notes and documents shall continue in effect solely for the purposes of (i) allowing the Holders of Capital Trust Claims to receive their distributions, if any, hereunder, including the right to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim under Article 4.C.3 of the Modified Plan, (ii) allowing the Indenture Trustee to make distributions on account of the Capital Trust Claims, (iii) permitting the Indenture Trustee to asserts its charging lien against such distributions for payment of the Indenture Trustee Expenses, and (iv) authorizing, but not requiring, the Indenture Trustee to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b

Claim under Article 4.C.3 of the Modified Plan. The Capital Trust Indentures and related notes and documents shall terminate completely upon completion of all such distributions. The Liquidating Trust shall not be responsible for any of the fees, expenses or costs incurred in connection with the continuation or termination of the Capital Trust Indentures, except as set forth in Article 4.C.3 of the Modified Plan.

52. <u>Professional and Non-Professional Fee Administrative Claims</u>. The deadlines and procedures established for parties seeking payment of Professional Fee Claims and Administrative Claims (other than Professional Fee Claims) in the Original Confirmation Order and Original Plan shall continue to be binding and enforceable upon and against all such parties in accordance with this Order.

53. <u>Senior Claim Procedure</u>. The procedure by which a Holder of a Class HC3b Claim may assert that it holds a Senior Class HC3b Claim is governed solely by the terms of the Original Plan as adopted by the Modified Plan including but not limited to Article 4.C.3 of the Modified Plan. In order for any Holder of a Class HC3b Claim to assert that it holds a Senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures, such Holder was required to file with the Court and serve on the Debtors, the Holders of the Capital Trust Claims, the Liquidating Trustee, and the Indenture Trustee a Subordination Statement no later than August 31, 2008. If any Holder of a Class HC3b Claim filed a Subordination Statement, any distributions that would otherwise be made on account of Allowed Capital Trust Claims in accordance with Article 9 of the Modified Plan shall be turned over to a reserve to be held by the Liquidating Trustee (the "Senior/Sub Reserve") in a separate interest bearing account and to be distributed in accordance with Article 4.C.3 of the Modified Plan. Any settlement related to the filing of Subordination Statements on or after the

Original Effective Date but prior to the occurrence of the Modified Effective Date shall not be effected by the confirmation of the Modified Plan or the entry of this Order.

54.     Payment of Indenture Trustee Fees. Prior to turning over any distributions to the Senior/Sub Reserve, the Liquidating Trustee shall first pay to the Indenture Trustee out of such distributions (i) the balance of any Indenture Trustee Expenses previously incurred, plus (ii) the amount of $100,000 to be held by the Indenture Trustee in reserve (the "Future Expense Reserve") for payment of future Indenture Trustee Expenses, all of which Indenture Trustee Expenses are subject to the Indenture Trustee's charging lien. The Future Expense Reserve shall only be funded from any distributions that would otherwise be made on account of Allowed Capital Trust Claims and not from any other Assets. In the event the amount of future Indenture Trustee Expenses exceeds $100,000 and the Future Expense Reserve is depleted, the Liquidating Trustee shall pay out of the Senior/Sub Reserve to the Indenture Trustee any such additional Indenture Trustee Expenses that may be incurred from time to time, upon receipt of one or more invoices from the Indenture Trustee. In no event shall the Indenture Trustee Expenses be paid from any Assets except from the Senior/Sub Reserve, the Future Expense Reserve and from any distributions that would otherwise be made on account of Allowed Capital Trust Claims.

55.     Reservation of Rights to Object to Claims. Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Modified Plan or this Order, or otherwise becomes an Allowed Claim prior to the Modified Effective Date, upon the Modified Effective Date, the Liquidating Trustee shall be deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative

Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, 510(b) Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. Within the time provided herein or by further order of the Court for objecting to Claims, the Debtors' or the Liquidating Trustee's failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Court when and if such Claim is sought to be enforced by the Holder of such Claim.

