# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    Honorable Kevin J. Carey

                                          Chapter 11

| | |
|---|---|
| New Century Mortgage Corporation | 07-10419 |
| New Century Mortgage Ventures, LLC | 07-10429 |
| NC Capital Corporation | 07-10420 |
| NC Residual III Corporation | 07-10424 |
| New Century R.E.O. Corp. | 07-10426 |
| New Century R.E.O. II Corp. | 07-10427 |
| New Century R.E.O. III Corp. | 07-10428 |
| NC Deltex, LLC | 07-10430 |
| NCoral, L.P. | 07-10431 |
| NC Asset Holding, L.P. | 07-10423 |
| Home123 Corporation | 07-10421 |
| New Century TRS Holdings, Inc. | 07-10416 |
| NC Residual IV Corporation | 07-10425 |
| New Century Credit Corporation | 07-10422 |
| New Century Financial Corporation | 07-10417 |
| New Century Warehouse Corporation | 07-11043 |

Debtors.

## MODIFIED SECOND AMENDED JOINT CHAPTER 11
## PLAN OF LIQUIDATION DATED AS OF SEPTEMBER 30, 2009

| | |
|---|---|
| Mark S. Indelicato | Bonnie Glantz Fatell |
| Mark T. Power | David W. Carickhoff |
| Janine M. Cerbone | BLANK ROME LLP |
| HAHN & HESSEN LLP | 1201 Market Street |
| 488 Madison Avenue | Suite 1800 |
| New York, New York 10022 | Wilmington, DE 19891 |
| (212) 478-7200 | (302) 425-6400 |

Counsel for Alan M. Jacobs
as Plan Administrator of Reorganized Access Lending
and as Liquidating Trustee of the New Century Liquidating Trust
(including in the Liquidating Trustee's capacity as sole officer and director of each Debtor).

871230.002-1727008.9

# TABLE OF CONTENTS

ARTICLE 1.  DEFINITIONS..................................................................................................1
    A.    Defined Terms. ........................................................................................1
    B.    Other Terms .............................................................................................27
    C.    Time Periods ............................................................................................28
    D.    Exhibits ....................................................................................................28

ARTICLE 2.  CLASSIFICATION OF CLAIMS AND INTERESTS ...........................28
    A.    Summary ...................................................................................................28
    B.    Classification ...........................................................................................33

ARTICLE 3.  TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX
            CLAIMS ...................................................................................................37
    A.    Administrative Claims. ...........................................................................37
    B.    Priority Tax Claims ..................................................................................39

ARTICLE 4.  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS .........................39
    A.    Priority Claims Against All Debtors (Classes HC1, HC5, HC8, HC11,
          OP1, OP4, OP7, OP10, and AL1)............................................................40
    B.    Secured Claims Against All Debtors (Classes HC2, HC6, HC9, HC12,
          OP2, OP5, OP8, OP11, and AL2)............................................................40
    C.    Class HC3:  Unsecured Claims Against NCFC. ....................................41
    D.    Class 4:  NCFC Interests.........................................................................44
    E.    Class HC7:  Other Unsecured Claims against TRS Holdings ................46
    F.    Class HC10:  Unsecured Claims Against NC Credit...............................46
    G.    Class HC13:  Other Unsecured Claims against NC Residual IV ............47
    H.    Class HC14:  Settling Parties Claims in the Schroeder Litigation.........48
    I.    Class OP3:  Unsecured Claims Against NCMC. ....................................48
    J.    Class OP6:  Unsecured Claims Against NC Capital...............................50
    K.    Class OP9:  Unsecured Claims Against Home123..................................52
    L.    Class OP12:  Other Unsecured Claims Against NC Asset Holding, NC
          Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM
          Ventures, and NCoral...............................................................................54
    M.    Class AL3:  Other Unsecured Claims Against Access Lending............55

ARTICLE 5.  ACCEPTANCE OR REJECTION  OF THIS MODIFIED PLAN .........56
    A.    Impaired Classes of Claims that Voted to Accept the Original Plan ....56
    B.    Impaired Classes of Claims Entitled to Vote on this Modified Plan .....57
    C.    Classes Deemed to Accept the Modified Plan ........................................57
    D.    Classes Deemed to Reject this Modified Plan ........................................58
    E.    Nonconsensual Confirmation...................................................................59
    F.    Removal of Debtors .................................................................................59

ARTICLE 6.  THE MULTI-DEBTOR CLAIM PROTOCOL FOR TREATMENT OF CLAIMS AGAINST MULTIPLE DEBTORS ......................................................59

    A.  Allowed Unsecured Claims for Which More than One Holding Company Debtor Is Jointly and/or Severally Liable ...........................................59

    B.  Allowed Unsecured Claims for Which More than One Operating Debtor Is Jointly and/or Severally Liable ...........................................................60

    C.  Separate Application to Debtor Groups .........................................................60

    D.  Inapplicable to Claims Against Access Lending or NC Credit .....................60

    E.  Inapplicable to Intercompany Claims ...........................................................61

ARTICLE 7.  THE INTERCOMPANY PROTOCOL FOR TREATMENT OF INTERCOMPANY CLAIMS ............................................................................61

    A.  Claims of Holding Company Debtors Against Other Holding Company Debtors ............................................................................................61

    B.  Claims of Operating Debtors Against Other Operating Debtors ..................61

    C.  Claims of Holding Company Debtors and NC Credit Against Operating Debtors ............................................................................................61

    D.  Claims of Operating Debtors and NC Credit Against Holding Company Debtors ............................................................................................61

ARTICLE 8.  MEANS OF IMPLEMENTING THIS MODIFIED PLAN ......................62

    A.  Implementation of this Modified Plan ..........................................................62

    B.  Corporate Action ...........................................................................................62

    C.  Dissolution of Debtors Other than Access Lending ......................................63

    D.  Dissolution of the Committee ........................................................................64

    E.  Vesting of Assets in Liquidating Trust; Assumption of Plan Obligations.....64

    F.  Liquidating Trust. ..........................................................................................67

    G.  Plan Advisory Committee. .............................................................................77

    H.  Liability, Indemnification ..............................................................................80

    I.  Retention of Professionals. ............................................................................82

    J.  Preservation of All Causes of Action.............................................................83

    K.  Successors .....................................................................................................84

ARTICLE 9.  DISTRIBUTION UNDER THIS MODIFIED PLAN ...............................85

    A.  Timing of Distributions..................................................................................85

    B.  Reserves. .......................................................................................................87

    C.  Distribution Calculations. .............................................................................93

    D.  Payment in Full of Unsecured Claims. .........................................................96

    E.  Manner of Distribution ................................................................................100

    F.  De Minimis Distributions ............................................................................101

    G.  Delivery of Distributions .............................................................................101

    H.  Undeliverable Distributions.........................................................................102

    I.  Setoffs and Recoupments.............................................................................102

    J.  Distributions in Satisfaction; Allocation.....................................................103

    K.  Cancellation of Notes and Instruments .......................................................103

    L.  No Interest on Claims ..................................................................................104

    M.  Withholding Taxes.......................................................................................104

N.      Reports ..................................................................................................................105

