10. *Classes HC10a-b.* Class HC10 consists of Unsecured Claims against NC Credit, and shall be further classified in separate Classes as follows:

(a) Class HC10a consists of Special Deficiency Claims against NC Credit.

(b) Class HC10b consists of Other Unsecured Claims against NC Credit.

11. *Class HC11.* Class HC 1 consists of Priority Claims against NC Residual IV.

12. *Class HC12.* Class HC12 consists of Secured Claims against NC Residual IV.

13. *Class HC13.* Class HC13 consists of Other Unsecured Claims against NC Residual IV.

14. *Class HC14.* Class HC14 consists of Settling Parties Claims in settlement of the Schroeder Litigation.

15. *Class OP1.* Class OP1 consists of Priority Claims against NCMC.

16. *Class OP2.* Class OP2 consists of Secured Claims against NCMC.

17. *Classes OP3a-c.* Class OP3 consists of Unsecured Claims against NCMC, and shall be further classified in separate Classes as follows:

(a) Class OP3a consists of Special Deficiency Claims against NCMC.

(b) Class OP3b consists of EPD/Breach Claims against NCMC.

(c) Class OP3c consists of Other Unsecured Claims against NCMC.

18. *Class OP4.* Class OP4 consists of Priority Claims against NC Capital.

19. *Class OP5.* Class OPS consists of Secured Claims against NC Capital.

20. *Classes OP6a-c.* Class OP6 consists of Unsecured Claims against NC Capital, and shall be further classified in separate Classes as follows:

(a) Class OP6a consists of Special Deficiency Claims against NC Capital.

(b) Class OP6b consists of EPD/Breach Claims against NC Capital.

(c) Class OP6c consists of Other Unsecured Claims against NC Capital.

21. *Class OP7.* Class OP7 consists of Priority Claims against Home123.

22. *Class OP8.* Class OP8 consists of Secured Claims against Home123.

23. *Classes OP9a-b.* Class OP9 consists of Unsecured Claims against Home123, and shall be further classified in separate Classes as follows:

(a) Class OP9a consists of Special Deficiency Claims against Home123.

(b) Class OP9b consists of Other Unsecured Claims against Home123.

24. *Class OP10.* Class OP10 consists of Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NC Coral.

25. *Class OP11.* Class OP11 consists of Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NC Coral.

26. *Class OP12.* Class OP12 consists of Other Unsecured Claims NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NC Coral.

27.    *Class AL1.*    Class AL1 consists of Priority Claims against Access Lending.

28.    *Class AL2.*    Class AL2 consists of Secured Claims against Access Lending.

29.    *Class AL3.*    Class AL3 consists of Other General Claims against Access Lending.

### ARTICLE 3.

### TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Modified Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article 3.

A.    **Administrative Claims.**

1.    **Non-Professional Fee Administrative Claims.**    Each Holder of an Administrative Claim (other than Professional Fee Claims) was required under the Original Plan to file an Administrative Claim Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than August 31, 2008. This Administrative Claim Request Deadline shall govern all Administrative Claims pursuant to this Modified Plan. Nothing herein extends a Bar Date established in the Bar Date Orders or the Administrative Claim Request Deadline established under the Original Plan. The Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in cash, as soon as practicable after the Modified Effective Date, if not previously paid by the Liquidating Trustee or within thirty (30)

days after such Administrative Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, (i) a Holder of an Allowed Administrative Claim (excluding Holders of Professional Fee Claims) may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee and (ii) the Liquidating Trustee was authorized to pay in the ordinary course of business any expenses of administering the Debtors' estates incurred in the ordinary course of business after the Original Effective Date and any such payments made by the Liquidating Trustee subsequent to the Original Effective Date are authorized by the Modified Plan. Without limiting the foregoing, all outstanding fees payable to the U.S. Trustee under 28 U.S.C. § 1930 that have not been paid as of the Original Effective Date shall be paid by the Liquidating Trustee no later than thirty (30) days after the Modified Effective Date or when due in the ordinary course. Any fees payable to the U.S. Trustee under 28 U.S.C. § 1930 arising after the Original Effective Date shall be treated as Trust Operating Expenses and paid by the Liquidating Trustee in the ordinary course of business.

2.     **Professional Fee Claims.** The Liquidating Trustee was authorized to pay Professionals who were entitled to reimbursement or allowance of fees and expenses from the Estates pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Original Effective Date and the date upon which any order awarding fees and expenses became a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases and after application of any

retainer received by such Professionals. All final applications for allowance of a Professional Fee Claim were required to be filed by September 15, 2008. The Bankruptcy Court entered an order allowing Professional Fee Claims in accordance with the terms of the Original Plan on December 22, 2008.

    **B.**     **Priority Tax Claims.** The Liquidating Trustee shall pay, at the Liquidating Trustee's discretion, each Holder of an Allowed Priority Tax Claim either (i) in full in Cash as soon as practicable after the Modified Effective Date or within thirty (30) days after such Priority Tax Claim becomes an Allowed Claim or (ii) over a period ending not later than five (5) years after the Petition Date, with deferred Cash payments in equal amounts on a quarterly basis in an aggregate amount equal to any such Allowed Priority Tax Claim, together with interest thereon (if and so required) at the legal rate required for such Claim in chapter 11 cases. All Allowed Priority Tax Claims which are not due and payable on or before the Original Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Liquidating Trustee may prepay any Allowed Priority Tax Claim at any time after the Original Effective Date without any penalty or charge. Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed as of the Petition Date by confirmation of this Modified Plan.

**ARTICLE 4.**

**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

    As required by the Bankruptcy Code, this Modified Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. This Modified Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and this Modified Plan sets forth the treatment each Class will receive.

A.    **Priority Claims Against All Debtors (Classes HC1, HC5, HC8, HC11, OP1, OP4, OP7, OP10, and AL1).** Each of Classes HC1, HC5, HC8, HC11, OP1, OP4, OP7, OP10, and AL1, which are unimpaired, consists of all Allowed Priority Claims against a particular Debtor. Unless the Holder of an Allowed Priority Claim and the Liquidating Trustee, including in his capacity as Plan Administrator, agree to a different treatment, the Liquidating Trustee was authorized to pay each such Holder of an Allowed Priority Claim, in full, in Cash, without interest as soon as practicable after the Original Effective Date and, if not paid by the Modified Effective Date, as soon as practicable after the Modified Effective Date.

