7.      *Payments by the Liquidating Trust.*  The Liquidating Trust shall make distributions to Holders of Allowed Claims in accordance with Article 9 of this Modified Plan.

8.      *Investment Powers of the Liquidating Trustee and Permitted Cash Expenditures.*  All funds held by the Liquidating Trustee shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Liquidating Trust Agreement; provided, however, that the right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.  The Liquidating Trustee may expend the cash of the Liquidating Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidating Trust during liquidation, (y) to pay the reasonable administrative expenses (including, but not limited to, any taxes imposed on the Liquidating Trust) and (z) to satisfy other respective liabilities incurred by the Liquidating Trust in accordance with this Modified Plan from and after the Original Effective Date or the Liquidating Trust Agreement.

9.      *Reporting Duties.*

(a)      Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the

74

Liquidating Trustee), the Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trustee shall also send to each holder of a beneficial interest in the Liquidating Trust an annual statement setting forth the holder's share of items of income, gain, loss, deduction or credit and provide to all such holders information for reporting such items on their federal income tax returns, as appropriate.

(b)    Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the beneficial interests in the Liquidating Trust (treating any holder of a Disputed Claim, for this purpose, as a current holder of a beneficial interest in the Liquidating Trust entitled to distributions), taking into account all prior and concurrent distributions from the Liquidating Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. For this purpose, the tax book value of the Liquidating Trust Assets shall equal their fair market value on the Original Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in

accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

(c)     The Liquidating Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental unit.

10.     *Registry of Beneficial Interests.*   To evidence each holder's beneficial interests in the Liquidating Trust, the Liquidating Trustee shall maintain a registry of holders.

11.     *Non-Transferable.*   Upon issuance thereof, interests in the Liquidating Trust shall be non-transferable, except with respect to a transfer by will or under the laws of descent and distribution. Any such transfer, however, shall not be effective until and unless the Liquidating Trustee receives written notice of such transfer.

12.     *Termination.*   The Liquidating Trust shall terminate after its liquidation, administration and distribution of the Liquidating Trust Assets in accordance with this Modified Plan and its full performance of all other duties and functions set forth herein or in its Liquidating Trust Agreement. The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Original Effective Date; provided, however, that, within a period of six (6) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust Assets administered by the Liquidating Trust.   Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within six (6) months prior to the expiration of each extended term; provided, however, that the

aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

13.    *Purpose of the Liquidating Trust.*    The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.    Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.    The Liquidating Trust shall not be deemed to be the same legal entity as any of the Debtors, but only the assignee of the assets and liabilities of the Debtors and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code.

## G.    Plan Advisory Committee.

1.    *Appointment.*    On the Original Effective Date, the Plan Advisory Committee was appointed and adopted bylaws to govern the actions of the Plan Advisory Committee.    Such appointment and actions shall be confirmed by confirmation of this Modified Plan.

2.    *Membership.*    The Plan Advisory Committee consists of five (5) members of the Committee chosen from those members of the Committee that agreed to serve on the Plan Advisory Committee.    The Plan Advisory Committee was constituted and began to act as the Plan Advisory Committee on the Original Effective Date and pursuant to the Status Quo Order continues to oversee the actions of the Liquidating Trustee in

accordance with the terms of the Liquidating Trust Agreement pending further order of the Bankruptcy Court. In the event of the resignation of a member of the Plan Advisory Committee, the remaining members shall use reasonable efforts to designate a successor from among the Holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation. Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership.

3. *Fiduciary Duties.* The fiduciary duties, as well as the privileges, immunities, and protections, that applied to the Committee prior to the Original Effective Date shall apply to the Plan Advisory Committee. The duties and powers of the Plan Advisory Committee shall terminate upon the termination of the Liquidating Trust.

4. *Rights and Duties.* The Plan Advisory Committee's role shall be to advise and approve the actions of the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement. The Plan Advisory Committee shall have the rights and duties set forth in the Liquidating Trust Agreement, including without limitation:

(a)     to terminate the Liquidating Trustee with or without cause and upon such termination or upon the resignation, death, incapacity or removal of the Liquidating Trustee, to appoint a successor Liquidating Trustee; provided, that the Plan Advisory Committee shall file with the Bankruptcy Court a notice appointing such successor trustee;

(b)     to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee other than as set forth in this Modified Plan;

(c)     to authorize the Liquidating Trustee to commence or continue to prosecute any Cause of Action including, in the Liquidating Trustee's capacity as Plan Administrator, any Access Lending Cause of Action;

(d)     to approve the settlement of any Cause of Action if the amount sought to be recovered by the Liquidating Trustee in the complaint or other document initiating or evidencing such Cause of Action exceeds $250,000;

(e)     to approve the allowance of any Disputed Claim if the final allowed amount of such Claim exceeds $100,000;

(f)     to approve the sale of any Assets by the Liquidating Trustee;

(g)     with respect to each six month period, to approve any budget for the Administrative Fund prepared by the Liquidating Trustee in respect of the Trust Operating Expenses and in connection with Causes of Action and to approve any additional funding of the Administrative Fund;

(h)     in addition to the mandatory distributions required under this Modified Plan, to approve the making of interim distributions if such distributions are warranted and economical;

(i)     to review and object to fees and expenses of professionals retained by the Liquidating Trust; and

(j)     to approve of any investment of Cash or other Liquidating Trust Assets pending distributions to holders of the beneficial interests.

5.     *No Compensation.*  Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Plan Advisory Committee, including reasonable attorneys fees subject to a cap to be

established by the Plan Advisory Committee in its discretion, the members of the Plan Advisory Committee shall serve without compensation. Reasonable expenses, as set forth in this Article 8.G.5, incurred by members of the Plan Advisory Committee may be paid by the Liquidating Trust without need for approval of the Bankruptcy Court.

6. *Objection to Fees.* The Plan Advisory Committee shall have ten (10) days, or such other period as determined by the Plan Advisory Committee and the Liquidating Trustee, from the delivery of a fee statement to object to the fees of any professional retained by either the Liquidating Trust or the Plan Advisory Committee by giving notice of any such objection to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution. The uncontested portion of each invoice shall be paid within forty (40) days after its delivery to the Plan Advisory Committee and the Liquidating Trustee.

