Assets of Reorganized Access Lending shall be distributed to the Liquidating Trust as sole shareholder in a liquidating distribution, and shall become Liquidating Trust Assets that may be distributed pursuant to the terms of this Modified Plan.

      **H.**    **Access Lending Income; Returns.**    Any income earned by the Assets of Reorganized Access Lending is attributable to Reorganized Access Lending and not to the Liquidating Trust or its beneficiaries. The Plan Administrator shall make and file, if necessary, any and all tax returns for Reorganized Access Lending with respect to such taxable income, and shall pay taxes, if any, properly payable by Reorganized Access Lending from Reorganized Access Lending's Assets. The Plan Administrator shall also file (or cause to be filed) any other statements, returns or disclosures relating to Reorganized Access Lending that are required by any governmental unit or the Plan Advisory Committee.

      **I.**    **Removal of Access Lending.**    If this Modified Plan cannot be confirmed with respect to Access Lending, the Plan Proponents of the Modified Plan may remove Access Lending from this Modified Plan. In such event, the Classes pertaining to Access Lending shall be removed from this Modified Plan, and the Modified Plan shall omit any treatment of the assets and liabilities of Access Lending. The removal of Access Lending from this Modified Plan shall not affect this Modified Plan with respect to any other Debtor, except with respect to allocation of Joint Administrative Expense Shares as set forth on Exhibit C to this Modified Plan.

**ARTICLE 11.**

**PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS**

      **A.**    **Reservation of Rights to Object to Claims.**    Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Modified Plan, upon the Modified Effective Date and for the period from the Original Effective Date until all such Claims are resolved, the Liquidating Trustee shall be authorized to assert any and all objections of the

Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, 510(b) Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Debtors' or the Liquidating Trustee's failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim.

B. **Objections to Claims.** Prior to the Original Effective Date, the Debtors were responsible for pursuing any objection to the allowance of any Claim. From and after the Original Effective Date, the Liquidating Trustee retained responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that were subject to objection by the Debtors as of the Original Effective Date), subject to any approvals of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement; provided, however, that Creditors of Access Lending had standing to object to Claims against Access Lending. The Bankruptcy Court has entered orders extending the Liquidating Trustee's time to object to Claims to the later of (i) January 31, 2010, or (ii) 180 days after the date such Claim is filed, provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) additional extensions of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of the Liquidating Trustee's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Modified Plan.

C. **Service of Objections.** An objection to a Claim shall be deemed properly served on the Holder of such Claim if the Liquidating Trustee effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases .

D. **Determination of Claims.** Except as otherwise agreed by the Debtors or the Liquidating Trustee (including in his capacity as Plan Administrator), any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and ( c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Modified Plan. Nothing contained in this Article 11 shall constitute or be deemed a waiver of any claim, right, or Causes of Action that the

Debtors, the Liquidating Trust, or Reorganized Access Lending may have against any Person in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157.

E. **No Distributions Pending Allowance.** No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee may make, in his or her discretion, a distribution pursuant to the Modified Plan on account of the portion of such Claim that becomes an Allowed Claim.

F. **Claim Estimation.** In order to effectuate distributions pursuant to this Modified Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Liquidating Trust, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right , on and after the Original Effective Date, to seek an order of the Bankruptcy Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of property that must be withheld from distribution on account of Disputed Claims; provided, however, that the Bankruptcy Court shall determine (i) whether such Claims are subject to estimation pursuant to section 502(e) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

G. **Allowance of Claims Subject to Section 502 of the Bankruptcy Code.** Allowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

**H.    Goldman HC3b Claim.**  The Goldman HC3b Claim shall be an Allowed Class HC3b Claim in the amount of $5,000,000.

**I.    Goldman AL3 Claim.**  The Goldman AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $9,506,754.00.

**J.    NCMC AL3 Claim.**  Subject to Article 4.M of this Modified Plan, the NCMC AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $3,973,199.86.

### ARTICLE 12.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Assumption of Certain Contracts and Leases and Cure Payments.**  Twenty (20) days prior to the Original Confirmation Hearing, the Original Plan Proponents filed the Assumption Schedule, a copy of which is attached hereto as <u>Exhibit A</u>.  Objections to any proposed cure payment were required to be filed and served no later than the Assumption Objection Deadline and were adjudicated, if necessary, at the Original Confirmation Hearing. Any non-debtor party or Person to an Executory Contract that did not file an appropriate pleading with the Bankruptcy Court on or before the applicable Assumption Objection Deadline waived its right to dispute the cure amount.  All unpaid cure payments, if any, under any Executory Contracts that were assumed or assumed and assigned under the Original Plan, which assumption or assumption and assignment are hereby adopted by this Modified Plan effective as of the Original Effective Date, shall be made by the Liquidating Trustee as soon as practicable after the Modified Effective Date but not later than thirty (30) days after the Modified Effective Date, provided that, in the event that there is a dispute regarding the amount of any cure payments, the Liquidating Trustee shall make such cure payments as may be required by section 365(b)(l) of the Bankruptcy Code within ten (10) days following the entry of a Final Order resolving such dispute.

**B.** **Rejection of Remaining Executory Contracts and Unexpired Leases.** On the Original Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the Petition Date that had not previously expired or terminated pursuant to its own terms, was rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective on (i) the Original Confirmation Date or (ii) if the Executory Contract had been removed from the Assumption Schedule after the Original Confirmation Date, the date of such removal. The Modified Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code effective as of the Original Confirmation Date.

