IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, *et al.*,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

### NOTICE OF SUBMISSION OF THE NEW CENTURY LIQUIDATING TRUST'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 20, 2010, the United States Bankruptcy Court for the District of Delaware

(the "Court") conducted a trial on the merits of the proof of claim filed by Pierre Augustin

against New Century Mortgage Corporation (the "Trial").  At the conclusion of the Trial, the

Court directed the New Century Liquidating Trust (the "Trust") to file its proposed findings of

fact and conclusions of law with the Court pursuant to a consensual scheduling order.

---

[1] The pre-petition Debtors were the following entities:  New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation; New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

Consistent with the Court's direction, attached hereto as **Exhibit A** is the Trust's

proposed findings of fact and conclusions of law concerning the Trial.


Dated: December 17, 2010                    Respectfully submitted,

                                            BLANK ROME LLP

                                            */s/ David W. Carickhoff*
                                            David W. Carickhoff (No. 3715)
                                            1201 Market Street, Suite 800
                                            Wilmington, Delaware 19801

                                            *Co-Counsel to New Century Liquidating Trust*

                                                    -and-

                                            BUCKLEY SANDLER, LLP
                                            Caitlin Kasmar
                                            11250 24th Street, N.W., Suite 700
                                            Washington, DC  20037

                                            *Special Regulatory Counsel to*
                                            *New Century Liquidating Trust*

# Exhibit A

# Proposed Findings of Fact and

# Conclusions of Law

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEW CENTURY TRS HOLDINGS, | : | Case No. 07-10416 (KJC) |
| INC., a Delaware corporation, *et al.*,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
CONCERNING CLAIM OF PIERRE AUGUSTIN AGAINST
<u>NEW CENTURY MORTGAGE CORPORATION</u>**

On October 20, 2010, this Court conducted a trial (the "Trial") on the merits of the proof

of claim, claim number 3759 (the "Proof of Claim"), filed by Pierre R. Augustin ("Mr.

Augustin") against New Century Mortgage Corporation ("New Century").  The findings of fact

and conclusions of law set forth herein constitute this Court's findings of fact and conclusions of

law pursuant to Fed. R. Civ. P. 52, as made applicable herein by Fed. R. Bankr. P. 7052 and

9014.  To the extent any of the following findings of fact constitute conclusions of law, they are

adopted as such.  To the extent any of the following conclusions of law constitute findings of

fact, they are adopted as such.

---

[1]  The pre-petition Debtors were the following entities:  New Century Financial Corporation (f/k/a New Century
REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a
Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage
Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital
Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com,
Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a
California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership;
NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New
Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation;
New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a
Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad
Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage
Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral,
L.P., a Delaware limited partnership.

THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT:[2]

## **GENERAL CASE BACKGROUND**

1.      On April 2, 2007 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") (with the exception of New Century Warehouse Corporation) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.  Until the *Second Amended Joint Chapter 11 Plan of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* (the "Original Plan")[3] became effective on August 1, 2008, the Debtors continued in the management and operation of their businesses pursuant to Bankruptcy Code sections 1107 and 1108.

2.      On April 23, 2008, the Debtors filed the Original Plan [D.I. 6412].[4]

3.      On July 15, 2008, the Court entered the order confirming the Original Plan [D.I. 8596] (the "Original Confirmation Order").  The order amending the Original Confirmation Order was entered on July 22, 2008.

4.      On August 1, 2008 (the "Original Effective Date"), the Original Plan became effective.  Pursuant to the terms of the Original Plan, on the Original Effective Date the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Trust and appointing Alan M. Jacobs as Trustee of the Trust.  On the Original Effective Date,

---

[2]  At the start of the Trial, the Trust and Mr. Augustin agreed that the facts set forth below in paragraphs 1-19, 21, 23-24, 31, 49, 53-59, 62-63 and 65-66 are not in dispute.  *See* Transcript of October 20, 2010 Trial, 46:19 – 48:24 (hereafter, "Tr.").

[3]  All capitalized terms not herein defined shall have the same meaning ascribed to them in the Modified Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of September 30, 2009 (the "Modified Plan").

[4]  All "D.I." references are to the Debtors' chapter 11 docket in this Court, jointly administered under Case No. 07-10416.

2

among other things, all Assets of the Debtors (excluding Access Lending Assets but including Access Lending Interests) were distributed to the Trust and all of the remaining members of the Debtors ' Board of Directors and Officers ceased to serve in those capacities by operation of the Original Confirmation Order.

5.      On August 4, 2008, the *Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements, and Rejection Damage Claims* [D.I. 8705] (the "Notice of Effective Date") was filed.

6.      On June 16, 2009, the United States District Court for the District of Delaware (the "District Court") issued a Memorandum Opinion and an order reversing the Original Confirmation Order (together, the "Order Reversing Confirmation").

7.      On September 30, 2009, the Trustee filed the Modified Plan [D.I. 9905].

8.      On November 20, 2009, the Court entered an order confirming the Modified Plan (the "Modified Confirmation Order") [D.I. 9957].

