**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.*[1] | : | Case  No. 07-10416 (KJC) |
| Debtors | : | |

## **MEMORANDUM**[2]

**BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

On September 2, 2008, Cedric Muhammad filed a request for payment of administrative expenses (the "Claim") (D.I. 8901).  The New Century Liquidating Trust (the "Trust") filed an objection to the Claim (the "Objection") (D.I. 9028).  The Objection sought to (i) disallow and expunge the Claim as an invalid administrative claim; or in the alternative, (ii) reclassify the Claim as a general unsecured claim, and (iii) disallow and expunge the reclassified general unsecured claim, because it was filed after the claims bar date.  Mr. Muhammad did not appear at the hearing scheduled for the Objection on November 19, 2008.  (Tr. 11/19/08 at 84:23 - 86:15).  By Order dated November 20, 2008, the Court sustained the Trust's Objection and disallowed the Claim (D.I. 9174).

On December 18, 2008, Mr. Muhammad filed a motion for reconsideration of the November 20, 2008 Order disallowing the Claim (D.I. 9267), to "correct errors of fact brought

---

[1]New Century TRS Holdings, Inc., New Century Financial Corporation, and certain of their direct and indirect subsidiaries filed bankruptcy petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §101 *et seq.*) on April 2, 2007 (the "Debtors"), and the cases have been jointly administered pursuant to an Order dated April 3, 2007 (D.I. 52).

[2]This Memorandum constitutes the findings of fact and conclusions of law, required by Fed.R.Bankr.P. 7052.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B).

before this Honorable Court" and asking the Court to consider the "Affidavit of Truth," which he filed in response to the Objection on November 12, 2008, and which he claimed was not docketed properly. The Trust objected to the motion for reconsideration (D.I. 9286). On January 29, 2009, the Court entered an order granting the motion for reconsideration and setting an evidentiary hearing regarding the Trust's objection to the Claim.[3] (D.I. 9322).

An evidentiary hearing was held on March 26, 2009 to consider the Trust's objection to the Claim. The Trust and Mr. Muhammad filed post-hearing proposed findings of fact and conclusions of law. For the reasons set forth below, the Claim will be disallowed.

## FACTUAL BACKGROUND

(1)    The Loan Transaction

On or about March 19, 2004, Mr. Muhammad signed a Note promising to pay a loan received from New Century Mortgage Corporation ("NCMC") in the principal amount of $78,030.00 (the "Note") (Ex. T-2, Tr. at 58:25 - 59:4).[4] The Note was given in connection with a mortgage loan transaction between Mr. Muhammad and NCMC (the "Loan") to fund Mr. Muhammad's purchase of a house located at 1586 Hope Street, Memphis, Tennessee 38111 (the "Property"). (Tr. at 50:24 - 51:10, 80:16 - 81:1). The full purchase price of the Property was approximately $90,000.00, and Mr. Muhammad provided the balance of the purchase price to the seller. (Tr. at 52:25- 53:2). After the Loan closed, Mr. Muhammad took possession of the

---

[3]Paragraph 32 of Mr. Muhammad's proposed findings of facts and conclusions of law (D.I. 9670) argues that this Court already determined that his Claim should not be disallowed or expunged when it vacated the November 20, 2008 Order. However, in granting the motion for reconsideration, the merits of the Claim were not addressed. The effect of the order granting the motion for reconsideration was to set an evidentiary hearing and provide Mr. Muhammad with the opportunity to support his Claim.

[4]Unless otherwise noted, all transcript citations ("Tr. at __") refer to the transcript of the evidentiary hearing held on March 26, 2009 (D.I. 9570).

Property and he continued to live there through the date of the evidentiary hearing. (Tr. at 53:15-53:24).

On April 24, 2004, NCMC sold the Note and Mortgage pursuant to the terms of the Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement between Morgan Stanley Mortgage Capital, Inc., as purchaser ("Morgan Stanley"), and NC Capital Corporation, as seller, dated as of July 1, 2003 (the "Sale Agreement"). (Ex. T-1, Tr. at 81:1-81:8).[5] By letter dated July 8, 2004, NCMC sent notice to Mr. Muhammad that the servicing rights to his Loan had been transferred to HomEq Servicing Corporation as of July 31, 2004. (Ex. T-4). As of July 31, 2004, NCMC no longer had any interest in the Loan. (Tr. at 81:8-81:10).

