# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.*[1] | : | Case  No. 07-10416 (KJC) |
| Debtors | : | |

# MEMORANDUM[2]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the objection by the Trustee for the New Century Liquidating Trust to

the proof of claim filed by Helen Galope. The Court held an evidentiary hearing on December

13, 2011 on the threshold issue of whether the proof of claim should be disallowed because it

was filed after the claims bar date.  For the reasons set forth below, the Objection will be

sustained and the proof of claim will be disallowed.

---

[1]The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited liability partnership. On August 3, 2007, New Century Warehouse Corporation, a California corporation, which is also known as "Access Lending," filed a voluntary chapter 11 bankruptcy petition.  These entities are referred to herein as the "Debtors," collectively, or any individual entity may be referred to herein as the "Debtor."

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B).

BACKGROUND

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code. On June 8, 2007, the Debtors filed a motion pursuant to Fed.R.Bankr.P. 2002,

3003(c)(3) and 9007 asking the Court to fix the time within which proofs of claim may be filed

(the "Bar Date Motion"). (D.I. 1173).  After a hearing on the Bar Date Motion, by order dated

June 28, 2007 (the "Bar Date Order"), this Court established August 31, 2007 at 5:00 p.m.

(prevailing Pacific Time) as the deadline for filing proofs of claim in the chapter 11 case (the

"Bar Date") (Trustee Ex. 2, D.I. 1721).  On July 9, 2007, the Debtors' claims and noticing agent,

Xroads Case Management Service LLC (the "Claims Agent") filed a Declaration of Service,

stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a proof of

claim form substantially similar to Official Form No. 10 to "parties listed on the Master Mailing

Matrix as set forth on a list maintained by Debtors' counsel."  (Trustee Ex. 3,  D.I. 1861).  On

August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published the

Bar Date Notice in *The Wall Street Journal* (National Edition) and the *Orange County Register*

on July 23, 2007.  (Trustee Exs. 4 and 5, D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second

Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).[3]  The

---

[3]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1, 2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation Order.  On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order")(D.I. 9750).

Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the New Century Liquidating Trust (the "Trust") and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust and Plan Administrator of New Century Warehouse Corporation (the "Trustee").

On or about July 29, 2011, Helen Galope filed proof of claim number 4131 in the amount of $350,000 (secured) plus unliquidated amounts (the "Galope Claim").[4]  The Galope Claim (Ex. E-20) states that the basis of the claim is a "Mortgage Note" in the original principal amount of $522,000 in favor of New Century Mortgage Corporation ("NCMC") and includes a copy of a Federal Truth-In-Lending Disclosure Statement dated December 16, 2005. (*Id.*).  The Deed of Trust, dated December 16, 2006, is between Borrowers (Lydia Dizon and Helen Galope, as tenants in common), Lender (NCMC), and Trustee (LandAmerica Southland Title) under which the Borrowers conveyed title to real property in Tarzana, California (Ms. Galope's residence) to the Trustee in order to secure repayment of the Mortgage Note.[5]

On August 26, 2011, the Trustee filed The New Century Liquidating Trust's Forty-Second Omnibus Objection to Claims Pursuant to 11 U.S.C. §502(b) and Fed.R.Bankr.P. 3001 and 3007 and Local Rule 3007-1 [Non-Substantive] (D.I. 10562) (the "Claim Objection") asking the Court to disallow and expunge the Galope Claim.  The Claim Objection also objects to the

---

[4]The Galope Claim also reflects that it is secured by a lien against her residence.  Neither the Debtors nor the Trust claim any interest in the Mortgage Note, the Deed of Trust or in Ms. Galope's residence. The Court cannot conceive of a valid legal theory under which any claim of Ms. Galope against the Debtor is secured by a lien against property of the estate or of the Trust.  If under some theory, she has a lien against her own residence, it could not serve as collateral for any claim against the estate. Therefore, for purposes of this Memorandum, I will treat the claim as an unsecured claim.

