**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.*[1] | : | Case No. 07-10416 (KJC) |
| Debtors | : | |

# MEMORANDUM[2]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is The New Century Liquidating Trust's Motion for Entry of an Order to Determine that the Debtors have Complied with the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof (the "Trustee's Bar Date Motion") (D.I. 10824). A number of objections to the Trustee's Bar Date Motion were filed on or about April 18, 2012. The Court held an evidentiary hearing and, for the reasons set forth below, the Trustee's Bar Date Motion will be granted.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited liability partnership. On August 3, 2007, New Century Warehouse Corporation, a California corporation, which is also known as "Access Lending," filed a voluntary chapter 11 bankruptcy petition. These entities are referred to herein as the "Debtors," collectively, or any individual entity may be referred to herein as the "Debtor."

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(A) and (B).

FACTS[3]

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On June 8, 2007, the Debtors filed a motion pursuant to Fed.R.Bankr.P. 2002, 3003(c)(3) and 9007 asking the Court to fix the time within which proofs of claim may be filed (the "Debtors' Bar Date Motion"). (D.I. 1173). After a hearing on the Debtors' Bar Date Motion, this Court entered an Order dated June 28, 2007 (the "Bar Date Order") establishing August 31, 2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in this chapter 11 case (the "Bar Date") (Trustee Ex. 2, D.I. 1721). On July 9, 2007, the Debtors' claims and noticing agent, Xroads Case Management Service LLC (the "Claims Agent") filed a Declaration of Service, stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master Mailing Matrix as set forth on a list maintained by Debtors' counsel." (D.I. 1861). On August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published the Bar Date Notice in the *Wall Street Journal* (National Edition) and the *Orange County Register* on July 23, 2007. (D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).[4] The

---

[3]Because this matter involves the same factual background, some of the facts set forth herein are repeated from this Court's Memorandum dated February 7, 2012 *In re New Century TRS Holdings, Inc.*, 465 B.R. 38 (Bankr.D.Del. 2012) (described *infra* as the "February 7 Decision").

[4]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1, 2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation Order. On July 27, 2009, the Bankruptcy
(continued...)

Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the New Century Liquidating Trust (the "Trust") and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust and Plan Administrator of New Century Warehouse Corporation (the "Trustee").

On or about July 29, 2011, Helen Galope filed proof of claim number 4131 (the "Galope Claim"). On August 26, 2011, the Trustee filed The New Century Liquidating Trust's Forty-Second Omnibus Objection to Claims (the "Claim Objection") asking the Court to disallow and expunge the Galope Claim.[5] Ms. Galope and other claimants filed responses in opposition to the Trustee's Claim Objection.[6] The Court held an evidentiary hearing on December 13, 2011 on the issue of whether the Galope Claim should be disallowed because it was filed after the claims bar date.

On February 7, 2012, the Court entered a Memorandum and Order (D.I. 10725 and 10726) (the "February 7 Decision") disallowing and expunging the Galope Claim. The Court considered the testimony of the Debtors' former lead counsel about the decision-making process

---

[4](...continued)
Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order") (D.I. 9750). On September 30, 2009, the New Century Liquidating Trust filed the Modified Plan.

[5] The Claim Objection also challenged proof of claim 4132 filed by Tiphanie Goines on July 20, 2011, in the amount of $432,000 (secured) (the "Goines Claim") and proof of claim number 4133 filed by Karan J. Russell on July 20, 2011 in the amount of $880,000 (secured) (the "Russell Claim"). The Goines Claim was disallowed pursuant to Order dated April 23, 2012 (D.I. 10860). The objection to the Russell Claim is under advisement with the Court.

[6] *See* D.I. 10574 (Russell's Response), D.I. 10575 (Goines' Response) and D.I. 10578 (Galope's Response). A response was also filed on behalf of claimants Kimberly S. Cromwell, Mary Guinto and Thomas A. Guinto, W. Mark Frazer and Konilynn Frazer (D.I. 10576).

behind publication of the Bar Date Notice. The February 7 Decision determined, in part, that the Debtors' publication of the Bar Date Notice in the national edition of the *Wall Street Journal*, supplemented with notice in the *Orange County Register*, was constitutionally adequate for Helen Galope, who was an unknown creditor at the time the Bar Date Notice was served.

