UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.*[1] | : | Case  No. 07-10416 (KJC) |
| Debtors | : | (Re: D.I. 10917 ) |

**MEMORANDUM DENYING
SECOND MOTION FOR RECONSIDERATION
BY HELEN GALOPE**[2]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Second Motion for Reconsideration filed by Helen Galope (D.I.

10917).  The New Century Liquidating Trust, by and through Alan M. Jacobs, as the Liquidating

Trustee, filed an objection to the Second Motion for Reconsideration (D.I. 10959).  Oral

argument regarding the Second Motion for Reconsideration was heard on June 20, 2013.  For the

reasons set forth below, the Second Motion for Reconsideration will be denied.

Background

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code. By order dated June 28, 2007 (the "Bar Date Order"), this Court established

August 31, 2007 as the deadline for filing proofs of claim in the chapter 11 case (the "Bar Date")

(D.I. 1721).  The Debtors' claims and noticing agent, Xroads Case Management Service, LLC

---

[1] The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (D.I. 52).  New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007.  The jointly administered debtors and New Century Warehouse Corporation are referred to jointly herein as the "Debtors."

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (B).

(the "Claims Agent") mailed notice of the Bar Date (the "Bar Date Notice") to parties listed on

the Master Mailing Matrix maintained by Debtors' counsel.  (D.I. 1861).  On July 23, 2007, the

Claims Agent published the Bar Date Notice in the *Wall Street Journal* (National Edition) and

the *Orange County Register*.  (D.I. 2148, D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second

Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905, D.I. 9957).[3]

The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust

Agreement, dated as of August 1, 2008, which created the New Century Liquidating Trust (the

"Trust") and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust

and Plan Administrator of New Century Warehouse Corporation (the "Trustee").

*The Galope Claim Litigation*

On or about July 29, 2011, Helen Galope filed proof of claim number 4131 in the amount

of $350,000 (secured) plus unliquidated amounts (the "Galope Claim").  The Galope Claim

states that the basis of the claim is a "Mortgage Note" in the original principal amount of

$522,000 in favor of New Century Mortgage Corporation ("NCMC") and attached a copy of the

Federal Truth-in-Lending Disclosure Statement and the Deed of Trust, both dated December 16,

2006, as exhibits. On August 26, 2011, the Trustee filed an objection to the Galope Claim on the

---

[3]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of
Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008
(the "Original Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1,
2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of
Delaware issued a Memorandum Opinion reversing the Original Confirmation Order.  On July 27, 2009,
the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the
Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and
Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District
Court's Memorandum Opinion (the "Status Quo Order") (D.I. 9750).

grounds that it was a late claim, since it was filed almost four years after the Bar Date.[4]  Ms.

Galope filed a response opposing the Trustee's Claim Objection.  An evidentiary hearing was

held on December 13, 2011 to consider only the issues related to the late filing of the claim; not

its underlying merits.[5]  (*See* Scheduling Order, D.I. 10593).

On February 7, 2012, this Court issued a Memorandum and Order  (docket nos. 10725

and 10726) (the "February 7 Decision") sustaining the Trustee's Claim Objection and

disallowing and expunging the Galope Claim.[6]  More particularly, the February 7 Decision

determined that (i) the Galope Claim is a pre-petition claim subject to the Bar Date, (ii) Galope

was an unknown creditor at the time the Bar Date Notice was being served and was entitled only

to constructive notice by publication, (iii) the Debtors' publication of the Bar Date Notice in the

national edition of the *Wall Street Journal*, supplemented with notice in the *Orange County*

*Register*, was constitutionally adequate for unknown creditors, and (iv) Galope was not entitled

---

[4] *See* The New Century Liquidating Trust's Forty-Second Omnibus Objection to Claims Pursuant to 11 U.S.C. §502(b) and Fed.R.Bankr.P. 3001 and 3007 and Local Rule 3007-1 [Non-Substantive] (D.I. 10562) (the "Claim Objection").

