## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 |
|  | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: |  |  |
| *et al.*[1] | : | Case  No. 07-10416 (BLS) |
|  | : | (Re: D.I. 10113) |
| Debtors | : |  |

# MEMORANDUM[2]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Motion of Kimberly S. Cromwell, *pro se*, to consider Proof of Claim Timely Filed (the "Motion") (D.I. 10113).  The New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the Liquidating Trustee (the "Trustee"), filed an objection to the Motion (D.I. 10123).  After discovery and an unsuccessful mediation, an evidentiary hearing was held on the Motion and, thereafter, the parties filed post-hearing submissions (D.I. 10939 (Cromwell); D.I. 10948 (Trustee)).

For the reasons set forth below, the Motion will be denied.

---

[1] The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (D.I. 52).  New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007.  The jointly administered debtors and New Century Warehouse Corporation are referred to jointly herein as the "Debtors."
By Order dated January 31, 2014 (D.I. 11340), this bankruptcy case was reassigned to Judge Brendan Linehan Shannon, although I retained certain matters under advisement (including the Motion described herein) for decision.

[2] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. §1334 and §157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (B).

## FACTS

(A)  The Notes and Deeds of Trust between Ms. Cromwell and the Debtors

On or about November 8, 2005, Ms. Cromwell purchased her primary residence located

in Antioch, California (the "Property") using funds obtained through two loans from New

Century Mortgage Corporation.[3]  The first loan (the "Primary Loan") is evidenced by an

Adjustable Rate Balloon Note in the original principal amount of $509,600.00 signed by Ms.

Cromwell, as Borrower,  in favor of New Century Mortgage Corporation ("NCMC"), as Lender

(the "Primary Note"). (Cromwell Ex. D at CROM002436 - CROM002439). On the same date,

Ms. Cromwell signed a Deed of Trust, granting an interest in the Property to secure her

obligations under the Primary Note. (Trustee Ex. 8 (D.I. 10113-2), ¶ 3).

Ms. Cromwell obtained a second loan (the "Second Loan") from NCMC by signing a

Note, also dated November 8, 2005, in the original principal amount of $127,400.00 (the

"Second Note") (Cromwell Ex. D at CROM002509 - CROM002510) and a second Deed of

Trust. (Cromwell Ex. D at CROM002511 - CROM002512).

The Trustee testified that, based upon an examination of the Debtors' books and records,

the Debtors sold their interest in the Primary Loan to Morgan Stanley Mortgage Capital on

January 27, 2006.[4]  (Tr. 227:8 - 227:11).  On February 27, 2006, the Debtors transferred their

---

[3]Although the Notes and Deeds of Trust are dated November 8, 2005, the Trustee testified that the Debtors' books and records show that the loans were originated on November 14, 2005.  (Tr. 5/23/2102 ("Tr.") 227:1 - 227:7).  Whether the date of the loan transaction is November 8 or November 14, 2005 is immaterial to the issues before me.

[4]The Trustee testified that the Debtors' books and records are in his custody.  (Tr. 229:6 - 229:8).  The Trustee caused the Debtors' books and records to be examined with respect to the claims of Ms. Cromwell.  (Tr. 229:9 - 229:14).

interest in the Second Loan by placing it into a securitization.[5] (Tr. 227:12 - 227:19). The

Debtors released the servicing of the Primary Loan on May 1, 2006 to America's Servicing, Inc.

(Tr. 227:22 - 228:2; Tr. Ex. 8, ¶4). The Debtors released the servicing of the Second Loan to

Carrington Mortgage Services on July 1, 2007.[6] (Tr. 227:22 - 228:2).

(B)      The Debtors' Bankruptcy Case

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code. On June 8, 2007, the Debtors filed a motion pursuant to Fed.R.Bankr.P. 2002,

3003(c)(3) and 9007 asking the Court to fix the time within which proofs of claim may be filed

(the "Debtors' Bar Date Motion") (D.I. 1173). After a hearing on the Debtors' Bar Date Motion,

this Court entered an Order dated June 28, 2007 (the "Bar Date Order") establishing August 31,

2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in this

chapter 11 case (the "Bar Date") (D.I. 1721). On July 9, 2007, the Debtors' claims and noticing

agent, Xroads Case Management Service LLC (the "Claims Agent"), filed a Declaration of

Service, stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a

proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master

Mailing Matrix as set forth on a list maintained by Debtors' counsel." (D.I. 1861). The Bar Date

---

[5]"Securitization" is a process in which banks, savings and loan associations and mortgage companies pool together large numbers of mortgage loans and then sell interests in the mortgage loan pools to investors. The securitized interests sold to investors are known as mortgage-backed securities ("MBS"). The holders of MBS generally receive all or some portion of the cash flow from the continuing payments on the mortgage loans in the underlying securitized pool of loans. The Final Report of Michael J. Missal Bankruptcy Court Examiner, February 29, 2008 (docket no. 5518) (the "Examiner's Report") at p. 25-26.

