**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.*[1] | : | Case No. 07-10416 (BLS) |
| | : | (Re: D.I. 10562) |
| Debtors | : | |

# MEMORANDUM[2]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is The New Century Liquidating Trust's Forty-Second Omnibus Objection to Claims Pursuant to 11 U.S.C. §502(b) and Fed.R.Bankr.P. 3001 and 3007 and Local Rule 3007-1 [Non-Substantive] (the "Claim Objection") (D.I. 10562), which includes an objection to the proof of claim filed on or about July 20, 2011 by Karan J. Russell (the "Russell Claim"). The Claim Objection seeks disallowance of the Russell Claim and other claims that were filed nearly four years after the proof of claim bar date.[3] Ms. Russell filed a response to the

---

[1] The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (D.I. 52). New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007. The jointly administered debtors and New Century Warehouse Corporation are referred to jointly herein as the "Debtors."

By Order dated January 31, 2014 (D.I. 11340), this bankruptcy case was reassigned to Judge Brendan Linehan Shannon, although I retained certain matters under advisement (including the Claim Objection described herein) for decision.

[2] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. §1334 and §157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (B).

[3] The Claim Objection also challenged the late-filed claims of Tiphanie Goines and Helen Galope. Ms. Galope and Ms. Goines filed responses to the Claim Objection. *See* D.I. 10575 (Goines' Response) and D.I. 10578 (Galope's Response). Ms. Goines' claim was disallowed by Order dated April

(continued...)

Claim Objection (D.I. 10574). The New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the Liquidating Trustee (the "Trustee"), filed a reply to Ms. Russell's response (D.I. 10577). After discovery, an evidentiary hearing was held, at which Ms. Russell appeared and participated *pro se*.

For the reasons set forth below, the Claim Objection will be sustained and the Russell Claim will be disallowed.

## FACTS

(1)    The Prepetition Loan Between the Debtors and Ms. Russell

On or about August 10, 2006, Ms. Russell purchased real property located in Los Angeles, California (the "Property") using funds obtained through two loans from New Century Mortgage Corporation ("NCMC"). The first loan (the "Primary Loan") is evidenced by an Adjustable Rate Note in the original principal amount of $880,000.00 signed by Ms. Russell and Fred Hemphill, as Borrowers, in favor of NCMC, as Lender (the "Primary Note"). (Russell Ex. 4; Tr. 46:9 - 46:16, 100:19 - 100:24).[4] The second loan (the "Second Loan"), received on the same date and between the same parties, was in the original principal amount of $220,000.00. (Tr. 46:9 - 46:16; 100:19 - 100:24). The loans were secured by liens against the Property.

The Trustee, now the custodian of the Debtors' books and records (Tr. 48:22 - 48:25),

---

[3](...continued)
23, 2012 (D.I. 10860) after Ms. Goines failed to appear at an evidentiary hearing. Ms. Galope's claim was disallowed after an evidentiary hearing by Memorandum and Order dated February 7, 2012. *In re New Century TRS Holdings, Inc.*, 465 B.R. 38 (Bankr.D.Del. 2012), *reconsid. denied* Bky. No. 07-10416, D.I. 10890 (Bankr.D.Del. May 17, 2012), *2nd reconsid. denied* 2013 WL 5231456 (Bankr.D.Del. Sept. 17, 2013).

[4]Citations to the transcript of the evidentiary hearing held on July 12, 2012 are cited herein as "Tr.," together with reference to the appropriate page and line numbers.

testified that, based upon an examination of those records, the Debtors' interest in the Primary Loan was transferred to Barclays Bank PLC ("Barclays") on or about March 16, 2007, when Barclays exercised its rights to seize certain collateral after an event of default under a Master Repurchase Agreement between certain Debtors and Barclays.  (Trustee Exhibits 56, 57, 58, 59 and 60; Tr. 52:6 - 55:21).

The Trustee further testified that the Debtors' interest in the Second Loan was sold to DLJ Mortgage Capital, Inc. ("DLJ") on December 19, 2006, pursuant to an Amended and Restated Master Mortgage Loan Purchase Agreement between DLJ and debtor NC Capital Corporation.[5]  (Trustee Exhibits 50, 51, 53, 54, 55, 61, and 62; Tr. 48:6 - 52:5).

