## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., | ) | |
| a Delaware corporation, *et al.*,[1] | ) | Case No. 07-10416 (KJC) |
| | ) | Jointly Administered |
| Debtors | ) | (Re: D.I. 5537) |
| | ) | |

## MEMORANDUM REGARDING
## OBJECTION TO CLAIM OF PIERRE AUGUSTIN[2]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the objection to the proof of claim filed by Pierre Augustin in the

above-captioned bankruptcy case.[3]  An evidentiary hearing was held on the merits of Mr.

---

[1]The pre-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited liability partnership. On August 3, 2007, New Century Warehouse Corporation, a California corporation, which is also known as "Access Lending," filed a voluntary chapter 11 bankruptcy petition. These entities are referred to herein as the "Debtors," collectively, or any individual entity may be referred to herein as the "Debtor."
  By Order dated January 31, 2014 (D.I. 11340), this bankruptcy case was reassigned to Judge Brendan Linehan Shannon, although I retained certain matters under advisement (including the Motion described herein) for decision.

[2]This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. §1334 and §157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(B).

Augustin's claim. For the reasons set forth below, the Trustee's objection will be sustained and Mr. Augustin's claim will be disallowed and expunged.

**FACTS**

**A. Background**

Mr. Augustin is a self-employed businessman holding college degrees in political science, business, and economics, and two master's degrees: one in public administration and one in business administration. (Joint Pre-trial Memorandum ("JPM"), ¶47).[4] He operated a business that exported products to Haiti, which was funded, in part, with a small business loan in the approximate amount of $55,000.00 issued on or about May 17, 2002 by Danversbank (f/k/a Danvers Savings Bank) (the "Danvers Loan"). (JPM, ¶48). On May 17, 2002, Mr. Augustin executed an Unconditional Personal Guaranty in connection with the Danvers Loan. (*Id.*). Mr. Augustin asserts that, due to the political and economic climate in Haiti, the retail operations of his business suffered, rendering his business unable to make payments due under the Danvers Loan and ultimately resulting in Mr. Augustin personally filing a chapter 7 bankruptcy petition. (JPM, ¶49).

---

[3]The Debtors objected to Mr. Augustin's proof of claim in the Eighteenth Omnibus Objection: Substantive Objection Pursuant to 11 U.S.C. Sections 502, 503, 506, 507, Bankruptcy Rules 3007 and 9014, and Local Rule 3007-1 to Certain (A) Books and Records Claims; (B) Insufficient Documentation Claims; (C) Multiple-Debtor Duplicate Claims; and (D) Reduced and/or Reclassified Claims (D.I. 5537) (the "Claim Objection"). After confirmation of the Modified Second Amended Joint Chapter 11 Plan of Liquidation on November 20, 2009 (*see infra.*), the New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the Liquidating Trustee (the "Trustee") was authorized to pursue objections to claims and took over responsibility for pursuing the Claim Objection.

[4]At the evidentiary hearing, the Trustee submitted a Joint Pretrial Memorandum that was black-lined to show certain changes requested by Mr. Augustin. The parties noted on the record which paragraphs of the Joint Pre-trial Memorandum contained facts that were agreed to or were disputed. (Tr. 10/20/2010 (D.I. 10280) ("Tr.") 46:3 – 48:25).

2

## B. The Pre-petition Loan Transaction

In the latter part of 2003, Allied Home Mortgage Capital Corporation ("Allied"), a mortgage broker, contacted Mr. Augustin and his wife, Briget Ngampa, about obtaining a loan.[5] (Tr. 85:2 – 85:6 (Augustin)). Allied was not an agent or employee of the Debtors. (Tr. 123:12 – 123:19 (Lindsay)).[6] On or about December 18, 2003, Ms. Ngampa executed a Massachusetts Mortgage Broker Disclosure (the "Broker Disclosure") with Allied. (Trustee Ex. 3; Tr. 84:3- 86:6 (Augustin)). Ms. Ngampa also signed a Massachusetts High Cost Loan Application Disclosure (the "High Cost Loan Disclosure") prepared by Allied, which provides, in pertinent part:

> This loan which will be offered to you is not necessarily the least expensive loan available to you and you are advised to shop around to determine competitive interest rates, points, and other fees and charges.

(Trustee Ex. 3; Tr. 86:4 – 86:19(Augustin)). Both the Broker Disclosure and the High Cost Loan Disclosure have the date "12-18-03" handwritten next to Ms. Ngampa's signatures.

Allied submitted two loan applications to New Century Mortgage Corporation ("New Century") on behalf the Borrowers. (Tr. 158:14 – 159:15 (Lindsay)). The first application was submitted on January 22, 2004, but was denied on February 24, 2004. (Tr. 159:2 – 159:9; 160:11 (Lindsay)). The second application was submitted on March 17, 2004. (Tr. 159:2 –

---

[5]Mr. Augustin and Ms. Ngampa may be referred to jointly as the "Borrowers."

[6]Ms. Patricia Lindsay, a former employee of the Debtors, testified for the Trustee. (Tr. 121:14 - 122:16 (Lindsay)). Ms. Lindsay was hired by New Century in 1997 as a wholesale underwriter. She also held other positions with New Century, including manager of the broker desk (which involved working with third-party brokers who sought approval to submit loan applications to New Century) and Vice President of Corporate Risk Management. (*Id.*). She testified credibly that her positions at New Century provided her with familiarity with the guidelines and general process by which New Century's loans were underwritten. (Tr. 122:1 – 122:6 (Lindsay)).

159:16; 160:12- 160:13 (Lindsay)). Both applications were the same, but the first application

was denied because "the broker did not do [his] duty and send in all the required documents in

order to close the loan." (Tr. 160:14 – 161:1 (Lindsay)).

