# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC,**: | | |
| *et al.*[1] | : | Case No. 07-10416 (BLS) |
| Debtors | : | (D.I. 10743, 10744) |

| | | |
|---|---|---|
| | : | |
| **CHRISTINE KONAR,** | : | Adv. Pro. No. 12-50187 (KJC) |
| | : | (Re: D.I. 5, 24) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC,**: | | |
| *et al.* | : | |
| Defendants | : | |

## MEMORANDUM [2]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court in the main bankruptcy case are two motions filed, *pro se*, by Christine

Konar: (i) a motion to consider proof of claim timely filed (D.I. 10743); and (ii) a motion to

---

[1]The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (D.I. 52). New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007. The jointly administered debtors and New Century Warehouse Corporation are referred to jointly herein as the "Debtors."

By Order dated January 31, 2014 (D.I. 11340), this bankruptcy case was reassigned to Judge Brendan Linehan Shannon, although I retained certain matters under advisement (including the motions and the adversary proceeding filed by Ms. Konar) for decision.

[2]This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. §1334 and §157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A) and (B).

amend proof of claim (D.I. 10744) (together, the "Konar Claim Motion").[3]   The New Century

Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the Liquidating Trustee (the

"Trustee"), filed an objection to the Konar Claim Motion (D.I. 10845).

On or about February 23, 2012, Ms. Konar also filed an adversary complaint against the

Debtors, alleging claims of fraud, fraudulent transfer, unjust enrichment, and violations of the

Truth-in-Lending Act, the Real Estate Settlement Procedures Act, and the Fair Credit Reporting

Act (the "Konar Adversary Claims").   The Trustee filed a motion to dismiss the adversary

proceeding (Adv. D.I. 5) on the grounds that the claims are barred, since the complaint alleges

that the Debtors' misconduct occurred prior to the bankruptcy filing, and Ms. Konar failed to file

a timely claim in the Debtors' bankruptcy case.[4]   Ms. Konar filed an objection to the Trustee's

motion to dismiss (Adv. D.I. 7) and a motion to dismiss the Trustee's motion to dismiss (Adv.

D.I. 8).

On March 11, 2014, Ms. Konar filed the "Motion for Supplemental New Evidence

Pleading"(Adv. D.I. 24) (the "New Evidence Motion").   Although the New Evidence Motion was

filed in the adversary proceeding, it appears to request the Court's consideration of additional

evidence in relation to the Konar Claim Motion.   The Trustee filed an objection to the New

Evidence Motion (Adv. D.I. 25).

---

[3]Ms. Konar's motion to amend the proof of claim does not increase the amount of the claim, but sets forth further legal argument in support of her request for allowance of the late claim filing. Therefore, the two motions will be considered together. Ms. Konar also sent a letter to the Court dated February 16, 2014 (D.I. 11342), which argues for allowance of filing late proofs of claim in the New Century bankruptcy case. The letter, in its tone, is a plea for a favorable decision, and largely repeats arguments made at the hearing on the Konar Claim Motion.

[4]The disposition of the adversary proceeding was held in abeyance pending a decision on the timeliness of the proof of claim.

For the reasons set forth below, the Konar Claim Motion and the New Evidence Motion
will be denied. The Trustee's motion to dismiss the adversary complaint will be granted.

## FACTS

(1)    The Prepetition Loan Between the Debtors and Ms. Konar

On or about February 27, 2007, Ms. Konar received a loan from Debtor Home123
Corporation in the original principal amount of $117,600, secured by a lien against her real
property located in Wilmington, North Carolina (the "Konar Loan") (Tr. 143:2 - 143:10).[5] Based
upon a review of the Debtors' books and records,[6] the Trustee determined that the Konar Loan
was sold to Credit Suisse First Boston Mortgage Capital LLC ("Credit Suisse") pursuant to the
Amended and Restated Master Repurchase Agreement dated January 31, 2007, between Credit
Suisse, as buyer, and the Debtors, as sellers (the "Repo Agreement").[7] (Tr. 143:2 - 144:11,
Trustee Ex. 7).  In March 2007, the Debtors defaulted under the Repo Agreement and Credit
Suisse exercised its rights by, among other things, notifying the Debtors' bank to freeze certain
accounts and seizing mortgage loans that were part of Credit Suisse's collateral, including the

---

[5]Citations to the transcript of the evidentiary hearing held on July 12, 2012 are cited herein as
"Tr." together with reference to the appropriate page and line numbers.

