## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware Corporation, *et al.*, | Case No. 07-10416 (BLS) |
| Debtors.[1] | **Objection Deadline: August 3, 2016 at 4:00 p.m. (ET)**<br>**Hearing Date: August 25, 2016 at 10:00 a.m. (ET)** |

## THE NEW CENTURY LIQUIDATING TRUST'S MOTION FOR ENTRY OF AN ORDER (I) ISSUING A FINAL DECREE CLOSING THESE CHAPTER 11 CASES, (II) EXTENDING THE TERM OF THE TRUST TO COMPLETE CERTAIN POST-DISTRIBUTION ADMINISTRATIVE TASKS, AND (III) GRANTING RELATED RELIEF

Alan M. Jacobs, the Bankruptcy Court-appointed Liquidating Trustee (the "Trustee") of the New Century Liquidating Trust (the "Trust"), by and through his co-counsel, Hahn & Hessen LLP and Blank Rome LLP, hereby files this Motion (the "Motion") seeking entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order"), (a) issuing a final decree closing these chapter 11 cases (the "Chapter 11 Cases"), (b) terminating the engagement of the claims and noticing agent appointed in the Chapter 11 Cases, Kurtzman Carson Consultants, LLC (the "Claims

---

[1] The pre-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

Agent"), (c) authorizing the Trustee to discontinue providing powers of attorney to purchasers of mortgage loans ("Powers of Attorney") in accordance with the Modified Confirmation Order and Modified Plan (each, as defined below), (d) authorizing the release of the reserves established for certain disputed claims which have been resolved, (e) approving treatment of unclaimed distributions, (f) authorizing the disposition of any Residual Funds (as defined below), (g) authorizing the abandonment of assets that are burdensome or of inconsequential value to the estate, and (h) extending the term of the Trust to complete certain post-distribution administrative tasks necessary for the wind down of the Debtors' estates and administration of the Trust through the earlier of (1) the finalization of the Trustee's liquidation, administration and distribution of the remaining assets of the Trust and his full performance of all other duties and functions set forth in the Modified Plan and the Trust Agreement (as defined below), and (2) December 31, 2017.

The Trustee submits that the relief requested herein is appropriate because the Trustee has (a) substantially consummated the Modified Plan, (b) completed his claims review and reconciliation process (including filing, prosecuting, and resolving numerous omnibus and other claims objections), (c) complied with his financial reporting obligations (including the payment of all United States Trustee fees related thereto), (d) completed the liquidation of all estates' assets, (e) completed distributions to holders of allowed secured, administrative, and priority claims and made three distributions to holders of allowed general unsecured claims, and (f) sought and obtained entry of an order authorizing the destruction of the Debtors' and the Trust's records. Accordingly, the only matters that

remain to be completed are the final distribution to Holders of Allowed Unsecured Claims[2] (and the payment of United States Trustee fees related thereto), the disposition of any Residual Funds, and the closing of these Chapter 11 Cases, as well as certain post-distribution administrative tasks necessary to complete the wind down of the Debtors' estates and administration of the Trust and completion of the Trust's ongoing resolution of requests for documents and information in accordance with the Document Destruction Order (as defined below).

In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief requested in this Motion are sections 105(a), 350(a), 363(b)(1) and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 3022 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3022-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

3.    On April 2, 2007 (the "Petition Date"), the Debtors (with the exception of New Century Warehouse Corporation) filed voluntary petitions for relief under chapter 11

---

[2] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Modified Plan (as defined herein).

130566.01600/103110380v.1

of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4.      On April 23, 2008, the Debtors filed the *Second Amended Joint Chapter 11 Plan of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* (the "Original Plan").

5.      On July 15, 2008, the Bankruptcy Court entered the order confirming the Original Plan (the "Original Confirmation Order").

6.      On August 1, 2008 (the "Original Effective Date"), the Original Plan became effective.  Pursuant to the terms of the Original Plan, on the Original Effective Date, the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Trust and appointing Alan M. Jacobs as Trustee of the Trust.  On the Original Effective Date, among other things, all Assets of the Debtors (excluding Access Lending Assets, but including Access Lending Interests) were distributed to the Trust, and all of the remaining members of the Debtors' Board of Directors and Officers ceased to serve in those capacities by operation of the Original Confirmation Order.

