## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware Corporation, *et al.*, | Case No. 07-10416 (BLS) |
| Debtors.[1] | **Re: Docket Nos. 11551, 11553** |

## OBJECTION OF THE FORMER TRUSTEE OF THE NEW CENTURY LIQUIDATING TRUST TO MOTION TO REOPEN CHAPTER 11 CASES [ECF 11551, 11553]

Alan M. Jacobs, in his capacity as the former Bankruptcy Court-appointed Liquidating Trustee (the "Trustee") of the New Century Liquidating Trust (the "Trust"), by and through his former co-counsel, Hahn & Hessen LLP and Blank Rome LLP, hereby files this objection to the *Amended Motion to Reopen Chapter 11 Bankruptcy Case to Permit the Filing of an Adversarial Complaint against the New Century Liquidating Trust and Alan M. Jacobs in his Capacity as the Liquidating Trustee of the New Century Liquidating Trust* [ECF 11553] (the "Lynch Motion"),[2]

---

[1] The pre-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

[2] The Lynch Motion amends the *Motion to Reopen Chapter 11 Bankruptcy Case to Permit the Filing of an Adversarial Complaint against the New Century Liquidating Trust and Alan M. Jacobs in his Capacity as the Liquidating Trustee of the New Century Liquidating Trust* [ECF 11551], which was filed on or about October 28, 2019.

filed by Michael and Candice Lynch (the "Lynches"), and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Lynch Motion should be denied because it fails to establish a compelling reason for reopening these Chapter 11 cases.  Rather, the Lynches seek to reopen these Chapter 11 cases to re-litigate issues that were fully resolved on the merits by a final judgment of the United States Bankruptcy Court for the Southern District of Florida (the "FL Bankruptcy Court") and subsequently affirmed on multiple appeals to the United States District Court for the Southern District of Florida (the "FL District Court"), and the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit").  The Lynches even appealed the FL Bankruptcy Court decision to the Supreme Court of the United States (the "Supreme Court"), which declined to hear the matter.

2.      The gravamen of the Lynches' complaint in those proceedings was whether a mortgage loan originated by one of the Debtors was validly transferred and therefore enforceable by the current holder of the underlying note.  Germaine to the instant matter, and central to the prior proceedings, was whether or not certain documents prepared by the Trust that served to evidence or effectuate that transfer were valid.  The FL Bankruptcy Court determined that those documents were valid and the loan was enforceable against the Lynches by the current holder of the note.

3.      Given that the Lynches already had a full and fair opportunity to litigate their claims before the FL Bankruptcy Court, and through the appellate process, any claims sought to be asserted by the Lynches against the Trust and the Trustee in these cases are barred by either the

doctrine of collateral estoppel or *res judicata*.  Accordingly, no valid purpose would be served by reopening these Chapter 11 cases.

4.       Further, it has been over three (3) years since the entry of the final decree and the closing of these Chapter 11 cases.  All Trust assets have been distributed.  All of the Debtors' and Trust's documents and records have been destroyed.  The Trust has terminated according to its terms and the Trustee has been fully released and discharged of his duties and obligations as Trustee of the Trust.  The Trustee submits that the substantial passage of time and the weight of other relevant factors mitigate strongly against reopening these cases at this juncture.

## BACKGROUND

5.       On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

6.       On April 23, 2008, the Debtors filed the *Second Amended Joint Chapter 11 Plan of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* (the "Original Plan").

7.       On July 15, 2008, the Court entered the order confirming the Original Plan (the "Original Confirmation Order").

8.       On August 1, 2008 (the "Original Effective Date"), the Original Plan became effective.  Pursuant to the terms of the Original Plan, on the Original Effective Date the *New Century Liquidating Trust Agreement* (the "Trust Agreement") was executed, thereby creating the Trust and appointing Alan M. Jacobs as Trustee of the Trust.

9.       On June 16, 2009, the United States District Court for the District of Delaware issued a *Memorandum Opinion* and an order reversing the Original Confirmation Order.

10.    On September 30, 2009, the Trustee filed the *Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009* (the "Modified Plan").

11.    On November 20, 2009, the Court entered an order confirming the Modified Plan (the "Modified Confirmation Order") [ECF 9957].  The Modified Confirmation Order provides, in relevant part:

> with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from the Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that the Liquidating Trust shall not be liable for the actions of the requesting party under any such powers of attorney . . . .

Modified Confirmation Order, ¶ 69.

