Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                          :

5                                    :    Chapter 11

6    NEW CENTURY TRS HOLDINGS,       :    Case No. 07-10416 (BLS)

7    INC., a Delaware Corporation,   :    (Jointly Administered)

8    et al.,                         :

9            Debtors.                :

10   _____:

11

12                                   United States Bankruptcy Court

13                                   824 North Market Street

14                                   Wilmington, Delaware

15                                   November 19, 2019

16                                   1:35 p.m. - 3:09 p.m.

17

18

19

20

21   B E F O R E :

22   HON BRENDAN L. SHANNON

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:  DANA L. MOORE

1   HEARING re Motion to Reopen Case # 07-10416 (BLS), filed by

2   Drusella Johnson and Jerry Johnson [Docket No. 11548; filed

3   on 10/8/2019]

4

5   HEARING re Amended Motion to Reopen Chapter 11 Bankruptcy

6   Case to Permit the Filing of an Adversarial Complaint

7   against the New Century Liquidating Trust and Alan M. Jacobs

8   in his Capacity as the Liquidating Trustee of the New

9   Century Liquidating Trust, filed by Michael D. Lynch and

10   Candice B. Lynch [Docket No. 11553; filed on 11/7/2019]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    HAHN & HESSEN LLP

4        Attorneys for Former Liquidating Trustee of the New

5        Century Liquidation Trust

6

7    BY:  MARK S. INDELICATO

8

9    BLANK ROME LLP

10       Attorneys for Former Liquidating Trustee of the New

11       Century Liquidation Trust

12

13   BY:  BRYAN J. HALL

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All rise.

3              THE COURT:  Please be seated.  Mr. Indelicato.

4              MR. INDELICATO:  Good afternoon, Your Honor.  Nice

5      to be back before you.

6              THE COURT:  Welcome.

7              MR. INDELICATO:  Your Honor, we are here on behalf

8      of Alan M. Jacobs, the former trustee of New Century.  There

9      are two motions to seek to reopen the case, the Johnson

10     motion and the Lynch motion.  I think it would make sense if

11     we hear both from the -- both the moving parties and then I

12     could give a response to both at one point and time.

13             THE COURT:  I think that that sounds fine, but

14     obviously if either Mr. Johnson or Mr. Lynch feels

15     differently, or Ms. Johnson, then I would hear from them

16     separately if they wish.  But I do note that the motions are

17     filed first by Mr. and Mrs. Johnson and then a motion to

18     reopen the case by Mr. and Mrs. Lynch.

19             Let me do this.  I would hear first from the

20     Johnsons with respect to whether they're okay with

21     essentially having both of the motions presented in series

22     and then having the trustee respond.  Mr. and Mrs. Johnson?

23             MR. JOHNSON:  Jerry Johnson.

24             THE COURT:  Oh good, okay.  Mr. Johnson, this is

25     Judge Shannon, I'm on the line.

1          MR. JOHNSON:  Yes, sir, how are you today?

2          THE COURT:  I'm well, thank you.  So the question

3    is, is just kind of how we proceed.  I look at both of the

4    motions essentially being requests to reopen the case to

5    permit certain actions to occur during the case, and so the

6    trustee has asked -- trustee's lawyer has asked can I just

7    respond to both of them together.  So you folks would

8    present your two motions and then he would respond.  And

9    obviously you'd have a chance to reply.  Is that okay with

10   you, Mr. Johnson?

11         MR. JOHNSON:  I just had obtained a

12   (indiscernible), I would prefer though to be separated if

13   possible.

14         MR. INDELICATO:  That's fine, Your Honor.  I'm

15   happy to go that route.

16         THE COURT:  Okay.  That sounds fine.  So we'll go

17   ahead then and we'll proceed first with the motion that was

18   filed by Mr. and Mrs. Johnson and I'll hear from you and

19   then I'll hear from Mr. Indelicato with his response.

20         And I expect that I would want -- before I rule on

21   either of the motions I probably will want to hear fully on

22   both of them to make sure I understand the full -- the full

23   record.  But I am certainly happy to hear them separately.

24   So, Mr. Johnson.

25         MR. JOHNSON:  Yes, sir.  Your Honor, after hearing

1    of the destruction of records order was granted May 18,

2    2016, I, Jerry Johnson, requested proof of how this affects

3    our current property.  Our mortgage, which originated on

4    September 1st, 2005.

5              We're currently involved in litigation in our

6    state with an alleged servicer/member pertaining to this.

7    And we're leading -- trying to get this reopened in order to

8    get documentation to use in our present litigation case.

9              THE COURT:  Okay.  I think I --

10             MR. JOHNSON:  Because someone is still saying hey,

11   this debt is owed and they're trying to come after us after

12   that also.

13             THE COURT:  Okay.  Mr. Indelicato, I'd like your

14   thoughts, sir.

15             MR. INDELICATO:  Thank you, Your Honor.  First,

16   Your Honor, I believe the motion filed by the Johnsons

17   should be denied.  Section 350 is very specific as to what

18   needs to be established to reopen a case, and I believe they

19   are relying on no such other cause in that motion because

20   there really will be no relief to the debtor and there's no

21   assets to administer.

22             And their motion was devoid of any factual basis

23   under which to proceed.  But I will try and address the

24   substance of their motion as I understand it, Your Honor.

25   They are -- and based on an email we got from I believe Mr.

1   Johnson over the weekend that was forwarded onto us by our

2   counsel, co-counsel, Blank Rome, they are looking to

3   determine whether or not when the documents were destroyed

4   pursuant to the 2006 document destruction order any of the

5   original notes and mortgages were destroyed as well.

6          What I can tell them, Your Honor, and what I've

7   been telling people that have called since the document

8   destruction order was entered and the case was ultimately

9   closed in September of 2016, is that we had no original

10   records to the best of our knowledge, that the original

11   records, the original notes and mortgages when the loans

12   were originated were placed with custodians.

13          And over the course of the proceeding, as the

14   notes and -- I'm sorry, as the notes and mortgages were

15   sold, either they stayed with the custodian or they were

16   transferred to the custodian at the request of the owner or

17   the servicer.

18          So at the time of the document destruction, there

19   were no assets in the estate with respect to any of these

20   mortgages and we had no original notes and mortgages.  To

21   the extent they would like to reopen the case to get

22   documentation, that is an impossibility.  There are no

23   longer any documentation.

24          That doesn't mean that there's not documentation

25   out there in the world, because during the course of this

1   proceeding, many of the servicers and many of the other

2   parties requested that we provide copies of our files.  And

3   if this Court will recall, when the document destruction

4   order was entered into, I believe it was in May of 2006,

5   there were some parties that objected, many of the servicers

6   and financial institutions that still had mortgage

7   foreclosure proceedings pending asked for a period of time

8   in which they could request additional documentation.

9          And the Court provided that in the order and there

10  was I think a six or eight week period which we provided

11  copies of all of the documentation that was requested of us.

12  But again Your Honor, even the documentation that we

13  provided were copies of documentation that we had in our

14  electronic files.

15         We did not have access to the original files that

16  were held by the custodian.  So to the extent they are

17  looking to determine whether or not an original mortgage or

18  note was destroyed in the -- as a result of the document

19  destruction order, all we can tell the Court is that to the

20  best of our knowledge at the time, that we had no original

21  notes and mortgages.

22         We had sent out the notices of document

23  destruction to all of the known financial institutions that

24  had been in touch with us during the course of the case, and

25  just to make sure that they had done all of their due

1    diligence and the last few stragglers we dealt with in the

2    months before the document destruction order and the

3    documents were ultimately then destroyed.

4         During the course of the case, I will say that

5    there were many -- under the terms of the plan of

6    confirmation, parties could request copies of the

7    documentation.  And to the extent it was a financial

8    institution, there was a charge, and to the extent it was a

9    borrower we gave it to them free of charge.

10        And there were many borrowers who requested copies

11   of what we had, and we provided it.  And -- but there no

12   longer are any records in which to provide any data.  So

13   opening the case would be an effort in futility, Your Honor,

14   because there's nothing I can provide.

15        THE COURT:  Okay, I understand.  Thank you, Mr.

16   Indelicato.  Mr. Johnson, I trust you could hear Mr.

17   Indelicato.

18        MR. JOHNSON:  Yes, sir.

19        THE COURT:  And I'd like your response.

20        MR. JOHNSON:  To -- okay.

21        THE COURT:  Yeah, right, your response to his

22   comment.

23        MR. JOHNSON:  Jerry Johnson, okay.

24        THE COURT:  Sure.

25        MR. JOHNSON:  Just to mention to Mr. Indelicato,

1    the -- this order by -- the (indiscernible) signed 2016.  So

2    the concern we have is that there have been numerous

3    servicers, numerous members -- I understand you don't have

4    anything.  We're just trying to get documentation stating

5    that it's pertaining to what you do not have.

6           If you say we don't have that, we can research but

7    we don't have any -- put that in writing, that will -- we're

8    not looking to open, I would say to come back again and

9    rehash everything that's going on.

10          We're just trying to take our name out the pool if

11   it's never been there or if it is there.  And we don't have

12   anything in reference to it.  Because every -- you know,

13   over an amount of time, since 2005 which our loan was

14   originated, have many servicers who've come in and we've

15   continued paying which we probably did not even have to.

16          So you can put yourself in our shoes.  But I do

17   understand who you represent.  And just take a look at that

18   and say hey you know, that's a lot -- and it's continuing --

19   it's going to continue also.  So that's why we need relief

20   and any measure of relief that's give, we'll take any

21   measure.

22          MR. INDELICATO:  Your Honor, and believe me, I am

23   almost one of the last men standing in the New Century case,

24   I was there at the beginning.  Thankfully Your Honor wasn't

25   there at the beginning, but I've been there for 12 years and

1    I understand the morass that the borrowers need to go

2    through, which is why as long as the case was open we had

3    made the records available to borrowers.

4          The only thing I could tell Mr. Johnson is I did

5    send him back an email yesterday in response to his inquiry

6    letting him know that all of the records were destroyed.

7    There are no records are available, and in addition, I let

8    him know that at least based upon information and belief, we

9    do not believe that there were any original notes or

10   mortgages that were destroyed as a result of the -- of that

11   document destruction order.  So other than that there's not

12   much more I can do.  And --

13         THE COURT:  Mr. Indelicato, let me ask this.  And

14   Mr. Johnson, this is Judge Shannon speaking.  What I think I

15   heard from Mr. Johnson was that he understands the position

16   of the trust, and I think you told me that just a moment ago

17   that you essentially sent him an email.

18         What he was looking for was something in writing

19   that he would at least be able to -- as he goes through his

20   process with other parties be able to say I can't go back to

21   the bankruptcy proceeding.  And it sounds like, from what

22   you described, Mr. Indelicato, you've essentially already

23   put that in writing via an email.

24         MR. INDELICATO:  I have, Your Honor.

25         THE COURT:  Mr. Johnson, have you received that

1   email, was that along the lines of what might be, you know,

2   sufficient?

3              MR. JOHNSON:  Well, I would have to verify receipt

4   essentially.  I don't have any knowledge of receiving that.

5   So I will take a look, so you say you sent it -- I haven't

6   been home.  I didn't mean to interrupt to ask him when he

7   sent that, but.

8              MR. INDELICATO:  I believe I sent it yesterday

9   morning or early afternoon, but it was sent yesterday.  It

10  was in response to the email you sent to Bryan Hall, Bryan

11  Hall responded to that email indicating that he would defer

12  to me and I responded to that email indicating that -- what

13  I had said on the record.

14             If you haven't received it, we will resend it to

15  you but that is the -- the email is exactly as I've

16  indicated on the record today.

17             THE COURT:  All right.

18             MR. JOHNSON:  Okay.

19             THE COURT:  Yeah.  Mr. Johnson?

20             MR. JOHNSON:  Yes, sir.  That's why I came here in

21  this measure of the Court, Your Honor, because if that did

22  come or did not come I didn't ever see it, but it definitely

23  carries more weight when it came through our fine Court

24  there, definitely the bankruptcy court, to have it on some

25  form of letterhead identified and forwarded to me and then I

1    can utilize that.

2         But if it's by email, it only can go so far, sir.

3    If I received that.  I'm going to go back and look through

4    my email.

5         THE COURT:  All right, let me -- let me see what I

6    can broker.  So your concern, and it sounds like a

7    legitimate concern, is that perhaps for the purposes that

8    you need, an email from Mr. Indelicato might not be

9    sufficient.  I will tell you that the Court is not going to

10   give you a letter or ruling on that respect, at least -- I

11   mean this is -- I'm not ruling on your motion to reopen at

12   this point, I'm just trying to come to a practical answer.

13        The only thing that the Court could do is to say

14   the debtor asked for an order authorizing the destruction of

15   documents, the Court authorized that, and that's all I know.

16   The question I would ask Mr. Indelicato is, you identified

17   the substance of an email that you've sent.  Would you be

18   prepared to essentially send that as former counsel?

19        MR. INDELICATO:  Your Honor, and that is -- you've

20   hit the nail on the head, which is why I've been sending

21   emails as opposed to a formal letter.  But I am happy to

22   send a letter, but the problem is once I send a letter with

23   all of the caveats under my letterhead, that I am no longer

24   counsel and the trustee is in -- it -- sometimes it raises

25   more questions than it answers.

1          In responding to a simple email, I could say as

2    of, and it sort of -- it is truly less informal, I grant you

3    that --

4          THE COURT:  I agree.  Let's do this.  Mr. Johnson,

5    here's what I'd like to do.  Well, actually do you have

6    anything else to say, sir?

7          MR. JOHNSON:  No, sir.  Thank you.  Thank you for

8    your time.

9          THE COURT:  All right.  Here's what I want to have

10   happen.  I want you to have the opportunity to look at the

11   email that Mr. Indelicato sent, because while it is easy for

12   me to turn to him, I kind of had the same reaction and

13   anticipation, that that email is going to have a lot of

14   lawyer language in it.

15          And were I a practicing lawyer, I would put the

16   same stuff in there, and it might actually not help you as

17   much as having, frankly, written correspondence, admittedly

18   in the form of an email, from somebody that says I had a

19   role of responsibility in this case, there are no documents

20   in our possession and that may help you with confirming to

21   other people that they need to respond to you, because I'm

22   sure that you're getting pointed back to the bankruptcy.

23          So here's what I'd like to do.  I want you to take

24   a look at the email that you received from Mr. Indelicato,

25   take a look at it, see if it works for you.  If there are

1    concerns that you have, you can have a little communication

2    with Mr. Hall or Mr. Indelicato, and if there's some

3    additional language, if they're okay with it, great.

4            If they're not okay with it, then I don't want any

5    letters or correspondence or motions to me on this issue.

6    If there's a need to sort this out, you can get me on the

7    phone.  All right?  But I will warn you, Mr. Johnson, I

8    mean, it's going to be an email.  That's the most likely

9    thing that you're going to get.  If you feel strongly that

10   you need a letter, we're going to have a further discussion

11   about it because I am sensitive to the concerns that Mr.

12   Indelicato has expressed.

13           But take a look at the email, see if it works for

14   you.  And again if it doesn't, then we're not going to

15   schedule another hearing or bring people in, we'll figure

16   this out promptly.  Because again I am cognizant of the fact

17   that this case is long closed, and it's closed and frankly

18   Mr. Indelicato at this point does not even have a client

19   effectively.

20           So I think that's where we'll leave it right now

21   for your motion.  As to the motion to reopen, I'll deal with

22   that in a moment after I hear from the -- from the Lynches.

23   Okay?

24           MR. INDELICATO:  Thank you, Your Honor.

25           THE COURT:  Mr. Johnson, does that make sense?

1          MR. JOHNSON:  Yes, sir.  Yes, sir.

2          THE COURT:  All right, very good.  Can I hear from

3     the Lynches?

4          MR. LYNCH:  Hi Your Honor, this is Michael Lynch,

5     pro se.

6          THE COURT:  Good afternoon, this is Judge Shannon.

7          MR. LYNCH:  Okay.  Your Honor, if I may presume

8     that you are familiar with the New Century Liquidating Trust

9     and Mr. Jacobs and his position as the liquidating trustee,

10    and the procedural history and (indiscernible) under the New

11    Century Mortgage Chapter 11 case, I would like to dispense

12    with my reciting of that part of my motion.

