## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.*, | §<br>§<br>§ | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |

| | |
|---|---|
| NANCY K ALANIS | § §<br>§ |
| *Movant* | § § |
| v. | § § |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | § §<br>§ |
| And | § § |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § § |
| *Respondents* | § § |

## NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)    FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

# Ex-1

# ADJUSTABLE RATE BALLOON NOTE
### 2 Year Rate Lock
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

I hereby certify this copy is a true and correct copy of the original instrument.
Mission Trust)
By_____

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| June 15, 2006 | San Antonio | Texas |
|---|---|---|
| [Date] | [City] | [State] |

13210 Hunters view, San Antonio, TX 78230
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 193,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.925  %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on      August 1, 2006

My monthly payments will be based on an assumed 40      -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  07/01/2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,631.71  . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

1008511112

Page 1 of 4

Initials NKA

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

67

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of July, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth (s)
percentage points (6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.925% or less than 9.925%. Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than One And One-half percentage point(s) (1.500 %)
from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.925 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1008511112

Initials NKA

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

68

DOCUMENT SCANNED AS FILED

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** ndar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"). dated the same date as this Note. protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1008511112

CMC
djustab-338N(36)oom Note (TX)
RE-522  (01]806)

Page 3 of 4

Initials: _NMA_

DOCUMENT SCANNED AS FILED

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
NANCY ALANIS                    -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

*[Sign Original Only]*

1008511112

CMC
Adjustable Rate Balloon Note (TX)
RE-522  (011806)

Page 4 of 4

70

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | §<br>§<br>§ | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | §<br>§ | |
| *Movant* | §<br>§ | |
| v. | §<br>§ | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| And | §<br>§ | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§ | |
| *Respondents* | ·§<br>§ | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)   FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-2

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

We hereby certify this copy is a true and
correct copy of the original instrument.

Mission Title, LP

By_____

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

## NOTICE OF CONFIDENTIALITY RIGHTS:

**If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  June 15, 2006
together with all Riders to this document.
(B) "Borrower" is NANCY ALANIS, Unmarried Woman

CMTG

Borrower is the grantor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044  1/01

VMP -6(TX) (0411)
Page 1 of 16          Initials: NKA
VMP Mortgage Solutions, Inc. (800)521-7291

72

DOCUMENT  SCANNED  AS  FILED

Lender is a **Corporation**
organized and existing under the laws of **California**
Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Eldon L. Youngblood

. Trustee's address is

**2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204**

**(E) "Note"** means the promissory note signed by Borrower and dated   **June 15, 2006**
The Note states that Borrower owes Lender **ONE HUNDRED NINETY-THREE THOUSAND FIVE
HUNDRED AND 00/100**                                                                 Dollars
**(U.S. $193,500.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **07/01/2036**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note. and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [x] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Prepayment Rider, ARM Rider Addendum**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

Initials: _HMH_

-6(TX) (0411)                                Page 2 of 16                              Form 3044    1/01

73

DOCUMENT SCANNED AS FILED

**(O)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
|   County   |   of   |   Bexar   |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: **16984-006-0020**                                which currently has the address of

**13210 Hunters    view**                                                                            [Street]

**San Antonio**                                              [City], Texas **78230**          [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: N.W.A.



DOCUMENT SCANNED AS FILED

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage

VMP®-6(TX) (0411)                    Page 4 of 16                Initials: _NULA_                    Form 3044    1/01

DOCUMENT SCANNED AS FILED

Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith

Initials: _NICA_

-6(TX) (0411)    Page 5 of 18    Form 3044    1/01

76

DOCUMENT SCANNED AS FILED

by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If



-6(TX) (0411)

Page 8 of 16

Initials: _____

Form 3044    1/01

DOCUMENT SCANNED AS FILED

the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing



Initials: NJUA

-6(TX) (0411)                     Page 7 of 16                     Form 3044   1/01

78

DOCUMENT SCANNED AS FILED

the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

Initials: _MCA_

-6(TX) (0411)                    Page 8 of 16                    Form 3044    1/01

DOCUMENT SCANNED AS FILED

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: 

 -6(TX) (0411)                    Page 9 of 10                    Form 3044    1/01

DOCUMENT SCANNED AS FILED

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.



Initials: NKA

-6(TX) (0411)

Page 10 of 16

Form 3044  1/01

DOCUMENT SCANNED AS FILED

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

DOCUMENT SCANNED AS FILED

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note. this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).


DOCUMENT SCANNED AS FILED

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

Initials: LVA

 -6(TX) (0411)

Page 13 of 18

Form 3044    1/01

84

DOCUMENT SCANNED AS FILED

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[x] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

Initials: _NKA_

VMP -8(TX) (0411)                    Page 14 of 16                    Form 3044   1/01

85

DOCUMENT SCANNED AS FILED

**STATE OF TEXAS**
County of Bexar

Before me Deana M. Blalock on this day personally appeared

Nancy Alanis

known to me (or proved to me on the oath of
or through                                        ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 16th day of June 2006.

(Seal)

DEANNA M. BLALOCK
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-13-2009

M Blalock
Notary Public

My Commission Expires:

Initials: NXA

VMP -6(TX) (0411)                    Page 16 of 16                              Form 3044    1/01

86

DOCUMENT SCANNED AS FILED

# EXHIBIT A

Lot 2, Block 6, New City Block 16984,  HUNTERS CREEK NORTH, UNIT-3, in the City of San Antonio, Bexar County, Texas, according to the map or plat thereof recorded in Volume 8200, Page(s) 215-216, of the Deed and Plat Records of Bexar County, Texas.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

JUN 2 2 2006

*Jerry Rickhoff*

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20060146541 Fees: $116.00
06/22/2006   1:39PM # Pages 26
Filed & Recorded in the Official Public
Records of  BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

87

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

---

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

---

# Ex-3



**NEW CENTURY**
MORTGAGE CORPORATION

P.O. BOX 54285, IRVINE, CA 92619-4285  (800) 561-4567  FAX (949) 797-5220

September 15, 2006

001387

NANCY ALANIS
13210 HUNTERS VIEW
SAN ANTONIO TX  78230-2032

Re:  NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS
      NEW CENTURY MORTGAGE LOAN NO: 1008511112

**\*PLEASE NOTE THAT THIS TRANSFER NOTICE IS FOR THE ABOVE REFERENCED
LOAN ONLY**

Dear Mortgagor(s):

The servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from your present servicer, New Century Mortgage Corporation ("New Century"), to a new servicer, HomEq Servicing Corporation ("HomEq") effective October 01, 2006 (the "Effective Date" of Transfer).  Please be assured that this assignment, sale or transfer of servicing of the mortgage loan from New Century to HomEq does not in any way affect any terms or conditions of your mortgage instruments, other than terms directly related to the servicing of your loan.

The date on which New Century will stop accepting payments from you is September 30, 2006.  The date on which HomEq will start accepting payments from you is October 01, 2006.  Please send all payments on or after October 01, 2006 to HomEq at the payment address stated below.  If you have mailed a payment to New Century and it is received after the transfer date, it it will be forwarded to HomEq for processing.  HomEq will be mailing you a billing statement shortly.  However, if you do not receive the statement, prior to your next payment due date, please be sure to write your HomEq account number on your check or money order and send your payment to the address below so that your payment is properly credited.  If your payment is issued by a third party agency, please advise the third party of the new servicer, payment address, and the new account number.

PAYMENTS

HomEq Servicing Corporation
P.O. Box 79230
City of Industry, CA  91716

CORRESPONDENCE

HomEq Servicing Corporation, CA3345
P.O. Box 13716
Sacramento, CA 95853-3716

81                                    0

DOCUMENT  SCANNED  AS  FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |

---

| | |
|---|---|
| | § |
| NANCY K ALANIS | § |
| | § |
| *Movant* | § |
| | § |
| v. | § |
| | § |
| Liquidating Trustee | § |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § |
| | § |
| And | § |
| | § |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § |
| | § |
| *Respondents* | § |

---

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

---

# Ex-4

**MEGA, LEAD, CLMSAGNT, SealedDoc(s), CONFIRMED, MTRUNADV, APPEAL, CLOSED**

### U.S. Bankruptcy Court
### District of Delaware (Delaware)
### Bankruptcy Petition #: 07-10416-BLS

*Date filed:* 04/02/2007
*Date terminated:* 08/26/2016
*Plan confirmed:* 07/15/2008

*Assigned to:* Brendan Linehan Shannon
Chapter 11
Voluntary
Asset

*Debtor disposition:* Discharge Not Applicable

**Debtor**
**New Century TRS Holdings, Inc.**
18400 Von Karman Ave.
Suite 1000
Irvine, CA 92612
OUTSIDE HOME STATE
Tax ID / EIN: 33-0683629

represented by **David W. Carickhoff**
Archer & Greiner P.A.
300 Delaware Ave
Suite 1100
Wilmington, DE 19801
302-777-4350
Email: dcarickhoff@archerlaw.com

**Ronald S. Gellert**
Gellert Scali Busenkell & Brown,
LLC
1201 N. Orange Street
Suite 300
Wilmington, DE 19801
302.425.5806
Fax : 302.425.5814
Email: rgellert@gsbblaw.com

**Nicholas C. Rigano**
Hahn & Hessen LLP
488 Madison Avenue
14th and 15th Floor
New York, NY 10022
212-478-7200
Fax : 212-478-7400

**Elizabeth A. Sloan**
Blank Rome LLP
1201 Market Street
Suite 800
Wilmington, DE 19801
302-425-6472

Fax : 302-425-6464
Email: sloan@blankrome.com

**Examiner**
**Michael J Missal**

represented by **Mark Minuti**
Saul Ewing Arnstein & Lehr LLP
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
302 421-6840
Fax : 302 421-5873
Email: mark.minuti@saul.com

**Lucian B Murley**
222 Delaware Ave
Wilmington, DE 19899
Email: tcrrier@saul.com

**Patrick J. Reilley**
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-652-3131
Fax : 302-652-3117
Email: preilley@coleschotz.com

**U.S. Trustee**
**U.S. Trustee**
Office of United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19899-0035
302-573-6491

represented by **Mark S. Kenney**
Office of the U.S. Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
302-573-6491
Fax : 302-573-6497
Email: mark.kenney@usdoj.gov

**Claims Agent**
**XRoads Solutions Group, LLC**
www.xroadsllc.com
1821 East Dyer Rd., Ste 225
Santa Ana, CA 92705
949-567-1600
*TERMINATED: 08/12/2011*

**Claims Agent**
**Kurtzman Carson Consultants LLC**
www.kccllc.com
2335 Alaska Ave
El Segundo, CA 90245
310-823-9000

represented by **Albert Kass**
Kurtzman Carson Consultants, LLC
2335 Alaska Ave
El Segundo, CA 90245
310-823-9000
Fax : 310-751-1549

DOCUMENT SCANNED AS FILED

Email: ECFpleadings@kccllc.com

*Liquidating Trust*
**New Century Liquidating Trust**
575 Anton Blvd., 3rd Floor
Costa Mesa, CA 92626

represented by **David W. Carickhoff**
(See above for address)
*TERMINATED: 10/03/2013*

**Michael David Debaecke**
Blank RomeLLP
1201 Market St.
Suite 800
Wilmington, DE 19899
usa
(302) 425-6400
Fax : (302) 425-6464
Email: debaecke@blankrome.com

**Victoria A. Guilfoyle**
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
302-425-6404
Fax : 302-425-6464
Email: guilfoyle@blankrome.com

**Alan Michael Root**
Archer & Greiner P.C.
300 Delaware Avenue
Suite 1100
Wilmington, DE 19801
302-356-6623
Fax : 302-428-5109
Email: aroot@archerlaw.com

**Jeffrey Zawadzki**
Hahn & Hessen LLP
488 Madison Avenue
New York,, NY 10022
212-478-7252
Fax : 212-478-7400
Email: jzawadzki@hahnhessen.com

| Filing Date | # | Docket Text |
|---|---|---|
| 05/01/2012 | ❏ 10877 | Order Denying Helen Galope's Motion to Set Aside Funds for Pro-Se Litigants.(related document(s)10763, 10846, 10875) Order Signed on 5/1/2012. (LMD) (Entered: 05/01/2012) |
| 05/01/2012 | ❏ 10878 | |

| | | |
|---|---|---|
| | | Order Scheduling Evidentiary Hearing Regarding the New Century Liquidating Trust's Motion for Entry of an Order to Determine that the Debtors Have Complied With the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof. (related document(s)10824, 10835, 10841, 10842, 10848, 10849, 10853, 10874) Order Signed on 5/1/2012. (LMD) (Entered: 05/01/2012) |
| 05/02/2012 | ❷10879 | Affidavit of Service re Notice of Agenda of Matters Scheduled for Hearing Filed by New Century Liquidating Trust. Hearing scheduled for 4/12/2012 at 01:00 PM. (related document(s) 10829) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/3/2012 (LMD). (Entered: 05/02/2012) |
| 05/07/2012 | ❷10880 | Response *to Objection of the New Century Liquidating Trust to (I) the Motion of Christine Konar, Pro Se, to Consider Proof Of Claim Timely Filed, and (II) Motion to File Amended Proof of Claim.* (related document(s)10743, 10744, 10845) Filed by Christine Konar (Attachments: # 1 Exhibit A# 2 Exhibit B) (KPB) (Entered: 05/07/2012) |
| 05/07/2012 | ❷10881 | Response *to Objection of the New Century Liquidating Trust to Christine Konar's (I) Motion to Authorize Discovery From New Century TRS Holdings, Inc. and the New Century Liquidating Trust and (II) Rule 2019 Motion.* (related document(s)10753, 10803, 10847) Filed by Christine Konar (Attachments: # 1 Certificate of Service) (KPB) (Entered: 05/07/2012) |
| 05/08/2012 | ❷10882 | Order Denying Helen Galope's Motion to Invoke the Application of the New Rule 2019 of the Federal Bankruptcy Procedures. (related document(s)10767, 10846, 10876) Order Signed on 5/8/2012. (LMD) (Entered: 05/08/2012) |
| 05/08/2012 | ❷10883· | DENIED 5/17/12 (related docket 10890)Objection to Rule 2019 Order, Motion for Sanctions and Motion to Impeach/Remove the Trustee. (related document(s)10882) Filed by Helen Galope (Attachments: # 1 Exhibit "A&B") (LMD) Modified docket text on 5/17/2012 (LMD). (Entered: 05/09/2012) |
| 05/11/2012 | ❷10884 | Order Granting Application to Proceed In Forma Pauperis and Fee Waiver. (related document(s)10873) Order Signed on 5/11/2012. (LMD) (Entered: 05/11/2012) |
| 05/14/2012 | ❷10885 | |

