## NOTICE OF FORECLOSURE SALE

1. *Property to Be Sold.* The property to be sold is described as follows:

LOT 2, BLOCK 6, NEW CITY BLOCK 16984, HUNTERS CREEK NORTH, UNIT-3, IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 8200, PAGE (S) 215-216, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust recorded in

Document 20060146541 real property records of Bexar County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

Date: 03/01/2011

Time: The sale will begin no earlier than 10:00 AM or no later than three hours thereafter.

Place: Bexar County Courthouse, Texas, at the following location:

THE SOUTH END OF THE BEXAR COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE or as designated by the County Commissioners Court.

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. The sale shall not cover any part of the property that has been released of public record from the lien of the deed of trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

5. *Obligations Secured.* The deed of trust executed by NANCY ALANIS, provides that it secures the payment of the indebtednesses in the original principal amount of $193,500.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the POOLING AND SERVICING AGREEMENT Dated as of October 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC3 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2006-NC3 is the current mortgagee of the note and deed of trust.

6. *Default and Request to Act.* Default has occurred under the deed of trust, and the mortgagee has requested a Substitute Trustee conduct this sale. Notice is given that before the sale the mortgagee may appoint another person substitute trustee to conduct the sale.

ROB VALDESPINO, BRENDA ROLON, MICHAEL W. ZIENTZ, JELENA KOVACEVIC, JOHN LYNCH OR EMILY STROOPE

11-000099-670
13210 HUNTERS VIEW, SAN ANTONIO, TX 78230



152

Temecula, CA 92008-8071



7196 9006 9294 9314 9480

U.S. Postage and
Fees Paid
WSO

*Send Correspondence to:*
Mackie, Wolf & Zientz, PC
Pacific Center I, Suite 660
14180 N. Dallas Pkwy
Dallas, TX 75254

20110114-89
ACC3

NANCY ALANIS
13210 HUNTERS VIEW ST
SAN ANTONIO, TX 78230-2032

1320-v8



153

DOCUMENT SCANNED AS FILED

# Loren W. Peters
**Attorney**

6800 Park Ten Blvd. # 219N
San Antonio, Texas 78213

Telephone (210) 734-9024
Facsimile (210) 734-9025
lorenpeters@logixonline.com

February 3, 2011

Mackie Wolf Zientz & Mann, P.C.
Pacific Center I, Suite 660
14180 North Dallas Parkway
Dallas, Texas 75254

Re: Nancy Alanis, 13210 Hunters View, San Antonio, Texas 78230; Loan No.
705813079; MWZM No. 11-000099-670

Dear Ladies & Gentlemen:

I represent Nancy Alanis, who has asked that I respond to your January 13, 2011 letter /
Notice Of Acceleration Of Loan Maturity and accompanying Notice of Foreclosure Sale
scheduled for March 1 2011.

Please be advised that Ms. Alanis has disputed "notice to cure default" letters from loan
servicers, and disputes the balance due stated in your Notice of Acceleration of $222,256.14.
That number obviously includes late charges and other charges which have been called to the
loan servicer's attention in prior communications. Copies of those prior communications are
enclosed. No response to the prior communications has been made. The history of
correspondence and objections are repeated below.

With these objections, you as a "debt collector" are required to suspend the foreclosure and
other collection activities pending your investigation of Ms. Alanis complaints under Section
392.202 of the Texas Finance Code, and Section 161 of the FDIC Consumer Protection
Regulations. If I do not receive written confirmation that the foreclosure has been suspended no
later than Friday February 11, I will file a petition for injunction and damages under the Texas
and Federal Fair Debt Collection Practices Acts, and on additional bases.

The history of prior communications and Ms. Alanis objections to the loan servicers'
accounting includes the following:

1. In July, 2010, we were in communication with HomeEq Servicing, through its attorneys,
   and raised objections to claims of default and amounts said due on the loan from
   HomeEq. HomeEq's attorney at that time was Ian Bates of Mann & Stevens, P.C., 550
   Westcott Street, Suite 560, Houston, Texas 77007.

154 2. Mr. Bates provided us with a copy of HomeEq's Payment History. In attempting to

entries which had no relevance to the loan or the agreed payments, reversals of erroneous entries, and other evidence of negligence or incompetence in making the entries. Although the document is thoroughly confusing, I reached the conclusions set forth below concerning what had happened.

3. It appears that a number of entries noting payments made by Ms. Alanis were posted beyond the dates she could have expected them to arrive at HomeEq, resulting in late fee charges which are not valid.

4. During the course of the loan, HomeEq did not post all payments made by Ms. Alanis to interest and principal paid – but instead posted them in suspense accounts and ultimately to repayment of advances by HomeEq for insurance premiums (more about this later). This is clearly in violation of the provisions of the Deed of Trust which secures the loan. Section 2 of the Deed of Trust provides in pertinent part.

> "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority; (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3."

There are no exceptions in Section 2 for application of Ms. Alanis regular monthly payments.

Section 3 of the deed of trust deals with escrow items (i.e. taxes and insurance premiums). The lender waived the requirement for Ms. Alanis to escrow taxes and insurance premiums when the loan was closed, and did not provide her at any time with written notice revoking the waiver, as required by Section 3 for a revocation to be effective. Therefore the only pertinent part of Section 3 is,

> "If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to repay to Lender any such amount."

The pertinent part of Section 9 provides,

> "Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment."

Demands for reimbursement of advances were not made, and if made would have alerted Ms. Alanis to errors early and facilitated resolution of the issues.

5. When HomeEq posted a monthly payment check to a suspense account instead of crediting it to principal and interest as the Deed of Trust required, it considered the loan to be in default for non-payment, and assessed late charges. Instead of placing a payment in a suspense account to reimburse advances for insurance, HomeEq was obligated to credit the payment to Principal and Interest, and to bill Ms. Alanis for any advances it made. Only after a bill for reimbursement became delinquent was HomeEq permitted to consider the loan in default. HomeEq never did bill Ms. Alanis for advances it made for insurance (although such advances are of arguable validity – see below), but simply made

155

unjustified late charges and monthly interest on paid but non-posted principal, all to Ms. Alanis damage, together with adverse effect on her credit rating resulting from HomeEq reporting to credit reporting agencies.

6. Ms. Alanis paid all taxes prior to their becoming delinquent. Taxes in Texas are permitted to be paid in two installments – the first installment prior to November 30 of the tax year, and the second installment prior to June 30 of the following year. There is at least one instance in which HomeEq considered tax payments to be delinquent when they were in fact timely.

7. There were some issues with insurance coverage. For example, on August 20, 2007, HomeEq posted an advance by it of $5,184.53 for purchase of insurance for the period from June 16, 2007 to June 16, 2008. However, Ms. Alanis had received a letter from New Century Mortgage Corporation (the originator of the loan) acknowledging receipt of her 2007 insurance coverage for all of 2007 (a copy is enclosed). The August 20, 2007 advance was obviously a mistake - not a default under the loan. Yet, HomeEq used monthly principal and interest payments to reimburse itself for the wrongful advance. This is but one example of misapplication of loan payments. Had HomeEq notified Ms. Alanis of the perceived but nonexistent lapse in insurance coverage as required by the Deed of Trust, she could have produced evidence of coverage and the matter would not have gotten out of hand.

8. Beginning with the January 1, 2010 payment, HomeEq began returning the payments because in its view the loan was in default and in foreclosure. That view was wrong and HomeEq should have communicated with Ms. Alanis in a good faith attempt to resolve the issues prior to her having to hire me to get its attention. HomeEq did not in fact respond to Ms. Alanis attempts to communicate and resolve the issues in good faith.

In a December 7, 2010 letter, Ocwen Loan Servicing (who replaced HomeEq as loan servicer) demanded past due principal and interest totaling $17,962.45 to cure default. Objection was made to that demand for reasons which include the following:

(a) The demand indicated past due principal and interest totaling $17,962.45. This was exactly 11 payments of $1,632.95 each. This was not possible. HomeEq accepted principal and interest payments from Ms. Alanis through September, 2009, then began returning the checks on the basis that the account was in foreclosure. The checks returned by HomeEq were dated October 5, 2009, November 9, 2009, December 9, 2009, January 13, 2010, February 11, 2010, April 13, 2010, and May 17, 2010. In 2010, Ocwen accepted principal and interest checks for October, November, and December. Only 7 principal and interest payments are missing. They were tendered by Ms. Alanis, but returned.

(b) The demand included an amount of $2002.76 for "Prev-Prior Servicer Fees." Ms. Alanis demanded an explanation and justification for those fees.

(c) Ms. Alanis objected to late charges. She tendered every payment, and should not be charged late charges for refused payments.

(d) A Property inspection fee ($21.00) and "Prev Property Evaluation Expenses" referenced in the demand are not appropriate as they are not "expressly chargeable authorized by the agreement creating the obligation or legally chargeable to the consumer" (Texas Finance

156

(e) "Recent Account Activity" reflected in the demand stated that on December 7, 2010, Ocwen paid $5,537.00 in real property taxes to Bexar County. This is not reflected in the County Tax Collector's on-line records. Those records instead show that Nancy Alanis paid 2010 taxes in full.

Copies of prior correspondence are enclosed for your reference.

Neither HomeEq nor Ocwen made any response to the objections described above, even though the Federal and Texas Fair Debt Collection Practices Acts require a response, and require a suspension of collection activities pending an investigation by the debt collectors. Now you as attorney and agent for the loan servicer and as a debt collector are continuing with collection activities through threat of foreclosure. In so doing, you also will be in violation of the Texas and Federal Acts.

Ms. Alanis wants to resolve the issues on an amicable basis. However, to date no one on the lender side has been willing to even discuss the matter. It is my hope that you will do so, and help facilitate a resolution.

Again, if by February 11, 2011, I do not receive written confirmation that foreclosure for March 1 has been canceled pending response to Ms. Alanis Objections, I will have no choice but to file suit to stop the foreclosure and seek damages from your clients.

Yours truly,


Loren W. Peters


157

DOCUMENT SCANNED AS FILED

- Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature

X _____  ☐ Agent
                   ☐ Addre

B. Received by ( Printed Name )   C. Date of

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Mackie Wolf Zientz & Mann, P.C.
Pacific Center I, Suite 600  G G G
14180 North Dallas Parkway
Dallas, Texas 75254

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Mercha
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)        7010 1060 0001 1392 9552

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Mackie Wolf Zientz & Mann, P.C.
Street, Apt. No.: 4180 N. Dallas Pkwy, St. 66
City, State, ZIP+4: Dallas Tx 75254

7010 1060 0001 1392 9552

DOCUMENT SCANNED AS FILED

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | § § § § | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § § | |
| *Movant* | § § | |
| v. | § § | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | § § § | |
| And | § § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § § | |
| *Respondents* | § § | |

### NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)    FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

# Ex-11

FILED
2/10/2015 5:02:39 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Lisa Morales

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | 45th JUDICIAL DISTRICT |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS | § | |
| THROUGH CERTIFICATES SERIES | § | |
| 2006 NC3; | § | |
| and | § | |
| HOMEQ          SERVICING | § | |
| CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| *Defendants* | § | OF BEXAR COUNTY, TEXAS |

### SECOND AMENDED COUNTERCLAIM BY DEFENDANT/
### COUNTER-PLAINTIFF WELLS FARGO BANK, NA, AS TRUSTEE

COMES NOW, Defendant/Counter-Plaintiff Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("Wells Fargo"), and files this its *Second Amended Counterclaim* and respectfully shows as follows:

## I.  COUNTERCLAIM

**A.  Background**

1.      Plaintiff/Counter Defendant Nancy Alanis ("Alanis") filed this action on February 22, 2011, in the 45th Judicial District Court of Bexar County, Texas.  Wells Fargo filed its Original Answer on April 6, 2011.

---

DOCUMENT SCANNED AS FILED
DOCUMENT SCANNED AS FILED

**B.    Parties and Jurisdiction**

2.    Wells Fargo is the Counter-Plaintiff in this cause.

3.    Alanis has previously appeared in this cause.  She may be served through their counsel of record in this case.

**C.    Summary of Facts**

4.    On or about June 15, 2006, Alanis executed an Adjustable Rate Balloon Note ("Note") for $193,500.00 payable to New Century Mortgage Corporation ("New Century") as lender on a loan secured by the real property commonly known as 13210 Hunters View, San Antonio, Texas 78230 (the "Property") and more particularly described as follows:

> LOT 2, BLOCK 6, NEW CITY BLOCK 16984, HUNTERS CREEK NORTH, UNIT-3, IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 8200, PAGE(S) 215-216, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

5.    Concurrently with execution of the Note, Alanis executed a Deed of Trust ("Deed of Trust" and together with the Note, the "Loan Agreement") with said Deed of Trust being recorded as document number 20060146541 in the official public records of Bexar County, Texas.  Wells Fargo is the current legal owner and holder of the Note, and mortgagee of the Deed of Trust pursuant to that certain Transfer of Lien recorded as document number 20110164234 in the official public records of Bexar County, Texas.  Ocwen Loan Servicing, LLC services the Loan for Wells Fargo.

6.    Under the terms of the Note and Deed of Trust, Alanis was required to pay when due the principal and interest on the debt evidenced by the Note, as well as any applicable charges and fees due under the Note.

