Alanis000326

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS,<br>*Plaintiff* | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR<br>THE POOLING AND SERVICING<br>AGREEMENT DATED AS OF<br>OCTOBER 1, 2006 SECURITIZED<br>ASSET BACKED RECEIVABLES LLC<br>TRUST 2006-NC3 MORTGAGE PASS<br>THROUGH CERTIFICATES SERIES<br>2006 NC3;<br>and<br>HOMEQ SERVICING<br>CORPORATION;<br>and<br>OCWEN LOAN SERVICING, LLC,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 45th JUDICIAL DISTRICT<br><br><br><br><br><br><br><br><br>OF BEXAR COUNTY, TEXAS |

## AFFIDAVIT OF GINA FEEZER

Before me, the undersigned notary, personally appeared Gina Feezer, a person known to me, who having been sworn stated on oath:

1.    My name is Gina Feezer. I am over the age of 21 years and am fully competent to make this affidavit. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.    I hold a position as a Senior Loan Analyst at Ocwen Loan Servicing, LLC ("Ocwen"). In this position, my job duties include researching the loan histories of parties who are in litigation with Ocwen; determining whether or not these parties made timely principal, interest, escrow and other payments on their mortgages that Ocwen services; reviewing the loan files that Ocwen has for these parties to determine whether the loans were properly originated and/or serviced as may be appropriate for the particular case; reviewing the foreclosure files to

AFFIDAVIT

Alanis000326

Alanis000327

determine whether foreclosure was proper and notices were properly given; and serving as Ocwen's corporate representative in trials, court hearings, depositions, and mediations as may be needed.

3.      Ocwen presently acts as the servicing agent for Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("Wells Fargo") for the mortgage loan at issue in this suit. Wells Fargo is the owner and holder of this mortgage loan.

4.      I make this affidavit based on my personal knowledge of the facts contained herein and they are true and correct. My personal knowledge is based on my review of the Servicing Records described below. In the regular performance of my job functions at Ocwen, I am familiar with the business records maintained by Ocwen for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies (the "Servicing Records"). Ocwen Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans its services.

3.      I researched and reviewed all of the necessary documents in Ocwen's possession regarding Nancy Alanis's loan agreement that is serviced by Ocwen, and the statements in this Affidavit are based upon my research and review of these documents.

4.      On or about June 15, 2006, Plaintiff Nancy Alanis ("Plaintiff") executed an Adjustable Rate Balloon Note ("Note") for $193,500.00 payable to New Century Mortgage Corporation ("New Century") as lender on a loan secured by the real property commonly known as 13210 Hunters View, San Antonio, Texas 78230 (the "Property") and more particularly described as follows:

Alanis000327

Alanis0000328

LOT 2, BLOCK 6, NEW CITY BLOCK 16984, HUNTERS CREEK NORTH, UNIT 3, IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 8200, PAGE(S) 215-216, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

4.      Concurrently with execution of the Note, Plaintiff executed a Deed of Trust ("Deed of Trust" and together with the Note, the "Loan Agreement") with said Deed of Trust being recorded as document number 20060146541 in the official public records of Bexar County, Texas.

5.      On or about November 13, 2006, Plaintiff made a bundled payment of $3,260.00, when her regularly monthly payment at that time was $1,631.71, which is the approximate of two monthly principal and interest payments.  Her loan was due for the November 1, 2006 payment. The amount of the regular monthly payment, $1,631.71, was applied to November and the balance of her bundled payment was placed in suspense.

6.      On or about November 13, 2006, Plaintiff made a second bundled payment of $3,264.58.  Presumably, Plaintiff was attempting to make two bundled payments to cover the principal and interest payments on the loan for four (4) months: November 2006 through February, 2007.  Plaintiff did not make monthly payments in December, 2006 or January, 2007. A late charge was posted on her account, but was reversed on February 18, 2007.  The bundled payments were then applied for each respective month for December 2006 to February 2007.

7.      On or about February 23, 2007: Plaintiff sent in another bundled payment of $3,264.00.  The bundled payment was credited to the March and April 2007 loan payments.

8.      Plaintiff made her regular monthly payments in the amount of $1,631.71 for May, June, July, and August 2007.

AFFIDAVIT

Alanis0000328

Alanis000329

9.  Plaintiff's escrow balance remained at $0.00 from November 2006 to August 1, 2007. An escrow account was established in August, 2007 on the loan to pay property taxes.

10.  Plaintiff's next regularly monthly principal and interest payment in the amount of $1,632.00 on September 18, 2007 was placed in Suspense because it was insufficient to cover the full monthly payment, including the new escrow portion.

11.  On or about October 18, 2007, Plaintiff made a payment in the amount of $1,632.00, which is credited to principal and interest for September, 2007. The payment was short in the amount of $228.24, which would cover the escrow portion for the month.

12.  After August, 2007, Plaintiff incurred additional authorized fees for certified mail costs, and late fees for her failure to remit full payments to cover principal, interest, fees, and escrow. She continued making some bundled payments and some payments in the amount of $1,631.71 on the loan. The amounts were not sufficient to cure the default on the loan.

13.  Plaintiff has failed to tender all of her payments when due, and on and December 8, 2010, Ocwen sent Notice of Default with Intent to Accelerate to Plaintiff at the Property Address of 13210 Hunters View, San Antonio, Texas 78230. This notice was sent by both regular and certified mail.

14.  I am qualified to testify about the business records of Ocwen. I am a custodian of records for Ocwen. Ocwen is the mortgage servicer for Wells Fargo. Ocwen also routinely employs counsel to conduct foreclosures. Ocwen's counsel provides it with true and exact copies of the documents in their file. Attached hereto are business records of Ocwen, including documents obtained through Ocwen's servicing agreement with Wells Fargo, documents obtained from Ocwen's foreclosure counsel, and documents generated by Ocwen itself. These said records are kept by Ocwen in the regular course of business, and it was the regular course of

AFFIDAVIT

Alanis000329

Alanis0000330

practice of Ocwen for an employee or representative of Ocwen with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such records; and the record was made at or near the time or reasonably soon thereafter.  The records attached hereto are the originals or exact duplicates of the originals. These records are also identified as exhibits to this Affidavit as indicated below:

        A-1.   Note;

        A-2.   Deed of Trust;

        A-3.   Transfer of Lien;

        A-4.   Notice of Default;

        A-5.   HomEq Transaction History;

        A-6.   Ocwen Transaction History; and

        A-7.   Payoff Statement.

FURTHER AFFIANT SAYETH NOT.

Signed this _21st_ day of October, 2014.

                                   **GINA FEEZER, Senior Loan Analyst**

STATE OF FLORIDA          §
                              §

COUNTY OF ORANGE        §

      SWORN AND SUBSCRIBED to before me, the undersigned notary public, on this _21_ day of October, 2014.

                           Notary Public, in and for the State of Florida

SHIERA V. BARRERA
NOTARY
My Comm. Expires
January 17, 2015
EE 53971
PUBLIC
STATE OF FLORIDA

Alanis0000330

Alanis000331

# EXHIBIT A-1

Alanis000331

Alanis000332

# ADJUSTABLE RATE BALLOON NOTE

### 2 Year Rate Lock
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps))

*I certify this copy is a true and correct copy of the original instrument.*

Mission Gems *[signature]*

By

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| June 15, 2006 | San Antonio | Texas |
|---|---|---|
| [Date] | [City] | [State] |

13210 Hunters view, San Antonio, TX 78230
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 193,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.925 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on August 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 07/01/2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

My monthly payments will be based on an assumed 40 -year amortization period (the "Amortization Period").

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,631.71 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Page 1 of 4

Initials: *ALKA*

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

Alanis000332

Alanis000333

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of July, 2008, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points (6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.925% or less than 9.925%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) (1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.925 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials _NKA_

Alanis000333

Alan's000334

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1008511112

Alan's000334

Alanis000335

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
NANCY ALANIS              -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower

                                                    [Sign Original Only]

Alanis000501

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS,<br>*Plaintiff* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | |
| WELLS FARGO BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR<br>THE POOLING AND SERVICING<br>AGREEMENT DATED AS OF<br>OCTOBER 1, 2006 SECURITIZED<br>ASSET BACKED RECEIVABLES LLC<br>TRUST 2006-NC3 MORTGAGE PASS<br>THROUGH CERTIFICATES SERIES<br>2006 NC3;<br>and<br>HOMEQ SERVICING<br>CORPORATION;<br>and<br>OCWEN LOAN SERVICING, LLC,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 45th JUDICIAL DISTRICT<br><br><br><br><br><br><br>OF BEXAR COUNTY, TEXAS |

## DEFENDANTS' FIFTH SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

TO: Nancy Alanis, Plaintiff, by and through her counsel of record, Philip Ross, 1006 Holbrook Rd., San Antonio, Texas 78218.

Pursuant to the Texas Rules of Civil Procedure, Defendants Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3, Ocwen Loan Servicing, LLC, and Mackie Wolf Zientz & Mann, PC, hereby submit their Fifth Supplemental Responses to Plaintiff's First Request for Production as follows:

1.    Original Note with indorsement; Wells Fargo 001126-001129.

Alanis000501

Ex-F

Alanis000502

Respectfully submitted,

By: _____
**MARK D. CRONENWETT**
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, PC**
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
(214) 635-2650
(214) 635-2686 (Fax)

and

**JEFFREY A. HILLER**
Texas Bar No. 00790883

**CACHEAUX, CAVAZOS & NEWTON, L.L.P.**
333 Convent Street
San Antonio, Texas  78205
Phone: (210) 222-1642
Facsimile: (210) 222-2453

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 26th day of March, 2015, a true and correct copy of the foregoing document was sent via U.S. mail, postage prepaid and by email to ross_law@hotmail.com to the counsel of record listed below:

Philip Ross
1006 Holbrook Rd.
San Antonio, Texas 78218

_____
**MARK D. CRONENWETT**

A/anis0005503

# ADJUSTABLE RATE BALLOON NOTE
### 2 Year Rate Lock
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME, YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

June 15, 2006        San Antonio        Texas
[Date]             [City]            [State]

13210 Hunters view, San Antonio, TX 78230
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 193,500.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.925 %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on     August 1, 2006 .
My monthly payments will be based on an assumed 40      -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  07/01/2036     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,631.71   . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Page 1 of 4

1008511112

Initials AVKA

NCMC
Adjustable Rate Balloon Note (TX)
RE-522  (011806)

A/anis0005503

Wells Fargo  001126

Alan\s000504

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of July, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points (6.050 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.925% or less than 9.925%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) (1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.925 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1008511132

Initials: JK

Alan\s000504

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

Wells Fargo  001127

Alanis0005O5

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1008511112

Initials: _A.L.A._

NCMC
Adjustable Rate Note (TX)
RE-522   (011806)

Page 3 of 4

Alanis0005O5

Wells Fargo  001128

Alanis0005506

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(Seal)    _____(Seal)
NANCY ALANIS            -Borrower                               -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                               -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                               -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                               -Borrower

Pay to the order of without recourse
New Century Mortgage Corporation
By: _____
Steve Nagy
V.P. Records Management

*[Sign Original Only]*

1008511112

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)                     Page 4 of 4

Alanis0005506

Wells Fargo  001129

Book  14872   Page 933  3pgs        Doc# 20110038280

AlanisO00512

RETURN TO:
MACKIE WOLF ZIENTZ & MANN P.C.
Pacific Center I, Suite 680
14160 N. Dallas Parkway
Dallas, Texas 75254

207059/307931
Attorney Code: 24076

**TRANSFER OF LIEN**
**TEXAS**

This TRANSFER OF LIEN is made and entered into as of this 1ST day of SEPTEMBER, 2010, from NEW CENTURY MORTGAGE CORPORATION , whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF OCTOBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC3 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2006-NC3, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

For the sum of ten dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, convey, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the right, title and interest owned or held by said Assignor in and to the following instrument describing land therein, duly recorded in the Official Public Records of Real Property/Mortgage/Deed of Trust Records of BEXAR County, State of TEXAS, described as follows:

Mortgagor/Trustor: NANCY ALANIS
Mortgagee/Beneficiary: NEW CENTURY MORTGAGE CORPORATION
Trustee: ELDON L. YOUNGBLOOD
Document Date: JUNE 16, 2006
Amount: $ 193,500.00
Date Recorded: JUNE 22, 2006
Book/Volume/Docket/Libor: 12204
Page/Folio: 547
Instrument No: 20060146541
Property Address: 13210 HUNTERS VIEW, SAN ANTONIO, TX
LEGAL DESCRIPTION: *SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.*

This Assignment is made without recourse, representation or warranty.
DATED: FEBRUARY 02, 2011
NEW CENTURY MORTGAGE CORPORATION
BY ITS ATTORNEY IN FACT
OCWEN LOAN SERVICING, LLC

BY:
NAME:  Christina Carter
TITLE:  Account Management, Manager
STATE OF FLORIDA                              )
                                             )SS.
COUNTY OF PALM BEACH                          )

POA RECORDED ON: JULY 27, 2006
INSTRUMENT NO: 2006-0176422

The foregoing instrument was acknowledged before me on this 02ND day of FEBRUARY, 2011, by Christina Carter, Account Management, Manager at OCWEN LOAN SERVICING, LLC, ATTORNEY-IN-FACT FOR NEW CENTURY MORTGAGE CORPORATION on behalf of the company. Christina Carter is personally known to me.

Witness my hand and official seal.

Notary Signature   Stephen Lee

Notary Public State of Florida
Stephen Lee
My Commission EE025756
Expires 09/13/2014

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
...

SEP 0 8 2011

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY:                   DEPUTY

AlanisO00512

Ex-G

Alanis0005l3

2070581307931

### EXHIBIT "A"

Lot 2, Block 6, New City Block 16984,  HUNTERS CREEK NORTH, UNIT-3, in the City of San Antonio, Bexar County, Texas, according to the map or plat thereof recorded in Volume 8200, Page(s) 215-216, of the Deed and Plat Records of Bexar County, Texas.

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED:

SEP 0 8 2011

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
DEPUTY

Alanis000514

Doc# 20110038280
# Pages 3
03/04/2011    08:15:31 AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD RICKHOFF COUNTY CLERK

Fees 20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
03/04/2011    08:15:31 AM
COUNTY CLERK, BEXAR COUNTY TEXAS



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
This page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office
ATTESTED:

SEP 0 8 2011

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
DEPUTY

Alanis000514

# Gerard Rickhoff



| COUNTY CLERK | | BEXAR COUNTY |

BEXAR COUNTY COURT HOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS    §

COUNTY OF BEXAR    §

I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

VOLUME _14872_    PAGE _933_

THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _8TH_ DAY OF _SEPT_ A.D., 20 _11_.

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _Lacy S. Ortegg_
Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

Alanis000597

## CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS,<br>*Plaintiff* | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | |
| WELLS FARGO BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR<br>THE POOLING AND SERVICING<br>AGREEMENT DATED AS OF<br>OCTOBER 1, 2006 SECURITIZED<br>ASSET BACKED RECEIVABLES LLC<br>TRUST 2006-NC3 MORTGAGE PASS<br>THROUGH CERTIFICATES SERIES<br>2006 NC3;<br>and<br>HOMEQ SERVICING<br>CORPORATION;<br>and<br>OCWEN LOAN SERVICING, LLC,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 45th JUDICIAL DISTRICT<br><br><br><br><br>OF BEXAR COUNTY, TEXAS |

## DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

TO:  Nancy Alanis, Plaintiff, by and through her counsel of record, Philip Ross, 1006 Holbrook Rd., San Antonio, TX 78218.

Pursuant to the Texas Rules of Civil Procedure, Defendants Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3, Ocwen Loan Servicing, LLC, and Mackie Wolf Zientz & Mann, PC, hereby submit their Third Supplemental Responses to Plaintiff's First Request for Production as follows:

1. Redacted invoices from the law firm of Cacheaux, Cavazos & Newton, L.L.P.;

2. Redacted invoices from the law firm of Mackie Wolf Zientz & Mann, P.C.

---

DEFENDANTS' THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION                                                     PAGE 1

Alanis000597



Alanis0005998

3. Property tax payments for the property located at 13210 Hunters View, San Antonio, Texas 78230, located online which can be found at http://actweb.acttax.com/act_webdev/bexar/index.jsp. Also, see the attached payment history print-out from the Bexar County Tax-Assessor website.

4. For the Pooling and Servicing Agreement, we refer Plaintiff to the federal website as follows:

https://www.sec.gov/Archives/edgar/data/1378964/000091412106003360/000091412 1-06-003360.txt

Respectfully submitted,

By: **MARK D. CRONENWETT**
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, PC**
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
(214) 635-2650
(214) 635-2686 (Fax)

and

**JEFFREY A. HILLER**
Texas Bar No. 00790883

**CACHEAUX, CAVAZOS & NEWTON, L.L.P.**
333 Convent Street
San Antonio, Texas 78205
Phone: (210) 222-1642
Facsimile: (210) 222-2453

**ATTORNEYS FOR DEFENDANTS**

Alanis0005998

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | § § § | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § § | |
| *Movant* | § § | |
| v. | § § | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | § § § | |
| And | § § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § § § | |
| *Respondents* | § § | |

### NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)    FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

# Ex-18

```
 1                    REPORTER'S RECORD
                    VOLUME 1 OF 1 VOLUME
 2          TRIAL COURT CAUSE NO. 2011-CI-02839

 3
    NANCY ALANIS              )  IN THE DISTRICT COURT
 4                            )
                             )
 5  VS.                      )  45TH JUDICIAL DISTRICT
                             )
 6                            )
    WELLS FARGO BANK NATIONAL )
 7  ASSOCIATION, ET AL.       )  BEXAR COUNTY, TEXAS
    *************************************************************
 8
                    MOTION FOR RECONSIDERATION
 9
    *************************************************************
10

11

12

13

14

15      On the 9th day of June, 2015, the following came on

16  to be heard in the above-entitled and numbered cause

17  before the Honorable Antonia Arteaga, Judge presiding,

18  held in San Antonio, Bexar County, Texas:

19      Proceedings reported by computerized stenotype

20  machine.

21

22

23                          ORIGINAL

24

25
```

412

DOCUMENT SCANNED AS FILED

1                            **APPEARANCES**

2

3    MR. PHILIP M. ROSS
     SBOT NO. 17304200
4         1006 Holbrook Road
          San Antonio, Texas   78218
5         Phone:  (210) 326-2100
              Appearing for Nancy Alanis
6
     MR. MARK D. CRONENWETT
7    SBOT NO. 00787303
          14160 Dallas Parkway, Suite 900
8         Dallas, Texas   75254
          Phone:  (214) 635-2650
9             Appearing for Wells Fargo Bank, as trustee;
              Mackie Wolf Zientz & Mann,
10            and Ocwen Loan Servicing

11
     MR. JEFFREY A. HILLER
12   SBOT NO. 00790883
          333 Convent Street
13        San Antonio, Texas   78205
          Phone:  (210) 222-1642
14            Appearing for Wells Fargo Bank, as trustee

15

16

17

18

19

20

21

22

23

24

25

413

DOCUMENT SCANNED AS FILED

1  questions has been waived by the defendants because they

2  didn't object to the introduction of any of the evidence

3  that was included in the request for extending and

4  reopening discovery in the hearing that we had before

5  Judge Mery.

6          THE COURT:  And when was that hearing?

7          MR. ROSS:  That was on May --

8          THE COURT:  Was it after May 4th?

9          MR. ROSS:  Yes, it was.

10          And with regard to whether the -- or

11  whether the motion for sanctions was frivolous, I

12  submit, Your Honor, that on -- the plaintiff admitted a

13  request for production to the defendants, which was

14  responded to on April 23rd of 2012.  And request number

15  2 was a request to include the -- to produce the

16  following documents:  The date on which the plaintiff's

17  account was transferred, particular agreement entered

18  into.  Those are referenced in plaintiff's exhibit,

19  which was the responses to first set of interrogatories.

20  And the answer was that HomEq and Ocwen have acted as

21  servicing agents and not owners with respect to the

22  loan.  Wells Fargo is the owner of the note and mortgage

23  pursuant to an assignment dated June 27th, 2006.  Ocwen

24  and Wells Fargo object to the remainder of interrogatory

25  number 2 as requesting information which is neither

414

1  chain of title.  And the response was that there was an

2  objection, overbroad and unduly burdensome, seeks

3  information that is neither relevant.  Subject to and

4  without waiving the objection, the loan file will be

5  provided including any assignment documents in the file.

6          And subsequent to that response to

7  interrogatory, the defendants produced three different

8  copies of the supposed original note, all of which are

9  different.  And we wish to offer evidence to show that

10 these documents are not the same, cannot all be the

11 original or exact copy of the original note.  And also

12 the assignment of lien that was executed in 2011 and

13 recorded in 2011 purporting to transfer the deed of

14 trust and the note to Wells Fargo directly from New

15 Century, which was notarized by Christina Carter, who's

16 been identified on the deposition on written questions

17 of John O'Brien as a robo signer, that that document was

18 a void document.  It did not transfer anything.  And

19 Mr. Cronenwett in the hearing on May 4th admitted that

20 that transfer of lien did not transfer title to Wells

21 Fargo from New Century.

22          And the reason for that is we requested the

23 Court take judicial notice that New Century Mortgage

24 Corporation was bankrupt and it was liquidated in

25 bankruptcy in 2008.  And nobody acting under a power of

415

1  attorney that was executed in 2005 could have legally

2  signed an assignment of lien in 2011 transferring the

3  ownership of the deed of trust from New Century to Wells

4  Fargo.

5           That document we're claiming is void.  And

6  it was known to be void.  And nevertheless it was

7  recorded in the Bexar County deed records.  And because

8  Mr. Cronenwett has admitted in the May 4th hearing that

9  that was not the document that transferred the lien to

10 Wells Fargo, he admits that that document is void and

11 that the chain of title that that document reflects from

12 New Century, which had been liquidated in bankruptcy

13 three years earlier to -- directly to Wells Fargo cannot

14 be the true chain of title in this transaction.

15          And I want to make a -- to enter the

16 exhibits that we have included in the Court's binder

17 into the record of the case, including the transcript of

18 the May 4th hearing, which we offer into evidence.

19          And the transcript is offered to show all

20 the references where -- that support the claims in the

21 response and to -- or to the motion to quash the

22 deposition on written questions and also the claims for

23 sanctions have evidentiary foundation.  So we offer the

24 transcript of the May 4th hearing.  We offer defendants'

25 reply in support of their motion to quash plaintiff's

DOCUMENT SCANNED AS FILED

1   deposition on written questions to John O'Brien.

2              We offer the -- or we ask the Court to take

3   judicial notice of the order on the plaintiff's motion

4   for continuance of trial setting that was signed by

5   Judge Price on May 6th, 2015 extending the trail date to

6   November 16th, 2015.

7              Request the Court to take judicial notice

8   of the order on plaintiff's first amended motion to

9   extend the discovery period, which was heard on

10  May 15th, 2015, which extends the deadline for plaintiff

11  to designate experts to August 14th, 2015, extends the

12  deadline for defendants to designate experts to

13  September 14, 2015.

14             THE COURT:  Mr. Ross, would you like to

15  speak with Mr. Cronenwett and ask if he has any

16  objections to simply taking judicial notice of the

17  documents that have been filed in 2011-CI-02839?

18             Are there any objections to taking notice

19  of the file, Mr. Cronenwett?

20             MR. CRONENWETT:  No, Your Honor.

21             THE COURT:  Okay.

22             MR. CRONENWETT:  We would object to their

23  Exhibit H, which is an incomplete document of a pooling

24  and servicing agreement and also Exhibit I for the same

25  reason.

