5

1        **OCTOBER 29, 2015**

2        **MORNING SESSION:   9:08 A.M.**

3        *(Open court)*

4        THE COURT:   Now comes Cause

5   No. 2011-CI-02839, *Alanis v. Wells Fargo Bank*.

6        Counsels, introduce yourselves for the

7   record, please.

8        MR. HILLER:   Thank you, Your Honor.

9   Jeffrey Hiller for the Defendants Wells Fargo Bank and

10   Ocwen Loan Servicing.

11        THE COURT:   You are the Movant in this

12   motion for continuance?

13        MR. HILLER:   Yes, Your Honor, I am.

14        THE COURT:   Counsel.

15        MR. ROSS:   Philip M. Ross representing

16   Nancy Alanis.

17        THE COURT:   Okay.

18        MR. ROSS:   We're the Respondent in this

19   motion for continuance.

20        THE COURT:   Okay.  You may proceed.

21        **OPENING ARGUMENT**

22        MR. HILLER:   So, Your Honor, there's been

23   several continuances in this case, the most recent which

24   was back in May 6th of this year when Ms. Alanis

25   requested a continuance and was granted a continuance.

19

1           MR. ROSS:  -- it's on the very front of the

2   black binder I gave you.

3           THE COURT:  Okay.

4           MR. ROSS:  It's Plaintiff's objection -- or

5   oppositions and objections to the same motion --

6           THE COURT:  Page what?  I'm sorry.

7           MR. ROSS:  It's page 6.

8           THE COURT:  Yes, sir.

9           MR. ROSS:  The only ground for a continuance

10  that was stated by the Defendants is that they were

11  surprised by the new claim of fraudulent concealment, and

12  if you go through this sixth amended petition, you will

13  see more than a dozen references to claims related to the

14  statement of fact that Wells Fargo knowingly and

15  intentionally, fraudulently concealed a 2008 limited power

16  of attorney, and that's page 17 of this sixth amended

17  petition, paragraph 610.

18           If you just go through that list, I counted

19  14 references to fraudulent concealment, and the

20  disclosure by the Defendants on October 2nd is merely

21  one more instance of fraudulent concealment, because back

22  in the year 2010, Wells Fargo filed a notice of substitute

23  trustee's deed at a time when they were not the record

24  owner of any interest in this property.

25           THE COURT:  Those claims are what

1  Judge Saldaña said are gone, so now we've got fraudulent

2  concealment claims regarding acceleration, regarding the

3  pooling agreement, and I guess --

4          MR. HILLER:  The assignment.

5          MR. ROSS:  Also, we just received the

6  certified evidence that the original mortgagee was

7  liquidated in bankruptcy, and what Wells Fargo did, after

8  they realized that they did not have record title to the

9  property, which they realized that apparently after they

10  served a notice of default -- or attempted to serve a

11  notice of default, and so they quickly filed a transfer of

12  lien in February 2nd, 2011, which purported to be a

13  transfer of lien from New Century Mortgage Company

14  directly to Wells Fargo as trustee of a pooling and

15  servicing agreement, which was five years after the

16  cut-off date for the pooling and servicing agreement, and

17  also about three years after New Century Mortgage Company

18  had been liquidated in bankruptcy.

19          When we discovered evidence, which was not

20  revealed to us by the Defendants, that New Century

21  Mortgage Company had been bankrupted and all of their

22  assets had been transferred to a liquidating trust, and --

23          THE COURT:  Are those claims still part of

24  this lawsuit?

25          MR. ROSS:  We believe they are.  They are in

1  our seventh amended petition which we amended after

2  Judge Saldaña ruled.

3          THE COURT:  It looks like you need to go

4  back Judge Saldaña.

5          MR. HILLER:  We do not.  Those have been

6  stricken, and I'll tell you why --

7          THE COURT:  In any event, he's claiming they

8  are still there, you are claiming they are stricken, so

9  obviously, that needs to get straightened out somehow --

10          MR. HILLER:  Well, it --

11          THE COURT:  -- before you go to trial.

12  Before the jury charge gets submitted to the jury,

13  somebody has got to figure out what the live claims are.

14          MR. ROSS:  Judge Saldaña advised that we

15  could file a judgment to set aside her order, granting

16  their special exceptions, and ask her to reconsider that

17  matter which --

18          THE COURT:  But you haven't done that?

19          MR. ROSS:  We intend to.  We haven't really

20  had much time.  I think it's been a week since she ruled.

21          THE COURT:  I think you need a continuance

22  in this case because you don't even have -- you don't even

23  have an agreement as to what causes of action are pled or

24  are live that are going to go to trial, and you've got an

25  MSJ that you're going to try to get heard on days before

22

1  trial on a claim that just got pled.  I don't see how this

2  case can go to trial on November 16th.

3          MR. ROSS:  We believe we're ready to go to

4  trial because Wells Fargo cannot prove any interest in

5  this property.  Therefore, they have no right to

6  foreclose, and we've got evidence of fraudulent

7  concealment and violations of the Texas Declaration Act.

8                    **COURT'S RULING**

9          THE COURT:  I'm going to continue this case

10  briefly so that you can get your pleadings in order and

11  get your MSJ heard, if that's what you are going to do.

12                    January, February?

13          MR. HILLER:  Judge, it would have to be --

14  it would have to be February.  I can't do it in January.

15          THE COURT:  February 22nd?

16          MR. ROSS:  Would that be a special trial

17  setting?  We have a special setting for November 16th

18  because we have an expert that's coming in from --

19          THE COURT:  Sure, that's fine.

20          MR. ROSS:  -- New Jersey.

21          THE COURT:  February 22nd, March 7th?

22  What's good?

23          MR. HILLER:  Can I make a quick call,

24  Your Honor, because I have an out-of-town cocounsel?  Let

25  me just make sure that neither of those conflict.  I will

26

1   THE STATE OF TEXAS   )

2   COUNTY OF BEXAR        )

3            I, Maria E. "Mary Helen" Vargas, Official Court

4   Reporter in and for the 224th District Court of Bexar

5   County, State of Texas, do hereby certify that the

6   foregoing contains a true and correct transcription of all

7   portions of evidence and other proceedings requested in

8   writing by counsel for the parties to be included in this

9   volume of the Reporter's Record, in the above-styled and

10  numbered cause, all of which occurred in open court or in

11  chambers and were reported by me.

12            I further certify that this Reporter's Record of

13  the proceedings truly and correctly reflects the exhibits,

14  if any, admitted or tendered in an offer of proof.

15            I further certify that the total cost for the

16  preparation of this Reporter's Record is $160.00 was paid

17  by Nancy Alanis.

18            WITNESS MY OFFICIAL HAND this the 13th day of

19  November, 2015.

20            Maria E. "Mary Helen" Vargas, Texas CSR 3551
            Expiration Date:  12/31/16
21          Official Court Reporter, 224th District Court
            Bexar County, Texas
22          100 Dolorosa Street
            San Antonio, Texas 78205
23          Phone:  (210)335-2138

24

25

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.*,<br><br>Debtors. | § § § § | Case No. 07-10416 (BLS)<br><br>(Chapter 11) |
| NANCY K ALANIS<br><br>*Movant*<br><br>v.<br><br>Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>And<br><br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>*Respondents* | § § § § § § § § § § § § § § § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)   FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii) OBTAIN RELATED RELIEF**

# Ex-21

1

2                      REPORTER'S RECORD

3                   VOLUME 2 OF 3 VOLUMES

4         COURT OF APPEALS NO. 04-16-00121 FILED IN
          4th COURT OF APPEALS
          SAN ANTONIO, TEXAS

5         TRIAL COURT CAUSE NO. 2011-CI-02899 02/28/2017 9:22:15 AM
          KEITH E. HOTTLE
          Clerk

6

   NANCY ALANIS              ) IN THE DISTRICT COURT
7                            )
   VS.                       ) 45TH JUDICIAL DISTRICT
8                            )
   WELLS FARGO BANK NATIONAL )
9  ASSOCIATION, ET AL        ) BEXAR COUNTY, TEXAS

10

11  ------------------------------------------------

12        PLAINTIFF'S PLEA TO THE JURISDICTION

13      PLAINTIFF'S MOTION TO ABATE AND/OR DISMISS

14         PLAINTIFF'S MOTION FOR SANCTIONS

15                   FEBRUARY 17, 2016

16                 VOLUME 2 OF 3 VOLUMES

17  ------------------------------------------------

18       On the 17th day of February 2016, the following

19  proceedings came on to be heard in the above-entitled and

20  numbered cause before the HONORABLE STEPHANI WALSH, Judge

21  Presiding, held in the 45th District Court, San Antonio,

22  Bexar County, Texas:

23       Proceedings reported by machine shorthand.

24

25

                   JUDITH A. STEWART, C.S.R.
                     45TH DISTRICT COURT

335

DOCUMENT SCANNED AS FILED

2

```
1
2                        A P P E A R A N C E S :
3
4   MS. NANCY ALANIS
5        FOR THE PLAINTIFF, PRO SE
6
7   MR. JEFFREY HILLER
         SBOT No.:   00790883
8        CACHEAUX, CAVAZOS & NEWTON, LLP
         333 Convent Street
9        San Antonio, Texas 78205-1348
         Phone:   (210)222-1642
10
11  MR. MARK DOUGLAS CRONENWETT
         SBOT No.:   0078303
         MACKIE WOLF ZIENTZ & MANN, PC
12       14160 N. Dallas Parkway, Suite 900
         Dallas, Texas  78254
13       Phone:   (214)635-2670
14       ATTORNEYS FOR DEFENDANT, WELLS FARGO BANK NATIONAL
    ASSOCIATION, ET AL
15
16
17
18
19
20
21
22
23
24
25
```

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

3

# CHRONOLOGICAL INDEX

## VOLUME 2 OF 3 VOLUMES

### FEBRUARY 17, 2016

|  | PAGE | VOL |
|---|---|---|
| CAPTION .......................................... | 1 | 2 |
| APPEARANCES ....................................... | 2 | 2 |
| CHRONOLOGICAL INDEX ............................... | 3 | 2 |
| REPORTER'S CERTIFICATE ........................... | 75 | 2 |

EXHIBIT INDEX

| PLAINTIFF'S EXHIBITS NO. | DESCRIPTION | OFFER/ADMIT | VOL |
|---|---|---|---|
| A | 8.20.15 Expert Report Affidavit of Daniel Castro | 9/39 | 2 |
| B | August 2008 Liquidation Bankruptcy New Century | 9/39 | 2 |
| C | 2.2.11 Transfer of Lien Wells Fargo/New Century | 9/39 | 2 |
| D | 4.23.12 Wells Fargo Bank as Trustee Ocwen Interrogatory No. 2 Response | 9/39 | 2 |
| E | 10.19.15 Declaration of Gina Feezer | 9/39 | 2 |
| E(1) | 10.21.14 Affidavit of Gina Feezer | 9/39 | 2 |
| F | 4.4.12 Consent Judgment & Excerpts | 9/39 | 2 |
| G | 11.12.15 Email from National Mortgage Settlement Oversight to Alanis | 9/39 | 2 |
| H | 11.13.15 Email from National Mortgage Settlement Oversight to Alanis | 9/39 | 2 |
| I | 12.11.15 Alanis to CFPB | 9/39 | 2 |
| J | Alanis Complaint Received by OCC | 9/39 | 2 |

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

4

| NO. | | DESCRIPTION | OFFER/ADMIT | VOL |
|---|---|---|---|---|

EXHIBIT INDEX
PLAINTIFE'S EXHIBITS
VOL

| | | | OFFER/ADMIT | VOL |
|---|---|---|---|---|
| 1 | K | Alanis Complaint Received by AG | 9/39 | 2 |
| 2 | L | Alanis Complaint Received by CFPB | 9/39 | 2 |
| 3 | M | 10.13.15 Judge Saldana Order<br>Special Exceptions | 9/39 | 2 |
| 4 | N | 8.19.15 Wells Fargo Amended<br>Special Exceptions | 9/39 | 2 |
| 5 | O | 9.29.15 Wells Fargo Bank, NA Motion to<br>Quash/Protective Order | 9/39 | 2 |
| 6 | P | Not Included | 9/39 | 2 |
| 7 | Q | 12.7.15 Letter from Law Offices<br>of Morris Lang | 9/39 | 2 |
| 8 | R | 12.14.15 Letter from Mackie Wolf<br>Zientz & Mann | 9/39 | 2 |
| 9 | S | 2.10.15 Second Amended Counterclaim by<br>Defendant/Counter-Plaintiff Wells Fargo<br>Bank, NA, as Trustee | 9/39 | 2 |
| 10 | T | 2.3.16 Affidavit of Nancy Alanis | 9/39 | 2 |
| 11 | U | 6.17.15 US Attorney Email<br>4.4.12 Consent Judgment, Wells Fargo<br>Bank, NA | 9/39 | 2 |
| 12 | V | 9.15.06 Letter from New Century provided<br>to Alanis in 2007 with her Note<br>and Deed of Trust | 9/39 | 2 |
| 13 | W | April 2010 Notice to Alanis of Wells Fargo<br>Foreclosure Sale | 9/39 | 2 |
| 14 | X | January 13, 2011 Notice of Acceleration<br>and Notice of Foreclosure Sale | 9/39 | 2 |
| 15 | Y | 9.4.15 Defendants Objections and Responses<br>to Plaintiff's 9.4.15 Discovery Requests | 9/39 | 2 |

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

5

| | EXHIBIT INDEX | | |
|---|---|---|---|
| | PLAINTIFF'S EXHIBITS | OFFER/ADMIT | VOL |
| | NO.            DESCRIPTION | | |
| Z | Certified Alanis Qualified Written Request Debt Dispute Letters by Attorney Loren Peters Alanis | 9/39 | 2 |
| AA | 1.2.MSJ Gina Feezer Declaration | 9/39 | 2 |
| BB | 5.4.15 Transcript Excerpt Mark Cronenwett | 9/39 | 2 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | FEBRUARY 17, 2016 |
| 3 | (9:21 a.m. before the Court.) |
| 4 | THE COURT:  Calling Cause No. 2011-CI-02839, |
| 5 | filed in the 45th District Court, styled Nancy Alanis versus |
| 6 | Wells Fargo Bank National Association. |
| 7 | Counsel and parties, make your announcement |
| 8 | for the record. |
| 9 | MR. HILLER:  Judge, Jeffery Hiller and Mark |
| 10 | Cronenwett for the defendants. |
| 11 | THE COURT:  Whose motion is it? |
| 12 | MS. ALANIS:  It is my motion, Your Honor. |
| 13 | THE COURT:  Okay.  Why don't you start. |
| 14 | MS. ALANIS:  I'm Nancy Alanis and I'm the |
| 15 | plaintiff in Cause No. 2011-CI-02839. |
| 16 | I have filed -- as a preliminary matter, I |
| 17 | wanted to let you know that I have filed a Plaintiff's Nancy |
| 18 | Alanis Verified Plea to the Jurisdiction based on New |
| 19 | Evidence, Motion to Dismiss; and alternatively, Motion to |
| 20 | Abate. |
| 21 | I also filed a motion for -- a Motion for |
| 22 | Litigation and Discovery Abuse Sanctions.  And also Response |
| 23 | to the Defendant's Motion for Partial Summary Judgment. |
| 24 | I did tell Judge Canales that I was asking for |
| 25 | four hours and -- because I do have the two motions, the |

DOCUMENT SCANNED AS FILED

1   result of New Century being dissolved in bankruptcy that all

2   of those debtors got a windfall, and all of them suddenly

3   didn't have to pay the balance of their notes.  That's your

4   position, correct?

