## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW CENTURY TRS HOLDINGS, INC., a Delaware Corporation, *et al.*, | Case No. 07-10416 (BLS) |
| Debtors.[1] | **Re: Docket No. 11572** |

## OBJECTION OF THE FORMER TRUSTEE OF THE NEW CENTURY LIQUIDATING TRUST TO MOTION TO REOPEN CHAPTER 11 CASE

Alan M. Jacobs, in his capacity as the former Bankruptcy Court-appointed Liquidating Trustee (the "Trustee") of the New Century Liquidating Trust (the "Trust"), by and through his former co-counsel, Hahn & Hessen LLP and Blank Rome LLP, hereby files this objection to the *Nancy Alanis Motion to Reopen Chapter 11 Case to (I) File Adversarial Complaint; (II) Obtain Court Orders on Core Proceeding Matters; and (III) Obtain Related Relief* [ECF 11572] (the "Motion"), filed by Nancy Alanis ("Alanis"), and, in support thereof, respectfully states as follows:

---

[1] The pre-confirmation Debtors were the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## PRELIMINARY STATEMENT

1.     The Motion should be denied because it fails to establish a compelling reason for reopening these Chapter 11 cases.  Rather, Alanis seeks to reopen these Chapter 11 cases to re-litigate issues that were fully resolved on the merits by a final judgment of the District Court for the 45th Judicial District of Bexar County, Texas (the "TX State Court") and subsequently affirmed on appeal to the Fourth Court of Appeals, San Antonio, Texas (the "TX Appeals Court").  Alanis even sought review by the Texas Supreme Court (the "TX Supreme Court"), which declined to hear the matter.

2.     The gravamen of Alanis' complaint in those proceedings was whether a mortgage loan originated by one of the Debtors was validly transferred and therefore enforceable by the current holder of the underlying note and deed of trust.  The TX State Court determined that the loan was transferred pursuant to a facially valid assignment and enforceable against Alanis by the current holder of the note and deed of trust and that judgment was upheld on appeal.

3.     Given that Alanis already had a full and fair opportunity to litigate her claims before the TX State Court and through the state court appellate process which entered a final judgment, the claims now sought to be asserted by Alanis (which implicate the very issues litigated in those courts) are barred by the *Rooker-Feldman* doctrine or the doctrines of collateral estoppel or *res judicata*.  Accordingly, no valid purpose would be served by reopening these Chapter 11 cases.

4.     Further, it has been over four (4) years since the entry of the final decree and the closing of these Chapter 11 cases.  All Trust assets have been distributed.  All of the Debtors' and Trust's documents and records have been destroyed.  The Trust has

2

terminated according to its terms and the Trustee has been fully released and discharged of his duties and obligations as Trustee of the Trust. The Trustee submits that the substantial passage of time and the weight of other relevant factors as set forth more fully below mitigate strongly against reopening these cases at this juncture. The facts presented in and the relief sought by the Motion are analogous to those recently presented to the Court by another borrower, which motion the Court appropriately denied. *See In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (BLS), 2019 Bankr. LEXIS 3727 (Bankr. D. Del. Dec. 6, 2019). Similarly, the Motion should be denied.

## BACKGROUND

5.      On April 2, 2007, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

6.      On April 23, 2008, the Debtors filed the *Second Amended Joint Chapter 11 Plan of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* (the "Original Plan").

7.      On July 15, 2008, the Court entered the order confirming the Original Plan (the "Original Confirmation Order").

8.       On August 1, 2008 (the "Original Effective Date"), the Original Plan became effective. Pursuant to the terms of the Original Plan, on the Original Effective Date the *New Century Liquidating Trust Agreement* (the "Trust Agreement") was executed, thereby creating the Trust and appointing Alan M. Jacobs as Trustee of the Trust.

9.    On June 16, 2009, the United States District Court for the District of Delaware issued a *Memorandum Opinion* and an order reversing the Original Confirmation Order.

10.    On September 30, 2009, the Trustee filed the *Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009* (the "Modified Plan").