56.    <u>Objections to Claims</u>. Prior to the Original Effective Date, the Debtors were responsible for pursuing any objection to the allowance of any Claim. From and after the Original Effective Date, the Liquidating Trustee has and will continue to retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that are subject to objection by the Debtors as of the Original Effective Date), subject to any approvals of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement; <u>provided, however,</u> that Creditors of Access Lending will have standing to object to Claims against Access Lending other than those Claims against Access Lending allowed by this Order or other order of the Court. Unless otherwise provided in the Modified Plan or by further order of the Court, any objections to Claims shall be filed and served no later than January 31, 2010 or 180 days after the date such Claim is filed, provided that the Liquidating Trustee may request, based upon a reasonable exercise of the Liquidating Trustee's business judgment, (and the Court may grant) an extension of such deadline by filing a motion with the Court. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Modified Plan.

57.     Service of Objections.  An objection to a Claim shall be deemed properly

served on the Holder of such Claim if the Liquidating Trustee effects service by any of the

following methods:  (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as

modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such

Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim

or Interest or other representative identified on the Proof of Claim or Interest or any attachment

thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared or requests

notice on the behalf of such Holder in the Chapter 11 Cases.

58.     Determination of Claims.  Except as otherwise agreed by the Debtors or

the Liquidating Trustee (including in its capacity as Plan Administrator), any Claim as to which a

Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may

be determined and (so long as such determination has not been stayed, reversed or amended and

as to which determination (or any revision, modification or amendment thereof) the time to

appeal or seek review or rehearing has expired and as to which no appeal or petition for review

or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the

Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-

bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably

subordinate such Claim and (c) an application to otherwise limit recovery with respect to such

Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for

filing such objection or application with respect to such Claim.  Any such Claim so determined

and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be

satisfied in accordance with the Modified Plan.  Other than the allowance of the Goldman HC3b

Claim, the Goldman AL3 Claim, and the NCMC AL3 Claim, nothing contained in Article 11 of

the Modified Plan shall constitute or be deemed a waiver of any claim, right, or Causes of Action that the Debtors, the Liquidating Trust, or Reorganized Access Lending may have against any Person in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157.

59. <u>No Distributions Pending Allowance</u>. No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee may make, in his or her discretion, a distribution pursuant to the Modified Plan on account of the portion of such Claim that becomes an Allowed Claim.

60. <u>Claim Estimation</u>. In order to effectuate distributions pursuant to the Modified Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Debtors (if on or prior to the Original Effective Date) and the Liquidating Trust (if after the Original Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), had or shall have the right to seek an order of the Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of property that must be withheld from distribution on account of Disputed Claims; <u>provided, however,</u> that the Court shall determine (i) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

61. <u>Allowance of Claims Subject to Section 502 of the Bankruptcy Code</u>. Allowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

62. <u>Goldman HC3b Claim</u>. The Goldman HC3b Claim shall be an Allowed Class HC3b Claim in the amount of $5,000,000.

63. <u>Goldman AL3 Claim</u>. The Goldman AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $9,506,754.00.

64. <u>NCMC AL3 Claim</u>. Subject to Article 4.M of the Modified Plan, the NCMC AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $3,973,199.86.

65. <u>Rejection of Remaining Executory Contracts and Unexpired Leases</u>. On the Original Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Court pursuant to section 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the Petition Date that had not previously expired or terminated pursuant to its own terms, was rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective (i) as of the Original Confirmation Date or (ii) if the Executory Contract has been removed from the Assumption Schedule after the Original Confirmation Date, as of the date of such removal. This Order shall constitute an order of the Court approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Original Confirmation Date.

66. <u>Assumption of Certain Contracts and Leases and Cure Payments</u>. On the Original Effective Date, all Executory Contracts listed on the Assumption Schedule were assumed. No objections to the proposed cure amounts listed on the Assumption Schedule were filed. Therefore the cure amounts set forth in the Assumption Schedule for each Executory Contract shall be binding on all parties pursuant to section 365 of the Bankruptcy Code. Such assumption as of the Original Effective Date shall be ratified and reaffirmed by this Order.