ARTICLE 10. IMPLEMENTATION OF THE MODIFIED PLAN AND
            DISTRIBUTIONS WITH RESPECT TO ACCESS LENDING........................105
      A.    Transfer of Access Lending Stock........................................................................105
      B.    The Plan Administrator..........................................................................................105
      C.    Reimbursement of Debtors and Liquidating Trust .............................................106
      D.    Resolution of Claims and Prosecution of Access Lending Causes of
            Action.....................................................................................................................107
      E.    Timing of Distributions on Account of Claims Against Access Lending. ..........107
      F.    Access Lending Reserves. ....................................................................................108
      G.    Dissolution of Reorganized Access Lending........................................................112
      H.    Access Lending Income; Returns ..........................................................................113
      I.    Removal of Access Lending ...................................................................................113

ARTICLE 11. PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED
            CLAIMS ..................................................................................................................113
      A.    Reservation of Rights to Object to Claims ...........................................................113
      B.    Objections to Claims...............................................................................................114
      C.    Service of Objections..............................................................................................115
      D.    Determination of Claims.........................................................................................115
      E.    No Distributions Pending Allowance ....................................................................116
      F.    Claim Estimation .....................................................................................................116
      G.    Allowance of Claims Subject to Section 502 of the Bankruptcy Code ...............116
      H.    Goldman HC3b Claim .............................................................................................117
      I.    Goldman AL3 Claim.................................................................................................117
      J.    NCMC AL3 Claim.....................................................................................................117

ARTICLE 12. EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................117
      A.    Assumption of Certain Contracts and Leases and Cure Payments.....................117
      B.    Rejection of Remaining Executory Contracts and Unexpired Leases.................118
      C.    Rejection Damages Bar Date ..................................................................................118
      D.    Insurance Policies ...................................................................................................119

ARTICLE 13. EFFECT OF CONFIRMATION AND INJUNCTION.......................................120
      A.    Injunction.................................................................................................................120
      B.    Term of Injunctions.................................................................................................122
      C.    Exculpation ..............................................................................................................122
      D.    Release of Goldman.................................................................................................124
      E.    Binding Effect of the Original Plan and the Modified Plan..................................124

ARTICLE 14. CONDITIONS PRECEDENT .............................................................................125
      A.    Conditions Precedent to Modified Effective Date ...............................................125
      B.    Revocation, Withdrawal, or Non-Consummation of this Modified Plan ...........126

ARTICLE 15. ADMINISTRATIVE PROVISIONS.....................................................................127
      A.    Retention of Jurisdiction........................................................................................127

| | | |
|---|---|---|
| B. | Payment of Statutory Fees | 131 |
| C. | General Authority | 131 |
| D. | Headings | 132 |
| E. | Final Order | 133 |
| F. | Amendments and Modifications | 133 |
| G. | Payment Date | 133 |
| H. | Withholding and Reporting Requirements | 133 |
| I. | No Waiver | 134 |
| J. | Tax Exemption | 134 |
| K. | Securities Exemption | 134 |
| L. | Non-Severability | 135 |
| M. | Revocation | 135 |
| N. | Modified Plan Controls Modified Disclosure Statement | 135 |
| O. | Governing Law | 135 |
| P. | Notices | 136 |
| Q. | Filing of Additional Documents | 137 |
| R. | Direction to a Party | 137 |
| S. | Successors and Assigns | 137 |
| T. | Final Decree | 137 |

ARTICLE 16. CONFIRMATION REQUEST ...................................................................138

ARTICLE 17. BANKRUPTCY RULE 9019 REQUEST AND, TO EXTENT
REQUIRED, REQUEST PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(A) AND 1123(A)(5) .............................................................138

Exhibit A       Assumption Schedule

Exhibit B       EPD/Breach Claim Protocol

Exhibit C       Allocation of Joint Administrative Expense Shares

## INTRODUCTION

New Century Financial Corporation, New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation) New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corporation, New Century R.E.O. II Corporation, New Century R.E.O. III Corporation, New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., and New Century Warehouse Corporation, debtors and debtors in possession in the above-captioned chapter 11 cases, by and through their sole officer and director, and the Liquidating Trust and Reorganized Access Lending, by and through their Bankruptcy Court appointed Liquidating Trustee and Plan Administrator, respectively, propose this Modified Second Amended Joint Chapter 11 Plan of Liquidation pursuant to the provisions of the Bankruptcy Code.

## ARTICLE 1.

## DEFINITIONS

### A. Defined Terms.

Unless otherwise provided in this Modified Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of this Modified Plan, the following terms (which appear in this Modified Plan in capitalized forms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context requires otherwise.

"510(b) Claims" means, collectively, Series A 510(b) Claims, Series B 510(b) Claims, and Common Stock 510(b) Claims.

"**Access Lending**" means New Century Warehouse Corporation, a California corporation and a Debtor.

"**Access Lending Administrative Fund**" means the reserve established for the Reorganized Access Lending Operating Expenses and the expenses incurred in connection with the pursuit of the Access Lending Causes of Action in accordance with Article 10.F.1 of the Original Plan, which reserve may be augmented by the Plan Administrator in his discretion and shall be reviewed by the Plan Administrator subsequent to the Modified Effective Date to insure it complies with the Modified Plan.

"**Access Lending A/P/S Reserve**" means the reserve established, in accordance with Article 10.F.2 of the Original Plan, which reserve shall be reviewed by the Plan Administrator subsequent to the Modified Effective Date to insure it complies with the Modified Plan, to pay (i) all Allowed A/P/S Claims against Access Lending to the extent such Claims were not paid on the Original Effective Date or are not paid on the Modified Effective Date and (ii) any Disputed A/P/S Claim against Access Lending to the extent such Claim becomes an Allowed A/P/S Claim.

"**Access Lending Bar Date**" means, with respect to Access Lending, December 14, 2007, which is the date set by which all Persons, including governmental units, asserting a Claim against Access Lending must have filed a Proof of Claim against Access Lending or be forever barred from asserting such Claim.

"**Access Lending Causes of Action**" means all Causes of Action, including Avoidance Actions, of Access Lending, which Causes of Action are not included within the Liquidating Trust Assets.