B.    **Secured Claims Against All Debtors (Classes HC2, HC6, HC9, HC12, OP2, OP5, OP8, OP11, and AL2).** Each of Classes HC2, HC6, HC9, HC12, OP2, OP5, OP8, OP11, and AL2, which are unimpaired, consists of all Allowed Secured Claims against a particular Debtor. At the sole option of the Liquidating Trustee, (i) Allowed Secured Claims will be unaltered and, subject to the requirements of section 1124(2) of the Bankruptcy Code, as of the Original Effective Date, the legal, equitable, and contractual rights of the Holders of Allowed Secured Claims shall be reinstated in full, or (ii) each Holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, the Holder's Allowed Secured Claim (a) Cash in the amount of the Allowed Secured Claim on the later of the initial distribution date under this Modified Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as practicable, (b) the property of the estate which constitutes collateral for such Allowed Secured Claim on the later of the initial distribution date under this Modified Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as practicable, or (c) such other treatment as may be agreed to by the Liquidating Trustee, including in his capacity as Plan Administrator and such Holder.

## C. Class HC3: Unsecured Claims Against NCFC.

1. **Class HC3a: Special Deficiency Claims against NCFC.** Class HC3a, which is impaired, consists of all Allowed Special Deficiency Claims against NCFC. Each Holder of an Allowed Class HC3a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Holding Company Debtor Portion of the Litigation Proceeds or (ii) the Holding Company Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.C.1) divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC3a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Holding Company Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Holding Company Debtor Portion of the Restatement Litigation Proceeds. The election to be made by the Holder to share in either the (i) Holding Company Debtor Portion of the Litigation Proceeds or (ii) Holding Company Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Original Effective Date if such Claim was an Allowed Claim prior to the Original Effective Date, on or before the Modified Effective Date if such Claim became an Allowed Claim after the Original Effective Date, or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely

election as required above, such Holder shall be deemed to have elected to share in the Holding Company Debtor Portion of the Litigation Proceeds.

2. **Class HC3b: Other Unsecured Claims against NCFC.** Class HC3b, which is impaired, consists of all Allowed Other Unsecured Claims against NCFC. Subject to Article 4.C.3 and Article 9.G of this Modified Plan, each Holder of an Allowed Class HC3b Claim shall receive (i) its Pro Rata share of the Holding Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC3b Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol, (ii) the Intercompany Claim Protocol and (iii) with respect to Holders of Capital Trust Claims' to Article 4.C.3 of this Modified Plan.

3. Senior Claim Procedure.

(a) Certain Holders of Class HC3b Claims have asserted a Senior Class HC3b Claim, which dispute has been settled pursuant to the terms of the Subordination Settlement.

(b) Any distribution that would otherwise be made on account of Allowed Capital Trust Claims in accordance with Article 9 of this Modified Plan shall be distributed in accordance with the terms of the Subordination Settlement;

provided, however, that prior to turning over any such distributions, pursuant to the terms of the Subordination Settlement, the Liquidating Trustee shall first pay to the Indenture Trustee out of such distributions (i) the balance of any Indenture Trustee Expenses previously incurred, plus (ii) the amount of $100,000 to be held by the Indenture Trustee in reserve (the "Future Expense Reserve") for payment of future Indenture Trustee Expenses, all of which Indenture Trustee Expenses are subject to the Indenture Trustee's charging lien. The Future Expense Reserve shall only be funded from any distributions that would otherwise be made on account of Allowed Capital Trust Claims and not from any other Assets. In no event shall the Indenture Trustee Expenses be paid from any Assets except from the Future Expense Reserve and from any distributions that would otherwise be made on account of Allowed Capital Trust Claims. All amounts owing to the Indenture Trustee for its Indenture Trustee Expenses or payable to the Future Expense Reserve shall be paid prior to any distribution to any Holder of a Senior Class HC3b Claim and prior to any distribution to any Holder of a Capital Trust Claim, due to its Indenture Trustee charging lien. Upon the earlier of the (i) termination of the Indenture Trustee's role in these (or related) proceedings and (ii) final distribution to Holders of Capital Trust Claims, any amounts remaining in the Future Expense Reserve shall be distributed in accordance with the terms of the Subordination Settlement

(c) If a Debtor(s) other than NCFC is jointly and/or severally liable with NCFC for the amount of a Senior Class HC3b Claim and the Holder of a Senior Class HC3b Claim holds an Allowed Unsecured Claim(s) against such

Debtor(s) in respect of such liability, any distribution that the Holder receives on account of such Claims shall be included in determining whether the Holder's Senior Class HC3b Claim has been paid in full. If a Senior Class HC3b Claim has been paid in full, any distributions that would have been paid on account of such Claim pursuant to the terms of the Subordination Settlement, shall be paid first in accordance with the terms of the Subordination Settlement and then Pro Rata to Holders of Senior Class HC3b Claims, if any, that remain unpaid. If all Holders of Senior Class HC3b Claims (if any) have been paid in full on account of their Senior Class HC3b Claims, (i) any additional amounts distributed to Holders of Allowed Class HC3b Claims shall be distributed to the Indenture Trustee for the account of Holders of Allowed Capital Trust Claims on account of their Capital Trust Claims in accordance with the terms of the Subordination Settlement and this Modified Plan's treatment of Allowed Class HC3b Claims, but subject to the Indenture Trustee's charging lien for payment of its Indenture Trustee Expenses, and (ii) Holders of Allowed Capital Trust Claims shall be subrogated to the distributions that the Holders of Senior Class HC3b Claims would have received on account of their Allowed Unsecured Claims against the Debtors if such Holder's Senior Class HC3b Claims had not been paid in full.