**H. Liability, Indemnification.** Neither the Liquidating Trustee (including in his capacity as Plan Administrator), the Plan Advisory Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee or the Plan Advisory Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee or Plan Advisory Committee, nor shall such Liquidating Trustee (including in his capacity as Plan Administrator), or any member of the Plan Advisory Committee, be liable for any act or omission taken or omitted to be taken in his capacity as Liquidating Trustee or Plan Administrator, or as a member of the Plan Advisory Committee, respectively, other than for

specific acts or omissions resulting from such Liquidating Trustee's or such member's willful misconduct, gross negligence or fraud. The Liquidating Trustee (including in his capacity as Plan Administrator), or the Plan Advisory Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidating Trustee (including in his capacity as Plan Administrator) or the Plan Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee (including in his capacity as Plan Administrator) or Plan Advisory Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and Plan Advisory Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Original Plan or Modified Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of

willful misconduct, gross negligence, or fraud. The protections provided in this section shall be applicable to the Liquidating Trustee (including in his capacity as Plan Administrator and sole officer and director), the Plan Advisory Committee, their respective members, designees or professionals or any duly designated agent or representative or employee in the negotiation, implementation and confirmation of this Modified Plan from and after the Original Effective Date.

## I. Retention of Professionals.

1. *Liquidating Trust Professionals.*

(a) The Liquidating Trustee may retain professionals, including but not limited to, counsel, accountants, investment advisors, auditors, professionals from the Liquidating Trustee's own firm, and other agents on behalf of the Liquidating Trust as necessary or desirable to carry out the obligations of the Liquidating Trustee hereunder and under the Liquidating Trust Agreement. More specifically, the Liquidating Trustee may retain counsel in any matter related to its administration, including counsel that has acted as counsel for the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases.

(b) Prior to the Original Effective Date, the Committee approved a budget for the six (6) month period beginning on the Original Effective Date, on a professional-by-professional basis, for professional fees for services to be rendered to the Liquidating Trust, which budget may be altered from time to time by the Plan Advisory Committee in accordance with the Liquidating Trust Agreement provided that any fees and expenses of professionals retained by the

Liquidating Trust that have been incurred prior to the date of the modification of the budget shall constitute budgeted amounts. Except with respect to services rendered and expenses incurred in connection with Fee Applications pending on the Original Effective Date or filed after the Original Effective Date, the Professionals retained by the Debtors or the Committee shall only be entitled to compensation for services performed and expenses incurred after the Original Effective Date to the extent, if any, of the amount budgeted for each respective Professional. Following the Original Effective Date, the Liquidating Trustee may pay, without application to the Bankruptcy Court or any other court of competent jurisdiction, such professionals retained by the Liquidating Trust in accordance with agreements that the Liquidating Trustee determines to be reasonable. The Plan Advisory Committee shall approve in advance the Liquidating Trustee's retention of professionals and their compensation arrangements.

2. *Plan Advisory Committee Professionals.* The Plan Advisory Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Liquidating Trustee or for other purposes set forth in the Liquidating Trust Agreement and the reasonable fees and expenses of such counsel shall be paid by the Liquidating Trust.

**J.     Preservation of All Causes of Action.**  Except as otherwise provided in the Original Plan or the Modified Plan or in any contract, instrument, release or agreement entered into in connection with the Original Plan or Modified Plan, in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123(b) of the Bankruptcy Code, as of the Original Effective Date the Liquidating Trustee (including, with respect to Reorganized

Access Lending, in his capacity as Plan Administrator) shall be vested with, retain, and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors or the Estates may have against any Person or entity. The Liquidating Trustee may pursue such retained claims (other than those of Access Lending) or Causes of Action (other than Access Lending Causes of Action) in accordance with the best interests of the creditors of Debtors other than Access Lending, the Estates (other than the Estate of Access Lending), or the Liquidating Trust. The Plan Administrator may, as of the Original Effective Date, pursue such retained claims of Access Lending or Access Lending Causes of Action in accordance with the best interests of the creditors of Access Lending, the Estate of Access Lending, or Reorganized Access Lending.

**K. Successors.** The Liquidating Trust shall, as of the Original Effective Date, be the successor to the Debtors (other than Access Lending) and their Estates for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other litigation-related matters. The Liquidating Trust shall, as of the Original Effective Date, succeed to the attorney-client privilege of the Debtors (other than Access Lending) and their Estates with respect to all Causes of Action (other than Access Lending Causes of Action) and other litigation-related matters, and the Liquidating Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion. Reorganized Access Lending shall, as of the Original Effective Date, be the successor to Access Lending and its Estate for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Access Lending Causes of Action and other litigation-related matters. Reorganized Access Lending shall as of the Original Effective Date succeed to the attorney-client privilege of Access Lending and its Estate with respect to all Access Lending Causes of Action and other litigation-related

matters, and the Liquidating Trustee, in its capacity as Plan Administrator, may waive the attorney-client privilege with respect to any Access Lending Causes of Action or other litigation-related matter; or portion thereof, in the Liquidating Trustee's discretion.

## ARTICLE 9.

## DISTRIBUTION UNDER THIS MODIFIED PLAN

### A.    Timing of Distributions.

1.    *Distributions on Account of Allowed A/P/S Claims.*    The Liquidating Trustee shall pay any Allowed A/P/S Claim against Debtors other than Access Lending from the Liquidating Trust Assets, except as otherwise provided in this Modified Plan, as soon as practicable after the later of (a) the Modified Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim; provided, however, to the extent the Liquidating Trustee has paid any Allowed A/P/S Claim subsequent to the Original Effective Date such payment shall be deemed adopted and authorized pursuant to the terms of this Modified Plan.

2.    *Interim Distributions an Account of Allowed Unsecured Claims.*    Except as provided in the Settlement Agreement with respect to the Class HC14 Claims, subject to approval of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement and pursuant to the calculations set forth in Article 9.C of this Modified Plan, (a) the Liquidating Trustee shall make an interim distribution at least annually of its net income and the net proceeds from the sale of Liquidating Trust Assets provided that any such distribution is not unduly burdensome to the Liquidating Trust, and (b) shall have the right to make more frequent interim distributions, to Holders of Allowed Holding Company Debtor Unsecured Claims, Holders of Allowed NC Credit Claims and Holders of Allowed Operating Debtor Unsecured Claims if the Liquidating Trustee determines

that such interim distributions are warranted and economical; provided, however, that any such distribution shall only be made if (i) the Administrative Fund and the A/P/S Claims Reserve are fully funded; (ii) with respect to interim distributions to Holders of Allowed Unsecured Claims against Holding Company Debtors, the Holding Company Debtor Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; (iii) with respect to interim distributions to Holders of Allowed Unsecured Claims against NC Credit, the NC Credit Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; (iv) with respect to interim distributions to Holders of Allowed Unsecured Claims against Operating Debtors, the Operating Debtor Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; (v) the payments are made in accordance with the terms of the Settlement Agreement; and (vi) the Liquidating Trustee retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Liquidating Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Liquidating Trust in accordance with this Modified Plan or the Liquidating Trust Agreement. This provision shall be interpreted to be consistent with Revenue Procedure 94-45 § 3.10.