**C.** **Rejection Damages Bar Date.** Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, any Proofs of Claim with respect to a Claim arising from the rejection of Executory Contracts under the Original Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) were required to be filed with XRoads Case Management Services, P.O. Box 8901, Marina Del Rey, California 90295 (Telephone (888) 784-9571), and a copy served on counsel for the Original Plan Proponents and the Liquidating Trustee, within thirty (30) days after the Original Effective Date or September 1, 2008, or such Claim would be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns, or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class HC3b (Other Unsecured Claims against NCFC), Class HC7 (Other Unsecured Claims against TRS Holdings), Class HC10b (Other Unsecured Claims against NC

Credit), Class HCl3 (Other Unsecured Claims against NC Residual IV), Class OP3c (Other Unsecured Claims against NCMC), Class OP6c (Other Unsecured Claims against NC Capital), Class OP9b (Other Unsecured Claims against Home123), Class OP12 (Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM Ventures, and NCoral), or Class AL3 (Other Unsecured Claims against Access Lending), depending on which Debtor the Claim is asserted against. Nothing in this Modified Plan or the Original Plan extends or modifies any previously applicable Bar Date.

     **D.    Insurance Policies.** To the extent that any or all of the insurance policies set forth on <u>Exhibit A</u> herewith are considered to be Executory Contracts, then notwithstanding anything contained in the Original Plan to the contrary, the Original Plan and this Modified Plan shall constitute a motion to assume the insurance policies set forth on <u>Exhibit A</u> herewith and to assign them to the Liquidating Trust. Subject to the occurrence of the Modified Effective Date, the entry of the Modified Confirmation Order shall constitute approval of such assumption and assignment pursuant to section 365(a) of the Bankruptcy Code effective as of the Original Effective Date and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Original Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Original Confirmation Date with respect to each such insurance policy set forth on <u>Exhibit A</u> herewith. To the extent that the Bankruptcy Court determines otherwise with respect to any insurance policy, the Plan Proponents of the Modified Plan reserve the right to seek rejection of such insurance policy or other available relief. The Original Plan or the Modified Plan shall not affect contracts that have been assumed and assigned by order of the

Bankruptcy Court prior to the Original Confirmation Date or Modified Confirmation Date. For the avoidance of doubt, the certain insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute, and benefit from claims) are retained and were transferred to the Liquidating Trust pursuant to the Original Plan and such transfer shall be confirmed and adopted pursuant to this Modified Plan.

## ARTICLE 13.

## EFFECT OF CONFIRMATION AND INJUNCTION

A. **Injunction. Except as otherwise expressly provided in this Modified Plan, the documents executed pursuant to the Original Plan and this Modified Plan, or the Original Confirmation Order or this Modified Confirmation Order, on and after the Original Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Original Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or**

encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Modified Plan. Any Person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article 13 shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Modified Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under this Modified Plan. The Modified Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 3.B of this Modified Plan have been made or are not yet due under Article 3.B of this Modified Plan; provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section 362(a) of the Bankruptcy Code. Except as provided in Article 13.C of this Modified Plan, nothing in this Modified Plan or the Original Plan shall (i) release or discharge any claims held by the

SEC against any non-debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-debtors.

B.      **Term of Injunctions.**  Unless otherwise provided herein or in the Modified Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Bankruptcy Court, under sections 105 or 362 of the Bankruptcy Code, this Modified Plan, or otherwise and extant on the Original Confirmation Date or the Modified Confirmation Date, have remained in full force and effect since the Original Effective Date and shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust.  In accordance therewith, and without limiting the foregoing, until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust, all Persons or entities (except as provided in section 362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date.

C.      **Exculpation.**  On and after the Original Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is

hereby released from, any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases, (b) for any act or omission that occurred during the Chapter 11 Cases or in connection with the formulation, negotiation, and/or pursuit of confirmation of the Original Plan, the consummation of the Original Plan, and/or the administration of the Original Plan and/or the property distributed under the Original Plan, or (c) for any act or omission that occurred in connection with the formulation, negotiation, and/or pursuit of confirmation of this Modified Plan, the consummation of the Modified Plan and/or administration of the Modified Plan or the Status Quo Order and/or the property to be distributed under this Modified Plan, except, in each case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Original Plan, this Modified Plan and the Status Quo Order to the extent permitted by applicable law. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of this Modified Plan, the Original Plan, the Original Disclosure Statement or the Modified Disclosure Statement shall be deemed to act or release any Claims, Causes of Action or liabilities that the Liquidating Trust, Reorganized Access Lending, the Estates, or the SEC may have against any Person or entity for any act, omission, or failure to act that occurred (i) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (ii)

with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liability pertaining to the timing of the commencement of the Chapter 11 Cases, nor shall any provision of this Modified Plan be deemed to act to release any Avoidance Actions.

D. **Release of Goldman.** On the Modified Effective Date, effective as of the Original Effective Date, any and all claims, Causes of Action, rights or remedies of any kind or nature that the Debtors or the Estates have, may have or could have asserted against Goldman, its affiliates or its former or present officers, directors, employees, attorneys, financial advisors or other professionals, which claims, causes of action, rights or remedies arise out of or relate to Access Lending shall be waived, set aside, discharged, settled, compromised, and released.

E. **Binding Effect of the Original Plan and the Modified Plan.** (a) Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, subject to the occurrence of the Modified Effective Date and to the extent not inconsistent with the Reversal Order, on and after the Original Confirmation Date, the provisions of the Original Plan, to the extent implemented by the Liquidating Trustee, shall bind any Holder of a Claim against, or Interest in, the Debtors, Estates and their respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Original Plan, whether or not such Holder has accepted the Original Plan and whether or not such Holder has filed a Claim. On and after the Original Confirmation Date, the EPD/Breach Claim Protocol shall be binding on all Holders of Claims in Classes OP3b and/or OP6b irrespective of how such Holders vote on the Original Plan and irrespective of whether such Holders submit the information requested by the Debtors pursuant to the questionnaire referenced in the

EPD/Breach Protocol. Any vote in favor of the Original Plan by a Holder of Claims in Classes OP3b and/or OP6b will constitute an express consent to the EPD/Breach Protocol in the Original Plan as adopted by this Modified Plan.