9.      On December 1, 2009 (the "Modified Effective Date"), the Modified Plan became effective.  On the Modified Effective Date, the Modified Plan, *inter alia*, (a) confirmed that all actions taken by the Trustee subsequent to the Original Effective Date were valid and binding, (b) adopted, ratified and confirmed the formation of the Trust as of the Original Effective Date, (c) adopted, ratified and confirmed the Liquidating Trust Agreement as of the Original Effective Date, and (d) adopted, ratified and confirmed the appointment of Alan M. Jacobs as Trustee as of the Original Effective Date.

3

10. Pursuant to Section 3.3. of the Trust Agreement and the Modified Confirmation Order, as of the Original Effective Date, the Trust reserved the exclusive right to object to the allowance of any claim, and the Trustee was given the authority and power to file objections regarding the allowance and disallowance of claims.

## **PROCEDURAL POSTURE**

11. On or about January 8, 2008, Mr. Augustin filed two proofs of claim against New Century, claim numbers 3781 and 3759, which were identical. Each proof of claim asserted a claim amount of $700,264.80 plus punitive damages in an unknown amount on the basis of civil conspiracy of mortgage fraud.

12. On February 22, 2008, the Debtors filed the *Debtors' Fifteenth Omnibus Objection to Claims: Non-Substantive Objection Pursuant to 11 U.S.C. Sections 502, 503, 506 and 507, Fed. R. Bankr. P. 3007 and 9014, and Del. Bankr. L.R. 3007-1 to Certain (A) Amended and Superseded Claims; (B) Duplicate Claims; (C) Late Filed Claims; and (D) No Supporting Documentation Claims* [D.I. 5024] (the "Fifteenth Omnibus Objection"). The Fifteenth Omnibus Objection sought to expunge, among other claims, claims that were duplicative of other claims filed against the Debtors. Claim number 3781 (the "Duplicate Claim") filed by Mr. Augustin was one of the claims that the Debtors sought to expunge in the Fifteenth Omnibus Objection.

13. On March 27, 2008, the Debtors filed the *Debtors' Eighteenth Omnibus Objection: Substantive Objection Pursuant to 11 U.S.C. Sections 502, 503, 506 and 507, Bankruptcy Rules 3007 and 9014, and Local Rule 3007-1 to Certain (A) Books and Records Claims; (B) Insufficient Documentation Claims; (C) Multiple-Debtor Duplicate Claims; and (D)*

4

*Reduced and/or Reclassified Claims* [D.I. 5537] (the "Eighteenth Omnibus Objection"). The Eighteenth Omnibus Objection sought to expunge, among other claims, claims that were not reflected in the Debtors' books and records and that had insufficient documentation to support them. The Proof of Claim (claim number 3759) filed by Mr. Augustin was one of the claims that the Debtors sought to expunge in the Eighteenth Omnibus Objection.

14.     Once the Original Plan became effective, the Trust assumed prosecution of the Debtors' unresolved claim objections, including the Fifteenth Omnibus Objection and the Eighteenth Omnibus Objection.

15.     Mr. Augustin consented to the relief requested in the Fifteenth Omnibus Objection as it relates to the Duplicate Claim (*i.e.*, expunging the Duplicate Claim).

16.     On January 21, 2009, the Court heard argument of counsel for the Trust and Mr. Augustin regarding the priority of the Proof of Claim. The Court determined that there was no legal basis for the asserted priority of the Proof of Claim.

17.     On January 29, 2009, the Court entered an order expunging the Duplicate Claim, reclassifying the Proof of Claim as a general unsecured claim, and expressly providing that nothing in the order is meant to preclude any claim of rescission that Mr. Augustin may have [D.I. 9323]. Mr. Augustin has not filed anything to amend the Proof of Claim. Tr. 83:17-18.

18.     Accordingly, the Proof of Claim (claim no. 3759), asserting a claim amount of $700,264.80 plus punitive damages in an unknown amount on the basis of civil conspiracy of mortgage fraud, was the focus of the Trial.

130566.01600/40192361v.3

## DISCOVERY SCHEDULE AND DISPUTES

19.     On September 4, 2008, the Court issued a scheduling order regarding the merits of the Proof of Claim [D.I. 8905] (the "Scheduling Order").  Fact discovery was scheduled to close on December 19, 2008.

20.     Mr. Augustin has chosen to represent himself in this matter.  Due to various discovery disputes that were in large part caused by Mr. Augustin's lack of knowledge of the law, the deadlines in the Scheduling Order were extended.  Mr. Augustin also appealed certain of this Court's orders regarding the discovery disputes.  Those appeals were ultimately dismissed by the District Court, the last of which was dismissed on July 15, 2010, enabling the Court to proceed with the Trial.

## FACTS SPECIFIC TO THE CLAIM DISPUTE

### The Borrowers

21.     Mr. Augustin has a Bachelor's of Science degree in political science, business, and economics from Salem State College.  He received a Masters in Public Administration from Suffolk University and, in 1999, a Master's in Business Administration from the University of Lowell.