Mr. Muhammad made sporadic payments to HomEq Servicing Corporation between June 2006 and May 2007. (Ex. M-4). By letter dated April 25, 2008, however, the law firm of Shapiro and Kirsch, LLP advised Mr. Muhammad that they had been retained to initiate foreclosure proceedings on the mortgage to collect the indebtedness due on the Loan. (Ex. M-8).[6]

(2)     The Bankruptcy Filing

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. By order dated June 28, 2007 (the "Bar Date Order"), this Court established

---

[5]Deutsche Bank National Trust Company served as the trustee under the Sale Agreement, which was a standing agreement between Morgan Stanley and the Debtors under which Morgan Stanley would purchase loans from the Debtors. (Ex. T-1).

[6]Exhibit M-5 shows that Mr. Muhammad wire transferred funds to HomeEq Servicing between May 2008 and September 2008. However, the record before me does provide any detail about the timing or amount of any default(s), or the current status of the Loan.

August 31, 2007 at 5:00 p.m. (prevailing Pacific Time) as the last date and time for filing proofs of claim in this chapter 11 case (the "Bar Date") (D.I. 1721).  The Debtors' claims and noticing agent, Xroads Case Management Service LLC (the "Claims Agent"), (a) mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a proof of claim form substantially similar to Official Form No. 10 ("Proof of Claim Form") to all known entities holding potential pre-petition claims and their counsel (if known), all known potential claimants and their counsel (if known), all parties that have requested notice in these cases, the Office of the United States Trustee, and all taxing authorities for the jurisdictions in which the Debtors conducted business, and (b) published the Bar Date Notice in The Wall Street Journal (National Edition) and the Orange County Register.  The Claims Agent filed an affidavit of service on July 9, 2007 (D.I. 1861), and affidavits of publication on August 3, 2007 (D.I. 2148 and D.I. 2149).

On July 15, 2008, the Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") (D.I. 8596).  The Order Amending the Confirmation Order was entered on July 22, 2008 (D.I. 8626).

On August 1, 2008 (the "Effective Date"), the Plan became effective.  On the Effective Date, pursuant to the terms of the Plan, the New Century Liquidating Trust Agreement was executed, thereby creating the Trust and appointing Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust and Plan Administrator of New Century Warehouse Corporation (the "Trustee").[7]

---

[7] An appeal was taken from the Confirmation Order and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the July 15, 2008 Confirmation Order.  On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the

On August 4, 2008 , the Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statement, and Rejection Damage Claims (the "Notice of Effective Date") was filed (D.I. 8705).  The Notice of Effective Date set August 31, 2008 as a deadline for filing administrative claims, and set September 30, 2008 as the deadline for the Trustee to file Objections to administrative claims.  Section 3.3 of the Trust Agreement gave the Trustee the exclusive right to object to the allowance of any claim.

(A)    The Claim

The 47-page Claim filed on September 2, 2008 is a collection of notices, letters and "Affidavits of Truth" which assert a claim in the amount of $2,500,000.00 against the Debtors based on the decisions and actions taken in connection with the Loan.  The Claim asserts that the Debtors, and their "assignees, successor loan servicer, successor of interest, collection agencies," and others deliberately defrauded Mr. Muhammad and caused damages to Mr. Muhammad and his family.

In an affidavit provided in March 2009, Mr. Muhammad recounted his serious health

---

Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order")(D.I. 9750).
    On September 30, 2009, the Trust filed the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan")(D.I. 9905). On November 20, 2009, the Bankruptcy Court entered an order confirming the Modified Plan (D.I. 9957). On December 1, 2009, the Modified Plan became effective and (a) confirmed that all actions taken by the Trustee subsequent to the August 1, 2008 Effective Date were valid and binding, (b) adopted, ratified and confirmed the formation of the Trust as of the August 1, 2008 Effective Date, (c) adopted, ratified and confirmed the Trust Agreement as of the August 1, 2008 Effective Date, and (d) adopted, ratified and confirmed the appointment of Alan M. Jacobs as Trustee as of the August 1, 2008 Effective Date.