[5]Exhibit E-20 did not attach a copy of the Deed of Trust, although the Deed of Trust is attached to the proof of claim as filed.  The Deed of Trust provides that the Mortgage Electronic Registration System, Inc. ("MERS") "is a separate corporation that is acting solely as a nominee for Lender [NCMC] and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument."

proof of claim 4132 filed by Tiphanie Goines on July 20, 2011, in the amount of $432,000

(secured) (the "Goines Claim") and proof of claim number 4133 filed by Karan J. Russell on July

20, 2011 in the amount of $880,000 (secured) (the "Russell Claim").  Ms. Galope and other

claimants filed responses in opposition to the Trustee's Claim Objection.[6]  The Trustee filed a

Reply to the Responses (D.I. 10577).  On October 11, 2011, a Scheduling Order was entered with

respect to the objection to the Galope Claim and the Goines Claim, setting evidentiary hearings

on December 13, 2011 to consider "only the issues related to the late-filed claims of Goines and

Galope as set forth in the Objection and the Responses (the "Discoverable Issues") and not the

underlying merits of such claims, which, if required, will be addressed at a separate hearing to be

scheduled by the Court."  (D.I. 10593).  On November 15, 2011, the Court entered a second

Scheduling Order with respect to the Russell Claim, scheduling a similar evidentiary hearing,

limited to the late filing issue, on January 17, 2012.(D.I. 10629).  The evidentiary hearings for the

Goines and Russell Claims were adjourned to another date. The December 13, 2011 hearing, and

consequently this Memorandum, address only the Trustee's objection to the Galope Claim.

On December 6, 2011, Ms. Galope filed an adversary proceeding against Debtors New

Century TRS Holdings, Inc., NCMC and NC Capital Corporation alleging the following claims:

(1) Fraud at Loan Origination, (2) TILA Violation, (3) Intentional Misrepresentation, (4)

Fraudulent Conveyance, (5) Civil Conspiracy v. Homeowners, (6) Civil Conspiracy - Preferential

Treatment Accorded Banks, (7) REMIC Fraud and Tax Evasion, (8) Fraudulent

Misrepresentation, (9) Unjust Enrichment, (10) Fraud by Omission & Inducement,  (11) Deceit &

---

[6]*See* D.I. 10574 (Russell's Response), D.I. 10575 (Goines' Response) and D.I. 10578 (Galope's
Response).  A response was also filed on behalf of claimants Kimberly S. Cromwell, Mary Guinto and
Thomas A. Guinto, W. Mark Frazer and Konilynn Frazer (D.I. 10576).

Concealment of Assets, (12) Breach of the Deed of Trust, (13) Breach of Good Faith & Fair Dealing, and (14) Quiet Title.  (*See* Adv. No. 11-53893, D.I. 1).   By Order dated December 27, 2011, the Trustee's time to move, answer or otherwise plead in response to the adversary complaint was extended to thirty days after entry of an order on the matters heard at the December 13, 2011 hearing.  (Adv. No. 11-53893, D.I. 2).  The Order dated December 27, 2011 also stayed the adversary proceeding in its entirety (including discovery) pending a decision on the matters heard at the December 13, 2011 hearing.  (*Id.*).

## <u>DISCUSSION</u>

The Trustee seeks an order disallowing and expunging the Galope Claim because it was filed almost four years after the Bar Date.  Galope argues in response that her claim should be allowed, despite being filed long after the Bar Date, because: (1) she was not aware of her claim until after the Bar Date had passed, (2) notice of the Bar Date was not sufficient, and (3) she should be permitted to file a claim after the Bar Date based on excusable neglect.

(1)    <u>Knowledge of the claim arising after the Bar Date</u>

The Bar Date Order provided that "any entity holding a prepetition claim against one or more of the Debtors must file a proof of claim in accordance with the procedures described herein by the General Bar Date (August 31, 2007)."  (Trustee Ex. 2, at ¶5).  The Bar Date Order also stated that "[a]s used herein, (a) the term "claim" has the meaning given to it in section 101(5) of title 11 of the United States Code . . ." (*Id.* at ¶2).  The Bankruptcy Code broadly defines the term "claim" as follows:

> (5)    The term "claim" means - -
>     (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

(B)     undisputed, legal, equitable, secured, or unsecured; or
right to an equitable remedy for breach of performance if such breach
gives rise to a right to payment, whether or not such right to an equitable
remedy is reduced to judgment, fixed, contingent, matured, unmatured,
disputed, undisputed, secured, or unsecured.

11 U.S.C. §101(5).

Ms. Galope first argues that she should not be bound by the Bar Date because she didn't

realize she had a claim against the Debtors for fraud until after the Bar Date had passed.  The

Third Circuit considered the issue of when a claim arises for purposes of the Bankruptcy Code in

the decision *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.),* 607 F.3d 114 (3d Cir. 2010).