On February 21, 2012, Ms. Galope filed a motion for reconsideration of the February 7 Decision arguing, among other things, that the Court erred in deciding that the Debtors' publication of the Bar Date Notice was constitutionally adequate as applied to unknown creditors.  By a Memorandum and Order dated May 17, 2012, (D.I. 10742) the Court denied Galope's Motion for Reconsideration of the February 7 Decision (the "Reconsideration Decision").[7]

On April 2, 2012, the Trustee filed the Trustee's Bar Date Motion, asking the Court to find that the Debtors' published notice of the Bar Date satisfied the requirements of due process for *all unknown creditors*.  On or about April 18, 2012, Galope and other claimants filed responses in opposition to the Trustee's Motion.[8]  On April 20, 2012, the Trustee filed an Omnibus Reply to the objections (D.I. 10853).  On May 23, 2012, the Court held an evidentiary hearing on the Trustee's Bar Date Motion.

## DISCUSSION[9]

---

[7] Ms. Galope filed a second motion for reconsideration (D.I. 10917).  Oral argument on the motion was held on June 20, 2013 and the motion is currently under advisement.

[8] *See* D.I. 10835 (Konar's Response), D.I. 10841 (White's Response), D.I. 10842 (Guinto's Response), D.I. 10848 (Galope's Response), D.I. 10849 (Cromwell and Russell's Response) (collectively, the "Objectors").

[9] This Memorandum addresses only the constitutional sufficiency of the publication of the Bar Date Notice as it applies to unknown creditors.  I do not make any determination about whether particular

(continued...)

The Trustee seeks an order consistent with the February 7 Decision and the Reconsideration Decision, concluding that the Debtors' publication notice of the Bar Date complied with the requirements set forth in the Bar Date Order and satisfied the requirements of due process for *unknown creditors*.

The objections to the Trustee's Bar Date Motion fall into two categories. First, the Objectors argue that the Bar Date publication was a "mere gesture" and that the Debtors did not publish notice in a manner that was reasonably calculated to inform potential claimants of the Bar Date. To support this objection, the Objectors argue that the Debtors (i) did not consider readership profiles of the newspaper used for national notice; (ii) did not spend an adequate amount of funds to publish notice, considering the size and complexity of the case; (iii) did not provide sufficient time for claimants to file claims after the notice publication; and (iv) did not ensure that the font size and placement of the published notice was adequate. Second, the Objectors argue that the Debtors, aware of the potential for a large number of claims by borrowers, published the Bar Date Notice in a manner to ensure that potential borrower claimants would not receive adequate notice.[10]

As discussed in the February 7 Decision, the purpose and procedures for setting a claims bar date were aptly described by my colleague, Judge Gross, in *In re Smidth & Co.,* 413 B.R.

---

[9](...continued)
creditors were unknown creditors or known creditors entitled to actual notice. Also, I do not address whether any particular individual claimants have met the requirements for excusable neglect for a late-filed proof of claim.

[10]Although not specifically defined in the pleadings, I understand that the term "borrowers," as used by the parties, refers to individuals who assert claims against the Debtors based upon pre-petition loan transactions in which those individuals borrowed funds from a Debtor entity secured by a mortgage lien against their residence or other real property (the "Borrowers").

161 (Bankr.D.Del. 2009):

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure authorizes courts to set bar dates by which proofs of claim or interest may be filed. This rule contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate. Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant. This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims. What qualifies as proper notice, however, is dependent upon whether the creditor is known or unknown. If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient.

*Id.* at 165 citing, *inter alia*, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a creditor from asserting prepetition claims after passage of the Bar Date unless that creditor can demonstrate that failure to file a claim timely was due to the creditor's excusable neglect. *Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

The discharge of claims of future or unknown claimants raises questions of due process. *Wright v. Owens Corning,* 679 F.3d 101, 107 (3d Cir. 2012). "The level of process due to a party prior to the deprivation of a property interest . . . is highly dependent on the context." *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin),* 530 F.3d 230, 239 (3d Cir. 2008). The *Wright* Court recognized that:

> Notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality . . . ." Lack or inadequacy of notice of a bankruptcy prevents a claimant from having the opportunity to participate meaningfully in a bankruptcy proceeding to protect his or her claim.