[5] On December 6, 2011, Ms. Galope filed an adversary proceeding against Debtors New Century TRS Holdings, Inc., New Century Mortgage Corporation and NC Capital Corporation alleging the following claims:  (1) Fraud at Loan Origination, (2) TILA Violation, (3) Intentional Misrepresentation, (4) Fraudulent Conveyance, (5) Civil Conspiracy v. Homeowners, (6) Civil Conspiracy - Preferential Treatment Accorded Banks, (7) REMIC Fraud and Tax Evasion, (8) Fraudulent Misrepresentation, (9) Unjust Enrichment, (10) Fraud by Omission & Inducement,  (11) Deceit & Concealment of Assets, (12) Breach of the Deed of Trust, (13) Breach of Good Faith & Fair Dealing, and (14) Quiet Title. (the "First Adversary Proceeding") (*See* Adv. No. 11-53893, Adv. D.I. 1). Ms. Galope filed a motion for voluntary dismissal of the First Adversary Proceeding on August 4, 2012 (Adv. D.I. 20) and the adversary case was dismissed by Order dated August 27, 2012 (Adv. D.I. 23).  On October 23, 2012, Ms. Galope moved to reopen the adversary proceeding, which was denied by Order dated April 16, 2013, (Adv. D.I. 30), because Ms. Galope had, by then, filed a second adversary proceeding asserting similar causes of action on November 19, 2012 (Adv. No. 12-51000).  The Trustee has filed a motion to dismiss the second adversary proceeding, which is currently under advisement.

[6] *In re New Century TRS Holdings, Inc.,* 465 B.R. 38 (Bankr. D.Del. 2012).

to relief from the Bar Date for excusable neglect based upon consideration of the factors set forth

in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123

L.Ed.2d 74 (1993).

Ms. Galope's Motion for Reconsideration of the February 7 Decision (the "First

Reconsideration Motion") (D.I. 10742) was denied by Memorandum and Order dated May 17,

2012 (D.I. 10890).  On June 1, 2012, Ms. Galope filed the Second Motion for Reconsideration

based, in part, upon the decision issued by the Third Circuit Court of Appeals on May 18, 2012:

*Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012).  Oral argument on Ms. Galope's Second

Motion for Reconsideration was held on June 20, 2013.

Discussion

(a)     Motion for Reconsideration - standard

Federal Rule of Bankruptcy Procedure 9023, which incorporates Fed.R.Civ.P. 59,

governs motions for reconsideration. Fed.R.Civ.P. 59(e).  A motion to alter or amend a judgment

under Rule 59(e) must be grounded on (1) an intervening change in controlling law; (2) the

availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest

injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  A decision

should be reconsidered when facts that would alter or impact the decision have been overlooked

or misapprehended. *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington,*

*Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 437 B.R. 488, 490 (Bankr. D. Del. 2010) citing

*Karr v. Castle,* 768 F.Supp. 1087, 1093 (D.Del. 1991) aff'd 22 F.3d 303 (3d Cir. 1994).  A

motion for reconsideration should not be used to reargue the facts or applicable law. *Catholic*

*Diocese*, 437 B.R. at 490; *see also Smith v. City of Chester*, 155 F.R.D. 95, 97 (E.D. Pa. 1994)

("Parties are not free to relitigate issues that the Court has already decided, nor should parties make additional arguments which should have been made before judgment"). "Motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Pennsylvania Ins. Guaranty Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D. Pa. 1992).

In the Second Motion for Reconsideration, Ms. Galope asserts the following grounds for reconsideration:  (1) a violation of due process by limiting her right to discovery of the facts regarding the Debtors' transfer of her loan; (2) a violation of "her right to confrontation" during the evidentiary hearing and this Court's wrongful reliance on hearsay testimony of the Trustee; (3) inappropriate and questionable conduct of the Liquidating Trustee and his counsel; (4) conflicting evidence regarding the date the Debtors sold her loan (*i.e.*, whether it was pre-bankruptcy or post-bankruptcy); and (5) an intervening change in Third Circuit law which impacts this Court's determination that her claim arose prepetition.  The claims described in items (1) through (4) above assert arguments that have been heard (and re-heard) and resolved by this Court and are not appropriate for reconsideration.[7]  Only Ms. Galope's assertion that

---

[7]Ms. Galope's claim that she was denied the right to discovery was discussed - - and denied - - in the First Motion for Reconsideration.  (*See* D.I. 10890, p. 6). Moreover, the Order Authorizing the Immediate Abandonment and Destruction of Certain Mortgage Loan Files and Non-Mortgage Loan Business Files (D.I. 11102), dated March 15, 2013, provided that (to the extent the Trustee had not previously done so), the Trustee is required to provide all Objectors (which includes Ms. Galope) with any files in the Trustee's possession concerning or related to the Mortgage Loan originated to the Objectors. Ms. Galope's discovery objection is moot.