[6]*See* Order dated May 23, 2007 (D.I. 844) approving, in part, the sale of the Debtors' servicing business to Carrington Capital Management, LLC and Carrington Mortgage Services, LLC.

Order provided that "[t]he Debtors shall cause the Publication Notice to be published once in the national edition of *The Wall Street Journal* and any such other local publications as the Debtors deem appropriate no less than 30 days prior to the General Bar Date."  (Bar Date Order, ¶18).  On August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published the Bar Date Notice in the *Wall Street Journal* (National Edition) and the *Orange County Register* on July 23, 2007.  (D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).[7]  The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the Trust and appointed the Trustee.

On May 26, 2010, Ms. Cromwell filed the Motion, along with a proof of claim, asserting a claim in the amount of $2 million based on violations of the Truth-in-Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"), fraud, fraudulent conveyance, and violations of business and professional codes.   The proof of claim also refers to litigation pending in Contra Costa County Superior Court in California.  The proof of claim was not received by the Debtors' Claims Agent until June 10, 2010.   Ms. Cromwell also filed a

---

[7]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1, 2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation Order.  On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order") (D.I. 9750). On September 30, 2009, the New Century Liquidating Trust filed the Modified Plan.

Declaration in support of the Motion (Trustee Ex. 8), in which she stated, *inter alia*, that:

    (i)      In December 2007, Ms. Cromwell was notified that the monthly payments due on the Primary Note were being increased by $550/month and, believing there was a mistake, she contacted the servicer to request a loan modification, but her request was denied (¶¶5-9, ¶11);

    (ii)     On or about January 10, 2008, Ms. Cromwell received a Notice of Default from Ndex West LLC, on behalf of Deutsche Bank as Trustee for Morgan Stanley Trust 2006-NC, although she believed the beneficiary on the Deed of Trust was NCMC. (¶10);

    (iii)    On or about April 30, 2008, Ms. Cromwell received a Notice of Trustee Sale from Ndex West LLC (¶14);

    (iv)    On or about June 18, 2008, Ms. Cromwell filed an action in California State Court (Contra Costa County Superior Court Case No. 08-01603) (the "State Court Action") against Deutsche Bank, Wells Fargo, Ndex West, and others (¶¶17-18);[8]

    (v)     In August 2008, Ms. Cromwell retained a "forensic auditor" to review her loan documentation and was advised that there were TILA, RESPA and predatory lending violations (¶¶ 19-20).

At the hearing on the Motion, Ms. Cromwell testified that she sent a rescission letter

---

[8]In the Declaration, Ms. Cromwell stated that NCMC was a defendant in the original complaint filed in the State Court Action, and in January 2009, on advice of legal counsel, the complaint was amended to drop NCMC as a defendant.  (Trustee Ex. 8, ¶17, ¶21).  However, at the hearing, Ms. Cromwell amended this information and testified that NCMC was not a defendant in the original complaint, but was added as a defendant when the first amended complaint was filed in January 2009. (Tr. 254:24 - 255:15).

5

related to the Loans to NCMC on October 30, 2008.  (Tr. 252:5 - 252:13).

DISCUSSION

1.    <u>Ms. Cromwell was an unknown creditor</u>

Ms. Cromwell argues that her proof of claim should not be considered untimely because the Debtors did not provide her with actual notice of the Bar Date.  The Trustee argues that Ms. Cromwell was an unknown creditor at the time the Bar Date Notice was served and, therefore, was not entitled to actual notice of the Bar Date.  In a previous decision in this case, I discussed the standard in this Circuit for providing notice of a bar date.  *See White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 450 B.R. 504, 511-13 (Bankr.D.Del. 2011) (hereinafter, "*White*").  Because it is directly applicable to this case, I repeat the discussion about proof of claim bar dates herein.