The Debtors released the servicing of the Primary Loan on March 28, 2007 to Home Equity Services. (Tr. 48:1 - 48:5). The Debtors released the servicing of the Second Loan to Select Portfolio Services on February 1, 2007.  (*Id.*).

(2)     The Debtors' Bankruptcy Case

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 8, 2007, the Debtors filed a motion pursuant to Fed.R.Bankr.P. 2002, 3003(c)(3) and 9007 asking the Court to fix the time within which proofs of claim may be filed (the "Debtors' Bar Date Motion") (D.I. 1173).  After a hearing on the Debtors' Bar Date Motion, this Court entered an Order dated June 28, 2007 (the "Bar Date Order") establishing August 31, 2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in this

---

[5]The "Purchaser" in the Amended and Restated Master Mortgage Loan Purchase Agreement is described as "DLJ Mortgage Capital, Inc. having an office at c/o Credit Suisse First Boston, LLC . . . ." (Trustee Ex. 51). Some of the transaction documents refer to the purchaser as "Credit Suisse." (*See* Trustee Exhibits 53, 54 and 55).

chapter 11 case (the "Bar Date") (D.I. 1721). On July 9, 2007, the Debtors' claims and noticing agent, Xroads Case Management Service LLC (the "Claims Agent"), filed a Declaration of Service, stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master Mailing Matrix as set forth on a list maintained by Debtors' counsel." (D.I. 1861). The Bar Date Order provided that "[t]he Debtors shall cause the Publication Notice to be published once in the national edition of *The Wall Street Journal* and any such other local publications as the Debtors deem appropriate no less than 30 days prior to the General Bar Date." (Bar Date Order, ¶18). On August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published the Bar Date Notice in the *Wall Street Journal* (National Edition) and the *Orange County Register* on July 23, 2007. (D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).[6] The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the Trust and appointed the Trustee.

(3)     The Russell Proof of Claim

On or about July 20, 2011, Ms. Russell filed the Russell Claim, asserting a secured claim

---

[6]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1, 2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation Order. On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order") (D.I. 9750). On September 30, 2009, the New Century Liquidating Trust filed the Modified Plan.

in the amount of $880,000.00 against the Debtors based upon a "wrongful foreclosure."[7] (D.I. 10562, ¶26). No supporting documentation was attached to the Russell Claim. (*Id.*).

## DISCUSSION

Ms. Russell argues that the tardy filing of her proof of claim was due to excusable neglect. "Even when notice satisfies constitutional requirements, a creditor who does not receive actual notice - - or who receives it but for some reason does not timely act upon it - - may seek leave to file a late claim based on 'excusable neglect.'" *In re U.S. Airways, Inc.*, 2005 WL 3676186, *6 (Bankr.E.D.Va. Nov. 21, 2005). Bankruptcy Rule 9006(b)(1) provides in relevant part:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1). The burden of proving excusable neglect lies with the late-claimant. *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).

The United States Supreme Court articulated the now well-known excusable neglect standard in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). When deciding whether a party's neglect of a deadline was "excusable," the *Pioneer* Court held that the determination was "an equitable one, taking account

---

[7]The Debtors' interest in Ms. Russell's loans, along with any servicing rights, were transferred prior to the filing of the Debtors' chapter 11 cases. Consequently, neither the Debtors nor the Trustee have ever claimed any interest in the loans or sought to enforce them, including through any foreclosure.

of all relevant circumstances surrounding the party's omission." *Id.* at 395.  The *Pioneer* Court then listed four factors for consideration:  (i) the danger of prejudice to the debtor; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith.  *Id.*  "All factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.),* 405 F.3d 127, 133 (3d Cir. 2005) citing *George Harms Constr. Co., Inc. v. Chao,* 371 F.3d 156, 164 (3d Cir. 2004).

    (A)    <u>Prejudice</u>

The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.),* 188 F.3d 116, 127 (3d Cir. 1999).  When addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)* No. 00-2426, 2004 WL 2283599 at *4 (D.Del. Oct. 4, 2004) *citing O'Brien Envtl.*, 188 F.3d at 126-28.