Upon receipt of the second loan application from Allied, New Century sent a letter dated

March 17, 2004 to Ms. Ngampa at her home address (Trustee Ex. 5) enclosing documentation

showing the estimated cost of the loan.[7] Mr. Augustin and Ms. Ngampa signed a number of

documents with the handwritten date of "3/22/04" appearing next to their signatures, including:

(i) Loan Information Letter (Trustee Ex. 6);[8] (ii) Federal Truth-in-Lending Disclosure Statement

and definition of Truth-in-Lending Terms (Trustee Ex. 7); (iii) Good Faith Estimate –

Itemization and Schedule A to Good Faith Estimate of Settlement Charges (Trustee Ex. 8); (iv)

Servicing Disclosure (Trustee Ex. 9); (v) Appraisal Disclosure (Trustee Ex. 10); (vi) Equal

Credit Opportunity Act Fair Lending Notice (Trustee Ex. 11); (vii) Consumer's Guide to

Obtaining a Home Mortgage (Trustee Ex. 12);[9] (viii) Uniform Mortgage Loan Cost Worksheet

(Trustee Ex. 13);[10] (ix) the Mortgage Lender Disclosure (Trustee Ex. 14); (x) the Adjustable Rate

Mortgage Loan Program Disclosure (Trustee Ex. 15); (xi) a Mortgage Loan Commitment

---

[7]Ms. Lindsay testified that the March 17, 2004 letter to Ms. Ngampa (Ex. 5) was consistent with New Century's usual practice of sending loan documentation to a borrower in response to receipt of a loan application. (Tr. 125:24 - 126:5 (Lindsay)).

[8]The Loan Information Letter is not dated.

[9]The Consumer's Guide to Obtaining a Home Mortgage has the initials "PRA" handwritten on the bottom of each page, but it is not signed or dated.

[10]The Uniform Mortgage Loan Cost Worksheet is signed and dated by Mr. Augustin, but not by Ms. Ngampa.

4

(Trustee Ex. 16); and (xii) Mortgage Loan Commitment Addendum (Trustee Ex. 17).[11] (*See also* Tr. 91:14 – 103:17 (Augustin)). The Mortgage Loan Commitment notifies the Borrowers that the loan offered to them had an adjustable interest rate. (Trustee Ex. 16).

On April 15, 2004, the Borrowers entered into a mortgage loan transaction in which they borrowed $288,000.00 from New Century (the "Loan"), which was secured by a mortgage lien on real property located in Lowell, Massachusetts (the "Property"). (JPM, ¶54). Samuel Reef, an attorney for Commonwealth Title Insurance Company ("Commonwealth"), came to the Borrowers' residence to close the loan transaction. Mr. Reef was in a hurry and instructed Mr. Augustin and Ms. Ngampa to sign documents without explaining anything to them. (Tr. 73:8 – 73:13; 75:10 – 75:15 (Augustin)). Mr. Augustin admitted that he did not try to read the loan documents at the closing. (JPM, ¶63).

The Loan proceeds were used, in part, to pay in full a mortgage held by Ameriquest Mortgage Company in the amount of $229,621.05, and debts owed to the City of Lowell in the amount of $15,911.00. (JPM, ¶54; Trustee Ex. 29). Further, the Borrowers received $27,017.06 cash at the Loan closing, which Mr. Augustin invested into his business. (*Id.*). No proceeds were used to pay the Danvers Loan, and the mortgage lien held by Danversbank remained the first lien on the Property. (Trustee Ex. 29; Tr. 152:14 – 152:22 (Lindsay)).

At the Loan closing on April 15, 2004, Mr. Augustin and Ms. Ngampa signed the following documents: (i) Uniform Residential Loan Application (Trustee Ex. 19); (ii)

---

[11]Although the documents appear to bear the signature (or initials) of Mr. Augustin and Ms. Ngampa and are dated 3/22/04, the Borrowers testified that they did not sign any documents in connection with the Loan prior to closing on April 15, 2004. ((Tr. 95:3 – 95:21 (Augustine); 103:18 – 105:20 (Augustine); 180:22 – 182:11 (Ngampa)) ) As discussed, *infra.*, any claims asserted in the 2008 proof of claim for untimely disclosures under TILA or RESPA are barred by the applicable statute of limitations.

Addendum to Residential Loan Application (Trustee Ex. 20); (iii) Mortgage (Trustee Ex. 21);

(iv) Adjustable Rate Note (Trustee Ex. 22); (v) Adjustable Rate Rider (Trustee Ex. 23); (vi)

Adjustable Rate Rider Addendum (Trustee Ex. 24); (vii) Prepayment Rider (Trustee Ex. 25);

(viii) 1-4 Family Rider (Assignment of Rents) (Trustee Ex. 26); (ix) Notice of Right to Cancel

(Trustee Ex. 27); (x) Good Faith Estimate – Itemization (Trustee Ex. 28); (xi) Final HUD-1

Settlement Statement (Trustee Ex. 29); (xii) Federal Truth-In-Lending Disclosure Statement

(Trustee Ex. 30);[12] (xiii) Mortgage Lender Disclosure Statement (Trustee Ex. 31); (xiv)

Consumer's Guide to Obtaining a Home Mortgage (Trustee Ex. 32); (xv) Equal Credit

Opportunity Act Notice (Trustee Ex. 33); (xvi) Name Verification Affidavit for Briget Ngampa

(Trustee Ex. 34); (xvii) Uniform Mortgage Loan Cost Worksheet (Trustee Ex. 35); (xviii)

Adjustable Rate Mortgage Loan Program Disclosure (Trustee Ex. 36); (xix) Servicing Disclosure

(Trustee Ex. 37); (xx) Borrower's Certification and Authorization (Trustee Ex. 38); (xxi)

Occupancy Affidavit and Financial Status (Trustee Ex. 39) (collectively, the "Closing

Documents"). (*See also* Tr. 103:24 – 119:21 (Augustin)).