[6]The Trustee is the custodian for the Debtors' books and records.  (Tr. 142:19- 142:23).

[7]The Third Circuit described the nature of repurchase agreements in *Bevill, Bresler & Schulman
Asset Mgmt. Corp. v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.),*
878 F.2d 742, 743 (3d Cir. 1989) as follows:

> A standard repurchase agreement, commonly called a "repo," consists of a two-part
> transaction. The first part is the transfer of specified securities by one party, the dealer, to
> another party, the purchaser, in exchange for cash. The second part consists of a
> contemporaneous agreement by the dealer to repurchase the securities at the original price,
> plus an agreed upon additional amount on a specified future date.

*Id.  See also Calyon N.Y. Branch v. Am. Home Mortg. Corp. (In re Am. Home Mortg., Inc.),* 379 B.R.
503, 511-515 (Bankr.D.Del. 2008) (describing repurchase agreements).

3

Konar Mortgage Loan. (Tr. 145:24 - 149:13, Trustee Ex. 47, 48). After Credit Suisse took

ownership of the Konar Loan, it caused servicing of the Konar Loan to be transferred to Select

Portfolio Servicing ("SPS") on April 2, 2007. (Tr. 149:8 - 151:12, Trustee Ex. 49). Since the

seizure of the loan and the transfer of the servicing rights, the Debtors have not had any interest

in the Konar Loan. (Tr. 151:13 - 151:19).

(2)    The Debtors' Bankruptcy Case

On April 2, 2007, the Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code. On June 8, 2007, the Debtors filed a motion pursuant to Fed.R.Bankr.P. 2002,

3003(c)(3) and 9007 asking the Court to fix the time within which proofs of claim may be filed

(the "Debtors' Bar Date Motion") (D.I. 1173). After a hearing on the Debtors' Bar Date Motion,

this Court entered an Order dated June 28, 2007 (the "Bar Date Order") establishing August 31,

2007 at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing proofs of claim in this

chapter 11 case (the "Bar Date") (D.I. 1721). On July 9, 2007, the Debtors' claims and noticing

agent, Xroads Case Management Service LLC (the "Claims Agent"), filed a Declaration of

Service, stating that it mailed a copy of the *Notice of Bar Date* (the "Bar Date Notice") and a

proof of claim form substantially similar to Official Form No. 10 to "parties listed on the Master

Mailing Matrix as set forth on a list maintained by Debtors' counsel." (D.I. 1861). The Bar Date

Order provided that "[t]he Debtors shall cause the Publication Notice to be published once in the

national edition of *The Wall Street Journal* and any such other local publications as the Debtors

deem appropriate no less than 30 days prior to the General Bar Date." (Bar Date Order, ¶18).

On August 3, 2007, the Claims Agent filed affidavits of publication stating that it had published

the Bar Date Notice in the *Wall Street Journal* (National Edition) and the *Orange County*

*Register* on July 23, 2007. (D.I. 2148 and D.I. 2149).

On November 20, 2009, the Court entered an Order confirming the Modified Second

Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).[8]  The

Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement,

dated as of August 1, 2008, which created the Trust and appointed the Trustee.

(3)     The Konar Proof of Claim

On or about February 13, 2012, Ms. Konar filed a proof of claim in the Debtors'

bankruptcy case (claim number 4144) asserting a priority claim in the amount of $1.25 million.

The Konar Claim Motion states that the claim is based upon: (a) willful and malicious injury; (b)

injunctive relief; (c) "recovery of money Fraudulent Transfer and conveyance;" (d) recovery of

money and property; and (e) any and all relief the court deems necessary and proper.  (D.I.