7.      On August 4, 2008, the *Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008, (II) Effective Date, and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements, and Rejection Damage Claims* was filed.

8.      On June 16, 2009, the United States District Court for the District of Delaware issued a Memorandum Opinion and an order reversing the Original Confirmation Order.

-4-

9.      On September 30, 2009, the Trustee filed the *Modified Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of September 30, 2009* (the "Modified Plan").

10.     On November 20, 2009, the Bankruptcy Court entered an order confirming the Modified Plan (the "Modified Confirmation Order").

11.     On December 1, 2009 (the "Modified Effective Date"), the Modified Plan became effective.    On the Modified Effective Date, the Modified Plan, *inter alia*, (a) confirmed that all actions taken by the Trustee subsequent to the Original Effective Date were valid and binding, (b) adopted, ratified and confirmed the formation of the Trust as of the Original Effective Date, (c) adopted, ratified and confirmed the Liquidating Trust Agreement as of the Original Effective Date, and (d) adopted, ratified and confirmed the appointment of Alan M. Jacobs as Trustee as of the Original Effective Date.

12.     On or about April 2, 2010, the Trustee filed his *Motion of the New Century Liquidating Trust to Establish Reserves for Certain Disputed Claims* [D.I. 10063] (the "First Disputed Claim Reserve Motion") to establish a one million five hundred thousand ($1,500,000) dollar reserve (the "First Disputed Claim Reserve") with respect to certain disputed borrower claims set forth in that motion.  On May 19, 2010, the Court entered an order approving the First Disputed Claim Reserve Motion [D.I. 10110] (the "First Disputed Claim Reserve Order").

13.     On or about October 25, 2010, the Trustee filed his *Second Motion of the New Century Liquidating Trust to Set a Reserve for Certain Disputed Claims* [D.I. 10269] (the "Second Disputed Claim Reserve Motion") to establish a five hundred thousand ($500,000) dollar reserve (the "Second Disputed Claim Reserve") with respect to certain disputed borrower

-5-

claims set forth in that motion.  On November 22, 2010, the Court entered an order approving the Second Disputed Claim Reserve Motion [D.I. 10308] (the "Second Disputed Claim Reserve Order").

14.    On or about December 15, 2010, the Trustee made an interim distribution to Holders of Allowed Secured, Administrative, Priority and Unsecured Claims.

15.    On or about June 15, 2011, the Trustee made a second interim distribution (the "Second Interim Distribution") to Holders of Allowed Unsecured Claims and to Holders of Secured, Administrative and Priority Claims, which were Allowed as of the Second Interim Distribution.

16.    On or about August 12, 2011, the Trustee retained the Claims Agent as substitute claims and noticing agent for the Trust.

17.    On or about July 25, 2012, the Trustee filed his *Third Motion of the New Century Liquidating Trust to Set a Reserve for Certain Disputed Claims* [D.I. 10995] (the "Third Disputed Claim Reserve Motion" and together with the First and Second Disputed Claim Reserve Motions, the "Disputed Claims Reserve Motions") to establish a two million four hundred fifty-five thousand eight hundred ($2,455,800) dollar reserve (the "Third Disputed Claim Reserve" and together with the First and Second Disputed Claim Reserves, the "Disputed Claim Reserves") with respect to certain disputed borrower claims set forth in that motion.  On August 15, 2012, the Court entered an order approving the Third Disputed Claim Reserve Motion [D.I. 11008] (the "Third Disputed Claim Reserve Order" and together with the First and Second Disputed Claim Reserve Orders, the "Disputed Claim Reserve Orders").

18.     On or about January 4, 2013, the Trustee made a third interim distribution (the "Third Interim Distribution") to Holders of Allowed Unsecured Claims and to Holders of Secured, Administrative and Priority Claims, which were Allowed as of the Third Interim Distribution.