12.    On December 1, 2009 (the "Modified Effective Date"), the Modified Plan became effective.  On the Modified Effective Date, the Modified Plan, *inter alia*, (a) confirmed that all actions taken by the Trustee subsequent to the Original Effective Date were valid and binding; (b) adopted, ratified and confirmed the formation of the Trust as of the Original Effective Date; (c) adopted, ratified and confirmed the Trust Agreement as of the Original Effective Date; and (d)

adopted, ratified and confirmed the appointment of Alan M. Jacobs as trustee of the Trust as of the Original Effective Date.

13.    On May 18, 2016, the Court entered an order authorizing the Trustee to destroy the Debtors' and Trust's records and documents (collectively, "Records") subject to certain procedures in that order (the "Document Destruction Order").

14.    On August 25, 2016, the Court entered a *Final Decree* (annexed hereto as **Exhibit 25**) closing these Chapter 11 cases, discharging the Trustee of his obligations under paragraph 69 of the Modified Confirmation Order, and fully releasing and discharging the Trustee of his duties and obligations as Trustee of the Trust (other than with respect to certain ministerial obligations related to Trust wind down and Records destruction ("Trailing Obligations")). *See* Final Decree, ¶¶ 2-3, 9.

15.    On September 30, 2016, the Trust made a final distribution of the Trust assets [ECF 11539] and completed the disposal of the Records pursuant to the Document Destruction Order.

16.    By February of 2017, the Trustee had completed the Trailing Obligations and the Trust terminated by operation of its terms and in accordance with the terms of the Final Decree.

17.    On October 28, 2019, the Lynch Motion was filed with the Court.  The motion was subsequently amended on November 7, 2019.  Based upon the Trustee's review of the Lynch Motion and documents filed in connection with the Lynches' prior litigation, the Trustee has identified the following facts and circumstances upon information and belief.

## THE LYNCH LOAN

18.    It appears that, on or about June 2, 2004, New Century Mortgage Corporation ("NCMC") made a loan to Michael D. Lynch in the principal amount of $224,000 (the "Loan") secured by a mortgage. *See* **Exhibit 2**, ¶6.

19.     Following the origination of the Loan, NCMC sold the Loan to NC Capital Corporation which, in turn, sold the Loan to New Century Mortgage Securities, Inc.  On or about August 4, 2004, the Loan was transferred to, and securitized as part of, the New Century Home Equity Loan Trust, Series 2004-A (the "Securitized Trust").  *Id*., ¶7.

## THE LYNCH LOAN LITIGATION

### FL Bankruptcy Court Proceedings

20.     On July 24, 2012, the Lynches filed a petition for relief under Chapter 7 of the Bankruptcy Code in the FL Bankruptcy Court.[3]

21.     On October 23, 2014, the Lynches commenced an adversary proceeding[4] by filing a complaint (annexed hereto as **Exhibit 1**, "AP Complaint") against Deutsche Bank National Trust Co. (the "Securitization Trustee"), as Trustee for the Securitized Trust, and Ocwen Loan Servicing, LLC ("Ocwen" and together with the Securitization Trustee, the "FL Defendants") seeking a declaratory judgment that the FL Defendants were not the owner of the Loan and could not enforce it against the Lynches. *See* **Exhibit 1**, pp. 10-14; Adv. Proc. Cover Sheet, Cause of Action.

22.     In the summer of 2016, in accordance with paragraph 69 of the Modified Confirmation Order and at the request of the FL Defendants, the Trust, as successor to NCMC, prepared a "business records" affidavit (annexed hereto as **Exhibit 2**, the "Walker Affidavit") and executed a *Limited Power of Attorney* (annexed hereto as **Exhibit 3**, the "LPOA") appointing the Securitization Trustee, as trustee for the Securitized Trust, as NCMC's attorney-in-fact with respect to the mortgage loans originated by NCMC and transferred to, and securitized as part of,

---

[3] *In re Lynch*, Case No. 12-27731 (AJC) (Bankr. S.D. Fla.).

[4] *See Lynch v. Deutsche Bank Nat'l Trust Co., as Tr. for New Century Home Equity Loan Trust Series 2004-A Asset Backed Pass-Through Certificates, Series 2004-A, et al.*, Adv. Proc. No. 14-01786 (AJC) (Bankr. S.D. Fla. 2014) (the "FL Adversary Proceeding" or "FL AP").

the Securitized Trust (including the Loan) for the limited purpose of, *inter alia*, executing such documentation as necessary to correct or otherwise remedy any errors of deficiencies contained in any documentation prepared or executed by NCMC and relating to or evidencing the transfer of such mortgage loans.