13         THE COURT:  That is fine.  I appreciate the -- I

14    appreciate the point that you're making and I will assure

15    you that I am familiar with the proceedings.  I do know that

16    Judge Carey, my now retired colleague, has moved on but I

17    have inherited this case and I am familiar with it so again,

18    you may proceed and I don't think I need you to walk through

19    it.  But I'm interested and happy to hear from you today.

20    You may proceed.

21         MR. LYNCH:  Okay, Your Honor.  I would start by

22    providing some background as to who we, the litigants are,

23    and the path that has led us here today.  I will highlight

24    the basis for our complaint and end with our argument for

25    reopening the Chapter 11 case, and after that I would

1   appreciate the opposing side's objection and I would like an

2   opportunity to rebut their objection.

3          I haven't had an opportunity to submit a reply to

4   their objection in writing, unfortunately.  You know, it's

5   just -- some days there's just not enough time for me pro se

6   to have achieved that.

7          Your Honor, I'm appearing here as I said, first

8   stated, on behalf of me and my wife Candice via telephone

9   from my home in Miami, Florida, a home I first moved to as a

10  10-year-old child with my mother, father, two brothers, two

11  sisters.  A home I've lived in until the day I married my

12  wife, August 16th, 1986.

13         My wife, who I met shortly after moving into this

14  home, she lived in a house that was one street over and

15  almost directly behind my house.  As a matter of fact, her

16  mother still lives in that house over 50 years later.

17  Eventually, we purchased a home for my parents, moving back

18  into the house in 1998 with our three older children, Nikki,

19  Vicki, and Scott.

20         Subsequently, three younger children were born,

21  Angela, William, Grace.  My wife and I currently reside in

22  the home with Angela and Grace.  It's truly been a lifelong

23  family home and (indiscernible).  Unfortunately Your Honor,

24  like many people, after the financial calamities that

25  occurred in 2007, 2008, we were set back financially and

1    eventually ended up having to file bankruptcy.

2          So prior to the bankruptcy, on June 2nd, 2004, we

3    refinanced with purchase-money mortgages to buy the home

4    from my parents, and I executed a promissory note in favor

5    of New Century Mortgage.  My wife and I together as husband

6    and wife executed a mortgage to temporarily (indiscernible)

7    also in favor of New Century Mortgage.

8          On or about August of 2004, GMAC Mortgage Corp

9    claimed the note had been transferred to it and that we can

10   -- we would begin making monthly payments to them.  For the

11   next eight and a half years, we were under the erroneous

12   belief that GMAC was the owner of the note and the mortgage.

13         So on July 24th, 2012, when we filed a petition

14   under 11 USC Chapter 7 in the bankruptcy court of the

15   Southern District of Florida, we scheduled GMAC as the

16   secured creditor pursuant to the note in the mortgage and

17   indicated our intention to retain the Miami property as our

18   primary residence and continue to pay the monthly mortgage

19   to GMAC.

20         However, on February 19, 2013, Deutsche Bank

21   National Trust company, as trustee for the New Century Home

22   Equity Loan Trust series 2004A Asset Backed Pass-through

23   Certificates, series 2004A which I refer to as the

24   securitized trust, through counsel filed a notice for

25   appearance in request for service in our bankruptcy case

1    claiming to be the secured creditor pursuant to the note in

2    the mortgage.

3            So at that point, never having heard of Deutsche

4    Bank or the securitized trust or their claims, we filed a

5    motion to compel production of documents that would you

6    know, verify the claims, the copies of the note, assignments

7    of mortgage.  Under relevant Florida law, as an issue of the

8    note I'm obligated to pay the note according to a its terms

9    at the time it was issued.

10           The obligation is owed to the person or

11   (indiscernible) enforce the note.  Which is the holder of

12   the note or a non-holder of the instrument with the rights

13   of a holder.  And that's at 673-4121 and that's at 673-3011.

14           Under Florida law because New Century is the payee

15   on the note and it is not endorsed to enforce it, Deutsche

16   Bank was required to prove with admissible evidence

17   possession of the original note and a complete chain of

18   sales transactions of the note leading from the holder, New

19   Century, to the securitized trust to enjoy the right to

20   enforce it as a non-holder with the rights of a holder.

21           Between March 2013 and 2014, we repeatedly tried

22   to elicit the necessary proof from Deutsche Bank, both

23   outside of court with written requests and verbal

24   communications and inside a court with motions and through

25   an adversarial complaint against Deutsche Bank and others.

1          Around that time, OCWEN Servicing appeared and

2    said that GMAC had sold the servicing rights to the loan to

3    them.  So the complaint was against Deutsche Bank and OCWEN.

4    And actually I think the original loan was also against

5    GMAC.  And that's 13-01712 in the Southern District of

6    Florida bankruptcy.

7          So eventually in September of 2014, I got the

8    Florida bankruptcy court to issue an order compelling the

9    Florida defendants to produce copies of all assignments of

10   mortgage related to the mortgage and they produced none at

11   that time.

12         So having you know, for two years tried to get

13   them to prove their right to enforce the note of the

14   mortgage, and a failure of any proof -- I mean all they had

15   was an unendorsed note and no assignments and so we, the

16   litigants, with our bankruptcy still pending we amended our

17   Chapter 7 petition disputing Deutsche Bank client to the be

18   secured creditor and indicated our intent to retain the

19   property and have their claim disallowed under 11 USC

20   502(d)1.

21         On October 23rd, 2014, we filed an AP complaint,

22   it's 5014-01786, objecting to their proof of claim and

23   seeking a declaratory judgment that, pursuant to 11 USC

24   502(b)1, the Deutsche Bank claim was disallowed, was

25   unenforceable under Florida law and universal commercial

1    code.

2              Over the course of the 48 months subsequent to

3    filing the notice of appearance in our bankruptcy case,

4    given many opportunities to produce evidence that is

5    sufficient under Florida law and UCC to prove their claim on

6    the entitlement to enforce the note and mortgage, the

7    Florida defendants utterly failed.

8              And then finally at the eleventh hour, they filed

9    a motion for summary judgment.  And the motion for summary

10   judgment included three documents that are pertinent to this

11   hearing, which is the affidavit taken of Donna Walker, I'm

12   sure Your Honor is familiar with Ms. Walker.

13             THE COURT:  I am familiar.

14             MR. LYNCH:  She was retained as a consultant and a

15   custodian of record.  And a limited power of attorney

16   executed by Mr. Jacobs and an allonge to the note executed

17   by Deutsche Bank pursuant to the power of attorney.  The

18   crux of their motion was the Walker affidavit.  She attested

19   that she was retained by Mr. Jacobs as the custodian of the

20   records and as a consultant on related matters.

21             Relevant parts of her affidavit are

22   unsubstantiated hearsay statements related to the content of

23   alleged NC debtor records and also the alleged actions of

24   New Century Mortgage Securities, which importantly, Your

25   Honor, is an unrelated third party.  It's not part of the

1    New Century bankruptcy.  And she alleges that the note --

2    that New Century sold the note to NC Cap which then sold the

3    note to New Century Mortgage Securities which then sold it

4    to the securitized trust.

5              Over -- due to (indiscernible) raised objection

6    that the Walker affidavit is unsubstantiated, inadmissible

7    hearsay, the Florida bankruptcy court admitted in their

8    federal rules of evidence 803 6, the business records, et

9    cetera.  Even though neither originals or copies of the

10   alleged business records have ever been submitted to the

11   Florida Court or provided to the plaintiffs.

12             And I reference you know, the various filings

13   within the court for that.  The Walker affidavit and the LPO

14   state that there was limited power of attorney, are the

15   basis of the Florida bankruptcy court's order.  Granted

16   summary judgment for Deutsche Bank but against the movement.

17             And in this order the court states that the duly-

18   filed Walker affidavit persuades this court to grant summary

19   judgment.  Also stating quote, the Walker affidavit attested

20   to two facts.  And I paraphrase the first fact being that

21   the loan and a note were transferred to the securitized

22   trust, and second that the LPOA, the limited power of

23   attorney, is authorized by the orders of the Delaware

24   bankruptcy court the governing terms of the trust.

25             THE COURT:  Mr. Lynch, Mr. Lynch, this is Judge

1    Shannon.  I have a question.  And I don't mean to interrupt,

2    but I want to make sure that I at least get this question

3    out.  You can answer it right now or you can answer it at an

4    appropriate time in your presentation.

5         But I think one of the points that's made by the

6    trust is your -- your request is kind of asking me to be an

7    appellate court to what was ruled in Florida, and I

8    understand from the papers, I've had a chance to look at all

9    of the exhibits as well as your submissions, is that there

10   was a hearing.

11        I understand you have issues with the sufficiency

12   of the Walker affidavit for purposes of what it stands for

13   or whether it's admissible or whether it proves anything.

14   But what I think I'm going to hear from the trust is a court

15   with jurisdiction made these rulings, heard these arguments,

16   and ruled on the matter, and I think what they're going to

17   say is Judge Shannon, you don't have the ability to reverse

18   what their finding is.

19        So again you can either address that question now

20   and I know that you're going to get to it because it's part

21   of the back and forth between the parties, or you can

22   address it at an appropriate time in your presentation.

23        MR. LYNCH:  Well, Your Honor, I would just say

24   that yes, you know, I do intend to address the issue.  But I

25   wholeheartedly disagree with their perspective, their claim.

1   You know, they make a big thrust in their objection about

2   collateral estoppel and res judicata.

3           But you know, those issues that they've raised and

4   what they're saying as far as you know, Court supported

5   (noise) I'm sorry, I apologize, Your Honor.

6           THE COURT:  That's all right.

7           MR. LYNCH:  That the courts -- the appellate

8   courts have already ruled on these issues is just not the

9   case.  The issue before this court that I'm trying to point

10  to is the fact that, while -- if you just -- I'm almost

11  done.  Well, I'm not almost done.

12          THE COURT:  Yeah, that's fine.  You may proceed.

13          MR. LYNCH:  I do address that issue, I will

14  address that issue fully.  But as we go forward.

15          THE COURT:  That's fine.

16          MR. LYNCH:  So you know, that basically was the

17  key to the whole process, was that the Florida bankruptcy

18  court did, you know, accept the Walker affidavit and find

19  that the power of attorney was authorized by the Delaware

20  Bankruptcy Court.  So subsequent to the order they entered,

21  which was granting summary judgment for the opposing side, I

22  did appeal it.

23          I appealed it vigorously to the District Court, to

24  the Eleventh Circuit.  I did motions for rehearing, a motion

25  for rehearing in (indiscernible) and  filed cert to the

1    Supreme Court.  All this was denied, obviously.  Which left

2    me no recourse, no recourse to otherwise mitigate my

3    injuries and damages.

4              Now right there I would like to make a point that

5    in their objection, they take -- they point to that

6    paragraph where I you know, say that I have no other

7    recourse as some sort of admission that I have fully

8    litigated the issues presented here.

9              And no, that's not the case at all.  The point of

10   that paragraph is that you know, even though I was damaged

11   by what they did, if I had successfully appealed it and had

12   it reversed, at any point, those damages would have been

13   mitigated.  And minimal, I would have had really almost no

14   reason to come after the trust or the trustee because I

15   would have mitigated my damages.

16             But the fact is, I was unsuccessful.  And the

17   damages that were caused by the trustee and his actions you

18   know, they -- I have valid claims against him for those

19   damages.  And the fact that I tried to mitigate my damages

20   by pursuing those appeals, does not mitigate against this

21   motion, my complaint -- for reopening the case to hear my

22   complaint.

23             So then onto the basis for my complaint.  This is

24   how it relates to the interpretation -- as you say it --

25   inclination, consummation, execution, administration of the

1    modified plan on liquidating trust agreement and the

2    modified commercial code confirmation order.

3            As the motives -- I noted that the plaintiffs and

4    the complainants' plans for relief, lack of legal authority,

5    negligence, gross negligence, and intent to defraud.  Moving

6    to assert that Jacobs, essentially Liquidating Trust lacked

7    legal authority under the bankruptcy code, under the Uniform

8    Commercial Code, and paragraph 69 of the modified

9    confirmation order to execute any of the documents that --

10   identified in paragraph 69.

11           Upon the request of a party which is not the party

12   or agent thereof which purchased the note in the mortgage

13   from an NC debtor.  And here I would like to point out, you

14   know, as I do in paragraph 29, Deutsche Bank is neither the

15   party which purchased the note, the mortgage from an NC

16   debtor nor are they an agent thereof.

17           The securitized trust did not purchase the note

18   and the mortgage from an NC debtor.  And you know, there's a

19   reason why paragraph 69 reads in the way that it does.  It's

20   meant to conform with the Uniform Commercial Code and allow

21   you know, a creditor of the NC debtors to have some sort of

22   you know, opportunity to correct insufficiencies or anything

23   related to the transaction that occurred between them.

24           But the problem here that they have is that

25   Deutsche Bank -- neither Deutsche Bank nor the securitized

1    trust are a party that purchased the note and mortgage from

2    an NC debtor.  And you know, they also point to in their

3    objection that you know, it's litigating in their favor that

4    you know, it's three years later and all of the documents

5    have been destroyed.

6            And while it's true that all of the documents have

7    been destroyed, there is one document that exists that shows

8    that Deutsche Bank and the securitized trust are not a party

9    that could have purchased the note and the mortgage from an

10   NC debtor if in fact they purchased you know -- if in fact

11   it's included in the trust.  Which there's no evidence of

12   that either.

13           But the point is they lack legal authority to do

14   what they did.  The movements assert that Jacobs' position

15   as the liquidating trustee holds duties upon him to ensure

16   that his actions and the actions of all people and all

17   entities he contracted, his employer authorized to act on

18   behalf of this trust, complied with 11USC, the UCC, the

19   modified plan, the liquidating trust agreement, the MCO,

20   federal state rules of evidence.

21           So you know, paragraph 69, it has requirements,

22   there is supposed to be a written request.  It's not in the

23   motion but it would be in my complaint that the Florida

24   defendants admitted in discovery and this in response to

25   discovery, admitted that they didn't provide any evidence.

1           They didn't make a written request.  They in fact

2      say they called -- I'm assuming it was Mr. Indelicato,

3      because that's who they referred me to later, and discussed

4      it with him and then they called back and said yeah sure,

5      we'll give you the power of attorney.  So they didn't in any

6      way perform the duties that are you know, put on them in

7      paragraph 69.

8           I would also, Your Honor, like to take a step back

9      for just a second to paragraph 70 -- 28.  Movements assert

10     that Jacobs and the NCF Trust lacked legal authority under

11     the United States bankruptcy court.  And I didn't make this

12     citation in the motion, but I would like to cite -- direct

13     the court to White v. New Century Holding TRS Incorporated

14     450 Bankruptcy 504-509.

15           THE COURT:  Okay, I'm familiar with the opinion in

16     White.

17           MR. LYNCH:  Okay, and so in that opinion, the

18     trustee moved to dismiss for the claims for rescission, you

19     know, there were many claims. But they moved to dismiss the

20     claims for rescission of the mortgage and declaratory relief

21     for cancellation of the mortgage for subject matter -- or

22     lack of subject matter's jurisdiction by the court.

23           Because the loan was sold prior to the New Century

24     bankruptcy, the NC debtors had no interest in the loan.

25     Judge Carey agreed, dismissing the applicable counts in the

1   complaint, and he stated since the debtors transferred their

2   interest in the mortgage loan pre-petition, the debtors did

3   not, at the time of the bankruptcy filing, and do not now

4   have any interest in the note and hence the court is without

5   subject matter jurisdiction to order rescission or

6   cancellation of the mortgage loan now held by an unrelated

7   third party.

8           Two points there, Your Honor.  One, obviously the

9   trustee understands that if a loan was sold prior to the NC

10  debtors' bankruptcy petition, that the estate has no

11  interest in that loan to take any action to affect a

12  transfer of that loan.

13          Paragraph 69 authorizes them to you know, allow to

14  give a power of attorney to parties who actually purchased,

15  you know, were like I discussed, were the party that

16  actually purchased the loan, to affect corrective

17  endorsements or assignments.