DOCUMENT SCANNED AS FILED

| | | |
|---|---|---|
| | | Objection *to Annette Lamour's Motion for Bonds and Oaths of Office for Public and Private Officials and Counselors* (related document(s)10851) Filed by New Century Liquidating Trust (Root, Alan) (Entered: 05/14/2012) |
| 05/16/2012 | ◑ 10886 | Request for Transcript of hearing held on 3/1/2012 received. To obtain a copy of this transcript, contact Veritext, LLC, the Court Reporter/Transcriber, Telephone number (888) 706-4576. (JDH) (Entered: 05/16/2012) |
| 05/16/2012 | ◑ 10887 | Memorandum and Order dismissing Motion to Invoke Application of the New Rule 2019 of the Federal Bankruptcy Procedures and the Motion for Bonds and Oaths for Public and Private Officials and Counselors filed by Annette Lamour (related document(s)10781, 10851) (DJG) (Entered: 05/16/2012) |
| 05/16/2012 | ◑ 10888 | Affidavit of Service re Documents Served on April 18, 2012. (related document(s)10837, 10843, 10844, 10845, 10846, 10847) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/17/2012 (LMD). (Entered: 05/16/2012) |
| 05/17/2012 | ◑ 10889 | Plaintiff's Supplemental Exhibits in Support of Plaintiff's Motion for Reconsideration of Dismissal of Counts II and Count VIII of Plaintiff's Adversary Complaint (Attachments: # 1 Certificate of Service # 2 Exhibit) (SJS) (Entered: 05/17/2012) |
| 05/17/2012 | ◑ 10890 | Memorandum and Order Dismissing Motions for Reconsideration. (related document(s)10742, 10883) Order Signed on 5/17/2012. (LMD) (Entered: 05/17/2012) |
| 05/18/2012 | ◑ 10891 | Request for Special Notice. Filed by Bank of America, N.A. c/o Prober & Raphael A Law Corporation. (Prober, Dean) Modified docket text on 5/18/2012 (LMD). (Entered: 05/18/2012) |
| 05/18/2012 | ◑ 10892 | Notice of Filing Declaration of Liewellyn Adams. Filed by Molly S. White, Ralph N. White. (Attachments: # 1 Declaration # 2 Exhibit "1") (LMD) (Entered: 05/18/2012) |
| 05/18/2012 | ◑ 10893 | Transcript regarding Hearing Held 3/1/2012 Remote electronic access to the transcript is restricted until 8/16/2012. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber VERITEXT REPORTING COMPANY, |

| | | |
|---|---|---|
| | | Telephone number 212-267-6868.] . Notice of Intent to Request Redaction Deadline Due By 5/25/2012. Redaction Request Due By 6/8/2012. Redacted Transcript Submission Due By 6/18/2012. Transcript access will be restricted through 8/16/2012. (AJL) (Entered: 05/18/2012) |
| 05/20/2012 | ☻10894 | BNC Certificate of Mailing. (related document(s)10893) Notice Date 05/20/2012. (Admin.) (Entered: 05/21/2012) |
| 05/21/2012 | ☻10895 | Notice of Agenda of Matters Scheduled for Hearing Filed by New Century Liquidating Trust. Hearing scheduled for 5/23/2012 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Root, Alan) (Entered: 05/21/2012) |
| 05/21/2012 | ☻10896 | Response *to the Court's Inquiry as to the Plaintiffs Absence from the April 25, 2012 Omnibus Hearing.* Filed by Molly S. White, Ralph N. White (Attachments: # 1 Exhibit "A") (LMD) (Entered: 05/21/2012) |
| 05/21/2012 | ☻10897 | Response *of the New Century Liquidating Trust to Kimberly Cromwell and Karan Russell's Request for Judicial Notice in Support of Objection to Trust Motion to Determine Debtors Complied with Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof* (related document(s)10850) Filed by New Century Liquidating Trust (Root, Alan) (Entered: 05/21/2012) |
| 05/22/2012 | ☻10898 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by New Century Liquidating Trust. Hearing scheduled for 5/23/2012 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Root, Alan) (Entered: 05/22/2012) |
| 05/22/2012 | ☻10899 | Motion to Allow *Motion of Alfred A. Silva, Pro Se, Requesting Deferral of any Court Appearances.* Filed by Alfred A. Silva. The case judge is Kevin J. Carey. (Attachments: # 1 Exhibit "A") (LMD) (Entered: 05/22/2012) |
| 05/22/2012 | ☻10900 | Second Amended Notice of Agenda of Matters Scheduled for Hearing Filed by New Century Liquidating Trust. Hearing scheduled for 5/23/2012 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Root, Alan) Modified docket text on 5/22/2012 (LMD). (Entered: 05/22/2012) |
| 05/22/2012 | ☻10901 | Affidavit of Service re Omnibus Reply of the New Century Liquidating Trust to Objections to Motion for Entry of an |

| | | |
|---|---|---|
| | | Order to Determine that the Debtors Have Complied With the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof. (related document(s)10853) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/23/2012 (LMD). (Entered: 05/22/2012) |
| 05/22/2012 | 10902 | Affidavit of Service re Notice of Agenda of Matters Scheduled for Hearing Filed by New Century Liquidating Trust. Hearing scheduled for 4/25/2012 at 02:30 PM. (related document(s) 10857) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/23/2012 (LMD). (Entered: 05/22/2012) |
| 05/23/2012 | 10903 | Request for Transcript of hearing held on 4/25/2012 received. To obtain a copy of this transcript, contact the Court Reporter/Transcriber Veritext, Telephone number (888) 706-4576. (SG) (Entered: 05/23/2012) |
| 05/23/2012 | 10904 | Request for Transcript of hearing held on 5/23/2012 received. To obtain a copy of this transcript, contact the Court Reporter/Transcriber Veritext, Telephone number (888) 706-4576. (SG) (Entered: 05/23/2012) |
| 05/24/2012 | 10905 | Hearing Held/Court Sign-In Sheet (related document(s)10895, 10898, 10900) (LMD) (Entered: 05/24/2012) |
| 05/25/2012 | 10906 | Affidavit of Service *re Amended Notice of Agenda of Matters Scheduled for Hearing Filed by New Century Liquidating Trust. Hearing scheduled for 4/25/2012 at 02:30 PM. (related document(s)10863) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012)* |
| 05/25/2012 | 10907 | Certification of Counsel *for the Order Granting, in Part, the Motion of Alfred A. Silva, Pro Se, Requesting Deferral of any Court Appearances* (related document(s)10899) Filed by New Century Liquidating Trust. (Attachments: # 1 Exhibit A) (Root, Alan) (Entered: 05/25/2012) |
| 05/25/2012 | 10908 | Affidavit of Service re Notice of Rescheduled Omnibus Hearing. Filed by New Century Liquidating Trust. Hearing scheduled for 7/10/2012 at 10:00 AM. (related document(s) 10872) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012) |
| 05/25/2012 | 10909 | |

DOCUMENT SCANNED AS FILED

| | | |
|---|---|---|
| | | Affidavit of Service re Documents Served on May 1, 2012. (related document(s)10877, 10878) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012) |
| 05/25/2012 | ❸10910 | Affidavit of Service re Objection to Annette Lamour's Motion for Bonds and Oaths of Office for Public and Private Officials and Counselors. (related document(s)10885) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012) |
| 05/25/2012 | ❸10911 | Affidavit of Service re Order Denying Helen Galope's Motion to Invoke the Application of the New Rule 2019 of the Federal Bankruptcy Procedures. (related document(s)10882) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012) |
| 05/25/2012 | ❸10912 | Affidavit of Service re Memorandum and Order dismissing Motion to Invoke Application of the New Rule 2019 of the Federal Bankruptcy Procedures and the Motion for Bonds and Oaths for Public and Private Officials and Counselors filed by Annette Lamour. (related document(s)10887) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012) |
| 05/25/2012 | ❸10913 | Notice of Rescheduled Omnibus Hearing. Filed by New Century Liquidating Trust. Hearing scheduled for 7/12/2012 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Root, Alan) Modified docket text on 5/29/2012 (LMD). (Entered: 05/25/2012) |
| 05/29/2012 | ❸10914 | Order Granting, in Part, the Motion of Alfred A. Silva, Pro Se, Requesting Deferral of any Court Appearances. (related document(s)10899, 10907) Order Signed on 5/29/2012. (LMD) (Entered: 05/29/2012) |
| 05/30/2012 | ❸10915 | Transcript regarding Hearing Held 4/25/2012 RE: Omnibus. Remote electronic access to the transcript is restricted until 8/28/2012. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Veritext, Telephone number (888)706-4576.] (RE: related document(s) 10863). Notice of Intent to Request Redaction Deadline Due By 6/6/2012. Redaction Request Due By 6/20/2012. Redacted Transcript Submission Due By 7/2/2012. Transcript access will be restricted through 8/28/2012. (BJM) (Entered: 05/30/2012) |
| | | |

| 05/30/2012 | ❷ 10916 | Transcript regarding Hearing Held 5/23/2012 RE: Omnibus/Evidentiary Hearing. Remote electronic access to the transcript is restricted until 8/28/2012. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Veritext, Telephone number (888)706-4576.] (RE: related document(s) 10900). Notice of Intent to Request Redaction Deadline Due By 6/6/2012. Redaction Request Due By 6/20/2012. Redacted Transcript Submission Due By 7/2/2012. Transcript access will be restricted through 8/28/2012. (BJM) (Entered: 05/30/2012) |
| 05/31/2012 | ❷ 10917 | Second Motion to Reconsider. Filed by Helen Galope. The case judge is Kevin J. Carey. (LMD) Additional attachment(s) added on 6/12/2012 (LMD). Modified filing date on 6/12/2012 (LMD). (Entered: 06/01/2012) |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | §<br>§<br>§ | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | §<br>§<br>§ | |
| *Movant* | §<br>§ | |
| v. | §<br>§ | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| And | §<br>§ | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§ | |
| *Respondents* | §<br>§ | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
(i)   FILE ADVERSARIAL COMPLAINT;
(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
(iii)  OBTAIN RELATED RELIEF**

# Ex-5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **NEW CENTURY TRS HOLDINGS,** | : | **Case No. 07-10416(KJC)** |
| **INC., a Delaware corporation, et al.,**[1] | : | |
| | : | **Jointly Administered** |
| Debtors. | : | |
| | : | Re : Docket No. 9905 |

## ORDER CONFIRMING THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION DATED AS OF SEPTEMBER 30, 2009

WHEREAS, on September 30, 2009, Alan M. Jacobs, as Trustee of the New Century

Liquidating Trust (the "Liquidating Trustee"), as Plan Administrator of Reorganized Access

Lending (the "Plan Administrator") and as sole officer and director of New Century Financial

Corporation ("NCFC"), New Century TRS Holdings, Inc. ("TRS Holdings"), New Century

Mortgage Corporation ("NCMC"), NC Capital Corporation ("NC Capital"), Home123

Corporation ("Home123"), NC Asset Holding, L.P. ("NC Asset Holding"), NC Deltex, LLC

("NC Deltex"), NC Residual III Corporation ("NC Residual III"), NC Residual IV Corporation

("NC Residual IV"), NCoral, L.P. ("NCoral"), New Century Credit Corporation ("NC Credit"),

New Century Mortgage Ventures, LLC ("NCM Ventures"), New Century R.E.O. Corp. ("NC

---

[1]  The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Mortgage Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; and NC Deltex, LLC, a Delaware limited liability company; and NCoral, L.P., a Delaware limited partnership and New Century Warehouse Corporation, a California corporation.

THIS IS TO CERTIFY that the foregoing is a true and correct copy of a document filed in our office.

Dated: 10/18/2020    /s/ Cheryl Hollis

Deputy Clerk of the U.S. Bankruptcy Court District of Delaware

REO"), New Century R.E.O. II Corp. ("NC REO II"), New Century R.E.O. III Corp. ("NC REO III"), and New Century Warehouse Corporation ("Access Lending"), (each individually a "Debtor," and collectively, the "Debtors") (the Debtors, collectively with the Liquidating Trustee and Plan Administrator, the "Plan Proponents of the Modified Plan") filed the *Modified Second Amended Joint Chapter 11 Plan of Liquidation, Dated as of September 30, 2009* (the "Modified Plan") [Docket No 9905], and the related *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009* [Docket No. 9904] with the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on October 15, 2009, the Plan Proponents of the Modified Plan filed an amended *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009* (the "Modified Disclosure Statement") [Docket No. 9931]; and

WHEREAS, on October 14, 2009, the Court entered an order [Docket No. 9928] (the "Modified Solicitation Procedures Order") (i) approving the Modified Disclosure Statement pursuant to section 1125 of Title 11 of the United States Code (as amended, modified or replaced from time to time, the "Bankruptcy Code"), as containing adequate information; (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Modified Plan; (iii) approving the contents of proposed solicitation packages to be distributed to Creditors and other parties in interest in connection with the solicitation of votes on the Modified Plan (the "Solicitation Packages"); and (iv) scheduling a hearing on confirmation of the Modified Plan and approving related notice procedures; and

WHEREAS, XRoads Case Management Services, LLC ("XRoads"), transmitted the Solicitation Packages substantially in compliance with the Modified Solicitation Procedures

Order on behalf of the Plan Proponents of the Modified Plan, as attested to in the declarations of Michael Pascoe filed on November 13, 2009 [Docket Nos. 9942 and 9943] ("XRoads Declarations"); and

WHEREAS, on October 19, 2009, XRoads on behalf of the Liquidating Trustee served the Notice of (A) Deadline for Casting Votes to Accept or Reject Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009, (B) Hearing to Consider Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation and (C) Related Matters (the "Confirmation Hearing Notice") to be served substantially in accordance with the Solicitation Procedures Order, as attested to in the XRoads Declarations; and