7.    The Loan Agreement further provides that should Alanis fail to make payments on the Note as they became due and payable, or fail to comply with any or all of the covenants

SECOND AMENDED COUNTERCLAIM BY DEFENDANT/COUNTER-PLAINTIFF WELLS FARGO BANK,

DOCUMENT  SCANNED  AS  FILED
DOCUMENT  SCANNED  AS  FILED

and conditions of the Deed of Trust, then the lender may enforce the Deed of Trust selling the Property pursuant to applicable law and in accordance with the provisions set out in the Loan Agreement.

8.    Alanis failed to make her payments under the terms of the Loan Agreement. Notice of default and intent to accelerate was provided on December 8, 2010. Alanis claims the prior servicer of the Note accelerated the loan in April 2010. However, her bundled payments on the Note were applied after April, 2010 and additional payments were made by Alanis after this date and accepted, thereby abandoning any acceleration prior to that time. Additionally, Alanis obtained injunctive relief against foreclosure in this Action, which tolled limitations. Further, the loan was accelerated again in January, 2011, thus starting anew the running of any prior applicable limitations period. Alanis has not cured the default.

**D.    Cause of Action—Breach of Contract**

9.    The foregoing paragraphs are incorporated by reference for all purposes.

10.    Wells Fargo asserts a cause of action for breach of contract against Alanis. Wells Fargo performed its obligations fully under the contract; however, Alanis breached the contract by failing to substantially perform material obligations required under the contract (principally, the timely payment of amounts due under the Note, including taxes and insurance).

11.    Such breach is the proximate cause of injury and damages to Wells Fargo. For these damages, Wells Fargo seeks a judgment of foreclosure of the Property.

12.    Wells Fargo has been forced to hire the undersigned attorneys to seek damages for Alanis's breach of contract. Wells Fargo is therefore entitled to and seeks judgment against Alanis for its reasonable attorneys' fees in this action, both through trial and in the event of a subsequent appeal, as provided by the Note and by statute. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2004).

SECOND AMENDED COUNTERCLAIM BY DEFENDANT/COUNTER-PLAINTIFF WELLS FARGO BANK,

DOCUMENT SCANNED AS FILED
DOCUMENT SCANNED AS FILED

13.    All conditions precedent have been performed or have occurred.

**E.    Cause of Action—Suit on a Note**

14.    The foregoing paragraphs are incorporated by reference for all purposes.

15.    According to the terms of the Note, Alanis is obligated to make monthly mortgage payments to Wells Fargo, as well as timely payments for taxes and insurance. Alanis breached her obligations to tender full and timely amounts due under the Note. Pursuant to the Note and Deed of Trust, Wells Fargo has accelerated the amount of the debt owed. Despite written demand, Alanis failed to tender payment for the amount due under the Note. Wells Fargo thus seek a judgment permitting foreclosure on the Property pursuant to the Deed of Trust.

16.    Wells Fargo is entitled to recover its reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code and the Note.

17.    All conditions precedent have been performed or have occurred.

**F.    Alternative Cause of Action—Judicial Foreclosure**

18.    The foregoing paragraphs are incorporated by reference for all purposes.

19.    Alternatively, Wells Fargo asserts a cause of action for judicial foreclosure against Alanis. Wells Fargo, as the current legal owner and holder of the Note and the mortgagee of record, has the right to enforce the Note and Deed of Trust. Wells Fargo has fully performed its obligations under the Loan Agreement; however, Alanis did not comply with the Loan Agreement by failing to substantially perform material obligations required under its terms (principally, the timely payment of amounts due under the contract, among others).

20.    Wells Fargo seeks a judgment allowing it to foreclose on the Property in accordance with Texas law and the Loan Agreement.

21.    In the alternative to a trustee's sale, for failure to cure the default of the Loan Agreement, Wells Fargo seeks to enforce its security interest against the Property in an amount

DOCUMENT SCANNED AS FILED
DOCUMENT SCANNED AS FILED

equal to the payoff at the time of judgment. Pursuant to Texas Rules of Civil Procedure 735.3, Wells Fargo seeks a judgment for judicial foreclosure together with an order of sale issued to the sheriff or constable of the county where the Property is located directing the sheriff or constable to seize and sell the Property in satisfaction of the Loan Agreement debt.

22. Wells Fargo has been forced to hire the undersigned attorneys to seek an order allowing foreclosure as a result of Alanis's failure to comply with the Loan Agreement. Wells Fargo is therefore entitled to and seeks judgment against Alanis for its reasonable attorneys' fees in this action, both through trial and in the event of a subsequent appeal, as provided by the Deed of Trust signed by Alanis.

23. All conditions precedent have been performed or have occurred.

**G.    Alternative Cause of Action—Equitable Subrogation**

24. The foregoing paragraphs are incorporated by reference for all purposes.

25. Pursuant to the doctrine of equitable subrogation, Wells Fargo is subrogated to the secured creditors paid on Alanis's behalf after the subject loan closed. Specifically, Wells Fargo paid taxes to secured creditor on Alanis's behalf.

26. Alanis breached her obligations to tender full and timely payment to Wells Fargo and Wells Fargo accelerated the amount of the debt owed. Despite written demand, Alanis failed to tender payment for the amount due under the Note. Wells Fargo thus seeks a judgment declaring the Note to be in default and a judgment permitting foreclosure on the Property so that Wells Fargo may recoup the moneys expended to pay off Plaintiff's secured debt, namely taxes on the Property among others.

27. All conditions precedent have been performed or have occurred.

**WHEREFORE, PREMISES CONSIDERED,** Defendant/Counter-Plaintiff Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated

SECOND AMENDED COUNTERCLAIM BY DEFENDANT/COUNTER-PLAINTIFF WELLS FARGO BANK,

DOCUMENT SCANNED AS FILED
DOCUMENT SCANNED AS FILED

as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage

Pass Through Certificates Series 2006 NC3, requests that:

(a)     Plaintiff/Counter-Defendant Nancy Alanis be cited to appear and answer herein and that, upon final hearing;

(b)     the Court declare that the following sums are secured by the Deed of Trust on the Property: (i) the outstanding balance of the Note; (ii) prejudgment interest; (iii) post-judgment interest from the date of judgment until paid; and (iv) costs of court;

(c)     the Court declare that Wells Fargo may foreclose on the Property pursuant to the Note and the Deed of Trust;

(d)     in the alternative to a trustee's sale, Wells Fargo recover a judgment of foreclosure together with an order of sale issued to the sheriff or constable of the county where the Property is located directing the sheriff or constable to seize and sell the Property in satisfaction of the Loan Agreement debt as set forth above;

(e)     in the further alternative, Wells Fargo recover a judgment of foreclosure pursuant to the doctrine of equitable subrogation;

(f)     Wells Fargo be awarded its attorneys' fees and all costs of suit; and

(g)     the Court award Wells Fargo such other and further relief to which it may be entitled.

---

SECOND AMENDED COUNTERCLAIM BY DEFENDANT/COUNTER-PLAINTIFF WELLS FARGO BANK,

900

DOCUMENT SCANNED AS FILED
DOCUMENT SCANNED AS FILED

Respectfully submitted,

By:    _/s/ Mark D. Cronenwett_
      **MARK D. CRONENWETT**
      Texas Bar No. 00787303
      mcronenwett@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, PC**
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
(214) 635-2650
(214) 635-2686 (Fax)

and

      **JEFFREY A. HILLER**
      Texas Bar No. 00790883

**CACHEAUX, CAVAZOS &**
      **NEWTON, L.L.P.**
333 Convent Street
San Antonio, Texas  78205
Phone: (210) 222-1642
Facsimile: (210) 222-2453

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF WELLS FARGO BANK, NA, AS TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 10th day of February, 2015, a true and correct copy of the foregoing document was served via e-mail and e-service electronic delivery to the counsel of record listed below:

Philip Ross
1006 Holbrook Rd.
San Antonio, Texas 78218

      _/s/ Mark D. Cronenwett_
      **MARK D. CRONENWETT**

DOCUMENT  SCANNED  AS  FILED
DOCUMENT  SCANNED  AS  FILED

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.*,<br><br>Debtors. | §<br>§<br>§<br>§ | Case No. 07-10416 (BLS)<br><br>(Chapter 11) |
| NANCY K ALANIS<br><br>*Movant*<br><br>v.<br><br>Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>And<br><br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>*Respondents* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)   FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

# Ex-12

FILED
1/28/2016 4:07:30 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Alex Lewicke

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | 45th JUDICIAL DISTRICT |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS | § | |
| THROUGH CERTIFICATES SERIES | § | |
| 2006 NC3; | § | |
| and | § | |
| HOMEQ SERVICING | § | |
| CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| *Defendants* | § | OF BEXAR COUNTY, TEXAS |

MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELLS FARGO BANK
NATIONAL ASSOCIATION, AS TRUSTEE, AND OCWEN LOAN SERVICING, LLC,
ON RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE

Defendant/Counter-Plaintiff Wells Fargo Bank National Association, as Trustee for

the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed

Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3

("Wells Fargo"), and Defendant Ocwen Loan Servicing, LLC ("Ocwen") (collectively

"Defendants") file this Motion for Partial Summary Judgment on RESPA, Section 51.002 of the

Texas Property Code and Counterclaim for Foreclosure and respectfully show as follows:

### I. SUMMARY

This is a mortgage case. Plaintiff brings claims for violations of the Real Estate

Settlement Practice Act and violations of Section 51.002 of the Texas Property Code. Plaintiff

has no evidence to support these claims, and they should be dismissed.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                      PAGE 1

839

DOCUMENT SCANNED AS FILED

Defendants have brought a counterclaim for judicial foreclosure.  Plaintiff has breached her loan agreement by, among other things, failing to make timely and full payments.  Therefore, Defendants are entitled to a judgment of foreclosure as a matter of law..

## II. EVIDENCE

Defendants rely on the following evidence, true and correct copies of which are attached hereto:

Exhibit A.    Affidavit of Gina Feezer;

    A-1.    Note (copy from closing);

    A-2.    Deed of Trust;

    A-3.    Transfer of Lien;

    A-4.    Notice of Default;

    A-5.    HomEq Transaction History, beginning October 4, 2006;

    A-6.    Ocwen Transaction History;

    A-7.    Payoff Quote; and

    A-8.    Loan Reconciliation.

Exhibit B.    Affidavit of Mark D. Cronenwett;

    B-1.    Note (copy of original with indorsement).

Exhibit C.    Affidavit of Mark D. Cronenwett;

    C-1.    Resume

    C-2    Billing Statements .

Exhibit D.    Affidavit of Jeffrey Hiller;

    D-1.    Resume

    D-2    Billing Statements.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE
1878

                                             PAGE 2

DOCUMENT  SCANNED  AS  FILED

Defendants may also rely on pleadings, motions, responses, orders and other papers on file in this cause, where specifically referenced herein.

### III. RELEVANT FACTS

On or about June 15, 2006, Alanis executed an Adjustable Rate Balloon Note ("Note") for $193,500.00 payable to New Century Mortgage Corporation ("New Century") as lender on a loan secured by the real property commonly known as 13210 Hunters View, San Antonio, Texas 78230 (the "Property") and more particularly described as follows:

> LOT 2, BLOCK 6, NEW CITY BLOCK 16984, HUNTERS CREEK NORTH, UNIT-3, IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 8200, PAGE(S) 215-216, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

(Exhibit A-1.)

Concurrently with execution of the Note, Alanis executed a Deed of Trust ("Deed of Trust" and together with the Note, the "Loan Agreement") with said Deed of Trust being recorded as document number 20060146541 in the official public records of Bexar County, Texas. (Exhibit A-2.) Wells Fargo is the current legal owner and holder of the Note, and mortgagee of the Deed of Trust pursuant to that certain Transfer of Lien recorded as document number 20110164234 in the official public records of Bexar County, Texas. (Exhibit A-3.) Ocwen Loan Servicing, LLC services the Loan for Wells Fargo. (Exhibit A.)

Under the terms of the Note and Deed of Trust, Alanis was required to pay when due the principal and interest on the debt evidenced by the Note, as well as any applicable charges and fees due under the Note. (Exhibits, A-1.) Plaintiff agreed to repay the money pursuant to a set schedule. (Exhibit A-1 at ¶¶3, 5.) Additionally, under the terms of the Deed of Trust, Plaintiff is

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                          PAGE 3

841

DOCUMENT SCANNED AS FILED

required to pay all taxes which may attain a priority over the Deed of Trust, and further, Plaintiff is required to maintain hazard insurance on the Property. (Exhibit A-2 at ¶¶ 3-4.)

The Loan Agreement further provides that should Alanis fail to make payments on the Note as they became due and payable, or fail to comply with any or all of the covenants and conditions of the Deed of Trust, then the lender may enforce the Deed of Trust selling the Property pursuant to applicable law and in accordance with the provisions set out in the Loan Agreement. (DOT at ¶22.)Plaintiff failed to make her required payments as required by the terms of the Loan Agreement. (Exhibits A, A-1, A-5, A-6.) Notice of default and intent to accelerate was provided on December 8, 2010. (Exhibit A-4.) Plaintiff has not cured the default. (Exhibits A, A-6.) The debt was accelerated. (*See D's First Amd. Counterclaim* at ¶8.)