417

35

1  STATE OF TEXAS

2  COUNTY OF BEXAR

3

4      I, Mary Martinez, Certified Court Reporter in and

5  for Bexar County, State of Texas, do hereby certify that

6  the above and foregoing contains a true and correct

7  transcription of the proceedings requested in the

8  above-styled and numbered cause, all of which occurred

9  in open court or in chambers and were reported by me.

10      I further certify that this Reporter's Record truly

11  and correctly reflects the exhibits, if any, offered by

12  the respective parties.

13      I further certify that the total cost for the

14  preparation of this Reporter's Record is $ 210.00

15  and was paid by ___Ms. Nancy Alanis___.

16      To which I certify on this the _22nd_ day of

17  _June_, 2015.

18

19

20

21

22                          Mary Martinez, CSR 5943
                            57th District Court
23                          Bexar County Courthouse
                            100 Dolorosa Street
24                          San Antonio, Texas 78205
                            Telephone: 210.335.1602
25                          Exp: 12-31-2016

DOCUMENT SCANNED AS FILED

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | § <br>§ <br>§ <br>§ | Case No. 07-10416 (BLS) <br><br>(Chapter 11) |
| Debtors. | | |

| | | |
|---|---|---|
| NANCY K ALANIS<br><br>*Movant*<br><br>v.<br><br>Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>And<br><br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>*Respondents* | § <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)   FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-19

FILED
10/20/2015 4:36:55 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Frances Gonzales

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| *VS* | § | |
| | § | 45TH JUDICIAL DISTRICT |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION. AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES | § | |
| LLC TRUST 2006-NC3 | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES SERIES 2006 NC3; | § | |
| and | § | |
| | § | |
| MACKIE WOLF ZIENTZ & MANN.P.C. | § | |
| (As Debt Collectors); and | § | |
| | § | |
| HOMEQ SERVICING CORPORATION; | § | |
| and | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC; | § | |
| *Defendants.* | § | BEXAR COUNTY, TEXAS |

**PLAINTIFF'S VERIFIED SEVENTH AMENDED ORIGINAL PETITION AND
APPLICATION FOR INJUNCTIVE RELIEF**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFF NANCY ALANIS ("ALANIS") and files this *Plaintiff's Verified Seventh Amended Original Petition And Application For Injunctive Relief* and in support of her claims against Defendants would show the Court as follows:

**I. DISCOVERY CONTROL PLAN**

1.1     ALANIS intends that discovery be conducted under Tex R Civ P 190.3 (Level 2) and requests the court intervention in setting a scheduling order, special trial date and monitoring compliance with the same since ALANIS alleges and would prove that the Defendants have protracted this litigation through over four continuances and attempted to quash all discovery relevant to their 2015 fraudulent acts.

## II.    JURISDICTION AND VENUE

2.1        Jurisdiction herein is based upon section 24.007 of the Texas Government Code, Article V,

Section 8, of the Texas Constitution; section 17.56 of the Texas Business and Commerce Code and section

12.001, 15.001 of the Texas Civil Practice & Remedies Code, and section 22.001 Texas Property Code.

Venue herein is based upon sections, 12.004, 15.001, 15.002(a)(1)-(2) and 15.005 of the Texas

Civil Practice & Remedies Code.

## III.    JURY TRIAL REQUESTED

3.1        ALANIS requests a jury trial and tenders the jury fee to the Bexar County District Clerk's

office pursuant to TEX. R. CIV. P. 216 and TEX. GOVT. CODE ANN. § 51.604.

## IV.   DISCOVERY & OTHER EVIDENCE ALANIS INTENDS TO USE AT TRIAL

4.1          ALANIS intends to use at trial the following evidence:

- *Notice of Compliance with Tex Pen Code 32.49* & Letter to Wells Fargo President/Chairman
- Plaintiff / Defendant Exhibits Filed in Court Proceedings in *Cause No 2011-CI-02839*
- Public OCC/CFPB Orders against WELLS FARGO and OCWEN
- Documents from government websites, newspaper publications including deposition references of H John Kennerty, PSA, SEC and WELLS FARGO Foreclosure Manual and other loan servicing matters;
- ALANIS bates stamped documents produced in connection with Defendants discovery requests:
- Defendants WELLS FARGO/OCWEN/MACKIE WOLF ZIENTZ & MANN bates stamped documents provided responsive to ALANIS discovery requests;
- Defendants 2014/2015 Summary Judgment filings and Custodian of Record "Affidavits and Exhibits attached thereto" including but not limited to the October 1, 2014 *Declaration Of Gina Feezer* and the October 21, 2014 *Affidavit Of Gina Feezer & Exhibits* and 1.10.15 MSJ:   *Affidavit of Katherine Ortwerth & Exhibits* and other summary judgment filings and evidence referenced therein based upon records produced by WELLS FARGO and OCWEN.
- http://www.sec.gov/Archives/edgar/data/873860/000101905612000280/ocn_10k.htm#A005 (OCWEN purchase of HOMEQ and required compliance with all laws including FDCPA and RESPA)

## V.   PARTIES

5.1          **PLAINTIFF NANCY ALANIS.** ("ALANIS", *herein*) is an individual, resident of the City

of San Antonio, Bexar County, Texas, and was fully compliant with her Note and Deed Of Trust when

WELLS FARGO, *As Trustee*, attempted between 2010 and 2011 to unlawfully foreclose on the ALANIS

Deed Of Trust loan commonly described as 13210 Hunters View, San Antonio, Texas, Bexar County

and legally described as Lot 2, Block 6, New City Block 16984, Hunters Creek North, Unit-3 in the City

1830

DOCUMENT SCANNED AS FILED

Of San Antonio. Bexar County, Texas according to the map or plat thereof recorded in Volume 8200,

pages 215-216 of the Deed and Plat Records of Bexar County. Texas ("ALANIS Property").

5.2      **DEFENDANT WELLS FARGO BANK NATIONAL ASSOCIATION**, As Trustee, For

The Pooling And Servicing Agreement Dated As Of October 1, 2006 Securitized Asset Backed

Receivables LLC Trust 2006-NC3 Mortgage Pass-Through Certificates Series 2006-NC3 ("WELLS

FARGO" and "WELLS FARGO, AS TRUSTEE". *herein*) is a National Banking Association with Trust

powers. WELLS FARGO, *As Trustee* is a debt collector who has acted in bad faith by and through its

loan servicing agents HOMEQ SERVICING CORPORATION ("HOMEQ", *herein*), OCWEN LOAN

SERVICING, LLC ("OCWEN", *herein*) and its legal agent and debt collector law firm of MACKIE

WOLF ZIENTZ & MANN, PC ("MACKIE WOLF ZIENTZ & MANN", *herein*) and (collectively

"DEFENDANTS") and knowingly breached PSA agreements and does not have a legal or equitable

interest in the ALANIS Note or Deed of Trust, violated federal and state debt collection and RESPA

laws, engaged in acts of intentional and knowing fraud, forgery and/or fraudulent concealment and has

been served with citation by serving its statutory agent for service of process, Corporation Service

Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. WELLS FARGO. *As Trustee* has

entered an appearance by and through their attorney's Jeffrey Hiller and Mark Cronenwett, and attended

the February 21, 2012 Injunction hearing in this cause of action where Hon. Judge Arteaga granted the

ALANIS injunction. To date, no order has been entered on the same.

5.3      **DEFENDANT OCWEN LOAN SERVICING, LLC** ("OCWEN" herein) is a publicly

traded Florida corporation and one of the largest nonbank mortgage servicer in the United States and

registered to do business in Texas. OCWEN is a debt collector and purchased former loan servicer

HOMEQ              SERVICING            in            2010

(http://www.sec.gov/Archives/edgar/data/873860/000101905612000280/ocn_10k.htm#A005) and acts

as the loan servicing agent for WELLS FARGO, *As Trustee*. In December 2013, the Consumer

Financial Protection Bureau (CFPB), authorities in 49 states, and the District of Columbia filed a

proposed court order requiring the country's largest nonbank mortgage loan servicer. Ocwen Financial

Corporation, and its subsidiary, Ocwen Loan Servicing, to provide $2 billion in principal reduction to

underwater borrowers. The consent order addresses Ocwen's systemic misconduct at every stage of the mortgage servicing process.    The Ocwen Consent Order is available at: (http://files.consumerfinance.gov/f/201312_cfph_consent-order_ocwen.pdf). OCWEN knowingly breached PSA loan servicer agreements and knew WELLS FARGO, *As Trustee* had no legal or equitable interest in the ALANIS Note or Deed of Trust, violated federal and state debt collection and RESPA laws and engaged in acts of intentional and knowing fraud, forgery and/or fraudulent concealment and was served with citation through its statutory agent, Corporation Service Company dba CSC- Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. OCWEN has entered an appearance and by and through their attorney's Jeffrey Hiller and Mark Cronenwett, attended the February 21, 2012 Injunction hearing in this cause of action where Hon. Judge Arteaga granted the ALANIS injunction. To date, no order has been entered on the same.

5.4    **DEFENDANT MACKIE WOLF ZIENTZ & MANN, PC** ("MACKIE WOLF ZIENTZ & MANN", *herein*) is a debt collector and is WELLS FARGO's legal agent and debt collector law firm who advertise on their website **http://www.mwzmlaw.com/**, they provide "full service default services". MACKIE WOLF ZIENTZ & MANN failed to comply with federal and state debt collection laws (including the failure to meet State of Texas debt collector bonding requirements) and engaged in acts of knowing and intentional fraud, including fraudulent concealment and has been served with citation and maintains its current office at 14160 N. Dallas Parkway, Suite 900 Dallas, Texas 75254. MACKIE WOLF ZIENTZ & MANN has entered an appearance and by and through their attorney Jeffrey Hiller, attended the February 21, 2012 Injunction hearing in this cause of action where Hon. Judge Arteaga granted the ALANIS injunction. To date, no order has been entered on the same.

5.5    **DEFENDANT HOMEQ SERVICING CORPORATION** ("HOMEQ") is a foreign corporation which has withdrawn its registration as an out-of-state corporation authorized to do business in Texas. HOMEQ was acquired by OCWEN with the acquisition completed in September 2010. (http://www.sec.gov/Archives/edgar/data/873860/000101905612000280/ocn_10k.htm#A005) HOMEQ acted as the loan servicing agent for WELLS FARGO, *As Trustee* as early as April 30, 2009 and failed to comply with federal and state debt collection laws and RESPA, engaged in multiple acts of fraud,

Case Number: 2011CI02839                Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AN[...]

1832

DOCUMENT SCANNED AS FILED

including fraudulent concealment and was served with citation and accepted the same through the Secretary of State of Texas for mailing to Wachovia Legal Division, 301 South College Street, 30th Floor, Charlotte. NC 28288-0630. A Default Judgment was entered against HOMEQ on May 6, 2011.

5.6      **ACTS OF AGENTS:** Whenever in this petition it is alleged that WELLS FARGO, As Trustee, OCWEN, HOMEQ and/or MACKIE WOLF ZIENTZ & MANN did any act or thing it is meant that WELLS FARGO, *As Trustee*, OCWEN, HOMEQ and/or MACKIE WOLF ZIENTZ & MANN, or its subsidiaries, affiliates, directors, officers, agents, or employees, performed or participated in such act or thing, and in each instance where its subsidiaries, affiliates, directors, officers, agents, or employees performed or participated in such act or thing, they were authorized to and did in fact act on behalf of WELLS FARGO, *As Trustee*, OCWEN, HOMEQ or MACKIE WOLF ZIENTZ & MANN.

## VI.    INJUNCTION HEARING AND TRIAL EVIDENCE

6.1      The following identified documents were attached to the January 27. 2012 *Plaintiff's Verified Third Amended Original Petition And Application For Injunctive Relief.* These uncontroverted documents were used in the 2.21.12 injunction hearing with Hon. Judge Arteaga and/or have been filed in court records by Alanis and the Defendants and the same are fully incorporated herein by reference for all purposes as if repeated in full verbatim:

Ex-A.1:  6.16.06 DEED OF TRUST / Lender New Century Mortgage Corporation

Ex-A.2:  6.15.06 ADJUSTABLE RATE BALLOON NOTE (initial monthly payment $1,631.71) and 6.30.08 Mission Title ESCROW corr. to N ALANIS (*with no indorsement on pg 4 of 4 thereon*)

Ex-A.3:  9.15.06 New Century Mortgage Corporation Corr to N ALANIS

Ex-A.4:  N ALANIS 2008-2011 Mortgage. Tax. Insurance Payments

Ex-A.5:  2006 Tax Reimbursements from Taxing Authority and Mission Title for N ALANIS Tax overpayment

Ex-A.6:  2006 HomEq Tax Payment $2,742.31 for N ALANIS

Ex-A.7:  5.13.08 TELEWIRE from HomEq Servicing to N ALANIS
         8.12.08 TELEWIRE from HomEq Servicing to N ALANIS

Ex-A.8:  HomEq Discovery: 8.18.10 Payment History for Nancy Alanis

Ex-A.9:  2008/2010 Tax Delinquency Notices from HomEq Servicing to N ALANIS

DOCUMENT SCANNED AS FILED

Ex-A.10:  12.12.08 N ALANIS correspondence to HomEq

Ex-A.11:  11.11.08 N ALANIS correspondence to HomEq

Ex-A.12:  7.20.09 N ALANIS correspondence to HomEq (cease harassing calls)

Ex-A.13:  8.21.09 HomEq  correspondence N ALANIS (will cease harassing calls)

Ex-A.14:  4.21.10 HomEq  correspondence N ALANIS (Foreclosure Action)

Ex-A.15:  8.11.10  HomEq correspondence to N ALANIS

Ex-A.16:  9.13.10  OCWEN correspondence to N ALANIS

Ex-A.17:  9.19.10  N ALANIS correspondence to OCWEN

Ex-A.18:  10.13.10  Loren Peters, atty  correspondence to  OCWEN

Ex-A.19:  12.21.10  Loren Peters, atty  correspondence to  OCWEN

Ex-A.20:  12.21.10: Loren Peters, atty  correspondence to  HomEq

Ex-A.21:  1.13.11 MACKIE WOLF ZIENTZ & MANN, PC corr to N ALANIS

Ex-A.22  8.25.11 Secretary Of State Certificate Of No Record

Ex-A.23:  2.3.11 Loren Peters correspondence to MACKIE WOLF ZIENTZ & MANN, PC

Ex-A.24:  2.7.11 Notice Of Foreclosure Sale

Ex-A.25:  1.28.11 Notice Of Proposed Settlement of Class Action
        3.23.11 N ALANIS Certified Letter Opting Out Of Settlement

Ex-A.26:  4.19.04 Office of Thrift Supervision United States Department of the Treasury and written
        agreements with OCWEN

Ex-A.27:  3.8.11  Rule 11 Agreement between Loren Peters and Jeff Hiller

Ex-A.28:  4.29.11 Rule 11 Agreement between Jeff Hiller and Brian Trenz

Ex-A.29:  DOCKET SUMMARY (Cause 2011 CI-02839)

Ex-A.30:  2.2.11  Appointment of Substitute Trustee

Ex-A.31:  3.4.11  Transfer of Lien

Ex-A.32:  5.6.11  Order Granting Plaintiff's Default Judgment

Ex-A.33:  9.7.11 OCWEN Correspondence to NK ALANIS

Ex-A.34:  LOREN PETERS BILLING RECORDS (A ALANIS LITIGATION)

**NEW EVIDENCE and/or WELLS FARGO DISCOVERY DOCUMENTS FILED BY PLAINTIFF IN 2014 (TO BE USED AT TRIAL):**

Ex-A.35: 9.4.09 E-Mail From HOMEQ Rep. (Wells Fargo Bates #00258)

Ex-A.36: 4.30.09 HOMEQ Letter to WELLS FARGO (Wells Fargo Bates #00127,00128)

Ex-A.37: 4.27.09 Federal Reserve Letter To HOMEQ
(Wells Fargo Bates Stamped #00120)

Ex-A.38: 10.30.09 HOMEQ letter to Federal Reserve
(Wells Fargo Bates Stamped #00196-00202)

Ex-A.39: HOMEQ spreadsheet for Alanis
(Wells Fargo Bates Stamped #00203-00204)

Ex-A.40: HOMEQ Default Notices to Alanis
(10.16.07, May 16, 2008, July 7, 2008, December 16, 2008. March 5, 2009)

Ex-A.41: 5.28.14 MACKIE WOLF ZIENTZ & MANN Corr.
*Notice Of Rescission*

Ex-A.42: 3.22.14 ALANIS Discovery Requests & Defendant Responses

Ex-A.45: 5.10.10 Notice Of Substitute Trustees Sale
(Foreclosure scheduled for 6.1.10)

Ex-A.46: WELLS FARGO "Bates Stamped" Loan Record Entries
(00960, 01065, 01068, 01072)

Ex-A.45: BEXAR COUNTY DOCKET SUMMARY as of 10.27.14

Defendants    10.2.14 Continuance: 10.1.14 *Declaration Of GINA FEEZER*

Defendants    10.24.14 MSJ: 10.21.14 *Affidavit Of GINA FEEZER & Exhibits*

**NEW EVIDENCE and/or WELLS FARGO DISCOVERY DOCUMENTS IN 2015 (TO BE USED AT TRIAL):**

Defendants    1.10.15 MSJ: *Affidavit of Katherine Ortwerth & Exhibits*

[10.30.06 ]    PSA Prospectus] produced by Defendants in Discovery on 1.26.15

[10.01.06 PSA] Filed on 2.10.15 by Defendants in connection with Plaintiff's MSJ

Deposition on Written Questions of John O'Brien

February 2015 Deposition/Errata  N ALANIS

PUBLIC NEWS REPORTS ON OCWEN/WELLS FARGO

### VII.    STATEMENT OF FACTUAL ALLEGATIONS
### OF DEFENDANTS FRAUDULENT ACTS
### SUPPORTING MULTIPLE CLAIMS FOLLOWING
### SEPTEMBER 3, 2015 DEFENDANTS SPECIAL EXCEPTIONS HEARING
(ie: Fraud, PSA/Note/Deed  Breach, Limitations, Attorney Immunity, 12.0002, FDCPA/TDCA,
Intentional Infliction of Emotional Distress, Unreasonable Debt Collection, Texas Penal Code)

*(a)  Defendants Knowing Fraudulent Concealment*
*of Non-Compliance with Texas Property Code For Over Four Years*

7.1          On September 3, 2015, the Hon. Judge Gloria Saldana heard the Defendants *Special Exceptions* and summarily dismissed the PSA, Transfer of Lien, 12.002, Limitations & Attorney Immunity claims of ALANIS without providing ALANIS an opportunity to amend her pleading.  The Hon. Judge Saldana refused to hear ALANIS' *Plea to the Jurisdiction* and ALANIS timely filed *Motion for Reconsideration* of Judge Noll's Order granting the Defendants motion to quash and for protective order of the ALANIS July 2015  Discovery timely filed and set for hearing on the same date, and ordered that all discovery matters henceforth, be heard by Hon. Judge Noll.

7.2          ALANIS alleges and will prove that on October 2, 2015, approximately one month following the *Special Exceptions* hearing, the Defendants served a production response on ALANIS which had the net effect of nullifying the Defendants *Special Exceptions* and the WELLS FARGO, *As Trustee* counterclaim seeking to foreclose on the ALANIS Deed Of Trust loan.  Specifically, through their October 2, 2015 discovery response, the Defendants admitted to having no evidence of "service" of a December 8, 2010 notice of default to ALANIS (<u>no record of a USPS certified signed green card</u> <u>and/or no record of a USPS certified returned envelope</u>) to prove the loan servicer in fact, deposited a December 8, 2010 notice of default in the US mail, certified mail, return receipt requested addressed to ALANIS at her last known mailing address as required by the Texas Property Code 51.002(d)(e) to support the WELLS FARGO, *As Trustee* counterclaim seeking to foreclose on the ALANIS Deed Of Trust loan in 2011.  Without the required loan servicer evidence of "service" of a certified "notice of default" mailed to ALANIS and which ALANIS maintained in her February 12, 2015 deposition she never had notice of, the Defendants have all but admitted to knowingly and intentionally concealing for approximately five years from ALANIS, there was never a statutory compliant acceleration of the ALANIS Note in 2011.

7.3        As an aside, the HOMEQ April/May 2010 attempted foreclosure on the ALANIS Deed Of Trust loan in behalf of WELLS FARGO, *As Trustee*, was withdrawn without any recorded rescission by HOMEQ in May 2010 and without explanation to ALANIS.  HOMEQ began returning all of the ALANIS loan payments after April 2010.  The 2010 *Substitute Trustees Deed* in behalf of WELLS FARGO, *As Trustee* was the creation by the Defendants of a fabricated /forged instrument purporting to create a lien on the ALANIS Property in violation of 12.002 because it was created during the period WELLS FARGO, *As Trustee* had no legal or equitable interest in the ALANIS Note and Deed Of Trust.

7.4        The Texas Property Code sets forth foreclosure notice requirements. Section 51.002(d) of the Property Code requires that a mortgage servicer "**shall serve a debtor in default under a deed of trust . . . with written notice by certified mail stating that the debtor is in default under the deed of trust . . . and giv[e] the debtor at least 20 days to cure the default**" before giving notice of a foreclosure sale. *See* TEX. PROP. CODE ANN. § 51.002(d) (West 2014). Section 51.002(e) provides:

> **Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.** The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.
>
> *Id.* § 51.002(e) (West 2014).

*Ogden v. Gibraltar Sav. Ass'n.* 640 S.W.2d 232, 233–34 (Tex. 1982) (explaining that a notice of intent to accelerate provides the debtor "an opportunity to cure his default prior to [the] harsh consequences of acceleration and foreclosure" and that a notice of acceleration "cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable."). Texas courts have held that where a bank did not strictly comply with the notice requirements of Tex. Prop. Code § 51.002, as is alleged to be the case here. the resulting foreclosure sale may be void. *Lido Intern., Inc. v. Lambeth,* 611 S.W.2d 622, 624 (Tex. 1981); *Shearer v. Allied Live Oak Bank,* 758 S.W.2d 940. 942 (Tex. App.–Corpus Christi 1988); *Mitchell v. Texas Commerce Bank - Irving,* 680 S.W.2d 681, 682 (Tex. App. –Fort Worth 1984).

7.5        Additionally, Texas Property Code Section 51.0025(2) provides that a mortgage servicer may administer a foreclosure sale if "**the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee[,] . . . the name of the mortgagee[,] and . . . the address of the mortgagee . . . or . . . the address of the**

mortgage servicer." Tex. Prop. Code Ann. § 51.0025(2).   Courts have held that appellees were entitled to summary judgment on claims that the notice of foreclosure sale did not comply with section 51.002. *See Frost Nat'l Bank*, 315 S.W.3d at 508; *Stanley v. CitiFinancial Mtg. Co.*, 121 S.W.3d 811, 817-18. (Tex. App.—Beaumont 2003. pet. denied). ALANIS submits that pursuant to a February 9, 2011 *Transfer of Lien*, WELLS FARGO, *As Trustee* was not the record owner of the ALANIS Note and Deed in 2010 and January 2011 and the loan servicers HOMEQ and OCWEN knowingly never notified ALANIS of the true and correct "mortgagee" in any notice of default or notice of acceleration between 2010 and January 2011.