5             MS. ALANIS:  No, Your Honor.  It's not quite

6   my position --

7             THE COURT:  Right.

8             MS. ALANIS:  -- because there's other evidence

9   in the record where -- where the different entities obtained

10  some of the mortgages of New Century, and so that is

11  incorrect.  And I think my loan fell through the cracks

12  based on the evidence that I am trying to admit today for

13  your review.  And you'll see that clearly the Transfer of

14  Lien is a forgery because New Century didn't exist and --

15  you know, as of August 1, 2008.

16             And additionally, Alan Jacobs became the sole

17  liquidation trustee and the individual to handle all related

18  matters for the debtors.  And so if that transfer of lien

19  was a valid transfer of lien, it should have Alan Jacobs as

20  the liquidating trustee on it and not somebody acting as the

21  attorney in fact for New Century Mortgage Corporation who is

22  now a dissolved entity and who doesn't exist.

23             THE COURT:  And if Alan Jacobs, as trustee,

24  allowed or authorized Christine Carter to execute documents,

25  would you have any complaint about what Mr. Jacobs does as a

DOCUMENT SCANNED AS FILED

1  trustee?

2           MS. ALANIS:  Well, Your Honor, the problem is,

3  I propounded these discovery requests on Wells Fargo.  I've

4  asked --

5           THE COURT:  Answer my question.

6           MS. ALANIS:  Okay.  If --

7           THE COURT:  If Alan Jacobs is a trustee, do

8  you not agree that he has the power to dissolve and take

9  care of the management of the assets obtained in bankruptcy,

10  correct?

11           MS. ALANIS:  He does.

12           THE COURT:  That's his job.

13           MS. ALANIS:  Yes.

14           THE COURT:  And he can do that in any manner

15  he wants, correct?

16           MS. ALANIS:  That's correct.

17           THE COURT:  So if he chose Christine Carter to

18  execute documents three years down the road --

19           MS. ALANIS:  I've contacted --

20           THE COURT:  -- what's your complaint?

21           MS. ALANIS:  I've contacted the bankruptcy

22  court and there is no evidence in the bankruptcy court in

23  Delaware that my note was -- anything related to my note was

24  addressed in the bankruptcy proceeding.  I've done

25  exhaustive research and I purchased these records and this

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

1   is what I was told.

2           THE COURT:  So your note is not listed as an

3   asset in New Century's bankruptcy?

4           MS. ALANIS:  There was no -- when I contacted

5   the bankruptcy court --

6           THE COURT:  That's a yes or a no.  Is your

7   note or your account number listed as an asset on New

8   Century's list of assets that they filed in the bankruptcy?

9           MS. ALANIS:  I was told by a liquidating

10  trustee it was on a list -- it was on a list -- of the

11  bankruptcy trustee's list, but I was not ever able to get

12  that form.

13          THE COURT:  So you've been told that your note

14  was listed as an asset of New Century?

15          MS. ALANIS:  Yes.

16          THE COURT:  And so it went into bankruptcy,

17  correct?

18          MS. ALANIS:  That's correct.

19          THE COURT:  And so then is your argument that

20  your note never made it out of bankruptcy?

21          MS. ALANIS:  The individual who was in charge

22  of the liquidating -- there was a separate entity handling

23  matters related to New Century loans.  And that individual

24  could not -- not trace where my loan ended up.  And I was

25  not able to get anything, and I did try.

DOCUMENT SCANNED AS FILED

1   obtained after February 18th, 2015.

2        MS. ALANIS:  That is correct, Your Honor.

3        THE COURT:  Back to your affidavit of Alan

4   Jacobs, trustee.  I've read it and I don't see anything in

5   it which indicates Mr. Jacobs doesn't have authority over

6   your note.  By your testimony, you said your note was --

7        MS. ALANIS:  Yeah, I'll show you, Your Honor.

8        THE COURT:  Okay.  Point me to the page.

9        MS. ALANIS:  Okay.  If you look at paragraph

10  number two, the debtors filed the Second Amended Joint

11  Chapter 11 Plan of Liquidation.  Paragraph number four, the

12  court entered the order.  Paragraph number five --

13        THE COURT:  Right.  I said that earlier.

14        MS. ALANIS:  Okay.

15        THE COURT:  You agreed with me.

16        MS. ALANIS:  Okay.  And then on number six,

17  pursuant to the plan of the effective date, New Century

18  Liquidating Trust --

19        THE COURT:  Ms. Alanis, you are regurgitating

20  to me something I pointed out to you.

21        MS. ALANIS:  Right.

22        THE COURT:  Show me where Mr. Jacobs does not

23  have authority over your note.

24        MS. ALANIS:  I can only show you where he does

25  have, and it's paragraph number seven.

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

1        THE COURT:  We agreed that he has jurisdiction

2   over your note.  Okay?  You -- I asked you that question and

3   you agreed.  Correct?

4        MS. ALANIS:  Yes, Your Honor.

5        THE COURT:  All right.  So then why doesn't

6   Mr. Jacobs after the effective date of August 1st, 2008,

7   have the authority to do whatever he feels necessary with

8   regards to your note, including allow Ms. Christine Carter

9   to execute the documents she did?

10        MS. ALANIS:  Because I contacted the

11  bankruptcy court and they told me -- when I provided them

12  the Transfer of Lien, they told me that all --

13        THE COURT:  Okay.  "They," that's hearsay.

14  What evidence?

15        MS. ALANIS:  I'm sorry.

16        THE COURT:  What evidence do you have?  I

17  don't want to hear "they told me".

18        MS. ALANIS:  The evidence is in paragraph

19  number 14.  It says pursuant to the terms of the plan, all

20  notes, agreements, and securities evidencing claims and

21  interests and the rights thereunder of the holders thereof

22  were canceled and deemed null and void and of no further

23  force and effect.

24        And in number seven, Alan Jacobs says, I was

25  appointed as the sole officer and director of each of the

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

1  debtors other than act as lending and authorize to wind down

2  any remaining corporate affairs of the debtors.

3                    And I requested in discovery any evidence --

4                    THE COURT:  Okay.  Stop.  You keep going off

5  on tracks.

6                    MS. ALANIS:  All right.

7                    THE COURT:  Okay.  Why do you think that

8  number 14 says anything that is different than what we've

9  been saying, which is Mr. Jacobs has the authority to manage

10 your trust?

11                   MS. ALANIS:  Because if you look at the

12 Transfer of Lien --

13                   THE COURT:  No, I just -- tell me how 14 even

14 applies to your argument.

15                   MS. ALANIS:  Well, anybody alleging an

16 interest in my note as of August 1, 2008, their interest was

17 extinguished by that liquidation, the effective date of that

18 plan, and that's clear.

19                   And on this Transfer of Lien, this Transfer of

20 Lien says it was executed pursuant to a POA dated July 27th,

21 2006.  So Alan Jacobs had nothing to do with the POA dated

22 July 2006.

23                   THE COURT:  You see number eight?

24                   MS. ALANIS:  Yes, Your Honor.

25                   THE COURT:  All assets of the debtors are

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

1  distributed to the trust.

2        MS. ALANIS: That's right.

3        THE COURT: The trust owns your note. So do

4  you have anything in writing from Mr. Jacobs that indicates

5  that he does not have the authority to transfer your note

6  and did not have the authority to transfer your note on

7  February 2nd, 2011?

8        MS. ALANIS: The evidence I have, Your Honor,

9  is if you look at Exhibit C, the Transfer of Lien, it was

10  done pursuant to a power of attorney reported on July 27,

11  2006.

12        THE COURT: Right. So do you have any

13  evidence that Mr. Jacobs did not extend, as trustee and in

14  full control of New Century now, extend the authority of

15  Christine Carter? Do you have anything to show that?

16        MS. ALANIS: Other than the research I've done

17  and the individuals I've talked to in connection with the

18  liquidation trust. And I was already told Alan --

19        THE COURT: Not told.

20        MS. ALANIS: Oh, I'm sorry.

21        THE COURT: Anything in writing?

22        MS. ALANIS: I apologize. I'm sorry. I'm

23  sorry, Your Honor.

24        THE COURT: None?

25        MS. ALANIS: Other than if you look at

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

DOCUMENT SCANNED AS FILED

75

```
 1  THE STATE OF TEXAS )
    COUNTY OF BEXAR    )
 2

 3          I, Judith A. Stewart, Official Court Reporter in

 4  and for the 45th District Court of Bexar County, of Texas,

 5  do hereby certify that the above and foregoing contains a

 6  true and correct transcription of all portions of evidence

 7  and other proceedings requested in writing by counsel for

 8  the parties to be included in this volume of the Reporter's

 9  Record, in the above-styled and numbered cause, all of which

10  occurred in open court or in chambers and were reported by

11  me.

12          I further certify that this Reporter's Record of

13  the proceedings truly and correctly reflects the exhibits,

14  if any, admitted by the respective parties.

15          I further certify that the total cost for the

16  preparation of this Reporter's Record is $670.00 and was

17  paid by Plaintiff.

18          WITNESS MY OFFICIAL HAND this the 14th day of

19  April 2016.

20                          /s/ Judith A. Stewart
21                          Judith A. Stewart, CSR
                            Official Reporter
22                          Texas CSR 5471
                            Expiration:  12/31/17
23                          45th District Court
                            100 Dolorosa
24                          San Antonio, Texas  78205
                            (210)771-7732
25
```

JUDITH A. STEWART, C.S.R.
45TH DISTRICT COURT

348

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.*,<br><br>Debtors. | §<br>§<br>§<br>§ | Case No. 07-10416 (BLS)<br><br>(Chapter 11) |

| | |
|---|---|
| NANCY K ALANIS<br><br>*Movant*<br><br>v.<br><br>Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>And<br><br>NEW CENTURY TRS HOLDINGS, INC *et al*<br><br>*Respondents* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-22

DOCUMENT SCANNED AS FILED

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| WELLS FARGO BANK, NATIONAL | § | 45TH JUDICIAL DISTRICT |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS- | § | |
| THROUGH CERTFICATES SERIES | § | |
| 2006 NC3, OCWEN LOAN | § | |
| SERVICING, LLC, HOMEQ | § | |
| SERVICING CORPORATION AND | § | |
| MACKIE WOLF ZIENTZ & MANN, | § | |
| P.C. | § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

### ORDER SUSTAINING DEFENDANTS' FIRST AMENDED SPECIAL EXCEPTIONS

On this day the Court considered Defendants Wells Fargo Bank National Association, As Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset-Backed Receivable LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3, Ocwen Loan Servicing, LLC and Mackie Wolf Zientz & Mann, PC's First Amended Special Exceptions to Plaintiff's Sixth Amended Original Petition (the "special exceptions"). After considering the special exceptions, the pleadings, the evidence and the arguments of counsel, the court SUSTAINS the special exceptions.

IT IS THERFORE ORDERED that Defendants' First Amended Special Exceptions are sustained as follows:

PAGE 1

1242
928

DOCUMENT SCANNED AS FILED

DOCUMENT SCANNED AS FILED

All of Plaintiffs' claims relying upon or regarding the Pooling and Servicing Agreement (PSA), the Assignment of Deed of Trust and the validity of the transfer of lien are stricken (including 6th Amend. Pet. at p.7-10, VI(a), para. 6.1-6.13, p. 53 para. 9.6, p. 60, para 9.11 (3) – (7)).

All of Plaintiff's claims for alleged violations of Tex.Civ.Prac. & Rem. Code § 12.002 are stricken.

All of Plaintiff's claims based on limitations are stricken.

All of Plaintiff's claims against Mackie Wolf Zientz & Mann, P.C. are stricken.

SIGNED on _____*Oct. 13*_____, 2015.