11.    On November 20, 2009, the Court entered an order confirming the Modified Plan (the "Modified Confirmation Order") [ECF 9957].  The Modified Confirmation Order provides, in relevant part:

> with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from the Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that the Liquidating Trust shall not be liable for the actions of the requesting party under any such powers of attorney…

Modified Confirmation Order, ¶69.

12.    On December 1, 2009 (the "Modified Effective Date"), the Modified Plan became effective.  On the Modified Effective Date, the Modified Plan, *inter alia*, (a)

confirmed that all actions taken by the Trustee subsequent to the Original Effective Date were valid and binding; (b) adopted, ratified and confirmed the formation of the Trust as of the Original Effective Date; (c) adopted, ratified and confirmed the Trust Agreement as of the Original Effective Date; and (d) adopted, ratified and confirmed the appointment of Alan M. Jacobs as trustee of the Trust as of the Original Effective Date.

13.    On May 18, 2016, the Court entered an order authorizing the Trustee to destroy the Debtors' and Trust's records and documents (collectively, "Records") subject to certain procedures in that order (the "Document Destruction Order").

14.    On August 25, 2016, the Court entered a *Final Decree* [ECF 11535] closing these Chapter 11 cases, discharging the Trustee of his obligations under paragraph 69 of the Modified Confirmation Order, and fully releasing and discharging the Trustee of his duties and obligations as Trustee of the Trust (other than with respect to certain ministerial obligations related to Trust wind down and Records destruction ("Trailing Obligations")). *See* Final Decree, ¶¶ 2-3, 9.

15.    On September 30, 2016, the Trust made a final distribution of the Trust assets [ECF 11539] and completed the disposal of the Records pursuant to the Document Destruction Order.

16.    By February of 2017, the Trustee had completed the Trailing Obligations and the Trust terminated by operation of its terms and in accordance with the terms of the Final Decree.

17.    On December 6, 2019, after reviewing a motion that was substantially similar to the Motion, the Court declined to reopen these Chapter 11 cases.

18.     On October 30, 2020, Alanis filed the Motion with the Court.  Based upon the Trustee's review of the Motion and documents filed in connection with Alanis' prior litigation, the Trustee has, upon information and belief, identified the following facts and circumstances, which strongly militate against reopening these Chapter 11 cases:

### THE ALANIS LOAN

19.     On or about June 15, 2006, Alanis executed a note (the "<u>Note</u>") in favor of New Century Mortgage Corporation in the principal amount of $193,500 (the "<u>Loan</u>") as lender on a loan secured by real property located in Bexar County, Texas (the "<u>Real Property</u>").  *See* Motion, ¶25, **Ex. 1**.  The Note was secured by a *Deed of Trust* executed by Alanis (the "<u>Deed of Trust</u>") which was recorded in the public records of Bexar County, Texas under document number 20060146541. *See id.*, **Ex. 2**.

20.     Following the origination of the Loan, the Loan was subsequently transferred to Wells Fargo National Association as trustee for the Pooling and Servicing Agreement dated as of October 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-NC3 Mortgage Pass Through Certificates Series 2006 NC3 ("<u>Wells Fargo</u>") pursuant to a February 2, 2011 *Transfer of Lien* (the "<u>Transfer of Lien</u>") recorded as document number 20110164234 in the official public records of Bexar County, Texas and Ocwen Loan Servicing, LLC serviced the Loan for Wells Fargo. *See id.*, **Ex. 12,** at <u>Ex. A</u>, ¶4 and <u>Ex. A-3</u>.

### THE ALANIS LOAN LITIGATION

#### TX State Court Proceedings

21.     On or about January 13, 2011, Wells Fargo sent Alanis a notice of acceleration and intent to foreclose in connection with asserted payment defaults under the Loan. *See id.*, **Ex. 9**.

22.    On February 22, 2011, Alanis commenced state court litigation against Wells Fargo, Ocwen and other parties in the TX State Court under Case No. 2011-CI-02839 challenging Well Fargo's efforts to foreclose on the Loan and the Real Property. *See id.*, ¶¶47, 71 (the Transfer of Lien is "void"), 74 ("the Transfer of Lien is a forgery").