67. <u>Rejection Damages Bar Date</u>. Except to the extent another Bar Date applies pursuant to an order of the Court, any Proofs of Claim with respect to a Claim arising from the rejection of Executory Contracts under the Original Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) were to be filed with XRoads Case Management Services, P.O. Box 8901, Marina Del Rey, California 90295 (Telephone (888) 784-9571), and a copy served on counsel for the Original Plan Proponents and the Liquidating Trustee by August 30, 2008, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns, or their Assets. Any Claim arising from the rejection of an Executory Contract not filed by August 30, 2008 shall be so barred and any such Claims that are timely filed shall be treated as a Claim in Class HC3b (Other Unsecured Claims against NCFC), Class HC7 (Other Unsecured Claims against TRS Holdings), Class HC10b (Other Unsecured Claims against NC Credit), Class HC13 (Other Unsecured Claims against NC Residual IV), Class OP3c (Other Unsecured Claims against NCMC), Class OP6c (Other Unsecured Claims against NC Capital), Class OP9b (Other Unsecured Claims against Home123), Class OP12 (Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral), or Class AL3 (Other Unsecured Claims against Access Lending), depending on which Debtor the Claim is asserted against. Nothing in the Modified Plan or this Order extends or modifies any previously applicable Bar Date.

68. <u>Insurance Policies</u>. To the extent that any or all of the insurance policies set forth on Exhibit A to the Original Plan are considered to be Executory Contracts, then notwithstanding anything contained in the Original Plan, the Modified Plan or this Order to the contrary, the Original Plan and the Modified Plan constitute motions to assume the insurance

policies set forth on Exhibit A to the Original Plan and to assign them to the Liquidating Trust. Subject to the occurrence of the Modified Effective Date, the entry of this Order constitutes approval of such assumption and assignment pursuant to section 365(a) of the Bankruptcy Code and a finding by the Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases as of the Original Effective Date. Unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Original Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Original Confirmation Date with respect to each such insurance policy set forth on Exhibit A to the Original Plan. To the extent that the Court determines otherwise with respect to any insurance policy, the Plan Proponents' of the Modified Plan reserve the right to seek rejection of such insurance policy or other available relief and all such relief is hereby reserved. The Modified Plan shall not affect contracts that have been assumed and assigned by order of the Court prior to the Original Confirmation Date. The certain insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A to the Original Plan and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries or which may be property of the Debtors' Estates (including the rights, if any, to make, amend, prosecute, and benefit from claims) are retained and shall be transferred to the Liquidating Trust pursuant to the Modified Plan as of the Original Effective Date. Nothing herein or in the Modified Plan shall be deemed to constitute a determination that any of the proceeds of the insurance policies are or are not property of any Debtor's Estate.

69. <u>General Authority</u>. The Debtors, if on or prior to the Original Effective Date, and the Liquidating Trust or Reorganized Access Lending, if after the Original Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Modified Plan. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; <u>provided</u>, <u>however</u>, that the party making the requests presents evidence reasonably satisfactory to the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; <u>provided</u>, <u>further</u>, that the Liquidating Trust shall not be liable for the actions of the requesting party under any such powers of attorney; and <u>provided</u>, <u>further</u>, that the Liquidating Trustee may seek modification of this requirement on noticed motion and other parties may oppose such motion. Powers of attorney executed by the Debtors pursuant to the Original Plan prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and

the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.

70. _Tax Exemption_. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security under the Original Plan or the Modified Plan, or the making or delivery of an instrument of transfer under the Original Plan or the Modified Plan, including, without limitation, any transfers to or by the Debtors, if on or before the Original Effective Date, and the Liquidating Trustee, if after the Original Effective Date, of the Debtors' property in implementation of or as contemplated by the Modified Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, or similar tax. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded are hereby ordered and directed to accept such instrument, without requiring the payment of any stamp tax or similar tax.

71. _Non-Severability_. Except as specifically provided in the Modified Plan, the terms of the Modified Plan constitute interrelated compromises and are not severable.

72. _Findings of Fact and Conclusions of Law_. The determinations, finding, judgments, decrees and orders set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth herein, to the extent it is or may be so deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth herein, to the extent it is or may be so deemed a finding of fact, shall also constitute a finding of fact.

73.     Jurisdiction of the Court.  Until the Modified Effective Date, this Court shall retain jurisdiction over the Debtors, their Assets, and the Estates.  Thereafter, jurisdiction of the Court shall continue to the greatest extent legally permissible, including without limitation the subject matters set forth in Article 15.A of the Modified Plan.