"**Access Lending Claims Reserve**" means the reserve established, in accordance with Article 10.F.3 of the Original Plan, to pay any Disputed Unsecured Claim against Access Lending to the extent such Claim becomes an Allowed Unsecured Claim against Access Lending, which reserve shall be reviewed by the Plan Administrator subsequent to the Modified Effective Date to insure it complies with the Modified Plan.

"**Access Lending Interest**" means an Interest in Access Lending, all of which Interests are owned by TRS Holdings.

"**Access Lending Net Distributable Assets**" means the amount as calculated pursuant to Article 10.F.4 of this Modified Plan.

"**ACH**" means an automated clearing house transfer from a domestic bank.

"**Adequate Protection Proceeds**" means any funds distributed by a Final Order to the estate of NCMC from either of two escrow accounts established pursuant to the Order Granting Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) and Establishing Preliminary Procedures for Resolving Certain Claims dated June 29, 2007 [Docket No. 1729] and held by Hahn & Hessen LLP, as escrow agent.

"**Administrative Claim**" means any Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code, that arose prior to the Original Effective Date, including, without limitation: (a) Professional Fee Claims, (b) any post-petition taxes subject to administrative treatment, and (c) fees and charges assessed against the Debtors or the Estates pursuant to Section 1930 of title 28 of the United States Code; provided, however, any Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code, that arose after the Original Effective

Date shall be treated as a Trust Operating Expense to the extent it would otherwise be a Trust Operating Expense if the Original Plan had not been reversed.

"**Administrative Claim Request**" means a request for payment of an Administrative Claim (excluding Professional Fee Claims) that was timely served and filed in accordance with the terms of the Original Plan on or before the Administrative Claim Request Deadline or August 31, 2008.

"**Administrative Claim Request Deadline**" means the date set as the deadline for filing Administrative Claim Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Orders, which occurred on August 31, 2008, pursuant to the terms of the Original Plan.

"**Administrative Fund**" means the reserve established for the Trust Operating Expenses and expenses incurred in connection with the pursuit of the Causes of Action in accordance with Article 9.B.1 of the Original Plan and adopted by Article 9.B.1 of this Modified Plan, which reserve may be augmented by the Liquidating Trustee in consultation with the Plan Advisory Committee.

"**Allowed Claim**" or "**Allowed Interest**" means, respectively, a Claim or Interest: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent, or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Bar Date and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; (iii) as to which a timely Administrative Claim Request has been filed as of the Administrative Claim Request Deadline and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; or (iv) that has been allowed by a Final Order; or (v) which is allowed in this Modified Plan;

4

provided, however, that prior to the deadline imposed by the Original Plan or an extension thereof to file objections to a given Claim, which deadline is currently January 31, 2010 but may be extended by further order of the Court, no Claim shall be treated as Allowed to the extent that it is filed by the holder of such Claim (x) in an amount greater than the amount listed for such Claim by the Debtors in their Schedules or (y) asserting a priority higher than the priority listed for such Claim by the Debtors in their Schedules.

"**Allowed [Class Designation, A/P/S Administrative, Priority Tax, Priority, Secured, Unsecured, Other Unsecured, 510(b), or Capital Trust] Claim**" means an Allowed Claim of the specified Class or an Allowed Claim that is an A/P/S Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Unsecured Claim, Other Unsecured Claim, 510(b) Claim, or Capital Trust Claim.

"**Allowed [Debtor Group] Unsecured Claims**" means Unsecured Claims that are allowed against Debtors in the specified Debtor Group.

"**April Debtors Bar Date**" means with respect to all Debtors other than Access Lending (i) August 31, 2007 and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against any Debtor(s) other than Access Lending must have filed a Proof of Claim against such Debtor(s) or be forever barred from asserting such Claim.

"**A/P/S Claim**" means any Claim that is an Administrative Claim, Priority Claim, Priority Tax Claim, or Secured Claim.

"**A/P/S Claims Reserve**" means the reserve established, in accordance with Article 9.B.2 of the Original Plan, which reserve shall be reviewed by the Liquidating Trustee subsequent to the Modified Effective Date to insure it complies with the Modified Plan, to pay (i) all Allowed

A/P/S Claims (other than against Access Lending) to the extent such Claims were not paid on the Original Effective Date or are not paid on the Modified Effective Date and (ii) any Disputed A/P/S Claim (other than against Access Lending) to the extent such Claim becomes an Allowed A/P/S Claim.

"**Assets**" means the assets of each of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates.

"**Assumption Objection Deadline**" means the date seven (7) days prior to the Original Confirmation Hearing.

"**Assumption Schedule**" means the schedule (attached as Exhibit A to the Original Plan) of Executory Contracts (not previously assumed in the Chapter 11 Cases) assumed by the Debtors effective as of the Original Effective Date in accordance with the terms of the Original Plan, as adopted by this Modified Plan, together with the amount of cure payments, if any, paid or to be paid by the Liquidating Trustee in accordance with section 365(b)(1) of the Bankruptcy Code.

"**Avoidance Actions**" means all Claims and Causes of Action arising under sections 522, 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code.

"**Ballot**" means the form or forms distributed to each Holder of an Allowed Claim in an impaired Class entitled to vote on this Modified Plan or the Original Plan on which the Holder indicates acceptance or rejection of this Modified Plan or the Original Plan or any election for treatment of such Claim under this Modified Plan or the Original Plan.

"**Ballot Date**" means the date set by the Bankruptcy Court by which all Ballots must be received for the Modified Plan.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the date hereof.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware and any other court that exercises jurisdiction over the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure applicable to the Chapter 11 Cases and the Local Rules of the Bankruptcy Court, each as in effect from time to time.

"**Bar Dates**" means, collectively, the Access Lending Bar Date and the April Debtors Bar Date.

"**Bar Date Orders**" means (i) the "Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency Thereof" [Docket No. 1721] and (ii) the "Order Establishing Bar Dates for Filing Proofs of Claim in the Chapter 11 Case of New Century Warehouse Corporation and Approving Form, Manner and Sufficiency Thereof" dated October 23, 2007 [Docket No. 3404].

"**Business Day**" means any day except a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

"**Capital Trust Claim**" means a Claim against NCFC arising from NCFC's obligations under the Capital Trust Indentures.

"**Capital Trust Indenture**" means, collectively, (i) that certain Junior Subordinated Indenture between NCFC and Wells Fargo Bank, N.A., as trustee, dated as of September 13,

2006 and (ii) that certain Junior Subordinated Indenture between NCFC and Wells Fargo Bank, N.A., as trustee, dated as of November 16, 2006.

"**Cash**" means cash or cash equivalents in certified or immediately available funds, including but not limited to bank deposits, checks, and similar items.

"**Causes of Action**" means all claims, causes of action, third-party claims, counterclaims and crossclaims (including but not limited to any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that may be pending on the Original Effective Date or instituted after the Original Effective Date against any Person based in law, equity, or otherwise, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Original Confirmation Order, including Avoidance Actions; provided, however, that any affirmative defense or crossclaim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce or is offset against such Claim.

"**Chapter 11 Cases**" means the 16 above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court and jointly administered with one another under Case No. 07-10416 (KJC).

"**Claim**" means "claim," as such term is defined in Section 101(5) of the Bankruptcy Code and, except as otherwise provided in the context, means a Claim against the Debtors or the Estates.

"**Class**" means a group of Claims or Interests as established under Article 2 of this Modified Plan pursuant to Bankruptcy Code section 1122.

"**Committee**" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

"**Common Stock 510(b) Claim**" means any Claim (i) arising from rescission of a purchase or sale of Common Stock Interests, Option Interests, or Warrant Interests, for damages arising from the purchase or sale of such securities, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claims and (ii) which, if asserted against NCFC, would be of the same respective priority as Common Stock Interests, Option Interests, or Warrant Interests pursuant to section 510(b) of the Bankruptcy Code.

"**Common Stock Interests**" means the common stock of NCFC issued and outstanding immediately before the Original Effective Date.

"**Cramdown Plan**" means this Modified Plan if confirmed by the Bankruptcy Court pursuant to section 1129(b) of the Bankruptcy Code.

"**Creditor**" means "creditor," as such term is defined in section 101(10) of the Bankruptcy Code.

"**De Minimis Distribution**" means a distribution to be made in accordance with the terms of this Modified Plan that is $50.00 or less.

"**Debtor Group**" means, individually or collectively, the Holding Company Debtors, the Operating Debtors, NC Credit or Access Lending.

"**Debtors**" means, collectively, the following entities in existence on the Petition Date: Access Lending; Home123; NC Asset Holding; NC Capital; NC Credit; NC Deltex; NC Residual III; NC Residual IV; NCFC; NCMC; NCoral; NCM Ventures, LLC; NC R.E.O.; NC R.E.O. II; NC R.E.O. III; and TRS Holdings.

"**Determined Distribution Amount**" means the amount assigned to each Allowed Unsecured Claim, as set forth in Article 4 of this Modified Plan and subject to the Multi-Debtor

Protocol and Intercompany Claim Protocol, for purposes of determining distributions to be made to Holders of Allowed Unsecured Claims in accordance with the terms of this Modified Plan.

"**Disallowed Claim**" means a Claim or any portion thereof that (i) has been disallowed by Final Order, (ii) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Modified Plan, (iii) is not Scheduled and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Modified Plan, (iv) has been withdrawn by agreement of the Debtors , or the Liquidating Trustee and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

"**Disputed Claim**" means a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including without limitation all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed, or at zero, (ii) are the subject of a Proof of Claim that differs in nature, amount, or priority from the Schedules, or (iii) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

"**Disputed [Class Designation, A/P/S, Administrative, Priority Tax, Priority, Secured, Unsecured, Other Unsecured, or 510(b)] Claim**" means a Disputed Claim of the

specified Class or a Disputed Claim that is an A/P/S Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Unsecured Claim, Other Unsecured Claim, or 510(b) Claim.

"**EPD/Breach Claim**" means a Claim arising under an agreement between one or more of the Debtors and a loan buyer or securitization party for (i) breach of a representation or warranty under such agreement made by one or more of the Debtors or (ii) a right under such an agreement to resell a loan to one or more of the Debtors based on a payment default by the borrower on such loan.

"**EPD/Breach Claim Protocol**" means the protocol (attached as Exhibit B to the Original Plan) by which the amount of damages for EPD/Breach Claims are calculated.

"**Estates**" means the estates created by the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

"**Executory Contract**" means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person.

"**Examiner**" means Michael J. Missal, acting in his capacity as the examiner appointed in the Chapter 11 Cases by the Bankruptcy Court pursuant to section 1104(c) of the Bankruptcy Code, or such other Person, acting in such capacity, as the Bankruptcy Court may hereafter appoint.

"**Exculpated Party**" means any of the Debtors, the Liquidating Trustee (including in his capacity as Plan Administrator and sole officer and director of the Debtors), the Estates, the Liquidating Trust, Reorganized Access Lending, the Committee, each of the Members of the Committee, the Indenture Trustee, the Plan Advisory Committee, and their respective officers,

directors, employees, members, attorneys, crisis managers, financial advisors, and professionals, each in their respective capacities.

"**Fee Application**" means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for compensation of a Professional Fee Claim.

"**Fee Auditor**" means Warren H. Smith & Associates, P.C., acting in its capacity as the fee auditor appointed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court dated October 10, 2007 [Docket No. 3260], or such other Person, acting in such capacity, as the Bankruptcy Court may hereafter appoint.

"**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of the Chapter 11 Cases, that has not been reversed, rescinded, stayed, modified or amended, that is in full force and effect, and with respect to which: (a) the time to appeal, seek review or hearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; (b) any right to appeal, seek review or rehearing, or petition for certiorari has been waived in writing; or (c) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought. Notwithstanding, and in lieu of the foregoing, insofar as the Modified Confirmation Order confirming this Modified Plan is concerned, Final Order means only such order or judgment which has been entered on the docket and as to which no stay is in effect.

"**Goldman**" means, together, GSMC and its affiliate Goldman, Sachs & Co.

"**Goldman AL3 Claim**" means any and all Claims of Goldman against Access Lending arising out of or relating to the Goldman MRA, which Claim is allowed under this Modified Plan in Class AL3 in the amount of $9,506,754.00.

"**Goldman HC3b Claim**" means any and all Claims of Goldman against NCFC arising out of or relating to the Goldman MRA which Claim is allowed under this Modified Plan in Class HC3b in the amount of $5,000,000.00.

"**Goldman MRA**" means the Master Repurchase Agreement dated February 15, 2006 (as amended by Amendment No. 1 dated as of October 25, 2006, Amendment No.2. dated November 30, 2006, and Amendment No. 3 dated as of February 7, 2007) entered into by Access Lending, GSMC, and NCFC (as guarantor), the Guaranty dated February 15, 2006 between GSMC and NCFC, as well as any other documents executed or delivered in connection therewith.

"**GSMC**" means Goldman Sachs Mortgage Company.

"**Holder**" means the owner or holder of any Claim or Interest.

"**Holding Company Debtor Claims Reserve**" means the reserve established, in accordance with Article 9.B.3 of the Original Plan, to pay any Disputed Unsecured Claim against a Holding Company Debtor to the extent such Claim becomes an Allowed Unsecured Claim against a Holding Company Debtor to be reviewed by the Liquidating Trustee subsequent to the Modified Effective Date to insure it complies with the Modified Plan.

"**Holding Company Debtor Net Distributable Assets**" means the amount as calculated pursuant to Article 9.C.2 of this Modified Plan.

"**Holding Company Debtor Portion of Litigation Proceeds**" means 24.75% of the Litigation Proceeds.

"**Holding Company Debtor Portion of the Restatement Litigation Proceeds**" means 24.75% of the Restatement Litigation Proceeds.

"**Holding Company Debtors**" means, collectively, NCFC, NC Residual IV, and TRS Holdings.

"**Home 123**" means Home 123 Corporation, a California corporation and a Debtor.

"**Indenture Trustee**" means Wells Fargo Bank, N.A., in its capacity as trustee of the Capital Trust Indentures.

"**Indenture Trustee Expenses**" means the reasonable compensation and expenses of the Indenture Trustee including the fees and expenses of its counsel, agents and advisers, incurred at any time prior to or subsequent to the Petition Date, and prior to or subsequent to the Original Effective Date; provided, however, any such fees, compensation, or expense arising subsequent to the Original Effective Date shall only be paid from distributions to be made on account of Capital Trust Claims and Senior Class HC3b Claims.

"**Intercompany Claim**" means a Claim held by a Debtor against another Debtor.

"**Intercompany Claim Protocol**" means the protocol, set forth in Article 7 of this Modified Plan, pursuant to which each Intercompany Claim is assigned a Determined Distribution Amount, notwithstanding the treatment of the Class in which a particular Intercompany Claim is classified.

"**Interest**" means, with respect to any Debtor, any "equity interest," as such term is defined in Bankruptcy Code § 101(16). Interests shall also include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any shares of stock in the Debtors.

"**IRC**" means the Internal Revenue Code of 1986, as amended.

"IRS" means the Internal Revenue Service.

"Joint Administrative Expense" means (i) an Allowed Administrative Claim (including, without limitation, Professional Fee Claims) or portion thereof or (ii) an expense of administering the Debtors' Estates, or portion thereof, incurred in the ordinary course prior to the Original Effective Date and paid by the Debtors on or before the Original Effective Date in the ordinary course in either case for which, as determined by the Liquidating Trustee and approved by the Plan Advisory Committee, (a) liability cannot be allocated to a particular Debtor or Debtors and (b) Debtors in more than one Debtor Group are liable; provided, however, any claim that would be an Allowed Administrative Claim arising after the Original Effective Date shall be deemed a Trust Operating Expense to the extent it would otherwise be a Trust Operating Expense if the Original Plan had not been reversed and shall be allocated as a Trust Operating Expense in accordance with the terms of this Modified Plan.

"Joint Administrative Expense Share" means the share (expressed in terms of percentage) of a Joint Administrative Expense allocated to each of Access Lending, the Holding Company Debtors, and the Operating Debtors (attached as Exhibit C to the Original Plan).

"Lien" means any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt, or litigation.

"Liquidating Trust" means the liquidating trust into which all of the Assets of the Debtors, other than the Assets of Access Lending, were transferred upon the Original Effective Date.

"Liquidating Trust Agreement" means the formative trust agreement for the Liquidating Trust, filed by the Original Plan Proponents with the Bankruptcy Court and executed on the Original Effective Date.

15

"**Liquidating Trust Assets**" means the Assets of the Debtors, including Access Lending Interests but excluding the Assets of Access Lending, contributed to the Liquidating Trust.

"**Liquidating Trustee**" means Alan M. Jacobs, appointed to act as trustee of the Liquidating Trust in accordance with the terms of the Original Plan, the Original Confirmation Order, the Liquidating Trust Agreement, the Status Quo Order, and this Modified Plan, or any successor appointed in accordance with the terms of this Modified Plan and the Liquidating Trust Agreement.

"**Litigation Proceeds**" means the net proceeds of all Causes of Action (other than Access Lending Causes of Action) whether from judgment, settlement, or claim on insurance, as calculated pursuant to Article 9.C.1 of this Modified Plan and includes the Restatement Litigation Proceeds.

"**Members of the Committee**" means, individually and collectively, the Persons appointed as members of the Committee by the U.S. Trustee on April 9, 2007, each acting in its capacity as a member of the Committee.

"**Modified Confirmation Date**" means the date on which the Modified Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

"**Modified Confirmation Hearing**" means the hearing pursuant to Bankruptcy Rule 3020(b) at which the Bankruptcy Court considers confirmation of the Modified Plan, as such hearing may be continued from time to time.

"**Modified Confirmation Order**" means the Order of the Bankruptcy Court confirming this Modified Plan pursuant to Section 1129 of the Bankruptcy Code.

"**Modified Disclosure Statement**" means the disclosure statement that relates to this Modified Plan, as approved by the Bankruptcy Court pursuant to sections 1125 and 1127 of the

16

Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

"**Modified Effective Date**" means the Business Day on which this Modified Plan becomes effective pursuant to Article 14.A of this Modified Plan; provided, however, that if any stay or injunction against enforcement or execution of the Modified Confirmation Order is issued prior to the date that would otherwise be the Modified Effective Date, the Modified Effective Date shall be the first Business Day after all such stays or injunctions are no longer in effect.

"**Modified Plan**" means this Modified Second Amended Joint Chapter 11 Plan of Liquidation dated September 30, 2009 (either in its present form or as it may be amended or modified from time to time), any exhibits hereto and any documents incorporated herein by reference.

"**Multi-Debtor Claim Protocol**" means the protocol, set forth in Article 6 of this Modified Plan, pursuant to which a Creditor's Determined Distribution Amount is assigned where such Creditor holds Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable.

"**NC Asset Holding**" means NC Asset Holding, L.P., a Delaware limited partnership and a Debtor.

"**NC Capital**" means NC Capital Corporation, a California corporation and a Debtor.

"**NC Capital EDP/Breach Claimant Portion of Litigation Proceeds**" means 45% of the Litigation Proceeds.

"**NC Credit**" means New Century Credit Corporation, a California corporation and a Debtor.

"**NC Credit Claims Reserve**" means the reserve established, in accordance with Article 9.B.4 of this Modified Plan from funds that would otherwise be deposited in the Holding Company Debtor Claims Reserve, to pay any Disputed Unsecured Claim against NC Credit to the extent such Claim becomes an Allowed Claim against NC Credit.

"**NC Credit Portion of Litigation Proceeds**" means 2.75% of the Litigation Proceeds.

"**NC Credit Portion of the Restatement Litigation Proceeds**" means 2.75% of the Restatement Litigation Proceeds.

"**NC Deltex**" means NC Deltex, LLC, a Delaware limited liability company and a Debtor.

"**NC REO**" means New Century R.E.O. Corp., a California corporation and a Debtor.

"**NC REO II**" means New Century R.E.O. II Corp., a California corporation and a Debtor.

"**NC REO III**" means New Century R.E.O. III Corp., a California corporation and a Debtor.

"**NC Residual III**" means NC Residual III Corporation, a Delaware corporation and a Debtor.

"**NC Residual IV**" means NC Residual IV Corporation, a Delaware corporation and a Debtor.

"**NCFC**" means New Century Financial Corporation, a Maryland corporation and a Debtor.

"**NCFC Interest**" means an Interest in NCFC, including Stock Interests, Option Interests, and Warrant Interests.

"**NCFC Interest Holder**" means a Holder of an NCFC Interest.

"**NCM Ventures**" means New Century Mortgage Ventures, LLC, a Delaware limited liability company and a Debtor.

"**NCMC**" means New Century Mortgage Corporation, a California corporation and a Debtor.

"**NCMC AL3 Claim**" means any and all Claims of NCMC against Access Lending, which Claim is allowed under this Modified Plan in Class AL3 in the amount of $3,973,199.86.

"**NCoral**" means NCoral, L.P., a Delaware limited partnership and a Debtor.

"**New Century Benefit Plan**" means the New Century Financial Corporation Deferred Compensation Plan and Supplemental Employee Retirement Plan ("SERP").

"**Operating Debtor Claims Reserve**" means the reserve established, in accordance with Article 9.B.4 of the Original Plan, to pay any Disputed Unsecured Claim against an Operating Debtor to the extent such Claim becomes an Allowed Unsecured Claim against an Operating Debtor to be reviewed by the Liquidating Trustee subsequent to the Modified Effective Date to insure it complies with this Modified Plan.

"**Operating Debtor Net Distributable Assets**" means the amount as calculated pursuant to Article 9.C.4 of this Modified Plan.

"**Operating Debtor Portion of the Litigation Proceeds**" means 27.5% of the Litigation Proceeds.

"**Operating Debtor Portion of the Restatement Litigation Proceeds**" means 27.5% of the Restatement Litigation Proceeds.

"**Operating Debtor Unsecured Claim**" means all Unsecured Claims against Operating Debtors.

"**Operating Debtors**" means, collectively, Home 123, NC Asset Holding, NC Capital, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, NCMC, and NCoral.

"**Option Interest**" means unexercised options to purchase Common Stock Interests.

"**Original Confirmation Date**" means the date on which the Original Confirmation Order was entered on the docket in the Chapter 11 Cases by the Bankruptcy Court or July 15, 2008.

"**Original Confirmation Hearing**" means the hearing pursuant to Bankruptcy Rule 3020(b) at which the Bankruptcy Court considered confirmation of the Original Plan, which occurred on April 24 and 25, 2008.

"**Original Confirmation Order**" means the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 entered by the Bankruptcy Court on July 15, 2008 as amended by the Order Amending the Confirmation Order entered by the Bankruptcy Court on July 22, 2008.

"**Original Disclosure Statement**" means the disclosure statement that related to the Original Plan, as approved by the Bankruptcy Court pursuant to Order dated March 18, 2008.

"**Original Effective Date**" means the effective date of the Original Plan, which occurred on August 1, 2008.

"**Original Plan**" means the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008, any exhibits thereto, and any documents incorporated therein by reference.

"**Original Plan Proponents**" means collectively the Debtors and the Committee.

"**Other AL3 Claims**" means all Class AL3 Claims other than the Goldman AL3 Claim and the NCMC AL3 Claim.

"**Other Unsecured Claim**" means any Unsecured Claim other than Special Deficiency Claims and EPD/Breach Claims.

"**Person**" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

"**Petition Date**" means, (i) with respect to all Debtors other than Access Lending, April 2, 2007, the date on which all of the Debtors other than Access Lending commenced the Chapter 11 Cases, and (ii) with respect to Access Lending, August 3, 2007, the date on which Access Lending commenced its Chapter 11 Case.

"**Plan Administrator**" means the Liquidating Trustee acting in his capacity as the chief executive officer and sole director of Reorganized Access Lending and as the Person responsible for liquidating and winding down the Estate of Access Lending as set forth in Article 10.B of the Original Plan and Article 10.B of this Modified Plan.

"**Plan Administrator Agreement**" means the agreement setting forth the rights and duties of the Plan Administrator dated as of August 1, 2008.

"**Plan Advisory Committee**" means the post-confirmation committee formed on the Original Effective Date and selected by the Committee in accordance with Article 8.G of the Original Plan.

"**Plan Proponents of the Modified Plan**" means the Debtors, by and through their sole officer and director, and the Liquidating Trust and Reorganized Access Lending, by and through

their Bankruptcy Court appointed Liquidating Trustee and/or Plan Administrator, respectively, pursuant to the terms of the Original Plan and the Status Quo Order.

"**Priority Claim**" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"**Priority Tax Claim**" means a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means the Examiner, the Fee Auditor, or any Person employed by the Debtors, the Committee, and/or the Examiner pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Original Effective Date pursuant to sections 327, 328, 329, 330, and/or 331 of the Bankruptcy Code. This definition excludes professionals that may be selected and employed by the Liquidating Trust, the Liquidating Trustee, or the Plan Advisory Committee on and after the Original Effective Date with respect to services rendered by such professionals on and after the Original Effective Date, which fees and expenses shall be treated as Trust Operating Expenses.

"**Professional Fee Claim**" means all fees and expenses claimed by Professionals retained by the Debtors, the Committee, and/or the Examiner that were approved on a final basis by a Final Order as of the Original Effective Date. This definition excludes professional fees and expenses incurred by any professionals that may be selected and employed by the Liquidating Trust, the Liquidating Trustee, or the Plan Advisory Committee on and after the Original Effective Date, which fees and expenses shall be treated as Trust Operating Expenses.

"**Proof of Claim**" means a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

"**Pro Rata**" means proportionate, so that, for example, the ratio of the consideration distributed on account of the Determined Distribution Amount of an Allowed Claim to the amount of the Determined Distribution Amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Determined Distribution Amounts of Allowed Claims in such Class of Claims to the amount of all Determined Distribution Amounts of Allowed Claims in that Class.

"**Protected Party**" means any of the Liquidating Trustee (including in his capacity as Plan Administrator and sole officer and director of the Debtors), the Estates, the Liquidating Trust, Reorganized Access Lending, and the Plan Advisory Committee, each in their respective capacities.

"**Reorganized Access Lending**" means Access Lending on and after the Original Effective Date subject to the occurrence of the Modified Effective Date.

"**Reorganized Access Lending Operating Expenses**" means the expenses incurred by Reorganized Access Lending in connection with carrying out the obligations of the Plan Administrator pursuant to the terms of this Modified Plan or the Plan Administrator Agreement as of the Original Effective Date, in each case with the exception of any expenses incurred in connection with the Causes of Action.

"**Restatement Litigation Proceeds**" means the portion of Litigation Proceeds that constitutes net proceeds of any recoveries realized by the Liquidating Trust on claims arising out of events or circumstances that led to the restatement of the financial statements of the Debtors or such restatement itself, as may be agreed to by the Holder of a Special Deficiency Claim and the Liquidating Trustee or determined by final order of the Bankruptcy Court.

"**Reversal Order**" means the order entered by the United States District Court for the District of Delaware on June 16, 2009 reversing the Original Confirmation Order.

"**Scheduled**" means, with respect to any Claim, such Claim is listed on the Schedules.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors with the Bankruptcy Court, pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be amended from time to time.

"**Schroeder Litigation**" means the adversary proceeding entitled *Schroeder v. New Century Holdings, Inc.*, Adversary Proceeding No. 07-51598 (KJC) pending in the Bankruptcy Court.

"**SEC**" means the Securities and Exchange Commission.

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable lien on property in which the Estates have an interest, or that is subject to recoupment or setoff under section 553 of the Bankruptcy Code to the extent of the value of the Holder's interest in the Estates' interest in such property, or to the extent of the amount subject to recoupment or setoff as applicable, as determined by the Bankruptcy Court pursuant to sections 506(a), 553, and/or 1129(b)(2)(A)(i)(II), as applicable.

"**Senior Class HC3b Claim**" means a Class HC3b Claim that arises from an obligation of NCFC that comes within the definition of "Senior Debt" in either of the Capital Trust Indentures.

"**Series A 510(b) Claim**" means any Claim (i) arising from rescission of a purchase or sale of series A Preferred Stock Interests, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code

on account of such Claims and (ii) which, if asserted against NCFC, would be of junior priority to Series A Preferred Stock Interests and of senior priority to Series B Preferred Stock Interests pursuant to section 510(b) of the Bankruptcy Code.

"**Series A Preferred Stock Interests**" means the 9.125% Series A Cumulative Redeemable Preferred Stock of NCFC issued and outstanding immediately before the Original Effective Date.

"**Series B 510(b) Claim**" means any Claim (i) arising from rescission of a purchase or sale of Series B Preferred Stock Interests, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claims and (ii) which, if asserted against NCFC, would be of junior priority to Series B Preferred Stock Interests and of senior priority to Common Stock Interests pursuant to section 510(b) of the Bankruptcy Code.

"**Series B Preferred Stock Interests**" means the 9.75% Series B Cumulative Redeemable Preferred Stock of NCFC issued and outstanding immediately before the Original Effective Date.

"**Settlement Agreement**" means that Settlement Agreement dated July 2009 by and among Alan M. Jacobs, as Liquidating Trustee of the New Century Liquidating Trust, the Liquidating Trustee in his capacity as sole officer and director of New Century Financial Corporation and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and SERP Plan.

"**Settling Parties**" means each member of the New Century Benefit Plan that are beneficiaries under the Settlement Agreement.

"**Special Deficiency Claim**" means any Claim arising under a master repurchase agreement governing the sale and repurchase of mortgage loans by the Debtors to and from DB Structured Products, Inc., provided for in that certain settlement agreement with DB Structured Products, Inc. dated as of August 8, 2007 and approved in the "Order Approving Settlement Agreement with DB Structured Products, Inc. Pursuant to Bankruptcy Rule 9019 and Sections 105(a), 361, 363, 502 and 542 of the Bankruptcy Code" entered on August 21, 2007 [Docket No. 2369], and any other settlement agreement entered into by the Liquidating Trust and approved by Final Order that provides that it gives rise to a claim that is to be treated as a Special Deficiency Claim under this Modified Plan.

"**Status Quo Order**" means the order entered on July 27, 2009 by the Bankruptcy Court preserving the status quo, including maintaining the Liquidating Trust and the Liquidating Trustee pending the entry of a Final Order of the Bankruptcy Court consistent with the Reversal Order.

"**Stock Interests**" means Common Stock Interests, Series A Preferred Stock Interests, and Series B Preferred Stock Interests.

"**Subordination Settlement**" means that Stipulation among Credit Suisse-First Boston Mortgage Capital LLC, General Electric Capital Corporation, Kodiak Funding LP and Kodiak CDO Management LLC Settling the Subordination Statement Claims as approved by order of the Bankruptcy Court dated June 12, 2009.

"**Subordination Statement**" means the pleading that a Holder of a Class HC3b Claim must file with the Bankruptcy Court no later than thirty (30) days after the Original Effective Date in order to assert that such Holder holds a Senior Class HC3b Claim, which pleading must describe with specificity the legal and factual basis for establishing that such Holder holds a

senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures.

"**TRS Holdings**" means New Century TRS Holdings, Inc, a Delaware corporation and a Debtor.

"**Trust Operating Expenses**" means the expenses incurred by the Liquidating Trust in connection with carrying out the obligations of the Liquidating Trust pursuant to the terms of this Modified Plan or the Liquidating Trust Agreement from and after the Original Effective Date, in each case with the exception of any expenses incurred in connection with the Causes of Action.

"**Unsecured Claim**" means any Claim against any Debtor that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or a 510(b) Claim, provided that Unsecured Claims shall include, without limitation, any Claim secured by an interest in property of the Estate to the extent the amount of such Claim exceeds the value, as determined by the Bankruptcy Court pursuant to sections 506(a), 553, and/or 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, of the Holder's interest in the Estate's interest in property of the Estate securing such Claim.

"**U.S. Trustee**" means the Office of the United States Trustee.

"**Warrant Interests**" means unexercised warrants to purchase Common Stock Interests.

B.      **Other Terms.**  The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Modified Plan as a whole and not to any particular article, section or clause contained in this Modified Plan.  A reference to an "Article" refers to an Article of this Modified Plan or the Original Plan, as appropriate.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code.  The rules of

construction set forth in section 102 of the Bankruptcy Code shall apply in construing this Modified Plan.

C.    **Time Periods.**  In computing any period of time prescribed or allowed by this Modified Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any act under this Modified Plan is required to be made or performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

D.    **Exhibits.**  All Exhibits to this Modified Plan are incorporated by reference into and are made a part of this Modified Plan as if set forth in full herein. Exhibits to the Original Plan which may be referred to in this Modified Plan are incorporated by reference into and are made a part of this Modified Plan as if set forth in full herein.

## ARTICLE 2.

## CLASSIFICATION OF CLAIMS AND INTERESTS

A.    **Summary.**  The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to this Modified Plan.

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| [unclassified] | Administrative and Priority Tax Claims against all Debtors. | Unimpaired – not entitled to vote |
| **Claims Against Holding Company Debtors** | | |
| Class HC1 | Class HC1 consists of Priority Claims against NCFC. | Unimpaired - not entitled to vote |
| Class HC2 | Class HC2 consists of Secured Claims against NCFC. | Unimpaired - not entitled to vote |

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| Class HC3a | Class HC3a consists of Special Deficiency Claims against NCFC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC3b | Class HC3b consists of Other Unsecured Claims against NCFC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC4a | Class HC4a consists of Series A Preferred Stock Interests. | Deemed to reject - not entitled to vote |
| Class HC4b | Class HC4b consists of Series A 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC4c | Class HC4c consists of Series B Preferred Stock Interests. | Deemed to reject - not entitled to vote |
| Class HC4d | Class HC4d consists of Series B 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC4e | Class HC4e consists of Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims. | Deemed to reject - not entitled to vote |
| Class HC5 | Class HC5 consists of Priority Claims against TRS Holdings. | Unimpaired - not entitled to vote |
| Class HC6 | Class HC6 consists of Secured Claims against TRS Holdings. | Unimpaired - not entitled to vote |

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Class HC7 | Class HC7 consists of Other Unsecured Claims against TRS Holdings. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC8 | Class HC8 consists of Priority Claims against NC Credit. | Unimpaired - not entitled to vote |
| Class HC9 | Class HC9 consists of Secured Claims against NC Credit. | Unimpaired - not entitled to vote |
| Class HC10a | Class HC10a consists of Special Deficiency Claims against NC Credit. | Impaired - entitled to vote |
| Class HC10b | Class HC10b consists of Other Unsecured Claims against NC Credit. | Impaired - entitled to vote |
| Class HC11 | Class HC11 consists of Priority Claims against NC Residual IV | Unimpaired - not entitled to vote |
| Class HC12 | Class HC12 consists of Secured Claims against NC Residual IV | Unimpaired - not entitled to vote |
| Class HC13 | Class HC13 consists of Other Unsecured Claims against NC Residual IV | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class HC14 | Class HC14 consists of Settling Parties Claims in Settlement of the Schroeder Litigation | Impaired – entitled to vote |
| **Claims Against Operating Debtors** | | |
| Class OP1 | Class OP1 consists of Priority Claims against NCMC. | Unimpaired - not entitled to vote |
| Class OP2 | Class OP2 consists of Secured Claims against NCMC. | Unimpaired - not entitled to vote |

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Class OP3a | Class OP3a consists of Special Deficiency Claims against NCMC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP3b | Class OP3b consists of EPD/Breach Claims against NCMC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP3c | Class OP3c consists of Other Unsecured Claims against NCMC. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP4 | Class OP4 consists of Priority Claims against NC Capital. | Unimpaired - not entitled to vote |
| Class OP5 | Class OP5 consists of Secured Claims against NC Capital. | Unimpaired - not entitled to vote |
| Class OP6a | Class OP6a consists of Special Deficiency Claims against NC Capital. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| Class OP6b | Class OP6b consists of EPD/Breach Claims against NC Capital. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP6c | Class OP6c consists of Other Unsecured Claims against NC Capital. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP7 | Class OP7 consists of Priority Claims against Home123. | Unimpaired - not entitled to vote |
| Class OP8 | Class OP8 consists of Secured Claims against Home123. | Unimpaired - not entitled to vote |
| Class OP9a | Class OP9a consists of Special Deficiency Claims against Home123. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP9b | Class OP9b consists of Other Unsecured Claims against Home123. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| Class OP10 | Class OP10 consists of Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Unimpaired – not entitled to vote |
| Class OP11 | Class OP11 consists of Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, | Unimpaired – not |

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| | NC REO III, NC Residual III, NCM Ventures, and NCoral. | entitled to vote |
| Class OP12 | Class OP12 consists of Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |
| **Claims Against Access Lending** | | |
| Class AL1 | Class AL1 consists of Priority Claims against Access Lending. | Unimpaired – not entitled to vote |
| Class AL2 | Class AL2 consists of Secured Claims against Access Lending. | Unimpaired – not entitled to vote |
| Class AL3 | Class AL3 consists of Other Unsecured Claims against Access Lending. | Impaired – voted to accept the Original Plan. No material adverse impact on potential recovery under Modified Plan so no additional voting will be solicited. |

B.     **Classification.**  The Claims against the Debtors shall be classified as specified below (other than Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 3 below).  Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest is classified by this Modified Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.  Other than the addition of a Class of Creditors to effectuate the implementation of the Settlement Agreement in conjunction with the Schroeder Litigation, the classification of Claims and Interests in the

Modified Plan is the same as the classification of Claims and Interests in the Original Plan. The classification of Claims pursuant to this Modified Plan is as follows:

1. *Class HC1*. Class HC1 consists of Priority Claims against NCFC.

2. *Class HC2*. Class HC2 consists of Secured Claims against NCFC.

3. *Classes HC3a-b*. Class HC3 consists of Unsecured Claims against NCFC, and shall be further classified in separate Classes as follows:

    (a) Class HC3a consists of Special Deficiency Claims against NCFC.

    (b) Class HC3b consists of Other Unsecured Claims against NCFC.

4. *Class HC4*. Class HC4 consists of NCFC Interests and 510(b) Claims against NCFC, and shall be further classified in separate Classes as follows:

    (a) Class HC4a consists of Series A Preferred Stock Interests.

    (b) Class HC4b consists of Series A 510(b) Claims.

    (c) Class HC4c consists of Series B Preferred Stock Interests.

    (d) Class HC4d consists of Series B 510(b) Claims.

    (e) Class HC4e consists of Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims.

5. *Class HC5*. Class HC5 consists of Priority Claims against TRS Holdings.

6. *Class HC6*. Class HC6 consists of Secured Claims against TRS Holdings.

7. *Class HC7*. Class HC7 consists of Other Unsecured Claims against TRS Holdings.

8. *Class HC8*. Class HC8 consists of Priority Claims against NC Credit.

9. *Class HC9*. Class HC9 consists of Secured Claims against NC Credit.