**D.**    **Class 4: NCFC Interests.**

      1.     **Class HC4a: Series A Preferred Stock Interests.** Class HC4a, which is impaired, consists of all Series A Preferred Stock Interests. Holders of Interests in Class HC4a shall receive no distribution or dividend on account of such Interests. Subject to the provisions of Article 9.K herein, the entry of the Modified Confirmation Order shall

act as an order approving and effecting the cancellation as of the Original Effective Date of all shares of Series A Preferred Stock Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to Series A Preferred Stock Interests) outstanding immediately prior to the Original Effective Date without any conversion thereof or distribution with respect thereto.

2.      **Class HC4b: Series A 510(b) Claims.**  Class HC4b, which is impaired, consists of all Series A 510(b) Claims.  Holders of Claims in Class HC4b shall receive no distribution on account of such Claims under this Modified Plan.

3.      **Class HC4c: Series B Preferred Stock Interests.**  Class HC4c which is impaired, consists of all Series B Preferred Stock Interests.  Holders of Interests in Class HC4c shall receive no distribution or dividend on account of such Interests.  Subject to the provisions of Article 9.K herein, the entry of the Modified Confirmation Order shall act as an order approving and effecting the cancellation as of the Original Effective Date of all shares of Series B Preferred Stock Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to Series B Preferred Stock Interests) outstanding immediately prior to the Original Effective Date without any conversion thereof or distribution with respect thereto.

4.      **Class HC4d: Series B 510(b) Claims.**  Class HC4d, which is impaired, consists of all Series B 510(b) Claims.  Holders of Claims in Class HC4d shall receive no distribution on account of such Claims under this Modified Plan.

5.      **Class HC4e: Common Stock Interests, Option Interests, Warrant Interests, and Common Stock 510(b) Claims.**  Class HC4e, which is impaired, consists of all Common Stock Interests, all Option Interests, all Warrant Interests, and all

Common Stock 510(b) Claims. Holders of Interests or Claims in Class HC4e shall receive no distribution or dividend on account of such Interests or Claims. Subject to the provisions of Article 9.K herein, the entry of the Modified Confirmation Order shall act as an order approving and effecting the cancellation as of the Original Effective Date of all shares of Common Stock Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to Common Stock Interests) outstanding immediately prior to the Original Effective Date without any conversion thereof or distribution with respect thereto.

E.    **Class HC7:  Other Unsecured Claims against TRS Holdings.**  Class HC7, which is impaired, consists of all Allowed Other Unsecured Claims against TRS Holdings. Each Holder of an Allowed Class HC7 Claim shall receive (i) its Pro Rata share of the Holding Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7, and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC7 Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

F.    **Class HC10:  Unsecured Claims Against NC Credit.**

1.    **Class HC10a:  Special Deficiency Claims against NC Credit.**  Class HC10a, which is impaired, consists of all Allowed Special Deficiency Claims against NC Credit. Each Holder of an Allowed Class HC10a Claim shall receive its Pro Rata share

46

of the NC Credit Portion of the Litigation Proceeds based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.F.1) divided by the sum of the Determined Distribution Amounts of all Allowed Class HC10 Claims. The Determined Distribution Amount for each Allowed Class HC10a Claim shall be 115% of the allowed amount of such Claim.

2. **Class HC10b: Other Unsecured Claims against NC Credit.** Class HC10b, which is impaired, consists of all Allowed Other Unsecured Claims against NC Credit. Each Holder of an Allowed Class HC10b Claim shall receive (i) its Pro Rata share of the NC Credit Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC10 Claims, and (ii) its Pro Rata share of the NC Credit Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC10b Claims. The Determined Distribution Amount for each Allowed Class HC10b Claim shall be 100% of the allowed amount of such Claim subject to the Intercompany Claim Protocol.

G. **Class HC13: Other Unsecured Claims against NC Residual IV.** Class HC13, which is impaired, consists of all Allowed Other Unsecured Claims against NC Residual IV. Each Holder of an Allowed Class HC13 Claim shall receive (i) its Pro Rata share of the Holding Company Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3, HC7, and HC13 Claims, and (ii) its Pro Rata share of the Holding Company Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class HC3b, HC7,

and HC13 Claims. The Determined Distribution Amount for each Allowed Class HC13 Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

**H.      Class HC14:  Settling Parties Claims in the Schroeder Litigation.**  Class HC14, which is impaired, shall consist of all Allowed Settling Parties Claims. Each holder of an Allowed HC14 Claim shall receive its Pro Rata share of the Settlement Payment (as defined in the Settlement Agreement). Allowed HC14 Claims shall receive its pro rata share of the Settlement Payment under the terms of the Settlement Agreement in full and complete settlement of any and all claims it has under the New Century Benefit Plans against the Debtors and the Liquidating Trust and shall not be entitled to any further distributions under the Original Plan, this Modified Plan or from the Liquidating Trust.

**I.      Class OP3:  Unsecured Claims Against NCMC.**

1.      **Class OP3a:  Special Deficiency Claims against NCMC.**  Class OP3a, which is impaired, consists of all Allowed Special Deficiency Claims against NCMC. Each Holder of an Allowed Class OP3a Claim shall receive its Pro Rata share, at the election or the Holder, of (i) the Operating Debtor Portion of the Litigation Proceeds or (ii) the Operating Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.I.1) divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims. The Determined Distribution Amount for each Allowed Class OP3a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share

in the Operating Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Restatement Litigation Proceeds. The election to be made by the Holder to share in either the (i) Operating Debtor Portion of the Litigation Proceeds or (ii) Operating Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Original Effective Date, if such Claim was an Allowed Claim prior to the Original Effective Date, on or before the Modified Effective Date if such Claim became an Allowed Claim after the Original Effective Date, or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Operating Debtor Portion of the Litigation Proceeds.

2. **Class OP3b: EPD/Breach Claims against NCMC.** Class OP3b, which is impaired, consists of all Allowed EPD Breach Claims against NCMC. Each Holder of an Allowed Class OP3b Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount of each Allowed Class

OP3b Claim shall be 100% of the damage amount determined for such Claim in accordance with the EPD/Breach Claim Protocol, a copy of which is attached hereto as Exhibit B.

3.    **Class OP3c:  Other Unsecured Claims against NCMC.**  Class OP3c, which is impaired, consists of all Allowed Other Unsecured Claims against NCMC. Each Holder of an Allowed Class OP3c Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of All Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims.  The Determined Distribution Amount for each Allowed Class OP3c Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

**J.    Class OP6:  Unsecured Claims Against NC Capital.**

1.    **Class OP6a:  Special Deficiency Claims against NC Capital.**  Class OP6a, which is impaired, consists of all Allowed Special Deficiency Claims against NC Capital. Each Holder of an Allowed Class OP6a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Operating Debtor Portion of the Litigation Proceeds or (ii) the Operating Debtor Portion of the Restatement Litigation Proceeds, in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.J.1) divided by the sum of the Determined Distribution Amounts of all

50

Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims. The Determined Distribution Amount for each Allowed Class OP6a Claim shall be, based on the election made by the Holder of such Claim, (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Restatement Litigation Proceeds. The election to be made by the Holder to share in either the (i) Operating Debtor Portion of the Litigation Proceeds or (ii) Operating Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Original Effective Date, if such Claim was an Allowed Claim prior to the Original Effective Date, on or before the Modified Effective Date if such Claim became an Allowed Claim after the Original Effective Date, or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely election, such Holder shall be deemed to have elected to share in the Operating Debtor Portion of the Litigation Proceeds.

2.     **Class OP6b: EPD/Breach Claims against NC Capital.** Class OP6b, which is impaired, consists of all Allowed EPD Breach Claims against NC Capital. Each Holder of an Allowed Class OP6b Claim shall receive (i) its Pro Rata share of the NC Capital EPD/Breach Claimant Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Class OP6b Claims, and (ii) its Pro Rata share of

the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount of each Allowed Class OP6b Claim shall be 100% of the damage amount determined for such Claim in accordance with the EPD/Breach Claim Protocol for purposes of receiving a Pro Rata share of the NC Capital EPD/Breach Claimant Portion of the Litigation Proceeds and shall be 50% of the damage amount determined for such Claim in accordance with the EPD/Breach Claim Protocol for purposes of receiving a distribution of its Pro Rata share of the Operating Debtor Net Distributable Assets.

3.     **Class OP6c:   Other Unsecured Claims against NC Capital.** Class OP6c, which is impaired, consists of all Allowed Other Unsecured Claims against NC Capital. Each Holder of an Allowed Class OP6c Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount for each Allowed Class OP6c Claim shall be 100% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

K.     **Class OP9:  Unsecured Claims Against Home123.**

1. **Class OP9a: Special Deficiency Claims against Home123.** Class OP9a, which is impaired, consists of all Allowed Special Deficiency Claims against Home123. Each Holder of an Allowed Class OP9a Claim shall receive its Pro Rata share, at the election of the Holder, of (i) the Operating Debtor Portion of the Litigation Proceeds or (ii) the Operating Debtor Portion of the Restatement Litigation Proceeds in either case based on the applicable Determined Distribution Amount of such Claim (as set forth in this Article 4.K.1) divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims. The Determined Distribution Amount for each Allowed Class OP9a Claim shall be, based on the election made by the Holder of such Claim (a) 115% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Litigation Proceeds or (b) 130% of the allowed amount of such Claim subject to the Multi-Debtor Claim Protocol to the extent the Holder elects to share in the Operating Debtor Portion of the Restatement Litigation Proceeds. The election to be made by the Holder to share in either the (i) Operating Debtor Portion of the Litigation Proceeds or (ii) Operating Debtor Portion of the Restatement Litigation Proceeds shall be irrevocable and shall be made in writing and submitted to the Liquidating Trustee on or before the Original Effective Date, if such Claim was an Allowed Claim prior to the Original Effective Date, on or before the Modified Effective Date if such Claim became an Allowed Claim after the Original Effective Date, or such other date as may be agreed to in writing by such Holder and the Liquidating Trustee. In the event any Holder fails to make a timely election, such Holder

shall be deemed to have elected to share in the Operating Debtor Portion of the Litigation Proceeds.

2.    **Class OP9b:  Other Unsecured Claims against Home123.**  Class OP9b, which is impaired, consists of all Allowed Other Unsecured Claims against Home123. Each Holder of an Allowed Class OP9b Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims.  The Determined Distribution Amount for each Allowed Class OP9b Claim shall be 25% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

L.    **Class OP12:  Other Unsecured Claims Against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral.**  Class OP12, which is impaired, consists of all Allowed Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral. Each Holder of an Allowed Class OP12 Claim shall receive (i) its Pro Rata share of the Operating Debtor Portion of the Litigation Proceeds, based on the Determined Distribution Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP6b Claims, and (ii) its Pro Rata share of the Operating Debtor Net Distributable Assets, based on the Determined Distribution

Amount of such Claim divided by the sum of the Determined Distribution Amounts of all Allowed Operating Debtor Unsecured Claims other than Class OP3a, OP6a, and OP9a Claims. The Determined Distribution Amount for each Allowed Class OP12 Claim shall be 25% of the allowed amount of such Claim subject to (i) the Multi-Debtor Claim Protocol and (ii) the Intercompany Claim Protocol.

M. **Class AL3: Other Unsecured Claims Against Access Lending.** Class AL3, which is impaired, consists of all Allowed Other Unsecured Claims against Access Lending. Each Holder of an Allowed Class AL3 Claim shall receive its Pro Rata share of the Access Lending Net Distributable Assets, based on Allowed Class AL3 Claims subject to the following adjustments: (i) until Holders of Allowed Other AL3 Claims and the Holder of the Goldman AL3 Claim receive Cash equal to 30% of the allowed amounts of their Class AL3 Claims on account of such Claims, the Holder of the NCMC AL1 Claim shall receive Pro Rata distributions as though the NCMC AL3 Claim was an Allowed Class AL3 Claim in the amount of $2,383,919.92, and (ii) after Holders of Allowed Other AL3 Claims and the Holder of the Goldman AL3 Claim have received Cash equal to 30% of the allowed amount of their Class AL3 Claims on account of such Claims, the NCMC AL3 Claim shall receive Pro Rata distributions based on the NCMC AL3 Claim being an Allowed Class AL3 Claim in the amount of $3,973,199.86, and no further distributions shall be made to the Holder of the Goldman AL3 Claim on account of such Claim. The Multi-Debtor Protocol and the Intercompany Claim Protocol do not apply to Class AL3 Claims.

# ARTICLE 5.

## ACCEPTANCE OR REJECTION
## OF THIS MODIFIED PLAN

A.    **Impaired Classes of Claims that Voted to Accept the Original Plan.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Modified Plan, the Classes set forth in the following table were entitled to vote to accept or reject the Original Plan and in fact voted to accept the Original Plan.  The Bankruptcy Court has entered an order providing that solicitation of these Classes is not required in accordance with Section 1127 of the Bankruptcy Code to consider confirmation of the Modified Plan in accordance with section 1126 of the Bankruptcy Code.  Such Classes will be deemed to have accepted the Modified Plan as a result of their vote in favor of the Original Plan:

| Class | Description |
|---|---|
| Class HC3a | Special Deficiency Claims against NCFC |
| Class HC3b[1] | Other Unsecured Claims Against NCFC |
| Class HC7 | Other Unsecured Claims Against TRS Holdings |
| Class HC13 | Other Unsecured Claims against NC Residual IV |
| Class OP3a | Special Deficiency Claims against NCMC |
| Class OP3b | EPD/Breach Claims against NCMC |
| Class OP3c | Other Unsecured Claims against NCMC |
| Class OP6a | Special Deficiency Claims against NC Capital |
| Class OP6b | EPD/Breach Claims against NC Capital |
| Class OP6c | Other Unsecured Claims against NC Capital |
| Class OP9a | Special Deficiency Claims against Home123 |
| Class OP9b | Other Unsecured Claims against Home123 |
| Class OP12 | Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class AL3 | Other Unsecured Claims against Access Lending |

---

[1]    Class HC3b voted to reject the Original Plan.  However, the vast majority of Class HC3b Claimants that voted against the Original Plan are Settling Parties under the terms of this Modified Plan.  When all Settling Parties are removed from the vote tabulation for Class HC3b on the Original Plan, Class HC3b would be deemed to have accepted the Original Plan.  The Settling Parties are now classified as Class HC14 in this Modified Plan and are entitled to vote to accept or reject this Modified Plan.

**B.** **Impaired Classes of Claims Entitled to Vote on this Modified Plan.** Except otherwise provided in the order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Modified Plan, the Classes set forth in the following table are impaired and shall be entitled to vote to accept or reject this Modified Plan:

| Class | Description |
|---|---|
| Class HC10a | Special Deficiency Claims against NC Credit |
| Class HC10b | Other Unsecured Claims against NC Credit |
| Class HC14 | Settling Parties Claims |

Each of Classes HC10a, HC10b, and HC14 shall be considered a separate Class for purposes of voting to accept or reject this Modified Plan.

**C.** **Classes Deemed to Accept the Modified Plan.** The Classes set forth in the following table are unimpaired and shall be deemed to accept this Modified Plan and were deemed to have accepted the Original Plan:

| Class | Description |
|---|---|
| Class HC1 | Priority Claims against NCFC |
| Class HC2 | Secured Claims against NCFC |
| Class HC5 | Priority Claims against TRS Holdings |
| Class HC6 | Secured Claims against TRS Holdings |
| Class HC8 | Priority Claims against NC Credit |
| Class HC9 | Secured Claims against NC Credit |
| Class HC11 | Priority Claim against NC Residual IV |
| Class HC12 | Secured Claims against NC Residual IV |
| Class OP1 | Priority Claims against NCMC |
| Class OP2 | Secured Claims against NCMC |
| Class OP4 | Priority Claims against NC Capital |
| Class OP5 | Secured Claims against NC Capital |
| Class OP7 | Priority Claims against Home123 |
| Class OP8 | Secured Claims against Home123 |
| Class OP10 | Priority Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral |
| Class OP11 | Secured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, |

| Class | Description |
|---|---|
| | NCM Ventures, and NCoral |
| Class AL1 | Priority Claims against Access Lending |
| Class AL2 | Secured Claims against Access Lending |

Pursuant to section 1126(f) of the Bankruptcy Code, Classes HC1, HC2, HC5, HC6, HC8, HC9, HC11, HC12, OP1, OP2, OP4, OP5, OP7, OP8, OP10, OP11, AL1, and AL2 are conclusively presumed to have accepted this Modified Plan, and the votes of Holders of Claims in such Classes therefore will not be solicited for the Modified Plan and were not solicited for the Original Plan. If and to the extent any Class identified as being unimpaired is impaired (whether as a result of the terms of this Modified Plan or any modification or amendment thereto), such Class shall be entitled to vote to accept or reject this Modified Plan.

**D.** **Classes Deemed to Reject this Modified Plan.** Holders of Claims in the Classes set forth in the following table are not entitled to receive or retain any property under this Modified Plan and were not entitled to receive or retain property under the Original Plan on account of such Claims and Interests:

| Class | Description |
|---|---|
| Class HC4a | Series A Preferred Stock Interests |
| Class HC4b | Series A 510(b) Claims |
| Class HC4c | Series B Preferred Stock Interests |
| Class HC4d | Series B 510(b) Claims |
| Class HC4e | Common Stock Interests and Common Stock 510(b) Claims |

Pursuant to section 1126(g) of the Bankruptcy Code, Classes HC4a, HC4b, HC4c, HC4d, and HC4e are impaired and are conclusively presumed to have rejected this Modified Plan, and the votes of Holders of Claims and Interests in such Classes therefore will not be solicited for this Modified Plan and were not solicited for the Original Plan.

E.    **Nonconsensual Confirmation.** As set forth in Article 16 hereof, if any impaired Class fails to accept this Modified Plan, the Plan Proponents of the Modified Plan intend to request that the Bankruptcy Court confirm this Modified Plan as a Cramdown Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to that Class.

F.    **Removal of Debtors.** If this Modified Plan cannot be confirmed with respect to one or more Debtors, the Plan Proponents of the Modified Plan may remove such Debtor(s) from this Modified Plan. In such event, the Classes pertaining to such Debtor(s) shall be removed from this Modified Plan, and the Modified Plan shall omit any treatment of the assets and liabilities of such Debtor(s). The removal of any Debtor from this Modified Plan shall not affect this Modified Plan with respect to any other Debtor except as set forth in Article 10.I of this Modified Plan.

## ARTICLE 6.

### THE MULTI-DEBTOR CLAIM PROTOCOL FOR TREATMENT OF CLAIMS AGAINST MULTIPLE DEBTORS

A.    **Allowed Unsecured Claims for Which More than One Holding Company Debtor Is Jointly and/or Severally Liable.** Where a Creditor holds Allowed Holding Company Debtor Unsecured Claims for which more than one Holding Company Debtor is jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of one of its Allowed Holding Company Debtor Unsecured Claims in the amount of the highest Determined Distribution Amount provided for in the Classes in which the Creditor's Allowed Holding Company Debtor Unsecured Claims are classified and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Holding Company Debtor Unsecured Claims.

**B.     Allowed Unsecured Claims for Which More than One Operating Debtor Is Jointly and/or Severally Liable.** Where a Creditor holds Allowed Operating Debtor Unsecured Claims for which more than one Operating Debtor is jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of one its Allowed Operating Debtor Unsecured Claims in the amount of the highest Determined Distribution Amount provided for in the Classes in which the Creditor's Allowed Operating Debtor Unsecured Claims are classified and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Operating Debtor Unsecured Claims; provided however, that where a Creditor holds Allowed Operating Debtor Unsecured Claims, other than Allowed Class OP3a Claims, Allowed OP6a Claims, and Allowed Class OP9a Claims, for which each of NCMC, NC Capital, and Home123 are jointly and/or severally liable, such Creditor shall be (i) assigned a Determined Distribution Amount on account of its Allowed Unsecured Claim against NCMC of 130% of the amount of such Allowed Unsecured Claim and (ii) assigned a Determined Distribution Amount of 0% of the amount of all of its other Allowed Operating Debtor Unsecured Claims.

**C.     Separate Application to Debtor Groups.** The adjustment of Determined Distribution Amounts of a particular Creditor's Allowed Unsecured Claims against Debtors in one Debtor Group pursuant to Articles 6.A and 6.B of this Modified Plan does not affect the Determined Distribution Amounts of such Creditor's Allowed Unsecured Claims, if any, against Debtors in another Debtor Group.

**D.     Inapplicable to Claims Against Access Lending or NC Credit.** The Multi-Debtor Claim Protocol does not apply to Claims against Access Lending or NC Credit.

**E.    Inapplicable to Intercompany Claims.**  The Multi-Debtor Claim Protocol does not apply to Intercompany Claims.

## ARTICLE 7.

### THE INTERCOMPANY PROTOCOL
### FOR TREATMENT OF INTERCOMPANY CLAIMS

**A.    Claims of Holding Company Debtors Against Other Holding Company Debtors.**  The Determined Distribution Amount for each Allowed Claim held by a Holding Company Debtor against another Holding Company Debtor shall be 0% of the allowed amount of such Claim and, therefore, no distribution will be made under this Modified Plan on account of such Claim.

**B.    Claims of Operating Debtors Against Other Operating Debtors.**  The Determined Distribution Amount for each Allowed Claim held by an Operating Debtor against another Operating Debtor shall be 0% of the allowed amount of such Claim and, therefore, no distribution will be made under this Modified Plan on account of such Claim.

**C.    Claims of Holding Company Debtors and NC Credit Against Operating Debtors.**  The Determined Distribution Amount for each Allowed Claim held by a Holding Company Debtor or NC Credit against an Operating Debtor shall be 50% of the allowed amount of such Claim; provided, however, that any recovery on an Allowed Claim held by a Holding Company Debtor or NC Credit against an Operating Debtor shall be limited to the amount that would be distributed on account of such Claim if the Determined Distribution Amounts for Allowed Claims in Classes OP6b, OP9b, and OP12 were 100% of the allowed amount of Claims in those Classes.

**D.    Claims of Operating Debtors and NC Credit Against Holding Company Debtors.**  The Determined Distribution Amount for each Allowed Claim held by an Operating

Debtor and NC Credit against a Holding Company Debtor shall be 100% of the allowed amount of such Claim.

## ARTICLE 8.

## MEANS OF IMPLEMENTING THIS MODIFIED PLAN

A. **Implementation of this Modified Plan.** The Plan Proponents of the Modified Plan propose that the Modified Plan be implemented and consummated through the means contemplated by sections 1123(a)(5)(B), (D), (E), (F) and (G) and 1123(b)(2), (b)(3) and (b)(4) of the Bankruptcy Code on and after the Modified Effective Date, provided, however, as a result of the Confirmation of the Original Plan and the lack of a stay of the implementation of the Original Plan, certain acts have occurred on or after the Original Effective Date pursuant to the terms of the Original Plan that will be incorporated and adopted pursuant to the terms of this Modified Plan. To the extent not inconsistent with the Reversal Order or this Modified Plan, all actions taken by the Liquidating Trustee and the Plan Administrator pursuant to the Original Plan will be deemed to have occurred on or after the Original Effective Date and be authorized, incorporated and adopted by this Modified Plan.

B. **Corporate Action.** (a) On the Original Effective Date, the matters under the Original Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to the Original Plan, which shall be adopted in this Modified Plan, shall be deemed to have been authorized by the Original Confirmation Order and adopted by the Modified Confirmation Order and to have occurred and remain in effect from and after the Original Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries. The officers

and directors of the Debtors as of the Original Effective Date ceased to serve immediately after the Original Effective Date.

(b) On the Modified Effective Date, the matters under this Modified Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Modified Plan shall be authorized by the Liquidating Trustee as sole officer and director of each of the Debtors, pursuant to the terms of the Status Quo Order or the Modified Confirmation Order and to have occurred and remain in full force and effect from and after the Modified Effective Date without any further actions by the Bankruptcy Court.

C. **Dissolution of Debtors Other than Access Lending.** Immediately after the Original Effective Date or the Modified Effective Date, as appropriate, the Liquidating Trustee shall be authorized to take, in his sole and absolute discretion, all actions reasonably necessary to dissolve the Debtors (other than Access Lending) and their subsidiaries under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; provided, however, (i) after all distributions have been made to Holders of Allowed Claims against NCFC, the Liquidating Trustee shall file a certificate of dissolution in the applicable state of incorporation for NCFC and NCFC shall dissolve and cease to exist; (ii) that the Liquidating Trustee shall not be compelled to dissolve any of the Debtors (other than NCFC) or their subsidiaries if to do so would unduly burden the Liquidating Trust; and (iii) no assets shall revest in the Debtors (other than Access Lending). Other than with respect to NCFC, which shall be

dissolved as set forth in this Article 8.C, the Liquidating Trustee shall have no liability for using his discretion to dissolve or not dissolve any of the Debtors or their subsidiaries. Pursuant to the terms of the Status Quo Order, the Liquidating Trustee shall continue to act as sole officer and director of each of the Debtors and shall be authorized to prepare, propose and implement this Modified Plan.

**D.** **Dissolution of the Committee.** On the Original Effective Date, the Committee dissolved automatically, whereupon its members, Professionals and agents were released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases, all of which shall remain in full force and effect according to their terms and such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Fee Claims; (ii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iii) any motions or other actions seeking enforcement or implementation of the provisions of the Original Plan or the Original Confirmation Order.

**E.** **Vesting of Assets in Liquidating Trust; Assumption of Plan Obligations.**

1. *Distribution to Liquidating Trust.* On the Original Effective Date, the Debtors other than Access Lending distributed and were deemed for all purposes to have distributed all Assets of the Debtors, including Access Lending Interests but excluding the Assets of Access Lending, for the benefit of (i) the Holders of Holding Company Debtor Unsecured Claims, (ii) the Holders of NC Credit Unsecured Claims and (iii) the Holders of Operating Debtor Unsecured Claims, whether or not such Claims are Allowed

64

Claims as of the Original Effective Date, to the Liquidating Trust. Since the transfer of the Liquidating Trust Assets, the Debtors have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust. In accordance with the terms of the Status Quo Order, the Bankruptcy Court continued the existence of the Liquidating Trust and preserved the transfer of all the Debtors' Assets to the Liquidating Trust pending further order of the Bankruptcy Court on the Reversal Order. Under the terms of this Modified Plan and the Modified Confirmation Order, the transfer of the Assets of the Debtors to the Liquidating Trust shall be adopted and confirmed as of the Original Effective Date.

2. *Transfer of Assets.* On the Original Effective Date and subject to the Status Quo Order and the Modified Confirmation Order, the Liquidating Trust Assets, as described in paragraph (E)(I) above, were conveyed directly by the Debtors other than Access Lending to the Liquidating Trust on behalf of the beneficiaries thereof.

3. *Assumption of Original Plan Obligations.* Effective as of the Original Effective Date, all of the Debtors' rights and obligations with respect to each A/P/S Claim (other than A/P/S Claims against Access Lending) and all other rights and obligations of the Debtors (other than Access Lending) set forth in the Original Plan were assigned to and assumed by the Liquidating Trust, which assumption and assignment shall continue to be effective as of the Original Effective Date under this Modified Plan. The Liquidating Trust shall continue to be deemed to have assumed and be responsible for any A/P/S Claims that arose during the period from the Original Effective Date through the Modified Effective Date or thereafter as if such obligations existed on the

Original Effective Date but only to the extent such expenses would be valid Trust Operating Expenses under the Original Plan.

4.  *Treatment of Transfer of Assets.*  For federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims, the Holders of NC Credit Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) shall treat the transfer of the Liquidating Trust Assets, which term, for purposes of this Article 8.E.4 only, shall include the Causes of Action (other than Access Lending Causes of Action), to the Liquidating Trust in accordance with Article 8.E.1 above, as:

(a)    first, a transfer of such Assets to the Holders of Holding Company Debtor Unsecured Claims, the Holders of NC Credit Unsecured Claims and Holders of Operating Debtor Unsecured Claims, whether or not such Claims are Allowed as of the Original Effective Date, with each such Holder receiving an undivided interest in the specific Assets, the liquidation proceeds of which such Holder is entitled to share in pursuant to Article 4 of this Modified Plan, having a value that equals, as nearly as possible, to the amount such Holder would receive if, on the Original Effective Date, all Disputed Claims were treated as Allowed Claims, and all Assets were liquidated, converted to cash and distributed to Holders of Allowed Unsecured Claims in accordance with the Modified Plan; and

(b)    second, a transfer to the Liquidating Trust by each such Holder of the undivided interest in that portion of the Liquidating Trust Assets such Holder was deemed to receive pursuant to subparagraph (a), above, in exchange for a beneficial interest in the Liquidating Trust. Each such Holder, as a holder of a

beneficial interest in the Liquidating Trust, shall be treated as the grantor and owner of the undivided interest of that portion of the Liquidating Trust Assets such Holder was deemed to transfer to the Liquidating Trust pursuant to this subparagraph (b) as of the Original Effective Date.

**F.    Liquidating Trust.**

1.    *Formation of Liquidating Trust.*  The Liquidating Trust was formed on the Original Effective Date in accordance with the terms of the Original Plan and is subject to the provisions of the Status Quo Order pending further order of the Bankruptcy Court. The Liquidating Trust shall continue to exist and operate in accordance with this Modified Plan. The Holders of Holding Company Debtor Unsecured Claims, the Holders of the NC Credit Unsecured Claims and the Holders of Operating Debtor Unsecured Claims shall be the sole beneficiaries of the Liquidating Trust. Holders of Unsecured Claims against Access Lending shall not be beneficiaries of the Liquidating Trust.

2.    *Liquidating Trust Agreement.*  The Liquidating Trust Agreement was executed on the Original Effective Date and contains provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Liquidating Trust as a liquidating trust for federal income tax purposes. The Liquidating Trust Agreement shall continue to govern the Liquidating Trust pursuant to this Modified Plan. In the event a provision of this Modified Plan, the Original Plan, the Modified Confirmation Order or the Original Confirmation Order conflicts with a provision of the Liquidating Trust Agreement, the provision of the Liquidation Trust Agreement shall control.

3.  *Appointment of the Liquidating Trustee.*

(a)     Under the terms of the Original Plan and the Original Confirmation Order, Alan M. Jacobs was appointed by the Bankruptcy Court as the Liquidating Trustee, and such appointment shall be confirmed by confirmation of this Modified Plan, and he began to serve as the Liquidating Trustee on the Original Effective Date. The Liquidating Trustee was permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Original Confirmation Date (or such earlier date us authorized by the Committee) through the Original Effective Date and was entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and the Original Plan.

(b)     The Original Confirmation Order was reversed and remanded to the Bankruptcy Court by Reversal Order on June 16, 2009 by the District Court. On July 27, 2009, the Bankruptcy Court entered the Status Quo Order which preserved the authority of the Liquidating Trustee over the Liquidating Trust Assets until entry of the Modified Confirmation Order or further order of the Bankruptcy Court.

(c)     The Liquidating Trustee shall be deemed the Estates' representative (including, with respect to Reorganized Access Lending, in his capacity as Plan Administrator) in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in this Modified Plan and the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704, 108 and 1106 of the

Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without limitation commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

(d)     The Modified Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in his official capacity from and after the Original Effective Date, with respect to his status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court.

(e)     The Liquidating Trustee shall at all times maintain a bond acceptable to the Plan Advisory Committee and the U.S. Trustee, or approved by the Bankruptcy Court.

4.     *Term and Compensation of the Liquidating Trustee.*

(a)     The Liquidating Trustee shall initially be compensated as set forth in the Liquidating Trust Agreement (which compensation may be revised by the Liquidating Trust with the consent of the Plan Advisory Committee) and shall not be required to file a fee application to receive compensation. The Liquidating Trustee's compensation shall, however, be subject to the review and, if appropriate, objection of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.

(b)     The Liquidating Trustee may be removed or replaced at any time by the Plan Advisory Committee in accordance with the procedures in the Liquidating Trust Agreement.  In the event of the death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Liquidating Trustee, the Plan Advisory Committee shall have the authority to appoint a successor trustee as set forth in the Liquidating Trust Agreement.

5.      *Liquidation of Liquidating Trust Assets; Responsibilities of Liquidating Trustee.*

(a)     The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall be subject to the directions of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.  Notwithstanding anything to the contrary contained in this Modified Plan, the Original Plan, the Modified Confirmation Order or the Original Confirmation Order, any act by the Liquidating Trustee, including discretionary acts, will require the consent of or consultation with the Plan Advisory Committee in accordance with the terms of the Liquidating Trust Agreement.  If there is any inconsistency or ambiguity in the Modified Plan, Original Plan, Modified Confirmation Order or Original Confirmation Order or the Liquidating Trust Agreement in respect of the Plan Advisory Committee's role in the Liquidating Trustee's authority to act, the provision of the Liquidating Trust Agreement shall control.

(b)     The Liquidating Trustee, in his reasonable business judgment, and in an expeditious but orderly manner, shall liquidate and convert to cash the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Liquidating Trust Assets may be accomplished either through the sale of Liquidating Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

(c)     The Liquidating Trustee (including, with respect to Reorganized Access Lending, in his capacity as Plan Administrator) shall be expressly authorized to do the following:

(i)     Institute, prosecute, collect, compromise and settle any Causes of Actions in accordance herewith and without further approval of or application to the Bankruptcy Court, except as otherwise provided herein;

(ii)     file, prosecute, compromise and settle objections to Claims without further approval of or application to the Bankruptcy Court, except as otherwise provided herein;

(iii)     open and maintain bank accounts in the name of the Liquidating Trust, draw checks and drafts thereon by the sole signature of the Liquidating Trustee, and terminate such accounts as the Liquidating Trustee deems appropriate;

(iv)     execute any documents, pleadings, and take any other actions related to, or in connection with, the liquidation of the Assets and

the exercise of the Liquidating Trustee's powers granted herein, including, but not limited to the exercise of the Debtors' or the Committee's respective rights to conduct discovery and oral examination of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(v)     hold legal title to any and all rights of the beneficiaries in or arising from the Assets, including but not limited to, the right to vote any claim or interest in an unrelated case under the Bankruptcy Code and receive any distribution thereon;

(vi)     protect and enforce the rights to the Assets vested in the Liquidating Trustee by this Modified Plan as of the Original Effective Date by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(vii)    deliver distributions as may be authorized by this Modified Plan;

(viii)   file, if necessary, any and all tax returns with respect to the Liquidating Trust, pay taxes, if any, properly payable by the Liquidating Trust, and make distributions to the beneficiaries net of such taxes, and comply with the requirements of Article 4 hereof;

(ix)     make all necessary filings in accordance with any applicable law, statute or regulation;

(x)     determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust;

72

(xi)    invest moneys received by the Liquidating Trust or otherwise held by the Liquidating Trust in accordance with Article 8.F.8 of this Modified Plan;

(xii)   utilize the Liquidating Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Liquidating Trustee, the Plan Advisory Committee and the members of the Plan Advisory Committee; and

(xiii)  prepare and report telephonically, and if requested by the Plan Advisory Committee, in writing or in person, a monthly report of the status of the process of winding down the Estates including Causes of Action.

(d)    The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

6.    *Valuation of Assets*.  As soon as practicable after the Modified Effective Date, the Liquidating Trustee shall make a good faith determination of the fair market value of the Liquidating Trust Assets as of the Original Effective Date.  This valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims, the Holders of NC Credit Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) for all federal and state income tax purposes.

73