3. *Final Distributions on Allowed Unsecured Claims.* Notwithstanding anything else in this Modified Plan, upon the settlement and satisfaction of all A/P/S Claims, the settlement and satisfaction of all Claims against Access Lending, the dissolution of Reorganized Access Lending and the distribution in liquidation of all remaining Assets of Reorganized Access Lending to the Liquidating Trust, the completion of the prosecution and/or settlement of all objections to all other Claims and

the Causes of Action, and the completion of the sale and/or liquidation of all Assets, the Liquidating Trustee shall distribute, as soon as practicable, all remaining Liquidating Trust Assets pursuant to the terms of this Modified Plan using the calculations set forth in Article 9.C of this Modified Plan.

**B.      Reserves.**

1.      *Administrative Fund.*   On the Original Effective Date, the Liquidating Trustee established the Administrative Fund.  The initial amount of the Administrative Fund was based on the Liquidating Trustee's good faith estimate of the cost necessary to complete the Liquidating Trust's obligations under the Original Plan and the Liquidating Trust Agreement and included the amount budgeted for the Liquidating Trust's professionals pursuant to Article 8.I.1 of the Original Plan.  The Liquidating Trustee shall continue to maintain such Administrative Fund and shall review the Administrative Fund as of the Modified Effective Date to determine if any changes are required to the Administrative Fund to comply with Article 8.I.1 of this Modified Plan.  The Liquidating Trust shall pay all costs and expenses related to carrying out his obligations under this Modified Plan and the Liquidating Trust Agreement, from and after the Original Effective Date, from the Administrative Fund and, in the Liquidating Trustee's discretion, and with approval of the Plan Advisory Committee, may add additional amounts to the Administrative Fund to prosecute the Causes of Action (other than Access Lending Causes of Action) or for administration and other miscellaneous needs of the Liquidating Trusts without further notice or motion in accordance with the terms of the Liquidating Trust Agreement.

2. *A/P/S Claims Reserve.* On the Original Effective Date, the Liquidating Trustee established the A/P/S Claims Reserve for all A/P/S Claims that are Disputed A/P/S Claims or Allowed A/P/S Claims that were not paid on the Original Effective Date, provided, however, that none of the provisions in this Article 9.B.2 apply to A/P/S Claims against Access Lending. The amount reserved for each Disputed Administrative Claim and each Allowed Administrative Claim that was not paid on the Original Effective Date was based upon the Administrative Claim being the lower of (i) the amount set forth in the Administrative Claim Request filed by the Holder of such Claim, or if no Administrative Claim Request has been Filed, the amount set forth for such Claim in the Debtors' books and records, and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of the Original Plan; provided, however, that where a Creditor holds such Claims for which more than one Debtor is alleged to be jointly and/or severally liable, the Liquidating Trustee contributed to the A/P/S Reserve on account of only one such Claim. The Liquidating Trustee shall maintain the A/P/S Reserve pursuant to the terms of the Original Plan and shall review the A/P/S Claims Reserve as of the Modified Effective Date to determine if any changes are required to the A/P/S Claims Reserve to comply with the terms of the Original Plan as adopted by the Modified Plan. The amount reserved for a Disputed Priority Tax Claim, Disputed Priority Claim, or Disputed Secured Claim or for an Allowed Priority Tax Claim, Allowed Priority Claim, or Allowed Secured Claim that was not paid on the Original Effective Date shall be based upon such Claim being the lower of (i) the amount set forth in the Proof of Claim filed by the Holder of such Claim, or if no Proof of Claim has been Filed, the Scheduled amount set

forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan; provided, however, that where a Creditor holds such Claims for which more than one Debtor is alleged to be jointly and/or severally liable, the Liquidating Trustee shall contribute to the A/P/S Reserve on account of only one such Claim. As soon as practicable after (and to the extent) a Disputed A/P/S Claim becomes an Allowed A/P/S Claim, the Liquidating Trustee shall make a payment from the A/P/S Claims Reserve to the Holder of such Claim based on the Allowed amount of such Claim. After (and to the extent) a Disputed A/P/S Claim or a Disallowed Claim is determined not to be an A/P/S Claim, the portion of the A/P/S Claims Reserve reserved for such Claim shall be released from the A/P/S Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan. Any amount remaining in the A/P/S Claims Reserve following the final disposition of all A/P/S Claims shall be released from the A/P/S Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan.

3. *Holding Company Debtor Claims Reserve.* On the Original Effective Date, the Liquidating Trustee established the Holding Company Debtor Claims Reserve, which Holding Company Debtor Claims Reserve shall be maintained under this Modified Plan pursuant to the terms of the Original Plan. With respect to any interim distribution made to Holders of Allowed Holding Company Debtor Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against any Holding Company Debtor shall be the amount that would be distributed on account of such Claim if it was an Allowed Holding Company Debtor Unsecured Claim based upon the Claim being the lower of (i)

the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan. As soon as practicable after (and to the extent) a Disputed Unsecured Claim against a Holding Company Debtor becomes an Allowed Unsecured Claim against such Holding Company Debtor, the Liquidating Trustee shall make a payment, subject to the Multi-Debtor Claim Protocol, from the Holding Company Debtor Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Liquidating Trust has paid on account of Allowed Claims belonging to the same Class as such Claim, and any remaining amount reserved on account of such Claim shall be released from the Holding Company Debtor Claims Reserve. The Liquidating Trustee shall review the Holding Company Debtor Claims Reserve as of the Modified Effective Date to determine if any changes are required to the Holding Company Debtor Claims Reserve to comply with the Modified Plan and the creation of the NC Credit Claims Reserve. After (and to the extent) a Disputed Unsecured Claim against a Holding Company Debtor becomes a Disallowed Claim, the portion of the Holding Company Debtor Claims Reserve reserved for such Claim shall be released from the Holding Company Debtor Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan. Any amount remaining in the Holding Company Debtor Claims Reserve following the final disposition of all Disputed Unsecured Claims against Holding Company Debtors shall be released from the Holding Company Debtor Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan.

4. *NC Credit Claims Reserve.* On the Modified Effective Date, the Liquidating Trustee shall establish the NC Credit Claims Reserve from amounts taken from the Holding Company Debtor Claims Reserve established on the Original Effective Date. With respect to any interim distribution made to Holders of Allowed NC Credit Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against NC Credit shall be the amount that would be distributed on account of such Claim if it were an Allowed NC Credit Unsecured Claim based upon the Claim being the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan. As soon as practicable after (and to the extent) a Disputed Unsecured Claim against NC Credit becomes an Allowed Unsecured Claim against NC Credit, the Liquidating Trustee shall make a payment, from the NC Credit Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Liquidating Trust has paid on account of Allowed Claims belonging to the same Class as such Claim, and any remaining amount reserved on account of such Claim shall be released from NC Credit Claim Reserve. After (and to the extent) a Disputed Unsecured Claim against NC Credit becomes a Disallowed Claim, the portion of the NC Credit Claims Reserve reserved for such Claim shall be released from the NC Credit Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan. Any amount remaining in the NC Credit Claims Reserve following the final disposition of all Disputed Unsecured Claims against NC Credit shall be released from the NC Credit Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan.

5.    *Operating Debtor Claims Reserve.*  On the Original Effective Date, the Liquidating Trustee established the Operating Debtor Claims Reserve, which Operating Debtor Claims Reserve shall be maintained under this Modified Plan pursuant to the terms of the Original Plan.  With respect to any interim distribution made to Holders of Allowed Operating Debtor Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against any Operating Debtor shall be the amount that would be distributed on account of such Claim if it was an Allowed Operating Debtor Unsecured Claim based upon the Claim being the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan.  As soon as practicable after (and to the extent) a Disputed Unsecured Claim against an Operating Debtor becomes an Allowed Unsecured Claim against such Operating Debtor, the Liquidating Trustee shall make a payment, subject to the Multi-Debtor Claim Protocol, from the Operating Debtor Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Liquidating Trust has paid on account of Allowed Claims belonging to the same Class as such Claim, and any remaining amount reserved on account of such Claim shall be released from the Operating Debtor Claims Reserve.  The Liquidating Trustee shall review the Operating Debtor Claims Reserve as of the Modified Effective Date to determine if any changes are required to the Operating Debtor Claims Reserve to comply with this Modified Plan.  After (and to the extent) a Disputed Unsecured Claim against an Operating Debtor becomes a Disallowed Claim, the portion of the Operating Debtor Claims Reserve reserved for such Claim shall be released from the Operating Debtor Claims Reserve and

shall be distributed pursuant to the terms of this Modified Plan. Any amount remaining in the Operating Debtor Claims Reserve following the final disposition of all Disputed Unsecured Claims against Operating Debtors shall be released from the Operating Debtor Claims Reserve and shall be distributed pursuant to the terms of this Modified Plan.

**C.**     **Distribution Calculations.**

1.     *Calculation of Litigation Proceeds.* The Litigation Proceeds shall be calculated by deducting all expenses related to any Causes of Action (other than Access Lending Causes of Action) including, but not limited to, fees and costs of attorneys, other professionals, and expert witnesses, and all expenses incurred in the pursuit of such Causes of Action, as determined by the Liquidating Trustee, from the proceeds of all Causes of Action (other than Access Lending Causes of Action) whether from judgment, settlement, or claim on insurance. The Holding Company Debtor Portion of Litigation Proceeds is 24.75% of the Litigation Proceeds. The NC Credit Portion of Litigation Proceeds is 2.75% of the Litigation Proceeds. The Operating Debtor Portion of Litigation Proceeds is 27.5% of the Litigation Proceeds. The NC Capital EPD/Breach Claimant Portion of Litigation Proceeds is 45% of the Litigation Proceeds.

2.     *Calculation of Holding Company Debtor Net Distributable Assets.* The Holding Company Debtor Net Distributable Assets shall be calculated by deducting from the gross amount (other than Litigation Proceeds) available from the liquidation of the Holding Company Debtors' Assets: (i) the amount of all Allowed A/P/S Claims allowed against or allocated by the Liquidating Trustee to the Holding Company Debtors and paid by the Liquidating Trustee, (ii) the amount of all costs of administering the Estates of the Holding Company Debtors, as determined by the Liquidating Trustee, incurred in the

ordinary course prior to the Original Effective Date and paid by the Debtors on or before the Original Effective Date in the ordinary course, (iii) the Joint Administrative Expense Share of the Holding Company Debtors paid by the Debtors prior to or on the Original Effective Date or by the Liquidating Trustee after the Original Effective Date, and (iv) the Holding Company Debtors' proportionate share of the Trust Operating Expenses as determined by the Liquidating Trustee from and after the Original Effective Date.

3. *Calculation of NC Credit Net Distributable Assets.* The NC Credit Net Distributable Assets shall be the recoveries received by NC Credit from distribution on its Intercompany Claims under the Modified Plan. There will be no deduction from these recoveries in determining the NC Credit Net Distributable Assets.

4. *Calculation of Operating Debtor Net Distributable Assets.* The Operating Debtor Net Distributable Assets shall be calculated by deducting from the gross amount available from the liquidation of the Operating Debtors' Assets, which gross amount shall include the Adequate Protection Proceeds but exclude the Litigation Proceeds: (i) the amount of all Allowed A/P/S Claims allowed against or allocated by the Liquidating Trustee to the Operating Debtors and paid by the Liquidating Trustee, (ii) the amount of all costs of administering the Estates of the Operating Debtors, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Original Effective Date and paid by the Debtors on or before the Original Effective Date, (iii) the Joint Administrative Expense Share of the Operating Debtors paid by the Debtors prior to or on the Original Effective Date or by the Liquidating Trustee after the Original Effective Date, and (iv) the Operating Debtors' proportionate share of the expenses of the Trust

Operating Expenses as determined by the Liquidating Trustee from and after the Original Effective Date.

5. *Calculation of Interim Distributions.* Subject to the terms of this Modified Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol:

(a) the Liquidating Trustee may make an interim distribution to Holders of Allowed Unsecured Claims against Holding Company Debtors up to the amount of the Holding Company Debtor Net Distributable Assets (calculated as of the date of the interim distribution in accordance with Article 9.C.2 of this Modified Plan) plus the Holding Company Debtor Portion of the Litigation Proceeds less the amount required (i) to be contributed in respect of such distribution to the Holding Company Debtor Claims Reserve pursuant to Article 9.B.3 of this Modified Plan and (ii) to fully fund the Holding Company Debtors' proportionate share of the Administrative Fund and the A/P/S Claims Reserve;

(b) the Liquidating Trustee may make an interim distribution to Holders of Allowed Unsecured Claims against NC Credit up to the amount of the NC Credit Net Distributable Assets (calculated as of the date of the interim distribution in accordance with Article 9.C.3 of this Modified Plan) plus the NC Credit portion of the Litigation Proceeds less the amount required to be contributed in respect of such distribution to the NC Credit Claims Reserve pursuant to Article 9.B.4 of this Modified Plan; and

(c) the Liquidating Trustee may make an interim distribution to Holders of Allowed Unsecured Claims against Operating Debtors up to the amount of the Operating Debtor Net Distributable Assets (calculated as of the

date of the interim distribution in accordance with Article 9.C.4 of this Modified Plan) plus the Operating Debtor Portion of the Litigation Proceeds less the amount required (i) to be contributed in respect of such distribution to the Operating Debtor Claims Reserve pursuant to Article 9.B.5 of this Modified Plan and (ii) to fully fund the Operating Debtors' proportionate share of the Administrative Fund and the A/P/S Claims Reserve.

**D.      Payment in Full of Unsecured Claims.**

1.      *Limitation on Distributions on Account of Allowed Unsecured Claims.* Notwithstanding the Determined Distribution Amounts assigned to Allowed Unsecured Claims pursuant to Articles 4, 6, and/or 7 of this Modified Plan, any Allowed Unsecured Claim is paid in full under this Modified Plan at such time as the Holder of such Allowed Unsecured Claim has been paid the allowed amount of such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court); provided, however, that where a Creditor holds Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable, such Creditor is not entitled to receive distributions under this Modified Plan in excess of the amount of the Debtors' joint and/or several liability in respect of such Claims plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court), and the Creditor's Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable shall be deemed paid in full at such time as the Creditor has been paid the allowed amount of one such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court).

2.    *Payment of Interest on Allowed Unsecured Claims.* Notwithstanding the Determined Distribution Amounts assigned to Allowed Unsecured Claims pursuant to Articles 4, 6, and/or 7 of this Modified Plan, (i) if, and only if all Holders of Allowed Unsecured Claims against the Holding Company Debtors, all Holders of Allowed Unsecured Claims against NC Credit and all Holders of Allowed Unsecured Claims against Operating Debtors have been paid 100% of the amount of their Allowed Claims, such Holders shall be entitled to receive interest (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court) on account of such Allowed Claims, from any remaining proceeds realized from the liquidation or other disposition of Assets of the Holding Company Debtors, NC Credit and the Operating Debtors and (ii) if, and only if, all Holders of Allowed Unsecured Claims against Access Lending have been paid 100% of the amount of their Allowed Claims, such Holders shall be entitled to receive interest (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court) on account of such Allowed Claims, from any remaining proceeds realized from the liquidation or other disposition of Assets of Access Lending; provided, however, that with respect to Allowed Unsecured Claims for which more than one Debtor is jointly and/or severally liable, interest is payable on such Claims pursuant to the terms of this Article 9.D.2 based on the allowed amount of the joint and/or several liability fixed by such Claims.

3.    *Payment in Full of Allowed Unsecured Claims for Which Debtors in More than One Debtor Group Are Jointly and/or Severally Liable.* To the extent a Holder of Allowed Unsecured Claims for which Debtors in more than one Debtor Group are jointly and/or severally liable is paid 100% of the allowed amount of the joint and/or several

liability fixed by such Claims through interim distributions, the Liquidating Trustee shall retain any further interim distributions that would be made on account of such Claims (giving effect, if applicable, to the Multi-Debtor Claim Protocol) as if only Debtors within a single Debtor Group were liable for such Claim until the Liquidating Trustee makes a final distribution under this Modified Plan. Prior to making a final distribution under this Modified Plan, the Liquidating Trustee shall determine, with respect to every Allowed Unsecured Claim for which Debtors in more than one Debtor Group are jointly and/or severally liable that has been paid 100% of the allowed amount of the joint and/or several liability fixed by such Claim, the amount of distributions in respect of such Claim made on account of Debtors within each Debtor Group. The Liquidating Trustee shall reallocate the excess distributions, if any, that it has retained to be included in the appropriate Debtor Group's Assets based on the relative distributions made to Claims in each Debtor Group on account of such joint and/or several liability.

4. *Payment in Full of All Allowed Holding Company Debtor Unsecured Claims or Allowed NC Credit Unsecured Claims.* If, in accordance with the terms of this Modified Plan, all Holders of Allowed Holding Company Debtor Unsecured Claims or Holders of Allowed NC Credit Unsecured Claims have been paid 100% of the allowed amount of their Allowed Holding Company Debtor Unsecured Claims or Allowed NC Credit Unsecured Claims, any remaining amount of the Holding Company Debtor Net Distributable Assets, the Holding Company Debtor Portion of Litigation Proceeds, NC Credit Net Distributable Assets or NC Credit Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Modified Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol to Holders of Allowed Operating Debtor

Unsecured Claims on account of such Claims. After all Holders of Allowed Operating Debtor Unsecured Claims, all Holders of Allowed Holding Company Debtor Unsecured Claims and all Holders of Allowed NC Credit Unsecured Claims have been paid in full in accordance with Article 9.D.1 and 9.D.2 hereof, any remaining amount of the Holding Company Debtor Net Distributable Assets, the Holding Company Debtor Portion of Litigation Proceeds, NC Credit Net Distributable Assets or NC Credit Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

5. *Payment in Full of All Allowed Operating Debtor Unsecured Claims Other Than EPD/Breach Claims Against NC Capital.* If, in accordance with the terms of this Modified Plan, all Holders of Allowed Operating Debtor Unsecured Claims other than Holders of Allowed Class OP6b Claims have been paid 100% of the allowed amount of their Allowed Operating Debtor Unsecured Claims, any remaining amount of the Operating Debtor Net Distributable Assets or the Operating Debtor Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Modified Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol first to Holders of Allowed Class OP6b Claims on account of such Claims until such Claims are paid 100% of their allowed amounts, and second to Holders of Allowed Holding Company Debtor Unsecured Claims and Holders of Allowed NC Credit Unsecured Claims, Pro Rata based on the allowed amount of such Claims until such Claims are paid 100% of their allowed amounts. After all Holders of Allowed Operating Debtor Unsecured Claims, all Holders of Allowed Holding Company Debtor Unsecured Claims and Holders of Allowed NC Credit Unsecured Claims have been paid in full in accordance with Article 9.D.1 and

9.D.2 hereof, any remaining amount of the Operating Debtor Net Distributable Assets or the Operating Debtor Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

6. *Payment in Full of All Allowed EPD/Breach Claims Against NC Capital.* If, in accordance with the terms of this Modified Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol, all Holders of Allowed Class OP6b Claims have been paid 100% of the allowed amount of their Allowed Class OP6b Claims, any remaining amount of the NC Capital EPD/Breach Claimant Portion of Litigation Proceeds shall be paid, in accordance with the terms of this Modified Plan, including the Multi-Debtor Claim Protocol and the Intercompany Claim Protocol, first to Holders of Allowed Operating Debtor Claims other than Allowed Class OP6b Claims on account of such Claims until such Claims are paid 100% of their Allowed Amounts, and second to Holders of Allowed Holding Company Debtor Unsecured Claims and Holders of Allowed NC Credit Unsecured Claims, Pro Rata based on the allowed amount of such Claims until such Claims are paid 100% of their Allowed Amounts. After all Holders of Allowed Operating Debtor Unsecured Claims, all Holders of Allowed NC Credit Unsecured Claims and all Holders of Allowed Holding Company Debtor Unsecured Claims have been paid in full in accordance with Article 9.D.1 and 9.D.2 hereof, any remaining amount of NC Capital EPD/Breach Claimant Portion of Litigation Proceeds shall be paid to Holders of NCFC Interests in accordance with applicable liquidation preferences of NCFC Interests.

E. **Manner of Distribution.** At the option of the Liquidating Trustee, any distributions under this Modified Plan may be made either in Cash, by check drawn on a

domestic bank, by wire transfer, or by ACH. Notwithstanding any other provisions of this Modified Plan to the contrary, no payment of fractional cents will be made under this Modified Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

F. **De Minimis Distributions.** All De Minimis Distributions will be held by the Liquidating Trust for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions. When the aggregate amount of De Minimis Distributions held by the Liquidating Trust for the benefit of a Creditor exceeds $50.00, the Liquidating Trust will distribute such De Minimis Distributions to such Creditor. If, at the time that the final distribution under this Modified Plan is to be made, the De Minimis Distributions held by the Liquidating Trust for the benefit of a Creditor total less than $50.00, such funds shall not be distributed to such Creditor, but rather, shall vest in the Liquidating Trust and be distributed to other Holders of Allowed Claims in accordance with the terms of this Modified Plan.

G. **Delivery of Distributions.** Except as otherwise provided in this Modified Plan, distributions to Holders of Allowed Claims shall be made by the Liquidating Trustee, (i) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors or the Liquidating Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address. The distributions to Holders of Capital Trust Claims shall be made to the Indenture Trustee, which, subject to the right of the Indenture Trustee to assert its charging lien against the

distributions for payment of the Indenture Trustee Expenses, shall transmit the distributions to the Holders of Capital Trust Claims.

**H.     Undeliverable Distributions.**  If payment or distribution to the Holder of an Allowed Claim under this Modified Plan is returned for lack of a current address for the Holder or if payment or distribution cannot be made for lack of any mailing address for the Holder, the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of sixty (60) days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the holder shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the holder of the Allowed Claim.

**I.     Setoffs and Recoupments.**  The Liquidating Trustee (including, with respect to Reorganized Access Lending, in his capacity as Plan Administrator) may, pursuant to sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments are to be made pursuant to this Modified Plan, any claims or Causes of Action of any nature whatsoever that are proven valid that the Debtors may have against the Holder of such Claim; provided, however, (i) that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, the Estates, the Liquidating Trust, or Reorganized Access Lending of any right of setoff or recoupment that the Debtors or the Estates may have against the Holder of such Claim, nor of any other claim or Cause of Action and (ii) nothing in this Article 9.I shall limit the ability of the Liquidating Trustee (including, with respect to Reorganized Access Lending, in his capacity as Plan Administrator) to withhold distributions on

account of any Claim based on any right of setoff or recoupment that the Liquidating Trustee, Debtors or the Estates may have with respect to such Claim under the Bankruptcy Code, including but not limited to under section 502(d).

  **J.**  **Distributions in Satisfaction; Allocation.** Except for the obligations expressly imposed by this Modified Plan and the property and rights expressly retained under this Modified Plan, if any, the distributions and rights that are provided in this Modified Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests in the Debtors and the Estates and the assets and properties of the Debtors and the Estates, whether known or unknown, arising or existing prior to the Modified Effective Date. Distributions received in respect of Allowed Unsecured Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

  **K.**  **Cancellation of Notes and Instruments.** As of the Original Effective Date, except as with respect to the stock of Access Lending, all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof shall, with respect to the Debtors, be canceled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights against the Debtors, the Estates, or the Liquidating Trust, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in this Modified Plan. Additionally, the Capital Trust Indentures, and all related notes and documents, including without limitation, the two series of Junior Subordinated Notes due 2036, the Amended and Restated Trust Agreement, dated as of September 13, 2006, and the Amended and Restated Trust Agreement, dated as of November 16, 2006, and the two series of trust preferred securities and trust common securities, respectively, shall be deemed automatically canceled and discharged as of the Original Effective Date,

provided, however, that the Capital Trust Indentures, and related notes and documents shall continue in effect solely for the purposes of (i) allowing the Holders of Capital Trust Claims to receive their distributions, if any, hereunder, including the right to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim, (ii) allowing the Indenture Trustee to make distributions on account of the Capital Trust Claims, (iii) permitting the Indenture Trustee to asserts its charging lien against such distributions for payment of the Indenture Trustee Expenses, and (iv) authorizing, but not requiring, the Indenture Trustee to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim under Article 4.C.3 of this Modified Plan. The Capital Trust Indentures and related notes and documents shall terminate completely upon completion of all such distributions. The Liquidating Trust shall not be responsible for any of the fees, expenses or costs incurred in connection with the continuation or termination of the Capital Trust Indentures.

**L.      No Interest on Claims.** Unless otherwise specifically provided for in this Modified Plan and except as set forth in Article 9 hereof, the Modified Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder of a Claim and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Original Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**M.      Withholding Taxes.** The Liquidating Trustee (including in his capacity as Plan Administrator) shall be entitled to deduct any federal, state or local withholding taxes from any payments made under this Modified Plan. As a condition to making any distribution under this

Modified Plan, the Liquidating Trustee may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Liquidating Trustee to comply with applicable tax reporting and withholding laws.

N. **Reports.** From and after the Original Effective Date, until a Final Decree is entered, the Liquidating Trustee (including in his capacity as Plan Administrator) shall submit quarterly reports to the U.S. Trustee within thirty (30) days of the end of each fiscal quarter setting forth all receipts and disbursements of the Liquidating Trust and Reorganized Access Lending as required by the U.S. Trustee guidelines.

### ARTICLE 10.

### IMPLEMENTATION OF THE MODIFIED PLAN AND DISTRIBUTIONS WITH RESPECT TO ACCESS LENDING

A. **Transfer of Access Lending Stock.** On the Original Effective Date, pursuant to Article 8.E of the Original Plan, TRS Holdings distributed the stock of Access Lending to the Liquidating Trust, which became the sole shareholder of Reorganized Access Lending. The transfer of the stock of Access Lending to the Liquidating Trust shall be confirmed and adopted by this Modified Plan.

B. **The Plan Administrator.** The Liquidating Trustee has acted as Plan Administrator since the Original Effective Date with respect to Reorganized Access Lending and, in such capacity, has entered into the Plan Administrator Agreement. The initial Plan Administrator, and each successor Plan Administrator, shall serve until the earlier of (i) the dissolution of Reorganized Access Lending or (ii) such Plan Administrator's resignation, death, incapacity, removal or termination. Upon the occurrence of the Original Effective Date, the articles of incorporation of Access Lending were amended or deemed amended to provide that

the Plan Administrator is the chief executive officer and sole director of Reorganized Access Lending. In such capacity, the Plan Administrator has all necessary and appropriate power to act for, on behalf of and in the name of Reorganized Access Lending, with the same power and effect as if each of his actions in furtherance of his duties as a responsible person and as a board-appointed officer and shareholder-appointed director of Reorganized Access Lending were explicitly authorized by the appropriate board of directors or shareholders. In his capacity as Plan Administrator, the Liquidating Trustee shall take such actions as are in the best interests of Reorganized Access Lending. The appointment of the Liquidating Trustee as Plan Administrator is continued pursuant to the Status Quo Order pending further order of the Bankruptcy Court and will be confirmed and adopted by this Modified Plan.

C. **Reimbursement of Debtors and Liquidating Trust.** Subject to Article 10.F.4 of this Modified Plan, on the Modified Effective Date or as soon as practicable thereafter and following the establishment of the Access Lending Administrative Fund and the Access Lending A/P/S Reserve, the Plan Administrator shall pay from the Assets of Reorganized Access Lending to the Liquidating Trust, if he has not already done so pursuant to the terms of the Original Plan, (i) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by the Debtors other than Access Lending on or before the Original Effective Date or by the Liquidating Trustee after the Original Effective Date or Modified Effective Date; (ii) the amount of administering the Estate of Access Lending, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Original Effective Date and paid by the Debtors other than Access Lending on or before the Original Effective Date in the ordinary course; and (iii) the Joint Administrative Expense Share of Access Lending paid by the Debtors other than Access

Lending on or before the Original Effective Date or by the Liquidating Trustee after the Original Effective Date or Modified Effective Date.

**D. Resolution of Claims and Prosecution of Access Lending Causes of Action.** The Plan Administrator shall resolve all Disputed Claims against Access Lending as soon as practicable following the Original Effective Date; provided, however, that all Creditors of Access Lending shall have the right to object to any Claims against Access Lending other than the Goldman AL3 Claim and the NCMC AL3 Claim. The Plan Administrator shall have the exclusive right to prosecute all Access Lending Causes of Action.

**E. Timing of Distributions on Account of Claims Against Access Lending.**

1. *Payment of Allowed A/P/S Claims Against Access Lending.* Subject to Article 10.F.4 of this Modified Plan, the Plan Administrator shall pay all Allowed A/P/S Claims against Access Lending as soon as practicable after the later of (a) the Original Effective Date or the Modified Effective Date if not already paid and (b) the date upon which any such Claim becomes an Allowed Claim.

2. *Interim Distributions to Holders of Allowed Access Lending Unsecured Claims.* The Plan Administrator shall have the right to make interim distributions to Holders of Allowed Access Lending Unsecured Claims if the Plan Administrator determines that such interim distributions are warranted and economical; provided, however, that any such distribution shall only be made if (i) subject to Article 10.F.4 of this Modified Plan, the Access Lending Administrative Fund and the Access Lending A/P/S Claims Reserve are fully funded (subject to Article 10.F.4 of this Modified Plan); (ii) the Access Lending Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; and (iii) subject to Article 10.F.4 of this Modified

Plan, the Plan Administrator retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the assets of Reorganized Access Lending during liquidation, and to satisfy other liabilities or expenses incurred by Reorganized Access Lending in accordance with this Modified Plan.

3. *Final Distributions on Allowed Access Lending Unsecured Claims.* Upon resolution of all Disputed Unsecured Claims against Access Lending and all Access Lending Causes of Action, the Plan Administrator shall pay all of the Allowed Unsecured Claims against Access Lending from all remaining Access Lending Net Distributable Assets in accordance with Article 10.F.4 of this Modified Plan.

F. **Access Lending Reserves.**

1. *Access Lending Administrative Fund.* On the Original Effective Date, the Plan Administrator established the Access Lending Administrative Fund. The initial amount of the Access Lending Administrative Fund was based on the Plan Administrator's good faith estimate of the Reorganized Access Lending Operating Expenses and the cost necessary to complete Reorganized Access Lending's obligations under the Original Plan and the Plan Administrator Agreement and was funded from Access Lending's Assets. The Liquidating Trustee shall maintain the Access Lending Administrative Fund and review the Access Lending Administrative Fund as of the Modified Effective Date to determine if any changes are required to the Access Lending Administrative Fund to comply with this Modified Plan. Reorganized Access Lending shall pay all Reorganized Access Lending Operating Expenses and costs and expenses related to carrying out its obligations under this Modified Plan and the Plan Administrator Agreement only from the Access Lending Administrative Fund. The Plan

Administrator may add additional amounts to the Access Lending Administrative Fund to prosecute the Access Lending Causes of Action or for administration and other miscellaneous needs of Reorganized Access Lending without further notice or motion and such additional amounts shall be funded from Access Lending's Assets subject to Article 10.F.4 of this Modified Plan.

2. *Access Lending A/P/S Claims Reserve.* On the Original Effective Date, the Plan Administrator established the Access Lending A/P/S Claims Reserve for all Access Lending A/P/S Claims that are Disputed Access Lending A/P/S Claims or Allowed Access Lending A/P/S Claims that were not paid on the Original Effective Date. The Liquidating Trustee shall continue to maintain the Access Lending A/P/S Claims Reserve and shall review the Access Lending A/P/S Claims Reserve as of the Modified Effective Date to determine if any changes are required to the Access Lending A/P/S Claims Reserve to comply with this Modified Plan. The amount reserved for each Disputed Administrative Claim against Access Lending and each Allowed Administrative Claim against Access Lending that was not paid on the Original Effective Date was based upon the Administrative Claim being the lower of (i) the amount set forth in the Administrative Claim Request filed by the Holder of such Claim, or if no Administrative Claim Request has been Filed, the amount set forth for such Claim in the Debtors' books and records and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan. The amount reserved for a Disputed Priority Tax Claim, Disputed Priority Claim, or Disputed Secured Claim against Access Lending or for an Allowed Priority Tax Claim, Allowed Priority Claim, or Allowed Secured Claim against Access

Lending that was not paid on the Original Effective Date shall be based upon such Claim being the lower of (i) the amount set forth in the Proof of Claim filed by the Holder of such Claim, or if no Proof of Claim has been filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan. As soon as practicable after (and to the extent) a Disputed Access Lending A/P/S Claim becomes an Allowed Access Lending A/P/S Claim, the Plan Administrator shall make a payment from the Access Lending A/P/S Claims Reserve to the Holder of such Claim based on the Allowed amount of such Claim. After (and to the extent) a Disputed Access Lending A/P/S Claim or a Disallowed Claim is determined not to be an Access Lending A/P/S Claim, the portion of the Access Lending A/P/S Claims Reserve reserved for such Claim shall be released from the Access Lending A/P/S Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Modified Plan. Any amount remaining in the Access Lending A/P/S Claims Reserve following the final disposition of all Access Lending A/P/S Claims shall be released from the Access Lending A/P/S Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Modified Plan.

3. *Access Lending Claims Reserve.* On the Original Effective Date, the Plan Administrator established the Access Lending Claims Reserve. The Liquidating Trustee shall maintain the Access Lending Claims Reserve and shall review the Access Lending Claims Reserve as of the Modified Effective Date to determine if any changes are required to the Access Lending Claims Reserve to comply with the Modified Plan. With

respect to any interim distribution made to Holders of Allowed Access Lending Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against Access Lending shall be the amount that would be distributed on account of such Claim if it was an Allowed Access Lending Unsecured Claim based upon the Claim being in the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 11.F of this Modified Plan. As soon as practicable after (and to the extent) a Disputed Unsecured Claim against Access Lending becomes an Allowed Unsecured Claim against Access Lending, the Plan Administrator shall make a payment from the Access Lending Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Plan Administrator has paid on account of Allowed Access Lending Unsecured Claims; and any remaining amount reserved on account of such Claim shall be released from the Access Lending Claims Reserve. After (and to the extent) a Disputed Unsecured Claim against Access Lending becomes a Disallowed Claim, the portion of the Access Lending Claims Reserve reserved for such Claim shall be released from the Access Lending Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Modified Plan. Any amount remaining in the Access Lending Claims Reserve following the final disposition of all Disputed Unsecured Claims against Access Lending shall be released from the Access Lending Claims Reserve to Reorganized Access Lending and shall be distributed pursuant to the terms of this Modified Plan.

4. *Calculation of Access Lending Net Distributable Assets.* The Access Lending Net Distributable Assets shall be calculated by deducting from the gross amount

available from the liquidation of Reorganized Access Lending's Assets and the prosecution of the Access Lending Causes of Action (i) the amount paid by Access Lending to the Liquidating Trust pursuant to Article 10.C of this Modified Plan; (ii) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by Access Lending on or before the Original Effective Date or paid by the Plan Administrator from the Assets of Reorganized Access Lending after the Original Effective Date or Modified Effective Date; (iii) the amount of administering the Estate of Access Lending incurred in the ordinary course prior to the Original Effective Date and paid by Access Lending on or before the Original Effective Date in the ordinary course; (iv) the Joint Administrative Expense Share of Access Lending paid by Access Lending on or before the Original Effective Date; (v) any taxes paid by the Plan Administrator from Reorganized Access Lending's Assets pursuant to Article 10.G of this Modified Plan, (vi) any costs incurred in connection with the prosecution of the Access Lending Causes of Action, and (vii) any Reorganized Access Lending Operating Expenses and expenses incurred by the Plan Administrator in connection with performing its duties under the Original Plan or this Modified Plan; provided, however, that to the extent the amount of the sum of (i) through (vii) of this Article 10.F.4 exceeds $1,000,000, such excess amount shall be paid out of and deducted from the amounts that otherwise would be distributed to NCMC on account of the NCMC AL3 Claim.

G.     **Dissolution of Reorganized Access Lending.**  After all distributions have been made to Holders of Allowed Claims against Access Lending, the Plan Administrator shall file a certificate of dissolution in the applicable state of incorporation for Reorganized Access Lending, and Reorganized Access Lending shall dissolve and cease to exist.  Any remaining