(b)     Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Modified Confirmation Date, the provisions of this Modified Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Modified Plan, whether or not such Holder has accepted this Modified Plan and whether or not the Holder has filed a Claim.

(c)     The rights, benefits and obligations of any Person named or referred to in the Original Plan or this Modified Plan, whose actions may be required to effectuate the terms of the Original Plan or this Modified Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

## ARTICLE 14.

## CONDITIONS PRECEDENT

A.     Conditions Precedent to Modified Effective Date. This Modified Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

1.     *Approval of Modified Disclosure Statement.* The Bankruptcy Court shall have approved a disclosure statement to this Modified Plan in form and substance acceptable to the Plan Proponents of the Modified Plan in their sole and absolute discretion.

2. *Approval of Plan Compromises.* The compromises and settlements contained in Articles 4, 6, and 7 of this Modified Plan and the Original Plan shall be approved as of the Original Effective Date without material modification by Final Order in accordance with Bankruptcy Rule 9019 and shall be binding and enforceable against all Holders of Claims and Interests under the terms of this Modified Plan.

3. *Form of Modified Confirmation Order.* The Modified Confirmation Order shall be in form and substance acceptable to the Plan Proponents of the Modified Plan in their sole and absolute discretion.

4. *Entry of Modified Confirmation Order.* The Modified Confirmation Order (i) shall have been entered by the Bankruptcy Court, (ii) shall not be subject to any stay of effectiveness, and (iii) shall have become a Final Order, the Modified Confirmation Date shall have occurred, and no request for revocation of the Modified Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

5. *Liquidating Trust.* The Modified Confirmation Order shall reconfirm the establishment of the Liquidating Trust.

6. *Liquidating Trustee.* The Modified Confirmation Order shall reconfirm the appointment of Alan M. Jacobs as Liquidating Trustee.

7. *Plan Administrator.* The Modified Confirmation Order shall reconfirm the appointment of Alan M. Jacobs as Plan Administrator.

B. **Revocation, Withdrawal, or Non-Consummation of this Modified Plan.** If after the Modified Confirmation Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Modified Confirmation Date,

then upon motion by the Plan Proponents of the Modified Plan, the Modified Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Modified Confirmation Order shall not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Plan Proponents of the Modified Plan. If the Modified Confirmation Order is vacated pursuant to this Section, this Modified Plan shall be null and void in all respects and the Status Quo Order will remain effective pending further order of the Bankruptcy Court, and nothing contained in this Modified Plan, the Modified Disclosure Statement, nor any pleadings filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Original Plan Proponents or the Plan Proponents of the Modified Plan in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Confirmation Date. This Article 14.B is not intended to establish the applicable legal standard with respect to vacating the Modified Confirmation Order, and the rights of all parties in interest to object to any motion filed pursuant to this Article 14.B., including on the basis that the applicable legal standard has not been satisfied, are fully reserved.

## ARTICLE 15.

## ADMINISTRATIVE PROVISIONS

A.    **Retention of Jurisdiction.** This Modified Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain

and have exclusive jurisdiction (to the extent granted by applicable law, including any Provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases, the Original Plan or this Modified Plan, or (iii) that relates to the following:

      1.     to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of Executory Contracts or unexpired leases and the allowance of Claims resulting therefrom;

      2.     to adjudicate any and all disputes over the ownership of a Claim or Interest;

      3.     to adjudicate any and all disputes arising from or relating to the distribution or retention of consideration under the Original Plan or this Modified Plan;

      4.     to hear and determine timely objections to Claims, whether filed before or after the Original Confirmation Date, including objections to the classification, estimation or establishment of priority or status of any Claim, and to allow or disallow any Claim, in whole or in part;

      5.     to determine the extent, validity, and/or priority of any Lien asserted against property of the Debtors or the Estates or property abandoned or transferred by the Debtors or the Estates;

      6.     to determine the amount, if any, of interest to be paid to Holders of Allowed Unsecured Claims if any Allowed Unsecured Claims are paid in full pursuant to the terms of this Modified Plan;

      7.     to hear and determine matters related to the assets of the Estates, including liquidation of the Debtors' assets; provided that notwithstanding the foregoing, the

Liquidating Trustee (including in his capacity as Plan Administrator) shall have no obligation to obtain the approval or authorization of the Bankruptcy Court or file a report to the Bankruptcy Court concerning the sale, transfer, assignment or disposition of assets; provided further, that the Liquidating Trustee may seek "comfort orders" or similar orders of the Bankruptcy Court approving the Liquidating Trustee's sale or disposition of such assets to facilitate such transactions;

8. to adjudicate disputes relating to any alleged subordination of the Capital Trust Claims;

9. to enter and implement such orders as may be appropriate in the event the Modified Confirmation Order is for any reason stayed, revoked, modified or vacated;

10. to consider modifications of or amendments to this Modified Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation, the Modified Confirmation Order;

11. to issue orders in aid of execution, implementation, or consummation of this Modified Plan;

12. to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Original Plan, this Modified Plan, the Original Confirmation Order or the Modified Confirmation Order including disputes arising under agreements, documents, or instruments executed in connection with this Modified Plan or the Original Plan;

13. to hear and determine all motions requesting allowance of an Administrative Claim;

14. to hear and determine all Fee Applications;

15.   to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses and parties entitled thereto;

16.   to hear and determine all controversies arising in connection with the implementation of this Modified Plan;

17.   to hear and determine all Causes of Action, Avoidance Actions, and other suits and adversary proceedings to recover assets of (i) the Liquidating Trust, as successor-in-interest to any of the Debtors (other than Access Lending) and property of the Estates (other than the Estate of Access Lending), wherever located, and (ii) Reorganized Access Lending, as successor-in-interest to Access Lending and property of the Estate of Access Lending, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Modified Plan or the Original Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

18.   to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19.   to resolve all conflicts and disputes between the Liquidating Trustee, the Liquidating Trust, Reorganized Access Lending, the Plan Advisory Committee, and Holders of Claims or Interests;

20.   to hear any matter not inconsistent with the Bankruptcy Code;

21.    to hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Original Effective Date;

22.    to consider matters regarding the Debtors' insurance policies, if any, including jurisdiction to reimpose the automatic stay or its applicable equivalent provided in the Original Plan or this Modified Plan;

23.    to issue injunctions, provide declaratory relief, take such other legal or equitable actions, or issue such other orders as may be necessary or appropriate to restrain interference with this Modified Plan, the Debtors, the Estates or their property, the Committee, the Liquidating Trust, Reorganized Access Lending, the Liquidating Trustee, the Plan Advisory Committee, Professionals, or the Modified Confirmation Order;

24.    to enter a Final Decree closing the Chapter 11 Cases; and

25.    to enforce all orders previously entered by the Bankruptcy Court.

**B.**    **Payment of Statutory Fees.**  All fees payable through the Original Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid on or before the Original Effective Date. All fees payable after the Original Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Liquidating Trust or Reorganized Access Lending, as applicable.

**C.**    **General Authority.**  The Liquidating Trust or Reorganized Access Lending, subject to the Status Quo Order, shall execute such documents, and take such other actions, as

are necessary to effectuate the transactions provided for in this Modified Plan as well as the provisions of the Original Plan as adopted by this Modified Plan. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Liquidating Trustee, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that the Liquidating Trust shall not be liable for the actions of the requesting party under any such powers of attorney; and provided, further, that the Liquidating Trustee may seek modification of this requirement on noticed motion and other parties may oppose such motion. Powers of attorney executed by the Debtors prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.

     **D.**    **Headings.** The headings of the Articles, paragraphs, and sections of this Modified Plan are inserted for convenience only and shall not affect the interpretation hereof.

E. **Final Order.** Except as otherwise expressly provided in this Modified Plan, any requirement in this Modified Plan for a Final Order may be waived by the Liquidating Trustee upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

F. **Amendments and Modifications.** The Plan Proponents of the Modified Plan may alter, amend, or modify this Modified Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Modified Confirmation Hearing. After the Modified Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1102(2) of the Bankruptcy Code) of this Modified Plan with respect to any Debtor, the Plan Proponents of the Modified Plan may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Modified Plan, the Modified Disclosure Statement, or the Modified Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Modified Plan, by the filing of a motion and, so long as the proposed modifications to the Modified Plan are non-material, (i) notice need only be provided to the Persons listed the Bankruptcy Rule 2002 service list, and (ii) the solicitation of all Creditors and other parties in interest shall not be required.

G. **Payment Date.** Whenever any payment or distribution to be made under this Modified Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

H. **Withholding and Reporting Requirements.** In connection with this Modified Plan and all instruments issued in connection therewith and distributions thereon, the Liquidating Trustee, including in his capacity as Plan Administrator, shall comply with all withholding and

reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

I. **No Waiver.** The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors', the Liquidating Trust's, or Reorganized Access Lending's right to object to or examine such Claim, in whole or in part.

J. **Tax Exemption.** Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of a security under the Original Plan or this Modified Plan, or the making or delivery of an instrument of transfer pursuant to, in implementation of or as contemplated by the Original Plan or this Modified Plan, including, without limitation, any transfers to or by the Debtors, if on the Original Effective Date, and the Liquidating Trustee, if after the Original Effective Date, of the Debtors' property in implementation of or as contemplated by this Modified Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trust) shall not he taxed under any state or local law imposing a stamp tax or similar tax. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Modified Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax.

K. **Securities Exemption.** Any rights issued under, pursuant to or in effecting this Modified Plan or the Original Plan prior to the entry of the Reversal Order, including the stock of Reorganized Access Lending, and the offering and issuance thereof by any party, including without limitation the Debtors or the Liquidating Trust, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring

registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code.

   **L.    Non-Severability.**  Except as specifically provided herein, the terms of this Modified Plan constitute interrelated compromises and are not severable.  Additionally, no provision of Articles 4, 6, or 7 of this Modified Plan may be stricken, altered, or invalidated.

   **M.    Revocation.**  The Plan Proponents of the Modified Plan reserve the right to revoke and withdraw this Modified Plan prior to the Modified Confirmation Date.  If the Plan Proponents of the Modified Plan revoke or withdraw this Modified Plan, then this Modified Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee, the Liquidating Trust, the Liquidating Trustee or any other Person or to prejudice in any manner the rights of the Debtors, the Committee, the Liquidating Trust, the Liquidating Trustee or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors, the Committee, the Liquidating Trust and/or the Liquidating Trustee including with respect to the amount or allowability of any Claim or the value of any property of the Estates.

   **N.    Modified Plan Controls Modified Disclosure Statement.**  In the event and to the extent that any provision of this Modified Plan is inconsistent with any provision of the Modified Disclosure Statement, the provisions of this Modified Plan shall control and take precedence.

   **O.    Governing Law.**  Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless specifically

stated, the rights, duties, and obligations arising under this Modified Plan, any agreements, documents, and instruments executed in connection with this Modified Plan or the Original Plan to the extent adopted by this Modified Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) and, with respect to the Debtors incorporated in Delaware, corporate governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles. Corporate governance matters relating to any Debtor not incorporated in Delaware shall be governed by the law of the state of incorporation of the applicable Debtor.

     **P.**     **Notices.** Any notices or requests of the Debtors or the Liquidating Trust by parties in interest under or in connection with the Modified Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

          If to the Debtors, the Liquidating Trust or the Liquidating Trustee:

          c/o Alan M. Jacobs
          Liquidating Trustee of New Century Liquidating Trust
          999 Central Avenue, Suite 208
          Woodmere, NY 11598

          With a copy to:

          Hahn & Hessen LLP
          Attn:  Mark S. Indelicato, Esq.
          488 Madison Avenue
          New York, NY 10022

          and

          Blank Rome LLP
          Attn:  Bonnie Fatell, Esq.
          1201 Market Street
          Wilmington, DE 19801

Q.     **Filing of Additional Documents.**  On or before "substantial consummation" (as such term is defined in section 1102(2) of the Bankruptcy Code) of this Modified Plan, the Plan Proponents of the Modified Plan may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate and further evidence the terms and conditions of this Modified Plan.

R.     **Direction to a Party.**  From and after the Modified Effective Date, the Plan Proponents of the Modified Plan may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Modified Plan and the Original Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Modified Plan incorporating action taken pursuant to the Original Plan.

S.     **Successors and Assigns.**  The rights, benefits, duties, and obligations of any Person named or referred to in this Modified Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

T.     **Final Decree.**  Once any of the Estates has been fully administered, as referred to in Bankruptcy Rule 3022, the Liquidating Trust or another party, as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 Case of the applicable Estate(s).

## ARTICLE 16.

## CONFIRMATION REQUEST

The Plan Proponents of the Modified Plan hereby request confirmation of this Modified Plan as a Cramdown Plan with respect to any impaired Class that does not accept this Modified Plan or is deemed to have rejected this Modified Plan.

## ARTICLE 17.

## BANKRUPTCY RULE 9019 REQUEST AND, TO EXTENT REQUIRED, REQUEST PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 1123(A)(5)

Pursuant to Bankruptcy Rule 9019, the Plan Proponents of the Modified Plan hereby request approval of all compromises and settlements included in this Modified Plan, including, without limitation, the compromises and settlements included in Articles 4, 6, and 7 of this Modified Plan. To the extent required, the Plan Proponents of the Modified Plan hereby request confirmation of this Modified Plan based on the partial substantive consolidation of the Debtors pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code.

Dated: Wilmington, Delaware
      September 30, 2009

Respectfully submitted,

NEW CENTURY FINANCIAL CORPORATION,
on behalf of the Debtors and Debtors-in-Possession

_/s/ Alan M. Jacobs_
By:    Alan M. Jacobs,

Liquidating Trustee of the New Century Liquidating Trust (including in his capacity as sole officer and director of each of the Debtors) and as Plan Administrator of Reorganized Access Lending

Authorized and Approved by:

THE PLAN ADVISORY COMMITTEE

___/s/ Donald A. Workman_____
By:    Donald A. Workman, Esq. (Chair)

Counsel for Lender Processing Services, Inc.

**EXHIBIT A**

# Exhibit 1 - Assumption Schedule

Out of any abundance of caution the Debtors have listed critical documents and agreements on this schedule. The listing of a document or agreement on this schedule shall not constitute an admission by the Debtors that such document or agreement is (a) an executory contract or unexpired lease or that the Debtors have any liability thereunder; or (b) that the document or agreement was entered into prepetition and therefore subject to section 365(a) of the Bankruptcy Code. The Debtors intend to assume all agreements not previously rejected the primary purpose of which is the perpetual licensing of intellectual property rights from third parties and for which no cure amount is owed by the Debtors. Examples include, but are not limited to, those agreements with Microsoft, Lawbase and Legato.

## Part A. Contracts

| Contract | Cure Amount |
|---|---|
| Services Agreement dated as of December 20, 2007 by and among New Century Mortgage Corporation and ACS Commercial Solutions. | $0 |
| Epicor Software Corporation Maintenance / Support Renewal Program dated as of July 1, 2007 by and between Epicor Software Corporation and New Century Mortgage Corp. | $0 |
| Records Management and Data Protection Service Agreements and Customer Agreements dated as of various dates by and between Iron Mountain Information Management Inc. ("Iron Mountain"), its predecessor companies and New Century Mortgage Corporation, Home 123 Corporation, New Century Financial Corporation, etc. for hardcopy storage and tape storage accounts numbered: 01222.0FX031, 01222.0CF310, 01222.0FX578, 01222.00L322, 01222.0L3429, 04311.0H0929, 04311.0H5450, 01422.0OP064, 44114.044075, 44113.041293, 44114.057273 | $0 |
| Park Place Short Term Lease dated as of January 22, 2008 by and among Maguire Properties - Park Place, LLC and New Century Financial Corporation. | $0 |
| Agreement between Data-Link Systems, LLC and New Century Mortgage Corporation dated as of July 5, 2007 (the "Agreement"), Amendment No. 1 dated as of April __ 2008, and Feature Addendum dated as of January 3, 2008 | $0 |
| Onbase Online Hosted Solution Agreement dated as of January 7, 2008 by and between Hyland Software, Inc. and New Century Financial Corporation. | $0 |
| Authorization and Agreement for Cash Management Services dated as of 7/23/2003 by and between New Century Mortgage Corporation and Union Bank of California, N.A. and the Security Agreement dated as of 3/10/2005 by and between New Century Mortgage Corporation and Union Bank of California, N.A. | $0 |
| Letter Agreement and price list dated as of March 31, 2006 by and between Bekins Moving Solutions and New Century Mortgage Corporation. | $0 |

## Part B. Insurance Policies

| TYPE OF POLICY | Carrier | POLICY # |
|---|---|---|
| **COMMERCIAL LIABILITY** | | |
| General Liability | Fidelity & Deposit Co. of Maryland | CP0913762802 |
| Umbrella AL, GL & REO | Fidelity & Deposit Co. of Maryland | UMB913752 |
| Auto Liability | Fidelity & Deposit Co. of Maryland | CAP0016872 |
| Property / Flood | Fidelity & Deposit Co. of Maryland | FIA1003282 |
| General Liability | Fidelity & Deposit Co. of Maryland | FIA 100256503 |
| Umbrella AL, GL & REO | Fidelity & Deposit Co. of Maryland | UMB 5344245 |
| General Liability | Fidelity & Deposit Co. of Maryland | FIA 1002565 |
| Umbrella AL, GL & REO | Fidelity & Deposit Co. of Maryland | UMB 5344245 |
| General Liability | Great Northern Ins (Chubb) | 35397736 LAO |
| Umbrella AL, GL & REO | Federal Insurance Co. (Chubb) | 7977-03-85 |
| General Liability | Great Northern Ins (Chubb) | 35397736 LAO |
| Umbrella AL, GL & REO | Federal Insurance Co. (Chubb) | 7977-03-85 |
| General Liability | Great Northern Ins (Chubb) | 35397736 LAO |
| Umbrella AL, GL & REO | Federal Insurance Co. (Chubb) | 7977-03-85 |
| General Liability | Centennial Insurance Company | 497-40-20-82 |
| **DIRECTORS & OFFICERS** | | |
| Run Off Program | American International Specialty Lines Insurance Company (AISLIC) | 672-43-85 |
| Run Off Program | Ace American Insurance Company | DOX G2166120A-002 |
| Run Off Program | Lloyds of London | FD0604467 |
| Run Off Program | Axis Reinsurance Company | RNN727183 |
| Run Off Program | Starr Excess Liability Insurance Co. | 4121907 |
| Run Off Program | American International Group, Inc. (AIG) | 713-23-15 |
| Run Off Program | Lloyds of London | FD0604994 |
| Run Off Program | Ace American Insurance Company | DOXG2166133B001 |
| Run Off Program | Axis Reinsurance Company | RNN727184 |
| Run Off Program | Liberty Mutual Insurance Company | 073551-016 |
| Run Off Program | Navigators Insurance Company | NY06DOL149577NV |
| Run Off Program | Arch Insurance Company | AID0016088-00 |
| Run Off Program | CNA Insurance Company | 287036031 |
| Run Off Program | Navigators Insurance Company | NY06DOL149583NV |
| Go Forward (Execs & Organization) | AIG | 713-35-92 |
| Go Forward (Execs & Organization) | U.S. Specialty Ins. Co. (HCC Global) | 14-MGU-07-A14286 |
| Primary Layer | AISLIC | 672-43-85 |
| 2nd Excess Layer | Ace American Insurance Company | DOX G2166120A-002 |
| 3rd Excess Layer | Lloyds of London | FD0604467 |
| 4th Excess Layer | Axis Reinsurance Company | RNN727183 |

| TYPE OF POLICY | Carrier | POLICY # |
|---|---|---|
| 5th Excess Layer | Starr Excess Liability Insurance Co. | 4121907 |
| 6th Excess Layer | XL Specialty Insurance Company | ELU09290606 |
| 7th Excess Layer | Lloyds of London | FD0604994 |
| 8th Excess Layer | Ace American Insurance Company | DOXG21661338001 |
| 9th Excess Layer | Axis Reinsurance Company | RNN727184 |
| 10th Excess Layer | Liberty Mutual Insurance Company | 73551016 |
| 11th Excess Layer | Navigators Insurance Company | NY06DOL149577NV |
| IDL/Ed Gotschall Only | Hartford Insurance Company | 00DA023401506 |
| Independent Directors Liability | Arch, CNA & Navigators | Various |
| Primary Layer | Liberty Mutual Insurance Company | LNE-B71-073551-012 |
| 2nd Excess Layer | Houston Casualty Company (Global) | 24-MG-03-A2237 |
| 3rd Excess Layer | Lexington Insurance Company | 1620582 |
| 4th Excess Layer | Greenwich Insurance Company | ELU 82569-02 |
| 5th Excess Layer | Kemper Insurance Company(Lumbermens) | 3DY 016540 61 |
| 6th Excess Layer | XL Insurance (Bermuda) | XLD +O-06782-01 |
| 7th Excess Layer | Allied World Assurance Company | C001156 |
| 8th Excess Layer | Lloyds of London | L2CX069 |
| 9th Excess Layer | Philadelphia Insurance Companies | PHSD037932 |
| 10th Excess Layer | Royal & Sunalliance | HS 611797 |
| Primary Layer | Liberty Mutual Insurance Company | LNE-B71-073551-013 |
| 2nd Excess Layer | Houston Casualty Company (Global) | 24-MG-03-A2237 |
| 3rd Excess Layer | Lexington Insurance Company | 1620615 |
| 4th Excess Layer | XL Insurance Company | EX71010999 |
| 5th Excess Layer | Sheffield Insurance Company | EAN598559 |
| 6th Excess Layer | Illinois Union Insurance Company | DOXG21669666001 |
| 7th Excess Layer | XL Insurance Company | XLD+O-06782202 |
| 8th Excess Layer | AWA Company | C001152002 |
| 9th Excess Layer | Lloyds of London | FD042860S |
| 10th Excess Layer | Philadelphia Insurance Companies | PHSD066425 |
| Primary Layer | American International Group, Inc. (AIG) | 408-81-35 |
| Excess Layer | Houston Casualty Company | 14-MGU-06-A16485 |
| **EMPLOYMENT PRACTICES LIABILITY** | | |
| Employment Practices | Max Re | 12575-1330-EPLI-2006 |
| Employment Practices | Max Re | 7747-752-EPLI-2005 |
| Employment Practices | Max Re | 4256-359-EPLI-2004 |
| Employee Commercial Crime | Travelers Casualty & Surety Company | 104011836 |
| **FIDUCIARY LIABILITY** | | |
| Run Off Program | Philadelphia Indemnity Insurance Co. | PHSD219056 |
| Fidiciary Liability | Philadelphia Indemnity Insurance Co. | PHSD219056 |
| Fidiciary Liability | Philadelphia Indemnity Insurance Co. | PHSD114607 |

| TYPE OF POLICY | Carrier | POLICY # |
|---|---|---|
| **MORTGAGE BANKERS BOND** | | |
| Primary Coverage | Bankers Insurance Services | MBB-05-00071 |
| Primary Coverage | Bankers Insurance Services | MBB-03-00002 |
| **SERVICING INSURANCE** | | |
| Flood | Lloyds of London | 1916-3253 |
| Wind | Lloyds of London | 1776-3253 |
| Fire & Liability | Safeco | MIF7553881A |
| Fire & Liability | Safeco | MSH7710681B |
| Fire & Liability | Safeco | MSH7710548B MIF78553565A |
| Fire & Liability | Safeco | MIH7710548B |
| Fire & Liability | Safeco | MIH7710681B |
| **WORKERS COMP** | | |
| Workers Comp | Valley Forge Insurance Co (CNA) | WC249221601 WC249216177 WC249216373 |
| Workers Comp | Valley Forge Insurance Co (CNA) | WC249221914 WC249221928 WC249221800 |
| Workers Comp | ACE American Insurance Company - claims administered by ESIS | WLRC43981547 |
| Workers Comp | ACE American Insurance Company - claims administered by ESIS | WLRC44438124 |
| Workers Comp | Travelers Paid Loss Occurrence | TRJUB1761B96107 TC2JUB1761B46507 for AZ, MA, OR and WI |

**EXHIBIT B**

# EPD/ BREACH PROTOCOL[1]

I.    EPD/FPD Claims.

    A.    Methodology.

        EPD and FPD Claims are Claims based on a provision in a loan purchase agreement that obligated a Debtor to repurchase a loan if the borrower defaulted on his or her first loan payment after the loan was sold (a First Payment Default or "FPD") or defaulted on a payment due within a period of time (usually 30 or 60 days) after the loan was sold (an Early Payment Default or "EPD"). Loan purchase agreements varied as to whether the EPD/FPD provision was set forth as a standalone provision of the loan sale agreement or was styled as a representation or warranty. A Claim based on either is treated as an EPD/FPD Claim for purposes of the protocol.

        Each Creditor that establishes a valid EPD or FPD under the applicable loan purchase agreement will receive a distribution in the Plan premised upon damages assessed based upon the borrower payment history and the unpaid principal balance ("UPB") for the loan, in both cases measured as of August 31, 2007, according to the following grid:[2]

- Current: 0% of UPB

- 31 – 60 days delinquent: 15% of UPB

- 61 – 90 days delinquent: 20% of UPB

- 91 or more days delinquent: 30% of UPB

- Borrower in bankruptcy: 35% of UPB

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 1, 2008.
[2] The applicable category that would lead to the highest calculation takes precedence. For example, if as of 8/31/07 a loan was 61 days delinquent and the borrower was in bankruptcy, the applicable percentage is 35% of UPB.

- In foreclosure[3]: 40% of UPB

- Real estate owned (including liquidations of such real estate )("REO"): 45% of UPB

If the Creditor sold the loan prior to August 31, 2007 and does not know the loan status as of August 31, 2007, the damage assessment will be measured as of the date of sale. If a loan has been foreclosed, the measurement will consider the property to be REO and the measurement will be based on the UPB at the time of foreclosure.

If subsequent to the sale of the loan by a Debtor and prior to August 31, 2007, the borrower and the owner of a loan agreed to modify the payment (principal or interest) terms of the loan, then the loan will be treated under the next most severe category in the grid. For example, if a Creditor and borrower agreed in April 2007 to relax the borrower's payment obligations under a loan, and on August 31, 2007 the borrower was current on the modified schedule, this loan will be treated as though the borrower was 31 – 60 days delinquent. Similarly, if on August 31, 2007 that same borrower was 40 days delinquent under the modified payment schedule, the loan will be treated as though the borrower was 61 – 90 days delinquent.

In order to establish the validity of the EPD/FPD Claim and to apply the grid, each EPD/FPD claimant must provide to the Debtors information set forth in questionnaire for loans on which it asserts an EPD/FPD claim. This information includes:

- The payment history for each loan for which an EPD or FPD is asserted in electronic format, including identification of the payment status as of August 31, 2007.

- Identification of the loan purchase agreement pursuant to which the loan was sold by a Debtor, including a copy of the relevant EPD/FPD payment

---

[3] In foreclosure means that the period set in a notice of intent to foreclose during which the borrower has the ability

LA3:1144420.8

provisions (note: the length of time for EPD and FPD claims varied among the master loan purchase agreements).

## II.   BREACH CLAIMS.

### A.   Methodology.

The damages resulting from breach Claims will be calculated based upon the simplifying assumptions that: (i) 1.5% of the loans in any pool will at some point be subject to a breach that would have caused the selling Debtor to have repurchased the loan, (ii) the "seasoning" of loans will be taken into account so that this 1.5% incidence is spread over the life of the pool based on the Debtors' historic data concerning the timing of when breach claims are asserted, and (iii) damages resulting from breaches will be set at 30% of the UPB of the loan as of August 31, 2007. The following table sets forth the calculation methodology:

| Year | Quarter | % Incidence | Damages |
|------|---------|-------------|---------|
| 2007 | 1 Qtr | 1.500% | 0.450% |
| 2006 | 4 Qtr | 1.200% | 0.360% |
| 2006 | 3 Qtr | 1.120% | 0.336% |
| 2006 | 2 Qtr | 0.850% | 0.255% |
| 2006 | 1 Qtr | 0.680% | 0.204% |
| 2005 | 4 Qtr | 0.530% | 0.159% |
| 2005 | 3 Qtr | 0.360% | 0.108% |
| 2005 | 2 Qtr | 0.180% | 0.054% |
| 2005 | 1 Qtr | 0.140% | 0.042% |
| 2004 | 4 Qtr | 0.100% | 0.030% |
| 2004 | 3 Qtr | 0.085% | 0.026% |
| 2004 | 2 Qtr | 0.065% | 0.020% |
| 2004 | 1 Qtr | 0.060% | 0.018% |
| 2003 | 4 Qtr | 0.053% | 0.016% |
| 2003 | 3 Qtr | 0.045% | 0.014% |
| 2003 | 2 Qtr | 0.035% | 0.011% |
| 2003 | 1 Qtr | 0.025% | 0.008% |
| 2002 | 4 Qtr | 0.022% | 0.007% |
| 2002 | 3 Qtr | 0.018% | 0.005% |
| 2002 | 2 Qtr | 0.015% | 0.005% |
| 2002 | 1 Qtr | 0.012% | 0.004% |
| 2001 and Earlier | | 0.006% | 0.002% |

to bring the loan current has expired.

LA3:1144420.8

If an applicable loan purchase agreement between a Debtor and a non-affiliate of the Debtors did not contain an EPD provision, but did allow the purchaser to cause a Debtor to repurchase loans based on breaches of other types of representations and warranties, the damage calculations set forth in the foregoing table will be multiplied by 1.5667.

Damages, for purposes of distributions under the Plan, will be measured by applying the percentage factor in the final column of this table against the August 31, 2007 UPB of the loans purchased from a Debtor; provided, however, that in no case will the damage calculation for any pool be less than $5,000.

If the Creditor sold the loan prior to August 31, 2007 and does not know the UPB as of August 31, 2007, the damage assessment will be based on the UPB as of the date of sale. If a loan has been foreclosed, the measurement will be based on the UPB at the time of foreclosure. Loans that were paid-in-full or repurchased or replaced by one of the Debtors shall not be included in measuring the applicable UPB.

B.    Interaction with EPD/FPD Claims.

EPD/FPD claims will take precedence over breach claims. Thus, to the extent that a creditor establishes a valid EPD or FPD claim for a loan, that loan's UPB as of August 31, 2007 will be subtracted from the pool of loans for which breaches are computed.

This methodology is designed to avoid the need to resolve disputes over individual breach claims that are presently being asserted and to establish a methodology for assessing unliquidated claims based upon breaches that come to the fore when borrowers default in the future. Accordingly, this statistical approach will be used both with respect to individual breach claims presently being asserted by creditors and to assess unliquidated breaches to be discovered in the future; both types of breaches are subsumed within the statistical analysis set forth above.

- 4 -

III.    Information.

        In order to receive a distribution under the Plan, each Holder of an EPD/Breach
Claim must supply information to the Debtors that enables the Debtors to calculate the damages
that result from this protocol and to ensure that multiple creditors are not asserting overlapping
claims.  That information will be set forth in a questionnaire that the Debtors will submit to each
Creditor that has asserted an EPD/Breach Claim.

Note:  Nothing contained herein shall affect or impair in any way any other Claims, causes of
actions or rights that the Holders of EPD/Breach Claims, the Debtors' Estates, and/or the
Liquidating Trust may have against each other.

LA3:1144420.8

# Exhibit C

## Allocation of Joint Administrative Expense Shares

The Joint Administrative Expense Shares of Access Lending, the Holding Company Debtors, and the Operating Debtors are as follows:

| Debtor Group | April 2, 2007 through April 27, 2007[1] | April 28, 2007 through Effective Date |
|---|---|---|
| Access Lending | 0.7%[2] | 0% |
| Holding Company Debtors | 22.4% | 22.6% |
| Operating Debtors | 76.8% | 77.4% |

---

[1] If Access Lending is removed from the Plan pursuant to Article 8.J.7 of the Plan, then the Joint Administrative Share allocations set forth in this Exhibit C to the Plan for the period from April 28, 2007 through the Effective Date shall also apply to the period from April 2, 2007 through April 27, 2007; provided, however, that if Access Lending is removed from the Plan, the Holding Company Debtors and the Operating Debtors shall be permitted to seek reimbursement from Access Lending for expenses or any portions thereof paid by the Holding Company Debtors or the Operating Debtors on behalf of Access Lending during the Chapter 11 Cases.

[2] This allocation is subject to Article 10.F.4 of the Plan.