22.     Mr. Augustin had been involved in lending transactions as a borrower prior to the receiving the loan from New Century.  In January 1999, Mr. Augustin borrowed money to purchase a house and he refinanced the house in 2003.  Tr. 164:18-25.  Mr. Augustin was also a self-employed entrepreneur prior to receiving his loan from New Century, running an import and export business with operations in Haiti.  Tr. 165:4-17.

23.     On or about May 17, 2002, Danversbank (f/k/a Danvers Savings Bank) issued a small business loan to Mr. Augustin's business, in the approximate amount of $55,000 (the "Danvers Loan"), to enable Mr. Augustin's business to export products to Haiti. On May 17, 2002, Mr. Augustin executed an Unconditional Personal Guaranty in connection with the Danvers Loan.

24.     Mr. Augustin asserts that due to the political and economic climate in Haiti, the retail operations of his business in Haiti suffered, rendering his business unable to make payments due under the Danvers Loan, ultimately resulting in Mr. Augustin personally filing for chapter 7 bankruptcy on September 26, 2005, to protect his home and to eliminate all unsecured debts.

**Borrowers' Loan Applications Submitted to New Century**

25.     On December 18, 2003, Briget Ngampa ("Ms. Ngampa"), Mr. Augustin's wife, executed a Massachusetts Mortgage Broker Disclosure with Allied Home Mortgage Capital Corp. ("Allied"), a mortgage broker, that states that Allied is not her agent. Trust Ex. 3; Tr. 84:8-10.

26.     Further, on December 18, 2003, Ms. Ngampa executed a Massachusetts High Cost Loan Application Disclosure provided by Allied, that states: "The loan which will be offered to you is not necessarily the least expensive loan available to you and you are advised to shop around to determine competitive interest rates, points, and other fees and charges." Trust Ex. 4; Tr. 86:7-12.

27.     On January 22, 2004, New Century received a loan application from Allied in connection with a loan sought by Mr. Augustin and Ms. Ngampa. Tr. 154:25 – 155:1. New

Century identified this as loan number 0001344152 and any New Century documents referring or relating to the application bear such number. This was the only previous loan application submitted to New Century on behalf of Mr. Augustin and Ms. Ngampa. Tr. 133:3-13. On this application, Ms. Ngampa was listed as the primary borrower and Mr. Augustin was listed as the co-borrower. Tr. 133:3-13. New Century denied this application on February 24, 2004, and issued a letter to the same effect on March 9, 2004. Tr: 131:21-23; 132:19 – 133:13; 155:21-25; 158:16-19; Augustin Exs. 4 and 5. It appears that the application was denied by New Century because of the broker's failure to provide all documentation necessary to proceed with the loan. Tr. 156:5-10; 160:18 – 161:1.

28.     On or about March 17, 2004, Allied submitted another loan application to New Century on behalf of Mr. Augustin and Ms. Ngampa (collectively, the "Borrowers"). Tr. 161:10-22. New Century identified this as loan number 0001455240 and any New Century documents referring or relating to the application bear such number (the "NCMC Loan"). Like the prior application, Ms. Ngampa was listed as the primary borrower and Mr. Augustin was listed as the co-borrower. Tr. 133:3-13. The NCMC Loan is the subject of the Proof of Claim.

29.     By letter dated March 17, 2004, in connection with the NCMC Loan, New Century sent various documents addressed to Ms. Ngampa to the Borrowers' home address. Trust Exs. 5-17; Tr. 89:3 – 103:17. The documents included the following: Loan Information Letter, Truth in Lending Disclosure Statement, Good Faith Estimate, Servicing Disclosure, Appraisal Disclosure, Fair Lending Notice / ECOA, Consumer's Guide To Obtaining A Home Mortgage, Uniform Mortgage Loan Cost Worksheet, Mortgage Lender Disclosure, Adjustable Rate Mortgage Loan Program Disclosure, Mortgage Loan Commitment, and Mortgage Loan

8

Commitment Addendum (collectively with the March 17, 2004 letter, the "Loan Information Package"). Trust Exs. 5-17. The Borrowers' receipt of Loan Information Package is evidenced by the fact that such documents are either signed or initialed by Mr. Augustin and/or Ms. Ngampa and most are dated March 22, 2004.[5] Trust Exs. 5-17; Tr. 89:3 – 103:17. Thus, the Borrowers had received the Loan Information Package not less than twenty-four (24) days prior to the April 15, 2004 closing on the loan provided by New Century.

30.    The documents in the Loan Information Package clearly indicated that the loan product being offered by New Century to the Borrowers was an adjustable rate loan that had prepayment penalties. *See*, *e.g.*, Truth in Lending Disclosure Statement (Trust Ex. 7); Mortgage Lender Disclosure (Trust Ex. 14); Adjustable Rate Mortgage Loan Program Disclosure (Trust Ex. 15); and Mortgage Loan Commitment (Trust Ex. 16).[6]

31.    On April 15, 2004, Mr. Augustin and Ms. Ngampa closed on the NCMC Loan, pursuant to which they borrowed $288,000 from New Century. The NCMC Loan was secured by a mortgage on the property located at 28 Cedar Street, Lowell, Massachusetts  01852 (the "Property"). The Borrowers received $27,017.06 cash from the transaction, which Mr. Augustin invested into his business. Proceeds of the NCMC Loan were used in part to pay off in full a mortgage held by Ameriquest Mortgage in the amount of $229,621.05. Proceeds of the NCMC Loan also paid amounts owing to the City of Lowell in the amount of $15,911.00.

---

[5]  The Loan Information Letter is not dated. The Consumer's Guide To Obtaining A Home Mortgage bears the date of March 17, 2004 at the top, which is the date of the New Century letter to Ms. Ngampa. Further, the Uniform Mortgage Loan Cost Worksheet signed by Mr. Augustin and dated March 22, 2004, includes an acknowledgement that Mr. Augustin received the Consumer's Guide to Obtaining a Home Mortgage. Trust Ex. 13.

[6]  The Consumer's Guide to Obtaining a Home Mortgage included in the Loan Information Package contains a glossary of terms initialed by Mr. Augustin that defines the terms "Adjustable or Variable Rate Mortgage (ARM or VRM)" and "Right of Rescission." Trust Ex. 12.

32.     At the closing of the NCMC Loan, the Borrowers signed the following

documents, all dated April 15, 2004 (unless otherwise noted):  Uniform Residential Loan

Application (Tr. 109:1-6; Trust Ex. 19); Addendum to Residential Loan Application (not dated)

(Tr. 110:9-15; Trust Ex. 20); Mortgage (Tr. 111:24 – 112:3; Trust Ex. 21); Adjustable Rate Note

(Tr. 113:3-7; Trust Ex. 22); Adjustable Rate Rider (Tr. 114:19-23; Trust Ex. 23); Adjustable

Rate Rider Addendum (Tr. 115:5-9; Trust Ex. 24); Prepayment Rider (Tr. 115:15-19; Trust Ex.

25); Notice of Right to Cancel (Tr. 116:6-10; Trust Ex. 27); Good Faith Estimate (Tr. 116:15-18;

Trust Ex. 28); Final HUD 1 Settlement Statement (Tr. 116:19-23; Trust Ex. 29); Truth-In-

Lending Disclosure Statement (Tr. 117:18-22; Trust Ex. 30); Mortgage Lender Disclosure (Tr.

118:6-9; Trust Ex. 31); Consumer's Guide To Obtaining A Home Mortgage (Trust Ex. 32); Fair

Lending Notice/ ECOA (Tr. 118:14-19; Trust Ex. 33); Name Verification Affidavits (Tr. 118:14-

19; Trust Ex. 34); Uniform Mortgage Loan Cost Worksheet (Tr. 118:14-19; Trust Ex. 35);

Adjustable Rate Mortgage Loan Program Disclosure (Tr. 118:14-19; Trust Ex. 36); Servicing

Disclosure (Tr. 118:14-19; Trust Ex. 37); Borrower's Certification and Authorization dated April

15, 2004 (Tr. 118:14-19; Trust Ex. 38); and Occupancy Affidavit and Financial Status (Tr.

119:11-15; Trust Ex. 39) (collectively, the "Closing Documents").

33.     It is clear from the Closing Documents provided to and signed by the Borrowers

at closing that the NCMC Loan was an adjustable rate mortgage (ARM) and that there was a

prepayment penalty associated with the NCMC Loan.  *See*, *e.g.*, Uniform Residential Loan

Application (Trust Ex. 19); Adjustable Rate Note (Trust Ex. 22); Adjustable Rate Rider (Trust

Ex. 23); Adjustable Rate Rider Addendum (Trust Ex. 24); Prepayment Rider (Trust Ex. 25);

Truth-In-Lending Disclosure Statement (Trust Ex. 30); Mortgage Lender Disclosure (Tr. 118:6-

9; Trust Ex. 31); Consumer's Guide To Obtaining A Home Mortgage (Trust Ex. 32); and

10

Adjustable Rate Mortgage Loan Program Disclosure (Trust Ex. 36).

34.     The Universal Residential Loan Application (the "Application") contains an

acknowledgement stating:

> Each of the undersigned specifically represents to Lender … and agrees and
> acknowledges that (1) the information provided in this application is true and
> correct as of the date set forth opposite my signature and that any intentional
> or negligent misrepresentation of this information contained in this application
> may result in civil liability, including monetary damages to any person who
> may suffer any loss due to reliance upon any misrepresentation that I have
> made on this application, and/or in criminal penalties …

Trust Ex. 19.

35.     The Borrowers' also signed the Borrowers' Certification and Authorization at

closing whereby they certified that:

> 1.  We have applied for a mortgage loan from New Century Mortgage
> Corporation.  In applying for the loan, I/We completed a loan application
> containing various information on the purpose of the loan, the amount and
> source of the down payment, employment and income information, and assets
> and liabilities.  I/We certify that all of the information is true and complete.
> I/We made no misrepresentations in the loan application or other documents,
> nor did I/We omit any pertinent information ….
>
> 3.  I/We fully understand that it is a Federal crime punishable by fine or
> imprisonment, or both, to knowingly make any false statements when
> applying for this mortgage, as applicable under the provisions of Title 18,
> United States Code, Section 1014.

Trust Ex. 38.

36.     Despite the acknowledgements and certifications by the Borrowers, the Borrowers

knowingly submitted false and misleading information in the Application.  *See*, *e.g.*, Tr. 75:4-6;

165:19 – 166:13; 178:11-12; 180:15-20; Trust Ex. 2, Dep. Tr. 197:2 – 198:2.  The false and

misleading information includes the following:  (i) Ms. Ngampa's income was overstated at

$4,000 per month; (ii) Ms. Ngampa's occupation as "Teacher" was misleading, as she was only a

11

substitute teacher; and (iii) the Danvers Loan is not listed as a liability anywhere on the Application despite the fact that Mr. Augustin had personally guaranteed the loan. Trust Ex. 19; Tr. 75:4-6; 107:10-16; 108:4-5; 108:14-18; 109:16-17; 109:23 – 110:1; 165:19 – 166:13; 178:11-12; 180:15-20.

37.     The NCMC Loan was funded on April 20, 2004. Tr. 153:14.

**The Broker -- Allied**

38.     The NCMC Loan was a wholesale transaction, meaning the broker was New Century's client. Tr. 122:19-20. Allied, rather than New Century, had all of the interaction with the Borrowers. Tr. 122:21-22. Allied, rather than New Century, took the loan application, ordered the credit report of the Borrowers, and ordered an appraisal of the Borrowers' property. Tr. 122:21-25. Allied would package up all of this information and submit it to various lenders. Tr. 123:1. In this case, Allied submitted the NCMC Loan application to New Century. Tr. 123:2.

39.     The only contact New Century would have had with the Borrowers would be to send the Borrowers an initial disclosure package within three days of receiving the loan application. Tr. 123:22 – 124:3. Mr. Augustin has not alleged any other contact with New Century prior to the funding of the loan.

40.     Allied was a very large broker that had branches all over the country. Tr. 123:6-8. Allied and New Century had a broker agreement that provided that Allied is not an agent or employee of New Century and pursuant to which Allied agreed to abide by all state, local and federal rules and regulations and to be properly licensed. Tr. 123:9-19. Brokers are not agents or employees of New Century. Tr. 123:13-16. No person at Allied ever told Mr. Augustin that

Allied was owned or associated with New Century. Tr. 119:22-25.

**The Lender – New Century**

41.     As a lender, New Century offered different loan products, including full documentation loans, limited documentation loans, and stated income loans. Tr. 126:6-10. New Century also offered adjustable rate mortgages ("ARMs") fixed for various periods of time, including two-year, three-year and five-year fixed periods for ARMs. Tr. 126:11-13.

42.     The NCMC Loan was a stated income loan. Tr. 128:25 – 129:2. In connection with the NCMC Loan, Allied submitted a sheet indicating the product sought from New Century was a stated income loan. Tr. 127:9-15. A stated income loan provides no supporting documentation to support the income listed on the loan application, and no supporting documentation is required or requested to support the stated income. Tr. 126:15-17; 143:2; 162:20-25. New Century would not have requested any W-2s from the Borrowers and New Century's loan file for the Borrowers did not contain any W-2s. Tr. 162:20-25.

43.     The stated income loan application is submitted under penalty of perjury that it is true and correct. Tr. 126:17-19. A stated income loan often has a slightly higher interest rate because the borrowers are not providing the documentation to support the stated income. Tr. 127:18-20. This product may be preferred by a borrower that is self-employed, like Mr. Augustin, because the loan can be processed more quickly and the borrower may not want to prepare or gather his/her relevant tax returns – personal and corporate. Tr. 127:16-25.

44.     On a stated income loan, no income verification is performed. Tr. 163:1-4. The stated income must be consistent with the average income for the specified industry. Tr. 126:17-19; 143:1-2. New Century's guidelines for stated income loans in effect at the time of the

closing of the NCMC Loan required a verbal verification of employment.  Tr. 129:3 – 130:3; Trust Ex. 55.  For a salaried borrower, New Century was to perform a "verbal audit" and maintain written evidence of the telephone contact with the employer by completing the following steps:  (i)  identify the name of the employer; (ii) identify the name and title of the individual contacted at the employer's office; (iii) confirm that the borrower is currently employed; (iv) confirm the borrower's position and hire date; (v) indicate the date of contact; and (vi) identify the name of the associate who made the contact.  Tr. 129:3 – 130:3; Trust Ex. 55.  The guidelines required a verbal verification of employment prior to closing, not a verbal verification of income.  Tr. 143:3-8; Trust Ex. 55.

45.     The verbal verification of employment form included in the NCMC Loan file indicates that the underwriter at New Century performed a verbal verification of Ms. Ngampa's employment that was consistent with New Century's underwriting guidelines.  Tr. 130:4-22.

**The Closing Attorney – Samuel Reef**

46.     Attorney Samuel Reef was the closing attorney for the NCMC Loan.  Tr. 133:19-20.  Mr. Reef never told Mr. Augustin that he was Mr. Augustin's lawyer.  Trust Ex. 2, Dep. Tr. 21:12-16.  The Addendum to Residential Loan Application signed by the Borrowers indicates that "The responsibility of the attorney for the Lender is to protect the interests of the Lender" and that "You, the Borrower, may, at your own expense, engage an attorney of your own selection to represent your interests in the transaction." Trust Ex. 20.

47.     The closing attorney is an authorized agent of a title company.  Tr. 134:3; 150:18-22; Trust Ex. 56.  The closing attorney performs a title search to make sure that

there are no existing liens on the property. Tr. 134:3-5. To the extent there are existing liens, the closing attorney obtains payoff statements to make sure the liens are paid in full – ensuring a lender's lien position. Tr. 134:3-9.

48.     New Century does not hire the closing attorney. Tr. 134:10-13. In this case, Allied would have chosen the closing attorney, not New Century. Tr. 134:12-15. New Century did not have any contract or agreement of any kind with the closing attorney. Tr. 134:19-23. New Century did not pay the closing attorney; Mr. Reef was paid through the loan proceeds. Tr. 134:16-18.

49.     While Mr. Augustin alleges that Mr. Reef rushed through the closing on the NCMC Loan, Mr. Augustin admitted that he did not try to read the loan documents at the closing on the NCMC Loan.

50.     Mr. Reef failed to identify the Danvers Loan and corresponding mortgage on the Property through his title search. Tr. 151:14-21; 152:17-18. As a result of this error, New Century was in a second lien position for a short amount of time and the title insurer, Commonwealth Land Title Insurance Company ("Commonwealth"), had to repurchase the Danvers Loan. Tr. 151:5-15; 152:21-22.

**The Title Insurer – Commonwealth Land Title Ins. Co.**

51.     Commonwealth provided title insurance to New Century in connection with the NCMC Loan, insuring New Century's lien position. Tr. 137:22-25. If there was a lien that the closing attorney did not catch, as was the case here, Commonwealth would be liable to either pay off such loan or indemnify New Century or take other action to ensure that New Century's lien is in the proper position. Tr. 138:1-4. The title insurance

policy provided to New Century by Commonwealth was solely for the benefit of New Century and its successors and/or assigns; there were no other third party beneficiaries. Tr. 138:5-14; Trust Ex. 56.

**The Real Property Appraiser – Beacon Appraisal**

52.     The appraisal used in connection with the NCMC Loan, prepared by Beacon Appraisal and requested by Allied, indicates that the Property had a value of $320,000 as of December 29, 2003.  Trust Ex. 2, Dep. Tr. Ex. 3, p. 227-44 of 295.  Mr. Augustin believed the Property had a value of $300,000 in early to mid-2004.  Trust Ex. 2, Dep. Tr. 106:3-14.

**The Borrowers' Financial Troubles**

53.     Between April 2004 and September 2005, Mr. Augustin made a little less than $45,000 per year.  He was able to make the payments owing on the NCMC Loan during this time.  The monthly payment on the NCMC Loan did not change during this time.  The monthly payment under the NCMC Loan was $1,945.18.  Mr. Augustin's monthly payment under his prior Ameriquest loan was $1,667.12.

54.     Prior to September 2004, Mr. Augustin was unable to make the payments due under the Danvers Loan.  This resulted in Danversbank taking actions to foreclose on the Property.

55.     In September 2004, Ms. Ngampa moved to Illinois because of the stress related to Mr. Augustin's failed operations in Haiti and Danversbank calling about foreclosing on the Property and, once in Illinois, she took a chemical engineering job with Abbott Laboratories.  During this time, Mr. Augustin traveled back and forth

between the United States and Haiti.

56.     Between April 2004 and September 2005, Mr. Augustin applied for another refinancing loan with Chase, hoping to get enough money to pay off the Danvers Loan.

57.     On September 26, 2005, Mr. Augustin filed for personal bankruptcy under chapter 7, in the United States Bankruptcy Court for the District of Massachusetts, Case No. 05-46957. Jonathan R. Goldsmith was appointed chapter 7 trustee over Mr. Augustin's estate. The cause of Mr. Augustin's personal bankruptcy relates primarily to the Danvers Loan and his attempt to save his home.

58.     On or about March 8, 2006, Mr. Augustin commenced an action against Danversbank, Ameriquest Mortgage, Global Consultants Direct, Alen H. Segal, Old Republic National Insurance, New Century, Allied, Samuel Reef, Commonwealth and Chase Home Finance by filing a complaint (the "Complaint") in the United States District Court for the District of Massachusetts, Case No. 06-10368-NMG (the "Massachusetts Action"). Mr. Augustin indicates that the Complaint "is in response of defendant, Danversbank, foreclosing on plaintiff's residential house scheduled for March 15, 2006."

59.     Mr. Augustin indicated that he was able to continue paying the amounts due on the NCMC Loan and would have continued to do so if the judge in his bankruptcy case had not granted Danversbank stay relief to proceed to foreclose on the Property.

60.     The Borrowers' default on the NCMC Loan was the result of Mr. Augustin's inability to timely make payments under the Danvers Loan because of his

failed business.

**The NCMC Loan Post-Closing**

61.     After the NCMC Loan closed and was funded, New Century sold the NCMC Loan to one of its investors.  Tr. 136:6-10.  Thereafter, servicing of the NCMC Loan was released.  Tr. 136:11-14.  After the NCMC Loan was sold and the New Century released the servicing rights, New Century did not retain any interest in the NCMC Loan.  Tr. 137:8-12.

62.     On or about March 9, 2006, Commonwealth purchased a mortgage on the property held by Danversbank dated May 17, 2002 (the "Danvers Mortgage"), and entered into an Assignment of Mortgage from Danversbank dated March 9, 2006.

63.     On March 29, 2006, Commonwealth, as holder of the Danvers Mortgage, agreed to subordinate the Danvers Mortgage to New Century's mortgage on the Property.

64.     Consistent with its obligations under the title insurance policy with New Century to address the failure to identify the Danvers Mortgage at the time of the NCMC Loan closing, Commonwealth purchased the Danvers Mortgage and subordinated it to New Century's mortgage on the property.  Trust Ex. 56.

65.     On June 28, 2007, Chase Home Finance LLC, in its capacity as attorney-in-fact for Deutsche Bank National Trust Company, Trustee, filed a foreclosure deed in the Middlesex County Registry of Deeds.

66.     On or about February 9, 2008, Commonwealth filed a Waiver of Notice of Foreclosure in the Middlesex County Registry of Deeds in connection with the

foreclosure on the Property.

THIS COURT REACHES THE FOLLOWING CONCLUSIONS OF LAW:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

2.      By filing the Proof of Claim with this Court, Mr. Augustin submitted himself to the equitable jurisdiction of this Court to determine his asserted claim against New Century, one of the above-captioned debtors.

3.      In the interest of thoroughness, these [Proposed] Conclusions of Law will address each of the claims raised by Mr. Augustin in his Proof of Claim; however, at the evidentiary hearing in this matter, Mr. Augustin did not present evidence or argument on most of his original claims, including all the statutory claims, and it is within the Court's discretion to dismiss those claims for failure to prosecute. *See, e.g., Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962).

4.      New Century provided the Borrowers with the necessary disclosures required by law. While Mr. Augustin has asserted that he only received one copy of the Federal Truth-In-Lending Disclosure Statement, even if this were true, Mr. Augustin has failed to show any resulting harm. In any event, the federal Truth in Lending Act ("TILA") and its associated regulations do not require that a borrower be given multiple copies of the Truth in Lending Disclosure Statement. *See* 12 C.F.R. § 226.17(a)(1) (requiring that disclosures be made "clearly and conspicuously in writing, in a form that the consumer may keep"). By providing Borrowers with at least one copy of the Truth in Lending Disclosure Statement, New Century complied with TILA.

19

5.　　　The Borrowers knowingly submitted false and misleading information in the Application.  *See*, *e.g.*, Tr. 75:4-6; 165:19 – 166:13; 178:11-12; 180:15-20; Trust Ex. 2, Dep. Tr. 197:2 – 198:2.  The false and misleading information includes the following:  (i) Ms. Ngampa's income was overstated at $4,000 per month; (ii) Ms. Ngampa's occupation as "Teacher" was misleading, as she was only a substitute teacher; and (iii) the Danvers Loan is not listed as a liability anywhere on the Application despite the fact that Mr. Augustin had personally guaranteed the loan.  Trust Ex. 19; Tr. 75:4-6; 107:10-16; 108:4-5; 108:14-18; 109:16-17; 109:23 – 110:1; 165:19 – 166:13; 178:11-12; 180:15-20.  The Borrowers are barred from recovering any claim against New Century as a result of knowingly submitting false information in their Application to obtain the NCMC Loan – misconduct that relates directly to the merits of Mr. Augustin's claims.  *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995) ("The doctrine of unclean hands [] applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'") (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)); *In re Mullarkey*, 410 B.R. 338 (Bankr. D. Mass. 2009) ("The unclean hands doctrine is a 'self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper have been the behavior of the defendant.'") (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)).

6.　　　Mr. Augustin's admitted failure to read the loan documents before signing them does not prevent him from being bound by the documents' terms, nor does it allow him to argue that he was unaware of the misstatements made therein by him and his wife.  *Smith v. Jenkins*,

20

718 F. Supp. 2d 155, 167 (D. Mass. 2010) ("A person who executes a document will ordinarily be held to its terms whether or not he or she has read it and whether or not he or she claims to have understood its terms.") *Haufler v. Zotos*, 845 N.E.2d 322, 333 (Mass. Sup. Ct. 2002) ("'The general rule is, that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not.'") (quoting *Wilkisius v. Sheehan*, 155 N.E. 5 (Mass. 1927)).

7.     New Century followed its underwriting guidelines in verifying the employment of Ms. Ngampa. Tr. 130:4-22.   Mr. Augustin has failed to prove any fraud on the part of New Century in connection with the NCMC Loan.

8.     New Century owed no duty to the Borrowers. *Famm Steel Inc.v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009) (". . . [U]nder Massachusetts law, the relationship between a lender and a borrower, without more, does not establish a fiduciary duty."); *Pimental v. Wachovia Mortgage Corp.*, 411 F. Supp. 2d 32, 39 (D. Mass. 2006) ("[l]enders normally do not owe borrowers fiduciary duties").

9.     Under Massachusetts law, to prove agency, one must establish that the agent and the principal agreed "that the agent is to act on behalf of the principal and subject to the principal's control." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 729 N.E.2d 1113, 1119 (Mass. Sup. Ct. 2000) (citing *Kirkpatrick v. Boston Mut. Life Ins. Co.*, 473 N.E.2d 173 (1985)).   In addition, apparent authority can only be created by the acts of the principal, not the agent. *Smith v. Jenkins*, 718 F. Supp. 2d 155, 165 (D. Mass. 2010) ("It is the conduct of the principal, and not the conduct of the agent, that creates apparent authority.") (citing *Sheinkopf v. Stone*, 927 F.2d 1259, 1269 (1st Cir.1991)).   Mr. Augustin has failed to prove that Allied, Mr. Reef, Commonwealth and/or Beacon were agents of New Century.   Accordingly, to the extent that

21

Allied, Mr. Reef, Commonwealth and/or Beacon are found to have any liability to the Borrowers, New Century has no liability for the same. Any claim under a theory of apparent authority similarly fails, as Mr. Augustin has not produced any evidence that New Century acted in a manner to justify a reasonable belief that Allied, Mr. Reef, Commonwealth or Beacon were agents of New Century. *See, e.g., Fernandes v. Havkin*, No. 08-11498-MBB, --- F.Supp.2d ----, 2010 WL 3155805, * 8 (D. Mass. Aug. 10, 2010).

10.     Mr. Augustin has not properly pled or proven a civil conspiracy claim. Massachusetts law recognizes two types of civil conspiracy: the first requires the plaintiff to show that the defendants, when combined, exercised a special coercive power that they did not possess individually; the second requires the plaintiff to show that the defendants engaged in a common scheme to commit a tortuous act. *Kurker v. Hill*, 689 N.E.2d 833, 836 (Mass. Ct. App. 1998). Mr. Augustin has failed to prove that New Century was involved in any civil conspiracy concerning the NCMC Loan.

11.     Mr. Augustin's attempts to rescind his signatures are ineffective because they are nothing more than general denials. Unless it is specifically denied, the validity of a signature on a negotiable instrument is admitted under Massachusetts law; general denials, without more, will not suffice. Mass. Gen. Laws c. 106 § 3-308 ; Mass. R. Civ. P. R. 8(b) ("The signature to an instrument set forth in any pleading shall be taken as admitted unless a party specifically denies its genuineness."). The burden of proof then falls on the party challenging the validity of a signature. *In re Turner,* 49 B.R. 231, 233 (Bankr. D. Mass. 1985).

12.     The NCMC Loan was not a "high cost" loan under under Massachusetts High Coast Loan law (Mass. Gen. Laws c. 183C, § 2). More importantly, Mass. Gen. Laws c. 183C was not in effect at the time the NCMC Loan closed, and the statute has no retroactivity clause.

22

Therefore, there is no basis for Mr. Augustin's claim that the NCMC Loan violates the Massachusetts High Cost Loan law.

13. New Century did not violate the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2607(a)). Mr. Augustin makes no allegations related to the adequacy of the disclosures he received, nor does he allege any other RESPA violation. Moreover, any RESPA claims alleged by Mr. Augustin are untimely under 12 U.S.C. § 2614.

14. New Century did not violate the Federal Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) or the Equal Credit Opportunity Act (15 U.S.C. § 1691 *et seq.*). Mr. Augustin has made no allegations that state a claim under either of these statutes, nor has he proven any violations of either statute.

15. New Century did not engage in "flipping" or "reverse redlining" with respect to the NCMC Loan.

16. Mr. Augustin has failed to prove any claims against New Century. Any harm to the Borrowers was a result of their own misconduct. Accordingly, New Century has no liability for any damages.

IT IS HEREBY ORDERED THAT:

1. The relief sought in the Eighteenth Omnibus Objection as to the Proof of Claim is granted. The Proof of Claim is hereby disallowed and expunged.

Dated: _____

_____
The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

23