issues, including open heart surgery on May 3, 2003, and heart transplant surgery on February 9, 2006.  (*See* March Affidavit, Ex. D Timeline of Events for Cedric Muhammad) (D.I. 9387).  According to the records, Mr. Muhammad was hospitalized a number of times between 2003 and 2008.  (*Id.*). At the hearing, Mr. Muhammad testified that the transfer of the Loan caused him great stress.  (Tr. at 49:2 - 50:19).  Mr. Muhammad's wife also testified that he was under "major stress throughout the whole process of . . . finding out that the loans had been sold and that New Century was in bankruptcy."  (Tr. at 62:23-62:25).   She stated that he spent a great deal of time "reading and studying, and I would say lamenting over what he received.  And he'd be trying to explain that there was no substance . . . ."  (Tr. at 62:12 - 62:15).   In short, Mr. Muhammad denies owing any money arising from the Loan and claims that the Debtors and their assigns defrauded him and are responsible for the stress and health problems he suffered as a result.

DISCUSSION

(1)      The Administrative Expense Claim

Section 503 of the Bankruptcy Code governs the allowance of administrative expenses in a bankruptcy case, providing (in part), that "after notice and a hearing, there shall be allowed administrative expenses . . ., including the actual and necessary costs and expenses of preserving the estate."  11 U.S.C. §503(b)(1)(A).  Claimants who seek to have their claims paid ahead of general unsecured creditors bear the burden of establishing that their claim qualifies for priority status.  *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr.D.Del. 2001).

Courts generally apply a two-prong test to determine whether a claim qualifies as an administrative expense: (1) the expense must have arisen from a post-petition transaction between the creditor and the debtor, and (2) the expense must have been "actual and necessary"

to preserve the estate. *Id., In re DBSI, Inc.*, 407 B.R. 159, 165 (Bankr.D.Del. 2009).

Here, the Claim is alleged to arise out of the Loan and the Debtors' sale or transfer of the Loan and the servicing rights to the Loan, all of which occurred pre-petition. Moreover, the allegations underlying the claim clearly are not actual or necessary costs of preserving the estate. Mr. Muhammad has not asserted any valid basis for according administrative expense status to the Claim.

(2)     The General Unsecured Claim

August 27, 2007 was fixed as the bar date for filing proofs of claim in this case. If Mr. Muhammad's request for payment of an administrative expense is treated as the filing of a general unsecured proof of claim, its filing on September 2, 2008 was untimely. Bankruptcy Rule 3003(c)(2) provides that:

> Any creditor or equity security holder whose claim or interest is not scheduled or scheduling as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; *any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting or distribution*.

Fed.R.Bankr.P. 3003(c)(2) (emphasis added).

Although Mr. Muhammad received notice of the Debtors' bankruptcy case, he did not file any notice of his claim against the Debtors with the Bankruptcy Court until September 2, 2008, more than a year after the Bar Date for general unsecured claims. (*See* Tr. at 64:21-65:5). Mr. Muhammad does not assert that he failed to receive adequate notice of the Bar Date or that he is entitled to file a late proof of claim as a result of excusable neglect.[8] Although Mr. Muhammad

---

[8] Fed.RBankr.P. 9006(b)(1) provides, in part, that a court, for cause shown, may at any time in its discretion, permit the act to be done where the failure to act was the result of excusable neglect.

7

argues that the Claim is timely, I am unable to discern any basis for permitting him to file a late claim. *See Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines),* 96 F.3d 687, 691 (3d Cir. 1996) (The bar date "is a 'drop-dead date' that bars all prepetition claimants who received the required notice."), *In re the Grand Union Co.*, 204 B.R. 864, 871 (Bankr.D.Del. 1997) ("[T]he claims bar date operates as a federally created statute of limitations, after which the claimant loses all of her right to bring an action against the debtor.").

Furthermore, even if I were to consider the Claim on its merits, it would have to be disallowed for failure to provide sufficient evidence to support its validity. When a claim objection is filed in a bankruptcy case, the burden of proof as to the validity of the claim shifts between parties. *In re Sea Containers, Ltd.*, 2009 WL 2208128, *2 (Bankr.D.Del. July 22, 2009) citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). The shifting burdens of proof are described in *Allegheny Int'l* as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case....In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence....The burden of persuasion is always on the claimant.

*Allegheny Int'l*, 954 F.2d at 173-74 (citations omitted). Here, Mr. Muhammad has failed to prove facts sufficient to support the Claim. The 47-page Claim includes court notices, letters, and documents drafted by Mr. Muhammad using legalistic language but lacking in any substance.

However, even assuming the Claim was entitled to a presumption of validity, the Trustee has presented evidence and testimony rebutting any claim that New Century Mortgage Corporation acted fraudulently by entering into the Loan with Mr. Muhammad. The Trustee's records further show that the Loan was transferred prepetition, notice of the sale and transfer was given to Mr. Muhammad, and that the Debtors no longer had any interest in the Loan as of the petition date. The burden of proving the validity of the claim shifts back to Mr. Muhammad.

The basis of Mr. Muhammad's claim is that the Loan transaction was a "horrific nexus of fraud." Mr. Muhammad repeatedly argues that the facts underlying the "horrific nexus of fraud" are not in dispute because a number of entities (including the Debtors, HomEq Servicing Corporation, Deutsche Bank National Trust Company, and Shapiro and Kirsch, LLP) failed to respond when he served them with various documents with names such as an "Affidavit of Truth," a "Statement-of-Specific-Facts," or a "Statement-of-the-Un-rebutted-Facts" (the "Affidavits and Statements"). (*See* D.I. 9670, ¶¶ 21, 22, 23, 24, 25, 26, 27, 28, 29). Mr. Muhammad also filed a number of these Affidavits and Statements with the Office of the Shelby County Register of Deeds, Memphis, Tennessee (the "Shelby County Register"). (*Id.*)

I know of no legal authority (and Mr. Muhammad has not offered any) that would require the Debtors to respond to the Affidavits and Statements or be bound by their contents by failing to respond. When considering an "Affidavit of Truth" in the case *Bryant v. Washington Mutual Bank*, 524 F.Supp.2d 753 (W.D.Va. 2007), the Court wrote:

> None of the [UCC provisions cited by the plaintiff] suggest that failure to respond
> to an "Affidavit of Truth" within ten days constitutes an admission that estops one
> from later disputing the assertions in the affidavit. Indeed, they do not even
> suggest that Defendants had any legal obligation to respond to Plaintiff's
> affidavits at all, or that Plaintiff can create such an obligation simply by stating in

a document that the obligation exists and then having the document notarized. *Bryant*, 524 at 762. Similarly, in this case, there is no basis for obligating the Debtors or the Trustee to respond. The Affidavits and Statements cannot be considered requests for admissions under Fed.R.Bankr.P. 7036 because most of the documents were filed prior to the Claim, and therefore were not filed or served in connection with a contested matter or adversary proceeding. Fed.R.Bankr.P 7001, 9014. Moreover, Rule 36 should not be used unless the statements of fact sought to be admitted are phrased so that they can be admitted or denied without explanation. *See United Coal Co. v. Powell Constr. Co.,* 839 F.2d 958, 968 (3d Cir. 1988). The Affidavits and Statements do not meet such criteria and the "facts" as alleged therein are not deemed admitted.

What, then, are the fraudulent acts or misrepresentations by the Debtors that form the basis of Mr. Muhammad's Claim that the Loan was a "horrific nexus of fraud?"[9] While it is difficult to decipher the obscure filings by Mr. Muhammad, a few reoccurring arguments will be addressed.

First, Mr. Muhammad cites to 18 U.S.C. §§1001 and 1006 as the bases for his fraud claim against the Debtors, but his citations are to criminal statutes providing, in part, that an officer or

---

[9]The Note provides that it is governed by the laws of the State of Tennessee. (Ex. T-2). To support his claim for fraud under Tennessee law, Mr. Muhammad's claim must allege (1) that the Debtors made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation related to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) Mr. Muhammad reasonably relied on the misrepresented material facts; and (6) Mr. Muhammad suffered damage as a result of the misrepresentation. *Gurley v. Hickory Withe Partners, L.P.*, 2003 WL 22204520, *4 (Tenn. Ct. App. Sept. 10, 2003). The elements of fraudulent inducement, which Mr. Muhammad also alleged (*see* D.I. 9387), are (1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform. *Hood Land Trust v. Hastings,* 2010 WL 3928647, *7 (Tenn.Ct. App. Oct. 5, 2010).

employee of a lending or mortgage institution authorized or acting under the laws of the United States who makes a false or fraudulent statement shall be fined or imprisoned.  No private right of action is provided under this statute.  *Williams v. McCausland*, 791 F.Supp. 992, 1001 (S.D.N.Y. 1992).

Second, Mr. Muhammad repeatedly suggests that there was no substance underlying the Loan transaction; in other words, he disputes that any monies were actually loaned to him in connection with the Note and Mortgage. It is difficult to pinpoint why Mr. Muhammad believes no funds were loaned to him, even though he admittedly obtained the benefit of the Loan by accepting the Loan proceeds, enabling him to purchase a $90,000 Property.[10]  He argues that "there is no Bona-Fide Contract with a verifying signature that exist between the Creditor and the Debtor(s) and therefore, the creditor is not and never was, compelled to any type of performance." (D.I. 9670, ¶35).  Mr. Muhammad's argument appears to be a version of the so-called "show-me-the-note" theory which is commonly used by borrowers attempting to stop foreclosures in the current economic climate.  *Tabb v. One West Bank (Indymac),* 2010 WL 5684402, *5 (D.Or.  Nov. 1, 2010)   This theory "posits that only the holder of an original wet-ink signature note has the lawful power to initiate a non judicial foreclosure."  *Id.* citing *Sundell-Bahrd v. Tiffany & Bosco, P.A.,* 2010 WL 2595083, *1 (D.Ariz. June 24, 2010).  *See also Hennis v. Trustmark Bank*, 2010 WL 5346262 *1, n.2 (S.D. Miss. Dec. 21, 2010)  Courts have routinely

---

[10]Attached as Exhibit A to his March Affidavit (D.I. 9387) is a copy of the 1933 joint resolution regarding the gold standard. To the extent Mr. Muhammad's collection of documents assert that the Loan is fraudulent because Federal Reserve Notes have no value and only gold or silver coin may be constitute legal tender, such arguments have already been determined to be "legally frivolous."  *See New Century TRS Holdings, Inc. v. Edwards*, 423 B.R. 467, 475-477 (Bankr.D.Del. 2010) citing *Sneed v. Chase Home Finance, LLC*, 2007 WL 1851674 (S.D. Cal. June 27, 2007) and *Rene v. Citibank, N.A.*, 32 F.Supp.2d 539, 544-45 (E.D.N.Y. 1999).

rejected the defense on the ground that foreclosure statutes simply do not require production of the original note at any point during the proceedings. *Id.* In this case, Mr. Muhammad does not deny that he signed the Loan documents and he has not provided any reasonable legal theory to support his assertion that the Debtors' failure to produce the original Note amounts to fraud or bad faith.

Finally, Mr. Muhammad indicates that he has no obligations under the loan documents due to the "Reconveyance" that he filed on October 28, 2008 with the Shelby County Register.[11] (Ex. M-7). Mr. Muhammad argues that the effect of the Reconveyance is to transfer the Property, free and clear of liens, to himself. However, under Tennessee law, he does not have the authority to file a document attempting to release the lien or mark it satisfied. *(See* Tenn.Code.Ann.§ 66-25-101). The Reconveyance has no legal effect.

## CONCLUSION

For the reasons set forth above, Mr. Muhammad's Claim is not an administrative expense of the estate. Even if the Claim is considered a general unsecured claim, it is disallowed since it was not timely filed and Mr. Muhammad has neither alleged nor proven facts sufficient to support a valid claim.

---

[11] On January 26, 2009, Mr. Muhammad also filed a "Substitution of Trustee - Full Reconveyance" with the Shelby County Register.

An appropriate Order will be entered.

                    BY THE COURT:

                    _____
                    KEVIN J. CAREY
                    UNITED STATES BANKRUPTCY JUDGE

Dated:   April 11, 2011