The issue in *Grossman's* was whether an asbestos-related injury claim, caused by products

purchased and used prior to the bankruptcy case, was discharged by the debtors' confirmed

chapter 11 plan, even though the claimant was unaware of the injury until several years after the

bar date and plan confirmation.[7]

After extensive review and consideration of relevant decisions in other circuits, the Third

Circuit Court of Appeals held that a "claim," as defined by Bankruptcy Code §101(5), "arises

when an individual is exposed pre-petition to a product or other conduct giving rise to an injury,

which underlies a 'right to payment' under the Bankruptcy Code."  *Grossman's*, 607 F.3d at

125.[8]  The Court agreed that "a prerequisite for recognizing a 'claim' is that the claimant's

---

[7]The claimant in *Grossman's* purchased products allegedly containing asbestos from the debtors
in 1977.  Grossman's filed petitions under chapter 11 of the Bankruptcy Code in April 1997, and its plan
of reorganization was confirmed in December 1997. The claimant did not file a claim because, during the
bankruptcy, she was unaware of any claim, as she manifested no symptoms related to asbestos exposure
until 2006.  In March 2007, after being diagnosed with mesothelioma, a cancer linked to asbestos
exposure, the claimant filed an action for tort and breach of warranty in a New York state court against
the successor-in-interest to Grossman's and fifty-seven other companies who allegedly manufactured the
products she acquired from Grossman's in 1977. *Grossman's*, 607 F.3d at 117.

[8]The Third Circuit Court, sitting *en banc*, overruled the "accrual test" set forth in *Avellino &
Bienes v. M. Frenville Co. (Matter of M. Frenville Co.),* 744 F.2d 332 (3d Cir. 1984).  *Grossman's*, 607
F.3d at 121.  As summarized in a later decision, the *Frenville* accrual test provided that "'the existence of

6

exposure to a product giving rise to the 'claim" occurred prepetition, even though the injury

manifested after the reorganization." *Grossman's,* 607 F.3d at 125. Therefore, the claim in

*Grossman's* arose pre-bankruptcy, when the claimant was exposed to the product containing

asbestos.[9] *Id.*

In the present case, the Galope Claim states that it is based upon the "Mortgage Note,"

and includes copies of the Truth-in-Lending Statement and Deed of Trust that were part of the

December 2006 loan transaction. (Ex. E-2). Moreover, to the extent the Galope Claim is based

upon allegations of fraud in connection with the Debtors' sale of the loan, the sale took place

prior to the bankruptcy filing. (Tr. 12/13/11 at 48:10 - 48:21). Applying the Third Circuit's

holding in *Grossman's* to the case at bar establishes that the Galope Claim arose out of the

Debtor's conduct toward Ms. Galope that occurred prior to the bankruptcy filing and, therefore,

is a pre-petition claim.

(2)    <u>Adequacy of notice of the claims bar date</u>

The *Grossman's* Court recognized that the test to determine whether a claim is subject to

a claims' bar date must also be reviewed in light of due process considerations. *Grossman's*, 607

F.3d at 125. Determining whether the discharge of claims satisfies due process includes an

inquiry into the adequacy of notice of the claims bar date. *Id.* at 127. The issue of adequacy of

---

a valid claim depends on (1) whether the claimant possessed a right to payment; and (2) when that right
arose' as determined by reference to the relevant non-bankruptcy law." *Grossman's*, 607 F.3d at 119
citing *Kilbarr Corp. v. Gen.Servs. Admin., Office of Supply & Servs. (In re Remington Rand Corp.),* 836
F.2d 825, 830 (3d Cir. 1988). The Third Circuit acknowledged that criticism of *Frenville's* accrual test
was justified, given its narrow interpretation of a "claim" under the Bankruptcy Code. *Grossman's*, 607
F.3d at 121.
    [9]Since *Grossman's* was decided, subsequent decisions have noted that its holding is not limited
to asbestos-related injury claims *In re Rodriguez,* 629 F.3d 136 (3d Cir. 2010); *Wright v. Owens
Corning,* 450 B.R. 541, 551-52 (W.D.Pa. 2011).

the Debtors' Bar Date Notice arose previously during oral argument on a motion to dismiss (*see*

*White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 450 B.R. 504,

511-514 (Bankr.D.Del. 2011)), but I deferred ruling on the adequacy of the Bar Date Notice until

completion of an evidentiary hearing on the matter. The legal analysis related to the Bar Date as

set forth in the *White* decision is equally applicable here and I repeat a portion of the *White*

decision for the benefit of the parties now before me.

The purpose and procedures for setting a claims bar date were aptly discussed by my

colleague, Judge Gross, in *In re Smidth & Co.,* 413 B.R. 161 (Bankr.D.Del. 2009):

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedures authorizes courts
> to set bar dates by which proofs of claim or interest may be filed. This rule
> contributes to one of the main purposes of bankruptcy law, securing, within a
> limited time, the prompt and effectual administration and settlement of the
> debtor's estate. Setting an outside limit for the time to assert a right triggers due
> process concerns of which every court must be cognizant. This concern is
> resolved through notice: when a debtor provides proper notice to its creditors, due
> process is satisfied, and a court can bar creditors from asserting claims. What
> qualifies as proper notice, however, is dependent upon whether the creditor is
> known or unknown. If a creditor is known, the debtor must provide actual notice
> of the bankruptcy proceedings, whereas if the creditor is unknown, notice by
> publication is sufficient.

*Id.* at 165 citing, *inter alia*, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297,

73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a

creditor from asserting prepetition claims unless he can demonstrate excusable neglect. *Berger v.*

*TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

The Trustee asserts that Ms. Galope was not entitled to, and did not receive, actual notice

of the Bar Date because she was an unknown creditor at the time the Bar Date Notice was being

served.  In *Chemetron*, the Third Circuit Court of Appeals articulated that a "known" creditor is

one whose identity is either known or "reasonably ascertainable" by the debtor. *Chemetron,* 72

F.3d at 346 citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct.

1340, 1347, 99 L.Ed.2d 565 (1988).    The *Chemetron* Court further explained:

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified
> through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791,
> 798 n.4, 103 S.Ct. 2706, 2711 n.4, 77 L.Ed.2d 180 (1983).  "Reasonable diligence does
> not require 'impracticable and extended searches . . . in the name of due process.'
> *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659. . . . . The requisite search instead focuses on
> the debtor's own books and records.  Efforts beyond a careful examination of these
> documents are generally not required.

*Id.* at 346-47 .  On the other hand, an "unknown" creditor is one whose "interests are either

conjectural or future or, although they could be discovered upon investigation, do not in due

course of business come to knowledge [of the debtor]." *Chemetron*, 72 F.3d at 346 quoting

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed.

865 (1950). A debtor need not be omnipotent or clairvoyant, but need only do what is reasonable

under the circumstances to provide notice to ascertainable creditors.  *Gentry v. Circuit City*

*Stores, Inc. (In re Circuit City Stores, Inc.),* 439 B.R. 652, 660 (E.D. Va. 2010) citing *In re J.A.*

*Jones, Inc.*, 492 F.3d 242, 251 (4th Cir. 2007).[10]

The Trustee testified that his review of the Debtors' books and records showed that Ms.

Galope entered into a loan transaction with a Debtor that was sold prior to the bankruptcy filing.

---

[10]What is reasonable must be determined by considering the totality of the circumstances in each
case in light of certain factors, including (1) whether the identity of the creditors or their claims are
conjectural or can be reasonably ascertained, (2) whether the cost of giving actual notice would consume
a disproportionate share of the debtor's resources, and (3) the obligation of the court to existing creditors
and the debtor's stockholders in light of the potential delay and the balance of the debtor's resources.
*Circuit City*, 439 B.R. at 660.

(Tr. 12/13/11 at 47:19 - 48: 21). The Trustee further testified he was unaware of any claim by

Ms. Galope against the Debtors prior to receiving a copy of the Galope Claim in July 2011.  (*Id.*

at 49:2 - 49:5). There was no information in the Debtors' books and records indicating any

complaints about the loan.  (*Id.* at 49:6 - 49:17).   In the *White* decision, I determined that the

"availability of the Whites' names and address in the Debtors' loan files may have reflected that

the Whites were known *customers* , but without more, it did not make them 'known *creditors*.'"

*White*, 450 B.R. at 512 citing *Hebell v. NVR, Inc.*, 1997 WL 417363, *2 (N.D.Ill. July 21, 1997)

(Holding that homeowner-mortgagors were not known creditors, even though their identities

were "reasonably ascertainable" from the debtors' loan service records, when those records did

not indicate that mortgagors were potential class members who could file suit in the future,

thereby becoming claimants).   Like the Whites, Ms. Galope was an unknown creditor at the time

the Bar Date Notice was being served, and was entitled only to constructive notice by

publication. *Chemetron*, 72 F.3d at 346-47.

The Bar Date Order in the present case provided that "[t]he Debtors shall cause the

Publication Notice to be published once in the national edition of *The Wall Street Journal* and

any such other local publications as the Debtors deem appropriate no less than 30 days prior to

the General Bar Date."  (Trustee, Ex. 2 at ¶18).  The Debtors published notice of the Bar Date in

*The Wall Street Journal* (National Edition) and the *Orange County Register* on July 23, 2007.

Ms. Galope, who resided in California at the time of publication of the Bar Date Notice,

argues that publication of the Bar Date Notice in two newspapers does not meet due process

requirements because the Debtors should have published notice in more local newspapers. She

argues that most borrowers with claims against the Debtors would not read *The Wall Street*

*Journal* or would not know about the *Orange County Register*.  She offered evidence of the daily

circulation of the top twenty-five daily newspapers in the United States as of September 30,

2007, showing that the *Orange County Register*'s circulation was listed as one of the lowest  - -

twenty-third on the list - - with a circulation of 278,507.  (Ex. E-23).  She argues that the

Debtors' decision not to publish the Bar Date Notice more widely demonstrates their intent to

prevent borrowers from filing claims in the bankruptcy case.  (Tr. 12/13/11 at 83-84).

At the evidentiary hearing on December 13, 2011, the Trustee presented testimony of

former lead counsel for the Debtors regarding the decision-making process behind the

publication notice.  Counsel testified that the national edition of *The Wall Street Journal* was

selected because:

> of all the considerations, I listed many, number one was we had to get a paper of
> national circulation because we had creditors everywhere, we had borrowers
> everywhere. . . we did business everywhere.  So the goal is to get coverage
> everywhere you're doing business, . . . that was the goal, . . . to provide a blanket
> notice as broadly as possible across the country.  And *The Wall Street Journal* was
> a customary place to provide such legal notices.  So our analysis was it was better
> to provide notice in *The Wall Street Journal* where maybe parties might expect to
> be finding a bar date notice or might look for a bar date notice because it has
> become more standard to advertise in *The Wall Street Journal*. . . . Whoever our
> creditors were, of any type of business engagement or however their claims arose,
> that was the intent, providing the nationwide notice.

(Tr. 12/13/11 at 40:11 - 41:3).  Debtors' counsel also testified that supplementary notice of the

Bar Date was published in the *Orange County Register* because New Century's main office was

located in Irvine, Orange County, California. (*See* Tr. 12/13/11 at 24-25).  At the time of the

bankruptcy filing, New Century was the largest private employer in Orange County.  (*Id.*). At the

time the Bar Date Notice was being published, the Debtors considered the potential for unknown

employee claims.  (*Id.*)  Since the *Orange County Register* was following the bankruptcy case in

its reporting, the Debtors believed providing supplementary notice of the Bar Date in the *Orange County Register* would be likely to reach those individuals who were reading the *Orange County Register* to keep track of what was going on in the case.  (*Id.* at 25-26).

It is well settled that constructive notice of the claims bar date by publication satisfies the requirements of due process for unknown creditors. *Chemetron*, 72 F.3d at 348.  *See also, e.g., Circuit City*, 439 B.R. at 660, *Brown v. Seaman Furniture Co, Inc.*, 171 B.R. 26, 27 (E.D.Pa. 1994), *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr.E.D.Va. Nov. 21, 2005), *In re Best Products Co., Inc.*, 140 B.R. 353, (Bankr.S.D.N.Y. 1992). Despite its limitations, notice by publication has been recognized as constitutionally adequate.  The United States Supreme Court has acknowledged that:

> Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice.  Its justification is difficult at best. . . . But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication.

*City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953)(deciding, however, that because the City of New York was a *known* creditor, it was entitled to actual notice). *See also Mullane*, 339 U.S. at 317 ("[I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification [by publication] is all that the situation permits and creates no constitutional bar to a final decrees foreclosing their rights."  The *Mullane* Court determined that notice by publication was sufficient for unknown beneficiaries of a common trust fund, but insufficient for known beneficiaries with a known place of residence).

Due process concerns are satisfied if the published notice is "'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a

12

reasonable time for response." *Chemetron*, 72 F.3d at 346. "The proper inquiry in evaluating

notice is whether a party acted reasonably in selecting means likely to inform persons affected,

not whether each person actually received notice." *In re Charter Co.,* 113 B.R. 725, 728

(M.D.Fla. 1990) citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988), *cert.*

*denied* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).   Ms. Galope asserts that

borrowers are unlikely to read *The Wall Street Journal*.  *But see Matter of Chicago, Milwaukee,*

*St. Paul and Pacific Railroad Co.,* 112 B.R. 920, 922, 924 (N.D.Ill. 1990) (The Court rejected

the tort claimants' argument that notice of the bar date in *The Wall Street Journal* was

constitutionally insufficient because, due to their poor education, they had never even heard of

*The Wall Street Journal*; instead, the Court held that publication notice in *The Wall Street*

*Journal* was sufficient under the Due Process Clause of the United States Constitution).

    The testimony at the December 13, 2011 hearing established that the Debtors' business

was nationwide.  New Century had more than a million borrowers. (Tr. 12/13/11 at 27:15 - 20).[11]

At the time the Bar Date Notices were being published, the Debtors generally did not view

*borrowers* as potential creditors (except for borrowers who had filed law suits, who did receive

actual notice). (*See id.* at 26:22 - 27:3).  The Debtors chose to publish in the national edition of

*The Wall Street Journal* to reach creditors nationwide. (*Id.* at 36:19 - 37:7). Courts have decided

---

[11]*See In re New Century TRS Holdings, Inc.,* 390 B.R. 140 (Bankr.D.Del. 2008), rev'd by 407
B.R. 576 (D.Del. 2009)(*see* n. 3, *supra.*), in which I found that: "[a]s of December 31, 2006, the
[Debtors'] Wholesale Division had approved more than 57,000 independent mortgage brokers for
submission of loan applications, operated through 34 regional operating centers located in 20 states, and
employed approximately 1,087 account executives" *New Century,* 390 B.R. at 145. In the same opinion
regarding plan confirmation, I noted: "Measured by the value of its pre-petition assets, New Century's
bankruptcy filing was the largest chapter 11 filing in 2007, and, by the same measure, as of the date of
the Examiner's Report, was the ninth largest of all time.  (Examiner's Report, at 107)." *Id.* at 148 n.11.
None of these factual determinations were disturbed on appeal.

that it is impracticable to expect a debtor to publish notice in every newspaper a possible

unknown creditor may read.  *Chemetron*, 72 F.3d at 348 - 49, *Best Products*, 140 B.R. at 358.

The *Chemetron* Court further wrote that  "[p]ublication in national newspapers is regularly

deemed sufficient notice to unknown creditors, especially where supplemented, as here, with

notice in papers of general circulation in locations where the debtor is conducting business."

*Chemetron*, 72 F.3d at 348-49.  Because the Debtors were operating their business nationwide (in

fact, in 20 states), it was entirely reasonable and appropriate for the Debtors to publish the Bar

Date Notice in the national edition of *The Wall Street Journal*, supplemented by the paper that

covered  the area of the Debtors' main offices, to reach the broad expanse of unknown creditors.

*See Circuit City*, 439 B.R. at 661 (Publication of the bar date notice in two newspapers  - - *The*

*Wall Street Journal* and *The Richmond Times Dispatch* - - for a debtor with a nationwide

business was deemed "constitutionally adequate."), *Brown*, 171 B.R. at 27 ("Since the national

edition [of *The New York Times*] is sold throughout the country and can be purchased from any

corner newspaper vendor here in Philadelphia, the Court finds that it is a reasonable means of

alerting potential creditors of the need to file a proof of claim.").

Moreover, publication in newspapers in "dozens of locations" in which a Debtor is

conducting business can be "onerous, cumbersome and unduly expensive."  *Best Products*, 140

B.R. at 358.  The Fourth Circuit has written:

> In bankruptcy, the court has an obligation not only to potential claimants, but also
> to existing claimants and the petitioner's stockholders.  The Court must balance
> the needs of notification of potential claimants with the interests of existing
> creditors and claimants.  A bankrupt estate's resources are always limited and the
> bankruptcy court must use discretion in balancing these interests when deciding
> how much to spend on notification.

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co.,* 820 F.2d 1359, 1364 (4th Cir.

1987).  At the time notice of the Bar Date was being published, the Debtors were also concerned

with costs. (Tr. 12/13/11 at 26:4 - 11). Debtors' counsel testified that there were "certainly

limited resources . . . it was a tight liquidating case." (*Id.* at 26:10 - 11).  Further,

> There had been quite a bit of attention paid to the incredible administrative
> expenses with respect to noticing the case and with respect to the preparation of
> the schedules.  So we were . . . trying to address the administrative cost of the
> case.

(*Id.* at 26:14 - 18).

Here, the record reflects that additional publication in local or regional newspapers would

have consumed a disproportionate share of the Debtors' resources.  Based upon consideration of

relevant case law and the record made at the hearing on December 13, 2011, I conclude that the

Debtors' publication of Bar Date Notice in the national edition of *The Wall Street Journal*,

supplemented with notice in the *Orange County Register*, was reasonable and constitutionally

adequate notice for unknown creditors.  Accordingly, the Galope Claim is subject to the Bar Date

Order.

(3)    Excusable Neglect

"Even when notice satisfies constitutional requirements, a creditor who does not receive

actual notice - - or who receives it but for some reason does not timely act upon it - - may seek

leave to file a late claim based on 'excusable neglect.'" *U.S. Airways*, 2005 WL 3676186 at *6.

The Trustee argues, however, that allowing Ms. Galope to file a claim nearly four years after the

Bar Date and after substantial distributions of the Trust's assets would be significantly prejudicial

to the Trust and all unsecured creditors that complied with the Bar Date Order. Fed.R.Bankr.P.

9006(b)(1) provides in relevant part:

> Except as provided . . . when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Courts considering a request for an enlargement of time based on excusable neglect consider four factors, as set forth by the United States Supreme Court in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993): (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.),* 188 F.3d 116, 125 (3d Cir. 1999) citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489.

    (A)    <u>Prejudice</u>

The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence. *O'Brien Envtl*, 188 F.3d at 127. When addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated, (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the

debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to other future claims. *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)* No. 00-2426, 2004 WL 2283599 at *4 (D.Del. Oct. 4, 2004) *citing O'Brien Envtl*, 188 F.3d at 126-28.

Here, the Trustee testified that allowing the Galope Claim would cause significant prejudice. First, the Debtors and the Trustee had no reason to anticipate a claim by Ms. Galope since the Debtors' books and records did not reflect any complaints by Ms. Galope about the loan. (Tr. 12/13/11 at 49:2 - 17). *Cf. O'Brien Envtl*, 188 F.3d at 128 (finding that there was no question that the debtors were aware of the claim, which had been scheduled and had been discussed by the parties prior to the plan's effective date), *Pro-Tec,* 2004 WL 2283599 (finding no surprise when the debtor had listed claimant on its schedules), *In re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr.D.Del. 2006) (same). Second, the Trustee testified that the Trust has already made two interim distributions. (Tr. 12/13/11 at 46). The Trustee testified credibly that, depending on the amount of the claim - - as well as numerous other pending late-filed claims - - there is a substantial likelihood that the Trustee would have to go back to the Plan's distribution model and recalculate distributions. (*Id.* at 50:18 - 24).

New Century's liquidating plan is confirmed, so there is no reorganization to jeopardize. However, allowance would jeopardize the Trustee's efforts to liquidate assets for distribution to creditors with timely-filed claims. As the Court is already aware from this and other, similar matters now before it in the New Century case, allowance of late-filed claims in this case unquestionably will open a floodgate to similar claims by other borrowers. In fact, as evidenced by the number of pending objections to "late claims" and motions to allow "late claims," the flow has already begun. The Trustee testified that the costs and delay caused by litigating the expected

flood of claims would harm the Trust by preventing him from making final distributions to creditors and from closing the case in a timely manner.  (Tr. 12/13/11 at 51:3 - 52:7).  This bankruptcy case was filed in April 2007.  Such prejudice was discussed by the *U.S. Airways* Court:

> The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters,* 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum ... would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264 (Bankr.D.Me.1984)).
>
> In the instant case, the debtor would be prejudiced by allowing the [claimants] to assert their claim six months after the bar date had passed, particularly in a case as large as this. As noted above, U.S. Airways provided mailed notice to all known creditors and notice by publication to all "unknown" claimants of the applicable bar date. Following passage of the bar date, the debtor should reasonably be able to assume that all claimants needing to be dealt with in the plan have come forward to vindicate their rights, thereby allowing the debtor to calculate its potential liabilities for purposes of effectuating its reorganization. If the court were to allow the [claimants] to file a late claim solely because they were unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim. Such a policy would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice. Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred. *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992).

*U.S. Airways*, 2005 WL 3676186 at *7 - *8.  These considerations are equally applicable to the case at bar.  The record before me supports the conclusion that the Trust would suffer substantial prejudice from excusing the late-filing of the Galope Claim.

      (B)    <u>Length of delay and impact on judicial proceedings</u>

Another *Pioneer* factor to consider is the length of the delay.  Here, the Galope Claim was

filed almost four years after the Bar Date and eighteen months after confirmation of the Modified

Plan.  In *O'Brien Envtl*, the Court noted that the significance of a delay should not be considered

in absolute terms, but will depend upon the facts of the case.  *O'Brien Envtl*, 188 F.3d at 130. For

example, a delay of two months may be significant if the debtor proceeds expeditiously to

resolve outstanding claims, while a much longer delay may seem less important when the debtor

allows itself more time between confirmation and closing under the plan.  *Id.  See Pro-Tec*, 2004

WL 2283599 at *6 (delay of nine months after plan confirmation was not significant when the

debtor was still litigating disputed claims and distributions to creditors would be based upon the

debtor's progress in resolving claims), *Garden Ridge*, 348 B.R. at 646 (late claim had minimal

impact on judicial proceedings when the Committee was "in the midst of bringing their

objections (e.g. late filed, amended, and duplicate) and a distribution was not expected for some

time.").

Here, the four year delay is significant.  The Trustee has already completed two interim

distributions and is finalizing administration of the Trust assets.  (Tr. 12/13/11 at 46:21 - 47:18).

This factor weighs heavily in favor of the Trustee.

(C)    Reason for the delay, including whether it was within the reasonable control of the
       movant, and good faith of the movant

Ms. Galope testified that she was aware of the New Century bankruptcy filing as early as

2007,  but was unaware of her claim against the Debtors until she filed her own chapter 7

bankruptcy case, which was dismissed in May 2010.  (Tr. 12/13/11 at 80:17 - 81:21).  Despite

learning of her claim sometime in 2010, she waited until July 2011 to file a proof of claim.  As

discussed above, the delay that resulted in a late-filed claim has caused and will cause substantial

prejudice to the Trust and other creditors. Even if I assume, without deciding, the good faith of

Ms. Galope, her neglect in waiting until July 2011 to file a claim is not excusable.

    (D)    <u>Excusable Neglect - conclusion</u>

    Upon consideration of the facts of this case in light of the *Pioneer* factors, particularly the

substantial prejudice to the Trust and the significant delay in filing the Galope Claim, I conclude

that the Galope Claim is not entitled to relief from the Bar Date. While this result to a consumer

borrower may seem harsh, I must be mindful of the importance of a bar date in a chapter 11 case,

as stated by the *Best Products* Court:

> In order to efficiently administer a Chapter 11 reorganization case, a bar date within
> which creditors must file their claims is essential. Prior to the proposal of any meaningful
> plan of reorganization, the debtor needs to be apprised of the total amount and types of
> claims with which the plan must deal. To allow creditors to assert claims against a debtor
> without regard to the establishment of a bar date would vitiate the very purpose of it.
> Permitting this late filing would create a dangerous precedent for other creditors who
> have sat on their rights without any other reasonable justification. Although persons with
> legitimate claims may be precluded from sharing in estate assets, strict enforcement of the
> bankruptcy bar date is no more unfair than application of a statute of limitations to
> foreclose a tort claim. *In re Eagle–Picher Indus., Inc.,* 137 B.R. 679 (Bankr.S.D.Ohio
> 1992).

*Best Products,* 140 B.R. at 360.[12]

---

[12]Ms. Galope, and other "late claimants" now before the Court in various stages of proceeding,
also argue strenuously that New Century and other subprime lenders have been and are the subject of
both civil and criminal investigations arising out of alleged improper loan practices and urge (demand
that) this Court step in to this melee to provide various sorts of relief.  (*See, e.g.,* Tr. 12/13/11 at 76:18 -
78:10).

    As I said in the *Carr* decision (*Carr v. New Century TRS Holdings, Inc. (In re New Century TRS
Holdings, Inc.),* Adv. No. 09-52251, 2011 WL 6097910, *3 (Bankr.D.Del.  Dec. 7, 2011)), the Trustee
claims no interest in this or other similar loans, long since either transferred, sold or repossessed by non-
debtor counter-parties.  Apart from the payment of money damages, the remedies that Ms. Galope and
others similarly situated truly seek, are the rescission of their mortgage loans and/or the right to remain in
or regain title to and/or possession of their residences.

    If a final judgment has been entered in state court foreclosure proceedings, the *Rooker-Feldman*
doctrine prevents this Court from determining that a state court judgment was erroneously entered or
taking action to render a state court judgment ineffectual.  *See Edwards v. New Century Mortgage Corp.*

For all of the above reasons, the late-filed Galope Claim will be disallowed and expunged. An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: February 7, 2012

---

*(In re New Century TRS Holdings, Inc.)*, 423 B.R. 467, 472 (Bankr.D.Del. 2010) citing *Madera v. Ameriquest Mortg. Co. (In re Madera)*, 586 F.3d 228, 232 (3d Cir. 2009). The remedies for claimants seeking more than monetary damages do not lie with this Court, but elsewhere - - most likely, in a court with jurisdiction over those parties who currently claim rights pursuant to various loan documents. *Id. See also White,* 450 B.R. at 510, in which I determined that this Court "is without subject matter jurisdiction to order rescission or cancellation of the Mortgage Loan, now held by an unrelated third party. Moreover, any modification or adjustment to the Mortgage Loan would have no effect or impact on the Debtors' estate or the Liquidating Trust." *See Scott v. Aegis Mortgage Corp. (In re Aegis Mortgage Corp.)*, 2008 WL 2150120, *5 (Bankr.D.Del. May 22, 2008) (A declaration as to the rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a party to it.). *See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 168-69 (3d Cir. 2004)(Post-confirmation, a bankruptcy court's jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement.").