*Wright,* 679 F.3d at 107 quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Due process concerns are satisfied if the published notice is "reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for response." *Chemetron*, 72 F.3d at 346. "The proper inquiry in evaluating notice is whether a party acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice." *In re Charter Co.,* 113 B.R. 725, 728 (M.D.Fla. 1990) citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988), *cert. denied* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

Here, the Debtor published notice of the Bar Date in the national edition of the *Wall Street Journal* and in the *Orange County Register*. The Objectors argue that publishing notice in those two newspapers was a "mere gesture" to comply with notice requirements, rather than a decision made after an in-depth analysis of potential unknown creditors. *See Mullane,* 339 U.S. at 315 ("[W]hen notice is a person's due, process which is a mere gesture is not due process.").

Suzzanne Uhland, whose law firm was lead counsel to the Debtors during these chapter 11 bankruptcy cases, submitted a declaration in support of the Trustee's Bar Date Motion and testified at the May 23, 2012 hearing. Ms. Uhland stated that notice of the Bar Date was published in the national edition of the *Wall Street Journal* because the Debtors had business operations throughout the United States and publication in a newspaper that was published and available nationwide would provide notice to unknown creditors as broadly as possible throughout the country. Tr. 59:18 - 60:1; Tr. 92:18 - 93:6; Trustee Ex. 5 (Uhland Decl.), ¶5(b). The Debtors had been doing business throughout the nation and had more than a million

borrowers. *Id.* at ¶5(c). Further, the Debtors determined that the *Wall Street Journal* was a customary place to publish legal notices and believed it was prudent to publish notice in a newspaper where parties might expect to find a bar date notice. Tr. 60:2 - 60:9, Trustee Ex. 5 (Uhland Decl.), ¶5(c).

The Bar Date Order required publication in the national edition of the *Wall Street Journal* and "such local newspapers as the Debtors deem appropriate." Trustee Ex. 2, ¶18. The Debtors also published notice of the Bar Date in the *Orange County Register* because the Debtors' main office was located in Irvine, California, which is located in Orange County, California. Trustee Ex. 5 (Uhland Decl.), ¶6(a). A large concentration of the Debtors' employees were based in Orange County, and the Debtors were concerned about the potential for unknown claims asserted by former employees affected by the Debtors' substantial workforce reduction in the weeks and months prior to the bankruptcy filing. *Id.*, Tr. 60:15 - 61:6. Also, the Debtors knew that the *Orange County Register* was providing extensive coverage of the Debtors' bankruptcy, and the Debtors believed that supplementary notice in the local publication would reach any individuals who may have been reading the *Orange County Register* to keep track of the Debtors' chapter 11 cases. Trustee Ex. 5 (Uhland Decl.), ¶6(b).[11]

---

[11] The Liquidating Trust has asserted throughout this and related proceedings that entry of the Bar Date Order approving this provision for publication notice served as a final and inviolate determination by the Court that notice thus given was constitutionally sufficient. *See, e.g.,* Trustee's Bar Date Motion, at ¶¶16-18.
    At the June 27, 2007 hearing on the Debtor's Bar Motion, no party objected to the manner or breadth of the proposed publication notice, which left to the Debtors' discretion whether publication notice beyond that in the *Wall Street Journal* was appropriate. The Court approved this particular provision, in support of which no evidence was offered. The Court could not - - at that stage - - assess circumstances of which neither the Court nor any party was (or, arguably, could have been) aware. I view this as a significant reason why the United States Supreme Court, along with others, including the Third Circuit Court of Appeals, have adopted both due process standards (*see, e.g.,City of New York v. New*
(continued...)

8

In *Wright*, the Third Circuit held generally that, for unknown claimants, "notice by publication in national newspapers is sufficient to satisfy the requirements of due process, particularly if it is supplemented by notice in local papers." *Wright,* 679 F.3d at 107-08 citing *Chemetron*, 72 F.3d at 348-49. *See also, e.g., Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.),* 439 B.R. 652, 660 (E.D. Va. 2010) quoting *In re J.A. Jones, Inc.*, 492 F.3d 242, 251 (4th Cir. 2007) ("where the creditor is unknown to the debtor, constructive notice - - typically in the form of publication - - is generally sufficient to pass constitutional muster."). However, the United States Supreme Court has recognized the limitations of notice by publication:

> Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best. . . . But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication.

*City of New York*, 344 U.S. at 296; and

> [I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification [by publication] is all that the situation permits and creates no constitutional bar to a final decrees foreclosing their rights.

*Mullane*, 339 U.S. at 317. Whether that notice is adequate depends upon the circumstances of the particular case. *Wright*, 679 F.3d at 108.

The Objectors argue that the Debtors did not adequately consider the readership profile

---

[11](...continued)
*York, N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953), *Wright v. Owens-Corning,* 679 F.3d 101 (3d Cir. 2012), *Chemetron Corp. v. Jones,* 72 F.3d 341 (3d Cir. 1995)), and excusable neglect standards (*see, e.g. Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993), *Jones v. Chemetron Corp.*, 212 F.3d 199 (3d Cir. 2000)), to address circumstances that come to light - -  inevitably - - *after* entry of a bar date order.
   Of course, the finality sought to be achieved by a bar date order is critical to the orderly completion of the chapter 11 process and the disposition of claims. *See*, discussion, *infra.*

of the *Wall Street Journal* when deciding to publish notice to unknown creditors. Cromwell Ex. F.[12] They argue that notice of the Bar Date in the national edition of the *Wall Street Journal* was not likely to reach individual Borrowers. However, the Debtors' decision to publish notice in the *Wall Street Journal* was made, in part, in an effort to reach all types of unknown creditors nationwide, whether institutional or individual creditors. Trustee Ex. 5 (Uhland Decl.), ¶5(d). The Debtors appropriately considered the wide-spread availability of the national edition of the *Wall Street Journal* to unknown creditors in deciding where to publish notice. *See Brown v. Seaman Furniture Co, Inc.*, 171 B.R. 26, 27 (E.D.Pa. 1994) ("Since the national edition [of the *New York Times*] is sold throughout the country and can be purchased from any corner newspaper vendor here in Philadelphia, the Court finds that it is a reasonable means of alerting potential creditors of the need to file a proof of claim."); *Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 112 B.R. 920, 922, 924 (N.D.Ill. 1990) (The Court rejected the tort claimants' argument that notice of the bar date in the *Wall Street Journal* was constitutionally insufficient because, due to their poor education, they had never even heard of the *Wall Street Journal*).

The Objectors also argue that the Debtors should have spent considerably more money on publishing the Bar Date Notice to ensure that notice would appear in more local papers in locations where the Debtors transacted business. They argue that the amount spent by the Debtors for the Bar Date Notice pales in comparison to other cases. *See Wright v. Owens Corning*, 450 B.R. 541, 557 (W.D.Pa. 2011) *aff'd in part, rev'd in part* 679 F.3d 101 (3d Cir.

---

[12]Cromwell, Ex. F is a Subscriber Study for the *Wall Street Journal*, prepared by the Advertising Sales Office, which, Ms. Cromwell noted, states that the subscribers to the *Wall Street Journal* have an annual household income above $253,000 and household net worth averaging nearly $2.5 million.

2012) (noting that Owens Corning published notice of its bankruptcy proceedings, including the bar date and entry of the confirmation order, in the *New York Times,* the *Wall Street Journal,* and *USA Today*, as well as 250 regional or local newspapers in areas where Owens Corning had significant business operations at the time of publication, and in approximately 35 trade publications in the primary lines of business operated by Owens Corning). Notwithstanding the Herculean publishing efforts in the *Owens Corning* bankruptcy case, other courts have recognized that "[i]t is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read." *Chemetron*, 72 F.3d at 348-49 quoting *In re Best Products Co.,* 140 B.R. 353, 358 (Bankr.S.D.N.Y. 1992).

      The decision of the Third Circuit in *Chemetron* is instructive here. In *Chemetron*, tort claimants filed a lawsuit against debtor Chemetron Corporation ("Chemetron") almost four years after the claims bar date and 20 months after plan confirmation. The claimants alleged injuries arising from a toxic landfill site in Ohio operated by Chemetron pre-bankruptcy. When Chemetron sought to dismiss the lawsuit, the claimants sought permission from the bankruptcy court to file late proofs of claim and filed motions seeking a declaratory judgment that their claims were not discharged by the reorganization plan. *Chemetron*, 72 F.3d at 344-45.

      The bankruptcy court in *Chemetron* granted the claimants' motion to file late claims, finding that the claimants were known creditors entitled to actual notice of the bankruptcy proceeding and bar date. On appeal by Chemetron, the district court reversed the bankruptcy court, holding that the claimants were not known creditors and that publication notice of the bar date was sufficient. *Id.* The Third Circuit affirmed the district court, in part, holding that the claimants were unknown creditors and that notice of the bar date by publication satisfied the

requirements of due process.[13] *Id.* at 348. The bar date order in *Chemetron* required the debtors to publish notice in the national editions of the *New York Times* and the *Wall Street Journal*, and the debtors also voluntarily published notice in seven other newspapers in areas where they were doing business at the time of the filing. *Id* at 345. The Third Circuit rejected the claimants' argument that due process required Chemetron to publish notice in a Cleveland area newspaper, writing

> Having held that the claimants were "unknown" creditors, we have little difficulty holding that the notice which Chemetron published in the *New York Times* and the *Wall Street Journal* was sufficient. It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process. . . . Such notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Mullane*, 339 U.S. at 314, 70 S.Ct. At 657. We find that Chemetron's notice met this standard.

*Id.* at 348.[14] Similarly, here, the Debtors' publication of the Bar Date Notice in the national edition of the *Wall Street Journal* was reasonably calculated to notify potential claimants of the Bar Date across the United States. *See also Brown*, 171 B.R. at 27 (deciding that publishing notice of the bar date in the local and national editions of the *New York Times* satisfied due process for unknown creditors), *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr.E.D.Va. Nov. 21, 2005) (deciding that publishing notice of the bar date in the *Wall Street Journal,* the *New York Times* and *USA Today* satisfied due process for unknown creditors), *In re Best*

---

[13]The Third Circuit vacated the district court's decision regarding dischargeability of the claims for failure to demonstrate excusable neglect and remanded the matter to the bankruptcy court. *Chemetron*, 72 F.3d at 350. *See also Jones v. Chemetron Corp.,* 212 F.3d 199 (3d Cir. 2000).

[14]The Third Circuit also noted that the claimants' argument for publication in a Cleveland area newspaper was undermined by the fact none of the claimants resided near the Cleveland site at the time of the publication notice. *Chemetron*, 72 F.3d at 349.

*Products Co., Inc.*, 140 B.R. 353, 358 (Bankr.S.D.N.Y. 1992) (deciding that notice published in the national editions of the *Wall Street Journal* and the *New York Times*, as well as three local papers, satisfied due process for unknown creditors).

The Debtors also cited consideration of costs as part of the decision-making process with respect to publishing notice. Debtors' counsel testified that cost was always a concern because the Debtors were liquidating and, in particular, at the time the Bar Date Notice was being published, there was concern about significant administrative costs. Tr. 61:7 - 61:16; Trustee Ex. 5 (Uhland Decl.), ¶ 6(c). As noted in the February 7 Decision, publication in newspapers in "dozens of locations" in which a Debtor is conducting business can be "onerous, cumbersome and unduly expensive." *Best Products*, 140 B.R. at 358. The Fourth Circuit has said:

> In bankruptcy, the court has an obligation not only to potential claimants, but also to existing claimants and the petitioner's stockholders. The Court must balance the needs of notification of potential claimants with the interests of existing creditors and claimants. A bankrupt estate's resources are always limited and the bankruptcy court must use discretion in balancing these interests when deciding how much to spend on notification.

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co.,* 820 F.2d 1359, 1364 (4th Cir. 1987). While additional publication notice may have been desirable (although there is no proof here that additional notice would have been availing), the notice given here was constitutionally sufficient.

The Objectors also argue that the font size and placement of the published Bar Date Notice, as well as the time given to creditors to file claims, was insufficient under due process standards. The Bar Date Notice was published in both newspapers on July 23, 2007, requiring claims to be filed prior to the Bar Date of August 31, 2007. The Bar Date Order required notice to be published no less than 30 days prior to the Bar Date. Trustee Ex. 2, ¶18. The parties have

13

not provided any reason why publishing notice 39 days prior to the Bar Date was insufficient. Despite any disadvantages, the font size and placement of the published notice were also sufficient.

The Objectors also argue that the Debtors, aware of the potential for a large number of claims by Borrowers, published the Bar Date Notice in a manner to ensure that potential Borrower claimants would *not* receive adequate notice to file claims.  On the record before me, I cannot conclude that the Debtors published notice of the Bar Date in a manner to preclude Borrower claims.  In her Declaration, counsel for the Debtors stated that, early in the case, the Borrowers were not considered a source of potential claims:

> At the time the Bar Date Notice was published . . . the Debtors generally did not view borrowers as potential creditors, unless and until a borrower filed a complaint or commenced litigation, at which point they were considered litigation creditors or potential creditors who were included on the litigation schedule of creditors provided with actual notice.  Unless a borrower filed a complaint or commenced litigation against the Debtors, thereby becoming a potential creditor of the Debtors, the Debtors generally viewed the borrowers as account-debtors who *owed money to the Debtors*.

Trustee Ex. 5 (Uhland Decl.), ¶5(c) (emphasis added). Tr. 61:17 - 62:4.  The Objectors assert that the Debtors should have been aware of the potential for numerous claims by Borrowers based on the Debtors' documentation of troubled loans as set forth in the "kick-out reports" or "scratch and dent pools" described in the Examiner's Report.[15]   However, the Debtors did not

---

[15] The Objectors sought to introduce into evidence portions of the Final Report of Michael J. Missal Bankruptcy Court Examiner, February 29, 2008 (docket no. 5518)(the "Examiner's Report") at the hearing.  Upon agreement by the Trustee, the entire Examiner's Report was admitted into evidence.  Tr. at 161:14 - 161:25.  The Examiner's Report describes "kickouts" as loans that New Century sought to sell to investors in the secondary market that were rejected by those investors due to defective appraisals, incorrect credit reports and missing documentation.  Examiner Report, p. 109.  "Kickouts," and loans with egregious deficiencies (such as non-performing loans or loans that did not comply with New Century's underwriting standards) were then moved into the "scratch and dent" category of New Century's loan
(continued...)

associate those loans with potential Borrower claims. As explained by Debtors' counsel:

> We viewed the scratch and dent pools as loans that had . . . documentation problems that affected their enforceability and therefore the loan value.. . . We didn't correlate the scratch and dent loan pools with borrower claims.

Tr. 80:5 - 80:9. The same was true with respect to the "kickout loans." Tr. 82:9 - 82:16. ("My view is that the fact a loan was kicked out doesn't correlate with the borrower having a claim against New Century."). The Objectors' argument that the Debtors' intentionally published notice in a manner to preclude Borrowers from asserting timely claims is completely unsupported by the evidence.

Finally, I note again that this decision does not address the merits of any underlying Borrower claims. As stated by the Third Circuit in *Chemetron*:

> In reaching this result, we are not unsympathetic to the alleged injury suffered by the claimants in this case. We stress that our holding addresses the burden placed on the bankruptcy debtor to provide actual notice to potential claimants, not the merits of a timely and properly filed tort suit. Where a debtor has sought the protection of bankruptcy law, however, procedural protections such as the bar claims date apply.

*Chemetron*, 72 F.3d at 348. As discussed in the February 7 Decision, an overriding principle in bankruptcy is finality. The bar date provides that finality because it gives a date certain after which a plan can be negotiated, formulated, and eventually confirmed, ultimately leading to the rehabilitation of the debtor and the payment of claims under a plan of reorganization. *See In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993) *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993). As quoted in the February 7 Decision, and as is so particularly apt here, the *U.S. Airways* Court explained:

---

[15](...continued)
inventory. Examiner Report, p. 67.

> The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters,* 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum ... would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264 (Bankr.D.Me.1984)).
>
> In the instant case, the debtor would be prejudiced by allowing the [claimants] to assert their claim six months after the bar date had passed, particularly in a case as large as this. As noted above, U.S. Airways provided mailed notice to all known creditors and notice by publication to all "unknown" claimants of the applicable bar date. Following passage of the bar date, the debtor should reasonably be able to assume that all claimants needing to be dealt with in the plan have come forward to vindicate their rights, thereby allowing the debtor to calculate its potential liabilities for purposes of effectuating its reorganization. If the court were to allow the [claimants] to file a late claim solely because they were unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim. Such a policy would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice. Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred. *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992).

*U.S. Airways*, 2005 WL 3676186 at *7 - *8. These considerations are equally applicable to the case at bar. A finding that the Bar Date Order is effective against all unknown creditors furthers the policy of finality.

## **CONCLUSION**

During the May 23, 2012 evidentiary hearing, all parties were given the opportunity to present evidence and to cross-examine Ms. Uhland. Upon consideration of the evidentiary record

and relevant case law, nothing has been offered to change the conclusions reached in the February 7 Decision. Therefore, based on the record before me and for the reasons set forth above, I conclude that the Debtors' decision to publish the Bar Date Notice in the national edition of the *Wall Street Journal*, supplemented with notice in the *Orange County Register*, was reasonably calculated, under the circumstances, to apprise interested parties nationwide of the Bar Date and afford them an opportunity to file claims. Accordingly, publication of the Bar Date Notice in the national edition of the *Wall Street Journal,* supplemented with notice in the *Orange County Register*, passes constitutional muster.

        The Trustee's Bar Date Motion will be granted.  An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: August 30, 2013