Second, Ms. Galope's claim that she was denied her right to confront the Trustee, along with her claim that the Court wrongfully allowed the Trustee's testimony at the evidentiary hearing, also were previously discussed - - and denied - - in the First Motion for Reconsideration.  (*See* D.I. 10890, p. 6). Further, it is inappropriate to raise an evidentiary objection in a motion for reconsideration.  *See U.S. v. Local 1804-1, Int'l Longshoremen's Ass'n*, 831 F.Supp. 167, 171 (S.D.N.Y. 1993) (deciding that a party who failed to raise a hearsay objection at trial could not seek to strike the hearsay testimony through a motion for reconsideration).

(continued...)

there has been an intervening change in controlling law will now be addressed.

In both the February 7 Decision and the First Motion for Reconsideration, I determined

that Ms. Galope's claim was a pre-petition claim based upon the Third Circuit's ruling in *Jeld-*

*Wen, Inc. v. Van Brunt (In re Grossman's Inc.),* 607 F.3d 114 (3d Cir. 2010).  In *Wright v.*

*Owens*

 *Corning,* 679 F.3d 101 (3d Cir. 2012), the Third Circuit held that *Grossman's* test for

determining when a claim arises is not applicable to bankruptcy cases in which the

reorganization plan was proposed and confirmed prior to the date *Grossman's* was decided (June

2, 2010).  *Wright*, 679 F.3d at 109.  The Debtors' Modified Plan was confirmed in November

2009 and, therefore, the *Grossman's* test is not applicable here.  Accordingly, due to the

intervening change in controlling law, it is appropriate to reconsider the issue of whether Ms.

Galope's claim arose pre-petition and is subject to the Bar Date.

(b)      Reconsideration based upon *Wright v. Owens Corning*

For years, the Third Circuit's standard for determining when a "claim" arose was found

in the *Frenville* decision.  *Avellino v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744

F.2d 332 (3d Cir. 1984).  *Frenville* held that a claim does not ripen until a right to payment

arises, as determined by reference to state law. *Id.* at 337.  The *Frenville* test is often summarized

as deciding that "the existence of a valid claim depends on: (1) whether the claimant possessed a

---

[7](...continued)
Third, Ms. Galope's arguments about "inappropriate or questionable" conduct of the Liquidating Trustee and his counsel were considered at length and determined to be baseless in the Memorandum and Order denying Ms. Galope's motion for removal of the Trustee. (*See* D.I.  11204, D.I. 11205).
Finally, Ms. Galope contests the Court's decision regarding the date on which the Debtors transferred her loan.  This is simply a re-argument of facts the Court already found based on the evidence before it and is not an appropriate issue for reconsideration.

right to payment; and (2) when that right arose" as determined by reference to relevant non-bankruptcy law. *Kilbarr Corp. v. Gen. Servs. Admin., Office of Supply & Servs. (In re Remington Rand Corp.),* 836 F.2d 825, 830 (3d Cir. 1988) "State law applies . . . unless federal law 'creates substantive obligations' wholly apart from bankruptcy." *Id.*

However, the Third Circuit  abandoned the *Frenville* test in *Grossman's*, when the Court, sitting *en banc*, held that a "claim" arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a "right to payment." *Id.* at 125.  The *Grossman's* Court explained that *Frenville's*  focus on the "right to payment" failed to give sufficient weight to other words in the statutory definition that modified the term "claim," *i.e.,* "contingent," "unmatured," and "unliquidated."[8]  *Grossman's,* 607 F.3d at 121.  "The accrual test in *Frenville* does not account for the fact that a "claim" can exist under the Code before a right to payment exists under state law." *Id.  See also In re Rodriguez,* 629 F.3d 136, 139, 142 (3d Cir. 2010) (deciding that, under the *Grossman's* test, a lender's claim against a debtor-mortgagor for an escrow account deficit arose at the time the debtor failed to make the escrow payment, even if the lender's right to payment was contingent upon the lender's disbursement of its own funds to satisfy an escrow expense).

A Court of Appeals panel revisited the *Grossman's* test in *Wright v. Owens Corning,* 679 F.3d 101 (3d Cir. 2012).  The *Wright* Court expanded the test announced in *Grossman's* by holding that "a claim arises when an individual is exposed *pre-confirmation* to a product or other

---

[8]The Bankruptcy Code defines the term "claim" in 11 U.S.C. §101(5) as: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

conduct giving rise to an injury that underlies a 'right to payment' under the Code." *Wright*, 679

F.3d at 107 (emphasis in original).  To assuage due process concerns, the *Wright* Court also

decided that the *Frenville* test should continue to apply to two groups of claimants:

(1)    persons who hold claims based upon exposure to a debtor's conduct or product

*pre-petition,* if the reorganization plan was proposed and confirmed prior to the

date *Grossman's* was decided June 2, 2010), and

(2)    persons who hold claims based upon exposure to a debtor's conduct or product

*post-petition,* but *pre-confirmation,* if the reorganization plan was proposed and

confirmed prior to the date *Wright* was decided (May 18, 2012).

*Wright* at 109. Accordingly, the *Frenville* test should be applied to determine whether Ms.

Galope's claim arose pre-petition and is subject to the Bar Date.

To determine whether Ms. Galope's claim arose pre-petition under *Frenville*, the Court

must examine (1) whether Ms. Galope possessed a right to payment; and (2) when that right

arose as determined by reference to relevant non-bankruptcy law. The Galope Claim states that

the basis of the claim is a "Mortgage Note" and attached a copy of the Federal Truth-in-Lending

Disclosure Statement and the Deed of Trust, both dated December 16, 2006, as exhibits.

Ms. Galope's claims for violations of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.,*

("TILA") would have arisen as of the date of the loan closing, which occurred pre-petition. 15

U.S.C. §1640(e) (requiring TILA actions for damages under §1640 to be brought "within one

year from the date of the occurrence of the violation," and actions for special disclosure

violations under §1639 to be brought "before the end of the 3-year period beginning on the date

of the occurrence of the violation."); *Elson v. Deutsche Bank Nat'l Trust Co.*, No. 11-14100,

2012 WL 1902916, *8 (E.D. Mich. May 25, 2012) (deciding that a TILA action seeking to

rescind a loan agreement must be brought within three years of the loan closing); *Sarsfield v.*

*Citimortgage, Inc.*, 707 F.Supp.2d 546, 560 (M.D.Pa. 2010) (noting that a TILA action for

damages has a one-year statute of limitations and the period begins to run from the date of the

closing).

Ms. Galope's claims based upon allegations of the Debtors' fraudulent conduct  in

connection with the origination of the Mortgage Note also arose from the date of the pre-petition

loan closing.  In California, the statute of limitations for an action grounded in fraud is three

years. *Rosenfield v. JP Morgan Chase Bank, N.A.,* 732 F.Supp.2d 952, 971 (N.D.Ca. 2010)

citing Cal.Civ.Proc.Code §338(d).  The statute of limitations begins to run at the consummation

of the transaction. *Id.*  Therefore, Ms. Galope's right to payment for claims based on fraud arose

as of the loan closing in December 2006.  Likewise, claims based on fraud in connection with the

Debtors' transfer of her loan also would have arisen on the date of the transfer, which I

determined to be pre-petition. *New Century*, 465 B.R. at 45.

Ms. Galope has argued that her claims did not arise until the post-petition *discovery* of

her claims. She asserts that she was not aware of her claims based on the Mortgage Note until

she received default notices in 2009, or assignments were recorded post-bankruptcy.[9]  (Second

---

[9]Ms. Galope's proof of claim is based upon the "Mortgage Note," and she has argued that her claims arise out of New Century's actions in connection with its origination and sale of her loan.  In oral argument and other filings, Ms. Galope has also asserted issues regarding post-petition deed of trust assignments, recorder of deeds filings, and foreclosure proceedings. The evidence before me demonstrates that the Debtors had no interest in Ms. Galope's loan as of the bankruptcy filing. *New Century,* 465 B.R. at 45. This Court lacks jurisdiction over claims asserting irregularities in the chain of title or actions taken by unrelated third parties claiming an interest in the Mortgage Loan. *See Scott v. Aegis Mortgage Corp. (In re Aegis Mortgage Corp.)*, 2008 WL 2150120, *5 (Bankr.D.Del. May 22, 2008) (A declaration as to the rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a party to it.).
(continued...)

Motion for Reconsideration, p. 5).  She also asserts that she did not realize she had a claim

against the Debtors until "sometime in late 2010, and 2011, when mainstream media was

beginning to catch on [to] the real reasons of the financial crisis of 2008."  (Galope Response, p.

6 (D.I. 11182)).

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to

obtain vital information bearing on the existence of his claim."  *Rosenfield*, 732 F.Supp.2d at

971.  The Third Circuit has recognized three situations in which equitable tolling may be

appropriate: (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of

action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her

rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Handley v. Chase Bank USA N.A.,* 387 Fed. Appx. 166, 170 (3d Cir. 2010) citing *Oshiver v.*

*Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d. Cir. 1994).  *See also Orman v.*

*Mortgageit,* Civ. A. No. 11-3196, 2012 WL 1071219, *7 n.17 (E.D.Pa. March 30, 2012) (same).

There is no basis for the equitable tolling of Ms. Galope's claims because, as of the date

of the loan closing, she was in possession of the information relevant to the discovery of a TILA

violation or fraud claim. *Meyer v. Amiquest Mortgage Co.,* 342 F.3d 899, (9th Cir. 2003) (TILA

one-year statute of limitations began to run as of the loan closing, since the borrowers were in

possession of the information relevant to the alleged TILA violations on the day the loan papers

were signed); *Rosenfield*, 732 F.Supp.2d at 971 (deciding that equitable tolling of the limitations

---

[9](...continued)
*See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 168-69 (3d Cir. 2004)(Post-confirmation, a bankruptcy
court's jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a
proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or
administration of a confirmed plan or incorporated litigation trust agreement.").

period was not appropriate when the alleged fraud involved an Adjustable Rate Rider, which was in the borrower's possession as of the loan closing).

Based on the foregoing, I conclude that, under a *Frenville* analysis, Ms. Galope's right to payment on her claim arose pre-petition. Although the *Wright* decision changes the *analysis* to be employed to answer the question of when Ms. Galope's claim arose, it does not change the result.

Ms. Galope further argues, however, that the *Wright* decision requires a review of my determination that the Debtors' Bar Date Notice for unknown creditors, accomplished by publication in the *Wall Street Journal* (National Edition) and the *Orange County Register*, met due process requirements. She argues that, like the plaintiffs in *Wright*, she did not know she had a claim at the time the Bar Date Notice was published and, therefore, was not afforded due process. In *Wright*, the Third Circuit wrote:

> Not until we overturned *Frenville* and established our new test for determining when a claim exists under the Code did the Plaintiffs unexpectedly hold "claims" that arguably could be discharged in the proceedings addressed in the notices. By that time, however, the bar date had passed, the Confirmation Order had been entered, and the Confirmation Date had occurred, each of which affected the Plaintiffs' newfound claim status without an opportunity for them to be heard. Due process affords a re-do in these special situations to be sure all claimants have equal rights. We thus hold that, for persons who have "claims" under the Bankruptcy Code based solely on the retroactive effect of the rule announced in *Grossman's*, those claims are not discharged when the notice given to those persons was with the understanding that they did not hold claims.

*Wright*, 679 F.3d at 108. Ms. Galope's claim is distinguishable from the claims at issue in *Wright*. Ms. Galope was not a *future* unknown creditor, but a typical unknown creditor. Her claim arose pre-bankruptcy, under either the *Grossman's* or *Frenville* test. Therefore, her claim is not based *solely* on the retroactive effect of *Grossman's*. At the time the Bar Date Notice was

11

published, Ms. Galope held a pre-petition claim under *Frenville*. There is no reason to

reconsider my previous conclusion that the publication of the Bar Date Notice met due process

requirements for Ms. Galope, an unknown creditor.[10]

Conclusion

For the reasons set forth above, and on reconsideration of my prior decisions based upon

*Wright*, I conclude that Ms. Galope's claims arose pre-petition whether her claims are reviewed

under *Grossman's* or *Frenville*. Moreover, consideration of *Wright* does not change my

conclusion that Ms. Galope was afforded constitutionally adequate due process. The Second

Motion for Reconsideration will be denied. An appropriate Order follows.


BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: September 17, 2013

---

[10]Ms. Galope also argues that a letter from the Debtors provides evidence that the Debtors transferred the servicing of her loan on the petition date (April 2, 2007) rather than pre-petition as the Trustee testified, making her loan property of the estate and establishing her right to actual notice of the Bar Date as a known creditor. However, even assuming (but specifically not deciding) that part of her loan was transferred on the petition date, Ms. Galope would not automatically become a known creditor. There is no evidence in this record to conclude that the Debtors had knowledge of her claims on the petition date. *See New Century*, 465 B.R. at 46-47.