The purpose and procedures for setting a claims bar date were aptly discussed by my colleague, Judge Gross, in *In re Smidth & Co.,* 413 B.R. 161 (Bankr.D.Del. 2009):

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure authorizes courts to set bar dates by which proofs of claim or interest may be filed.  This rule contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate.  Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant.  This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims.  What qualifies as proper notice, however, is dependent upon whether the creditor is known or unknown.  If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient.

*Id.* at 165 citing, *inter alia*, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a

creditor from asserting prepetition claims unless he can demonstrate excusable neglect. *Berger v.*

*TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

In *Chemetron*, the Third Circuit Court of Appeals defined a "known" creditor as one

whose identity is either known or "reasonably ascertainable" by the debtor. *Chemetron,* 72 F.3d

at 346 citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340,

1347, 99 L.Ed.2d 565 (1988).    The *Chemetron* Court further explained:

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified
> through "reasonably diligent efforts." *Mennonite Bd. Of Missions v. Adams*, 462 U.S.
> 791, 798 n.4, 103 S.Ct. 2706, 2711 n.4, 77 L.Ed.2d 180 (1983). Reasonable diligence
> does not require "impracticable and extended searches . . . in the name of due
> process." *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659. . . . . The requisite search instead
> focuses on the debtor's own books and records. Efforts beyond a careful examination
> of these documents are generally not required.

*Id.* at 346-47 .  On the other hand, an "unknown" creditor is one whose "interests are either

conjectural or future or, although they could be discovered upon investigation, do not in due

course of business come to knowledge [of the debtor]."   *Chemetron*, 72 F.3d at 346 quoting

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed.

865 (1950).

Ms. Cromwell asserts that she was a known creditor, entitled to actual notice of the Bar

Date, because she notified the Debtors of her claims through a rescission notice and a state court

complaint prior to confirmation of the Modified Plan. Ms. Cromwell testified that she sent a

rescission notice to the Debtors via certified mail on October 30, 2008.  She also testified that, in

January 2009, she filed an amended complaint in her State Court Action to add the Debtors as

defendants.  (*See* n. 8, *supra.*). Both documents, however, were delivered to the Debtors more

than a year *after* the Bar Date of August 31, 2007, so neither provides a basis for determining that

Ms. Cromwell was a known creditor at the time the Debtors served notice of the Bar Date.[9]

Ms. Cromwell also argues that she was entitled to actual notice of the Bar Date because her address was known to the Debtors at the time they served the Bar Date Notice upon creditors. However, I have already held in this case that the availability of a borrower's name and address in the Debtors' loan files may reflect that the borrower was a *customer* of the Debtors but, without more, does not mean that the borrower was a *creditor* of the Debtors, known or otherwise. *White*, 450 B.R. at 512 citing *Hebell v. NVR, Inc.,* 1997 WL 417363, *2 (N.D.Ill. July 21, 1997) (Holding that homeowner-mortgagors were not known creditors, even though their identities were "reasonably ascertainable" from the debtors' loan service records, when those records did not indicate that the mortgagors were potential class members who could file suit in the future, thereby becoming claimants).

The Trustee testified that the Debtors' books and records do not reflect that Ms. Cromwell sent any notice of a claim or complaint about the Loans to the Debtors prior to the bankruptcy filing or the Bar Date. (Tr. 229:6 - 230:5). Ms. Cromwell's declaration in support of the Motion states that her problem with the Loans started after the Bar Date, in December 2007, when she was advised that her monthly payment was increasing. (Trustee Ex. 8, ¶¶ 6-7). After hiring a "forensic auditor" in August 2008, she became aware of potential claims against the Debtors. (*Id.* ¶¶19-20). She sent a rescission letter to the Debtors in October 2008. (Tr. 252:9 -

---

[9]The rescission letter and the state court complaint cannot be considered informal proofs of claim. To qualify as an informal proof of claim in a bankruptcy case, a document must: (1) be in writing; (2) contain a demand by the creditor on the bankruptcy estate; (3) express an intent to hold the debtor liable for the debt; (4) be filed with the bankruptcy court; and (5) be justified in light of the facts and equities of the case. *Hefta v. American Classic Voyages Co. (In re American Classic Voyages Co.)*, 405 F.3d 127,130-31 (3d Cir. 2005), *Agassi v. Planet Hollywood Int'l, Inc.,* 269 B.R. 543, 550 (D.Del. 2001). The rescission letter and the state court complaint were not filed with the Bankruptcy Court.

252:11).  Ms. Cromwell filed her Motion and her proof of claim on May 26, 2010. (D.I. 10113).

The record before me indicates that Ms. Cromwell was an "unknown creditor" until some time

after August 31, 2007, when the Bar Date passed. Ms. Cromwell did not notify the Debtors of

any claim until more than a year after the Bar Date.

      Ms. Cromwell also argues that the Debtors should have known about her claims as of the

Petition Date due to their knowledge of problems, generally, with the Debtors' lending practices.

She asserts that the Debtors' schedules list over 500 pending law suits, including 168 complaints

alleging fraud and violations of TILA or RESPA; 94 complaints to quiet title to real property;

and 58 complaints alleging breach of contract or breach of fiduciary duty claims. The Debtors

provided actual notice to those borrowers who served complaints or sent correspondence to the

Debtors asserting claims prior to the bankruptcy filing. (Tr. 136:2 - 136:9). Litigation brought by

unrelated third parties, however, does not constitute notice to the Debtors of Ms. Cromwell's

particular claims.

      Ms. Cromwell further contends  that the Debtors' internal reports regarding "kick-outs"

or "scratch and dent pools" notified them about problems with mortgage loans.[10]  In her post-

hearing brief, Ms. Cromwell questions whether her Loans may have been included on a kick-out

report in 2005, but produced no evidence to support this assertion.[11]

---

     [10]The Examiner's Report describes "kickouts" as loans that the Debtors sought to sell to
investors in the secondary market that were rejected by those investors due to defective appraisals,
incorrect credit reports and missing documentation.  Examiner Report, p. 109.   "Kickouts," and loans
with egregious deficiencies (such as non-performing loans or loans that did not comply with New
Century's underwriting standards) were then moved into the "scratch and dent" category of New
Century's loan inventory.  Examiner Report, p. 67.

     [11]The Trustee testified that he did not know whether either of Ms. Cromwell's Loans were on a
kick-out report or in a scratch and dent pool.  (Tr. 231:14-231:19).

The gist of Ms. Cromwell's arguments is that the Debtors should have known that *all borrowers*, including herself, were known potential claimants based upon the pending litigation, internal reports and flawed - - allegedly fraudulent - - lending practices. However, as noted above, the Third Circuit has recognized that "[a]n 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Chemetron*, 72 F.3d at 346 quoting *Mullane*, 339 U.S. at 317. The Debtors did not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Chemetron*, 72 F.3d at 346 quoting *In re Charter Co.,* 125 B.R. 650, 654 (M.D.Fla. 1991). "[S]uch a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates." *Chemetron*, 72 F.3d at 348.

The Debtors originated more than *one million* loans between 2003 and its bankruptcy filing in 2007. (Tr. 85:19 - 86:11). Lawsuits by approximately only 320 borrowers did not provide the Debtors with notice that *all* borrowers held claims. As discussed in a related decision issued in this case on August 30, 2013, Suzanne Uhland, counsel for the Debtors, testified credibly that the Debtors did not associate their "kick-out" reports or "scratch and dent pools" with potential claims by borrowers.

> [The Debtors] viewed the scratch and dent pools as loans that had . . . documentation problems that affected their enforceability and therefore the loan value . . . [The Debtors] didn't correlate the scratch and dent loan pools with borrower claims. Tr. 80:5 - 80:9. The same was true with respect to the "kickout loans." Tr. 82:9- 82:16 ("My view is that the fact a loan was kicked out doesn't correlate with the borrower having a claim against New Century.").

*In re New Century TRS Holdings, Inc.*, 2013 WL 4671734, *8 (Bankr.D.Del. Aug. 30, 2013)

10

(the "Bar Date Decision").

Nothing in the record before me suggests that Ms. Cromwell's claims could have been "discovered upon investigation," or are claims that "in the due course of business [came] to knowledge of" the Debtors. *Chemetron*, 72 F.3d at 346. Ms. Cromwell was an unknown creditor at the time the Bar Date Notice was served. Notice by publication generally suffices to meet due process standards. *Chemetron*, 72 F.3d at 346.  Specifically, in the Bar Date Decision, I concluded that the Debtors' publication of the Bar Date Notice in the national edition of the *Wall Street Journal*, supplemented with notice published in the *Orange County Register*, satisfied due process requirements for unknown creditors. *New Century*, 2013 WL 4671734.

2.     Ms. Cromwell has not shown excusable neglect for filing a late proof of claim.

Alternatively, Ms. Cromwell asks this Court to deem her claim timely filed because she asserts that her tardy filing was due to excusable neglect.  "Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice - - or who receives it but for some reason does not timely act upon it - - may seek leave to file a late claim based on 'excusable neglect.'"  *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr.E.D.Va. Nov. 21, 2005).  Bankruptcy Rule 9006(b)(1) provides in relevant part:

> Except as provided . . . when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1).  The burden of proving excusable neglect lies with the late-claimant. *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) ("*Chemetron II*").

11

The United States Supreme Court articulated the now well-known standard for excusable neglect in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). When deciding whether a party's neglect of a deadline was "excusable," the *Pioneer* Court held that the determination was "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The *Pioneer* Court then listed four factors for consideration:  (i) the danger of prejudice to the debtor; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Id.*  "All factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.),* 405 F.3d 127, 133 (3d Cir. 2005) citing *George Harms Constr. Co., Inc. v. Chao,* 371 F.3d 156, 164 (3d Cir. 2004).

     (A)    <u>Prejudice</u>

 The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.),* 188 F.3d 116, 127 (3d Cir. 1999) .  When addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v)

whether allowance of the claim would open the floodgates to other late claims. *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)* No. 00-2426, 2004 WL 2283599 at *4 (D.Del. Oct. 4, 2004) *citing O'Brien Envtl.*, 188 F.3d at 126-28.

The Trustee argues that allowing untimely claims, such as Ms. Cromwell's, will cause prejudice to the Trust. The Trustee contends that the Debtors had no knowledge of Ms. Cromwell's claim.  In response, Ms. Cromwell argues throughout her filings that, due to the Debtors' allegedly fraudulent lending practices, the Debtors should have expected a deluge of claims filed by borrowers. Credible testimony by the Debtors' counsel, not controverted by anything other than unsupported allegations, revealed, however, that, at the time the Bar Date Notice was published, the Debtors did not consider all borrowers as potential claimants; instead, the Debtors generally viewed the borrowers as account-debtors who owed money to the Debtors. (Tr. 61:17 - 62:4) (Suzanne Uhland).

The Trustee testified without contradiction that the Debtors' books and records did not show any debt owed to Ms. Cromwell or any notice from Ms. Cromwell of a potential claim. (Tr. 229:5 - 230:8).  *Cf. O'Brien Envtl*, 188 F.3d at 128 (finding that there was no question that the debtors were aware of the claim, which had been scheduled and had been discussed by the parties prior to the plan's effective date), *Pro-Tec,* 2004 WL 2283599 (finding no surprise when the debtor had listed claimant on its schedules), *In re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr.D.Del. 2006) (same). Ms. Cromwell says that even she was not aware of her claims until August 2008, which is a year after the Bar Date.  (Tr. 256:2 - 256:11).  Thus, it is plain that Ms. Cromwell's claims were not - - nor should have been - - anticipated by the Debtors.

The Trustee also argues that allowance of Ms. Cromwell's late-filed claim would

prejudice the estate because he has already completed two distributions to creditors.  (Tr. 221:10 - 222:21). Pursuant to an Order of this Court dated August 15, 2012,  the Trustee has established a reserve for disputed claims.[12]  (*Id.*, *see also* D.I. 11008).  As this is a liquidating chapter 11, there is no possibility of prejudice to the Debtors' "reorganization," but the disruption to the Trustee's efforts to complete distribution under the Modified Plan has already occurred.

Consideration of whether allowance of this late-filed claim might open the floodgates to filings of similar claims is clearly applicable here.  As recognized earlier in this case:

> As the Court is already aware from this and other similar matters now before it in the New Century case, allowance of late-filed claims in this case unquestionably will open a floodgate to similar claims by other borrowers.  In fact, as evidenced by the number of pending objections to "late claims" and motions to allow "late claims," the flow has already begun.

*In re New Century TRS Holdings, Inc.,* 465 B.R. 38, (Bankr.D.Del. 2012).  Moreover, at the evidentiary hearing, the Trustee testified that the continuous filing of late claims prejudices the Trust by adding administrative costs and causing significant delay to wind-up the estate. (Tr. 230:13 - 231:11).  Such prejudice was discussed by the *U.S. Airways* Court:

> The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters,* 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum ... would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264 (Bankr.D.Me.1984)).

---

[12]The Trustee testified that allowance of late-filed claims would require him to modify the trust distribution model and would affect future distributions to creditors and, potentially prior distributions, although the Trustee acknowledged that any affect on prior distributions was "a stretch." (Tr. 230:13 - 231:11).  At a previous hearing in this case, held prior to establishing the reserve for disputed claims, the Trustee testified that allowance of late-filed claims could require recalculation of distributions. *In re New Century TRS Holdings, Inc.,* 465 B.R. 38, 51 (Bankr.D.Del. 2012).

In the instant case, the debtor would be prejudiced by allowing the [claimants] to assert their claim six months after the bar date had passed, particularly in a case as large as this. As noted above, U.S. Airways provided mailed notice to all known creditors and notice by publication to all "unknown" claimants of the applicable bar date. Following passage of the bar date, the debtor should reasonably be able to assume that all claimants needing to be dealt with in the plan have come forward to vindicate their rights, thereby allowing the debtor to calculate its potential liabilities for purposes of effectuating its reorganization. If the court were to allow the [claimants] to file a late claim solely because they were unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim. Such a policy would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice. Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred. *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992).

*U.S. Airways*, 2005 WL 3676186 at *7 - *8.  These considerations are equally applicable to the case at bar. The record before me supports the conclusion that the Trust would suffer substantial prejudice if Ms. Cromwell's late-filed is permitted.

    (B)    <u>Length of delay and impact on judicial proceedings</u>

The second *Pioneer* factor to consider is the length of the delay in filing the proof of claim and the impact of the delay on the judicial proceedings. Ms. Cromwell's claim was filed on May 26, 2010, which was almost two years and nine months after the Bar Date, and six months after confirmation of the Plan.  This is a significant delay. Ms. Cromwell argues that her late claim will not impact this case since the Trustee is still in the process of resolving claims.  *See In re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr.D.Del. 2006) (allowing a late-filed claim which was filed one-week after the bar date and would have minimal impact on the case since the creditor's committee was in the midst of filing claim objections and no distribution was expected

"for some time."). However, the impact of allowing at this juncture the late-filed claim in this case would render the Bar Date meaningless; the continuous filing of late claims prevents the Trustee from completing distributions to creditors with timely-filed claims.

       (C)    <u>Reason for the delay, including whether it was within the reasonable control of the movant.</u>

Ms. Cromwell argues that the Debtors' failure to provide her with adequate notice of the bankruptcy filing and the Bar Date caused the delay in filing her claim. However, I have determined that Ms. Cromwell was an unknown creditor of the Debtors and, therefore, notice of the Bar Date by publication was constitutionally sufficient. Moreover, Ms. Cromwell acknowledges that she was unaware of her claims until August 2008, which was a year after the Bar Date.[13] "Ignorance of one's own claim does not constitute excusable neglect." *Chemetron II*, 212 F.3d at 205 quoting *Best Prods.*, 140 B.R. at 359. *Even upon learning of her potential claims against the Debtors in August 2008, Ms. Cromwell did not file a proof of claim until May 26, 2010.*

       (D)    <u>Good faith of the movant</u>

There is nothing in the record to indicate that Ms. Cromwell acted in bad faith.

       (E)    <u>Conclusion - Excusable Neglect</u>

Upon consideration of the *Pioneer* factors in light of the totality of the circumstances in this case, I conclude that Ms. Cromwell has failed to show that the late filing of her claim was

---

[13]Ms. Cromwell's claim is a pre-petition claim because it is based completely upon events that occurred as of the pre-petition loan closing. *In re New Century TRS Holdings, Inc.,* 2013 WL 5231456 (Bankr.D.Del. Sept. 17, 2013) (holding that a borrower's claim based upon fraud, TILA violations and other causes of action arising from the loan closing were pre-petition claims, even though the borrower did not discover her claims until after the bankruptcy filing).

due to excusable neglect.  Her claim was not known to, or anticipated by, the Debtors.

Allowance of the late filing would render the Bar Date meaningless and cause substantial

prejudice to the Trust by opening the floodgates to the late filing of similar claims years after the

Bar Date and confirmation of the Modified Plan which, in turn, increases the Trust's

administrative costs and prevents final distribution to creditors.

3.    Conclusion

        For the reasons set forth above, Ms. Cromwell's Motion will be denied.  An appropriate

Order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: March 4, 2014

17