The Trustee argues that allowing untimely claims, such as Ms. Russell's, will cause

prejudice to the Trust. The Trustee testified without contradiction that the Debtors' books and records did not show any debt owed to Ms. Russell or that any correspondence or complaint had been received from Ms. Russell notifying the Debtors of a potential claim. (Tr. 57:2 - 58:12). *Cf. O'Brien Envtl*, 188 F.3d at 128 (finding that there was no question that the debtors were aware of the claim, which had been scheduled and had been discussed by the parties prior to the plan's effective date), *Pro-Tec,* 2004 WL 2283599 (finding no surprise when the debtor had listed claimant on its schedules), *In re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr.D.Del. 2006) (same). Nothing in this record supports a finding that the Debtors anticipated - - or should have anticipated - - Ms. Russell's $880,000.00 claim.

Because this is a liquidating chapter 11 case, there is no possibility of prejudice to the Debtors' "reorganization," but disruption to the Trustee's efforts to complete distribution under the Modified Plan has already occurred. (Tr. 60:15 - 61:7).

Earlier in the Debtors' bankruptcy case, I noted that allowance of late-filed claims might open the floodgates to filings of similar claims:

> As the Court is already aware from this and other similar matters now before it in the New Century case, allowance of late-filed claims in this case unquestionably will open a floodgate to similar claims by other borrowers. In fact, as evidenced by the number of pending objections to "late claims" and motions to allow "late claims," the flow has already begun.

*In re New Century TRS Holdings, Inc.,* 465 B.R. 38, (Bankr.D.Del. 2012). At the evidentiary hearing, the Trustee testified that the continuous filing of late claims prejudices the Trust by adding administrative costs and causing significant delay to wind-up the estate. (Tr. 59:16 - 60:14). Such prejudice was discussed by the *U.S. Airways* Court:

> The establishment and enforcement of a bar date for filing claims "furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case." *In re Peters,* 90 B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be continually pursued by his creditors ad infinitum . . . would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting *Maine Bonding & Casualty Co. v. Grant (In re Grant)*, 45 B.R. 262, 264 (Bankr.D.Me.1984)).
>
> In the instant case, the debtor would be prejudiced by allowing the [claimants] to assert their claim six months after the bar date had passed, particularly in a case as large as this. As noted above, U.S. Airways provided mailed notice to all known creditors and notice by publication to all "unknown" claimants of the applicable bar date. Following passage of the bar date, the debtor should reasonably be able to assume that all claimants needing to be dealt with in the plan have come forward to vindicate their rights, thereby allowing the debtor to calculate its potential liabilities for purposes of effectuating its reorganization. If the court were to allow the [claimants] to file a late claim solely because they were unaware of the bankruptcy filing, it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously unknown claim. Such a policy would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice. Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred. *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992).

*U.S. Airways*, 2005 WL 3676186 at *7 - *8. These considerations are equally applicable to the case at bar. Preventing the continuing submission of late claims will permit the Trustee to finalize administration of the Trust and move to close the bankruptcy cases. The record before me supports the conclusion that the Trust would suffer prejudice if Ms. Russell's late-filed claim is permitted.

(B)     <u>Length of delay and impact on judicial proceedings</u>

The second *Pioneer* factor to consider is the length of the delay in filing the proof of claim and the impact of the delay on the judicial proceedings. Ms. Russell filed her claim almost

8

*four years* after the Bar Date. As discussed above, the impact of allowing a late-filed claim at this juncture in the case would render the Bar Date meaningless; the continuous filing of late claims prevents the Trustee from completing distributions under the Modified Plan to creditors with timely-filed claims.

(C) <u>Reason for the delay, including whether it was within the reasonable control of the movant.</u>

Ms. Russell argues that her late filing is excusable because the Debtors failed to provide her with adequate notice of the bankruptcy filing and the Bar Date. She argues that she acted reasonably by filing her claim as soon as she became aware of the Debtors' bankruptcy filing.[8] (Response, D.I. 10574, ¶4; Tr. 101:24 - 101:25). The Trustee argues that Ms. Russell was an unknown creditor of the Debtors at the time the Bar Date Notice was served and, therefore, notice by publication was constitutionally sufficient.

The purpose and procedures for setting a claims bar date were aptly discussed by my colleague, Judge Gross, in *In re Smidth & Co.,* 413 B.R. 161 (Bankr.D.Del. 2009):

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure authorizes courts to set bar dates by which proofs of claim or interest may be filed. This rule contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate. Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant. This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims. What qualifies as proper notice, however, is

---

[8]Ms. Russell filed a complaint in the Superior Court of California, County of Los Angeles, on March 16, 2009, which references the Debtors' 2007 bankruptcy filing. (Trustee Ex. 11, ¶ 28). However, she did not file her claim until July 2011, more than two years later. Ms. Russell explains this discrepancy by claiming that her attorney (and not Ms. Russell, herself) knew about the Debtors' bankruptcy in 2009. (Tr. 135:17 - 135:25). Ms. Russell's assertion that she filed the Russell Claim as soon as she became aware that she could file a proof of claim in the Debtors' bankruptcy case lacks credibility.

> dependent upon whether the creditor is known or unknown. If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient.

*Id.* at 165 citing, *inter alia*, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a creditor from asserting prepetition claims unless he can demonstrate excusable neglect. *Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

In *Chemetron*, the Third Circuit Court of Appeals defined a "known" creditor as one whose identity is either known or "reasonably ascertainable" by the debtor. *Chemetron,* 72 F.3d at 346 citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). The *Chemetron* Court further explained:

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 798 n.4, 103 S.Ct. 2706, 2711 n.4, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659 . . . . The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.

*Id.* at 346-47 . On the other hand, an "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Chemetron*, 72 F.3d at 346 quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950).

Ms. Russell argues that, as of the petition date, the Debtors had information about her and her loan in their files and, therefore, could have provided her with notice of the Bar Date.

However, I have already held in this case that the availability of a borrower's name and address in the Debtors' loan files may reflect that the borrower was a *customer* of the Debtors but, without more, does not mean that the borrower was a *creditor* of the Debtors, known or otherwise. *White*, 450 B.R. at 512 citing *Hebell v. NVR, Inc.,* 1997 WL 417363, *2 (N.D.Ill. July 21, 1997) (Holding that homeowner-mortgagors were not known creditors, even though their identities were "reasonably ascertainable" from the debtors' loan service records, when those records did not indicate that the mortgagors were potential class members who could file suit in the future, thereby becoming claimants). The Trustee testified, without contradiction, that the Debtors' books and records did not show any debt owed to Ms. Russell or any notice from Ms. Russell of a potential claim as of the date the Bar Date Notice was served. (Tr. 57:2 - 58:12).

Ms. Russell was an unknown creditor at the time the Bar Date Notice was served. Nothing in the record before me suggests that Ms. Russell's claim could have been "discovered upon investigation," or is a claim that "in the due course of business [came] to knowledge of" the Debtors. *Chemetron*, 72 F.3d at 346. Notice by publication generally suffices to meet due process standards for unknown creditors. *Chemetron*, 72 F.3d at 346. In a previous decision in the Debtors' bankruptcy case, I concluded that the Debtors' publication of the Bar Date Notice in the national edition of the *Wall Street Journal*, supplemented with notice published in the *Orange County Register*, satisfied due process requirements for unknown creditors. *In re New Century TRS Holdings, Inc.*, 2013 WL 4671734, *8 (Bankr.D.Del. Aug. 30, 2013). Because Ms. Russell was an unknown creditor, she was not entitled to actual notice of the Bar Date. She received constitutionally adequate notice of the Bar Date by publication.

(D)   Good faith of the movant

There is nothing in the record to indicate that Ms. Russell acted in bad faith.

Upon consideration of the *Pioneer* factors, in light of the totality of the circumstances in this case, I conclude that Ms. Russell has failed to show that the late filing of her claim was due to excusable neglect.

## CONCLUSION

For the reasons set forth above, the Claim Objection will be sustained, and the Russell Claim will be disallowed. An appropriate Order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: March 12, 2014