The Uniform Residential Loan Application signed at closing listed Ms. Ngampa's

occupation as "teacher" and her monthly income as $4,000.00. (Trustee Ex. 19). Because the

information about Ms. Ngampa's occupation and income was incorrect, the Borrowers

questioned Mr. Reef about it at the closing, but he told them not to worry and to sign the

documents, which they did. (Tr. 107:10 – 108:3 (Augustin); 177:9 – 178:14 (Ngampa)).

---

[12]Mr. Augustin asserts that he received only one copy of the Federal Truth-In-Lending Disclosure Statement dated April 15, 2004 at the closing. (JPM, ¶67). Because the basement of the Property flooded after April 15, 2004, Mr. Augustin lost many of his records and, therefore, he could not produce many records to the Trustee in response to discovery requests. (*Id.*).

The appraisal used in connection with the Loan, prepared by Beacon Appraisal and requested by Allied, indicated the Property had a value of $320,000.00 as of December 29, 2003. (JPM, ¶65).  Mr. Augustin believed the Property had a value of $300,000 in early to mid-2004. (*Id.*).  Beacon Appraisal is a third-party and was not affiliated with the Debtors. (*Id.*).

After the Loan closed, New Century sold the Loan to an investor.  (Tr. 136:6 – 136:10 (Lindsay)).  Five months after the Loan was sold, New Century also released the servicing rights to the Loan. (Tr. 136:11 – 137:7 (Lindsay)).  At that point, New Century had no further interest in the Loan. (Tr. 137:8 – 137:12 (Lindsay)).

Prior to September 2004, Mr. Augustin was unable to make the payments due under the Danvers Loan.  (JPM, ¶71).  As a result, Danversbank filed a foreclosure action against the Property. (*Id.*).  At about this time, Ms. Ngampa moved to Illinois because of the stress related to Mr. Augustin's failed business operations in Haiti and Danversbank's calls about foreclosing on the Property. (JPM, ¶74).

On September 26, 2005, Mr. Augustin filed an individual chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts.  (JPM, ¶75).  Mr. Augustin was able to make his payments on the New Century Loan and would have continued to do so if Danversbank had not obtained relief from the automatic stay to proceed with foreclosure on the Property. (JPM, ¶72).[13]

---

[13]On March 8, 2006, Mr. Augustin commenced an action against Danversbank, Ameriquest Mortgage, Allied, Samuel Reef, New Century and others in the United States District Court for the District of Massachusetts (the "Massachusetts Action") in response to the foreclosure filed by Danversbank. (JPM, ¶76). The record before me does not indicate the result of the Massachusetts Action.

On or about March 9, 2006, Commonwealth purchased the Danvers Loan and entered into an Assignment of Mortgage from Danversbank. (JPM, ¶77).  On March 29, 2006, Commonwealth agreed to subordinate the Danversbank mortgage lien to New Century's mortgage lien.  (JPM, ¶78).

Mr. Augustin asserts that he rescinded the New Century Loan, as permitted under the Truth-in-Lending Act, within three years of the closing.  The record, however, does not include evidence of when or if a rescission notice was ever served upon New Century.[14]

## C. The Debtors' Bankruptcy

On April 2, 2007, New Century TRS Holdings, Inc. and related entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On July 15, 2008, this Court entered an Order (the "Confirmation Order") confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Original Plan"), which became effective on August 1, 2008 (the "Original Effective Date").  (JPM, ¶6).  Until the Original Effective Date, the Debtors continued in the management and operation of their businesses pursuant to Bankruptcy Code §§ 1107 and 1108.  (JPM, 3).

---

[14]Mr. Augustin talks about a notice of rescission dated September 21, 2006 (JPM, ¶101), but no notice with that date was offered or admitted into evidence.  Augustin Ex. 1 is a copy of an Affidavit of Mr. Augustin, that was dated March 11, 2009 and filed on March 13, 2009 with the Fairfax (Virginia) Land Records.  The Affidavit states that it provides "Actual and Constructive Notice, Rescission of Signature/ Waiver of Benefits And Privileges/ Dissolution of Adhesion Contracts/ Revocation of Power(s) of Attorney as the Relate to New Century Mortgage Loan Account No. 0014488999 Except On Promissory Notes."  (Augustin Ex. 1).  There is nothing in the record to indicate if or when this was served upon New Century.

Pursuant to the terms of the Original Plan, on the Original Effective Date, the New Century

Liquidating Trust Agreement was executed, thereby creating the New Century Liquidating Trust

(the "Trust") and appointing Alan M. Jacobs as Liquidating Trustee (the "Trustee").  (JPM, ¶6).

The Confirmation Order was appealed and, on July 16, 2009, the United States District

Court for the District of Delaware issued a Memorandum Opinion reversing the Confirmation

Order.  (JPM, ¶8).[15]

On September 30, 2009, the Trust filed the Modified Second Amended Joint Chapter 11

Plan of Liquidation (the "Modified Plan"), which was confirmed by Order dated November 20,

2009 (the "Modified Confirmation Order").  (D.I. 9905).  The Modified Plan adopted, ratified

and confirmed the New Century Liquidating Trust Agreement. (JPM, ¶11).   Pursuant to Section

3.3 of the New Century Liquidating Trust Agreement and the Modified Confirmation Order, as

of the Original Effective Date, the Trust reserved the exclusive right to object to the allowance of

any claim, and the Trustee was given the authority and power to file objections regarding the

allowance and disallowance of claims.  (JPM, ¶12).

By Order dated June 28, 2007 (the "Bar Date Order"), this Court established August 31,

2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in the

chapter 11 case (the "Bar Date") (D.I. 1721).  On July 9, 2007, the Debtors' claims and noticing

agent, Xroads Case Management Service LLC (the "Claims Agent"), filed a Declaration of

Service, stating that it mailed a copy of the Notice of Bar Date (the "Bar Date Notice") and a

---

[15] On July 27, 2009, the Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's Memorandum Opinion (the "Status Quo Order") (D.I. 9750).

proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master

Mailing Matrix as set forth on a list maintained by Debtors' counsel." (D.I. 1861).  On August 3,

2007, the Claims Agent filed affidavits of publication stating that it had published the Bar Date

Notice in The Wall Street Journal (National Edition) and the Orange County Register on July 23,

2007.  (D.I. 2148 and D.I. 2149).

### D.  Mr. Augustin's Claims

On or about January 8, 2008, Mr. Augustin filed two proofs of claim against New

Century, claim numbers 3781 and 3759, which were identical.  (JPM, ¶13).  On February 22,

2008, the Debtors filed an objection to claim number 3781, arguing that it should be expunged

since it was duplicative of claim number 3759.  (JPM, ¶14).  Mr. Augustin consented to expunge

claim number 3781 because it was a duplicate claim. (JPM, ¶17).

On March 27, 2008, the Debtors filed the Claim Objection seeking to expunge claim

number 3759 (the "Remaining Claim" or the "Claim"), among others, because those claims were

not reflected in the Debtors' books and records or had insufficient documentation to support

them.  (JPM, ¶15).  The Remaining Claim asserted both an administrative priority claim and a

priority claim under "11 U.S.C. §507(a)(1) Consumer Priority."  On January 21, 2009, the Court

heard argument by counsel for the Trust and Mr. Augustin regarding the priority of the

Remaining Claim.  (JPM, ¶18). On January 29, 2009, the Court entered an Order reclassifying

the Remaining Claim as a general unsecured claim and providing that nothing in the order

precluded Mr. Augustin from asserting any claim of rescission.  (JPM, ¶19).  Mr. Augustin did

not amend the Remaining Claim.  (*Id.*).  The focus of the dispute currently before the Court is the

validity of the Remaining Claim in the amount of $700,264.80, plus punitive damages in an

unknown amount.  (JPM, ¶20).[16]

      After the Evidentiary Hearing concerning the merits of the Remaining Claim, the Trustee

and Mr. Augustin submitted their respective Proposed Findings of Fact and Conclusions of Law.

(D.I. 10345; D.I. 10413).

### Legal Standard for an Objection to a Proof of Claim

      When a claim objection is filed in a bankruptcy case, the burden of proof as to the

validity of the claim "rests on different parties at different times." *In re Allegheny Int'l, Inc.*, 954

F.2d 167, 173 (3d Cir. 1992).

      Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance

with the rules of procedure constitutes *prima facie* evidence of the validity and amount of the

claim. Fed. R. Bankr. P. 3001(f).   A proof of claim that lacks the supporting documentation

required by Rule 3001 does not receive the presumption of *prima facie* validity. Rather, the

claimant maintains the burden of proving his or her claim by a preponderance of the evidence.

*See, e.g., In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008).

      Pursuant to Bankruptcy Code § 502(a), a claim that is properly filed under Rule 3001 and

Bankruptcy Code § 501 is deemed allowed unless a party in interest objects. 11 U.S.C.A. §

502(a). "The objecting party carries the burden of going forward with evidence in support of its

objection which must be of probative force equal to that of the allegations of the creditor's proof

of claim." *Kincaid*, 388 B.R. at 613 citing *Allegheny*, 954 F.2d at 173-74.  If the objecting party

---

[16]After filing the proof of claim, Mr. Augustin prepared a damages calculation, which requested punitive damages in the amount of $21,802,092.26. (JPM, ¶93, Augustin Ex. 9).

succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant to prove the claim's validity by a preponderance of the evidence. *Id. See also In re Umstead*, 490 B.R. 186, 192 (Bankr.E.D.Pa. 2013) (same).

In this case, Mr. Augustin's Claim states that it is a "mortgage fraud claim." (Trustee Ex. 1). Attached to the Claim is a partial copy of the TILA Disclosure Statement for the Loan, a document that retypes a *Washington Post* article about New Century dated May 7, 2007, and entitled "Pressure at Mortgage Firm Led to Mass Approval of Bad Loans," and the Amended Motion to File Late Proof of Post-Petition Consumer Priority Mortgage Fraud Claim ('Administrative') Filed on 12/26/2007 With Amended Proof of Claim (Form B10), which describes Mr. Augustin's claims based on civil conspiracy and other theories. (*Id.*). The Debtors' Claim Objection has rebutted any *prima facie* validity of the claim, so the ultimate burden of persuasion as to the validity of the Claim rests with Mr. Augustin.

## DISCUSSION

### A. Fraud and Civil Conspiracy

Mr. Augustin asserts, generally, that the basis for his claim against New Century is "mortgage fraud." In particular, he asserts that New Century, together with Allied, Commonwealth, Samuel Reef, and Beacon Appraisal conspired to defraud him by, among other things, (i) providing the Borrowers with a mortgage loan with an adjustable interest rate, rather than a fixed interest rate as requested; (ii) misrepresenting Ms. Ngampa's occupation and income on the loan application to allow the Borrowers to qualify for a loan they could not afford; and (iii) providing the Borrowers with a loan in an amount that exceeded the value of the Property.

1. Fraud by New Century

To assert a fraud claim against New Century, Mr. Augustin must show that (1) New Century made a false representation of material fact; (2) with knowledge of its falsity; (3) for the purpose of inducing the Borrowers to act in reliance thereon; (4) the Borrowers relied on the representation; and (5) the Borrowers acted to their detriment. *Smith v. Jenkins*, 718 F.Supp.2d 155, 166 (D.Mass. 2010).[17]  Mr. Augustin's claim does not specify what misrepresentation was made by New Century to the Borrowers. Although Mr. Augustin generally complains that he received a Loan with an adjustable rate of interest, he does not allege that New Century misrepresented the terms of the Loan to him. Rather, the evidence demonstrates that all of the documents from New Century plainly stated that the Borrowers were receiving an adjustable rate of interest. *See, e.g.,* Trustee Ex. 7 (TILA Disclosure Statement, stating "This is a variable-rate Loan. Disclosures were provided to you earlier."); Trustee Ex. 15 (LIBOR 6-Month ARM with Two Year Rate Lock Adjustable Rate Mortgage Loan Program Disclosure, stating, among other things, "After the first 2 years, your interest rate can change every six months."); Trustee Ex. 16

---

[17]There is no choice of law provision in the Adjustable Rate Note or Mortgage, and neither party raises a choice of law issue. Both parties cite to Massachusetts law in connection with the state law claims. This Court must apply the Delaware choice of law rules to determine whether Massachusetts law applies here. *Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 359 (Bankr.D.Del. 2006) citing *In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005) (applying the choice of law rules of the state in which the bankruptcy court sits). The Delaware Supreme Court has adopted the "most significant relationship test," set forth in the Restatement (Second) of Conflict of Law §145(1) for analyzing questions related to tort claims. *In re W.R. Grace & Co.*, 418 B.R. 511, 518 (D.Del. 2009). *See also Shandler v. DLJ Merchant Banking, Inc.*, No. 4797-VCS, 2010 WL 2929654, *17 n. 149 (Del. Ch. July 26, 2010). Contacts considered in applying the most significant relationship test include: (i) the place where the injury occurred, (ii) the place where the conduct causing the injury occurred, (iii) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (iv) the place where the relationship, if any, between the parties is centered. *W.R. Grace*, 418 B.R. at 519. This dispute centers around a loan made to the Borrowers when they resided in Massachusetts, by New Century, a California corporation, that was secured by a mortgage against real property located in Massachusetts. I conclude that applying Massachusetts law is appropriate here.

(Mortgage Loan Commitment, which has a check in the box next to "Adjustable Rate Mortgage"); Trustee Ex. 22 (Adjustable Rate Note); and Trustee Ex. 23 (Adjustable Rate Rider, stating "The interest rate I will pay may change on the first day of May 2006 and on that day every 6th month thereafter.").

At the hearing, Mr. Augustin argued generally that he was defrauded because no one explained the loan documents to him. However, "[a] person who executes a document will ordinarily be held to its terms whether or not he or she has read it and whether or not he or she claims to have understood its terms." *Smith*, 718 F.Supp.2d at 167 citing *Spritz v. Lishner*, 355 Mass. 162, 164, 243 N.E.2d 163 (1969). Mr. Augustin cannot state a claim for fraud based on the fact that he failed to read the loan documents that he signed, particularly in light of his advanced education and his experience obtaining prior loans in connection with the Property and his business.

Mr. Augustin also argues that New Century engaged in fraud by violating its own underwriting standards and providing him with a loan that he could not afford and that exceeded the value of the Property. He argues that New Century failed to verify Ms. Ngampa's occupation and earnings, which were incorrectly stated on the loan application.[18] Ms. Lindsay testified that

---

[18]New Century argued that the Borrowers' claims related to the false statements in the loan application about Ms. Ngampa's occupation and earnings should be barred by the defense of unclean hands. "The unclean hands doctrine is a 'self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper [has] been the behavior of the defendant.'" *Green v. Mullarkey (In re Mullarkey)*, 410 B.R. 338, 354 (Bankr.D.Mass. 2009) quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Both Mr. Augustin and Ms. Ngampa testified that they noticed the incorrect information in the loan application and that they pointed out the misstatement to Mr. Reef at the closing, but Mr. Reef told them not to worry about it and urged them to sign the Loan Documents. (Tr. 75:1 – 75:15 (Augustin); Tr. 178:5 – 178:14 (Ngampa)). The Borrowers testified that they signed the documents in reliance on statements by Mr. Reef and Allied. Based on this record, I cannot conclude that the defense of unclean hands should prevent consideration of their claims.

the Borrowers' Loan was submitted as a "stated income loan," which is a type of loan with a higher interest rate because no supporting documentation is provided to the lender. (Tr. 126:14 – 129:2 (Lindsay)). New Century's underwriting guidelines required a verbal verification of the applicant's employment status with a particular employer, which, according to the Telephone Employment Verification – Primary Job(s) form in the Borrowers' loan documentation file, was completed on April 14, 2004. (Tr. 129:3 – 130:22 (Lindsay); Trustee Ex. 47). Ms. Ngampa testified that she worked as a substitute teacher in 2003 at the school listed on her loan application. (Tr. 177:9 – 177:12 (Ngampa)). Mr. Augustin submitted a 2003 Form W-2 Wage and Tax Statement and a 2003 Tax History Report showing that Ms. Ngampa's earnings were not consistent with the monthly income set forth on the loan application. (Augustin Ex. 6). However, there is no indication that these documents were submitted to New Century in connection with the Loan. The record does not demonstrate that New Century failed to follow its underwriting guidelines or engaged in any fraud.

Mr. Augustin also argues that New Century failed to use the Loan proceeds to pay off the Danvers Loan at closing, which resulted in the Property being "over-financed." The loan documentation shows that Mr. Augustin did not disclose the Danvers Loan on his loan application (Trustee Ex. 19; Tr. 108:6 – 110:6 (Augustin)). Rather, the failure to remove the lien securing the Danvers Loan from the Property at closing arguably harmed *New Century,* because it prevented New Century from acquiring a first lien position against the Property to secure the Loan. New Century obtained title insurance from Commonwealth and, when Danversbank started foreclosure proceedings against the Property for non-payment, Commonwealth purchased the Danvers Loan and obtained an Assignment of Mortgage from Danversbank. (JPM, ¶77, Tr. 152:15 – 154:11 (Lindsay)). Commonwealth agreed to subordinate the Danversbank

mortgage lien to New Century's mortgage lien. (JPM, ¶78). These facts do not support any claim by the Borrowers against New Century for fraud.

2. Civil Conspiracy

Mr. Augustin alleges that New Century, together with Allied, Commonwealth, and Mr. Reef, engaged in a civil conspiracy. Massachusetts recognizes two types of civil conspiracy: the first requires proof of coercion, and the second requires proof of a common plan to commit a tortious act. *Smith*, 718 F.Supp.2d at 171 citing *Kurker v. Hill*, 44 Mass.App.Ct. 184, 188, 689 N.E.2d 833 (1998). The *Smith* Court further wrote:

> Under the first type of conspiracy, a plaintiff must allege that the defendant and others combined to have a special coercive power that they did not possess individually. *Aetna Cas. Sur. Co. v. P&B Autobody,* 43 F.3d 1546, 1563 (1st Cir. 1994). To state a claim for the second type of conspiracy, the Plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortuous act in furtherance of the agreement." *Id.* at 1564.

*Smith*, 718 F.Supp.2d at 171.

It is unclear from the record whether Mr. Augustin is alleging the first or second type of civil conspiracy. The first type of conspiracy is a "rare" and "very limited" cause of action. *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F.Supp.2d 236, 244 (D.Mass. 1999). The record does not demonstrate that New Century and the others held any "peculiar power of coercion" over Mr. Augustin which caused him to agree to the Loan.

More likely, Mr. Augustin is asserting that New Century and the others acted jointly to commit a wrongful act that harmed him. "Key to this cause of action is a defendant's knowledge that such assistance is contributing to a common tortious plan." *Koufos v. U.S. Bank, N.A.*, 939 F.Supp.2d 40, 51 (D.Mass. 2013) quoting *Kurker v. Hill*, 44 Mass.App.Ct. 184, 189, 689 N.E.2d 833 (1998). The record before me does not establish New Century's knowledge of any of the

16

wrongful acts described by Mr. Augustin, *i.e.,* listing false information on the loan application,

failing to obtain a loan on terms requested by Mr. Augustin, failing to explain the loan

documents to Mr. Augustin, or failing to remove the Danversbank lien against the Property.

Mr. Augustin has not met his burden of proving a claim for civil conspiracy against New

Century.

**B.  Whether New Century is liable for the wrongful acts of third parties**

Mr. Augustin also seeks to hold New Century liable for the wrongful actions of Allied,

Commonwealth, Mr. Reef, and Beacon Appraisal, asserting that those entities and individuals

acted as agents on behalf of New Century in obtaining the Loan for the Borrowers.  Under

Massachusetts law, "[a]n agency relationship is created when there is mutual consent, express or

implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the

principal's control." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 742, 729 N.E.2d

1113 (Mass. 2000).  *See also Motorsport Eng'g, Inc. v. Maserati SPA,* 316 F.3d 26, 29-30 (1st

Cir. 2002) ("[a]n agent is simply someone who is authorized by the principal to act on the

principal's behalf and bind the principal as if the latter were there himself.").

A "principal has liability for the agent's acts toward third parties only if the agent was

acting with the actual or apparent authority of the principal in that transaction." *Theos,* 431

Mass. at 743.  The *Theos* Court further wrote:

> Actual authority can be express or implied. Actual authority results when
> the principal explicitly manifests consent, either through words or
> conduct, that the agent should act on behalf of the principal.  Implied
> authority is actual authority that evolves by implication from the conduct
> of the parties.

*Id.,* 431 Mass. at 743 n. 13 (citations omitted).

Ms. Lindsay testified that the Third Parties were not agents of New Century. (Tr. 123:12 –
123:19; 133:21 – 134:23; 150:18 – 151:4 (Lindsay)).[19] The record does not otherwise reveal that
Allied, Commonwealth, Mr. Reef, or Beacon Appraisal (jointly, the "Third Parties") had express
authority to act as agents of New Century.

Moreover, the record does not show that the parties' conduct *implied* that the Third Parties
had actual authority to act as New Century's agents.  In *Morilus v. Countrywide Home Loans,
Inc.,* 651 F. Supp. 2d 292 (E.D. Pa. 2008), the borrowers argued that the lender and broker had
an actual agency relationship because the lender (i) established standard procedures for the
broker to follow to do business with the lender; (ii) monitored the broker's work, and (iii)
decided to terminate the broker for failing to follow procedures.  The *Morilus* Court disagreed,
explaining that "[w]hile control is a key factor in determining whether an agency was intended, it
must be of such a high degree that the purported agent is deemed to have had almost no
independence." *Id.* at 300.

Ms. Lindsay testified that this was a wholesale loan transaction, in which the broker interacts
with the borrower to obtain the information needed to apply for a loan and then submits that
application to various lenders.  (Tr. 122:19 – 123:3 (Lindsay)).  Ms. Lindsay did not know
whether Allied submitted Mr. Augustin's and Ms. Ngampa's loan application to more than one
lender. (*Id.*). There is no evidence that New Century exercised control over Allied's preparation
of the loan application.

---

[19] The parties agreed that Beacon Appraisal was a third-party that was not affiliated with New Century.  (JPM, ¶65).

Similarly, there is nothing in the record showing that New Century exercised control over Commonwealth or Mr. Reef.    Instead, New Century hired Commonwealth to provide title insurance and insure its lien position against the Property.    (Tr. 137:22 – 138:14 (Lindsay)). Commonwealth, not New Century, hired Mr. Reef.  (Tr. 150:18 – 151:4 (Lindsay)). The record demonstrates that, rather than controlling or directing their wrongful (or negligent) acts, New Century was harmed by them, until Commonwealth corrected the error.

Apparent authority may be "created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Theos*, 431 Mass. at 745 quoting Restatement (Second) of Agency, §27 (1958).  Mr. Augustin has not demonstrated any particular words or conduct of New Century that could cause Mr. Augustin to "reasonably interpret" that the Third Parties acted as agents of New Century.

There is no evidence in this record to support a finding that the Third Parties had actual authority, either express or implied, or apparent authority to act as agents of New Century.  I cannot conclude that New Century should be liable for the acts of the Third Parties.

## C. **Breach of Fiduciary Duty**

Mr. Augustin argues that New Century breached a fiduciary duty owed to himself and Ms. Ngampa.  Under Massachusetts law, the relationship between a lender and a borrower, without more, does not establish a fiduciary relationship. *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102  (1st Cir. 2009).  The *FAMM Steel* Court further explains:

> A fiduciary relationship may arise in this [lender/borrower] context where the borrower reposes its trust and confidence in the lender and the lender knows of and accepts the borrower's trust. . . . "The plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature.  The catalyst in

such a change is the defendant's knowledge of the plaintiff's reliance upon him."

*Id.* quoting *Broomfield v. Kosow,* 349 Mass. 749, 212 N.E.2d 556, 560 (1965) (other citations omitted).   In *FAMM Steel*, the court held that no fiduciary relationship arose in an arms-length, lender-borrower relationship, deciding that "even if [the borrower] reposed its trust in [the lender], plaintiffs provided no evidence that [the lender] was aware of or accepted this trust, a necessary condition for finding a fiduciary relationship." *Id.* The same is true here. Even if the Borrowers reposed a special trust in New Century, neither of them communicated directly with New Century and, therefore, no fiduciary relationship could have arisen.

### D.   Truth in Lending Act ("TILA")

Mr. Augustin argues that New Century violated the Truth in Lending Act ("TILA") by failing to disclose the "true lender" on his loan, failing to provide him with certain disclosures prior to the loan closing, and failing to provide him with two copies of the notice of his right to rescind the loan.

TILA was enacted in 1968 and requires clear disclosure of all costs as well as the key terms of lending arrangements to inform consumers of the true cost of credit. 15 U.S.C.A. § 1601 *et seq.* (2014). TILA is implemented by "Regulation Z." 12 C.F.R. § 226 et seq. (2014). Section 1638(a) of TILA requires creditors to disclose specific items in certain consumer credit transactions, and section 1638(b) sets forth the form and timing requirements of those disclosures.[20]  15 U.S.C. §1638.

---

[20]Section 1638(a) requires disclosure of at least fifteen items, including, among other requirements: (1) identity of the creditor required to make the disclosure; (2) the "amount financed" (calculated pursuant to the instructions in the statute); (3) the "finance charge;" (4) the finance charge expressed as an "annual percentage rate;" (5) the "total of
(cont. on next page)

"Claims under TILA have a one-year statute of limitations that begins to run from the date of the violation." *DaSilva v. U.S. Bank, N.A.,* 885 F.Supp.2d 500, (D.Mass. 2012).[21]   The alleged disclosure violations occurred on or about the loan closing date of April 15, 2004, so the deadline for TILA claims has long since passed.

Mr. Augustin argues that he provided timely notice to New Century to rescind the Loan. TILA provides a borrower with a limited right to rescind loan transactions that are secured by a lien against the borrower's principal dwelling.[22] *Mantz v. Wells Fargo Bank*, 2011 WL 196915, *3 (D.Mass. Jan. 19, 2011).[23]  The record indicates that Mr. Augustin and Ms. Ngampa received the appropriate "Notice of Right to Cancel" forms (Trustee Ex. 27).  However, even assuming that the forms were not timely provided to them, the Borrowers' right to rescind the Loan

---

payments" (*i.e.,* the amount financed and the finance charge); and (6) the number, amount and due dates for payments.
Regulation Z also provides, in relevant part, that "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. §226.17(a)(1).  It also requires the disclosures to be made "before consummation of the transaction." 12 C.F.R. §226.17(b).

[21]15 U.S.C. §1640(e) provides in pertinent part that "any action under this section may be brought in any United States district court, or in any court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ."

[22]Because New Century transferred its interest in the Loan, this Court does not have jurisdiction to rescind the Loan. *See  Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 134-35 (1995) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . .  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."); and *Scott v. Aegis Mortgage Corp. (In re Aegis Mortgage Corp.)*, 2008 WL 2150120, *5 (Bankr.D.Del. May 22, 2008) (A declaration as to the rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a party to it.).  The only issue before me is whether Mr. Augustin is entitled to damages if New Century failed to respond to a timely and properly served notice of rescission.

[23]15 U.S.C. §1635(a) provides in pertinent part that such a borrower "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section . . . whichever is later . . . ."

transaction expired three years after the loan closing. *Id.* "This three-year period is a rigid deadline." *Id.* citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.").

The record before me does not provide sufficient evidence that Mr. Augustin timely served a rescission notice upon New Century. Although Mr. Augustin refers to a rescission letter dated September 21, 2006, the only document in the record regarding rescission is the "Rescission of Signatures/ Waiver of Benefits and Privileges/ Dissolution of Adhesion Contracts/ Revocation of Power(s) of Attorney as They Relate to new Century Mortgage Loan Account No. 0014488999 Except On Promissory Notes," which was signed by Mr. Augustin and filed on March 13, 2009, with the Fairfax (Virginia) Land Records. (Augustin Ex. 1). Even assuming, without deciding, that this notice was served upon New Century on March 13, 2009, the date of service and filing is well outside the three-year rescission deadline, which ended on or about April 15, 2007.

### E. Equal Credit Opportunity Act ("ECOA")

Mr. Augustin claims that New Century violated the Equal Credit Opportunity Act, 15 U.S.C. §1601 *et seq.* ECOA requires a lender to notify an applicant of its action on a completed loan application. 15 U.S.C. §1691(d)(1); 12 C.F.R. §202.9(a). To prevail on his ECOA claim, Mr. Augustin must prove that (1) New Century is a creditor; (2) the Borrowers applied for a loan with New Century; (3) New Century took adverse action with respect to the Borrowers' loan application; and (4) New Century failed to provide the Borrowers with an ECOA-compliant notice of its adverse action. *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation,* 2011 WL 2637222, *6 (D.Mass July 6, 2011). Ms. Lindsay

testified that New Century notified the Borrowers that their first loan application was denied

within thirty days after taking adverse action.  (Tr. 158:14 – 158:19 (Lindsay)).  12 C.F.R.

§202.9(a)(1).  The Statement of Credit Denial, Termination or Change sent by New Century to

the Borrowers provided a reason for the denial and advised them of their right to obtain

additional information.  (Augustin Ex. 5).  New Century complied with ECOA in denying the

Borrowers' first loan application.

### F.  Real Estate Settlement Procedures Act ("RESPA")

RESPA was enacted to ensure that consumers receive information on the "nature and

costs of the settlement process" and to protect consumers from unreasonably costly settlements

by eliminating kickbacks and referral fees. *See* 12 U.S.C.A. § 2601.  "RESPA requires that

borrowers receive certain disclosures explaining the costs associated with settlement and

describing lender services and escrow account practices."  *Nelson v. JP Morgan Chase Bank,*

*N.A.,* 707 F.Supp.2d 309, 315 (E.D.N.Y. 2009) citing (in part) 12 U.S.C. §§ 2603, 2604; *see also*

24 C.F.R. § 3500.7.  "RESPA further requires that lenders and/or brokers provide a Good Faith

Estimate ("GFE") of settlement costs and fees in connection with mortgage loans and home

equity credit lines."  *Nelson,* 707 F.Supp.2d at 315-16.  *See* 12 U.S.C.A. §§ 2603, 2604; 24

C.F.R. §§ 3500.7 (Good Faith Estimate), 3500.8 (HUD-1 Settlement Statements).[24]

In the JPM, Mr. Augustin asserts that New Century violated RESPA, but fails to state or

prove sufficient facts to support a claim under RESPA.  Further, even assuming - - without

deciding - - that New Century's disclosures were improper under § 2603 [uniform settlement

statement] or § 2604 [home buying information booklets] of RESPA, the decisional law is clear

---

[24] 24 C.F.R. part 3500 (Regulation X) is the implementing regulation for RESPA.

that there is no private right of action for violations of RESPA's disclosure provisions.  *See Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997), *cert. denied,* 521 U.S. 1127, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997), *reh'g denied,* 521 U.S. 1145, 118 S.Ct. 25, 138 L.Ed.2d 1055 (1997) (explaining that "[t]he present § 2604(c) replaced the prior § 2605, which had explicitly provided an action for damages for its violation . . . That Congress eliminated the provision when it amended the statute strongly suggests Congress intended that there no longer be a private damages remedy for violation of § 2604(c).").  *See also Nelson*, 707 F. Supp. 2d at 317 ("RESPA itself provides no private right of action for technical violations of its disclosure mandates.").

### G.  Massachusetts Predatory Home Loan Practices Act  (Mass. Gen. Laws ch. 183C)

In the JPM, Mr. Augustin also asserts that New Century violated the Massachusetts Predatory Home Loan Practices Act.  Mass. Gen. Laws ch. 183C.  However, that Act became effective on November 7, 2004, which is seven months after the Loan closed.  Mr. Augustin cites nothing upon which the Court can rely to conclude that the statute was meant to be applied retroactively.

### H.  Reverse Redlining and Flipping

In the JPM, Mr. Augustin asserts that New Century engaged in "flipping" or "reverse redlining" with respect to the Loan, and that New Century is liable to Mr. Augustin as a result of this practice.  Mr. Augustin does not allege any particular facts or legal basis in support of these claims.  A New Jersey Court explained:

> Redlining is the practice of denying the extension of credit to specific geographic areas due to the income, race or ethnicity of its residents.  . . . The term "redlining" is derived from the actual practice of drawing a red line around designated areas in which

> credit is to be denied. . . . Reverse redlining is the practice of extending credit on unfair terms to those same communities.

*Assoc. Home Equity Serv., Inc. v. Troup*, 343 N.J.Super. 254, 268, 778 A.2d 529, 537 (N.J. Super. Ct. App. Div. 2001) (citations and internal quotations marks omitted).   Mr. Augustin provides no explanation  for his claim of "flipping."[25]  On the record before me, Mr. Augustin has failed to demonstrate any factual basis to support either of these claims.

## CONCLUSION

For the reasons set forth above, the Trustee's Claim Objection will be sustained and Mr. Augustin's claim will be disallowed and expunged.   An appropriate Order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 10, 2014

---

[25]The Court supposes that Mr. Augustin contends that New Century made the Loan improperly for the purpose of immediate resale.