10744, p.2). After discovery, limited to the issue of whether the late-filed proof of claim should

be considered timely filed, an evidentiary hearing was held at which Ms. Konar appeared and

presented evidence and legal argument in support of the Konar Claim Motion, and cross-

examined the Trustee's witnesses.

---

[8]This Court entered an Order Confirming the Second Amended Joint Chapter 11 Plan of
Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23,
2008 (the "Confirmation Order") on July 15, 2008 (D.I. 8596), which became effective on August 1,
2008. An appeal was taken and, on July 16, 2009, the United States District Court for the District of
Delaware issued a Memorandum Opinion reversing the Confirmation Order.  On July 27, 2009, the
Bankruptcy Court entered the Order Granting Motion of the Trustee for an Order Preserving the Status
Quo Including Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole
Officer and Director of the Debtors, Pending Entry of a Final Order Consistent with the District Court's
Memorandum Opinion (the "Status Quo Order") (D.I. 9750). On September 30, 2009, the New Century
Liquidating Trust filed the Modified Plan.

## DISCUSSION

(1)    <u>The Konar Claim Motion: Excusable Neglect Analysis</u>

Ms. Konar filed her proof of claim in the Debtors' bankruptcy approximately four and a

half years after the proof of claim Bar Date. Ms. Konar argues that the tardy filing of her proof of

claim was due to excusable neglect. "Even when notice satisfies constitutional requirements, a

creditor who does not receive actual notice - - or who receives it but for some reason does not

timely act upon it - - may seek leave to file a late claim based on 'excusable neglect.'" *In re U.S.*

*Airways, Inc.*, 2005 WL 3676186, *6 (Bankr. E.D.Va. Nov. 21, 2005).  Bankruptcy Rule

9006(b)(1) provides in relevant part:

> [W]hen an act is required or allowed to be done at or within a specified period by
> these rules or by a notice given thereunder or by order of court, the court for cause
> shown may at any time in its discretion (1) with or without motion or notice order the
> period enlarged if the request therefor is made before the expiration of the period
> originally prescribed or as extended by a previous order, or (2) on motion made after
> the expiration of the specified period permit the act to be done where the failure to
> act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1).  The burden of proving excusable neglect lies with the late-claimant.

*Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) ("*Chemetron II*").

The United States Supreme Court articulated the now well-known excusable neglect

standard in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct.

1489, 123 L.Ed.2d 74 (1993). When deciding whether a party's neglect of a deadline was

"excusable," the *Pioneer* Court held that the determination was "an equitable one, taking account

of all relevant circumstances surrounding the party's omission." *Id.* at 395. The *Pioneer* Court

then listed four factors for consideration: (i) the danger of prejudice to the debtor; (ii) the length

of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay,

including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Id.* "All factors must be considered and balanced; no one factor trumps the others." *Hefta v. Off'l Comm. Of Unsecured Creditors (In re American Classic Voyages Co.),* 405 F.3d 127, 133 (3d Cir. 2005) citing *George Harms Constr. Co., Inc. v. Chao,* 371 F.3d 156, 164 (3d Cir. 2004).

    (A)   <u>Prejudice</u>

    The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence. *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.),* 188 F.3d 116, 127 (3d Cir. 1999). When addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether allowance of the claim would open the floodgates to other late claims. *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)* No. 04-390 (GMS), 2004 WL 2283599 at *4 (D.Del. Oct. 4, 2004) *citing O'Brien Envtl.,* 188 F.3d at 126-28.

    In her motion, Ms. Konar argues that allowing her late-filed claim will not prejudice the estate because the Trustee is still in the process of resolving claims and has not made distributions to creditors. The record does not support her argument. At the hearing, the Trustee testified that he had already made two distributions to creditors. (Tr. 138:7 - 138:12). In support

of her argument, Ms. Konar cites *In re FLYi, Inc.*, No. 05-20011, 2008 WL 170555, *4 (Bankr. D.Del. Jan. 16, 2008), and *In re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr.D.Del. 2006), as examples of cases in which the courts allowed late-filed claims due, in part, to finding a lack of prejudice to the debtors. However, the facts of those cases are markedly different than those before me. In *Flyi*, the Court found no prejudice to the debtor from a claim asserted 18 months after the bar date because the claimant was asserting only a new legal basis for an already timely-filed claim (the claim amount did not change), and the debtor had been engaged in ongoing litigation with the claimant. *Flyi*, 2008 WL 170555, *4. In *Garden Ridge*, the Court determined that allowing a claim filed only one week after the bar date would not prejudice the debtor, when the debtor had scheduled a claim for the claimant, and the court found that allowing the late claim was unlikely to open a floodgate to additional late-claims. *Garden Ridge,* 348 B.R. at 646.

In this case, the Trustee argues, persuasively, that allowing untimely claims, such as Ms. Konar's, will cause prejudice to the Trust and other creditors. The Trustee testified without contradiction that the Debtors' books and records did not show any debt owed to Ms. Konar or that any correspondence or complaint had been received from Ms. Konar notifying the Debtors of a potential claim. (Tr. 151:25 - 153:18). *Cf. O'Brien Envtl*, 188 F.3d at 128 (finding that there was no question that the debtors were aware of the claim, which had been scheduled and had been discussed by the parties prior to the plan's effective date), *Pro-Tec,* 2004 WL 2283599 (finding no surprise when the debtor had listed claimant on its schedules), *Garden Ridge,* 348 B.R. at 646 (same). Nothing in this record supports a finding that the Debtors anticipated - - or should have anticipated - - Ms. Konar's $1.25 million claim.

Because this is a liquidating chapter 11 case, there is no possibility of prejudice to the

8

Debtors' "reorganization," but disruption to the Trustee's efforts to complete distributions under

the Modified Plan has already occurred. (Tr. 155:16 - 156:14).

Earlier in the Debtors' bankruptcy case, I noted that allowance of late-filed claims might

open the floodgates to filings of similar claims:

> As the Court is already aware from this and other similar matters now before it in the
> New Century case, allowance of late-filed claims in this case unquestionably will
> open a floodgate to similar claims by other borrowers. In fact, as evidenced by the
> number of pending objections to "late claims" and motions to allow "late claims,"
> the flow has already begun.

*In re New Century TRS Holdings, Inc.,* 465 B.R. 38, (Bankr.D.Del. 2012). At the evidentiary

hearing, the Trustee testified that the continuous filing of late claims prejudices the Trust by

adding administrative costs and causing significant delay to wind-up the estate. (Tr. 155:16 -

156:1). Such prejudice was discussed by the *U.S. Airways* Court:

> The establishment and enforcement of a bar date for filing claims "furthers
> the policy of finality designed to protect the interests of a debtor and his diligent
> creditors and the expeditious administration of the bankruptcy case." *In re Peters,* 90
> B.R. 588, 597 (Bankr. N.D.N.Y. 1988). Furthermore, "to allow the debtor to be
> continually pursued by his creditors ad infinitum . . . would be to sanction a form of
> slow torture contrary to the spirit and purposes of the bankruptcy laws." *Id.* (quoting
> *Maine Bonding & Casualty Co. v. Grant (In re Grant),* 45 B.R. 262, 264
> (Bankr.D.Me.1984)).

> In the instant case, the debtor would be prejudiced by allowing the [claimants]
> to assert their claim six months after the bar date had passed, particularly in a case
> as large as this. As noted above, U.S. Airways provided mailed notice to all known
> creditors and notice by publication to all "unknown" claimants of the applicable bar
> date. Following passage of the bar date, the debtor should reasonably be able to
> assume that all claimants needing to be dealt with in the plan have come forward to
> vindicate their rights, thereby allowing the debtor to calculate its potential liabilities
> for purposes of effectuating its reorganization. If the court were to allow the
> [claimants] to file a late claim solely because they were unaware of the bankruptcy
> filing, it is difficult to see on what basis the court could deny the same relief to
> dozens or perhaps hundreds of creditors who might now come forward and assert a
> previously unknown claim. Such a policy would, in effect, allow any creditor who

9

> has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice. Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred. *In re Best Products Co., Inc.,* 140 B.R. 353, 359 (Bankr.S.D.N.Y.1992).

*U.S. Airways,* 2005 WL 3676186 at *7 - *8. These considerations are equally applicable to the case at bar. Preventing the continuous submission of late claims will permit the Trustee to finalize administration of the Trust and move to close the bankruptcy cases. Here, the record before me supports the conclusion that the Trust would suffer prejudice if Ms. Konar's late-filed claim is permitted.

     (B)    <u>Length of delay and impact on judicial proceedings</u>

     The second *Pioneer* factor to consider is the length of the delay in filing the proof of claim and the impact of the delay on the judicial proceedings. Ms. Konar filed her claim almost *four and a half years* after the Bar Date. As discussed above, the impact of allowing a late-filed claim at this juncture in the case would render the Bar Date meaningless; the continuous filing of late claims prevents the Trustee from completing distributions under the Modified Plan to creditors with timely-filed claims.

     (C)    <u>Reason for the delay, including whether it was within the reasonable control of the movant.</u>

     Ms. Konar argues that her late filing is excusable because the Debtors failed to provide her with adequate notice of the bankruptcy filing and the Bar Date. She argues that she acted reasonably by filing her claim soon after she became aware of the Debtors' bankruptcy filing in late 2011. The Trustee argues that Ms. Konar was an unknown creditor of the Debtors at the time the Bar Date Notice was served and, therefore, notice by publication was constitutionally

sufficient.

The purpose and procedures for setting a claims bar date were aptly discussed by my

colleague, Judge Gross, in *In re Smidth & Co.,* 413 B.R. 161 (Bankr. D.Del. 2009):

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure authorizes courts to
> set bar dates by which proofs of claim or interest may be filed.  This rule contributes
> to one of the main purposes of bankruptcy law, securing, within a limited time, the
> prompt and effectual administration and settlement of the debtor's estate.  Setting an
> outside limit for the time to assert a right triggers due process concerns of which
> every court must be cognizant.  This concern is resolved through notice: when a
> debtor provides proper notice to its creditors, due process is satisfied, and a court can
> bar creditors from asserting claims.  What qualifies as proper notice, however, is
> dependent upon whether the creditor is known or unknown.  If a creditor is known,
> the debtor must provide actual notice of the bankruptcy proceedings, whereas if the
> creditor is unknown, notice by publication is sufficient.

*Id.* at 165 citing, *inter alia, City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297,

73 S.Ct. 299, 97 L.Ed. 333 (1953), *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

For creditors who receive the required notice, the bar date is a "drop-dead date" that prevents a

creditor from asserting prepetition claims unless he can demonstrate excusable neglect.  *Berger v.*

*TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).

In *Chemetron*, the Third Circuit Court of Appeals defined a "known" creditor as one

whose identity is either known or "reasonably ascertainable" by the debtor. *Chemetron,* 72 F.3d

at 346 citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340,

1347, 99 L.Ed.2d 565 (1988).    The *Chemetron* Court further explained:

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified
> through "reasonably diligent efforts." *Mennonite Bd. Of Missions v. Adams*, 462 U.S.
> 791, 798 n.4, 103 S.Ct. 2706, 2711 n.4, 77 L.Ed.2d 180 (1983). Reasonable diligence
> does not require "impracticable and extended searches . . . in the name of due
> process." *Mullane,* 339 U.S. at 317, 70 S.Ct. at 659 . . . . The requisite search instead
> focuses on the debtor's own books and records. Efforts beyond a careful examination
> of these documents are generally not required.

*Id.* at 346-47 . On the other hand, an "unknown" creditor is one whose "interests are either

conjectural or future or, although they could be discovered upon investigation, do not in due

course of business come to knowledge [of the debtor]." *Chemetron*, 72 F.3d at 346 quoting

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed.

865 (1950).

Ms. Konar argues that, as of the petition date, the Debtors had information about her and

her loan in their files and, therefore, could have provided her with notice of the Bar Date.

However, I have already held in this case that the availability of a borrower's name and address

in the Debtors' loan files may reflect that the borrower was a *customer* of the Debtors but,

without more, does not mean that the borrower was a *creditor* of the Debtors, known or

otherwise. *White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*,

450 B.R. 504, 512 (Bankr. D.Del. 2011) citing *Hebell v. NVR, Inc.*, 1997 WL 417363, *2 (N.D.

Ill. July 21, 1997) (Holding that homeowner-mortgagors were not known creditors, even though

their identities were "reasonably ascertainable" from the debtors' loan service records, when

those records did not indicate that the mortgagors were potential class members who could file

suit in the future, thereby becoming claimants). The Trustee testified, without contradiction, that

the Debtors' books and records did not show any debt owed to Ms. Konar or any notice from Ms.

Konar of a potential claim as of the date the Bar Date Notice was served. (Tr. 151:25 - 153:23).

Ms. Konar also argues that the Debtors should have known about her claims as of the

Petition Date due to their knowledge of problems, generally, with the Debtors' lending practices.

She argued that the Debtors' schedules list over 500 pending law suits filed before the

bankruptcy filing. A similar argument was raised by another *pro se* claimant, Kimberly S.

Cromwell, who also sought allowance of a late-filed proof of claim.  With respect to these

arguments, I have already decided as follows:

> [The claimant] also argues that the Debtors should have known about her claims as of the Petition Date due to their knowledge of problems, generally, with the Debtors' lending practices.  She asserts that the Debtors' schedules list over 500 pending law suits, including 168 complaints alleging fraud and violations of TILA or RESPA; 94 complaints to quiet title to real property; and 58 complaints alleging breach of contract or breach of fiduciary duty claims. The Debtors provided actual notice to those borrowers who served complaints or sent correspondence to the Debtors asserting claims prior to the bankruptcy filing. (Tr. 136:2 - 136:9). Litigation brought by unrelated third parties, however, does not constitute notice to the Debtors of [the claimant's] particular claims.

> . . . .

> The gist of [the claimant's] arguments is that the Debtors should have known that *all borrowers*, including herself, were known potential claimants based upon the pending litigation, internal reports and flawed - - allegedly fraudulent - - lending practices.  However, as noted above, the Third Circuit has recognized that "[a]n 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Chemetron*, 72 F.3d at 346 quoting *Mullane*, 339 U.S. at 317.  The Debtors did not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Chemetron*, 72 F.3d at 346 quoting *In re Charter Co.*, 125 B.R. 650, 654 (M.D.Fla. 1991). "[S]uch a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates." *Chemetron*, 72 F.3d at 348.

> The Debtors originated more than *one million* loans between 2003 and its bankruptcy filing in 2007. (Tr. 85:19 - 86:11). Lawsuits by approximately only 320 borrowers did not provide the Debtors with notice that *all* borrowers held claims. As discussed in a related decision issued in this case on August 30, 2013, Suzanne Uhland, counsel for the Debtors, testified credibly that the Debtors did not associate their "kick-out" reports or "scratch and dent pools" with potential claims by borrowers.

>> [The Debtors] viewed the scratch and dent pools as loans that had . . . documentation problems that affected their enforceability and therefore the loan value . . . [The Debtors]

> didn't correlate the scratch and dent loan pools with borrower
> claims. Tr. 80:5 - 80:9. The same was true with respect to
> the "kickout loans." Tr. 82:9- 82:16 ("My view is that the
> fact a loan was kicked out doesn't correlate with the borrower
> having a claim against New Century.").

*In re New Century TRS Holdings, Inc.*, 2013 WL 4671734, *8 (Bankr. D.Del. Aug. 30, 2013).

*In re New Century TRS Holdings, Inc.*, 2014 WL 842637, *5 (Bankr. D.Del. Mar. 4, 2014).

Ms. Konar was an unknown creditor at the time the Bar Date Notice was served. Nothing in the record before me suggests that Ms. Konar's claim could have been "discovered upon investigation," or is a claim that "in the due course of business [came] to knowledge of" the Debtors. *Chemetron*, 72 F.3d at 346. Notice by publication generally suffices to meet due process standards for unknown creditors. *Chemetron*, 72 F.3d at 346. In a previous decision in the Debtors' bankruptcy case, I concluded that the Debtors' publication of the Bar Date Notice in the national edition of the *Wall Street Journal*, supplemented with notice published in the *Orange County Register*, satisfied due process requirements for unknown creditors. *In re New Century TRS Holdings, Inc.*, 2013 WL 4671734, *8 (Bankr. D.Del. Aug. 30, 2013). Because Ms. Konar was an unknown creditor, she was not entitled to actual notice of the Bar Date. She received constitutionally adequate notice of the Bar Date by publication.

(D)    Good faith of the movant

There is nothing in the record to indicate that Ms. Konar acted in bad faith.

(E)    Excusable Neglect - Conclusion

Upon consideration of the *Pioneer* factors, in light of the totality of the circumstances in this case, I conclude that Ms. Konar has failed to show that the late filing of her claim was due to

excusable neglect.

(2)    The New Evidence Motion

Ms. Konar's New Evidence Motion (i) asserts legal arguments that are repetitive of arguments she already asserted in the Konar Claim Motion; (ii) asserts legal arguments related to the merits of her pre-petition claim; and (iii) attaches documents that she claims refute the truthfulness of the Trustee's testimony and exhibits showing that the Konar Loan was transferred by the Debtor pre-petition. The documents attached (jointly, the "New Evidence") include: (i) an Assignment of Deed of Trust dated April 23, 2012, signed by New Century Mortgage Corporation by its attorney in fact Ocwen Loan Servicing, LLC (the "Assignment"); (ii) the first page of a letter dated October 17, 2013 from Ocwen Loan Servicing, LLC ("Ocwen") to Ms. Konar responding to Ms. Konar's request for information about her loan, and highlighting the paragraph that reads "Ocwen acquired the servicing rights of the loan from Weichert Financial Services on October 1, 2007 with the loan past due for the October 1, 2007 contractual payment" (the "Ocwen Letter"); (iii) an Ocwen Payment Reconciliation History dated April 20, 2012 with handwritten notes (the "Payment History"); and (iv) the first page of a memo dated March 7, 2007 from Stewart Title Insurance Company to All New York State Office Counsel, Managers and Agents, reading, in part, that "We have been alerted that you may experience a problem in receiving funds from the lender/broker listed below: New Century Mortgage . . . ." (the "Stewart Title Memo").

The Trustee objects to the New Evidence Motion, arguing that Ms. Konar's "new evidence" does not meet the requirements for supplemental pleadings set forth in Fed.R.Civ.P. 15(d), which provides that "a court may, on just terms, permit a party to serve a supplemental

pleading setting out any transaction, occurrence, or event that happened *after the date of the pleading to be supplemented*." Fed.R.Civ.P. 15(d) (emphasis added).  The Trustee argues that the New Evidence was available before the evidentiary hearing on the Konar Claim Motion and, therefore, the Court should not consider it.

Ms. Konar filed the New Evidence Motion in the adversary proceeding, rather than the main case in which the Konar Claim Motion is pending. However, the substance of the New Evidence Motion and the Trustee's response indicate that the parties view the motion as applying to the Konar Claim Motion, not the adversary proceeding. Therefore, the Trustee's reliance on Rule 15(d) in connection with the Konar Claim Motion is misplaced because the Konar Claim Motion is a "contested matter." Fed.R.Bankr.P. 9014.  Pursuant to Bankruptcy Rule 9014(c), Bankruptcy Rule 7015 (which makes Fed.R.Civ.P. 15 applicable to adversary proceedings) does not apply to contested matters. Although Bankruptcy Rule 9014(c) further provides that "the court may at any stage in a particular matter direct that one or more of the others rules of Part VII shall apply," I will not apply Rule 15 here because the New Evidence Motion is more akin to a motion to reopen the record to submit additional evidence, rather than a motion to supplement the pleadings.

Whether the record should be reopened to allow a party to submit additional evidence is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32, 91 S.Ct. 795, 802-03, 28 L.Ed.2d 77 (1971).  In deciding whether to reopen a case, the court should consider (i) the burden, if any, on the parties and their witnesses, (ii) whether undue prejudice may result if the relief is not granted, and (iii) concerns about judicial economy. *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 n.6 (3d Cir. 1975). *See also Joy Tech., Inc. v.*

16

*Flakt, Inc.*, 901 F.Supp. 180, 181 (D.Del. 1995) quoting 6A James Wm. Moore et al., *Moore's Federal Practice*, §59.04[13] (2d ed. 1995) ("The trial court should consider the motion to reopen 'in light of all the surrounding circumstances and either grant or deny it in the interest of fairness and substantial justice.'").

I will exercise discretion and consider the New Evidence. Upon consideration of all of the surrounding factors in this case, I perceive that judicial economy is best served by addressing the New Evidence at this point.

The New Evidence does not provide any basis for doubting the accuracy or truthfulness of the Debtors' books and records, or the Trustee's testimony and exhibits. The Assignment, the Ocwen Letter and the Payment History were prepared by and provided to Ms. Konar by a non-debtor third party (Ocwen), claiming to have certain rights to her Loan *after* the Loan was transferred by the Debtors. The Debtors' records show that Credit Suisse took possession of the Konar Loan from the Debtors in March 2007; the Ocwen Letter and the Payment History describe Ocwen obtaining an interest in the Konar Loan as of October 2007. New Century has not claimed any interest in, or control over, the Konar Loan after it was transferred.[9] The Assignment was prepared by Ocwen in 2012, asserting to act as "attorney in fact" for New Century Mortgage Corporation. This Court has no jurisdiction to consider Ms. Konar's allegations regarding Ocwen's authority to prepare and/or file the Assignment. *Carr v. JP Morgan Chase Bank, N.A.,* 505 B.R. 431 (Bankr. D.Del. Feb. 3, 2014) (holding that this Court does not have jurisdiction to consider whether non-debtor third parties fabricated or falsified

---

[9]Ms. Konar's arguments for avoidance of post-petition transfers based on the New Evidence are not persuasive because there is nothing in the record to indicate that the *Debtors* transferred the Konar Loan to Ocwen post-petition.

documents filed in a state recorder's office). There is no basis to connect the Stewart Title Memo to the Konar Loan, which was granted in North Carolina and not New York, and Ms. Konar makes no argument as to how her loan and the Stewart Title Memo are related.[10]

After consideration of Ms. Konar's "New Evidence," I conclude that there is no basis to change my decision to deny the Konar Claim Motion. To the extent the New Evidence Motion asks that Mr. Konar's claim be allowed, the New Evidence Motion will be denied.

(3)    The Adversary Proceeding

In light of the disposition of the Konar Claim Motion, Ms. Konar's adversary proceeding (No. 12-50187) will be dismissed. *Robert Christopher Assoc. v. Franklin Realty Group, Inc. (In re FRG, Inc.)*, 121 B.R. 710, 714 (Bankr. E.D.Pa. 1990) ("Clearly, a creditor cannot circumvent the temporal proscription of a bar date by the facile device of filing an adversary proceeding against a debtor after the bar date has run."); *see also In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D.Del. 1997) ("[T]he claims bar date operates as a federally created statute of limitations, after which the claimant loses all of her right to bring an action against the debtor.").

---

[10]The Stewart Title Memo indicates the Debtors were having financial difficulties prior to the bankruptcy filing. The Debtors' financial problems are well-documented in the Final Report of Michael J. Missal, Bankruptcy Court Examiner, February 29, 2008 (D.I. 5518) and other filings in the bankruptcy case. The Stewart Title Memo does not provide a basis for doubting the accuracy or truthfulness of the Debtors' books and records as related to Ms. Konar's Loan.

CONCLUSION

For the reasons set forth above, the Konar Claim Motion and the New Evidence Motion will be denied.  The Trustee's motion to dismiss Adversary Proceeding No. 12-50187 will be granted.  An appropriate Order follows.


BY THE COURT:


_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE


Dated: May 23, 2014


19