19.     On December 3, 2013, Molly S. White and Ralph N. White commenced an adversary proceeding against certain non-Debtor third-parties captioned *White v. Deutsche Bank National Trust Company, et al.*, Adv. Proc. No. 13-52524 (the "Pending Adversary Proceeding").  On December 31, 2013, Defendants filed a motion to dismiss the Pending Adversary Proceeding on the grounds that (a) Plaintiffs lack standing to assert rights under the automatic stay and (b) the Court lacked subject matter jurisdiction, *see* Adv. D.I. 5, 8, which was opposed by the Plaintiffs. *See* Adv. D.I. 18. On June 24 and 25, 2014, Defendants filed *Notices of Completion of Briefing*, see Adv. D.I. 22, 23, which were opposed by Plaintiffs. *See* Adv. D.I. 24.  The matter appears to be *sub judice.*

20.     On April 14, 2016, the Trustee filed the *New Century Liquidating Trust's Motion for an Order Authorizing the Abandonment and Destruction of All Records Filed by New Century Liquidating Trust* (the "Document Destruction Motion").   Certain responses and/or objections were filed or raised with respect to the Document Destruction Motion.

21.     On May 18, 2016, following a hearing on notice, the Bankruptcy Court entered the *Order Authorizing the Abandonment and Destruction of All Records* (the "Document Destruction Order") which, *inter alia*, authorized the Trustee to destroy the Debtors' and Trust's records and documents, subject to certain procedures as set forth in the Document Destruction Order.

22.     On or about July 11, 2016, the Trustee filed the (a) *Objection of the New Century Liquidating Trust to Claim No. 4160 Filed by Deborah Dehorney Pursuant to 11 U.S.C. § 502(b), Fed R. Bankr. P. 3001 and 3007, and Local Rule 3007-1* and (b) *Motion of the New Century Liquidating Trust to Disallow Claims for Failure to Timely Negotiate Distribution Checks*, seeking to disallow and expunge the subject proofs of claim for the reasons more fully set forth therein (the "Pending Claim Objections").

## RELIEF REQUESTED

23.     By this Motion, the Trustee requests, pursuant to Bankruptcy Code Sections 105(a), 350(a), 363(b)(1) and 554(a), Bankruptcy Rules 3022 and 6007 and Local Rule 3022-1, the entry of an order substantially in the form of the Proposed Order, (a) issuing a final decree closing these Chapter 11 Cases, (b) terminating the engagement of the Claims Agent, (c) authorizing the Trustee to discontinue providing Powers of Attorney, (d) authorizing the release of the Disputed Claim Reserves as the underlying claims have been resolved, (e) approving treatment of unclaimed distributions, (f) authorizing the disposition of any Residual Funds, (g) authorizing the abandonment of assets that are burdensome or of inconsequential value to the estate, and (h) extending the term of the Trust to complete certain post-distribution administrative tasks necessary for the wind down of the Debtors' estates and administration of the Trust through the earlier of (1) the finalization of the Trustee's liquidation, administration and distribution of the remaining assets of the Trust and his full performance of all other duties and functions set forth in the Modified Plan and the Trust Agreement, and (2) December 31, 2017.

## BASIS FOR RELIEF REQUESTED

### A.    Final Decree Closing the Chapter 11 Cases

24.    Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a).  Further, Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.    Bankruptcy Rule 3022 governs the closing of chapter 11 cases and further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." FED. R. BANKR. P. 3022.

26.    Local Rule 3022-1(a) provides, in relevant part, that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been substantially consummated provided that all required fees due under 28 U.S.C. § 1930 have been paid." DEL. BANKR. L.R. 3022-1(a).

27.    Neither the Bankruptcy Code nor the Bankruptcy Rules define the term "fully administered."   The Advisory Committee Notes to Bankruptcy Rule 3022, however, set forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

<blockquote>

a.    whether the order confirming the plan has become final;

b.    whether deposits required by the plan have been distributed;

c.    whether the property proposed by the plan to be transferred has been transferred;

</blockquote>

  d. whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

  e. whether payments under the plan have commenced; and

  f. whether all motions, contested matters, and adversary proceedings have been finally resolved.

*See* Fed. R. Bank. P. 3022, Advisory Committee Notes (1991).[3]

  28. Courts have recognized that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, No. 02-12608, 2005 Bankr. LEXIS 1322, at * 5 (Bankr. D. Del. June 24, 2005).  Rather, "Bankruptcy Rule 3022 is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *In re Union Home & Indus., Inc.*, 375 B.R. 912, 916 (10th Cir. B.A.P. 2007) (citation omitted); *see also In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.,* 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Notes when deciding whether to close a case); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 538-39 (Bankr. E.D. Ky. 1997) (same); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.") (quoting *In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1990)).

  29. An analysis of the factors enumerated in the Advisory Committee Notes to Bankruptcy Rule 3022 demonstrates the appropriateness of the Court entering a final decree closing these Chapter 11 Cases, as each such factor has been fully or substantially satisfied.

The Modified Confirmation Order became final and non-appealable more than six (6) years ago.  Pursuant to the Modified Confirmation Order, the Modified Plan, and the Trust Agreement, the Trustee has liquidated the estates' assets and made any deposits required by the Modified Plan.  The Trustee has also resolved all claims filed against the Debtors' estates (other than the claims listed on the Pending Claim Objections) and has, to date, made three interim distributions to holders of allowed claims.  Prior to the entry of the Proposed Order, the Trustee anticipates making a fourth and final distribution.  Further, other than the instant Motion, the Pending Claim Objections[4] and the Pending Adversary Proceeding,[5] all motions, contested matters, adversary proceedings, and appeals in these Chapter 11 Cases have been fully resolved.  Moreover, the Trustee has sought, and obtained, entry of the Document Destruction Order authorizing the Trustee to destroy or otherwise dispose of the Trust's and Debtors' records, subject to the terms of such order.  Accordingly, the Trustee submits that these Chapter 11 Cases may now be closed and that the closing of the Chapter 11 Cases will not prejudice any creditor of the Debtors.

---

[3] The Advisory Committee Notes also state that "[e]ntry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed."

[4] While the Trustee anticipates that the Pending Claims Objections will be resolved prior to the hearing on the Motion, to the extent that any Pending Claim Objection remains open, the Trustee will revise the form of Proposed Order to reflect this Court's retention of jurisdiction over such Pending Claim Objection.

[5] Notably, courts have entered final decrees and closed cases where an adversary proceeding was pending. *See, e.g., In re Union Home and Indus., Inc.*, 375 B.R. 912, 918 (10th Cir. BAP 2007) ("The continuation of an adversary proceeding … is insufficient by itself to keep a case from being considered 'fully administered.'"); *In re JMP-Newcor Int'l.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (pending adversary proceeding did not warrant keeping bankruptcy case open).  This is especially true where, as here, neither the Debtors nor the Trust are named as defendants in the Pending Adversary Proceeding and the Plaintiffs have already released any and all claims that they may have had against the Debtors pursuant to that certain *Settlement Agreement* dated September 14, 2015.  As such, this third-party dispute has no impact on the Chapter 11 Cases and should not be an impediment to issuing a final decree closing these cases.

30.     In addition to the factors set forth in the Advisory Committee Notes, courts have also considered whether the plan of reorganization has been substantially consummated. *See In re Gates Comm. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997); *see also Walnut Assocs.*, 164 B.R at 493.  The Bankruptcy Code defines the term "substantial consummation" as:

   a.    transfer of all or substantially all of the property proposed by the plan to be transferred;

   b.    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

   c.    commencement of distribution under the plan.

11 U.S.C. § 1101(2).

31.     As discussed above, all the estates' assets were transferred to the Trust to hold in trust for the Trust beneficiaries for distribution in accordance with the terms of the Modified Plan and the Trust Agreement.  The transfer of the estates' assets to the Trust, and the Trustee's actions taken with respect to such assets, were confirmed by the Modified Confirmation Order.  *See* Modified Plan, Art. 8.E.  Pursuant to the Modified Plan, the Trustee has made three distributions to holders of allowed claims, with a fourth and final distribution contemplated herein. Other than the assets to be distributed as part of the final distribution, no other assets, other than the Residual Funds and a minimal administrative reserve for costs associated with the closing of the Chapter 11 Cases and the Trust, will remain with the Trust.  Accordingly, the Trustee submits that the Modified Plan has been substantially consummated within the meaning of Section 1101(2) of the Bankruptcy Code.

32.     Based on the foregoing, the Trustee submits that it is appropriate and necessary for the entry of a final decree closing these Chapter 11 Cases.

**B.**    **Termination of Engagement of Claims Agent**

33.    As noted above, on or about August 12, 2011, the Trustee retained the Claims

Agent as claims and noticing agent in accordance with the Modified Plan. *See* Modified

Plan, Art. 8.I.  The Claims Agent was retained to, among other things, maintain a database

of all claims filed against the Debtors.  Also as noted above, all claims against the Debtors

(other than the claims that are the subject of the Pending Claim Objections) have been

resolved, and, pursuant to the terms of the Modified Plan, all payments and distributions

under the Modified Plan have been made or will be made upon entry of the Proposed

Order.

34.    Accordingly, the Trustee submits that the termination of the Claims Agent's

engagement as claims and noticing agent is appropriate under the circumstances.   The

Trustee requests that the Claims Agent be directed to comply with the instructions and

guidelines set forth by the Clerk's Office with respect to procedures for preparation of a final

claims register in accordance with the provisions of Local Rule 2002-1(f)(ix).

**C.**    **Discontinuance of Providing Powers of Attorney**

35.    Paragraph 69 of the Modified Confirmation Order and Section 15.C of the

Modified Plan each provide, in relevant part, that:

> with respect to mortgage loans purchased from one or more of the
> Debtors prior to or subsequent to the Petition Date, the Liquidating
> Trust shall execute, upon written request, and at the expense of the
> requesting party, any powers of attorney as shall be prepared by the
> requesting party and reasonably satisfactory to the Liquidating
> Trustee, as applicable, necessary to fully effectuate the transfer of such
> loan or otherwise to effect the appropriate transfer of record title or
> interest in such loan . . . .

Modified Confirmation Order, at ¶ 69; Modified Plan, Art. 15.C.  Paragraph 69 of the

Modified Confirmation Order and Section 15.C of the Modified Plan each further provide

that the Trustee "may seek modification of this requirement on notice motion and other parties may oppose such motion." *Id.*

36.     Since the entry of the Modified Confirmation Order, the Trustee has executed various Powers of Attorney at the request of certain parties and in accordance with the provisions of the Modified Confirmation Order and the Modified Plan.   The Trustee believes that, as of the date of the filing of this Motion, the Trust has addressed all such requests and that no request for a Power of Attorney is presently outstanding.   Moreover, relieving the Trustee from any further obligation or requirement to provide Powers of Attorney in no way prejudices any party seeking the same in the future as such party is not precluded from seeking appropriate relief from a court of competent jurisdiction.

37.     Accordingly, the Trustee requests that this Court relieve the Trustee and the Trust from any further obligation or requirement to provide Powers of Attorney, provided that, the Trustee requests that any Power of Attorney executed by the Debtors or the Trust prior to the entry of the final decree shall continue in full force and effect following the entry of such final decree.

## D.     Release of the Disputed Claim Reserves

38.     The Disputed Claim Reserves were established with respect to certain disputed borrower claims set forth in the Disputed Claim Reserve Motions, each of which borrower claims have been fully resolved.   The claims subject to the Pending Claim Objections were not the subject of any of the Disputed Claim Reserve Motions and, as such, are not entitled to benefit from the Disputed Claim Reserves. *See* First and Second Disputed Claim Reserve Orders, ¶ 2 (… from which any distributions may be initially made on account of the Disputed Claims as defined in the Motion."); Third Disputed Claim Reserve

Order, ¶ 2 (… which shall serve as the reserve for the Disputed Claims as identified on Exhibit A hereto.").

39.    Given that the disputed borrower claims for which the Disputed Claim Reserves were established have all been fully resolved (and do not relate to the Pending Claim Objections), the Trustee submits that it is appropriate for the approximately $4.5 million of Disputed Claim Reserves to be released and such funds shall immediately revert to Liquidating Trust Assets and be available for administration of the Trust and distribution according to the terms of Modified Plan, the Trust Agreement and this Order.

**E.    <u>Treatment of Unclaimed Distributions</u>**

40.    The Modified Plan provides, in relevant part, that

> [i]f payment or distribution to the Holder of an Allowed Claim under this Modified Plan is returned for lack of a current address for the Holder or if payment or distribution cannot be made for lack of any mailing address for the Holder, the Liquidating Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment.  If, after the passage of sixty (60) days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the holder shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution has been made to the holder of the Allowed Claim.

Modified Plan, Art. 9.H.

41.    While the Modified Plan is self-executing with respect to undeliverable distributions, it is silent with respect to the treatment of distribution checks which are neither negotiated nor returned to the Trustee as undeliverable ("Unclaimed Distributions"). Absent a procedure with respect to Unclaimed Distributions, the Trust would potentially have to incur additional administrative expense and delay in maintaining a reserve for any

such Unclaimed Distributions resulting from the final distribution and reopening these Chapter 11 Cases to seek to initiate a contested matter to have the underlying claims expunged.

42.     To avoid this potential administrative burden and delay in connection with the final distributions to be made under the Modified Plan, and given that the face of each distribution check states that the distribution check is "VOID AFTER 90 DAYS," the Trustee instead seeks the entry of an order providing that the claim of any holder of an allowed claim who fails to negotiate his/her distribution check within ninety (90) days of the initial distribution date of such check shall be disallowed and expunged and the funds reserved for such distribution shall immediately revert to Liquidating Trust Assets and be available for administration of the Trust and distribution according to the terms of Modified Plan, the Trust Agreement and the Proposed Order.

## F.     Disposition of Residual Funds

43.     Disposition of any residual funds is governed by Sections 554(a) and 363 of the Bankruptcy Code.  "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see* 11 U.S.C. § 363(b)(1) (authorizing the trustee to "use, sell, or lease other than in the ordinary course of business, property of the estate."); FED R. BANKR. P. 6007 (establishing procedures for disposition or abandonment of estate assets). Additionally, Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A trustee's decision to dispose of property of the estate is discretionary. *See In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003)

("trustee's power to abandon is discretionary [and] [c]ourt's defer to the trustee's judgment").

44.    Here, the Trustee anticipates that there may be certain *de minimis* funds remaining in the Trust following the final distribution and the post-distribution wind down of the Trust such as undeliverable distributions, Unclaimed Distributions, funds discovered after the Closing of the Chapter 11 Cases or otherwise (collectively, "Residual Funds").[6] The Trustee does not anticipate that the Residual Funds will be sufficient to warrant making a *pro rata* distribution to holders of allowed unsecured creditors after the final distribution has been made.  In the event that any such Residual Funds remain with the Trust in an amount which the Trustee, in his sole and absolute discretion, determines to be economically burdensome to the Trust to distribute to holders of allowed claims, the Trustee seeks authority to make a charitable donation and dispose of any such Residual Funds to The Honorable Tina Brozman Foundation for Ovarian Cancer Research (Tina's Wish), a 501(c)(3) non-for-profit organization, or to such other charity or charities as the Trustee may choose, without the need to re-open these Chapter 11 Cases or further order of the Court.

45.    In the event that the Residual Funds remain with the Trust in an amount which the Trustee, in his sole and absolute discretion, determines makes economic sense for the Trust to distribute to holders of allowed claims, the Trustee should be permitted to distribute such Residual Funds pursuant to the Modified Plan and the Trust Agreement, without the need to re-open these Chapter 11 Cases or further order of the Court, but should also be given authority consistent therewith to not make any distribution of Residual Funds

---

[6] Additionally, the Trustee anticipates that a minimal administrative reserve will be maintained by the Trust to cover the costs associated with the closing of the Chapter 11 Cases and the Trust.

on account of an allowed claim if the pro rata distribution with respect to such claim would be in an amount less than one hundred ($100) dollars.

46.     Given that there are approximately three thousand (3000) holders of allowed claims in these Chapter 11 Cases, the Trustee has concluded that, given the size of the pool of allowed claims, distributing Residual Funds in individual check amounts of less than one hundred ($100) dollars would be of inconsequential value and benefit to the Trust beneficiaries, and would be outweighed by the administrative burden associated therewith. In light of the foregoing, the Trustee respectfully submits the proposed disposition of any Residual Funds is reasonable and proper under the circumstances.

**G.     Abandonment of Assets that are Burdensome or of Inconsequential Value to the Estate**

47.     The abandonment by the Trustee of assets that are burdensome or of inconsequential to the Trust and its beneficiaries is also governed by Sections 554(a) and 363 of the Bankruptcy Code. *See* ¶ 42 *supra*.

48.     Similar to the Residual Funds, the Trustee anticipates that there may be certain unknown or unliquidated *de minimis* assets remaining in or discovered by the Trust following the final distribution and the post-distribution wind down of the Trust which are burdensome or of inconsequential value to the Trust and its beneficiaries ("Residual Assets").

49.     For example, the Trust has an interest in court-ordered restitution awarded to New Century Mortgage Corporation in connection with various criminal prosecutions of individuals (the "Restitution Awards").  There are approximately seventy (70) Restitution Awards in the aggregate amount of $7,870,503.17.  While a total of

$675,109.60 has been collected on the Restitution Awards since August 2008, the collection rate has dropped precipitously with only $11,423.52 of that amount being collected in 2016. Moreover, it appears that since the Restitution Awards are criminal in nature, the Trustee may not sell or assign the Trust's rights to them.  As such, the Trustee has determined in his business judgment that the Trust's interest in the Restitution Awards are of inconsequential value to the Trust and any potential benefit is outweighed by the cost associated with administering and disposing of any such future payments.

50.    To complete the wind-down of the Debtors' estates and administration of the Trust, the Trustee seeks authority to abandon any Residual Assets which the Trustee, in his business judgment, determines to be burdensome or of inconsequential value to the Trust and its beneficiaries, without the need to re-open these Chapter 11 Cases or further order of the Court and respectfully submits that such relief is appropriate under Sections 105(a), 363(b)(1) and 554(a) of the Bankruptcy Code.

**H.    Extension of the Trust Term**

51.    This Court has previously entered Orders extending the term of the Trust to facilitate the Trustee's administration and wind down of the Debtors' estates. *See Order Granting Motion of the New Century Liquidating Trust for an Order Extending the Trust Termination Date Through and Including August 1, 2015* [Dkt. No. 11093]; *Order Granting Motion of the New Century Liquidating Trust for an Order Further Extending the Trust Termination Date Through and Including August 1, 2016* [Dkt. No. 11433] (the "Extension Order").

52.    Absent a further extension of its term, the Trust will terminate on August 1, 2016. *See Extension Order*, at p. 2.  The Extension Order provides, however, that the entry of "this Order is without prejudice to the Trust's right to seek a further extension of the Trust

Termination Date in accordance with the Terms of the Modified Plan . . . ." *Id.*  Section 8.F of the Modified Plan provides, in relevant part, that the "Trust shall terminate no later than the fifth (5th) anniversary of the Original Effective Date" provided that this Court "upon motion by a party in interest, may extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust Assets administered by the Liquidating Trust." Modified Plan, Art. 8.F(12).

53.     By this Motion, the Trustee seeks a further extension of the term of the Trust through the earlier of (i) the finalization of the Trustee's liquidation, administration and distribution of remaining assets of the Trust and his full performances of all other duties and functions set forth in the Modified Plan and the Trust Agreement, and (ii) December 31, 2017.

54.     As discussed above, prior to the entry of the Proposed Order, the Trustee will make a final distribution to Holders of Allowed Unsecured Claims.  While the Trustee anticipates that the final distribution will be made on or about August 1, 2016, under the Proposed Order, the Trust beneficiaries are entitled to ninety (90) days to deposit, endorse or negotiate their distribution checks before such distributions become Residual Funds. Unless the term of the Trust is extended beyond August 1, 2016, the Trust bank accounts would need to be closed on that date.  Therefore, the term of the Trust should be extended so that the Trust bank accounts can remain open beyond August 1, 2016 in order to permit the Trust beneficiaries to enjoy the full three (3) months granted them under the Proposed Order to claim their respective distributions.  To the extent that there are Residual Funds at the end of that three (3) month period, the extension of the Trust termination date will permit the Trustee the opportunity to determine whether such funds are sufficient to

mandate another distribution or should be disposed of pursuant to the terms of the Proposed Order.

55.     Further, pursuant to the Document Destruction Order, the Trust is currently engaged in reviewing and responding to various requests for documents and information from Subpoena Objectors (as defined in the Document Destruction Order) and other parties.  The Document Destruction Order established June 30, 2016 as the deadline for such parties to provide the Trust with their lists of Requested Documents (as defined in the Document Destruction Order).  Nevertheless, given the magnitude of the requests received by the Trust prior to the June 30, 2016 deadline, the Trustee submits that a further extension of the Trust termination date is necessary and appropriate to enable the Trust to respond to all timely received requests.

56.     In addition to the foregoing, the Trustee requests an extension of the Trust termination date to enable the Trustee to complete certain post-distribution administrative tasks necessary to complete the wind down of the Debtors' estates and administration of the Trust such as, *inter alia*, filing tax returns.

57.     As noted above, both the Extension Order and the Modified Plan contemplate further extensions of the Trust termination date to facilitate the administration of the Trust.  Accordingly, notwithstanding the closing of these Chapter 11 Cases upon entry of the final decree, the Trustee requests that the Court extend the term of the Trust until the earlier of (i) the finalization of the Trustee's liquidation, administration and distribution of remaining assets of the Trust and his full performances of all other duties and functions set forth in the Modified Plan and the Trust Agreement, and (ii) December 31,

2017, without prejudice to the Trustee's right to seek a further extension of the term of the Trust.

## I.    Discharge of Trustee Other than with Respect to Trailing Obligations

58.    Pursuant to the terms of the Trust Agreement, the Trustee is obligated to liquidate the Trust assets, resolve disputed claims, make timely distributions to holders of allowed claims and Trust interests and not unduly prolong the duration of the Trust. *See* Trust Agreement, ¶ 5.2.

59.    As set forth more fully above, the Trustee has fulfilled these obligations.  At present, the Modified Plan has been substantively consummated and all that remains for the Trustee is the completion of certain post-distribution administrative tasks, including his obligations under the Document Destruction Order.  As such, the Trustee submits that it is appropriate for the Court to release and discharge the Trustee of his duties and obligations as Trustee of the Trust other than those limited remaining duties and obligations relating to the wind down of the Trust and under the Document Destructions Order and the Proposed Order (the "Trailing Obligations"), which Trailing Obligations should terminate upon the termination of the Trust.

## PAYMENT OF US TRUSTEE FEES AND FINAL REPORT

60.    The Trustee will pay all statutory fees of the United States Trustee accruing up to the date of the final decree for the these Chapter 11 Cases within ten (10) business days of the entry of the Proposed Order.

61.    The Trustee will file the final report (the "Final Report") for the Debtors on a consolidated basis from the Petition Date through August 1, 2016, pursuant to Local Rule 3022-1(c), under separate cover.

## NO PRIOR REQUEST

62.     No previous request for the relief sought in this Motion has been made to this or any other court.

## NOTICE

63.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware, (ii) Ralph N. White and Molly S. White and all other parties (or their counsel) to Adversary Proceeding No. 13-52524 (BLS), (iii) all claimants affected by a pending claim objection or motion to disallow claims, (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b), (v) the members of the New Century Liquidating Trust Plan Advisory Committee, and (vi) all creditors.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court (a) enter an order, substantially in the form as the Proposed Order, (i) closing these Chapter 11 Cases, (ii) terminating the engagement of the Claims Agent, (iii) authorizing the Trustee to discontinue providing Powers of Attorney, (iv) authorizing the release of the Disputed Claim Reserves, (v) approving treatment of Unclaimed Distributions, (vi) authorizing the disposition of any Residual Funds, (vii) authorizing the abandonment of Residual Assets, and (viii) extending the term of the Trust until the earlier of (1) the finalization of the Trustee's liquidation, administration and distribution of remaining assets of the Trust and his full performances of all other duties and functions set forth in the Modified Plan and the Trust Agreement, and (2) December 31, 2017; and (b) grant such other or further relief that the Court deems just and proper.

130566.01600/103110380v.1

**BLANK ROME LLP**

Dated: July 19, 2016            By:    */s/ Victoria A. Guilfoyle*
                                      Bonnie Glantz Fatell (DE No. 3809)
                                      Victoria A. Guilfoyle (DE No. 5183)
                                      1201 Market Street, Suite 800
                                      Wilmington, Delaware 19801
                                      (302) 425-6400 - Telephone
                                      (302) 425-6464 - Facsimile

                                      - and -

**HAHN & HESSEN LLP**
488 Madison Avenue
New York, New York 10022
(212) 478-7200 - Telephone
(212) 478-7400 - Facsimile
Attn:    Mark S. Indelicato, Esq.
         Jeffrey Zawadzki, Esq.

*Co-Counsel to the New Century Liquidating Trust*

130566.01600/103110380v.1