23.    On February 15, 2017, the FL Defendants filed a motion for summary judgment as to all claims asserted in the AP Complaint. *See* FL AP ECF 101.  In support of their motion, the FL Defendants included, *inter alia*, the Walker Affidavit, the LPOA and an allonge, executed by the Securitization Trustee pursuant to the LPOA, making the Loan payable to the Securitization Trustee.

24.    Germaine to the instant motion, the Lynches immediately challenged the validity of the Walker Affidavit, the LPOA and the transfer of the Loan, repeatedly arguing, *inter alia*, that they were "*void ab initio.*" *See Plaintiff's Response in Opposition to Defendants Motion for Summary Judgment and Incorporated Memorandum of Law* [FL AP ECF 107] (annexed hereto as **Exhibit 4**), ¶¶3, 9, 31-32, 42 ("In June of 2016 Defendants obtained the Walker Affidavit.  In July of 2016, the Defendants obtained a Limited Power of Attorney executed by Alan Jacobs in his capacity as Liquidating Trustee for the New Century Liquidating Trust.  On October 20, 2016 Deutsche Bank executed the Allonge.  All of these documents are *void ab initio* under governing law and are prima facie evidence the effective Transfer of the note and Mortgage never occurred."); *Plaintiffs' Cross Motion for Summary Judgment and Incorporated Memorandum of Law* [FL AP ECF 113] (annexed hereto as **Exhibit 5**), ¶¶27, 29-30; *Plaintiff's Reply to Defendants' Response in Opposition to Plaintiff's Cross Motion for Summary Judgment* [FL AP ECF 124] (annexed hereto as **Exhibit 6**), pp. 2-3, 5.

25.     On June 8, 2017, following oral argument, the FL Bankruptcy Court rejected the Lynches' arguments and entered a final judgment in favor of the FL Defendants holding that they were entitled to enforce the Loan [FL AP ECF 129] (annexed hereto as **Exhibit 7**, the "Final Judgment").

**FL District Court Proceedings – Affirmed**

26.     The Lynches appealed the Final Judgment to the FL District Court[5] and continued to challenge the validity of the Walker Affidavit, the LPOA and the transfer of the Loan. *See Initial Br. of Appellants* [FL DIST ECF 10] (annexed hereto as **Exhibit 8**), pp. 25-28 (validity of Walker Affidavit); pp. 40-42 (validity of LPOA); pp. 47-55 (validity of transfer); *Appellants' Reply Brief* [FL DIST ECF 14] (annexed hereto as **Exhibit 9**), p. 8 (validity of transfer), pp. 10-13 (validity of Walker Affidavit), pp. 15-17 (validity of LPOA); *Appellants' Response to Appellee's Sur-Reply* [FL DIST ECF 20] (annexed hereto as **Exhibit 10**), pp. 2-3 (validity of Walker Affidavit), p. 3 (validity of LPOA).

27.     On November 9, 2017, the FL District Court entered an Order rejecting the Lynches' arguments and affirming the Final Judgment. *See Order on Appeal* [FL DIST ECF 24] (annexed hereto as **Exhibit 11**), p. 6 (affirming "Bankruptcy Court's conclusion that Walker's affidavit is valid and reliable"), p. 8 ("any acts taken pursuant to the power of attorney were valid"); p. 13 ("Appellees are holders in possession of the note and are entitled to enforce it").

28.     The Lynches then filed a motion for reconsideration continuing to challenge the validity of the Walker Affidavit, the LPOA and the transfer of the Loan. *See Appellants Motion for Rehearing on Court Order on Appeal Affirming Bankruptcy Court Order on Summary*

---

[5] *Lynch v. Deutsche Bank Nat'l Trust Co., et al.*, Case. No. 17-22250 (RNS) (S.D. Fla. 2017) ("FL DIST").

*Judgment* [FL DIST ECF 25] (annexed hereto as **Exhibit 12**), pp. 8-10 (validity of LPOA), pp. 10-11 (validity of Walker Affidavit), pp. 11-12 (validity of transfer); *Reply to Appellees' Response to Appellants' Motion for Rehearing* (annexed hereto as **Exhibit 13**) [FL DIST ECF 27], p. 9 (validity of Walker Affidavit).

29.     On January 1, 2018, the FL District Court again rejected the Lynches' arguments and entered an *Order Denying Appellants' Motion for Reconsideration* [FL DIST ECF 28] (annexed hereto as **Exhibit 14**).

**Eleventh Circuit Proceedings – Affirmed**

30.     The Lynches then appealed the FL District Court's decision to the Eleventh Circuit[6] continuing to challenge the validity of the Walker Affidavit, the LPOA and the transfer of the Loan. *See Initial Br. of the Appellant* (annexed hereto as **Exhibit 15**), pp. 11-12, 20-25, 31 (validity of Walker Affidavit), pp. 11-12, 25-27, 31 (validity of LPOA), pp. 11-17, 44 (validity of transfer); *Appellants Reply Brief* (annexed hereto as **Exhibit 16**), pp. 2, 11, 19 (validity of LPOA), pp. 2, 11 (validity of Walker Affidavit), pp. 3, 9-19 (validity of transfer).

31.     On November 15, 2018, the Eleventh Circuit rejected the Lynches' arguments and entered a decision (annexed hereto as **Exhibit 17**) affirming the FL District Court's order. *See Per Curium Decision*, p. 6 (affirming admission of Walker Affidavit); p. 9 (affirming that Appellees "are entitled to enforce the Note and the Mortgage.").

32.     On November 28, 2018, the Lynches filed with the Eleventh Circuit a petition for panel rehearing continuing to challenge the validity of the Walker Affidavit, the LPOA and the transfer of the Loan. *See Petition for Panel Rehearing and Suggestion for Rehearing En Banc*

---

[6] *Lynch v. Deutsche Bank Nat'l Trust Co., et al.*, Case. No. 18-10147 (AA) (11 Cir. 2018).

(annexed hereto as **Exhibit 18**), pp. 4-9 (validity of Walker Affidavit), pp. 4-5 (validity of LPOA), pp. 4-7 (validity of transfer).

33.    On January 11, 2019, the Eleventh Circuit denied the Lynches' petition for rehearing. *See* Order (annexed hereto as **Exhibit 19**).

34.    Thereafter, the Lynches filed a motion for a stay of mandate. *See Appellants Motion for Stay of Mandate Pending Disposition of a Petition for Writ of Certiorari* (annexed hereto as **Exhibit 20**).

35.    On January 31, 2019, the Eleventh Circuit entered an Order denying the Lynches' motion for a stay of mandate. *See Order* (annexed hereto as **Exhibit 21**).

36.    On February 11, 2019, the Eleventh Circuit issued its Mandate. *See Mandate of the Court* (annexed hereto as **Exhibit 22**).

**Petition for Certiorari to the Supreme Court – Denied**

37.    On April 9, 2019, the Lynches filed a petition for writ of certiorari with the Supreme Court[7] continuing to challenge the validity of the Walker Affidavit, the LPOA and the transfer of the Loan. *See Petition for a Writ of Certiorari* [FL DIST ECF 36] (annexed hereto as **Exhibit 23**), pp. 7-9, 11-12, 25, 28 (validity of Walker Affidavit), pp. 8-9 (validity of transfer), pp. 8, 10 (validity of transfer).

38.    On May 20, 2019, the Supreme Court denied the Lynches' petition for writ of certiorari. *See* Letter from Scott S. Harris, Clerk of the Supreme Court of the United States, to Clerk, United States Court of Appeals for the Eleventh Circuit (May 20, 2019) (annexed hereto as **Exhibit 24**).

---

[7] *Lynch v. Deutsche Bank Nat'l Trust Co., et al.*, No. 18-1294 (2018).

39.    On October 28, 2019, after having fully litigated the issues in the FL Bankruptcy Court and exhausted all possible avenues of appellate relief, the Lynches filed the Lynch Motion with this Court.  The motion was subsequently amended on November 7, 2019.

### OBJECTION

40.    A bankruptcy case may be reopened only "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).  The movant "bears the burden of demonstrating circumstances sufficient to justify the reopening of [the] bankruptcy case."  *In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, at *9 (E.D. Pa. Dec. 13, 2004).  Indeed, the "moving party must ordinarily demonstrate that there is a *compelling* cause."  *In re Scheib*, 2014 Bankr. LEXIS 3084, at *7 (Bankr. W.D. Pa. July 18, 2014) (emphasis added).

41.    "Whether to reopen the case is within the discretion of the Bankruptcy Court." *Rashid*, 2004 U.S. Dist. LEXIS 25032, at *8 (*citing Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir. 1997)).  A court should "look beyond the mere reopening of the case if there would be no benefit to the estate to do so."  *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009).  "Generally, a bankruptcy case should remain closed if no valid purpose would be served if the matter were reopened." *Rashid*, 2004 U.S. Dist. LEXIS 25032, at *10 (*citing In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995).

42.    Importantly, no cause exists to reopen a bankruptcy case where the movant already had a full and fair opportunity to litigate its claims before another tribunal. *See, e.g., Mid-City Bank v. Skyline Woods Homeowners Assoc. (In re Skyline Woods Country Club, LLC)*, 431 B.R. 830, 835 (B.A.P. 8th Cir. 2010) (affirming decision not to reopen case and "give the [movant] a 'second bite at the apple' in the bankruptcy court after [movant] had chosen an alternative forum for their dispute" and a judgment had been rendered in that forum); *In re Rashid*, at *14 ("no valid reason

to reopen bankruptcy case" where "latest lawsuit is merely an attempt to relitigate claims that [movant] has raised -- or could have raised -- in [movant's] three prior lawsuits").

43.     The Lynches seek to reopen these Chapter 11 cases ostensibly so they can commence an adversary proceeding against the Trust and the Trustee for (a) declaratory judgment that the Walker Affidavit and the LPOA issued by the Trust in accordance with paragraph 69 of the Modified Confirmation Order regarding the Loan (and therefore the underlying transfer of the Loan) are "*void ab initio*" and (b) compensatory and punitive damages arising from the purported wrongful issuance of the Walker Affidavit and the LPOA and the transfer of the Loan (the "Disputed Claims").  *See* Lynch Motion, ¶36.

44.     However, the Lynches admit (as they must) that the Disputed Claims have already been fully and finally litigated in the FL Bankruptcy Court[8] and a Final Judgment as to the validity of the Walker Affidavit, the LPOA and transfer of the Loan has been rendered against them. *See* Lynch Motion, ¶¶22-23.  Moreover, the Final Judgment was appealed to the FL District Court and the Eleventh Circuit and was even the subject of a (denied) petition for writ of certiorari to the Supreme Court. *See id*., ¶24.  At each step of the way, the Lynches challenged the validity of the Walker Affidavit, the LPOA and the transfer of the Loan, and at each step of the way, their arguments were uniformly rejected. *See id*.

45.     Having fully but unsuccessfully litigated these issues through every level of the United States federal court system, the Lynches admit that they now seek an alternative forum to re-litigate the same claims in an effort to find relief. *See id*., ¶25 ("Left with no recourse to

---

[8] *See Lynch v. Deutsche Bank Nat'l Trust Co., as Tr. for New Century Home Equity Loan Trust Series 2004-A Asset Backed Pass-Through Certificates, Series 2004-A, et al.*, Adv. Proc. No. 14-01786 (AJC) (Bankr. S.D. Fla. 2014) (the "FL Adversary Proceeding" or "FL AP").

otherwise mitigate our injuries and damages.  Movants now ask this Court to reopen the NC

Bankruptcy Case to allow us to file the Complaint.").

    a.    ***There is No Basis to Reopen these Chapter 11 Cases because the Lynches are Barred from <u>Asserting the Disputed Claims</u>***

    i.    <u>*Collateral Estoppel*</u>

    46.    By seeking a declaratory judgment from this Court that the Walker Affidavit and the LPOA (and therefore the underlying transfer of the Loan) are "*void ab initio*," the Lynches are attempting to re-litigate issues that were already determined by the Final Judgment and subsequently upheld by numerous appellate courts.  Any action before this Court would be nothing more than a subterfuge for the Lynches to collaterally attack the Final Judgment.

    47.    The doctrine of collateral estoppel (issue preclusion) "bars relitigation of an issue identical to that in a prior action." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 329 n.2 (3d Cir. 2000).  Collateral estoppel does not require a relationship between the party raising the defense and the party who litigated the issue in a previous case. *See Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844-45 (3d Cir. 1974).  It applies where "(1) the issue decided in the prior litigation [was] identical to the one presented in the later action, (2) there [was] a final judgment on the merits, and (3) the party against whom the doctrine is asserted [was] a party or in privity to the prior adjudication and [had] full and fair opportunity to litigate the issue in question in the prior action." *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999).  There is no legitimate dispute that each requirement is satisfied here with respect to the Disputed Claims.

    48.    The Lynches were the plaintiffs in the FL Adversary Proceeding.  During that proceeding, they had a fair opportunity to (and did) fully and vigorously litigate, *inter alia*, the validity of the Walker Affidavit, the LPOA and the transfer of the Loan, repeatedly arguing, *inter*

*alia*, that they were "*void ab initio*." *See* **Exhibit 4**, ¶¶3, 9, 31-32, 42; **Exhibit 5**, ¶¶27, 29-30;

**Exhibit 6**, pp. 2-3, 5.

49.     Indeed, the Lynches continued to litigate those very same issues on appeal to the

Florida District Court[9] and the Eleventh Circuit[10] and by writ of certiorari to the Supreme Court.[11]

50.     The litigated claims, i.e., that the Walker Affidavit, the LPOA and the transfer of

the Loan were invalid, are identical to the Disputed Claims that the Lynches now seek to assert

against the Trust and the Trustee if these Chapter 11 cases are reopened. *Compare* Lynch Motion,

¶36, *with* **Exhibit 8**, pp. 25-28, 40-42, 47-55; **Exhibit 9**, pp. 8, 10-13, 15-17; **Exhibit 10**, pp. 2-3;

**Exhibit 12**, pp. 8-12; **Exhibit 13**, p. 9; **Exhibit 15**, pp. 11-12, 20-27, 31, 44; **Exhibit 16**, pp. 2-3,

9-19; and **Exhibit 23**, pp. 7-9, 10-12, 25, 28.  These claims have already been resolved against the

Lynches pursuant to a Final Judgment on the merits by the FL Bankruptcy Court, a decision which

was affirmed by both the FL District Court and the Eleventh Circuit.  The Supreme Court has

denied to grant the Lynches certiorari.

51.     In sum, (1) the issues decided in FL Adversary Proceeding are identical to the

Disputed Claims sought to be asserted if these Chapter 11 cases are reopened, (2) there is a Final

Judgment on the merits on those issues which has been affirmed by both district and circuit courts

on appeal, and (3) the Lynches were parties to the FL Adversary Proceeding and the subsequent

---

[9] *See* **Exhibit 8**, pp. 25-28   (validity of Walker Affidavit); pp. 40-42 (validity of LPOA); pp. 47-55 (validity of transfer); **Exhibit 9**, p. 8 (validity of transfer of Loan), pp. 10-13 (validity of Walker Affidavit), pp. 15-17 (validity of LPOA); **Exhibit 10**, pp. 2-3 (validity of Walker Affidavit), p. 3 (validity of LPOA); **Exhibit 12**, pp. 8-10 (validity of LPOA), pp. 10-11 (validity of Walker Affidavit), pp. 11-12 (validity of transfer of Loan); **Exhibit 13**, p. 9 (validity of Walker Affidavit).

[10] *See* **Exhibit 15**, pp. 11-12, 20-25, 31 (validity of Walker Affidavit), pp. 11-12, 25-27, 31 (validity of LPOA), pp. 11-17, 44 (validity of transfer); **Exhibit 16**, pp. 2, 11, 19 (validity of LPOA), pp. 2, 11 (validity of Walker Affidavit), pp. 3, 9-19 (validity of transfer).

[11] *See* **Exhibit 23**, pp. 7-9, 11-12, 25, 28 (validity of Walker Affidavit), pp. 8-9 (validity of transfer), pp. 8, 10 (validity of transfer).

appeals and had full and fair opportunity to, and did, litigate those very issues in the FL Adversary Proceeding and the subsequent appeals. The doctrine of collateral estoppel now precludes the Lynches from re-litigating the Disputed Claims before this Court. As such, reopening these Chapter 11 cases would be futile and a waste of judicial resources and, therefore, the Lynch Motion must be denied. *See In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, at *9 (E.D. Pa. Dec. 13, 2004) ("Where it is clear at the outset that [movant] would not be entitled to any relief, there is no valid reason to reopen his bankruptcy case.")(internal quotations and citations omitted).

*ii.*    *Res Judicata*

52.    Even assuming *arguendo* that the Disputed Claims are different from the issues that were litigated in the FL Adversary Proceeding and the subsequent appeals (which they are not), the Lynches are still precluded from asserting the Disputed Claims in this Court because they could have (and should have) raised them in the FL Adversary Proceeding.

53.    The doctrine of *res judicata* (claim preclusion) "prohibits re-examination of matters that a party might have, but did not, assert in the prior action." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 329 n.2 (3d Cir. 2000). It applies where "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) subsequent suit based on the same cause of action." *Churchill v. Star Enter.*, 183 F.3d 184, 194 (3d Cir. 1999). Notably, however, "[c]ourts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit." *Id*. Each of the requirements for the application of *res judicata* is present in the instant matter.

54.    There is no legitimate dispute that any suit before this Court would be based on the same cause of action litigated in the FL Bankruptcy Proceeding, i.e., the validity of the Walker

Affidavit, the LPOA and the transfer of the Loan. *See infra*, ¶¶45, 47. Both sets of claims arise from the same transaction. *See U.S. v. Tohono O'odham Nation*, 563 U.S. 307, 316 (2011). The material factual allegations, acts complained of, relief demanded (ultimately that the transfer of the Loan was invalid and the Loan cannot be enforced by the FL Defendants) and witnesses and documents necessary for trial are all the same.[12] *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). It is also beyond dispute that the Final Judgment is a final judgment on the merits involving the Lynches, a party to the FL Adversary Proceeding.

55.     Further, "where, as in this case, *res judicata* is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have . . . enlarged the area of *res judicata* beyond any definable categories of privity between the defendants." *Bruszewski v. U.S.*, 181 F.2d 419, 422 (3d Cir. 1950). This is because "the true reason for holding the issues *res judicata* does not necessarily depend upon privity, but on the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy." *Id.*, n.6 (citation omitted). "*Res judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants, where there is a close or significant relationship between successive defendants." *Mertes v. Mertes*, 350 F. Supp. 472, 475 (D. Del. 1972) (*citing Bruszewski*, 181 F.2d at 422); *Creely v. Genesis Health Ventures*, 184 Fed. Appx. 197, 201 (3d Cir. 2006) ("defendant invoking claim preclusion must demonstrate only that a close or significant relationship exists with the previous defendant") (internal quotations and citation omitted).

---

[12] When conducting this analysis, the Third Circuit instructs that "[i]t is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014).

56.    In this regard, *Mertes* is instructive.  There, the plaintiff (husband) challenged the
constitutionality of a Delaware statute providing for the division of property upon divorce.  Since
the plaintiff could have, but did not, litigate the constitutionality claim as a defense in the action
that resulted in a judgment in favor of defendant (wife), *res judicata* barred him from doing so in
the second action. *Mertes v. Mertes*, 350 F. Supp. at 475.  Significantly, however, the Delaware
District Court also found that the doctrine was equally applicable to a suit against additional
defendants who had not been parties to the prior suit.[13]  The Delaware District Court held that

> [a]s to the defendants O'Hara and Neill, neither of whom were
> parties in the state court proceedings, the doctrine is equally
> applicable to bar litigation in this Court.  The Court of Appeals for
> the Third Circuit in *Bruszewski v. United States*, 181 F.2d 419
> (C.A.3, 1950), *cert. den. Bruszewski v. United States War Shipping
> Administration*, 340 U.S. 865, 71 S. Ct. 87, 95 L. Ed. 632 (1950),
> held that *res judicata* may be invoked against a plaintiff who has
> previously asserted essentially the same claim against different
> defendants, where there is a close or significant relationship between
> successive defendants.  The *Bruszewski* principle is applicable here
> to the additional defendants.   They were simply added to the present
> suit in order to obtain some of the injunctive relief demanded.  The
> ultimate relief sought here is relief against Victorine and any relief
> granted with respect to O'Hara and Neill would adversely affect her.
> Since the constitutional issue could have been raised as a defense in
> the state proceedings, but was not, and the state proceedings went to
> final judgment adverse to Thomas, he may not now litigate piece-
> meal that issue here against the added defendants who are not
> indispensable. *See Gambocz v. Yelencsics*, *supra*.  Accordingly, we
> hold that Thomas is barred from proceeding against all the
> defendants in this action.

*Id*.

---

[13] The second action named two additional defendants that were not parties to the prior suit -- the presiding judge in
the divorce and property proceedings (Robert O'Hara) and the commissioner appointed to convey plaintiff's interest
in jointly held real property (Paul E. O'Neill).

57.    The circumstances in *Mertes* also exist here.  First, the movant here is the same party as the plaintiff in the FL Adversary Proceeding.  Second, a close or significant relationship exists between the FL Defendants and NCMC as the Securitization Trustee is NCMC's successor-in-interest with respect to the Loan.  Such a relationship is evident because the ultimate relief sought by the Lynches in reopening these Chapter 11 cases is against the FL Defendants (i.e., that the transfer was invalid and the Loan unenforceable by the FL Defendants) and any relief granted with respect to the Trust or the Trustee on the Disputed Claims by this Court would adversely affect the FL Defendants. *See id.*

58.    Accordingly, to the extent that the Lynches did not raise the Disputed Claims in the FL Adversary Proceeding, the Trust and the Trustee may invoke the doctrine of *res judicata* to bar them from doing so now.  Since it is clear at the outset that the Lynches would not be entitled to any relief, there is no valid reason to reopen these Chapter 11 cases.[14] *See In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, at *9 (E.D. Pa. Dec. 13, 2004).

b.    ***Other Factors Mitigate against Reopening these Chapter 11 Cases***

59.    Courts may consider a variety of factors when deciding whether to reopen a bankruptcy case, including:

---

[14] Moreover, even if the doctrine of collateral estoppel or *res judicata* did not apply, the actions that form the basis of the Lynches' complaint (that the Trustee executed the LPOA and directed the preparation of the Walker Affidavit) were actions that the Trustee was required to take pursuant to paragraph 69 of the Modified Confirmation Order -- an obligation that he was finally relieved of upon the entry of the Final Decree.  Since the Trustee acted in compliance with and pursuant to the Modified Confirmation Order, he is immune from any suit brought by the Lynches. *See, e.g.*, *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989) ("Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order."); *Lopez-Stubble v. Rodriguez-Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 942 (1st Cir. 1988) (trustee immune when "acting with explicit authority of a bankruptcy court"); *Yadkin Valley Bank & Trust Co. v. McGee*, 819 F.2d 74, 76 (4th Cir. 1987) (bankruptcy trustee immune if acting "under direct orders of the court"); *Bullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) (trustee entitled to immunity where "acting under supervision and subject to orders of the bankruptcy judge"); *Phoenician Mediterranean Villa, LLC v. Swope (In re J&S Props., LLC)*, 545 B.R. 91, 103 (Bankr. W.D. Pa. 2015) ("When acting pursuant to an order of the Court, a bankruptcy trustee is generally afforded absolute immunity.").

> the benefit to the creditors; the benefit to the debtor(s); whether an
> adverse party will be prejudiced by reopening the case; whether the
> debtor's failure to disclose was inadvertent; the amount of time that
> has passed since the case was closed; and indications of forum
> shopping or other inequitable conduct.

*See e.g., In re Lowery*, 398 B.R. 512, 515-16 (Bankr. E.D.N.Y. 2008); *In re Rashid*, 2004 U.S.

Dist. LEXIS 25032, *9-10 (time elapsed since closed, availability of alternate forums, prejudice,

benefit and whether relief is available).

60.     Here, over three (3) years have passed since the entry of the Final Decree closing

these Chapter 11 cases and discharging the Trustee.  Further, all of the Trust assets have been

distributed, all of the Records have been destroyed, the Trust has terminated, and no benefit will

inure to the Debtors or their creditors from reopening these Chapter 11 cases.

61.     The Lynches will not be prejudiced because the FL Bankruptcy Court was the

appropriate forum to determine their rights and they fully litigated their claims in that forum and

subsequent appellate courts.  By seeking to reopen these Chapter 11 cases, the Lynches are

engaging in blatant forum shopping. *See Cole v. Household Fin. (In re Cole)*, 382 B.R. 20, 29

(Bankr. E.D.N.Y. 2008) (denying motion to reopen noting that movant was "engaging in forum

shopping" and could assert claims in other forums).  The FL Defendants, on the other hand, would

be prejudiced because any relief granted to the Lynches in these cases could call into question the

finality of the Final Judgment the FL Defendants obtained from the FL Bankruptcy Court.

Moreover, the Trust and Trustee would be prejudiced by reopening these cases and upsetting the

finality of the Final Decree and the final resolution of the Trust and these Chapter 11 cases.

62.     In sum, even if the Lynches claims were not barred by the doctrines of collateral

estoppel or *res judicata* (which they are), the weight of the relevant factors mitigates strongly

against reopening these Chapter 11 cases.

## <u>CONCLUSION</u>

WHEREFORE, the Trustee respectfully requests that the Court (a) deny the Lynch Motion,

and (b) grant such other or further relief that the Court deems just and proper.

Dated:  November 12, 2019

**BLANK ROME LLP**

*/s/ Bryan J. Hall*
Victoria A. Guilfoyle, Esq. (DE No. 5183)
Bryan J. Hall, Esq. (DE No. 6285)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**HAHN & HESSEN LLP**
Mark S. Indelicato, Esq.
Jeffrey Zawadzki, Esq.
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile:  (212) 478-7400

*Co-Counsel to the Former Trustee of the*
*New Century Liquidating Trust*