18          But what happened here is -- and the reason that

19  it's important that that requirement of paragraph 69 is

20  adhered to, is so that exactly what happened here doesn't

21  happen, where you have a party who is sidestepping, you

22  know, all of the applicable laws and affecting a new

23  transfer, a completely new transfer from the New Century

24  estate or from New Century of a mortgage that they have no

25  interest in, the transfer.  So that's that.

1           And then like I said, the (indiscernible) that he

2    did not comply with, I have evidence you know, that says

3    that he did not comply with any of the requirements of

4    paragraph 69 and obviously he understood that if a loan is

5    transferred prior to the petition that they had no interest

6    in it.

7           So I believe he lacked legal authority, he's

8    negligent, he's grossly negligent in performing some of

9    these duties, when he executed the power of attorney, when

10   he authorized the offer to execute their affidavit.  Because

11   he knew that you know, they didn't have the power to do what

12   they were doing.  And this is the other thing, Your Honor,

13   in regards to the May 2016 motion to destroy records and the

14   order to destroy records that was entered.

15          So basically because he -- Walker executed her

16   affidavit in June, June 24th, and he executed the power of

17   attorney on July 7th.  So really within probably days or

18   weeks of dealing with that motion and order to destroy the

19   records, you know, knowing that they're about to destroy the

20   records, he has this entity coming to him, telling him that

21   they don't have anything.

22          They have -- you know, they allegedly have a note.

23   The note is unendorsed.  And the main issue in the court

24   case at the time was that they needed to prove chain of

25   title.  And so you know, what they're saying in the Walker

1    affidavit is yes, those records exist.

2            So at the same time he knows he's asking the court

3    to destroy records and it's also discussed in these orders

4    that you know, there's concern that some people still have

5    claims that they need access to, records, and those records

6    need to be preserved and not destroyed right away.

7            So you know, he had to have knowledge and an

8    understanding that perhaps, you know, it would be an issue.

9    You know, I don't see how he would in any way expect that I

10   would not object to this affidavit without the production of

11   those documents.  Because they had to know that the only

12   reason that Deutsche Bank and the securitized trust were

13   coming to them was because they didn't have those documents

14   and they needed them.

15           So I think that that's very telling, that, a, he

16   knows he doesn't have authority to affect a transfer or

17   execute the allonge himself, b, he knows they don't have any

18   documents.  He didn't require them to produce any evidence.

19   And he is, despite all that, allowing Ms. Walker to execute

20   this affidavit.

21           And unlike some of her other affidavits that I've

22   seen, you know, she doesn't even identify or describe what

23   documents she's talking about that allegedly transferred the

24   note and the mortgage.  And again, the affidavit, she

25   asserts actions about New Century Mortgage Securities, which

1    is not part of the bankruptcy.

2            She doesn't have access to their records, she

3    doesn't -- she's not a representative or an agent of New

4    Century Mortgage Securities.  She has no legal authority to

5    you know, make those allegations and statements.  And again,

6    Your Honor, I'm not asking this Court to overturn anything

7    that the Florida bankruptcy court or the appellate courts

8    did.

9            They -- you know, my primary issue with the Walker

10   affidavit, I didn't use the word not valid.  The first time

11   the word valid or validity came into this case was in the

12   Florida bankruptcy court's order.  My objection was simpler,

13   simple.

14           It's inadmissible hearsay under the rules unless

15   they produce the documents.  And you know, as far as -- as

16   part of my summary judgment, I also -- because I reached out

17   to Mr. Indelicato, the counsel for the Florida defendants.

18           He said -- claimed he didn't have Ms. Walker's

19   information, as contact information or anything.  And I --

20   he gave me Mr. Indelicato's name and number and I called and

21   I spoke to him, and you know, he basically told me he

22   refused to give me Walker's contact information because the

23   trust was closed, she was discharged, and they no longer

24   represent her.  And that all the records have been destroyed

25   anyway so there was nothing they could do.

1          And you know, again that really had nothing to do

2    with this case and what I'm asking the Court to do.  But I

3    just would like to highlight the fact that you know, it's

4    kind of hard to accept that a person in Mr. Jacobs'

5    position, and with his advice of counsel, and he's dealing

6    with this motion to destroy records, and the Court's order

7    even identified the fact that there are other concerned

8    parties that you know -- some records might need to be not

9    destroyed yet.

10          So he has all that going on and then here comes

11   Deutsche Bank saying oh, you know, we don't have these

12   records, we need these records, or you know, oh, and he just

13   -- he doesn't bother to secure the records?  In fact, and

14   finally on this subject, I refer the Court to Ms. Walker's

15   affidavit in support of the motion to destroy the records.

16          She goes through and describes all of the records

17   that they're seeking to destroy, various different exhibits

18   attached to her affidavit.  If you look at that affidavit

19   and you read through and you look at the exhibits, it's --

20   there's nothing there to suggest that they even had the type

21   of documentation that will be required or needed to support

22   her claims.

23          So I just, you know, again, my issue is he doesn't

24   have, you know -- in effect when he gave the power of

25   attorney to Deutsche Bank and they executed the allonge, as

1   the attorney in fact for the NCL Trust or next -- New

2   Century Mortgage, he allowed them to do something that they

3   didn't have the authority to allow Deutsche Bank to do.

4            THE COURT:  All right, Mr. Lynch, this is Judge

5   Shannon.  I have a question for you.  Just so that I

6   understand and can place this in the right framework.  If I

7   were to grant your motion and reopen the case to allow you

8   to file a complaint against Mr. Jacobs and to proceed, okay,

9   which is what you're asking for, right?

10           MR. LYNCH:  Yes, sir.

11           THE COURT:  Okay.  I think I want to understand,

12  what happens if you prevail in that suit?  If I let that

13  happen and say go ahead and sue Mr. Jacobs and then Mr.

14  Jacobs will come in and presumably be defendant and we'll

15  conduct a lawsuit and you will prove the allegations you've

16  made, that he took actions that he wasn't authorized to,

17  that he acted negligently et cetera, and you suffered.

18           What happens then?  Do you receive -- would you

19  receive damages on account of that?  Would you get some

20  ruling or judgment that you could return to Florida with to

21  demonstrate to the Florida court that the ruling --

22           MR. LYNCH:  Your Honor?

23           THE COURT:  Yes.

24           MR. LYNCH:  I apologize, I'm sorry I'm getting so

25  hung up on this part here.  But I address exactly everything

1   that you're saying more or less in my rebuttal.  But you

2   know, what I put in my motion was that obviously I want a

3   declaratory judgment declaring these documents void, because

4   he didn't have the legal authority to do it.

5          And that -- to execute those documents or

6   authorize the execution of the Walker affidavit or the

7   allonge and that issue was not litigated in the Florida

8   bankruptcy court.  Those claims were not litigated because

9   that wasn't the proper place to litigate those claims. This

10  court is.

11         Because exactly what happened in the Florida

12  bankruptcy court when they wrote their order, they deferred

13  to this court.  As far as this court authorized the power of

14  attorney, right?  And they did that because Mr. Jacobs, Ms.

15  Walker, made representations to, then, that court, that that

16  was the case.

17         And in reality, because that 69 of the Modified

18  Confirmation Order does not give them authority to do what

19  they did, and under the bankruptcy code they don't have the

20  authority to transfer something that they don't have an

21  interest in.

22         And what I ask for or I said I was going to ask

23  for was declaratory relief saying that those documents are

24  void, and compensatory damages and possibly punitive damages

25  and (indiscernible).

1              And yet, there is no doubt I would go back to the

2       Florida court with that declaratory judgment and say to them

3       hey, you ruled based on that court's order, and that court

4       says that the order wasn't really what they say it was.  So

5       yes, I'm not denying that I would go back to the court and

6       say that.

7              THE COURT:  Okay.

8              MR. LYNCH:  But also I intend, if you allow me to

9       reopen this case, shortly after I file my complaint, I'm

10      going to file a motion for an injunction against the Florida

11      defendants preventing them from using those documents for

12      any and all purposes until this issue is settled.

13             Because they've already filed a notice -- or sent

14      me a notice of intent to foreclose, which you know, is

15      obviously based on those documents in the Florida bankruptcy

16      court's judgment.  You know, and I would also argue, Your

17      Honor, that Mr. Jacobs is responsible for financial damages

18      in addition to, you know, what he did.

19             I'm -- I've already suffered financial damages,

20      and potentially this house could be taken from me based on

21      what he did.  And I promise you, Your Honor, I promise you,

22      that I'm not -- I didn't go into bankruptcy seeking to have

23      Deutsche Bank's claim disallowed.  I didn't know anything

24      about them.

25             And you know, I did go into bankruptcy seeking to

1    take advantage of the rules and put myself in the best

2    financial situation I could -- that's the purpose of the

3    bankruptcy, to allow honest people to get a fresh start.

4    And so when they appeared I didn't just run and file a

5    complaint against them.

6            No, I asked -- show me.  You know, I've never

7    heard of you before, who are you?  Show me.  And you know,

8    till the end they had -- they had their day in court, they

9    had four years to prove their case.  And they couldn't.

10   They failed.

11           And you know, and then Mr. Jacobs intervened and

12   did what he did, which he did not -- he did not have the

13   authority under the law or even the court's order, to do.

14   So and then -- I don't know, I think I'm getting --

15           THE COURT:  No, I think I understand your

16   arguments.  I'd like to hear from Mr. Indelicato.

17           MR. LYNCH:  Okay.

18           MR. INDELICATO:  Your Honor, for the record, Mark

19   Indelicato from Hahn & Hessen.  Your Honor, I know we have

20   included a voluminous batch of exhibits, but we did not

21   include a copy of the Confirmation Order.  Does Your Honor

22   need a copy of the Confirmation?

23           THE COURT:  Sure, you can hand it up.  Thank you.

24           MR. INDELICATO:  And just so the record is clear,

25   Your Honor, I have tabbed our paragraph 69 so it's easy for

1    the Court to get to, and I will refer to it in a moment.

2    Your Honor, let me start with -- as I started before with

3    saying I have been around New Century since it filed in

4    April of 2007.

5            And I'm not -- the issues that Mr. Lynch and his

6    family are facing are not lost on me.  Unfortunately, he is

7    not the first person who I've had to deal with that were

8    unfortunately losing their home in the New Century

9    bankruptcy proceeding.  But Your Honor, I think the Court

10   asked the right question and I think whether realizing it or

11   not, I think Mr. Lynch acknowledged the very points that we

12   make in our motion.

13           He has had the opportunity to litigate these

14   issues.  What he's seeking to do and as much admiration and

15   respect as I have for the Bankruptcy Court for the District

16   of Delaware, unfortunately Your Honor, you are not an

17   appellate court for the Supreme Court and their denial of

18   cert.

19           That was the last opportunity he had to litigate

20   these issues.  These issues were decided by the Florida

21   bankruptcy court, quite honestly Your Honor, the only court

22   that had jurisdiction to determine the validity of Deutsche

23   Bank's claim.  He brought it in the proper court and the

24   bankruptcy court determined based on the evidence presented

25   to him, to it, that this was a proper transfer.

1          Your Honor, I would direct the Court to page two

2    of the limited power of attorney, which was exhibit three to

3    our binder.  And you will notice on page two, the first full

4    paragraph, the limited power of attorney starts out by

5    saying the liquidating trust makes no representations,

6    warranties, or covenants to Deutsche Bank's regarding the

7    validity, legality, or enforceability of this limited power

8    of attorney, or any of the provisions hereof, or any

9    documented executed by Deutsche Bank's pursuant to this

10   limited power of attorney.

11          We understood at the time that we were executing

12   these limited powers of attorney that this court and the

13   courts in Delaware were not the appropriate forums to

14   determine whether or not the limited power of attorneys were

15   fully sufficient to effectuate the transfer.

16          We understood the way the law works regarding real

17   property Your Honor, that that was going to have to be

18   determined by the courts in the situs where the property was

19   located.  It would be the state law of each in jurisdiction

20   which would determine whether or not the transfer was

21   appropriate.

22          And so we were not asking at that point for this

23   court or this bankruptcy to opine as to whether or not this

24   limited power of attorney was going to be effective to

25   accomplish what the parties wanted it to accomplish.

1          Your Honor, the second thing that I will point out

2     is, as Mr. Lynch makes a good portion in his argument about

3     whether NC -- New Century Mortgage Securities was a debtor.

4     And I will admit, Your Honor, as I sit here today I don't

5     remember how New Century Mortgage Securities fit into the

6     hierarchy of New Century.

7          But what I can tell you is it's clear, and I don't

8     think it's disputed by anybody, that the mortgage was

9     originated by New Century Mortgage Corp, which was the

10    debtor.  It was transferred to New Century Capital Corp,

11    which was a debtor.  And Your Honor, as we have gone through

12    numerous times in these proceedings as related to the issues

13    with pro se borrowers, there were a lot of the loans that

14    went into securitizations.

15         It could have been, and again, I don't stand here

16    today remembering exactly that New Century Mortgage

17    Securities was a conduit, which was wholly owned by one of

18    the debtor subsidiaries, and as a result it was part of the

19    process under which the loans were transferred to the

20    securitization trust.

21         If you -- if the Court will recall, from this case

22    and others, the process for securitizing the home mortgages

23    was a cumbersome, laborious process that had a lot of steps

24    involved in the process, and not the least of which was

25    going from New Century Mortgage Corp to New Century Cap to

1    New Century Securities to the securitization trust.

2           So I believe Your Honor, these definitely fall

3    under the general authority that's provided for in paragraph

4    69 where it says -- and additionally with respect to

5    mortgage loans purchased from one or more of the debtors,

6    prior to or subsequent to the petition date.

7           So this acknowledged that we were going to be

8    entering into these documents for mortgages that were sold

9    prior to the petition date, even though New Century was not

10   the then-existing owner of the mortgage, but because of the

11   way mirrors worked and the mortgage industry was -- the

12   state it was in in 2007, 2008, and 2009, and there were many

13   loans that were not endorsed -- that this was needed to

14   complete the documentation.

15          There's no question that we knew some of the

16   documentation needed to be completed.  And that's quite

17   honestly why, Your Honor, if you will recall, this case was

18   confirmed in 2008 and it went effective in 2008.

19          It did not close for another eight years.  And it

20   did not close -- not only were we liquidating assets, but

21   that happened in two or three years.  The remaining five

22   years, Your Honor, was assisting the borrowers, was

23   assisting in the litigation.  We were the repository of the

24   information, so we did not take lightly -- and Mr. Jacobs

25   did not take his responsibility lightly.

1          He could have closed his cases years before he

2     intended to and said here, we're making a distribution,

3     we're destroying the records.  He didn't do that, Your

4     Honor.  And in fact, when we ultimately destroyed the

5     records, we made sure there was a process in place in which

6     parties who needed to get information from the trust had an

7     opportunity to do it.

8          Your Honor, there are financial institutions that

9     spent hundreds of thousands of dollars copying documents

10    from the New Century trust because they needed that

11    information, because it was -- we were the easiest

12    repository.

13         They acknowledged, or at least they acknowledged

14    to us, that we were only giving them copies.  We had no

15    originals.  The originals were at the custodians.  So to the

16    extent they needed them to deal with issues that were coming

17    up in state courts throughout the country, they paid us to

18    make -- give them copies.

19         But we made all of that information to borrowers

20    just for requesting it.  We made -- we would get a request

21    from the borrower, they would give us the approximate date

22    of the loan, they would give us the address, we'd look it

23    up, we'd make a CD and send it to them of all of the

24    documents.

25         Not only the mortgage and the note, we'd send them

1   copies of the purchase and service agreement, the mortgaging

2   service agreement, whatever we had.  To the extent we knew

3   who the servicer was or when it was transferred, we sent

4   that information.  We compiled as much information as we

5   could give to the borrowers and sent it to them.

6         But Your Honor, in 2016 there came a point and

7   time where we could no longer keep the estate open in order

8   to deal with all of the borrower requests.  And that's when

9   we came to the court, we set up the final destruction order,

10  and we closed the case in September of 2016.

11        Your Honor, I reiterate what I said before with

12  respect to the Johnson case.  There is no course for

13  reopening this case, and again I think the Court hit the

14  nail on the head.  Really what they're looking for is

15  they're looking for a determination that the Walker

16  affidavit does not say what the Florida bankruptcy court

17  says, or it's not sufficient or it's hearsay.

18        Again those are not the province of this court.

19  The court has no jurisdiction to determine whether or not

20  the Walker affidavit in -- used in the Florida bankruptcy

21  proceeding objecting to claim is valid.  Those are the

22  issues that should have been raised before the Florida

23  bankruptcy court, not before this court.

24        THE COURT:  Let me ask a specific question then.

25  Assuming that you're correct, that I can't make rulings that

1    would impact what the Florida court's authority ruled and

2    decided, one of the reasons I asked Mr. Lynch the questions

3    that I asked was if his argument is that the -- that Mr.

4    Jacobs erred, failed in his duties, didn't comply, acted

5    negligently, irresponsibly, et cetera, is that precluded?

6           He can say look, you know, you never should have

7    let her do this, you should have looked at it, this was all

8    wrong, I understand that it was issued and it was used and

9    considered by another court but it was negligently issued,

10   fraudulently, falsely issued.  Is there a cause of action

11   there that would survive, that would not be subject to the

12   judge -- the Florida courts have already ruled this.

13          Florida courts haven't said anything about Mr.

14   Jacobs' conduct or behavior or performance.  We can debate

15   whether or not he has -- there are any duties that were owed

16   to Mr. Lynch that would be actionable, that's a separate

17   discussion.

18          But I get -- I understand the argument clearly

19   that says look, Shannon, you cannot reverse the Eleventh

20   Circuit or the Florida court, they made their rulings, you

21   don't get to tell them that it's -- that they've erred and

22   admitted hearsay.  I understand that argument, I understand

23   Mr. Lynch's response.

24          But I think a narrower question is, is there a

25   cause of action that's articulated against Mr. Jacobs that I

1    should permit to proceed?

2            MR. INDELICATO:  Your Honor, that is actually the

3    very reason I'm standing before Your Honor today.  If the

4    only issue that I was going to deal with, with the motion to

5    reopen the case -- quite honestly I felt that the integrity

6    of the finality of the order closing the case needed to be

7    protected.

8            But more importantly, I felt the reputation not

9    only of Mr. Jacobs but of myself and the integrity of this

10   Court needed to be protected.  And that's why we're here

11   today, Your Honor.  In fact, Mr. Jacobs not only followed

12   the letter of the law, he made sure that everything was

13   done.

14           So Your Honor, if in fact a valid claim existed I

15   would argue that it's past the statute of limitations.  This

16   case was closed in 2016.  Here we are in 2019 so I believe

17   it's past the statute of limitations.  But putting that to

18   the side Your Honor, I believe the allegations against Mr.

19   Jacobs are frivolous.

20           I believe Mr. Jacobs did what the order required,

21   the order provided that he was to give this information.  In

22   fact, there is a requirement that as long as it -- with the

23   expense of the requesting party, Mr. Jacobs was required to

24   give this information.  It wasn't subjective.

25           Mr. Jacobs couldn't say I was giving it to

1  Deutsche Bank and I wasn't giving it to Citibank.  He was

2  required to give this information.  That was a compromise

3  that was reached with the objecting parties, with this

4  Court's input, in order to ensure that the integrity of the

5  New Century mortgages would be upheld.  And that is why

6  we're here today, Your Honor.

7          And so I believe that Mr. Jacobs has done nothing

8  wrong.  I think he has complied with the orders.  I believe

9  the orders and the limited power of attorney put the onus

10 where it belongs, in the court where the litigation was

11 arising.

12         If the court in Florida believed that this was not

13 a proper affidavit, they didn't have to accept the

14 affidavit.  They didn't have to admit it.  They could have

15 sought to have Ms. Walker appear.  They could have

16 subpoenaed Ms. Walker.

17         And Mr. Lynch is correct.  I got dozens of calls

18 for people to get the personal address of Ms. Walker.  I was

19 not giving out her address.  There are other means of doing

20 that if they needed that to be done.  But I was not giving

21 it out to any borrower who requested that information.

22         Your Honor, I believe the motion to reopen the

23 case should denied.  I believe Mr. Jacobs did nothing wrong.

24 I think the limited power of attorney, when you look at the

25 language, indicates that he was giving this limited power of

1     attorney pursuant to paragraph 69.  He was not making any

2     representations or warranties regarding the validity.

3          That was to be determined by the state court or

4     other federal court in which any action related to the

5     mortgages was being held, and it is not within the purview

6     of this court to make that determination.  So I believe the

7     motion should be denied.

8          THE COURT:  Okay.  I understand.  Mr. Lynch, I'd

9     like your brief response.  I'm going to take this matter

10    under advisement and I will rule upon it by probably a

11    letter ruling to the parties.  But you've given me a lot of

12    materials that I need to make sure that I have my arms

13    around.

14         But I trust you could hear Mr. Indelicato's

15    response and again, I've heard the argument so you don't

16    need to list all of the arguments that you're making, but if

17    you've got anything specific in regards to his comments

18    you're welcome to make them now.

19         MR. LYNCH:  Okay, Your Honor, first of all, at the

20    first part of their response, their objection, in paragraph

21    one they list all the parties that are, you know, part of

22    the NC debtors, that are part of the bankruptcy.  And you

23    know, this is the case in most every document that I've seen

24    in other cases, in this case.  And you know, even in the

25    Florida bankruptcy court in some of the responses from the

1    other side.

2             New Century Mortgage Securities is not a party to

3    the bankruptcy, they're not an NC debtor.  And you know, the

4    fact that he wants to say -- you know, he said -- he's

5    admitting that they received all these requests.  And again

6    Your Honor, I go back to that motion to destroy.

7             I mean how do you -- how does he reconcile that he

8    had somebody coming to him saying we don't have the

9    documents we need?  Which again goes back to -- he says oh,

10   all of the documents were transferred to the custodian.

11   Well, then why don't they have them?

12            I submit it's because they didn't exist.  And I'm

13   not an unreasonable person.  If they had came to me in the

14   beginning, the Florida defendants in 2013, and said listen,

15   you know, we got to go talk to the trustee, da, da, da, and

16   then they came back to me with something that was

17   substantive, that probably would have been the end of it.

18            If they came back to me with similar to this, then

19   I would have had an opportunity to go to the trustee myself.

20   Here what happened was they didn't take advantage, they

21   didn't go to the liquidating trustee for three years.  And

22   Your Honor, well, Deutsche Bank is the trustee of the

23   securitized trust in you know, my -- for our bankruptcy

24   case.

25            And they're not in fact a creditor of the NC

1   debtors.  Deutsche Bank is a member of the creditors

2   submitted.  So Deutsche Bank knew full well that paragraph

3   69 existed and they could have went from the beginning and

4   got those documents if they existed.  But they didn't.

5           Why?  Because they knew number one, that they

6   don't exist.  And number two, that this paragraph 69 does

7   not authorize them to make the request and receive the power

8   of attorney because they are not the party that purchased

9   the loan from the NC debtors.

10          New Century Mortgage Securities may not have been

11  that party.  We don't know.  They say we sold the loans to

12  NC Cap, NC Cap sold it to New Century Mortgage Securities.

13  But they offer nothing, no proof.  And that's not really the

14  issue anymore, Your Honor.

15          I'm not asking you to overturn the Florida court

16  or the appellate courts.  Those issues were decided by the

17  court and I have to live with them.  I did take it all the

18  way to the Supreme Court and cert was denied.  So I have to

19  live with that.

20          But aside from that, I have valid claims against

21  the trustee for his negligence, gross negligence, and I

22  believe, his intent to defraud because I don't understand

23  how you can claim, as in the White case, that he understands

24  the proposition that if the loan was sold prior to the

25  bankruptcy, that there is no interest in transfer, but yet

1    he gives a power of attorney to an unrelated third party

2    allowing them to do whatever they want to do with it.

3           That's gross negligence and in fact I think he had

4    full knowledge of what he was doing.  And that makes it

5    intent to defraud.

6           THE COURT:  Okay.

7           MR. LYNCH:  I -- you know, I understand that this

8    is a lot to take in.  Oh, there is one other thing I wanted

9    to say to Your Honor.

10          THE COURT:  Sure.

11          MR. LYNCH:  And this is important.  You know, for

12   collateral estoppel, which is issued preclusion, okay, the

13   issues have to be the same.  You know, they want to say that

14   I litigated all these same issues that I want to litigate

15   with you.

16          But nowhere in any of these documents, and I think

17   they pretty much filed all of the documents with you as far

18   as the summary judgments and the cross motions and all of my

19   appeals.  Nowhere was the issue of the trustee's legal

20   authority to execute the power of attorney or authorize the

21   Walker affidavit or authorize the allonge.  Nowhere.

22          My argument was that the Walker affidavit was

23   inadmissible hearsay, okay.  I argued that the power of

24   attorney was irrelevant because they couldn't prove the

25   chain of transaction, the entire chain of transactions, and

1    which, if they could, would in fact make that document

2    irrelevant.  They wouldn't need it if they could prove the

3    chain.

4           And that the allonge was void ab initio.  I did

5    use those words, which they you know, they latch onto

6    because it's the same words.  I did use those words.  But I

7    was saying that all three of these documents were void ab

8    initio because they were executed after my petition date.

9           Nothing to do with the New Century and all of that

10   and the lack of legal authority.  But because they were

11   basically trying to transfer something after my petition

12   date of July 24th.  And the final thing, Your Honor, you

13   know, res judicata is claim preclusion and, you know, the

14   claims have to be the same.  They're not the same.

15          But what is the same is the argument.  When I

16   decided that this was what I needed to do.  I still have a

17   case pending in the Florida bankruptcy court.  It's not

18   related to enforcement of the loan or anything like that.

19   But I have limited resources, I am not capable of pursuing

20   two things, multiple courts, multiple issues.

21          So I went to the Florida court and I asked them

22   for a motion to stay.  I told them exactly what I was doing,

23   that I was going to the Delaware court and that I was going

24   to seek a judgment, declare a judgment that Mr. Jacobs

25   lacked legal authority to do what he did versus the power of

1    attorney, the Walker affidavit, and the allonge.

2           By extension, I told the Florida defendants the

3    same thing and they immediately filed a motion for an

4    injunction to prevent me from doing this.  And they made all

5    of the same arguments.  The motion is quite voluminous, just

6    like the one here.  In fact, some of the wording is so

7    similar it makes me think that they collaborated with each

8    other on this motion.

9           However, the point being, I informed the court of

10   what I was doing, they -- the Florida defendants filed the

11   motion for the injunction to prevent me from doing it based

12   on collateral estoppel and res judicata.  And the court, it

13   was set for a hearing, the hearing was held on October 28th,

14   and the Florida court denied it.  Outright.

15          So you know, what Mr. Jacobs did was wrong.  He

16   intervened, he should have abstained.  If he -- if those

17   documents really existed, he should have made sure they were

18   attached to that affidavit.  They didn't exist.  You can

19   look at the -- her motion -- her affidavit in support of the

20   motion.  And so yes.

21          And you know, there's many other things that they

22   bring up in their objection, which I wish, you know, that I

23   had had time to digest and provide a complete written

24   response.  But I would just end by saying, Your Honor, the

25   point here is that it is extremely inequitable to not allow

1   me to pursue these claims.

2           I mean, everything is pretty much self-evident.

3   And I think I'm right, and it would be a manifest injustice

4   just to even deny me the right to go forward and be heard.

5   In the end, if I am allowed to proceed, I believe I'll

6   prevail.  And you know, I don't think that there's any

7   equitable reason to deny my motion to reopen the case.

8   Thank you for your time, Your Honor.

9           THE COURT:  Thank you, Mr. Lynch.  Mr. Indelicato,

10  (indiscernible).

11          MR. INDELICATO:  Your Honor, I am not going to

12  respond to the unnecessary attacks against the trustee and

13  myself as to what we did or did not do.  But what I do want

14  to leave the Court with is just a point.  If you look at --

15  and I apologize to the Court for having to wade through all

16  of these papers.

17          THE COURT:  That's all right.

18          MR. INDELICATO:  But if you look at page nine of

19  the bankruptcy court decision, the court says at the top of

20  the page, even if the blank endorsement and the allonge were

21  somehow deemed invalid, defendants, meaning the Florida

22  defendants as referred to by Mr. Lynch, are still able to

23  enforce the note as non-holders in possession with the

24  rights of a holder.

25          And they're citing section 673.301(2) of the

Page 54

1    Florida statute.  In addition, the Eleventh Circuit, in

2    reviewing this case in their decision said the Delaware

3    bankruptcy court authorized the New Century Liquidating

4    Trust to execute any powers of attorney necessary to fully

5    effectuate the transfers of mortgage loans purchased from

6    the New Century debtors, including any required assignments

7    of mortgages.

8            Therefore, the allonge is not invalid simply

9    because New Century is -- no longer owned the loan at the

10   time the power of attorney was executed.  And Your Honor,

11   just to finalize, as I stand before Your Honor I'm not going

12   to represent that I know the corporate structure of New

13   Century as to what New Century Mortgage Servicing --

14   Securities was.

15           But I can tell you from my experience in the case

16   that they were generally non-debtor conduits pursuant in

17   which the mortgage loans were parked before the

18   securitization.  So it was part of the debtor, it was

19   probably 100 percent owned by a debtor corporation.

20           It may not have been the debtor because it would

21   have had no assets once all of the loans that were parked in

22   there were securitized.  Thank you, Your Honor.

23           THE COURT:  Okay, as I said I'm going to take the

24   matter under advisement.  With respect to the Johnson

25   matter, I'm going to deny the motion to reopen because I --

1   it seems to me that there is a path forward that would be

2   responsive.

3         But I'm not satisfied that there is a valid reason

4   to open -- to reopen the case as articulated in the Johnson

5   case given that the record seems to be undisputed that the

6   debtor does not possess documents that are really the

7   purpose of reopening under that motion.

8         Obviously the Lynch matter has been extensively

9   argued and I appreciate specifically Mr. Lynch, your

10  participation, and I'm glad you were able to participate

11  effectively by phone today.  I have all of the submissions.

12  I will take the matter under advisement and I will rule as

13  promptly as I can.  Are there any questions?

14        MR. INDELICATO:  No, thank you.  Thank you, Your

15  Honor, thank you for your time.

16        THE COURT:  All right, Mr. Lynch, do you -- Yes,

17  sir.

18        MR. LYNCH:  I would just like -- that you know, if

19  there is any doubt or you know, I have failed to address

20  something that you have concerns about, I would be more than

21  happy to provide supplemental, you know, filings with the

22  Court.

23        THE COURT:  I will -- here -- that's a fair point,

24  Mr. Lynch.  And this is not unusual with how I deal with

25  this.  I believe that I have enough information in front of

1    me today, but I will promise to -- and I will assure the

2    parties that, to the extent that I am working on these

3    issues, if I find that there are gaps or I don't understand

4    how this document relates to this result, you can be highly

5    confident that I will get you on the phone.

6            I have done it many times in the past and if I

7    need to do it today I won't hesitate to do it in this matter

8    as well.  So thank you for that reminder.

9            MR. LYNCH:  Your Honor, if I may, in one last

10   response to Mr. Indelicato's last statement.  The point

11   being -- the Florida bankruptcy court deferred to this

12   court, and that was the basis of everything.  And going

13   forward from there, the appeals courts, they affirmed the

14   bankruptcy court, that it was all the same.  It was

15   deferring to this Court's orders, and this Court did not

16   authorize Mr. Jacob to do what he did.

17           THE COURT:  I understand.

18           MR. LYNCH:  Thank you, Your Honor.

19           THE COURT:  Thank you, sir.  All right, we will

20   stand adjourned.  I appreciate everyone's time today, we're

21   adjourned.

22           MR. INDELICATO:  Thank you, Your Honor.

23           (Whereupon these proceedings were concluded at

24   3:09 PM)

25

1                          I N D E X

2

3                          RULINGS

4                                              Page        Line

5

6    Deny Motion to Reopen Johnson               54          25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 58

1                       C E R T I F I C A T I O N

2

3           I, Sonya Ledanski Hyde, certified that the foregoing

4       transcript is a true and accurate record of the proceedings.

5       Sonya                    Digitally signed by Sonya Ledanski
                                  Hyde
6       Ledanski Hyde             DN: cn=Sonya Ledanski Hyde, o, ou,
                                  email=digital@veritext.com, c=US
7                                 Date: 2020.03.05 16:04:11 -05'00'

8       Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date: March 5, 2020

| & | | |
|---|---|---|
| **&** 3:3 37:19 | | |

**0**

**07-10416** 1:6 2:1

**1**

**1** 20:20,24
**10** 17:10
**10/8/2019** 2:3
**100** 54:19
**11** 1:5 2:5 16:11
16:25 18:14 20:19
20:23
**11/7/2019** 2:10
**11501** 58:23
**11548** 2:2
**11553** 2:10
**11usc** 27:18
**12** 10:25
**13-01712** 20:5
**16th** 17:12
**18** 6:1
**19** 1:15 18:20
**1986** 17:12
**1998** 17:18
**1:35** 1:16
**1st** 6:4

**2**

**2** 53:25
**2004** 18:2,8
**2004a** 18:22,23
**2005** 6:4 10:13
**2006** 7:4 8:4
**2007** 17:25 38:4
41:12
**2008** 17:25 41:12
41:18,18
**2009** 41:12
**2012** 18:13
**2013** 18:20 19:21
48:14
**2014** 19:21 20:7
20:21

**2016** 6:2 7:9 10:1
30:13 43:6,10
45:16
**2019** 1:15 45:16
**2020** 58:25
**23rd** 20:21
**24th** 18:13 30:16
51:12
**25** 57:6
**28** 28:9
**28th** 52:13
**29** 26:14
**2nd** 18:2

**3**

**300** 58:22
**330** 58:21
**350** 6:17
**3:09** 1:16 56:24

**4**

**450** 28:14
**48** 21:2

**5**

**5** 58:25
**50** 17:16
**5014-01786** 20:22
**502** 20:20,24
**504-509** 28:14
**54** 57:6

**6**

**6** 22:8
**673-3011** 19:13
**673-4121** 19:13
**673.301** 53:25
**69** 26:8,10,19
27:21 28:7 29:13
29:19 30:4 35:17
37:25 41:4 47:1
49:3,6

**7**

**7** 18:14 20:17

**70** 28:9
**7th** 30:17

**8**

**803** 22:8
**824** 1:13

**a**

**ab** 51:4,7
**ability** 23:17
**able** 11:19,20
53:22 55:10
**abstained** 52:16
**accept** 24:18 33:4
46:13
**access** 8:15 31:5
32:2
**accomplish** 39:25
39:25
**account** 34:19
**accurate** 58:4
**achieved** 17:6
**acknowledged**
38:11 41:7 42:13
42:13
**act** 27:17
**acted** 34:17 44:4
**action** 29:11
44:10,25 47:4
**actionable** 44:16
**actions** 5:5 21:23
25:17 27:16,16
31:25 34:16
**addition** 11:7
36:18 54:1
**additional** 8:8
15:3
**additionally** 41:4
**address** 6:23
23:19,22,24 24:13
24:14 34:25 42:22
46:18,19 55:19
**adhered** 29:20
**adjourned** 56:20
56:21

**administer** 6:21
**administered** 1:7
**administration**
25:25
**admiration** 38:14
**admissible** 19:16
23:13
**admission** 25:7
**admit** 40:4 46:14
**admitted** 22:7
27:24,25 44:22
**admittedly** 14:17
**admitting** 48:5
**advantage** 37:1
48:20
**adversarial** 2:6
19:25
**advice** 33:5
**advisement** 47:10
54:24 55:12
**affect** 29:11,16
31:16
**affidavit** 21:11,18
21:21 22:6,13,18
22:19 23:12 24:18
30:10,16 31:1,10
31:20,24 32:10
33:15,18,18 35:6
43:16,20 46:13,14
50:21,22 52:1,18
52:19
**affidavits** 31:21
**affirmed** 56:13
**afternoon** 4:4
12:9 16:6
**agent** 26:12,16
32:3
**ago** 11:16
**agree** 14:4
**agreed** 28:25
**agreement** 26:1
27:19 43:1,2

**ahead** 5:17 34:13
**al** 1:8
**alan** 2:7 4:8
**allegations** 32:5
  34:15 45:18
**alleged** 6:6 21:23
  21:23 22:10
**allegedly** 30:22
  31:23
**alleges** 22:1
**allonge** 21:16
  31:17 33:25 35:7
  50:21 51:4 52:1
  53:20 54:8
**allow** 26:20 29:13
  34:3,7 36:8 37:3
  52:25
**allowed** 34:2 53:5
**allowing** 31:19
  50:2
**amended** 2:5
  20:16
**amount** 10:13
**angela** 17:21,22
**answer** 13:12 23:3
  23:3
**answers** 13:25
**anticipation**
  14:13
**anybody** 40:8
**anymore** 49:14
**anyway** 32:25
**ap** 20:21
**apologize** 24:5
  34:24 53:15
**appeal** 24:22
**appealed** 24:23
  25:11
**appeals** 25:20
  50:19 56:13
**appear** 46:15
**appearance** 18:25
  21:3

**appeared** 20:1
  37:4
**appearing** 17:7
**appellate** 23:7
  24:7 32:7 38:17
  49:16
**applicable** 28:25
  29:22
**appreciate** 16:13
  16:14 17:1 55:9
  56:20
**appropriate** 23:4
  23:22 39:13,21
**approximate**
  42:21
**april** 38:4
**argue** 36:16 45:15
**argued** 50:23 55:9
**argument** 16:24
  40:2 44:3,18,22
  47:15 50:22 51:15
**arguments** 23:15
  37:16 47:16 52:5
**arising** 46:11
**arms** 47:12
**articulated** 44:25
  55:4
**aside** 49:20
**asked** 5:6,6 8:7
  13:14 37:6 38:10
  44:2,3 51:21
**asking** 23:6 31:2
  32:6 33:2 34:9
  39:22 49:15
**assert** 26:6 27:14
  28:9
**asserts** 31:25
**asset** 18:22
**assets** 6:21 7:19
  41:20 54:21
**assignments** 19:6
  20:9,15 29:17
  54:6

**assisting** 41:22,23
**assuming** 28:2
  43:25
**assure** 16:14 56:1
**attached** 33:18
  52:18
**attacks** 53:12
**attested** 21:18
  22:19
**attorney** 21:15,17
  22:14,23 24:19
  28:5 29:14 30:9
  30:17 33:25 34:1
  35:14 39:2,4,8,10
  39:12,24 46:9,24
  47:1 49:8 50:1,20
  50:24 52:1 54:4
  54:10
**attorneys** 3:4,10
  39:14
**august** 17:12 18:8
**authority** 26:4,7
  27:13 28:10 30:7
  31:16 32:4 34:3
  35:4,18,20 37:13
  41:3 44:1 50:20
  51:10,25
**authorize** 35:6
  49:7 50:20,21
  56:16
**authorized** 13:15
  22:23 24:19 27:17
  30:10 34:16 35:13
  54:3
**authorizes** 29:13
**authorizing** 13:14
**available** 11:3,7

**b**

**b** 1:21 2:10 20:24
  31:17
**back** 4:5 10:8
  11:5,20 13:3
  14:22 17:17,25

23:21 28:4,8 36:1
  36:5 48:6,9,16,18
**backed** 18:22
**background**
  16:22
**bank** 18:20 19:4
  19:16,22,25 20:3
  20:17,24 21:17
  22:16 26:14,25,25
  27:8 31:12 33:11
  33:25 34:3 46:1
  48:22 49:1,2
**bankruptcy** 1:1
  1:12,23 2:5 11:21
  12:24 14:22 18:1
  18:2,14,25 20:6,8
  20:16 21:3 22:1,7
  22:15,24 24:17,20
  26:7 28:11,14,24
  29:3,10 32:1,7,12
  35:8,12,19 36:15
  36:22,25 37:3
  38:9,15,21,24
  39:23 43:16,20,23
  47:22,25 48:3,23
  49:25 51:17 53:19
  54:3 56:11,14
**bank's** 36:23
  38:23 39:6,9
**based** 6:25 11:8
  36:3,15,20 38:24
  52:11
**basically** 24:16
  30:15 32:21 51:11
**basis** 6:22 16:24
  22:15 25:23 56:12
**batch** 37:20
**beginning** 10:24
  10:25 48:14 49:3
**behalf** 4:7 17:8
  27:18
**behavior** 44:14

**belief**  11:8 18:12
**believe**  6:16,18,25
  8:4 10:22 11:9
  12:8 30:7 41:2
  45:16,18,20 46:7
  46:8,22,23 47:6
  49:22 53:5 55:25
**believed**  46:12
**belongs**  46:10
**best**  7:10 8:20
  37:1
**big**  24:1
**binder**  39:3
**blank**  3:9 7:2
  53:20
**bls**  1:6 2:1
**born**  17:20
**borrower**  9:9
  42:21 43:8 46:21
**borrowers**  9:10
  11:1,3 40:13
  41:22 42:19 43:5
**bother**  33:13
**brendan**  1:22
**brief**  47:9
**bring**  15:15 52:22
**broker**  13:6
**brothers**  17:10
**brought**  38:23
**bryan**  3:13 12:10
  12:10
**business**  22:8,10
**buy**  18:3

**c**

**c**  3:1 4:1 58:1,1
**calamities**  17:24
**called**  7:7 28:2,4
  32:20
**calls**  46:17
**cancellation**
  28:21 29:6
**candice**  2:10 17:8

**can't**  11:20 43:25
**cap**  22:2 40:25
  49:12,12
**capable**  51:19
**capacity**  2:8
**capital**  40:10
**carey**  16:16 28:25
**carries**  12:23
**case**  1:6 2:1,6 4:9
  4:18 5:4,5 6:8,18
  7:8,21 8:24 9:4,13
  10:23 11:2 14:19
  15:17 16:11,17,25
  18:25 21:3 24:9
  25:9,21 30:24
  32:11 33:2 34:7
  35:16 36:9 37:9
  40:21 41:17 43:10
  43:12,13 45:5,6
  45:16 46:23 47:23
  47:24 48:24 49:23
  51:17 53:7 54:2
  54:15 55:4,5
**cases**  42:1 47:24
**cause**  6:19 44:10
  44:25
**caused**  25:17
**caveats**  13:23
**cd**  42:23
**century**  1:6 2:7,9
  3:5,11 4:8 10:23
  16:8,11 18:5,7,21
  19:14,19 21:24
  22:1,2,3 28:13,23
  29:23,24 31:25
  32:4 34:2 38:3,8
  40:3,5,6,9,10,16
  40:25,25 41:1,9
  42:10 46:5 48:2
  49:10,12 51:9
  54:3,6,9,13,13
**cert**  24:25 38:18
  49:18

**certain**  5:5
**certainly**  5:23
**certificates**  18:23
**certified**  58:3
**cetera**  22:9 34:17
  44:5
**chain**  19:17 30:24
  50:25,25 51:3
**chance**  5:9 23:8
**chapter**  1:5 2:5
  16:11,25 18:14
  20:17
**charge**  9:8,9
**child**  17:10
**children**  17:18,20
**circuit**  24:24
  44:20 54:1
**citation**  28:12
**cite**  28:12
**citibank**  46:1
**citing**  53:25
**claim**  20:19,22,24
  21:5 23:25 36:23
  38:23 43:21 45:14
  49:23 51:13
**claimed**  18:9
  32:18
**claiming**  19:1
**claims**  19:4,6
  25:18 28:18,19,20
  31:5 33:22 35:8,9
  49:20 51:14 53:1
**clear**  37:24 40:7
**clearly**  44:18
**clerk**  4:2
**client**  15:18 20:17
**close**  41:19,20
**closed**  7:9 15:17
  15:17 32:23 42:1
  43:10 45:16
**closing**  45:6
**code**  21:1 26:2,7,8
  26:20 35:19

**cognizant**  15:16
**collaborated**  52:7
**collateral**  24:2
  50:12 52:12
**colleague**  16:16
**come**  6:11 10:8,14
  12:22,22 13:12
  25:14 34:14
**comes**  33:10
**coming**  30:20
  31:13 42:16 48:8
**comment**  9:22
**comments**  47:17
**commercial**  20:25
  26:2,8,20
**communication**
  15:1
**communications**
  19:24
**company**  18:21
**compel**  19:5
**compelling**  20:8
**compensatory**
  35:24
**compiled**  43:4
**complainants'**
  26:4
**complaint**  2:6
  16:24 19:25 20:3
  20:21 25:21,22,23
  27:23 29:1 34:8
  36:9 37:5
**complete**  19:17
  41:14 52:23
**completed**  41:16
**completely**  29:23
**complied**  27:18
  46:8
**comply**  30:2,3
  44:4
**compromise**  46:2
**concern**  10:2 13:6
  13:7 31:4

**concerned** 33:7
**concerns** 15:1,11
  55:20
**concluded** 56:23
**conduct** 34:15
  44:14
**conduit** 40:17
**conduits** 54:16
**confident** 56:5
**confirmation** 9:6
  26:2,9 35:18
  37:21,22
**confirmed** 41:18
**confirming** 14:20
**conform** 26:20
**considered** 44:9
**consultant** 21:14
  21:20
**consummation**
  25:25
**contact** 32:19,22
**content** 21:22
**continue** 10:19
  18:18
**continued** 10:15
**continuing** 10:18
**contracted** 27:17
**copies** 8:2,11,13
  9:6,10 19:6 20:9
  22:9 42:14,18
  43:1
**copy** 37:21,22
**copying** 42:9
**corp** 18:8 40:9,10
  40:25
**corporate** 54:12
**corporation** 1:7
  54:19
**correct** 26:22
  43:25 46:17
**corrective** 29:16
**correspondence**
  14:17 15:5

**couldn't** 37:9
  45:25 50:24
**counsel** 7:2,2
  13:18,24 18:24
  32:17 33:5
**country** 42:17
  58:21
**counts** 28:25
**course** 7:13,25
  8:24 9:4 21:2
  43:12
**court** 1:1,12 4:3,6
  4:13,24 5:2,16 6:9
  6:13 8:3,9,19 9:15
  9:19,21,24 11:13
  11:25 12:17,19,21
  12:23,24 13:5,9
  13:13,15 14:4,9
  15:25 16:2,6,13
  18:14 19:23,24
  20:8 21:13 22:7
  22:11,13,17,18,24
  22:25 23:7,14
  24:4,6,9,12,15,18
  24:20,23 25:1
  28:11,13,15,22
  29:4 30:23 31:2
  32:6,7 33:2,14
  34:4,11,21,23
  35:8,10,12,13,13
  35:15 36:2,3,5,7
  37:8,15,23 38:1,9
  38:15,17,17,21,21
  38:23,24 39:1,12
  39:23 40:21 43:9
  43:13,16,18,19,23
  43:23,24 44:9,20
  45:10 46:10,12
  47:3,4,6,8,25
  49:15,17,18 50:6
  50:10 51:17,21,23
  52:9,12,14 53:9
  53:14,15,17,19,19

54:3,23 55:16,22
  55:23 56:11,12,14
  56:15,17,19
**courts** 24:7,8 32:7
  39:13,18 42:17
  44:12,13 49:16
  51:20 56:13
**court's** 22:15
  32:12 33:6 36:3
  36:16 37:13 44:1
  46:4 56:15
**covenants** 39:6
**creditor** 18:16
  19:1 20:18 26:21
  48:25
**creditors** 49:1
**cross** 50:18
**crux** 21:18
**cumbersome**
  40:23
**current** 6:3
**currently** 6:5
  17:21
**custodian** 7:15,16
  8:16 21:15,19
  48:10
**custodians** 7:12
  42:15

## d

**d** 2:9 4:1 20:20
  57:1
**da** 48:15,15,15
**damaged** 25:10
**damages** 25:3,12
  25:15,17,19,19
  34:19 35:24,24
  36:17,19
**dana** 1:25
**data** 9:12
**date** 41:6,9 42:21
  51:8,12 58:25
**day** 17:11 37:8

**days** 17:5 30:17
**deal** 15:21 38:7
  42:16 43:8 45:4
  55:24
**dealing** 30:18
  33:5
**dealt** 9:1
**debate** 44:14
**debt** 6:11
**debtor** 6:20 13:14
  21:23 26:13,16,18
  27:2,10 40:3,10
  40:11,18 48:3
  54:16,18,19,20
  55:6
**debtors** 1:9 26:21
  28:24 29:1,2 41:5
  47:22 49:1,9 54:6
**debtors'** 29:10
**decided** 38:20
  44:2 49:16 51:16
**decision** 53:19
  54:2
**declaratory** 20:23
  28:20 35:3,23
  36:2
**declare** 51:24
**declaring** 35:3
**deemed** 53:21
**defendant** 34:14
**defendants** 20:9
  21:7 27:24 32:17
  36:11 48:14 52:2
  52:10 53:21,22
**defer** 12:11
**deferred** 35:12
  56:11
**deferring** 56:15
**definitely** 12:22
  12:24 41:2
**defraud** 26:5
  49:22 50:5

**delaware** 1:2,7,14
  22:23 24:19 38:16
  39:13 51:23 54:2
**demonstrate**
  34:21
**denial** 38:17
**denied** 6:17 25:1
  46:23 47:7 49:18
  52:14
**deny** 53:4,7 54:25
  57:6
**denying** 36:5
**describe** 31:22
**described** 11:22
**describes** 33:16
**despite** 31:19
**destroy** 30:13,14
  30:18,19 31:3
  33:6,15,17 48:6
**destroyed** 7:3,5
  8:18 9:3 11:6,10
  27:5,7 31:6 32:24
  33:9 42:4
**destroying** 42:3
**destruction** 6:1
  7:4,8,18 8:3,19,23
  9:2 11:11 13:14
  43:9
**determination**
  43:15 47:6
**determine** 7:3
  8:17 38:22 39:14
  39:20 43:19
**determined** 38:24
  39:18 47:3
**deutsche** 18:20
  19:3,15,22,25
  20:3,17,24 21:17
  22:16 26:14,25,25
  27:8 31:12 33:11
  33:25 34:3 36:23
  38:22 39:6,9 46:1
  48:22 49:1,2

**devoid** 6:22
**didn't** 12:6,22
  27:25 28:1,5,11
  30:11 31:13,18
  32:10,18 34:3
  35:4 36:22,23
  37:4 42:3 44:4
  46:13,14 48:12,20
  48:21 49:4 52:18
**different** 33:17
**differently** 4:15
**digest** 52:23
**diligence** 9:1
**direct** 28:12 39:1
**directly** 17:15
**disagree** 23:25
**disallowed** 20:19
  20:24 36:23
**discharged** 32:23
**discovery** 27:24
  27:25
**discussed** 28:3
  29:15 31:3
**discussion** 15:10
  44:17
**dismiss** 28:18,19
**dismissing** 28:25
**dispense** 16:11
**disputed** 40:8
**disputing** 20:17
**distribution** 42:2
**district** 1:2 18:15
  20:5 24:23 38:15
**docket** 2:2,10
**document** 7:4,7
  7:18 8:3,18,22 9:2
  11:11 27:7 47:23
  51:1 56:4
**documentation**
  6:8 7:22,23,24 8:8
  8:11,12,13 9:7
  10:4 33:21 41:14
  41:16

**documented** 39:9
**documents** 7:3
  9:3 13:15 14:19
  19:5 21:10 26:9
  27:4,6 31:11,13
  31:18,23 32:15
  35:3,5,23 36:11
  36:15 41:8 42:9
  42:24 48:9,10
  49:4 50:16,17
  51:7 52:17 55:6
**doesn't** 7:24
  15:14 29:20 31:16
  31:22 32:2,3
  33:13,23
**doing** 30:12 46:19
  50:4 51:22 52:4
  52:10,11
**dollars** 42:9
**donna** 21:11
**don't** 10:3,6,7,11
  12:4 15:4 16:18
  23:1,17 30:21
  31:9,17 33:11
  35:19,20 40:4,7
  40:15 44:21 47:15
  48:8,11 49:6,22
  53:6 56:3
**doubt** 36:1 55:19
**dozens** 46:17
**drusella** 2:2
**due** 8:25 22:5
**duly** 22:17
**duties** 27:15 28:6
  30:9 44:4,15

**e**

**e** 1:21,21 3:1,1 4:1
  4:1 57:1 58:1
**early** 12:9
**easiest** 42:11
**easy** 14:11 37:25
**ecro** 1:25

**effect** 33:24
**effective** 39:24
  41:18
**effectively** 15:19
  55:11
**effectuate** 39:15
  54:5
**effort** 9:13
**eight** 8:10 18:11
  41:19
**either** 4:14 5:21
  7:15 23:19 27:12
**electronic** 8:14
**eleventh** 21:8
  24:24 44:19 54:1
**elicit** 19:22
**email** 6:25 11:5,17
  11:23 12:1,10,11
  12:12,15 13:2,4,8
  13:17 14:1,11,13
  14:18,24 15:8,13
**emails** 13:21
**employer** 27:17
**ended** 18:1
**endorsed** 19:15
  41:13
**endorsement**
  53:20
**endorsements**
  29:17
**enforce** 19:11,15
  19:20 20:13 21:6
  53:23
**enforceability**
  39:7
**enforcement**
  51:18
**enjoy** 19:19
**ensure** 27:15 46:4
**entered** 7:8 8:4
  24:20 30:14
**entering** 41:8

entire 50:25
entities 27:17
entitlement 21:6
entity 30:20
equitable 53:7
equity 18:22
erred 44:4,21
erroneous 18:11
essentially 4:21
  5:4 11:17,22 12:4
  13:18 26:6
established 6:18
estate 7:19 29:10
  29:24 43:7
estoppel 24:2
  50:12 52:12
et 1:8 22:8 34:17
  44:5
eventually 17:17
  18:1 20:7
everyone's 56:20
evidence 19:16
  21:4 22:8 27:11
  27:20,25 30:2
  31:18 38:24
evident 53:2
exactly 12:15
  29:20 34:25 35:11
  40:16 51:22
execute 26:9
  30:10 31:17,19
  35:5 50:20 54:4
executed 18:4,6
  21:16,16 30:9,15
  30:16 33:25 39:9
  51:8 54:10
executing 39:11
execution 25:25
  35:6
exhibit 39:2
exhibits 23:9
  33:17,19 37:20

exist 31:1 48:12
  49:6 52:18
existed 45:14 49:3
  49:4 52:17
existing 41:10
exists 27:7
expect 5:20 31:9
expense 45:23
experience 54:15
expressed 15:12
extension 52:2
extensively 55:8
extent 7:21 8:16
  9:7,8 42:16 43:2
  56:2
extremely 52:25

**f**

f 1:21 58:1
facing 38:6
fact 15:16 17:15
  22:20 24:10 25:16
  25:19 27:10,10
  28:1 33:3,7,13
  34:1 42:4 45:11
  45:14,22 48:4,25
  50:3 51:1 52:6
facts 22:20
factual 6:22
failed 21:7 37:10
  44:4 55:19
failure 20:14
fair 55:23
fall 41:2
falsely 44:10
familiar 16:8,15
  16:17 21:12,13
  28:15
family 17:23 38:6
far 13:2 24:4
  32:15 35:13 50:17
father 17:10
favor 18:4,7 27:3

february 18:20
federal 22:8 27:20
  47:4
feel 15:9
feels 4:14
felt 45:5,8
figure 15:15
file 18:1 34:8 36:9
  36:10 37:4
filed 2:1,2,9,10
  4:17 5:18 6:16
  18:13,24 19:4
  20:21 21:8 22:18
  24:25 36:13 38:3
  50:17 52:3,10
files 8:2,14,15
filing 2:6 21:3
  29:3
filings 22:12
  55:21
final 43:9 51:12
finality 45:6
finalize 54:11
finally 21:8 33:14
financial 8:6,23
  9:7 17:24 36:17
  36:19 37:2 42:8
financially 17:25
find 24:18 56:3
finding 23:18
fine 4:13 5:14,16
  12:23 16:13 24:12
  24:15
first 4:17,19 5:17
  6:15 17:7,9 22:20
  32:10 38:7 39:3
  47:19,20
fit 40:5
five 41:21
florida 17:9 18:15
  19:7,14 20:6,8,9
  20:25 21:5,7 22:7
  22:11,15 23:7

24:17 27:23 32:7
  32:12,17 34:20,21
  35:7,11 36:2,10
  36:15 38:20 43:16
  43:20,22 44:1,12
  44:13,20 46:12
  47:25 48:14 49:15
  51:17,21 52:2,10
  52:14 53:21 54:1
  56:11
folks 5:7
followed 45:11
foreclose 36:14
foreclosure 8:7
foregoing 58:3
form 12:25 14:18
formal 13:21
former 3:4,10 4:8
  13:18
forth 23:21
forums 39:13
forward 24:14
  53:4 55:1 56:13
forwarded 7:1
  12:25
four 37:9
framework 34:6
frankly 14:17
  15:17
fraudulently
  44:10
free 9:9
fresh 37:3
frivolous 45:19
front 55:25
full 5:22,22 39:3
  49:2 50:4
fully 5:21 24:14
  25:7 39:15 54:4
further 15:10
futility 9:13

**g**

g   4:1
gaps   56:3
general   41:3
generally   54:16
getting   14:22
  34:24 37:14
give   4:12 10:20
  13:10 28:5 29:14
  32:22 35:18 42:18
  42:21,22 43:5
  45:21,24 46:2
given   21:4 47:11
  55:5
gives   50:1
giving   42:14
  45:25 46:1,19,20
  46:25
glad   55:10
gmac   18:8,12,15
  18:19 20:2,5
go   5:15,16 11:1,20
  13:2,3 24:14
  34:13 36:1,5,22
  36:25 48:6,15,19
  48:21 53:4
goes   11:19 33:16
  48:9
going   10:9,19
  13:3,9 14:13 15:8
  15:9,10,14 23:14
  23:16,20 33:10
  35:22 36:10 39:17
  39:24 40:25 41:7
  45:4 47:9 51:23
  51:23 53:11 54:11
  54:23,25 56:12
good   4:4,24 16:2,6
  40:2
governing   22:24
grace   17:21,22
grant   14:2 22:18
  34:7

granted   6:1 22:15
granting   24:21
great   15:3
gross   26:5 49:21
  50:3
grossly   30:8

**h**

hahn   3:3 37:19
half   18:11
hall   3:13 12:10,11
  15:2
hand   37:23
happen   14:10
  29:21 34:13
happened   29:18
  29:20 35:11 41:21
  48:20
happens   34:12,18
happy   5:15,23
  13:21 16:19 55:21
hard   33:4
haven't   12:5,14
  17:3 44:13
head   13:20 43:14
hear   4:11,15,19
  5:18,19,21,23
  9:16 15:22 16:2
  16:19 23:14 25:21
  37:16 47:14
heard   11:15 19:3
  23:15 37:7 47:15
  53:4
hearing   2:1,5 5:25
  15:15 21:11 23:10
  52:13,13
hearsay   21:22
  22:7 32:14 43:17
  44:22 50:23
held   8:16 29:6
  47:5 52:13
help   14:16,20
hereof   39:8

here's   14:5,9,23
hesitate   56:7
hessen   3:3 37:19
hey   6:10 10:18
  36:3
he's   30:7,8 31:2
  33:5 38:14 48:4
hi   16:4
hierarchy   40:6
highlight   16:23
  33:3
highly   56:4
history   16:10
hit   13:20 43:13
holder   19:11,12
  19:13,18,20,20
  53:24
holders   53:23
holding   28:13
holdings   1:6
holds   27:15
home   12:6 17:9,9
  17:11,14,17,22,23
  18:3,21 38:8
  40:22
hon   1:22
honest   37:3
honestly   38:21
  41:17 45:5
honor   4:4,7 5:14
  5:25 6:15,16,24
  7:6 8:12 9:13
  10:22,24 11:24
  12:21 13:19 15:24
  16:4,7,21 17:7,23
  21:12,25 23:23
  24:5 28:8 29:8
  30:12 32:6 34:22
  36:17,21 37:18,19
  37:21,25 38:2,9
  38:16,21 39:1,17
  40:1,4,11 41:2,17
  41:22 42:4,8 43:6

43:11 45:2,3,11
  45:14,18 46:6,22
  47:19 48:6,22
  49:14 50:9 51:12
  52:24 53:8,11
  54:10,11,22 55:15
  56:9,18,22
hour   21:8
house   17:14,15,16
  17:18 36:20
hundreds   42:9
hung   34:25
husband   18:5
hyde   2:25 58:3,8

**i**

identified   12:25
  13:16 26:10 33:7
identify   31:22
immediately   52:3
impact   44:1
important   29:19
  50:11
importantly
  21:24 45:8
impossibility   7:22
inadmissible   22:6
  32:14 50:23
inclination   25:25
include   37:21
included   21:10
  27:11 37:20
including   54:6
incorporated
  28:13
indelicato   3:7 4:3
  4:4,7 5:14,19 6:13
  6:15 9:16,17,25
  10:22 11:13,22,24
  12:8 13:8,16,19
  14:11,24 15:2,12
  15:18,24 28:2
  32:17 37:16,18,19
  37:24 45:2 53:9

53:11,18 55:14
56:22
**indelicato's** 32:20
47:14 56:10
**indicated** 12:16
18:17 20:18
**indicates** 46:25
**indicating** 12:11
12:12
**indiscernible** 5:12
10:1 16:10 17:23
18:6 19:11 22:5
24:25 30:1 35:25
53:10
**industry** 41:11
**inequitable** 52:25
**informal** 14:2
**information** 11:8
32:19,19,22 41:24
42:6,11,19 43:4,4
45:21,24 46:2,21
55:25
**informed** 52:9
**inherited** 16:17
**initio** 51:4,8
**injunction** 36:10
52:4,11
**injuries** 25:3
**injustice** 53:3
**input** 46:4
**inquiry** 11:5
**inside** 19:24
**institution** 9:8
**institutions** 8:6,23
42:8
**instrument** 19:12
**insufficiencies**
26:22
**integrity** 45:5,9
46:4
**intend** 23:24 36:8
**intended** 42:2

**intent** 20:18 26:5
36:14 49:22 50:5
**intention** 18:17
**interest** 28:24
29:2,4,11,25 30:5
35:21 49:25
**interested** 16:19
**interpretation**
25:24
**interrupt** 12:6
23:1
**intervened** 37:11
52:16
**invalid** 53:21 54:8
**involved** 6:5
40:24
**irrelevant** 50:24
51:2
**irresponsibly**
44:5
**issue** 15:5 19:7
20:8 23:24 24:9
24:13,14 30:23
31:8 32:9 33:23
35:7 36:12 45:4
49:14 50:19
**issued** 19:9 44:8,9
44:10 50:12
**issues** 23:11 24:3
24:8 25:8 38:5,14
38:20,20 40:12
42:16 43:22 49:16
50:13,14 51:20
56:3
**it's** 10:5,11,18,19
13:2 15:8,17 17:4
17:22 20:22 21:25
23:13,20 26:19
27:3,4,6,11,22
29:19 31:3 32:14
33:3,19 37:25
40:7,8 43:17,17
44:21 45:15,17

48:12 51:6,17
**i'd** 6:13 9:19 14:5
14:23 37:16 47:8
**i'll** 5:18,19 15:21
53:5
**i'm** 4:25 5:2,14
7:14 13:3,11,12
14:21 16:19 17:7
19:8 21:11 23:14
24:5,9,10,11 28:2
28:15 32:6 33:2
34:24,24 36:5,9
36:19,22 37:14
38:5 45:3 47:9
48:12 49:15 53:3
54:11,23,25 55:3
55:10
**i've** 7:6 10:25
12:15 13:20 17:11
23:8 31:21 36:19
37:6 38:7 47:15
47:23

**j**

**j** 3:13
**jacob** 56:16
**jacobs** 2:7 4:8
16:9 21:16,19
26:6 28:10 34:8
34:13,14 35:14
36:17 37:11 41:24
44:4,25 45:9,11
45:19,20,23,25
46:7,23 51:24
52:15
**jacobs'** 27:14 33:4
44:14
**jerry** 2:2 4:23 6:2
9:23
**johnson** 2:2,2 4:9
4:14,15,17,22,23
4:23,24 5:1,10,11
5:18,24,25 6:2,10
7:1 9:16,18,20,23

9:23,25 11:4,14
11:15,25 12:3,18
12:19,20 14:4,7
15:7,25 16:1
43:12 54:24 55:4
57:6
**johnsons** 4:20
6:16
**jointly** 1:7
**judge** 1:23 4:25
11:14 16:6,16
22:25 23:17 28:25
34:4 44:12
**judgment** 20:23
21:9,10 22:16,19
24:21 32:16 34:20
35:3 36:2,16
51:24,24
**judgments** 50:18
**judicata** 24:2
51:13 52:12
**july** 18:13 30:17
51:12
**june** 18:2 30:16
30:16
**jurisdiction** 23:15
28:22 29:5 38:22
39:19 43:19

**k**

**keep** 43:7
**key** 24:17
**kind** 5:3 14:12
23:6 33:4
**knew** 30:11 41:15
43:2 49:2,5
**know** 10:12,18
11:6,8 12:1 13:15
16:15 17:4 19:6
20:12 22:12 23:20
23:24 24:1,3,4,16
24:18 25:6,10,18
26:14,18,21,22
27:2,3,4,10,21

28:6,19 29:13,15
29:22 30:2,11,19
30:22,25 31:4,7,8
31:9,11,22 32:5,9
32:15,21 33:1,3,8
33:11,12,23,24
35:2 36:14,16,18
36:23,25 37:6,7
37:11,14,19 44:6
47:21,23,24 48:3
48:4,15,23 49:11
50:7,11,13 51:5
51:13,13 52:15,21
52:22 53:6 54:12
55:18,19,21
**knowing**  30:19
**knowledge**  7:10
8:20 12:4 31:7
50:4
**known**  8:23
**knows**  31:2,16,17

**l**

**l**  1:22,25
**laborious**  40:23
**lack**  26:4 27:13
28:22 51:10
**lacked**  26:6 28:10
30:7 51:25
**language**  14:14
15:3 46:25
**latch**  51:5
**law**  19:7,14 20:25
21:5 37:13 39:16
39:19 45:12
**laws**  29:22
**lawsuit**  34:15
**lawyer**  5:6 14:14
14:15
**leading**  6:7 19:18
**leave**  15:20 53:14
**led**  16:23
**ledanski**  2:25 58:3
58:8

**left**  25:1
**legal**  26:4,7 27:13
28:10 30:7 32:4
35:4 50:19 51:10
51:25 58:20
**legality**  39:7
**legitimate**  13:7
**letter**  13:10,21,22
13:22 15:10 45:12
47:11
**letterhead**  12:25
13:23
**letters**  15:5
**letting**  11:6
**let's**  14:4
**lifelong**  17:22
**lightly**  41:24,25
**limitations**  45:15
45:17
**limited**  21:15
22:14,22 39:2,4,7
39:10,12,14,24
46:9,24,25 51:19
**line**  4:25 57:4
**lines**  12:1
**liquidating**  2:7,8
2:9 3:4,10 16:8,9
26:1,6 27:15,19
39:5 41:20 48:21
54:3
**liquidation**  3:5,11
**list**  47:16,21
**listen**  48:14
**litigants**  16:22
20:16
**litigate**  35:9 38:13
38:19 50:14
**litigated**  25:8 35:7
35:8 50:14
**litigating**  27:3
**litigation**  6:5,8
41:23 46:10

**little**  15:1
**live**  49:17,19
**lived**  17:11,14
**lives**  17:16
**llp**  3:3,9
**loan**  10:13 18:22
20:2,4 22:21
28:23,24 29:2,6,9
29:11,12,16 30:4
42:22 49:9,24
51:18 54:9
**loans**  7:11 40:13
40:19 41:5,13
49:11 54:5,17,21
**located**  39:19
**long**  11:2 15:17
45:22
**longer**  7:23 9:12
13:23 32:23 43:7
54:9
**look**  5:3 10:17
12:5 13:3 14:10
14:24,25 15:13
23:8 33:18,19
42:22 44:6,19
46:24 52:19 53:14
53:18
**looked**  44:7
**looking**  7:2 8:17
10:8 11:18 43:14
43:15
**losing**  38:8
**lost**  38:6
**lot**  10:18 14:13
40:13,23 47:11
50:8
**lpo**  22:13
**lpoa**  22:22
**lynch**  2:9,10 4:10
4:14,18 16:4,4,7
16:21 21:14 22:25
22:25 23:23 24:7
24:13,16 28:17

34:4,10,22,24
36:8 37:17 38:5
38:11 40:2 44:2
44:16 46:17 47:8
47:19 50:7,11
53:9,22 55:8,9,16
55:18,24 56:9,18
**lynches**  15:22
16:3
**lynch's**  44:23

**m**

**m**  2:7 4:8
**main**  30:23
**making**  16:14
18:10 42:2 47:1
47:16
**manifest**  53:3
**march**  19:21
58:25
**mark**  3:7 37:18
**market**  1:13
**married**  17:11
**materials**  47:12
**matter**  17:15
23:16 28:21 29:5
47:9 54:24,25
55:8,12 56:7
**matters**  21:20
**matter's**  28:22
**mco**  27:19
**mean**  7:24 12:6
13:11 15:8 20:14
23:1 48:7 53:2
**meaning**  53:21
**means**  46:19
**meant**  26:20
**measure**  10:20,21
12:21
**member**  6:6 49:1
**members**  10:3
**men**  10:23
**mention**  9:25

met  17:13
miami  17:9 18:17
michael  2:9 16:4
mineola  58:23
minimal  25:13
mirrors  41:11
mitigate  25:2,19
  25:20
mitigated  25:13
  25:15
modified  26:1,2,8
  27:19 35:17
moment  11:16
  15:22 38:1
money  18:3
monthly  18:10,18
months  9:2 21:2
moore  1:25
morass  11:1
morning  12:9
mortgage  6:3 8:6
  8:17 16:11 18:5,6
  18:7,8,12,16,18
  19:2,7 20:10,10
  20:14 21:6,24
  22:3 26:12,15,18
  27:1,9 28:20,21
  29:2,6,24 31:24
  31:25 32:4 34:2
  40:3,5,8,9,16,25
  41:5,10,11 42:25
  48:2 49:10,12
  54:5,13,17
mortgages  7:5,11
  7:14,20,20 8:21
  11:10 18:3 40:22
  41:8 46:5 47:5
  54:7
mortgaging  43:1
mother  17:10,16
motion  2:1,5 4:10
  4:10,17 5:17 6:16
  6:19,22,24 13:11

15:21,21 16:12
  19:5 21:9,9,18
  24:24 25:21 27:23
  28:12 30:13,18
  33:6,15 34:7 35:2
  36:10 38:12 45:4
  46:22 47:7 48:6
  51:22 52:3,5,8,11
  52:19,20 53:7
  54:25 55:7 57:6
motions  4:9,16,21
  5:4,8,21 15:5
  19:24 24:24 50:18
motives  26:3
moved  16:16 17:9
  28:18,19
movement  22:16
movements  27:14
  28:9
moving  4:11
  17:13,17 26:5
multiple  51:20,20

n
n  3:1 4:1 57:1
  58:1
nail  13:20 43:14
name  10:10 32:20
narrower  44:24
national  18:21
nc  21:23 22:2
  26:13,15,18,21
  27:2,10 28:24
  29:9 40:3 47:22
  48:3,25 49:9,12
  49:12
ncf  28:10
ncl  34:1
necessary  19:22
  54:4
need  10:19 11:1
  13:8 14:21 15:6
  15:10 16:18 31:5
  31:6 33:8,12

37:22 47:12,16
  48:9 51:2 56:7
needed  30:24
  31:14 33:21 41:13
  41:16 42:6,10,16
  45:6,10 46:20
  51:16
needs  6:18
negligence  26:5,5
  49:21,21 50:3
negligent  30:8,8
negligently  34:17
  44:5,9
neither  22:9 26:14
  26:25
never  10:11 19:3
  37:6 44:6
new  1:6 2:7,8 3:4
  3:10 4:8 10:23
  16:8,10 18:5,7,21
  19:14,18 21:24
  22:1,2,3 28:13,23
  29:22,23,23,24
  31:25 32:3 34:1
  38:3,8 40:3,5,6,9
  40:10,16,25,25
  41:1,9 42:10 46:5
  48:2 49:10,12
  51:9 54:3,6,9,12
  54:13
nice  4:4
nikki  17:18
nine  53:18
noise  24:5
non  19:12,20
  53:23 54:16
north  1:13
note  4:16 8:18
  18:4,9,12,16 19:1
  19:6,8,8,11,12,15
  19:17,18 20:13,15
  21:6,16 22:1,2,3
  22:21 26:12,15,17

27:1,9 29:4 30:22
  30:23 31:24 42:25
  53:23
noted  26:3
notes  7:5,11,14,14
  7:20 8:21 11:9
notice  18:24 21:3
  36:13,14 39:3
notices  8:22
november  1:15
number  32:20
  49:5,6
numerous  10:2,3
  40:12
ny  58:23

o
o  1:21 4:1 58:1
object  31:10
objected  8:5
objecting  20:22
  43:21 46:3
objection  17:1,2,4
  22:5 24:1 25:5
  27:3 32:12 47:20
  52:22
obligated  19:8
obligation  19:10
obtained  5:11
obviously  4:14 5:9
  25:1 29:8 30:4
  35:2 36:15 55:8
occur  5:5
occurred  17:25
  26:23
october  20:21
  52:13
ocwen  20:1,3
offer  30:10 49:13
oh  4:24 33:11,12
  48:9 50:8
okay  4:20,24 5:9
  5:16 6:9,13 9:15
  9:20,23 12:18

15:3,4,23 16:7,21
28:15,17 34:8,11
36:7 37:17 47:8
47:19 50:6,12,23
54:23
**old** 17:10 58:21
**older** 17:18
**once** 13:22 54:21
**onus** 46:9
**open** 10:8 11:2
43:7 55:4
**opening** 9:13
**operator** 1:25
**opine** 39:23
**opinion** 28:15,17
**opportunities**
21:4
**opportunity**
14:10 17:2,3
26:22 38:13,19
42:7 48:19
**opposed** 13:21
**opposing** 17:1
24:21
**order** 6:1,7 7:4,8
8:4,9,19 9:2 10:1
11:11 13:14 20:8
22:15,17 24:20
26:2,9 29:5 30:14
30:18 32:12 33:6
35:12,18 36:3,4
37:13,21 43:7,9
45:6,20,21 46:4
**orders** 22:23 31:3
46:8,9 56:15
**original** 7:5,9,10
7:11,20 8:15,17
8:20 11:9 19:17
20:4
**originals** 22:9
42:15,15
**originated** 6:3
7:12 10:14 40:9

**outright** 52:14
**outside** 19:23
**overturn** 32:6
49:15
**owed** 6:11 19:10
44:15
**owned** 40:17 54:9
54:19
**owner** 7:16 18:12
41:10

**p**

**p** 3:1,1 4:1
**p.m.** 1:16,16
**page** 39:1,3 53:18
53:20 57:4
**paid** 42:17
**papers** 23:8 53:16
**paragraph** 25:6
25:10 26:8,10,14
26:19 27:21 28:7
28:9 29:13,19
30:4 37:25 39:4
41:3 47:1,20 49:2
49:6
**paraphrase** 22:20
**parents** 17:17
18:4
**parked** 54:17,21
**part** 16:12 21:25
23:20 32:1,16
34:25 40:18 47:20
47:21,22 54:18
**participate** 55:10
**participation**
55:10
**parties** 4:11 8:2,5
9:6 11:20 23:21
29:14 33:8 39:25
42:6 46:3 47:11
47:21 56:2
**parts** 21:21
**party** 21:25 26:11
26:11,15 27:1,8

29:7,15,21 45:23
48:2 49:8,11 50:1
**pass** 18:22
**path** 16:23 55:1
**pay** 18:18 19:8
**payee** 19:14
**paying** 10:15
**payments** 18:10
**pending** 8:7 20:16
51:17
**people** 7:7 14:21
15:15 17:24 27:16
31:4 37:3 46:18
**percent** 54:19
**perform** 28:6
**performance**
44:14
**performing** 30:8
**period** 8:7,10
**permit** 2:6 5:5
45:1
**person** 19:10 33:4
38:7 48:13
**personal** 46:18
**perspective** 23:25
**persuades** 22:18
**pertaining** 6:6
10:5
**pertinent** 21:10
**petition** 18:13
20:17 29:2,10
30:5 41:6,9 51:8
51:11
**phone** 15:7 55:11
56:5
**place** 34:6 35:9
42:5
**placed** 7:12
**plaintiffs** 22:11
26:3
**plan** 9:5 26:1
27:19

**plans** 26:4
**please** 4:3
**pm** 56:24
**point** 4:12 13:12
15:18 16:14 19:3
24:9 25:4,5,9,12
26:13 27:2,13
39:22 40:1 43:6
52:9,25 53:14
55:23 56:10
**pointed** 14:22
**points** 23:5 29:8
38:11
**pool** 10:10
**portion** 40:2
**position** 11:15
16:9 27:14 33:5
**possess** 55:6
**possession** 14:20
19:17 53:23
**possible** 5:13
**possibly** 35:24
**potentially** 36:20
**power** 21:15,17
22:14,22 24:19
28:5 29:14 30:9
30:11,16 33:24
35:13 39:2,4,7,10
39:14,24 46:9,24
46:25 49:7 50:1
50:20,23 51:25
54:10
**powers** 39:12 54:4
**practical** 13:12
**practicing** 14:15
**pre** 29:2
**precluded** 44:5
**preclusion** 50:12
51:13
**prefer** 5:12
**prepared** 13:18
**present** 5:8 6:8

**presentation** 23:4
  23:22
**presented** 4:21
  25:8 38:24
**preserved** 31:6
**presumably** 34:14
**presume** 16:7
**pretty** 50:17 53:2
**prevail** 34:12 53:6
**prevent** 52:4,11
**preventing** 36:11
**primary** 18:18
  32:9
**prior** 18:2 28:23
  29:9 30:5 41:6,9
  49:24
**pro** 16:5 17:5
  40:13
**probably** 5:21
  10:15 30:17 47:10
  48:17 54:19
**problem** 13:22
  26:24
**procedural** 16:10
**proceed** 5:3,17
  6:23 16:18,20
  24:12 34:8 45:1
  53:5
**proceeding** 7:13
  8:1 11:21 38:9
  43:21
**proceedings** 8:7
  16:15 40:12 56:23
  58:4
**process** 11:20
  24:17 40:19,22,23
  40:24 42:5
**produce** 20:9 21:4
  31:18 32:15
**produced** 20:10
**production** 19:5
  31:10

**promise** 36:21,21
  56:1
**promissory** 18:4
**promptly** 15:16
  55:13
**proof** 6:2 19:22
  20:14,22 49:13
**proper** 35:9 38:23
  38:25 46:13
**property** 6:3
  18:17 20:19 39:17
  39:18
**proposition** 49:24
**protected** 45:7,10
**prove** 19:16 20:13
  21:5 30:24 34:15
  37:9 50:24 51:2
**proves** 23:13
**provide** 8:2 9:12
  9:14 27:25 52:23
  55:21
**provided** 8:9,10
  8:13 9:11 22:11
  41:3 45:21
**providing** 16:22
**province** 43:18
**provisions** 39:8
**punitive** 35:24
**purchase** 18:3
  26:17 43:1
**purchased** 17:17
  26:12,15 27:1,9
  27:10 29:14,16
  41:5 49:8 54:5
**purpose** 37:2 55:7
**purposes** 13:7
  23:12 36:12
**pursuant** 7:4
  18:16 19:1 20:23
  21:17 39:9 47:1
  54:16
**pursue** 53:1

**pursuing** 25:20
  51:19
**purview** 47:5
**put** 10:7,16 11:23
  14:15 28:6 35:2
  37:1 46:9
**putting** 45:17

**q**

**question** 5:2
  13:16 23:1,2,19
  34:5 38:10 41:15
  43:24 44:24
**questions** 13:25
  44:2 55:13
**quite** 38:21 41:16
  45:5 52:5
**quote** 22:19

**r**

**r** 1:21 3:1 4:1 58:1
**raised** 22:5 24:3
  43:22
**raises** 13:24
**reached** 32:16
  46:3
**reaction** 14:12
**read** 33:19
**reads** 26:19
**real** 39:16
**reality** 35:17
**realizing** 38:10
**really** 6:20 25:13
  30:17 33:1 36:4
  43:14 49:13 52:17
  55:6
**reason** 25:14
  26:19 29:18 31:12
  45:3 53:7 55:3
**reasons** 44:2
**rebut** 17:2
**rebuttal** 35:1
**recall** 8:3 40:21
  41:17

**receipt** 12:3
**receive** 34:18,19
  49:7
**received** 11:25
  12:14 13:3 14:24
  48:5
**receiving** 12:4
**reciting** 16:12
**reconcile** 48:7
**record** 5:23 12:13
  12:16 21:15 37:18
  37:24 55:5 58:4
**records** 6:1 7:10
  7:11 9:12 11:3,6,7
  21:20,23 22:8,10
  30:13,14,19,20
  31:1,3,5,5 32:2,24
  33:6,8,12,12,13
  33:15,16 42:3,5
**recourse** 25:2,2,7
**refer** 18:23 33:14
  38:1
**reference** 10:12
  22:12
**referred** 28:3
  53:22
**refinanced** 18:3
**refused** 32:22
**regarding** 39:6,16
  47:2
**regards** 30:13
  47:17
**rehash** 10:9
**rehearing** 24:24
  24:25
**reiterate** 43:11
**related** 20:10
  21:20,22 26:23
  40:12 47:4 51:18
**relates** 25:24 56:4
**relevant** 19:7
  21:21

**relief** 6:20 10:19
10:20 26:4 28:20
35:23
**relying** 6:19
**remaining** 41:21
**remember** 40:5
**remembering**
40:16
**reminder** 56:8
**reopen** 2:1,5 4:9
4:18 5:4 6:18 7:21
13:11 15:21 34:7
36:9 45:5 46:22
53:7 54:25 55:4
57:6
**reopened** 6:7
**reopening** 16:25
25:21 43:13 55:7
**repeatedly** 19:21
**reply** 5:9 17:3
**repository** 41:23
42:12
**represent** 10:17
32:24 54:12
**representations**
35:15 39:5 47:2
**representative**
32:3
**reputation** 45:8
**request** 7:16 8:8
9:6 18:25 23:6
26:11 27:22 28:1
42:20 49:7
**requested** 6:2 8:2
8:11 9:10 46:21
**requesting** 42:20
45:23
**requests** 5:4 19:23
43:8 48:5
**require** 31:18
**required** 19:16
33:21 45:20,23
46:2 54:6

**requirement**
29:19 45:22
**requirements**
27:21 30:3
**res** 24:2 51:13
52:12
**rescission** 28:18
28:20 29:5
**research** 10:6
**resend** 12:14
**reside** 17:21
**residence** 18:18
**resources** 51:19
**respect** 4:20 7:19
13:10 38:15 41:4
43:12 54:24
**respond** 4:22 5:7
5:8 14:21 53:12
**responded** 12:11
12:12
**responding** 14:1
**response** 4:12
5:19 9:19,21 11:5
12:10 27:24 44:23
47:9,15,20 52:24
56:10
**responses** 47:25
**responsibility**
14:19 41:25
**responsible** 36:17
**responsive** 55:2
**result** 8:18 11:10
40:18 56:4
**retain** 18:17 20:18
**retained** 21:14,19
**retired** 16:16
**return** 34:20
**reverse** 23:17
44:19
**reversed** 25:12
**reviewing** 54:2
**right** 9:21 12:17
13:5 14:9 15:7,20

16:2 19:19 20:13
23:3 24:6 25:4
31:6 34:4,6,9
35:14 38:10 53:3
53:4,17 55:16
56:19
**rights** 19:12,20
20:2 53:24
**rise** 4:2
**road** 58:21
**role** 14:19
**rome** 3:9 7:2
**route** 5:15
**rule** 5:20 47:10
55:12
**ruled** 23:7,16 24:8
36:3 44:1,12
**rules** 22:8 27:20
32:14 37:1
**ruling** 13:10,11
34:20,21 47:11
**rulings** 23:15
43:25 44:20 57:3
**run** 37:4

**s**

**s** 3:1,7 4:1
**sales** 19:18
**satisfied** 55:3
**saying** 6:10 24:4
30:25 33:11 35:1
35:23 38:3 39:5
48:8 51:7 52:24
**says** 14:18 30:2
36:4 41:4 43:17
44:19 48:9 53:19
**schedule** 15:15
**scheduled** 18:15
**scott** 17:19
**se** 16:5 17:5 40:13
**seated** 4:3
**second** 22:22 28:9
40:1

**section** 6:17 53:25
**secure** 33:13
**secured** 18:16
19:1 20:18
**securities** 21:24
22:3 31:25 32:4
40:3,5,17 41:1
48:2 49:10,12
54:14
**securitization**
40:20 41:1 54:18
**securitizations**
40:14
**securitized** 18:24
19:4,19 22:4,21
26:17,25 27:8
31:12 48:23 54:22
**securitizing** 40:22
**see** 12:22 13:5
14:25 15:13 31:9
**seek** 4:9 51:24
**seeking** 20:23
33:17 36:22,25
38:14
**seen** 31:22 47:23
**self** 53:2
**send** 11:5 13:18
13:22,22 42:23,25
**sending** 13:20
**sense** 4:10 15:25
**sensitive** 15:11
**sent** 8:22 11:17
12:5,7,8,9,10
13:17 14:11 36:13
43:3,5
**separate** 44:16
**separated** 5:12
**separately** 4:16
5:23
**september** 6:4 7:9
20:7 43:10
**series** 4:21 18:22
18:23

**service** 18:25 43:1
  43:2
**servicer** 6:6 7:17
  43:3
**servicers** 8:1,5
  10:3,14
**servicing** 20:1,2
  54:13
**set** 17:25 43:9
  52:13
**settled** 36:12
**shannon** 1:22
  4:25 11:14 16:6
  23:1,17 34:5
  44:19
**she's** 31:23 32:3
**shoes** 10:16
**shortly** 17:13 36:9
**show** 37:6,7
**shows** 27:7
**side** 24:21 45:18
  48:1
**sidestepping**
  29:21
**side's** 17:1
**signed** 10:1
**similar** 48:18 52:7
**simple** 14:1 32:13
**simpler** 32:12
**simply** 54:8
**sir** 5:1,25 6:14
  9:18 12:20 13:2
  14:6,7 16:1,1
  34:10 55:17 56:19
**sisters** 17:11
**sit** 40:4
**situation** 37:2
**situs** 39:18
**six** 8:10
**sold** 7:15 20:2
  22:2,2,3 28:23
  29:9 41:8 49:11
  49:12,24

**solutions** 58:20
**somebody** 14:18
  48:8
**sonya** 2:25 58:3,8
**sorry** 7:14 24:5
  34:24
**sort** 14:2 15:6
  25:7 26:21
**sought** 46:15
**sounds** 4:13 5:16
  11:21 13:6
**southern** 18:15
  20:5
**speaking** 11:14
**specific** 6:17
  43:24 47:17
**specifically** 55:9
**spent** 42:9
**spoke** 32:21
**stand** 40:15 54:11
  56:20
**standing** 10:23
  45:3
**stands** 23:12
**start** 16:21 37:3
  38:2
**started** 38:2
**starts** 39:4
**state** 6:6 22:14
  27:20 39:19 41:12
  42:17 47:3
**stated** 17:8 29:1
**statement** 56:10
**statements** 21:22
  32:5
**states** 1:1,12
  22:17 28:11
**stating** 10:4 22:19
**statute** 45:15,17
  54:1
**stay** 51:22
**stayed** 7:15

**step** 28:8
**steps** 40:23
**stragglers** 9:1
**street** 1:13 17:14
**strongly** 15:9
**structure** 54:12
**stuff** 14:16
**subject** 28:21,22
  29:5 33:14 44:11
**subjective** 45:24
**submissions** 23:9
  55:11
**submit** 17:3 48:12
**submitted** 22:10
  49:2
**subpoenaed** 46:16
**subsequent** 21:2
  24:20 41:6
**subsequently**
  17:20
**subsidiaries** 40:18
**substance** 6:24
  13:17
**substantive** 48:17
**successfully** 25:11
**sue** 34:13
**suffered** 34:17
  36:19
**sufficiency** 23:11
**sufficient** 12:2
  13:9 21:5 39:15
  43:17
**suggest** 33:20
**suit** 34:12
**suite** 58:22
**summary** 21:9,9
  22:16,18 24:21
  32:16 50:18
**supplemental**
  55:21
**support** 33:15,21
  52:19

**supported** 24:4
**supposed** 27:22
**supreme** 25:1
  38:17 49:18
**sure** 5:22 8:25
  9:24 14:22 21:12
  23:2 28:4 37:23
  42:5 45:12 47:12
  50:10 52:17
**survive** 44:11

**t**

**t** 58:1,1
**tabbed** 37:25
**take** 10:10,17,20
  12:5 14:23,25
  15:13 25:5 28:8
  29:11 37:1 41:24
  41:25 47:9 48:20
  49:17 50:8 54:23
  55:12
**taken** 21:11 36:20
**talk** 48:15
**talking** 31:23
**telephone** 17:8
**tell** 7:6 8:19 11:4
  13:9 40:7 44:21
  54:15
**telling** 7:7 30:20
  31:15
**temporarily** 18:6
**terms** 9:5 19:8
  22:24
**thank** 5:2 6:15
  9:15 14:7,7 15:24
  37:23 53:8,9
  54:22 55:14,14,15
  56:8,18,19,22
**thankfully** 10:24
**that's** 5:14 10:9
  10:18,19,20 12:20
  13:15 15:8,20
  19:13,13 20:5
  23:5 24:6,12,15

25:9 28:3 29:25
31:15 37:2 41:3
41:16 43:8 44:16
44:25 45:10 49:13
50:3 53:17 55:23
**thereof** 26:12,16
**there's** 6:20 7:24
9:14 11:11 15:2,6
17:5 26:18 27:11
31:4 33:20 41:15
52:21 53:6
**they're** 4:20 6:11
15:3,4 23:16 24:4
30:19,25 33:17
43:14,15 48:3,25
51:14 53:25
**they've** 24:3
36:13 44:21
**thing** 11:4 13:13
15:9 30:12 40:1
50:8 51:12 52:3
**things** 51:20
52:21
**think** 4:10,13 6:9
8:10 11:14,16
15:20 16:18 20:4
23:5,14,16 31:15
34:11 37:14,15
38:9,10,11 40:8
43:13 44:24 46:8
46:24 50:3,16
52:7 53:3,6
**third** 21:25 29:7
50:1
**thoughts** 6:14
**thousands** 42:9
**three** 17:18,20
21:10 27:4 39:2
41:21 48:21 51:7
**thrust** 24:1
**till** 37:8
**time** 4:12 7:18 8:7
8:20 10:13 14:8

17:5 19:9 20:1,11
23:4,22 29:3
30:24 31:2 32:10
39:11 43:7 52:23
53:8 54:10 55:15
56:20
**times** 40:12 56:6
**title** 30:25
**today** 5:1 12:16
16:19,23 40:4,16
45:3,11 46:6
55:11 56:1,7,20
**told** 11:16 32:21
51:22 52:2
**top** 53:19
**touch** 8:24
**transaction** 26:23
50:25
**transactions**
19:18 50:25
**transcribed** 2:25
**transcript** 58:4
**transfer** 29:12,23
29:23,25 31:16
35:20 38:25 39:15
39:20 49:25 51:11
**transferred** 7:16
18:9 22:21 29:1
30:5 31:23 40:10
40:19 43:3 48:10
**transfers** 54:5
**tried** 19:21 20:12
25:19
**trs** 1:6 28:13
**true** 27:6 58:4
**truly** 14:2 17:22
**trust** 2:7,9 3:5,11
9:16 11:16 16:8
18:21,22,24 19:4
19:19 22:4,22,24
23:6,14 25:14
26:1,6,17 27:1,8
27:11,18,19 28:10

31:12 32:23 34:1
39:5 40:20 41:1
42:6,10 47:14
48:23 54:4
**trustee** 2:8 3:4,10
4:8,22 5:6 13:24
16:9 18:21 25:14
25:17 27:15 28:18
29:9 48:15,19,21
48:22 49:21 53:12
**trustee's** 5:6
50:19
**try** 6:23
**trying** 6:7,11 10:4
10:10 13:12 24:9
51:11
**turn** 14:12
**two** 4:9 5:8 17:10
17:10 20:12 22:20
29:8 39:1,3 41:21
49:6 51:20
**type** 33:20

---

**u**

**u.s.** 1:23
**ucc** 21:5 27:18
**ultimately** 7:8 9:3
42:4
**understand** 5:22
6:24 9:15 10:3,17
11:1 23:8,11 34:6
34:11 37:15 44:8
44:18,22,22 47:8
49:22 50:7 56:3
56:17
**understanding**
31:8
**understands**
11:15 29:9 49:23
**understood** 30:4
39:11,16
**undisputed** 55:5
**unendorsed** 20:15
30:23

**unenforceable**
20:25
**unfortunately**
17:4,23 38:6,8,16
**uniform** 26:7,20
**united** 1:1,12
28:11
**universal** 20:25
**unnecessary**
53:12
**unreasonable**
48:13
**unrelated** 21:25
29:6 50:1
**unsubstantiated**
21:22 22:6
**unsuccessful**
25:16
**unusual** 55:24
**upheld** 46:5
**usc** 18:14 20:19
20:23
**use** 6:8 32:10 51:5
51:6
**utilize** 13:1
**utterly** 21:7

---

**v**

**v** 28:13
**valid** 25:18 32:10
32:11 43:21 45:14
49:20 55:3
**validity** 32:11
38:22 39:7 47:2
**various** 22:12
33:17
**verbal** 19:23
**verify** 12:3 19:6
**veritext** 58:20
**versus** 51:25
**vicki** 17:19
**vigorously** 24:23
**void** 35:3,24 51:4
51:7

**voluminous**  37:20 52:5

**w**

**wade**  53:15
**walk**  16:18
**walker**  21:11,12 21:18 22:6,13,18 22:19 23:12 24:18 30:15,25 31:19 32:9 35:6,15 43:15,20 46:15,16 46:18 50:21,22 52:1
**walker's**  32:18,22 33:14
**want**  5:20,21 14:9 14:10,23 15:4 23:2 34:11 35:2 50:2,13,14 53:13
**wanted**  39:25 50:8
**wants**  48:4
**warn**  15:7
**warranties**  39:6 47:2
**wasn't**  10:24 34:16 35:9 36:4 45:24 46:1
**way**  26:19 28:6 31:9 39:16 41:11 49:18
**week**  8:10
**weekend**  7:1
**weeks**  30:18
**weight**  12:23
**welcome**  4:6 47:18
**went**  40:14 41:18 49:3 51:21
**we'd**  42:22,23,25
**we'll**  5:16,17 10:20 15:15,20 28:5 34:14

**we're**  6:5,7 10:4,7 10:10 15:10,14 42:2,3 45:10 46:6 56:20
**we've**  10:14
**white**  28:13,16 49:23
**wholeheartedly**  23:25
**wholly**  40:17
**who've**  10:14
**wife**  17:8,12,13,21 18:5,6
**william**  17:21
**wilmington**  1:14
**wish**  4:16 52:22
**won't**  56:7
**word**  32:10,11
**wording**  52:6
**words**  51:5,6,6
**worked**  41:11
**working**  56:2
**works**  14:25 15:13 39:16
**world**  7:25
**wouldn't**  51:2
**writing**  10:7 11:18,23 17:4
**written**  14:17 19:23 27:22 28:1 52:23
**wrong**  44:8 46:8 46:23 52:15
**wrote**  35:12

**x**

**x**  57:1

**y**

**yeah**  9:21 12:19 24:12 28:4
**year**  17:10
**years**  10:25 17:16 18:11 20:12 27:4 37:9 41:19,21,22

42:1 48:21
**yesterday**  11:5 12:8,9
**younger**  17:20
**you'd**  5:9
**you're**  14:22 15:9 16:14 23:20 34:9 35:1 47:16,18
**you've**  11:22 13:17,19 34:15 47:11,17