WHEREAS, in accordance with the terms of the Modified Solicitation Procedures Order, Holders of Claims in Class HC3a, HC3b, HC7, HC13, OP3a, OP3b, OP3c, OP6a, OP6b, OP6c, OP9a, OP9b, OP12 and AL3 were not entitled to vote to accept or reject the Modified Plan and the vote of such Holders of Claims or the Vote of their Class with respect to the Original Plan are binding on such Holders of Claims with respect to the Modified Plan; and

WHEREAS, in accordance with the Edmonson Declaration, as hereinafter defined, each of the above Classes, except Class HC3b, voted to accept the Original Plan and are deemed to have accepted the Modified Plan in accordance with the Modified Solicitation Procedures Order; and

WHEREAS, under the Modified Plan, Class HC3b has been reconstituted to remove all Claims that are now Claims in Class HC14 and as a result of such reconstitution, Class HC3b has accepted the Modified Plan with (i) a total of $394,342,847.09 deemed voting to accept the Modified Plan and $31,809.50 deemed voting to reject the Modified Plan and (ii) 33 Claims out

of 36 Claims of the total reconstituted HC3b Class is deemed to have voted to accept the Modified Plan; and

WHEREAS, on November 13, 2009, the Plan Proponents of the Modified Plan filed the Declaration of Monika McCarthy Regarding Tabulation of Votes in Connection with the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009, [Docket No. 9944] (the "Tabulation Certification"), attesting to the tabulation of all ballots received by no later than 5:00 p.m. Pacific Time on November 10, 2009 (the "Voting Deadline") from Holders of Claims in (a) Class HC10a (Special Deficiency Claims Against NC Credit), Class HC10b (Other Unsecured Claims Against NC Credit), and Class HC14 (Settling Parties' Claims in settlement of the Schroeder Litigation) and attesting to the results of the tabulation as follows:

a.   Class HC10a (Special Deficiency Claims Against NC Credit).   Class HC10a (Special Deficiency Claims Against NC Credit) voted in favor of the Modified Plan.   In claim amount, 100% of voting creditors in Class HC10a approved the Modified Plan.   A total of $20,000,000.00 voted to accept the Modified Plan, and $0.00 voted to reject the Modified Plan.   For numerosity, the rate of approval by creditors in Class HC10a was 100%.   In Class HC10a, the only vote received voted in favor of the Modified Plan.   No ballots were invalid.

b.   Class HC10b (Other Unsecured Claims Against NC Credit).   Class HC10b (Other Unsecured Claims Against NC Credit) voted in favor of the Modified Plan.   In claim amount, [100%] of voting creditors in Class HC10b approved the Modified Plan.   A total of $134,439,223.00 voted to accept the Modified Plan, and $0.00 voted to reject the Modified Plan.   For numerosity, the rate of approval by

4

creditors in Class HC10b was 100%. In Class HC10b, 4 of the 4 votes received voted in favor of the Modified Plan. No ballots were invalid.

c.    Class HC14 (Settling Parties' Claims in Settlement of the Schroeder Litigation). Class HC14 (Settling Parties' Claims in Settlement of the Schroeder Litigation) voted in favor of the Modified Plan. In claim amount, 99.97% of voting creditors in Class HC14 approved the Modified Plan. A total of $31,248,059.76 voted to accept the Modified Plan, and $10,270.55 voted to reject the Modified Plan. For numerosity, the rate of approval by Creditors in Class HC14 was 99.7%. In Class HC14, 383 of 384 votes received voted in favor of the Modified Plan. In addition, 5 votes were received after the Voting Deadline but each such ballot voted to accept the Modified Plan. No ballots were invalid; and

WHEREAS, the (1) Objection of New York State Teachers' Retirement System to Modified Second Amended Joint Chapter 11 Plan of Liquidation [Docket No. 9939] and the (2) Motion of Molly S. White and Ralph N. White, as Homeowners and Equity Holders for Relief and Sanctions and the White's Objection to Debtor's Modified Second Amended Joint Chapter 11 Plan and Confirmation ("White Objection") [Docket No. 9937] were filed (collectively the "Objections"); and

WHEREAS, on November 18, 2009, the Plan Proponents of the Modified Plan filed the Declaration of Alan M. Jacobs in Support of Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009 [Docket No. 9952 ] (the "Jacobs Declaration"); and

WHEREAS, on November 18, 2009, the Plan Proponents of the Modified Plan filed the Declaration of Samuel Star in Support of Confirmation of the Modified Second Amended Joint

Chapter 11 Plan of Liquidation Dated as of September 30, 2009 [Docket No. **9951**] (the "Star

Declaration"); and

WHEREAS, on November 18, 2009, the Plan Proponents of the Modified Plan filed the

Brief of the Plan Proponents of the Modified Plan in Support of Confirmation of the modified

Second Amended Joint Chapter 11 Plan of Liquidation Dated September 30, 2009 (the "Brief in

Support of Confirmation"); and

WHEREAS, the Plan Proponents of the Modified Plan requested, pursuant to the Brief in

Support of Confirmation that this Court take judicial notice of the docket in these chapter 11

cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other

documents filed, all orders entered, and all arguments made, proffered or adduced, at hearings

held before the Court, particularly the record of the Original Confirmation Hearing and this

Court's findings of fact included in its decision in In re New Century Holdings Inc., et. al., 30

B.R. 140 (Bankr. D. Del 2008) including but not limited to the following:

- First Interim Report of Michael J. Missal, Examiner [Docket No. 4503];

- Joint Motion of Debtors and Debtors in Possession and their Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Sections 105(a), 361, 362 and 363 of the Bankruptcy Code for Approval of Stipulation of Global Settlement Resolving Disputes with Adequate Protection Parties [Docket No. 5183];

- Order Granting Joint Motion of Debtors and Debtors in Possession and their Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Sections 105(a), 361, 362 and 363 of the Bankruptcy Code for Approval of Stipulation of Global Settlement Resolving Disputes with Adequate Protection Parties [Docket No. 5529];

- Declaration of Jamie L. Edmonson Regarding Tabulation of Votes in Connection with the First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008, as Further Amended [Docket No. 6406] ("Edmonson Declaration");

6

- Declaration of Holly Felder Etlin in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6407];

- Reply Brief of Plan Proponents in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 [Docket No. 6395];

- Supplemental Reply of the Official Committee of Unsecured Creditors in Further Support of Confirmation of Joint Chapter 11 Plan of Liquidation [Docket No.6398];

- Transcript of Hearing Before Honorable Kevin J. Carey United States Bankruptcy Court Judge dated April 24, 2008 [Docket No. 6464];

- Transcript of Trial Before Honorable Kevin J. Carey United States Bankruptcy Court Judge dated April 25, 2008 [Docket No. 6460];

- Summary of the Evidentiary Record that Supports Confirmation of the Plan of Liquidation [Docket No. 6650];

- Opinion on Confirmation [Docket No. 8254];

- Omnibus Order Approving Interim and Final Fee Applications [Docket No. 9266];

- Motion of the Trustee Preserving the Status Quo, Including Maintenance of the Liquidating Trust and Reorganized New Century Warehouse and Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of Final Order Consistent with the District Court's Memorandum Opinion [Docket No. 9728];

- Order Granting Motion of the Trustee Preserving the Status Quo, Including Maintenance of the Liquidating Trust and Reorganized New Century Warehouse and Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Office and Director of the Debtors, Pending Entry of Final Order Consistent with the District Court's Memorandum Opinion [Docket No. 9750];

- Motion for an Order Approving Global Settlement Agreement Among Alan M. Jacobs as Trustee of the New Century Liquidating Trust and the Beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan [Docket No. 9874];

- Office of the United States Trustee – Region 3 Post-Confirmation Quarterly Summary [Docket No. 9925]; and

- Order Approving Global Settlement Agreement Among Alan M. Jacobs as Trustee of the New Century Liquidating Trust and the Beneficiaries of the New

Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan [Docket No. 9927]; and

WHEREAS, a hearing to consider confirmation of the Modified Plan was held on November 20, 2009 before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware (the "Modified Confirmation Hearing"); and

WHEREAS, the Court received evidence as set forth in the record and the documents submitted into the record through testimony or otherwise; and

NOW, THEREFORE, the Court having considered the Modified Plan, the Jacobs Declaration, the Star Declaration, the Tabulation Certification, the XRoads Declarations, the Objections, the record of the Modified Confirmation Hearing, the record of the Original Confirmation Hearing, this Court's decision in In re New Century Holding Inc., et al., 390 B.R. 140 (Bankr. D. Del 2008) and the entire record of these chapter 11 cases and after due deliberation thereon;

THE COURT HEREBY FINDS AND DETERMINES THAT:

A.    Judicial Notice.  The Court takes judicial notice of the docket in these chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all arguments made, proffered or adduced, at hearings held before the Court, including the record of the Original Confirmation Hearing and this Court's findings of fact set forth in In re New Century Holdings Inc., et. al., 390 B.R. 140 (Bankr. D. Del 2008).

B.    Transmittal of Solicitation Packages.  The Modified Disclosure Statement (together with all exhibits thereto, including the Modified Plan), the Confirmation Hearing Notice, the ballots, and other required materials, as set forth in the Modified Solicitation Procedures Order, were transmitted and served substantially in accordance with the Modified

8

Solicitation Procedures Order and the Federal Rules of Bankruptcy Procedure (as amended, modified or replaced from time to time, the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and such transmittal and service was adequate and sufficient.

   C. <u>Burden of Proof</u>. The Plan Proponents of the Modified Plan have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of evidence, which is the applicable evidentiary standard in the Court. The Court also finds that the Plan Proponents of the Modified Plan have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

   D. <u>Plan Compliance with Bankruptcy Code</u>. As required by section 1129(a)(1) of the Bankruptcy Code, the Modified Plan complies with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including but not limited to sections 1122, 1123, 1129, and 1145 of the Bankruptcy Code.

   E. <u>Satisfaction of Plan Confirmation Requirements (11 U.S.C. § 1129(a))</u>. The Modified Plan meets all of the applicable requirements of section 1129(a) of the Bankruptcy Code.

   F. <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. The Modified Plan does not "discriminate unfairly" and is fair and equitable with respect to each impaired Class of Claims or Interests that has not voted to accept the Modified Plan (Class HC4a, Class HC4b, Class HC4c, Class HC4d, and Class HC4e), thereby satisfying the requirements of section 1129(b) of the Bankruptcy Code. No Holder of a Claim or Interest that is junior to the Claims in Class HC4a, Class HC4b, Class HC4c, Class HC4d, or Class HC4e will

receive any property on account of its Claim or Interest under the Modified Plan. The Modified

Plan satisfies the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code.

        G.      Principal Purpose of the Modified Plan (11 U.S.C. § 1129(d)).   The

principal purpose of the Modified Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933, thereby satisfying the requirements of

section 1129(d) of the Bankruptcy Code.

        H.      Conditions Precedent to the Effective Date.  Each of the conditions to the

Modified Effective Date, as set forth in Article 14 of the Modified Plan, is reasonably likely to

be satisfied.

        I.      Retention of Jurisdiction.  The Court properly may retain jurisdiction over

the matters set forth in Article 15 of the Modified Plan.

    NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

        1.      Confirmation.  The Modified Plan, a copy of which is annexed hereto as

Exhibit A, as modified by this Order, is hereby confirmed pursuant to section 1129 of the

Bankruptcy Code.

        2.      Capitalized Terms.  Capitalized terms not otherwise defined herein have

the meanings given to them in the Modified Plan.

        3.      Modified Confirmation Order Controls.  If there is any direct conflict

between the terms of the Modified Plan and the terms of this Order, the terms of this Order shall

control.

        4.      Objections.  All of the objections to confirmation of the Modified Plan and

all reservations of rights included therein, to the extent not resolved, withdrawn or rendered

moot, are overruled; provided, however, that the withdrawal of that portion of the NYSTRS

Objection relating to the pursuit of claims against the Debtors solely to the extent of available insurance proceeds is without prejudice to NYSTRS and the putative class (the "Securities Plaintiffs") in the shareholder securities fraud class action currently entitled In re New Century, Case No. 2:07-cv-00931-DDP (JTLx) and pending in the United States District Court for the Central District of California (the "Securities Litigation") (damages for which are asserted by the Securities Plaintiffs in proofs of claim number 2891, 2895, 2897, and 2901) to move for relief from the automatic stay in order to pursue their claims against the Debtors solely to the extent of available insurance coverage and proceeds in the Securities Litigation. All rights and arguments (legal or equitable) available to the Debtors and Liquidating Trust to object to and/or oppose such a motion by the Securities Plaintiffs for relief from the automatic stay are fully reserved.

     5.    Binding Effect of the Modified Plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Modified Confirmation Date, the provisions of the Modified Plan bind as of the Original Effective Date any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Modified Plan, whether or not such Holder has accepted the Modified Plan and whether or not the Holder has filed a Claim. On and after the Modified Confirmation Date, the EPD/Breach Claim Protocol shall be binding on all Holders of Claims in Classes OP3b and/or OP6b irrespective of how such Holders are deemed to have voted on the Modified Plan pursuant to the Modified Solicitation Procedures Order and irrespective of whether such Holders submit the information requested by the Debtors pursuant to the questionnaire referenced in the EPD/Breach Claim Protocol. A vote in favor of the Original Plan by a Holder of Claims in Classes OP3b and/or OP6b constitutes a vote in favor of the Modified Plan and express consent to the EPD/Breach Claim Protocol. The rights,

benefits and obligations of any Person named or referred to in the Modified Plan, whose actions may be required to effectuate the terms of the Modified Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

5(a). <u>Binding Effect of Actions Taken by Liquidating Trust</u>. Prior to the Modified Effective Date, pursuant to the terms of the Original Plan, the Original Confirmation Order and the Status Quo Order, all actions taken by the Liquidating Trustee of the Liquidating Trust, Plan Administrator of Reorganized Access Lending and sole officer and director of all of the Debtors from and after the Original Effective Date through the Modified Effective Date shall be valid and binding on any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Modified Plan, whether or not such Holder has accepted the Modified Plan and whether or not the Holder has filed a Claim.

6. <u>Modified Plan Settlements Approved</u>. The settlements and compromises provided for in the Modified Plan, including without limitation:

(i)     the Multi-Debtor Claim Protocol as defined in the Modified Plan;

(ii)    the EPD/Breach Claim Protocol as defined in the Modified Plan;

(iii)   the Intercompany Claim Protocol as defined in the Modified Plan;

(iv)   the distribution of the Litigation Proceeds among the various creditor groups as provided in the Modified Plan;

(v)    the establishment of the Joint Administrative Share as set forth in Exhibit C annexed to the Modified Plan; and

(vi)    the formation and composition of each of the Debtor Groups and the establishment and application of the Determined Distribution Amount methodology in Article 4 of the Modified Plan to calculate the distributions to creditors are hereby approved.

7.    Modified Plan Classification Controlling. The classifications of Claims and Interests for purposes of the distributions to be made under the Modified Plan shall be governed solely by the terms of the Modified Plan and this Order. The classifications set forth on the ballots tendered to the Debtors' Creditors in connection with voting on the Modified Plan or the Original Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject either the Modified Plan or the Original Plan, (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect, the actual classifications of such Claims under the Modified Plan or for distribution purposes and (c) shall not be binding on the Debtors, their Estates, the Liquidating Trustee, or the Plan Administrator.

8.    Modified Plan Distribution Provisions Controlling. Matters relating to distributions to Holders of Claims against and Interests of the Debtors, including but not limited to the timing of distributions, necessary reserves, distribution calculations, payment in full of Unsecured Claims, manner of distribution, treatment of de minimis distributions, delivery of distributions, treatment of undeliverable distributions, setoffs and recoupments, interest on Claims, treatment of withholding taxes, and reports regarding distributions, shall be governed solely by the terms of the Modified Plan and this Order.

9.    Injunction. Except as otherwise expressly provided in the Modified Plan or in this Order, and except in connection with the enforcement of the terms of the Modified Plan, this Order, or any documents provided for or contemplated in the Modified Plan or this

13

Order, on and after the Modified Effective Date effective as of the Original Effective Date, all Persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Modified Effective Date (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, or right of subrogation of any kind against any obligation due to any Protected Party or any property of any Protected Party; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of the Modified Plan.  Any Person or entity injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in Article 13 of the Modified Plan or in this Order shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Modified Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under the Modified Plan.  This Order also shall constitute an injunction enjoining any Person from

enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of the Modified Plan have been made or are not yet due under Article 4 of the Modified Plan; provided, however, that the foregoing injunction will not enjoin actions by the SEC to the extent that pursuant to section 362(b)(4) of the Bankruptcy Code such actions are not subject to section 362(a) of the Bankruptcy Code. Except as provided in Article 13.C of the Modified Plan, nothing in the Modified Plan or this Order shall (i) release or discharge any claims held by the SEC against any non-debtors or (ii) enjoin or restrain the SEC from enforcing any such claims against any non-debtors. Further, except as provided in Article 13.C of the Modified Plan as modified by this Order, nothing in the Modified Plan or this Order shall (i) release or discharge any claims currently asserted by the Securities Plaintiffs in the Securities Litigation against any non-debtors or any claims the court in the Securities Litigation permits the Securities Plaintiffs to assert against any non-debtors (collectively, the "Third Party Securities Claims") or (ii) enjoin or restrain the Securities Plaintiffs from enforcing any such claims against any non-debtors.

          10.    Term of Stay and Injunctions. Unless otherwise provided herein or in the Modified Plan, all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, under sections 105 or 362 of the Bankruptcy Code, the Modified Plan, or otherwise, and extant on the Modified Confirmation Date, shall remain in full force and effect until the later of (x) the entry of the Final Decree or (y) the dissolution of the Liquidating Trust. In accordance therewith, and without limiting the foregoing, until the later of (i) entry of the Final Decree or (ii) the dissolution of the Liquidating Trust, all Persons or entities (except as provided in section

362(b) of the Bankruptcy Code) are stayed from (i) the commencement or continuation of a judicial, administrative, or other action or proceeding, including the employment of service of process, against the Debtors that was or could have been commenced prior to the Petition Date, or to recover a claim against the Debtors that arose prior to the Petition Date, (ii) the enforcement, against the Debtors or against property of the Estates, of a judgment obtained before the Petition Date, (iii) any act to obtain possession of property of the Estates or of property from the Estates or to exercise control over property of the Estates, (iv) any act to create, perfect, or enforce any lien against property of the Estates, and (v) any act to collect, assess, or recover a claim against the Debtors that arose before the Petition Date; provided, however, that notwithstanding any provisions of the Modified Plan or this Order, including but not limited to Article 13 of the Modified Plan, (i) when permitted to do so in the Securities Litigation, the Securities Plaintiffs may serve discovery requests on the Liquidating Trust, as custodian of NCFC's books and records, and may seek to take any action reasonably necessary to enforce such requests and compel discovery in the Securities Litigation, and (ii) the rights of the Liquidating Trustee to object on any and all bases to such discovery requests (other than on the basis that such discovery requests violate the automatic stay or any injunction) in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any other applicable rules, laws, or legal authority and the rights to assert any and all applicable privileges (and other related rights) are fully reserved.

11.    Relief from Stay.  Notwithstanding any provision of the Modified Plan or this Order, (i) all orders of the Court entered during the Chapter 11 Cases, including, without limitation, the *Order Providing that the Automatic Stay Under Section 362(a) of the Bankruptcy Code Is Terminated to Permit the Commencement or Continuation of any Action to Foreclose*

*Upon or Extinguish an Interest Listed in the Name of a Debtor* dated as of July 14, 2008 (the "Stay Termination Order"), that provide for relief from the automatic stay imposed by section 362 of the Bankruptcy Code shall remain in full force and effect following the Modified Effective Date, (ii) to the extent that the Liquidating Trust or any third parties file motions prior to the Modified Effective Date seeking relief from the automatic stay imposed by section 362 of the Bankruptcy Code, any order of the Court granting such relief, including, without limitation, the Stay Termination Order, shall supersede this Order, and (iii) following the Modified Effective Date, parties may seek relief from all injunctions or stays provided for in the Chapter 11 Cases by orders of the Court, including this Order, upon sufficient notice and a hearing.

12.    <u>Exculpation</u>.  On and after the Original Effective Date but subject to the occurrence of the Modified Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, (a) pertaining to the timing of the commencement of the Chapter 11 Cases or (b) for any act or omission that occurred during the Chapter 11 Cases or in connection with the formulation, negotiation, and/or pursuit of confirmation of the Original Plan or the Modified Plan, the consummation of the Original Plan or the Modified Plan, and/or the administration of the Original Plan or the Modified Plan, and/or the property distributed under the Original Plan or to be distributed under the Modified Plan, except, in any case, for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Original Plan or the

Modified Plan to the extent permitted by applicable law; provided, however, that, solely with respect to the Securities Litigation, the Exculpated Parties are not released from any claim, cause of action or liability to the Securities Plaintiffs arising or accruing prior to March 14, 2008. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of the Original Plan, Modified Plan, Original Disclosure Statement or the Modified Disclosure Statement shall be deemed to act as a release of or to release any claims, Causes of Action or liabilities that (i) the Liquidating Trust, Reorganized Access Lending, the Estates, or the SEC, may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities pertaining to the timing of the commencement of the Chapter 11 Cases or (ii) solely with respect to the Securities Litigation, the Securities Plaintiffs may have against any Person or entity for any act, omission, or failure to act that occurred (a) with respect to the Debtors other than Access Lending, prior to April 2, 2007 and (b) with respect to Access Lending, prior to August 3, 2007, in either case, other than for claims, Causes of Action, or liabilities arising or accruing after March 14, 2007 and pertaining to the timing of the commencement of the Chapter 11 Cases; nor shall any provision of the Original Plan, Modified Plan or this Order be deemed to act as a release of or to release any Avoidance Actions.

13.    Release of Goldman.  On the Modified Effective Date, any and all claims, Causes of Action, rights or remedies of any kind or nature that the Debtors or the Estates have, may have or could have asserted against Goldman, its affiliates or its former or present officers, directors, employees, attorneys, financial advisors or other professionals, which claims, causes of

action, rights or remedies arise out of or relate to Access Lending shall be waived, set aside, discharged, settled, compromised, and released.

14. <u>IRS</u>. Notwithstanding Article 13.A of the Modified Plan and Paragraph 9 of this Order, the rights of the IRS with respect to the matters set forth therein shall be governed by this Paragraph 14.

a. <u>Right To Setoff</u>. The IRS may exercise its right to setoff unpaid Allowed Claims against refunds of taxes due and payable from the IRS to the Debtors, including the income tax refund claimed by the Debtors for the 2004 taxable year (the "Tax Refund").

b. <u>Proofs of Claim</u>. The IRS has filed (i) proof of claim number 4102 dated June 30, 2009 against TRS Holdings asserting a priority tax claim in the amount of $18,458,280.00 and a general unsecured claim in the amount of $27,272.64 (the "TRS Holdings Claim"), (ii) proof of claim number 3743 dated November 20, 2007 against NCMC asserting a priority tax claim in the amount of $363,529.97 and a general unsecured claim in the amount of $342,678.24 (the "NCMC Claim"), (iii) proof of claim number 4078 dated October 20, 2008 against Home123 asserting an administrative priority claim in the amount of $14,141.50 (the "Home123 Priority Claim"), (iv) proof of claim number 3388 dated September 26, 2007 against Home123 asserting a general unsecured claim in the amount of $5,234.88 (the "Home123 General Unsecured Claim") and (v) proof of claim number 540 dated May 23, 2007 against New Century Credit Corporation asserting a general unsecured claim in the amount of $6,827.04 (the "NC Credit

Claim"). The Debtors dispute that any amounts are owing to the IRS, have or will object to the proofs of claim filed by the IRS and assert that they are owed a refund of taxes by the IRS.

c.    <u>No Reserve for TRS Holdings Claim</u>. The IRS agrees, and it is hereby ordered, that in light of the Tax Refund claim of the Debtors and the IRS' right of offset provided in this Order, no reserve shall be required with respect to the TRS Holdings Claim, and the Liquidating Trustee may make distributions to Allowed Priority Claims and Allowed Unsecured Claims without being required to reserve any amounts, in the A/P/S Claims Reserve or otherwise, for the IRS in respect of the TRS Holdings Claim.

d.    <u>Reserve for NCMC Claim and Home123 Priority Claim</u>. Pursuant to Article 9.B.2. of the Modified Plan the Debtors shall reserve in the A/P/S Reserve $363,529.97 on account of the asserted priority portion of the NCMC Claim and $14,141.50 on account of the asserted administrative priority position of the Home123 Priority Claim until the amount of the Tax Refund is determined or such claims are resolved. To the extent such portions of the NCMC Claim and the Home123 Priority Claim become Allowed Claims and the Tax Refund is determined to exceed the allowed priority amount of the TRS Holdings Claim, the Liquidating Trustee may offset the allowed priority amount of the NCMC Claim and the allowed administrative priority amounts of the Home123 Priority Claim against the Tax Refund and may reduce the A/P/S Reserve by the amounts of such offset.

e.      Notice to Increase Reserve.  The Internal Revenue Service's Notice to
Increase the Reserve filed with this Court by the IRS on August 19, 2008
[Docket No. 8765] shall be deemed withdrawn by the IRS and shall be
null and void, have no legal effect, and is not binding on the Debtors, the
IRS, or any other party.

15.      Texas Comptroller and California Franchise Tax Board.  Notwithstanding
anything in the Modified Plan to the contrary, the setoff rights of the Texas Comptroller of
Public Accounts and the California Franchise Tax Board are not impaired or altered in any way
by the Modified Plan or this Order.

16.      Corporate Action.  As of the Original Effective Date but subject to the
occurrence of the Modified Effective Date, the matters under the Modified Plan involving or
requiring corporate action of the Debtors or their subsidiaries, including, but not limited to,
actions requiring a vote or other approval of the board of directors or shareholders and execution
of all documentation incident to the Modified Plan, shall be deemed to have been authorized by
this Order and to have occurred and be in effect from and after the Original Effective Date
without any further action by the Court or the officers or directors of the Debtors or their
subsidiaries.  Without limiting the foregoing, the Board of Directors of NCFC, in accordance
with the terms of the Original Plan, were authorized and directed to adopt resolutions providing
that (i) the dissolution of NCFC is approved and (ii) the Liquidating Trustee is authorized and
empowered to prepare or cause to be prepared, and to execute and file on behalf of NCFC
Articles of Dissolution with the Maryland State Department of Assessments and Taxation.  Such
actions of the Board of Directors of NCFC are adopted by this Order and the Modified Plan.  The
officers and directors of the Debtors ceased to serve immediately after the Original Effective

21

Date. From and after the Original Effective Date, pursuant to the terms of the Original Plan, the Liquidating Trustee became the sole officer and director of each of the Debtors. Any and all corporate actions taken by the Liquidating Trustee since the Original Effective Date either in implementing the Original Plan or proposing this Modified Plan are authorized and approved by this Order.

17.    Dissolution of Debtors Other than Access Lending. Immediately after the Modified Effective Date, the Liquidating Trustee shall be authorized to take, in his sole and absolute discretion pursuant to the Liquidating Trust Agreement, all actions reasonably necessary to dissolve the Debtors (other than Access Lending) and their subsidiaries under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; provided, however, (i) after all distributions have been made to Holders of Allowed Claims against NCFC, the Liquidating Trustee shall file a certificate of dissolution in the applicable state of incorporation for NCFC and NCFC shall dissolve and cease to exist; (ii) that the Liquidating Trustee shall not be compelled to dissolve any of the Debtors (other than NCFC) or their subsidiaries if to do so would unduly burden the Liquidating Trust; and (iii) no assets shall revest in the Debtors (other than Access Lending). Other than with respect to NCFC, which shall be dissolved as set forth in Article 8.C of the Modified Plan, the Liquidating Trustee shall have no liability for using his discretion to dissolve or not dissolve any of the Debtors or their subsidiaries. Whether or not dissolved, immediately after the Original Effective Date, the Debtors shall have no authorization to implement the provisions of the Original Plan or this

Modified Plan, except through the Liquidating Trustee as sole officer and director of each of the Debtors, unless specifically provided for in the Modified Plan.

18.    <u>Dissolution of Committee</u>.    Subject to the terms of Article 8.D of the Original Plan, on the Original Effective Date, the Committee was automatically dissolved, whereupon its members, Professionals, and agents were released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code or in connection with the Original Plan and its implementation.    Such dissolution and release of the Committee is ratified and reaffirmed by this Order.

19.    <u>Formation of Liquidating Trust</u>.    On or prior to the Original Effective Date, the Liquidating Trust was formed.    The Holders of Holding Company Debtor Unsecured Claims, Holders of NC Credit Unsecured Claims and the Holders of Operating Debtor Unsecured Claims shall be the sole beneficiaries of the Liquidating Trust.    Holders of Unsecured Claims against Access Lending shall not be beneficiaries of the Liquidating Trust.    Allowed A/P/S Claims (other than against Access Lending) shall be paid out of the Liquidating Trust Assets but Holders of such Allowed A/P/S Claims shall not be beneficiaries of the Liquidating Trust.    The formation of the Liquidating Trust as of the Original Effective Date is hereby adopted, ratified and confirmed by this Order and the Modified Plan.

20.    <u>Liquidating Trust Agreement</u>.    The Liquidating Trust Agreement, as amended [Docket No. 6414] was approved in the Original Confirmation Order and became effective as of the Original Effective Date.    Such approval and effectiveness is hereby adopted, ratified and confirmed by this Order and the Modified Plan.    In the event a provision of the Modified Plan or this Order conflicts with a provision of the Liquidating Trust Agreement, the provision of the Liquidation Trust Agreement shall control.

21.    <u>Transfer of Assets</u>.  On the Original Effective Date, the Liquidating Trust Assets, as described in Article 8.E.1 of the Original Plan, were conveyed directly by the Debtors other than Access Lending to the Liquidating Trust on behalf of the beneficiaries thereof.  As of the Original Effective Date, the transfer of the Liquidating Trust Assets to the Liquidating Trust on behalf of all of the beneficiaries is hereby adopted, ratified and confirmed by this Order and the Modified Plan.

22.    <u>Appointment of the Liquidating Trustee</u>.  Alan M. Jacobs ("Mr. Jacobs") was appointed Liquidating Trustee as of the Original Effective Date.  Mr. Jacobs commenced serving as the Liquidating Trustee on the Original Effective Date and continues to serve in such capacity pursuant to that Order Granting Motion of the Trustee Preserving the Status Quo, Including Maintenance of the Liquidating Trust and Reorganized New Century Warehouse and Maintenance of Alan M. Jacobs as Liquidating Trustee, Plan Administrator and Sole Officer and Director of the Debtors, Pending Entry of Final Order Consistent with The District Court's Memorandum Opinion dated July 27, 2009 ("Status Quo Order"); <u>provided</u>, <u>however</u>, that Mr. Jacobs, as Liquidating Trustee, was permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Original Confirmation Date (or such earlier date as authorized by the Committee) through the Modified Effective Date and shall be entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and the Modified Plan during such period pursuant to the terms of the Status Quo Order and this Order.  Mr. Jacobs' appointment as Liquidating Trustee as of the Original Effective Date is hereby adopted, ratified and confirmed by this Order and the Modified Plan.

23.    <u>Liquidating Trustee Deemed Estate Representative</u>.  The Liquidating Trustee has been deemed, pursuant to various orders of this Court, and shall continue to be

deemed the Estates' representative effective as of the Original Effective Date (except with respect to Reorganized Access Lending) in accordance with the provisions of the Bankruptcy Code, including but not limited to section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Modified Plan and the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

24.    <u>Liquidating Trustee as Sole Officer and Director of Debtors</u>.    The Liquidating Trustee was appointed as the sole officer and director of each of the Debtors (other than Access Lending) as of the Original Effective Date; such appointment is hereby adopted, ratified and confirmed by this Order and the Modified Plan.    To the extent necessary or appropriate to effect such appointment, the Liquidating Trustee is hereby authorized to amend the corporate governance documents of each of the Debtors (other than Access Lending).

25.    <u>Actions Against the Liquidating Trustee</u>.    Without the permission of the Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Liquidating Trustee in any forum other than the Court.

26.    <u>Bond</u>. The Liquidating Trustee shall at all times maintain a bond acceptable to the Plan Advisory Committee and the United States Trustee, or as approved by the Court.

27.    <u>Term and Compensation of the Liquidating Trustee</u>.  The Liquidating Trustee shall initially be compensated as set forth in the Liquidating Trust Agreement (which compensation may be revised by the Liquidating Trust with the consent of the Plan Advisory Committee) and shall not be required to file a fee application to receive compensation.  The Liquidating Trustee's compensation shall, however, be subject to the review and, if appropriate, objection of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement.

28.    <u>Removal, Replacement or Conflict of Trustee</u>.  The Liquidating Trustee may be removed or replaced at any time by the Plan Advisory Committee in accordance with the procedures in the Liquidating Trust Agreement.  In the event of the death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Liquidating Trustee, the Plan Advisory Committee shall have the authority to appoint a successor trustee as set forth in the Liquidating Trust Agreement.  In addition, if a conflict arises with the Liquidating Trustee for any reason, the Plan Advisory Committee shall be authorized to appoint a conflict trustee for the Liquidating Trust to deal solely with those conflict issues, without further order of the Court.  Such conflict trustee shall be retained on terms no more favorable than provided for the Liquidating Trustee in the Liquidating Trust Agreement and the conflict trustee shall be subject to the same Plan Advisory Committee oversight and the same rights and obligations of the Liquidating Trustee as set forth in the Liquidating Trust Agreement and this Order solely with respect to the specific matters for which it was retained to act as conflicts trustee.

29.    <u>Responsibilities of the Liquidating Trustee</u>.  The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Modified Plan and the Liquidating

Trust Agreement (including, but not limited to, those rights and duties set forth in Article 8.F.5(c) of the Modified Plan). The Liquidating Trustee shall be subject to the directions of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement. Notwithstanding anything to the contrary contained in the Modified Plan or this Order, acts by the Liquidating Trustee, including discretionary acts, will require the consent of or consultation with the Plan Advisory Committee as more specifically set forth in the Liquidating Trust Agreement. If there is any inconsistency or ambiguity in the Modified Plan, this Order or the Liquidating Trust Agreement in respect of the Plan Advisory Committee's role in the Liquidating Trustee's authority to act, the provision of the Liquidating Trust Agreement shall control.

30.    Liquidation of Trust Assets. The Liquidating Trustee, in its reasonable business judgment, and in an expeditious but orderly manner, shall liquidate and convert to cash the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Liquidating Trust Assets may be accomplished either through the sale of Liquidating Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

31.    Termination. The duties and powers of the Liquidating Trustee shall terminate upon the termination of the Liquidating Trust.

32.    Document Retention. From and after the Original Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to the Liquidating Trust by the Debtors as set forth in the Original Plan and the Liquidating Trust Agreement, and the Liquidating Trustee shall not destroy or otherwise

abandon any such Records absent further order of the Court after a hearing upon notice to parties in interest with an opportunity to be heard.   The Records the Debtors transferred to the Liquidating Trust on the Original Effective Date were to include, but not be limited to, all such documents and electronic data (i) identified for retention in connection with the investigation by the Audit Committee of NCFC's Board of Directors and (ii) produced to the SEC, the United States Attorney's Office, or the Examiner.

33.    Valuation of Assets.   As soon as practicable after the Original Effective Date the Liquidating Trustee made a good faith determination of the fair market value of the Liquidating Trust Assets.   This valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, the Holders of Holding Company Debtor Unsecured Claims and the Holders of Operating Debtor Unsecured Claims) for all federal and state income tax purposes.

34.    Payments by the Liquidating Trust.   The Liquidating Trust shall make distributions to Holders of Allowed Claims in accordance with Article 9 of the Modified Plan and this Order.   Any payments made by the Liquidating Trustee pursuant to Article 9 of the Original Plan shall be deemed adopted, ratified and confirmed by this Order and the Modified Plan.

35.    Termination of Liquidating Trust.   The Liquidating Trust shall terminate after its liquidation, administration and distribution of the Liquidating Trust Assets in accordance with the Modified Plan and its full performance of all other duties and functions set forth herein or in its Liquidating Trust Agreement.   The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Original Effective Date; provided, however, that, within a period of six (6) months prior to such termination date, the Court, upon motion by a party in interest, may

extend the term of the Liquidating Trust if it is necessary to facilitate or complete the liquidation of the Liquidating Trust Assets administered by the Liquidating Trust. Notwithstanding the foregoing, multiple extensions can be obtained so long as Court approval is obtained within six (6) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations 301.7701-4(d) for federal income tax purposes.

36.    Creation of the Plan Advisory Committee. On the Original Effective Date, the Plan Advisory Committee was appointed and adopted bylaws to govern the actions of the Plan Advisory Committee. On the Modified Effective Date, the appointment of the Plan Advisory Committee under the Original Plan is ratified and affirmed pursuant to the Modified Plan and this Order as of the Original Effective Date. The Plan Advisory Committee shall consist of the following five members of the Committee: Credit Suisse First Boston Mortgage Capital LLC; Deutsche Bank National Trust Co.; Fidelity National Information Services, Inc.; Kodiak Funding, L.P ; and Residential Funding Company, LLC. In the event of the resignation of a member of the Plan Advisory Committee, the remaining members shall use reasonable efforts to designate a successor from among the Holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation. Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership.

37.    Rights and Duties of the Plan Advisory Committee. The fiduciary duties, as well as the privileges, immunities, and protections that applied to the Committee prior to the

Original Effective Date shall apply to the Plan Advisory Committee for all actions taken from and after the Original Effective Date. The Plan Advisory Committee's role shall be to advise and approve the actions of the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement. The Plan Advisory Committee shall have the rights and powers set forth in the Liquidating Trust Agreement (including those rights and duties set forth in Article 8.G.4 of the Modified Plan). The duties and powers of the Plan Advisory Committee shall terminate upon the termination of the Liquidating Trust.

38.    <u>No Compensation of Members of the Plan Advisory Committee</u>. Except for the reimbursement of reasonable costs and expenses incurred in connection with their duties as members of the Plan Advisory Committee, including reasonable attorneys' fees subject to a cap to be established by the Plan Advisory Committee in its discretion, the members of the Plan Advisory Committee shall serve without compensation. Reasonable costs and expenses, as set forth in Article 8.G.5 of the Modified Plan, incurred by members of the Plan Advisory Committee shall be paid by the Liquidating Trust without need for approval of the Court.

39.    <u>Plan Advisory Committee Objection to Fees</u>.    The Plan Advisory Committee shall have ten (10) days, or such other period as determined by the Plan Advisory Committee and the Liquidating Trustee, from the delivery of a fee statement to object to the fees of any professional retained by either the Liquidating Trust or the Plan Advisory Committee by giving notice of any such objection to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Court for resolution. The uncontested portion of each invoice

shall be paid within thirty (30) days after its delivery to the Plan Advisory Committee and the Liquidating Trustee.

      40.    <u>Liability, Indemnification of Liquidating Trustee and Plan Advisory Committee</u>.  As of the Original Effective Date, subject to the occurrence of the Modified Effective Date, neither the Liquidating Trustee (including in its capacity as Plan Administrator), the Plan Advisory Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee, the Plan Advisory Committee or their respective members, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee or Plan Advisory Committee, nor shall such Liquidating Trustee (including in its capacity as Plan Administrator), or any member of the Plan Advisory Committee or their respective designees, agents or representatives, be liable for any act or omission taken or omitted to be taken in its capacity as Liquidating Trustee or Plan Administrator, or as a member of the Plan Advisory Committee, respectively, other than for specific acts or omissions resulting from such Liquidating Trustee's or such member's willful misconduct, gross negligence or fraud.  The Liquidating Trustee (including in its capacity as Plan Administrator), or the Plan Advisory Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Liquidating Trustee (including in its capacity as Plan Administrator) or the Plan Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not

to do so shall not result in the imposition of liability on the Liquidating Trustee (including in its capacity as Plan Administrator) or Plan Advisory Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and Plan Advisory Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust, the Original Plan or the Modified Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud.

41.    <u>Liquidating Trust Professionals</u>. The Liquidating Trustee may retain professionals, including but not limited to, counsel, accountants, investment advisors, auditors, professionals from the Liquidating Trustee's own firm, and other agents on behalf of the Liquidating Trust as necessary or desirable to carry out the obligations of the Liquidating Trustee hereunder and under the Liquidating Trust Agreement. More specifically, the Liquidating Trustee may retain counsel in any matter related to its administration, including counsel that has acted as counsel for the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases. Prior to the Original Effective Date, the Committee approved a budget for the first six (6) month period beginning on the Original Effective Date, on

a professional-by-professional basis, for professional fees for services to be rendered to the Liquidating Trust, which budget has and may continue to be altered from time to time by the Plan Advisory Committee in accordance with the Liquidating Trust Agreement provided that any fees and expenses of professionals retained by the Liquidating Trust that have been incurred prior to the date of the modification of the budget shall constitute budgeted amounts. Except with respect to services rendered and expenses incurred in connection with Fee Applications pending on the Original Effective Date or filed after the Original Effective Date, the Professionals retained by the Debtors or the Committee shall only be entitled to compensation for services performed and expenses incurred after the Original Effective Date to the extent, if any, of the amount budgeted for each respective Professional. Following the Original Effective Date, the Liquidating Trustee may pay, without application to the Court or any other court of competent jurisdiction, such professionals retained by the Liquidating Trust in accordance with agreements that the Liquidating Trustee determines to be reasonable. All payments made by the Liquidating Trustee since the Original Effective Date in accordance with the procedures set forth herein shall be deemed authorized and paid in accordance with the terms of this Order. The Plan Advisory Committee shall approve in advance the Liquidating Trustee's retention of professionals and their compensation arrangements.

42.    <u>Plan Advisory Committee Professionals</u>. The Plan Advisory Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Liquidating Trustee or for other purposes set forth in the Liquidating Trust Agreement and the reasonable fees and expenses of such counsel shall be paid by the Liquidating Trust.

43.    <u>Transfer of Access Lending Stock</u>. On the Original Effective Date, pursuant to Article 8.E of the Original Plan, TRS Holdings distributed the stock of Access

Lending to the Liquidating Trust, which became the sole shareholder of Reorganized Access Lending. Such transfer shall be ratified, adopted and confirmed as of the Modified Effective Date pursuant to the Modified Plan and this Order.

44. <u>The Plan Administrator</u>. The Liquidating Trustee shall act as Plan Administrator with respect to Reorganized Access Lending. From and after the Original Effective Date, Mr. Jacobs was appointed to serve as Plan Administrator in accordance with the terms of the Original Plan and the terms of that certain Plan Administrator Agreement, a copy of which was attached to the Notice of Filing of Plan Administrator Agreement [Docket No. 6413]. Such appointment was maintained pursuant to the Status Quo Order and shall be ratified, adopted and confirmed as of the Modified Effective Date by this Order. The initial Plan Administrator, and each successor Plan Administrator, shall serve until the earlier of (i) the dissolution of Reorganized Access Lending or (ii) such Plan Administrator's resignation, death, incapacity, removal or termination. As of the Original Effective Date, the articles of incorporation of Access Lending were amended to provide that the Plan Administrator shall be the chief executive officer and sole director of Reorganized Access Lending. Such amendment shall be ratified and reaffirmed as of the Modified Effective Date by this Order. In such capacity, the Plan Administrator shall have all necessary and appropriate power to act for, on behalf of and in the name of Reorganized Access Lending, with the same power and effect as if each of his or her actions in furtherance of his or her duties as a responsible person and as a board-appointed officer and shareholder-appointed director of Reorganized Access Lending were explicitly authorized by the appropriate board of directors or shareholders. In its capacity as Plan Administrator, the Liquidating Trustee shall take such actions as are in the best interests of Reorganized Access Lending.

45.    <u>Payment of Allowed A/P/S Claims Against Access Lending</u>.  Subject to Article 10.F.4 of the Modified Plan, the Plan Administrator shall pay all Allowed A/P/S Claims against Access Lending as soon as practicable after the later of (a) the Modified Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

46.    <u>Reimbursement of Debtors and Liquidating Trust</u>.  Subject to Article 10.F.4 of the Modified Plan, on the Modified Effective Date or as soon as practicable thereafter and following the establishment of the Access Lending Administrative Fund and the Access Lending A/P/S Reserve, the Plan Administrator shall pay from the Assets of Reorganized Access Lending to the Liquidating Trust (i) the amount of all Allowed A/P/S Claims allowed against Access Lending and paid by the Debtors other than Access Lending on or before the Modified Effective Date or by the Liquidating Trustee after the Modified Effective Date; (ii) the amount of administering the Estate of Access Lending, as determined by the Liquidating Trustee, incurred in the ordinary course prior to the Modified Effective Date and paid by the Debtors other than Access Lending or the Liquidating Trustee on or before the Modified Effective Date in the ordinary course; and (iii) the Joint Administrative Expense Share of Access Lending paid by the Debtors other than Access Lending on or before the Modified Effective Date or by the Liquidating Trustee after the Modified Effective Date.

47.    <u>Resolution of Claims and Prosecution of Access Lending Causes of Action</u>.  The Plan Administrator shall resolve all Disputed Claims against Access Lending as soon as practicable following the Modified Effective Date; provided, however, that all Creditors of Access Lending shall have the right to object to any Claims against Access Lending other than the Goldman AL3 Claim and the NCMC AL3 Claim and, provided, further, that prior to entering into any settlement agreement providing for the allowance of a Claim against Access Lending,

35

the Plan Administrator shall either (i) provide notice of the proposed settlement terms to Goldman, and Goldman shall have fifteen (15) days to object to the subject Claim, with Goldman's failure to object to such Claim within such time period deemed Goldman's consent to the proposed settlement or (ii) obtain Court approval of the proposed settlement agreement on no less than 20 days notice to the Creditors of Access Lending and subject to the rights and standing of Creditors of Access Lending to object to the allowance of such Claim, including based on all grounds and defenses available to Access Lending. The Plan Administrator shall have the exclusive right to prosecute all Access Lending Causes of Action.

48.    <u>Dissolution of Reorganized Access Lending.</u>  After all distributions have been made to Holders of Allowed Claims against Access Lending, the Plan Administrator shall file a certificate of dissolution in the applicable state of incorporation for Reorganized Access Lending, and Reorganized Access Lending shall dissolve and cease to exist. Any remaining Assets of Reorganized Access Lending shall be distributed to the Liquidating Trust as sole shareholder in a liquidating distribution, and shall become Liquidating Trust Assets that may be distributed pursuant to the terms of the Modified Plan.

49.    <u>Preservation of All Causes of Action</u>. Except as otherwise provided in the Modified Plan or in any contract, instrument, release or agreement entered into in connection with the Modified Plan, in accordance with the provisions of the Bankruptcy Code, including but not limited to, section 1123(b) of the Bankruptcy Code, the Liquidating Trustee (including, with respect to Reorganized Access Lending, in its capacity as Plan Administrator) shall be vested with, retain, and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors or the Estates may have against any Person or entity effective as of the Original Effective Date. The Liquidating Trustee may pursue such retained claims (other than those of

Access Lending) or Causes of Action (other than Access Lending Causes of Action) in accordance with the best interests of the creditors of the Debtors (other than Access Lending), the Estates (other than the Estate of Access Lending), or the Liquidating Trust in any and all appropriate jurisdictions as the Liquidating Trustee shall deem advisable.   The Plan Administrator may pursue such retained claims of Access Lending or Access Lending Causes of Action in accordance with the best interests of the creditors of Access Lending, the Estate of Access Lending, or Reorganized Access Lending in any and all appropriate jurisdictions as the Plan Administrator shall deem advisable.

50.   Successors.   The Liquidating Trust shall be the successor to the Debtors (other than Access Lending) and their Estates for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other litigation-related matters.   The Liquidating Trust shall succeed to the attorney-client privilege of the Debtors (other than Access Lending) and their Estates with respect to all Causes of Action (other than Access Lending Causes of Action) and other litigation-related matters, and the Liquidating Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion.   Reorganized Access Lending shall be the successor to Access Lending and its Estate for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Access Lending Causes of Action and other litigation-related matters.   Reorganized Access Lending shall succeed to the attorney-client privilege of Access Lending and its Estate with respect to all Access Lending Causes of Action and other litigation-related matters, and the Liquidating Trustee, it its capacity as Plan Administrator, may waive the attorney-client privilege with

respect to any Access Lending Causes of Action or other litigation-related matter, or portion thereof, in the Liquidating Trustee's discretion.

      51.    <u>Cancellation of Instruments and Agreements</u>.  As of the Original Effective Date subject to the occurrence of the Modified Effective Date, except as with respect to the stock of Access Lending, all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof were, with respect to the Debtors, canceled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights against the Debtors, the Estates, or the Liquidating Trust, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Modified Plan. Additionally, the Capital Trust Indentures, and all related notes and documents, including without limitation, the two series of Junior Subordinated Notes due 2036, the Amended and Restated Trust Agreement, dated as of September 13, 2006, and the Amended and Restated Trust Agreement, dated as of November 16, 2006, and the two series of trust preferred securities and trust common securities, respectively, were deemed automatically canceled and discharged on the Original Effective Date subject to the occurrence of the Modified Effective Date, provided, however, that the Capital Trust Indentures, and related notes and documents shall continue in effect solely for the purposes of (i) allowing the Holders of Capital Trust Claims to receive their distributions, if any, hereunder, including the right to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b Claim under Article 4.C.3 of the Modified Plan, (ii) allowing the Indenture Trustee to make distributions on account of the Capital Trust Claims, (iii) permitting the Indenture Trustee to asserts its charging lien against such distributions for payment of the Indenture Trustee Expenses, and (iv) authorizing, but not requiring, the Indenture Trustee to litigate and/or settle any Claim asserted by a purported Holder of a Senior Class HC3b

Claim under Article 4.C.3 of the Modified Plan.  The Capital Trust Indentures and related notes and documents shall terminate completely upon completion of all such distributions.  The Liquidating Trust shall not be responsible for any of the fees, expenses or costs incurred in connection with the continuation or termination of the Capital Trust Indentures, except as set forth in Article 4.C.3 of the Modified Plan.

52.    <u>Professional and Non-Professional Fee Administrative Claims</u>.    The deadlines and procedures established for parties seeking payment of Professional Fee Claims and Administrative Claims (other than Professional Fee Claims) in the Original Confirmation Order and Original Plan shall continue to be binding and enforceable upon and against all such parties in accordance with this Order.

53.    <u>Senior Claim Procedure</u>.    The procedure by which a Holder of a Class HC3b Claim may assert that it holds a Senior Class HC3b Claim is governed solely by the terms of the Original Plan as adopted by the Modified Plan including but not limited to Article 4.C.3 of the Modified Plan.  In order for any Holder of a Class HC3b Claim to assert that it holds a Senior Class HC3b Claim and, therefore, is entitled to the benefits of subordination as set forth in the Capital Trust Indentures, such Holder was required to file with the Court and serve on the Debtors, the Holders of the Capital Trust Claims, the Liquidating Trustee, and the Indenture Trustee a Subordination Statement no later than August 31, 2008.  If any Holder of a Class HC3b Claim filed a Subordination Statement, any distributions that would otherwise be made on account of Allowed Capital Trust Claims in accordance with Article 9 of the Modified Plan shall be turned over to a reserve to be held by the Liquidating Trustee (the "Senior/Sub Reserve") in a separate interest bearing account and to be distributed in accordance with Article 4.C.3 of the Modified Plan.  Any settlement related to the filing of Subordination Statements on or after the

Original Effective Date but prior to the occurrence of the Modified Effective Date shall not be effected by the confirmation of the Modified Plan or the entry of this Order.

54.    <u>Payment of Indenture Trustee Fees</u>.  Prior to turning over any distributions to the Senior/Sub Reserve, the Liquidating Trustee shall first pay to the Indenture Trustee out of such distributions (i) the balance of any Indenture Trustee Expenses previously incurred, plus (ii) the amount of $100,000 to be held by the Indenture Trustee in reserve (the "Future Expense Reserve") for payment of future Indenture Trustee Expenses, all of which Indenture Trustee Expenses are subject to the Indenture Trustee's charging lien.  The Future Expense Reserve shall only be funded from any distributions that would otherwise be made on account of Allowed Capital Trust Claims and not from any other Assets. In the event the amount of future Indenture Trustee Expenses exceeds $100,000 and the Future Expense Reserve is depleted, the Liquidating Trustee shall pay out of the Senior/Sub Reserve to the Indenture Trustee any such additional Indenture Trustee Expenses that may be incurred from time to time, upon receipt of one or more invoices from the Indenture Trustee.  In no event shall the Indenture Trustee Expenses be paid from any Assets except from the Senior/Sub Reserve, the Future Expense Reserve and from any distributions that would otherwise be made on account of Allowed Capital Trust Claims.

55.    <u>Reservation of Rights to Object to Claims</u>.  Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Modified Plan or this Order, or otherwise becomes an Allowed Claim prior to the Modified Effective Date, upon the Modified Effective Date, the Liquidating Trustee shall be deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative

Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, 510(b) Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. Within the time provided herein or by further order of the Court for objecting to Claims, the Debtors' or the Liquidating Trustee's failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Court when and if such Claim is sought to be enforced by the Holder of such Claim.

56.    Objections to Claims. Prior to the Original Effective Date, the Debtors were responsible for pursuing any objection to the allowance of any Claim. From and after the Original Effective Date, the Liquidating Trustee has and will continue to retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that are subject to objection by the Debtors as of the Original Effective Date), subject to any approvals of the Plan Advisory Committee as set forth in the Liquidating Trust Agreement; provided, however, that Creditors of Access Lending will have standing to object to Claims against Access Lending other than those Claims against Access Lending allowed by this Order or other order of the Court. Unless otherwise provided in the Modified Plan or by further order of the Court, any objections to Claims shall be filed and served no later than January 31, 2010 or 180 days after the date such Claim is filed, provided that the Liquidating Trustee may request, based upon a reasonable exercise of the Liquidating Trustee's business judgment, (and the Court may grant) an extension of such deadline by filing a motion with the Court. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Modified Plan.

57.  <u>Service of Objections</u>.  An objection to a Claim shall be deemed properly served on the Holder of such Claim if the Liquidating Trustee effects service by any of the following methods:  (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared or requests notice on the behalf of such Holder in the Chapter 11 Cases.

58.  <u>Determination of Claims</u>.  Except as otherwise agreed by the Debtors or the Liquidating Trustee (including in its capacity as Plan Administrator), any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim.  Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Modified Plan.  Other than the allowance of the Goldman HC3b Claim, the Goldman AL3 Claim, and the NCMC AL3 Claim, nothing contained in Article 11 of

the Modified Plan shall constitute or be deemed a waiver of any claim, right, or Causes of Action that the Debtors, the Liquidating Trust, or Reorganized Access Lending may have against any Person in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157.

59.    No Distributions Pending Allowance.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee may make, in his or her discretion, a distribution pursuant to the Modified Plan on account of the portion of such Claim that becomes an Allowed Claim.

60.    Claim Estimation.   In order to effectuate distributions pursuant to the Modified Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Debtors (if on or prior to the Original Effective Date) and the Liquidating Trust (if after the Original Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), had or shall have the right to seek an order of the Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of property that must be withheld from distribution on account of Disputed Claims; provided, however, that the Court shall determine (i) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

61.    Allowance of Claims Subject to Section 502 of the Bankruptcy Code. Allowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), (h), and (i) thereof.

62.    <u>Goldman HC3b Claim</u>.  The Goldman HC3b Claim shall be an Allowed Class HC3b Claim in the amount of $5,000,000.

63.    <u>Goldman AL3 Claim</u>.  The Goldman AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $9,506,754.00.

64.    <u>NCMC AL3 Claim</u>.  Subject to Article 4.M of the Modified Plan, the NCMC AL3 Claim shall be an Allowed Class AL3 Claim in the amount of $3,973,199.86.

65.    <u>Rejection of Remaining Executory Contracts and Unexpired Leases</u>.  On the Original Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Court pursuant to section 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the Petition Date that had not previously expired or terminated pursuant to its own terms, was rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective (i) as of the Original Confirmation Date or (ii) if the Executory Contract has been removed from the Assumption Schedule after the Original Confirmation Date, as of the date of such removal.  This Order shall constitute an order of the Court approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Original Confirmation Date.

66.    <u>Assumption of Certain Contracts and Leases and Cure Payments</u>.  On the Original Effective Date, all Executory Contracts listed on the Assumption Schedule were assumed.  No objections to the proposed cure amounts listed on the Assumption Schedule were filed.  Therefore the cure amounts set forth in the Assumption Schedule for each Executory Contract shall be binding on all parties pursuant to section 365 of the Bankruptcy Code.  Such assumption as of the Original Effective Date shall be ratified and reaffirmed by this Order.

67.    <u>Rejection Damages Bar Date</u>.   Except to the extent another Bar Date

applies pursuant to an order of the Court, any Proofs of Claim with respect to a Claim arising

from the rejection of Executory Contracts under the Original Plan (including Claims under

section 365(d)(3) of the Bankruptcy Code) were to be filed with XRoads Case Management

Services, P.O. Box 8901, Marina Del Rey, California 90295 (Telephone (888) 784-9571), and a

copy served on counsel for the Original Plan Proponents and the Liquidating Trustee by August

30, 2008, or such Claim shall be forever barred and shall not be entitled to a distribution or be

enforceable against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee,

their successors, their assigns, or their Assets.   Any Claim arising from the rejection of an

Executory Contract not filed by August 30, 2008 shall be so barred and any such Claims that are

timely filed shall be treated as a Claim in Class HC3b (Other Unsecured Claims against NCFC),

Class HC7 (Other Unsecured Claims against TRS Holdings), Class HC10b (Other Unsecured

Claims against NC Credit), Class HC13 (Other Unsecured Claims against NC Residual IV),

Class OP3c (Other Unsecured Claims against NCMC), Class OP6c (Other Unsecured Claims

against NC Capital), Class OP9b (Other Unsecured Claims against Home123), Class OP12

(Other Unsecured Claims against NC Asset Holding, NC Deltex, NC REO, NC REO II, NC

REO III, NC Residual III, NCM Ventures, and NCoral), or Class AL3 (Other Unsecured Claims

against Access Lending), depending on which Debtor the Claim is asserted against.   Nothing in

the Modified Plan or this Order extends or modifies any previously applicable Bar Date.

68.    <u>Insurance Policies</u>.  To the extent that any or all of the insurance policies

set forth on Exhibit A to the Original Plan are considered to be Executory Contracts, then

notwithstanding anything contained in the Original Plan, the Modified Plan or this Order to the

contrary, the Original Plan and the Modified Plan constitute motions to assume the insurance

policies set forth on Exhibit A to the Original Plan and to assign them to the Liquidating Trust. Subject to the occurrence of the Modified Effective Date, the entry of this Order constitutes approval of such assumption and assignment pursuant to section 365(a) of the Bankruptcy Code and a finding by the Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases as of the Original Effective Date. Unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Original Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Original Confirmation Date with respect to each such insurance policy set forth on Exhibit A to the Original Plan. To the extent that the Court determines otherwise with respect to any insurance policy, the Plan Proponents' of the Modified Plan reserve the right to seek rejection of such insurance policy or other available relief and all such relief is hereby reserved. The Modified Plan shall not affect contracts that have been assumed and assigned by order of the Court prior to the Original Confirmation Date. The certain insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date, and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit A to the Original Plan and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries or which may be property of the Debtors' Estates (including the rights, if any, to make, amend, prosecute, and benefit from claims) are retained and shall be transferred to the Liquidating Trust pursuant to the Modified Plan as of the Original Effective Date. Nothing herein or in the Modified Plan shall be deemed to constitute a determination that any of the proceeds of the insurance policies are or are not property of any Debtor's Estate.

46

69.     General Authority.  The Debtors, if on or prior to the Original Effective Date, and the Liquidating Trust or Reorganized Access Lending, if after the Original Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Modified Plan.  Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that the Liquidating Trust shall not be liable for the actions of the requesting party under any such powers of attorney; and provided, further, that the Liquidating Trustee may seek modification of this requirement on noticed motion and other parties may oppose such motion.  Powers of attorney executed by the Debtors pursuant to the Original Plan prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and

the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.

70.    <u>Tax Exemption</u>.    Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security under the Original Plan or the Modified Plan, or the making or delivery of an instrument of transfer under the Original Plan or the Modified Plan, including, without limitation, any transfers to or by the Debtors, if on or before the Original Effective Date, and the Liquidating Trustee, if after the Original Effective Date, of the Debtors' property in implementation of or as contemplated by the Modified Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, or similar tax.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded are hereby ordered and directed to accept such instrument, without requiring the payment of any stamp tax or similar tax.

71.    <u>Non-Severability</u>.    Except as specifically provided in the Modified Plan, the terms of the Modified Plan constitute interrelated compromises and are not severable.

72.    <u>Findings of Fact and Conclusions of Law</u>.    The determinations, finding, judgments, decrees and orders set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth herein, to the extent it is or may be so deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth herein, to the extent it is or may be so deemed a finding of fact, shall also constitute a finding of fact.

73.    <u>Jurisdiction of the Court</u>.    Until the Modified Effective Date, this Court shall retain jurisdiction over the Debtors, their Assets, and the Estates.  Thereafter, jurisdiction of the Court shall continue to the greatest extent legally permissible, including without limitation the subject matters set forth in Article 15.A of the Modified Plan.

74.    <u>Effectiveness of Order</u>.    Notwithstanding Bankruptcy Rules 3020(e) and 6004(g) or any other provision of the Bankruptcy Code or Bankruptcy Rules, this Order shall be effective immediately upon its entry, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

75.    <u>Notice of Confirmation Order and Effective Date</u>.  The Plan Proponents of the Modified Plan shall serve notice of the entry of this Order to those parties on whom the Modified Confirmation Hearing Notice was served.  Such service constitutes good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c).  On the Modified Effective Date, or as soon thereafter as is reasonably practicable, the Plan Proponents of the Modified Plan shall file with the Court a "Notice of Effective Date" in a form reasonably acceptable to the Plan Proponents of the Modified Plan in their sole discretion, which notice shall constitute appropriate and adequate notice that the Modified Plan has become effective; provided, however, that the Plan Proponents of the Modified Plan shall have no obligation to notify any Person of such fact other than the Office of the United States Trustee, the Liquidating Trustee, the Plan Administrator, the Plan Advisory Committee, parties with potential unpaid Administrative Claims, and counterparties to executory contracts and unexpired leases rejected pursuant to entry of this Order.  A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Liquidating Trustee's or Plan Administrator's option, by courier or

facsimile) to those Persons who have filed with the Court requests for notices pursuant to Bankruptcy Rule 2002.

76.    Modification of the Plan.  Subject to the restrictions on plan modifications set forth in section 1127 of the Bankruptcy Code, the Plan Proponents of the Modified Plan reserve the right to alter, amend or modify the Modified Plan before its substantial consummation.

77.    Substantial Consummation.  Substantial consummation of the Modified Plan shall be deemed to occur on the Modified Effective Date.  Further, the provisions of Federal Rule of Civil Procedure 62(a) and Bankruptcy Rules 3020(e) and 7062 shall not apply to this Order and the Plan Proponents of the Modified Plan are authorized to consummate the Modified Plan immediately upon entry of this Order.

78.    Revocation, Withdrawal, or Non-Consummation of Plan.  If after this Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Modified Confirmation Date, then upon motion by the Plan Proponents of the Modified Plan, this Order may be vacated by the Court; provided however, that notwithstanding the filing of such a motion, the Modified Confirmation Order shall not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion.  As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Plan Proponents of the Modified Plan.  If this Order is vacated pursuant to Article 14.B of the Modified Plan, the Modified Plan shall be null and void in all respects, and nothing contained in the Modified Plan, the Modified Disclosure Statement, nor any pleadings filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests

in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Plan Proponents of the Modified Plan in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Modified Confirmation Date. Article 14.B of the Modified Plan is not intended to establish the applicable legal standard with respect to vacating this Order, and the rights of all parties in interest to object to any motion filed pursuant to Article 14.B of the Modified Plan, including on the basis that the applicable legal standard has not been satisfied, are fully reserved.

79.    <u>Effectiveness of the Settlement Agreement</u>.  In accordance with the terms of the Order entered by this Court dated July 17, 2009, upon the Modified Effective Date, the Settlement Agreement that resolves the Schroeder Litigation shall be deemed effective and the Liquidating Trustee shall be authorized to take any and all actions necessary to implement the terms of the Settlement Agreement.

80.    <u>Release of Notice Requirement</u>.  Pursuant to the Order entered by this Court dated August 22, 2008 denying the Beneficiaries Stay Motion, this Court imposed on the Liquidating Trustee a requirement to provide prior notice to counsel for the Beneficiaries of certain distributions the Liquidating Trustee intended to make pursuant to the terms of the Original Plan. The entry of this Order shall terminate such obligations of the Liquidating Trustee to provide prior notice to counsel for the Beneficiaries of any distributions to be made under the Modified Plan.

81.    <u>References to Modified Plan Provisions</u>.  The failure to specifically include or reference any particular provision of the Modified Plan in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court that the Modified Plan be confirmed in its entirety.

82.    Integration of Confirmation Order Provisions.    The provisions of this Order are integrated with each other and are nonseverable and mutually dependent.

83.    Reversal.    If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Modified Plan prior to the Plan Proponent of the Modified Plan's receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Modified Plan or any amendments or modifications thereto.

Dated: November 20, 2009
        Wilmington, Delaware

THE HON. KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

52

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re:

Honorable Kevin J. Carey

Chapter 11

| | |
|---|---|
| New Century Mortgage Corporation | 07-10419 |
| New Century Mortgage Ventures, LLC | 07-10429 |
| NC Capital Corporation | 07-10420 |
| NC Residual III Corporation | 07-10424 |
| New Century R.E.O. Corp. | 07-10426 |
| New Century R.E.O. II Corp. | 07-10427 |
| New Century R.E.O. III Corp. | 07-10428 |
| NC Deltex, LLC | 07-10430 |
| NCoral, L.P. | 07-10431 |
| NC Asset Holding, L.P. | 07-10423 |
| Home123 Corporation | 07-10421 |
| New Century TRS Holdings, Inc. | 07-10416 |
| NC Residual IV Corporation | 07-10425 |
| New Century Credit Corporation | 07-10422 |
| New Century Financial Corporation | 07-10417 |
| New Century Warehouse Corporation | 07-11043 |

Debtors.

### MODIFIED SECOND AMENDED JOINT CHAPTER 11
### PLAN OF LIQUIDATION DATED AS OF SEPTEMBER 30, 2009

Mark S. Indelicato
Mark T. Power
Janine M. Cerbone
HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200

Bonnie Glantz Fatell
David W. Carickhoff
BLANK ROME LLP
1201 Market Street
Suite 1800
Wilmington, DE 19891
(302) 425-6400

Counsel for Alan M. Jacobs
as Plan Administrator of Reorganized Access Lending
and as Liquidating Trustee of the New Century Liquidating Trust
(including in the Liquidating Trustee's capacity as sole officer and director of each Debtor).

871230.002-1727008.9

**TABLE OF CONTENTS**

Page

ARTICLE 1.  DEFINITIONS.............................................................................1
 A. Defined Terms. ....................................................................1
 B. Other Terms .......................................................................27
 C. Time Periods .....................................................................28
 D. Exhibits ..........................................................................28

ARTICLE 2.  CLASSIFICATION OF CLAIMS AND INTERESTS .........................28
 A. Summary...........................................................................28
 B. Classification.....................................................................33

ARTICLE 3.  TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX
   CLAIMS ...............................................................................37
 A. Administrative Claims. ..........................................................37
 B. Priority Tax Claims. .............................................................39

ARTICLE 4.  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS...............39
 A. Priority Claims Against All Debtors (Classes HC1, HC5, HC8, HC11,
   OP1, OP4, OP7, OP10, and AL1).............................................40
 B. Secured Claims Against All Debtors (Classes HC2, HC6, HC9, HC12,
   OP2, OP5, OP8, OP11, and AL2)............................................40
 C. Class HC3:  Unsecured Claims Against NCFC.............................41
 D. Class 4:  NCFC Interests......................................................44
 E. Class HC7:  Other Unsecured Claims against TRS Holdings ...........46
 F. Class HC10:  Unsecured Claims Against NC Credit......................46
 G. Class HC13:  Other Unsecured Claims against NC Residual IV........47
 H. Class HC14:  Settling Parties Claims in the Schroeder Litigation.......48
 I. Class OP3:  Unsecured Claims Against NCMC............................48
 J. Class OP6:  Unsecured Claims Against NC Capital.......................50
 K. Class OP9:  Unsecured Claims Against Home123.........................52
 L. Class OP12:  Other Unsecured Claims Against NC Asset Holding, NC
   Deltex, NC REO, NC REO II, NC REO III, NC Residual III, NCM
   Ventures, and NCoral............................................................54
 M. Class AL3:  Other Unsecured Claims Against Access Lending...........55

ARTICLE 5.  ACCEPTANCE OR REJECTION  OF THIS MODIFIED PLAN .........56
 A. Impaired Classes of Claims that Voted to Accept the Original Plan.......56
 B. Impaired Classes of Claims Entitled to Vote on this Modified Plan.......57
 C. Classes Deemed to Accept the Modified Plan..............................57
 D. Classes Deemed to Reject this Modified Plan..............................58
 E. Nonconsensual Confirmation...................................................59
 F. Removal of Debtors .............................................................59

ARTICLE 6.  THE MULTI-DEBTOR CLAIM PROTOCOL FOR TREATMENT OF
            CLAIMS AGAINST MULTIPLE DEBTORS......................................................59
      A.    Allowed Unsecured Claims for Which More than One Holding Company
            Debtor Is Jointly and/or Severally Liable......................................................59
      B.    Allowed Unsecured Claims for Which More than One Operating Debtor Is
            Jointly and/or Severally Liable......................................................................60
      C.    Separate Application to Debtor Groups........................................................60
      D.    Inapplicable to Claims Against Access Lending or NC Credit.......................60
      E.    Inapplicable to Intercompany Claims...........................................................61

ARTICLE 7.  THE INTERCOMPANY PROTOCOL FOR TREATMENT OF
            INTERCOMPANY CLAIMS..............................................................................61
      A.    Claims of Holding Company Debtors Against Other Holding Company
            Debtors..........................................................................................................61
      B.    Claims of Operating Debtors Against Other Operating Debtors.....................61
      C.    Claims of Holding Company Debtors and NC Credit Against Operating
            Debtors..........................................................................................................61
      D.    Claims of Operating Debtors and NC Credit Against Holding Company
            Debtors..........................................................................................................61

ARTICLE 8.  MEANS OF IMPLEMENTING THIS MODIFIED PLAN...........................62
      A.    Implementation of this Modified Plan...........................................................62
      B.    Corporate Action...........................................................................................62
      C.    Dissolution of Debtors Other than Access Lending......................................63
      D.    Dissolution of the Committee........................................................................64
      E.    Vesting of Assets in Liquidating Trust; Assumption of Plan Obligations............64
      F.    Liquidating Trust...........................................................................................67
      G.    Plan Advisory Committee...............................................................................77
      H.    Liability, Indemnification..............................................................................80
      I.    Retention of Professionals.............................................................................82
      J.    Preservation of All Causes of Action.............................................................83
      K.    Successors......................................................................................................84

ARTICLE 9.  DISTRIBUTION UNDER THIS MODIFIED PLAN....................................85
      A.    Timing of Distributions..................................................................................85
      B.    Reserves.........................................................................................................87
      C.    Distribution Calculations...............................................................................93
      D.    Payment in Full of Unsecured Claims............................................................96
      E.    Manner of Distribution...................................................................................100
      F.    De Minimis Distributions...............................................................................101
      G.    Delivery of Distributions................................................................................101
      H.    Undeliverable Distributions............................................................................102
      I.    Setoffs and Recoupments................................................................................102
      J.    Distributions in Satisfaction; Allocation........................................................103
      K.    Cancellation of Notes and Instruments...........................................................103
      L.    No Interest on Claims.....................................................................................104
      M.    Withholding Taxes..........................................................................................104

ii

N.       Reports ........................................................................................................105

ARTICLE 10. IMPLEMENTATION OF THE MODIFIED PLAN AND
            DISTRIBUTIONS WITH RESPECT TO ACCESS LENDING.......................105
    A.       Transfer of Access Lending Stock.................................................................105
    B.       The Plan Administrator...................................................................................105
    C.       Reimbursement of Debtors and Liquidating Trust ........................................106
    D.       Resolution of Claims and Prosecution of Access Lending Causes of
             Action............................................................................................................107
    E.       Timing of Distributions on Account of Claims Against Access Lending. .......107
    F.       Access Lending Reserves. ..............................................................................108
    G.       Dissolution of Reorganized Access Lending .................................................112
    H.       Access Lending Income; Returns ...................................................................113
    I.       Removal of Access Lending ...........................................................................113

ARTICLE 11. PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED
            CLAIMS ...........................................................................................................113
    A.       Reservation of Rights to Object to Claims .....................................................113
    B.       Objections to Claims......................................................................................114
    C.       Service of Objections......................................................................................115
    D.       Determination of Claims.................................................................................115
    E.       No Distributions Pending Allowance .............................................................116
    F.       Claim Estimation ...........................................................................................116
    G.       Allowance of Claims Subject to Section 502 of the Bankruptcy Code ...........116
    H.       Goldman HC3b Claim ....................................................................................117
    I.       Goldman AL3 Claim ......................................................................................117
    J.       NCMC AL3 Claim..........................................................................................117

ARTICLE 12. EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................117
    A.       Assumption of Certain Contracts and Leases and Cure Payments...................117
    B.       Rejection of Remaining Executory Contracts and Unexpired Leases................118
    C.       Rejection Damages Bar Date...........................................................................118
    D.       Insurance Policies ..........................................................................................119

ARTICLE 13. EFFECT OF CONFIRMATION AND INJUNCTION.....................................120
    A.       Injunction.......................................................................................................120
    B.       Term of Injunctions........................................................................................122
    C.       Exculpation ....................................................................................................122
    D.       Release of Goldman .......................................................................................124
    E.       Binding Effect of the Original Plan and the Modified Plan..............................124

ARTICLE 14. CONDITIONS PRECEDENT .........................................................................125
    A.       Conditions Precedent to Modified Effective Date ..........................................125
    B.       Revocation, Withdrawal, or Non-Consummation of this Modified Plan ...........126

ARTICLE 15. ADMINISTRATIVE PROVISIONS.................................................................127
    A.       Retention of Jurisdiction.................................................................................127

iii

B.    Payment of Statutory Fees ....................................................................131
C.    General Authority ...............................................................................131
D.    Headings .............................................................................................132
E.    Final Order ..........................................................................................133
F.    Amendments and Modifications ........................................................133
G.    Payment Date ......................................................................................133
H.    Withholding and Reporting Requirements ........................................133
I.    No Waiver ...........................................................................................133
J.    Tax Exemption ...................................................................................134
K.    Securities Exemption .........................................................................134
L.    Non-Severability ................................................................................134
M.    Revocation ..........................................................................................135
N.    Modified Plan Controls Modified Disclosure Statement....................135
O.    Governing Law ...................................................................................135
P.    Notices ................................................................................................135
Q.    Filing of Additional Documents ........................................................136
R.    Direction to a Party ............................................................................137
S.    Successors and Assigns ......................................................................137
T.    Final Decree ........................................................................................137

ARTICLE 16. CONFIRMATION REQUEST .......................................................138

ARTICLE 17. BANKRUPTCY RULE 9019 REQUEST AND, TO EXTENT
REQUIRED, REQUEST PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(A) AND 1123(A)(5) ...............................................138

Exhibit A    Assumption Schedule

Exhibit B    EPD/Breach Claim Protocol

Exhibit C    Allocation of Joint Administrative Expense Shares

## INTRODUCTION

New Century Financial Corporation, New Century TRS Holdings, Inc., New Century Mortgage Corporation, NC Capital Corporation, Home123 Corporation) New Century Credit Corporation, NC Asset Holding, L.P., NC Residual III Corporation, NC Residual IV Corporation, New Century R.E.O. Corporation, New Century R.E.O. II Corporation, New Century R.E.O. III Corporation, New Century Mortgage Ventures, LLC, NC Deltex, LLC, NCoral, L.P., and New Century Warehouse Corporation, debtors and debtors in possession in the above-captioned chapter 11 cases, by and through their sole officer and director, and the Liquidating Trust and Reorganized Access Lending, by and through their Bankruptcy Court appointed Liquidating Trustee and Plan Administrator, respectively, propose this Modified Second Amended Joint Chapter 11 Plan of Liquidation pursuant to the provisions of the Bankruptcy Code.

## ARTICLE 1.

## DEFINITIONS

A.    **Defined Terms.**

Unless otherwise provided in this Modified Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of this Modified Plan, the following terms (which appear in this Modified Plan in capitalized forms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context requires otherwise.

"**510(b) Claims**" means, collectively, Series A 510(b) Claims, Series B 510(b) Claims, and Common Stock 510(b) Claims.

"**Access Lending**" means New Century Warehouse Corporation, a California corporation and a Debtor.

"**Access Lending Administrative Fund**" means the reserve established for the Reorganized Access Lending Operating Expenses and the expenses incurred in connection with the pursuit of the Access Lending Causes of Action in accordance with Article 10.F.1 of the Original Plan, which reserve may be augmented by the Plan Administrator in his discretion and shall be reviewed by the Plan Administrator subsequent to the Modified Effective Date to insure it complies with the Modified Plan.

"**Access Lending A/P/S Reserve**" means the reserve established, in accordance with Article 10.F.2 of the Original Plan, which reserve shall be reviewed by the Plan Administrator subsequent to the Modified Effective Date to insure it complies with the Modified Plan, to pay (i) all Allowed A/P/S Claims against Access Lending to the extent such Claims were not paid on the Original Effective Date or are not paid on the Modified Effective Date and (ii) any Disputed A/P/S Claim against Access Lending to the extent such Claim becomes an Allowed A/P/S Claim.

"**Access Lending Bar Date**" means, with respect to Access Lending, December 14, 2007, which is the date set by which all Persons, including governmental units, asserting a Claim against Access Lending must have filed a Proof of Claim against Access Lending or be forever barred from asserting such Claim.

"**Access Lending Causes of Action**" means all Causes of Action, including Avoidance Actions, of Access Lending, which Causes of Action are not included within the Liquidating Trust Assets.

"**Access Lending Claims Reserve**" means the reserve established, in accordance with Article 10.F.3 of the Original Plan, to pay any Disputed Unsecured Claim against Access Lending to the extent such Claim becomes an Allowed Unsecured Claim against Access Lending, which reserve shall be reviewed by the Plan Administrator subsequent to the Modified Effective Date to insure it complies with the Modified Plan.

"**Access Lending Interest**" means an Interest in Access Lending, all of which Interests are owned by TRS Holdings.

"**Access Lending Net Distributable Assets**" means the amount as calculated pursuant to Article 10.F.4 of this Modified Plan.

"**ACH**" means an automated clearing house transfer from a domestic bank.

"**Adequate Protection Proceeds**" means any funds distributed by a Final Order to the estate of NCMC from either of two escrow accounts established pursuant to the Order Granting Adequate Protection Pursuant to Bankruptcy Code Sections 105(a), 361, 362 and 363(b)(1) and Establishing Preliminary Procedures for Resolving Certain Claims dated June 29, 2007 [Docket No. 1729] and held by Hahn & Hessen LLP, as escrow agent.

"**Administrative Claim**" means any Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code, that arose prior to the Original Effective Date, including, without limitation: (a) Professional Fee Claims, (b) any post-petition taxes subject to administrative treatment, and (c) fees and charges assessed against the Debtors or the Estates pursuant to Section 1930 of title 28 of the United States Code; provided, however, any Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code, that arose after the Original Effective

3

Date shall be treated as a Trust Operating Expense to the extent it would otherwise be a Trust Operating Expense if the Original Plan had not been reversed.

"**Administrative Claim Request**" means a request for payment of an Administrative Claim (excluding Professional Fee Claims) that was timely served and filed in accordance with the terms of the Original Plan on or before the Administrative Claim Request Deadline or August 31, 2008.

"**Administrative Claim Request Deadline**" means the date set as the deadline for filing Administrative Claim Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Orders, which occurred on August 31, 2008, pursuant to the terms of the Original Plan.

"**Administrative Fund**" means the reserve established for the Trust Operating Expenses and expenses incurred in connection with the pursuit of the Causes of Action in accordance with Article 9.B.1 of the Original Plan and adopted by Article 9.B.1 of this Modified Plan, which reserve may be augmented by the Liquidating Trustee in consultation with the Plan Advisory Committee.

"**Allowed Claim**" or "**Allowed Interest**" means, respectively, a Claim or Interest: (i) that has been Scheduled and (a) is not Scheduled as disputed. contingent, or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Bar Date and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; (iii) as to which a timely Administrative Claim Request has been filed as of the Administrative Claim Request Deadline and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; or (iv) that has been allowed by a Final Order; or (v) which is allowed in this Modified Plan;

4

provided, however, that prior to the deadline imposed by the Original Plan or an extension thereof to file objections to a given Claim, which deadline is currently January 31, 2010 but may be extended by further order of the Court, no Claim shall be treated as Allowed to the extent that it is filed by the holder of such Claim (x) in an amount greater than the amount listed for such Claim by the Debtors in their Schedules or (y) asserting a priority higher than the priority listed for such Claim by the Debtors in their Schedules.

"**Allowed [Class Designation, A/P/S Administrative, Priority Tax, Priority, Secured, Unsecured, Other Unsecured, 510(b), or Capital Trust] Claim**" means an Allowed Claim of the specified Class or an Allowed Claim that is an A/P/S Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Unsecured Claim, Other Unsecured Claim, 510(b) Claim, or Capital Trust Claim.

"**Allowed [Debtor Group] Unsecured Claims**" means Unsecured Claims that are allowed against Debtors in the specified Debtor Group.

"**April Debtors Bar Date**" means with respect to all Debtors other than Access Lending (i) August 31, 2007 and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against any Debtor(s) other than Access Lending must have filed a Proof of Claim against such Debtor(s) or be forever barred from asserting such Claim.

"**A/P/S Claim**" means any Claim that is an Administrative Claim, Priority Claim, Priority Tax Claim, or Secured Claim.

"**A/P/S Claims Reserve**" means the reserve established, in accordance with Article 9.B.2 of the Original Plan, which reserve shall be reviewed by the Liquidating Trustee subsequent to the Modified Effective Date to insure it complies with the Modified Plan, to pay (i) all Allowed

A/P/S Claims (other than against Access Lending) to the extent such Claims were not paid on the Original Effective Date or are not paid on the Modified Effective Date and (ii) any Disputed A/P/S Claim (other than against Access Lending) to the extent such Claim becomes an Allowed A/P/S Claim.

"**Assets**" means the assets of each of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates.

"**Assumption Objection Deadline**" means the date seven (7) days prior to the Original Confirmation Hearing.

"**Assumption Schedule**" means the schedule (attached as Exhibit A to the Original Plan) of Executory Contracts (not previously assumed in the Chapter 11 Cases) assumed by the Debtors effective as of the Original Effective Date in accordance with the terms of the Original Plan, as adopted by this Modified Plan, together with the amount of cure payments, if any, paid or to be paid by the Liquidating Trustee in accordance with section 365(b)(1) of the Bankruptcy Code.

"**Avoidance Actions**" means all Claims and Causes of Action arising under sections 522, 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code.

"**Ballot**" means the form or forms distributed to each Holder of an Allowed Claim in an impaired Class entitled to vote on this Modified Plan or the Original Plan on which the Holder indicates acceptance or rejection of this Modified Plan or the Original Plan or any election for treatment of such Claim under this Modified Plan or the Original Plan.

"**Ballot Date**" means the date set by the Bankruptcy Court by which all Ballots must be received for the Modified Plan.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the date hereof.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware and any other court that exercises jurisdiction over the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure applicable to the Chapter 11 Cases and the Local Rules of the Bankruptcy Court, each as in effect from time to time.

"**Bar Dates**" means, collectively, the Access Lending Bar Date and the April Debtors Bar Date.

"**Bar Date Orders**" means (i) the "Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency Thereof" [Docket No. 1721] and (ii) the "Order Establishing Bar Dates for Filing Proofs of Claim in the Chapter 11 Case of New Century Warehouse Corporation and Approving Form, Manner and Sufficiency Thereof" dated October 23, 2007 [Docket No. 3404].

"**Business Day**" means any day except a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

"**Capital Trust Claim**" means a Claim against NCFC arising from NCFC's obligations under the Capital Trust Indentures.

"**Capital Trust Indenture**" means, collectively, (i) that certain Junior Subordinated Indenture between NCFC and Wells Fargo Bank, N.A., as trustee, dated as of September 13,