As of November 30, 2015, $356,217.31 is due and owing on the Note. Further, Defendants have incurred $185,364.00 in attorneys' fees in prosecution of their counterclaims and in defense of Plaintiff's affirmative claims in this cause. Under the Deed of Trust, Defendants are entitled to recover $185,365.00 in attorneys' fees through summary judgment and total non-recoverable costs of $7,671.28; $2,500.00 for having to respond to an unsuccessful Motion for New Trial; $10,000.00 for responding to an unsuccessful appeal to the intermediate court of appeals; and $2,500.00 for responding to an unsuccessful petition for review to the Texas Supreme Court for which no response brief is requested; and $5,000.00 for preparing a response brief to the Texas Supreme Court should one be requested yet prove unsuccessful for Plaintiff.

### IV. GROUNDS FOR SUMMARY JUDGMENT

A. Plaintiff's claim under RESPA is based upon a premise that the accounting of the loan is incorrect. Judge Pozza on November 10, 2015 found that, as a matter of law, Defendants' accounting of the loan is accurate. Therefore, Plaintiff's RESPA claim is unfounded as a matter of law.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                     PAGE 4
1870

842

DOCUMENT SCANNED AS FILED

B. Plaintiff's can present no evidence that Defendants failed to respond a Qualified Written Request and that she suffered damages as a proximate result; therefore, Plaintiff's RESPA claim fails.

C. Plaintiff's claim for alleged violations of section 51.002(d) of the Texas Property Code for allegedly failing to send a Notice of Default with Intent to Accelerate on December 8, 2010 fails as a matter of law because no foreclosure has occurred.

D. Plaintiff can present no evidence of an alleged violation of section 51.002(d) of the Texas Property Code for allegedly failing to send a Notice of Default with Intent to Accelerate on December 8, 2010 because she has no evidence that such Notice was not, in fact, sent.

E. Defendants are entitled to a judgment of foreclosure as a matter of law.

F. Defendants are entitled to an award of attorney's fees as a matter of law.

## V. SUMMARY JUDGMENT STANDARDS

A traditional summary judgment should be granted when the movant conclusively shows that: (1) there are no genuine issues of material fact; and (2) the moving parties are entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Rhone-Poulenc v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999). A defendant that negates at least one of the essential elements of the causes of action against it or conclusively establishes all the elements of an affirmative defense is entitled to summary judgment. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

Defendants also seek summary judgment based on Plaintiffs' lack of evidence. Under Texas Rule of Civil Procedure 166a(i), the mere filing of a no-evidence motion shifts the burden to the respondent to come forward with evidence sufficient to take the case to a jury. *Scroggs v. Am. Airlines, Inc.*, 150 S.W.3d 256, 261 (Tex. App.—Dallas 2004, no pet.). If the respondent fails to meet this burden, the court *must* grant the motion. *See Comm'n for Lawyer Discipline v. C.R.*, 54 S.W.3d 506, 511 (Tex. App.—Fort Worth 2001, pet. denied). To defeat a no evidence motion for summary judgment, the respondent must produce more than a scintilla of evidence to raise a genuine issue of material fact. *First Assembly of God, Inc. v. Texas Utils. Elec. Co.*, 52 S.W.3d 482, 491 (Tex. App.—Dallas 2001, no pet.). To Defendants' knowledge, there is no

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                                    PAGE 5

DOCUMENT SCANNED AS FILED

evidence is existence, much less currently on file, on which Plaintiffs might rely to defeat the no-evidence grounds for summary judgment.

## VI.   ARGUMENT AND AUTHORITIES

### A.   RESPA/No Damages as a Matter of Law.

To state a claim for relief under 12 U.S.C. § 2605(e) of RESPA, a plaintiff must present evidence showing that: (1) the defendant is a loan servicer under RESPA; (2) the plaintiff sent correspondence meeting the requirements of a Qualified Written Request ("QWR") to the defendant; (3) the defendant failed to respond to the QWR in a timely manner; and (4) the defendant's failure to respond to the QWR caused actual damages. *Hill v. Wells Fargo Bank*, No. V-12-11, N.A., 2012 U.S. Dist. LEXIS 79189 * 18-19 (S.D. Tex. June 6, 2012).

Plaintiff in her Seventh Amended Petition complains that Defendants failed to respond to several alleged QWR's and, because of those failures, Plaintiff was delayed in learning about all of the errors in the accounting of her loan and, consequently, suffered damages from this delay. *See P's 7ᵗʰ Am. Pet., pp.53-54.*

Judge Pozza, however, on November 10, 2015 entered a summary-judgment order confirming that Defendants' accounting of the loan was accurate. *See November 10, 2015 Summary Judgment Order signed by Judge Pozza, on file in this cause and incorporated herein in be reference.* Therefore, assuming that Plaintiff sent appropriate QWR's and assuming the Defendants failed to timely respond as alleged, Plaintiff could have suffered no damages as she alleges because there were no accounting errors and no alleged erroneous determination that she was in default. *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1018-19 (N.D. Tex. 2013) (dismissing RESPA claims were borrower failed to plead show any damages were suffered as proximate result of alleged failure to respond to a QWR). Plaintiff should take nothing on her RESPA claim.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                                        PAGE 6
1880

844

DOCUMENT SCANNED AS FILED

**B. RESPA/No Evidence of a RESPA violation.**

To state a claim for relief under 12 U.S.C. § 2605(e) of RESPA, a plaintiff must present facts showing that: (1) the defendant is a loan servicer under RESPA; (2) the plaintiff sent correspondence meeting the requirements of a QWR to the defendant; (3) the defendant failed to respond to the QWR in a timely manner; and (4) the defendant's failure to respond to the QWR caused actual damages. *Hill*, 2012 U.S. Dist. LEXIS 79189 * 18-19. Plaintiff can present no evidence to support elements 2, 3, or 4 with respect to Defendants Ocwen and Wells Fargo. Furthermore, with respect to Defendant Wells Fargo, Plaintiff can present no evidence to support element 1. Therefore, summary judgment should be granted in Defendants' favor on this claim pursuant to the Texas Rule of Civil Procedure 166a(i).

**C. Section 51.002(d)/No Damages as a Matter of Law..**

Plaintiff asserts a claim for an alleged for violation of Section 51.002(d) of the Texas Property Code. *See P's 7th Am. Pet., p.56.* A violation of Section 51.002(d) is not an independent tort but rather would support a claim for wrongful foreclosure. *Hill*, 2012 U.S. Dist. LEXIS 79189 * 23-24. The elements of a claim for wrongful foreclosure are (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Id.* A party seeking a remedy for wrongful foreclosure must also show that it suffered harm. *Id.* If a party has not been dispossessed of the subject property, the plaintiff will have suffered no damages as a matter of law. *Id.; see also Suarez v. Ocwen Loan Servicing, LLC,* No. 5:15–CV–664–DAE (W.D. Tex., Nov. 12, 2015) (Ezra, J.).

Here, the Property has not been foreclosed. *See Exhibit A.* Plaintiff thus has not been dispossessed of the Property and her claim for alleged violations of Section 51.002(d) fails as a matter of law.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                          PAGE 7

DOCUMENT SCANNED AS FILED

### D. Section 51.002(d)/No Evidence of a violation.

Plaintiff asserts a claim for an alleged for violation of Section 51.002(d) of the Texas Property Code. *See P's 7th Am. Pet., p.56.* A violation of Section 51.002(d) is not an independent tort but rather would support a claim for wrongful foreclosure. *Hill*, 2012 U.S. Dist. LEXIS 79189 * 23-24. The elements of a claim for wrongful foreclosure are (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Id.* A party seeking a remedy for wrongful foreclosure must also show that it suffered harm. *Id.* Plaintiff can present no evidence to support elements 1, 2, or 3. Neither can Plaintiff show that she suffered any harm from this alleged violation. Therefore, summary judgment should be granted in Defendants' favor on this claim pursuant to the Texas Rule of Civil Procedure 166a(i).

### E. Judgment of Foreclosure.

The Loan Agreement is due and owing for the February, 2010 payment. (Exhibit A.) The Note provides that Plaintiff will be in default if she "do[es] not pay the full amount of each monthly payment on the date it is due." (Exhibit A, A-1 at ¶ 7(B).) Accordingly, Plaintiff's failure to pay the payments that are due is a default under the terms of the Loan Agreement. No genuine issues of material fact exist as to whether Plaintiff is in default under the terms of the Loan Agreement.

Upon a default under the terms of the Note, the Loan Agreement provides that after default, notice and a failure to cure, Defendants may accelerate the maturity of the entire debt. (Exhibit A, A-1 at ¶ 7(B) and Exhibit A-2 at ¶ 21.) The Loan Agreement provides that Defendants must give Plaintiff thirty (30) days notice and applicable law requires a cure period of at least twenty (20) days. (Exhibit A-2 at ¶ 21; TEX. PROP. CODE § 51.002(d).)

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                    PAGE 8
1882

846

DOCUMENT SCANNED AS FILED

A Notice of Default and Intent to Accelerate was sent to Plaintiff on December 8, 2010 in accordance with the terms of the Loan Agreement, advising her of, among other things, the amount in default, that she had at least thirty (30) days to cure the default, and that if the default was not cured that the balance of the debt would be accelerated. (Exhibits A, A-4.)   Plaintiff did not cure the default. (Exhibit A.)  As of November 30, 2015, $356,217.31 was owed on the Note. (Exhibit A, A-7).

As a result of Plaintiff's failure to cure the Default, Defendants filed this counterclaim for foreclosure. Accordingly, Defendants now seek from this Court a judgment for the full amount of the debt owed by Plaintiff, foreclosing the Deed of Trust, and ordering that a sheriff or other law enforcement official execute on a judgment for judicial foreclosure. (Exhibit A, A-2 ¶ 22.) No genuine issues of material fact exist as to whether Defendants is entitled to an order allowing it to proceed with foreclosure.

### F. Defendants are entitled to an award of attorney's fees as a matter of law.

In addition to the debt owed on the Note, Plaintiff also is obligated under the Loan Agreement to pay Defendants' attorney's fees incurred both in defending against her claim and in prosecuting their counterclaim.  Defendants are also entitled to recover their attorney's fees under Sections 38.001 and 37.009 of the Texas Civil Practice and Remedies Code.  To prevail on Defendants' counterclaim, they also needed to defeat Plaintiff's affirmative claims against them; therefore, their fees incurred in defense of these claims are intrinsically intertwined with their fees incurred in prosecution of their claims.  Furthermore, a resolution declaratory-judgment claim depended upon a resolution of her other claims, all of which were decided against her. Therefore, as the prevailing party on Plaintiff's declaratory-judgment claim, they are entitled to an award of attorney's fees on all fees incurred in the case.  Further, the work expended on behalf of Wells Fargo was the same as the work expended on behalf of Ocwen. And finally,

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                        PAGE 9

847

DOCUMENT SCANNED AS FILED

under the Note and Deed of Trust, Defendants are entitled to all attorney's fees incurred, either in defense of Plaintiff's claims or in prosecution of a claim for foreclosure. *Tatum v. Wells Fargo Home Mortg., Inc.*, NO. 01-13-00855-CV, 2014 Tex. App. LEXIS 13909 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014) (intrinsically intertwined fees are recoverable); *Wilmoth v. Fed. Home Loan Mortg. Corp., No.* 4:11-CV-4613, 2013 U.S. Dist. LEXIS 176964 (S.D. Tex. Dec. 5, 2013) (same); *Petrello v. Prucka*, 415 S.W.3d 420, 432 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (attorney's fees recoverable in defense of claims intertwined with defense of declaratory judgment claim). Therefore, Defendants' seek summary judgment in the amount of $185,364.00 for attorneys' fees incurred through the filing of this Motion, non-recoverable costs of $7,671.28, plus another $1,000.00 for appearing at and arguing this motion, plus another $2,500.00 to respond to and argue against an unsuccessful post-trial motion filed by Plaintiff, plus another $10,000.00 for an unsuccessful appeal to the court of appeals, plus another $2,500.00 for responding to an unsuccessful petition for review to the Texas Supreme Court and an additional $5,000.00 if full briefing is requested for an unsuccessful petition for review.

**WHEREFORE, PREMISES CONSIDERED,** Defendants ask that the Court enter a take-nothing judgment in their favor on Plaintiff's claims under RESPA and Section 51.002(d) of the Texas Property. Defendants further ask for a judgment for the fully amounts owed on the Note and Defendants' attorney's fees. Defendants also seek a judgment for foreclosure of the Deed of Trust and for the foreclosure of the Property via sheriff's sale. Defendants seek all other relief to which they may be entitled.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                            PAGE 10
1884

848

DOCUMENT SCANNED AS FILED

Respectfully submitted,

By: ___/s/ Mark D. Cronenwett_____
    **MARK D. CRONENWETT**
    Texas Bar No. 00787303
    mcronenwett@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, PC**
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
(214) 635-2650
(214) 635-2686 (Fax)

and

    **JEFFREY A. HILLER**
    Texas Bar No. 00790883

**CACHEAUX, CAVAZOS &**
    **NEWTON, L.L.P.**
333 Convent Street
San Antonio, Texas  78205
Phone: (210) 222-1642
Facsimile: (210) 222-2453

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF WELLS FARGO BANK, NA, AS TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 28th day of January, 2016, a true and correct copy of the foregoing document was electronically served on the following via E-Serve:

Nancy Alanis
13210 Hunters View
San Antonio, TX 78230
nalanis12@yahoo.com

        _/s/ Mark D. Cronenwett_____
        **MARK D. CRONENWETT**

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE
1865
                              PAGE 11

849

DOCUMENT SCANNED AS FILED

## FIAT

**IT IS HEREBY ORDERED** that the foregoing MOTION FOR PARTIAL SUMMARY

JUDGMENT BY WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE, AND

OCWEN LOAN SERVICING, LLC, ON RESPA, SECTION 51.002 OF THE TEXAS

PROPERTY CODE AND COUNTERCLAIM FOR FORECLOSURE is set for hearing on the

19th day of February, 2016, at 8:30 a.m., in the Presiding Court, Suite 1.09, First Floor, Bexar

County Courthouse, San Antonio, Texas 78205.


**SIGNED** _____1/28_____, 2016.

ANTONIA ARTEAGA
DISTRICT JUDGE
57TH DISTRICT COURT


_____
**JUDGE PRESIDING**

MOTION FOR PARTIAL SUMMARY JUDGMENT ON
RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND
COUNTERCLAIM FOR FORECLOSURE                                    PAGE 12
1886

850

**DOCUMENT SCANNED AS FILED**

# EXHIBIT A

1887

852

DOCUMENT SCANNED AS FILED

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR THE | § | |
| POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | 45th JUDICIAL DISTRICT |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS | § | |
| THROUGH CERTIFICATES SERIES | § | |
| 2006 NC3; | § | |
| and | § | |
| HOME SERVICING CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC, | § | OF BEXAR COUNTY, TEXAS |
| *Defendants* | § | |

## DECLARATION OF GINA FEEZER

Pursuant to Section 132.001 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the following statements are true and correct:

1.    "My name is Gina Feezer. I am over the age of 21 years and am fully competent to make this affidavit. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.    I hold a position as a Senior Loan Analyst at Ocwen Financial Corp, an indirect subsidiary of Ocwen Loan Servicing, LLC ("Ocwen"). In this position, my job duties include research assignments and requests from Ocwen's Counsel on matters that are in litigation. I report my findings back to Counsel. From time to time, that gives rise to my verifying discovery response, executing declaration and/or affidavits in support of those business records and servicing history as well as acting a corporate representative before the Court or Court Reporting official to give testimony about the review of the records.

DECLARATION OF GINA FEEZER                                                          Page 1 of 5
1888

853

DOCUMENT SCANNED AS FILED

3. The research is based upon the business records for the servicing life of the loan and includes review of the servicing history of the loan, both Ocwen and prior servicer(s), the business records, both of Ocwen and the prior servicer(s) and using these records, I am about to determine whether or not these parties made timely principal, interest, escrow and other payments on their mortgages; reviewing the loan files that Ocwen has for these parties to determine what terms were made at the inception of the loans, commonly referred to as the origination file, and if any modifications have been made thereto. Based upon the servicing of the loan as may be appropriate for the particular case; reviewing the merits giving rise to any foreclosure action or steps taken by the servicer; I am about to state the facts as known by the Ocwen, the present servicer of the loan.

4.     Ocwen presently acts as the servicing agent for Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("Wells Fargo") for the mortgage loan at issue in this suit. Wells Fargo is the owner and holder of this mortgage loan.

5.     I make this affidavit based on my personal knowledge of the facts contained herein and they are true and correct. My personal knowledge is based on my review of the business records described below. In the regular performance of my job functions at Ocwen, I am familiar with the business records maintained by Ocwen for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies. Ocwen's business records typically include electronic data compilations and imaged documents pertaining to the loans its services.

DOCUMENT SCANNED AS FILED

6.     I researched and reviewed all of the necessary documents in Ocwen's possession regarding Nancy Alanis's loan agreement that is serviced by Ocwen, and the statements in this Affidavit are based upon my research and review of these documents.

7.     On or about June 15, 2006, Plaintiff Nancy Alanis ("Plaintiff") executed an Adjustable Rate Balloon Note ("Note") for $193,500.00 payable to New Century Mortgage Corporation ("New Century") as lender on a loan secured by the real property commonly known as 13210 Hunters View, San Antonio, Texas 78230 (the "Property") and more particularly described as follows:

> LOT 2, BLOCK 6, NEW CITY BLOCK 16984, HUNTERS
> CREEK NORTH, UNIT-3, IN THE CITY OF SAN ANTONIO,
> BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR
> PLAT THEREOF RECORDED IN VOLUME 8200, PAGE(S)
> 215-216, OF THE DEED AND PLAT RECORDS OF BEXAR
> COUNTY, TEXAS.

8.     Concurrently with execution of the Note, Plaintiff executed a Deed of Trust ("Deed of Trust" and together with the Note, the "Loan Agreement") with said Deed of Trust being recorded as document number 20060146541 in the official public records of Bexar County, Texas.

9.     The Loan Agreement was assigned to Wells Fargo on or about October 31, 2006. The servicing of the loan was assigned to HomEq on or about October 4, 2006. When the loan servicing boarded with HomEq, the loan was contractually current and due for the November 1, 2006 payment.

10.    Plaintiff defaulted under the terms of the Note by failing to make the payments when due. The Loan Agreement is currently due and owing for the February 1, 2010 payment and all subsequent monthly payments.

11.    Plaintiff has failed to tender all of her payments when due, and on and December 8, 2010, Ocwen sent Notice of Default with Intent to Accelerate to Plaintiff at the Property

DECLARATION OF GINA FEEZER                                    Page 3 of 5
1890

855

DOCUMENT SCANNED AS FILED

Address of 13210 Hunters View, San Antonio, Texas 78230. This notice was sent by both regular and certified mail.

12. Due to Plaintiff's failure to cure the default on the Loan Agreement, Defendants elected to proceed with foreclosure and on August 11, 2014, they filed their Original Counterclaim and sought therein, among other things, a judgment of foreclosure. Defendants on October 20, 2014 filed their First Amended Counterclaim, again requesting, among other things, a judgment of foreclosure.

13. As of December 29, 2015, the total amount due under the terms of the Loan Agreement, including accrued interest; escrow advances for taxes and insurance; and other fees and expenses (but not attorney's fees), was $356,834.09. A true and correct copy of the November 30, 2015 payoff statement is attached hereto as Exhibit A-7. Wells Fargo has accelerated the maturity of the debt.

14. I am qualified to testify about the business records of Ocwen. I am a custodian of records for Ocwen. Ocwen is the mortgage servicer for Wells Fargo. Ocwen also routinely employs counsel to conduct foreclosures. Ocwen's counsel provides it with true and exact copies of the documents in their file. Attached hereto are business records of Ocwen, including documents obtained through Ocwen's servicing agreement with Wells Fargo, documents obtained from Ocwen's foreclosure counsel, and documents generated by Ocwen itself. These said records are kept by Ocwen in the regular course of business, and it was the regular course of practice of Ocwen for an employee or representative of Ocwen with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such records; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the originals or exact duplicates of the originals. These records are also identified as exhibits to this Affidavit as indicated below:

DECLARATION OF GINA FEEZER                                         Page 4 of 5
1891

DOCUMENT SCANNED AS FILED

A-1.    Note;

A-2.    Deed of Trust;

A-3.    Transfer of Lien;

A-4.    Notice of Default;

A-5.    HomEq Transaction History;

A-6.    Ocwen Transaction History;

A-7.    Payoff Statement dated December 28, 2015; and

A-8.    Loan Reconciliation."

15.    As a point of clarification, Exhibit A-1 is a copy of the Note that was made at or about the time the loan closed, on or about June 15, 2006, and before the original Note was indorsed by the loan originator, New Century. The original Note, with the indorsement, is presently kept in the offices of Mackie Wolf Zientz & Mann, PC, 14160 North Dallas Parkway, Suite 900, Dallas, Texas 75243. Mackie Wolf Zientz & Mann, PC, is counsel of record for Wells Fargo and Ocwen in this cause. The original Note was assigned only once, from New Century to Wells Fargo, and there is only one indorsement, which is by New Century in blank.

"My name is Gina Feezer; my date of birth is May 23, 1967; and my address is 12001 Science Drive, Orlando, Florida 32826, U.S.A. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Orange County, State of Florida, on the ___11th___ day of January, 2016.

_Gina Feezer_

**GINA FEEZER**

DOCUMENT SCANNED AS FILED

# EXHIBIT A-1

1893

858

DOCUMENT SCANNED AS FILED

# ADJUSTABLE RATE BALLOON NOTE

### 2 Year Rate Lock
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)



*I certify this copy is a true and correct copy of the original instrument.*

Mission
By_____

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| June 15, 2006 | San Antonio | Texas |
|---|---|---|
| [Date] | [City] | [State] |

13210 Hunters view, San Antonio, TX 78230
[Property Address]

**NOTE**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 193,500.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.925  %.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on        August 1, 2006      .

My monthly payments will be based on an assumed 40         -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   07/01/2036           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,631.71   . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Page 1 of 4

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

Initials NKA

1894

DOCUMENT SCANNED AS FILED

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The interest rate I will pay may change on the first day of July, 2008, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth (s) percentage points (6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

### (D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.925% or less than 9.925%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) (1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.925 %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Page 2 of 4

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

Initials NKA

**DOCUMENT SCANNED AS FILED**

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

NCMC
Adjustable Rate Balloon Note (TX)
RE-522  (011806)
1896

Page 3 of 4                    Initials: NWA

861

DOCUMENT SCANNED AS FILED

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
NANCY ALANIS                       -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                            -Borrower

[Sign Original Only]

NCMC
Adjustable Rate Balloon Note (TX)
RE-522  (011806)
1897

Page 4 of 4

862

DOCUMENT SCANNED AS FILED

# EXHIBIT A-2

1898

863

DOCUMENT SCANNED AS FILED

$ 116.00 GF# 0602142-TP
MISSION TITLE, LP

**SCANNED**

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

LT1-77-20060146541-1

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

LT2-12204-947-26

0215454793 ————[Space Above This Line For Recording Data]————

# DEED OF TRUST

### NOTICE OF CONFIDENTIALITY RIGHTS:

**If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records:  your social security number or your driver's license number.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3. 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   June 15, 2006
together with all Riders to this document.
(B) "Borrower" is NANCY ALANIS, Unmarried Woman

Borrower is the grantor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

 Form 3044  1/ 01

VMP -6(TX) (0411)
Page 1 of 16        Initials: NUA
VMP Mortgage Solutions, Inc. (800)521-7291



1899



**DOCUMENT  SCANNED  AS  FILED**

Lender is a **Corporation**
organized and existing under the laws of **California**
Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is **Eldon L. Youngblood**
. Trustee's address is
**2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204**

(E) "Note" means the promissory note signed by Borrower and dated    **June 15, 2006**
The Note states that Borrower owes Lender **ONE HUNDRED NINETY-THREE THOUSAND FIVE
HUNDRED AND 00/100**                                                                                                  **Dollars**
(U.S. $ **193,500.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **07/01/2036**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

**Prepayment Rider, ARM Rider Addendum**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

Initials: **NUHA**

-6(TX) (0411)                        Page 2 of 16                                Form 3044    1/01

1900

865

**DOCUMENT SCANNED AS FILED**

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Bexar | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**See Legal Description Attached Hereto and Made a Part Hereof**

Parcel ID Number: 16984-006-0020                        which currently has the address of

13210 Hunters view                                      [Street]

San Antonio                                             [City], Texas 78230        [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6(TX) (0411)                    Page 3 of 16              Initials: NVA          Form 3044   1/01

1901

866

**DOCUMENT SCANNED AS FILED**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage

Initials: NLLA

-6(TX) (0411)                              Page 4 of 18                                    Form 3044    1/01

1902

**DOCUMENT SCANNED AS FILED**

Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith

Initials: _NKA_

-6(TX) (0411)    Page 5 of 16    Form 3044    1/01

DOCUMENT SCANNED AS FILED

by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If

DOCUMENT SCANNED AS FILED

the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing

VMP® -6(TX) (0411)                      Page 7 of 16                  Initials: _____             Form 3044   1/01

1905

870

DOCUMENT SCANNED AS FILED

the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

-6(TX) (0411)                        Page 8 of 16                    Initials: _____           Form 3044    1/01

1906

871

DOCUMENT SCANNED AS FILED

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _LKA_

-6(TX) (0411)            Page 9 of 16            Form 3044   1/01

DOCUMENT SCANNED AS FILED

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: 

 -6(TX) (0411)    Page 10 of 16    Form 3044 1/01

1908

**DOCUMENT SCANNED AS FILED**

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However; this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

DOCUMENT SCANNED AS FILED

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

 -6(TX) (0411)

Page 12 of 16

Initials: _NKA_



Form 3044    1/01

1910

875

DOCUMENT SCANNED AS FILED

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

 -6(TX) (0411)      Page 13 of 16      Initials: _NVA_      Form 3044   1/01

1911

876

DOCUMENT SCANNED AS FILED

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.** Check box as applicable:

[x] Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

|  |  |  |
|---|---|---|
| 🔵 -6(TX) (0411) | Page 14 of 16    Initials: JKA | Form 3044   1/01 |

**DOCUMENT SCANNED AS FILED**

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                       NANCY ALANIS                -Borrower

_____     _____ (Seal)
                                                                   -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                                    -Borrower

-6(TX) (0411)                    Page 15 of 18                Form 3044    1/01

1913

**DOCUMENT SCANNED AS FILED**

STATE OF TEXAS
County of Bexa

Before me Deana M. Blalock                    on this day personally appeared

Nancy Alanis

known to me (or proved to me on the oath of
or through                                              ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 16th day of June 2006.

(Seal)

DEANNA M. BLALOCK
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-13-2009

M Blalock
Notary Public

My Commission Expires:

-6(TX) (0411)                    Page 16 of 16          Initials: NYA          Form 3044    1/01

1914

879

## EXHIBIT A

Lot 2, Block 6, New City Block 16984,  HUNTERS CREEK NORTH, UNIT-3, in the City of San Antonio, Bexar County, Texas, according to the map or plat thereof recorded in Volume 8200, Page(s) 215-216, of the Deed and Plat Records of Bexar County, Texas.

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal Law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

Doc# 20060146541 Fees: $116.00
06/22/2006   1:39PM # Pages 26
Filed & Recorded in the Official Public
Records of  BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

JUN 2 2 2006

COUNTY CLERK BEXAR COUNTY, TEXAS

1915

880

DOCUMENT SCANNED AS FILED

841

1916

881

# EXHIBIT A-3

1917

882

DOCUMENT SCANNED AS FILED

Book  15135  Page  1347  3pgs    Doc# 20110164236

RETURN TO:
MACKIE WOLF ZIENTZ & MANN P.C.
Pacific Center I, Suite 660
14160 N. Dallas Parkway
Dallas, Texas 75254

2970551207831
Attorney Code: 24076

**TRANSFER OF LIEN**
**TEXAS**

This TRANSFER OF LIEN is made and entered into as of this 1ST day of SEPTEMBER, 2010, from NEW CENTURY MORTGAGE CORPORATION , whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC3 MORTGAGE PASB-THROUGH CERTIFICATES, SERIES 2006-NC3, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

For the sum of ten dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, convey, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest owned or held by said Assignor in and to the following instrument describing land therein, duly recorded in the Official Public Records of Real Property/Mortgage/Deed of Trust Records of BEXAR County, State of TEXAS, described as follows:

Mortgagor/Trustor: NANCY ALANIS
Mortgagee/Beneficiary: NEW CENTURY MORTGAGE CORPORATION
Trustee: ELDON L. YOUNGBLOOD
Document Date: JUNE 15, 2006
Amount: $ 192,500.00
Date Recorded: JUNE 22, 2006
Book/Volume/Docket/Liber: 12204
Page/Folio: 347
Instrument No: 20060145541
Property Address: 13210 HUNTERS VIEW, SAN ANTONIO, TX
LEGAL DESCIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
This Assignment is made without recourse, representation or warranty.
DATED: FEBRUARY 02, 2011
NEW CENTURY MORTGAGE CORPORATION
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC

BY:                                     POA RECORDED ON: JULY 27, 2006
NAME:  Christina Carter                                    INSTRUMENT NO: 2006-0178422
TITLE:   Account Management, Manager
STATE OF FLORIDA                    )
                                                      )SS.
COUNTY OF PALM BEACH        )

The foregoing instrument was acknowledged before me on this 02ND day of FEBRUARY, 2011., by Christina Carter, Account Management, Manager  at OCWEN LOAN SERVICING, LLC, ATTORNEY-IN-FACT FOR NEW CENTURY MORTGAGE CORPORATION on behalf of the company.  Christina Carter is personally known to me.

Witness my hand and official seal.

11-000598.670                          Notary Signature  Stephen Lee

Notary Public State of Florida
Stephen Lee
My Commission EE025768
Expires 05/13/2014

1918

883

**DOCUMENT  SCANNED  AS  FILED**

29T05B1307031

EXHIBIT "A"

Lot 2, Block 6, New City Block 16984, HUNTERS CREEK NORTH, UNIT-3, In the City of San Antonio, Bexar County, Texas, according to the map or plat thereof recorded in Volume 8200, Page(s) 215-216, of the Deed and Plat Records of Bexar County, Texas.

1919

884

DOCUMENT SCANNED AS FILED

Doc# 20110164236
# Pages 3
09/14/2011    12:07:29 PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD RICKHOFF COUNTY CLERK

Fees 20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
09/14/2011   12:07:29 PM
COUNTY CLERK, BEXAR COUNTY TEXAS



1920

885

DOCUMENT SCANNED AS FILED

# EXHIBIT A-4

1921

886

DOCUMENT SCANNED AS FILED



December 08, 2010

VIA First Class Mail
VIA Certified Mail (return receipt requested)
Certified Number; 71069017515138306689
Reference Code: 1012

Nancy Alanis

13210 Hunters View
San Antonio, TX 78230-0000

Loan Number:
Property Address:    13210 Hunters View , San Antonio, TX 78230-0000
**NOTICE OF DEFAULT**
**AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA**

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Borrower (s):

## SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on the mortgage against the above-referenced property. Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information; date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt. All information obtained will be used for that purpose. The debt is owed to OCWEN as the owner or servicer of your home loan and mortgage.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN. If you notify OCWEN in writing within the thirty (30) days that the debt or a portion of the debt is disputed, OCWEN will send you verification of the debt. Verification of the debt or a portion thereof may be requested in writing from the Loan Resolution Consultant within thirty (30) days as specified above. The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Your mortgage payments are past due, which puts you in default of your loan agreement. As of **December 08, 2010**, you owe the following:

|  |  |
|---|---|
| Principal and Interest | $ 17,962.45 |
| Interest Arrearage | $ 0.00 |
| Escrow | $ 5,194.46 |
| Late Charges | $ 1,057.01 |
| Insufficient Funds Charges | $ 0.00 |
| Fees / Expenses | $ 2,132.76 |
| Suspense Balance (CREDIT) | $ 1,101.96 |
| Interest Reserve Balance (CREDIT) | $ 0.00 |
| **TOTAL DUE** | **$ 25,244.72** |

On or before **January 08, 2011**, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that come due in the interim must also be included.

DEMANDTX.19

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

**DOCUMENT SCANNED AS FILED**



OCWEN

Failure to bring your account current will result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action if possible. You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release non-public information once your written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the mortgage loan, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by OCWEN to enforce the mortgage in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned and will not stop any foreclosure proceedings that have begun. **PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL ME TO VERIFY THE EXACT AMOUNT DUE.**

A HUD counseling agency may be able to provide you with assistance. To locate the HUD approved counseling agency in your area, call the HUD Housing Counseling Service at **(800) 569-4287** or consult HUD's website at www.HUD.gov

If you are unable to bring your account current, I urge you to call us immediately to discuss possible alternatives to foreclosure.

**If you have the desire to remedy this situation we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that might be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.**

Sincerely,

Ocwen Loan Servicing, LLC
Toll Free Phone: 877-596-8580

**ADDRESS WRITTEN CORRESPONDENCE TO:**
Research Department
Ocwen Loan Servicing, LLC
P.O. Box 785055
Orlando, FL 32878-5055

**PAYMENT REMITTANCE INFORMATION (always include Loan # 705813079 with your payment)**

| Money Gram | Overnight Address | VIA Regular Mail |
|---|---|---|
| Receive Code: 2355 | Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| City: Orlando | 1661 Worthington Road Suite 100 | P.O. Box 6440 |
| St: FL | West Palm Beach, Florida 33409 | Carol Stream, IL 60197-6440 |
| Loan # ███████ | Attention: Cashiering Department | |

DEMANDTX.09

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

DOCUMENT SCANNED AS FILED



OCWEN

Dear Customer,

There is help available if you are having difficulty making your mortgage loan payments. You may be eligible for the Home Affordable Modification program, part of the initiative announced by President Obama to help homeowners.

**As your mortgage loan servicer, we will work with you in an effort to try to make your mortgage payment affordable. You will not pay any fees to take advantage of this opportunity to modify your mortgage loan payment and keep your home. Now is the time to act. We are ready to help you.**

## HERE IS HOW IT WORKS

- We will first determine if you are eligible based on your situation
- If you are eligible, we will look at your monthly income and housing costs, including any past due payments, and then determine an affordable mortgage payment
- At first, you will make new, affordable monthly payments on your mortgage loan during a trial period
- If you make those payments successfully and fulfill all trial period conditions, we will permanently modify your mortgage loan

## HOW THIS MAY CHANGE YOUR MORTGAGE

**The modification may involve some or all of the following changes to your mortgage loan:**

- Bringing your account current;
- Reducing the interest rate on your loan;
- Extending the term of the loan, and/or
- Delaying your repayment of a portion of the mortgage principal until the end of the loan term

## HOW TO START THE PROCESS

**You can obtain the application via our website or if you do not have access to the web you can call us.**

- Download the application via the web at www.ocwencustomers.com
  - Click on the President's Foreclosure Prevention Plan link
  - Once you confirm that you meet the requirements, you can download the package directly from the web
- Call us for an application package at 1-800-74-OCWEN (1-800-746-2936)
  - Hours of Operation –
    - 24 hrs a day Monday – Thursday
    - Friday 12:00am – 7:00pm ET
    - Saturday 9:00am – 4:00pm ET

A complete application will be required and must also include a request for modification and affidavit form, a 4506T or 4506T-EZ, and evidence of income.

## WHAT IF I DO NOT QUALIFY FOR THE PROGRAM?

**There may be other options available to you such as;**

- Ocwen's alternative modification programs
- HAFA (Home Affordable Foreclosure Alternatives) program
- Ocwen's Deed In Lieu of Foreclosure
- Ocwen's Short Sale program  –  Selling your home and payoff your mortgage at an approved discounted payoff amount

**We want to make the resolution of your situation as easy as possible and helping homeowners is what we do!**

Sincerely,

Ocwen Loan Servicing
1661 Worthington Rd. Ste. 100
West Palm Beach, FL 33409

DEMANDTX.19

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

**DOCUMENT SCANNED AS FILED**



**IMPORTANT NOTICE** · We want to help you avoid foreclosure scams.

## FINANCIAL COUNSELING SERVICES

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

**HUD Approved Housing Counseling:**    1-800-569-4287 www.HUD.gov

**HOPE Hotline Number:**    1-888-995-4673

**Beware of Foreclosure Rescue Scams. Help is free!**

There is never a fee to get assistance or information about the Making Home Affordable program from your lender or a HUD-approved housing counselor.

For a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/

Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.

Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.

Never make your mortgage payments to anyone other than your mortgage company without their approval.

DEMANDTX.19

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,*<br><br>Debtors. | §<br>§<br>§<br>§ | Case No. 07-10416 (BLS)<br><br>(Chapter 11) |
| NANCY K ALANIS<br><br>*Movant*<br><br>v.<br><br>Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>And<br><br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>*Respondents* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
(i)   FILE ADVERSARIAL COMPLAINT;
(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
(iii)  OBTAIN RELATED RELIEF**

# Ex-13

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., _et al._,[1] | Case No. 07-10416 (KJC) (Jointly Administered) |
| Debtors. | Re: Docket No. 8673 Hearing Date: August 13, 2008 at 1:00 Objection Deadline: August 8, 2008 |

## AMENDED OBJECTION OF THE NEW CENTURY LIQUIDATING TRUST AND REORGANIZED NEW CENTURY WAREHOUSE CORPORATION TO MOTION TO STAY ORDER CONFIRMING PLAN OF REORGANIZATION PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005 AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ORDER CONFIRMING PLAN OF REORGANIZATION PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005

The New Century Liquidating Trust and Reorganized New Century Warehouse

Corporation (together, the "Trust"), by and through Alan M. Jacobs, as their Bankruptcy Court-

appointed Liquidating Trustee and Plan Administrator, respectively, by and through their co-

counsel, Hahn & Hessen LLP and Blank Rome LLP, hereby submit this Objection (the

"Objection") of the New Century Liquidating Trust and Reorganized New Century Warehouse

---

[1]    The pre-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a new Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

877285.011-1490548.5

# 820

DOCUMENT SCANNED AS FILED

Corporation to Motion to Stay Order Confirming Plan of Reorganization Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005 (the "Stay Motion") and Memorandum of Law in Support of Motion to Stay Order Confirming Plan of Reorganization Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005 (the "Memorandum of Law"), filed by Gregory J. Schroeder, Michelle Park, Martin Warren, Steve Holland and Nabil Bawa and the Ad Hoc Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan, for themselves and all other similarly situated beneficiaries of the New Century Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (collectively, the "Beneficiaries"), and respectfully represent:

## PRELIMINARY STATEMENT[2]

Nearly a month after the Court issued its Opinion[3] and two weeks after entry of the Confirmation Order, the Beneficiaries belatedly filed their Stay Motion. The Stay Motion is moot since the Effective Date under the Plan has already occurred and material, irreversible steps towards substantial consummation of the Plan have already taken place, including among other things the transfer of all of the Debtors' property to the Trust, the disbursement of significant moneys by the Trustee in accordance with the terms of the Plan and the officers and directors of the Debtors having ceased to serve in those capacities.

Moreover, the Beneficiaries have failed to meet their burden of satisfying the standards required for the granting of a motion to stay the effectiveness of an adverse order pending appeal

---

[2]    All capitalized terms not herein defined shall have the same meaning as ascribed to them in the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (as supplemented, modified, or amended, the "Plan").

- 2 -

877285.01 1-1490548.5

DOCUMENT SCANNED AS FILED

pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8005. Not only are the Beneficiaries unlikely to succeed on the merits of their appeal, but the balance of hardships weighs heavily against them.

Finally, to the extent the Court is nevertheless inclined to grant the Stay Motion notwithstanding the substantial arguments to the contrary, the Trust, on behalf of the vast majority of creditors holding an estimated $1 billion in claims who voted overwhelming in favor of the Plan, including creditors holding substantially larger claims in the same class as the Beneficiaries, respectfully requests that the Beneficiaries be required to post a significant bond as a condition to the granting of any such stay.

## BACKGROUND

On April 2, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"). Until August 1, 2008 when the Plan became effective, the Debtors continued in the management and operation of their businesses pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee has been appointed.

On April 9, 2007, the Office of the United States Trustee for the District of Delaware appointed seven (7) of the Debtors' largest unsecured creditors to the Official Committee of Unsecured Creditors (the "Committee"). Hahn & Hessen LLP and Blank Rome LLP were selected by the Committee to serve as its co-counsel, and FTI Consulting, Inc. was selected by the Committee to serve as its financial advisor.

---

[3] *In re New Century TRS Holdings, Inc.*, 2008 Bankr. LEXIS 1957 (Bankr. D. Del. July 2, 2008) (the "Opinion").

- 3 -

877285.011-1490548.5

DOCUMENT SCANNED AS FILED

On February 2, 2008, the Debtors and the Committee filed the *Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008*, and the Debtors filed the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of February 2, 2008*.

On March 18, 2008, the Court entered an *Order (A) Approving Disclosure Statement Regarding First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Joint Plan of Liquidation and (C) Scheduling a Hearing on Confirmation of Joint Plan of Liquidation and Approving Related Notice Procedures*.

On March 18, the Debtors filed the *First Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008*. On April 23, 2008, the Debtors filed the Plan.

On April 18, 2008, the Beneficiaries filed the *Objection and Memorandum of Law to Confirmation of the Plan* (the "Beneficiaries' Objection").

On April 23, 2008, the Debtors' claims agent filed a declaration regarding the tabulation of votes to accept and to reject the Plan, annexed to which was a summary of voting results. Per that summary, every Class but Class HC3b (the Beneficiaries' Class) overwhelmingly voted to accept the Plan in terms of amount of claims and number of claims voting. Even though Class HC3b voted to reject the Plan, 95.42% of in amount of claims in Class HC3b voted to accept the

- 4 -

DOCUMENT SCANNED AS FILED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

NEW CENTURY TRS HOLDINGS, INC.,
a Delaware corporation, *et al.*,[1]

Debtors.

Chapter 11

Case No. 07-10416 (KJC)
(Jointly Administered)

## AFFIDAVIT OF ALAN M. JACOBS IN SUPPORT OF OBJECTION TO MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL

Alan M. Jacobs, being duly sworn, deposes and says:

1.      I am the Liquidating Trustee (the "Trustee") of the New Century Liquidating Trust (the "Trust") and Plan Administrator ("Plan Administrator") of Reorganized New Century Warehouse Corporation ("Reorganized Access Lending"). I am authorized to make and submit this affidavit on behalf of the Trust and Reorganized Access Lending. This affidavit is submitted in support of the Objection of the New Century Liquidating Trust and Reorganized New Century Warehouse Corporation to Motion to Stay Order Confirming Plan of Reorganization Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005 and Memorandum of Law in Support of Motion to Stay Order Confirming Plan of Reorganization Pending Appeal Pursuant to

---

[1]  The pro-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corporation, a California corporation; New Century R.E.O. II Corporation, a California corporation; New Century R.E.O. III Corporation, a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership.

DOCUMENT SCANNED AS FILED

Federal Rule of Bankruptcy Procedure 8005 (the "Objection"). The statements contained herein are based upon personal knowledge.

2.      On April 23, 2008, the Debtors filed the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (as supplemented, modified, or amended, the "Plan").

3.      On July 2, 2008, the Court entered the Opinion on Confirmation and the Order Regarding the Opinion on Confirmation approving confirmation of the Plan subject to the entry of a confirmation order to be proposed by the Debtors and the Committee.

4.      On July 15, 2008, the Court entered the Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008 (the "Confirmation Order"). An Order Amending the Confirmation Order was entered on July 23, 2008.

5.      On August 1, 2008 at 5:00 p.m. (the "Effective Date"), the Plan became effective. On August 4, 2008, a Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008, (II) Effective Date and (III) Bar Dates for Administrative Claims, Professional Fee Claims, Subordination Statements and Rejection Damages Claims (the "Notice of Effective Date") was filed with the Court. A copy of this Notice of Effective Date is attached hereto as Exhibit A.

6.      Pursuant to the Plan, on the Effective Date the New Century Liquidating Trust Agreement (the "Trust Agreement") was executed, thereby creating the Trust and appointing me as Trustee of the Trust. Also on the Effective Date, the Official Committee of Unsecured Creditors (the "Committee") was dissolved and the Plan Advisory Committee was formed (the "PAC"). The

DOCUMENT SCANNED AS FILED

PAC has already conducted its first in person meeting and, among other things, authorized me to take certain immediate actions under the Plan.

7.        The officers and directors of the Debtors ceased to serve immediately upon the occurrence of the Effective Date. Accordingly, pursuant to the terms of the Confirmation Order, as of the Effective Date, I was appointed as the sole officer and director of each of the Debtors, other than Access Lending, and authorized to wind down any remaining corporate affairs of the Debtors.

8.        Also on the Effective Date, pursuant to Article 8 (E)(1) of the Plan, all Assets of the Debtors (excluding Access Lending Assets but including Access Lending Interests) were distributed to the Trust. Pursuant to Article 8 (F)(5)(c)(iii) of the Plan, I have opened several bank accounts in the name of the Trust to hold the Trust Assets and in the name of Reorganized Access Lending to hold Reorganized Access Lending Assets.   Since the Effective Date, $73,484,182.91 in cash was transferred to the Trust's bank accounts and $5,064,778.80 was transferred to Reorganized Access Lending's bank accounts.

9.        On July 28, 2008, in preparation for the occurrence of the Effective Date, pursuant to Articles 8 (E) and 10 (A) of the Plan, TRS Holdings, Inc. executed the Stock Power and Assignment Separate Form Certificate. This effectuated a transfer of all of the stock of New Century Warehouse Corporation (Access Lending) to the Trust, which became the sole shareholder of Reorganized Access Lending. A copy of the Stock Power and Assignment Separate Form Certificate is attached hereto as Exhibit B.

10.      As required by Article 8 (F)(3)(d) of the Plan, I have obtained a one year bond to cover the Trust Assets and paid the respective premium of $142,720 out of the Trust Assets to the bonding company.

11.      As required by Article 8 (F)(3)(d) of the Plan, I have obtained a one year bond to

DOCUMENT  SCANNED  AS  FILED

cover the Reorganized Access Lending Assets and paid the respective premium of $10,640 out of Reorganized Access Lending Assets to the bonding company.

12.    Pursuant to Article 8 (F)(5)(c)(xii) of the Plan, I have obtained an Errors and Omissions insurance policy to cover myself as Liquidating Trustee and Plan Administrator, the Trust, and the PAC and its members and paid a three year premium in the amount of $311,400 out of the Trust Assets.

13.    Pursuant to Article 8 (I) of the Plan, I have commenced the retention of various Trust and Reorganized Access Lending professionals including counsel, financial Advisors and accountants.

14.    As of the Effective Date, pursuant to the terms of the Plan, all notes, agreements and securities evidencing Claims and Interests and the rights thereunder of the holders thereof were cancelled and deemed null and void and of no further force and effect. Additionally, pursuant to the terms of the Plan, the Capital Trust Indentures were deemed automatically cancelled and discharged on the Effective Date.

15.    On August 1, 2008, New Century Financial Corporation completed a final Form 8-K indicating that pursuant to the terms of the Plan, all shares of New Century Financial Corporation's outstanding common and preferred stock outstanding immediately prior to the Effective Date have been cancelled, which form was filed on August 4, 2008. A copy of the filed Form 8-K is attached hereto as Exhibit C.

16.    Article 12 (B) of the Plan provides that, on the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the

DOCUMENT SCANNED AS FILED

Petition Date that had not previously expired or terminated pursuant to its own terms, was rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date.

17.    Pursuant to the Confirmation Order, the Notice of Effective Date was served on approximately 127,000 parties. Such mailing is costing the Trust in excess of $150,000.

18.    The Notice of Effective Date puts all parties on notice that various claims bar dates have begun to run as of the Effective Date. Any changes in such bar dates would require re-noticing at a substantial cost to the estate.

19.    As Trustee, I, or my counsel under my direction, have started to compromise certain claims and implement certain decisions with respect to the remaining estate assets.

Alan M. Jacobs,
Liquidating Trustee and
Plan Administrator

Sworn and subscribed to
before me this 8ᵗʰ day
of __August__, 2008

Notary Public

MARK S. INDELICATO
NOTARY PUBLIC, State of New York
No. 4867556
Qualified in New York County
Commission Expires September 14, 20__ 0

1162

DOCUMENT   SCANNED   AS   FILED

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

---

## NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)   FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

---

# Ex-14



LT1-77-20050178422-1

LT2-12283-1912-3

Document Title:

## Limited Power of Attorney

When Recorded Return To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236

OFB#_*478254*_____

Grantor: *New Century Mortgage Corporation*

Grantee:   Ocwen Loan Servicing, LLC.



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

1002

BY:_____    2·11·15
Deputy    **DOCUMENT  SCANNED  AS  FILED**

CFI: # 104002261E — OR BK: 39252  PG  708,  Page

BOOK 125 Page   12

POA# 1801          LIMITED POWER OF ATTORNEY

NEW CENTURY MORTGAGE CORPORATION (hereinafter called "Owner") hereby appoints Ocwen Loan Servicing, LLC (hereinafter called "Ocwen"), as its true and lawful attorney-in-fact to act in the name, place and stead of Prior Servicer for the purposes set forth below.

The said attorneys-in-fact, and each of them, are hereby authorized, and empowered, as follows:

1.   To execute, acknowledge, seal and deliver deed of trust/mortgage note endorsements, lost note affidavits, assignments of deed of trust/mortgage and other recorded documents, satisfactions/releases/reconveyances of deed of trust/mortgage, subordinations and modifications, tax authority notifications and declarations, deeds, bills of sale, and other instruments of sale, conveyance, and transfer, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing.

2.   To execute and deliver insurance filings and claims, affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of recission, foreclosure deeds, transfer tax affidavits, affidavits of merit, verifications of complaints, notices to quit, bankruptcy declarations for the purpose of filing motions to lift stays, and other documents or notice filings on behalf of Owner in connection with insurance, foreclosure, bankruptcy and eviction actions.

3.   To endorse any checks or other instruments received by Ocwen and made payable to Owner.

4.   To pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale, promissory note or check.  This power also authorizes Ocwen to collect, negotiate or otherwise settle any deficiency claim, including interest and attorney's fees.

5.   To do any other act or complete any other document that arises in the normal course of servicing.

Dated: March 2, 2005.                              NEW CENTURY MORTGAGE CORPORATION

Witness.

                                                  Name:  Patrick Flanagan
Name: Toni Sepulere                               Title:   President

Name: Kim Ros

State of California        )
County of Orange           )

2006-03585
Pg : 2/2

BEFORE ME, Michelle C. David, a Notary Public in and for the jurisdiction aforesaid, on this 2nd day of March, 2005, personally appeared Patrick Flanagan who is personally known to me to be the President of New Century Mortgage Corporation and the person who executed the foregoing instrument by virtue of the authority vested in him and he did acknowledge the signing of the foregoing instrument to be his free and voluntary act and deed as a President for the uses, purposes and consideration therein set forth.

Witness my hand and official seal this 2nd day of March, 2005.

My Commission Expires:  4/4/05

NOTARY STAMP
MICHELLE C. DAVID
Commission # 1306726
Notary Public - California
Orange County
My Comm. Expires Apr 21, 2006

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236
410254



I hereby certify this document to be a true, correct and complete copy of the record filed in my office.  Date this 14 day of _____ of _____
Roger Desjarlais, County Administrator
By _____
Deputy Clerk

3253389
Page: 2 of 2
10/14/2005 08:58F
FINANCIAL DIMENSIONS/M  POWR    18.50 Beaver County

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

1003

BY: _____        2-11-15

Deputy  DOCUMENT  SCANNED  AS  FILED

RECORDER'S MEMORANDUM
AT THE TIME OF RECORDATION, THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARBON OR
PHOTO COPY, DISCOLORED PAPER ETC.

Doc# 20080178422 Fees: $24.00
07/27/2008   4:11PM # Pages 3
Filed & Recorded in the Official Public
Records of  BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on
the date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on:

JUL 2 7 2006

COUNTY CLERK BEXAR COUNTY, TEXAS

**CERTIFICATE**
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

1004

BY: _____            2·11·15

DOCUMENT SCANNED AS FILED

# Gerard Rickhoff



| COUNTY CLERK | | BEXAR COUNTY |
|---|---|---|

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

VOLUME 12283        PAGE 1912

THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS 11th DAY OF February        A.D., 20 15 .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: Edna Cruz Morley
Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

1005

DOCUMENT  SCANNED  AS  FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-15

Alanis000610

## CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS | § | IN THE DISTRICT COURT |
|     *Plaintiff* | § | |
| | § | |
| *VS* | § | 45TH JUDICIAL DISTRICT |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES | § | |
| LLC TRUST 2006-NC3 | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES SERIES 2006 NC3; and | § | |
| | § | |
| MACKIE WOLF ZIENTZ & MANN, P.C. | § | |
| (As Debt Collectors); and | § | |
| | § | |
| HOMEQ SERVICING CORPORATION; | § | |
| and | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC; | § | |
| | § | |
|     *Defendants.* | § | BEXAR COUNTY, TEXAS |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S
### FIRST SET OF WRITTEN INTERROGATORIES

    Defendants Wells Fargo Bank National Association, As Trustee for the Pooling

and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed

Receivables LLC Trust 2006-NC3 Mortgage Pass-Through Certificates Series 2006-

NC3 (Wells Fargo) and Ocwen Loan Servicing, LLC (Ocwen), hereby jointly respond to

Plaintiff's First Interrogatories.

Alanis000610

**Ex-U**

**DOCUMENT SCANNED AS FILED**

Alanis000611

Respectfully submitted,

CACHEAUX, CAVAZOS & NEWTON, L.L.P.
333 Convent Street
San Antonio, Texas 78205
Telephone: (210) 222-1642
Facsimile: (210) 222-2453

By: _____
JEFFREY A. HILLER
State Bar No. 00790883
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on April _____, 2012, a true and correct copy of the foregoing instrument was [X] mailed via certified mail, return receipt requested, or [ ] faxed, pursuant to the Texas Rules of Civil Procedure to:

Philip M. Ross
1006 Holbrook Road
San Antonio, Texas 78218

Alanis000611

1196

835

Alanis000612

## Responses to Plaintiff's First Set of Interrogatories

1. For the period between 2006-2012, please identify the entire chain of title with regard to the subject property, including: the entity that entered into the original Deed of Trust with the Plaintiff, all subsequent holders and owners of said Deed, the specific times and dates that said holders/owners acquired and transferred their interests, whether any documentation was created to memorialize said transfers, whether WACHOVIA and HOMEQ SERVICING ever maintained an ownership interest in the note, and the filing date and signature dates of any of the documents mentioned in this Interrogatory.

ANSWER:   Objection, overbroad and unduly burdensome.   Subject to and without waiving said objection, Ocwen and Wells Fargo will produce assignments of mortgage and other title documents responsive to the request.

2. For the period between 2006-2012, please fully identify the process by which WELLS FARGO received the Plaintiff's account from HOMEQ SERVICING, please include the following: (1) the date that the Plaintiff's account was transferred, the particular agreement entered into between OCWEN, HOMEQ SERVICING and WACHOVIA and any other affiliated entity, (2) the existence of any indemnity agreements, (3) the existence of any insurance coverage known to be placed on this account that should or could cover claims such as the ones included in the Plaintiff's third amended original petition, (4) all agreements concerning liability, (5) and any known liability that has been assumed by OCWEN and WELLS FARGO on behalf of HOMEQ SERVICING or WACHOVIA, or an affiliated entity.

ANSWER:  Both Homeq and Ocwen have acted as servicing agents, and not owners, with respect to the loan. Wells Fargo is the owner of the note and mortgage pursuant to assignment dated June 27, 2006.  Ocwen and Wells Fargo object to the remainder of Interrogatory No. 2 as requesting information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3. For the period between 2006-2012, please fully identify the process by which OCWEN received the Plaintiff's account from HOMEQ SERVICING, please include the following:    (1) the date that the Plaintiff's account was transferred, (2) the particular agreement entered into between WELLS FARGO, HOMEQ SERVICING and WACHOVIA, or any other affiliated entity, (3) the existence of any indemnity agreements, (4) any insurance coverage known to be placed on this account that should or could cover claims such as the ones included in the Plaintiff's third amended original petition, (5) all agreements concerning liability, and (6) any known liability that has been assumed by OCWEN and WELLS FARGO on behalf of HOMEQ SERVICING or WACHOVIA, or an affiliated entity.

Alanis000612

DOCUMENT SCANNED AS FILED

ATams000615

**VERIFICATION**

| STATE OF FLORIDA | § |
| | § |
| COUNTY OF PALM BEACH | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared _____(Howard R. Handville),  Loan Analyst of Ocwen Loan Servicing, LLC, for Ocwen Loan Servicing, LLC and as the Authorized Agent of  Wells Fargo Bank National Association, As Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass-Through Certificates Series 2006-NC3, being by me duly sworn on his oath deposed and said that he has read the above and foregoing Answers to Interrogatories, and that every statement contained therein is within his personal knowledge and is true and correct.

SUBSCRIBED AND SWORN TO BEFORE me on this the 23rd day of April, 2012, to certify which witness my hand and official seal.

Notary Public in and for
The State of FLORIDA
My Commission Expires: __11/11/14__

LAURIE STEVENSON
MY COMMISSION # EE 041296
EXPIRES: November 11, 2014
Bonded Thru Budget Notary Services

ATams000615

1198

837

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | §<br>§<br>§ | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | §<br>§<br>§ | |
| *Movant* | §<br>§ | |
| v. | §<br>§ | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| And | §<br>§ | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§ | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)   FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-16

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS, <br> *Plaintiff* | § <br> § <br> § | IN THE DISTRICT COURT |
| | § | |
| WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC3 MORTGAGE PASS THROUGH CERTIFICATES SERIES 2006 NC3; <br> and <br> HOMEQ SERVICING CORPORATION; <br> and <br> OCWEN LOAN SERVICING, LLC, <br> *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | 45th JUDICIAL DISTRICT <br><br><br><br><br><br> OF BEXAR COUNTY, TEXAS |

<u>AFFIDAVIT OF MARK D. CRONENWETT</u>

Before me, the undersigned notary, personally appeared Mark D. Cronenwett, a person known to me, who having been sworn stated on oath:

1.      My name is Mark D. Cronenwett. I am over the age of 18 years, have never been convicted of a crime, and am fully competent to make this affidavit. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.      I am lead counsel of record for Defendants/Counter-Plaintiffs Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("Wells Fargo"), and Ocwen Loan Servicing, LLC ("Ocwen"), in the above-numbered and styled cause.

913

DOCUMENT SCANNED AS FILED

3.    I am an attorney licensed to practice in the State of Texas and am a member of the bar of the State of Texas. I am currently the managing attorney for the litigation department of the law firm of MWZM located in Dallas, Texas. I am in good standing with respect to the State Bar of Texas. A true and correct copy of my resume is attached hereto as Exhibit C-1.

4.    MWZM was retained by Wells Fargo and Ocwen to defend them against, among other things, the claims asserted in this suit by Plaintiff, Nancy Alanis. MWZM was also retained to prosecute claims against Plaintiff for breach of contract, suit on the note in this case and equitable subrogation against Plaintiff.

5.    The services provided by the legal professionals of MWZM are done so as an attorney licenses by the State of Texas, in good standing and experienced in the areas of business litigation practice.  Without waiving the attorney-client privilege, the subject matter of the counsel and representation provided to Defendants by MWZM'S legal professionals included, but was not limited to: preparation and filing of Defendants' pleadings in the instant lawsuit; review and analysis of loan documents; conducting discovery; and preparation of the motion for summary judgment.

6.    To date, the reasonably incurred attorneys' fees and costs in this cause are $98,662.00, at the rates of $230.00 for partners and senior attorneys, $190.00 for associate attorneys, and $95.00 for paralegals, to defend against Plaintiff's claims and to prosecute Defendants' counterclaims.  Partners and senior attorneys spent 327.40 hours working on this matter; associate attorneys spent 83.60 hours and paralegals spent 78.90 hours.  Costs incurred are $13,115.28 of which $7,141.22 are unrecoverable court costs.  As Plaintiff's claims challenged the ability of Defendants to enforce the subject note and deed of trust, the work

DOCUMENT SCANNED AS FILED

performed by the legal professionals at MWZM was inextricably intertwined with the work performed to prosecute Defendants' counterclaims.

7.    I have become familiar with the legal services necessary to handle claims based on and the reasonable charges for such legal services in the State of Texas.

8.    In considering reasonable attorneys' fees in this case, I have considered the time and labor involved; the difficulty of the issues presented; the experience, reputation and ability of the attorneys involved in pursuing this claim; the skills requisite to properly conduct the case; customary charges of the Bar and awards in similar cases; and the amount in controversy.

9.    Based upon my knowledge and experience with similar litigation in the state courts in Texas, and applying the facts and factors set out above, it is my opinion that the total sum of $98,662.00 are reasonable attorneys' fees for defending Wells Fargo and Ocwen against claims made by Plaintiff and for prosecuting Wells Fargo and Ocwen's claims for the enforcement of their interest in certain real property as a result of Plaintiff's default of under the Note and Deed of Trust agreement between the parties.

9.    If any party files post-judgment motion, a reasonable fee for the Defendants would be $2,500.00. If this case is appealed to the court of appeals, a reasonable fee for the Defendants would be an additional $10,000.00. If this case is appealed to the Texas Supreme Court, a reasonable fee for the Defendants would be an additional $2,500.00 for responding to a petition for review and an additional $5,000.00 if full briefing is requested.

Further affiant sayeth not.

**MARK D. CRONENWETT**

DOCUMENT SCANNED AS FILED

STATE OF TEXAS        §
                      §
COUNTY OF DALLAS      §

~~SWORN TO AND SUBSCRIBED before me on this 2$\underline{1}^{th}$ day of January, 2016, to~~
certify which witness my hand and official seal.



SUSAN TAPLIN
Notary Public, State of Texas
Comm. Expires 07-27-2017
Notary ID 795810-5

_____
Notary Public, State of Texas

AFFIDAVIT OF MARK D. CRONENWETT                               PAGE 4
1972

DOCUMENT SCANNED AS FILED

| 02/19/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
|---|---|---|---|---|---|
| Receipt and review supplemental document production from borrower. | | | | | |
| 02/20/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Telephone conference with Judge Price's clerk regarding how he wants the proposed order for continuance delivered to him for execution. | | | | | |
| 02/20/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Prepare correspondence to Judge Richard Price faxing the proposed order continuing the trial date to May 18, 2015 for execution. | | | | | |
| 02/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 2.30 | $529.00 |
| Prepare motion to designate responsible third parties. | | | | | |
| 02/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.40 | $92.00 |
| Prepare second amended answer. | | | | | |
| 02/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.30 | $69.00 |
| Telephone conference with L. Sobba regarding status and strategy. | | | | | |
| 02/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Exchange emails with plaintiff's counsel requesting his approval of form of order granting continuance. | | | | | |
| 02/23/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Telephone conference with court clerk regarding the status of the execution of the order continuing trial. | | | | | |
| 02/23/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 2.20 | $506.00 |
| Prepare motion to designate responsible third parties. | | | | | |
| 02/23/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.40 | $92.00 |
| Prepare second amended answer. | | | | | |
| 02/24/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Prepare follow-up email to Jerry Knight, archivist for the Bexar County Tax Assessor's office for documents for taxes paid that need to be certified for use at trial. | | | | | |
| 02/24/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Telephone call to the 57th District Court to inquire whether the court reporter transcribed the default judgment hearing on May 6, 2011 against HomEq in order to obtain a copy of same. | | | | | |
| 02/24/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review plaintiff counsel's third supplemental discovery response. | | | | | |
| 02/25/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Prepare correspondence to plaintiff's counsel providing notice of hearing on motion to designate responsible third parties. | | | | | |
| 02/25/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Telephone conference with Jerry Knight with the Bexar County Tax Assessor's office regarding the certified documents we requested. | | | | | |
| 02/26/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.10 | $9.50 |
| Telephone conference with court reporter for the 57th district court to determine if she transcribed the default judgment hearing which was held on April 19, 2011. | | | | | |
| 02/26/2015 2007 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.40 | $38.00 |

917

DOCUMENT SCANNED AS FILED

| Invoice Date |
|---|
| 05/15/2015 |

| Invoice Number |
|---|
| 132271 |

**Mackie Wolf Zientz & Mann, P.C.**
14160 N. Dallas Pkwy Ste. 900
Dallas, TX 75254
Phone: (214) 635-2650
Fax: (214) 635-2686

## INVOICE

Ocwen Loan Servicing

█████████████████████

Loan No: █████████
Reference: Nancy Alanis v. Wells Fargo Bank N.A., as Trustee, Ocwen Loan Servicing, LLC, et al.
Property Addr: 13210 HUNTERS VIEW
SAN ANTONIO, TX 78230
Our File: 14-000002-969-1

Loan Type: CONV; Case Type: Litigation

BILLING SUMMARY:

| COSTS | | | |
|---|---|---|---|
| DATE | COST DESCRIPTION | RECOVERABLE | AMOUNT |
| 03/18/2015 | Airfare Expense | No | $428.00 |
| 03/18/2015 | File Stamped Copy | No | $12.12 |
| 03/18/2015 | Meals Expense | No | $26.06 |
| 03/18/2015 | Rental Car and Gas Expense | No | $107.81 |
| 03/18/2015 | Mileage, Parking and Tolls Expense | No | $21.47 |
| 04/17/2015 | Filing Costs - notice of filing business records of Mission Title | Yes | $2.06 |
| 04/17/2015 | Filing Costs - notice of filing deposition by written questions on Mission Title | Yes | $2.06 |
| 04/17/2015 | Filing Costs - motion to quash deposition on written question on John O&apos;Brien | Yes | $2.06 |
| 04/20/2015 | Deposition by Written Questions on Mission Title | Yes | $161.75 |
| 04/24/2015 | Filing Costs - amended order resetting hearing on motion to quash | Yes | $2.06 |
| 05/07/2015 | Transcript Costs - May 4, 2015 hearing | No | $774.00 |

| HOURLY FEES | | | | | |
|---|---|---|---|---|---|
| DATE | FEE DESCRIPTION | RECOVERABLE | RATE | HOURS | AMOUNT |
| 04/01/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Telephone conference with ████████████████████ | | | | | |
| 04/07/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review subpoena to Mass. clerk by plaintiff. | | | | | |
| 04/09/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Correspondence with ████████ regarding plaintiff's deposition on written questions to O'Brien. | | | | | |
| 04/10/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Review grounds to object to deposition on written questions to O'Brien. | | | | | |
| 04/13/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review notice of filing by plaintiff's counsel that our lien is fraudulent. | | | | | |

918

**DOCUMENT SCANNED AS FILED**

| | Review plaintiff's latest motion to determine its setting and strategy for response thereto. | | | | | |
|---|---|---|---|---|---|---|
| 09/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| | Telephone conference with plaintiff's counsel regarding setting hearing on his motion to strike our supplemental expert witness designation. | | | | | |
| 09/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| | Receipt and review plaintiff's motion to strike our first supplemental expert witness designation. | | | | | |
| 09/22/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.50 | $115.00 |
| | Analysis of arguments to make in response to plaintiff counsel's motion to strike our experts. | | | | | |
| 09/25/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 2.80 | $266.00 |
| | Prepare documents to be produced, redacting and bates labeling same - 1152-3114. | | | | | |
| 09/25/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.80 | $184.00 |
| | Prepare supplemental document production with transcripts from prior depositions, hearings and trial. | | | | | |
| 09/28/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| | Receipt and review judge's letter ruling on our special exceptions and plaintiff counsel's plea to the jurisdiction. | | | | | |
| 09/29/2015 | Paralegal Fee-Hourly Stephens, Toni | Yes | $95.00 | 0.20 | $19.00 |
| | prepare exhibits for attorney review | | | | | |
| 09/29/2015 | Senior Attorney Fee-Hourly Stansberry, Lindsay | Yes | $230.00 | 1.30 | $299.00 |
| | Finalized the Motion to Quash Discovery and for Entry of Protective Order to include objections on newly dismissed claims | | | | | |
| 09/29/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| | Review and revise supplement document production (enclosing transcripts from prior case) | | | | | |
| 09/29/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| | Review and revise motion to quash and for protective order prepared by L. Stansberry. | | | | | |
| 09/30/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| | Exchange correspondence with record service that Iley & Iley Financial Services does not have any records and request an affidavit as to that effect. | | | | | |

| TOTALS | |
|---|---|
| **DESCRIPTION** | **AMOUNT** |
| Total Costs Since Last Billing | $4.12 |
| Total Hourly Fees Since Last Billing | $5268.00 |
| Current Amount Due | $5272.12 |
| Previous Balance | $80295.24 |
| Payments Received | $50000.17 |
| Total Amount Due | $35567.19 |

| TIMEKEEPER SUMMARY | | |
|---|---|---|
| **TIMEKEEPER** | **HOURS** | **AMOUNT** |
| Cronenwett, Mark | 16.80 | $3,864.00 |
| Stansberry, Lindsay | 4.70 | $1,081.00 |
| Stephens, Toni | 0.20 | $19.00 |
| Taplin, Susan | 3.20 | $304.00 |

2030

DOCUMENT SCANNED AS FILED

| Date | Description | | Rate | Hours | Amount |
|------|-------------|---|------|-------|--------|
| 10/19/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.30 | $28.50 |
| Prepare exhibits to motion for summary judgment on accounting and no evidence. | | | | | |
| 10/19/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review payoff quote ███████████ | | | | | |
| 10/19/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 6.00 | $1,380.00 |
| Prepare motion for summary judgment on accounting issues and several of plaintiff's claims (gross negligence, penal code, intentional infliction of emotional distress, common law debt collection, fraud and DTPA). | | | | | |
| 10/19/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 1.40 | $322.00 |
| Prepare declaration of Gina Feezer for motion for summary judgment.- | | | | | |
| 10/19/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 1.20 | $276.00 |
| Telephone conference with G. Feezer regarding edits to her declaration. | | | | | |
| 10/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 1.50 | $345.00 |
| Prepare response to motion to segregate and deemed admissions. | | | | | |
| 10/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.40 | $92.00 |
| Communications with ██████████████████████████ | | | | | |
| 10/20/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.40 | $92.00 |
| Receipt and review seventh amended petition. | | | | | |
| 10/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 1.20 | $276.00 |
| Telephone conference with ████████████████████ | | | | | |
| 10/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 1.00 | $230.00 |
| Review whether HomeEq default judgment is void. | | | | | |
| 10/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.30 | $69.00 |
| Receipt and review plaintiff counsel's latest motion for summary judgment. | | | | | |
| 10/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review plaintiff counsel's demand; ████████████ | | | | | |
| 10/21/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.30 | $69.00 |
| Telephone conference with ████████ regarding plaintiff counsel's demand. | | | | | |
| 10/22/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.60 | $138.00 |
| Prepare motion to continue trial setting. | | | | | |
| 10/22/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Telephone conference with ████████ | | | | | |
| 10/22/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review new notice of hearing on plaintiff counsel's motion for summary judgment and plea to the jurisdiction. | | | | | |
| 10/22/2015 | Senior Attorney Fee-Hourly Cronenwett, Merk | Yes | $230.00 | 0.40 | $92.00 |
| Prepare correspondence to L. Sobba with edits to trial preparation memo. | | | | | |
| 10/23/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Prepare amended fiat setting hearing on second motion for continuance of trial setting to October 29. | | | | | |

**DOCUMENT SCANNED AS FILED**

| Date | Description | | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 11/04/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 2.00 | $460.00 |
| Prepare for dispositive motion hearing | | | | | |
| 11/05/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 1.20 | $114.00 |
| Review file and prepare notebooks for motion for partial summary judgment hearing on November 9. | | | | | |
| 11/05/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review plaintiff's supplemental response to our motion for summary judgment. | | | | | |
| 11/05/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 4.00 | $920.00 |
| Prepare response to plaintiff's motion for summary judgment. | | | | | |
| 11/05/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 3.00 | $690.00 |
| Prepare response to Plaintiff's Motion for Summary Judgment | | | | | |
| 11/05/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review Plaintiff Counsel's 2nd supplemental summary judgment response | | | | | |
| 11/06/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.50 | $47.50 |
| Revisions to notebooks for motion for summary judgment hearing. | | | | | |
| 11/06/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 5.50 | $1,265.00 |
| Draft reply in support of motion for summary judgment; prepare for hearing on same. | | | | | |
| 11/06/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review plaintiff counsel's motion to withdraw and order granting same. | | | | | |
| 11/06/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review plaintiff's counsel's motion to withdraw. | | | | | |
| 11/06/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Telephone conference with ▮▮▮▮▮▮▮▮▮▮▮▮ | | | | | |
| 11/06/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 2.50 | $575.00 |
| Prepare reply in support of our motion for summary judgment on accounting issues. | | | | | |
| 11/08/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 2.50 | $575.00 |
| Travel to San Antonio for hearing on our Motion for Summary Judgment; prepare while en route | | | | | |
| 11/09/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 8.40 | $1,932.00 |
| Attend hearing on our motion for partial summary judgment; return to Dallas. | | | | | |
| 11/10/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $95.00 | 0.20 | $19.00 |
| Prepare correspondence to borrower serving the signed Order granting defendants motion for partial summary judgment. | | | | | |
| 11/10/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.10 | $23.00 |
| Receipt and review order granting our motion for summary judgment on accounting. | | | | | |
| 11/11/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.10 | $23.00 |
| Prepare correspondence to ▮▮▮▮▮▮▮▮ | | | | | |
| 11/13/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.40 | $92.00 |
| Prepare summary judgment affidavit for G. Feezer (for judicial foreclosure). | | | | | |
| 11/13/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |

DOCUMENT SCANNED AS FILED

**Invoice Date**
01/15/2016

**Invoice Number**
153887

Mackie Wolf Zientz & Mann, P.C.
14160 N. Dallas Pkwy Ste. 900
Dallas, TX 75254
Phone: (214) 635-2650
Fax: (214) 635-2686

## INVOICE

Ocwen Loan Servicing

████████████████████

Loan No: ████████████
Reference: Nancy Alanis v. Wells Fargo Bank N.A., as Trustee, Ocwen Loan Servicing, LLC, et al.
Property Addr: 13210 HUNTERS VIEW
SAN ANTONIO, TX 78230
Our File: 14-000002-969-1

Loan Type: CONV; Case Type: Litigation

BILLING SUMMARY:

| DATE | FEE DESCRIPTION | RECOVERABLE | RATE | HOURS | AMOUNT |
|------|-----------------|-------------|------|-------|--------|
| HOURLY FEES | | | | | |
| 12/01/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review payoff quote | | | | | |
| 12/03/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 2.00 | $460.00 |
| Work on motion for summary judgment. | | | | | |
| 12/03/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.50 | $115.00 |
| Draft declaration of ████████████ | | | | | |
| 12/04/2015 | Paralegal Fee-Hourly Taplin, Susan | Yes | $85.00 | 0.70 | $66.50 |
| Draft affidavit in support of award for attorney fees. | | | | | |
| 12/04/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Prepare correspondence with ████████████████████ | | | | | |
| 12/08/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review draft of motion for new trial from J. Sandberg. | | | | | |
| 12/08/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Review draft of motion for new trial from J. Sandberg | | | | | |
| 12/10/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.40 | $92.00 |
| Review borrower's latest administrative complaints regarding consent agreement with Wells Fargo | | | | | |
| 12/14/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 1.50 | $345.00 |
| Prepare correspondence for Ocwen to send in response to latest agency complaint by Ms. Alanis | | | | | |
| 12/14/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.50 | $115.00 |
| Revisions to letters to Ms. Alanis and the Texas Attorney General regarding her complaint to the Texas Attorney General. | | | | | |
| 12/29/2015 | Senior Attorney Fee-Hourly Cronenwett, Mark | Yes | $230.00 | 0.20 | $46.00 |
| Receipt and review new payoff quote | | | | | |

922

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,*<br><br>Debtors. | §<br>§<br>§<br>§ | Case No. 07-10416 (BLS)<br><br>(Chapter 11) |
| NANCY K ALANIS<br><br>*Movant*<br><br>v.<br><br>Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>And<br><br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>*Respondents* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
(i)   FILE ADVERSARIAL COMPLAINT;
(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
(iii)  OBTAIN RELATED RELIEF**

# Ex-17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NANCY ALANIS | § | |
|       *Plaintiff* | § | |
| *vs.* | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | |
| OCTOBER 1, 2006 SECURITIZED ASSET | § | CIVIL ACTION NO. 5:19-cv-311 |
| BACKED RECEIVABLES LLC TRUST | § | U.S. District Judge David A. Ezra |
| 2006-NC3 MORTGAGE PASS THROUGH | § | U.S. Magistrate Judge Henry J. Bemporad |
| CERTIFICATES, SERIES 2006 NC3 | § | |
| | § | |
| MACKIE WOLF ZIENTZ & MANN, PC | § | |
| (As Debt Collector) | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC | § | |
|       *Defendant(s)* | § | |

---

**AFFIDAVIT OF DANIEL I. CASTRO, JR**
**EXPERT WITNESS FOR PLAINTIFF NANCY ALANIS**
**(SUPPLEMENT EXPERT REPORT TO 8.20.15 EXPERT AFFIDAVIT / EXPERT REPORT**
**FILED IN *CAUSE No. 2011-CI-02839*)**

---

| | |
|---|---|
| **STATE OF NEW JERSEY** | § |
| | § |
| **COUNTY OF BERGEN** | § |

    **BEFORE ME,** the undersigned authority, on this day personally appeared **DANIEL I. CASTRO, Jr.**, known to me, who being by me duly sworn upon his oath, deposed and said I declare under the penalty of perjury, the foregoing is true and correct:

"...My name is Daniel Castro, Jr. and I am of sound mind and over the age of eighteen years of age and competent to make this sworn statement;

1.  I am the owner and President of Robust Advisors, Inc. and reside in Mahwah, New Jersey, County of Bergen;

2.  I have personal knowledge of the facts as stated herein and they are all true and correct and I can testify to the same;

3.  I am a securitization expert witness retained by Nancy Alanis. I am qualified as an expert by knowledge, skill, experience, training and education and will make myself available to testify in the form of a written opinion, deposition and at trial;