7.6          The Defendants knowingly and intentionally, *fraudulently concealed* their non-compliance with the Texas Property Code. 51.002(d) (*certified notice of default*)  and Tex. Prop. Code Ann. § 51.0025(2) (*notice of true mortgagee*) from ALANIS and the Courts for close to five years and falsely alleged they complied with statutory foreclosure requirements when accelerating the ALANIS Note in 2011 when they knew they had not. To establish fraudulent concealment a party must show that the alleged wrongdoer had both actual knowledge that a wrong had occurred and a fixed purpose to conceal the wrong from the injured party. *Dotson v. Alamo Funeral Home*, 577 S.W.2d 308 (Tex.Civ.App.—San Antonio 1979). The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Malone v. Sewell*. 168 S.W.3d 243, 251 (Tex.App.-Fort Worth 2005. pet. denied). **Appellees had the burden to plead and secure a finding of fraudulent concealment.** *Advent Trust Co. v. Hyder*, 12 S.W.3d 534, 541 (Tex.App.-San Antonio 1999, pet. denied). **Fraudulent concealment estops a defendant from asserting that a plaintiff's claim is barred by the statute of limitations.** *Malone v. Sewell*. 168 S.W.3d 243, 251 (Tex.App.-Fort Worth 2005, pet. denied).

7.7          As proof of the Defendants knowing false representations of compliance with the Texas Property Code, 51.002(d) (*certified notice of default*) and Tex. Prop. Code Ann. § 51.0025(2) (*notice of true mortgagee*) and to aid WELLS FARGO, *As Trustee* foreclosure to the ALANIS Property in 2010 and 2011, the Defendants used deception to conceal their false representations and ALANIS at all times. reasonably relied on the false representations of the Defendants. Specifically, when ALANIS received

DOCUMENT SCANNED AS FILED

the January 13, 2011 notice of acceleration and notice of foreclosure sale from WELLS FARGO, *As Trustee* debt collector law firm of MACKIE WOLF ZIENTZ & MANN, she reasonably relied on the Defendants threatened foreclosure representations and promptly incurred substantial attorney fees to commence a litigation to protect her property rights and stop the unlawful foreclosure action of WELLS FARGO, *As Trustee*.

7.8         To support their deceptive and unlawful foreclosure acts, during a November 2014 summary judgment proceeding, the Defendants made affirmative deceptive statements of compliance with the Texas Property Code, 51.002(d) (*certified notice of default*) and Tex. Prop. Code Ann. § 51.0025(2) (*notice of true mortgagee*) *under jurat* through OCWEN Custodian of Records Gina Feezer.   In her 10.21.14 Affidavit, *Affiant* Gina Feezer among other things, falsely swore that OCWEN mailed ALANIS a "certified" notice of default on December 8, 2010 when the Defendants knew those statements were patently false and not supported with any competent evidence.   Gina Feezer also advised that WELLS FARGO, *As Trustee* was the mortgagee.

7.9         As a result, the Defendants have all but admitted there was never an acceleration of the ALANIS Note in 2011 as required by the Texas Property Code, 51.002(d) (*certified notice of default*) and Tex. Prop. Code Ann. § 51.0025(2) (*notice of true mortgagee*) and for close to five years, the Defendants engaged in knowing and deliberate acts of *fraudulent concealment* which does not shield attorneys and debt collectors from immunity. Through their fraudulent concealment acts, the Defendants have obtained "void" court orders and all but admitted to violating the FDCPA and TDCA by making false and misleading statements in judicial proceedings and threatening to take an action prohibited by law.  The Defendants previously fraudulently concealed their August 27, 2008 *Limited Power of Attorney* with an attached exhibit affecting the "Trust" and executed with Barclays Capital Real Estate, Inc, dba HOMEQ.

DOCUMENT SCANNED AS FILED

*(b)  The NEW CENTURY Liquidation Bankruptcy*
*and the Defendants False and Fabricated "Transfer of Lien"*
*Hon. Judge Saldana Ordered To Be Treated As A "Valid" Instrument*

7.10        The Defendants also allege there was a *Transfer of Lien* purportedly executed on February

2011 between ALANIS' original lender NEW CENTURY MORTGAGE CORPORATION ("NEW

CENTURY") and WELLS FARGO. *As Trustee* and recorded in public records, which ALANIS

maintains is a fraudulent instrument.

7.11        Following the September 3, 2015 Defendants *Special Exceptions* hearing, Hon Judge Saldana

entered an order requiring ALANIS to treat the Defendants February 2, 2011 *Transfer of Lien* as a "valid"

instrument, which ALANIS timely objected and maintains is fabricated and fraudulent and is not a valid

lawful assignment.   ALANIS submits the February 2, 2011 *Transfer of Lien* is the creation by the

Defendants of a fabricated /forged instrument and purports to create a fraudulent lien on the ALANIS

Property.

7.12        The Discovery period closed on October 9, 2015.  One month following the September 3,

2015 Defendants *Special Exceptions* hearing, WELLS FARGO, *As Trustee* produced no evidence during

discovery they paid any "consideration" to NEW CENTURY in connection with the February 2, 2011

*Transfer of Lien*.   However, through the recorded February 2, 2011 *Transfer of Lien,* WELLS FARGO,

*As Trustee* has all but admitted NEW CENTURY was the owner of record of the ALANIS Note and Deed

Of Trust through February 2, 2011, the date they allegedly executed the *Transfer Of Lien* with NEW

CENTURY for consideration.

7.13        As evidenced by the WELLS FARGO, *As Trustee* February 2, 2011 recorded *Transfer of Lien*,

the Defendants knew WELLS FARGO, *As Trustee* did not have an interest recorded with Bexar County

Real Property Records on February 2, 2011 and therefore, WELLS FARGO, *As Trustee* was not

authorized under the deed of trust to seek foreclosure because it had not succeeded as "assignee" when it

invoked the power of sale or directed its newly-appointed substitute trustees to issue notice of foreclosure

to ALANIS.   If WELLS FARGO, *As Trustee* was not then an assignee of the original lender and was

"without capacity." to pursue a foreclosure action against the ALANIS Deed Of Trust lien,  it follows that

Case Number: 2011CI02839                    Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AN[...]

1840

DOCUMENT SCANNED AS FILED

WELLS FARGO, *As Trustee* could not be considered a party to the contract (i.e., the deed of trust) and did not have the legal right or authority to mail ALANIS a "certified" December 8, 2010 notice of default or a January 13, 2011 notice of acceleration in behalf of WELLS FARGO, *As Trustee* particularly where they acknowledge NEW CENTURY continued to appear as the record owner of the ALANIS Note and Deed Of Trust through February 2, 2011, the *Transfer of Lien* execution date.  WELLS FARGO, *As Trustee*, was at all times asserting a fraudulent competing claim to title between January 2010 through January 13, 2011, the periods they were pursuing a foreclosure action against the ALANIS property.  Under the Texas Property Code, the only party with standing to initiate a non-judicial foreclosure sale is the mortgagee,FN4 or the mortgage servicer acting on behalf *829 of the current mortgagee.FN5 Determining mortgagee status is easy when the party is named as grantee or beneficiary in the original deed of trust, mortgage, or contract lien. But factual disputes may arise when the party seeking to foreclose is not the original mortgagee, as is most often the case these days. **In such cases the foreclosing party must be able to trace its rights under the security instrument back to the original mortgagee.** *Leavings v. Mills,* 175 S.W.3d 301. 310 (Tex.App.-Houston [1st Dist.] 2004, no pet.).  **A party is "required to prove the note and an unbroken chain of assignments transferring to him the right to enforce the note according to its terms."** *Leavings,* 175 S.W.3d at 310.   **An unexplained gap in the chain of title may present a fact issue on the question of ownership.** *Martin,* 377 S.W.3d at 84–85; *First Gibraltar Bank, FSB v. Farley,* 895 S.W.2d 425, 428–29 (Tex.App.San Antonio 1995, writ denied); *Jernigan v. Bank One, Tex., N.A.,* 803 S.W.2d 774, 777 (Tex.App.-Houston [14th Dist.] 1991, no writ). **A person not identified in a note who is seeking to enforce it as the owner must prove the transfer by which he acquired the note.** *Leavings,* 175 S.W.3d at 309.   **In order to enforce the note as a holder, a party who is not the original lender must prove "successive transfers of possession and indorsement" establishing an "unbroken chain of title."** *Leavings,* 175 S.W.3d at 310

7.14        Therefore, the foreclosure actions taken against the ALANIS Deed Of Trust loan by loan servicers HOMEQ in April/May 2010 and OCWEN in December 2010 (alleged *notice of default*) and January 13, 2011 (*Acceleration*) in behalf of WELLS FARGO, *As Trustee* were fraudulent in all respects because WELLS FARGO, *As Trustee* lacked a legal or equitable interest in the ALANIS note and deed of

trust allegedly, on or before the *Transfer of Lien* date of February 2, 2011. Hence, the May 2010 *Notice Of Substitute Trustees Sale* was invalid and unenforceable as to WELLS FARGO, *As Trustee* who was asserting a fraudulent competing claim to title in April 2010 through January 13, 2011 and violated TCPRC 12.002.

7.15        In support of the same, ALANIS obtained "certified" court records from the District of Delaware United States Bankruptcy Court District of Delaware in September 2015 (after the *Special Exceptions* hearing) providing conclusive evidence NEW CENTURY was dissolved in a Delaware liquidation bankruptcy proceeding in "2008" and was without authority or existence to execute a *Transfer of Lien* in 2011 with any party. Pursuant to the Bankruptcy Court order confirming New Century Financial's reorganization plan, all of the assets of New Century Mortgage were conveyed to a separate entity, the New Century Liquidating Trust, effective July 15, 2008. Confirmation Order ¶ 22, at 24. The plan also precluded New Century Mortgage and the other petitioners from having any interest in the assets or the trust following the transfer. Plan 51; Confirmation Order ¶ 22, at 24. In a second and final amended plan also confirmed by the Bankruptcy Court in 2009, the debtors, including New Century Mortgage, confirmed that their assets were conveyed to the trust as provided for in the original plan on the effective date, July 15, 2008. Order Confirming Modified Second Am. Joint Ch. 11 Plan Liquidation Dated September 30, 2009. *In re New Century TRS Holdings, Inc.*, No. 07-10416, at *24 (Bankr. D. Del. Nov. 20, 2009). ECF No. 9957. Pursuant to the plan, all assets of the debtors vested in the Liquidating Trust effective July 15, 2008. Id. ¶ 22, at 24. The plan also excluded the debtors from any further interest in the assets or the trust subsequent to the liquidation. Id.; Notice Removal, Ex. 5. Notice Filing Second Am. Joint Ch. 11 Plan Liquidation Debtors & Official Comm. Unsecured Creditors Dated Apr. 23, 2008 ("Plan") 51. ECF No. 1-11. Prior to July 15, 2008, New Century Mortgage was the record holder of the Mortgage. Compl. ¶¶ 11-12. *Ross v Deutsche Bank National Trust Company*, Civil Action No. 12-10586-WGY, United States District Court, D. Massachusetts (March 27, 2013).

7.16        Hence, ALANIS can show the Defendants at all times knew the recorded May 2010 *Substitute Trustees Sale* and the 2.2.11 *Transfer of Lien*, executed in behalf of WELLS FARGO, *As Trustee* asserted

an interest that interferes with the ALANIS title and is of no force and effect and states a claim under TCPRC 12.002 because the Defendants knowingly  (1) made, presented, or used a document with knowledge that it was a fraudulent lien or claim against real or personal property or an interest in real or personal property when WELLS FARGO, *As Trustee* never held a legal or equitable interest in the ALANIS Note allegedly,  until February 2, 2011, the date of the *Transfer of Lien* was purportedly executed between ALANIS' original lender NEW CENTURY and WELLS FARGO, *As Trustee* (2) the Defendants intended that the document(s) be given legal effect since both were recorded in public records, and (3) they intended to cause the plaintiff physical injury, financial injury, or mental anguish when they knowingly and fraudulently concealed from ALANIS the true "mortgagee" (NEW CENTURY or NEW CENTURY LIQUIDATING TRUST) and collected payments in behalf of WELLS FARGO, *As Trustee* (not the mortgagee) when the ALANIS loan payments should have been collected for NEW CENTURY or the NEW CENTURY liquidating trust (the true mortgagee).   Some Courts do not require *creation* of a lien. *See, e.g., Bernard v. Bank of Am., Nat'l Ass'n*, No. 04-12-00088-CV, 2013 WL 441749, at *4 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.); *Venegas v. U.S. Bank Nat'l Ass'n*, No. SA-12-CV-1123, 2013 WL 1948118, at *7 (W.D. Tex. May 9, 2013); *Kingman Holdings, LLC v. CitiMortgage, Inc.*, No. 4:10-CV-619, 2011 WL 1883829, *5–6 (E.D. Tex. Apr. 21, 2011).

7.17        While the NEW CENTURY assets were placed in a liquidation trust after "2008", ALANIS maintains that another potential party similar to WELLS FARGO, *As Trustee* could attempt to assert an interest in the ALANIS Property and cause her to be subject to multiple obligations on the same Note and Deed Of Trust.

7.18        After HOMEQ accelerated the ALANIS Note in April 2010 and withdrew the foreclosure action in May 2010, ALANIS submits that there has been no other acceleration of her Note pursuant to the statutory requirements of the Texas Property Code.  Since NEW CENTURY and/or the NEW CENTURY liquidating trust failed to foreclose on the ALANIS Deed Of Trust loan after the HOMEQ 2010 acceleration, the statute of limitations prevents the Defendants from foreclosing on the ALANIS Deed of Trust loan pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 16.035.  LIEN ON REAL PROPERTY.

**(c) Defendants Produce The Pooling & Servicing Agreement
In A 2015 Summary Judgment Proceeding
to Support their Interest in the ALANIS Mortgage Loan**

7.19        The Defendants produced during discovery and filed in a February 2015 summary judgment

proceeding the WELLS FARGO, *As Trustee* Pooling and Servicing Agreement *[Securitized-Asset*

*Backed Receivables LLC Trust Mortgage Pass-Through Certificates, Series 2006-NC under Pooling and*

*Servicing Agreement Dated as of October 1, 2006* and *10.30.06 Prospectus Supplement)*

*("PSA"/"ProSUPP")* to support their alleged lawful interest in the ALANIS mortgage loan and a court

entered an order relying on the same. ALANIS timely designated and served her August 14, 2015 Expert

Report of Dan I Castro, Jr on the Defendants and will show that Defendants WELLS FARGO, *As Trustee*

and OCWEN as loan servicer breached the pooling and servicing agreement in connection with her

mortgage loan and also the loan servicing agreements in connection with federal and state debt collection

laws and RESPA. "A party to a contract who is himself in default cannot maintain a suit for its breach."

*Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex. 1990) (quoting *Gulf Pipe Line Co. v. Nearen,* 138 S.W.2d

1065, 1068 (Tex. Comm'n App. 1940). Among other loan servicing breaches of the PSA, ALANIS was

required to pay "duplicate" taxes and insurance by the loan servicers.

7.20        ALANIS submits that in connection with the 2010 and 2011 foreclosure actions commenced

in behalf of WELLS FARGO, *As Trustee,* the Defendants perpetrated a knowing and deliberate fraud on

ALANIS  because among other things, her loan was not securitized into the WELLS FARGO, *As Trustee*

Trust pursuant to the language of the PSA which specifically provides the trust securitized "thirty year"

loans. The ALANIS loan was a "forty year" loan. The Defendants have perpetrated a continuing fraud

on ALANIS and the Courts in connection with their knowing false statements alleging an interest in the

ALANIS mortgage loan when they know the ALANIS loan is not securitized in the WELLS FARGO, *As*

*Trustee* Trust.    **A cause of action for fraud may be based on a defendant's failure to disclose**

**information if there is a duty on the defendant to do so.** *See Bradford v. Vento,* 48 S.W.3d 749, 755

(Tex.2001); *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 181 (Tex.1997).    **A duty to**

**disclose may arise when:** (1) the parties have a confidential or fiduciary relationship; (2) one party

voluntarily makes a representation, which gives rise to the duty to disclose the whole truth; (3) one

party makes a representation, which gives rise to the duty to disclose new information the party is aware of that makes the earlier representation misleading or untrue; or (4) one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 670-71 (Tex.App.Houston-[14th-Dist. 2006, pet. denied). The Defendants filed the PSA in a 2015 summary judgment judicial proceeding and used it to support their legal and equitable interest in the ALANIS mortgage loan. ALANIS produced the expert report of Daniel I. Castro, Jr who reviewed the Defendants filed PSA documents and determined the ALANIS mortgage loan is not securitized in the WELLS FARGO, *As Trustee* Trust and WELLS FARGO, *As Trustee* has no legal or equitable interest in the ALANIS mortgage loan and is without authority to foreclose on the ALANIS Property.  Those findings are consistent with the 2010 and 2011 WELLS FARGO, As Trustee attempted foreclosures to the ALANIS Property. After partial disclosure of the PSA during discovery and in summary judgment proceedings, the Defendants have a heightened duty not to fraudulently conceal that information from the Court and a jury.  Alternatively, if the ALANIS mortgage loan is securitized into the WELLS FARGO, *As Trustee* trust, ALANIS is an intended third party beneficiary to the pooling and servicing agreement because the PSA/ProSUPP requires the contracting parties compliance with all laws in connection with "loan servicing" and ALANIS has standing to show evidence of the PSA contracting parties breach of the PSA and IS NOT attempting to enforce any provision of the PSA.  Among other things, ALANIS can and will show a breach of PSA agreements in connection with loan servicing requirements (ALANIS was required to pay duplicate 2006 taxes and loan servicer imposed force placed insurance, which duplicated ALANIS insurance coverage) and a defective chain of title and forgery. (See *Laguette v US BANK* et al. (No 14-50421 (5th Cir 2015). (See *Reinagel v Deutsche Bank National Trust* Company, (No 12-50569) (5th Cir 2013) *N8 *Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*. 523 S.W.2d 426, 430 (Tex. Ct. App. 1975) (citing *Glass v. Carpenter*. 330 S.W.2d 530, 537 (Tex. Ct. App. 1959)); *see also. e.g.* 6A C.J.S. ASSIGNMENTS § 132 (2013) ("A debtor may, generally, assert against an assignee . . . any matters rendering the assignment absolutely invalid . . . , such as[] the nonassignability of the right attempted to be assigned, or a prior revocation of the assignment."); *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1028, 1033 (8th Cir. 2012)

(recognizing that mortgagors can defend against foreclosure by establishing a fatal defect in the purported mortgagee's chain of title). *Bennet v. Bank United*, 114 S.W3d 75 (Tex. App. — Austin, 2003) (mortgagor who was charged for private mortgage insurance was a "consumer" under the Texas DTPA). Texas courts routinely allow a homeowner to challenge the chain of assignments by which a party claims the right to foreclose. *Martin v. New Century Mortgage Co.*, 377 S.W.3d 79 (Tex.App.-Houston [1st Dist.] 2012); *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68 (Tex.App.Houston [1st Dist.] 2008); *Leavings v. Mills*, 175 S.W.3d 301 (Tex.App.Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W. 3d 263 (Tex.App.-Eastland 2003); *Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex.App.-Austin 1996). Federal district courts in this state have also entertained chain of title claims by mortgage debtors challenging foreclosure proceedings. *Millet v. JP Morgan Chase, N.A.*, 2012 WL 1029497. *4 (W.D.Tex. Mar. 26. 2012); *Norwood v. Chase Home Finance LLC*, 2011 WL 197874 (W.D.Tex. Jan. 19, 2011).

7.21        ALANIS alleges the Defendants have engaged in the most egregious acts of fraud and fabricated and/or forged mortgage instruments to support unlawful attempted foreclosures to the ALANIS Property in violation of the Texas Penal Code ("TPC") Sec. 32.21 FORGERY. Sec. 32.47. Fraudulent Destruction, Removal. or Concealment of Writing, Sec. 32.49. REFUSAL TO EXECUTE RELEASE OF FRAUDULENT LIEN OR CLAIM, Texas Penal Code Sec. 37.02. PERJURY. Texas Penal Code Sec. 37.03. AGGRAVATED PERJURY, Texas Penal Code Sec. 37.04. MATERIALITY, Texas Penal Code Sec. 37.05. RETRACTION.

### (d) WELLS FARGO, As Trustee Produces Multiple Versions of the ALANIS Note During Litigation To Support An Unlawful Foreclosure & Judicial Estoppel

7.22        *Bennet v. Bank United*, 114 S.W3d 75 (Tex. App. – Austin, 2003) (mortgagor who was charged for private mortgage insurance was a "consumer" under the Texas DTPA). **ALANIS Adjustable Rate Balloon Note (*With NO Indorsement In Blank / With BAR CODE*):** As further proof WELLS FARGO produced. filed and/or recorded counterfeit "forged" and fabricated mortgage instruments to support their unlawful foreclosure to ALANIS' Deed Of Trust loan, WELLS FARGO, *As Trustee* and OCWEN produced the June 15, 2006 ALANIS **Adjustable Rate Balloon Note (*With NO Indorsement In Blank / With BAR CODE*)** during 2012 Discovery (requesting electronic records)

DOCUMENT SCANNED AS FILED

and/or filed the same in multiple judicial proceedings in *Cause No 2011-CI-02839* ("**ALANIS Note/Version-1**", *herein*) as follows:

(a)  **April 2012 WELLS FARGO and OCWEN Discovery Document:**
[ALANIS Note/Version-1 *with NO Indorsement In Blank/BAR CODE* on "Page 4 of 4"]
[Wells Fargo Bates Stamped 00409-00412]

(b)  **February 21, 2012 Injunction Judicial Proceeding**
[ALANIS Note/Version-1 *with NO Indorsement In Blank/BAR CODE* on "Page 4 of 4"]
Filed by ALANIS and not disputed by WELLS FARGO

(c)  **November 24, 2014 Summary Judgment Proceeding**
[ALANIS Note/Version-1 *with NO Indorsement In Blank/BAR CODE* on "Page 4 of 4"]
WELLS FARGO et al filed the 10.24.14 MSJ Affidavit: 10.21.14 *Affidavit Of GINA FEEZER & Exhibits*. *Affiant Feezer* identified herself as a Custodian Of Records for OCWEN and among other things swore under jurat, the records, including the ALANIS Note/Version-1 "...*attached hereto are the originals or exact duplicate of the originals*..."

(d)  **February 17, 2015 Summary Judgment Proceeding**
[ALANIS Note/Version-1 *with NO Indorsement In Blank/BAR CODE* on "Page 4 of 4"]
WELLS FARGO et al filed the 1.10.15 MSJ Affidavit: *Affidavit of Katherine Ortwerth & Exhibits*. *Affiant Ortwerth* identified herself as a Custodian Of Records for OCWEN and among other things swore under jurat, the records, including the ALANIS Note/Version-1 "...*attached hereto are the originals or exact duplicate of the originals*..."

7.23      ***ALANIS Note With a Forged "INDORSEMENT IN BLANK"/NO BAR CODE on Page 4 of 4:*** After ALANIS challenged the standing of WELLS FARGO to foreclose on her property during a February 2015 summary judgment proceeding, on March 26, 2015 WELLS FARGO provided supplemental Discovery and produced a new **ALANIS Adjustable Rate Balloon Note with NO BAR CODE** and identified as [Wells Fargo Bates Stamped 001126-001129] containing an undated "Indorsement in Blank" on "Page 4 of 4" signed by STEVE NAGY, V.P. Records Management, **NEW CENTURY MORTGAGE CORPORATION** and in pertinent part, the "Indorsement in Blank" reads "...*Pay to the order of without recourse*..." ("**ALANIS Note/Version-2**", *herein*).   The essential function of Judicial Estoppel "is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage." *Pleasant Glade Assembly of God*, 264 S.W.3d at 6; *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 650 (Tex. App.—El Paso 1997, writ denied); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (noting basis for estoppel is the assertion of a position clearly inconsistent with a previous position accepted by the court);

7.24        ALANIS alleges and will prove the "Indorsement in Blank" appearing on the ALANIS

Note/Version-2 signed by NEW CENTURY VP "Steve Nagy" is a known forgery and stands in stark

conflict to the sworn affidavits of OCWEN's two separate Custodian of Records *(Affiant Feezel* and

*Affiant Ortwerth)* who attached to their Affidavits as "Ex-A-1" the ALANIS Note/Version-1 Bar-Coded

and with NO Indorsement thereon and swore *under jurat*, the ALANIS Note/Version-1 was "... *the*

*originals or exact duplicate of the originals...".*

7.25        More importantly, if the February 2, 2011 *Transfer of Lien* is the date WELLS FARGO, *As*

*Trustee* alleges they tendered consideration to NEW CENTURY for the ALANIS Note and Deed Of

Trust, there could be no "Indorsement In Blank by NEW CENTURY/ VP Steve Nagy", because NEW

CENTURY was liquidated in August "2008" and no longer existed and/or had any VP's to sign an

indorsement in blank in their behalf.    A deed that is forged is void. *Lighthouse Church of Cloverleaf v.*

*Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.–Houston 1994). "Forgery" is the making without authority of

a false instrument in writing, purporting to be the act of another. ALANIS submits the 2.2.11 *Transfer Of*

*Lien* and ALANIS Note/Version-2 are WELLS FARGO and OCWEN forgeries for the reasons stated

herein and a fraudulent and/or forged instrument renders these mortgage instruments void as a matter of

law and WELLS FARGO, *As Trustee* lacks standing to foreclose on the ALANIS property.

7.26        Courts have also reviewed and weighed in on the deposition testimony of former WELLS

FARGO employee John Kennerty and Courts found John Kennerty testified about the WELLS FARGO

"...*manufactured mortgage assignments. He also testified that his "assignment team's" duties were not*

*limited to processing assignments, including, when determined necessary, creating them; in addition,*

*the "assignment team" included people tasked with endorsing notes...*"    UNITED STATES

BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK, *In re:* Cynthia Carrsow-Franklin, Debtor,

Case No. 10-20010 (RDD).

http://www.nysb.uscourts.gov/sites/default/files/opinions/198939_109_opinion.pdf

DOCUMENT SCANNED AS FILED

*(e) Defendants Non Compliance with*
**TEXAS FINANCE CODE**
**TEXAS PROPERTY CODE 51.002(d)(e) & RESPA**

7.27    ***OCWEN SEC Filing of Loan Servicing Regulations***:  In behalf of WELLS-FARGO—*As*

*Trustee* (the incorrect mortgagee), OCWEN mailed ALANIS an "unpaid debt" notice on September 13,

2010.  Among other things, OCWEN identified itself as a debt collector and provided Alanis "thirty

days" to dispute the debt.  In pertinent part, the OCWEN notice read *"...If, within thirty days after*

*receipt of this notice, you dispute the validity of this debt, or any proton thereof, is disputed, we will:*

*(1)  Obtain verification of the debt..."* .    OCWEN published their knowledge of loan servicing

regulations on pg F53-F54 in their public recorded  SEC filing 2011 FORM 10-K ANNUAL

REPORT as follows:

(http://www.sec.gov/Archives/edgar/data/873860/000101905612000280/ocn_10k.htm#A005)

7.28    **TEXAS FINANCE CODE**:  In pertinent part, the **TEXAS FINANCE CODE** provides as

follows:

Sec. 392.202.  CORRECTION OF THIRD-PARTY DEBT COLLECTOR'S OR CREDIT BUREAU'S
FILES.
(a)  An individual who disputes the accuracy of an item that is in a third-party debt collector's or
     credit bureau's file on the individual and that relates to a debt being collected by the third-
     party debt collector may notify in writing the third-party debt collector of the inaccuracy. The
     third-party debt collector shall make a written record of the dispute.  If the third-party debt
     collector does not report information related to the dispute to a credit bureau, the third-party debt
     collector shall cease collection efforts until an investigation of the dispute described by
     Subsections (b)-(e) determines the accurate amount of the debt, if any.  If the third-party debt
     collector reports information related to the dispute to a credit bureau, the reporting third-party
     debt collector shall initiate an investigation of the dispute described by Subsections (b)-(e) and
     shall cease collection efforts until the investigation determines the accurate amount of the debt,
     if any.  This section does not affect the application of Chapter 20, Business & Commerce Code, to a
     third-party debt collector subject to that chapter.
(b)  Not later than the 30th day after the date a notice of inaccuracy is received, a third-party debt
     collector who initiates an investigation shall send a written statement to the individual:
                    (1) denying the inaccuracy;
                    (2) admitting the inaccuracy; or
(3)  stating that the third-party debt collector has not had sufficient time to complete an investigation of
     the inaccuracy.

7.29    **RESPA:**  Similarly RESPA relies on existing Authority: 12 U.S.C. 2603--2605, 2607, 2609,

2617, 5512, 5532, 5581 and imposes a deadline for a loan servicer to respond to any written notice from

the borrower that asserts an error.  TITLE 12 – Banks and Banking, Chapter X – Bureau of Consumer

Financial Protection, Part 1024 – Real Estate Settlement Procedures Act (Regulation X) (All Subparts).

Pursuant to Part 1024 – Real Estate Settlement Procedures Act (Regulation X), Subpart C, Mortgage

Servicing:

**§1024.35  Error resolution procedures.**
(a) *Notice of error.* A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

**••••••••••••••••••**

(d) *Acknowledgment of receipt.* **Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.  (emphasis added)**

7.30        ***TEXAS PROPERTY CODE VIOLATIONS:***  ALANIS also provided February 2015

deposition testimony that all required notices were not provided in accordance with statutory

requirements.  Specifically, ALANIS was not provided the required statutory notice of default and

opportunity to cure as provided by the Deed Of Trust on page 13 Deed Of Trust ¶22. *Acceleration:*

*Remedies.*  WELLS FARGO, *As Trustee* and by and through their loan servicer agent OCWEN and/or

their legal agent and debt collector law firm of MACKIE WOLF ZIENTZ & MANN failed to provide

ALANIS a certified by mail "*Default/Intent To Accelerate*" "notice to cure" letter.  As a result, the

Defendants January 13, 2011 *Acceleration/Foreclosure* notices were fatally defective and there was

never acceleration of the ALANIS Note.

    **Section 51.002(d) of the TEXAS PROPERTY CODE provides:**

    Notwithstanding any agreement to the contrary, the holder of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period. Tex. Prop.Code Ann. §51.002(d).

Texas courts have held that where a bank did not strictly comply with the notice requirements of Tex. Prop. Code § 51.002, as is alleged to be the case here, the resulting foreclosure sale may be void. *Lido Intern., Inc. v. Lambeth*, 611 S.W.2d 622, 624 (Tex. 1981); *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.–Corpus Christi 1988); *Mitchell v. Texas Commerce Bank Irving*, 680 S.W.2d 681, 682 (Tex. App. –Fort Worth 1984). Where Plaintiff stated a claim under TDCPA section 392.301(a)(8) based on violations of Tex. Prop. Code §§ 51.002(b), (d), Plaintiffs' trespass-to-try-title and quiet title actions should not be dismissed. **Failure to provide the required notice is nonetheless actionable.** *Franklin v. BAC Home Loans Servicing, L.P.*, 2011 WL 248445, at *3 (N.D. Tex. Jan. 26, 2011) ("It is illogical for the Court to conclude that Plaintiff cannot enforce BAC's obligations, assumed to be contractual, which arise after Plaintiff's default merely because Plaintiff is in default."); *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 140 (Tex. App.-Corpus Christi 2008, no pet.) (holding that the plaintiffs' breach of contract claim survived summary judgment when default letters failed to comply with the notice obligations in the deed of trust).

7.31    **OCWEN FALSE ALLEGED ALANIS DEBT:** In connection with the September 19, 2010 OCWEN alleged debt, ALANIS promptly disputed the OCWEN false alleged debt and mailed OCWEN a September 19, 2010 debt dispute letter [Alanis Ex-A.17] because she was fully compliant with her Note and Deed Of Trust.   When OCWEN failed to respond to ALANIS' debt dispute letter and/or telephone calls addressing the specific alleged debt delinquency, ALANIS incurred substantial legal costs and retained attorney Loren Peters to address this "debt dispute" legal matter on her behalf including paying the attorney to review her loan records, loan payments, tax and insurance payments. Without any cooperation form the loan servicer, Loren Peters drafted multiple "debt dispute" letters on ALANIS' behalf between October 2010- February 2011 inquiring about the true default and alleged debt and timely mailed them certified to WELLS FARGO, *As Trustee* loan servicing agent OCWEN/HOMEQ [Alanis Ex-A.17], [Alanis Ex-A.18], [Alanis Ex-A.19], [Alanis Ex-A.20] and their *(not bonded)* legal agent and debt collector law firm of MACKIE WOLF  ZIENTZ & MANN [Alanis

Ex-A.23| which complied with the deadlines proscribed by FDCPA, the Texas Finance Code Sec.

392.202 and RESPA.

**7.32      WELLS FARGO, OCWEN AND MACKIE WOLF ZIENTZ & MANN IGNORE ALANIS' TIMELY REMITTED "DEBT" DISPUTE LETTERS:**

WELLS FARGO, *As Trustee* by and through their loan servicer agent OCWEN, and their

legal agent and debt collector law firm of MACKIE WOLF ZIENTZ & MANN completely ignored and

*failed to respond* to all of ALANIS' timely remitted written "debt dispute" letters. OCWEN violated the

RESPA "five days" response requirement. WELLS FARGO, OCWEN and MACKIE WOLF ZIENTZ

& MANN violated the "thirty day" response period required by the Texas Finance Code *392.202(a)(b)*,

and the Texas Finance Code "thirty day" debt verification deadline/limitations ran on November 13,

2010 for OCWEN and WELLS FARGO and March 3, 2011 for MACKIE WOLF ZIENTZ & MANN.

WELLS FARGO, *As Trustee and* OCWEN breached the PSA agreements when failing to comply with

the PSA loan servicing agreements which included compliance with the TDCA, FDCPA and RESPA.

7.33     The Texas Finance Code provides under Sec. 392.402. **CRIMINAL PENALTY.**

   (a)  **A person commits an offense if the person violates this chapter.**
   (b)  An offense under this section is a misdemeanor punishable by a fine of not less than $100 or more than $500 for each violation.
   (c)  A misdemeanor charge under this section must be filed not later than the first anniversary of the date of the alleged violation.

The Texas Finance Code provides under Sec. 392.403. **CIVIL REMEDIES.**
   (a)  A person may sue for:
        (1) **injunctive relief** to prevent or restrain a violation of this chapter; and
        (2) **actual damages** sustained as a result of a violation of this chapter.
   (b)  A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.
   (c)  On a finding by a court that an action under this section was brought in bad faith or for purposes of harassment, the court shall award the defendant attorney's fees reasonably related to the work performed and costs.
   (d)  If the attorney general reasonably believes that a person is violating or is about to violate this chapter, the attorney general may bring an action in the name of this state against the person to restrain or enjoin the person from violating this chapter.
   (e)  A person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter.

Similarly under RESPA 12 USC Section 2605 Servicing of Mortgage Loans and Administration of Escrow Accounts:
12 U.S.C. §§ 2605[f][1], 2605[f][3]:
   (f)  Damages and costs
        Whoever fails to comply with any provision of this section shall be liable to the borrower

DOCUMENT SCANNED AS FILED

for each such failure in the following amounts:

(1) **Individuals**

In the case of any action by an individual, an amount equal to the sum of-- (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(3) **Costs**

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

### (d) TEXAS FINANCE CODE Sec. 392.101(a)

7.34    The Texas Finance Code provides under Sec. 392.101.

**BOND REQUIREMENT.**

(a)    A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section. A copy of the bond must be filed with the secretary of state.

(b)    The bond must be in favor of:

(1) any person who is damaged by a violation of this chapter; and

(2) this state for the benefit of any person who is damaged by a violation of this chapter.

(c)    The bond must be in the amount of $10,000.

7.35    MACKIE WOLF ZIENTZ & MANN is a debt collector law firm practicing in the area of consumer debt collection.

7.36    The Mackie Wolf Zientz & Mann website (http://www.mwzmlaw.com/) publicly states:

"...*Mackie Wolf Zientz & Mann, P.C. is pleased to announce that Mark Cronenwett has joined the firm as the Managing Attorney of MWZM's Litigation Department. Mark brings over 15 years of Business Litigation experience to MWZM and further enhances the firm's commitment to providing full service default legal services to the mortgage banking community...*".

7.37    On January 13, 2011 WELLS FARGO, by and through their *(not bonded)* legal agent and debt collector law firm of MACKIE WOLF ZIENTZ & MANN,  mailed ALANIS a *Notice Of Acceleration Of Loan Maturity* letter. In pertinent part, the letter stated: "...*We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed Of Trust....This firm is a debt collector attempting to collect the debt...*" [Alanis Ex-A.21].

7.38    At ¶6 of the January 13, 2011 *Notice Of Acceleration Of Loan Maturity*, the letter stated in pertinent part: "...*Federal law allows you to dispute the validity of the debt, or any portion thereof,*

*within thirty days (30) after receipt of this notice. If you do not, the debt will be assumed valid by the firm...."*

7.39       ALANIS' former attorney Loren Peters mailed a timely certified "debt dispute" letter to MACKIE WOLF ZIENTZ & MANN [Alanis Ex- A.23] on February 3, 2011 and among other things stated as follows:

> "...¶1...*I represent Alanis...*¶2...*Please be advised that Ms Alanis has disputed "notice to cure default" letters from loan servicers, and disputes the balance illustrated in your Notice Of Acceleration of $222,256.14. That number obviously includes late charges and other charges which have been called to the loan servicers attentions in prior communications. Copies of those prior communications are enclosed. No response to the prior communication has been made. The history of correspondence and objections are repeated below..."*

7.40       MACKIE WOLF ZIENTZ & MANN ignored and never responded to the February 23, 2011 Loren Peters letter thereby violating the FDCPA and/or the TDCA "thirty day" validation notice requirements. TEXAS FINANCE CODE, Sec. 392.202.

7.41       The Defendants filed a 10.24.14 response to ALANIS' motion for summary judgment and failed to show they were bonded by the state of Texas in 2011. On page 13 of their response, they affirmatively state. *"...MWZM is not required to post a bond...".*    An opponent's pleadings may constitute summary judgment proof if they contain judicial admissions, which are statements admitting facts or conclusions contrary to a claim or defense. *Lyons v. Lindsey Morden Claims Mgmt., Inc.,* 985 S.W.2d 86, 92 (Tex. App.—El Paso 1998, no pet.); *Judwin Props., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 504 (Tex. App.— Houston [1st Dist.] 1995, no writ).

7.42       *Notice Of Rescission Of Acceleration Of Loan Maturity – May 28, 2014:* On May 28, 2014, OCWEN, by and through their *(not bonded)* legal agent and debt collector law firm of MACKIE WOLF ZIENTZ & MANN mailed ALANIS a *Notice Of Rescission Of Acceleration Of Loan Maturity.* This *Notice of Rescission* was never "recorded" in public records and was filed more than four years after the 1st posted May 5, 2010 *Notice Of Substitute Trustees Sale* [Alanis Ex-A.45]. This Rescission was also a "nullity" because HOMEQ and OCWEN never properly accelerated the ALANIS Note and Deed Of Trust in behalf of the owner of record NEW CENTURY and/or the NEW CENTURY liquidating trust. The HOMEQ /OCWEN foreclosures were conducted in behalf of WELLS FARGO. *As Trustee,* who was

not the record mortgagee in 2010-2011 as evidenced by the February 2, 2011 *Transfer of Lien*. ALANIS

further submits that without complying with statutory "debt collector bonding" requirements, MACKIE

WOLF ZIENTZ & MANN is prohibited from engaging in any debt collection/foreclosure matters, and

their acceleration. foreclosure and rescission actions are void as a matter of law. *Id.*

### VIII.    STATEMENT OF FACTUAL ALLEGATIONS WITH ALANIS MORTGAGE LOAN

8.1            The paragraphs contained in section [I-VII] are incorporated herein by reference for all

purposes as if repeated in full herein;

8.2            **DEED OF TRUST:** On or about June 15. 2006 Nancy ALANIS ("ALANIS". herein) entered

into an *Adjustable Rate Balloon Note* loan transaction ("Loan". herein) with New Century Mortgage

Corporation ("NEW CENTURY". herein).  By virtue of an executed Note and recorded Deed, ALANIS

alleges a superior right. title. or ownership interest in the ALANIS Property. NEW CENTURY loaned

ALANIS $193,000 for the purchase of an improved residential property commonly known as 13210

Hunters View. San Antonio. Texas, Bexar County and legally described as Lot 2. Block 6, New City

Block 16984, Hunters Creek North, Unit-3 in the City Of San Antonio. Bexar County. Texas according to

the map or plat thereof recorded in Volume 8200, pages 215-216 of the Deed and Plat Records of Bexar

County, Texas ("ALANIS Property". herein).  The Deed Of Trust contained provisions as follows:

(a)      In pertinent part. the provisions of the Deed Of Trust ¶2. *Application of Payments and Proceeds* states as follows:  "...*Except as otherwise described in this Section 2. all payments accepted by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note...".*  There are no exceptions in Section 2 for application of N ALANIS regular monthly payments |Alanis Ex-A.1|.

(b)      In pertinent part, the Deed Of Trust on pg 5 of 16 @ ¶ 3 (cont) states as follows: "...*Borrower shall pay directly, when and where payable, the amounts due for the Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish Lender receipts evidencing such payment within such time period as Lender may require....Lender may revoke the waiver as to any or all Escrow Items at any time by notice given in accordance with Section 15....*"

(c)      In pertinent part, the provisions of the Deed Of Trust ¶5.  *Property Insurance* states as follows:  Borrower shall keep the improvements now existing or hereafter erected on the Property insured...**If Borrower fails to maintain any of the coverages** described above. Lender may obtain insurance coverage. at Lenders option and Borrowers expense..." |Alanis Ex-A.1|.

(d)    In pertinent part, the provisions of the Deed Of Trust ¶22. *Acceleration: Remedies* states as follows: "...Lender shall give *notice* to Borrower prior to acceleration following Borrowers breach of any covenant ...**The notice shall specify:** (a) *the default;* (b) *the action required to cure the default;* (c) *a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and* (d) *that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security instrument. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action...*" [Alanis Ex-A.1].

8.3    **N ALANIS NON ESCROW AGREEMENT & LOAN ERROR:** As part of her loan terms, ALANIS signed a "Non Escrow" agreement and monthly "Mortgage" payments were $1,631.71 and totaled $19,580.52 per year. Section 3 of the Deed Of trust deals with Escrow items (ie Taxes and Insurance premiums). The lender waived the requirement for ALANIS to escrow taxes and insurance premiums when the loan was closed, and at no time throughout the duration of the loan did the lender or loan servicer provide ALANIS a *Notice Of Revocation Of Escrow* as required by paragraph # 3 of the Deed Of Trust.   ALANIS also noticed at closing her loan was not a fixed rate loan as agreed with ALANIS' Mortgage Broker and the Mortgage Broker agreed to correct this issue with a fixed rate loan at a later date at no cost to ALANIS so ALANIS would not lose her current mortgage loan transaction.

8.4    **ORIGINAL LOAN SERVICER WAS LENDER NEW CENTURY:** NEW CENTURY was the loan servicer from June 2006 to October 2006 (but through part of 2007 when ALANIS did not receive notice of a new loan servicer from NEW CENTURY). At closing, ALANIS obtained written permission from NEW CENTURY to remit multiple payments to cover multiple months due to out of state travel to address her mothers healthcare.   After closing, when ALANIS began receiving reimbursement checks from the taxing authority and the title company for overpayment of taxes, she made pro-rated "2006 Seller Tax Payment" arrangements with NEW CENTURY and paid NEW CENTURY on or about August 2006 their requested 2006 tax payment sums to cover the Seller's portion of the 2006 taxes and the 2006 tax issue was resolved in full.   ALANIS was never in default with her loan with her original lender NEW CENTURY.

8.5    **NEW CENTURY TRANSFERS LOAN "SERVICING" RIGHTS TO HOMEQ:** On or about February 22, 2007, NEW CENTURY apprised ALANIS that only the "servicing" of the Loan had been transferred in September 2006 to HomEq Servicing Corporation ("HOMEQ", herein) and ALANIS

was instructed to remit her loan payments to HOMEQ.  Because ALANIS had not received the September

2006 notice of new loan servicer changes, she continued to remit payments and all loan matters to NEW

CENTURY until NEW CENTURY provided ALANIS a copy of the September 2006 notice in 2007.

8.6    **ALANIS TIMELY REMITTED MORTGAGE, TAX, INSURANCE PAYMENTS
BEFORE DEFENDANTS TORTIOUSLY INTERFERRED WITH NOTE AND DEED OF
TRUST:**
At all times throughout the loan period from June 2006-January 2011 ALANIS timely remitted every

mortgage payment to the loan servicer through certified mail, and timely paid all other taxes and

insurance on the property.  ALANIS also annually faxed in proof of "split tax payments" and insurance

coverage to each loan servicer at their fax number provided.  WELLS FARGO, OCWEN and MACKIE

WOLF ZIENTZ & MANN tortiously interfered with the ALANIS Note and Deed Of Trust executed with

NEW CENTURY and unlawfully and fraudulently accelerated her Note in April 2010 and January 2011

in behalf of WELLS FARGO, *As Trustee* when NEW CENTURY and /or NEW CENTURY liquidation

trust was still the record owner of the ALANIS Note and Deed Of Trust.   Since 2011, the Defendants

have continued to interfere with ALANIS' ability to pay her taxes to the taxing authority who has

rejected ALANIS' attempt to timely remit tax payments because the loan servicer has interfered with her

ability to pay her taxes.

8.7    **ALANIS "TAX" OVERPAYMENTS TO TAXING AUTHORITY, TITLE CO AND
HOMEQ:**  Immediately after closing on the loan in 2006, N ALANIS made overpayments to the taxing

authority and the Title company and received tax refunds for the overpayment.  ALANIS reported the

situation to the Title company and NEW CENTURY.  With the assistance of the title company, ALANIS

paid directly to NEW CENTURY the Sellers pro-rated "2006" taxes on or about August 2006 and the

2006 tax issue was fully resolved with NEW CENTURY.  Thereafter, HOMEQ notified ALANIS in

"2007" she was behind on "Mortgage" payments (not Tax Payments) and requested proof of current

payments for mortgage, taxes and insurance.  When ALANIS repeatedly disputed the false "mortgage"

delinquency claim, HOMEQ finally advised ALANIS in 2008 they remitted a "Split-Tax" payment in her

behalf for "2006" and required reimbursement and verified she was not in arrears with the disputed

Mortgage or insurance payments.  While ALANIS promptly disputed the 2nd 2006 Tax Payment and

notified HOMEQ of her 2006 tax payment to NEW CENTURY to cover the Sellers portion of the taxes.

HOMEQ demanded ALANIS remit again the "2006 tax reimbursement" payment to them with her next couple of mortgage loan payments between March and June 2008 or be subject to foreclosure. HOMEQ requested a reimbursement of $3,431.87 and ALANIS paid the same to HOMEQ with her mortgage payments between March-June 2008. ALANIS later learned HOMEQ made fraudulent representations and concealed their actual tax payment made to the taxing authority in the amount of $2,742.31. Between March and June 2008, ALANIS reimbursed HOMEQ their requested amount and actually provided HOMEQ during the period from April-June 2008 as follows: (1) Mortgage Payments @ $1,631.71 per month ($4,895.13) and (2) Tax Payment Reimbursement (3,431.87).    HOMEQ never reimbursed ALANIS for the unauthorized tax overpayment of approximately $689.56. As further proof of the 2006 tax reimbursement to HOMEQ, for the year 2008, ALANIS made total "Mortgage" payments to HOMEQ in the amount of $23,122.00 when her annual "Mortgage" payments were supposed to be $19,580.52. ALANIS 2008 payments to HOMEQ covered all of her required loan payments and the requested 2006 tax reimbursement and unauthorized tax "overpayment" of $689.56. ALANIS complained to HOMEQ it was unlawful to pay the 2006 taxes twice.

8.8    **HOMEQ FALSE MORTGAGE PAYMENT & TAX DELINQUENCY ASSERTIONS, BREACH OF CONTRACT, PROFANE LANGUAGE, FALSE REPRESENTATIONS IN GOVERNMENT PROCEEDING & ACCRUAL OF UNAUTHORIZED CHARGES:**
After ALANIS fully reimbursed HOMEQ their requested 2006 Tax reimbursement payment between March and June 2008, ALANIS' account continued to have the appearance of being delinquent and ALANIS was routinely accused of being delinquent with Mortgage, Tax and/or Insurance payments. Specifically, beginning in 2007, HOMEQ routinely mailed ALANIS Default and/or TELEWIRE notices falsely alleging ALANIS had not made a Mortgage payment for periods she already timely remitted "Mortgage" payments.    HOMEQ delinquency assertions were patently false as ALANIS timely remitted all her Mortgage payments to HOMEQ by certified mail through the duration of the loan period.    After commencing the litigation in *Cause No 2011-CI-02839*, ALANIS discovered for the first time in 2012, that HOMEQ wrote to WELLS FARGO, *As Trustee* in April 2009 and falsely represented ALANIS was delinquent with loan payments when she was not.    HOMEQ also told WELLS FARGO, *As Trustee* ALANIS was delinquent with a 2006 tax payment and never apprised WELLS FARGO, *As Trustee* that ALANIS disputed and promptly reimbursed HOMEQ for their alleged delinquent "2006 tax payment"

when HOMEQ demanded re-imbursement. ALANIS also learned in 2012 that HOMEQ provided a written 10.30.09 letter to the Federal Reserve in connection with a complaint filed by ALANIS to the Federal Reserve.    Among other things. HOMEQ made patently false representations to the Federal Reserve in connection with the ALANIS loan and falsely alleged ALANIS failed to make a 2006 tax payment and failed to maintain her insurance coverages for periods ALANIS did maintain coverage and also routinely placed ALANIS loan payments in a "SUSPENSE" account.  HOMEQ also admitted to breaching the deed of trust when placing the ALANIS "September 2007" loan payment in a "Suspense" account which was not authorized by the Deed Of Trust, paragraph #2 *Application Of Payments* (ie requiring loan payments to be applied first to interest and then to principal) and HOMEQ admitted they did not correct their error until August 2009. This HOMEQ error caused ALANIS' loan to falsely appear delinquent for two years and ALANIS was routinely harassed by HOMEQ between 2007 and 2009 with delinquency notices and almost daily telephone calls at her business which included HOMEQ using profane language with ALANIS and her staff and advising ALANIS and her staff she was seriously delinquent with her loan obligations and a B---- who would be homeless for ignoring the same. The Deed Of Trust does not authorize the diversion of principal and interest payments to other applications as was done by HOMEQ when they allegedly paid the Sellers 2006 taxes using ALANIS timely remitted loan payments.  The result of HOMEQ's unauthorized diversion of ALANIS timely remitted Mortgage payments into "ESCROW". "Suspense" and "Unapplied" accounts was that HOMEQ's records falsely reflected ALANIS delinquent in principal and interest payments which was not a legitimate delinquency. As a result of this unauthorized diversion of ALANIS' timely remitted Mortgage payments. unauthorized "Late Charges" on monthly principal and interest payments began to accrue.

8.9     **HOMEQ FALSE "INSURANCE" DELINQUENCY ASSERTIONS, FORCE PLACED INSURANCE PURCHASES  & VIOLATIONS OF RESPA:** At some point in 2007 and without notice to ALANIS, HOMEQ began diverting ALANIS Mortgage payments (which consisted of principal and interest due on the property) to other accounts listed as "Unapplied". "SUSPENSE" and "Escrow". It appears this diversion of funds was created in order to "reimburse" HOMEQ and WELLS FARGO, *As Trustee* for monies it purportedly spent on purchasing ultra inflated force placed insurance on the

DOCUMENT SCANNED AS FILED

ALANIS Property which ALANIS alleges WELLS FARGO, *As Trustee* and OCWEN received kickbacks on. The insurance escrow was never agreed to by ALANIS and HOMEQ never provided ALANIS an insurance binder evidencing the purchased "duplicate" insurance purchased in her behalf when requested nor did they provide ALANIS a written rescission of the Non-Escrow Agreements entered into at closing by the original lender NEW CENTURY as required by the Deed Of Trust on page 16 of 16 @ ¶ 3 (cont) which states as follows: "…….*Lender may revoke the waiver as to any or all Escrow Items at any time by notice given in accordance with Section 15…*". While HOMEQ was separately escrowing in breach of the deed of trust, ALANIS continually maintained insurance on the property separately from the HOMEQ escrow. Moreover, ALANIS was never notified in advance that HOMEQ was purchasing ultra inflated force placed insurance for the ALANIS Property. In effect, HOMEQ allegedly purchased "duplicate" unnecessary, unauthorized ultra inflated force placed insurance for the ALANIS Property and then unlawfully breached the deed of trust and diverted the ALANIS principal and interest loan payments to unlawful pay the "escrow" payments. HOMEQ also purchased the "ultra inflated forced placed insurance" in violation of RESPA *12 USC § 1024.37 Force-placed insurance.* Among other things, HOMEQ ignored the original lender and loan servicer NEW CENTURY insurance approvals for ALANIS and failed to comply with notice requirements and insurance purchase deadlines. Further, in 2008, when HOMEQ requested proof of ALANIS' insurance coverage for 2007-2008, ALANIS promptly re-faxed to HOMEQ (Tammy Fair) her NEW CENTURY and HORACE MANN insurance documents and receipts and also provided the contact information for the HORACE MANN agent who sold her the 2008 homeowners insurance policy. In early 2009, after HOMEQ Tammy Fair advised ALANIS that HOMEQ verified her insurance coverage information for 2007-2008 and would correct the errors in her loan records so she could obtain her fixed rate loan, ALANIS later learned that no corrections were made to her loan. While Tammy Fair advised ALANIS that all HOMEQ required was to see was that ALANIS actually purchased an insurance policy and they would not penalize her for any HORACE MANN errors, ALANIS relied on those representations and spent time and money to put her HOMEQ / NEW CENTURY loan payment records and other requested records together for the Mortgage broker and also, incurred additional expense with a private investigator to locate the HORACE MANN Insurance agent

who could verify her insurance coverage purchased for 2008 with Tammy Fair.  Tammy Fair also informed ALANIS to obtain her next policy in March 2009 to address overpayments she made to HOMEQ.  WELLS FARGO took advantage of the situation and instead placed ultra-inflated force-placed insurance on the ALANIS Property in the amount of $4,196.40 for a (6) month homeowners policy in 2008 when they knew ALANIS had already paid for a 2008 homeowners policy to cover twelve months in the amount of $834.00 through HORACE MANN.  In 2014, ALANIS learned that HORACE MANN's records were grossly in error as they maintained among other things that they issued the 2008 policy incorrectly and the policy was for a "new business" when ALANIS purchased a "homeowners policy", not a business policy.  After ALANIS complained to the Federal Reserve about the HOMEQ fraudulent accounting practices, the Federal Reserve communicated to ALANIS in early 2010 and advised ALANIS that HOMEQ was instructed to correct the ALANIS loan records and remove the force placed insurance.  In 2012, ALANIS learned that HOMEQ never complied with the Federal Reserve and the force placed insurance remained on their books.  ALANIS requested an investigation from the Federal Reserve in 2015.

8.10        **ALANIS MULTIPLE COMMUNICATIONS WITH HOMEQ:**  In the Spring of 2008 and responsive to the false HOMEQ delinquency assertions, ALANIS contacted HOMEQ Customer Service on at least 20 different occasions to address their multiple false delinquency notices which were vague and overbroad and not specific as to a delinquency with "mortgage", "tax" and or "insurance".  Every default notice used the identical vague and overbroad language "...for failure to pay the required installments when due..." and ALANIS was unable to determine what her true default was.  ALANIS wrote letters to HOMEQ in 2008 and 2010.  In 2008, ALANIS was finally placed in direct contact with Tammy Fair who was identified as an individual who had superior escalation managerial authority to promptly correct the "errors" in loan records.   When ALANIS contacted Tammy Fair, ALANIS was instructed to remit proof of specific requested Mortgage, Tax and Insurance payments so her records could be corrected and ALANIS promptly complied.  Thereafter, Tammy Fair advised ALANIS her requested documents were reviewed and errors in her loan records would be corrected.  After commencing the litigation to stop the OCWEN/WELLS FARGO unlawful foreclosure, ALANIS later learned in 2012

that the HOMEQ errors were never corrected as promised and the force placed insurance and 2006 tax reimbursement payment remained as an escrow item on her loan records and force placed insurance was never removed as required by the Federal Reserve.

8.11     **LOST OPPORTUNITY TO REFINANCE LOAN @ 4% WITH MORTGAGE BROKER:** ALANIS also advised Tammy Fair of the opportunity she had to refinance her loan at a 4% fixed interest rate with her original Mortgage Broker and the necessity of HOMEQ to correct the errors with her loan and their false "late payment" reporting with credit reporting agencies. ALANIS informed Tammy Fair she accepted the terms with her Mortgage Broker and completed the mortgage "refinancing" paperwork and was approved for her 4% fixed interest rate loan conditioned on her credit report activity with the current lender.  When the Mortgage Broker pulled ALANIS' credit report, ALANIS learned HOMEQ had made false reports to the Credit Bureaus alleging ALANIS made (4) late payments. This false reporting was done during the period HOMEQ placed the ALANIS "September 2007" loan payment in a Suspense Account for two years.  While ALANIS was told by Tammy Fair the HOMEQ errors in her loan records and with credit reporting agencies would be corrected, ALANIS was contacted by her original Mortgage Broker and informed that the "false late payment reporting" by HOMEQ continued to appear on her credit report and the Mortgage Broker could not provide her with a 4% Loan at no cost without a corrected credit report from HOMEQ.   The Broker showed ALANIS on his mortgage calculator that ALANIS  was going to lose the opportunity with a lower interest rate to save over $180,000 over the life of the new loan.   ALANIS verified the information with a bank Mortgage lender and the savings in interest was over $400,000. Because HOMEQ failed to remove the false reporting on her credit report, the loan refinancing offer from ALANIS' original Mortgage Broker was withdrawn and thereafter, the Broker retired and permanently closed his offices approximately six months later.

8.12     **ALANIS NOTICE TO HOMEQ OF FALSE REPORTING ON CREDIT REPORT AND REQUESTED CORRECTION:** Before ALANIS' original mortgage Broker closed his offices, ALANIS made repeated good faith efforts through telephone calls and/or through certified written communication with HOMEQ to apprise them of her original Mortgage Brokers 4% loan refinancing offer and further requested that HOMEQ make a prompt correction to her credit report regarding the (4)

alleged late Mortgage payments and HOMEQ never corrected her credit report after they verified her timely remitted loan payments and promised to correct the same. ALANIS learned from reviewing discovery documents that HOMEQ records showed one set of "late payment" reporting that was not consistent with the "late payments" actually reported to the credit bureaus and pulled by her Mortgage Broker. Further, the "September 2007" ALANIS loan payment placed in an unauthorized "SUSPENSE" account also created the appearance and false reporting of "late payments".

8.13    **ALANIS REQUEST TO HOMEQ TO CEASE HARASSING PHONE CALLS:** Between 2008 and 2009, ALANIS received approximately four HOMEQ phone calls per day at her business threatening foreclosure on her Property for failure to comply with her mortgage loan agreements after ALANIS had already provided requested documents to HOMEQ (Tammy Fair) proving her compliance with Mortgage, Tax and Insurance payments and where HOMEQ verified receipt of the same and reassured ALANIS a correction to her loan records would be forthcoming, when it was not. Instead, HOMEQ customer service was leaving messages with ALANIS' staff apprising them that ALANIS' Property was subject to Foreclosure for failure of ALANIS to be compliant with her Loan payments and directly accused ALANIS of being a "bitch" and using other foul language to convey their delinquency message. In both frustration and embarrassment, ALANIS placed over twenty (20) phone calls to HOMEQ requesting a correction to her account as per Tammy Fair agreements, and also mailed HOMEQ a written communication requesting they cease all communications to her business and HOMEQ acknowledged receipt of that letter in August 2009 and falsely alleged ALANIS was delinquent with her loan and continued to telephone her and harass her for a debt that was not only disputed but also patently false. ALANIS was never aware that HOMEQ placed her "2007 loan payment" in a SUSPENSE account which caused her loan to appear to be in default for over two years and was only corrected after ALANIS contacted the Federal Reserve. That false delinquency caused HOMEQ to routinely harass, falsely accuse and oppress ALANIS and act in bad faith for over two years.

8.14    **HOMEQ FORECLOSURE APRIL 2010 ACTION:** In April 2010, HOMEQ initiated foreclosure proceedings against the ALANIS' Deed Of Trust loan in behalf of WELLS FARGO, *As Trustee* who pursuant to the February 2, 2011 *Transfer of Lien*, had no legal or equitable interest in the

ALANIS Note and Deed Of Trust. The scheduled foreclosure was for June 1, 2010. Without explanation, the foreclosure was withdrawn and HOMEQ continued to reject ALANIS' timely remitted loan payments. ALANIS submits that HOMEQ could not foreclose in 2010 in behalf of WELLS FARGO, *As Trustee* because ALANIS' original lender NEW CENTURY was the record owner of the ALANIS Note and Deed Of Trust allegedly through February 2, 2011 as evidenced by the *Transfer of Lien* purportedly executed between NEW CENTURY and WELLS FARGO, As Trustee for consideration. NEW CENTURY was dissolved in a Delaware liquidation bankruptcy proceeding in "August 2008" and were without existence or authority to endorse any Note at the time of the alleged February 2, 2011 *Transfer of Lien* and the 2010 Substitute Trustees Sale in behalf of WELLS FARGO, As Trustee is a fraudulent instrument.

8.15      **PRE-LITIGATION DISCOVERY WITH HOMEQ:** On or about May 2010, ALANIS through her counsel Loren Peters established communication with HOMEQ through their attorneys (MANN & STEVENS, PC) and objected to the delinquency amounts being stated by HOMEQ. Mann & Stevens, PC subsequently provided ALANIS' counsel with a *HomEq Account Payment History* which reflected activity through August 2010. This payment history provided the basis for concluding that ALANIS' principal and interest payments were unlawfully being diverted to purposes other than payment of principal and interest. Before ALANIS could conclude her communication with Mann & Stevens, PC to resolve the issues, the account was transferred to OCWEN and Mann & Stevens was no longer able to discuss the matter on behalf of the loan servicer or lender. Mann & Stevens is now dissolved.

8.16      **HOMEQ TRANSFERS LOAN SERVICING TO OCWEN:** HOMEQ Servicing mailed ALANIS a 8.11.10 *Notice Of Service Transfer* which stated in pertinent part *"...Effective 8.31.10 HomEq Servicing will transfer the servicing of your account to Ocwen Loan Servicing, LLS (OCWEN)...".*

8.17      **OCWEN PROVIDES REQUIREMENTS FOR FDCPA/RESPA/TDCA VERIFICATION OF DEBT TO ALANIS:** On September 13, 2010, WELLS FARGO, *As Trustee* by and through their loan servicer agent OCWEN, mailed ALANIS a letter falsely alleging she had "unpaid debt" including over $18,000 in interest and other charges. The 9.13.10 OCWEN letter to ALANIS expressly stated in pertinent part:

Case Number: 2011CI02839          Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AN[...]

1864

DOCUMENT SCANNED AS FILED

*"...Unless, within thirty days after receipt of this notice, you dispute the validity of this debt or any portion thereof, we will assume the debt to be valid. If, within thirty days of your receipt of this notice, you notify us <u>in writing</u> that the debt, or any portion thereof, is disputed, we will: (1) Obtain verification of the debt....This is an attempt to collect a debt..."*

OCWEN also advised ALANIS she was delinquent with her payments on the Note and that she had an "unpaid debt" as follows: (1) Interest $18,153.83 (2) Late Charges $975.36 (3) Collection Costs $2002.76 (4) Escrow Advances $3,178.8, and (5) Suspense Balance $1,298.85. For the reasons stated herein, OCWEN should never have mailed ALANIS a letter in behalf of WELLS FARGO. *As Trustee* as they held no legal or equitable interest in the ALANIS Note and Deed Of Trust in September 2010 as evidenced by the *Transfer of Lien* dated February 2, 2011. At All times ALANIS relied on HOMEQ and OCWEN representations and remitted loan payments from 2008 -2010 to WELLS FARGO, *As Trustee* through their loan servicers, until said payments were rejected.

8.18    ALANIS "FOUR" FDCPA/RESPA/TDCA TIMELY ATTEMPTS TO "DISPUTE A DEBT" WITH OCWEN/HOMEQ: ALANIS made multiple attempts to dispute the alleged debt through regular mail and through the OCWEN Customer Service number provided where she was repeatedly connected to India to speak to an OCWEN representative with no resolution or correction to her account. Thereafter, ALANIS' former attorney Loren Peters timely mailed "debt dispute" and/or "Qualified Written Request" letters to OCWEN by regular and certified mail and OCWEN ignored and never responded to any of the ALANIS timely remitted "debt dispute" letters and failed to verify the ALANIS debt and the Defendants have not denied this summary of events. A QWR is defined in 12 U.S.C. § 2605(e)(1)(B) as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Pursuant to RESPA, FDCPA and TDCA, ALANIS and/or her former attorney Loren Peters mailed multiple certified timely debt dispute/QWR letters to OCWEN and WELLS FARGO, *As Trustee* by and through their loan servicer agents HOMEQ/OCWEN on 9.19.10. 10.13.10, 12.21.10. 12.21.10. ALANIS' attorney (Loren Peters) objected

to the amount alleged to be in default and additionally demanded explanation and an opportunity to compare the accounting on which the demand was based in order to resolve the errors and avoid foreclosure.   While the letter was received by OCWEN on October 18, 2010. OCWEN failed to respond to the disputed debt dispute/QWR correspondences of Loren Peters or ALANIS within thirty days as required by the Texas Finance Code *Sec. 392.202(a)(b)* and five days as required by RESPA. OCWEN wholly ignored the FDCPA/TDCA and refused to verify the ALANIS debt.

8.19 **WELLS FARGO JANUARY 2011** *NOTICE OF ACCELERATION / FORECLOSURE NOTICE* **FATALLY DEFECTIVE WITHOUT (NOTICE TO CURE) & NON COMPLIANCE WITH TEXAS FINANCE CODE § 392.101(a) and 392.202(b).**

On or about January 13, 2011. WELLS FARGO *(not bonded)* debt collector law firm of MACKIE WOLF ZIENTZ & MANN, PC mailed ALANIS a *"Notice Of Acceleration Of Loan Maturity"* and attached a *"Notice Of Foreclosure"* scheduled for March 1, 2011 with a "thirty day notice" provision to dispute the debt.  The law firm represented they were retained by Ocwen Loan Servicing, mortgage servicer for WELLS FARGO, As Trustee. In pertinent part. the letter stated: *"...We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed Of Trust....This firm is a debt collector attempting to collect the debt...".*    At ¶6 of the January 13, 2011 *Notice Of Acceleration Of Loan Maturity.* the letter stated in pertinent part: *"...Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice.  If you do not, the debt will be assumed valid by the firm...."*

ALANIS' former attorney Loren Peters did mail a timely certified "debt dispute" letter to MACKIE WOLF ZIENTZ & MANN on February 3, 2011 and among other things stated as follows:

> *"...¶1...I represent Alanis...¶2...Please be advised that Ms Alanis has disputed "notice to cure default" letters from loan servicers, and disputes the balance due stated in your Notice Of Acceleration of $222,256.14. That number obviously includes late charges and other charges which have been called to the loan servicers attentions in prior communications.  Copies of those prior communications are enclosed.  No response to the prior communication has been made.  The history of correspondence and objections are repeated below..."*

MACKIE WOLF ZIENTZ & MANN ignored and never responded to the February 3, 2011 Loren Peters timely mailed "debt dispute" letter thereby violating the FDCPA and/or the TDCA "thirty day" validation notice requirements. TEXAS FINANCE CODE. Sec. 392.202.

8.20       **ALANIS LITIGATION:** Because the Defendants ignored her timely remitted debt dispute/QWR letters and failed to comply with RESPA, FDCPA, TDCA and Texas Property Code, ALANIS filed *Plaintiff's Original Petition and Application For Injunctive Relief* on February 22, 2011. OCWEN's ombudsman finally contacted ALANIS' attorney four months later on February 28, 2011 after the ALANIS suit had been filed and their letter was not compliant with the "verification" deadlines of RESPA and TDCA (i.e. thirty day) and RESPA (i.e. five day). In fact, their letter never addressed any loan errors.

8.21       **BONA FIDE ERROR CONSIDERATIONS & 2011 OCWEN CLASS ACTION LITIGATION AND VIOLATIONS OF FDCPA & RESPA:**
In February 2011, N ALANIS received notice of a class action lawsuit styled *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, MDL No 1604, Lead Case No 04-2714 for violations of the Federal Debt Collection Practices Act (FDCPA) and RESPA. ALANIS opted out of the litigation due to her pending OCWEN litigation. In December 2013, Mortgage servicer Ocwen Financial Corp. reached a $2.1 billion settlement with the Consumer Financial Protection Bureau to resolve allegations it had far-reaching problems with its loan-processing operations and mistreated homeowners facing foreclosure. Further, OCWEN failed to produce in discovery any policy and procedures adopted to avoid errors with the servicing of loans and compliance with state and federal laws (RESPA, TDCA, FDCPA) and cannot assert the defense of "bona fide" error.

8.22       **BONA FIDE ERROR CONSIDERATIONS AND 2011 WELLS FARGO NON COMPLIANCE WITH FDCPA**
In March 2011, The National Mortgage Settlement Act held the banks (including WELLS FARGO) accountable for their wrongdoing on robo-signing and mortgage servicing. WELLS FARGO has failed to comply with the OCC Order requiring in Article IV(1)(b) processes to ensure that all factual assertions made in pleadings, declarations, affidavits, or other sworn statements filed by or on behalf of the Bank are accurate, complete, and reliable; and that affidavits and declarations are based on personal knowledge or a review of the Bank's books and records when the affidavit or declaration so states; **http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47k.pdf**. Further, WELLS FARGO failed to produce in discovery any policy and procedures adopted to avoid errors with the

servicing of loans and compliance with state and federal laws (RESPA, TDCA, FDCPA) and cannot assert the defense of "bona fide" error.

8.23       **NON COMPLIANCE WITH RULE 11 AGREEMENT:** On March 8, 2011 when ALANIS appeared at the hearing in connection with the 2.22.11 *Plaintiff's Original Petition and Application For Injunctive Relief* to stop the impending March 2011 Foreclosure and to address the continued WELLS FARGO/OCWEN violations of federal and state law, the parties signed a Rule 11 Agreement agreeing to Mediate on or before April 29, 2011 and although ALANIS apprised her attorney of the Mediation deadline, the Mediation agreement was ignored and not complied with and the Defendants attorney Jeffrey Hiller entered into other Rule 11 agreements on April 29, 2011 that violated the TRCP Rule 680 injunction hearing deadlines and sought to indefinitely extend the time to have an injunction hearing.

8.24       **ADDITIONAL KNOWING AND INTENTIONAL FRAUD OF DEFENDANTS & RESCISSION:** In 2014 summary judgment proceedings, the Defendants filed the 10.21.14 *Affidavit of GINA FEEZER* containing patently false statements in connection with her loan and fatally defective evidence designed to support a WELLS FARGO legal and equitable claim against ALANIS' real property. In a 2015 summary judgment proceeding, the Defendants also filed the *Affidavit of Katherine Ortwerth*. Both Affiants are Ocwen employees and are identified as "Custodian Of Records". Under jurat, the *Affiants* attached to their affidavits fabricated HOMEQ Loan summaries, a fabricated and forged 2.2.11 *Transfer of Lien*, a false Power of Attorney and fabricated OCWEN records that are inconsistent with HOMEQ records. In May 2014, MACKIE WOLF ZIENTZ & MANN mailed ALANIS a knowing fraudulent *Notice Of Rescission* without explanation or filing the same in public records. They also concealed from ALANIS there was never an OCWEN / WELLS FARGO. *As Trustee* acceleration of the ALANIS Note for the reasons stated herein and hence, the rescission was a nullity. In March 2015, WELLS FARGO filed a forged ALANIS Note containing an indorsement in blank thereon which contradicted the OCWEN Affiants sworn statements that the ALANIS Note with no indorsement in blank was the original or exact duplicate of the original. NEW CENTURY was also liquidated in a Delaware liquidation bankruptcy poroceeding in "August 2008" and had no VP to indorse a Note in blank in February 2011.

DOCUMENT SCANNED AS FILED

8.25        **ALANIS DAMAGES:** To stop the WELLS FARGO, *As Trustee* fraudulent foreclosure sale scheduled in 2011, ALANIS had to incur financial expenses to retain multiple attorney's to defend her property rights. ALANIS is extremely fearful of the next fraudulent act by Defendants WELLS FARGO, *As Trustee*, OCWEN and MACKIE WOLF ZIENTZ & MANN to steal her property. ALANIS has obtained a $600,000 default judgment against HOMEQ (aka OCWEN) and said judgment has not been paid. Prior to the Defendants foreclosure fraud, ALANIS enjoyed life with family and friends and got close to eight hours of sleep a day. Today, she has completely altered her life to protect her property rights and has little time for family and friends and is unable to attend many family functions. Alanis gets approximately between three and four hours of sleep a day and suffers from severe insomnia, stress with loss of clumps of hair, rash irritations and anxiety over the shocking fraudulent foreclosure litigation and fraudulent acts of the Defendants that has caused her to spend hundreds of hours between 2011 and 2015 investigating the oppressive, fraudulent and bad faith acts of OCWEN, WELLS FARGO, *As Trustee* and MACKIE WOLF ZIENTZ & MANN, doing legal research into the WELLS FARGO, *As Trustee* and OCWEN foreclosures, spending time trying to correct the credit bureau issues with HOMEQ late payments and other matters including but not limited to, contacting multiple state and federal government agencies including the Federal Reserve to request an investigation of her loan. ALANIS has substantially altered her lifestyle and neglected her business and business conventions to focus on investigative matters in this case. Because ALANIS feared the prospect of losing her property in a fraudulent foreclosure litigation, ALANIS ceased making the necessary improvements to her property after spending close to $15,000 in building materials in 2010, and which materials are now warped and weathered and no longer useable. She also lost the $1,500 deposit and other miscellaneous payments made to a contractor to make improvements to her property. She reallocated her property improvement funds to fight the fraudulent WELLS FARGO, *As Trustee* foreclosure action. In connection with addressing loan issues, special damages surfaced as a result of the loan servicer intentionally failing to properly service the loan and correct false credit reporting errors after they were notified of their errors by ALANIS and which ultimately harmed ALANIS' credit. Specifically, ALANIS lost the opportunity to re-finance her loan at a substantially lower fixed interest rate of (4%) with her original mortgage broker that would have saved her

over $180,000 over the life of the loan and which ALANIS has calculated to be a savings of over $400,000 in interest.    To address the loan errors, ALANIS requested HOMEQ make corrections to her loan. She communicated with HOMEQ representative Tammy Fair, who identified herself as the HOMEQ Senior Escalation Specialist. ALANIS apprised Tammy Fair of the heightened urgency to correct her loan errors and credit report containing false reporting because her mortgage broker required this in order to provide her a "fixed rate" loan at 4%. ALANIS understood from Tammy Fair in 2009 that she verified ALANIS timely remitted loan payment information and 2007-2008 insurance payments.    Tammy Fair advised ALANIS regardless of the errors of HORACE MANN, she was documenting ALANIS' HORACE MANN insurance for 2008 as paid "in full" and verified the same with the insurance agent Janae Beebe after ALANIS faxed her proof of the same.    ALANIS also understood from Tammy Fair that she was authorizing the necessary corrections to the ALANIS loan records so ALANIS could work with her mortgage broker to get her fixed rate loan and ALANIS relied on those representations to her financial detriment, because no loan corrections were made.  As a result, ALANIS lost the opportunity to re-finance her loan at a 4% interest rate and the mortgage broker retired and closed his business in 2009.  Further, in 2014, ALANIS was shocked when reviewing the Defendants 10.21.14 summary judgment and learned that all of her efforts to retain an attorney to help prepare and timely mail "debt dispute" error letters to OCWEN and MACKIE WOLF ZIENTZ & MANN was in vein because the Defendants WELLS FARGO, OCWEN and MACKIE WOLF ZIENTZ & MANN were now denying "debt collector" status and attempting to insulate themselves from RESPA, FDCPA and TDCA compliance.  Their fraudulent "debt collector" representations almost cost ALANIS to lose her $200,000 home to foreclosure.  ALANIS timely mailed certified "qualified written debt dispute" letters to OCWEN and MACKIE WOLF ZIENTZ & MANN because she believed they were going to timely respond and verify her true debt and they did not. Further, when WELLS FARGO/OCWEN and MACKIE WOLF & ZIENTZ & MANN posted their public foreclosure notices, ALANIS had to leave her property for extended periods because investors sent mail, personally came by her home ringing the doorbell at all hours, and continuously harassed her about the pending foreclosure and/or requested to purchase the property or learn more details about the foreclosure. They continued to harass ALANIS even after the foreclosure sale period.  Neighbors inquired with

ALANIS about the pending foreclosure actions filed by WELLS FARGO, *As Trustee*.    Because of

receiving close to twenty telephone calls per week from HOMEQ with some customer representative using

foul language to convey delinquency demands,  ALANIS had to ask HOMEQ to cease with their harassing

telephone calls at her business because HOMEQ would also share her personal loan information with any

individual who would answer the phone. As a business owner. ALANIS' reputation is also been severely

tarnished. her business focus has been severely affected and her personal life with family, pets and friends

has been minimized by and through the ongoing fraudulent acts of WELLS FARGO, OCWEN and

MACKIE WOLF ZIENTZ & MANN and their attorneys Mark Cronenwett and Jeffrey Hiller.

### VIII. SUIT FOR DECLARATORY JUDGMENT

8.1            Pursuant to Chapter 37 of the Texas Civil Practices and Remedies code, ALANIS seeks
certain declaratory and injunctive relief including declaration that: (1) ALANIS performed under
the Deed Of Trust and timely remitted mortgage payments from June 2006 – February 2011. for
the periods alleged by Defendants to be in default; (2) Defendants materially failed to perform
under the Deed Of Trust when knowingly placing ALANIS loan payments in a "Suspense"
account; seeking from ALANIS "duplicate" mortgage payments, "duplicate" escrow sums and
other unauthorized fees without revoking escrow agreements; and not applying ALANIS' mortgage
payments "first to accrued interest due on the Note, then to the principal due on the Note"; (3)
Defendants violated state (TDCA. TCPRC 12.002 and/or Texas Property Code) and federal law
(FDCPA/RESPA); (4) WELLS FARGO, *As Trustee* is without authority to accelerate and conduct
a foreclosure sale on the ALANIS Property due to fraud, forgery, statutory "limitations" and/or
violations of the FDCPA, Texas Finance Code and Texas Property Code 51.002(d) / 51.0025; (5)
ALANIS is entitled to a jury trial on damages pursuant to Defendants violations under RESPA.
TDCA. FDCPA, FRAUD. 12.002, BREACH OF CONTRACT and other asserted claims; (6)
Trespass to Title/Cloud On Title: ALANIS has demonstrated a superior title and equity requires
the removal of the cloud on title and quiet title in the name of ALANIS due to among other things.
the knowing fraud of WELLS FARGO, *As Trustee*. OCWEN and MACKIE WOLF ZIENTZ &
MANN in connection with default. acceleration and foreclosure notices and the fabricated
ALANIS Note in 2015 (with a fraudulent indorsement in blank from the VP of NEW CENTURY
who was dissolved in 2008 and without existence to indorse a note in 2011 in connection with a
purported 2.2.11 Transfer of Lien) and which impairs the title of ALANIS as the owner of the
property; (7) Order OCWEN (successor to HOMEQ) to pay the $600.000 default judgment entered
against HOMEQ (OCWEN purchased HOMEQ in 2010) and (8) grant all other and further relief in
law and in equity to which she may be justly entitled. A claim for quiet title "enable[s] the holder of

DOCUMENT SCANNED AS FILED

the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" The elements of a quiet-title claim are: "(1) an interest in a specific property: (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." *Cruz v. CitiMortgage, Inc.*, No. 11-cv-2871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)). To quiet title in his favor, the plaintiff 'must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference.'" *Wells v. BAC Home Loans Servicing, L.P.*, No. 10-cv-350, 2011 WL 2163987, at *4 (W.D. Tex. April 26, 2011) (quoting *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). An action for trespass to try title is "the method for determining title to lands, tenements, or other real property and the exclusive remedy for resolving competing claims to property." *Parker v. Hunegnaw*, 364 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing Tex. Prop. Code Ann. § 22.001). To succeed, a plaintiff must establish the superiority of his title and cannot prevail merely on the weakness of the defendant's title. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). Because Plaintiffs have alleged a valid claim for wrongful foreclosure, fraud, and promissory estoppel, each of which substantiate a superior claim to title (taking all of Plaintiffs' allegations as true), and request return of title as one form of relief, the district court erred in dismissing Plaintiffs' action for trespass to try title. *Guajardo v. JP Morgan Chase Bank, NA*, Court of Appeals, 5th Circuit Jan 12, 2015.

## IX. CAUSES OF ACTION

9.1 Plaintiff re-alleges and incorporates by reference the preceding paragraphs (I-VIII and IX) into each paragraph herein for all purposes as if repeated and set forth herein verbatim for each claim and cause of action.

### 9.2 ACTION FOR VIOLATION OF 12.002 OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE — OCWEN, HOMEQ, WELLS FARGO & MACKIE WOLF ZIENTZ & MANN Jointly and Severally
§ 12.002. LIABILITY.
  (a) A person may not make, present, or use a document or other record with:
      (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
      (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
      (3) intent to cause another person to suffer:
          (A) physical injury;
          (B) financial injury; or
          (C) mental anguish or emotional distress.
  (b) A person who violates Subsection (a) is liable to each injured person for:
      (1) the greater of:
          (A) $10,000; or
          (B) the actual damages caused by the violation;
      (2) court costs;

(3) reasonable attorney's fees; and

(4) exemplary damages in an amount determined by the court.

As outlined herein, Defendants OCWEN, HOMEQ, WELLS FARGO, As Trustee & MACKIE WOLF ZIENTZ & MANN knowingly violated section 12.002 of the CPRC for which ALANIS seeks judgment against Defendants jointly and severally for each knowing and intentional false and/or forged mortgage instrument recorded and/or presented as follows: (1) Defendants WELLS FARGO, *As Trustee*, HOMEQ/OCWEN knowingly presented and recorded a fraudulent May 5, 2010 *Notice Of Substitute Trustee's Sale* in behalf of WELLS FARGO, *As Trustee* knowing WELLS FARGO, *As Trustee* had no legal or equitable interest in the ALANIS Note and Deed Of Trust in May 2010 pursuant to the February 2, 2011 *Transfer of Lien* allegedly executed between WELLS FARGO, *As Trustee* and ALANIS' original lender NEW CENTURY; (2) All the Defendants forged and recorded a 2.2.11 *Transfer of Lien* purportedly executed between WELLS FARGO, *As Trustee* and ALANIS' lender NEW CENTURY" who was dissolved in a "2008" Delaware liquidation bankruptcy and was without existence or authority in 2011 to execute any document. WELLS FARGO, *As Trustee* never had a legal or equitable interest in the ALANIS Note and Deed Of Trust from 2006-2011 (their foreclosure periods) and to the current time.

9.3 **TEX PEN. CODE ANN. §32.47: Texas Statutes - Section 32.47: FRAUDULENT DESTRUCTION, REMOVAL, OR CONCEALMENT OF WRITING – All Defendants Severally (See "Action For Fraud")**
**Texas Penal Code ("TPC") Sec. 32.21 FORGERY**
(a) For purposes of this section:
   (1) "Forge" means:
      (A) **to alter, make, complete, execute, or authenticate any writing so that it purports:**
         (i) **to be the act of another who did not authorize that act;**
         (ii) **to have been executed at a time or place or in a numbered sequence other than was in fact the case; or**
         (iii) **to be a copy of an original when no such original existed;**
      (B) **to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or**
      (C) **to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).**

   (2) **"Writing" includes:**
      (A) printing or any other method of recording information;

**Texas Penal Code**
**Sec. 32.47. Fraudulent Destruction, Removal, or Concealment of Writing.**
(a) **A person commits an offense if with intent to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the verity, legibility, or availability of a writing, other than a governmental record.**
(b) For purposes of this section, "writing" includes:
   (1) printing or any other method of recording information;
   (2) money, coins, tokens, stamps, seals, credit cards, badges, trademarks;
   (3) symbols of value, right, privilege, or identification; and

      (4)    universal product codes, labels, price tags, or markings on goods.
(c)  Except as provided in Subsection (d), an offense under this section is a Class A misdemeanor.
(d)  **An offense under this section is a state jail felony if the writing:**
      (1)    is a will or codicil of another, whether or not the maker is alive or dead and whether or not it has been admitted to probate; or
      (2)    is a deed, mortgage, deed of trust, security instrument, security agreement or other writing for which the law provides public recording or filing, whether or not the writing has been acknowledged.

As outlined in 9.2 above, the Defendants knowingly violated the TEX PEN. CODE ANN §§ 32.21, 32.47. TCPRC 41.008(c) for which ALANIS seeks judgment against Defendants severally together with attorney's fees, court costs, and "uncapped" exemplary damages. WELLS FARGO, As Trustee, OCWEN and MACKIE WOLF ZIENTZ & MANN knowingly filed the 10.21.14 *Affidavit of GINA FEEZER* with corresponding exhibits containing evidence that the loan servicer is maintaining "two" sets of books in violation of state and federal laws. Gina Feezer also made false sworn statements regarding OCWEN's compliance with the Texas Property Code. WELLS FARGO. *As Trustee* OCWEN and MACKIE WOLF ZIENTZ & MANN also concealed from ALANIS the true "mortgagee" between 2009-2010 and recorded in public records. a forged 2.2.11 *Transfer of Lien* and produced in discovery a March 2015 counterfeit ALANIS Note with a forged Indorsement thereon for the reason stated herein. HOMEQ/OCWEN also filed the April/May 2010 and December 2010/Janaury 2011 Foreclosure actions in behalf of a WELLS FARGO. *As Trustee (who was not the true mortgagee) and* without NEW CENTURY or NEW CENTURY liquidation trust authority. id.

9.4    **ACTION FOR EXEMPLARY DAMAGES – All Defendants Severally**

Chapter 41 defines exemplary damages as follows:
"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. "Exemplary damages" includes punitive damages. TCPRC § 41.001(5).

Section 41.003 sets forth the standards necessary for recovery of exemplary damages in Texas. Under this section, exemplary damages may be awarded only if the claimant proves, by *clear and convincing* evidence, that the harm resulted from: (1) fraud; (2) malice; or (3) gross negligence. *Id.* at § 41.003(a). The claimant bears the burden to demonstrate that the harm resulted from fraud, malice, or gross negligence, and cannot shift that burden to the defendant. ALANIS is entitled to exemplary damages under Section 41.008(c) of the Texas Civil Practice & Remedies Code. The conduct of each Defendant as set forth herein constituted knowing and intentional fraud, malice. or gross negligence such that each Defendant is liable for "uncapped" exemplary damages for which ALANIS seeks judgment of the Court because the Defendants' conduct fell within certain of the felony conduct exceptions to the cap. ALANIS apprised the Defendants and their attorneys in writing between 2008 - 2015, in litigation filings and by telephone of their unlawful acts and the Defendants knowingly and

intentionally disregarded ALANIS' notices and knowingly and intentionally violated state and federal laws to continue in their unlawful acts to steal ALANIS Property. [See Action For Fraud/12.002]

9.5  **ACTION FOR FRAUD:  Fraudulent destruction, removal and concealment of writing, Fraudulent Misrepresentation — All Defendants Jointly and Severally**

As outlined in Section 1-8 herein, the Defendants intentionally, knowingly and/or recklessly made misrepresentations and/or omissions of material facts to ALANIS which were relied on to her financial detriment.  The Defendants engaged in acts of fraud in government and judicial proceedings and intentionally and knowingly made false statements in pleadings "under jurat" which were filed by the Defendants and Defendant attorneys of record Mark Cronenwett and Jeffrey Hiller and relied on by ALANIS to her financial detriment. WELLS FARGO, *As Trustee* was not and is not the owner and holder of the ALANIS note between 2010 through January 13, 2011, the period they sought (two) unlawful fraudulent foreclosure actions to the ALANIS Property when they had no legal or equitable interest in the ALANIS mortgage loan.  As proof, WELLS FARGO, *As Trustee* allegedly executed for consideration, a *Transfer of Lien* with NEW CENTURY on February 2, 2011 and hence, had no interest in the ALANIS mortgage loan until February 2, 2011.  If WELLS FARGO, *As Trustee* was not then an assignee of the original lender and was "without capacity," then it follows that WELLS FARGO, *As Trustee* cannot be considered a party to the ALANIS contract (i.e., the deed of trust). WELLS FARGO, *As Trustee* unlawfully asserted competing rights to the ALANIS title and they were without contractual authority to invoke the power of sale, appoint trustees, and issue notices in anticipation of foreclosure. At all times, WELLS FARGO, *As Trustee*, OCWEN and MACKIE WOLF ZIENTZ & MANN fraudulently concealed this unlawful foreclosure scheme from ALANIS and ignored all of her timely remitted "debt dispute/QWR letters. In fact, WELLS FARGO, *As Trustee* worked in concert with loan servicers HOMEQ and OCWEN to falsely represent to ALANIS that WELLS FARGO, *As Trustee* held a legal and equitable interest in the ALANIS Note and Deed of Trust from 2009-2011 and HOMEQ/OCWEN even collected ALANIS loan payments in behalf of WELLS FARGO, *As Trustee*. WELLS FARGO, *As Trustee*, HOMEQ and OCWEN knowingly and intentionally tried to force the ALANIS loan in to default by forcing ALANIS to pay "duplicate" 2006 taxes and other escrow payments in connection with the loan between 2007-2010, the period ALANIS' original lender NEW CENTURY was the record owner of the ALANIS Note and Deed Of Trust and dissolved in a liquidation bankruptcy proceeding. WELLS FARGO, *As Trustee* worked in concert with their loan servicers HOMEQ and OCWEN to conceal the NEW CENTURY liquidation bankruptcy dissolution from ALANIS and falsely represent WELLS FARGO, *As Trustee* was the "true mortgagee" from 2009-2011, when they were not as evidenced by the 2.2.11 *Transfer of Lien*.  The Defendants OCWEN and WELLS FARGO attorneys knowingly and intentionally fraudulently concealed evidence of WELLS FARGO executed 8.27.08 *Limited Power Of Attorney* with Barclays (dba HOMEQ) affecting the Trust and executed two years after the 2005 OCWEN POA with NEW CENTURY and after NEW CENTURY was dissolved in a liquidation

Case Number: 2011CI02839                Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AN[...]

1875

DOCUMENT SCANNED AS FILED

bankruptcy proceeding. To support their forged 2.2.11 *Transfer of Lien*. WELLS FARGO, *As Trustee* and OCWEN used the 2005 OCWEN *Limited POA*, not the 8.27.08 Limited POA which superseded the 2006 OCWEN POA. Additionally. HOMEQ senior escalation specialist, Tammy Fair agreed to correct known errors in the ALANIS loan records and on ALANIS credit report and instructed ALANIS to continue making her payments until the corrections were made and ALANIS relied on the same and continued making payments to HOMEQ and lost the opportunity to obtain a fixed rate 4% loan when Tammy Fair did not correct the ALANIS records. The Defendants WELLS FARGO, *As Trustee*. OCWEN and HOMEQ conduct at all times was fraudulent and misleading particularly where after repeatedly being advised of their loan errors by ALANIS, they continued to fabricate ALANIS loan records as evidenced by the HOMEQ 2009 letter to WELLS FARGO and the FEDERAL RESERVE, which falsely alleged ALANIS was delinquent with loan, insurance and tax payments when she was not. Without having any legal or equitable interest in ALANIS Note and Deed Of Trust. WELLS FARGO, *As Trustee*, HOMEQ and OCWEN knowingly and intentionally placed ultra inflated force placed insurance on ALANIS (without providing any proof of the same when ALANIS requested binders) and when they knew she was maintaining separate insurance. OCWEN/HOMEQ knowingly misappropriated ALANIS' Mortgage payments so unauthorized escrow, late charges, collection costs, interest and other sums could accrue to create the necessary delinquency façade to ensure a successful foreclosure action to the ALANIS Property. Defendants false statements made in judicial proceedings and omissions regarding communications, notices and non compliance and/or tortious interference with the Note and Deed Of Trust, on which ALANIS relied, proximately caused financial hardship and injury to ALANIS. In 2010 and through January 13, 2011, WELLS FARGO. *As Trustee* loan servicer OCWEN and legal agent debt collector law firm of MACKIE WOLF ZIENTZ & MANN represented themselves to ALANIS to be legitimate debt collectors complying with state and federal debt collection laws and falsely represented that WELLS FARGO, *As Trustee* was the mortgagee when the 2.2.11 *Transfer of Lien* shows February 2, 2011 is the date WELLS FARGO, *As Trustee* allegedly provided consideration to NEW CENTURY for an interest in the ALANIS Note and Deed Of Trust. In 2014 summary judgment proceedings, OCWEN and MACKIE WOLF ZIENTZ & MANN denied being debt collectors and insulated from debt collection laws. In 2015, WELLS FARGO produced in discovery through their debt collector attorney MACKIE WOLF ZIENTZ & MANN a forged ALANIS Note/Version-2 containing the forged "Indorsement from STEVE NAGY", VP with NEW CENTURY. WELLS FARGO had previously produced in discovery and filed in multiple summary judgment proceedings under jurat, the ALANIS Note/Version-1 "without an Indorsement". At all times, ALANIS proceeded through the litigation on ALANIS Note/Version-1 "without an Indorsement". Now to her financial detriment, all the hearings held between 2011-2015 with Court Orders entered thereon based on the ALANIS Note/Version-1 "without an Indorsement" could be void as a matter of law. ALANIS learned for the first time in 2012, that HOMEQ admitted to

the Federal Reserve their breach of the Deed of Trust when placing ALANIS' "September 2007" loan payment in a "SUSPENSE" and other unauthorized accounts which was unauthorized by the deed of trust pursuant to par. 2 *Application Of Payments* which required loan payments to be applied to principal and interest.      HOMEQ did not correct their error until August 2009 (After ALANIS complained to the Federal Reserve) and caused the ALANIS loan to appear delinquent for over two years which opened the door to false reporting with the credit bureaus.   **HOMEQ fraudulently concealed this breach from ALANIS for over two years and caused ALANIS to endure almost daily telephone harassment and insulting language regarding a false delinquency with her loan when it was not delinquent. WELLS FARGO also fraudulently concealed their PSA breach from ALANIS for over eight years and knew the ALANIS mortgage loan is not in the WELLS FARGO, As Trustee trust.**   HOMEQ also falsely apprised the Federal Reserve they paid the "2006 taxes" when ALANIS paid them to NEW CENTURY.   The  unauthorized diversion of ALANIS' principal and interest payments to other accounts and refusing to correct records after ALANIS made numerous attempts to notify the Defendants of their errors created a false delinquency status on which the foreclosure actions were based. Until 2015, ALANIS had no knowledge of the extent of the falsity of Defendants representations and omissions of material facts and ALANIS reasonably and justifiably relied upon the misrepresentations or omissions of Defendants, including that the ALANIS mortgage loan was a part of the WELLS FARGO, *As Trustee* Trust, when it was not.      The Defendants fraudulently concealed for close to five years, they never accelerated the ALANIS Note in 2011 and falsely represented compliance with the Tex. Property Code in judicial proceedings to support their counterclaim seeking a judicial foreclosure to the ALANIS Property. The Defendants also filed a fraudulent rescission.   The Defendants should be precluded by court order from asserting any privileges due to their egregious fraudulent acts.  ALANIS has been injured as a direct and proximate result of the foregoing fraud in an amount in excess of the minimum jurisdictional limits of this Court. Additionally, these Defendants acts were committed knowingly, willfully and wantonly, and accordingly, under Section 41.003 of the Texas Civil Practice and Remedies Code and the TEX PEN. CODE ANN. § 32.47, 41.008(c) for conduct described as a felony (ie forgery, securing execution of document by deception; fraudulent destruction, removal, or concealment of writing).  ALANIS is entitled to recover "uncapped" punitive damages in an amount to be determined by a trier of fact. ALANIS seeks recovery of those damages from Defendants, jointly and severally. Among other things, through the WELLS FARGO, *As Trustee*. OCWEN, MACKIE WOLF ZIENTZ & MANN and HOMEQ knowing fraudulent acts and refusal of to correct ALANIS' credit report, this caused ALANIS to lose the opportunity to obtain a 4% fixed rate loan and save approximately $400,000 in interest over the life of her loan.  Under Texas law. "[t]he elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the

Case Number: 2011CI02839                    Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AN[...]

1877

DOCUMENT SCANNED AS FILED

speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009). Fraudulent concealment under Texas law, the plaintiff must demonstrate: "'(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.'" *Id.* (quoting *Holland v. Thompson.* 338 S.W.3d 586, 596 (Tex. App.–El Paso 2010)).

9.6  **ACTION FOR BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH THE NEW CENTURY/ALANIS CONTRACT, CONVERSION – WELLS FARGO AND/OR OCWEN** (See "Action For Fraud")

ALANIS entered into written contractual agreements with NEW CENTURY MORTGAGE CORPORATION in June 2006 in connection with her Note and Deed Of Trust affecting her property commonly known as "13210 Hunters View, San Antonio, Bexar County, Texas". At all times, ALANIS performed or tendered performance pursuant to the Note and Deed Of Trust. *Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex. 1990) ("**It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach.**" (internal quotation marks omitted)). As evidenced by the forged 2.2.11 *Transfer Of Lien,* WELLS FARGO, *As Trustee* never held an interest in the ALANIS Note and Deed Of Trust allegedly until February 2, 2011 when WELLS FARGO, *As Trustee* allegedly executed a *Transfer of Lien* agreement with NEW CENTURY for consideration on that date. WELLS FARGO, *As Trustee* knew they never had a legal or equitable interest in the ALANIS Note and Deed of Trust between 2009 and January 13, 2011, the period they attempted multiple foreclosures to the ALANIS property and the period they also unlawfully collected the ALANIS mortgage payments. These fraudulent acts provide evidence WELLS FARGO, *As Trustee* tortiously interfered with the ALANIS Note and Deed Of Trust between 2009-2011. WELLS FARGO, *As Trustee* also filed in judicial proceedings, their WELLS FARGO, *As Trustee* pooling and servicing agreements dated 10.1.06 and 10.30.06 ("PSA") to show their interest in the ALANIS mortgage loan. The PSA provides evidence WELLS FARGO, *As Trustee* does not have a legal or equitable interest in the ALANIS Note and Deed of Trust because among other things, NEW CENTURY is not identified as a party to the WELLS FARGO, *As Trustee* Trust and NC CAPITAL is identified as the owner of all of the mortgage loans securitized in the WELLS FARGO, As Trustee Trust. **It is not disputed that a trustee under a deed of trust has a duty to act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust...this duty is breached when the trustee fails to comply strictly with the terms of the deed of trust.** *Rodriguez v Ocwen Loan Servicing LLC,* No C-07-471, 2008 WL 65405, at *4 (SD Tex Jan. 4, 2008). Alternatively, if WELLS FARGO, *As Trustee* had a legal or equitable interest in the ALANIS Note and Deed Of Trust, they failed in all respects to comply with the terms of the Deed Of Trust as evidenced by the false statements made by their loan servicer HOMEQ to the Federal Reserve in October 2009.

DOCUMENT SCANNED AS FILED

**9.7     ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – All Defendants Jointly and Severally [See Action For Fraud].**

As described herein, Defendants' intentional and knowing conduct was intended to and did inflict severe mental and emotional distress upon ALANIS leading to physical manifestations. Defendants knew that such conduct would subject ALANIS to sever emotional distress and ALANIS avers that Defendants' conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized society. Defendants' conduct proximately caused ALANIS' damages in that it caused her to suffer severe emotional distress. In particular, Defendants' conduct was the direct and proximate cause of severe mental pain and anguish. ALANIS' emotional distress has been so severe in that she has among other things, had to alter her lifestyle to address endless and protracted litigation matters, suffered from loss of sleep, loss of appetite, and nausea and is always in extreme fear of losing her property through the fraudulent acts of Defendants. In October 2015, ALANIS learned that while she has been fighting to protect her property rights from WELLS FARGO *As Trustee* unlawful judicial foreclosure counterclaims and false assertions made against ALANIS in connection with her mortgage loan for close to five years, WELLS FARGO, *As Trustee* perpetrated a knowing fraud because they disclosed in discovery they had no evidence to show full compliance with the Texas Property Code and as a result, the Defendants knew they never accelerated the ALANIS Note pursuant to the Texas Property Code requirements 51.002(d) and 51.0025 as falsely alleged in judicial proceedings. HOMEQ also falsely alleged they paid the ALANIS 2006 taxes when they did not. ALANIS paid the 2006 taxes in full to her original lender NEW CENTURY in 2006.

**9.8   ACTION FOR VIOLATION OF THE TEXAS FINANCE CODE Sec 392.101 MACKIE WOLF ZIENTZ & MANN (See "Action For Fraud")**

The Texas Finance Code Sec. 392.101.  BOND REQUIREMENT provides that:

(a) A third-party debt collector or credit bureau *may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond* issued by a surety company authorized to do business in this state as prescribed by this section. A copy of the bond must be filed with the secretary of state.

WELLS FARGO legal agent and debt collector law firm of MACKIE WOLF ZIENTZ & MANN was not bonded as a debt collector in the state of Texas.  While they mailed ALANIS a January 13, 2011 *Notice Of Acceleration* advising they were employed by their client "... *in collecting the indebtedness and enforcing the Deed Of Trust….This firm is a debt collector attempting to collect the debt...*", they have tried to avoid debt collector liability under the Tex Finance Code "Bonding Requirement", and maintain in summary judgment proceedings  "...*MWZM is not required to post a bond...*". ALANIS obtained evidence from the Texas Secretary Of State that MACKIE WOLF ZIENTZ & MANN was not compliant in 2011 with the Texas Finance Code Debt Collector bonding requirement, and as a result, are precluded from engaging in debt collection services in the State of Texas. ALANIS

has reported this information to the Texas Attorney General and a formal complaint is being sent to the State of Texas Sec. Of State.

**TEX FIN CODE Sec 392.101 BOND REQUIREMENT**

ALANIS obtained a certified document from the Texas Secretary Of State stating MACKIE WOLF ZIENTZ & MANN was not a bonded debt collector pursuant to this provision.

9.9    **ACTION FOR VIOLATION OF FEDERAL DEBT COLLECTION PRACTICES ACT (15 U.S.C. § 1692 et seq) – All Defendants Jointly and Severally (See "Action For Fraud")**

The Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA" and/or the "Act") imposes civil liability on debt collectors who engage in collection practices that are prohibited under the Act. 15 U.S.C. § 1692.    A debt collector, as defined by the Act, includes any person who "regularly collects ... debts owed or due or asserted to be owed or due another" in regard to consumer debts. §1692a(5). **The FDCPA is a strict liability statute and only one violation of the FDCPA is necessary to establish civil liability. See, e.g., *Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009) (stating that a false representation need not be intentional to be actionable under §1692e).** At all times relevant to ALANIS' claims herein, Defendants identified themselves through statements and/or conduct as "Debt Collectors" within the meaning of the Federal Debt Collection Practices Act.    Among other things, the Defendants made false representations in legal proceedings and/or government proceedings that they held a legal or equitable interest in the ALANIS Note and Deed, when they did not.    They also falsely represented in judicial proceedings compliance with statutory authority when pursuing a judicial foreclosure and falsely alleged ALANIS was delinquent with loan payments, insurance payments, tax payments for periods she was not.    The Defendants also alleged ALANIS engaged in criminal conduct (ie Bank Fraud) and refused to respond to multiple debt dispute/QWR letters and verify a debt.    They also made false and misleading statements in connection with ALANIS mortgage documents and created a false impression as to its source and that it was legal.    Under the Act, Defendants violated section 1692 et seq including but not limited to: 15 U.S.C. §1692a; 15 U.S.C. §1692(b)(2)(6); 15 U.S.C. §1692c(a)(2)(3)(b)(c); 15 U.S.C. §1692d(2), (5); 15 U.S.C. §1692e(1).(2)(A).(5),(7),(8), (9). (10). (13); 15 U.S.C. §1692f(1)(6)(A); 15 U.S.C. §1692g(a)(1-4)(b); 15 U.S.C. §1692h.    Any debt collector who fails to comply with the provisions of the FDCPA 1692 et seq is liable for: (1) actual damages; (2) costs; (3) reasonable attorney fees as determined by the court; and (4) up to $1.000 for each individual violation. §1692k et seq and (a)(1). (a) (2)(A), (3), b(1).

9.10   **ACTION FOR VIOLATION OF RESPA – OCWEN/HOMEQ/(See "Action For Fraud")**

12 USC Section 2605 governs the servicing of mortgage loans and the administration of escrow accounts. 12 USC Part 1024 is identified as using the Authority: 12 U.S.C. 2603—2605 of RESPA. Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by

the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).  "Whoever fails to comply with this section shall be liable to the borrower ... [for] any actual damages to the borrower as a result of the failure ..." 12 U.S.C. § 2605(f)(1)(A). Among other things, RESPA requires a servicer of any federally related mortgage loan to notify the borrower in writing of any assignment, sale or transfer of the servicing of the loan to any other person. (12 U.S.C. § 2605(b)(1).)  Of particular importance, this section also requires the servicer to respond to a qualified written request/error request for information from the borrower. (12 U.S.C. § 2605(e)(1).) RESPA defines a "qualified written request" as a written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." (12 U.S.C. § 2605(e)(1)(B).) "Not later than 60 days ... after the receipt from any borrower of any qualified written request," the servicer is required to provide the borrower with the requested information relating to the servicing of the loan or an explanation why such information is unavailable. (12 U.S.C. § 2605(e)(2). Under RESPA 12 USC Section 2609 Limitations On Requirement of Advance Deposits In Escrow Accounts, there are limits set on the amounts that a lender may require a borrower to put into an escrow account for purposes of paying taxes, hazard insurance and other charges related to the property. During the course of the loan, RESPA prohibits a lender from charging excessive amounts for the escrow account. Each month the lender may require a borrower to pay into the escrow account no more than 1/12 of the total of all disbursements payable during the year, plus an amount necessary to pay for any shortage in the account. In addition, the lender may require a cushion, not to exceed an amount equal to 1/6 of the total disbursements for the year.  **The Lender also has to comply with Force Placed Insurance requirements.  Annual statements must also provide detailed accounting of the escrowed funds and their corresponding disbursements.**  At closing, ALANIS signed a Non-Escrow Affidavit agreeing to pay her own tax and insurance and HOMEQ and OCWEN ignored the Non Escrow Affidavit and diverted the ALANIS "principal and interest" loan payments to pay the unlawful and "duplicate" escrow sums (ie ultra inflated force placed insurance and taxes) for periods ALANIS already paid and the WELLS FARGO, HOMEQ and OCWEN "duplicate" insurance and taxes exceeded RESPA "Escrow" guidelines. HOMEQ and OCWEN also intentionally and willfully ignored and never responded to multiple telephone calls and more than three qualified written requests by ALANIS and her attorney attempting to notify debt collector/loan servicer OCWEN and HOMEQ of loan servicing errors and requests for an accurate accounting and amount due on her loan.   RESPA provides a provision for "Intentional violations".  If any failure to comply is due to the intentional disregard of the requirement then, with respect to such failure and in the case of any penalty determined under subparagraph (A), the $100,000 limitation under paragraph (1) shall not apply.  Plaintiff avers that as a result of OCWEN intentionally ignoring her multiple Qualified Written Requests and failing to review her loan to determine they were unlawfully applying ALANIS timely remitted principal and interest loan payments to

DOCUMENT SCANNED AS FILED

"duplicate insurance and taxes" predominately caused the ALANIS loan to falsely appear delinquent when it was not and ultimately forced the ALANIS loan into an unlawful foreclosure action.    When HOMEQ admitted to the Federal Reserve to placing the ALANIS "September 2007" loan payment in a "suspense" account and failing to correct the same for two years, that loan payment misapplication caused every ALANIS loan payment thereafter to appear as a delinquent "late payment" for two years and opened the door to "false credit reporting". Further, when HOMEQ/OCWEN ignored ALANIS' qualified written requests and failed to fully investigate and correct the false ALANIS "late delinquent payment" reporting to the credit bureaus, ALANIS suffered "negative credit ratings on her credit reports and the inability to obtain and borrow another mortgage loan and other financing. ALANIS suffered actual damages in connection with losing the opportunity to obtain a reduced 4% fixed rate loan which would have saved her over $400,000 in interest over the life of the loan. "...*denial of credit because of the reporting of [delinquent charges] to credit reporting agencies*" can sustain a claim of actual damages[14] under RESPA..." *Cortez v. Keystone Bank*. No. 98-2457. 2000 WL 536666. **11-12. 2000 U.S. Dist. LEXIS 5705 at *39-40. ALANIS has suffered and seeks damages including but not limited to damaged credit, lost loan opportunities, physical manifestations and emotional harm. Defendant OCWEN engaged in a pattern and practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA, and ALANIS also seeks $1,000 in statutory damages per violation. RESPA provides for damages cumulative of and in addition to the other remedies sought. Plaintiff further asks for all damages permitted under RESPA at the maximum rate allowable by law and attorney fees under 12 U.S.C. § 2605(f)(3). The court in *Rawlings v. Dovenmuehle Mort., Inc., 64 F.Supp.2d 1156 (M.D.Ala.1999)* reviewed the language of RESPA and its legislative history in determining that Congress intended RESPA to be a remedial consumer protection statute. *Id. at 1166.* The court then analyzed cases interpreting other consumer protection statutes such as the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA") in concluding that actual damages under RESPA include recovery for mental anguish. *Id. at 1166-67.* The Court in *Cortez v. Keystone Bank, Inc.* No. 98-2457. 2000 WL 536666 (E.D.Pa. May 2, 2000) concluded that actual damages under RESPA "encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." Id. at *12 (citing Rawlings, 64 F.Supp.2d at 1164). Courts have specifically permitted RESPA plaintiffs to recover actual damages for the following: ""(1) out-of-pocket expenses incurred dealing with the RESPA violation including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience, such as time spent away from employment while preparing correspondence to the loan servicer, to the extent it resulted in actual pecuniary loss [.] (3) late fees and (4) **denial of credit or denial of access to full amount of credit line.**"" (R&R at 34-35) (citations omitted). *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010).

**9.11  ACTION FOR VIOLATION OF TEXAS FINANCE CODE, Chapter 392 et seq (TEXAS DEBT COLLECTION ACT-TDCA) – All Defendants Joint and Severally (See "Action For Fraud")**

In addition to compliance with the FDCPA, there is applicable state law which applies to debt collection activities. The FDCPA specifically states that it does not annul, alter, or affect or exempt any person subject to the provisions of the FDCPA from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of the FDCPA, and then only to the extent of the inconsistency. *See* 15 U.S.C. § 1692n FDCPA Section 816 Relation to State laws.   The Texas FAIR DEBT COLLECTION PRACTICES ACT, TEX. FINANCE CODE § 392.001, (TDCA, herein) is Texas' Consumer Protection statute and was enacted as a means of regulating the activities of consumer protection agencies within the state. The Texas Debt Collection Act ("TDCA", herein) covers any conduct by a person trying to collect a consumer debt. The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *report and recommendation adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012). Subsection 392.301(a)(8) of the TDCPA provides that: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ ... threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006). The Act defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection." *Id.* § 392.001(6). "Debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). Courts have held that debt collection can include "actions taken in foreclosing real property." *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV- 2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *see also Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012) **(holding that "attempted or actual foreclosure can violate [the] DCPA").**   In connection with the WELLS FARGO, *As Trustee* counterclaim, among other things, the Defendants made false and misleading representations in judicial and government proceedings that ALANIS was delinquent with loan payments, insurance and tax payments and/or they were not "Debt Collectors". They also pursued multiple judicial foreclosure actions against the ALANIS Deed Of Trust loan falsely alleging compliance with statutory authority when they were not compliant and/or failing to disclose to ALANIS the true mortgagee between 2010 and January 2011. They also fabricated loan records, ignored ALANIS timely remitted debt dispute letters and alleged ALANIS engaged in criminal conduct (ie Bank Fraud) failed to verify a debt. The Defendants produced no evidence of policies and procedures adopted to assert bona fide error. **Plaintiff alleges and will prove Defendants violated Sec 392.101; Sec. 392.202(a)-(e); Sec. 392.301(a)(2)(3)(8); Sec. 392.302(1)(2)(4); Sec. 392.303(a)(2),(3)(A); Sec. 392.304(a)(4),(8),(9),(10)(15)(19); and Sec. 392.306 of the TDCA.** Any debt collector who fails to comply with the provisions of the TDCA is liable for: (1) actual damages; (2) reasonable attorney fees as determined by the court; and (4) not less than $100 for each violation.

Defendants and/or Trustee is liable for the acts of Defendants in that at all relevant times. Defendants were agents for the Trustee in attempts to collect a debt.  In *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717 (5th Cir. 2013), this Court held that a mortgage servicer or assignee "qualifies as a debt collector under the . . . TDCA, irrespective of whether the [borrower's] mortgage was already in default at the time of its assignment." *Id.* at 723.  A debt collector may not use a fraudulent–deceptive–or misleading representation that employs [certain enumerated] practices . . . [including] misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code Ann. § 392.30e(a)(8).

**9.12   ACTION FOR UNREASONABLE COLLECTION EFFORTS – WELLS FARGO and OCWEN**
(See "Action For Fraud")

Defendants OCWEN/HOMEQ efforts to collect on Plaintiff's loans was unreasonable, particularly when they were collecting for WELLS FARGO, *As Trustee*. WELLS FARGO, *As Trustee* had no legal or equitable interest in the ALANIS Note and Deed of Trust between 2009 - and January 2011 and thereafter. Defendants engaged in a course of harassment and misinformation that was intentional, knowing and reckless, including threatening ALANIS with more than one foreclosure. After ALANIS notified HOMEQ and OCWEN of errors with her loan, they ignored all of her written communications and refused to correct her credit report and other loan errors. HOMEQ fraudulently concealed from ALANIS they placed her "September 2007" payment in a "SUSPENSE" account and did not correct the error for over two years when ALANIS was complaining of loan errors. HOMEQ harassed ALANIS weekly and falsely accused ALANIS of being delinquent with her loan. Only after ALANIS complained to the Federal Reserve that HOMEQ was not properly servicing her loan, HOMEQ finally admitted to the error two years later.  HOMEQ also continued to escrow ALANIS for insurance and 2006 taxes when ALANIS provided proof she had paid the "2006 taxes" and insurance in full. The loan servicers falsely claimed ALANIS did not make payments to justify profitable late fees, accruing interest on the same and unlawful escrow accounts.  ALANIS was injured by Defendants actions to ignore her complaints and among other things, lost the opportunity to obtain a 4% fixed rate loan to save over $400,000 in interest over the life of the loan. "Unreasonable collection is an intentional tort and Texas courts have found debt collection efforts tortious when lenders attempted to collect debts they were not owed." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. 2008). To be liable for unreasonable debt collection, the debt collector must employ "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (quotation marks and citations omitted).

**9.13   ACTION FOR ALL DEFENDANTS' NOTICE AND OPPORTUNITY TO CURE REQUIRED UNDER TEXAS PROPERTY CODE SECTION 51.002(d) –51.0025(2) WELLS FARGO, HOMEQ, OCWEN and MACKIE WOLF ZIENTZ & MANN**
(See "Action For Fraud")

The Defendants admitted after close to five years in October 2015, they had no records of "Service" of USPS certified mail of a December 8, 2010  *"Default/Intent To Accelerate"* notice mailed from the Defendants WELLS FARGO and/or OCWEN to ALANIS and which should have been mailed

DOCUMENT SCANNED AS FILED

prior to the January 13, 2011 *Acceleration* notice. As a result, the attempted foreclosure action was fatally defective and non compliant with the TEXAS PROPERTY CODE "notice and cure" requirements. Further, the Defendants falsely identified to ALANIS that WELLS FARGO, *as Trustee* was the "mortgagee" between 2010 and January 2011, when the February 2, 2011 *Transfer of Lien* provides prima facie evidence they were not. A judicial foreclosure action that is not compliant with the "service" and "mortgagee" notice requirements of the Texas Property Code renders an acceleration and corresponding rescission void as a matter of law.

9.14  **TEXAS CIVIL PRACTICE & REMEDIES CODE, Chapter 16. Limitations**
**§16.035. LIEN ON REAL PROPERTY and §16.004: FOUR-YEAR LIMITATIONS PERIOD**
(See "Action For Fraud")
(a) A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien **not later than four years after the day the cause of action accrues.**
(b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

The former loan servicer HOMEQ accelerated and initiated a foreclose action against the ALANIS Deed Of Trust loan in April 2010. The foreclosure was withdrawn without explanation and never rescinded. In pertinent part, §16.004 requires that  (a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues: (1) specific performance of a contract for the conveyance of real property; (2)  penalty or damages on the penal clause of a bond to convey real property; (3)  debt.   WELLS FARGO, *As Trustee* has no legal or equitable interest in the ALANIS Note and Deed Of Trust as demonstrated by the NEW CENTURY "August 2008" liquidation bankruptcy proceedings which prevented NEW CENTURY from executing a *Transfer of Lien* in 2011.   WELLS FARGO, *As Trustee* never properly accelerated the ALANIS Note in 2011 as falsely alleged in judicial proceedings for close to five years. Four years has passed since the April 2010 default cause of action accrued and WELLS FARGO, *As Trustee* is barred by limitations from judicially foreclosing on the ALANIS Deed Of Trust loan.

9.15  **ACTION FOR PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**
**All Defendants Jointly and Severally**
Interest at the statutory rate or at such other rate as is set by this Court. Plaintiff alleges and would prove that WELLS FARGO, OCWEN and MACKIE WOLF ZIENTZ & MANN has deprived her of the use of such funds that may be awarded as actual damages in this case. As a proximate result, she has been deprived of the opportunity to invest such funds and earn interest during the pendency of this case. Therefore, the Plaintiff claims an award of pre-judgment and post judgment interest according to law.

9.16  **ACTION FOR ATTORNEYS FEES (PRETRIAL, TRIAL, POST-TRIAL AND APPEAL)**
**/INVESTIGATIVE FEES- All Defendants Jointly and Severally**
Defendants' conduct as described herein and the resulting damage and loss to ALANIS has necessitated ALANIS' retention of multiple attorneys. ALANIS is entitled to recover from Defendants an additional sum to compensate ALANIS for a reasonable and necessary attorney fees in the preparation and prosecution of this action through trial, post trial attorney fees and appellate attorney

Case Number: 2011CI02839    Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AN...

1885

DOCUMENT SCANNED AS FILED

fees as well as reasonable fees for "investigative" paralegal work pursuant to TCPRC 12.006, RESPA and any and all necessary appeals to other courts.

**9.17  ACTION FOR AGENCY AND RESPONDEAT SUPERIOR-All Defendants**

ALANIS avers that all causes of action plead were committed by the Defendants through their agents and/or employees. For any act(s) specifically mentioned in connection with this Petition ALANIS avers that said acts were committed by agents or employees of the Defendants. Further, ALANIS avers that all intentional acts plead herein that were committed by the Defendants' agents or employees were committed at the direction of said Defendants and/or were later ratified by the same. For any acts committed by agents of the Defendants, ALANIS avers that said agents acted with the express or apparent authority of the Defendants.

**9.18  ELECTION OF REMEDIES**

ALANIS seeks to elect between remedies that permit the greater recovery.

**9.19  GROSS   NEGLIGENCE,   NEGLIGENT   MISREPRESENTATION,   FRAUDULENT MISREPRESENTATION, ILLEGAL CONVERSION– ALL DEFENDANTS**
For the reasons set forth in sections I-IX, Plaintiff seeks damages and judgment of the court.

**9.20  APPLICATION FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS:**

In June 2006, ALANIS obtained a mortgage loan from NEW CENTURY to purchase her property commonly known as "13210 Hunters View, San Antonio, Bexar County, Texas" and entered into agreements to comply with the loan terms contained in the Note, Deed Of Trust and Non Escrow Agreement.   To effectuate a legal and equitable interest in the ALANIS Note and Deed, WELLS FARGO, OCWEN and MACKIE WOLF ZIENTZ & MANN falsely represented to ALANIS between 2010 and January 2011 that WELLS FARGO, *As Trustee* was the ALANIS "mortgagee" when they knew those statements were patently false. The Defendants forged a *Transfer Of Lien* and purported to execute it with ALANIS' original lender NEW CENTURY in February 2011, approximately three years after NEW CENTURY was dissolved in bankruptcy and were without existence or authority to execute a Transfer of Lien in 2011. In 2012, after producing a bates stamped ALANIS NOTE with "No Indorsement" and subsequently having two different OCWEN Custodian of Records verify the truth of the ALANIS NOTE with "No Indorsement" (under jurat) in multiple summary judgment proceedings, in 2015, WELLS FARGO, *As Trustee* produced in discovery a new version of the ALANIS NOTE with a forged "Indorsement in Blank" with the NEW CENTURY VP Steve Nagy Stamp thereon. All of the summary judgment and other hearings in this cause relied on the ALANIS Note/Without an Indorsement thereon (Version-1) and the new ALANIS Note threatens every Court Order entered to be void as matter of law. In addition to their criminal acts, there is now a cloud on the ALANIS title. During the history of the loan, the Defendants tortiously interfered with the written agreements contained in the Deed Of Trust, Note, and Non Escrow. Among other things, the Defendants filed records in multiple judicial proceedings misrepresenting the character, extent, or amount of ALANIS' consumer debt in violation of

DOCUMENT SCANNED AS FILED

the Texas Finance Code, Sec. 393.304(8) after they admitted in a letter to the Federal Reserve they breached the Deed Of Trust and engaged in illegal accounting practices (i.e. placing ALANIS' "September 2007" loan payments in a "Suspense" account not authorized by the Deed Of Trust and causing ALANIS' loan to appear delinquent for over two years when it was not). HOMEQ admitted on correcting the error in August 2009. The Defendants also made multiple false; and misleading representations regarding the amount of the ALANIS' alleged delinquent debt to ALANIS and ALANIS timely disputed the alleged delinquency and the Defendants ignored all of the ALANIS timely remitted debt dispute/QWR letters. After providing proof of compliance with the loan in 2008 ALANIS relied on the HOMEQ representations that she should continue remitting payments while loan errors were being corrected when they were not. The loan servicer violated RESPA in connection with imposing "Ultra Inflated Force Placed Insurance" when ALANIS was carrying insurance on her property. ALANIS mailed multiple timely certified "debt dispute" letters to loan servicer agent OCWEN and legal agent and debt collector law firm of MACKIE WOLF ZIENTZ & MANN between 2010 and 2011 compliant with state and federal debt collection laws and the "debt dispute" letters were completely ignored and never responded to within "thirty days" by either OCWEN or MACKIE WOLF ZIENTZ & MANN as required by the Texas Finance Code, Sec. 392.202(a)(b) or within (5) days as required by RESPA.    There was no verification of the ALANIS debt.   Defendant (HOMEQ) filed their first fraudulent foreclosure action affecting ALANIS' property in April 2010 when accelerating the ALANIS note and notifying ALANIS of the same through a May 5, 2010 *Notice Of Substitute Trustee's Sale*. HOMEQ withdrew the foreclosure action and never recorded a rescission of the foreclosure as required by Texas Civil Practice & Remedies Code § 16.035(b) and after April 2010, HOMEQ returned most of ALANIS' 2010 timely remitted loan payments. HOMEQ was unable to foreclose because the original lender NEW CENTURY was dissolved through a "2008" Delaware liquidation bankruptcy proceeding. ALANIS was unaware that HOMEQ falsely represented to her that WELLS FARGO, *As Trustee* was the "mortgagee", when they were not. OCWEN was the successor to HOMEQ and also falsely identified WELLS FARGO, *As Trustee* as the "mortgagee" and ALANIS relied on the same and began remitting payments to OCWEN until they returned the same.   OCWEN'S debt collector law firm of MACKIE WOLF ZIENTZ & MANN mailed ALANIS an *Acceleration* notice on January 13, 2011 and also falsely identified WELLS FARGO, *As Trustee* as the "mortgagee" and ALANIS relied on the same. They also apprised ALANIS "*...This firm is a debt collector attempting to collect the debt ...collecting the indebtedness and enforcing the Deed Of Trust....*". ALANIS provided February 2015 deposition testimony she never received a "*Default/Intent To Accelerate*" ("notice to cure") as required by the Texas Property Code 51.002(d)(e). After close to five years of representing to courts that they properly accelerated the ALANIS Note, the Defendants admitted in a October 2. 2015 discovery response they did not have any records to prove they served ALANIS the required "certified notice" of the *Default/Intent To Accelerate* thereby rendering their 2011 acceleration and judicial foreclosure action

fatally defective and void as matter of law. Additionally, MACKIE WOLF ZIENTZ & MANN was not a bonded debt collector as required by the Texas Finance Code. Sec 392.101 and ALANIS submits. MACKIE WOLF ZIENTZ & MANN was prohibited by law from engaging in any debt collection and foreclosure activities in connection with her loan. In 2014, the Defendants filed the 10.21.14 *Affidavit of GINA FEEZER* containing patently false statements with exhibits attached thereto. The exhibits provided evidence of fabricated loan records in connection with the ALANIS loan payments and in violation of the Texas Finance Code, Sec. 393.304(8) and provided evidence they maintain "two" sets of books in loan servicing in violation of federal laws. Because of the "forged" instruments, breach of the PSA agreements, violation of federal and state consumer laws, knowingly deceptive acts and omissions of the Defendants described herein, the attempted foreclosure of the ALANIS Deed Of Trust loan is unlawful, invalid and subject to the statute of limitations. ALANIS further submits:

1. ALANIS alleges and would prove that HOMEQ accelerated the ALANIS note in April 2010 without authority from her dissolved original lender and failed to comply with the Texas Property Code 51.0025(2) "mortgagee identification" and *Texas Civil Practice & Remedies Code § 16.035(b)* requirements and did not "record" any foreclosure rescission in public records before the limitations deadline of April 2014 (four years after their first April 2010 *Acceleration* notice to ALANIS) and the real property lien and a power of sale to enforce the real property lien is now time barred. OCWEN falsely represented for close to five years in judicial proceedings that they accelerated the ALANIS Note in January 2011 pursuant to the Texas property Code 51.002(d) "service of notice of default" and 51.0025(2) "mortgagee identification" when they knew they did not. Both loan servicers initiated foreclosure actions in behalf of WELLS FARGO, *As Trustee* when WELLS FARGO, *As Trustee* was not the "mortgagee" of record. After April 2010, both loan servicers returned ALANIS' timely remitted loan payments and failed to respond within "thirty days" to her multiple debt dispute/RESPA letters and failed to verify a debt pursuant to debt collection laws. Therefore, ALANIS would show that she will probably prevail on the merits of her claims.

2. ALANIS alleges and would prove that WELLS FARGO, *As Trustee,* OCWEN and MACKIE WOLF ZIENTZ & MANN knowingly and intentionally clouded her title when falsely forging a *"Transfer of Lien"* in February 2011 using the original Lender (NEW CENTURY) as "Assignor" when NEW CENTURY was a dissolved corporation resulting from a "2008" Delaware liquidation bankruptcy proceeding. Pursuant to the PSA/ProSupp produced by the Defendants in a summary judgment proceeding, there is evidence of a defective chain of title which proves WELLS FARGO, *As Trustee* has no legal or equitable interest in the ALANIS Note and Deed Of Trust and lacks authority to foreclose.    Limitations also bars WELLS FARGO, *As Trustee* judicial foreclosure on the ALANIS Deed Of Trust loan as a matter of law.

3. ALANIS is entitled to injunctive relief under the principles of equity and the Texas Finance Code.

Sec 392.403 CIVIL REMEDIES (a)(1)(2) to prevent or restrain a violation of this chapter.

4.  No remedy at law is adequate to compensate ALANIS for a loss of her property while the issues of validity of the Defendants attempted foreclosure proceeding is being adjudicated. Plaintiff has shown  (1) there is a substantial likelihood that she will prevail on the merits;  (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to ALANIS outweighs the threatened harm to the Defendants'; and (4) the granting of the preliminary injunction will not disserve the public interest.  Therefore, ALANIS would suffer irreparable harm and injury if Defendants' attempted foreclosure actions and corresponding eviction proceedings are not enjoined.

### PRAYER AND RELIEF REQUESTED

PLAINTIFF NANCY ALANIS requests the Court grant the following relief:

a.  A temporary restraining order and after hearing, a temporary injunction, restraining and enjoining Defendants, their attorneys, agents, assigns, and all others acting on their behalf from proceeding to sell at any foreclosure sale, or otherwise dispossessing or taking any action to dispossess ALANIS from the real Property described as:

> *Lot 2, Block 6, New City Block 16984, HUNTERS CREEK NORTH, UNIT-3 in the City of San Antonio, Bexar County, Texas, according to the map or plat thereof recorded in Volume 8200, Pages 215-216, of the Deed and Plat Records of Bexar County, Texas*

And having a street address of 13210 Hunters View, San Antonio, Texas 78230;

b.  Setting a reasonable bond for issuance of the Temporary Restraining Order and Temporary Injunction;

c.  If necessary, enter an order directing Defendants to appear at a date and time certain to show cause, if any, why the temporary restraining order should not be continued in effect as a temporary injunction pending a trial on the merits;

d.  Permanently enjoining Defendants from filing any instruments regarding a beneficial interest in her property in the deed records of Bexar County, Texas identifying any other person or entity as a "mortgagee" or "beneficiary" of any mortgage in which such person or entity does not have a beneficial interest or other legally sufficient interest.

e.  After a jury trial on the merits and/or damages, permanently enjoining Defendants as set forth above; entering judgment for ALANIS and additionally, enter a permanent injunction restraining and enjoining Defendants permanently from taking any action whatsoever with regard to the posting of

notice or otherwise exercising any of the remedies regarding sale or other disposition of the property

or in any manner interfering with the Plaintiff's ownership possession and/or property rights in said

property pending further order of the court.

f.    Removing cloud on title, declaring the rights of the parties and decreeing free and clear title to the

property to be in ALANIS; and awarding ALANIS her damages suffered;

g.    Awarding ALANIS statutory and actual damages pursuant to her election of remedy claims including

but not limited to: RESPA, TDCA, TCPRC 12.002 and "uncapped" exemplary damages to which she

shall prove herself entitled under the law;

h.    Awarding ALANIS her costs of court, pre/post judgment interest, reasonable and necessary attorney

fees (pre-trial, trial, post trial and appellate fees, investigative fees, paralegal fees) and all other and

further relief at law or in equity to which she shall prove herself justly entitled.


Respectfully Submitted,

/s/ Philip M Ross
**PHILIP M ROSS**
SBN 17304200
1006 Holbrook Road
San Antonio, Texas 78218
Tel: (210) 326.2100
E-Mail/Fax: ross_law@hotmail.com
*Attorney for Nancy Alanis, Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 20th day of October 2015, a true and correct copy of the foregoing
document was delivered via electronic filing, E-mail, certified mail, return receipt requested and/or facsimile
transmission to the following parties:

| | |
|---|---|
| **JEFFREY A. HILLER** | **MARK CRONENWETT** |
| SBN 00790883 | SBN 00787303 |
| Cacheaux Cavazos & Newton | Mackie Wolf Zientz & Mann, PC |
| 333 Convent St. | Pacific Center 1, Suite 660 |
| San Antonio, Texas 78205 | 14180 North Dallas Parkway |
| 210.222.1642 | Dallas, Texas 75254 |
| 210.222.2453 *(Facsimile)* | 214.635.2650 |
| *Attorney for Defendants* | 214.635.2686 *(Facsimile)* |
| WELLS FARGO BANK NATIONAL ASSOCIATION | *Attorney for Defendants* |
| OCWEN LOAN SERVICING, LLC | WELLS FARGO BANK NATIONAL ASSOCIATION |
| MACKIE WOLF ZIENTZ & MANN, PC | OCWEN LOAN SERVICING, LLC |
| | MACKIE WOLF ZIENTZ & MANN, PC |

/s/ Philip M Ross
**Philip M Ross**

Case Number: 2011CI02839                    Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AND

1890

DOCUMENT SCANNED AS FILED

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS<br>*Plaintiff*<br>VS<br>WELLS FARGO BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR<br>THE POOLING AND SERVICING<br>AGREEMENT DATED AS OF<br>OCTOBER 1, 2006 SECURITIZED<br>ASSET BACKED RECEIVABLES<br>LLC TRUST 2006-NC3<br>MORTGAGE PASS-THROUGH<br>CERTIFICATES SERIES 2006 NC3;<br>and<br>MACKIE WOLF ZIENTZ & MANN,P.C.<br>(As Debt Collectors); and<br>HOMEQ SERVICING CORPORATION;<br>and<br>OCWEN LOAN SERVICING, LLC;<br>*Defendants.* | § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF BEXAR COUNTY, TX<br><br>45TH JUDICIAL DISTRICT<br><br><br><br><br>BEXAR COUNTY, TEXAS |

**PLAINTIFF'S VERIFICATION IN SUPPORT OF
SEVENTH AMENDED ORIGINAL PETITION AND
APPLICATION FOR INJUNCTIVE RELIEF**

**STATE OF TEXAS**
**COUNTY OF BEXAR**

BEFORE ME, The undersigned authority, on this day personally appeared NANCY ALANIS, known to me to be the person whose name is subscribed to the following *Plaintiff's Verified Seventh Amended Original Petition And Application For Injunctive Relief* and who being duly sworn by me, upon her oath stated as follows:

"...My name is NANCY ALANIS. I am above the age of 21 and I am competent to make this verification. I am the Plaintiff in this cause of action and have personal knowledge of all of the facts set forth herein which I can affirm on information and belief, the facts are true and correct.

In further support of this verification, I have personal knowledge that the exhibits referenced herein are true and correct and have been produced in discovery by the Plaintiff and or Defendants OCWEN and WELLS FARGO and/or filed in judicial proceedings and/or recorded in public records and the referenced exhibits are incorporated herein by reference for all purposes as if repeated in full verbatim...."

NANCY ALANIS, *Affiant*

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned authority on this __19__ day of October, 2015 to certify which witness my hand and official seal of office.

NOTARY PUBLIC
IN AND FOR THE STATE OF TEXAS

Case Number: 201000889

Document Type: PLAINTIFFS VERIFIED SEVENTH AMENDED ORIGINAL PETITION AND

8

DOCUMENT SCANNED AS FILED

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, MARY ANGIE GARCIA, BEXAR COUNTY DISTRICT
CLERK, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD NOW IN MY LAWFUL CUSTODY.  WITNESS
MY OFFICIAL HAND AND SEAL OF OFFICE ON THIS:

*July 11, 2019*

MARY ANGIE GARCIA
BEXAR COUNTY, TEXAS

By:

IRMA K TORRES, Deputy District Clerk

*(NOT VALID WITHOUT THE CLERK'S ORIGINAL SIGNATURE.)*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | §<br>§<br>§ | Case No. 07-10416 (BLS) |
| Debtors. | §<br>§ | (Chapter 11) |
| | § | |
| NANCY K ALANIS | §<br>§ | |
| *Movant* | §<br>§ | |
| v. | §<br>§ | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| And | §<br>§ | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
(i)   FILE ADVERSARIAL COMPLAINT;
(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
(iii)  OBTAIN RELATED RELIEF**

# Ex-20

1

1                 **REPORTER'S RECORD?**

2               VOLUME 1 OF 2 VOLUMES

3          TRIAL CAUSE NO. 2011-CI-02839

4   NANCY ALANIS              § IN THE DISTRICT COURT
           Plaintiff,        §

5                         §
  VS.                    § BEXAR COUNTY, TEXAS

6                         §
  WELLS FARGO BANK NATIONAL     §

7   ASSOCIATION, AS TRUSTEE FOR   §
  THE POOLING AND SERVICING     §

8   AGREEMENT DATED AS OF        §
  OCTOBER 1, 2006 SECURITIZED   §

9   LLC TRUST 2006-NC3          §
  MORTGAGE PASS-THROUGH       §

10   CERTIFICATES SERIES 2006 NC3;  §
  and                     §

11                         §
  MACKIE WOLF ZIENTZ & MANN, P.C. §

12   (As Debt Collectors); and     §
                        §

13   HOMEQ SERVICING CORPORATION;   §
  and                     §

14                         §
  OCWEN LOAN SERVICING, LLC;     §

15        Defendants.       §45TH JUDICIAL DISTRICT

16   ―――――――――――――――――――――――

17                **PRETRIAL MOTION**
      **DEFENDANTS' MOTION FOR CONTINUANCE**

18   ―――――――――――――――――――――――

19         On the 29th day of October, 2015, the following

20   proceedings came on to be heard in the above-titled and

21   numbered cause before the HONORABLE CATHLEEN M. STRYKER,

22   Judge Presiding, held in the 224th District Court,

23   San Antonio, Bexar County, Texas:

24         Proceedings reported by computerized stenotype

25   machine.   **ORIGINAL**

2

1            **A P P E A R A N C E S**

2    **MR. PHILIP M. ROSS**
     SBOT NO. 17304200
3    LAW OFFICE OF PHILIP M. ROSS
     1006 Holbrook Road
4    San Antonio, Texas 78218
     Phone:   (210)326-2100
5           ATTORNEY FOR THE PLAINTIFF

6

7             -  AND  -

8

9    **MR. JEFFREY A. HILLER**
     SBOT NO. 00790883
10   CACHEAUX CAVAZOS & NEWTON
     333 Convent Street
11   San Antonio, Texas 78205
     Phone:   (210)222-1642
12          ATTORNEY FOR THE DEFENDANTS

13

14

15

16

17

18

19

20

21

22

23

24

25

3

# CHRONOLOGICAL INDEX

## PRETRIAL MOTION

## VOLUME 1

*29 OCTOBER 2015*

|                                              | PAGE | VOL. |
|----------------------------------------------|------|------|
| Caption .....................................1 | 1 |
| Appearances ...............................2 | 1 |
| Chronological Index ........................3 | 1 |
| Exhibits Offered by the Respondent..........4 | 1 |
| MORNING SESSION ...........................5 | 1 |
| Opening Argument by Mr. Hiller .............5 | 1 |
| Opening Argument by Mr. Ross ..............12 | 1 |
| Court's Ruling ...........................22 | 1 |
| Conclusion of Proceedings ................25 | 1 |
| Court Reporter's Certificate ..............26 | 1 |

4

# CHRONOLOGICAL INDEX (CONTINUED)

## PRETRIAL MOTION

## VOLUME 1

*29 OCTOBER 2015*

### EXHIBITS OFFERED BY THE RESPONDENT

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---------|-------------|---------|----------|------|
| A | NOTICE OF SUBSTITUTE TRUSTEE'S SALE | 13 | | 1 |
| B | NOTICE OF ACCELERATION OF LOAN MATURITY | 13 | | 1 |
| C | Transfer of Lien | 13 | | 1 |
| D | AFFIDAVIT OF GINA FEEZER | 13 | 16 | 1 |
| E | DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S 9.4.15 DISCOVERY REQUESTS | 13 | | 1 |
| F | COURT DOCUMENT FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | 13 | | 1 |
| G | DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST SET OF WRITTEN INTERROGATORIES | 13 | | 1 |
| H | PLAINTIFF'S VERIFIED SEVENTH AMENDED ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF | 13 | | 1 |