_Gloria Saldana_
HON. GLORIA SALDANA

1243
929

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | §<br>§<br>§ | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | §<br>§ | |
| *Movant* | §<br>§ | |
| v. | §<br>§ | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| And | §<br>§ | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | §<br>§<br>§ | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-23

74

DOCUMENT SCANNED AS FILED

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WELLS FARGO BANK NATIONAL** | § | |
| **ASSOCIATION, AS TRUSTEE FOR** | § | |
| **THE POOLING AND SERVICING** | § | |
| **AGREEMENT DATED AS OF** | § | **45th JUDICIAL DISTRICT** |
| **OCTOBER 1, 2006 SECURITIZED** | § | |
| **ASSET BACKED RECEIVABLES LLC** | § | |
| **TRUST 2006-NC3 MORTGAGE PASS** | § | |
| **THROUGH CERTIFICATES SERIES** | § | |
| **2006 NC3;** | § | |
| **and** | § | |
| **HOMEQ SERVICING** | § | |
| **CORPORATION;** | § | |
| **and** | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| *Defendants* | § | **OF BEXAR COUNTY, TEXAS** |

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE, AND OCWEN LOAN SERVICING, LLC, ON LOAN ACCOUNTING, ECONOMIC LOSS AND NO-EVIDENCE GROUNDS

CAME ON TO BE HEARD on November 9, 2015, Defendant Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3's, and Defendant Ocwen Loan Servicing, LLC's (collectively, "Defendants") Motion for Partial Summary Judgment on Loan Accounting, Economic Loss and No-Evidence Grounds ("the Motion"). Having considered, the Motion, Plaintiff Nancy Alanis' Response, and Defendants' Reply, the Court rules as follows:

11/10/2015 VOL 4475 PG 0001

Case Number: 2011CI02839    Document Type: ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELL
SUMMARY JUDGMENT ORDER
Page 1 of 3
985

DOCUMENT SCANNED AS FILED

The Court hereby rules on Defendants' Objections to Plaintiffs' Response. Said objections are contained in Section I of Defendants' Reply.

1. _____ Sustained / _____ Overruled.

2. _____ Sustained / _____ Overruled.

3. _____ Sustained / _____ Overruled.

*Plaintiff's objections and overruled KP*

IT IS ORDERED, ADJUDGED AND DECREED that Defendants' Motion is GRANTED in its entirety.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the accounting of the loan *and the attached Exhibit A-8* as specified in the Motion is accurate. *KP*

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff takes nothing on the following causes of action and claims for relief contained in her Seventh Amended Petition: all claims for fraud regardless of how styled, intentional infliction of emotional distress, common law unreasonable debt collection, breach of contract, claims for violations of the Texas Penal Code, and claims for punitive damages.

SIGNED the *10* day of November, 2015.

_____
**JUDGE PRESIDING**

Approved as to Form:
*/s/ Mark D. Cronenwett*
Mark D. Cronenwett
mcronenwett@mwzmlaw.com
MACKIE WOLF ZIENTZ & MANN, PC
14160 N. Dallas Parkway, Suite 900
Dallas, Texas 75254
(214) 635-2650
(214) 635-2686 (Fax)

986

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I. MARY ANGIE GARCIA, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT.  WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*June 13, 2019*

**MARY ANGIE GARCIA**
**BEXAR COUNTY, TEXAS**

By: _____
     CHRISTINA CARREON, Deputy District Clerk
     *(NOT VALID WITHOUT THE CLERK'S ORIGINAL SIGNATURE.)*

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.*, | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-24

DOCUMENT SCANNED AS FILED



2011CI02839 -D045

**CAUSE NO. 2011-CI-02839**

| | | |
|---|---|---|
| NANCY ALANIS,<br>*Plaintiff* | § | IN THE DISTRICT COURT OF BEXAR COUNTY, TX |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | **45th JUDICIAL DISTRICT** |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS | § | |
| THROUGH CERTIFICATES SERIES | § | |
| 2006 NC3; | § | |
| and | § | |
| HOMEQ SERVICING | § | |
| CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| *Defendants* | § | **OF BEXAR COUNTY, TEXAS** |

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELLS FARGO BANK NATIONAL ASSOCIATION, AS TRUSTEE, AND OCWEN LOAN SERVICING, LLC, ON RESPA, SECTION 51.002 OF THE TEXAS PROPERTY CODE AND <u>COUNTERCLAIM FOR FORECLOSURE</u>**

CAME ON TO BE HEARD on February 19, 2016 the Motion for Partial Summary Judgment on RESPA, Section 51.002 of the Texas Property Code and Counterclaim for Foreclosure ("Defendants' Motion") filed by Defendant/Counter-Plaintiff Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("Wells Fargo"), and Defendant/Counter-Plaintiff Ocwen Loan Servicing, LLC's (collectively, "Defendants"). Having considered, the Motion, Plaintiff Nancy Alanis' Response, Defendants' Reply, and the proper summary judgment evidence, the Court rules as follows:

03/03/2016 VOL 4503 PG 323-1

DOCUMENT SCANNED AS FILED

The Court hereby rules on Defendants' Objections to Plaintiffs' Response. Said objections are contained in Section II of Defendants' Reply.

1. ___✔___ Sustained / _____ Overruled.

2. ___✔___ Sustained / _____ Overruled.

3. ___✔___ Sustained / _____ Overruled.

4. ___✔___ Sustained / _____ Overruled.

5. ___✔___ Sustained / _____ Overruled.

6. ___✔___ Sustained / _____ Overruled.

7. ___✔___ Sustained / _____ Overruled.

8. ___✔___ Sustained / _____ Overruled.

9. ___✔___ Sustained / _____ Overruled.

10. ___✔___ Sustained / _____ Overruled.

11. ___✔___ Sustained / _____ Overruled.

12. ___✔___ Sustained / _____ Overruled.

13. ___✔___ Sustained / _____ Overruled.

14. ___✔___ Sustained / _____ Overruled.

15. ___✔___ Sustained / _____ Overruled.

16. ___✔___ Sustained / _____ Overruled.

17. ___✔___ Sustained / _____ Overruled.

18. ___✔___ Sustained / _____ Overruled.

19. ___✔___ Sustained / _____ Overruled.

20. ___✔___ Sustained / _____ Overruled.

03/03/2016 VOL 4503 PG 322

DOCUMENT SCANNED AS FILED

It is hereby **ORDERED, ADJUDGED AND DECREED** that Defendants' Motion is GRANTED in its entirety.

It is further **ORDERED, ADJUDGED AND DECREED** that Plaintiff takes nothing on her claim in her Seventh Amended Petition for violations of the Real Estate Settlement Procedures Act.

It is further **ORDERED, ADJUDGED AND DECREED** that Plaintiff's takes nothing on her claim for alleged tviolations of section 51.002(d) of the Texas Property Code for Defendants' allegedly failing to send a Notice of Default with Intent to Accelerate on December 8, 2010.

It is further **ORDERED, ADJUDGED AND DECREED** that that certain Deed of Trust recorded as Instrument No. 20060146541 in the Real Property Records for Bexar County, Texas ("Decd of Trust") provides WELLS FARGO, in the event of default on the obligations on the Note, with a first lien security interest on that certain real property commonly known as 13210 Hunters View, San Antonio, Texas 78230 (the "Property") and more particularly described as follows:

> LOT 2, BLOCK 6, NEW CITY BLOCK 16984, HUNTERS CREEK NORTH, UNIT-3, IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 8200, PAGE(S) 215-216, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS ("the Property").

It is further **ORDERED, ADJUDGED AND DECREED** that WELLS FARGO is the current holder of the Note and beneficiary of the Deed of Trust representing a valid and existing first lien on the Property.

Case Number: 2011CI02839    Document Type: ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELLS
SUMMARY-JUDGMENT ORDER    Page 3 of 6

It is further **ORDERED, ADJUDGED AND DECREED** that Nancy Alanis in breach of her payment obligations under the Note and the Deed of Trust is foreclosed.

It is further **ORDERED, ADJUDGED AND DECREED** that the following amounts are secured by the Deed of Trust on the Property: $356,217.31 as of December 28, 2015 plus post-judgment interest of 9.93% per annum until paid, plus attorneys' fees, prejudgment interest of 9.93%, and costs of court.

It is further **ORDERED, ADJUDGED AND DECREED** that Defendant have and recover their attorneys' fee incurred in this action in the amount of $185,364.00; expenses of $7,671.28; $2,500.00 for having to respond to an unsuccessful Motion for New Trial; $10,000.00 for responding to an unsuccessful appeal to the intermediate court of appeals; $2,500.00 for responding to an unsuccessful petition for review to the Texas Supreme Court for which no response brief is requested; and $5,000.00 for preparing a response brief to the Texas Supreme Court should one be requested yet prove unsuccessful for Plaintiff.

It is further **ORDERED, ADJUDGED AND DECREED** that WELLS FARGO have and recover a judgment against Nancy Alanis in the amount of $356,217.31 plus pre-judgment interest at the rate of 9.93% per annum and post-judgment interest at the rate of of 9.93% per annum until paid, attorneys' fees as provided above, and court costs, which judgment shall be satisfied and paid, in whole or in part, from the proceeds of the judicial foreclosure sale of the Property.

It is further **ORDERED, ADJUDGED, AND DECREED** that an order of sale shall issue to the appropriate law enforcement personnel directing him or her to seize and sell the Property. If the proceeds of sale are insufficient to satisfy this judgment, then he shall make up

Case Number: 2011CI02839                    Document Type: ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELLS
SUMMARY-JUDGMENT ORDER                                                          Page 4 of 6
                                                                                          Page 4 of 6

1897

**DOCUMENT SCANNED AS FILED**

any balance remaining unpaid out of any property of Nancy Alanis as in the case of ordinary executions, including a claim for deficiency.

It is further **ORDERED, ADJUDGED AND DECREED** that WELLS FARGO may further communicate with Nancy Alanis and all third parties reasonably necessary to conduct the foreclosure sale.

It is further **ORDERED, ADJUDGED, AND DECREED** that all writs and processes necessary for the enforcement and execution of this Judgment, including the issuance of an order of sale, shall issue.

It is further **ORDERED, ADJUDGED, AND DECREED** that this Judgment fully and finally disposes of all remaining parties and claims in this action and may be appealed. Costs are taxed against Plaintiff Nancy Alanis.

1.

SIGNED the ___3___ day of ~~February~~ March, 2016.

_____
**JUDGE PRESIDING**

Approved as to Form:
_/s/ Mark D. Cronenwett_
Mark D. Cronenwett
mcronenwett@mwzmlaw.com
**MACKIE WOLF ZIENTZ & MANN, PC**
14160 N. Dallas Parkway, Suite 900
**Dallas, Texas 75254**
(214) 635-2650
(214) 635-2686 (Fax)

03/03/2016 VOL 4503 PG 323

Case Number: 2011CI02839          Document Type: ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT BY WELLS
SUMMARY JUDGMENT ORDER                                    Page 3 of 8

1898

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, MARY ANGIE GARCIA, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT.  WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:



*July 11, 2019*

MARY ANGIE GARCIA
BEXAR COUNTY, TEXAS

By:

IRMA K TORRES, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERK'S ORIGINAL SIGNATURE.)*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)   FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-25

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

—————————————————————————x

In re

NEW CENTURY TRS HOLDINGS, INC., a
Delaware Corporation, *et al.*,[1]

　　　　　　　　　　　Debtors.

—————————————————————————x

Chapter 11

Case No. 07-10416 (BLS)

(Jointly Administered)

## DECLARATION OF DONNA E. WALKER CONCERNING RECORDS PRODUCED BY THE NEW CENTURY LIQUIDATING TRUST

I, the undersigned, Donna E. Walker, pursuant to 28 U.S.C. § 1746, declare that:

1.　　I was an employee of New Century Mortgage Corporation ("NCMC") before it filed for bankruptcy, and am presently a consultant for the liquidating trustee of the New Century Liquidating Trust (the "Trust"), established pursuant to a confirmed chapter 11 plan of liquidation (the "Plan") of New Century TRS Holdings, Inc. and its affiliated debtors (the "Debtors"), including NCMC. The Trust is the custodian of documents and electronic data for the Debtors and has maintained such documents and electronic data turned over to the Trust by the Debtors since the effective date of the Plan. I am authorized by the Trust to make this declaration.

2.　　In response to a request for documents made to the Trust by Nancy Alanis ("Alanis"), the Trust searched its files and produced to Alanis the files identified as bates range NC_Alanis_00000001 - NC_Alanis_0000885 (the "Produced Files"). The Produced Files were produced to Alanis on or about April 21, 2016.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.) ("NCFC"); New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation); New Century Mortgage Corporation (f/k/a JBE Mortgage) ("NCMC"); NC Capital Corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com); New Century Credit Corporation (f/k/a Worth Funding Incorporated); NC Asset Holding, L.P. (f/k/a NC Residual II Corporation); NC Residual III Corporation; NC Residual IV Corporation; New Century R.E.O. Corp.; New Century R.E.O. II Corp.; New Century R.E.O. III Corp.; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage); NC Deltex, LLC; NCoral, L.P.; and New Century Warehouse Corporation.

DOCUMENT SCANNED AS FILED

3.    I submit this declaration to authenticate the Produced Files that the Trust located and produced in response to Alanis' request, but I do not make any representations or warranties, express or implied, regarding the completeness, condition, or quality of such Produced Files.

4.    The Produced Files are copies of files maintained in electronic form by the Trust as of the date on which Alanis made her request for the production of the Produced Files. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of May, 2016

_Donna E. Walker_
Donna E. Walker
Consultant
New Century Liquidating Trust

Sworn to before me this
11th day of May, 2016

_Susan Farrell_
Notary Public

SUSAN FARRELL
Notary Public, State of New York
No. 01FA6060039
Qualified in Nassau County
Commission Expires April 27, 2019

DOCUMENT SCANNED AS FILED

# ADJUSTABLE RATE BALLOON NOTE

### 2 Year Rate Lock

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

*I certify this copy is a true and correct copy of the original instrument.*

Mission Title

By _____

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| June 15, 2006 | San Antonio | Texas |
|---|---|---|
| [Date] | [City] | [State] |

13210 Hunters view, San Antonio, TX 78230
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 193,500.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.925  %.  The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on      August 1, 2006    .
My monthly payments will be based on an assumed 40     -year amortization period (the "Amortization Period").
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   07/01/2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,631.71   . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

Page 1 of 4

1008511112

Initials ALA

DOCUMENT SCANNED AS FILED

NC_Alanis_00000208

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of July, 2008, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s)
percentage points (6.050        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.925% or less than 9.925%. Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than One And One-half percentage point(s) (1.500 %)
from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.925%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

1008511112

Initials NVA

937

DOCUMENT SCANNED AS FILED

NC_Alanis_00000209

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** ..ndar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but y once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made n this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1008511112

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
NANCY ALANIS                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

*[Sign Original Only]*

1008511112

MC
Adjustable Rate Balloon Note (TX)
B-522  (011806)

Page 4 of 4

939

NC_Alanis_00000211

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

——————————————————x

In re

NEW CENTURY TRS HOLDINGS, INC., a
Delaware Corporation, et al.,[1]

                 Debtors.

Chapter 11

Case No. 07-10416 (BLS)

(Jointly Administered)

——————————————————x

### DECLARATION OF DONNA E. WALKER CONCERNING RECORDS
### PRODUCED BY THE NEW CENTURY LIQUIDATING TRUST

I, the undersigned, Donna E. Walker, pursuant to 28 U.S.C. § 1746, declare that:

1.    I was an employee of New Century Mortgage Corporation ("NCMC") before it filed for bankruptcy, and am presently a consultant for the liquidating trustee of the New Century Liquidating Trust (the "Trust"), established pursuant to a confirmed chapter 11 plan of liquidation (the "Plan") of New Century TRS Holdings, Inc. and its affiliated debtors (the "Debtors"), including NCMC. The Trust is the custodian of documents and electronic data for the Debtors and has maintained such documents and electronic data turned over to the Trust by the Debtors since the effective date of the Plan. I am authorized by the Trust to make this declaration.

2.    In response to a request for documents made to the Trust by Nancy Alanis ("Alanis"), the Trust searched its files and produced to Alanis the files identified as bates range NC_Alanis_00000001 - NC_Alanis_0000885 (the "Produced Files"). The Produced Files were produced to Alanis on or about April 21, 2016.

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.) ("NCFC"); New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation); New Century Mortgage Corporation (f/k/a JBE Mortgage) ("NCMC"); NC Capital Corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com); New Century Credit Corporation (f/k/a Worth Funding Incorporated); NC Asset Holding, L.P. (f/k/a NC Residual II Corporation); NC Residual III Corporation; NC Residual IV Corporation; New Century R.E.O. Corp.; New Century R.E.O. II Corp.; New Century R.E.O. III Corp.; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage); NC Deltex, LLC; NCoral, L.P.; and New Century Warehouse Corporation.

941

DOCUMENT SCANNED AS FILED

3.    I submit this declaration to authenticate the Produced Files that the Trust located and produced in response to Alanis' request, but I do not make any representations or warranties, express or implied, regarding the completeness, condition, or quality of such Produced Files.

4.    The Produced Files are copies of files maintained in electronic form by the Trust as of the date on which Alanis made her request for the production of the Produced Files.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of May, 2016

Donna E. Walker
Consultant
New Century Liquidating Trust

Sworn to before me this
12th day of May, 2016

Notary Public

SUSAN FARRELL
Notary Public, State of New York
No. 01FA4898030
Qualified in Nassau County
Commission Expires April 27, 20 19

942

As of May 17, 2006

NC Capital Corporation
New Century Mortgage Corporation
210 Commerce Street
Irvine, California 92612

<u>Attention</u>:  Kevin Cloyd

Re:    <u>Purchase Price and Terms Agreement</u>

Dear Mr. Cloyd:

   Barclays Bank PLC or its assignee (the "<u>Purchaser</u>") hereby confirms its agreement to purchase and NC Capital Corporation (the "<u>Seller</u>") hereby confirms its agreement to sell, on a mandatory delivery basis, two pools of fixed and adjustable rate, first and second lien, residential mortgage loans described herein (the "<u>Mortgage Loans</u>") on a servicing released basis, on the terms and conditions set forth below.

   In addition to this Purchase Price and Terms Agreement (which incorporates the terms set forth in the bid letter attached as <u>Exhibit A</u> hereto (the "<u>Bid Letter</u>")), the Amended and Restated Mortgage Loan Purchase Agreement, to be dated as of June 1, 2006 (the "<u>Purchase Agreement</u>"), between the Seller and the Purchaser, and the Interim Servicing Agreement, dated as of January 1, 2006 (the "<u>Servicing Agreement</u>"), between the Purchaser and New Century Mortgage Corporation ("<u>NCMC</u>"), shall set forth the terms and provisions with respect to the Mortgage Loans and the sale and servicing thereof.  The Mortgage Loans will be conveyed by the Seller to the Purchaser pursuant to two Assignment and Conveyances, each to be dated as of the respective Closing Date (as defined below) (the "<u>Assignment and Conveyance</u>").

   Ownership of the Mortgage Loans shall be evidenced by delivery of the Mortgage Loans as whole loans pursuant to this Purchase Price and Terms Agreement, the Purchase Agreement and the Servicing Agreement.

1.  <u>Term of this Commitment</u>

   The first pool of Mortgage Loans (the "<u>First Closing Mortgage Loans</u>") shall be purchased by the Purchaser and sold by the Seller, subject to the terms hereof and the Bid Letter, on June 29, 2006, or such other date as shall be mutually agreed upon by the parties hereto (the "<u>First Closing Date</u>").   The first pool of Mortgage Loans (the "<u>Second Closing Mortgage Loans</u>") shall be purchased by the Purchaser and sold by the Seller, subject to the terms hereof and the Bid Letter, on July 28, 2006, or such other date as shall be mutually agreed upon by the parties hereto (the "<u>Second Closing Date</u>" and, together with the First Closing Date, the "<u>Closing Dates</u>").

NYLIB5 903608.4

CONFIDENTIAL
843

DOCUMENT SCANNED AS FILED

NC_Alanis_00000512

Notwithstanding the foregoing and prior to each Closing Date, in the event that there is a material adverse change to (a) the Property, business, operations, financial condition or prospects of the Seller or any of its affiliates, (b) the ability of the Seller or any of its affiliates to perform its obligations under any of this Purchase Price and Terms Agreement, the Purchase Agreement or the Servicing Agreement or (c) the Mortgage Loans as a whole, in each case as determined in good faith by the Purchaser in its sole reasonable discretion, or any other condition exists which, in the Purchaser's sole discretion, constitutes a material impairment of the Seller's ability to perform its obligation as Seller hereunder or under the Purchase Agreement or the Servicing Agreement, the Purchaser shall be relieved of any obligation to purchase any Mortgage Loans.

When used in this Section 1, the term "Property" shall mean any right or interest in or to property of any kind whatsoever, whether real, personal or mixed and whether tangible or intangible.

In addition, the obligation of the Purchaser to purchase any Mortgage Loan from the Seller on a Closing Date is expressly contingent upon the satisfactory due diligence review by the Purchaser to confirm that such Mortgage Loan conforms to the terms of this Purchase Price and Terms Agreement and conforms to the underwriting guidelines of the Seller, as further described in the Bid Letter.

## 2. Aggregate Amount of Mortgage Loans

The aggregate outstanding principal balance as of (i) June 1, 2006 (the "First Cut-off Date") of the First Closing Mortgage Loans and (ii) as of July 1, 2006 (the "Second Cut-off Date", and together with the First Cut-off Date, the "Cut-off Dates") of the Second Closing Mortgage Loans shall be approximately $500,000,000 for each pool.

Notwithstanding the foregoing, the Purchaser, in its sole discretion, may accept delivery of less than 90% of the $500,000,000 pool amount on each Closing Date. In the event that the Seller delivers First Closing Mortgage Loans or Second Closing Mortgage Loans with an aggregate outstanding principal balance that is less than $450,000,000 the Seller shall pay the Purchaser a pair-off fee (as described in the Bid Letter) for the difference between the actual amount delivered (in the aggregate) and $450,000,000.

## 3. Purchase Price

The purchase price for each pool of Mortgage Loans sold to the Purchaser on the Closing Dates (which includes the related servicing rights) (the "Purchase Price") shall be equal to the product of (i) the related Purchase Price Percentage (as defined below) and (ii) the aggregate outstanding principal balance of the related pool of Mortgage Loans as of the related Cut-off Date, after application of payments due on such Mortgage Loans on or before such Cut-off Date, to the extent such payments were actually received (the "Cut-off Date Aggregate Pool Balance"), plus accrued and unpaid interest on the pool of Mortgage Loans at the weighted average mortgage interest rate (net of the Servicing Fee Rate) from the interest paid to date through the day prior to the related Closing Date, inclusive. In the event the characteristics and parameters of the related pool of Mortgage Loans as described in Section 4 changes prior to any

CONFIDENTIAL

NC_Alanis_00000513

DOCUMENT SCANNED AS FILED

Closing Date, the Seller and Purchaser shall negotiate in good faith to recalculate the related Purchase Price Percentage.

The "Purchase Price Percentage" with respect to the First Closing Mortgage Loans shall be equal to 102.25% and the Purchase Price Percentage with respect to the Second Closing Mortgage Loans shall be equal to 102.20%, each subject to adjustment as described below. Notwithstanding the foregoing sentence, the related Purchase Price Percentage shall be adjusted up or down per the following table for every basis point (0.01%) by which the weighted average interest rate of the Mortgage Loans in such pool (the "Weighted Average Gross Coupon") as of the related Cut-off Date exceeds or falls below a rate equal to 8.45%.

| Weighted Average Gross Coupon ("GWAC") Range | Adjustment to Mortgage Loan Price Percentage per 0.01% (1 bp) change in GWAC |
|---|---|
| > 8.45% | 1.50 bps up |
| = 8.45% | none |
| < 8.45% | 1.50 bps down |

The Purchase Price for the First Closing Mortgage Loans and Second Closing Mortgage Loans shall be paid to the Seller on the related Closing Date in immediately available funds by wire transfer to an account designated by the Seller in writing.

4.  The Mortgage Loans

Each pool of Mortgage Loans will have the applicable characteristics set forth in the Bid Letter. The Seller shall make the representations and warranties to be set forth in the Purchase Agreement as of each Closing Date. In addition, Seller agrees that (i) the Mortgage Loans shall be selected from among the outstanding one- to four-family mortgage loans in the Seller's portfolio on the related Cut-off Date as to which the representations and warranties set forth in the Purchase Agreement can be made, (ii) such selection will not be made in a manner so as to affect adversely the interests of the Purchaser, (iii) no Mortgage Loan will be a "High Cost Loan" where High Cost Loan means a Mortgage Loan classified as (a) a "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (b) a "high cost home," "threshold," "covered", "high risk home", "predatory" or similar loan under any other applicable state, federal or local law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees), (iv) no Mortgage Loan will be secured by mortgaged property located in the State of Georgia if originated on or after October 1, 2002 and on or prior to March 7, 2003, (v) no Mortgage Loan has a debt-to-income ratio greater than 60% and (vi) no Mortgage Loan originated on or after August 1, 2004 requires the related mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

5.  Servicing

The Servicing Rights related to each pool of Mortgage Loans shall be assigned and transferred to the Purchaser on each Closing Date. The Mortgage Loans shall be serviced by NCMC or its assignee on behalf of the Purchaser and its assignees pursuant to the Servicing

NY1JB5 903608.4

-3-

CONFIDENTIAL

NC_Alanis_00000514

DOCUMENT SCANNED AS FILED

Agreement from and after each Closing Date and until August 29, 2006 for the First Closing Mortgage Loans and September 30, 2006 for the Second Closing Mortgage Loans, or such other dates as mutually agreed upon by the Seller, the Purchaser and NCMC (the "Servicing Transfer Date"). At such time the Seller shall cooperate to effect a Complete Servicing Transfer with respect to the Mortgage Loans. A "Complete Servicing Transfer" shall include the following: (i) the Seller shall have fully complied with the servicing transfer provisions contained in the Purchase Agreement and the Servicing Agreement; (ii) the Seller shall have provided the Purchaser or its designee with a complete servicing file with respect to each of the related Mortgage Loans; and (iii) the Seller shall have provided the Purchaser or its designee with a complete and accurate servicing tape with respect to each of the related Mortgage Loans.

Pursuant to the Servicing Agreement, NCMC shall be entitled to receive, from interest actually collected on each Mortgage Loan, a servicing fee (the "Servicing Fee") with respect to each Mortgage Loan in an amount equal to one-twelfth of the product of (a) the Servicing Fee Rate (50 basis points (0.50%) per annum) and (b) the scheduled principal balance of such Mortgage Loan payable monthly during any month NCMC acts as servicer with respect to such Mortgage Loan. The Servicing Fee shall be pro-rated (based upon the number of days of the related month NCMC so acted as servicer, expressed as a percentage of such month) for each part thereof. NCMC acknowledges and agrees that the Servicing Fee represents normal compensation for performing such services and that the entire Servicing Fee shall be treated by NCMC, for accounting and tax purposes, as compensation for the servicing and administration of the Mortgage Loans pursuant to the Servicing Agreement.

6.  Tax Service Contracts; Flood Certification Contracts

The Seller shall ensure that each of the Mortgage Loans shall be covered by (i) a paid-in-full, life-of-loan tax service contract (each, a "Tax Service Contract"), and (ii) a paid-in-full, life-of-loan, flood certification contract (each, a "Flood Certification Contract"), each with a provider acceptable to the Purchaser and each of which shall be assigned to the Purchaser or the Purchaser's designee at the Seller's expense. The obligations set forth in this Section 6 shall survive the closing of the transaction contemplated hereby, shall not merge with the closing documents and shall be independently enforceable.

7.  Purchase Agreement; Servicing Agreement

The Purchase Agreement and the Servicing Agreement each sets forth additional representations and warranties to be made as of the related Closing Date (the "Representations and Warranties") and requires the Seller, at the Purchaser's option, to repurchase any Mortgage Loan with respect to which a material breach of a Representation and Warranty is discovered and cannot be cured (a "Loan in Breach") at the Repurchase Price (defined below).

Notwithstanding anything to the contrary set forth in the Purchase Agreement or in the Servicing Agreement, the price for such repurchase (the "Repurchase Price") with respect to any Loan in Breach shall be with respect to any Mortgage Loan that becomes a Loan in Breach (a) during the first year immediately following the related Closing Date, an amount equal to the Purchase Price Percentage multiplied by the then outstanding principal balance of such Loan in Breach as of the date of such repurchase (including, without duplication, the amount of

CONFIDENTIAL

NC_Alanis_00000515

DOCUMENT SCANNED AS FILED

any outstanding advances owed to any servicer), plus accrued interest on such Loan in Breach at the mortgage interest rate from the date on which interest had last been paid through the date of such repurchase, plus all costs and expenses incurred by the Purchaser arising out of or based upon such breach, including without limitation costs and expenses incurred in the enforcement of the Seller's repurchase obligation thereunder, (b) during the second year following the related Closing Date, an amount equal to the product of (i) 100% plus an amount equal to (A) a fraction, whose numerator is equal to 12 less the number of months since the first anniversary of such Closing Date and whose denominator is equal to 12, multiplied by (B) the Purchase Price Percentage less 100%, multiplied by (ii) the then outstanding principal balance of such Loan in Breach as of the date of such repurchase, plus accrued interest on such Loan in Breach at the mortgage interest rate from the date to which interest had last been paid through the date of such repurchase, plus the amount of any outstanding advances owed to any servicer, plus all costs and expenses incurred by the Purchaser arising out of or based upon such breach, including without limitation costs and expenses incurred in the enforcement of the Seller's repurchase obligation thereunder, and (c) thereafter, an amount equal to the then outstanding principal balance of such Loan in Breach as of the date of such repurchase plus accrued interest thereon at the mortgage interest rate from the date to which interest had last been paid through the date of such repurchase, plus the amount of any outstanding advances owed to any servicer, plus all costs and expenses incurred by the Purchaser arising out of or based upon such breach, including without limitation costs and expenses incurred in the enforcement of the Seller's repurchase obligation thereunder. In the event of a securitization of any of the Mortgage Loans by the Purchaser or any of its affiliates, the Repurchase Price for such a Loan in Breach shall be as set forth in clause (c) above.

   With respect to each Mortgage Loan, in the event that the first payment to be made by the mortgagor on the first due date after any Closing Date with respect to any Mortgage Loan is not paid before the first day of the month following such due date, the Seller, at the Purchaser's option, shall repurchase such Mortgage Loan at the Purchase Price. Notwithstanding the foregoing, the Seller shall have a period of forty-five (45) days following such first due date to cure any such delinquency. The Purchaser shall notify the Seller and request a repurchase within sixty (60) days after the mortgagor's failure to make such payment (including such additional cure period) and the Seller shall repurchase such Mortgage Loan within five (5) business days of the receipt of such notice.

   With respect to Mortgage Loans without prepayment penalties, in the event that any such Mortgage Loan prepays in full within the three (3) months immediately following the related Closing Date, the Seller shall pay the Purchaser, within three (3) business days of such prepayment in full, the Purchase Price for such Mortgage Loan, as set forth herein, less the outstanding principal balance of such Mortgage Loans as of the related Cut-off Date.

   The repurchase price provisions set forth in this Section 7 shall survive each Closing Date and shall not merge with the closing documents, but instead shall be independently enforceable by the Purchaser.

8.   <u>Custody of Mortgage Loan Documents</u>

CONFIDENTIAL

NC_Alanis_00000516

DOCUMENT SCANNED AS FILED

Pursuant to the Custodial Agreement, dated as of January, 1, 2006 (the "Custodial Agreement"), among the Purchaser, Deutsche Bank National Trust Company (the "Custodian"), NCMC and the Seller, the Seller shall deliver to the Custodian all original documents with respect to each Mortgage Loan, as set forth in the Custodial Agreement. Such documents will be held by the Custodian in trust for the benefit of the Purchaser, and the Seller shall pay all costs associated with the shipment of the files to the Custodian prior to each Closing Date. The Purchaser shall pay the costs and expenses of the Custodian. The Seller shall pay any fees or costs incurred in connection with a one-time preparation of each assignment in blank.

9.  Review of Loan Files

With respect to each pool of Mortgage Loans, the Seller shall make the Mortgage Loan file, together with all credit and servicing files (including, without limitation, the related mortgagor's payment history), available at its offices for review during normal business hours prior to the related Closing Date. The Purchaser, or its designee, may review the Mortgage Loan files prior to such Closing Date for the purpose of ensuring conformity with the terms of this Purchase Price and Terms Agreement and the Purchase Agreement. If the Purchaser makes such examination prior to any Closing Date and identifies any Mortgage Loan which does not conform to the Purchaser's requirements, in its sole discretion, such Mortgage Loan shall be deleted from the Mortgage Loan schedule to be delivered to the Purchaser on such Closing Date.

The Purchaser may, at its option and without notice to the Seller, purchase all or part of the Mortgage Loans without conducting any partial or complete examination. The fact that the Purchaser or any prospective purchaser of the Mortgage Loans has conducted or has failed to conduct any partial or complete examination of the Mortgage Loan files shall not affect the Purchaser's (or any of its successors') rights to demand repurchase, substitution or other relief as provided under the Purchase Agreement.

10.  Securitization

In the event of a securitization of the Mortgage Loans by the Purchaser or any of its affiliates, the Seller, NCMC and the Purchaser shall comply with the provisions relating to securitizations set forth in the Bid Letter.

11.  Intention of the Parties

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling, interests in the Mortgage Loans and not a debt instrument of the Seller or other security. Accordingly, each party intends to treat the transaction for federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of an ownership interest (the "Ownership Interest") in the Mortgage Loans. Moreover, the arrangement under which the Mortgage Loans are held will be consistent with the classification of such arrangement as a grantor trust in the event it is not found to represent direct ownership of the related Ownership Interest in the Mortgage Loans. The Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Loan files to determine the characteristics of the Mortgage Loans which will affect the federal income tax consequences of owning the Ownership Interest in the Mortgage

CONFIDENTIAL                                        NC_Alanis_00000517

DOCUMENT SCANNED AS FILED

Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

### 12. Costs

The Purchaser shall pay any commissions due its salesmen, the legal fees and expenses of its attorneys and the costs and expenses of the Custodian (including shipping fees incurred following each Closing Date). Except as otherwise specified herein, all other costs and expenses incurred in connection with the transaction contemplated hereby, fees for title policy endorsements and continuations and the Seller's attorney's fees shall be paid by the Seller.

### 13. Confidential Information

The Purchaser and the Seller shall keep confidential and shall not divulge to any non-affiliated person, without the other's prior written consent, the price paid by the Purchaser for the Mortgage Loans, except to the extent that it is appropriate for the Purchaser or the Seller, as the case may be, to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies. The rights and obligations set forth in this Section shall survive each Closing Date and shall not merge with or into any of the closing documents described herein, but instead shall be independently enforceable.

### 14. Brokerage Fees

Neither the Seller nor the Purchaser has employed or used a broker in connection with the transactions contemplated herein, and to the extent that a demand is made upon either the Seller or the Purchaser for brokerage fees associated herewith, neither the Seller nor the Purchaser shall be responsible for paying any brokerage fees of the other party. Each party hereto shall indemnify and hold the other party harmless against all claims of any brokers or other persons employed or used by the first party for brokers' commissions relating thereto, which indemnification shall include all losses, damages and expenses, including attorney's fees for settlement, litigation or appearance and other costs for same, suffered by such other party in connection with such claims. The rights and obligations set forth in the preceding sentence shall survive each Closing Date and shall not merge with or into any of the closing documents described herein, but instead shall be independently enforceable.

### 15. Notices

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or if by other means, when received by the other party at the address shown on the first page hereof, or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

CONFIDENTIAL                                    NC_Alanis_00000518

DOCUMENT SCANNED AS FILED

## 16. Governing Law

This Purchase Price and Terms Agreement shall be deemed in effect when a fully executed counterpart thereof is received by the Purchaser in the State of New York and shall be deemed to have been made in the State of New York. This Purchase Price and Terms Agreement shall be construed in accordance with the substantive laws of the State of New York without regard to conflicts of law principles.

## 17. Further Agreements

The Purchaser and the Seller each agree to execute and deliver to the other such additional documents, instruments or agreements that may be necessary or appropriate to effectuate the purposes and intent of this Purchase Price and Terms Agreement.

## 18. Entire Agreement and Amendments

This Purchase Price and Terms Agreement contains the entire agreement relating to the subject matter hereof between the Seller and the Purchaser and supersedes any prior oral or written agreement between the Seller and the Purchaser. This Purchase Price and Terms Agreement may only be amended by a written document signed by both the Seller and the Purchaser.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

CONFIDENTIAL                                        NC_Alanis_00000519

DOCUMENT SCANNED AS FILED

Kindly acknowledge receipt of this confirmation by signing and promptly returning the enclosed duplicate of this letter on or before June 23, 2006. Your failure to return a countersigned duplicate of this letter to us within the time indicated shall give us the right, at our sole option, to declare the oral agreement confirmed hereby null and void.

Very truly yours,

BARCLAYS BANK PLC

By: _____

Name:    Paul Menefee
Title:    Director

Receipt of this confirmation is
hereby acknowledged:

NC CAPITAL CORPORATION


By:_____
   Name:
   Title:

NEW CENTURY MORTGAGE
   CORPORATION


By:_____
   Name:
   Title:

Sutton—New Century (06.29.06)—PPTA

CONFIDENTIAL

NC_Alanis_00000520

DOCUMENT SCANNED AS FILED

Kindly acknowledge receipt of this confirmation by signing and promptly returning the enclosed duplicate of this letter on or before June 23, 2006. Your failure to return a countersigned duplicate of this letter to us within the time indicated shall give us the right, at our sole option, to declare the oral agreement confirmed hereby null and void.

Very truly yours,

**BARCLAYS BANK PLC**

By:_____
    Name:
    Title:

Receipt of this confirmation is
hereby acknowledged:

**NC CAPITAL CORPORATION**

By:_____
    Name:   Kevin Cloyd
    Title:   President

**NEW CENTURY MORTGAGE**
   **CORPORATION**

By:_____
    Name:   KEVIN CLOYD
    Title:   EXECUTIVE VICE PRESIDENT

Sutton–New Century (06.29.06)—PPTA

CONFIDENTIAL

NC_Alanis_00000521

DOCUMENT SCANNED AS FILED

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x

In re                                          Chapter 11

NEW CENTURY TRS HOLDINGS, INC., a              Case No. 07-10416 (BLS)
Delaware Corporation, *et al.,*[1]
                                               (Jointly Administered)
                              Debtors.

----------------------------------------------------------x

### DECLARATION OF DONNA E. WALKER CONCERNING RECORDS PRODUCED BY THE NEW CENTURY LIQUIDATING TRUST

I, the undersigned, Donna E. Walker, pursuant to 28 U.S.C. § 1746, declare that:

1. I was an employee of New Century Mortgage Corporation ("NCMC") before it filed for bankruptcy, and am presently a consultant for the liquidating trustee of the New Century Liquidating Trust (the "Trust"), established pursuant to a confirmed chapter 11 plan of liquidation (the "Plan") of New Century TRS Holdings, Inc. and its affiliated debtors (the "Debtors"), including NCMC. The Trust is the custodian of documents and electronic data for the Debtors and has maintained such documents and electronic data turned over to the Trust by the Debtors since the effective date of the Plan. I am authorized by the Trust to make this declaration.

2. In response to a request for documents made to the Trust by Nancy Alanis ("Alanis"), the Trust searched its files and produced to Alanis the files identified as bates range NC_Alanis_00000001 - NC_Alanis_0000885 (the "Produced Files"). The Produced Files were produced to Alanis on or about April 21, 2016.

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.) ("NCFC"); New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation); New Century Mortgage Corporation (f/k/a JBE Mortgage) ("NCMC"); NC Capital Corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com); New Century Credit Corporation (f/k/a Worth Funding Incorporated); NC Asset Holding, L.P. (f/k/a NC Residual II Corporation); NC Residual III Corporation; NC Residual IV Corporation; New Century R.E.O. Corp.; New Century R.E.O. II Corp.; New Century R.E.O. III Corp.; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage); NC Deltex, LLC; NCoral, L.P.; and New Century Warehouse Corporation.

647

DOCUMENT SCANNED AS FILED

DOCUMENT SCANNED AS FILED

3.    I submit this declaration to authenticate the Produced Files that the Trust located and produced in response to Alanis' request, but I do not make any representations or warranties, express or implied, regarding the completeness, condition, or quality of such Produced Files.

4.    The Produced Files are copies of files maintained in electronic form by the Trust as of the date on which Alanis made her request for the production of the Produced Files.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of May, 2016

Donna E. Walker
Consultant
New Century Liquidating Trust

Sworn to before me this
10th day of May, 2016

Notary Public

SUSAN FARRELL
Notary Public, State of New York
No. 01FA4880030
Qualified in Nassau County
Commission Expires April 27, 2019

648

DOCUMENT SCANNED AS FILED

DOCUMENT SCANNED AS FILED

## The New Century File Header



*DC1+FTPOL+1008511112*

Loan Number:    1008511112

Borrower Name:    ALANIS, NANCY

Document Type:    FTPOL

Page Count:

MIN #:

sold_date:    investor_name:

7/28/2006      BARCLAYS

pool_no:       ps_pool_name:

2006-173       jul06 barclays

loan no:  1008511112

CONFIDENTIAL

NC_Alanis_00000090

DOCUMENT SCANNED AS FILED

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-26

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | 45th JUDICIAL DISTRICT |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS | § | |
| THROUGH CERTIFICATES SERIES | § | |
| 2006 NC3; | § | |
| and | § | |
| HOMEQ SERVICING | § | |
| CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| *Defendants* | § | OF BEXAR COUNTY, TEXAS |

## AFFIDAVIT OF MARK D. CRONENWETT

Before me, the undersigned notary, personally appeared Mark D. Cronenwett, a person known to me, who having been sworn stated on oath:

1.      My name is Mark D. Cronenwett. I am over the age of 18 years, have never been convicted of a crime, and am fully competent to make this affidavit. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.      I am counsel of record for Defendants/Counter-Plaintiffs Wells Fargo Bank National Association, as Trustee for the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("Wells Fargo"), and Ocwen Loan Servicing, LLC ("Ocwen"), in the above-numbered and styled cause.

DOCUMENT SCANNED AS FILED

3.    Attached hereto as Exhibit B-1 is a true and correct copy of a the original Adjustable Rate Balloon Note ("Note") for $193,500.00 payable to New Century Mortgage Corporation ("New Century") signed by Plaintiff Nancy Alanis on June 15, 2006. This copy has been made from the actual original Note, which is presently located in the offices of Mackie Wolf Zientz & Mann, PC, 14160 North Dallas Parkway, Suite 900, Dallas, Texas 75243.

Further affiant sayeth not.

**MARK D. CRONENWETT**

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

SWORN TO AND SUBSCRIBED before me on this 5th day of November, 2015, to certify which witness my hand and official seal.

Notary Public, State of Texas
Printed name:

Commission Expires

L WEBB
Notary Public, State of Texas
My Commission Expires:
March 22, 2018

# EXHIBIT B-1

DOCUMENT SCANNED AS FILED

# ADJUSTABLE RATE BALLOON NOTE
### 2 Year Rate Lock
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| June 15, 2006 | San Antonio | Texas |
|---|---|---|
| [Date] | [City] | [State] |

13210 Hunters view, San Antonio, TX 78230
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 193,500.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.925  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on          August 1, 2006   . My monthly payments will be based on an assumed 40          -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   07/01/2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,631.71   . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

NCMC
Adjustable Rate Balloon Note (TX)
RE-522 (011806)

240

Initials AMA

DOCUMENT SCANNED AS FILED

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The interest rate I will pay may change on the first day of July, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points (6.050        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

### (D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.925% or less than 9.925%. Thereafter, my interest rate will never be increased or decreased on any single . Change Date by more than One And One-half percentage point(s) (1.500 %) from the rate of interest I have been paying for the preceding  6  months. My interest rate will never be greater than 16.925 %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NCMC
241

Initials NKA

DOCUMENT SCANNED AS FILED

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

NCMC
Adjustable Rate Balloon Note (TX)
RE-522  (011806)
242

Page 3 of 4

Initials: _NWA_

**DOCUMENT SCANNED AS FILED**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)      _____ (Seal)
NANCY ALANIS           -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                              -Borrower

Pay to the order of without recourse
New Century Mortgage Corporation
By: _____
     Steve Nagy
     V.P. Records Management                         [Sign Original Only]

NCMC
Adjustab Balloon Note (TX)
RE-522  (011806)                         Page 4 of 4

243

DOCUMENT SCANNED AS FILED

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-27

**Veritext, LLC**
**New York Region**

330 Old Country Rd., Suite 300
Mineola NY 11501
Tel. (516) 608-2400 Fax. (516) 608-2450
Fed. Tax ID: 20-3132569



| | | |
|---|---|---|
| **Invoice #:** | NY3511137 |
| **Invoice Date:** | 10/15/2018 |
| **Balance Due:** | $0.00 |

**Bill To:** Nancy Alanis
Nancy Alanis
13210 Hunters View
San Antonio, TX, 78230

| | |
|---|---|
| **Case:** | New Century v. |
| **Job #:** | 761918 | Job Date: 5/23/2012 | Delivery: Daily |
| **Billing Atty:** | Nancy Alanis |
| **Location:** | US Bankruptcy Court Delaware Division |
| | 824 Market Street | |
| | Wilmington, DE 19801 |
| **Sched Atty:** | Judge Kevin J Carey | US Bankruptcy Delaware District |

| Witness | Description | Units | Quantity | Price | Amount |
|---|---|---|---|---|---|
| 07-10416 | Certified Transcript | Page | 321.00 | $0.90 | $288.90 |

| | |
|---|---|
| **Invoice Total:** | $288.90 |
| **Payment:** | ($288.90) |
| **Credit:** | $0.00 |
| **Interest:** | $0.00 |
| **Balance Due:** | $0.00 |

**Notes:**

TERMS:    Payable upon receipt.  Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.  No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

**To pay online, go to**
**www.veritext.com**

263 Veritext accepts all major credit cards
(American Express, Mastercard, Visa, Discover)

Please remit payment to:
Veritext
P.O. Box 71303
Chicago IL 60694-1303

| | |
|---|---|
| **Invoice #:** | NY3511137 |
| **Job #:** | 761918 |
| **Invoice Date:** | 10/15/2018 |
| **Balance:** | $0.00 |

DOCUMENT SCANNED AS FILED

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    Case No. 07-10416(KJC); Adv. 10-56215; Adv. 11-53893; Adv.

4    10-55357; Adv. 11-53199; Adv. 12-50187; Adv. 09-52251

5    - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7    NEW CENTURY TRS HOLDINGS, INC., et al.

8            Debtors.

9    - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                        United States Bankruptcy Court

12                        824 North Market Street

13                        Wilmington, Delaware

14                        May 23, 2012

15                        10:00 AM

16

17

18   B E F O R E :

19   HON. KEVIN J. CAREY

20   U.S. BANKRUPTCY JUDGE

21

22

23

24

25   ECR OPERATOR:    AL LUGANO

Case 07-10416-BLS   Doc 11572-8   Filed 10/30/20   Page 69 of 100
NEW CENTURY TRS HOLDINGS, INC.

Page 2

1  HEARING re Debtors' Non-substantive Objection Pursuant to 11

2  U.S.C. Section 502, Fed. R. Bankr. P. 3007 and 9014 and Del.

3  Bankr. L.R. 3007-1 to Claim of Internal Revenue Service for

4  Which Insufficient Documentation is Attached to the Filed

5  Proof of Claim [D.I. 5025; filed 2/22/08]

6

7  HEARING re The New Century Liquidating Trust's Thirty-Third

8  Omnibus Objection to Claims Pursuant to 11 U.S.C. Section

9  502(b) and Fed. R. Bankr. P. 3001, 3007 and Local Rule 3007-

10 1 [Substantive][D.I. 10184; filed 8/13/10]

11

12 HEARING re Debtors' Eighteenth Omnibus Objection:

13 Substantive Objection Pursuant to 11 U.S.C. Section 502,

14 503, 506 and 507, Bankruptcy Rules 3007 and 9014, and Local

15 Rule 3007-1 to Certain (A) Books and Records Claims; (B)

16 Insufficient Documentation; (C) Multiple-Debtor Duplicate

17 Claims; and (D) Reduced and/or Reclassified Claims (D.I.

18 5537; filed 3/27/08]

19

20 HEARING re Motion to Reconsider Order Disallowing and

21 Expunging Certain (A) Amended And Superseded Claims; (B)

22 Late Filed Claims; and (C) No Supporting Documentation

23 Claims Set Forth in Debtors' Twenty-First Omnibus Objection

24 to Claims (D.I. 9229; filed 12/10/08]

25

VERITEXT REPORTING COMPANY
www.veritext.com
212-267-6868                                                   516-608-2400
DOCUMENT SCANNED AS FILED

Case 07-10416-BLS   Doc 11572-8   Filed 10/30/20   Page 70 of 100
NEW CENTURY TRS HOLDINGS, INC.

Page 3

1    HEARING re Motion of W. Frazer and Konilynn Frazer, Pro Se

2    to Allow Late Filing of Proof of Claim (D.I. 10107; filed

3    5/17/10]

4

5    Mary Guinto and Thomas Guinto v. New Century TRS Holdings,

6    Inc., et al. (Adv. Pro No. 10-56215):

7    HEARING re Motion of New Century Liquidating Trust To

8    Dismiss Adversary Proceeding Complaint (Adv. Dkt. No. 3;

9    filed 2/2/2011]

10

11   HEARING re Motion of Mary Guinto and Thomas A. Guinto, Pro

12   Se to Consider Proof of Claim Timely Filed [D.I. 10328;

13   filed 12/7/10]

14

15   Mary Guinto and Thomas Guinto v. New Century TRS Holdings,

16   Inc., et al. (Adv. Pro No. 10-56215):

17   HEARING re Motion of Claimants, Mary Guinto and Thomas A.

18   Guinto, Requesting the Entry of a Scheduling Order [Adv.

19   Dkt. No. 30' Main Case D.I. 10717 filed 1/30/2012]

20

21   Helen Galope v. New Century TRS Holdings, Inc., et al. (Adv.

22   Pro No. 11-53893):

23   HEARING re Motion of New Century Liquidating Trust to

24   Dismiss Adversary Proceeding Complaint [Adv. Dkt. 4; filed

25   3/8/2012]

VERITEXT REPORTING COMPANY
www.veritext.com
212-267-6868                                            516-608-2400
DOCUMENT SCANNED AS FILED

NEW CENTURY TRS HOLDINGS, INC.

Page 4

1    Molly S. White & Ralph N. White v. New Century TRS Holdings,

2    Inc., et al. (Adv. Pro No. 10-55357):

3    HEARING re Plaintiff's Motion to Compel Discovery [Adv. Pro

4    Dkt. No. 47; filed 2/16/2011]

5

6    Molly S. White & Ralph N. White v. New Century TRS Holdings,

7    Inc., et al. (Adv. Pro No. 10-55357):

8    HEARING re Motion to Reconsider Dismissal of Counts II and

9    VIII of Complaint [Filed by Molly S. White and Ralph N.

10   White] [Adv. Pro Dkt. No. 61; filed 6/17/2011]

11

12   Alfred A. Silva v. New Century Mortgage Corporation (Adv.

13   Pro No. 11-531990:

14   HEARING re Motion of New Century Liquidating Trust to

15   Dismiss Adversary Proceeding Complaint [Adv. D.I. 5; filed

16   10/26/11]

17

18   Christine Konar v. New Century TRS Holdings, Inc. (Adv. Pro.

19   No. 12-50187):

20   HEARING re Motion of New Century Liquidating Trust to

21   Dismiss Adversary Proceeding Complaint [Adv. Dkt. No. 5;

22   filed 4/12/2012]

23

24

25

VERITEXT REPORTING COMPANY
www.veritext.com
212-267-6868                                                516-608-2400
DOCUMENT SCANNED AS FILED

Page 5

1   HEARING re Motion for Removal of Trustee filed by Helen

2   Galope [Dkt. No. 10883; filed 5/9/2012]

3

4   Anita B. Carr v. New Century TRS Holdings, Inc., et al.

5   (Adv. Pro. No. 09-52251):

6   HEARING re Plaintiff's Notice of Motion and Motion for

7   Sanctions [Adv. D.I. 122; filed 2/3/12]

8

9   HEARING re Motion of Christine Konar Pro Se, to Consider

10  Proof of Claim Timely Filed [Dkt. No. 10743; filed

11  2/21/2012]

12

13  HEARING re Motion to File Amended Proof of Claim [Filed by

14  Christine Konar][Dkt. No. 10744; filed 2/21/2012]

15

16  HEARING re The New Century Liquidating Trust's Motion to

17  Preclude Alfred A. Silva From Introducing Evidence at the

18  Evidentiary Hearing Pursuant to Federal Rule of Bankruptcy

19  Procedure 7037 and Local Rule 7026-1 [D.I. 10746; filed

20  2/21/2012]

21

22  HEARING re Ex Parte Application for an Order Shortening the

23  Time to Clarify the Order of this Court Allowing New Century

24  to Appear in California Case to Quiet Title [Filed by Leslie

25  Marks] [Dkt. No. 10752; filed 2/23/2012]

Page 177

1              MS. CROMWELL:  I'd like to call Mr. Jacobs back to

2    the stand.

3              THE COURT:  All right.  Mr. Jacobs, if you would,

4    sir.

5                   ALAN JACOBS, WITNESS, PREV. SWORN

6              THE COURT:  You may be seated.  I -- you should

7    consider yourself as still under oath.

8              THE WITNESS:  Thank you.

9              THE COURT:  All right.

10   DIRECT EXAMINATION

11   BY MS. CROMWELL:

12   Q    Hi, Mr. Jacobs.

13   A    Hello.  How are you?

14             THE WITNESS:  May I at least put these aside until

15   they're relevant?

16             THE COURT:  Yes, you may.

17             THE WITNESS:  Yes, go right ahead.

18   Q    Okay.  How long have you been a trustee?

19   A    In this matter, I've been the trustee since August of

20   2008.  I've been a Chapter 11 and a Chapter 7 trustee in a

21   post liquidation trust trustee since 1999, 2000, serving in

22   various capacities in various cases.

23   Q    Okay.  And could you just explain -- well, you know

24   what, never mind.

25             Are there any remaining New Century employees working

Case 07-10416-BLS   Doc 11572-8   Filed 10/30/20   Page 74 of 100
NEW CENTURY TRS HOLDINGS, INC.

Page 178

1    for the trust?

2    A    There are less than ten former employees of New Century ...

3    whom I retain on a consulting basis.   They are actually

4    engaged by a temporary employment agency, and I retain them

5    to assist me in administering the trust.

6    Q    Is Steve Nagy still employed by New Century?

7    A    No.

8    Q    And did he leave employment in December of 2007?

9    A    I do not know.

10   Q    Has he been an employee since you started -- since you

11   took over in August of 2008, was he in your employ?

12   A    He was never in my employ.

13   Q    He was never in your employ.

14   A    That is correct.

15   Q    So just to be clear, that Steve Nagy was not in your

16   employ, which means that he was then not in the (sic) New

17   Century employee as of August 8th, 2008?

18   A    Well, to clarify, he was never employed by the

19   liquidating trust.  Prior to the formation of the

20   liquidating trust, none of the former New Century employees

21   were employees directly of New Century for some period of

22   time, I don't know when, but New Century actually had this

23   temporary employment agency retain their former employees at

24   some time during the pendency of the case.  I don't recall

25   when that occurred.

Case 07-10416-BLS    Doc 11572-8    Filed 10/30/20    Page 75 of 100
NEW CENTURY TRS HOLDINGS, INC.

Page 179

1    Q    So just to -- I'll just tell you where I'm going with

2    this.  I want to know Steve Nagy when he left employment.

3    You don't know when he left New Century employment.  What

4    you do know is that for those employees that have been

5    working through the temporary agency as of August 8th, 2008,

6    Steve Nagy was not one of those people?

7    A    That is accurate.

8    Q    Thank you.  Have you ever come into a bankruptcy where

9    you've discovered that the debtor failed to recognize

10    potential claimants?

11    A    I don't understand what you mean by that.

12    Q    Have you ever come into a bankruptcy where you -- in

13    going through -- I'm assuming you go back through the

14    debtor's books and records and you validate the plan.

15    A    That's not accurate.

16    Q    Oh, okay.  So do you ever go back and look at the work

17    of the prior -- the work that was done up till the time you

18    became involved in the bankruptcy to --

19    A    That's such a vague question, I really can't answer it.

20    Q    Huh.  At any time that you've been working as a

21    liquidating trustee -- well, I don't know how else to ask

22    that.

23        The question is, is that you've never -- so you've

24    never come into a bankruptcy where you said, oh wow, here's

25    a group of creditors that we didn't notice, but we need to

271

212-267-6868
VERITEXT REPORTING COMPANY
www.veritext.com
DOCUMENT SCANNED AS FILED
516-608-2400

Page 212

1   you seen the books and records yourself?

2   A   I've seen lots of books and records.

3   Q   For the New Century books and records?

4   A   Yes.

5   Q   All right.  Could you look at this note for me and tell

6   me where you see the endorsement?

7   A   I don't believe I see an endorsement.  I see a

8   signature.

9   Q   Right.  But you see an endorsement by New Century?

10  A   I do not see New Century's signature, corporate

11  signature or endorsement, no.

12  Q   But the note, again just reconfirming, is made out to

13  New Century even though the note's made out to New Century,

14  correct?

15  A   Promise to pay as to lender is New Century Mortgage

16  Corporation.

17  Q   Thank you.  All right.  So are you aware that Steve

18  Nagy's stamped signature is used for endorsement of notes

19  from New Century?

20  A   I've heard reference to that, but I can't apply

21  specifically to any specific instance.

22  Q   Have you ever seen any corporate minutes in regards to

23  who's authorized to stamp Steve Nagy's signature?

24  A   I don't recall.

25  Q   Do you know how many people are authorized to stamp his

1    signature?

2    A    At what point in time are you referring?

3    Q    Any time.

4    A    Well, he's not authorized to stamp the signature today.

5    Q    As of when was he not authorized to stamp his

6    signature?

7    A    On behalf of New Century Liquidating Trust, he has no

8    authorization to use the New Century -- his signature on

9    behalf of the trust.

10    Q    As of when?

11    A    The formation of the trust.

12    Q    As of August 8th, 2008, Steve Nagy had no authorization

13    to stamp on behalf of the New Century Liquidating Trust?

14    A    That is accurate.

15    Q    Are there -- is there anyone authorized to stamp his

16    name?

17    A    No, there would be no reason to use his name in the

18    period and time we just spoke.

19    Q    After August 8th?

20    A    Correct.

21    Q    Huh.  All right.  I want to go back to -- this is back

22    to the Cromwell claim book.  Is it your understanding that

23    the Cromwell loan, that's the same book where the note is

24    and the letter.

25    A    Thank you.

NEW CENTURY TRS HOLDINGS, INC.

Page 273

1                    C E R T I F I C A T I O N

2

    I, Sheila G. Orms, certify that the foregoing is a correct

3    transcript from the official electronic sound recording of

4    the proceedings in the above-entitled matter.

5                                Digitally signed by Sheila Orms
                                 DN: cn=Sheila Orms, o, ou,
6    Sheila Orms                 email=digital1@veritext.com,
                                 c=US
7                                Date: 2018.10.15 14:18:57 -04'00'

8    Signature of Approved Transcriber

9

10

    Veritext

11

    200 Old Country Road

12

    Suite 580

13

    Mineola, NY  11501

14

15

    Date: May 29, 2012

16

17

18

19

20

21

22

23

24

25

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.,* | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

## NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)    FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

# Ex-28

<pre>
 1                    REPORTER'S RECORD
                       VOLUME 1 OF 2                 FILED IN
 2       TRIAL COURT CAUSE NO. 2011-CI-04tREGOURT OF APPEALS
                                           SAN ANTONIO, TEXAS
 3                                        02/24/17 2:31:28 PM
     NANCY ALANIS                   IN THE DISTRICT COURT
 4                                          Clerk
     V.                             BEXAR COUNTY, TEXAS
 5
     WELLS FARGO BANK, ET AL        45TH JUDICIAL DISTRICT
 6

 7

 8   _____

 9          PLAINTIFF'S PLEA TO THE JURISDICTION
            DEFENDANTS' MOTION FOR SEVERANCE
10   _____

11          On the 24th day of May, 2016, the following

12   proceedings came on to be heard in the above-entitled and

13   numbered cause before the HONORABLE LARRY NOLL, Judge

14   Presiding, held in the 408th District Court, San Antonio,

15   Bexar County, Texas.

16          Proceedings reported by machine shorthand.

17

18

19

20

21

22

23

24

25
</pre>

1                    A P P E A R A N C E S

2    MS. NANCY ALANIS
     13210 Hunters View
3    San Antonio, Texas  78230
          APPEARING PRO SE:

4
     CACHEAUX, CAVAZOS & NEWTON
5    Mr. Jeffrey A. Hiller
     SBOT No. 00790883
6    333 Convent Street
     San Antonio, Texas  78205
7    (210) 222-1642
          ATTORNEY FOR DEFENDANTS:

8
                     *-*-*-*-*-*-*

9
                  CHRONOLOGICAL INDEX

10
                                              PAGE
11
     PLAINTIFF'S OFFER OF PROOF                 36

12

13                    EXHIBIT INDEX

14   PLAINTIFF                          OFF ADM VOL

15   A    9-15-06 Letter from New Century to Alanis 11  15   1

16   B    5-10-10 Notice of Substitute Trustees Sale 11 15   1

17   C    4-27-09 Letter from Federal Reserve to HomEq 11 15 1

18   D    Alanis Certified Mail Loan Payments      11   15 1

19   E    1-13-11 Mackie Wolf Zientz & Mann Notice of
          Acceleration to Alanis                   11 15    1
20
     G    2-2-11 Transfer of Lien                  11 15    1
21
     H    Excerpt page three and excerpt of declaration
22        of Gina Feezer                           11 15    1

23   I    10-21-14 Motion for Summary Judgment     11 15 1

24   J    4-23-12 Wells Fargo Discovery Response   11 15 1

25

            CRAIG CARTER - 408TH DISTRICT COURT - (210)335-2786
                  DOCUMENT SCANNED AS FILED

| | | | OFF | ADM | VOL |
|---|---|---|---|---|---|
| | PLAINTIFF | | | | |
| K | 10-13-15 Order on Special Exceptions | | 11 | 15 | 1 |
| L | 10-21-14 Motion for Summary Judgment | | 11 | 15 | 1 |
| M | 11-10-15 Order on Summary Judgment | | 11 | 15 | 1 |
| N | 3-3-16 Order on Summary Judgment | | 11 | 15 | 1 |
| O | 5-12-16 Order on Motion to Set Aside Default | | 11 | 15 | 1 |
| P | U.S. Bankruptcy Court for the District of Delaware | | 11 | | 1 |
| Q | New Century Liquidating Trust Records | | 11 | | 1 |
| R | New Century Liquidating Trust Records | | 11 | | 1 |
| S | New Century Liquidating Trust Records | | 11 | | 1 |
| T | 1-3-13 Wells Fargo Secretary's Certificate | | 11 | 15 | 1 |
| U | 5-11-16 Reporter's Record excerpt | | 11 | 15 | 1 |
| V | 3-26-15 Order on Defendants' Second Traditional and No-Evidence Motion for Summary Judgment | | 11 | 15 | 1 |

CRAIG CARTER - 408TH DISTRICT COURT - (210)335-2786
DOCUMENT SCANNED AS FILED

```
1                    P R O C E E D I N G S
2              THE COURT:  All right.  Y'all have to remain
3    seated.  Microphone about six inches away from you.  Do
4    not stand to make objections and do not walk and talk in
5    here unless you have a microphone in front of you.  Is
6    that understood?
7              MR. HILLER:  Yes, Your Honor.
8              MS. ALANIS:  Your Honor, would you repeat
9    the part about the objections?
10             THE COURT:  Don't stand to make objections.
11   Since you want a record, the only way my court reporter
12   is going to hear you is if you speak into a microphone.
13             MS. ALANIS:  Yes, Your Honor.
14             THE COURT:  If you stand, you are going to
15   be out of range of the microphone.  I will hear you, but
16   you may not have what you said preserved on the record.
17             All right, sir.  So tell me what's this
18   about and cut to the chase.  I have read this stuff so we
19   don't have to repeat everything that's here.
20             MR. HILLER:  Your Honor, we are asking to
21   sever the claims of HomEq Servicing Corporation from the
22   final judgment or the -- yes, the final judgment entered
23   against Ms. Alanis and in favor of Wells Fargo Bank,
24   National Association and Ocwen and the other defendant,
25   Mackie, Wolf, Zientz & Mann, so that we can foreclose.
```

1          Our motion for severance is straightforward,

2    Your Honor.  You can see where this has been considered

3    for years.  We want to be able to foreclose.  It's been

4    eight years since we have been paid, and Ms. Alanis is up

5    on appeal now with respect to the final judgment entered

6    by Judge Saldana.

7          Ms. Alanis has filed a plea to the

8    jurisdiction, Your Honor, to which we object because that

9    essentially by virtue of that plea to the jurisdiction,

10   number one, I would argue it's too late and has been

11   foreclosed by the final judgment entered in this case.

12          Secondly, the same arguments were made and

13   rejected by Judge Pozza back in February of 2015 on

14   Ms. Alanis' plea to the jurisdiction based on the factual

15   allegation that Wells Fargo couldn't foreclose, and I

16   think Your Honor may remember we brought the note and

17   waved it in front of her face, and we also argued

18   correctly to Judge Saldana that Ms. Alanis had no

19   standing to contest how her note got bundled into a

20   pooling and service -- into a pool of loans that was

21   administered by a pooling and servicing agreement and

22   then assigned.  Judge Saldana agreed with that.  She

23   entered special exceptions, and that's why I handed Your

24   Honor the amended special exceptions reflecting that

25   those claims were dismissed.

1            We would ask the court to sever her live

2    claim against Barclays Real Estate Capital, Inc. who only

3    on May 12th got a new trial because Ms. Alanis did not

4    properly serve them from the final judgment and let us go

5    forward.

6            We object to any allegation that there is no

7    jurisdiction over this matter.  Those arguments have been

8    heard and rejected properly.  There's no argument

9    concerning the final judgment.  Your Honor has probably

10   read that says that Wells Fargo may proceed.  And so any

11   arguments to this effect are too late and they would be

12   an end run against existing judgments that have already

13   been heard in this court, Your Honor.

14           THE COURT:  All right.  You said this matter

15   is on appeal?

16           MR. HILLER:  Yes, Your Honor.

17           THE COURT:  Is there a supersedeas bond

18   posted?

19           MR. HILLER:  No, Your Honor, but remember

20   March 3rd final judgment is entered.  Ms. Alanis files

21   her notice of appeal.  Then Barclays comes in --

22           THE COURT:  I understand.  I understand.

23           MR. HILLER:  Yes.

24           THE COURT:  I'm just curious.

25           MR. HILLER:  No.  No supersedeas, Your

1   Honor, and that's why we are -- part of the reason we are

2   asking to sever it so we can move forward.

3              THE COURT:  All right.  Okay.

4              MS. ALANIS:  Your Honor, I'm going to object

5   on the record to the mischaracterization by Mr. Hiller.

6   We were just in the courtroom of Judge Walsh, and Judge

7   Walsh told Mr. Hiller that before a court can hear his

8   motion to sever the plea to the jurisdiction needs to be

9   considered first.

10             THE COURT:  All right.

11             MS. ALANIS:  It needs to be heard.

12             THE COURT:  I have considered that.  Your

13  plea to the jurisdiction is overruled so let's go ahead.

14  I have heard it.  It's overruled.  What's the next

15  argument?

16             MS. ALANIS:  Your Honor, you have heard my

17  plea to the jurisdiction?

18             THE COURT:  I read your plea in here.  You

19  presented to me a book which was about three inches thick

20  that has pleadings in it and references prior orders, and

21  I think this issue has been ruled on previously.  There's

22  no need for going any further with it.  So that --

23             MS. ALANIS:  Your Honor --

24             THE COURT:  In my opinion, it's previously

25  been overruled.  If it hasn't been, it's overruled now.

1          MS. ALANIS:  Your Honor, may I respond?

2          THE COURT:  Yes.

3          MS. ALANIS:  There is new evidence I

4    obtained after the entry of that March 3rd, 2016 partial

5    summary judgment order by Judge Saldana.  When I -- I had

6    filed a partial -- a plea to the jurisdiction and Judge

7    Walsh heard it on February 17th, 2016.  Judge Walsh

8    advised that there were records that needed to be

9    obtained in order to make a determination on the plea to

10   the jurisdiction.  Otherwise it would be denied.

11          I exercised due diligence.  I contacted the

12   New Century Liquidating Trust.  I obtained records from

13   the New Liquidating Trust.  And if you have read my -- if

14   you have read the plea and looked at the records, you

15   will see that the trust provided records showing Wells

16   Fargo never had an interest in my note and deed of trust.

17   Only Barclays Bank purchased an interest in my mortgage

18   loan.

19          And I would like -- As part of the plea to

20   the jurisdiction, I would like to admit the records into

21   evidence that I attached to my pleading for this -- you

22   know, to make a record for the court of appeals; that I

23   attached these and that I am apprising this court of

24   these new records that I just obtained after the entry of

25   the March 3rd, 2016 --

1          THE COURT:  It would seem to me you can use

2     that in your case against Barclays or Ocwen, whoever it

3     is, but your request to admit it in this hearing is

4     denied.  All right.  Go ahead.

5          MS. ALANIS:  May I make an offer -- Are you

6     saying I can't admit my exhibits into the record?

7          THE COURT:  That's correct.

8          MS. ALANIS:  Can I make an offer of proof,

9     sir?

10          THE COURT:  At some later time.  Not right

11     now.  We are working on a time schedule here, ma'am, so

12     let's move on.  What's your next argument?  The plea to

13     the jurisdiction -- if that was something that had

14     something to do with the summary judgment, that's

15     something -- I did not enter that order.  Somebody else

16     did.  If there's something to reconsider, maybe the other

17     judge will be willing to do that, but I'm not going to

18     consider that at this point.  That judgment has already

19     been entered, and it may be relevant to your claim

20     against Barclays or the other parties that are still

21     remaining.

22          MS. ALANIS:  Your Honor --

23          THE COURT:  This party is no longer -- has

24     been granted judgment.  And so that's why I asked the

25     question if you had superseded the judgment and the

CRAIG CARTER - 408TH DISTRICT COURT - (210)335-2786
DOCUMENT SCANNED AS FILED

1    STATE OF TEXAS    )

2    COUNTY OF BEXAR  )

3                    I, CRAIG CARTER, Official Court Reporter in

4    and for the 408th District Court of Bexar County, State

5    of Texas, do hereby certify that the above and foregoing

6    contains a true and correct transcription of all portions

7    of evidence and other proceedings requested orally or in

8    writing by counsel for the parties to be included in this

9    volume of the Reporter's Record, in the above-styled and

10   numbered cause, all of which occurred in open court or in

11   chambers and were reported by me.

12                   I further certify that this Reporter's

13   Record of the proceedings truly and correctly reflects

14   the exhibits, if any, admitted by the respective parties

15                   I further certify that the total cost for

16   the original/copy of this Reporter's Record is $195.00

17   and was to be paid by Ms. Nancy Alanis.

18                   WITNESS MY OFFICIAL HAND this the 25th day

19   of May, 2016.

20

21

22                   _____

23                        /s/ Craig Carter
                        CRAIG CARTER, CSR 1284
24   E-mail: libmr2@yahoo.com       EXPIRES 12/30/18
     408TH DISTRICT COURT      100 DOLOROSA, 3RD FLOOR
25   SAN ANTONIO, TEXAS  78205      (210) 335-2786

DOCUMENT SCANNED AS FILED

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| v. | § | 45TH JUDICIAL DISTRICT |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES | § | |
| LLC TRUST 2006-NC3 | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES SERIES 2006 NC3; | § | |
| and | § | |
| MACKIE WOLF ZIENTZ & MANN, P.C. | § | |
| (As Debt Collectors); and | § | |
| HOMEQ SERVICING CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC; | § | |
| *Defendants.* | § | BEXAR COUNTY, TEXAS |

## ORDER

ON MAY 24, 2016, CAME ON TO BE HEARD PLAINTIFF NANCY ALANIS

("~~Plaintiff~~") verified ~~*Plaintiff Nancy Alanis*~~ *Response And Objections To Motion For Severance Of*

*Plaintiff's Claims Against Defendant Homeq Servicing Corporation, Plea To The Jurisdiction Based On*

*4.21.16 Evidence And Motion To Vacate All The Orders Entered In Behalf Of Wells Fargo Bank, NA, As*

*Trustee, Motion To Dismiss Wells Fargo Bank, NA, As Trustee Counterclaims And Motion To Amend*

*Pleadings To Include All Parties And All Relevant Claims* and Plaintiff's argument in support *(ALANIS*

*Plea).* All parties to this proceeding were duly notified and no written responses or objections were filed

by Barclays Capital Real Estate Inc., Formerly D/B/A Homeq Servicing ("BARCLAYS") or

'Defendants Wells Fargo Bank National Association, As Trustee For The Pooling And Servicing

Agreement Dated As Of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3

Mortgage Pass-Through Certificates Series 2006 NC3 ("WELLS FARGO"), Ocwen Loan Servicing,

LLC ("OCWEN"), Mackie Wolf Zientz & Mann, PC and/or HOMEQ Servicing Corporation.

5.24.16 ORDER ON "ALANIS PLEA"                                    PG 1 OF 2

DOCUMENT SCANNED AS FILED

DOCUMENT SCANNED AS FILED

WELLS FARGO and OCWEN appeared by counsel.   The Court having reviewed and considered the

*ALANIS Plea* pleadings on file with the district clerk is of the opinion ~~and FINDS the Court has~~

~~jurisdiction over the WELLS FARGO counterclaims seeking suit on the ALANIS Note and foreclosure~~

~~in connection with the Plaintiff's June 15, 2006 mortgage loan with New Century Mortgage Corporation~~

~~("NEW CENTURY") and~~ the *ALANIS Plea* should in all respects be OVERRULED *and Denied*

The Court FURTHER FINDS the objections as asserted in the *ALANIS Plea* based on

(1) Courts Jurisdiction; (2) ~~WELLS FARGO Standing/Capacity;~~ (3) ~~Limitations pursuant to Tex. Civ.~~

~~Prac. Rem Code, Sec. 16.035;~~ (4) Defective Assignment Date; (5) Forged Assignment; (6) Defect Of

Chain of Title; (7) Fraudulent Representations by WELLS FARGO;   and (8) ~~Void Orders are~~

OVERRULED.

~~The Court FURTHER FINDS that a review of the pleadings on file alone without the~~

~~admission of exhibits and oral testimony was sufficient to make a determination on the ALANIS Plea and~~

~~the Plaintiff's request to make an "offer of proof" of the exhibits attached to the ALANIS Plea was~~

~~GRANTED.~~

~~The Court FURTHER FINDS judicial notice was taken of the entire court file.~~

It is therefore, **ORDERED, ADJUDGED AND DECREED** that the *ALANIS Plea* is in

all respects OVERRULED *and Denied.*

SIGNED ON ___16___, day of June, 2016

HON. JUDGE LARRY NOLL – JUDGE PRESIDING

**APPROVED AS TO FORM:**

/s/ Nancy Alanis
NANCY ALANIS
13210 Hunters View
San Antonio, Texas 78230.
Tel: (210) 226.2666
E-Mail/Fax: nalanis12@yahoo.com
*Nancy Alanis, Plaintiff Pro Se*

JEFFREY A. HILLER
E-Mail: jhiller@ccn-law.com
SBN 00790883
Cacheaux Cavazos & Newton
333 Convent St.
San Antonio, Texas 78205
*(Tel):* 210.222.1642     *(Facsimile):* 210.222.2453
*Attorney for Defendants*
WELLS FARGO BANK NATIONAL ASSOCIATION
OCWEN LOAN SERVICING, LLC
MACKIE WOLF ZIENTZ & MANN, PC

06/20/2016 VOL 4583 PG 0224

5.24.16 ORDER ON "ALANIS PLEA"                                    PG 2 OF 2

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, MARY ANGIE GARCIA, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*June 13, 2019*

**MARY ANGIE GARCIA**
**BEXAR COUNTY, TEXAS**

By: *Christina Carreon*
CHRISTINA CARREON, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERK'S ORIGINAL SIGNATURE.)*

**DOCUMENT SCANNED AS FILED**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | § <br> § <br> § | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |

| | |
|---|---|
| NANCY K ALANIS | § <br> § <br> § |
| *Movant* | § <br> § |
| v. | § <br> § |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | § <br> § <br> § |
| And | § <br> § |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § <br> § <br> § |
| *Respondents* | § |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO**
**(i)    FILE ADVERSARIAL COMPLAINT;**
**(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND**
**(iii)  OBTAIN RELATED RELIEF**

# Ex-29

DOCUMENT SCANNED AS FILED

CAUSE NO. 2011-CI-02839

| | | |
|---|---|---|
| NANCY ALANIS,<br>*Plaintiff* | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE POOLING AND SERVICING | § | |
| AGREEMENT DATED AS OF | § | 45th JUDICIAL DISTRICT |
| OCTOBER 1, 2006 SECURITIZED | § | |
| ASSET BACKED RECEIVABLES LLC | § | |
| TRUST 2006-NC3 MORTGAGE PASS | § | |
| THROUGH CERTIFICATES SERIES | § | |
| 2006 NC3; | § | |
| and | § | |
| HOMEQ SERVICING | § | |
| CORPORATION; | § | |
| and | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| *Defendants* | § | OF BEXAR COUNTY, TEXAS |



### ORDER GRANTING DEFENDANTS' MOTION TO QUASH WRITTEN DISCOVERY REQUESTS FROM PLAINTIFF AND FOR ENTRY OF A PROTECTIVE ORDER AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

Came on to be heard on August 10, 2015 the Motion to Quash Written Discovery

Requests from Plaintiff and for Entry of a Protective Order ("Defendants' Motion"), filed by

Defendant/Counter-Plaintiff Wells Fargo Bank National Association, as Trustee for the

Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Backed

Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3

("Wells Fargo"), Defendant Ocwen Loan Servicing, LLC ("Ocwen"), and Defendant Mackie

Wolf Zientz & Mann, PC ("MWZM" and collectively, "Defendants"). Also heard at this time

was Plaintiff Nancy Alanis' Motion to Compel, filed on July 27, 2015, as part of her Response to

Defendants' Motion ("Plaintiff's Motion to Compel"). After reviewing Defendants' Motion, the

DOCUMENT SCANNED AS FILED

08/12/2015 VOL 4418 PG 3040

DOCUMENT SCANNED AS FILED

responses and replies thereto on file, and the arguments of counsel, if any, the Court finds that

Defendants' Motion should be granted.

**IT IS THEREFORE ORDERED, ADJUDGED and DECREED** that the Motion is

**GRANTED,** and the following discovery requests are quashed:

- *Plaintiff's 7.2.15 Second Requests for Production, Request for Admissions and Interrogatories to Defendants' Wells Fargo Bank National Association, as Trustee, Ocwen Loan Servicing, LLC and Mackie Wolf Zientz & Mann, PC*

- *Plaintiff's 7.16.15 Third Requests for Production, Request for Admissions and First Request for Disclosure to Defendants' Wells Fargo Bank National Association, as Trustee, Ocwen Loan Servicing, LLC and Mackie Wolf Zientz & Mann, PC*

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** Defendants are hereby

protected from responding to

- *Plaintiff's 7.2.15 Second Requests for Production, Request for Admissions and Interrogatories to Defendants' Wells Fargo Bank National Association, as Trustee, Ocwen Loan Servicing, LLC and Mackie Wolf Zientz & Mann, PC*

- *Plaintiff's 7.16.15 Third Requests for Production, Request for Admissions to Defendants' Wells Fargo Bank National Association, as Trustee, Ocwen Loan Servicing, LLC and Mackie Wolf Zientz & Mann, PC.*

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** Plaintiff's Motion to

Compel is in all things denied.

**SIGNED** this ___10___ day of ___August___, 2015.

_____
**JUDGE PRESIDING**

Approved by:

Marc Cronenwett
SBN 00787803
214.635-2670 / 214.635-2686 Fax
Counsel for Defendants

DOCUMENT SCANNED AS FILED

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, MARY ANGIE GARCIA, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT.  WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*June 13, 2019*

**MARY ANGIE GARCIA
BEXAR COUNTY, TEXAS**

By: *Christina Carreon*

CHRISTINA CARREON, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERK'S ORIGINAL SIGNATURE.)*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re<br>NEW CENTURY TRS HOLDINGS, INC *et al.,* | § <br> § <br> § | Case No. 07-10416 (BLS) |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § <br> § <br> § | |
| *Movant* | § <br> § | |
| v. | § <br> § | |
| Liquidating Trustee<br>NEW CENTURY TRS HOLDINGS, INC *et al* | § <br> § <br> § | |
| And | § <br> § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § <br> § <br> § | |
| *Respondents* | § <br> § | |

**NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
(i)    FILE ADVERSARIAL COMPLAINT;
(ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
(iii)  OBTAIN RELATED RELIEF**

# Ex-30



## Judge Gloria Saldaña
## 438ᵗʰ District Court

### BEXAR COUNTY COURTHOUSE
**100 Dolorosa**
**San Antonio, Texas 78205**

TELEPHONE: (210) 335-0448
FACSIMILE: (210) 335-0451

DATE: 9-25-15                    TIME: 4:11
FAX NO. (210) 222-2453 + (214) 635-2686
TO: Jeffrey Hiller, Mark Cronenwett
ATTN:
FROM: Marie Perez
No. of Pages: 2 (Including this Cover Page)
Message: 2011CI-02839 Judges notes

2425

**DOCUMENT SCANNED AS FILED**

931

**DOCUMENT SCANNED AS FILED**

# JUDGE'S NOTES

Case No: 2011CI02839, Court: 45th

Style: Nancy Alaniz vs. Wells Fargo Bank National Assoc. as Trustee

| Date of Notes: | NOTE | Judge's Initials |
|---|---|---|
| 9/25/2015 | Matter had been under advisement since Sept 3, 2015. Ordered: Plf's Special Exceptions are granted; Plaintiff's Plea to the Jurisdiction was previously heard by Judge Pozza. Mtn for Reconsideration on Plea to Jurisdiction on new Evidence and Counterclaims goes back to Judge Pozza as well as mtn to Reconsider expert's affidavit. Plaintiff's Verified 6th Amended Orig. Petition and Appl. for Injunction goes back to Judge Canales on request for Injunction and other relief. Mtn to Reconsider additional discovery shall return to Judge Noll but Plaintiff may file additional new discovery requests to Dfs. at this time. OTO | q |
| | | |
| | | |

PROPERTY OF BEXAR COUNTY DISTRICT CLERK'S OFFICE

ATTORNEYS: Phillip Ross
Jeffrey Hiller

2426

932

DOCUMENT SCANNED AS FILED

DOCUMENT SCANNED AS FILED

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al.*, | § | Case No. 07-10416 (BLS) |
| | § | |
| Debtors. | § | (Chapter 11) |
| | § | |
| NANCY K ALANIS | § | |
| | § | |
| *Movant* | § | |
| | § | |
| v. | § | |
| | § | |
| Liquidating Trustee | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| And | § | |
| | § | |
| NEW CENTURY TRS HOLDINGS, INC *et al* | § | |
| | § | |
| *Respondents* | § | |

## NANCY ALANIS MOTION TO REOPEN CHAPTER 11 CASE TO
### (i)   FILE ADVERSARIAL COMPLAINT;
### (ii)  OBTAIN COURT ORDERS ON CORE PROCEEDING MATTERS; AND
### (iii)  OBTAIN RELATED RELIEF

# Ex-31