23.    For the sake of brevity, close to ten (10) years of extensive litigation followed, including additional litigation in the TX State Court under Case No. 2019-CI-03042 regarding a bill of review proceeding where Alanis asserted that "Wells Fargo never securitized the Movant's loan into their trust and further, they held no interest in the Movant's mortgage loan and lacked standing to foreclose." *See id.*, ¶69.  Alanis' litigation also included appeals to and motions before both the TX Appeals Court and petitions for review and motions before the TX Supreme Court. *See id.*, ¶¶ 100-103.

24.    Germaine to the instant Motion, on March 3, 2016, the TX State Court entered an order granting Wells Fargo's motion for summary judgement on its counterclaim for foreclosure (the "<u>Final Judgment</u>"). *See id.*, **Ex. 24**.  The TX State Court found, *inter alia*, that "Wells Fargo is the current holder of the Note and beneficiary of the Deed of Trust representing a valid and existing first lien on the [Real] Property" and "Alanis [is] in breach of her payment obligations under the Note and the Deed of Trust is foreclosed." *See id.*, **Ex. 24**, pp. 3-4.

25.    Alanis appealed the Final Judgment as well as numerous other decisions of the TX State Court to the TX Appeals Court under Case No. 04-17-0069-CV arguing, *inter alia*, that the default on her Loan was "fake" and the Transfer of Lien was "fabricated." *See* Motion, ¶102.  On April 4, 2018, the TX Appeals Court entered an order affirming, *inter alia*, the Final Judgment. *See id.*, **Ex. 33**.

26.    On July 27, 2018, Alanis filed a petition for review of the TX Appeals Court's order and motion for sanctions against Wells Fargo with the TX Supreme Court under Case No. 18-0617.[2]  *See* Motion, ¶103.    Alanis also filed a motion for stay of execution of judgment with the TX Supreme Court.[3]  However, the TX Supreme Court denied Alanis' petition for review and her motion for sanctions and a stay were dismissed.[4]  Alanis then filed a motion for rehearing[5] which was also denied.[6]

27.    On September 4, 2018, the Sheriff of Bexar County, Texas sold the Real Property to Wells Fargo and issued Wells Fargo a Sheriff's Deed. *See* Motion, **Ex. 31**.

28.    On or about November 29, 2018, Wells Fargo obtained judgment on a forcible detainer action and an eviction order against Alanis under Case No. 32E-180-3776. *See* Motion, ¶¶99, 113, **Ex. 32**.

**TX Bankruptcy Court Proceedings**

29.    On October 17, 2020, Alanis filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Texas (the "TX Bankruptcy Court") under Case No. 20-51774 (RBK) (the "TX Bankruptcy Case"). *See* TX BK ECF 1.

30.    On November 3, 2020, the TX Bankruptcy Court dismissed the TX Bankruptcy Case due to Alanis' failure to timely file a Chapter 13 plan. *See* TX BK ECF 12.

---

[2] Alanis' litigation before the TX State Court, that was appealed to and heard by the TX Appeals Court, along with petitions for review before the TX Supreme Court, is collectively referred to herein as the "TX State Court Litigation."

[3] *See* TX Supreme Court Docket, Case No. 18-0617, August 27, 2018 entry.

[4] *See id.*, August 31, 2018 entry.

[5] *See id.*, October 17, 2018 entry.

[6] *See id.*, November 30, 2018 entry.

Alanis has filed a motion to vacate the dismissal order and reinstate the TX Bankruptcy Case which, at the time of this objection, is still pending. *See* TX BK ECF 17.

**DE Bankruptcy Court Proceedings**

31.     On October 30, 2020, after having fully litigated the issues in the TX State Court and exhausted all possible avenues of state appellate relief, Alanis filed the instant Motion seeking this Court to reopen these Chapter 11 cases so Alanis can "file an adversary proceeding to assert claims and seek damages against Wells Fargo and others working in concert with them" for purportedly violating the automatic stay in these Chapter 11 cases by foreclosing on the Loan and, *inter alia*, compel Wells Fargo "to show a valid conveyance to the [] Note and Deed of Trust." *See* Motion, ¶158.

## OBJECTION

32.     A bankruptcy case may be reopened only "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also* Fed. R. Bankr. P. 5010. The movant "bears the burden of demonstrating circumstances sufficient to justify the reopening of [the] bankruptcy case." *In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, *9 (E.D. Pa. Dec. 13, 2004). Indeed, the "moving party must ordinarily demonstrate that there is a *compelling* cause." *In re Scheib*, 2014 Bankr. LEXIS 3084, *7 (Bankr. W.D. Pa. July 18, 2014) (emphasis added).

33.     Courts consider a variety of non-exclusive factors when deciding whether to reopen a case, including:

(a) the length of time the case was closed:

(b) whether a non-bankruptcy forum, such as state court, has the ability to determine the dispute to be posed by the debtor were the case reopened;

     (c) whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties;

     (d) whether any parties would be prejudiced were the case reopened or not reopened;

     (e) the extent of the benefit which the debtor seeks to achieve by reopening; and

     (f) whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

*In re Fansteel, Inc.*, Case No. 02-10109, 2017 Bankr. LEXIS, *11-12 (Bankr. D. Del. Aug. 8, 2017) (*citing In re Antonious*, 373 B.R. 405-06 (Bankr. E.D. Pa. 2007)) (citations omitted).

34.    "Generally, a bankruptcy case should remain closed if no valid purpose would be served if the matter were reopened." *In re Rashid*, at *10 (*citing In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995) (noting that a bankruptcy case should remain closed "where it appears that [reopening the case] would be futile and a waste of judicial resources")).

35.    Importantly, no cause exists to reopen a bankruptcy case where the movant already had a full and fair opportunity to litigate its claims before another tribunal. *See, e.g., Mid-City Bank v. Skyline Woods Homeowners Assoc. (In re Skyline Woods Country Club, LLC)*, 431 B.R. 830, 835 (B.A.P. 8th Cir. 2010) (affirming decision not to reopen case and "give the [movant] a 'second bite at the apple' in the bankruptcy court after [movant] had chosen an alternative forum for their dispute" and a judgment had been rendered in that forum); *In re Rashid*, at *14 ("no valid reason to reopen bankruptcy case" where "latest lawsuit is merely an attempt to relitigate claims that [movant] has raised -- or could have raised -- in [movant's] three prior lawsuits").

36.     Alanis seeks to reopen these Chapter 11 cases ostensibly so she can commence an adversary proceeding to seek relief which essentially continues to challenge (a) the validity of the conveyance of the Note and Deed of Trust to Wells Fargo and (b) Wells Fargo's ability to enforce its rights to foreclose the Loan (the "Disputed Claims"). *See* Motion, ¶158.

37.     However, Alanis admits (as she must) that the Disputed Claims have already been fully and finally litigated in the TX State Court and a Final Judgment as to the transfer of the Loan and Wells Fargo's standing to foreclose upon the Loan has been rendered against her. *See id.*, ¶76(c) (TX State Court "granted Wells Fargo summary judgment on their counterclaim for foreclosure and … identified Wells Fargo as the 'Beneficiary of the Deed of Trust representing a valid and first lien on the [Real] Property'"). Moreover, the Final Judgment was appealed to the TX Appeals Court and was even the subject of a denied petition for review to the TX Supreme Court. *See id.*, ¶¶102-103; *infra* ¶25.

38.     Having fully, but unsuccessfully, litigated these issues through every level of the Texas state court system, Alanis admits that she now seeks an alternative forum to re-litigate the same claims (albeit under the guise of a purported violation of the automatic stay) in an effort to find relief. *See* Motion, ¶155 ("when the court of appeals affirmed the trial court judgment favorable to Wells Fargo without considering all of the Movant's evidence, Movant was left to file a Chapter 13 bankruptcy case and this motion to reopen [sic] case to protect and defend her property rights.").

a.      ***There is No Basis to Reopen these Chapter 11 Cases because Alanis is Barred from Asserting the Disputed Claims***

i.      *The Rooker-Feldman Doctrine*

39.    The Supreme Court of the United States (the "Supreme Court") has exclusive jurisdiction over appeals from final state-court judgments under what has come to be known as the *Rooker-Feldman* doctrine. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983) and *Rooker* v. *Fidelity Trust Co.,* 263 U.S. 413, 416 (1923)).  This doctrine is implicated when

> "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996).  Accordingly, a claim is barred by *Rooker-Feldman* under two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action" or (2) "if the federal claim in inextricably intertwined with the state court adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. *Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 580 (3d Cir. 2005).

> Moreover, a federal claim is "inextricably intertwined" with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take action that would negate the state court's judgment. *Id*. at 581 (*quoting Walker v. Horn*, 385 F.3d 321, 220 (3d Cir. 2004)).

*Madera v. Ameriquest Mortgage Co. (In re Madera)*, 586 F.3d 228, 232 (3d Cir. 2009).

40.    In order to find that Wells Fargo violated the automatic stay in these Chapter 11 cases, the Court would have to determine that the Note and Deed of Trust were never validly transferred to Wells Fargo and, therefore, at all relevant times remained property of the Debtors' estate. *See* 11 U.S.C. § 362(a)(3).  However, such a finding would (a) be a determination that the TX State Court erred when it entered the Final Judgment finding that "Wells Fargo is the current holder of the Note and beneficiary of the Deed of Trust representing a valid and existing first lien on the [Real] Property" and (b) such a finding would negate the Final Judgment.

12

41.     As such, Alanis' proposed federal claims against Wells Fargo are "inextricable intertwined" with the Final Judgment and barred by the *Rooker-Feldman* doctrine. *See Madera*, 586 F.3d at 232 ("a favorable decision for the Maderas in the federal courts [on their TILA-based rescission claim] would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage"); *See Knapper*, 407 F.3d at 581 ("Knapper can only prevail [on its constitutional challenge to foreclosure] if a federal court concludes that the state courts' default judgments were improperly obtained.  Therefore, she cannot prevail on her federal claims without obtaining an order that 'would negate the state court[s] judgment[s]"); *In re A.R. Dunlop*, 378 B.R. 85, 92-93 (Bankr. E.D. Pa. 2007) ("the state court has upheld the September 2006 foreclosure sale, rejecting the debtor's challenge to it by orders dated December 13, 2006 and June 19, 2007.  This federal bankruptcy court has no jurisdiction to overturn such adjudications").

42.     Accordingly, reopening these Chapter 11 cases would be futile and a waste of judicial resources and, therefore, the Motion must be denied. *See In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, at *9 (E.D. Pa. Dec. 13, 2004) ("Where it is clear at the outset that [movant] would not be entitled to any relief, there is no valid reason to reopen his bankruptcy case.") (internal quotations and citations omitted); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (BLS), 2019 Bankr. LEXIS 3727, *13 (Bankr. D. Del. Dec. 6, 2019) (concluding that "no valid purpose will be served by reopening" the case because claims were barred).

ii.     <u>Collateral Estoppel</u>

43.     Similarly, by seeking a finding that the Note and Deed of Trust were never validly transferred to Wells Fargo and, therefore, Wells Fargo violated the automatic stay in

these Chapter 11 cases when it attempted to enforce its rights with respect to the Loan, Alanis is attempting to re-litigate issues that were already determined by the Final Judgment and subsequently upheld by the Texas Appeals Court.  Thus, even if this Court did have jurisdiction to hear Alanis' claims (which, respectfully, it does not), any action before this Court would be nothing more than a subterfuge for Alanis to collaterally attack the Final Judgment.

44.    The doctrine of collateral estoppel (issue preclusion) "bars relitigation of an issue identical to that in a prior action." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 329 n.2 (3d Cir. 2000).  Collateral estoppel does not require a relationship between the party raising the defense and the party who litigated the issue in a previous case. *See Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844-45 (3d Cir. 1974).  It applies when (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).  Additionally, courts also consider whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgment." *Id.* (citations omitted).  There is no legitimate dispute that each requirement is satisfied here with respect to the Disputed Claims.

45.    The issues regarding the validity of the transfer of the Note and Deed of Trust (which are necessary to any finding that Well Fargo violated the automatic stay by taking actions against property of the estate) are identical to the issues litigated by Alanis in the TX State Court Litigation and finally decided by the Final Judgment. *Compare* Motion, ¶¶2

14

("fabricate Transfer of Lien"), 4 (same), and 6 ("stay violating foreclosure and eviction scheme consisting of multiple fraudulent acts") *with* Motion **Ex. 32**, pp. 3 ("Wells Fargo lacked standing to seek a foreclosure because the transfer or assignment of lien from New Century to Wells Fargo was void"), and 10 ("claims regarding the validity of the assignment from New Century to Wells Fargo").

46.     The validity of the transfer of the Note and Deed of Trust were necessary to the Final Judgment (as only a valid holder of the Note and Deed of Trust could foreclose) and Alanis had a fair opportunity to (and did) fully and vigorously litigate, *inter alia*, those very issues. *See* Motion, ¶¶69 (submitted expert report asserting that "Wells Fargo … held no interest in the [Loan] and lacked standing to foreclose"), 71 (argument at hearing on motion for reconsideration asserted "void 2.2.11 Transfer of Lien"), 73 (argument at hearing on motion for continuance (same)), 74 (argument at hearing on plea to jurisdiction "clearly the Transfer of Lien is a forgery"), 93 (argument at hearing on plea "Wells Fargo never had an interest in my note and deed of trust").  Indeed, Alanis continued to litigate the Disputed Claims on appeal to the TX Appeals Court (which affirmed) and by a denied petition for review to the TX Supreme Court.

47.     Thus, the doctrine of collateral estoppel also precludes Alanis from re-litigating the Disputed Claims before this Court.  As such, reopening these Chapter 11 cases would be futile and a waste of judicial resources and, therefore, the Motion must be denied. *See In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, at *9 (E.D. Pa. Dec. 13, 2004); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (BLS), 2019 Bankr. LEXIS 3727, *11 (Bankr. D. Del. Dec. 6, 2019).

*iii.*     <u>*Res Judicata*</u>

48.     Even assuming *arguendo* that the Disputed Claims are different from the issues that were litigated in the TX State Court and the subsequent appeals (which they are not), Alanis is still precluded from asserting the Disputed Claims in this Court because she could have (and should have) raised them in the TX State Court Litigation.

49.     The doctrine of *res judicata* (claim preclusion) "prohibits re-examination of matters that a party might have, but did not, assert in the prior action." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 329 n.2 (3d Cir. 2000).  It applies where "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) subsequent suit based on the same cause of action." *Churchill v. Star Enter.*, 183 F.3d 184, 194 (3d Cir. 1999).  Notably, however, "[c]ourts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit." *Id.*  Each of the requirements for the application of *res judicata* is present in the instant matter.

50.     The Final Judgment was a final judgment on the merits in the TX State Court Litigation and, because of the "mutual or successive relationship to the same right of property" between the Trustee and Wells Fargo and Ocwen, there is privity between the parties. *Greenway Center, Inc. v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007) ("In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.") (citations omitted).

51.     When deciding whether two suits are based on the same cause of action, courts "take a broad view, looking to whether there is an essential similarity of the underlying events giving rise to the various legal claims." *Williams v. Atl. Law Group*, 174

F.Supp.3d 874, 879 (D. Del. 2016) (*quoting CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). Courts consider "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same." *Id.* (*quoting U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, (3d Cir. 1984).

52.     There is no legitimate dispute that any suit before this Court would be based on the same cause of action already litigated in the TX State Court Litigation. The proposed adversary proceeding fundamentally complains of the same acts (i.e., the validity of the transfer of the Note and Deed of Trust and Wells Fargo's standing to enforce its rights under the Loan), is based on the same theory of recovery (i.e., the invalidity of the Transfer of Lien),[7] and would involve the same disputed documents and evidence, and the same underlying material facts. *See infra*, ¶¶44-45.

53.     Accordingly, to the extent that Alanis did not raise the Disputed Claims in the TX State Court Litigation, the Trustee may invoke the doctrine of *res judicata* to bar her from doing so now. Since it is clear at the outset that Alanis would not be entitled to any relief, there is no valid reason to reopen these Chapter 11 cases. *See In re Rashid*, Civ. No. 04-1585, 2004 U.S. Dist. LEXIS 25032, at *9 (E.D. Pa. Dec. 13, 2004): *In re New Century TRS*

---

[7] When conducting this analysis, the Third Circuit instructs that "[i]t is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014).

*Holdings, Inc.*, Case No. 07-10416 (BLS), 2019 Bankr. LEXIS 3727, *12-13 (Bankr. D. Del. Dec. 6, 2019).

b.    ***Other Factors Mitigate against Reopening these Chapter 11 Cases***

54.    Even if Alanis was not barred from asserting the Disputed Claims in this Court (which she is), an analysis of the factors that courts routinely consider in determining whether to reopen a bankruptcy case weighs heavily in favor of denying the Motion. *See infra* ¶32.

> a.    Over four (4) years have passed since the entry of the Final Decree closing these Chapter 11 cases and discharging the Trustee.  All of the Trust assets have been distributed, all of the Records have been destroyed and the Trust has terminated.

> b.    A non-bankruptcy forum (the TX State Court and TX Appeals Court) has already determined the dispute to be posed by Alanis (whether the Note and Deed of Trust were validly transferred and whether Wells Fargo has standing to foreclose).  The TX Supreme Court has denied Alanis' petition for review and motion for rehearing.  To the extent that Alanis seeks further appellate review, it is the Supreme Court, rather than this Court, that would be the appropriate venue to review the Final Judgment and any appellate orders affirming the Final Judgment.

> c.    Alanis will not be prejudiced because the TX State Court was the appropriate forum to determine her rights and she fully litigated her claims in that forum and subsequent appellate courts.  By seeking to reopen these Chapter 11 cases, Alanis is engaging in blatant forum shopping. *See Cole v. Household Fin. (In re Cole)*, 382 B.R. 20, 29 (Bankr. E.D.N.Y. 2008) (denying motion to reopen noting that movant was "engaging in forum shopping" and could assert claims in other forums).  To the extent that Alanis seeks further appellate review of the Final Judgment, she can seek the same through a writ of certiorari to the Supreme Court.

> d.    Wells Fargo, on the other hand, would be severely prejudiced because any relief granted to Alanis would inherently negate the Final Judgment.

e. The Trust and Trustee would also be severely prejudiced by reopening these cases and upsetting the finality of the Final Decree and the final resolution of the Trust and these Chapter 11 cases. Moreover, granting the Motion could open the "flood gates" for similar motions by borrowers seeking to re-litigate their state court foreclosure actions before this Court. Indeed, the Trustee is currently litigating an appeal of an order of this Court appropriately denying a recent motion by another borrower seeking to re-litigate foreclosure claims under the guise of an adversary proceeding.

f. No benefit will inure to the Trust or its beneficiaries from reopening these Chapter 11 cases as the Disputed Claims represent a two-party dispute that does not implicate the Trust. Rather, the primary beneficiary is Alanis who seeks more than $8 million in damages for herself from Wells Fargo. *See* Motion, ¶¶108-118.

55.    Thus, even if it was not clear from the outset that Alanis was not entitled to any relief because the Disputed Claims are barred by the *Rooker-Feldman* doctrine or the doctrines of collateral estoppel or *res judicata* (which they are), the weight of the relevant factors mitigates strongly against reopening these Chapter 11 cases.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court (a) deny the Motion and (b) grant such other or further relief that the Court deems just and proper.

Dated:  December 10, 2020

**BLANK ROME LLP**

*/s/ Victoria A. Guilfoyle*
Victoria A. Guilfoyle, Esq. (DE No. 5183)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

**HAHN & HESSEN LLP**
Mark S. Indelicato, Esq.
Jeffrey Zawadzki, Esq.
488 Madison Avenue

New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Former Trustee of the
New Century Liquidating Trust*