74.     Effectiveness of Order.  Notwithstanding Bankruptcy Rules 3020(e) and 6004(g) or any other provision of the Bankruptcy Code or Bankruptcy Rules, this Order shall be effective immediately upon its entry, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

75.     Notice of Confirmation Order and Effective Date.  The Plan Proponents of the Modified Plan shall serve notice of the entry of this Order to those parties on whom the Modified Confirmation Hearing Notice was served.  Such service constitutes good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c).  On the Modified Effective Date, or as soon thereafter as is reasonably practicable, the Plan Proponents of the Modified Plan shall file with the Court a "Notice of Effective Date" in a form reasonably acceptable to the Plan Proponents of the Modified Plan in their sole discretion, which notice shall constitute appropriate and adequate notice that the Modified Plan has become effective; provided, however, that the Plan Proponents of the Modified Plan shall have no obligation to notify any Person of such fact other than the Office of the United States Trustee, the Liquidating Trustee, the Plan Administrator, the Plan Advisory Committee, parties with potential unpaid Administrative Claims, and counterparties to executory contracts and unexpired leases rejected pursuant to entry of this Order.  A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Liquidating Trustee's or Plan Administrator's option, by courier or

facsimile) to those Persons who have filed with the Court requests for notices pursuant to Bankruptcy Rule 2002.

76.     Modification of the Plan. Subject to the restrictions on plan modifications set forth in section 1127 of the Bankruptcy Code, the Plan Proponents of the Modified Plan reserve the right to alter, amend or modify the Modified Plan before its substantial consummation.

77.     Substantial Consummation. Substantial consummation of the Modified Plan shall be deemed to occur on the Modified Effective Date. Further, the provisions of Federal Rule of Civil Procedure 62(a) and Bankruptcy Rules 3020(e) and 7062 shall not apply to this Order and the Plan Proponents of the Modified Plan are authorized to consummate the Modified Plan immediately upon entry of this Order.

78.     Revocation, Withdrawal, or Non-Consummation of Plan. If after this Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Modified Confirmation Date, then upon motion by the Plan Proponents of the Modified Plan, this Order may be vacated by the Court; provided however, that notwithstanding the filing of such a motion, the Modified Confirmation Order shall not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Plan Proponents of the Modified Plan. If this Order is vacated pursuant to Article 14.B of the Modified Plan, the Modified Plan shall be null and void in all respects, and nothing contained in the Modified Plan, the Modified Disclosure Statement, nor any pleadings filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests

in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Plan Proponents of the Modified Plan in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Modified Confirmation Date. Article 14.B of the Modified Plan is not intended to establish the applicable legal standard with respect to vacating this Order, and the rights of all parties in interest to object to any motion filed pursuant to Article 14.B of the Modified Plan, including on the basis that the applicable legal standard has not been satisfied, are fully reserved.

79. <u>Effectiveness of the Settlement Agreement</u>. In accordance with the terms of the Order entered by this Court dated July 17, 2009, upon the Modified Effective Date, the Settlement Agreement that resolves the Schroeder Litigation shall be deemed effective and the Liquidating Trustee shall be authorized to take any and all actions necessary to implement the terms of the Settlement Agreement.

80. <u>Release of Notice Requirement</u>. Pursuant to the Order entered by this Court dated August 22, 2008 denying the Beneficiaries Stay Motion, this Court imposed on the Liquidating Trustee a requirement to provide prior notice to counsel for the Beneficiaries of certain distributions the Liquidating Trustee intended to make pursuant to the terms of the Original Plan. The entry of this Order shall terminate such obligations of the Liquidating Trustee to provide prior notice to counsel for the Beneficiaries of any distributions to be made under the Modified Plan.

81. <u>References to Modified Plan Provisions</u>. The failure to specifically include or reference any particular provision of the Modified Plan in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court that the Modified Plan be confirmed in its entirety.

82. <u>Integration of Confirmation Order Provisions</u>.  The provisions of this Order are integrated with each other and are nonseverable and mutually dependent.

83. <u>Reversal</u>.  If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Modified Plan prior to the Plan Proponent of the Modified Plan's receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Modified Plan or any amendments or modifications thereto.

Dated: November 20, 2009
      Wilmington, Delaware

THE HON. KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE